1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Charles K. Verhoeven (Cal. Bar No. 170151)
2    charlesverhoeven@quinnemanuel.com
     50 California Street, 22nd Floor
3    San Francisco, California 94111
     Telephone: (415) 875-6600
4    Facsimile: (415) 875-6700

5    Kevin P.B. Johnson (Cal. Bar No. 177129)
     kevinjohnson@quinnemanuel.com
6    Victoria F. Maroulis (Cal. Bar No. 202603)
     victoriamaroulis@quinnemanuel.com
7    555 Twin Dolphin Drive 5th Floor
     Redwood Shores, California 94065
8    Telephone: (650) 801-5000
     Facsimile: (650) 801-5100
9
     William C. Price (Cal. Bar. No. 108542)
10   williamprice@quinnemanuel.com
     Michael L. Fazio (Cal. Bar No. 228601)
11   michaelfazio@quinnemanuel.com
     865 S. Figueroa St., 10th Floor
12   Los Angeles, California 90017
     Telephone: (213) 443-3000
13   Facsimile: (213) 443-3100

14   Attorneys for SAMSUNG ELECTRONICS
     CO., LTD., SAMSUNG ELECTRONICS
15   AMERICA, INC. and SAMSUNG
     TELECOMMUNICATIONS AMERICA, LLC

16

17                    UNITED STATES DISTRICT COURT

18          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

19   APPLE INC., a California corporation,          CASE NO. 12-cv-00630-LHK

20              Plaintiff,
                                                    **SAMSUNG'S REPLY RE MOTION FOR**
21        vs.                                       **JUDGMENT AS A MATTER OF LAW**
                                                    **PURSUANT TO FEDERAL RULE OF**
22   SAMSUNG ELECTRONICS CO., LTD., a               **CIVIL PROCEDURE 50(b) AND MOTION**
     Korean business entity; SAMSUNG                **TO AMEND THE JUDGMENT**
23   ELECTRONICS AMERICA, INC., a New
     York corporation; SAMSUNG
24   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,     **Date:    July 10, 2014**
25                                                  **Time:    1:30 p.m.**
                Defendants.                         **Place:   Courtroom 8, 4th Floor**
26                                                  **Judge:   Hon. Lucy H. Koh**

27

28

# TABLE OF CONTENTS

**Page**

I.    SAMSUNG IS ENTITLED TO JMOL AS TO THE '647 PATENT .................................. 1

    A.    No Reasonable Jury Could Find Infringement Of Claim 9 Of The '647
         Patent. ................................................................................................................. 1

        1.    Apple's Trial Presentation Relied Upon The Rejected Claim
            Constructions And Represents A Failure of Proof. ........................................ 1

        2.    Apple Cannot Rely On Past Orders By This And Other Courts To
            Fill Gaps In Its Trial Presentation. ............................................................. 3

        3.    Pretrial And Recall Procedure Are Irrelevant Here, Where The Only
            Relevant Consideration Is The Record Apple Failed To Make At
            Trial. ............................................................................................................ 3

        4.    The Accused Samsung Devices Do Not Infringe Claim 9. ........................... 4

            (a)    The accused devices lack a "specified connection" .......................... 4

            (b)    The accused devices lack an analyzer server .................................... 5

            (c)    The accused devices lack an action processor .................................... 7

            (d)    The Jelly Bean Galaxy Nexus Does Not Infringe ............................ 8

    B.    Samsung Is Entitled To JMOL That The '647 Patent Is Invalid. .............................. 8

II.    SAMSUNG IS ENTITLED TO JMOL AS TO THE '721 PATENT ............................... 10

    A.    No Reasonable Jury Could Find Claim 8 Of The '721 Patent Valid. .................... 10

        1.    The Undisputed Evidence Shows That The Combination Of
            Neonode And Plaisant Discloses All Elements Of Claim 8. ...................... 10

        2.    Apple Ignores The Express Motivation To Combine In The
            References. ................................................................................................ 11

        3.    Apple's "Secondary Indicia" Are Not Supported By The Evidence. .......... 12

    B.    The '721 Patent Is Indefinite As A Matter Of Law. ................................................ 13

    C.    No Reasonable Jury Could Find The Galaxy Nexus Infringed The '721
         Patent. ................................................................................................................. 13

    D.    No Reasonable Jury Could Find Clear And Convincing Evidence Of Willful
         Infringement Of The '721 Patent. ......................................................................... 14

         1.    Samsung's Defenses Are Objectively Reasonable. .................................... 14

2.    The Jury's Willfulness Finding Is Not Supported By Substantial Evidence. ................................................................... 15

III.    SAMSUNG IS ENTITLED TO JMOL THAT THE '172 PATENT IS INVALID .......... 15

IV.    SAMSUNG IS ENTITLED TO JMOL ON CLAIM 25 OF THE '959 PATENT .......... 16

A.    WAIS Anticipates Claim 25 Of The '959 Patent. .................................... 16

B.    Claim 25 Is Obvious In Light Of Smith And Shoham. ........................... 17

C.    Samsung Properly Re-Raised Indefiniteness And Showed Indefiniteness Under Both The "Insolubly Ambiguous" And The Now-Prevailing *Nautilus* Standard. ................................................................................... 17

V.    NO REASONABLE JURY COULD FIND CLAIM 20 OF THE '414 PATENT VALID ........................................................................................... 19

A.    The Three Windows Mobile Exchange Components Each "Provide" A Thread .......................................................................................... 19

B.    Claim 20 Requires Only *One* Component To Provide a Thread. ........................... 19

C.    Samsung Presented Substantial, *Unrebutted* Evidence Of IMAP Mail. .................. 20

VI.    THE RECORD LACKS SUFFICIENT EVIDENCE THAT SEC IS LIABLE FOR INDUCEMENT OR CONTRIBUTORY INFRINGEMENT ............................................. 21

VII.    THE COURT SHOULD DEDUCT THE GALAXY S II AWARDS .............................. 22

A.    A Judgment Including A Double Recovery Is Barred By Law .............................. 22

B.    Supplemental Damages In The 1846 Case Cannot Be Awarded Here. .................. 23

VIII.    NO REASONABLE JURY COULD HAVE CONCLUDED THAT CLAIM 15 OF THE '239 PATENT IS NOT INFRINGED ........................................................ 24

CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) .................................................................................17

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
  466 F.3d 1000 (Fed. Cir. 2006) ................................................................................22

*Allergan, Inc. v. Apotex Inc.*,
  --- F.3d ---, 2014 WL 2579287 (Fed. Cir. June 10, 2014). ....................................11

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  No. 3:01-CV-0485, 2010 WL 815466 (M.D. Penn. Mar. 3, 2010) ..........................22

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ..................................................................................1

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
  295 F.3d 1277 (Fed. Cir. 2002) ................................................................................22

*CytoLogix Corp. v. Ventana Medical Sys., Inc.*,
  424 F.3d 1168 (Fed. Cir. 2005) ...........................................................................24, 25

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ................................................................................21

*In Re First Alliance Mortgage Co.*,
  471 F.3d 977 (9th Cir. 2006) ....................................................................................23

*G & M Inc. v. Newbern*,
  488 F.2d 742 (9th Cir. 1973) ....................................................................................24

*In re GPAC Inc.*,
  57 F.3d 1573 (Fed. Cir. 1995) .............................................................................10, 16

*Galderma Labs., LP v. Tolmar, Inc.*,
  737 F.3d 731 (Fed. Cir. 2013) ..................................................................................12

*Garcia v. Burlington N. R.R. Co.*,
  818 F.2d 713 (10th Cir. 1987) ..................................................................................24

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l*,
  618 F.3d 1294 (Fed. Cir. 2010) ................................................................................12

*Global-Tech v. SEB*,
  131 S. Ct. 2060 (2011) ................................................................................................7

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966) ........................................................................................................9

Case No. 12-cv-00630-LHK
SAMSUNG'S JMOL REPLY

*In re Gurley*,
    27 F.3d 551 (Fed. Cir. 1994) ..............................................................................................11

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ............................................................................................21

*In re Kubin*,
    561 F.3d 1351 (Fed. Cir. 2009) ..........................................................................................11

*Lisle Corp. v. A.J. Manuf. Co.*,
    398 F.3d 1306 (Fed. Cir. 2005) ..........................................................................................13

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    No. 4:11-CV-5341 (YGR), 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) .....................24, 25

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ........................................................................................13, 17, 18

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
    684 F. Supp. 2d 678 (E.D. Va. 2009) .................................................................................16

*Perfect Web Techs. v. Infousa, Inc.*,
    587 F.3d 1324 (Fed. Cir. 2009) ..........................................................................................12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................9

*Plantronics, Inc. v. Aliph, Inc.*,
    724 F.3d 1343 (Fed. Cir. 2013) ..........................................................................................17

*Ruiz v. Found. Anchoring Sys., Inc.*,
    357 F.3d 1270 (Fed. Cir. 2004) ..........................................................................................11

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) ..........................................................................................21

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012) ..........................................................................................13

*Tryker Corp. v. Zimmer, Inc.*,
    2013 U.S. Dist. LEXIS 171817 (W.D. Mich. Aug. 7, 2013) ..............................................14

*W. Union Co. v. Moneygram Payment Sys., Inc.*,
    626 F.3d 1361 (Fed. Cir. 2010) ..........................................................................................13

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000) ..........................................................................................17

### Statutes

35 U.S.C. § 289 ..............................................................................................................................22

Case No. 12-cv-00630-LHK
**SAMSUNG'S JMOL REPLY**

1    Samsung is entitled to judgment as a matter of law or, in the alternative, amendment of the

2    judgment for the reasons set forth in its motion ("Br.") and below.

