1   JOSH A. KREVITT (CA SBN 208552)
    jkrevitt@gibsondunn.com
2   H. MARK LYON (CA SBN 162061)
    mlyon@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
4   Palo Alto, CA 94304-1211
    Telephone: (650) 849-5300
5   Facsimile: (650) 849-5333

6   HAROLD J. McELHINNY (CA SBN 66781)
    hmcelhinny@mofo.com
7   JAMES P. BENNETT (CA SBN 65179)
    jbennett@mofo.com
8   JACK W. LONDEN (CA SBN 85776)
    jlonden@mofo.com
9   RACHEL KREVANS (CA SBN 116421)
    rkrevans@mofo.com
10  RUTH N. BORENSTEIN (CA SBN 133797)
    rborenstein@mofo.com
11  ERIK J. OLSON (CA SBN 175815)
    ejolson@mofo.com
12  MORRISON & FOERSTER LLP
    425 Market Street
13  San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
14  Facsimile:  (415) 268-7522

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

15  Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.

16

17                 UNITED STATES DISTRICT COURT

18               NORTHERN DISTRICT OF CALIFORNIA

19                      SAN JOSE DIVISION

20

| 21  APPLE INC., a California corporation, | Case No.   12-cv-00630-LHK |
|---|---|
| 22                    Plaintiff, | **APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PERMANENT INJUNCTION** |
| 23        v. | |
| 24  SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG | |
| 25  ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG | |
| 26  TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| 27                    Defendants. | |

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 1

    A.     Samsung Has Failed to Rebut Apple's Irreparable Reputational Harm. ................. 1

    B.     Samsung Has Failed to Rebut Apple's Irreparable Sales-Based Harm. .................. 6

    C.     Samsung Has Failed to Rebut That Monetary Relief Is Inadequate. ...................... 9

    D.     Samsung Has Failed to Rebut That a Balancing of Hardships Favors Apple........ 12

    E.     Samsung Has Failed to Rebut That the Public Interest Favors Apple. .................. 15

III.   CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apple Inc. v. Samsung Electronics Co.*,
678 F.3d 1314 (Fed. Cir. 2012) ........................................................................... 10

*Apple Inc. v. Samsung Electronics Co.*,
735 F.3d 1352 (Fed. Cir. 2013) ..................................................................... 3, 8, 9

*Broadcom Corp. v. Emulex Corp.*,
2012 U.S. Dist. LEXIS 129524 (C.D. Cal. Mar. 16, 2012) ................................. 14

*Broadcom Corp. v. Qualcomm Inc.*,
543 F.3d 683 (Fed. Cir. 2009) ............................................................................. 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
954 F. Supp. 2d 509 (E.D. Tex. 2013) ................................................................... 6

*Douglas Dynamics, LLC v. Buyers Products Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ................................................................... passim

*Elan Corp. v. Andrx Pharmaceuticals, Inc.*,
366 F.3d 1336 (Fed. Cir. 2004) ........................................................................... 11

*Grupo Bryndis, Inc. v. Hinojosa*,
2010 WL 5174368 (W.D. Tex. Dec. 15, 2010) ................................................... 10

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
2013 WL 3043668 (D. Nev. June 17, 2013) .................................................. 4, 10

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ............................................................................... 7

*Kaspar Wire Works, Inc. v. K-Jack Engineering Co.*,
1995 WL 662674 (Fed. Cir. Nov. 9, 1995) ......................................................... 14

*Kimberly-Clark Corp. v. Fort Howard Paper Co.*,
772 F.2d 860 (Fed. Cir. 1985) ............................................................................... 3

*KSM Fastening Systems, Inc. v. H.A. Jones Co.*,
776 F.2d 1522 (Fed. Cir. 1985) ........................................................................... 13

*Mytee Products, Inc. v. Harris Research, Inc.*,
439 F. App'x 882 (Fed. Cir. 2011) ........................................................................ 6

*Southern Snow Manufacturing Co. v. SnoWizard Holdings, Inc.*,
2014 WL 1652436 (E.D. La. Apr. 24, 2014) .................................................. 3, 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010)............................................................................................. 7

*Streck, Inc. v. Research & Diagnostic Systems, Inc.*,
  665 F.3d 1269 (Fed. Cir 2012)............................................................................................. 13

*Telcordia Technologies, Inc. v. Cisco Systems, Inc.*,
  612 F.3d 1365 (Fed. Cir. 2010)........................................................................................ 6, 7

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) (en banc).......................................................................... 13, 14

*Trebro Manufacturing, Inc. v. Firefly Equipment, LLC*,
  748 F.3d 1159 (Fed. Cir. 2014)............................................................................................. 5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001)............................................................................................. 6

# I.  INTRODUCTION

In its opening brief, Apple explained why it is entitled to a narrowly-tailored injunction that bars Samsung from using the *specific features* (not entire products) found to infringe the '647, '721, and '172 patents—given the irreparable and unquantifiable reputational and sales-based harms Apple will suffer without an injunction, and because a balance of hardships and public interest weigh heavily in Apple's favor.  In response, Samsung makes no promise to cease its massive infringement by implementing the supposed design-arounds that it repeatedly touted at trial.  Instead, it argues that Apple is powerless to stop Samsung's strategy to compete through infringement—based on claims of waiver for an argument that Apple has undeniably preserved, by attributing findings to the jury that the jury simply did not make, by alleging that the Court has decided issues that remain unresolved, and by ignoring critical facts and law fatal to its position.

