1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4

5

     APPLE INC., A CALIFORNIA          )   C-12-00630 LHK
6    CORPORATION,                      )
                                       )   SAN JOSE, CALIFORNIA
7                    PLAINTIFF,        )
                                       )   APRIL 25, 2014
8              VS.                     )
                                       )   VOLUME 12
9    SAMSUNG ELECTRONICS CO., LTD.,    )
     A KOREAN BUSINESS ENTITY;         )   PAGES 2874-3007
10   SAMSUNG ELECTRONICS AMERICA,      )
     INC., A NEW YORK CORPORATION;     )
11   SAMSUNG TELECOMMUNICATIONS        )
     AMERICA, LLC, A DELAWARE          )
12   LIMITED LIABILITY COMPANY,        )
                                       )
13                   DEFENDANTS.       )
     _____  )

14

15

16               TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE LUCY H. KOH
17               UNITED STATES DISTRICT JUDGE

18

19

20             APPEARANCES ON NEXT PAGE

21

22   OFFICIAL COURT REPORTERS:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
23                                IRENE RODRIGUEZ, CSR, CRR
                                  CERTIFICATE NUMBER 8074

24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2      A P P E A R A N C E S:

 3      FOR PLAINTIFF          MORRISON & FOERSTER
        APPLE:                 BY:  HAROLD J. MCELHINNY
 4                                  RACHEL KREVANS
                               425 MARKET STREET
 5                             SAN FRANCISCO, CALIFORNIA  94105

 6

 7                             WILMER, CUTLER, PICKERING,
                               HALE AND DORR
 8                             BY:  WILLIAM F. LEE
                               60 STATE STREET
 9                             BOSTON, MASSACHUSETTS  02109

10                             BY:  MARK D. SELWYN
                               950 PAGE MILL ROAD
11                             PALO ALTO, CALIFORNIA  94304

12

13      FOR SAMSUNG:           QUINN, EMANUEL, URQUHART & SULLIVAN
                               BY:  JOHN B. QUINN
14                                  WILLIAM PRICE
                               865 S. FIGUEROA STREET, FLOOR 10
15                             LOS ANGELES, CALIFORNIA  90017

16                             BY:  VICTORIA F. MAROULIS
                                    KEVIN B. JOHNSON
17                             555 TWIN DOLPHIN DRIVE
                               SUITE 560
18                             REDWOOD SHORES, CALIFORNIA  94065

19

20

21

22

23

24

25
```

1

2                          INDEX OF WITNESSES

3        PLAINTIFF'S

4        **ANDREW COCKBURN**
              FURTHER REDIRECT BY MR. MCELHINNY (RES.)   P. 2896
5             FURTHER RECROSS-EXAM BY MR. NELSON        P. 2910
              FURTHER REDIRECT BY MR. MCELHINNY         P. 2912
6

7

8        DEFENDANTS'

9        **MARTIN RINHARD**
              FURTHER REDIRECT EXAM BY MR. NELSON       P. 2914
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          INDEX OF EXHIBITS

3                                    MARKED        ADMITTED

4        DEFENDANT'S

5        345                                      2911

6

7

8

9        JOINT

10       38                                       2911

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      SAN JOSE, CALIFORNIA                    APRIL 25, 2014

 2                      P R O C E E D I N G S

 3          (JURY OUT AT 9:12 A.M.)

 4              THE COURT:  GOOD MORNING AND WELCOME.  PLEASE TAKE A

 5      SEAT.

 6          I ASSUME YOU WANT TO TALK ABOUT THE FEDERAL CIRCUIT

 7      MOTOROLA DECISION.

 8              MR. NELSON:  YEAH.

 9              THE COURT:  WE WERE TRYING TO GET THROUGH THE 95

10      PAGES AS WELL.  WHAT'S YOUR VARIOUS VIEWS?

11              MR. NELSON:  SO, YOUR HONOR --

12              THE COURT:  YES.

13              MR. NELSON:  -- THE RELEVANT STUFF FOR THIS CASE IS,

14      I THINK, REALLY JUST 21 TO 27, WHICH IS THE '647 CONSTRUCTIONS.

15      I DON'T REALLY THINK THERE ARE -- I HAVEN'T BEEN ALL THE WAY

16      THROUGH THE WHOLE THING.

17              THE COURT:  RIGHT.

18              MR. NELSON:  IT'S PROBABLY ABOUT THE ONLY PART OF THE

19      OPINION THAT WAS ACTUALLY UNANIMOUS IT LOOKS LIKE.  I MEAN,

20      THERE MIGHT BE A COUPLE OTHER THINGS, BUT FOR THIS CASE, THE

21      '647.

22          SO THE CONSTRUCTIONS FROM JUDGE POSNER, YOU KNOW, ON THE

23      ANALYZER SERVER AND THE LINKING ACTIONS TO DETECTED STRUCTURES,

24      THEY SAID THAT THE CONSTRUCTIONS THAT WE OFFERED IN THIS CASE,

25      SAME ONES THAT MOTOROLA OFFERED IN THAT CASE, SAME ONES THAT
```

1    APPLE SAID WERE WRONG, ARE RIGHT AND THE -- FOR EXACTLY THE

2    REASONS THAT WE ARTICULATED.

3         AND, YOU KNOW, THE ISSUE HERE BECOMES DR. MOWRY, HE

4    TESTIFIED INCONSISTENT WITH THOSE CONSTRUCTIONS, AND ACTUALLY

5    BOTH OF THE CONSTRUCTIONS, THE ANALYZER SERVER CONSTRUCTION, AS

6    WELL AS THE LINKING ACTIONS TO DETECTED STRUCTURES.

7         AND IT'S -- SO THAT THE ISSUE, I THINK -- HERE'S THE WAY I

8    SEE IT, YOUR HONOR.  I THINK -- THESE HAVE TO BE THE

9    CONSTRUCTIONS.  WE HAVE A STATEMENT FROM THE FEDERAL CIRCUIT

10   THESE ARE THE PROPER CONSTRUCTIONS OF THE '647.

11        WE HAVE WITNESSES THAT HAVE TESTIFIED -- YOU KNOW,

12   DR. JEFFAY, I WAS CAUTIONED NOT TO GO INTO ANY OF THIS, AS

13   YOU'LL RECALL, AND SO HE DIDN'T TALK ABOUT IT AND DIDN'T

14   EXPLAIN WHY THE SERVER HAD TO BE SEPARATE FROM THE CLIENT

15   APPLICATION.

16        SO IN CONTEXT, I'M NOT SURE HOW THE JURY WOULD UNDERSTAND,

17   YOU KNOW, THESE PARTICULAR CONSTRUCTIONS WITHOUT HAVING FURTHER

18   EXPLANATION FROM THE WITNESSES, BUT I REALIZE WE'RE BASICALLY

19   AT THE END.  THERE'S NO WAY WE'RE GOING TO BE ABLE TO DO THAT

20   IN 11 MINUTES OR 31 MINUTES, RESPECTIVELY.

21        BUT, YOU KNOW, THESE ARE THE CONSTRUCTIONS THAT WE SHOULD

22   BE WORKING WITH, YOUR HONOR, AND THE -- I MEAN, FRANKLY, ON

23   THIS RECORD, IT'S -- WE COULD JUST DO A JMOL AND THAT WOULD BE

24   OKAY WITH ME, TOO.

25        SO I DON'T --

```
 1              THE COURT:  LET ME HEAR FROM APPLE.

 2              MR. LEE:  YOUR HONOR, THE CANDID ANSWER IS, SINCE

 3     IT'S 90 PAGES, WE HAVEN'T BEEN ABLE TO GET THROUGH IT IN ANY

 4     DISCIPLINED WAY.

 5              YOUR HONOR WILL SEE THAT THERE ARE THREE DIFFERENT

 6     OPINIONS, AND WHILE I AGREE WITH MR. NELSON, MY FIRST -- AND

 7     I'VE ONLY HAD A CHANCE TO READ THROUGH IT QUICKLY, THE '647,

 8     THERE DOESN'T APPEAR TO BE A DISSENT.

 9              BUT I'M PRETTY SURE, WITH THREE DIFFERENT OPINIONS,

10     CONCURRING IN PART, DISSENTING IN PART, THE ONE THING WE'RE

11     SURE OF IS THERE'S GOING TO BE AN EN BANC DECISION BY SOMEONE

12     BEFORE THIS BECOMES FINAL AND A MANDATE ISSUES.

13              THE SECOND THING HONESTLY, YOUR HONOR, IN TERMS OF WHAT IT

14     MEANS WHEN YOUR HONOR HAS TRIED THE CASE UNDER PLAIN AND

15     ORDINARY MEANING, THE EVIDENCE HAS COME IN.

16              WE NEED A LITTLE BIT OF TIME TO JUST READ THE OPINION AND

17     GIVE YOUR HONOR OUR THOUGHTS ON WHAT SHOULD HAPPEN.

18              I DON'T THINK IT'S JMOL BECAUSE I THINK THE EVIDENCE IS IN

19     THE RECORD, AND WHETHER YOU GO WITH PLAIN AND ORDINARY MEANING

20     OR YOU GO WITH THIS CONSTRUCTION, BUT WE JUST HAVEN'T HAD A

21     CHANCE TO GO THROUGH IT IN DETAIL.

22              THE COURT:  ALL RIGHT.  WHAT'S YOUR PROPOSAL AS TO

23     HOW WE PROCEED?

24              MR. LEE:  I THINK, YOUR HONOR, I THINK THIS IS NOT A

25     JMOL QUESTION, ALTHOUGH YOUR HONOR IS GOING TO HAVE THE JMOLS.
```

```
 1            I THINK IF WE COULD HAVE UNTIL, YOU KNOW, 4:00 O'CLOCK

 2     THIS AFTERNOON TO GIVE YOUR HONOR JUST A THREE PAGER ON WHAT WE

 3     THINK THE RIGHT PROCEDURE WOULD BE, THAT WOULD GIVE US TIME TO

 4     TAKE A BREATH, READ THE OPINION, NOT GIVE YOUR HONOR SOMETHING

 5     OFF THE TOP OF OUR HEAD.

 6            I THINK IT'S A QUESTION OF HOW YOUR HONOR CHARGES THE

 7     JURY.

 8            THE COURT:  SO YOU DON'T THINK ANY NEW TESTIMONY IS

 9     NECESSARY?  OR YOU JUST HAVEN'T HAD A CHANCE TO DECIDE THAT

10     QUESTION?

11            MR. LEE:  I JUST REALLY -- THE HONEST ANSWER IS WE

12     HAVEN'T HAD A CHANCE TO DECIDE THAT QUESTION.

13            MR. NELSON:  THERE -- ON THIS, I DID CHECK -- I

14     ARGUED THIS APPEAL ACTUALLY, YOUR HONOR, SO I'M PRETTY FAMILIAR

15     WITH IT.  THE '647 REALLY IS THE ONLY ISSUE THAT'S RELEVANT TO

16     THIS CASE AND THERE IS NO CONCURRING OPINION, DISSENTING

17     OPINION.

18            THE COURT:  WELL, BUT THIS IS WHAT I AM FEELING, AND

19     I'M SOMEWHAT FRUSTRATED ABOUT, IS THAT NEITHER PARTY EVER ASKED

20     ME TO CONSTRUE ANALYZER SERVER, OKAY?  BOTH FOR THE PRELIMINARY

21     INJUNCTION AND FOR SUMMARY JUDGMENT, EVERYONE SAID IT WAS --

22     "JUST ASSUME POSNER'S CONSTRUCTION.  WE MIGHT DISAGREE WITH IT,

23     BUT LET'S ASSUME IT."

24            I ONLY CONSTRUED NINE TERMS.  YOU ALL HAD UP TO TEN.

25     THERE ARE A LOT OF PATENTS HERE THAT YOU ALL DROPPED.  YOU
```

1    COULD HAVE ASKED FOR ANALYZER SERVER.  YOU COULD HAVE ASKED FOR

2    LINKING ACTIONS TO DETECTED STRUCTURES.

3         YOU KNOW, ON MARCH 17TH, SAMSUNG FILED A MOTION ASKING ME

4    TO DO A CLAIM CONSTRUCTION OF THE '239 PATENT.  I DID THAT.  I

5    CONSTRUED THE '239 AS LATE AS MARCH 28TH.

6         SO I FEEL FRUSTRATED IN THAT THIS CASE HAS BEEN PENDING

7    SINCE, WHAT, FEBRUARY OF 2012, IT'S BEEN OVER TWO YEARS, AND NO

8    ONE HAS EVER ASKED ME TO CONSTRUE ANALYZER SERVER IN THIS CASE.

9         AND SO NOW YOU'RE SAYING WE HAVE LESS THAN 50 MINUTES LEFT

10   WITH THIS JURY, WE'RE ABOUT TO INSTRUCT THIS JURY, AND NOW

11   YOU'RE SAYING, "OH, WELL, CLEARLY WE NEED TO NOW REOPEN

12   EVERYTHING."

13        I MEAN, THIS IS NOT A SURPRISE THAT THERE WAS ANOTHER

14   CASE, THESE TERMS HAD BEEN CONSTRUED, IT HAD BEEN ARGUED ON

15   APPEAL.

16        SO I JUST FEEL FRUSTRATED BECAUSE NEITHER SIDE HAS BEEN

17   SHY ABOUT ASKING FOR EXTRA CLAIM CONSTRUCTIONS, AND I'VE

18   DUTIFULLY DONE THEM IN THE TIMEFRAME THAT YOU WANTED, AND SO

19   NOW TO COME IN AND BLOW UP POTENTIALLY WHAT WE'VE ALREADY DONE

20   WITH THIS JURY FOR A MONTH IS JUST SOMEWHAT FRUSTRATING TO ME.

21             MR. LEE:  YOUR HONOR, IF I COULD -- MY INITIAL

22   REACTION -- AND I'M NOT BACKING OFF THE FACT THAT BOTH OF US

23   PROBABLY NEED A LITTLE BIT OF TIME JUST TO READ IT IN SOME

24   DETAIL --

25             THE COURT:  YEAH.

```
 1              MR. LEE:  -- BUT MY INITIAL REACTION IS THAT WHEN THE
 2      PARTIES HAVE HAD A CHANCE TO ASK THE COURT TO CONSTRUE TERMS
 3      AND TERMS HAVE BEEN CONSTRUED, AND THE OTHER TERMS, BY
 4      DEFINITION, GO ON PLAIN AND ORDINARY MEANING --
 5              THE COURT:  UM-HUM.
 6              MR. LEE:  -- AND THAT'S THE WAY YOU TRY THE CASE, ON
 7      PLAIN AND ORDINARY MEANING, BECAUSE THAT'S BASICALLY THE
 8      FRAMEWORK THAT YOU SET FOR YOURSELF, WHEN YOU GET TO THE
 9      FEDERAL CIRCUIT, THERE MAY BE THIS OPINION OUT THERE, BUT IF
10      ANOTHER CASE HAS BEEN TRIED ON PLAIN AND ORDINARY MEANING AND
11      THAT'S THE WAY IT'S BEEN CHARGED, I THINK THAT IS FINE.
12          BUT THAT'S THE ISSUE THAT WE JUST NEED A LITTLE BIT OF
13      TIME TO THINK THROUGH.
14          BUT THERE ARE CASES, I THINK YOUR HONOR HAS CITED TO THEM
15      WHEN YOU ASKED US WHETHER WE WANTED MORE CLAIM CONSTRUCTION,
16      THAT SAY, "LOOK, WHEN YOU'VE HAD A CHANCE TO HAVE CLAIMS
17      CONSTRUED ON MULTIPLE OCCASIONS AND THE REMAINING TERMS GO ON
18      PLAIN AND ORDINARY MEANING, THAT'S THE BED YOU'VE MADE, THAT'S
19      THE BED THAT WILL GO UP ON APPEAL."
20          I THINK -- MY INITIAL REACTION IS IT'S PLAIN AND ORDINARY
21      MEANING, THAT'S THE WAY IT'S BEEN TRIED TO THE JURY, IT OUGHT
22      TO GO TO THE JURY.
23          I THINK, GIVEN THE HISTORY THAT YOUR HONOR HAS RECITED,
24      WE'D BE COMFORTABLE WITH THAT TO THE FEDERAL CIRCUIT.
25          BUT WE'D JUST LIKE A COUPLE HOURS TO THINK ABOUT IT.
```

```
 1              MR. NELSON:  SO THIS --

 2              THE COURT:  WELL, WHY DON'T WE DO THIS:  SHOULD WE GO

 3      AHEAD AND AT LEAST FINISH -- WELL, LET'S TALK ABOUT NEXT STEPS.

 4          I WAS HOPING TO -- THERE WILL BE SOME ADDITIONAL THINGS, I

 5      MEAN, WE JUST FILED ONE THIS MORNING, WE NEED ADDITIONAL

 6      INFORMATION ABOUT THE ACCUSED DEVICES, THERE'S STILL SOME

 7      DISCREPANCIES BETWEEN WHAT THE TWO PARTIES' POSITIONS ARE THAT

 8      I'D LIKE CLARIFIED.

 9          SO THERE'S STILL QUITE A BIT -- THERE'S SOME SEALING

10      DISCREPANCIES AND OUTSTANDING ISSUES ON THE EXHIBIT LISTS.

11          THE JURY INSTRUCTIONS I WAS INTENDING TO FILE THIS MORNING

12      AND HAVE YOU RESPOND BY THE END OF THE DAY.

13          I THOUGHT IF THERE WAS -- MOSTLY IT PROBABLY WOULD BE BEST

14      TO DO THINGS THROUGH FILINGS.  THAT WAY YOU CAN THINK ABOUT IT

15      AND NOT HAVE TO JUST ORALLY RESPOND ON THE SPOT.  YOU CAN SPEAK

16      WITH YOUR TEAM, CHECK RECORDS AND WHATNOT.

17          BUT I THOUGHT MAYBE WE COULD HAVE, IN CASE WE NEEDED ONE,

18      MAYBE LIKE AT 3:30 JUST TO GET TOGETHER IN CASE THERE ARE

19      CERTAIN THINGS THAT ARE NOT BEING RESOLVED ON THE PAPERS.

20      THAT'S WHAT I HAD ENVISIONED FOR TODAY.

21          BUT NOW, WITH THIS NEW ISSUE, HOW SHOULD WE PROCEED?  DO

22      WE -- YOU KNOW, I GUESS WE LEAVE OPEN THE POTENTIAL OF BRINGING

23      THE JURY BACK ON MONDAY FOR POSSIBLY MORE TRIAL TESTIMONY.

24          WHAT WOULD -- HOW WOULD YOU ALL PROCEED?  WOULD YOU GET,

25      YOU KNOW, SUPPLEMENTAL REPORTS AND SUPPLEMENTAL DEPOSITIONS
```

```
 1          THIS WEEKEND?
 2                  MR. NELSON:  WELL, I DON'T THINK -- SO, YOUR HONOR, I
 3          DO THINK THAT THAT'S A GOOD IDEA, UNTIL WE'VE MADE THE
 4          DECISION, TO JUST LEAVE THAT BECAUSE WE ALWAYS HAVE THE OPTION
 5          TO SAY NO, WE'RE NOT GOING TO DO THAT, WHEREAS IF WE TELL THE
 6          JURY EVERYTHING IS DONE, IT SEEMS KIND OF STRANGE WHEN WE --
 7          YOU KNOW, IF WE BRING THEM BACK FOR MORE EVIDENCE ON MONDAY.
 8                  THE COURT:  UM-HUM.
 9                  MR. NELSON:  BUT THE -- IN TERMS OF THE REPORTS, I
10          DON'T ACTUALLY THINK WE NEED ANY ADDITIONAL REPORTS BECAUSE THE
11          WAY THE REPORTS WERE DONE WAS -- IN THIS CASE IS THE PARTIES
12          PROPOSED CONSTRUCTIONS, IN FACT, THIS CONSTRUCTION WAS PROPOSED
13          BY SAMSUNG, WE SAID THIS IS RIGHT, SPECIFICALLY REFERRING TO
14          JUDGE POSNER, AND BOTH --
15                  THE COURT:  ON ANALYZER SERVER OR FOR LINKING ACTIONS
16          TO DETECTED STRUCTURES OR --
17                  MR. NELSON:  ACTUALLY BOTH OF THEM, YOUR HONOR.
18                  THE COURT:  OKAY.
19                  MR. NELSON:  BOTH OF THOSE CONSTRUCTIONS.  SO THE
20          REPORTS WERE ALREADY DONE IN THAT WAY.
21              AND THIS IS THE ONE -- THE WAY WE HAD -- I APPRECIATE YOUR
22          HONOR'S THINKING.  THIS IS THE ONE WE HAD PURSUED THE
23          COLLATERAL ESTOPPEL ISSUE SHORTLY BEFORE TRIAL ON THESE
24          PARTICULAR ONES BASED ON THE JUDGE POSNER CONSTRUCTION, SO
25          THAT'S THE WAY WE HAD ASKED YOUR HONOR TO ISSUE THE
```

```
 1        CONSTRUCTIONS BECAUSE WE FELT THIS HAD BEEN DECIDED AND

 2        SHOULDN'T BE REARGUED.

 3            BUT I UNDERSTAND YOUR HONOR'S FRUSTRATION WITH IT.

 4            THE COURT:  I MEAN, YOU SHOULD HAVE JUST ASKED ME TO

 5        CONSTRUE IT.  THAT WOULD HAVE BEEN EASIER AND CLEANER.

 6            MR. NELSON:  YEAH, ALTHOUGH THAT'S A LITTLE BIT -- IF

 7        WE ASKED YOU TO DO THAT AS OPPOSED TO THE COLLATERAL ESTOPPEL,

 8        WHICH WE THOUGHT WAS THE PROPER ROUTE, THEN WE'RE ASKING YOU TO

 9        TAKE A NEW LOOK AT IT, AND WE DIDN'T THINK THAT THERE WAS

10        REALLY THE OPPORTUNITY, UNDER THE LAW, FOR APPLE TO TAKE A NEW

11        LOOK AT IT.  SO THAT WAS THE REASON WHY WE WENT THAT ROUTE.

12            BUT, I MEAN, I UNDERSTAND --

13            THE COURT:  WELL, YOU NEVER ASKED THAT IT BE

14        CONSTRUED IN THE FIRST PLACE.  I MEAN, THESE -- THIS CLAIM

15        CONSTRUCTION HEARING WAS FEBRUARY OF 2013.

16            MR. NELSON:  BUT THAT'S BECAUSE THERE ALREADY WAS A

17        CONSTRUCTION OUT THERE THAT APPLE HAD DONE AND LITIGATED THE

18        CASE.  SO THAT'S THE -- YOU KNOW, THAT'S THE PROBLEM WITH --

19            THE COURT:  RIGHT.  BUT CLAIM CONSTRUCTION OF

20        ANOTHER -- JUDGE POSNER WAS SITTING AS A DISTRICT COURT JUDGE,

21        THEY'RE NOT BINDING ON ANOTHER DISTRICT COURT JUDGE, SO JUST

22        BECAUSE ANOTHER DISTRICT COURT JUDGE SOMEWHERE ELSE IN THE

23        COUNTRY HAS CONSTRUED A CLAIM A CERTAIN WAY, I DON'T HAVE TO

24        ADOPT THAT.

25            MR. NELSON:  THAT I UNDERSTAND, YOUR HONOR.  BUT THIS
```

```
 1    WAS BETWEEN -- APPLE ALREADY HAD THE FULL AND FAIR OPPORTUNITY

 2    TO LITIGATE THE ISSUE.  THAT WAS WHY THE COLLATERAL ESTOPPEL

 3    CAME UP IN THE CASE AND IT WAS A FINAL DECISION.  THAT WAS WHY

 4    WE PURSUED THAT.

 5          IT WOULD BE SOMEWHAT INCONSISTENT TO SAY THAT'S -- "APPLE

 6    IS BOUND BY THAT CONSTRUCTION BECAUSE THEY'VE HAD A FULL AND

 7    FAIR OPPORTUNITY TO LITIGATE, IT WAS DECIDED, FINAL JUDGMENT,"

 8    AND THEN SAY, "BUT, YOUR HONOR, WE WANT YOU TO CONSTRUE IT."

 9    SO THAT'S THE REASON.

10          I UNDERSTAND THE FRUSTRATION.  I'M JUST TRYING TO EXPLAIN

11    THE REASON FOR THE POSTURE.

12          I MEAN, PART OF THE PROBLEM --

13             THE COURT:  BUT THIS ISSUE COMES UP A LOT WHEN

14    PLAINTIFFS SUE DIFFERENT DEFENDANTS.

15             MR. NELSON:  WHEN PLAINTIFFS --

16             THE COURT:  WHEN PLAINTIFFS SUE DIFFERENT DEFENDANTS

17    ON THE SAME PATENT, RIGHT, THEY CAN ASK FOR ADDITIONAL CLAIM

18    CONSTRUCTIONS IN THE SUBSEQUENT CASES.

19             MR. NELSON:  SURE.

20             THE COURT:  WHAT CONSTRUCTIONS ARE -- WHAT CLAIMS ARE

21    CONSTRUED IN THE FIRST CASE IS NOT NECESSARILY BINDING ON ANY

22    SUBSEQUENT DEFENDANTS.  THEY CAN ASK FOR NEW CONSTRUCTIONS OF

23    EVEN THE SAME CLAIM TERMS.

24             MR. NELSON:  I AGREE, YOUR HONOR.

25             THE COURT:  YEAH.  SO --
```

```
1              MR. NELSON:  I AGREE THE DEFENDANTS WOULD HAVE THAT

2     OPPORTUNITY.

3              BUT SEE, HERE, SAMSUNG DIDN'T CHOOSE TO DO THAT, RIGHT?

4     THEY WOULD HAVE HAD THE OPPORTUNITY -- LET'S SAY THERE WAS A

5     CONSTRUCTION ON ANALYZER SERVER THAT SAMSUNG DIDN'T AGREE WITH.

6     THEN I'M 100 PERCENT IN AGREEMENT WITH YOUR HONOR THAT SAMSUNG

7     COULD HAVE COME IN AND SAID, "YOUR HONOR, WE SHOULD BE GIVEN

8     THE OPPORTUNITY," BECAUSE THEY HADN'T HAD THE OPPORTUNITY

9     PREVIOUSLY.

10             BUT IT'S DIFFERENT WHEN THEY SAY, "BUT APPLE, YOU HAD THAT

11    OPPORTUNITY, YOU ARGUED IT, THAT'S A FINAL JUDGMENT."  RIGHT?

12             THE COURT:  LET ME ASK YOU A QUESTION.  SO YOU DON'T

13    BELIEVE NEW EXPERT REPORTS ARE NECESSARY?

14             MR. NELSON:  BASED UPON MY REVIEW OF THE EXPERT

15    REPORTS AND THE WAY THEY WERE DONE, I DON'T BELIEVE THEY'RE

16    NECESSARY.

17             THE COURT:  OKAY.  DO YOU BELIEVE THAT ADDITIONAL

18    DEPOSITIONS ARE NECESSARY?  AND IS THAT SOMETHING THAT COULD BE

19    DONE OVER THE WEEKEND IF IT WERE NECESSARY?  I'M NOT SAYING --

20    I'M JUST TRYING TO BRAINSTORM ALL OF THE POSSIBLE THINGS THAT

21    COULD HAPPEN.

22             MR. NELSON:  UM-HUM, YEAH.  I -- I ACTUALLY -- I

23    DON'T THINK SO BASED UPON MY REVIEW OF THE DEPOSITIONS, JUST

24    BECAUSE THOSE CONSTRUCTIONS WERE OUT THERE, THEY WERE IN THE

25    REPORT.  SO --
```

```
1              THE COURT:  SO, WHAT, THE EXPERTS --

2              MR. NELSON:  THERE WOULD HAVE BEEN MOTIVATION TO

3    QUESTION THE EXPERTS ABOUT THOSE ISSUES.

4              THE COURT:  SO THE EXPERTS WERE ASKED ABOUT THESE

5    CONSTRUCTIONS, JUDGE POSNER'S CONSTRUCTIONS?

6              MR. NELSON:  CERTAINLY, AND THEY WERE ASKED ABOUT

7    THEIR OPINIONS, MORE IMPORTANTLY ABOUT THEIR OPINIONS.

8              THE COURT:  ABOUT JUDGE POSNER'S CONSTRUCTIONS?  WHAT

9    WERE THEY ASKED?

10             MR. NELSON:  WELL, I DON'T KNOW IF THEY WERE ASKED

11   SPECIFICALLY AT THEIR DEPOSITIONS.

12        THEY DID OFFER OPINIONS IN THEIR REPORT CONCERNING

13   JUDGE POSNER'S CONSTRUCTIONS.  BOTH EXPERTS DID THAT.

14             THE COURT:  OKAY.

15             MR. NELSON:  WHAT I'M SAYING IS THAT THE DEPOSITIONS,

16   I KNOW FROM REVIEWING THOSE THAT THE EXPERTS WERE QUESTIONED

17   ABOUT THEIR APPLICATION TO THE ACCUSED PRODUCTS OF THOSE

18   CLAIMS.  I DO NOT RECALL -- OF THOSE CLAIM CONSTRUCTIONS I

19   SHOULD SAY.

20             THE COURT:  OKAY.

21             MR. NELSON:  I DO NOT RECALL IF THEY WERE

22   SPECIFICALLY ASKED ABOUT YOUR OPINIONS CONCERNING

23   JUDGE POSNER'S CONSTRUCTIONS.  THAT I WOULD HAVE TO GO BACK AND

24   REVIEW.

25             THE COURT:  ALL RIGHT.  SO YOU'RE NOT SURE, BUT YOU
```

```
1        THINK IT MAY NOT BE NECESSARY?

2                MR. NELSON:  CORRECT.

3                THE COURT:  THAT'S WHAT I'M HEARING.

4                MR. NELSON:  CORRECT.

5                THE COURT:  OKAY.  WHAT'S APPLE'S OPINION?

6                MR. LEE:  THIS TIME WE'RE IN AGREEMENT.  I'M NOT

7        SURE, BUT I THINK IT MAY NOT BE NECESSARY.

8                THE COURT:  OKAY.  AND YOU'RE NOT SURE ON BOTH,

9        EITHER SUPPLEMENTAL EXPERT REPORTS OR SUPPLEMENTAL DEPOSITIONS?

10       OR YOU JUST ARE REFERRING TO THE DEPOSITIONS?

11               MR. LEE:  I'M NOT SURE ON BOTH.

12               THE COURT:  OKAY.

13               MR. LEE:  I THINK MR. NELSON IS -- THIS IS -- A LOT

14       OF PAPERS HAVE PASSED IN FRONT OF US.  I THINK MR. NELSON IS

15       CORRECT THAT THEY BOTH ADDRESSED THESE ISSUES IN THEIR REPORTS.

16               THE COURT:  OKAY.

17               MR. LEE:  I'M JUST NOT SURE WHAT WAS SAID IN THE

18       DEPOSITION.

19           I'M NOT SURE YOU ARE, EITHER.

20               MR. NELSON:  NO, I'M NOT.

21               THE COURT:  ALL RIGHT.  IT SOUNDS LIKE FOR THE

22       REPORTS, NO SUPPLEMENT IS NECESSARY.

23               MR. LEE:  WE'D JUST LIKE A CHANCE TO GO BACK AND

24       LOOK.

25               THE COURT:  SURE.  I'M NOT GOING TO -- THIS IS A 95
```

```
1      PAGE OPINION THAT JUST CAME OUT THIS MORNING, SO I'M NOT --

2      WE'RE BRAINSTORMING HERE.  YOU'RE NOT COMMITTING YOURSELF.  I

3      JUST WANT TO UNDERSTAND.

4              MR. LEE:  CAN I MAKE A SUGGESTION, YOUR HONOR?

5              THE COURT:  WHAT'S THAT?

6              MR. LEE:  SINCE WE HAVE THE JURY HERE, WE ONLY HAVE,

7      LIKE, A HALF HOUR OF TIME LEFT.

8              THE COURT:  SURE.

9              MR. LEE:  IF WE GOT THAT DONE AND WE TOLD THEM THERE

10     WAS A POSSIBILITY THERE MIGHT BE SOME ADDITIONAL EVIDENCE --

11             THE COURT:  OKAY.

12             MR. LEE:  DR. MOWRY, I THINK, IS BACK IN PITTSBURGH

13     AND MY BET IS DR. JEFFAY IS BACK IN NORTH CAROLINA --

14             MR. NELSON:  THAT'S CORRECT.

15             MR. LEE:  -- SO NO ONE IS GOING TO TESTIFY TODAY

16     ANYWAY.

17          THAT WILL GIVE US A LITTLE BIT OF TIME, WHILE WE'RE

18     FINISHING THE EVIDENCE, TO GO BACK AND THINK ABOUT THIS, LOOK

19     AT THE REPORTS, LOOK AT THE DEPOSITIONS, ANSWER YOUR HONOR'S

20     QUESTION ABOUT WHAT SHOULD HAPPEN NEXT, AND WE COULD TAKE IT UP

21     AFTER THE JURY HAS BEEN DISCHARGED FOR THE DAY.

22             THE COURT:  OH, YEAH.  WE'RE NOT DECIDING THIS THIS

23     MORNING.  I JUST WANTED TO GET SOME SENSE OF WHAT THE POSSIBLE

24     OPTIONS ARE.

25          I WILL THEN TELL THIS JURY THAT AN ISSUE HAS COME UP,
```

1       THAT'S THE REASON WHY WE'RE STARTING LATE TODAY, THAT WE NEED

2       TO CONSIDER THIS ISSUE TODAY, SO WE'LL EXCUSE THEM AFTER THE

3       EVIDENCE THAT WE WERE PLANNING TO PRESENT TODAY IS PRESENTED,

4       AND THAT WHEN THEY COME BACK ON MONDAY, THERE'S A POSSIBILITY

5       THAT THERE MAY BE MORE EVIDENCE.

6            IS THAT ACCEPTABLE, MR. NELSON?

7                 MR. NELSON:  YES, YOUR HONOR.

8                 THE COURT:  ALL RIGHT.  MR. LEE AND -- MR. MCELHINNY

9        HAS STOOD UP.

10                MR. MCELHINNY:  I HAVE A SLIGHTLY SEPARATE ISSUE.

11                THE COURT:  WHAT'S THAT?

12                MR. MCELHINNY:  ON THE ORDER THAT YOU JUST ISSUED

13       THIS MORNING, YOU ASKED A RESPONSE FROM US AT 11:00 O'CLOCK.

14                THE COURT:  YES.

15                MR. MCELHINNY:  THE PEOPLE WHO KNOW THE ANSWER ARE

16       ACTUALLY HERE IN COURT.

17                THE COURT:  OKAY.

18                MR. MCELHINNY:  IF WE COULD GET UNTIL NOON?

19                THE COURT:  THAT'S FINE.

20                MR. MCELHINNY:  THANK YOU, YOUR HONOR.

21                THE COURT:  THAT'S FINE.

22                MR. LEE:  AND I WAS THINKING HE WAS GOING TO COME UP

23       AND HELP ME.

24           (LAUGHTER.)

