1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                SAN JOSE DIVISION

4

5

   APPLE INC., A CALIFORNIA        )  C-12-00630 LHK
6  CORPORATION,                    )
                                   )  SAN JOSE, CALIFORNIA
7              PLAINTIFF,           )
                                   )  APRIL 28, 2014
8         VS.                      )
                                   )  VOLUME 13
9  SAMSUNG ELECTRONICS CO., LTD.,  )
   A KOREAN BUSINESS ENTITY;       )  PAGES 3008-3193
10 SAMSUNG ELECTRONICS AMERICA,    )
   INC., A NEW YORK CORPORATION;   )
11 SAMSUNG TELECOMMUNICATIONS      )
   AMERICA, LLC, A DELAWARE        )
12 LIMITED LIABILITY COMPANY,      )
                                   )
13             DEFENDANTS.         )
   _____ )

14

15

16          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE LUCY H. KOH
17         UNITED STATES DISTRICT JUDGE

18

19

20          APPEARANCES ON NEXT PAGE

21

22 OFFICIAL COURT REPORTERS:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
23                              IRENE RODRIGUEZ, CSR, CRR
                                CERTIFICATE NUMBER 8074

24

25      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

3009

```
 1

 2      A P P E A R A N C E S:

 3      FOR PLAINTIFF          MORRISON & FOERSTER
        APPLE:                 BY:  HAROLD J. MCELHINNY
 4                                   RACHEL KREVANS
                               425 MARKET STREET
 5                             SAN FRANCISCO, CALIFORNIA  94105

 6

 7                             WILMER, CUTLER, PICKERING,
                               HALE AND DORR
 8                             BY:  WILLIAM F. LEE
                               60 STATE STREET
 9                             BOSTON, MASSACHUSETTS  02109

10                             BY:  MARK D. SELWYN
                               950 PAGE MILL ROAD
11                             PALO ALTO, CALIFORNIA  94304

12

13      FOR SAMSUNG:           QUINN, EMANUEL, URQUHART & SULLIVAN
                               BY:  JOHN B. QUINN
14                                   WILLIAM PRICE
                               865 S. FIGUEROA STREET, FLOOR 10
15                             LOS ANGELES, CALIFORNIA  90017

16                             BY:  VICTORIA F. MAROULIS
                                     KEVIN B. JOHNSON
17                             555 TWIN DOLPHIN DRIVE
                               SUITE 560
18                             REDWOOD SHORES, CALIFORNIA  94065

19

20

21

22

23

24

25
```

```
1

2                        INDEX OF WITNESSES

3        PLAINTIFF'S

4        TODD MOWRY
              FURTHER REDIRECT EXAM BY MS. KREVANS      P. 3016
5             FURTHER RECROSS-EXAM BY MR. NELSON        P. 3032
              FURTHER REDIRECT EXAM BY MS. KREVANS      P. 3100
6             FURTHER RECROSS-EXAM BY MR. NELSON        P. 3105
              FURTHER REDIRECT EXAM BY MS. KREVANS      P. 3109
7             FURTHER RECROSS-EXAM BY MR. NELSON        P. 3111

8

9

10       DEFENDANTS'

11       KEVIN JEFFAY
              FURTHER REDIRECT EXAM BY MR. NELSON       P. 3054
12            FURTHER RECROSS-EXAM BY MS. KREVANS       P. 3095

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3011

<pre>
 1

 2                        INDEX OF EXHIBITS

 3                               MARKED       ADMITTED

 4    PLAINTIFF'S

 5

 6

 7    DEFENDANTS'

 8    520                      3191

 9

10

11    JOINT

12

13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

```
1    SAN JOSE, CALIFORNIA                    APRIL 28, 2014

2                    P R O C E E D I N G S

3        (JURY OUT AT 9:01 A.M.)

4            THE COURT:  GOOD MORNING AND WELCOME.  PLEASE TAKE A

5    SEAT.

6        IS THIS A NEW -- DOES THIS REPLACE THE 453A THAT WAS FILED

7    OVER THE WEEKEND?  I'M NOT SURE WHY I HAVE ANOTHER ONE.

8            MS. MAROULIS:  YOUR HONOR, WE FILED EVERYTHING ON

9    SATURDAY, SO WE DID NOT SUBMIT --

10           THE COURT:  OKAY.  THIS MUST BE AN EXTRA COPY.

11       ARE BOTH SIDES REQUESTING THE CHANGE TO JURY INSTRUCTION

12   NUMBER 23?  IS THAT A REQUEST TO CHANGE "ADOPTED" TO "ADAPTED"

13   BY BOTH SIDES?

14           MS. MAROULIS:  YES, YOUR HONOR.

15           MS. KREVANS:  YES.

16           THE COURT:  ALL RIGHT.  SO --

17           THE CLERK:  I THINK IT'S NUMBER 29, NUMBER 29.

18           THE COURT:  IS IT 23 OR 29?

19           MS. KREVANS:  29, YOUR HONOR, AT LINE 11.

20           THE COURT:  AND WHAT WAS THE TITLE OF THAT

21   INSTRUCTION?

22           MS. MAROULIS:  IT SHOULD BE CONTRIBUTORY

23   INFRINGEMENT.

24           MS. KREVANS:  CONTRIBUTORY PATENT INFRINGEMENT, YOUR

25   HONOR.
```

```
1              THE COURT:  OKAY.  THEN LET ME JUST ASK, IT'S

2    CONTRIBUTORY INFRINGEMENT?

3              MS. KREVANS:  CONTRIBUTORY INFRINGEMENT.

4              MS. MAROULIS:  YES.

5              THE COURT:  OKAY.  THEN I'M GOING TO ASK,

6    MS. PARKER BROWN, IF YOU CAN SEND AN E-MAIL TO VIKRAM.

7         JUST TO CONFIRM THAT WE'RE ALL LOOKING AT THE RIGHT ONE,

8    SO 29, CONTRIBUTORY INFRINGEMENT, IF YOU COULD LET HIM KNOW 29,

9    CONTRIBUTORY INFRINGEMENT, IT'S CHANGING THE WORD "ADOPTED" TO

10   "ADAPTED" IN LINE --

11        WHAT'S THE LINE NUMBER, PLEASE?

12             MS. KREVANS:  11, YOUR HONOR.

13             THE COURT:  IN LINE 11.

14        OKAY.  SO WE WILL HAVE THAT REFILED THIS MORNING.  CAN YOU

15   HAVE YOUR TEAMS THEN MAKE A COPY -- MAKE THE COPIES?

16             MS. KREVANS:  YES, YOUR HONOR.

17             THE COURT:  OKAY.  SO ARE YOU PREPARED, AFTER THE

18   TRIAL TESTIMONY TODAY, TO ARGUE THE JMOLS ON THE '647?

19             MS. KREVANS:  YES, YOUR HONOR.

20             MR. NELSON:  YES, WE CAN DO THAT, YOUR HONOR.

21             THE COURT:  OKAY, GREAT.  WHAT I WAS ENVISIONING IS

22   IF WE TAKE UNTIL APPROXIMATELY 11:30 THIS MORNING, HAVE THE

23   JURORS GO OUT FOR AN HOUR AND A HALF LUNCH, HALF AN HOUR LONGER

24   THAN NORMAL; WE'LL HANDLE THE JMOL FROM ROUGHLY 11:30 TO 12:00;

25   HAVE EVERYONE COME BACK AT 1:00 AND READ THEM THE JURY
```

```
1        INSTRUCTIONS AND EVERYONE CAN START FRESH TOMORROW WITH

2    CLOSINGS.

3              MR. NELSON:  OKAY.

4              THE COURT:  OKAY.  THAT'S THE SCHEDULE.  THAT'S ALSO

5    THE SCHEDULE THAT I'M GOING TO TELL THEM.  OKAY?

6              MS. KREVANS:  YES.  THANK YOU, YOUR HONOR.

7              THE COURT:  ARE WE READY TO GO THIS MORNING?

8              MS. KREVANS:  WE ARE, YOUR HONOR.

9              THE COURT:  ANYTHING ELSE THAT WE NEED TO TALK ABOUT?

10             MR. NELSON:  NO.  I THINK WE'RE READY.

11             THE COURT:  OKAY, GREAT.  I'M TOLD ALL THE JURORS ARE

12   HERE, SO WE CAN GET STARTED.

13        AND DO WE HAVE THE COPIES, THE COPIES OF THE JOINT CHART?

14   WHERE IS THAT?

15        (JURY IN AT 9:03 A.M.)

16             THE COURT:  GOOD MORNING.  WELCOME BACK.  PLEASE TAKE

17   A SEAT.

18        I WILL PROVIDE CONSTRUCTIONS FOR TWO ADDITIONAL TERMS OF

19   CLAIM 9 OF THE '647 PATENT.  THE CONSTRUCTIONS WERE JUST HANDED

20   TO YOU BY MS. PARKER BROWN AND YOU ARE TO INCLUDE THEM IN YOUR

21   CHART OF ASSERTED PATENT CLAIMS TAB IN YOUR JURY BINDER.

22             THEY WILL ALSO BE INCLUDED IN THE FINAL JURY INSTRUCTIONS.

23             EACH SIDE WILL HAVE ONE HOUR FOR ADDITIONAL TRIAL

24   TESTIMONY TO ADDRESS THESE TWO CONSTRUCTIONS.

25             SO OUR SCHEDULE TODAY IS WE'LL HAVE TWO ADDITIONAL HOURS
```

1    OF TRIAL TESTIMONY; WE WILL THEN EXCUSE YOU, YOU'LL HAVE A

2    SLIGHTLY LONGER LUNCH THAN NORMAL, ROUGHLY BETWEEN 11:20 AND

3    11:30 WE'LL EXCUSE YOU FOR LUNCH, WE WILL HAVE TO HANDLE A

4    MATTER OUTSIDE YOUR PRESENCE; AND THEN WE'LL ALL COME BACK AT

5    1:00 O'CLOCK AT WHICH TIME I WILL DISTRIBUTE AND READ THE FINAL

6    JURY INSTRUCTIONS.  SO YOU'LL GET THOSE INSTRUCTIONS TODAY.

7         THEN TOMORROW MORNING AT 9:00 WE WILL START IMMEDIATELY

8    WITH CLOSING ARGUMENTS.  OKAY?

9         AND AS SOON AS WE FINISH WITH CLOSING ARGUMENTS TOMORROW,

10   YOU MAY BEGIN YOUR DELIBERATIONS.  AS I SAID, EVERY DAY YOU'LL

11   ONLY DELIBERATE FROM 9:00 TO 4:30.  AT 4:30, WE WILL ASK YOU TO

12   LEAVE.  AND YOU CAN -- AND YOU WILL DELIBERATE WEDNESDAY,

13   THURSDAY, FRIDAY, CONSECUTIVE DAYS.  NO BREAKS FOR WEDNESDAYS

14   AND THURSDAYS DURING DELIBERATIONS.  OKAY?

15        ALL RIGHT.  WITH THAT, GO AHEAD AND CALL YOUR NEXT

16   WITNESS.

17             MS. KREVANS:  YOUR HONOR, APPLE CALLS

18    PROFESSOR TODD MOWRY.

19             THE COURT:  NOW, DO THE PARTIES WANT ME TO HAVE

20   WITNESSES RESWORN OR JUST REMIND THEM THAT THEY'RE STILL UNDER

21   OATH?

22             MR. NELSON:  THAT'S FINE, YOUR HONOR.

23             THE COURT:  ALL RIGHT.  YOU ARE STILL UNDER OATH.

24        ALL RIGHT.  THE TIME IS 9:06.

25        GO AHEAD, PLEASE.

1          **(PLAINTIFF'S WITNESS, TODD MOWRY, WAS PREVIOUSLY SWORN.)**

2                    **FURTHER REDIRECT EXAMINATION**

3      BY MS. KREVANS:

4      Q.   WELCOME BACK, PROFESSOR MOWRY.

5           AS YOU KNOW, THE COURT HAS PROVIDED TWO ADDITIONAL CLAIM

6      CONSTRUCTIONS FOR TERMS IN CLAIM 9 OF THE '647 PATENT.  I'D

7      LIKE TO ADDRESS THE TOPIC OF INFRINGEMENT WITH YOU.

8           HAVE YOU CONSIDERED WHETHER EACH OF THE NINE ACCUSED

9      SAMSUNG SMARTPHONES INFRINGES USING THOSE ADDITIONAL

10     CONSTRUCTIONS?

11     A.   YES, I HAVE.

12     Q.   HAS THE APPLICATION OF THOSE CONSTRUCTIONS CHANGED YOUR

13     OPINIONS REGARDING WHETHER THE ACCUSED SAMSUNG SMARTPHONES

14     INFRINGE CLAIM 9?

15     A.   NO, IT HAS NOT.

16     Q.   OKAY.  DID THE APPLICATION OF THOSE ADDITIONAL

17     CONSTRUCTIONS REQUIRE YOU TO LOOK AT ANY SOURCE CODE BEYOND THE

18     SOURCE CODE THAT YOU EXPLAINED TO THE JURY WHEN YOU ORIGINALLY

19     TESTIFIED ABOUT INFRINGEMENT?

20     A.   NO, THEY DID NOT.

21     Q.   OKAY.  LET'S THEN START WITH THE FIRST CONSTRUCTION.

22          COULD YOU PUT UP SLIDE 88.8, MR. LEE.  THANK YOU.

23          NOW, I'D LIKE YOU TO FOCUS ON CLAIM ELEMENT C1, "AN

24     ANALYZER SERVER FOR DETECTING STRUCTURES IN THE DATA, AND FOR

25     LINKING ACTIONS TO THE DETECTED STRUCTURES."

1          NOW, THE COURT HAS ADDITIONALLY TOLD US THE TERM "ANALYZER

2     SERVER" MEANS "A SERVER ROUTINE SEPARATE FROM A CLIENT THAT

3     RECEIVES DATA HAVING STRUCTURES FROM THE CLIENT."

4          IN YOUR PREVIOUS TESTIMONY ABOUT INFRINGEMENT, YOU TALKED

5     ABOUT THE BROWSER AND MESSAGING APPLICATIONS.  COULD YOU PLEASE

6     EXPLAIN TO THE JURY WHAT ROLE THOSE APPLICATIONS PLAY UNDER THE

7     CONSTRUCTION OF ANALYZER SERVER?

8     A.   THE BROWSER AND MESSAGING APPLICATIONS ARE THE CLIENTS.

9     Q.   AND WHAT IS THE BASIS FOR YOUR OPINION THAT THE BROWSER

10    AND MESSAGING APPLICATIONS ARE CLIENTS UNDER THIS CONSTRUCTION

11    OF ANALYZER SERVER?

12    A.   BOTH THE BROWSER AND THE MESSAGING APPLICATION INCLUDE --

13    CONTAIN TEXT DATA IN THE FORM OF EITHER TEXT MESSAGES FOR THE

14    MESSAGING APPLICATION OR WEB PAGES FOR BROWSER, WHICH THEY PASS

15    TO THE ANALYZER SERVER IN ORDER FOR IT TO DETECT STRUCTURES IN

16    THOSE DOCUMENTS AND TO LINK ACTIONS TO THE DETECTED STRUCTURES.

17    Q.   OKAY.  NOW, THE COURT -- THE ANALYZER SERVER CONSTRUCTION

18    REQUIRES A SERVER ROUTINE SEPARATE FROM A CLIENT.  WHAT CODE IN

19    THE ACCUSED SAMSUNG SMARTPHONES IN THE MESSAGING AND BROWSER

20    APPLICATIONS IS A SERVER ROUTINE UNDER THIS CONSTRUCTION?

21    A.   THAT IS THE SHARED LIBRARY CODE THAT I DESCRIBED BEFORE

22    THAT IS THE ANALYZER SERVER CODE.

23    Q.   OKAY.  COULD YOU PLEASE, FOR THE JURY AND THE COURT ONLY,

24    SHOW PDX 88.18A?

25          COULD YOU, STARTING WITH THE DETECTING STRUCTURES PORTION

1    OF THE SERVER CODE, EXPLAIN TO THE JURY THE PORTIONS OF THE

2    CODE THAT ARE THE SERVER ROUTINES UNDER THE COURT'S

3    CONSTRUCTION WHICH DETECTS STRUCTURES FOR THE MESSAGING

4    APPLICATION?

5    A.   YES.  FOR ALL RELEASES OF THE ANDROID OPERATING SYSTEM,

6    FOR THE MESSAGING APPLICATION, THE CODE THAT YOU SEE ON THE

7    SCREEN, ALL OF THIS CODE IS THE SHARED LIBRARY CODE THAT

8    PERFORMS THE FUNCTIONALITY OF THE DETECTING STRUCTURES.

9         SO WE SEE, JUST TO REFRESH OUR MEMORY, FOR EACH BOX, THE

10   LABEL AT THE TOP IN YELLOW IS THE NAME OF THE CLASS, WHICH IS

11   ALSO USUALLY THE FILE NAME.

12        AND FOR -- AND THIS BEGINS WITH THE ADD LINKS METHOD, OR

13   PROCEDURE, IN THE LINKIFY CLASS, WHICH CALLS GATHER LINKS

14   METHOD AND LINKIFY, AND THIS ALSO MAKES USE OF THE MATCHER

15   METHOD IN THE PATTERN CLASS WHERE PRERECORDED PATTERNS ARE

16   STORED, AND ALSO THE FIND METHOD IN THE MATCHER CLASS.

17        AND USING THIS CODE, IT DETECTS PHONE NUMBERS, E-MAIL

18   ADDRESSES, AND WEB URL'S.

19   Q.   IS THERE ANY DISPUTE BETWEEN YOU AND DR. JEFFAY ABOUT

20   WHETHER THE ACCUSED SAMSUNG SMARTPHONES ACTUALLY USE THESE

21   SUBROUTINES THAT YOU'VE IDENTIFIED TO DETECT STRUCTURES FOR THE

22   MESSAGING APPLICATION?

23   A.   NO, THERE IS NOT.

24   Q.   OKAY.  COULD WE SEE 88.23, AGAIN, JUST ON THE JURY AND THE

25   COURT'S SCREENS.

1          COULD YOU EXPLAIN FOR THE JURY WHICH PORTIONS OF THE CODE

2     ARE THE SERVER ROUTINES UNDER THE COURT'S CONSTRUCTION THAT

3     DETECT STRUCTURES FOR THE BROWSER APPLICATION?

4     A.   FOR GINGERBREAD AND ICE CREAM SANDWICH, IT'S THE CODE THAT

5      YOU SEE ON THE LEFT SIDE OF THE SCREEN.  WITHIN THE CACHE

6      BUILDER CLASS, IT'S THE FIND PARTIAL E-MAIL, FIND PARTIAL

7      NUMBER, AND FIND PARTIAL ADDRESS METHODS, AND ALL OF THIS IS

8      SHARED LIBRARY CODE IN THE ANALYZER SERVER.

9          FOR THE JELLY BEAN RELEASE ON THE RIGHT, IT IS THE FIND

10    PARTIAL NUMBER AND FIND PARTIAL E-MAIL METHODS IN THE PHONE

11    E-MAIL DETECTOR CLASS, AND THE FIND CONTENT METHOD IN THE

12    ADDRESS DETECTOR CLASS, AND BOTH OF THOSE CLASSES ARE CHILD

13    CLASSES OF THE CONTEXT DETECTOR CLASS.

14    Q.   IS THERE ANY DISPUTE ABOUT WHETHER, IN THE ACCUSED SAMSUNG

15     SMARTPHONES, THESE ARE SUBROUTINES THAT ACTUALLY DO DETECT

16     STRUCTURES FOR THE BROWSER APPLICATION?

17    A.   NO, THERE IS NOT.

18    Q.   DO ALL OF THE ROUTINES YOU'VE JUST POINTED THE JURY TO ON

19     THESE TWO SLIDES RECEIVE DATA HAVING STRUCTURES FROM EITHER THE

20     MESSAGING CLIENT OR THE BROWSER CLIENT?

21    A.   YES, THEY DO.

22    Q.   ALL RIGHT.  LET'S TURN TO THE LINKING ACTIONS PORTION OF

23     THE ANALYZER SERVER'S ASSIGNED TASKS.

24          COULD WE SEE, AGAIN, PRIVATE CODE, 88.20.  THANK YOU,

25     MR. LEE.

1          COULD YOU PLEASE EXPLAIN, FOR THE LINKING ACTIONS FUNCTION

2     IN THE MESSAGING ACTION, WHAT IS THE CODE THAT ARE THE SERVER

3     ROUTINES UNDER THE COURT'S CONSTRUCTION?

4     A.   FOR GINGERBREAD, WHICH WE SEE ON THE LEFT SIDE OF THE

5     SCREEN FOR MESSAGING, IT IS THE SET INTENT METHOD IN THE MENU

6     ITEM IMPL CLASS, THE START ACTIVITY METHOD IN THE CONTEXT IMPL

7     CLASS, AND THE METHODS ARE THE INTENT CLASS.

8          AND I'VE ALSO SHOWN THE ADD COMMON CONTACT MENU ITEM

9     METHOD FROM THE COMPOSE MESSAGE ACTIVITY CLASS.  THIS IS

10    ACTUALLY GLUE CODE IN THE CLIENT THAT CALLS INTO THE SERVER

11    ROUTINES.  SO THAT'S FOR GINGERBREAD.

12         AND ON THE RIGHT, FOR ICE CREAM SANDWICH AND JELLY BEAN,

13    THE SERVER ROUTINES ARE THE HANDLE MESSAGE METHOD OF THE

14    HANDLER CLASS, IN PARTICULAR THE M MESSAGE LIST ITEM HANDLER

15    INSTANCE.

16         ALSO, THE EXECUTE METHOD OF THE LINK ACTION CHOOSER.ACTION

17    CLASS, THE METHODS OF THE INTENT CLASS, AND THE START ACTIVITY

18    METHOD OF THE CONTEXT IMPL CLASS.

19         AND I'M ALSO SHOWING GLUE CODE FROM THE CLIENT WHICH IS

20    THE SHOW LINKS CONTEXT MENU METHOD FROM THE MESSAGE LIST ITEM

21    CLASS.

22    Q.   NOW, A COUPLE TIMES NOW THAT YOU USED THE TERM "GLUE

23    CODE," GLUE AS IN, LIKE, ELMER'S GLUE?

24    A.   THE SOFTWARE VERSION OF THE ELMER'S GLUE, YES.

25    Q.   OKAY.  IS GLUE CODE A TERM THAT'S USED IN COMPUTER

1      SCIENCE?

2      A.   YES.

3      Q.   AND WHAT DOES IT MEAN HERE?

4      A.   IT'S SOFTWARE THAT CONNECTS TOGETHER DIFFERENT MODULES OR

5      DIFFERENT PIECES OF SOFTWARE, AND IN PARTICULAR IN A CLIENT

6      SERVER, SOFTWARE ARCHITECTURE OF THE CLIENT HAS TO CALL INTO

7      THE SERVER, SO THERE'S CODE THAT YOU NEED TO HAVE TO PUT

8      TOGETHER DATA AND OTHER THINGS IN ORDER TO COMMUNICATE WITH THE

9      SERVER.

10         SO I'M SHOWING THAT, THAT CONTEXT HERE.

11     Q.   OKAY.  NOW, THIS WAS THE MESSAGING APPLICATION.

12         LET'S LOOK AT THE BROWSER APPLICATION, SLIDE 88.24,

13     PLEASE.  CAN YOU EXPLAIN TO THE JURY WHAT CODE IS THE SERVER

14     ROUTINE'S UNDER THE COURT'S CONSTRUCTION FOR LINKING ACTIONS IN

15     THE BROWSER APPLICATION?

16     A.   IT IS THE SET INTENT METHOD OF THE MENU ITEM IMPL CLASS,

17     THE START ACTIVITY METHOD OF THE CONTEXT IMPL CLASS, AND HERE

18     I'M AGAIN SHOWING THE GLUE CODE FROM THE CLIENT, WHICH IS THE

19     ON CREATE CONTEXT MENU METHOD FROM THE BROWSER ACTIVITY CLASS.

20     Q.   NOW, IS THERE ANY DISPUTE IN THIS CASE ABOUT WHETHER THE

21     SOFTWARE COMPONENTS YOU'VE JUST DESCRIBED FOR THE LINKING

22     ACTIONS FUNCTION IS ACTUALLY USED BY THE SAMSUNG SMARTPHONES TO

23     LINK ACTIONS FOR THE MESSAGING AND BROWSER APPLICATIONS?

24     A.   NO, THERE IS NOT.

25     Q.   DO EACH OF THE SUBROUTINES YOU'VE JUST DESCRIBED TO US

1    FROM THE LAST TWO SLIDES RECEIVE DATA HAVING STRUCTURES FROM

2    EITHER THE MESSAGING CLIENT OR THE BROWSER CLIENT?

3    A.   YES, THEY DO.

4    Q.   OKAY.  LET'S TURN TO THE LAST PIECE OF THIS ADDITIONAL

5    CONSTRUCTION WE'VE GOT FROM THE COURT, A SERVER ROUTINE

6    SEPARATE FROM A CLIENT.

7        ARE THE SHARED LIBRARIES THAT YOU'VE JUST WALKED US

8    THROUGH FOR DETECTING STRUCTURES AND LINKING ACTIONS IN THE

9    MESSAGING AND BROWSER APPLICATIONS SERVER ROUTINES THAT ARE

10   SEPARATE FROM A CLIENT UNDER THE COURT'S CONSTRUCTION?

11   A.   YES, THEY ARE.

12   Q.   COULD YOU EXPLAIN TO THE JURY THE BASIS FOR YOUR

13   CONCLUSION THAT THESE SHARED LIBRARIES ARE SEPARATE FROM THE

14   BROWSER AND MESSAGING APPLICATIONS UNDER THIS CONSTRUCTION?

15   A.   YES.  FIRST, THE SHARED LIBRARIES ARE DEVELOPED

16   INDEPENDENTLY OF THE APPLICATION.  THEY ARE DESIGNED TO BE

17   REUSED ACROSS DIFFERENT APPLICATIONS, SO THAT'S ONE WAY THAT

18   THEY'RE SEPARATE.

19       IN ADDITION, THE CODE, THE ACTUAL MACHINE INSTRUCTIONS,

20   WHEN YOU RUN THE PHONE AND YOU HAVE -- EVEN IF YOU HAVE

21   MULTIPLE APPLICATIONS, SAY, 20 DIFFERENT APPLICATIONS USING THE

22   SAME SHARED LIBRARY CODE AT THE SAME TIME, IN THE COMPUTER

23   HARDWARE MEMORY, THERE'S ONLY ONE COPY OF THE SHARED LIBRARY

24   CODE, AND THOSE APPLICATIONS GO TO THAT CODE AND USE IT WHERE

25   IT IS EACH TIME THEY WANT TO ACCESS THAT CODE.

```
1              SO IT'S ALSO SEPARATE IN THAT SENSE.  IT'S IN A DIFFERENT
2       PART OF THE ADDRESS BASE.
3       Q.   NOW, YOU'VE REVIEWED DR. JEFFAY'S PRIOR TESTIMONY IN THIS
4       CASE?
5       A.   YES.
6       Q.   YOU UNDERSTAND THAT HE'S EXPRESSED THE OPINION THAT
7       THESE -- THESE SHARED LIBRARIES THAT YOU'VE IDENTIFIED ARE NOT
8       SEPARATE FROM THE MESSAGING AND BROWSER APPLICATIONS?
9       A.   YES.
10      Q.   DO YOU AGREE OR DISAGREE WITH DR. JEFFAY?
11      A.   I DISAGREE.
12      Q.   AND CAN YOU EXPLAIN WHY?
13      A.   WELL, FOR EXAMPLE, AS I JUST DESCRIBED, THERE'S ONLY ONE
14      COPY OF THE SHARED LIBRARY CODE IN THE MEMORY HARDWARE, EVEN IF
15      THERE'S, SAY, 20 OR 100 APPLICATIONS USING THE SHARED LIBRARY
16      CODE AT THE SAME TIME.  IT'S IN A DIFFERENT PART OF THE ADDRESS
17      SPACE.  IT'S IN A PARTICULAR PART OF MEMORY.  AND ALL THOSE
18      APPLICATIONS GO TO THE SHARED LIBRARY CODE IN THE ONE PLACE
19      THAT EXISTS IN THE COMPUTER MEMORY HARDWARE TO USE IT.
20              SO IT'S DEFINITELY SEPARATE FROM THE APPLICATIONS.
21      Q.   NOW, DO YOU RECALL THAT DR. JEFFAY GAVE SOME TESTIMONY
22      THAT EACH APPLICATION HAS ITS OWN COPY OF THE SHARED LIBRARIES?
23      A.   YES.
24      Q.   IS THAT CORRECT?
25      A.   NO, THAT'S NOT CORRECT.
```

1    Q.  WHAT ACTUALLY HAPPENS WHEN THE CODE IS RUNNING ON THE

2    SAMSUNG PHONES IF AN APPLICATION, FOR EXAMPLE, LIKE MESSAGING,

3    NEEDS TO USE THE CODE FROM ONE OF THESE SHARED LIBRARIES?

4    A.  WELL, IT HAS ACCESS TO THE CODE AND IT GOES TO THE CODE

5    WHERE IT IS AND USES IT THERE, AND IT DOES THAT EACH TIME THAT

6    IT ACCESSES THE CODE.

7    Q.  DO ALL OF THE OTHER APPLICATIONS THAT RUN ON THESE PHONES

8    THAT NEED THAT CODE ALSO GO TO THAT SAME SHARED LIBRARY WHEN

9    THEY NEED IT?

10   A.  YES, THAT'S CORRECT.

11   Q.  CAN YOU EXPLAIN TO US WHY, IF THESE APPLICATIONS WILL NEED

12   THIS CODE OVER AND OVER, WHY THEY DON'T HAVE THEIR OWN COPY?

13   A.  YES.  IT'S FOR AN IMPORTANT REASON, WHICH IS THE AMOUNT OF

14   MEMORY ON A PHONE IS A PRECIOUS THING.  YOU DON'T WANT TO WASTE

15   MEMORY, SO THAT'S THE REASON WHY SHARED LIBRARIES IN GENERAL

16   ARE DESIGNED SO THAT MULTIPLE APPLICATIONS CAN ACCESS THEM AND

17   USE THEM, BUT WITHOUT ACTUALLY DUPLICATING THE CODE, THE SHARED

18   LIBRARY CODE IN MEMORY, BECAUSE OTHERWISE YOU'D BE WASTING THE

19   HARDWARE, WASTING YOUR MEMORY.

20   Q.  AND YOU -- ARE BROWSE AND MESSAGING THE ONLY APPLICATIONS

21   ON THE NINE ACCUSED SMARTPHONES THAT USE THESE SHARED

22   LIBRARIES?

23   A.  NO, THERE ARE A NUMBER OF OTHER APPLICATIONS THAT --

24          MR. NELSON:  OBJECTION, YOUR HONOR.  THIS GOES WELL

25   BEYOND THE SCOPE OF HIS REPORT.

```
 1              THE COURT:  OVERRULED.

 2         GO AHEAD, PLEASE.

 3              THE WITNESS:  NO.  THERE ARE OTHER APPLICATIONS THAT

 4    USE BOTH LINKIFY AND CACHE BUILDER, AND IN FACT, LINKIFY CALLS

 5    INTO CACHE BUILDER.  IN ORDER TO FIND POSTAL ADDRESSES, LINKIFY

 6    ACTUALLY CALLS INTO CACHE BUILDER TO REUSE THE CODE IN CACHE

 7    BUILDER TO DETECT MAILING ADDRESSES.

 8    BY MS. KREVANS:

 9    Q.   NOW, SOME OF THE CODE THAT YOU'VE POINTED US TO HERE IS IN

10    THE LINKIFY CLASS AND THE INTENT OBJECT CODE; RIGHT?

11    A.   YES.

12    Q.   WERE YOU PRESENT FOR THE TESTIMONY OF A GOOGLE ENGINEER

13    NAMED DIANNE HACKBORN?

14    A.   YES, I WAS.

15    Q.   SHE GAVE SOME TESTIMONY ABOUT THE LINKIFY CLASS AND INTENT

16    OBJECTS; CORRECT?

17    A.   YES.

18    Q.   WAS ANYTHING IN THAT TESTIMONY -- DID ANYTHING IN THAT

19    TESTIMONY AFFECT THE OPINIONS YOU HAVE IN THIS CASE?

20    A.   NO.

21    Q.   DID SHE SAY ANYTHING IN THAT TESTIMONY THAT CONTRADICTED

22    ANY OF THE OPINIONS YOU'VE GIVEN THE JURY ABOUT WHERE THE

23    SHARED LIBRARIES ARE IN MEMORY AND HOW THEY'RE USED BY THESE

24    APPLICATIONS?

25    A.   NO, SHE DID NOT.
```

1    Q.   OKAY.  LET'S GO TO THE SECOND ADDITIONAL CONSTRUCTION THAT

2    THE COURT HAS GIVEN US.

3         COULD WE PUT 88.8 BACK UP, PLEASE, MR. LEE.  THANK YOU.

4         SO, AGAIN, WE'RE LOOKING AT THE ANALYZER SERVER FOR

5    DETECTING STRUCTURES IN THE DATA AND FOR LINKING ACTIONS TO THE

6    DETECTED STRUCTURES.

7         THE COURT HAS NOW CLARIFIED FOR US THAT LINKING ACTIONS TO

8    THE DETECTED STRUCTURES MEANS "CREATING A SPECIFIED CONNECTION

9    BETWEEN EACH DETECTED STRUCTURE AND AT LEAST ONE COMPUTER

10   SUBROUTINE THAT CAUSES THE CPU TO PERFORM A SEQUENCE OF

11   OPERATIONS ON THAT DETECTED STRUCTURE."

12   A.   YES.

13   Q.   OKAY.  SO JUST SO WE'RE CLEAR, A CPU IS?

14   A.   IT'S ALSO CALLED A PROCESSOR, FOR EXAMPLE, THE TYPES OF

15   THINGS THAT INTEL SELLS.

16   Q.   OKAY.  LET'S START WITH THE BIG PICTURE.  DID THIS

17   ADDITIONAL CONSTRUCTION CHANGE YOUR OPINIONS REGARDING WHETHER

18   THE ACCUSED SAMSUNG SMARTPHONES INFRINGE THE LINKING ACTIONS

19   PORTION OF THIS ANALYZER SERVER CLAIM ELEMENT?

20   A.   NO, IT DID NOT.

21   Q.   DO -- TO DO YOUR ANALYSIS UNDER THIS ADDITIONAL

22   CONSTRUCTION, DID YOU HAVE TO LOOK AT ANY ADDITIONAL CODE

23   BEYOND WHAT YOU TALKED TO THE JURY ABOUT LAST TIME?

24   A.   NO, I DID NOT.

25   Q.   OKAY.  COULD WE SEE 88.20 AGAIN, ONLY COURT AND JURY,

```
 1        MR. LEE.

 2             FOR THE MESSAGING APPLICATION, FOR THE FUNCTION OF THE

 3        LINKING ACTIONS TO THE DETECTED STRUCTURES, I KNOW YOU JUST

 4        LOOKED AT THIS SLIDE, BUT I'D LIKE TO ASK YOU A SECOND QUESTION

 5        ABOUT THIS.

 6             CAN YOU POINT THE JURY TO THE PORTION OF THE CODE THAT

 7        CREATES, UNDER THIS CONSTRUCTION, THE SPECIFIED CONNECTION TO

 8        START ACTIVITY FOR THE MESSAGING APPLICATION?

 9        A.   YES.  FOR GINGERBREAD, ON THE LEFT SIDE OF THE SCREEN, IT

10        IS THE SET INTENT METHOD IN THE MENU ITEM IMPL CLASS, AND WHAT

11        THAT METHOD DOES IS IT RECORDS AN INTENT OBJECT FOR A

12        PARTICULAR CHOICE IN THE POP-UP MENU THAT SHOWS YOU CHOICES OF

13        LINKED ACTIONS.

14             AND ONCE IT RECORDS IT THERE, EVERYTHING -- THAT COMPLETES

15        THE LAST CHAIN IN THE LINK SUCH THAT IF THE USER PICKS THAT

16        PARTICULAR OPTION, IT WILL NECESSARILY CALL START ACTIVITY AND

17        PASS THAT INTENT OBJECT AS THE INPUT TO START ACTIVITY.

18             FOR THE ICE CREAM SANDWICH AND JELLY BEAN VERSIONS WHICH

19        YOU SEE ON THE RIGHT-HAND SIDE OF THE SCREEN, IT IS THE EXECUTE

20        METHOD OF THE LINK ACTION CHOOSER.ACTION CLASS THAT CREATES THE

21        SPECIFIED CONNECTION, AND IT CREATES AN INTENT OBJECT AND

22        PASSES IT TO START ACTIVITY IN THE EVENT THAT THE USER CHOOSES

23        A PARTICULAR LINK ACTION FROM THE POP-UP MENU.

24        Q.   OKAY.  SO THAT'S THE SPECIFIED CONNECTION.

25             COULD YOU POINT THE JURY TO THE CODE ON THIS SLIDE WHICH
```

1    IS THE "AT LEAST ONE COMPUTER SUBROUTINE THAT CAUSES THE CPU TO

2    PERFORM A SEQUENCE OF OPERATIONS ON THAT DETECTED STRUCTURE"?

3    A.   YES.  IN BOTH CASES, THAT'S START ACTIVITY FROM THE

4    CONTEXT IMPL CLASS.

5    Q.   COULD WE SEE 88.24, MR. LEE.  THIS IS FOR THE BROWSER

6    APPLICATIONS.

7         PROFESSOR MOWRY, I'D LIKE TO ASK YOU THE SAME QUESTIONS.

8    FIRST, WHAT IS THE CODE THAT CREATES THE SPECIFIED CONNECTION

9    UNDER THE COURT'S CONSTRUCTION FOR THE BROWSER APPLICATION?

10   A.   IT IS THE SET INTENT METHOD.  AGAIN, SIMILAR TO

11   GINGERBREAD MESSAGING, THE SET INTENT FROM THE MENU ITEM IMPL

12   CLASS, AND IT DOES THE SAME THING HERE, WHICH IS IT RECORDS AN

13   INTENT OBJECT WITH A PARTICULAR CHOICE IN A POP-UP MENU SO THAT

14   IF THE USER CHOOSES THAT PARTICULAR LINKED ACTION, IT WILL

15   NECESSARILY CALL START ACTIVITY AND PASS THAT INTENT AS THE

16   INPUT TO START ACTIVITY.

17   Q.   OKAY.  AND JUST TO TIE UP THIS LAST PIECE, WHAT, FOR THE

18   BROWSER APPLICATION, IS THE "AT LEAST ONE COMPUTER SUBROUTINE

19   THAT CAUSES THE CPU TO PERFORM A SEQUENCE OF OPERATIONS ON THE

20   DETECTED SEQUENCE"?

21   A.   IT IS START ACTIVITY, WHICH IS GIVEN A PARTICULAR INTENT

22   AS INPUT.

23   Q.   OKAY.  START ACTIVITY IS A SUBROUTINE THAT YOU IDENTIFIED

24   PREVIOUSLY FOR PURPOSES OF SATISFYING THIS ELEMENT?

25   A.   YES, THAT'S CORRECT.

1    Q.   ALL RIGHT.  LET'S JUST TALK FOR A MOMENT ABOUT

2    DR. JEFFAY'S VIEWS ABOUT START ACTIVITY.

3         DO YOU RECALL THAT DR. JEFFAY HAS PREVIOUSLY TESTIFIED

4    THAT YOU MAY NOT HAVE IDENTIFIED AN APPROPRIATE LINKED ACTION

5    UNDER THIS ELEMENT OF THE CLAIM BECAUSE YOU USED -- YOU POINTED

6    TO START ACTIVITY IN CONNECTION WITH MULTIPLE DIFFERENT KINDS

7    OF ACTIONS A USER MIGHT WANT?  DO YOU RECALL THAT TESTIMONY?

8    A.   YES, I DO.

9    Q.   COULD YOU EXPLAIN, FIRST, IS THERE ANYTHING IN THE

10   ADDITIONAL CONSTRUCTION WE HAVE THAT CHANGES YOUR VIEWS ABOUT

11   THE ROLE OF START ACTIVITY?

12   A.   NO, THERE IS NOT.

13   Q.   COULD YOU EXPLAIN THE NATURE OF HOW YOU UNDERSTAND IT, AT

14   LEAST, DR. JEFFAY'S DISAGREEMENT WITH YOU WITH RESPECT TO THE

15   ROLE OF START ACTIVITY?

16   A.   MY UNDERSTANDING OF DR. JEFFAY'S ARGUMENT IS THAT SINCE

17   ALL THE ACTIONS THAT I IDENTIFIED INVOLVE CALLING START

18   ACTIVITY, THAT IT APPEARS THAT PERHAPS I'VE ONLY IDENTIFIED ONE

19   ACTION.

20        BUT, IN FACT, WHEN YOU CALL START ACTIVITY WITH DIFFERENT

21   INTENT OBJECTS, LIKE WHAT THE JURORS SEE ON THE SCREEN RIGHT

22   NOW, THE PARTICULAR INTENT OBJECT THAT YOU SEE THERE WILL

23   DIAL -- WILL LAUNCH THE USER'S PREFERRED DIALER AND FILL IN

24   THAT PHONE NUMBER.

25        SO YOU GET DIFFERENT BEHAVIORS FROM START ACTIVITY BASED

1      ON HOW YOU FILL IN THE FIELDS IN THE INTENT OBJECT.

2            SO THAT CAUSES THE DIFFERENT ACTIONS TO OCCUR.

3      Q.   SO I KNOW YOU DID PREVIOUSLY EXPLAIN TO THE JURY THE

4      INTERACTION BETWEEN THE INTENT OBJECT FIELDS AND START

5      ACTIVITY, BUT IT WAS A COUPLE WEEKS AGO, SO CAN YOU JUST REMIND

6      THE JURY WHAT YOU MEAN WHEN YOU SAY YOU GET DIFFERENT ACTIONS

7      FROM START ACTIVITY DEPENDING ON HOW YOU FILL IN THE INTENT

8      OBJECT?

9      A.   YES.  WITH THE EXAMPLE THAT YOU SEE ON THE RIGHT SIDE OF

10     THE SCREEN, THAT'S THE INTENT OBJECT THAT YOU CREATE TO DIAL,

11     TO LAUNCH THE DIALER WITH A PARTICULAR PHONE NUMBER.

12           AND THERE ARE TWO IMPORTANT FIELDS IN AN INTENT OBJECT.

13     THE FIRST IS A DATA FIELD, AND YOU CAN SEE IT HAS THE DIGITS OF

14     THE DETECTED PHONE NUMBER WITH A TEL: PREFIX IN FRONT OF IT.

15           AND THEN THERE'S AN ACTION FIELD, IN THIS CASE IT SAYS

16     ACTION VIEW, AND ANDROID UNDERSTANDS THAT THAT COMBINATION OF

17     ACTION VIEW IN THE ACTION FIELD PLUS THE TEL: PREFIX MEANS THAT

18     YOU SHOULD LAUNCH THE USER'S PREFERRED DIALER AND FILL IN THOSE

19     DIGITS IN THE DIALER WHEN IT LAUNCHES.

20           AND IF YOU WANTED TO DO -- FOR EXAMPLE, A WEEK AGO I

21     SHOWED YOU A DIFFERENT INTENT OBJECT THAT YOU WOULD HAVE --

22     THAT THE SYSTEM CREATES FOR ADD CONTACT, WHICH HAS THE SAME

23     DATA FIELD, BUT A DIFFERENT ACTION FIELD THAT ANDROID

24     UNDERSTAND MEANS TO OPEN THE CONTACT PROGRAM INSTEAD AND FILL

25     IN THOSE DIGITS.

1    Q.   OKAY.  STEPPING BACK FROM THIS SPECIFIC TOPIC, I'D LIKE TO

2    ASK YOU A COUPLE QUESTIONS ABOUT YOUR OVERALL OPINIONS ON

3    INFRINGEMENT.

4         KEEPING IN MIND THE TWO ADDITIONAL CONSTRUCTIONS THAT

5    YOU'VE JUST TESTIFIED ABOUT FROM THE COURT AND THE COURT'S

6    PREVIOUS CONSTRUCTION OF ACTION PROCESSOR AND THE LANGUAGE OF

7    THE CLAIM AS A WHOLE, WHAT IS YOUR OVERALL OPINION ABOUT

8    WHETHER EACH OF THE NINE ACCUSED SAMSUNG SMARTPHONES INFRINGES

9    CLAIM 9 OF THE '647 PATENT?

10   A.   IT'S MY OPINION THAT EACH OF THE ACCUSED SAMSUNG DEVICES

11   DOES INFRINGE CLAIM 9 OF THE '647 PATENT.

12   Q.   AND DOES THAT OPINION HOLD FOR ALL SOFTWARE VERSIONS AND

13   SUBVERSIONS IN THE ACCUSED SMARTPHONES?

14   A.   YES, IT DOES.

15   Q.   AND IN YOUR PRIOR TESTIMONY -- COULD WE SEE 88.13,

16   MR. LEE -- IN YOUR PRIOR TESTIMONY, YOU IDENTIFIED SOME

17   PRODUCTS THAT YOU SAID WERE REPRESENTATIVE OF THE BEHAVIOR OF

18   ALL OF THE SMARTPHONES AND OF THE CODE IN THEM.

19        LET ME JUST ASK YOU FIRST, DID YOU ACTUALLY LOOK AT THE

20   CODE FOR ALL OF THE PRODUCTS?

21   A.   YES, I DID.

22   Q.   SO NOT JUST FOR THESE FOUR REPRESENTATIVE ONES THAT WE SEE

23   ON THE SLIDE, THE ADMIRE, THE GALAXY S III -- I'M SORRY -- THE

24   III, AND THE NEXUS?

25   A.   NO.  I LOOKED AT THE CODE FOR ALL OF THE ACCUSED DEVICES

1        IN ORDER TO DETERMINE HOW THEY SHOULD BE GROUPED TOGETHER.

2        Q.   OKAY.   AND ARE THESE SAME PRODUCTS STILL REPRESENTATIVE OF

3        THE OTHER PRODUCTS FOR THE MESSAGING AND BROWSER APPLICATIONS

4        UNDER THE COURT'S ADDITIONAL CONSTRUCTIONS?

5        A.   YES, THAT'S CORRECT.

6                MS. KREVANS:   NOTHING FURTHER, YOUR HONOR.

7                THE COURT:   ALL RIGHT.   THE TIME IS NOW 9:30.

8        I'LL GIVE YOU A MINUTE TO GET SET UP, MR. NELSON.

9                MR. NELSON:   THANK YOU, YOUR HONOR.

10               THE COURT:   READY?

11               MR. NELSON:   I THINK SHE'S GOT SOME ADDITIONAL

12       BINDERS.

13               THE COURT:   OH, OKAY.

14           (PAUSE IN PROCEEDINGS.)

15               THE COURT:   WOULD YOU LIKE TO START?

16               MR. NELSON:   MAY I PROCEED, YOUR HONOR?

17               THE COURT:   ALL RIGHT.   9:31.

18           GO AHEAD, PLEASE.

19                        **FURTHER RECROSS-EXAMINATION**

20       BY MR. NELSON:

21       Q.   GOOD MORNING, SIR.

22       A.   GOOD MORNING.

23       Q.   ALL RIGHT.   LET'S GET A COUPLE THINGS STRAIGHT FIRST.

24       YOU'RE ACCUSING THE BROWSER APPLICATION.   THAT'S ONE THING

25       YOU'RE ACCUSING; RIGHT?

1     A.   I'M ACCUSING -- THAT'S ONE OF THE APPLICATIONS ON THE

2     ACCUSED DEVICES.

3     Q.   RIGHT.  THAT'S ONE APPLICATION; RIGHT?

4     A.   THAT'S ONE OF THE TWO APPLICATIONS I'M ACCUSING.

5     Q.   RIGHT.  AND YOU'RE ACCUSING THE MESSAGING APPLICATION;

6     RIGHT?

7     A.   ON THE ACCUSED DEVICES, THAT'S THE OTHER ONE.

8     Q.   ON THE ACCUSED DEVICES.  AND THAT'S ONE APPLICATION;

9     RIGHT?

10    A.   IT'S AN APPLICATION, YES.

11    Q.   SO LET ME ASK YOU THIS:  DO YOU THINK YOUR TESTIMONY HERE

12    TODAY WAS CONSISTENT WITH YOUR TESTIMONY TWO WEEKS AGO AND WITH

13    THE COURT'S CONSTRUCTION?

14    A.   YES, I DO.

15    Q.   OKAY.  DO YOU THINK YOUR TESTIMONY, THOUGH, THAT YOU GAVE

16    THE LAST TWO TIMES YOU WERE HERE PRESUMED A DIFFERENT

17    DEFINITION OF THE ANALYZER SERVER; ISN'T THAT RIGHT?

18    A.   NO, I BELIEVE NOT.

19    Q.   OKAY.  WELL, LET'S LOOK AT THAT.

20         SO IF WE LOOK AT YOUR PREVIOUS TRIAL TESTIMONY -- THIS

21    WOULD BE ON YOUR DIRECT EXAM, THIS WOULD BE 893, LINES 7 TO 24.

22         AND BEFORE I ASK YOU THIS, YOU UNDERSTAND THAT THE JURY

23    HAS TO APPLY THE CONSTRUCTIONS THAT THE COURT GAVE TO THE JURY

24    THIS MORNING WHEN DETERMINING WHETHER THERE'S INFRINGEMENT;

25    CORRECT?

1      A.   YES.

2      Q.   OKAY.  AND SO YOUR OPINIONS, YOU AGREE, WOULD ONLY BE

3      HELPFUL IF YOU APPLIED THAT SAME CONSTRUCTION WHEN YOU WERE

4      TALKING ABOUT WHETHER AN ANALYZER SERVER IS PRESENT; RIGHT?

5      A.   THAT SOUNDS CORRECT.

6      Q.   OKAY.  SO LET'S LOOK HERE, THIS IS YOUR TRIAL TESTIMONY

7      THE LAST TIME, FROM YOUR COUNSEL, "DO YOU SEE THE TERM ANALYZER

8      SERVER FOR DETECTING STRUCTURES IN THE DATA, AND FOR LINKING

9      ACTIONS?"

10          DO YOU SEE THAT?

11     A.   YES, I DO.

12          MS. KREVANS:  YOUR HONOR, THIS IS PRECISELY THE TYPE

13     OF QUESTION THAT WAS --

14          THE COURT:  NO, OVERRULED.

15          GO AHEAD, PLEASE.

16     BY MR. NELSON:

17     Q.   AND PART OF YOUR UNDERSTANDING OF AN ANALYZER SERVER IS

18     THAT IT'S A PIECE OF SOFTWARE TO BE USED ACROSS APPLICATIONS,

19     RIGHT?

20          DO YOU SEE THAT QUESTION?

21          AND YOUR ANSWER, "WELL, ACTUALLY, THE DEFINITION OF

22     ANALYZER SERVER IS -- IT'S GIVEN RIGHT HERE IN THE CLAIM

23     LANGUAGE.  IT'S A PIECE OF SOFTWARE THAT PERFORMS THESE

24     FUNCTIONS."

25          DO YOU SEE THAT?

1     A.   YES, I SEE THAT.

2     Q.   AND THAT WAS YOUR TESTIMONY; RIGHT?

3     A.   I BELIEVE SO, YES.

4     Q.   OKAY.  NOW LET'S LOOK AT THE CROSS-EXAMINATION.  THIS

5     WOULD GO TO 917 OF YOUR TRIAL TESTIMONY, LINES 10 TO 20, AND

6     THIS IS ME ASKING YOU THE QUESTIONS, RIGHT?

7          AND I ASKED YOU, "WELL, THE ANALYZER SERVER IS A

8     STRUCTURAL LIMITATION; RIGHT?  YOU NEED TO HAVE AN ANALYZER

9     SERVER THAT PERFORMS FUNCTIONS; RIGHT?"

10         YOUR ANSWER:  "THAT'S CORRECT.

11         "SO JUST HAVING THE FUNCTIONS THERE DOESN'T MEAN YOU HAVE

12    AN ANALYZER SERVER; RIGHT?"

13         YOUR RESPONSE, "IT'S DIFFICULT FOR ME TO THINK OF A

14    SCENARIO WHERE THE SOFTWARE IS PERFORMING THE FUNCTIONALITY OF

15    THE ANALYZER SERVER, BUT SOMEHOW THERE'S NOT REALLY SOFTWARE

16    THERE PERFORMING THE FUNCTIONALITY OF THE ANALYZER SERVER."

17         DO YOU SEE THAT?

18    A.   YES, I DO.

19    Q.   SO YOU GAVE NO STRUCTURAL LIMITATIONS TO THE ANALYZER

20    SERVER IN YOUR PREVIOUS TESTIMONY; ISN'T THAT RIGHT?

21    A.   I WAS -- I WAS JUST DESCRIBING WHAT THE CLAIM LANGUAGE

22    REQUIRED, YES.

23    Q.   OKAY.  NOW LET'S GO TO REBUTTAL.  YOU CAME BACK LAST

24    TUESDAY, I BELIEVE, AND TESTIFIED ON REBUTTAL.

25         DO YOU RECALL THAT?

1      A.    YES.

2      Q.    OKAY.  SO NOW LET'S LOOK AT WHAT YOU WERE APPLYING FOR

3   PURPOSES OF YOUR OPINION TO THE ANALYZER SERVER DEFINITION.

4   OKAY?

5      A.    OKAY.

6      Q.    ALL RIGHT.  CAN WE PUT UP THE TRIAL TESTIMONY AT 2789,

7   LINES 18 TO 24.

8          SO HERE'S A QUESTION FROM YOUR COUNSEL:  "WHAT DOES THE

9   CLAIM REQUIRE, AS IT WOULD HAVE BEEN UNDERSTOOD BY A PERSON OF

10  ORDINARY SKILL IN THE ART WHEN THIS PATENT WAS FILED, OF

11  SOMETHING IN ORDER FOR IT TO BE THE ANALYZER SERVER OF THE

12  CLAIM?"

13         YOUR ANSWER:  "IT IS PROGRAM ROUTINES, MEANING THAT IT'S

14  SOFTWARE, AND IT'S SOFTWARE THAT DETECTS STRUCTURES IN THE DATA

15  AND LINKS ACTIONS TO THE DETECTED STRUCTURES."

16         RIGHT?

17     A.    THAT'S WHAT IT SAYS, YES.

18     Q.    NOTHING IN THERE ABOUT A SERVER ROUTINE; RIGHT?

19     A.    I DIDN'T SAY THE WORDS "SERVER ROUTINE."

20     Q.    NOTHING IN THERE ABOUT BEING SEPARATE FROM THE CLIENT;

21  RIGHT?

22     A.    RIGHT.  THE QUESTION WAS ABOUT, CORRECT, WHAT A PERSON OF

23  ORDINARY SKILL WOULD SAY.

24     Q.    RIGHT.  NOTHING IN THERE ABOUT BEING SEPARATE FROM THE

25  CLIENT, NOTHING IN THERE ABOUT RECEIVING DATA FROM THE CLIENT;

1    RIGHT?

2    A.   THAT'S CORRECT.

3    Q.   SO --

4    A.   WELL, I MEAN, IT HAS TO RECEIVE DATA FROM THE CLIENT AND

5    IT WOULD NORMALLY BE SEPARATE.  BUT I DIDN'T USE THOSE WORDS

6    THERE, THAT'S CORRECT.

7    Q.   IN FACT, DURING YOUR PREVIOUS TESTIMONY, YOU NEVER

8    IDENTIFIED WHAT A CLIENT WAS, DID YOU?

9    A.   I DIDN'T USE THOSE WORDS, I BELIEVE.

10   Q.   RIGHT.  AND, IN FACT, WHEN YOU WERE GOING THROUGH THE

11   ANALYZER SERVER LIMITATION -- THIS IS DURING YOUR FIRST

12   TESTIMONY -- WHEN YOUR COUNSEL ASKED YOU ABOUT -- TO DESCRIBE

13   YOUR OPINIONS ABOUT ANALYZER SERVER RIGHT THROUGH THE TIME WHEN

14   YOU CHECKED THE BOX, YOU NEVER USED THE TERM "SERVER," DID YOU?

15   A.   EVERY DEMONSTRATIVE WHICH THE JURY SAW HAD A HEADING

16   DESCRIBING ANALYZER SERVER.  I MEAN, I DON'T REALLY UNDERSTAND

17   THE QUESTION, BECAUSE --

18   Q.   YOU NEVER -- YOU CHECKED THE BOX AND YOU NEVER EXPLAINED

19   WHY A SERVER WAS PRESENT; RIGHT?

20        MS. KREVANS:  YOUR HONOR, THIS REALLY DOES GO TO

21   EXACTLY WHAT THE COURT PRECLUDED.

22        THE COURT:  OVERRULED.

23      GO AHEAD, PLEASE.  YOU MAY ANSWER.

24        THE WITNESS:  I WAS EXPLAINING EXACTLY WHAT THE

25   SERVER CODE WAS AND EACH DEMONSTRATIVE THAT I CREATED HAD A

1      HEADING OF ANALYZER SERVER, AND I BELIEVE THE QUESTIONS I WAS

2      BEING ASKED WERE, CAN YOU EXPLAIN THIS ASPECT OF THE ANALYZER

3      SERVER?

4           SO I DON'T -- I MEAN, I WAS TALKING ABOUT THE SERVER.

5      THAT'S WHAT I WAS DISCUSSING THEN.

6      BY MR. NELSON:

7      Q.   WITHOUT EVER USING THE TERM "SERVER," RIGHT?

8      A.   I -- IN MY DIRECT TESTIMONY?

9      Q.   YES.

10     A.   I USED THE TERM "ANALYZER SERVER" SEVERAL TIMES IN MY

11     DIRECT TESTIMONY.

12          ARE YOU TALKING ABOUT A SPECIFIC QUOTE?  WE COULD TAKE A

13     LOOK AT IT.

14     Q.   I'M TALKING ABOUT FROM THE TIME WHEN YOU WERE DESCRIBING

15     THAT LIMITATION.  I LOOKED VERY CAREFULLY.  I KNOW YOU

16     TESTIFIED LAST WEEK THAT YOU USED IT.  DID YOU GO BACK AND

17     LOOK?

18     A.   YES.

19     Q.   YOU WENT BACK AND LOOKED AND YOU FOUND IT IN THERE?

20     A.    IN MY DIRECT TESTIMONY, I USED THE TERM "ANALYZER SERVER"

21     FOUR TIMES AT LEAST.

22     Q.   OKAY.  WHEN TALKING ABOUT THIS ELEMENT?  IS THAT RIGHT?

23     A.   THE QUESTION THAT I WAS ASKED WAS TO EXPLAIN A PIECE OF

24     THE ANALYZER SERVER, AND IN DOING SO, I WAS -- I HAD A

25     DEMONSTRATIVE WHERE THE TITLE OF IT WAS THIS PART OF THE

1        ANALYZER SERVER HAD SPECIFIC CODE.

2            SO IT'S POSSIBLE THAT I DIDN'T REDUNDANTLY USE THE WORD

3        "SERVER" AGAIN, BUT I WAS DESCRIBING THE CODE IN THE ANALYZER

4        SERVER AT THAT TIME.

5        Q.   OKAY.  SO LET'S TALK NOW ABOUT HOW THE COURT'S

6        CONSTRUCTION THAT WAS GIVEN THIS MORNING APPLIES TO THIS

7        MESSAGING APPLICATION.  OKAY?  THAT'S ONE APPLICATION; RIGHT?

8        A.   YEAH, IT'S THAT AND BROWSER APPLICATIONS, YES.

9        Q.   RIGHT.  SO YOU TALKED ABOUT THE LINKIFY SHARED LIBRARY;

10       RIGHT?

11       A.   YES.

12       Q.   SO YOU UNDERSTAND, SIR, THAT THE LINKIFY SHARED LIBRARY

13       ONLY RUNS AS PART OF THE MESSAGING APPLICATION; CORRECT?

14       A.   NO, THAT'S NOT CORRECT.

15       Q.   YOU THINK THAT LINKIFY CAN RUN ON ITS OWN?

16       A.   OTHER APPLICATIONS CAN RUN LINKIFY.  IT'S A SHARED

17       LIBRARY.

18       Q.   YEAH.  I'M TALKING ABOUT IN THE CONTEXT OF -- YOU'RE

19       ACCUSING THE MESSAGING APPLICATION; RIGHT?

20       A.   THE MESSAGING AND BROWSER, YES.

21       Q.   OKAY.  SO LET'S STICK WITH THE MESSAGING APPLICATION.

22       A.   OKAY.

23       Q.   THE MESSAGING -- LINKIFY, THAT CAN ONLY RUN AS PART OF THE

24       MESSAGING APPLICATION, CORRECT, WHEN IT'S BEING USED BY THE

25       MESSAGING APPLICATION?

1     A.   AS I SAID, LINKIFY CAN BE RUN WITH ANY OTHER APPLICATION,

2     NOT JUST MESSAGING.  WHEN MESSAGING IS RUNNING, MESSAGING IS

3     ACCESSING THAT CODE AND THAT'S BEING EXECUTED AS MESSAGING

4     RUNS.

5     Q.   AND WHEN IT DOES THAT, IT'S RUNNING AS PART OF THE

6     MESSAGING APPLICATION; ISN'T THAT RIGHT?

7     A.   NO, THAT'S NOT CORRECT.

8     Q.   OKAY.  WELL, LET'S -- YOU TALKED ABOUT MS. HACKBORN'S

9     TESTIMONY; RIGHT?  YOU WERE HERE FOR THAT TESTIMONY?

10    A.   YES, I WAS.

11    Q.   AND YOU AGREE SHE WROTE THAT CODE; RIGHT?

12    A.   I GUESS THAT'S CORRECT.  THAT'S MY UNDERSTANDING.

13    Q.   SO LET'S LOOK AT HER TRIAL TESTIMONY AT 1585.  IT'LL BE

14    AROUND LINES -- OH, OKAY -- 9 TO 18.

15         "OKAY.  CAN YOU TELL US WHAT LINKIFY IS?

16         "SO LINKIFY IS SOME HELPER CODE IN THE FRAMEWORK LIBRARY

17    FOR APPLICATIONS WHEN THEY HAVE SOME TEXT, IF THEY WANT TO FIND

18    THINGS LIKE E-MAIL ADDRESSES OR WEB -- OR URL'S OR PHONE

19    NUMBERS IN IT, TO FIND THOSE AND TURN THOSE INTO HYPERLINKS.

20         "NOW, DOES LINKIFY RUN ON ITS OWN THEN?

21         "ANSWER:  LINKIFY DOES NOT RUN ON ITS OWN.  IT RUNS AS

22    PART OF THE APPLICATION THAT'S USING IT.

23         "DID YOU IMPLEMENT AN ANDROID LINKIFY ISSUE AS A SERVER?

24         "NO, IT'S NOT A SERVER."

25         DO YOU SEE THAT?

1    A.   I DO.

2    Q.   ISN'T IT THE CASE, SIR, THAT LINKIFY ONLY RUNS AS PART OF

3    THE APPLICATION?

4    A.   THE APPLICATION ACCESSES IT WHEN IT RUNS, AND SO IT GOES

5    TO WHERE THE CODE IS AND IT RUNS IT THERE.

6         AS IT'S RUNNING, IT'S NOT RUNNING AS A STANDALONE PROGRAM

7    IF THAT'S WHAT YOU'RE ASKING.  I THINK THAT'S WHAT SHE'S SAYING

8    HERE.

9    Q.   IN FACT, IT CAN'T, RIGHT?  LINKIFY CAN'T RUN OUTSIDE OF

10   THE APPLICATION, ABSOLUTELY CANNOT, EVER, PERIOD; RIGHT?

11   A.   IT'S NOT WRITTEN AS A STANDALONE APPLICATION.  BUT IT'S

12   WRITTEN AS SOFTWARE THAT ANY PROGRAM CAN GO AND ACCESS AND

13   EXECUTE WHERE IT IS IN MEMORY.

14   Q.   OKAY.  NOW, LET'S TALK ABOUT CONTENT BUILDER FOR A SECOND.

15   THAT'S WHAT YOU -- THAT'S THE SHARED LIBRARY CODE THAT YOU SAY

16   IS THE ANALYZER SERVER IN BROWSER; RIGHT?  AT LEAST IN ONE

17   VERSION OF BROWSER?

18   A.   CONTENT DETECTOR.

19   Q.   CONTENT DETECTOR, EXCUSE ME.  I APPRECIATE THAT.

20   A.   FOR JELLY BEAN, YES.

21   Q.   OKAY.  SO LET'S TALK ABOUT THAT.

22        NOW, YOU SAID THAT CONTENT DETECTOR IS USED BY A LOT OF

23   OTHER APPLICATIONS.  ISN'T THAT WHAT YOU JUST SAID ON YOUR

24   TESTIMONY?

25   A.   I SAID THAT LINKIFY IS -- THERE'S A PIECE OF LINKIFY THAT

1     CALLS INTO PART OF CONTENT DETECTOR IN ORDER TO FIND POSTAL

2     ADDRESSES.

3     Q.   OKAY.  ISN'T IT TRUE, SIR, THAT YOU DID NOT IDENTIFY, IN

4     YOUR REPORT, ANY APPLICATION, BEYOND THE BROWSER APPLICATION,

5     THAT YOU IDENTIFIED THAT RUNS CONTENT DETECTOR?

6     A.   I DON'T RECALL IDENTIFYING OTHER APPLICATIONS.

7          BUT I RECALL -- I BELIEVE I SAID THAT LINKIFY DOES CALL IN

8     THE CONTENT DETECTOR, AS I JUST SAID A MINUTE AGO, AND, YEAH,

9     AS YOU SAID, MESSAGING CALLS LINKIFY.

10    Q.   SO, NOW, LET'S TALK ABOUT -- WE'VE SEEN SOME OF THIS

11    TESTIMONY AND YOU REFERENCED SOME OF THIS LAST WEEK CONCERNING

12    SOME E-MAILS BETWEEN THE INVENTORS.

13         DX 334, I BELIEVE, IS WHAT IT IS.

14         AND I WANT TO FOCUS IN ON THAT LAST ONE.  THERE WAS A

15    SENTENCE THAT I BELIEVE THAT YOU IDENTIFIED.

16         IF YOU GO TO PAGE 3, SIR.  AND IF WE HIGHLIGHT IN THAT

17    FIRST PARAGRAPH, THIS IS A SENTENCE THAT YOU HIGHLIGHTED IN

18    YOUR TESTIMONY LAST WEEK, I BELIEVE, IT SAYS "I AM LOOKING INTO

19    IMPLEMENTING THE SERVER AS A SHARED LIBRARY RATHER THAN AS A

20    FIRST CLASS APPLICATION."

21         DO YOU SEE THAT?

22    A.   YES.

23    Q.   NOW, FIRST OF ALL, YOU KNOW THAT THE DATE ON THIS DOCUMENT

24    IS EIGHT MONTHS AFTER THE PATENT WAS FILED; CORRECT?

25    A.   THAT'S CORRECT.

1    Q.   AND YOU KNOW THAT THE PATENT, THE '647 PATENT THAT WE'RE

2    TALKING ABOUT NEVER MAKES MENTION OF SHARED LIBRARY; CORRECT?

3    A.   THAT'S CORRECT.

4    Q.   NOW, YOU ALSO ARE AWARE THAT DR. BONHURA, WHO WAS THE

5    GENTLEMAN THAT WORKED ON THE ANALYZER SERVER PORTION PIECE OF

6    THE '647 PATENT -- ISN'T THAT RIGHT?

7    A.   HE WAS ONE OF THE PEOPLE.  DAVID WRIGHT WORKED ON IT ALSO.

8    Q.   SO YOU'RE AWARE THAT HE WAS ASKED ABOUT THIS AT HIS

9    DEPOSITION; CORRECT?  THIS VERY SENTENCE?

10   A.   YES.

11   Q.   AND SO -- AND LET'S JUST GO THROUGH THAT SEQUENCE JUST SO

12   IT'S CLEAR.

13        IF WE COULD PUT UP -- I NEED TO FIND WHERE I AM --

14        MS. KREVANS:  YOUR HONOR, THIS IS BEYOND THE SCOPE OF

15   DIRECT, WELL BEYOND THE SCOPE.

16        MR. NELSON:  IT'S CERTAINLY NOT BEYOND THE SCOPE,

17   YOUR HONOR.  HE'S TESTIFIED THAT HE BELIEVES A SHARED LIBRARY

18   IS A SERVER AND THIS GOES TO THAT TESTIMONY.

19        THE COURT:  GO AHEAD.  I'LL ALLOW IT.  OVERRULED.

20        GO AHEAD, PLEASE.

21   BY MR. NELSON:

22   Q.   SO IF WE GO FIRST TO, I BELIEVE PAGE 107, YOU SHOULD HAVE

23   THE DEPOSITION IN FRONT OF YOU.

24        AND HERE COUNSEL FOR SAMSUNG ASKED SOME QUESTIONS.  "OKAY.

25   SO YOU SAY I'M LOOKING INTO IMPLEMENTING THE SERVER AS A SHARED

1    LIBRARY RATHER THAN AS A FIRST CLASS APPLICATION.  SO DO YOU

2    HAVE AN UNDERSTANDING WHAT THAT SENTENCE MEANS?"

3         DO YOU SEE THAT?

4    A.   ACTUALLY, CAN YOU POINT ME TO THE EXHIBIT IN THE BINDER OF

5    THE DEPOSITION?

6    Q.   YEAH.  IT SHOULD BE IN THE BINDER THAT YOU RECEIVED.

7    DX 506.  EXCUSE ME.

8    A.   OKAY.  WHAT PAGE IS THIS?

9    Q.   IT'S 107.  YOU HAVE IT HERE ON THE SCREEN AS WELL.

10   A.   OKAY.

11   Q.   AND THE ANSWER, "NOT REALLY.  IT DOESN'T SOUND LOGICAL,

12   SINCE IF I WERE TALKING ABOUT A SHARED -- A SERVER IT WOULDN'T

13   BE A SHARED LIBRARY."

14        DO YOU SEE THAT?

15   A.   I DO SEE THAT.

16   Q.   OKAY.  THEN YOU POINTED, IN YOUR TESTIMONY, TO A QUESTION

17   THAT WAS ASKED LATER IN THE DEPOSITION, I BELIEVE THIS IS

18   AROUND PAGE 157, BY APPLE'S COUNSEL; CORRECT?

19        MS. KREVANS:  I'M SORRY, YOUR HONOR.  THE WITNESS

20   DIDN'T POINT IN HIS TESTIMONY TO ANYTHING IN HIS DEPOSITION, SO

21   THIS IS CLEARLY BEYOND THE SCOPE.

22        MR. NELSON:  IT'S THE SAME ISSUE, YOUR HONOR.

23        THE COURT:  IT'S THE SAME ISSUE, BUT HE WAS OPEN TO

24   CROSS ON THIS TESTIMONY LAST WEEK AND YOU DIDN'T CROSS HIM.

25        BUT GO AHEAD.  I'LL ALLOW THIS QUESTION.  GO AHEAD.

1       OVERRULED.

2       BY MR. NELSON:

3       Q.   SO THIS WAS A QUESTION BY APPLE'S COUNSEL; CORRECT?

4       A.   SORRY.  CAN YOU REPEAT THE QUESTION BEFORE THAT?

5       Q.   YES.  SO THEN, THIS IS TESTIMONY YOU POINTED TO LAST WEEK,

6       RIGHT, A QUESTION BY APPLE'S COUNSEL, IF WE LOOK HERE AT

7       PAGE 157, CONTINUING ON TO 158, IT SAYS, "SO IT'S FAIR TO SAY

8       THAT AT LEAST AT THIS TIME, YOU REVIEWED THE SERVER AS BEING

9       ABLE TO BE IMPLEMENTED AS A SHARED LIBRARY OR AS A FIRST CLASS

10      APPLICATION; IS THAT FAIR TO SAY?

11          "I THINK THAT'S FAIR."

12          DO YOU SEE THAT?

13      A.   YES, I SEE THAT.

14      Q.   NOW, THAT WAS A QUESTION BY APPLE'S COUNSEL AFTER A BREAK

15      IN THE DEPOSITION; CORRECT?

16      A.   THAT'S MY UNDERSTANDING, YES.

17      Q.   AND THEN SAMSUNG'S COUNSEL CAME BACK, AND THIS IS ON

18      PAGE 168, SO SHORTLY THEREAFTER, AND ASKED DR. BONHURA, "AND

19      SPECIFICALLY --" OR EXCUSE ME.  IT'S AT LINE 13.  YOU SHOULD

20      SEE THAT.

21          "I UNDERSTOOD YOU TO TESTIFY WHEN I ASKED YOU QUESTIONS

22      ABOUT THIS THAT SHARED LIBRARY IMPLEMENTATION WAS DISTINCT FROM

23      A CLIENT SERVER IMPLEMENTATION; IS THAT CORRECT?

24          "THE WITNESS:  IT'S -- CONSTRUCTURALLY IT SHARES SOME

25      SIMILARITIES WITH CLIENT SERVER, BUT IN TRUTH IT'S A DIFFERENT

```
1     KIND OF IMPLEMENTATION, WHERE A LIBRARY IS LINKED TO THE

2     APPLICATION."

3          DO YOU SEE THAT?

4     A.   I SEE THAT.

5     Q.   SO THIS IS TESTIMONY YOU CONSIDERED; CORRECT?

6     A.   YES.

7     Q.   SO MS. HACKBORN TESTIFIED THAT A SHARED -- THE LIBRARY

8     RUNS AS PART OF THE APPLICATION; RIGHT?

9     A.   I DON'T KNOW HER EXACT WORDS, BUT WE WERE DISCUSSING THAT

10    A MINUTE AGO.

11    Q.   RIGHT.  AND THE INVENTOR SAID THE SHARED LIBRARY IS

12    DIFFERENT THAN A SERVER; RIGHT?

13    A.   NO.  ACTUALLY, WHAT HE'S SAYING IS THAT THERE ARE

14    DIFFERENT WAYS TO IMPLEMENT AN ANALYZER SERVER, AND IF YOU LOOK

15    AT THE FULL CONTEXT OF THE E-MAIL EXCHANGE, WHAT HE'S REFERRING

16    TO HERE WHEN HE SAYS CLIENT SERVER IS A SPECIFIC IMPLEMENTATION

17    OF A CLIENT SERVER THAT USES APPLE EVENTS.  THAT'S HIS

18    SHORTHAND FOR THAT, WHICH IS CLEAR FROM THE E-MAIL BACK IN

19    1998.

20    Q.   WELL, LET'S PUT THE COURT'S CONSTRUCTION UP OF THIS

21    ANALYZER SERVER TERM.  THAT'S THE FIRST ONE.

22         SO THE CONSTRUCTION IS "A SERVER ROUTINE SEPARATE FROM A

23    CLIENT THAT RECEIVES DATA HAVING STRUCTURES FROM THE CLIENT;"

24    RIGHT?

25    A.   YES.
```

1      Q.   SO THAT'S A CLIENT SERVER IMPLEMENTATION AS WELL, ISN'T

2      IT?

3      A.   YEAH.  THERE ARE MULTIPLE WAYS TO IMPLEMENT A CLIENT

4      SERVER.  ONE WAY IS WITH SHARED LIBRARIES.  ANOTHER WAY IS WITH

5      SOMETHING LIKE APPLE EVENTS, WHICH IS WHAT DR. BONHURA WAS

6      REFERRING TO WHEN HE USED THE TERM "CLIENT SERVER" AND

7      DISTINGUISHED IT FROM "A SHARED LIBRARY IMPLEMENTATION OF

8      CLIENT SERVER."

9      Q.   SO LET ME ASK YOU ABOUT THIS GLUE CODE THAT YOU TALKED

10     ABOUT.  YOU NEVER MENTIONED GLUE CODE IN YOUR PREVIOUS TWO

11     SESSIONS OF TESTIMONY; DID YOU?

12     A.   NO.  I MENTIONED IT IN MY REPORT.  I DIDN'T MENTION IT IN

13     THE SESSIONS.

14     Q.   YEAH, DIDN'T MENTION IT AT ALL.

15          AND YOU SAID THAT GLUE CODE IS A COMMONLY USED TERM IN

16     COMPUTER SCIENCE.  ISN'T THAT WHAT YOU JUST SAID IN YOUR

17     TESTIMONY?

18     A.   YES, I BELIEVE SO.

19     Q.   YOU TEACH COMPUTER SCIENCE, DON'T YOU?

20     A.   I CERTAINLY DO.

21     Q.   OKAY.  AND YOU DON'T TEACH THE TERM "GLUE CODE," YOU DON'T

22     USE IT IN YOUR COURSES, DO YOU?

23     A.   DO I HAVE A SLIDE WITH A DEFINITION OF IT?  NO.

24          BUT WE USE IT ALL THE TIME.  THAT'S HOW WE CONNECT

25     DIFFERENT THINGS TOGETHER IN THE SYSTEM.  LIKE WHEN I TEACH

```
 1      OPERATING SYSTEMS OR COMPILERS, WE'RE OFTEN USING THAT CONCEPT.

 2      Q.   SIR, YOU WERE DEPOSED IN THIS CASE, WEREN'T YOU?

 3      A.   YES, I WAS.

 4      Q.   DO YOU -- IF YOU COULD GO TO YOUR DEPOSITION AT PAGE

 5      267 -- ACTUALLY, YOU'LL FIND THIS AT PAGE 268, LINE 9.  LINE 7

 6      IS THE QUESTION.  EXCUSE ME.

 7      A.   CAN YOU POINT ME TO WHERE THIS IS?

 8      Q.   YEAH.  WE CAN GO BACK JUST TO GET THE CONTEXT HERE.  THIS

 9      WOULD BE IN YOUR DEPOSITION, WHICH IS IN FRONT OF YOU, RIGHT?

10      A.   IS THERE A TAB FOR IT?

11      Q.   IT SHOULD BE IN THE THICK BINDER.

12           MAY I APPROACH, YOUR HONOR?

13              THE COURT:  YES.  BUT IT'S NOT IN THE BINDER.  IT'S

14      ONLY THE EXPERT REPORT IN THE BINDER.

15      BY MR. NELSON:

16      Q.   WELL, I HAVE IT HERE ON THE SCREEN.

17      A.   OKAY.  I'D JUST LIKE TO SEE THE WHOLE CONTEXT.

18              MS. KREVANS:  YOUR HONOR, I WOULD REQUEST THAT THE

19      WITNESS BE GIVEN A COPY OF HIS DEPOSITION.

20              THE COURT:  HE SHOULD BE ALLOWED TO SEE THAT.

21              MR. NELSON:  YEAH.  I'LL GET THAT.  I APOLOGIZE.

22              THE COURT:  NO PROBLEM.

23              MS. KREVANS:  WHAT'S THE DEPOSITION DATE?

24              MR. NELSON:  THE DEPOSITION DATE IS SEPTEMBER 19TH,

25      2013.
```

```
 1            MAY I APPROACH, YOUR HONOR?

 2                 THE COURT:  PLEASE, GO AHEAD.

 3      BY MR. NELSON:

 4      Q.   HERE IT IS (INDICATING).

 5      A.   THANK YOU.

 6      Q.   YOU'RE WELCOME.

 7            SO YOU SEE HERE -- ARE YOU THERE?  LET ME KNOW.  IT STARTS

 8      AT 267.

 9      A.   YES, I'M THERE.

10      Q.   OKAY.  SO QUESTION:  "WHERE DOES THE TERM INTERFACE GLUE

11      CODE COME FROM?

12            "ANSWER:  I DON'T RECALL EXACTLY WHERE IT CAME FROM.  I

13      THINK I -- I MEAN, I'VE HEARD GLUE CODE MENTIONED IN MY

14      EXPERIENCE A NUMBER OF TIMES, AND THAT SEEMED LIKE THE MOST

15      APPROPRIATE WAY TO DESCRIBE IT.

16            "QUESTION:  DO YOU TEACH THIS TERM IN YOUR COURSES?

17            "ANSWER:  I DON'T RECALL USING THAT TERM IN MY CLASSES."

18            DO YOU SEE THAT?

19      A.   I SEE THAT, YES.

20      Q.   OKAY.  SO DOES THAT REFRESH YOUR RECOLLECTION THAT YOU

21      DON'T ACTUALLY USE THAT TERM IN YOUR CLASSES?

22      A.   WELL, I THINK, AS I SAID A MINUTE AGO, I DON'T RECALL

23      HAVING A SLIDE IN MY CLASS WHERE I DEFINE THE TERM.

24            BUT, FOR EXAMPLE, I RECALL THAT IN THE ANDROID DEVELOPER'S

25      GUIDE WHERE IT TALKS ABOUT INTENT OBJECTS, IT DESCRIBES INTENTS
```

1       AS THE GLUE BETWEEN ACTIVITIES.

2            SO DESCRIBING THAT GLUE BETWEEN DIFFERENT COMPONENTS IS

3       FAIRLY COMMON IN COMPUTER SCIENCE.

4       Q.   AND YOU'RE NOT AWARE OF THAT TERM BEING USED IN ANY

5       TEXTBOOKS, ARE YOU?

6       A.   I DIDN'T -- IT'S SUCH A COMMON CONCEPT, I WASN'T LOOKING

7       FOR THE TERM.  SORRY, NO.

8       Q.   ALL RIGHT.  LET'S STEP BACK A MINUTE HERE AND LET'S TALK

9       ABOUT MESSAGING.

10           SO -- I WANT TO PUT THE COURT'S CONSTRUCTION UP HERE, TOO,

11      OF THE ANALYZER SERVER TERM.

12           SO WE'RE IN AGREEMENT, SIR, THAT MESSAGING IS A SINGLE

13      APPLICATION; RIGHT?

14      A.   IT'S DISTINCT FROM BROWSER IF THAT'S WHAT YOU'RE ASKING.

15      Q.   YES.

16      A.   YES.

17      Q.   RIGHT.  BUT WHAT YOU ACCUSE, MESSAGING IS ITS OWN

18      STANDALONE APPLICATION; CORRECT?

19      A.   YEAH.  THERE'S A CLIENT PART, WHICH IS THE MESSAGING CODE,

20      AND THEN IT INTERACTS WITH THE ANALYZER SERVER.

21      Q.   WELL, THAT'S WHERE -- I'M GOING TO GET THERE.  BECAUSE

22      YOUR OPINION -- BECAUSE WE KNOW THAT THE COURT SAYS THAT AN

23      ANALYZER SERVER HAS TO BE A SERVER ROUTINE SEPARATE FROM A

24      CLIENT THAT RECEIVES DATA HAVING STRUCTURES FROM THE CLIENT;

25      RIGHT?

1    A.    THAT'S WHAT IT SAYS, YES.

2    Q.    RIGHT.  THAT'S WHAT IT HAS TO BE.  THAT'S WHAT THE JURY

3    HAS TO -- THE DEFINITION THE JURY HAS TO FIND, AND THEY HAVE TO

4    FIND THIS IN ORDER TO DETERMINE WHETHER THIS ELEMENT IS

5    PRESENT; RIGHT?

6    A.    YES, AND THAT'S WHAT I'VE IDENTIFIED.

7    Q.    OKAY.  SO YOUR OPINION, THEN, IS THAT WITHIN ONE SINGLE

8    APPLICATION, YOU HAVE BOTH A CLIENT AND A SEPARATE SERVER?  IS

9    THAT WHAT YOU'RE SAYING?

10   A.    NO.  WHAT I -- I IDENTIFIED THE CLIENT AS THE APPLICATION

11   AND THEN ANALYZER SERVER IS THE SERVER THAT IT EXERCISES.

12         SO WHEN I SAID MESSAGING AND BROWSER, WHEN WE TALK ABOUT

13   SOFTWARE, WE ALSO TALK ABOUT THE SOFTWARE THAT THAT SOFTWARE

14   EXERCISES OR INTERACTS WITH.

15         SO I DIDN'T ENUMERATE ALL OTHER SHARED LIBRARIES AND

16   THINGS THAT IT CALLS.

17   Q.    THAT RUN AS PART OF THAT APPLICATION; RIGHT?

18   A.    NO.  SHARED LIBRARIES DON'T RUN AS PART OF AN APPLICATION.

19   IT RUNS ON TOP OF AN OPERATING SYSTEM ALSO, AND THAT'S

20   SOMETHING THAT IT INTERACTS WITH.  IT'S NOT PART OF THE

21   APPLICATION.

22   Q.    SO THEN YOU DISAGREE WITH MS. HACKBORN?  THAT'S WHAT

23   YOU'RE SAYING?  YOUR OPINION IS BASED ON DISAGREEING WITH

24   MS. HACKBORN, WHO WROTE THAT LINKIFY CODE; ISN'T THAT RIGHT?

25   A.    I DON'T UNDERSTAND WHAT YOU ARE SAYING WE DISAGREE OVER.

1    Q.   WELL, MS. HACKBORN -- MS. HACKBORN SAID THAT THE LINKIFY

2    CODE ONLY RUNS AS PART OF THE APPLICATION, DIDN'T SHE?

3    A.   I BELIEVE WHAT SHE'S REFERRING TO IS THE FACT THAT A

4    SHARED LIBRARY CODE NEEDS TO BE EXERCISED BY A PARTICULAR

5    APPLICATION.  IT'S NOT WRITTEN AS A STANDALONE PROGRAM, EVEN

6    THOUGH IT IS DISTINCT AND SEPARATE FROM THE APPLICATION.

7    Q.   WELL, LET ME ASK YOU THIS, SIR:  SO YOU AGREE THAT

8    LINKIFY, IT CAN'T RUN ON ITS OWN; RIGHT?

9    A.   YEAH.  I THINK THAT'S WHAT WE JUST WERE TALKING ABOUT.

10   Q.   AND IF THE LINKIFY SHARED LIBRARY ISN'T THERE, THE

11   MESSAGING APPLICATION WON'T RUN; RIGHT?

12   A.   YES.  I MEAN, SIMILAR TO HOW AN APPLICATION CAN'T RUN

13   WITHOUT AN OPERATING SYSTEM.  IT HAS TO HAVE SOMETHING TO GET

14   IT TOGETHER.

15   Q.   STRAIGHT YES OR NO:  WITHOUT THE LINKIFY CODE, THE

16   MESSAGING APPLICATION WON'T RUN?

17   A.   YES.  WELL, IF YOU --

18   Q.   THAT'S OKAY.

19   A.   WHEN YOU GET THE HARDWARE, IT CALLS LINKIFY -- WITHOUT AN

20   OPERATING SYSTEM, NOTHING WILL RUN, EITHER.  WITHOUT THE

21   HARDWARE, NOTHING WOULD RUN, EITHER.

22        SO THERE ARE MANY THINGS THAT HAVE TO BE THERE FOR AN

23   APPLICATION TO RUN.

24   Q.   OKAY.  SO LET ME ASK YOU THIS, THEN, SIR:  WOULD YOU

25   DESCRIBE MY HEART AS A BLOOD PUMPING ROUTINE SEPARATE FROM ME

1    THAT RECEIVES BLOOD FROM ME?  WOULD YOU?

2    A.   I'M ONLY A PH.D., NOT A MEDICAL DOCTOR.  MY UNDERSTANDING

3    IS THE HEART IS PART OF YOU, BUT I DON'T KNOW EXACTLY HOW THE

4    ANALOGY APPLIES TO THE SOFTWARE WE'RE TALKING ABOUT.

5              MR. NELSON:  ALL RIGHT.  THANK YOU, SIR.

6         I HAVE NO FURTHER QUESTIONS.

7              THE COURT:  ALL RIGHT.  THE TIME IS NOW 9:56.  IS

8    THERE ANY REDIRECT?

9              MS. KREVANS:  THERE IS NOT, YOUR HONOR.

10             THE COURT:  OKAY.  ALL RIGHT.  SO THEN I BELIEVE THIS

11   WITNESS MAY STEP DOWN AT THIS TIME.  CORRECT?

12             MS. KREVANS:  THAT IS CORRECT.  WE WILL BRING HIM

13   BACK IN --

14             THE COURT:  UNDERSTOOD.  UNDERSTOOD.

15        ALL RIGHT.  YOU MAY STEP DOWN, BUT NOT PERMANENTLY.

16        ALL RIGHT.  I'M NOW GOING TO ASK MR. NELSON IF HE WOULD

17   PLEASE CALL HIS WITNESS.

18             MR. NELSON:  YES, YOUR HONOR.

19             THE COURT:  OKAY.  PLEASE GO AHEAD.

20             MR. NELSON:  THANK YOU, YOUR HONOR.  SAMSUNG CALLS

21   DR. KEVIN JEFFAY.

22        **(DEFENDANTS' WITNESS, KEVIN JEFFAY, WAS PREVIOUSLY SWORN.)**

23             THE COURT:  DR. JEFFAY, YOU ARE STILL UNDER OATH.  WE

24   WILL NOT SWEAR YOU IN AGAIN.

25             THE WITNESS:  THANK YOU, YOUR HONOR.

1          MR. NELSON:  THANK YOU, YOUR HONOR.  MAY I PROCEED?

2          THE COURT:  YES, PLEASE.  TIME IS NOW 9:57.

3     GO AHEAD, PLEASE.

4          MR. NELSON:  THANK YOU.

5     MR. KOTARSKI, COULD YOU -- IS HE HERE?

6     YOUR HONOR, I GUESS -- CAN I HAVE A SECOND BECAUSE MY

7     GRAPHICS PERSON --

8          THE COURT:  THAT'S FINE.  WE'LL TAKE A BREAK.  THIS

9     IS NOT COUNTING TOWARDS YOUR TIME.

10         MR. NELSON:  I'M SORRY.  I DIDN'T REALIZE THAT.

11         THE COURT:  NOT A PROBLEM.

12    (PAUSE IN PROCEEDINGS.)

13         THE COURT:  DO ANY OF THE JURORS NEED TO TAKE A QUICK

14    BIO BREAK?  WE COULD TAKE A FIVE MINUTE BREAK NOW.

15    OH, OKAY.  WE WERE WAITING.

16    SORRY.

17         MR. NELSON:  JUST A FAKE.

18         THE COURT:  ALL RIGHT.  9:58.  LET'S GO AHEAD,

19    PLEASE.

20         MR. NELSON:  ALL RIGHT.  MR. KOTARSKI, COULD YOU

21    PLEASE PUT UP THE ANALYZER SERVER CONSTRUCTION?

22                 **FURTHER REDIRECT EXAMINATION**

23    BY MR. NELSON:

24    Q.  SO LET ME ASK YOU, DR. JEFFAY, ARE YOU FAMILIAR WITH THIS

25    CONSTRUCTION?

FURTHER RECROSS MOWRY

1    A.   YES, I AM.

2    Q.   CAN YOU TELL US HOW THIS CONSTRUCTION COMPORTS WITH THE

3    OPINIONS YOU PREVIOUSLY OFFERED IN THIS CASE?

4    A.   PERFECTLY.  I MEAN, THIS DOVETAILS VERY NATURALLY.  I'VE

5    BEEN USING THIS CONSTRUCTION SINCE THE VERY FIRST DAY I WORKED

6    ON THIS CASE.

7    Q.   AND WHY DO YOU SAY THAT?

8    A.   BECAUSE WHEN I -- WHEN I FIRST STARTED WORKING ON THIS, IT

9    SEEMED TO ME A KEY ISSUE WAS THAT THERE HAD TO BE A SERVER, AND

10   THE TESTIMONY THAT I GAVE -- EVEN THOUGH WE COULDN'T USE THIS

11   CONSTRUCTION AT THAT TIME, THE TESTIMONY THAT I GAVE

12   ESSENTIALLY WAS YOU HAD TO USE A SERVER, AND NOW THIS

13   CONSTRUCTION GIVES ME ADDITIONAL REASONS TO EXPLAIN WHY THERE

14   IS NO SERVER IN THE ACCUSED PRODUCTS.

15        MS. KREVANS:  YOUR HONOR, WE OBJECT AND MOVE TO

16   STRIKE FOR THE REASONS BRIEFED TO THE COURT, AND ALSO BECAUSE

17   IN HIS EXPERT REPORT, THIS OPINION HAD NO -- THIS WITNESS HAD

18   NO VIEWS, HE SAID PERSONALLY, ABOUT THE MEANING OF THE CLAIM.

19        MR. NELSON:  YOUR HONOR, THIS IS EXACTLY WHAT THE

20   CONSTRUCTION WAS THAT HE OFFERED ALL HIS OPINIONS UNDER, SO I'M

21   NOT -- IT'S IN HIS REPORT.  IT'S ALL THERE.  WE'VE BEEN THROUGH

22   THIS, SO I'M NOT EVEN SURE THAT I UNDERSTAND THE OBJECTION.

23        THE COURT:  WELL, WE CAN GO THROUGH THE TESTIMONY OF

24   WHAT HIS OPINION WAS.

25        THE OBJECTION IS SUSTAINED.

```
 1              MS. KREVANS:  MOVE TO STRIKE, YOUR HONOR, PLEASE.

 2              MR. NELSON:  COULD I HAVE A LITTLE -- I'M NOT SURE

 3     WHAT -- YOUR HONOR, HE CAN DESCRIBE HIS OPINIONS; RIGHT?

 4              THE COURT:  LET'S TAKE A -- LET'S GO AHEAD AND TAKE

 5     OUR BREAK NOW.  I'D LIKE THE JURY TO STEP OUT, PLEASE.

 6              MR. NELSON:  SURE.

 7          (JURY OUT AT 10:00 A.M.)

 8              THE COURT:  AND YOU MAY STEP DOWN, DR. JEFFAY.

 9              THE WITNESS:  THANK YOU.

10              MS. KREVANS:  SO, YOUR HONOR, THE FACTS HERE ARE IN

11     PROFESSOR MOWRY'S EXPERT REPORT.  HE GAVE OPINIONS UNDER THE

12     PLAIN AND ORDINARY MEANING BECAUSE THERE WAS NO CONSTRUCTION AT

13     THE TIME.

14          HE ALSO GAVE OPINIONS, TO WHICH HE TESTIFIED FACTUALLY

15     THIS MORNING, IN HIS EXPERT REPORT UNDER THE CONSTRUCTION THAT

16     HAD BEEN PROPOSED BY MOTOROLA AND ADOPTED BY JUDGE POSNER IN

17     THE MOTOROLA CASE.

18          HE IDENTIFIED THE SAME CODE FOR BOTH, BUT HE EXPLAINED IN

19     HIS REPORT HOW THE PLAIN AND ORDINARY VIEW, IN HIS VIEW, WAS

20     MET.

21          AND HE ALSO EXPLAINED HOW THE MOTOROLA CONSTRUCTIONS WERE

22     MET.  THAT'S BEEN IN HIS REPORT ALL ALONG.

23          HE DID NOT TESTIFY UNDER THE MOTOROLA CONSTRUCTIONS WHEN

24     HE WAS HERE BEFORE BECAUSE THEY HAD NOT BEEN ADOPTED BY THIS

25     COURT.
```

1          IN FACT, SAMSUNG DIDN'T ASK THE COURT TO ADOPT THEM.

2          AND NOW FOR THIS WITNESS -- AND I DIDN'T ASK HIM, ON

3     DIRECT, TO EXPLAIN TO THE JURY THAT, IN FACT, HE'S HELD THESE

4     OPINIONS UNDER THIS CONSTRUCTION ALL ALONG BECAUSE THEY HADN'T

5     BEEN ADOPTED, AND MY UNDERSTANDING OF THE COURT'S ORDER WAS

6     THERE WASN'T TO BE EXAMINATION OF THE WITNESSES ABOUT WHETHER

7     OR NOT THEIR VIEW OF THE CLAIMS HAD BEEN APPROVED BY A COURT.

8          AND SO NOW WHAT'S HAPPENED IS THAT MR. NELSON HAS VERY

9     UNFAIRLY, ESPECIALLY IN LIGHT OF THE RATIONALE OF THE COURT'S

10    ORDER ABOUT THE SCOPE OF CROSS, PUT ON HIS WITNESS TO TRY TO

11    TESTIFY THAT HIS VIEW ABOUT THE CLAIMS WAS ENDORSED BY THE

12    COURT, THAT HE WAS RIGHT ABOUT THE CLAIM CONSTRUCTION SOMEHOW

13    AND PROFESSOR MOWRY WAS WRONG.

14         THIS IS EXACTLY WHAT THE COURT'S ORDER SAID WAS NOT

15    PROPER.

16              MR. NELSON:  WELL, THAT'S NOT WHAT HE WAS DOING AT

17     ALL, YOUR HONOR.

18              THE COURT:  WELL, WHY DOES HE SAY THAT HE WASN'T

19     ALLOWED TO USE IT?  I'M SURE YOU ALL PRIMED HIM TO SAY THAT.

20              MR. NELSON:  NO.  I --

21              THE COURT:  OH, DON'T TELL ME THAT YOU DIDN'T PREP

22     HIM TO GET THAT IN.

23              MR. NELSON:  NO.

24              THE COURT:  HE SAYS, EVEN THOUGH WE COULDN'T USE THIS

25     CONSTRUCTION AT THAT TIME.

1          MS. KREVANS:  THAT'S EXACTLY MY POINT, YOUR HONOR.

2          THE COURT:  I'M SURE HE WAS PREPPED VERY THOROUGHLY

3    OVER THE WEEKEND AND PRIMED TO SQUEEZE THAT IN, WHICH I DON'T

4    APPRECIATE.

5          MR. NELSON:  WELL, I --

6          THE COURT:  IF YOU WANT TO -- LET'S GET INTO IT,

7    THEN.  LET'S GET IN.  HE'S BEEN ALL OVER THE MAP ABOUT WHAT THE

8    PLAIN AND ORDINARY MEANING OF THIS TERM IS.  HE'S SAID HE HAS

9    OPINIONS, HE DOESN'T HAVE OPINIONS.  HE'S BEEN ALL OVER THE

10   MAP.

11       IF YOU WANT TO GET INTO THIS, I'M GOING TO LET APPLE GET

12   INTO THIS --

13         MR. NELSON:  NO, NO, NO.

14         THE COURT:  -- BECAUSE DR. JEFFAY HAS A LOT OF

15   DIFFERENT OPINIONS ON PLAIN AND ORDINARY MEANING OF ANALYZER

16   SERVER, AND IF WE'RE GOING TO GET INTO IT, THEN I'M GOING TO

17   OPEN THE DOOR AND THEY CAN GO TO TOWN ON THIS.

18         MR. NELSON:  NO, THAT'S NOT THE INTENTION AT ALL.

19         THE COURT:  HE HAS A LOT OF OPINIONS ON PLAIN AND

20   ORDINARY MEANING OF ANALYZER SERVER.

21         MR. NELSON:  THAT'S NOT THE --

22         THE COURT:  WELL, I MEAN, IF HE'S SAYING THAT HE HAD

23   THIS OPINION ALL ALONG, BUT I PREVENTED HIM FROM USING THIS,

24   EVEN THOUGH, QUOTE, "WE COULDN'T USE THIS CONSTRUCTION AT THAT

25   TIME," THEN I'M SAYING THE DOOR IS OPEN.

```
 1              MR. NELSON:  WELL, HE'S NOT SAYING THAT.

 2              THE COURT:  GET INTO IT.  HE'S ALL OVER THE MAP ON

 3      PLAIN AND ORDINARY MEANING OF ANALYZER SERVER.

 4              MR. NELSON:  NO, THAT'S NOT WHAT HE'S -- THAT'S NOT

 5      WHAT HE'S DOING AT ALL.  ALL HE'S SAYING IS THAT WHAT HE WAS

 6      TESTIFYING TO ABOUT THE REQUIREMENT OF THE SERVER, BEFORE, NOT

 7      OFFERING ANY CONSTRUCTIONS.  THIS CONSTRUCTION UNDERSCORES

 8      THAT.

 9          SO HE'S NOT GOING TO ENDORSE ANY PARTICULAR CONSTRUCTION

10      OR SAY THAT THAT WAS THE CONSTRUCTION THAT HE BELIEVED WAS

11      CORRECT ALL ALONG.  I UNDERSTAND THAT.  THAT'S NOT --

12              THE COURT:  THAT'S WHAT HE SAID.  THAT'S JUST WHAT HE

13      SAID.  I UNDERSTOOD THIS ALL ALONG, BUT THE COURT WOULDN'T LET

14      ME USE IT.  BUT NOW THAT THEY'RE LETTING ME USE IT, IT

15      COMPLETELY BOLSTERS WHAT I'VE SAID ALL ALONG.

16          THAT'S EXACTLY WHAT HE JUST SAID.  THAT'S THE FIRST THING

17      THAT CAME OUT OF HIS MOUTH.

18          ALL RIGHT.  WELL, LET ME -- POINT TO WHAT HE'S GOING TO

19      GET INTO.  LET ME TAKE A LOOK AT IT.  WHAT'S HE GOING TO GET

20      INTO?

21              MR. NELSON:  HE'S JUST GOING TO GET INTO -- WE'RE

22      GOING TO GO TO HIS OPINIONS REGARDING THE LACK OF AN ANALYZER

23      SERVER UNDER THE COURT'S CONSTRUCTION.

24              THE COURT:  NO.  I WANT TO SEE WHAT HE JUST SAID.  I

25      WANT TO SEE THE BACKUP FOR WHAT HE JUST SAID.  YOU POINT ME TO
```

```
 1        WHAT HE SAID, BECAUSE I'VE SEEN WHAT HE SAID ON PLAIN AND

 2        ORDINARY MEANING.  IT IS ALL OVER THE MAP.  OKAY?  IT IS ALL

 3        OVER THE MAP.

 4             SO YOU TELL ME, WHAT DID HE SAY?  I WANT TO SEE -- IF HE'S

 5        GOING TO SAY THAT HE HAD THIS ALL ALONG AND THIS COURT WOULDN'T

 6        LET HIM USE IT, THEN I WANT TO SEE IT.  SO YOU POINT ME TO THE

 7        RELEVANT PARAGRAPHS WHERE I'M GOING TO CHECK IT MYSELF.

 8                  MR. NELSON:  SURE.  WELL, AS TO THAT SPECIFIC

 9        QUESTION, YOUR HONOR, IT WOULD BE AT PAGE 125 --

10                  THE COURT:  OKAY.  LET ME JUST --

11                  MR. NELSON:  -- OF HIS REPORT.

12                  THE COURT:  AND THIS IS THE INVALIDITY, OR IS THIS

13        THE INFRINGEMENT?

14                  MR. NELSON:  IT WOULD BE THE OPENING REPORT, BECAUSE

15        THAT'S WHERE HE DEALT WITH CLAIM CONSTRUCTION, YOUR HONOR.

16                  THE COURT:  ALL RIGHT.

17                  MR. NELSON:  SO IT WOULD BE THE INVALIDITY REPORT.

18                  THE COURT:  AND WHAT IS THE PARAGRAPH NUMBER, PLEASE?

19                  MR. NELSON:  WELL, HE INTRODUCES IT AT 285, OR EXCUSE

20        ME, 284, AND THEN YOU'LL SEE THE HEADING ON 285.

21                  THE COURT:  ALL RIGHT.

22                  MR. NELSON:  AND IT CONTINUES THROUGH 293.

23                  MS. KREVANS:  I'M SORRY.  WHICH REPORT IS THIS?

24                  MR. NELSON:  THIS IS THE OPENING REPORT, SO IT'S THE

25        ONE ON INVALIDITY.  IT'S PAGE 125.
```

```
1            (PAUSE IN PROCEEDINGS.)

2                THE COURT:  ALL RIGHT.  WELL, I DON'T SEE HIM

3       SAYING -- HE JUST SAYS WHAT APPLE AND DR. MOWRY ARE ARGUING

4       DON'T MATCH JUDGE POSNER'S CONSTRUCTION.  DOESN'T MEET

5       JUDGE POSNER'S CONSTRUCTION.

6            SO YOU'VE GOT TO POINT ME TO SOMETHING ELSE.  BECAUSE I

7       THINK HE'S PURPOSEFULLY NOT TRIED TO TAKE A POSITION ON A LOT

8       OF THINGS AND JUST SAY, I'M JUST GOING TO ANALYZE IT WHETHER

9       IT'S CONSISTENT WITH JUDGE POSNER OR NOT.

10           SO YOU BETTER POINT ME TO A PARAGRAPH IN HERE WHERE HE

11      SAYS THIS IS MY OPINION, OKAY, BECAUSE THAT'S BEEN MY

12      UNDERSTANDING, HE'S NOT WANTED TO TAKE A POSITION, HE'S BEEN

13      SAYING, WELL, ACCORDING TO JUDGE POSNER, AND THAT'S WHY HE'S

14      ALL OVER THE MAP ON PLAIN AND ORDINARY MEANING IN HIS

15      DEPOSITION.

16           SO GO AHEAD.

17           SEE, I'M JUST LOOKING AT PARAGRAPH -- ALL RIGHT.  I'M

18      LOOKING UNDER CLAIM CONSTRUCTION, WHICH IS ROMAN NUMERAL VII,

19      STARTING WITH PARAGRAPH 283 TO 293.  I DON'T SEE HIM REALLY

20      TAKING A POSITION.  HE'S REALLY MORE SAYING APPLE IS NOT

21      CONSISTENT WITH JUDGE POSNER'S CONSTRUCTION AND THE INVENTORS

22      ARE NOT CONSISTENT WITH JUDGE POSNER'S CONSTRUCTION.

23           SO YOU TELL ME WHERE HE SAYS, NO, THIS IS MY CONSTRUCTION.

24      WHERE DOES HE DO THAT?

25                MR. NELSON:  THE -- I'M GETTING THE STATEMENT IN THE
```

1        DEPOSITION, YOUR HONOR.

2              THE COURT:  NO.  I WANT TO SEE IT IN HIS EXPERT

3        REPORT, BECAUSE HE TOLD ME ALL ALONG, HE TESTIFIED TO THE JURY

4        ALL ALONG SINCE DAY ONE, THIS HAS BEEN MY POSITION AND I

5        HAVEN'T BEEN ALLOWED TO USE IT BECAUSE THE COURT WOULDN'T LET

6        ME.

7              SO I WANT TO SEE THAT, BECAUSE I'M LOOKING AT HIS EXPERT

8        REPORT AND I DON'T SEE HIM TAKING OWNERSHIP.  HE SAYS, THIS IS

9        WHAT JUDGE POSNER DID AND I THINK THAT APPLE, MOWRY, AND THE

10       INVENTORS ARE INCONSISTENT WITH JUDGE POSNER.

11             I DON'T SEE HIM SAYING, THIS IS MY CONSTRUCTION OF

12       ANALYZER SERVER.  I AM ADOPTING THE JUDGE POSNER CONSTRUCTION.

13       WHERE IS THAT?  I WANT TO SEE THAT.  THAT'S WHAT HE TESTIFIED

14       TO.

15             I DON'T KNOW.  DR. JEFFAY IS HERE.  POINT ME TO THE

16       PARAGRAPH, SIR.  YOU JUST TESTIFIED TO IT.  WHERE IS IT?

17             (PAUSE IN PROCEEDINGS.)

18             THE COURT:  I'M LOOKING AT LINKING ACTIONS TO THE

19       DETECTED STRUCTURE, SAME THING.  THIS IS JUDGE POSNER'S

20       CONSTRUCTION.  JUDGE POSNER REJECTED APPLE'S CONSTRUCTION.

21             I DON'T SEE ANYTHING SAYING, "I AM ADOPTING JUDGE POSNER'S

22       CONSTRUCTION."  I DON'T SEE THAT.  SO YOU NEED TO SHOW ME WHERE

23       IT IS.

24             I'M LOOKING AT HIS EXPERT REPORT HERE.  IS THERE SOMETHING

25       ELSE?  WHERE DOES HE SAY, "I AM ADOPTING JUDGE POSNER'S

1    CONSTRUCTION," WHICH IS HOW HE JUST TESTIFIED?

2         (PAUSE IN PROCEEDINGS.)

3         MR. NELSON:  YOUR HONOR, IT'S IN THE DEPOSITION.

4         THE COURT:  NO.  I WANT TO SEE IT IN THE EXPERT

5    REPORT.  THE EXPERT REPORT IS HIS DISCLOSURE OF HIS EXPERT

6    OPINIONS.

7         I DO NOT SEE IT IN HERE.  I THINK HE HAS BEEN NOT WANTING

8    TO TAKE A POSITION BECAUSE YOU DIDN'T KNOW HOW THE MOTOROLA

9    CONSTRUCTION WAS GOING TO COME OUT ON APPEAL, SO HE NEVER

10   WANTED TO OWN IT, SO HE JUST SAID, WELL, ASSUMING

11   JUDGE POSNER'S CONSTRUCTION, THIS IS OR IS NOT CONSISTENT WITH

12   THAT CONSTRUCTION.

13        HE NEVER SAID, "I'M TAKING OWNERSHIP OF THAT

14   CONSTRUCTION."  I MEAN, YOU CAN'T TELL ME A SINGLE SENTENCE IN

15   HIS EXPERT REPORT WHERE HE TAKES OWNERSHIP OF JUDGE POSNER'S

16   CONSTRUCTION.  OKAY?

17        I THINK THAT IS CONTRARY TO HOW HE JUST TESTIFIED, WHICH

18   IS, FROM DAY ONE, I HAVE ADOPTED THIS CONSTRUCTION AND THE

19   COURT WOULDN'T LET ME USE IT AND NOW I CAN USE IT.

20        I DON'T SEE THAT IN HIS REPORT.  IT'S NOT IN HIS REPORT.

21   IF IT'S NOT IN HIS REPORT, IT SHOULD BE EXCLUDED.

22        MR. NELSON:  WELL, IT --

23        THE COURT:  IT'S NOT IN HIS REPORT.  WHERE IS IT IN

24   HIS REPORT?  SHOW ME THE LINE AND THE PARAGRAPH AND THE PAGE

25   NUMBER AND I WILL CHANGE MY MIND.

1          BUT I DO NOT SEE IT.

2              MR. NELSON:  I UNDERSTAND WHAT YOU'RE SAYING, YOUR

3      HONOR, AND HE DID TAKE THE EXPLICIT POSITION IN THE DEPOSITION.

4      AND RULE 26, THE DISCLOSURES INCLUDE THE DEPOSITION.  THEY HAD

5      THE OPPORTUNITY TO ASK.  I CAN POINT YOU TO THAT.

6              THE COURT:  DID HE EVER SUPPLEMENT HIS EXPERT REPORT?

7      DID HE EVER SUPPLEMENT HIS EXPERT REPORT TO SAY, THESE ARE MY

8      CONSTRUCTIONS OF ANALYZER SERVER AND MY CONSTRUCTIONS OF

9      LINKING ACTIONS TO DETECTED STRUCTURES?  DID HE EVER SUPPLEMENT

10     HIS EXPERT REPORT?

11         THAT'S THE WAY HE SHOULD HAVE DONE IT AND SAID, THESE ARE

12     MY CONSTRUCTIONS.  I AM OWNING THESE AS MY OPINION.

13             MR. NELSON:  HE DID THAT IN HIS DEPOSITION.

14             THE COURT:  HE NEVER DID IN A SUPPLEMENTAL EXPERT

15     REPORT?

16             MS. KREVANS:  HE DID NOT, YOUR HONOR.

17         NOT ONLY THAT, IN HIS DEPOSITION, OVER AND OVER AGAIN, HE

18     SAID, I'M USING THE POSNER CONSTRUCTIONS.  I DON'T HAVE MY OWN

19     OPINION ABOUT THIS.  I WAS ASKED TO USE THE CONSTRUCTIONS AS

20     GIVEN.  I DON'T HAVE AN OPINION AS TO PROPER CONSTRUCTION OF

21     ANALYZER SERVER.  MULTIPLE TIMES.

22             MR. NELSON:  NO.  AT PAGE -- HERE'S ONE EXAMPLE.

23             THE COURT:  ALL RIGHT.  I'M GOING TO LOOK AT HIS --

24     I'M GOING TO LOOK AT HIS -- WHY DON'T YOU PASS UP WHATEVER IT

25     IS IN THE DEPOSITION TESTIMONY?

```
 1              MR. NELSON:  YES, YOUR HONOR.

 2              THE COURT:  WHY DON'T YOU PASS THAT UP?

 3              MR. NELSON:  DO WE HAVE ANOTHER COPY?

 4              THE COURT:  PASS IT UP, PLEASE.

 5              MR. NELSON:  DO YOU HAVE ANOTHER COPY?

 6              THE COURT:  LET ME SEE IT.  THAT'S MY UNDERSTANDING,

 7      TOO.  HE JUST SAYS THIS IS JUDGE POSNER'S CONSTRUCTION.

 8              MS. KREVANS:  WHILE THEY'RE FINDING A COPY FOR YOU, I

 9      CAN TELL YOU, YOUR HONOR, HE SAYS, IN HIS DEPOSITION, HE NEVER

10      OFFERED AN OPINION ABOUT A PERSON OF ORDINARY SKILL'S

11      UNDERSTANDING.  HE USED THE POSNER CONSTRUCTIONS.

12         AT ONE PLACE IN HIS DEPOSITION, HE SAYS HE THINKS IN HIS

13      REPORT, HE OFFERED, HE SAID, I PERSONALLY AGREE.

14         BUT, IN FACT, HE DIDN'T IN HIS REPORT.

15         AND THEN MULTIPLE TIMES IN HIS DEPOSITION, HE CONFIRMS

16      THAT HE HAS NO OPINION AND THAT HE HAS SIMPLY BEEN ASKED TO USE

17       THE POSNER CONSTRUCTION.

18         SO THEY'RE GOING TO SHOW YOU PAGE 96 WHERE ONE PLACE HE

19      SAYS, I WAS ASKED TO USE THESE CONSTRUCTIONS.  I THINK I SAID I

20      PERSONALLY AGREE.

21         BUT IN HIS REPORT, HE NEVER DID, IN FACT, WHICH IS WHY

22      THEY CAN'T SHOW IT TO YOU.

23              THE COURT:  I'D LIKE TO SEE THE WHOLE TRANSCRIPT,

24       PLEASE.  I DON'T WANT CHERRY PICKED PAGES.

25              MR. NELSON:  UNDERSTOOD.
```

1              THE COURT:  I AM AWARE OF THE INCONSISTENCIES IN HIS

2     DEPOSITION AS TO PLAIN AND ORDINARY MEANING.  THERE IS ONE

3     POINT WHERE HE SAYS IT IS, BUT EVERYWHERE ELSE HE SAYS, I'M NOT

4     MAKING AN OPINION.  I'M NOT STATING AN OPINION ON THAT.  I'M

5     ACCEPTING JUDGE POSNER'S CONSTRUCTION.

6          HE DOES SAY AT ONE POINT THAT HE PERSONALLY AGREES WITH

7     IT.  SO --

8              MR. NELSON:  SO THERE'S TWO, TWO SPECIFIC PLACES I'D

9     POINT YOU TO, YOUR HONOR.

10             THE COURT:  OKAY.  WHERE DO YOU WANT ME TO LOOK?

11             MR. NELSON:  SO IF YOU'D LOOK AT PAGE 84, YOU'LL SEE

12    THE QUESTION -- THIS BEGINS AT LINE 4, WHICH IS A SPECIFIC

13    REFERENCE, "DO YOU AGREE WITH THE CONSTRUCTIONS THAT WERE

14    ISSUED BY THE COURT IN THE MOTOROLA LITIGATION?"

15             MS. KREVANS:  AND HIS ANSWER IS, "YOU'RE ASKING ME

16    SOMETHING I HAVEN'T DONE.  I WAS JUST ASKED TO ACCEPT IT.  IT

17    SEEMS LIKE AN APPROPRIATE, BUT I HAVEN'T CONSIDERED WHAT

18    ALTERNATE CONSTRUCTIONS MIGHT BE."

19             MR. NELSON:  NO.  SO WHAT IT SAYS, "SO IN YOUR

20    OPINION, THAT'S THE CONSTRUCTION BY THE COURT AS TO HOW ONE OF

21    ORDINARY SKILL WOULD UNDERSTAND THE TERM?"

22         IT'S CONSISTENT WITH HOW A PERSON OF ORDINARY SKILL IN THE

23    ART WOULD UNDERSTAND THE TERM.

24             THE COURT:  HE'S ALL OVER THE PLACE ON HIS

25    DEPOSITION.  WE HAVE LOOKED INTO THIS LAST WEEK.  HE IS ALL

1    OVER THE PLACE ON PLAIN AND ORDINARY MEANING.  HE DOESN'T WANT

2    TO TAKE OWNERSHIP OF THE MOTOROLA CONSTRUCTION BECAUSE YOU ALL

3    WEREN'T SURE WHAT WAS GOING TO HAPPEN ON APPEAL.

4         BUT THEN HE DOES SAY AT ONE POINT THAT, I PERSONALLY AGREE

5    WITH IT.

6         BUT THEN HE SAYS, I WASN'T ASKED TO TAKE A POSITION.  I

7    WAS JUST ASKED TO ASSUME IT.

8         MS. KREVANS:  YOUR HONOR, IF I COULD REFER YOU TO

9    PAGE 97 AT LINE 18 -- AND THIS IS ONE OF MANY TIMES IN THE DEPO

10   THIS HAPPENED -- QUESTION, 97, LINE 18, "SO SITTING HERE TODAY,

11   BASED ON ALL THE INFORMATION YOU'VE SEEN, DO YOU HAVE AN

12   OPINION AS TO WHAT THE PROPER CONSTRUCTION OF ANALYZER SERVER

13   IS AS IT APPEARS IN CLAIM 1?

14       "ANSWER:  NO."

15         MR. NELSON:  THE --

16         MS. KREVANS:  AND THE SAME QUESTION AND ANSWER IS ON

17   PAGE 98, OUTSIDE THE CONSTRUCTIONS?

18       NO.

19         MR. NELSON:  AND AS WELL TO THIS --

20         MS. KREVANS:  AND ON PAGE 99, YOUR HONOR, WHEN HE'S

21   ASKED, "CAN YOU IDENTIFY ANYTHING IN THE INTRINSIC RECORD THAT

22   WOULD SUPPORT THE CONSTRUCTION ISSUED IN THE MOTOROLA CASE?"

23   AND HIS ANSWER IS, "IF YOU'RE ASKING ME TO GO THROUGH THE CLAIM

24   CONSTRUCTION EXERCISE," THIS IS 99, LINES 13 THROUGH 19, "OF

25   FORMULATING OPINIONS OF WHAT A PERSON OF ORDINARY SKILL IN THE

1        ART WOULD UNDERSTAND, I HAVEN'T DONE IT."

2             MANY TIMES HE SAID "I HAVEN'T DONE IT."

3             AND HE WAS CLEARLY COACHED THIS MORNING TO SAY THAT HE

4        HAD, THAT HE'S HAD THESE OPINIONS ALL ALONG AND THE COURT HAS

5        NOW ENDORSED HIS VIEWS.

6                  MR. NELSON:  THE -- ALSO AS TO THE SPECIFIC POINT ON

7        SHARED LIBRARIES, WHICH IS WHAT HE WAS TALKING ABOUT, AT

8        PARAGRAPH 292 OF HIS REPORT, THIS IS THE OPENING REPORT, HE

9        SAYS, SPECIFICALLY, "I NOTE FURTHER TO THE EXTENT APPLE

10       INTERPRETS THE ANALYZER SERVER CLAIM TERM, AND NOT JUST

11       JUDGE POSNER'S CONSTRUCTION OF IT, TO COVER SHARED LIBRARIES OR

12       OTHER CODES THAT RUN ON APPLICATION PROCESS, IT IS SIMILARLY

13       INCONSISTENT WITH THE UNDERSTANDING A PERSON OF ORDINARY SKILL

14       IN THE ART WOULD HAVE OF USE OF THE TERM 'SERVER' IN THE

15       CLAIM."

16            SO THAT'S EXACTLY THE POINT THAT HE'S TALKING ABOUT, YOUR

17       HONOR.  HE HAS HAD THAT OPINION FROM DAY ONE, SHARED LIBRARIES

18       ARE NOT CONSISTENT WITH THE UNDERSTANDING OF SERVER, AND THAT'S

19       EXACTLY WHAT HE'S TALKING ABOUT.

20                 THE COURT:  OKAY.  BUT DON'T YOU THINK WHAT HE JUST

21       SAID WAS MISLEADING?  IN HIS EXPERT REPORT, HE DOES NOT ADOPT

22       JUDGE POSNER'S CONSTRUCTIONS.  HE JUST CAME IN ON THE STAND AND

23       SAID, SINCE DAY ONE, I'VE HAD THESE CONSTRUCTIONS, I WAS NOT

24       ALLOWED TO USE THEM, BUT NOW THEY BOLSTER WHAT I'VE SAID FROM

25       DAY ONE.  DON'T YOU THINK THAT'S A LITTLE BIT MISLEADING?  HE

1    DOESN'T ADOPT JUDGE POSNER'S CONSTRUCTION IN HIS EXPERT REPORT.

2    HE DOES NOT.  OKAY?

3         SO I'M GOING TO STRIKE WHAT HE JUST SAID.  YOU CAN START

4    OVER.  I'M GOING TO STRIKE THAT HE SAID, I WASN'T ALLOWED TO

5    USE IT.  I THINK HE WAS PRIMED TO SAY THAT AND THAT'S IMPROPER.

6         HIS REPORT DOES NOT ADOPT JUDGE POSNER'S CONSTRUCTION, AND

7    HIM NOW TESTIFYING THAT HE HAS, FROM DAY ONE, IS NOT CORRECT.

8    IT'S NOT TRUE.

9         ALL RIGHT.  GO AHEAD.  LET'S BRING THE JURY BACK.

10              MS. KREVANS:  YOUR HONOR?

11              THE COURT:  WHAT?

12              MS. KREVANS:  MAY WE JUST REQUEST THAT WHEN YOU

13   STRIKE IT, YOU INSTRUCT THE JURY THAT THEY -- THAT IT WAS

14   INAPPROPRIATE AND IRRELEVANT AND THEY SHOULD NOT CONSIDER IT?

15        AND THAT YOU ALSO, BEFORE THE JURY COMES BACK IN, INSTRUCT

16   COUNSEL AND THE WITNESS, WHO IS -- I CAN'T POLICE THIS BY

17   OBJECTIONS BECAUSE HE'S INJECTING THINGS INTO ANSWERS.  WE

18   DON'T WANT TO HAVE THIS HAPPEN AGAIN.  THE WITNESS SHOULD NOT

19   BE TESTIFYING --

20              THE COURT:  WELL, DON'T LET HIM ANSWER.  YOU JUST

21   NEED TO OBJECT RIGHT AWAY.  DON'T LET HIM FINISH THE ANSWER.

22   YOU JUST NEED TO OBJECT.  OKAY?

23              MS. KREVANS:  THANK YOU, YOUR HONOR.

24              THE COURT:  THIS IS YOUR CROSS.

25              MS. KREVANS:  I WOULD JUST LIKE TO POINT OUT TO THE

1    COURT, BECAUSE -- WHAT THEY HAVE DONE HERE IS CREATE A

2    SITUATION WHERE I CAN'T REALLY CROSS HIM ON THIS WITHOUT

3    BRINGING -- BECAUSE OF HIS REPORT, WITHOUT BRINGING OUT THE

4    MOTOROLA OPINION FROM TWO YEARS AGO.

5        THAT'S WHAT THEY'RE TRYING TO EXPLOIT HERE.  I'M LIMITED

6    IN CROSS BECAUSE THE QUESTIONS THAT WOULD DO THIS ON CROSS AND

7    THE IMPEACHMENT TESTIMONY FROM HIS DEPOSITION IS ALL JUST

8    LIBERALLY INTERTWINED WITH MOTOROLA.

9        AND SO CROSS CAN'T FIX THIS.  THIS IS SOMETHING THAT HAS

10   TO BE FIXED WITH COUNSEL AND THERE HAS TO BE APPROPRIATE

11   QUESTIONS AND THE WITNESS NOT GIVING INAPPROPRIATE ANSWERS.

12       HOW CAN I SHOW HIM, FOR IMPEACHMENT, TESTIMONY FROM THE

13   DEPOSITION THAT THE JURY WILL BE LOOKING AT AND SEEING

14   SOMETHING ABOUT THE MOTOROLA CASE AND THE POSNER OPINION?

15       THAT IS WHY THIS IS SO INAPPROPRIATE, AND THEY KNOW IT.

16           THE COURT:  SO WHAT'S YOUR SUGGESTION?

17           MS. KREVANS:  MY SUGGESTION IS, WHEN THE JURY COMES

18   BACK, THAT THE COURT STRIKE THE TESTIMONY, INFORM THE JURY

19   THEY'RE NOT TO CONSIDER IT, AND THAT COUNSEL AND THE WITNESS BE

20   INSTRUCTED THAT HE, IN HIS TESTIMONY, LIMIT HIMSELF, AS WE DID,

21   TO HOW THE CONSTRUCTION THE COURT HAS JUST GIVEN APPLIES TO THE

22   ACCUSED PRODUCTS; AND THEN WHEN WE GET TO INVALIDITY, TO THE

23   PRIOR ART, WITH NO COMMENTARY ABOUT PAST VIEWS, HOW LONG HE HAS

24   HELD THESE VIEWS, WHEN HE FIRST HELD THEM, ET CETERA.

25       THERE'S NO RELEVANT REASON TO TALK ABOUT THIS.  ALL THAT

1    HE HAS TO DO TO GIVE THE TESTIMONY THAT THE COURT BROUGHT

2    WITNESSES BACK TO GIVE IS TO SAY THERE'S A CONSTRUCTION IN

3    FRONT OF ME, HERE IS HOW IT APPLIES TO THESE DEVICES.  HERE IS

4    HOW IT APPLIES TO THE PRIOR ART.

5          THERE IS NO NEED TO COMMENT ON PAST OPINIONS, AND THAT

6    WOULD FIX THE PROBLEM FOR FURTHER TESTIMONY TODAY.

7               THE COURT:  WHAT'S YOUR OPINION, MR. NELSON?

8               MR. NELSON:  SO HE -- HE'S NOT GOING TO TALK ABOUT

9    CLAIM CONSTRUCTION.  THAT WASN'T THE INTENTION, AND I APOLOGIZE

10   FOR THAT.

11              THE COURT:  WELL, HE WAS PRIMED TO GET INTO IT RIGHT

12   OFF THE BAT.  I HAVE NO DOUBT THAT HE WAS THOROUGHLY PREPPED TO

13   PUT THIS IN.  UNLIKE MOWRY, WHO'S INCONSISTENT, I'VE BEEN

14   CONSISTENT FROM DAY ONE, THESE ARE THE CLAIM CONSTRUCTIONS I'VE

15   HAD SINCE DAY ONE.  THE COURT WOULDN'T LET ME USE IT.

16         I'M SURE HE WAS COMPLETELY PRIMED TO DO THAT.  WITH ALL OF

17   THE PREP ON THIS CASE, I HAVE NO DOUBT THAT HE WAS TOTALLY

18   PREPPED THIS WEEKEND TO GET THAT OUT THERE FROM THE VERY START,

19   THAT YOU'RE THE EXPERT THAT'S CONSISTENT, WHICH IS NOT TRUE.

20   WHICH IS NOT TRUE.  I'VE GOT THE EXPERT REPORT RIGHT IN FRONT

21   OF ME.

22         SO THIS IS WHAT I'M GOING TO DO.  I'M GOING TO STRIKE AND

23   DIS -- AND HAVE THE JURY DISREGARD EVERYTHING THAT'S BEEN

24   TESTIFIED TO THUS FAR.  IT WILL COUNT TOWARDS YOUR TIME.

25              BUT I'M GOING TO EXPECT, FROM NOW ON, THAT HE IS GOING TO

1    DO WHAT HE'S SUPPOSED TO DO, TALK ABOUT THESE CONSTRUCTIONS AND

2    HOW THEY APPLY TO THE ISSUES OF INFRINGEMENT AND INVALIDITY

3    AND, I MEAN, IF HE KEEPS OPENING THE DOOR, THEN WE'RE GOING TO

4    GET INTO IT.

5         AND I'M TELLING YOU, IT'S NOT GOOD ON HIS SIDE, EITHER, TO

6    GET REALLY DEEPLY INTO THIS BECAUSE HE'S ALL OVER THE MAP IN

7    HIS DEPOSITION ON PLAIN AND ORDINARY MEANING.

8         MR. NELSON:  YEAH, I UNDERSTAND WHAT YOU'RE SAYING,

9    YOUR HONOR.

10        THE COURT:  YEAH.

11        MR. NELSON:  BUT HE CERTAINLY -- THE ISSUE BECOMES,

12   HE'S TALKED ABOUT, ALL ALONG, HIS OPINIONS IN THIS CASE THAT A

13   SERVER WASN'T PRESENT AND A SHARED LIBRARY IS NOT A SERVER,

14   RIGHT?

15        THE COURT:  YOU'RE BETTER GET IT OUT THERE, THEN.  HE

16   NEVER ADOPTED THESE CONSTRUCTIONS IN HIS EXPERT REPORT, AND I

17   THINK IT'S MISLEADING.  WHAT'S BEEN TESTIFIED TO THUS FAR IS

18   MISLEADING.

19        HE NEVER ADOPTS THESE EXPERT OPINIONS ABOUT THESE CLAIM

20   CONSTRUCTIONS IN HIS EXPERT REPORT AND THAT'S WHERE IT SHOULD

21   HAVE BEEN DISCLOSED.

22        MS. KREVANS:  AND YOUR HONOR --

23        THE COURT:  THAT'S WHERE IT SHOULD HAVE BEEN

24   DISCLOSED, AND IF HE'S, FOR FIRST TIME, GETTING IT IN IN

25   DEPOSITION, THEY SHOULD HAVE MOVED TO STRIKE IT.  THEY SHOULD

1       HAVE MOVED TO STRIKE IT, BECAUSE I WOULD HAVE GRANTED THAT.

2       THAT'S UNTIMELY DISCLOSURE.

3            IT'S GOT TO BE -- YOUR OPINIONS HAVE TO BE IN YOUR EXPERT

4       REPORT.  THAT'S THE TIME TO LET THE OTHER SIDE GET FAIR NOTICE

5       OF WHAT YOUR POSITION IS GOING TO BE.

6            HE NEVER ADOPTS JUDGE POSNER'S CONSTRUCTIONS IN HIS EXPERT

7       REPORT, SO FOR HIM TO NOW COME UP AND UNDER, UNDER OATH, AND

8       SAY, OH, YEAH, FROM DAY ONE, I HAD THESE OPINIONS, BUT THE

9       JUDGE WOULDN'T LET ME USE THEM, I'M NOT PLEASED WITH THAT.

10              MR. NELSON:  I UNDERSTAND, YOUR HONOR.

11              THE COURT:  UM-HUM.

12              MR. NELSON:  AND HE'S NOT GOING TO DO THAT.

13              THE COURT:  WELL, IF HE DOES IT AGAIN, I MIGHT HAVE

14      TO FIGURE OUT SOME OTHER CONSEQUENCES, BECAUSE CLEARLY STRIKING

15      AND JUST TELLING THE JURY TO DISREGARD IT IS NOT ENOUGH.  SO

16      I'M GOING TO HAVE TO THINK OF SOME FURTHER CONSEQUENCES IF HE

17      DOES IT AGAIN.

18              MR. NELSON:  NO, HE WON'T.

19           SO, I MEAN, IF YOU WANT, I CAN ASK THE QUESTION, SO

20      COUNSEL DOESN'T HAVE AN ISSUE WITH IT, SAYING, YOU KNOW, THAT

21      JUST SO WE'RE CLEAR, THE -- YOU DIDN'T OFFER CONSTRUCTIONS IN

22      YOUR EXPERT REPORT?

23              MS. KREVANS:  YOUR HONOR, ALL HE WANTS TO DO IS KEEP

24      THE DOOR -- IS KEEP THE ABILITY TO TRY TO KEEP GOING AND HAVE

25      THIS WITNESS GO BACK IN TIME.

1          THE ONLY THING THAT'S RELEVANT IS THE COURT HAS, THIS

2     MORNING, GIVEN A NEW CONSTRUCTION TO THE JURY.  WHAT IS

3     RELEVANT IS, AS HE SITS HERE TODAY, WHAT IS HIS OPINION UNDER

4     THOSE CONSTRUCTIONS?

5          ANY QUESTIONS ABOUT ANYTHING ELSE ARE IRRELEVANT, AND

6     CLEARLY AN ATTEMPT TO TRY TO CONTINUE TO EXPLOIT WHAT THIS

7     WITNESS HAS DONE AND THAT THEY'VE ALREADY EXPLOITED, AND THERE

8     IS NO REASON FOR THEM TO HAVE TO TRY TO HAVE SOME CAVEAT HERE

9     THAT MR. NELSON IS NOT STATING, BUT HE'S OBVIOUSLY TRYING TO

10    SOMEHOW PRESERVE SOME ABILITY TO HAVE THIS WITNESS CONTINUE TO

11    TRY TO BOLSTER HIS OPINIONS, EVEN THOUGH THEY HID THEM ALL

12    ALONG, AND THAT IS PREJUDICIAL AND IT IS UNFAIR AND I THINK

13    MR. NELSON SHOULD JUST UNEQUIVOCALLY REPRESENT TO THE COURT

14    THAT HE WILL NOT DO THAT AND THAT THE WITNESS WILL NOT DO THAT.

15          MR. NELSON:  THAT, THAT -- IN TERMS OF CONSTRUCTIONS,

16     IT'S NOT AN ISSUE, YOUR HONOR.

17          THE -- IN TERMS OF THE KEY QUESTION HERE ABOUT WHETHER

18    HE'S HELD THE OPINION ALL ALONG THAT A SHARED LIBRARY IS NOT A

19    SERVER AND NOT CONSISTENT WITH THE UNDERSTANDING, THAT IS

20    DISCLOSED AND THAT IS THE KEY THAT HE, THAT HE HAS.

21          SO THE -- AND THAT'S THE PARAGRAPH THAT I POINTED TO WHERE

22    HE STATES THAT EXPLICITLY, YOUR HONOR.

23          AND IT'S ALSO IMPORTANT, PARTICULARLY GIVEN THE TESTIMONY

24    WE JUST HEARD FROM DR. MOWRY, THAT THE JURY BE REMINDED THAT IN

25    TERMS OF HIS TESTIMONY IN THIS CASE, HE HAS TESTIFIED

1        CONSISTENTLY THAT A SHARED LIBRARY, THE USE OF A SHARED

2        LIBRARY, IS NOT A SERVER.

3              MS. KREVANS:  YOUR HONOR, IF THEY WANT TO ASK HIM A

4        QUESTION ABOUT WHETHER A SHARED LIBRARY DOES OR DOES NOT MEET

5        THE CONSTRUCTION THE COURT HAS GIVEN THE JURY THIS MORNING,

6        THEY CAN ASK HIM THAT.

7              IF THEY WANT TO ASK HIM, IS THAT CONSISTENT WITH THE

8        TESTIMONY YOU HAVE PREVIOUSLY GIVEN IN THIS TRIAL, THEY CAN ASK

9        HIM THAT QUESTION.

10             ASKING HIM ABOUT WHETHER HE -- WHETHER THIS IS SOME

11       LONG-HELD OPINION UNDER THESE POSNER CONSTRUCTIONS, ALTHOUGH

12       THEY WON'T SAY THE WORD "POSNER CONSTRUCTIONS," IS CLEARLY

13       WRONG AND UNFAIR AND IS SIMPLY AN ATTEMPT TO EXPLOIT THE MOMENT

14       THAT THE FEDERAL CIRCUIT CAME DOWN ADOPTING A CONSTRUCTION

15       WHICH, I'M SURE I DON'T NEED TO REMIND THE COURT OF THIS, THEY

16       DIDN'T ACTUALLY ASK THE COURT TO GIVE IN THIS CASE, AND THAT,

17       THEREFORE, WAS NOT THE CONSTRUCTION THAT WAS GOVERNING THE

18       TESTIMONY AT THE TIME THAT DR. MOWRY PREVIOUSLY TESTIFIED.

19             THE COURT:  WELL, IT IS CORRECT THAT PARAGRAPH 292

20       SAYS NOT JUST UNDER JUDGE POSNER'S CONSTRUCTION OF ANALYZER

21       SERVER.

22             MS. KREVANS:  AND THEN AT HIS DEPOSITION, MULTIPLE

23       TIMES, HE SAID HE WAS JUST USING THE CONSTRUCTIONS.  HE WAS NOT

24       OFFERING ANY OPINION ABOUT WHAT A PERSON OF ORDINARY SKILL IN

25       THE ART WOULD HAVE UNDERSTOOD ABOUT ANALYZER SERVER

1      SPECIFICALLY OVER AND OVER AGAIN.

2              THE COURT:  THAT'S TRUE.  AND HE DOESN'T PROVIDE ANY

3      OTHER CONSTRUCTION OF ANALYZER SERVER.

4              MS. KREVANS:  HE DOES NOT.

5              THE COURT:  ALL RIGHT.  SO YOU'VE CONVINCED ME.

6          HE CANNOT GET INTO PARAGRAPH 292 BECAUSE, AS I'VE SAID, I

7      LOOKED AT HIS DEPOSITION, HE WAS ALL OVER THE MAP, HE DIDN'T

8      GIVE AN OPINION ON PLAIN AND ORDINARY MEANING OF ANALYZER

9      SERVER, HE'S VERY INCONSISTENT THROUGHOUT, AND HE DOESN'T

10     PROPOSE HIS OWN CONSTRUCTION OF ANALYZER SERVER OR LINKING

11     ACTIONS TO THE DETECTED STRUCTURES IN HIS EXPERT REPORT, AND HE

12     DOESN'T ADOPT JUDGE POSNER'S CONSTRUCTIONS.

13         SO I THINK THAT IS CORRECT.

14         SO -- BUT IF HE WANTS TO SAY THAT HE WAS -- HE IS

15     CONSISTENT WITH HIS PRIOR TRIAL TESTIMONY THAT SHARED LIBRARIES

16     CANNOT CONSTITUTE AN ANALYZER SERVER, THAT'S TOTALLY FINE.

17             MR. NELSON:  RIGHT.  UNDERSTOOD, YOUR HONOR.

18             THE COURT:  OKAY.  BUT HE CAN'T SAY, WELL, IN MY

19     EXPERT REPORT, WHEN I DIDN'T GIVE A CLAIM CONSTRUCTION, I

20     DIDN'T ADOPT JUDGE POSNER'S CONSTRUCTION, I DIDN'T GIVE PLAIN

21     AND ORDINARY MEANING CONSTRUCTION, I STILL FOUND, IN THAT

22     VACUUM OF CONSTRUCTIONS, THAT SHARED LIBRARIES COULD NOT BE AN

23     ANALYZER SERVER.

24         I THINK THAT'S NOT -- UNDER DAUBERT, I WOULD PROBABLY

25     EXCLUDE THAT.

1      BUT I ALSO JUST THINK IT'S UNFAIR IN THE CONTEXT OF GIVING

2   NO CLAIM CONSTRUCTION, BUT GIVING AN EXPERT OPINION WITH NO

3   CONSTRUCTION.

4           MR. NELSON:  NO, I UNDERSTAND, YOUR HONOR.

5           THE COURT:  OKAY.

6           MR. NELSON:  SO THE --

7           THE COURT:  ALL RIGHT.  WHAT ELSE?  LET'S GET ALL

8   THESE FIGHTS OUT NOW.  I DON'T WANT TO CALL THE JURY BACK AND

9   HAVE THEM LEAVE.  ANYTHING ELSE WE SHOULD RESOLVE RIGHT NOW?

10          MS. KREVANS:  AS LONG AS HE DOESN'T ASK HIM QUESTIONS

11  ABOUT WHAT HE THOUGHT AT ANY MOMENT IN TIME OTHER THAN NOW AND

12  WHAT HE SAID IN HIS PRIOR TRIAL TESTIMONY, HOPEFULLY HE WILL

13  NOT STRAY INTO ANYTHING INAPPROPRIATE, YOUR HONOR.  IF HE DOES,

14  WE WOULD ASK AGAIN --

15          THE COURT:  THEN YOU NEED TO JUMP UP AND YOU NEED TO

16  OBJECT RIGHT AWAY.

17          MS. KREVANS:  I WILL, YOUR HONOR.

18      AND IF HE DOES IT AGAIN, WE WOULD REQUEST NOT JUST THAT IT

19  BE STRUCK, BUT THE JURY SHOULD BE INSTRUCTED THAT IT WAS

20  INAPPROPRIATE TESTIMONY THAT HE WAS INSTRUCTED NOT TO GIVE.

21          THE COURT:  I HAVE NO PROBLEM DOING THAT IF HE DOES

22  IT AGAIN.

23          MS. KREVANS:  THANK YOU, YOUR HONOR.

24          THE COURT:  OKAY.  LET'S BRING OUR JURY BACK, PLEASE.

25          (JURY IN AT 10:29 A.M.)

```
1          THE COURT:  ALL RIGHT.  WELCOME BACK.  PLEASE TAKE A

2     SEAT.

3          THE MOTION TO STRIKE WHAT DR. JEFFAY TESTIFIED TO IS

4     GRANTED.  YOU ARE NOT TO CONSIDER IT.

5          ALL RIGHT.  LET'S BRING DR. JEFFAY BACK.

6          TIME IS 10:30.  I'LL GIVE YOU A MOMENT TO GET SETTLED.

7          (PAUSE IN PROCEEDINGS.)

8          THE COURT:  ALL RIGHT.  TIME IS NOW 10:30.

9          GO AHEAD, PLEASE.

10          MR. NELSON:  THANK YOU, YOUR HONOR.

11    Q.   ALL RIGHT.  LET'S START OVER HERE.  LET'S PUT THE

12    CONSTRUCTION UP HERE OF THE ANALYZER SERVER TERM, PLEASE, AND

13    WE CAN BLOW THAT UP.

14          NOW, IT SAYS, AN ANALYZER SERVER MEANS "A SERVER ROUTINE

15    SEPARATE FROM A CLIENT THAT RECEIVES DATA HAVING STRUCTURES

16    FROM THE CLIENT."

17          LET'S START WITH THE MESSAGING APPLICATION.

18    A.   OKAY.

19    Q.   DOES THE MESSAGING APPLICATION MEET THIS LIMITATION, THIS

20    CONSTRUCTION?

21    A.   IN MY OPINION, NO.

22    Q.   AND WHY DO YOU SAY THAT?

23    A.   WELL, AS I TESTIFIED LAST TIME, I SAID THERE'S NO SERVER,

24    AND THIS CONSTRUCTION GIVES ME A BASIS FOR EXPLAINING FURTHER

25    WHY THERE'S NO SERVER.
```

1          THE ESSENTIAL REASON IS THAT THE CONSTRUCTION REQUIRES

2     THAT YOU HAVE SERVER ROUTINES SEPARATE FROM A CLIENT, AND THE

3     CODE THAT DR. MOWRY HAS POINTED TO IS PART AND PARCEL OF THE

4     CLIENT, IN THIS CASE THE MESSAGING APPLICATION.

5     Q.   OKAY.  LET'S STOP THERE, BECAUSE THIS IS IMPORTANT.

6     EXPLAIN TO US WHY IT'S PART OF THE CLIENT, THE APPLICATION.

7     A.   IT'S PART OF -- I MEAN, ALL WE HAVE IS THE MESSENGER

8     APPLICATION.  THAT'S ALL WE HAVE HERE.  THERE IS NO SEPARATE

9     COMPONENT.  I MEAN, DR. MOWRY HIMSELF HAS ONLY SAID THERE'S

10    JUST THE MESSENGER APPLICATION.

11         AND THE CODE THAT HE'S TALKING TO IS NOT SEPARATE FROM

12    THIS CLIENT APPLICATION.  IT'S PART OF MESSENGER -- IT IS

13    MESSENGER, AND THAT'S THE RESULT OF MY ANALYSIS AND THAT'S WHAT

14    MS. HACKBORN, FOR EXAMPLE, SAID, THAT LINKIFY, WHICH IS THE

15    CODE THAT HE'S POINTING TO, IS PART OF THE MESSENGER

16    APPLICATION.

17    Q.   OKAY.  SO WE'VE TALKED A LOT ABOUT SHARED LIBRARIES.  CAN

18    YOU EXPLAIN TO US, FROM YOUR PERSPECTIVE OF A COMPUTER

19    SCIENTIST, WHAT THE SHARED LIBRARY IS THEN?

20    A.   SO SHARED LIBRARIES ARE THE BASIC BUILDING BLOCKS OF

21    APPLICATIONS.  THEY'RE CODE THAT PEOPLE WRITE THAT YOU GET TO

22    USE SO THAT YOU DON'T HAVE TO REINVENT THE WHEEL.

23         AND LINKIFY IS AN EXAMPLE OF SUCH A BUILDING BLOCK THAT

24    GOOGLE WROTE FOR APPLICATION DEVELOPERS TO USE, AND WHEN THEY

25    USE LINKIFY, THEY GET THEIR OWN COPY OF LINKIFY AND IT BECOMES

```
 1        PART OF THE APPLICATION EXACTLY AS MS. HACKBORN SAID.

 2        Q.   NOW, LET'S TALK ABOUT THE BROWSER APPLICATION THEN.  DOES

 3        THE BROWSER APPLICATION MEET THE LIMITATION OF ANALYZER SERVER

 4        OR THIS CONSTRUCTION?

 5        A.   NO.  AGAIN, THERE IS NO SERVER THAT A BROWSER WORKS WITH.

 6        THERE'S NO SERVER -- THERE'S NO SERVER ROUTINE THAT'S SEPARATE

 7        FROM BROWSER.

 8        Q.   SO DR. MOWRY TALKED ABOUT CONTENT DETECTOR IN THE BROWSER.

 9             DO YOU RECALL THAT?

10        A.   YES.

11        Q.   CAN YOU TELL US WHAT THAT IS?

12        A.   SO REMEMBER THERE'S TWO VERSIONS OF THE BROWSER THAT ARE

13        AT ISSUE.  ONE IS THIS BODY OF CODE CALLED CONTENT DETECTORS,

14        THAT'S THE NEW VERSION OF BROWSER.

15             THE OLDER VERSION OF BROWSER USES -- THE NEWER ONE USES A

16        BODY OF CODE CALLED CONTENT DETECTORS, AND THE OLDER VERSION OF

17        BROWSER USES A BODY OF CODE THAT'S CALLED CACHE BUILDER, AND

18        THOSE ARE ALSO SHARED LIBRARIES.  THEY'RE THERE FOR APPLICATION

19        DEVELOPERS TO USE.

20             BUT WHEN THEY USE IT, THEY GET THEIR OWN COPY OF THE CODE

21        AND THE CODE IS PART OF THE APPLICATION.  THERE'S NOTHING

22        OUTSIDE OF THE BROWSER APPLICATION.

23        Q.   NOW, DR. MOWRY SAID THAT IF TWO APPLICATIONS ARE USING,

24        LET'S JUST TAKE LINKIFY, THAT THERE WILL ONLY BE ONE COPY OF

25        LINKIFY.
```

```
1              DO YOU RECALL THAT?

2      A.   I DO.

3      Q.   OKAY.  FIRST OF ALL, DO YOU KNOW WHETHER HE'S IDENTIFIED

4      ANY OTHER APPLICATIONS THAT USE LINKIFY IN THE ACCUSED PRODUCT?

5      A.   I DON'T BELIEVE HE HAS IDENTIFIED ANY OTHER APPLICATIONS

6      THAT USE LINKIFY.

7      Q.   OKAY.  SO IS THAT STATEMENT RIGHT, THAT -- IF THERE WERE

8      SUCH A SITUATION?

9      A.   NO.  I MEAN, I DID AN ANALYSIS OF THIS, IT WAS NOT

10     PRESENTED HERE, AND THE RESULTS OF MY ANALYSIS SHOWED THAT WHEN

11     AN APPLICATION, LIKE MESSENGER, USES LINKIFY, IT GETS HIS OWN

12     COPY OF LINKIFY.

13     Q.   AND WHAT'S YOUR BASIS FOR THAT?

14     A.   WELL, AGAIN, AS I SAY, I DID -- IN MY EXPERT REPORT, I DID

15     AN ANALYSIS OF WHAT HAPPENS WHEN THE PHONE BOOTS, STARTING FROM

16     THE TIME THE PHONE POWERS UP TO THE TIME THAT, YOU KNOW, THE

17     MESSENGER OR THE BROWSER APPLICATION RUNS, AND JUST STEPS

18     THROUGH TO SAY HOW DO THESE PIECES COME TOGETHER TO BE THE

19     MESSENGER APPLICATION.

20              AND WHAT I SHOWED IS EXACTLY WHERE MESSENGER GETS ITS OWN

21     COPY OF LINKIFY.

22     Q.   NOW, HOW ABOUT WITH RESPECT TO THE BROWSER AND THE CONTENT

23     DETECTORS?  IS THAT TRUE AS WELL?

24     A.   IT'S THE SAME FOR BOTH CONTENT DETECTORS AND CACHE

25     BUILDER.
```

1    Q.   SO, NOW, DR. MOWRY HAS SAID THAT WITH THE BROWSER -- AND

2    WE'LL JUST TAKE THE JELLY BEAN VERSION -- WITH CONTENT DETECTOR

3    AND THE MESSAGING APPLICATION WITH LINKIFY --

4    A.   OKAY.

5    Q.   -- HE'S IDENTIFIED THOSE TWO DIFFERENT THINGS AS THE,

6    QUOTE, ANALYZER SERVER.

7         DID YOU SEE THAT?

8    A.   YES, THAT WAS MY RECOLLECTION OF HIS TESTIMONY.

9    Q.   WHAT DOES THAT TELL YOU?

10   A.   WELL, HE'S JUST IDENTIFYING THE APPLICATION ITSELF.  I

11   MEAN, LINKIFY IS PART OF MESSENGER.  CONTENT DETECTOR IS PART

12   OF CACHE BUILDER.  IT'S PART OF THE BROWSER.

13        WE JUST HAVE THE ONE APPLICATION IN THE CASE OF BROWSER,

14   AND THE ONE APPLICATION IN THE CASE OF MESSENGER, AND I BELIEVE

15   THERE'S NO DISAGREEMENT ABOUT THAT.

16   Q.   SO IF YOU HAD A SYSTEM WHERE YOU HAD A SERVER ROUTINE

17   SEPARATE FROM A CLIENT THAT RECEIVES DATA HAVING STRUCTURES

18   FROM THE CLIENT, WHAT WOULD YOU EXPECT TO SEE INSTEAD?

19   A.   WHAT YOU WOULD EXPECT TO SEE IS A TRADITIONAL CLIENT

20   SERVER RELATIONSHIP THAT -- FOR EXAMPLE, WE'RE TALKING ABOUT

21   TWO PROGRAMS.  ONE OF THE PROGRAMS, THE CLIENT, THE CLIENT

22   APPLICATION WOULD SEND DATA TO THE SERVER; THE SERVER WOULD

23   PROCESS THAT DATA, SENT RESULTS BACK TO THE CLIENT, AND THEN

24   THE CLIENT GOES ON ITS MERRY WAY.

25        SO YOU WOULD EXPECT TO SEE TWO INDEPENDENT PROGRAMS.  THE

1    SERVER COULD BE USED BY ANY OTHER APPLICATION AND A SEPARATE

2    CLIENT.

3         AND YET HERE WHAT DR. MOWRY HAS SAID IS, AND I AGREE, IS

4    THAT THERE'S JUST THE CLIENT.  THERE'S JUST THE MESSENGER

5    APPLICATION OR JUST THE BROWSER APPLICATION.

6    Q.   NOW, WERE YOU HERE FOR MS. HACKBORN'S TESTIMONY?

7    A.   YES.

8    Q.   DID SHE PROVIDE ANY EXAMPLES OF ACTUAL SERVER

9    IMPLEMENTATIONS LIKE YOU'VE DISCUSSED --

10   A.   YES.

11   Q.   -- IN ANDROID?

12   A.   YES.  SO THERE ARE SERVERS IN ANDROID, AND SHE DESCRIBED A

13   VERY GOOD ONE THAT HOPEFULLY I THINK YOU PROBABLY USE, AND

14   THAT'S THE CLIPBOARD, WHICH IS THE THING THAT'S USED TO CUT OR

15   COPY TEXT FROM ONE APPLICATION TO ANOTHER.

16        SO THE CLIPBOARD EXISTS SEPARATELY FROM THE APPLICATION.

17   THE APPLICATION HAS THE FUNCTION OF ALLOWING THE USER TO, YOU

18   KNOW, CUT OR COPY THE TEXT.

19        THAT TEXT IS SENT TO THIS CLIPBOARD PROGRAM, WHICH IS A

20   SEPARATE PROGRAM, AND THEN THAT SEPARATE PROGRAM CAN THEN

21   INTERACT WITH THE THIRD PROGRAM TO SEND THE DATA THERE.

22        AND THAT'S HOW DATA GOES FROM ONE APPLICATION, LIKE A MAIL

23   PROGRAM, TO A SECOND APPLICATION, LIKE, SAY, MESSENGER.  IT

24   GOES INDIRECTLY VIA THE SERVER THAT IS THE CLIPBOARD, AND

25   THAT'S WHAT MS. HACKBORN SAID.

1    Q.   SO CAN CLIPBOARD RUN ON ITS OWN THEN?

2    A.   YES, IT DOES RUN ON ITS OWN.

3    Q.   IS THAT TRUE OF LINKIFY?

4    A.   NO.  LINKIFY IS -- AND I AGREE, DR. MOWRY SAID IT DOES NOT

5    RUN ON ITS OWN.  IT'S PART AND PARCEL OF MESSENGER.

6    Q.   SO, NOW, DR. MOWRY JUST TESTIFIED THAT IN HIS OPINION, YOU

7    CAN TAKE ONE APPLICATION, WE'LL SAY THE MESSENGER, AND DIVIDE

8    IT INTO A SERVER THAT'S SEPARATE FROM A CLIENT WITH ONLY ONE

9    IMPLEMENTATION.

10        DID YOU HEAR THAT?

11   A.   I THINK I HEARD WORDS TO THAT EFFECT, YES.

12   Q.   DO YOU AGREE WITH THAT?

13   A.   NO.  YOU CAN'T -- IF YOU SEPARATE ANYTHING OUT OF THE

14   MESSENGER APPLICATION, IT WON'T RUN.  THERE'S NO DIVISION.  IF

15   YOU GO IN AND LOOK AT MESSENGER, THE LINKIFY CODE LOOKS JUST

16   LIKE ALL THE OTHER CODE IN MESSENGER.  IT'S ALL -- THAT'S WHAT

17   THE MESSENGER APPLICATION IS.  THERE'S NO SEPARABILITY.

18   THERE'S NO LINE OF DEMARCATION INSIDE THAT SAYS, OH, THIS IS

19   SOMEHOW A CLIENT AND THIS IS SOMEHOW A SERVER.

20   Q.   SO IF YOU PULL THE LINKIFY CODE OUT OF MESSENGER, WHAT

21   HAPPENS?

22   A.   WELL, MESSENGER CERTAINLY WOULD NOT RUN.

23   Q.   WHY DO YOU SAY THAT?

24   A.   BECAUSE GENERALLY APPLICATIONS ARE VERY FRAGILE THINGS.

25   YOU CAN'T REMOVE CODE FROM THEM AND EXPECT THEM TO RUN.

1          AND WHATEVER YOU REMOVE WON'T RUN BY ITSELF BECAUSE IT'S

2     JUST A LIBRARY, AND A LIBRARY DOESN'T DO ANYTHING BY ITSELF.

3     IT'S NOT -- IT'S NOT A PROGRAM.

4     Q.   NOW, DID YOU HEAR THE DISCUSSION ON DR. MOWRY'S TESTIMONY

5     ABOUT GLUE CODE?

6     A.   YES.

7     Q.   WHAT'S THAT?

8     A.   I'M -- IT'S A TERM THAT DR. MOWRY USES.  IT'S -- IN THE

9     VERY BEST CASE SCENARIO, IT'S TOTAL JARGON.  IT'S NOT A

10    TECHNICAL TERM.  HE SAID HE DOESN'T TEACH IT TO HIS STUDENTS.

11    I'VE NEVER HEARD ANYBODY TEACH IT.

12         I THINK, YOU KNOW, HE'S USING THIS TERM THAT MEANS

13    BASICALLY WHATEVER HE WANTS IT TO MEAN BECAUSE THE SYSTEM IS

14    MISSING SOME COMPONENTS THAT AREN'T THE EXACT THINGS HE NEEDS

15    TO POINT TO.

16    Q.   SO IF YOU HAD A CLIENT SERVER ARCHITECTURE, WHAT KIND OF

17    CODE WOULD YOU EXPECT TO SEE INSTEAD?

18    A.   I MEAN, THERE'S CERTAINLY AN INTERFACE CODE.  THERE'S API,

19    THE CODE CALLED API, WHICH STANDS FOR APPLICATION PROGRAM

20    INTERFACE.  AND PROGRAMS THAT ARE MEANT TO BE USED BY OTHER

21    PROGRAMS HAVE AN API SO THAT, FOR EXAMPLE, THE MAIL PROGRAM CAN

22    INTERACT WITH THE CLIPBOARD.

23         SO THE CLIPBOARD PROGRAM WILL HAVE AN API THAT'S USED BY

24    OTHER, OTHER PROGRAMS.

25         SO THERE IS CODE THAT ALLOWS TWO THINGS TO INTERFACE, BUT

1        THAT'S AT THE LEVEL OF SEPARATE PROGRAMS.

2              WHAT DR. MOWRY IS TALKING ABOUT IS CODE THAT'S INTERACTING

3        WITH EACH OTHER INSIDE OF A PROGRAM.

4        Q.   NOW, DID YOU SEE SOME TESTIMONY AND SOME E-MAILS FROM ONE

5        OF THE INVENTORS ON THE '647 PATENT?

6        A.   YES.

7        Q.   OKAY.  DID THAT INFORM YOUR OPINION AT ALL AS TO WHETHER A

8        SHARED LIBRARY CAN BE A SERVER?

9        A.   IT DID.

10       Q.   AND HOW SO?

11       A.   WELL, WHEN MR. BONHURA, WHO WAS THE FELLOW WHO I BELIEVE

12       IS, EVERYONE CREDITED WITH BEING THE, HAVING DONE THE

13       IMPLEMENTATION OF THE ANALYZER SERVER, WHAT HE BASICALLY --

14       THEY WERE HAVING A PROBLEM WITH THE FACT THAT THERE WAS A

15       SERVER, THERE'S OVERHEAD OF USING A SERVER, AND IN THIS CASE I

16       GUESS THE OVERHEAD WAS TOO MUCH FOR THEM AND THEY NEEDED A

17       DIFFERENT WAY TO DO IT.

18             AND HE SAID TWO IMPORTANT THINGS.  ONE OF THEM WAS THAT

19       HIS -- HIS ONLY CONCEPTION OF THE ANALYZER SERVER WAS AS A

20       CLIENT SERVER SYSTEM, OKAY?

21             AND THE SECOND THING THAT HE EVENTUALLY SAID IN -- THROUGH

22       E-MAILS, HE WAS ASKED TO EXPLAIN IS THAT THERE'S A FUNDAMENTAL

23       DIFFERENCE BETWEEN A SERVER AND A SHARED LIBRARY.

24       Q.   NOW, I WANT TO TURN TO THE NEXT CONSTRUCTION, THE LINKING

25       ACTIONS TO THE DETECTED STRUCTURES.

```
1              DO YOU SEE THAT?

2    A.   I DO.

3    Q.   AND IT SAYS, "CREATING A SPECIFIED CONNECTION BETWEEN EACH

4    DETECTED STRUCTURE AND AT LEAST ONE COMPUTER SUBROUTINE THAT

5    CAUSES THE CPU TO PERFORM A SEQUENCE OF OPERATIONS ON THAT

6    DETECTED STRUCTURE."

7              DO YOU SEE THAT?

8    A.   I DO.

9    Q.   DO THE ACCUSED MESSAGING AND BROWSER APPLICATIONS MEET

10   THIS CONSTRUCTION?

11   A.   IN THE OVERALL CONTEXT OF THE ASSERTED CLAIM, NO.

12   Q.   AND WHY DO YOU SAY THAT?

13   A.   BECAUSE THE ACTION HERE IS THE ACTION THAT THE USER

14   SELECTS, AND WHAT DR. MOWRY HAS TALKED ABOUT IS THIS START

15   ACTIVITY.

16        THE USER DOESN'T SELECT START ACTIVITY.  THE USER SELECTS

17   DIAL, AND AT THE TIME THAT THE STRUCTURES ARE DETECTED AND

18   LINKED, THERE IS NO SPECIFIED CONNECTION BETWEEN THAT STRUCTURE

19   AND THE CODE THAT'S ULTIMATELY GOING TO DIAL.

20        THE WHOLE PURPOSE OF THE ANDROID INTENT MECHANISM IS TO

21   USE WHAT'S CALLED A LATE BINDING.  IT'S TO ALLOW USERS TO

22   SPECIFY THEIR OWN, FOR EXAMPLE, THEIR FAVORITE E-MAIL CLIENT SO

23   THAT WHEN YOU DETECT AN E-MAIL ADDRESS, IT'S NOT BOUND TO ANY

24   PARTICULAR E-MAIL CLIENT BECAUSE IT DOESN'T YET KNOW WHICH

25   E-MAIL CLIENT THE USER WANTS TO USE.
```

```
 1            AND THIS INTENT MECHANISM FIGURES THIS OUT ON THE FLY.  SO
 2      AT THE TIME THAT SOMETHING IS DETECTED, WHAT'S LINKED IS START
 3      ACTIVITY, AND START ACTIVITY IS ULTIMATELY NOT THE ACTION THAT
 4      THE USER WANTS TO PERFORM.
 5      Q.    OKAY.  SO LET'S PUT UP -- IT'S A SLIDE THAT DR. MOWRY
 6      USED -- THIS IS CONFIDENTIAL, SO WE'LL JUST SHOW IT THE COURT
 7      AND TO THE JURY AND IT SHOULD BE ON YOUR SCREEN AS WELL -- I'M
 8      TURNING MINE OFF -- I GUESS I CAN TURN MINE THIS WAY.
 9            THIS IS PDX 88.22.  DO YOU SEE THAT?
10      A.    I DO.
11      Q.    OKAY.  SO WHAT DOES THIS SHOW?
12      A.    SO THIS WAS AN ILLUSTRATION OF THIS, OF THE INTENT
13      OBJECTS, AND IN PARTICULAR WHAT'S SHOWN IS -- SO THIS IS A
14      MESSENGER AND A PHONE NUMBER HAS BEEN SELECTED, AND THIS IS
15      SHOWING WHAT'S ACTUALLY LINKED.
16            AND WHAT'S LINKED IS AN INTENT, AND -- I GUESS THAT'S
17      RIGHT -- AN INTENT IS NOT, ITSELF, A SUBROUTINE.
18            AN INTENT IS LITERALLY WHAT YOU SEE ON THE SCREEN.  IT'S
19      TEXT.  IT'S THE TELEPHONE NUMBER AND ACTION VIEW, ACTION
20      INSERT, OR EDIT.
21            SO IT'S A WORD THAT THE SYSTEM WILL LATER USE TO FIGURE
22      OUT WHAT CODE TO RUN.
23            SO THE POINT IS WHAT'S LINKED HERE IS AN INTENT.  IT'S NOT
24      THE CODE.
25            WHAT'S NOT LINKED IS THE CODE THAT'S ULTIMATELY GOING TO,
```

1      FOR EXAMPLE, DIAL THE PHONE.

2      Q.   AND WHY DOES ANDROID WORK THAT WAY?

3      A.   WELL, AGAIN, ANDROID IS AN OPEN SYSTEM.

4           AND LET'S USE THE CASE OF E-MAIL.  YOU MAY NOT KNOW THIS,

5      BUT THERE'S LOTS OF E-MAIL PROGRAMS YOU CAN USE WITH ANDROID.

6      SOME PEOPLE LIKE GMAIL, SOME PEOPLE LIKE THE BUILT-IN ONE.

7      THERE'S OTHER CRAZY APPS OUT THERE, AND THE USER IS NOT BOUND

8      TO ANY PARTICULAR ONE.

9           AND BECAUSE OF THIS, WHEN YOU LINK -- WHEN YOU DETECT A

10     STRUCTURE IN A SYSTEM LIKE MESSENGER, IT DOES NOT KNOW WHICH,

11     FOR EXAMPLE, E-MAIL CLIENT YOU USE, SO IT DOESN'T LINK ANY

12     E-MAIL CLIENT.

13          AND INSTEAD, IT LINKS THE INTENT WHERE THE INTENT IS

14     LITERALLY A WORD -- I DON'T REMEMBER EXACTLY WHAT THE WORD

15     IS -- BUT IT ESSENTIALLY SAYS WE WANT TO SEND E-MAIL.

16          SO IT'S NOT A ROUTINE.  THE ONLY ROUTINE THAT'S ACTUALLY

17     LINKED IS START ACTIVITY, BUT THAT'S NOT THE ACTION THAT THE

18     USER WANTS.

19          START ACTIVITY IS SOMETHING THAT LATER IS GOING TO GO AND

20     FIGURE OUT WHICH ACTUAL ACTION DOES THE USER WANT TO PERFORM

21     AND WHICH PROGRAM SHOULD ACTUALLY DO IT.

22          SO THE SPECIFYING CONNECTION ISN'T MADE UNTIL LONG AFTER

23     THE STRUCTURE IS DETECTED AND THE USER HAS INTERACTED WITH THE

24     SYSTEM.

25     Q.   SO LET'S GO BACK TO THE CONSTRUCTION, AND IN PARTICULAR,

1      THIS PART THAT SAYS "CREATING A SPECIFIED CONNECTION BETWEEN

2      EACH DETECTED STRUCTURE AND AT LEAST ONE COMPUTER SUBROUTINE."

3           DO YOU SEE THAT?

4      A.   I DO.

5      Q.   NOW, WHY IS IT THAT YOU DON'T BELIEVE THAT THAT'S MET IN

6      THE ACCUSED PRODUCTS?

7      A.   BECAUSE ULTIMATELY IN CLAIM 9 WHAT YOU'RE DOING IS THE

8      USER IS SELECTING AN ACTION, AND THE USER DOES NOT SELECT START

9      ACTIVITY.  START ACTIVITY IS THE COMPUTER SUBROUTINE THAT'S

10     ACTUALLY LINKED INTO THE DETECTED STRUCTURES.

11          SO THERE'S NO SPECIFIED CONNECTION BETWEEN THE STRUCTURE

12     AND THE ACTION THAT THE USER WANTS TO ULTIMATELY PERFORM.

13     Q.   NOW, IN THE EMBODIMENTS IN THE '647 PATENT THAT ARE

14     DESCRIBED, WHAT HAPPENS?

15     A.   WELL, THE '647 PATENT IS VERY STRAIGHTFORWARD.  WHEN YOU

16     DETECT A STRUCTURE, YOU LINK THE ACTUAL PROGRAM THAT PERFORMS

17     THAT FUNCTION.

18          SO IF IT WERE, LIKE, ADD TO CONTACTS, THE THING THAT'S

19     ACTUALLY LINKED IS THE CONTACT BOOK, THE ADDRESS BOOK

20     APPLICATION.

21     Q.   NOW -- SO THEN JUST IN SUMMARY, WITH RESPECT TO THE

22     ACCUSED PRODUCTS WITH THE BROWSER AND THE MESSAGING

23     APPLICATION, WHAT'S YOUR OPINION OF THIS LIMITATION OF LINKING

24     ACTIONS TO THE DETECTED STRUCTURES UNDER THE CONSTRUCTION THAT

25     THE COURT HAS PROVIDED US THIS MORNING?

1    A.   IT'S MY OPINION THAT THIS IS NOT PRESENT.

2    Q.   NOW, I WANT TO TURN NOW TO YOUR OPINIONS THAT WE TALKED

3    ABOUT LAST TIME CONCERNING INVALIDITY UNDER THESE NEW

4    CONSTRUCTIONS BASED ON SIDEKICK.

5    A.   OKAY.

6    Q.   SO LET'S PUT UP THE ANALYZER CONSTRUCTION, ANALYZER SERVER

7    CONSTRUCTION AGAIN.

8         SO DO YOU BELIEVE THAT THE ANALYZER SERVER CONSTRUCTION

9    THAT WE'VE PROVIDED HERE IS MET BY SIDEKICK?

10   A.   YES.

11   Q.   AND WHY IS THAT?

12   A.   SO LET ME MAYBE REFRESH OUR MEMORY WHAT SIDEKICK IS.

13   SIDEKICK --

14   Q.   LET'S PUT UP SDX 2587.

15   A.   SIDEKICK IS THIS OLD DOS APPLICATION FROM THE MID-1980S,

16   AND IT WAS A BODY OF SOFTWARE THAT RAN -- THAT EXECUTED

17   INDEPENDENTLY FROM PROGRAMS THAT USED IT.

18        SO IT'S REALLY THE BEST EXAMPLE OF SERVER THAT I THINK WE

19   HAVE IN THIS CASE.

20        IT'S -- IT RAN WHAT WAS CALLED A TSR, WHICH IS A DOS-ISM,

21   THAT STOOD FOR TERMINATE AND STAY RESIDENCE.  IT'S A PROGRAM

22   THAT RUNS IN THE BACKGROUND WITH THIS APPLICATION, AND THIS

23   APPLICATION HERE IS THE ANALYZE DOS EDITOR.

24        AND IT RECEIVES DATA FROM THIS APPLICATION A LINE AT A

25   TIME AND IT DETECTS STRUCTURES IN THERE, THESE PHONE NUMBERS,

1    AND LINKS ACTIONS.

2         SO PREVIOUSLY I SAID THAT THE SIDEKICK DIALER WAS A

3    SERVER, AND NOW WITH THIS CONSTRUCTION, I CAN GIVE YOU

4    ADDITIONAL REASONS WHY IT'S A SERVER.

5    Q.   NOW, DO YOU KNOW WHETHER DR. MOWRY DISPUTES THAT IN

6    SIDEKICK?

7    A.   MY UNDERSTANDING IS HE DISPUTES OTHER THINGS ABOUT THE

8    DIALER, BUT HE DOESN'T DISPUTE THAT IT'S A SERVER.

9    Q.   NOW, THE -- LET'S PUT UP THE LINKING CONSTRUCTION, AND

10   WE'VE TALKED ABOUT THIS BEFORE.

11        SO WHAT DOES -- WHAT'S YOUR OPINION CONCERNING SIDEKICK

12   WITH RESPECT TO THE LINKING ACTIONS CONSTRUCTION PROVIDED BY

13   THE COURT?

14   A.   SO WITH THIS MORE SPECIFIC CONSTRUCTION OF LINKING

15   ACTIONS, MY OPINION IS THAT SIDEKICK DOESN'T PRECISELY DISCLOSE

16   THIS PARTICULAR FORM OF LINKING.

17   Q.   AND WHY IS THAT?

18   A.   IT REALLY HAS TO DO WITH THE SPECIFIED CONNECTION, AND THE

19   ISSUE IS THAT THIS IS A VERY OLD PROGRAM AND IT'S WRITTEN IN A

20   VERY PRIMITIVE PROGRAMMING LANGUAGE.  IT'S CALLED ASSEMBLY

21   LANGUAGE IF YOU KNOW WHAT SUCH THINGS ARE.

22        AND IN ASSEMBLY LANGUAGE, IT'S HARD TO DEMONSTRATE A

23   SPECIFIED CONNECTION AS THAT TERM WAS USED IN THE PATENT.

24        THE PATENT EXISTED MUCH LATER, IN '96, WHEN THERE WERE

25   MORE SOPHISTICATED PROGRAMMING LANGUAGES AND -- YEAH, THERE

1    WERE MORE SOPHISTICATED LANGUAGES, AND WHEN YOU WERE DOING

2    THINGS IN ASSEMBLY LANGUAGE, YOU WOULDN'T HAVE A SPECIFYING

3    CONNECTION AS REQUIRED HERE.

4    Q.   DO YOU -- NOW, WHAT YEAR WAS SIDEKICK?  REMIND US.

5    A.   '85.

6    Q.   AND WHAT YEAR IS THE PATENT?

7    A.   '96.

8    Q.   SO DID ANYTHING HAPPEN IN THE FIELD OF COMPUTER SOFTWARE

9    AND COMPUTER SCIENCE IN THAT TIME PERIOD?

10   A.   SURE.  FANTASTIC AMOUNTS OF THINGS HAPPENED.

11   Q.   OKAY.  SO LET'S GO FORWARD TO THE BEGINNING OF 1996.

12        DO YOU THINK THAT MAKING THE SPECIFIED CONNECTION THAT YOU

13   JUST TALKED ABOUT WOULD HAVE BEEN OBVIOUS?

14   A.   YES.  I MEAN, IF YOU WENT -- IF YOU WERE IN 1996 AND YOU

15   WANTED TO IMPLEMENT THE SIDEKICK DIALER, YOU WOULD UNDOUBTEDLY

16   IMPLEMENT IT IN A HIGH LEVEL PROGRAMMING LANGUAGE, FOR EXAMPLE,

17   LIKE THE JAVA PROGRAMMING LANGUAGE WHICH ALSO HAPPENS TO BE THE

18   LANGUAGE THAT'S USED IN ANDROID.

19        AND IF YOU IMPLEMENT SUCH A THING IN JAVA, THE MOST

20   OBVIOUS WAY TO ASSOCIATE AN ACTION WITH STRUCTURE WOULD BE VIA

21   A POINTER, WHICH IS A PARTICULAR TECHNICAL PROGRAMMING

22   TECHNIQUE, AND IT'S REALLY THE MOST OBVIOUS WAY TO DO IT.

23        AND SO MY OPINION IS IF SOMEONE WERE PORTING OR BUILDING

24   THE SIDEKICK DIALER IN 1996, THEY WOULD HAVE USED THE

25   SPECIFIC -- THEY WOULD HAVE MET THE LINKING LIMITATION BECAUSE

1    THEY WOULD HAVE HAD A SPECIFIED CONNECTION, AT LEAST THROUGH A

2    POINTER.

3    Q.   SO THEN IN SUMMARY, SIR, WITH RESPECT TO CLAIM 9, THE

4    ASSERTED CLAIM OF THE '647 PATENT, WHAT'S YOUR OPINION

5    CONCERNING SIDEKICK AND YOUR INVALIDITY ANALYSIS?

6    A.   WELL, MY OVERALL OPINION DOESN'T CHANGE, WHICH WAS -- TWO

7    WEEKS AGO I SAID IT RENDERS CLAIM 9 OBVIOUS, AND THAT'S STILL

8    MY OPINION.

9         MR. NELSON:  ALL RIGHT.  THANK YOU, SIR.

10        I DON'T HAVE ANY FURTHER QUESTIONS.

11        THE COURT:  TIME IS NOW 10:53.

12        MS. KREVANS:  YOUR HONOR, MIGHT I REQUEST THAT WE

13   TAKE PERHAPS A FIVE MINUTE BREAK, BECAUSE ALTHOUGH THE JURY HAD

14   A BREAK --

15        THE COURT:  WE DIDN'T.

16        MS. KREVANS:  -- WE HAVEN'T HAD A BREAK.

17        THE COURT:  AND MS. SHORTRIDGE HASN'T HAD A BREAK.

18        THAT'S FINE.  WHY DON'T WE -- I'M THINKING HOW THIS IS

19   GOING TO -- GIVE ME A SECOND AND I CAN TELL YOU HOW MUCH TIME

20   IS LEFT AND MAYBE WE CAN DO A LITTLE BIT OF PLANNING WITH

21   EVERYTHING ELSE WE HAVE TO DO TODAY.

22        (PAUSE IN PROCEEDINGS.)

23        THE COURT:  ALL RIGHT.  SAMSUNG HAS 7 MINUTES LEFT.

24   APPLE HAS 35 MINUTES LEFT.

25        SO WE HAVE ABOUT 45 MINUTES LEFT OF TESTIMONY, ASSUMING

1        THE PARTIES USE ALL THEIR TIME.

2            I THINK WE'LL STILL BREAK -- MAYBE WE'LL TAKE A LUNCH

3        BREAK FOR THE JURY FROM -- STILL LIGHTLY LONGER, BUT MAYBE

4        WE'LL COME BACK AT 1:15.  I'LL GIVE YOU A BETTER ESTIMATE AT

5        THAT TIME.

6            LET'S GO AHEAD -- WE CAN TAKE OUR 15 MINUTE BREAK THIS

7        MORNING, WHICH WE HAVE SHOULD HAVE TAKEN AT 10:30, AND THEN

8        WE'LL CONCLUDE THE TRIAL TESTIMONY, WE'LL EXCUSE YOU FOR THE

9        LUNCH BREAK, WE'LL COME BACK, READ THE JURY INSTRUCTIONS, AND

10       THEN YOU'LL BE EXCUSED FOR THE REST OF THE DAY.

11           BUT WE WILL NEED, IN ADDITION TO OUR LUNCH BREAK, ABOUT

12       HALF AN HOUR TO HANDLE SOME MATTERS OUTSIDE YOUR PRESENCE.

13       OKAY?

14           THANK YOU.  PLEASE DON'T RESEARCH OR DISCUSS THE CASE, AND

15       WE'LL SEE YOU BACK IN 15 MINUTES.

16           (JURY OUT AT 10:55 A.M.)

17           THE COURT:  ALL RIGHT.  THE JURORS HAVE LEFT THE

18       COURTROOM.  YOU MAY STEP DOWN.  WE'LL TAKE OUR BREAK NOW.

19           (RECESS FROM 10:56 A.M. UNTIL 11:10 A.M.)

20           THE COURT:  ALL RIGHT.  WELCOME BACK.  PLEASE TAKE A

21       SEAT.  TIME IS NOW 11:11.

22           GO AHEAD, PLEASE.

23                    **FURTHER RECROSS-EXAMINATION**

24       BY MS. KREVANS:

25       Q.   ARE YOU SITUATED THERE, DR. JEFFAY?

1    A.    ALL SET.

2    Q.    OKAY.  I'LL START WITH A COUPLE QUESTIONS ABOUT THE

3    INFRINGEMENT ISSUE.

4         YOU TALKED A LITTLE BIT WITH SAMSUNG'S COUNSEL ABOUT

5    SHARED LIBRARIES; RIGHT?

6    A.    YES.

7    Q.    AND YOU SAID A SHARED LIBRARY IS SOMETHING THAT CAN BE A

8    BASIC BUILDING BLOCK OF APPLICATIONS.

9    A.    YES.

10   Q.    ALL RIGHT.  YOU AGREE THAT BROWSER IS AN APPLICATION;

11   RIGHT?

12   A.    I DO.

13   Q.    YOU AGREE THAT'S ACTUALLY SOMETHING THAT CAN BE A CLIENT

14   UNDER THE COURT'S CONSTRUCTION?

15   A.    I DON'T THINK THE COURT CONSTRUED CLIENT, BUT INTERPRETING

16   THE CONSTRUCTION IN THE CONTEXT OF THE ACCUSED SYSTEMS, THE

17   BROWSER WOULD BE A CLIENT, YES.

18   Q.    OKAY.  AND THERE'S ANOTHER SEPARATE APPLICATION THAT YOU

19   DISCUSSED WITH YOUR -- WITH SAMSUNG'S COUNSEL THIS MORNING,

20   MESSAGING.  THAT IS ALSO AN APPLICATION?

21   A.    YES.

22   Q.    AND THAT'S ALSO SOMETHING THAT WOULD QUALIFY AS A CLIENT

23   UNDER THE COURT'S CONSTRUCTION OF ANALYZER SERVER?

24   A.    A CLIENT, YES.

25   Q.    OKAY.  BROWSER AND MESSAGING ARE ACTUALLY TWO SEPARATE

1    APPLICATIONS; RIGHT?

2    A.    YES.

3    Q.    THEY'RE DISTINCT FROM ONE ANOTHER?

4    A.    THEY ARE.

5    Q.    OKAY.  AND YOU SAID, IN SOME TESTIMONY THIS MORNING, THAT

6    YOU WOULD EXPECT TO SEE -- YOU WERE TALKED ABOUT THE SERVER

7    UNDER THE CONSTRUCTION -- YOU'D EXPECT TO SEE A SERVER THAT

8    COULD BE USED BY ANY OTHER APPLICATION; RIGHT?

9    A.    I DON'T KNOW THAT I RECALL THAT PARTICULAR TESTIMONY.

10         BUT IF THERE WERE A SERVER, A SERVER COULD BE USED BY, IN

11   THEORY, COULD BE USED BY OTHER APPLICATIONS.

12   Q.    OKAY.  AND, IN FACT, THE SHARED LIBRARIES THAT BOTH YOU

13   AND DR. MOWRY HAVE TESTIFIED ABOUT THAT ARE ACTUALLY ON THE

14   SAMSUNG PHONES INCLUDE THINGS LIKE CACHE BUILDER; RIGHT?

15   A.    THAT'S PART OF IT, YES.

16   Q.    CONTENT DETECTOR WOULD ALSO BE A SHARED LIBRARY; RIGHT?

17   A.    IT IS A SHARED LIBRARY.

18   Q.    AND LINKIFY IS A SHARED LIBRARY?

19   A.    RIGHT.

20   Q.    IT IS.  THOSE ARE ALL SHARED LIBRARIES ON THESE PHONES;

21   RIGHT?

22   A.    CORRECT.

23   Q.    AND THEY CAN EACH BE USED BY THE BROWSER APPLICATION;

24   RIGHT?

25   A.    IN PRINCIPAL, YEAH.

1    Q.   AND THEY COULD EACH BE USED BY THE MESSAGING APPLICATION;

2    RIGHT?

3    A.   IN PRINCIPAL, YES.

4    Q.   AND, IN FACT, THEY CAN EACH BE USED BY APPLICATIONS ON

5    THESE PHONES OTHER THAN BROWSER AND MESSAGING; RIGHT?

6    A.   IN PRINCIPAL, YES.

7    Q.   NOT JUST IN PRINCIPAL.  BUT, IN FACT, ON THESE PHONES,

8    THEY CAN BE USED BY APPLICATIONS OTHER THAN THE BROWSER AND

9    MESSAGING; RIGHT?

10    A.   I THINK WE'RE -- THEY ARE PART OF THE FRAMEWORK.  THEY

11    EXIST FOR APPLICATION DEVELOPERS TO USE THEM.

12    Q.   AND IN FACT, ON THE ACTUAL NINE ACCUSED SAMSUNG

13    SMARTPHONES, THE CACHE BUILDER, CONTENT DETECTOR, AND LINKIFY

14    SHARED LIBRARIES CAN ALL BE USED BY APPLICATIONS OTHER THAN

15    BROWSER AND MESSAGING; RIGHT?

16    A.   THEY CAN BE, YES.

17    Q.   OKAY.  I JUST WANT TO MAKE SURE WE'RE CLEAR ABOUT YOUR

18    INVALIDITY OPINIONS BASED ON SIDEKICK.

19         YOU TOLD US THIS MORNING -- WELL, LET ME BACK UP.

20         WHEN YOU WERE LAST HERE, YOU AGREED THAT SIDEKICK DOES NOT

21    ANTICIPATE CLAIM 9 OF THE '647 PATENT; RIGHT?

22    A.   CORRECT.

23    Q.   BECAUSE IT DOESN'T DISCLOSE EVERY LIMITATION; RIGHT?

24    A.   CORRECT.  WE TALKED ABOUT THE POP-UP MENU.

25    Q.   OKAY.  SO YOU IDENTIFIED LAST TIME THE POP-UP MENU AS ONE

1    THING THAT WAS NOT DISCLOSED BY SIDEKICK.

2    A.   CORRECT.

3    Q.   AND TODAY YOU'VE IDENTIFIED A SECOND THING THAT YOU

4    BELIEVE WAS NOT DISCLOSED BY SIDEKICK UNDER THE COURT'S

5    CONSTRUCTIONS, AND THAT IS THE SPECIFIED CONNECTION?

6    A.   CORRECT.

7    Q.   OKAY.  BUT -- SO YOUR OPINION IS THAT SIDEKICK RENDERS

8    CLAIM 9 OBVIOUS BECAUSE, BY 1996, YOU BELIEVE IT WOULD HAVE

9    BEEN OBVIOUS TO FILL IN THESE TWO THINGS THAT YOU BELIEVE ARE

10   MISSING, THE POP-UP MENU AND SPECIFIED CONNECTION?

11   A.   RIGHT.  BY 1996, AS I SAID, IF YOU IMPLEMENTED SIDEKICK IN

12   HIGH LEVEL PROGRAMMING LANGUAGE, THE MOST OBVIOUS WAY TO

13   PROVIDE THAT FUNCTION, THE FUNCTION OF ASSOCIATING AN ACTION

14   WITH THE STRUCTURE, WOULD BE VIA POINTER.

15        AND AS I THINK I ALSO SAID TWO WEEKS AGO, THAT BY 1996,

16   YOU KNOW, POP-UP MENUS WERE CERTAINLY COMMON USER INTERFACE

17   ELEMENT AND IT WOULD HAVE BEEN AN OBVIOUS DESIGN CHOICE TO USE

18   A POP-UP MENU.

19             MS. KREVANS:  NOTHING FURTHER, YOUR HONOR.

20             THE COURT:  ALL RIGHT.  THE TIME IS NOW 11:15.  IS

21   THERE ANY REDIRECT?

22             MR. NELSON:  NO, YOUR HONOR.

23             THE COURT:  ALL RIGHT.  MAY THIS WITNESS BE EXCUSED

24   AND IS IT -- I ASSUME IT'S NOT SUBJECT TO RECALL.

25             MR. NELSON:  THAT'S CORRECT.

1           MS. KREVANS:  THAT IS CORRECT, YOUR HONOR.

2           THE COURT:  ALL RIGHT.  YOU ARE EXCUSED.

3           THE WITNESS:  THANK YOU.

4           THE COURT:  ALL RIGHT.  CALL YOUR NEXT WITNESS,

5    PLEASE.

6           MS. KREVANS:  OUR NEXT WITNESS IS OUR PREVIOUS

7    WITNESS, YOUR HONOR, DR. MOWRY.

8           THE COURT:  ALL RIGHT.  YOU ARE STILL UNDER OATH.

9       **(PLAINTIFF'S WITNESS, TODD MOWRY, WAS PREVIOUSLY SWORN.)**

10          THE COURT:  TIME IS NOW --

11          MS. KREVANS:  YOUR HONOR, MAY I JUST --

12          THE COURT:  DO YOU NEED A MINUTE?

13          MS. KREVANS:  ARE THE BINDERS STILL --

14          THE COURT:  I'LL GIVE YOU A MINUTE TO GET SET UP.

15          MS. KREVANS:  OKAY.

16      (PAUSE IN PROCEEDINGS.)

17          THE COURT:  ARE WE SET?

18          MS. KREVANS:  YES, WE ARE, YOUR HONOR.

19          THE COURT:  ALL RIGHT.  TIME IS 11:16.

20      GO AHEAD, PLEASE.

21              **FURTHER REDIRECT EXAMINATION**

22   BY MS. KREVANS:

23   Q.   WELCOME BACK AGAIN, PROFESSOR MOWRY.

24   A.   THANK YOU.

25   Q.   LET'S TALK FOR A MOMENT ABOUT VALIDITY.

1          FIRST, AS AN OVERALL MATTER, DO THE ADDITIONAL

2     CONSTRUCTIONS THAT WE NOW HAVE FROM THE COURT FOR THE ANALYZER

3     SERVER AND LINKING ACTIONS TERMS CHANGE YOUR OVERALL OPINIONS

4     REGARDING WHETHER THE SIDEKICK REFERENCE CAN RENDER CLAIM 9 OF

5     THE '647 PATENT OBVIOUS?

6     A.   NO, THEY DO NOT.

7     Q.   NOW, YOU JUST HEARD, LITERALLY JUST A MOMENT AGO,

8     DR. JEFFAY IDENTIFY TWO THINGS THAT HE SAYS WERE MISSING FROM

9     SIDEKICK, A POP-UP MENU AND A SPECIFIED CONNECTION.

10    A.   YES.

11    Q.   LET'S START WITH DO YOU AGREE WITH PROFESSOR JEFFAY THAT

12    THOSE TWO THINGS WERE MISSING FROM SIDEKICK?

13    A.   YES, I DO.

14    Q.   DO YOU AGREE WITH HIM THAT THOSE ARE THE ONLY TWO THINGS

15    THAT WERE MISSING FROM THE SIDEKICK REFERENCE?

16    A.   NO, I DO NOT.

17    Q.   WHAT ELSE WAS MISSING FROM THE SIDEKICK REFERENCE THAT IS

18    AN ELEMENT OF CLAIM 9 AND USING ALL THREE OF THE CONSTRUCTIONS

19    THAT THE COURT HAS GIVEN US?

20    A.   SIDEKICK ONLY DETECTS ONE STRUCTURE, WHICH IS A PHONE

21    NUMBER, AND IT ONLY LINKS ONE ACTION, WHICH IS DIALLING A PHONE

22    NUMBER, AND THE ANALYZER SERVER NEEDS TO DETECT MULTIPLE

23    STRUCTURES.  IT NEEDS TO LINK ACTIONS, PLURAL, TO STRUCTURES,

24    AND THE POP-UP MENU NEEDS TO DISPLAY LINKED ACTIONS, PLURAL.

25    Q.   OKAY.  COULD WE PUT UP SLIDE 88.8, THE CLAIM, MR. LEE.

1          COULD YOU POINT THE JURY TO THE PORTIONS OF THE CLAIM THAT

2     REQUIRE PLURAL ACTIONS?

3     A.   IF YOU START WITH THE PREAMBLE AT THE VERY TOP, IT SAYS,

4     "A COMPUTER-BASED SYSTEM FOR DETECTING STRUCTURES," PLURAL," IN

5     DATA AND PERFORMING ACTIONS," PLURAL, "ON DETECTED STRUCTURES,"

6     PLURAL.

7          ALSO IN C1, IT SAYS "AN ANALYZER SERVER FOR DETECTING

8     STRUCTURES," PLURAL, "IN THE DATA, AND FOR LINKING ACTIONS TO

9     THE DETECTED STRUCTURES," PLURAL.

10         AND IN E, IN THE LAST SENTENCE THERE, IT SAYS, "CAUSING

11    THE OUTPUT DEVICE TO DISPLAY A POP-UP MENU OF THE LINKED

12    ACTIONS," PLURAL.

13    Q.   OKAY.  NOW, LAST TIME YOU WERE HERE, YOU TALKED A LITTLE

14     BIT ABOUT FIGURES 5, 6, AND 7 OF THE '647 PATENT.

15         COULD WE ALSO LOOK AT FIGURE 4 TODAY?  COULD WE SEE FIGURE

16    4, MR. LEE?  YOU'RE WAY AHEAD OF ME.

17         WE HAVE FIGURE 4 ON THE SCREEN.  YOU ALSO HAVE THE PATENT

18    THERE, PROFESSOR MOWRY, AND WE HAVE THE TEXT FROM COLUMN 5 OF

19    THE SPECIFICATION THAT DESCRIBES FIGURE 4.

20         CAN YOU EXPLAIN WHAT FIGURE 4 SHOWS TO THE JURY, AND ALSO

21    HOW IT RELATES TO THE FIGURES YOU PREVIOUSLY SHOWED THEM, 5, 6,

22    AND 7?

23    A.   YES.  AS YOU SEE ON THE RIGHT IN THE TEXT, IT SAYS

24     FIGURE 4 ILLUSTRATES AN EXAMPLE OF AN ANALYZER SERVER, AND IN

25     PARTICULAR, WHAT THE FIGURE IS SHOWING IS THE SET OF STRUCTURES

```
1      THAT IT DETECTS.  THAT'S WHAT EACH BOX IS.

2           AND THEN WITHIN EACH BOX, IT HAS -- IT SAYS ACTIONS,

3      COLON, AND THEN THERE'S A LIST OF DIFFERENT ACTIONS THAT ARE

4      LINKED TO THAT STRUCTURE.

5           FOR EXAMPLE, IN THE TOP ONE YOU SEE, FOR A PHONE NUMBER,

6      THE ACTIONS WOULD INCLUDE CALLING, PUT IT IN ELECTRONIC

7      TELEPHONE BOOK, AND YOU SEE THIS ALSO FOR POSTAL ADDRESSES,

8      E-MAIL ADDRESSES, DATES, AND NAMES FROM A NAME LIBRARY.

9      Q.   OKAY.  AND HOW DOES FIGURE 4 RELATES TO FIGURES -- KEEP

10     FIGURE 4 ON THE SCREEN, BLOWN UP, WOULD YOU, MR. LEE.

11          HOW DOES THIS RELATE TO FIGURES 5, 6, AND 7?

12     A.   WELL, AS YOU RECALL, FIGURES 5, 6, AND 7 WALKED US THROUGH

13     AN EXAMPLE WHERE, IN AN EXAMPLE E-MAIL MESSAGE, THE STRUCTURES

14     WERE DETECTED AND THEN BOXES WERE DRAWN AROUND THEM.  THAT WAS

15     WHAT WE SAW IN FIGURE 6.

16          AND THEN IN FIGURE 7, THE USER SELECTED ONE WITH A POP-UP

17     MENU WITH A SET OF LINKED ACTIONS.

18          AND THIS FIGURE 4 IS SHOWING WHAT THE ANALYZER SERVER IS

19     LOOKING FOR WHEN IT WAS DETECTING MULTIPLE STRUCTURES THAT WE

20     SAW IN FIGURE 6.  SO I BELIEVE WE SAW A PHONE NUMBER, A POSTAL

21     ADDRESS, AN E-MAIL ADDRESS, AND A NAME IN THAT EXAMPLE.  SO

22     THOSE ARE FOUR STRUCTURES THAT WE SEE HERE.

23          AND YOU ALSO SEE, WITHIN THOSE THINGS, THAT THERE ARE THE

24     DIFFERENT LINKED ACTIONS, AND FOR EXAMPLE, IN FIGURE 7, THE

25     USER HAD SELECTED A PHONE NUMBER, A PARTICULAR PHONE NUMBER,
```

1    AND A POP-UP MENU OFFERED THE CHOICES OF CALLING THE NUMBER OR

2    PUTTING IT IN AN ELECTRONIC TELEPHONE BOOK.

3    Q.   AND DID SIDEKICK, THE PIECE OF PRIOR ART THAT DR. JEFFAY

4    IS RELYING ON, SATISFY THE REQUIREMENT OF THE CLAIM THAT THERE

5    BE MULTIPLE ACTIONS THAT CAN BE SELECTED BY THE USER?

6    A.   NO.  IN FACT, IT ONLY HAS ONE ACTION, WHICH IS TO DIAL,

7    AND WHEN MR. FRID-NIELSEN TESTIFIED -- HE WAS ONE OF THE

8    DEVELOPERS OF SIDEKICK -- HE CONFIRMED THAT THE ONLY THING IT

9    DOES IS DIAL, THE ONLY ACTION IS TO DIAL.

10   Q.   SO IN ADDITION TO THE TWO THINGS THAT DR. JEFFAY SAID WERE

11   MISSING FROM SIDEKICK, THE SPECIFIED CONNECTION AND THE POP-UP

12   MENU, IT'S MISSING TWO MORE, DETECTED -- DETECTING MULTIPLE

13   STRUCTURES AND MULTIPLE ACTIONS?

14   A.   THAT'S CORRECT.

15           MS. KREVANS:  NOTHING FURTHER, YOUR HONOR.

16           THE COURT:  ALL RIGHT.  THE TIME IS NOW 11:22.

17       ALL RIGHT.  MR. NELSON, ARE YOU READY?

18           MR. NELSON:  YES, I AM, YOUR HONOR.

19           THE COURT:  ALL RIGHT.  TIME IS 11:22.

20       GO AHEAD, PLEASE.

21           MR. NELSON:  THANK YOU.  CAN WE PUT THE CONSTRUCTIONS

22   WITH THE CLAIM UP ON THE SCREEN, PLEASE, MR. KOTARSKI?  WE'LL

23   BLOW THAT UP A LITTLE BIT.

24   ///

25   ///

1                    **FURTHER RECROSS-EXAMINATION**

2    BY MR. NELSON:

3    Q.   SO I WANT TO FOCUS ON THIS LINKING ACTIONS CONSTRUCTION.

4    A.   OKAY.

5    Q.   YOU SAID THAT SIDEKICK DIDN'T LINK MULTIPLE ACTIONS;

6    RIGHT?

7    A.   IT ONLY LINKS DIALLING.

8    Q.   YEAH.  WHICH YOU SAY IS ONE ACTION; RIGHT?

9    A.   RIGHT.

10   Q.   BUT THE CONSTRUCTION HERE OF LINKING ACTIONS TO THE

11   DETECTED STRUCTURES, IT SAYS, "CREATING A SPECIFIED CONNECTION

12   BETWEEN EACH DETECTED STRUCTURE AND AT LEAST ONE COMPUTER

13   SUBROUTINE;" RIGHT?

14   A.   RIGHT.

15   Q.   SO THE COMPUTER SUBROUTINE REFERS TO THE ACTION; RIGHT?

16   A.   YES.

17   Q.   ALL RIGHT.  SO THE CONSTRUCTION, THE COURT'S CONSTRUCTION,

18   SAYS AT LEAST ONE ACTION; RIGHT?

19   A.   THIS IS REFERRING TO A SPECIFIC STRUCTURE.

20        BUT THE CLAIM STILL REQUIRES MULTIPLE ACTIONS OVERALL.  IN

21   FACT, THIS IS CONSISTENT WITH FIGURE 4 WHERE WE SAW, FOR A

22   DATE, THAT THAT WAS JUST ONE ACTION FOR A DATE, FOR EXAMPLE.

23   Q.   SO JUST SO WE'RE CLEAR, YOU UNDERSTAND THAT WHEN YOU'RE

24   LOOKING AT EITHER INFRINGEMENT OR INVALIDITY, YOU COMPARE THE

25   CLAIMS TO THE, AS CONSTRUED BY THE COURT, TO THE PRIOR ART, FOR

1       EXAMPLE; RIGHT?

2       A.   YES.

3       Q.   YOU DON'T COMPARE IT TO THE FIGURES OF THE PATENT; RIGHT?

4       A.   YES.

5       Q.   SO NOW I WANT TO TALK ABOUT THIS MULTIPLE STRUCTURES

6       PIECE.

7            IF WE COULD PUT UP SDX 2587.  AND WE'LL BLOW THAT UP A

8       LITTLE BIT.

9                 MR. KOTARSKI:  WHICH PORTION?

10                MR. NELSON:  JUST THE SIDEKICK PIECE.

11      Q.   OKAY.  SO YOU RECALL THIS DEMONSTRATIVE OF THE SIDEKICK

12      SYSTEM; RIGHT?

13      A.   YES.

14      Q.   SO YOU -- AND I THINK YOU TALKED ABOUT IT.  YOU HAVE A --

15      ONE PHONE NUMBER THAT'S EXPRESSED HAS A PARENTHESES AROUND THE

16      AREA CODE; RIGHT?

17      A.   YES, THE THING THAT'S HIGHLIGHTED IS A PHONE NUMBER.

18      Q.   RIGHT.  AND IT'S GOT PARENTHESES AROUND THE AREA CODE;

19      RIGHT?

20      A.   YES.

21      Q.   AND THEN THERE'S ANOTHER ONE THAT DOESN'T?  IT'S JUST GOT

22      THE DASHES IN THERE; RIGHT?

23      A.   YES, I SEE THAT.

24      Q.   AND IT'S THE CASE THAT THOSE ARE TWO DIFFERENT STRUCTURES;

25      RIGHT?

1    A.   NO.  THAT'S ONE STRUCTURE THAT MATCHES THE SINGLE PATTERN

2    IN SIDEKICK FOR FINDING A PHONE NUMBER, BECAUSE SIDEKICK'S

3    PATTERN DOESN'T CARE ABOUT WHERE YOU PLACE THE PARTICULAR

4    PUNCTUATION.  SO THAT'S JUST ONE STRUCTURE.

5    Q.   SO COULD WE GO TO PAGE 829 OF YOUR TRIAL TESTIMONY?  THIS

6    WOULD BE AT LINE 2 IT BEGINS, AND CONTINUES DOWN TO LINE 22.

7         OKAY.  SO WE HAVE IT HERE.  DO YOU SEE THE QUESTION,

8    "OKAY.  YOU'VE USED THE WORD 'STRUCTURE' A FEW TIMES AND I SEE

9    IT NOW HERE IN THE SPECIFICATION OF THE PATENT.

10        "CAN YOU TELL US WHAT THE WORD 'STRUCTURE' MEANT IN THE

11   CONTEXT OF THIS PATENT IN 1996?"

12        SO THAT WAS A QUESTION FROM YOUR COUNSEL, RIGHT?

13   A.   ACTUALLY, I DON'T HAVE -- DO I HAVE A COPY OF THIS IN MY

14   BINDER?

15        I SEE IT HERE.  I THINK IT WAS FROM MY COUNSEL.

16   Q.   I'LL JUST REPRESENT TO YOU THAT IT IS.

17   A.   OKAY.

18   Q.   SO THE -- NOW YOUR ANSWER, "THEY DEFINE THAT IN COLUMN 1

19   OF THE PATENT.  THEY GAVE EXAMPLES OF STRUCTURES IN THE

20   PARAGRAPH THAT WE WERE LOOKING AT EARLIER.  THEY SAY THEY'RE

21   THINGS LIKE E-MAIL ADDRESSES, PHONE NUMBERS, AND DATES.

22        "AND IN THE PARAGRAPH AFTER THAT, THEY'RE EVEN MORE

23   CONCRETE AND THEY SAY THAT A STRUCTURE IS AN INSTANCE OF A

24   PATTERN.

25        "SO, FOR EXAMPLE, FOR A PHONE NUMBER, YOU CAN WRITE DOWN A

1    PATTERN AND SAY WE'RE LOOKING FOR THREE DIGITS, A DASH, AND

2    THEN FOUR DIGITS, AND THERE MIGHT ALSO BE A PHONE NUMBER WITH

3    AN AREA CODE IN FRONT OF IT.  SO THERE MIGHT BE THREE DIGITS

4    BEFORE THAT AND MAYBE SOME PARENTHESES."

5         DO YOU SEE THAT?  AND THEN YOU GO ON AND SAY, "SO YOU CAN

6    CREATE A SET OF PATTERNS THAT DESCRIBE THE DIFFERENT THINGS AND

7    THEN THE SYSTEM WILL LOOK FOR MATCHES TO THOSE IN A DOCUMENT.

8         "SO A STRUCTURE TECHNICALLY IS A SPECIFIC SET OF DIGITS OR

9    CHARACTERS FROM, SAY, AN E-MAIL MESSAGE THAT MATCH THE

10   PATTERN."

11        DO YOU SEE THAT?

12   A.   YES, I DO.

13   Q.   SO YOU AGREE WITH THIS DEFINITION THAT YOU GAVE; RIGHT?

14   A.   YES.

15             MR. NELSON:  THANK YOU.  I HAVE NO FURTHER QUESTIONS.

16             THE COURT:  ALL RIGHT.  THE TIME IS NOW 11:27.

17        IS THERE ANY REDIRECT?

18             MS. KREVANS:  VERY BRIEFLY, YOUR HONOR.

19             THE COURT:  OKAY.

20             MS. KREVANS:  LET ME GET MY FINGERS ON THE RIGHT

21    PAGES OF MY BINDER HERE.

22        COULD WE PUT BACK UP THE TRIAL TESTIMONY THAT WE WERE JUST

23   LOOKING AT, MR. LEE?  I THINK IT WAS FROM PAGE 829 OF THE

24   TRANSCRIPT.

25    ///

```
1                    FURTHER REDIRECT EXAMINATION

2     BY MS. KREVANS:

3     Q.   AND SCROLL DOWN A LITTLE BIT SO WE'RE LOOKING -- SO YOU

4     TALKED ABOUT THIS CONCEPT OF PATTERNS, HERE, RIGHT,

5     PROFESSOR MOWRY?

6     A.   YES.

7     Q.   YOU SEE AT LINE 13, YOU SAY, FOR EXAMPLE, A PHONE NUMBER?

8     A.   YES.

9     Q.   AND THEN YOU GAVE AN EXAMPLE OF HOW SOMEBODY MIGHT WRITE A

10    VERY SIMPLE PATTERN TO DETECT A PHONE NUMBER; RIGHT?

11    A.   YES, EXACTLY.

12    Q.   DID YOU LOOK AT THE ACTUAL CODE IN SIDEKICK THAT DEFINED A

13    PATTERN TO FIND PHONE NUMBERS?

14    A.   YES, I DID.  IN FACT, I TALKED ABOUT THAT LAST WEEK, YES.

15    Q.   OKAY.  LET'S LOOK AT THAT.  AGAIN, THAT'S 88.75, MR. LEE.

16         WHAT ARE WE LOOKING AT HERE, PROFESSOR MOWRY?

17    A.   THESE ARE THE PARAMETERS THAT -- THE DATA VALUES THAT

18    DESCRIBE THE ONE PATTERN INSIDE SIDEKICK FOR A TELEPHONE

19    NUMBER.

20    Q.   OKAY.  LET ME JUST -- BECAUSE COUNSEL SUGGESTED THAT THERE

21    IS SOME DISTINCTION BETWEEN YOUR TESTIMONY LAST TIME AND THIS

22    PATTERN.

23         IS THE PATTERN THAT IS SPECIFIED HERE IN SIDEKICK THE

24    SIMPLE KIND OF PATTERN YOU GAVE AS AN EXAMPLE WHERE YOU MIGHT

25    SAY A PHONE NUMBER WAS THREE DIGITS AND A DASH AND FOUR DIGITS?
```

1    A.    NO, IT'S NOT.

2    Q.    COULD YOU TELL US AGAIN WHAT IT WAS?

3    A.    THIS PATTERN, IT'S LOOKING FOR A SEQUENCE OF CHARACTERS IN

4    A LINE, AND IT BEGINS WITH ONE CHARACTER THAT CAN BE FROM ONE

5    SET OF CHARACTERS, WHICH IS SET 1 HERE, AND THAT IS DIGITS OR A

6    LEFT PARENTHESES.

7         AND THEN AFTER THAT FIRST CHARACTER, IT KEEPS GOING AS

8    LONG AS THE NEXT CHARACTERS AFTER IT ARE CHARACTERS FROM SET 3,

9    WHICH INCLUDES DIGITS, BUT OTHER THINGS LIKE DASH, SPACE, RIGHT

10   PAREN, AND SOME OTHER PUNCTUATION CHARACTERS.

11        SO IF IT FINDS THAT SEQUENCE, IT DOESN'T CARE WHERE OR HOW

12   MANY OF THESE PUNCTUATION CHARACTERS THERE ARE.  SO YOU COULD

13   HAVE -- YOU COULD ACTUALLY PUT THREE RIGHT PARENS AND NOT

14   BALANCE IT WITH ANY LEFT PARENS.  YOU COULD PUT DASHES ANYWHERE

15   YOU WANT.  YOU CAN JUMBLE PUNCTUATION AND DIGITS TOGETHER.

16        IT JUST LOOKS FOR THAT SEQUENCE, AND IT PULLS OUT THE

17   DIGITS, AND THEN IT DOES TWO SANITY CHECKS ON IT, CHECKS TO SEE

18   DID YOU HAVE AT LEAST SIX DIGITS, AND WAS THERE AT LEAST ONE OF

19   THESE SPECIAL CHARACTERS?  AND IF SO, IT'S A PHONE NUMBER.

20        SO ALL OF THE EXAMPLES WE SAW IN THAT E-MAIL MESSAGE

21   MATCHED THIS ONE PATTERN.

22             MS. KREVANS:  NOTHING FURTHER, YOUR HONOR.

23             THE COURT:  ALL RIGHT.  THE TIME IS NOW 11:30.

24        ALL RIGHT.  APPLE HAS 19 MINUTES AND SAMSUNG HAS 1 MINUTE.

25   DO YOU WANT TO JUST HAVE THIS WITNESS EXCUSED OR --

```
 1              MR. NELSON:  CAN I JUST ASK ONE QUESTION?

 2              THE COURT:  GO AHEAD.  YOU HAVE A MINUTE.

 3         GO AHEAD.  IT'S 11:30.

 4              MR. NELSON:  CAN WE PUT THAT 88.75 BACK UP?
```

**FURTHER RECROSS-EXAMINATION**

BY MR. NELSON:

Q.   THAT'S THAT CODE THAT YOU WERE JUST LOOKING AT?

A.   YES.

Q.   SO WHAT'S -- YOU SEE HERE IT SAYS SET 1, SET 2, SET 3;

RIGHT?

A.   YES.

Q.   SO IT'S -- THE CODE IS ACTUALLY DEFINING DIFFERENT SETS OF

PATTERNS; RIGHT?

A.   NO, NO, NO.  THIS IS ONE PATTERN.  THESE ARE THE INPUTTED

VALUES THAT ARE DESCRIBING THE ONE PATTERN.  THE PATTERN STARTS

WITH A CHARACTER AND IT CONTINUES ON WITH OTHER CHARACTERS.  SO

IT'S ONE PATTERN.

     IN FACT, THIS IS A VERY PRIMITIVE PATTERN, AND IN ANDROID

YOU HAVE A MUCH MORE SOPHISTICATED PATTERN FOR LOOKING FOR

PHONE NUMBERS.  IT USES SOMETHING CALLED REGULAR EXPRESSIONS,

WHICH IS MUCH MORE POWERFUL THAN THIS.

Q.   SO IT CAN MATCH SET 1, SET 2, SET 3; CORRECT?

A.   NO, THAT'S NOT CORRECT.  THESE AREN'T PATTERNS.  THOSE ARE

PARAMETERS THAT DESCRIBE A PATTERN.

              MR. NELSON:  OKAY.  THANK YOU VERY MUCH.

```
 1              THE COURT:  ALL RIGHT.  11:31.

 2              MS. KREVANS:  NOTHING FURTHER, YOUR HONOR, AND THIS

 3      WITNESS MAY BE EXCUSED, NOT SUBJECT TO RECALL.

 4              THE COURT:  ALL RIGHT.  YOU MAY BE EXCUSED.

 5          OKAY.  SO YOU HAVE NOW HEARD ALL OF THE EVIDENCE THAT YOU

 6      ARE GOING TO HEAR.

 7              WE ARE GOING TO GO AHEAD AND EXCUSE YOU NOW FOR AN HOUR

 8      AND A HALF LUNCH.  WE HAVE SOME MATTERS TO TAKE CARE OF OUTSIDE

 9      YOUR PRESENCE, BUT WHEN YOU COME BACK AT 1:00, WE WILL

10      DISTRIBUTE AND READ THE FINAL JURY INSTRUCTIONS.

11              AFTER THAT, YOU'LL BE EXCUSED FOR THE DAY AND TOMORROW

12      MORNING AT 9:00 WE'LL BEGIN WITH CLOSING ARGUMENTS.  ALL RIGHT?

13              THANK YOU VERY MUCH.  PLEASE DON'T RESEARCH OR DISCUSS THE

14      CASE AND WE'LL SEE YOU AT 1:00.  THANK YOU.

15          (JURY OUT AT 11:32 A.M.)

16              THE COURT:  THE RECORD SHOULD REFLECT THE JURORS HAVE

17       LEFT THE COURTROOM.

18              PLEASE TAKE A SEAT.

19          I HAVE ALLOCATED TEN MINUTES PER SIDE FOR YOUR JMOLS, BUT

20      LET ME HEAR IF YOU ARE GOING TO RENEW JMOLS.  IT WAS BRIEFED

21      OVER THE WEEKEND AND YOU DID INCORPORATE THE MOTOROLA

22      CONSTRUCTIONS IN THREE OUT OF THE FOUR BRIEFS.  SO LET ME HEAR.

23              MS. KREVANS:  YOUR HONOR, I THINK IF WE DID ARGUE, WE

24       WOULD BE ESSENTIALLY SAYING THE SAME THINGS.

25              THE COURT:  OH.
```

```
1              MS. KREVANS:  BUT I THINK WE COULD DO THIS VERY

2    BRIEFLY JUST BY SUPPLEMENTING WHAT WE FILED.

3              THE COURT:  OKAY.  ONE SECOND.  SHOULD I TELL THE

4    JURORS TO COME BACK SOONER?  ARE WE GOING TO NEED HALF AN HOUR

5    TODAY?

6              MS. KREVANS:  I DON'T THINK WE NEED HALF AN HOUR FOR

7    THE JMOLS.

8              THE COURT:  YOU DON'T THINK WE DO?

9              MS. KREVANS:  NO.

10             THE COURT:  LET ME ASK MS. PARKER BROWN, CAN YOU TELL

11   OUR JURORS THEY MAY NOT GET THAT LONG LUNCH?  I DON'T THINK

12   THEY WERE HAPPY TO HAVE A LONG LUNCH -- HOW LONG DO YOU THINK

13   YOU'LL NEED?

14             MS. KREVANS:  AS I UNDERSTAND THE COURT'S ORDER,

15   WE'RE SIMPLY SUPPLEMENTING BASED ON WHAT HAPPENED THIS MORNING.

16        IN ADDITION TO WHAT WE FILED, I THINK WE NEED MAYBE FIVE

17   MINUTES, IF THAT.

18             THE CLERK:  THEY'RE ALL GONE.

19             MS. KREVANS:  I GUESS THEY DID WANT A LONG LUNCH.

20             THE COURT:  OKAY.  NEVER MIND.

21        LET ME HEAR FROM MR. NELSON.  WHAT DO YOU THINK?

22             MR. NELSON:  IT DEPENDS ON WHAT YOUR HONOR IS

23   INTERESTED IN.  THAT WAS MY UNDERSTANDING, THAT WE'RE

24   SUPPLEMENTING AS WELL AND NOT REARGUING EVERYTHING THAT WAS

25   ALREADY PLACED IN THE JMOL'S.
```

```
1              THE COURT:  OKAY.

2              MR. NELSON:  SO IF THAT'S CONSISTENT WITH YOUR

3    HONOR'S UNDERSTANDING, THEN WE'RE ALL ON THE SAME PAGE.

4              THE COURT:  OKAY.  WE'LL ALL HAVE A LONG LUNCH.

5    OKAY.  THAT'S FINE THEN.  ARE YOU BOTH MOVING?

6              MS. KREVANS:  I THINK PROBABLY MR. NELSON SHOULD GO

7    FIRST AND THEN WE WOULD OPPOSE AND MAKE OUR OWN MOTION.

8              THE COURT:  ALL RIGHT.  AND THEN MR. NELSON WILL

9    OPPOSE YOUR MOTION?

10             MS. KREVANS:  EXACTLY.

11             THE COURT:  OKAY.  ALL RIGHT.  I ALWAYS LIKE TIME

12   LIMITS, SO THERE WILL BE ONE.

13          LET'S GO AHEAD THEN.  TIME IS NOW 11:34.

14          GO AHEAD, PLEASE.

15             MR. NELSON:  ALL RIGHT, YOUR HONOR.  SO THE FIRST ONE

16   IS ON JMOL ON INFRINGEMENT --

17             THE COURT:  OKAY.

18             MR. NELSON:  -- OF CLAIM 9 OF THE '647 PATENT BASED

19   UPON WHAT WE HEARD THIS MORNING.

20          SO APPLE HASN'T OFFERED ANY CREDIBLE EVIDENCE BY WHICH A

21   REASONABLE JURY COULD CONCLUDE THAT THE ANALYZER SERVER

22   LIMITATION IS MET UNDER YOUR HONOR'S CONSTRUCTION.

23          WHAT WAS IDENTIFIED IS A SINGLE APPLICATION.  THERE'S NO

24   SEPARATENESS IN THAT, WHAT THEY IDENTIFIED, WHAT DR. MOWRY

25   IDENTIFIED AS A CLIENT APPLICATION OF ANY SERVER FUNCTIONALITY.
```

1          RATHER, WHAT DR. MOWRY HAS POINTED TO IS A SHARED LIBRARY

2     THAT HE ADMITS IS INCORPORATED INTO THE APPLICATION, AND ALL

3     THE EVIDENCE IS THAT IT RUNS AS PART OF THE APPLICATION AND

4     DR. MOWRY ADMITTED HIMSELF THAT IT COULD NOT RUN INDEPENDENTLY.

5          THEREFORE, THERE IS NOTHING MEETING THE COURT'S

6     CONSTRUCTION OF THE ANALYZER SERVER LIMITATION.

7          NOW, WE ALSO OFFERED EVIDENCE REGARDING THE -- PREVIOUSLY

8     WE DEALT WITH THE ACTION PROCESSOR LIMITATION.  I DON'T BELIEVE

9     THERE'S ANYTHING ADDITIONAL THIS MORNING TO SUPPLEMENT THAT, ON

10    THAT, YOUR HONOR.

11          THE COURT:  OKAY.

12          MR. NELSON:  BUT WITH RESPECT TO THE LINKING ACTIONS

13     TO DETECTED STRUCTURES AND THE SPECIFIED CONNECTION, THE

14     COURT'S ORDER REQUIRES THAT THERE BE A SPECIFIED CONNECTION

15     BETWEEN THE COMPUTER SUBROUTINE TO PERFORM THE ACTION AND THE

16     SELECTION, WHEN THE DETECTION IS MADE.

17          AND THE UNDISPUTED TESTIMONY IS THERE IS NO SUCH SPECIFIED

18     CONNECTION THAT'S MADE.

19          RATHER, WHAT DR. MOWRY POINTS TO AND WHAT DR. JEFFAY

20     EXPLAINED IS THE START ACTIVITY, WHOSE ONLY PURPOSE IN LIFE IS

21     TO TRY TO DETERMINE WHAT ACTIVITY MIGHT, OR APPLICATION RATHER,

22     MIGHTY EVENTUALLY BE ABLE TO PERFORM A FUNCTION.

23          SO THE CLAIM -- IF YOU BUY THAT REASONING, THEN SPECIFIED

24     CONNECTION HAS NO MEANING, WHICH IS PART OF THE COURT'S

25     CONSTRUCTION.

```
 1              THE COURT:  CAN I ASK YOU ABOUT THAT?

 2              MR. NELSON:  YES.

 3              THE COURT:  ARE YOU SAYING -- ELABORATE THAT FOR ME.

 4    ARE YOU SAYING THAT THE START ACTIVITY THAT CONNECTS TO THE

 5    ACTION, THAT -- ARE YOU SAYING THAT THERE HAS TO BE A DIRECT

 6    CONNECTION THAT WOULD EXCLUDE START ACTIVITY?  OR -- I'M A

 7    LITTLE BIT UNCLEAR.

 8              MR. NELSON:  WELL, IT'S A SPECIFIED CONNECTION, YOUR

 9    HONOR.

10              THE COURT:  OKAY.  YES.

11              MR. NELSON:  THAT'S WHAT'S REQUIRED.  SO IN THE

12    PATENT, THE SPECIFIED CONNECTION IS THAT THERE'S, AS DR. JEFFAY

13    TESTIFIED, IS THAT THERE'S A LINKING, A POINTER THAT SAYS IF

14    THE USER PICKED THIS ACTION, LET'S SAY IT'S DIALER, HERE'S THE

15    APPLICATION TO DIAL.

16              THE COURT:  OKAY.

17              MR. NELSON:  THE UNDISPUTED TESTIMONY IS THERE IS NO

18    SUCH THING IN THE PRODUCT.

19         RATHER, WHAT WAS POINTED TO WAS THIS GENERATION OF THE

20    INTENT TO, SAY, DIAL --

21              THE COURT:  UM-HUM.

22              MR. NELSON:  -- WHICH IS PASSED TO START ACTIVITY.

23         THERE IS AN ENTIRE PROCESS THAT WAS DESCRIBED OF A

24    RESOLUTION TO DETERMINE WHAT THE COMPUTER SUBROUTINE WOULD BE

25    IN THE PARLANCE OF THE CLAIM CONSTRUCTION IN ORDER TO PERFORM
```

```
 1    THE ACTION.

 2         THEREFORE, BY DEFINITION, THERE IS NO SPECIFIED

 3    CONNECTION.

 4         THE REASON FOR THAT, AS YOU'VE HEARD TESTIMONY, IS BECAUSE

 5    OF THE OPEN PLATFORM OF ANDROID AND THE DEVELOPMENT OF THIS

 6    INTENT SYSTEM WHICH ALLOWS YOU TO BRING ANY TYPE OF APPLICATION

 7    THAT YOU MAY WANT IN ORDER TO PERFORM VARIOUS FUNCTIONS.

 8         SO THE SYSTEM NOT ONLY LACKS THE SPECIFIED CONNECTION

 9    UNDER THE TESTIMONY THAT WAS GIVEN, BUT IT WAS INTENTIONALLY

10    DESIGNED NOT TO HAVE ONE, YOUR HONOR.

11         THE COURT:  SO WHAT WOULD QUALIFY AS A SPECIFIED

12    CONNECTION?  IF IT WENT DIRECTLY FROM INTENT TO THE SELECTED

13    ACTION AND JUST CIRCUMVENTED START ACTIVITY, WOULD THAT SATISFY

14    THE CLAIM LIMITATION?

15         MR. NELSON:  WELL, I MEAN, PERHAPS.  WE'RE SPEAKING

16    IN THE HYPOTHETICAL, SO IT BECOMES -- BUT, YES, THERE WOULD

17    NEED TO BE SOME SPECIFIC LINKING THAT SAYS, OKAY, THIS -- IF

18    THIS SELECTION IS MADE, THIS IS THE COMPUTER SUBROUTINE THAT IS

19    GOING TO PERFORM THAT PARTICULAR ACTION, AND THERE IS NO SUCH

20    THING.

21         RATHER, THERE'S A WHOLE DECISION PROCESS THAT THE SYSTEM

22    HAS TO GO THROUGH, WHICH WAS DESCRIBED, IN ORDER TO DECIDE,

23    BASED UPON THE USER'S SELECTION, WHAT THE INTENT IS THAT'S

24    GENERATED, SUCH AS DIAL WAS THE EXAMPLE THAT WAS GIVEN.

25         ULTIMATELY, BASED UPON MANY THINGS, ONE OF WHICH MAY BE AN
```

1        ACTUAL USER SELECTION, WHAT ULTIMATELY WOULD BE, FOR EXAMPLE,

2        THE DIALER THAT IS GOING TO DO THAT.  E-MAIL WAS THE EXAMPLE

3        GIVEN, THE SAME THING THAT WOULD BE THERE.

4            SO THAT'S THE REASON, YOUR HONOR, BECAUSE UNDER THE THEORY

5        THAT WE'VE HEARD AND THAT'S BEEN TESTIFIED TO, SPECIFIED HAS NO

6        MEANING AND THAT IS PART OF THE COURT'S CONSTRUCTION.

7            ALL THEY SAY IS THAT ULTIMATELY THERE ARE CHAINS OF

8        EVENTS, THAT THIS WILL ULTIMATELY OCCUR, WHICH BY DEFINITION

9        CAN'T BE A SPECIFIED CONNECTION, PARTICULARLY WHERE YOU HAVE

10       THE SITUATION WHERE ONE OF THE THINGS THAT THEY'RE POINTING TO

11       MAY BE A USER SELECTION.

12            THE COURT:  WAS THERE ANOTHER NON-INFRINGEMENT

13       ARGUMENT THAT IF ALL OF THE INTENTS ARE LINKED TO START

14       ACTIVITY, THEN THERE'S ONLY ONE ACTION, YOU'RE NOT LINKING

15       MULTIPLE ACTIONS?  IS THAT ANOTHER NON-INFRINGEMENT ARGUMENT

16       THAT YOU'RE MAKING?

17            MR. NELSON:  WE HAVE SPECIFIED THAT AS WELL.

18            THE COURT:  OKAY.

19            MR. NELSON:  BUT THAT WAS MORE OF AN ILLUSTRATIVE

20       PURPOSE.

21            THE COURT:  OKAY.

22            MR. NELSON:  BECAUSE AT ONE POINT IN TIME, DR. MOWRY

23       TESTIFIED THAT THAT WOULD BE THE ACTION, IN OTHER WORDS, THE

24       COMPUTER SUBROUTINE -- BECAUSE, REMEMBER, THAT'S WHAT HAS TO BE

25       LINKED.

```
 1              THE COURT:  WAIT.  ARE YOU SAYING THE SUBROUTINE WAS

 2      THE ACTION?  I THOUGHT IT WAS THE ACTION AND NOT THE START

 3      ACTIVITY.

 4              MR. NELSON:  BUT THAT'S THE POINT, YOUR HONOR, IS

 5      THAT NO MATTER WHAT YOU SELECT -- SO LET'S SAY -- YOU RECALL

 6      THE MENU THAT IS GENERATED.  IF THE USER SELECTS DIAL, IT'S

 7      START ACTIVITY THAT'S CALLED AND IT'S PASSED AN INTENT.

 8          IF THE SELECTION IS E-MAIL, THEN START ACTIVITY IS CALLED.

 9          SO THE ONLY COMPUTER SUBROUTINE THAT IS EVER LINKED, SO TO

10      SPEAK, THAT'S SPECIFIED IS START ACTIVITY.

11          AND START ACTIVITY DOESN'T PERFORM ANY OF THE REQUESTED

12      ACTIONS, WHICH IS WHAT THE CLAIM, AND IN PARTICULAR THE CLAIM

13      CONSTRUCTION THAT YOUR HONOR PROVIDED, REQUIRES.

14              THE COURT:  OKAY.  ALL RIGHT.  SO THE OTHER ARGUMENT

15      ABOUT START ACTIVITY ONLY BEING ONE ACTION, THAT ONE YOU'RE

16      NOT -- THAT'S NOT AS IMPORTANT AS THE FACT THAT THE, THAT

17      THERE'S A LACK OF THE SPECIFIED CONNECTION LIMITATION?

18              MR. NELSON:  WHAT I THINK -- THEY GO PART AND PARCEL

19      TOGETHER.

20              THE COURT:  OKAY.

21              MR. NELSON:  BECAUSE THE POINT BEING THAT START

22      ACTIVITY IS THE ONLY THING THAT IS EVER CALLED.

23          SO TO THE EXTENT THERE'S A SPECIFIED CONNECTION BETWEEN

24      ANYTHING, ANY COMPUTER SUBROUTINE AND THE DETECTED STRUCTURE,

25      YOU KNOW, THE THINGS THAT THE USER CAN DO WITH THE MENU, THAT
```

```
1    WOULD BE IT, YOUR HONOR, AND THAT'S NOT WHAT -- ONE, IT'S THE

2    SAME IN EVERY INSTANCE, AND, TWO, IT DOESN'T PERFORM THE

3    ACTIONS.

4            THE COURT:  OKAY.  WHAT IS THE SIGNIFICANCE OF THIS

5    GLUE CODE?  MAYBE I SHOULD DIRECT THAT TO MS. KREVANS.

6            MR. NELSON:  WELL, THE ANSWER IS WE DON'T KNOW, YOUR

7    HONOR.

8            THE COURT:  UM-HUM.

9            MR. NELSON:  THE -- IT WAS NEVER SPECIFIED WHAT THAT

10   MAY BE.

11       THERE IS -- FRANKLY, IT'S JARGON.  IT'S NOT A TERM OF ART.

12           THE COURT:  WHAT IS THAT SUPPOSED TO -- I'M SORRY TO

13   INTERRUPT YOU.  WHAT IS THAT SUPPOSED TO BE REPLACING OR -- WHY

14   IS THAT EVEN OUT HERE?  WHAT IS THAT SUPPOSED TO BE BINDING?

15           MR. NELSON:  I CAN GIVE YOU MY UNDERSTANDING, YOUR

16   HONOR.

17           THE COURT:  PLEASE.  THAT'S WHAT I'M ASKING.

18           MR. NELSON:  AS YOU HEARD FROM DR. JEFFAY, IN A

19   CLIENT SERVER RELATIONSHIP --

20           THE COURT:  OKAY.

21           MR. NELSON:  -- IN A TYPICAL CLIENT SERVER

22   RELATIONSHIP, THERE WOULD BE SOME DEFINED INTERFACE.  HE

23   DESCRIBED A SET OF API'S, FOR EXAMPLE, WHICH STANDS FOR

24   APPLICATION PROGRAMMING INTERFACE --

25           THE COURT:  UM-HUM.
```

```
 1              MR. NELSON:  -- WHICH IS A WAY TO INVOKE ANOTHER

 2      PROGRAM TO GO AHEAD AND PERFORM SOME SERVICE OR ACTION FOR YOU.

 3              THERE IS NO SUCH THING IN WHAT'S BEEN POINTED TO IN THE

 4      ACCUSED PRODUCTS.  THE -- THE SHARED LIBRARY RUNS AS PART OF

 5      THE APPLICATION, AND JUST AS IN ANY OBJECT ORIENTED PROGRAM,

 6      THERE MAY BE METHOD CALLS TO OTHER OBJECTS IN THE PROGRAM.

 7              SO THE ONLY THING THAT I CAN THINK, YOUR HONOR, IS THIS

 8      IDEA OF GLUE CODE IS THE PROGRAMMING THAT'S ALREADY PART OF THE

 9      APPLICATION THAT WOULD MAKE SUCH METHOD CALLS INTO THESE

10      VARIOUS OBJECTS, WHICH, OF COURSE, COULD NOT BE THE REQUIRED

11      INTERFACE BECAUSE UNDER THAT, YOUR HONOR, THERE WOULD NEVER BE

12      A SITUATION IN AN APPLICATION WHERE THERE WASN'T -- YOU

13      COULDN'T PARSE IT INTO A SEPARATE CLIENT AND SERVER WHICH, OF

14      COURSE, AGAIN, REDUCES THE CONSTRUCTION TO NOTHING.

15              THE COURT:  OKAY.

16              MR. NELSON:  THOSE, THOSE ARE THE TWO PRIMARY.

17              THE COURT:  UM-HUM.

18              MR. NELSON:  THE ADDITIONAL -- WE HAVE OUR JMOL ON

19      WILLFUL INFRINGEMENT.  YOU KNOW, I THINK THERE'S -- WE HEARD --

20      AND PARTICULARLY UNDER THESE CONSTRUCTIONS, THAT IS EVEN

21      STRONGER.  REMEMBER, WILLFULNESS REQUIRES, YOU KNOW,

22      OBJECTIVELY RECKLESS BEHAVIOR.

23              AND I DON'T THINK, UNDER WHAT WE'VE HEARD HERE TODAY, THAT

24      IT COULD BE REASONABLY CONCLUDED THAT SAMSUNG PROCEEDED IN THE

25      FACE OF KNOWN INFRINGEMENT WITHOUT ANY REASONABLE INVALIDITY OR
```

```
 1        NON-INFRINGEMENT POSITIONS.

 2            THAT HAS ALREADY BEEN BRIEFED, YOUR HONOR, AND IF THERE'S

 3        ANY SPECIFIC QUESTIONS ABOUT THE TESTIMONY YOU HEARD TODAY, I'D

 4        BE HAPPY TO ADDRESS THOSE.

 5            THE COURT:  NO.  THAT'S OKAY.

 6            MR. NELSON:  THE -- AND THEN THE LAST THING HAS TO DO

 7         WITH OBVIOUSNESS ON THE SIDEKICK SYSTEM.

 8            THAT -- YOU KNOW, IN TERMS OF THE TESTIMONY, IN ADDITION

 9        TO WHAT WE'VE ALREADY PROVIDED ON THE TESTIMONY, THERE ARE TWO

10        THINGS.  ONE IS THIS DISTINCTION OF THE REQUIREMENT OF MULTIPLE

11        ACTIONS THAT'S BEING MADE IS INCONSISTENT WITH YOUR HONOR'S

12        CLAIM CONSTRUCTION WHICH REQUIRES JUST AT LEAST ONE.

13            I KNOW THAT THEY MADE THE POSITION THAT SINCE CLAIM 9, IN

14        ADDITION TO THE DEPENDENT CLAIM, REFERS TO LINKED ACTIONS, THAT

15        THAT MUST MEAN THAT IT'S PLURAL, MORE THAN ONE.

16            BUT THAT WAS THE SAME ARGUMENT MADE WITH RESPECT TO THE

17        ACTUAL ANTECEDENT BASIS FOR THAT TERM, WHICH IS LINKING ACTIONS

18        TO STRUCTURES.

19            THE COURT:  UM-HUM.

20            MR. NELSON:  AND SO IF YOU LOOK AT IT, IT SAYS THE

21         LINKED ACTIONS, THE CLAIM CONSTRUCTION SAYS AT LEAST ONE, SO

22         JUST BECAUSE IT SAYS THE LINKED ACTIONS IN CLAIM 9 CAN'T MAKE

23         IT PLURAL.

24            THE SECOND THING THAT YOU HEARD THAT IS ADDITIONAL WITH

25         RESPECT TO SIDEKICK IS THIS IDEA OF PATTERNS AND MULTIPLE --
```

```
 1       THE IDEA THAT SIDEKICK DID NOT DETECT MULTIPLE PATTERNS.

 2           BUT WE'VE SEEN, AND DR. MOWRY'S OWN DEFINITION IS THAT A

 3   PATTERN WOULD BE A SPECIFIC INSTANCE OF A STRING, A SET OF

 4   CHARACTERS, BECAUSE THAT'S ALL A COMPUTER CAN DO, YOUR HONOR,

 5   IS RECOGNIZE WHAT'S BEEN PROGRAMMED, AND SIDEKICK CAN RECOGNIZE

 6   EXACTLY THE EXAMPLES THAT DR. MOWRY HIMSELF DESCRIBED TO BE A

 7   SET OF PATTERNS.

 8           THEREFORE, THAT'S NOT A DISTINCTION WITH RESPECT TO

 9   SIDEKICK.

10               THE COURT:  SO WHAT ABOUT THE BACKGROUND SECTION OF

11   THE PATENT?  THE BACKGROUND OF THE INVENTION DESCRIBES THESE

12   DIFFERENT STRUCTURES AS PHONE NUMBERS, E-MAIL ADDRESSES, POST

13   OFFICE ADDRESSES, ZIP CODES AND LINKS.  IT DOESN'T SEEM TO

14   ENVISION THAT PHONE NUMBERS WOULD BE THE SOLE STRUCTURE THAT'S

15   IDENTIFIED.

16               MR. NELSON:  BUT THE POINT IS, YOUR HONOR --

17               THE COURT:  YES.

18               MR. NELSON:  -- IS THAT FROM THE STANDPOINT OF A

19   COMPUTER PROGRAMMER, WHICH YOU'VE HEARD THE TESTIMONY ON FROM

20   DR. JEFFAY, IS THAT THE COMPUTER DOESN'T RECOGNIZE -- THERE'S

21   NO DISTINCTION BETWEEN A PHONE NUMBER OR AN E-MAIL OR A

22   WEBSITE.

23               THE COURT:  UM-HUM.

24               MR. NELSON:  IT'S A SET OF -- BECAUSE YOU'RE

25   PROVIDING IT WITH A TEXT FILE, RIGHT?  SO THERE'S -- TEXT,
```

1      TYPICALLY, WOULD BE EXPRESSED IN ASCII CHARACTERS, BUT IT'S A

2      SET OF TEXT AND SO THE COMPUTER WOULD BE PROGRAMMED TO SAY I

3      RECOGNIZE THIS SET OF PATTERNS, OR EXCUSE ME, THIS SEQUENCE OF

4      CHARACTERS.

5              THE COURT:  UM-HUM.

6              MR. NELSON:  AND SO IF YOU DO, AS WAS DONE IN

7      SIDEKICK, TO RECOGNIZE, EVEN WITH RESPECT TO PHONE NUMBERS, I

8      CAN RECOGNIZE A SET OF CHARACTERS THAT BEGINS WITH PARENTHESES,

9      OR ONE THAT HAS DASHES OR DIFFERENT -- THOSE KINDS OF THINGS,

10     FROM THE PROGRAMMER'S STANDPOINT, THOSE ARE ALL THE SAME.

11     THOSE ARE JUST PUTTING IN DIFFERENT PATTERNS THAT THE COMPUTER

12     CAN RECOGNIZE.

13          SO, FOR EXAMPLE, THEN WITH A WEBSITE, YOU MAY LOOK FOR --

14     THE PROGRAM MAY LOOK FOR .COM OR .EDU OR SOMETHING LIKE THAT,

15     RECOGNIZE THOSE CHARACTERS, AND THEN LOOK A CERTAIN NUMBER OF

16     CHARACTERS BEFORE THERE'S SOME KIND OF DELIMITER, LIKE A SPACE

17     OR SOMETHING LIKE THAT, TO SEE WHAT'S IN FRONT OF IT, AND THEN

18     RECOGNIZE THAT AS A -- RECOGNIZE THAT AS AN E-MAIL, OR EXCUSE

19     ME, A WEBSITE.

20          SAME WITH AN E-MAIL ADDRESS.  THOSE ARE PROBABLY THE

21     EASIEST BECAUSE ALL YOU NEED TO LOOK FOR IS THE AT SIGN.

22              THE COURT:  UM-HUM.

23              MR. NELSON:  YOU KNOW, THOSE ARE ALWAYS IN AN E-MAIL

24     ADDRESS, AND THEN GO A CERTAIN NUMBER OF CHARACTERS EITHER WAY.

25              THE COURT:  UM-HUM.

```
1              MR. NELSON:  FROM THE COMPUTER STANDPOINT, THERE IS

2    NO DISTINCTION BETWEEN THOSE THINGS BECAUSE ALL YOU NEED TO DO

3    IS PROGRAM -- AS YOU SAW THERE IN SIDEKICK, YOU HAVE THE

4    DIFFERENT SETS AND IT'LL RECOGNIZE, WELL, IF IT STARTS WITH A

5    PARENTHESES, I'LL LOOK AT THIS.  IF IT DIDN'T, BUT IF IT'S

6    THREE DIGITS AND THEN A DASH, I'LL LOOK TO SEE WHAT IS LEFT.

7          THESE ARE INSTANCES OF DIFFERENT PATTERNS FROM THE

8    COMPUTER'S PERSPECTIVE AND, THEREFORE, DIFFERENT STRUCTURES

9    UNDER THE DEFINITION OF PATTERN, AND ALSO THE DEFINITION THAT

10   DR. MOWRY HIMSELF PROVIDED, YOUR HONOR.

11             THE COURT:  UM-HUM.

12             MR. NELSON:  IT IS TRUE THAT THERE ISN'T A -- THERE'S

13   NO E-MAIL, FOR EXAMPLE, RECOGNIZED, OR A WEBSITE.

14          BUT UNDER THE PATENT, THE -- AT LEAST IN TERMS OF THE

15   DEFINITION THAT DR. MOWRY PROVIDED AND THE DEFINITION THAT

16   WOULD -- THAT DR. JEFFAY AGREED WITH FROM THE STANDPOINT OF A

17   COMPUTER PROGRAMMER, THERE IS MULTIPLE STRUCTURES, DIFFERENT

18   TYPES OF PHONE NUMBERS BECAUSE THERE ARE DIFFERENT PATTERNS IN

19   THE CODE WITH RESPECT TO SIDEKICK, YOUR HONOR.

20             THE COURT:  UM-HUM.  LET ME ASK ANOTHER QUESTION, AND

21   THAT IS THE U.S. SUPREME COURT'S LAW IS SOMEWHAT DISCOURAGING

22   IN GRANTING RULE 50A MOTIONS BECAUSE I COULD GET IT WRONG, AND

23   THEN IF I DO, WE HAVE TO RE-DO THE WHOLE TRIAL, WHEREAS IF I

24   JUST GO AHEAD AND LET IT GO TO THE JURY, THEN WE CAN CORRECT IT

25   ON 50B OR THE COURT OF APPEAL CAN CORRECT ANY MISTAKE, ET
```

```
 1        CETERA.

 2             SO I FEEL LIKE THERE'S A -- YOU KNOW, THERE'S A VERY HIGH

 3        HURDLE TO TAKE THESE QUESTIONS AWAY FROM THE JURY BECAUSE WE

 4        CAN CORRECT IT LATER IF THERE IS A PROBLEM.

 5             DO YOU WANT TO RESPOND TO THAT?  LIKE WHY I SHOULD TAKE

 6        THESE ISSUES AWAY FROM THIS JURY NOW WHEN WE CAN FIX IT IF

 7        THERE REALLY, TRULY, IS NOT, YOU KNOW, LEGALLY SUFFICIENT

 8        EVIDENCE?

 9             MR. NELSON:  I'LL TELL YOU WHY, IN THIS PARTICULAR

10        CASE, THAT I THINK IT'S IMPORTANT.

11             ONE, PARTICULARLY WITH RESPECT TO THE ANALYZER SERVER AND

12        LINKING ACTIONS TO THE DETECTED STRUCTURES CONSTRUCTION THAT

13        YOUR HONOR JUST GAVE --

14             THE COURT:  UM-HUM.

15             MR. NELSON:  -- THERE IS NO BASIS TO PROCEED FORWARD

16        WITH AN INFRINGEMENT CLAIM.

17             THE IDEA THAT AN APPLICATION, A SINGLE APPLICATION IS BOTH

18        A CLIENT AND A SERVER THAT ARE REQUIRED TO BE SEPARATE IS,

19        FRANKLY, PREPOSTEROUS.

20             BUT WHAT WE HAVE IS A SITUATION -- REMEMBER, JUST ON THIS

21        ONE PATENT, THAT IS ROUGHLY HALF OF THEIR DAMAGES CLAIM.  THIS

22        IS A 2.1 -- I THINK IT'S AROUND $2.1 BILLION.

23             THE COURT:  BUT THE VERDICT FORM IS GOING TO BREAK IT

24        OUT BY PATENT, SO IF THERE IS A PROBLEM WITH THIS PATENT, THEN

25        IT'LL BE FAIRLY EASY TO DISSECT IT OUT OF ANY VERDICT IF THAT'S
```

3127

```
 1        WHAT THE JURY DOES.
 2                MR. NELSON:  I UNDERSTAND THAT, YOUR HONOR, AND I'M
 3        SYMPATHETIC TO THAT.
 4            BUT THIS IS ROUGHLY 900 MILLION OF THAT, SO NEARLY HALF.
 5                THE COURT:  UM-HUM.
 6                MR. NELSON:  AND IT -- AT LEAST IN MY EXPERIENCE,
 7        THERE IS ALWAYS SOME PROPENSITY -- OR AT LEAST THERE CAN BE
 8        SOME PROPENSITY TO COMPROMISE.
 9            SO TO SEND SOMETHING THAT YOUR HONOR MAY THINK SHOULD BE
10        GRANTED UNDER RULE 50A TO THE JURY TO SAY THAT "I COULD DO IT
11        LATER" HAS THE DANGER OF INFECTING THE REST OF THE DECISIONS
12        BECAUSE THE JURY COULD SAY, "WELL, I'VE ALREADY TAKEN THAT ONE
13        AWAY FROM THEM, AND THAT'S A BIG PART OF THEIR CLAIM, SO MAYBE
14        I'LL CUT THEM A BREAK ON ONE OF THESE OTHER ONES."
15            SO I DO THINK THAT IT IS PARTICULARLY IMPORTANT IN THIS
16        CASE, ALTHOUGH I DO UNDERSTAND WHAT YOUR HONOR IS SAYING WITH
17        THE ABILITY TO CORRECT THINGS LATER.
18            SO YOU ASKED ME, YOUR HONOR, AND I'M TRYING TO BE CANDID
19        WITH YOU.
20                THE COURT:  I APPRECIATE THAT.  I APPRECIATE THAT.
21            JUST THE THOUGHT OF HAVING TO DO THIS AGAIN WITH YOU ALL
22        IS NOT EXACTLY -- I MEAN, IF WE HAVE TO, WE HAVE TO.
23            (LAUGHTER.)
24                MR. NELSON:  YEAH.  I WON'T TAKE THAT PERSONALLY,
25        YOUR HONOR.
```

```
1              THE COURT:  NO, NO, NO.  YOU ALL ARE GREAT LAWYERS.

2     I'M NOT SAYING THAT.  BUT THESE ARE TOUGH.

3              MR. NELSON:  I UNDERSTAND THAT.

4              THE COURT:  THESE ARE DEFINITELY TOUGH.

5              MR. NELSON:  I UNDERSTAND.

6              THE COURT:  ALL RIGHT.  THANK YOU.  IS THERE ANYTHING

7     ELSE THAT YOU WANTED TO SAY?

8              MR. NELSON:  I THINK THAT'S ALL, YOUR HONOR, UNLESS

9     YOU HAVE QUESTIONS.

10             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11             MR. NELSON:  THANK YOU.

12             THE COURT:  LET ME HEAR FROM MS. KREVANS.

13        I ASSUME YOU ARE NOW DISAVOWING ANY DISTINCTION OF

14    SIDEKICK OR TAP TO DIAL BASED ON THE FACT THAT IT ONLY LINKS TO

15    ONE ACTION; RIGHT?  THAT'S ALL NO LONGER VALID AFTER THE

16    MOTOROLA DECISION?

17             MS. KREVANS:  ACTUALLY, YOUR HONOR, THAT IS -- THAT'S

18    NOT RIGHT.

19             THE COURT:  THAT'S NOT CORRECT?  OKAY.  WHY?

20             MS. KREVANS:  IN FACT, A VERY EASY WAY TO SEE THAT

21    IT'S NOT RIGHT IS JUST TO LOOK AT THE ANALYSIS OF JUDGE POSNER

22    IN THE MOTOROLA OPINION IN THE PORTION OF THE OPINION THAT

23    DISCUSSES THE ISSUE OF WHETHER LINKING ACTIONS TO THE DETECTED

24    STRUCTURES -- WHAT'S THE RIGHT CONSTRUCTION FOR THAT.

25             THE ULTIMATE CONSTRUCTION HE GIVES IS, "CREATES A
```

```
 1        SPECIFIED CONNECTION BETWEEN EACH DETECTED STRUCTURE AND AT

 2        LEAST ONE COMPUTER SUBROUTINE THAT CAUSES THE CPU TO FORM A

 3        SEQUENCE OF OPERATIONS ON THAT DETECTED STRUCTURE."

 4             SO WHAT THAT CONSTRUCTION CLEARLY SAYS IS FOR EACH -- FOR

 5        EACH SPECIFIC STRUCTURE, YOU ONLY NEED ONE LINKED ACTION.

 6             THE COURT:  UM-HUM.

 7             MS. KREVANS:  BUT YOU STILL NEED MULTIPLE ACTIONS

 8        UNDER THE CLAIM.  I THINK THE CLAIM MAKES THAT CLEAR.

 9             BUT ALSO JUDGE POSNER'S OPINION MAKES THAT CLEAR, AND I

10        THINK WHEN THE -- IF THE COURT TAKES A MOMENT AFTER WE FINISH

11        TODAY --

12             THE COURT:  SO YOU'RE SAYING FOR TAP TO DIAL, THAT

13        THERE ARE STILL MULTIPLE STRUCTURES AND THERE MAY BE SOME THAT

14        ARE LINKED TO ONLY ONE ACTION, BUT THEY'RE GOING TO BE OTHERS,

15        OTHER STRUCTURES THAT ARE LINKED TO MULTIPLE ACTIONS?

16             MS. KREVANS:  WE'RE NOT ACTUALLY ACCUSING TAP TO DIAL

17        FOR OTHER REASONS.

18             THE COURT:  I UNDERSTAND.

19             MS. KREVANS:  BUT WHAT JUDGE POSNER'S CONSTRUCTION,

20        AS ADOPTED BY THE FEDERAL CIRCUIT, MADE CLEAR IS FOR ANY

21        PARTICULAR STRUCTURE, THERE NEED NOT BE MORE THAN ONE ACTION.

22             THE COURT:  BUT THERE STILL NEEDS TO BE MULTIPLE

23        STRUCTURES.

24             MS. KREVANS:  MULTIPLE STRUCTURES, AND ALSO MULTIPLE

25        ACTIONS.  AND WHEN THE COURT HAS A MOMENT, WHEN YOU READ
```

```
1          JUDGE POSNER'S OPINION, YOU WILL SEE THAT --

2                    THE COURT:  BUT THERE DOESN'T HAVE TO BE MULTIPLE

3     ACTIONS PER STRUCTURE.  THERE JUST HAS TO BE ONE ACTION PER

4     STRUCTURE, BUT THERE HAVE TO BE MULTIPLE STRUCTURES?

5                    MS. KREVANS:  AND MULTIPLE STRUCTURES AS WELL.

6                    THE COURT:  BUT YOU CAN HAVE THAT WITH EACH STRUCTURE

7     HAVING ONE ACTION, YOU CAN STILL HAVE MULTIPLE ACTIONS, EVEN

8     THOUGH EACH STRUCTURE ONLY HAS ONE ACTION?

9                    MS. KREVANS:  THAT'S EXACTLY RIGHT.

10                   THE COURT:  OKAY.

11                   MS. KREVANS:  EXACTLY RIGHT.  THERE'S NO ISSUE WITH

12    RESPECT TO MULTIPLE ACTIONS ON INFRINGEMENT BECAUSE EVERYBODY

13    AGREES, IN FACT, ALL THESE ACCUSED PHONES PROVIDE MULTIPLE

14    ACTIONS.

15                   THE COURT:  PER STRUCTURE OR JUST THEY HAVE MULTIPLE

16    STRUCTURES WITH --

17                   MS. KREVANS:  BOTH.

18                   THE COURT:  -- AT LEAST ONE ACTION?

19                   MS. KREVANS:  BOTH, YOUR HONOR.  SO THIS IS NOT

20    REALLY AN ISSUE FOR INFRINGEMENT.

21          BUT FOR VALIDITY, IT IS ABSOLUTELY AN ISSUE.

22                   THE COURT:  UM-HUM.

23                   MS. KREVANS:  SIDEKICK ONLY DETECTS ONE STRUCTURE,

24    AND IT ONLY PROVIDES ONE ACTION, AND TO MEET THE CLAIM, TO

25    DISCLOSE EVERY ELEMENT OF THE CLAIM, IT WOULD HAVE TO BOTH
```

```
 1         DISCLOSE DETECTING MULTIPLE STRUCTURES, AND IT WOULD HAVE TO

 2         DISCLOSE MULTIPLE ACTIONS THAT COULD BE LINKED TO STRUCTURES.

 3              THE COURT:  OKAY.

 4              MS. KREVANS:  AND IT ONLY DISCLOSES ONE ACTION,

 5         THAT'S UNDISPUTED, DIALLING.

 6         AND I WOULD LIKE TO ADDRESS THIS POINT ABOUT WHETHER

 7         THE --

 8              THE COURT:  BUT THERE'S A DISPUTE ABOUT WHETHER IT'S

 9         MULTIPLE STRUCTURES, RIGHT?  IS A DOMESTIC PHONE CALL, PHONE

10         NUMBER ONE STRUCTURE, OR AN INTERNATIONAL PHONE NUMBER, ARE

11         THESE DIFFERENT STRUCTURES THAT ARE BEING IDENTIFIED?

12              MS. KREVANS:  I THINK, YOUR HONOR, WHEN YOU LOOK AT

13         THE RECORD, YOU'LL SEE THERE IS NO GENUINE DISPUTE, BECAUSE

14         ALTHOUGH DR. JEFFAY SAID, BOTH LAST WEEK, OR TWO WEEKS AGO --

15         WHENEVER IT WAS HE WAS HERE BEFORE -- AND THIS MORNING, HE

16         EXPRESSED THE CONCLUSION THAT IT DETECTED MULTIPLE STRUCTURES.

17              THE COURT:  UM-HUM.

18              MS. KREVANS:  HE CERTAINLY DIDN'T SAY IT COULD DO

19         MULTIPLE ACTIONS.  HE CONCEDED ONLY ONE ACTION.  SO THAT'S ONE

20         THING IT DIDN'T DISCLOSE.

21         AND HE NEVER, EVER GAVE ANY TESTIMONY EXPLAINING HOW THAT

22         WOULD HAVE BEEN OBVIOUS IN LIGHT OF SIDEKICK OR SOMETHING ELSE.

23              THE COURT:  UM-HUM.

24              MS. KREVANS:  BUT WITH RESPECT TO MULTIPLE DETECTED

25         STRUCTURES, HE SAID THAT AS A CONCLUSION.
```

1        HE NEVER TALKED ABOUT THE CODE.  THE FIRST PERSON WHO

2    TALKED ABOUT THE SIDEKICK CODE WAS DR. MOWRY, AND YOU'LL NOTICE

3    THAT DR. JEFFAY, TODAY ALSO, DID NOT GIVE ANY EXPLANATION OF

4    HOW THE CODE WAS DETECTED MULTIPLE STRUCTURES.

5        WHAT MR. NELSON KEEPS TRYING TO SAY IS THAT -- AND HE

6    TRIED THIS ON CROSS AND HE TRIED IT WITH YOUR HONOR -- IS THAT

7    DR. MOWRY SOMEHOW GAVE A DEFINITION OF PATTERN THAT MEANT THAT

8    PHONE NUMBERS THAT HAD PARENTHESES IN DIFFERENT PLACES WERE

9    DIFFERENT STRUCTURES.

10        THAT CLEARLY WASN'T THE CASE.  THE TESTIMONY HE SHOWED

11    DR. MOWRY WAS WHERE DR. MOWRY GAVE AN EXAMPLE OF A SIMPLE

12    PATTERN.

13        DR. MOWRY SHOWED THE JURY AND THE COURT WHAT THE ACTUAL

14    CODE IS IN SIDEKICK THAT DEFINES THE PATTERN.  THERE'S ONE

15    PATTERN THAT'S DEFINED, AND IT'S DEFINED WITH THREE SETS OF

16    PARAMETERS.  IF IT STARTS THIS WAY, IF IT HAS ANY OF THESE

17    THINGS IN THE MIDDLE, PULL OUT THE DIGITS.

18        IT DOESN'T CARE, AS HE SAID, WHERE THE PARENTHESES ARE.

19    IT DOESN'T MATTER IF THERE'S PARENTHESES AROUND THE AREA CODE.

20    IT DOESN'T MATTER WHERE HYPHENS ARE IN IT.  IT'S DEFINING ONE

21    PATTERN.

22        AND SO THERE IS ONLY ONE STRUCTURE THAT IS DETECTED BY

23    SIDEKICK, AND THERE -- EXCEPT FOR DR. JEFFAY EXPRESSING THE

24    CONCLUSION WITH US LOOKING AT A SLIDE WITH PHONE NUMBERS

25    WRITTEN WITH PARENTHESES IN DIFFERENT PLACES THAT HE SAYS THAT

```
1    WOULD BE DIFFERENT STRUCTURES, THE ISSUE IS, WHAT IS THE CODE

2    ACTUALLY DOING?  THE CODE HAS ONE PATTERN THAT DETECTS EVERY

3    DIFFERENT WAY THAT THOSE PHONE NUMBERS ARE WRITTEN.  THAT'S ONE

4    STRUCTURE.

5         SO I DON'T THINK THAT THERE'S ACTUALLY A GENUINE DISPUTE

6    AS TO WHETHER SIDEKICK DISCLOSES MULTIPLE STRUCTURES.  THERE'S

7    NO DISPUTE THAT IT DOESN'T DISCLOSE MULTIPLE ACTIONS, AND THE

8    CLAIM CLEARLY STILL REQUIRES MULTIPLE ACTIONS OVERALL.

9    SIDEKICK COULDN'T DO THAT --

10             THE COURT:  UM-HUM.

11             MS. KREVANS:  -- BECAUSE IT ONLY EVER DIALS.  THAT'S

12   WHAT EVERYBODY HAS SAID.

13             THE COURT:  WHY DON'T YOU ADDRESS THIS GLUE CODE.

14   WHAT IS THAT SUPPOSED TO MEAN?

15             MS. KREVANS:  I WANT TO TALK ABOUT THAT, AND I ALSO

16   WOULD LIKE TO TALK ABOUT THIS ANALYZER SERVER ISSUE THAT THE

17   COURT ASKED MR. NELSON ABOUT, AND I THINK ALSO WILLFULNESS, AND

18   OTHERWISE --

19             THE COURT:  YOUR POSITION IS THE SHARED LIBRARY IS

20   THE SERVER, THE APPLICATION IS THE CLIENT, THERE'S SEPARATE --

21             MS. KREVANS:  THAT'S RIGHT, YOUR HONOR -- AND I DON'T

22   THINK THERE'S ACTUALLY A DISPUTE THAT SHARED LIBRARIES ARE

23   SEPARATE FROM THE APPLICATION.

24             THE COURT:  I THINK THAT IS DISPUTED.

25             MS. KREVANS:  NO, NO.
```

```
 1              THE COURT:  THAT'S DISPUTED.

 2              MS. KREVANS:  THEY'RE SHARED LIBRARIES.  THEY'RE USED

 3     BY MANY DIFFERENT APPLICATIONS.

 4              THE COURT:  I UNDERSTAND.  BUT THEY'RE SAYING THE

 5     CODE FOR THE SHARED LIBRARY IS GOING INTO THE APPLICATION, SO

 6     THERE'S NO SEPARATION AND IT'S INCORPORATED.

 7              MS. KREVANS:  I THINK WHAT DR. MOWRY EXPLAINED --

 8              THE COURT:  YEAH.

 9              MS. KREVANS:  -- IS THAT WHEN ANY PARTICULAR

10     APPLICATION -- BECAUSE ALL THESE APPLICATIONS ON THE PHONES, WE

11     GOT A LITTLE ARGUMENT FROM DR. JEFFAY, BUT IN FACT, HE AGREES

12     THAT THERE ARE MANY APPLICATIONS, THEY'RE EACH SEPARATE FROM

13     ONE OTHER.

14          EACH OF THEM, WHEN IT NEEDS TO DO CERTAIN THINGS, IS GOING

15     TO CALL INTO, FOR SOME PURPOSES, A SHARED LIBRARY.  THERE ARE

16     MULTIPLE SHARED LIBRARIES AT ISSUE HERE, AND SO LINKIFY IS ONE,

17     CONTENT PROVIDER IS ONE.

18          AND WHEN THE APPLICATION NEEDS TO USE THAT CODE, IT

19     DOESN'T ALREADY HAVE IT.  IT GOES TO THE SHARED LIBRARY AND IT

20     CAUSES THAT SHARED LIBRARY CODE TO RUN.

21          AND AS DR. MOWRY SAID, EVERY TIME THE APPLICATION NEEDS TO

22     USE THAT CODE AGAIN, IT GOES BACK TO THE SHARED LIBRARY AND

23     CAUSES IT TO RUN AGAIN.

24          THE SHARED LIBRARIES ARE NOT PART OF THE APPLICATION.

25     THEY ARE SEPARATE THINGS THAT ARE USED BY THE APPLICATIONS.
```

```
 1            AND SO THERE IS NO ISSUE ABOUT WHETHER THEY CAN QUALIFY

 2    UNDER THE CONSTRUCTION.  THEY ARE SEPARATE, AND THE

 3    CONSTRUCTION DOESN'T SAY ANYTHING THAT EXCLUDES USING A SHARED

 4    LIBRARY AS THE SERVER ROUTINE THAT IS SATISFYING THAT PART OF

 5    THE ANALYZER SERVER CONSTRUCTION.

 6            THEY'RE JUST TRYING TO READ IN --

 7                THE COURT:  I'M SORRY TO INTERRUPT YOU.  I THINK THAT

 8    THERE IS SUFFICIENT EVIDENCE ON THIS QUESTION TO GO BOTH WAYS.

 9    I DON'T THINK THE FEDERAL CIRCUIT'S OPINION ON FRIDAY CHANGED

10    THAT.

11            I'M NOT GOING TO GRANT A JMOL ON ANALYZER SERVER.  I THINK

12    THAT'S AN ISSUE FOR THE JURY TO DECIDE, WHETHER THE SHARED

13    LIBRARY IS THE ANALYZER SERVER IN THIS CONTEXT, WHETHER IT'S

14    SEPARATE FROM THE APPLICATION OR NOT.  I REALLY THINK THESE ARE

15    JURY ISSUES.

16            SO I'D LIKE TO GO TO -- TO HEAR YOUR RESPONSE ON SPECIFIED

17    CONNECTIONS FOR THE LINKING ACTIONS TO DETECTED STRUCTURES.

18    THAT WOULD BE MORE USEFUL.

19                MS. KREVANS:  OKAY.  ON SPECIFIED CONNECTION, AGAIN,

20    I DON'T THINK WHAT MR. NELSON ARGUED TO YOU IS REALLY

21    CONSISTENT WITH THE EVIDENCE THAT'S COME INTO THE RECORD.

22            SO THE EVIDENCE THAT'S COME INTO THE RECORD -- AND I

23    THINK, AFTERWARDS WHEN THE COURT IS LOOKING AT THIS, IT MIGHT

24    HELP YOU TO LOOK AT SOME OF THE SLIDES IN CONNECTION WITH

25    PROFESSOR MOWRY'S TESTIMONY.
```

1        AND, FOR EXAMPLE, 88.22 IS A SLIDE THAT I THINK IS HELPFUL

2   BECAUSE IT PULLS TOGETHER THESE VARIOUS PIECES OF CODE TOGETHER

3   FOR THE COURT.

4        WHAT THE CLAIM SAYS IS THE ANALYZER SERVER HAS TO DETECT

5   STRUCTURES AND LINK ACTIONS TO THE DETECTED STRUCTURES.

6        THE LINKING ACTIONS CONSTRUCTION SAYS LINKING ACTIONS TO

7   DETECTED STRUCTURES MEANS CREATING A SPECIFIED CONNECTION

8   BETWEEN EACH DETECTED STRUCTURE AND AT LEAST ONE COMPUTER

9   SUBROUTINE THAT CAUSES THE CPU TO PERFORM A SEQUENCE OF

10  OPERATIONS ON THAT DETECTED STRUCTURE.

11       PROFESSOR MOWRY, THIS MORNING, SHOWED THE JURY THE CODE

12  THAT DOES THAT, AND WHEN A PERSON -- IF YOU LOOK AT SLIDE

13  88.22 -- WHEN A PERSON PICKS A PARTICULAR ACTION THAT THEY WANT

14  THE PHONE ULTIMATELY TO PERFORM, THE INTENT OBJECT THAT HAS

15  INFORMATION IN IT SPECIFIC TO THE SELECTED ACTION IS GOING TO

16  BE PASSED TO START ACTIVITY.

17       START ACTIVITY IS A SHELL CODE THAT CAN DO MANY DIFFERENT

18  THINGS DEPENDING ON WHAT INTENT OBJECT IS PASSED TO IT, AND IF

19  THE INTENT OBJECT MATCHES A USER WHO HAS PICKED I'D LIKE TO

20  CALL SOMEONE, IT'S GOING TO LAUNCH THE DIALER WITH THE DETECTED

21  PHONE NUMBER, AND THAT'S ALL ILLUSTRATED IN THIS SLIDE AND

22  DISCUSSED IN PROFESSOR MOWRY'S TESTIMONY.

23       IT'S THE EXACT SAME TESTIMONY HE TALKED ABOUT WHEN HE WAS

24  HERE TWO WEEKS AGO, SAME CODE.  SO THIS IS DESCRIBED IN MORE

25  DETAIL A COUPLE OF WEEKS AGO.

1          BUT THE SPECIFIED CONNECTION IS DONE BY THE INTENT OBJECT

2     BEING PASSED TO START ACTIVITY.

3          START ACTIVITY TAKES THAT INFORMATION AND IT LAUNCHES THE

4     DIALER IF THAT'S WHAT THE PERSON PICKED.

5          THE PERSON, YES, STILL HAS TO SAY, YES, I DEFINITELY WANT

6     TO MAKE A CALL.  IF THE PERSON HAS PICKED E-MAIL, IT WILL OPEN

7     UP THE E-MAIL APPLICATION AND THE PERSON IS STILL GOING TO HAVE

8     TO TYPE THE E-MAIL.

9          BUT IT ABSOLUTELY CAUSES THE CPU TO PERFORM A SEQUENCE OF

10    OPERATIONS ON THE DETECTED STRUCTURE, WHETHER IT'S PHONE NUMBER

11    INFORMATION OR WHETHER IT'S THE E-MAIL.

12         THE FACT THAT A PERSON HAS TO STILL DO SOME MORE THINGS,

13    FOR EXAMPLE, BEFORE THE E-MAIL GETS SENT, OF COURSE THEY HAVE

14    TO TYPE THEIR E-MAIL AND HIT THE SEND BUTTON.

15         BUT WHAT THE CONSTRUCTION REQUIRES IS SIMPLY THAT THERE BE

16    A SPECIFIED CONNECTION BETWEEN THE DETECTED STRUCTURE, THAT

17    HAPPENS BECAUSE THE INTENT OBJECT WITH THE INFORMATION IS

18    PASSED TO START ACTIVITY, START ACTIVITY RUNS WITH THAT

19    INFORMATION, IT KICKS OFF THE ACTION THE PERSON WANTS, AND THAT

20    IS CAUSING A COMPUTER SUBROUTINE TO CAUSE THE CPU TO PERFORM A

21    SEQUENCE OF OPERATIONS.

22         THE CONSTRUCTION ACTUALLY MAKES CLEARER, I THINK YOUR

23    HONOR, WHAT PROFESSOR MOWRY SAID WHEN HE TESTIFIED LAST TIME

24    AND THEY RAISED THIS SAME KIND OF ARGUMENT, ALTHOUGH IN A MORE

25    KIND OF VAGUE WAY.

1          THERE IS NOTHING IN THE CONSTRUCTION THAT SAYS THE THING

2    THAT HAPPENS BASED ON THE SPECIFIED CONNECTION HAS TO BE EVERY

3    SINGLE THING TO ULTIMATELY CAUSE AN E-MAIL TO BE SENT, FOR

4    EXAMPLE, IF THE PERSON PICKED SEND A MESSAGE.

5          IT'S QUITE CLEAR FROM THE CONSTRUCTION THAT THAT DOESN'T

6    HAPPEN.  IT JUST MEANS THERE HAS TO BE A CONNECTION BETWEEN THE

7    DETECTED STRUCTURE AND AT LEAST ONE COMPUTER SUBROUTINE THAT

8    PERFORMS A SEQUENCE OF OPERATIONS ON THAT DETECTED STRUCTURE,

9    AND THAT ABSOLUTELY HAPPENS WITH THE INTENT OBJECT BEING PASSED

10   TO START ACTIVITY AND START ACTIVITY RUNNING.

11         SO I THINK THIS IS AN INSTANCE WHERE ACTUALLY THIS

12   CONSTRUCTION MAKES OUR POSITION AND WHY OUR POSITION IS RIGHT

13   CLEARER THAN IT WAS BEFORE, BECAUSE IT'S QUITE CLEAR THAT THE

14   ARGUMENT THAT THE CODE THAT GETS LAUNCHED HAS TO DO EVERY

15   SINGLE THING TO CARRY OUT A PHONE CALL OR EVERY SINGLE THING TO

16   MAKE AN E-MAIL ACTUALLY GO, WHICH IS THE ARGUMENT THAT THEY

17   PREVIOUSLY MADE IS JUST WRONG BECAUSE THE CONSTRUCTION DOESN'T

18   REQUIRE THAT.

19         SO I THINK WITH RESPECT TO THIS LINKING ACTIONS, THIS

20   CONSTRUCTION ACTUALLY MAKES APPLE'S POSITION STRONGER AND IT

21   MAKES IT CLEARER THAT DR. MOWRY'S TESTIMONY SHOWS THAT THE

22   ACCUSED DEVICES MEET THE CLAIM.

23              THE COURT:  SO WHAT IS THIS GLUE CODE I KEEP ASKING

24    ABOUT?

25              MS. KREVANS:  SO GLUE CODE IS -- AS DR. MOWRY SAID,

1          IT IS THE -- YOU HAVE TWO THINGS HERE THAT ARE, IN FACT,

2     SEPARATE.  YOU HAVE -- ACTUALLY, YOU HAVE MANY THINGS ON EACH

3     SIDE.  YOU HAVE MANY, MANY APPLICATIONS ON THE PHONE AND YOU

4     HAVE A SERIES OF SHARED LIBRARIES THAT EACH OF THEM IS ABLE TO

5     ACCESS AND RUN CODE OUT OF WHEN THEY NEED THEM.

6          AND IN ORDER TO HAVE THE APPLICATION BE ABLE TO GO AND

7     TALK TO THE SHARED LIBRARY AND SAY DO WHAT I WANT NOW, YOU HAVE

8     THIS GLUE CODE, AND THE GLUE CODE IS THE CODE THAT DR. MOWRY

9     POINTED TO TODAY AND IT'S THE CODE THAT LETS THE APPLICATION GO

10    TO THE SHARED LIBRARY AND SAY, I NEED YOU TO DO THIS RIGHT NOW.

11    THAT'S WHAT THE GLUE CODE DOES.

12          I DON'T KNOW WHERE IN THE RECORD MR. NELSON IS RELYING

13    WHEN HE SAID GLUE CODE CAN'T BE THE THING THAT INTERFACES

14    BETWEEN TWO APPLICATIONS, ONLY AN API CAN.  THERE IS NO

15    EVIDENCE ANYWHERE THAT SAYS AN APPLICATION CAN'T TALK TO A

16    SHARED LIBRARY AND INTERACT WITH IT EXCEPT THROUGH AN API.

17          I THINK WHEN YOU LOOK AT DR. JEFFAY'S TESTIMONY ON THAT

18    POINT, YOU'LL SEE THAT HE JUST TALKS ABOUT WHAT API'S DO AND

19    THE FACT THAT THEY ARE A TYPICAL WAY TO HAVE ONE PROGRAM

20    INTERFACE WITH ANOTHER.

21          BUT THAT ISN'T REALLY THE POINT HERE.

22          THE POINT HERE IS, DOES THE SHARED LIBRARY EXIST SEPARATE

23    FROM THE APPLICATION?

24          AND THE OTHER THING I THINK THAT SAMSUNG IS RELYING ON

25    HERE IS THE FACT THAT THE SHARED LIBRARY CODE ISN'T ACTUALLY

```
 1        GOING TO RUN UNTIL THE APPLICATION COMES AND TELLS IT TO.

 2     THAT'S ABSOLUTELY TRUE.

 3             BUT THAT DOESN'T DISQUALIFY IT UNDER THE CONSTRUCTION FROM

 4     BEING THE SERVER ROUTINE.  IT JUST MEANS IT DOESN'T RUN UNTIL

 5     THE APPLICATION TELLS IT TO.

 6             THE COURT:  LET ME ASK, WHAT WERE YOU GOING TO MOVE

 7      FOR JUDGMENT AS A MATTER OF LAW ON?

 8             MS. KREVANS:  WELL, I THINK YOUR HONOR HAS GIVEN ME

 9      THE GUIDANCE, THAT I SHOULD SIMPLY RELY ON OUR PAPERS AND SAY

10      THAT TODAY DID NOT CHANGE ANYTHING WITH RESPECT TO OUR JMOL OF

11      INFRINGEMENT.

12             THE COURT:  OKAY.

13             MS. KREVANS:  I WOULD SAY THAT I THINK WE ARE

14      ENTITLED, ON THE '647 PATENT, TO JMOL OF VALIDITY BECAUSE THE

15      ONLY REFERENCE RELIED UPON WAS SIDEKICK.

16        SIDEKICK HAS TWO THINGS MISSING FROM IT THAT WERE GIVEN

17      REALLY A WAVE OF THE HAND BY DR. JEFFAY, THAT IS, THE POP-UP

18      MENU AND THE SPECIFIED CONNECTION.

19             THE COURT:  UM-HUM.

20             MS. KREVANS:  IT HAS TWO MORE THINGS MISSING FROM IT

21      THAT HE DIDN'T EVEN ACKNOWLEDGE, MULTIPLE STRUCTURES AND

22      MULTIPLE ACTIONS.

23        THEY HAVE NO ARGUMENT THAT IT DISCLOSES MULTIPLE ACTIONS.

24      THEY DIDN'T ADDRESS IT BECAUSE THERE WAS NOTHING HE COULD HAVE

25      SAID.
```

```
1         I SUPPOSE THEY'RE GOING TO TRY TO ARGUE TO YOUR HONOR THAT

2    THE MOTOROLA OPINION SOMEHOW MEANS THAT ONLY ONE ACTION OVERALL

3    IS REQUIRED.

4         BUT CLEARLY WHAT THE OPINION SAYS IS ONLY ONE ACTION PER

5    STRUCTURE IS REQUIRED AND, IN FACT, IN REASONING TO THAT

6    OUTCOME, JUDGE POSNER WAS QUITE CLEAR THAT IN READING THE

7    PATENT, IT REQUIRES -- IT TALKS ABOUT MULTIPLE ACTIONS.

8    FIGURE 4 SHOWS MULTIPLE ACTIONS.

9         BUT IT DOESN'T SAY THERE HAS TO BE MULTIPLE ACTIONS FOR

10   EVERY INDIVIDUAL STRUCTURE AND, THEREFORE, HE FOUND THAT FOR

11   EACH STRUCTURE, YOU ONLY NEEDED TO HAVE ONE ACTION.

12        IT'S VERY CLEAR THAT, OVERALL IN THE PATENT, YOU NEED

13   MULTIPLE ACTIONS.

14        AND JUDGE POSNER'S OPINION, IN ESSENCE, CONFIRMS THAT.

15        SO THOSE TWO THINGS ARE NOT IN SIDEKICK.  THERE WAS NO

16   TESTIMONY, NO EVIDENCE AT ALL FROM SAMSUNG FOR HOW TO FILL

17   THOSE TWO GAPS, AND ON THAT BASIS, AS A MATTER OF LAW, WE THINK

18   WE ARE ENTITLED TO JUDGMENT THAT THE '647, CLAIM 9 IS VALID.

19             THE COURT:  WELL, THERE IS THIS DISPUTE ABOUT HOW

20    MANY STRUCTURES ARE IDENTIFIED BASED ON THE DOMESTIC VERSUS

21    INTERNATIONAL PHONE NUMBER DISPUTE, AND IF SAMSUNG IS CORRECT

22    THAT A DOMESTIC PHONE NUMBER COULD BE ONE STRUCTURE AND AN

23    INTERNATIONAL PHONE NUMBER COULD BE ANOTHER STRUCTURE AND

24    THERE'S A DIALING ACTION AS TO EACH, THEN IT WOULD SATISFY

25    THOSE TWO ELEMENTS.
```

```
1              I THINK ON STRUCTURE, YOU MAY HAVE A BETTER ARGUMENT.

2              BUT I THINK THERE'S ENOUGH TO GO TO A JURY.

3                  MS. KREVANS:  WE RESPECTFULLY DISAGREE, YOUR HONOR,

4      BUT I THINK YOU TAKE OUR POINT.  I -- THEY -- EXCEPT FOR THE

5      CONCLUSION, NOT BASED ON THE CODE IN SIDEKICK, THERE IS NO

6      EVIDENCE THAT THERE ARE MULTIPLE STRUCTURES, AND THERE'S

7      CLEARLY EVIDENCE THERE'S ONLY ONE ACTION.

8              AND I DON'T THINK THEY HAVE ANY ANSWER TO THE ONE ACTION

9      POINT, WHICH IS WHY THEY DID NOT ADDRESS IT WITH THEIR WITNESS,

10     AND THEREFORE, THERE'S NOTHING IN THE RECORD THAT COULD FILL

11     THAT GAP.

12                 THE COURT:  LET ME ASK, THOUGH, WITH TAP TO DIAL, ARE

13     YOU NOW -- I THINK YOU HAVE A STRONGER ARGUMENT ON STRUCTURE

14     FOR THE SIDEKICK.

15             BUT ON TAP TO DIAL, DO YOU NOW CONCEDE, BECAUSE THE ONLY

16     TESTIMONY FROM DR. MOWRY WAS THAT IT WAS ONE ACTION.

17                 MS. KREVANS:  YOUR HONOR, WE'VE NEVER ACTUALLY

18     ACCUSED PURE TAP TO DIAL.

19                 THE COURT:  I KNOW YOU HAVEN'T ACCUSED IT.  BUT

20     THEY'RE SAYING IT'S A NON-INFRINGING ALTERNATIVE.

21                 MS. KREVANS:  ACTUALLY, IT'S NOT A NON-INFRINGING

22     ALTERNATIVE THEY'VE EVER OFFERED IN THE CASE.

23             THE NON-INFRINGING ALTERNATIVE THEY'VE OFFERED FOR THIS

24     PATENT WAS A PULL DOWN MENU INSTEAD OF A POP-UP MENU.

25             AND TAP TO DIAL CAN'T SATISFY THE CLAIM OVERALL, AND IT
```

1      CERTAINLY DOESN'T PROVIDE THE BENEFITS OF THE PATENT THAT

2      CAN --

3              THE COURT:  RIGHT, I UNDERSTAND THAT TESTIMONY CAME

4      IN.  THAT TESTIMONY CAME IN FROM DR. MOWRY.

5          OKAY.  WELL, I MEAN, I --

6          MS. KREVANS:  I DON'T WANT TO TAKE MORE OF THE

7      COURT'S TIME UNLESS THERE'S SOMETHING THE COURT -- IF THE COURT

8      IS CONSIDERING ON ANYTHING, I WOULD LIKE A CHANCE TO ADDRESS

9      IT.

10             THE COURT:  NO.  I AM GOING TO DENY SAMSUNG'S JMOL

11     MOTION AS TO NON-INFRINGEMENT, WILLFULNESS, AND OBVIOUSNESS;

12     AND I'M GOING TO DENY APPLE'S JMOL MOTION AS TO INFRINGEMENT

13     AND VALIDITY.

14         I DO THINK THAT THERE IS LEGALLY SUFFICIENT EVIDENTIARY

15     BASIS FOR A REASONABLE JURY TO FIND FOR EITHER PARTY ON THESE

16     ISSUES, AND I BELIEVE THIS SHOULD GO TO THE JURY.

17         I ALSO WOULD --

18             MS. KREVANS:  I THINK TECHNICALLY THEY MADE A MOTION

19     ON WILLFULNESS, AND UNLESS THE COURT IS GOING TO DENY THAT NOW,

20     I'D ALSO LIKE TO ADDRESS THAT.

21             THE COURT:  ON WILLFULNESS, YES, THEY DID, ON

22     WILLFULNESS AND OBVIOUSNESS.

23             MS. KREVANS:  I THINK YOU'VE ADDRESSED OBVIOUSNESS,

24     BECAUSE THAT'S VALIDITY.

25         ON WILLFULNESS, YOUR HONOR, THIS IS -- THIS PATENT IS ONE

1    THAT THEY WERE TOLD ABOUT IN THE AUGUST 2010 MEETING.  IT WAS

2    SPECIFICALLY IDENTIFIED.  THEY KEPT ON INFRINGING.

3         NOT ONLY DID THEY KEEP ON INFRINGING, BUT THEY KNEW THAT

4    THIS WAS A FUNCTION THAT HAD BEEN INVENTED BY APPLE.  YOU SAW A

5    SAMSUNG DOCUMENT WHERE THEY PASTED AN APPLE INVENTOR ARTICLE

6    INTO A SAMSUNG DOCUMENT PLANNING THINGS TO PUT IN THEIR

7    SOFTWARE.

8         AND YOU ALSO HEARD -- I KNOW IT WAS A COUPLE WEEKS AGO,

9    THIS HAS BEEN A LONG TRIAL -- BUT THERE WAS A POINT WHERE THE

10   ANDROID CODE DEVELOPERS DECIDED, FOR ONE OF THE APPLICATIONS IN

11   THE ANDROID OPEN SOURCE VERSION OF THE CODE, TO CHANGE THE CODE

12   SO THAT IT NO LONGER HAD MULTIPLE ACTIONS.

13        AND WHEN THAT HAPPENED, SAMSUNG REWROTE THE CODE ON THEIR

14   OWN PHONES TO PUT THE MULTIPLE ACTIONS BACK IN.  THEY REALLY

15   WANTED THIS, AND THEY DIDN'T CARE IF THEY'D BEEN ACCUSED OF

16   INFRINGING.

17        WE THINK THAT THERE IS AMPLE -- AND WE HAVE DOCUMENTS

18   WHERE THEY'RE LOOKING SPECIFICALLY AT IPHONE AND SAYING THIS IS

19   A GREAT FEATURE.

20        SO WE THINK THERE IS NO QUESTION THAT THERE IS EVIDENCE

21   THAT SHOULD GO TO THE JURY ON THIS.

22             THE COURT:  ALL RIGHT.  WELL, BOTH PARTIES' MOTIONS

23    ARE DENIED.  I DO FIND THAT THERE IS A LEGALLY SUFFICIENT

24    EVIDENTIARY BASIS FOR A REASONABLE JURY TO FIND FOR BOTH SIDES.

25    THIS SHOULD GO TO THE JURY.

3145

```
1              I'D ALSO JUST LIKE TO CITE UNITHERM FOOD SYSTEMS VERSUS

2    SWIFT-ECKRICH, A SUPREME COURT CASE FROM 2006, THAT SAYS THAT

3    THE GRANTING OF A RULE 50A MOTION IS REALLY AT THE DISCRETION

4    OF THE DISTRICT COURT, AND BECAUSE THE LANGUAGE OF THE STATUTE

5    IS MAY GRANT A MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST A

6    PARTY, AND THERE'S CLEARLY AN ENCOURAGEMENT FROM THE SUPREME

7    COURT TO SUBMIT THE CASE TO THE JURY RATHER THAN GRANTING SUCH

8    MOTIONS, AND THAT'S AT 546 U.S. 394.  IT LOOKS LIKE IT'S AROUND

9    402, 402, 403.

10             BECAUSE -- AS I SAID, IF I MAKE AN ERROR, IT'S BETTER THAT

11   THIS HAVE GONE TO THE JURY AND IT CAN BE CORRECTED ON A RULE

12   50B MOTION ON APPEAL.

13             BUT I DON'T THINK THAT THE CONSTRUCTIONS THAT WERE GIVEN

14   TO THE JURY TODAY ELIMINATE A CLAIM OR A DEFENSE OF EITHER

15   PARTY ON THIS PATENT.

16             OKAY?  SO THAT'S MY RULING.

17             I WILL SEE YOU BACK -- I'M SORRY.  WE'RE GOING TO HAVE A

18   TRUNCATED LUNCH.

19                 MS. KREVANS:  WE'LL EAT FAST.

20                 THE COURT:  LET'S SAY 1:10.

21                 MR. QUINN:  COULD I MAKE ONE OTHER REQUEST, YOUR

22   HONOR, IF I MAY?

23                 THE COURT:  WHAT'S THAT?

24                 MR. QUINN:  IT RELATES TO THE LENGTH OF THE CLOSINGS.

25             I WONDER IF THE COURT WOULD CONSIDER GIVING US 15 MINUTES
```

```
1     EACH ADDITIONAL ON THE CLOSING.  THIS IS A CASE WITH SEVEN

2     PATENTS.  IT IS A $2 BILLION PLUS CLAIM THAT WE'RE OPPOSING.

3            WE'RE FINDING IT CHALLENGING, AND WE PROMISE TO KEEP THE

4     JURY'S INTEREST, SO WE WON'T WASTE THE TIME.

5            WE'VE RAISED THIS WITH APPLE.  THEY DO OPPOSE IT.

6            BUT, YOU KNOW, WE'D APPRECIATE THE COURT RECONSIDERING

7     THAT.

8              MR. MCELHINNY:  IT'S FOUR HOURS, YOUR HONOR.  THIS IS

9     CRUEL AND UNUSUAL PUNISHMENT FOR THIS JURY.  WE PAY THE PENALTY

10    FOR THAT BECAUSE WE HAVE THE REBUTTAL ARGUMENT.

11           THIS TIME HAS BEEN AGREED FOREVER.  IT'S THE WAY WE DID

12    THE LAST CASE.  THE ARGUMENTS HAVE BEEN PREPARED.  THE GRAPHICS

13    HAVE BEEN PREPARED.  WE JUST THINK IT'S TOO LONG.

14             THE COURT:  WELL, THE REQUEST IS DENIED.

15           OKAY.  WHY DON'T I SEE EVERYONE BACK AT 1:10?  ALL RIGHT?

16    THANK YOU.

17           AND YOU'LL BRING THE COPIES OF THE NEW JURY INSTRUCTIONS?

18    WE FILED A NEW ONE THAT HAD THE CORRECTION ON INSTRUCTION

19    NUMBER 29.

20             MS. KREVANS:  YES.  I'M TOLD THEY'RE BEING BROUGHT.

21             THE CLERK:  I HAVE THEM.

22             THE COURT:  OH, WE HAVE THEM.  THANK YOU.

23        (LUNCH RECESS WAS TAKEN FROM 12:17 P.M. TO 1:14 P.M.)

24

25
```

```
1                      AFTERNOON SESSION

2          (JURY IN AT 1:14 P.M.)

3              THE COURT:  WELCOME BACK.  GOOD AFTERNOON.  PLEASE

4      TAKE A SEAT.

5              EACH OF YOU NOW HAS A COPY OF THE FINAL JURY INSTRUCTIONS

6      AND I'M REQUIRED TO READ THEM TO YOU, EVEN THOUGH YOU DO HAVE A

7      HARD COPY.

8              INSTRUCTION NUMBER 1.

9              MEMBERS OF THE JURY, NOW THAT YOU HAVE HEARD ALL OF THE

10     EVIDENCE, IT IS MY DUTY TO INSTRUCT YOU AS TO THE LAW OF THE

11     CASE.

12             EACH OF YOU HAS RECEIVED A COPY OF THESE INSTRUCTIONS THAT

13     YOU MAY TAKE WITH YOU TO THE JURY ROOM TO CONSULT DURING YOUR

14     DELIBERATIONS.

15             YOU MUST NOT INFER FROM THESE INSTRUCTIONS OR FROM

16     ANYTHING I MAY SAY OR DO AS INDICATING THAT I HAVE AN OPINION

17     REGARDING THE EVIDENCE OR WHAT YOUR VERDICT SHOULD BE.

18             IT IS YOUR DUTY TO FIND THE FACTS FROM ALL THE EVIDENCE IN

19     THE CASE.  TO THOSE FACTS YOU WILL APPLY THE LAW AS I GIVE IT

20     TO YOU.  YOU MUST FOLLOW THE LAW AS I GIVE IT TO YOU, WHETHER

21     YOU AGREE WITH IT OR NOT.

22             DO NOT LET PERSONAL LIKES OR DISLIKES, OPINIONS,

23     PREJUDICES, BIAS OR SYMPATHY INFLUENCE YOUR DECISION.

24             BIAS INCLUDES BIAS FOR OR AGAINST ANY PARTY OR ANY WITNESS

25     BASED UPON NATIONALITY, RACE OR ETHNICITY.  THAT MEANS THAT YOU
```

```
 1    MUST DECIDE THE CASE SOLELY ON THE EVIDENCE BEFORE YOU.  YOU

 2    WILL RECALL THAT YOU TOOK AN OATH TO DO SO.

 3         IN FOLLOWING MY INSTRUCTIONS, YOU MUST FOLLOW ALL OF THEM

 4    AND NOT SINGLE OUT SOME AND IGNORE OTHERS; THEY ARE ALL

 5    IMPORTANT.

 6         NUMBER 2.

 7         WHEN A PARTY HAS THE BURDEN OF PROOF ON ANY CLAIM OR

 8    DEFENSE BY A PREPONDERANCE OF THE EVIDENCE, IT MEANS YOU MUST

 9    BE PERSUADED BY THE EVIDENCE THAT THE CLAIM OR DEFENSE IS MORE

10    PROBABLY TRUE THAN NOT TRUE.

11         YOU SHOULD BASE YOUR DECISION ON ALL OF THE EVIDENCE,

12    REGARDLESS OF WHICH PARTY PRESENTED IT.

13         NUMBER 3.

14         WHEN A PARTY HAS THE BURDEN OF PROVING ANY CLAIM OR

15    DEFENSE BY CLEAR AND CONVINCING EVIDENCE, IT MEANS YOU MUST BE

16    PERSUADED BY THE EVIDENCE THAT THE CLAIM OR DEFENSE IS HIGHLY

17    PROBABLE.  THIS IS A HIGHER STANDARD OF PROOF THAN PROOF BY A

18    PREPONDERANCE OF THE EVIDENCE.

19         YOU SHOULD BASE YOUR DECISION ON ALL OF THE EVIDENCE,

20    REGARDLESS OF WHICH PARTY PRESENTED IT.

21         NUMBER 4.

22         YOU SHOULD DECIDE THE CASE AS TO EACH PARTY SEPARATELY.

23    UNLESS OTHERWISE STATED, THE INSTRUCTIONS APPLY TO ALL PARTIES.

24         NUMBER 5.

25         THE TRIAL IS NOW OVER.  THE EVIDENCE YOU ARE TO CONSIDER
```

3149

```
 1        IN DECIDING WHAT THE FACTS ARE CONSISTS OF:

 2             1.   THE SWORN TESTIMONY OF ANY WITNESS;

 3             2.   THE EXHIBITS WHICH ARE RECEIVED INTO EVIDENCE; AND,

 4             3.   ANY FACTS TO WHICH THE LAWYERS HAVE AGREED.

 5             NUMBER 6.

 6        IN REACHING YOUR VERDICT, YOU MAY CONSIDER ONLY THE

 7   TESTIMONY AND EXHIBITS THAT WERE RECEIVED INTO EVIDENCE.

 8   CERTAIN THINGS ARE NOT EVIDENCE, AND YOU MAY NOT CONSIDER THEM

 9   IN DECIDING WHAT THE FACTS ARE.  I WILL LIST THEM FOR YOU:

10        NUMBER 1.  ARGUMENTS AND STATEMENTS BY LAWYERS ARE NOT

11   EVIDENCE.  THE LAWYERS ARE NOT WITNESSES.  WHAT THEY SAID IN

12   THEIR OPENING STATEMENTS AND THROUGHOUT THE TRIAL, AND WHAT

13   THEY WILL SAY IN THEIR CLOSING ARGUMENTS OR AT OTHER TIMES ARE

14   ALL INTENDED TO HELP YOU INTERPRET THE EVIDENCE.  BUT THESE

15   ARGUMENTS AND STATEMENTS ARE NOT EVIDENCE.  IF THE FACTS AS YOU

16   REMEMBER THEM DIFFER FROM THE WAY THE LAWYERS HAVE STATED THEM,

17   YOUR MEMORY OF THEM CONTROLS.

18        NUMBER 2.  QUESTIONS AND OBJECTIONS BY LAWYERS ARE NOT

19   EVIDENCE.  ATTORNEYS HAVE A DUTY TO THEIR CLIENTS TO OBJECT

20   WHEN THEY BELIEVE A QUESTION IS IMPROPER UNDER THE RULES OF

21   EVIDENCE.  YOU SHOULD NOT BE INFLUENCED BY THE OBJECTION OR BY

22   THE COURT'S RULING ON IT.

23        NUMBER 3.  TESTIMONY THAT HAS BEEN EXCLUDED OR STRICKEN,

24   OR THAT YOU HAVE BEEN INSTRUCTED TO DISREGARD, IS NOT EVIDENCE

25   AND MUST NOT BE CONSIDERED.
```

1          IN ADDITION, SOMETIMES TESTIMONY AND EXHIBITS ARE RECEIVED

2     ONLY FOR A LIMITED PURPOSE; WHEN I GIVE A LIMITING INSTRUCTION,

3     YOU MUST FOLLOW IT.

4          NUMBER 4.  ANYTHING YOU MAY HAVE SEEN OR HEARD WHEN THE

5     COURT WAS NOT IN SESSION IS NOT EVIDENCE.  YOU ARE TO DECIDE

6     THE CASE SOLELY ON THE EVIDENCE RECEIVED AT THE TRIAL.

7          NUMBER 7.

8          SOME EVIDENCE MAY HAVE BEEN ADMITTED FOR A LIMITED PURPOSE

9     ONLY.  YOU MUST CONSIDER IT ONLY FOR THAT LIMITED PURPOSE AND

10    FOR NO OTHER.

11         NUMBER 8.

12         CERTAIN CHARTS AND SLIDES NOT RECEIVED IN EVIDENCE HAVE

13    BEEN SHOWN TO YOU IN ORDER TO HELP EXPLAIN THE CONTENTS OF

14    BOOKS, RECORDS, DOCUMENTS OR OTHER EVIDENCE IN THE CASE.  THEY

15    ARE NOT THEMSELVES EVIDENCE OR PROOF OF ANY FACTS.

16         NUMBER 9.

17         CERTAIN CHARTS AND SUMMARIES HAVE BEEN RECEIVED INTO

18    EVIDENCE TO ILLUSTRATE INFORMATION BROUGHT OUT IN THE TRIAL.

19    YOU MAY USE THOSE CHARTS AND SUMMARIES AS EVIDENCE, EVEN THOUGH

20    THE UNDERLYING DOCUMENTS AND RECORDS ARE NOT HERE.  YOU SHOULD

21    GIVE THEM ONLY SUCH WEIGHT AS YOU THINK THEY DESERVE.

22         NUMBER 10.

23         EVIDENCE MAY BE DIRECT OR CIRCUMSTANTIAL.  DIRECT EVIDENCE

24    IS DIRECT PROOF OF A FACT, SUCH AS TESTIMONY BY A WITNESS ABOUT

25    WHAT THAT WITNESS PERSONALLY SAW OR HEARD OR DID.

1    CIRCUMSTANTIAL EVIDENCE IS PROOF OF ONE OR MORE FACTS FROM

2    WHICH YOU COULD FIND ANOTHER FACT.

3    YOU SHOULD CONSIDER BOTH KINDS OF EVIDENCE.  THE LAW MAKES

4    NO DISTINCTION BETWEEN THE WEIGHT TO BE GIVEN TO EITHER DIRECT

5    OR CIRCUMSTANTIAL EVIDENCE.  IT IS FOR YOU TO DECIDE HOW MUCH

6    WEIGHT TO GIVE TO ANY EVIDENCE.

7    NUMBER 11.

8    IN DECIDING THE FACTS IN THIS CASE, YOU MAY HAVE TO DECIDE

9    WHICH TESTIMONY TO BELIEVE AND WHICH TESTIMONY NOT TO BELIEVE.

10   YOU MAY BELIEVE EVERYTHING A WITNESS SAID, OR PART OF IT, OR

11   NONE OF IT.

12   PROOF OF A FACT DOES NOT NECESSARILY DEPEND ON THE NUMBER

13   OF WITNESSES WHO TESTIFIED ABOUT IT.

14   IN CONSIDERING THE TESTIMONY OF ANY WITNESS, YOU MAY TAKE

15   INTO ACCOUNT:

16   NUMBER 1.  THE OPPORTUNITY AND ABILITY OF THE WITNESS TO

17   SEE OR HEAR OR KNOW THE THINGS TESTIFIED TO;

18   NUMBER 2.  THE WITNESS'S MEMORY;

19   NUMBER 3.  THE WITNESS'S MANNER WHILE TESTIFYING;

20   NUMBER 4.  THE WITNESS'S INTEREST IN THE OUTCOME OF THE

21   CASE AND ANY BIAS OR PREJUDICE;

22   NUMBER 5.  WHETHER OTHER EVIDENCE CONTRADICTED THE

23   WITNESS'S TESTIMONY;

24   NUMBER 6.  THE REASONABLENESS OF THE WITNESS'S TESTIMONY

25   IN LIGHT OF ALL THE EVIDENCE; AND,

```
 1            NUMBER 7.  ANY OTHER FACTORS THAT BEAR ON BELIEVABILITY.

 2            THE WEIGHT OF THE EVIDENCE AS TO A FACT DOES NOT

 3     NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY ABOUT

 4     IT.

 5            NUMBER 12.

 6            THE EVIDENCE THAT A WITNESS LIED UNDER OATH OR GAVE

 7     DIFFERENT TESTIMONY ON A PRIOR OCCASION MAY BE CONSIDERED,

 8     ALONG WITH ALL OTHER EVIDENCE, IN DECIDING WHETHER OR NOT TO

 9     BELIEVE THE WITNESS AND HOW MUCH WEIGHT TO GIVE TO THE

10     TESTIMONY OF THE WITNESS AND FOR NO OTHER PURPOSE.

11            NUMBER 13.

12            YOU MAY HAVE TAKEN NOTES DURING THE TRIAL.  WHETHER OR NOT

13     YOU TOOK NOTES, YOU SHOULD RELY ON YOUR OWN MEMORY OF THE

14     EVIDENCE.  NOTES ARE ONLY TO ASSIST YOUR MEMORY.  YOU SHOULD

15     NOT BE OVERLY INFLUENCED BY YOUR NOTES OR THOSE OF YOUR FELLOW

16     JURORS.

17            NUMBER 14.

18            YOU HEARD SOME WITNESSES TESTIFY BY DEPOSITION.  A

19     DEPOSITION IS THE SWORN TESTIMONY OF A WITNESS TAKEN BEFORE

20     TRIAL.  THE WITNESS IS PLACED UNDER OATH TO TELL THE TRUTH AND

21     LAWYERS FOR EACH PARTY MAY ASK QUESTIONS.  THE QUESTIONS AND

22     ANSWERS ARE RECORDED.

23            YOU SHOULD CONSIDER DEPOSITION TESTIMONY, PRESENTED TO YOU

24     IN COURT IN LIEU OF LIVE TESTIMONY, INSOFAR AS POSSIBLE, IN THE

25     SAME WAY AS IF THE WITNESS HAD BEEN PRESENT TO TESTIFY.
```

1          NUMBER 15.

2          EVIDENCE WAS PRESENTED TO YOU IN THE FORM OF ANSWERS OF

3     ONE OF THE PARTIES TO WRITTEN INTERROGATORIES SUBMITTED BY THE

4     OTHER SIDE.  THESE ANSWERS WERE GIVEN IN WRITING AND UNDER

5     OATH, BEFORE THE ACTUAL TRIAL, IN RESPONSE TO QUESTIONS THAT

6     WERE SUBMITTED IN WRITING UNDER ESTABLISHED COURT PROCEDURES.

7          YOU SHOULD CONSIDER THE ANSWERS, INSOFAR AS POSSIBLE, IN

8     THE SAME WAY AS IF THEY WERE MADE FROM THE WITNESS STAND.

9          NUMBER 16.

10          SOME WITNESSES, BECAUSE OF EDUCATION OR EXPERIENCE, WERE

11     PERMITTED TO STATE OPINIONS AND THE REASONS FOR THOSE OPINIONS.

12          OPINION TESTIMONY SHOULD BE JUDGED JUST LIKE ANY OTHER

13     TESTIMONY.  YOU MAY ACCEPT IT OR REJECT IT, AND GIVE IT AS MUCH

14     WEIGHT AS YOU THINK IT DESERVES, CONSIDERING THE WITNESS'S

15     EDUCATION AND EXPERIENCE, THE REASONS GIVEN FOR THE OPINION,

16     AND ALL THE OTHER EVIDENCE IN THE CASE.

17          NUMBER 17.

18          THE PHYSICAL DEVICES YOU RECEIVED ARE EVIDENCE IN THIS

19     TRIAL.

20          YOU MAY USE THEM IN YOUR DELIBERATIONS, AND MAY CONNECT TO

21     THE INTERNET THROUGH THE WEB BROWSER APPLICATION, BUT MUST NOT

22     ALTER OR MODIFY THE DEVICES IN ANY WAY.

23          SOME OF THE DEVICES HAVE SIMPLE CARDS IN THEIR PACKAGING.

24     THESE SIMPLE CARDS ARE NOT TO BE INSERTED INTO THE PHONES.

25          SOME OF THE DEVICES HAVE A MOBILE DATA CONNECTION, AND YOU

```
1        WILL NOT NEED TO TAKE ANY ADDITIONAL ACTION TO USE THE WEB

2        BROWSER APPLICATION.

3              OTHERS MUST FIRST BE CONNECTED TO THE COURT'S WI-FI

4        NETWORK TO ACCESS THE INTERNET.

5              ONCE CONNECTED, YOU MUST DECLINE ANY SOFTWARE UPDATE

6        NOTIFICATIONS THAT MAY BE PRESENTED TO YOU.

7              YOU ALSO MUST NOT DOWNLOAD ANY CONTENT, SUCH AS APPS,

8        MUSIC, PHOTOGRAPHS, OR GAMES, TO THE DEVICES.

9              TO CONNECT A DEVICE TO THE COURT'S WI-FI NETWORK, SELECT

10       "USDCSJ01" FROM THE LIST OF AVAILABLE WIRELESS NETWORKS, AS

11       DEPICTED BELOW.

12             FROM THE APPLICATIONS MENU, SELECT THE WEB BROWSER

13       APPLICATION.

14             FROM THE COURT'S WI-FI LOG IN PAGE, SCROLL TO THE BOTTOM

15       AND CLICK ON THE BLUE "CONNECT!" BUTTON.

16             SOME DEVICES MAY DISPLAY A "SYSTEM UPDATE" NOTIFICATION

17       LIKE THE ONES BELOW.

18             IF YOU SEE SUCH A SCREEN, YOU MUST DECLINE THE REQUEST TO

19       UPDATE THE SYSTEM.  SELECT "INSTALL LATER" OR PRESS THE "HOME"

20       OR "BACK" BUTTON TO EXIT THE NOTIFICATION SCREEN.

21             NUMBER 18.

22             I WILL NOW AGAIN SUMMARIZE FOR YOU EACH SIDE'S CONTENTIONS

23       IN THIS CASE.  I WILL THEN TELL YOU WHAT EACH SIDE MUST PROVE

24       TO WIN ON EACH OF ITS CONTENTIONS.

25             AS I PREVIOUSLY EXPLAINED, APPLE SEEKS MONEY DAMAGES FROM
```

1    SAMSUNG ELECTRONICS COMPANY, SAMSUNG ELECTRONICS AMERICA, INC.,

2    AND SAMSUNG TELECOMMUNICATIONS AMERICA LLC (COLLECTIVELY,

3    "SAMSUNG") FOR ALLEGEDLY INFRINGING CLAIM 9 OF THE '647 PATENT,

4    CLAIM 25 OF THE '959 PATENT, CLAIM 20 OF THE '414 PATENT, CLAIM

5    8 OF THE '721 PATENT, AND CLAIM 18 OF THE '172 PATENT.

6         APPLE ALSO ARGUES THAT SAMSUNG ELECTRONICS COMPANY

7    ACTIVELY INDUCED SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG

8    TELECOMMUNICATIONS AMERICA LLC TO INFRINGE THE PATENTS, AND

9    THAT SAMSUNG ELECTRONICS COMPANY CONTRIBUTED TO THE

10   INFRINGEMENT OF THE PATENTS BY ANOTHER (EITHER ANOTHER SAMSUNG

11   ENTITY OR OTHER COMPANY).

12        APPLE CONTENDS THAT SAMSUNG'S INFRINGEMENT HAS BEEN

13   WILLFUL.

14        SAMSUNG DENIES THAT IT HAS INFRINGED THE ASSERTED CLAIMS

15   OF THE '647, '959, '414, AND '721 PATENTS AND ARGUES THAT, IN

16   ADDITION, THE ASSERTED CLAIMS ARE INVALID.  INVALIDITY IS A

17   DEFENSE TO INFRINGEMENT.

18        YOUR DUTY FOR APPLE'S '172 PATENT IS DIFFERENT FROM THE

19   OTHER PATENTS.  THE COURT HAS ALREADY FOUND THAT THE ADMIRE,

20   GALAXY NEXUS, GALAXY NOTE (EXCLUDING ONE RELEASE); GALAXY S II

21   (EXCLUDING ONE RELEASE); GALAXY S II EPIC 4G TOUCH (EXCLUDING

22   ONE RELEASE); GALAXY S II SKYROCKET (EXCLUDING ONE RELEASE);

23   AND, STRATOSPHERE INFRINGE CLAIM 18 OF THE '172 PATENT.  YOU

24   NEED ONLY DETERMINE WHETHER CLAIM 18 IS INVALID.

25        SAMSUNG HAS ALSO BROUGHT CLAIMS AGAINST APPLE FOR PATENT

1    INFRINGEMENT.  SAMSUNG SEEKS MONEY DAMAGES FROM APPLE FOR

2    ALLEGEDLY INFRINGING CLAIM 27 OF THE '449 PATENT AND CLAIM 15

3    OF THE '239 PATENT.

4         SAMSUNG ALSO CONTENDS THAT APPLE'S INFRINGEMENT AFTER

5    APRIL 18TH, 2012, HAS BEEN WILLFUL.

6         APPLE DENIES THAT IT HAS INFRINGED THE CLAIMS ASSERTED BY

7    SAMSUNG.  APPLE DOES NOT ARGUE THAT SAMSUNG'S PATENTS ARE

8    INVALID.  THEREFORE, YOU NEED ONLY DETERMINE WHETHER THE '449

9    AND '239 PATENTS ARE INFRINGED AND WHETHER THAT INFRINGEMENT

10   HAS BEEN WILLFUL.

11        IN THIS CASE, APPLE DOES NOT CONTEND THAT IT PRACTICES THE

12   '414, '172, OR '959 PATENTS, AND SAMSUNG DOES NOT CONTEND THAT

13   IT PRACTICES THE '449 PATENT.

14        FOR EACH PARTY'S PATENT INFRINGEMENT CLAIMS AGAINST THE

15   OTHER, THE FIRST ISSUE YOU WILL BE ASKED TO DECIDE IS WHETHER

16   THE ALLEGED INFRINGER HAS INFRINGED THE CLAIMS OF THE PATENT

17   OWNER'S PATENTS AND, FOR APPLE'S PATENTS, YOU MUST ALSO DECIDE

18   WHETHER THOSE PATENTS ARE VALID.

19        IF YOU DECIDE THAT ANY CLAIM OF EITHER PARTY'S PATENTS HAS

20   BEEN INFRINGED, AND FOR APPLE'S PATENTS, IS NOT INVALID, YOU

21   WILL THEN NEED TO DECIDE ANY MONEY DAMAGES TO BE AWARDED TO THE

22   PATENT OWNER TO COMPENSATE IT FOR THE INFRINGEMENT.

23        YOU WILL ALSO NEED TO MAKE A FINDING AS TO WHETHER THE

24   INFRINGEMENT WAS WILLFUL.

25        IF YOU DECIDE THAT ANY INFRINGEMENT WAS WILLFUL, THAT

1    DECISION SHOULD NOT AFFECT ANY DAMAGE AWARD YOU GIVE.  I WILL

2    TAKE WILLFULNESS INTO ACCOUNT LATER.

3         NUMBER 19.

4         WHEN YOU BEGIN YOUR DELIBERATIONS, YOU SHOULD ELECT ONE

5    MEMBER OF THE JURY AS YOUR PRESIDING JUROR.  THAT PERSON WILL

6    PRESIDE OVER THE DELIBERATIONS AND SPEAK FOR YOU HERE IN COURT.

7         YOU WILL THEN DISCUSS THE CASE WITH YOUR FELLOW JURORS TO

8    REACH AGREEMENT IF YOU CAN DO SO.  YOUR VERDICT MUST BE

9    UNANIMOUS.

10        EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF, BUT YOU

11   SHOULD DO SO ONLY AFTER YOU HAVE CONSIDERED ALL OF THE

12   EVIDENCE, DISCUSSED IT FULLY WITH THE OTHER JURORS, AND

13   LISTENED TO THE VIEWS OF YOUR FELLOW JURORS.

14        DO NOT HESITATE TO CHANGE YOUR OPINION IF THE DISCUSSION

15   PERSUADES YOU THAT YOU SHOULD.  DO NOT COME TO A DECISION

16   SIMPLY BECAUSE OTHER JURORS THINK IT IS RIGHT.

17        IT IS IMPORTANT THAT YOU ATTEMPT TO REACH A UNANIMOUS

18   VERDICT BUT, OF COURSE, ONLY IF EACH OF YOU CAN DO SO AFTER

19   HAVING MADE YOUR OWN CONSCIENTIOUS DECISION.  DO NOT CHANGE AN

20   HONEST BELIEF ABOUT THE WEIGHT AND EFFECT OF THE EVIDENCE

21   SIMPLY TO REACH A VERDICT.

22        NUMBER 20.

23        IF IT BECOMES NECESSARY DURING YOUR DELIBERATIONS TO

24   COMMUNICATE WITH ME, YOU MAY SEND A NOTE THROUGH THE BAILIFF,

25   SIGNED BY YOUR PRESIDING JUROR OR BY ONE OR MORE MEMBERS OF THE

1    JURY.  NO MEMBER OF THE JURY SHOULD EVER ATTEMPT TO COMMUNICATE

2    WITH ME EXCEPT BY A SIGNED WRITING; I WILL COMMUNICATE WITH ANY

3    MEMBER OF THE JURY ON ANYTHING CONCERNING THE CASE ONLY IN

4    WRITING, OR HERE IN OPEN COURT.

5        IF YOU SEND OUT A QUESTION, I WILL CONSULT WITH THE

6    PARTIES BEFORE ANSWERING IT, WHICH MAY TAKE SOME TIME.  YOU MAY

7    CONTINUE YOUR DELIBERATIONS WHILE WAITING FOR THE ANSWER TO ANY

8    QUESTION.  REMEMBER THAT YOU ARE NOT TO TELL ANYONE --

9    INCLUDING ME -- HOW THE JURY STANDS, NUMERICALLY OR OTHERWISE,

10   UNTIL AFTER YOU HAVE REACHED A UNANIMOUS VERDICT OR HAVE BEEN

11   DISCHARGED.  DO NOT DISCLOSE ANY VOTE COUNT IN ANY NOTE TO THE

12   COURT.

13       NUMBER 21.

14       A VERDICT FORM HAS BEEN PREPARED FOR YOU.  AFTER YOU HAVE

15   REACHED UNANIMOUS AGREEMENT ON A VERDICT, YOUR PRESIDING JUROR

16   WILL FILL IN THE FORM THAT HAS BEEN GIVEN TO YOU, SIGN AND DATE

17   IT, AND ADVISE THE COURT THAT YOU ARE READY TO RETURN TO THE

18   COURTROOM.

19       NUMBER 22.

20       BEFORE YOU DECIDE WHETHER APPLE OR SAMSUNG HAS INFRINGED

21   THE CLAIMS OF THE OTHER SIDE'S PATENTS OR WHETHER THE CLAIMS OF

22   APPLE'S PATENTS ARE INVALID, YOU WILL NEED TO UNDERSTAND THE

23   PATENT CLAIMS.

24       AS I MENTIONED, THE PATENT CLAIMS ARE NUMBERED SENTENCES

25   AT THE END OF THE PATENT THAT DESCRIBE THE BOUNDARIES OF THE

1    PATENT'S PROTECTION.

2         IT IS MY JOB AS JUDGE TO EXPLAIN TO YOU THE MEANING OF ANY

3    LANGUAGE IN THE CLAIMS THAT NEEDS INTERPRETATION.

4         I HAVE INTERPRETED THE MEANING OF SOME OF THE LANGUAGE IN

5    THE PATENT CLAIMS INVOLVED IN THIS CASE.  YOU MUST ACCEPT THOSE

6    INTERPRETATIONS AS CORRECT.  MY INTERPRETATION OF THE LANGUAGE

7    SHOULD NOT BE TAKEN AS AN INDICATION THAT I HAVE A VIEW

8    REGARDING THE ISSUES OF INFRINGEMENT AND INVALIDITY.  THE

9    DECISIONS REGARDING INFRINGEMENT AND INVALIDITY ARE YOURS TO

10   MAKE.

11        FOR U.S. PATENT NUMBER 7,761,414, THE TERM "CONCURRENTLY

12   WITH" MEANS "THE SYNCHRONIZATION THREAD AND THE

13   NON-SYNCHRONIZATION THREAD ARE BOTH ACTIVE DURING AN

14   OVERLAPPING TIME INTERVAL."

15        FOR U.S. PATENT NUMBER 6,874,959, THE TERM "HEURISTIC"

16   MEANS "SOME 'RULE OF THUMB' THAT DOES NOT CONSIST SOLELY OF

17   CONSTRAINT SATISFACTION PARAMETERS."

18        FOR U.S. PATENT NUMBER 5,946,647, THE TERM "ACTION

19   PROCESSOR" MEANS "PROGRAM ROUTINE OR ROUTINES THAT PERFORM THE

20   SELECTED ACTION ON THE DETECTED STRUCTURE."

21        THE TERM "ANALYZER SERVER" MEANS "A SERVER ROUTINE

22   SEPARATE FROM A CLIENT THAT RECEIVES DATA HAVING STRUCTURES

23   FROM THE CLIENT."

24        THE TERM "LINKING ACTIONS TO THE DETECTED STRUCTURES"

25   MEANS "CREATING A SPECIFIED CONNECTION BETWEEN EACH DETECTED

1    STRUCTURE AND AT LEAST ONE COMPUTER SUBROUTINE THAT CAUSES THE

2    CPU TO PERFORM A SEQUENCE OF OPERATIONS ON THAT DETECTED

3    STRUCTURE."

4         FOR U.S. PATENT NUMBER 5,579,239, CLAIM 15 OF THE '239

5    PATENT INCLUDES A "MEANS-PLUS-FUNCTION" TERM THAT I HAVE

6    ALREADY INTERPRETED.  I WILL GIVE YOU MY INTERPRETATION OF THAT

7    TERM LATER WHEN I EXPLAIN HOW MEANS-PLUS-FUNCTION TERMS ARE

8    INFRINGED.

9         FOR CLAIM LANGUAGE WHERE I HAVE NOT PROVIDED YOU WITH ANY

10   MEANING, YOU SHOULD APPLY THE CLAIM LANGUAGE'S PLAIN AND

11   ORDINARY MEANING.

12        THE CLAIMS DEFINE THE SCOPE OF THE PATENT.  YOU MUST READ

13   THE CLAIMS IN THE SAME WAY WHEN YOU ANALYZE INFRINGEMENT AND

14   WHEN YOU ANALYZE APPLE'S PATENTS FOR INVALIDITY.

15        NUMBER 23.

16        I WILL NOW INSTRUCT YOU ON THE RULES YOU MUST FOLLOW IN

17   DECIDING WHETHER EITHER APPLE OR SAMSUNG (OR BOTH) HAS PROVEN

18   THAT THE OTHER SIDE HAS INFRINGED ONE OR MORE OF THE ASSERTED

19   CLAIMS OF THE ASSERTED PATENTS.

20        TO PROVE INFRINGEMENT OF ANY CLAIM, THE PATENT OWNER MUST

21   PERSUADE YOU BY A PREPONDERANCE OF THE EVIDENCE THAT THE

22   ALLEGED INFRINGER HAS INFRINGED THAT CLAIM.

23        PAGE -- OR INSTRUCTION NUMBER 24.

24        A PATENT'S CLAIMS DEFINE WHAT IS COVERED BY THE PATENT.  A

25   PRODUCT DIRECTLY INFRINGES A PATENT IF IT IS COVERED BY AT

1    LEAST ONE CLAIM OF THE PATENT.

2         DECIDING WHETHER A CLAIM HAS BEEN DIRECTLY INFRINGED IS A

3    TWO-STEP PROCESS.  THE FIRST STEP IS TO DECIDE THE MEANING OF

4    THE PATENT CLAIM.  I HAVE ALREADY MADE THIS DECISION, AND I

5    HAVE ALREADY INSTRUCTED YOU AS TO THE MEANING OF THE ASSERTED

6    PATENT CLAIMS.

7         THE SECOND STEP IS TO DECIDE WHETHER SAMSUNG AND/OR APPLE

8    HAS MADE, USED, SOLD, OFFERED FOR SALE, OR IMPORTED WITHIN THE

9    UNITED STATES A PRODUCT COVERED BY ANY OF THE ASSERTED CLAIMS

10   OF THE OTHER SIDE'S PATENTS.

11        IF SAMSUNG OR APPLE HAS DONE SO, IT INFRINGES.  YOU, THE

12   JURY, MAKE THIS DECISION.

13        WITH ONE EXCEPTION, YOU MUST CONSIDER EACH OF THE ASSERTED

14   CLAIMS OF THE PATENTS INDIVIDUALLY, AND DECIDE WHETHER THE

15   ACCUSED SAMSUNG AND/OR APPLE PRODUCTS INFRINGE THAT CLAIM.  THE

16   ONE EXCEPTION TO CONSIDERING CLAIMS INDIVIDUALLY CONCERNS

17   DEPENDENT CLAIMS.  A DEPENDENT CLAIM INCLUDES ALL OF THE

18   REQUIREMENTS OF A PARTICULAR INDEPENDENT CLAIM, PLUS ADDITIONAL

19   REQUIREMENTS OF ITS OWN.

20        AS A RESULT, IF YOU FIND THAT AN INDEPENDENT CLAIM IS NOT

21   INFRINGED, YOU MUST ALSO FIND THAT ITS DEPENDENT CLAIMS ARE NOT

22   INFRINGED.

23        ON THE OTHER HAND, IF YOU FIND THAT AN INDEPENDENT CLAIM

24   HAS BEEN INFRINGED, YOU MUST STILL SEPARATELY DECIDE WHETHER

25   THE ADDITIONAL REQUIREMENTS OF ITS DEPENDENT CLAIMS HAVE ALSO

1    BEEN INFRINGED.

2         YOU HAVE HEARD EVIDENCE ABOUT BOTH SIDES' COMMERCIAL

3    PRODUCTS.  HOWEVER, IN DECIDING THE ISSUE OF PATENT

4    INFRINGEMENT, YOU MUST NOT -- YOU MAY NOT COMPARE THE SAMSUNG

5    AND APPLE COMMERCIAL PRODUCTS TO EACH OTHER.  RATHER, YOU MUST

6    COMPARE THE ACCUSED SAMSUNG PRODUCTS TO THE CLAIMS OF THE APPLE

7    PATENTS, AND THE ACCUSED APPLE PRODUCTS TO THE CLAIMS OF THE

8    SAMSUNG PATENTS.

9         WHETHER OR NOT SAMSUNG OR APPLE KNEW ITS PRODUCTS

10   INFRINGED OR EVEN KNEW OF THE OTHER SIDE'S PATENTS DOES NOT

11   MATTER IN DETERMINING DIRECT INFRINGEMENT.

12        YOU SHOULD NOTE, HOWEVER, THAT WHAT ARE CALLED

13   "MEANS-PLUS-FUNCTION" REQUIREMENTS IN A CLAIM ARE SUBJECT TO

14   DIFFERENT RULES FOR DECIDING DIRECT INFRINGEMENT.  THESE

15   SEPARATE RULES APPLY TO A REQUIREMENT OF CLAIM 15 OF THE '239

16   PATENT.  I WILL DESCRIBE THOSE SEPARATE RULES SHORTLY.

17        NUMBER 25.

18        IN DECIDING WHETHER A SALE HAS TAKEN PLACE "WITHIN THE

19   UNITED STATES," YOU MAY FIND THE FOLLOWING GUIDELINES HELPFUL

20   TO YOUR ANALYSIS:

21        THE LOCATION OF THE SALE DEPENDS ON MANY FACTORS, AND YOU

22   MAY FIND THAT THE SALE OCCURRED IN SEVERAL PLACES.  A SALE

23   OCCURS WHEREVER THE "ESSENTIAL ACTIVITIES" OF THE SALE TAKE

24   PLACE.  THE ESSENTIAL ACTIVITIES INCLUDE, FOR EXAMPLE,

25   NEGOTIATING THE CONTRACT AND PERFORMING OBLIGATIONS UNDER THE

1    CONTRACT.

2         NUMBER 26.

3         TO DECIDE WHETHER EACH ACCUSED SAMSUNG AND APPLE PRODUCT

4    LITERALLY INFRINGES A CLAIM OF AN ASSERTED PATENT, YOU MUST

5    COMPARE THE PRODUCT WITH THE PATENT CLAIM AND DETERMINE WHETHER

6    EVERY REQUIREMENT OF THE CLAIM IS INCLUDED IN THAT PRODUCT.

7         IF SO, THE SAMSUNG OR APPLE PRODUCT IN QUESTION LITERALLY

8    INFRINGES THAT CLAIM.  IF, HOWEVER, A PARTICULAR SAMSUNG OR

9    APPLE PRODUCT DOES NOT HAVE EVERY REQUIREMENT IN THE PATENT

10   CLAIM, THAT PRODUCT DOES NOT LITERALLY INFRINGE THAT CLAIM.

11   YOU MUST DECIDE LITERAL INFRINGEMENT FOR EACH ASSERTED CLAIM

12   SEPARATELY.

13        IF THE PATENT CLAIM USES THE TERM "COMPRISING," THAT

14   PATENT CLAIM IS TO BE UNDERSTOOD AS AN OPEN CLAIM.  AN OPEN

15   CLAIM IS INFRINGED AS LONG AS EVERY REQUIREMENT IN THE CLAIM IS

16   PRESENT IN THE ACCUSED PRODUCT.  THE FACT THAT A PARTICULAR

17   ACCUSED SAMSUNG OR APPLE PRODUCT ALSO INCLUDES OTHER PARTS OR

18   STEPS WILL NOT AVOID INFRINGEMENT, AS LONG AS IT HAS EVERY

19   REQUIREMENT IN THE PATENT CLAIM.

20        NUMBER 27.

21        I WILL NOW DESCRIBE THE SEPARATE RULES THAT APPLY TO THE

22   "MEANS-PLUS-FUNCTION" REQUIREMENT THAT IS USED IN CLAIM 15 OF

23   THE '239 PATENT.  A MEANS-PLUS-FUNCTION REQUIREMENT COVERS THE

24   SPECIFIC STRUCTURE DISCLOSED IN A PATENT SPECIFICATION FOR

25   PERFORMING THE CLAIMED FUNCTION.  A MEANS-PLUS-FUNCTION

1    REQUIREMENT DOES NOT COVER ALL POSSIBLE STRUCTURES THAT COULD

2    BE USED TO PERFORM THE CLAIMED FUNCTION.

3         AS AN EXAMPLE, THE TERM "MEANS FOR PROCESSING DATA" MIGHT

4    BE UNDERSTOOD TO ENCOMPASS A VARIETY OF DIFFERENT WAYS OF

5    MAKING A CALCULATION, INCLUDING NOT ONLY A COMPUTER OR

6    CALCULATOR, BUT A PENCIL AND PAPER, OR EVEN THE HUMAN BRAIN.

7         BUT BECAUSE THE PHRASE IS A MEANS-PLUS-FUNCTION

8    REQUIREMENT, WE INTERPRET THAT PHRASE NOT TO COVER EVERY

9    POSSIBLE MEANS FOR PROCESSING DATA, BUT INSTEAD TO COVER THE

10   ACTUAL MEANS DISCLOSED IN THE PATENT FOR PROCESSING DATA.

11        CLAIM 15 OF THE '239 PATENT RECITES THE PHRASE:  "MEANS

12   FOR TRANSITION OF SAID CAPTURED VIDEO OVER A CELLULAR

13   FREQUENCY."

14        I HAVE INTERPRETED THE MEANS-PLUS-FUNCTION REQUIREMENT AND

15   IDENTIFIED THE STRUCTURE IN THE PATENT SPECIFICATION THAT

16   CORRESPONDS TO THE MEANS-PLUS-FUNCTION REQUIREMENT.

17   SPECIFICALLY, I HAVE DETERMINED THAT:

18        THE FUNCTION IDENTIFIED IN THE MEANS-PLUS-FUNCTION

19   REQUIREMENT OF CLAIM 15 OF THE '239 PATENT IS:  "TRANSMISSION

20   OF SAID CAPTURED VIDEO OVER A CELLULAR FREQUENCY."

21        THE STRUCTURE THAT PERFORMS THIS FUNCTION IS:  "ONE OR

22   MORE MODEMS CONNECTED TO ONE OR MORE CELLULAR TELEPHONES, AND

23   SOFTWARE PERFORMING A SOFTWARE SEQUENCE OF INITIALIZING ONE OR

24   MORE COMMUNICATIONS PORTS ON SAID APPARATUS, OBTAINING A

25   CELLULAR CONNECTION, OBTAINING SAID CAPTURED VIDEO, AND

```
1    TRANSMITTING SAID CAPTURED VIDEO."

2         IN DECIDING IF SAMSUNG HAS PROVEN THAT APPLE'S PRODUCT

3    INCLUDES STRUCTURE COVERED BY A MEANS-PLUS-FUNCTION

4    REQUIREMENT, YOU MUST FIRST DECIDE WHETHER THE PRODUCT HAS ANY

5    STRUCTURE THAT PERFORMS THE FUNCTION I JUST DESCRIBED TO YOU.

6         IF NOT, THE CLAIM CONTAINING THAT MEANS-PLUS-FUNCTION

7    REQUIREMENT IS NOT INFRINGED.

8         IF YOU FIND THAT THE APPLE ACCUSED PRODUCT DOES HAVE

9    STRUCTURE THAT PERFORMS THE CLAIMED FUNCTION, YOU MUST THEN

10   DETERMINE WHETHER THAT STRUCTURE IS THE SAME AS THE STRUCTURE I

11   HAVE IDENTIFIED IN THE SPECIFICATION.

12        IF THEY ARE THE SAME, THE MEANS-PLUS-FUNCTION REQUIREMENT

13   IS SATISFIED BY THAT STRUCTURE OF THE ACCUSED PRODUCT.

14        IF ALL THE OTHER REQUIREMENTS OF THE CLAIM ARE SATISFIED,

15   THE ACCUSED PRODUCT INFRINGES THE CLAIM.

16        NUMBER 28.

17        APPLE CLAIMS THAT SAMSUNG ELECTRONICS COMPANY ACTIVELY

18   INDUCED ITS SUBSIDIARIES IN THE UNITED STATES, SAMSUNG

19   TELECOMMUNICATIONS AMERICA AND SAMSUNG ELECTRONICS AMERICA, TO

20   INFRINGE APPLE'S PATENTS.

21        IN ORDER FOR THERE TO BE INDUCEMENT OF INFRINGEMENT BY

22   SAMSUNG ELECTRONICS COMPANY, SOMEONE ELSE MUST DIRECTLY

23   INFRINGE THE ASSERTED PATENT; IF THERE IS NO DIRECT

24   INFRINGEMENT BY ANYONE, THERE CAN BE NO INDUCED INFRINGEMENT.

25        IN ORDER TO BE LIABLE FOR INDUCEMENT OF INFRINGEMENT, THE
```

1    ALLEGED INFRINGER MUST:

2        NUMBER 1.  HAVE INTENTIONAL TAKEN ACTION THAT ACTUALLY

3    INDUCED DIRECT INFRINGEMENT BY ANOTHER;

4        NUMBER 2.  HAVE BEEN AWARE OF THE ASSERTED PATENT; AND,

5        NUMBER 3.  HAVE KNOWN THAT THE ACTS IT WAS CAUSING WOULD

6    BE INFRINGING.

7        THE "KNOWLEDGE" AND "AWARENESS" REQUIREMENTS FOR

8    INDUCEMENT CAN BE SATISFIED BY SHOWING THAT A PARTY WAS

9    WILLFULLY BLIND.  IF SAMSUNG ELECTRONICS COMPANY DID NOT KNOW

10   OF THE EXISTENCE OF THE PATENT IN QUESTION, OR THAT THE ACTS IT

11   WAS INDUCING WERE INFRINGING, IT CAN BE LIABLE FOR INDUCEMENT

12   ONLY IF IT ACTUALLY BELIEVED THAT IT WAS HIGHLY PROBABLE ITS

13   ACTIONS WOULD ENCOURAGE INFRINGEMENT OF A PATENT AND IT TOOK

14   INTENTIONAL ACTS TO AVOID LEARNING THE TRUTH.

15       IT IS NOT ENOUGH THAT SAMSUNG ELECTRONICS COMPANY WAS

16   MERELY INDIFFERENT TO THE POSSIBILITY THAT IT MIGHT ENCOURAGE

17   INFRINGEMENT OF A PATENT.

18       NOR IS IT ENOUGH THAT SAMSUNG ELECTRONICS COMPANY TOOK A

19   RISK THAT WAS SUBSTANTIAL AND UNJUSTIFIED.

20       IF YOU FIND THAT SAMSUNG ELECTRONICS COMPANY WAS AWARE OF

21   AN ASSERTED PATENT, BUT BELIEVED THAT THE ACTS IT ENCOURAGED

22   DID NOT INFRINGE THAT PATENT, OR THAT THE PATENT WAS INVALID,

23   SAMSUNG ELECTRONICS COMPANY CANNOT BE LIABLE FOR INDUCEMENT.

24       NUMBER 29.

25       APPLE ALSO ARGUES THAT SAMSUNG ELECTRONICS COMPANY HAS

 1    CONTRIBUTED TO INFRINGEMENT BY ANOTHER (EITHER ANOTHER SAMSUNG

 2    ENTITY OR ANOTHER COMPANY).  CONTRIBUTORY INFRINGEMENT MAY

 3    ARISE WHEN SOMEONE SUPPLIES SOMETHING THAT IS USED TO INFRINGE

 4    ONE OR MORE OF THE PATENT CLAIMS.

 5         IN ORDER FOR THERE TO BE CONTRIBUTORY INFRINGEMENT BY

 6    SAMSUNG ELECTRONICS COMPANY, ANOTHER SAMSUNG ENTITY OR ANOTHER

 7    COMPANY MUST DIRECTLY INFRINGE THE ASSERTED CLAIMS OF THE '414,

 8    '647, '959, AND '721 PATENTS.

 9         IF THERE IS NO DIRECT INFRINGEMENT BY ANYONE, THERE CAN BE

10    NO CONTRIBUTORY INFRINGEMENT.

11         IF YOU FIND SOMEONE HAS DIRECTLY INFRINGED THE '414, '647,

12    '959, OR '721 PATENTS, THEN CONTRIBUTORY INFRINGEMENT EXISTS

13    IF:

14         NUMBER 1.  SAMSUNG ELECTRONICS COMPANY SUPPLIED AN

15    IMPORTANT COMPONENT OF THE INFRINGING PART OF THE PRODUCT;

16         NUMBER 2.  THE COMPONENT IS NOT A COMMON COMPONENT

17    SUITABLE FOR NON-INFRINGING USE; AND,

18         NUMBER 3.  SAMSUNG ELECTRONICS COMPANY SUPPLIED THE

19    COMPONENT WITH THE KNOWLEDGE OF THE PATENT AND KNOWLEDGE THAT

20    THE COMPONENT WAS ESPECIALLY MADE OR ADAPTED FOR USE IN AN

21    INFRINGING MANNER.

22         A "COMMON COMPONENT SUITABLE FOR NON-INFRINGING USE" IS A

23    COMPONENT THAT HAS USES OTHER THAN AS A COMPONENT OF THE

24    PATENTED PRODUCT, AND THOSE OTHER USES ARE NOT OCCASIONAL,

25    FARFETCHED, IMPRACTICAL, EXPERIMENTAL, OR HYPOTHETICAL.

1        IN THIS CASE, APPLE AND SAMSUNG BOTH ARGUE THAT THE OTHER

2   SIDE WILLFULLY INFRINGED ITS PATENTS.

3        TO PROVE WILLFUL INFRINGEMENT, THE PATENT OWNER MUST FIRST

4   PERSUADE YOU THAT THE ALLEGED INFRINGER INFRINGED A VALID AND

5   ENFORCEABLE CLAIM OF ONE OR MORE OF THE PATENT OWNER'S PATENTS.

6   THE REQUIREMENTS FOR PROVING SUCH INFRINGEMENT WERE DISCUSSED

7   IN MY PRIOR INSTRUCTIONS.

8        IN ADDITION, TO PROVE WILLFUL INFRINGEMENT, THE PATENT

9   OWNER MUST PERSUADE YOU BY CLEAR AND CONVINCING EVIDENCE THAT

10   THE ALLEGED INFRINGER ACTED WITH RECKLESS DISREGARD OF THE

11   PATENT IT INFRINGED.

12        TO DEMONSTRATE SUCH "RECKLESS DISREGARD," THE PATENT OWNER

13   MUST PERSUADE YOU THAT THE ALLEGED INFRINGER ACTUALLY KNEW, OR

14   IT WAS SO OBVIOUS THAT THE ALLEGED INFRINGER SHOULD HAVE KNOWN,

15   THAT ITS ACTIONS CONSTITUTED INFRINGEMENT OF A VALID AND

16   ENFORCEABLE PATENT.

17        IN DECIDING WHETHER SAMSUNG OR APPLE ACTED WITH RECKLESS

18   DISREGARD FOR ANY PATENT THAT YOU FIND IS INFRINGED, YOU SHOULD

19   CONSIDER ALL OF THE FACTS SURROUNDING THE ALLEGED INFRINGEMENT

20   INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING FACTORS:

21        A FACTOR THAT MAY BE CONSIDERED AS EVIDENCE THAT SAMSUNG

22   OR APPLE WAS NOT WILLFUL IS WHETHER IT ACTED IN A MANNER

23   CONSISTENT WITH THE STANDARDS OF COMMERCE FOR ITS INDUSTRY.

24        A FACTOR THAT MAY BE CONSIDERED AS EVIDENCE THAT SAMSUNG

25   OR APPLE WAS WILLFUL IS WHETHER IT INTENTIONALLY COPIED A

3169

```
 1        PRODUCT OF THE OTHER SIDE THAT IS COVERED BY A PATH.

 2             NUMBER 31.

 3             I WILL NOW INSTRUCT YOU ON THE RULES YOU MUST FOLLOW IN

 4        DECIDING WHETHER SAMSUNG HAS PROVEN THAT CLAIMS OF APPLE'S

 5        PATENTS ARE INVALID.  APPLE DOES NOT CONTEND THAT SAMSUNG'S

 6        PATENTS ARE INVALID.

 7             BEFORE DISCUSSING THE SPECIFIC RULES, I WANT TO REMIND YOU

 8        ABOUT THE STANDARD OF PROOF THAT APPLIES TO THIS DEFENSE.  TO

 9        PROVE INVALIDITY OF ANY PATENT CLAIM, SAMSUNG MUST PERSUADE YOU

10        BY CLEAR AND CONVINCING EVIDENCE THAT THE CLAIM IS INVALID.

11             LET'S JUST TAKE ONE MINUTE TO STRETCH.

12             (PAUSE IN PROCEEDINGS.)

13             THE COURT:  NUMBER 32.

14             A PATENT CLAIM -- WE ARE ON PAGE 40, NUMBER 32.

15             A PATENT CLAIM IS INVALID IF THE CLAIMED INVENTION IS NOT

16        NEW.  FOR THE CLAIM TO BE INVALID BECAUSE IT IS NOT NEW, ALL OF

17        ITS REQUIREMENTS MUST HAVE EXISTED IN A SINGLE DEVICE OR METHOD

18        THAT PRE-DATES THE CLAIMED INVENTION, OR MUST HAVE BEEN

19        DESCRIBED IN A SINGLE PREVIOUS PUBLICATION OR PATENT THAT

20        PRE-DATES THE CLAIMED INVENTION.

21             IN PATENT LAW, THESE PREVIOUS DEVICES, METHODS,

22        PUBLICATIONS, OR PATENTS ARE CALLED "PRIOR ART REFERENCES."  IF

23        A PATENT CLAIM IS NOT NEW, WE SAY IT IS "ANTICIPATED" BY A

24        PRIOR ART REFERENCE.

25             THE DESCRIPTION IN THE WRITTEN REFERENCE DOES NOT HAVE TO
```

1      BE IN THE SAME WORDS AS THE CLAIM, BUT ALL OF THE REQUIREMENTS

2      OF CLAIM MUST BE THERE, EITHER STATED OR NECESSARILY IMPLIED,

3      SO THAT SOMEONE OF ORDINARY SKILL IN THE FIELD LOOKING AT THAT

4      ONE REFERENCE COULD BE ABLE TO MAKE AND USE THE CLAIMED

5      INVENTION.

6           HERE IS A LIST OF THE WAYS THAT SAMSUNG CAN SHOW THAT AN

7      APPLE PATENT CLAIM WAS NOT NEW:

8           IF THE CLAIMED INVENTION WAS ALREADY PUBLICLY KNOWN OR

9      PUBLICLY USED BY OTHERS IN THE UNITED STATES BEFORE THE DATE OF

10     CONCEPTION OF THE CLAIMED INVENTION;

11          IF THE CLAIMED INVENTION WAS ALREADY PATENTED OR DESCRIBED

12     IN A PRINTED PUBLICATION ANYWHERE IN THE WORLD BEFORE THE DATE

13     OF CONCEPTION OF THE CLAIMED INVENTION.  A REFERENCE IS A

14     "PRINTED PUBLICATION" IF IT IS ACCESSIBLE TO THOSE INTERESTED

15     IN THE FIELD, EVEN IF IT IS DIFFICULT TO FIND;

16          IF THE CLAIMED INVENTION WAS ALREADY MADE BY SOMEONE ELSE

17     IN THE UNITED STATES BEFORE THE DATE OF CONCEPTION OF THE

18     CLAIMED INVENTION, IF THAT OTHER PERSON HAD NOT ABANDONED THE

19     INVENTION OR KEPT IT SECRET;

20          IF THE PATENT OWNER AND THE ALLEGED INFRINGER DISPUTE WHO

21     IS A FIRST INVENTOR, THE PERSON WHO FIRST CONCEIVED OF THE

22     CLAIMED INVENTION AND FIRST REDUCED IT TO PRACTICE IS THE FIRST

23     INVENTOR.

24          IF ONE PERSON CONCEIVED OF THE CLAIMED INVENTION FIRST,

25     BUT REDUCED TO PRACTICE SECOND, THAT PERSON IS THE FIRST

1    INVENTOR ONLY IF THAT PERSON (A) BEGAN TO REDUCE THE CLAIMED

2    INVENTION TO PRACTICE BEFORE THE OTHER PARTY CONCEIVED OF IT;

3    AND, (B) CONTINUED TO WORK DILIGENTLY TO REDUCE IT TO PRACTICE.

4         A CLAIMED INVENTION IS "REDUCED TO PRACTICE" WHEN IT HAS

5    BEEN TESTED SUFFICIENTLY TO SHOW THAT IT WILL WORK FOR ITS

6    INTENDED PURPOSE OR WHEN IT IS FULLY DESCRIBED IN A PATENT

7    APPLICATION FILED WITH THE PTO.

8         IF THE CLAIMED INVENTION WAS ALREADY DESCRIBED IN ANOTHER

9    ISSUED U.S. PATENT OR PUBLISHED U.S. PATENT APPLICATION THAT

10   WAS BASED ON A PATENT APPLICATION FILED BEFORE THE PATENT

11   OWNER'S APPLICATION FILING DATE OR THE DATE OF CONCEPTION OF

12   THE CLAIMED INVENTION.

13        WHEN THE DATE OF CONCEPTION FOR A CLAIMED INVENTION OR

14   PRIOR INVENTION IS IN DISPUTE, YOU MUST DETERMINE THE DATES OF

15   CONCEPTION FOR THE CLAIMED INVENTIONS AND PRIOR INVENTIONS.

16        CONCEPTION IS THE MENTAL PART OF AN INVENTIVE ACT AND IS

17   PROVEN WHEN THE INVENTION IS SHOWN IN ITS COMPLETE FORM BY THE

18   DRAWINGS, DISCLOSURE TO ANOTHER, OR OTHER FORMS OF EVIDENCE

19   PRESENTED AT TRIAL.

20        NUMBER 33.

21        A PATENT CLAIM IS INVALID IF THE PATENT APPLICATION WAS

22   NOT FILED WITHIN THE TIME REQUIRED BY LAW.  THIS IS CALLED A

23   "STATUTORY BAR."

24        FOR A PATENT CLAIM TO BE INVALID BY A STATUTORY BAR, ALL

25   OF ITS REQUIREMENTS MUST HAVE BEEN PRESENT IN ONE PRIOR ART

1    REFERENCE DATED MORE THAN ONE YEAR BEFORE THE PATENT

2    APPLICATION WAS FILED.

3         HERE IS A LIST OF WAYS SAMSUNG CAN SHOW THAT AN APPLE

4    PATENT APPLICATION WAS NOT TIMELY FILED:

5         IF THE CLAIMED INVENTION WAS ALREADY PATENTED OR DESCRIBED

6    IN A PRINTED PUBLICATION ANYWHERE IN THE WORLD MORE THAN ONE

7    YEAR BEFORE THE EFFECTIVE FILING DATE OF THE PATENT

8    APPLICATION.  A REFERENCE IS A "PRINTED PUBLICATION" IF IT IS

9    ACCESSIBLE TO THOSE INTERESTED IN THE FIELD, EVEN IF IT IS

10   DIFFICULT TO FIND;

11        IF THE CLAIMED INVENTION WAS ALREADY BEING OPENLY USED IN

12   THE UNITED STATES MORE THAN ONE YEAR BEFORE THE EFFECTIVE

13   FILING DATE OF THE PATENT APPLICATION AND THAT USE WAS NOT

14   PRIMARILY AN EXPERIMENTAL USE (A) CONTROLLED BY THE INVENTOR,

15   AND (B) TO TEST WHETHER THE INVENTION WORKED FOR ITS INTENDED

16   PURPOSE;

17        IF A DEVICE OR METHOD USING THE CLAIMED INVENTION WAS SOLD

18   OR OFFERED FOR SALE IN THE UNITED STATES, AND THAT CLAIMED

19   INVENTION WAS READY FOR PATENTING, MORE THAN ONE YEAR BEFORE

20   THE EFFECTIVE FILING DATE OF THE PATENT APPLICATION;

21        IF THE PATENT OWNER HAD ALREADY OBTAINED A PATENT ON THE

22   CLAIMED INVENTION IN A FOREIGN COUNTRY BEFORE FILING THE

23   ORIGINAL U.S. APPLICATION, AND THE FOREIGN APPLICATION WAS

24   FILED AT LEAST ONE YEAR BEFORE THE U.S. APPLICATION.

25        FOR A CLAIM TO BE INVALID BECAUSE OF A STATUTORY BAR, ALL

1    OF THE CLAIMED REQUIREMENTS MUST HAVE BEEN EITHER (1) DISCLOSED

2    IN A SINGLE PRIOR ART REFERENCE, (2) IMPLICITLY DISCLOSED IN A

3    REFERENCE TO ONE SKILLED IN THE ART, OR (3) MUST HAVE BEEN

4    PRESENT IN THE REFERENCE, WHETHER OR NOT THAT WAS UNDERSTOOD AT

5    THE TIME.

6          THE DISCLOSURE IN A REFERENCE DOES NOT HAVE TO BE IN THE

7    SAME WORDS AS THE CLAIM, BUT ALL THE REQUIREMENTS MUST BE

8    THERE, EITHER DESCRIBED IN ENOUGH DETAIL OR NECESSARILY

9    IMPLIED, TO ENABLE SOMEONE OF ORDINARY SKILL IN THE FIELD

10   LOOKING AT THE REFERENCE TO MAKE AND USE THE CLAIMED INVENTION.

11         NUMBER 34.

12         NOT ALL INNOVATIONS ARE PATENTABLE.  A PATENT CLAIM IS

13   INVALID IF THE CLAIMED INVENTION WOULD HAVE BEEN OBVIOUS TO A

14   PERSON OF ORDINARY SKILL IN THE FIELD AT THE TIME OF INVENTION.

15         THIS MEANS THAT EVEN IF ALL OF THE REQUIREMENTS OF THE

16   CLAIM CANNOT BE FOUND IN A SINGLE PRIOR ART REFERENCE THAT

17   WOULD ANTICIPATE THE CLAIM OR CONSTITUTE A STATUTORY BAR TO

18   THAT CLAIM, A PERSON OF ORDINARY SKILL IN THE FIELD WHO KNEW

19   ABOUT ALL THIS PRIOR ART WOULD HAVE COME UP WITH THE CLAIMED

20   INVENTION.

21         THE ULTIMATE CONCLUSION OF WHETHER A CLAIM IS OBVIOUS

22   SHOULD BE BASED UPON YOUR DETERMINATION OF SEVERAL FACTUAL

23   DECISIONS.

24         FIRST, YOU MUST DECIDE THE LEVEL OF ORDINARY SKILL IN THE

25   FIELD THAT SOMEONE WOULD HAVE HAD AT THE TIME THE CLAIMED

1    INVENTION WAS MADE.  IN DECIDING THE LEVEL OF ORDINARY SKILL,

2    YOU SHOULD CONSIDER ALL THE EVIDENCE INTRODUCED AT TRIAL,

3    INCLUDING:

4        NUMBER 1.  THE LEVELS OF EDUCATION AND EXPERIENCE OF

5    PERSONS WORKING IN THE FIELD;

6        NUMBER 2.  THE TYPES OF PROBLEMS ENCOUNTERED IN THE FIELD;

7    AND,

8        NUMBER 3.  THE SOPHISTICATION OF THE TECHNOLOGY.

9        SECOND, YOU MUST DECIDE THE SCOPE AND CONTENT OF THE PRIOR

10   ART.  THE PARTIES DISAGREE AS TO WHETHER CERTAIN PRIOR ART

11   REFERENCES SHOULD BE INCLUDED IN THE PRIOR ART YOU USE TO

12   DECIDE THE VALIDITY OF CLAIMS AT ISSUE.

13       IN ORDER TO BE CONSIDERED AS PRIOR ART TO A PARTICULAR

14   PATENT AT ISSUE HERE, THESE REFERENCES MUST BE REASONABLY

15   RELATED TO THE CLAIMED INVENTION OF THAT PATENT.  A REFERENCE

16   IS REASONABLY RELATED IF IT IS IN THE SAME FIELD AS THE CLAIMED

17   INVENTION OR IS FROM ANOTHER FIELD TO WHICH A PERSON OF

18   ORDINARY SKILL IN THE FIELD WOULD LOOK TO SOLVE A KNOWN

19   PROBLEM.

20       THIRD, YOU MUST DECIDE WHAT DIFFERENCES, IF ANY, EXISTED

21   BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART.

22       FINALLY, YOU SHOULD CONSIDER ANY OF THE FOLLOWING FACTORS

23   THAT YOU FIND HAVE BEEN SHOWN BY THE EVIDENCE:

24       NUMBER 1.  COMMERCIAL SUCCESS OF A PRODUCT DUE TO THE

25   MERITS OF THE CLAIMED INVENTION;

3175

```
 1              NUMBER 2.  A LONG-FELT NEED FOR THE SOLUTION PROVIDED BY

 2      THE CLAIMED INVENTION;

 3              NUMBER 3.  UNSUCCESSFUL ATTEMPTS BY OTHERS TO FIND THE

 4      SOLUTION PROVIDED BY THE CLAIMED INVENTION;

 5              NUMBER 4.  COPYING OF THE CLAIMED INVENTION BY OTHERS;

 6              NUMBER 5.  UNEXPECTED AND SUPERIOR RESULTS FROM THE

 7      CLAIMED INVENTION;

 8              NUMBER 6.  ACCEPTANCE BY OTHERS OF THE CLAIMED INVENTION

 9      AS SHOWN BY PRAISE FROM OTHERS IN THE FIELD OR FROM THE

10      LICENSING OF THE CLAIMED INVENTION; AND,

11              NUMBER 7.  INDEPENDENT INVENTION OF THE CLAIMED INVENTION

12      BY OTHERS BEFORE OR AT ABOUT THE SAME TIME AS THE NAMED

13      INVENTOR THOUGHT OF IT.

14              THE PRESENCE OF ANY OF FACTORS 1 THROUGH 6 MAY BE

15      CONSIDERED BY YOU AS AN INDICATION THAT THE CLAIMED INVENTION

16      WOULD NOT HAVE BEEN OBVIOUS AT THE TIME THE CLAIMED

17      INVENTION -- AT THE TIME THE CLAIMED INVENTION WAS MADE, AND

18      THE PRESENCE OF FACTOR 7 MAY BE CONSIDERED BY YOU AS AN

19      INDICATION THAT THE CLAIMED INVENTION WOULD HAVE BEEN OBVIOUS

20      AT SUCH TIME.

21              ALTHOUGH YOU SHOULD CONSIDER ANY EVIDENCE OF THESE

22      FACTORS, THE RELEVANCE AND IMPORTANCE OF ANY OF THEM TO YOUR

23      DECISION ON WHETHER THE CLAIMED INVENTION WOULD HAVE BEEN

24      OBVIOUS IS UP TO YOU.

25              A PATENT CLAIM COMPOSED OF SEVERAL ELEMENTS IS NOT PROVED
```

1    OBVIOUS MERELY BY DEMONSTRATING THAT EACH OF ITS ELEMENTS WERE

2    INDEPENDENTLY KNOWN IN THE PRIOR ART.

3        IN EVALUATING WHETHER SUCH A CLAIM WOULD HAVE BEEN

4    OBVIOUS, YOU MAY CONSIDER WHETHER THE ALLEGED INFRINGER HAS

5    IDENTIFIED A REASON THAT WOULD HAVE PROMPTED A PERSON OF

6    ORDINARY SKILL IN THE FIELD TO COMBINE THE ELEMENTS OR CONCEPTS

7    FROM THE PRIOR ART IN THE SAME WAY AS IN THE CLAIMED INVENTION.

8        THERE IS NO SINGLE WAY TO DEFINE THE LINE BETWEEN TRUE

9    INVENTIVENESS ON THE ONE HAND (WHICH IS PATENTABLE) AND THE

10   APPLICATION OF COMMON SENSE AND ORDINARY SKILL TO SOLVE A

11   PROBLEM ON THE OTHER HAND (WHICH IS NOT PATENTABLE).

12       FOR EXAMPLE, MARKET FORCES OR OTHER DESIGN INCENTIVES MAY

13   BE WHAT PRODUCED A CHANGE, RATHER THAN TRUE INVENTIVENESS.

14       YOU MAY CONSIDER WHETHER THE CHANGE WAS MERELY THE

15   PREDICTABLE RESULT OF USING PRIOR ART ELEMENTS ACCORDING TO

16   THEIR KNOWN FUNCTIONS, OR WHETHER IT WAS THE RESULT OF TRUE

17   INVENTIVENESS.

18       YOU MAY ALSO CONSIDER WHETHER THERE IS SOME TEACHING OR

19   SUGGESTION IN THE PRIOR ART TO MAKE THE MODIFICATION OR

20   COMBINATION OF ELEMENTS CLAIMED IN THE PATENT.

21       ALSO, YOU MAY CONSIDER WHETHER THE INNOVATION APPLIES A

22   KNOWN TECHNIQUE THAT HAD BEEN USED TO IMPROVE A SIMILAR DEVICE

23   OR METHOD IN A SIMILAR WAY.

24       YOU MAY ALSO CONSIDER WHETHER THE CLAIMED INVENTION WOULD

25   HAVE BEEN OBVIOUS TO TRY, MEANING THAT THE CLAIMED INNOVATION

1    WAS ONE OF A RELATIVELY SMALL NUMBER OF POSSIBLE APPROACHES TO

2    THE PROBLEM WITH A REASONABLE EXPECTATION OF SUCCESS BY THOSE

3    SKILLED IN THE ART.

4         HOWEVER, YOU MUST BE CAREFUL NOT TO DETERMINE OBVIOUSNESS

5    USING THE BENEFIT OF HINDSIGHT; MANY TRUE INVENTIONS MIGHT SEEM

6    OBVIOUS AFTER THE FACT.

7         YOU SHOULD PUT YOURSELF IN THE POSITION OF A PERSON OF

8    ORDINARY SKILL IN THE FIELD AT THE TIME THE CLAIMED INVENTION

9    WAS MADE AND YOU SHOULD NOT CONSIDER WHAT IS KNOWN TODAY OR

10   WHAT IS LEARNED FROM THE TEACHING OF THE PATENT.

11        NUMBER 35.

12        I WILL INSTRUCT YOU ABOUT THE MEASURE OF DAMAGES FOR

13   CLAIMS OF PATENT INFRINGEMENT.  BY INSTRUCTING YOU ON DAMAGES,

14   I AM NOT SUGGESTING WHICH PARTY SHOULD WIN ON ANY ISSUE.  IF

15   YOU FIND THAT ANY PARTY INFRINGED ANY VALID AND ENFORCEABLE

16   CLAIM OF THE OTHER SIDE'S PATENTS, YOU MUST THEN DETERMINE THE

17   AMOUNT OF MONEY DAMAGES TO BE AWARDED TO THE PATENT OWNER TO

18   COMPENSATE IT FOR THE INFRINGEMENT.

19        THE AMOUNT OF THOSE DAMAGES MUST BE ADEQUATE TO COMPENSATE

20   THE PATENT OWNER FOR THE INFRINGEMENT.  A DAMAGES AWARD SHOULD

21   PUT THE PATENT OWNER IN APPROXIMATELY THE FINANCIAL POSITION IT

22   WOULD HAVE BEEN IN HAD THE INFRINGEMENT NOT OCCURRED, BUT IN NO

23   EVENT MAY THE DAMAGES AWARD BE LESS THAN A REASONABLE ROYALTY.

24   YOU SHOULD KEEP IN MIND THAT THE DAMAGES YOU AWARD ARE MEANT TO

25   COMPENSATE THE PATENT OWNER AND NOT TO PUNISH AN INFRINGER.

1    EACH PATENT OWNER HAS THE BURDEN TO PERSUADE YOU OF THE

2    AMOUNT OF ITS DAMAGES.  YOU SHOULD AWARD ONLY THOSE DAMAGES

3    THAT THE PATENT OWNER PROVES IT SUFFERED BY A PREPONDERANCE OF

4    THE EVIDENCE.

5    WHILE A PATENT OWNER IS NOT REQUIRED TO PROVE ITS DAMAGES

6    WITH MATHEMATICAL PRECISION, IT MUST PROVE THEM WITH REASONABLE

7    CERTAINTY.

8    A PATENT OWNER IS NOT ENTITLED TO DAMAGES THAT ARE REMOTE

9    OR SPECULATIVE.

10   NUMBER 36.

11   IN THIS CASE, APPLE SEEKS TO RECOVER LOST PROFITS FOR SOME

12   OF SAMSUNG'S SALES OF ALLEGEDLY INFRINGING PRODUCTS, AND A

13   REASONABLE ROYALTY ON THE REST OF SAMSUNG'S ALLEGEDLY

14   INFRINGING SALES.

15   SAMSUNG DOES NOT SEEK LOST PROFITS FOR INFRINGEMENT OF ITS

16   PATENTS.

17   TO RECOVER LOST PROFITS FOR INFRINGING SALES, APPLE MUST

18   SHOW THAT BUT FOR THE INFRINGEMENT, THERE IS A REASONABLE

19   PROBABILITY THAT APPLE WOULD HAVE MADE SALES THAT SAMSUNG MADE

20   OF THE INFRINGING PRODUCTS.

21   APPLE MUST SHOW THE SHARE OF SAMSUNG'S SALES THAT APPLE

22   WOULD HAVE MADE IF THE INFRINGING PRODUCTS HAD NOT BEEN ON THE

23   MARKET.

24   YOU MUST ALLOCATE THE LOST PROFITS BASED UPON THE CUSTOMER

25   DEMAND FOR THE PATENTED FEATURE OF THE INFRINGING PRODUCTS.

1    THIS IS, YOU MUST DETERMINE WHICH PROFITS DERIVE FROM THE

2    PATENTED INVENTION THAT SAMSUNG SELLS, AND NOT FROM OTHER

3    FEATURES OF THE INFRINGING PRODUCTS.

4         NUMBER 37.

5         APPLE IS ENTITLED TO LOST PROFITS IF APPLE PROVES ALL OF

6    THE FOLLOWING:

7         NUMBER 1.  THAT THERE WAS DEMAND FOR THE PATENTED

8    PRODUCTS;

9         NUMBER 2.  THAT THERE WERE NO ACCEPTABLE NON-INFRINGING

10   SUBSTITUTES FOR EACH OF THE INFRINGING PRODUCTS, OR, IF THERE

11   WERE, THE NUMBER OF THE SALES OF EACH PRODUCT MADE BY SAMSUNG

12   THAT APPLE WOULD HAVE MADE DESPITE THE AVAILABILITY OF OTHER

13   NON-INFRINGING SUBSTITUTES.

14        THE TIME PERIOD RELEVANT TO DETERMINING AVAILABILITY OF A

15   NON-INFRINGING SUBSTITUTE IS THE ENTIRE PERIOD DURING WHICH

16   SAMSUNG INFRINGED APPLE'S PATENTS.  AN ALTERNATIVE MAY BE

17   CONSIDERED AVAILABLE AS A POTENTIAL SUBSTITUTE EVEN IF IT WAS

18   NOT ACTUALLY ON SALE DURING THE INFRINGEMENT PERIOD.

19        FACTORS SUGGESTING THAT THE ALTERNATIVE WAS ACCEPTABLE AND

20   AVAILABLE INCLUDE, BUT ARE NOT LIMITED TO, WHETHER THE

21   MATERIAL, EXPERIENCE, AND KNOW-HOW FOR THE ALLEGED SUBSTITUTE

22   WERE READILY AVAILABLE.

23        FACTORS SUGGESTING THAT THE ALTERNATIVE WAS NOT ACCEPTABLE

24   AND AVAILABLE INCLUDE, BUT ARE NOT LIMITED TO, WHETHER THE

25   MATERIAL WAS OF SUCH HIGH COST AS TO RENDER THE ALTERNATIVE

3180

1       UNAVAILABLE AND WHETHER SAMSUNG HAD TO DESIGN OR INVENT AROUND

2       THE PATENTED TECHNOLOGY (OR OTHER PATENTED TECHNOLOGY) TO

3       DEVELOP AN ALLEGED SUBSTITUTE;

4            NUMBER 3.  THAT APPLE HAD THE MANUFACTURING AND MARKETING

5       CAPACITY TO MAKE ANY INFRINGING SALES ACTUALLY MADE BY SAMSUNG

6       AND FOR WHICH APPLE SEEKS AN AWARD OF LOST PROFITS; AND,

7            NUMBER 4.  THE AMOUNT OF PROFIT THAT APPLE WOULD HAVE MADE

8       IF SAMSUNG HAD NOT INFRINGED.

9            NUMBER 38.  APPLE MAY CALCULATE ITS LOST PROFITS ON ANY

10      LOST SALES BY COMPUTING THE LOST REVENUE FOR SALES IT CLAIMS IT

11      WOULD HAVE MADE BUT FOR THE INFRINGEMENT AND SUBTRACTING FROM

12      THAT FIGURE THE AMOUNT OF ADDITIONAL COSTS OR EXPENSES IT WOULD

13      HAVE INCURRED IN MAKING THOSE LOST SALES, SUCH AS COSTS OF

14      GOODS, SALES COSTS, PACKAGING COSTS, AND SHIPPING COSTS.

15           NUMBER 39.

16           ONE WAY APPLE MAY PROVE THE NUMBER OF SALES IT WOULD HAVE

17      MADE IF THE INFRINGEMENT HAD NOT HAPPENED IS TO PROVE ITS SHARE

18      OF THE RELEVANT MARKET EXCLUDING INFRINGING PRODUCTS.  YOU MAY

19      AWARD APPLE A SHARE OF PROFITS EQUAL TO THAT MARKET SHARE.

20           IN DECIDING APPLE'S MARKET SHARE, YOU MUST DECIDE WHICH

21      PRODUCTS ARE IN APPLE'S MARKET.  PRODUCTS ARE IN THE SAME

22      MARKET IF THEY ARE SUFFICIENTLY SIMILAR TO COMPETE AGAINST EACH

23      OTHER.  TWO PRODUCTS ARE SUFFICIENTLY SIMILAR IF ONE DOES NOT

24      HAVE A SIGNIFICANTLY HIGHER PRICE THAN OR POSSESS

25      CHARACTERISTICS SIGNIFICANTLY DIFFERENT THAN THE OTHER.

1          NUMBER 40.

2          BOTH APPLE AND SAMSUNG SEEK A REASONABLE ROYALTY FOR THE

3     INFRINGEMENT OF THEIR RESPECTIVE PATENTS.

4          IF APPLE HAS NOT PROVED ITS CLAIM FOR LOST PROFITS, OR HAS

5     PROVED ITS CLAIM FOR LOST PROFITS FOR ONLY A PORTION OF THE

6     INFRINGING SALES, THEN APPLE SHOULD BE AWARDED A REASONABLE

7     ROYALTY FOR ALL INFRINGING SAMSUNG SALES FOR WHICH APPLE HAS

8     NOT BEEN AWARDED LOST PROFITS DAMAGES.

9          SAMSUNG DOES NOT MAKE A CLAIM FOR LOST PROFITS.  SAMSUNG

10    SHOULD BE AWARDED A REASONABLE ROYALTY FOR ALL INFRINGING APPLE

11    SALES.

12         I THINK IT'S TIME TO TAKE ONE MORE STAND UP BREAK FOR A

13    MINUTE.

14         (PAUSE IN PROCEEDINGS.)

15           THE COURT:  NUMBER 41.

16         A ROYALTY IS A PAYMENT MADE TO A PATENT OWNER IN EXCHANGE

17    FOR THE RIGHT TO MAKE, USE, OR SELL THE CLAIMED INVENTION.

18    THIS RIGHT IS CALLED A "LICENSE."

19         A REASONABLE ROYALTY IS THE PAYMENT FOR THE LICENSE THAT

20    WOULD HAVE RESULTED FROM A HYPOTHETICAL NEGOTIATION BETWEEN THE

21    PATENT OWNER AND THE INFRINGER TAKING PLACE AT THE TIME WHEN

22    THE INFRINGING ACTIVITY FIRST BEGAN.

23         IN CONSIDERING THE NATURE OF THIS NEGOTIATION, YOU MUST

24    ASSUME THAT THE PATENT OWNER AND THE INFRINGER WOULD HAVE ACTED

25    REASONABLY AND WOULD HAVE ENTERED INTO A LICENSE AGREEMENT.

1      YOU MUST ALSO ASSUME THAT BOTH PARTIES BELIEVED THE PATENT

2  WAS VALID AND INFRINGED.

3      YOUR ROLE IS TO DETERMINE WHAT THE RESULT OF THAT

4  NEGOTIATION WOULD HAVE BEEN.  THE TEST FOR DAMAGES IS WHAT

5  ROYALTY WOULD HAVE RESULTED FROM THE HYPOTHETICAL NEGOTIATION

6  AND NOT SIMPLY WHAT EITHER PARTY WOULD HAVE PREFERRED.

7      A ROYALTY CAN BE CALCULATED IN SEVERAL DIFFERENT WAYS AND

8  IT IS FOR YOU TO DETERMINE WHICH WAY IS THE MOST APPROPRIATE

9  BASED ON THE EVIDENCE YOU HAVE HEARD.

10      ONE WAY TO CALCULATE A ROYALTY IS TO DETERMINE WHAT IS

11  CALLED AN "ONGOING ROYALTY."  TO CALCULATE AN ONGOING ROYALTY,

12  YOU MUST FIRST DETERMINE THE "BASE," THAT IS, THE PRODUCT ON

13  WHICH THE INFRINGER IS TO PAY.

14      YOU THEN NEED TO MULTIPLY THE REVENUE THE DEFENDANT

15  OBTAINED FROM THAT BASE BY THE "RATE" OR PERCENTAGE THAT YOU

16  FIND WOULD HAVE RESULTED FROM THE HYPOTHETICAL NEGOTIATION.

17      FOR EXAMPLE, IF THE PATENT COVERS A NAIL, AND THE NAIL

18  SELLS FOR $1, AND THE LICENSE SOLD 200 NAILS, THE BASE REVENUE

19  WOULD BE $200.  IF THE RATE YOU FIND WOULD HAVE RESULTED FROM

20  THE HYPOTHETICAL NEGOTIATION IS 1 PERCENT, THEN THE ROYALTY

21  WOULD BE $2, OR THE RATE OF .01 TIMES THE BASE REVENUE OF $200.

22      IF THE PATENT COVERS ONLY PART OF THE PRODUCT THAT THE

23  INFRINGER SELLS, THEN THE BASE WOULD NORMALLY BE ONLY THAT

24  FEATURE OR COMPONENT.  FOR EXAMPLE, IF YOU FIND THAT FOR A $100

25  CAR, THE PATENTED FEATURE IS THE TIRES WHICH SELL FOR $5, THE

```
 1      BASE REVENUE WOULD BE $5.

 2           HOWEVER, IN A CIRCUMSTANCE IN WHICH THE PATENTED FEATURE

 3      IS THE REASON CUSTOMERS BUY THE WHOLE PRODUCT, THE BASE REVENUE

 4      COULD BE THE VALUE OF THE WHOLE PRODUCT.

 5           THE PATENT OWNER MIGHT ALSO SEEK A ROYALTY THAT IS NOT

 6      CALCULATED AS A PERCENTAGE OF THE NET SALES FOR THE WHOLE

 7      PRODUCT, SUCH AS A ROYALTY TO BE PAID PER UNIT SOLD.

 8           A SECOND WAY TO CALCULATE A ROYALTY IS TO DETERMINE A

 9      ONE-TIME LUMP SUM PAYMENT THAT THE INFRINGER WOULD HAVE PAID AT

10      THE TIME OF THE HYPOTHETICAL NEGOTIATION FOR A LICENSE COVERING

11      ALL SALES OF THE LICENSED PRODUCT BOTH PAST AND FUTURE.

12           THIS DIFFERS FROM PAYMENT OF AN ONGOING ROYALTY BECAUSE

13      WITH AN ONGOING ROYALTY, THE LICENSEE PAYS BASED ON THE REVENUE

14      OF ACTUAL LICENSED PRODUCTS IT SELLS.

15           WHEN A ONE-TIME LUMP SUM IS PAID, THE INFRINGER PAYS A

16      SINGLE PRICE FOR A LICENSE COVERING BOTH PAST AND FUTURE

17      INFRINGING SALES.

18           IN DETERMINING A REASONABLE ROYALTY, YOU MAY CONSIDER THE

19      FOLLOWING FACTORS:

20           NUMBER 1.  THE ROYALTIES RECEIVED BY THE PATENT OWNER FOR

21      THE LICENSING OF THE PATENT-IN-SUIT, PROVING OR TENDING TO

22      PROVE AN ESTABLISHED ROYALTY.

23           NUMBER 2.  THE RATES PAID BY THE LICENSEE FOR THE USE OF

24      OTHER PATENTS COMPARABLE TO THE PATENT-IN-SUIT.

25           NUMBER 3.  THE NATURE AND SCOPE OF THE LICENSE, AS
```

1    EXCLUSIVE OR NONEXCLUSIVE, OR AS RESTRICTED OR NONRESTRICTED IN

2    TERMS OF TERRITORY OR WITH RESPECT TO WHOM THE MANUFACTURED

3    PRODUCT MAY BE SOLD.

4         NUMBER 4.  THE LICENSOR'S ESTABLISHED POLICY AND MARKETING

5    PROGRAM TO MAINTAIN HIS OR HER PATENT MONOPOLY BY NOT LICENSING

6    OTHERS TO USE THE INVENTION OR BY GRANTING LICENSES UNDER

7    SPECIAL CONDITIONS DESIGNED TO PRESERVE THAT MONOPOLY.

8         NUMBER 5.  THE COMMERCIAL RELATIONSHIP BETWEEN THE

9    LICENSOR AND THE LICENSEE, SUCH AS WHETHER THEY ARE COMPETITORS

10   IN THE SAME TERRITORY IN THE SAME LINE OF BUSINESS, OR WHETHER

11   THEY ARE INVENTOR AND PROMOTER.

12        NUMBER 6.  THE EFFECT OF SELLING THE PATENTED SPECIALTY IN

13   PROMOTING SALES OF OTHER PRODUCTS OF THE LICENSEE, THE EXISTING

14   VALUE OF THE INVENTION TO THE LICENSOR AS A GENERATOR OF SALES

15   OF HIS NONPATENTED ITEMS, AND THE EXTENT OF SUCH DERIVATIVE FOR

16   CONVOYED SALES.

17        NUMBER 7.  THE DURATION OF THE PATENT AND THE TERM OF THE

18   LICENSE.

19        NUMBER 8.  THE ESTABLISHED PROFITABILITY OF THE PRODUCT

20   MADE UNDER THE PATENTS, ITS COMMERCIAL SUCCESS, AND ITS CURRENT

21   POPULARITY.

22        NUMBER 9.  THE UTILITY AND ADVANTAGES OF THE PATENTED

23   PROPERTY OVER THE OLD MODES OR DEVICES, IF ANY, THAT HAD BEEN

24   USED FOR WORKING OUT SIMILAR RESULTS.

25        NUMBER 10.  THE NATURE OF THE PATENTED INVENTION, THE

1    CHARACTER OF THE COMMERCIAL EMBODIMENT OF IT AS OWNED AND

2    PRODUCED BY THE LICENSOR, AND THE BENEFITS TO THOSE WHO HAVE

3    USED THE INVENTION.

4          NUMBER 11.  THE EXTENT TO WHICH THE INFRINGER HAS MADE USE

5    OF THE INVENTION AND ANY EVIDENCE PROBATIVE OF THE VALUE OF

6    THAT USE.

7          NUMBER 12.  THE PORTION OF THE PROFIT OR OF THE SELLING

8    PRICE THAT MAY BE CUSTOMARY IN THE PARTICULAR BUSINESS OR IN

9    COMPARABLE BUSINESS TO ALLOW FOR THE USE OF INVENTION OR

10   ANALOGOUS INVENTIONS.

11         NUMBER 13.  THE PORTION OF THE REALIZABLE PROFITS THAT

12   SHOULD BE CONSIDERED TO THE INVENTION AS DISTINGUISHED FROM

13   NONPATENTED ELEMENTS, THE MANUFACTURING PROCESS, BUSINESS

14   RISKS, OR SIGNIFICANT FEATURES OR IMPROVEMENTS ADDED BY THE

15   INFRINGER.

16         NUMBER 14.  THE OPINION AND TESTIMONY OF QUALIFIED

17   EXPERTS.

18         NUMBER 15.  THE AMOUNT THAT A LICENSOR (SUCH AS THE PATENT

19   OWNER) AND A LICENSEE (SUCH AS THE INFRINGER) WOULD HAVE AGREED

20   UPON (AT THE TIME THE INFRINGE ACTION BEGAN) IF BOTH HAD BEEN

21   REASONABLY AND VOLUNTARILY TRYING TO REACH AN AGREEMENT; THAT

22   IS, THE AMOUNT WHICH A PRUDENT LICENSEE -- WHO DESIRED, AS A

23   BUSINESS PROPOSITION, TO OBTAIN A LICENSE TO MANUFACTURE AND

24   SELL A PARTICULAR ARTICLE EMBODYING THE PATENTED INVENTION --

25   WOULD HAVE BEEN WILLING TO PAY AS A ROYALTY, AND YET BE ABLE TO

1    MAKE A REASONABLE PROFIT AND WHICH AMOUNT WOULD HAVE BEEN

2    ACCEPTABLE BY A PRUDENT PATENT OWNER WHO WAS WILLING TO GRANT A

3    LICENSE.

4         IT IS UP TO YOU, BASED ON THE EVIDENCE, TO DECIDE WHAT

5    TYPE OF ROYALTY IS APPROPRIATE IN THIS CASE.

6         NUMBER 42.

7         DAMAGES THAT APPLE MAY BE AWARDED BY YOU COMMENCE ON THE

8    DATE THAT SAMSUNG ELECTRONICS COMPANY, SAMSUNG ELECTRONICS

9    AMERICA, AND/OR SAMSUNG TELECOMMUNICATIONS AMERICA HAS BOTH

10   INFRINGED AND BEEN NOTIFIED OF THE PATENT OR PATENTS IT

11   INFRINGED.

12        YOU MUST DETERMINE THE DATE THAT EACH SAMSUNG ENTITY

13   RECEIVED WRITTEN NOTICE OF THE PATENTS AND THE PRODUCTS ALLEGED

14   TO INFRINGE.

15        IT IS UNDISPUTED THAT APPLE INFORMED SAMSUNG ELECTRONICS

16   COMPANY OF THE '647 PATENT ON AUGUST 4TH, 2010, AND THAT

17   APPLE'S LAWSUIT INFORMED EACH SAMSUNG ENTITY OF ALL OF APPLE'S

18   ASSERTED PATENTS ON FEBRUARY 8TH OF 2012.

19        DAMAGES SAMSUNG MAY BE AWARDED COMMENCE ON THE DATE THAT

20   APPLE HAS BOTH INFRINGED AND BEEN NOTIFIED OF THE PATENT OR

21   PATENTS IT INFRINGED.  YOU MUST DETERMINE THE DATE THAT APPLE

22   RECEIVED WRITTEN NOTICE OF THE PATENTS AND THE PRODUCTS ALLEGED

23   TO INFRINGE.

24        IT IS UNDISPUTED THAT SAMSUNG'S LAWSUIT INFORMED APPLE OF

25   ALL OF SAMSUNG'S ASSERTED PATENTS ON APRIL 18TH, 2012.

1          NUMBER 43.

2          YOU SHOULD AWARD ANY REMEDY TO WHICH A PARTY HAS PROVEN IT

3     IS ENTITLED WITH RESPECT TO EACH SALE OF AN ACCUSED SMARTPHONE

4     OR TABLET, EXCEPT THAT YOU SHOULD NOT AWARD A PARTY TWICE FOR

5     THE SAME SALE OF ANY ACCUSED SMARTPHONE OR TABLET.

6          THIS MEANS THAT IF YOU AWARD LOST PROFITS FOR THE SALE OF

7     A CERTAIN NUMBER OF ACCUSED SMARTPHONES OR TABLETS, YOU MAY NOT

8     ALSO AWARD REASONABLE ROYALTIES FOR THOSE SAME SALES.

9          IF YOU AWARD REASONABLE ROYALTIES FOR THE SALE OF A

10    CERTAIN NUMBER OF ACCUSED SMARTPHONES OR TABLETS, YOU MAY NOT

11    AWARD LOST PROFITS FOR THOSE SAME SALES.

12         YOU DO NOT HAVE TO USE THE SAME THEORY TO CALCULATE

13    DAMAGES FOR EVERY SALE, HOWEVER.  FOR EXAMPLE, AN AWARD MAY BE

14    SPLIT BETWEEN LOST PROFITS FOR SOME SALES AND A REASONABLE

15    ROYALTY FOR THE REMAINDER OF SALES.

16         FOR ANY SALE WHERE YOU MEASURE DAMAGES BY A REASONABLE

17    ROYALTY OR LOST PROFITS, YOU MAY INCLUDE ROYALTY AMOUNTS FOR

18    EACH PATENT THAT YOU FIND VALID AND INFRINGED BY THE SALE OR

19    LOST PROFITS ON THAT SALE.

20         IF A SALE IS AWARDED ONE FORM OF MONETARY RECOVERY, THAT

21    SAME SALE CANNOT BE AWARDED ANOTHER FORM OF MONETARY RECOVERY.

22         ALL RIGHT.  WITH THAT, I'M GOING TO EXCUSE YOU FOR TODAY

23    AND ASK THAT YOU PLEASE RETURN AT 9:00 O'CLOCK TOMORROW FOR

24    CLOSING ARGUMENTS.

25         AGAIN, PLEASE DON'T RESEARCH OR DISCUSS THE CASE WITH

```
1        ANYONE, AND WE'LL SEE YOU IN THE MORNING.

2             THANK YOU FOR YOUR PATIENCE AND YOUR SERVICE.

3             (JURY OUT AT 2:25 P.M.)

4               THE COURT:  THE RECORD SHOULD REFLECT THE JURORS THAT

5        LEFT THE COURTROOM.

6             PLEASE TAKE A SEAT.  WE HAVE A FEW HOUSEKEEPING ITEMS THAT

7        I WOULD LIKE TO TAKE CARE OF NOW.

8               MR. MCELHINNY, YOU LOOK LIKE YOU HAVE SOMETHING TO SAY.

9               MR. MCELHINNY:  YOUR HONOR, JUST FOR THE RECORD, AT

10       THIS TIME APPLE RENEWS AND PRESERVES ITS OBJECTIONS TO THE JURY

11       INSTRUCTIONS THAT YOUR HONOR HAS PREVIOUSLY CONSIDERED AND

12       PRESERVED.

13            THANK YOU.

14              MS. MAROULIS:  WE DO, TOO.

15              THE COURT:  UNDERSTOOD.  I UNDERSTAND THAT EVERYONE

16       HAS --

17              MR. MCELHINNY:  I'M SORRY.  AND TO THE VERDICT FORM,

18       YOUR HONOR.

19              THE COURT:  I UNDERSTOOD THAT BOTH SIDES HAVE

20       PRESERVED YOUR OBJECTIONS TO BOTH THE JURY INSTRUCTIONS AND THE

21       VERDICT FORM.

22            OKAY.  LET'S TAKE CARE OF SOME HOUSEKEEPING MATTERS.

23            WILL YOU HAVE ANY NEW DEMONSTRATIVES FOR THE '647 PATENT

24       SEPARATE FROM WHAT YOU FILED YESTERDAY AFTERNOON?  WILL YOU

25       HAVE ANY NEW DEMONSTRATIVES?
```

```
 1              MS. KREVANS:  BY AGREEMENT, YOUR HONOR, NO ONE USED

 2     ANYTHING THAT HAD NOT BEEN PREVIOUSLY SHOWN, SO THE ANSWER IS

 3     NOTHING NEW FROM TODAY.

 4              THE COURT:  OKAY.  DO YOU AGREE WITH THAT,

 5     MR. NELSON, MR. QUINN?

 6              MR. NELSON:  YEAH.  IT WOULD PERHAPS --

 7              THE COURT:  OKAY.

 8              MR. NELSON:  THE TESTIMONY, BUT THOSE ARE NOT THINGS

 9     THAT WE EXCHANGED, SO --

10              THE COURT:  OKAY.  SO THEN WHAT YOU FILED YESTERDAY

11     AFTERNOON ARE THE ONLY OBJECTIONS TO CLOSINGS THAT THE COURT

12     NEEDS TO RULE ON?

13              MS. MAROULIS:  CORRECT, YOUR HONOR.

14              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  I JUST

15     WANTED TO GET THAT CLARIFICATION.

16          I HAVE A FEW DISCREPANCIES.  IT'S PRIMARILY DEALING WITH

17     SEALING ON THE EXHIBIT LISTS.  SO WHAT I'D LIKE TO DO IS I'LL

18     JUST FILE IT, AND THEN IF WE COULD HAVE A RESPONSE BACK, AS

19     WE'VE DONE WITH THE VERDICT FORM AND SOME OTHER THINGS, IF YOU

20     CAN GET BACK TO ME ON, YOU KNOW, WHETHER PERHAPS MY NOTES ARE

21     WRONG OR JUST THAT -- I JUST WANTED TO ALERT YOU THAT THAT

22     ORDER WILL BE FORTHCOMING SOME TIME TODAY.

23          BUT I'M GOING TO PRIORITIZE FIRST GETTING YOU A RULING ON

24     THE CLOSING OBJECTIONS SO YOU HAVE THAT AS SOON AS POSSIBLE FOR

25     YOUR PREPARATION.
```

```
 1              WHERE ARE THE PARTIES AS TO THE ACTUAL EXHIBITS?  HAVE YOU

 2     NOW STIPULATED TO A SET THAT IS SATISFACTORY TO BOTH SIDES?

 3              MS. MAROULIS:  YOUR HONOR, A GROUP OF PEOPLE ARE

 4     MEETING AT 4:00 O'CLOCK TODAY TO INSPECT AND THEN THEY WILL

 5     FINALIZE WHAT'S GOING TO GO TO THE JURY.

 6              THE COURT:  OKAY.  ALL RIGHT.  I GUESS YOU'LL LET ME

 7     KNOW IF THERE'S ANY ISSUE.

 8              MS. KREVANS:  YEAH.  AND, YOUR HONOR, THERE SHOULDN'T

 9     BE AN ISSUE.  WE JUST NEED TO GET TOGETHER AND AGREE THAT

10     EVERYTHING IS IN THE BINDERS, THAT IT'S ALL THE RIGHT PAGES.

11              THE COURT:  SURE.

12              MS. KREVANS:  AND WE WILL BRING IT TO THE COURT

13     TOMORROW AND IT WILL BE AGREED UPON AT THAT TIME.  IF THERE'S

14     ANY ISSUE, WE'LL LET YOU KNOW IN ADVANCE.

15              THE COURT:  OKAY.  ALL RIGHT.  THAT'S FINE.

16           NOW, I HAVE A COPY OF THESE GREG CHRISTIE ARTICLES THAT

17     MR. PRICE HAD GIVEN ME AT THE VERY BEGINNING OF THE CASE BEFORE

18     JURY SELECTION, AND I WOULD LIKE TO JUST LODGE THIS FOR THE

19     RECORD.  I THINK IT PROBABLY -- WE MIGHT AS WELL HAVE A RECORD

20     OF IT.

21           SO CAN I HAVE AN EXHIBIT?  LET'S GO AHEAD AND GIVE IT A

22     NUMBER JUST FOR PURPOSES OF THE RECORD.  I'LL TELL YOU WHAT IS

23     THE LAST NUMBER THAT I HAVE.

24              MS. MAROULIS:  IT SHOULD BE ABOUT DX 514.  IS THAT

25     WHAT YOUR HONOR HAS?
```

```
 1              THE CLERK:  THAT'S THE LAST ONE I HAVE.

 2              THE COURT:  WHAT WOULD YOU LIKE THIS ONE TO BE?

 3              MS. MAROULIS:  YOU KNOW, TO BE SAFE, LET'S DO 520,

 4    DX 520.

 5              THE COURT:  OKAY.  THAT'S FINE.

 6         (DEFENDANTS' EXHIBIT 520 WAS MARKED FOR IDENTIFICATION.)

 7              THE COURT:  SO DX 520.  AND THIS IS ONLY LODGED.  IT

 8    IS NOT BEING ADMITTED.

 9              MS. KREVANS:  YOUR HONOR, COULD I REQUEST THAT

10    SAMSUNG PROVIDE US WITH A COPY.  I THINK IT WAS HANDED ON SOME

11    DAY EARLY IN THE TRIAL, AND I DON'T EVEN REMEMBER EXACTLY WHEN,

12    BUT I'M NOT SURE THAT WE HAVE IT.

13              MS. MAROULIS:  WE'LL FIND IT, YOUR HONOR, AND PROVIDE

14    IT.

15              THE COURT:  OKAY.  AND I'LL PLACE ON THE RECORD,

16    THERE'S AN NPR, "ALL TECH CONSIDERED" ARTICLE BY STEVE HENN

17    DATED MARCH 26TH OF 2014, ENTITLED "FROM THE BIRTH OF THE

18    IPHONE TO AN ERA OF LAWSUITS."

19         THERE IS A "WALL STREET JOURNAL" ARTICLE DATED MARCH 25TH

20    OF 2014 BY DAISUKE WAKABAYASHI ENTITLED "APPLE ENGINEER RECALLS

21    IPHONE'S BIRTH."

22         THERE IS A "CNN MONEY" ARTICLE BY PHILIP ELMER-DEWITT

23    DATED MARCH 26TH, 2014 ENTITLED "AHEAD OF SECOND SAMSUNG TRIAL,

24    APPLES TOSSES THE PRESS A BONE."

25              AND THEN THERE'S A GOOGLE SEARCH OF "GREG CHRISTIE APPLE"
```

1    THAT WAS CONDUCTED ON MARCH 30TH OF 2014.  IT SAYS 6:22 P.M.

2    I'M NOT SURE HOW THAT'S -- OKAY.  AND IT -- IT SAYS 2,320

3    RESULTS, AND IT'S -- THIS ONE IS TWO PAGES.  WELL, IT HAS A

4    SERIES OF PAGES THAT SAY 1 OF 2, 1 OF 2, BUT I THINK IT'S THE

5    FULL SET.  AND IT TOTALS ONE, TWO, THREE, FOUR, FIVE, SIX,

6    SEVEN PAGES.

7         AND THEN THERE'S ANOTHER YAHOO NEWS SEARCH DATED

8    MARCH 30TH OF 2014 AT 6:34 P.M.  THE SEARCH TERM PUT IN WAS

9    "GREG CHRISTIE APPLE," AND THIS IS THREE PAGES OF JUST SEARCH

10   RESULTS.  OKAY?

11        SO WE'VE TAKEN CARE OF THAT ISSUE.

12        BUT I WOULD ASK, MS. MAROULIS, IF YOU WOULD GIVE

13   MS. KREVANS A COPY IF THEY DON'T HAVE ONE.

14            MS. MAROULIS:  YES, YOUR HONOR.

15            THE COURT:  OKAY.  WHAT ELSE?  IS THERE ANYTHING ELSE

16    THAT WE NEED TO RESOLVE BEFORE TOMORROW?

17        I ASSUME THAT YOU ALL HAVE GIVEN YOUR BEST CONTACT

18    INFORMATION TO MS. PARKER BROWN IN CASE WE GET JURY NOTES.  I

19    ASSUME YOU WANT TO ALL BE PHYSICALLY PRESENT --

20            THE CLERK:  NOT YET.

21            THE COURT:  -- TO DISCUSS THEM.

22            MS. KREVANS:  WE WILL GIVE HER THOSE TOMORROW

23    MORNING, YOUR HONOR.

24            THE COURT:  OKAY.  IF BOTH SIDES WOULD PLEASE GIVE

25    MS. PARKER BROWN YOUR BEST LIST, LET US NOW HOW YOU WANT TO BE

```
1        CONTACTED, TEXT, E-MAIL, PHONE CALL.

2             AND I ASSUME YOU COULD BE PRESENT IN THE COURTROOM IN,

3    WHAT, ABOUT TEN MINUTES?  OR WHAT'S YOUR --

4             MS. KREVANS:  YES, YOUR HONOR.

5             MS. MAROULIS:  YES, YOUR HONOR.

6             THE COURT:  ABOUT TEN MINUTES.  OKAY.

7         ALL RIGHT.  WHAT, IF ANYTHING, DO WE NEED TO ORGANIZE FOR

8    TOMORROW?  ANYTHING ELSE?

9             MR. MCELHINNY:  WE'LL HAVE TO CHANGE THE COURTROOM

10   AROUND, BUT THAT TAKES ABOUT TEN MINUTES IN THE MORNING.

11            THE COURT:  YOU HAVE TO CHANGE WHAT?

12            MR. MCELHINNY:  JUST TO MOVE THE TABLE AROUND IN THE

13   COURTROOM SO THAT WE FACE THE JURY.

14            THE COURT:  OH, THAT'S FINE.  THAT'S FINE.

15        ANYTHING ELSE THAT WE NEED TO RESOLVE TODAY?

16        OKAY.  OTHERWISE I'LL TRY TO GET YOU THE RULINGS ON THE

17   CLOSING OBJECTIONS AS QUICKLY AS POSSIBLE.  AND PLEASE BE ON

18   THE LOOKOUT FOR JUST HAVING TO DO SOME HOUSEKEEPING ON THE

19   EXHIBIT LISTS.

20        OKAY?  ALL RIGHT.  THANK YOU ALL.  WE'LL SEE YOU TOMORROW.

21            MR. MCELHINNY:  THANK YOU, YOUR HONOR.

22            THE COURT:  9:00 O'CLOCK.

23            MR. QUINN:  THANK YOU, YOUR HONOR.

24            (WHEREUPON, THE EVENING RECESS WAS TAKEN.)

25
```

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18            DATED:  APRIL 28, 2014

19

20

21

22

23

24

25