QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION**<br><br>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Date:     July 10, 2014<br>Time     1:30 PM<br>Place:    Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

02198.51981/6045740.14

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................................ 1

LEGAL STANDARD ................................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

I.    Apple Has Suffered No Irreparable Harm ........................................................................ 2

    A.    Apple Lost No Sales And, Even If It Had, Cannot Meet The Causal Nexus Requirement To Show Irreparable Harm From Lost Sales ......................... 2

        1.    The Jury's Verdict Rejects Apple's Claim Of Lost Sales From Infringement ................................................................................. 3

        2.    The Court Previously Rejected Apple's Claim That Infringement Of These Patents Caused Irreparable Harm ......................... 4

        3.    Dr. Hauser's Conjoint Survey Is Unreliable And Not A Basis For Concluding That A Causal Nexus Exists ................................ 5

        4.    There Is No Evidence Samsung Believes These Features Have Any Impact On Consumers ................................................................. 6

        5.    Dr. Vellturo Effectively Conceded That The '172 And '721 Patents Cannot Meet The Causal Nexus Standard .......................... 7

    B.    Apple's Last-Ditch Attempt To Claim Irreparable Harm From Brand Injury Is Unsupported And Waived ....................................................... 8

        1.    *Douglas Dynamics* Does Not Entitle Apple To An Injunction Without Establishing That Infringement Had A Causal Nexus To Its Alleged Brand Injury ....................................................................................... 9

        2.    Apple Has Not Shown Any Actual Injury To Its Brand Or Reputation ........ 10

        3.    Apple Has Made No Showing That The '721, '172 Or '647 Patents Caused Any Impact On Its Brand Or Its Reputation ................................... 12

II.    Monetary Damages Are Adequate Compensation ........................................................ 14

    A.    Apple Can Be Adequately Compensated Through Monetary Remedies For Its Claimed Harms .......................................................................... 14

        1.    Apple Failed To Meet Its Burden To Show That This Nonexistent Brand Harm Cannot Be Adequately Compensated Through Money Damages ........................................................................................ 14

        2.    Apple Offers No Evidence Alleged Lost Smartphone And Downstream Sales Cannot Be Adequately Compensated By Money Damages ........................................................................................ 15

SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR A PERMANENT INJUNCTION

       B.     Apple's Prior Offer To License To Samsung And Its Licenses To Other Competitors Demonstrate The Adequacy Of Monetary Compensation .................... 16

III.    The Balance Of Hardships Does Not Support An Injunction ................................................. 18

IV.    The Public Interest Weighs Against An Injunction ................................................................ 19

CONCLUSION ............................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*ActiveVideo Networks v. Verizon Communications*,
   694 F.3d 1312 (Fed. Cir. 2012) ................................................................. 16

*Apple v. Samsung ("Apple I")*,
   678 F.3d 1314 (Fed. Cir. 2012) ................................................................... 2

*Apple v. Samsung ("Apple II")*,
   695 F.3d 1370 (Fed. Cir. 2012) ............................................................. 9, 10

*Apple v. Samsung*,
   877 F. Supp. 2d 838 (N.D. Cal. 2012) ...................................................... 14

*Apple v. Motorola*,
   2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) ........................................... 18

*Apple, Inc. v. Motorola, Inc.*,
   869 F. Supp. 2d 901 (N.D. Ill. 2012)
   *rev'd on other grounds*, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) .................. 2, 18, 20

*Apple, Inc. v. Samsung Elecs. Co. ("Apple III")*
   735 F.3d 1352 (Fed. Cir. 2013) .........................................................passim

*ConocoPhillips Co. v. Gonzalez*,
   2012 WL 538266 (N.D. Cal. Feb. 17, 2012) ............................................. 11

*Dotster, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   296 F. Supp. 2d 1159 (C.D. Cal. 2003) ..................................................... 11

*Douglas Dynamics v. Buyers Products Company*,
   717 F.3d 1336 (Fed. Cir. 2013) ....................................................... 9, 10, 12

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ............................................................................ 2, 10

*Essence Imaging Inc. v. Icing Images LLC*,
   2014 WL 1384028 (C.D. Cal Apr. 9, 2014) .......................................... 15, 16

*Frank's GMC Truck Center, Inc. v. General Motors Corp.*,
   847 F.2d 100 (3rd Cir. 1988) .................................................................. 16

*Grupo Bryndis, Inc. v. Hinojosa*,
   2010 WL 5174368 (W.D. Tex. Dec. 15, 2010) ......................................... 15

*Herb Reed Enterprises, LLC v. Florida Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ................................................................ 10

*Hynix v. Rambus*,
   609 F. Supp. 2d 951 (N.D. Cal. 2009) ..................................................... 19

*iCall, Inc. v. Tribair, Inc.,*
   2012 WL 5878389 (N.D. Cal. Nov. 21, 2012) ........................................... 11

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,*
   634 F.2d 1197 (9th Cir. 1980) ................................................................. 15

*Los Angeles Police Protective League v. Gates,*
   995 F.2d 1469 (9th Cir. 1993) ................................................................... 3

*Monsanto Co. v. Geertson Seed Farms,*
   130 S. Ct. 2743 (2010) .............................................................................. 2

*Nutrition 21 v. U.S.,*
   930 F.2d 867 (Fed. Cir. 1991) ............................................................ 14, 16

*Oracle v. Google,*
   2012 WL 850705 (N.D. Cal. Mar. 13, 2012) .............................................. 5

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.,*
   2014 WL 675094 (S.D. Cal. Jan. 8, 2014) ................................................ 10

*Purdum v Wolfe,*
   2014 WL 171546 (N.D. Cal. Jan. 15, 2014) ............................................. 10

*Red Bend Ltd. v. Google, Inc.,*
   2011 WL 1288503 (D. Mass. Mar. 31, 2011) ........................................... 11

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
   659 F.3d 1142 (Fed. Cir. 2011) ............................................................... 10

*Therma-Tru Corp. v. Peachtree Doors Inc.,*
   44 F.3d 988 (Fed. Cir. 1995) ..................................................................... 3

## **INTRODUCTION**

This Court should deny Apple's latest motion for a permanent injunction.  This Court and the Federal Circuit have rejected all previous such motions and this motion should fare no differently.   There is no evidence Apple suffered irreparable harm from any Samsung infringement. Nor is there any causal nexus between the three minor patented features in Samsung's complex smartphones and any alleged harm to Apple.   Indeed, at the preliminary injunction stage this Court, affirmed by the Federal Circuit on the point, found that Apple could not satisfy the causal nexus standard for lost sales for these three patents.  And at trial, by awarding a lump sum royalty as Samsung proposed, the jury rejected Apple's claims that it had lost sales due to Samsung's infringement.   The jury's verdict on the matter is binding.   The trial evidence and Samsung's expert declarations demonstrate there is no link between sales and the three patented features. Recognizing its inability to prove irreparable harm from lost sales—and having lost on this issue both before this Court and the Federal Circuit—Apple switches track and argues reputational harm. Apple's last ditch theory fails for several independent reasons.   *First*, as a matter of law, harm to reputation requires a causal nexus to the patented features.   Apple's argument otherwise is meritless.   Any showing of irreparable harm requires a causal nexus no matter what type of harm is claimed.   *Second*, Apple has failed to prove any reputational harm and certainly no such harm connected to the three patents at issue.   *Third,* Apple has waived its belated reputational harm theory because it failed to identify it in the interrogatory response that would have put Samsung on notice.

