# EXHIBIT B

US006936071B1

(12) **United States Patent**   (10) Patent No.: **US 6,936,071 B1**
Marnay et al.   (45) Date of Patent: **Aug. 30, 2005**

(54) **INTERVERTEBRAL IMPLANT**

(75) Inventors: **Thierry Marnay**, Montpellier (FR); **Boris Beyersdorff**, Tuttlingen (DE)

(73) Assignee: **Spine Solutions, Inc.**, West Chester, PA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/018,402**

(22) PCT Filed: **Jul. 2, 1999**

(86) PCT No.: **PCT/EP99/04628**

§ 371 (c)(1), (2), (4) Date: **Jun. 12, 2002**

(87) PCT Pub. No.: **WO01/01893**

PCT Pub. Date: **Jan. 11, 2001**

(51) Int. Cl.⁷ .................................................. **A61F 2/44**
(52) U.S. Cl. .................. **623/17.15**; 623/17.14
(58) Field of Search .................... 623/17.11–17.16, 623/20.14–20.3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,309,777 A | | 1/1982 | Patil |
| 4,349,921 A | | 9/1982 | Kuntz |
| 4,759,766 A | | 7/1988 | Buettner-Janz et al. |
| 4,759,769 A | | 7/1988 | Hedman et al. |
| 4,863,476 A | | 9/1989 | Sheppard |
| 4,874,389 A | * | 10/1989 | Downey ................... 623/17.16 |
| 4,892,545 A | * | 1/1990 | Day et al. ................. 623/17.11 |
| 4,946,378 A | | 8/1990 | Hirayama et al. |
| 4,997,432 A | | 3/1991 | Keller |
| 5,002,576 A | | 3/1991 | Fuhrmann et al. |
| 5,071,437 A | | 12/1991 | Steffee |
| 5,122,130 A | | 6/1992 | Keller |
| 5,192,327 A | | 3/1993 | Brantigan |
| 5,258,031 A | | 11/1993 | Salib et al. |
| 5,290,312 A | | 3/1994 | Kojimoto et al. |
| 5,314,477 A | | 5/1994 | Marnay |
| 5,370,697 A | | 12/1994 | Baumgartner |
| 5,401,269 A | | 3/1995 | Buttner-Janz et al. |

(Continued)

FOREIGN PATENT DOCUMENTS

DE        2 263 842        7/1974

(Continued)

*Primary Examiner*—Bruce Snow
*Assistant Examiner*—Cheryl Miller
(74) *Attorney, Agent, or Firm*—Stites & Harbison, PLLC; Marvin Petry

(57) **ABSTRACT**

In an intervertebral implant, having an upper part that has a support face for a vertebra and a lower part that has a support face for an adjacent vertebra, on each of which parts engagement elements, which are accessible from one side of the intervertebral implant, for a manipulation instrument are disposed, in order to minimize the structural height of the intervertebral implant upon insertion into an intervertebral space, it is proposed that the upper part and lower part each have protrusions and recesses aimed at the respectively other part, which are offset laterally from one another in such a way that when the upper part has been brought close to the lower part they mesh with one another; and that the engagement elements on the upper part and on the lower part are each disposed in protrusions of these parts in such a way that the engagement elements of the upper part and lower part are located side by side and at least partly overlap in the direction of the height of the intervertebral implant.

**32 Claims, 4 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,425,773 A | | 6/1995 | Boyd et al. |
| 5,507,816 A | | 4/1996 | Bullivant |
| 5,534,030 A | | 7/1996 | Navarro et al. |
| 5,545,229 A | * | 8/1996 | Parsons et al. .......... 623/17.15 |
| 5,556,431 A | | 9/1996 | Buttner-Janz et al. |
| 5,562,738 A | | 10/1996 | Boyd et al. |
| 5,571,109 A | | 11/1996 | Bertagnoli |
| 5,609,636 A | * | 3/1997 | Kohrs et al. ............ 623/17.16 |
| 5,676,701 A | | 10/1997 | Yuan et al. |
| 5,683,465 A | | 11/1997 | Shinn et al. |
| 5,782,832 A | | 7/1998 | Larsen et al. |
| 5,824,094 A | | 10/1998 | Serhan et al. |
| 5,865,848 A | | 2/1999 | Baker |
| 5,888,226 A | * | 3/1999 | Rogozinski ............ 623/17.16 |
| 5,895,428 A | | 4/1999 | Berry |
| 5,899,941 A | | 5/1999 | Nishijima et al. |
| 6,010,502 A | * | 1/2000 | Bagby ........................ 606/61 |
| 6,063,121 A | | 5/2000 | Xavier et al. |
| 6,096,080 A | * | 8/2000 | Nicholson et al. ....... 623/17.16 |
| 6,113,637 A | | 9/2000 | Gill et al. |
| 6,146,421 A | | 11/2000 | Gordon et al. |
| 6,402,785 B1 | * | 6/2002 | Zdeblick et al. ......... 623/17.16 |
| 6,413,278 B1 | * | 7/2002 | Marchosky .............. 623/17.16 |
| 6,641,614 B1 | * | 11/2003 | Wagner et al. .......... 623/17.15 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 28 04 936 | 8/1979 |
| FR | 2 718 635 | 10/1995 |
| FR | 2 737 656 | 2/1997 |
| JP | 2-261446 | 10/1990 |

* cited by examiner



FIG.1





FIG.4



FIG.5



FIG.6



FIG.7

1

# INTERVERTEBRAL IMPLANT

The invention relates to an intervertebral implant, having an upper part that has a support face for a vertebra and a lower part that has a support face for an adjacent vertebra, on each of which parts engagement elements, which are accessible from one side of the intervertebral implant, for a manipulation instrument are disposed, in order to minimize the structural height of the intervertebral implant upon insertion into an intervertebral space.

One such intervertebral implant is known for instance from U.S. Pat. No. 5,314,477. This intervertebral implant is used to replace a disk removed from the intervertebral space, and accordingly the intervertebral implant must have a relatively low structural height, since it has to fit into the gap between vertebrae. This is particularly difficult if an additional pivot insert is also embedded between the upper part and the lower part, as is the case in the known intervertebral implant of U.S. Pat. No. 5,314,477.

But even in two-piece intervertebral implants, difficulties also arise, especially if the implants also have pins and other protrusions on their support faces that are intended for anchoring the intervertebral implant in the bone. Often, these parts can be inserted only by widening the intervertebral space greatly. Not only is this difficult, but it also presents the risk of injuries.

Since the intervertebral space has a relatively low height, it is also difficult for engagement elements that a manipulation instrument can engage to be secured to both parts of the intervertebral implant. It is conventional to have such manipulation instruments engage the upper part and the lower part separately, for instance by means of pins that are inserted into bores on the upper part and lower part, so that with the manipulation instrument, the two parts of the intervertebral implant can be inserted into the intervertebral space and can optionally also be varied in terms of their spacing from one another, thereby allowing a certain spreading open of the intervertebral space. In this respect, reference is made to the pincerlike manipulation instrument of U.S. Pat. No. 5,314,477.

Because of the strong forces, it is necessary to provide a certain structural height for the engagement elements; for instance, the receiving bores must have a certain diameter. This dictates a minimum structural height for the upper part and for the lower part, and in conventional intervertebral implants, the structural heights of the upper part and lower part are thus added together, so that even if the upper and lower parts rest directly on one another, a relatively great structural height of the intervertebral implant is still unavoidable.

It is the object of the invention to embody an intervertebral implant of this generic type in such a way that the minimum structural height is reduced, to make it easier to insert the intervertebral implant into the intervertebral space.

In an intervertebral implant of the type described at the outset, this object is attained in accordance with the invention in that it is proposed that the upper part and lower part each have protrusions and recesses aimed at the respectively other part, which are offset laterally from one another in such a way that when the upper part has been brought close to the lower part they mesh with one another; and that the engagement elements on the upper part and on the lower part are each disposed in protrusions of these parts in such a way that the engagement elements of the upper part and lower part are located side by side and at least partly overlap in the direction of the height of the intervertebral implant.

