UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LUCY H. KOH, JUDGE                **ORIGINAL**

| | | |
|---|---|---|
| APPLE INC., A CALIFORNIA CORPORATION, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| VS. | ) ) | NO. C 12-00630 LHK |
| SAMSUNG ELECTRONICS CO., LTD., A KOREAN BUSINESS ENTITY, ET AL., | ) ) ) ) | PAGES 1 - 82 |
| DEFENDANTS. | ) ) | SAN JOSE, CALIFORNIA THURSDAY, JULY 10, 2014 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:            MORRISON & FOERSTER
                         425 MARKET STREET
                         SAN FRANCISCO, CALIFORNIA  94105-2482
                  BY:  RACHEL KREVANS,
                       NATHANIEL B. SABRI, ATTORNEYS AT LAW

                         MORRISON & FOERSTER
                         755 PAGE MILL ROAD
                         PALO ALTO, CALIFORNIA  94304
                  BY:  CHRISTOPHER ROBINSON, ATTORNEY AT LAW

(APPEARANCES CONTINUED NEXT PAGE)

REPORTED BY:        RAYNEE H. MERCADO, CSR NO. 8258

    PROCEEDINGS REPORTED BY ELECTRONIC/MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

## A P P E A R A N C E S (CONT'D.)


FOR PLAINTIFF:          WILMER, CUTLER, PICKERING, HALE & DORR
                        60 STATE STREET
                        BOSTON, MASSACHUSETTS  02109
                 BY:    WILLIAM F. LEE, ATTORNEY AT LAW

                        WILMER, CUTLER, PICKERING, HALE & DORR
                        950 PAGE MILL ROAD
                        PALO ALTO, CALIFORNIA  94304
                 BY:    MARK D. SELWYN, ATTORNEY AT LAW


FOR DEFENDANTS:         QUINN, EMANUEL, URQUHART & SULLIVAN
                        865 S. FIGUEROA STREET, FLOOR 10
                        LOS ANGELES, CALIFORNIA  90017
                 BY:    JOHN B. QUINN,
                        WILLIAM C. PRICE,
                        SCOTT L. WATSON, ATTORNEYS AT LAW


                        QUINN, EMANUEL, URQUHART & SULLIVAN
                        55 TWIN DOLPHIN DRIVE, SUITE 560
                        REDWOOD SHORES, CALIFORNIA  94065
                 BY:    KEVIN B. JOHNSON,
                        VICTORIA F. MAROULIS, ATTORNEYS AT LAW


                        QUINN, EMANUEL, URQUHART & SULLIVAN
                        500 WEST MADISON STREET, SUITE 2450
                        CHICAGO, ILLINOIS 60661
                 BY:    DAVID A. NELSON, ATTORNEY AT LAW



                        --O0O--

```
 1   THURSDAY, JULY 10, 2014                              2:39 P.M.

 2                      P R O C E E D I N G S

 3          THE CLERK:  CASE NO. C12-00630LHK, APPLE, INC. VERSUS

 4   SAMSUNG ELECTRONICS COMPANY LIMITED, ET AL.

 5      STATE YOUR APPEARANCES, PLEASE.

 6          MR. LEE:  GOOD AFTERNOON.  BILL LEE AND MARK SELWYN

 7   FROM WILMER HALE FOR APPLE.

 8          MS. KREVANS:  AFTERNOON, YOUR HONOR.  RACHEL KREVANS

 9   AND CHRISTOPHER ROBINSON AND NATE SABRI FOR APPLE.

10          MR. PRICE:  GOOD AFTERNOON, YOUR HONOR.  BILL PRICE.

11   SAMSUNG, AND ALSO POTENTIALLY SPEAKING FOR SAMSUNG DEPENDING

12   ON WHAT YOU WANT TO TALK ABOUT ARE DAVID NELSON, KEVIN

13   JOHNSON, VICTORIA MAROULIS AND JOHN --

14          THE COURT:  OKAY.  WELCOME TO EVERYONE.

15      I HAVE QUESTIONS ABOUT CERTAIN TOPICS, AND THERE WILL

16   ACTUALLY BE A LOT THAT WE'RE NOT GOING TO COVER BECAUSE WE'VE

17   PREVIOUSLY COVERED IT IN A DIFFERENT MOTION OR A DIFFERENT

18   HEARING OR IN A DIFFERENT CASE.

19      LET'S START, PLEASE, WITH THE '721 INFRINGEMENT BY THE

20   GALAXY S II AND SKYROCKET AND EPIC 4G.  SO WHO IS GOING TO

21   HANDLE THAT FOR EACH SIDE?

22          MS. KREVANS:  MYSELF, YOUR HONOR.

23          THE COURT:  OKAY.  ALL RIGHT.  GREAT.  WELL, I HAVE

24   QUITE A NUMBER OF QUESTIONS FOR BOTH -- BOTH SIDES ON THIS

25   ONE.
```

```
 1        SO LET ME ASK, MR. NELSON, THEN, AND THIS HAS TO DO WITH

 2   THE "SLIDE TO ANSWER" AND WHETHER THAT IS INFRINGING OR NOT.

 3   OKAY.  SO WHEN A USER SLIDES TO ANSWER, DOES A USER HAVE TO DO

 4   ANYTHING ELSE TO UNLOCK THE DEVICE?

 5             MR. NELSON:  WHEN THE USER SLIDES TO ANSWER ON THE

 6   ACCUSED PHONES?

 7             THE COURT:  YES.  ON THE S II, THE SKYROCKET AND THE

 8   EPIC 4G TOUCH.

 9             MR. NELSON:  NO, I DON'T BELIEVE SO.  I DON'T BELIEVE

10   THAT WOULD BE THE CASE.

11             THE COURT:  OKAY.

12             MR. NELSON:  THE -- BUT THE -- THE DISTINCTION THERE

13   IS THE -- I MEAN, YOU HAVE TO DO THAT REGARDLESS, WHETHER

14   THE -- IT'S IRRELEVANT WHETHER THE DEVICE IS UNLOCKED OR

15   LOCKED.  IT'S JUST A ANSWERING SCREEN ON THE PHONE.

16        SO THE -- IN THE PATENT THE '721 PATENT, THERE'S THAT

17   FIGURE 7?

18             THE COURT:  UM-HMM.

19             MR. NELSON:  AND THERE -- THAT'S WHAT APPLE POINTED

20   TO SAYING, WELL, IT WILL -- YOU KNOW, YOU CAN DO IT FOR OTHER

21   THINGS.  BUT, YOU KNOW, IN THAT FIGURE, YOU ACTUALLY HAVE THE

22   REGULAR "SLIDE TO UNLOCK" TO UNLOCK THE DEVICE, AND THEN YOU

23   HAVE THE SEPARATE "ACCEPT" OR "DENY."  THAT'S WHAT'S SHOWN IN

24   THE -- IN THE PATENT ITSELF.  SO THERE IS NO EMBODIMENT WHERE

25   YOU'RE ACTUALLY USING THE SLIDE TO ANSWER THE CALL.  IN THE
```

```
 1    ACCUSED DEVICES THAT -- YOU USE THAT SLIDE TO ANSWER THE CALL

 2    REGARDLESS.

 3          THE COURT:  WELL, YOU WOULD AGREE WITH ME, THOUGH,

 4    ONCE YOU SLIDE TO ANSWER, THERE'S NO FURTHER UNLOCKING THAT

 5    YOU HAVE TO DO.  IF YOU WANTED TO THEN PROCEED TO THE OTHER

 6    FEATURES OF THE PHONE, YOU COULD DO THAT.  THERE'S NO

 7    ADDITIONAL UNLOCKING THAT NEEDS TO HAPPEN.

 8          MR. NELSON:  WELL, IT -- YOU WOULD -- BUT IF YOU'RE

 9    DOING THAT, YOUR HONOR, ALL YOU WOULD BE DOING IS ANSWERING A

10    CALL.  YOU WOULDN'T HAVE ACCESS TO THE OTHER FEATURES.  YOU'D

11    BE ANSWERING THE CALL AT THAT POINT IN TIME.  AND, IN FACT,

12    YOU COULD DO THAT -- IF YOU'RE ON THE PHONE FOR A WHILE, IT

13    WILL GO BACK AND LOCK ITSELF, IF YOU'RE ON THE PHONE FOR LONG

14    ENOUGH.  SO YOU KNOW WHAT I'M SAYING?

15          THE COURT:  BUT WHAT IN THE CLAIM REQUIRES THAT IN

16    ORDER TO UNLOCK, YOU HAVE TO BE ABLE TO ACCESS ALL THE

17    FEATURES OF THE PHONE?

18          MR. NELSON:  WELL, I DON'T -- I DON'T KNOW IF THAT'S

19    THE -- IN THE CLAIM ITSELF.  I THINK THAT WOULD GO AROUND TO

20    THE DEFINITION OF "UNLOCK", WHICH WOULD KIND OF GO BACK TO OUR

21    INDEFINITENESS ARGUMENT THAT I UNDERSTOOD YOUR HONOR DOESN'T

22    WANT TO GET INTO.  WE'VE BEEN THROUGH THAT A FEW TIMES.

23          THE COURT:  UM-HMM.

24          MR. NELSON:  BUT IN THE PATENT, WHAT -- IT TALKS

25    ABOUT "UNLOCK" SAYING, WELL, YOU KNOW, WHEN IT'S LOCKED, THEN
```

1     YOU HAVE A REDUCED SET OF FUNCTIONS.  IT DOESN'T TELL YOU HOW

2     REDUCED THEY ARE.  YOU KNOW, THERE'S SOME SET OF FUNCTIONS.

3     WHEN IT'S UNLOCKED, THEN YOU'VE INCREASED THAT, BUT YOU DON'T

4     NECESSARILY HAVE ACCESS TO ALL THE FUNCTIONS EITHER, SO

5     THEY'RE -- THEY'RE DESCRIBED AS TWO KIND OF SLIDING SCALE

6     PLACES BASED UPON THE NUMBER OF FEATURES OR FUNCTIONS THAT ARE

7     ACTIVE IN THE PATENT ITSELF.  IT SAYS, YOU KNOW, EVEN WHEN

8     YOU'RE LOCKED, IT DOESN'T MEAN THAT EVERYTHING IS

9     INACCESSIBLE.

10          THE COURT:  WELL, OKAY.  WHY DON'T WE GET TO

11    SOMETHING SPECIFIC.  I'M LOOKING AT COLUMN 16, LINES 4

12    THROUGH -- REALLY GOES DOWN TO 11, BUT IT SAYS, "IN FIGURE 7D,

13    THE USER COMPLETES THE UNLOCK ACTION BY DRAGGING THE UNLOCK

14    IMAGE TO THE RIGHT END OF THE CHANNEL 704 AND RELEASING THE

15    UNLOCK IMAGE 702, THE DEVICE 700 TRANSITIONS TO THE UNLOCK

16    STATE."

17          MR. NELSON:  CORRECT.

18          THE COURT:  "UNLOCK IMAGE 702 AND THE CHANNEL 704

19    DISAPPEAR FROM THE DISPLAY AND THE VIRTUAL BUTTONS ARE AT

20    THEIR FINAL OPTICAL INTENSITY LEVELS, AS ILLUSTRATED BY THE

21    SOLID OUTLINES.  AT THIS POINT, THE USER MAY INTERACT WITH THE

22    VIRTUAL BUTTONS AND ACCEPT OR DECLINE THE INCOMING CALL."

23       AND IF YOU LOOK AT COLUMN 16, LINES 1 THROUGH 3, IT SAYS,

24    "THE INCREASES IN THE OPTICAL INTENSITY INDICATE TO THE USER

25    PROGRESS TOWARDS THE COMPLETION OF THE UNLOCK ACTION."

1    SO THIS LOOKS PRETTY CLEAR THEY'RE SAYING THAT YOU

2    COMPLETE THE UNLOCK ACTION BY JUST SLIDING TO ANSWER.

3        SO HOW COULD YOU --

4            MR. NELSON:  WELL, LET'S LOOK AT --

5            THE COURT:  HOW COULD A JURY FIND THAT SLIDING TO

6    ANSWER DOESN'T INFRINGE WHEN THIS IS PRETTY EXPLICIT THAT

7    SLIDING TO ANSWER COMPLETES THE UNLOCK ACTION AND TRANSITIONS

8    FROM A LOCKED STATE TO AN UNLOCKED STATE?

9            MR. NELSON:  WELL, IF YOU LOOK AT THE FIGURE, THOUGH,

10   WHAT YOU'RE DOING THOUGH IS -- AND I'M LOOKING AT FIGURE 7B.

11   IT KIND OF GOES THROUGH THE -- 7A TO 7B GOES THROUGH WHAT YOU

12   JUST READ, YOUR HONOR.

13           THE COURT:  UM-HMM.

14           MR. NELSON:  SO WHAT YOU DO IN THE EMBODIMENT IS YOU

15   SLIDE ACROSS, RIGHT?  AND YOU -- THEN YOU'LL GET THE "ACCEPT"

16   AND "DECLINE."  THEN IN ORDER TO ANSWER THE CALL, YOU DO ONE

17   OR THE OTHER.  SO YOU'RE UNLOCKING THE DEVICE WITH THE SLIDE.

18           THE COURT:  RIGHT.

19           MR. NELSON:  RIGHT?  YOU -- BUT THAT DOESN'T ANSWER

20   THE CALL, RIGHT?  THE CALL IS YOU HIT "ACCEPT" OR "DECLINE,"

21   RIGHT?  THE -- IN THE ACCUSED DEVICES --

22           THE COURT:  OKAY.  BUT -- BUT WITH "SLIDE TO UNLOCK,"

23   YOU GET IN HOME PAGE.  YOU STILL HAVE TO SELECT AN APPLICATION

24   TO ACTUALLY GET AN ACTION.  JUST BECAUSE I "SLIDE TO UNLOCK,"

25   IT DOESN'T MEAN IT'S AUTOMATICALLY GOING TO TRIGGER SOME

1    ACTION ON THE PHONE WITH REGARD TO A PHONE CALL OR SOMETHING

2    LIKE THAT.  RIGHT?

3        THERE'S STILL THAT EXTRA STEP TO ACTUALLY DO THE SELECTION

4    OF THE ACTION THAT YOU WANT.  SO I GUESS I DON'T UNDERSTAND --

5    I MEAN, YOU JUST SAID THAT SLIDING ACTION BETWEEN FIGURE 7A

6    AND 7B IS UNLOCKING THE PHONE.

7            **MR. NELSON:**  CORRECT.

8            **THE COURT:**  OKAY.

9            **MR. NELSON:**  THAT'S THE WAY IT'S -- THAT'S THE

10   EMBODIMENT THAT'S DESCRIBED.  WHAT THE --

11           **THE COURT:**  RIGHT?  SO HOW CAN THIS EMBODIMENT NOT

12   INFRINGE?

13           **MR. NELSON:**  OH, I'M NOT TALKING ABOUT THE EMBODIMENT

14   IN THE PATENT.  RIGHT?  THE -- YOU ARE -- YOU HAVE AN UNLOCK

15   IMAGE.  YOU'RE DOING THAT.  THE -- THE "SLIDE TO ANSWER" IN

16   THE ACCUSED DEVICE, THAT'S HOW YOU ANSWER REGARDLESS OF

17   UNLOCKING OR ANYTHING.  YOU DO THAT TO ANSWER THE PHONE EVEN

18   WHEN THE DEVICE IS UNLOCKED AND OPERABLE.  SO THAT'S HOW YOU

19   ANSWER THE PHONE.

20           **THE COURT:**  RIGHT, BUT YOU AGREE THAT'S ALSO HOW YOU

21   UNLOCK THE PHONE.

22           **MR. NELSON:**  YOU WOULD HAVE -- YOU COULD HAVE A

23   SITUATION -- YOU COULD HAVE A SITUATION WHERE THE PHONE IS

24   LOCKED WHEN THE CALL RINGS AND YOU GO AHEAD BECAUSE NOW THE

25   PHONE IS -- IT'S UNLOCKING ITSELF.  IT'S GIVING YOU THE

1  ABILITY TO ANSWER OR DECLINE THE CALL.  SO YOU'RE IN THE SAME

2  STATE AS YOU WOULD BE.

3      IT'S NOT AN UNLOCK THAT CAN BE USED TO GET ACCESS TO THE

4  OTHER FUNCTIONS OF PHONE.  IT DOESN'T -- WHAT I'M SAYING IS

5  IT'S INDEPENDENT OF WHETHER THE PHONE IS LOCKED, RIGHT?

6  COULD -- YOU GET THAT SCREEN WHETHER THE PHONE'S IN A LOCKED

7  STATE OR AN UNLOCKED STATE.  YOUR ONLY ABILITY IS TO ANSWER A

8  CALL, NOT TO USE THAT IN ORDER TO GO AHEAD AND ACCESS THE

9  OTHER FUNCTIONS ON THE PHONE.

10                  (PAUSE IN THE PROCEEDINGS.)

11          **THE COURT:**  WE DON'T HAVE AN ELMO TODAY; IS THAT

12  RIGHT?

13          **MR. NELSON:**  THERE'S ONE HERE.

14          **THE COURT:**  OKAY.  I WANT SOMEONE TO CALL THIS PHONE

15  AND LET'S TAKE A LOOK.  THIS IS THE S II, JX32E.  THE PHONE

16  NUMBER'S (917)861-8029.

17      DID ANYONE BRING THEIR PHONE TODAY?  MAYBE WE CAN PHONE IT

18  FROM YOUR PHONE.

19          **THE CLERK:**  SURE.

20          **THE COURT:**  OKAY.

21          **THE CLERK:**  NUMBER AGAIN?

22          **THE COURT:**  WELL, LET ME GIVE YOU THE PHONE.  LET'S

23  PUT IT ON THE ELMO.

24          **MR. NELSON:**  THE ONLY --

25          **THE COURT:**  WE DON'T HAVE A SCREEN, BUT I HOPE IT CAN

```
 1    JUST GO UP AGAINST THE WALL PROBABLY --
 2                    (OFF-THE-RECORD DISCUSSION.)
 3           THE COURT:  OH, OKAY.  GREAT.
 4       OKAY.  THE NUMBER IS (917)861 -- IS IT TURNED ON?
 5           MR. NELSON:  IT'S ON.  AND I CAN SEE IT HERE IN THE
 6    WINDOW, BUT I DON'T KNOW WHAT IT GOES TO.  IT'S THE -- YOU
 7    KNOW, THE --
 8           THE COURT:  OH, IF THE ELMO'S NOT ON --
 9                    (OFF-THE-RECORD DISCUSSION.)
10           THE COURT:  I'LL JUST TAKE IT, AND I'LL JUST LOOK AT
11    IT.
12           MR. NELSON:  OKAY.
13           THE COURT:  BECAUSE MY UNDERSTANDING -- MY
14    UNDERSTANDING IS THAT WHEN IT CALLS, YOU HAVE TO SLIDE AND
15    THEN YOU CAN DECIDE WHETHER TO UNLOCK OR NOT.
16                    (OFF-THE-RECORD DISCUSSION.)
17           THE COURT:  OH, PERFECT.  OKAY.  IT'S 917 --
18       IS IT TURNED ON?
19           MR. NELSON:  THE ELMO?
20           THE COURT:  NO, IS THE PHONE ON?
21           MR. NELSON:  OH, THAT'S A GOOD QUESTION.
22                    (PAUSE IN THE PROCEEDINGS.)
23           MR. NELSON:  MIGHT NOT BE CHARGED.
24           THE COURT:  NO, WE USED ALL THESE PHONES.  I WAS
25    DOING THE EPIC 4G TOUCH IN MY CHAMBER ABOUT HALF AN HOUR AGO.
```

```
 1        SO CAN SOMEONE ON THE SAMSUNG TEAM HELP US TURN ON THIS
 2   PHONE, AN S II, PLEASE?
 3        DOES ANYONE KNOW HOW TO TURN THIS PHONE ON?
 4                    (PAUSE IN THE PROCEEDINGS.)
 5           THE COURT:  I'M NOT GOING TO ASK YOU WHICH PHONE YOU
 6   OWN.
 7                          (LAUGHTER.)
 8           MR. NELSON:  I DON'T HAVE A IPHONE, YOUR HONOR.
 9                          (LAUGHTER.)
10           THE COURT:  ALL RIGHT.  ARE YOU STILL ONE OF THOSE
11   FLIP PHONE OWNERS THAT THEY'RE ALL FIGHTING FOR?
12        ALL RIGHT.  YOU ALL NEED TO TARGET MR. NELSON, THEN.
13           MR. NELSON:  WE CAN'T GET IT TO TURN ON.  HE'S REALLY
14   SMART, AND HE CAN'T DO IT.
15           THE COURT:  YOU KNOW WHAT, NEVER MIND.
16        LET ME GO TO --
17                    (OFF-THE-RECORD DISCUSSION.)
18           THE CLERK:  THIS IS THE ONE THAT WE COULDN'T GET TO
19   CHARGE THIS MORNING.
20           THE COURT:  WHICH -- CAN YOU IDENTIFY -- I MEAN, IT
21   SEEMS THAT DR. GREENBERG DID NOT PROVIDE A NON-INFRINGEMENT
22   DEFENSE AS TO THE THREE GALAXY S II DEVICES.
23           MR. NELSON:  YEAH, HE DID NOT.  WE DON'T DISPUTE
24   THAT, YOUR HONOR.
25           THE COURT:  OKAY.  ALL RIGHT.  THEN JUST SO I CAN
```

