

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,892 | 06/14/2013 | 8074172 | 0347207 | 1070 |

20872          7590          08/05/2014

MORRISON & FOERSTER LLP
425 MARKET STREET
SAN FRANCISCO, CA 94105-2482

| EXAMINER |
|---|
| PATEL, HETUL B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/05/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

BRYAN CAVE LLP

1290 AVENUE OF THE AMERICAS

NEW YORK, NY 10104

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,892*.

PATENT NO. *8074172*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Office Action in Ex Parte Reexamination* | Control No. 90/012,892 | Patent Under Reexamination 8074172 |
|---|---|---|
| | Examiner Hetul Patel | Art Unit 3992 | AIA (First Inventor to File) Status No |

*Note: the third column spans both the patent-number row and the AIA row as shown below.*

| | | Art Unit | AIA (First Inventor to File) Status |
|---|---|---|---|
| | Examiner Hetul Patel | 3992 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a.☒ Responsive to the communication(s) filed on _04/04/2014_ .

☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b.☐ This action is made FINAL.

c.☒ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire _2_ month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.     3. ☐ Interview Summary, PTO-474.
2. ☐ Information Disclosure Statement, PTO/SB/08.          4. ☐ _____.

Part II   SUMMARY OF ACTION

1a. ☒ Claims _1-6,8-15 and 17-38_ are subject to reexamination.

1b. ☒ Claims _7 and 16_ are not subject to reexamination.

2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

3. ☐ Claims _____ are patentable and/or confirmed.

4. ☒ Claims _1-6,8-15 and 17-38_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ The drawings, filed on _____ are acceptable.

7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b)☐ disapproved.

8. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).

   a) ☐ All  b) ☐ Some* c) ☐ None     of the certified copies have

   1 ☐ been received.

   2 ☐ not been received.

   3 ☐ been filed in Application No. _____ .

   4 ☐ been filed in reexamination Control No. _____.

   5 ☐ been received by the International Bureau in PCT application No. _____.

   * See the attached detailed Office action for a list of the certified copies not received.

9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.

10. ☐ Other: _____

cc: Requester (if third party requester)

Application/Control Number: 90/012,892                                Page 2
Art Unit: 3992

## *Ex Parte* Reexamination - Non-final Rejection

## Table of Contents

1.0     SUMMARY ........................................................................................................ 3

2.0     REFERENCES ................................................................................................. 3

  2.1   References Cited by the Requester ............................................................. 3

3.0     CLAIMS UNDER REEXAMINATION ................................................................. 3

4.0     CLAIM REJECTIONS – 35 USC § 102 ............................................................ 5

  4.1   Robinson (Claims 2-6, 8-12, 15, 18-24 and 26-36) .................................... 5

  4.2   Ng (Claims 2, 4-6, 8-12, 15 and 17-36) .....................................................19

  4.3   King (Claims 1-6, 8-15 and 17-38) .............................................................32

5.0     CLAIM REJECTIONS – 35 USC § 103 ............................................................32

  5.1   Robinson (Claims 25 and 37-38)..................................................................33

  5.2   Ng (Claim 38).............................................................................................34

  5.3   Robinson in view of King or Ng (Claims 1, 13-14, 17, 25 and 37).............35

  5.4   Ng in view of Robinson (Claims 1 and 3) ..................................................43

  5.5   Ng in view of King (Claims 13-14 and 38) .................................................46

  5.6   King in view of Robinson (Claims 1-3, 10, 18-20, 24-25, 30, 32-33 and 37-38) ..........48

6.0     CONCLUSION..............................................................................................49

Application/Control Number: 90/012,892                                    Page 3
Art Unit: 3992

## 1.0   SUMMARY

This Office Action addresses claims 1-6, 8-15 and 17-38 of U.S. Patent 8,074,172 (hereafter '172 patent) issued December 6, 2011 to Kocienda et al. of Apple, Inc. for which it has been determined in the 90/012,892 reexamination, regarding the Order mailed on August 19, 2013 granting *ex parte* reexamination, that at least one substantial new question (hereinafter "SNQ") of patentability was raised in the request for *ex parte* reexamination, filed June 14, 2013 (hereinafter "the Request").

No statement under 37 CFR § 1.530 was filed by the patent owner.

## 2.0   REFERENCES

### *2.1     References Cited by the Requester*

The requester alleges that at least one substantial new question of patentability (SNQ) has been raised by at least the following prior art references:

1.  WO 2005/008899 to Ng et al. (hereinafter "Ng")

2.  U.S. Patent No. 5,953,541 to King et al. (hereinafter "King")

3.  U.S. Patent No. 6,801,190 to Robinson et al. (hereinafter "Robinson")

## 3.0   CLAIMS UNDER REEXAMINATION

The present request alleges that claims 1-6, 8-15 and 17-38 of the '172 patent are unpatentable.

Application/Control Number: 90/012,892                                                Page 4
Art Unit: 3992

Since requester did not request reexamination of claims 7 and 16 and did not
assert the existence of a substantial new question of patentability (SNQ) for such claims
(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be
reexamined. This matter was squarely addressed in Sony Computer Entertainment
America Inc., et al. v. Jon W. Dudas, Civil Action No. 1:05CV1447 (E.D.Va. May 22,
2006), SlipCopy, 2006 WL 1472462. The District Court upheld the Office's discretion to
not reexamine claims in a reexamination proceeding other than those claims for which
reexamination had specifically been requested. The Court stated:

> "To be sure, a party may seek, and the PTO may grant .... review of each and every claim of
> a patent. Moreover, while the PTO in its discretion may review claims for which ... review was
> not requested, nothing in the statute compels it to do so. To ensure that the PTO considers a
> claim for ... review, requires that the party seeking reexamination demonstrate why the PTO
> should reexamine each and every claim for which it seeks review. Here, it is undisputed that
> Sony did not seek review of every claim under the '213 and '333 patents. Accordingly, Sony
> cannot now claim that the PTO wrongly failed to reexamine claims for which Sony never
> requested review, and its argument that AIPA compels a contrary result is unpersuasive."

The Sony decision's reasoning and statutory interpretation apply analogously to
ex parte reexamination, as the same relevant statutory language applies to both inter
partes and ex parte reexamination. 35 U.S.C. § 302 provides that the ex parte
reexamination "request must set forth the pertinency and manner of applying cited prior
art to every claim for which reexamination is requested" (emphasis added), and 35
U.S.C. § 303 provides that "the Director will determine whether a substantial new
question of patentability affecting any claim of the patent concerned is raised by the
request..." (Emphasis added). These provisions are analogous to the language of 35

Application/Control Number: 90/012,892                                              Page 5
Art Unit: 3992

U.S.C. § 311(b)(2) and 35 U.S.C. § 312 applied and construed in Sony, and would be

construed in the same manner. As the Director can decline to reexamine non-requested

claims in an inter partes reexamination proceeding, the Director can likewise do so in ex

parte reexamination proceeding. See Notice of Clarification of Office Policy To Exercise

Discretion in Reexamining Fewer Than All the Patent Claims (signed Oct. 5, 2006) 1311

OG 197 (Oct. 31, 2006). See also MPEP § 2240, Rev. 11, March 2014.

Therefore, claims 7 and 16 will not be reexamined in this ex parte reexamination

proceeding.

## 4.0   CLAIM REJECTIONS – 35 USC § 102

The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C.

102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –
(b) the invention was patented or described in a printed publication in this or a foreign country or in
public use or on sale in this country, more than one year prior to the date of application for patent in the United
States.

### *4.1    Robinson (Claims 2-6, 8-12, 15, 18-24 and 26-36)*

Claims 2-6, 8-12, 15, 18-24 and 26-36 are rejected under pre-AIA 35 U.S.C.

102(b) as anticipated by Robinson.

