1
2
3
4
5
6
7
8

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>        Plaintiff and Counterdefendant,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants and Counterclaimants. | Case No.: 12-CV-00630-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW<br><br>[PUBLIC REDACTED VERSION] |

On May 5, 2014, after a thirteen-day trial and approximately four days of deliberation, a jury in this patent case reached a verdict. ECF No. 1884. On May 23, 2014, Apple filed a motion for judgment as a matter of law, amended judgment, new trial, and damages enhancements. ECF No. 1897-3 ("Mot."). On June 6, 2014, Samsung filed an opposition. ECF No. 1906 ("Opp'n"). On June 13, 2014, Apple filed a reply. ECF No. 1919 ("Reply"). The Court held a hearing on the post-trial motions on July 10, 2014. Having considered the law, the record, and the parties' arguments, the Court GRANTS Apple's request for judgment as a matter of law of non-infringement of claim 15 of the '239 patent with respect to Apple's iPad products, GRANTS Apple's request for

1

1  supplemental damages and prejudgment interest, and DENIES Apple's motion for judgment as a

2  matter of law in all other respects.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 50 permits a district court to grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law after a jury verdict must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). The Court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (internal quotations and citations omitted).

A new trial is appropriate under Rule 59 "only if the jury verdict is contrary to the clear weight of the evidence." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010). A court should grant a new trial where necessary "to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

## II.  ANALYSIS

### A.  Infringement of Claim 8 of the '721 Patent by Samsung's Galaxy S II Products

Apple moves for judgment as a matter of law that Samsung's accused Galaxy S II products infringe claim 8 of the '721 patent or, in the alternative, for a new trial on infringement and damages for those products. Mot. at 3. The '721 patent discloses unlocking a portable electronic device by using a predetermined gesture on a touch-sensitive screen. *See generally* '721 Patent col.1. The '721 patent targeted the problem of "unintentional activation or deactivation of functions due to unintentional contact with the touch screen" in portable devices. *Id.* Apple asserted claim 8 of the '721 patent against Samsung. Claim 8 depends from claim 7. Both claims recite:

7. A portable electronic device, comprising:
a touch-sensitive display;

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

memory;

one or more processors; and

one or more modules stored in the memory and configured for execution by the one
or more processors, the one or more modules including instructions:

to detect a contact with the touch-sensitive display at a first predefined location
corresponding to an unlock image;

to continuously move the unlock image on the touch-sensitive display in accordance
with movement of the detected contact while continuous contact with the
touch-sensitive display is maintained, wherein the unlock image is a
graphical, interactive user-interface object with which a user interacts in
order to unlock the device; and

to unlock the hand-held electronic device if the unlock image is moved from the
first predefined location on the touch screen to a predefined unlock region on
the touch-sensitive display.

8. The device of claim 7, further comprising instructions to display visual cues to
communicate a direction of movement of the unlock image required to
unlock the device.

Apple accused six Samsung phones of infringing the '721 patent. For the Admire, Galaxy Nexus,

and Stratosphere, Apple accused the "slide to unlock" feature in those phones. For the Galaxy S II,

Galaxy S II Epic 4G Touch, and Galaxy S II Skyrocket ("Galaxy S II products"), Apple accused

only the "slide to answer" feature.[1]  While the jury found that the Admire, Galaxy Nexus, and

Stratosphere infringe claim 8, the jury found that the Galaxy S II products do not infringe. ECF No.

1884 at 5. The Court DENIES Apple's motion, as explained below.

"To prove infringement, the plaintiff bears the burden of proof to show the presence of

every element or its equivalent in the accused device." *Uniloc USA, Inc. v. Microsoft Corp.*, 632

F.3d 1292, 1301 (Fed. Cir. 2011). "If any claim limitation is absent from the accused device, there

is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d

1241, 1247 (Fed. Cir. 2000). Accordingly, the jury needed to identify only one limitation missing

from the accused products to reach its verdict.

The sole dispute between the parties here is whether a reasonable jury could have found

that Samsung's "slide to answer" features do not infringe, but that the "slide to unlock" features do

infringe. At trial, Apple's expert Dr. Andrew Cockburn testified that the "slide to answer"

---

[1] After the July 10, 2014 hearing, and without permission from the Court, Apple filed additional
exhibits and argument, claiming that the accused function of the Galaxy S II Epic 4G Touch was
"the operation used to retrieve missed messages, as opposed to the operation used to respond to
incoming phone calls." ECF No. 1945 at 1. Apple's new evidence and argument are untimely and
will be disregarded.

3

functionality in the Galaxy S II products was "very similar" to the "slide to unlock" feature utilized by the non-Galaxy S II accused phones. *Id.* at 633-36, 653-64, 673-76. Dr. Cockburn testified that both "slide to unlock" and "slide to answer" infringe because they "detect a contact with the touch-sensitive display" at an "unlock image"; allow the user to "continuously move the unlock image . . . in accordance to the detected contact"; provide "visual cues" for the "direction of movement of the unlock image required to unlock the device"; and "unlock the device" when the unlock image is moved "to a predefined unlock region." *See id.* at 673-74. Apple also argues that Figure 7 in the '721 patent discloses a form of "slide to answer," so this feature must fall within the scope of claim 8.

The Court concludes that a reasonable jury could have distinguished "slide to answer" from "slide to unlock" for purposes of infringement. The verdict must stand unless the evidence, "construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Notably, neither party requested claim construction of any terms in the '721 patent. Accordingly, the jury was instructed to rely on the plain and ordinary meaning of the claim language. *See* ECF No. 1847 at 30; *see also ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012) ("In the absence of such a construction, however, the jury was free to rely on the plain and ordinary meaning.").

Contrary to Apple's arguments, the jury's non-infringement verdict for the Galaxy S II products does not contradict the '721 patent or the record. As an example, the jury could have reasonably determined that the "slide to answer" functionality does not "unlock the hand-held electronic device," as claimed. The patent describes a "lock state" as a condition where a phone ignores all inputs other than unlocking or powering off: "In the user-interface lock state (hereinafter the 'lock state'), the device 100 is powered on and operational but ignores most, if not all, user input. . . .   In other words, the locked device 100 responds to user input corresponding to attempts to transition the device 100 to the user-interface unlock state or powering the device 100 off, but does not respond to user input corresponding to attempts to navigate between user

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    interfaces." '721 patent col.7 l.64-66, col.8 ll.12-17. However, in Samsung's "slide to answer"

2    feature, the phone allows the user to answer or decline a call directly, which indicates that the

3    phone responds to user inputs. The Galaxy S II products also include the functionality of "Reject

4    call with message," which allows the user to send the caller a pre-set text message instead of

5    accepting or declining the call. The jury could have verified this by testing the functionality on the

6    phones in evidence. JX 32 (Galaxy S II); JX 33 (Galaxy S II Epic 4G Touch); JX 34 (Galaxy S II

7    Skyrocket); ECF No. 1866-1 (final admitted exhibit list); *see also* PDX 40 (video demonstrative of

8    "slide to answer" on Galaxy S II products). Based on at least these statements in the patent and the

9    accused devices themselves, the jury could have decided that Samsung's "slide to answer" screen

10   is not a "lock state," and that sliding to answer or decline a call does not "unlock" the device.

11          The verdict is also consistent with Figure 7 of the '721 patent. Apple claims that Figures

12   7A-7D demonstrate sliding to answer. However, that embodiment arguably does not show sliding

13   to answer a call because it does not result in entry into an active call. Rather, Figure 7D shows that,

14   after sliding to unlock, the user can press either "Decline" or "Accept" in response to an incoming

15   call: "In FIG. 7D, the user completes the unlock action . . . .  At this point, the user may interact

16   with the virtual buttons 708 and accept or decline the incoming call." '721 patent col.16 ll.4-11.

17   Thus, the patent explains that a screen where the user can accept or decline a call is an "unlocked"

18   state. However, Samsung's accused "slide to answer" screen also permits the user to accept or

19   decline a call, without further action:

20

21

22

23

24

25

26

27

28

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW



| '721 Patent Fig. 7D | Excerpt from PDX 40 (Galaxy S II) |

Accordingly, a reasonable jury could have determined that sliding to answer on the accused devices is not a form of unlocking because the phone is in an "unlocked" state when it presents these multiple functions. Apple did not request a construction for "unlock"; to the extent Apple seeks such a construction now, Apple's request is untimely. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320-21 (Fed. Cir. 2003) ("[W]here the parties and the district court elect to provide the jury only with the claim language itself, and do not provide an interpretation of the language in the light of the specification and the prosecution history, it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation.").

Additionally, Apple points out that Dr. Greenberg did not testify to any infringement defense specific to the Galaxy S II products. Mot. at 5. However, Apple bore the burden of proof on infringement, and Apple cites no case holding that a jury must rely on expert testimony to find non-infringement, and courts have held otherwise. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011) ("If the patentee fails to meet that burden [of proving infringement], the patentee loses regardless of whether the accused comes forward with any evidence to the contrary."); *Intel Corp. v. Broadcom Corp.*, No. CIV.A. 00-796-SLR, 2003 WL

6

United States District Court
For the Northern District of California

360256, at *14 (D. Del. 2003) (denying patentee's motion for judgment as a matter of law of infringement; "Broadcom was not required to put on its own expert to disprove infringement because it was Intel that bore the burden of proving infringement.").

For these reasons, the Court cannot conclude that the evidence "permits only one reasonable conclusion" and substitute its judgment for the jury's. *Pavao*, 307 F.3d at 918. Apple's motion regarding infringement of the Galaxy S II products is DENIED.

### B.    Infringement of Claim 20 of the '414 Patent

The '414 patent covers "asynchronous data synchronization amongst devices," which the parties nicknamed "background sync." Apple asserted claim 20 of the '414 patent against Samsung. The jury found that none of the ten accused Samsung products infringes the '414 patent. *See* ECF No. 1884 at 9. Apple now moves for judgment as a matter of law of infringement or, alternatively, a new trial on infringement and damages. Claim 20 depends from claim 11. Both claims recite:

> 11. A computer readable storage medium containing executable program instructions which when executed cause a data processing system to perform a method comprising:
> executing at least one user-level non-synchronization processing thread, wherein the at least one user-level non-synchronization processing thread is provided by a user application which provides a user interface to allow a user to access and edit structured data in a first store associated with a first database; and
> executing at least one synchronization processing thread concurrently with the executing of the at least one user-level non-synchronization processing thread, wherein the at least one synchronization processing thread is provided by a synchronization software component which is configured to synchronize the structured data from the first database with the structured data from a second database.
>
> 20. The storage medium as in claim 11 wherein the synchronization software component is configured to synchronize structured data of a first data class and other synchronization software components are configured to synchronize structured data of other corresponding data classes.

'414 Patent cls. 11, 20. Apple claims that it presented evidence that all Samsung accused products satisfy every limitation of claim 20, while Samsung conceded infringement of several limitations and presented insufficient proof of non-infringement. However, as set forth below, the jury's non-infringement verdict is supported by substantial evidence and is not contrary to the clear weight of the evidence.  Accordingly, Court DENIES Apple's motion.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Apple's theory of infringement is that the Android operating system, as installed on the accused Samsung devices, contains "Sync Adapters" that perform the synchronization functions in claim 20. It is undisputed that claim 20 requires at least three distinct "synchronization software components." As the Court explained in its summary judgment order: "The first is the claimed synchronization software component 'configured to synchronize structured data of a first data class' and the other two are the 'other synchronization software components' configured 'to synchronize structured data of other corresponding data classes.'" ECF No. 1151 at 23. Moreover, claim 20 requires that each synchronization software component be configured to "synchronize structured data" from a different data class. *See* '414 patent cl.20.

