1   JOSH A. KREVITT (CA SBN 208552)
    jkrevitt@gibsondunn.com
2   H. MARK LYON (CA SBN 162061)
    mlyon@gibsondunn.com
3   GIBSON, DUNN & CRUTCHER LLP
    1881 Page Mill Road
4   Palo Alto, CA  94304-1211
    Telephone: (650) 849-5300
5   Facsimile: (650) 849-5333

6   MICHAEL A. JACOBS (CA SBN 111664)
    mjacobs@mofo.com
7   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
8   MORRISON & FOERSTER LLP
    425 Market Street
9   San Francisco, California 94105-2482
    Telephone: (415) 268-7000
10  Facsimile: (415) 268-7522

    WILLIAM F. LEE (pro hac vice)
    william.lee@wilmerhale.com
    WILMER CUTLER PICKERING
      HALE AND DORR LLP
    60 State Street Boston,
    Massachusetts 02109
    Telephone: (617) 526-6000
    Facsimile: (617) 526-5000

    MARK D. SELWYN (SBN 244180)
    mark.selwyn@wilmerhale.com
    WILMER CUTLER PICKERING
      HALE AND DORR LLP
    950 Page Mill Road
    Palo Alto, California 94304
    Telephone: (650) 858-6000
    Facsimile: (650) 858-6100

11  *Attorneys for Plaintiff Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

14  APPLE INC., a California Corporation,

15              Plaintiff,

16          v.

17  SAMSUNG ELECTRONICS CO., LTD., a
    Korean corporation; SAMSUNG
18  ELECTRONICS AMERICA, INC., a New
    York corporation; and SAMSUNG
19  TELECOMMUNICATIONS AMERICA,
    LLC, a Delaware limited liability company,

20              Defendants.

21  ───────────────────────────────
    SAMSUNG ELECTRONICS CO., LTD., a
22  Korean corporation; SAMSUNG
    ELECTRONICS AMERICA, INC., a New
23  York corporation, and SAMSUNG
    TELECOMMUNICATIONS AMERICA,
24  LLC, a Delaware limited liability
    company,

25              Counterclaim-Plaintiffs,

26          v.

27  APPLE INC., a California corporation,
                Counterclaim-
28              Defendant.

CASE NO. 12-cv-00630-LHK (PSG)

**APPLE INC.'S MOTION TO EXCLUDE
CERTAIN UNRELIABLE AND
IMPERMISSIBLE SAMSUNG EXPERT
TESTIMONY**

**HEARING:**

Date:       January 23, 2013
Time:       1:30 p.m.
Place:      Courtroom 4, 5th Floor
Judge:      Hon. Lucy H. Koh

**ORAL ARGUMENT REQUESTED**

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2013, or as soon as the matter may be heard by the Court, Lucy H. Koh, in Courtroom 4, United States District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, CA 95113, Apple, Inc. ("Apple") shall and hereby does move the Court for an order excluding certain expert testimony proffered by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC ("Samsung").

**RELIEF REQUESTED**

Apple seeks an order precluding Samsung from relying on certain impermissible and unreliable expert testimony.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Samsung's damages expert, Dr. Judith A. Chevalier, should be precluded from offering unreliable testimony about license agreements and/or offers to license.

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

4.      Whether Dr. Rinard, Samsung's technical expert on issues relating to Apple's '959 patent, should be precluded from testifying about misleading demonstrations concerning certain purported prior art systems.

5.      Whether Dr. Chevalier, and any other Samsung expert, should be precluded from testifying about the opinions of Apple's experts expressed in past cases.

Gibson, Dunn & Crutcher LLP

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY      -1-      CASE NO. 12-CV-00630-LHK (PSG)

1    Dated:  October 10, 2013                    GIBSON, DUNN & CRUTCHER LLP

2

3                                               By:  /s/ H. Mark Lyon

4

5                                               Attorneys for Plaintiff
                                                APPLE, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................................1

II.   LEGAL STANDARDS ........................................................................................................1

III.  ARGUMENT ......................................................................................................................1

    A.    Dr. Chevalier Should Be Precluded from Offering Unreliable Testimony
         Concerning Patent Licenses ....................................................................................1

         1.    Dr. Chevalier's Use of Licenses..................................................................2

         2.    None of Dr. Chevalier's Proffered Licenses Are Comparable ..................3

         3.    Dr. Chevalier's Methodology For Determining a Royalty Rate Is
             Unsound ........................................................................................................8

    B.

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

    C.

D.      Dr. Rinard Should be Precluded From Creating Unreliable and Misleading Demonstrations Concerning Certain Purported Prior Art Systems.....................23

E.      Samsung's Experts Should be Precluded From Testifying About the Opinions of Apple's Experts Expressed in Past Cases ........................................24

IV.      CONCLUSION ............................................................................................................25

Gibson, Dunn &
Crutcher LLP

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Apple, Inv. v. Samsung Elecs., Co., Ltd.,*
No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. 2012)....................................4

*Applied Med. Research Corp. v. United States Surgical Corp.,*
448 F.3d 1324 (Fed. Cir. 2006)....................................21

*Blackboard, Inc. v. Desire2Learn, Inc.,*
574 F.3d 1371 (Fed. Cir. 2009)....................................20

*Dataquill Ltd. v. High Tech Computer Corp.,*
887 F. Supp. 2d 999 (S.D. Cal. 2011)....................................3, 5, 7

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993)....................................1, 23

*Grain Processing Corp. v. Am. Maize-Prods. Co.,*
185 F.3d 1341 (Fed. Cir. 1999)....................................24

*In re REMEC Inc. Sec. Litig.,*
702 F. Supp. 2d 1202 (S.D. Cal. 2010)....................................15

*KSR v. Teleflex,*
550 U.S. 398 (2007)....................................23

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999)....................................1

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
694 F.3d 51 (Fed. Cir. 2012)....................................3

*Lucent Technologies, Inc. v. Gateway, Inc.,*
580 F.3d 1301 (Fed. Cir. 2009)....................................3, 7

*ResQNET.com, Inc. v. Lansa, Inc.,*
594 F.3d 860 (Fed. Cir. 2010)....................................3, 4

*TV Interactive Data Corp. v. Sony Corp.,*
929 F. Supp. 2d 1006 (N.D. Cal. 2013)....................................3

*Utah Med. Prods., Inc. v. Graphic Controls Corp.,*
350 F.3d 1376 (Fed. Cir. 2003)....................................3

*Welker Bearing Co. v. PHD, Inc.,*
550 F.3d 1090 (Fed. Cir. 2008)....................................21

**Statutes**

35 U.S.C. § 103....................................23

**Rules**

Fed. R. Evid. 702....................................1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY       -iii-       CASE NO. 12-cv-00630-LHK (PSG)

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.     INTRODUCTION**

3          Samsung has served over a dozen expert reports in this case, each of which contains

4   numerous methodological, factual, and legal flaws.  In accordance with this Court's order,

5   however, Apple has limited this motion to five areas where Samsung has clearly crossed the

6   bounds of permissible expert testimony established by *Daubert v. Merrill Dow*, and proffered

7   opinions that are unreliable on their face.  As discussed below, the proffered testimony is not the

8   product of reliable principles and methods, is not tied to the facts of this case, will not assist the

9   trier of fact, and accordingly should be excluded.

10  **II.    LEGAL STANDARDS**

11         The admissibility of expert testimony is governed by Fed. R. Evid. 702, as informed by

12  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526

13  U.S. 137 (1999), and their progeny.  Under Fed. R. Evid. 702, the trial judge serves as a

14  gatekeeper, tasked with "ensuring that an expert's testimony both rests on a reliable foundation

15  and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  These rules apply to all expert

16  testimony, regardless of whether that testimony is scientific or technical in nature.  *Kumho Tire*,

17  526 U.S. at 148.

18  **III.   ARGUMENT**

19         **A.     Dr. Chevalier Should Be Precluded from Offering Unreliable Testimony
                    Concerning Patent Licenses**

20

21         Samsung's damages expert, Judith Chevalier, performed an unreliable analysis of

22  numerous patent licenses that are not comparable, either from an economic or a technical

23  perspective, to a license for the Apple patents-in-suit.  Dr. Chevalier presents average royalty

24  data from ████████ and ██████ licenses in her report, and uses these figures to support

25  her opinion for a $0.35 per-unit royalty rate for a license to all of the Apple patents.  Yet she has

26  not even said, much less shown, that any of her proffered licenses are technically or

27  economically comparable to a license to the patents-in-suit.  The Federal Circuit, this Court, and

28  many other courts have consistently held that opinions based on-non comparable licenses are

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -1-     CASE NO. 12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

impermissible under *Daubert*.

Dr. Chevalier has also applied a wholly unreliable methodology for extracting royalty rates from these irrelevant licenses, and has done so without any factual basis.  She takes ███ ████████████████████████████████████████████████████████████, divides up their payment amounts across patents, and arrives at flat, per-patent, per-unit, rates that she simply assumes, without establishing, apply to the Apple patents in this case.  In the process, she dismisses or ignorers █████████████████████████████████ ████████████████████████████████████████████ █████████████ Similarly, she takes a series of ███████████████████████ ████████████████████████████████████, and then suggests that the per-unit rates she arrives at would apply to a license between Apple and Samsung in this case.  She does so without ever looking at the ████████████████ ████████████████████████████████████████████████ and the Apple patents-in-suit.  Finally, she offers no support for her suggestion that Apple would have approached a negotiation with its principal competitor in such a manner, particularly in regard to five patents that cover technologies that Samsung needed to continue to market many of its existing products.  These defects render Dr. Chevalier's entire analysis of patent licenses unreliable and inadmissible under *Daubert*.[1]

### 1.   Dr. Chevalier's Use of Licenses

Dr. Chevalier uses licenses in three primary areas in her report, all in support of her calculation of a reasonable royalty for the Apple patents-in-suit.  Below is a brief summary of her analysis:

- ***Form of the Reasonable Royalty.***  Dr. Chevalier sets forth over █████████ and ████████ licenses at ¶¶ 298-299 of her report (and accompanying exhibits 69-72)

---

[1]Apple is not seeking to strike Dr. Chevalier's entire reasonable royalty opinion.  Dr. Chevalier presented alternative bases for her opinion which would remain intact.  The ruling Apple seeks would put Samsung in the same position as it was in the 1846 case, where it properly acknowledged that there were ████████████████.  Wagner Report (1846 D.I. 940-22) at ¶¶ 391-405.

in support of her opinions about the "form of the royalty," which she contends should be a lump sum.

- **Market Approach to Valuing Licenses**. Dr. Chevalier cites to Apple and Samsung licenses and cross licenses at ¶¶ 303-334 in support of her "market approach" to valuing a reasonable royalty. Dr. Chevalier also incorporates into her calculations a Rule 408 settlement discussion between Apple and Samsung. *Id*. at ¶ 334.

- **Georgia Pacific Analysis.** Dr. Chevalier incorporates her previous discussion of her "market approach," discussed above, into her analysis of *Georgia Pacific* factors 1 (the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty) 2 (the rates paid by the licensee for the use of other patents comparable to the patent in suit), and 15 (the outcome of the hypothetical negotiation) at ¶¶ 367-68, and 404 of her report. Dr. Chevalier lists the different ranges of rates purportedly implied by her licenses, and states that they support her ultimate conclusion of a different, flat $0.35 per-unit royalty rate. *Id*. at ¶ 404-409.

### 2.      None of Dr. Chevalier's Proffered Licenses Are Comparable

The Federal Circuit has made it abundantly clear that license agreements that are not comparable to a license to the patents-in-suit that the parties would have agreed to at the hypothetical negotiation cannot form a reliable basis of a damages opinion. *See ResQNET.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit."). *See also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009) ("[A] lump-sum damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated here.").

The Federal circuit, this Court, and other courts, have consistently recognized opinions grounded on non-comparable licenses are unreliable and inadmissible under *Daubert*. Indeed, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79-81 (Fed. Cir. 2012) the Federal Circuit held that an expert's royalty opinion was "unreliable under Federal Rule of Evidence 702 and should have been excluded" where it relied on non-comparable licenses. *See also, e.g., Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (affirming district court's exclusion of expert testimony relying on non-comparable licenses); *TV*

Gibson, Dunn & Crutcher LLP

1   *Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013) (excluding

2   expert from referring to royalty rates associated with licenses "for technologies that are not

3   comparable to the technology of the patents-in-suit."); *Dataquill Ltd. v. High Tech Computer*

4   *Corp.*, 887 F. Supp. 2d 999, 1024 (S.D. Cal. 2011) (excluding expert testimony where licenses,

5   although technically comparable, were not economically comparable to the hypothetical

6   negotiation).[2]

7          Dr. Chevalier has, throughout her analysis, simply ignored the Federal Circuit's mandate

8   in *ResQnet*, and has instead relied on dozens of agreements that *even she acknowledges are <u>not</u>*

9   *comparable*.  Chev. Rep., ¶ 322 (Ex. A-1) ("each of these agreements is for technology that

10  generally differs somewhat from that provided by the patents at issue.").[3]  Indeed, at no point in

11  the entirety of her report does she *ever once say* that any of these agreements are comparable, let

12  alone point to the testimony of a technical expert or fact witness supporting such an assertion.

13  As discussed below, none of Dr. Chevalier's licenses meet the standard set forth in *ResQnet*.

14          ***Apple's Licenses-In***.  Dr. Chevelier relies on ███████████████████████████

15  ████████████████████████████████████████.  She discusses only five of these

16  agreements in her report and relegates the rest to a chart appended as an exhibit.  Chev. Rep.,

17  ¶ 322 & Ex. 70 (Ex. A-1).  As an initial matter, these licenses are entirely irrelevant regardless of

18  their comparability, because what Apple might pay to third parties for their patents has no

19  bearing on what Apple would insist on for a license to the Apple patents-in-suit.  *See, e.g,*

20  *ResQNet*, 594 F.3d at 869 ("The first Georgia-Pacific factor requires considering past and

21  present royalties received by the patentee for the licensing of the *patent in suit* . . . By its terms,

22  this factor considers only past and present licenses to the actual patent and the actual claims in

23  litigation") (emphasis in original).[4]  In any event, these agreements are neither economically nor

---

[2]   Indeed, Samsung has advocated for this exact same position in the 1846 case, and successfully moved to strike a portion of Dr. Musika's opinion on the basis that testimony about non-comparable licenses is inadmissible under *Daubert*.  *Apple, Inv. v. Samsung Elecs., Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. 2012).

[3]   Citations in the form "Ex. A-_," "Ex. B-_," etc. are citations to documents appended to the Declaration of Casey J. McCracken submitted  in support of this Motion.

[4]   Although *Georgia Pacific* factor 2 allows exploration into licenses of patents that are *comparable* to the patent in suit, rather than licenses to the patent in suit itself, that is in the context of analyzing the *licensee's* agreements (i.e., Samsung's) not the licensor's.

technically comparable to a license to the patents-in-suit, and should be excluded.

Dr. Chevalier does not even attempt to make a showing that any of her proffered Apple licenses-in are economically comparable to a license between Apple and Samsung, the two paramount competitors in the smartphone and tablet market. ███████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ Chev. Rep. at ¶ 327 (Ex. A-1) (discussing licenses from Traffic Information LLC, Mr. Morris Reese, Mr. Romek Figa, Klausner Technologies, Texas MP3, and Mr. Alfred Levine). The same is true for many of the agreements she includes in her table of licenses. *See id.*, Ex. 70 at, *e.g.*, rows 2a (Thomson Licensing), 4 (Mr. Trevor Blumenau), 9 (Global Patent Holdings). The other agreements she lists in those tables are between Apple and entities that it does not compete with in the smartphone or tablet markets. *Id.* at, *e.g.*, rows 2 (Thomson Consumer Electronics), 3 (AT&T), and 39 (University of Southern California). These agreements do not shed any light on the significant royalty Apple would demand from Samsung, a ruthless competitor who has engaged in a systematic campaign to copy Apple's products and displace it from the market using its own technology, and consequently should be excluded. *See, e.g., Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1023 (S.D. Cal. 2011) ("Mr. Gemini has failed to establish economic comparability and his testimony regarding [license agreements] should be excluded on this ground alone.").

Finally, none of Dr. Chevalier's Apple licenses-in are technically comparable.[5] Of the five licenses that Dr. Chevalier actually discusses in her report, none of them have any connection to the patented technology. At the very most, they relate to technologies that happen to be used in mobile devices, ████████████████████████████████████████ but nothing even approximating the technology at issue in this case. *Id.* at ¶ 327. The agreements she includes in the chart at the back of her report (Ex. 70) are even less relevant. Indeed, Dr. Chevalier repeatedly puts nothing more under her "technology" heading than "not

---

[5] Dr. Chevalier testified at her deposition that she did not look at the patents covered by her proffered licenses. Chevalier Tr., 283-84 (Ex. A-2). Nor does she set forth any information from Apple depositions, Samsung employees, or technical experts about the nature of the patented technology provided under these licenses.

specified in the agreement," and provides no further analysis of technical comparability.  *See id.*, Ex. 70 at rows 4, 6, 8-10, 14-15, 17-20, 22-24, 28-30,32-33, 35, 37-40, 42, 44-45, 47-50, 53-58, 60-61, 63-64 (Ex. A-1).  Even when she does list technologies, they are either irrelevant on their face, or generic and not tied to the patents-in suit.  *See id.* at, *e.g.*, rows 13 (█████████, 21 █████████████████ 25 █████████████ and 26 ████████████  It is no surprise that Dr. Chevalier, in her own report, concedes that these licenses relate to different technology.  *Id.* at ¶ 322 n. 725.

     ***Samsung's Licenses-In***.  Dr. Chevalier relies on ████████ where Samsung ████████ ████████████████ to intellectual property.  *See id.* at ¶¶ 323-25 & Ex. 72.  Chevalier does not even say, much less show, that any of these agreements are economically or technically comparable.  Indeed, Dr. Chevalier relies on three of these agreements in the body of her report: a ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████.  *Id.* at ¶ 327.  She then discusses ████████████████████████████████, but distinguishes it from a license between Apple and Samsung, rather than attempt to show it is comparable.  *Id.* at ¶¶ 332.  She relegates all of the remaining Samsung licenses-in to the exhibits in the back of her report.  None of these licenses are economically or technically comparable to a license to the Apple patents in suit.

     None of Dr. Chevalier's proffered Samsung licenses-in are economically comparable to a license between Apple and Samsung.  The four licenses discussed above are from an individual inventor, two NPEs, and to a company that clearly does not compete with Samsung in the smartphone market.  Many of the other licenses-in that Dr. Chevalier includes in her exhibits are similarly agreements with NPEs or individual inventors.  *See e.g., id.* at Ex. 72 at rows 1-1a ██████████████████), 8 (███████████), 13 (██████████████), 14 (██████████████), 25 (██████████████████), 27 (████████████████████), 43 (████████████ █████████), 54 (████████  Other agreements are between Samsung and companies that it clearly does

not compete with in the Smartphone or tablet space.  *See e.g., id.* at rows 3 (███████████ 6

(████████); 15-16 (███████████), 41 (███████████.), 45 (██████).  Not even Dr.

Chevalier asserts that any of these entities are significant competitors with Samsung in the

smartphone market.  These agreements offer no insight into the value of a royalty between Apple

and Samsung.

Nor are any of these agreements technically comparable to a license to the Apple patents-

in-suit.  Again, Dr. Chevalier has all but admitted that these agreements are not comparable in

her report.  *Id.* at ¶ 322 n. 725.  Even with respect to the four agreements she actually describes

in her report, discussed above, she does not do anything more than suggest that they relate

generally to technology that can be used in smartphones.  Again, the agreements in her table of

licenses (Ex. 72) are even worse.  Just as with the Apple agreements discussed above, Dr.

Chevalier repeatedly states that the technology at issue is "not described in the agreement" and

provides no further analysis.  *See id.* at rows 3, 8, 11-12, 14-18, 20, 22- 23, 27, 30-31, 33-34, 36-

38, 40-41, 43-44, 46, 49-50, 52, 54-58, 62-64.  Even where the licensed technology is described,

it is plainly irrelevant or done generically, and there is no attempt to tie it to the patented

technology in this case.  *See id.* at, *e.g.*, rows 1 ("███████████"), 5 ("███████████

███████████), 6 ("███████████ and 47 ("███████████  None of her

Samsung agreements are comparable, and they should be excluded.

***Apple and Samsung's Cross-Licenses***.  Dr. Chevalier has relied on ███████████

███████████████████████████████████.  *Id.* at

¶ 324, Ex. 69 (███████████) & Ex. 71 (███████████).  Because they relate to

rights to large numbers of patents going in both directions, they are by definition very different

from the one-way license to a limited number of patents-in-suit that the parties would agree to at

the hypothetical negotiation.  *See Lucent*, 580 F.3d at 1328-29; *see also Dataquill*, 887 F. Supp.

at 1023 (excluding expert reliance on "worldwide license" covering "hundreds of patents"

because such license was "radically different from the hypothetical agreement under

consideration.").  Dr. Chevalier concedes this point, and states that portfolio cross-licenses

"provide limited guidance" "because of the variety of factors that differentiate many of these

agreements from the hypothetical negotiation." Chev. Rep., ¶ 324 (Ex. A-1).  Yet rather than properly dispense with these licenses in accordance with the mandate of *ResQnet,* she includes them all in her exhibits.  None of them are comparable, and her opinions concerning them should be excluded.[6]

### 3.    Dr. Chevalier's Methodology For Determining a Royalty Rate Is Unsound

Dr. Chevalier's testimony should also be excluded because her methodology for determining her royalty rates is unsound.  Dr. Chevalier extracts her ranges of royalty rates, under her "market approach" for valuing licenses, from three sources: (1) Apple's settlement with HTC, (2) Apple's settlement discussions with Samsung, and (3) a series of Samsung patent ███████████████████████████████████████████████" *Id.* at ¶ 334.  As discussed below, her analysis in each case is based on guesswork and flawed assumptions that have no factual basis.

**Apple's Settlement with HTC**.  The *Apple v. HTC* agreement does not provide any means to value the specific patents at issue in this case, and Dr. Chevalier's attempt to extract a royalty rate from this agreement is both unsupported by fact and wholly outside her expertise.  As Dr. Chevalier notes, the agreement ████████████████████████████████████████ ████████████████████████████████████████.  *Id.* at ¶¶ 309-10.  Even Dr. Chevalier concedes that this payment plainly does not reflect a value to the Apple patents-in-suit in this case.  *Id.* at ¶¶ 311-13. ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *Id.* at ¶ 314. ██████████████████████████████

---

[6]  Dr. Chevalier does not opine that ████████ of cross-licenses she identifies in Exhibits 69 and 71 are comparable economically or technically.  They are not, as the vast majority relate ████████████████████████████████████████████████████ Although she discusses a ████████████████████████████ (*id.* at ¶ 333 & n. 744; Ex. 71, row 34), she does not even attempt to show that any of the ████████████ provide rights that are comparable to any of the Apple patents at issue in this case.  Nor does she make any effort to account for the very different competitive positions between Apple ████████████████████████, and Apple's markedly greater disincentive to license Samsung.  And although she attempts to make adjustments to account for the non-comparability of Apple's settlement and cross-license agreement with HTC, her methodology for doing so, as discussed below, is fundamentally flawed.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                -8-

Gibson, Dunn &
Crutcher LLP

1   █████████████████████████████████████████████████████████████

2   ████████████████████████████████████████████.

3          Dr. Chevalier recognizes these problems, but rather than dispense with the agreement,

4   applies arbitrary discounts and weights in order to "account" for them. *Id.* at ¶ 313-317.  To

5   account for the value of HTC's patents being licensed to Apple, Dr. Chevalier relies on an

6   alleged ████████████████████████████████████████████████████████

7   ████████████████████████.  Dr. Chevalier simply applies the same "██████████" to

8   account for HTC's patents.  She opines that this estimate is conservative because, according to

9   one article by RBC Capital Markets and one article she found on the internet in the China post,

10  HTC's patent portfolio is "weak" compared to Samsung's. *Id.* at ¶ 313 & n. 710.  To account for

11  the fact that the license includes multiple Apple patents licensed to HTC, she assigns each patent

12  a certain weight, but without ever examining the patents. *Id.* at ¶ 317 & Ex. 75.[7]  Finally, Dr.

13  Chevalier simply ███████████████████████████████████████████████████

14  ████████████   *Id.* at ¶ 314, n. 712.  Through this process, Dr. Chevalier arrives at one range of

15  per-patent, per-unit, rates that she suggests should apply equally to each of the different Apple

16  patents at issue in this case.

17         Dr. Chevalier's approach is entirely arbitrary.  She applies adjustments and weights that

18  have no grounding in fact, and arrives at results that are senseless on their face, as they suggest

19  that five very different Apple patents have identical values. Dr. Chevalier has no factual basis—

20  and no expertise—that would enable her to reliably value or weight Apple's patents, set a value

21  on HTC's entire patent portfolio, compare it to Samsung's portfolio, ████████████████████

22  ████████, or otherwise manipulate this agreement to arrive at a royalty rate for Apple's patents

23  in this case.

24         ***Apple's Settlement Discussions with Samsung***.  Dr. Chevalier has also improperly relied

25  on Rule 408 settlement discussions between Apple and Samsung, conducted in October of 2010,

26

27  ───────────────

      [7]  She assigns an equal weight to all five Apple patents in suit, even though she well knows that
28  assumption to be wrong. Chev. Rep., Ex. 75 (Ex. A-1); Chevalier Tr., 284-85 (Ex. A-2); *see also*
      Chev. Rep., ¶¶ 405-408 (Ex. A-1).  Indeed, in other portions of her report, she claims that certain
      patents-in-suit are more valuable than others.  Chev. Rep., ¶ 338 (Ex. A-1).

1    in order to place a value on a patent license. *See id.* at ¶¶ 318-21. This Court already ruled, in

2    the 1846 case, that these discussions could not come into evidence for purposes of establishing

3    the amount of damages. *See* D.I. 1695 (Trial Tr. in 11-CV-01846) at 1969 (limiting instruction

4    that evidence could not be used to determine "the amount of the disputed claim"). Even if this

5    settlement discussion were to be considered for its substance, Dr. Chevalier's analysis of it

6    should be stricken because it is based on the same type of guesswork discussed above.

7          Indeed, according to Dr. Chevalier, the Apple/Samsung settlement discussion involved an

8    ███████████████████████████████████████████████████. *Id.* at ¶ 319;

9    Chevalier Tr., 281-82 (Ex. A-2). Again, Dr. Chevalier simply divides the number of Apple

10    patents by the offered payment amounts, applying the same "weighting" approach she used in

11    the HTC analysis, to determine a range of flat per-patent, per-unit rates that she says should

12    apply equally to each Apple patent-in-suit. Chev. Rep., ¶ 320 & Ex. 76 (Ex. A-1). Again, she

13    makes no effort to examine the licensed patents or differentiate their values. In fact, she even

14    ignores sworn testimony, ████████████████████████████████████████

15    ████████████████████████████████████. Teksler Tr., 52-59, 71-72

16    (Ex. A-3). Dr. Chevalier has no basis for extracting a flat royalty rate applicable to each of the

17    Apple patents-in-suit from this settlement discussion.

18          **Samsung's Licenses.** Dr. Chevalier uses a ████ of Samsung ████████████ to

19    derive average per-unit royalty rates that Samsung purportedly has paid ███████████

20    ██████████" She then suggests that this royalty rate could apply to a license for all of

21    Apple's patents in this case. Her methodology for doing so is flawed at the most basic levels.

22          Dr. Chevalier has never made any attempt to connect any of the technology of these

23    third-party patents to the Apple patents in suit. As discussed above, she admitted she never

24    looked at these patents, and never talked to anyone at Samsung about the technology that was

25    licensed. The only comparison that she draws is that these are all licenses ███████████

26    █████" but that says nothing about their value. Dr. Chevalier clearly has no factual basis for

27    opining that any of these lump sum values reflect a value for Apple's patents in this case.

28          Moreover, Dr. Chevalier's suggestion that these lump-sum agreements implied per-unit

1  rates, even with respect to Samsung's products, is also completely without factual basis.  Dr.

2  Chevalier simply assumes that she can divide these often small lump-sum payments by

3  Samsung's ███████████, and properly arrive at very small per-unit rates.  *Id.* at ¶ 331.

4  That analysis ignores the fact that many of these licenses ████████████, and that the

5  ████████████████████████, and do not approximate a per-

6  unit value of the patented technology.

7                              *       *       *

8         Dr. Chevalier's entire analysis of licenses in her report is undermined by these defects,

9  and no portion of it should survive.  Accordingly, Apple requests that the Court preclude Dr.

10  Chevalier from offering the opinions concerning licenses set forth in ¶¶ 298-299 ("form of the

11  royalty"); ¶¶ 303-334 (Dr. Chevalier's "market approach" to valuing licenses); ¶¶ 367-68, and

12  404 (*Georgia Pacific* factors 1, 2 and 15), the tables of licenses found at Exs. 69-73, and the

13  tables performing various calculations and analyses of those licenses at Exs. 74-85, along with

14  any testimony referring or relating to this material.[8]

15  PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
    THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
16                    RELATED TO SAMSUNG PATENTS, D.I. 1145

17

18

19

20

21

22

23

24

25

26  [8] ██████████████████████████████████████████.  Dr.
    Chevalier does not attempt to explain how it would be comparable to a license between Apple
27  and Samsung, and it should consequently be stricken.
    PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE
28    STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
                    RELATED TO SAMSUNG PATENTS, D.I. 1145

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY      -11-      CASE NO. 12-CV-00630-LHK (PSG)

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

Gibson, Dunn & Crutcher LLP

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -12-     CASE NO. 12-CV-00630-LHK (PSG)

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE
STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
RELATED TO SAMSUNG PATENTS, D.I. 1145

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -16-     CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        -17-        CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -18-     CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

Gibson, Dunn & Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
RELATED TO SAMSUNG PATENTS, D.I. 1145

## D. Dr. Rinard Should be Precluded From Creating Unreliable and Misleading Demonstrations Concerning Certain Purported Prior Art Systems

Samsung's '959 Patent expert, Dr. Martin Rinard, should be precluded from presenting purported "demonstration systems" that he built for this litigation as part of his invalidity analysis. Dr. Rinard alleges that claims 24 and 25 of Apple's '959 Patent are anticipated or rendered obvious by the "WAIS system" and the "AppleSearch system." In particular, Dr. Rinard asserts anticipation based on specific combinations and configurations based on various components that he then calls a "WAIS system" and an "AppleSearch system." As described in detail in Apple's Motion for Summary Judgment, Samsung has no evidence that the specific combinations and configurations he identifies were known, used or on sale in the U.S. Apple's Mot. for Summary Judgment, Oct. 10, 2013 at 15-19. Samsung knows this, and so had Dr. Rinard construct a "demonstration system," in 2013, based on his own combination of older, pre-2000 parts. *See* Rinard Rep. ¶¶ 480-491, Rho Decl. ISO Apple's Motion for Summary Judgment, Oct. 10, 2013, Ex. D-1.

Samsung's cobbled-together system is not prior art, of course, because it did not exist as a complete system before the patent was filed. This Court already found as much when it held, during the preliminary injunction phase, that Samsung's "post-hoc, reconstructed interpretation of how a WAIS system might have been constructed does not constitute prior art for purposes of anticipation." D.I. 230 at 6. Samsung now suggests, however, that so long as Samsung will not offer these systems as actual prior art evidence, Samsung can nevertheless still use them as "demonstrations" that are "representative" of what could have been built at the time.[23]

Samsung's suggestion that it could appropriately present this concoction to the jury is both an attempt to end-run this Court's prior order, and is completely outside the bounds of the permissible use of expert testimony. Expert testimony is permitted only insofar as it will "help the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702. The question of anticipation turns upon the analysis of evidence of what was ***actually done prior to***

---

[23] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████ Rinard Dep. Tr. at 204:8-205:23, Rho Decl. ISO Apple's Motion for Summary Judgment, Oct. 10, 2013, Ex. D-2.

*the invention*, whereas the question of obviousness focuses on whether a person of ordinary skill in the art *at the time of the invention* would have been led to combine the known elements in a certain manner.  35 U.S.C. § 103.  Dr. Rinard's litigation-built systems do the opposite of assisting the trier of fact in deciding these questions—they instead only mislead the jury into believing that a system that did not exist before the patent might have existed, or might have been easily constructed.  Testimony of this sort, proffered by an expert witness, could be "both powerful and quite misleading because of the difficulty in evaluating it."  *Daubert*, 509 U.S. at 595.  That is particularly true here, where a juror could easily think that these "demonstration" systems are themselves prior art, or conclude that the combination of elements they suggest must have been obvious.  Indeed, the clear and impermissible hindsight bias that Dr. Rinard employed to construct these systems could be very difficult for the jury to recognize.  *See KSR v. Teleflex*, 550 U.S. 398, 421 (2007).  For all of these reasons, Samsung should not be permitted to present this "demonstration" to the jury.

E.    **Samsung's Experts Should be Precluded From Testifying About the Opinions of Apple's Experts Expressed in Past Cases**

Samsung's experts should be precluded from testifying about the opinions of Apple's experts expressed in past cases, including experts that are not testifying in this case, as such testimony from other cases is not probative of any issue in this case and would cause confusion of the issues and a mini-trial on expert opinions not given in this case.  In her report, Dr. Chevalier opines that Apple has been inconsistent across lawsuits in applying a damages methodology.  Chevalier Rep. ¶¶ 343-347.  Specifically, she opines that, in her opinion, the analysis undertaken by Mr. Musika and Ms. Davis, Apple's experts in the 1846 case, is inconsistent with Dr. Vellturo's analysis in this case because (in her view) Mr. Musika and Ms. Davis concluded that the value of all intellectual property in Samsung phones is $4, while Dr. Vellturo concluded that the value of the six patents in this case is $42.  *Id.* at ¶ 344.  Additionally and separately, Dr. Chevalier purports to apply "Apple's patent apportionment approach from its last case" as part of her "market approach" damages analysis.  *Id.* at ¶ 317 & Ex. 75.  She also references Apple's expert, Dr. Vellturo's, testimony in prior cases.  *Id.* at ¶ 289 n.674, ¶ 301 n.

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          -24-          CASE NO. 12-cv-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

690, ¶ 322, n. 725, ¶ 342, n. 761.

Expert opinions on damages in prior cases are not relevant to opinions given in this case. The Federal Circuit has made clear that there are many ways to calculate a damages award. *See, e.g.*, *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999) ("[C]ourts have given patentees significant latitude to prove and recover lost profits for a wide variety of foreseeable economic effects of the infringement."). Thus, it is unsurprising, and of no evidentiary value, that different experts in different cases, or the same expert in different cases, have tackled the problem differently.

Moreover, even if opinions regarding the methodology and conclusions of experts in other cases have some relevance, they are far more prejudicial than probative and would cause substantial confusion of the issues. The opinions of Mr. Musika and Ms. Davis that Dr. Chevalier discusses in her report were given in a different case regarding different products over a different time period, and more importantly, involved entirely different patents. If Samsung plans to attack Apple's experts regarding differences between their opinions in this case and opinions of other experts in a different case, Apple will be entitled to put forth evidence of what theories were pursued in those previous cases, what analysis was done by Apple's experts, what positions Samsung (or other parties) and its experts took, and what the jury found. A full analysis of the theories and opinions given in other cases would result in a mini-trial regarding economic analysis that is not pertinent to this case. Further, Mr. Musika and Ms. Davis will not be testifying at trial in this case to defend their analysis or to explain why it was appropriate under the facts and circumstances of an entirely different case.

There is substantial debate between the parties' experts as to how damages should be awarded in *this* case. To add to that a debate about how damages should be awarded in the 1846 case—which is still being disputed in that case—would muddle already complicated issues. The Court should avoid this confusion by precluding testimony regarding expert opinions given in other litigation.

## IV.    CONCLUSION

For the foregoing reasons, Apple respectfully requests the Court grant this Motion.

Dated:  October 10, 2013

Respectfully Submitted,


By:  /s/ H. Mark Lyon


Attorneys for Plaintiff
APPLE, INC.

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document, and all supporting documents and exhibits, was filed electronically in compliance with Civil Local Rule 5-1, and will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC who have consented to electronic service in accordance with the Northern District of California Local Rules via the Court's ECF system.

Date     October 10, 2013                         /s/ Mark Lyon
                                                  Mark Lyon

Gibson, Dunn &
Crutcher LLP

APPLE'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -27-     CASE NO. 12-cv-00630-LHK (PSG)