1  JOSH A. KREVITT (CA SBN 208552)
   jkrevitt@gibsondunn.com
2  H. MARK LYON (CA SBN 162061)
   mlyon@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
4  Palo Alto, CA  94304-1211
   Telephone: (650) 849-5300
5  Facsimile: (650) 849-5333

6  MICHAEL A. JACOBS (CA SBN 111664)
   mjacobs@mofo.com
7  RICHARD S.J. HUNG (CA SBN 197425)
   rhung@mofo.com
8  MORRISON & FOERSTER LLP
   425 Market Street
9  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
10 Facsimile: (415) 268-7522

WILLIAM F. LEE (pro hac vice)
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street Boston,
Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

11 *Attorneys for Plaintiff Apple Inc.*

12               UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN JOSE DIVISION

14 APPLE INC., a California Corporation,

15              Plaintiff,

16        v.

17 SAMSUNG ELECTRONICS CO., LTD., a
   Korean corporation; SAMSUNG
18 ELECTRONICS AMERICA, INC., a New
   York corporation; and SAMSUNG
19 TELECOMMUNICATIONS AMERICA,
   LLC, a Delaware limited liability company,
20
                Defendants.
21
   SAMSUNG ELECTRONICS CO., LTD., a
22 Korean corporation; SAMSUNG
   ELECTRONICS AMERICA, INC., a New
23 York corporation, and SAMSUNG
   TELECOMMUNICATIONS AMERICA,
24 LLC, a Delaware limited liability
   company,
25
                Counterclaim-Plaintiffs,
26        v.

27 APPLE INC., a California corporation,
                Counterclaim-
28              Defendant.

CASE NO. 12-cv-00630-LHK (PSG)

**APPLE'S OPPOSITION TO SAMSUNG'S
MOTION TO EXCLUDE OPINIONS OF
CERTAIN OF APPLE'S EXPERTS**

**HEARING:**

Date:     January 23, 2013
Time:     1:30 p.m.
Place:    Courtroom 8, 4th Floor
Judge:    Hon. Lucy H. Koh

**ORAL ARGUMENT REQUESTED**

**HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY**

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.  DR. HAUSER'S SURVEY IS BASED ON ESTABLISHED PRINCIPLES AND METHODS AND WILL PROVIDE VALUABLE ASSISTANCE TO THE JURY ........................................................................................................... 1

    A.  Dr. Hauser's Conjoint Study Reliably Measures Diminished Demand And Is Not Being Used To Predict Market Share ........................................ 1

    B.  Samsung's Criticisms Of The Methodological Aspects Of Dr. Hauser's Survey Have No Merit And Do Not Justify Exclusion ........................... 5

        1.  Dr. Hauser Provided an Appropriate Number and Type of Distraction Features ................................................................... 5

        2.  Dr. Hauser's Questions Fairly Captured the Patented Inventions ............. 8

        3.  Dr. Hauser's Use Of the "Outside Option" Was Appropriate .................. 9

    C.  Samsung's Assertions That the Results of Dr. Hauser's Survey Are "Irrational" Are Based on Samsung's Own Improper Distortions of the Data .................................................................................................. 10

II. DR. VELLTURO'S LOST PROFIT AND REASONABLE ROYALTY ANALYSES ARE THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS ................................................................................................ 12

    A.  Dr. Vellturo's Lost Profit Analysis Based On Market Exclusion Is Proper ........ 12

    B.  Samsung's Attack On Dr. Vellturo's Capacity Analysis Is Unsubstantiated ...... 14

    C.  Dr. Vellturo's Royalty Analysis Is Proper ............................................. 14

        1.  Dr. Vellturo's Reasonable Royalty Analysis Is Not An Improper Restatement Of His Lost Profits Analysis ................................. 14

        2.  Dr. Vellturo Properly Considered Apple's License Agreements and Properly Discounted Apple's Licensing Discussions .................. 16

III. DR. MOWRY'S APPROACH TO CLAIM INTERPRETATION IS PROPER ............. 17

    A.  Dr. Mowry Clearly Articulated His Constructions And Consistently Applied Them In His Reports ........................................................... 17

    B.  An Expert's Alleged Inconsistencies—Real or Perceived—Are Not A Basis To Exclude His Testimony; Samsung Can Cross-Examine Him .............. 19

1
2

**TABLE OF CONTENTS**
**(Cont'd.)**

Page

3
4

IV.    DR. SNOEREN'S OPINIONS REGARDING APPLE'S PRACTICE OF THE
       '414 PATENT ARE NOT *IPSE DIXIT* ........................................................20

5

V.     DR. STORER PROPERLY APPLIED LANGUAGE OF THE CLAIMS.....................21

6

       A.    Samsung's Motion Regarding Dr. Storer's Opinions Should be Denied.............21

7

             1.    Exhibit TT to Samsung's Brief Should Be Stricken ...............................21

8

             2.    Dr. Storer Properly Applied Plain Meaning To the '449 Terms.............22

9

             3.    Dr. Storer Properly Applied the Court's '239 Constructions..................23

10

VI.    CONCLUSION ...............................................................................................25

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Advanced Fiber Technologies Trust v. J & L Fiber Services, Inc.*,
2010 WL 1930569  (N.D.N.Y. May 11, 2010) ........................................................... 19

*Alaska Rent-a-Car v. Avis Budget Group*,
--- F.3d ---, 2013 WL 4779709  (9th Cir. 2013) ...................................................... 21

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ................................................................................ 17

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 2013-1129 (Fed. Cir. 2013) ................................................................................. 4

*Apple, Inc. v. Samsung, Elecs., Co.*,
No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) ..................... 4, 12, 16

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
251 F.3d 1252 (9th Cir. 2001).................................................................................... 5

*DataQuill Ltd. v. Handspring, Inc.*,
2003 WL 737785  (N.D. Ill. Feb. 28, 2003) .............................................................. 19

*Daubert v. Merrell–Dow Pharm., Inc.*,
509 U.S. 579............................................................................................................ 20

*DSU Med.Corp. v. JMS Co.*,
296 F.Supp.2d 1140 (N.D. Cal. 2003) ....................................................................... 21

*Elder v. Tanner*,
205 F.R.D. 190 (E.D. Tex. 2001) .............................................................................. 21

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010)..................................................................................... 5

*Gable v. Nat'l Broad Co.*,
727 F. Supp.2d 815 (C.D. Cal. 2010) ........................................................................ 21

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................................... 15

*Grain Processing Corp.v. Am. Maize-Products Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ............................................................................... 2, 13

*HTC Corp. v. Technology Properties Ltd.*,
2013 WL 4782598 (N.D. Cal. Sept. 6, 2013) ............................................................ 19

*In re Androgel Antitrust Litigation (No. II)*,
888 F. Supp.2d 1336 (N.D. Ga. 2012) ....................................................................... 19

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)..................................................................................... 16

*Microsoft Corp. v. Motorola, Inc.*,
904 F. Supp. 2d 1109 (W.D. Wash. 2012).................................................................. 5

*Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
976 F. 2d 1559 (Fed. Cir. 1992)................................................................................. 13

*Oracle Am., Inc. v. Google, Inc.*,
No. C 10–03561 WHA, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012).................................. 4, 7

**TABLE OF AUTHORITIES**
(Cont'd.)

Page(s)

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
    695 F.3d 1285 (Fed. Cir. 2013) ............................................................. 23

*Oxford Gene Technology Ltd. vs. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004) ....................................................... 19

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Circ. 2005) ........................................................... 22

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l*,
    711 F. 3d 1348 (Fed. Cir. 2013) ........................................................... 13

*Pulse Engineering, Inc. v. Macon, Inc.*,
    2009 WL 250058 (S.D. Cal. Feb. 3, 2009) ............................................. 23

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F. 3d 1538 (Fed. Cir. 1995) ............................................................. 15

*Schulken v. Wash. Mut. Bank*,
    2013 WL 1345716 (N.D. Cal. Apr. 2, 2013) ........................................... 23

*Schwab v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 992 (E.D.N.Y. 2006) .................................................... 5

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F. 2d 1161 (Fed. Cir. 1991) .............. 15

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ............................................................... 5

*State Indus., Inc. v. Mor-Flo Indus., Inc.*
    883 F.2d 1573 (Fed. Cir. 1989) ............................................................. 4

*Team 7, LLC v. Protective Solutions, Inc.*,
    2010 U.S. Dist. LEXIS 134164 (E.D.N.C. Dec. 13, 2010) ....................... 22

*Think Village-Kiwi, LLC v. Adobe Systems, Inc.*,
    2009 WL 3837270,  (N.D. Cal. Nov. 16, 2009) ..................................... 21

*TV Interactive Data Corp. v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ......................................... 5, 7, 8, 9

**Other Authorities**

G. Allenby, N. Arora, & J. Ginter, *Incorporating Prior Knowledge into the Analysis of Conjoint Studies*, 33 J. of Mktg. Research 152, 158-159 (1995) ........................................................ 10

Galesic, M. and M. Bosnjak, *Effects of Questionnaire Length on Participation and Indicators of Response Quality in a Web Survey*, Public Opinion Quarterly, 73 no. 2 (2009) ...................... 6

Jedidi and Zhang, 48 *Mgmt. Science* 10, 1350, Figures 1 and 3 (2002) ........................... 3

M. Ding, R. Grewal, and J. Liechty, *Incentive-Aligned Conjoint Analysis*, 42 J. of Mktg. Research 67, 71-72 (2005) ............................................................................ 10

M. Seabright, D. Levinthal, & M. Fichman, *Role of Individual Attachments in the Dissolution of Interorganizational Relationships*, 35 Acad. of Mgmt. J. 122, Table 3 (1992) ...................... 10

MarketResearchCareers.com, *MarketResearchCareers Announces the Industry's "Thought* ....... 3

Orme, *Getting Started With Conjoint Analysis*, p. 43 (Research Publishers LLC 2006) .............. 7

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
**(Cont'd.)**

2

Page(s)

3

P. Guadagni & J. Little, *A Logit Model of Brand Choice Calibrated on Scanner Data*, 2 Mktg. Science 203, 218-19 (1983) ..................................................... 10

4

R. Johnson and B. Orme, *How Many Questions Should You Ask in Choice-Based Conjoint Studies?*, p. 1 (1996) ...................................................................... 6

5

**Rules**

6

Fed. R. Civ. P. 26(a)(2)(B)(i) ..................................................................... 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     DR. HAUSER'S SURVEY IS BASED ON ESTABLISHED PRINCIPLES AND METHODS AND WILL PROVIDE VALUABLE ASSISTANCE TO THE JURY

Apple has advanced two different lost profit claims in this case.  One ("market exclusion" lost sales) is limited in duration, relating to profits lost by Apple following Samsung's receipt of notice of infringement, based on the fact that in the "but for world" Samsung would have had to withdraw its products from the market for some period of time in order to implement non-infringing (design-around) products.  The other ("diminished demand" lost sales) covers the balance of the damages period, and is premised on:  (i) the expectation that in the "but for world" Samsung eventually would have introduced non-infringing substitute products into the market, and (ii) evidence that non-infringing products would have recaptured a substantial percentage, but not all, of Samsung's pre-notice (infringing) product sales.  Evidence of diminished demand is provided by Dr. Hauser's conjoint survey, specifically his "willingness-to-buy" calculations, as used by Apple's damages expert, Christopher Vellturo, Ph.D.

Although it retained four experts who collectively submitted over six hundred pages of rebuttal expert reports launching every conceivable attack on Dr. Hauser's survey, Samsung has not presented a single meaningful alternative to Dr. Hauser's analysis.  Indeed, Samsung hired a marketing expert, but did not authorize him to do a survey, and it has not otherwise presented *any* data for the jury to evaluate the different values of the five different Apple patents-in-suit.

Rather than conduct its own study, Samsung criticizes Dr. Hauser's conjoint studies (one as to smartphones and one as to tablets) on three broad grounds:  (i) conjoint studies cannot predict market share; (ii) the studies were flawed with regard to the questions that were asked, the number and choice of features tested, and the use of the "outside option;" and (iii) the results were irrational and nonsensical.  Samsung's criticisms are wrong and are based on a mischaracterization or fundamental misunderstanding of Dr. Hauser's study.  At most, these criticisms are suited for cross-examination, and cannot justify exclusion under *Daubert*.

### A.     Dr. Hauser's Conjoint Study Reliably Measures Diminished Demand And Is Not Being Used To Predict Market Share

Apple's claim for lost profits due to diminished demand for Samsung's hypothetical non-infringing alternatives is predicated on only three of its five asserted patents (the '647, '414

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -1-     CASE NO. 12-cv-00630-LHK (PSG)

Gibson, Dunn & Crutcher LLP

and '959 patents), as to which Samsung was unable or unwilling to design around.  Samsung

bears the burden of proving the availability of an acceptable non-infringing alternative, *see Grain*

*Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1349-51, 1353 (Fed. Cir. 1999),

and Apple could have taken the position that every Samsung sale that infringed any of the three

non-design around patents was a candidate for lost profits in this case.  Instead, Apple's experts,

Drs. Hauser and Vellturo, employed a conservative methodology and assumed that Samsung

would attempt to maintain as much market share as possible in the "but for world," by designing

around the asserted patents, even if doing so would make its products less attractive to some of

its customers.  Dr. Hauser's study thus addresses two critical questions (assuming Samsung

asserts and proves that it would have introduced non-infringing alternatives), *i.e.*, would some

Samsung customers have been unwilling to buy smartphones and tablets that do not contain the

features that infringe Apple's patents, and, if so, how much would demand for Samsung's

products decrease if they did not incorporate Apple's patented features.

Samsung severely mischaracterizes Dr. Hauser's conjoint study by insisting that "the

survey *is* being used to predict market share to calculate damages, despite established authority

that conjoint analysis should not be used for this purpose."  Mot. at 4 (emphasis in original).

That is a direct factual misstatement:  Dr. Hauser's surveys estimate the willingness of Samsung

owners to buy Samsung devices when one or more of the patented features are removed; they do

not predict market share.  In fact, Dr. Hauser expressly stated that in his report:

> I also note, as I have done earlier in this report, that my sample consists of owners
> of Samsung smartphones or tablets. *My estimates are therefore not designed to
> measure the share of Samsung products in the overall market for all smartphones
> or tablets.* Rather, my surveys provide estimates of how the willingness of
> Samsung consumers to buy Samsung smartphones and tablets changes based on
> removing one or more of the patent-related features I tested.

Hauser Rep., ¶ 112 (Ex. A-1) (emphasis added).[1]  Indeed, at his deposition, Dr. Hauser described

and distinguished "whole market" studies, which are intended to predict market shares, but

which he did not do:

---

[1] Citations in the form "Ex. A-_," "Ex. B-_," etc. are citations to documents appended to the
Declaration of Casey J. McCracken submitted  in support of this Opposition.

Gibson, Dunn &
Crutcher LLP

Okay. Let's, again, seeing what [Orme is] talking about. He's talking about what might be called a whole market study. And in a whole market study, what we're trying to do is we're going to sample from everybody in the marketplace, not just Samsung users… And then, we're going to try and predict market share….

So, what does my study do? My study says, here are a set of respondents who we know bought Samsung phones, but for some of these features… the person with (*sic*) not have bought the phone. Now, one can then use additional data, and Chris Vellturo does, to say how does this relate to market shares. And Chris' use of my data, from what I understand, because when I spoke to him, is perfectly correct. Once he has additional data, he can do that.

*What I have not done, because I did not do a whole market study is I, myself, have not predicted market share.*

Hauser Tr., 255:1-257:2 (Ex. A-2) (emphasis added).

The published literature fully supports Dr. Hauser's use of a conjoint study to extract information about the impact on willingness to buy that one would expect to result from the removal of the patented features, or their substitution with unattractive non-infringing alternatives:

Choice-based conjoint analysis lets the researcher include a "None" option for respondents, which might read "I wouldn't choose any of these." By selecting that option, a respondent can contribute information about the decrease in demand to be expected if, for example, prices of all offered products increased *or the products became unattractive in other ways*.

Sawtooth Software, Inc., *The CBC System for Choice-Based Conjoint Analysis*, 2 (Version 8 2013) (Ex. A-20) (emphasis added).[2]  Other commentators have similarly employed conjoint analysis to measure the impact of changes that can have a negative impact on demand, such as price increases.  *See* K. Jedidi and Z. Zhang, *Augmenting Conjoint Analysis to Estimate Consumer Reservation Price*, 48 *Mgmt. Sci.* 10, 1350, Figures 1, 3 (2002) (graphically summarizing the reduction in "% of Respondents Willing to Buy" a product as price changes) (Ex. A-16).  Thus, the analysis that Dr. Hauser actually performed—as opposed to the one that Samsung claims he performed—is well accepted in the field.[3]

---

[2]  Sawtooth is one of the "industry thought leaders" according to marketresearchcareers.com.  *See* MarketResearchCareers.com, *MarketResearchCareers Announces the Industry's "Thought Leaders" for 2013*, May 8, 2013 *available at* (https://www.marketresearchcareers.com/show_news.aspx?newsid=67f2c81c-d69c-431b-8372-b5f20d807ba4) (Ex. A-21).

[3]  Samsung not only wrongly conflates Dr. Hauser's willingness-to-buy analysis with a prediction of market share, it further argues that it is inappropriate to use a conjoint study to determine the extent to which customers' willingness to buy Samsung's products depends on the presence of Apple's infringing features in those products.  Mot. at 3-5.  Samsung neglects to

Gibson, Dunn &
Crutcher LLP

1    Samsung's false assertion that Dr. Hauser used his survey to predict market share is

2   rooted in an attempt to force Dr. Hauser's survey into the fact pattern of *Oracle Am., Inc. v.*

3   *Google, Inc.*, No. C 10–03561 WHA, 2012 WL 850705 (N.D. Cal. Mar. 13, 2012), a case that

4   this Court distinguished when it denied Samsung's last *Daubert* motion.  *Apple, Inc. v. Samsung*

5   *Elecs., Co.*, No. 11-cv-01846-LHK, 2012 WL 2571332, *9 (N.D. Cal. June 30, 2012).  The

6   differences between measuring diminished demand (which Dr. Hauser did) and predicting

7   market share (which Dr. Hauser did not) are not semantic or insubstantial—they are

8   fundamentally different concepts.  In *Oracle v. Google*, Oracle's conjoint survey expert, Dr.

9   Shugan, purported to measure the relative importance of various smartphone features, and on

10   that factual basis alone he predicted changes in the market shares of multiple Android

11   smartphone manufacturers if the patented functionalities were removed.  *See* Shugan Reply Rep.,

12   p. 14 n. 30 ("…I forecasted or predicted what the actual market shares could be from the conjoint

13   analysis…) and Ex. 1a thereto (Ex. A-22).  Apple's lost profits case is fundamentally different.

14   Market shares for the purpose of damages were calculated by Dr. Vellturo, not Dr. Hauser, and

15   were not predicted from a survey, but were simply applied consistent with *State Indus., Inc. v.*

16   *Mor-Flo Indus., Inc.*,  883 F.2d 1573, 1579 (Fed. Cir. 1989) (approving allocation of infringing

17   sales to the patent holder in direct proportion to the patent holder's existing market share).  Dr.

18   Vellturo took the evidence of diminished demand generated by Dr. Hauser's survey, used that

19   number to calculate the number of sales Samsung would not have made in the "but for" world,

20   and then assigned a portion of those sales to Apple based on a straight *Mor-Flo* market share

21

22

23

24   mention that Samsung itself advocated for that exact approach in its oral argument in the Federal
     Circuit over the denial of a permanent injunction in the 1846 case.  There, Samsung's appellate

25   counsel criticized Dr. Hauser for not asking about how the patented features impacted
     willingness to buy in his survey in that case, stating:  "All that the Hauser survey asked was, 'As

26   between two Samsung products, would you pay $38 more for this feature'?  It's an intra-brand
     price premium inquiry.  Which doesn't correlate at all to what this Court said is the relevant

27   inquiry, which is '*would you buy a Samsung phone that incorporated the infringing product [sic]*
     *over an alternative phone*?'"  Oral Argument of Aug. 9, 2013 at 41:10, *Apple, Inc. v. Samsung*

28   *Elecs. Co.*, No. 2013-1129 (Fed. Cir. 2013), *available at*
     http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1129.mp3.  Dr. Hauser's study
     answers that "relevant inquiry" in this case.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY

analysis.[4]  It is troubling that Samsung would suggest that Dr. Hauser's study is comparable to the study excluded in the *Oracle* case, and not disclose Dr. Hauser's description of his study design in his expert report and at his sworn deposition, both of which refute Samsung's comparison.

**B.    Samsung's Criticisms Of The Methodological Aspects Of Dr. Hauser's Survey Have No Merit And Do Not Justify Exclusion**

Conjoint studies have been admitted in recent litigation.  *See, e.g.*, *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1020-27 (N.D. Cal. 2013); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2012); *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1167-70 (E.D.N.Y. 2006).  The Ninth Circuit has observed that "as long as they are conducted according to accepted principles, survey evidence should ordinarily be found sufficiently reliable under *Daubert*."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997).  "'[I]ssues of methodology, survey design, reliability, . . . [and] critique of conclusions' . . .  go to the weight of the survey rather than its admissibility."  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010) (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001)).  Samsung's criticisms of the technical details of Dr. Hauser's survey—for example, the number of features tested and the precise wording of questions—fall squarely within that rule.  *See Southland Sod,* 108 F.3d at 1143 n.8 ("[A] jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value.").

**1.    Dr. Hauser Provided an Appropriate Number and Type of Distraction Features**

Samsung wrongly contends, again in an effort to fit this case into the fact pattern of *Oracle v. Google*, that the distraction features that Dr. Hauser presented were too few and too unimportant, and thus biased respondents toward focusing on the patented features.  Mot. at 5-6.  These arguments are factually unsupported and inconsistent with the testimony of Samsung's own experts.

---

[4]  Under *Mor-Flo*, there is no analysis of how the infringer or other market participants obtained their market shares.  Thus, Samsung's argument that "there is overwhelming evidence that Samsung's advertising has been a major factor in its success" (Mot. at 4) is entirely irrelevant.

Samsung incorrectly states that Apple tested six patented features and only three distraction features.  Mot at 5-6.  As an initial matter, Dr. Hauser never tested more than five patented features in any one survey.  Indeed, of the total of six patented features at issue in this case at the time of his survey, he tested five of those features in his smartphone survey, and five in the tablet survey.  *See* Hauser Rep., ¶¶ 42-43 (Ex. A-1).  Moreover, Dr. Hauser tested at least a dozen distraction features in each survey.  *See id.*, ¶ 77, Exs. D1, D2 (Ex. A-1).[5]  Samsung appears to have arrived at its number of three distraction features by counting entire "attributes," or categories of features, as a single distraction feature (*e.g.*, Samsung appears to count all four different features under the "camera" attribute as one distraction feature).  Samsung did not, however, apply the same counting methodology to the patented features.  For instance, Samsung counts all three patented "data accessibility" features separately, even when grouped together under the same attribute, just like the "camera" features above.  Samsung willfully applies this inconsistent counting methodology to *overstate* the number of patented features and *understate* the number of distraction features.

Samsung has no support in the literature for its argument that Dr. Hauser incorporated too few distraction features in his survey.  In fact, the literature uniformly recognizes testing too *many* distraction features can cause serious problems.  Indeed, commentators relied upon by Samsung acknowledge that long questionnaires lead to survey exhaustion and poor results.  *See* M. Galesic and M. Bosnjak, *Effects of Questionnaire Length on Participation and Indicators of Response Quality in a Web Survey*, 73 Public Opinion Quarterly 2, 349 (2009) (Ex. A-19); R. Johnson and B. Orme, *How Many Questions Should You Ask in Choice-Based Conjoint Studies?*, p. 1 (1996) (Ex. A-15) ("When planning a choice-based conjoint study, one must decide how many choice tasks to give each respondent.  Too many may produce biased or noisy results and

---

[5]  The distraction features in the smartphone survey, for example, include, at a minimum: four different camera related features (1-4) (Panorama, Best Photo, Smile Shot, Buddy Photo Share); at least three "call initiation and screening" features (5-7) (Three-way Calling, Reject Call with Message, Wifi Calling); three "input assistance" features (8-10) (Copy Paste, Voice to Text, S-Pen); screen size (11); and one out "input assistance" feature (12) (notification bar).  *See* Hauser Rep. Ex. D1.  The number in fact be larger, as it is appropriate to count the different screen sizes and prices, each of which has a separate partworth associated with it, as separate distraction features.  *See* Hauser Rep., Ex. M (Ex A-1).

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY     -6-     CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

too few will reduce precision.").  In fact, according to Dr. Orme, upon whom Samsung relies heavily in its brief, "typical full-profile conjoint studies in practice, like choice-based conjoint (CBC) and ratings-based card-sort studies (including Sawtooth Software's CVA), *involve about six or fewer attributes, each described on about two to five levels*."  B. Orme, *Getting Started With Conjoint Analysis*, p. 43 (Research Publishers LLC 2006) (Ex. A-18) (emphasis added).  Dr. Hauser's CBC study tested six attributes at four levels, placing his survey just within the outer boundary of these guidelines.  *See* Hauser Rep., Ex. M (Ex. A-1).  Samsung's own experts agree that there are practical limits on how many features can be tested.  Indeed, Dr. Reibstein criticized Dr. Hauser's survey for being too long on this basis, and Dr. Chevalier stated that too many choices "will fatigue and overwhelm" respondents.  Reibstein Rep., ¶¶ 224-27 (Ex. A-3); Chevalier Tr., 187:15-188:4 (Ex. A-5).

Nor does Samsung have support for its position in the case law.  This Court, in the *TV Interactive* case, observed that testing too many variables causes serious problems, and rejected the same criticism Samsung makes here.  929 F. Supp. 2d at 1025-26 (citing literature stating that testing fewer variables in a conjoint leads to "better predictive value" and prevents respondents from being "overwhelmed by too much data.").  Finally, this Court admitted Dr. Hauser's survey in the 1846 case, over Samsung's objection and assertion of *Oracle*, and that survey employed a comparable mix of patented and distraction features as the one at issue here.[6]

Dr. Hauser also properly ensured that his distraction features were sufficiently important.[7]  Samsung does not provide any support, beyond its own attorney argument, in support of its assertion that he should have tested "more important" features.  Mot. at 6.  Nor does Samsung provide a shred of evidence suggesting that a different set of distraction features would have yielded different results.  In fact, the survey results showed that respondents indeed placed high values on certain distraction features.  *See* Hauser Rep., Ex. M (Ex. A-1) (Camera Partworth

---

[6]  The court in *Oracle* acknowledged that a conjoint analysis need not test every distinguishing feature of a product, and went on to strike the survey due to specific concerns about irrational results that, as discussed below, do not apply here.  *Oracle*, 2012 WL 850705, at *11.  *See infra* Section I.C.

[7]  As Dr. Hauser explained at his deposition, he arrived at his chosen distraction features by researching what features are promoted by sellers of Samsung phones.  Hauser Tr., 78:19-24 (Ex. A-1).

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY          -7-          CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

1    results); Hauser Tr., 79:17-80:3 (Ex. A-2).

2              **2.      Dr. Hauser's Questions Fairly Captured the Patented Inventions**

3              Samsung has included in its brief over a page of dense footnotes raising various highly

4    technical complaints about the nature of the feature descriptions, insisting that they are too broad,

5    or directed to claims other than the ones Apple has asserted.  Mot. at 8-9.  As discussed below,

6    all of these complaints are baseless.  In any event, such granular criticisms go to weight and not

7    admissibility, as this Court already explained when Samsung last complained about Dr. Hauser's

8    descriptions of the patented features in the 1846 case.  *Apple*, 2012 WL 2571332, at *9-10; *see*

9    *also TV Interactive*, 929 F. Supp. 2d at 1026-27 (refusing to resolve Sony's complaints about the

10   technical scope of the questions on *Daubert*).

11             Samsung's contention that Apple's experts have conceded that Dr. Hauser's descriptions

12   of the inventions embodied in the patents are too broad is incorrect.  Apple's experts have

13   uniformly defended Dr. Hauser's descriptions as fairly capturing the patented inventions.

14   Snoeren Tr., 138:1-24, 273:12-24 (Ex. A-6); Cockburn Tr., 154:25-155:5, 165:23-166:6, 172:18-

15   22, 182:23-183:14 (Ex. A-7); Mowry Tr., 321:8-322:23 (Ex. A-8).  Apple's experts readily

16   acknowledged that the descriptions do not include highly technical language, or recite every

17   single limitation of the claims.  *See, e.g.*, Snoeren Tr. at 134:3-135:1, 274:14-276:2 (Ex. A-6);

18   Cockburn Tr. at 161:16-20, 172:18-173:24 (Ex. A-7); Mowry Tr. at 321:8-322:23 (Ex. A-8).

19   And one would not expect that in a consumer-facing survey.  Indeed, including such detail

20   (likely necessitating what would amount to claim construction guides) would inevitably result in

21   a consumer survey that was too long and too complex to be understood by the respondents or

22   helpful to the jury.  In fact, Samsung's marketing expert, Dr. Reibstein, criticized Dr. Hauser for

23   providing *too much* technical description in the survey questions.  Reibstein Rep., ¶ 121 (Ex. A-

24   3) (criticizing descriptions for being too "subtle and nuanced").  Dr. Hauser balanced these

25   considerations and provided sufficient detail in his descriptions of the patented features to

26   prevent them from being either overbroad or confusingly detailed.

27             Dr. Hauser also accurately described Samsung's non-infringing alternatives in his survey.

28   Samsung asserts that that these questions are "hopelessly" biased because they inform the

respondents about certain consequences that could result from the use of a non-infringing alternative.  Mot. at 8 (*e.g.*, having to wait to use an app.).  Those descriptions are supported by Apple's technical experts' analyses of these alternatives,[8] which in some cases Samsung does not even dispute.[9]  In any event, if Samsung contends these descriptions are inaccurate, that is an issue it can address at trial—it is not an appropriate basis for a motion to exclude.  *See TV Interactive*, 929 F. Supp. 2d at 1026-28 (holding that plaintiff was not even obligated to test non-infringing alternatives, let alone test them in a way the defendant agrees with).

Finally, Samsung incorrectly contends that Dr. Hauser based his survey questions related to the '414 patent entirely on independent claim 11, which Apple no longer asserts, rather than dependent claim 20, which remains in the case.  That is not correct.  Dr. Hauser never purported to test only the independent claim, or to restrict his question to that claim.  Moreover, Dr. Velltuo's damages opinion was the same regardless of which of these two claims were found to infringe.  Vellturo Rep., ¶¶ 284-88, 311 (Ex. A-9).  Both experts' approaches are entirely appropriate, because the added limitation in claim 20 does not make it any less valuable than claim 11.  Indeed, all that claim 20 adds is one discrete limitation to claim 11 that does not in any way require separate survey questions.[10]  Again, Samsung has not set forth any evidence suggesting that different questions would have changed the survey results.

### 3.   Dr. Hauser's Use Of the "Outside Option" Was Appropriate

Samsung wrongly complains that Dr. Hauser failed to account for the fact that respondents might have misunderstood what his "outside option" included.  Mot. at 11-12.  But

---

[8]  *See* Vellturo Rep. ¶ 266, Ex. 11 (Ex. A-9); Snoeren Tr., 138:1-24, 273:12-24 (Ex. A-6); Cockburn Tr., 165:15-166:6, 182:23-183:14 (Ex. A-7).
[9]  Chase Tr., 170:1-7 (Ex. A-11).
[10]  Claim 20 is narrower in technical scope than claim 11 by virtue of the additional requirements of three or more separate, data class specific "software synchronization component[s]."  Apple's expert demonstrated in his report that Samsung cannot remove from its products the additional features that claim 20 reads on without significantly disadvantaging those products.  *See* Snoeren Rep., ¶¶ 509-11 (Ex. C-2).  Samsung had originally pointed to this limitation of claim 20 as providing the basis for a potential non-infringing alternative design, but then abandoned that position after Apple showed that such an alternative would not be acceptable.  *See* Chase Tr., 159:16-160:16 (Dr. Chase admitting he offered no rebuttal to support the acceptability of this alleged non-infringing alternative) (Ex. A-11).  Accordingly, the differences between claim 11 and claim 20 provide no basis upon which to criticize Dr. Hauser's study, much less to exclude it from evidence.

as Dr. Hauser explained in detail at his deposition, he employed a test-control design that was explicitly designed to account for any misunderstanding about the outside option. Hauser Tr., 198:14-200:11, 201:8-25, 202:12-203:14, 271:5-276:24 (Ex. A-2). Samsung has not addressed any of that testimony in its brief. In any event, Samsung has not bothered to show that a single respondent understood the outside option in the way Samsung suggests, or that this understanding, even if it occurred, would have any impact on the results.

### C. Samsung's Assertions That the Results of Dr. Hauser's Survey Are "Irrational" Are Based on Samsung's Own Improper Distortions of the Data

Based on nothing more than its own litigation-generated assumption that the patented features are "minor," Samsung incorrectly argues that Dr. Hauser's results are "irrational" because they show that there is demand for patented features. Mot. at 4. The reality is that Dr. Hauser's results are entirely reasonable. They report that on average, only ~9-10% of respondents would alter their purchasing decision based on the absence of any one patented feature. Vellturo Rep., p. 104, Table 2 (Ex. A-9). In other words, even though Samsung has yet to prove that it could or would have implemented non-infringing alternatives to the products that infringe Apple's '647, '414, and '959 patents, Apple's experts assume (for purposes of Apple's diminished demand lost profits claim) that Samsung would have introduced products that satisfied approximately 90% of its customers on a patented-feature-by-patented-feature basis. The fact that the modest decrease in demand results in a large damages claim is evidence of only one thing—the massive volume of Samsung's infringing sales, which continue to this day.

Because there is nothing facially unreasonable about Dr. Hauser's results, Samsung attempts to fabricate problems that do not exist. Dr. Hauser validated his survey results, and the predictions he made from them, with two well-accepted statistical tests that are established in the conjoint literature. *See* Hauser Rep., ¶¶ 95-104 (Ex. A-1).[11] Samsung, on the other hand,

---

[11] Both tests used by Dr. Hauser to validate his model, $U^2$ and "hit rate," are well established in the literature. *See* M. Ding, R. Grewal, and J. Liechty, *Incentive-Aligned Conjoint Analysis*, 42 J. of Mktg. Research 67, 71-72 (2005) (Ex. A-17) (utilizing hit rate); G. Allenby, N. Arora, & J. Ginter, *Incorporating Prior Knowledge into the Analysis of Conjoint Studies*, 32 J. of Mktg. Research no. 2, 152, 158-159 (1995) (Ex. A-14) (utilizing hit rate); P. Guadagni & J. Little, *A Logit Model of Brand Choice Calibrated on Scanner Data*, 2 Mktg. Sci. no. 3, 203, 218-19 (1983) (Ex. A-12) (utilizing $U^2$); M. Seabright, D. Levinthal, & M. Fichman, *Role of Individual*

1    cobbles together litigation-inspired "validation" analyses that are not supported by a single

2    citation to the literature.  As discussed below, these analyses have basic flaws that Dr. Hauser

3    has already identified, and that Samsung nevertheless declined to disclose to the Court.

4         ***Samsung Misleadingly Interprets WTP Results***.  Samsung argues that the willingness-

5    to-pay ("WTP") numbers that Dr. Hauser reports for the patented features at issue exceed the

6    price of certain accused phones, and on that basis (without any supporting authority), Samsung

7    argues that the results "are so facially implausible they provide strong evidence that Dr. Hauser's

8    entire methodology is flawed."  Mot. at 3.  That analysis is meaningless for two clear reasons.

9    First, WTP numbers do not equate to market prices.  WTP numbers measure one aspect of

10   market price (the market or consumer demand for a feature); but the price paid for a product is a

11   function of both supply and demand, as is recognized by both Dr. Reibstein and Dr. Hauser.  *See*

12   Hauser Rep ¶ 125 (Ex. A-1); Reibstein Tr. 197:24-200:2; 204:1-205:17 (Ex. A-4).  Second, WTP

13   values cannot be simply added up.  Dr. Reibstein concedes that WTP numbers are not additive,

14   yet Samsung adds them up anyway.  Reibstein Rep., ¶ 238 n. 301 (Ex. A-3); Mot. at 3.  There is

15   no reason to expect that the addition of multiple WTP values will equal the market price of a

16   product; thus, the observation that cumulative WTP figures exceed the subsidized retail price of

17   some smartphones undermines neither Dr. Hauser's calculation nor his methods.

18        ***Samsung's Price Irrationality Analysis Is Misleading***.  In another effort to fit this case

19   into the fact pattern of *Oracle v. Google*, Samsung claims (in a footnote) that 68% of Dr.

20   Hauser's survey respondents reported that, all things being equal, they prefer higher prices to

21   lower prices.  Mot. 5 n. 5.  That is absolutely incorrect.  It was Dr. Reibstein who arrived at this

22   68% number by re-running his own Sawtooth simulation based on Dr. Hauser's raw data and

23   adjusting certain parameters of Dr. Hauser's model.  Hauser Tr., 319:15-321:21 (Ex. A-2).  But,

24   as Dr. Hauser explained at his deposition, Dr. Reibstein's analysis is completely wrong, it

25   improperly exploits statistical noise, and Dr. Reibstein's values are not statistically significant.

26   *Id.*, 315:8-316:8; 318:18-321:21.  As Dr. Hauser made clear at his deposition, not a single one of

27

28

---

*Attachments in the Dissolution of Interorganizational Relationships*, 35 Acad. of Mgmt. J. 122,
145-46, Table 3 (1992) (Ex. A-13) (utilizing $U^2$).

his survey respondents gave an actual response where he or she stated a preference for a product with a higher price over an equal product with a lower price. *Id.*, 315:19-22. Samsung disclosed none of this information in its brief, but rather suggested to this Court that Dr. Reibstein's concocted 68% number came straight from Dr. Hauser's survey results. Mot at 5 n. 5. It certainly did not.

     ***Dr. Reibstein's "External Validity" Test Is Highly Flawed.*** Finally, Samsung criticizes Dr. Hauser for not conducting a so-called "external validity" test, and then has its own expert make one up, without citing any support in the literature, solely for purposes of this litigation. Mot. at 10. Samsung then incorrectly states that "Professor Hauser's conjoint analysis predicted that the Galaxy Note II would outsell the Galaxy S III when, in reality, Galaxy S III sales exceeded the Galaxy Note II by 3.5 times over the relevant period." *Id.* Again, these "predictions" come from Dr. Reibstein, Samsung's expert, and are found nowhere in Dr. Hauser's report. Critically they are highly dependent on inaccurate assumptions made by Dr. Reibstein. For example, Dr. Reibstein's analysis inherently assumes that consumers who bought the Galaxy S II perceived the Galaxy S III to be identical to the Galaxy S II on all hardware features and all but three software features.[12] That assumption has no basis in the realities of the marketplace or the specifications of the products.

## II.   DR. VELLTURO'S LOST PROFIT AND REASONABLE ROYALTY ANALYSES ARE THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS

### A.   Dr. Vellturo's Lost Profit Analysis Based On Market Exclusion Is Proper

     Samsung argues that Dr. Vellturo's analysis improperly assumes that Samsung would not have begun work on non-infringing alternatives until the date of notice, whereas Samsung claims that, *as a matter of law*, Dr. Vellturo was required to assume that an infringer would have started designing around a patent on the date of first infringement. Samsung Mot. at 13.[13] Samsung's

---

[12] Survey respondents were told to assume that, aside from explicitly tested features, the hypothetical phones had all other features present on their most recent Samsung device. Reibstein Rep., ¶ 28 (Ex. A-3). The survey provides no basis for testing all of the differences between the Galaxy S II and the Galaxy S III, which is why it should not be used to simulate comparisons between the two.

[13] Apple has already briefed the parties' dispute on this issue in the 1846 case, and Apple hereby incorporates its prior briefing into this Opposition. *Apple, Inc. v. Samsung Elecs. Co. Ltd.*, Case No. 11-cv-01846-LHK, D.I. 2407-3 at 2-4, D.I. 2465 at 9, D.I. 2569.

1    challenge is without merit.  At trial, it will be Samsung's burden to establish that there were non-

2    infringing alternatives available to it, and to establish how long it would have taken to bring

3    those alternatives to market.  *See Grain Processing*, 185 F.3d at 1350-51.  The availability and

4    acceptability of non-infringing alternatives are issues of fact.  *Minnesota Mining and Mfg. Co. v.*

5    *Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1577 (Fed. Cir. 1992)); *Grain*

6    *Processing Corp.*, 185 F.3d at 1353-54.  Accordingly, whether and when an adjudged infringer

7    might begin designing around a patent must be determined according to the facts of a given case,

8    not according to the inflexible legal fiction Samsung proposes.

9            Even if Samsung were correct that when an infringer would have started designing

10   around is a matter of law, the cases cited by Samsung do not support Samsung's position.

11   Samsung claims that "courts look to whether non-infringing design arounds are available *starting*

12   *on the date of first infringement*—even if it is earlier than the notice date[,]" citing *Grain*

13   *Processing* as support.  Mot. at 13 (emphasis in original).  But *Grain Processing* in fact states the

14   opposite, holding "[t]he critical time period of determining availability of an alternative is the

15   period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period.'"

16   *Grain Processing*, 185 F.3d at 1353.  Moreover, the court in *Grain Processing* found that the

17   infringer "did not have to 'invent around' the patent" and could have switched to a wholly

18   acceptable alternative "practically instantaneously[.]"  *Id.* at 1346, 1354.  Thus, *Grain*

19   *Processing* did not deal with the scenario presented here, where there were no existing,

20   acceptable alternatives, and Samsung would have required, at a minimum, several months to

21   "invent around" the patents.

22           Similarly, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 711 F.3d 1348 (Fed.

23   Cir. 2013), did not deal directly with the issue before this Court, and, to the extent relevant, it

24   also supports Apple's position.  In *Power Integrations*, the Federal Circuit allowed a patent-

25   holder to present evidence showing the infringer's pre-notice infringement had caused price-

26   erosion damages on post-notice sales.  711 F.3d at 1379-80.  Indeed, the Federal Circuit focused

27   its analysis on instances in which excluding evidence of the infringer's pre-notice infringement

28   would unfairly reduce damages recoverable by the patent-holder.  *Power Integrations*, 711 F.3d

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY       -13-       CASE NO. 12-CV-00630-LHK (PSG)

Gibson, Dunn &
Crutcher LLP

at 1379 ("*To the extent an infringer's pre-notice infringement erodes the market price of a patented product*, that price erosion is relevant in determining for each post-notice act of infringement what the patentee would have made but for the infringement." (Emphasis added)). Accordingly, Samsung should not now be allowed to use its pre-notice infringement to mitigate Apple's post-notice damages claim.[14]

### B.    Samsung's Attack On Dr. Vellturo's Capacity Analysis Is Unsubstantiated

Samsung incorrectly argues that Dr. Vellturo ignored evidence inconsistent with his opinion that Apple possessed the capacity to manufacture the products that it would have sold but for Samsung's infringement. Mot. at 15. Dr. Vellturo's expert report sets forth a proper methodology by which he determined the sufficiency of Apple's capacity in a "but for world," and he defended that analysis at his deposition. Vellturo Rep., ¶ 296 (Ex. A-9); Vellturo Tr., 122:13-22; 123:3-15; 125:12-24 (Ex. A-10). Samsung's disagreement with Dr. Vellturo's analysis is grounds for cross-examination, not a *Daubert* challenge.

### C.    Dr. Vellturo's Royalty Analysis Is Proper

#### 1.    Dr. Vellturo's Reasonable Royalty Analysis Is Not An Improper Restatement Of His Lost Profits Analysis

Dr. Vellturo's royalty analysis properly considered the economic harm that Apple would suffer as a result of granting a patent license to Samsung, Apple's key competitor. Samsung's suggestion that Dr. Vellturo simply regurgitated his lost profits analysis in the form of a royalty is wrong as a matter of fact, and Samsung's suggestion that he could not consider the profits Apple would have lost by granting a license in connection with his royalty analysis is wrong as a matter of law.

Dr. Vellturo's royalty analysis differed from his lost profits analysis in substantial respects. For example, when determining his royalty rate, he analyzed the time period the parties would have expected Samsung would need to design around the patents, and substantially adjusted his royalty rates as a result. Vellturo Rep., ¶ 394 (Ex. A-9). Moreover, he estimated

---

[14]   In the event the Court treats this issue as a matter of law and rules in favor of Samsung, Apple requests Dr. Vellturo have an opportunity to submit a revised analysis conducted in accordance with any such ruling.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY    -14-    CASE NO. 12-cv-00630-LHK (PSG)

Gibson, Dunn & Crutcher LLP

1  market share apportionment based on expectations of the parties, instead of using the same actual

2  market share data he used in the lost profits context.  *Id.*, ¶ 419 & n. 683.  He also estimated the

3  impact of complex ecosystem effects that he did not consider in the context of his lost profits

4  analysis.  *Id.*, ¶¶ 421-26.  Dr. Vellturo's report reflects these and many other factors that he

5  considered in his reasonable royalty analysis that are wholly independent of his lost profits

6  theory.[15]

7          Dr. Vellturo's consideration of Apple's anticipated lost profits as a factor in his

8  reasonable royalty analysis is well-supported by the law.  The *Georgia-Pacific* court itself stated

9  one factor that would play into a hypothetical negotiation is "the anticipated amount of profits

10  that the prospective licensor reasonably thinks he would lose as a result of licensing the patent as

11  compared to the anticipated royalty income[.]"  *Georgia-Pacific Corp. v. U.S. Plywood Corp.*,

12  318 F. Supp. 1116, 1121 (S.D.N.Y. 1970).  In *Rite-Hite*, the Federal Circuit acknowledged that a

13  hypothetical licensor will consider anticipated lost profits in setting a royalty rate.  *Rite-Hite*

14  *Corp. v. Kelley Co., Inc.*, 56 F. 3d 1538, 1543, 1549, 1554-55 (Fed. Cir. 1995) (affirming district

15  court's reasonable royalty award that accounted for the fact licensor "would have to forego a

16  large profit by granting a license," where patentee has also obtained a lost profits award on

17  certain units).

18          Neither case cited by Samsung supports its position that anticipated lost profits cannot be

19  considered in a reasonable royalty analysis.  First, Samsung cites to the *dissent* in *Rite-Hite*, a

20  case that, as described above, entirely supports Apple's position.  Mot. at 12.  Second, Samsung

21  cites *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F. 2d 1161 (Fed. Cir. 1991), a case

22  in which the Federal Circuit does not *at all* address the issue Samsung now raises.  Indeed, in

23  *SmithKline Diagnostics*, the patentee's reasonable royalty figure was not even up for appeal.  *Id.*

24  at 1165.  Instead, the Federal Circuit's sole commentary was that, like its lost profits figure, the

25  patentee's reasonably royalty figure was not credible.  *Id.* at 1165, 1168.  Accordingly,

---

26

27  [15]  Elsewhere in its motion, Samsung states that Dr. Vellturo did not use the *Georgia Pacific* factors to in any way adjust his rates.  Mot. at 7.  That statement is misleading—Dr. Vellturo explained that his separate treatment of the *Georgia Pacific* factors, at the end of his report, did

28  not further change his royalty numbers in part because he had already incorporated those factors into his quantitative analysis.  Vellturo Rep., ¶¶ 483-84 (Ex. A-9).

Samsung's argument is legally baseless.

### 2. Dr. Vellturo Properly Considered Apple's License Agreements and Properly Discounted Apple's Licensing Discussions

Samsung's arguments that Dr. Vellturo's entire opinion should be stricken because Dr. Vellturo relied on "counter-factual assumptions" and "fail[ed] to consider relevant evidence" (Mot. at 13-14) are both wrong and amount to mere disagreement on how to weigh disputed evidence. Samsung first criticizes Dr. Vellturo for giving "essentially no weight" to a settlement discussion between Apple and Samsung held in October 2010. Mot. at 14. Those settlement discussions, protected by Rule 408, have already been held inadmissible by this Court for purposes of proving damages. *See Apple, Inc. v. Samsung Elecs., Co.*, Case No. 11-cv-01846, D.I. 1695 (Trial Tr. in 11-cv-0846) at 1969 (limiting instruction that evidence could not be used to determine "the amount of the disputed claim."). But even if these discussions were admissible, it was proper for Dr. Vellturo to discount them. Dr. Vellturo explained that he considered the settlement discussions but found them "inapt" because, for example, ████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Vellturo Tr. 183:3-6; 184:10-17; 185:11-23. These conclusions are supported by substantial record evidence. D.I. 831-5, (Teksler Tr., Mar. 16, 2012) at 52-59; Case No. 11-1846, D.I.1839 (Trial Tr. in 11-cv-01846) at 2013-2015.

Likewise, Samsung's argument that Dr. Vellturo "willful[ly] refuse[d] to consider" (Mot. at 14) the Apple-HTC settlement license is flatly wrong. Dr. Vellturo considered the license in detail in his report, but concluded that it was unhelpful because ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ and (3) the license was entered into to settle litigation. Vellturo Rep., ¶¶ 438-442 (Ex. A-9); *see LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (discussing the "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages" and reversing admittance of settlement agreement).

Gibson, Dunn & Crutcher LLP

### III.   DR. MOWRY'S APPROACH TO CLAIM INTERPRETATION IS PROPER

Samsung seeks to strike Dr. Mowry's opinions in their entirety based on its incorrect assertion that he applied different claim construction for infringement than he did for validity. Mot. at 16.  First, Dr. Mowry's opinions are perfectly consistent between his infringement and validity opinions.  Second, as a matter of law, any perceived inconsistencies in an expert's opinions are properly the subject of cross-examination, not exclusion of the opinions altogether.

### A.   Dr. Mowry Clearly Articulated His Constructions And Consistently Applied Them In His Reports

Contrary to Samsung's claims, Dr. Mowry followed the Federal Circuit's framework for infringement and validity analyses by explicitly articulating his understanding of the claims and by giving them "the same meaning for purposes of both validity and infringement analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

Dr. Mowry's reports explicitly state his opinions on disputed constructions that he applied in his analysis, consistently apply the Court's construction for the one term the Court construed (action processor), and "apply the meaning as understood by one of ordinary skill at the time of the invention in light of the intrinsic and extrinsic evidence" for all other terms. Mowry Rep., ¶¶ 52-58 (Ex. B-1).[16]  His infringement report and accompanying claim charts contain hundreds of pages of analysis applying his understandings of each element to the accused devices, explicitly pointing out which constructions he applied.  Likewise, his validity report applies those same understandings of the claims in an exhaustive explanation as to each claim element missing from the prior art.  His reports provide "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).

Samsung's contention that Dr. Mowry's infringement and validity reports are "inconsistent" is simply false.  Samsung primarily complains that Dr. Mowry's rebuttal report responded to certain claim interpretations applied by Samsung's expert that he had not provided in his opening report.  Mot. at 17-19.  Yet Samsung's expert first identified those claim interpretations in its opening report and therefore, Dr. Mowry merely explained why those

---

[16]  Dr. Mowry's report also includes a twelve-page analysis of the teachings of the '647 Patent and prosecution history as well as an analysis of apparently disputed terms.  *See id.*, ¶¶ 58-83.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY

1  interpretations were wrong in rebuttal in a manner that was consistent with his opening report.

2  More importantly, there is absolutely no inconsistency in Dr. Mowry's application of any

3  claim term.  For example, Samsung complains that Dr. Mowry's opening report does not

4  explicitly state that the patent requires detecting multiple types of structures.  *See* Mot. at 17-18.

5  But Dr. Mowry identified multiple types of structures in his infringement analysis, showing that

6  he understood that to be a requirement.  *See, e.g.,* Mowry Rep., ¶¶ 134-137 ("The CacheBuilder

7  class detects phone numbers, email addresses, and postal addresses…."), 194-197 (Ex. B-1).

8  The first time Samsung argued that the claims do not require multiple types of structures was in

9  Dr. Jeffay's opening report (to which Dr. Mowry's rebuttal report properly responded).  Jeffay

10  Rep., ¶¶ 326, 364 (Ex. B-3); Mowry Reb. Rep., ¶ 147 (Ex. B-2).   Samsung also complains that

11  Dr. Mowry differentiated the prior art on the basis that claim 1 requires that a detected structure

12  be chosen from a "set of structures."  Mot. at 17.  But again, no one disputes that the accused

13  products meet this understanding of the claims, as Dr. Mowry's opening report made clear.  *See,*

14  *e.g.*, Mowry Rep., ¶¶ 134-137, 194-197 (Ex. B-1).  Dr. Mowry was not required to anticipate

15  Samsung's expert's incorrect claim interpretations in an opening report that was served *at the*

16  *same time* as Dr. Mowry's opening report.

17  Samsung even complains about "new" interpretations in Dr. Mowry's rebuttal report that

18  are not "new" at all.  For example, Samsung complains that Dr. Mowry's rebuttal report

19  distinguished prior art on the basis that the "structures" of claim 1 must have "semantic

20  significance," an argument it claims to be new.  Mot. at 17.  But Dr. Mowry explicitly stated that

21  same opinion in his *opening* report:  "The '647 Patent . . . uses the term "structures" . . . to . . .

22  refer to data with semantic significance to the user such as phone numbers, email addresses,

23  post-office addresses, zip codes and dates…."  Mowry Rep., ¶ 77 (Ex. B-1) (citing '647 Patent at

24  1:13-16).  There is no dispute that Samsung's accused devices satisfy this interpretation.

25  Samsung also complains that Dr. Mowry's infringement report is inconsistent with a

26  prior declaration submitted in the preliminary injunction phase in this case.  As explained more

27  fully in Apple's concurrently filed opposition to Samsung's Motion for Partial Summary

28  Judgment, Dr. Mowry clarified his positions in his rebuttal report and in his deposition.  Again,

Dr. Mowry's validity report is entirely consistent with his infringement report.

**B.     An Expert's Alleged Inconsistencies—Real or Perceived—Are Not A Basis To Exclude His Testimony; Samsung Can Cross-Examine Him**

As this Court just decided last month, regardless of whether there actually are any real or perceived inconsistencies between Dr. Mowry's opening and rebuttal reports, such inconsistencies should properly be addressed through cross-examination; they do not provide a basis for exclusion of an expert's opinions. *HTC Corp. v. Technology Properties Ltd.*, 2013 WL 4782598, at *4 (N.D. Cal. Sept. 6, 2013).[17]  Moreover, in rejecting the exact argument Samsung now makes regarding "inconsistent" claim constructions, another court rightly found that "[c]laim construction is a matter of law to be decided by the Court," and that any perceived inconsistencies regarding as-yet unconstrued terms does not render the expert's testimony unreliable. *Advanced Fiber*, 2010 WL 1930569 at *6-7.

Samsung cites no cases striking an expert for providing inconsistent testimony.  Unlike the expert in the first case Samsung cites, *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785 at *3 (N.D. Ill. Feb. 28, 2003), who "opined that certain elements of the claims were present in the accused devices without even having an understanding of the claim terms," Dr. Mowry clearly had and applied an independent understanding of the claims.  Dr. Mowry's reports are also incomparable to the testimony excluded in *Oxford Gene Technology Ltd. vs. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004), where the expert "neither offer[ed] nor adopt[ed] any claim constructions despite offering opinions that certain claims are invalid" and, instead, of articulating affirmative constructions, merely applied a "negative or alternative construction of the claims." *Id.* at 435-36.  In stark contrast, Dr. Mowry provided affirmative constructions of all disputed terms once those disputes became apparent and consistently applied those constructions in his analyses, not negative or alternative constructions as did the expert in that case.  Mowry Rep., ¶¶ 52-58 (Ex. B-1).

---

[17] *See also Advanced Fiber Technologies Trust v. J & L Fiber Services, Inc.*, 2010 WL 1930569 at *6 (N.D.N.Y. May 11, 2010) ("Any perceived inconsistencies should be addressed through cross-examination…"); *In re Androgel Antitrust Litigation (No. II)*, 888 F. Supp.2d 1336, 1355-56 (N.D. Ga. 2012) ("[C]ontradictory expert testimony is grounds for cross-examination, not exclusion.").

Gibson, Dunn & Crutcher LLP

Dr. Mowry is indisputably qualified to competently testify, his methodology is reliable, and his testimony is relevant.  His testimony is therefore admissible.  *Daubert v. Merrell–Dow Pharm., Inc*., 509 U.S. 579, 589 (1993).  Samsung is free to try to cross-examine Dr. Mowry on any imagined inconsistencies at trial.

## IV.  DR. SNOEREN'S OPINIONS REGARDING APPLE'S PRACTICE OF THE '414 PATENT ARE NOT *IPSE DIXIT*

Samsung cannot meet its burden to show that Dr. Snoeren's opinion that Apple's iOS version 6.1 practices claim 11 is so unreliable that it should be excluded because all of the evidence supports that, in fact, Apple does practice that claim.  So instead Samsung premises its attack on mischaracterization of Dr. Snoeren's report, contending that his "opinion is four short paragraphs" and that those paragraphs "contain no citations to any evidence."  *See* Mot. at 21.  Both assertions are false.  First, Dr. Snoeren's opinion regarding claim 11 is based on a thorough analysis of the requirements of claim 11 that itself spanned 20 paragraphs.  Snoeren Rep., ¶¶ 383-403 (Fazio Decl., D.I. 802-1, Ex. Z).  He also analyzed the pertinent portions of the iOS source code and Apple developer documents and expressly cited to that evidence in his report.  *Id.* at ¶¶ 525; 528.  Then, based on the evidence, Dr. Snoeren opined that iOS version 6.1 meets each of the requirements of claim 11.  *Id.* at ¶¶ 525-28.  In doing so, his report explicitly calls out particulars of Apple's implementation, *e.g.,* that iOS includes "Calendar and Contacts applications [that] both store information in a SQLite database on the iPhone" and that there are "separate synchronization software components for each" application that provide "a separate synchronization processing thread" that operates concurrently with threads for the contacts and calendars applications.  *Id.* at ¶¶ 526-27.

Samsung's assertion that it is "nothing but Dr. Snoeren's say-so" that Apple practices the '414 Patent is also not true.  *See* Mot. at 21.  The '414 Patent inventor, Mr. Freedman, testified that it was his work on synchronization functionality in iOS on the iPhone that led to the conception and reduction to practice of the invention in the '414 Patent.  Freedman Tr., 81:16-21; 190:16-191:15 (Ex. C-1); Snoeren Rep., Ex. 2 at 3 (Ex. C-2) (citing Freedman Tr. and exhibits).  He further testified, just as Dr. Snoeren has opined, that the "iPhone Calendar and

1  Contact syncing code" embodied "claim 11." *Id.* at 216:20-218:11.[18]

2  　　　Thus, Dr. Snoeren's opinion based on source code, developer documentation and

3  testimony he reviewed and cited in his report is distinguishable from the opinions in the cases

4  Samsung cites.  This case is not like *DSU Med.* where the expert's opinion was not based on any

5  evidence and ignored substantial evidence to the contrary.  *See DSU Med.Corp. v. JMS Co.*, 296

6  F.Supp. 2d 1140, 1158 (N.D. Cal. 2003).  Nor is this case like *Gable* where the expert made up a

7  set of "5 criteria" without explaining from where the criteria he used to arrive at his opinion

8  actually came.[19]  *Gable v. Nat'l Broad Co.,* 727 F. Supp.2d 815, 830 (C.D. Cal. 2010).   The

9  proper mechanism for challenging the rigor of Dr. Snoeren's analysis is cross-examination—not

10  exclusion of his opinion.  *See Alaska Rent-a-Car v. Avis Budget Group*, --- F.3d ---, 2013 WL

11  4779709 at *7 (9th Cir. 2013) ("[T]he judge is supposed to screen the jury from unreliable

12  nonsense opinions, but not exclude opinions merely because they are impeachable.").

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE
STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO
SAMSUNG PATENTS, D.I. 1145

---

25

26  [18]  Indeed, Samsung's expert acknowledges as much in his own report and presents no evidence whatsoever to the contrary.  Chase Rep., ¶ 187 (Ex. C-3).

27  [19]  The *Elder* case is also distinguishable.  There, the plaintiff's experts did not provide "***any*** elaboration or reasoning" so the court sustained the court struck their opinions "as presently phrased in their reports," allowing them to serve amended reports to cure the defect.  *Elder v.*

28  *Tanner*, 205 F.R.D. 190, 194-95 (E.D. Tex. 2001) (emphasis added).  Unlike *Elder*, Dr. Snoeren's report already provides sufficient elaboration on his reasoning.

APPLE'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE EXPERT TESTIMONY

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN
THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES
RELATED TO SAMSUNG PATENTS, D.I. 1145

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

,

Gibson, Dunn &
Crutcher LLP

PORTION IS WITHDRAWN BY AGREEMENT OF THE PARTIES, AS INDICATED IN THE STIPULATION AND ORDER REGARDING WITHDRAWAL OF DAUBERT ISSUES RELATED TO SAMSUNG PATENTS, D.I. 1145

**VI.   CONCLUSION**

For the foregoing reasons, Apple respectfully requests the Court deny Samsung's motion.

Gibson, Dunn & Crutcher LLP

1

Dated:  November 1, 2013

2

Respectfully Submitted,

3

By:  /s/ H. Mark Lyon

4

5

Attorneys for Plaintiff
APPLE, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

The undersigned hereby certifies that the foregoing document, and all supporting

documents and exhibits, was filed electronically in compliance with Civil Local Rule 5-1, and

4

will be served on all counsel for Samsung Electronics Co., Ltd., Samsung Electronics America,

5

Inc., and Samsung Telecommunications America, LLC who have consented to electronic service

6

in accordance with the Northern District of California Local Rules via the Court's ECF system.

7

8

9

10

11

Date _____November 1, 2013_____              _/s/ Mark Lyon_____

12                                                                        Mark Lyon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28