**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT A-11

Page 1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4    APPLE, INC., a California corporation,

5                  Plaintiff,

6    vs.                    CASE NO: 12-cv-00630-LHK

7    SAMSUNG ELECTRONICS CO., LTD., a

8    Korean corporation; SAMSUNG

9    ELECTRONICS AMERICA, INC., a New

10   York corporation; and SAMSUNG

11   TELECOMMUNICATIONS, AMERICA,

12   LLC, a Delaware limited liability

13   company,

14                  Defendants.

15   _____

16

17       VIDEOTAPED DEPOSITION OF JEFFREY CHASE, Ph.D.

18               (Taken by Plaintiff)

19             Durham, North Carolina

20            Tuesday, October 1, 2013

21         Reported in Stenotype by April Reid

22               Job No. 66000

23

24

25

Page 2

```
 1                ANNOUNCEMENT PAGE
 2
 3
 4
 5   Tuesday, October 1, 2013
 6   9:41 a.m.
 7   4700 Emperor Boulevard
 8   Durham, North Carolina
 9   Reported in Stenotype by April Reid
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                APPEARANCES
 2
 3   GIBSON DUNN & CRUTCHER
 4   On behalf of the Plaintiff
 5   2100 McKinney Avenue
 6   Dallas, Texas  75201
 7   BY:  MICHAEL VALEK, ESQUIRE
 8
 9
10   QUINN EMANUEL URQUHART & SULLIVAN
11   On behalf of the Defendants
12   50 California street
13   San Francisco, California 94111
14   BY:  MATTHEW WARREN, ESQUIRE
15   BY:  DEREK TANG, ESQUIRE
16
17
18   ALSO PRESENT:
19   BRENT TROUBLEFIELD, Videographer
20
21
22
23
24
25
```

Page 4

```
 1                I N D E X
 2
 3   THE WITNESS          JEFFREY CHASE, Ph.D
 4              EXAMINATION BY COUNSEL FOR
 5          PLAINTIFF      DEFENDANTS
 6   By Mr. Valek          7
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1                E X H I B I T S
 2                  (Attached)
 3   NO.          DESCRIPTION          PAGE
 4
 5   Chase Exhibit 1    Rebuttal Expert Report      23
 6             Jeffrey Chase, Ph.D
 7   Chase Exhibit 2   Patent No. US 7,761,414 B2     32
 8   Chase Exhibit 3    Expert Report         136
 9             Dr. Alex C. Snoeren
10   Chase Exhibit 4    Opening Report        174
11             Jeffrey Chase, Ph.D
12   Chase Exhibit 5    Snoeren Rebuttal Report     193
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2 (Pages 2 to 5)

Page 158

1    hypothetical.
2         THE WITNESS:  No.
3    BY MR. VALEK:
4    Q.    Do you agree that it is also true that
5    contacts and calendar data stored in the database
6    on the accused products can be synchronized with
7    contacts and calendar data stored remotely on a
8    Microsoft Exchange Server?
9         MR. WARREN:  Objection; compound.
10        THE WITNESS:  No.
11   BY MR. VALEK:
12   Q.    You don't agree with that?
13   A.    I'm sorry.  I do agree with that.
14   Q.    Could you --
15        MR. WARREN:  Could you read back the
16   question?
17        MR. VALEK:  Sure.
18   BY MR. VALEK:
19   Q.    Why don't I ask it again.  I have it
20   right in front of me.
21        Do you agree that contacts and calendar
22   data stored in the database on the accused products
23   can be synchronized with contacts and calendar data
24   stored remotely on a Microsoft Exchange Server?
25        MR. WARREN:  Objection; compound, asked

Page 159

1    and answered.
2         THE WITNESS:  Yes, I agree.
3    BY MR. VALEK:
4    Q.    And will you agree, sir, that Microsoft
5    -- Microsoft -- strike that.
6         Will you agree, sir, that Microsoft
7    Exchange Server stores users mail, calendar and
8    contacts data in a database?
9    A.    Yes.
10   Q.    And do you agree that the data stored
11   in that database is structured data?
12   A.    Yes.
13   Q.    Do you have your rebuttal report in
14   front of you?
15   A.    Yes.
16   Q.    Now, in your rebuttal report you
17   respond to some of the alleged non-infringing
18   alternatives that are addressed in Dr. Snoeren's
19   infringement report.  I believe this is in section
20   9 on page 67, if that helps you.
21        Are you there?
22   A.    Yes.
23   Q.    And the specific alternatives you
24   respond to in your rebuttal report are alternative
25   number 3, alternative number 4, alternative number

Page 160

1    8 and alternative number 10; is that correct, sir?
2    A.    Yes, that's correct.
3    Q.    So you were not offering an opinion
4    regarding the other alternatives that are addressed
5    in Dr. Snoeren's infringement report, are you, sir?
6    A.    It is true that I do not respond
7    specifically to Dr. Snoeren's responses to the
8    other non-infringing alternatives, alleged
9    non-infringing alternatives.
10   Q.    In your rebuttal report, do you present
11   any opinions regarding the other alleged
12   non-infringing alternatives addressed in Dr.
13   Snoeren's infringement report?
14        MR. WARREN:  Objection; asked and
15   answered.
16        THE WITNESS:  No.
17   BY MR. VALEK:
18   Q.    With respect to alternative number 3
19   which is the one you call off-line mode syncing --
20   A.    Actually, Samsung called it that.
21   Q.    Okay.  But you -- and you have it
22   repeated here in your report?
23   A.    Yes.
24   Q.    All right.  I just want to make sure
25   we're on the same page.

Page 161

1         Do you acknowledge, sir, that if this
2    alternative were implemented data synchronization
3    would occur only when the accused applications were
4    not running?
5    A.    No.
6         I would extend that answer.  I note
7    that off-line mode, Samsung did call it that, it's
8    in quotes in my report.  I would not have called it
9    that.
10        My understanding is that the
11   non-infringing alternative for off-line mode
12   seeking would apply in the case where a user
13   navigates away from an application; that is, it's
14   not presenting a user interface in the foreground
15   so we would say -- in Android terms we would say
16   that the activity is paused.
17   Q.    Well, let me ask you about the quote
18   that you have from Samsung's response to Apple's
19   Interrogatory No. 45 in paragraph 185 of your
20   report.
21   A.    Yes.
22   Q.    You see that?
23        There you've -- you've quoted Samsung's
24   interrogatory response and it says, "One potential
25   implementation of this design would involve

41 (Pages 158 to 161)

Page 166

1   specifically about Gmail, about fetching mail
2   in Gmail and in that context I would agree
3   that this work-around, if it were in fact
4   applied to Gmail, would run counter to the
5   design goals that I articulated earlier.
6       And I would also note that it is not
7   necessary -- it's not necessarily necessary
8   to apply this particular work-around to Gmail
9   in order to work-around claim 20 which
10  requires, in plain language of the claim,
11  multiple synchronization software components
12  that -- for different data classes.
13      So even if we were to allow that -- the
14  Gmail and sync adapters associated with Gmail
15  are, in fact, meet -- meeting the limitations
16  of the claim as alleged by Dr. Snoeren it
17  would not necessarily be necessary to apply
18  this work-around or any of the work-arounds
19  to Gmail specifically.
20  BY MR. VALEK:
21      Q.   Let me ask you about the other accused
22  applications, specifically the calendar and
23  contacts applications.
24      Do you believe that it would be
25  contrary -- strike that.

Page 167

1       Let me ask you a foundational question.
2       For those applications do you believe
3   that it's a design goal to not interrupt the user
4   interface during synchronization operations?
5       MR. WARREN:  Objection; vague,
6   incomplete hypothetical.
7       THE WITNESS:  It is -- it is a design
8   goal to not interrupt the user interface
9   during synchronization operations and what
10  we're talking about is a work around that
11  would not perform synchronization operations
12  while the user interface is active.
13  BY MR. VALEK:
14      Q.   Do -- will you agree, sir, that if
15  alternative number 3 were implemented for the
16  calendar and contacts applications that
17  implementation will run contrary to that design
18  goal?
19      MR. WARREN:  Objection; misstates the
20  witness' prior testimony.
21      THE WITNESS:  Well, I think the
22  question is whether this implementation
23  choice would cause a noticeable disruption of
24  the user experience for contacts and
25  calendars.

Page 168

1       And I think with contacts and calendars
2   the mode in which users use contacts and
3   calendars is quite a bit different from the
4   mail, right.
5       It is not the case in general with
6   contacts and calendars that -- or personal
7   information that's only edited by the user
8   that you need to download changes that are
9   made somewhere else, they are made by the
10  user on different platforms.
11      And it's also the case that, I think,
12  one could argue that users view these
13  applications for a relatively short period of
14  time -- periods of time, excuse me, to check
15  some information or to update some
16  information and then navigate away from those
17  applications, and in those cases it would
18  likely be the case that the user would not
19  notice this work-around, in my opinion.
20  BY MR. VALEK:
21      Q.   Okay.  Did -- did you do any sort of
22  survey of users to confirm that opinion?
23      A.   No, I did not.
24      Nor did Dr. Snoeren or Apple's other
25  experts.  I don't recall any discussion of that in

Page 169

1   the damages reports, for example.
2       Q.   And did you actually operate and
3   observe the existing synchronization functionality
4   provided by the contacts and calendar applications
5   in any of the accused products?
6       A.   I --
7       MR. WARREN:  Objection; vague.
8       Sorry about that.
9       THE WITNESS:  I have observed it.  I
10  did not opine on that in my rebuttal report.
11  BY MR. VALEK:
12      Q.   Okay.  I'd like to ask you about
13  alternative number 8.  This is the one you referred
14  to as blocking UI on sync.  It's on page 73 of your
15  rebuttal report.  Do you see that?
16      A.   Yes.
17      Q.   First, what does it mean to lock UI?
18  In this context.  I didn't mean that to be this
19  general.
20      A.   Well, in this case the -- blocking the
21  UI means that the -- the application would prevent
22  user access to other application functions; that
23  is, it might display a dialogue or some notice that
24  synchronization was occurring, but it would
25  otherwise prevent user access to the application.

43 (Pages 166 to 169)

1  Q.   Do you acknowledge if this process was
2  implemented the user could not operate the user
3  interface provided by the accused application
4  during the synchronization operation?
5        MR. WARREN:  Objection; vague,
6  incomplete hypothetical.
7        THE WITNESS:  Yes.
8  BY MR. VALEK:
9  Q.   If you will, turn to page 172 of your
10 rebuttal report, please.
11 A.   (Complies).
12 Q.   In the first sentence there you say
13 that, "Samsung first became aware of the '414
14 patent on February 8th when this lawsuit was
15 filed."
16      Do you see that?
17 A.   Yes.
18 Q.   Do you acknowledge, sir, that Samsung
19 has continued to sell the accused products with the
20 accused synchronization functionality after the
21 time it admits to learning of the '414 patent?
22      MR. WARREN:  Objection; vague,
23 compound.
24      THE WITNESS:  Yes.
25 BY MR. VALEK:

1  Q.   And even after learning of Apple's
2  contentions, as you say in June of last year,
3  Samsung has continued to sell its products with the
4  accused synchronization functionality, correct?
5        MR. WARREN:  Objection; asked and
6  answered, vague, compound.
7        THE WITNESS:  Yes.
8  BY MR. VALEK:
9  Q.   As far as you know, after learning of
10 Apple's contentions that didn't make Samsung
11 reconsider its actions and stop doing what it was
12 that Apple alleged was infringing, correct?
13       MR. WARREN:  Objection; asked and
14       answered, vague, calls for a legal
15       conclusion.
16       THE WITNESS:  I -- I don't know what
17       they did or did not consider, but I -- I
18       acknowledge that they are continuing to
19       participate in the market despite this and
20       other patent infringement patents asserted by
21       Apple.
22 BY MR. VALEK:
23 Q.   And -- and, in fact, it's now been over
24 18 months since Samsung learned of Apple's '414
25 patent and have you seen any evidence that Samsung

1  has changed the accused synchronization
2  functionality to implement any of the
3  non-infringing alternatives that are referred to in
4  your rebuttal report?
5        MR. WARREN:  Objection; asked and
6  answered, vague, compound.
7        THE WITNESS:  I have not performed that
8  analysis.
9        I don't recall seeing any changes or
10       software that would look like an example of
11       one of these four work-arounds considered
12       here.
13 BY MR. VALEK:
14 Q.   And that's true notwithstanding your
15 opinion that several of these alternatives could be
16 implemented in as little as 10 hours with little to
17 no disruption to the functionality; is that true,
18 sir?
19       MR. WARREN:  Objection; vague,
20       compound, asked and answered.
21       THE WITNESS:  Well, as I said, it's
22       true that I have not seen any evidence that
23       Samsung or Google have pursued these
24       work-arounds, but I have not performed that
25       analysis.

1  BY MR. VALEK:
2  Q.   Okay.  In paragraph 134 of your
3  rebuttal report you say -- let me just read it --
4  it is the last sentence, "To the extent that
5  Samsung had and has a good faith belief."
6        Do you see that?
7  A.   Yes.
8  Q.   Did you talk to any of the decision
9  makers at Samsung to determine what their state of
10 mind was when they made the decision to continue to
11 sell products with the same accused functionality
12 even after they learned of Apple's infringement
13 allegations with respect to the '414 patent?
14 A.   No.
15 Q.   And, in any event, you're not offering
16 an expert opinion as to Samsung's state of mind or
17 alleged good faith, that's something for the jury
18 to decide for themselves, correct?
19       MR. WARREN:  Objection; calls for a
20       legal conclusion, it's compound.
21       THE WITNESS:  I am not offering any
22       opinion with respect to Samsung's state of
23       mind.
24 BY MR. VALEK:
25 Q.   I am going to switch gears.  Do you

Page 278

1    MR. WARREN:  So I will respond first on
2  the substance and then on --
3    MR. VALEK:  Sure.
4    MR. WARREN:  -- with regard to your
5  question.
6    With regard to the substance, I think
7  any analysis of this transcript, including
8  the number of questions you got to ask, the
9  number of times he gave very quick,
10  unqualified answers, particularly regarding
11  claim construction he was very helpful, I
12  think any analysis of this deposition and any
13  comparison of this particularly to Dr.
14  Snoeren would show that to the extent there
15  was some inevitable confusion, as there is
16  through every deposition, it was more than
17  made up for in terms of record saving in
18  terms of the witness being extremely
19  cooperative.
20    I know you don't agree, but you stated
21  your position so I got to state mine.  We
22  both each stated our positions on that.
23    I am going to follow the precedent in
24  the Taylor and Snoeren depositions, in both
25  depositions there was a request from Samsung

Page 279

1  for an additional ten minutes and in both
2  cases that was denied by Apple so I am going
3  to follow that precedent.
4    MR. VALEK:  Well, I am not going to
5  close the deposition, then.  I understand,
6  though, that you are going to take your
7  witness and take off.
8    MR. WARREN:  Yeah, you are right to
9  reserve, and that's what happened in the
10  Snoeren and Taylor depositions and,
11  obviously, to the extent that you want to
12  reopen this we are going to try to reopen
13  those other depositions, too.  I think it is
14  clear seven hours is seven hours.  You're --
15  I'm not, you know, barring you to make the
16  argument, you are not barring me from making
17  the argument in the future, but we're done.
18    MR. VALEK:  So if I try to ask a
19  question you are not going to let him answer?
20    MR. WARREN:  That is correct.
21    MR. VALEK:  Okay.  Thank you.
22    THE VIDEOGRAPHER:  This concludes the
23  deposition.  The time is 7:02 p.m.
24    (THEREUPON, the videotaped deposition
25  was concluded at 7:02 p.m.)

Page 280

1  STATE OF NORTH CAROLINA
2  COUNTY OF MECKLENBURG
3    I, April Reid, CLR, in and for the State of
4  North Carolina, do hereby certify that there came
5  before me on Tuesday, October 1, 2013, the person
6  hereinbefore named, who was by me duly sworn to
7  testify to the truth and nothing but the truth of his
8  knowledge concerning the matters in controversy in
9  this cause; that the witness was thereupon examined
10  under oath, the examination reduced to typewriting
11  under my direction, and the videotaped deposition is a
12  true record of the testimony given by the witness.
13    I further certify that I am neither attorney
14  or counsel for, nor related to or employed by, any
15  attorney or counsel employed by the parties hereto or
16  financially interested in this action.
17    This, the 2nd day of October, 2013.
18
19    _____
20
21    APRIL REID, RPR, CRR, CLR
22    Notary Public #2003237014
23
24
25

Page 281

1  NAME OF CASE: Apple Inc v. Samsung Electronics Company
       Limited (Case No: 12-CV-00630-LHK)
2  DATE OF DEPOSITION: 10/1/2013
3  NAME OF WITNESS: Jeffrey Chase, Ph.D.
4  Reason Codes:
5    1. To clarify the record.
6    2. To conform to the facts.
7    3. To correct transcription errors.
8  Page _____ Line _____ Reason _____
9  From _____ to _____
10  Page _____ Line _____ Reason _____
11  From _____ to _____
12  Page _____ Line _____ Reason _____
13  From _____ to _____
14  Page _____ Line _____ Reason _____
15  From _____ to _____
16  Page _____ Line _____ Reason _____
17  From _____ to _____
18  Page _____ Line _____ Reason _____
19  From _____ to _____
20  Page _____ Line _____ Reason _____
21  From _____ to _____
22  Page _____ Line _____ Reason _____
23  From _____ to _____
24
25    _____

71 (Pages 278 to 281)