# Exhibit 6

Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
Alexander F. MacKinnon (S.B.N. 146883)
alexander.mackinnon@kirkland.com
Nimalka R. Wickramasekera (S.B.N. 268518)
nimalka.wickramasekera@kirkland.com
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiff/Counterclaim Defendant/Counterclaimant

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC., <br> Plaintiff, <br> vs. <br> NUVASIVE, INC., <br> Defendant. | CASE NO. 3:08-CV-01512-MMA (MDD) <br><br> **WARSAW ORTHOPEDIC, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A PERMANENT INJUNCTION** |
| NUVASIVE, INC., <br> Counterclaimant, <br> vs. <br> MEDTRONIC SOFAMOR DANEK USA, INC., <br> Counterclaim Defendant. <br> AND RELATED COUNTERCLAIMS | Date: January 24, 2012 <br> Time: 2:30 p.m. <br> Judge: Hon. Michael M. Anello <br> Courtroom: 5, 3rd Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A. NuVasive's Public Interest Arguments Lack Merit.................................................1

        1. NuVasive's claim that there are no alternatives to XLIF is unsupported and untrue....................................................................................................2

        2. In other cases involving medical devices, courts have granted permanent injunctions. ..................................................................................4

    B. The Other *eBay* Factors Support Granting Warsaw's Request for a Permanent Injunction. ...................................................................................................6

        1. Monetary damages are inadequate to compensate for NuVasive's infringement and Warsaw continues to suffer irreparable harm..................6

        2. The balance of hardships favors Warsaw. ....................................................8

    C. NuVasive's Request for a Stay or Two-Year Sunset Provision Is Unwarranted.....9

III. CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
  2011 WL 5878365 (E.D. Va. Nov. 23, 2011) ........................................................................ 6, 7, 8

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) ..................................................................................................... 5

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*,
  579 F. Supp. 2d 554 (D. Del. 2008) .............................................................................................. 5

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
  2009 WL 920300 (D. Ariz. Mar. 31, 2009) ................................................................................... 6

*Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*,
  2008 WL 4745882 (D. Del. Oct. 29, 2008) ................................................................................... 5

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) ....................................................................................................... 9

*Commonwealth Scientific and Indus. Research Organisation v. Buffalo Tech. Inc.*,
  492 F. Supp. 2d 600 (E.D. Tex. 2007) .......................................................................................... 2

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ...................................................................................................................... 6

*ePlus, Inc. v. Lawson Software, Inc.*,
  2011 WL 2119413 (E.D. Va. May 24, 2011) ............................................................................. 10

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ....................................................................................................... 8

*In re Hayes Microcomputer Prods.*,
  766 F. Supp. 818 (N.D. Cal. 1991) ............................................................................................... 9

*Johnson & Johnson Vision Care, Inc., v. CIBA Vision Corp.*,
  712 F. Supp. 2d 1285 (M.D. Fl. 2010) .......................................................................................... 5

*Machlett Laboratories, Inc. v. Techny Indus., Inc.*,
  665 F.2d 795 (7th Cir. 1981) ......................................................................................................... 6

*Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*,
  637 F. Supp. 2d 290 (E.D. Pa. 2009) ............................................................................................ 7

*Mercoid Corp. v. Mid-Continent Inv. Co.*,
  320 U.S. 661 (1944) ...................................................................................................................... 6

*Mytee Prods., Inc. v. Harris Research, Inc.*,
  2011 WL 5878365 (E.D. Va. Nov. 23, 2011) ............................................................................... 7

*Mytee Products, Inc. v. Harris Research, Inc.*,

2010 WL 3724587 (Fed. Cir. 2010) .................................................................................. 9

*Praxair, Inc. v. ATMI, Inc.*,
 543 F.3d 1306 (Fed. Cir. 2008) ........................................................................................ 9

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
 --- F.3d ---, 2011 WL 4834266 (Fed. Cir. Oct. 13, 2011) ............................................ 8, 9

*Sanofi-Synthelabo v. Apotex, Inc.*,
 470 F.3d 1368 (Fed. Cir. 2006) ........................................................................................ 1

*Shiley, Inc. v. Bentley Labs., Inc.*,
 601 F. Supp. 964 (C.D. Cal. 1985) ................................................................................ 4, 5

*Smith and Nephew, Inc. v. Arthrex, Inc.*,
 2010 WL 2522428 (E.D. Tex. Jun. 18, 2010) ........................................................... 1, 2, 5

*SynQor, Inc v. Artesyn Techs., Inc.*,
 2011 WL 238645 (E.D. Tex. Jan. 24, 2011) ................................................................... 10

I.  **INTRODUCTION**

NuVasive asserts that a permanent injunction in Warsaw's favor would create a public health crisis because of the purported lack of any alternatives to its XLIF products. In support of this argument, NuVasive relies heavily on the testimony of a single physician, Dr. William Smith—a NuVasive-paid consultant—and the testimony of NuVasive executives lauding the benefits of a procedure on which they built their business. Not only are these self-serving statements unsupported by objective evidence, they are contrary to what NuVasive argued at trial. There, NuVasive repeatedly urged that there are numerous alternatives to Warsaw's patented technology. NuVasive's doomsday arguments lack merit and do not override the strong public interest in protecting innovation under the patent system.

NuVasive also argues that Warsaw is not irreparably harmed by NuVasive's infringement because the two parties allegedly do not compete in the marketplace. As explained in Warsaw's opening memorandum, extensive uncontroverted evidence presented at trial proves that is not the case. NuVasive's infringement has caused, and continues to cause, tangible harm to Warsaw that is difficult to measure and fully compensate. NuVasive's infringement is costing Warsaw lost sales, lost market share, lost access to potential customers, as well as other injuries. All of the equitable factors supporting a permanent injunction are present. Warsaw's motion should be granted.

II. **ARGUMENT**

A.  **NuVasive's Public Interest Arguments Lack Merit.**

Courts have repeatedly recognized the strong public interest in a patentee's right to exclude infringers. *See, e.g., Smith and Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 2522428, at *3 (E.D. Tex. Jun. 18, 2010) ("The public has an interest in a strong patent system and it is generally in the public interest to uphold patent rights against an adjudicated infringer."), *vacated on other grounds* (noninfringement), 2011 WL 2438633 (Fed. Cir. Jun. 20, 2011); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation. Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.") (internal quotation omitted). To establish that the public interest would not be served by enjoining future

infringement, NuVasive must show that this is one of the "rare and limited" circumstances in which trumping a patentee's right to exclude is justified. *Commonwealth Scientific and Indus. Research Organisation v. Buffalo Tech. Inc.,* 492 F. Supp. 2d 600, 607 (E.D. Tex. 2007). NuVasive has not made such a showing. First, NuVasive does not challenge Warsaw's contention that alternatives are available to replace NuVasive's infringing Helix systems. Second, the record evidence shows that NuVasive could continue to offer XLIF by substituting other products for the infringing implants and retractors and that there are multiple available alternatives to XLIF itself, including DLIF and other fusion procedures. Citing only anecdotal support from its own witnesses, NuVasive claims that its XLIF is superior to all other fusion procedures and products on the market. (Dkt. 431 at 6-11.) But that is not true. And even if it were so, that fact alone would be insufficient to deny injunctive relief. *See Arthrex, Inc*., 2010 WL 2522428, at *3 (holding that the public interest would not be disserved by permanently enjoining sales of an infringing medical product even though the infringing product arguably had better features than the plaintiff's product because the alternative "would essentially preclude all injunctions on medical devices where the adjudicated infringer sold an infringing, yet improved, product"). Because the public would be served by a permanent injunction, Warsaw's motion should be granted.

### 1. NuVasive's claim that there are no alternatives to XLIF is unsupported and untrue.

NuVasive claims that removing its infringing products from the market would harm patients because viable alternatives to XLIF do not exist.[1] (Dkt. 431 at 5.) This argument is untrue on several levels and directly contradicts the positions NuVasive took at trial. First, NuVasive's premise that an injunction would bar XLIF as a procedure is false. As set forth in its proposed order, Warsaw's injunction would apply to infringing CoRoent XL implants, MaXcess II and III retractors, and products "not more than colorably different" from these infringing products. Nothing would bar doctors from continuing to perform XLIFs with other products substituted for the infringing implants and retractors. Indeed, at trial, NuVasive's expert Dr. Sullivan testified that there are non-infringing

---

[1] As stated above, NuVasive's public interest arguments are limited to XLIF. Thus, NuVasive concedes that the public interest would not be disserved by enjoining future sales of its Helix ACP systems.

alternatives to both the infringing MaXcess retractors and CoRoent XL implants. (Tr. at 1983:10-1984:24, 1985:5-17.)[2] For example, Clydesdale implants made and sold on behalf of Warsaw can be used in XLIFs in place of the infringing CoRoent XL implants. Similarly, NuVasive has MaXcess III solid retractors on the market which were not accused of infringement and have been touted by NuVasive for use in XLIF procedures. (Tr. at 1985:25-1986:6 (Sullivan).) According to NuVasive, it is NuVasive's neuromonitoring technology, not the infringing CoRoent XL implants and MaXcess retractors, that make XLIF "safe and reproducible." (*See, e.g.,* Tr. at 403:13-23, 412:18-413:17 (Miles); 1421:24-1422:2 (Smith); 1993:8-20 (Sullivan).)

Second, even viewing the XLIF procedure as a whole, Dr. Sullivan testified that there are numerous alternative procedures available, including DLIF, ALIF, TLIF, and PLIF. (Tr. at 1988:2-15 (Sullivan); s*ee also* Tr. at 1232:4-8 ("Q. NuVasive considers, specifically the DLIF procedure, to compete with its XLIF procedure, am I correct? A. I think there's a number, as we talked about, competitors that compete against XLIF, and DLIF is one of them, yes.") (Valentine) and Tr. at 1233:11-1234:13 (Valentine).) Thus, not only did NuVasive present evidence at trial that it could offer non-infringing products for use in XLIF procedures, it also presented evidence that alternative fusion procedures to XLIF are available for use by surgeons.

Dr. Smith's testimony does not support NuVasive's argument that alternatives to XLIF are lacking. First, Dr. Smith is a paid NuVasive consultant who has made over a million dollars from NuVasive. (Tr. at 1423:24-1425:9.) NuVasive has offered no evidence that surgeons besides Dr. Smith believe that alternatives to XLIF do not exist. Second, Dr. Smith admitted that alternative procedures to XLIF are available. He conceded that XLIF is not the only fusion procedure that gives good results for patients and admitted that he has experienced adverse results with XLIF. (Tr. at 1425:10-13, 1428:15-18.) He also testified that without XLIF, he would use PLIF or TLIF. (Tr. at 1399:16-24.) Moreover, there is no evidence that Dr. Smith, despite opining that the DLIF retractor and implant were "dangerous," has ever performed a DLIF or even seen a DLIF procedure in an operating room. (*See* Dkt. 431 at 9 (citing Tr. at 1422:12-1423:2 (Smith)).)

---

[2] Cited excerpts from the trial transcript are attached as Ex. A to the supporting Wickramasekera declaration. Unless otherwise stated, all cited exhibits are to the Wickramasekera declaration.

The documents cited by NuVasive in support of its argument are similarly unpersuasive. Several of these documents are not even in evidence. (*See* Dkt. 431 at 9-10 (citing DTX6025, DTX5512, DTX5566, and Ex. A (Dkt. 431-31)).) For example, NuVasive relies upon one insurer's purported classification of DLIF as investigational. (Dkt. 431-31.) Assuming this hearsay document is accurate, it is nonetheless irrelevant. XLIF has also been classified by insurers as investigational. (*See, e.g.,* PX1218 (11/30/09 Transcript of NuVasive Conference Call Regarding Reimbursement) at 3 ("[A] few insurance carriers, even as far back as December 2007, classified XLIF as an Investigational technology").) The outdated Morgan Stanley analyst document cited by NuVasive is also hearsay and from over three years ago. (DTX6025.) The outdated (and anecdotal) Medtronic email cited by NuVasive is from five years ago. (DTX5431.) NuVasive cites no record evidence suggesting that the DLIF products *currently available* to surgeons are medically inferior or not a viable alternative to XLIF. Finally, the product brochures and other marketing materials NuVasive cites regarding its infringing products are not sufficient evidence that XLIF products are medically superior to other spinal fusion products on the market. Indeed, surgeons perform hundreds of DLIF procedures every year in addition to the numerous ALIFs, TLIFs, and PLIFs performed (many with NuVasive products).[3] These procedures are currently available as viable alternatives to NuVasive's infringing XLIF products. NuVasive has offered no credible evidence to the contrary.

2. **In other cases involving medical devices, courts have granted permanent injunctions.**

In its opening memorandum, Warsaw cited a number of medical device cases where, under similar facts, courts held that a permanent injunction would be in the public interest. In each of these cases, the court rejected unsupported claims by the infringer that its product was superior to other available products on the market. For example, in *Shiley, Inc. v. Bentley Labs., Inc.*, the court rejected the defendant's argument that the public would be harmed if its infringing blood oxygenators were removed from the market because "no credible evidence in the trial record

---

[3] NuVasive's hypothetical regarding DLIF not being available in the event that NuVasive moves for an injunction relating to its '236 patent has no merit. (Dkt. 431 at 11-12.) Despite threatening to do so, NuVasive has not even requested an injunction. Even assuming that the Court would grant NuVasive's motion if it were filed, there is no evidence that Warsaw and Sofamor Danek could not implement alternative neuromonitoring technology and continue to offer DLIF products.

4

1 support[ed] any finding that either [oxygenator] is objectively superior in performance or that either
2 is defective or unsafe in any way or does not properly perform as intended and required in the
3 operating room." 601 F. Supp. 964, 970 (C.D. Cal. 1985). There, the court did not find persuasive
4 affidavits from hospitals and doctors stating personal preference for the infringing product. *Id.*
5 Similarly, in *Acumed LLC v. Stryker Corp.*, the Federal Circuit rejected the defendant's contention
6 that the public interest would be disserved if its infringing orthopedic nail was pulled off the market
7 because there was insufficient objective evidence that the patentee's competing product was inferior.
8 551 F.3d 1323, 1331 (Fed. Cir. 2008). Likewise, in *Arthrex, Inc*., the court held that surgeon
9 declarations expressing personal preference for an infringing graft fixation device were insufficient
10 to deny a permanent injunction because the alternative "would essentially preclude all injunctions on
11 medical devices where the adjudicated infringer sold an infringing, yet improved, product." 2010
12 WL 2522428, at *3; *see also Becton Dickinson & Co. v. Tyco Healthcare Grp. LP*, 2008 WL
13 4745882, at * 4 (D. Del. Oct. 29, 2008) ("Tyco further argues that the public interest is not served by
14 an injunction, because its products are safer than [plaintiff's] SafetyGlide products . . . . The court is
15 not persuaded, given Tyco's failure to cite anything—the record, safety guidelines, statistics—to
16 support its argument.")

17 Here, as in the cases cited above, NuVasive claims that its XLIF products are superior to
18 alternatives in the market, including DLIF, without any supporting objective evidence. Indeed, as in
19 *Shiley, Inc*. and *Arthrex, Inc*., NuVasive has offered only evidence of surgeon preference (and only
20 from Dr. Smith), which is insufficient to override the public's interest in patent protection.
21 NuVasive does not attempt to distinguish the facts of any of these analogous cases in its opposition.
22 Instead, NuVasive cites to the handful of rare cases in which a significant public interest against an
23 injunction was established by sufficient evidence. *See Johnson & Johnson Vision Care, Inc. v. CIBA*
24 *Vision Corp.*, 712 F. Supp. 2d 1285 (M.D. Fl. 2010) (evidence showed that infringing contact lenses
25 were largest-selling in the United States and expert testified that the 5.5 million Americans who
26 wore the infringing lenses would be forced to return to an eye-care professional (potentially multiple
27 times) to be fitted for noninfringing lenses and each pay between $50 and $125 if injunction issued);
28 *Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 561 (D. Del. 2008)

5

(evidence showed that infringing technology involved life-saving coronary stents and multiple cardiologists expressed concern over success of their future surgeries if infringing stents were removed from market); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 2009 WL 920300, at *8 (D. Ariz. Mar. 31, 2009) (evidence showed that infringing technology involved life-saving stent-grafts, several of which were the industry standard and did not have alternatives in the market). Because NuVasive has not shown that a significant adverse public interest is present here,[4] the public interest factor weighs in favor of granting Warsaw's motion for a permanent injunction.

### B. The Other *eBay* Factors Support Granting Warsaw's Request for a Permanent Injunction.

#### 1. Monetary damages are inadequate to compensate for NuVasive's infringement and Warsaw continues to suffer irreparable harm.

As set out in detail in Warsaw's opening memorandum, the first two *eBay* factors also favor granting a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Warsaw has shown that NuVasive's infringement is causing Warsaw irreparable harm through lost sales, lost market share, lost access to potential customers and other factors that are difficult to quantify in money damages. Thus, damages are inadequate to compensate Warsaw for this infringement. (*See* Dkt. 409-1 at 7-11.) In its opposition, NuVasive ignores the realities of the marketplace and argues that as a bright-line rule, Warsaw is not entitled to an injunction because it allegedly does not compete with NuVasive.[5] (Dkt. 431 at 19-22.) This argument has been rejected

---

[4] NuVasive's third public interest argument, that granting a permanent injunction would harm competition in the spine market, also fails. First, the market enjoys robust competition in the spinal implant area. (*See, e.g.,* Tr. at 1232:4-8, 1233:11-1234:13 (Valentine).) Moreover, contrary to NuVasive's assertions, the public interest will not be served by allowing NuVasive "to develop competing procedures" through the exploitation of others' intellectual property. (Dkt. 431 at 12.) And NuVasive's claims that Warsaw and Medtronic are not innovators are flat wrong. (*See, e.g.,* Dkt. 409-1 at 2 (noting that Warsaw annually invests between $100 and $120 million in research and development).) And the jury agreed. Finally, the cases NuVasive cites in support of its competition argument are inapposite. (*See* Dkt. 431 at 12.) *Machlett Laboratories, Inc. v. Techny Indus., Inc.,* was not a patent infringement case and involved a ***preliminary*** injunction. 665 F.2d 795, 798 (7th Cir. 1981). *Mercoid Corp. v. Mid-Continent Inv. Co.*, an opinion from almost seventy years ago, related to the improper expansion of patent rights to cover unpatented articles. 320 U.S. 661, 669 (1944). Neither opinion is relevant to the facts of this case.

[5] NuVasive also claims that Warsaw is not entitled to an injunction because of its alleged delay in seeking injunctive relief. (Dkt. 431 at 2.) This argument lacks merit. Warsaw has diligently sought enforcement of its patent rights against NuVasive—despite NuVasive's many attempts at delay. And it is black letter law that a patent holder is not required to seek a preliminary injunction in order to obtain a permanent injunction. *See, e.g., ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 2011 WL 5878365, at *6 (E.D. Va. Nov. 23, 2011) ("[T]here is no requirement that a party

by other courts, including the Federal Circuit.

Uncontroverted evidence shows that Warsaw and NuVasive compete in the spine market. NuVasive does not deny that Warsaw manufactures and sells spinal implants and instruments to Sofamor Danek, including DLIF products and anterior cervical plating system products. (Dkt. 409-1 at 8-9.) Sofamor Danek then sells these products to hospitals and surgeons on Warsaw's behalf. (*Id.*) All of these products compete with NuVasive's infringing products in the marketplace. (*Id.* at 9.) When NuVasive sells an infringing product in lieu of Sofamor Danek making that sale, Warsaw loses revenue. (*Id.* at 9-10.) Finally, NuVasive does not deny that when Sofamor Danek loses sales to NuVasive, it also loses surgeon relationships, which adversely affects Warsaw's ability to develop its intellectual property. (*Id.* at 10.)

In the recent case of *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, the district court, relying on the Federal Circuit's holding in *Mytee Prods., Inc. v. Harris Research, Inc.*, granted a permanent injunction on facts analogous to those at issue here. 2011 WL 5878365, at *3 (E.D. Va. Nov. 23, 2011). Like Warsaw and NuVasive, the patent holder and infringer in *ActiveVideo* were in competition because the patent holder licensed its technology to a third party who directly competed with the infringer for sales to customers. *Id.* As in the present case, the infringer had increased its market share by wrongly exploiting the patent holder's technology and there was "no doubt" that the patent holder suffered losses from the infringement.[6] *Id.* And just as the *ActiveVideo* court entered a permanent injunction, NuVasive's ongoing infringement should be enjoined to stop the irreparable injury being suffered by Warsaw. *See also Mytee Prods., Inc. v. Harris Research, Inc.*, 2011 WL 3875232, at *4 (Fed. Cir. Sept. 2, 2011) ("We have never held, however, that in order to establish irreparable harm a patentee must demonstrate that it is entitled to lost profits or that it is in direct

---

must seek a preliminary injunction in order to obtain a permanent injunction.").
[6] NuVasive also relies on *Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290 (E.D. Pa. 2009), for its contention that Warsaw is not harmed by infringement. The parties in that case had originally stipulated to standing, so Warsaw did not present evidence at trial of its particularized injury or lost profits separate from that of Medtronic USA. *Id.* at 293, 296. Following the district court's decision that Warsaw was the only party with standing, Warsaw was not permitted to introduce evidence pertaining to its own injury. *Id.* at 296 ("The court will re-open the record to admit evidence of patent ownership, but not evidence of Warsaw's lost profits."). Thus, *Globus* is unlike the present case where Warsaw presented substantial evidence of its own injury and lost profits. Indeed, the jury's verdict affirmed that Warsaw was injured and suffered lost profits.

7

1  competition with the infringer. In this case, the district court rationally concluded that Harris had
2  shown irreparable harm based on its finding that Mytee and Harris were indirectly competing
3  through their customers."); *Robert Bosch LLC v. Pylon Mfg. Corp.*, --- F.3d ---, 2011 WL 4834266,
4  at *9 (Fed. Cir. Oct. 13, 2011).

5        Finally, NuVasive claims that the handful of licenses granted to third parties as part of
6  settlement agreements and Warsaw's intercompany licenses show that money damages are adequate
7  to compensate Warsaw for the infringement. That is not the case. Warsaw is in the business of
8  commercializing its technology, not licensing its patents. (Tr. at 1020:11-25 (Neels).) Outside of
9  the litigation settlement context, Warsaw does not permit competitors to use its technology. Under
10 similar circumstances, the court in *ActiveVideo* held that the patent holder's licenses with third
11 parties did not weigh against granting a permanent injunction. 2011 WL 5878365 at *4 ("The Court
12 is not persuaded that in licensing its patents to other businesses, ActiveVideo forfeited its right to
13 exclude others from infringing on its patents. ActiveVideo has never permitted any party to develop
14 a competing product using its technology.")

15       Because Warsaw continues to be irreparably harmed by NuVasive's infringement, and
16 because damages are inadequate to compensate Warsaw, a permanent injunction should be granted.

17       2.    **The balance of hardships favors Warsaw.**
18       The third *eBay* factor—balance of hardships—also favors granting an injunction.
19 NuVasive's infringement continues to cause Warsaw hardship through loss of sales, market share,
20 and surgeon relationships. Without an injunction, Warsaw will be forced to compete against its own
21 patented inventions. *Bosch*, 2011 WL 4834266, at *12. NuVasive claims that this factor favors
22 denial of an injunction because XLIF is its "core technology." (Dkt. 431 at 13.) But hardship from
23 the inability to sell infringing products is not cognizable. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598
24 F.3d 831, 863 (Fed. Cir. 2010) ("[N]either commercial success, nor sunk development costs, shield
25 an infringer from injunctive relief. [The defendant] is not entitled to continue infringing simply
26 because it successfully exploited its infringement.") (internal citations omitted). "[O]ne who elects
27 to build a business on a product found to infringe cannot be heard to complain if an injunction
28 against continuing infringement destroys the business so elected." *Broadcom Corp. v. Qualcomm*

8

1 *Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (internal quotation omitted). Further, the fact that Warsaw and Sofamor Danek sell products for other fusion procedures besides DLIF does not mean NuVasive's infringement is not causing Warsaw to suffer significant hardship. *See Bosch*, 2011 WL 4834266, at *8 ("[T]he district court erred in attributing weight to the non-core nature of Bosch's wiper blade business.") (*citing Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1330 (Fed. Cir. 2008) (Lourie, J., concurring) ("[A] patent provides a right to exclude infringing competitors, regardless of the proportion that the infringing goods bear to a patentee's total business.").

Finally, Dr. Sullivan admitted that ALIF, PLIF, and TLIF products are available and acceptable alternatives to NuVasive's infringing XLIF products. (Tr. at 1983:10-1984:14.) Indeed, NuVasive is already marketing and selling ALIF, PLIF, and TLIF devices, and any potential hardship to NuVasive can be alleviated by focusing its sales on these products. Dr. Sullivan also testified that there are non-infringing alternatives for the infringing MaXcess retractors (Tr. at 1983:10-1984:24) as well as for the implants (Tr. at 1985:5-17.) Thus, this factor also weighs in favor of granting an injunction.

### C. NuVasive's Request for a Stay or Two-Year Sunset Provision Is Unwarranted.

NuVasive asks that a permanent injunction be stayed or subject to a two-year sunset period. Both requests are unreasonable because they would gut the injunction of its effect without regard to the interests of Warsaw and the public, or the strong infringement case proven at trial.

NuVasive's assertion that "[s]taying imposition of a permanent injunction is common in patent cases" is empty hyperbole. (Dkt. 431 at 22.) To obtain a stay pending appeal, "a movant must establish a ***strong*** likelihood of success on the merits or, failing that, nonetheless demonstrate a ***substantial case*** on the merits ***provided*** that the harm factors militate in its favor." *Mytee Products, Inc. v. Harris Research, Inc.*, 2010 WL 3724587, at *1 (Fed. Cir. 2010) (emphasis added). NuVasive has failed to make such a showing.

In deciding whether to grant a stay, courts also "weigh[ ] the equities as they affect the parties and the public." *Id.* (citations omitted). NuVasive has not met its burden of showing that the equities favor a stay. For example, in the case cited by NuVasive, *In re Hayes Microcomputer Prods.*, the defendants presented the court with persuasive evidence of the severe hardship they

1  would suffer if the injunction was not stayed pending appeal.  766 F. Supp. 818, 823 (N.D. Cal.

2  1991) (noting that several defendants would be forced out of business).  In that case, unlike here, the

3  patent holder had also failed to prove irreparable harm.  *Id.*  By contrast, as NuVasive continues to

4  infringe, Warsaw's patents are moving towards expiration with additional irreparable injury from

5  each day of infringement.  A stay pending appeal would "put into doubt whether [Warsaw] would

6  ever enjoy the remedy to which it has proven it is entitled."  *ePlus, Inc. v. Lawson Software, Inc.*,

7  2011 WL 2119413, at *4 (E.D. Va. May 24, 2011) (denying request to stay permanent injunction

8  pending appeal despite rejection of patent claims in parallel reexamination proceeding); *see also*

9  *SynQor, Inc v. Artesyn Techs., Inc.*, 2011 WL 238645, at *2 (E.D. Tex. Jan. 24, 2011) (denying

10 request to stay injunction pending appeal because defendants failed to meet their burden to show that

11 a stay was warranted).  As explained in detail above, the balance of hardships and the public interest

12 favor immediately enjoining NuVasive's infringement.

13      Similarly, NuVasive's request for a two-year sunset provision is unreasonable.  NuVasive is

14 already selling non-infringing alternatives to the infringing products—*e.g.* its ALIF, TLIF and PLIF

15 products—and does not need additional time to get these products to market.  As to new products,

16 NuVasive has exaggerated the length of time required to obtain FDA clearance.  For example,

17 publicly available information from the FDA's website states that 510(k) approval takes

18 approximately 90 days.  (Exs. B and C; *see also* Tr. at 322:11-18 (stating that 510(k) clearance "is a

19 90-day process") (Sharp).)  Moreover, the evidence at trial demonstrated that it took less than two

20 years for NuVasive to develop a product for commercial sale.  For example, NuVasive's CoRoent

21 implants were developed in 12 to 18 months from the start of development to product launch.  (Tr. at

22 460:13-18 (Miles).)  NuVasive developed its Helix system in nine months.  (Tr. at 1892:13-15

23 (Ojeda).)  At this point, NuVasive has already had three months since the verdict to begin

24 implementing design-arounds for its infringing products.  It's request for a stay or sunset provision

25 should be denied.

26 **III.     CONCLUSION**

27      For the foregoing reasons and those set out in Warsaw's opening memorandum, the Court

28 should grant Warsaw's motion and enjoin further infringement of the asserted patents by NuVasive.

10

WARSAW'S REPLY ISO MOTION FOR A PERMANENT INJUNCTION                    CASE NO: 3:08-CV-01512

| | | |
|---|---|---|
| 1 | DATED: December 23, 2011 | Respectfully submitted, |

*/s/ Nimalka R. Wickramasekera*
Luke L. Dauchot
Alexander F. MacKinnon
Nimalka R. Wickramasekera
KIRKLAND & ELLIS LLP

Attorneys for Plaintiff/Counterclaim Defendant/Counterclaimant,
WARSAW ORTHOPEDIC, INC.; MEDTRONIC SOFAMOR DANEK USA, INC.

11

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, Los Angeles, California 90071.

On December 23, 2011, true and correct copies of the foregoing document were served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

☒ FEDERAL: I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 23, 2011, in Los Angeles, California.

*/s/ Nimalka R. Wickramasekera*
Nimalka R. Wickramasekera

CERTIFICATE OF SERVICE — CASE NO: 3:08-CV-01512