Exhibit 9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC., *et al.*, <br><br> Plaintiffs, <br><br> vs. <br> NUVASIVE, INC., <br><br> Defendant. | CASE NO. 08-cv-1512 CAB (MDD) <br><br> ORDER SETTING POST-TRIAL ONGOING ROYALTIES |

## I.  Introduction

Before the Court are the parties' cross motions requesting the Court set post-trial ongoing royalties for NuVasive's continued practice of Warsaw's U.S. Patents Nos. 5,860,973 ("the '973 patent") and 6,945,933 ("the '933 patent") and Warsaw's continued practice of NuVasive's U.S. Patent No. 7,470,236 ("the '236 patent"). [Doc. Nos. 462, 463, 475, 478.] Each patent was determined valid and infringed by jury verdict entered on September 29, 2011, following trial presided over by U.S. District Judge Michael M. Anello. [Doc. No. 401.] On January 26, 2012, the Court denied Warsaw's motion for a permanent injunction and ordered the parties to brief the matter of ongoing royalties. [Doc. No. 460.]

On March 2, 2012, with the ongoing royalty determination pending, the Court entered judgment pursuant to Fed.R.Civ.P. 54(b), to allow the parties to proceed with

1  their appeals of the trial verdict. [Doc. No. 486.] Also on March 2, 2012, Judge Anello
2  transferred the case, and the pending post-trial matters, to the undersigned. [Doc. No.
3  488.] The parties filed notices of appeal shortly thereafter. On August 2, 2012, the
4  Court of Appeals for the Federal Circuit dismissed the appeals, finding that the case was
5  not final because the district court had not yet determined ongoing royalties. [Doc. No.
6  529.]

## II. Background

Warsaw[1] and NuVasive, Inc. are engaged in an ongoing battle regarding their respective technologies used in spinal surgery and their patent rights related to both devices and methods in that field. In this particular case, Warsaw alleged infringement by NuVasive of nine patents. [Doc. No. 11.] NuVasive counterclaimed for infringement of three patents. [Doc. No. 81.] The case management order entered by the trial judge directed the parties to proceed to trial in phases. For Phase I, Warsaw selected to litigate the '973 patent, the '933 patent, and U.S. Patent No. 6,592,586 ("the '586 patent"). NuVasive selected the '236 patent. [Doc No. 330.] All four patents were tried to verdict.

The parties recently resolved their dispute with respect to the '586 patent, obviating the need to address an ongoing royalty for this patent. They also dismissed five of the other patents asserted by Warsaw in its complaint. [Doc. No. 587.] The parties have further represented that, in light of proceedings in the Patent Office involving the remaining three as yet unlitigated patents asserted in this matter, they will dismiss their allegations as to those patents as well. Consequently, this litigation, which initially involved 12 patents, has narrowed to Warsaw's '973 patent and '933 patent and NuVasive's '236 patent. The determination of ongoing royalties is necessary before the parties may proceed further.

When the matter was transferred, the Court encouraged the parties to negotiate

---

[1] Plaintiffs/counterclaim defendants in this action included the following entities: Medtronic Sofamor Danek USA, Inc.; Warsaw Orthopedic, Inc.; Medtronic Puerto Rico Operations Co.; and Medtronic Sofamor Danek Deggendorf, GmbH. They are jointly referred to herein as "Warsaw."

1 an agreement regarding ongoing royalties and provided a full and fair opportunity for
2 the parties to set their own rates. During the intervening months, although the parties
3 successfully resolved many issues, they were unable to come to an agreement on future
4 royalties. "Should the parties fail to come to an agreement, the district court could step
5 in to assess a reasonable royalty." *Paice v. Toyota Motor Corp.* (*Paice II*), 504 F.3d
6 1293, 1315 (Fed. Cir. 2007).

### III. Analysis

As the Court did not preside over the trial, in addition to the parties' briefing on the post-trial award, the Court reviewed the trial record, the testimony, and exhibits regarding damages calculations. NuVasive sought a reasonable royalty for its '236 patent, and the verdict is consistent with the expert testimony as to a reasonable royalty for this patent. *See* Trial Testimony of Ryan M. Sullivan, Doc. No. 381, at 4-12.[2] The damage award for the two Warsaw patents includes a lost profit and royalty component, based on a market share analysis. The form of the verdict is helpful, as it sets forth the jury's determination of reasonable royalty rates for each of the patents-at-issue. The verdict reflects that the jury did not adopt the expert opinion of either party with regard to damages.

On Warsaw's behalf, John Kevin Neels advocated a damage award that ranged from approximately $204 million to $324 million for infringement of all three patents, inclusive of lost profits and royalties. He advocated royalty rates of 15 or 25% for the '973 patent, 15% for the '933 patent, and 15 or 25% for the '586 patent.[3] Trial

---

[2] Throughout this order, the Court refers to docket entries and page numbers assigned by CM/ECF.

[3] Neels testified to a variety of damage combinations depending upon which patents were ultimately found infringed and also provided alternative royalty rates for the '936 and '586 patents, as set forth below.
    For infringement of the '936 patent:
        $114.2 million lost profits; $26.3 million royalties (@15%) = $140.5 million
        $114.2 million lost profits; $43.8 million royalties (@25%) = $158 million
    For infringement of the '933 patent:
        $73.5 million lost profits; $38.5 million royalties (@15%) = $112 million
    For infringement of the '586 patent:
        $12.2 million lost profits; $2 million royalties (@15%) = $14.2 million

Testimony of Neels, Doc. No. 370, at 34-114. NuVasive's expert, Sullivan, provided alternative calculations for a lost profit/reasonable royalty award, but concluded that an award of lost profits should not be made for infringement of any of the patents. He advocated a royalty-based damage award of approximately $13 million based on rates of 5% for the '973 patent, 1.5% for the '933 patent, and 1.75% for the '586 patent. [Doc. No. 381, at 31.]

The jury awarded Warsaw a total sum of $101,196,000 for a combination of lost profits and royalties for infringement of all three patents. The jury determined reasonable royalty rates of 10% for the '973 patent, 3% for the '933 patent, and 2% for the '586 patent. With regard to NuVasive's '236 patent, the jury awarded $660,000, based on a reasonable royalty rate of 5.5%. The royalty rates set by the jury appear to correspond to trial testimony regarding existing licensing rates for the patents-at-issue between the inventors and the parties, as well as comparable licensing agreements that contain the patents-at-issue or similar patented technology.

To set an ongoing royalty rate for the continued practice by NuVasive of the '973 and '933 patents and by Warsaw of the '286 patent, the Court must determine an appropriate ongoing royalty rate, in light of the adjudication of infringement and the denial of an injunction, that is sufficient to compensate the patentee for giving up its right to exclude and at the same time allow the ongoing infringer to make a reasonable profit. *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 2010 WL 3070370, *3 (S.D. Cal., Aug. 5, 2010), *rev'd on other grounds*, 702 F.3d 1351, 1364 (Fed. Cir. 2012), *citing Paice LLC v. Toyota Motor Corp.* (*Paice III*), 609 F.Supp.2d 620, 624 (E.D. Tex. 2009).

---

$12.2 million lost profits; $3.3 million royalties (@25%) = $15.5 million
For infringement of the '936 and '933 patents jointly:
$124.8 million lost profits; $64.8 million royalties (@15 &15%) = $189.6 million
$124.8 million lost profits; $82.3 million royalties (@25 &15%) = $207.1 million
For infringement of the '936, '933 and '586 patents jointly:
$137.0 million lost profits; $66.8 million royalties (@15 & 15%) = $203.8 million
$137.0 million lost profits; $85.6 million royalties (@25 &15%) = $222.6 million
Neels also provided an alternative market share theory that resulted in total of $324 million for infringement of all three patents.

- 4 -

NuVasive contends that the Court should adopt the jury's royalty determinations as the reasonable rate for the ongoing practice of its patent and Warsaw's patents. Warsaw makes no argument with regard to the 5.5% rate for any ongoing use of NuVasive's '236 patent. Warsaw however argues that the jury's royalty of 10% for the '973 patent and 3% for the '933 patent are inadequate to compensate it for any continued use of its patents following the adjudication of infringement and that these rates do not consider its future lost profits. Warsaw contends that the Court should fix the ongoing rates at 36% for the '973 patent and 11% for the '933 patent.

The Court agrees with Warsaw that the jury's royalty-rate determination, if applied without adjustment to the ongoing practice of its patents, would not adequately compensate Warsaw for future profits it would forfeit by NuVasive's competition in the market. The rates set by the jury applied to sales NuVasive made that Warsaw would not have made, as indicated by the total award that includes a lost profits component. The Court therefore declines to adopt NuVasive's ongoing royalty proposal. For the reasons set forth below, the Court also declines to adopt Warsaw's proposed rates.

The rates proposed by Warsaw are the result of a calculation performed by Warsaw's expert "starting with the jury's verdict of $101 million (for lost profits and royalties on remaining sales) and then determining the rates under each patent that would yield that total verdict award if all damages were in the form of royalties." [Doc. No. 463 at 18.] Applying this formula, Warsaw's expert multiplied the jury's royalty rates by 3.63, resulting in the proposed 36% for the '973 patent and 11% for the '933 patent, to "preserve the relative value that the jury determined was appropriate for each patent." *Id.* at 19. The Court rejects this mathematical approach as a method for determining an appropriate ongoing royalty. Although a convenient extrapolation of the jury's verdict into a royalty-based number, it results in an unjustifiable windfall for Warsaw, based on Warsaw's own testimony at trial.[4]

---

[4] The Court recognizes that at trial Warsaw proposed a rate of 15% on the '933 patent, and now proposes 11% based on its apportionment calculation. It is still dramatically larger than the 3% rate the jury found reasonable.

At trial, Warsaw proposed a royalty rate of 25% for the '973 patent and 15% for the '933 patent. Warsaw's expert testified he performed a hypothetical negotiation applying the *Georgia-Pacific*[5] factors for his analysis. [Doc. No. 370, at 74-84, 96-97.] Significantly, he started from a balance in favor of Warsaw, assuming that the parties entered negotiations with a finding that the patents are valid and infringed. *Id.* at 74. His review of the relevant factors focused on the competitive commercial relationship between the parties. *Id.* at 75. He did not find existing licenses in the market helpful as they did not involve licensing competitors and it was Warsaw's existing policy not to license competitors. *Id.* at 76-77. He found the technology at issue to be very valuable, supporting large volumes of sales and significant advantages over previous techniques. *Id.* at 78.

Warsaw's expert testified that Warsaw would not have been willing to license NuVasive, a competing entity, for less than the profits it would be giving up by granting a license, which he calculated at 25% for the '973 patent and 15% for the '933 patent. *Id.* at 81-82, 96-97. He also assumed that NuVasive, although a young company at the time of the hypothetical negotiation, needed the patented technology to complete its portfolio and had expectations that its profits would rise with the use of this technology. *Id.* at 80. Since Warsaw would be forgoing profits by licensing a competitor, Warsaw's expert concluded that to compensate Warsaw for giving up "considerable profits it stood to earn," Warsaw would have demanded a royalty of 25% on the '973 patent and 15% on the '933 patent, and those were the appropriate rates to apply. *Id.* at 84, 97.

Warsaw's proposed rates at trial were founded on the assumption the patents were valid and infringed, and therefore the expert weighted the rates in Warsaw's favor. Consequently, the jury's verdict confirming that assumption does not materially change the negotiation balance assumed by Warsaw's expert. *Presidio Components*, 2010 WL 3070370, *4. Warsaw's proposed rates at trial looked at NuVasive's expectations of

---

[5] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), sets forth fifteen factors that are considered in a reasonable royalty analysis.

profit, not at its financial state at the time of first infringement, and therefore assumed a higher forward-looking amount based on NuVasive's anticipated growth and increased profits.

Most significantly, Warsaw's proposed rates at trial were presented as the amount Warsaw would have been willing to accept to forego its own sales, *i.e.*, the value it would require to permit NuVasive to compete in the market. For the '973 patent, Warsaw's expert concluded at trial that the reasonable rate Warsaw would accept to allow such competition was 25%. The Court finds nothing in the parties' post-verdict negotiation relationship that was not already accounted for in Warsaw's pre-verdict negotiation analysis to support the contention that just compensation to Warsaw for the competitive use of this patent now demands an increase to 36% to adequately compensate Warsaw for NuVasive's use of the '973 patent going forward.

Warsaw does argue that NuVasive's continued use of its patents is willful and therefore merits an increased rate. In this case the Court denied the request for a permanent injunction, giving substantial weight to the public interest factor. Determining that the infringing products and methods provide needed medical relief to patients and that doctors who favor the defendant's products and procedures cannot readily change to other methods or devices, the trial judge concluded that it was in the public interest to allow defendant to remain in the market and pay an appropriate royalty to do so. Under these particular circumstances, the Court is not inclined to view the defendant's continued presence in the market as an act of willful infringement. The right to exclude was denied, and with the payment of royalties NuVasive's continued practice of these patents for the public benefit is with permission. *Paice II*, 504 F.3d at 314-15 (court may assess a reasonable royalty to permit use of the invention).

Many of the assumptions Warsaw made in determining its pre-judgment royalty rates presented at trial are essentially unchanged for purposes of a post-judgment hypothetical negotiation. The Court however finds two significant changes in the post-verdict circumstances that recommend a downward adjustment of Warsaw's rates

proposed at trial. First, the threat of a permanent injunction which serves as a "big stick" in framing negotiation terms for a license, *Paice III,* 609 F.Supp.2d at 624, is not in Warsaw's post-judgment arsenal. Second, the jury found that the profits Warsaw forfeits by allowing NuVasive to compete are substantially less than the amounts Warsaw proposed at trial.

Warsaw estimated at trial it lost approximately $137 million in profits due to NuVasive's infringement. When advocating a reasonable royalty rate, Warsaw's expert emphasized Warsaw would require rates sufficient to compensate it for the considerable profits Warsaw would forfeit by licensing NuVasive. He therefore set that rate at 25% for the '973 patent and 15% for the '933 patent.

The jury's verdict reflects a lost profit component of approximately $75.7 million, about 55% of the amount proposed by Warsaw for infringement of all three patents. This fact indicates that Warsaw's post-verdict negotiation position for a royalty sufficient to compensate it for giving up its profits should be considerably less. The jury found Warsaw is actually foregoing significantly less profits than the amounts Warsaw's expert estimated when determining the royalty rates he proposed at trial.

### IV. Conclusion

The Court rejects NuVasive's proposal that the Court adopt the jury's rates of 10% and 3% for the '973 and '933 patents, respectively, finding them insufficient compensation to Warsaw for the ongoing use of its patents. The Court also rejects Warsaw's post-judgment proposal of 36% and 11% for the '973 and '933 patents, respectively. The Court further finds that Warsaw's rates proposed at trial, 25% for the '973 patent and 15% for the '933 patent, would overcompensate Warsaw based on the actual lost profits found by the jury. Having considered the record in this case, the Court finds that royalty rates set at 55% of the rates Warsaw advocated at trial will reasonably compensate Warsaw for the ongoing use of its patents and sufficiently incorporate compensation for NuVasive's competitive sales.

Accordingly, based on the above considerations, the Court sets the following

royalty rates as adequate to compensate the patent owners as required by 35 U.S.C. § 284. NuVasive will pay a royalty of 13.75% for its post-verdict sales of the CoRoent XL implants found to infringe the '973 patent. NuVasive will pay a royalty of 8.25% for its post-verdict sales of the MaXcess retractors found to infringe the '933 patent. Warsaw will pay a royalty of 5.5% for its post-verdict sales of the NIM-Eclipse nerve monitoring systems found to infringe the '236 patent.

**IT IS SO ORDERED.**

DATED: June 10, 2013

**CATHY ANN BENCIVENGO**
United States District Judge