QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>     vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR AN ONGOING ROYALTIES INJUNCTION**<br><br><br>Date:     December 18, 2014<br>Time      1:30 PM<br>Place:    Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT 2

I.   Apple's Motion Should Be Dismissed for Waiver, as Untimely, and for a Lack of
     Jurisdiction. ......................................................................................................... 2

     A.   Apple Waived Its Right to Seek Ongoing Royalties. ................................... 2

          1.   Apple's Omission of Ongoing Royalties from the Joint Pretrial
               Statement Is Dispositive. ................................................................ 3

          2.   Apple Also Waived Any Right to the Injunctive Relief It Seeks. ........ 3

          3.   Apple's Boilerplate Language Does Not Avoid Waiver. ................... 4

     B.   Apple's Motion Is an Untimely Second Post-trial Motion and Should Be
          Dismissed. ............................................................................................... 5

          1.   Apple Was Required to Raise the Request for an Ongoing Royalty
               in Connection with Its Motion for Permanent Injunction. .................. 5

          2.   Apple's Motion Is Made Pursuant to Rule 59(e). ........................... 6

          3.   Apple Fails to Cite Any Precedent for Its Motion. ......................... 7

     C.   Apple's Appeal of the Denial of a Permanent Injunction Divested the Court
          of Jurisdiction for the Overlapping Matters Involved in Both Apple's
          Motion and the Appeal. ............................................................................ 8

II.  If the Court Does Not Dismiss Apple's Motion, It Should Stay Proceedings on It. ........... 10

     A.   A Stay Is Appropriate If There Is Any Doubt as to Jurisdiction. .......................... 10

     B.   A Stay Is Also Appropriate Because Appeals Will Likely Impact the Issues
          Raised by Apple's Motion. ........................................................................ 11

III. If the Court Reaches the Merits of Apple's Request, It Should Be Denied. ...................... 13

     A.   Because the Court Already Granted Apple's Request for Post-Verdict
          Damages, the Ongoing Royalty Apple Seeks Would Be Duplicative. ................. 13

     B.   Apple Is Not Entitled to Ongoing Royalties. ............................................... 13

     C.   Apple's Request Would Inefficiently Waste Judicial Resources. ......................... 15

          1.   There Is No Basis to Award Ongoing Royalties on the '172 and '721
               Patents. ........................................................................................ 15

          2.   Because There Are No Ongoing Sales of the Products with Software
               Held to Infringe the '647 Patent, Any Ongoing Royalty Rate Will
               Never Apply to the Products Accused in the Case. ............................ 15

　　　　　3.　　Granting Apple's Overly Broad Relief Would Perpetuate Satellite Litigation. .................................................................. 16

　　D.　Apple Cannot Prove the Jury Verdict Represents a Past Running Royalty Rather than a Lump Sum Award that Compensates for All Sales. ......................... 18

IV.　The Ongoing Royalty Rates Apple Seeks Are Excessive and Inappropriate. .................... 19

CONCLUSION ...................................................................................................... 20

**Cases**

*Affinity Labs of Tex., LLC v. BMW N. Am., LLC*,
   783 F. Supp. 2d 891 (E.D. Tex. 2011) ...................................................8

*Amado v. Microsoft Corp.*,
   No. 8:03-cv-242-DOC-AN, Dkt. 661 (E.D. Tex. Mar. 14, 2007)..................8

*Apple, Inc. v. Samsung Elecs. Co. ("Apple II")*,
   695 F.3d 1370 (Fed. Cir. 2012).............................................................20

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   No. 3:01-CV-0485, 2010 WL 815466 (M.D. Penn. Mar. 3, 2010),
   *aff'd per curiam*, 477 Fed. Appx. 740 (Fed. Cir. 2012)............................13

*Bard Peripheral Vascular v. WL Gore & Assocs.*,
   670 F.3d 1171 (Fed. Cir. 2012) ..........................................................6, 8

*Boston Scientific Corp. v. Johnson & Johnson*,
   550 F. Supp. 2d 1102 (N.D. Cal. 2008) ...................................................4

*Boyko v. Anderson*,
   185 F.3d 672 (7th Cir. 1999)...............................................................10

*Cordance Corp. v. Amazon.com, Inc.*,
   730 F. Supp. 2d 333 (D. Del. 2010) ...................................................6, 14

*Creative Internet Adver. Corp. v. Yahoo! Inc.*,
   674 F. Supp. 2d 847 (E.D. Tex. 2009) .................................................8, 12

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
   132 S. Ct. 1414 (2012) ........................................................................6

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-cv-72, 2011 WL 8810604 (E.D. Tex. Aug. 2, 2011) ....................7

*Dream Games of Ariz., Inc. v. PC Onsite*,
   561 F.3d 983 (9th Cir. 2009).................................................................4

*Elvis Presley Enters., Inc. v. Capece*,
   141 F.3d 188 (5th Cir. 1998).................................................................3

*Fractus, S.A. v. Samsung Elecs. Co., Ltd.*,
   2013 WL 1136964 (E.D. Tex. Mar. 15, 2013).........................................16

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y.1970) ..........................................8, 9, 12, 13

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982) .............................................................................8

*Hughes v. Jamestown Square LLC (In re Hughes)*,
    356 F. App'x 300, 301 (11th Cir. 2009)...............................................................................10

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
    No. 5:00-cv-20905-RMW, 2008 WL 5818917 (N.D. Cal. May 23, 2008)..........................8

*I/P Engine, Inc. v. AOL Inc.*,
    No. 2:11-cv-512, 2014 WL 243157 (E.D. Va. Jan. 21, 2014) ......................................11, 12

*I/P Engine, Inc. v. AOL Inc.*,
    No. 2:11-cv-512, 2014 WL 309245 (E.D. Va. Jan. 28, 2014) ....................................8, 11, 12

*I/P Engine, Inc. v. AOL Inc.*,
    --- F. App'x ----, 2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) ...........................................12, 13

*Masalosalo v. Stonewall Ins. Co.*,
    718 F.2d 955 (9th Cir. 1983)..................................................................................................10

*Mondis Tech., Ltd. v. Chimei Innolux Corp.*,
    No. 2:11-cv-378-JRG, 2012 U.S. Dist. LEXIS 60004 (E.D. Tex. Apr. 30, 2012) ...............8

*Munden v. Ultra-Alaska Assocs.*,
    849 F.2d 383 (9th Cir. 1988).................................................................................................6, 7

*Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*,
    242 F.3d 1163 (9th Cir. 2001)................................................................................................10

*Paice LLP v. Toyota Motors Corp.*,
    No. 2:04-cv-211, Dkt. 224 (E.D. Tex. July 13, 2006).............................................................7

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007)..................................................................4, 6, 7, 8, 13, 14

*Paice LLC v. Toyota Motor Corp.*,
    609 F. Supp. 2d 620 (E.D. Tex. 2009) ...................................................................................9

*Paige v. State of Cal.*,
    102 F.3d 1035 (9th Cir. 1996).................................................................................................8

*Ramos v. Davis & Geck, Inc.*,
    968 F. Supp. 765 (D.P.R. 1997), *aff'd*, 167 F.3d 727 (1st Cir. 1999) .........................3

*S. Cal. Retail Clerks Union v. Bjorklund*,
    728 F.2d 1262 (9th Cir. 1984).................................................................................................3

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
    612 F.3d 1365 (Fed. Cir. 2010)...............................................................................................8

*United States v. Claiborne*,
    727 F.2d 842 (9th Cir. 1984)..................................................................................................10

*United States v. Lummi Indian Tribe*,
    235 F.3d 443 (9th Cir. 2000)...................................................................................................3

*USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n),*
    USITC Order No. 122, 2012 WL 2929433 ...............................................17

*USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n),*
    USITC Complaint, 2010 WL 4786296 ............................................. 16-17

*USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n),*
    USITC Order No. 124, 2012 WL 6860165 ...........................................17

*USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n),*
    USITC Notice of Decision, 2011 WL 12486712 ..................................17

*USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n),*
    USITC Enforcement Action Complaint, 2012 WL 3030440 ................17

*Wheeling & Lake Erie Railway Co., v Brotherhood of Locomotive Eng'rs and Trainmen,*
    No 5:13-cv-2105, Dkt. 38 (N.D. Ohio Jan. 14, 2014) ..............10

*Whittaker v. Whittaker Corp.,*
    639 F.2d 516 (9th Cir. 1981)...................................................................6

*XpertUniverse, Inc. v. Cisco Sys., Inc.,*
    No. 09-cv-157-RGA, 2013 WL 6118447 (D. Del. Nov. 20, 2013) ...........14

## <u>Statutes</u>

35 U.S.C. § 283 ....................................................................3, 4, 5, 6, 13

Fed. R. Civ. P. 16(b)(4) ..............................................................................5

Fed. R. Civ. P. 16(d) ..................................................................................3

Fed. R. Civ. P. 16(e) ..................................................................................5

Fed. R. Civ. P. 59(e)..................................................................5, 6, 7, 13

# **INTRODUCTION**

There is no need for the Court to consider the substance of Apple's motion; it should be dismissed on several independent grounds. Apple waived any right to seek ongoing royalties. Apple failed to mention ongoing royalties in its Amended Complaint, the Joint Pretrial Statement, its post-trial motion to alter or amend the judgment, or its permanent injunction briefing. As this Court recently held in the context of Samsung's request to brief patent-eligibility in light of new law, such waiver is fatal to Apple's motion.

Apple's motion is also untimely. While it does not identify the rule under which Apple seeks to amend the judgment, Ninth Circuit law deems it a second post-trial motion under Rule 59(e). The Court's scheduling order permitted one post-trial motion and set firm deadlines and page limits. Apple did not seek to change or to be excused from that order, and there is no good cause for the Court to permit Apple a second Rule 59(e) post-trial motion.

This Court lacks jurisdiction to consider issues raised by Apple's motion. Because Apple has already appealed the denial of a permanent injunction, this Court has been divested of jurisdiction on those matters. Apple's motion would necessarily re-litigate before this Court many of the disputed issues of consumer demand, alleged harms, and adequate compensation from the permanent injunction phase now on appeal. The law of jurisdiction does not allow Apple to litigate the same issues before a district court and the court of appeals at the same time. Indeed, Apple's request for an ongoing royalty while appealing the denial of an injunction appears to be unprecedented.

If the Court does not dismiss Apple's motion, it should stay proceedings on it. The jurisdictional concerns raised by Apple's motion surely justify a stay of proceedings here. Also, because the parties anticipate further issues of liability and damages will be appealed, the Court has compelling reason to avoid the likely drawn-out, unnecessary, and wasteful proceedings threatened by Apple's motion. The risk of waste is dramatically illustrated by two of Apple's main authorities for the relief it seeks, where the Federal Circuit reversed liability findings after the district courts spent substantial time and resources needlessly addressing issues of ongoing

royalty. The liability rulings on appeal rendered those proceedings pointless. This Court should avoid those risks and stay proceedings on Apple's motion.

If the Court does not dismiss Apple's motion or stay proceedings on it, it should deny the motion on the merits. Contrary to Apple's contention, an award of ongoing royalties is not made as a matter of course where a permanent injunction is denied. The Court must consider the equities. Here, equity weighs heavily against a grant of an ongoing royalty. Apple has hidden from Samsung and the Court the issue of an ongoing royalty for the entire course of this suit. Apple's silence has prevented the development of a record sufficient to address its claim for relief. Also, post-verdict sales of the accused products with the accused software in this case have ended; hence an ongoing royalty rate will never apply to the products the Court would consider in determining that rate. Furthermore, Apple's overly broad request to cover products "no more than colorably different" will inevitably lead to satellite litigation about what constitutes a "colorably different" lock screen, spell correction method, or context menu. On all these points, Apple has not even attempted to justify the burden of protracted post-judgment litigation that it seeks to impose. Weighing the significant commitment in time and resources that would flow from granting Apple's motion and the prejudice it would cause against the many independent reasons why Apple will never obtain any further relief, equity requires that the Court deny Apple's motion.

## ARGUMENT

## I. Apple's Motion Should Be Dismissed for Waiver, as Untimely, and for a Lack of Jurisdiction.

### A. Apple Waived Its Right to Seek Ongoing Royalties.

Apple waived any right to seek ongoing royalties. Apple's Amended Complaint does not mention ongoing royalties and does not pray for that relief. (*See* Dkt. 261 at 12-13.) Apple failed to mention the specific relief of an ongoing royalty in the Joint Amended Pretrial Statement, which controls here. (Dkt. 1455-1 at 3-4.) Apple has not identified any expert testimony on an ongoing royalty, and indeed its damages expert did not mention an ongoing royalty is his report. Apple failed to mention an ongoing royalty in its Rule 50(a) JMOL (Dkt. 1804), or its Rule 50(b)

and 59(e) motions (Dkt. 1897-3), or its motion for a permanent injunction.  (Dkt. 1895.)  Apple recently prevailed under this rule of waiver in barring Samsung from pursuing its patent-eligibility defense in light of new law.   (Dkt. 1952; *see also* Dkt. 1947 at 2-4 (Apple's waiver argument).) *See, e.g.*, *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) ("Under the [law of the case] doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.").   Thus, because Apple presents no new law—or any other excuse for its delay in raising this issue—the rule of waiver bars Apple's motion.

### 1.  Apple's Omission of Ongoing Royalties from the Joint Pretrial Statement Is Dispositive.

Apple's failure to mention the specific relief of an ongoing royalty in the Joint Amended Pretrial Statement (Dkt. 1455-1 at 3-4) is sufficient to deny its motion for waiver.  As this Court recently held, "[t]he pretrial order 'controls the course of the action unless the court modifies it,' Fed. R. Civ. P. 16(d), and the Ninth Circuit has 'consistently held that issues not preserved in the pretrial order have been eliminated from the action.'"  (Dkt. 1952 (quoting *S. Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984)).)   Apple did not mention ongoing royalties in its lengthy and detailed list of specific relief.  (Dkt. 1455-1 at 3-4.)  That fact alone demonstrates that Apple has waived the relief it seeks and its motion should be denied.  *See, e.g.*, *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) ("EPE's listing of injunctive relief, damages, and attorneys' fees under the Lanham Act in the Joint Pre-Trial Order does not act to preserve its claim for an accounting of profits, and the issue therefore was waived."); *Ramos v. Davis & Geck, Inc.*, 968 F. Supp. 765, 771 (D.P.R. 1997) ("The failure to state the damages that the plaintiff is specifically seeking in the pretrial order waives that claim for relief."), *aff'd*, 167 F.3d 727 (1st Cir. 1999).

### 2.  Apple Also Waived Any Right to the Injunctive Relief It Seeks.

Furthermore, Apple waived a request for ongoing royalties by failing to raise the issue in its request for injunctive relief.  Apple's current motion seeks an alternative form of injunctive relief under 35 U.S.C. § 283, which reads:   "The several courts having jurisdiction of cases under

this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Apple does not argue to the contrary, stating only that it moves "under *Paice*." (Dkt. 1958 at i (citing *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007)).) In *Paice*, the Federal Circuit made it clear that the statutory authority for an ongoing royalty is 35 U.S.C. § 283. *Paice*, 504 F.3d at 1314. Moreover, Apple concedes that an ongoing royalty "is an equitable remedy" and that no jury trial is required. (Dkt. 1958 at 3.) This confirms that Apple is seeking alternative injunctive relief under Section 283, because in contrast Section 284 damages are subject to a jury trial under the Seventh Amendment.[1] *See Boston Scientific Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008).

In the Joint Pretrial Statement, Apple sought only an injunction against making, using, offering to sell, selling, or importing, and did not mention ongoing royalty. (Dkt. 1455-1 at 3-4.) An order for that injunction against making, using, offering to sell, selling, or importing is also the only "order" Apple identified as specific relief, omitting the order it now seeks. Apple did not mention any other form of post-judgment relief except post-judgment interest. And finally, Apple did not mention Section 283 as a basis for relief at all. (*Id.*) Accordingly, Apple has waived the alternative form of injunctive relief it now seeks for the first time.

### 3. Apple's Boilerplate Language Does Not Avoid Waiver.

Apple cannot rely on the boilerplate claim to "[a]ny other remedy" in the Joint Pretrial Statement (Dkt. 1455-1 at 3), because this Court requires specificity in the Joint Pretrial Statement. In its recent order finding waiver, the Court held that the disclosure of numerous theories of invalidity did not "implicitly" disclose a specific challenge to subject-matter eligibility. (Dkt. 1952 at 3-4 ("The Ninth Circuit requires greater specificity in identifying asserted legal theories prior to trial." (citing *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 995-96 (9th Cir. 2009)).) By the same rule, Apple cannot claim it "implicitly" reserved the right to an ongoing royalty. Indeed, Apple's boilerplate statement conspicuously omits Section 283 as a

---

[1] If the Court disagrees and finds that Apple is seeking any relief on grounds other than Section 283, Samsung objects to any such relief as a violation of its Seventh Amendment right to a trial by jury.

basis for relief. Moreover, Apple's highly detailed statements of injunctive relief against making, using, offering to sell, selling, or importing, as well as its similarly detailed statements identifying specific relief under Sections 284 and 285, further confirm that Apple's omission of an ongoing royalty under Section 283 was conspicuous. Finally, in light of Apple's long and consistent failure to disclose any request for an ongoing royalty—not in its Amended Complaint, not in any expert testimony, not in its post-trial motion, and not in its motion for a permanent injunction—Apple's boilerplate language cannot be used as an excuse to avoid waiver. Apple should be held to its statements on the specific relief it sought in this case.

**B.** **Apple's Motion Is an Untimely Second Post-trial Motion and Should Be Dismissed.**

Separate from the waiver issue, Apple's motion is untimely under the Court's scheduling order. (Dkt. 1398.) The Court's scheduling order permitted one post-trial motion and one permanent injunction motion by each side, and set firm deadlines and page limits. (*Id.* at 4 ("Regarding post-trial briefing, each side may file one motion for judgment as a matter of law and/or motion for new trial ("post-trial motion") … [e]ach prevailing side may file one motion for a permanent injunction.").) Apple never indicated to the Court that it would file a third motion, and Apple has identified no good cause to change or to be excused from that scheduling order. *See* Fed. R. Civ. P. 16(b)(4), 16(e). On June 13, 2014, Apple filed its post-trial motion seeking relief under Rule 59(e). (Dkt. 1987-3 at 2 (identifying Rule 59(e) as the means for amendment of the judgment to award supplemental damages).) On July 10, 2014, the Court held a hearing on that motion, and on September 8, 2014 issued an order resolving Apple's post-trial motion. (Dkt. 1962.) Apple's new request should have been included as part of its permanent injunction motion, and instead is now being brought as an additional motion to amend the judgment. Apple's motion is untimely and barred by the Court's scheduling order.

**1.** **Apple Was Required to Raise the Request for an Ongoing Royalty in Connection with Its Motion for Permanent Injunction.**

Even assuming that Apple had properly preserved a request for an ongoing royalty in the Joint Amended Pretrial Statement, it would have been required to raise the issue as alternative relief in its motion for permanent injunction. As discussed above, an ongoing royalty is a form of

injunctive relief under 35 U.S.C. § 283. That is why parties routinely request an ongoing royalty in the alternative to—and at the same time as—a request for a permanent injunction barring the sale of the infringing product. *See, e.g.*, *Bard Peripheral Vascular v. WL Gore & Assocs.*, 670 F.3d 1171, 1178 (Fed. Cir. 2012) ("[T]he court denied Bard's motion for a permanent injunction, but granted Bard's alternative motion for the imposition of an ongoing royalty."); *Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 336 (D. Del. 2010) ("Cordance filed a motion for permanent injunction or, in the alternative, imposition of an ongoing royalty.").

The Court's scheduling order authorized only one motion for a permanent injunction (Dkt. 1398), which Apple filed without mention of an ongoing royalty, and which the Court already heard and denied. Apple made a strategic choice not to raise ongoing royalty in its permanent injunction motion. Apple cannot now get a second chance to raise the issue because its injunction motion was denied, an outcome that was certainly foreseeable.

### 2. Apple's Motion Is Made Pursuant to Rule 59(e).

Courts in the Ninth Circuit look to the relief sought in order to decide whether a motion is made pursuant to Rule 59(e). *Munden v. Ultra-Alaska Assocs.*, 849 F.2d 383, 386 (9th Cir. 1988) ("In determining whether a post-judgment motion is one brought under Rule 59(e), nomenclature is not controlling. Rather, this court looks at the substance of the requested relief to see if it is relief which might have been granted under Fed. R. Civ. P. 59(e).") (internal quotation marks and citation omitted)). In *Munden*, the movant "did not state the rule under which it moved," but the Ninth Circuit held it to be "properly considered under Rule 59(e)." *Id.* at 387; *see also Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981) (same), *abrogated on other grounds*, *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414 (2012) .

Here, as in *Munden* and *Whittaker*, Apple's motion conspicuously fails to identify a rule under which it was brought before the Court. (Dkt. 1958.) Apple's Notice of Motion states only that it moves "under *Paice*." (Dkt. 1958 at i.) However, in *Paice*, the district court decided on

1  an ongoing royalty at the same time that it denied a request for a permanent injunction.   504 F.3d

2  at 1303.[2]  *Paice* does not provide a procedural basis for Apple's motion here.

3      The relief Apple seeks is plainly "to alter or amend the judgment."  Fed. R. Civ. P. 59(e).

4  At this point in the case, nothing remains but for the Court to enter judgment.   There is nothing

5  else to affect.   To confirm this, one need only look at Apple's post-trial motion, which explicitly

6  identified Rule 59(e) as the appropriate vehicle for seeking supplemental damages.[3]  (Dkt. 1987-3

7  at 2 (identifying Rule 59(e)).)   Indeed, if Apple is not seeking to alter or amend the judgment,

8  then its motion seeks nothing at all and is futile.   It is of no importance whether Apple's motion

9  could have been brought under some rule other than 59(e).   Ninth Circuit law deems Apple's

10  motion to made pursuant to Rule 59(e) "if it is relief which might have been granted" under that

11  rule.  *Munden*, 849 F.2d at 386.   Because Apple's motion seeks "relief which might have been

12  granted" under Rule 59(e), it is an untimely and unauthorized second post-trial motion and should

13  be denied.

14          **3.      Apple Fails to Cite Any Precedent for Its Motion.**

15      It is not surprising that Apple failed to identify the procedural basis for its motion—

16  Apple's motion is without precedent.   Apple seeks alternative injunctive relief in the form of an

17  ongoing royalty, but Apple cites no case where the patentee filed a motion for ongoing royalty

18  only after the denial of a permanent injunction, without having ever mentioned an ongoing royalty

19  as relief in the alternative in its motion for permanent injunction.   Lacking any precedent for its

20

21

22

23  [2]     While *Paice* characterized the district court's decision as "impos[ing] an ongoing royalty *sua sponte* upon the parties," 504 F.3d at 1315, there was no waiver issue in that case because the

24  defendant (Toyota) explicitly asked the court to allow ongoing sales and award a reasonable royalty as set by the jury.  *See Paice LLP v. Toyota Motors Corp.*, No. 2:04-cv-211, Dkt. 224 at 2

25  (E.D. Tex. July 13, 2006) (letter brief from Toyota stating that "this Court should deny Paice's motion [for permanent injunction] and, if the jury's infringement verdict in this case is upheld,

26  instead award a future running royalty based on the amount already determined by the jury") (attached as Ex. 1 to the Declaration of Victoria Maroulis ("Maroulis Decl.")).

27  [3]     The difference between supplemental damages and an ongoing royalty is that supplemental damages are unavailable after final judgment, whereas an ongoing royalty is available only after

28  final judgment.  *See DataTreasury Corp. v. Wells Fargo & Co.,* No. 2:06-cv-72, 2011 WL 8810604, at *9 (E.D. Tex. Aug. 2, 2011).

1  motion, Apple identifies no case that acknowledges a rule authorizing a motion in these

2  circumstances.[4]  Apple's motion is improper and should be dismissed.

3  **C.**  **Apple's Appeal of the Denial of a Permanent Injunction Divested the Court of Jurisdiction for the Overlapping Matters Involved in Both Apple's Motion and the Appeal.**

5  Separately, this Court lacks jurisdiction over matters necessarily at issue in Apple's

6  motion.  On August 29, 2014, when Apple filed its interlocutory appeal of this Court's order

7  denying a permanent injunction (Dkt. 1955), jurisdiction passed to the appellate court regarding

8  the matters involved in that appeal.  This Court has recognized that any notice of appeal against

9  the Court's denial of injunctive relief "confers jurisdiction on the court of appeals and divests the

10  district court of jurisdiction with respect to matters involved with the appeal."  (1846 case Dkt.

11  1032 at 2.)  *See also Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982); *Paige*

12  *v. State of Cal.*, 102 F.3d 1035, 1039 (9th Cir. 1996) (appellate court takes jurisdiction as to the

13  "matters inextricably bound up with the injunctive order from which the appeal is taken.").  This

14  Court has been divested of jurisdiction to consider these matters again, as Apple's motion for

15  alternative relief would require.

16  Almost every issue mentioned in the Court's 42-page order now on appeal (Dkt. 1593), is

17  also relevant to Apple's motion for an ongoing royalty.  Specifically, in deciding ongoing

18  royalties, courts consider the *Georgia-Pacific* factors for determining a reasonable royalty.  *See,*

19  *e.g.*, *I/P Engine, Inc. v. AOL Inc.*, No. 2:11-cv-512, 2014 WL 309245, at *3 (E.D. Va. Jan. 28,

---

[4]  The cases Apple relies on addressed ongoing royalties in very different contexts from Apple's motion, specifically where:  (1) the patentee did not seek a permanent injunction, *see Mondis Tech., Ltd. v. Chimei Innolux Corp.*, No. 2:11-cv-378-JRG, 2012 U.S. Dist. LEXIS 60004 (E.D. Tex. April 30, 2012), *I/P Engine, Inc. v. AOL Inc.*, No. 2:11-cv-512, 2014 WL 309245 (E.D. Va. Jan. 28, 2014), *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847 (E.D. Tex. 2009); (2) the patentee sought a permanent injunction with an ongoing royalty as alternative relief, *see Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 670 F.3d 1171, 1192 (Fed. Cir. 2012), *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365 (Fed. Cir. 2010), *Affinity Labs of Tex., LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891 (E.D. Tex. 2011); (3) the accused infringer requested an ongoing royalty as an alternative to a permanent injunction, *see Paice*, discussed *supra* at n. 2, *Hynix Semiconductor, Inc. v. Rambus Inc.*, No. 5:00-cv-20905-RMW, 2008 WL 5818917 (N.D. Cal. May 23, 2008); and (4) on remand after appeal, the district court dissolved its permanent injunction, which had been stayed, and because defendant conceded that the patentee was entitled to an award on post-verdict sales, ordered a portion of the money placed in escrow during the stay to be paid to patentee, *see Amado v. Microsoft Corp.*, No. 8:03-cv-242-DOC-AN, Dkt. 661, at 20, 23 (E.D. Tex. Mar. 14, 2007) (attached as Maroulis Decl. Ex. 2).

2014) (citing multi-factor test in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y.1970)); *Paice LLC v. Toyota Motor Corp.,* 609 F. Supp. 2d 620, 626 (E.D. Tex. 2009) (same). These factors include, *inter alia*: "royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty"; "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use"; "[t]he portion of the realizable profit that should be credited to the invention"; "[t]he opinion testimony of qualified experts"; and "[t]he amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement." *Georgia-Pacific*, 318 F. Supp. at 1120. Thus, in order for the Court to consider whether Apple is entitled to a royalty on ongoing sales, and what that amount should be, the Court would need to reopen such issues as whether Apple's licenses to competing companies are probative (Dkt. 1593 at 16-20 and 33-34), whether Apple has lost sales (*id.* at 20 and 32), the probative value of Samsung's and Apple's documents and employee testimony (*id.* at 26-27), and whether the jury awarded lost profits, or whether it awarded a lump sum royalty (*id.* at 28-31). This Court would also need to re-adjudicate Apple's alleged evidence of demand for the patented feature, and specifically the probative value of Dr. Hauser's survey in light of Samsung's numerous criticisms. (*Id.* at 22-25.)

Finally, the amount of money adequate to compensate Apple for any ongoing infringement is surely "a matter involved in the appeal" because on appeal Apple must necessarily argue that no amount is adequate.[5] Jurisdiction on all these matters has already passed to the Federal Circuit. Apple identifies no case in which, after jurisdiction over the denial of a permanent injunction had passed to the court of appeals, the district court nevertheless found jurisdiction to consider a separately filed motion for ongoing royalty. Apple's improper request to litigate overlapping matters simultaneously in both the district and appellate court should be denied.

---

[5] Because Apple's Motion relies on the simplistic argument that "[i]n the absence of a [permanent] injunction, a patentee is entitled to receive ongoing royalties" (Dkt. 1958 at 1), Apple has effectively conceded that its motion rests on "matters involved with the appeal," namely the showings required to justify a permanent injunction.

For all these reasons, the Court should dismiss Apple's motion without consideration of the merits.

**II.** **If the Court Does Not Dismiss Apple's Motion, It Should Stay Proceedings on It.**

    **A.** **A Stay Is Appropriate If There Is Any Doubt as to Jurisdiction.**

If the Court finds that the jurisdictional question is even close, the Court should avoid potentially wasteful proceedings by staying this case pending resolution of Apple's interlocutory appeal. *See Wheeling & Lake Erie Railway Co., v Brotherhood of Locomotive Eng'rs and Trainmen*, No 5:13-cv-2105, Dkt. 38 at 2 (N.D. Ohio Jan. 14, 2014) (where issues before the court are arguably also at issue in an interlocutory appeal, the court may utilize its inherent authority to stay the matter pending resolution of that appeal) (attached as Maroulis Decl. Ex. 3).

The general rule that an interlocutory appeal divests the district court of jurisdiction on matters involved with appeal was devised "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Claiborne*, 727 F. 2d 842, 850 (9th Cir. 1984). The purpose of this jurisdictional rule is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 956 (9th Cir. 1983). It serves to "promote judicial economy and avoid the confusion and inefficiency that might flow from putting the same issue before two courts at the same time." *Hughes v. Jamestown Square LLC (In re Hughes)*, 356 F. App'x 300, 301 (11th Cir. 2009) (quotations and citations omitted). "Jurisdiction is either all in one court or all in the other. This rule is necessary to prevent one court's stepping on the toes of the other, which would waste judicial time as well as forcing the parties to proceed in two courts in the same case at the same time." *Boyko v. Anderson*, 185 F.3d 672, 674 (7th Cir. 1999). Where related issues are pending in a court of appeals, a district court should not require "an evidentiary hearing or other time consuming procedure that would have the potential to whipsaw the parties between the trial and appellate courts." *Id.* at 675. Here, the broad overlap with issues now on appeal shows that proceeding on Apple's motion would likely cause confusion and

waste of time. The Court can avoid that hazard by staying action on Apple's motion until the appeal is resolved.

Moreover, this Court recently recognized that judicial economy requires that further discovery, briefing, and hearings on supplemental damages and prejudgment interest should await resolution of appeals. (Dkt. 1962 at 19, 25.) It is appropriate to delay these proceedings pending appellate review of issues already litigated to "avoid potentially unnecessary expenditures of time and money." (*Id.* at 18.) The same considerations apply here. For these reasons, the Court should exercise its discretion and stay this matter pending resolution of the interlocutory appeal.

**B.** **A Stay Is Also Appropriate Because Appeals Will Likely Impact the Issues Raised by Apple's Motion.**

As Apple acknowledges in its motion, ongoing royalties are not available if a permanent injunction is granted. (Dkt. 1958 at 1.) Thus, if Apple obtains relief on its pending appeal, this motion will be mooted. Furthermore, because the parties anticipate further issues of liability and damages will be appealed (including issues beyond those in Apple's interlocutory appeal), the Court has compelling reason to avoid the likely unnecessary and wasteful proceedings threatened by Apple's motion. As this Court has consistently recognized, the likelihood of appeals makes it especially "appropriate to delay orders for the submission of evidence of the number of post-verdict sales and hearings thereon pending the resolution of appeals." (Dkt. 1962 at 18.) Similarly, deciding the issue of ongoing royalties before resolution of all appeals is premature and a potential waste of judicial resources.

The risk of waste of resources threatened by proceeding on Apple's motion is vividly illustrated by the cases upon which it relies. First, Apple relies heavily on *I/P Engine, Inc. v. AOL Inc.*, Case No. 2:11-cv-512, 2014 WL 243157 (E.D. Va. Jan. 21, 2014), and *I/P Engine, Inc. v. AOL Inc.*, Case No. 2:11-cv-512, 2014 WL 309245 (E.D. Va. Jan. 28, 2014). (*See* Dkt. 1958 at 1, 3-4.) In that case, the court and the parties spent over five months litigating ongoing royalties, after which the Federal Circuit declared both patents-in-suit invalid as obvious. Every iota of the proceedings on ongoing royalties was a complete waste of time and resources.

In *I/P Engine*, the court entered a post-trial order on November 20, 2012 ruling that defendants had not shown the asserted claims to be obvious; the defendants appealed. *See I/P Engine, Inc. v. AOL Inc.*, --- F. App'x ----, 2014 WL 3973501, at *1 (Fed. Cir. Aug. 15, 2014). While the merits appeal was underway, the district court entertained plaintiff's motion for ongoing royalties in lieu of permanent injunction, and on August 14, 2013 it issued an order finding that an ongoing royalty was appropriate. *I/P Engine*, 2014 WL 243157, at *1. Then, the court ordered further discovery and briefing on whether defendants' modified product was or was not more than a "colorable variation" of the accused product, and considered proposals for an independent technical expert to assist the court in assessing the competing expert opinions. *Id.* After resolving the dispute as to whether Google's new system was a "colorable variation" on January 21, 2014, the court later issued another order addressing the *Georgia-Pacific* factors and stating its conclusions as to the proper amount of ongoing royalties. *I/P Engine,* 2014 WL 309245, at *5. All of these protracted proceedings were rendered pointless when, on August 15, 2014, the Federal Circuit issued its order reversing the liability verdict and holding both patents invalid as obvious. *I/P Engine,* 2014 WL 3973501, at * 1.

Second, Apple relies on another case where the same pattern, *Creative Internet Advertising Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847 (E.D. Tex. 2009). (*See* Dkt. 1958 at 3-4.) Six months of ongoing royalty proceedings were similarly rendered a waste when the Federal Circuit reversed the infringement verdict on appeal. *See Creative Internet Adver. Corp. v. Yahoo! Inc.*, 476 Fed. Appx. 724, 733 (Fed. Cir. 2011). On May 29, 2009, in lieu of a permanent injunction, plaintiff moved for ongoing royalties as part of its Motion for Entry of Judgment on the Verdict. Defendant opposed. On July 14, 2009, the court set an additional discovery and briefing schedule for determining an ongoing royalty that extended another ten weeks, and ordered the parties to negotiate an appropriate rate. *Creative Internet Adver. Corp. v. Yahoo! Inc.*, No. 6:07-cv-00354-JDL, Dkt. 272 (E.D. Tex. July 17, 2009) (attached as Maroulis Decl. Ex. 4). On September 30, 2009, the court held an evidentiary hearing on a reasonable ongoing royalty rate. *Creative Internet Adver.,* 674 F. Supp. 2d at 849. After resolving a dispute as to whether Yahoo's new messenger program was a "colorable variation," *id.* at 860, the Court addressed the *Georgia-*

*Pacific* factors and determined the ongoing royalty rate on December 9, 2009. *Id.* at 861. Then, just as in *I/P Engine*, those six months of court time and resources were rendered pointless after the Federal Circuit reversed on liability. Here, because the parties anticipate upcoming appeal of issues impacting both liability and damages, it would not be a wise use of resources to undertake the proceedings that would foreseeably flow from granting Apple's motion. The Court should exercise its discretion and stay Apple's motion.

**III.   If the Court Reaches the Merits of Apple's Request, It Should Be Denied.**

**A.   Because the Court Already Granted Apple's Request for Post-Verdict Damages, the Ongoing Royalty Apple Seeks Would Be Duplicative.**

Apple seeks an ongoing royalty for sales "on or after the date of [an] order." (Dkt. 1959 at 1.) An ongoing royalty award that commences before final judgment would overlap with Apple's supplemental damages claim and therefore constitute a double recovery. In its earlier Rule 59(e) motion, Apple requested "supplemental damages through judgment" (Dkt. 1987-3 at ii.) The Court granted that motion. (Dkt. 1962 at 17-22.) Double recovery for the same sales in the same case is forbidden. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:01-CV-0485, 2010 WL 815466, at *4 (M.D. Penn. Mar. 3, 2010), *aff'd per curiam*, 477 Fed. Appx. 740 (Fed. Cir. 2012) (unpublished). (*See also* Dkt. 1965 at 47-48 (noting that "*Arlington* involved a double damages award in *the same case*").)

**B.   Apple Is Not Entitled to Ongoing Royalties.**

Apple has not attempted to show why imposition of an ongoing royalty is appropriate here. It merely asserts, wrongly and without support, that it is entitled to receive ongoing royalties because the Court denied its request for permanent injunctive relief. That is not the law. Contrary to Apple's position, the Court's denial of Apple's request for a permanent injunction does not *entitle* Apple to an ongoing royalty. An award of an ongoing royalty is to be decided "in accordance with the principles of equity," 35 U.S.C. § 283, and controlling precedent makes clear that ongoing royalties are not to be awarded "as a matter of course whenever a permanent injunction is not imposed." *Paice*, 504 F.3d at 1314-15 ("Under *some circumstances*, awarding an ongoing royalty for patent infringement in lieu of an injunction *may be appropriate*.")

(emphasis added); *see also XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-cv-157-RGA, 2013 WL 6118447, at *14 (D. Del. Nov. 20, 2013) ("A court may decide that the award of an ongoing royalty is necessary to effectuate a remedy, but the provision of such relief does not follow as a matter of course any time permanent injunctive relief is denied. Like the decision to grant or deny injunctive relief, it is within the court's equitable discretion to determine whether an ongoing royalty need be imposed.") (citing *Paice*); *Cordance Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d at 344-46 (articulating same standard and declining to award ongoing royalty).

Here, equity weighs heavily against a grant of an ongoing royalty. To begin, Apple has hidden from Samsung and the Court the issue of an ongoing royalty for the entire course of this suit. From Apple's initial complaint, throughout fact and expert discovery, the trial, post-trial and permanent injunction phases, Apple provided no notice on this issue. When the Court set a scheduling order for post-trial filings, Apple remained silent about its intention to file an alternative motion for injunctive relief. Apple's long silence has prevented any chance of developing a record of the likely post-judgment circumstances that this Court would need to consider if it were to adjudicate Apple's request for an ongoing royalty. Instead, Apple seeks to prolong this litigation by asking for rounds of briefing to set ongoing royalties for three patents, two of which (the '172 and '721) Apple does not even claim have been used on a Samsung product launched since 2012. (*See* DX-508.) That Apple seeks the imposition of a royalty on two undisputedly unused patents makes clear that its goal here is not recompense for genuine injury, but rather to prejudice Samsung. Apple's motion is an invitation for perpetual litigation, over what products are "colorably different" and over design-around efforts. All this for at most one patented feature that Apple has failed to show has any impact on sales or its reputation.

On April 21, 2013, Apple tried unsuccessfully to add more Samsung products to this suit. (Dkt. 525.) On June 26, 2013, the Court denied Apple's request in light of "the likely undue prejudice to Samsung." (Dkt. 636 at 33.) Specifically, the Court explained the substantial burden of additional fact discovery about a new product, including production of source code and financial data as well as deposition preparation. (*Id*. at 31-32 (noting "the tax on the court's resources warrants pause before allowing another product into this case").) Moreover, the Court

noted Apple's repeated warnings "that excluding the Galaxy S4 would result in yet another case." (*Id.* at 33.) Yet over the 14 months since, Apple has declined to pursue action on additional products. Now having litigated this case without notice of the issue of ongoing royalties and the opportunity to develop evidence and testimony on unaccused products, Apple unfairly seeks to bring those products into this case through the back door. Equity counsels against rewarding Apple's litigation-by-ambush tactics.

## C. Apple's Request Would Inefficiently Waste Judicial Resources.

Apple's motion is already wasting this Court's resources, and if pursued further it would no doubt create even more inefficiencies.

### 1. There Is No Basis to Award Ongoing Royalties on the '172 and '721 Patents.

No Samsung product released since 2012 has even been accused of infringing the '172 or '721 patents. Apple's request for ongoing royalties on these patents makes clear that Apple's real goal on this motion is not compensation, but to sow fear, uncertainty and doubt. Samsung long ago designed around these patents and its recent products use those unaccused design arounds. None of this disputed. There is no reason to award a running royalty for future infringement on patents that long ago became irrelevant.

### 2. Because There Are No Ongoing Sales of the Products with Software Held to Infringe the '647 Patent, Any Ongoing Royalty Rate Will Never Apply to the Products Accused in the Case.

Indeed, post-verdict sales of the accused products in this case have already ended. The Galaxy Note II is no longer on sale. The Galaxy S III products remaining on sale already incorporate different code than the code relevant to Apple's claim for infringement of the '647 patent. In the absence of continued sales of the products with software held to infringe, this Court should not waste time and resources to establish an ongoing royalty based on the past facts of this case. In these circumstances, an ongoing royalty rate will never apply to the products the Court would consider in determining that rate. Equity and inefficiency are not served by such wasteful proceedings.

**3.    Granting Apple's Overly Broad Relief Would Perpetuate Satellite Litigation.**

Apple's motion seeks an unacceptably vague and broad injunction covering "products not more than colorably different" than those at issue in this suit.  (Dkt. 1959 at 2.)   Contrary to Apple's contention, that is not the law.  *See Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, 2013 WL 1136964 at *2 (E.D. Tex. Mar. 15, 2013) (denying request to include nonaccused products in the scope of ongoing royalties).   As the court explained, "Fractus essentially presents the Court with an elusive target.   Samsung will continue to release new smartphones which Fractus will invariably argue are not 'colorably different' from the adjudicated models.   To avoid continually revisiting this issue in this case, the Court denied Fractus' request to include the additional unadjudicated phones in the ongoing royalty analysis."[6]  *Id.*   Here, as in *Fractus*, an ongoing royalty that extends too broadly to unaccused products will inevitably lead to "continually revisiting" motion practice about what constitutes a "colorably different" lock screen, spell correction method, or context menu.   (*See* Dkt. 214 at 4:11-23, 8:10-21, 12:10-13:25.)   *See, e.g.*, *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, No. 6:09-cv-00203-LED-JDL, Dkt. 1171 at 18:3-19:6 (February 22, 2014) (attached as Maroulis Decl. Ex. 5).   In addition to post-judgment motion practice, there would necessarily be significant discovery, expert reports and depositions, and hearings with expert testimony concerning whether software never before adjudicated in this case falls outside the scope of "colorably different" software.   Apple has not even attempted to justify the prejudice of contracted post-judgment litigation that it seeks to impose with its overly broad request.

Certain proof of what will happen if the Court gives Apple any opportunity to bring unaccused products and features into this case by issuing an overly broad order—which it should not—is found in Apple's satellite litigation on the '647 patent against HTC.   On March 2, 2010, Apple fired one of the first volleys in its smartphone holy war, filing a complaint against HTC in the International Trade Commission, Investigation No. 337-TA-710.   *See* USITC Inv. No. 337-

---

[6]    The court noted that the plaintiff had identified "at least 25" unadjudicated products to be considered in the ongoing royalty analysis.  *Id.*   Here, Apple's request is more vague, as it does not identify what products it contends are within the scope of the relief it seeks.

TA-710 (U.S.Intern.Trade Com'n), 2010 WL 4786296. On December 19, 2011, the 710 Investigation concluded with a Commission decision finding that HTC infringed the same '647 patent at issue here. *See* USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n), 2011 WL 12486712 at 2-3. The Commission issued a limited exclusion order, effective April 19, 2012. (*Id.*) However, because the order was not limited to the phones and software accused in the 710 Investigation, that was only the beginning of Apple's campaign. On June 4, 2012, Apple initiated an enforcement proceeding, despite the fact that the original order was on appeal at the Federal Circuit. *See* USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n), 2012 WL 3030440. In the enforcement proceeding, Apple replaced its earlier allegation of infringement of the '647 patent by the Browser, HTC Messages, and Android Messaging applications in the HTC phones in the original action with an allegation against the Gmail and Calendar applications on HTC's newer phones. *See* USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n), USITC Order No. 124, 2012 WL 6860165 at 1-2. The ITC set a case schedule for discovery and trial, with a target date for completion of July 8, 2013. USITC Inv. No. 337-TA-710 (U.S.Intern.Trade Com'n), USITC Order No. 122, 2012 WL 2929433. Apple's '647 expert Dr. Mowry provided two additional expert reports in the enforcement action, resulting in more than 150 pages of additional substantive testimony.[7] It is plain from Apple's overly broad request for relief that it contemplates the same strategy of satellite ligation here.

Notably, Apple's proposed language for the scope of an ongoing royalty is far broader even than what it proposed for its permanent injunction. In the permanent injunction context, Apple sought to enjoin only "features" as accused at trial and "features" no more than colorably different from them. (Dkt. 1895-4.) It did not say "products" as it does here. (Dkt. 1959.) Given these facts, it is clear that Apple's motion is merely a tactic intended to perpetuate this litigation. Because the accused products are no longer being sold with the accused software, Apple will not recover any of the royalty it feigns to seek in this motion. Rather, the Court's work to establish such a royalty will simply open the door to further motion practice, discovery

---

[7] Dr. Mowry's Opening Report was produced in this case as APLNDC630-0000257381, and his Supplemental Report as APLNDC630-0000257586.

1  and expert disputes.   That kind of burdensome satellite litigation is the only result that Apple can

2  anticipate by this motion.   The Court should not permit Apple to drag out this litigation further,

3  and should deny Apple's motion.

### D. Apple Cannot Prove the Jury Verdict Represents a Past Running Royalty Rather than a Lump Sum Award that Compensates for All Sales.

As Samsung explained in detail in its oppositions to both Apple's motion for a permanent

injunction and Apple's motion for JMOL, the jury awarded a lump-sum royalty for all three

patents of $119,625,000.   (Dkt. 1906 at 25-26; Dkt. 1907-3 at 3-4; Dkt. 1907-5 ¶¶ 66-68

(Chevalier Decl.).)   A lump sum was consistent with Dr. Chevalier's unrebutted testimony that a

lump-sum royalty is appropriate in this case because the lump-sum structure is "very prevalent in

this industry."   (4/21 Tr. 2422:23-2423:9 (Chevalier); *see also* Dkt. 1907-5 ¶ 66 .)   Apple,

however, contended that the jury "may have awarded a lump sum, a running royalty, some of

Apple's lost profits, or a combination of these and/or other theories."   (Dkt. 1981 at 6 n.4.)   The

Court did not reach the issue in the permanent injunction context (Dkt. 1953 at 29), and in the

JMOL context concluded the jury award was ambiguous.   (Dkt. 1962 at 19 ("Because the jury

verdict does not expressly state whether it compensates Apple for Samsung's both past and future

use of the patented technology or only compensates Apple for past use, it is ambiguous on this

point.").)   Apple, having prevailed by arguing that there was no way to determine whether the

jury awarded a paid up lump sum, cannot now prove to the Court that the jury conclusively did

not.   The very "ambiguity" found by the Court contradicts Apple's unargued and unsupported

assumption that the jury's award does not fully compensate Apple for any post-judgment

infringement.   Granting Apple ongoing royalties would be inconsistent with Apple's

characterization of, and the Court's conclusions about, the jury award.   While the Court found

that the ambiguity in the verdict allowed for supplemental damages (Dkt. 1962 at 19-22), ongoing

royalties are different because they are an equitable remedy, and the ambiguity of the verdict—

combined with the other equitable considerations discussed above—would render ongoing

royalties unjust.

In conclusion, Apple is not automatically entitled to ongoing royalties and here the equities counsel against awarding them. Apple's motion wholly fails to articulate why the Court should exercise its discretion and award ongoing royalties here. It should not. Apple's failure to provide notice and an opportunity to develop the record on the relief it seeks weighs against it. The futility of determining on ongoing royalty based on software and products no longer on sale weighs against it. The threat of protracted satellite litigation weighs against it. Apple's motion should be denied.

## IV.    The Ongoing Royalty Rates Apple Seeks Are Excessive and Inappropriate.

Even if the Court determines that Apple is entitled to an ongoing royalty (it should not), Apple's suggestion that the rate could be based on the jury verdict is incorrect.[8]    As set forth above, the jury's award reflects an award of a lump sum, fully paid-up royalty; at worst, the award is ambiguous.[9]    At the permanent injunction phase, Apple contended that "the jury may have awarded a lump sum, a running royalty, some of Apple's lost profits, or a combination of these and/or other theories."  (Dkt. 1918 at 6, n.4.)  While courts sometimes start a post-trial royalty calculation analysis with a jury verdict where it is clear the jury determined a reasonable royalty, here Apple has already contended that it does not know what the jury did.  Nevertheless, Apple now conclusively asserts that the verdict resulted in "implied per-product amounts awarded by the jury" that can be used to calculate an ongoing royalty.  This is inconsistent with its earlier arguments and the declaration of Dr. Vellturo.  (Dkt. 1918, Dkt. 1919-4 (Vellturo Decl.).)  But even if the Court later finds that Apple has shown that the jury's award is conclusively not a paid-up lump sum, it provides no starting point for a per-unit royalty calculation.  In short, if there is even the possibility that the jury award includes lost profits, then the jury award cannot be used as a baseline for ongoing royalty.

---

[8]    Because Apple requested further briefing on the amount of any ongoing royalty, Samsung does not fully address these issues here.  However, as Apple included a discussion of what it contends are appropriate rates based on other cases, Samsung addresses that issue briefly here.

[9]    As this Court observed in its Order Denying Apple's Motion for Permanent Injunction, "it may be legally permissible to dissect the verdict under certain circumstances."  (Dkt. 1954 at 29:25.)

SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ONGOING ROYALTIES

It is clear that the royalties Apple suggests of $2.75, $2.30 and $1.41 are ludicrously inflated. Samsung is unaware of any patent, licensed for use in any smartphone, that even approaches the per-unit licensing rates Apple seeks on these patents. And Apple certainly has pointed to none. While Samsung was not permitted to offer any evidence of real-world licensing rates to the jury (Dkt. 1714 at 1353:12-19, 1355:23-24), the Court has every reason to consider them. If the Court were to award rates consistent with those sought by Apple, it would be declaring these patents to be among, if not *the*, most valuable of the 250,000 patents that are part of a modern smartphone. That cannot be reconciled with the facts. Apple has repeatedly failed to prove that these patents have any impact on sales, market share or reputation. (Dkt. 1954 at 13-18). *Apple, Inc. v. Samsung Elecs. Co.* ("*Apple II*"), 695 F.3d 1370, 1376 (Fed. Cir. 2012). ████████████████████████████████████████████████████ ████████████████████████████████████ the $6.46 total combined rate for just three patents that Apple contends it is entitled to here. The Court should not use Apple's inflated numbers in any ongoing royalty calculation. If the Court awards an ongoing royalty, it will need to gather and consider the underlying evidence to determine a fair rate.

## CONCLUSION

Apple's request for ongoing royalties should be denied.


DATED: September 22, 2014

QUINN EMANUEL URQUHART & SULLIVAN, LLP


*/s/ Victoria F. Maroulis*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Attorneys for SAMSUNG ELECTRONICS CO., I
SAMSUNG ELECTRONICS AMERICA, INC., a
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC