QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar No. 108542)
williamprice@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**SAMSUNG'S RESPONSE TO APPLE'S BRIEF REGARDING ONGOING ROYALTY RATES**<br><br>Date:     December 18, 2014<br>Time:     1:30 PM<br>Place:    Courtroom 8, 4th Floor<br>Judge:    Hon. Lucy H. Koh |

## I.     The Jury Did Not Award a Per Unit Royalty and Thus the Verdict Does Not Provide a Basis for Setting an Ongoing Royalty.

The verdict does not provide a basis for setting an ongoing royalty.   In seeking a permanent injunction, Apple relied on the argument that it was impossible to determine what the jury did in awarding damages.  (Dkt. 1918 at 6.)   Apple argued that "[t]he jury may have awarded a lump sum, a running royalty, some of Apple's lost profits, or a combination of these and/or other theories."  (*Id.* at 6, n.4.)   Here, in contrast, it is to Apple's advantage to argue the opposite, and Apple is quite confident that a per unit royalty "best explain[s] the jury's damages". (Dkt. 1985-3 at 4:17-18).   While Apple shifts positions, Samsung has consistently maintained that the verdict reflects a lump sum royalty.   (Dkt. 1986-3 at 18.)   As the jury was instructed, such an award covered "both past and future infringing sales."   (Dkt. 1847 at 50.)   As a result, Apple is not entitled to any ongoing royalty.

Further, as explained by Dr. Chevalier, Dr. Vellturo' analysis does not explain the jury's actual damages calculation.   The methodology he claims the jury applied does not generate the damages numbers the jury awarded and does not explain why the jury did not use a uniform per-unit royalty rate for any of the three patents.   (Chevalier Decl. ¶¶ 8-14.)   Moreover, Dr. Vellturo provides *no explanation at all* for why the jury did not change the total award after being informed they needed to calculate an amount for the '172 patent for the Galaxy SII (JX 32).   (*Id.* at ¶ 13.) Dr. Chevalier's analysis is more consistent with the facts.   The jury award is a lump sum.

Unless the jury awarded a per unit reasonable royalty—a result that Apple previously argued Samsung "cannot fairly say," Dkt. 1918 at 6—Apple has provided no basis for its ongoing royalty rates.   If, as Apple told the Court was possible, the jury award includes a lump sum or lost profits, it would be improper to use Apple's proposed rates as a basis for an ongoing royalty, as no adjustment has been made for any lump sum or lost profit portion of the verdict.[1]

---

[1]     Thus, Dr. Vellturo's rates are the maximum per unit royalty the jury could have awarded.

## II. Even If the Court Accepts Dr. Vellturo's Explanation of What the Jury Did, It Cannot Accept His Proposed Rates.

If the Court accepts Dr. Vellturo's explanation—which it should not—his proposed rates must be adjusted to reflect updated inputs into his calculations.  Dr. Vellturo argues that the jury applied percentages of his proposed royalties.  (Vellturo Decl. ¶¶ 16-17.)  However, he failed to update his royalty calculations to account for changed circumstances.  As Dr. Chevalier's declaration explains, at a minimum, three numerical inputs into the reasonable royalty rates Apple presented at trial need to be updated.  (Chevalier Decl. ¶¶ 46-48.)  Dr. Vellturo's failure to make these adjustments inflates his proposed royalty rates by 234 to 402 percent.  (*Id.* ¶ 47.)  First, Dr. Vellturo ignored the diminishing profitability of smartphones between 2011 and 2014.  (*Id* ¶ 35-36, 47.)  Second, he did not update his royalty analysis to reflect the corresponding input from Dr. Hauser's survey in light of the declining retail price of the Galaxy S III.  (*Id.*)  Third, he did not take into account the diminishing share of first-time buyers in the market in Fall 2014—a factor that he described as "key" in his analysis.  (*Id*. ¶¶ 28-34, 37-38, 47.)  Thus, even if one accepts that the jury applied a percentage of his proposed royalty numbers, the jury's alleged rates should be adjusted downward by 57 to 75 percent to account for changes from 2011 to 2014.  (*Id*. ¶ 47.)

Moreover, Dr. Vellturo's analysis is based on incorrect factual predicates about the accused products still in the market and the state of the software.  Contrary to Apple's assertions, Samsung has either modified or replaced the accused Browser and Messenger applications since the time of the jury verdict to further avoid infringement of claim 9 of the '647 patent.  Samsung is only selling a few versions of the Galaxy S III (Cho Decl. ¶ 3; Lee Decl. ¶ 3; Kerstetter Decl. ¶ 5); it no longer sells the Galaxy Note II or any other accused devices (Kerstetter Decl. ¶¶ 3-4).  For the remaining versions of the Galaxy S III, Samsung either modified or replaced the accused Browser and Messenger applications.  For Browser, Samsung either replaced the accused application with the non-accused Chrome Browser (Lee Decl. ¶¶ 3, 14) or the new "SBrowser" (*id*. ¶¶ 3-7, 15), or modified it into the "Stock Browser" application (*id*. ¶¶ 3, 8-13, 16-19).  As explained in the attached declarations, the Chrome Browser and SBrowser do not infringe claim 9 of the '647 patent, and the Stock Browser has been modified to further avoid infringement of that

1   claim (Jeffay Decl. ¶¶ 35-49; Lee Decl. ¶¶ 4-13).  For Messenger, Samsung modified the accused

2   application to further avoid infringement of claim 9 (Jeffay Decl. ¶¶ 50-52; Cho Decl. ¶¶ 4-5).

3        In sum, while purporting to account for a late 2014 hypothetical negotiation, Dr. Vellturo

4   improperly analyzes *Georgia Pacific* factors 5, 9, 10 and 11 (Chevalier Decl. ¶¶ 15-26) and fails to

5   account for the impact of factors 4, 6, 8, 12 and 13 (*id.* ¶¶ 31-45).  Thus, even if Apple's new

6   position on what the jury did is accepted and Dr. Vellturo's analysis is followed (and neither

7   should be, *see id.* at ¶¶ 5-7, 46, n.84) that does not support rates above $0.68 to $1.12 on the '647

8   patent, $0.37 to $0.60 on the '721 patent and $0.60 to $0.98 on the '172 patent.  (*Id.* ¶¶ 46-48.)

9   **III.**   ***Bosch* and *Warsaw* Confirm the Need to Dismiss Apple's Motion.**

10        *Bosch* and *Warsaw* make clear that **legal remedies under § 284** (i.e., damages, for

11   adjudicated products) are fundamentally distinct from **equitable remedies under § 283** (i.e.,

12   injunction or ongoing royalties for prospective infringement, in some circumstances including

13   unadjudicated products).  *See also Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315-16

14   (Fed. Cir. 2007) (ongoing royalties are not "damages" which invoke a right to jury trial under the

15   Seventh Amendment, as would legal remedies under § 284).  In fact, so distinct are these

16   remedies that the Federal Circuit treats them differently for both finality and jurisdiction purposes.

17        The finality requirement of 28 U.S.C. § 1291 usually prevents an appeal from proceeding

18   while a Rule 59(e) motion is pending.  Fed. R. App. P. 4(a)(4); *Osterneck v. Ernst & Whinney*,

19   489 U.S. 169, 173-74 (1989) (explaining how Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)

20   "implement the finality requirement of 28 U.S.C. § 1291").  *Bosch* approved of an exception to

21   finality under § 1292(c)(2) where damages under § 284 remained pending at the district court, and,

22   thus, does not apply to Apple's motion.  *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305,

23   1311-13 (Fed. Cir. 2013).  *Warsaw*, on the other hand, found that ongoing royalties under § 283

24   do not fall within the finality exception under § 1292(c)(2), and the Federal Circuit dismissed that

25   appeal for lack of jurisdiction.  Although the district court had decided the liability, damages, and

26   permanent injunction issues, it failed to decide the ongoing royalty issue prior to the parties'

27   appeals.  *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 515 Fed. App'x. 882, 882 (Fed. Cir. 2012).

28   In remanding the case at the **patentee's**, Warsaw's, request, the Federal Circuit **did not** retain

1   jurisdiction over the denial of permanent injunction or allow the prospective relief issues to remain

2   bifurcated—which, in view of Apple's appeal here, is what Apple would have this Court do.

3          Fully recognizing the importance of the distinction between relief under § 283 and under

4   § 284 for the purposes of finality, Apple concedes that "damages have already been decided under

5   § 284." (Dkt. 1985-3 at 5.)   But then it contends that "all that remains is determining *prospective*

6   *relief* under 35 U.S.C. § 283." (*Id.* (emph. added).)   This is inaccurate.   In view of Apple's

7   appeal, *no* claim for prospective relief remains pending in this Court.   Apple's only claim for

8   prospective relief was the permanent injunction recited in the Joint Amended Pretrial Statement,

9   which was denied by this Court. (Dkt. 1455-1.)   At no time prior to its appeal did Apple request

10  an ongoing royalty, and in view of its appeal, Apple's prospective relief claim is now fully vested

11  before the Federal Circuit.   Thus, there is no jurisdiction over it in this Court.

12         Recognizing the problem this creates, Apple recently reversed course regarding the clear

13  (and correct) distinction between relief under § 283 and under § 284 and argued that its request for

14  "all *damages*" in the pretrial order somehow preserved an ability to seek an ongoing royalty,

15  notwithstanding its injunction appeal. (Dkt. 2001 at 2.)   But even if injunction and ongoing

16  royalty could be decoupled for purposes of appeal (which they cannot), Apple's reference to

17  "damages" is a request for § 284 damages—not a claim for equitable relief under § 283.[2]   "An

18  ongoing royalty is not the same as an accounting for damages."   *Warsaw Orthopedic,* 515 Fed.

19  App'x at 882.   Indeed, Warsaw respected this distinction in its pretrial order, separately

20  identifying as issues to be decided "the amount of lost profit damages," "the amount of reasonable

21  royalty damages," whether infringement "should be enjoined," and "[w]hether, and at what

22  royalty, a compulsory license[3] should be imposed." (Maroulis Decl. Ex. 1 at 17-19, 27.)[4]

23  

---

24         [2]   Apple's request was for "all *damages adequate to compensate for Samsung's*
    *infringement* of Apple's asserted patents, and *in no event less than a reasonable royalty* for

25  Samsung's acts of infringement," (Dkt. 2001 at 2 (emph. added)), a nearly verbatim quote of 35
    U.S.C. § 284: "*damages adequate to compensate for the infringement*, but *in no event less than*

26  *a reasonable royalty* for the use made of the invention by the infringer." (emph. added.)
           [3]   The Federal Circuit has explained that an ongoing royalty is a form of compulsory license.

27  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1379 (Fed. Cir. 2013) (noting the
    "ongoing royalty" in *Paice* as an example of "a compulsory license"); *see also Hynix*

28  *Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 986 (N.D. Cal. 2009) (similar).

---

Having reversed course on the distinction between relief under § 283 and under § 284, Apple now claims that *Warsaw* is "precedent" for its motion, which it is not.  (Dkt. 2001 at 7-8 (referring to *Warsaw* by its district court caption, *Medtronic Sofamor Danek USA, Inc. v. Nuvasive Inc.*).)  First, Warsaw expressly sought ongoing royalties as alternative relief in its motion for a permanent injunction: "Should the Court deny Warsaw's Motion for a Permanent Injunction, Warsaw would seek the imposition of an ongoing royalty for sales of the infringing products." (Dkt. 2002-5 at 7 n.4.)  It is not true, as Apple represents, that Warsaw "only moved for that alternative relief after the court declined to enjoin future infringement" (Dkt. 2001 at 7.)  What Apple cites as "motion for ongoing royalty" (*id.* at 7-8) is not a motion at all—it is Defendant's opening brief in response the Court's order for further briefing.  (Dkt. 2002-8 at 1.)  Finally, although Warsaw had appealed the denial of a permanent injunction (Maroulis Ex. 2 at 1), it recognized that ongoing royalty and a permanent injunction are intertwined questions of equitable relief under § 283 and, if properly raised and preserved (which here ongoing royalty was not), they must be considered together, both at the district court and on appeal.  (Maroulis Ex. 3 at 2 ("[d]etermination of ongoing royalties involves equitable considerations that overlap factually with other issues that the parties are appealing, such as the district court's denial of a permanent injunction"); *see also id.* at 15 (noting "if this Court reverses the district court's denial of an injunction, that would moot at least a portion of Warsaw's request for ongoing royalties").) Warsaw never attempted to bifurcate overlapping issues of prospective relief, as Apple does here.

Simply stated, Apple cannot have it both ways.  "Jurisdiction is either all in one court or all in the other."  *Boyko v. Anderson*, 185 F.3d 672, 674 (7th Cir. 1999).  Having chosen not to raise ongoing royalty in this Court and then appeal its only claim for prospective relief, Apple waived ongoing royalty and divested this Court of jurisdiction over the issue.  Apple's motion should be dismissed.

---

[4]    *See also* Maroulis Decl. Ex. 4 at 75 (pretrial order in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, No. CV-03-597, Dkt. 525-1 (D. Ariz. Jul. 27, 2007), stating "[i]f Plaintiffs are not entitled to a permanent injunction, the royalty to be applied to infringing products post-judgment.")  *Bard* and *Warsaw* are 9th Circuit cases where the same standard for pretrial disclosure applies as here, unlike the Texas and Virginia cases Apple relies on to justify its failure to raise the ongoing royalty issue in its pretrial disclosure (Dkt. 2001 at 2-3).

SAMSUNG'S RESPONSE TO APPLE'S BRIEF RE ONGOING ROYALTY RATES

DATED: October 6, 2014

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/ Victoria F. Maroulis
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
William C. Price
Attorneys for SAMSUNG ELECTRONICS CO., I
SAMSUNG ELECTRONICS AMERICA, INC., a
SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC

SAMSUNG'S RESPONSE TO APPLE'S BRIEF RE ONGOING ROYALTY RATES