1  PERKINS COIE LLP
   Christopher L. Kelley, CSB No. 166608
2  CKelley@perkinscoie.com
   3150 Porter Drive
3  Palo Alto, CA  94304
   Telephone:  650.838.4300
4  Facsimile:   650.838.4350

5  Attorneys for Non-Party
   INTEL CORPORATION
6

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12 | APPLE INC.,                                    | Case No. 12-cv-00630-LHK (PSG)
13 |                  Plaintiff,                    | **NON-PARTY INTEL'S DECLARATION IN SUPPORT OF SAMSUNG'S MOTION FOR RECONSIDERATION OF PORTIONS OF ORDER RE: MOTIONS TO SEAL (DKT #1981)**
14 |           v.                                   |
15 | SAMSUNG ELECTRONICS CO., LTD.,                  |
   | a Korean corporation; SAMSUNG                   |
16 | ELECTRONICS AMERICA, INC., a New                |
   | York corporation; and SAMSUNG                   |
17 | TELECOMMUNICATIONS AMERICA,                     |
   | LLC, a Delaware limited liability company,      |
18 |                                                 |
   |                  Defendants.                    |
19

1    Samsung Electronics Co., Ltd. and other Samsung entities (collectively "Samsung") have
2    requested reconsideration of portions of the Court's Order Re: Motions to Seal (Dkt #1981) as to
3    sealing of specific documents including Exhibit 1 (Dkt # 963-6) to the Declaration of Samuel
4    Drezdzon ("Drezdzon Exhibit 1").  Intel Corporation ("Intel") submits this declaration in support
5    of Samsung's request for reconsideration of the Court's ordering Drezdzon Exhibit 1, which
6    includes Intel confidential engineering details.

7    Drezdzon Exhibit 1 is one page of deposition testimony from Intel engineer Karthick
8    Kandasamy.  In the excerpt Mr. Kandasamy describes aspects of the operation of the UGDCI
9    module and the COM RAM and how these are used to process elements of UMTS data.  The
10   UGDCI module and COM RAM are Intel specific architectural features and their use or design is
11   neither described in the public UMTS wireless standards nor dictated by those standards.  The use
12   of these modules, and the manner in which they operate, is specific to Intel's implementation of
13   UMTS.

14   As detailed in the accompanying declaration from Dr. Josef Hausner, Division Vice
15   President of Intel Mobile Communications GmbH which designs the Intel products used by
16   Apple, the Intel software and hardware described in Mr. Kandasamy's deposition (Dkt # 963-6) is
17   kept confidential (Hausner Decl. at ¶¶ 3-5, 8), and is a proprietary design of tremendous value to
18   Intel. (Hausner Decl. at ¶¶ 6-7.)  Intel has good cause to request that the details of this technical
19   information be kept under seal because Mr. Kandasamy's deposition testimony reveals
20   confidential details of Intel's product implementation.  Indeed, for this very reason the Court's
21   Order Re: Motions to Seal (Dkt # 1981) provides that other exhibits containing portions of Mr.
22   Kandasamy's deposition testimony describing the operation of the UGDCI module should be
23   sealed.  *See* disposition regarding Exhibit 2 to Declaration of Peter Kolovos (Dkt # 1017-6).

24   There is no compelling interest in favor of disclosure.  As explained in the "Joint Notice
25   Regarding Order Re: Various Administrative Motions to Seal (ECF 1981)" filed by the parties on
26   October 6 (Dkt # 2012), the Drezdzon Exhibit # 1 document was actually withdrawn by the
27   parties before the Court's consideration of the sealing motion.  Since the document had no

significance to any decision reached by the Court, public understanding of the bases for judicial decisions is not furthered by public disclosure of the technical engineering information contained in Drezdzon Exhibit # 1.

Under Fed. R. Civ. P. 26(c), evidence filed in support of non-dispositive motions should be sealed when there is "good cause." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Courts in this circuit have often found that a party's interest in securing non-public engineering designs and other proprietary trade secrets constitutes not only "good cause" for sealing court records, *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, Case No. 11–CV–05973 PSG, 2013 WL 1366046, at 1 (N.D. Cal. Apr. 3, 2013), but also "compelling reason" when that heightened standard has been applied in the context of evidence attached to dispositive motions. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (compelling reason may be found in avoiding release of trade secrets); *Network Appliance, Inc. v. Sun Microsys., Inc.,* Case No. C-07-06053 EDL, 2010 WL 841274 (N.D. Cal. Mar. 10, 2010) (compelling reason to seal documents containing source code [at *5], detailed descriptions of source code [*5] and other "proprietary technical information" [at *2]); *Dish Network, LLC v. Sonicview USA, Inc.*, Case No. 09CV1553-L(NLS), 2009 WL 2579052, at *1 (S.D. Cal. Aug. 20, 2009); *Upek, Inc. v. Authentec, Inc.*, Case No. C 10-00424 JF, 2010 WL 1980189, at *4 (N.D. Cal. May 17, 2010).

Drezdon Exhibit 1 (Dkt # 963-6) identifies how UMTS wireless functions are implemented in Intel's modem software and hardware. Intel derives significant commercial value from its hardware and software design. (Hausner Decl. at ¶¶ 6-7). Part of the commercial advantage conferred by Intel's modem devices results from the manner in which the hardware and software in these devices is designed and organized. (Hausner Decl. at ¶ 7). Intel can reasonably anticipate that disclosure of the discussion of its hardware and software designs describe in Exhibit #1 to Samuel Drezdzon's Declaration (Dkt # 963-6) could cause Intel significant commercial harm. Intel's interest in avoiding that harm is more than sufficient to meet the good cause standard for sealing this information.

-2-

NON-PARTY INTEL'S DECLARATION IN SUPPORT OF SAMSUNG'S
MOTION FOR RECONSIDERATION OF PORTIONS OF ORDER RE:
MOTIONS TO SEAL (DKT #1981)
Case No.12-cv-00630-LHK

1  Since as discussed above, Drezdzon Exhibit #1 was withdrawn before the Court's sealing order, Intel's request is narrowly tailored.  There is no compelling interest in public disclosure of the document.

Intel respectfully requests that the Court modify the portion of its Order Re: Motions to Seal (Dkt # 1981) that ordered Drezdon Exhibit 1 (Dkt # 963-6) to be unsealed.  Good case for this request has been demonstrated in the evidence from Dr. Hausner that Intel will be significantly harmed if it cannot maintain its trade secrets and if its competitors have free access to the fruits of Intel's R&D investment.

Dated:  October 9, 2014                    Respectfully submitted,

By:   */s/ Christopher L. Kelley*
         Christopher L. Kelley

*Counsel for Non-Party Intel Corporation*

**ATTACHMENT TO INTEL'S DECLARATION IN SUPPORT OF MOTION FOR RECONSIDERATION OF PORTIONS OF ORDER RE: MOTIONS TO SEAL (DKT #1981)**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 12-cv-00630-LHK (PSG) <br><br> **DECLARATION OF JOSEF HAUSNER, Prof. Dr.-Ing.** |

I, Josef Hausner, declare as follows:

1.  I am employed by Intel Mobile Communications GmbH ("IMC") at Neubiberg, Germany. IMC is a wholly owned subsidiary of Intel, Corp. ("Intel"). My title is Division Vice President, and I am responsible for wireless architecture in IMC's Wireless System Engineering group. I received an Dipl.-Ing. (Diploma of Engineering) degree from Technical University of Munich, in 1986 and a Dr.-Ing. (Doctor of Engineering) degree from Technical University of Munich, in 1991. I began working at the Wireless Solutions business unit at Infineon Technologies AG ("Infineon") in 2006. In 2011, Intel acquired Infineon Technologies AG Wireless Solutions

(WLS) business, which became known as IMC.

2. I am informed that in the above-named lawsuit, Samsung or Apple may wish to use Intel confidential information, including source code and documents. In particular, I am informed that Samsung and Apple may refer to exhibits that include Intel firmware and protocol stack software in the presentation of their case. Intel's firmware is a type of software that is designed to control the operation of Intel's modem hardware and to implement various protocol functions in the modem. Intel does not typically provide the source code for its firmware to customers but instead provides it only in binary executable form. Intel maintains its firmware source-code on internal servers and implements network access security measures to prevent unauthorized access to this code.

3. Intel does not disclose the design of its firmware to its customers or the public. While Intel provides some technical documentation to its customers, these documents are disclosed only after the customer has signed a non-disclosure agreement (NDA). In addition, the type of documentation that Intel provides to its customers discloses only enough information to configure and use the Intel products. It does not detail the firmware or circuitry implementation.

4. Intel also takes appropriate precautions when it deliveries firmware to its customers. Intel only delivers precompiled firmware binaries and header files to most of its customers. The precompiled firmware binaries are embedded into the modem software image before they are delivered as a release to the customers. Most of Intel's customers cannot modify or recreate the firmware binaries themselves. Intel employs network security measures to prevent unauthorized access to the computer systems where the source code is stored. When Intel needs to share portions of its firmware source code with a customer, Intel provides the source code only after the customer signs an NDA protecting the confidentiality of the source code.

5. Intel's protocol stack software implements modem functions that interact with the firmware and hardware and allow the modem to implement the many protocols required to operate successfully on modern 3G and 4G wireless networks. Intel maintains the protocol stack software on secure servers and implements network access security measures to prevent unauthorized access. Before IMC makes any protocol stack software available to customers it

-2-

requires those customers to enter a license agreement that requires them to secure the code and take measures designed to prevent public release of uncompiled versions of the protocol stack software. Customers are allowed to use Intel's protocol stack software only with Intel's modem hardware products.

6. IMC's firmware and protocol stack software is extremely valuable to Intel because it represents a significant investment and contains numerous trade secrets that provide a competitive advantage to Intel. Purchasers of modem integrated circuits 3G and 4G for mobile devices expect the manufacturer to provide firmware and protocol stack software with these integrated circuits. Intel would be seriously harmed if potential competitors could shortcut their product development efforts by basing their work on Intel's source code designs.

7. Intel's firmware and protocol stack software also provides it with a competitive advantage. The 3GPP standards, which are publicly available, generally describe how mobile devices behave when interoperating with a wireless network. But the standards do not always specify how that behavior must be implemented; so each manufacturer generally creates a unique implementation using its trade secrets to optimize certain performance aspects. For example, a firmware or software implementation could optimize speed over power consumption, or vice-versa. Given the numerous trade secrets embedded in IMC's firmware and protocol stack software, public disclosure of IMC's design would permit competitors to copy it, along with the key features that give Intel a competitive advantage.

8. Intel does not disclose the design of its firmware or protocol stack software to the public. While Intel provides some technical documentation to its customers, these documents are disclosed only after the customer has signed a non-disclosure agreement (NDA). In addition, the type of documentation that Intel provides to its customers discloses only enough information to configure and use the Intel products. It does not detail the firmware or circuitry implementation.

//
//
//
//

I have personal knowledge of the facts set forth in this declaration and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Neubiberg, Germany on May 5, 2013.

_____
Josef Hausner