# EXHIBIT 56

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　Defendants. | CASE No. 12-cv-00630-LHK |

**EXPERT REPORT OF JUDITH A. CHEVALIER, PH.D.**

**SEPTEMBER 13, 2013**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

178.    Not only does Dr. Vellturo's overstatement of the benefit of the patents-at-issue cause him to proffer unsound qualitative evidence of demand for the patented elements, but it also wrongly leads him to the conclusion that Samsung would not have been able to offer any alternative product designs which would have resulted in an acceptable product for certain patents-in-suit.  In consultation with Apple's technical experts, Dr. Vellturo lists various challenges associated with Samsung's identified non-infringing alternatives to each of the asserted patents.[469]  As part of this, Dr. Vellturo implicitly ignores the marketplace success of the Samsung products which are not accused of infringement.

179.    Samsung's ability to retain its customers with an alternatively designed product which does not infringe the patents-at-issue must be considered in any analysis.  Here, the

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

---

[469] *See* Vellturo Report, at Exhibit 11.

availability of many acceptable options renders the relative importance of the patents-at-issue to be limited. Coupled with the observation that many of the functionalities-at-issue are minor in nature (compared to both the quantity and relative importance of other features) and in consideration of the many elements that drive demand of the products more generally, the patents, here, are unlikely to drive any measurable demand for the accused Samsung products.

180. I understand that Samsung has indicated that several non-infringing alternatives to the asserted patents exist.[470] Some of these have been implemented by Samsung in current successful phones; others could have been incorporated if necessary. I understand in many cases that it would have taken roughly a month for Samsung and Google to effectuate a change from the accused to a non-accused functionality.[471] Dr. Vellturo instead indicates a range of up to four or five months for certain patents and longer than thirty-six months for others (as he assumes that they could not be designed around).[472] I describe some of these options below based on my understanding of the opinions of Samsung's technical experts.

---

[470] *See e.g.*, Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 29.
[471] *See, e.g.*, Lockheimer Deposition, at Exhibit 4. Design-around alternatives to the '647 patent are estimated to take between 8 and 80 hours; alternatives to the '959 patent between 8 and 216 hours; alternatives to the '414 are estimated to take between 10 and 80 hours; alternatives for the '760 patent are estimated to take between 2 and 40 hours. These estimates are generally consistent with the opinions of Samsung's technical experts, who indicate that times to design and implement alternatives to the accused functionality range from a matter of hours to up to seven weeks. *See* Rebuttal Expert Report of Dr. Kevin Jeffay Concerning Noninfringement of U.S. Patent No. 5,946,647 at ¶¶ 502, 515, 519, 523, 528 (estimating that various alternatives could be implemented in a matter of 8 to 80 person hours, depending upon the alternative); Rebuttal Expert Report of Martin Rinard, Ph.D. Regarding Noninfringement of Claims 24 and 25 of U.S. Patent No. 6,847,959 at ¶¶ 312, 313, 318, 319, 330, 331, 341 (8-200 hours); Expert report of Jeffrey Chase, Ph.D. Regarding Noninfringement of the Asserted Claims of U.S. Patent No. 7,761,414 at ¶¶ 186, 196, 199, 204 (10 hours to one month); Rebuttal Expert Report of Saul Greenberg, Ph.D., Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721 at ¶ 36 (240-280 hours); Rebuttal Expert Report of Daniel Wigdor Concerning Non-Infringement of U.S. Patent No. 8,074,172 at ¶¶ 145-146 (no more than 26-120 hours). An additional period of approximately one month would be required to allow for compiling code, testing, and receiving carrier approval for any proposed alternative, resulting in a total range of one to three months. *See* Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories, July 15, 2013, at 197-198.
[472] *See, e.g.*, Vellturo Report, Exhibit 26.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

1. The '647 Patent

181. One alternative Samsung has proposed to the '647 patent is to give the user only one option for each type of detected structure through the "short tap" functionality, and remove the "long tap" functionality from the phones in the messenger and browser applications.[473] This, however, would somewhat limit the functionality of the device, as fewer options would be available to the device user. Dr. Vellturo comments that "this limitation on functionality would be frustrating to users and would detract from the user experience."[474] I understand, however, that in addition to the "short tap" functionality, Apple does not accuse providing a menu with options such as "copy" and "save." Accordingly, any limitation on functionality would be minimal.[475]

182. I understand that one of Samsung's preferred design-arounds would be for the system to provide an identical menu of options for a piece of text after a user taps on the text that she has determined is of interest, without the system detecting what type of information it is (if at all) until after the user completed their interaction with the device.[476] This would provide all of the same functionality as the accused feature and would be visually indistinguishable from the current mode of operation. I understand that this option would have been available at the point of first infringement, would have required minimal programming efforts, and would provide users with a similar functionally.[477]

---

[473] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 29, at 111-113. Apple's technical expert Dr. Mowry has previously opined that multiple actions are necessary to practice this patent, and that is apparently still his opinion. Mowry Report, at ¶ 273, at 108. But he acknowledges that the Motorola Court's construction only requires a single action. Mowry Report, at ¶ 273, at 108.
[474] Vellturo Report, at Exhibit 11.
[475] Jeffay Report at ¶¶ 115, 117.
[476] Jeffay Report at ¶¶ 496-508; Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories at 154.
[477] Jeffay Report at ¶¶ 497,502. *See also*, Lockheimer Deposition, at Exhibit 4.

112

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

183. I further understand that the '647 patent does not cover all kinds of detection and linking. Rather, the detection and linking must be performed by an "analyzer server"—a system that uses something other than an analyzer server to detect and link data would not fall within the scope of the claims.[478] Similarly, the '647 patent does not merely cover allowing a user to perform an action on a structure—the action must be "linked." Systems that do not "link" actions to structures, but still allow the user to perform a task on detected data do not fall within the scope of the claims.[479] I understand that Samsung has other design alternatives related to the claimed elements such as the "analyzer server" or "user interface" elements of the claimed invention that Samsung also claims do not infringe the '647 patent.[480]

### 2. The '959 Patent

184. I understand that Samsung asserts that several non-infringing alternatives to the '959 patent exist which would have been available at the point of first infringement, would have required minimal programming efforts, and would have provided users with a similar functionality.[481] In particular, Samsung could have replaced the search functionality in the Google Search Application on its accused devices with the web-search only functionality that has been found on certain versions of the Galaxy S III.[482] I understand that Samsung could have also implemented a search application with separate options for local search and for Internet

---

[478] Jeffay Report at ¶¶ 47-79, 108-119.
[479] Jeffay Report at ¶¶ 47-79, 108-119.
[480] Jeffay Report at ¶¶ 484-539; *See also*, Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 29, at 112.
[481] Rinard Report at ¶¶ 294-341.
[482] Although Dr. Vellturo claims that there was a torrent of negativity associated with this alteration, some of the documents he relies on suggest otherwise. Vellturo Report, at 74-5. David Beren, "Did Local (Universal) Search Get Restored In Galaxy S III Jelly Bean Update?," TmoNews, Nov. 15, 2012. The author begins by stating, "In what appears to be a little known development ..." highlighting the lack of coverage or awareness of the change in the feature.

search.[483]  Dr. Vellturo identifies one potential drawback with this design, stating "This alternative would require a user to run multiple searches if she wanted to search both local and remote data sources."[484]

185.    However, this is not a drawback of the design called "Dual-Mode Universal Search" suggested by Samsung's technical expert.[485]  I understand that this design uses a single interface to find information from different sources of information, for example, data stored on a user's smartphone as well as information found on the Internet.  When the user types into the search box, the search interface immediately provides search suggestions from the Internet.  For example, when the user types "George" in a single search box, the feature provides suggested searches that include "George," such as search suggestions for George Clooney, George RR Martin, George Lucas, and George Washington.  This is efficient, as I understand that users of the Google Search Application almost exclusively perform a Google search when using the application—roughly 98 percent of the time.[486]  In fact, this design would actually improve the presentation of most search results, leading to a less cluttered display containing only the information the user was seeking.[487]

186.    If the user were looking for local results, with this design the answer would be one button press away.  The bottom of the screen includes a button which reads "SEARCH

---

[483] Samsung's Further Supplemental Reponses to Apple's Second and Third Sets of Interrogatories, First Supplemental response to Interrogatory No. 24, at 114-117.
[484] Vellturo Report, at Exhibit 11.
[485] Rinard Report at ¶¶ 320-324.
[486] See GOOG-NDCAL630-00065845-69.  The data contained in this email provides a breakdown of what kind of items a user selects when searching using version 2.4+ of the Google Search application on Jelly Bean (4.1+) phones.  It shows that Web Results and "Nav" Suggestions were selected 611,971,606 times, while "Phonetop" Suggestions were selected 14,667,788 times.
[487] Expansive results from a mobile device search are typically not ideal.  One mobile marketing company explains, "A user's behavior when searching on a mobile is different from that of a typical desktop user. Mobile users are on the move, have smaller display screens and keyboards, use short, sketchy search phrases and are not interested in too much information." http://www.digitalresultsmarketing.com/mobile-marketing/mobile-search-engine-marketing-sem/ (viewed 9/12/2013).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

PHONE." When the user then clicks on "SEARCH PHONE", the search interface runs a second search against only sources on the device, displaying entries from the user's contacts or from the user's music files.[488] In this way, the user could quickly and easily gain access to a local search without retyping any query, and only then be exposed to the desired local results. I understand that this design implementation is acknowledged by Apple not to infringe.[489]

### 3.     The '414 Patent

187.    Apple's damages experts appear to assert that the '414 patent covers all systems that "background sync," *i.e.*, where synchronization takes place while the user interface is active.[490] This ignores systems that can "background sync" but would not infringe, by using a different programming architecture. I understand that Samsung asserts that several non-infringing alternatives to the '414 patent exist.

188.    Among those, Samsung could have implemented an alternative software program that would provide for identical synchronization from a user's perspective. This is the "Disabling Editing of Local Database through User Interface" option described in Dr. Chase's Expert Report.[491] Apple concedes this is non-infringing.[492] I understand that this alternative is completely "under the hood," with no visible change in functionality to the user. My understanding is that this change could be implemented in Gmail in a matter of hours, and implemented in Mail, Calendar and Contacts in one month or less.[493]

---

[488] Rinard Report at ¶ 320.
[489] I understand that Apple has conceded that an application that searches web results in one screen and local results in another does not infringe. (*See* Apple's July 15, 2013 Interrogatory Responses at 150: arguing Sherlock does not anticipate claim 24 because "the references cited by Samsung describe Sherlock as providing one window for searching the internet and another window for find file, *where there is never a single input provided to both*.")
[490] Vellturo Report, at 28.
[491] Chase Report at ¶¶192-197.
[492] *See* Snoeren Report, Fourth Alleged Alternative presented in ¶¶ 495-497.
[493] Chase Report at ¶ 196.

189. I also understand that Samsung would have had other options to design-around the '414 patent. These include approaches that would not be as desirable as the "Disabling Editing of Local Database through User Interface" option, but still would offer acceptable (albeit potentially slightly inferior) performance. For example, with the "Blocking UI on Sync" method, the user would encounter a freeze for the entire duration of the sync operation, which often executes in less than one second.[494] Likewise, with the "Perform Sync Operation on UI Thread," a sync operation would be performed on the UI thread once, causing a corresponding freeze. Because this operation would only be performed once, the freeze would not occur for subsequent synchronization operations.[495] A third option would be an "Offline Sync" alternative, which would result in no noticeable lags, as the syncing would occur when the user was not using the application (as distinct from the entire device being offline).[496]

190. I understand that these options would have been available at the point of first infringement, would have required minimal programming efforts, and would provide users with a similar functionality.[497]

### 4. The '760 Patent

191. I understand that Samsung has a number of design-arounds to the '760 patent.[498] The Missed Call Screen Management feature allows the user to return a missed call directly from a list of missed calls or access additional means of responding to the caller. Each item on the missed call list has two distinct interactive areas. If the user gestures on one area, such as the picture of the missed caller, John Doe, then John Doe is called back. If the user gestures on the

---

[494] Chase Report, at ¶ 202.
[495] Chase Report, at ¶¶ 203-208.
[496] Chase Report, at ¶¶ 184-191.
[497] Chase Report, at ¶¶ 184-208.
[498] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 120-4.

other area, such as John Doe's name or phone number, then a new screen appears that completely obscures the list of missed calls. The new screen displays information that allows the user to contact the caller in at least two ways, for example by returning the telephone call to the caller or by texting him.

192.   One design-around would be to provide the same choices on a call log item that does not have distinct interactive areas, but that instead responds differently to different gestures (*e.g.*, tap versus a swipe such that a swipe would immediately return a telephone call and a tap would take the user to a new screen displaying additional means of contacting the caller). Using two different gestures in the exact same portion of the call log for two different results has been implemented in the releases of the Galaxy S III and Galaxy Note II that have not been accused by Apple.[499]

193.   Another alternative Samsung has proposed to the '760 patent is to provide a partial screen with additional information upon the selection of the portion of the call log displaying the name and number of the caller.[500] "Touching the other area" to cause a pop-up window (smaller than full screen) containing contact information to open (versus taking the user to another screen) has been acknowledged by Apple's technical experts to not infringe the patent.[501]

---

[499] *See* Cockburn Report, at 156; *see also* Samsung's Further Supplemental Responses to Apple's First, Third and Tenth Sets of Interrogatories at 132-133 and 177.
[500] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 120-124. Other non-infringing alternatives to the '760 patent include permitting different responses through different interactions with the call display such as tap, tap and hold, or swipe for different responses.
[501] See Cockburn Report, at ¶ 573. "To the extent the partial screen refers to a screen that does not completely obscure the call log list, I agree with Samsung that this alternative does not meet the limitations of the asserted claim of the '760 Patent in light of the Court's construction of the limitation 'completely substituting display of the list of interactive items with display of contact information" to mean "displaying at least two contact objects in place of the display of the list of interactive items.'"

194. Dr. Vellturo comments that "the overlapping displays would be more cognitively demanding or confusing to users…[or] result in the screens being cramped or visually cluttered, as a result of having too much information displayed on the device's limited screen size."[502] However, it appears that such confusion would be imperceptible and the display would not need to show materially more information than before, as the pop-up screen could fill virtually the entire screen display.

195. I understand that these options would have been available at the point of first infringement, would have required minimal programming efforts, and would provide users with a similar functionally.[503]

### 5. The '721 Patent

196. I understand that Samsung asserts that several non-infringing alternatives to the '721 patent exist. For example, I understand that a design-around will be non-infringing if it allows the user to "swipe the screen, starting from any location, a predefined distance in any direction, to unlock the device. The device may give textual or graphical instructions as to how to unlock the device and provide visual feedback that the device is unlocking."[504] Among non-infringing alternatives are the non-accused unlocking mechanisms currently being used in several other Samsung models of a visual effect applied to a background image like that of the Galaxy S III.[505]

197. I understand that this option would have been available at the time of the alleged infringement, would have required minimal programming efforts, and would provide users with

---

[502] Vellturo Report, at Exhibit 11.
[503] *See e.g.*, Lockheimer Deposition, at Exhibit 4.
[504] Greenberg Report, at ¶¶ 471-472.
[505] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 124-6. The Galaxy S III uses a Ripple unlock. *See*, Samsung Galaxy S III Verizon User Manual at 140-1, Samsung. 2012. Available at http://downloadcenter.samsung.com/content/UM/201207/20120706131108550/VZW_SCH-i535_English_User_Manual_LG1_F5.pdf (viewed 9/12/2013).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER

a similar functionality.[506] Dr. Vellturo discounts this design as "…suffer[ing] from a number of drawbacks. For example, allowing an unlock by touching anywhere and swiping anywhere would likely result in accidental unlocks. Additionally, it appears this alternative would lack visual cues…[causing] users [to] be more likely to fail in their efforts to unlock the device."[507]

198.   Dr. Vellturo's concerns are unwarranted. In fact, Dr. Vellturo points to no convincing evidence that users of the Galaxy S III, Note, Note II, or any other device implementing the "Circle" and "Ripple" Unlock alternatives are suffering from these issues. Moreover, Dr. Vellturo's support regarding the same difficulties in the earlier "circle unlock" mechanism is flawed. For example, Dr. Vellturo points to Dr. Cockburn to support the contention that circle unlock lacked certain advantages and benefits of the '721 Patent, as it was prone to accidental unlocks.[508] However, Dr. Cockburn's Report contains no objective evidence for that statement.[509] Dr. Vellturo also reports that there was negative reaction to the visual cue of the circle unlock, but fails to mention that this was addressed by Samsung being "asked that [it] *add in some arrows.*"[510] Dr. Vellturo did not point to any documents suggesting Circle Unlock *as shipped* received negative feedback. Furthermore, Dr. Vellturo provides no evidence that Ripple unlock was designed "in response to negative feedback regarding circle unlock"[511] or that Ripple unlock itself is unacceptable.

---

[506] The first circle unlock device was available February 17, 2012. Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories, July 15, 2013, at 179, 192. The Circle Unlock took 240 person hours to implement. The Ripple unlock, which uses the same underlying design as the circle unlock, is merely a visual effect overlay (i.e., a skin) for the circle unlock. This visual effect took 280 hours to implement. Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories, July 15, 2013, at 204.
[507] Vellturo Report, at Exhibit 11.
[508] Vellturo Report, at FN 456.
[509] Vellturo refers to Cockburn Ex. 11, which is a chart of Cockburn's opinions. No objective evidence is shown.
[510] Deposition of Sung Sik Lee, July 11, 2013, at 99.
[511] Vellturo Report, at fn. 460, 463. The document discussed during the deposition (for which there is no translation) does not state explicitly that the shortcoming discussed in the deposition was a shortcoming of the water ripple

199. I also understand that on Apple devices incorporating the upcoming iOS 7, unlocking the screen will not be done by swiping in a way that requires dragging any image.[512] One source explains, "Apple completely changed the iOS 7 lock screen with a new slide from anywhere design. Users can slide left to right from anywhere on the screen to unlock, so there's no need to adjust to hit the small slider at the bottom."[513] Other comments, "This is the new lock screen. Notice how the slider switch is gone? Now you just swipe left to right to unlock your phone."[514] This further erodes the plausibility of Dr. Vellturo's contentions about the problems with such a design.

### 6. The '172 Patent

200. I understand that Samsung asserts that several non-infringing alternatives to the '172 patent exist.[515] Among those, Samsung could have equipped its accused devices with the same non-infringing keyboard that is used in several other non-accused Samsung models, including the Dart and Galaxy S III.

201. The Samsung Dart, which implements a non-accused keypad, was the first device in this case to be released. This keyboard was not enabled by default, but was available.[516] Predicted text is displayed in first area (where the user is typing the message). Apple agrees that this alternative is non-infringing.[517] Samsung's earliest Android devices, including the Behold

---

unlock. Lee testified "It does, yes, make some indication or reference to the water ripple unlock, but it actually is talking about other problems associated with the water ripple unlock itself."

[512] *See, e.g.,* http://www.cultofmac.com/231576/ios-7-will-let-you-swipe-anywhere-to-unlock-your-screen/ (viewed 9/12/2013); http://www.pcpro.co.uk/news/381931/ios-7-release-date-features-and-screenshots (viewed 9/12/2013); http://appadvice.com/appnn/2013/06/slide-to-unlock-appadvice-goes-hands-on-with-ios-7s-new-lock-screen (viewed 9/12/2013).

[513] http://www.gottabemobile.com/2013/08/23/ios-7-release-date-features-video/(viewed 9/12/2013).

[514] http://www.businessinsider.com/ios-7-screenshot-tour-2013-6#this-is-the-new-lock-screen-notice-how-the-slider-switch-is-gone-now-you-just-swipe-left-to-right-to-unlock-your-phone-1 (viewed 9/12/2013).

[515] Samsung's Further Supplemental Responses to Apple's Second and Third Sets of Interrogatories, First Supplemental Response to Interrogatory No. 24, at 126-8.

[516] *See, e.g.,* Dart User Manual, SAMNDCA630-00921130.

[517] *See* Cockburn Report, at ¶ 450.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**

II, included a Samsung keypad that operated in this fashion.[518] The Behold II was released in November 2009.

202.   Another option, implemented in the later Galaxy S III revisions, has both a Swype and Samsung keyboard, neither of which are accused.[519] These show what was actually typed in the first area (where the user is typing), but do not replace when a delimiter (space or punctuation) is pressed. Apple agrees this alternative is non-infringing.[520]

203.   I understand that these options would have required minimal programming efforts and would provide users with a similar functionally.[521] Dr. Vellturo provides no evidence that the keyboards in these products would have been unacceptable to Samsung customers more generally.

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

---

[518] *See* Samsung Behold II Portable Quad-Band Mobile Phone User Manual, S-ITC-000016686 at S-ITC-000016748-49 ("T9® mode automatically compares the series of keystrokes you make with an internal linguistic dictionary to determine the most likely word, thus requiring far fewer keystrokes than the traditional ABC mode.").
[519] The Samsung keyboard which works as described in alternative (ii) above was first implemented in the Galaxy S III. See Samsung Galaxy S III available at T-Mobile Portable Quad-Band Mobile Phone User Manual, SAMNDCA630-07329664. This version of the Samsung keyboard was first made available on June 15, 2012, for the Verizon wireless Galaxy S III, model number SCH-i535.
[520] *See* Cockburn Report, at ¶ 440.
[521] Wigdor Report, at ¶¶ 146 ("This could be done in an insubstantial amount of time…."); 166 ("[T]he alleged benefits of the '172 patent are all provided by the Swype and Samsung keyboard input methods in the Samsung Galaxy S III.")

Case 5:12-cv-00630-LHK   Document 2055-16   Filed 10/20/14   Page 15 of 18

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**SUBJECT TO PROTECTIVE ORDER**
INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

359.   The Cost Approach involves an examination of the costs required to construct or purchase an alternative technology that performs the same function as the patented technology, but which does not infringe the patent or patents-in-suit.[777] The cost to develop and implement a non-infringing alternative technology is also called "design-around cost." According to the Cost Approach, a user of certain patented technology would pay no more for access to that technology than its avoided costs.

360.   Many times a Cost Approach focuses on avoided out-of-pocket capital expenditures. However, such examinations tend to underestimate the true value of assets, including intellectual property assets. The "economic" facts that need to be considered include the costs of unsuccessful design attempts, the period of the design-around, and the going forward impacts of the alternative involving, for example, the cost associated with implementing and distributing the alternative technology.

361.   Dr. Vellturo has acknowledged that the presence of design-around alternatives would reduce the royalty rate in his calculations.[778] For example, in his royalty analysis, Dr. Vellturo assumes it would take Samsung 4 or 5 months to successfully have implemented certain alternatives in its accused products.[779] Doing so reduces the rate that would have otherwise be

---

[777] Reilly and Schweihs (1999), at 97.
[778] *See, e.g.*, Vellturo Report, at Exhibit 27.
[779] *See, e.g.*, Vellturo Report, at Exhibit 27.

paid (under Dr. Vellturo's construct) by as much as almost 90 percent.[780] This is because Dr. Vellturo correctly recognizes that Samsung would have been unwilling to pay a royalty after it had been able to design-around the patents-in-suit.

362.   Samsung contends that, as of the point of the hypothetical negotiations it could have had available, non-infringing, commercially acceptable alternatives for each of the patents-in-suit.[781]  For two of the patents-in-suit (the '721 and '172 patents), Samsung introduced phones with non-infringing alternative functionalities prior to the damages period.[782]

363.   Based on the input from various other Google employees, Hiroshi Lockheimer, a Google VP of engineering, indicated the various programming steps and time that would have been required to modify the Android code to avoid infringement of the other four patents-in-suit.[783] I outline these below:

- I understand that various alternatives to the '647 patent were available to Google and that according to Google's Dianne Hackborn, the required programming would have taken between 8 hours and 80 hours, depending on the design-around.

- I understand that various design-arounds to the '959 patent were available to Google and that according to Google's Bjorn Bringert, the required programming would have taken between 8 hours and 216 hours, depending on the design-around chosen and the version of the Android OS used.

---

[780] Dr. Vellturo assumes that the royalty will be proportionally reduced to the fraction of time to design-around relative to the product life of 36 months.  Vellturo Report, at Exhibit 27.
[781] *See, e.g.*, Samsung's Response to Apple's Interrogatory No. 29.
[782] For the '721 patent, one such design was the "glass unlock" used as the first-screen unlocking mechanism in the Galaxy S II; for the '172 patent, one such design was the Samsung keyboard available in the Dart.  *See* Rebuttal Expert Report of Saul Greenberg, Ph.D Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721, at ¶¶ 438-440; Rebuttal Expert Report of Dr. Daniel Wigdor Concerning Non-Infringement of U.S. Patent No. 8,074,172, at ¶¶ 156-158.
[783] Lockheimer Deposition, at Exhibit 4.

- I understand that various alternatives to the '414 patent were available to Google and that according to Google's Paul Westbrook, the required programming would have taken between 10 hours and 80 hours, depending on the design-around.

- I understand that various design-arounds to the '760 patent were available to Google and Samsung. According to Google's Jeff Hamilton, the required programming would have taken between 2 hours and 40 hours, depending on the design-around. According to Samsung witness Hyunjung Lee, the implemented non-infringing alternative that was used in the non-accused releases of the Galaxy S III took 104 hours to design and implement and the implemented non-infringing alternative used in the non-accused releases of the Admire and Transform Ultra took only 4 hours to implement.[784]

364.   These estimates are generally consistent with the opinions of Samsung's technical experts, who indicate that times to design and implement alternatives to the accused functionality for each of the remaining five patents-in-suit range from a matter of hours to up to seven weeks.[785] An additional period of approximately one month would be required to allow for compiling code, testing, and receiving carrier approval for any proposed alternative, resulting in a total range of one to three months.[786]

---

[784] *See* Lee Deposition at 165:10-169:24; 76:1-77:22 and Exhibit 22.

[785] *See* Rebuttal Expert Report of Dr. Kevin Jeffay Concerning Noninfringement of U.S. Patent No. 5,946,647 at ¶¶ 502, 515, 519, 523, 528 (estimating that various alternatives could be implemented in a matter of 8 to 80 person hours, depending upon the alternative); Rebuttal Expert Report of Martin Rinard, Ph.D. Regarding Noninfringement of Claims 24 and 25 of U.S. Patent No. 6,847,959 at ¶¶ 312, 313, 318, 319, 330, 331, 341 (8-200 hours); Expert report of Jeffrey Chase, Ph.D. Regarding Noninfringement of the Asserted Claims of U.S. Patent No. 7,761,414 at ¶¶ 186, 196, 199, 204 (10 hours to one month); Rebuttal Expert Report of Saul Greenberg, Ph.D., Regarding Noninfringement of the Asserted Claim 8 of U.S. Patent No. 8,046,721 at ¶ 36 (240-280 hours); Rebuttal Expert Report of Daniel Wigdor Concerning Non-Infringement of U.S. Patent No. 8,074,172 at ¶¶ 145-146 (no more than 26-120 hours).

[786] *See* Samsung's Further Supplemental Responses to Apple's First, Third, and Tenth Sets of Interrogatories, July 15, 2013, at 197.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
SUBJECT TO PROTECTIVE ORDER**

INTENTIONALLY OMITTED FROM EXHIBIT/RECORD

*[signature: Judith Chevalier]*

_____

JUDITH A. CHEVALIER

214