United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) | Case No.: 12-CV-00630-LHK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART APPLE'S |
| v. | ) | MOTION FOR ONGOING ROYALTIES |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., a | ) | [PUBLIC REDACTED VERSION] |
| Korean corporation; SAMSUNG | ) | |
| ELECTRONICS AMERICA, INC., a New York | ) | |
| corporation; and SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA, LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

After a jury trial and resolution of post-trial motions, on September 3, 2014, Apple, Inc.

("Apple") moved for ongoing royalties for any continuing infringement by Samsung Electronics

Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC

(collectively, "Samsung"). *See* ECF No. 1959. The Court ordered the parties to brief the issues of

whether Apple is entitled to ongoing royalties at all, and the proper amount of any such royalties.

ECF No. 1978. The Court finds Apple's motion suitable for decision without oral argument

pursuant to Civil Local Rule 7-1(b), and therefore VACATES the hearing set for December 18,

2014. Having considered the law, the record, and the parties' arguments, the Court GRANTS

Apple's motion, but modifies the scope of Apple's requested relief as discussed below.

# I.     BACKGROUND

On May 5, 2014, a jury reached a verdict in this case, finding in part that Samsung infringed Apple's U.S. Patent Nos. 5,946,647 (the "'647 patent"), 8,046,721 (the "'721 patent"), and 8,074,172 (the "'172 patent"). ECF No. 1884. On May 23, 2014, both parties filed motions for judgment as a matter of law, and Apple filed a motion for a permanent injunction. *See* ECF Nos. 1895-3, 1896-3, 1897-3. On August 27, 2014, the Court denied Apple's request for a permanent injunction. ECF No. 1954. On August 29, 2014, Apple filed a notice of appeal to the Federal Circuit regarding denial of the permanent injunction. The Court subsequently resolved the parties' motions for judgment as a matter of law. ECF Nos. 1963, 1965.

On September 3, 2014, Apple filed the instant motion, seeking ongoing royalties for any future infringement by Samsung. ECF No. 1958. Apple demands royalties from Samsung for any continuing sales of the products for which the jury found infringement, and for any Samsung products "not more than colorably different" from the adjudicated products. ECF No. 1959 (Apple's Proposed Order). Apple claims that the jury awarded per-unit royalty rates of $2.75 for the '647 Patent, $2.30 for the '172 Patent, and $1.41 for the '721 Patent, and requests the same rates for any future infringement. *See id.*

On September 9, 2014, the Court set schedules for briefing both Apple's entitlement to ongoing royalties and the proper amount of any such royalties, and asked the parties to address the effect of Apple's motion on entry of final judgment in this case. ECF No. 1966. On September 13, 2014, Samsung sought an extension of time to respond to Apple's motion. ECF Nos. 1969, 1970. On September 15, 2014, Apple opposed Samsung's request for an extension. ECF No. 1975. After considering the parties' submissions, the Court adjusted the briefing schedules. ECF No. 1978.

Regarding Apple's entitlement to ongoing royalties, Samsung filed an Opposition on September 22, 2014. ECF No. 1986-3. On September 29, 2014, Apple filed its Reply. ECF No. 2001. On October 6, 2014, Samsung filed an administrative motion seeking leave to file a Sur-Reply (ECF No. 2013), which Apple opposed on October 9, 2014 (ECF No. 2032). The Court

United States District Court
For the Northern District of California

1    granted Samsung's request (ECF No. 2049), and Samsung filed its Sur-Reply on October 15, 2014

2    (ECF No. 2050).

3           As to the proper quantity of ongoing royalties, on September 22, 2014, Apple filed its

4    opening brief and supporting materials.  ECF No. 1985-3.  On October 6, 2014, Samsung filed its

5    Response with supporting declarations.  ECF No. 2015-2.  On October 14, 2014, Apple filed its

6    Reply.  ECF No. 2046-3.

7    **II.    LEGAL STANDARDS**

8           In their briefs, the parties make many conflicting (and sometimes inconsistent) statements

9    about the nature of the ongoing royalties remedy.  As a result, the Court briefly reviews the

10   relevant legal standards.

11          An ongoing royalty permits an adjudged infringer to continue using a patented invention for

12   a price.  *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1313 n.13 (Fed. Cir. 2007)

13   (defining an ongoing royalty and distinguishing a compulsory license).  The Federal Circuit has

14   identified 35 U.S.C. § 283, which authorizes "injunctions in accordance with the principles of

15   equity," as statutory authority for awarding ongoing royalties.  *See id.* at 1314 (citing § 283); *see*

16   *also* Mark A. Lemley, The Ongoing Confusion Over Ongoing Royalties, 76 Mo. L. Rev. 695, 695-

17   99 (2001) (analyzing authority for ongoing royalties under §§ 283 and 284).  Accordingly, while

18   this remedy involves monetary relief, there is no Seventh Amendment right to jury trial for ongoing

19   royalties.  *See Paice*, 504 F.3d at 1315-16 ("[T]he fact that monetary relief is at issue in this case

20   does not, standing alone, warrant a jury trial.").

21          The Federal Circuit has held that ongoing royalties are a discretionary remedy.  "There are

22   several types of relief for ongoing infringement that a court can consider: (1) it can grant an

23   injunction; (2) it can order the parties to attempt to negotiate terms for future use of the invention;

24   (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-

25   looking relief is appropriate in the circumstances."  *Whitserve, LLC v. Computer Packages, Inc.*,

26   694 F.3d 10, 35 (Fed. Cir. 2012).  "Under some circumstances, awarding an ongoing royalty for

27   patent infringement in lieu of an injunction may be appropriate."  *Paice*, 504 F.3d at 1314.

28   However, the remedy is not automatic: "awarding an ongoing royalty where 'necessary' to

                                                     3

*(left margin, vertical text)* **United States District Court** For the Northern District of California

United States District Court
For the Northern District of California

effectuate a remedy, be it for antitrust violations or patent infringement, does not justify the provision of such relief as a matter of course whenever a permanent injunction is not imposed." *Id.* at 1314-15.

The Federal Circuit has not addressed the burden of proof for ongoing royalties. However, other courts have placed the burden on the patentee. *Creative Internet Adver. Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 855 (E.D. Tex. 2009) ("When injunctive relief is denied under the traditional four factor test and the Court instead considers whether an infringer should pay an ongoing royalty, the Court finds that the burden of proving damages remains with the patentee.").

Determination of ongoing royalties differs from evaluation of a reasonable royalty during trial because the jury has reached a liability verdict and other economic factors may have changed. "Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008). A district court may also consider "additional evidence of changes in the parties' bargaining positions and other economic circumstances that may be of value in determining an appropriate ongoing royalty." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1343 (Fed. Cir. 2012); *but see* Lemley, *supra*, at 704-05 ("Juries are already required to assume that the patent is valid and infringed when setting past damages. There is no reason to think that asking the same question twice should produce different answers in most cases.") (footnotes omitted).

## III.    DISCUSSION

Apple and Samsung have three sets of disputes. First, Samsung argues that Apple is procedurally barred from seeking the remedy of ongoing royalties. Second, Samsung contends in the alternative that Apple is not entitled to any ongoing royalties for any Samsung products. Third, assuming that Apple is entitled to a remedy, the parties dispute the proper ongoing royalty rates. The Court addresses these disputes in order.

4

### A.     Samsung's Procedural Arguments

Samsung presents a host of procedural arguments as to why Apple is now precluded from seeking ongoing royalties, and why the Court should postpone resolution of Apple's motion. Apple disputes each of these arguments and contends that it has not forfeited any rights.  The Court determines that Apple is not barred from requesting ongoing royalties, for the reasons below.

#### 1.     Waiver

Samsung first argues that Apple waived ongoing royalties by failing to identify this remedy in various pretrial filings.  Samsung observes that Apple did not offer any expert testimony on ongoing royalties or raise the issue in motions for pre- and post-verdict judgment as a matter of law, new trial, or a permanent injunction.  *See* ECF No. 1986-3 at 2-3.  In particular, Samsung claims that Apple failed to request ongoing royalties in the parties' Joint Amended Pretrial Statement, and that Apple's "boilerplate" reference to "[a]ny other remedy to which Apple may be entitled, including all remedies provided for in 35 U.SC. §§ 284, and 285 and under any other law" was insufficient to preserve the issue.  *Id.* at 4; ECF No. 1455-1 at 3.  Relatedly, Samsung argues that Apple also failed to include ongoing royalties in the scope of injunctive relief requested, which was limited to an injunction preventing "further acts of infringement."  ECF No. 1455-1 at 3.

Apple responds that it adequately preserved ongoing royalties in the Joint Amended Pretrial Statement by requesting "all damages adequate to compensate for Samsung's infringement of Apple's asserted patents, and in no event less than a reasonable royalty for Samsung's acts of infringement."  ECF No. 2001 at 2.  Apple notes that the Federal Circuit in *Paice* characterized ongoing royalties as a "reasonable royalty" in light of ongoing infringement, such that Apple's request for a "reasonable royalty" encompassed that remedy.  *Id.* (quoting 504 F.3d at 1315).  Additionally, Apple submits examples of pretrial statements in other cases—including *Paice*— where the parties did not expressly request an "ongoing royalty," but no waiver occurred.  *See, e.g.*, ECF No. 2002-4 at 3 (pretrial statement in *Paice*, seeking "monetary damages in the form of a reasonable royalty").[1]

---

[1]      *See also* ECF Nos. 2002-1 at 6 (Joint Final Pre-Trial Order, *Mondis Tech. Ltd. v. Hon Hai Precision Indus. Co.*, No. 2:07-CV-565 (E.D. Tex.)), 2002-2 at 18 (Order on Final Pretrial Conference, *I/P Engine, Inc. v. AOL, Inc.*, No. 2:11-cv-512 (E.D. Va.)), 2002-3 at 3 (Joint Pre-Trial

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

1    Additionally, Samsung points to this Court's August 21, 2014 Order denying Samsung's

2    motion for judgment of invalidity under 35 U.S.C. § 101.  ECF No. 1952.  There, the Court

3    rejected Samsung's attempt to raise § 101 defenses against two Apple patents for the first time after

4    trial.  The Court determined that Samsung failed to preserve § 101 defenses because Samsung did

5    not identify that legal theory in expert reports, dispositive motions, or the Joint Amended Pretrial

6    Statement.  *See id.* at 4-5.  The Court noted that the Ninth Circuit has "consistently held that issues

7    not preserved in the pretrial order have been eliminated from the action," *S. Cal. Retail Clerks*

8    *Union v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984), and that "a theory will be barred if not at

9    least implicitly included in the order," *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 548 (9th Cir.

10   1985).  Now, Samsung argues that these same principles should preclude Apple from seeking

11   ongoing royalties.  *See* ECF No. 1986-3 at 3.

12   Under these circumstances, the Court concludes that Apple did not waive ongoing royalties.

13   Apple concedes that it did not use the words "ongoing royalties" in the Joint Amended Pretrial

14   Statement or its pre- and post-trial motions.  However, throughout this litigation, Apple has

15   consistently requested royalties to compensate for all Samsung infringement.  *See, e.g.*, Compl.

16   (ECF No. 1) at 13-14; Am. Compl. (ECF No. 261) at 12-13.  As noted above, in the Joint Amended

17   Pretrial Statement, Apple requested "all damages adequate to compensate for Samsung's

18   infringement of Apple's asserted patents, and in no event less than a reasonable royalty."  ECF No.

19   1455-1 at 3.  Thus, Apple's request for ongoing royalties was at least "implicitly included" in this

20   filing.  *Eagle*, 769 F.2d at 548.  By contrast, Samsung did not identify § 101 in the Joint Amended

21   Pretrial Statement at all, despite identifying other statutory defenses (such as §§ 102, 103, and

22   112).  *See* ECF No. 1952 at 3.  Moreover, Samsung had raised § 101 much earlier in this case, but

23   then abandoned that defense in its expert reports and pretrial filings.  Apple, on the other hand, has

24   consistently sought compensatory royalties for all infringing activity.

25   In its Sur-Reply, Samsung contends that Apple's reference to "royalties" or "damages" in

26   the Joint Amended Pretrial Statement could not encompass ongoing royalties because that is a

27

28   Order, *Creative Internet Adver. Corp. v. Yahoo! Inc.*, No. 6:07cv354 (E.D. Tex.)).  However, the
     Court notes that the patentee in *Mondis* requested "a running royalty to compensate it for any
     continuing infringement."  ECF No. 2002-1 at 12.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

United States District Court
For the Northern District of California

remedy under 35 U.S.C. § 283, not "damages" under § 284.  ECF No. 2050 at 2.  Samsung is

correct that the Federal Circuit has characterized ongoing royalties as an equitable remedy

authorized under § 283.  *See Paice*, 504 F.3d at 1314-16 (analyzing ongoing royalties under § 283

and finding no Seventh Amendment right to jury trial); *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,

515 F. App'x 882, 882 (Fed. Cir. 2012) ("An ongoing royalty is not the same as an accounting for

damages.").  However, this does not mean that Apple's request for "royalties" and "damages" is

insufficient to invoke a request for ongoing royalties.  The Federal Circuit has also referred to an

ongoing royalty as a "reasonable royalty."  *Paice*, 504 F.3d at 1315 (describing the requested relief

as "a reasonable royalty in light of the ongoing infringement").  As Apple notes, other courts have

awarded ongoing royalties even though the patentee generally sought a "reasonable royalty" or

compensatory damages.  *See, e.g.*, ECF No. 2002-4 at 3 (pretrial statement in *Paice*).[2]

Samsung does not cite any case law where ongoing royalties were deemed waived where a

patentee sought damages and "in no event less than a reasonable royalty" but did not employ the

words "ongoing royalty."  Rather, Samsung cites two cases relating to waiver, neither controlling

and both distinguishable.  *See* ECF No. 1986-3 at 3.  In *Elvis Presley Enterprises, Inc. v. Capece*,

the Fifth Circuit affirmed a ruling that the plaintiff in a trademark case waived an accounting of

profits.  141 F.3d 188, 206 (5th Cir. 1998).  The plaintiff listed "injunctive relief, damages, and

attorneys' fees under the Lanham Act" in the pretrial order, but not an accounting of profits.  *Id.*  In

finding waiver, the court relied on the fact that the Lanham Act has a specific provision for an

accounting of profits that "lists it separately from damages."  *Id.*  That is not the situation here,

however, because there is no express statutory provision in the Patent Act that separately lists

ongoing royalties.  Next, in *Ramos v. Davis & Geck, Inc.*, the District of Puerto Rico found that the

plaintiff waived a claim for "front pay" as to one cause of action, but based this result on the fact

that the plaintiff expressly requested "front pay" for a separate cause of action.  968 F. Supp. 765,

771 (D.P.R. 1997).  Again, that is not what occurred here.  Apple has consistently sought

---

[2]     Samsung argues that if § 283 does not govern ongoing royalties (as a form of injunctive relief), then Samsung is entitled to a jury trial under the Seventh Amendment.  *See* ECF No. 1986-3 at 4 n.1.  This argument is misplaced.  *Paice* explained that § 283 governs ongoing royalties, and that there is no right to a jury trial.  504 F.3d at 1315-16.  Indeed, in a later brief, Samsung cites *Paice* and argues that no jury trial is required.  *See* ECF No. 2015-2 at 3.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

compensatory royalties for all infringing activity.  Overall, Samsung has not demonstrated that Apple waived the issue of ongoing royalties.

### 2.    Timeliness

Aside from waiver, Samsung calls Apple's request for ongoing royalties an "untimely second post-trial motion." ECF No. 1986-3 at 5.  Samsung points to the Court's March 5, 2014 scheduling order for post-trial motions, which stated that "each side may file one motion for judgment as a matter of law and/or motion for new trial ('post-trial motion')" and "[e]ach prevailing side may file one motion for a permanent injunction." ECF No. 1398 at 4.  Samsung claims that Apple's motion is an additional "motion to alter or amend a judgment" under Fed. R. Civ. P. 59(e), and therefore an untimely post-trial motion not authorized by the Court's scheduling order.  According to Samsung, Apple needed to raise ongoing royalties "as alternative relief in its motion for permanent injunction." ECF No. 1986-3 at 5.

Apple characterizes the situation differently.  "Apple agrees that its request for an ongoing royalty may be characterized as a Rule 59(e) motion to 'alter or amend a judgment'" under Rule 59(e), but claims that this motion is not a "post-trial motion" as defined in the Court's scheduling order because it is not a "motion for judgment as a matter of law and/or motion for new trial." ECF No. 2001 at 6-7.  Apple also claims its motion is "early" because the Court has not yet entered final judgment. *Id.* at 7.  Apple claims that at least one other district court has allowed a patentee to seek ongoing royalties after losing a permanent injunction request. *See Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, No. 08-CV-1512, slip op. at 1 (S.D. Cal. June 10, 2013) ("[T]he Court denied Warsaw's motion for a permanent injunction and ordered the parties to brief the matter of ongoing royalties.").

The Court finds that Apple's motion is not untimely.  The Court's March 5, 2014 scheduling order (ECF No. 1398) addressed only motions requesting a new trial, judgment as a matter of law, and permanent injunctions.  Apple's motion does not fall within any of those categories, and is therefore not foreclosed by that scheduling order.  Also, Apple filed its motion for ongoing royalties only one week after the Court denied a permanent injunction, which negates Samsung's claims of untimeliness.

8

United States District Court
For the Northern District of California

1    Samsung asserts that Apple forfeited ongoing royalties by not requesting that relief at the

2    same time it moved for a permanent injunction.  Apple argues that briefing both issues

3    simultaneously would force patentees "to take the conflicting position that money damages are

4    inadequate, while simultaneously proposing money damages to remedy the infringement."  ECF

5    No. 2001 at 6.  However, Samsung claims that "parties routinely request an ongoing royalty in the

6    alternative to—and at the same time as—a request for a permanent injunction barring the sale of

7    the infringing product," citing *Bard Peripheral Vascular v. W.L. Gore & Associates*, 670 F.3d

8    1171, 1178 (Fed. Cir. 2012) (*vacated in part*, 476 F. App'x 747 (Fed. Cir. 2012)), and *Cordance*

9    *Corp. v. Amazon.com, Inc.*, 730 F. Supp. 2d 333, 336 (D. Del. 2010).  ECF No. 1986-3 at 6.

10   However, both of those cases are merely examples of patentees simultaneously seeking both an

11   injunction and ongoing royalties.  *E.g.*, *Cordance*, 730 F. Supp. 2d at 336 ("Cordance filed a

12   motion for permanent injunction or, in the alternative, imposition of an ongoing royalty.").  Neither

13   case holds that this is a procedural requirement.[3]  Accordingly, the Court determines that Apple's

14   motion is not untimely.

15                  **3.    Jurisdiction**

16                  Next, Samsung challenges this Court's jurisdiction to decide Apple's motion.  Apple

17   appealed this Court's denial of Apple's request for a permanent injunction, before resolution of the

18   parties' motions for judgment as a matter of law or entry of final judgment in this case.  *See* ECF

19   No. 1955.  Apple appealed under 28 U.S.C. § 1292(c)(1), which permits appeals to the Federal

20   Circuit from interlocutory orders refusing injunctions.  *See also* § 1292(a)(1); Br. of Pl.-Appellant

21   Apple Inc. at 1, Case No. 14-1802 (Fed. Cir. Oct. 3, 2014) ("This Court has jurisdiction over the

22   denial of a permanent injunction under 28 U.S.C. § 1292(c)(1).").  According to Samsung, Apple's

23   interlocutory appeal "divested the Court of jurisdiction" for any "overlapping matters" between

24   Apple's requests for a permanent injunction and for ongoing royalties.  ECF No. 1986-3 at 8.

25   Samsung posits that ongoing royalties involve several issues common to a permanent injunction,

26   such as the adequacy of monetary relief and consumer demand for the infringed patented features.

27   ────────────────────
     [3]    The Court notes that delaying a motion for ongoing royalties until after resolution of a
28   permanent injunction motion (as Apple has done here) may delay entry of final judgment, as
     discussed below.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

*See id.* at 8-9.  Apple disagrees, claiming that its request for ongoing royalties "is distinct from the injunction issue raised on appeal."  ECF No. 2001 at 8.

The Court finds Samsung's jurisdictional arguments unpersuasive.  Samsung's theory that ongoing royalties are inextricably bound to the permanent injunction appeal is not supported by the law that the parties have cited.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  The Ninth Circuit has held that its jurisdiction under § 1292(a)(1) (for interlocutory injunction orders) extends "only to the 'matters inextricably bound up with the injunctive order from which the appeal is taken.'"  *Paige v. Cal.*, 102 F.3d 1035, 1039 (9th Cir. 1996) (quoting *Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 905 (9th Cir. 1995)).[4]  However, "it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case."  *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982); *see also Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, No. 2009-1168, 2009 WL 790105, at *1 (Fed. Cir. Mar. 25, 2009) ("Although a district court may not proceed with matters involved with the injunction itself . . . or make findings to support its injunction while the injunction is on appeal, . . . the district court may proceed with the litigation and permit discovery, enter rulings on summary judgment, or hold a trial on the merits.") (internal citations omitted).

Samsung cites *Paige* to support its argument that the Court lacks jurisdiction over any overlapping issues in Apple's appeal.  *See* ECF No. 1986-3 at 8.  However, the Ninth Circuit's guidance in that case is instructive as to why Samsung's arguments are misplaced.  *Paige* involved an interlocutory appeal of an order granting a preliminary injunction in a discrimination class action suit.  102 F.3d at 1037.  The district court entered the injunction based on its decisions regarding class certification and summary judgment, and the defendants sought interlocutory

---

[4]     Both sides rely on Ninth Circuit law regarding jurisdiction, but do not address whether regional or Federal Circuit law would apply to this Court's jurisdiction. *Cf. Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007) ("We apply our own law, rather than regional circuit law, to questions relating to our own appellate jurisdiction.").

10

United States District Court
For the Northern District of California

1   review of those underlying decisions. The Ninth Circuit held that "the class certification order in

2   this case is inextricably bound up with the grant of the interim injunction," and that the injunction

3   could not be upheld "without also upholding the certification of the class." *Id.* at 1039. The court

4   also exercised jurisdiction over the summary judgment order "because the relief provided in the

5   injunction was based on the fact that the merits of the disparate impact issue had been resolved."

6   *Id.* at 1040. Thus, *Paige* indicates that predicate issues that are necessary to resolution of an

7   injunction are "inextricably bound up with" an interlocutory appeal and thus removed from the

8   district court's jurisdiction during the appeal. *See also Bates v. United Parcel Serv., Inc.*, 465 F.3d

9   1069, 1076 (9th Cir. 2006) ("Because the district court's legal authority to grant the injunction

10  stemmed from its holding that UPS violated the ADA and the California laws, those holdings are

11  'inextricably bound up' with its injunction.").

12          Here, Apple's request for ongoing royalties is not "inextricably bound up with" the

13  permanent injunction appeal. Unlike the class certification and summary judgment rulings in

14  *Paige*, determining Apple's entitlement to ongoing royalties was not necessary for resolving

15  Apple's permanent injunction motion. Indeed, Apple did not move for ongoing royalties until after

16  the Court denied a permanent injunction. Samsung contends that "the amount of money adequate

17  to compensate Apple" is "involved in the appeal" because Apple must argue that monetary

18  damages are inadequate compensation. ECF No. 1986-3 at 9. Specifically, Samsung claims that

19  the permanent injunction appeal affects application of the *Georgia-Pacific* factors (for purposes of

20  determining ongoing royalties) because issues such as the probative value of Apple's patent

21  licenses and demand for the patented features must be "re-open[ed]." *Id.* at 9. This argument fails

22  because mere factual overlap between issues does not demonstrate that those issues are

23  "inextricably bound" to each other. This Court's permanent injunction order did not address the

24  *Georgia-Pacific* factors or reasonable royalties. *See* ECF No. 1954. As Apple points out, many

25  discrete issues regarding liability and damages (including application of *Georgia-Pacific*) were

26  also disputed in the parties' motions for judgment as a matter of law, but Samsung did not argue

27  that Apple's appeal divested this Court of jurisdiction to resolve those motions. *See* ECF No. 2001

28  at 8. Indeed, rulings on preliminary and permanent injunctions require some analysis of liability

United States District Court
For the Northern District of California

11

and remedies, which overlap factually with other issues, but § 1292 allows for interlocutory appeals of injunction orders while a case proceeds before the district court.  Because determination of ongoing royalties is not inextricably bound up with Apple's permanent injunction motion, Apple's appeal has not divested this Court of jurisdiction.

### 4.      Request for Stay

As a further procedural alternative, Samsung asks that "[i]f the Court finds that the jurisdictional question is even close, the Court should avoid potentially wasteful proceedings by staying this case pending resolution of Apple's interlocutory appeal."  ECF No. 1986-3 at 10. Samsung claims that deciding Apple's ongoing royalties motion now would waste resources because the pending appeal may affect or obviate ongoing royalties.  The Court is unpersuaded and DENIES Samsung's request to stay resolution of Apple's ongoing royalties motion.

First, as explained above, the Court does not find Samsung's jurisdictional question close. The fact that there may be some overlapping issues that are relevant to both a permanent injunction and ongoing royalties does not divest this Court of jurisdiction.  Samsung has not persuaded the Court that there is a substantial risk of "having the same issues before two courts simultaneously" (ECF No. 1986-3) because the pending appeal involves the propriety of an injunction under *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), not the merits or calculation of ongoing royalties.

Second, the Federal Circuit has indicated that ongoing royalties must be resolved prior to entry of final judgment.  Last year, in *Robert Bosch, LLC v. Pylon Manufacturing Corp.*, the Federal Circuit held that a district court can enter a final appealable judgment before adjudicating damages because damages fall within the scope of an "accounting" under § 1292(c)(2).  719 F.3d 1305, 1308 (Fed. Cir. 2013) (en banc).  However, in a prior nonprecedential opinion, the Federal Circuit stated that "[a]n ongoing royalty is not the same as an accounting for damages" and must therefore be resolved before entry of final judgment: "We agree with Warsaw that even assuming Rule 54(b) would give this court jurisdiction over a claim that is 'final except for an accounting' within the meaning of 28 U.S.C. § 1292(c)(2), *the case is not 'final' because the district court has not yet determined ongoing royalties*."  *Warsaw*, 515 F. App'x at 882 (emphasis added); *see also*

12

United States District Court
For the Northern District of California

1    *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 987 (N.D. Cal. 2009) (noting that a

2    request for ongoing royalty may preclude final judgment).  Apple and Samsung concur that

3    *Warsaw*, and not *Bosch*, applies here.  *See* ECF No. 2001 at 9 (Apple: "a stay will leave any appeal

4    in limbo"); ECF No. 2015-2 at 3 (Samsung: "*Warsaw* . . . found that ongoing royalties under § 283

5    do not fall within the finality exception under § 1292(c)(2)").  Therefore, staying this issue as

6    Samsung proposes would preclude entry of final judgment and prevent the parties from appealing

7    any remaining issues other than denial of a permanent injunction for Apple.[5]

8           Samsung argues that the Court should postpone resolution of ongoing royalties for the same

9    reasons that it postponed calculation of supplemental damages and prejudgment interest.  *See* ECF

10   No. 1986-3 at 11.  In its post-verdict motion for judgment as a matter of law, Apple sought

11   supplemental damages for post-verdict infringement, as well as prejudgment interest on the jury's

12   damages award.  The Court "agree[d] that an award of supplemental damages is necessary here,"

13   but found it "appropriate to delay the consideration of evidence of actual postverdict sales and

14   calculation of supplemental damages until after the completion of the appeal in this case."  ECF

15   No. 1963 at 18-19.  Likewise, the Court "decline[d] Apple's request that the Court calculate and

16   award prejudgment interest at this time before any appeal is resolved."  *Id.* at 24.  The Court was

17   able to postpone those calculations because they do not preclude final judgment.  However, as

18   explained above, ongoing royalties must be addressed before entry of final judgment and appeal of

19   any remaining issues.

20          Samsung also identifies two other litigations—*I/P Engine, Inc. v. AOL Inc.*, Case No. 2:11-

21   cv-512 (E.D. Va.), and *Creative Internet Advertising Corp. v. Yahoo! Inc.*, No. 6:07-cv-00354-JDL

22   (E.D. Tex.)—where the parties litigated ongoing royalties, but subsequent Federal Circuit decisions

23   on the underlying merits of those cases rendered ongoing royalties moot.  *See* ECF No. 1986-3 at

24   11-13.  However, Samsung's argument that resolution of Apple's ongoing royalties motion can be

---

[5]        The Court observes that Apple has tried to expedite the pending permanent injunction appeal.  *See* Apple's Opp'n to Samsung's Mot. for a 30-Day Extension (ECF No. 58), *Apple, Inc. v. Samsung Elecs Co.*, No. 14-1802 (Fed. Cir. Oct. 24, 2014).  Further delaying entry of final judgment here could prompt two separate appeals regarding denial of a permanent injunction and all other issues, which could be inefficient and favors prompt resolution of Apple's ongoing royalties motion.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

United States District Court
For the Northern District of California

stayed ignores *Warsaw*'s instruction that ongoing royalties must be adjudicated prior to a full appeal.

For the foregoing reasons, the Court disagrees with Samsung's procedural and jurisdictional objections to Apple's motion and denies Samsung's request to stay resolution of this motion.

**B.      Apple's Entitlement to Ongoing Royalties**

The Court turns to the parties' second set of disputes—whether Apple is entitled to ongoing royalties for any continuing infringement.  This issue precedes any analysis of the proper amount of ongoing royalties, which the Court addresses in a separate section below.

Apple and Samsung disagree about the legal standards for determining entitlement to ongoing royalties.  Apple insists that it is entitled *per se* to ongoing royalties: "In the absence of an injunction, a patentee is entitled to receive ongoing royalties . . . ."  ECF No. 1958 at 1.  Apple further states that permanent injunctions and ongoing royalties share the same statutory basis (§ 283), but claims that "[d]ifferent legal standards apply to each type of relief: *Georgia-Pacific* for an ongoing royalty and *eBay* for a permanent injunction."  ECF No. 2001 at 4-5.  On the other hand, Samsung argues for the first time in its Sur-Reply that "*Georgia-Pacific* is a test for determining the amount of a royalty as legal damages, ***not*** whether a plaintiff is entitled to the equitable remedy of an ongoing royalty."  ECF No. 2050 at 3.  According to Samsung, the four-factor *eBay* test for injunctive relief is also the standard for determining entitlement to ongoing royalties, and "the test for entitlement is based on the court's equitable discretion."  *Id.*

The parties' arguments conflate the standards for determining *entitlement* to ongoing royalties as opposed to the *amount* of any such royalties.  Apple claims that *Georgia-Pacific* is the "legal standard . . . for an ongoing royalty."  However, *Georgia-Pacific* addresses determination of the amount of a reasonable royalty through a hypothetical negotiation, not whether a patentee is entitled to an ongoing royalty under § 283.  On the other hand, Samsung characterizes *eBay* as holding that the four-factor test for permanent injunctions "is the 'well-established' and 'traditional' test for *any equitable relief*."  *Id.* at 3 (emphasis added).  This overextends *eBay*, which addressed permanent injunctions, not ongoing royalties.  *See, e.g.*, 547 U.S. at 393 (referring to "traditional equitable principles in deciding respondent's motion *for a permanent injunction*"

14

1   (emphasis added)).  Samsung cites no cases that apply the four-factor permanent injunction test to

2   ongoing royalties.  Indeed, it is unclear how the Court could apply the second *eBay* factor—"that

3   remedies available at law, such as monetary damages, are inadequate to compensate for that

4   injury"—to an award of ongoing royalties.  *Id.* at 391.

5          The Federal Circuit has instructed that entitlement to ongoing royalties is a matter of

6   discretion for the district court, focusing on whether the patentee has received compensation for

7   continuing infringement.  Contrary to Apple's argument that it is entitled *per se* to ongoing

8   royalties, the Federal Circuit has plainly stated that a district court "can exercise its discretion to

9   conclude that no forward-looking relief is appropriate in the circumstances."  *Whitserve*, 694 F.3d

10  at 35; *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed.

11  Cir. 2012) ("This court reviews the district court's decision to impose an ongoing royalty, in light

12  of its denial of a permanent injunction, for abuse of discretion.").  In *Paice*, the Federal Circuit

13  explained that "*[u]nder some circumstances*, awarding an ongoing royalty for patent infringement

14  in lieu of an injunction *may* be appropriate," and that such a remedy should not be provided "as a

15  matter of course whenever a permanent injunction is not imposed."  504 F.3d at 1314-15

16  (emphases added); *see also Bard*, 670 F.3d at 1178 (citing *id.*).

17         While a patentee does not automatically receive ongoing royalties in lieu of a permanent

18  injunction, the Federal Circuit has indicated that a prevailing patentee should receive compensation

19  for any continuing infringement.  *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365,

20  1379 (Fed. Cir. 2010) ("An award of an ongoing royalty is appropriate because the record supports

21  the district court's finding that Telcordia has not been compensated for Cisco's continuing

22  infringement.").  Because Apple could file piecemeal complaints against Samsung for future

23  infringement, awarding ongoing royalties at this stage may avoid "an endless succession of

24  lawsuits presenting the same issue."  Lemley, *supra*, at 697.  Accordingly, the Federal Circuit has

25  repeatedly approved the practice of granting ongoing royalties to compensate a patentee for

26  continuing infringement.  *See Paice*, 504 F.3d at 1316; *Amado*, 517 F.3d at 1362; *ActiveVideo*, 694

27  F.3d at 1343; *Bard*, 670 F.3d at 1193.  Multiple district courts have followed *Paice* and awarded

28  ongoing royalties in lieu of an injunction.  *See, e.g.*, *Telcordia Techs. v. Cisco Sys.*, No. 04-876,

2014 U.S. Dist. LEXIS 51076, at *18 (D. Del. Apr. 14, 2014) (awarding ongoing royalties); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2014 U.S. Dist. LEXIS 43042, at *124 (W.D. Pa. Mar. 31, 2014) (same); *Depuy Synthes Prods., LLC v. Globus Med., Inc.*, No. 11-652, 2014 U.S. Dist. LEXIS 61450, at *24 (D. Del. Mar. 28, 2014); *Mondis*, 2012 U.S. Dist. LEXIS 60004, at *22-24.

Having addressed the standard for determining a patentee's entitlement to ongoing royalties, the Court turns to the parties' additional arguments regarding Apple's entitlement to ongoing royalties under the present circumstances.

### 1. Double Recovery

Samsung's first argument is that Apple improperly seeks double recovery for certain infringing sales because Apple is already entitled to supplemental damages for post-verdict infringement. *See* ECF No. 1986-3 at 13; ECF No. 2050 at 1. "Generally, the double recovery of damages is impermissible." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006).

In its post-verdict motion for judgment as a matter of law, Apple sought "[s]upplemental damages through judgment." ECF No. 1897-3 at ii. Noting that Apple wanted supplemental damages "through the date of judgment for infringing sales not considered by the jury," this Court agreed that "an award of supplemental damages is necessary here, as there are sales for which the jury did not make an award, because they occurred after the jury reached its verdict." ECF No. 1963 at 17-18. Thus, Apple has sought and obtained entitlement to supplemental damages beginning the day after the jury's verdict through the date of final judgment, in an amount to be determined after resolution of any appeals.

In seeking ongoing royalties, Apple initially sought compensation for infringing products "that are sold on or after the date of this [Proposed] Order." ECF No. 1959. However, after Samsung raised the possibility of double recovery, Apple changed positions and now "requests that such ongoing royalties start from the date of the denial of the permanent injunction, and Apple will accept this remedy in lieu of supplemental damages." ECF No. 2001 at 10. Apple claims that under this amended request, "there will be no double-counting." *Id.*

16

United States District Court
For the Northern District of California

In light of Apple's shifting positions, the Court concludes that Apple may recover any appropriate ongoing royalties only after entry of final judgment, and supplemental damages for any post-verdict, prejudgment infringement.  In its Reply in support of ongoing royalties, Apple changed course and now seeks ongoing royalties starting on August 27, 2014 (the date the Court denied a permanent injunction), waiving supplemental damages after that date.  However, at Apple's request, the Court has already awarded supplemental damages through the anticipated entry of final judgment.  Having invited the Court to grant this remedy over Samsung's objection, Apple may not arbitrarily choose new dates for its remedies.  *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").  Accordingly, Apple may recover supplemental damages for the period between entry of the verdict and entry of final judgment, and any ongoing royalties only for infringement after entry of final judgment.  This obviates any concern over double recovery.

### 2.    Notice

Samsung next asserts that "equity weighs heavily against a grant of an ongoing royalty." ECF No. 1986-3 at 14.  Samsung's primary argument is lack of notice.  Samsung claims that "Apple remained silent about its intention to file an alternative motion for injunctive relief," which prevented adequate discovery into "the likely post-judgment circumstances" necessary to assess ongoing royalties.  *Id.*  Samsung also insinuates that Apple's goal "is not recompense for genuine injury, but rather to prejudice Samsung."  *Id.*

Samsung's arguments merely repeat its waiver arguments under the rubric of "equity."  For the reasons explained above, the Court rejects Samsung's arguments regarding waiver and lack of notice.  Samsung's speculative allegations regarding Apple's motives do not affect Apple's entitlement to remedies.

### 3.    Judicial Resources

The parties argue about whether imposing ongoing royalties would waste or conserve judicial resources.  These arguments boil down to two issues: (1) whether there is any continuing infringement of the '172, '721, and '647 Patents, and (2) whether Apple can seek ongoing royalties

17

1    for Samsung products "not more than colorably different" from the devices that the jury found to

2    infringe.

<div align="center"><b>a.      Continuing Infringement</b></div>

4         Samsung claims that there is no need for continuing remedies because it no longer infringes

5    any of the '172, '721, and '647 Patents.  *See* ECF No. 1986-3 at 15.  According to Samsung, "[n]o

6    Samsung product released since 2012 has even been accused of infringing the '172 or '721

7    patents," and "Samsung long ago designed around these patents."  ECF No. 1986-3 at 15.  As to

8    the '647 Patent, Samsung represents that "post-verdict sales of the accused products in this case

9    have already ended," and that the only version of the Galaxy S III product on sale "incorporate[s]

10   different code" than the relevant infringing source code.  *Id.*

11        In support of these assertions, Samsung submits multiple declarations.  Corey Kerstetter,

12   Vice President of Business Planning at Samsung Telecommunications America ("STA"), avers that

13   STA has stopped importing into the United States the Admire, Galaxy Nexus, Galaxy Note, Galaxy

14   S II, Galaxy S II Epic 4G Touch, Galaxy SII Skyrocket, and Stratosphere accused products.  ECF

15   No. 2015-8 ("Kerstetter Decl.") ¶ 3.  Kerstetter does not represent that STA has stopped selling

16   these products.  However, Kerstetter does represent that STA has stopped selling the Galaxy Note

17   II and certain Galaxy S III models, though those products may have "retail availability."  *Id.* ¶¶ 4-5.

18   Samsung also submits declarations from Juhui Lee and Sungwoo Cho, both Samsung engineers,

19   who state that Samsung has changed the source code for the accused Browser and Messenger

20   applications, respectively, in any remaining Galaxy S III products.  ECF Nos. 2015-11 ("Lee

21   Decl."), 2015-12 ("Cho Decl.").  Finally, Samsung relies on a new declaration from its expert for

22   the '647 Patent, Dr. Kevin Jeffay, who opines based on the Lee and Cho Declarations that the

23   current versions of the Browser and Messenger applications in the Galaxy S III products do not

24   infringe asserted claim 9 of the '647 Patent.  ECF No. 2015-10 ("Jeffay Decl.") ¶¶ 39, 45, 52.

25        In response, Apple contends that Samsung's representations are insufficient to demonstrate

26   noninfringement, particularly regarding the '647 Patent.  *See* ECF No. 2001 at 12-13.  For

27   example, Apple faults Samsung for not guaranteeing that the accused source code is no longer

28   present in any Samsung products currently on the market.  ECF No. 2046-3 at 2.  Apple also

<div align="center">18</div>

<div style="writing-mode: vertical;"><b>United States District Court</b><br>For the Northern District of California</div>

United States District Court
For the Northern District of California

1  submits a declaration from its damages expert, Dr. Christopher Vellturo, who claims (based on

2  third-party investigations) that retailers are still offering the Galaxy S III and Galaxy Note II.  ECF

3  No. 1985-4 ("Vellturo Decl.") ¶¶ 9-10.  Generally, Apple asserts that "Samsung has not removed

4  the patented features entirely," but offers no specific evidence to prove continuing infringement.

5  ECF No. 2046-3 at 2.

6           Apple does not ask the Court to determine at this point whether Samsung continues to

7  infringe.  *See* ECF No. 2046-3 at 2.  Moreover, given the limited record regarding any post-verdict

8  infringement by Samsung, the Court declines to do so for purposes of this motion.  Regardless, if

9  Samsung is correct that it no longer infringes with respect to the adjudicated products, that fact

10  does not foreclose ongoing royalties.  If Samsung no longer imports or sells any of the adjudicated

11  products, then it does not need to pay any ongoing royalties and suffers no hardship from that

12  remedy.  Moreover, as this Court previously noted in connection with evaluating a permanent

13  injunction, the absence of current infringement does not foreclose future infringement: "The fact

14  that Samsung may have stopped selling infringing products for now says nothing about what

15  Samsung may choose to do in the future."  *Apple, Inc. v. Samsung Elecs. Co.*, 909 F. Supp. 2d

16  1147, 1161 (N.D. Cal. 2012), *aff'd in part*, 735 F.3d 1352 (Fed. Cir. 2013) (footnote omitted).

17  While Apple could resort to filing new lawsuits to address any continuing infringement, *see Aspex*

18  *Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1344 (Fed. Cir. 2012), ongoing royalties

19  may reduce unnecessary future litigation.  Thus, Samsung's assertions that it no longer infringes do

20  not prevent imposition of ongoing royalties.

21              **b.       Products "not more than colorably different"**

22           In its proposed order, Apple seeks ongoing royalties "as to products adjudicated to infringe

23  the '647, '172, and '721 patents, respectively, and as to products not more than colorably different

24  therefrom."  ECF No. 1959.  Samsung protests that this proposed language is overly broad and will

25  "perpetuate satellite litigation" about whether unaccused Samsung products are "colorably

26  different" from the accused infringing products.  *See* ECF No. 1986-3 at 16-17.  Samsung claims

27  that Apple has initiated costly enforcement proceedings at the International Trade Commission

28  against other competitors after obtaining exclusion orders against certain products.  *Id.*

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

Samsung's concerns are premature.  In the injunction context, this Court has already observed that the "not more than colorably different" provision is standard in injunctions.  ECF No. 1954 at 38.  The Federal Circuit has explained and applied this standard for contempt proceedings regarding injunctions.  *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (en banc) ("Instead of focusing solely on infringement, the contempt analysis must focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products.").  Several district courts have used this language when imposing ongoing royalties.  For example, in *Bianco v. Globus Medical, Inc.*, Federal Circuit Judge William Bryson (sitting by designation) ordered ongoing royalties for trade secret misappropriation, noting that "[a]n order basing ongoing royalty payments on future sales of those three products implicitly extends to any products that are not colorably different from those products."  No. 2:12-CV-00147-WCB, 2014 U.S. Dist. LEXIS 89777, at *36-37 (E.D. Tex. July 1, 2014); *see also VirnetX Inc. v. Apple Inc.*, No. 6:13-CV-211, 2014 U.S. Dist. LEXIS 159013, at *16 (E.D. Tex. Mar. 6, 2014) (including "products not colorably different from those adjudicated at trial") (*rev'd in part*, 767 F.3d 1308 (Fed. Cir. 2014)); *Mondis*, 2012 U.S. Dist. LEXIS 60004, at *7-8 (same); *Creative*, 674 F. Supp. 2d at 854.

Samsung cites *Fractus, S.A. v. Samsung Electronics Co.* as an example where a court refused to employ the "not colorably different" language and limited ongoing royalties to "adjudicated models."  No. 6:09-CV-203, 2013 WL 1136964, at *3 (E.D. Tex. Mar. 15, 2013). There, the plaintiff argued that "at least 25 unadjudicated but not 'colorably different' phones should be considered in the ongoing royalty rate analysis," and that "this number could increase" after discovery.  *Id.* at *2.  The district court decided not to include this "elusive target" in the ongoing royalty analysis, but "without prejudice to Fractus filing a separate action involving these products."  *Id.*  While the *Fractus* court exercised its discretion to decline to adjudicate products that were "not colorably different," as noted above, most other courts have adjudicated "not colorably different" products.  Moreover, the *Fractus* court recognized that the plaintiff could simply file new lawsuits to target new infringing products.  Similarly, Apple could file new lawsuits against Samsung for future infringement.  Samsung does not address the likelihood that

20

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

new enforcement lawsuits by Apple would require the "further motion practice, discovery and expert disputes" that Samsung decries here.  ECF No. 1986-3 at 17-18.

Samsung also argues that Apple's proposed language for ongoing royalties is "far broader even than what it proposed for its permanent injunction" because Apple tried to enjoin only "features," not "products."  *Id.* at 17.  In its proposed permanent injunction, Apple targeted "software or code capable of implementing any Infringing Feature, and/or any feature not more than colorably different therefrom."  ECF No. 1895-4.  This Court noted that Apple's proposed injunction was relatively narrow because it "targets only specific features, not entire products."  ECF No. 1954 at 38.  Such narrowing was appropriate because Apple sought to enjoin a variety of activities such as "developing, designing, [or] testing" source code "capable of implementing any Infringing Feature."  ECF No. 1895-4.

Here, Apple seeks ongoing royalties for "products not more than colorably different therefrom."  ECF No. 1959.  Apple does not respond to Samsung's objection, but Apple indicates that it wants royalties for "products with the software found to infringe or software that is not more than colorably different therefrom."  ECF No. 2001 at 14.  The Court is not convinced by Samsung's assertion that Apple's request is "far broader" than the proposed permanent injunction.  The Federal Circuit explained that the "not colorably different" inquiry focuses on "the features relied upon to establish infringement."  *TiVo*, 646 F.3d at 882.  Thus, any analysis of future Samsung products would necessarily focus on the relevant infringing features.  The jury heard considerable evidence regarding the value of the infringing features, so the verdict reflects the jury's apportionment of the value of those features to the adjudicated products.  Applying ongoing royalties by product instead of feature is reasonable under these circumstances.

### 5.    The Jury Verdict

Finally, Samsung argues that the jury's damages verdict reflects a lump sum, which means that Apple has received a one-time compensation for all past and future infringement.  *See* ECF No. 1986-3 at 18.  Furthermore, Samsung contends that if the jury verdict is ambiguous, it is impossible to award ongoing royalties.  *See id.* at 18-19; ECF No. 2015-2 at 1.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1      Samsung has already raised and lost this argument.  In opposing Apple's earlier request for

2 supplemental damages, Samsung argued that the jury must have awarded a lump sum instead of a

3 per-unit royalty.  The Court rejected this theory because the verdict contains no express statement

4 about whether the damages award encompasses future infringement, the verdict form chart with

5 respect to the Galaxy S II products referred to sales up to the "Present," and Dr. Chevalier also

6 presented a per-unit reasonable royalty theory at trial.  *See* ECF No. 1963 at 19-22 (citing

7 *Telcordia*, 612 F.3d at 1378, and *Whitserve*, 694 F.3d at 35-38).  For these reasons, the Court

8 previously concluded that: "Because the record suggests it is plausible that the jury intended to

9 award Apple damages only for past infringing sales, the Court cannot conclude that the jury

10 necessarily awarded a lump-sum award intended to cover past and future infringement."  *Id.* at 22.

11 Accordingly, the Court awarded supplemental damages.[6]  For the same reasons, the Court

12 disagrees with Samsung's interpretation of the jury verdict.

13              **6.       Summary of Entitlement to Ongoing Royalties**

14      Apple has not received compensation for any continuing infringement by Samsung.  *See*

15 *Telcordia*, 612 F.3d at 1379 (stating that "an ongoing royalty is appropriate" because the patentee

16 "has not been compensated for . . . continuing infringement").  Without ongoing royalties, there is

17 an increased chance of duplicative litigation and successive lawsuits.  Exercising its equitable

18 discretion, the Court finds that Apple should receive ongoing royalties under these circumstances.

19 However, the Court restricts any ongoing royalties to the period after entry of final judgment

20 because Apple has already obtained entitlement to supplemental damages for post-verdict, pre-

21 judgment infringement.

22           **C.       Amount of Ongoing Royalties**

23      The Court now addresses the proper calculation of ongoing royalties.  The Federal Circuit

24 has recommended that "the district court may wish to allow the parties to negotiate a license

---

25  [6]      Samsung claims that when the jury recalculated damages for the Galaxy S II products under
26 the '172 Patent (*see* ECF No. 1884 at 9), the jury only reallocated damages without changing the
total award, which indicates a lump sum.  *See* ECF No. 2015-2 at 1.  The Court already rejected
27 this speculative argument (*see* ECF No. 1963 at 21 n.7).  The jury might have made a mistake in its
first calculation, and then applied a per-unit rate when recalculating damages.  Indeed, as shown in
28 the charts below, the jury's updated verdict reflects a nearly uniform per-unit royalty for all
adjudicated products under the '172 Patent.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

United States District Court
For the Northern District of California

amongst themselves regarding future use of a patented invention before imposing an ongoing royalty." *Paice*, 504 F.3d at 1316; *see also id.* at 1316-17 (Rader, J., concurring) (suggesting that negotiation be a requirement). District courts have followed this recommendation by ordering private negotiations. *E.g.*, *Hynix*, 609 F. Supp. 2d at 987.

Here, these parties have been negotiating on and off since August 2010, or well over four years. *See* Tr. at 1046:16-21. The Court has presided over three jury trials between these parties (in the above-captioned case and in Case No. 11-CV-01846) and ordered private negotiations multiple times. After the May 5, 2014 jury verdict, the parties conducted further negotiations, but to no avail. *See* ECF No. 1894. In August 2014, Apple and Samsung settled all of their worldwide patent disputes, except their U.S. litigations. *See* Vellturo Decl. ¶ 46. Furthermore, the briefs here demonstrate that the parties still vigorously dispute ongoing royalties and disagree on almost all issues. Therefore, the parties' behavior indicates that any order to negotiate ongoing royalties is likely to be futile and only delay the entry of final judgment. The Court therefore determines ongoing royalty rates from the briefing.

As noted above, the Federal Circuit has held that "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement," and that "the calculus is markedly different because different economic factors are involved." *Amado*, 517 F.3d at 1361-62. A district court may consider "additional evidence of changes in the parties' bargaining positions and other economic circumstances that may be of value in determining an appropriate ongoing royalty." *ActiveVideo*, 694 F.3d at 1343. "[T]he Federal Circuit has not delineated specific economic factors for courts to assess in an ongoing royalty context." *Telcordia*, 2014 U.S. Dist. LEXIS 51076, at *5. However, in *Bard*, the Federal Circuit approved certain case-specific factors: "The court also considered other economic factors, including that Bard and Gore compete directly with respect to surgical grafts, Gore profits highly from its infringing products, Gore potentially faces stiffer losses that include a permanent injunction if Bard prevails in a second lawsuit, and Bard seeks adequate compensation and lacks incentive to accept a below-market deal." 670 F.3d at 1193.

23

Courts have used the *Georgia-Pacific* factors to evaluate a post-verdict hypothetical negotiation for ongoing royalties. As Judge Bryson stated, "the courts have often used the so-called *Georgia-Pacific* factors in assessing how the changed circumstances would produce a royalty rate in a hypothetical post-verdict licensing negotiation that was different from the royalty rate the jury selected based on a hypothetical licensing negotiation at the outset of infringement." *Bianco*, 2014 U.S. Dist. LEXIS 89777, at *8 (Bryson, J.). Accordingly, to assess ongoing royalties, the Court considers the law regarding reasonable royalties under *Georgia-Pacific*. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

### 1. Rates in the Jury Verdict

Generally, the jury's damages award is a starting point for evaluating ongoing royalties. *See Bard*, 670 F.3d at 1193 (affirming ongoing royalty that "'should be higher than the 10% reasonable royalty rate' set by the jury"); *Bianco*, 2014 U.S. Dist. LEXIS 89777, at *7 (noting that the Eastern District of Texas has "consistently looked to the jury's verdict as the 'starting point' for determining postjudgment damages"); *Telcordia*, 2014 U.S. Dist. LEXIS 51076, at *13 ("[C]ourts frequently impose a post-verdict ongoing royalty rate that is higher than the reasonable royalty found at trial for past infringement."). Here, the parties argue about what royalty rates the jury might have intended to award Apple. The jury awarded aggregate damages for each product found to infringe each patent, but did not specify any per-unit rate. ECF No. 1884 at 9. In interpreting an ambiguous verdict form, this Court has "broad discretion" to determine if "the verdict figure represented past infringement as well as ongoing infringement." *Telcordia*, 612 F.3d at 1378; *see also Whitserve*, 694 F.3d at 35-38.

Apple seeks per-unit royalty rates of $2.75 for the '647 Patent, $1.41 for the '721 Patent, and $2.30 for the '172 Patent, for both adjudicated products and all "not more than colorably different" products. ECF No. 1959. To arrive at these rates, Dr. Velluro reverse engineers the jury's verdict. Velluro Decl. ¶¶ 13-22. Dr. Velluro attempts to explain the verdict by dividing the jury's award for each product by his own proposed reasonable royalties to determine what percentage of his proposal the jury applied. *Id.* ¶ 16. Dr. Velluro concludes: "(1) the jury reached agreement on per-unit royalties for each patent, (2) the jury calculated the ratio between its rates

24

and my royalty rates; (3) the jury applied those ratios to the reasonable royalty damages for each product provided at PX222A1.24, which was discussed during closing arguments; and (4) the jury modified the amount in the last line ('Stratosphere') to obtain a round total damages figure to be included in the answer to question 9 on the Amended Final Verdict." *Id.* ¶ 18.  As an example, Dr. Vellturo determines that the jury awarded 22% of his proposed royalties for the '647 Patent.  *Id.* ¶ 16.  Based on this ratio, Dr. Vellturo multiplies his original proposed per-unit royalty for the '647 Patent ($12.49) by 22% to reach a per-unit rate of $2.75.  *Id.* ¶ 17.

Samsung interprets the verdict differently.  Dr. Chevalier renews Samsung's argument that the jury must have awarded a lump-sum royalty, not a per-unit royalty—an argument that this Court has rejected.  ECF No. 2015-9 ("Chevalier Decl.") ¶¶ 13-14.  Next, Dr. Chevalier disagrees with Dr. Vellturo's calculations from the jury verdict because they do not explain the actual damages award.  *See id.* ¶ 10.  For the '647 Patent, for example, Dr. Chevalier claims that Dr. Vellturo's formula does not produce the jury's award for Samsung's Admire product:

$$= \left[ \begin{pmatrix} \text{jury agreed per} \\ \text{unit royalty rate} \\ \text{for '647 patent} \end{pmatrix} \Big/ \begin{pmatrix} \text{Dr. Vellturo's per} \\ \text{unit royalty rate} \\ \text{for '647 patent} \end{pmatrix} \right] * \begin{bmatrix} \text{damages figure for} \\ \text{Admire on '647 patent} \\ \text{from PX222A1} \end{bmatrix}$$
$$= \left[ (\$2.75/\text{unit}) \Big/ (\$12.49/\text{unit}) \right] * \left[ \$34,096,139 \right]$$
$$= \$7,507,156.31$$

*Id.* ¶ 9.  Dr. Chevalier notes that the jury actually awarded $7,599,178, which exceeds Dr. Vellturo's estimate by $92,021.69 (or about 1.2%).  *Id.* ¶ 10; *see also id.* Ex. 2.

Although Apple's estimated per-unit rates are roughly consistent with the jury verdict, the Court finds no basis for estimating the per-unit royalties as Apple suggests.  The jury verdict and undisputed numbers of infringing units (shown in Dr. Vellturo's Exhibit 3) reflect the following per-unit rates for the adjudicated products:

| '647 Patent | Award | Units | Rate (Award/Units) |
| --- | --- | --- | --- |
| Admire | $7,599,178 | ▮ | ▮ |
| Galaxy Nexus | $3,158,100 | ▮ | ▮ |
| Galaxy Note | $1,677,740 | ▮ | ▮ |
| Galaxy Note II | $8,684,775 | ▮ | ▮ |
| Galaxy S II (AT&T / T-Mobile) | $8,625,560 | ▮ | ▮ |
| Galaxy S II Epic 4G Touch | $10,165,134 | ▮ | ▮ |

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

United States District Court
For the Northern District of California

| | | | |
|---|---|---|---|
| Galaxy S II Skyrocket | $2,467,265 | ⬛ | |
| Galaxy S III | $52,404,721 | ⬛ | |
| Stratosphere | $3,908,152 | ⬛ | |
| **Total** | **$98,690,625** | ⬛ | |

| '721 Patent | Award | Units | Rate (Award/Units) |
|---|---|---|---|
| Admire | $1,372,696 | ⬛ | |
| Galaxy Nexus | $867,281 | ⬛ | |
| Stratosphere | $750,648 | ⬛ | |
| **Total** | **$2,990,625** | ⬛ | |

| '172 Patent | Award | Units | Rate (Award/Units) |
|---|---|---|---|
| Admire | $2,655,675 | ⬛ | |
| Galaxy Nexus | $1,579,050 | ⬛ | |
| Galaxy Note | $1,166,343 | ⬛ | |
| Galaxy S II (AT&T / T-Mobile) | $4,019,400 | ⬛ | |
| Galaxy S II Epic 4G Touch | $5,849,662 | ⬛ | |
| Galaxy S II Skyrocket | $1,178,904 | ⬛ | |
| Stratosphere | $1,494,716 | ⬛ | |
| **Total** | **$17,943,750** | ⬛ | |

*See* Vellturo Decl. Ex. 3 (ECF No. 1985-7).  Instead of simply dividing the damages award for

each product by the number of units as shown above, Dr. Vellturo uses a more complicated

approach: dividing the jury's award by his proposed award, and then multiplying the resulting ratio

against his proposed per-unit rate. *See* Vellturo Decl. ¶ 17.  Dr. Vellturo claims that it is

inappropriate to divide the damages for each product by the number of units because it "results in

per-unit rates that vary for each product." *Id.* ¶ 21.  He claims that this approach does not explain

the jury's actions because "there is no reason to believe that the jury would adopt a different

royalty rate for each different combination of a patent and a product," and no witness or lawyer

told the jury to calculate damages this way. *Id.* ¶ 22.  Dr. Vellturo further defends his approach

because it purportedly reflects "round" figures for two of the patents, which a lay jury would more

likely apply. *Id.* ¶ 17.

    The Court finds no basis for adopting Dr. Vellturo's more complicated approach.  As Dr.

Chevalier observes, Dr. Vellturo's method does not produce the numbers that the jury actually

awarded.  Dr. Vellturo's calculations rely on unsupported speculation as to how the jury computed

damages.  For example, Dr. Vellturo admits that his reverse-engineered rate for the '721 Patent is

not a "round" figure, but speculates that this rate "may reflect a decision to approximate a number that is seven-eighths of the royalty rate I proposed." *Id.* ¶ 17 & n.26.  However, he provides no grounds for this guesswork.[7]  Indeed, in briefing its motion for judgment as a matter of law, Apple claimed that it was not possible to deconstruct the verdict because "[t]he jury may have awarded a lump sum, a running royalty, some of Apple's lost profits, or a combination of these and/or other theories."  ECF No. 1918 at 6 n.4.  Furthermore, Dr. Vellturo's approach would apply the same rate to each future sale of any adjudicated product for a given patent.  In other words, Dr. Vellturo would use a $2.75 rate under the '647 Patent for a future sale of the Galaxy S III, even though the verdict reflects a lower actual rate of ████.  This approximation is unnecessary because the verdict allows the Court to determine rates for each product, not just an average rate per patent across all products.  Thus, the Court finds that the most straightforward and reliable way to determine per-unit rates for the adjudicated products is to divide damages for each product by the number of units.  For the adjudicated products, the Court uses these per-unit royalty rates as the starting point for ongoing royalties.

For any products that are "not more than colorably different" from the adjudicated products, the Court concludes that the most appropriate rates are determined by dividing the total damages for each patent by the total number of infringing products for that patent.  This calculation shows the average per-unit rate that the jury awarded for a given patent, across all adjudicated products for that patent.  Thus, these rates show what the jury awarded on average for infringement of each patent, which is a reasonable starting point for royalties for unadjudicated products that are "not more than colorably different."  As shown in the tables above, these calculations produce rates of ████ for the '647 Patent, ████ for the '721 Patent, and ████ for the '172 Patent.  ███████████████████████████████████████████████████████████████████  However, the Court rejects Dr. Vellturo's approach for the reasons above.

---

[7]     Dr. Vellturo assumes that the jury applied a percentage to the reasonable royalties he proposed at trial.  However, the jury's numbers are also consistent with applying a multiple of Dr. Chevalier's proposed reasonable royalties.  *See* DX 453A.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

## 2.    Changed Circumstances

Having determined starting points for ongoing royalties based on the verdict, the Court next considers any "changes in the parties' bargaining positions and other economic circumstances" that may warrant departure from those rates. *ActiveVideo*, 694 F.3d at 1343. The original hypothetical negotiations for the infringed patents would have occurred in late 2011. *See* Vellturo Decl. ¶ 29. In setting ongoing royalties, courts have used a second hypothetical negotiation following the verdict.[8] *E.g.*, *Carnegie Mellon*, 2014 U.S. Dist. LEXIS 43042, at *119 (evaluating "hypothetical negotiation" after verdict); *Depuy*, 2014 U.S. Dist. LEXIS 61450, at *24 n.8 (analyzing "post-verdict hypothetical negotiation"). Here, both parties' experts analyze various *Georgia-Pacific* factors that could affect the verdict rates. However, Apple does not seek higher rates: "to be conservative, Apple only seeks ongoing royalties consistent with the amounts awarded by the jury." ECF No. 1985-3 at 2. Samsung claims that the verdict rates "should be adjusted downward by 57 to 75 percent to account for changes from 2011 to 2014." ECF No. 2015-2 at 2.

As an initial matter, the Federal Circuit has counseled that a liability verdict causes "a substantial shift in the bargaining position of the parties" because it places the patentee in a stronger negotiating position. *ActiveVideo*, 694 F.3d at 1342. "Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." *Amado*, 517 F.3d at 1362; *see also Bard*, 670 F.3d at 1193 (quoting *id.* and affirming ongoing royalty rate higher than jury's). Therefore, Apple would have a stronger position in a post-verdict hypothetical negotiation than it did before, which favors relatively higher ongoing royalty rates. With this background in mind, the Court turns to the disputed *Georgia-Pacific* factors.

---

[8]    Dr. Vellturo refers to a hypothetical negotiation "as of summer or fall 2014." Vellturo Decl. ¶ 25. Dr. Chevalier assumes "late 2014," but states that her analysis "is not sensitive to when in 2014, after trial, the hypothetical negotiation occurs." Chevalier Decl. ¶ 16 & n.21. Neither party's expert has identified any changed circumstances between "summer or fall 2014" and "late 2014," or between the completion of briefing (October 15, 2014) and this Order, that would affect the result here.

United States District Court
For the Northern District of California

### a.   *Georgia-Pacific* Factor 5

The experts first address factor 5: "The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter." *Georgia-Pacific*, 318 F. Supp. at 1120.  Dr. Vellturo opines that changes in the smartphone market between 2011 and 2014 tend to support a higher royalty.  *See* Vellturo Decl. ¶¶ 26-34.  He cites data showing that total smartphones sold in the U.S. increased from 105 million in 2011 to 137 million in 2013.  *Id.* ¶ 27.  He also claims that Apple and Samsung's combined share of U.S. smartphone shipments rose from 40% in 2011 to 70% in 2013, and that Samsung's share also rose from 20% to 30% over that time.  *Id.* ¶ 29.  Dr. Vellturo further notes that Samsung has "grown more dominant" and pushed out other smartphone competitors, intensifying competition with Apple.  *Id.* ¶¶ 33-34.  He also states that the Galaxy S III was particularly successful, both as to units sold and profits, and therefore particularly harmed Apple. *See id.* ¶ 30.  Overall, Dr. Vellturo claims that the expanding market and increased competition would favor a relatively high royalty.

In response, Dr. Chevalier argues that Apple already presented this evidence to the jury, so "there is no meaningful change in the relative competitiveness between Apple and Samsung." Chevalier Decl. ¶ 21.  Dr. Chevalier is correct that Dr. Vellturo already presented some of his cited evidence.  At trial, Dr. Vellturo relied on evidence arising after 2011 regarding the parties' competitiveness.  *See* Tr. at 1213:20-1214:22 (referring to competition during period of infringement, "August 2011 through the end of 2013").  In his current declaration, for data regarding total smartphone sales and the market share of all smartphone manufacturers, Dr. Vellturo simply refers to his pretrial supplemental expert report.  *See* Vellturo Decl. ¶ 27 & n.33, ¶ 33 & nn. 42-43.   However, Dr. Vellturo does provide the market share data of all smartphone manufacturers through the second quarter of 2014, information that was not before the jury.  Dr. Vellturo gets this data from online articles and blog posts dated after the trial.  *See id.* ¶ 31 & nn.35-37 (citing http://www.patentlyapple.com/patently-apple/2014/08/samsung-temporarily-beats-apple-in-us-smartphone-shipments.html (Aug. 6, 2014)).  These new articles reference market research reports but do not provide the methodology or underlying data for such reports.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

1    Accordingly, this factor weighs only slightly in favor of Apple.

2         **b.    *Georgia-Pacific* Factors 9, 10, and 11**

3         Next, Apple's expert discusses factors 9-11: "9. The utility and advantages of the patent

4    property over the old modes or devices, if any, that had been used for working out similar results.

5    10. The nature of the patented invention; the character of the commercial embodiment of it as

6    owned and produced by the licensor; and the benefits to those who have used the invention.

7    11. The extent to which the infringer has made use of the invention; and any evidence probative of

8    the value of that use." *Georgia-Pacific*, 318 F. Supp. at 1120.  Dr. Velluro groups these factors

9    together and analyzes them with the assumption that Samsung continues to infringe the '647

10   Patent.  *See* Velluro Decl. ¶ 39 ("Samsung has continued to sell the Galaxy S3 without

11   implementing any alternative to the '647 patent's technology.").  He claims that under the "theory

12   of revealed preference" (which he previously invoked at trial, *see* Tr. at 1250:10-1251:11),

13   Samsung's continued infringement demonstrates that it values the patented features.  *See id.* ¶ 36.

14   He also notes separate proceedings involving the '647 Patent: that asserted claim 9 was confirmed

15   during reexamination, and that the Federal Circuit affirmed certain claim constructions in *Apple,*

16   *Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014).  *See id.* ¶ 37.  Dr. Velluro also notes

17   Samsung's statements at trial that Samsung could easily design around the asserted patents.  *See id.*

18   ¶¶ 40-42.

19        Dr. Chevalier responds with a single argument: to the extent Samsung continues to infringe,

20   Samsung might choose to do so for reasons other than the value of the patented inventions.  *See*

21   Chevalier Decl. ¶¶ 22-26.  As examples, she notes that Samsung might not want Apple to dictate

22   the features in their products and avoid "[a]cquiescing to the demands of a competitor," citing her

23   own trial testimony.  *Id.* ¶ 25 & n.43.  As noted above, Samsung also represents that it no longer

24   infringes any of the three disputed patents.

25        The Court finds Apple's position more persuasive.  As Dr. Velluro notes, ongoing royalties

26   would apply only if Samsung continues to infringe.  *See* Velluro Decl. ¶ 44.  This Court previously

27   noted that "Samsung's witnesses repeatedly told the jury that design-arounds would be simple or

28   already exist."  ECF No. 1954 at 36.  Thus, there is little reason for Samsung to continue any

30

1    infringement.  Dr. Chevalier's arguments about alternative motivations for continuing infringement

2    are speculative and contrary to Samsung's repeated trial statements about the ease of design-

3    arounds.  For these reasons, the Court finds that these factors favor Apple.

### c.    *Georgia-Pacific* Factors 8 and 12

5            To reduce ongoing royalty rates, Dr. Chevalier applies factors 8 ("The established

6    profitability of the product made under the patent; its commercial success; and its current

7    popularity.") and 12 ("The portion of the profit or of the selling price that may be customary in the

8    particular business or in comparable businesses to allow for the use of the invention or analogous

9    inventions.").  *Georgia-Pacific*, 318 F. Supp. at 1120.  Overall, Dr. Chevalier's opinion regarding

10   these factors is that ███████████████████████████████████████, and thus

11   warrant lower royalties.

12           Dr. Chevalier claims that Dr. Vellturo previously opined that the 2011-12 time frame was

13   "critical" for Samsung's competition with Apple.  *See* Chevalier Decl. ¶¶ 28-29.  Dr. Vellturo told

14   the jury that many U.S. consumers were expected to buy their first smartphone in 2012, and that

15   "this is the time period where the competition between Samsung and Apple's about to intensify

16   because the accused units now are being launched into the marketplace" because "the competition

17   for first-time buyers is particularly important."  Tr. at 1234:9-1235:1.  He also testified that "the

18   Fall of 2011 is an extremely important time in this marketplace because the market is growing very

19   fast for smartphones and a lot of people are buying their first smartphone."  *Id.* at 1306:24-1307:14.

20   Dr. Vellturo argued that "ecosystem effects" would drive up damages for Apple because customers

21   tend to show product loyalty.  *Id.* at 1308:7-18.  According to Dr. Chevalier, Dr. Vellturo failed to

22   account for the fact that this critical time "has already passed by the time of a hypothetical

23   negotiation in late 2014."  Chevalier Decl. ¶ 34.  She claims that the proportion of first-time

24   smartphone buyers has likely decreased since 2011.  *See id.* ¶ 32.  She further claims that both

25   parties' smartphones ███████████████████████.  *See id.* ¶ 36.

26           Samsung's arguments do not carry much weight.  Dr. Vellturo did not analyze these factors

27   for purposes of ongoing royalties, and his trial testimony did indicate that capturing first-time

28   buyers in 2011-12 was particularly important, which would have increased Apple's expected

31

United States District Court
For the Northern District of California

royalties for the hypothetical negotiation in 2011.  However, Dr. Vellturo did not testify that later periods (including the post-verdict time frame) would not also be critical to competition.  Rather, he explained that "August 2011 through the end of 2013" was a "particularly significant period" because the market was "in a profound state of change and growth."  Tr. at 1213:20-1214:10.  In turn, Dr. Chevalier identifies no evidence that competition has become less "critical" following the verdict, or that the "critical phase" "has already passed."  Even if the proportion of first-time buyers has decreased, the absolute number of such buyers may still be high.  She claims that ███████████████████████████.  However, she cites data that she previously presented in her pretrial expert reports.  *See* Chevalier Decl. ¶ 36 & nn. 63, 64, 66; *see also* Tr. at 2424:10-18 (discussing profitability of Samsung products).  Thus, her argument is subject to the same criticism she leveled at Dr. Vellturo's market share evidence above—that this data was already available to the jury and does not reflect any changed circumstances.

Accordingly, Dr. Chevalier's analysis of factors 8 and 12 provides little support for reducing ongoing royalty rates.  The Court finds that these factors are roughly neutral.

### d. *Georgia-Pacific* Factor 6

Factor 6 addresses: "The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales."  *Georgia-Pacific*, 318 F. Supp. at 1120.  Dr. Chevalier applies the same arguments she raises for factors 8 and 12, targeting Dr. Vellturo's use of ecosystem effects.  *See* Chevalier Decl. ¶¶ 37-38.  She faults Dr. Vellturo for failing to account for a predicted decline in the proportion of first-time smartphone buyers in 2014-15, which may reduce any ecosystem effects.  *See id.* ¶ 38.  For the reasons stated above regarding factors 8 and 12, this analysis has limited persuasive value.  While Dr. Vellturo did not address this factor for purposes of ongoing royalties, Dr. Chevalier does not cite any new evidence that customer loyalty or other factors influencing ecosystem effects have changed in the post-verdict time period.  Due to this lack of evidence regarding changed circumstances, the Court finds that this factor is roughly neutral.

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES

United States District Court
For the Northern District of California

### e.   *Georgia-Pacific* Factors 1 and 4

Both experts discuss Apple's patent license agreements that have been executed post-verdict.  Dr. Vellturo analyzes this under the rubric of factor 1: "The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty."  *Georgia-Pacific*, 318 F. Supp. at 1120.  Dr. Chevalier addresses this more generally under factor 4: "The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly."  *Id.*  Both sides refer to two patent agreements: (1) Apple and Samsung's August 2014 "worldwide stand-down," in which the parties settled all patent disputes outside the United States, and (2) Apple's May 2014 agreement with Google and Motorola Mobility to settle all U.S. smartphone patent litigation.  *See* Vellturo Decl. ¶¶ 46-47; Chevalier Decl. ¶¶ 40-41.

Dr. Vellturo briefly states that "neither agreement is relevant" because they involve different circumstances, and "no values were placed on any specific intellectual property."  Vellturo Decl. ¶¶ 45, 48.  On the other hand, Dr. Chevalier claims that these two settlements "represent a distinct shift in Apple's patent policy" and "reflect a lessening of tensions between competitors in the 'smartphone wars' as compared to the period from 2011 through trial and suggest an increased willingness to reach agreements with competitors."  Chevalier Decl. ¶ 42.

The Court finds that these factors are roughly neutral.  The parties provide no information about the terms of the two agreements that would enable comparisons to the circumstances of this case.  For example, if those two agreements addressed litigations that had not yet reached verdicts, they may not reflect comparable situations.  Both experts provide only conclusory statements regarding Apple's settlement agreements.  Dr. Chevalier does not explain how these agreements represent a "shift" in comparison to Apple's prior stances and does not compare these agreements to Apple's earlier settlement agreements with other companies.  This lack of information renders these factors roughly neutral.

### f.   *Georgia-Pacific* Factor 13

The last factor addressed is: "The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business

33

United States District Court
For the Northern District of California

1   risks, or significant features or improvements added by the infringer." *Georgia-Pacific*, 318 F.

2   Supp. at 1120.  Dr. Chevalier states that the Galaxy S III has received upgrades to the Android

3   operating system, with "dozens of new features" not covered by the asserted patents.  Chevalier

4   Decl. ¶¶ 43-45.  "As the number of features included in the Android operating system continues to

5   grow with each software update, the portion of the overall software functionality covered by the

6   patents-at-issue can only decrease." *Id.* ¶ 45.  This factor slightly favors Samsung.  Dr. Vellturo

7   does not address any changes to the adjudicated products, and Dr. Chevalier identifies new features

8   that may make the patented features relatively less important than they were at the time of the first

9   hypothetical royalty negotiation.  However, Dr. Chevalier is not a technical expert and provides

10  only a cursory assessment of changes to the Galaxy S III, without addressing the relative

11  importance of the new features or the extent to which customers have upgraded their phones.  For

12  these reasons, this factor favors Samsung only slightly.

### 3.   Overall Royalty Rates

14          Apple seeks rates consistent with the verdict, conceding that most of the evidence that the

15  experts cited was "already presented at trial or in prior expert reports," which "confirms the

16  wisdom and conservatism inherent in using rates that preserve, rather than enhance, what that jury

17  awarded."  ECF No. 2046-3 at 2.  However, Samsung believes that any ongoing royalties should be

18  discounted by 57-75%.  Dr. Chevalier computes these discounts by using formulas that Dr.

19  Vellturo presented to the jury to quantify his reasonable royalty analysis.  *See* Tr. at 1315-18.  Dr.

20  Chevalier changes "three numerical inputs" for the formulas: the profitability of the iPhone, the

21  decline in price of the Galaxy S III, and "the diminishing share of first-time buyers going forward

22  from a 2014 hypothetical negotiation as compared to a 2011 hypothetical negotiation."  ECF No.

23  2015-2 at 2; Chevalier Decl. ¶ 47.  She uses two alternative calculations, one based on projected

24  2014 iPhone profits (Ex. 4), the other using profits of the lowest-priced iPhone that is "most likely

25  to compete with the Galaxy S III" (Ex. 5).  Chevalier Decl. ¶ 47.  With her modified inputs, Dr.

26  Chevalier concludes that the royalty rates should be reduced by either 59% or 75% for the '647

27  Patent, and either 57% or 74% for the '721 and '172 Patents.  *Id.* Exs. 4, 5.  As one example, Dr.

28  Chevalier's modified inputs reduce Apple's "willingness to accept rate" for the '647 Patent from

34

United States District Court
For the Northern District of California

$12.49 (the number that Dr. Vellturo originally proposed at trial) to $5.09, for a discount of 59%. *Id.* Ex. 4. Without explanation, she applies the same discount to the $2.75 rate that Dr. Vellturo claims the jury actually awarded, to produce a rate of $1.12. *Id.*

Dr. Chevalier's analysis is not persuasive. First, her analysis is limited to modifying the inputs for Dr. Vellturo's formulas based on her conclusion that "Dr. Vellturo ignored key changes in the marketplace." *Id.* ¶ 46. However, the jury awarded significantly less for each patent than Dr. Vellturo recommended, so there is no indication that the jury applied Dr. Vellturo's formulas (or applied the royalty rates that Dr. Chevalier proposed at trial). Accordingly, Dr. Chevalier provides no basis for applying her discounts to the jury's rates, as opposed to Dr. Vellturo's original rates. Second, in modifying inputs, Dr. Chevalier reduces the price of the Galaxy S III, and uses only the Galaxy S III and Galaxy S II Epic 4G Touch as representative products. *See id.* Ex. 7. Even if Dr. Chevalier appropriately adjusts the price of the Galaxy S III, she provides no explanation for why this particular discount should apply to all other adjudicated products, much less any newer products "not more than colorably different" that might infringe. Third, as explained above, the Court finds that certain *Georgia-Pacific* factors tend to support a relatively higher royalty rate, and Dr. Chevalier assumes no such factors in proposing her discounts.

Particularly, Dr. Chevalier and Samsung do not address the Federal Circuit's holding that in a post-verdict hypothetical negotiation, the patentee generally has a stronger position than before. Dr. Chevalier omits this factor entirely from her ongoing royalties analysis. Moreover, Samsung cites no case where a court awarded ongoing royalties at rates below the jury's. Rather, courts have generally awarded the same or higher rates for continuing infringement. *E.g.*, *Bard*, 670 F.3d at 1193 (affirming rates higher than jury's); *Depuy*, 2014 U.S. Dist. LEXIS 61450, at *24 n.8 (awarding higher rate); *Carnegie Mellon*, 2014 U.S. Dist. LEXIS 43042, at *119 (awarding same rate). This further counsels against the discounts that Samsung proposes.

After considering both parties' arguments, the supporting declarations and exhibits, applicable case law, and the record, the Court determines that the proper ongoing royalty rates are those reflected in the jury verdict. As explained above, *Georgia-Pacific* factors 5 and 9-11 favor Apple. Factors 8 and 12, 6, and 1 and 4 are roughly neutral. Factor 13 slightly favors Samsung.

35

United States District Court
For the Northern District of California

1    On balance, Samsung has not shown that any changed economic circumstances warrant reducing

2    the verdict rates.  Apple does not seek any rates higher than the jury verdict.  Accordingly, the rates

3    reflected in the verdict shall apply.

4          For the adjudicated products, the rates should be the figures obtained by dividing the jury's

5    award for each product by the corresponding number of units.  For any unadjudicated products "not

6    more than colorably different," the rates should be ████ for the '647 Patent, ████ for the '721

7    Patent, and ████ for the '172 Patent, for the reasons explained above.

8    **IV.    CONCLUSION**

9          For the foregoing reasons, the Court DENIES Samsung's request to stay resolution of

10   Apple's motion and GRANTS Apple's motion for ongoing royalties.  The Court determines that

11   Apple is entitled to ongoing royalties for any continuing infringement, in lieu of a permanent

12   injunction.  Those royalties shall apply to products adjudicated to infringe the '647, '172, or '721

13   Patents, and to products "not more than colorably different therefrom."  The starting date for any

14   ongoing royalties shall be after entry of final judgment in this case.  The ongoing royalty rates for

15   any adjudicated products shall be:

| Product | '647 Patent | '721 Patent | '172 Patent |
|---|---|---|---|
| Admire | ████ | ████ | ████ |
| Galaxy Nexus | ████ | ████ | ████ |
| Galaxy Note | ████ | --- | |
| Galaxy Note II | ████ | --- | --- |
| Galaxy S II (AT&T / T-Mobile) | ████ | --- | |
| Galaxy S II Epic 4G Touch | ████ | --- | |
| Galaxy S II Skyrocket | ████ | --- | |
| Galaxy S III | ████ | --- | --- |
| Galaxy Tab II 10.1 | --- | --- | --- |
| Stratosphere | ████ | ████ | ████ |

22   For any unadjudicated products "not more than colorably different," the rates shall be ████ for the

23   '647 Patent, ████ for the '721 Patent, and ████ for the '172 Patent.

24   **IT IS SO ORDERED.**

25   Dated: November 25, 2014

           *Lucy H. Koh*

26              LUCY H. KOH

           United States District Judge

27

28

Case No.: 5:12-CV-00630-LHK
ORDER GRANTING IN PART APPLE'S MOTION FOR ONGOING ROYALTIES