3    **I.       SAMSUNG IS ENTITLED TO JMOL AS TO THE '647 PATENT**

4            **A.       No Reasonable Jury Could Find Infringement Of Claim 9 Of The '647 Patent.**

5            Apple failed to prove at trial as a matter of law that any Samsung product infringes the

6    '647 patent.  In its Opposition ("Opp."), Apple tries to plug the fatal gaps in the trial record by

7    citing to orders from other cases and this Court's preliminary injunction order, which was based

8    on a different record.  None of these has any bearing on whether a reasonable juror—considering

9    *the record Apple made at trial*—could find that Samsung's products infringed claim 9.

10           The record is deficient as a matter of law.  For example, Apple often cites only to

11   conclusory expert testimony with no supporting evidence.  Indeed, the primary basis for Apple's

12   claim that a reasonable juror could find that the accused products have an analyzer server that

13   "receives data having structures from the client" as required by the Federal Circuit's construction

14   is its expert's "[y]es, they do" response to two leading questions.  Tr. at 3019:18-21, 3021:25-

15   3022:3; Opp. at 5, 7.  This is insufficient.  An expert's say-so cannot substitute for a fact in the

16   record.  *See Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000).

17           Apple avoids the trial record because Apple decided to bet its case-in-chief on overly broad

18   claim constructions now rejected by the Federal Circuit.  The result of Apple's gambit is two-fold:

19   (1) Apple's pre-recall testimony contains no support for finding that accused products include the

20   "analyzer server" and "linking" limitations; and (2) in an effort to appear consistent to the jury,

21   Apple's post-recall testimony did not address significant elements—such as showing that the

22   analyzer server "receives data" or that connections are "specified"—at all.

23                   **1.       Apple's Trial Presentation Relied Upon The Rejected Claim**
                                **Constructions And Represents A Failure of Proof.**
24

25           Until the last day of trial, Apple and its expert Dr. Mowry alleged infringement under

26   Apple's proposed constructions only.  Dkt. 1521-3 at 2-3; Tr. 828:16-20, 840:6-22, 2789:22-24.

27   Dr. Mowry's pre-recall testimony about the analyzer server term used the same language as

28   Apple's proposed construction for that term in *Motorola*, which Dr. Mowry himself termed

1  "Apple's proposed construction."  Dkt. 1673-7 ¶ 68; Dkt. 118-11 at 10.  This is the exact

2  construction the Federal Circuit rejected.  Apple does not dispute that it made a strategic choice to

3  present its pre-recall case under the constructions ultimately rejected by the Federal Circuit.

4        Dr. Mowry's post-recall testimony did nothing to correct these deficiencies.  Instead, in an

5  effort to save face with the jury and pretend nothing had changed since his first testimony, Dr.

6  Mowry repeated his prior analysis, substituting the language of the *Motorola* constructions for the

7  words he previously used.  *See* Tr. 3016:4-3032:5.  He pointed to no new code—despite the new

8  requirements of a "specified connection" and a "server routine separate from a client that receives

9  data having structures from the client"—and no new demonstratives or exhibits.  *See id.*[1]

10       Apple claims that no new evidence was necessary and the same evidence Dr. Mowry

11  previously relied on satisfied the narrower Federal Circuit constructions.  Opp. at 4.  But Dr.

12  Mowry's conclusory post-recall opinions simply were not supported by that evidence.  As just one

13  example, Apple cites the following testimony as support for finding the accused "analyzer servers"

14  receive data having structures from a client, as required by the Federal Circuit's construction:

15       Q.  Do all of the routines you've just pointed the jury to on these two slides receive
         data having structures from either the Messaging client or the Browser client?
16       A.  Yes, they do.
             . . . .
17       Q.  Do each of the subroutines you've just described to us . . . receive data having
         structures from either the Messaging client or the Browser client?
18       A.  Yes, they do.

19  Tr. at 3019:18-21, 3021:25-3022:3.[2]  There is no factual support for Dr. Mowry's opinion because

20  the accused devices do not include an "analyzer server" that "receives data having structures from

21  the [separate] client."  Apple wanted the jury to believe the new constructions changed nothing.

22  But that is not the case—if it were, recall would have been unnecessary.  Apple failed to put

23  forward evidence satisfying this and the other requirements of the new constructions.  Judgment of

24

25       [1]  Apple's Opposition also vaguely suggests the jury could have found some support for Dr.
     Mowry's say-so in the code.  Opp. at 4.  But Apple does not identify what that support could

26  possibly be.  Apple's own expert did not identify any support because there is none.

27       [2]  Apple also cites to pre-recall demonstratives and testimony, but they include no discussion
     of any analyzer server receiving data from a separate client application for detection.  Rather, they
28   are directed to how the alleged "linking" and "action processor" limitations are satisfied.

1    non-infringement as a matter of law is therefore required.

2         **2.      Apple Cannot Rely On Past Orders By This And Other Courts To Fill**
3                 **Gaps In Its Trial Presentation.**

        Throughout its Opposition, Apple relies on a summary judgment ruling from Judge Posner

4    in a separate case involving different parties, different products, and different claims (because

5    Apple asserted claims 1 and 8 against Motorola; Apple did not assert claim 9).  Judge Posner's

6    factual findings about *Motorola* products and *Motorola* code are irrelevant—and accordingly

7    *Apple itself sought to have exactly this type of evidence excluded from the trial record*.  Dkt. 1281-

8    03 at 4; Dkt. 1398.  In relying on the very evidence Apple sought to keep from the jury to try to

9    fill in gaps in its trial presentation, Apple is acknowledging that its trial gambit failed.  That Apple

10   would try to rely on a form of pseudo-collateral estoppel from Judge Posner's summary judgment

11   order yet claim it was not collaterally estopped by Judge Posner's claim construction rulings—

12   rulings of law—is a contradiction that should not be lost on the Court.

13           Beyond Judge Posner's previous summary judgment order, Apple also seeks to plug the

14   gaps in its trial presentation with this Court's preliminary injunction order.  But that order was

15   based on a different record: the Court stated as much at the summary judgment hearing and in its

16   ruling on the '647 patent.  Dec. 12, 2013 H'rg Tr. at 31:21-33:6; Dkt. 1151 at 19.  Indeed, the

17   evidence in front of the court during the preliminary injunction stage is definitively not the same

18   evidence in front of the jury, given Dr. Jeffay's extensive source code analysis and Ms.

19   Hackborn's testimony regarding "servers" in Android at trial.  *Id.*; Tr. 1585:14-16.  Whether

20   Apple gave the Court sufficient cause to find a likelihood of infringement does not resolve

21   whether it gave the jury sufficient grounds to reasonably conclude Samsung infringed the patents.

22        **3.      Pretrial And Recall Procedure Are Irrelevant Here, Where The Only**
23                **Relevant Consideration Is The Record Apple Failed To Make At Trial.**

24           Apple's Opposition also focuses on pre-trial and recall procedure, claiming that Samsung

25   should have challenged Dr. Mowry through *Daubert*, should have sought claim constructions

26   before trial, and should have challenged the recall procedure.  Putting aside the inaccuracy of

27   Apple's claims about these procedures, they are irrelevant here.  Samsung's motion is directed to

28   the evidence submitted at trial—not to the admissibility of Dr. Mowry's opinion, Apple's violation

1  of principles of collateral estoppel, or the suitability of the recall procedure.  Samsung is entitled to

2  JMOL not because of the procedures employed here but because Apple failed to prove its case.[3]

### 4.    The Accused Samsung Devices Do Not Infringe Claim 9.

#### (a)    The accused devices lack a "specified connection"

5  Claim 9 requires that the "analyzer server" "link[] actions to the detected structures."  The

6  Federal Circuit's construction of "linking actions" is "creating a specified connection between

7  each detected structure and at least one computer subroutine that causes the CPU to perform a

8  sequence of operations on that detected structure."[4]

9  As set forth in Samsung's opening brief, the accused products do not perform the claimed

10  linking.  Br. at 8-11.  Rather, as explained by Google engineer Dianne Hackborn, the system was

11  designed to be flexible (*i.e.*, no specified connections between a structure and action) because she

12  wanted to allow a user to choose, for instance, to compose an email message and then "give it to

13  Android and then Android will find an application that will actually do that."  Tr. 1580:7-13,

14  1580:20-1581:6 (Hackborn); *see also* Tr. 1794:3-1796:11, 1818:2-24 (Jeffay).

15  In contrast to the evidence actually presented, Dr. Mowry's pre-recall testimony failed to

16  provide any basis for a reasonable juror to find a "specified connection," and post-recall, Dr.

17  Mowry did not point to any evidence that the routines that will "cause[] the CPU to perform a

18  sequence of operations on the detected structure" are part of a "specified connection" to a detected

19  structure.  Rather, in an effort to try to remain consistent despite the inherent contradictions in his

20  position, Dr. Mowry offered a different explanation that conflicts with the "user interface"

21  limitation of claim 9.  Dr. Mowry relied on the process of an Intent being sent to the StartActivity

22  program routine ***after*** the user selects the name of an action from the context menu as the

---

3  Apple makes vague waiver arguments without specifying exactly what it believes Samsung
has waived.  Opp. at 3.  Samsung properly raised its challenges to Apple's lack of proof in its Rule
50(a) motion, Dkt. 1663, and in oral argument after recall testimony.  Tr. 3114:15-3128:11.

4  Apple claims Samsung's motion adds words like "pre-programmed" or "preset" to the
Federal Circuit's construction.  Not so.  Those words plainly describe the construction, as it is
undisputed that the "specified connection" formed by the analyzer server must be in place *before*
the user selects the action from the menu, given that the "user interface" limitation requires
selection of a "link<u>ed</u> action."  JX1 at claim 1.

Case No. 12-cv-00630-LHK
SAMSUNG'S JMOL REPLY

1   "specified connection."  Tr. 854:14-856:22, 857:22-858:10, 860:8-861:1, 2795:13-2796:16,

2   3020:1-21, 3021:12-19.  This conflicts with the "user interface" limitation, which requires "a user

3   interface enabling the selection of a detected structure and a ***linked*** action," *i.e.*, the linking must

4   occur ***before*** the user's selection of an action.  This alone is grounds for granting JMOL.

5          Apple cites to two types of evidence that it claims could support a reasonable juror in

6   concluding that the "linking" limitation is satisfied:  (1) the functionality of the accused devices,

7   including videos shown to the jury, and (2) the entirety of the admitted Samsung and Google

8   source code (*i.e.*, JX50A, JX51A, and JX53A).  Opp. at 8.  As to the first, Apple's own expert told

9   the jury that reviewing the user-facing functionality for the "linking" limitation was insufficient.

10   Tr. 849:7-13.  That Apple chooses to rely on evidence of user-facing functionality confirms the

11   limitations of Apple's overall approach at trial, where it tried to satisfy structural "under the hood"

12   software limitations with mere evidence of functionality seen by a user.  No reasonable juror could

13   find a "specified connection" exists merely through operating or watching the operation of an

14   accused device, particularly given Dr. Mowry's admission.  As to the second type of evidence,

15   Apple's citation to all of Samsung and Google's admitted source code is so overly broad as to be a

16   non sequitur.  Indeed, JX51A and JX53A are not even code for the accused devices. Apple can

17   provide no citation to the specific code it contends forms the "specified connection" between

18   structures and actions because there is no "specified connection."

19          Apple improperly tries to dismiss Ms. Hackborn's factual testimony by claiming that the

20   jury need only decide a "factual dispute between the experts."  Opp. at 9.  But there is no factual

21   dispute, between the experts or otherwise; there is Ms. Hackborn's factual testimony that no

22   application is "specified" by an analyzer server to operate on a structure, and then there is Apple's

23   failure to rebut or dispute that testimony.  That Dr. Mowry testified that "her testimony did not

24   affect his opinion," Opp. at 9, is simply proof that Apple and Dr. Mowry can only prevail if the

25   jury were to ignore the only facts before them—something a reasonable juror cannot do.

26          **(b)       The accused devices lack an analyzer server**

27          The Federal Circuit construed "analyzer server" as "a server routine separate from a client

28   that receives data having structures from the client."  Apple's Opposition provides the Court no

1   proof that a reasonable juror could rely on to find that (1) the accused products have an analyzer

2   server that is "separate from" client applications or (2) that the code Dr. Mowry accuses of being

3   the analyzer server "receives data" from the alleged client applications.

4          Apple spends this portion of its Opposition on irrelevant arguments that do not address the

5   *trial record* at all.  As an example, Apple claims Samsung's argument that Apple failed to show

6   that the alleged "analyzer server" "receives data" is merely a restatement of Samsung's

7   "separateness" argument.  Opp. at 7.  This ignores that "receiving data having structures from a

8   client application" is *expressly* required by the Federal Circuit's construction as a measure of

9   separateness—not arbitrary criteria selected by Samsung for measuring the presence of an

10   "analyzer server."  Apple tries to subsume one point into the other, however, because Dr. Mowry's

11   testimony on whether the "analyzer server" code "receives data" is wholly conclusory.  Apple can

12   only point to "evidence" that consists of conclusory "[y]es, they do" answers in response to

13   leading questions restating this requirement.  *Id*. at 3019:18-21; 3021:25-3022:3; *see also supra*

14   n.1.  This is the best Apple can do, despite the fact the Federal Circuit's construction is explicit on

15   this point.  Once again, on recall, Apple decided to pretend Dr. Mowry's testimony pre- and post-

16   recall was consistent, and in doing so failed to provide any basis for a juror to conclude data

17   having structures is ever sent to the alleged "analyzer server" from a separate client application.

18          Apple also failed to show that the alleged "analyzer servers" of the accused devices are

19   "separate" from client applications, as required by the Federal Circuit's construction.  The only

20   fact testimony on this point once again came from Ms. Hackborn, who explained that the code

21   Apple accuses "does not run on its own.  It runs as part of the application that's using it."  Tr.

22   1585:14-16; *see also* Tr. 1583:3-1584:13, 1585:19-1586:10.  Apple did not dispute this testimony.

23          Pre-recall, Dr. Mowry omitted the client-server relationship entirely, testifying as if there

24   was no requirement that the server be separate.  Tr. 850:11-861:7.  Dr. Mowry did little to address

25   that deficiency on recall.  Apple cites only to Dr. Mowry's unsupported claims that Google

26   develops the accused code independently of the accused applications, and that Google intends for

27   these libraries to be reused.  Opp. at 6.  There is no record support for Dr. Mowry's claims about

28   the intent of the programmers who wrote this code; it is mere conjecture, and Apple did not

examine Ms. Hackborn on the point.  Nor is intent ever relevant to direct infringement, as Apple

suggests.  *Global-Tech v. SEB*, 131 S. Ct. 2060, 2065 n.2 (2011).  Similarly, Apple cites to

multiple unfounded claims by Dr. Mowry that the code in question is reused by other applications

or runs from the same location in memory.[5]  Opp. at 6; Tr. 3022:4-3024:19.  But Dr. Mowry failed

to provide any support for these claims through documentation, code, or testimony of any

witness—including Ms. Hackborn, who was available for cross-examination.  Apple's Opposition

demonstrates that absent its expert's insufficient say-so, there is no evidence that any application

other than the accused applications (which allegedly each has its own separate "analyzer server")

uses the code in question.  Apple cannot name even one.

        Incredibly, in its Opposition, Apple also claims that the existence of what its expert terms

"glue code" is evidence of a client-server architecture in the accused devices.  But Apple does not

dispute that its expert admitted that "glue code" is not a term of art taught in computer science.

Tr. 3047:9-3050:7.  Nor does Apple dispute that this alleged "glue code" *is the code that performs*

*linking*—yet is part of the accused "client" applications from which it must be separate if it is to

infringe.  Opp. at 7.  The bare truth is that "glue code" is not support for the "separateness" of an

analyzer server—it is a term Dr. Mowry hides behind to cover for the fact that the "analyzer

server" code he says performs "linking" is "code in the client" and thus not "separate from the

client."  Tr. 854:14-856:22, 860:8-861:1; Tr. 3020:8-11, 3020:19-21, 3021:16-19.

                **(c)     The accused devices lack an action processor**

        Apple has also failed to introduce evidence sufficient for a reasonable juror to conclude the

accused devices have the claimed "action processor."  The Court construed "action processor" as

"program routine(s) that perform the selected action on the detected structure."  Dkt. 447 at 20.

---

[5]  Apple also claims that a "roughly contemporaneous" email from Dr. Bonura stated that he
was looking into using a "shared library" instead of a server, and that this supports Dr. Mowry's
claim that the accused devices have a "separate" server.  Opp. at 5.  As an initial matter, the email
was not "roughly contemporaneous"—it was sent well over 10 months after the filing of the patent
(JX1; DX334) and shows the inventors did not in fact conceive of "shared libraries" as part of the
invention they sought.  And the inventors' later work at Apple has no bearing on the fact that
Apple failed to prove there is a client-server architecture used *in the accused Samsung products*.

As set forth in Samsung's opening brief, Apple and Dr. Mowry failed to identify how the alleged "action processor" routines performs the "selected action" (*e.g.*, "Send email") "on a detected structure."  Tr. 873:8-874:4; PDX88.35; Tr. 2794:1-2796:21.  Dr. Mowry acknowledged that when a user chooses the "selected action," startActivity merely "makes use of these other routines" that will ultimately cause an application to launch (but still not take the action in question).  Tr. 873:17-874:2.  Apple baldly states that this is sufficient, because it claims the user can then perform the action.  Opp. at 9-10.  But, as a matter of law, it is not:  the Court's construction requires that the "action processor" "perform the selected action on the detected structure"—not merely prepare the device so that the user must take the action.[6]

### (d)   The Jelly Bean Galaxy Nexus Does Not Infringe

Apple's Opposition does not dispute (1) that the evidence unequivocally shows Jelly Bean Browser only detects a structure *after* the user selects that structure on the screen (Tr. 909:8-16; *see also* Tr. 2791:24-2793:23), and (2) that Apple only accuses the Browser on the Jelly Bean Galaxy Nexus of infringing.  Opp. at 10-11.  Accordingly, no reasonable juror could find that the Jelly Bean Galaxy Nexus infringes claim 9 of the '647 patent.

### B.   Samsung Is Entitled To JMOL That The '647 Patent Is Invalid.

Apple makes several arguments in support of its position that claim 9 of the '647 patent is not obvious in light of Sidekick.  Opp. at 11-14.  All fail for the reasons enumerated below.

Apple misstates the record when it asserts that Dr. Jeffay offered "only conclusory statements" that it would have been obvious to add missing elements to Sidekick, such as the "specified connection" or a pop-up menu.  Opp. at 11.  Rather, Dr. Jeffay's testimony was premised on the testimony of Sidekick developer Lars Frid-Nielsen and the undisputed functionality of the Sidekick software.  Tr. 1808:8-25, 1836:15-1837:23.  Moreover, Dr. Jeffay and Mr. Frid-Nielsen offered multiple reasons why a person of skill in the art might have modified Sidekick to arrive at the claimed invention.  Tr. 1722:23-1723:4 (Mr. Frid-Nielsen: "we used pop-

---

[6]  Apple points to videos and again cites to the entirety of Google, open-source, and Samsung code as satisfying this limitation, Opp. at 9-10, but this is insufficient.  *See supra* Section I.A.4.a.

1    ups, but we decided not to use a pop-up in order to preserve screen integrity."); Tr. 1810:12-

2    1811:7 (Dr. Jeffay: "in 1996, we've got tons of screen real estate, high resolution. Pop-up menus

3    are extraordinarily common."); Tr. 3093:11-3094:2 (Dr. Jeffay: "the most obvious way to

4    associate an action with structure would be via a pointer.").

5        Apple also repeatedly misrepresents the requirements of claim 9.  Apple first argues that

6    "claim 9 requires detection of multiple 'structures,'" while "Sidekick could detect only one

7    structure:  phone numbers."  Opp. at 12.  Here, Apple implies that claim 9 requires detection of

8    multiple *types* of structures.  But the word "type" appears nowhere in claims 1 or 9.  JX1.  Rather,

9    claims 1 and 9 merely require plural "structures."  *Id.*  If a single phone number is a structure, as

10   Apple admits, then the multiple phone numbers detected by Sidekick comprise multiple structures,

11   exactly as the claims require.[7]  Apple next argues that claim 9 requires multiple actions, despite

12   the Federal Circuit's construction of "linking actions to the detected structures" requiring only "at

13   least one" action for each detected structure.  *Motorola*, Slip Op. at 21.  Apple's reliance on the

14   '647 specification as proof that multiple actions are required is inapposite:  the language of the

15   claim controls.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  The Federal Circuit

16   included "at least one" action in its construction—and nothing more—resolving this issue.

17       Apple also claims Sidekick does not "enable[e] the selection of a detected structure"

18   because a user must "be able to choose one of them out of a set of the structures."  Tr. 924:9-14.

19   But in the very testimony cited by Apple, Dr. Jeffay confirmed that with Sidekick a user "can pick

20   any number that they want and dial it."  Tr. 1838:24-1839:18.

21       Lastly, Apple does nothing to remedy its failure to offer evidence of any objective indicia

22   of nonobviousness.  Opp. at 13-14.[8]  As an initial matter, Samsung  has rebutted Apple's copying

23   _____

24       [7]  Apple makes much of purported "errors" in Dr. Jeffay's demonstration of the Sidekick
     system.  But as Dr. Mowry admitted *on direct examination*, if the "+" preceding an international

25   number in Dr. Jeffay's demonstration had been replaced with the "011" that it represents, Sidekick

26   would have detected and been able to dial the number.  Tr. 2808:22-2809:2.
       [8]  Apple also claims to have offered evidence of "the innovative aspects of the invention."

27   Opp. at 14.  But this is not a secondary consideration, and is therefore irrelevant to the
     obviousness inquiry.  *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

28

allegations at length and does not repeat that analysis here.  Dkt. 1906 at 15-17.  Apple's assertion

of long-felt need—"Google's need for the invention" as allegedly set forth in PX116—fails for

similar reasons.  PX116 at most shows a recognized need for one of the several functional aspects

of claim 9, and does not even address any of claim 9's program software routines.  Apple thus

failed to "establish a nexus" between PX116 and any long-felt need *for the claimed invention.  In*

*re GPAC Inc.,* 57 F.3d 1573, 1580 (Fed. Cir. 1995).  Furthermore, Apple argues that the patent's

specification highlights failure of others.  Opp. at 14.  But this undercuts the "failure of others"

factor completely, as every patent inventor claims his or her invention differs from the prior art.

## II.      SAMSUNG IS ENTITLED TO JMOL AS TO THE '721 PATENT

### A.      No Reasonable Jury Could Find Claim 8 Of The '721 Patent Valid.

#### 1.      The Undisputed Evidence Shows That The Combination Of Neonode And Plaisant Discloses All Elements Of Claim 8.

Apple does not dispute that the elements of claim 8 are the combination of known elements

used for their known purposes.  *Compare* Opp. at 21-22, *with* Br. at 16.  Instead, Apple focuses on

the references individually while ignoring the effect of the **combination** of Neonode and Plaisant.

When the sliding image disclosed in Plaisant (DX343, DX344) is combined with

unlocking a device using a sliding gesture as disclosed in Neonode (DX342), the image the user

moves to unlock the device is an "unlock image," and all the allegedly missing claim elements are

satisfied.  Apple argues that Neonode fails to disclose several key elements of the claim, Opp. at

14-15, but all of those elements stem from one element: the unlock image.  Prof. Greenberg

testified that Plaisant discloses an image that the user continuously moves from a predefined

location to a predefined region to change state, and visual cues indicating the required direction of

movement.  Tr. 1971:12-1972:8, 1975:16-20.  The entirety of that testimony went unrebutted.  Tr.

2863:12-2869:20.  It is also undisputed that Neonode discloses **unlocking** a portable electronic

device.  Tr. 1968:9-21; 1975:6-8.  Apple argues that Plaisant cannot provide the missing element

because it does not concern unlocking, *see* Opp. at 15, but as Prof. Greenberg explained, when the

image of Plaisant is **combined** with Neonode, the image used with the sliding unlock gesture

described in Neonode to unlock the device is an "unlock image."  Tr. 1975:4-1976:1.  Apple did

1   not rebut this point either.  Tr. 2863:12-2869:20.

2          **2.**        **Apple Ignores The Express Motivation To Combine In The References.**

3         Apple argues that a person of ordinary skill would not have combined Neonode with

4   Plaisant, Opp. at 16-17, but there is no record support for such a finding.

5         Critically, the references themselves affirmatively provide a motivation to combine

6   because both describe similar solutions to the exact same problem.  Plaisant expressly teaches that

7   sliding motions are preferable for preventing inadvertent activation:  "many other controls can be

8   designed using sliding motions," and "[a]nother advantage of the sliding movement *is that it is*

9   *less likely to be done inadvertently therefore making the toggle very secure.*"  DX344.02

10  (emphasis added).  Neonode similarly teaches using a sliding gesture to unlock from a keylock

11  screen designed to prevent unintentional calls. DX342.013.  It is well settled that motivation to

12  combine may "'come from the nature of a problem to be solved, leading inventors to look to

13  references relating to possible solutions to that problem.'"  *Ruiz v. Found. Anchoring Sys., Inc.*,

14  357 F.3d 1270, 1276-77 (Fed. Cir. 2004) (citation omitted).  It defies credulity, and the record, to

15  suggest that one skilled in the art looking at the problem of accidental activation in touchscreen

16  devices would not have combined the teachings of Plaisant and Neonode.  While Apple argues

17  that Plaisant is different because it involves a wall-mounted touchscreen, Opp. at 16, Apple's

18  expert never suggested that this point would lead inventors not to combine it with Neonode.

19        Apple's purported evidence of "teaching away" is also legally unsustainable.  Br. at 17-19.

20  A reference does not "teach away" unless it discourages a person of ordinary skill from following

21  a particular path.  *See In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).  Apple relies on the idea

22  that the facts must be viewed in the light most favorable to Apple, Opp. at 16-17, but mere

23  disclosure of alternative preferences does not teach away.  *See Allergan, Inc. v. Apotex Inc.*, ---

24  F.3d ---, 2014 WL 2579287, at *8-9 (Fed. Cir. June 10, 2014).[9]  Moreover, while Apple attempts

25   

           —————————————

26       [9]  Apple notes that *In re Kubin*, 561 F.3d 1351 (Fed. Cir. 2009), applies a "substantial

27  evidence" standard, Opp. at 17 n.3, but that standard did not change the rule that ambivalence does

28  not constitute teaching away, and the court thus found no teaching away there.  561 F.3d at 1357.

to limit *Galderma Labs., LP v. Tolmar, Inc.*, 737 F.3d 731 (Fed. Cir. 2013), to its facts, Opp. at 17 n.3, that case involved the same situation as here: the patent described one variation as not optimal, and the court held that this did not constitute teaching away.  737 F.3d at 738-39.  Indeed, the Federal Circuit overturned the district court's finding on this point.  *Id.*  Tellingly, Apple does not cite a single case in support of teaching away, and nothing in Dr. Cockburn's testimony supports the conclusion that Plaisant teaches away from using sliding gestures.

> ### 3.   Apple's "Secondary Indicia" Are Not Supported By The Evidence.

Apple tries to piece together secondary considerations of non-obviousness where there are none.  *See* Opp. at 17-18.  Apple first points to alleged praise for the invention, but relevant praise must be for the subject matter of the claim – that particular means of unlocking.  *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l*, 618 F.3d 1294, 1305 (Fed. Cir. 2010).  Apple offers no evidence that any alleged "praise," from Samsung's internal documents or from an audience at an Apple event, constitutes industry praise for the actual subject matter of the claim 8.  Opp. at 17-18.

Apple again asserts copying, but as Samsung has previously described in detail, there is **no** evidence in the record that any model found to infringe was a result of copying:  the puzzle design predated the so-called copying documents, the other *Samsung* design at issue was found not to infringe, and there was no evidence whatsoever of Google copying or being asked to copy.  *See* Br. at 24-25.  Similarly, there is no evidence that Samsung ever acted on any of the recommendations in the purported "copying" documents.  *Id.* at 25.

Apple's assertion of long-felt need, based only on its expert's personal frustration with one prior art device, is legally insufficient.  Apple offered no evidence of how long the alleged need was felt or when the problem first arose, as required to make such an argument legally relevant.  *See Perfect Web Techs. v. Infousa, Inc.*, 587 F.3d 1324, 1333 (Fed. Cir. 2009).  And any need had already been solved by unlocking mechanisms such as the one described in Neonode.  *See Geo. M. Martin*, 618 F.3d at 1304 ("Where the differences between the prior art and the claimed invention are as minimal as they are here, . . . it cannot be said that any long-felt need was unsolved.").

Neither Dr. Cockburn's conclusory statements nor Dr. Hauser's flawed survey establishes commercial success of the subject matter of claim 8.  In the case Apple cites, the patentee showed

1    a real-world example of price differences for products that did, and did not, practice the patented

2    invention, as well as evidence that customers required the patented feature.  *Transocean Offshore*

3    *Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1350 (Fed. Cir. 2012).

4         Finally, where, as here, "the inventions represented no more than 'the predictable use of

5    prior art elements according to their established functions,'" weak secondary considerations are

6    inadequate to establish non-obviousness as a matter of law.  *W. Union Co. v. Moneygram Payment*

7    *Sys., Inc.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) (citation omitted).

8         **B.    The '721 Patent Is Indefinite As A Matter Of Law.**

9         Claim 8 is also invalid because the claim term "unlock" is indefinite.  *See* JX10.  The facts

10   presented at trial, including Apple's own expert testimony that "when the device is locked, a

11   predefined set of actions is unavailable [and] the device will ignore most, if not all, input," Opp. at

12   19 (quoting Tr. 633:7-11), establish that claim 8 is indefinite.  The '721 patent contains no

13   guidance that would inform a person of ordinary skill in the art how many actions can be available

14   in a "predefined set of actions" or how much is "most, if not all, input."  *See generally* JX10.

15   Accordingly, it fails to inform a person of ordinary skill in the art about the scope of the invention

16   with reasonable certainty.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014).

17        Procedurally, there is no issue.  Apple concedes that Samsung  preserved the indefiniteness

18   defense in the Joint Pretrial Statement.  *See* Opp. at 19.  In contrast, in the case cited by Apple, the

19   defendant "merely reserved the right to appeal" the § 112 defense in the Final Pretrial Order.  *Lisle*

20   *Corp. v. A.J. Manuf. Co.*, 398 F.3d 1306, 1317 (Fed. Cir. 2005).

21        **C.    No Reasonable Jury Could Find The Galaxy Nexus Infringed The '721 Patent.**

22        Samsung is entitled to judgment of non-infringement on both Galaxy Nexus designs.

23        With respect to both Galaxy Nexus designs, Apple argues that "an unlock image" can be

24   more than one unlock image.  Whether it is one image or multiple images, however, the claim is

25   clearly written: "the" unlock image that moves has to be one or more of the previously identified

26   images.  This is the plainest of meanings.  When a term is introduced with an indefinite article

27   ("an unlock image") and is followed by subsequent use of the same term preceded by the definite

28   article ("the unlock image"), it is understood that the term is referring to the same image.

With respect to the Galaxy Nexus Jelly Bean design, where the lock disappears and is replaced by a series of dots, there is no evidence from which a reasonable jury could find that it satisfies the "continuously move the unlock image" and "unlock the hand-held electronic device if the unlock image is moved" limitations of claim 8.  Apple has never identified any "unlock image" that continuously moves on the touch screen in accordance with movement of user contact. While Apple argues that the "spotlight effect on the dots" moves, Opp. at 21 n.5, that does not establish that the unlock image itself – either the lock or the dots – move, as required by claim 8.

Finally, Apple offered no evidence of the required "instructions."  Br. at 21.  Apple argues that all computing devices have "instructions," Opp. at 21, but the instructions must be specifically "to detect a contact," "to continuously move the unlock image," and "to display visual cues," JX10 at 19:50-20:12, and Apple's expert did not look at source code to show this existed.  Tr. 626:5-11.

### D.    No Reasonable Jury Could Find Clear And Convincing Evidence Of Willful Infringement Of The '721 Patent.

#### 1.    Samsung's Defenses Are Objectively Reasonable.

Nothing in Apple's brief alters the fact that a reasonable litigant would have expected to invalidate the '721 patent based on the combination of Neonode and Plaisant.

Apple begins its argument with yet another assertion of copying, which is erroneous for all of the reasons Samsung has previously stated.  Certainly nothing in the materials cited by Apple is comparable to *Tryker Corp. v. Zimmer, Inc.*, 2013 U.S. Dist. LEXIS 171817 (W.D. Mich. Aug. 7, 2013), where defendant's lead engineer acknowledged patentee's inventions were "pioneering" and admitted his design team was told to model its products after patentee's.  *Id.* at *40-*41. Also, unlike the cases cited by Apple, this is not a case where the PTO considered and rejected the invalidity arguments presented at trial.  Indeed, there is no evidence that the PTO ever considered any combination of Neonode and Plaisant, or ever saw the Plaisant video.  Dkt. 1906 at 20-21.

Apple improperly focuses on this Court's consideration of Plaisant alone at the preliminary injunction stage.  Opp. at 22-23.  At that time, based on the evidence before it, the Court did not deem the Neonode device to be admissible prior art, and therefore considered only Plaisant in assessing obviousness.  Dkt. 221 at 50-51.  Accordingly, this Court did not consider, let alone

1    reject, the invalidity argument that Samsung presented to the jury.

2           Finally, Apple points out that Samsung did not present non-infringement arguments for

3    five of the six accused products at trial, but Apple ignores that the jury reasonably found non-

4    infringement by three of the five products based on arguments before the jury.  *See* Dkt. 1884 at 5.

5    Also, Apple focuses on only a portion of Samsung's non-infringement argument for the Galaxy

6    Nexus, completely ignoring Samsung's second argument based on the lack of any moving unlock

7    image in the Galaxy Nexus Jelly Bean design.  *See* Opp. at 23.  In sum, Samsung's defenses were

8    at least objectively reasonable, and there is no basis for a finding of willfulness.

9           **2.      The Jury's Willfulness Finding Is Not Supported By Substantial Evidence.**

10          As to subjective willfulness, Samsung had no pre-suit notice of the '721 patent, and no

11   new model released by Samsung since this suit was filed has even been accused of infringing the

12   '721 patent.  Br. at 23.  Apple points to Samsung's continued sales of the Galaxy Nexus device

13   through January 2013, Opp. at 23, but ignores the fact that the Galaxy Nexus was upgraded to the

14   Jelly Bean version of Android (which has an especially compelling defense of non-infringement)

15   in the summer of 2012, and Samsung updated the other accused devices to non-accused designs by

16   August of 2012.  Br. at 23-24.  Moreover, contrary to Apple's assertions, there is no evidence that

17   Samsung's available non-infringing designs were inferior:  Apple's expert could not point to a

18   single end-user complaint concerning Samsung's admittedly non-infringing unlock screen on its

19   Galaxy S III phones.  *See* Tr. 722:16-723:3, 748:6-11.  Apple also has not presented any evidence

20   of copying, as Samsung explained in detail in its motion.  *See* Br. at 24-25.

21   **III.   SAMSUNG IS ENTITLED TO JMOL THAT THE '172 PATENT IS INVALID**

22          The Court should grant JMOL that claim 18 of the '172 patent is obvious.  Apple's

23   Opposition, as with Dr. Cockburn's presentation during trial, seeks to mislead this Court about the

24   teachings of the Robinson and Xrgomics prior art, which disclose each and every limitation of

25   claim 18 of the '172 patent.  Tr. 2010:15-2024:6 (Widgor).  Apple tries to suggest that Robinson

26   lacks multiple limitations of claim 18.  Opp. at 24-25.  But every limitation of claim 18 allegedly

27   missing from Robinson rises and falls with Robinson's disclosure of a "current character string" in

28   a "first area."  Tr. 2016:5-2018:19, 2023:15-2024:6.  It is this limitation—and only this

Case No. 12-cv-00630-LHK
SAMSUNG'S JMOL REPLY

1   limitation—that a person of skill in the art would need to be aware of beyond Robinson to render

2   claim 18 obvious.[10]  *Id.*  And Xrgomics discloses this current character string in the first area.

3   2017:25-2018:19.  Samsung therefore established a *prima facie* case of obviousness for claim 18.

4          Secondary considerations do not alter this conclusion, because there is no evidence in the

5   record of *any* secondary considerations.  For "objective evidence to be accorded substantial

6   weight, its proponent must establish a nexus between the evidence and the merits of the claimed

7   invention."  *In re GPAC,* 57 F.3d at 1580.  Apple relied on Dr. Hauser's survey, but it was fatally

8   flawed; it presented an inaccurate description of claim 18 and available non-infringing

9   alternatives. Tr. 2029:8-2031:2.  Apple's reliance on the commercial success of Samsung's

10  devices is misplaced; the commercial success of Samsung's Galaxy S III—which does not infringe

11  the '172 patent—actually supports the obviousness of claim 18.  Tr. 777:6-15.  Apple also

12  presented no evidence of praise for the claimed invention:  the documents Dr. Cockburn testified

13  about merely demonstrate isolated complaints for Samsung's non-infringing alternative

14  keyboards.  Tr. 777:16-22 (concerning PX168); Tr. 701:25-702:18 (concerning PX169).

15  **IV.    SAMSUNG IS ENTITLED TO JMOL ON CLAIM 25 OF THE '959 PATENT**

16          **A.    WAIS Anticipates Claim 25 Of The '959 Patent.**

17          Apple's validity argument boils down to the erroneous claim that the term "program

18  instructions" can *only* describe compiled source code.  Opp. at 27.  But there is no basis to add

19  "compiled" to the claim language; it is absent from the claim, just as it is absent from the

20  specification.  JX4.  Apple's meritless position is contrary to both fact and law.[11]

21          Apple next claims Samsung was required to show **use** of WAIS's "program instructions"

22  in exactly the way Dr. Rinard demonstrated for the jury.  Opp. at 28.  But claim 25 requires only

---

23

24      [10]   Apple's Opposition is overly broad in this regard, claiming that "neither Robinson nor
        Xrgomics teaches replacing a current character string in a first area with a suggested replacement

25      string."  Opp. at 25.  At trial, the Court granted Samsung's HPO to prevent Apple's expert Dr.
        Cockburn from offering this very same inaccurate testimony.  Dkt. 1740 at 3.

26      [11]   *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 678, 694 (E.D. Va. 2009)
        (refusing to construe "executable program instructions" as "object code (i.e., source code that has

27      been compiled)" because neither the claim language nor intrinsic evidence used the words "object
        code" or "compiled").

28

Case No. 12-cv-00630-LHK
SAMSUNG'S JMOL REPLY

1   "program instructions," not "use."  Dkt. 854-4 at 14-16.  Samsung overwhelmingly made this

2   particular showing at trial and Apple does not dispute it.  Br. at 28.  Apple's last stand is that

3   WAIS does not have a "plurality of heuristics."  Yet Apple refers to "heuristics" – plural – it

4   admits were present in WAIS, including a "heuristics *set*."  Opp. at 29.  "Plurality" is simply

5   "more than one," as Apple admits, Tr. 949:19-22, and a "heuristics set" is necessarily a "plurality

6   of heuristics."  Thus, Apple's arguments are counter-factual and do not prevent JMOL.

7         **B.**     **Claim 25 Is Obvious In Light Of Smith And Shoham.**

8         Apple does not identify even one limitation Samsung failed to address at trial.  Unlike

9   *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012),

10  Samsung's expert provided element-by-element testimony and motivation to combine.  Br. at 31-

11  32; Tr. 1929:12-33:9.  Apple's reliance on *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340,

12  1350 (Fed. Cir. 2000), is misplaced.  "[O]bjective indicia of nonobviousness must be considered

13  before reaching an obviousness conclusion," and does not depend on a *prima facie* case of

14  obviousness.  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343,1355 (Fed. Cir. 2013).  Samsung did

15  make out a *prima facie* case, and no reasonable jury could find claim 25 non-obvious.

16        **C.**     **Samsung Properly Re-Raised Indefiniteness And Showed Indefiniteness Under Both The "Insolubly Ambiguous" And The Now-Prevailing *Nautilus* Standard.**

17        Indefiniteness is a matter of law with *de novo* review, and the "insolubly ambiguous"

18  standard no longer controls.  After Samsung filed its JMOL motion, the Supreme Court clarified

19  that Section 112 "require[s] that a patent's claims, viewed in light of the specification and

20  prosecution history, inform those skilled in the art about the scope of the invention with

21  reasonable certainty."  *Nautilus*, 134 S. Ct. at 2128-30; *see* Dkt. 1905.  The term "heuristic" in the

22  '959 patent renders the claim indefinite.  Such an open-ended, ill-defined phrase creates precisely

23  the "ambiguity" that the Supreme Court warned creates a "zone of uncertainty" that prevents

24  "clear notice" to the public of what is claimed, thereby discouraging "enterprise and

25  experimentation."  *Nautilus*, 134 S. Ct. at 2129 (describing the "powerful incentives" for patent

26  holders to "inject ambiguity into their claims").  Samsung presented ample evidence that persons

27  of ordinary skill could not determine the scope of the term "heuristic" with ***any*** certainty, let alone

28

-17-

1  reasonable certainty.  *See* Br. at 32 (citing Dkt. 805-4 at 16-22, 946-4 at 9-13); *see also* Fazio Ex.

2  13 to Dkt. 946-5.  And at trial Apple incredibly asserted that any "good ideas" were "heuristics."

3  Tr. 938:10-20.  This subjective and uncertain claiming is precisely what *Nautilus* forbids.

4          Apple claims that the Court's construction of "heuristics," or the presence of some

5  algorithms the parties agree are heuristic, defeats indefiniteness – but it is not "sufficient that a

6  court can ascribe *some* meaning" in post hoc review.  *Nautilus*, 134 S. Ct. at 2130.[12]  Apple is also

7  incorrect in arguing that Samsung is procedurally barred from re-raising indefiniteness after trial.

8  *Nautilus* changed the standard for indefiniteness, and this Court may properly address that new

9  law.  Moreover, Apple misconstrues the Court's order.  Apple argues that indefiniteness cannot be

10  considered again because "the parties' disputes regarding claim elements that referred to heuristics

11  were not related to the definition of 'heuristic' or to whether something was or was not a

12  heuristic."  Opp. at 31.  But the Court did not bar considering any future change in law.  Nor did

13  the Court state that only an explicit dispute over "the definition of 'heuristic'" would or could

14  warrant reexamining indefiniteness.  Rather, the Court noted that if Apple distinguished prior art

15  based on a lack of "heuristics," this may warrant revisiting indefiniteness.  Dkt. 1150 at 33 n.11.[13]

16  Apple's expert did exactly that:  his validity rebuttal identified "heuristics" as the ***only*** limitation

17  missing from Smith and Shoham – prior art references Samsung asserted to demonstrate

18  obviousness.  Tr. 2828:1-8.  Apple's Opposition likewise identifies "a plurality of heuristics" as

19  the only element missing from Smith and Shoham.  Opp. at 30.  Even on Apple's misreading of

20  the Court's prior order, the Court should find claim 25 of the '959 patent indefinite.[14]

---

22      [12]  This Court made valiant efforts to ascribe "*some* meaning" to the term "heuristic" – a
23  process that the Court itself admitted was difficult.  Dkt. 221 at 15 ("Apple has been less than
    clear as to how, exactly, it defines 'heuristic'").  This Court was frustrated for good reason:  the
24  claims lack "reasonable certainty."

      [13]  This common-sense reading aligns with the Court's rationale in its summary judgment
25  decision, which considered whether the term "heuristics" was the only element distinguishing the
26  claimed invention from the prior art.  Dkt. 1150 at 32.

      [14]  Apple faults Samsung for failing to present evidence to the jury that the term was
27  ambiguous.  Opp. at 32.  Yet in the 1846 trial, Apple objected to Samsung's contention that a term
    was indefinite, and prevailed in convincing the Court that Samsung could not argue indefiniteness
28      (footnote continued)

## V.     NO REASONABLE JURY COULD FIND CLAIM 20 OF THE '414 PATENT VALID

Samsung presented clear and convincing evidence that Windows Mobile 5 anticipates claim 20 of the '414 patent using either (1) three Exchange Provider components, or (2) two Exchange Providers and the IMAP Mail component.

### A.     The Three Windows Mobile Exchange Components Each "Provide" A Thread

Apple admits that Windows Mobile's three Exchange Provider components meet all limitations of claim 20, Opp. at 33-34, with one exception:  it claims that they do not each "provide" a "synchronization processing thread."  *Id.* at 33.  However, the inventor explained that a synchronization software component would "provide" a thread so long as that component "would have executing code and that executing code must execute in a thread."  Tr. 2854:9-23. Also, Dr. Chase explained how the three Windows Mobile Exchange Providers each met this limitation.  Tr. 2854:9-23.  Apple provided no evidence to challenge any of this, but instead rested its defense on the idea that "provide" actually means only "create."  Opp. at 34; Tr. 2848:10-2849:1.  Apple agrees that the jury must interpret the plain and ordinary meaning of "provide," but failed to present any evidence to support that "provide" only means "create."  Opp. at 33; Tr. 2253:5-9, 2852:25-2853:9.  And for good reason:  the plain and ordinary meaning of "provide" is much broader than "create."  *See* Br. at 37-38.[15]  The three Windows Mobile Exchange Providers each provided a thread, thereby invalidating claim 20.

### B.     Claim 20 Requires Only *One* Component To Provide a Thread.

Even if Apple is right and the plain and ordinary meaning of "provide" is "create," Windows Mobile 5 still anticipates claim 20 because, as Apple admits, the IMAP Mail component

---

of that term at trial.  1846 Dkt. 1810 at 1-2; 1846 Dkt. 1881 at 1.  Having won its argument that indefiniteness "is a legal question for the Court," 1846 Dkt. 1810 at 2, Apple cannot now argue that Samsung failed to present sufficient evidence of indefiniteness to the jury.  Regardless, Samsung has, in fact, demonstrated that claim 25 is invalid as indefinite.

[15]   Apple briefly asserts that Samsung reads "'provided by' out of the claim."  Opp. at 34.  Not so:  the claim requires a thread that is "provided by" the "synchronization software component," so without "provided by," there would be no requirement for a "synchronization software component" in the first place.

1   *does* create a thread.  Dkt. 1818 at 6:7-8.  At trial, Apple did not address the IMAP component or

2   Samsung's related invalidity arguments *at all*, and has thus waived this issue.  Tr. 2846:8-2850:1.

3   Even if the Court considers Apple's arguments, they rest on a fundamental misunderstanding of

4   claims 11 and 20.  Apple argues that **all three** of the components in claim 20 must "provide a

5   thread," Opp. at 36-37, but this argument ignores the structure of the claim.  Critically, claim 11

6   does **not** claim a "synchronization software component" that provides a thread; it claims a **thread**

7   that is "provided by a synchronization software component.  JX7 at 33:49-54.  Under Apple's

8   view, if a patent claimed "paint applied to a house, provided by a paintbrush," further references to

9   paintbrushes could **only** be used for providing paint for **houses**, and could not refer to painting

10  anything else.  Opp. at 36.  The plain and ordinary meaning of the claim does not allow Apple to

11  interpret all instances of "synchronization software components" to require "synchronization

12  processing threads."  Apple's expert Dr. Snoeren agreed.  Tr. 978:3-6.

13          **C.      Samsung Presented Substantial, *Unrebutted* Evidence Of IMAP Mail.**

14          Unable to seriously dispute that the IMAP and Exchange components of Windows Mobile

15  5 together satisfy claim 20, Apple argues that Samsung failed to present sufficient testimony

16  regarding the IMAP Mail Component.  But Apple cannot escape the record.  Apple itself quotes

17  testimony from Dr. Chase describing "a fourth component" in Windows Mobile "called an "IMAP

18  Mail Component that can synchronize data with IMAP mail servers."  Opp. at 13 (quoting Tr.

19  2194:8-16).  Dr. Chase also testified that each of those four components—the three Exchange

20  Providers and the IMAP Mail component—is a "synchronization software component," Tr.

21  2253:20-2254:4, and that the IMAP mail component creates a synchronization processing thread.

22  Tr. 2254:10-13.  Dr. Chase further explained that a standard example of an IMAP mail server is a

23  "Cyrus" server that "stores mail data in the database."  Tr. 2196:10-12.  Apple concedes that Dr.

24  Chase *also* testified regarding a demonstrative illustrating the IMAP Mail component, Opp. at 35,

25  pointing the jury to the specific class in the Windows Mobile source code corresponding to the

26  IMAP Mail Component.  DX314A at MSFT_CODE0002642.  In sum, Samsung presented

27  detailed evidence about the IMAP Mail component—the only limitation on which Apple

28  attempted to distinguish Windows Mobile 5 prior art.  Claim 20 is invalid as a matter of law.

## VI.   THE RECORD LACKS SUFFICIENT EVIDENCE THAT SEC IS LIABLE FOR INDUCEMENT OR CONTRIBUTORY INFRINGEMENT

As an initial matter, the Court should reach the questions of induced and contributory infringement regardless of whether the Court affirms the jury's findings of direct infringement by SEC, SEA, or STA.  While judgment on indirect infringement in Samsung's favor may not affect the sum of damages awarded by the jury, resolution of Apple's alternative theories of liability will clarify issues for appeal and will affect any possible remand.

The record establishes no indirect infringement of the '647 patent.  Apple fails to address the standard for indirect infringement:  "Liability for induced or contributory infringement under § 271(b) or (c) requires knowledge that the induced acts constitute patent infringement." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1379 (Fed. Cir. 2013) (quotation marks omitted).  Instead, Apple offers only conclusory attorney argument that "the record at trial is more than sufficient to demonstrate Samsung's knowledge of and intent to copy and infringe" the '647 patent.  Opp. at 37-38.  But the record establishes no such thing.  *See* Dkt. 1906 at 15-17.

Apple's theory of indirect infringement appears to be that simply because Apple provided Samsung with notice of the '647 patent, Samsung is *per se* liable for both contributory and induced infringement.  This is not the law—mere knowledge of the patent is not enough.  *SynQor*, 709 F.3d at 1379; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (*en banc*).  There is no evidence of any specific intent in the record.  To the contrary, Dr. Jeffay's testimony demonstrates the existence of numerous objectively reasonable defenses to infringement—including invalidity—that negate the specific intent required for indirect infringement.  *SynQor*, 709 F.3d at 1379.; *see* Tr. 1767-1842, 3054-3099.  Apple further claims Samsung "specifically redesigned" its products to include infringing features, citing two Samsung-created product comparisons.  Opp. at 38 (citing PX146, PX121).  But these documents, created in 2010, do not establish any facts surrounding this purported redesign, including Samsung's intent.  *See* PX146, PX121.  Moreover, these documents do nothing to rebut that Samsung's products were capable of substantial non-infringing uses, such as Tap to Dial.  Tr. 1800:14-1801:14, 2798:9-21; *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851-52 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S.

1  Ct. 2238 (2011) (infringement under section 271(c) requires that the "material or apparatus" used

2  in practicing the patented process "have no substantial noninfringing uses").

3  **VII.   THE COURT SHOULD DEDUCT THE GALAXY S II AWARDS**

4        **A.   A Judgment Including A Double Recovery Is Barred By Law.**

5        The Federal Circuit would be forced to vacate a judgment awarding double recovery for

6  the same sales.  Apple does not dispute that a patentee that receives profits under 35 U.S.C. § 289

7  is not entitled to a further recovery for utility patent infringement from the same sale.  *See*

8  *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002); *see also* 35

9  U.S.C. § 289.  Nor does Apple dispute that the damages awards for the Galaxy S II Products

10  overlap with the final judgment in the 1846 case.  Contrary to Apple's contention, *see* Opp. at 39,

11  the controlling authorities uniformly support reducing jury awards to eliminate double recovery

12  before a judgment is paid.  *See Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000,

13  1019 (Fed. Cir. 2006); *Catalina Lighting*, 295 F.3d at 1291; *see also Arlington Indus., Inc. v.*

14  *Bridgeport Fittings, Inc.*, No. 3:01-CV-0485, 2010 WL 815466, at *4 (M.D. Penn. Mar. 3, 2010),

15  *aff'd per curiam*, 477 Fed. App'x 740 (Fed. Cir. 2012) (rejecting argument to delay deduction of

16  double recovery until after appeal).  Apple identifies no case permitting overlapping double

17  recovery awards to stand until a judgment is satisfied.  Instead, it relies on a case involving joint

18  and several liability, Opp. at 39, which is not at issue here and irrelevant in deciding when to

19  deduct double recovery outside that context.  *See* Br. at 41 n.8.

20        That this Court entered judgment of damages on the same sales in a different case between

21  the same parties is a distinction without a difference.  It makes no sense to bar double recovery if

22  the plaintiff files one lawsuit but not if it files two.  Apple argues that eliminating the double

23  recovery now would require further proceedings later if Samsung prevails on appeal, Opp. at 39,

24  but further proceedings would also be required if double recovery is not eliminated and Apple

25  prevails on appeal.  Apple knowingly sought impermissible double recovery, and should bear the

26  risk of post-appeal proceedings if awards in the 1846 case are reversed.

27        With respect to the time periods in Question 10b, Apple does not address the $21,108,660

28  for sales through June 30, 2012, and that amount should be deducted.  For July 1, 2012 through

Case No. 12-cv-00630-LHK

SAMSUNG'S JMOL REPLY

1   August 24, 2012, Apple improperly asks the Court to make findings inconsistent with the 1846

2   case.  There, the Court held that supplemental damages were improper for the period *because* it

3   was up to the jury to award damages for that period.  *See* 1846 case Dkt. 2271 at 3.  It would be

4   inconsistent to hold here that the jury's awards in the 1846 case *did not* cover that time period, and

5   would be an "improper invasion of the jury's province to determine actual damages" as the Court

6   rightly recognized.  *Id.* (quotation omitted).[16]  Damages of $2,012,273 for this period should be

7   deducted.  With respect to August 25, 2012 forward, Apple seeks both the jury's damages here

8   and supplemental damages in the 1846 case, which is improper double recovery.[17]  Apple cannot

9   have it both ways:  if $9,184,992 for sales from August 25, 2012 forward are included in a

10  judgment here, those sales must be excluded from supplemental damages in the 1846 case.

11      If the Court overturns liability for either the '647 or '172 patent, it should deduct both the

12  awards for that patent and the remaining impermissible double recovery on the other.  Apple's

13  plea not to recognize the amount of the awards attributable to each patent in Question 10b is

14  meritless.  Apple offers no basis for questioning that the jury awarded specific amounts for

15  specific patents as explained by Dr. Chevalier.  Instead, Apple again urges the Court to ignore

16  what is apparent from simple arithmetic.  *See* 1846 case Dkt. 2271 at 8 (holding Apple's purported

17  authorities for ignoring the math were unpersuasive in light of *In Re First Alliance Mortgage Co.*,

18  471 F.3d 977 (9th Cir. 2006)).  Apple's refusal to acknowledge this, without any alternative

19  explanation, does not justify entering a judgment inconsistent with the jury's clear intentions.

20      **B.      Supplemental Damages In The 1846 Case Cannot Be Awarded Here.**

21      Apple improperly asks the Court to "add $185 million to the existing judgment in the 1846

22  case" by calculating supplemental damages and interest.  Dkt. 1908-3 at 41.  The Court has no

23  jurisdiction to do so while the 1846 case is on appeal.  A notice of appeal "divests [a] district court

24  _____

25      [16]  Apple argues that "[t]he Court never held that the jury actually added" damages to account

26  for this period, Opp. at 41, but the court recognized that it was up to the jury to account for this
    period, and any uncertainty precluded holding that the jury did not do so.  1846 Dkt. 2271 at 3.

27      [17]  Apple ignores the fact that Samsung moves to amend the judgment under Rule 59(e), *see*
    Br. at 1, 41, which requires no preservation in a Rule 50(a) motion.

28

1   of jurisdiction with respect to matters involved with the appeal."  1846 case Dkt. 1032 at 2.  Once

2   a final judgment has been appealed, district courts cannot amend the judgment to include further

3   amounts tied to damages.  *See Garcia v. Burlington N. R.R. Co.*, 818 F.2d 713, 720-22 (10th Cir.

4   1987); *G & M Inc. v. Newbern*, 488 F.2d 742 (9th Cir. 1973).  Further, the data Apple relies on

5   from this case is not adequate to calculate supplemental damages in the 1846 case.  Among other

6   issues, additional discovery reflecting Samsung's changes to its accused products is necessary to

7   determine the units potentially eligible for post-verdict damages.[18]  *See* 1846 case Dkt. 2912 at 10.

8   And Apple's request is another improper motion for reconsideration – this one filed *in the wrong*

9   *action*.  *See* 1846 case Dkt. 2947 at 3 (rejecting Apple's earlier request for reconsideration pending

10  appellate review "as to the merits").  The Court should again dismiss Apple's request.

11  **VIII.   NO REASONABLE JURY COULD HAVE CONCLUDED THAT CLAIM 15 OF
         THE '239 PATENT IS NOT INFRINGED**

12

13          Contrary to Apple's assertions, Dr. Storer did not explain the plain and ordinary meaning

14  of "video capture module," "means for transmission," and "video" to the jury.  Opp. at 43-45.

15  Instead, he improperly argued that these terms were limited to embodiments in the specification

16  and commercial embodiments.  This violated the Court's warning that "[a]rguing claim

17  construction to the jury is inappropriate because it risks confusion and the likelihood that a jury

18  will render a verdict not supported by substantial evidence."  Dkt. 1301 at 5 (citing *CytoLogix*

19  *Corp. v. Ventana Medical Sys., Inc.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005)); *MediaTek Inc. v.*

20  *Freescale Semiconductor, Inc.*, No. 4:11-CV-5341 (YGR), 2014 WL 971765, at *5-*6 (N.D. Cal.

21  Mar. 5, 2014) (finding that accused infringer's expert was applying constructions other than the

22  plain and ordinary meaning); *see also* Fazio. Decl. Ex. A, *MediaTek* Reply Brief, at 3-13.

23          **Video capture module.**  Based on embodiments in the specification and commercial

24  embodiments, Dr. Storer testified that a "video capture module" must receive analog signals and

25          [18]   There are numerous errors in Apple's calculation of supplemental damages; however,
26  given the Court's acknowledgement it is a waste of time to litigate these before appeal, Samsung
    will address those errors, if necessary, at the appropriate later time and in the 1846 case.  Apple's
27  argument that Samsung did not appeal supplemental damages misses the mark.  Because the Court
    did not award supplemental damages, there was no supplemental award to appeal.

28

be something that is plugged into another component.  Br. at 45.  However, the Court never imposed these narrow limitations on this term,[19] and it was improper for Dr. Storer to instruct the jury with his specialized construction.

**Means for transmission.**  The Court's construction required that a modem be "connected to" a cellular phone.  Dkt. 1532 at 14.  But Dr. Storer repeatedly testified that the modem must be "connected *by cables*" to the cellular phone.[20]  Br. at 45; Tr. 2744:14-45:2, 2745:7-14.  Similarly, he argued claim 15 requires specific types of hardware communications ports, when the Court's claim construction merely required "communications ports."  Br. at 45; Dkt. 1532 at 14.

**Obtaining / transmitting captured video (FaceTime).**  Contrary to the plain meaning, Apple argued that FaceTime does not infringe because obtaining and transmitting captured video excludes obtaining and transmitting video frames.  Opp. at 43.  But again, the Court never limited the claims in this way.  Moreover, Dr. Storer admitted that FaceTime transmits video, Tr. 2781:10-14, and the inventor testified that the commercial embodiment of the '239 patent streamed video—*i.e.*, obtained and transmitted video frames.  Tr. 2512:16.

Apple's and Dr. Storer's arguments to the jury, which imposed narrow limitations that conflicted with the Court's constructions, were confusing and improper and resulted in a verdict that is not supported by substantial evidence.  *See CytoLogix Corp.*, 424 F.3d at 1173.  Under the plain and ordinary meaning of these terms, no reasonable jury could conclude that claim 15 was not infringed.  Br. at 44-45.[21]

## CONCLUSION

For the foregoing reasons, the Court should grant the relief as requested by Samsung.

---

[19]  Apple fails to defend Dr. Storer's "plugged into" requirement.  Opp. at 43-45.
[20]  Apple fails to defend Dr. Storer's "by cables" requirement.  Opp. at 43-45.
[21]  Samsung did not lose its objections in previous motions or otherwise waive them.  First, the issue of whether a "video capture module" must receive analog video and plug into another component was never before the Court.  Second, Samsung withdrew portions of its motion to strike and *Daubert* motions without prejudice.  Third, Samsung's Rule 50(a) motion argued that Apple's non-infringement arguments were based on erroneous claim constructions.  Dkt. 1803 at 7.  Dr. Storer relied on a comparison of the accused products with the commercial embodiment to support his erroneous claim constructions.  *See, e.g.*, Tr. 2755:14-57:23, 2732:18-38:6.

Case No. 12-cv-00630-LHK
SAMSUNG'S JMOL REPLY

1    DATED: June 13, 2014                Respectfully submitted,

2                                        QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP
3

4                                        By /s/ Victoria F. Maroulis
                                             Kevin P.B. Johnson
5                                            Victoria F. Maroulis
                                             William C. Price
6                                            Michael L. Fazio

7                                            Attorneys for SAMSUNG ELECTRONICS CO.,
8                                            LTD., SAMSUNG ELECTRONICS AMERICA,
                                             INC. and SAMSUNG
9                                            TELECOMMUNICATIONS AMERICA, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION

I, Michael L. Fazio, am the ECF user whose ID and password are being used to file the foregoing document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Victoria F. Maroulis has concurred in this filing.

Dated:  June 13, 2014

/s/ Michael L. Fazio
Michael L. Fazio