Because none of these arguments justifies depriving Apple of its right to exclude, the Court should enter Apple's proposed injunction.  Indeed, acceptance of Samsung's position would effectively foreclose injunctions in *all* cases involving complex devices—contrary to Supreme Court and Federal Circuit precedent, and at great cost to companies, like Apple, that have suffered irreparable and non-compensable harm due to infringement of their valuable patent rights.

# II.  ARGUMENT

## A.  Samsung Has Failed to Rebut Apple's Irreparable Reputational Harm.

In its opening brief, Apple explained that, just like the patentee in *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013), it has suffered, and will continue to suffer, irreparable harm to its reputation as an innovator unless Samsung is enjoined from further use of Apple's patented features.  (Dkt. 1895-03 ("ABr.") at 5-11.)  Samsung does not dispute that Apple is one of the most innovative companies in the world, or try to disclaim its executive's admission that Samsung is perceived as a "fast-follower" and "not an innovator." Instead, Samsung raises several arguments that seek to avoid the relevant evidence and law, each of which should be rejected.

*First*, Samsung claims that Apple waived the right to assert reputational harm by failing to identify that issue in response to Interrogatory No. 10.  (Dkt. 1907-03 ("Opp'n") at 8-9.)  But

1   Apple raised that very issue in its preliminary injunction motion—alleging that Apple has a

2   "history of pioneering innovations and inventions—culminating with some of the most distinctive,

3   imaginative and popular products in the world," and that Samsung's infringement had irreparably

4   "erod[ed] Apple's hard-earned goodwill" and "dilute[ed] the critical distinctiveness of Apple's

5   products." (Dkt. 44 at 24.) Apple then *explicitly, repeatedly, and timely* incorporated those

6   arguments in response to Interrogatory No. 10. (Dkt. 1907-10 at 66-67 ("Apple further responds

7   by incorporating by reference as if fully set forth herein all facts and evidence contained or

8   identified in Apple's Motion for Preliminary Injunction (D.I. 10, 44) and Reply in support of its

9   Motion for Preliminary Injunction (D.I. 175), and all supporting documents, as well as the Court's

10  June 29, 2012 Order (D.I. 221, 222).")); *id.* at 67, 72 (same).) There was no waiver.

11      *Second*, Samsung states that the Court rejected Apple's reputation-based harm theory "at

12  the preliminary injunction phase for the same reason it should be rejected here." (Opp'n at 8

13  n.9.) But the two reasons underlying that prior ruling no longer apply. At the preliminary

14  injunction stage, the Court noted that no Federal Circuit case supported a "theory of irreparable

15  harm based on erosion of its reputation for innovativeness." (Dkt. 221 at 77.) But the Federal

16  Circuit has since decided *Douglas Dynamics*, which explicitly held that harm to "reputation as

17  an innovator" is a type of irreparable harm that justifies injunctive relief. 717 F.3d at 1343-45.

18      In its preliminary injunction Order, the Court also held that Apple "failed to support [its

19  reputational harm] theory with evidence." (Dkt. 221 at 77.) But the record here includes the

20  unrebutted trial testimony of: (1) Mr. Schiller, who detailed the importance of Apple's reputation

21  as an innovator, and the irreparable harm that occurs when a competitor like Samsung dilutes the

22  uniqueness of Apple's patented features via infringement; and (2) Samsung witnesses, who

23  confirmed Apple's restrictive licensing practices, and agreed that Apple cannot differentiate its

24  own products if Samsung uses Apple's patented technologies. (ABr. at 6-9.)

25      *Third*, Samsung claims that reputational harm requires separate proof of a causal nexus.

26  (Opp'n at 9-10, 12.) That is not the law. In *Douglas Dynamics*, the Federal Circuit did not

27  require separate proof of a causal nexus—because irreparable harm to the patentee's reputation

28  *necessarily flows* from infringement, especially where, as here, the parties directly compete, the

patentee has a strong reputation as an innovator, and the patentee protects the uniqueness of its innovations by refusing to license its patents: "[The patentee's] reputation as an innovator **will certainly be damaged** if customers found the same 'innovations' appearing in competitors' [products]."  717 F.3d at 1344-45 (emphasis added); *see S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 2014 WL 1652436, at *7 (E.D. La. Apr. 24, 2014) (granting injunction, without mentioning need for separate proof of a causal nexus:  "[A]s in *Douglas Dynamics*, customers who bought ice-shaving machines from Defendants-in-Counterclaim found SnoWizard's innovations in those machines.  Thus, SnoWizard's reputation as an innovator in this field was damaged by the patent infringement.").  Indeed, this was the very reason that the Federal Circuit found *Douglas Dynamics* "distinguishable" from the causal nexus analysis set forth in *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1362 (Fed. Cir. 2013) ("*Apple III*") (distinguishing *Douglas Dynamics* because reputational harm was "a type of harm not asserted by Apple").[1]

Samsung claims that *Douglas Dynamics* did not require separate proof of a causal nexus only because the parties did not raise the issue.  (Opp'n at 9.)  But the defendant argued that the patentee could not prove irreparable harm because the patents "cover only some components of the accused snowplow assemblies."  717 F.3d at 1343.  Yet, the Federal Circuit did not demand separate proof of a causal nexus between the reputational harm and infringing components.  It found that such proof "certainly" existed based solely on the patentee's reputation, the parties' competitive relationship, and the patentee's practice of not licensing its patents.  *Id.* at 1344-45.

Samsung also seeks to distinguish *Douglas Dynamics* because Apple's patents cover features found in multi-component devices.  (Opp'n at 10.)  In *Douglas Dynamics*, however, the Federal Circuit enjoined **entire snowplow assemblies** for a patent "cover[ing] only some components of the accused snowplow assemblies."  717 F.3d at 1343-45.  Here, Apple only asks to narrowly enjoin the **specific features** found to infringe at trial (not entire products).

**Fourth**, Samsung claims that acceptance of Apple's argument "would mean that any company claiming a reputation as an innovator can obtain an injunction against a competitor

---

[1]  For any conflict between *Douglas Dynamics* and *Apple III*, *Douglas Dynamics*, the first opinion, controls.  *Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860, 863 (Fed. Cir. 1985).

1   merely by alleging that infringement has caused reputational harm." (Opp'n at 10.)  Of course,

2   Apple is not just "**claiming** a reputation as an innovator"—as Samsung and its expert admit, and

3   the trial record proves, "Apple is an amazingly innovative company" and "a top-ranked brand

4   and innovator." (ABr. at 6; Dkt. 1907-06 ¶¶ 40, 47-52.)  The evidence also **proves** that the

5   parties are "fierce" direct competitors, that Samsung is a "fast follower" and "not an innovator,"

6   and that Apple keeps its products unique through "exceptionally restrictive licensing practices."

7   (ABr. at 5-11.)  Very few cases will involve such strong evidence of reputational harm.

8      *Fifth*, Samsung labels Mr. Schiller's testimony "conclusory" and mere "speculation."  It

9   was neither.  Mr. Schiller explained how Apple makes "unique and special" products, markets

10  them as "hero," and uses patents "to differentiate ourselves from the rest of the market," and that

11  "the very DNA of Apple" is "an innovator who creates unique differentiations in our products

12  that customers value." (ABr. at 7.)[2]  He further explained that Samsung's use of Apple's

13  patented features "confuses customers about … whether Apple is being [an] innovator and doing

14  these things or whether Samsung or someone else is innovating," and that this "diminishes

15  whether people even see Apple as the innovator." (*Id.*)  His precise testimony shows how

16  Samsung's infringement attacks the core of Apple's unique corporate identity as an innovator.[3]

17      Samsung also attempts to dismiss that uncontested testimony because it did not quantify

18  the amount of reputational harm Apple has suffered. (Opp'n at 11.)  But the Federal Circuit has

19  never imposed that burden—including in *Douglas Dynamics*, which relied on a mere **possibility**

20  of reputational harm.  717 F.3d at 1344-45 (patentee's reputation "**will certainly** be damaged").

21  And courts finding irreparable harm under *Douglas Dynamics* have relied on similar executive

22  testimony about the patentee's reputation.  *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 2013

23  WL 3043668, at *3 (D. Nev. June 17, 2013) (finding irreparable harm based on testimony that

24  the "patented technology was very important to [patentee's] business because the technology

25  _____

26  [2]  Samsung's own documents, which recognize Apple's innovative and desirable features, further
     confirm that Mr. Schiller's testimony was not mere speculation.  (ABr. at 13-14.)

27  [3]  Samsung criticizes Mr. Schiller because he was unaware of the "patent claims" that Apple has
     practiced.  (Opp'n at 12-13.)  Apple did not offer Mr. Schiller on that issue, which Apple instead
28  proved with engineer and expert testimony.  (ABr. at 7-9.)

1   showed customers that [patentee] was a technology leader and allowed [patentee] to distinguish

2   itself," "[patentee] promoted its products by emphasizing its patented technology," and

3   "[defendant] is one of [patentee's] largest competitors").  This makes sense given that, as head

4   of Apple's marketing group, Mr. Schiller is uniquely positioned to attest to the harm caused to

5   Apple's brand and reputation by Samsung's unauthorized infringement.

6       *Sixth*, Samsung argues that Apple cannot prove reputational harm because its brand and

7   sales remain strong.  (Opp'n at 10-12.)  But the Federal Circuit found irreparable reputational

8   harm in *Douglas Dynamics*, even though the patentee's market share had ***increased*** during the

9   infringement.  717 F.3d at 1344-45.  Here, Samsung cannot excuse the harm it caused to Apple's

10  reputation simply because Apple has sustained a strong reputation despite the infringement.

11      *Finally*, Samsung alleges that Apple cannot establish irreparable harm under *Douglas*

12  *Dynamics* for patents that it does not practice.  (Opp'n at 12-13.)  Samsung does not cite any law

13  for that argument—because the Federal Circuit has repeatedly held that patentees ***can*** prove

14  irreparable harm for patents they ***do not*** practice.  (ABr. at 8 & n.2.)  Moreover, as detailed in

15  Apple's opening brief, Apple ***does*** practice the asserted claims of the '647 and '721 patents.  (*Id.*

16  at 7-8.)  Samsung criticizes Mr. Deniau for not using claim language, and for not comparing

17  patent claims to Apple's products.  (Opp'n at 13.)  But Mr. Deniau is not an expert, and his

18  testimony detailing the operation of Apple's data detectors software made clear that Apple

19  practices the '647 patent (via applications stored in memory running on the apps processor that

20  utilize separate data detectors software to detect multiple structures and link actions to those

21  structures that users can select from a pop-up menu), particularly when combined with Dr.

22  Mowry's explanation of what claim 9 requires.  (ABr. at 7-8.)  Samsung also contends that iOS 7

23  "does not practice the ['721] patent."  (Opp'n at 13.)  But it says nothing about iOS 3 through

24  iOS 6—i.e., versions that even Samsung does not dispute include the slide-to-lock invention of

25  the '721 patent, and that many Apple customers still use today.  (ABr. at 7-8.)

26      In any event, Apple's iOS products indisputably include data detectors, slide-to-unlock,

27  and autocorrect features that ***compete*** with the infringing Samsung features.  This too confirms the

28  need for an injunction, regardless of whether Apple practices any claim.  *See Trebro Mfg., Inc. v.*

*Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("In multiple instances, this court has held that a party **that does not practice the asserted patent** may still receive an injunction **when it sells a competing product**." (emphases added)).

### B.   Samsung Has Failed to Rebut Apple's Irreparable Sales-Based Harm.

Apple demonstrated the sales-based irreparable harms it suffered from the market share and downstream sales that it lost due to Samsung's infringement.  (ABr. at 11-15.)  Without addressing undisputed evidence showing that its infringing products took sales from Apple (e.g., Tr. [Chevalier] 2454:2-16) and that its successful "survival strategy" involved "tak[ing] consumers back from [Apple]" (PX 216.003), Samsung states that Apple did not lose a single cent from Samsung's widespread infringement.  These arguments do not withstand scrutiny.

*First*, Samsung states that "Apple's injunction request based on claimed lost sales contradicts the jury's finding that no sales were lost."  (Opp'n at 3, 4.)  But the jury's damages award did not directly correspond to either party's damages theory, and the jury did not specify how it reached its figure.  Thus, Samsung cannot fairly say that the jury found no lost sales, and cannot otherwise try to deconstruct the jury's damages award.  (1846 Dkt. 2947 at 15 (refusing "to deconstruct the jury's award").)  *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010) (parties cannot read findings into jury verdict "in the absence of an express statement in the verdict"); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107-08 (9th Cir. 2001) (refusing to deconstruct verdict to assess jury's damages theory); *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 530 (E.D. Tex. 2013) (rejecting "attempt to reverse engineer the jury's math").[4]

Additionally, regardless of what the jury found, an irreparable harm finding is justified even when the patentee **failed to prove lost profits**.  *See Mytee Prods., Inc. v. Harris Research, Inc.*, 439 F. App'x 882, 887 (Fed. Cir. 2011) ("We have never held, however, that in order to establish irreparable harm a patentee must demonstrate that it is entitled to lost profits….");

---

[4]  The jury may have awarded a lump sum, a running royalty, some of Apple's lost profits, or a combination of these and/or other theories.  Samsung also tries to align the damages award with Dr. Chevalier's analysis, but the award can be aligned more closely with Dr. Velluro's analysis. (Velluro JMOL Reply Decl. ¶¶ 16-20.)

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319-20 (Fed. Cir. 2010) (reversing lost profits award, but affirming irreparable harm); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) (affirming irreparable harm based on lost market share where patentee received only reasonable royalty damages).  And even if the jury had rejected Apple's lost profits claim, that still would not mean that Apple did not lose sales from Samsung's infringement.  For example, a jury may properly reject a lost profits claim if it finds that the ***amount of the lost profits*** cannot be calculated with reasonable certainty (*Panduit* factor 4)—which would ***support*** a finding of irreparable harm (and inadequacy of damages).[5]

***Second***, Samsung asserts that Dr. Chevalier offered "unrebutted testimony that a lump sum royalty is appropriate in this case," and that the jury used that theory to compensate Apple for all past ***and future*** infringement.  (Opp'n at 3-4.)  But Samsung fails to cite any testimony from Dr. Chevalier that her "lump sum" theory covered ***all future sales***—because she did not offer such a theory at trial, and because both experts limited their analysis to per patent, per unit royalties for sales ***only through April 2014***.  (Velluro JMOL Reply Decl. ¶¶ 8-15.)

Moreover, Apple ***rebutted*** a "lump sum" theory in any event.  (Tr. [Velluro] 1318:15-19, 1321:16-25.)  And Samsung cannot contend that the jury adopted Dr. Chevalier's theory when it awarded ***more than three times*** what she proposed for ***all five*** Apple patents (Dkt. 1884 at 8-10; Tr. [Chevalier] 2422:18-20), and when it is not possible to tell whether the jury adopted a "lump sum" theory.  *See Telcordia*, 612 F.3d at 1378 (refusing to find jury awarded lump sum "[i]n the absence of an express statement in the verdict" that award covered past and future infringement).

***Third***, Samsung says that the Court already considered and rejected "the same evidence" of causal nexus at the preliminary injunction stage.  (Opp'n at 4-6.)  But this motion rests on the trial record—which includes additional documents, expanded expert testimony, and testimony from new fact witnesses such as Messrs. Schiller, Christie, and Deniau.  That supplemented

---

[5]  Samsung incorrectly states that Dr. Velluro "effectively conceded" no causal nexus for the '721 and '172 patents because he did not seek diminished demand lost profits for those patents.  (Opp'n at 7-8.)  Dr. Velluro testified about demand for those patents and calculated lost profits for their infringement.  (Tr. [Velluro] 1246:9-1248:16, 1288:1-5.)  Dr. Velluro's decision not to request diminished demand lost profits does not show a lack of a causal nexus for irreparable harm given that different legal standards apply to lost profits damages.

1   record proves that a causal nexus exists between Samsung's infringement and Apple's sales-

2   based irreparable harms.  (ABr. at 11-15; 1846 Dkt. 2197 at 4 ("[D]ecisions at the preliminary

3   injunction stage are not necessarily determinative now, after all the evidence is in and the Court

4   has the benefit of a more complete factual record.").)

5       **Fourth**, Samsung criticizes Dr. Hauser for using a conjoint study to assess demand for

6   the patented features.  (Opp'n at 5.)  But Samsung previously **faulted** Apple for failing to use

7   "conjoint analyses" (Dkt. 131 ¶ 116; Tr. [Chevalier] 2489:19-2490:6), and used a conjoint study

8   to support its own damages claim in the 1846 case (1846 Dkt. 1842 at 3093:14-3095:11; 1846

9   Dkt. 1734-3).   The company affiliated with three of Samsung's experts also touts conjoint

10  studies to "measure the relative values of must-have, secondary, and tertiary features," and to

11  provide useful demand predictions specifically for smartphones.  (Tr. [Chevalier] 2492:4-

12  2493:15.)  Also, Samsung's criticisms of Dr. Hauser's study—which applied widely-accepted

13  methods—are particularly unpersuasive when compared to the unconventional sentence-counting

14  and eye-tracking studies that Samsung's experts used, which they admit have never been used to

15  assess demand for patented features.  (Tr. [Erdem] 2347:14-24; Tr. [Chevalier] 2477:11-15.)

16      Samsung also contends that Dr. Hauser's survey "omitted most of the major features that

17  drive consumer decision-making."  (Opp'n at 5.)  But the survey included many "major features,"

18  such as screen size, camera, Wi-Fi, GPS, and voice-to-text.   (Tr. [Hauser] 1101:7-1102:5.)

19  Samsung relies on Dr. Reibstein for its argument that "Dr. Hauser's survey showed widespread

20  confusion and misunderstanding."  (Opp'n at 5.)  But at trial, Dr. Reibstein could not explain

21  why he identified certain survey participants as "confused."  (Tr. [Reibstein] 2134:22-2136:20.)

22  Samsung also argues that Dr. Hauser's survey produced "invalid results" (Opp'n at 5), but those

23  arguments are not grounded in any independent research that Samsung has performed.  Indeed,

24  despite having several qualified experts, Samsung tellingly did not ask any of them to test Dr.

25  Hauser's conclusions through a conjoint study of their own.  (Tr. [Chevalier] 2494:3-11.)

26      **Fifth**, ignoring the Federal Circuit's requirement to consider all causal nexus evidence

27  "in combination," *Apple III*, 735 F.3d at 1368, Samsung resorts to criticizing pieces of Apple's

28  evidence in isolation.  For the '647 patent, Samsung separately references a document showing

1    copying of the "link" feature and a Samsung manual describing the feature.  (Opp'n at 6.)  But

2    Samsung ignores the importance of those documents in combination with other instances of

3    copying (PX 106.03; PX 107.052), multiple other references in Samsung manuals (PX 233.362;

4    PX 237.362), praise from Google engineers (PX 116.002), the substantial price premium that Dr.

5    Hauser calculated (PX 141), and Apple's own widespread use of the invention (Tr. [Deniau]

6    791:15-18).  That evidence *collectively* shows the required causal nexus.  (ABr. at 12-15.)

7         Likewise, for the '721 patent, Samsung now admits that it designs its slide-to-unlock

8    features "to differentiate its products"—evidence alone showing a causal nexus.  (Opp'n at 7.)

9    Samsung attempts to avoid this proof based on unspecified distinctions between "sliding" and

10   "flicking."   (*Id.* at 6-7.)   But these are semantic (not substantive) differences.   And even if

11   Samsung's and Apple's implementations of the invention differ slightly, the documents show

12   *generalized* proof of demand for the patented features, which is "relevant" to a causal nexus

13   analysis.  *Apple III*, 735 F.3d at 1367.  Samsung's demand for documents to use the exact words

14   of the claims sets an impossible bar contrary to that standard.

15        Finally, for the '172 patent, Samsung acknowledges that carriers criticized non-accused

16   alternatives to the patented autocorrect technology, but it attempts to downplay that evidence

17   based on sales of the Galaxy S III, which included two non-accused keyboards.  (Opp'n at 7.)

18   Yet, if Samsung truly believed its argument, it would have abandoned further use of Apple's

19   patented autocorrect feature in favor of those alternatives.  That Samsung chose to infringe the

20   '172 patent millions of times in other products—without any current promises to stop—belies its

21   assertion that the '172 patent claims unimportant features lacking the required nexus.

22        **C.    Samsung Has Failed to Rebut That Monetary Relief Is Inadequate.**

23        Apple's opening brief detailed why money cannot adequately compensate Apple for the

24   damage to its reputation, for the loss of patent exclusivity, and for the customers it will continue to

25   lose if Samsung is allowed to keep competing against Apple by using Apple's own patented

26   inventions. (ABr. at 15-17.)  Samsung contends that these unquantifiable injuries are compensable

27   with money damages, but those arguments are wrong as a matter of law and fact.

28        ***First***, Samsung leads with the argument that "Apple has already been fully compensated by

1    the jury's award of a reasonable royalty…."  (Opp'n at 14.)  As explained above and in Apple's

2    JMOL reply, this assertion is wrong, and merely rehashes Samsung's unprovable speculation that

3    the jury awarded a lump sum intended to compensate Apple for all possible future infringement.

4        **Second**, Samsung incorrectly argues that Apple has nothing beyond "attorney argument" to

5    support its claim that reputational harm is not compensable with money damages.  (Opp'n at 15.)

6    Apple's position finds explicit support in *Douglas Dynamics* and cases applying that decision.  *See*

7    *Douglas Dynamics*, 717 F.3d at 1345 ("This court finds remedies at law inadequate to compensate

8    Douglas for at least the reputation loss Douglas has suffered from Buyer's infringement."); *S.*

9    *Snow*, 2014 WL 1652436, at *7 ("monetary damages would similarly be an inadequate remedy

10   for damage to SnoWizard's 'reputation and brand distinction'"); *Halo*, 2013 WL 3043668, at *8

11   ("loss of customer goodwill cannot be compensated by a reasonable royalty payment" because it

12   "is difficult to quantify").  In contrast, Samsung's only cited case did not even find reputational

13   harm.  *See Grupo Bryndis, Inc. v. Hinojosa*, 2010 WL 5174368, at *3 (W.D. Tex. Dec. 15, 2010)

14   (finding "no evidence showing the plaintiffs' goodwill or reputation has [been] diminished")).[6]

15       **Third**, Samsung cites cases compensating certain lost sales with damages.  (Opp'n at 15-

16   16.)  However, those cases did not involve the unique smartphone marketplace, where consumer

17   loyalties influence future purchasing decisions, such that the full effect of lost sales on Apple's

18   ecosystem cannot be quantified.  *See Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1337

19   (Fed. Cir. 2012) (O'Malley, J., concurring) ("Because the loss of customers and the loss of

20   future downstream purchases are difficult to quantify, these considerations support a finding that

21   monetary damages would be insufficient to compensate Apple.").  (Dkt. 221 at 70 (finding that,

22   because "the dynamics of the smartphone market are multifaceted," "any loss of market share to

23   Samsung now as a result of an infringing product would be difficult to quantify or recapture")).)

24   (ABr. at 16.)

25       **Fourth**, Samsung contends that Apple lacks proof concerning the incalculable nature of

26   its lost sales.  (Opp'n at 16.)  But at the preliminary injunction stage, the Court observed that

27

28   _____

     [6]  Dr. Erdem speculates that Apple "may" measure harm to its reputation (Opp'n at 15), but does
     not explain how Apple could do so, including for all possible future harms.

1   Apple already had "compelling evidence that any loss of market share to Samsung now as a

2   result of an infringing product would be difficult to quantify or recapture." (Dkt. 221 at 70.)

3   Apple then supplemented that already "compelling" evidence at trial. (Tr. [Schiller] 448:8-449:4

4   (initial purchases of Apple products lead to future sales of additional products); Tr. [Vellturo]

5   1308:7-1310:23 (same); PX 214.121.)

6       ***Fifth***, Samsung maintains that Apple's lost sales were calculable because Dr. Vellturo

7   "purported to quantify Apple's claimed market harms," including damage to Apple's ecosystem.

8   (Opp'n at 16.) But Dr. Vellturo's calculation "capture[d] only one aspect of consumer loyalty,"

9   and not the full extent of Apple's losses. (Tr. [Vellturo] 1317:4-15; Vellturo JMOL Reply Decl.

10  ¶¶ 21-24.) Samsung cannot transform that attempt to quantify ***some*** of Apple's sales-based harms

11  into a ***full*** quantification of ***all*** harm Apple ever will suffer without an injunction. (*See* 1846 Dkt.

12  2197 at 16 (finding sales losses not quantifiable merely because Apple had sought and obtained

13  damages).)

14      ***Sixth***, Samsung contends that Apple monetized the '647 patent by mentioning it in an

15  August 2010 presentation. (Opp'n at 16-17.) But that presentation identified many features and

16  patents, and also stated that "Apple has not authorized the use of any of these patents." (PX

17  132.010.) Although Apple also warned that "Samsung needs a license to continue to use Apple

18  patents in infringing smartphones" (PX 132.023), there is no evidence that Apple would have

19  included the '647 patent in such a license, and if so, on what terms. This was not an offer to

20  license. *See Elan Corp. v. Andrx Pharm., Inc.*, 366 F.3d 1336, 1341 (Fed. Cir. 2004) ("[A]

21  communication that fails … to include material terms is not an 'offer' in the contract sense.").

22      ***Finally***, just as it did in the 1846 case, Samsung relies on three Apple licenses. (Opp'n at

23  17-18.) But even Samsung now admits that those broad cross-licenses and litigation settlements

24  have "diminishe[d]" relevance. (*Id.* at 18.)[7] Apple's restrictive licensing only confirms that

25  damages cannot fully compensate for stripping Apple of its right to exclude. (ABr. at 16-17.)

26

27  _____
    [7] Samsung argues that the HTC anti-cloning provision is less relevant here because no design
    patents are at issue. (*Id.*) But that provision is not limited to design patents; it forbids copying any
28  feature with the "distinctive visual appearance" of Apple's products. (Dkt. 1895-12, Ex. A.)

### D.     Samsung Has Failed to Rebut That a Balancing of Hardships Favors Apple.

Apple has contrasted the irreparable harm it will continue to suffer without an injunction with the lack of harm that Samsung will suffer if forced to stop using Apple's patented inventions to compete with Apple—particularly given Samsung's repeated claims that its infringing features are *insignificant* and can be replaced *quickly* with design-arounds.  (ABr. at 17-19.)  Ignoring its prior statements, Samsung now argues that it should prevail under a balancing of hardships based on unsupportable claims that Apple will not suffer *any* harm if Samsung continues infringing, and that Apple's proposed injunction is impermissibly vague and overly broad.

*First*, Samsung notes that "[Apple] does not even accuse the S III or the Note 2 of infringing the '172 or '721 patents."  (Opp'n at 18.)  But Samsung cannot discount the irreparable harm that Apple will suffer if forced to continue competing against Samsung products that *contain* Apple's patented features, simply because *other* Samsung products *do not* contain them.

*Second*, Samsung cites this Court's preliminary injunction Order.  (*Id.*)  But in that Order, the Court found that the balance of hardships "*tips in Apple's favor*" due to:  (1) "the hardship to Apple of having to directly compete with Samsung's infringing products"—i.e., the same hardship Apple would be forced to endure without an injunction here (Dkt. 221 at 97-98); and (2) Apple's strong showing on the merits (*id.* ("[A]pple's showing of likely validity and infringement of the '647, '721, and '172 Patents further tips the scales in Apple's favor.")).

*Third*, Samsung alleges that depriving Apple of an injunction will not force Apple to "compete with infringing Samsung products … [because] the jury found and the evidence establishes that the claimed infringement had no impact on sales and thus no impact on competition."  (Opp'n at 18.)  But this is just another improper attempt to import a finding of no lost sales into the jury's verdict.  Samsung's argument also fails because Apple and Samsung are admittedly "fierce" *direct competitors*, and Samsung has incorporated its infringing features into products that *compete directly* with Apple's products.  (ABr. at 5-6, 11-12 (discussing direct competition); Dkt. 221 at 65 ("[C]ourts are most likely to grant an injunction when the plaintiff and defendant are direct competitors in the same market, because in that context, the potential harm in allowing the defendant to continue its infringing conduct may be the greatest.").)  Indeed,

1   at the outset of this case, the Court held that "the hardship to Apple of having to directly compete

2   with Samsung's infringing products" tipped the balance of hardships in Apple's favor.  (Dkt. 221

3   at 98.)  After *tens of millions* more infringing sales, the same result applies with even more force.

4   **Fourth**, Samsung contends that Apple's proposed injunction "lacks specificity" and "is

5   overly broad" because it "is not limited to the claims at issue and not limited to the specific

6   adjudicated software at trial."  (Opp'n at 19.)  But Apple's proposed injunction **unambiguously**

7   seeks to enjoin Samsung from using the **specific features** (not entire products) that Apple accused

8   at trial of infringing the '647, '721, and '172 patents, and those not more than "colorably

9   different."  (Dkt. 1895-04 at 2.)  That prohibition is both clear and narrowly-tailored.  (ABr. 17-

10  18.)  *See Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1293 (Fed. Cir 2012)

11  (approving scope of injunction limited to "the specific products at issue").

12  **Fifth**, Samsung states that Apple is merely seeking to "punish" Samsung and create

13  uncertainty by covering features "not colorably different" from those found to infringe.  (Opp'n at

14  19.)  It has long been the law, however, that a "not more than colorably different" provision is a

15  proper way to prevent infringers from escaping the reach of an injunction due solely to

16  "insubstantial" changes made to their infringing products.  *See TiVo Inc. v. EchoStar Corp.*, 646

17  F.3d 869, 882 (Fed. Cir. 2011) (en banc).

18  **Sixth**, Samsung maintains that "[a] sunset period does nothing to address the hardship to

19  Samsung of being forced to litigate, under threat of contempt, the question of what functionalities

20  and what products incorporating them are 'not colorably different.'"  (Opp'n at 19.)  But the role

21  of a sunset period is to minimize potential hardship by delaying enforcement of an injunction long

22  enough to allow the implementation of design-arounds—like the sunset period that Apple has

23  proposed, which grants Samsung the one-month that it said it would need (at most) to design-

24  around Apple's patents.  (ABr. at 19.)  A sunset period has nothing to do with minimizing the

25  possibility of contempt proceedings—a risk that *every* enjoined infringer faces with purported

26  design-arounds.  *See KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir.

27  1985) (holding **the infringer** "bears the risk that the enjoining court may find changes to be too

28  insubstantial"), *overruled on other grounds by TiVo*, 646 F.3d at 869.

1    **Seventh**, Samsung states that "[a]n injunction would impose hardship on Samsung by

2    disrupting its contractual relationships with carriers who may be selling pre-existing stock and

3    with customers who may still be using the accused products."  (Opp'n at 19.)  But Apple's

4    proposed injunction cannot impose any hardship based on Samsung devices that the jury included

5    in its damages award (for which Apple has already been compensated).  And the injunction only

6    covers certain conduct *by Samsung and those acting in concert with Samsung*; not end-users or

7    others not acting in concert with Samsung.  (Dkt. 1895-04 at 1-2.)

8        Samsung also ignores that it raised, and the Court rejected, a nearly verbatim argument in

9    the 1846 litigation.  (1846 Dkt. 2197 at 19 ("Samsung has not explained *how* an injunction would

10   cause the asserted disruptions, or what hardship they would actually present for Samsung, as

11   opposed to hardship for the carriers and consumers.  Further, carriers who sold the infringing

12   products have assumed the risk of this type of disruption."); *id.* at 20 ("[T]hird party retailers

13   should not be protected from the disruption when they have been benefitting from Samsung's

14   infringement.").)  The same unexplained argument fails here for the same reasons.

15   **Eighth**, Samsung cites provisions enjoining it from "implementing," "advertising," and/or

16   providing "assistance" for its infringing features.  (Opp'n at 19.)  But it does not explain why those

17   restrictions are improper, or how Samsung could perform those enjoined actions without directly

18   or indirectly infringing Apple's patents.  *See TiVo*, 646 F.3d at 890 n.9 ("[W]e have never barred

19   [judicial restraint of non-infringing activities] outright and instead have repeatedly stated that

20   district courts are in the best position to fashion an injunction tailored to prevent or remedy

21   infringement."); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 701-04 (Fed. Cir. 2009)

22   (affirming injunction barring promotional, development, and assistance activities); *Kaspar Wire*

23   *Works, Inc. v. K-Jack Eng'g Co.*, 1995 WL 662674, at *3 (Fed. Cir. Nov. 9, 1995) (affirming

24   injunction prohibiting "advertising" and "promoting" of infringing products); *Broadcom Corp. v.*

25   *Emulex Corp.*, 2012 U.S. Dist. LEXIS 129524, at *30-31 (C.D. Cal. Mar. 16, 2012) ("reject[ing]

26   the notion that the injunction must be limited to the type of conduct which was found to infringe;

27   namely, selling infringing devices"), *aff'd*, 732 F.3d 1325 (Fed. Cir. 2013).

28       **Finally**, Samsung complains that "Apple's proposed injunction includes no carve-out for

repairs." (Opp'n at 19.)  But again, the injunction does not enjoin repairs (or any other conduct) concerning products already included in the jury's damages award, and would not enjoin repairs performed by persons not bound by the injunction.  For devices not included in the jury's damages award, and sold before entry of the injunction, Apple would be willing to make clear that the injunction does not preclude Samsung from performing repairs on those devices.

### E.    Samsung Has Failed to Rebut That the Public Interest Favors Apple.

Samsung makes three public interest arguments, each of which is unavailing.

*First*, Samsung argues that "[t]he public has a strong interest in the protection of healthy competition and the resulting variety of product choices."  (Opp'n at 20.)  But *Douglas Dynamics* emphasized that a defendant "competing in the marketplace using a competitor's patented technology … ha[s] the effect of inhibiting innovation and incentive."  717 F.3d at 1346.  Moreover, Apple's proposed injunction would not "depriv[e] the public of product choices," as Samsung contends.  (Opp'n at 20.)  Apple only proposes to enjoin the infringing *features* (not entire products) that Samsung itself has cast as "minor" and claimed that it can remove during the sunset period.  Taking Samsung at its word, an injunction will thus *enhance* consumer choice by requiring Samsung to implement new features.  (ABr. at 17-18.)

*Second*, Samsung complains that an injunction would put an "administrative burden" on the Court if contempt proceedings are needed.  (Opp'n at 20.)  But just as the Court found in the 1846 case, this argument "does not carry significant weight."  (1846 Dkt. 2197 at 21.)

*Finally*, Samsung criticizes Apple's claim "that an injunction serves the public's interest in protecting innovation and patent rights" because it is "an issue present in all patent cases." (Opp'n at 20.)  But the need to protect innovation is especially strong here with a patentee that is an "amazingly innovative company" that has employed creativity and risk-taking to build one of the strongest brands in the world.  (1846 Dkt. 2197 at 20 ("[T]he public interest does favor the enforcement of patent rights to promote the 'encouragement of investment-based risk.'").)

## III.    CONCLUSION

For the foregoing reasons, and those set forth in Apple's opening brief, Apple respectfully requests that the Court enter Apple's proposed form of injunction.

1    Dated: June 13, 2014                    WILMER CUTLER PICKERING HALE
2                                            AND DORR LLP

3                                            By:  */s/ William F. Lee*
4                                                 William F. Lee
                                                  Attorneys for Plaintiff
5                                                 APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that a true and correct copy of the above and foregoing document has been

3   served on June 13, 2014, to all counsel of record who are deemed to have consented to electronic

4   service via the Court's ECF system per Civil Local Rule 5-1.

5

6                                             */s/ William F. Lee*
                                              William F. Lee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28