25                MR. LEE:  I AGREE WITH MR. NELSON ON THIS.  IF WE CAN

```
 1      TAKE UP -- IT SEEMS TO ME, YOUR HONOR, THERE ARE THREE

 2      POSSIBILITIES.  THERE MAY BE MORE.

 3           ONE IS THAT IT'S PLAIN AND ORDINARY MEANING AND IT GOES TO

 4      THE JURY ON THAT BASIS AS WE'VE TRIED IT.

 5           THE SECOND IS THAT YOUR HONOR CHARGES ON THE CLAIM

 6      CONSTRUCTION FROM THE OPINION AND IT GOES ON THE EVIDENCE WE

 7      HAVE NOW.

 8           THE THIRD IS THERE'S SOME VERY BRIEF ADDITIONAL EVIDENCE

 9      BRIEFLY FROM THE EXPERTS.

10           IT'S ONE OF THE THREE.

11                MR. NELSON:  YEAH.  AND I THINK TWO AND THREE KIND OF

12      GO TOGETHER TO A DEGREE.

13                MR. LEE:  AND I THINK WE JUST NEED --

14                THE COURT:  YOU'RE SAYING IT'S EITHER MORE TESTIMONY

15      OR JUST GOING ON PLAIN AND ORDINARY MEANING?

16                MR. LEE:  OR --

17                THE COURT:  OR GIVING THEM THE JUDGE POSNER

18      CONSTRUCTIONS IN THE JURY INSTRUCTIONS, WITH OR WITHOUT

19      ADDITIONAL EXPERT TESTIMONY?

20                MR. LEE:  CORRECT.

21                MR. NELSON:  CORRECT.

22                MR. LEE:  THOSE SEEM TO ME TO BE THE THREE

23      POSSIBILITIES.

24                THE COURT:  ALL RIGHT.  WELL, I'M NOT PRE-JUDGING

25      THIS, BUT I THINK IF WE GIVE A NEW CONSTRUCTION, HAVING SOME
```

```
1    ADDITIONAL TESTIMONY MAKES SENSE BECAUSE THIS IS, YOU KNOW,

2    VERY COMPLICATED MATERIAL AND JUST THROWING IN THE JURY

3    INSTRUCTION AFTER FOUR WEEKS OF TRIAL IS GOING TO BE CONFUSING

4    I THINK.

5         SO I THINK IT'S EITHER GO ON PLAIN AND ORDINARY MEANING OR

6    WE CHARGE WITH JUDGE POSNER'S CONSTRUCTIONS AND PROVIDE

7    ADDITIONAL EXPERT TESTIMONY.

8         AND THEN YOU TELL ME WHETHER YOU NEED ADDITIONAL REPORTS

9    OR DEPOSITIONS IN ORDER TO PREPARE THAT EXPERT TRIAL TESTIMONY.

10   OKAY?

11             MR. LEE:  OKAY.

12             MR. NELSON:  OKAY.

13             THE COURT:  ALL RIGHT.  AND THEN WE CAN TALK ABOUT

14   THE BRIEFING FOR THIS ISSUE AFTER WE EXCUSE THE JURY FOR THE

15   DAY.

16             MR. NELSON:  OKAY.  THANK YOU, YOUR HONOR.

17             MR. LEE:  YES, YOUR HONOR.

18             THE COURT:  ALL RIGHT.  THAT WORKS.  THANK YOU.

19         (JURY IN AT 9:31 A.M.)

20             THE COURT:  ALL RIGHT.  WELCOME BACK.  PLEASE TAKE A

21    SEAT.

22         AN ISSUE HAS ARISEN THAT WE HAVE TO ADDRESS, WHICH IS WHY

23   WE'RE STARTING LATE.  WE APOLOGIZE FOR MAKING YOU WAIT.

24         WE ARE GOING TO ADDRESS THIS ISSUE TODAY AFTER WE EXCUSE

25   YOU AND WE COMPLETE THE EVIDENCE THIS MORNING.
```

```
1         THERE IS A POSSIBILITY THAT YOU MAY HEAR ADDITIONAL

2    EVIDENCE ON MONDAY.  WE WILL TRY TO MAKE THAT DECISION TODAY.

3         BUT WE STILL DO EXPECT THAT THERE WILL BE CLOSINGS EARLY

4    NEXT WEEK AND DELIBERATIONS WILL BEGIN BY TUESDAY OR WEDNESDAY.

5         SO WE'RE STILL LARGELY GOING TO STAY ON SCHEDULE, BUT WE

6    DID WANT TO KEEP YOU INFORMED.  OKAY?

7         SO DOES MS. PARKER BROWN HAVE ALL OF YOUR BEST CONTACT

8    INFORMATION, WHETHER THAT'S CELL PHONE, E-MAIL, TEXT?  AND IF

9    YOU COULD LET HER KNOW WHAT'S THE BEST WAY FOR US TO CONTACT

10   YOU, WHAT METHOD YOU PREFER, SUCH THAT IF THERE IS ANY CHANGE

11   IN TIME OR ANYTHING -- I DON'T EXPECT THERE TO BE ANY -- BUT WE

12   KNOW HOW TO GET IN TOUCH WITH YOU.  OKAY?

13        OTHERWISE WE'LL PLAN ON MONDAY GETTING TOGETHER AT 9:00

14   O'CLOCK.

15            THE CLERK:  I DO HAVE PHONE NUMBERS, AND IF ANYBODY

16   WANTS TO GIVE ME ANYTHING DIFFERENT, WE CAN DO THAT AT A BREAK

17   TODAY BEFORE YOU LEAVE.

18            THE COURT:  OKAY, THANK YOU.

19        YES, PLEASE GIVE YOUR BEST CONTACT INFORMATION TO

20   MS. PARKER BROWN SO SHE CAN -- SO WE CAN REMAIN IN TOUCH WITH

21   YOU.  OKAY?  THANK YOU.

22        ALL RIGHT.  LET'S CONTINUE WITH DR. COCKBURN'S DIRECT.

23        SIR, YOU ARE STILL UNDER OATH.

24            THE WITNESS:  OKAY.

25        (PLAINTIFF'S WITNESS, ANDREW COCKBURN, WAS PREVIOUSLY
```

1    **SWORN.)**

2            THE COURT:  OKAY.  THE TIME IS NOW 9:33.  GO AHEAD,

3    PLEASE.

4            MR. MCELHINNY:  GOOD MORNING, YOUR HONOR.  GOOD

5    MORNING, LADIES AND GENTLEMEN.

6            **FURTHER REDIRECT EXAMINATION (RESUMED)**

7    BY MR. MCELHINNY:

8    Q.   GOOD MORNING, DR. COCKBURN.

9    A.   GOOD MORNING.

10   Q.   WHEN WE LEFT ON TUESDAY AFTERNOON, WE WERE TALKING ABOUT

11   THE SLIDE TO UNLOCK PATENT AND WE WERE TALKING ABOUT WHETHER OR

12   NOT THE CURRENT APPLE IPHONE PRACTICES THAT CLAIM.

13        DO YOU RECALL THAT?

14   A.   YES, I DO.

15   Q.   AND WHAT IS YOUR VIEW ABOUT THAT?

16   A.   THAT IT DOES.

17   Q.   AND DO YOU HAVE -- YOU HAVE PREPARED SOME GRAPHICS TO

18   ILLUSTRATE THAT VIEW?

19   A.   I HAVE, YES.

20   Q.   MR. LEE, CAN WE SEE PDX 97.112, PLEASE.

21        (A VIDEOTAPE WAS PLAYED IN OPEN COURT OFF THE RECORD.)

22            THE WITNESS:  SO THIS ANIMATION EXPLAINS HOW IOS 7

23   SLIDE TO UNLOCK WORKS ON THE HOME PAGE, TO GO TO THE HOME PAGE.

24        WHAT YOU SEE HERE IS A PICTURE IN THE BACKGROUND OF A

25   LARGE WAVE, AND THE METAPHOR I'M GOING TO GIVE YOU IS THAT IN

1    FRONT OF THAT PICTURE, THERE'S A LARGE SLIDING GLASS DOOR, AND

2    ON THAT GLASS DOOR, THERE IS DATA ETCHED AT THE TOP, THE TIME,

3    4:34 ON WEDNESDAY, DECEMBER 17TH.

4          AND AT THE BOTTOM OF THIS LARGE SLIDING GLASS DOOR,

5    THERE'S A LITTLE ARROW AND THE TEXT "SLIDE TO UNLOCK."

6          SO WHEN THE USER MAKES CONTACT WITH THE SLIDING GLASS

7    DOOR, THE DOOR IS GOING TO MOVE IN ACCORDANCE WITH THE CONTACT.

8    OKAY?

9          SO IF WE START THE ANIMATION, THERE NEEDS TO BE A

10   PREDEFINED LOCATION, AND THAT PREDEFINED LOCATION IS ROUGHLY

11   THE LEFT-HAND SIDE OF THE DISPLAY.

12         NOW, IT'S PERFECTLY OKAY FOR THE PREDEFINED LOCATION TO BE

13   LARGE.  THE PATENT SPECIFICATION DIRECTLY ADDRESSES THIS ISSUE.

14   YOU SEE AN EXTRACT THERE FROM LINES -- COLUMN 11, LINES 59 AND

15   60 THAT SAYS "THE PREDEFINED LOCATION MAY BE, AS DESCRIBED

16   ABOVE, DEFINED NARROWLY OR BROADLY."

17         SO THE SPECIFICATION EXPLICITLY CONTEMPLATES A LARGE AREA

18   BEING THE PREDEFINED LOCATION.

19         SO NEXT THE USER MAKES CONTACT WITHIN THAT LOCATION AND

20   MOVES, AND THE NEXT -- AND THERE NEEDS TO BE CONTINUOUS

21   MOVEMENT IN ACCORDANCE WITH THE CONTACT, WHICH WE SEE THERE.

22         THE CLAIM ELEMENTS REQUIRES A PREDEFINED REGION, AND THAT

23   IS BEST DEFINED WITH RESPECT TO THE ARROW THAT YOU SEE AT THE

24   BOTTOM.

25         SO THE ARROW IS NOW ON THE RIGHT-HAND SIDE OF THE

1      PREDEFINED REGION MARKED BY THE YELLOW DASHED LINE, AND IF THAT

2      ARROW MOVES INTO THAT PREDEFINED REGION, THE DEVICE UNLOCKS.

3              (A VIDEOTAPE WAS PLAYED IN OPEN COURT OFF THE RECORD.)

4              THE WITNESS:  THE NEXT ANIMATION SHOWS YOU THE

5      OPPOSITE EFFECT, AN UNSUCCESSFUL ATTEMPT TO DO UNLOCK.  WE HAVE

6      CONTACT, CONTINUOUS MOVEMENT, THE ARROW DOES NOT MAKE IT INTO

7      THE PREDEFINED REGION AND, CONSEQUENTLY, THE DEVICE DOES NOT

8      UNLOCK.

9      BY MR. MCELHINNY:

10     Q.  YOU ALSO TALKED ABOUT SLIDE TO ANSWER.  DOES THE IPHONE

11     PRACTICE, THE CURRENT IPHONE PRACTICE THE CLAIM 8 OF THE '172

12     PATENT IN THE SLIDE TO ANSWER FUNCTION, THE '721 PATENT AND THE

13     SLIDE TO ANSWER FUNCTION?

14     A.  YES, IT DOES.

15     Q.  AND CAN YOU DEMONSTRATE THAT FOR US, PLEASE?

16     A.  I HAVE A VIDEO OF THAT HERE.

17             (A VIDEOTAPE WAS PLAYED IN OPEN COURT OFF THE RECORD.)

18             THE WITNESS:  THIS LOOKS -- THE GRAPHICS HERE ARE

19     SIMILAR TO THE ORIGINAL IOS DESIGN.  SO WHEN AN INCOMING CALL

20     ARRIVES, WE HAVE CONTACT WITH AN IMAGE, CONTINUOUS MOVEMENT IN

21     ACCORDANCE WITH THE CONTACT FROM A LOCATION TO A REGION, AND

22     THE DEVICE BECOMES UNLOCKED.

23     BY MR. MCELHINNY:

24     Q.  DOES IT MAKE ANY DIFFERENCE TO THE LANGUAGE OF CLAIM 8 IF

25     THE MOVEMENT THAT UNLOCKS THE SCREEN IS DIAGONAL?

```
 1    A.   NO, IT DOES NOT.  AND DIAGONAL MOVEMENT HAS ALWAYS BEEN A

 2    PROPERTY OF THE IPHONES, OR AT LEAST A POSSIBILITY, AND I HAVE

 3    A VIDEO IF I MAY SHOW THAT.

 4    Q.   SURE.

 5         (A VIDEOTAPE WAS PLAYED IN OPEN COURT OFF THE RECORD.)

 6           THE WITNESS:  SO THIS IS AN OLDER VERSION OF THE IOS.

 7    THE FINGER MAKES CONTACT AT A REGION CORRESPONDING TO THE

 8    IMAGE, MOVES DIAGONALLY, AND THE DEVICE UNLOCKS.

 9         SO THAT WAS, I GUESS, A 40 DEGREE ANGLE, OR THEREABOUTS.

10    BY MR. MCELHINNY:

11    Q.   PROFESSOR GREENBERG TESTIFIED, IN HIS OPINION, IT WOULD

12    HAVE TAKEN NO TIME AT ALL TO DESIGN AROUND THE '721 PATENT.

13         DO YOU RECALL THAT?

14    A.   I DO.

15    Q.   AND WHAT IS YOUR VIEW ON THAT ISSUE?

16    A.   WELL, THERE ARE TWO ISSUES HERE.  HE MADE THAT COMMENT

17    WITH RESPECT TO GLASS UNLOCK, AND GLASS UNLOCK IS PART OF THE

18    S II DEVICES WHICH ARE ACCUSED OF INFRINGING AND DO INFRINGE IN

19    SLIDE TO ANSWER AND SLIDE TO TEXT MESSAGE.

20         SO THE WORK AROUND THAT HE'S DESCRIBING ISN'T A COMPLETE

21    WORK AROUND.  IT'S STILL -- THOSE DEVICES STILL INFRINGE

22    ELSEWHERE.

23         THE SECOND ISSUE IS HE MADE NO MENTION OF THE TIME

24    REQUIRED TO NEGOTIATE WITH CARRIERS, AND WE'VE SEEN INTERNAL

25    SAMSUNG DOCUMENTS WHERE THERE IS PUSH BACK FROM THE CARRIERS
```

1    WHO ARE UNHAPPY ABOUT CERTAIN DESIGN SOLUTIONS.

2        SO NEITHER OF THOSE ISSUES WERE ADDRESSED BY

3    PROFESSOR GREENBERG.

4    Q.   YOU TESTIFIED ON YOUR DIRECT THAT IN YOUR REVIEW OF THE

5    SAMSUNG DOCUMENTS, YOU FELT THAT SAMSUNG HAD COPIED THE '721

6    INVENTION.  IS THAT CORRECT?

7    A.   THAT'S CORRECT.

8    Q.   PROFESSOR GREENBERG SAID HE READ THE SAME DOCUMENTS AND

9    CAME TO A DIFFERENT CONCLUSION; IS THAT RIGHT?

10   A.   THAT'S RIGHT.

11   Q.   CAN YOU POINT US TO THE PARTICULAR DOCUMENTS THAT YOU

12   THINK SUPPORT YOUR CONCLUSION AND HOW YOU GOT THERE?

13   A.   SURE.  I HAVE A SERIES OF SLIDES THAT'LL ASSIST US.

14       SO SAMSUNG WORKED VERY CLOSELY INSPECTING THE IPHONE,

15   EXAMINING ITS FEATURES AND BEHAVIOR, AND THOSE FEATURES AND

16   BEHAVIORS ARE VERY WELL DESCRIBED BY THE PATENT.  THAT'S WHAT

17   THE PATENT ENCAPSULATES.

18       SO IF WE LOOK AT A SERIES OF THE INTERNAL SAMSUNG

19   DOCUMENTS AND MAP THAT TO THE FEATURES OF THE IPHONE AS

20   DESCRIBED BY THE CLAIM, WE'LL SEE ONE BY ONE -- LET'S GO

21   FORWARD -- HERE'S ONE SAMSUNG INTERNAL DOCUMENT.  THIS IS

22   PX 120 AT PAGE 28.  IT'S ADDRESSING THE ELEMENT OF A FIRST

23   PREDEFINED LOCATION CORRESPONDING TO AN UNLOCK IMAGE.

24       SO SAMSUNG INSPECTED THE IPHONE AND THEY OBSERVED THE

25   IPHONE USES A PREDETERMINED POINT, THAT'S A PREDEFINED

1    LOCATION.

2         AND THE DIRECTION FOR IMPROVEMENT AT THE BOTTOM OF THE

3    DOCUMENT SAYS THEY NEED TO USE A SPECIFIC AREA.

4         SO THESE ARE ALL SYNONYMOUS.  THEY'RE DIFFERENT WAYS OF

5    SAYING PREDEFINED LOCATION.

6         SO WE HAVE THAT CLAIM ELEMENT CLEARLY IDENTIFIED IN THE

7    SAMSUNG DOCUMENTS.

8         NEXT, A DIFFERENT DOCUMENT, THIS IS PX 157 AT PAGE 20,

9    ADDRESSING THE ISSUE OF CONTINUOUS MOVEMENT OF THE UNLOCK

10   IMAGE.

11        SAMSUNG INSPECTED THE IPHONE, IDENTIFIED THAT THE MOVEMENT

12   IS CONTINUOUS, AND THEIR DIRECTION FOR IMPROVEMENT IS TO USE

13   CONTINUOUS MOVEMENT.

14        SO THIS DIRECTLY MAPS TO THE FEATURE OF THE IPHONE AS

15   STIPULATED IN THE CLAIM.

16        NEXT DOCUMENT, THIS IS PX 121 AT 27, AND IT CONCERNS

17   MOVEMENT FROM A PREDEFINED LOCATION TO A PREDEFINED REGION.

18        THEY INSPECT THE IPHONE AND IDENTIFY THAT IT USES SLIDING

19   OF AN IMAGE A FIXED DISTANCE, AND THE DIRECTION FOR IMPROVEMENT

20   IS TO MAKE THE TOUCH DISTANCE CLEAR, SUCH AS WITH SLIDING OR

21   MOVING A PUZZLE PIECE.

22        SO THIS WILL SHOW THE PREDEFINED LOCATION AND THE

23   PREDEFINED REGION.

24        AND FINALLY, ANOTHER DOCUMENT, PX 121 AT 79, CONCERNING

25   VISUAL CUES TO COMMUNICATE THE DIRECTION OF MOVEMENT, THEY

1    STUDY THE IPHONE AND SEE THAT IT PROVIDES A GUIDE FOR THE

2    SLIDING PATH, AND THE DIRECTION FOR IMPROVEMENT IS TO PROVIDE A

3    GUIDE, A FORM OF VISUAL CUE.

4    Q.   LET'S MOVE THEN TO THE '172 PATENT, WHICH IS THE AUTOMATIC

5    WORK CORRECTION PATENT.

6         WERE YOU IN THE COURTROOM FOR PROFESSOR WIGDOR'S TESTIMONY

7    ABOUT THE '172?

8    A.   YES, I WAS.

9    Q.   NOW, HE ONLY TALKED ABOUT VALIDITY BECAUSE INFRINGEMENT

10   HAS BEEN PREDETERMINED; IS THAT RIGHT?

11   A.   THAT'S CORRECT.

12   Q.   CAN YOU REMIND US THE BASIS UPON WHICH PROFESSOR WIGDOR

13   SAID THAT, IN HIS VIEW, THE APPLE '172 PATENT WAS INVALID?

14   A.   HIS ARGUMENT IS THAT THE PATENT EXAMINER GOT IT WRONG, AND

15   THAT THEY GOT IT WRONG WITH RESPECT TO TWO DOCUMENTS, A

16   ROBINSON PATENT AND A PUBLICATION REFERRED TO AS XRGOMICS.

17   Q.   AND CAN YOU REMIND US WHAT THE ROBINSON PATENT SHOWED?

18   A.   I HAVE A FEW SLIDES THAT I'LL GO THROUGH VERY QUICKLY.

19   THESE ARE EXACTLY THE SAME SLIDES THAT DR. WIGDOR USED.

20        SO THIS IS THE STARTING STATE BEFORE THE USER HAS BEGUN

21   TYPING AND IT SHOWS SOME TEXT IN A FIRST AREA THAT YOU SEE AT

22   THE TOP.

23        AND THERE'S A KEYBOARD THAT WILL BE ON THE DISPLAY THAT

24   THE USER CAN USE TO TYPE THEIR CHARACTERS.

25        IT'S GOING TO BE IMPORTANT TO PAY ATTENTION TO AN ARROW

1     THAT I'LL SHOW.  THAT'S MARKING THE POSITION WHERE THE TEXT

2     WILL EVENTUALLY APPEAR.

3     Q.   SO THAT'S -- THAT LARGER SPACE IN THE BACK IS THE SCREEN

4     WHERE WHAT THE PERSON IS TYPING APPEARS; IS THAT CORRECT?

5     A.   ALMOST.

6     Q.   ALMOST.

7     A.   THAT'S WHERE THE TEXT WILL APPEAR ONCE IT IS SELECTED.

8          SO WE CAN SEE THE FINAL SENTENCE THERE OF THAT TEXT THAT

9     DESCRIBES "ONCE ANY WORD HAS BEEN SELECTED, THE WORD IS OUTPUT

10    AT THE CURSOR POSITION IN THE," AND WE'RE GOING TO SEE A WORD

11    APPEAR THERE.

12         BUT IT'S NOT GOING TO APPEAR UNTIL IT HAS BEEN SELECTED.

13    THAT'S WHAT THAT FINAL SENTENCE SAYS.  SO IT'S IMPORTANT TO

14    WATCH THAT INSERTION POINT MARKED BY THE RED ARROW.

15         SO THE USER STARTS TYPING AND THEY TYPE R-W-ZED-T, AND

16    NOTE THAT THE INSERTION CURSOR HAS NOT MOVED AT ALL.  NO TEXT

17    HAS BEEN SELECTED.

18         ONE OF THE WORDS, THE SUGGESTIONS, IS EMBOLDED, THE WORD

19    "TEXT" AT THE BOTTOM THERE, AND THAT'S THE WORD THAT WILL BE

20    INPUT WHEN THE USER PRESSES THE SPACE BAR.

21         SO NOW LOOKING AT THAT RED ARROW AGAIN, NO TEXT IN THAT

22    FIRST AREA, THE USER PRESSES THE SPACE BAR, AND THE WORD "TEXT"

23    IS THEN OUTPUT IN THAT FIRST AREA.

24    Q.   SO HOW DOES THE ROBINSON PATENT COMPARE WITH THE ACTUAL

25    CLAIM LANGUAGE OF THE '172 PATENT, CLAIM 18?

1     A.   THAT'S THE CLAIM LANGUAGE THERE, AND THERE ARE A SERIES OF

2     ELEMENTS THAT ARE MISSING.

3          FIRST OFF, THE FIRST AREA DOES NOT DISPLAY THE CURRENT

4     CHARACTER STRING BEING INPUT BY THE USER.  THE TEXT DOES NOT

5     APPEAR IN THAT FIRST AREA UNTIL LATER.

6          SECOND, BECAUSE THE CURRENT CHARACTER STRING IS NOT IN THE

7     FIRST AREA, IT IS NOT REPLACED WITH THE SUGGESTED REPLACEMENT

8     CHARACTER WHEN THE USER PRESSES A DELIMITER.

9          AS YOU SAW, THERE WAS NO TEXT THERE TO BE REPLACED WHEN A

10    DELIMITER WAS PRESSED.

11         SIMILARLY, THE CHARACTER -- CURRENT CHARACTER STRING IS

12    NOT IN THE FIRST AREA, SO IT CAN'T BE REPLACED WHEN THE USER

13    SELECTS A SUGGESTED REPLACEMENT STRING.

14         AND, AGAIN, BECAUSE THE CURRENT CHARACTER STRING IS NOT

15    THERE, IT CAN'T BE KEPT IF THE USER PERFORMS A GESTURE.

16    Q.   SO PROFESSOR WIGDOR TRIED TO USE A COMBINATION OF ROBINSON

17    AND THIS OTHER PATENT, XRGOMICS; IS THAT CORRECT?

18    A.   THAT'S CORRECT.

19    Q.   AND WHAT DOES XRGOMICS -- DOES XRGOMICS FILL THESE GAPS?

20    A.   NO, IT DOES NOT.  THE SAME SET OF -- OR SOME OF THE SAME

21    ELEMENTS ARE MISSING IN BOTH OF THE DISCLOSURES.

22    Q.   IS XRGOMICS A SPELLING CORRECTION PATENT?

23    A.   NO, IT IS NOT.  IT'S A WORD COMPLETION PATENT.

24         SO YOU TYPE A SERIES OF CHARACTERS AND XRGOMICS OFFERS

25    ALTERNATIVE WORDS THAT COMPLETE THAT WORD.

1    Q.    LET'S LOOK AT YOUR CHART 97.124A.

2          CAN YOU EXPLAIN TO US THE DIFFERENCE BETWEEN A SPELLING

3    CORRECTION DEVICE AND A WORD COMPLETION DEVICE?

4    A.    SURE.  WE NEED TO LOOK QUITE CLOSELY AT THIS ONE.

5          SO XRGOMICS PROVIDES THE CURRENT CHARACTER STRING, OR THE

6    EQUIVALENT OF A CURRENT CHARACTER STRING.  THOSE ARE THE

7    LETTERS THAT THE USER IS CURRENTLY TYPING, AND THEY ARE THERE

8    D-E-V-A IN THE FIRST AREA, I'M ILLUMINATING IT ON THE LARGE

9    SCREEN IF YOU WANT TO -- IF YOU NEED GUIDANCE.  SO D-E-V-A

10   APPEARS IN THE FIRST AREA.

11         IT ALSO APPEARS IN THAT SECOND AREA, D-E-V-A, THAT'S WHAT

12   THE USER HAS TYPED, AND THERE ARE A SERIES OF SUGGESTED WORDS,

13   ALL OF WHICH BEGIN WITH D-E-V-A.  SO THERE'S DEVASTATING,

14   DEVALUE, DEVASTATE, ALL OF WHICH ARE COMPLETIONS OF WHAT THE

15   USER HAS ALREADY TYPED.

16   Q.    BUT THERE'S NO CORRECTION GOING ON THERE; IS THAT RIGHT?

17   A.    THERE'S NO CORRECTION.

18   Q.    IN YOUR VIEW, DOES THE COMBINATION, THIS HYPOTHETICAL

19   COMBINATION OF ROBINSON AND XRGOMICS, DOES THAT DISCLOSE THE

20   ELEMENTS OF CLAIM 18 OF THE '172 PATENT?

21   A.    NO.  BOTH OF THE DISCLOSURES ARE MISSING AT LEAST THIS

22   ELEMENT, "THE CURRENT CHARACTER STRING IN THE FIRST AREA IS

23   REPLACED WITH THE SUGGESTED REPLACEMENT STRING WHEN THE USER

24   PRESSES A DELIMITER."

25         IN XRGOMICS, IF THE USER PRESSES THE SPACE BAR IN THIS

1    STATE THAT WE SEE WITH D-E-V-A IN BOTH AREAS, D-E-V-A IS KEPT.

2    THERE'S NO REPLACEMENT.

3    Q.   DID YOU CONSIDER SECONDARY CONSIDERATIONS WHEN YOU WERE

4    CONSIDERING THE VALIDITY OF THE '172 PATENT?

5    A.   YES, I DID.

6    Q.   AND WHAT SECONDARY CONSIDERATIONS, IF ANY, DID YOU FIND?

7    A.   THERE'S CLEARLY SUCCESS FOR THIS, FOR THIS DISCLOSURE.

8    SAMSUNG HAS SOLD OVER 7 AND A HALF MILLION DEVICES THAT USE

9    THIS TECHNIQUE.

10        AND WE'VE ALSO SEEN PRAISE FOR THE TECHNIQUE WITH

11   SAMSUNG'S INTERNAL DOCUMENTS AND COMMENTS FROM CARRIERS,

12   CLEARLY STATING THAT THEY WANT THE -- THEY WANT TO USE THE

13   CLAIM 18 MECHANISM.

14   Q.   SO PROFESSOR WIGDOR TOLD US THAT HE THOUGHT THAT THE

15   PATENT OFFICE GOT IT WRONG IN CONNECTION WITH THIS PATENT.

16        WHAT IS YOUR OPINION ON THAT ISSUE?

17   A.   THAT'S -- THAT'S CLEARLY INCORRECT.  THE -- THE PATENT

18   OFFICE WAS EXTREMELY DILIGENT.  THERE'S 650 PAGES IN THE PATENT

19   HISTORY, AND IT DIRECTLY ADDRESSES A PATENT CALLED LONGE THAT

20   SHARES THE SPECIFICATION WITH ROBINSON.

21        SO THIS IS -- IT'S AN EARLIER PATENT THAT HAS EXACTLY THE

22   SAME FIGURES THAT I'VE JUST SHOWN YOU CONTAINED WITHIN IT.

23        SO THE LONGE PATENT IS, ESSENTIALLY, THE SAME AS THE

24   TEACHING OF ROBINSON, AND THAT WAS STRONGLY CONSIDERED BY THE

25   PATENT OFFICE.

1            I HAVE A SLIDE THAT SUMMARIZES OTHER COMPONENTS FROM THE

2     PATENT OFFICE.  THEY ALSO --

3     Q.   THIS IS PDX 97-126 A.

4          THANK YOU.

5     A.   SO THEY EXPLICITLY CONSIDERED ROBINSON THROUGH LONGE.

6     THEY ALSO CONSIDERED A GREAT DEAL OF OTHER MATERIAL, 59 OTHER

7     PATENTS AND 22 PUBLICATIONS, SOME OF WHICH SHARE THE DISCLOSURE

8     OF XRGOMICS.

9          SO THEY DIRECTLY -- IT'S SOMETHING THAT'S VERY SIMILAR,

10    SAME FEATURES AS XRGOMICS.  SO THEY DIRECTLY CONSIDERED THESE

11    THINGS AND THEY DETERMINED -- AND THEY ISSUED THE PATENT.

12    Q.   I WANT TO MOVE TO ONE LAST SUBJECT, OR A SLIGHTLY

13    DIFFERENT SUBJECT, IS THAT PROFESSOR WIGDOR ALSO CRITICIZED

14    DR. HAUSER'S SURVEY.

15         DO YOU RECALL THAT?

16    A.   YES, I DO.

17    Q.   SPECIFICALLY, HE SAID THAT IN THE ALTERNATIVE THAT

18    PROFESSOR HAUSER GAVE TO THE USERS IN HIS SURVEY, THAT

19    PROFESSOR HAUSER SHOULD HAVE OFFERED THEM WHAT HE CALLED THE

20    DART ALTERNATIVE.

21         DO YOU RECALL THAT?

22    A.   YES, I DO.

23    Q.   THE SYSTEM THAT WAS USED ON THE DART PHONE; RIGHT?

24    A.   YES.

25    Q.   CAN YOU REMIND US, FIRST, WHAT THE DART PHONE SYSTEM WAS?

1    A.   THE DART MECHANISM, IF YOU REMEMBER, FOR EACH CHARACTER

2    THAT YOU PRESS, YOU CAN SEE A COMPLETELY DIFFERENT WORD

3    APPEARING IN THAT FIRST AREA.  YOU MAY REMEMBER A VIDEO OF

4    TYPING RIBBON, AND YOU SEE A SERIES OF WORDS BEING PRESENTED IN

5    THAT FIRST AREA WHERE THE WORD COMPLETELY CHANGED FOR EACH

6    CHARACTER.

7         SAMSUNG'S INTERNAL DOCUMENTS REFER TO THIS AS A JARRING

8    INTERACTION, AND I VERY MUCH AGREE.

9    Q.   DO YOU AGREE WITH PROFESSOR WIGDOR THAT THAT WOULD HAVE

10   BEEN AN APPROPRIATE ALTERNATIVE TO OFFER TO CONSUMERS IN THE

11   SURVEY?

12   A.   NO, IT WOULD NOT.  THE SURVEY ADDRESSED THE BEST OF THE

13   ALTERNATIVES THAT WERE AVAILABLE TO SAMSUNG.  THEY USED THE

14   S III TECHNIQUE.  THE SURVEY USED THE S III METHOD THAT DOES

15   NOT REPLACE THE CHARACTER STRING ON DELIMITER.

16        WE KNOW THAT SAMSUNG -- OR WE CAN INFER THAT SAMSUNG

17   BELIEVES THIS TO BE -- BELIEVES THE DART METHOD TO BE INFERIOR

18   TO THE S III METHOD BECAUSE THEY REPLACED THE DART METHOD IN

19   THEIR S III DEVICES.

20   Q.   SO THE ALTERNATIVE THAT PROFESSOR HAUSER PRESENTED IN HIS

21   SURVEY WAS, IN FACT, THE ONE THAT SAMSUNG ULTIMATELY USED ON

22   THE S III; IS THAT CORRECT?

23   A.   THAT'S CORRECT.

24   Q.   PROFESSOR, REMIND US AGAIN, WHAT ARE YOUR OVERALL OPINIONS

25   IN THIS CASE CONCERNING THE TWO PATENTS THAT YOU LOOKED AT?

1    A.    WELL, THE COURT HAS ALREADY RULED ON INFRINGEMENT FOR THE

2    '172; INFRINGEMENT FOR THE '721 PATENT, THAT SEEMS VERY CLEAR;

3    THE VALIDITY, THE PATENT OFFICE WAS EXTREMELY DILIGENT, THEY

4    CONSIDERED THE ISSUES THAT ARE BEING RAISED BY SAMSUNG EXPERTS

5    AND THEY DETERMINED THAT THOSE PATENTS WERE VALID AND ISSUED

6    THEM.

7         AND FINALLY, IT'S CLEAR THAT THESE PATENTS ARE VALUABLE.

8    Q.    AND, SIR, FINALLY, AS AN EXPERT IN COMPUTER SCIENCE AND

9    HUMAN COMPUTER INTERACTIONS, CAN YOU TELL US YOUR OPINION ABOUT

10   THE VALUE OF THESE TWO PATENTS?

11   A.    THESE ARE -- THESE ARE BOTH ESSENTIAL INTERACTIONS TO GET

12   CORRECT.  SLIDE TO UNLOCK IS YOUR FIRST EXPERIENCE WITH THE

13   DEVICE IF YOU'RE SITTING IN A SHOP.

14        IT'S ALSO YOUR FIRST INTERACTION WITH THE DEVICE WHEN YOU

15   TAKE IT OUT OF THE BOX.  YOU MUST GIVE THE USER A POSITIVE

16   FIRST EXPERIENCE, PARTICULARLY IN THE SHOP, IF YOU INTEND TO

17   SELL IT.

18        IT'S ALSO AN INTERACTION THAT'S CARRIED OUT HUNDREDS OF

19   TIMES A DAY, SO IT NEEDS TO BE SOMETHING THAT'S PLEASANT AND

20   EASY TO DO.

21        FOR THE '172 PATENT, IT'S ESSENTIAL THAT YOU HAVE AN

22   EFFICIENT AND EFFECTIVE AND EASY TO UNDERSTAND MECHANISM TO

23   ENTER TEXT MESSAGES, TO SEND E-MAIL MESSAGES.

24        IF YOU DON'T HAVE A GOOD SOLUTION FOR TEXT ENTRY, IT'S

25   ENTIRELY LIKELY THAT A MOBILE DEVICE WILL FAIL.

1           MR. MCELHINNY:  THANK YOU, PROFESSOR.

2      I HAVE NOTHING FURTHER, YOUR HONOR.

3           THE COURT:  ALL RIGHT.  THE TIME IS NOW 9:53.

4      IS THERE ANY CROSS-EXAMINATION?

5           MR. NELSON:  A LITTLE BIT, YOUR HONOR.

6           THE COURT:  ALL RIGHT.  I'LL GIVE YOU TIME TO GET SET

7      UP.

8           MR. NELSON:  OKAY.  THANK YOU.

9      (PAUSE IN PROCEEDINGS.)

10          THE COURT:  ARE YOU READY?

11          MR. NELSON:  GOOD MORNING, EVERYBODY.

12          THE COURT:  TIME IS 9:53.

13     GO AHEAD, PLEASE.

14                    **FURTHER RECROSS-EXAMINATION**

15   BY MR. NELSON:

16   Q.   GOOD MORNING, SIR.

17   A.   GOOD MORNING.

18   Q.   SO YOU WERE TALKING ABOUT THE UNLOCK SCREEN FOR IOS 7?

19   A.   YES.

20   Q.   DO YOU REMEMBER THAT THIS MORNING?  THAT WAS ON A DEVICE,

21   THE IPHONE 5, RIGHT, THAT WAS RELEASED, LIKE, FALL OF 2013,

22   WASN'T IT?

23   A.   THOSE DATES SOUND RIGHT.

24   Q.   OKAY.  FALL OF 2013.

25          SO AT THIS POINT -- WE'VE BEEN TALKING ABOUT, YOU KNOW,

1      SHOWING DEMONSTRATIVES AND THINGS, BUT LET ME PUT THE ACTUAL

2      IPHONE 5 WITH THE IOS 7 IN EVIDENCE.  IT'S DX 345.

3          I MOVE FOR ADMISSION OF THAT, YOUR HONOR.

4              THE COURT:  ANY OBJECTION?

5              MR. MCELHINNY:  NO OBJECTION, YOUR HONOR.

6              THE COURT:  IT'S ADMITTED.

7          (DEFENDANTS' EXHIBIT 345 WAS ADMITTED IN EVIDENCE.)

8      BY MR. NELSON:

9      Q.   AND ALSO WE'VE BEEN TALKING ABOUT THE IPHONE 4.  THAT HAS

10     THE OLD METHOD; RIGHT?

11     A.   THERE'S A VARIETY OF IPHONES THAT HAVE THE OLD METHOD,

12     YES.

13             MR. NELSON:  OKAY.  THAT'S ONE OF THEM.

14         THAT'S JX 38.  I MOVE FOR THE ADMISSION OF THAT AS WELL,

15     YOUR HONOR.

16             THE COURT:  ANY OBJECTION?

17             MR. MCELHINNY:  NO OBJECTION.  YOUR HONOR.

18             THE COURT:  ALL RIGHT.  THAT'S ADMITTED.

19         (JOINT EXHIBIT 38 WAS ADMITTED IN EVIDENCE.)

20             MR. NELSON:  THANK YOU.

21     Q.   SO IN THE NEW VERSION, YOU SHOWED US YOU MOVE YOUR FINGER

22     AND THE UNLOCK SCREEN SLIDES AWAY AND REVEALS THE HOME SCREEN;

23     RIGHT?

24     A.   YEAH.  I USED A METAPHOR OF A GLASS SLIDING DOOR.

25     Q.   OKAY.  AND SO CAN WE SEE SDX 2476.

1          SO THAT'S -- YOU TALKED ABOUT THIS, TOO.  THIS IS

2    SAMSUNG'S GLASS UNLOCK; RIGHT?

3    A.    THAT'S ONE OF THE GLASS UNLOCK ONES.

4    Q.    RIGHT.  AND THAT'S ON THE S II?

5    A.    YES.

6    Q.    AND THAT ONE YOU TAKE YOUR FINGER AND YOU SLIDE THE GLASS

7    SCREEN AWAY AND REVEAL THE HOME SCREEN; RIGHT?

8    A.    YES.

9    Q.    OKAY.  AND THAT ONE, THE GLASS UNLOCK ON THE S II, THAT

10   WAS RELEASED, LIKE, FALL OF 2011; RIGHT?

11   A.    THAT SOUNDS RIGHT.

12   Q.    SO ALMOST TWO YEARS BEFORE IOS 7; RIGHT?

13   A.    YES.

14   Q.    SO DURING YOUR DIRECT TESTIMONY A COUPLE WEEKS AGO AND

15   DURING YOUR DIRECT TESTIMONY HERE TODAY, YOU DIDN'T PRESENT ANY

16   DOCUMENTS, DID YOU, TO SHOW WHERE APPLE CAME UP WITH ITS NEW

17   UNLOCK SCREEN FOR IOS 7, DID YOU?

18   A.    NO, I DID NOT.

19          MR. NELSON:  OKAY.  THANK YOU, SIR.

20       I HAVE NO FURTHER QUESTIONS.

21          THE COURT:  ALL RIGHT.  THE TIME IS NOW 9:55.

22                   **FURTHER REDIRECT EXAMINATION**

23   BY MR. MCELHINNY:

24   Q.    PROFESSOR, IN FORMING YOUR OPINIONS ABOUT WHETHER OR NOT

25   THERE WAS INFRINGEMENT, CAN YOU DESCRIBE HOW YOU USED THE

1    PATENT CLAIM TERM?

2    A.   I CONSTRUED THE PATENT CLAIMS AND I INSPECTED THE DEVICES

3    WITH RESPECT TO THE ELEMENTS OF THE CLAIM.

4              MR. MCELHINNY:  THANK YOU.

5         NOTHING FURTHER.

6              THE COURT:  ALL RIGHT.  TIME IS 9:56.  ACTUALLY, WHEN

7    MR. MCELHINNY STARTED WAS 9:56.

8         ALL RIGHT.  MAY THIS WITNESS BE EXCUSED, NOT SUBJECT TO

9    RECALL?

10             MR. MCELHINNY:  YES, YOUR HONOR.

11             MR. NELSON:  AGREED.

12             THE COURT:  ALL RIGHT.  YOU MAY BE EXCUSED.

13        ALL RIGHT.  SO --

14             MS. MAROULIS:  YOUR HONOR, WE'RE RESERVING JMOL PER

15   PRIOR AGREEMENT.

16             THE COURT:  THAT'S CORRECT.

17             MR. MCELHINNY:  I HAVEN'T RESTED YET.

18             THE COURT:  ALL RIGHT.  APPLE HAS 15 MINUTE LEFT AND

19   SAMSUNG HAS 8 MINUTES LEFT.

20             MR. MCELHINNY:  SUBJECT TO THE ISSUE WHICH WE

21   DISCUSSED THIS MORNING, YOUR HONOR, WE REST.

22             THE COURT:  ALL RIGHT.  NOW IT'S SAMSUNG'S CASE.

23        GO AHEAD, PLEASE.

24             MR. NELSON:  OKAY.  I SHOULD COME UP HERE.

25        SO, YOUR HONOR, FOR THE REBUTTAL, THE INVALIDITY REBUTTAL,

```
 1      WE CALL DR. MARTIN RINARD.  RINARD.  I KNEW I WAS GOING TO SAY

 2      IT WRONG.  SORRY.

 3                  THE COURT:  ALL RIGHT.  PLEASE COME FORWARD.

 4           SIR, YOU ARE STILL UNDER OATH.

 5           (DEFENDANTS' WITNESS, MARTIN RINARD, WAS PREVIOUSLY

 6      SWORN.)

 7                  THE COURT:  I'LL LET YOU GET SET UP.

 8                  MR. NELSON:  OKAY.  THANK YOU, YOUR HONOR.

 9           (PAUSE IN PROCEEDINGS.)

10                  THE COURT:  ARE YOU READY, MR. NELSON?

11                  MR. NELSON:  I AM, YOUR HONOR.

12                  THE COURT:  ALL RIGHT.  TIME IS 9:58.

13           GO AHEAD, PLEASE.

14                      FURTHER REDIRECT EXAMINATION

15      BY MR. NELSON:

16      Q.   GOOD MORNING, DR. RINARD.

17      A.   GOOD MORNING.

18      Q.   SO WERE YOU HERE LAST TUESDAY WHEN DR. SNOEREN TESTIFIED

19      ABOUT THE '959 PATENT?

20      A.   YES, I WAS HERE.

21      Q.   OKAY.  SO JUST LET ME GIVE YOU THE GROUND RULES.  WE'RE

22      LIMITED TO RESPONDING TO HIS INVALIDITY OPINIONS HERE ON THE

23      '959 PATENT.  OKAY?

24      A.   OKAY.

25      Q.   ALL RIGHT.  SO LET'S LOOK AT CLAIM 25.  I HAVE IT UP HERE
```

1        ON THE BOARD.  IT'S UP ON THE SCREEN AS WELL.

2            WHAT KIND OF CLAIM IS THIS?

3        A.   SO THIS IS A COMPUTER READABLE MEDIUM CLAIM.  IT'S ABOUT

4        THE COMPUTER READABLE MEDIUM, SOMETHING LIKE A DISK THAT A

5        COMPUTER CAN READ THAT CONTAINS INSTRUCTIONS THAT HAVE TO

6        SATISFY THE ELEMENTS OF THE CLAIM.

7        Q.   OKAY.  IS IT A METHOD CLAIM?

8        A.   NO.  IN A METHOD CLAIM, YOU HAVE TO DO SOMETHING TO

9        SATISFY THE LIMITATIONS OF THE CLAIM.  HERE, THIS CLAIM IS JUST

10       ABOUT INSTRUCTIONS THAT EXIST ON SOMETHING LIKE A DISK.

11       Q.   OKAY.  SO NOW LET'S TALK ABOUT THE WAIS PRIOR ART, AND YOU

12       OFFERED OPINIONS ON THAT.

13           CAN YOU REMIND US WHAT PRIOR ART YOU RELIED UPON FOR YOUR

14       OPINIONS ON THE WAIS SYSTEM?

15       A.   THAT'S THE WAIS SOURCE CODE.

16       Q.   AND DURING DR. SNOEREN'S TESTIMONY, DID YOU HEAR ANY

17       DEBATE ABOUT WHETHER THAT SOURCE CODE WAS AVAILABLE IN THE

18       UNITED STATES BEFORE THE '959 PATENT WAS FILED?

19       A.   NO, DR. SNOEREN DID NOT DISPUTE WHETHER THAT SOURCE CODE

20       WAS AVAILABLE PRIOR TO THE '959 PATENT IN THE UNITED STATES.

21       Q.   OKAY.  SO THERE'S THIS -- IN THE PREAMBLE THERE, THERE'S

22       REFERENCE TO PROGRAM INSTRUCTIONS.

23       A.   YES, I SEE THAT.

24       Q.   NOW, DO YOU RECALL THAT THERE WAS SOME DEBATE ABOUT THAT?

25       A.   YEAH, I DO.

1    Q.   AND WHAT DO YOU UNDERSTAND THAT TO BE?

2    A.   WELL, DR. SNOEREN SEEMED TO BE SAYING THAT SOMEHOW THE

3    SOURCE CODE COULDN'T BE THE PROGRAM INSTRUCTIONS OF CLAIM 25.

4    Q.   AND DO YOU AGREE WITH THAT?

5    A.   I DON'T AGREE WITH THAT.  SOURCE CODE IS INSTRUCTIONS THAT

6    HUMANS WRITE, IT'S HUMAN READABLE, TO TELL THE COMPUTER WHAT TO

7    DO.  SO I THINK IT'S CLEARLY -- YOU KNOW, THE WAIS INSTRUCTIONS

8    ARE PART OF THE WAIS PROGRAM, SO CLEARLY THE WAIS INSTRUCTIONS

9    AND SOURCE CODE ARE PROGRAM INSTRUCTIONS AS REQUIRED BY

10   CLAIM 24.

11   Q.   NOW, DO YOU THINK DR. SNOEREN APPLIED A CONSISTENT

12   STANDARD WITH RESPECT TO THIS INSTRUCTION?

13   A.   NO, I DON'T.  YOU MAY REMEMBER THAT WHEN DR. SNOEREN WAS

14   DESCRIBING INFRINGEMENT, HE SHOWED YOU SOURCE CODE FROM

15   ANDROID, JUST LIKE I SHOWED YOU SOURCE CODE FOR WAIS WHEN I WAS

16   DESCRIBING INVALIDITY.

17        BUT NOW SOMEHOW WHEN WE'RE TALKING ABOUT INVALIDITY,

18   APPARENTLY SOURCE CODE ISN'T GOOD ENOUGH FOR DR. SNOEREN.

19   Q.   SO LET'S MOVE TO A NEW TOPIC.

20        DR. SNOEREN ALSO SAID THAT HE DIDN'T THINK THAT YOUR WAIS

21   SYSTEM, THE SOURCE CODE THAT YOU RELIED ON, SHOWED A PLURALITY

22   OF HEURISTICS.

23        DO YOU RECALL THAT?

24   A.   YES, I RECALL THAT.

25   Q.   SO DO YOU AGREE WITH THAT?

1    A.   NO, I DON'T.  I SHOWED THE JURY THE SOURCE CODE FOR THREE

2    HEURISTICS, THE HEURISTIC RELEVANCE RANKING, STEMMING, AND

3    SYNONYMS.

4    Q.   SO -- AND WHY ARE THOSE THREE HEURISTICS?

5    A.   OH, BECAUSE THEY MEET THE DEFINITION.  THEY'RE THE RULES

6    UPON WHICH IS LOCATED INFORMATION, AS THE CLAIM REQUIRES.

7    Q.   SO WERE THERE ANY DOCUMENTS THAT YOU RECALL REVIEWING

8    CONCERNING WAIS THAT SUPPORTED YOUR OPINIONS THERE?

9    A.   YES.  FIRST THE SOURCE CODE, AND THEN THERE WAS WAIS

10   PROCEEDINGS WITH INFORMATION ABOUT THAT.

11   Q.   OKAY.  SO LET'S LOOK AT DX 311, PAGE 13.  THIS IS ALREADY

12   ADMITTED.

13        SO WAS THERE -- WHAT IS THIS, FIRST OF ALL?

14   A.   THIS IS AN EXCERPT FROM AN ARTICLE IN THE WAIS CONFERENCE

15   PROCEEDINGS FROM 1992 IN NORTH CAROLINA, AND IT SAYS WHAT WAIS

16   DOES, HOW WAIS WORKS IS IT RANKS THE RESULTS BASED ON

17   HEURISTICS.

18        SO IN OTHER WORDS, IT SEARCHES BASED UPON HEURISTICS,

19   MULTIPLE HEURISTICS.

20   Q.   SO LET'S TALK ABOUT WHERE THESE HEURISTICS NEED TO BE

21   LOCATED IN CLAIM 25.

22        DO YOU HAVE AN OPINION ABOUT THAT?

23   A.   YES, I DO.

24   Q.   AND WHAT'S THAT?

25   A.   SO THE HEURISTICS CAN BE LOCATED ANYWHERE, ANYWHERE AS

1    LONG AS THE INSTRUCTIONS ON THE COMPUTER READABLE MEDIUM, THE

2    DISK, CAN PROVIDE THE INFORMATION IDENTIFIER TO THE HEURISTICS.

3         THE KEY ELEMENT HERE IS THAT IT PROVIDES SAID INFORMATION

4    IDENTIFIER.  THE INSTRUCTIONS THAT PROVIDE THAT INFORMATION

5    IDENTIFIER HAVE TO BE ON THE DISK, OR WHATEVER THE COMPUTER

6    READABLE MEDIUM IS.

7         BUT THE HEURISTICS THEMSELVES DON'T HAVE TO BE THERE.

8    THEY CAN BE ANYWHERE WHERE THEY CAN RECEIVE THE INFORMATION

9    IDENTIFIER FROM THE INSTRUCTIONS THAT PROVIDE THAT INFORMATION

10   IDENTIFIER.

11   Q.   AND WHAT WOULD YOU EXPECT TO SEE WITH RESPECT TO THAT IN

12   THE SYSTEM?

13   A.   WELL, IF YOU'RE LOCATING INFORMATION ON THE INTERNET, IT

14   MAKES SENSE TO LOCATE THE HEURISTICS -- TO PLACE THE HEURISTICS

15   THAT LOCATE THAT INFORMATION CLOSE TO WHERE THE INFORMATION IS.

16        SO IF THE INFORMATION IS ON THE INTERNET, IT WOULD MAKE

17   SENSE TO PLACE THE HEURISTICS ON THE INTERNET, CLOSE TO WHERE

18   THE INFORMATION THAT THEY'RE LOCATING IS, BECAUSE THAT MAKES

19   THE WHOLE LOCATION PROCESS MUCH MORE EFFICIENT.

20   Q.   SO WHAT'S YOUR OPINION THEN REGARDING THE ELEMENTS OF

21   CLAIM 25 WITH RESPECT TO THE WAIS PRIOR ART SYSTEM THAT YOU

22   PRESENTED?

23   A.   SO THE WAIS SOURCE CODE HAS ALL OF THE INSTRUCTIONS

24   REQUIRED FOR CLAIM 25.

25        MR. NELSON:  THANK YOU, SIR.

```
 1              I HAVE NO FURTHER QUESTIONS FOR YOU.

 2              THE WITNESS:  THANK YOU.

 3              THE COURT:  ALL RIGHT.  TIME IS 10:03.

 4              MS. KREVANS:  WE HAVE NO FURTHER QUESTIONS FOR THIS

 5      WITNESS, YOUR HONOR.

 6              THE COURT:  ALL RIGHT.  MAY THIS WITNESS BE EXCUSED,

 7      NOT SUBJECT TO RECALL?

 8              MS. KREVANS:  HE MAY.

 9              THE COURT:  ALL RIGHT.  YOU MAY --

10              MR. NELSON:  AGREED, YOUR HONOR.

11              THE COURT:  -- BE EXCUSED, NOT SUBJECT TO RECALL.

12          ALL RIGHT.  WELL, SAMSUNG HAS 2 MINUTES LEFT AND APPLE HAS

13      15 MINUTES LEFT.

14              MS. KREVANS:  WE'RE GIVING OUR 15 MINUTES BACK TO THE

15      COURT.

16              MR. NELSON:  YOU CAN HAVE OUR 2 AS WELL, YOUR HONOR.

17          (LAUGHTER.)

18              THE COURT:  OKAY.  WELL, WE'LL SEE WHAT HAPPENS ON

19      MONDAY.

20              MR. NELSON:  YEAH.

21              THE COURT:  OKAY.

22              MR. NELSON:  SO SUBJECT, OBVIOUSLY, TO THE

23      FORMALITIES, SUBJECT TO OUR ISSUE, WE REST AT THIS POINT WITH

24      THE REBUTTAL CASE.

25              THE COURT:  ALL RIGHT.  OKAY.  THANK YOU.
```

```
 1              YOU MAY STEP DOWN.

 2                   THE WITNESS:  THANK YOU.

 3                   THE COURT:  AND AT THIS POINT I'M GOING TO GO AHEAD

 4       AND EXCUSE THE JURY FOR TODAY.

 5              IF FOR SOME REASON WE NEED TO CHANGE THE TIME OF WHEN YOU

 6       COME ON MONDAY, PERHAPS CHANGE IT TO 10:00 O'CLOCK IN CASE

 7       THERE ARE THINGS THAT WE NEED TO DISCUSS MONDAY MORNING, WE

 8       WILL CALL YOU, OR HOWEVER YOU'D LIKE TO BE CONTACTED, SUNDAY BY

 9       5:00.  DOES THAT SOUND OKAY?  OR WOULD YOU LIKE EARLIER

10       ADVANCED NOTICE?

11                   JUROR:  THAT'S FINE.

12                   JUROR:  THAT'S FINE.

13                   THE COURT:  OKAY.  SO UNLESS YOU HEAR FROM US, WE

14       WILL SEE YOU MONDAY AT 9:00, BUT WE DO STILL INTEND TO HAVE

15       CLOSING ON TUESDAY AND HAVE DELIBERATIONS START ON WEDNESDAY AT

16       THE LATEST, AND IT MAY STILL HAPPEN ON MONDAY AS WE ORIGINALLY

17       THOUGHT.

18                   MR. MCELHINNY:  I'M SORRY, YOUR HONOR.  I THINK YOU

19       SAID CLOSINGS ON TUESDAY.  I THINK AT THE MOMENT WE'RE PLANNING

20       CLOSINGS ON MONDAY.

21                   THE COURT:  AT THE MOMENT WE'RE PLANNING CLOSINGS ON

22       MONDAY.  BUT IF THAT CHANGES, WE CAN DO IT ON TUESDAY AND YOU

23       WOULD BEGIN DELIBERATING ON WEDNESDAY.  THAT WAS OUR ORIGINAL

24       SCHEDULE.  WE THOUGHT WE WOULD ADVANCE IT A DAY, BUT NOW WE'LL

25       LET YOU KNOW ON MONDAY.  OKAY?
```

 1          AGAIN, PLEASE DON'T RESEARCH OR DISCUSS THE CASE.  THANK

 2     YOU FOR YOUR PATIENCE AND YOUR SERVICE.  WE'LL SEE YOU MONDAY

 3     AT 9:00.

 4          (JURY OUT AT 10:06 A.M.)

 5          THE COURT:  OKAY.  THE RECORD SHOULD REFLECT THE

 6     JURORS HAVE LEFT THE COURTROOM.

 7          LET'S DO LITTLE BIT OF PLANNING FOR TODAY.  PLEASE TAKE A

 8     SEAT.

 9          IF ADDITIONAL TESTIMONY IS NEEDED, HOW MUCH TIME,

10     UNDERSTANDING THAT YOU STILL MIGHT BE DIGESTING THE FEDERAL

11     CIRCUIT'S ORDER, HOW MUCH TIME DO YOU THINK?  I WOULD LIKE TO

12     CLOSE ON TUESDAY AND HAVE THE JURY BEGIN DELIBERATING ON

13     WEDNESDAY, SO I WANT WHATEVER HAS TO BE DONE TO BE CONCLUDED ON

14     MONDAY.

15          MR. LEE:  YOUR HONOR, I WOULD ASK -- AND THIS MAY

16     HELP US GET DONE ON MONDAY -- HOW ABOUT 30 MINUTES A SIDE?

17     THIS IS A PRETTY NARROW ISSUE.  THEY'VE DESCRIBED -- BOTH OF

18     THEM HAVE DESCRIBED WHAT THE PATENT SAYS, YOU CAN SEE WHAT THE

19     PRODUCTS DO, WHAT THE PRIOR ART DOES.

20          MR. NELSON:  BUT I THINK -- SO I'M NOT SURE -- WE

21     HAVE TO CROSS THEM, TOO, YOU KNOW, SO 30 MINUTES A SIDE WOULD

22     BE A LITTLE SHORT.  I THINK WE'D BE GOING PRETTY QUICK.

23          THERE ARE -- THERE'S, YOU KNOW, TWO CLAIM TERMS THAT HAVE

24     SOME FAIRLY TECHNICAL ISSUES ASSOCIATED WITH THAT, SO I THINK,

25     YOU KNOW, IT WOULD BE MORE LIKE AN HOUR IF THEY WERE GOING TO

```
 1        DO HALF AN HOUR DIRECT AND THEN HALF AN HOUR ALLOTTED FOR THE

 2        CROSS-EXAMINATIONS.

 3              OR 45 AND MINUTES, YOU KNOW, HOWEVER.

 4                  THE COURT:  YOU'RE SAYING EACH SIDE SHOULD GET AN

 5        HOUR?

 6                  MR. NELSON:  YEAH.  I THINK IT CAN BE COVERED, AND I

 7        THINK HALF AN HOUR IS PROBABLY A LITTLE AMBITIOUS.

 8                  MR. LEE:  I'M NOT SURE -- AGAIN, THIS IS WITHOUT

 9        READING THE OPINION, BUT WE'RE NOT SURE THAT THERE ARE TWO

10        CLAIM TERMS IMPLICATED.  THERE ACTUALLY IS A CONSTRUCTION AT

11        THE BOTTOM OF PAGE 26, BUT I DON'T THINK THAT IT AFFECTS THE

12        VALIDITY ANALYSIS.

13              I THINK AN HOUR -- WHAT IF WE COMPROMISE AND SAID 45

14        MINUTES A SIDE?

15                  THE COURT:  WELL, THAT'S WHAT I WAS THINKING, BUT --

16                  MR. LEE:  YEAH.

17                  THE COURT:  HOW WOULD -- I GUESS -- WOULD APPLE GO

18        FIRST AND THEN CROSS ANY REDIRECT AND ANY RECROSS?  WE'LL JUST

19        HANDLE IT LIKE AN ADDITIONAL WITNESS?

20                  MR. LEE:  YEAH.

21                  THE COURT:  OR ARE YOU PLANNING TO EACH CALL YOUR OWN

22        EXPERTS AND WE'LL JUST HAVE 45 MINUTES TO DIVIDE IT HOWEVER YOU

23        WISH, BUT WE'LL FOLLOW THE SAME DIRECT, CROSS, REDIRECT,

24        RECROSS PROCESS?

25                  MR. LEE:  YEAH.  I THINK THE WAY IT WOULD WORK, YOUR
```

```
 1        HONOR, AND I'M -- I'LL LOOK AT MS. KREVANS -- IS WE HAVE TO

 2        GO -- WE WOULD CALL DR. MOWRY FIRST.

 3               THE COURT:  UM-HUM.

 4               MR. LEE:  HE WOULD TESTIFY AS TO --

 5               MS. KREVANS:  INFRINGEMENT.

 6               MR. LEE:  -- INFRINGEMENT, MR. NELSON WOULD GO AND

 7        REBUT INFRINGEMENT AND WHATEVER ADDITIONAL OPINIONS HE HAS ON

 8        VALIDITY WOULD GO IN, AND THEN DR. MOWRY WOULD COME BACK AND

 9        REBUT THOSE.

10               THE COURT:  BUT THEN DR. JEFFAY COULD COME BACK ON ON

11        INVALIDITY.

12               MR. NELSON:  I MEAN, THIS TIME AROUND WE PROBABLY

13        COULD DO IT WHERE WE DON'T DEAL WITH THAT.  I THINK, YOUR

14        HONOR, JUST FOR -- TO BE EXPEDITIOUS ON THAT ISSUE.  I MEAN,

15        IT'S FINE IF YOU WANT TO SPLIT IT UP.  IF WE DO THAT, THEN I

16        REALLY WOULD LIKE AN HOUR.

17               THE COURT:  SO YOU'RE SAYING HAVE MR. MOWRY, OR

18        DR. MOWRY COME FIRST, THEN DR. JEFFAY TESTIFY, THEN HAVE

19        DR. MOWRY AGAIN?

20               MS. KREVANS:  I THINK WE HAVE TO DO THAT, YOUR HONOR,

21        BECAUSE WE DON'T -- PRESUMABLY THEY'RE GOING TO HAVE TO GIVE

22        US -- I MEAN, IF WE ACTUALLY DID THIS, WE WOULDN'T KNOW IN

23        ADVANCE WHAT THEY WERE GOING TO SAY ABOUT THE SIDEKICK

24        REFERENCE UNDER THESE DIFFERENT CONSTRUCTIONS IF THE COURT

25        PROCEEDS THAT WAY.
```

```
 1              THIS IS ALL KIND OF HYPOTHETICAL NOW.  BUT WE WOULD NEED A

 2    CHANCE TO RESPOND ON VALIDITY.

 3              MR. NELSON:  SO THE ISSUE THERE -- THAT WAS WHAT I

 4    HAD UNDERSTOOD, THAT WE WEREN'T GOING TO HAVE A SITUATION WHERE

 5    THEY COME BACK.

 6         SO IF DR. MOWRY TESTIFIES FIRST ABOUT INFRINGEMENT, HIS

 7    OPINIONS REGARDING -- UNDER THE CONSTRUCTIONS, THEN DR. JEFFAY

 8    COULD COME BACK AND REBUT THOSE, AS WELL AS PROVIDE ANY

 9    ADDITIONAL INVALIDITY TESTIMONY --

10              THE COURT:  OKAY.

11              MR. NELSON:  -- REGARDING THE CONSTRUCTIONS,

12    OBVIOUSLY NOT -- NOT GOING BACK THROUGH ALL THE TESTIMONY WE

13    HAD BEFORE, THAT'S --

14              THE COURT:  THAT SHOULDN'T BE NECESSARY.

15              MR. NELSON:  NO, I DON'T BELIEVE IT WOULD BE.

16              THE COURT:  YEAH.

17              MR. NELSON:  AND THEN DR. MOWRY WOULD JUST COME BACK

18    AND RESPOND TO THE INVALIDITY OPINIONS, BUT NOT REBUTTAL ON

19    INFRINGEMENT LIKE WE DID THIS TIME AROUND.

20         IF WE DID IT THAT WAY, THEN, YOU KNOW, IT'S THE SAME BOAT

21    FOR EVERYBODY.  IF THEY'RE GOING TO DO THAT, I WOULD LIKE THE

22    OPPORTUNITY --

23              THE COURT:  TO COME BACK ON THAT.

24              MR. NELSON:  YES.

25              THE COURT:  LET'S REACH -- SINCE YOU'RE ALL HERE NOW,
```

```
 1       I WANT US TO REACH AN AGREEMENT.  IF IT -- IF WE DO ACCEPT

 2       ADDITIONAL TESTIMONY, IS THERE AN AGREEMENT THEN THAT DR. MOWRY

 3       WOULD GO FIRST ON INFRINGEMENT, DR. JEFFAY WOULD THEN REBUT THE

 4       INFRINGEMENT CLAIM AND ALSO ASSERT INVALIDITY, AND THEN

 5       DR. MOWRY WOULD COME BACK AT THE END TO REBUT INVALIDITY?  IS

 6       THAT ACCEPTABLE?

 7               MS. KREVANS:  YOUR HONOR, THAT WOULD BE FINE WITH US,

 8       AS LONG AS WE DON'T HEAR AGAIN THAT DR. MOWRY CAN'T, IN HIS

 9       FIRST TESTIMONY ON INFRINGEMENT, ADDRESS THE ARGUMENTS THAT WE

10       EXPECT TO BE MADE.

11           IN OTHER WORDS, THERE WAS THIS WHOLE CAN'T PRE-REBUT ON

12       INFRINGEMENT.

13               THE COURT:  YES.

14               MS. KREVANS:  AND IF -- IF SAMSUNG IS GOING TO MAKE

15       THAT ARGUMENT AGAIN, WE WOULD HAVE TO DO IT TWICE.

16           SO I'M FINE WITH HIM JUST DOING ONE TIME ON INFRINGEMENT,

17       AS LONG AS HE CAN SAY "I UNDERSTAND SAMSUNG'S ARGUMENTS TO BE

18       X, AND HERE'S WHAT I THINK ABOUT THEM" --

19               THE COURT:  WELL, I'M --

20               MS. KREVANS:  -- WHICH IS MUCH MORE EFFICIENT.

21               THE COURT:  WELL, IS THERE AN AGREEMENT, MR. NELSON?

22       OR DO YOU WANT THE MOVING PARTY TO BE THE FIRST ONE TO RAISE

23       THE TOPIC ON WHICH THEY'RE MOVING?

24               MR. NELSON:  I MEAN, WE'RE -- THIS IS A LITTLE BIT

25       DIFFERENT THAN THE FIRST TIME AROUND WHERE WE'RE GETTING A
```

1      WHOLE BUNCH OF THINGS THAT WERE EXTRANEOUS AND I THOUGHT IT

2      WOULD CONFUSE THE JURY.

3          HERE I DON'T REALLY HAVE A PROBLEM WITH THAT.  I THINK --

4      I DO AGREE THAT IT WOULD BE MORE EFFICIENT, AND WE WOULD DO THE

5      SAME THING WITH RESPECT TO INVALIDITY THAT WAY, BECAUSE WE'RE

6      PRETTY ENCAPSULATED AT THIS STAGE ABOUT WHAT THE ADDITIONAL

7      ISSUES WOULD BE RATHER THAN BEFORE WHERE IT WAS, YOU KNOW, FREE

8      FORM AND WE'RE HEARING ABOUT A BUNCH OF ARGUMENTS THAT WEREN'T

9      EVEN GOING TO BE RAISED.

10         THE COURT:  WELL, WHAT IS THE LIMIT THEN TO WHAT

11     DR. MOWRY CAN SAY ABOUT VALIDITY ON HIS OPENING TESTIMONY?

12         MS. KREVANS:  OH, I THINK WE'RE IN AGREEMENT THAT HE

13     WOULD START WITH JUST INFRINGEMENT.

14         THE COURT:  OKAY.

15         MS. KREVANS:  THE ISSUE IS JUST THAT DURING THE

16     TRIAL, UP UNTIL NOW, I THINK MR. NELSON HAD RAISED AN OBJECTION

17     TO OUR INFRINGEMENT EXPERTS, WHEN THEY FIRST CAME ON THE

18     STAND --

19         THE COURT:  ABOUT NON-INFRINGING ALTERNATIVES.

20         MS. KREVANS:  WELL, AND SAYING "AND WE EXPECT TO HEAR

21     THE FOLLOWING ARGUMENTS OF NON-INFRINGEMENT AND HERE'S WHAT WE

22     THINK OF THEM."

23         THE COURT:  UM-HUM.

24         MS. KREVANS:  AND MR. NELSON HE RAISED -- HE FELT

25     THAT WE SHOULDN'T BE PREVIEWING THEIR NON-INFRINGEMENT

1    ARGUMENTS, AND SO FOR PROFESSOR MOWRY AND PROFESSOR SNOEREN, WE

2    AGREED NOT TO PREVIEW THE NON-INFRINGEMENT ARGUMENTS, AND THEN

3    OUR EXPERTS, WHEN THEY CAME BACK THE SECOND TIME, ADDRESSED THE

4    NON-INFRINGEMENT ARGUMENTS THAT WERE ACTUALLY RAISED BY

5    SAMSUNG, AND ALSO ADDRESSED INVALIDITY.

6         AND I THINK THIS TIME IT WOULD BE MORE EFFICIENT IF THEY

7    ONLY TESTIFIED ONCE ON INFRINGEMENT, ALTHOUGH WE'RE HAPPY TO DO

8    IT THE OTHER WAY, TOO.  WE JUST WANT TO KNOW WHAT THE GROUND

9    RULES ARE.

10        MR. LEE:  THEY WOULD BE TESTIFYING ONCE ON

11   INFRINGEMENT AND ONCE ON INVALIDITY.  SO IT WOULD GO BOTH WAYS.

12        MR. NELSON:  RIGHT.

13        THE COURT:  IT SOUNDS LIKE DR. MOWRY, IN HIS DIRECT

14   TESTIMONY, CAN RAISE ANY ANTICIPATED NON-INFRINGEMENT

15   ARGUMENTS.

16        DO YOU AGREE WITH THAT, MR. NELSON?

17        MR. NELSON:  THAT'S FINE, YOUR HONOR, WITH RESPECT TO

18   THESE TERMS.  I DON'T THINK WE'RE GOING BACK TO ALL THE OTHER

19   STUFF.  WE WON'T HAVE TIME, SO IT'S PROBABLY A NON-ISSUE.

20        THE COURT:  OKAY.  SO DR. MOWRY GETS TO ADDRESS,

21   ASSUMING WE DO THIS, BOTH INFRINGEMENT AND NON-INFRINGEMENT,

22   ANY NON-INFRINGING ALTERNATIVES, IN HIS DIRECT TESTIMONY.

23        DR. JEFFAY GETS TO ADDRESS INVALIDITY AND NON-INFRINGEMENT

24   IN HIS DIRECT TESTIMONY.

25        AND THEN DR. MOWRY WILL BE ABLE TO CONCLUDE WITH JUST

```
 1        VALIDITY.  IS THAT RIGHT?

 2                  MS. KREVANS:  THAT'S RIGHT, YOUR HONOR.

 3                  MR. NELSON:  RIGHT.

 4                  MS. KREVANS:  ASSUMING THAT WE DO THIS, AND WE HAVE

 5        TO FIRST FIND OUT IF THESE WITNESSES CAN EVEN COME.

 6                  THE COURT:  SURE.  AND ARE WE GOING TO LIMIT THEM, OR

 7        I CAN LEAVE IT AS -- I'VE BEEN VERY FLEXIBLE DURING THE TRIAL

 8        TO LET YOU GO AS MANY ROUNDS AS YOU WANT WITH EACH WITNESS.

 9        YOU'RE CONSTRAINED BY 45 MINUTES.

10            BUT DO YOU WANT TO CROSS DR. MOWRY AFTER HE GIVES HIS

11        INFRINGEMENT AND NON-INFRINGEMENT OPINION?  YES?  IS THAT

12        CORRECT?

13                  MR. NELSON:  YEAH.  I MEAN, I COULD WAIT AND DO IT AT

14        THE END, TOO.  THAT'S FINE.  BUT IT PROBABLY MAKES MORE SENSE

15        TO DO IT --

16                  THE COURT:  NO, I THINK YOU SHOULD CROSS.

17            ARE YOU GOING TO REDIRECT OR NOT?

18                  MS. KREVANS:  IT DEPENDS ON WHAT HE DOES.  I MIGHT.

19            BUT I THINK THE CROSS SHOULD BE LIMITED TO THE TOPIC THE

20        WITNESS HAS JUST TESTIFIED ABOUT.

21                  MR. NELSON:  OH, YEAH.

22                  THE COURT:  THAT'S FINE.  THAT'S FINE.

23            BUT AFTER EACH WITNESS TESTIFIES, THEY WILL -- THERE WILL

24        BE THEN UNLIMITED, EXCEPT BY TIME, REDIRECT AND CROSS.  OKAY?

25                  MR. NELSON:  YEAH.
```

```
1              THE COURT:  AND THAT'S THE WAY WE'LL DO IT FOR EACH

2     TIME EACH WITNESS TESTIFIES.

3              MR. NELSON:  OKAY.

4              THE COURT:  OKAY.  SO WE'RE BASICALLY TREATING THEM

5     AS BEING NEWLY CALLED AS A WITNESS --

6              MR. NELSON:  RIGHT.  UNDERSTOOD.

7              THE COURT:  -- FOR EACH OF THESE THREE TIMES THEY'RE

8     COMING FORWARD TO TESTIFY.  OKAY.  THAT'S THE GROUND RULES.

9              ALL RIGHT.  WHAT ELSE DO WE NEED TO -- EXPLAIN THE VERDICT

10    FORM AND THE CALCULATIONS NOT BEING IN THE EXPERT'S SUMMARIES.

11    I DIDN'T QUITE UNDERSTAND THAT FROM THE FILING YESTERDAY.  WHY

12    COULDN'T THE PER PATENT, PER PRODUCT CALCULATIONS, WHY AREN'T

13    THOSE IN DR. VELLTURO'S REPORT AND WHY CAN'T THOSE CALCULATIONS

14    BE DONE?

15             MS. KREVANS:  THE REPORTS WERE PREPARED -- I CAN'T

16    SPEAK FOR SAMSUNG -- BUT THE REPORTS WERE PREPARED WITH THE

17    1846 STYLE VERDICT FORM IN MIND, OTHER THAN THIS SPECIAL ISSUE

18    ABOUT SEPARATING OUT FOR THE GALAXY S II PRODUCTS THE TIME

19    PERIODS BECAUSE WE KNEW ABOUT THIS DOUBLE -- THE POSSIBLE

20    OVERLAP BETWEEN THE 1846 AND 630 VERDICT.

21             SO THERE IS NOT, FOR EVERY -- THERE'S NOT, FOR EVERY

22    NUMBER IN THE REPORT SUMMARIES WHICH ARE IN EVIDENCE, SOMETHING

23    THAT THE JURY COULD LOOK TO TO SEE WHAT THE EXPERT'S OPINIONS

24    ARE ON BOTH A PER PATENT AND PER PRODUCT NUMBER.

25             AND SO UNLESS THE COURT PERMITTED US TO SUPPLEMENT SO THAT
```

```
1    WE HAD THAT FOR EACH OF THE NUMBERS THAT'S BEING OFFERED, WE

2    WOULD BE IN A SITUATION WHERE THE JURY WON'T HAVE IN FRONT OF

3    THEM SOMETHING THAT GIVES THEM THE NUMBERS UNDER THE THEORIES

4    THAT LETS THEM SIMPLY SAY, HERE IT IS.

5         SO SOME OF THE NUMBERS ARE BROKEN OUT BY PATENT AND BY

6    PRODUCT, AND SOME OF THE NUMBERS ARE NOT BECAUSE, FRANKLY, WE

7    WERE NOT ANTICIPATING THAT THERE WOULD BE A CHANGE IN THE

8    VERDICT FORM ON THIS POINT BECAUSE THERE WASN'T A REASON TO.

9         AND SO WE THINK IT WOULD BE HARD FOR THE JURY, AND

10   SOMEWHAT CONFUSING FOR THEM, IF WE HAVE TO SAY TO THEM, "HERE'S

11   WHAT DR. VELLTURO TESTIFIED TO.  ONLY PARTS OF IT CAN BE FOUND

12   BROKEN OUT THE WAY THAT THE VERDICT FORM IS WRITTEN IN THE NEW

13   CHART, THE 10A CHART, SO YOU'RE GOING TO HAVE TO DO SOME

14   CALCULATIONS TO HAVE APPROPRIATE NUMBERS TO FILL IN FOR PARTS

15   OF THE CHART," AND WE THINK THAT WILL BE HARD AND CONFUSING FOR

16   THE JURY AND WE DON'T, FRANKLY, THINK THAT IT IS NECESSARY.

17             MS. MAROULIS:  YOUR HONOR, MAY I ADDRESS FOR SAMSUNG?

18             THE COURT:  YES.

19             MS. MAROULIS:  DR. CHEVALIER PRESENTED, BY PATENT AND

20   BY PRODUCT, CALCULATIONS IN HER EXHIBIT THAT'S IN EVIDENCE,

21   THAT'S --

22             THE COURT:  I UNDERSTAND THAT.  BUT DO YOU AGREE THAT

23   APPLE'S INFORMATION IS NOT ORGANIZED THAT WAY?

24             MS. MAROULIS:  YOUR HONOR, IT'S OUR UNDERSTANDING

25   THAT YOU CAN TAKE APPLE'S INFORMATION AND DERIVE FROM IT THESE
```

```
1      TYPE OF CALCULATIONS.

2           BUT IT WAS THEIR CHOICE TO PRESENT THIS INFORMATION THE

3      FOLLOWING WAY.  WE'VE BEEN MAINTAINING FOR SEVERAL YEARS NOW

4      THAT YOU NEED A PATENT-BY-PATENT BREAKDOWN FOR THE MEANINGFUL

5      REVIEW AFTER TRIAL.

6           SO THEY CHOSE --

7                THE COURT:  AND YOUR --

8                MS. MAROULIS:  I'M SORRY.

9                THE COURT:  AND YOUR EXPERT -- EXCUSE ME --

10     DR. CHEVALIER DOESN'T BREAK OUT THE S II BY DATE, DOES SHE?  I

11     DIDN'T SEE THAT.

12               MS. MAROULIS:  YOUR HONOR, HER EXHIBIT DOES NOT

13     PROVIDE THAT, BUT HER CALCULATIONS CAN BE APPLIED TO THE SALES

14     UNITS AND PROVIDE THE BREAKDOWN AS WELL.

15          THAT -- THOSE -- THE ADDITION OF THAT QUESTION WAS DONE

16     AFTER THE REPORTS WERE COMPLETED.

17          BUT CERTAINLY -- I DON'T THINK APPLE CAN MAKE AN ARGUMENT

18     THAT THEY WERE NOT ON NOTICE THAT SAMSUNG WAS SEEKING THE

19     PATENT-BY-PATENT DETERMINATION.

20               THE COURT:  SO I'M LOOKING AT DR. CHEVALIER'S REPORT.

21               MS. MAROULIS:  YES.

22               THE COURT:  TELL ME HOW THE JURY CALCULATES USING

23     YOUR EXHIBIT 453A, HOW THE JURY CALCULATES THE S II SALES BY

24     DATES.

25               MS. MAROULIS:  YOUR HONOR, IT'S MY UNDERSTANDING THAT
```

1      PTX 142 PROVIDES MONTH-BY-MONTH SAMSUNG SALES ON THE PRODUCT,

2      AND IT'S BROKEN OUT BY PRODUCT, AND DR. CHEVALIER PRESENTED THE

3      LUMP SUM CALCULATION, BUT THE LUMP SUM CALCULATION WAS BASED ON

4      THE $.35 PER UNIT.

5          SO THE JURY CAN APPLY THAT ROYALTY TO THE SALES NUMBERS

6      EXPRESSED IN PX 142.

7              THE COURT:  PX OR DX?

8              MS. MAROULIS:  IT'S CALLED PTX 142.

9              THE COURT:  "T" IS -- WE HAVEN'T BEEN ADMITTING ANY

10     EXHIBIT PREFIXES WITH THE "T" IN IT.  IS THAT JUST PX 142?

11             MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.  I THINK

12     APPLE CALLED IT THAT WAY, BUT IT IS THEIR EXHIBIT.  IT'S -- I

13     THINK IT'S PX 142.

14             THE COURT:  ALL RIGHT.  LET ME HEAR IF APPLE AGREES

15     WITH THAT.

16             MS. KREVANS:  I'M SORRY.  THERE -- I'M NOT SURE WHAT

17     I'M AGREEING TO.  THERE IS A PX 142, AND I BELIEVE IT'S --

18             THE COURT:  ALL RIGHT.  CAN THAT SUMMARY OF SALES

19     DATA BE USED TO CALCULATE THE REASONABLE ROYALTY FOR THE TIME

20     PERIODS FOR THE S II PRODUCTS THAT ARE SET FORTH IN THE VERDICT

21     FORM?

22             MS. KREVANS:  I AM NOT SURE WHAT POINTERS

23     DR. CHEVALIER'S REPORT GIVES THE JURY IN ORDER TO DO THAT.

24         THERE'S CERTAINLY -- IT CERTAINLY IS A SUMMARY OF SALES

25     DATA THAT GOES MONTH-BY-MONTH.

```
 1                THE COURT:  OKAY.

 2                MS. KREVANS:  AND THEY COULD TAKE IT AND DO ADDITION

 3     AND MULTIPLICATION TIMES ANY PARTICULAR NUMBER THAT THEY PICKED

 4     FOR A REASONABLE ROYALTY.

 5                THE COURT:  UM-HUM.

 6                MS. KREVANS:  I THINK THE HARDER THINGS ARE --

 7     IT'S -- YEAH.

 8                THE COURT:  ALL RIGHT.

 9                MS. KREVANS:  I THINK THE HARDER THINGS ARE THE ISSUE

10     OF HOW TO -- DEPENDING ON -- DEPENDING ON WHAT, WHAT KIND OF

11     DAMAGES THEY AWARD FOR VARIOUS UNITS, IT COULD GET QUITE

12     DIFFICULT FOR THE JURY TO FIGURE OUT, IF THEY CHANGE ANYTHING

13     FROM ONE SCENARIO TO ANOTHER, HOW MANY UNITS FIT IN VARIOUS

14     PLACES IF THEY DON'T HAVE AS A GUIDE THINGS THAT ARE ACTUALLY

15     IN THE EXPERTS' REPORTS.

16                MS. MAROULIS:  YOUR HONOR, WE UNDERSTOOD APPLE TO BE

17     OBJECTING TO THE INTERROGATORY THAT BREAKS IT OUT BY PATENT AND

18     BY PRODUCT.  I HAVEN'T HEARD THEM OBJECTING TO THE OTHER PART

19     OF IT WITH RESPECT TO S II.

20           BUT WE DID MOVE, BEFORE TRIAL, ON THE GROUNDS OF DOUBLE

21     RECOVERY, SO IN SOME SENSE IT'S AN ISSUE OF THEIR MAKING.

22           AND AS I MENTIONED BEFORE, DR. CHEVALIER DOES BREAK IT

23     DOWN IN A VERY SIMPLE WAY FOR THE JURY, PATENT-BY-PATENT, AND

24     IT WILL ASSIST THE COURT BECAUSE TO THE EXTENT ONE PATENT IS,

25     FOR EXAMPLE, FOUND INFRINGED OR NON-INFRINGED AND OTHERS ARE
```

 1          NOT, WE WILL HAVE DATA POINTS ON WHICH TO ASSESS THE DAMAGES

 2     AND WE WILL NOT FACE THE SAME SITUATION WE DID IN THE FIRST

 3     TRIAL WHERE APPLE ITSELF OPPOSED REVERSE ENGINEERING AND THERE

 4     WAS A LOT OF FIGHTING AND BRIEFING REGARDING THAT.

 5               MS. KREVANS:  YOUR HONOR, I DON'T THINK THE ISSUES

 6     THAT LED TO THE DAMAGES RETRIAL REALLY HAVE ANYTHING TO DO WITH

 7     THIS CHART.

 8          THAT HAD TO DO WITH A CHALLENGE ON JMOL AND NEW TRIAL

 9     MOTIONS TO WHETHER THE JURY STARTED DAMAGES -- ACCRUING DAMAGES

10     AS OF THE RIGHT DATE, WHICH WAS A NOTICE ISSUE, AND IT APPLIED

11     TO MULTIPLE PATENTS.

12          IT WAS NOT -- IT WOULDN'T HAVE BEEN SOLVED BY A CHART LIKE

13     THIS.

14               THE COURT:  OKAY.  SO LET ME UNDERSTAND SAMSUNG'S

15     POSITION.  WOULD YOU BE AMENABLE TO APPLE PROVIDING A BREAKDOWN

16     BY PATENT AND BY PRODUCT AS AN EXHIBIT FOR THE JURY?

17               MS. MAROULIS:  YOUR HONOR, I MAY NEED TO CONSULT WITH

18     FOLKS WHO KNOW THE DAMAGES NUMBERS.  IF IT'S SOMETHING THAT'S

19     COMPLETELY DIFFERENT, I DON'T KNOW IF WE CAN ACCEPT THAT

20     WITHOUT OUR EXPERTS LOOKING AT IT.  MAY I TALK TO PEOPLE AND

21     RESPOND?

22               THE COURT:  SURE.

23               MS. MAROULIS:  BECAUSE WE -- WE MADE OUR EVIDENCE

24     SUBMISSIONS BASED ON EVERY DIFFERENT SCENARIO, AND APPLE SHOULD

25     HAVE AS WELL.  SO AS AN ADDITIONAL MATTER, THEY SHOULD HAVE

```
1        PRESENTED IT IN A WAY THAT WOULD HELP THE JURY.

2             BUT IF I MAY HAVE A MINUTE?

3             THE COURT:  OKAY.

4             MS. KREVANS:  AND I CAN ASSURE YOUR HONOR THAT IT

5   WOULD NOT BE COMPLETELY DIFFERENT.  IT WOULD JUST BE A ONE MORE

6   SCHEDULE PAGE TO EXHIBIT 222A.

7         (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

8             THE COURT:  I GUESS I'M UNCLEAR BECAUSE YOU DO HAVE,

9   BY PRODUCT AND BY PATENT NUMBER ON PAGES 18, 19 --

10            MS. KREVANS:  WE DO, YOUR HONOR.  BUT WE DO NOT HAVE

11  THOSE NUMBERS FOR ALL OF THE VARIOUS SCENARIOS THAT ARE CALLED

12  FOR BY THE VARIOUS CHALLENGES THAT SAMSUNG HAS MADE TO OUR

13  DAMAGES THEORIES.

14            THE COURT:  LIKE WHAT?

15            MS. KREVANS:  SO IF YOU LOOK AT PAGE 13 --

16            THE COURT:  OKAY.

17            MS. KREVANS:  -- WHICH IS THE DAMAGES SCENARIO THAT

18  INCLUDES OFF THE MARKET LOST PROFITS FOR CERTAIN PATENTS --

19            THE COURT:  UM-HUM.

20            MS. KREVANS:  -- AND CERTAIN PRODUCTS AND THEN

21  DIMINISHED DEMAND AND REASONABLE ROYALTIES, THAT IS -- THAT IS

22  THE PRIMARY NUMBER THAT WAS EXPLAINED TO THE JURY, AND WE HAVE

23  BREAKOUTS THERE FOR THE OFF THE MARKET PART OF THE DAMAGES THAT

24  GO BY PATENT AND BY THE PRODUCTS THAT WE HAVE OFF THE MARKET

25  LOST PROFITS FOR BECAUSE IT'S NOT EVERY PRODUCT.
```

```
 1          BUT WE DON'T HAVE, FOR THIS, A SCHEDULE THAT BREAKS IT OUT

 2    FOR ALL OF THE PARTS OF THE DAMAGES, THAT IS, THE ADDITIONAL

 3    REASONABLE ROYALTIES AND DIMINISHED DEMAND BY BOTH PRODUCT AND

 4    BY PATENT.

 5          WE HAVE THAT FOR SOME OTHER SCENARIOS, BUT WE DON'T HAVE

 6    IT FOR THAT ONE, SO WE WOULD JUST HAVE TO PREPARE ONE MORE

 7    SCHEDULE THAT MATCHED THE COURT'S CHART THAT TIED TO ALL THESE

 8    SAME NUMBERS.  IT WOULDN'T BE A DIFFERENT ASK AND IT WOULDN'T

 9    BE A DIFFERENT THEORY, IT JUST NEEDS TO BREAK IT OUT FOR THE

10    JURY, BECAUSE IF YOU SEE ON PAGE 12 OF 222A, YOU SEE IT BROKEN

11    OUT BY THEORY AND BY PRODUCT, BUT NOT BY PATENT.

12          SO WE JUST NEED TO PROVIDE A SCHEDULE THAT TIES TO THESE

13    SAME NUMBERS THAT WOULD BE FORMATTED LIKE THE COURT'S CHART.

14          MS. MAROULIS:  YOUR HONOR, WE WOULD NEED TO SEE THAT

15    BEFORE WE CAN SAY WHETHER WE CAN AGREE TO IT BECAUSE IT MIGHT

16    BE AN ENTIRELY NEW EXPERT CALCULATION THAT WE WOULD NEED TO

17    REVIEW OURSELVES AND RUN BY OUR PRESENT.

18          AND THEY CHOSE TO PRESENT THEIR DAMAGES WAY IN A VERY

19    COMPLEX AND VERY REDUNDANT WAY --

20          THE COURT:  RIGHT.  SO YOU THINK WE SHOULD JUST GIVE

21    IT THE JURY WITHOUT A RECALCULATION?

22          MS. MAROULIS:  NO, YOUR HONOR.  WE COULD --

23          THE COURT:  SO WE HAVE ANOTHER TRIAL?  I MEAN, I

24    DON'T UNDERSTAND.  WE HAVE TO HAVE INFORMATION IN A WAY THAT

25    THE JURY CAN USE TO COME UP WITH AN APPROPRIATE DAMAGES
```

```
1    CALCULATION, AND IF THEY CAN'T, IF YOU'RE NOT GOING TO

2    STIPULATE TO HAVING THIS INFORMATION BROKEN OUT IN A WAY THAT

3    THE JURY CAN DO THIS, THEN I'M JUST GOING TO GO BACK TO THE

4    1846 VERDICT FORM.  OKAY?

5              MS. MAROULIS:  YOUR HONOR, MAY WE ASK APPLE TO SUBMIT

6    THE FORM TO US SO WE CAN REVIEW IT AND THEN TELL THE COURT

7    WHETHER WE'RE ABLE TO STIPULATE?  BECAUSE THEY'RE ESSENTIALLY

8    TRYING TO CORRECT A DEFICIENCY AND IMPROVE.  WE NEED TO SEE

9    WHAT THEY'RE SUBMITTING.  IF IT'S SOMETHING THAT TIES INTO THE

10   EXHIBITS --

11             THE COURT:  IF YOU DON'T WANT THEM TO CORRECT IT,

12   LET'S JUST LEAVE IT AS IT IS.  I'M GOING TO USE THE 1846

13   VERDICT FORM, WHICH IS THE SAME VERDICT FORM THAT I USED FOR

14   THE DAMAGES RETRIAL.

15       THAT WOULD RESOLVE ANY QUESTION THAT THEY'RE SUDDENLY

16   CHANGING THE PROOF, THAT THEY'RE CHANGING A DEFECT IN THE

17   STIPULATION.  THAT WOULD LEAVE IT CLEAN AND I'LL GO WITH THE

18   1846 VERDICT FORM.

19             MS. MAROULIS:  YOUR HONOR, MAY WE SEE THEIR EXHIBIT

20   AND THEN RESPOND TO THE COURT RIGHT AWAY AFTER WE SEE WHAT

21   THEY'RE PROPOSING TO SUBMIT TO THE JURY?

22             MS. KREVANS:  WE CAN GIVE THEM AN EXHIBIT TODAY, YOUR

23   HONOR.  IT WILL TIE TO EXACTLY THE NUMBERS THAT ARE ON PAGE 12

24   AND 13.

25             THE COURT:  IF THERE'S ANY OBJECTION TO IT, I'M JUST
```

1          GOING TO USE THE 1846 VERDICT FORM.

2               MS. KREVANS:  WE'RE FINE EITHER WAY, YOUR HONOR.

3               THE COURT:  SO EITHER THE JURY HAS TO HAVE

4    INFORMATION THAT THEY CAN USE TO MAKE A CALCULATION, THAT THE

5    VERDICT FORM REQUIRES.  IF THEY DON'T HAVE THAT INFORMATION,

6    I'M JUST GOING TO GO WITH THE 1846.

7               MS. KREVANS:  ALL RIGHT.  WE WILL GIVE THEM --

8               THE COURT:  IT'S SIMPLE.  WE'RE NOT GOING TO REOPEN

9    THINGS.  LET'S NOT REOPEN.  I'M FINE WITH GOING WITH 1846.

10              MS. MAROULIS:  YOUR HONOR, WE WOULD RESPOND TO THE

11   COURT RIGHT AWAY AFTER WE SEE THE EXHIBIT, AND WE RESERVE OUR

12   OBJECTIONS TO GOING BACK TO THE OLD FORM.  BUT HOPEFULLY WE CAN

13   RESOLVE THIS OURSELVES.

14              THE COURT:  ALL RIGHT.  SO WHAT TIME ARE YOU GOING TO

15   GET THE NEW --

16              MS. KREVANS:  I JUST HAVE TO FIND OUT FROM SOMEONE AT

17   THE OFFICE HOW QUICKLY THEY CAN GET IT PRINTED OUT BECAUSE IT

18   HAS TO COME FROM THE EXPERT.  WE WILL LET BOTH THE COURT AND

19   SAMSUNG KNOW WITHIN THE HOUR EITHER WITH A NEW FORM, WITH A NEW

20   SCHEDULE, OR AS SOON AS WE CAN GET IT TO THEM.

21              MS. MAROULIS:  YOUR HONOR, MAY WE HAVE TWO HOURS TO

22   VET IT WITH OUR EXPERTS?

23              THE COURT:  WELL, I ALSO DON'T WANT TO HURRY YOU ALL

24   TOO MUCH.  IF YOU NEED MORE THAN TWO HOURS -- I DON'T EVEN KNOW

25   DR. CHEVALIER'S SCHEDULE TODAY.  SHE MAY BE TEACHING.

1          MS. MAROULIS:  SHE'S TEACHING, YEAH.

2          THE COURT:  SO IF YOU WANTED ME TO, I COULD GIVE

3     APPLE UNTIL TOMORROW MORNING AND SAMSUNG UNTIL SUNDAY MORNING.

4     WOULD THAT BE BETTER?

5          MS. MAROULIS:  YES, YOUR HONOR, THAT WOULD BE GREAT.

6     THANK YOU.

7          THE COURT:  OKAY.  I WANT EVERYONE TO TAKE THEIR TIME

8     SO WE DON'T MAKE A MISTAKE BECAUSE WE'RE HURRYING.  THIS IS

9     WHEN WE'RE GOING TO MAKE A MISTAKE.

10         ALL RIGHT.  ALL RIGHT.  SO SATURDAY BY, CAN WE SAY

11    8:00 A.M.?

12         MS. KREVANS:  THAT'S FINE, YOUR HONOR.

13         THE COURT:  ALL RIGHT.  THEN APPLE WILL PROVIDE NEW

14    CALCULATIONS.

15         THEN SUNDAY AT 8:00 A.M., SAMSUNG WILL COMMENT ON WHETHER

16    YOU HAVE ANY OBJECTIONS TO THEIR NEW FORM.

17         IF THERE'S NO DISPUTE, THEN I'LL PROBABLY JUST KEEP THE

18    CURRENT VERDICT FORM WITH THE BREAKDOWN BY PRODUCT AND BY

19    PATENT.

20         IF THERE IS A DISPUTE, THEN I'LL PROBABLY JUST STICK WITH

21    THE 1846 VERDICT FORM.

22         MS. KREVANS:  THANK YOU, YOUR HONOR.

23         THE COURT:  OKAY.  SO THAT TAKES CARE OF THAT ISSUE.

24         MS. MAROULIS:  THANK YOU, YOUR HONOR.

25         THE COURT:  YOU'RE GOING TO PROVIDE SOME INFORMATION

1    ON THE JX ISSUE, BECAUSE THAT'S THE LAST, I THINK, UNRESOLVED

2    QUESTION WITH REGARD TO THE VERDICT FORM.  YOU'LL PROVIDE THAT

3    BY NOON.

4              MS. KREVANS:  YES, ALTHOUGH I DON'T THINK --

5              THE COURT:  HAVE YOU GOT THE ANSWER NOW?

6              MS. KREVANS:  WELL, I'VE GOT THE ANSWER FOR ONE OF

7    THEM.

8              THE COURT:  OKAY.  WHAT'S THAT?

9              MS. KREVANS:  ONE OF THEM, 36 --

10             MS. MAROULIS:  36E APPEARS TO HAVE BEEN INTRODUCED

11   INADVERTENTLY BY APPLE AND IT'S A DROPPED PRODUCT.

12        BUT IF WE MAY FINISH THAT OUT BY NOON, BECAUSE SOME OF THE

13   PEOPLE WHO NEED TO RESPOND TO THAT --

14             THE COURT:  ARE NOT HERE.  I MIGHT HAVE MISHEARD YOU.

15   OH, 36E?

16             MS. KREVANS:  YEAH, THAT WAS SUBMITTED BY MISTAKE.

17   IT'S ACTUALLY A PRODUCT THAT WAS DROPPED.  IT'S A NOTE 10.2

18   TABLET.  IT LOOKS JUST LIKE THE OTHER TABLETS.  SO IT'S

19   ACTUALLY NOT AN ACCUSED -- IT'S A DROPPED PRODUCT.  SO WE'RE

20   GOING TO TAKE THAT OUT.

21        WE'RE GOING TO CHECK ON THE OTHER THREE.  BUT I DIDN'T

22   UNDERSTAND THAT THERE WAS AN ISSUE --

23             THE COURT:  OKAY.  SO JX 36E -- I'M SORRY TO

24   INTERRUPT YOU -- JX 36E IS NOT ACCUSED IN THIS CASE AND SHOULD

25   NOT BE ON THE VERDICT FORM?

```
 1           MS. MAROULIS:  CORRECT, YOUR HONOR.  WE WILL

 2    DOUBLE-CHECK BY NOON AND PUT THAT IN WRITING.

 3           THE COURT:  OKAY.  THAT ONE YOU WANT TO DOUBLE-CHECK

 4    TOO THEN?  OKAY.  WELL, THEN, I WON'T ASSUME THAT ANYTHING HAS

 5    BEEN RESOLVED, EVEN AS TO JX 36E, UNTIL YOU HAVE AN OPPORTUNITY

 6    TO CONFIRM THAT.

 7           MS. KREVANS:  OKAY.  CAN I ASK THE COURT, BECAUSE

 8    IT'S STILL UNCLEAR TO ME, HOW DO THESE ISSUES ABOUT THE

 9    SUBPARTS AFFECT -- THE COURT'S CURRENT VERDICT FORM DOESN'T

10    HAVE ANY SUBPARTS IN IT.

11           THE COURT:  WELL, BECAUSE I'M CONSIDERING ADDING

12    THEM.  THIS IS MY CONCERN:  IF THERE ARE MANY SUBPARTS THAT ARE

13    IN EVIDENCE, SOME OF WHICH ARE ACCUSED AND SOME OF WHICH ARE

14    NOT ACCUSED, THEN I THINK IT WOULD BE PROBLEMATIC IF WE DON'T

15    SPECIFY WHICH ONES ARE ACCUSED SO THAT THE JURY DOESN'T AWARD

16    DAMAGES FOR SUBPARTS THAT ARE NOT ACCUSED.  DOES THAT MAKE

17    SENSE?

18           MS. KREVANS:  I CERTAINLY AGREE --

19           MS. MAROULIS:  THAT WAS EXACTLY OUR THINKING.  THAT'S

20    WHY WE PUT THE SUBPARTS ON OUR PROPOSED RED LINE ORDER.

21           MS. KREVANS:  I AGREE IT SHOULD BE CLEAR TO THE JURY

22    IF THEY HAVE A PHYSICAL DEVICE IN THE JURY ROOM THAT IS NOT, IN

23    FACT, ACCUSED.  SO ANYTHING THAT IS A MISTAKE, WE HAVE BEEN, AS

24    WE HAVE FOUND THEM, WITHDRAWING THEM.

25           BUT THE PARTICULAR PHYSICAL DEVICES THAT HAVE BEEN PUT
```

1    INTO EVIDENCE DO -- ARE NOT, IN FACT, THE FULL RANGE OF THE

2    ACCUSED PRODUCTS.

3         THE ACCUSED PRODUCTS ARE EVERY ONE OF THESE MODELS WITH

4    CERTAIN SOFTWARE VERSIONS, AND THERE ARE MANY, MANY MODELS THAT

5    CAME OUT THAT HAD SUBVERSIONS, ALL OF WHICH ARE THE SAME.

6    THERE ARE MANY MODELS THAT CAME OUT THAT HAVE THE SAME NAME

7    VERSION.

8              THE COURT:  OKAY.  I'M --

9              MS. KREVANS:  THE EXPERT TESTIMONY IS --

10             THE COURT:  I UNDERSTAND.  BUT ARE THERE VERSIONS

11   THAT HAVE BEEN ADMITTED THAT ARE NOT ACCUSED?

12             MS. KREVANS:  WELL, FOR SURE, 36E.

13             MS. MAROULIS:  36E IS NOT --

14             THE COURT:  AND IT'S BEEN ADMITTED?

15             MS. KREVANS:  IT WAS ADMITTED BY ACCIDENT.  IT WAS

16   ADMITTED AS IF IT WERE A TABLET 10.1, BUT IT'S NOT ACTUALLY.

17        THE PARTIES ARE IN AGREEMENT THAT WE'RE GOING TO PULL

18   THAT.

19             THE COURT:  CAN YOU JUST PERHAPS REMOVE THAT?

20             MS. KREVANS:  YES.

21             THE COURT:  IF EVERY DEVICE THAT HAS BEEN ADMITTED IS

22   ACCUSED, THEN MAYBE I DON'T NEED TO MAKE THIS SUBPART

23   DISTINCTION IN THE VERDICT FORM.  I'M NOT CLEAR THAT THAT'S THE

24   CASE.

25             MS. KREVANS:  I THINK WE HAVE NOW FOUND, BUT WE WILL

1    VERIFY WITH SAMSUNG, WE'VE NOW FOUND ALL THE THINGS THAT WENT

2    IN BY ACCIDENT THAT WEREN'T ACTUALLY ACCUSED.

3        IN ONE CASE IT WAS PEOPLE JUST MISTOOK THE PHYSICAL

4    DEVICE.

5        THERE WERE TWO THAT INADVERTENTLY UPDATED, SO THEY NO

6    LONGER HAVE THE ACCUSED SOFTWARE ON THEM.

7        AND THERE'S ONE DEVICE, BUT IT HAS A DIFFERENT NUMBER, SO

8    IT SHOULD BE OKAY, I THINK IT'S DX 72, WHICH IS THE PHONE THAT

9    DR. RINARD DOWNLOADED THE UNACCUSED LATER DEVELOPED SOFTWARE ON

10   IT THAT'S THE -- THEY WANT TO ARGUE IS A POTENTIAL DESIGN

11   AROUND.  BUT THAT ONE HAS A DIFFERENT NUMBER, SO IT'S NOT A

12   PROBLEM.

13       SO AS LONG AS EVERYTHING THAT'S IN THE JURY ROOM WITH THE

14   NUMBERS THAT CORRESPOND TO THE MODELS, ADMIRE, ET CETERA, ARE

15   PHONES THAT HAVE BEEN ACCUSED, I THINK WE'RE OKAY.

16       WE MAY NEED TO JUST EXPLAIN TO THE JURY, IN CLOSINGS,

17   THAT, OF COURSE, NOT ALL THESE PHONES ARE ACCUSED OF INFRINGING

18   EVERY PATENT, AND SO THEY CAN'T PICK UP ANY PARTICULAR PHONE

19   AND TEST IT FOR BEHAVIOR OF ALL FIVE PATENTS AND, IF THEY DON'T

20   SEE IT, THINK SOMETHING IS WRONG.  AND THAT'S WHY WE HAD

21   THOUGHT IT MIGHT BE HELPFUL TO LIST REPRESENTATIVE PRODUCTS

22   JUST FOR PURPOSES OF THEM TESTING.

23       I DON'T THINK IT'S NECESSARY AS AN ABSOLUTE MATTER ON THE

24   VERDICT FORM BECAUSE WE CAN GIVE THAT INFORMATION IN CLOSING.

25       BUT WE DO AGREE WE WANT TO MAKE SURE THEY DON'T HAVE

1    SOMETHING IN THERE THAT THEY THINK IS AN ACCUSED PRODUCT BUT

2    WHICH, IN FACT, IS NOT.

3            THE COURT:  OKAY.  LET ME ASK A QUESTION THEN.  OTHER

4    THAN THE TWO DEVICES FOR WHICH SOFTWARE UPDATES WERE

5    INADVERTENTLY MADE TO THE DEVICES AND JX 36E, WHICH IS JUST NOT

6    ACCUSED AND ERRONEOUSLY WAS ADMITTED, ARE THERE ANY OTHERS

7    THAT --

8            MS. KREVANS:  I DON'T THINK SO.  BUT WE NEED TO TRACK

9    DOWN THE OTHER ONES THAT THE COURT IDENTIFIED IN ITS ORDER THIS

10   MORNING, AND THERE IS THAT 72, BUT IT HAS A DIFFERENT NUMBER,

11   SO HOPEFULLY THEY WON'T BE CONFUSED.

12           MS. MAROULIS:  YOUR HONOR, THERE ARE TWO EVENTS

13   HAPPENING TODAY.  WE'RE FILING AT NOON, AND THEN AT 1:00

14   O'CLOCK THE PARTIES ARE INSPECTING THE DEVICES IN COURT.  IT'S

15   A FINAL INSPECTION BEFORE EVERYTHING GOES TO THE JURY.

16        SO TO THE EXTENT THAT THERE'S ANYTHING THAT THE PARTIES

17   SPOT, LIKE A WRONG DEVICE WAS INTRODUCED OR NEEDS TO BE

18   WITHDRAWN, WE WILL REPORT TO THE COURT IN A JOINT SUBMISSION OR

19   SOME OTHER WAY.

20        IF THE COURT WOULD PREFER, WE CAN DELAY THE NOON BRIEF

21   UNTIL AFTER THAT, BUT WE CAN ALSO DO THE NOON BRIEF AND THEN

22   REPORT ON THE INSPECTION.

23           THE COURT:  NO.  THE VERDICT FORM WILL ACTUALLY

24   HOPEFULLY NOT TAKE TOO MUCH TIME.  WE COULD -- WE COULD

25   FINALIZE THAT ON SUNDAY.  THAT'S NOT A PROBLEM.

```
1              SO THIS AFTERNOON AFTER FILING OF ANY ADDITIONAL EXHIBITS

2    THAT NEED TO BE WITHDRAWN IS FINE.  THAT'S FINE.

3              SO FOR THE VERDICT FORM, OTHER THAN THE DAMAGES

4    CALCULATION ISSUE AND THE SUBPART ISSUE, I THINK WE'RE NOW SET.

5              DO YOU AGREE ON THE VERDICT FORM, OTHER THAN THOSE TWO

6    OUTSTANDING ISSUES.

7                   MS. MAROULIS:  YES, YOUR HONOR, SUBJECT --

8                   THE COURT:  OR RESERVING YOUR OBJECTIONS?

9                   MS. KREVANS:  SUBJECT TO ALL THE RESERVATIONS, WE

10   AGREE.

11                  MS. MAROULIS:  YES.

12                  THE COURT:  ALL RIGHT.  NOW, WITH REGARD TO THE

13   EXHIBIT LIST, I GUESS YOU'LL HAVE TO DO AN UPDATE OF JUST THE

14   TWO PHONES THAT WERE ADMITTED --

15                  MS. MAROULIS:  YES, YOUR HONOR.

16                  THE COURT:  -- TODAY.

17        WHEN CAN YOU UPDATE YOUR EXHIBIT LIST?

18        AND I HAVE SOME OUTSTANDING SEALING ISSUES ON THE EXHIBIT

19   LIST.  I THINK I'LL JUST FILE -- I'LL FILE AN ORDER ASKING YOU

20   TO CLARIFY CERTAIN EXHIBIT SEALING.  I THINK IT WAS ONLY

21   SEALING ISSUE WITH EXHIBITS.

22                  MS. KREVANS:  OKAY.  MR. SELWYN IS THE OFFICIAL KING

23   OF SEALING ON OUR TEAM, SO IF YOU WANT TO TALK ABOUT THAT, I'M

24   GOING TO BRING HIM UP HERE.

25                  THE COURT:  OKAY.  WHEN WE'VE DISCUSSED THE SEALING
```

1    ISSUES IN THE PAST, YOU ALL HAVE GENERALLY NEEDED TO GO BACK

2    AND REVIEW RECORDS AND CONSULT WITH YOUR TEAM, SO I THINK I'LL

3    JUST PROBABLY FILE AN ORDER, AND THEN YOU CAN REVIEW THE

4    RECORDS AND CONSULT WITH YOUR TEAM AND FILE A RESPONSE, JUST TO

5    FINALIZE THE SEALING ISSUES WITH REGARD TO THE EXHIBIT LIST.

6            MS. MAROULIS:  YES, YOUR HONOR.

7            MS. KREVANS:  OKAY.  AND I THINK OTHERWISE THE

8    EXHIBIT LISTS, THE PARTIES HAVE BEEN WORKING TOGETHER TO MAKE

9    SURE THAT EVERY DAY WE'RE AGREEING ON WHAT'S HAPPENING, AND

10   WITH RESPECT -- WITH THE EXCEPTION OF, I THINK, TWO DOCUMENTS

11   THAT GOT ADMITTED TODAY, WE SHOULD BE DONE.

12        AND WE ALSO HAVE ARRANGED TO GET TOGETHER IN A ROOM AND

13   MAKE A SET OF BINDERS OF THE PAPER EXHIBITS THAT ARE GOING TO

14   GO TO THE JURY, AND SO THERE'S GOING TO BE -- THERE WILL BE

15   AGREEMENT ON THAT.

16           MS. MAROULIS:  THAT'S CORRECT, YOUR HONOR.

17           THE COURT:  ALL RIGHT.  WHEN CAN YOU FILE YOUR

18   REVISED EXHIBIT LIST?

19           MS. MAROULIS:  WE CAN FILE IT LATER TODAY.

20           THE COURT:  OKAY.  AND PERHAPS YOU SHOULD WAIT UNTIL

21   AFTER YOU DO THE INSPECTION BECAUSE YOU MAY FIND OTHER ITEMS

22   THAT YOU'D LIKE TO WITHDRAW.

23        YOU WANT TO SAY 5:00 O'CLOCK THEN.

24           MS. MAROULIS:  5:00 O'CLOCK SOUNDS GOOD.

25           MS. KREVANS:  WORKS FOR US, YOUR HONOR.

```
1              THE COURT:  ALL RIGHT.  A COUPLE MORE ISSUES.

2          WITH REGARD TO EXHIBITS THAT ARE REDACTED, THERE HAVE

3      ACTUALLY BEEN A COUPLE OF REQUESTS FROM THE PUBLIC OF THE

4      CLERK'S OFFICE FOR EXHIBITS FROM THE 1846 CASE AND FROM THE

5      RETRIAL, AND WE NEED REDACTED VERSIONS OF EXHIBITS THAT WERE

6      FILED PARTIALLY UNDER SEAL AND PARTIALLY NOT UNDER SEAL, SO

7      THAT IF, IN THE FUTURE, SOME MEMBER OF THE PUBLIC OR THIRD

8      PARTY REQUESTS COPIES OF THE PARTIALLY SEALED DOCUMENTS, THE

9      CLERK'S OFFICE ACTUALLY HAS A REDACTED COPY TO MAKE AVAILABLE

10     TO THE PUBLIC.

11         DOES THAT MAKE SENSE?

12             MS. MAROULIS:  YES, YOUR HONOR.  WHEN WOULD YOU LIKE

13      THAT DONE?  NEXT WEEK?

14             THE COURT:  I KNOW YOU HAVE A LOT TO DO RIGHT NOW, SO

15      I DON'T WANT TO IMPOSE ANOTHER DEADLINE.  WHEN SEEMS --

16             MS. MAROULIS:  CAN WE DO THIS AFTER CLOSINGS, MAYBE

17      TUESDAY OR WEDNESDAY?

18             THE COURT:  OF COURSE.  OF COURSE.  WHY DON'T WE SAY,

19      YOU KNOW, BY THE END OF THE DAY ON WEDNESDAY, WHICH I THINK IS

20      APRIL 30TH.  IS THAT RIGHT?

21             MS. MAROULIS:  THAT WOULD BE FINE, YOUR HONOR.  THANK

22      YOU.

23             THE COURT:  OKAY.  SO APRIL 30TH, PROVIDE REDACTED

24      VERSIONS OF PARTIALLY SEALED DOCUMENTS SO THE CLERK'S OFFICE

25      CAN MAKE THOSE AVAILABLE TO ANY MEMBERS OF THE PUBLIC WHO
```

```
 1        REQUEST IT.
 2             NOW, LET'S TALK ABOUT THE MOTOROLA FEDERAL CIRCUIT
 3    DECISION ONE MORE TIME.
 4             MS. KREVANS:  I'M SORRY, YOUR HONOR.  CAN I JUST ASK,
 5    HOW DO YOU WANT US TO PROVIDE THOSE?
 6             THE COURT:  WELL, I'M WONDERING, MAYBE -- AT THE END
 7    OF THIS TRIAL -- LET ME WAIT UNTIL MS. MAROULIS IS DONE.
 8        (DISCUSSION OFF THE RECORD BETWEEN THE DEFENSE.)
 9             THE COURT:  AT THE END OF THIS TRIAL, THE PARTIES ARE
10    GOING TO STIPULATE TO WHAT SET -- WELL, ACTUALLY, IT'LL
11    PROBABLY JUST BE THE EXHIBITS THAT THE JURORS USE.
12             MS. KREVANS:  THE JURORS ARE GETTING UNREDACTED
13    VERSIONS, THOUGH, BECAUSE THEY'RE GETTING THE ACTUAL DOCUMENTS
14    WITH EVERY PAGE, REGARDLESS OF WHETHER IT'S SEALED OR NOT.
15             THE COURT:  SURE.  SO WHAT YOU COULD DO -- AND IN THE
16    PREVIOUS TRIALS YOU PROVIDED THEM IN BINDERS; CORRECT?
17             MS. KREVANS:  YES, THAT'S RIGHT.
18             THE COURT:  ALL RIGHT.  SO WHAT YOU COULD DO IS EVEN
19    WAIT UNTIL THE JURY IS DONE WITH THOSE BINDERS, AND INCLUDE FOR
20    A PARTICULAR EXHIBIT AN UNREDACTED VERSION AND A REDACTED
21    VERSION, AND THEN THE CLERK'S OFFICE WILL ONLY MAKE THE
22    REDACTED VERSION AVAILABLE TO THE PUBLIC AND WILL JUST STORE,
23    FOR PURPOSES OF PRESERVING THE RECORD, THE UNREDACTED VERSION.
24        DOES THAT MAKE SENSE?
25             MS. KREVANS:  YOU MEAN FOR THE EXHIBITS IN THIS CASE?
```

```
 1              THE COURT:  YES.  I MEAN, I THINK THE RECORD IS
 2    ALREADY SET IN THE 1846 CASE.  WE ARE NOT GOING TO SUPPLEMENT
 3    IT.  IT'S ON APPEAL.  I REALLY DON'T EVEN HAVE JURISDICTION
 4    ANYMORE.
 5              MS. KREVANS:  I JUST -- I JUST MEANT LITERALLY
 6    PHYSICALLY WHEN WE GIVE THE CLERK'S OFFICE, FOR 1846 AND 1846
 7    RETRIAL, THESE REDACTED VERSIONS OF THE DOCUMENTS THAT WERE
 8    PARTIALLY SEALED, JUST PHYSICALLY HOW DO YOU WANT US TO DO IT?
 9              THE COURT:  OH, I'M NOT ASKING FOR THAT FOR 1846.
10    I'M ASKING FOR IT IN THIS CASE.
11              MS. KREVANS:  ALL RIGHT.  FOR THIS CASE IT'S EASY.
12              THE COURT:  FOR THIS CASE I WOULD LIKE, FOR THE
13    CLERK'S OFFICE, BOTH A REDACTED VERSION THAT CAN BE GIVEN TO
14    THE PUBLIC IF ANYONE REQUESTS THE EXHIBITS, AND AN UNREDACTED
15    VERSION THAT WE WILL KEEP, THE CLERK'S OFFICE WILL KEEP AND NOT
16    DISTRIBUTE TO ANYONE, BUT PRESERVE IT FOR THE RECORD.
17              MS. KREVANS:  OKAY.  SO WOULD YOU LIKE THEM ON PAPER,
18    OR WOULD YOU LIKE A DISK WITH ELECTRONIC COPIES OF THE REDACTED
19    VERSIONS?  I WAS REALLY JUST ASKING A PURELY LOGISTICAL
20    QUESTION.
21              THE COURT:  SURE.  I THINK IT MIGHT BE EASIER, SINCE
22    YOU'RE GOING TO PROVIDED THEM IN BINDERS, IF YOU JUST INCLUDED
23    IN THE BINDER ITSELF FOR A SPECIFIC EXHIBIT NUMBER THE PUBLIC
24    REDACTED VERSION THAT CAN BE DISTRIBUTED TO ANY MEMBER OF THE
25    PUBLIC WHO REQUESTS IT, AND THE UNREDACTED VERSION AND JUST
```

```
 1         KEEP IT TOGETHER.  OKAY?
 2              MS. KREVANS:  AND THEN A SEPARATE SET OF BINDERS FOR
 3    THE JURY THAT HAS THE FULL VERSIONS?
 4              THE COURT:  EITHER YOU CAN TAKE THE JURY'S VERSION
 5    WHEN THEY'VE COMPLETED THEIR DELIBERATIONS AND INSERT THE
 6    REDACTED PUBLIC VERSIONS IN THE JURY'S BINDERS, THAT WOULD BE
 7    ONE OPTION.
 8              MS. KREVANS:  BECAUSE I DON'T WANT TO CONFUSE THE
 9    JURY BY GIVING THEM TWO VERSIONS OF THE DOCUMENT.
10              THE COURT:  RIGHT.  I SAID WHEN THEY'RE --
11              MS. KREVANS:  WHEN THEY'RE DONE.
12              THE COURT:  -- WHEN THEY'RE COMPLETELY DONE AND WE
13    GET, YOU KNOW, CUSTODY OF THE BINDERS BACK FROM THE JURY, YOU
14    COULD AT THAT POINT POTENTIALLY INSERT THE PUBLIC REDACTED
15    VERSIONS.
16              MS. KREVANS:  THAT WOULD BE FINE, YOUR HONOR.
17              THE COURT:  OKAY.
18              MS. KREVANS:  WHATEVER IS MOST CONVENIENT.
19              MS. MAROULIS:  THAT'S FINE.
20              THE COURT:  SO IF YOU CAN -- IN TERMS OF THE
21    APRIL 30TH DEADLINE, IT WORKS IN TERMS OF GETTING THOSE
22    REDACTED VERSIONS READY -- OR ACTUALLY, LET ME ASK
23    MS. PARKER BROWN, WE WOULD PROBABLY HAVE TO INSERT THEM, RIGHT?
24              MS. KREVANS:  YES, BECAUSE WE WON'T GET THEM BACK.
25              THE COURT:  YOU KNOW WHAT MIGHT BE BETTER?  JUST
```

```
1     CREATE A NEW BINDER OF PUBLIC REDACTED DOCUMENTS.

2              MS. KREVANS:  YES.

3              THE COURT:  AND THAT WE WILL GIVE TO THE CLERK'S

4     OFFICE TO KEEP IN CASE THERE'S ANY REQUESTS.

5              MS. KREVANS:  WE WILL DO THAT.

6              THE COURT:  OKAY.  AND THAT'S JUST FOR THIS CASE.

7         ALL RIGHT.  AND THAT YOU COULD DO BY APRIL 30TH?

8              MS. KREVANS:  YES, YOUR HONOR.

9              MS. MAROULIS:  YES, YOUR HONOR.

10             THE COURT:  ALL RIGHT.  NOW, LET'S TALK ABOUT THE

11    MOTOROLA DECISION.

12             MS. MAROULIS:  YOUR HONOR, MAY I RAISE -- AND MAYBE

13    THE COURT WAS GOING TO RAISE IT ALREADY.

14             THE COURT:  YES.

15             MS. MAROULIS:  -- WE CURRENTLY HAVE JMOL'S DUE AT

16    NOON.  SO IS THAT STILL DUE AT NOON EVEN THOUGH THERE'S SOME

17    EVIDENCE ON MONDAY?

18             MS. KREVANS:  MAYBE.

19             MS. MAROULIS:  WHAT DOES THE COURT PREFER?

20             MS. KREVANS:  MAYBE THERE'S GOING TO BE EVIDENCE ON

21    MONDAY.

22             THE COURT:  I THINK WE SHOULD GO AHEAD AND KEEP THE

23    NOON DEADLINE.  IF IT TURNS OUT THAT ANY SUPPLEMENTAL JMOL

24    MOTION IS NECESSARY BASED SOLELY ON THE '647 CLAIM CONSTRUCTION

25    ISSUES, THEN I'LL RELUCTANTLY ALLOW ANOTHER SET OF BRIEFING AND
```

1      ANOTHER SET OF MOTIONS ON THAT.

2              MS. MAROULIS:  UNDERSTOOD.  THANK YOU.

3              THE COURT:  BUT AT LEAST IF WE COULD, YOU KNOW,

4      RESOLVE THE OTHER PATENTS.  I THINK THAT WOULD HELP US MOVE IT

5      ALL FORWARD.  SO LET'S KEEP THAT.

6              MS. KREVANS:  YOUR HONOR, CAN I JUST ASK, BECAUSE I

7      HAVE TO DO THE FINAL READ OF OUR BRIEF AND I'M STILL HERE, CAN

8      I ASK FOR 12:30 INSTEAD OF NOON?

9              THE COURT:  IF YOU WANT UNTIL 1:00 O'CLOCK, THAT'S

10     FINE.

11             MS. KREVANS:  THANK YOU.

12             MS. MAROULIS:  THANK YOU.

13             THE COURT:  ALL RIGHT.  SO LET ME ASK, WITH REGARD

14     TO -- AND I'M STILL GOING TO KEEP AN OPEN MIND AND GIVE YOU

15     TIME TO DIGEST THE FULL 95 PAGE FEDERAL CIRCUIT ORDER AND

16     REVIEW YOUR EXPERTS' DEPOSITIONS AND REPORTS AND TRIAL

17     TESTIMONY TO COME UP WITH A COMPLETELY INFORMED DECISION, BUT,

18     YOU KNOW, MY MOST IMPORTANT CONCERN IS WHAT, WHAT WOULD MOST

19     LIKELY WITHSTAND APPELLATE REVIEW, REGARDLESS OF WHICH WAY THE

20     VERDICT COMES OUT WITH THIS JURY.  THAT'S MY MAIN CONCERN.

21         AND I DO HAVE A CONCERN WITH THIS GOING TO THE JURY

22     WITHOUT A FEDERAL CIRCUIT APPROVED CLAIM CONSTRUCTION.

23         I WAS SOMEWHAT PERSUADED BY WHAT MR. NELSON SAID THIS

24     MORNING.  I'M WONDERING IF APPLE'S ASSUMED THE RISK, IF APPLE'S

25     PRESENTED ANY TESTIMONY DURING THIS TRIAL THAT IS SORT OF

```
1     CONTRARY TO JUDGE POSNER'S CONSTRUCTION AND WHETHER WE SHOULD

2     JUST REMEDY ANY POTENTIAL ISSUE BY INCLUDING JUDGE POSNER'S

3     CONSTRUCTION IN THE FINAL JURY INSTRUCTIONS AND PERHAPS GIVING

4     THEM, THE JURY, A SHEET OF PAPER THAT THEY CAN INCLUDE IN THEIR

5     JURY BINDER WITH THE OTHER CLAIM CONSTRUCTION THAT LAYS OUT

6     THOSE TWO ADDITIONAL CONSTRUCTIONS ON THE '647 AND ALLOW THE

7     ADDITIONAL TRIAL TESTIMONY RATHER THAN JUST GOING WITH PLAIN

8     AND ORDINARY MEANING.

9          LET ME ACTUALLY HEAR FROM -- MAYBE I SHOULD HEAR FROM

10    MR. LEE.  I MEAN, THE ONLY REASON WHY I WOULD ASSUME WE WOULD

11    GO WITH PLAIN AND ORDINARY MEANING IS IF THERE WAS SOME

12    PREJUDICE ARGUMENT THAT APPLE'S ALREADY LAID OUT ITS CASE.

13         I'M ASSUMING SAMSUNG'S CASE HAS BEEN CONSISTENT WITH JUDGE

14    POSNER'S CONSTRUCTIONS.

15              MR. NELSON:  YEP.

16              THE COURT:  OKAY.  SO THE ONLY REASON TO GO WITH

17    PLAIN AND ORDINARY MEANING, WHICH IS WHAT HAS BEEN PRESENTED TO

18    THIS JURY OVER THE LAST MONTH, IS IF APPLE WOULD BE PREJUDICED

19    BECAUSE YOU INTRODUCED A DIFFERENT THEORY THAT IS NOT

20    NECESSARILY NEW, BUT AN INFRINGEMENT AND VALIDITY THEORY THAT'S

21    NOT CONSISTENT WITH JUDGE POSNER'S CONSTRUCTIONS, AND IF YOU

22    DID, HAVEN'T YOU ASSUMED THE RISK OF DOING THAT WHEN

23    JUDGE POSNER'S CONSTRUCTION WAS OUT THERE AND IT WAS PENDING

24    REVIEW ON APPEAL?

25              MR. LEE:  WELL, TWO THINGS, YOUR HONOR.  ONE IS --
```

```
 1                 THE COURT:  YEAH.

 2                 MR. LEE:  -- I'M NOT SURE HOW SAMSUNG COULD HAVE

 3      PRESENTED EVIDENCE CONSISTENT WITH JUDGE POSNER'S CONSTRUCTION

 4      SINCE IT WAS OUT AND WE WERE BOTH OPERATING UNDER PLAIN

 5      MEANING.

 6                 THE COURT:  OKAY.

 7                 MR. LEE:  BUT I THINK YOUR QUESTION IS FAIR.

 8             LET ME JUST MAKE THIS SUGGESTION:  IF WE COULD TAKE MAYBE

 9      A 20 MINUTE BREAK SO WE HAVE A CHANCE TO TALK --

10                 THE COURT:  SURE.

11                 MR. LEE:  -- AND FIND OUT WHAT PEOPLE HAVE FOUND OUT

12      BACK AT THE SHOP, TALK TO APPLE, AND THEN COME BACK AT 11:00

13      O'CLOCK AND SEE WHAT THE BEST WAY IS TO MOVE THIS ALONG?

14                 THE COURT:  WOULD THAT GIVE YOU ENOUGH TIME TO COME

15      BACK AT 11:00?

16                 MR. LEE:  UM --

17                 THE COURT:  I MEAN, THE OTHER OPTION -- I WANTED TO

18      TALK WITH YOU ABOUT WHEN WE SHOULD GET TOGETHER.  I MEAN, I DO

19      WANT THE ADDITIONAL BRIEFING THAT WE'VE ALL DISCUSSED, BUT IT

20      WOULD BE HELPFUL TO AT LEAST ALL MEET AGAIN TODAY.  SO -- I

21      MEAN, IF YOU'RE PREPARED --

22                 MR. LEE:  WE THINK WE CAN DO THAT.

23                 THE COURT:  -- TO DO IT EARLIER THAN THE END OF THE

24      DAY, THAT'S GREAT.  IF NOT --

25                 MR. LEE:  IF YOUR HONOR WANTS US TO COME BACK AT
```

1    3:30, WE CAN COME BACK AT 3:30 TO ADDRESS IT.

2              THE COURT:  NOW, DO YOU STILL INTEND TO FILE

3    SOMETHING AT 4:00 O'CLOCK?

4              MR. LEE:  I THINK, YOUR HONOR, PROBABLY WE CAN COME

5    BACK AND ADDRESS IT WITH YOU IN PERSON.

6              MR. NELSON:  THAT'S FINE.

7              MR. LEE:  DO YOU AGREE?

8              MR. NELSON:  THAT'S FINE WITH ME.

9              THE COURT:  I MEAN, I DON'T WANT TO HAVE US ALL MAKE

10   A MISTAKE OUT OF HASTE.  IF YOU NEED MORE TIME, THEN I WANT TO

11   GIVE YOU MORE TIME.

12        AND THAT'S WHY I WAS ALSO SUGGESTING, IF YOU DON'T WANT TO

13   FORCE A RULING AND HAVING TO TAKE A COMMITTED POSITION TODAY,

14   DO WE WANT TO HAVE THIS PERHAPS THOUGHT ABOUT OVER THE WEEKEND

15   AND NOT HAVE THE JURY COME IN MONDAY AT 9:00?

16             MR. LEE:  YOUR HONOR, WHY DON'T WE -- IF WE WERE TO

17   COME BACK AND SEE YOUR HONOR AT 3:30, WHY DON'T WE PLAN TO --

18   YOU TALK ABOUT IT ON YOUR END, WE'LL TALK ABOUT IT ON OUR END

19   AND COME BACK AND ADDRESS IT WITH YOUR HONOR AT 3:30.  IF IT

20   TURNS OUT WE NEED ANOTHER 24 HOURS OR SO TO THINK IT THROUGH,

21   WE'LL TELL YOUR HONOR THEN.  IF WE'VE GOT A PLAN, THEN WE HAVE

22   A PLAN.

23        AND WE CAN TALK TO MR. NELSON IN ADVANCE OF THAT TO SEE IF

24   THERE'S A WAY TO REACH SOME AGREEMENT TO IT.

25             MR. NELSON:  THAT'S FINE.  I'M READY WHENEVER, YOUR

1    HONOR.  I'M VERY FAMILIAR WITH THE ISSUES.  WE KNEW THIS WAS

2    COMING.  WHEN I SAY THAT OUR CASE WAS CONSISTENT IN RESPONSE TO

3    YOUR QUESTION, THAT'S WHAT WE'VE ALWAYS BELIEVED THIS TERM

4    MEANT.  WE TRIED OUR CASE THAT WAY.

5         YOU'LL RECALL THERE WAS AN OBJECTION SAYING THAT

6    DR. JEFFAY COULDN'T TALK ABOUT CLAIM CONSTRUCTION, AND HE

7    DIDN'T, BUT WE OFFERED THE EVIDENCE IN THAT WAY.  THAT'S WHY I

8    SAY IT'S COMPLETELY CONSISTENT WITH THAT.

9              THE COURT:  UM-HUM.

10             MR. NELSON:  APPLE, I BELIEVE, WAS HOPING -- I MEAN,

11   YOU HEARD DR. MOWRY'S TESTIMONY ABOUT, OH, IT'S JUST PROGRAM

12   ROUTINES AND THOSE KINDS OF THINGS, AND I DO THINK THEY DID

13   THAT AT THEIR OWN RISK.

14        SO, I MEAN, I'M -- THOSE CONSTRUCTIONS APPLY AND THAT'S

15   WHAT I'M SAYING IS THAT OUR CASE WAS CONSISTENT WITH THAT

16   BECAUSE WE'VE ALWAYS GIVEN MEANING TO THAT TERM.  WE DIDN'T

17   TESTIFY WHAT IT MEANT BECAUSE THAT'S NOT WHAT AN EXPERT IS HERE

18   TO DO FOR CLAIM CONSTRUCTION.

19             THE COURT:  UM-HUM.

20             MR. NELSON:  SO I'M FINE WITH THAT, YOUR HONOR, AND

21   I'M FINE TO DISCUSS THIS ISSUE WHEN YOU WANT.  I'LL TALK TO MY

22   TEAM.  I'LL -- IF YOU WANT TO DO IT NOW, IF YOU WANT TO DO IT

23   AT 11:00, IF YOU WANT TO DO IT AT 3:30, I'M WILLING TO DO THAT.

24             MR. LEE:  YOUR HONOR, I THINK THAT'S FINE.

25        THERE ARE TWO CLAIM CONSTRUCTIONS THAT ARE ADDRESSED BY

```
1       THE FEDERAL CIRCUIT.  I ACTUALLY THINK THAT THE SECOND ONE

2    PROBABLY MAKES DR. JEFFAY'S INVALIDITY TESTIMONY NOT SO GREAT

3    FOR THEM, BUT THAT'S FOR THEM TO THINK ABOUT AS WELL AND THINK

4    ABOUT WHETHER THEY HAVE ANY PREJUDICE.

5        BUT LET US JUST HAVE A LITTLE BIT OF TIME TO THINK ABOUT

6    IT AND COME BACK AND SEE YOU LATER.

7           THE COURT:  OKAY.  ALL RIGHT.  SO YOU WOULD RATHER --

8    HOW QUICKLY COULD YOU FILE SOMETHING?  I'M WONDERING IF YOU

9    SHOULD FILE SOMETHING AND GIVE ME, LIKE, AN HOUR TO THINK ABOUT

10   IT AND THEN GET TOGETHER AND HAVE AN ORAL DISCUSSION.

11       OR IF IT'S THAT TOO DIFFICULT AND YOU WANT TO JUST TALK AT

12   3:30, I'M WILLING TO CONSIDER THAT.

13       IT WOULD BE HELPFUL -- I MEAN, WE'LL OBVIOUSLY LOOK BACK

14   AT ALL THE TRIAL TESTIMONY OF BOTH EXPERTS, BUT IT WOULD BE

15   HELPFUL IF YOU ALL COULD, YOU KNOW, PROVIDE SOME SORT OF EVEN

16   INTERIM GUIDANCE ON EXACTLY WHAT SECTIONS MIGHT BE USEFUL.

17       AND IF NOT, IF YOU'RE NOT ABLE TO DO THAT IN SUCH A SHORT

18   TIMEFRAME, I'M NOT GOING TO REQUIRE IT.

19           MR. LEE:  IF YOU WANT US TO FILE SOMETHING BY 2:30,

20   WE'LL FILE SOMETHING BY THEN.  IS THAT OKAY WITH YOU?

21           MR. NELSON:  YEAH.  WE KNOW WHAT SECTIONS THEY ARE,

22   AND WE'VE PREPARED THIS FOR CLOSING, SO WE CAN POINT YOUR HONOR

23   TO THE SECTIONS WHERE THE EXPERTS TESTIFIED ABOUT THESE ISSUES.

24       AND THERE'S, YOU KNOW, SOME ADDITIONAL TESTIMONY FROM SOME

25   OF THE FACT WITNESSES THAT YOUR HONOR MAY WANT TO CONSIDER, AND
```

```
1        WE'LL POINT YOU TO THAT AS WELL.

2              THE COURT:  DO YOU -- CAN YOU GIVE ME THAT

3        INFORMATION NOW SO I CAN START LOOKING AT IT?

4              MR. NELSON:  WELL, THAT I MIGHT BE -- HAVE BEEN A

5        LITTLE -- BUT I CAN DO IT QUICKLY.  I MEAN, I DON'T HAVE IT

6        RIGHT HERE, BUT WE'VE ALREADY GONE THROUGH THE RECORD AND WE

7        CAN IDENTIFY THOSE THINGS FOR YOU QUICKLY.

8              THE COURT:  OKAY.  BECAUSE THAT WOULD BE HELPFUL FOR

9        US TO KNOW WHAT RELEVANT SECTIONS WE CAN FOCUS ON.

10             MR. NELSON:  YES.

11             THE COURT:  I MEAN, WE'LL TRY TO REVIEW EVERYTHING,

12       BUT IT'S ALWAYS HELPFUL -- THIS IS COMPLICATED STUFF AND IT'S

13       HELPFUL TO GET YOUR INPUT.

14             MS. KREVANS:  I THINK THERE ARE ONLY A FEW WITNESSES

15       WHO TESTIFIED TO ANYTHING THAT'S RELEVANT TO THIS ISSUE.

16             THE COURT:  WHO WOULD THEY BE OTHER THAN MOWRY AND

17       JEFFAY?

18             MR. NELSON:  OKAY.  MS. HACKBORN, AND THEN DR. MOWRY,

19       AND DR. JEFFAY.

20             THE COURT:  SO DO YOU AGREE IT'S JUST THE THREE?

21             MS. KREVANS:  I THINK THERE IS A FRID-NIELSEN

22       DEPOSITION SET --

23             MR. NELSON:  HE TESTIFIED LIVE.  THAT WAS WITH

24       RESPECT TO THE PRIOR ART.

25             MS. KREVANS:  OH, YOU'RE RIGHT, HE DID TESTIFY LIVE.
```

```
1        SO MR. FRID-NIELSEN IS THE OTHER ONE.

2              THE COURT:  ALL RIGHT.  ANYONE ELSE?

3              MR. NELSON:  THERE WAS THE DEPOSITION TESTIMONY OF

4    THE INVENTORS, YOUR HONOR, IT WAS JUST ONE, DR. BONHURA, THAT

5    WAS LODGED AS AN EXHIBIT.

6              THE COURT:  RIGHT.  WHICH I DON'T HAVE A COPY OF THE

7    LODGED EXHIBIT.  I COULD GET A COPY OF THAT.

8         MAYBE, MS. PARKER BROWN, YOU CAN GIVE ME A COPY OF

9    DR. BONURA'S LODGED DEPO EXHIBIT.

10        SO OTHER THAN MOWRY, JEFFAY, HACKBORN, FRID-NIELSEN, AND

11   BONHURA, IS THERE ANYONE ELSE?

12             MR. NELSON:  NO.  I CAN'T THINK OF ANYBODY ELSE.

13             MS. KREVANS:  THAT SHOULD BE IT, YOUR HONOR.

14             THE COURT:  NO ONE ELSE?  OKAY.  AND ONLY DR. BONHURA

15   WAS BY DEPOSITION, SO WE'LL HAVE THE TRIAL TRANSCRIPT FOR THE

16   REST.

17        OKAY.  ALL RIGHT.  ANYTHING --

18             MS. KREVANS:  OH, I'M SORRY.  MR. DENIAU TESTIFIED TO

19   APPLE'S PRACTICE, TO FACTS UNDERLYING APPLE'S PRACTICE.  IT WAS

20   VERY SHORT.  HE WAS THE GENTLEMAN WITH THE VERY HEAVY FRENCH

21   ACCENT.

22             THE COURT:  FRENCH ACCENT.  I KNOW.

23        OKAY.  THEN ANYONE ELSE THAT WOULD BE IMPLICATED BY THE

24   FEDERAL CIRCUIT'S DECISION?  THAT'S IT?

25             MS. KREVANS:  I DON'T THINK SO, YOUR HONOR.
```

```
 1                    MR. NELSON:  NO.

 2                    THE COURT:  OKAY.  ALL RIGHT.  I'M GOING TO DEFER TO

 3          YOU ALL.  WOULD YOU PREFER JUST TO SPEAK AT 3:30?  OR CAN YOU

 4          FILE SOMETHING IN ADVANCE?

 5                    MR. NELSON:  I THINK IT WOULD BE MOST EFFICIENT IF WE

 6          SPEAK BECAUSE THAT GIVES US IMMEDIATE FEEDBACK ON WHAT YOUR

 7          HONOR IS INTERESTED IN AND WHAT YOUR QUESTIONS ARE, AS OPPOSED

 8          TO US -- I MEAN, WE CAN GIVE YOU THE SPECIFIC CITATIONS WITHIN,

 9          FOR EXAMPLE, THE EXPERT'S TESTIMONY.  THE OTHERS ARE RELATIVELY

10          SHORT.

11               SO, YOU KNOW, THERE'S NOT A LOT ACTUALLY WITHIN THE

12          EXPERTS AS TO WHAT WE BELIEVE THE RELEVANT TESTIMONY WOULD BE,

13          SO YOU CAN REVIEW THAT.

14               BUT IN TERMS OF FILING SOMETHING, I'M NOT SURE EXACTLY

15          WHAT YOUR HONOR'S QUESTIONS ARE, SO WHATEVER WE FILE MAY NOT BE

16          PARTICULARLY HELPFUL.

17                    THE COURT:  WELL, I GUESS EVEN IF YOU CITE TO A TRIAL

18          TESTIMONY EXCERPT, I MAY NOT FULLY APPRECIATE WHAT THE EFFECT

19          OF THE POSNER CONSTRUCTIONS ARE ON THAT TESTIMONY.

20                    MR. NELSON:  RIGHT.

21                    THE COURT:  SO THAT'S ACTUALLY WHAT I WAS HOPING FOR

22          WAS SOME GUIDANCE ON WHY THIS IS RELEVANT, HOW DOES THIS CHANGE

23          WHAT WAS SAID OR THE IMPLICATION OR THE NUANCE OF WHAT WAS

24          SAID?  THAT'S THE KIND OF GUIDANCE I WAS LOOKING FOR.

25                    MR. NELSON:  YEAH.  WE CERTAINLY CAN DO THAT, BUT
```

```
 1        I -- WHAT I'M SAYING IS I THINK IT WOULD ALSO BE HELPFUL, IN

 2    ADDITION TO WHATEVER WE FILE, TO HAVE THE DISCUSSION.

 3                THE COURT:  OH, NO.  THAT I AGREE.  THAT I AGREE.  I

 4    THINK THIS IS TOO COMPLICATED TO DO ON PAPER.

 5                MR. LEE:  YEAH.  I THINK, YOUR HONOR, THAT JUST

 6    COMING TO SEE YOU AT 3:30 IS THE RIGHT WAY TO DO IT.

 7                THE COURT:  THANK YOU, MS. PARKER BROWN.

 8          ALL RIGHT.  WELL, I MAY REQUIRE A FILING AFTER THAT THEN.

 9                MR. LEE:  OKAY.

10                THE COURT:  BECAUSE THERE MAY BE THINGS THAT I'M

11    STILL EITHER UNCLEAR ABOUT OR NEED FURTHER GUIDANCE ON AFTER

12    THAT.

13                MR. LEE:  WE UNDERSTAND.

14                THE COURT:  OKAY.  ALL RIGHT.  SO THEN I'LL SEE YOU

15    BACK HERE AT 3:30.

16                MR. NELSON:  OKAY.

17                MS. KREVANS:  THANK YOU, YOUR HONOR.

18                THE COURT:  ALL RIGHT.  THANK YOU.

19                MR. NELSON:  THANK YOU.

20                MR. QUINN:  YOUR HONOR, ONE OTHER ISSUE --

21                THE COURT:  YES.

22                MR. QUINN:  -- IN TERMS OF THE SEQUENCE OF THE

23    ARGUMENTS AND THE CLOSING.

24                THE COURT:  YES.

25                MR. QUINN:  I DON'T KNOW IF THAT'S SOMETHING THAT --
```

1    I HADN'T HEARD THE COURT ADDRESS THAT YET.

2            THE COURT:  OKAY.  SO I WAS ENVISIONING THAT IT WOULD

3    FOLLOW THE SAME SUBJECT MATTER AND PATTERN OF THE TRIAL

4    EVIDENCE.

5            MR. QUINN:  UM-HUM.

6            THE COURT:  AND I HAVE -- I'LL JUST TELL YOU WHAT I'M

7    ENVISIONING.

8        SO APPLE WOULD PRESENT ITS AFFIRMATIVE CASE, DIRECT

9    INFRINGEMENT OF THE FOUR PATENTS, INDUCEMENT AND CONTRIBUTORY

10   INFRINGEMENT AND WILLFULNESS;

11       THEN SAMSUNG WOULD PRESENT ITS DEFENSIVE CASE, BOTH

12   INFRINGEMENT, WILLFULNESS, AS WELL AS ITS AFFIRMATIVE DEFENSE

13   OF INVALIDITY AND ITS AFFIRMATIVE CASE OF THE '449 AND '239

14   INFRINGEMENT AND WILLFULNESS AS TO THOSE PATENTS; AND,

15           THEN APPLE WOULD REBUT AS TO INVALIDITY, ADDRESS THE

16   NON-INFRINGEMENT POSITIONS, HAVE FINAL SAY ON INDUCEMENT AND

17   CONTRIBUTORY INFRINGEMENT BY SEC AND WILLFULNESS, AND REBUT

18   SAMSUNG'S AFFIRMATIVE CASE OF INFRINGEMENT AND WILLFULNESS;

19   AND,

20       THEN WE'D HAVE THE SAME SAMSUNG REBUTTAL OF INFRINGEMENT

21   AS TO SAMSUNG'S TWO PATENTS, WILLFULNESS AS TO THOSE PATENTS,

22   AND INVALIDITY.

23           DO YOU WANT TO BE HEARD ON THAT, MR. MCELHINNY?

24           MR. QUINN:  THAT'S FINE WITH US, YOUR HONOR.

25           MR. MCELHINNY:  I DON'T THINK THAT'S THE TRADITIONAL

2963

```
 1        WAY TO DO IT.  I DON'T THINK IT'S THE WAY WE'VE DONE IT BEFORE,

 2        AND THE PROBLEM I HAVE WITH IT IS THAT IT -- I HAD BEEN

 3        PLANNING TO DO IT ON A PATENT-BY-PATENT BASIS BECAUSE I THINK

 4        TALKING ABOUT THE CONTEXT OF THE PATENT ONCE, AS OPPOSED TO

 5        HAVING TO DO IT TWICE -- SO WHAT I HAD IN MIND WAS JUST A

 6        TRADITIONAL WE WOULD TALK ABOUT WHAT OUR CASE WAS, WHICH WAS

 7        THAT IT WAS INFRINGED, THAT THE PATENTS ARE VALID, AND THAT

 8        THE -- THAT WE SHOULD BE AWARDED DAMAGES AND A FINDING OF

 9        WILLFULNESS.

10            AND THAT WAY I'M ONLY UP ONCE AS OPPOSED TO GETTING UP

11        BACK AND FORTH BY DIVIDING THE CASES.

12            BUT ALSO, IT PUTS IT ALL IN ONE CONTEXT, AND GIVEN THE

13        TIME LIMITATION THAT WE HAVE, TO HAVE TO GO BACK TO THE PATENTS

14        MULTIPLE TIMES, I JUST DON'T THINK THAT'S HELPFUL TO THE JURY

15        AND IT'S NOT A COHERENT WAY OF PRESENTING -- I MEAN, THE

16        EVIDENCE HAS TO COME IN THAT WAY.

17                THE COURT:  SO WHAT IS YOUR SUGGESTION, YOU GET TO GO

18        FIRST AND LAST?

19                MR. MCELHINNY:  MY SUGGESTION IS THAT WE WOULD GO

20        FIRST ON OUR CASE.

21                THE COURT:  OKAY.

22                MR. MCELHINNY:  MR. QUINN WOULD THEN GO ON OUR CASE

23        AND HIS CASE; WE WOULD THEN GIVE A REBUTTAL; AND THEN IF THEY

24        WANTED TO HAVE A COUPLE OF MINUTES OF REBUTTAL ON THEIR CASE,

25        THAT WOULD BE FINE WITH ME.
```

```
1              MR. NELSON:  WHEN YOU SAY "REBUTTAL," YOU MEAN

2    REBUTTAL TO OUR AFFIRMATIVE CASE?

3              MR. MCELHINNY:  YEAH.

4              MR. NELSON:  YEAH.  SO YOU DO EVERYTHING, YOUR WHOLE

5    CASE THE FIRST TIME, GET UP, YOU DO YOU INVALIDITY

6    PATENT-BY-PATENT, WE'D RESPOND TO THAT --

7              MR. MCELHINNY:  YEAH.

8              MR. NELSON:  -- PRESENT OUR AFFIRMATIVE CASE, AND

9    THEN YOU WOULD RESPOND TO THE AFFIRMATIVE CASE?

10             MR. MCELHINNY:  I'M SORRY.  WE WOULD GET UP AND WE

11   WOULD DO OUR ENTIRE CASE, OUR AFFIRMATIVE CASE.

12             MR. NELSON:  RIGHT.

13             MR. MCELHINNY:  YOU WOULD GET UP AND YOU WOULD DO

14   YOUR ENTIRE -- YOUR DEFENSE TO OUR CASE AND YOUR AFFIRMATIVE

15   CASE.

16             MR. NELSON:  RIGHT.

17             MR. MCELHINNY:  WE WOULD THEN GET UP AND REBUT YOUR

18   AFFIRMATIVE CASE, AND THEN IF YOU WANTED TO GET UP AND REBUT

19   YOUR AFFIRMATIVE CASE, THEN THAT WOULD BE FINE.

20             MR. NELSON:  YOU MEAN TO TALK ABOUT INVALIDITY?

21             MR. MCELHINNY:  NO.  I -- NO.

22             MR. NELSON:  THAT'S THE PART I'M NOT GETTING, THAT

23   REBUTTAL THING.

24             MR. MCELHINNY:  WHAT I'M TALKING ABOUT IS WHAT WE DID

25   IN THE 1846 CASE, WHICH IS WE -- LET ME TRY IT AGAIN.  WE GET
```

```
1       UP AND WE TALK ABOUT OUR AFFIRMATIVE CASE, EVERYTHING.

2               MR. NELSON:  YEAH, INVALIDITY.

3               MR. MCELHINNY:  DAMAGES, NON-INFRINGEMENT,

4       WILLFULNESS, ALL OF IT.

5               MR. NELSON:  YEAH.

6               MR. MCELHINNY:  NOT AN INJUNCTION.  BUT WE GET UP AND

7       WE TALK ABOUT THAT.

8           YOU THEN GET UP AND YOU'D DEFEND YOURSELF AGAINST OUR

9       ACCUSATIONS AND YOU'D STATE YOUR PLAINTIFF'S CASE.

10          WE THEN GET UP AND HAVE OUR LAST TALK WHICH DEFENDS US

11      AGAINST YOUR CASE.

12              MR. NELSON:  RIGHT.

13              MR. MCELHINNY:  AND THEN YOU GET UP AND YOU HAVE YOUR

14      REBUTTAL AS TO YOUR AFFIRMATIVE CASE AGAINST US.

15              MS. KREVANS:  EXCEPT I THINK IN 1846, BECAUSE WE HAD

16      INVALIDITY COUNTERCLAIMS AGAINST THE SAMSUNG COUNTERCLAIM

17      PATENTS, IT WAS A LITTLE DIFFERENT.  THAT'S WHAT'S CONFUSING

18      MR. NELSON.

19              MR. NELSON:  YEAH.  THAT'S THE PART I'M -- BECAUSE I

20      DON'T --

21              THE COURT:  YOU KNOW, I MODELED THIS AFTER THE 1846

22      AND I HAD EXPLICITLY SAID, BEFORE CLOSING ARGUMENT IN 1846,

23      THIS IS THE SEQUENCE OF HOW IT'S GOING TO BE ARGUED, AND IT'S

24      IN THE TRIAL TRANSCRIPT.

25              MR. MCELHINNY:  WHAT I'M NOT REMEMBERING IS I DON'T
```

```
 1       REMEMBER THAT WE WERE PROHIBITED TO TALK ABOUT THE VALIDITY

 2       ISSUES IN OUR ORIGINAL OPENING.  THAT'S THE ONLY PART THAT'S

 3       THROWING ME OFF, BECAUSE I JUST THINK IT MAKES MUCH MORE SENSE

 4       TO TALK ABOUT THIS ON A PATENT-BY-PATENT BASIS THAN TO GET UP

 5       AND DO IT TWICE.

 6              MR. NELSON:  I ACTUALLY -- THAT I AGREE WITH, YOUR

 7       HONOR.  I THINK THE CONTEXT IS, IS BETTER FOR THE JURY IN TERMS

 8       OF SUMMING UP THE CASE TO DO IT THAT WAY RATHER THAN TRY TO

 9       SPLIT IT UP, BECAUSE I DO -- YOU KNOW, THERE ARE A LOT OF

10       DEFENSES AT THIS STAGE.

11              THE COURT:  SO TELL ME HOW YOU WOULD LIKE TO DO IT.

12       SO THEN APPLE'S AFFIRMATIVE CASE, THEY GET TO DO EVERYTHING.

13              MR. NELSON:  CORRECT.

14              THE COURT:  THEN YOU GET TO RESPOND TO EVERYTHING ON

15       APPLE'S AFFIRMATIVE CASE, AS WELL AS PRESENT YOUR AFFIRMATIVE

16       CASE.

17              MR. NELSON:  CORRECT.

18              THE COURT:  THERE I THINK EVERYONE CAN AGREE.  THAT'S

19       FINE IF THAT'S HOW YOU'D LIKE TO DO IT.

20          NOW, WHEN APPLE COMES BACK, THEN WHAT DO THEY GET TO DO,

21       AND THEN WHEN YOU COME BACK, WHAT DO YOU GET TO DO?

22              MR. NELSON:  WELL, WHEN THEY COME BACK THEY RESPOND

23       TO OUR AFFIRMATIVE CASE AND THAT WOULD BE THE END OF IT BECAUSE

24       THERE'S NO NEED FOR REBUTTAL BECAUSE THEY DON'T HAVE AN

25       INVALIDITY DEFENSE.
```

```
 1          IT'S JUST THAT SECOND TIME AROUND THEY WOULDN'T BE GOING

 2    BACK TO THEIR OFFENSIVE CASE.

 3              THE COURT:  OKAY.  SO THEN APPLE WOULD HAVE THE LAST

 4    WORD, BUT IT WOULD BE SOLELY AS A DEFENSE TO SAMSUNG'S

 5    AFFIRMATIVE CASE.

 6              MR. NELSON:  THAT'S CORRECT, YOUR HONOR.  THAT'S WHAT

 7    I UNDERSTAND.

 8              MR. QUINN:  WE GET THE LAST WORD ON OUR OFFENSIVE

 9    CASE.

10              MR. NELSON:  BUT WE DON'T NEED IT.  WE DON'T NEED IT.

11    BECAUSE YOU -- I THINK THAT'S THE MOST --

12              THE COURT:  BECAUSE THEY'RE NOT -- THEY'RE NOT --

13    BECAUSE APPLE IS NOT GETTING THE LAST WORD ON THEIR AFFIRMATIVE

14    CASE.

15              MR. NELSON:  CORRECT.  IT WOULD BE THE SAME THING FOR

16    EVERYBODY.

17              THE COURT:  OKAY.  SO IT'S JUST MOVING PARTY

18    DISCUSSES THEIR AFFIRMATIVE CASE, ALL ISSUES; RESPONDING PARTY

19    DOES THE DEFENSE, AND THAT JUST HAPPENS TWICE.  DOES THAT SOUND

20    OKAY?  ARE YOU --

21              MR. NELSON:  RIGHT.

22              MR. QUINN:  YES, I'M OKAY WITH IT, YOUR HONOR.

23              THE COURT:  THAT'S FINE WITH SAMSUNG.

24              MR. NELSON:  RIGHT.

25              THE COURT:  OKAY.  LET ME HEAR FROM --
```

```
 1              MR. LEE:  CAN WE JUST HAVE A SECOND, YOUR HONOR?

 2         (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

 3              MR. MCELHINNY:  WE AGREE WITH MR. NELSON.

 4              THE COURT:  OKAY.  LET'S MAKE SURE WE ALL ARE CLEAR.

 5              MR. NELSON:  EVERYBODY AGREES WITH ME, YOUR HONOR.

 6              THE COURT:  YOU SHOULD JUST SETTLE TODAY.  WHY BOTHER

 7    TO HAVE A TOUGH WEEKEND, JUST RELAX --

 8         (LAUGHTER.)

 9              THE COURT:  ALL RIGHT.  SO APPLE GOES FIRST ON ALL

10    ISSUES RELATED TO APPLE'S AFFIRMATIVE CASE; SAMSUNG THEN

11    DEFENDS ON ALL ISSUES OF APPLE'S AFFIRMATIVE CASE AND SAMSUNG

12    PRESENTS ITS AFFIRMATIVE CASE; THEN APPLE RESPONDS SOLELY TO

13    SAMSUNG'S AFFIRMATIVE CASE AND WE END IT.

14         OKAY?  YOU HAVE TWO HOURS EACH.

15         OKAY.  YOU'RE IN AGREEMENT, MR. NELSON AND MR. QUINN?

16              MR. NELSON:  YES.

17              MR. QUINN:  YES, YOUR HONOR.

18              THE COURT:  YOU'RE IN AGREEMENT?

19              MR. MCELHINNY:  I AM.  I ASSUME THE TWO HOURS WE CAN

20    DIVIDE AMONG LAWYERS AS WE CHOOSE?

21              THE COURT:  YOU CAN SPEND YOUR TWO HOURS HOWEVER YOU

22    WISH.

23              MR. MCELHINNY:  THANK YOU, YOUR HONOR.

24              MR. QUINN:  GREAT.

25              THE COURT:  OKAY.  SO THEN I WOULD CHANGE MY SCRIPT
```

```
1     ON THAT AND JUST PRESENT IT THAT WAY.

2         WHAT ELSE?  ANY OTHER --

3             MS. MAROULIS:  YOUR HONOR, I'M SORRY TO ASK, BUT CAN

4     WE HAVE UNTIL 1:00 O'CLOCK ON THE EXHIBIT BRIEF BECAUSE WE'RE

5     STILL HERE?

6             THE COURT:  THAT'S FINE.  OKAY.  WHAT ELSE?

7     OTHERWISE I WILL SEE YOU BACK AT 3:30.  ANYTHING ELSE?  NO?

8         OKAY.  THANK YOU.

9         (A RECESS WAS TAKEN FROM 11:03 A.M. TO 3:36 P.M.)

10        (JURY OUT AT 3:36 P.M.)

11            MR. NELSON:  DO YOU WANT US TO COME UP THERE, YOUR

12    HONOR?

13            THE COURT:  WHATEVER IS MORE CONVENIENT.

14            MR. NELSON:  I JUST DIDN'T KNOW IF YOU WANTED US UP

15    THERE.

16            THE COURT:  OH, NO.  I WOULD FIRST LIKE TO HEAR FROM

17    THE PARTIES AS TO YOUR ADDITIONAL THOUGHTS ABOUT HOW WE SHOULD

18    PROCEED.

19            MR. LEE:  YOUR HONOR, I'M HAPPY TO GO FIRST.

20            THE COURT:  OKAY.  GO AHEAD, PLEASE.

21            MR. LEE:  HAVING HAD A CHANCE TO READ THE OPINION AND

22    TALK TO MR. NELSON BRIEFLY, WE THINK THE BEST WAY TO PROCEED TO

23    ENSURE THAT THE RECORD IS WHAT IT SHOULD BE AND TO MAKE THE

24    RECORD AS APPEAL-PROOF AS POSSIBLE, IS TO REOPEN THE TESTIMONY

25    ON MONDAY MORNING, OR MAYBE MONDAY AFTERNOON -- WE HAVE A
```

```
 1          SCHEDULING ISSUE THAT I'D LIKE TO RAISE WITH YOUR HONOR.

 2                   THE COURT:  OKAY.

 3                   MR. LEE:  -- BUT TO OPEN IT FOR THE 45 MINUTES EACH

 4          TO ALLOW EACH OF THE TWO EXPERTS, AS YOUR HONOR DESCRIBED THIS

 5          MORNING, TO ADDRESS THE CLAIM CONSTRUCTION.

 6              I THINK WE WOULD SUGGEST THAT, YOU KNOW, WHEN THE JURY

 7          COMES BACK, YOUR HONOR MIGHT SAY SOMETHING ALONG THE LINES OF,

 8          "IN PREPARING MY FINAL JURY INSTRUCTIONS, I DECIDED THAT TWO

 9          ADDITIONAL CLAIM INTERPRETATIONS, CONSTRUCTIONS WOULD ASSIST

10          YOU IN YOUR DELIBERATIONS.  I'M GOING TO PROVIDE THEM TO YOU IN

11          MY FINAL INSTRUCTIONS.

12              "BUT TO ENSURE YOU HAVE THE NECESSARY EVIDENCE, I'VE

13          ALLOWED DR. MOWRY AND DR. JEFFAY TO COME BACK AND TESTIFY

14          BRIEFLY ON THE '647 PATENT."

15                   THE COURT:  DO YOU AGREE WITH THAT, MR. NELSON?

16                   MR. NELSON:  NO, ACTUALLY, I DON'T, YOUR HONOR.  AND

17          LET ME TELL YOU WHY.

18                   THE COURT:  UM-HUM.

19                   MR. NELSON:  SO LET'S JUST GO BACK IN TIME A BIT, AND

20          WE TALKED ABOUT THIS A LITTLE THIS MORNING, AND I WENT BACK

21          THROUGH THIS RECORD, AND I'LL EXPLAIN MYSELF WITH THAT.

22              BUT --

23                   THE COURT:  OH, WAIT.  LET ME FIRST FIND OUT, WHAT

24          ARE YOU DISAGREEING WITH?  YOU'RE NOT DISAGREEING WITH

25          REOPENING TESTIMONY; CORRECT?
```

```
1              MR. NELSON:  NO.  I THINK -- I ACTUALLY THINK THAT

2    THIS IS THE CASE THAT APPLE CHOSE TO TRY, YOUR HONOR, THAT THE

3    PARTIES OFFERED -- THE EXPERTS, IN THEIR EXPERT REPORTS, AS WE

4    DISCUSSED THIS MORNING, OFFERED, UNDER BOTH OF THESE

5    CONSTRUCTIONS, APPLE OFFERED THE CONSTRUCTION THAT THEY OFFERED

6    IN THE MOTOROLA CASE, AND SAMSUNG OFFERED THE CONSTRUCTION THAT

7    MOTOROLA OFFERED IN THE MOTOROLA CASE.

8         WE ALREADY TALKED ABOUT THE COLLATERAL ESTOPPEL ISSUES AND

9    THOSE THINGS, YOUR HONOR.

10        BUT IN THIS CASE APPLE CHOSE REPEATEDLY, IN FACT, THEY

11   TRIED TO SHUT DOWN, YOU'LL RECALL, MY QUESTIONING OF

12   DR. JEFFAY, AND I CAN DIRECT YOUR HONOR TO MS. KREVANS'S

13   OBJECTION --

14            THE COURT:  ALL RIGHT.  WELL, THIS IS NOT GOING TO BE

15    PERSUASIVE TO ME BECAUSE SAMSUNG HAS NEVER ASKED ME IN THE TWO

16    YEARS, MORE THAN TWO YEARS I'VE HAD THIS CASE, TO EVER CONSTRUE

17    ANALYZER SERVER OR LINKING TO DETECTED STRUCTURES.

18        AND THE CASE LAW IS NOT CLEAR THAT ANY DISTRICT COURT

19   WOULD BE OBLIGATED TO TAKE THE CLAIM CONSTRUCTION OF ANOTHER

20   DISTRICT COURT JUDGE AND, IN FACT, THERE ARE MANY CASES WHERE

21   DISTRICT COURTS HAVE SAID, BECAUSE CLAIM CONSTRUCTION IS

22   SOMETHING THAT GETS REVERSED BY THE FEDERAL CIRCUIT ABOUT 50

23   PERCENT OF THE TIME, WE'RE NOT GOING TO ADOPT ANOTHER TRIAL

24   COURT'S CONSTRUCTION.

25        SO, YOU KNOW, THIS IS NOT NECESSARILY PERSUASIVE.
```

```
 1              I'LL GO AHEAD AND LET YOU FINISH.

 2              MR. LEE:  AND YOUR HONOR --

 3              THE COURT:  BUT I DON'T THINK THERE'S BEEN ANY ERROR

 4    IN NOT ACCEPTING JUDGE POSNER'S CLAIM CONSTRUCTIONS IN THIS

 5    CASE.

 6              MR. NELSON:  OH, I -- THAT I UNDERSTAND, YOUR HONOR.

 7              THE COURT:  I THINK THAT YOU KNOW THAT THERE'S A

 8    FEDERAL CIRCUIT DECISION ON A QUESTION OF LAW, WE'RE IN A

 9    COMPLETELY DIFFERENT BALL GAME, AND I THINK IT'S BEST TO GIVE

10    THIS JURY THE FEDERAL CIRCUIT'S CONSTRUCTIONS OF THOSE TWO

11    TERMS WHICH HAVE ADOPTED JUDGE POSNER'S CONSTRUCTION.

12              MR. LEE:  AND, YOUR HONOR, IF I COULD JUST FINISH THE

13    THOUGHT I WAS TRYING TO OFFER YOUR HONOR?

14         I TOLD MR. NELSON, WHEN WE CONFERRED BRIEFLY, THAT WE

15    THOUGHT THAT REOPENING, HAVING THE JURORS GET THE TWO

16    CONSTRUCTIONS, HAVING THE EVIDENCE COME IN WAS THE RIGHT WAY TO

17    GO.

18         I SUGGESTED THAT IT WOULD BE NOT APPROPRIATE FOR EITHER OF

19    US TO ARGUE IN CLOSING THAT ONE OF THE OTHER EXPERTS USED THE

20    WRONG CLAIM CONSTRUCTION, WHICH NOW CONFLICTS WITH WHAT THE

21    COURT HAS DONE HERE, BECAUSE AT THE TIME PLAIN AND ORDINARY

22    MEANING WAS THE CLAIM CONSTRUCTION.

23              MR. NELSON TOLD ME THAT THEY WERE UNWILLING TO DO THAT,

24    THAT THEY PLANNED TO ARGUE THAT DR. MOWRY HAD USED THE WRONG

25    CLAIM INTERPRETATION, THAT THE NEW CLAIM INTERPRETATION WAS
```

```
 1        RIGHT, AND, THEREFORE, HE'S NOT TO BE BELIEVED.

 2             THAT DOESN'T SEEM RIGHT TO ME AT ALL.  I THINK THAT WHAT

 3        WE HAVE PROPOSED -- WHAT WE THOUGHT YOUR HONOR PROPOSED TODAY

 4        WAS REOPEN, YOUR HONOR GIVES THE INSTRUCTION, SOMETHING ALONG

 5        THE LINES THAT WE SUGGESTED, WE HAVE THE MOWRY/JEFFAY

 6        TESTIMONY, AND THEN WE ARGUE ON THE BASIS OF THAT.

 7             THE COURT:  I THINK THAT SAMSUNG SHOULD BE ABLE TO

 8        ARGUE THAT DR. MOWRY'S PREVIOUS -- I MEAN, HE -- IT LOOKS LIKE

 9        HE SLIPPED IN APPLE'S CONSTRUCTION THAT WAS REJECTED BY THE

10        FEDERAL CIRCUIT FOR ANALYZER SERVER IN HIS APRIL 22ND

11        TESTIMONY.

12             SO THEY SHOULD BE ABLE TO -- THEY SHOULD BE ABLE TO SAY,

13        LOOK, THAT WAS DIFFERENT THAN THE CONSTRUCTION THE COURT JUST

14        GAVE YOU.

15             MR. LEE:  BUT, YOUR HONOR, I THINK IT'S ONE THING TO

16        SAY THAT -- THE FIRST THING IS THERE WAS NO OBJECTION, AND HE

17        TESTIFIED AS TO THE PLAIN AND ORDINARY MEANING.

18             TO ALLOW THEM TO ARGUE THAT HE'S NOW SAYING SOMETHING THAT

19        CONTRADICTS WHAT YOUR HONOR HAS SAID IS VERY PREJUDICIAL.

20             IF THERE'S A FACT THAT HE TESTIFIED TO THAT THEY NOW CAN

21        CLAIM IS INCONSISTENT WITH YOUR HONOR'S CLAIM INTERPRETATION,

22        THAT'S FINE.

23             BUT, YOU KNOW, YOUR HONOR, THERE'S -- THERE'S A HOST OF

24        CASES, AND WE CAN GET THEM IF YOUR HONOR WOULD LIKE, THAT WHEN

25        AN EXPERT GIVES A CLAIM INTERPRETATION DURING THE CLAIM
```

```
 1    INTERPRETATION PROCESS, EVEN BY DECLARATION, IF THE COURT

 2    ADOPTS A DIFFERENT CLAIM INTERPRETATION, THE COURTS UNIFORMLY

 3    PRECLUDE A CROSS-EXAMINATION BASED UPON THAT PRIOR CLAIM

 4    INTERPRETATION.

 5         WHAT DR. MOWRY WAS DOING WAS TESTIFYING ON THE PLAIN AND

 6    ORDINARY MEANING, WHICH WAS THE RULE OF THE DAY.  SO HE WASN'T

 7    DOING ANYTHING INAPPROPRIATELY.

 8         THE RULES CHANGED BECAUSE OF THE FEDERAL CIRCUIT DECISION,

 9    BUT IT WOULD BE VERY PREJUDICIAL TO ALLOW THEM TO ARGUE THAT,

10    NO, NO, NO, HE NOW IS TESTIFYING -- HE TESTIFIED ON

11    APRIL 22ND --

12         THE COURT:  WELL, ON HIS -- IN HIS ORIGINAL

13    TESTIMONY, HE DIDN'T DEFINE WHAT THE PLAIN AND ORDINARY MEANING

14    WAS.  HE JUST SAID, I'M APPLYING THE PLAIN AND ORDINARY MEANING

15    AND THIS IS MY INFRINGEMENT ANALYSIS.

16         IT APPEARS THAT HE GOT IN APPLE'S CONSTRUCTION THAT

17    JUDGE POSNER REJECTED AND THE FEDERAL CIRCUIT REJECTED; AND IT

18    ALSO APPEARS THAT IN DESCRIBING AT LEAST, I THINK IT'S

19    SIDEKICK, THAT DR. JEFFAY GOT IN THAT IT'S SEPARATE FROM A

20    CLIENT.

21         SO IT SOUNDS LIKE BOTH SIDES DID NOT COMPLY WITH THE

22    COURT'S ORDER NOT TO --

23         MR. LEE:  WELL, THAT --

24         THE COURT:  -- GET INTO THIS MOTOROLA FIGHT IN THIS

25    TRIAL.  IT SOUNDS LIKE BOTH SIDES DIDN'T COMPLY WITH THE
```

```
 1      COURT'S ORDER IN THAT RESPECT.

 2              MR. LEE:  AND, YOUR HONOR, I WAS NOT TRYING TO SET UP

 3      A ONE-WAY RULE.

 4              THE COURT:  YEAH.

 5              MR. LEE:  I DON'T THINK THAT WE SHOULD BE ABLE TO BE

 6      ALLOWED TO ASK DR. JEFFAY WHETHER HE USED A CLAIM

 7      INTERPRETATION OF SIDEKICK THAT'S NOW INCONSISTENT WITH THE

 8      CLAIM INTERPRETATION YOUR HONOR HAS GIVEN.

 9          IT SHOULD GO BOTH WAYS, AND THAT'S THE FAIR WAY TO DO IT.

10          THERE WAS AN OBJECTION -- I THINK I KNOW THE TESTIMONY

11      YOUR HONOR IS REFERRING TO.  THERE WERE OBJECTIONS BEFORE, BUT

12      I DON'T THINK THERE WAS ANY OBJECTION AT THE TIME.

13          AND SO I THINK THERE ARE REALLY TWO ISSUES, YOUR HONOR.

14      ONE IS WHAT'S THE RIGHT PROCEDURE FOR DEALING WITH THE NEW

15      CLAIM INTERPRETATION.

16              THE COURT:  UM-HUM.

17              MR. LEE:  AND, SECONDLY, I THINK THAT ALLOWING

18      EITHER -- IF SOMEONE SAID, HERE'S A FACT, YOU COULD ARGUE THAT

19      HE SAID THIS IS A FACT AND ARGUE THAT IT HAS CONSEQUENCES UNDER

20      YOUR HONOR'S NEW CLAIM INTERPRETATION -- UNDER THE FEDERAL

21      CIRCUIT'S CLAIM INTERPRETATION.

22          BUT TO ALLOW EITHER PARTY TO SAY, THE EXPERT GAVE

23      TESTIMONY THAT'S INCONSISTENT WITH WHAT THE COURT'S NOW TOLD

24      YOU IS THE CLAIM INTERPRETATION WOULD BE VERY PREJUDICIAL.

25              THE COURT:  ALL RIGHT.  LET ME FIRST TRY TO IDENTIFY
```

```
1          WHAT NEEDS TO BE DECIDED.

2               ONE QUESTION IS, DO WE REOPEN TESTIMONY OR NOT?  AND I'M

3          GOING TO LET MR. NELSON FINISH HIS POINT ON THAT QUESTION.  SO

4          THAT'S NUMBER ONE, DO WE REOPEN TESTIMONY OR NOT?

5               NUMBER TWO -- WELL, IS THERE AT LEAST CONSENSUS THAT WE

6          SHOULD GIVE THE FEDERAL CIRCUIT'S CLAIM CONSTRUCTIONS TO THIS

7          JURY?

8               MR. NELSON:  YES.

9               MR. LEE:  YOUR HONOR, I THINK IF YOU'RE INCLINED NOT

10         TO REOPEN THE EVIDENCE AND TO ALLOW PEOPLE THAT ARGUE THAT

11         THEY'RE INCONSISTENT, THEN THERE WOULD NOT BE CONSENSUS.  WE'D

12         SAY WE'VE GOT TO GO WITH WHAT WE HAVE RIGHT NOW.

13              THE COURT:  OKAY.  WELL, THEN I MIGHT AS WELL JUST

14         TELL YOU WHICH WAY I'M LEANING.

15              I THINK THAT WE SHOULD GIVE THESE CONSTRUCTIONS FOR BOTH

16         ANALYZER SERVER AND LINKING TO DETECTED STRUCTURES TO THIS

17         JURY, BOTH IN THE HARD COPY AND WITH -- TO PUT IN THEIR JURY

18         BINDERS AND IN THE FINAL JURY INSTRUCTIONS.

19              I ALSO THINK WE SHOULD ALLOW REOPENING OF TESTIMONY.

20              IT MAY BE NOW, MR. NELSON, THAT YOU WANT 30 MINUTES AND

21         MR. LEE WANTS AN HOUR.  I DON'T KNOW.  MAYBE YOU SWITCHED

22         POSITIONS.  I'M OPEN ON HOW LONG TESTIMONY SHOULD BE REOPENED.

23              BUT I THINK THAT IS ONLY FAIR BECAUSE I HAD MADE THE

24         DECISION THAT, BECAUSE FEDERAL CIRCUIT REVERSALS OF DISTRICT

25         COURT CLAIM CONSTRUCTION IS SO HIGH, THAT IT WOULD BE RISKY TO
```

1     PUT JUDGE POSNER'S CONSTRUCTION IN THIS CASE, AND SO I THINK IT

2     IS SORT OF A NEW FACT TO SUDDENLY BRING THOSE IN AND THAT BOTH

3     SIDES SHOULD BE ABLE TO ADDRESS THEM.

4          BUT IF YOU WANT EVEN LESS TIME, YOU CAN PERSUADE ME.

5          GO AHEAD AND MAKE YOUR ARGUMENT AS TO WHY YOU THINK THERE

6     SHOULD BE NO REOPENING.

7          MR. NELSON:  SURE.  SO THAT -- THE REASON WHY I'M

8     SAYING, YOUR HONOR -- AND I DO THINK THERE'S ACTUALLY ANOTHER

9     POINT I'LL POINT YOU TO WHERE IN HIS FIRST TESTIMONY HE

10    ACTUALLY DID PROVIDE A DEFINITION OF ANALYZER SERVER AS WELL.

11         THE COURT:  OKAY.

12         MR. NELSON:  IT'S ACTUALLY AT PAGE 893, LINES 11,

13    THAT'S THE QUESTION, AND THE ANSWER GOES THROUGH LINE 20 WHERE

14    HE SAYS IT'S ACTUALLY DEFINED RIGHT THERE IN THE CLAIMS, YOU

15    KNOW, IT'S JUST A PIECE OF SOFTWARE THAT PERFORMS THESE

16    FUNCTIONS.

17         SO THAT'S -- HE OFFERED THOSE OPINIONS -- AND THIS IS MY

18    ISSUE, YOUR HONOR -- HE COULD HAVE CHOSEN TO DO, SIMILAR TO

19    WHAT THEY DID IN THE REPORTS, WHICH IS TO SAY, WELL, YOU KNOW,

20    EVEN IF IT'S SOMETHING THAT'S SEPARATE, RIGHT, I'VE SHOWN

21    SOMETHING THAT'S SEPARATE, AND THIS IS WHY IT'S SEPARATE FROM

22    THE APPLICATION, WHICH IS CONSISTENT WITH WHAT DR. JEFFAY

23    TESTIFIED TO.

24         HE DIDN'T TESTIFY TO THE CLAIM CONSTRUCTIONS, BUT HE

25    TESTIFIED THAT THE SHARED LIBRARY IS PART OF THE APPLICATION.

1     THERE'S -- IT ACTUALLY IS THE APPLICATION, IT RUNS IN THE

2     APPLICATION.

3          AND YOU HEARD SIMILAR TESTIMONY FROM MS. HACKBORN AS WELL

4     FROM A FACTUAL BASIS ABOUT HOW THINGS ARE IMPLEMENTED IN

5     ANDROID.

6          SO WE CHOSE TO OFFER A CASE THAT WAS CONSISTENT SUCH THAT

7     WE COULD MAKE THE ARGUMENT REGARDLESS OF THE CONSTRUCTION UNDER

8     THE PLAIN MEANING IF THE JUDGE POSNER CONSTRUCTIONS WERE

9     AFFIRMED.

10          APPLE, ON THE OTHER HAND, AFFIRMATIVELY CHOSE TO TRY TO

11     USE THE PLAIN MEANING AS A SWORD IN THIS CASE.  THEY OFFERED

12     TESTIMONY FROM DR. JEFFAY THAT THE PLAIN MEANING IS AN ANALYZER

13     SERVER.  IT'S JUST A PIECE OF SOFTWARE THAT PERFORMS THESE

14     FUNCTIONS.

15          THEY DID THAT IN HIS OPENING, THEY DID IT AGAIN THAT YOUR

16     HONOR POINTED TO AT -- IT'S 270 -- 2788 IN THE TRIAL TESTIMONY.

17     THIS WAS THE APRIL 22ND TESTIMONY YOU'RE REFERRING TO.

18          AND I DON'T, UNFORTUNATELY, HAVE THE LINE NUMBER, BUT IT'S

19     2788 TO 2789.  I THINK WE'RE REFERRING TO THE SAME TESTIMONY.

20          SO WHAT HE'S DONE IN THIS CASE, NOT ONLY DID THEY TRY TO

21     SHUT DOWN MY QUESTIONING OF DR. JEFFAY SAYING THAT HE'S OFFERED

22     NO OPINIONS ON ANYTHING OTHER THAN THE TWO OFFERED CLAIM

23     CONSTRUCTIONS IN THE CASE, WHICH I UNDERSTAND YOUR HONOR

24     OVERRULED, RIGHT, AND THAT WAS GOOD, BUT THEY TRIED TO USE THAT

25     AS A SWORD TO STOP MY EXPERT FROM EVEN TESTIFYING ON THIS.

2979

1          THEN FURTHER THEY OFFERED, THROUGH DR. MOWRY, THESE

2     REPEATED STATEMENTS OF HERE'S WHAT AN ANALYZER SERVER IS TO ONE

3     OF ORDINARY SKILL IN THE ART, TO TRY TO OFFER THOSE, AND HIS

4     OPINIONS ARE INFUSED WITH IT.

5          HE OFFERED NO OPINIONS IN THIS CASE CONCERNING THE USE OF

6     THIS SHARED LIBRARY THAT'S, THAT'S COMPILED AS PART OF THE

7     APPLICATION WOULD SATISFY A SERVER LIMITATION WHERE THE SERVER

8     HAS TO BE SEPARATE.

9          SO WHAT HE WOULD BE DOING NOW, TO GET UP ON THE STAND,

10    GIVEN THESE DEFINITIONS WE KNOW HE WORKED WITH IN HIS TESTIMONY

11    IN THE CASE, IS LITERALLY CHANGING HIS TESTIMONY.  SO HE WOULD

12    GET UP THERE AND SAY, WELL, IT REALLY IS SEPARATE FOR THESE

13    REASONS.

14         AND WE ALREADY KNOW -- THIS CAME UP DURING DAUBERT.  SO

15    WE'D BE BASICALLY PUT IN A SITUATION -- WE KNOW THAT THERE'S A

16    PROPENSITY FROM THIS GENTLEMAN TO CHANGE HIS TESTIMONY.  IT'S

17    HAPPENED A NUMBER OF TIMES IN THE PAST.

18         SO NOW WHAT WE'RE DOING, WHEN APPLE CHOSE TO GO AHEAD AND

19    AFFIRMATIVELY OFFER THAT CASE, WOULD BE TO ALLOW THEIR EXPERT

20    TO GET UP AND SAY, WELL, THIS IS WHAT I WAS SAYING ALL ALONG

21    WHEN WE KNOW HE WASN'T SAYING THAT.

22         AND THEN FURTHER, MR. LEE IS SUGGESTING THAT I CAN'T EVEN

23    CROSS-EXAMINE HIM ON WHAT IT WAS, YOU KNOW, THE DEFINITIONS

24    THAT HE WAS PROVIDING HIS OPINIONS UNDER THAT HE GAVE.

25         SO I THINK IT BASICALLY ALLOWS THEM -- THEY CHOSE --

```
 1            THE COURT:  WELL, I'VE ALREADY SAID THAT YOU SHOULD

 2      BE ABLE TO CROSS ON THAT AND YOU SHOULD BE ABLE TO ARGUE THAT

 3      IN CLOSING.

 4            MR. NELSON:  YES, AND I UNDERSTAND THAT.

 5        MY CONCERN HERE, YOUR HONOR, IS JUST I DO THINK THAT THIS

 6      GIVES APPLE A DO-OVER, THAT THEY REALLY MADE A CHOICE, A

 7      STRATEGIC CHOICE, SO STRATEGIC THAT THEY ACTUALLY TRIED TO GUT

 8      MY CASE, RIGHT, LITERALLY NOT ALLOW MY EXPERT TO TESTIFY ABOUT

 9      THE ANALYZER SERVER AND THE LINKING ACTIONS LIMITATIONS.

10      AND --

11            THE COURT:  BUT YOUR EXPERT DID --

12            MR. NELSON:  NO, NO --

13            THE COURT:  -- WITH REGARD TO, I BELIEVE IT'S

14      SIDEKICK, HE DID TESTIFY THAT THIS WAS SEPARATE.

15        I DON'T HAVE ALL MY NOTES HERE, BUT --

16            MR. NELSON:  RIGHT, HE DID --

17            THE COURT:  YOUR -- JUST AS MR. MOWRY GOT HIS

18      CONSTRUCTIONS IN, I FIND THAT DR. JEFFAY DID AS WELL.

19            MR. NELSON:  WELL, HE -- I UNDERSTAND WHAT YOU'RE

20      SAYING, YOUR HONOR.

21            THE COURT:  YEAH.  YOU PROBABLY KNOW THE SAME PARTS

22      I'M THINKING OF.

23            MR. NELSON:  YES, I DO KNOW.

24            THE COURT:  HE GOT HIS IN.

25            MR. NELSON:  HE DIDN'T OFFER A CONSTRUCTION.  HE
```

```
 1        NEVER SAID THAT BECAUSE YOUR HONOR HAD CAUTIONED ME, AND THAT

 2        WASN'T THE PLAN BECAUSE I DON'T THINK EXPERTS ARE SUPPOSED TO

 3        TESTIFY THAT THIS IS WHAT AN ANALYZER SERVER IS.

 4              THE COURT:  WELL, WHEN HE WAS TRYING TO CRITICIZE

 5        DR. HAUSER'S DESCRIPTION OF QUICK LINKS, HE GETS IN TAP TO DIAL

 6        AND HE -- THERE WERE A NUMBER OF POINTS WHERE I THINK THAT HE

 7        DID GET IN THESE CONSTRUCTIONS OF JUDGE POSNER.

 8              LET ME JUST SAY, NO QUESTION IN MY MIND WE NEED TO GIVE

 9        THESE CONSTRUCTIONS.  THIS IS A QUESTION -- THIS IS AN ISSUE OF

10        LAW.  THE FEDERAL CIRCUIT HAS DECIDED THESE NEED TO GO TO THIS

11        JURY, AND TO NOT GIVE THEM TO THIS JURY WOULD, YOU KNOW, WOULD

12        BE ERROR.

13              NOW, I THINK IT IS ONLY FAIR TO DO A REOPENING OF

14        TESTIMONY.

15              HOW MUCH TIME, MR. NELSON?  DO YOU WANT TO CHANGE YOUR

16        PROPOSAL FROM THIS MORNING?

17              UNDERSTANDING THAT I'M GOING TO ALLOW SOME REOPENING, WHAT

18        DO YOU THINK IS FAIR?

19              MR. NELSON:  I THINK THAT THE TIMEFRAMES THAT WE

20        TALKED ABOUT, YOU KNOW, 45 MINUTES TO AN HOUR --

21              THE COURT:  DO YOU THINK THAT'S STILL OKAY?

22              MR. NELSON:  YES.

23              THE COURT:  HOW MUCH DO YOU WANT?

24              MR. NELSON:  ONE HOUR.

25              THE COURT:  LET ME HEAR FROM APPLE.
```

```
1              MR. LEE:  I THINK AN HOUR EACH SIDE IS FINE, YOUR

2        HONOR.

3              THE COURT:  THAT'S FINE.  OKAY.  SO THAT'S HOW WE'RE

4        GOING TO PROCEED THEN.

5          OKAY.  NOW, LET ME ASK, DOES THIS IMPACT ANY OTHER

6        WITNESSES?  DOES THIS IMPACT ANY OTHER THEORIES?  OR IS IT

7        SUFFICIENT JUST TO HAVE DR. JEFFAY AND DR. MOWRY?

8              MR. LEE:  I THINK THE LATTER, YOUR HONOR.  I THINK

9        IT'S SUFFICIENT TO HAVE DR. JEFFAY AND DR. MOWRY.

10             MR. NELSON:  WELL, IT'S CERTAINLY -- IT DOES AFFECT

11       THE DAMAGES ANALYSIS AS WELL, YOUR HONOR, IN THE SENSE -- IN

12       THIS SENSE.  YOU TALKED ABOUT IN DR. HAUSER'S SURVEY --

13             THE COURT:  UM-HUM.

14             MR. NELSON:  -- AND DECIDEDLY, AND DR. MOWRY

15       TESTIFIED TO THIS, THERE WAS NO MENTION OF ANY ARCHITECTURE IN

16       THERE AT ALL, OF ANY OF THE SPECIFIC SOFTWARE ARCHITECTURE

17       THAT'S REQUIRED WITH THAT.

18             THE COURT:  UM-HUM.

19             MR. NELSON:  SO THAT INFUSES A BIG PROBLEM, AND, I

20       MEAN, THERE'S THIS 900 MILLION -- OR PROBABLY ABOUT 700 MILLION

21       OF THEIR DAMAGES CLAIM UNDER THE '647 IS BASED UPON THAT SURVEY

22       IN SOME WAY, SHAPE, OR FORM.

23             THE COURT:  OKAY.

24             MR. NELSON:  AND FURTHER, APPLE ACTUALLY

25       AFFIRMATIVELY TOOK THE POSITION, IN APPEAL TO THE FEDERAL
```

```
 1        CIRCUIT, THAT UNDER THESE CLAIM CONSTRUCTIONS -- MEANING THE

 2        ONES THAT ARE NOW AFFIRMED -- THAT THIS PATENT IS TRIVIAL.

 3        THEY'VE REDUCED THE INVENTION TO SOMETHING THAT'S TRIVIAL.

 4             YET THEY OBVIOUSLY DIDN'T RUN A DAMAGES CASE CONSISTENT

 5        WITH THAT, CERTAINLY BASED UPON THE HAUSER SURVEY, THAT WAS

 6        CONSISTENT WITH THAT CLAIM CONSTRUCTION.

 7             SO IT ACTUALLY DOES INFUSE A PROBLEM THERE AS WELL.

 8             NOW, HOW THAT'S ADDRESSED IS -- THAT'S A SEPARATE ISSUE.

 9        I -- YOU KNOW, I MEAN, CERTAINLY IT'S SOMETHING WE SHOULD BE

10        ABLE TO ARGUE, I THINK, ABSOLUTELY.

11             AND I DON'T --

12             THE COURT:  WELL, I'M NOT GOING TO LET YOU ARGUE

13        WHATEVER APPLE ARGUED TO THE FEDERAL CIRCUIT.

14             MR. NELSON:  NO, NO, NO, NO.  I'M NOT SAYING THAT,

15        YOUR HONOR.  I UNDERSTAND THAT.

16             THE COURT:  OKAY.

17             MR. NELSON:  WHAT I'M SAYING IS THAT TO BE ABLE TO

18        ARGUE THAT NONE OF THIS IS -- IN TERMS OF THE SOFTWARE

19        ARCHITECTURE OR ANY OF THAT, YOU NEVER HEARD A WORD ABOUT THAT

20        WITH RESPECT TO ANY OF THE DAMAGES CLAIMS.

21             THE COURT:  RIGHT.  BUT THAT WAS A CRITICISM THAT YOU

22        HAD OF DR. HAUSER'S DESCRIPTION OF QUICK LINKS EVEN BEFORE

23        THESE CLAIM CONSTRUCTIONS FROM THE CIRCUIT, RIGHT?  I MEAN --

24             MR. NELSON:  YEAH, THAT IS --

25             THE COURT:  I MEAN, THAT IS TRUE, RIGHT?
```

```
1              MR. NELSON:  WE DID HAVE THIS CRITICISM.  ALTHOUGH IT

2      WOULD ALSO AFFECT THIS IDEA -- AND THIS IS A BIG PART OF THE

3      CLAIM AS WELL WITH THE BLACKOUT DAMAGES ISSUE, THE ONE MONTH

4      VERSUS FOUR MONTH DESIGN AROUND ISSUE.

5          BUT -- SO IT'S --

6              THE COURT:  I DON'T SEE THAT LINK AT ALL.  DO YOU

7      WANT TO EXPLAIN THAT?

8              MR. NELSON:  WELL, IT DOES -- I UNDERSTAND WHAT

9      YOU'RE SAYING.  IT WOULD GO TO THE EASE OF DESIGN AROUND.

10         BUT THAT GOES BACK TO -- I UNDERSTAND IT GOES BACK TO YOUR

11     HONOR'S ORIGINAL POINT ABOUT WHAT CLAIM CONSTRUCTIONS WE WERE

12     OPERATING UNDER IN THE CASE.

13         WHAT I'M SAYING IS THAT, AT LEAST POTENTIALLY, THERE WOULD

14     BE ISSUES THAT THE DAMAGES PEOPLE WOULD NEED TO ADDRESS.

15         BUT JUST BECAUSE I DON'T WANT TO -- YOU KNOW, FOR

16     CONSIDERATION, WE'RE TALKING ABOUT THESE ISSUES.

17             THE COURT:  UM-HUM.

18             MR. NELSON:  I DON'T WANT TO SPRING THAT ON YOUR

19     HONOR LATER --

20             THE COURT:  UM-HUM.

21             MR. NELSON:  -- AND HAVE YOU SAY, MR. NELSON, WHY

22     DIDN'T YOU EVEN RAISE THIS WITH ME SO THAT WE COULD DISCUSS IT?

23             THE COURT:  REMIND ME, IN THE MOTOROLA DECISION,

24     THERE WAS A FOUR MONTH DESIGN AROUND PERIOD -- OH, BUT THAT WAS

25     ON THE '949, RIGHT?  THAT WASN'T AS TO THE '647.
```

```
 1              MR. LEE:  I THINK THAT'S CORRECT.

 2              MR. NELSON:  ACTUALLY, I THINK -- WELL, THERE

 3    WASN'T -- THERE WAS IN THE DAMAGES REPORT.  THAT ACTUALLY CAME

 4    FROM THE -- MY RECOLLECTION, YOUR HONOR, IS IT CAME FROM THE

 5    HTC CASE.  SO THERE WAS MENTION OF THAT.

 6              THE COURT:  RIGHT.  BUT I THOUGHT THAT THAT WAS

 7    ADOPTED -- MAYBE IT WAS ADOPTED BY DR. NAPPER, APPLE'S DAMAGES

 8    EXPERT IN THE MOTOROLA CASE.  HE TOOK THE ITC DESIGN AROUND

 9    TIMEFRAME OF FOUR MONTHS AND THEN APPLIED IT IN THE MOTOROLA

10    CASE.  OKAY.  BUT THAT DOESN'T AFFECT -- THAT WASN'T AS TO THE

11    '647.

12              MR. NELSON:  NO, IT ACTUALLY WAS THE '647, YOUR

13    HONOR.

14              THE COURT:  OH, IT WAS THE '647?

15              MR. NELSON:  YEAH.  BUT IT DOESN'T -- THIS -- WE'RE

16    TALKING ABOUT TWO DIFFERENT ISSUES.  IT HAPPENED TO BE FOUR

17    MONTHS, ONE MONTH.

18         BUT THERE --

19              THE COURT:  UM-HUM.

20              MR. LEE:  YOUR HONOR --

21              THE COURT:  WELL, LET ME HEAR FROM -- LET ME HEAR

22    FROM MR. LEE.  WHAT DO YOU THINK ABOUT THE DAMAGES?  I -- HOW

23    DOES THIS AFFECT THE DAMAGES CASE?

24              MR. LEE:  YOUR HONOR, THIS IS THE REASON I WANTED TO

25    CONFER WITH MR. NELSON TO SEE WHETHER THIS WAS GOING TO GET
```

```
1        BIGGER AND BIGGER, AND THAT'S WHAT'S HAPPENING.  NOW IT'S

2    DR. HAUSER, NOW IT'S DAMAGES.

3        IF THAT'S WHERE WE ARE, RESPECTFULLY, WHILE HE ACCUSES US

4    OF USING A SWORD, THEY'RE THE ONES WHO DIDN'T MOVE FOR

5    CONSTRUCTION ON THIS, EVER.

6        I MEAN, IF WE GO BACK TO FIRST PRINCIPLES HERE, YOUR HONOR

7    HAS, AT LEAST ON FIVE OCCASIONS BY MY COUNT, ONE, CONSTRUED

8    TERMS, RIGHT, AND THEN LATER CONSTRUED TERMS, AND THEN ON THREE

9    OTHER OCCASIONS OFFERED TO CONSTRUE ADDITIONAL TERMS FOR US.

10       IF WE'RE IN THIS SITUATION TODAY AND THEY'RE SO CERTAIN IT

11   WAS RIGHT, THEY SHOULD HAVE ASKED FOR A CONSTRUCTION OF

12   ANALYZER SERVER.

13       AND INSTEAD, THEY DIDN'T.  THERE IS A COLLATERAL ESTOPPEL

14   MOTION.

15       AND SO BY THE TIME WE TRIED THIS CASE, IT WAS PLAIN AND

16   ORDINARY MEANING, LIKE IT WAS FOR ALL THE OTHER TERMS THAT THE

17   EXPERTS MENTIONED.

18       AND SO DR. MOWRY PLAYED UNDER THOSE RULES, DR. JEFFAY

19   PLAYED UNDER THOSE RULES, AND NOW WE HAVE THE FEDERAL CIRCUIT

20   DECISION, AND I THINK THE QUESTION IS WHAT TO DO ABOUT IT SO

21   THAT THE JURY HAS A CORRECT CLAIM INTERPRETATION.

22       BUT REALLY WHAT'S HAPPENING IS MR. NELSON IS TRYING TO

23   TAKE A SITUATION WHICH BEGINS FROM THEIR NOT HAVING ASKED FOR

24   CLAIM INTERPRETATION AND NOW IT'S -- WE GET TO TALK TO

25   DR. MOWRY AND DR. JEFFAY AGAIN.
```

```
 1          I'M NOT SURE IF HE'S SAYING THAT DR. HAUSER OR THEIR

 2     DAMAGES SURVEY PERSON GETS TO COME BACK.  I'M NOT SURE IF HE'S

 3     SAYING THAT THEIR DR. CHEVALIER COMES BACK.

 4              THE COURT:  WELL, THAT WAS MY NEXT QUESTION.  WHAT IS

 5      THE REMEDY AS TO ANY AFFECT ON DAMAGES?

 6          I DON'T THINK IT MEANS THAT YOU GET TO REOPEN THE ONE

 7     MONTH ISSUE.  I THINK THAT'S BEING OPPORTUNISTIC.

 8          BUT I DO WANT TO HEAR YOU OUT ON WHETHER THESE CLAIM

 9     CONSTRUCTIONS -- NOW, SOME OF THE CONSTRUCTIONS ARE POTENTIALLY

10     BROADER, MAKE THE CLAIM BROADER.

11          SOME OF THEM MAKE IT MORE NARROW.

12          HOW DO WE REMEDY ANY DAMAGES ISSUES NOW?

13              MR. NELSON:  WELL --

14              THE COURT:  YOU DO WANT A MINUTE JUST TO CONFER WITH

15      YOUR TEAM?

16              MR. NELSON:  PROBABLY A GOOD IDEA JUST BECAUSE I

17     DON'T KNOW AS MUCH ABOUT DAMAGES.

18              THE COURT:  YEAH, WHY DON'T YOU DO THAT?  WHY DON'T,

19     BOTH SIDES, YOU WANT TO TAKE A MINUTE AND JUST CONFER WITH WHAT

20     YOUR RECOMMENDATION IS ON HOW TO DEAL WITH ANY DAMAGES

21     CONSEQUENCES OF THESE NEW CONSTRUCTIONS?

22              MR. NELSON:  OKAY.  THANK YOU, YOUR HONOR.

23              THE COURT:  OKAY.  HOW MUCH TIME DO YOU THINK YOU

24     WANT FOR THAT DISCUSSION?  SHOULD WE JUST BE IN RECESS AND THEN

25      COME BACK?
```

```
1                 MR. NELSON:  MAYBE WE SHOULD TAKE FIVE OR TEN

2      MINUTES, YOUR HONOR, JUST SO I CAN MAKE SURE THAT -- I'M NOT AS

3      COMFORTABLE WITH THE DAMAGES ISSUE --

4                 THE COURT:  SURE.  AND WE'VE GOT TO GET THIS RIGHT.

5           ALL RIGHT.  WHY DON'T WE TAKE A TEN MINUTE BREAK AND THEN

6      WE'LL MEET AGAIN.  OKAY?

7           THANK YOU.

8                 MR. NELSON:  OKAY.  THANK YOU.

9           (RECESS FROM 3:59 P.M. UNTIL 4:31 P.M.)

10                THE COURT:  OKAY.  GOOD AFTERNOON.  WELCOME BACK.

11          SO WHAT HAVE YOU DECIDED?

12                MR. NELSON:  SO, ON THE DAMAGES ISSUES, YOUR HONOR --

13                THE COURT:  UM-HUM.

14                MR. NELSON:  -- YOU KNOW, I MEAN -- I MEAN -- THERE'S

15     OBVIOUSLY THINGS THAT ARE INFUSED THROUGHOUT, BUT I THINK WE

16     ARGUE IT.  I DON'T THINK BRINGING BACK WITNESSES IS GOING TO

17     CHANGE THE SITUATION.

18          SO I DON'T THINK WE NEED TO DELVE INTO BRINGING BACK THE

19     DAMAGES EXPERTS OR THE OTHER, THE OTHER PEOPLE.

20                THE COURT:  OKAY.  LET ME HEAR FROM --

21                MR. LEE:  I AGREE.

22                THE COURT:  OH, I SHOULD HAVE CHECKED WITH YOU

23     SOONER.

24                MR. NELSON:  OH, YOU WANT US TO BRING BACK THE --

25                THE COURT:  NO.  SO IF YOU DON'T WANT ANY NEW
```

```
 1        EVIDENCE ON DAMAGES AND YOU ONLY WANT THE TECHNICAL EXPERT
 2        TESTIMONY THAT WE DISCUSSED EARLIER, THAT ACTUALLY MAKES IT
 3        MUCH SIMPLER BECAUSE I WAS ENVISIONING ALL THESE OTHER
 4        ALTERNATIVE SCENARIOS.
 5             NOW, LET'S TALK ABOUT THE SCOPE OF WHAT THE TECHNICAL
 6        EXPERTS CAN TESTIFY TO SO THERE'S NOT A LOT OF FIGHTING ON
 7        MONDAY.
 8             MR. NELSON:  SO IT SEEMS LIKE IT SHOULD JUST BE AS TO
 9        THOSE TWO LIMITATIONS, YOUR HONOR, THE ANALYZER SERVER
10        LIMITATION AND THEN THE LINKING OF A STRUCTURE TO ACTIONS, OR
11        ACTIONS TO THE DETECTED STRUCTURES.  I THINK I SAID IT
12        BACKWARDS.
13             THE COURT:  SO NO DISCUSSION OF INFRINGEMENT OR
14        INVALIDITY AT ALL OR NON-INFRINGING ALTERNATIVES?
15             MR. NELSON:  NO, NO.  I'M SORRY.  I DIDN'T MEAN TO
16        SUGGEST THAT.
17             YES, TESTIMONY CONCERNING INFRINGEMENT WITH RESPECT TO
18        THOSE ELEMENTS; TESTIMONY CONCERNING INVALIDITY WITH RESPECT TO
19        THOSE ELEMENTS; TESTIMONY CONCERNING THE --
20             THE COURT:  -- NON-INFRINGING ALTERNATIVES WITH
21        RESPECT TO THOSE?
22             MR. NELSON:  CORRECT.
23             MR. LEE:  RIGHT.
24             THE COURT:  DO YOU AGREE WITH THAT?
25             MR. LEE:  I DO.  AND I THINK PROBABLY THE REASON IT
```

```
 1     CAN BE DONE SHORTLY IS, AS TO OTHER LIMITATIONS, THE TESTIMONY

 2     IS WHAT THE TESTIMONY IS.  WE'LL JUST FOCUS ON THOSE TWO.

 3              MR. NELSON:  RIGHT.  I DON'T THINK THE TESTIMONY

 4     CHANGES WITH RESPECT TO THE OTHER LIMITATIONS.

 5              THE COURT:  SO YOU'RE NOT GOING TO BE ADDRESSING ANY

 6     OTHER LIMITATIONS OTHER THAN ANALYZER SERVER AND --

 7          (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

 8              MR. LEE:  AND I THINK WE BOTH AGREE THAT ON WHATEVER

 9     ISSUES THERE ARE, IT'S WHAT'S IN THEIR EXPERT REPORTS.

10              MR. NELSON:  YEAH.  THEY ALREADY HAVE EVERYTHING IN

11     THEIR --

12              THE COURT:  OKAY.  SO IT'S LIMITED TO THE EXPERT

13     REPORTS.

14              MR. LEE:  THE REASON I RAISE IT AS TO NON-INFRINGING

15     ALTERNATIVES, THERE ARE SPECIFIC NON-INFRINGING ALTERNATIVES IN

16     THE REPORTS.  THAT'S WHAT IT WOULD BE LIMITED TO.

17              MR. NELSON:  I UNDERSTAND THAT.

18              MR. LEE:  OKAY.  OKAY.  I THINK WE'RE ON THE SAME

19     PAGE.

20              THE COURT:  OKAY.  ARE THERE MORE NON-INFRINGING

21     ALTERNATIVES THAN -- WHAT CAME UP DURING THE TRIAL SEEMED TO BE

22     JUST SIDEKICK, AND THEN SORT OF TAP TO DIAL CAME IN INDIRECTLY

23     THROUGH THE HAUSER QUESTION.

24          OR WHAT WERE THE NON-INFRINGING ALTERNATIVES THAT --

25              MR. NELSON:  YOU MEAN BASED ON THE NEW CONSTRUCTION?
```

```
 1              THE COURT:  OR THAT YOU PREVIOUSLY HAVE -- OTHER THAN

 2    SIDEKICK, WHAT ELSE WAS THERE IN THE TRIAL?

 3              MR. NELSON:  WELL, SIDEKICK WAS THE, THE PRIOR ART

 4    FOR THE INVALIDITY OPINION.

 5              THE COURT:  UM-HUM.

 6              MR. NELSON:  SO THEN NON-INFRINGING ALTERNATIVES WERE

 7    WHAT HE HAD ADDRESSED PRIMARILY WAS THE POP-UP MENU ISSUE.

 8              THE COURT:  OH, JUST POP-UP MENU.

 9              MR. NELSON:  WE HAD THAT WITH RESPECT TO THE CLAIM

10    ISSUE AND SUCH.

11              THE COURT:  OH, THAT'S RIGHT.  I'M SORRY.  YOU'RE

12    RIGHT.  SIDEKICK WAS AS TO INVALIDITY.  THE POP-UP MENU WAS AS

13    TO NON-INFRINGING ALTERNATIVES, BUT YOU'RE NOW SAYING YOU WOULD

14    GO INTO MORE ALTERNATIVES THAN JUST THE POP-UP MENU?

15              MR. LEE:  NOT US.

16              THE COURT:  THAT WOULD BE IT?

17              MR. NELSON:  I THINK WHAT HE'S SAYING IS HE DOESN'T

18    WANT HIM TO GO INTO THINGS THAT AREN'T IN HIS REPORT.

19              THE COURT:  WHAT NON-INFRINGING ALTERNATIVES ARE IN

20    THE REPORT OTHER THAN THE POP-UP MENU?

21              MR. NELSON:  THERE'S FIVE OR SIX, BUT --

22              MR. LEE:  I THINK POP-UP MENU.

23         (DISCUSSION OFF THE RECORD BETWEEN DEFENSE COUNSEL.)

24              MR. NELSON:  WE PROBABLY DON'T NEED TO EXPAND IT,

25    YOUR HONOR.
```

```
 1              MR. LEE:  OKAY.  WITH THE POP-UP MENU, WE'RE FINE.

 2              THE COURT:  SO IT'S GOING TO BE POP-UP MENU, NOT --

 3      THAT'S THE SOLE NON-INFRINGING ALTERNATIVE, AND YOU'LL TALK

 4      ABOUT SIDEKICK FOR INVALIDITY.

 5              MR. NELSON:  YEAH.  I MEAN, THE BEST NON-INFRINGING

 6      ALTERNATIVE IS WHAT WE'RE DOING, SO -- BUT THAT'S THE

 7      NON-INFRINGEMENT PIECE.

 8         YOU'RE TALKING ABOUT WHAT WE WOULD OFFER TO SAY, OKAY, IF

 9      IT'S DIFFERENT THAN WHAT THEY'RE ACCUSING, IF YOU WERE GOING TO

10      CHANGE IT, THEN WHAT WOULD YOU CHANGE IT TO, AND THAT WOULD BE

11      THE POP-UP MENU ISSUE, YES.

12              THE COURT:  OKAY.  ALL RIGHT.  SO THEN LET'S TALK

13      ABOUT WHEN YOU'RE GOING TO --- YOU'LL HAVE TO FILE THEN ANY

14      OBJECTIONS TO THIS TESTIMONY BY SUNDAY SO WE CAN RULE ON THEM

15      WITH YOUR JMOL MOTIONS AND YOUR CLOSING OBJECTIONS.

16              MR. LEE:  YOUR HONOR, TWO THINGS.

17              THE COURT:  YES.

18              MR. LEE:  ONE IS ON THIS BROADER QUESTION OF WHETHER

19      THE WITNESSES CAN BE CROSS-EXAMINED BASED UPON THEIR AGREEMENT

20      OR DISAGREEMENT WITH THE NEW CONSTRUCTION, IF WE COULD JUST

21      HAVE A SEPARATE THREE PAGE BRIEF TO ADDRESS THAT, YOUR HONOR,

22      BY TOMORROW MORNING OR SO?

23         THAT'S AN ISSUE THAT COULD CUT ACROSS THINGS.

24              THE COURT:  OKAY.  WHY DON'T YOU ALSO INCLUDE IN THAT

25      WHAT SHOULD BE TOLD TO THE JURY?
```

```
1              MR. LEE:  OKAY.

2              THE COURT:  I WAS INCLINED, BEFORE WE SPOKE, TO JUST

3       SAY THAT "I HAVE DECIDED TO PROVIDE SOME CLARIFICATION ON THE

4       CONSTRUCTIONS FOR THIS PATENT," AND TO JUST READ THEM.

5              AND I DID NOT WANT TO MENTION THE FEDERAL CIRCUIT AND GET

6       INTO THE MOTOROLA CASE, AND I THINK WE SHOULD JUST KEEP IT

7       CLEAN AND SAY, "LOOK, I'VE UNILATERALLY DECIDED TO PROVIDE

8       FURTHER CLARIFICATION, THESE ARE THE CONSTRUCTIONS, AND I'VE

9       DECIDED TO GIVE BOTH SIDES SOME ADDITIONAL TIME TO RESPOND TO

10      THESE NEW CONSTRUCTIONS" AND JUST LEAVE IT AT THAT.

11             MR. LEE:  I THINK THAT'S, THAT'S FINE.  AND IF WE

12      COULD HAVE UNTIL 10:00 O'CLOCK TOMORROW TO GIVE YOU BOTH,

13      SIMULTANEOUSLY, A BRIEF ON WHAT THE FAIR SCOPE OF CROSS IS,

14      PLUS OUR PROPOSED CONSTRUCTION.

15             MR. NELSON:  I THOUGHT WE HAD ALREADY DECIDED THE

16      FAIR SCOPE OF CROSS.

17             MR. LEE:  NO, THAT'S THE ISSUE.  YOU'VE RAISED IT,

18      YOUR HONOR HAS GIVEN US YOUR INCLINATION, BUT I THINK THERE ARE

19      CASES THAT WE WOULD LIKE TO PUT BEFORE YOUR HONOR SO YOU

20      CONSIDER THEM BEFORE YOU DECIDE ON THIS SPECIFIC CROSS ISSUE.

21             THE COURT:  ALL RIGHT.  YOU'LL GET TWO PAGES.  OKAY?

22             MR. LEE:  OKAY.

23             THE COURT:  AND WHAT DO YOU WANT FOR THE BRIEFING OF

24      THAT?  DO YOU WANT IT TO BE SIMULTANEOUS OR -- OR TO MEET AND

25      CONFER AND TRY TO RESPOND TO EACH OTHER'S POSITIONS?  WHAT
```

```
1    WOULD YOU LIKE?

2              MR. NELSON:  IT'S PROBABLY MORE EFFECTIVE IF WE'RE

3    RESPONDING TO A POSITION.  I THINK THAT WOULD PROBABLY BE MORE

4    HELPFUL FOR YOUR HONOR THAN PERHAPS TWO SHIPS THAT PASS IN THE

5    NIGHT.

6              THE COURT:  WHEN CAN YOU FILE, MR. LEE?

7              MR. LEE:  WOULD YOU LIKE BOTH BY 10:00 O'CLOCK

8    TOMORROW?  WE COULD FILE BY 10:00 O'CLOCK TOMORROW AND --

9              MR. NELSON:  AND THEN WE COULD RESPOND --

10             MR. LEE:  YEAH.

11             MR. NELSON:  WHEN WOULD YOU LIKE THE RESPONSE?

12             THE COURT:  NO.  I'D LIKE THE RESPONSE AT 10:00

13   O'CLOCK TOMORROW.

14             MR. NELSON:  OH, SO THEN WE NEED THEIRS SOONER.

15             THE COURT:  SOONER, YEAH.  BECAUSE, REMEMBER, WE HAVE

16   THE JMOL MOTIONS; WE'RE FINALIZING JURY INSTRUCTIONS; THERE'S

17   STILL OUTSTANDING ISSUES WITH THE EXHIBIT LIST; THERE'S STILL

18   OUTSTANDING ISSUES WITH THE --

19             MR. LEE:  HOW ABOUT 9:00 O'CLOCK TONIGHT?

20             THE COURT:  -- THE VERDICT FORM.

21             MR. LEE:  9:00 O'CLOCK TONIGHT.

22             THE COURT:  OKAY.  SO 9:00 P.M. ON FRIDAY, AND THEN

23   10:00 A.M. ON SATURDAY FOR THE RESPONSE, TWO PAGES EACH.

24             MR. NELSON:  OKAY.

25             THE COURT:  ALL RIGHT.  WHAT ELSE DO WE NEED TO --
```

```
 1        LET ME ASK, ARE THERE ANY OTHER APPEALS PENDING THAT MIGHT COME

 2   DOWN NEXT WEEK?

 3        (LAUGHTER.)

 4             THE COURT:  I MEAN, I DON'T KNOW.  ARE THERE ANY ITC

 5   APPEALS?  I MEAN, IS THERE ANYTHING ELSE THAT MIGHT HIT US NEXT

 6   WEEK?

 7             MR. NELSON:  INVOLVING THESE PATENTS?

 8             THE COURT:  YES.

 9             MR. LEE:  I DON'T THINK SO.

10             MR. NELSON:  NOT ONES THAT I'M INVOLVED IN.

11             THE COURT:  OKAY.  ANYONE ELSE KNOW OF ANY OTHER

12   APPEALS COMING WITH REGARD TO THESE PATENTS?  NO?

13             MS. KREVANS:  I DON'T THINK SO, YOUR HONOR.

14             MR. LEE:  I DON'T THINK SO, YOUR HONOR.

15             THE COURT:  OKAY.  THIS IS THE ONLY ONE.

16             MR. LEE:  I THINK THE NEXT APPEAL BETWEEN THE PARTIES

17   IS GOING TO BE ARGUED THE FIRST WEEK IN MAY.

18             THE COURT:  WHAT'S THAT?

19             MS. MAROULIS:  THAT'S ITC.

20             MR. LEE:  AND IT'S WAY OFF.

21             THE COURT:  OKAY.  ALL RIGHT.

22             MS. MAROULIS:  YOUR HONOR, MAY I RAISE THE ISSUE OF

23   CLOSING DEMONSTRATIVES?

24             THE COURT:  YES.

25             MS. KREVANS:  ACTUALLY, MS. MAROULIS, BEFORE YOU DO
```

```
 1        THAT, I THINK WE HAD ONE LITTLE THING HANGING OUT FROM WHAT

 2     YOUR HONOR SAID.

 3            WITH RESPECT TO DISCLOSURES FOR THESE TWO WITNESSES ON

 4     MONDAY, I DON'T THINK THERE NEED TO BE ANY DISCLOSURES BECAUSE

 5     THERE WON'T BE ANY NEW EXHIBITS, AND I THINK THE ONLY

 6     DEMONSTRATIVE EITHER SIDE SHOULD USE IS JUST A DEMONSTRATIVE TO

 7     SHOW THE JURY THE CONSTRUCTION AND --

 8            THE COURT:  YOU DON'T EVEN NEED THAT BECAUSE I'M

 9     GOING TO HAND THEM A COPY.

10            MR. LEE:  RIGHT.

11            MS. KREVANS:  IF YOU'RE GOING TO --

12            THE COURT:  ACTUALLY, WHY DON'T YOU ALL PREPARE THAT

13     FOR THE JURY BINDER?

14            MR. NELSON:  YEAH, WE CAN DO THAT.

15            THE COURT:  WOULD YOU DO THAT, PLEASE?

16            MS. MAROULIS:  WE WILL.

17            MS. KREVANS:  THEN THERE'S NO DISCLOSURES.

18            THE COURT:  NO DEMONSTRATIVES, NO NEW EXHIBITS.  CAN

19     I GET AGREEMENT ON THAT?

20            MR. NELSON:  NO NEW EXHIBITS.

21            MS. MAROULIS:  SO IT'S OKAY TO GO WITH EXHIBITS THAT

22     WERE PREVIOUSLY DISCLOSED TO EACH OTHER THROUGH THE DISCLOSURE

23     PROCESS?

24            THE COURT:  I THINK THAT'S FAIR.  SO YOU'RE NOT

25     LIMITED -- WELL, THEN THERE WILL BE OBJECTIONS, RIGHT?  IF
```

```
1      YOU'RE NOT LIMITED TO WHAT'S ALREADY BEEN ADMITTED IN THE

2      TRIAL, THEN THERE WILL BE NEW EXHIBITS.

3           I MEAN, I GUESS I DON'T UNDERSTAND.  IF IT'S THE SAME

4      PRIOR ART FOR INVALIDITY, IF IT'S THE SAME NON-INFRINGING

5      ALTERNATIVE, WHY SHOULD THERE BE NEW EXHIBITS?

6           MS. KREVANS:  I DON'T SEE WHY THERE WOULD BE.  THAT'S

7      WHAT I WAS SAYING.  IT SEEMS TO ME THAT IT'S THE ADMITTED

8      EXHIBITS THAT -- THERE'S NOTHING NEW.  THE ONLY THING NEW HERE

9      IS THE CONSTRUCTION.

10           THE COURT:  RIGHT.  AND SAMSUNG, YOUR POSITION IS

11      YOU'VE ALWAYS BEEN NICE AND STEADY AND CONSISTENT THE WHOLE

12      TIME, SO THERE REALLY SHOULD BE NOTHING NEW.

13           MR. NELSON:  I DON'T THINK THERE IS.  WE'VE ALREADY

14      DISCLOSED DEMONSTRATIVES THAT WERE ALREADY DISCLOSED WITH

15      DR. JEFFAY, BUT WE WOULDN'T USE DIFFERENT ONES WITH RESPECT TO

16      THOSE.

17           MS. KREVANS:  AS LONG AS IT'S SOMETHING THAT'S BEEN

18      USED AND RESOLVED, THERE SHOULDN'T BE ANYTHING FOR THE COURT.

19           MR. NELSON:  YEAH.  I MEAN, THIS IS MAINLY

20      EXPLANATION TESTIMONY.  THERE'S NOT A LOT TO ILLUSTRATE, I

21      DON'T BELIEVE, ANYWAY.

22           SO I THINK THAT WORKS.

23           MS. KREVANS:  YEAH.  IF IT'S DEMONSTRATIVES ALREADY

24      SHOWN AND EXHIBITS ALREADY ADMITTED, THERE SHOULDN'T BE

25      OBJECTION AND SO I THINK WE'D BE FINE.
```

```
 1              THE COURT:  OKAY.  SO THE PARTIES THEN WILL ONLY USE

 2    ADMITTED TRIAL EXHIBITS AND DEMONSTRATIVES THAT HAVE ALREADY

 3    BEEN PRESENTED TO THE JURY.  OKAY?

 4         OKAY.  SO WILL YOU ALL WANT A JMOL MOTION?

 5              MS. KREVANS:  I'M SORRY?

 6              THE COURT:  AFTER THE ADDITIONAL TESTIMONY ON MONDAY,

 7    WILL YOU WANT AN ADDITIONAL JMOL MOTION?

 8              MS. MAROULIS:  ON THIS LIMITED ISSUE, YES.

 9              MS. KREVANS:  WE MIGHT NEED TO, YOUR HONOR.  BUT

10    COULD WE FILE IT AS A SUPPLEMENT SO WE DIDN'T HAVE TO REPEAT

11    EVERYTHING AND WE COULD FILE A SUPPLEMENT TO THE PRIOR JMOL

12    MOTION AND MAKE THEM SHORT?

13              THE COURT:  WELL, I'M ONLY GOING TO GIVE YOU TWO

14    PAGES ANYWAY.  WILL ONE PAGE BE ENOUGH?

15              MR. NELSON:  WHICH?

16              THE COURT:  DO YOU THINK YOU NEED -- THIS IS FOR THE

17    ADDITIONAL JMOL JUST BASED ON THE NEW TESTIMONY FROM MONDAY.

18              MR. NELSON:  YEAH, WE CAN -- IT DEPENDS ON WHEN WE DO

19    THE TESTIMONY MONDAY, BUT IT SHOULDN'T -- WE SHOULD BE ABLE TO

20    DO IT BY TUESDAY MORNING, RIGHT?

21              MS. MAROULIS:  YEAH.

22              THE COURT:  NO.  THE JMOL HAS GOT TO BE DECIDED --

23    THIS IS THE PROBLEM THAT WE HAVE.  IF YOU RECALL, OUR EXPERT --

24    OUR WITNESS -- OUR JUROR WHO SITS IN SEAT NUMBER 2 ON THE BACK

25    ROW IS LEAVING ON VACATION ON MAY 7TH.
```

```
 1            MR. NELSON:  RIGHT.

 2            THE COURT:  I HAVE MULTIPLE SENTENCINGS WEDNESDAY

 3     MORNING; I'VE GOT A POTENTIAL MDL COMING IN WEDNESDAY

 4     AFTERNOON.  WE'VE GOT TO GET THIS CLOSING DONE ON TUESDAY.

 5            MR. NELSON:  WE CAN DO IT TOMORROW, YOUR HONOR.

 6     YOU'RE TALKING ABOUT THE JMOL -- YOU'RE TALKING ABOUT YOU'D

 7     NEED TO HAVE THE JMOL, BECAUSE WE'D NEED TO HAVE IT AFTER THE

 8     TESTIMONY.

 9            THE COURT:  RIGHT.  SO I REALLY NEED IT BY, YOU KNOW,

10     EVERYTHING NO LATER THAN 5:00 O'CLOCK ON MONDAY.

11            MR. NELSON:  OKAY.

12            MS. MAROULIS:  YES, YOUR HONOR.

13            MS. KREVANS:  YES.

14            THE COURT:  OKAY.  NOW, CLOSINGS, FOR YOUR OBJECTIONS

15     FOR CLOSING DEMONSTRATIVES, PROBABLY IT MAKES SENSE TO GIVE

16     THEM TO ME FOR THE '647, RIGHT, BECAUSE THEY'LL PROBABLY CHANGE

17     ON SUNDAY.

18         I MEAN, I WAS PLANNING ON YOUR FILING THEM ON SUNDAY

19     MORNING, I BELIEVE.

20            MS. MAROULIS:  SO, YOUR HONOR, WE'VE TALKED BRIEFLY

21     ABOUT CLOSING DEMONSTRATIVES AND THE PARTIES WANTED TO MAKE THE

22     FOLLOWING PROPOSAL:  WE WILL FILE ALL OF OUR SLIDES AND THEIR

23     OBJECTIONS HOPEFULLY BY MONDAY MORNING, BECAUSE NOW WE'RE

24     CLOSING ON TUESDAY IF THAT'S ACCEPTABLE TO THE COURT; AND THEN

25     THE PARTIES RESERVE THE RIGHT TO FILE ONE OR TWO EXTRA SLIDES
```

```
 1        ON WHAT HAPPENS MONDAY SEPARATELY.  IS THAT OKAY?

 2               THE COURT:  I WOULD PREFER TO RULE ON ALL OF THE

 3        NON-'647 OBJECTIONS ON SUNDAY AND THEN ONLY HAVE MONDAY, THE

 4        ONLY ISSUES ON MONDAY BE THE JMOL THAT'S SPECIFIC TO THE '647

 5        AND THE NEW TESTIMONY, AND THEN ANY OBJECTIONS TO CLOSING

 6        DEMONSTRATIVES THAT RESULT FROM THE NEW TESTIMONY ON MONDAY.

 7          CAN WE DO THAT?

 8               MS. MAROULIS:  IS IT POSSIBLE, YOUR HONOR, INSTEAD OF

 9        THE 9:00 A.M. FILING, TO FILE IT ON SUNDAY AT 3:00 P.M.?  THE

10        REASON IS THAT ALL OF US HAVE BEEN HERE MOST OF THE DAY TODAY

11        AND WE WERE PLANNING, BOTH SIDES, TO WORK ON THE CLOSING SLIDES

12        TODAY.

13               THE COURT:  I SEE.

14               MS. MAROULIS:  SO IF AT ALL POSSIBLE, WE'D LIKE

15        LATER --

16               THE COURT:  YOU NEED MORE TIME.

17               MS. MAROULIS:  -- A LATER FILING DESIGN ON SUNDAY.

18               THE COURT:  A LATER TIME IS FINE.  COULD YOU DO IT

19        SLIGHTLY EARLIER THAN 3:00 THOUGH?

20               MS. MAROULIS:  YES.

21               THE COURT:  WHEN COULD YOU DO IT?  COULD WE DO NOON?

22        OR IS THAT NOT ENOUGH?  THAT'S ONLY THREE ADDITIONAL HOURS FOR

23        YOU.

24               MS. MAROULIS:  1:00 O'CLOCK?

25               THE COURT:  THAT'S FINE.  OKAY.  SO THE CLOSING
```

```
 1        OBJECTIONS WILL BE FILED ON SUNDAY AT 1:00 O'CLOCK.

 2            ALL RIGHT.  WHAT ELSE?  ANYTHING ELSE?  SHOULD I RESERVE

 3       RULING ON THE '647 JMOLS THAT YOU FILE TODAY?

 4                MR. LEE:  I THINK YOU SHOULD, YOUR HONOR.

 5                MS. MAROULIS:  YOUR HONOR, OUR POSITION IS THAT YOU

 6       CAN RULE NOW, BUT IF IT'S INEFFICIENT FOR THE COURT TO RULE

 7       TWICE, THEN YOU COULD.

 8                THE COURT:  OKAY.  WELL, I WILL TAKE A LOOK AT THEM

 9       AND MAKE A DECISION.

10            ALL RIGHT.  WHAT ELSE DO WE NEED TO RESOLVE?

11            OH, YOU SAID YOU HAD A WITNESS AVAILABILITY ISSUE.

12                MR. NELSON:  THEY DID.

13                THE COURT:  OH.

14                MR. NELSON:  THERE'S ONE QUESTION I HAD ON THE CROSS

15       THINGS FIRST, YOUR HONOR.

16            YOU DIDN'T LIST, LIKE, PRIOR TESTIMONY, BUT I ASSUME DEPS

17       AND HIS DECLARATION, LIKE I USED THE P.I. DECLARATION THE FIRST

18       TIME AROUND AND THINGS LIKE THAT ARE FAIR GAME.

19            THEY WERE ALREADY DISCLOSED.  I'M NOT TALKING ABOUT THINGS

20       THAT AREN'T DISCLOSED.  I'M NOT TALKING ABOUT THINGS FROM THE

21       MOTO CASE BECAUSE I DON'T EVEN WANT TO GET INTO THAT, BUT I'D

22       LIKE THE DEPS FROM THIS CASE, THE P.I. --

23                THE COURT:  THERE ARE CERTAIN THINGS WITH REGARD TO

24       THE P.I., AT LEAST CERTAIN DEMONSTRATIVES THAT I HAD SUSTAINED

25       OBJECTIONS TO.
```

```
 1            MR. NELSON:  YEAH, NONE OF THOSE THINGS.

 2            THE COURT:  OKAY.

 3            MR. NELSON:  I'M TALKING ABOUT THE DECLARATION

 4     ITSELF.

 5            THE COURT:  ALL RIGHT.  ANY OBJECTION TO THAT?  I

 6     WOULDN'T -- I THINK THAT WOULD BE FINE.

 7            MR. LEE:  IT DEPENDS WHAT THE PORTION OF IT IS,

 8     BUT --

 9            MS. KREVANS:  I MEAN, I HAVE NO IDEA -- I MEAN,

10     BEFORE WHAT THEY DID IS THEY HAD DEMONSTRATIVES WHICH WERE

11     CLEARLY OBJECTIONABLE TO CERTAIN PARTS OF IT, THOSE OBJECTIONS

12     WERE SUSTAINED, SO I'M NOT QUITE SURE WHAT MR. NELSON IS

13     PROPOSING.

14            MR. NELSON:  I'LL TELL YOU WHAT -- I'LL TELL YOU

15     BEFORE I USE IT IF I'M GOING TO USE IT SO YOU HAVE A CHANCE TO

16     RAISE AN OBJECTION BECAUSE I'LL KNOW -- SO I CAN DO THAT.  THAT

17     WAY YOU DON'T -- WE DON'T GET INTO A BACK AND FORTH.

18            THE COURT:  WHY DON'T YOU DO A MUTUAL DISCLOSURE?

19     LET'S SET THAT NOW SO THERE ARE NOT ANY PROBLEMS.

20            MR. NELSON:  YEAH, WE CAN --

21            THE COURT:  WHEN ARE YOU GOING TO DO THAT?  LET'S SET

22     THE SCHEDULE.  I LIKE DEADLINES.

23            MS. KREVANS:  YOUR HONOR, WE WON'T EVEN HAVE A CHANCE

24     TO TALK TO PROFESSOR MOWRY UNTIL TOMORROW IS THE ISSUE, WHICH

25     IS WHY I THOUGHT IT WOULD BE EASIER IF WE JUST LIMITED THIS TO
```

```
 1        THINGS THAT WERE ALREADY IN EVIDENCE AND SLIDES THAT WERE
 2        ALREADY USED.
 3              IF THE P.I. DECLARATION IS THE ONLY ISSUE, WHY DON'T WE
 4        JUST AGREE THAT YOU'LL LET US KNOW WHAT PARTS OF IT YOU MIGHT
 5        WANT TO ASK ABOUT?
 6              THE ISSUE WITH THE P.I. IS NEITHER PARTY CAN REALLY FAIRLY
 7        ADDRESS THE COURT IN FRONT OF THE JURY IF THERE'S A DISPUTE
 8        ABOUT IT, SO IT DOES NEED TO BE RESOLVED IN ADVANCE.
 9              MR. NELSON:  THAT'S FINE, YOUR HONOR.  I'LL LET
10        THEM -- THAT WOULD BE THE ONLY ISSUE AND I, FRANKLY, DON'T
11        ANTICIPATE THAT THERE WOULD BE MUCH.  WE DON'T HAVE A LOT OF
12        TIME AND THAT'S NOT WHERE I'M GOING TO FOCUS MY TIME.
13              MS. KREVANS:  WHY DON'T YOU LET US KNOW TOMORROW IF
14        YOU WANT TO USE PART OF IT, AND IF SO, WE'LL FILE OBJECTIONS
15        AND BRIEFING SUNDAY MORNING AT 9:00 OR SOMETHING LIKE THAT.
16              THE COURT:  SUNDAY MORNING AT 9:00.
17              MS. KREVANS:  AND THEN YOU'LL DECIDE NOT TO USE IT.
18              THE COURT:  ANYTHING ELSE THAT WE HAVE TO RESOLVE
19        TODAY?
20              MR. LEE:  I THINK NOT, YOUR HONOR.
21              MS. KREVANS:  OH, THIS IS A REALLY MINOR THING, YOUR
22        HONOR, AND IT'S ONE THE PARTIES AGREE ON.
23              THE COURT:  YES.
24              MS. KREVANS:  WE DID ASCERTAIN THAT JX 36E, IN FACT,
25        WAS THE WRONG PRODUCT.  IT WAS A PRODUCT THAT WAS DROPPED FROM
```

1    THE CASE, AND SO THE PARTIES JOINTLY HAVE AGREED TO WITHDRAW

2    JX 36E BECAUSE IT DOESN'T BELONG IN THE CASE.

3            THE COURT:  THAT'S FINE.  DID YOU FIND ANY OTHERS

4    THAT SHOULD BE WITHDRAWN?  I HAVEN'T SEEN YOUR RESPONSE ON THE

5    ACCUSED PRODUCTS.

6            MS. KREVANS:  NOT WITHDRAWN.  WE DID FIND TWO OTHER

7    PRODUCTS IN ALL OF THE CHECKING WHERE THE SOFTWARE VERSION ON

8    THEM WAS NOT THE ONES REFLECTED ON THEM, THE VERSION REFLECTED

9    IN THE PARTIES' RECORDS, SO WE'RE GOING TO GIVE YOU A CHART

10   SHOWING YOU WHICH TWO THOSE ARE.

11           THE COURT:  WHEN AM I GOING TO GET THAT?

12           MS. KREVANS:  WHEN CAN WE FILE THE CHART?

13           MR. BUROKER:  A COUPLE HOURS.  WHAT DO YOU NEED?

14           MS. KREVANS:  WE -- I'M SURE WE CAN FILE IT BY --

15   WHAT TIME IS IT?  6:00?

16           THE COURT:  DO YOU NEED TO FILE A NEW EXHIBIT LIST?

17           MS. KREVANS:  I THINK A NEW LIST IS BEING FILED NOW.

18           MS. MAROULIS:  IT'S BEING FILED AT 5:00 O'CLOCK, AND

19   EXHIBIT 36E IS ALREADY OFF.

20           MS. KREVANS:  IT'LL HAVE TWO NEW EXHIBITS FROM TODAY,

21   AND IT'LL HAVE 36E TAKEN OFF OF IT.  WE CAN FILE BY 6:00, I

22   THINK.

23           THE COURT:  OKAY.  THAT'S FINE.

24           MS. KREVANS:  WE ONLY HAVE TWO CHANGES.  IT'S JUST

25   THAT IT'S A DIFFICULT DOCUMENT TO FORMAT.

3005

```
 1            THE COURT:  AND THE EXHIBIT LIST SHOULD NOT CHANGE ON

 2    MONDAY BECAUSE NO NEW EXHIBITS ARE BEING ADMITTED.

 3            MS. KREVANS:  EXACTLY.  AND I THINK THE PARTIES STILL

 4    HAVE A PLAN TO GET TOGETHER AND MAKE BINDER SETS AND HAVE IT

 5    ALL AGREE AND THAT CAN PROCEED.

 6            THE COURT:  THAT'S FINE.  THAT'S FINE.

 7         OKAY.  WHAT ELSE?  ANYTHING ELSE FOR TODAY?

 8            MS. KREVANS:  OH, WE WORKED IT OUT.  WE CAN GET HIM

 9    HERE IN TIME FOR MONDAY MORNING.

10            THE COURT:  YES, I THINK WE NEED TO DO THAT BECAUSE

11    THE JMOL NEEDS TO BE RULED ON ON MONDAY NIGHT.  EVERYTHING

12    NEEDS TO BE FINALIZED BY MONDAY NIGHT BECAUSE WE ARE CLOSING ON

13    TUESDAY.  OKAY?

14         ALL RIGHT.  THANK YOU.

15            MR. NELSON:  THANK YOU, YOUR HONOR.

16            THE COURT:  THANK YOU VERY MUCH.

17            MS. KREVANS:  THANK YOU, YOUR HONOR.

18         (PAUSE IN PROCEEDINGS.)

19            MS. KREVANS:  OH, YOUR HONOR, WE DID HAVE ONE THING.

20            THE COURT:  OKAY.  WHAT'S THAT?

21            MS. KREVANS:  I THINK BOTH PARTIES, JUST FOR

22    SCHEDULING PURPOSES, ARE INTERESTED IN WHETHER THE COURT

23    INTENDS TO CHARGE THE JURY ON MONDAY AFTER WE'RE DONE WITH THE

24    TESTIMONY AND THEN WE CAN START FIRST THING TUESDAY WITH

25    CLOSINGS, OR WHETHER YOU'RE GOING TO DO THE CHARGING AND THE
```

```
 1        CLOSINGS ON TUESDAY.

 2             WE WOULD LOVE TO START FRESH WITH THE CLOSINGS TUESDAY

 3        MORNING IF IT'S NOT INCONVENIENT FOR THE COURT TO CHARGE ON

 4        MONDAY.

 5                  THE COURT:  UM-HUM.  WELL -- OKAY.  THAT JUST

 6        REQUIRES US TO FINALIZE THE JURY INSTRUCTIONS THIS WEEKEND FOR

 7        THEM TO BE DISTRIBUTED TO THE JURORS BEFORE, WHAT, 11:00

 8        O'CLOCK ON MONDAY.  WE CAN TRY FOR THAT.  I JUST CAN'T

 9        GUARANTEE IT.  WITH EVERYTHING ELSE WE HAVE GOING, I JUST CAN'T

10        GUARANTEE WE'LL GET THAT DONE.

11                  MS. KREVANS:  WE UNDERSTAND.

12                  THE COURT:  OKAY.  SO WHEN WE FILE OUR JURY

13        INSTRUCTIONS, WHICH WILL BE SOME TIME TONIGHT, THEN WHEN CAN

14        YOU GIVE US A RESPONSE?

15                  MS. MAROULIS:  TOMORROW AFTERNOON?  IS THAT

16        SUFFICIENT?

17                  MR. LEE:  TOMORROW AFTERNOON IS GOOD.

18                  THE COURT:  OKAY.  SO CAN WE SAY SATURDAY AT 2:00

19        O'CLOCK?

20                  MS. MAROULIS:  4:00, IF POSSIBLE.

21                  THE COURT:  OKAY.  THAT'S FINE.  THAT'S FINE.

22        SATURDAY AT 4:00.

23             ALL RIGHT.  THEN WE'LL PROBABLY ALSO TRY TO TURN AROUND

24        ANOTHER VERSION, AND AT THAT POINT YOU CAN ONLY COMMENT ON

25        TYPOS OR SOMETHING LIKE THAT.  YOUR OBJECTIONS ARE PRESERVED
```

1      FOR APPEAL.

2                MS. KREVANS:  UNDERSTOOD, YOUR HONOR.

3                MR. LEE:  THANK YOU, YOUR HONOR.

4                THE COURT:  ALL RIGHT.  THANK YOU.

5                MS. MAROULIS:  THANK YOU, YOUR HONOR.

6           (THE EVENING RECESS WAS TAKEN AT 4:53 P.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                       CERTIFICATE OF REPORTERS

4

5

6

7            WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11           THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16           IRENE RODRIGUEZ, CSR, CRR
             CERTIFICATE NUMBER 8076
17

18

19           LEE-ANNE SHORTRIDGE, CSR, CRR
             CERTIFICATE NUMBER 9595
20

21           DATED:  APRIL 25, 2014

22

23

24

25