Apple fares no better with respect to the other *eBay* factors.   Money damages can compensate Apple, as shown by both the jury's award and Apple's prior licenses and offer to Samsung.   The balance of hardships favors Samsung because Apple is not suffering any harm that cannot be compensated by money damages.   And the public interest does not favor an injunction. This Court should not deviate from its and the Federal Circuit's rulings in prior decisions and should deny Apple's latest injunction request.

## **LEGAL STANDARD**

"An injunction is a drastic and extraordinary remedy, which should not be granted as a

matter of course." *Apple, Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) ("*Apple III*") (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2761 (2010)). "[A] plaintiff seeking a permanent injunction 'must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Id.* (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). These factors should be applied with a heightened awareness of the "danger that Apple's goal in obtaining an injunction is harassment of its bitter rival" for anticompetitive purposes. *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 921 (N.D. Ill. 2012) *rev'd on other grounds,* No. 2014 WL 1646435 (Fed. Cir. April 25, 2014).

## ARGUMENT

## I.   Apple Has Suffered No Irreparable Harm

To demonstrate irreparable injury, there must be "a showing of some causal nexus between Samsung's infringing conduct and Apple's alleged harm." *Apple III*, 735 F.3d at 1364. "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place." *Apple I*, 678 F.3d at 1324. Irreparable harm from lost market share can be shown only where a patented feature "drive[s] the demand for the product," 735 F.3d at 1360 (quoting *Apple v. Samsung*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("*Apple I*")), and such demand may be shown through "evidence that a feature significantly increases the desirability of a product incorporating that feature" or "evidence that a patented feature significantly increases the price of a product." *Id.* at 1368. Apple has made no showing of harm—irreparable or otherwise. The record and the verdict refute any claim that Apple has suffered harm in the form of lost sales. Nor does Apple's eleventh-hour, waived attempt to argue vague injury to its reputation withstand scrutiny.

### A.   Apple Lost No Sales And, Even If It Had, Cannot Meet The Causal Nexus Requirement To Show Irreparable Harm From Lost Sales

As this Court has recognized, a smartphone is comprised of a multitude of different features. At the preliminary injunction stage in this case, this Court rejected Apple's claim that these patents

drive consumer demand.   Apple's showing on this post-trial motion is no stronger.   Indeed, it is far weaker because the jury found that Apple did not suffer market harm.   At trial, Apple sought lost profits from alleged lost sales.   The jury rejected that request and awarded a lump sum royalty award of $119,625,000.   Dkt. 1884.   Apple's injunction request based on claimed lost sales contradicts the jury's finding that no sales were lost and thus must be rejected as a matter of law. *See Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 994 (Fed. Cir. 1995) (holding that the district court's finding of inequitable conduct improperly conflicted with the factual findings of the jury); *Los Angeles Police protective League v. Gates*, 995 F.2d 1469, 1473-1475 (9th Cir. 1993) (Seventh Amendment "requires the trial judge to follow the jury's implicit or explicit factual determinations," and district court "erred in engaging in fact-finding contrary to the implicit findings of the jury verdict") (internal quotations omitted).

### 1. The Jury's Verdict Rejects Apple's Claim Of Lost Sales From Infringement

The Declaration of Judith Chevalier ("Chevalier Dec.") filed concurrently herewith, at ¶¶ 6-8, analyzes the jury's verdict.   In answer to Question 10(a), the jury allocated precisely 82.50 percent, 2.50 percent and 15.00 percent of the total to the '647, '721 and '172 patents, respectively.[1] This was consistent with Dr. Chevalier's unrebutted testimony that a lump sum royalty is appropriate in this case because the lump sum structure is "very prevalent in this industry."   4/21 Tr. 2422:23-2423:9 (Chevalier).

The amended verdict further confirms the damages were a lump sum royalty.   When instructed to enter an award for the Galaxy S II on the '172 patent in place of the zero entry on the original verdict, the jury simply re-allocated the same $17,943,750 total royalty for the '172 patent; there was no increase in total award.   Dkt. Nos. 1877, 1884.   Furthermore, the jury re-applied the same methodology: it kept the first three product awards for the '172 patent unchanged, re-allocated damages for the remaining products following Dr. Chevalier's per-product allocations, and gave the Stratosphere the remainder of the per-patent amount.   The necessary conclusion is that the jury

---

[1]    In order to fill in the share of damages associated with each Samsung product found to infringe a given patent in Question 10(a), the jury followed the per-product allocation from the royalty summary presented by Dr. Chevalier.   DX453A.012; Chevalier Dec. at ¶ 67.

corrected the omission of the Galaxy S II in its original per-product allocation methodology by redistributing the lump sum award with the Galaxy S II included.   The amended verdict thus makes clear the jury determined specific per-patent lump sum royalties and then used a per-product allocation methodology that replicated Dr. Chevalier's royalty allocation.   This is necessarily a rejection of Apple's request for lost profits, and thus a rejection of its claim that it lost sales as a result of Samsung's asserted infringement.

Moreover, the jury was instructed that, if it elected to award a lump sum royalty, it was compensating Apple for both past *and future* infringement:   "A second way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. . . . When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.."   Dkt. 1847 at 50 (Final Jury Instructions, PATENT DAMAGES—REASONABLE ROYALTY—DEFINITION).   In other words, the jury was told that a lump-sum award would entitle Samsung to future sales without further payment.

Apple's request for an injunction contradicts the jury's verdict for two reasons.   *First*, there can be no irreparable harm due to lost sales because there are no lost sales.   *Second*, the lump-sum royalty award already compensates Apple for ongoing infringement in the form of "a single price for a license covering both past and future infringing sales."   *Id*.   In either case, the verdict forecloses Apple's request now for an injunction based on purported lost sales.

### 2.   The Court Previously Rejected Apple's Claim That Infringement Of These Patents Caused Irreparable Harm

In its preliminary injunction Order, this Court rejected Apple's claim that it could satisfy the causal nexus standard for these three patents.   Dkt. 221 at 78-93.   For the '647 patent, the Court found the opinions of Dr. Mowry and PX 146, as well as other evidence, were insufficient to show any causal nexus to irreparable harm to lost sales.   *Id.* at 85-89.   For the '721 patent, the Court rejected Apple's argument, repeated here, that Samsung's documents established the requisite nexus.   *Id.* at 89-91.   For the '172 patent, the Court recognized it covers only a particular implementation of auto-correction and that there was no evidence that this implementation drives demand.   *Id.* at 91-93.   Apple offers nothing in its motion to lead the Court to deviate from its

1   prior ruling.

2       **3.    Dr. Hauser's Conjoint Survey Is Unreliable And Not A Basis For
              Concluding That A Causal Nexus Exists**

3       The only different evidence Apple offers now is Dr. Hauser's conjoint survey (PTX 140),

4   which Apple relegates to two cursory paragraphs.  That survey has been discredited on multiple

5   occasions and it offers no proof that the three features drive consumer demand.  Far from mere

6   "quibble[s]" (Mot. at 12), Samsung's expert Dr. Reibstein identified a host of fundamental flaws

7   with Dr. Hauser's survey, none of which Apple has controverted.[2]

8       ***First***, as Dr. Reibstein explained, a conjoint study is not a useful tool for estimating market

9   outcomes where, as here, major features are omitted.  4/18 Tr. 2072:2-2075:10; Declaration of

10  David Reibstein ("Reibstein Dec.") filed concurrently herewith at ¶¶ 49-65; 82.  Dr. Hauser's

11  survey omitted most of the major features that drive consumer decision-making, rendering his

12  survey incapable of accurate marketplace predictions.  4/18 Tr. 2072:2-2075:10; Reibstein Dec.

13  ¶ 103; *see also Oracle v. Google*, 2012 WL 850705, *10-11 (N.D. Cal. Mar. 13, 2012) (striking

14  conjoint survey).

15      ***Second***, Dr. Reibstein's pretest of Dr. Hauser's survey showed widespread confusion and

16  misunderstanding among respondents.  4/18 Tr. 2080-2086 (Reibstein); DX454A; Reibstein Dec.

17  ¶¶ 13-48 (96% confusion for '647 patent, 69% for '172).[3]   This kind of widespread

18  misunderstanding (and other flaws) rendered Dr. Hauser's survey results useless for determining the

19  role of the patents in consumer decision-making.  4/18 Tr. 2085:2-19 (Reibstein); Reibstein Dec.

20  ¶¶ 5-6, 13-83.

21      ***Third***, the survey produced invalid results.  These include dramatically inflated willingness-

22  to-pay numbers.  4/18 Tr. 2100:3-25 (Reibstein); Reibstein Dec. ¶¶ 7, 92-93; *see* 1846 Dkt. 3016 at

23  20 (rejecting Dr. Hauser's willingness to pay analysis as sufficient to meet Apple's burden).  The

24  survey results also reflect respondent insensitivity to price, incorrectly predicted actual purchasing

---

[2]   The fatal flaws with Dr. Hauser's survey are extensively detailed in Dr. Reibstein's declaration,
filed concurrently, and in Dr. Hauser's trial testimony.  Dr. Erdem also identified a number of flaws
in Dr. Hauser's methodology.  Declaration of Tulin Erdem ("Erdem Dec.") filed concurrently
herewith, at ¶¶ 7-9, 11-37 & Ex. 2; 4/18 Tr. 2306-2308 (Erdem); *see also* Chevalier Dec. ¶¶ 8-11.
[3]   Dr. Hauser did not even test the '721 for smartphones. 8/13 Hauser Rpt. p. 5 n.6, Dkt. 802-7.

behavior of the survey participants and did a poor job of predicting actual sales in the marketplace. 4/18 Tr. 2101-2103 (Reibstein); Reibstein Dec. ¶¶ 8, 84-91, 94-102.

### 4. There Is No Evidence Samsung Believes These Features Have Any Impact On Consumers

Nor does Apple's purported copying evidence satisfy the causal nexus requirement.  At most, it could prove only what Samsung *thought* would attract purchasers, not what *actually* attracted purchasers, and thus "is insufficient by itself to establish the requisite causal nexus." *Apple III*, 735 F.3d at 1367.  The same evidence was insufficient to establish causal nexus at the preliminary injunction stage, Dkt. 221 at 85-87, and is even less relevant now.

For the '647 patent, PX 146.037 does not show that Samsung copied.  Mot. at 13.  Apple adduced no evidence that any of its products practice the software architecture required to meet the Court's '647 claim construction.  Thus, the reference in PX 146.037 to the iPhone's "link" function provides no evidence that Samsung copied the asserted claim of the '647 patent, much less that Samsung ascribed any consumer demand to that invention.[4]  Nor did Apple introduce any evidence that PX 106.003 discloses the specific software architecture claimed by the '647 patent.  PX 107.052 describes a feature—automatically moving dates from emails to calendar based on the "user's intent"—that is very different from the asserted claim of the '647.  PX 116.002 refers to a feature—linking directly to an action (such as tapping a phone number to dial)—that Apple concedes does not infringe.  4/22 Tr. 2798:9-14 (Mowry).[5]

For the '721 patent, none of the evidence cited by Apple shows Samsung copied the slide-to-unlock feature covered by claim 8.[6]  For example, PX 121.100 compares the "flick" motion on a Samsung device to the sliding motion on the iPhone.  However, as Apple's expert acknowledged, Apple does not own sliding.  4/11 Tr. 1380:3-1382:17 (Velluro).  There are any number of ways

---

[4]   In addition, PX 146.037 refers to the Memo application which Apple did not accuse of infringing the 647 patent.  4/28 Tr. 3032:23-3033:7 (Mowry).

[5]   The cursory reference to the purported infringing "linking features" in Samsung product manuals does not satisfy the causal nexus requirement.  Each of the product manuals is well over one hundred pages long and references a plethora of individual features; they hardly demonstrate consumer demand for the '647 patented feature.

[6]   Indeed, Samsung designed only one of the accused lock screens—puzzle lock.  It is undisputed that Samsung designed puzzle lock in 2008 or 2009, over a year *before* the 2010 comparison documents upon which Apple bases its copying claim. 4/14 Tr.1731:23-25 (Kim); PX 121; PX 157; PX 219.

1    to implement elements such as sliding, swiping and guide text or arrows that do not infringe the

2    '721 patent.  *See* JX 32C (glass lock); JX 30A (circle lock); JX 35N (ripple lock).  None of the

3    documents cited by Apple shows copying of claim 8, and in any event, none comes close to

4    showing this patent actually drives smartphone sales.[7]  Nor does Ms. Kim's testimony do so; it

5    shows at most that Samsung designs multiple "first page screens" to differentiate its products (Mot.

6    at 13-14) and provides no support for Apple's claim that the '721 patent's slide-to-unlock feature

7    drives consumer demand.[8]

8        For the '172 patent, Apple offers no "copying" evidence whatsoever.  Nor could it, because

9    Apple does not practice the keyboard claimed by the '172 patent (4/4 Tr. 695:18-20 (Cockburn)).

10    Instead, Apple cites PX 168.007, which references a purported statement by an unnamed T-Mobile

11    employee that the non-accused Samsung Dart keyboard is a "somewhat jarring experience," and PX

12    169.004, a Verizon document which includes another non-accused Samsung keyboard in a list of

13    potential items for improvement.  Mot. at 14.  However, both of these non-accused keyboards

14    were used with the Samsung Galaxy S III, one of Samsung's most commercially successful phones.

15    4/4 Tr. 701:3-8 (Cockburn); 4/7 Tr. 775:8-777:7 (Cockburn); 4/11 Tr. 1411:5-12 (Vellturo); 4/18

16    Tr. 2258:12-16 (DiCarlo).

17          **5.**    **Dr. Vellturo Effectively Conceded That The '172 And '721 Patents Cannot Meet The Causal Nexus Standard**

18        Apple did not seek diminished demand lost profits on the '172 or '721 patents.  As Dr.

19    Vellturo explained, his diminished demand lost profits purported to account for the reduction in

20    demand for Samsung smartphones with the patented feature removed.  4/8 Tr. 1267:17-1268:8

21    (Vellturo); 4/11 Tr. 1294:15-1295:2 (Vellturo).  However, Apple conceded that Samsung's most

22

23   [7]   PX 100.27 merely refers to sliding a fixed distance.  PX 157.019-020 discusses the ability to

24   see guide text or an arrow without first touching the unlock icon (4/14 Tr. 1748:16-22 (Kim), and making the icon move more smoothly.  PX 219.014 discusses providing a "hint" of the direction

25   and length of movement needed to unlock the screen; and PX 119.011 refers generally to "swiping" and discusses alternative unlocking mechanisms that have nothing to do with the iPhone or the '721 patent.  *See* PX 119.039-.041.

26   [8]   Apple's citation to PX 181.005 as evidence that carriers such as Verizon view the "slide-to-

27   unlock" feature as "an important part of the user experience" is highly misleading.  Mot. at 14. The document does not even mention the slide-to-unlock feature covered by the '721 patent and Apple fails to explain how a vague reference to a purported "negative response" to Samsung's

28   "circle lock" from an unidentified Verizon employee shows demand for the '721 patent.

1   successful accused products did not use the '172 or '721: "for the '721, '172 and '760 patents,

2   where alternatives have actually been introduced and products successfully sold, I do not assess

3   damages based on lost profits for these post-design around periods."   8/2013 Vellturo Rpt. ¶ 311,

4   Dkt. 859-9; *see also* 4/11 Tr. 1295:16-1296:4 (Vellturo) ("in the actual world, Samsung had

5   designed around the other two [172 and 721] and found that it could live with those alternatives").

6       **B.    Apple's Last-Ditch Attempt To Claim Irreparable Harm From Brand Injury Is
            Unsupported And Waived**

7           Recognizing it cannot establish any causal nexus between lost sales and any Samsung

8   infringement, Apple newly asserts a brand-injury theory, and that theory also fails.   The Court

9   previously rejected the same argument at the preliminary injunction phase (Dkt. 221 at 77-78),[9] and

10  Apple subsequently abandoned its claim that it was suffering brand injury.   Apple's interrogatory

11  response setting forth its alleged irreparable harm—which it supplemented three times—does not

12  identify any "harm to reputation and brand," any claim that Samsung injured "Apple's reputation as

13  an innovator" or any other similar injury.[10]   Fazio Dec. Ex. 2.   Under this Court's prior rulings

14  (procured at Apple's insistence), Apple's failure to identify reputational harm as a basis for

15  injunctive relief in its thrice-supplemented interrogatory responses precludes its argument here.

16  *See, e.g.,* 1846 Dkt. 1144 at 3-5 (striking the bulk of Samsung's defenses to Apple's design patents

17  for failure to timely disclose in interrogatory responses); *see also* 1846 Dkt. 1546, 7/30/12 Tr. at

18  ─────────────────────

19  [9]   The Court rejected Apple's claim of harm to its reputation as an innovator in the 1846 action at
    the preliminary injunction phase for the same reason it should be rejected here – failure to provide
    sufficient evidence of such harm.   1846 Dkt. 449 at 29 ("In support of its argument that Samsung's
20  infringing cell phones harm goodwill by eroding Apple's reputation for innovation, Apple has
    offered conclusory statements and theoretical arguments from its expert. [citations omitted]   At this
21  point, without concrete evidence to support its argument, Apple has not yet established that this
    harm to its reputation for innovation is likely to occur.").   Notably, there Apple had submitted fact
22  and expert declarations in support of its claim (albeit insufficient ones), which is more than it has
    done here.   1846 Dkt. 1986.

23  [10]   Samsung's Interrogatory No. 10 required Apple to set forth, *inter alia,* "the complete factual
    and legal basis for YOUR contentions that APPLE is entitled to injunctive relief against
24  infringement of the APPLE PATENTS, including but not limited to: (a)  what irreparable injury
    APPLE has suffered . . ."   Fazio Dec. Ex. 2.   The only place Apple has articulated anything
25  approaching the theory on which it now seeks an injunction was three conclusory paragraphs about
    alleged "harm to Apple's goodwill" in Dr. Vellturo's February 2012 declaration.   2/2012 Vellturo
26  Decl. ¶¶ 96-98, Dkt. 0012-14.   Not only is this insufficient to cure Apple's waiver by failing to
    raise this theory in response to Samsung's Interrogatory, but Dr. Vellturo's expert report and
27  supplemental expert report make no mention of such an injury, even in the portion of the report
    entitled "Permanent Injunction," which purports to identify Apple's irreparable harm.   8/2013
28  Vellturo Rpt. ¶¶ 495-500, Dkt. 1156-3.

16:20-18:2 ("[T]hese should have been disclosed in Samsung's contention interrogatories . . ."); 1846 Dkt. 1611, 8/6/12 Tr. at 1218:13-1221:20 ("[I]f it hasn't been timely disclosed . . . in a contention interrogatory, it should not – and it's improper to raise it now.  It's untimely . . . it should have been in a contention interrogatory response[.]"); *id.* at 1253:21-1256:3 ("So if you didn't identify this for Rog 7, then you waived . . . If you can't show me that you disclosed it, it's not coming in for that purpose."); 1846 Dkt. 1612, 8/7/12 Tr. at 1401:19-1403:8. .

But even if Apple's waived and last-ditch theory is considered, it fails on the merits. Apple's theory is that reputational harm does not require causal nexus.   Apple is wrong on the law.   Apple also fails to prove any harm, much less harm connected to the patent infringement.

## 1. *Douglas Dynamics* Does Not Entitle Apple To An Injunction Without Establishing That Infringement Had A Causal Nexus To Its Alleged Brand Injury

*Douglas Dynamics v. Buyers Products Company*, 717 F.3d 1336 (Fed. Cir. 2013) does not excuse Apple from its obligation to show that Samsung's infringement of these three patents *caused* injury to its brand or reputation.   Apple's argument that it need not show a causal nexus between brand injury and infringement is groundless: The nature of the harm—whether it be from brand injury or lost sales—is irrelevant if it is not caused by the infringement.   As the Federal Circuit has repeatedly made clear, the irreparable harm requirement holds that absent an injunction,   a plaintiff "will suffer irreparable harm, and …that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."   *Apple III*, 735 F. 3d at 1359-60 (quoting *Apple v. Samsung*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*")).   No matter the type of harm that is alleged to be irreparable, it must always be causally connected to the infringement.

Apple contends the Federal Circuit found *Douglas Dynamics* "'distinguishable' from cases involving a 'causal nexus.'"  Mot. at 5.  Not so.  In *Apple III*, the Federal Circuit rejected Apple's contention that there is any tension between *Douglas Dynamics* and the causal nexus requirement and explained that "there is no indication that any of the infringers in those cases [including *Douglas Dynamics*] challenged the existence of a causal nexus".  *Apple III*, 735 F. 3d at 1362. Indeed, the language Apple cites in its moving papers was included in a portion of the decision that explained that *Douglas Dynamics* was "distinguishable on other grounds *as well.*"  *Id.* (emphasis

1   added).  *Douglas Dynamic*'s fact-specific analysis is irrelevant here because a patented snowplow

2   latch lever bears no resemblance to a smartphone embodying as many as 250,000 patented features.

3   4/11 Tr. 1372:5-8 (Velluro).   While Apple's features here are minor, as the jury found in rejecting

4   Apple's claim for lost profits, the patented features in *Douglas Dynamics* were not.  *Apple III* also

5   reaffirms *Apple II's* holding that "the causal nexus inquiry is indeed *part of the irreparable harm*

6   *calculus*: it informs whether the patentee's allegations of irreparable harm are pertinent to the

7   injunctive relief analysis, or whether the patentee seeks to leverage its patent for competitive gain

8   beyond that which the inventive contribution and value of the patent warrant."   *Apple III*, 735, F.3d

9   at 1361 (quoting *Apple II*, 695 F.3d at 1374-75) (emphasis added).

10      Apple's erroneous argument, if accepted, would mean that any company claiming a

11   reputation as an innovator can obtain an injunction against a competitor merely by alleging that

12   infringement has caused reputational harm.   This would run afoul of *eBay* and impermissibly

13   reinstate a presumption of injunctive relief in patent litigation between competitors in any market

14   where innovation is a positive attribute.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

15   (2006); *Robert Bosch LLC* v. *Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

16            **2.       Apple Has Not Shown Any Actual Injury To Its Brand Or Reputation**

17      Apple offers only speculation that its brand or touted reputation for innovation has been

18   injured.   Erdem Dec. ¶¶ 38-53; Chevalier Dec. ¶¶ 59-60.   But speculation is not enough, especially

19   not in the face of overwhelming evidence to the contrary.   "Conclusory statements of economic

20   harm and loss of goodwill are insufficient to support a finding of irreparable injury."  *Peregrine*

21   *Semiconductor Corp. v. RF Micro Devices, Inc.*, 2014 WL 67509, *3-4 (S.D. Cal. Jan. 8, 2014)

22   (holding patent infringement plaintiff "failed to establish that it is likely to suffer irreparable harm

23   absent injunctive relief" and denying preliminary injunction).   Even at the preliminary injunction

24   phase, where discovery is necessarily limited, courts require evidence to establish irreparable harm

25   from injury to goodwill or reputation and reject precisely the kind of conclusory testimony offered

26   by Mr. Schiller.  *Purdum v Wolfe*, 2014 WL 171546, *9 (N.D. Cal. Jan. 15, 2014) ("While

27   'evidence of loss of control over business reputation and damage to goodwill could constitute

28   irreparable harm,' a plaintiff must establish such likelihood with evidence.") (citing *Herb Reed*

1    *Enterprises, LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249-50 (9th Cir. 2013) (alterations

2    omitted); *iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389, *13-14 (N.D. Cal. Nov. 21, 2012) (denying

3    preliminary injunction in trademark action based on claim of harm to "business reputation" and

4    "goodwill" supported only by "conclusory declaration" of plaintiff's CEO); *ConocoPhillips Co. v.*

5    *Gonzalez*, 2012 WL 538266, *3 (N.D. Cal. Feb. 17, 2012) (denying preliminary injunction in

6    trademark action, finding plaintiff's conclusory statement of alleged harm to its "reputation",

7    insufficient); *Dotster, Inc. v. Internet Corp. for Assigned Names & Numbers*, 296 F. Supp. 2d 1159,

8    1163 n.2 (C.D. Cal. 2003) ("conclusory statements" of plaintiffs' executives cannot support

9    irreparable harm); *Red Bend Ltd. v. Google, Inc.*, 2011 WL 1288503, *20 (D. Mass. Mar. 31, 2011)

10   (denying preliminary injunction; general statements of reputational harm "are insufficient to

11   demonstrate irreparable harm").

12          Indeed, Mr. Schiller and other Apple executives testified that far more publicized and

13   significant issues had no negative impact on the Apple brand.   Apple's head of product marketing

14   for iOS and iPhone, Greg Joswiak, testified that Apple's antenna problems with the iPhone 4 – an

15   event so highly publicized and problematic it became publicly known as "AntennaGate" – did not

16   have "much of an impact of the brand at all."   Joswiak 7/9/13 Dep. Tr. 80:17-81:20, Fazio Dec. Ex.

17   3; *see also* Schiller 7/23/13 Dep. Tr. 87:24-88:7, Fazio Dec. Ex. 4 (calling the "long-term effect of

18   Antennagate [] negligible").   Mr. Joswiak likewise testified he has seen "no data" to indicate the

19   negative press Apple has received regarding labor conditions at its overseas manufacturing facilities

20   has had "any effect on Apple's brand image."   Joswiak 7/9/13 Dep. Tr. 80:17-81:20, Fazio Dec.

21   Ex. 3; *see also* Erdem Dec. ¶¶ 48.   Mr. Schiller, Apple's head of worldwide marketing, testified

22   that Apple's highly criticized maps application launched with iOS 6 – an event so negatively

23   reported on that Apple's CEO issued a public apology letter (DX 459A; 4/4 Tr. 511:25-512:22

24   (Schiller)) – did not harm sales of the iPhone 5, but rather it "did extremely well."   4/4 Tr. 514:7-20

25   (Schiller). As demonstrated in the Declaration of Dr. Erdem at Section IV, Apple could have tried to

26   demonstrate harm to reputation through appropriate analysis.   Erdem Dec. ¶¶ 38-46.   Apple chose

27   not to – because there is none.   Apple's conclusory showing on this motion is insufficient.

28          While there may be cases where infringement causes irreparable reputational injury, this is

1   not one of them.   There is no evidence Samsung ever advertised any of the three accused features.

2   Chevalier Dec. ¶¶ 32-35.   Samsung's advertising has focused its large screen and other hardware

3   innovations.   4/14 Tr. 1672:24-1673:9, 1683:19-23 (Pendleton).   There is no evidence that

4   "[Samsung] marketed itself effectively as [Apple] at half the price."   *Douglas Dynamics*, 717 F.3d

5   at 1344.   Nor is there any plausible danger that people will not believe Apple does not enforce its

6   intellectual property rights, as Apple surmises.   *Douglas Dynamics*, 717 F.3d at 1345.   Apple's

7   campaign of "thermonuclear" patent litigation against smartphone manufacturers has been widely

8   reported.[11]   Similarly, Apple's contention that its inability to obtain an injunction would threaten its

9   reputation or the value of its patents is not only unproven, but wholly circular.   One scarcely can

10  use alleged irreparable harm from the failure to obtain an injunction to bootstrap irreparable harm in

11  the first place, and Apple cites no authority to support its argument otherwise.   And, as discussed

12  *infra* at 16-18, it is not the case that Apple has "never licensed the infringed patents."   *Id.*   None of

13  the reputational harms about which *Douglas Dynamics* expressed concern are present here.

### 3.   Apple Has Made No Showing That The '721, '172 Or '647 Patents Caused Any Impact On Its Brand Or Its Reputation

15         Not only has Apple failed to show any reputational harm, it has failed to link any alleged

16  harm to infringement of the three patents.   Apple relies heavily on the conclusory, self-serving

17  testimony of Mr. Schiller that Apple hopes to use its inventions "in our products for ourselves, to

18  differentiate ourselves from the rest of the market."   Mot. at 6-7.[12]   Apple ignores, however, that

19  Mr. Schiller acknowledged he did not even know if any of the patent claims at issue were even used

20  in the iPhone (4/1 Tr. 485:5-486:2 (Schiller)) and thus conceded that he had no idea whether the

21  patent claims at issue on this motion are associated with Apple products.   If Apple's own

22  worldwide marketing head does not associate the patent claims with Apple, it is completely

23  implausible that consumers do.   Of course, if consumers do not associate the patented claims with

24  Apple, there can be no injury to Apple's reputation based on Samsung's infringement of them.

25         Where Apple does not practice its own claims, infringement of those claims cannot harm

---

11   Apple complains about being labeled a "jihadist," ignoring that it was Mr. Jobs himself who declared a "Holy War" on Android.   DX489.245.

12   This testimony was admitted over Samsung's objection that it called for undisclosed expert opinion.   4/1 Tr. 473:18-19.

1    Apple's reputation.   Apple conceded that it never practiced the relevant claim of the '172 patent,

2    and while Apple claims to practice the '647 and '721 patents, the evidence is to the contrary.   For

3    the '647 patent, nothing in Mr. Deniau's testimony cited by Apple suggests that it uses an outdated

4    client-server architecture or "links" that form a "specified connection" as required by the properly

5    construed claims.   Dkt. 1521-3, Ex. 1 (opinion) at 21-23.   Mr. Deniau did not use the words

6    "server" or "specified connection" in his testimony at all.   4/7 Tr. 787:19-809:18.   Nor did he ever

7    describe the structure of Apple's software, the way it makes (or does not make) "links" between

8    structures and actions, or whether Apple's software contains an "action processor" as that term was

9    construed by this Court.   *Id.*   Nor did Mr. Deniau discuss the structure of the relevant code or

10   provide any comparison of any Apple device to the properly construed claims.[13]   For the '721

11   patent, Apple's most recent operating system, iOS 7, does not practice the patent.   To unlock the

12   iOS 7 lock screen, a user can touch anywhere in the left portion of the screen and simply move in a

13   roughly left to right direction.   4/15 Tr. 1985:17-21; *see also* DX345.   There is no image with

14   which the user must make contact. *Id.*   Although Apple's expert contended iOS 7 practices claim 8

15   of the '721, he did not identify any "unlock image."   4/25 Tr. 2896:10-2898:2.   Accordingly, the

16   iOS 7 lock screen does not satisfy at least the "detect a contact . . . at a first predefined location

17   corresponding to an unlock image" and "continuously move the unlock image . . . in accordance

18   with movement of the detected contact" limitations of claim 8.   *See* 4/15 Tr. 1986:3-6; 4/25 Tr.

19   2896:10-2898:2; JX10 at 19:57-20:1

20        Aside from Mr. Schiller's conclusory testimony, Apple cites no specific record evidence that

21   any of these patents had any impact on Apple's reputation or brand – because none exists.

22   Chevalier Dec. ¶¶ 59-65; Erdem Dec. ¶¶ 10, 47-53.   To the contrary, Dr. Chevalier's analysis of

23   consumer and professional reviews of the iPhone showed that virtually none mention the three

24   patents.   Chevalier Dec. ¶¶ 6-7, 36-50, 62; 4/21 Tr. 2371-2379 (Chevalier).   The press release that

25   accompanied the launch of iOS 3 and the iPhone 3GS, which Apple contends first practiced claim 9

26   of the '647 patent, does not even mention the functionality (Chevalier Dec. ¶ 50) – further refuting

---

[13]   Apple's expert was barred from discussing the code because of Apple's discovery misconduct.
Dkt. 1572; 4/7 Tr. 885:13-18.   Apple cites to a portion of his testimony describing the "benefit" of
the '647 patent, but this has no bearing on whether Apple practices that patent.

1   Apple's claim that consumers associate Apple's reputation for innovation with that function.

2        The overwhelming evidence is that consumers do not focus on minor features like those at

3   issue here and thus, there is no basis for concluding that the claimed Samsung infringement has any

4   impact on consumer perceptions.  4/18 Tr. 2286-2289, 2293-2294, 2304:5-2305:9 (Erdem); 4/18

5   Tr. 2371-2381; Erdem Dec. ¶¶ 14-16, 21-22, 25-37; Chevalier Dec. ¶¶ 5-6, 12-52, 57-58.  Apple

6   cannot show irreparable injury where it lacks evidence of harm to its reputation or brand or any

7   harm linked to the patented features..

8   **II.**    **Monetary Damages Are Adequate Compensation**

9        "This factor requires a patentee to demonstrate that 'remedies available at law, such as

10   monetary damages, are inadequate to compensate' the patentee for the irreparable harm it has

11   suffered."  *Apple III*, 735 F.3d at 1368 (citation omitted).  As this Court has recognized, "Apple, as

12   the movant here, bears the burden of providing [s]ome evidence and reasoned analysis' for the

13   inadequacy of monetary damages to compensate its alleged harms."  *Apple v. Samsung*, 877 F.

14   Supp. 2d 838, 902 (N.D. Cal. 2012) (citing *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir.

15   1991)).  Apple has already been fully compensated by the jury's award of a reasonable royalty and

16   has put forth no evidence to the contrary.

17       **A.**    **Apple Can Be Adequately Compensated Through Monetary Remedies For Its**
        **Claimed Harms**

18

19        As this Court has explained, "even if monetary remedies will not compensate Apple" for its

20   claimed irreparable harms, Apple "cannot obtain a permanent injunction merely because Samsung's

21   lawful competition impacts Apple in a way that monetary damages cannot remedy."  1846 Dkt.

22   3016 at 37.  As a result, in the 1846 case, this Court held that "monetary remedies would more

23   appropriately remedy the injury arising out of Samsung's infringement of the utility patents-in-suit

24   than would an injunction.  Accordingly, this factor favors Samsung."  *Id.* at 37-38.  This holding

25   applies equally here.

26       **1.**    **Apple Failed To Meet Its Burden To Show That This Nonexistent Brand**
        **Harm Cannot Be Adequately Compensated Through Money Damages**

27        As discussed above (*supra*, at 8-15), Apple has made no showing that its brand or reputation

28   has been harmed, much less by Samsung's infringement of these patents.  Without evidence of any

1    such harm Apple cannot demonstrate that money damages are inadequate.   Chevalier Dec. ¶ 71.

2    Apple's one paragraph of attorney argument asserting, without evidentiary support, that this harm is

3    not compensable through money damages falls below the showing required to meet its burden.

4    Mot. at 15; *see, e.g.*, *Grupo Bryndis, Inc. v. Hinojosa*, 2010 WL 5174368, *3 (W.D. Tex. Dec. 15,

5    2010) ("the record contains no evidence showing the plaintiffs' goodwill or reputation has

6    diminished by the defendants' use of the Group Bryndis name, or that a loss of goodwill cannot be

7    compensated by money damages.")[14]

8        Moreover, Apple has provided no evidence that reputational harm—even if proven—could

9    not be quantified.   In fact, as discussed in Dr. Erdem's declaration, there are well established and

10   accepted methodologies that may quantify this type of harm.   Erdem Dec. ¶¶ 39-46.   Apple made

11   no attempt to apply them.   This failure independently dooms Apple's request for an injunction

12   based on purported reputational harm.

### 2.    Apple Offers No Evidence Alleged Lost Smartphone And Downstream Sales Cannot Be Adequately Compensated By Money Damages

15       As the Federal Circuit cautioned in remanding Apple's permanent injunction motion in the

16   1846 action, if "Apple cannot demonstrate that demand for Samsung's products is driven by the

17   infringing features, then Apple's reliance on lost market share and downstream sales to demonstrate

18   the inadequacy of damages will be substantially undermined."   *Apple III*, 735 F.3d at 1371.   In

19   refusing to award lost profits, the jury rejected Apple's claim that Samsung's infringement cost it

20   sales.   Without lost sales, there can be no lost downstream sales.

21       Furthermore, Apple has failed to meet its burden to show that these harms, even if they

22   existed, cannot be compensated by money damages.   Contrary to Apple's claim that lost market

23   share is "classic injur[y] that money damages cannot adequately substitute" (Mot. at 15), courts

24   regularly find that lost sales are adequately compensated through monetary remedies.   *See, e.g.*,

25   *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir.

26   1980) ("monetary injury [from lost revenues] is not normally considered irreparable" and "lost

27   revenues would be compensable by a damage award"); *Essence Imaging Inc. v. Icing Images LLC,*

---

14   In the 1846 action, Apple at least offered a conclusory expert declaration.   1846 Dkt. 1986.   It has not even bothered to do that here.

1    2014 WL 1384028, *3 (C.D. Cal Apr. 9, 2014) (denying preliminary injunction, finding that lost

2    sales are the "type of injury [that] would not constitute irreparable harm because it is compensable

3    in money damages"); *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102

4    (3rd Cir. 1988) ("Even assuming for purposes of argument that [the Plaintiff's] assertions are true

5    and that it will in fact suffer substantial lost profits . . . the harm flowing therefrom is compensable

6    by money damages."); *see also* Chevalier Dec. ¶¶ 69-70.

7           Demonstrating that the alleged losses are compensable by money damages, Apple's

8    damages expert purported to quantify Apple's claimed market harms.  Dr. Vellturo testified  that

9    Apple lost smartphone sales, conceding those losses are quantifiable.  4/8 Tr. 1217:19-25

10   (Vellturo); 4/11 Tr. 1293:19-25, 1294:8-1295:13, 1300:8-12, 1325 (Vellturo); PTX222A-4.

11   Likewise, in calculating reasonable-royalty damages, he made a substantial adjustment to allegedly

12   reflect the effects of lost downstream and ecosystem sales.   This "ecosystem adjustment" reflected

13   an effort to "quantify" the harm Apple would suffer from lost ecosystem and convoyed sales.

14   8/2013 Vellturo Rpt. ¶¶ 405-407, Dkt. 802-20; 4/11 Tr. 1317-1319, 1325 (Vellturo); PTX22A-38-

15   39; *see also* Chevalier Dec. ¶ 70.   While Apple may point to the Court's December 2012 Order in

16   the 1846 case finding that Apple's loss of downstream sales was a harm that "may not be fully

17   compensated by" damages, there, Apple submitted a declaration from its damages expert supporting

18   its claim that money damages were inadequate.  1846 Dkt. 1982-002.  No such declaration has

19   been submitted here.   Offering nothing more than attorney argument to support its contention that

20   Apple lost sales due to Samsung's infringement which are not compensable by monetary remedies

21   is an insufficient showing.   *See Nutrition 21*, 930 F.2d at 871-872.

22   **B.**     **Apple's Prior Offer To License to Samsung And Its Licenses To Other**
             **Competitors Demonstrate The Adequacy Of Monetary Compensation**

23

24           Apple's motion ignores that it offered to license the '647 patent to Samsung in 2010.  PTX

     132-15.[15]   A patentee's offer to license the patent at issue, especially when that offer is to the
25
     defendant, counsels towards a finding that monetary damages are adequate.  *ActiveVideo Networks*
26
     *v. Verizon Communications*, 694 F.3d 1312, 1339 (Fed. Cir. 2012).  Indeed, in the 1846 case, the
27

28   [15]     *See also* 7/2013 Watrous Dep. Tr. 206:13-22 & Ex. 16, Fazio Dec. Ex. 5.

1    Federal Circuit made clear that Apple's offers to license the patents at issue to Samsung can be

2    "quite relevant to the injunction analysis," explaining that, in order to rely on those offers as

3    "evidence of the adequacy of damages," the court should determine whether they "included the

4    asserted patents."   *Apple III*, 735 F.3d at 1370 & n.7.   Despite the Circuit's holding, Apple chose

5    not to address this evidence in its motion.   The only evidence properly before the Court therefore is

6    that Apple was willing to offer Samsung a license to at least the '647 patent, which by Apple's

7    account is the most valuable by an order of magnitude of the three patents found to be infringed.[16]

8          Apple points to the Court's prior ruling on this factor in the 1846 case, arguing for the same

9    finding here.   Mot. at 17.   There, however, Apple relied on trial testimony from Mr. Teksler (who

10   did not testify in this action) that Apple's offer to Samsung was for patents other than the ones at

11   issue and that the patents at issue in the case were in "'Apple's unique user experience and not ones

12   that [Apple] would license.'"   1846 Dkt. 1982-001 at 10.   The record here contains no such

13   evidence.   The August 2010 presentation expressly lists the '647 patent and specifically states that

14   "Samsung needs a license to continue to use Apple patents in infringing smartphones."   PTX132-

15   15, 23.   Apple's 2010 offer to license to Samsung what Apple claims is the most valuable of the

16   three patents answers the relevant question: Apple believes money can adequately compensate it for

17   Samsung's use of the asserted patents.[17]

18   ████████████████████████████████████████████████████████████████████████.

19   Mot. at 16.   Apple dismisses this evidence by pointing out that those licenses were ██████████

20   █████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████.   Mot. at 16-17.

22   While in *Apple III* the Circuit ruled these factors should be considered, the Circuit did not hold they

23   "indicate that damages are an inadequate remedy."   1846 Dkt. 3016 at 35.   Moreover, because

24   _____

25   [16]   Apple may argue that it has not offered to license the '172 or the '721 to Samsung.   According to Apple, the '647 is more than 4 times more valuable than the '172 and almost 8 times more valuable than the '721.   PTX222A-37. Any argument that Apple would be willing to license its

26   most valuable patent but not its lesser patents is not credible.   Moreover, the '172 and '721 patents had not yet issued as of August 2010.   JX10; JX13.   In the August 2010 presentation, Apple

27   identified the parent of the '721, Patent No. 7,567,849 and noted it was being asserted against HTC. PTX 132-15; *see also* JX10.

28   [17]   *See also* Chevalier Dec. ¶ 72.

1    design patents and trade dress claims are not at issue in this action, the existence of ████████

2    ████████████████████████ does not have the same relevance here as it did in the 1846

3    action.   Ex. A to Ex. 6 of Dkt. 1895-5 (████ license).

4         While this Court has found that the litigation settlement context of the ████████████

5    license (1846 Dkt. 3016 at 36) diminishes their probative value, they are still relevant in the context

6    of this motion.   Entered into to settle litigation or not, Apple's willingness to license these parents

7    to smartphone competitors demonstrates it does not consider these patents of such unique value that

8    allowing competitors to use them would cause non-compensable irreparable harm.   Apple's

9    willingness to license these patents to smartphone competitors, combined with its offer to license at

10   least one of the patents at issue to Samsung, "strongly suggest[s]" Apple believes it can be

11   adequately compensated through monetary remedies.   *Apple v. Motorola*, 2014 WL 1646435, *35

12   (Fed. Cir. Apr. 25, 2014) (fact that Motorola had "many license agreements encompassing" the

13   patent at issue "strongly suggest[s] that money damages are adequate to fully compensate Motorola

14   for any infringement.")

15   **III.     The Balance Of Hardships Does Not Support An Injunction**

16        "An injunction that imposes greater costs on the defendant than it confers benefits on the

17   plaintiff reduces net social welfare.   That is the insight behind the 'balance of hardships'

18   component of the *eBay* standard for injunctive relief in patent cases."   *Motorola*, 869 F. Supp. 2d at

19   922.   In the 1846 action the Court found this factor to be neutral, 1846 Dkt. 3016 at 38-39, and the

20   Federal Circuit affirmed that finding.   *Apple III*, 735 F.3d at 1371.

21        Apple's showing here is even weaker.   Apple will suffer no hardship in the absence of an

22   injunction.   It does not even accuse the S III or the Note 2 of infringing the '172 or '721 patents.

23   The jury and this Court have previously rejected Apple's claims that there is a connection between

24   the three patents at issue and Apple's sales.   Dkt. Nos. 221, 1884.   Nor has Apple shown any other

25   harm it has suffered by Samsung's infringement.   Apple complains about being "forced to

26   compete" with infringing Samsung products (Mot. at 17), but the jury found and the evidence

27   establishes that the claimed infringement had no impact on sales and thus no impact on upon

28   competition.   *Supra* at 3-4.   An injunction "may not be used as a punishment."   1846 Dkt. 2197 at

1   18 (citing *Hynix v. Rambus*, 609 F. Supp. 2d. 951, 969 (N.D. Cal. 2009)).   Nor may it be used to

2   thwart competition beyond the particular innovations that the patents at issue protect.   *Apple II*, at

3   695 F.3d at 1375.

4           Apple's proposed injunction lacks specificity, is overly broad and extends beyond the

5   permissible scope of an injunction under Federal Circuit case law.   The proposed injunction is not

6   limited to the claims at issue and not limited to the specific adjudicated software at trial such as, for

7   '647 patent, the Messenger and Browser applications. Apple's proposed injunction would lead to

8   improper contempt proceedings, and seeks to prevent not just patent infringement but software in

9   which features may be "implemented" as well as "advertising" and "assistance."   The breadth and

10  ambiguity of the proposed injunction demonstrates that Apple is not trying to remedy an irreparable

11  harm but is attempting to harm a competitor. In the 1846 action, Apple conceded it would seek

12  contempt sanctions on additional unaccused products, requiring discovery and hearings on whether

13  new products are "colorably different," effectively creating mini-trials in contempt proceedings.

14  1846 1/30/14 Hrg. Tr. 22-24, 1846 Dkt. 2945.   A sunset period does nothing to address the

15  hardship to Samsung of being forced to litigate, under threat of contempt, the question of what

16  functionalities and what products incorporating them are "not colorably different." Apple will

17  surely seek to enforce any injunction by enjoining the sale of products.   Thus, the requested

18  injunction here is no different than the relief Apple sought in the 1846 action.

19          An injunction would impose hardship on Samsung by disrupting its contractual relationships

20  with carriers who may be selling pre-existing stock and with customers who may still be using the

21  accused products. [18]   Apple's proposed injunction includes no carve-out for repairs, further

22  complicating matters for consumers, carriers and Samsung's relationship with them.

23  **IV.     The Public Interest Weighs Against An Injunction**

24          Apple makes the same arguments here that it made in the 1846 action – namely an

25  injunction "will serve the public interest by encouraging investment in innovation" and by

26  providing "meaningful patent protection" to patent holders. Mot. at 19-20; *see also* 1846 Dkt.

27  ───────────────

28  [18]   At the preliminary injunction phase Apple threatened carriers even though the injunction did
    not apply to them.   *See* Federal Circuit Case 12-1507, Dkt. 42 Exhibit 1 (filed 7/13/2012).

1   3016 at 39.   Ultimately, the Court found the public interest factor weighed slightly in favor of

2   Samsung in the 1846 case (1846 Dkt. 3016 at 40), and explained that "[t]he public interest does not

3   support removing phones from the market when the infringing components constitute such limited

4   parts of complex, multi-featured products."   1846 Dkt. 2197 at 21 *aff'd* 35 F.3d at 1373.   Apple

5   has again failed to meet its burden and this factor weighs in favor of Samsung.

6         In analyzing this factor, both "the harm that an injunction might cause to consumers who

7   can no longer buy preferred products because their sales have been enjoined, and the cost to the

8   judiciary as well as to the parties of administering an injunction" should be considered.   *Apple v.*

9   *Motorola*, 869 F. Supp. 2d at 921.   Apple's requested injunction presents both of these concerns.

10   The public has a strong interest in the protection of healthy competition and the resulting variety of

11   product choices.

12         Apple has provided no persuasive justification for depriving the public of product choices

13   created by a thriving level of competition other than its claim that an injunction serves the public's

14   interest in protecting innovation and patent rights.   Mot. at 19-20.   Of course, protection of patent

15   rights is an issue present in all patent cases where an injunction is sought.   If that were sufficient to

16   find this factor favored an injunction, this factor would always be found to weigh in favor of the

17   patentee, a result that would improperly "hint[] at categorical rule".   *Apple III*, 735 F.3d at 1370.

18         The uncertainty in the scope of the requested injunction will also impose an administrative

19   burden on this Court, as Apple has made clear it will aggressively seek to extend such injunctions to

20   non-accused products in contempt proceedings.   1846 1/30/2014 Hrg. Tr. at 22-24, 1846 Dkt. 2945.

21   This further weighs against granting Apple's motion. *See Motorola*, 869 F. Supp. 2d at 921

22   (denying motion for permanent injunction in part based on "the cost to the judiciary as well as to the

23   parties of administering an injunction").

24                                          **CONCLUSION**

25         Apple's request for an injunction should be denied.

26

27

28

1   DATED: June 6, 2014               QUINN EMANUEL URQUHART &
2                                         SULLIVAN, LLP
3                                         */s/ Victoria F. Maroulis*

                                        Kevin P.B. Johnson

4                                         Victoria F. Maroulis

                                        William C. Price

5                                         Attorneys for SAMSUNG ELECTRONICS CO., I
6                                         SAMSUNG ELECTRONICS AMERICA, INC., a
                                        SAMSUNG TELECOMMUNICATIONS
7                                         AMERICA, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-           Case No. 12-cv-00630-LHK

SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR PERMANENT INJUNCTION