2

In such an embodiment, a minimal structural height of the two intervertebral implant parts resting on one another can be attained, since the engagement elements, which cannot fall below a minimal structural height, are each disposed in protrusions of the upper part and lower part, or in other words in the parts of the upper part and lower part that have the greatest structural height. These regions of great structural height are embodied as protrusions, next to which are respective recesses, into which the protrusions of the respectively other part can dip. As a result, on the one hand, the engagement elements for the manipulation instruments are located side by side, and on the other, they can at least partly overlap, so that the total structural height of the parts resting on one another of the intervertebral implant can be reduced markedly compared to conventional intervertebral implants. The result is accordingly an internested arrangement of the upper and lower parts, with maximal exploitation of the available material height.

It is favorable if the engagement elements are insertion openings for pinlike retaining elements of a manipulation instrument; because of the described construction, these insertion openings can have a relatively large diameter and can thus receive strong retaining pins, and nevertheless a relatively low structural height of the intervertebral implant with parts resting directly on one another is obtained.

It is advantageous if the insertion openings extend substantially parallel to the support faces; once again, this prevents an increase in the structural height of the intervertebral implant parts.

In a preferred embodiment, it is provided that the lower part has a central indentation, opposite the lower support face, which indentation is surrounded by a U-shaped edge. Thus with the lower part and upper part resting directly on one another, the indentation serves to receive a protrusion on the upper part.

It is advantageous if the upper part has a central protrusion that fits substantially in complimentary fashion into the indentation; that is, the total volume of the indentation is utilized for the protrusion.

It is also advantageous if the engagement elements of the lower part are disposed on the two ends of the U-shaped edge, or in other words are located on the outside.

Conversely, the engagement elements of the upper part can be disposed on the central protrusion of the upper part, or in other words are located farther inward than the engagement elements of the upper part.

In particular, the engagement elements of the upper part can be disposed near the lateral edges of the central protrusion, so that for the upper part as well, the spacing of the engagement elements can be selected to be relatively great; as a result, both the upper part and the lower part can be reliably secured against skewing.

It should already be noted here that the words "lower part" and "upper part" do not necessarily say anything about the installed position of the intervertebral implant in the spinal column; the part called the "lower part" could in fact be above in the spinal column. What is essential is merely that the upper part and lower part define the intervertebral implant on opposite sides of the implant.

It is especially advantageous if the upper part and/or the lower part is embodied in substantially platelike fashion; these parts naturally, in accordance with the design of the invention, have protrusions and recesses that are oriented toward the respectively other part. The platelike embodiment, however, leads as a whole to a very low structural height of the intervertebral implant.

3

In a preferred embodiment, the lower part and the upper part each have a respective receptacle for a pivot insert. This pivot insert, which is placed between the upper part and lower part after the insertion of the intervertebral implant, supports the upper part and lower part against one another; it takes on a resilient function, for instance, and furthermore leads to a certain pivotability of the two parts of an intervertebral implant relative to one another, so that a pivotability of the adjacent vertebra is thus attainable as well.

In particular, it is advantageous if the pivot insert has at least one spherical support face, which engages the correspondingly spherically shaped receptacle.

It is favorable if the spherical receptacle is disposed in the central protrusion of the upper part.

It is also advantageous if the central indentation of the lower part forms the receptacle for the pivot insert.

According to a preferred embodiment of the invention, it is provided that the pivot insert can be inserted from the side into the receptacle, which has the engagement elements for a manipulation instrument. This is the side from which the upper part and lower part are introduced into the intervertebral space, and it is also from this side that the pivot insert can then be thrust between the already-inserted parts of the intervertebral implant.

It is favorable if the pivot insert is insertable into the receptacle along a guide.

In that the insert as well is preferably embodied substantially in platelike fashion.

An especially favorable design is obtained if the insert substantially completely fills up the central receptacle and with its spherical support face protrudes from the receptacle.

The ensuing description of preferred embodiments of the invention serves in conjunction with the drawing to provide further explanation. Shown are:

FIG. 1: a perspective exploded view of an intervertebral implant with an upper part, a lower part, and a pivot insert that can be inserted between them;

FIG. 2: a perspective exploded view of the upper part and the lower part of the intervertebral implant, without an inserted pivot insert;

FIG. 3: a view similar to FIG. 2 with the pivot insert inserted into the lower part;

FIG. 4: a perspective view of the upper part and the lower part of the intervertebral implant with maximum mutual proximity;

FIG. 5: a front view of the intervertebral implant of FIG. 4;

FIG. 6: a perspective view of the intervertebral implant with the pivot insert inserted; and

FIG. 7: a cross-sectional view of the intervertebral implant of FIG. 6.

The intervertebral implant 1 shown in the drawing includes three parts, namely a platelike upper part 2, a platelike lower part 3, and a substantially platelike pivot insert 4.

The upper part 2 is embodied flat on its top, thus creating a support face 5, on which various kinds of protrusions 6, 7 are disposed which serve the purpose of anchoring the upper part 2 in a vertebra that rests, with its end face toward an intervertebral space, on the support face 5.

The upper part 2 is substantially rectangular in cross section; in the exemplary embodiment shown, a longitudinal edge 8 curves outward.

On the two short sides of this rectangle, the thickness of the platelike upper part 2 is less than in the central region, so that along the short sides of the upper part 2, downward-pointing recesses 9 each extending parallel to these edges

4

are formed that are open toward the outside. The central region of the upper part 2 is located between the two recesses 9 and thus has a greater thickness or height and thus forms a downward-pointing protrusion 10 embodied between the two recesses 9. This protrusion is defined by an underside 11, which extends substantially parallel to the support face 5 and in which there is a spherical indentation 12, which forms a bearing plate for the pivot insert 4.

The lower part 3 of the intervertebral implant 1 is also platelike in embodiment and on its underside has a flat support face 13 with protrusions 14 and 15, which correspond to the protrusions 6 and 7 of the support face 5. On the side remote from the support face 13, the thickness of the lower part 3 is less in the central region than in an outer region. This outer region of greater thickness has the form of a U, with two parallel legs 16, 17, which extend parallel to the short edges of the lower part 3, which in cross section is embodied similarly to the upper part 2, and with a crosspiece 18 that connects the two legs 16 and 17 on one end. The region enclosed by the legs 16 and 17 and the crosspiece 18 forms a central indentation 19, whose area is substantially equivalent to the area of the central protrusion 10 of the upper part 2, while the disposition and length of the legs 16 and 17 correspond essentially to the disposition and length of the recesses 9 on the upper part 2. As a result, it is possible to place the upper 2 and lower part 3 on one another in such a way that the central protrusion 10 of the upper 2 dips into the central indentation 19, while the legs 16 and 17 of the lower part 3 dip into the recesses 9 of the upper part 2 (FIG. 4); in this position, the upper part 2 and lower part 3 have maximum proximity to one another and a minimal structural height.

The dimensions are selected such that the various recesses are essentially filled completely by the protrusions dipping into them.

Blind bores 20 and 21 are machined into the two legs 16 and 17 of the lower part 3, extending parallel to these legs 16, 17 from their free ends; the diameter of these bores is relatively great in proportion to the height of the legs 16, 17, and this diameter is in fact greater than the thickness or height of the lower part 3 in the region of the central indentation 19.

Blind bores 22 and 23, which extend parallel to the blind bores 20 and 21 in the lower part 3, are machined into the central protrusion 10 of the upper part 2, in the vicinity of its side edges. These blind bores 22 and 23 again have a relatively great diameter, which corresponds to a substantial portion of the height of the protrusion 10 and is greater than the thickness of the upper part 2 in the region of the recesses 9.

When the upper part 2 and lower part 3 rest tightly against one another in the manner described, the blind bores 20 and 21 of the lower part 3 and the blind bores 22 and 23 of the upper part 2 overlap at least partly in the direction of the height of the intervertebral implant 1, as is clearly shown in FIGS. 4 and 5.

The blind bores 20, 21, 22 and 23 serve as receptacles for pinlike extensions of a manipulation instrument, not shown in the drawing, and thus form engagement elements for this manipulation instrument, which in this way separately engages the upper part 2 and the lower part 3. With this manipulation instrument, it is possible to introduce the upper part 2 and the lower part 3 of the intervertebral implant 1 into an intervertebral space; the very low structural height of the intervertebral implant 1 facilitates this introduction, which can be done essentially without major widening of the intervertebral space.

5

After the introduction of the upper part **2** and lower part **3** in this way, the two parts of the intervertebral implant **1** can be spread apart; that is, their spacing is increased, for instance with the aid of the manipulation instrument that is holding the upper **2** and the lower part **3**.

In this spread-open position of the upper part **2** and lower part **3**, it is possible to thrust the pivot insert **4** between the upper part **2** and the lower part **3**.

This pivot insert is constructed essentially in the shape of a plate, which has a flat underside **24** and a spherically upward-curved top side **25**. The outer dimensions of the platelike pivot insert correspond to those of the central indentation **19** in the lower part **3**, so that the pivot insert **4** can be thrust into this indentation, filling it up, specifically from the side toward which the blind bores **20, 21, 22, 23** open. Guide strips **26** on the side edges of the pivot insert **4** engage corresponding guide grooves **27** in the legs **16, 17**, so that an insertion guide for the pivot insert **4** is formed that fixes it in the lower part **3** after its insertion. The inserted pivot insert **4**, after insertion, fills up the indentation **19** and protrudes with its spherically curved top side **25** upward past the top side of the lower part **3**; the spherical top side **25** dips in complimentary fashion into the spherically curved indentation **12** on the underside of the protrusion **10**, where with the upper part **2** it forms a ball joint, which enables a certain pivotability of the upper part **2** relative to the lower part **3** (FIG. **7**).

The pivot insert **4** can have a detent protrusion **28** on its flat underside **24**; when the pivot insert **4** is inserted into the lower part **3**, this protrusion locks elastically into a detent recess **29** that is located on the bottom of the indentation **19**; as a result, the pivot insert **4** is also fixed in the insertion direction in the indentation **19**.

The upper part **2** and lower part **3** are preferably made of physiologically safe metal, such as titanium, while the pivot insert **4** preferably comprises a likewise physiologically safe plastic material, such as polyethylene.

These support faces **5** and **13** can be embodied in an especially bone-compatible way; for instance, this surface can be roughened by a coating, so that optimal anchoring to the adjacent bone material is obtained.

The invention may also be described as follows, which description is the full equivalent of the preceding discussion. An upper part **2** has an upper surface **5** for engaging a vertebrae and a lower surface which comprises a downward pointing protrusion **10** between side recesses **9** and a rounded portion, preferably in the form of a concave spherical indentation **12**. A lower part **3** has a lower surface **13** for engaging a vertebrae. A pivot insert **4**, when joined to the lower part **3**, as shown for example in FIG. **3**, provides a convex upper surface portion **25**, preferably spherical, in operational engagement with the rounded portion **12** of the upper part.

The lower part **3** and pivot insert **4** may, taken together, be described as a lower part formed in two pieces, namely the elements **3** and **4**, wherein the element **3** may be referred to as a lower piece and the element **4** may be referred to as an upper piece.

The upper and lower parts include on their upper surface and lower surface, respectively, protrusions **6** and **14** which may also be referred to as anchors, which anchor the upper and lower parts, respectively, into the adjacent vertebrae that form the intervertebral space and rest against the respective upper and lower surfaces.

As shown in the figures, the anchors **6** and **14** each have a zigzag edge which comprise teeth. As best shown in FIG. **7**, anchor **6** is greater in height than the remainder of the

6

upper part **2**, i.e., from surface **5** to the bottom of protrusion **10**. Similarly, anchor **14** is greater in height than the remainder of the lower part **3**, i.e., from lower surface **13** to the top of walls **16, 17** and **18**. As also shown in the figures, in the preferred embodiment, the length of the anchors **6** and **14**, i.e., in the direction from the anterior to the posterior thereof, is greater than one half of the overall dimension of its respective part from its anterior to its posterior, passing through that anchor. As also noted in the figures, the vertical height of each anchor **6** and **14** is greater than its width which is the dimension taken horizontally in FIG. **5** or **7**.

The lower part comprises three walls including parallel side walls **16** and **17** and a rear wall **18**. These walls form between them a central indentation **19** which comprises a recess with a generally flat surface. The fourth side of the recess is open. The pivot insert **4** has a detent **28** that snap-fits into a detent recess **29** formed in the generally flat surface of recess **19**.

As best shown in FIGS. **2, 4** and **5**, in the absence of pivot insert **4**, the protrusion **10** of upper part **2** can fit down between walls **16, 17** and **18** of the lower part **2**. This fitting of protrusion **10** within the recess **19**, surrounded by walls **16, 17** and **18** may be referred to as "nesting" since the protrusion **10** essentially "nests" within recess **19**. With the upper and lower parts in this nested condition, as shown in FIGS. **4** and **5**, the combined height of the upper and lower parts **2** and **3**, i.e., the height from surface **13** to surface **5**, is less than the total additive height of the upper and lower parts, taken separately, I.e., less than the total of the height from surface **13** to the top of walls **16, 17** and **18** plus the height from surface **5** to the bottom of protrusion **10**.

To reach its final destination within an intervertebral space, the implant must of course be moved along a path, i.e., an insertion direction from outside of the patient, into the patient, and then into the intervertebral space. In the illustrated embodiment, as described above, instruments would engage apertures **20, 21, 22** and **23** to move the implant along a path in an insertion direction. The anchors **6** and **14** are parallel to this path. As a point of reference, lateral planes parallel to the direction of this path pass through the outermost boundaries of the implant which, in the preferred embodiment, would be the opposed side surfaces of the parts. Thus, in the illustrated embodiment, the path would be parallel to the front to rear (anterior to posterior) direction, wherein, during insertion, the rear (posterior) of the implant would constitute the lead end and the front (anterior) thereof would constitute the trailing end.

Although the invention has been described in detail with respect to preferred embodiments thereof, it will be apparent that the invention is capable of numerous modifications and variations, apparent to those skilled in the art, without departing from the spirit and scope of the invention.

What is claimed is:

1. An intervertebral implant insertable between adjacent vertebrae, comprising,
   an upper part having an upper surface for engaging a vertebrae and a lower surface which includes a rounded portion,
   a lower part having a lower surface for engaging a vertebrae and an upper surface portion in operative engagement with the rounded portion of the upper part,
   said implant being constructed to be the sole implant in its intervertebral space,
   the implant having a lead end which leads as the implant is inserted along a path into the intervertebral space and a trailing end opposite the lead end, and lateral planes

which pass through the outermost boundaries of the implant and parallel to the said path, and

a single anchor on each of the upper surface of the upper part and the lower surface of the lower part, each said anchor being elongated, having a height greater than its width, and located along a line parallel to said path, the two anchors lying essentially in the same vertical plane, which plane is essentially midway between said lateral planes, each said anchor being adapted to enter a groove in the adjacent vertebrae as the implant moves along said path into the intervertebral space, to anchor its respective part to the vertebrae which its surface engages.

2. An intervertebral implant according to claim 1, wherein the rounded portion of the upper part is concave and the upper surface portion of the lower part is convex.

3. An intervertebral implant according to claim 2, wherein the lower part is formed in two pieces including a lower piece which has the said lower surface and an upper piece which has the upper surface portion.

4. An intervertebral implant according to claim 1, wherein the height of at least one anchor is greater than the height of the remainder of its respective part.

5. An intervertebral implant according to claim 4, wherein each anchor is greater in height than the remainder of its respective part.

6. An intervertebral implant according to claim 1, the length of at least one anchor in the direction along the midline being greater than one half of the entire front to rear dimension of its respective part.

7. An intervertebral implant according to claim 6, wherein the length of both anchors in the direction along the midline are greater than one half of the entire front to rear dimension of their respective upper or lower part.

8. An intervertebral implant according to claim 1, wherein the rounded portion of the upper part and the upper surface portion of the lower part are spherical.

9. An intervertebral implant according to claim 1, the upper and lower parts, in plan view, being generally rectangular.

10. An intervertebral implant according to claim 9, wherein the single anchors are substantially parallel to the shorter sides of the generally rectangular shape of the upper and lower parts.

11. An intervertebral implant according to claim 1, including apertures in the trailing ends of the upper and lower parts for receiving inserting instruments.

12. An intervertebral implant according to claim 1, said anchors having teeth to prevent removal from their respective grooves.

13. An intervertebral implant according to claim 1, wherein the rounded portion of the upper part is partially spherical and concave, and the upper surface portion of the lower part is partially spherical and convex.

14. An intervertebral implant according to claim 13, wherein the lower part is formed in two pieces, including a lower piece which has the lower surface thereon and an upper piece which fits into a recess in the lower piece and has the said partially spherical and convex portion.

15. An intervertebral implant according to claim 14, wherein, in the absence of the upper piece of the lower part, the rounded portion of the upper part can nest into the recess in the lower piece.

16. An intervertebral implant according to claim 15, wherein, in the nested condition, the overall height of the upper and lower parts is less than the additive total height of the upper and lower parts, taken separately.

17. An intervertebral implant according to claim 14, wherein the recess in the lower part is a generally flat surface with three walls including two opposite side walls and an end wall and including an opening opposite the end wall.

18. An intervertebral implant according to claim 17, wherein the upper piece of the lower part includes a means for snap fitting into the lower piece of the lower part.

19. An intervertebral implant insertable between adjacent vertebrae, comprising,

a generally rectangular upper part having an upper surface for engaging a vertebrae and a lower surface which includes a rounded portion,

a generally rectangular lower part having a lower surface for engaging a vertebrae and having an upper surface portion in operative engagement with the rounded portion of the upper part,

said implant being constructed to be the sole implant in its intervertebral space,

one of the longer sides of the generally rectangular upper and lower parts comprising a leading end and the other of the longer sides of the generally rectangular upper and lower parts being a trailing end as the implant is moved in an insertion direction to be inserted into the intervertebral space, and

a single anchor on each of the upper surface of the upper part and the lower surface of the lower part, the two single anchors being elongated, each having a height greater than its width, and the two single anchors lying in essentially the same vertical plane, which plane is located essentially midway between the short sides of the generally rectangular upper and lower parts and thus parallel to the insertion direction, and each anchor being adapted to enter a groove in the adjacent vertebrae as the implant moves in said insertion direction into the intervertebral space, to anchor its respective part to the vertebrae which its surface engages.

20. An intervertebral implant according to claim 19, wherein the rounded portion of the upper part is concave and the upper surface portion of the lower part is convex.

21. An intervertebral implant according to claim 20, wherein the lower part is formed in two pieces including a lower piece which has the said lower surface and an upper piece which has the upper surface portion.

22. An intervertebral implant according to claim 19, wherein the height of at least one anchor is greater than the height of the remainder of its respective part.

23. An intervertebral implant according to claim 22, wherein each anchor is greater in height than the remainder of its respective part.

24. An intervertebral implant according to claim 19, the length of at least one anchor in the insertion direction being greater than one half of the entire dimension of its respective part in the insertion direction from said leading end to said trailing end.

25. An intervertebral implant according to claim 24, wherein the length of both anchors in the insertion direction are greater than one half of the entire dimension of their respective upper or lower part in the insertion direction from said leading end to said trailing end.

26. An intervertebral implant according to claim 19, wherein the rounded portion of the upper part and the upper surface portion of the lower part are spherical.

27. An intervertebral implant according to claim 19, wherein the rounded portion of the upper part is partially spherical and concave, and the upper surface portion of the lower part is partially spherical and convex.

28. An intervertebral implant according to claim **27**, wherein the lower part is formed in two pieces, including a lower piece which has the lower surface thereon and an upper piece which fits into a recess in the lower piece and has the said partially spherical convex portion.

29. An intervertebral implant according to claim **28**, wherein, in the absence of the upper piece of the lower part, the rounded portion of the upper part can nest into the recess in the lower part.

30. An intervertebral implant according to claim **29**, wherein, in the nested condition, the overall height of the upper and lower parts is less than the additive total height of the upper and lower parts, taken separately.

31. An intervertebral implant according to claim **28**, wherein the recess in the lower part is a generally flat surface with three walls including two opposite side walls and an end wall and including an opening opposite the end wall.

32. An intervertebral implant according to claim **31**, wherein the second upper piece of the lower part includes a means for snap fitting into the first lower piece of the lower part.

\* \* \* \* \*



## (12) EX PARTE REEXAMINATION CERTIFICATE (7832nd)
# United States Patent
### Marnay et al.

(10) Number: **US 6,936,071 C1**
(45) Certificate Issued: **Oct. 26, 2010**

(54) **INTERVERTEBRAL IMPLANT**

(75) Inventors: **Thierry Marnay**, Montpellier (FR); **Boris Beyersdorff**, Tuttlingen (DE)

(73) Assignee: **Spine Solutions Inc.**, New York, NY (US)

**Reexamination Request:**
No. 90/009,542, Jul. 24, 2009
No. 90/010,655, Aug. 24, 2009

**Reexamination Certificate for:**
Patent No.: **6,936,071**
Issued: **Aug. 30, 2005**
Appl. No.: **10/018,402**
Filed: **Jun. 12, 2002**

(22) PCT Filed: **Jul. 2, 1999**

(86) PCT No.: **PCT/EP99/04628**
§ 371 (c)(1), (2), (4) Date: **Jun. 12, 2002**

(87) PCT Pub. No.: **WO01/01893**
PCT Pub. Date: **Jan. 11, 2001**

(51) Int. Cl.
*A61F 2/44* (2006.01)

(52) U.S. Cl. .................................. **623/17.15**; 623/17.14
(58) Field of Classification Search .................. None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 114,816 A | 5/1871 | Hiestand |
| 3,320,951 A | 5/1967 | Wittebol |
| 3,486,505 A | 12/1969 | Morrison |
| 3,510,883 A | 5/1970 | Cathcart |
| 3,579,829 A | 5/1971 | Sampson |
| 3,740,769 A | 6/1973 | Haboush |
| 3,875,595 A | 4/1975 | Froning |
| 3,903,549 A | 9/1975 | Deyerle |
| D243,286 S | 2/1977 | Deyerle |
| 4,021,864 A | 5/1977 | Waugh |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 624573 | 8/1981 |
| DE | 2263842 A1 | 7/1974 |
| DE | 2804936 | 8/1979 |
| DE | 3023353 | 4/1981 |
| DE | 3526742 A1 | 1/1987 |

(Continued)

OTHER PUBLICATIONS

U.S. Appl. No. 10/998,951, filed Nov. 30, 2004, Marnay et al.
U.S. Appl. No. 11/185,781, filed Jul. 21, 2005, Marnay.
U.S. Appl. No. 11/766,182, filed Jun. 21, 2007, Marnay.

(Continued)

*Primary Examiner*—David O. Reip

(57) **ABSTRACT**

In an intervertebral implant, having an upper part that has a support face for a vertebra and a lower part that has a support face for an adjacent vertebra, on each of which parts engagement elements, which are accessible from one side of the intervertebral implant, for a manipulation instrument are disposed, in order to minimize the structural height of the intervertebral implant upon insertion into an intervertebral space, it is proposed that the upper part and lower part each have protrusions and recesses aimed at the respectively other part, which are offset laterally from one another in such a way that when the upper part has been brought close to the lower part they mesh with one another; and that the engagement elements on the upper part and on the lower part are each disposed in protrusions of these parts in such a way that the engagement elements of the upper part and lower part are located side by side and at least partly overlap in the direction of the height of the intervertebral implant.



U.S. PATENT DOCUMENTS

| Patent Number | | Date | Inventor |
|---|---|---|---|
| 4,034,746 | A | 7/1977 | Williams |
| 4,038,897 | A | 8/1977 | Murray et al. |
| 4,038,987 | A | 8/1977 | Komiya |
| 4,232,404 | A | 11/1980 | Samuelson et al. |
| 4,309,777 | A | 1/1982 | Patil |
| 4,349,921 | A | 9/1982 | Kuntz |
| 4,467,802 | A | 8/1984 | Maslanka |
| 4,470,158 | A | 9/1984 | Pappas et al. |
| 4,545,374 | A | 10/1985 | Jacobson |
| 4,550,450 | A | 11/1985 | Kinnett |
| 4,622,959 | A | 11/1986 | Marcus |
| 4,653,487 | A | 3/1987 | Maale |
| 4,681,589 | A | 7/1987 | Tronzo |
| 4,697,586 | A | 10/1987 | Gazale |
| 4,714,469 | A | 12/1987 | Kenna |
| 4,736,738 | A | 4/1988 | Lipovsek et al. |
| 4,743,262 | A | 5/1988 | Tronzo |
| 4,759,766 | A | 7/1988 | Buettner-Janz et al. |
| 4,759,769 | A | 7/1988 | Hedman et al. |
| 4,770,661 | A | 9/1988 | Oh |
| 4,805,607 | A | 2/1989 | Engelhardt et al. |
| 4,863,476 | A | 9/1989 | Shepperd |
| 4,874,389 | A | 10/1989 | Downey |
| 4,875,474 | A | 10/1989 | Border |
| 4,892,545 | A | 1/1990 | Day et al. |
| 4,932,975 | A | 6/1990 | Main et al. |
| 4,936,863 | A | 6/1990 | Hofmann |
| 4,946,378 | A | 8/1990 | Hirayama et al. |
| 4,997,432 | A | 3/1991 | Keller |
| 5,002,576 | A | 3/1991 | Fuhrmann et al. |
| 5,004,476 | A | 4/1991 | Cook |
| 5,037,438 | A | 8/1991 | Davidson |
| 5,062,850 | A | 11/1991 | MacMillan et al. |
| 5,071,437 | A | 12/1991 | Steffee |
| 5,108,442 | A | 4/1992 | Smith |
| 5,122,130 | A | 6/1992 | Keller |
| 5,171,280 | A | 12/1992 | Baumgartner |
| 5,192,327 | A | 3/1993 | Brantigan |
| 5,211,645 | A | 5/1993 | Baumgartner et al. |
| 5,228,455 | A | 7/1993 | Barcel |
| 5,236,460 | A | 8/1993 | Barber |
| 5,258,031 | A | 11/1993 | Salib et al. |
| 5,271,737 | A | 12/1993 | Baldwin et al. |
| 5,282,868 | A | 2/1994 | Bahler |
| 5,290,312 | A | 3/1994 | Kojimoto et al. |
| 5,306,309 | A | 4/1994 | Wagner et al. |
| 5,314,477 | A | 5/1994 | Marnay |
| 5,336,232 | A | 8/1994 | Green et al. |
| 5,344,458 | A | 9/1994 | Bonutti |
| 5,364,397 | A | 11/1994 | Hayes et al. |
| 5,370,697 | A | 12/1994 | Baumgartner |
| 5,383,888 | A | 1/1995 | Zvenyatsky et al. |
| 5,395,317 | A | 3/1995 | Kambin |
| 5,401,269 | A | 3/1995 | Buttner-Janz et al. |
| 5,409,492 | A | 4/1995 | Jones et al. |
| 5,423,825 | A | 6/1995 | Levine |
| 5,425,773 | A | 6/1995 | Boyd et al. |
| 5,431,658 | A | 7/1995 | Moskovich |
| 5,443,514 | A | 8/1995 | Steffee |
| 5,484,437 | A | 1/1996 | Michelson |
| 5,489,307 | A | 2/1996 | Kuslich et al. |
| 5,501,654 | A | 3/1996 | Failla et al. |
| 5,505,732 | A | 4/1996 | Michelson |
| 5,507,816 | A | 4/1996 | Bullivant |
| 5,509,934 | A | 4/1996 | Cohen |
| 5,534,029 | A | 7/1996 | Shima |
| 5,534,030 | A | 7/1996 | Navarro et al. |
| 5,554,191 | A | 9/1996 | Lahille et al. |
| 5,556,431 | A | 9/1996 | Buttner-Janz et al. |
| 5,562,736 | A | 10/1996 | Ray et al. |
| 5,562,738 | A | 10/1996 | Boyd et al. |
| 5,571,109 | A | 11/1996 | Bertagnoli |
| 5,591,235 | A | 1/1997 | Kuslich |
| 5,609,636 | A | 3/1997 | Kohrs et al. |
| 5,658,347 | A | 8/1997 | Sarkisian et al. |
| 5,676,701 | A | 10/1997 | Yuan et al. |
| 5,683,465 | A | 11/1997 | Shinn et al. |
| 5,702,469 | A | 12/1997 | Whipple et al. |
| 5,702,486 | A | 12/1997 | Craig et al. |
| 5,716,415 | A | 2/1998 | Steffee |
| 5,720,751 | A | 2/1998 | Jackson |
| 5,722,977 | A | 3/1998 | Wilhelmy |
| 5,755,811 | A | 5/1998 | Tanamal et al. |
| 5,776,199 | A | 7/1998 | Michelson |
| 5,782,830 | A | 7/1998 | Farris |
| 5,782,832 | A | 7/1998 | Larsen et al. |
| 5,797,909 | A | 8/1998 | Michelson |
| 5,800,547 | A | 9/1998 | Schäfer et al. |
| 5,824,094 | A | 10/1998 | Serhan et al. |
| D401,335 | S | 11/1998 | Koros et al. |
| 5,865,848 | A | 2/1999 | Baker |
| 5,885,300 | A | 3/1999 | Tokuhashi et al. |
| 5,888,226 | A | 3/1999 | Rogozinski |
| 5,895,428 | A | 4/1999 | Berry |
| 5,897,593 | A | 4/1999 | Kohrs et al. |
| 5,899,901 | A | 5/1999 | Middleton |
| 5,899,941 | A | 5/1999 | Nishijima et al. |
| 5,951,564 | A | 9/1999 | Schroder et al. |
| 6,006,174 | A | 12/1999 | Lin et al. |
| 6,010,502 | A | 1/2000 | Bagby |
| 6,017,342 | A | 1/2000 | Rinner |
| 6,033,405 | A | 3/2000 | Winslow et al. |
| 6,036,692 | A | 3/2000 | Burel et al. |
| 6,042,582 | A | 3/2000 | Ray et al. |
| 6,059,790 | A | 5/2000 | Sand et al. |
| 6,063,088 | A | 5/2000 | Winslow |
| 6,063,121 | A | 5/2000 | Xavier et al. |
| 6,080,155 | A | 6/2000 | Michelson |
| 6,083,225 | A | 7/2000 | Winslow et al. |
| 6,086,595 | A | 7/2000 | Yonemura et al. |
| 6,096,038 | A | 8/2000 | Michelson |
| 6,096,080 | A | 8/2000 | Nicholson et al. |
| 6,102,950 | A | 8/2000 | Vaccaro |
| 6,102,954 | A | 8/2000 | Albrektsson et al. |
| 6,110,179 | A | 8/2000 | Flivik et al. |
| 6,113,602 | A | 9/2000 | Sand |
| 6,113,637 | A | 9/2000 | Gill et al. |
| 6,113,638 | A | 9/2000 | Williams et al. |
| 6,126,660 | A | 10/2000 | Dietz |
| 6,126,674 | A | 10/2000 | Janzen |
| 6,146,421 | A | 11/2000 | Gordon et al. |
| 6,156,040 | A | 12/2000 | Yonemura et al. |
| 6,159,215 | A | 12/2000 | Urbahns et al. |
| 6,171,339 | B1 | 1/2001 | Houfburg et al. |
| 6,174,311 | B1 | 1/2001 | Branch et al. |
| 6,224,599 | B1 | 5/2001 | Baynham et al. |
| 6,238,414 | B1 | 5/2001 | Griffiths |
| 6,241,769 | B1 | 6/2001 | Nicholson et al. |
| 6,251,140 | B1 | 6/2001 | Marino et al. |
| 6,261,296 | B1 | 7/2001 | Aebi et al. |
| 6,264,655 | B1 | 7/2001 | Pisharodi |
| 6,270,498 | B1 | 8/2001 | Michelson |
| 6,296,647 | B1 | 10/2001 | Robioneck et al. |
| 6,309,421 | B1 | 10/2001 | Pisharodi |
| 6,368,350 | B1 | 4/2002 | Erickson et al. |
| 6,368,351 | B1 | 4/2002 | Glenn et al. |
| 6,368,353 | B1 | 4/2002 | Arcand |
| 6,375,681 | B1 | 4/2002 | Truscott |
| 6,402,785 | B1 | 6/2002 | Zdeblick et al. |
| 6,436,139 | B1 | 8/2002 | Shapiro et al. |
| 6,440,142 | B1 | 8/2002 | Ralph et al. |

| | | | |
|---|---|---|---|
| 6,440,168 B1 | 8/2002 | Cauthen |
| 6,440,169 B1 | 8/2002 | Elberg et al. |
| 6,447,547 B1 | 9/2002 | Michelson |
| 6,478,800 B1 | 11/2002 | Fraser et al. |
| 6,478,801 B1 | 11/2002 | Ralph et al. |
| 6,478,823 B1 | 11/2002 | Michelson |
| 6,500,206 B1 | 12/2002 | Bryan |
| 6,517,544 B1 | 2/2003 | Michelson |
| 6,558,424 B2 | 5/2003 | Thalgott |
| 6,565,574 B2 | 5/2003 | Michelson |
| 6,595,995 B2 | 7/2003 | Zdeblick et al. |
| 6,599,294 B2 | 7/2003 | Fuss et al. |
| 6,610,065 B1 | 8/2003 | Branch et al. |
| 6,613,091 B1 | 9/2003 | Zdeblick et al. |
| 6,635,060 B2 | 10/2003 | Hanson et al. |
| 6,641,582 B1 | 11/2003 | Hanson et al. |
| 6,641,614 B1 | 11/2003 | Wagner et al. |
| 6,652,533 B2 | 11/2003 | O'Neil |
| 6,652,534 B2 | 11/2003 | Zucherman et al. |
| 6,712,819 B2 | 3/2004 | Zucherman et al. |
| 6,712,825 B2 | 3/2004 | Aebi et al. |
| 6,733,505 B2 | 5/2004 | Li |
| 6,740,118 B2 | 5/2004 | Eisermann |
| 6,746,454 B2 | 6/2004 | Winterbottom et al. |
| 6,755,841 B2 | 6/2004 | Fraser et al. |
| 6,770,074 B2 | 8/2004 | Michelson |
| 6,824,565 B2 | 11/2004 | Muhanna et al. |
| 6,875,213 B2 | 4/2005 | Michelson |
| 6,896,676 B2 | 5/2005 | Zubok et al. |
| 6,936,071 B1 | 8/2005 | Marnay et al. |
| 6,964,687 B1 | 11/2005 | Bernard et al. |
| 6,966,912 B2 | 11/2005 | Michelson |
| 7,081,120 B2 | 7/2006 | Li et al. |
| 7,118,580 B1 | 10/2006 | Beyersdorff et al. |
| 7,169,182 B2 | 1/2007 | Errico et al. |
| 7,204,852 B2 | 4/2007 | Marnay et al. |
| 7,238,203 B2 | 7/2007 | Bagga et al. |
| 7,252,673 B2 | 8/2007 | Lim |
| 7,491,204 B2 | 2/2009 | Marnay |
| 7,547,309 B2 | 6/2009 | Bertagnoli et al. |
| 7,575,576 B2 | 8/2009 | Zubok et al. |
| 2002/0016633 A1 | 2/2002 | Lin et al. |
| 2002/0049497 A1 | 4/2002 | Mason |
| 2002/0072752 A1 | 6/2002 | Zucherman et al. |
| 2002/0077702 A1 | 6/2002 | Castro |
| 2002/0165612 A1 | 11/2002 | Gerber et al. |
| 2003/0083747 A1 | 5/2003 | Winterbottom et al. |
| 2003/0135275 A1 | 7/2003 | Garcia et al. |
| 2003/0208273 A1 | 11/2003 | Eisermann et al. |
| 2004/0030387 A1 | 2/2004 | Landry et al. |
| 2004/0143332 A1 | 7/2004 | Krueger et al. |
| 2004/0215198 A1 | 10/2004 | Marnay et al. |
| 2004/0225295 A1 | 11/2004 | Zubok et al. |
| 2005/0021042 A1 | 1/2005 | Marnay et al. |
| 2005/0143747 A1 | 6/2005 | Zubok et al. |
| 2005/0143749 A1 | 6/2005 | Zalenski et al. |
| 2005/0165408 A1 | 7/2005 | Puno et al. |
| 2005/0228500 A1 | 10/2005 | Kim et al. |
| 2005/0251260 A1 | 11/2005 | Gerber et al. |
| 2006/0030856 A1 | 2/2006 | Drewry et al. |
| 2006/0030860 A1 | 2/2006 | Peterman |
| 2006/0064100 A1 | 3/2006 | Bertagnoli et al. |
| 2006/0089656 A1 | 4/2006 | Allard et al. |
| 2006/0100633 A1 | 5/2006 | Michelson |
| 2006/0149273 A1 | 7/2006 | Ross et al. |
| 2006/0241641 A1 | 10/2006 | Albans et al. |
| 2007/0162134 A1 | 7/2007 | Marnay |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 4328690 B4 | 3/1995 |
| EP | 0077159 A1 | 4/1983 |
| EP | 0471821 B1 | 2/1992 |
| EP | 0333990 B1 | 7/1993 |
| EP | 0712607 B1 | 2/2002 |
| FR | 2718635 | 10/1995 |
| FR | 2724108 | 3/1996 |
| FR | 2737656 | 2/1997 |
| FR | 2742653 | 6/1997 |
| FR | 2795945 A1 | 1/2001 |
| JP | 2261446 A | 10/1990 |
| WO | WO 91/13598 A1 | 9/1991 |
| WO | WO 98/34552 A1 | 8/1998 |
| WO | WO 01/01893 | 1/2001 |
| WO | WO 01/19295 A1 | 3/2001 |
| WO | WO 02/071986 A2 | 9/2002 |
| WO | WO 03/053290 A1 | 7/2003 |

OTHER PUBLICATIONS

"Amended Judgment Awarding Enhanced Damages, Prejudgment Interest and Attorney Fees" (Filed Nov. 9, 2009, Doc. 521), 2 pages (Ex. 43).

"Amended Order Denying Defendants' Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 103" (Dated Nov. 6, 2008, Doc. 332), 20 pages (Ex. 50).

"Amended Order Denying Medtronic's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial" (Filed Aug. 20, 2009, doc. 494), 30 pages (Ex. 27).

"Brief in Support of Medtronic's Motion for Judgment as a Matter of Law on the Obviousness of the '071 Patent, No Willful Infringement and No Lost Profits" (Dec. 4, 2008, Doc. 406), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket #2:07–cv–02175–JPM–dkv, 9 pages (Ex. 29).

"Citation of Supplemental Authority in Support of Medtronic's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial," with accompanying exhibit (Feb. 18, 2009, Docs. 453, 453–2), *Spine Solution, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 17 pages (Ex.33).

"Judgment Awarding Enhanced Damages, Post–Dec. 31, 2007 Damages, Pre– and Post–Judgment Interest, and Injunctive Relief" (Filed Aug. 26, 2009, Doc. 497) 2 pages (Ex. 42).

"Judgment" Dec. 8, 2008, Doc. 412), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 2 pages (Ex. 26).

"Jury Verdict Form" (Dec. 5, 2008, Doc. 411), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 4 pages (Ex. 25).

"Memorandum in Support of Medtronic's Renewed for Judgment as a Matter of Law and Alternative Motion for a New Trial," with accompanying exhibits (Dec. 22, 2008, Docs. 420–2 through 420–22), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 614 pages (Ex. 30).

"Memorandum in Support of Plaintiffs' Motion for Judgment as a Matter of Law that the '071 Patent Is Not Invalid for Obviousness" (Dec. 4, 2008, Doc. 407–2), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 6 pages (Ex. 28).

"Order Amending and Altering the Judgment Entered on Aug. 26, 2009 to Alter the Amount of Damages and Interest Awarded and to Amend the Judgment to Provide for an Award of Attorney Fees" (Filed Nov. 9, 2009, Doc. 520), 20 pages (Ex. 41).

"Order Denying Defendants' Motion for Summary Judgment of Invalidity under 35 U.S.C. § 103" (Dated Sep. 30, 2008, Doc. 317), 20 pages (Ex. 48).

"Order Denying Defendants' Motion for Summary Judgment of No Willful Infringement" (Dated Sep. 30, 2008, Doc. 318), 12 pages (Ex. 49).

"Order Denying Defendants' Motion for Summary Judgment of Non–infringement on O–MAV; Order Granting Plaintiff Spine Solutions, Inc.'s Motion for Partial Summary Judgment of Infringement of Claims 1 and 2 of U.S. Patent No. 6,939,071" (Dated Sep. 30, 2008, Doc. 313), 14 pages (Ex. 44).

"Order Denying Defendants' Motion for Summary Judgment of Non–infringement, or in the Alternative for Invalidity; Order Granting Plaintiff Spine Solutions, Inc.'s Motion for Partial Summary Judgment Dismissing Medtronic's 35 U.S.C. § 112 Defenses"(Date Sep. 30, 2008, Doc. 314), 16 pages (Ex. 45).

"Order Denying Plaintiff Spine Solutions, Inc.'s Motion for Summary Judgment Regarding the Obviousness Defense" Filed Nov. 6, 2008, Doc. 333) 2 pages (Ex. 51).

"Order Denying Plaintiffs' Motion to Unseal the Court's Summary Judgment Orders, Post–Trial Orders, and Judgments" (Filed Dec. 23, 2009), doc. 525), 8 pages (Ex. 53).

"Order Granting in Part and Denying in Part Plaintiffs' Motion for Treble Damages, Award of Attorney Fees, Expert Witness Fees, Expenses, Post Dec. 31, 2007 damages, and Pre–and Post–Judgment Interest" (Filed Aug. 26, 2009, Doc. 495), 24 pages (Ex. 39).

"Order Granting Plaintiff Spine Solutions, Inc.'s Motion for Partial Summary Judgment (1) that the Asserted Claims of the '071 Patent Are Not Anticipated; and (2) that the (a) '785 Patent [No. 6,402,785], (b) Dr. Zdeblick and Mr. McKay's Alleged Invention, and (c) Numerous Unexplained References Are Not Prior Art" (Dated Sep. 30, 2008, Doc. 315), 14 pages (Ex. 46).

"Order Granting Plaintiff Spine Solutions, Inc.'s Motion for Partial Summary Judgment of Failure of Defendants to State a Legal Defense or Claim for Relief Based on inequitable Conduct" (Dated Sep. 30, 2008, Doc. 316), 10 pages (Ex. 47).

"Order Granting Plaintiffs' Motion for Permanent Injunction" (Filed Aug. 26, 2009, doc. 496), 24 pages (Ex. 40).

"Plaintiffs' Memorandum in Opposition to Medtronic's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial" (Jan. 23, 2009, Doc. 439), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 41 pages (Ex. 31).

"Plaintiffs' Memorandum in Response to Medtronic's Memorandum and Citation of Supplemental Authority, Regarding Medtronic's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial" (Mar. 11, 2009, Doc. 463), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 26 pages (Ex. 34).

"Plaintiffs' Motion and Supporting Memorandum to Unseal the Court's Post–Trial Orders, Judgments, and Summary Judgment Orders" (Filed Nov. 17, 2009, doc. 523), 7 pages (Ex. 52).

"Reply Memorandum in Support of Medtronic's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial," with accompanying exhibit (Feb. 10, 2009, Docs. 449, 449–2), *Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 71 pages (Ex. 32).

Ahrens, et al "Normal Joint Mobility is Maintained With An Artificial Disc Prosthesis," W Link, No Month Available, 1999, 4 pages.

David S. Hungerford, M.D. and Robert V. Kenna, "Preliminary Experience with a Total Knee Prosthesis with Porous Coating Used without Cement," Clinical Orthopaedics and Related Research, Cementless Total Knee Prosthesis, No. 176, Jun. 1983, pp. 95–107.

Ducheyne, "Declaration of Paul Ducheyna Under 37 C.F.R. § 1.132", Feb. 19, 2010, 22 pages.

English Abstract, EP 0333990 B1, Link Waldemar GmbH, Jul. 21, 1993.

English Abstract, DE 2804936 A1, Gabruder Sulzer AG, Aug. 2, 1979.

English Abstract, DE 3526742 A1, Jansson, Jan. 29, 1987.

English Abstract, FR 2718635 A1, Marnay, Oct. 20, 1995.

English Abstract, FR 2737656 A1, Gaul, Feb. 14, 1997.

English Translation, JP 2261446 A, Kawasaki Steel Corp., Oct. 24, 1990.

English Summary and Claims, DE 2263842 A1, Hoffmann–Daimler, Jul. 4, 1974.

Hoogland, T. et al. (24th Annual ORS, Dallas, Texas, Feb. 21–23, 1978, 1 page.

In the United States Patent and Trademark Office, "Request for Ex Parte Reexamination", In re patent of: Marnay et al., U.S. patent # 6,936,071, filed on Jul. 24, 2009, 70 pages.

In the United States Patent and Trademark Office, "Request for Ex Parte Reexamination", In re patent of: Marnay et al., U.S. patent # 6,936,071, filed on Aug. 24, 2009, 23 pages.

In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/070,823, filed Jul. 15, 2002 Advisory Action mailed Jun. 22, 2006, 2 pages.

In the United State Patent and Trademark Office, in Re. U.S. Appl. No. 10/070,823, filed Jul. 15, 2002, Examiner Interview Summary Record and Notice of Allowance mailed Jul. 13, 2006, 4 pages.

In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/070,823, filed Jul. 15, 2002, Final Rejection mailed Aug. 23, 2005, 11 pages.

In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/070,823, filed Jul. 15, 2002, Non–Final Office Action, mailed Sep. 23, 2004, 10 pages.

In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Issue Notice mailed Mar. 28, 2007, 1 page.

In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Notice of Allowance mailed Feb. 26, 2007, 7 pages.
In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Final Rejection mailed Aug. 1, 2006, 7 pages.
In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Final Rejection mailed Nov. 12, 2004, 7 pages.
In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Non–Final Office Action mailed Apr. 21, 2004, 6 pages.
In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Non–Final Office Action mailed Aug. 8, 2005, 5 pages.
In the United States Patent and Trademark Office, in Re. U.S. Appl. No. 10/318,078, filed Dec. 13, 2002, Notice of Allowance mailed Feb. 26, 2007, 7 pages.
In the United States Patent and Trademark office, in Re. U.S. Appl. No. 10/998,951, filed Nov. 30, 2004, Non–Final Office Action, mailed Aug. 19, 2009, 11 pages.
In the United States Patent and Trademark office, in Re. U.S. Appl. No. 10/998,951, filed Nov. 30, 2004, Response to Non–Final Office Action, mailed Feb. 19, 2010, 37 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Non Final Office Action mailed Apr. 26, 2007, 6 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Non Final Office Action mailed Aug. 30, 2005, 7 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Final Office Action mailed Feb. 6, 2009, 7 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622, 535, filed Jul. 21, 2003: Non Final Office Action mailed Jan. 31, 2008, 7 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Non Final Office Action mailed Nov. 8, 2006, 6 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Non Final Office Action mailed Sep. 12, 2007, 6 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Notice of Allowance mailed Jul. 20, 2009, 3 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Final Rejection mailed May 23, 2006, 6 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 10/622,535, filed Jul. 21, 2003: Notice of Allowance mailed Nov. 17, 2009, 4 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 11/512,327, filed Aug. 30, 2006: Notice of Allowance mailed Oct. 8, 2009, 4 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 11/512,327, filed Aug. 30, 2006, Final Rejection mailed Jun. 23, 2009, 6 pages.
In the United States Patent and Trademark Office, In Re. U.S. Appl. No. 11/512,327, filed Aug. 30, 2006, Non Final Rejection mailed Oct. 6, 2008, 6 pages.
Marnay, "L'Arthroplastie Intervertebrale Lombaire," La Revue de Medicine Orthopedique Jun.–Sep. 1991, No. 25; pp. 48–55.
Marnay, "Lumar Intervertebral Arthroplasty," No Month or Year Available, 15 pages.
Marnay, "Declaration of Thierry Marnay Under 37 C.F.R. § 1.132", Feb. 19, 2010, 24 pages.
Nichols, "Declaration of David Nichols Under 37 C.F.R. § 1.132", Feb. 19, 2010, 7 pages.
Pacer Docket sheet from *Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. et al.*, U.S, District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 36 pages (Ex. 54).
Robert E. Tooms, "Arthroplasty of ankle and knee," Campbell's Operative Orthopaedics, Seventh Edition, Volume Two, ed. A.H. Crenshaw, No Month Available (St. Louis, Washington, D.C., Toronto: The C.V. Mosby Company 1987), 1145–1152.
Robert V. Kenna and David S. Hungerford, M.D., "Design Rational for the Porous Coated Anatomic Total Knee System," Total Knee Arthroplasty, A Comprehensive Approach, ed. David S. Hungerford, M. D., Kenneth A. Krackow, M.D., and Robert V. Kenna (Baltimore/London: William & Wilkins No Month Available 1984), 71–88.
*Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Answer and Counterclaims, May 4, 2007, 6 pages (Ex. 1).
*Spine Solutions, Inc*, v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions, Inc.'s Opening Markman Brief, Feb. 19, 2008, 27 pages (Ex. 14).
*Spine Solutions, Inc*. v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions, Inc.'s Response to Defendants' Motion to Amend Their Answer to Allege Inequitable Conduct, Dec. 7, 2007, 25 pages (Ex. 2).
*Spine Solutions, Inc*. v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc*, US. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Defendants' Opening Markman Brief, Feb. 19, 2008, 29 pages (Ex. 13).
*Spine Solutions, Inc*. v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek, USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Expert Report #2, Rebuttal to other reports in this litigation, Paul Ducheyne, PH.D, Dec. 21, 2007, 36 pages (Ex. 7).
*Spine Solutions, Inc*. v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Expert Report of Charles A. Laff, Nov. 21, 2007, 12 pages (Ex. 8).
*Spine Solutions, Inc*. v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Rebuttal Expert Report of Mark. E. Nusbaum, Dec. 21, 2007, 42 pages (Ex. 10).
*Spine Solutions, Inc*. v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Expert Report of Dr. Thomas A. Zdeblick, M.D., Nov. 21, 2007, 77 pages (Ex. 11).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Defendants' Responsive Markman Brief, Mar. 17, 2008, 26 pages(Ex. 15).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions' Responsive Markman Brief, Mar. 17, 2008, 26 pages (Ex. 16).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Defendants' Reply Markman Brief, Mar. 31, 2008, 21 pages (Ex. 17).

*Spine Solutions, Inc.,* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions, Inc.'s Reply Markman Brief, Mar. 31, 2008, 39 pages (Ex. 18).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions, Inc.'s Reply Memorandum in Support of Motion for Partial Summary Judgment of Failure of Defendants to State a Legal Defense or Claim for Relief Based on Inequitable Conduct, Mar. 31, 2008, 62 pages (Ex. 21).

*Spine Solutions, Inc.* v. *Medtronic, Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Reply Brief in Support of Plaintiff Spine Solutions, Inc.'s Motion for Partial Summary Judgment Dismissing Medtronic's 35 U.S.C. 5 112 Defenses, Mar. 31, 2008, 25 pages (Ex. 22).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions, Inc.'s Motion for Leave to File a Surreply to Defendants' Reply Markman Brief, Apr. 7, 2008, 7 pages (Ex. 19).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff Spine Solutions, Inc.'s Motion for Leave to File a Response to DefendantsJ Surreply Memorandum Regarding Plaintiff's Motion for partial Summary Judgment of Failure of Defendants to State a Legal Defense or Claim for Relief Based on Inequitable Conduct and a Declaration of Marvin Petry in Support Thereto, Jun. 25, 2008, 2 pages (Ex. 23).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 103, Jun. 19, 2008, 31 pages (Ex. 24).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Order Following Markman Hearing, Jul. 2, 2008, 36 pages (Ex. 20).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Defendants' Medtronic Sofamor Danek, inc. and Medtronic Sofamor Danek USA, Inc.'s Sixth Supplemental Answers and Objections to Plaintiff's First Set of Interrogatories, Dec. 14, 2007, 40 pages (Ex. 5).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Plaintiff's Supplemental Response to Defendants' Interrogatory No. 2 (Relating to Conception, Reduction to Practice, First Sale), Oct. 29, 2007, 8 pages (Ex. 6).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Expert Report of Stephen D. Cook, Ph.D., Nov. 21, 2007, 202 pages (Ex. 12).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Defendants' Third Supp'l Answers & Objections to Plaintiff's First Set of Interrogatories Nos. 1–6, Oct. 15, 2007, 58 pages (Ex. 4).

*Spine Solutions, Inc,* v, *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Amended Answer and Counterclaims, Nov. 21, 2007, 187 pages (Ex. 3).

*Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. and Medtronic Sofamor Danek USA, Inc.*, U.S. District Court, Western District of Tennessee, Civil Action No. 2:07–cv–02175–JPM, Expert Report of Mark E. Nusbaum, Nov. 21, 2007, 51 pages (Ex. 9).

Szpalski, et al, "Spine arthroplasty: a historical review," Eur Spine J (Aug. , 2002) 11 (Supp1.2):S65–S84 DOI 10.10071/s00586–002–0474–y.

The Journal of Bone and Joint Surgery, "A New Tibia Plateau", Jul. 1970, vol. 52–A, No. 5., 2 pages.

The Journal of Bone and Joint Surgery, "Here's a Good Skate", Sep. 1971, vol. 53–A, No. 6., 2 pages.

Transcript Pages: pp. 1441–1639 (Dec. 3–4, 2008), *Spine Solutions, Inc,* v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 246 pages (Ex. 38).

Transcript Pages: pp. 1842–1892, 1899–1944 (Dec. 4–5, 2008), *Spine Solutions, Inc.* v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 103 pages (Ex. 35).

Transcript Pages: pp. 345–535, 544–644, 699–700 (Nov. 25–26, 2008), *Spine Solutions, Inc,* v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 334 pages (Ex. 36).

Transcript Pages: pp. 908–1071, 1085–1102 (Dec. 1–2, 2008), *Spine Solutions, Inc,* v. *Medtronic Sofamor Danek, Inc. et al.*, U.S. District Court, Western District of Tennessee, Civil Docket # 2:07–cv–02175–JPM–dkv, 192 pages (Ex. 37).

Viscogliosi Brothers, LLC, "Spine Arthroplasty", Nov. 2001, 151 pages.

US 6,936,071 C1

**EX PARTE REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307**

NO AMENDMENTS HAVE BEEN MADE TO THE PATENT

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claims **1-16** and **19-30** is confirmed. Claims **17**, **18**, **31** and **32** were not reexamined.

\* \* \* \* \*