1  UNDERSTAND, EXPLAIN TO ME AGAIN HOW THE JURY COULD HAVE FOUND

2  NON-INFRINGEMENT WHEN NO INFRINGEMENT DEFENSE WAS PRESENTED.

3      I GUESS THEY WOULD HAVE HAD TO FIND THAT "SLIDE TO ANSWER"

4  IS NOT THE -- DOESN'T INFRINGE, IS NOT A FORM OF "SLIDE TO

5  UNLOCK."

6      DOES THAT SOUND RIGHT?

7          **MR. NELSON:** YEAH, THAT'S WHAT WOULD HAPPEN.  AND

8  THAT WAS PREVIEWED ACTUALLY -- REMEMBER, WE HAD THAT

9  PRE-BUTTAL (PHONETIC) SECTION THAT WE DID THE VERY FIRST --

10 THEIR EXPERT DR. COCKBURN ACTUALLY HAD EXPLAINED THAT TO THE

11 JURY --

12         **THE COURT:** WELL, CAN YOU JUST EXPLAIN TO ME 'CAUSE

13 I'M STILL NOT CLEAR, THEN, HOW DO YOU RECONCILE THAT WITH

14 COLUMN 16, LINES 1 THROUGH 11, WHICH TALK ABOUT COMPLETING THE

15 UNLOCK ACTION, SLIDING TO TRANSITION FROM AN UNLOCK TO A

16 LOCK -- I'M SORRY -- FROM A LOCKED TO AN UNLOCKED STATE.

17     HOW -- HOW --

18         **MR. NELSON:** BUT THAT'S THE SAME -- THAT'S THE SAME

19 REGARDLESS.  YOU SEE, THAT'S WHAT I WAS TALKING ABOUT IN THIS

20 EMBODIMENT.

21     SO YOU -- THE PHONE'S LOCKED.  BEFORE YOU DO ANYTHING, YOU

22 UNLOCK IT.  RIGHT?  SO IN OTHER WORDS, YOU -- YOU SLIDE TO

23 UNLOCK THE PHONE.  HERE, WHAT THEY SHOW IN THIS PARTICULAR

24 EMBODIMENT, THEN YOU CAN GO AHEAD, YOU CAN ACCEPT A CALL, DENY

25 A CALL.  BUT YOU'VE UNLOCKED THE PHONE.  SAME MECHANISM AS IF

| | |
|---|---|
| 1 | WE HAVE THE INITIAL -- I THINK WE WERE CALLING IT THE "UNLOCK |
| 2 | SCREEN" DURING TRIAL. |
| 3 | **THE COURT:**  UM-HMM. |
| 4 | **MR. NELSON:**  MY UNDERSTANDING OF THE ACCUSED DEVICES |
| 5 | IS THAT THE SCREEN THAT YOU'RE TALKING ABOUT, YOUR HONOR, |
| 6 | WHERE YOU -- WHERE YOU'LL GO AHEAD AND ANSWER THE CALL, YOU |
| 7 | GET THAT SAME SCREEN WHENEVER YOU GET A CALL REGARDLESS OF THE |
| 8 | STATE OF THE DEVICE.  AND WHAT THAT SCREEN ALLOWS YOU TO DO IS |
| 9 | ANSWER THE CALL OR REJECT THE CALL.  SO IT'S NOT UNLOCKING THE |
| 10 | DEVICE TO GIVE YOU ACCESS TO THE OTHER FUNCTIONS OF THE |
| 11 | DEVICE, WHICH IS THE WAY THE -- |
| 12 | **THE COURT:**  SO WHAT ELSE DO YOU NEED TO DO TO UNLOCK |
| 13 | TO ACCESS THE OTHER FUNCTIONS OF THE DEVICE? |
| 14 |  WHAT OTHER UNLOCKING ACTION IS NECESSARY TO ACCESS THE |
| 15 | OTHER FUNCTIONS OF THE DEVICE? |
| 16 | **MR. NELSON:**  WELL, WHEN THE DEVICE IS LOCKED, YOU GO |
| 17 | TO THE UNLOCK SCREEN.  BUT WHAT I'M SAYING IS WHEN YOU GET THE |
| 18 | CALL, WHAT YOU'RE DOING IS ANSWERING THE CALL OR REJECTING THE |
| 19 | CALL. |
| 20 | **THE COURT:**  BUT AT THAT POINT, YOU CAN ACCESS ALL THE |
| 21 | OTHER FEATURES OF THE PHONE.  THERE'S NO OTHER UNLOCKING |
| 22 | ACTION THAT'S NECESSARY. |
| 23 | **MR. NELSON:**  I -- |
| 24 | **THE COURT:**  NOW YOU COULD SAY, WELL, I HAVE TO PRESS |
| 25 | THE HOME BUTTON TO ACCESS THE HOME PAGE THAT WILL BRING UP ALL |

1   THE FEATURES.

2          **MR. NELSON:**  RIGHT.

3          **THE COURT:**  BUT THERE'S NO FURTHER UNLOCKING ACTION

4   THAT'S NECESSARY.  ONCE YOU'VE "SLIDE TO ANSWER," YOU CAN

5   DECIDE WHETHER TO DECLINE OR ACCEPT THE CALL, AND AT THAT

6   POINT, YOU CAN IMMEDIATELY GO TO THE HOME BUTTON AND GET ALL

7   OF YOUR FEATURE SETS ON YOUR PHONE.

8          **MR. NELSON:**  I THINK THAT'S THE CASE, YES.

9          **THE COURT:**  WITHOUT ANY FURTHER UNLOCKING.

10          **MR. NELSON:**  I BELIEVE -- I -- I BELIEVE THAT'S THE

11   CASE, ALTHOUGH THAT WASN'T THE EVIDENCE THAT WAS PRESENTED TO

12   THE JURY AT TRIAL.

13          **THE COURT:**  UM-HMM.  SO WHAT -- LET ME UNDERSTAND

14   WHAT YOUR POSITION IS.  YOUR POSITION IS IN ORDER FOR SLIDE

15   TO -- "SLIDE TO ANSWER" TO INFRINGE, IT HAS TO GIVE YOU

16   IMMEDIATE ACCESS TO ALL THE FEATURES ON THE PHONE WITHOUT ANY

17   ADDITIONAL STEPS; IS THAT -- IS THAT WHAT THE JURY WOULD HAVE

18   HAD TO HAVE FOUND IN ORDER TO FIND NO INFRINGEMENT, THAT YOU

19   NEED IMMEDIATE ACCESS TO ALL THE FEATURES?

20          **MR. NELSON:**  NO.  I DON'T THINK THEY NECESSARILY

21   WOULD HAVE HAD TO FIND THAT.  BUT THAT -- WHAT IT IS, IS IT'S

22   THERE TO GIVE YOU -- YOU HAVE THE -- THE SLIDE TO GIVE YOU

23   ACCESS TO THE FUNCTIONS ON THE PHONE.  THAT'S WHAT THE PURPOSE

24   OF THE "UNLOCK" IS.  THAT'S WHAT'S DESCRIBED IN THE PATENT AND

25   THAT'S WHAT YOU'RE DOING WHEN YOU'RE UNLOCKING THE MACHINE,

1    RIGHT?

2        NOT -- WHAT APPLE SEIZED UPON IN THIS EMBODIMENT IS A

3    SITUATION WHERE YOU UNLOCK THE PHONE FOR THE PURPOSE OF

4    ANSWERING A CALL.  AND WHAT I'M SAYING IS IN THE ACCUSED

5    DEVICES, WHAT THE JURY COULD HAVE DETERMINED, BASED UPON THE

6    EVIDENCE THAT WAS PROVIDED TO THEM, THE PURPOSE OF THE SLIDE

7    TO ANSWER IS JUST THAT, TO ANSWER THE CALL OR DECLINE THE CALL

8    REGARDLESS OF THE STATE OF THE DEVICE.

9             **THE COURT:**  ALL RIGHT.  ARE THERE -- WHAT -- WHAT

10   PORTIONS OF THE PATENT WOULD YOU CITE TO TO SUPPORT -- I'M

11   STILL NOT CLEAR ON EXACTLY WHAT YOUR POSITION IS.  YOUR

12   POSITION IS "SLIDE TO ANSWER" ONLY ALLOWS YOU TO DECIDE

13   WHETHER YOU'RE GOING TO ACCEPT OR DECLINE THE CALL.

14            **MR. NELSON:**  IN THE ACCUSED DEVICES, CORRECT.

15            **THE COURT:**  OKAY.

16       AND THAT IS NOT UNLOCKING BECAUSE WHY?  YOU THEN NEED TO

17   HIT THE HOME PAGE TO GET THE OTHER FEATURES OF THE PHONE?

18            **MR. NELSON:**  IN THAT PARTICULAR INSTANCE, IF YOU --

19   YEAH, YOU'D BE GOING THROUGH -- SO TO DO THAT, A USER WOULDN'T

20   BE FACED WITH A SITUATION WHERE THEY GET A CALL AND THEY'RE

21   ANSWERING A CALL, DECLINING A CALL, OH -- OH, THIS IS -- I'M

22   GOING TO UNLOCK THE PHONE AND THEN GO TO THE HOME PAGE, RIGHT?

23   SO YOU HAVE A WAY TO INTERACT WITH THE PHONE TO UNLOCK THE

24   PHONE.  WE WENT THROUGH THOSE AT TRIAL.  HERE --

25            **THE COURT:**  OKAY.  CAN YOU TELL ME WHERE IN THE CLAIM

```
1    IT SAYS THAT IN ORDER TO UNLOCK, YOU HAVE TO IMMEDIATELY

2    ACCESS THE OTHER FEATURES OF THE PHONE AND CAN'T TAKE AN

3    ADDITIONAL STEP OR HIT AN ADDITIONAL BUTTON TO GET THE OTHER

4    FEATURES OF THE PHONE?

5         MR. NELSON:  WELL --

6         THE COURT:  I'M JUST --

7              (SIMULTANEOUS COLLOQUY.)

8         MR. NELSON:  -- UNLOCK THE HAND-HELD DEVICE --

9    ELECTRONIC DEVICE, SO IT GOES BACK TO THE DEFINITION OF

10   "UNLOCK."

11        THE COURT:  AND YOUR DEFINITION OF "UNLOCK" IS WHAT?

12        MR. NELSON:  WHAT IT DESCRIBES IN THE PATENT, TO GIVE

13   YOU ACCESS TO THE FEATURES.

14        THE COURT:  GIVE YOU ACCESS TO ALL OF THE FEATURES

15   IMMEDIATELY WITH NO ADDITIONAL --

16        MR. NELSON:  NO, NOT NECESSARILY --

17        THE COURT:  -- ACTION OR STEP?

18        MR. NELSON:  NO, NOT NECESSARILY IMMEDIATELY.  WE --

19   WE WOULDN'T PUT -- BUT THAT'S -- THE PURPOSE OF THE "UNLOCK,"

20   YOU SLIDE THE IMAGE, YOU UNLOCK THE PHONE.  AND THAT GIVES YOU

21   ACCESS TO THE FEATURES AND FUNCTIONS OF THE PHONE.  THAT'S

22   WHAT'S DESCRIBED IN THE PATENT TO BE UNLOCKED.

23        THE COURT:  ALL RIGHT.  WELL, THEN WHAT ARE YOUR --

24   WHAT ARE THE BEST PARTS OF THE PATENT THAT SUPPORT THAT?

25     AND YOU'RE GOING TO THEN SAY CLAIM (SIC) 7, HOW DO YOU
```

```
 1      DISTINGUISH THAT?

 2              MR. NELSON:  FIGURE 7?

 3              THE COURT:  YEAH.

 4              MR. NELSON:  WHAT -- FIGURE 7 HAS TWO STEPS.  SO

 5      FIGURE 7 IS -- IT GIVES YOU THE NORMAL "UNLOCK" SCREEN.  AND

 6      THAT WHAT'S THERE IS BECAUSE WHAT YOU'RE DOING IS ANSWERING

 7      THE CALL, IT GIVES YOU THE -- THE CALL ANSWERING FUNCTION,

 8      WHICH IS "ACCEPT" OR "DECLINE."

 9              THE COURT:  BUT THE LANGUAGE IS PRETTY SPECIFIC THAT

10      IT'S AN UNLOCK ACTION THAT IS TRANSITIONING FROM A LOCKED TO

11      AN UNLOCKED STATE.  SHOULD WE JUST ASSUME THAT "UNLOCK" AND

12      "LOCK" IN THAT PHRASE MEANS SOMETHING ELSE?

13              MR. NELSON:  NO.

14              THE COURT:  WHAT DOES IT MEAN IN THAT STAGE?  IF IT

15      DOESN'T MEAN ACCESS TO ALL THE FEATURES OF THE PHONE, WHAT

16      DOES IT MEAN THERE?

17              MR. NELSON:  NO, IT DOES MEAN -- IT'S THE SAME.

18      WE'RE NOT SAYING THAT IT'S ANY DIFFERENT THERE.  IT'S JUST

19      THAT WHAT YOU'RE -- THE WAY YOU'RE DOING THAT IS USING THE

20      SLIDE OR UNLOCK IN FIGURE 7, NOT THE CALL ANSWERING.

21              THE COURT:  ALL RIGHT.  LET ME --

22                  (SIMULTANEOUS COLLOQUY.)

23              THE COURT:  -- HEAR FROM MS. KREVANS, PLEASE.

24              MR. NELSON:  YES.

25              MS. KREVANS:  AFTERNOON, YOUR HONOR.
```

 1      YOUR FIRST QUESTION TO MR. HALL (SIC) WAS ONCE YOU SLIDE

 2   TO ANSWER, IS ANY OTHER UNLOCKING NECESSARY IN THE ACCUSED

 3   DEVICES?  THE ANSWER TO THAT IS NO.  IF YOU SLIDE TO ANSWER,

 4   THE PHONE IS UNLOCKED.  AND I THINK THAT'S THE END OF THE

 5   STORY BECAUSE THERE IS NO OTHER DISTINCTION THEY CAN DRAW FROM

 6   THE CLAIM.

 7      NOW, MR. HALL BROUGHT UP A COUPLE THINGS THAT HE SAID I

 8   DON'T THINK ANY OF THEM FIND SUPPORT IN THE LANGUAGE OF THE

 9   CLAIM OR IN THE SPECIFICATION OR IN THE ACCUSED DEVICES WHEN

10   YOU TURN ONE ON AGAIN LATER --

11      FIRST OF ALL, THE FACT THAT -- THE FACT THAT YOU MAY -- IF

12   THE PHONE IS ALREADY UNLOCKED, YOU MAY USE THE SAME GESTURE TO

13   ANSWER THE PHONE DOES NOT TAKE IT OUTSIDE THE CLAIM.  BECAUSE

14   NOTHING IN THE CLAIM LANGUAGE SAYS THE THING THAT YOU DO TO

15   MEET THIS -- I'M SORRY -- MR. NELSON.

16      -- THE THING THAT YOU DO TO MEET THIS GESTURE CAN HAVE

17   ONLY ONE PURPOSE, TO UNLOCK THE PHONE.  SO SAYING THAT YOU

18   MIGHT USE THE SAME GESTURE TO ANSWER IF THE PHONE IS ALREADY

19   UNLOCKED DOES NOT DEFEAT INFRINGEMENT.

20      THE SECOND THING HE SAID WAS, WELL, HERE, YOU'RE UNLOCKING

21   THE PHONE FOR THE PURPOSES OF ANSWERING THE CALL.  WELL, IT IS

22   TRUE THAT IF THE PHONE IS LOCKED -- AND IN THESE PARTICULAR

23   DEVICES, YOU UNLOCK THE PHONE OR TO ANSWER THE CALL, THAT'S

24   ABSOLUTELY CONTEMPLATED BY THE PATENT IN COLUMN 15 AT THE

25   START OF THE PASSAGE THAT YOUR HONOR REFERRED MR. NELSON TO AT

1    LINES -- I NEED NEW GLASSES -- LINE -- AROUND LINE 49, 50,

2    TALKS ABOUT THE DEVICE 700 IS LOCKED, HAS RECEIVED AN INCOMING

3    CALL, DISPLAYS A PROMPT TO THE USER.  THE DEVICE IS ALSO

4    DISPLAYING THE UNLOCK IMAGE 702 IN CHANNEL 704 SO THAT THE

5    USER CAN UNLOCK THE DEVICE IN ORDER TO ACCEPT OR DECLINE THE

6    INCOMING CALL.

7        SO THAT'S EXACTLY THE SITUATION THAT OCCURS IN THE DEVICE.

8    IT'S EXACTLY THE SITUATION THAT OCCURS IN THE PATENT.  THE

9    FACT THAT ONCE YOU UNLOCK THE PHONE IF YOU WANT TO USE SOME

10   OTHER FEATURE OF THE PHONE BESIDES ANSWER THE PHONE CALL, YOU

11   HAVE TO GO TO A DIFFERENT SCREEN DOESN'T TAKE IT OUTSIDE THE

12   CLAIM UNDER THE LANGUAGE OF THE CLAIM, AND IT CERTAINLY IS

13   CLAIMED FROM THE SPECIFICATION THAT IT DOESN'T TAKE IT OUTSIDE

14   THE SCOPE OF THE INVENTION.

15       **THE COURT:**  SO WHERE DOES THE PATENT CLAIM THE

16   EMBODIMENT IN FIGURE 7?

17       **MS. KREVANS:**  THE -- THE LANGUAGE OF THE COMBINATION

18   OF CLAIM 7 AND 8 READS ON THAT EMBODIMENT BECAUSE EVERY SINGLE

19   ELEMENT OF THE CLAIM IS MET BY THE EMBODIMENT IN FIGURE 7.

20   THERE'S A DISPLAY, THERE'S MEMORY, THERE'S PROCESSORS, THERE

21   ARE INSTRUCTIONS.

22       AND THE INSTRUCTIONS ARE INSTRUCTIONS TO DETECT A CONTACT

23   WITH THE DISPLAY FIRST PREDEFINED LOCATION CORRESPONDING TO AN

24   UNLOCK IMAGE.  YOU SEE THAT IN FIGURE 7 AND ON THE ACCUSED

25   DEVICES.  YOU CONTINUOUSLY MOVE THE IMAGE IN ACCORDANCE WITH

1   MOVEMENT OF THE DETECTED CONTACT WHILE YOU'RE CONTINUING TO

2   CONTACT THE DISPLAY.

3       THE UNLOCK IMAGE IS A GRAPHICAL INTERACTIVE USER INTERFACE

4   OBJECT, AND THE -- THE DEVICE IS UNLOCKED IF THE UNLOCK IMAGE

5   IS MOVED FROM A FIRST PREDEFINED LOCATION --

6           **THE COURT:**  IS THERE ANY --

7           **MS. KREVANS:**  -- TO THE SECOND ONE.

8           **THE COURT:**  -- CASE THAT SAYS A JURY CANNOT FIND THAT

9   THE EMBODIMENT DOESN'T INFRINGE?  WHY CAN'T THEY DO THAT?

10          **MS. KREVANS:**  WELL, I THINK, YOUR HONOR, IT'S NOT --

11  THE QUESTION IS NOT CAN THE JURY FIND THAT AN EMBODIMENT OF

12  THE PATENT DOESN'T INFRINGE.  IT'S WHETHER THERE IS ANY

13  EVIDENCE, LET ALONE SUBSTANTIAL EVIDENCE, FROM WHICH THE JURY

14  HERE COULD HAVE CONCLUDED ON THE WORDS OF THIS CLAIM AND WITH

15  THE OPERATION OF THIS DEVICE THAT THESE PARTICULAR DEVICES

16  DIDN'T INFRINGE.

17      THERE WAS NO NON-INFRINGEMENT DEFENSE PRESENTED.  AND WHEN

18  YOU --

19          **THE COURT:**  WELL, EXCEPT BY YOUR EXPERT, WHO

20  PREVIEWED WHAT THE DEFENSE EXPERT WAS GOING TO SAY.

21          **MS. KREVANS:**  AND THEN EXPLAINED WHY IT WAS WRONG,

22  AND THEIR -- THEIR EXPERT THEN TESTIFIED AND DID NOT ATTEMPT

23  TO ADDRESS THE DEFENSE IN ANY WAY OR SUGGEST THAT OUR EXPERT

24  DR. COCKBURN WAS WRONG IN HIS EXPLANATION OF THE ARGUMENT AND

25  WHY IT WAS INCORRECT.

```
 1        SO THERE WAS NO DEFENSE PRESENTED.  IT'S PLAIN FROM THE

 2   OPERATION OF THE DEVICES THAT THEY MEET THE CLAIM.  AND THIS

 3   IS NOT A CIRCUMSTANCE IN WHICH A REASONABLE JURY COULD HAVE

 4   FOUND NON-INFRINGEMENT BECAUSE THERE IS NO BASIS IN THE RECORD

 5   AND NO BASIS ON -- IN THE LANGUAGE OF THE CLAIM TO FIND THAT

 6   THE DEVICES DON'T MEET THE CLAIM.

 7        THE COURT:  OKAY.  SEPARATE FROM -- RIGHT, THIS CASE,

 8   IS THERE ANY CASE LAW THAT SAYS A JURY CANNOT FIND THAT AN

 9   EMBODIMENT INFRINGES?  SEPARATE FROM THIS CASE, JUST SORT OF

10   ABSTRACTLY HYPOTHETICAL.

11        MS. KREVANS:  I'M NOT -- DO YOU MEAN BY EMBODIMENT IN

12   THE PATENT OR --

13        THE COURT:  IN THE PATENT.

14        MS. KREVANS:  WELL, A JURY'S NOT ASKED -- THE JURY'S

15   NOT ASKED TO DECIDE WHETHER EVERY EMBODIMENT IN THE PATENT

16   FALLS WITHIN THE CLAIM.  THEY'RE ASKED TO COMPARE THE CLAIMS

17   AS -- BY THE COURT TO THE ACCUSED DEVICES.  AND HERE, AS YOU

18   HEARD FROM THE ANSWERS THAT MR. NELSON GAVE TO YOUR QUESTIONS,

19   THERE IS NOTHING THAT TAKES THE DEVICES OUTSIDE THE CLAIM.

20        AND IT MAY BE POSSIBLE THAT THE JURORS DIDN'T THINK TO

21   CALL ONE OF THE PHONES SO THAT THEY COULD SEE THE GRAPHICAL

22   USER INTERFACE AND BE ABLE TO PRACTICE IT THEMSELVES.  YOU

23   KNOW, IT'S HARD -- WE CAN'T SPECULATE ON WHY THE JURY DIDN'T

24   RECALL AS THEY SAT THERE WHAT THE EVIDENCE WAS.

25        THE COURT:  WHAT IF THEY AGREED WITH MR. NELSON?
```

1    THEY THINK "SLIDE TO UNLOCK" MEANS YOU SLIDE, AND YOU GET

2    ACCESS TO ALL THE FEATURES OF THE PHONE AND NOT JUST THE

3    FUNCTIONALITY OF THE DO I ACCEPT OR DECLINE AN INCOMING CALL?

4            **MS. KREVANS:**  BUT IF THAT'S WHAT THEY THOUGHT --

5            **THE COURT:**  UM-HMM.

6            **MS. KREVANS:**  -- THAT'S A THEORY THAT IS CONTRARY TO

7    THE CLAIM LANGUAGE IN THE SPECIFICATION.

8            **THE COURT:**  WHY?

9            **MS. KREVANS:**  BECAUSE IT'S PLAIN -- FIRST OF ALL,

10   THERE'S NOTHING IN THE CLAIM LANGUAGE THAT SAYS IMMEDIATELY

11   AFTER UNLOCKING THE DEVICE, YOU MUST HAVE BEEN AT A SCREEN ON

12   WHICH THERE IS AN ICON FOR WHICH YOU CAN OPERATE EVERY FEATURE

13   OF THE PHONE.  THERE IS NO SUCH DEVICE IN THIS CASE.

14      THERE ARE SO MANY FEATURES ON THIS PHONE I DON'T CARE WHAT

15   THE UNLOCK OPERATION IS, THE FIRST SCREEN YOU GET TO IS NEVER

16   GOING TO GET YOU ACCESS TO EVERY FEATURE OF THE PHONE.

17      THE QUESTION IS, IS THE PHONE IN AN UNLOCKED STATE OR NOT.

18      MR. NELSON WHEN YOU ASKED HIM, WHEN YOU SLIDE TO ANSWER IN

19   THESE DEVICES, IS THE DEVICE IN UNLOCKED STATE, HE TOLD YOU

20   YES.

21      THAT, COMBINED WITH THE WAY THE GRAPHICS LOOK AND ACT WHEN

22   THE USER PUTS THEIR FINGER ON THE SCREEN, MEANS THAT THESE

23   THINGS FALL WITHIN THE SCOPE OF THE CLAIM.  AND IF THE JURY --

24   AND -- AND MR. NELSON WAS SPECULATING, BUT IF THEY HAD THE

25   THEORY THAT MR. NELSON EXPLAINED, THAT'S A THEORY THAT SAYS IF

1  YOU'RE SLIDING TO UNLOCK AND YOU GET TO A SCREEN THAT DOESN'T

2  INSTANTLY LET YOU OPERATE ALL THE FEATURES -- OUTSIDE THE

3  CLAIM, THERE'S NOTHING IN THE CLAIM THAT SUPPORTS THAT.

4      SO THAT CAN'T BE A PERMISSIBLE THEORY FOR THE JURY TO HAVE

5  FOUND NON-INFRINGEMENT.  THAT'S WHY JMOL IS APPROPRIATE HERE.

6          **THE COURT:**  ALL RIGHT.  WELL, LOOK, WHAT IF WE SAY

7  THERE ARE TWO REASONABLE INTERPRETATIONS HERE.  ONE IS

8  MR. NELSON'S, AND ONE IS MS. KREVANS.  I THINK THE STANDARD

9  WOULD SAY CAN'T GRANT JMOL 'CAUSE THERE CAN ONLY BE ONE

10  REASONABLE CONCLUSION AND THAT HAS TO BE CONTRARY TO THE JURY

11  VERDICT.

12      WHY WOULDN'T THIS BE A DENIAL OF JMOL?  YOU SAY, LOOK,

13  THERE COULD BE TWO POTENTIALLY REASONABLE CONCLUSIONS HERE.

14          **MS. KREVANS:**  BECAUSE, YOUR HONOR, WE HAVE TO

15  SEPARATE OUT -- AND AN ISSUE OF FACT OR LAW.  EVERY FACTUAL

16  QUESTION YOU ASKED OF MR. NELSON, HE HAD TO ADMIT THE ANSWER

17  WAS THE ONE THAT -- THE INFRINGEMENT.

18      HE IS POSITING TO YOU AN INTERPRETATION OF THE CLAIM,

19  WHICH IS PLAINLY WRONG, AS -- AS THE REASON HE SAYS THE JURY

20  MIGHT HAVE FOUND ON INFRINGEMENT.  NOT A FACTUAL REASON, BUT A

21  CLAIM INTERPRETATION.  AND THAT, IF IT'S PLAINLY A WRONG CLAIM

22  INTERPRETATION, CANNOT HAVE BEEN A SOUND BASIS FOR THE JURY TO

23  HAVE FOUND NON-INFRINGEMENT.

24      AND THERE IS SIMPLY NOTHING IN HIS CLAIM THAT SUPPORTS THE

25  NOTION THAT THE CLAIM EXCLUDES FROM ITS SCOPE THE SITUATION

1    WHERE WHEN A DEVICE HAS IN FACT, IN A MANNER WHICH PRACTICES

2    THE CLAIM, BEEN TRANSITIONED FROM A LOCKED TO AN UNLOCKED

3    STATE, IT STILL DOESN'T INFRINGE BECAUSE YOU'RE NOT YET AT A

4    SCREEN THAT GIVES YOU ACCESS IN A PRESS A -- YOU KNOW, TAP AN

5    ICON -- EVERY FEATURE OF THE PHONE.  BUT THAT'S THE THEORY ON

6    WHICH HE WANTS TO SAY THE JURY FOUND ON INFRINGEMENT.  IT'S A

7    LEGAL CONSTRUCTION THAT CANNOT BE SQUARED WITH THE LANGUAGE OF

8    THE CLAIM, AND SO IT CAN'T DEFEAT JMOL.

9         **THE COURT:**  ALL RIGHT.  I'M GOING TO GIVE YOU AN

10   OPPORTUNITY TO COME BACK.  I'D LIKE MR. NELSON TO COME BACK TO

11   BE ABLE TO RESPOND TO MS. KREVANS.  SHE SAYS THERE'S NO

12   SUPPORT --

13      I WANT YOU TO ADDRESS TWO THINGS.  NUMBER ONE, SHE SAYS

14   THERE'S NO SUPPORT IN THE PATENT FOR THEIR POSITION.  AND THEN

15   NUMBER TWO, SHE SAYS THERE'S SO MANY FEATURES ON THE PHONE,

16   THERE'S NO WAY THAT YOU WOULD ACCESS ALL THE FEATURES ON HOME

17   PAGE.  YOU USUALLY HAVE TO SCROLL THROUGH A NUMBER OF HOME

18   PAGES TO GET TO ALL OF YOUR FEATURES.

19      SO YOU WANT TO SORT OF TINKER WITH YOUR --

20        **MR. NELSON:**  BUT THAT GOES BACK -- SEE, THAT'S THE

21   PROBLEM WITH THE TERM "UNLOCK."  SO "UNLOCK," THEIR EXPERT --

22   THIS IS PROFESSOR COCKBURN -- YOU KNOW, HE -- HE SAID AT

23   TRIAL, I THINK THE TRANSCRIPT SAYS 633, LINE 7 TO 11, THE

24   SPECIFICATION CLEARLY STATES THAT WHEN THE DEVICE IS LOCKED, A

25   PREDEFINED SET OF ACTIONS IS UNAVAILABLE AND THE DEVICE WILL

1    IGNORE MOST IF NOT ALL INPUT, RIGHT?

2       SO NOW LET'S JUST TAKE THE EXAMPLE IN THE ACCUSED DEVICES.

3    WHAT ARE YOU PRESENTED WITH HERE?  YOU'RE PRESENTED WITH A

4    SINGLE ACTION.  I CAN -- WHETHER THE PHONE IS LOCKED OR NOT,

5    FROM THE USER'S PERSPECTIVE -- AND THIS IS FROM THE JURY'S

6    PERSPECTIVE -- THE PHONE RINGS, YOU GET THIS SCREEN.  I CAN

7    SLIDE ONE WAY TO ANSWER THE PHONE, SLIDE THE OTHER WAY TO

8    DECLINE IN THE ACCUSED PRODUCTS.  SO THAT'S ONE ACTION THAT IT

9    ALLOWS WHEN YOU GET THIS SCREEN.

10       SO IT'S NOT AN UNLOCKED STATE ACCORDING TO THEIR --

11    PROFESSOR COCKBURN, WHAT HE EXPLAINED TO THE JURY THAT THE

12    SPECIFICATION TEACHES IS THAT IT WILL -- THAT THERE'S ONLY --

13    THE DEVICE IS LOCKED, A PREDEFINED SET OF ACTIONS IS

14    UNAVAILABLE.  RIGHT?

15          **THE COURT:**  SO THEN BY YOUR -- BY YOUR DEFINITION,

16    WHAT MAKES IT UNLOCKED, THEN?  HITTING THE HOME PAGE AND THEN

17    ACCESSING THE OTHER FEATURES?

18          **MR. NELSON:**  YES.  THAT'S WHAT YOU -- THAT'S WHAT YOU

19    ABSOLUTELY WOULD HAVE TO DO, THOUGH.

20       SO THE ONLY THING YOU CAN DO FROM THAT SCREEN -- AND THIS

21    IS THE EVIDENCE THAT THE JURY WAS PRESENTED, BOTH FROM THEIR

22    OWN EXPERT'S DEFINITION AND FROM THE PATENT ITSELF -- THE ONLY

23    THING YOU CAN DO, WHETHER THE DEVICE IS LOCKED, WHETHER THE

24    DEVICE IS UNLOCKED, FROM THAT SCREEN WHEN YOU'RE SLIDING IS

25    YOU ANSWER THE CALL OR DECLINE THE CALL.

```
 1        THE FACT THAT YOU CAN FURTHER THEN SAY, NOW I GO THROUGH

 2   THE STEP OF DECLINING THE CALL, NOW I HIT ANOTHER BUTTON.

 3        SO THAT'S WHAT YOU WOULD HAVE TO DO TO DO TO UNLOCK THE

 4   DEVICE, IS TO GO THROUGH THOSE -- THAT SET OF STEPS.  THE JURY

 5   COULD EASILY SAY, WELL, THAT DOESN'T MEET THE CLAIM BECAUSE

 6   THE CLAIM SAYS I TAKE THE UNLOCK IMAGE, I SLIDE IT FROM ONE

 7   PLACE TO ANOTHER, AND NOW A DEVICE IS UNLOCKED.

 8            THE COURT:  WHAT ARE THEY -- MS. KREVANS JUST

 9   ASSERTED THAT THERE'S NO BASIS IN THE CLAIM FOR YOUR POSITION,

10   WHICH I UNDERSTAND YOU'RE GOING TO SAY, NO, IT'S ALL WITHIN

11   THE DEFINITION OF "UNLOCK."

12        BUT WHAT ARE THE BEST PARTS OF THE PATENT THAT SHOULD BE

13   CONSIDERED AS SUPPORTING YOUR POSITION?

14            MR. NELSON:  THE -- SO THE BEST -- THE BEST PARTS, I

15   BELIEVE, WOULD BE COLUMN 7, LINES 64 TO 67, AND COLUMN 8,

16   LINES 8 TO 10.  THAT'S TALKING ABOUT "LOCK" VERSUS "UNLOCK" IN

17   THE PATENT.

18            THE COURT:  SO ARE YOU -- ON COLUMN 8 -- YEAH, COLUMN

19   8 LINES 8 TO 10, ARE YOU REFERRING TO THE SENTENCE "IN SOME

20   EMBODIMENTS, THE DEVICE 100 IN THE LOCKED STATE MAY RESPOND TO

21   A LIMITED SET OF USER INPUTS"?

22            MR. NELSON:  RIGHT.

23            THE COURT:  "INCLUDING INPUTS THAT CORRESPOND TO AN

24   ATTEMPT TO TRANSITION THE DEVICE TO THE USER INTERFACE

25   UNLOCKED STATE OR --"
```

 1                **MR. NELSON:**  RIGHT.

 2                **THE COURT:**  "-- INPUT THAT CORRESPONDS TO POWERING

 3     THE DEVICE OFF."

 4                **MR. NELSON:**  RIGHT.  SO --

 5                **THE COURT:**  AND ON COLUMN 7, 64 TO 67, YOU'RE

 6     REFERRING TO, "IN THE USER INTERFACE LOCKED STATE, HEREINAFTER

 7     THE LOCKED STATE, THE DEVICE 100 IS POWERED ON AND OPERATIONAL

 8     BUT IGNORES MOST IF NOT ALL USER INPUT."

 9                **MR. NELSON:**  RIGHT.  SO THINK ABOUT IT NOW.  WE HAVE

10     THAT.  WE HAVE THE STATEMENT WHICH THAT'S CONSISTENT WITH WHAT

11     PROFESSOR COCKBURN DESCRIBED FOR WHAT THE SPECIFICATION

12     DESCRIBES FOR THE JURY.

13          NOW WHAT THE JURY'S PRESENTED WITH, THEY HAVE THE DEVICES,

14     JUST -- I THINK THIS CAME UP IN THE 1846 CASE, THAT -- A

15     SIMILAR ISSUE.  THEY HAVE THE DEVICES.  THEY CAN TAKE THE

16     DEVICES BACK.  THEY'RE IN EVIDENCE.  AND LOOK AT THESE THINGS.

17          NOW, YOU HAVE ONE WHERE YOU GET A CALL ON THE S II.

18     THAT'S THE EXAMPLE IN THE ACCUSED DEVICE.  THE ONLY THING YOU

19     CAN RESPOND TO FROM -- THAT -- AT THAT SCREEN IS, I CAN HAVE A

20     LIMITED SET OF ACTION (SIC), WHICH IS EITHER ANSWER THE CALL

21     OR REJECT THE CALL.  SO THAT IS THE LIMITED SET OF ACTION.

22          ACCORDING TO THE PATENT, THAT'S A LOCKED STATE.  THAT'S

23     ALL YOU CAN DO, SO IT IS LOCKED.  IT'S STILL LOCKED.

24          NOW YOU CAN DO SOMETHING FURTHER IF YOU WANT FROM THERE,

25     DECLINE THE CALL, HIT -- HIT ANOTHER BUTTON AND ACCESS THESE

1    THINGS, BUT THAT'S NOT THE CLAIM IN THE PATENT.

2         SO IN THE CLAIM OF THE PATENT, YOU UNLOCK THE DEVICE,

3    WHICH MEANS GIVE IT A FULLER SET OF USER ACTIONS, BASICALLY

4    LOOKING AT THAT AS THE ANTITHESIS OR THE -- THE OPPOSITE OF

5    LOCKED, AND -- BUT YOU DO THAT BY SLIDING THE IMAGE FROM ONE

6    PLACE TO ANOTHER.

7         THAT'S THE EVIDENCE THE -- THE JURY WAS PRESENTED.  AND

8    REMEMBER, THIS IS --

9              **THE COURT:**  BUT I FIND COLUMN 8 SUPPORTS APPLE'S

10   POSITION.

11        "IN SOME EMBODIMENTS, THE DEVICE IN THE LOCKED STATE MAY

12   RESPOND TO A LIMITED SET OF USER INPUTS INCLUDING INPUT THAT

13   CORRESPONDS TO AN ATTEMPT TO TRANSITION THE DEVICE TO THE USER

14   INTERFACE UNLOCKED STATE."

15             **MR. NELSON:**  RIGHT.  AND THEN IT'S UNLOCKED.

16             **THE COURT:**  HOW DOES --

17             **MR. NELSON:**  BUT THAT'S THE POINT.  WHAT THEIR

18   POINTING TO WITH THE ANSWER SCREEN, IT'S -- IT CAN RESPOND --

19             **THE COURT:**  RIGHT.  BUT --

20                  (SIMULTANEOUS COLLOQUY.)

21             **THE COURT:**  I'M SORRY I INTERRUPTED YOU, BUT COLUMN

22   16 SAYS WHEN YOU "SLIDE TO ANSWER," YOU'RE IN THE UNLOCKED

23   STATE.

24             **MR. NELSON:**  NO, IT'S NOT SLIDING TO ANSWER.  IT'S

25   SLIDING TO UNLOCK.  THEN YOU GOT IN THAT EMBODIMENT THE -- THE

```
1   LITTLE BUBBLES WHERE YOU CAN ACCEPT OR DECLINE.  SO YOU'RE
2   SLIDING TO UNLOCK IT.
3            THE COURT:  OKAY.  SO THAT -- THAT'S THE BEST YOU'VE
4   GOT, COLUMN 7, LINES 64 THROUGH 67, AND COLUMN 8, LINES 8
5   THROUGH 10?
6            MR. NELSON:  WELL, THAT WITH THE EXPERT'S TESTIMONY
7   THAT I CITED TO YOU, WHICH IS CONSISTENT WITH THOSE.
8            THE COURT:  WHICH YOU SAID WAS DR. COCKBURN?
9            MR. NELSON:  CORRECT.
10           THE COURT:  WHERE?  WHAT WAS THE CITATION JUST SO I
11  HAVE IT?
12           MR. NELSON:  WHAT I CITED WAS PAGE 633 OF THE
13  TRANSCRIPT, YOUR HONOR.  I THINK IT'S RIGHT AROUND LINE 7 TO
14  11 --
15           THE COURT:  OF THE TRIAL TRANSCRIPT?
16           MR. NELSON:  CORRECT.
17           THE COURT:  7 TO 11.
18           MR. NELSON:  CORRECT.  WHERE HE DESCRIBED WHAT
19  "LOCKED" WAS.
20           THE COURT:  ALL RIGHT.
21           MR. NELSON:  BUT -- BUT SEE, THAT'S THE POINT.  SO IF
22  YOU HAVE -- THE DEFINITION EVERYBODY AGREES IN THIS SITUATION,
23  ALBEIT I BELIEVE IT'S A -- SOMEWHAT OF AN AMBIGUOUS SLIDING
24  SCALE, WHO KNOWS EXACTLY WHAT IT IS, WHICH IS PART OF A
25  DEFINITENESS PROBLEM WITH THAT TERM, BUT IT'S -- WHEN IT'S
```

1   LOCKED, IT IGNORES MOST IF NOT ALL USER INPUT, RIGHT?  SO

2   THERE CAN BE SOME SMALL SET OF ACTIONS.

3       HERE, WHEN YOU HAVE -- WHEN YOU GET A CALL, WHETHER IT'S

4   LOCKED OR UNLOCKED, ALL YOU CAN DO WHEN THE SCREEN COMES UP IS

5   ANSWER THE CALL OR DECLINE THE CALL.  SO THAT'S THE LIMITED

6   SET OF ACTIONS.  IT DOESN'T GIVE YOU ACCESS AND SAY IF YOU

7   DECLINE THE CALL, NOW YOU HAVE TO GO THROUGH ADDITIONAL STEPS

8   THAT WOULD GIVE YOU ACCESS TO THE FEATURE THAT AREN'T SLIDING

9   FROM ONE TO ANOTHER, RIGHT?  SO THAT'S THE PROBLEM.

10      THAT'S WHY A REASONABLE JURY COULD CONCLUDE THAT'S NOT

11  UNLOCKING AT ALL.  THAT'S -- THE ONLY THING YOU CAN DO IS

12  ANSWER THAT PHONE OR DECLINE THAT.  THAT'S A LIMITED SET OF

13  ACTIONS THAT -- THAT I CAN DO, BUT I DON'T GET ACCESS TO THE

14  OTHER ONES UNTIL I DO SOMETHING ELSE.  AND THAT'S NOT

15  CONSISTENT WITH THE CLAIM LANGUAGE, 'CAUSE THE CLAIM LANGUAGE

16  SAYS WHEN I SLIDE THAT UNLOCK IMAGE, IT UNLOCKS.

17          THE COURT:  ALL RIGHT.  LET ME HAVE MS. KREVANS COME

18  BACK.

19              (PAUSE IN THE PROCEEDINGS.)

20          THE COURT:  LET'S TALK ABOUT THE EPIC 4G TOUCH.

21          MS. KREVANS:  CAN I FIRST JUST ADDRESS WHAT

22  MR. NELSON JUST SAID --

23          THE COURT:  OKAY.  GO AHEAD.

24          MS. KREVANS:  -- WITH RESPECT --

25      IT'S WRONG, AND I THINK I CAN EASILY SHOW YOU WHY IT'S

1    WRONG.

2              **THE COURT:**  OKAY.

3              **MS. KREVANS:**  SO FIRST OF ALL, WE SHOULD REMEMBER IF

4    YOU LOOK AT THE VERY START OF THE PATENT, COLUMN 1, WHAT THIS

5    PATENT IS ABOUT IS YOU HAVE A TOUCH-SENSITIVE DEVICE, AND YOU

6    HAVE A LOT OF THINGS THE DEVICE CAN DO.  AND YOU WANT TO BE

7    ABLE TO HAVE SOME KIND OF WAY TO PROTECT THE USER FROM

8    INADVERTENTLY DOING THINGS THEY DON'T WANT TO DO WHEN THEY

9    CONTACT THE TOUCH-SENSITIVE SCREEN BY ACCIDENT WITH THEIR

10   FINGERS OR SOMETHING ELSE.

11       SO YOU HAVE -- A WAY TO DEAL WITH THAT IS YOU HAVE A

12   LOCKED STATE AND AN UNLOCKED STATE.  AND WHEN THE DEVICE IS IN

13   THE LOCKED STATE, IT RESPONDS TO VERY LITTLE USER INPUT, AND

14   THAT'S BY DESIGN BECAUSE YOU WANT IT TO BE LOCKED SO YOU DON'T

15   DO THINGS BY ACCIDENT.

16       AND SO WHEN YOU ARE IN THE LOCKED STATE -- THEN IF YOU GO

17   TO COLUMN 7, THIS IS THE PLACE THAT YOU WERE TALKING ABOUT

18   WITH MR. NELSON STARTING AROUND LINE 64 -- A LOCKED DEVICE

19   RESPONDS TO VERY LITTLE USER INPUT.  THE INPUT IT'S LOOKING

20   FOR IS THE INPUT THAT SAYS "UNLOCK ME."  AN UNLOCKED DEVICE

21   RESPONDS TO USER INPUT FOR NAVIGATING BETWEEN USER INTERFACES,

22   AMONG OTHER THINGS.

23       SO TAKE THE ACCUSED DEVICES.  WHEN THEY ARE IN A LOCKED

24   STATE AND THEY GET A PHONE CALL, WHEN YOU SLIDE WITH THE

25   VISUAL CUE FROM ONE PREDETERMINED LOCATION TO ANOTHER, YOU

1      SIMULTANEOUSLY UNLOCK THE PHONE.  YOU TRANSITION IT FROM A

2      LOCKED TO THE UNLOCKED STATE AND YOU ANSWER THE CALL.

3          YOU DON'T HAVE TO DO ANYTHING ELSE TO GET TO THE UNLOCKED

4      STATE.  AND NOW THAT YOU'RE IN THE UNLOCKED STATE, YOU CAN, AS

5      THE USER, USE THE TOUCH SCREEN TO GIVE USER INPUT FOR

6      NAVIGATING BETWEEN USER INTERFACES.

7          SO YOU'RE AT THE PHONE SCREEN RIGHT NOW, BUT IF YOU WANT

8      TO USE SOMETHING DIFFERENT, IT'S NOT TRUE THAT YOU HAVE TO DO

9      SOMETHING FURTHER TO UNLOCK THE PHONE TO DO SOMETHING ELSE.

10     YOU JUST GIVE USER INPUT TO NAVIGATE BETWEEN USER INTERFACES

11     BECAUSE YOU'RE NOW IN THE UNLOCKED STATE.  YOU GO TO WHATEVER

12     SCREEN HAS THE DIFFERENT THING YOU WANT TO DO AND YOU DO IT.

13     THE PHONE IS NOW UNLOCKED.  THE GRAPHICAL INTERFACE THAT YOU

14     USED TO UNLOCK IT MET THE CLAIM, AND IT INFRINGES.

15         AND THESE THEORIES ABOUT WHY SOMEHOW BECAUSE YOU WERE

16     DOING THIS BECAUSE YOU WANTED TO ANSWER A CALL MEANS IT TAKES

17     IT OUTSIDE THE CLAIM DON'T FIND ANY SUPPORT IN THE CLAIM

18     LANGUAGE BECAUSE YOU -- YOU DID WHAT THE CLAIM LANGUAGE SAID.

19     THE DEVICE HAD THE INSTRUCTIONS THE CLAIM LANGUAGE REQUIRED.

20     IT HAD THE GRAPHICAL USER INTERFACE THAT THE CLAIM LANGUAGE

21     REQUIRES.  AND WHEN YOU USE THE USER INTERFACE, YOU TRANSITION

22     THE DEVICE FROM LOCKED STATE TO UNLOCKED STATE.

23              **THE COURT:**  LET ME ASK YOU, ON COLUMN 8, LINE 64 TO

24     COLUMN 9, LINE 2 --

25              **MS. KREVANS:**  UM-HMM.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1      **THE COURT:**  -- SAYS, "THE DEVICE MAY BE SET, THAT IS,

2    TRANSITIONED COMPLETELY TO A LOCKED STATE FROM ANY OTHER STATE

3    TO THE LOCKED STATE UPON SATISFACTION OF ANY OF ONE OR MORE

4    LOCKED CONDITIONS.  THE LOCKED CONDITIONS MAY INCLUDE EVENTS

5    SUCH AS THE ELAPSING OF A PREDEFINED TIME OF INACTIVITY, ENTRY

6    INTO AN ACTIVE CALL OR POWERING ON THE DEVICE."

7      SO THIS IS CALLING "ENTRY INTO AN ACTIVE CALL" AS "A

8    LOCKED STATE."

9      WOULDN'T THAT SUPPORT SAMSUNG'S POSITION?

10      **MS. KREVANS:**  NO.  WHAT -- WHAT THIS PASSAGE IN THE

11   PATENT IS TALKING ABOUT IS HOW TO TRANSITION FROM AN UNLOCKED

12   STATE TO A LOCKED STATE.  AND IT GIVES EXAMPLES OF KINDS OF

13   THINGS THAT A DESIGNER OF A DEVICE MIGHT CHOOSE TO DO TO ALLOW

14   THAT TRANSITION.  JUST TALKING ABOUT THE REVERSE OF WHAT THE

15   CLAIM IS ABOUT.  THIS IS HOW TO GO FROM UNLOCKED TO LOCKED.

16      SO THIS IS NOT WHAT THE CLAIM IS ADDRESSED TO, NOT WHAT

17   CLAIM 7 IS ADDRESSED TO.

18      **THE COURT:**  WHAT ABOUT FURTHER DOWN ON COLUMN 8, "THE

19   LOCKED DEVICE RESPONDS TO USER INPUT CORRESPONDING TO ATTEMPTS

20   TO TRANSITION THE DEVICE TO THE USER INTERFACE UNLOCKED STATE

21   OR POWERING THE DEVICE OFF BUT DOES NOT RESPOND TO USER INPUT

22   CORRESPONDING TO ATTEMPTS TO NAVIGATE BETWEEN USER

23   INTERFACES."

24      **MS. KREVANS:**  I'M SORRY.  ARE YOU IN COLUMN 8 OR

25   COLUMN 9?  I'M NOT FINDING THE LANGUAGE.

1    **THE COURT:**  THIS IS ALL -- IT'S COLUMN 8, LINES 13

2    THROUGH 17.

3    **MS. KREVANS:**  OKAY.  SO THIS IS TALKING ABOUT THE

4    KINDS OF USER INPUTS THAT MIGHT FIT INTO THAT LIMITED CATEGORY

5    THAT THE TOUCH-SENSITIVE DISPLAY WILL RESPOND TO WHILE IT'S IN

6    THE LOCKED STATE.  AND IT GIVES A NUMBER OF EXAMPLES.  BUT

7    THEY'RE LIMITED EXAMPLES BECAUSE WHEN YOU'RE IN A LOCKED

8    STATE, YOU WANT THE SCREEN MOSTLY NOT TO RESPOND.

9    AND I DON'T THINK THERE'S ANYTHING HERE THAT IN ANY WAY

10   CHANGES THE SCOPE OF THE LANGUAGE OF THE CLAIM OR -- OR

11   AFFECTS THE INFRINGEMENT ANALYSIS HERE.

12   IN FACT, IF YOU LOOK AT THAT LANGUAGE, IT TALKS ABOUT IT

13   WILL RESPOND TO INPUT, BUT -- OF VERY LIMITED KINDS, BUT IT

14   DOESN'T RESPOND TO INPUT THAT'S TRYING TO NAVIGATE BETWEEN ONE

15   SCREEN TO ANOTHER BECAUSE IT'S -- IT'S TRYING TO MAKE SURE YOU

16   DON'T DO SOMETHING YOU DIDN'T WANT TO DO.

17   **THE COURT:**  WHAT ABOUT THE EPIC 4G TOUCH?  IT APPEARS

18   TO BE MISSING ANOTHER CLAIM LIMITATION IN THAT RATHER THAN THE

19   UNLOCK IMAGE SORT OF TRACKING YOUR FINGER AS YOU MOVE TO

20   TRANSITION FROM ONE STATE TO THE OTHER, YOU TOUCH IT AND THEN

21   IT KIND OF SEEMS TO DISAPPEAR.

22   IT DOESN'T SEEM TO TRACK, YOU KNOW, FROM ONE DESTINATION

23   TO ANOTHER TO SLIDE IT FROM ONE STATE TO ANOTHER.

24   **MS. KREVANS:**  SO I DON'T HAVE THE DEVICE IN FRONT OF

25   ME.  ARE YOU TALKING ABOUT THE ONE WHERE WHEN YOU HIT THE LOCK

```
1    SYMBOL, THE LOCK GOES AWAY, AND THEN THERE'S A SERIES OF DOTS

2    AND AS YOU MOVE YOUR FINGERS ACROSS THEM, THERE'S SORT OF A

3    FLASHLIGHT EFFECT THAT SHOWS YOU THAT YOU'RE MOVING ACROSS THE

4    DOTS?

5            THE COURT:  NO, NOT THAT ONE.  LET'S SEE IF WE CAN --

6    ALL RIGHT.  THIS ONE MIGHT WORK.

7        I'M GOING TO HAVE MS. PARKER BROWN CALL ON THIS ONE.

8        THIS ONE HOPEFULLY WORKS.

9                    (OFF-THE-RECORD DISCUSSION.)

10           THE COURT:  SO, IT'S 650 --

11           THE CLERK:  OKAY.

12           THE COURT:  -- 776 -- OH, I GOT THIS ONE TO WORK, THE

13   SKYROCKET.  ALL RIGHT.  SO WE'LL DO THAT ONE NEXT.

14           THE CLERK:  650-776...?

15           THE COURT:  0631.

16           MS. KREVANS:  ALL RIGHT.  I'M GOING TO ASK

17   MR. ROBBINS TO COME UP HERE BECAUSE HE KNOWS HOW TO WORK THESE

18   SAMSUNG PHONES SO I WON'T HAVE ANY ACCIDENTS.

19           THE COURT:  OKAY.  SURE.

20           THE CLERK:  IT'S RINGING.

21           THE COURT:  OKAY.  SO IF YOU PUT YOUR FINGER ON THE

22   GREEN TELEPHONE THAT'S IN THE CIRCLE -- DO YOU SEE WHY I DON'T

23   KNOW IF THERE'S ANY TRACKING THERE?  DID YOU SEE IT?  IT KIND

24   OF DISAPPEARS AND IMMEDIATELY --

25       THAT'S JX33B.
```

```
 1                    MS. KREVANS:  IT IS, YOUR HONOR, BUT WE'RE WONDERING

 2    WHETHER THIS PHONE INVERTEDLY (PHONETIC) UPDATED BECAUSE IT

 3    DOESN'T BEHAVE THE WAY WE THINK THAT IT SHOULD BE BEHAVING.

 4                    THE CLERK:  SHOULD I HANG UP?

 5                    THE COURT:  YEAH, YOU CAN HANG UP.

 6                    MS. KREVANS:  I WAS ABOUT TO SAY "HELLO."

 7                    THE COURT:  OH, YOU THINK THAT MAY HAVE UPDATED?

 8                    MS. KREVANS:  WE'LL BE HAPPY TO LOOK.

 9                    THE CLERK:  IS THAT ONE WORKING?  SHOULD WE TRY THAT?

10                    THE COURT:  YES.  LET'S TRY THIS ONE.  SO THE NEXT

11    ONE IS THE SKYROCKET, AND IT'S EXHIBIT 34C, AND I'LL GIVE YOU

12    THE NUMBER TO CALL THAT ONE.

13                         (OFF-THE-RECORD DISCUSSION.)

14                    THE COURT:  OKAY.  THAT ONE IS 917-561-5364.  SHOULD

15    BE ON.

16                    THE CLERK:  IT WAS.

17                    THE COURT:  OKAY.

18                    MS. KREVANS:  IT WAS A SECOND AGO.

19                    THE COURT:  OKAY.  YOU PRESSED IT -- YOU PRESSED

20    "ACCEPT," CORRECT?

21                    MR. ROBBINS:  THIS IS --

22                    THE CLERK:  SHOULD WE CALL IT AGAIN?

23                    THE COURT:  LET'S CALL IT AGAIN.

24                    THE CLERK:  917...?

25                    THE COURT:  561-5364.
```

```
 1        OKAY.  WE HAVE THE LEFT GREEN BOX FOR THE PHONE.  AND

 2   YOU'RE SLIDING IT ACROSS FROM LEFT TO RIGHT ON THE DEVICE.  IT

 3   SAYS "ACCEPT," AND THEN HAVE YOU CONNECTED WITH THE -- YOU'VE

 4   CONNECTED WITH THE USER, AND IT'S GIVING YOU OPTIONS OF WHAT?

 5   "ADD CALL," "IGNORE," "MUTE," "HAND-HELD" --

 6            MS. KREVANS:  RIGHT, 'CAUSE HE'S IN THE PHONE SCREEN.

 7            THE COURT:  -- "KEY PAD," "END CALL."

 8        OKAY.  SO LET ME ASK MR. NELSON, YOU WERE -- YOU'VE SEEN

 9   HOW -- THAT'S THE SKYROCKET.

10        CERTAINLY DOES GIVE YOU A LOT OF OPTIONS AS SOON AS YOU

11   SLIDE, RIGHT?

12            MR. NELSON:  YES.  THAT PARTICULAR ONE?

13            THE COURT:  "SPEAKER," "HAND-HELD," YES.

14            MR. NELSON:  WELL, THOSE ARE ALL THE THINGS -- JUST

15   LIKE YOU WOULD IF THE -- REGARDLESS OF THE STATE OF THE DEVICE

16   THAT YOU GO TO WHEN YOU ANSWER A CALL, SO IT'S JUST GIVING YOU

17   THE CALL INTERFACE.

18            THE COURT:  ALL RIGHT.  SO NOW YOU'RE SAYING THERE'S

19   A DIFFERENCE IN THE FEATURES, THAT IT HAS TO BE HOME PAGE

20   FEATURES AND NOT SLIDE-TO-ANSWER FEATURES.

21            MR. NELSON:  WELL, YEAH, WITH -- SEE, THE -- JUST

22   LIKE THE JURY --

23            THE COURT:  OKAY.  WHERE IN THE -- YOU GOT TO, THEN,

24   POINT TO ME, WHERE IN THE PATENT DOES IT SAY THAT THE FEATURE

25   SET THAT IS OFFERED TO YOU MUST BE THE HOME PAGE FEATURES AND
```

```
1    NOT TO SLIDE-TO-ANSWER TELEPHONE CALL FEATURES.

2              MR. NELSON:  I'M NOT SAYING THAT.  I POINTED YOU --

3              THE COURT:  OH, OKAY.

4              MR. NELSON:  -- ALREADY -- I POINTED YOU TO THE

5    SECTIONS.

6              THE COURT:  OKAY.

7              MR. NELSON:  -- YOU KNOW, WITH RESPECT --

8              THE COURT:  WITH RESPECT TO --

9              MR. NELSON:  -- LOCK --

10             THE COURT:  COLUMN 7 AND COLUMN 8?

11             MR. NELSON:  YEAH, I'M NOT SUGGESTING THAT THERE'S A

12   SECTION OF THE PATENT -- WHAT I'M TALKING ABOUT IS -- THE --

13   WHAT THE JURY IS -- WHAT THEY'RE LEFT WITH, THERE'S NO

14   CONSTRUCTION OF "UNLOCK," RIGHT?  THEY DON'T -- THEY DIDN'T --

15   THEY WEREN'T PROVIDED WITH A CONSTRUCTION, SO THEY WERE

16   INSTRUCTED -- I THINK IT WAS JURY INSTRUCTION 22, APPLY THE

17   PLAIN-AND-ORDINARY MEANING, RIGHT?

18        SO YOU LOOK AT THE CLAIM.  WE WALKED THROUGH THE CLAIM.

19   AND THE PURPOSE OR -- OR WHAT THE CLAIM SAYS IS YOU SLIDE THIS

20   OVER TO UNLOCK THE DEVICE --

21             THE COURT:  AND CAN I ASK YOU A QUESTION?

22             MR. NELSON:  YES.

23             THE COURT:  PLAIN-AND-ORDINARY MEANING TO A PERSON OF

24   ORDINARY SKILL IN THE ART, CORRECT?

25             MR. NELSON:  RIGHT.
```

 1          **THE COURT:**  AT THE TIME THIS PATENT APPLICATION WAS

 2     FILED, OR AT WHAT TIME OR IN WHAT CONTEXT?  IN THE CONTEXT OF

 3     THE LANGUAGE OF THE WHOLE PATENT OR -- GIVE ME THE SCOPE.

 4          **MR. NELSON:**  IT'S READ IN LIGHT OF THE SPECIFICATION.

 5     THE TIMING ISSUE I THINK CASES VARY A LITTLE BIT.  I THINK

 6     IT'S TYPICALLY AT THE TIME OF ISSUANCE, 'CAUSE THAT'S WHEN THE

 7     CLAIMS ARE SOLIDIFIED.

 8          BUT HERE, IT'S -- I DON'T THINK ANYBODY WOULD ARGUE THAT

 9     THERE'S A DIFFERENCE BASED UPON THAT, YOU KNOW, COUPLE-YEAR

10     TIME WINDOW.

11          **THE COURT:**  ALL RIGHT.  BUT IT'S IN THE CONTEXT OF

12     THE LANGUAGE OF THE PATENT AND SPECIFICATION?

13          **MR. NELSON:**  CORRECT.

14          **THE COURT:**  OKAY.

15          **MR. NELSON:**  SO THE -- THE -- AND YES, FROM THE

16     PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART.  BUT THE JURY

17     WAS INSTRUCTED TO APPLY PLAIN MEANING, SO WHAT WE HAVE HERE IS

18     A SITUATION WHERE THE UNLOCK SCREENS, THEY'RE NOT ACCUSED ON

19     THESE PHONES.  THAT WAS ALL VERY CLEAR.  AND THAT'S WHAT WE

20     WERE TALKING ABOUT.

21          THEY ACCUSE THE "CALL TO ANSWER," AND THE FUNCTION OF THE

22     "CALL TO ANSWER" IS TO ANSWER A CALL, TO TAKE YOU TO THE CALL

23     INTERFACE OR DECLINE THE CALL, RIGHT?  THAT'S TRUE WHETHER THE

24     DEVICE IS LOCKED OR NOT -- UNLOCKED.

25          SO THE JURY COULD VERY REASONABLY CONCLUDE, BASED UPON

1    THAT, THAT THIS -- WHAT THEY'RE POINTING TO IN "SLIDE TO

2    ANSWER," THAT'S NOT FOR UNLOCKING THE DEVICE.  THAT IS FOR

3    ANSWERING A CALL OR NOT ANSWERING A CALL.

4        NOW, YOU CAN DO ADDITIONAL THINGS AND UNLOCK THE DEVICE.

5    SO THE JURY APPLIED -- THE JURY INSTRUCTIONS APPLIED

6    PLAIN-AND-ORDINARY MEANING.  WE POINTED YOU TO THE TESTIMONY

7    WHERE THERE'S NOTHING INCONSISTENT WITH THAT INTERPRETATION.

8    IT'S A PLAIN MEANING INTERPRETATION BY THE JURY.  AND THEY

9    DECLINED TO ACCEPT APPLE'S THEORY OF INFRINGEMENT IN THE CASE,

10   AND IT WAS THEIR BURDEN.  SO I THINK THAT'S WHAT WE'RE LEFT

11   WITH.  THAT'S THE RECORD THAT WE'RE LEFT WITH.

12       AND NOW, WHAT WE'RE COMING IN AND -- AND DOING IS ALMOST

13   SECOND-GUESSING AFTER THE FACT AND SAYING, WELL, HERE'S WHAT

14   "UNLOCK" SHOULD MEAN.  AND I MEAN, I UNDERSTAND THE PURPOSE.

15   WE'RE TRYING TO GET TO THAT.  BUT WE -- THE JURY WASN'T

16   PROVIDED WITH FURTHER DIRECTION BEYOND THE PATENT, BEYOND

17   THE -- THE TESTIMONY THAT I CITED TO YOU, I BELIEVE THAT WAS

18   THE ONLY PLACE WHERE IT WAS TALKED ABOUT -- AS TO WHAT

19   "UNLOCK" WAS FROM THE PERSPECTIVE OF ORDINARY SKILL IN THE

20   ART.

21       SO I DON'T THINK -- I DON'T THINK WE CAN PARSE IT THAT

22   FINELY AFTER THE FACT.  WE JUST HAVE TO DETERMINE WHETHER THAT

23   NOTION OF "UNLOCK" IS CONSISTENT WITH THE PLAIN-AND-ORDINARY

24   MEANING, AND I BELIEVE IT IS.

25            THE COURT:  ALL RIGHT.  I MEAN, I AM NOT AT ALL

```
 1   SAYING THAT I WOULD DO THIS -- IT'S AN EXTREMELY HIGH

 2   STANDARD -- BUT IF -- IF THE COURT WERE TO GRANT JMOL ON

 3   THE -- WELL, FIRST OF ALL, IN EPIC 4G TOUCH, DO YOU AGREE WITH

 4   APPLE THAT ANY UPDATE MAKES A DIFFERENCE OR -- WHAT WAS YOUR

 5   UNDERSTANDING OF HOW THAT ONE WORKS, 'CAUSE I DON'T THINK IT

 6   TRACKS WITH THE MOVEMENT OF THE FINGER.

 7           MR. NELSON:  YEAH, I AGREE WITH THAT, THAT -- I

 8   WAS --

 9           THE COURT:  BUT WAS THAT AN UPDATED -- IS THAT AN

10   UPDATED FUNCTIONALITY OR --

11           MR. NELSON:  I DIDN'T THINK IT WAS, BUT THAT --

12   IT'S -- HE WAS LOOKING --

13                   (SIMULTANEOUS COLLOQUY.)

14           THE COURT:  WHO -- CAN SOMEONE JUST --

15           MR. NELSON:  OH, I'M SORRY.

16           THE COURT:  CAN SOMEONE MAYBE THIS WEEK JUST CLARIFY

17   WHETHER --

18           MR. NELSON:  YEAH, WE CAN LOOK AT -- JUST TO SEE WHAT

19   THE -- AND THEN WE CAN COMPARE IT TO WHATEVER 'CAUSE WE HAVE A

20   RECORD OF WHAT THE VERSION THE JURIES HAD IN TERMS OF THE --

21   YOU KNOW, THE OPERATING SYSTEM, SOFTWARE, AND SUCH.

22           THE COURT:  OKAY.  CAN YOU ALL MAYBE FILE SOMETHING

23   JOINTLY BY FRIDAY OR NEXT WEEK?  I DON'T KNOW HOW MUCH TIME --

24   I GUESS FRIDAY'S TOMORROW.  I'M SORRY.  WHAT -- HOW MUCH TIME

25   WOULD YOU LIKE?
```

1        **MS. KREVANS:**  YOUR HONOR, ALL WE NEED TO DO IS LOOK

2    AT THE SOFTWARE VERSION THAT'S ON THAT PHONE AND COMPARE IT TO

3    THE CHART WE HAVE WITH THE SOFTWARE VERSIONS THAT ARE ON THE

4    PHONES THAT ARE ADMITTED.

5        **MR. NELSON:**  RIGHT.

6        **THE COURT:**  OKAY.  SO WHEN -- CAN YOU JUST FILE A --

7        **MS. KREVANS:**  WELL, I THINK -- SURE.  WE'LL LOOK AT

8    IT AT A BREAK AND --

9        **MR. NELSON:**  WE CAN TAKE CARE OF THAT, YOUR HONOR.

10        **THE COURT:**  WELL, I DON'T -- YOU KNOW, THIS IS MY

11    LONGEST SET OF QUESTIONS.  HOPEFULLY, THE REST WILL GO FASTER,

12    BUT -- OKAY.  IF YOU COULD JUST LET ME KNOW BY MONDAY AT THE

13    LATEST.

14        **MR. NELSON:**  OKAY.

15        **THE COURT:**  THAT WOULD BE GREAT ON THAT ISSUE.  FILE

16    SOMETHING JOINTLY AND LET ME KNOW IF YOU HAVE A DISAGREEMENT

17    OR NOT.  BUT LET ME ASK -- AND I'M NOT SAYING AT ALL THAT I'M

18    GOING TO DO THIS, BUT I DID WANT TO AT LEAST ASK.

19        IF, HYPOTHETICALLY, I WERE TO GRANT JMOL ON THE S II AND

20    THE SKYROCKET, WOULD THE PARTIES STIPULATE TO DAMAGES?  OR

21    WOULD WE HAVE TO DO ANOTHER DAMAGES RETRIAL?

22        I MEAN, IT SEEMS LIKE THE JURY WAS PRETTY CONSISTENT ON

23    DOING FOUR TIMES DR. CHEVALIER'S RUNNING ROYALTY AND ABOUT 88

24    PERCENT OF DR. VELLTURO'S REASONABLE ROYALTY CALCULATIONS FOR

25    '721.

1          **MS. KREVANS:**  YOUR HONOR, I THINK IT'S PERHAPS EVEN

2     EASIER THAN THAT BECAUSE THERE WERE PHONES THAT WERE FOUND TO

3     INFRINGE THE '721 WHICH WE KNOW THE PER-UNIT DAMAGES.  I THINK

4     WHAT THEN WOULD MAKE THE MOST SENSE WOULD BE TO SIMPLY SAY WE

5     HAVE THE NUMBER UNITS OF THESE PHONES, AND IF THEY WERE ALSO

6     FOUND TO INFRINGE, WE WOULD JUST APPLY THAT SAME PER-UNIT

7     DAMAGE TO THIS NUMBER OF UNITS.

8          **THE COURT:**  AND HOW ARE YOU CALCULATING THAT PER-UNIT

9     DAMAGE?

10          **MS. KREVANS:**  WE KNOW THE NUMBER OF UNITS, AND WE

11     KNOW THE AMOUNT AWARDED FOR EACH PATENT FOR EACH PRODUCT.

12          **THE COURT:**  AND WAS IT CONSISTENT ACROSS THE

13     PRODUCTS?

14          **MS. KREVANS:**  FOR THE PATENT, YES.

15          **THE COURT:**  FOR THE '721?

16          **MS. KREVANS:**  YES.

17          **THE COURT:**  OKAY.

18       LET ME HEAR FROM MR. NELSON OR IF ANYONE ELSE ON YOUR TEAM

19     WANTS TO ANSWER THIS.

20               (OFF-THE-RECORD DISCUSSION.)

21          **MR. WATSON:**  YOUR HONOR, SCOTT WATSON.

22       WE RAN INTO THIS PRECISE ISSUE, YOU'LL RECALL, WITH THE

23     '172 PATENT WHERE SOME UNITS WERE OMITTED.  THE JURY DIDN'T

24     CHANGE THE DAMAGE AWARD.  WE BELIEVE THAT REFLECTS A LUMP-SUM

25     AWARD.  SO WE THINK THE ACTUAL DAMAGE AWARD WOULD NOT CHANGE

```
1    EVEN IF THESE PRODUCTS WERE ALSO FOUND TO INFRINGE THE '721.

2         HOWEVER, IF THE COURT WERE TO REJECT THAT, YOU KNOW, IT

3    IS, AT THE MOST, A REASONABLE ROYALTY, SO IT COULD PROBABLY BE

4    CALCULATED.

5              THE COURT:  OH, IT COULD BE CALCULATED.

6              MR. WATSON:  POTENTIALLY.  WE WOULD TO HAVE CONFER.

7              THE COURT:  SURE.  OKAY.

8         ALL RIGHT.  THEN JUST MY LAST QUESTION.  THIS IS THE

9    LONGEST SET OF QUESTIONS.  I DON'T MEAN TO SCARE PEOPLE --

10             MR. NELSON:  CAN I JUST ADD SOMETHING ON THAT ONE

11   LAST POINT, YOUR HONOR?

12             THE COURT:  YES.

13             MR. NELSON:  THERE IS A DISTINCTION, I BELIEVE, EVEN

14   BETWEEN THE PHONES THAT ARE FOUND TO INFRINGE.  REMEMBER, ALL

15   THOSE, IT WAS THE UNLOCKED SCREEN, THE HOME SCREEN.  WHAT

16   APPLE KEPT SAYING IS, OH, THIS IS THE INITIAL USER EXPERIENCE.

17        IN THESE PHONES, WE'D BE TALKING ABOUT A VERY TERTIARY

18   THING, ANSWERING A PARTICULAR CALL.  IT'S NOT THE HOME SCREEN.

19   SO A LOT OF THEIR TESTIMONY IN TERMS OF THE VALUE AND WHAT THE

20   ROYALTY WOULD BE AS A RESULT REALLY WOULDN'T APPLY IF WE'RE

21   NOT TALKING ABOUT --

22             THE COURT:  SO YOU WOULD WANT A RETRIAL ON DAMAGES?

23             MR. NELSON:  WELL, I'M NOT SURE THAT THAT'S THE CASE.

24   I'M JUST PUTTING THAT OUT THERE AS A -- AS A POTENTIAL ISSUE

25   THAT WOULD NEED TO BE CONSIDERED.
```

1      **THE COURT:**  RIGHT.  BUT IF -- IF THERE'S GOING TO BE

2    SOME TYPE OF APPORTIONMENT, THEN I DON'T THINK THAT CAN BE

3    DONE BY STIPULATION.  AND THEN IT WOULD HAVE TO BE A RETRIAL,

4    RIGHT?  I THINK THAT'S LESS LIKELY TO GET A STIPULATION.

5      **MR. NELSON:**  PROBABLY.

6      **THE COURT:**  YEAH.  OKAY.

7      I HAVE ONE LAST QUESTION, AND THAT'S FOR MS. KREVANS.  I

8    MEAN, IT DOES SEEM LIKE THERE COULD BE A REASONABLE

9    INTERPRETATION THAT "UNLOCK" MEANS UNLOCK THE FULL FEATURES OF

10   THE PHONE, MOST IF NOT ALL OF THE FEATURES OF THE PHONE, OR

11   "UNLOCK" COULD MEAN LIKE YOU'RE SAYING, JUST UNLOCKING SO YOU

12   COULD ACCESS MOST IF NOT ALL THE FEATURES OF THE PHONE EVEN IF

13   IT'S NOT DIRECT.

14     SO UNDER THE LOWER STANDARD FOR INDEFINITENESS, HOW IS

15   THERE A REASONABLE CERTAINTY HERE?

16     **MS. KREVANS:**  YOUR HONOR, I DON'T BELIEVE THAT THERE

17   ARE ACTUALLY ARE TWO DEFINITIONS FLOATING AROUND, ALTHOUGH I

18   THINK THAT MR. NELSON HAS TRIED TO CONFUSE THIS.

19     WHEN YOU LOOK AT THE TRANSCRIPT, YOU'LL SEE THAT EARLY IN

20   THIS HEARING THIS AFTERNOON, WHEN YOU ASKED HIM ONCE A USER

21   DOES THIS SLIDE TO ANSWER, WHICH ALSO UNLOCK THE PHONE, DO

22   THEY HAVE TO DO ANYTHING ELSE TO UNLOCK THE PHONE, HE SAID NO.

23   IT'S JUST THAT TO DO THINGS OTHER THAN -- TO USE FEATURES OF

24   THE PHONE, YOU HAVE TO GO TO THE HOME SCREEN WHERE THEY ARE.

25   SO YOU HAVE TO NAVIGATE.  THAT'S DIFFERENT THAN "UNLOCKING."

1    THERE IS ONLY ONE DEFINITION OF "UNLOCK."  AND SO I THINK

2    THAT'S WHY THEY'RE WRONG ON -- ON THE MOTION ABOUT

3    INFRINGEMENT.  WITH THESE PARTICULAR PHONES, THERE ARE TWO

4    WAYS TO UNLOCK THE PHONE.  YOU CAN UNLOCK THE PHONE IF SOMEONE

5    IS NOT CALLING AT THAT MOMENT USING THE CLASSIC "UNLOCK"

6    FUNCTION, OR IF SOMEONE IS CALLING THE PHONE, YOU CAN

7    SIMULTANEOUSLY UNLOCK AND ANSWER USING THIS "SLIDE TO ANSWER"

8    AND UNLOCK.  ONCE YOU DO THAT, THE PHONE IS UNLOCKED FOR ALL

9    PURPOSES.  SO THERE AREN'T TWO DIFFERENT -- THERE AREN'T TWO

10   DIFFERENT LEVELS OF ACCESS TO GET TO THESE PHONES.

11       ONCE IT'S UNLOCKED, WHICHEVER WAY YOU GOT TO IT, IT IS

12   COMPLETELY UNLOCKED.

13            **THE COURT:**  SO YOU'RE SAYING ADDING AN ADDITIONAL

14   STEP OF HAVING TO HIT THE "END CALL" OR "HOME PAGE" IS

15   IRRELEVANT.

16            **MS. KREVANS:**  THAT'S JUST NAVIGATION AROUND.  IT'S

17   PLAIN FROM THE PATENT.  THAT, YOU DO WHEN THE PHONE IS ALREADY

18   UNLOCKED.  THAT'S SOMETHING YOU'RE DOING IN THE UNLOCKED

19   STATE.  IT'S NOT FURTHER UNLOCKING.  NOTHING COULD BE FURTHER

20   PLAINER THAN THE SPECIFICATION ON THAT POINT.

21       AND SO I DON'T THINK THAT THIS ISSUE HAS REALLY ANYTHING

22   TO ADD TO THE INDEFINITENESS POINT.  YOU'VE ALREADY REJECTED

23   THE INDEFINITENESS ARGUMENT.  THE ARGUMENT THEY'RE MAKING NOW

24   IS EXACTLY WHAT THEY MADE BEFORE.

25       THE PATENT EXPLAINS THE DIFFERENCE BETWEEN A LOCKED AND

1   UNLOCKED STATE.  IN THE LOCKED STATE, BECAUSE THE PURPOSE OF

2   THE PATENT IS TO KEEP INADVERTENT THINGS FROM HAPPENING, THERE

3   ARE ONLY A FEW KINDS OF USER INPUT WHICH WILL CAUSE THE PHONE

4   TO REACT IN THE LOCKED STATE.

5       IN THE UNLOCKED STATE, ALL YOUR USER INPUT GETS TAKEN INTO

6   ACCOUNT.  AND THERE'S ABSOLUTELY NOTHING NEW THAT'S HAPPENED,

7   NO TESTIMONY FROM A PERSON OF ORDINARY SKILL OR MORE THAN

8   ORDINARY SKILL IN THE ART AT THIS TRIAL THAT SUGGESTS THAT

9   ANYBODY WAS CONFUSED ABOUT WHAT "LOCKED" AND "UNLOCKED" MEANT.

10          **THE COURT:**  ALL RIGHT.

11      JUST FOR PLANNING PURPOSES, ARE YOU PLANNING TO MOVE FOR

12  ATTORNEYS' FEES AND COSTS IN THIS CASE AS WELL?

13          **MS. KREVANS:**  YOUR HONOR, WE HAVEN'T MADE A FINAL

14  DECISION ABOUT THAT.

15          **THE COURT:**  OKAY.

16          **MS. KREVANS:**  DO YOU WANT US TO -- IS THERE A

17  DEADLINE BY WHICH WE NEED TO LET YOU KNOW?  IS THAT -- WE'RE

18  HAPPY TO WORK ON WHATEVER SCHEDULE WORKS FOR THE COURT.

19          **THE COURT:**  WELL, I MEAN, JUST FOR PLANNING PURPOSES,

20  IT WOULD BE HELPFUL TO KNOW SOONER RATHER THAN LATER.  I MEAN,

21  WE CERTAINLY HAVE ENOUGH ON OUR PLATE AS IT IS.  BUT ON THE

22  OTHER HAND, EVERYTHING IS FRESH IN OUR MIND.  SO IF YOU FILE

23  THIS, YOU KNOW, SIX MONTHS FROM NOW OR EVEN A FEW MONTHS FROM

24  NOW, THINGS WILL BE A LITTLE BIT BLURRIER, SO -- ANYWAY, I

25  JUST WANTED TO GET A SENSE.  YOU HAVEN'T MADE A FINAL DECISION

1    ON EITHER ONE.

2            **MS. KREVANS:**  NO, BUT -- BUT WE WILL DO SO PROMPTLY

3    BECAUSE THE SCHEDULE REQUIRES US TO DO SO.

4            **THE COURT:**  OKAY.

5        ALL RIGHT.  LET'S GO TO THE NEXT -- WELL, WE'RE STILL ON

6    '721.  LET'S GO TO THE QUESTION OF NO WILLFULNESS AS TO THE

7    NEXUS, THE ADMIRE, AND THE STRATOSPHERE.

8        SO IS THIS MS. -- OH, THIS IS MS. MAROULIS.

9            **MS. MAROULIS:**  YES, YOUR HONOR.

10           **THE COURT:**  CAN YOU CONFIRM THAT THERE WASN'T A

11   NON-INFRINGEMENT DEFENSE AS TO THE ADMIRE AND THE STRATOSPHERE

12   AT TRIAL?

13           **MS. MAROULIS:**  YOUR HONOR, AS MR. NELSON DESCRIBED,

14   OUR EXPERT DID NOT DISCUSS THAT.  BUT THE JURY WAS GIVEN

15   EVIDENCE FROM WHICH IT COULD INCLUDE NON-INFRINGEMENT; AND

16   FURTHERMORE, IT WAS APPLE'S BURDEN ON THE INFRINGEMENT DEFENSE

17   SO --

18           **THE COURT:**  OH, I UNDERSTAND.  I JUST WANT TO GET A

19   SENSE OF WHAT WE SHOULD BE LOOKING AT.

20           **MS. MAROULIS:**  YES, YOUR HONOR.

21           **THE COURT:**  SO WHAT SHOULD WE BE LOOKING AT TO ANSWER

22   THIS QUESTION?

23           **MS. MAROULIS:**  SO THERE'S TWO ISSUES ON THE

24   WILLFULNESS OF '721.  THE FIRST ONE IS OBJECTIVE REASONABLE --

25           **THE COURT:**  OH, YEAH.  NO, I'M SORRY.  I DON'T WANT

```
 1        TO GET INTO THE GENERAL TOPIC.  HELP ME ANSWER THIS ONE.  I'M

 2        ASKING QUESTIONS THAT WOULD BE HELPFUL FOR US IN DRAFTING THE

 3        ORDER OR MAKING A DECISION.

 4            AND SO I WANT TO KNOW FOR YOUR NON-INFRINGEMENT DEFENSE AS

 5        TO THE ADMIRE AND THE STRATOSPHERE, WHERE SHOULD WE LOOK?

 6        WHAT -- CAN YOU -- WHEN YOU SAY MR. NELSON ADDRESSED THAT,

 7        WHAT -- WHAT ARE YOU REFERRING TO SO WE KNOW --

 8                  MS. MAROULIS:  YES.

 9                  THE COURT:  -- WHAT TO CITE.

10                  MS. MAROULIS:  OUR EXPERT DR. GREENBERG ADDRESSED THE

11        NEXUS, AND HE DID NOT ADDRESS SPECIFICALLY NON-INFRINGEMENT OF

12        EITHER STRATOSPHERE OR ADMIRE.  BUT IN THE -- THOSE PHONES

13        WERE IN THE EVIDENCE, AND THE JURY WAS ABLE TO DEDUCE

14        NON-INFRINGEMENT FROM THE EVIDENCE BEFORE THEM INCLUDING --

15                  THE COURT:  FROM THE PHONES THEMSELVES.

16                  MS. MAROULIS:  THE PHONES THEMSELVES AND DR. COCKBURN

17        PREVIEWED OUR NON-INFRINGEMENT DEFENSES.  IN THE END, YOUR

18        HONOR, WE HAD A (SIC) VERY LIMITED TIME, SO WE PUT ON SOME

19        DEFENSES BUT NOT OTHERS.

20                  THE COURT:  OKAY.  AND WHAT WAS THE -- YOU KNOW, I

21        UNDERSTAND THAT FOR, YOU KNOW, SKYROCKET, S II, AND EPIC 4G

22        TOUCH, WE'RE TALKING ABOUT DR. COCKBURN PREVIEWING THAT

23        DR. GREENBERG WOULD SAY THAT "SLIDE TO ANSWER" IS NOT "SLIDE

24        TO UNLOCK."  WHAT -- WHAT IS IT THAT DR. COCKBURN SAID ABOUT

25        THE ADMIRE AND THE STRATOSPHERE?  WHAT IS IT THAT HE SAID?
```

1    WHAT WAS THE DEFENSE?

2              **MS. MAROULIS:**  YOUR HONOR, FOR THAT ONE, I NEED TO

3    CONSULT WITH MR. NELSON.  I THOUGHT IT WAS GOING TO BE COVERED

4    BY HIM DURING THE INFRINGEMENT PART OF THE --

5              **THE COURT:**  OKAY.  LET ME ASK, MR. NELSON, WHAT WAS

6    THE DEFENSE AS FAR AS NON-INFRINGEMENT OF THE ADMIRE AND THE

7    STRATOSPHERE THAT DR. COCKBURN PREVIEWED BUT WHICH

8    DR. GREENBERG HIMSELF ULTIMATELY DID NOT TESTIFY TO?

9              **MR. NELSON:**  THAT'S -- THAT'S WHAT WE JUST WERE GOING

10   THROUGH, YOUR HONOR.  I DON'T HAVE THE RECORD CITE.  BUT

11   THAT --

12             **THE COURT:**  WELL, WHAT WAS THE DEFENSE?  I DON'T CARE

13   ABOUT THE PIN CITE.  WHAT WAS THE DEFENSE THAT DR. COCKBURN

14   PREVIEWED FOR THE ADMIRE AND THE STRATOSPHERE FOR

15   NON-INFRINGEMENT?  WHAT WAS THE DEFENSE?  'CAUSE THAT IS NOT A

16   "SLIDE TO ANSWER" ISSUE.

17             **MR. NELSON:**  YEAH, SO YOU'RE TALKING -- THE

18   STRATOSPHERE IS THE PUZZLE PIECES?  THAT'S THE ONE THAT

19   YOU'RE -- I BELIEVE?  THAT WAS WHAT WAS ACCUSED?

20        I'M SORRY, YOUR HONOR.  I DON'T -- REMEMBER THEM BY

21   FUNCTIONALITY MORE THAN --

22             **THE COURT:**  OKAY.  WELL, YOU KNOW, I'M LOOKING AT

23   SAMSUNG'S JMOL MOTION, SAYS, QUOTE, SAMSUNG PRESENTED A STRONG

24   NON-INFRINGEMENT DEFENSE BASED ON THE LANGUAGE REQUIRING AN

25   UNLOCKED IMAGE, END QUOTE.  AND THAT'S ALL I HAVE.

```
 1        AND SO FOR DRAFTING THIS ORDER, I WANT TO KNOW WHAT WAS
 2   THAT STRONG NON-INFRINGEMENT DEFENSE FOR THE ADMIRE AND THE
 3   STRATOSPHERE JUST TO HELP US TO MAKE SURE WE'RE CITING THE
 4   RIGHT EVIDENCE IN OUR ORDER.
 5        MR. NELSON:  THOSE WERE -- AS TO THE DEVICES, YOUR
 6   HONOR, THE --
 7        THE COURT:  THE S II'S THAT WE JUST TALKED ABOUT, THE
 8   UNLOCK?
 9        MR. NELSON:  THAT'S PART OF IT --
10        THE COURT:  ANSWERING --
11        MR. NELSON:  -- ALSO BUT THE NEXUS --
12        THE COURT:  OKAY.
13        MR. NELSON:  YOU REMEMBER THE ONES -- THAT'S WHERE
14   THE -- YOU HAD THE SPOTLIGHT.  YOUR HONOR WAS TALKING ABOUT IT
15   EARLIER WHERE --
16        THE COURT:  OKAY.
17        MR. NELSON:  -- I BELIEVE MS. KREVANS WAS --
18        THE COURT:  WHAT IS THERE, THEN, THAT WE SHOULD CITE
19   TO FOR ADMIRE AND STRATOSPHERE?  I'M JUST ASKING YOU TO HELP
20   US WITH THE ORDER ON WHAT ARE WE SUPPOSED TO CITE TO FOR THAT
21   NON-INFRINGEMENT CASE?
22        MR. NELSON:  YEAH, THAT -- THERE WAS NO DEFENSE
23   PREVIEWED WITH RESPECT TO THE --
24        THE COURT:  OKAY.
25        MR. NELSON:  THAT I BELIEVE -- THAT WAS THE PUZZLE
```

 1   PIECE, I BELIEVE, IS THE ONE THAT YOU'RE TALKING ABOUT, AND

 2   THAT -- SO THAT WOULD BE THE PHONE ITSELF, SO --

 3           **THE COURT:**  OKAY.

 4           **MR. NELSON:**  -- I DON'T -- SO THAT WASN'T A "SLIDE TO

 5   ANSWER," AND IT WAS --

 6           **THE COURT:**  IT WAS NOT A "SLIDE TO ANSWER."  I KNOW

 7   THAT.

 8           **MR. NELSON:**  AND IT WAS NOT THE ONES THAT WE

 9   PRESENTED WHERE THE UNLOCK IMAGE DISAPPEARED, YOUR HONOR.

10           **THE COURT:**  OKAY.

11       OKAY.  SO THE LANGUAGE IN YOUR JMOL MOTION WAS REFERRING

12   TO THE NEXUS, 'CAUSE DEFINITELY DR. GREENBERG TESTIFIED ABOUT

13   THE NEXUS.

14           **MR. NELSON:**  CORRECT.

15           **MS. MAROULIS:**  CORRECT, YOUR HONOR.

16           **THE COURT:**  OKAY.  ALL RIGHT.

17       SO WHAT CASE LAW SUPPORTS A PATENT DEFENDANT'S RELIANCE ON

18   PRIOR ART THAT WAS CITED AND CONSIDERED BY THE PTO IN ISSUING

19   THE PATENT AS A DEFENSE TO OBJECTIVE WILLFULNESS?

20       IS THERE --

21           **MS. MAROULIS:**  YOUR HONOR, THE COMBINATION WAS NOT

22   BEFORE THE PATENT OFFICE, SO THE TWO SEPARATE PIECES OF PRIOR

23   ART WERE BEFORE IT, BUT THE COMBINATION WAS NOT.  SO IT'S OUR

24   CONTENTION THAT THE ACTUAL PRIOR ART COMBINATION WAS NOT

25   BEFORE THE PATENT OFFICE.

1    THE CASES REFER GENERALLY TO, FOR EXAMPLE, DEPUY SPINE

2    CASE, THEY REFER GENERALLY ON HAVING A GOOD OBJECTIVE

3    INVALIDITY DEFENSE.  AND IN THIS INSTANCE, IT IS OUR POSITION

4    THAT WHILE BOTH PLAISANT AND NEONODE WERE BEFORE THE PATENT

5    OFFICE -- THE TWO DIFFERENT PIECES OF PRIOR ART, PLAISANT AND

6    NEONODE, BUT THE COMBINATION WAS NOT BEFORE THE PATENT OFFICE.

7    AND, MOREOVER, THE VIDEO THAT WAS PRESENTED AT TRIAL WAS ALSO

8    NOT BEFORE THE PATENT OFFICE.

9    AND BECAUSE OF THAT, THE ACTUAL COMBINATION AND INVALIDITY

10   DEFENSE THAT WAS PRESENTED AT THIS TRIAL WAS NOT IN THE FRONT

11   TO THE PTO.

12   **THE COURT:**  OKAY.

13   AND PLAISANT IS P-L-A-I-S-A-N-T, AND NEONODE IS

14   N-E-O-N-O-D-E.

15   ALL RIGHT.  LET'S GO TO '647, PLEASE.

16   WHO IS -- IS THAT YOU, MR. NELSON?  OKAY.  ALL RIGHT.

17   I HAVE TWO QUESTIONS FOR YOU, AND I HAVE TWO QUESTIONS FOR

18   APPLE.  AND THEN I HAVE SIX MORE QUESTIONS, AND WE'LL BE DONE.

19   SO MY FIRST QUESTION FOR YOU IS ON LINKING ACTIONS.

20   **MR. NELSON:**  YES.

21   **THE COURT:**  AND WHAT IS YOUR BASIS FOR ASSERTING THAT

22   THE SPECIFIED CONNECTION BETWEEN THE DETECTED STRUCTURE AND

23   THE AT LEAST ONE COMPUTER SUBROUTINE MUST BE CREATED BEFORE

24   THE STRUCTURE IS DETECTED?  'CAUSE IT DOESN'T SEEM LIKE THE

25   CONSTRUCTION HAS A TIMING REQUIREMENT, BUT YOU ARE IMPOSING

 1   ONE.  SO CAN YOU ANSWER THAT, PLEASE?

 2          **MR. NELSON:**  CAN YOU ASK ME THAT QUESTION AGAIN

 3   'CAUSE I THINK I MISSED PART OF THAT.

 4          **THE COURT:**  SURE.

 5          **MR. NELSON:**  I DON'T WANT TO ANSWER A QUESTION YOU

 6   DIDN'T ASK ME.

 7          **THE COURT:**  OH, YEAH.  THAT'S FINE.  OKAY.  SO WHAT

 8   IS YOUR BASIS FOR ASSERTING THAT THE SPECIFIED CONNECTION

 9   THAT'S BETWEEN THE DETECTED STRUCTURE AND THE AT LEAST ONE

10   COMPUTER SUBROUTINE HAS TO BE CREATED BEFORE THE STRUCTURE IS

11   DETECTED?

12          **MR. NELSON:**  I THINK THAT WAS THE -- THAT WAS THE

13   USER INTERFACE LIMITATION WE WERE TALKING ABOUT, SO THE

14   LINKING -- THE ARGUMENT WE'RE MAKING WITH RESPECT TO THE

15   SPECIFIED CONNECTION IS A LITTLE BIT DIFFERENT, YOUR HONOR.

16          **THE COURT:**  OKAY.

17          **MR. NELSON:**  AND MAYBE I COULD EXPLAIN THAT A BIT.

18      SO WHAT WE HAVE HERE IS THE ANALYZER SERVER AND THEN UNDER

19   THE CONSTRUCTIONS, WE COVER THE FIRST PART THAT'S THIS

20   SEPARATE ROUTINE.  BUT THEN THE SECOND ONE IS THE ANALYZER

21   SERVER FOR LINKING ACTIONS TO THE DETECTED STRUCTURES.  SO

22   THERE, WHAT THE ANALYZER SERVER DOES, IT'S LINKING TO THE

23   DETECTED STRUCTURE.  SO THE SPECIFIED CONNECTION WOULD BE MADE

24   TO THE STRUCTURES THAT ARE ALREADY DETECTED JUST BY VIRTUE OF

25   THE LANGUAGE THAT'S IN THE -- THE CLAIM BECAUSE THE DETECTED

1    STRUCTURE'S IN THE PAST TENSE.  SO MAYBE THAT'S YOUR HONOR'S

2    INITIAL QUESTION.

3        BUT THERE'S A (SIC) ADDITIONAL PROBLEM WITH RESPECT TO

4    THIS THAT WE LAID OUT IN THE MOTION, WHICH IS APPLE HAD

5    PROVIDED NO EVIDENCE WHATSOEVER THAT A SPECIFIED CONNECTION IS

6    MADE.  AND I HAVE SOMETHING THAT I CAN HAND UP IF -- IF WE

7    NEED IT, YOUR HONOR.

8              **THE COURT:**  SURE.

9          **MR. NELSON:**  IT'S ONE OF APPLE'S DEMONSTRATIVE.

10             **THE COURT:**  OKAY.  DO YOU HAVE A COPY FOR APPLE?

11         **MR. NELSON:**  YES, I DO.  I DO.

12             **THE COURT:**  OKAY.  THANK YOU.

13             **THE CLERK:**  SHOULD HE HAND ONE TO THE --

14             **THE COURT:**  YES, PLEASE.

15             **THE CLERK:**  ONE TO THE CHAMBERS STAFF.

16       THAT SHOULD GO TO HENRY, PLEASE.

17         **MR. NELSON:**  SO THE -- THE ISSUE HERE, AS I

18   UNDERSTOOD DR. MOWRY'S TESTIMONY, IS THAT WHAT HE SAID WAS THE

19   SPECIFIED CONNECTION THAT WAS CREATED WHEN THE STRUCTURE WAS

20   DETECTED WAS THIS INTENT OBJECT THAT'S PASSED TO START

21   ACTIVITY.  AND THAT'S WHY I SHOWED YOU -- THIS IS JX3550.  I

22   THINK THE PDX88- -- .22 WAS THE DEMONSTRATIVE NUMBER ON THIS.

23   SO THAT'S WHAT THIS WAS SHOWING, YOUR HONOR.

24       WELL, THERE'S TWO PROBLEMS WITH THAT, OKAY?  FIRST IS

25   THE -- THE START ACTIVITY IS NOT THE FUNCTION, RIGHT?  SO FOR

 1    EXAMPLE, IF YOU DETECT A -- A EMAIL ADDRESS, YOU KNOW WHAT YOU

 2    WANT TO DO IS SEND AN EMAIL OR THE DIALER FOR A PHONE NUMBER

 3    AND SUCH.  SO ALL START ACTIVITY DOES -- AND THIS WAS

 4    EXPLAINED AND UNDISPUTED -- IS GOES OUT TO START THE PROCESS

 5    OF FINDING WHATEVER IT IS IS GOING TO ULTIMATELY -- IF YOU

 6    HAVE SOMETHING AVAILABLE ON THE DEVICE ON THE PHONE THAT COULD

 7    SEND AN EMAIL.  YOU MAY HAVE MULTIPLE EMAILS, SO YOU HAVE TO

 8    CHOOSE.  YOU MAY HAVE MULTIPLE DIALERS, SO YOU HAVE TO CHOOSE.

 9        SO THERE'S NO SPECIFIED CONNECTION THAT'S CREATED THERE.

10    AND IT -- WE HAVE A BIGGER PROBLEM IF WE LOOK DOWN, YOU KNOW,

11    READING THE CLAIM AS A WHOLE THAT'S UNDERSCORED BY THAT

12    INFRINGEMENT THEORY -- IF WE GO TO THIS ACTION PROCESSOR --

13            **THE COURT:**  CAN I ASK YOU A QUESTION?  SO WHAT YOU'RE

14    RELYING ON IS THE PAST TENSE OF THE ADJECTIVE (SIC)

15    "SPECIFIED" AND "LINKED"; IS THAT --

16            **MR. NELSON:**  IN THE --

17            **THE COURT:**  THAT'S WHAT YOU'RE RELYING ON?

18            **MR. NELSON:**  WITH RESPECT TO YOUR FIRST QUESTION,

19    YES.

20            **THE COURT:**  YEAH, THAT'S THE ANSWER.

21            **MR. NELSON:**  RIGHT.

22            **THE COURT:**  OKAY.  ALL RIGHT.

23        LET ME ASK YOU, IS DR. JEFFAY'S POSITION THAT THE AT LEAST

24    ONE SUBROUTINE CAN'T BE START ACTIVITY, THAT IT'S GOT TO BE AN

25    APPLICATION THAT PERFORMS AN ACTION?

1          **MR. NELSON:**  RIGHT.

2          **THE COURT:**  I JUST WANT TO CONFIRM THAT.  THAT'S --

3     OKAY.

4          **MR. NELSON:**  RIGHT, IT -- BECAUSE IT WOULD BE THE

5     SAME EACH AND EVERY TIME, ACCORDING TO THAT THEORY.  IT WOULD

6     BE THE SAME ONE THING.  AND THAT'S WHAT I WAS JUST GETTING TO

7     WITH THE ACTION PROCESSOR.

8          **THE COURT:**  OKAY.

9          **MR. NELSON:**  'CAUSE IF YOU LOOK AT THE STRUCTURE OF

10    THE CLAIM, YOUR HONOR'S CONSTRUCTION OF "ACTION PROCESSOR"

11    MEANS "PROGRAM ROUTINES THAT PERFORM THE SELECTED ACTION ON

12    THE DETECTED STRUCTURE."  THE "SELECTED ACTION" MEANING SEND

13    EMAIL, DIAL THE PHONE, THOSE TYPES OF THINGS, RIGHT?

14       SO WHAT DO WE HAVE HERE IN THIS LIMITATION?  IT SAYS "AN

15    ACTION PROCESSOR FOR PERFORMING THE SELECTED LINKED ACTION TO

16    THE SELECTED STRUCTURE."  AND WHAT DR. MOWRY FOUND --

17         **THE COURT:**  CAN I JUST FOR THE RECORD SAY THAT THIS

18    IS PDX88.22.

19         **MR. NELSON:**  YES.

20         **THE COURT:**  AND IT HAS ON IT JX35 AND 50, AND IT'S

21    JUST ENTITLED "ANDROID INTENT OBJECTS."  JUST FOR THE RECORD.

22       OKAY.  GO AHEAD.

23         **MR. NELSON:**  THANK YOU.  I APPRECIATE IT, YOUR HONOR.

24       SO -- SO WHAT DR. MOWRY POINTED TO IS THAT THE ACTION

25    PROCESSOR WAS THE START ACTIVITY, RIGHT?  SO WE CAN SEE RIGHT

1    HERE -- AND THAT WOULD MEAN THAT THIS INTENT THAT'S CREATED

2    WOULD BE THE LINKED ACTION.

3        BUT START ACTIVITY DOESN'T PERFORM THE SELECTED ACTION ON

4    THE SELECTED STRUCTURE.  IT DOESN'T DO ANYTHING ON THE EMAIL.

5    IT DOESN'T DO ANYTHING ON THE PHONE NUMBER.  IT DOESN'T DO

6    ANYTHING ON THE ADDRESS, WHATEVER'S BEEN SELECTED.  MERELY

7    WHAT YOU'RE DOING THERE IS STARTING THE PROCESS OF FINDING

8    WHATEVER MAY ULTIMATELY BE THE USER SELECTION TO PERFORM THE

9    PARTICULAR ACTION.

10        BUT THE CONSTRUCTION THAT YOUR HONOR GAVE OF THE LINKING

11    ACTIONS TO THE DETECTED STRUCTURE IS CREATING A SPECIFIED

12    CONNECTION, RIGHT?  AND THEN THE ACTION PROCESSOR CONSTRUCTION

13    IS THE PROGRAM ROUTINE THAT PERFORMED THE SELECTED ACTION ON

14    THE DETECTED STRUCTURE.

15        SO WE KNOW THAT AN ACTION PROCESSOR FOR PERFORMING THE

16    SELECTED ACTION LINKED TO THE SELECTED STRUCTURE, THAT THE

17    SPECIFIED CONNECTION HAS TO BE TO THE PROGRAM ROUTINE FOR

18    PERFORMING THE PARTICULAR ACTION.

19        AND UNDER APPLE'S INFRINGEMENT THEORY, THAT IS ABSOLUTELY

20    NOT THE CASE.  WHAT THEY'VE POINTED TO FOR THIS -- THE ACTION

21    PROCESSOR -- IN OTHER WORDS, THE PROGRAM ROUTINE TO WHICH THEY

22    SAY THE SPECIFIED CONNECTION IS CREATED, YOU KNOW, WHEN THE

23    INTENT OBJECT IS CREATED -- IS "START ACTIVITY."  BUT "START

24    ACTIVITY" INDISPUTABLY DOES NOT PERFORM THE SELECTED ACTION;

25    THEREFORE, THE WHOLE INFRINGEMENT THEORY IN THE CLAIM

1    COMPLETELY BREAKS DOWN.

2            **THE COURT:**  ALL RIGHT.  LET ME GO AHEAD, AND I HAVE

3    TWO QUESTIONS FOR APPLE.

4        WHO'S -- OKAY.  MS. KREVANS?

5            **MS. KREVANS:**  YES, YOUR HONOR.

6            **THE COURT:**  ALL RIGHT.  SO IN DR. MOWRY'S TESTIMONY,

7    HOW DOES HE EXPLAIN THAT THE SHARED LIBRARY RECEIVES DATA FROM

8    THE CLIENT CODE?

9            **MS. KREVANS:**  I DON'T THINK THERE WAS ANY DISPUTE

10   ACTUALLY, YOUR HONOR, THAT THE SHARED LIBRARIES RECEIVE DATA

11   FROM THE CLIENT.

12           **THE COURT:**  IS THAT CORRECT?

13           **MS. KREVANS:**  I THINK THE DISPUTE WAS WHETHER THE

14   SHARED LIBRARIES WERE OR WERE NOT SEPARATE --

15           **THE COURT:**  YES.  NO, I AGREE WITH THAT, BUT LET ME

16   ASK THE FIRST POINT.

17       MR. NELSON, DO YOU AGREE WITH THAT?  IS -- DO YOU AGREE

18   THAT THE CLIENT -- THAT THE SHARED LIBRARY RECEIVES DATA FROM

19   THE CLIENT?

20           **MR. NELSON:**  NO, YOUR HONOR, IT DOESN'T.  IT'S PART

21   OF THE CLIENT -- AND, IN FACT, AND DOESN'T RECEIVE ANY DATA

22   FROM THE CLIENT.

23           **MS. KREVANS:**  WELL --

24           **MR. NELSON:**  THAT WAS -- THAT WAS STRONGLY DISPUTED

25   DURING THE CASE.

1        **MS. KREVANS:**  BUT THE ONLY DISPUTE WAS WHETHER IT

2   SEPARATE.  THERE'S NO DISPUTE THAT -- WHAT DATA IS USED AND

3   HOW IT'S USED.  BUT SAMSUNG'S POSITION IS BECAUSE THE SHARED

4   LIBRARY, THEY SAY, IS NOT SEPARATE FROM THE CLIENT, IT'S PART

5   OF THE CLIENT AND SO IT'S NOT, QUOTE, RECEIVING IT.  BUT, IN

6   FACT, THE DATA IS PROVIDED TO THE LIBRARY CODE, AND IT USES

7   THAT DATA.

8        **THE COURT:**  AND WHEN DOES THAT HAPPEN?

9        **MS. KREVANS:**  WELL, IT HAPPENS AS PART OF A SERIES OF

10  EVENTS.  AND THIS TAKES ME BACK ACTUALLY TO SOMETHING

11  MR. NELSON WAS JUST ADDRESSING.  THE FIRST STEP IN THIS

12  PROCESS WHEN THE USER HAS -- THE STRUCTURE'S BEEN DETECTED AND

13  THE USER SELECTS IT, IS THESE INTENT OBJECTS ARE CREATED.  AND

14  THEN THERE IS THIS PROGRAM ROUTINE CALLED "START ACTIVITY."

15  AND IT IS SITTING THERE WAITING TO BE CALLED.  IT IS -- AND

16  THIS IS COMMON TO MANY KINDS OF ANDROID CODE.  IT'S A PIECE OF

17  CODE THAT CAN DO MANY DIFFERENT THINGS.

18      WHAT IT ACTUALLY DOES DEPENDS ON THE CONTENT OF THE INTENT

19  OBJECT THAT'S PASSED TO IT.  AND SO IT'S NOT IN -- ALTHOUGH IT

20  STARTS AS THE SAME SHELLCODE EVERY TIME, IT'S NOT, IN FACT,

21  THE SAME CODE IN OPERATION BECAUSE IF YOU PASS -- AND THIS IS

22  WHAT'S ILLUSTRATED ON PDX88.22 -- IF YOU PASS AN INTENT OBJECT

23  THAT'S BEEN FILLED IN BECAUSE THE USER HAS SAID THEY WANT TO

24  PICK THIS PHONE CALL ACTION WHEN THE PHONE NUMBER STRUCTURE IS

25  DETECTED IF THE INTENT OBJECT IS FILLED IN WITH YOU WANT A

1    CALL AND THERE'S A NUMBER AND THE ACTION IS GOING TO BE

2    CALLED, WHEN THAT'S PASSED TO "START ACTIVITY," NOW "START

3    ACTIVITY" IS SPECIFIC TO LAUNCHING A DIALER AND MAKING THE

4    PHONE CALL HAPPEN.

5        IF THE THING THAT THE USER HAS PICKED IS "ADD TO

6    CONTACTS," IT'S A DIFFERENT INTENT OBJECT IN TERMS OF -- SAME

7    STRUCTURE OF INTENT OBJECT, DIFFERENT CONTENT.  WHEN IT GETS

8    PASSED TO THAT SAME SHELL -- ACTIVITY CODE, NOW THE START

9    ACTIVITY CODE IS GOING TO DO SOMETHING DIFFERENT, AND WHAT

10   IT'S GOING TO DO IS IT'S GOING TO LAUNCH CONTACTS AND PASS IT

11   THAT -- THAT DETECTED PHONE NUMBER FOR IT TO BE FILLED INTO

12   THE CONTACTS.

13       SO IT'S NOT TRUE THAT "START ACTIVITY" DOESN'T ACTUALLY

14   PERFORM THE ACTION THAT THE USER SELECTED.  IT DOES.  IT'S NOT

15   TRUE THAT "START ACTIVITY" CAN'T BE THE RIGHT ACTION PROCESSOR

16   CODE BECAUSE IT ALWAYS DOES THE SAME THING.  IT DOES DIFFERENT

17   THINGS DEPENDING ON WHAT DATA'S PASSED TO IT.  BUT THOSE ARE

18   THE FIRST TWO STEPS ALONG THE WAY TO EACH OF THESE THINGS.

19       "THE CLIENT" IS THE APPLICATION THAT YOU'RE USING.  SO,

20   FOR EXAMPLE, IF YOU WERE IN -- AND THERE WAS A SERIES OF OTHER

21   DEMONSTRATIVES THAT SHOWED THIS -- IF YOU ARE IN THE BROWSER,

22   THE BROWSER'S THE APPLICATION THAT DETECTED, FOR EXAMPLE, THE

23   PHONE NUMBER AND DISPLAYED IT TO THE USER AND ALLOWED THE USER

24   THROUGH THE BROWSER-USER INTERFACE TO SELECTED AN ACTION

25   ASSOCIATED WITH THE PHONE NUMBER WHICH THEN CAUSES THE INTENT

1    OBJECT TO BE CREATED FOR THAT ACTION AND TO BE PASSED TO THE

2    "START ACTIVITY" TO MAKE THE START ACTIVITY CODE BE CUSTOMIZED

3    NOW FOR THE ACTION THE USER WANTS.

4        SO THE BROWSER, WHICH IS THE CLIENT, KICKS THIS OFF AND

5    PROVIDES THE INFORMATION, THEN, TO THE SHARED LIBRARY WHICH IS

6    THE SERVER.  THE INFORMATION IS, FOR EXAMPLE, IN THE CASE OF

7    ONE -- OF THE USER WHO WANTS TO MAKE A CALL, IT'S THE -- A

8    PHONE NUMBER PLUS THE INFORMATION THAT TELLS THE CODE THIS

9    PERSON WANTS YOU TO LAUNCH THE DIALOGUE.

10       AND IT INDICATES AN EMAIL ADDRESS.  IT WOULD SAY, HERE'S

11   THE EMAIL ADDRESS, LAUNCH EMAIL.  IT'S NOT THE CASE THAT

12   "START ACTIVITY" HAS TO DO EVERY STEP OF THE -- OF THE ACTION.

13   THE CODE DOESN'T -- THE CLAIM DOESN'T SAY SO.

14       AND, IN FACT, IT'S PLAINLY CLEAR FROM THE PATENT THAT

15   IT -- IT -- THERE ARE MANY CIRCUMSTANCES WHERE THAT COULD

16   NEVER HAPPEN.  SO, FOR EXAMPLE, LET'S SAY THE STRUCTURE IS AN

17   EMAIL ADDRESS.  AND SO WHAT'S GOING IS TO HAPPEN WHEN THE USER

18   SAYS, AH-HA, THE DISPLAY IS SHOWING AN EMAIL ADDRESS.  NOW I

19   TOUCH IT, I HAVE A POP-UP.  THE POP-UP SAYS "ADD TO CONTACTS"

20   OR "SEND AN EMAIL," THE USER PICKS "SEND AN EMAIL."

21       THE -- THE -- THE PHONE SOFTWARE ISN'T JUST GOING TO SEND

22   AN EMAIL, OF COURSE, BECAUSE WHAT ACTUALLY NEEDS TO HAPPEN IS

23   THAT THIS EMAIL APP. NEEDS TO BE LAUNCHED, WHICH "START

24   ACTIVITY" CAUSES TO HAPPEN.  AND THEN IT PASSES THAT EMAIL

25   ADDRESS WHICH IS FILLED IN AND NOW YOU HAVE A BLANK EMAIL

 1     SITTING IN FRONT OF YOU AS THE USER ALREADY ADDRESSED TO THE

 2     PERSON WHOSE EMAIL ADDRESS YOU DETECTED.  YOU STILL TO HAVE

 3     WRITE THE EMAIL; THEN YOU'RE GOING TO HAVE TO HIT SOME MORE

 4     BUTTONS ON YOUR SCREEN TO HAVE THE EMAIL GO.  BUT IT'S STILL

 5     PLAINLY FALLING INTO WHAT -- THE SCOPE OF WHAT THE CLAIM IS

 6     ABOUT.

 7              THE COURT:  SO THAT DATA BEING THE PHONE NUMBER?

 8              MS. KREVANS:  IN THE CASE OF --

 9              THE COURT:  IN THAT EXAMPLE.

10              MS. KREVANS:  IN THAT EXAMPLE, IT WOULD BE EMAIL

11     ADDRESS.  THEN THE PREVIOUS EXAMPLE WOULD BE A PHONE NUMBER.

12              THE COURT:  PHONE NUMBER.

13        THAT IS BEING TRANSMITTED FROM THE CLIENT TO THE SHARED

14     LIBRARY.

15              MS. KREVANS:  EXACTLY.

16              THE COURT:  LET ME GO TO THE '414.

17              MS. KREVANS:  I'M SORRY.  YOUR HONOR, CAN I JUST VERY

18     BRIEFLY ADDRESS WHAT MR. NELSON SAID --

19              THE COURT:  EXTREMELY BRIEFLY.

20              MS. KREVANS:  OKAY.  WITH RESPECT TO SAYING THAT THE

21     SPECIFIED CONNECTION HAS TO BE CREATED BEFORE THE STRUCTURE IS

22     CONNECTED --

23              THE COURT:  UM-HMM.

24              MS. KREVANS:  -- IS DETECTED -- SORRY -- THE -- THE

25     CLAIM LANGUAGE AND THE CONSTRUCTION BOTH MAKE IT REALLY CLEAR

1    THAT THAT'S WRONG.

2         THE CLAIM LANGUAGE SAYS YOUR PROGRAMMING ROUTINES

3    INCLUDING AN ANALYZER SERVER FOR DETECTING STRUCTURES IN THE

4    DATA AND FOR LINKING ACTIONS TO THE DETECTED STRUCTURES.  AND

5    THEN YOU HAVE THE USER INTERFACE ENABLING THE SELECTION OF

6    THOSE THINGS AND AN ACTION PROCESSOR PERFORMING THE SELECTED

7    ACTION.

8         BUT YOU STARTED IN YOUR FIRST STEP FOR SOMETHING FOR

9    DETECTING STRUCTURES AND FOR LINKING ACTIONS.  WHEN THIS CLAIM

10   STARTS, THOSE THINGS HAVEN'T HAPPENED YET.  SO RIGHT IN THE

11   CLAIM, YOU CAN SEE THIS IS NOT THE PAST TENSE.  AND THEN WHEN

12   YOU LOOK AT THE MOTOROLA CONSTRUCTIONS, WHICH SAMSUNG FOUGHT

13   HARD TO GET INTO THIS CASE, THEY TALKED ABOUT CREATING THE

14   SPECIFIED CONNECTION.

15        SO IT'S CLEARLY NOT SOMETHING THAT ALREADY EXISTED.

16             **THE COURT:**  ALL RIGHT.  LET ME GO TO THE '414

17   INVALIDITY MOTION.  LET ME ASK SAMSUNG -- IS THIS MR. NELSON?

18             **MR. NELSON:**  YEAH.

19             **THE COURT:**  OKAY.  I HAVE TWO QUESTIONS FOR YOU.  AND

20   THEN, MS. KREVANS, IS THIS YOU AS WELL?

21             **MS. KREVANS:**  OH, THIS IS ME.

22             **THE COURT:**  OKAY.  SO I HAVE TWO FOR EACH OF YOU.

23   AND LET ME START OFF -- AND HOPEFULLY WE CAN DO THIS QUICKLY.

24        AS FAR AS DR. CHASE TESTIFYING THAT THE IMAP MAIL

25   COMPONENT PROVIDES A THREAD, SEEMS AS IF THERE'S ONLY ONE

```
 1    STATEMENT TO THAT EFFECT.  AND IT'S ON PAGE 2254 OF THE TRIAL

 2    TRANSCRIPT LINES, 10 THROUGH 15.

 3        IS THAT THE ONLY TESTIMONY OR EVIDENCE THAT WAS PRESENTED

 4    TO THE JURY THAT THE IMAP MAIL COMPONENT PROVIDES A THREAD?

 5           MR. NELSON:  THE -- WELL, THE -- THE TESTIMONY -- I

 6    BELIEVE THAT'S CORRECT FROM THE TESTIMONY --

 7           THE COURT:  OKAY.

 8           MR. NELSON:  -- DR. CHASE.  AND I DON'T THINK THAT

 9    THERE WAS ANY TESTIMONY, AS I RECALL -- AND I'LL HAVE MY

10    COLLEAGUES CONFIRM THAT, AND I CAN -- I'LL --

11           THE COURT:  YOU MEAN, ANY OTHER TESTIMONY FROM ANYONE

12    ELSE OR ANY MORE FROM DR. CHASE?

13           MR. NELSON:  NO, I'M FAIRLY CERTAIN THAT THAT WAS THE

14    TESTIMONY FROM DR. CHASE THAT WE POINTED TO WHEN WE POINTED TO

15    THAT IN THE MOTION.  THERE WAS, OF COURSE, THE EXHIBITS THAT

16    WE CITED IN THE -- IN THE MOTION THAT -- DESCRIBING THE IMAP

17    FUNCTIONALITY --

18           THE COURT:  SO LET ME ASK YOU THAT.  OTHER THAN YOUR

19    DEMONSTRATIVE, IS THERE ANY EVIDENCE THAT DESCRIBES THE IMAP

20    MAIL COMPONENT?  IT DOESN'T APPEAR TO BE IN DX317, WHICH IS

21    THE EXCHANGE -- ACTIVE SYNC AND EXCHANGE 2003 DOCUMENT, THAT

22    EVEN THAT DOCUMENT DOES NOT MENTION IMAP MAIL COMPONENT.  SO

23    WHAT -- WHAT EVIDENCE OTHER THAN THE TWO DEMONSTRATIVES --

24    ACTUALLY REALLY JUST ONE DEMONSTRATIVE, SDX 3650 -- WHAT EVEN

25    MENTIONS IMAP MAIL COMPONENT?
```

```
 1              MR. NELSON:  THE -- WELL, IF WE CAN -- WE HAD THE

 2   WINDOWS MOBILE 5 STATEMENT AND WE HAVE THE TESTIMONY FROM

 3   DR. CHASE THAT THE IMAP MAIL COMPONENT WAS PART OF WINDOWS

 4   MOBILE 5 THAT I THINK WAS AT --

 5              THE COURT:  OKAY.

 6              MR. NELSON:  I DON'T --

 7              THE COURT:  SO TELL ME WHAT SPECIFIC -- CAN YOU --

 8   I'M TRYING TO GET YOU ALL TO HELP ME WITH THE ORDER HERE.

 9   POINT ME TO EITHER AN EXHIBIT OR TO A TRANSCRIPT CITE THAT

10   WOULD LET US PINPOINT ANY OTHER EVIDENCE OF THAT IMAP MAIL

11   COMPONENT, OTHER THAN THE DEMONSTRATIVE SDX3650.

12              MR. NELSON:  I -- YEAH, THE EXHIBIT NUMBERS THEY WILL

13   GET THE -- I BELIEVE THE OTHER -- I THINK THIS IS A DIFFERENT

14   CITATION THAN YOUR HONOR JUST -- IS IT 2194, 8 TO 16 OF THE

15   TRANSCRIPT?  THAT'S FROM DR. CHASE'S TESTIMONY?

16              THE COURT:  WELL, THERE'S ONE --

17                   (SIMULTANEOUS COLLOQUY.)

18              THE COURT:  -- WHERE HE JUST MENTIONS "IMAP MAIL

19   COMPONENT," BUT THEN THERE'S A LATER POINT WHERE HE SAYS IT

20   PROVIDES A THREAD.

21              MR. NELSON:  CORRECT.

22              THE COURT:  IT SEEMS LIKE HE MENTIONS IT, "IMAP MAIL

23   COMPONENT," TWICE.  THE FIRST TIME HE DOESN'T SAY IT PROVIDES

24   A THREAD.

25              MR. NELSON:  SO THIS, I BELIEVE, IS THE SECOND ONE
```

1    'CAUSE IT'S IN DISCUSSION -- IT WAS IN CONNECTION WITH THE

2    DISCUSSION OF THE DEMONSTRATIVE THAT YOUR HONOR JUST CITED,

3    WHICH WAS SDX3650, I BELIEVE.  SO I THINK THAT'S THE SECOND

4    CITATION 2194, 8 TO 16.

5         **THE COURT:**  OKAY.  I MEAN, I AGREE WITH YOU THERE ARE

6    TWO REFERENCES TO "IMAP MAIL COMPONENT" IN DR. CHASE'S TRIAL

7    TESTIMONY.  BUT OTHER THAN THAT, IS THERE ANYTHING ELSE OTHER

8    THAN DEMONSTRATIVE SDX3650?

9         **MR. NELSON:**  NO, OTHER THAN THE -- AS I SAID, THE

10   WINDOWS MOBILE 5 DOCUMENTATION AND DR. CHASE'S TESTIMONY THAT

11   SAID THE IMAP WAS PART OF THE WINDOWS MOBILE 5 PLATFORM.

12        **THE COURT:**  OKAY.  WELL, THIS DOCUMENT THAT I WAS

13   REFERRING TO, DX317 -- THAT IS THE WINDOWS MOBILE 5

14   DOCUMENT -- I DON'T SEE IT REFERENCING "IMAP MAIL COMPONENT,"

15   SO WAS THERE A DIFFERENT DOCUMENT OTHER THAN DX317 THAT --

16   THAT WE SHOULD BE LOOKING AT?

17        **MR. NELSON:**  THE ONLY -- THE ONLY OTHER EVIDENTIARY

18   OR DOCUMENTARY EVIDENCE THAT I'M AWARE OF WOULD BE THE SOURCE

19   CODE FOR WINDOWS MOBILE 5 ITSELF.

20        **THE COURT:**  OKAY.  TELL ME IN DX317, WHERE DOES IT

21   REFER TO THE IMAP MAIL COMPONENT.

22        **MR. NELSON:**  I DON'T BELIEVE THAT IT DOES.  WHAT I'M

23   SAYING IS DR. CHASE'S -- THAT DESCRIBES THE PLATFORM FOR

24   WINDOWS MOBILE 5 --

25        **THE COURT:**  OKAY.

 1          **MR. NELSON:**  -- OF WHICH IMAP MAIL COMPONENT WAS A

 2   PART.  AND DR. CHASE TESTIFIED THAT IMAP MAIL COMPONENT WAS

 3   A -- A FOURTH COMPONENT WAS -- I BELIEVE WAS THE TESTIMONY

 4   THAT HE SAID COULD BE USED IN WINDOWS MOBILE 5 -- THAT WAS

 5   PART OF THE WINDOWS MOBILE 5 --

 6          **THE COURT:**  OKAY.  SO --

 7          **MR. NELSON:**  -- FOR DOING IMAP SYNCING.

 8          **THE COURT:**  SORRY TO INTERRUPT YOU.

 9       OTHER THAN DR. CHASE'S TESTIMONY, THOSE TWO POINTS, TWO

10   CITES, 2194 AND 2254, THERE IS NOTHING ELSE THAT CALLS OUT

11   SPECIFICALLY -- NAMES SPECIFICALLY IMAP MAIL -- IMAP MAIL; IS

12   THAT RIGHT?

13          **MR. NELSON:**  THAT'S WHAT I'M AWARE OF, YOUR HONOR.

14          **THE COURT:**  YES.

15          **MR. NELSON:**  YES.

16          **THE COURT:**  ALL RIGHT.  THANK YOU.  JUST WANTED TO

17   CLARIFY THAT.

18       LET ME -- TWO QUESTIONS FOR MS. KREVANS, AND THEN I HAVE

19   TWO LAST QUESTIONS, AND I THINK WE CAN WRAP UP.

20          **MR. NELSON:**  OKAY.  THANK YOU.

21          **THE COURT:**  SO LET ME GO TO MS. KREVANS.

22       DOES DR. SNOEREN ADDRESS THE IMAP MAIL COMPONENT AT TRIAL?

23          **MS. KREVANS:**  HE DID NOT, YOUR HONOR, BECAUSE IT WAS

24   NOT PART OF THE INVALIDITY CONTENTIONS THAT WERE PUT FORWARD

25   AND RELIED UPON BY DR. CHASE.  DR. CHASE MENTIONED IT VERY

```
1   BRIEFLY TWICE, AS YOU SAID, BUT HE NEVER TESTIFIED THAT IT MET

2   ANY ASPECT OF THE CLAIM, AND HE NEVER TESTIFIED TO AN

3   INVALIDITY THEORY THAT RELIED UPON IT.

4       AND -- AND NOT ONLY THAT, BUT THIS -- THE CODE, WHICH IS

5   EXHIBIT, I THINK, 314A, WHICH MR. NELSON REFERRED TO,

6   DR. CHASE NEVER MENTIONED OR DESCRIBED ANYTHING ABOUT ANY PART

7   OF THAT CODE THAT HAD TO DO WITH THE IMAP COMPONENT.

8       SO THIS IS -- THIS WHOLE IMAP THEORY IS A NEW THEORY

9   THEY'RE ARGUING AFTER TRIAL.

10          THE COURT:  OKAY.  AND THAT MEANS THAT APPLE DID NOT

11  PRESENT ANY REBUTTAL EVIDENCE AT TRIAL.

12          MS. KREVANS:  BECAUSE THEY DIDN'T PUT FORWARD A

13  THEORY TO REBUT; THAT'S RIGHT, YOUR HONOR.

14          THE COURT:  OKAY.  I HAVE TWO LAST QUESTIONS ON THE

15  INJUNCTION, AND THEN I WOULD LIKE TO THANK YOU ALL AND

16  CONCLUDE TODAY.

17      LET ME ASK, IF YOU'D LIKE TO TAKE A BREAK NOW AND THEN --

18              (OFF-THE-RECORD DISCUSSION.)

19          MS. KREVANS:  I AM VERY HAPPY TO SAY THAT MR. LEE IS

20  ADDRESSING THESE.

21          THE COURT:  ALL RIGHT.  I HAVE ONE QUESTION FOR EACH

22  OF YOU ON THE INJUNCTION.

23      WHO'S HANDLING IT FOR SAMSUNG?  MR. PRICE?

24      OKAY.  I HAVE ONE QUESTION FOR MR. PRICE AND ONE QUESTION

25  FOR MR. LEE AND THEN WE'LL BE DONE.
```

```
 1          OKAY.  MR. LEE?

 2              MR. LEE:  YES, YOUR HONOR.

 3              THE COURT:  OTHER THAN PHIL SCHILLER'S TESTIMONY,

 4     PLEASE IDENTIFY ALL THE EVIDENCE THAT APPLE'S REPUTATION HAS

 5     BEEN OR WILL BE DAMAGED BY SAMSUNG'S INFRINGEMENT OF THE '647,

 6     '172 AND '721 PATENTS.

 7              MR. LEE:  ALL RIGHT.  LET ME JUST GET TO THE PLACE

 8     WHERE I HAVE THESE COLLECTED, YOUR HONOR.

 9              THE COURT:  OKAY.  GREAT.

10              MR. LEE:  YOU CAN --

11                  (OFF-THE-RECORD DISCUSSION.)

12              THE COURT:  OKAY.  GREAT.

13              MR. LEE:  SURE.

14          SO, YOUR HONOR, WE WOULD RELY UPON DR. -- MR. SCHILLER'S

15     TESTIMONY.

16              THE COURT:  OKAY.

17              MR. LEE:  WE'D RELY UPON THE TESTIMONY OF SEVERAL

18     PEOPLE, INCLUDING MR. SCHILLER, DR. CHEVALIER, MR. PENDLETON,

19     ABOUT THE COMPETITION BETWEEN THE TWO, THE IMPORTANCE --

20              THE COURT:  YOU SAID CHEVALIER AND SHEPPARD?  I'M

21     SORRY TO INTERRUPT YOU.

22              MR. LEE:  I'M SORRY.  CHEVALIER AND PENDELTON.

23              THE COURT:  OH, SORRY.

24              MR. LEE:  ON THE COMPETITION BETWEEN THE PARTIES ON

25     THE PRODUCTS, THE IMPORTANCE OF THE UNIQUENESS OF THE PRODUCTS
```

```
 1    TO THE REPUTATION TO THE PARTIES, WE'D RELY UPON

 2    MR. PENDLETON'S TESTIMONY AND THE DOCUMENTS THAT HE WAS

 3    CROSS-EXAMINED ON WHICH DESCRIBE APPLE AS THE INNOVATOR BY

 4    REPUTATION, SAMSUNG AS THE FAST FOLLOWER BY REPUTATION.  AND

 5    WE WOULD RELY UPON THE TESTIMONY OF DR. CHEVALIER,

 6    DR. VELLTURO, MR. SCHILLER, MR. PENDELTON THAT TALKED ABOUT

 7    WHAT HAPPENS WHEN SOMEONE USES ONE OF THEIR INNOVATIONS TO

 8    COMPETE WITH.

 9        SO, FOR INSTANCE, YOUR HONOR MAY RECALL EVEN MR. PENDELTON

10    TALKING ABOUT SOME OF THE SAMSUNG INNOVATIONS AND THE PROBLEMS

11    IT CREATES IF SOMEONE USES THAT TO COMPETE AGAINST THEM.

12        SO THAT COLLECTION -- SO IT'S NOT JUST MR. SCHILLER THAT

13    PROVIDES BASIS FOR THE REPUTATIONAL DAMAGE.  IT'S THIS

14    COLLECTION OF WITNESSES, ALL WHO WE THINK TESTIFIED VERY

15    CONSISTENTLY.

16            THE COURT:  DO YOU HAVE PIN CITES?  AND IF YOU DON'T,

17    IT'S OKAY.  I'LL KEEP THE TOPICS.  BUT IF YOU HAVE THEM HANDY,

18    I WOULD LOVE FOR YOU TO READ THEM INTO THE RECORD SO I CAN --

19            MR. LEE:  I HAVE SOME OF THEM, AND I'LL DO --

20            THE COURT:  OKAY.  SURE.  GIVE ME WHAT YOU HAVE.

21            MR. LEE:  OKAY.  SO FIRST ON THE FIERCE AND EXTREME

22    COMPETITION, THERE IS MR. SCHILLER AT 471, LINE 10; 472, LINE

23    20.  THERE IS DR. CHEVALIER AT 2433, LINES 19 -- 9 TO 17.

24    THERE'S MR. SOHN ON CROSS-EXAMINATION AT PAGE 1635 --

25            THE COURT:  STONE, YOU SAID?
```

1          **MR. LEE:**  SOHN.

2          **THE COURT:**  OH.  SORRY.  S-O-H-N.

3     OKAY.  GO AHEAD.

4          **MR. LEE:**  AT 1633, 20 TO 25, AND PX216.03.

5          **THE COURT:**  2 -- I'M SORRY.  PX2 --

6          **MR. LEE:**  216.003.  AND THERE IS PX3002.

7     LET ME SEE IF I CAN PICK OUT SOME OF THE OTHERS.  THERE IS

8     MR. PENDLETON'S TESTIMONY ABOUT APPLE BEING AN INNOVATOR AND

9     SAMSUNG'S -- THE PERCEPTION, AS HE SAID, OF SAMSUNG AS A FAST

10    FOLLOWER.  THAT'S AT 1696, LINE 2 TO 1698, LINE 11.

11         THERE'S ALSO DX431005, WHICH IS A SAMSUNG DOCUMENT, AND

12    THAT'S THE SPECIFIC PAGE.

13         THERE IS ALSO DR. ERDEM'S TESTIMONY -- IF I CAN GET THE

14    RIGHT CITATION.  THAT IS AT 2340, LINE 5 TO 22, WHERE SHE

15    TALKS ABOUT HOW "THE COMPANIES," INCLUDING SAMSUNG AND APPLE,

16    DIFFERENTIATE THEMSELVES ON THE BASIS OF UNIQUENESS OF THEIR

17    PRODUCTS.

18         I KNOW YOUR HONOR ASKED IN ADDITION TO MR. SCHILLER, BUT

19    FOR MR. SCHILLER'S TESTIMONY, WE WOULD CITE THE COURT TO 451,

20    LINE 8 TO 452, LINE 9; 469, LINE 15 TO 470, LINE 18; 473, LINE

21    25 TO 474, LINE 21.  AND THIS IS TESTIMONY THAT GOES TO NOT

22    JUST INNOVATION BUT INNOVATION FOR THE PURPOSE OF BEING UNIQUE

23    AND THE REPUTATIONAL DAMAGE THAT OCCURS IN CONSEQUENCE.

24         THERE MAY BE MORE, YOUR HONOR, BUT THAT'S WHAT I CAN PUT

25    MY HANDS ON VERY QUICKLY.

1          **THE COURT:**  OKAY.

2      ALL RIGHT.

3      ALL RIGHT.  THANK YOU.  LET ME GO TO MR. PRICE.

4      WHY SHOULD THIS COURT'S ANALYSIS OF THE HTC AND NOKIA

5  LICENSES BE ANY DIFFERENT THAN THIS COURT'S ANALYSIS OF THOSE

6  TWO LICENSES IN THE FIRST EIGHT -- YOU KNOW, WHAT IS THAT,

7  11 CV 1846 CASE?

8      WHY SHOULD IT BE A DIFFERENT ANALYSIS HERE?

9          **MR. PRICE:**  WELL, YOUR HONOR, I -- IN SOME WAYS, I

10  DON'T THINK IT SHOULD BE A DIFFERENT ANALYSIS IN THAT

11  OBVIOUSLY WE DISAGREED WITH THE -- THE EARLIER ANALYSIS.

12          **THE COURT:**  RIGHT.

13          **MR. PRICE:**  HOWEVER, WHAT APPLE HAS INTRODUCED HERE

14  IS NOW A QUESTION OF WHETHER OR NOT THERE SHOULD BE AN

15  INJUNCTION BASED UPON -- UPON LOSS OF REPUTATION, YOU KNOW,

16  LOSS OF INNOVATIVENESS, I GUESS, AND THE -- IN CONNECTION WITH

17  THAT, WE THINK THESE ARE -- ARE RELEVANT ON THAT ISSUE BECAUSE

18  IT SHOWS THAT FOR MONEY, THEY ARE WILLING TO COMPETE IN THE

19  MARKETPLACE WITH A COMPETITOR.  AND HTC AT THE TIME WAS A

20  COMPETITOR, SIGNIFICANT ONE.

21      AND, YOU KNOW, WE KIND OF HAVE THIS "HAIL MARY" ISSUE

22  THAT'S BEEN INTRODUCED NOW ON THIS MOTION FOR PERMANENT

23  INJUNCTION, WHICH IS THE IRREPARABLE HARM DUE TO A DECREASE IN

24  REPUTATION FOR INNOVATION.

25      AND WHILE I UNDERSTAND THE COURT'S RULINGS PREVIOUSLY THAT

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

1   THOSE LICENSES MIGHT BE MORE PREJUDICIAL THAN PROBATIVE ON

2   WHAT A ROYALTY RATE SHOULD BE BECAUSE OF THEIR UNIQUE

3   CIRCUMSTANCES, I UNDERSTAND THE RATIONALE OF THE COURT.

4        THIS IS A DIFFERENT SITUATION WHERE WE'RE ASKING, YOU

5   KNOW -- YOU KNOW, ARE MONETARY DAMAGES ENOUGH TO -- YOU KNOW,

6   TO COMPENSATE WHETHER OR NOT THE -- A -- A PERMANENT

7   INJUNCTION IS NECESSARY BECAUSE APPLE DOESN'T WANT TO COMPETE

8   WITH ANYONE ELSE IN THE MARKET ON A UNIQUE FEATURE.

9        AND SO THE REASON THAT -- THAT THOSE LICENSES ARE

10  IRRELEVANT ON THAT ISSUE IS IT SHOWS THAT APPLE IS WILLING TO

11  HAVE COMPETITORS IN THE MARKETPLACE USING THIS TECHNOLOGY FOR

12  A PRICE.  AND THAT WOULD ARGUE AGAINST IRREPARABLE HARM.

13           **THE COURT:**  ALL RIGHT.  I DO THINK IN 1846, IT WAS AN

14  ANALYSIS OF THOSE HTC AND NOKIA LICENSES FOR BOTH PURPOSES,

15  WHETHER MONEY DAMAGES WOULD BE SUFFICIENT AND WHETHER IT WAS

16  PROBATIVE OF THE ROYALTY AMOUNT, SO I DON'T THINK THAT PART IS

17  DIFFERENT.

18       BUT YOU'RE SAYING THE DAMAGES TO REPUTATION IS WHAT MAKES

19  IT MORE --

20           **MR. PRICE:**  WELL, AND, IN PARTICULAR, I THINK THE

21  '647 PATENT WASN'T IN PARTICULAR A PART OF THE HTC LICENSE.  I

22  MEAN, SPECIFICALLY, YOU KNOW, IT'S ENCOMPASSED BY THAT.

23  BUT -- BUT, QUITE FRANKLY, I -- I DIDN'T EXPECT I'D BE

24  STANDING UP HERE AND CHANGING YOUR MIND ON THAT.

25           **THE COURT:**  SO -- OKAY.  ALL RIGHT.

1        **MR. PRICE:**  I DON'T KNOW IF I -- IF YOU NEED A

2   RESPONSE TO WHAT -- TO THE QUESTION YOU ASKED MR. LEE OR NOT.

3        **THE COURT:**  IF YOU WANT TO GIVE A VERY, VERY BRIEF

4   ONE, YOU CAN -- YOU CAN HAVE THE LAST WORD.  VERY, VERY BRIEF

5   PLEASE.

6        **MR. PRICE:**  VERY, VERY BRIEFLY ON HARM TO REPUTATION,

7   YOU KNOW, MR. SCHILLER REALLY WAS THE ONLY ONE WHO TESTIFIED

8   THAT -- THAT THERE WAS HARM TO APPLE'S REPUTATION BY

9   INFRINGEMENT OF PATENTS, THAT IT HARMED THEIR REPUTATION.  BUT

10  IT WAS A VERY GENERAL STATEMENT.  AND, IN FACT, WHEN HE WAS

11  ASKED ABOUT THE PATENTS THAT WERE AT ISSUE HERE, HE SAID HE

12  DIDN'T EVEN KNOW, YOU KNOW, WHAT THE PATENTS WERE, AND WHAT

13  THEY COVERED.  SO ALL HE COULD GIVE IS KIND OF A GENERAL

14  STATEMENT, BUT HE DIDN'T EVEN KNOW WHAT THESE PATENTS WERE.

15      AND, IN FACT, THERE'S NO EVIDENCE THAT THE PATENTS THAT

16  WERE IN ISSUE HERE HAVE ANY ASSOCIATION WITH APPLE -- THAT THE

17  PUBLIC HAS ANY ASSOCIATION, FOR EXAMPLE, THE '647 PATENT,

18  THAT -- APPLE SAYS IT'S STARTED PRACTICING THAT -- THAT

19  PARTICULAR CLAIM WHEN IOS3 WAS UPGRADED, BUT WHEN IT ANNOUNCED

20  TO THE WORLD WHAT THAT UPGRADE INCLUDED, IT DIDN'T EVEN TALK

21  ABOUT THAT FUNCTIONALITY.

22      AND SO APPLE HAS FAILED TO SHOW EITHER A LOSS OF

23  REPUTATION AT ALL, EVEN THOUGH THERE ARE MANY WAYS TO DO THAT,

24  AS PROFESSOR ERDEM POINTED OUT.  AND THEY HAVEN'T SHOWN AT ALL

25  HOW ANY REAL-WORLD EVIDENCE AS TO HOW THESE PATENTS, YOU KNOW,

1    ARE ASSOCIATED WITH APPLE; PARTICULARLY, FOR EXAMPLE, THE --

2    THE WORD CORRECTION PATENT, WHICH APPLE DOESN'T USE.

3       NOW OBVIOUSLY, YOU KNOW, YOU CAN SUFFER LOST PROFITS IF

4    SOMEONE USES A PATENT THAT YOU'RE NOT USING, SO THERE ARE SOME

5    CASES WHICH HAVE LANGUAGE THAT, YOU KNOW, NOT USING THE

6    PATENT, YOU KNOW, IS IRRELEVANT FOR SOME PURPOSES.

7       BUT HERE, THE QUESTION IS DOES -- DOES USE OF THIS PATENT

8    BY A COMPETITOR AFFECT APPLE'S REPUTATION FOR BEING

9    INNOVATIVE.  AND NO ONE ASSOCIATES THAT PATENT WITH APPLE AT

10   ALL THAT'S NOT WHY THEY'RE THOUGHT TO BE INNOVATIVE.

11      SO THAT'S A -- A SHORT RESPONSE TO --

12           **THE COURT:**  ALL RIGHT.  THANK YOU.

13      AND MR. LEE HAS STOOD UP.  ALL RIGHT.  SINCE IT'S YOUR

14   MOTION, I'LL GIVE YOU THE LAST --

15           **MR. LEE:**  LESS THAN --

16           **THE COURT:**  -- WORD, AND I MEAN "WORD."  I DON'T EVEN

17   MEAN "WORDS" PLURAL.  OKAY.  SO --

18                    (LAUGHTER.)

19           **MR. LEE:**  IT'S HARD IN A WORD, BUT, YOUR HONOR,

20   THAT'S NOT WHAT DOUGLAS DYNAMIC SAYS.  YOU DON'T HAVE TO SHOW

21   YOUR REPUTATION HAS BEEN LOST.  YOU HAVE TO SHOW THAT YOUR

22   REPUTATION AS INNOVATOR BEEN HARMED.  AND IF YOU WALK THROUGH

23   THE FIVE REQUIREMENTS OF DOUGLAS DYNAMICS, WE WERE VERY

24   CAREFUL TO PUT THAT PROOF IN IN THIS CASE BECAUSE WE THOUGHT

25   IT WOULD BE DIFFERENT THAN 1846.

 1          **THE COURT:**  ALL RIGHT.  WELL --

 2          **MR. PRICE:**  YOUR HONOR --

 3          **THE COURT:**  I'M GOING TO SEE YOU ALL NEXT WEEK, SO,

 4     YOU KNOW --

 5        YES.  GO AHEAD.

 6          **MR. PRICE:**  JUST VERY QUICKLY, YOUR HONOR.  DOUGLAS

 7     DYNAMICS, MR. LEE'S --

 8                    (OFF-THE-RECORD DISCUSSION.)

 9          **THE COURT:**  WE STILL NEED QUIET IN THE COURTROOM,

10     PLEASE.

11          **MR. PRICE:**  MR. LEE'S RESPONSE RELIES ON A

12     MISINTERPRETATION OF DOUGLAS DYNAMICS.  I MEAN, AFTER DOUGLAS

13     DYNAMICS WAS DECIDED, JUDGE PROBST IN WHAT WE CALL JOINTLY --

14     WE CALLED APPLE III, BUT WHICH I -- YOUR HONOR CALLS, YOU

15     KNOW, APPLE IV POINTED OUT --

16          **THE COURT:**  I'M GOING TO CALL IT APPLE III IN THIS

17     ORDER.  DON'T WORRY.

18          **MR. PRICE:**  OKAY.

19        -- POINTED OUT THAT -- THAT THE ISSUE OF NEXUS SIMPLY

20     WASN'T PRESENTED IN DOUGLAS DYNAMICS.  AND, IN FACT, IN APPLE

21     I WHEN THE FEDERAL CIRCUIT, YOU KNOW, RULED ON WHETHER OR NOT

22     YOU WERE CORRECT IN DENYING PRELIMINARY INJUNCTION ON THE '677

23     PATENT, THE COURT SAID THAT YOU HAD BASED YOUR RULING ON THE

24     APPLICANT'S FAILURE TO SHOW THAT THERE WAS A NEXUS BETWEEN THE

25     LIKELY INFRINGEMENT OF THE PATENTED DESIGN AND APPLE'S CLAIM

1   OF LOST MARKET SHARE AND BRAND ILLUSION, WHICH IS WHAT WE'RE

2   TALKING ABOUT HERE, REPUTATION.

3       AND THE COURT SAID YOU DID APPLY THE PROPER TEST.  THERE

4   DOES HAVE TO BE A NEXUS.

5           **THE COURT:**  WHAT'S THE STATUS ON THE APPEAL OF THE

6   PERMANENT INJUNCTION IN THE 1846 CASE?  HAS THAT BRIEFING

7   BEGUN OR --

8           **MR. LEE:**  NO.

9           **MS. MAROULIS:**  YOUR HONOR, SAMSUNG FILED ITS OPENING

10  BRIEF.  I BELIEVE THAT APPLE IS FILING ITS RESPONSE JULY 28TH,

11  AND OUR NEXT ROUND OF BRIEFING WILL BE IN SEPTEMBER.  SO WE'LL

12  PROBABLY EXPECT THE ARGUMENT TO BE SCHEDULED BETWEEN DECEMBER

13  AND FEBRUARY.

14          **THE COURT:**  WAIT.  IS THAT ON THE INJUNCTION, OR

15  THAT'S THE WHOLE CASE APPEAL?

16          **MR. LEE:**  THE ENTIRE CASE.

17          **MS. MAROULIS:**  IT'S THE ENTIRE CASE.

18          **THE COURT:**  INCLUDING -- BUT YOU DIDN'T APPEAL THE

19  DENIAL OF PERMANENT INJUNCTION.

20          **MS. MAROULIS:**  NO, BUT --

21          **THE COURT:**  SO ARE YOU PUTTING YOUR AFFIRMATIVE CASES

22  IN YOUR RESPONSIVE BRIEF, THEN?

23          **MR. LEE:**  YOUR HONOR IF WE -- TO THE EXTENT WE DECIDE

24  TO CROSS-APPEAL, IT WOULD HAVE TO BE IN OUR OPENING BRIEF.

25          **THE COURT:**  OKAY.

```
 1            MR. LEE:  AND THE ISSUE -- IF WE CROSS-APPEAL, IT
 2    WILL BE IN THIS BRIEF FILED, AS MS. MAROULIS SAID.
 3            THE COURT:  OH, YOU HAVEN'T MADE A DECISION THAT
 4    YOU'RE GOING TO CROSS-APPEAL?
 5            MR. LEE:  YEAH, WE HAVE NOT.
 6            THE COURT:  OH, I SEE.
 7            MR. LEE:  AND THAT'S WHY, WITHOUT USING MORE THAN A
 8    WORD, WE THINK THIS IS DIFFERENT THAN THAT, SO WE WEREN'T
 9    RELYING UPON WHAT THE FEDERAL CIRCUIT WILL DO WITH THE 1846
10    APPEAL.  BUT SINCE --
11            THE COURT:  SO WAIT.  LET ME ASK YOU A QUESTION, SO
12    THEN YOUR APPEAL WILL BE HEARD WHEN?  IN AUGUST, YOU SAID?
13            MS. MAROULIS:  NO, YOUR HONOR.  THE PARTIES ARE
14    CROSS-APPEALING, SO WE THINK THAT THE COMBINED APPEAL WILL BE
15    HEARD SOMETIME BETWEEN DECEMBER AND FEBRUARY, BUT THAT'S JUST
16    AN ESTIMATION.
17            THE COURT:  I SEE.
18            MR. LEE:  I -- YEAH, I THINK IT MIGHT BE A LITTLE BIT
19    EARLIER, BUT THAT'S BALLPARK.  CORRECT.
20            THE COURT:  I SEE.  AND WHY IS YOUR TIME TO APPEAL
21    NOT THE SAME?
22            MR. LEE:  WE'RE THE -- THEY ARE THE APPELLANT.  WE'RE
23    THE APPELLEE.  TO THE EXTENT WE DECIDE TO CROSS-APPEAL, ANY
24    ISSUES THAT WE WOULD CROSS-APPEAL ON WOULD BE IN OUR OPENING
25    RESPONSIVE BRIEF.
```

```
1            THE COURT:  I SEE.

2            MR. LEE:  AND THAT WILL BE THE ISSUE.

3       YOUR HONOR, SINCE IT'S OUR MOTION --

4            THE COURT:  OKAY.

5            MR. LEE:  OKAY.

6            THE COURT:  BUT I WANT TO BE HERE -- OUT BY 4:20,

7   SO --

8            MR. LEE:  GUARANTEED.

9            THE COURT:  AND I MIGHT WALK OUT WHETHER YOU'RE

10  TALKING OR NOT, SO --

11           MR. LEE:  I'LL TRY TO PREVENT THAT.

12      MR. PRICE AND I DISAGREE.  IF YOUR HONOR LOOKS AT WHAT

13  JUDGE PROBST SAID, SHE WAS DEALING WITH A CASE THAT DIDN'T

14  MENTION CAUSAL NEXUS AND SAID CERTAIN OF THEM, THE ISSUE

15  DIDN'T ARISE.

16      SHE COULDN'T SAY THAT AS TO DOUGLAS DYNAMICS BECAUSE THE

17  SPECIFIC ARGUMENT HAD BEEN MADE THAT THE SINGLE LATCH, WHICH

18  WAS THE INVENTION, WAS JUST PART OF A MULTI-COMPONENT PRODUCT.

19      SO WHAT JUDGE PROBST SAID WAS APPLE HAS NOT RAISED

20  REPUTATIONAL DAMAGE AS IRREPARABLE HARM IN APPLE III.  AND

21  THAT'S THE DISTINCTION ON THE RECORD BEFORE YOU NOW.  SHE SAYS

22  IT EXPLICITLY.

23      AND I THINK YOU'LL SEE -- IT'S IN THE SECTION, YOUR HONOR,

24  WHEN SHE'S DEALING WITH ALL OF THE OTHER CASES THAT NEVER

25  MENTION "CAUSAL NEXUS," AND SHE SAYS IT DIDN'T ARISE.
```

1     YOU REALLY CAN'T SAY THAT AS TO DOUGLAS DYNAMICS BECAUSE

2  THE ARGUMENT WAS MADE THAT FOR A MULTI-COMPONENT PRODUCT, YOU

3  CAN'T HAVE THE REQUISITE TIE.  AND WHAT JUDGE PROBST SAID IN

4  APPLE III WAS, WELL, APPLE DOESN'T RAISE REPUTATIONAL DAMAGE

5  WHICH WAS THE FOCUS OF THE -- DOUGLAS DYNAMICS SO WE'RE NOT

6  GOING TO REACH IT.  AND THAT WHAT'S SHE SAYS EXPLICITLY.

7          MR. PRICE:  YOUR HONOR, IF I CAN GIVE YOU A CITE OR

8  ACTUALLY READ THE EXACT LANGUAGE FROM APPLE III SO THAT YOU'LL

9  KNOW WHAT WE'RE DISAGREEING ON.  I THINK IT'S AT PAGE 1362.

10  AND -- AND AFTER -- AFTER SAYING APPLE ARGUES ABOUT THE

11  DISTRICT COURT'S APPLICATION TO CAUSAL NEXUS REQUIREMENT, THE

12  COURT THEN CITES BOSCH, BROADCOMM, ACCUMED, PRESIDIO,

13  CERAMICS, AND DOUGLAS DYNAMICS.

14     THERE THEN FOLLOW TWO PARAGRAPHS.  AND -- AND WHAT

15  MR. LEE'S DOING IS HE'S IGNORING THE FIRST.  THE FIRST

16  PARAGRAPH SAYS, "APPLE'S RELIANCE ON THOSE CASES IS MISPLACED.

17  FOR ONE THING, THERE IS NO INDICATION THAT ANY OF THE

18  INFRINGERS IN THOSE CASES CHALLENGED THE EXISTENCE OF A CAUSAL

19  NEXUS BETWEEN THEIR INFRINGEMENT AND THE PATENTEE'S ALLEGED

20  HARM SO THIS COURT DID NOT HAVE THE OCCASION TO ADDRESS THE

21  ISSUE."

22     THAT PARAGRAPH REFERS TO ALL THE CASES THAT WERE CITED

23  INCLUDING DOUGLAS DYNAMICS.

24     IN A SECOND PARAGRAPH, JUDGE PROBST THEN SAYS, "THEY ARE

25  DISTINGUISHABLE ON OTHER GROUNDS AS WELL."  AND THEN TALKS

```
 1    ABOUT THE FURTHER DISTINCTION OF DOUGLAS DYNAMICS DEALING WITH

 2    REPUTATION, WHEREAS THE APPLE CASE DID NOT.

 3        SO MR. LEE IS IGNORING THE VERY FIRST PARAGRAPH.

 4            THE COURT:  ALL RIGHT.

 5            MR. LEE:  AND, YOUR HONOR, IT'S 4:20.  DOUGLAS

 6    DYNAMICS SAYS WHAT IT SAYS ABOUT MULTI-COMPONENT PRODUCTS.

 7            THE COURT:  ALL RIGHT.  THANK YOU.

 8        WELL, I'M GOING TO SEE YOU AT LEAST NEXT WEEK FOR

 9    ATTORNEYS' FEES AND THE BOND, THE 14TH ON THE COSTS.  WE HAVE

10    THE 101 ISSUE.

11        WHAT ELSE IS THERE THAT'S PENDING?

12            MR. LEE:  THE 28TH ON THE SANCTIONS.

13            THE COURT:  OH, THAT'S RIGHT.  OKAY.

14            MR. LEE:  YEAH.

15            THE COURT:  THANK YOU ALL.

16            MR. LEE:  THANK YOU.

17          (PROCEEDINGS WERE CONCLUDED AT 4:25 P.M.)

18                        --O0O--

19

20

21

22

23

24

25
```

**CERTIFICATE OF REPORTER**

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER. I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN, AND FURTHER THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

_____

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR

FRIDAY, JULY 18, 2014

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*