As per claims 2 and 18-20, Robinson teaches a method, comprising: at a

portable electronic device (the palmtop portable computer 102 in Fig. 1A)

with a touch screen display (103 in Fig. 1A):

- in a first area (the output text region 104 in Fig. 1A) of the touch screen display, displaying a current character string being input by a user with the keyboard (i.e. the current character string gets displayed at the cursor/insertion point 107 in Fig. 1A (Note: The insertion point 107 is mistakenly labeled as 106 in Fig. 1A); "As a user enters a keystroke sequence using the keyboard [105], text is displayed on the computer display 103"; see Col. 16, lines 51-67);

- in a second area (the word choice list region 150 in Fig. 1B) of the touch screen display separate from the first area, displaying the current character string (the "exact Type" word 154 in Fig. 1B) or a portion thereof and a suggested replacement character string for the current character string (the "Default word" 160 in Fig. 1B; see Col. 18, line 63 – Col. 19, line 21);

- replacing the current character string in the first area with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter (i.e. the space key 110 or Return key 118; see Col. 19, lines 33-37; and Col. 34, lines 35-39);

- replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area (i.e. replacing with the suggested character string, for example, with

Application/Control Number: 90/012,892                                    Page 7
Art Unit: 3992

"text" 160 in Fig. 1B, if user performs first gesture (e.g.
by touching/tapping on "text" 160 in the 150); See Col. 18,
lines 52-54, Col. 31, lines 8-24, Col. 23, lines 6-30); and

- keeping the current character string in the first area if the user performs a second
gesture in the second area on the current character string or the portion thereof
displayed in the second area (i.e. keeping the current character
string, for example, "rwzt" 154 in Fig. 1B, if user
performs second gesture (e.g. by touching/tapping on "rwzt"
154 in the 150); See Col. 18, lines 52-58, Col. 31, lines
8-24, Col. 23, lines 6-30).

Further regarding claim 18, Robinson teaches a graphical user interface on a
portable electronic device (the palmtop portable computer 102 in Fig. 1A)
with a keyboard (105 in Fig. 1A) and a touch screen display (103 in Fig. 1A)
(see Fig. 1A).

Further regarding claim 19, Robinson teaches a portable electronic device (the
palmtop portable computer 102 in Fig. 1A), comprising: a touch screen
display (103 in Fig. 1A); one or more processors (the CPU 201 in Fig. 2);
memory (210 in Fig. 2); and one or more programs (OS 211, Auto-
correction software 212 and vocabulary modules 213 in Fig. 2),
wherein the one or more programs are stored in the memory and configured to be
executed by the one or more processors (see Col. 19, line 57 – Col. 20,
line 11).

Application/Control Number: 90/012,892                                     Page 8
Art Unit: 3992

Further regarding claim 20, Robinson teaches a computer readable storage medium (the memory 210 in Fig. 2) storing one or more programs (OS 211, Auto-correction software 212 and vocabulary modules 213 in Fig. 2), the one or more programs comprising instructions, which when executed by a portable electronic device (the palmtop portable computer 102 in Fig. 1A) with a touch screen display (103 in Fig. 1A) cause the portable electronic device to perform steps of claim 2.

As per claim 3, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches about including adding a space after the current character string if the user performs the second gesture on the current character string or the portion thereof displayed in the second area (See Col. 30, lines 31-48).

As per claim 4, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that the key on the keyboard associated with a delimiter is a space bar key (See Col. 19, lines 33-37; and Col. 34, lines 35-39).

As per claim 5, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that the delimiter is any of a plurality of predefined delimiters symbols (i.e. if the word choice list region 150 is displayed before the keyboard 105, then touching/tapping any symbol from symbol mode 116, any letter from the alternate letter mode 120, any number from the numeric mode 122 or space

Application/Control Number: 90/012,892                                     Page 9
Art Unit: 3992

key 110 will select the default word 160; See Col. 19, lines 33-
37; and Col. 34, lines 35-39 and Figs. 1A-1B).

As per claim 6, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that the keyboard is a soft keyboard that is part of the touch screen display (i.e. the keyboard 105 is a part of the touch screen display 103; see Fig. 1A).

As per claim 8, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that the character strings are words, numbers, or a combination thereof (i.e. the character strings are words as shown by 154, 157 and 160 in Fig. 1B).

As per claim 9, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that in the second area (the word choice list region 150 in Fig. 1B) of the touch screen display, displaying an alternative suggested replacement character string (i.e. any of the three words shown in 157 in Fig. 1B) for the current character string (154 in Fig. 1B); and replacing the current character string in the first area with the alternative suggested replacement character string if the user performs a predefined gesture on the alternative suggested replacement character string in the second area (i.e. replacing with the alternative suggested character string, for example, with "fact" 157 in Fig. 1B, if user performs a gesture (e.g. by touching/tapping on "fact" 157 in the 150); See Col. 18, lines 52-54, Col. 31, lines 8-24, Col. 23, lines 6-30).

Application/Control Number: 90/012,892                                    Page 10
Art Unit: 3992

As per claim 10, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches about adding the current character string (`"rwzt"` `154 in the Fig. 1B`) to a dictionary (`i.e. a lexicon of words`) in the device if the user performs the second gesture on the current character string displayed in the second area (`i.e. if user performs second gesture (e.g. by touching/tapping on "rwzt" 154) in the 150); see Col. 18, lines 56-63`).

As per claim 11, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that the first gesture includes one or more taps on the suggested replacement character string displayed in the second area (`i.e. when user performs first gesture by touching/tapping once on "text" 160 in the 150; See Col. 18, lines 52-54, Col. 31, lines 8-24, Col. 23, lines 6-30`).

As per claim 12, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that the second gesture includes one or more taps on the current character string displayed in the second area (`i.e. when user performs second gesture by touching/tapping once on "rwzt" 154 in the 150; See Col. 18, lines 52-54, Col. 31, lines 8-24, Col. 23, lines 6-30`).

As per claim 15, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches, in the second area (`the word choice list region 150 in Fig. 1B`) of the touch screen display, the suggested replacement

Application/Control Number: 90/012,892                                    Page 11
Art Unit: 3992

character string (the "Default word" 160 in Fig. 1B) and the current

character string (the "Exact type" word 154 in Fig. 1B) are on opposite

sides of the second area (i.e. 154 and 160 are on opposite sides of 150

as shown in Fig. 1B).

As per claims 21 and 27, Robinson teaches a computer readable storage

medium (the memory 210 in Fig. 2) storing one or more programs (OS 211,

Auto-correction software 212 and vocabulary modules 213 in Fig.

2), the one or more programs comprising instructions, which when executed by a

portable electronic device (the palmtop portable computer 102 in Fig. 1A)

with a display (the touch screen display 103 in Fig. 1A) and a keyboard

(105 in Fig. 1A), cause the portable electronic device to perform a method

comprising:

-   receiving a plurality of user inputs of characters through the keyboard, and

    displaying on the display a current character string (160 in Fig. 1B) as input

    by the user (see Col. 16, lines 51-54);

-   displaying a suggested replacement character string (e.g. 160 in Fig. 1B) for

    the current character string (see Col. 16, lines 58-62);

-   while both the current character string and the suggested replacement string are

    displayed, receiving a further user input through a punctuation mark key of the

    keyboard (see Col. 19, lines 22-27); and

-   in response to the further user input, replacing the current character string with

    the suggested replacement character string, and appending a punctuation mark

Application/Control Number: 90/012,892                                    Page 12
Art Unit: 3992

at the end of the replacement character string, the punctuation mark corresponding to the punctuation mark key through which the further user input was received (see Col. 19, lines 27-37).

Further regarding claim 27, Robinson teaches a portable electronic device (the palmtop portable computer 102 in Fig. 1A), comprising: one or more processors (the CPU 201 in Fig. 2); a touch screen display (103 in Fig. 1A); and computer readable memory (210 in Fig. 2) comprising instructions that, when executed by the one or more processors, perform operations as recited in claim 21 above.

As per claim 28, Robinson teaches a portable electronic device (the palmtop portable computer 102 in Fig. 1A), comprising: one or more processors (the CPU 201 in Fig. 2); a display (103 in Fig. 1A); a keyboard (105 in Fig. 1A); and computer readable memory (210 in Fig. 2) comprising instructions that, when executed by the one or more processors, perform operations comprising:

- receiving a plurality of user inputs of characters through the keyboard, and displaying on the display a current character string (154 in Fig. 1B) as input by the user (see Col. 16, lines 51-54),

- displaying on the display a suggested replacement character string (e.g. 160 in Fig. 1B) for the current character string (see Col. 16, lines 58-62), and

- receiving a further user input of a single touch (i.e. touching/selecting any key of the keyboard which get displayed after the word choice list or anywhere within the touch screen display

103), wherein the portable electronic device is configured to receive the further single user input to perform a selected character string function of a plurality of possible character string functions depending on where the further single user input is received (see Col. 19, lines 22-37), the plurality of possible character string functions comprising,

-   replacing the current character string with the suggested replacement character string in response to a single user input at a first location (see Col. 18, lines 52-54; Col. 30, lines 7-24 and Col. 31, lines 8-24),

-   replacing the current character string with the suggested replacement character string in combination with a first punctuation mark (i.e. an apostrophe key on keyboard 105 in Fig. 1A or keyboard 300 in Fig. 3; or a space using a space key 110) in response to a single user input at a second location (i.e. the location of the apostrophe key or the space key 110), the second location being a first punctuation mark key on the keyboard corresponding to the first punctuation mark (See Col. 19, lines 22-37),

-   replacing the current character string with the suggested replacement character string in combination with a second punctuation mark (i.e. a period key on keyboard 300 in Fig. 3; or a new line using a Return key 118) in response to a single user input at a third location (i.e. the location of the period key or Return key 118), the third location being a

Application/Control Number: 90/012,892                                      Page 14
Art Unit: 3992

> second punctuation mark key on the keyboard corresponding to the second
> punctuation mark (See Col. 19, lines 22-37), and

- accepting the current character string in response to a single user input at a
  fourth location (see Col. 18, lines 52-54; Col. 30, lines 7-24
  and Col. 31, lines 8-24).

As per claim 22, Robinson teaches the claimed invention as described above
and furthermore, Robinson teaches the punctuation mark key corresponds to a
punctuation mark selected from the group consisting essentially of a comma, a period,
an exclamation point, a question mark, and a semicolon (see Col. 14, lines 2-
8; and Fig. 3 shows all alphabet keys and period and apostrophe
punctuation mark keys).

As per claims 23 and 29, Robinson teaches the claimed invention as described
above and furthermore, Robinson teaches display is a touch screen display (103 in
Fig. 1A), and wherein the keyboard is a virtual keyboard displayed on the touch
screen display (see Col. 15, lines 50-53).

As per claims 24 and 30, Robinson teaches the claimed invention as described
above and furthermore, Robinson teaches the virtual keyboard (105 in Fig. 1A;
and 300 in Fig. 3) comprises a display that simultaneously displays a first plurality
of virtual keys (i.e. the keys of 26 letters of English alphabet in
the region 106 in Fig. 1A and Fig. 3) each associated with a respective
letter of the alphabet, and a second plurality of virtual punctuation mark keys (i.e.
'Space' key 105 and apostrophe key in Fig. 1A; apostrophe and

Application/Control Number: 90/012,892                                    Page 15
Art Unit: 3992

period keys shown in Fig. 3) each corresponding to a respective punctuation mark (see Col. 14, lines 2-8 and Col. 17, lines 62-65).

As per claim 26, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches that displaying a suggested replacement character string for the current character string comprises displaying a single suggested replacement character string (i.e. displaying the default word 160, as shown in Fig. 1B, which represents a "single" suggested replacement character string; also see Col. 16, lines 63-67, where only the default or most likely word is displayed).

As per claim 31, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches the first punctuation mark key is a virtual punctuation mark key (a space key 110 in Fig. 1A) corresponding to the first punctuation mark (i.e. a space), and the second punctuation mark key is a virtual punctuation mark key (a Return key 118 in Fig. 1A) corresponding to the second punctuation mark (i.e. a new line) (See Fig. 1A).

As per claim 32, Robinson teaches a portable electronic device (the palmtop portable computer 102 in Fig. 1A), comprising: one or more processors (the CPU 201 in Fig. 2); a touch screen display (103 in Fig. 1A); and computer readable memory (210 in Fig. 2) comprising instructions that, when executed by the one or more processors, perform operations comprising,

- receiving a plurality of user inputs of characters through a virtual keyboard (105 in Fig. 1A; and 300 in Fig. 3) that simultaneously displays a first

plurality of virtual keys (i.e. the keys of 26 letters of English alphabet in the region 106 in Fig. 1A and Fig. 3) each associated with a respective single letter of the alphabet, and a second plurality of virtual punctuation mark keys (i.e. 'Space' key 105 and apostrophe key in Fig. 1A; apostrophe and period keys shown in Fig. 3) each corresponding to a respective punctuation mark (see Col. 14, lines 2-8 and Col. 17, lines 62-65),

- displaying on the touch screen display a current character string as input by the user (see Col. 16, lines 51-54),

- displaying on the display a suggested replacement character string (e.g. 160 in Fig. 1B) for the current character string (see Col. 16, lines 58-62),

- in response to a first user input at a first location, replacing the current character string with the suggested replacement character string (see Col. 18, lines 52-54; Col. 30, lines 7-24 and Col. 31, lines 8-24),

- in response to a second user input at a virtual punctuation mark key corresponding to a first punctuation mark, replacing the current character string with the suggested replacement character string in combination with the first punctuation mark (See Col. 19, lines 22-37), and

- in response to a third user input at a third location, accepting the current character string (see Col. 18, lines 52-54; Col. 30, lines 7-24 and Col. 31, lines 8-24).

Application/Control Number: 90/012,892                                        Page 17
Art Unit: 3992

As per claim 33, Robinson teaches a computer readable storage medium (the memory 210 in Fig. 2) storing one or more programs (OS 211, Auto-correction software 212 and vocabulary modules 213 in Fig. 2), the one or more programs comprising instructions, which when executed by a portable electronic device (the palmtop portable computer 102 in Fig. 1A) with a touch screen display (103 in Fig. 1A) cause the portable electronic device to perform a method comprising:

- receiving a plurality of user character inputs through the touch screen display of the portable electronic device, wherein the user character inputs are received through a virtual keyboard (105 in Fig. 1A; and 300 in Fig. 3) displayed on the touch screen, wherein the virtual keyboard simultaneously displays a first plurality of virtual keys (i.e. the keys of 26 letters of English alphabet in the region 106 in Fig. 1A and Fig. 3) each associated with a respective single letter of the alphabet, and a second plurality of virtual punctuation mark keys (i.e. 'Space' key 105 and apostrophe key in Fig. 1A; or apostrophe and period keys shown in Fig. 3);

- displaying on the touch display a current character string as input by a user (see Col. 16, lines 51-54);

- while displaying the current character string (154 in Fig. 1B), also displaying a suggested replacement character string (e.g. 160 in Fig. 1B) for the current character string (see Col. 16, lines 58-62), wherein at the time a

Application/Control Number: 90/012,892                                Page 18
Art Unit: 3992

suggested replacement character string is displayed (i.e. at the time a word choice list 150 is displayed), the portable electronic device is able to receive a plurality of possible user single touch inputs (e.g. space or carriage return or period key input or tap input on 160) that will result in selection of the suggested replacement character string, and wherein said plurality of possible user single touch inputs includes actuation of one of the plurality of virtual punctuation mark keys (see Col. 19, lines 22-37 and Col. 34, lines 32-43);

- receiving a single touch user selection input through one of the plurality of the virtual punctuation mark key (e.g. space key); and in response to the single touch user selection input, replacing the current character set with the suggested replacement character set and adding at the end of said character set a punctuation mark corresponding to the virtual punctuation mark key through which the input was received (See Col. 19, lines 22-37).

As per claim 34, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches the plurality of possible single touch user inputs that will result in selection of the suggested replacement character string includes inputs that are not associated with a virtual punctuation mark key (when the user touches any one of the suggested replacement character strings 160 or 157, the current character string will be replaced with the selected replacement character string; see Col. 18, lines 52-54; Col. 30, lines 7-24; and Col. 31, lines 8-24).

Application/Control Number: 90/012,892                                      Page 19
Art Unit: 3992

As per claim 35, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches the plurality of possible single touch user inputs that are not associated with a virtual punctuation mark key and that will result in selection of the suggested replacement character string comprises a single touch input through the space bar of the virtual keyboard (see Col. 19, lines 33-37 and Col. 34, lines 35-39).

As per claim 36, Robinson teaches the claimed invention as described above and furthermore, Robinson teaches the plurality of possible single touch user inputs that are not associated with a virtual punctuation mark key and that will result in selection of the suggested replacement character string comprises a single touch input at the location of the displayed suggested replacement character set (see Col. 30, lines 7-24 and Col. 31, lines 8-24).

### 4.2    Ng (Claims 2, 4-6, 8-12, 15 and 17-36)

Claims 2, 4-6, 8-12, 15 and 17-36 are rejected under pre-AIA 35 U.S.C. 102(b) as anticipated by Ng.

This rejection is ADOPTED essentially as proposed in the request.

This rejection was proposed by the third party requester in the request for reexamination (pages 46-103 of the Request and pages 1-51 of Appendix 7, Part A) which is herein incorporated by reference **with additional clarifications** provided by the examiner as follows:

Application/Control Number: 90/012,892                                    Page 20
Art Unit: 3992

As per claims 2 and 18-20, Ng teaches a method, comprising: at a portable electronic device (the handheld device as shown in Figs. 1-8) with a touch screen display:

- in a first area (the area/region where text string 258 is displayed in Fig. 5) of the touch screen display, displaying a current character string being input by a user with the keyboard (i.e. the current character string gets displayed at the cursor/insertion point 258 being input by keyboard 252 in Fig. 5; see p. 16, lines 7-20);

- in a second area (referred to within the disclosure of Ng as a "choice window", "predetermined window", "predetermined choice window" or "display area") of the touch screen display separate from the first area, displaying the current character string (the "deva" word 258 in Fig. 5) or a portion thereof and a suggested replacement character string for the current character string (the "devastating" 254 in Fig. 5; see Fig. 5);

- replacing the current character string in the first area with the suggested replacement character string if the user activates a key on the keyboard associated with a delimiter (i.e. the space key 110 or punctuation or carriage return key; see p. 32, line 30; and p. 33, lines 5 and Fig. 10);

Application/Control Number: 90/012,892                                      Page 21
Art Unit: 3992

- replacing the current character string in the first area with the suggested replacement character string if the user performs a first gesture on the suggested replacement character string displayed in the second area (See p. 18, lines 3-6; p. 22, lines 27-28; and p. 32, lines 23-30); and

- keeping the current character string in the first area if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area (i.e. by selecting 262 by performing a gesture on 262 in the predetermined choice window will keep the string 258 in the first area; see p. 18, lines 3-6; p. 22, lines 27-28; and p. 32, lines 23-30).

Further regarding claim 18, Ng teaches a graphical user interface on a portable electronic device (the handheld device as shown in Figs. 1-8) with a keyboard (252 in Fig. 5) and a touch screen display (see Fig. 5).

Further regarding claim 19, Ng teaches a portable electronic device (the handheld device as shown in Figs. 1-8), comprising: a touch screen display; one or more processors (the CPU with microprocessor); memory (RAM, ROM, hard drive/memory stick/CDROM etc.); and one or more programs (OS inherent), wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors (see p. 15, lines 22-27).

Further regarding claim 20, Ng teaches a computer readable storage medium (the temporary and permanent storage as described on p. 15, lines

Application/Control Number: 90/012,892                                          Page 22
Art Unit: 3992

22-27) storing one or more programs (`OS inherent`), the one or more programs comprising instructions, which when executed by a portable electronic device (`the handheld device as shown in Figs. 1-8`) with a touch screen display cause the portable electronic device to perform steps of claim 2.

As per claim 4, Ng teaches the claimed invention as described above and furthermore, Ng teaches that the key on the keyboard associated with a delimiter is a space bar key (`see p. 32, line 30; and p. 33, lines 5 and Fig. 10`).

As per claim 5, Ng teaches the claimed invention as described above and furthermore, Ng teaches that the delimiter is any of a plurality of predefined delimiters symbols delimiter (`i.e. any of the space key 110 or punctuation or carriage return key; see p. 32, line 30; and p. 33, lines 5 and Fig. 10`).

As per claim 6, Ng teaches the claimed invention as described above and furthermore, Ng teaches that the keyboard is a soft keyboard that is part of the touch screen display (`see p. 1, lines 1-12; p. 16, lines 10-11; and p. 16, lines 11-15`).

As per claim 8, Ng teaches the claimed invention as described above and furthermore, Ng teaches that the character strings are words, numbers, or a combination thereof (`Figure 3a illustrates that the current character string and suggested replacement character strings are words. Ng also discloses that the character strings can be numbers. For example, Ng discloses that "the numeral choice key 360, when`

pressed will show numeral choices on the predetermined window
and another key"; See p. 31, lines 20-23).

As per claim 9, Ng teaches the claimed invention as described above and
furthermore, Ng teaches that in the second area (i.e. the predefined choice
window) of the touch screen display, displaying an alternative suggested replacement
character string (e.g. 264 in Fig. 5) for the current character string (258 in
Fig. 5); and replacing the current character string in the first area with the alternative
suggested replacement character string if the user performs a predefined gesture on the
alternative suggested replacement character string in the second area (i.e.
replacing with the alternative suggested character string, for
example, with "devastate" 264 in Fig. 5, if user performs a
gesture (e.g. by touching/tapping on "devastate" 264); See p.
26, lines 3-4, p. 22, line 22 – p. 23, line 4).

As per claim 10, Ng teaches the claimed invention as described above and
furthermore, Ng teaches about adding the current character string to a dictionary in the
device if the user performs the second gesture on the current character string displayed
in the second area (See p. 8, lines 8-13, p. 23, line 27 - p. 24, line
4).

As per claim 11, Ng teaches the claimed invention as described above and
furthermore, Ng teaches that the first gesture includes one or more taps on the
suggested replacement character string displayed in the second area (See p. 26,
lines 3-4, p. 22, line 22 – p. 23, line 4; p. 32, lines 28-30).

Application/Control Number: 90/012,892                                   Page 24
Art Unit: 3992

   As per claim 12, Ng teaches the claimed invention as described above and furthermore, Ng teaches that the second gesture includes one or more taps on the current character string displayed in the second area (See p. 26, lines 3-4, p. 22, line 22 - p. 23, line 4; p. 32, lines 28-30).

   As per claim 15, Ng teaches the claimed invention as described above and furthermore, Ng teaches, in the second area of the touch screen display, the suggested replacement character string (e.g. 422 in Fig. 7) and the current character string (e.g. 428 in Fig. 7) are on opposite sides of the second area (See Fig. 7).

   As per claim 17, Ng teaches the claimed invention as described above and furthermore, Ng teaches the second area (i.e. the predefined choice window) is between the first area (i.e. the area above area the predefined choice window that displays the inputted text) and the keyboard (252) (See Fig. 5).

   As per claims 21 and 27, Ng teaches a computer readable storage medium (the temporary and/or permanent storage as described on p. 15, lines 22-27) storing one or more programs (OS inherent), the one or more programs comprising instructions, which when executed by a portable electronic device (the handheld device as shown in Figs. 1-8) with a display and a keyboard (252 in Fig. 5), cause the portable electronic device to perform a method comprising:

   - receiving a plurality of user inputs of characters through the keyboard, and displaying on the display a current character string (258 in Fig. 5) as input by the user (see p. 5, lines 7-20 and Fig. 5);

Application/Control Number: 90/012,892                                    Page 25
Art Unit: 3992

- displaying a suggested replacement character string (e.g. `254 in Fig. 5`) for the current character string (`see p. 8, lines 17-20 and Fig. 5`);

- while both the current character string and the suggested replacement string are displayed, receiving a further user input through a punctuation mark key of the keyboard (`e.g. 726 in Fig. 10`) (`see p. 32, line 30 - p. 33, line 5`); and

- in response to the further user input, replacing the current character string with the suggested replacement character string, and appending a punctuation mark at the end of the replacement character string, the punctuation mark corresponding to the punctuation mark key through which the further user input was received (`see p. 32, line 30 - p. 33, line 7`).

<u>Further regarding claim 27</u>, Ng teaches a portable electronic device (`the handheld device as shown in Figs. 1-8`), comprising: one or more processors (`the CPU with microprocessor`); a touch screen display; and computer readable memory (`the temporary and/or permanent storage as described on p. 15, lines 22-27`) comprising instructions that, when executed by the one or more processors, perform operations as recited in claim 21 above.

<u>As per claim 28</u>, Ng teaches a portable electronic device (`the handheld device as shown in Figs. 1-8`), comprising: one or more processors (`the CPU with microprocessor`); a display (`as shown in Fig. 1-8`); a keyboard (`252 in Fig. 5`); and computer readable memory (`the temporary and/or permanent`

Application/Control Number: 90/012,892                                    Page 26
Art Unit: 3992

storage as described on p. 15, lines 22-27) comprising instructions that,

when executed by the one or more processors, perform operations comprising:

- receiving a plurality of user inputs of characters through the keyboard, and
  displaying on the display a current character string (258 in Fig. 5) as input
  by the user (see p. 5, lines 7-20 and Fig. 5),

- displaying on the display a suggested replacement character string (e.g. 254
  in Fig. 5) for the current character string (see p. 8, lines 17-20 and
  Fig. 5), and

- receiving a further user input of a single touch (i.e. by
  touching/selecting 254 in Fig. 5), wherein the portable electronic
  device is configured to receive the further single user input to perform a selected
  character string function of a plurality of possible character string functions
  depending on where the further single user input is received (i.e. user
  selects one of 254, 262 and 264; see p. 32, line 30 – p.
  33, line 5), the plurality of possible character string functions comprising,

- replacing the current character string (258) with the suggested replacement
  character string (e.g. 254) in response to a single user input at a first location
  (i.e. touching/tapping on 254; see p. 22, line 27 – p. 23,
  line 1),

- replacing the current character string with the suggested replacement character
  string in combination with a first punctuation in response to a single user input at
  a second location, the second location being a first punctuation mark key on the

Application/Control Number: 90/012,892                                    Page 27
Art Unit: 3992

keyboard corresponding to the first punctuation mark (see p. 32, line 30 –

p. 33, line 7),

- replacing the current character string with the suggested replacement character

string in combination with a second punctuation mark (i.e. any other

punctuation marks on keyboard 252 other than the first

punctuation mark) in response to a single user input at a third location, the

third location being a second punctuation mark key on the keyboard

corresponding to the second punctuation mark (see p. 32, line 30 – p.

33, line 7), and

- accepting the current character string in response to a single user input at a

fourth location (i.e. touching/tapping on 262 in Fig. 5).

    As per claim 22, Ng teaches the claimed invention as described above and

furthermore, Ng teaches the punctuation mark key corresponds to a punctuation mark

selected from the group consisting essentially of a comma, a period, an exclamation

point, a question mark, and a semicolon (i.e. the keyboard 252 includes

punctuation marks comma, period and semicolon; see Fig. 5).

    As per claims 23 and 29, Ng teaches the claimed invention as described above

and furthermore, Ng teaches display is a touch screen display, and wherein the

keyboard is a virtual keyboard (i.e. the keyboard 252 in Fig. 5) displayed on

the touch screen display (see p. 1, lines 1-12; and p. 16, lines 10-11).

    As per claims 24 and 30, Ng teaches the claimed invention as described above

and furthermore, Ng teaches the virtual keyboard (keyboard 252 in Fig. 5)

Application/Control Number: 90/012,892                                    Page 28
Art Unit: 3992

comprises a display that simultaneously displays a first plurality of virtual keys (i.e.
the keys of 26 letters of English alphabet in Fig. 5) each
associated with a respective letter of the alphabet, and a second plurality of virtual
punctuation mark keys (i.e. keys associated with comma, period and
semicolon as shown in Fig. 5) each corresponding to a respective punctuation
mark (see Fig. 5).

As per claims 25 and 31, Ng teaches the claimed invention as described above
and furthermore, Ng teaches the plurality of virtual punctuation mark keys comprises a
first virtual punctuation mark key corresponding to a comma and a second virtual
punctuation mark key corresponding to a period (see Fig. 5).

As per claim 26, Ng teaches the claimed invention as described above and
furthermore, Ng teaches that displaying a suggested replacement character string for
the current character string comprises displaying a single suggested replacement
character string (i.e. 204; see Fig. 4).

As per claim 32, Ng teaches a portable electronic device (the handheld
device as shown in Figs. 1-8), comprising: one or more processors (the CPU
with microprocessor); a touch screen display; and computer readable memory
(the temporary and/or permanent storage as described on p. 15,
lines 22-27) comprising instructions that, when executed by the one or more
processors, perform operations comprising,

-    receiving a plurality of user inputs of characters through a virtual keyboard (252
     in Fig. 5) that simultaneously displays a first plurality of virtual keys (i.e.

the keys of 26 letters of English alphabet in Fig. 5) each associated with a respective letter of the alphabet, and a second plurality of virtual punctuation mark keys (i.e. keys associated with comma, period and semicolon as shown in Fig. 5) each corresponding to a respective punctuation mark (see p. 5, lines 7-20 and Fig. 5),

- displaying on the touch screen display a current character string as input by the user (e.g. 258 in Fig. 5),

- displaying on the display a suggested replacement character string (e.g. 254 in Fig. 5) for the current character string (see p. 8, lines 17-20 and Fig. 5),

- in response to a first user input at a first location (i.e. touching/tapping on 254), replacing the current character string (258) with the suggested replacement character string (e.g. 254) (see p. 22, line 27 - p. 23, line 1),

- in response to a second user input at a virtual punctuation mark key corresponding to a first punctuation mark, replacing the current character string with the suggested replacement character string in combination with the first punctuation mark (see p. 32, line 30 - p. 33, line 7), and

- in response to a third user input at a third location, accepting the current character string (i.e. touching/tapping on 262 in Fig. 5).

As per claim 33, Ng teaches a computer readable storage medium (the temporary and/or permanent storage as described on p. 15, lines

Application/Control Number: 90/012,892                                    Page 30
Art Unit: 3992

`22-27)` storing one or more programs (`OS inherent`), the one or more programs

comprising instructions, which when executed by a portable electronic device (`the`

`handheld device as shown in Figs. 1-8`) with a touch screen display, cause

the portable electronic device to perform a method comprising:

- receiving a plurality of user character inputs through the touch screen display of

    the portable electronic device, wherein the user character inputs are received

    through a virtual keyboard (`252 in Fig. 5`) displayed on the touch screen,

    wherein the virtual keyboard simultaneously displays a first plurality of virtual

    keys (`i.e. the keys of 26 letters of English alphabet in Fig.`

    `5`) each associated with a respective letter of the alphabet, and a second plurality

    of virtual punctuation mark keys (`i.e. keys associated with comma,`

    `period and semicolon as shown in Fig. 5;` see `p. 5, lines 7-20`

    `and Fig. 5`);

- displaying on the touch display a current character string as input by a user

    (`e.g. 258 in Fig. 5`);

- while displaying the current character string (`e.g. 258 in Fig. 5`), also

    displaying a suggested replacement character string (e.g. `254 in Fig. 5`) for

    the current character string (`see p. 8, lines 17-20 and Fig. 5`),

    wherein at the time a suggested replacement character string is displayed, the

    portable electronic device is able to receive a plurality of possible user single

    touch inputs (`e.g. space or carriage return or period,`

    `semicolon, or comma key input`) that will result in selection of the

Application/Control Number: 90/012,892                                      Page 31
Art Unit: 3992

suggested replacement character string, and wherein said plurality of possible user single touch inputs includes actuation of one of the plurality of virtual punctuation mark keys (see p. 32, line 30 - p. 33, line 7);

- receiving a single touch user selection input through one of the plurality of the virtual punctuation mark key (e.g. space key); and in response to the single touch user selection input, replacing the current character set with the suggested replacement character set and adding at the end of said character set a punctuation mark corresponding to the virtual punctuation mark key through which the input was received (see p. 32, line 30 - p. 33, line 7).

As per claim 34, Ng teaches the claimed invention as described above and furthermore, Ng teaches the plurality of possible single touch user inputs that will result in selection of the suggested replacement character string includes inputs that are not associated with a virtual punctuation mark key (when the user touches any one of the suggested replacement character strings 254 or 264, or touching/tapping space bar key or carriage return key, the current character string will be replaced with the selected replacement character string; see p. 32, line 30 - p. 33, line 7 and Fig. 10).

As per claim 35, Ng teaches the claimed invention as described above and furthermore, Ng teaches the plurality of possible single touch user inputs that are not associated with a virtual punctuation mark key and that will result in selection of the suggested replacement character string comprises a single touch input through the

Application/Control Number: 90/012,892                                    Page 32
Art Unit: 3992

space bar of the virtual keyboard (see p. 32, line 30 – p. 33, line 7 and Fig. 10).

As per claim 36, Ng teaches the claimed invention as described above and furthermore, Ng teaches the plurality of possible single touch user inputs that are not associated with a virtual punctuation mark key and that will result in selection of the suggested replacement character string comprises a single touch input at the location of the displayed suggested replacement character set (see p. 26, lines 3-4; p. 22, lines 27-28).

### 4.3    King (Claims 1-6, 8-15 and 17-38)

Claims 1-6, 8-15 and 17-38 are rejected under pre-AIA 35 U.S.C. 102(b) as anticipated by King.

This rejection is ADOPTED essentially as proposed in the request.

This rejection was proposed by the third party requester in the request for reexamination (pages 135-193 of the Request and pages 1-56 of Appendix 7, Part D) which is herein incorporated by reference.

## 5.0   CLAIM REJECTIONS – 35 USC § 103

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which

said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

### 5.1    Robinson (Claims 25 and 37-38)

Claims 25 and 37-38 are rejected under pre-AIA 35 U.S.C. 103(a) as obvious over Robinson.

As per claims 37 and 38, Robinson teaches the claimed invention as described in the rejection of claim 33 above and furthermore, Robinson teaches the plurality of virtual punctuation mark keys comprises virtual punctuation mark keys associated respectively with a period and an apostrophe (as shown in Fig. 3, the virtual punctuation mark keys corresponds to a period and apostrophe). However, Robinson failed to teach the plurality of virtual punctuation mark keys further comprises virtual punctuation mark keys respectively associated with a comma, an exclamation point and a semicolon.

Robinson, at Col. 14, lines 2-8, explains "[a]nother advantage is the system also accommodates punctuation characters such as a hyphen or apostrophe that are commonly embedded in words such as hyphenated compounds and contractions in English.  Such embedded punctuation characters can be associated with one or more keys or character locations included among those associated with alphabetic characters." Similarly, Robinson also discloses that "punctuation characters can be associated with one or more keys or character locations included in the auto-correcting keyboard among those associated with alphabetic characters." (See Col. 17, lines 62-65).  It would have been a logical and simple design choice for one of ordinary skill in the art to provide a virtual keyboard that includes a plurality of virtual punctuation mark

keys, including virtual punctuation mark keys associated with a comma, an exclamation

point and a semicolon, on the device disclosed in Robinson. One of ordinary skill in the

art would have been motivated to provide this keyboard arrangement for a number of

reasons, including to provide users access to commonly used punctuation marks while

entering textual input and to facilitate a rapid and accurate manner of entering text on a

portable electronic device. In fact, this keyboard arrangement is found on many input

devices including standard QWERTY computer keyboards.

As per claim 25, refer rejection of claim 37 above.  Claims 25 is also rejected

based on same rationale as the rejection of claim 37.


### *5.2    Ng (Claim 38)*

Claim 38 is rejected under pre-AIA 35 U.S.C. 103(a) as obvious over Ng.

As per claim 38, Ng teaches the claimed invention as described in the rejection

of claim 37 above and furthermore, Ng teaches the plurality of virtual punctuation mark

keys comprises virtual punctuation mark key associated with a semicolon (`as shown`

`in Figs. 1-5`).  However, Ng failed to teach the plurality of virtual punctuation mark

keys further comprises virtual punctuation mark key associated with an exclamation

point.

Robinson, at page 31, lines 17-25, explains "[t]o complete the reduced keyboard

system with the choice method would be to allow for input of numerals and punctuations

and symbols. This is also done using the choice method. If additional keys are possible

(e. g. soft keyboard on a screen input surface), then 2 additional keys can be included

as shown in FIG. 6. One key, the numeral choice key 360, when pressed will show numeral choices on the predetermined window and another key, the symbols and punctuation key 362, when pressed will show punctuation and symbol choices on the predetermined window." It would have been a logical and simple design choice for one of ordinary skill in the art to provide a virtual keyboard that includes a plurality of virtual punctuation mark keys, including virtual punctuation mark keys associated with an exclamation point on the device disclosed in Ng. One of ordinary skill in the art would have been motivated to provide this keyboard arrangement for a number of reasons, including to provide users access to commonly used punctuation marks while entering textual input and to facilitate a rapid and accurate manner of entering text on a portable electronic device. In fact, this keyboard arrangement is found on many input devices including standard QWERTY computer keyboards.

### 5.3    Robinson in view of King or Ng (Claims 1, 13-14, 17, 25 and 37)

Claims 1, 13-14, 17, 25 and 37 are rejected under pre-AIA 35 U.S.C. 103(a) as obvious over Robinson in view of King.

Claims 1, 17, 25 and 37 are rejected under pre-AIA 35 U.S.C. 103(a) as obvious over Robinson in view of Ng.

As per claim 1, Robinson teaches a method, comprising: at a portable electronic device (`the palmtop portable computer 102 in Fig. 1A`) with a touch screen display (`103 in Fig. 1A`):

Application/Control Number: 90/012,892                                Page 36
Art Unit: 3992

- in a first area (the output text region 104 in Fig. 1A) of the touch
  screen display, displaying a current character string being input by a user with
  the keyboard (i.e. the current character string gets displayed
  at the cursor/insertion point 107 in Fig. 1A (Note: The
  insertion point 107 is mistakenly labeled as 106 in Fig.
  1A); "As a user enters a keystroke sequence using the
  keyboard [105], text is displayed on the computer display
  103"; see Col. 16, lines 51-67 and Fig. 1A);

- in a second area (the word choice list region 150 in Fig. 1B) of
  the touch screen display, displaying the current character string or a portion
  thereof (the "Exact type" word 154 in Fig. 1B) and a suggested
  replacement character string (the "Default word" 160 in Fig. 1B) for
  the current character string on opposite sides of the second area (i.e. 154
  and 160 are on opposite sides of 150 as shown in Fig. 1B);

- replacing the current character string in the first area with the suggested
  replacement character string if the user activates a space bar key on the
  keyboard (i.e. the space key 110; see Col. 19, lines 33-37;
  and Col. 34, lines 35-39);

- replacing the current character string in the first area with the suggested
  replacement character string if the user performs a first gesture on the suggested
  replacement character string displayed in the second area (i.e. replacing
  with the suggested character string, for example, with

"text" 160 in Fig. 1B, if user performs first gesture (e.g. by touching/tapping on "text" 160 in the 150); See Col. 18, lines 52-54, Col. 31, lines 8-24, Col. 23, lines 6-30); and

- keeping the current character string in the first area and adding a space if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area (i.e. keeping the current character string, for example, "rwzt" 154 in Fig. 1B, and adding a trailing blank space if user performs second gesture (e.g. by touching/tapping on "rwzt" 154 in the 150 in specific regions/columns); See Col. 18, lines 52-58; Col. 31, lines 8-24; Col. 23, lines 6-30; and Col. 30, lines 31-48).

Robinson teaches the second area (150) is overlapping the first area (104; see Col. 16, lines 58-62 and Fig. 1B) but failed to teach the second area is between the first area and the keyboard.

However, King and Ng, each taken individually, teaches a second area (the selection list region 70 in Fig. 1A of King; shown in Fig. 5 of Ng and referred to within the disclosure of Ng as a "choice window", "predetermined window", "predetermined choice window" or "display area") of the touch screen display (53 in Fig. 1A of King; touch screen display of a handheld device 250 in Fig. 5 of Ng) that is between the first area (the upper text region 66 in Fig. 1A of King)

and the keyboard (the reduced keyboard 54 in Fig. 1A of King; the keyboard 252 in Fig. 5 of Ng)(see Fig. 1A and 5 of King and Ng, respectively).

It would have been obvious to one of ordinary skills in the art at the time of the current invention was made to display a second area on a portable device that is separate from a first area and which is located between the first area and a keyboard, as taught in King and Ng, each taken individually, on the device disclosed in Robinson. One of ordinary skill in the art would have been motivated to provide this display for a number of reasons, including to avoid obscuring the first area which displays the inputted text and to enable users to easily access replacement character strings located in the second area while entering textual input. There would be a limited number of locations for displaying the second area, and the most convenient location would be the location between the first area and the keyboard in order to minimize diversion of the user's eyesight. Such a modification is nothing more than a predictable use of elements known in the art. In addition, Robinson discloses that one of the primary motivations surrounding the invention therein is to facilitate rapid and accurate text entry on a portable electronic device. (See Col. 1, lines 18-27; Col. 2, line 61 - Col. 3, line 10; and Col. 13, lines 34-49). Therefore, Robinson explicitly lays out the motivation for its modification with King and Ng, each taken individually. The mere fact that King and Ng, each taken individually, discloses a second area which is located between a first area and a virtual keyboard represents an obvious design

Application/Control Number: 90/012,892                                              Page 39
Art Unit: 3992

choice. Accordingly, it would have been obvious to one of ordinary skill in the art to combine the teachings of Robinson with those of King and Ng, each taken individually.

As per claims 13 and 14, Robinson teaches the claimed invention as described in the rejection of claim 2 above but failed to specifically disclose that after replacing the current character string in the first area with the suggested replacement character string, displaying the current character string in place of the suggested replacement character string in the first area if the user performs a third gesture on the suggested replacement character string in the first area, wherein the third gesture comprises a tap gesture or a hover gesture.

King, however, teaches when a user, in an editing mode that entered via the Edit key, selects a word to edit by touching the desired word, the same selection list 76 gets generated that was presented to the user at the time when the edited word was added to the text region 66. Once the user selects a word from the selection list 76, the selected word replaced the original displayed word (see Col. 24, lines 16-56). Therefore, in the case when the user selects the current character string (78) from the re-created selection list (76) in the editing mode, the current character string is displayed in place of the suggested replacement character string in the first area (66) and this occurs after a third gesture is performed on the suggested replacement character string in the first area (66) (Note: This occurs after the user selects a word in the first area for editing by touching the desired word).  Accordingly, King teaches or suggests displaying the current character string in place of the suggested replacement character string in the first area (66) if the user performs a third gesture (e.g., a tap or

Application/Control Number: 90/012,892                                    Page 40
Art Unit: 3992

touch gesture) on the suggested replacement character string in the first area (66) <u>after</u> replacing the current character string in the first area (66) with the suggested replacement character string.

It would have been obvious to one of ordinary skill in the art to display a current character string in place of the suggested replacement character string if a user performs a gesture (i.e. the tap gesture) on the suggested replacement character string in the first area after the suggested replacement character string is used to replace the current character string, as taught in King, on the device disclosed in Robinson. One of ordinary skill in the art would have been motivated to provide this functionality for a number of reasons, including enabling users to edit text that has been entered on a portable electronic device using an "undo" feature that is available on most word processing systems.  The particular manner of editing text as taught by King represents an obvious design choice.  Accordingly, it would have been obvious to one of ordinary skill in the art to combine the teachings of Robinson with those of King.

<u>As per claim 17</u>, Robinson teaches the second area (150) is overlapping the first area (104; see Col. 16, lines 58-62 and Fig. 1B) as described in the rejection of claim 2 above but failed to teach the second area is between the first area and the keyboard.

However, King and Ng, each taken individually, teaches a second area (the selection list region 70 in Fig. 1A of King; shown in Fig. 5 of Ng and referred to within the disclosure of Ng as a "choice window", "predetermined window", "predetermined choice window"

Application/Control Number: 90/012,892                              Page 41
Art Unit: 3992

or "display area") of the touch screen display (53 in Fig. 1A of King; touch screen display of a handheld device 250 in Fig. 5 of Ng) that is between the first area (the upper text region 66 in Fig. 1A of King) and the keyboard (the reduced keyboard 54 in Fig. 1A of King; the keyboard 252 in Fig. 5 of Ng) (see Fig. 1A and 5 of King and Ng, respectively).

It would have been obvious to one of ordinary skills in the art at the time of the current invention was made to display a second area on a portable device that is separate from a first area and which is located between the first area and a keyboard, as taught in King and Ng, each taken individually, on the device disclosed in Robinson. One of ordinary skill in the art would have been motivated to provide this display for a number of reasons, including to avoid obscuring the first area which displays the inputted text and to enable users to easily access replacement character strings located in the second area while entering textual input. There would be a limited number of locations for displaying the second area, and the most convenient location would be the location between the first area and the keyboard in order to minimize diversion of the user's eyesight. Such a modification is nothing more than a predictable use of elements known in the art. In addition, Robinson discloses that one of the primary motivations surrounding the invention therein is to facilitate rapid and accurate text entry on a portable electronic device. (See Col. 1, lines 18-27; Col. 2, line 61 - Col. 3, line 10; and Col. 13, lines 34-49). Therefore, Robinson explicitly lays out the motivation for its modification with King and Ng, each taken individually.

The mere fact that King and Ng, each taken individually, discloses a second area which is located between a first area and a virtual keyboard represents an obvious design choice. Accordingly, it would have been obvious to one of ordinary skill in the art to combine the teachings of Robinson with those of King and Ng, each taken individually.

As per claim 37, Robinson teaches the claimed invention as described in the rejection of claim 33 above and furthermore, Robinson teaches the plurality of virtual punctuation mark keys comprises virtual punctuation mark key associated with a period (as shown in Fig. 3, the virtual punctuation mark key corresponds to a period). However, Robinson failed to teach the plurality of virtual punctuation mark keys comprises virtual punctuation mark key associated with a comma.

King and Ng, each taken individually, teaches the plurality of virtual punctuation mark keys comprises virtual punctuation mark keys respectively associated with a period and a comma (see Fig. 7 of King; Fig. 5 of Ng). It would have been obvious to one of ordinary skill in the art to provide a virtual keyboard that includes a plurality of virtual punctuation mark keys, including virtual punctuation mark key associated with a comma, as taught in King and Ng, each taken individually, on the device disclosed in Robinson. One of ordinary skill in the art would have been motivated to provide this keyboard arrangement for a number of reasons, including to provide users access to commonly used punctuation marks while entering textual input and to facilitate a rapid and accurate manner of entering text on a portable electronic device. In fact, a comma is provided on many input devices including standard QWERTY computer keyboards. Moreover, Robinson discloses that one of the primary motivations

Application/Control Number: 90/012,892                                    Page 43
Art Unit: 3992

surrounding the invention therein is to facilitate rapid and accurate text entry in a simplified manner on a portable electronic device (See Col. 1, ll. 18-27; Col. 2, line 61-Col. 3, line 10; and Col. 13, lines 34-49). Therefore, Robinson explicitly lays out the motivation for its modification with King and Ng, each taken individually. In addition, each of Robinson, King and Ng relate to providing a keyboard on a small electronic device that has a touch screen display (See Robinson at Abstract; col. 1, lines 8-16; see also King at Abstract; col. 8, lines 45-63; and Ng at the paragraph bridging between pages 14-15). Like King and Ng, Robinson also discloses a virtual keyboard that displays a plurality of keys associated with alphabetic characters and a plurality of keys associated with punctuation marks (See Fig. 3 of Robinson). Providing a virtual keyboard in the manner disclosed in King and Ng, each taken individually, represents an obvious design choice. Accordingly, it would have been obvious to one of ordinary skill in the art to combine the teachings of Robinson with those of King and Ng, each taken individually.

As per claim 25, refer rejection of claim 37 above.  Claims 25 is also rejected based on same rationale as the rejection of claim 37.

### *5.4    Ng in view of Robinson (Claims 1 and 3)*

Claims 1 and 3 are rejected under pre-AIA 35 U.S.C. 103(a) as obvious over Ng in view of Robinson.

This rejection is ADOPTED essentially as proposed in the request.

Application/Control Number: 90/012,892                                        Page 44
Art Unit: 3992

This rejection was proposed by the third party requester in the request for reexamination (pages 103-125 of the Request and pages 1-17 and 20-26 of Appendix 7, Part B) which is herein incorporated by reference with additional clarifications provided by the examiner as follows:

As per claims 1 and 3, Ng teaches the claimed invention as described in the rejection of claim 2 above and furthermore, Ng teaches the second area (shown in Fig. 5 of Ng and referred to within the disclosure of Ng as a "choice window", "predetermined window", "predetermined choice window" or "display area") of the touch screen display (touch screen display of a handheld device 250 in Fig. 5 of Ng) that is between the first area (i.e. the area above area the predefined choice window that displays the inputted text) and the keyboard (the keyboard 252 in Fig. 5 of Ng) (see Fig. 5 of Ng). Ng further teaches in the second area of the touch screen display, the suggested replacement character string (e.g. 422 in Fig. 7) and the current character string (e.g. 428 in Fig. 7) are on opposite sides of the second area (See Fig. 7).

However, Ng failed to specifically disclose about adding a space after the current character string if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area. Robinson, on the other hand, teaches adding a space after the current character string if the user performs a second gesture in the second area on the current character string or the portion thereof displayed in the second area (i.e. keeping the current

Application/Control Number: 90/012,892                                    Page 45
Art Unit: 3992

character string, for example, "rwzt" 154 in Fig. 1B, and adding
a trailing blank space if user performs second gesture (e.g. by
touching/tapping on "rwzt" 154 in the 150 in specific
regions/columns); See Col. 18, lines 52-58; Col. 31, lines 8-24;
Col. 23, lines 6-30; and Col. 30, lines 31-48).

It would have been obvious to one of ordinary skill in the art to combine the
teachings of Ng with those of Robinson. In particular, it would have been obvious to one
of ordinary skill in the art to keep a current character string in the first area and to add a
space to a current character string in response to a user performing a gesture on the
current character string as taught in Robinson in order to confirm the entry of the current
character string in Ng and to allow the user to immediately begin entry of the following
word without having to press the space key. One of ordinary skill in the art would have
been motivated to confirm an entry and add a space in this manner for a number of
reasons, including to provide a quick and efficient mechanism for entering text on a
portable electronic device, which would allow a user to easily confirm text and
immediately begin entry of the following word without having to press the space key. In
fact, Ng discloses that one of the primary motivations surrounding the invention therein
is to facilitate rapid and efficient text entry in a simplified manner on a portable
electronic device (see p. 1, lines 1-6; and p. 33, lines 9-24). Therefore,
Ng explicitly lays out the motivation for its modification with Robinson. Both Ng and
Robinson relate to providing a keyboard on a small electronic device that has a touch
screen display, and both references are particularly directed to predicting alternative

Application/Control Number: 90/012,892                                                    Page 46
Art Unit: 3992

textual interpretations of user inputs and displaying suggested replacement strings to a
user (See Robinson at Abstract; col. 1, lines 8-16; see also Ng at
Abstract; p. 21, line 11 - p. 24, line 9). Like Robinson, Ng also
discloses appending a space in response to selecting a word for output to a display
area (See Ng at p. 32, line 23 - p. 33, line. 7 and Fig. 10).
Moreover, adding a space to the selected current character string amounts to using a
known method/technique (taught by Robinson) to yield a predictable result (i.e., adding
a whitespace to a selected word to permit a user to begin typing the next word) which is
taught by both Robinson and Ng.  Accordingly, it would have been obvious to one of
ordinary skill in the art to combine the teachings of Ng with those of Robinson.


### *5.5    Ng in view of King (Claims 13-14 and 38)*

Claims 13-14 and 38 are rejected under pre-AIA 35 U.S.C. 103(a) as obvious
over Ng in view of King.

This rejection is ADOPTED essentially as proposed in the request.

This rejection was proposed by the third party requester in the request for
reexamination (pages 125-135 of the Request and pages 1-12 of Appendix 7, Part C)
which is herein incorporated by reference with additional clarifications provided by the
examiner as follows:

As per claims 13 and 14, Ng teaches the claimed invention as described in the
rejection of claim 2 in the Request and Claim chart but failed to specifically disclose that
after replacing the current character string in the first area with the suggested

Application/Control Number: 90/012,892                                    Page 47
Art Unit: 3992

replacement character string, displaying the current character string in place of the suggested replacement character string in the first area if the user performs a third gesture on the suggested replacement character string in the first area, wherein the third gesture comprises a tap gesture or a hover gesture.

King, however, teaches when a user, in an editing mode that entered via the Edit key, selects a word to edit by touching the desired word, the same selection list 76 gets generated that was presented to the user at the time when the edited word was added to the text region 66. Once the user selects a word from the selection list 76, the selected word replaced the original displayed word (see Col. 24, lines 16-56). Therefore, in the case when the user selects the current character string (78) from the re-created selection list (76) in the editing mode, the current character string is displayed in place of the suggested replacement character string in the first area (66) and this occurs after a third gesture is performed on the suggested replacement character string in the first area (66) (Note: This occurs after the user selects a word in the first area for editing by touching the desired word).  Accordingly, King teaches or suggests displaying the current character string in place of the suggested replacement character string in the first area (66) if the user performs a third gesture (e.g., a tap or touch gesture) on the suggested replacement character string in the first area (66) after replacing the current character string in the first area (66) with the suggested replacement character string.

It would have been obvious to one of ordinary skill in the art to display a current character string in place of the suggested replacement character string if a user

performs a gesture (i.e. the tap gesture) on the suggested replacement character string
in the first area after the suggested replacement character string is used to replace the
current character string, as taught in King, on the device disclosed in Ng. One of
ordinary skill in the art would have been motivated to provide this functionality for a
number of reasons, including enabling users to edit text that has been entered on a
portable electronic device using an "undo" feature that is available on most word
processing systems.  The particular manner of editing text as taught by King represents
an obvious design choice.  Accordingly, it would have been obvious to one of ordinary
skill in the art to combine the teachings of Ng with those of King.

### _5.6    King in view of Robinson (Claims 1-3, 10, 18-20, 24-25, 30, 32-33 and 37-38)_

Claims 1-3, 10, 18-20, 24-25, 30, 32-33 and 37-38 are rejected under pre-AIA 35
U.S.C. 103(a) as obvious over King in view of Robinson.

This rejection is ADOPTED essentially as proposed in the request.

This rejection was proposed by the third party requester in the request for
reexamination (pages 193-256 of the Request and pages 1-77 of Appendix 7, Part E)
which is herein incorporated by reference.

Application/Control Number: 90/012,892                                                    Page 49
Art Unit: 3992

## 6.0     CONCLUSION

➤  Claims 1-6, 8-15 and 17-38 are rejected.


_Extensions of Time_

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that _ex parte_ reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

_Amendment in Reexamination Proceedings_

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR § 1.52(a) and (b), and must contain any fees required by 37 CFR § 1.20(c).  See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

_**37 CFR § 1.530**_ under "Statement by patent owner in ex parte reexamination; amendment by patent owner in ex parte or inter partes reexamination" states:

_"(e) Status of claims and support for claim changes.  Whenever there is an amendment to the claims pursuant to paragraph (d) of this section, there must also be supplied, on pages separate from the pages containing the changes, the status (i.e., pending or canceled), as of the date of the amendment, of all patent_

*claims and of all added claims, and an explanation of the support in the
disclosure of the patent for the changes to the claims made by the amendment
paper.*"

In order to ensure full consideration of any amendments, affidavits or
declarations, or other documents as evidence of patentability, such documents must be
submitted in response to this Office action.

### Submissions

If the patent owner fails to file a timely and appropriate response to any Office
action or any written statement of an interview required under 37 CFR  § 1.560(b), the
*ex parte* reexamination proceeding will be terminated, and the Director will proceed to
issue a certificate under 37 CFR §1.570 in accordance with the last Office action.

### Service of Papers

After the filing of a request for reexamination by a third party requester, any
document filed by either the patent owner or the third party requester must be served on
the other party (or parties where two or more third party requester proceedings are
merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248.  See
37 CFR 1.550(f).

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 CFR
1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

Application/Control Number: 90/012,892                                         Page 51
Art Unit: 3992

proceeding, involving Patent No. 8,074,172 throughout the course of this reexamination

proceeding.  The third party requester is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding.  See MPEP §§ 2207, 2282 and 2286.


### *Correspondence relating to this ex parte reexamination*

    **All** correspondence relating to this *ex parte* reexamination proceeding should be

directed:

    By Mail to:   Mail Stop *Ex Parte* Reexam
                       Central Reexamination Unit
                       Commissioner for Patents
                       United States Patent & Trademark Office
                       P.O. Box 1450
                       Alexandria, VA 22313-1450

    By FAX to:  (571) 273-9900
                       Central Reexamination Unit

    By hand:     Customer Service Window
                       Randolph Building
                       401 Dulany Street
                       Alexandria, VA 22314

    Registered users of EFS-Web may alternatively submit such correspondence via the

electronic                   filing                   system              EFS-Web,                   at

https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html. EFS-Web offers the

benefit of quick submission to the particular area of the Office that needs to act on the

correspondence. Also, EFS-Web submissions are "soft scanned" (i.e., electronically

uploaded) directly into the official file for the reexamination proceeding, which offers

Application/Control Number: 90/012,892                                      Page 52
Art Unit: 3992

parties the opportunity to review the content of their submissions after the "soft

scanning" process is complete.

Any inquiry concerning this communication should be directed to Hetul Patel at

telephone number 571-272-4184.


/HETUL PATEL/
Primary Examiner, Art Unit 3992


**Conferees:**

/JAMES MENEFEE/
Primary Examiner, Art Unit 3992

/SUDHANSHU PATHAK/
Supervisory Patent Examiner, Art Unit 3992

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012892 | 8074172 |
| | **Examiner** | **Art Unit** |
| | HETUL PATEL | 3992 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| None | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Reviewed the prosecution history of the '172 patent | 7/22/2013 | HBP |
| Reviewed the prosecution history of the '172 patent | 7/29/2014 | /HBP/ |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90012892 | 8074172 |
| | Certificate Date | Certificate Number |
| | | |

| Requester Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|

BRYAN CAVE LLP
1290 AVENUE OF THE AMERICAS
NEW YORK, NY  10104

| LITIGATION REVIEW ☒ | /HBP/ (examiner initials) | 07/26/2013 (date) |
|---|---|---|
| Case Name | | Director Initials |
| 5:12CV630 - OPEN | | |
| | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| TYPE OF PROCEEDING | NUMBER |
| 1.  None | |
| | |
| | |
| | |

| | |
|---|---|
| | |

| DOC. CODE **RXFILJKT**