At trial, the parties presented opposing expert testimony from Dr. Alex Snoeren (Apple) and Dr. Jeffrey Chase (Samsung), who both analyzed relevant source code.  The experts concurred that the accused software includes six Sync Adapters, two for each of three data classes: Calendar, Contacts, and Email. *See* Tr. at 980:1-15 (Snoeren), 2166:12-23 (Chase); *see also* SDX 3634. The experts further agreed that the "Google Calendar" Sync Adapter for the "Calendar" data class and the "Google Contacts" Sync Adapter for the "Contacts" data class are "synchronization software components . . . configured to synchronize structured data." *See* Tr. at 981:11-17; SDX 3635. In support of Apple, Dr. Snoeren testified that the "Gmail" Sync Adapter for the "Email" data class is also a synchronization software component, and that therefore the accused software has three such components corresponding to different data classes. *See* Tr. at 981:18-982:3. Dr. Snoeren reviewed Google documentation for the Sync Adapters (PX 172) and opined that all six Sync Adapters call a function called "PerformBackgroundSync," which allegedly establishes that the Gmail Sync Adapter can perform the claimed synchronization function. *Id.* at 984:23-986:16. Alternatively, Dr. Snoeren stated that three Sync Adapters that use the Microsoft Exchange protocol ("Exchange Calendar," "Exchange Contacts," and "Exchange Mail") also synchronize structured data. *See id.* at 986:17-987:4.

Samsung argues that the jury could have determined that the accused software does not include at least three synchronization software components that were each "configured to

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

United States District Court
For the Northern District of California

synchronize structured data." The Court agrees that substantial trial evidence permitted a reasonable jury to determine non-infringement on at least this basis. Dr. Chase explained to the jury that "there are no Sync Adapters of the E-mail data class" that are configured to synchronize structured data. *Id.* at 2167:20-2168:6. He disagreed directly with Dr. Snoeren's analysis after reviewing the same source code for the Gmail Sync Adapter that Dr. Snoeren examined. *See id.* at 2170:12-2171:5. Dr. Chase opined that the Sync Adapters are not "configured to synchronize" because they do not synchronize data themselves, but rather indirectly "cause" synchronization by calling other software components. *Id.* at 2180:17-2181:11 ("I can call the mechanic to fix my car, and if that call causes the mechanic to fix my car, I really can't say that I did it myself or I could do it myself."). Furthermore, Dr. Chase told the jury that "[t]here's no synchronization of structured data of these classes in the Exchange Sync Adapters" because "the code passes a synchronization request along to another component of Exchange called the Exchange Service." *Id.* at 2713:23-2174:6. Samsung also called Google manager Paul Westbrook, who testified that the Gmail Sync Adapter "passes messages between the Sync Manager here to this Mail Engine here," and that it is the Mail Engine that performs synchronization, to optimize the speed of the Gmail Android application. *Id.* at 1649:20-1650:12. Mr. Westbrook also testified that the Exchange Sync Adapters only pass messages without synchronizing. *Id.* at 1653:1-17. Based on this expert and factual testimony, the jury could have decided that the accused products lack three distinct synchronization software components, and thus do not infringe.

Apple contends that Samsung made improper claim construction arguments to the jury by stating that "*configured to* synchronize" is different from "causing" another software component to synchronize. According to Apple, "Samsung proposed that the jury 'import [] additional limitations into the claims' . . . by suggesting that the claim required that a sync adapter be configured to perform all synchronization or to perform synchronization in a specific way." Mot. at 13. Apple further asserts that Samsung's alleged claim construction "is also inconsistent with the specification and the prosecution history," and cites portions of the '414 patent's intrinsic record. *Id.* at 13-14.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    Apple's arguments regarding claim construction are unfounded. Apple relies heavily

2  throughout its papers on *Moba B.V. v. Diamond Automation, Inc*. In *Moba*, the district court

3  construed a method claim prior to trial, but when resolving post-trial motions, "reasoned that the

4  jury reasonably could have determined from the testimony presented that sequential performance is

5  a necessary characteristic" of the method claim. 325 F.3d 1306, 1313 (Fed. Cir. 2003). The Federal

6  Circuit reversed, holding that "the district court allowed the jury to add an additional limitation to

7  the district court's construction." *Id.* Thus, *Moba* dealt with a situation where the district court had

8  already construed the claim at issue, but relied on an extra limitation when reviewing the verdict.

9  However, the Federal Circuit has clarified that parties may not re-argue claim construction in post-

10  trial motions:

11      When issues of claim construction have not been properly raised in connection with
        the jury instructions, it is improper for the district court to adopt a new or more
12      detailed claim construction in connection with the JMOL motion. On JMOL, the
        issue here should have been limited to the question of whether substantial evidence
13      supported the verdict under the agreed instruction. *See Moba, B.V. v. Diamond
        Automation, Inc.*, 325 F.3d 1306, 1313-14 (Fed. Cir. 2003). In other words, where
14      the parties and the district court elect to provide the jury only with the claim
        language itself, and do not provide an interpretation of the language in the light of
15      the specification and the prosecution history, it is too late at the JMOL stage to
        argue for or adopt a new and more detailed interpretation of the claim language and
16      test the jury verdict by that new and more detailed interpretation.

17  *Hewlett-Packard*, 340 F.3d at 1320-21. In *ePlus, Inc. v. Lawson Software, Inc.*, the parties disputed

18  whether the jury could decide that the unconstrued claim term "determining" required an element

19  of control. 700 F.3d 509, 520 (Fed. Cir. 2012). The Federal Circuit rejected the appellant's

20  argument as "essentially raising a claim construction argument regarding the meaning of the term

21  'determining' in the guise of a challenge to the sufficiency of the evidence of infringement," and

22  held that in the absence of an express construction, "the jury was free to rely on the plain and

23  ordinary meaning of the term." *Id.*  Accordingly, it is improper to create a new claim construction

24  after the verdict, and parties may not revisit claim construction for terms governed by plain and

25  ordinary meaning.

26    Here, Apple seeks a post-trial construction for "configured to synchronize," raising new

27  arguments regarding the '414 patent's specification and prosecution history, despite never

28

10

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

requesting such a construction before. At trial, Apple did not object to Dr. Chase's testimony as improperly arguing claim construction. *See Price v. Kramer*, 200 F.3d 1237, 1252 (9th Cir. 2000) (noting that failure to object to testimony waives argument on appeal). Furthermore, this Court already addressed and rejected Apple's argument before trial. When Apple sought summary judgment of infringement, the Court noted that: (1) the parties did not seek a construction of "configured to synchronize," (2) that plain and ordinary meaning applied, and (3) that "a jury could reasonably conclude that the accused Sync Adapters merely direct other components to perform synchronization operations and are not themselves 'configured to synchronize structured data' as required by the claim." ECF No. 1151 at 23-24. Apple's attempt to revisit this decision is unsupported by fact or law. *See Oracle Am. v. Google Inc.*, No. 10-CV-03561-WHA, 2012 U.S. Dist. LEXIS 75026, at *9 (N.D. Cal. May 30, 2012) ("Rule 50 is not an occasion for yet another round of summary judgment based on new slants on the case law.").

Apple's remaining arguments challenge Samsung's interpretation of the conflicting testimony. *See* Mot. at 10-11; Reply at 4-6. However, "we do not weigh the evidence or make credibility determinations in assessing the propriety of granting judgment as a matter of law." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). Because substantial evidence supports the jury's non-infringement verdict, the Court DENIES Apple's motion with respect to the '414 patent.

### C.     Infringement of Claim 25 of the '959 Patent

The '959 patent is directed to a "universal interface for retrieval of information in a computer system," also colloquially called "universal search." Apple asserted claim 25 of the '959 patent against Samsung. The jury found that none of the ten accused Samsung products infringes the '959 patent. *See* ECF No. 1884 at 9. Apple seeks judgment as a matter of law of infringement or, alternatively, a new trial on infringement and damages. Claim 25 depends from claim 24. Both claims recite:

24. A computer readable medium for locating information from a plurality of
locations containing program instructions to:

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

receive an information identifier; provide said information identifier to a plurality of
     heuristics to locate information in the plurality of locations which include
     the Internet and local storage media;
determine at least one candidate item of information based upon the plurality of
     heuristics; and
display a representation of said candidate item of information.

25. The computer readable medium of claim 24, wherein the information identifier
     is applied separately to each heuristic.

'959 Patent cls. 24, 25. Apple claims that it presented evidence that all products satisfy each

limitation of claim 25, while Samsung unsuccessfully challenged only one limitation. The Court

disagrees and DENIES Apple's motion. The jury's non-infringement verdict is supported by

substantial evidence and is not contrary to the clear weight of the evidence.

The parties focus on claim 25's requirement for instructions to "provide said information

identifier to a plurality of heuristics to locate information in the plurality of locations which include

the Internet and local storage media." To prove infringement of this element, Apple relied on

expert testimony from Dr. Snoeren. *See generally* Tr. at 940:21-945:5, 952:8-956:23. In the

accused products, Dr. Snoeren identified the infringing functionality as the Quick Search Box (or

"Google Search") in the Gingerbread, Jelly Bean, and Ice Cream Sandwich versions of Android.

*Id.* at 940:21-941:20, 942:7-19 (Gingerbread), 943:13-944:7 (Jelly Bean and Ice Cream Sandwich).

For Gingerbread, Dr. Snoeren told the jury that the "Web Module in the Samsung products"

provides a heuristic for locating information on the Internet because it "combine[s] places that the

user has actually previously browsed using the web browser and suggestions that the Google search

suggestion server has presented." *Id.* at 956:8-23. For Jelly Bean and Ice Cream Sandwich, Dr.

Snoeren testified that the "Google Module" is "the heuristic module that on these versions of the

phone provide the Internet searching applications." *Id.* at 945:2-5; *see* PDX 91.24 (Apple

demonstrative).

However, Samsung presented sufficient rebuttal evidence to permit the jury to decide that

the accused devices lack instructions to search "a plurality of locations which include the Internet,"

as claim 25 requires. Bjorn Bringert, a Google engineer who worked on "all" versions of the

Google search app (Tr. at 1568:15-22), explained that the accused Google search functionality

employs a software method called blendResults() that does not search the Internet, but rather

12

"blends" data previously retrieved from a Google server and a local database. *See id.* at 1567:8-23 ("Q. Now this Blend Results, does that search the Internet? A. No, it doesn't. . . .  The blender doesn't go and buy them or locate them."). Samsung's expert Dr. Martin Rinard testified to the same conclusion: "What it's doing is taking information that has already been located, either in the local database or by the Google servers, and putting it together. So it can't possibly be any of the heuristics in claim 25." *Id.* at 1890:11-21.

Apple claims that Samsung's positions contradicted the plain claim language because claim 25 "does not require the accused device or application to search the Internet every time the user inputs a query," and "[t]he fact that something else *initially located* information on the Internet does not affect whether the heuristic *also* locates information on the Internet." Mot. at 19-20. Apple's argument is misguided. The '959 patent requires heuristics to "locate information *in the* plurality of locations which include the Internet." Apple implies that a system infringes if it locates information that is stored locally but is, or was at some time, also present on the Internet. However, Apple never requested such a strained claim construction, and the jury was free to credit the testimony from Dr. Bringert and Dr. Rinard and conclude that the accused search features did not infringe. Apple's reliance on *Moba v. Diamond Automation* is once again misplaced. As explained above, *Moba* held that the district court improperly added a "sequential performance" requirement to a previously construed method claim when assessing a jury verdict. 325 F.3d at 1313-14. Here, Samsung made no such argument. Rather, it is Apple that asserts a new claim construction position after trial, when Apple did not request additional claim construction, and plain and ordinary meaning applied to the terms that Apple now raises.

Apple also argues that Dr. Rinard took an inconsistent position regarding invalidity of claim 25 because he opined that the "WAIS" prior art reference applied a heuristic after data was retrieved, suggesting that the data did not need to be on the Internet. However, Dr. Rinard's testimony was not so contradictory: he described a "relevance ranking heuristic" that sorted data entries, but separately identified searches "from the Internet" that the WAIS reference performed. *Id.* at 1928:8-20, 1927:20-24. Moreover, the jury concluded that claim 25 was not invalid, so it

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

could have determined reasonably and consistently that claim 25 reads on neither the WAIS reference nor the accused devices due to lack of searches on the Internet.

Samsung further argues that the jury could have decided that the accused products lacked a "plurality" of heuristics because Dr. Snoeren identified only a single heuristic for each product—either the Web Module (for Gingerbread) or the Google Module (for Jelly Bean and Ice Cream Sandwich). *See* Opp'n at 14-15. Samsung fails to explain the basis for this argument, in light of Dr. Snoeren's identification of other "modules" in the accused operating systems, such as Browser and Contacts in Jelly Bean and Ice Cream Sandwich. *See* Tr. at 950:22-951:8 ("I found in the case of Gingerbread two modules, the Contacts Module and the Web Module, and in the other two versions there were four."); PDX 91.24. However, even setting this issue aside, substantial evidence supports the jury's non-infringement verdict, as explained above. Apple's motion regarding infringement of the '959 patent is DENIED.

### D.    Willful Infringement of Claim 9 of the '647 Patent

Apple also seeks judgment as a matter of law that Samsung (specifically, SEC and STA) willfully infringed the '647 patent. The Federal Circuit set the relevant standard for the willfulness inquiry for patent infringement: "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (internal citation omitted). Thus, the willfulness inquiry is a two-prong analysis, requiring an objective inquiry and a subjective inquiry.  The objective inquiry is a question for the Court, and the subjective inquiry is a question for the jury. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). A patent owner must prove willfulness "by clear and convincing evidence." *Seagate*, 497 F.3d at 1371.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1     In this case, the jury found that, as a subjective matter, Samsung did not willfully infringe

2     the '647 patent. ECF No. 1884 at 7. In other words, the jury considered whether the "objectively-

3     defined risk (determined by the record developed in the infringement proceeding) was either

4     known or so obvious that it should have been known to the accused infringer," *Seagate*, 497 F.3d at

5     1371, and determined that it was not. Apple posits that Samsung willfully infringed because Apple

6     gave written notice to Samsung of the '647 patent in August 2010 (*see* PX 132), and Samsung

7     subsequently copied the "quick links" feature and continued to infringe even after this lawsuit

8     began. However, Samsung points to substantial evidence that supports the jury's view to the

9     contrary. Specifically, Apple's expert Dr. Mowry admitted on cross-examination that his expert

10    report noted that "the accused browser functionality has existed in Android since at least version

11    1.5 (Cupcake) . . . and that there have been no changes in the accused functionality," and

12    acknowledged that Cupcake was released in April 2009. Tr. at 919:9-920:14. Because the accused

13    features appeared before Apple notified Samsung of the '647 patent, this timing could negate any

14    inference of copying by Samsung. The jury also could have concluded that Samsung had

15    reasonable defenses to infringement, despite the ultimate verdict of infringement and no invalidity.

16    Samsung presented expert testimony from Dr. Kevin Jeffay on both non-infringement and

17    invalidity of claim 9 of the '647 patent, and Samsung did not present evidence regarding the

18    adequacy of Samsung's defenses throughout the lawsuit.[2]

19    As explained above, willfulness requires both that the jury find subjective willfulness and

20    that the court find objective willfulness. Here, the jury found no subjective willfulness, and the

21    Court agrees that substantial evidence in the record supports this finding. Therefore, even if the

22    Court were to find the objective prong satisfied, there can be no ultimate willfulness determination.

23    Accordingly, the Court need not reach the objective analysis. Apple's motion is DENIED.

24

25

26    _____

      [2] The parties also dispute whether Apple proved that it practices the '647 patent (for purposes of

27    establishing that Samsung copied the patented feature), and Samsung's alleged ability to design
      around the patent. Resolving these disputes is unnecessary because the jury could have relied on

28    the other evidence discussed here to find no subjective willfulness.

15

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

### E.       Whether Samsung Failed to Establish Affirmative Defenses

Apple moves for judgment as a matter of law that Samsung failed to prove the affirmative defenses listed in Samsung's Answer, including waiver, acquiescence, estoppel, laches, failure to mitigate, prosecution history estoppel, prosecution laches, "acts of plaintiff," and "actions of others." Mot. at 22 (citing ECF No. 107). Apple notes that Samsung did not offer any evidence at trial on these defenses. *Id.* The Court denies Apple's motion.

Because Samsung did not include these defenses in the joint pretrial statement, which the parties stated specified the "issues of fact and law remaining to be litigated," ECF No. 1455-1 at 25, Samsung abandoned those defenses and they were eliminated from the case. *Cf. S. Cal. Retail Clerks Union and Food Employers Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) ("We have consistently held that issues not preserved in the pretrial order [under Rule 16(e)] have been eliminated from the action.").[3] Nonetheless, Apple does not cite, nor has this Court found, any case in the Ninth Circuit or Federal Circuit holding that when a party abandons an issue pretrial, the opposing party is entitled to judgment as a matter of law.[4] To the contrary, the Federal Circuit recently clarified that judgment as a matter of law should be granted only on issues that were "litigated, or fairly placed in issue, during the trial." *Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) (citation omitted). In *Alcon*, the Circuit held that "[a] court should not render judgment [as a matter of law under Rule 50(b)] with respect

---

[3] Final pretrial orders are governed by Rule 16(e), which provides that a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." The Ninth Circuit has held that a final pretrial order supersedes the pleadings and that claims or defenses set forth in the pleadings but omitted from the final pretrial order are not properly before the district court. *Bjorklund*, 728 F.2d at 1264. Here, the parties filed a joint pretrial statement and attached a proposed Rule 16 pretrial order which held that the parties had specified the "issues of fact and law remaining to be litigated" in the pretrial statement and that the order would "supplement the pleadings and govern the course of trial of this action." ECF No. 1455-1 at 25, 28. This Court subsequently filed a pretrial conference order that did not specifically adopt the parties' proposed order by specifying the remaining issues of fact and law to be litigated. ECF No. 1398 (Case Management Order). Nonetheless, the Court finds that Samsung's concession that the pretrial statement supplemented the pleadings suffices to deem that Samsung abandoned its defenses.
[4] The case Apple cites, *Bjorklund*, 728 F.2d 1262, is inapposite. It merely held that because a Rule 16(e) pretrial order controls the subsequent course of the action, a defendant's failure to preserve an issue by failing to raise it in the pretrial order prevents him from asserting that that issue is a material issue of fact that precludes summary judgment. *Id.* at 1264-65.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

to claims 'reference[d] in the complaint' but not raised in the pretrial statement or litigated at trial [because] 'a reference in the complaint is not sufficient to support a judgment.'" *Id.* Here, by analogy, because Samsung raised these defenses in its Answer but did not raise them in the pretrial statement nor litigate them at trial, this Court finds that no judgment may be rendered on these defenses. Other courts have rejected similar motions in other patent cases. *See, e.g.*, *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 848-50 (E.D. Tex. 2013) (denying plaintiff's motion for judgment as a matter of law on defenses which were "never presented to the jury" because both parties had agreed to narrow their claims and defenses before trial, and the court would not "penalize [defendant's attempt to] narrow issues [for trial] by entering judgment" against the defendant). Accordingly, the Court denies Apple's motion.

**F.        Request for Enhanced Damages for the '721 Patent and the '647 Patent**

35 U.S.C. § 284 states that "the court may increase the damages up to three times the amount found or assessed." Apple asks this Court to award enhanced damages based on Samsung's allegedly willful infringement of the '721 and '647 patents. Mot. at 23. However, a "finding of willful infringement is a prerequisite to the award of enhanced damages." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010); *see also Bard*, 682 F.3d at 1005. Because this Court grants Samsung's motion for judgment as a matter of law that Samsung did not willfully infringe the '721 patent in a separate Order, and denies Apple's motion for judgment as a matter of law that Samsung willfully infringed the '647 patent, *see supra* Part II.D, the Court has no basis to grant enhanced damages for the '721 and the '647 patents, and thus DENIES Apple's request.

**G.        Supplemental Damages**

Apple seeks an award of supplemental damages through the date of judgment for infringing sales not considered by the jury. 35 U.S.C. § 284 requires that courts award compensation for every infringing sale, and the Federal Circuit has held that a patent holder is entitled to supplemental damages for infringing sales that the jury did not consider. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010). Thus, "[c]ourts routinely grant motions for a further accounting where the jury did not consider certain periods of infringing activity[.]" *Metso*

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

*Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.,* 833 F. Supp. 2d 333, 347 (E.D.N.Y. 2011); *see also Itron, Inc. v. Benghiat,* Case No. 99–cv–501–JRT–FLN, 2003 WL 22037710, at *15 (D. Minn. Aug. 29, 2003) (granting motion for accounting of infringing activities); *Hynix Semiconductor Inc. v. Rambus Inc.,* 609 F. Supp. 2d 951, 960-61 (N.D. Cal. 2009) (awarding supplemental damages for infringement occurring between verdict and entry of judgment).

The Court agrees that an award of supplemental damages is necessary here, as there are sales for which the jury did not make an award, because they occurred after the jury reached its verdict. This would include sales of the Galaxy S III and the Galaxy Note II. Mot. at 29; Opp'n at 27. Consistent with Federal Circuit case law and this Court's approach in the first case between the parties, the Court intends to calculate the supplemental damages award for these products starting from May 6, 2014, the day after the jury verdict. *See* Case No. 11-CV-01846, ECF No. 2271 at 3 ("*Apple I* Order") ("Consistent with the *Presidio Components* decision, the Court intends to calculate the supplemental damages award beginning on August 25, 2012, the day after the verdict."). The Court will calculate supplemental damages using the same methodology the Court adopted in the first case, namely that the per-product rate should be calculated based on the jury's verdict: "[The Court will] determine the per-sale amount on a product-by-product basis, and use that per-sale amount to determine the supplemental damages amount for each product that has remained on the market for any post-verdict period. Because the jury returned an award for each product separately, the Court can simply divide the jury award for each product by that product's number of sales to calculate this per-product amount." *Apple I* Order at 5.

However, the Court denies Apple's request that the Court calculate and award supplemental damages at this time before the Court enters final judgment. Mot. at 31. Courts have found it appropriate to delay orders for the submission of evidence of the number of post-verdict sales and hearings thereon pending the resolution of appeals, to "avoid potentially unnecessary expenditures of time and money in preparing such an accounting[.]" *Itron,* 2003 WL 22037710, at *16; *see also Eolas Techs., Inc. v. Microsoft Corp.,* 2004 WL 170334, at *8 (N.D. Ill. Jan. 15, 2004), *vacated in part on other grounds,* 399 F.3d 1325 (Fed. Cir. 2005) ("I grant the motion and will require an

18

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

accounting after any appeal in this case is terminated."). Because the parties have indicated that an appeal is anticipated, proceeding without the Federal Circuit's guidance may cause unnecessary expenditures of time and resources should the Circuit reverse any part of the jury's verdict on liability. The Court thus finds it appropriate to delay the consideration of evidence of actual post-verdict sales and calculation of supplemental damages until after the completion of the appeal in this case. The Court made this same determination in the first case. *See Apple I* Order at 6, 8; Case No. 11-CV-01846, ECF No. 2947 at 3.

Finally, Samsung argues Apple is not entitled to supplemental damages because the verdict indicates the jury's damages award was a lump-sum royalty intended to compensate Apple for all past and future infringement, and that granting supplemental damages would breach the jury's role in awarding damages. Opp'n at 24-25. Because the jury verdict does not expressly state whether it compensates Apple for Samsung's both past and future use of the patented technology or only compensates Apple for past use, it is ambiguous on this point. In interpreting an ambiguous verdict form,[5] this Court has "broad discretion" to determine if "the verdict figure represented past infringement as well as ongoing infringement." *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010). The Court rejects Samsung's argument, as explained below.

In *Telcordia*, the district court rejected the defendant's argument that the jury's damages award was necessarily a lump-sum award intended to compensate the patentee for past and future infringement, reasoning that the evidence at trial provided no way of knowing one way or the other what the jury actually did. *Telcordia Techs., Inc. v. Cisco Sys., Inc.,* 592 F. Supp. 2d 727, 728 n.8 (D. Del. 2009), *aff'd in part, vacated in part,* 612 F.3d 1365 (Fed. Cir. 2010) (rejecting defendant's argument that the court could not grant patentee an ongoing royalty until expiration of the patent because the jury awarded a lump-sum that covered future infringement, reasoning that (1) the jury issued a general verdict; (2) the jury heard different sets of damages numbers from the parties' two experts, which the jury could accept, reject, or vary; (3) the jury's award was different from the damages award advanced by either party's expert; and (4) there was "nothing in either the record or

---

[5] Neither party requested a special verdict form that indicates the jury's intent on this issue.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

verdict form from which the court could determine whether the jury based its award on a lump-sum, paid-up license; running royalty rate; some variation or combination of the two; or rejected the theories and reached its own number."). When the defendant appealed the district court's order granting the patentee equitable relief in the form of an ongoing royalty, the Federal Circuit affirmed, reasoning that the court did not abuse its "broad discretion" in interpreting the verdict form because the verdict form was ambiguous, neither party had proposed the jury's exact $6.5 million award, and it was "unclear whether the jury based its award on a lump-sum, paid-up license, running royalty, some variation or combination of the two, or some other theory."[6] *Telcordia,* 612 F.3d at 1378. The Federal Circuit thus implicitly affirmed the district court's rationale that when a record is unclear as to what the jury actually did, it is appropriate to reject a defendant's argument that the jury's award necessarily compensated the patentee for future infringement.

Similarly, in *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35-38 (Fed. Cir. 2012), the Federal Circuit vacated and remanded the district court's denial of supplemental damages for infringement after the verdict but before final judgment was entered because the court had failed to explain its reasons for denying such damages. However, in the midst of doing so, the Circuit rejected the defendant's argument that the patentee's supplemental damages request was properly denied because the jury had necessarily awarded a lump-sum license for all past and future infringement. *Id.* at 38. The Circuit noted that "nothing in the record would support" that conclusion because "the parties limited their damages arguments to past infringement rather than projected future infringement" and the "jury's verdict did not indicate that the award was meant to cover future use of [plaintiff's] patents[.]" *Id.* at 35, 38; *see also id.* at 35 ("We can not [sic] accept [defendant's] suggestion that a paid-up license was awarded [by the jury].").

---

[6] The Federal Circuit noted that while the district court's decision was not clearly erroneous, the Federal Circuit itself could not "determine whether the jury compensated Telcordia for all of Cisco's infringing activities." *Telcordia,* 612 F.3d at 1378.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    Here, in light of the ambiguity concerning whether the jury actually awarded a lump-sum

2  royalty to compensate Apple for past *and* future infringement, the Court rejects Samsung's

3  argument that the jury did so. As in *Whitserve* and *Telcordia*, there is no express statement in the

4  verdict form that the damages award would encompass damages for future infringement. *See* ECF

5  No. 1884. The verdict form did not require the jury to denote which damages theories it applied. *Id.*

6  Further, as in *Telcordia*, the jurors were presented with several sets of damages numbers during Dr.

7  Chevalier and Dr. Vellturo's testimony at trial, which the jurors could have chosen to accept,

8  reject, or vary, and the jury's award of $119,625,000 is different from the damages award proposed

9  by both parties' experts. Finally, the fact that the verdict form chart with respect to the Galaxy S II

10  Products expressly indicated that the award would be made for sales through the "Present" supports

11  the interpretation that the jury could have believed that its damages awards for all products were

12  meant to compensate Apple only for past infringing sales. *See* ECF No. 1884 at 10 (asking jury to

13  provide their "dollar breakdown" for each of certain products – the Galaxy S II Epic 4G Touch, the

14  Galaxy S II Skyrocket, and Galaxy S II – for each of the following three time periods only: (1)

15  "August 1, 2011- June 30, 2012"; (2) "July 1, 2012 –August 24, 2012"; and (3) "August 25, 2012 –

16  Present.").

17    While Samsung argues the evidence is clear that the jury made its damages award based on

18  calculations by Samsung's expert Dr. Chevalier, Opp'n at 25-26 (citing Chevalier Declaration,

19  ECF No. 1907-5),[7] Apple rebuts that there are "multiple ways the jury could have reached its total

20  damages number by starting from Dr. Vellturo's proposed reasonable royalty damages[.]" Reply at

21  17. The Court need not dissect the verdict to resolve this dispute because even assuming the jury

22  utilized Dr. Chevalier's reasonable royalty numbers as a starting point, that would not prove that

23  the jury awarded a *lump-sum* to compensate for past *and* future infringement as opposed to

24  compensating Apple for past infringement on a per-unit, per-patent running royalty basis for all

25  

26  ───────────────
[7] Dr. Chevalier claims that the jury's allocation of damages between the '647, '721, and '172
patents and between the accused products for each patent, and the fact that the jury did not grant a

27  uniform per-unit royalty for all products, demonstrates a lump-sum verdict. *See* ECF No. 1907-5, ¶
67. She also claims that the fact that the jury reallocated the total damages number when

28  calculating damages for the Galaxy S II products further indicates a lump sum. *See id.* ¶ 68.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

1  sales made through the trial.[8] This is because although Dr. Chevalier testified her total proposed

2  award of "roughly $38.4 million" was a "lump sum," ECF No. 1938 at 2422, she did not testify

3  that this lump-sum was intended to cover past *and* future infringement, and her damages exhibit

4  nowhere describes her damages total as a "lump-sum," let alone a lump-sum covering past and

5  future infringement. *See generally* DX 453A. ██████████████████████████████

6  ██████████████████████████ Even her testimony and demonstratives at trial

7  repeatedly referred to her $0.35 per-unit, per-patent royalty rate. *See* SDX 3791 (describing

8  "royalty rate per patent per unit" of $0.35); ECF No. 1938 at 2422 ("I concluded that a reasonable

9  royalty would be $0.35 per patent, per unit."); *id.* at 2432 (noting she arrived at the $0.35 "per

10  patent, per unit" number by applying *Georgia-Pacific* factors); *id.* at 2435 (stating that her

11  reasonable royalty number came from "applying that $0.35 per patent, per unit [sic] to each of the

12  accused units based on which patents they're accused of infringing."). If anything, the fact that Dr.

13  Chevalier calculated her reasonable royalty damages for the Galaxy S II Products in distinct time

14  periods only through the "Present," ███████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ██████ suggests that if the jury based its calculation on Dr. Chevalier's numbers, the jury likely

17  would have believed her numbers were intended to compensate Apple only for past infringement.[9]

18      Because the record suggests it is plausible that the jury intended to award Apple damages

19  only for past infringing sales, the Court cannot conclude that the jury necessarily awarded a lump-

20  sum award intended to cover past and future infringement. Accordingly, under *Whitserve* and

21  *Telcordia*, the Court rejects Samsung's argument and finds that an award of supplemental damages

22  is warranted.

---

8  ████████████████████████████████████████████████████████████

While Samsung argues that the jury must have followed the final jury instruction that they could
award a "one-time lump sum," that is not dispositive because the jury was also instructed that a
reasonable royalty award could be based on a running per-unit royalty. *See* ECF No. 1847 at 50.

22

United States District Court
For the Northern District of California

### H.    Prejudgment Interest

Under 35 U.S.C. § 284, the district court has considerable discretion in awarding prejudgment interest. *See Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed. Cir. 1986). The purpose of prejudgment interest is to "compensate[ ] the patent owner for the use of its money between the date of injury and the date of judgment." *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1033 (Fed. Cir. 1996). Such interest is usually awarded from the date of infringement to the date of judgment. *See Nickson Indus. Inc., v. Rol Mfg. Co., Ltd.,* 847 F.2d 795, 800 (Fed. Cir. 1988). "[P]rejudgment interest should ordinarily be awarded absent some justification for withholding such an award[.]" *Gen. Motors Corp. v. Devex Corp.,* 461 U.S. 648, 657 (1983) (holding that an award of prejudgment interest is generally appropriate after a finding of patent infringement). As in the first patent infringement case between Apple and Samsung, *see Apple I* Order at 7-8, the Court concludes here that Apple is entitled to an award of prejudgment interest.

The rate of prejudgment interest is left to the wide discretion of this Court, which may award interest at or above the prime rate. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991). Courts may use the prime rate, the prime rate plus a percentage, the U.S. Treasury Bill rate, state statutory rate, corporate bond rate, or whatever rate the court deems appropriate. *Junker v. HDC Corp.*, No. C-07-05094 JCS, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008). The parties have proposed two different rates. Apple proposes the prime rate. Mot. at 30-31. Samsung argues that the lower 52–week Treasury Bill rate is appropriate, consistent with this Court's approach in the first case between the parties. Opp'n at 28; *Apple I* Order at 7. In determining the appropriate rate, courts have considered whether, during the period of infringement, the plaintiff "borrowed money at a higher rate, what that rate was, or [whether] there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the defendant's] infringement." *Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed. Cir. 1997) (upholding district court's decision to use the Treasury Bill rate in case where district court found no evidence of "a causal connection between any borrowing and the loss of the use of the money awarded as a result of the infringement."). Such factors would make an award at a

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**United States District Court**
For the Northern District of California

1    higher rate more appropriate. Here, although Apple has submitted a declaration stating that Apple

2    borrowed in the public markets at rates higher than the Treasury Bill rate, *see* Robinson Decl., ECF

3    No. 1897-8 ¶ 9, Apple maintains substantial cash reserves and has not presented any evidence that

4    it needed to borrow money *because* it was deprived of the damages award. Thus, here, as in

5    *Laitram,* and as this Court found in the first case, the Court concludes the 52–week Treasury Bill

6    rate is sufficient. The Treasury Bill rate has been accepted and employed by many courts in patent

7    cases as a reasonable method of placing a patent owner in a position equivalent to where it would

8    have been had there been no infringement. *See, e.g.*, *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820,

9    829 (Fed. Cir. 1989), *cert. denied,* 493 U.S. 1024 (1990).

10            Finally, the Court addresses the appropriateness of compounding. Apple seeks annual

11   compounding. Mot. at 31. The Federal Circuit has explained that "the determination whether to

12   award simple or compound interest [] is a matter largely within the discretion of the district court."

13   *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 557 (Fed. Cir. 1984). Courts "have

14   recognized that compounding is necessary to fully compensate the patentee." *Sealant Sys. Int'l,*

15   *Inc. v. TEK Global S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 1008183, at *6 (N.D. Cal. Mar. 7,

16   2014) (citation omitted). "Because a patentee's damages include the foregone use of money,

17   compounding is needed to account for the time value of money." *Id.* (citation omitted). Thus,

18   "courts have approved annual compounding and even daily compounding." *Id.* (citation omitted).

19   As Samsung has not indicated any objection to compounding, Opp'n at 28-30, the Court concludes,

20   as it did in the first case, that annual compounding should be utilized. *See Apple I* Order at 7-8.

21            Accordingly, when the anticipated appeal of this case is resolved, and the final damages

22   amount settled, this Court will award Apple prejudgment interest at the 52–week Treasury Bill rate,

23   compounded annually. The Court declines Apple's request that the Court calculate and award

24   prejudgment interest at this time before any appeal is resolved. Mot. at 31. Because both parties

25   have indicated that they may challenge the legal sufficiency of the jury's award, it will be more

26

27

28

                                                        24

efficient to calculate prejudgment interest after appeal, when the final amount of the judgment is

known. The Court made this same decision in the first case. *See Apple I* Order at 8.[10]

## I.   Non-infringement of Claim 27 of the '449 Patent

The '449 patent is directed to an "apparatus for recording and reproducing digital image

and speech." Samsung asserted claim 27 of the '449 patent against Apple. The jury found that all

five accused Apple products infringe the '449 patent, and awarded damages of $158,400.00 for that

infringement. *See* ECF No. 1884 at 11-12. Apple now moves for judgment as a matter of law of

non-infringement or, alternatively, a new trial on infringement and damages. Claim 27 depends

from claim 25. Both claims recite:

> 25. A digital camera comprising:
> a lens,
> an imaging device which converts an optical image into an analog signal;
> an A/D converter which converts said analog signal from said imaging device to a
>     digital signal;
> a compressor which compresses said digital signal outputted from said A/D
>     converter, and generates compressed data by using a different compressing
>     method for moving image signals and for still image signals;
> a recording circuit which records compressed data, said compressed data including a
>     moving image signal, and a still image signal;
> a decompressor which decompresses said compressed data by using a different
>     decompressing method according to whether said recorded compressed data
>     is a moving image signal or a still image signal;
> a reproducing circuit which reproduces a moving image signal, a sound signal in
>     synchronous to said moving image signal, and a still image signal; and
> a display which displays said moving image signals and still image signals outputted
>     from said reproducing circuit, and a list of said moving image signal and still
>     image signal as a search mode, and a list of classifications as a classification
>     mode;
> wherein said recording circuit records each one of said plurality of image signals
>     with classification data, and
> said display lists a plurality of classifications and a number of images belonging to
>     each classification.
>
> 27. A digital camera according to claim 25,
> wherein said classification is able to change by a direction of a user.

'449 Patent cls. 25, 27. Apple contends that Samsung's trial evidence failed to demonstrate

infringement of at least four limitations of claim 27. Considering each of these limitations in turn,

---

[10] The Court rejects Samsung's argument that prejudgment interest must be calculated on a final judgment amount that has subtracted $158,400, which represents Samsung's award for Apple's infringement of Samsung's '449 patent. Opp'n at 30. Samsung cites no law for the proposition that subtraction of the counterclaimant's award is required prior to calculating prejudgment interest on an award relating to infringement of the patentee's patents.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Case5:12-cv-00630-LHK Document1962 Filed09/08/14 Page26 of 45

United States District Court
For the Northern District of California

the Court concludes that substantial evidence supports the jury's finding of infringement, and the verdict is not contrary to the clear weight of the evidence, and accordingly DENIES Apple's motion.

First, Apple contends that the accused iPhone 4S, iPhone 5, and iPod Touch 5th Generation products lack a "reproducing circuit which reproduces . . . a sound signal in synchronous to said moving image signal," as claim 27 requires. Apple states that Samsung's expert for the '449 patent, Kenneth Parulski, identified an "audio circuit" in the accused devices (*see* SDX 3742), but argues this audio circuit cannot reproduce synchronous audio. Apple points to the testimony of Apple engineer Tim Millet and allegedly contradictory testimony from another Samsung expert, Dr. Dan Schonfeld. However, the record contains sufficient evidence to support the jury's determination. Mr. Millet did testify that Apple's "software team" decided not to use the "audio subsystem" contained in the three disputed products for audio processing. Tr. at 2699:20-2700:13. However, Mr. Millet also testified on cross-examination that he was not an expert on Apple's software, *see id.* at 2701:14-16, and the jury was free to assess the credibility of his direct testimony. Samsung's expert explained how the accused products have reproducing circuits for sound, *see id.* at 2609:22-2610:14, while Apple's expert, Dr. Jim Storer, did not offer a non-infringement opinion based on the absence of a "reproducing circuit" despite talking with Apple engineers, *see id.* at 2721:20-2722:6. Next, contrary to Apple's position, the cited testimony from Samsung's '239 patent expert did not contradict Samsung's position for the '449 patent: Dr. Schonfeld stated that integrated circuits require software generally, but said nothing about the '449 patent or a "reproducing circuit" in the accused devices. *See id.* at 2558:1-4. It is also undisputed that Apple's products can reproduce audio—a fact that the jury could have confirmed from the representative devices admitted into the record (JX 38-46A).

Second, Apple argues that none of the five accused products contains the claimed "compressor" or "decompressor." Apple's theory is that these limitations require components that compress or decompress "*both* still images and videos," and that its products use "*separate and distinct* components to compress/decompress still images and videos." Mot. at 33-34. Apple's

26
Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    argument is unpersuasive. This Court did not construe the claim terms "compressor" and

2    "decompressor," and instructed the jury to apply plain and ordinary meaning for terms not

3    construed. *See* ECF No. 1847 at 30. On cross-examination from Apple's counsel, Mr. Parulski

4    testified that he "identified a single Apple design chip with the circuitry that performs both

5    compressing methods," even though certain components of the chip originate with different

6    manufacturers.  Tr. at 2638:25-2639:6, 2643:5-14 ("That's one integrated circuit."). Mr. Millet also

7    told the jury that a system on chip ("SOC") is "essentially a single integrated circuit that integrates

8    a large number of different components," and that the Apple A6 chip in the infringing devices

9    contains circuitry for compressors and decompressors. *Id.* at 2688:13-20, 2701:21-2702:8.  Apple's

10   contention that the "SOC contains *dozens* of different components, most unrelated to compression

11   or decompression" (Reply at 20) is misplaced because the presence of additional components does

12   not negate infringement. *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)

13   (in a "comprising" claim, "other elements may be added and still form a construct within the scope

14   of the claim").

15        Third, Apple challenges the sufficiency of Samsung's proof that the accused products

16   contain a "recording circuit" that records image signals "with classification data." Samsung

17   identified the Camera Roll feature in Apple's products as meeting this limitation. Apple's non-

18   infringement argument is that the Camera Roll includes all photos and videos taken with the

19   device, so there is no "classification" of those images. *See* Mot. at 35. Apple also argues that the

20   '449 patent requires recording of "image signals *with* classification data," such that the

21   classification data must be recorded simultaneously with the images. The Court disagrees that there

22   is inadequate evidence to support the verdict. The parties did not request construction of

23   "classification data," so its plain and ordinary meaning applies. Mr. Parulski testified that the

24   accused products store information about "which images are in the Camera Roll and the other

25   rolls," based on his inspection of Apple's source code and testimony from Apple's corporate

26   representative. Tr. at 2615:22-2616:9; *see also id.* at 2637:9-16. While Dr. Storer testified that the

27   Camera Roll does not include classification data, *see id.* at 2775:25-2778:24, the jury could have

28

27

United States District Court
For the Northern District of California

1    credited Mr. Parulski's explanation and concluded that the fact that the accused devices can

2    distinguish Camera Roll photos from other photos indicates the presence of classification data.

3        Fourth, Apple contests infringement of the '449 patent limitation requiring a display with "a

4    list of said moving image signal and still image signal as a search mode." According to Apple, the

5    Camera Roll displays an array of thumbnails, which cannot be a "list." Dr. Storer opined that the

6    '449 patent is directed toward avoiding the need to browse through numerous images, which is

7    what a thumbnail array provides, *id.* at 2767:11-20, but Mr. Parulski offered a contrary opinion and

8    explained that Figure 8 of the patent shows a sample search mode with thumbnails, *id.* at 2613:5-

9    2614:10. Thus, a reasonable jury could have rejected Dr. Storer's characterization of the Camera

10   Roll as not having a "list of said moving image signal and still image signal as a search mode."

11       For the foregoing reasons, Apple's motion regarding non-infringement of the '449 patent is

12   DENIED.

13       **J.      Non-infringement of Claim 15 of the '239 Patent with Respect to iPad Products**

14       Apple moves for judgment as a matter of law that its iPad products do not infringe claim 15

15   of the '239 patent. Mot. at 36. Apple notes that Samsung accused Apple's iPad products of

16   infringing the '239 patent for two years of litigation; that Samsung included this claim and Apple

17   included its counterclaim for declaratory judgment of non-infringement in the joint pretrial

18   statement, *see* ECF No. 1455-1 at 2-3, 8; and that the Court informed the jury of Samsung's claim

19   of infringement in the preliminary jury instructions, *see* ECF No. 1543. Apple further notes that

20   Samsung told Apple and the Court during the third week of trial that Samsung was no longer

21   accusing the iPad 2, iPad 3, iPad 4, and iPad mini of infringement of claim 15. Mot. at 36 (citing

22   ECF No. 1764-5, letter from Samsung counsel to Apple counsel); ECF No. 1743 (Updated List of

23   Accused Products by Samsung). Samsung did not present any evidence of infringement by Apple's

24   iPad products at trial. The Court grants Apple's motion, as explained below.

25       The Federal Circuit's recent holding in *Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745

26   F.3d 1180 (Fed. Cir. 2014), guides the analysis. There, the plaintiff had asserted two patents in its

27   complaint, but subsequently sent the defendant a letter stating that the plaintiff had decided to

28

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

United States District Court
For the Northern District of California

1    dismiss those claims of infringement, but never formally moved to dismiss those claims. The

2    plaintiff did not assert those claims in the pretrial order, and did not adduce any evidence related to

3    those patents at trial. *Id.* at 1184, 1193. The district court denied the defendant's post-trial motion

4    to amend the judgment under Rule 59(e) in order to enter judgment as a matter of law of non-

5    infringement of those two patents, and the Federal Circuit affirmed. *Id.* at 1186-87. The Federal

6    Circuit held that judgment was not warranted because the patents were not "litigated, or fairly

7    placed in issue, during the trial." *Id.* at 1193 (citation omitted). The Circuit noted that in

8    determining if this standard is met, courts should "assess[] both what the parties expected to try

9    given their statements and conduct and what they actually litigated at trial." *Id.* The Circuit held

10   that the patents were not "litigated, or fairly placed in issue, during the trial" because (1) the

11   plaintiff had informed the defendant of its decision to drop its claims; (2) the claims were omitted

12   from the pretrial order; (3) neither party set forth any arguments or evidence on the merits of

13   infringement of those claims; and (4) the defendant never filed a counterclaim for declaratory

14   judgment of non-infringement. *Id.* The Circuit further noted that "[a] court should not render

15   judgment with respect to claims 'reference[d] in the complaint' but not raised in the pretrial

16   statement or litigated at trial [because] 'a reference in the complaint is not sufficient to support a

17   judgment.'" *Id.* (citation omitted).

18          Here, the Court concludes that the issue of whether Apple's iPad products infringe the '239

19   patent was "litigated, or fairly placed in issue, during the trial." Although Samsung presented no

20   evidence at trial on the issue of infringement as to the iPad products, it is clear that both Apple and

21   Samsung expected to try the issue of infringement as to those products and that these claims were

22   not akin to claims merely "referenced in the complaint," for the following reasons. First, Samsung

23   included its infringement claim as to these products in the pretrial statement, and Apple included its

24   counterclaim for declaratory judgment of non-infringement as to these products in the pretrial

25   statement as well. Second, the jury was explicitly informed of Samsung's claim of infringement as

26   to these products in the preliminary jury instructions, and was informed that Apple "denie[d] that it

27   has infringed the claims asserted by Samsung," ECF No. 1543. Third, Samsung did not withdraw

28

29

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

its claim until the *third* week of trial, albeit before presenting its affirmative case. Samsung's withdrawal at such a late stage in the proceeding was prejudicial to Apple. Apple was forced to prepare Apple's defense to Samsung's claim in advance of trial and had to try Apple's case for three weeks assuming that Apple had to reserve time to rebut Samsung's claim. Finally, Samsung's dismissal of its claim of infringement did not moot Apple's counterclaim by indicating that Samsung would not sue Apple for infringement as to those products in the future. Under these circumstances, the Court finds that the issue of non-infringement was "fairly placed in issue" such that Apple is entitled to a determination on the issue, unlike in *Alcon* where (1) the parties explicitly recognized in the pretrial order that the plaintiff had dropped those patents, (2) the jury never learned of the infringement claim, and (3) the defendant never filed a counterclaim.[11]

This Court notes that in affirming the district court's denial of judgment to the defendant in *Alcon*, the Federal Circuit emphasized that the defendant had not filed a counterclaim for declaratory judgment of non-infringement, and noted that such a filing would likely have compelled a different outcome. *Alcon*, 745 F.3d at 1193 (noting that "if the accused infringer does not file a counterclaim, then it is up to the patentee to decide what claims are to be litigated and decided at trial" but "[i]f an accused infringer has filed a counterclaim, then the patentee has notice that, even if it drops its infringement claims, the issue of infringement remains to be litigated."); *see also Tol–O–Matic, Inc. v. Proma Produkt–Und Mktg. Gesellschaft m.b.H.,* 945 F.2d 1546, 1554 (Fed. Cir. 1991), *abrogated on other grounds, Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) ("There must be sufficient and explicit notice of the claims at risk" to grant judgment as a matter of law). Here, Apple's filing of a counterclaim means Samsung had notice that the issue of infringement was still at issue even after Samsung withdrew its infringement claims. This is because Apple never withdrew Apple's counterclaim after Samsung

---

[11] The Federal Circuit reached a similar conclusion in an analogous case pre-*Alcon*. *See, e.g.*, *Strub v. Axon Corp.*, 168 F.3d 1321, 1998 WL 537721, at *10-11 (Fed. Cir. Aug. 17, 1998) (unpublished) (reversing district court's denial of the plaintiff's motion for judgment as a matter of law of validity because defendant's counterclaim for declaratory judgment of invalidity was part of the pre-trial order and defendant waited until the close of evidence to withdraw the counterclaim, reasoning that "[w]ithdrawal of a clearly presented claim at such a late stage in the proceeding was clearly prejudicial to [the plaintiff] which was forced to prepare a defense to this claim in advance of trial," and thus plaintiff was entitled to judgment on that claim).

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

gave Apple notice that Samsung was withdrawing Samsung's claim of infringement as to the iPad products.

Finally, Samsung argues Apple somehow waived its argument that Apple's non-infringement counterclaim was still at issue after Samsung withdrew its infringement claim because Apple did not file any response to this Court's order, issued in the middle of trial, that the parties file an update regarding which Apple products were accused of infringing Samsung's patents. Opp'n at 35. This argument fails. The Court's order, *see* ECF No. 1737, never asked Apple to state whether Apple withdrew its non-infringement counterclaim, so there was no reason for Apple to file any such statement.

In sum, the Court finds that Apple's counterclaim was fairly placed in issue during the trial. Because Samsung had the burden to show infringement, *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 134 S.Ct. 843, 850–51 (2014), but presented no evidence, the Court GRANTS Apple's motion for judgment as a matter of law that the iPad products do not infringe the '239 patent.

### K.   New Trial on Infringement for '414 and '959; New Trial on Willfulness for all Apple Patents Other than '721; New Trial on Damages for all Apple's Patents

Apple seeks a new trial on various bases, and the Court addresses each in turn below.

#### 1.   Assertions that Apple Does Not Practice the '172, '414, and '959 Patents

Apple seeks a new trial on infringement for the '414 and '959, a new trial on willfulness for all Apple's patents other than the '721, and a new trial on damages for all of Apple's patents on the basis that Samsung improperly and prejudicially told the jury that Apple does not and has never practiced the '414 patent, '959 patent, and U.S. Patent No. 8,074, 172 ("the '172 patent"). Mot. at 37. The Court DENIES Apple's motion.

The Court first sets forth the relevant procedural history. This Court's case narrowing order required Apple and Samsung early on in this case to each "limit their asserted claims to 5 per side" at trial. ECF No. 471 at 2. In October 2013, Samsung filed a motion to enforce the Court's case narrowing order, arguing that Apple was attempting to assert eight claims at trial by arguing that Samsung infringed five claims and separately arguing that Apple practiced three extra claims -

31

1    Claim 34 of the '959 patent, Claim 27 of the '172 patent, and Claim 11 of the '414 patent

2    (hereinafter "extra claims"). *See* ECF No. 804-3 at 3. Apple argued in response that the three extra

3    claims for which Apple wanted to present evidence of Apple's practice were not "asserted claims"

4    that should count towards the five claim limit at trial. ECF No. 845 at 2. At the hearing on

5    Samsung's motion to enforce, the Court disagreed with Apple. The Court noted that if Apple

6    wanted to argue at trial that it practiced those extra claims, those claims would count towards

7    Apple's limit of five "asserted claims" and Apple would have to accordingly reduce the number of

8    claims it asserted for infringement. ECF No. 1133 at 158. The Court also gave Apple a choice. The

9    Court stated that if Apple was going to argue at trial that Apple practiced the extra claims to rebut

10   Samsung's argument that Apple does not practice the patents, in the interest of fairness Samsung

11   would be allowed to challenge the validity of the extra claims. *Id.* at 155-59, 170. This was because

12   the Court reasoned it would be unfair for Apple to use the extra claims as a sword for damages

13   purposes by arguing Apple practices those claims, yet prevent Samsung from challenging the

14   validity of those claims. *Id.* In response, Apple elected to withdraw the three extra claims and not

15   present evidence of practice. *Id.* at 170. The Court confirmed this in its order memorializing the

16   hearing. *See* ECF No. 1057 at 2 ("At the hearing, Apple stated that it would not seek to introduce at

17   trial any evidence of its three unasserted claims, i.e., claim 34 of the '959 patent, claim 27 of the

18   '172 patent, and claim 11 of the '414 patent. Accordingly, the Court denies Samsung's motion to

19   enforce Apple's compliance with the Court's case narrowing order [] as moot.").

20        At the pretrial hearing on the parties' motions in limine, the parties and the Court revisited

21   this issue. The Court again told Apple that if Apple wanted to assert its practice of the extra claims

22   in order to wipe out a potential non-infringing alternative, that in the interest of fairness, the claims

23   would count as one of Apple's five asserted claims and would be subject to an invalidity challenge

24   by Samsung. ECF No. 1411 at 48-50, 54-55, 58 ("If you want to put this claim at issue, you are

25   welcome to do that. It just needs to be one of your five, three of your five if you'd like to use all

26   three. That's just your choice . . .  [If you assert the practice of these claims,] it counts as one of

27   your five and it is potentially going to be invalidated . . . I'm not going to let this be litigated

28

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

behind the door in a sword and shield fashion where they can't challenge validity, but you get to use it defensively. That's just not going to happen. What's your choice?"). The Court also explicitly gave Apple the offer to litigate the validity of the unasserted claims before trial. *Id.* at 51 ("Are you prepared [to] litigate the validity? I'm willing to do the validity on these three and we could potentially invalidate these three unasserted claims before the trial on this and it would be a non-issue."); *id.* at 54 (Court informing parties that the Court could decide validity before trial if Apple agreed). Apple rejected the Court's offer and again chose to "stick with [its] original five [claims]." *Id.* at 58. Accordingly, the Court precluded Apple from contending at trial that Apple practices the extra claims and held that Apple "may not rebut any Samsung contention that Apple products constitute an acceptable noninfringing alternative to the '414, '172, or '959 patents[.]" ECF No. 1398 at 3. The Court noted in its Order that "it gave Apple an opportunity to rebut Samsung's contention that Apple products constitute acceptable noninfringing alternatives by contending that Apple practices unasserted claims of the '414, '172, or '959 patents so long as Apple was willing to litigate the validity of the unasserted claims either before or during the March 31, 2014 trial. Apple declined the Court's offer." *Id.*

Before trial, the parties filed a joint motion to supplement Preliminary Jury Instruction No. 20 and filed Proposed Final Jury Instruction No. 18 which would inform the jury that "Apple does not contend that it practices the '414, '172, or '959 patents" in this action. ECF No. 1418 at 2. The Court's final preliminary jury instructions accordingly stated that "[i]n this case, Apple does not contend that it practices the '414, '172, and '959 patents." ECF No. 1542 at 22. The parties also filed a "joint amended pretrial statement and order" in which the parties stated in the "Undisputed Facts" section that "Apple's products do not practice claim 25 of the '959 patent, claim 20 of the '414 patent, or claim 18 of the '172 patent," which are the claims Apple asserted against Samsung for infringement purposes (hereinafter "asserted claims"). ECF No. 1455-1 at 9.

During Samsung's opening statement, Samsung told the jury that Apple does not practice the '172, '414, and '959 patents and never has. *See* ECF No. 1622 at 357, 359, 386-87, 391, 401, 413-14. Shortly thereafter, Apple filed a motion asking this Court to permit Apple to introduce

33

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

evidence to rebut Samsung's assertions by claiming Apple practices and used to practice the patents, and asking for a curative instruction to minimize the prejudice resulting from Samsung's assertions. ECF No. 1567 at 5-6. The Court denied Apple's motion "for curative action as to whether Apple currently practices the '414, '172, and '959 Patents." ECF No. 1578 at 1. Nonetheless, the Court ordered Apple to file a supplemental brief "as to what timely produced and/or timely disclosed evidence exists in the record as to whether Apple in the past practiced" the three asserted claims. *Id.*

In response, Apple submitted a brief identifying only the following evidence. ECF No. 1581-3. With respect to claim 20 of the '414, Apple submitted a quote from the deposition of Gordon Freedman, the inventor of the '414 patent, in which he noted that an iPhone synchronization prototype included "software that embodied all the ideas in claim 20 of the '414 patent" and that that software was "essentially what was in the shipping product." ECF No. 1581-5 at 216-218. With respect to claim 18 of the '172 patent, Apple submitted a quote from the deposition of Kenneth Kocienda, an inventor of the '172 patent, in which he noted that he did not "think" that the "first original iPhone practice[d] claim 18" but then in response to the question whether "other non-English language keyboards for the iPhone practice claim 18," he responded "I believe that the languages which I listed earlier, Japanese, Chinese, et cetera, do employ this." ECF No. 1581-6 at 128. With respect to claim 25 of the '959, Apple cited to Apple's Response to Interrogatory No. 42 dated June 13, 2013 and Apple's Third Supplemental Response to Interrogatory No. 25 dated June 19, 2013, in which Apple identified source code files with respect to iOS version 6 as implementing the functionality that practices "the asserted claims of the '959" patent. ECF No. 1581-7 at 17-18 and ECF No. 1581-8 at 16. Apple expressly conceded in its supplemental brief that "Apple's experts did not provide opinions that Apple practices or has practiced" the asserted claims. ECF No. 1581-3. The Court subsequently denied, on the record, Apple's motion seeking a curative action regarding whether Apple practiced the patents in the past. ECF No. 1623 at 613.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

During Samsung's closing statement, Samsung's counsel suggested to the jury that any damages award should be reduced because Apple does not practice Apple's asserted patents. *See* ECF No. 1929 at 3270 (claiming that Apple "seek[s] lots of money for things that Apple itself does not even use"); *id.* at 3328-29. Samsung also argued Samsung could not have copied the asserted patents because they have never been used in Apple's products. *Id.* at 3256 ("You can't copy it if it's not there, if Apple doesn't practice it."); *id.* at 3257-58 ("If it's not in your product, someone can't copy it. And why would someone come [sic] to your product if you're not practicing those same patents?"); *id.* at 3265-66 ("By the way, [Apple] wasn't practicing most of these patents, at this point all of them."); *id.* at 3277 ("[T]he iPhone doesn't practice most of these patents."); *id.* at 3287 ("Well, we've already seen that most of these patents aren't used in the iPhone.").

Apple now contends it was manifestly unfair for the Court to allow Samsung to tell the jury at various points that Apple does not and has never practiced the asserted patents, without giving Apple a chance to rebut. Apple argues that the prejudicial value of those statements and the fact that Apple could not rebut them renders a new trial necessary. The Court rejects Apple's argument.

Apple argues it was unfair for the Court to allow the jury to "reach a verdict [and calculate damages] based on false information," which prejudiced Apple. Mot. at 38-40. Yet any argument by Samsung that Apple does not *currently* practice the *asserted* claims of the '959, '414, and '172 patents was not "false" in light of Apple's multiple admissions pre-trial that Apple does not practice the asserted claims. *See* ECF No. 1133 at 162-63 (Apple stating at December 2013 hearing that Apple does not practice the three asserted claims); ECF No. 1455-1 at 9 ("joint amended pretrial statement and order" in which the parties stated in the "Undisputed Facts" section that "Apple's products do not practice claim 25 of the '959 patent, claim 20 of the '414 patent, or claim 18 of the '172 patent."); ECF No. 1581-3 at 1 (Apple conceding that "Apple's experts did not provide opinions that Apple practices" the three asserted claims); ECF No. 1418 at 2 (joint stipulation pre-trial stating that "Apple does not contend that it practices the '414, '172, or '959 patents").

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

With respect to Samsung's arguments that Apple *never* practiced the *asserted* claims in the past, the Court fails to see how Samsung's assertions were "false" given that this Court explicitly gave Apple the opportunity to present its evidence of past practice of the asserted claims, and Apple's evidence was weak at best. Moreover, Apple did not obtain any expert opinion that Apple practiced those claims, as Apple expressly conceded. ECF No. 1581-3 at 1 ("Apple's experts did not provide opinions that Apple . . . has practiced" the three asserted claims).[12]

With respect to any argument by Samsung that Apple does not practice and has never practiced the three *unasserted* extra claims, the Court is not convinced by Apple's claim that Apple was prejudiced by not being able to rebut Samsung's arguments. Apple's claim is unavailing because this Court gave Apple the choice not once, but twice, to rebut by presenting evidence at trial that Apple practices the extra claims, but Apple declined the Court's offer both times. When given the choice not to present evidence of Apple's practice of these extra claims, or to do so with the consequence of opening up those claims to a validity challenge by Samsung and to have those claims count as one of its five "asserted" claims, Apple itself *chose* not to present such evidence and to only assert the five other claims Apple originally asserted for infringement purposes.

The Court notes that Apple's choice was a strategic decision beneficial to Apple. This is because Apple chose not to assert claims which were broader and thus more vulnerable to validity challenges. For example, claim 20 of the '414 patent (asserted claim) depends from claim 11 of the '414 (unasserted claim). Independent claim 11 requires only one "synchronization software component," but asserted dependent claim 20 requires at least three distinct software components. *See* ECF No. 1151 at 23. Before and during trial, Apple repeatedly relied on the fact that claim 20

---

[12] Furthermore, the cases Apple cites in support of its proposition that the Court had an "obligation" to permit Apple to rebut Samsung's statements are inapposite, as one case is a criminal case which held only that *false* information can open the door to otherwise inadmissible rebuttal evidence, *see e.g.*, *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007), and another, *Dillon, Read & Co. v. United States*, 875 F.2d 293, 300 (Fed. Cir. 1989), stands for the unremarkable proposition that a trial court should not allow stipulations with respect to facts the court knows are false. Apple's other cited case for the proposition that a curative instruction is needed when there is "attorney misconduct" is also inapposite. *See United States v. Schuler*, 813 F.2d 978, 979-83 (9th Cir. 1987) (holding that without a curative instruction, a prosecutor's reference during closing argument to a non-testifying defendant's behavior during trial – his alleged laughter when testimony about the threats he made was presented to the jury – violated Fed. R. Evid. 404(a), Due Process, and the defendant's Fifth Amendment right not to testify, and thus warranted reversal).

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

1    requires three software components to rebut Samsung's invalidity arguments based on the

2    Windows Mobile 5.0 prior art reference. *See* ECF No. 853-4 at 7 (Apple's opposition to Samsung's

3    motion for summary judgment) ("The 'sync client' does not meet claim 20's requirement for

4    *multiple* components (let alone multiple data-class specific components) and thus does not

5    anticipate.") (emphasis in original); Tr. at 2828:25-2829:11, 2847:1-10 (Dr. Snoeren testimony:

6    "So, again, in claim 20 we need those three different software synchronization components, and

7    each one of them has to meet all of the limitations from 11."). Thus, Apple would have faced a

8    greater challenge defending the validity of unasserted claim 11 as opposed to the validity of

9    asserted claim 20.

10        Similarly, asserted claim 25 of the '959 patent requires searches in a "plurality of locations,

11   which include the Internet and local storage media." '959 Patent cls. 24, 25. However, claim 34

12   (unasserted) does not have these limitations. Apple has repeatedly relied upon claim 25's

13   requirement for a plurality of locations including the Internet to distinguish Samsung's "freeWAIS-

14   sf" prior art reference. *See* Tr. at 2825:7-2826:1 (Dr. Snoeren testimony); ECF No. 1908-3 at 28-29

15   (Apple's opposition to Samsung's motion for judgment as a matter of law) (arguing that

16   freeWAIS-sf "would not have the ability to locate information in a plurality of locations that

17   includes both the Internet and local storage media"). Accordingly, Apple would have faced a

18   greater challenge defending the validity of unasserted claim 34 as opposed to the validity of

19   asserted claim 25.

20        Apple's choice to assert the asserted claims as opposed to the unasserted claims was a

21   strategic decision beneficial to Apple. The Court finds that Apple cannot now complain that its *own*

22   decision led to an unfair result or prejudice by "undermin[ing] Apple's infringement, willfulness,

23   and damages arguments." Mot. at 39.

24        Furthermore, Apple has also not explained why the Court should not have pressed Apple to

25   make an election between not presenting evidence of Apple's practice of the extra claims, or

26   presenting such evidence with the consequence of opening up those claims to a validity challenge.

27   In other words, Apple has not explained why it would be fair for Apple to use the unasserted

28

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

United States District Court
For the Northern District of California

1   claims as both a shield and a sword by arguing at trial that Apple practices the claims in order to

2   support its damages arguments and wipe out Samsung's non-infringing alternative arguments, but

3   simultaneously prevent Samsung from challenging the validity of those claims. Absent any

4   persuasive explanation from Apple, such an election was necessary in the interest of fairness to

5   Samsung.

6         The Court further rejects Apple's argument that Apple somehow did not *know* that Apple's

7   choice with respect to the unasserted claims would mean Samsung would be allowed to argue at

8   trial that Apple does not practice the asserted patents. *See* Reply at 23; Mot. at 39 ("What began as

9   an order limiting what *Apple* could affirmatively contend at trial on a single issue thus morphed

10   into a license for *Samsung* to make numerous false and misleading statements[.]") (emphasis in

11   original). This claim is belied by the fact that at the pretrial conference, when Apple decided once

12   again to stick with its original five claims, Apple itself acknowledged that its choice not to argue

13   that Apple practices the extra claims would mean Samsung would be able to argue Apple does not

14   practice the patents. ECF No. 1411 at 58 ("[I]f you rule that, [Samsung] can argue that Apple

15   practices no claim in all these patents, and, therefore, that the iPhone is a non-infringing

16   alternative; if that's your ruling, we will abide by it, and we would like to stick with our five

17   claims."); *see also id.* at 61 (the Court informed the parties that "Samsung will be able to argue that

18   the Apple products are non-infringing alternatives" because Apple does not practice the patents).[13]

19

20

21   [13] The Court further notes that Apple's cited case for the proposition that "false statements"

22   warrant a new trial is distinguishable. *Wharf v. Burlington N.R.R. Co.*, 60 F.3d 631, 637 (9th Cir.
      1995), was a case in which an employee sued his employer for a workplace injury, and the Ninth

23   Circuit held the district court should have granted a new trial. The defense counsel had allowed the
      court to tell the jury the stipulated fact that the plaintiff "still ha[d] his job" with the defendant,

24   even though defense counsel knew that this "fact" was false because the defendant had already
      decided to terminate plaintiff. *Id.* The court found this false information prejudiced the plaintiff

25   who could have asked the jury to award more damages if he knew he did not actually still have his
      job. *Id.* at 638. Because the lawyer's misconduct prevented the jury from considering the full extent

26   of the damages caused by the defendant's negligence, a new trial was warranted. *Id.* In this case,
      unlike in *Wharf*, the Court cannot conclude that the statements by Samsung with respect to practice

27   of the unasserted claims were "false," as they went to a *contested* issue that Apple itself chose not
      to address when electing to instead assert its five other claims of infringement.

28

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

Given that Apple was given ample opportunities to make its choice, and that its choice was a strategic decision intended to benefit Apple, this Court finds that Apple's assertion that it could not present evidence of its practice of the unasserted claims does not suffice to meet Rule 59, which permits this Court to grant a new trial only in rare situations when it is necessary to "prevent a miscarriage of justice." Fed. R. Civ. P. 59.

Finally, the Court is not convinced by Apple's contention that "adherence to a case narrowing procedure cannot justify depriving Apple of the right to present the truth about its property rights." Mot. at 40-41; Reply at 24. In support, Apple claims that *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1312-13 (Fed. Cir. 2011), "suggest[s] that a case narrowing procedure could violate the patentee's due process rights where it results in preventing the patentee from introducing evidence concerning unasserted claims that 'present[] unique issues as to liability or damages.'" Mot. at 40-41. The Court rejects Apple's suggestion that this Court's decision to limit Apple to asserting five claims violated Apple's due process rights. In *Katz*, after selecting the total number of claims the district court would allow the patentee to assert at trial, the patentee asked the district court to stay the disposition of various extra claims which the patentee did not select. *In re Katz*, 639 F.3d at 1309-10. The district court denied the patentee's motion because the patentee failed to demonstrate that these extra claims "presented unique issues as to liability or damages" so as to justify a stay. *Id.* at 1312. The Federal Circuit affirmed, rejecting the patentee's due process argument and reasoning that the patentee had not shown that the district court's claim selection procedure "was inadequate to protect Katz's rights with respect to the unasserted claims." *Id.* at 1311. The Circuit noted that *if* the patentee had demonstrated that "some of its unselected claims presented unique issues as to liability or damages" and the district court had refused to permit the patentee to assert those claims, such a "decision would be subject to review and reversal." *Id.* at 1312-13. However, the Circuit noted that the patentee had "made no effort to make such a showing with respect to any of the unselected claims." *Id.* at 1313. Similarly here, although Apple now claims that "Apple's practice [] was highly relevant and unique information that the jury would have considered in determining infringement and damages," Reply

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

at 24, Apple failed to explain in specific detail before trial how its three extra claims presented any "unique issues as to liability or damages" which would have required this Court to deviate from its decision to limit each party to five claims. The Court acted within its discretion when limiting the parties to five claims each in order to keep this complex case manageable for the jury. *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, No. 13-CV-13615, 2014 WL 106926, at *3 (E.D. Mich. Jan. 10, 2014) (citing Federal Circuit cases "establish[ing] the broad discretion of a district court to 'limit the scope of trial in a patent case by limiting the number of claims that can be asserted.'") (citation omitted). To credit Apple's argument that Apple should have been allowed to essentially assert eight claims because its extra claims were relevant to infringement and damages – while insulating three of these claims from invalidity challenges – would eviscerate that discretion by mandating that courts allow parties to assert all claims potentially relevant to the case. It would also conflict with the *Katz* decision which emphasized, while affirming the district court's decision, that in "complex cases," the district court "needs to have broad discretion to administer the proceeding." *In re Katz*, 639 F.3d at 1313 (citation omitted).

Ultimately, the Court concludes that even crediting Apple's concerns, the circumstances of this case do not reach the high standard under Rule 59, which permits this Court to grant a new trial only in rare situations where necessary to "prevent a miscarriage of justice." Fed. R. Civ. P. 59. Accordingly, the Court DENIES Apple's motion for a new trial on the basis that Samsung made improper statements concerning Apple's practice of its patents.

### 2.    Reference to the Possibility of a Permanent Injunction

Apple seeks a new trial on infringement for the '414 and '959, a new trial on willfulness for all Apple's patents other than the '721, and a new trial on damages for all of Apple's patents in order to correct Samsung's allegedly prejudicial reference its opening statement that Apple is seeking "to get an order saying that none of these phones can be sold in the United States anymore." ECF No. 1622 at 358. Mot. at 41. The Court DENIES Apple's motion.

The procedural history is as follows. The Court initially overruled Apple's objection to Samsung's reference in Samsung's opening slides to how Apple is seeking a permanent injunction

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

1  in this case because the reference allegedly suggested Apple was "not entitled to the damages" and

2  also because "equitable relief is to be decided by the Court." ECF No. 1517-3 at 7 (motion); ECF

3  No. 1538 at 1 (ruling); ECF No. 1555 (denying motion for reconsideration). Nonetheless, after

4  Samsung's opening statement in which Samsung told the jury Apple is seeking "to get an order

5  saying that none of these phones can be sold in the United States anymore," ECF No. 1622 at 358,

6  the Court prohibited Samsung from making further reference to Apple's permanent injunction

7  request on the ground that such references would be irrelevant. *See* ECF No. 1623 at 615. The

8  Court denied Apple's request for a curative instruction, *see* ECF Nos. 1567 at 8-9 (motion) & 1578

9  (order), stating on the record that any such instruction would unnecessarily "highlight the issue."

10  ECF No. 1623 at 615. The Court also denied Apple's request for a final jury instruction, *see* ECF

11  Nos. 1758 at 120-21 & 1848.

12      The Court denies Apple's request for a new trial. As an initial matter, there is no rule

13  holding that as a matter of law, references to the possibility of a permanent injunction must be

14  excluded in patent trials. Rather, whether to allow such references at trial is a matter within the

15  court's discretion subject to balancing under Federal Rule of Evidence 403. *See, e.g.*, *Broadcom*

16  *Corp. v. Emulex Corp.*, No. 09-CV-01058, ECF No. 770 at 2 (C.D. Cal. Aug. 10, 2011) (granting

17  motion in limine in patent case to exclude reference to the possibility of permanent injunction relief

18  under Rule 403 because the defendant "offer[ed] no reasoned basis for being permitted to refer to

19  injunctive relief.")[14] Here, this Court's decision to allow the reference during opening statements

20  was made after a balancing of the appropriate Rule 403 factors. Although this Court ruled after

21  opening statements that no further references to the possibility of permanent injunctive relief

22  should be made, the Court finds that Samsung's one reference during its opening statement was not

23  so prejudicial as to warrant a new trial under Rule 59 "to prevent a miscarriage of justice." *Molski*,

24  481 F.3d at 729. Apple does not cite, nor has this Court found, any case in which a new patent trial

---

[14] Apple conceded at trial that the question of whether a party may reference a permanent injunction is a matter "completely in [the Court's] discretion. It's a judgment for [the Court] to make." ECF No. 1621 at 255.

41

1   was granted on the ground that the jury heard a reference to a permanent injunction request or on

2   the ground that a curative instruction with respect to that issue was not given.[15]

3       Further, under Ninth Circuit case law, granting a motion for a new trial on the basis of

4   attorney misconduct is only appropriate where the "flavor of misconduct . . . sufficiently permeate

5   an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in

6   reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th

7   Cir. 1984) (citation omitted). While Apple claims that Samsung's reference during its opening

8   statement invited the jury to "decide the case based on the potential consequences of the verdict,

9   not the facts or the law," Mot. at 42, the Court is not convinced that the jury's consideration of the

10  evidence was so tainted or influenced as a result of this one reference as to warrant a new trial.

11  After Samsung's opening statement, the jury heard evidence from multiple witnesses over the

12  course of thirteen days of trial, and there were no further references to Apple's request for

13  permanent injunctive relief. Accordingly, the Court DENIES Apple's motion for a new trial due to

14  Samsung's allegedly prejudicial reference in its opening statement to the possibility of permanent

15  injunctive relief.

16              **3.      Reference to Federal Circuit Preliminary Injunction Decision**

17      Apple seeks a new trial on infringement, willfulness, and damages for the '959 patent to

18  correct Samsung's allegedly prejudicial references to the Federal Circuit's preliminary injunction

19  decision in this case, *see Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370 (Fed. Cir. 2012). Mot. at

20  42. In that decision, the Federal Circuit held Apple did not satisfy its burden necessary for a

21

22  ---
    [15] *Ciena Corp. v. Corvis Corp.*, 352 F. Supp. 2d 526, 529 (D. Del. 2005), which Apple cites, was a
    decision on a motion for reconsideration of the district court's denial of a permanent injunction in a

23  patent case. There, the court simply cited, without any reasoning, the court's previous motion in
    limine ruling which "required [Defendant] not to refer to the injunctive remedy in the presence of

24  the jury." Apple also cites *Computer Associates Int'l, Inc. v. American Fundware, Inc.*, 831 F.
    Supp. 1516, 1530 (D. Colo. 1993), which is a breach of contract and trade secret misappropriation

25  case, not a patent case, that granted a motion in limine excluding reference to the plaintiff's claim
    for injunctive relief. Neither case held that a new trial must be granted when the possibility of

26  injunctive relief is referenced at trial. Finally, *United States v. Schuler*, 813 F.2d 978, 982 (9th Cir.
    1987), is clearly distinguishable, as it is a criminal case where the prosecutor improperly made

27  comments about the conduct of a non-testifying defendant, and the Ninth Circuit granted a new
    trial because the failure of the district court to give a curative instruction violated the defendant's

28  Fifth Amendment rights.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

**United States District Court**
For the Northern District of California

preliminary injunction with respect to U.S. Patent No. 8,086,604 ("the '604 patent"), and thus

reversed this Court's decision granting a preliminary injunction on the '604. *Id.* at 1377. The Court

DENIES Apple's motion.

Apple claims that the following allegedly prejudicial statement was made by Samsung's

counsel during Samsung's opening statement:

> "What happened is [Apple] sued on a different search patent. [Apple] sued on the '604 patent, not [the '959], and [Apple] went to court and they got an injunction against [Samsung] doing this type of search. We didn't think it was right. We didn't agree, but we complied. And so we – it wasn't hard to do. I mean, we turned that off. We appealed it, and the court of appeals reversed and said we were right, Apple was wrong, we're entitled to do it, and then dropped that patent."

ECF No. 1622 at 402. Apple claims that when making this statement, Samsung incorrectly told the

jury that the Federal Circuit ruled Samsung is entitled to use Apple's universal search feature

claimed in the '959 patent, even though the '959 patent was not at issue in the appeal. Mot. at 42-

43. Apple further claims that Samsung also improperly cross-examined Dr. Vellturo, Apple's

damages expert, by asking him to admit that the only reason Samsung removed the Quick Search

Box feature from its products was this Court's preliminary injunction order, and that Samsung

reincorporated that feature into its products only because that decision was ultimately reversed.

Mot. at 43 (citing ECF No. 1715 at 1341-42). In sum, Apple claims that Samsung's statements

prejudiced Apple because they "suggested to the jury that an appeals court sided with Samsung and

against Apple on an issue that was relevant in the current trial, when in fact the Federal Circuit's

decision had no relevance to the issues that were before the jury." Mot. at 43.

Apple previously moved for a curative instruction and proposed final jury instructions to

correct Samsung's allegedly prejudicial statement in its opening statement, *see* ECF No. 1567;

ECF No. 1758 at 122, but this Court denied both requests. *See* ECF No. 1578 at 2; ECF No. 1848.

The Court finds no reason to change course and thus denies Apple's request, for two reasons.

First, Apple's claim that Samsung incorrectly suggested to the jury that the Federal Circuit

ruled Samsung is entitled to use Apple's universal search feature *claimed in the '959* is meritless in

light of the fact that Samsung's opening statement explicitly told the jury that Apple attained a

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER
OF LAW

preliminary injunction with respect to the '604 patent, not the '959 patent, and that this decision was reversed by the Federal Circuit. ECF No. 1622 at 402. Samsung never mentioned the '959 patent in connection with the Federal Circuit decision. Samsung even explicitly told the jury at other times throughout trial that Apple attained a preliminary injunction with respect to the '604 patent. *See* ECF No. 1714 at 1031-33 (Cross of Dr. Snoeren); ECF No. 1715 at 1342 (Cross of Dr. Vellturo).

Second, Apple's claim that the Federal Circuit's decision had no relevance to the current trial is belied by the fact that Apple itself, when given the choice by this Court, chose to make the decision relevant. This Court expressly told Apple before trial that if Apple chose to argue that Samsung removed the Quick Search Box feature and then reincorporated it due to customer complaints about the feature's absence, Samsung would be allowed to rebut by telling Samsung's side of the story – *i.e.*, that Samsung removed the Quick Search Box only to comply with this Court's grant of a preliminary injunction to Apple regarding the '604, and reincorporated the feature only in response to the Federal Circuit's reversal of that injunction. *See* ECF No. 1621 at 255 (THE COURT: "But if you're going to say, yes, we want to get into the fact that this was removed and customers complained and it was reincorporated, then I think [the fact that the injunction was issued and it was reversed by the higher court] comes in. . . . So take your pick. Which one do you want?"). Apple's counsel elected to make Apple's argument, which opened the door to rebuttal. *See id.* (APPLE'S COUNSEL: "The first. We're going to put it in."). Thus, when Apple subsequently told the jury that Samsung removed the Quick Search Box and restored it as a result of customer complaints, *see* ECF No. 1622 at 322-23; ECF No. 1624 at 996-98, Samsung permissibly rebutted Apple's allegation by referring to the Federal Circuit's decision. ECF No. 1622 at 402-403; ECF No. 1714 at 1030-33 (cross of Dr. Snoeren). Because Apple *chose* to argue that Samsung removed the Quick Search Box feature and reincorporated it due to customer complaints, Apple knowingly opened the door to Samsung's references to the Federal Circuit's preliminary injunction decision and chose to make the decision relevant. Accordingly, the Court finds that a new trial is not warranted, and DENIES Apple's motion.

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

United States District Court
For the Northern District of California

### III.     CONCLUSION

For the reasons discussed above, the Court:

(1) DENIES Apple's motion for judgment as a matter of law of infringement of claim 8 of the '721 patent.

(2) DENIES Apple's motion for judgment as a matter of law of infringement of claim 20 of the '414 patent.

(3) DENIES Apple's motion for judgment as a matter of law of infringement of claim 25 of the '959 patent.

(4) DENIES Apple's motion for judgment as a matter of law that Samsung willfully infringed claim 9 of the '647 patent.

(5)  DENIES Apple's motion for judgment as a matter of law that Samsung failed to establish its affirmative defenses.

(6) DENIES Apple's request for enhanced damages for the '721 patent and the '647 patent.

(7) GRANTS Apple's request for supplemental damages.

(8) GRANTS Apple's request for prejudgment interest.

(9) DENIES Apple's request for judgment as a matter of law of non-infringement of claim 27 of the '449 and vacatur of the damages award.

(10) GRANTS Apple's request for judgment as a matter of law of non-infringement of claim 15 of the '239 patent with respect to Apple's iPad products.

(11) DENIES Apple's request for a new trial on infringement for the '414 and '959, a new trial on willfulness for all Apple patents other than the '721, and a new trial on damages for all Apple's patents.

**IT IS SO ORDERED.**

Dated: September 8, 2014

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

45

Case No.: 12-CV-00630
ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW