# EXHIBIT 69

## Unredacted Version of
## Document Sought to Be Sealed

Portions third-party Google seeks to seal are highlighted in blue.

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5    APPLE INC., a California

6    corporation,

7            Plaintiff,

8    vs.                          NO. 12-CV-00630-LHK

9    SAMSUNG ELECTRONICS CO., LTD.,

10   a Korean corporation; SAMSUNG

11   ELECTRONICS AMERICA, INC., a

12   New York corporation; SAMSUNG

13   TELECOMMUNICATIONS AMERICA,

14   LLC, a Delaware limited

15   liability company,

16            Defendants.

17                                   /

18    HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

19          30(b)(6) DEPOSITION OF GOOGLE, INC.

20          DESIGNEE:  HIROSHI LOCKHEIMER

21            REDWOOD SHORES, CALIFORNIA

22               FRIDAY, JULY 26, 2013

23   TSG Job # 64031

24   REPORTED BY:

25   JANIS JENNINGS, CSR No. 3942, CLR, CCRR

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 201

1  ██████████████████████████████

2  ████████████████████████████████████

3  ██████████████████████████████████

4  ████████████████████████████████

5  ████████████████████████                    15:28:44

6          MR. THOMASCH:  Again, I think I have a

7  30(b)(6) witness here and I'm entitled to know where

8  this list came from.  And if that means he has to

9  make a phone call to Dianne to find out whether she

10 put this together or whether it was done independent  15:28:59

11 of counsel or by counsel, the issue is really just

12 who's coming up with this.  We need to know what's

13 being done by who, and that's what 30(b)(6) is for.

14         MR. WARREN:  I don't think I agree with you

15 about that, but we'll take it under advisement and    15:29:15

16 we'll talk about it when we're not on the record,

17 unless you want to talk about it on the record.  But

18 it's your seven hours so I think you probably don't.

19         MR. THOMASCH:  No, I understand.  But if

20 we don't -- if we don't find out the genesis, then    15:29:26

21 there's going to be court procedures about getting

22 more hours because that's just so fundamental.

23         A witness can't come to a 30(b)(6) with a

24 document that he doesn't know the precise genesis

25 of.  It's totally appropriate to testify from notes.  15:29:41

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 202

1    It's no fault of the witnesses whatsoever.  But we

2    are entitled from Google to find out the genesis of

3    the options that are being laid out and not have the

4    witness come into an ongoing story.

5         MR. WARREN:  Okay.  Again, I want to talk      15:29:51

6    to my people about that so I'm not giving you an

7    answer at this time.  But I understand your position

8    and we will respond appropriately.

9         MR. THOMASCH:  Okay.

10   BY MR. THOMASCH:                                     15:30:03

11        Q.  Let's focus on the two entries on the first

12   page that relate to Quick Search Box.

13        A.  Okay.

14        Q.  And I'll break that down further and we'll

15   start with the top one.  It reads, "Only provide     15:30:26

16   search suggestions and search results from a web

17   search to the Quick Search Box; no local search

18   results would be provided."

19        Is that different from how you understood

20   Quick Search Box to function as of February 8, 2012?  15:30:47

21        MR. WARREN:  Objection.  Vague.

22        THE WITNESS:  So your question is February

23   8th, is it, 2012?

24   BY MR. THOMASCH:

25        Q.  Yes.                                         15:31:15

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 203

1    A.   Whether QSB was doing this cell here

2    (indicating)?

3    Q.   Did it operate as described in this cell or

4    did it operate differently?

5    A.   I believe it operated differently on        15:31:24

6    February 8th, 2012.

7    Q.   And on February 8th, 2012, how did it

8    operate?

9         MR. WARREN:  Objection.  Vague.  Incomplete

10   hypothetical.                                     15:31:38

11   BY MR. THOMASCH:

12   Q.   Just with respect to what is written about

13   what could be changed, tell me what it was like on

14   February 8th, 2012.

15        MR. WARREN:  Objection.  Vague.             15:31:46

16        THE WITNESS:  If your question is what is

17   it about the words in this cell that doesn't apply

18   to February 8th, 2012, the "no local search results

19   would be provided," I think there would be caveats

20   around that.                                      15:32:06

21   BY MR. THOMASCH:

22   Q.   Because as of February 8th, 2012, local

23   search results would be provided?

24   A.   I believe --

25        MR. WARREN:  Object -- I'm sorry.           15:32:12

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 204

1   Objection.   Incomplete hypothetical.

2           THE WITNESS:  I think there are

3   circumstances where it may have.  I don't remember

4   all the details so I don't know if it's an always

5   thing.  But there may have been times when local        15:32:23

6   results would have been displayed.

7   BY MR. THOMASCH:

8       Q.   Was this change in the first cell under

9   "Quick Search Box" actually implemented by Google

10  subsequent to February 8, 2012?                          15:32:46

11          MR. WARREN:  Objection.  Asked and answered.

12          THE WITNESS:  Your question is did we make

13  this change to make it match to what's written in

14  this cell after February 8th, 2012?  Is that right?

15  BY MR. THOMASCH:                                          15:33:00

16      Q.   Yes.

17      A.   Yes, that's my understanding.

18      Q.   When was the first time that you became

19  aware that anyone at Google was considering making

20  the change to Quick Search Box that is described in      15:33:29

21  this first cell?

22          MR. WARREN:  Objection.  Vague.

23          THE WITNESS:  I don't know if this is

24  the first time, but certainly we talked about

25  this Exhibit 5, I guess, that was -- well, sorry.        15:33:55

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 205

1    Exhibit 5 is the wrong one.  Exhibit 6, in June I

2    was aware roughly around that time.

3    BY MR. THOMASCH:

4        Q.   In preparation for your deposition, did

5    you speak with Mr. Inwood about when he first began    15:34:24

6    work on the change that ultimately became what is

7    described in the first cell of Quick Search Box on

8    Exhibit 4?

9            MR. WARREN:  Objection.  Asked and answered.

10           THE WITNESS:  I spoke with Bjorn who is    15:34:54

11   Mathew's manager.

12   BY MR. THOMASCH:

13       Q.   Okay.  And what did he tell you about when

14   Mathew started to work on this?

15       A.   We didn't specifically talk about when --    15:35:11

16   you know, a timestamp of when he exactly started

17   working on it, but we did talk about how quick and

18   easy it was to make this change.

19       Q.   Well, to be quick is a period of time,

20   correct, to make the change when you're saying it    15:35:28

21   was a quick change?

22       A.   I just don't know the time exactly that he

23   started that change.

24       Q.   Okay.  How do you know if it was quick if

25   you don't know when he started?    15:35:43

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 206

1     A.    Because that's what Bjorn told me.

2     Q.    But you didn't ask Bjorn when the idea to

3    change it began?

4          MR. WARREN:  Objection.  Vague.  Assumes

5    facts not in evidence.                              15:35:58

6          THE WITNESS:  Well, the conversation with

7    Bjorn -- the context of the conversation, it was

8    very clear that all this happened very quickly.

9    That from the point that it was decided to make this

10   happen until when it actually happened was a very   15:36:15

11   short amount of time.

12   BY MR. THOMASCH:

13    Q.    All right.  You just indicated that Bjorn

14   told you that from the point that it was decided to

15   make this happen to when it actually happened was a  15:37:00

16   short period of time.  Who made the decision to make

17   this happen?

18          MR. WARREN:  Objection.  Asked and answered.

19          THE WITNESS:  Sorry.  Can you repeat the

20   part where you said what I said was.  I just wanted  15:37:24

21   to confirm that I heard that right.

22          (Record read as follows:

23           "Q.  All right.  You just indicated

24           that Bjorn told you that from the point

25           that it was decided to make this happen

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 207

1        to when it actually happened was a

2        short period of time.  Who made the

3        decision to make this happen?")

4        THE WITNESS:  Okay.  When you say "make

5   it happen," you're referring to this change here        15:38:02

6   (indicating)?

7   BY MR. THOMASCH:

8        Q.   ███████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████████        15:38:14

11       A.   ██████████████████

12       Q.   ████████████████████████████

13       A.   ████████████████████████████

14  ██████████████████████████████████████████████

15  ████████████████████████████████████████        15:39:06

16  ████████████████████████████████████████

17  ██████████████████████████████████████

18  █████████████

19       Q.   ████████████████████████████████

20       MR. WARREN:  I know it's been said, but in        15:39:22

21  answering this you should not reveal the contents of

22  any communications with counsel.

23       THE WITNESS:  ████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████████        15:39:41

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 208

4   BY MR. THOMASCH:

5       Q.    Are you aware that in litigation in this      15:39:56

6   case Apple moved in June of 2012 to enjoin, to stop,

7   the sale of the Samsung Galaxy Nexus in part because

8   of the Quick Search Box feature on that phone?

9           MR. WARREN:  Objection.  Lacks foundation.

10  Assumes facts not in evidence.  Calls for a legal       15:40:19

11  conclusion.  And --

12  BY MR. THOMASCH:

13      Q.    Were you aware of that at the time back in

14  the summer of 2012?

15          MR. WARREN:  Objection.  Lacks foundation.     15:40:28

16  Assumes facts not in evidence.  Calls for a legal

17  conclusion.

18          You may answer.  In the process of answering

19  don't reveal the contents of any communication with

20  counsel.                                                15:40:37

21          THE WITNESS:  Yeah.  I'm not sure what words

22  like "enjoin" mean in the technical sense and things

23  like that.  But I know there was something to do

24  with QSB and Galaxy Nexus, I knew there was some

25  issue there.  But in terms of all the details around    15:40:53

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 209

1    what you do for a living, I don't know.

2    BY MR. THOMASCH:

3        Q.   In your job as VP of Engineering -- you were

4    in that job at the time, were you not?

5        A.   Yes, I believe so, yeah.                    15:41:06

6        Q.   ████████████████████████████████

7    ████████████████████████████████████████████████

8    ███████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ███████████████████████████████████████████     15:41:26

11   ██████████████████

12          MR. WARREN:  You can answer that question

13   yes or no.  In answering don't reveal the contents

14   of any communications with counsel.

15          It's also vague and calls for a legal        15:41:42

16   conclusion.

17          THE WITNESS:  Can you repeat the question?

18          MR. THOMASCH:  These are factual questions.

19   They don't remotely call for legal conclusions.

20   These are just intolerable interruptions.          15:41:53

21          (Record read as follows:

22             "Q.   ████████████████████████████████

23        ████████████████████████████████████

24        ████████████████████████████████████████

25        ████████████████████████████████████████

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 210

1 ██████████████████████████████

2 ████████████████████████

3 ████████████████████████

4     THE WITNESS:  And you wanted me to answer

5 that yes or no?                                    15:42:20

6     MR. WARREN:  You can answer yes or no.  And

7 don't reveal the contents of any communications with

8 counsel in answering.

9     THE WITNESS:  ████

10 BY MR. THOMASCH:                                   15:42:26

11     Q.  ██████████████████████████

12 ████████████████████████

13     MR. WARREN:  Objection.  Calls for a legal

14 conclusion.

15     You can answer that yes or no.  Don't        15:42:39

16 reveal --

17     MR. THOMASCH:  I'll withdraw it and ask it

18 again just to make sure that I understood your

19 ████

20 BY MR. THOMASCH:                                   15:42:52

21     Q.  ███████████████████

22 ██████████████████████████

23 ██████████████████████████

24 ███████████████████████████

25 ██████████████████████              15:43:05

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 211

1 ████████████████████████████████████████

2 ████████████████████████

3          MR. WARREN:  Objection.  Asked and answered.

4 Calls for a legal conclusion.

5          You may answer yes or no.  Don't reveal the   15:43:16

6 contents of any communications with counsel.

7          THE WITNESS:  Sorry.  Can you repeat the --

8 can you repeat the question?

9          (Record read as follows:

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19          THE WITNESS:  And yes or no?

20          MR. WARREN:  Yes or no.                 15:43:50

21          THE WITNESS:  ██████

22 BY MR. THOMASCH:

23     Q.  All right.

24          MR. WARREN:  And I didn't want to interrupt

25 you while you were talking, Counsel, but I will   15:43:54

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 212

1    respond to your statement about my objections.  I

2    don't think that my objections were improper.  I

3    think that whether or not something is related to

4    litigation is actually a classic legal conclusion.

5    I understand you don't agree.                      15:44:05

6              I've got to state my objections for the

7    record or I lose them, so I hope that I can do

8    that without you editorializing about them.

9              MR. THOMASCH:  I don't believe you think

10   that I'm asking him to form legal judgments.  I'm   15:44:15

11   asking him whether a motivation was

12   litigation-oriented or business-oriented.  He's an

13   executive.  He's totally capable of distinguishing

14   those things.  It's just a question of intending to

15   interrupt each time.                               15:44:29

16             MR. WARREN:  I don't agree.  You'll notice

17   he did answer the question.  And so we can move on.

18             MR. THOMASCH:  We will.

19             MR. WARREN:  I just don't want to let that

20   editorialization go unchallenged because I don't    15:44:39

21   agree with it.

22   BY MR. THOMASCH:

23        Q.   Looking down on the second box on the right

24   side.

25        A.   Which document?                          15:44:50

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 213

1    Q.   This is Exhibit 4.

2    A.   Okay.

3    Q.   Focused on Quick Search Box now going

4  down one.  That is another way in which Quick Search

5  Box could have been changed from the way that it        15:45:00

6  operated as of February 8th, 2012.  Is that correct?

7    A.   Just to be clear, you're talking about this

8  cell here (indicating)?

9    Q.   I am.  The bottom cell on the first page of

10  Exhibit 4.                                             15:45:17

11    A.   And your question was whether this was

12  something we could have done?

13    Q.   That's another possible thing that could

14  have been done; and if it had been done, it would

15  have changed the way that Quick Search operated       15:45:26

16  from the way it operated as of February 12, 2012;

17  correct?

18         MR. WARREN:  Objection.  Vague.

19         THE WITNESS:  It could have been done but

20  we chose not to do it because we thought it was       15:45:43

21  inferior.

22  BY MR. THOMASCH:

23    Q.   Okay.  Was it considered at the time in

24  fact?

25    A.   I don't think so because it's so clearly       15:45:57

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page  214

1    inferior to the first option.

2        Q.    Would it also have been clearly inferior to

3    Quick Search Box as it operated on -- in February of

4    2012?

5            MR. WARREN:  Objection.  Vague.          15:46:23

6            THE WITNESS:  It's clearly inferior because

7    people prefer web-based searches by far.

8    BY MR. THOMASCH:

9        Q.    And so this is -- this is a proposal that

10   would not allow web-based searches?               15:46:36

11       A.    Correct.

12       Q.    And that would be a downgrade in the product

13   and a -- and inferior to the alternative solution

14   postulated above; is that correct?

15       A.    The solution above provides what people want 15:46:46

16   which is web search results.

17       Q.    As did the original February 8th version;

18   correct?

19       A.    Correct.  But actually, this implementation

20   here you could argue is more efficient than what it   15:47:03

21   was doing in February.

22       Q.    Did you think that this implementation was

23   an improvement of the product?

24            MR. WARREN:  Objection.  Asked and answered.

25            THE WITNESS:  I actually remember that Bjorn 15:47:11

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 215

1   back in those days -- when I say "those days," I'm

2   referring to the June timeframe last year -- was

3   actually pretty excited about making this change

4   because he felt that it would simplify his product,

5   provide users what they want in a more efficient          15:47:32

6   way.  It uses less battery because there's more --

7   less code running on the device.  So he just felt

8   like this was a good approach.

9          MR. THOMASCH:  I'll object and move to

10  strike as nonresponsive.                                   15:47:44

11  BY MR. THOMASCH:

12     Q.   My question to you, sir, was:  At the time

13  did you personally think that the first proposed

14  redesign which was in fact implemented was an

15  improvement to the product?                                15:47:57

16         MR. WARREN:  Objection.  Asked and answered.

17         THE WITNESS:  So I remember Bjorn back in

18  June saying that he was excited about this change

19  because he felt that it would make the product more

20  efficient and there would be less code running.  The      15:48:09

21  device would just be more responsive and this is

22  what -- exactly what people wanted, and I agreed

23  with him.

24  BY MR. THOMASCH:

25     Q.   If you go to the next page, there's another        15:48:19

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 216

1   suggested alternative that someone has postulated.

2   It reads, "Modify the Quick Search Box so that it

3   may either provide web suggestions or provide local

4   suggestions, but will never provide both web and

5   local suggestions for the same query.  For example,   15:48:41

6   one embodiment of this non-infringing alternative

7   would be to provide web suggestions by default, but

8   allow the user to tap a 'Search My Phone' entry in

9   the suggestions to clear the search query and switch

10   to a local search mode."                              15:49:00

11          Do you see that?

12      A.   I do see that.

13      Q.   All right.  There's a statement in the

14   second sentence that says, "one embodiment of this

15   non-infringing alternative."                          15:49:10

16          What do you understand that to mean?

17          MR. WARREN:  Objection.  Calls for a legal

18   conclusion.

19          THE WITNESS:  The way I interpret that is

20   this is one example of how that could be implemented  15:49:34

21   and that there may be other examples.

22   BY MR. THOMASCH:

23      Q.   And what do you understand -- why do you

24   understand this to be described as a "non-infringing

25   alternative"?                                         15:49:51

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 217

1          MR. WARREN:  Objection.  Calls for a legal

2   conclusion.

3          THE WITNESS:  I'm sorry, I didn't

4   understand.

5   BY MR. THOMASCH:                                   15:49:55

6     Q.   Do you know why that term is used in this

7   document?

8     A.   Which term?

9     Q.   "Non-infringing alternative."

10          MR. WARREN:  Objection.  Calls for a legal   15:50:04

11   conclusion.

12          THE WITNESS:  The way I've interpreted

13   that is there was this issue that you mentioned

14   about the Galaxy Nexus and QSB, and "non-infringing"

15   in this context means whatever that issue was, it    15:50:18

16   wouldn't be an issue anymore.

17   BY MR. THOMASCH:

18     Q.   This would, in effect, design around it?

19     A.   Those are not the words I used, but that it

20   would make that issue go away.                      15:50:30

21     Q.   Was this theoretical alternative, to your

22   knowledge, ever actually considered at Google?

23     A.   I think there may have been a long time ago.

24     Q.   Before February of 2012?

25     A.   Yes.                                          15:51:11

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 218

1    Q.   Okay.  After February of 2012 -- withdrawn.

2         In or about February of 2012, were you aware

3    that Apple had sued Samsung for infringement and

4    that claims -- many of the claims involved Android

5    features?  Were you aware of that?              15:51:37

6    A.   In February of 2012?

7    Q.   Yes.

8         MR. WARREN:  You can answer that question

9    yes or no.  Don't reveal the contents of any

10   communications with counsel.                    15:51:49

11        THE WITNESS:  I don't know.

12   BY MR. THOMASCH:

13   Q.   Okay.  Sometime between February and June

14   you learned of the litigation and the possible

15   effect it could have on sales of the Nexus; correct?  15:52:05

16        MR. WARREN:  And I'll object as beyond

17   the scope.  I should have objected to the previous

18   question as beyond the scope but I didn't.

19        In any event, you can answer that

20   question --                                     15:52:15

21        Actually, why don't you read it back.  I'm

22   sorry.

23        (Record read as follows:

24        "Q.  Sometime between February and

25        June, you learned of the litigation and  15:52:31

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 219

1           the possible effect it could have on

2           sales of the Nexus; correct?")

3           MR. WARREN:  Objection.  Beyond the scope.

4   Compound.

5           You may answer.  Don't reveal the contents    15:52:36

6   of any communications with counsel.

7           THE WITNESS:  I don't remember when I

8   learned about this.

9   BY MR. THOMASCH:

10      Q.   But by the time you heard of these potential 15:52:45

11  redesigns, you understood that they were in response

12  to litigation.  So at some point prior thereto you

13  had to have learned of the litigation; correct?

14      A.   Prior --

15          MR. WARREN:  Sorry.  Objection.  Beyond the  15:53:02

16  scope.

17          You can answer yes or no, but don't reveal

18  the contents of any communications with counsel.

19          THE WITNESS:  If you can repeat that for me.

20  Thank you.                                            15:53:11

21          (Record read as follows:

22              "Q.  But by the time you heard of

23          these potential redesigns, you understood

24          that they were in response to litigation.

25          So at some point prior thereto you had to   15:53:11

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 220

1      have learned of the litigation; correct?")

2          MR. WARREN:  It's actually kind of a

3  complicated question.  You don't have to answer yes

4  or no as long as you don't reveal the contents of

5  any communications with counsel.                    15:53:37

6          THE WITNESS:  Yeah, I was trying to figure

7  out how to answer that.

8          MR. WARREN:  Yeah, it's really hard.

9          THE WITNESS:  As I mentioned, I don't

10 remember when I learned about this.  Maybe you can   15:53:45

11 ask me -- sort of remove that part because I think

12 that's what's making it confusing for me.

13 BY MR. THOMASCH:

14     Q.  Do you know whether at any time after

15 February of 2012 this first possible alternative --  15:53:59

16     A.  The first?

17     Q.  At the top of Page 2.  Do you know whether

18 anytime after February 2012 was that ever actually

19 considered and discussed at Google?

20     A.  I'm sorry.  So when you say "the top," I got 15:54:22

21 a little confused.  You mean right here (indicating)

22 as opposed to the top of the section?

23     Q.  Yes, I do.  I mean on Page 2.

24     A.  Okay.  So you're saying whether this was

25 considered before or after February 12th?  Is that   15:54:32

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 221

1   what you're asking?

2       Q.   If it was considered after February 12th.

3       A.   After February 12th.  I don't remember.

4       Q.   So it may have been, as far as you know,

5   that some discussion or debate ensued as to which      15:54:51

6   of these alternatives; the first alternative or the

7   third alternative, should actually be accepted; is

8   that right?

9           MR. WARREN:  Objection.  Misstates the

10  witness' prior testimony.  Assumes facts not in        15:55:04

11  evidence.

12          MR. THOMASCH:  I'll withdraw it.

13  BY MR. THOMASCH:

14      Q.   Do you know whether or not there was ever

15  a conversation prior to the decision made to go        15:55:13

16  with this top option, as to whether that option was

17  better than the top option on the next page or vice

18  versa?

19      A.   I don't know whether the top one on the

20  second page was discussed as an option when the        15:55:43

21  decision was made to implement the first one on

22  the first page.

23      Q.   So if it -- if it was, you don't know how

24  long those discussions went for.  You simply don't

25  know; correct?                                         15:55:57

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 222

1      A.   What I do know is that Bjorn told me that

2  the whole process was very quick.

3      Q.   And did you ask Bjorn what he meant by "the

4  whole process"?  Withdrawn.

5           Am I correct that what Bjorn told you        15:56:24

6  is that from the time it was decided to make this

7  happen until the time it did happen was very quick?

8  That's what he told you; correct?

9           MR. WARREN:  Objection.  Vague.  Compound.

10          THE WITNESS:  The context of the           15:56:41

11  conversation was around QSB in general and the

12  changes that were made to it.  So my interpretation

13  of what he told me was that the whole process --

14  whether there were discussions in the beginning, in

15  the end, I don't know when the discussions happened,  15:56:58

16  but I believe when he said it was quick, it was all

17  inclusive.

18  BY MR. THOMASCH:

19      Q.   But you never talked with him and don't know

20  when the first idea was contemplated and how long it  15:57:12

21  took to decide that this is the option to implement.

22  That part of the process you have no knowledge on.

23  Am I right about that?

24          MR. WARREN:  Objection.  Misstates the

25  witness' prior testimony.                           15:57:25

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 223

1          THE WITNESS:  You said I never talked to

2    him.  I did in fact talk to him.

3    BY MR. THOMASCH:

4         Q.    ████████████████████████████████

5    ████████████████████████████████████████  15:57:33

6    ███████████████████████

7         A.    ██████████████████████████████████

8    ████████████████████████████████████████████

9    ████████████████████████████████████████████

10   ████████████████████████████████████████████  15:57:52

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████

14        Q.    What is meant by "Bjorn Bringert estimated

15   8 hours to implement; 10 hours to verify the .apk"?  15:58:15

16   What does that mean?

17        A.    That means Bjorn and his team, it took them

18   about 8 hours to implement.  In this case since it

19   was actually implemented, these are actual numbers.

20   And then it took about 10 hours to verify the .apk;  15:58:31

21   "verify" meaning to test it, to make sure it's

22   operating correctly.

23        Q.    Okay.  How many hours before Bjorn's team

24   started to work?  How many hours, days, weeks or

25   months was it from the time someone first said, "We  15:58:45

TSG Reporting - Worldwide    (877) 702-9580

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 224

1    need to make a change" until they gave the project

2    to Bjorn with directions to implement?

3            MR. WARREN:  Objection.  Asked and answered.

4            THE WITNESS:  I'm not sure.

5            MR. THOMASCH:  Would it be possible to have    15:59:31

6    a couple of copies of a -- two pages of a document

7    made up or would you prefer to operate without

8    duplicates?

9            MR. WARREN:  It's probably better to do it

10   the way we did the other one.                        15:59:40

11           MR. THOMASCH:  Okay.  I'll ask the reporter

12   to mark as Exhibit 10 a one-page document bearing

13   Bates numbers ending with the numbers 65786, dated

14   Wednesday, June 6th, 2012.

15           (Exhibit 10 was marked for identification    16:00:25

16           and attached hereto.)

17           THE WITNESS:  Thank you.

18   BY MR. THOMASCH:

19       Q.   Do you recognize that document?

20       A.   I don't know if I recognize this specific   16:00:43

21   one.  I recognize the format of it.

22       Q.   Can you determine whether that's one of the

23   documents that you looked at last night with respect

24   █████████████████████████████████████████████

25       A.   Not with absolute certainty, no.           16:00:59

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 225

1          MR. THOMASCH:  I'll ask the reporter to

2     mark a one-page document as Exhibit 11 bearing

3     Bates numbers ending in the numbers 65800.

4          (Exhibit 11 was marked for identification

5          and attached hereto.)                    16:01:54

6     BY MR. THOMASCH:

7     Q.   Mr. Lockheimer, can you look at Exhibit 11

8     and tell me if you recognize that document.

9     A.   Again, I recognize the format.  I don't know

10    if I specifically recognize this specific one.  They  16:02:10

11    all look very similar.

12    Q.   Okay.  Could you read the two sentences

13    under the subject line, so not the subject line

14    itself but the text under it, on Exhibit 11.

15    A.   ███████████████████████████████        16:02:22

16    ████████████████████████████

17    Q.   ████████████████

18    A.   ███████████████████████████

19    ██████████████████

20    Q.   Okay.  What does that mean to you?  Can you   16:02:37

21    interpret that?

22          MR. WARREN:  Objection.  Vague.

23          THE WITNESS:  ████████████████████████

24    ████████████████████████████

25    BY MR. THOMASCH:                              16:02:53

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION



Page 226

1   Q.

2

3   A.

4

5                                                  16:03:13

6

7

8

9   Q.

10  A.                                             16:03:29

11  Q.

12  A.

13

14

15                                                 16:03:44

16

17

18

19

20                                                 16:04:01

21

22

23

24  Q.

25                                                 16:04:13

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 227

1          MR. WARREN:  Objection.  Vague.

2          THE WITNESS:  ███████████████

3    ████████████████████████████

4    BY MR. THOMASCH:

5          Q.   ██████████████████        16:04:28

6    ███████████████████████████

7    ███████████████████████████

8    ███████████████████████████

9    ███████████████████████████

10   ███████████████████████████        16:04:47

11   ███████████████████████████

12         MR. WARREN:  Objection.  Asked and answered.

13         THE WITNESS:  ███████████████

14   ███████████████████████████

15   ███████████████████████████        16:05:00

16   ███████████████████████████

17   ███████████████████████████

18   ███████████████████████████

19   ███████████████████████████

20   ███████████████████████████        16:05:12

21   ███████████████████████████

22   ███████████████████████████

23   ███████████████████████████

24   ███████████████████████████

25   BY MR. THOMASCH:                    16:05:22

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 228



```
 1      Q.
 2
 3
 4
 5                                                    16:05:33
 6
 7
 8           MR. WARREN:  Objection.  Vague.
 9           THE WITNESS:
10                                                    16:05:52
11
12   BY MR. THOMASCH:
13      Q.
14
15                                                    16:06:01
16
17
18
19           MR. WARREN:  Objection.  Lacks foundation.
20   Assumes facts not in evidence.  Compound.        16:06:17
21           THE WITNESS:
22
23
24
25                                                    16:06:35
```

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 229



1

2

3

4

5                                                                          16:06:54

6

7

8

9

10    BY MR. THOMASCH:                                                     16:07:12

11        Q.

12

13

14

15        A.                                                               16:07:20

16

17        Q.

18        A.

19        Q.

20                                                                         16:07:37

21

22        A.

23

24        Q.

25                                                                         16:07:51

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 230

1    █████████████████████

2        A.    ████████████████████████████

3    ██████████████████████████████████████████

4    ██████████████████████████████████████████

5    ██████████████████████████████████████████    16:08:10

6    ██████████████████████████████████████████

7    ██████████████████████████████████████████

8        Q.    ████████████████████████████

9    ██████████████████████████████████████████

10   ███████████████████████████████████████    16:08:39

11       MR. WARREN:  Objection.  Vague.

12       You may answer.  Don't reveal the contents

13   of any communications with counsel.

14       THE WITNESS:  ████████████████████████

15   ████████████████████████                       16:08:56

16   BY MR. THOMASCH:

17       Q.    ████████████████████████████

18       MR. WARREN:  Objection.  Asked and answered.

19       It's the same instruction.  Don't reveal the

20   contents of any communications with counsel.    16:09:10

21       THE WITNESS:  █████████████████████

22   BY MR. THOMASCH:

23       Q.    ███████████████████████████

24   █████████████████████████████████████

25   ████████████████████████████████████    16:09:24

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 231

1     A.     Sorry.  If you could repeat that one.

2            (Record read as follows:

3

4

5                                                    16:09:31

6

7            THE WITNESS:

8

9

10   BY MR. THOMASCH:                                16:09:49

11     Q.

12

13     A.

14     Q.

15                                                   16:10:00

16

17

18     A.

19     Q.

20                                                   16:10:21

21

22

23            MR. WARREN:  Objection.  Vague.

24            Don't reveal the contents of any

25   communications with counsel.  With that instruction,  16:10:40

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 232

1   you may answer.

2           THE WITNESS: ███████████████████

3   ████████████████████████████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████████    16:10:55

6   BY MR. THOMASCH:

7       Q.   No, I don't think that's it.  So let me --

8   let me withdraw the question.

9           ██████████████████████████████

10  ████████████████████████████████████    16:11:25

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ████████████████████████████████████████

14  ████████████████████████████████████████

15  ████████████████████████████████████    16:11:46

16  ████████████████████████████████████████

17  ████████████████████████████████████████

18      A.   ████████████████████

19      Q.   ████████████████████████████████

20  ████████████████████████████            16:11:56

21          MR. WARREN:  Objection.  It's vague.  It's

22  compound.  It assumes facts not in evidence.

23          You may answer.  Don't reveal the contents

24  of any communications with counsel.

25          THE WITNESS: ████████████████████   16:12:09

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 233



1
2    BY MR. THOMASCH:
3        Q.
4        A.
5                                                    16:12:18
6
7        Q.
8
9
10           MR. WARREN:   Objection.   Assumes facts not   16:12:31
11    in evidence.
12           THE WITNESS:
13
14
15    BY MR. THOMASCH:                                16:12:40
16        Q.
17        A.
18        Q.
19
20                                                    16:12:54
21
22        A.
23
24        Q.
25                                                    16:13:15

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 234

1        MR. WARREN:  Objection.  Asked and answered.

2        THE WITNESS:  I'm sorry.  If you can repeat

3  that question.

4        (Record read as follows:

5                                                      16:13:19

6

7        MR. WARREN:  Objection.  Asked and answered.

8        THE WITNESS:

9

10                                                     16:13:43

11  BY MR. THOMASCH:

12     Q.  And what happened next?

13        MR. WARREN:  Objection.  Vague.

14        THE WITNESS:  What happened next to what?

15  BY MR. THOMASCH:                                   16:14:01

16     Q.

17

18     A.

19     Q.

20                                                     16:14:20

21     A.

22

23

24     Q.

25                                                     16:14:43

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 235

1      A.    So your -- sorry.  Your question was?

2      Q.    ████████████████████████████████

3    ████

4      A.    ███

5      Q.    ███████████████                    16:14:53

6      A.    ████████████

7      Q.    ███████████████

8      A.    ███████████████████████████████

9      Q.    ████████████████████████████████

10  █████████████████████████████████████      16:15:18

11     A.    ███

12     Q.    █████████████████████

13     A.    ████████████████████

14     Q.    ███████████████

15     A.    █████████████████                  16:15:40

16     Q.    ███████████████

17     A.    █████████████████████

18     Q.    ███████████████████████

19     A.    ███████████████████████

20     Q.    ██████████████████████             16:16:02

21     A.    ██████████████████████████

22  ███████████████████████████████████

23  ███████████

24     Q.    ████████████████

25     A.    ████████████████████████████       16:16:32

TSG Reporting - Worldwide    (877) 702-9580

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 236

1      ████████

2      Q.    ████████████████████

3      A.    ███████████████████████████

4      ███████████████████████████████

5      Q.    █████████████████████████████       16:16:58

6      ███████████

7            MR. WARREN:  Objection.  Vague.

8            THE WITNESS:  ████████████████████

9      █████████████████████████████████

10     BY MR. THOMASCH:                             16:17:25

11     Q.    ██████████████████

12     A.    ██████████████████████████

13     ███████████████████████

14     Q.    ████████████████

15     A.    ██████████████████████████████      16:17:37

16     ████████████████████████

17     Q.    ██████████████████████████████

18     ██████████████████████████████

19     ████████████████████████

20     A.    █████████████████████████████████  16:18:04

21     ███████████████████

22     Q.    ██████████████████████████

23     ███████████████████

24     A.    ████

25     Q.    █████████████████████████          16:18:15

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 237

1  ███████████████████████████████████

2  ████████████████████████

3       MR. WARREN:  Objection.  Vague.  Beyond the

4  scope.

5       MR. THOMASCH:  It may be objectionable on      16:18:47

6  many grounds but vagueness is not one of them.

7       MR. WARREN:  I disagree.

8       MR. THOMASCH:  How many decimal points do

9  you want in one question?

10       MR. WARREN:  "What is the difference         16:19:00

11  between" was the part that I was objecting to,

12  to the extent that you asked for clarification

13  regarding that objection.

14       MR. THOMASCH:  Fair enough.  Withdraw the

15  prior question.                                   16:19:08

16  BY MR. THOMASCH:

17     Q.  ████████████████████████████████

18  ███████████████████

19     A.  ███████████████████████████████

20  ████████████                                      16:19:18

21     Q.  █████████████████████████████████

22  ███████████████████████

23       MR. WARREN:  Objection.  Vague.

24       THE WITNESS:  █████████████

25  BY MR. THOMASCH:                                  16:19:32

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 238



```
 1      Q.    ████████████████████████████
 2   ██████████████████████████████
 3            MR. WARREN:  Objection.  Vague.
 4            THE WITNESS:  ████████████████████
 5   BY MR. THOMASCH:                              16:19:45
 6      Q.    █████████████████████████
 7            MR. WARREN:  Objection.  Vague.  Assumes
 8   facts not in evidence.
 9            THE WITNESS:  ██████████████████████
10   BY MR. THOMASCH:                              16:19:55
11      Q.    ████
12      A.    ████████████████████████
13      Q.    ████
14      A.    ███████████████████████
15   █████████████                                16:20:05
16      Q.    ████████████████████████
17   ██████████████████████████████████████
18   ██████████████████████████████████████
19   ██████████████████████████████████████
20            MR. WARREN:  Objection.  Vague.     16:20:43
21            THE WITNESS:  █████████████████████
22   ████████████████████████████████████
23   ███████████████████████████████
24   BY MR. THOMASCH:
25      Q.    ████████████████████          16:20:55
```

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 239

1        MR. WARREN:  Objection.  Vague.

2        THE WITNESS:  ███████████████████

3  ████████████████

4  BY MR. THOMASCH:

5        Q.  ████████████████████████████        16:21:03

6  ████████████████████████████

7        MR. WARREN:  Objection.  Beyond the scope.

8        THE WITNESS:  ███████████████████

9  ████████████████

10 BY MR. THOMASCH:                                 16:21:24

11       Q.  ████████████████████████

12 ████████████████████

13       MR. WARREN:  Objection.  Beyond the scope.

14 Asked and answered.

15       THE WITNESS:  ███████████████████        16:21:33

16 ████████████████████████

17 BY MR. THOMASCH:

18       Q.  ████████████████████████

19 ████████████████████████████

20 ████████████                                    16:21:48

21       MR. WARREN:  Objection.  Beyond the scope.

22       THE WITNESS:  ███████████████

23 BY MR. THOMASCH:

24       Q.  ████████████████████████

25 ████████████████████████████                    16:21:57

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 240



```
 1                                                                      16:22:22
 2
 3
 4
 5
 6          MR. WARREN:  Objection.  Vague.
 7          THE WITNESS:
 8                                                                      16:22:37
 9
10
11   BY MR. THOMASCH:
12      Q.
13
14
15      A.                                                             16:22:55
16
17
18
19
20      Q.                                                             16:23:15
21          MR. WARREN:  Objection.  Asked and answered.
22          THE WITNESS:
23
24   BY MR. THOMASCH:
25      Q.   Right.                                                    16:23:25
```

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 241



1      A.

2

3      Q.

4

5                                          16:23:41

6      A.

7

8

9

10     Q.                                  16:24:00

11

12

13

14

15                                         16:24:17

16

17

18

19     A.

20                                         16:24:45

21

22

23

24

25                                         16:25:06

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 242



1

2

3

4

5                                                                    16:25:19

6      Q.

7

8

9

10     A.                                                            16:25:34

11

12     Q.

13

14

15                                                                   16:25:56

16

17     A.

18

19

20                                                                   16:26:10

21     Q.

22          MR. WARREN:  Let him finish his answer.

23          Go ahead.

24          THE WITNESS:

25                                                                   16:26:18

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 243

1 

2

3

4

5                                                    16:26:28

6   BY MR. THOMASCH:

7       Q.

8

9

10                                                   16:26:40

11      A.

12      Q.

13

14

15                                                   16:26:53

16

17

18

19

20                                                   16:27:14

21

22

23

24      A.

25                                                   16:27:48

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 244

1    Q.   Okay.

2         MR. WARREN:  Well, obviously, I think it's

3    not but I can't have that conversation.

4         Can we have a moment to caucus about

5    privilege?                                        16:27:58

6         MR. THOMASCH:  Yes.

7         THE VIDEOGRAPHER:  This is the end of disc

8    No. 3, Volume I.  We are off record at 4:28 p.m.

9         (Off the record.)

10        THE VIDEOGRAPHER:  This is the beginning of  16:35:53

11   disc No. 4, volume I.  We are back on the record at

12   4:36 p.m.

13        You may proceed.

14        MR. WARREN:  During the break, I think I was

15   able to assuage the witness's privilege concern.   16:36:06

16   Why don't you go ahead with your question.

17   BY MR. THOMASCH:

18        Q.   ████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████   16:36:19

21   ████████████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ████████████████████████████████████████████████

25        A.   ██████████████                          16:36:29

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION



HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 246



1

2    Q.

3

4

5                                              16:38:16

6

7

8

9    A.

10                                             16:38:31

11

12

13

14

15   Q.                                        16:38:46

16   A.

17   Q.

18

19   A.

20                                             16:39:10

21   Q.

22

23

24

25                                             16:39:33

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 247



2          MR. WARREN:  Objection.  Vague.  Compound.

3          THE WITNESS:

                                                16:39:50

                                                16:40:03

11   BY MR. THOMASCH:

12       Q.

                                                16:40:15

17       A.

18       Q.

20       A.                                     16:40:26

23       Q.

                                                16:40:45

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 248



1

2

3

4    A.

5                                              16:41:01

6    Q.

7    A.

8    Q.

9    A.

10                                             16:41:09

11

12

13   Q.

14

15                                             16:41:25

16

17   A.

18   Q.

19

20                                             16:41:35

21   A.

22

23

24   Q.

25                                             16:41:59

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 249

```
 1      A.   ██████████████████
 2      Q.   ███████████████████████████
 3   ████████████████████████████████████████
 4      A.   ████████████████████████
 5      Q.   ███████████████████████████        16:42:22
 6   █████████████████████████████████████████
 7   ████████
 8           MR. WARREN:  Objection.  Beyond the scope.
 9           THE WITNESS:  ████████████████
10   BY MR. THOMASCH:                           16:42:48
11      Q.   ██████████████████████████████████
12   ████████████████████████████
13           MR. WARREN:  Objection.  Beyond the scope.
14           THE WITNESS:  ███████████████████
15   ████████████████████████████             16:42:55
16   BY MR. THOMASCH:
17      Q.   ██████████████████████████████████
18   ██████████████████
19           MR. WARREN:  Objection.  Vague.  Beyond the
20   scope.                                      16:43:11
21           THE WITNESS:  ██████████████████
22   ████████████████████████████████████████████
23   ████████████████████████████████████████████
24   BY MR. THOMASCH:
25      Q.   ████                               16:43:19
```

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 250

1        MR. WARREN:  Objection.  Vague.  Beyond the

2   scope.

3        THE WITNESS: ██████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████████████  16:43:24

6   ████████████████████████████████████████

7   ████████████████████████████████████████

8   BY MR. THOMASCH:

9        Q.  ████████████████████████████████

10  ████████████████████████  16:43:37

11       MR. WARREN:  Objection.  Asked and answered.

12       THE WITNESS: ██████████████████

13  ██████

14  BY MR. THOMASCH:

15       Q.  ████████████████████████  16:43:41

16  ████████████████████████████

17       MR. WARREN:  Objection.  Vague.

18       THE WITNESS: ██████████████████

19  ████████████████████████████

20  BY MR. THOMASCH:  16:44:12

21       Q.  ████████████████████████████████

22  ████████████████████████████████████

23  ████████████████

24       MR. WARREN:  Objection.  Assumes facts not

25  in evidence.  Lacks foundation.  Vague.  16:44:42

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 251

1          THE WITNESS: ███████████████

2   ████████████████████████████████████████

3   ████████████████████████████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████████████   16:45:16

6   ████████████████████████████████████████

7   ████████████████████████████████████████

8   BY MR. THOMASCH:

9      Q.   Okay.  Is the Galaxy Nexus a lead device?

10          MR. WARREN:  Objection.  Beyond the scope.   16:45:26

11          THE WITNESS:  Yes.  We don't necessarily

12   call it that anymore, but it's a different kind of

13   device, yes.

14   BY MR. THOMASCH:

15      Q.   Samsung's ability to make alterations to the 16:45:34

16   Android operating system in the Galaxy Nexus is less

17   than in the Galaxy S3, for instance; isn't that

18   correct?

19          MR. WARREN:  Objection.  Beyond the scope.

20          THE WITNESS:  Both products are open-source, 16:45:51

21   so they have the ability to do it, but in the case

22   of Galaxy Nexus, they choose not to do it.

23   BY MR. THOMASCH:

24      Q.   Okay.  So how did -- withdrawn.

25          When did the change actually get made with   16:46:04

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 252

1    respect to the Galaxy Nexus?

2            MR. WARREN:  Objection.  Beyond -- well, no.

3    Objection.  Assumes facts not in evidence.

4            MR. THOMASCH:  Okay.  I will withdraw the

5    question.                                       16:46:16

6    BY MR. THOMASCH:

7        Q.    ████████████████████████████████████

8    ████████████████████████████████████

9            MR. WARREN:  Objection.  Vague.

10           THE WITNESS:  ████████████████          16:46:23

11   BY MR. THOMASCH:

12       Q.    ████████████████████████████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████████   16:47:46

16           MR. WARREN:  So you can answer, but in the

17   process you shouldn't disclose the contents of any

18   communications with counsel.

19           THE WITNESS:  ████████████████████

20   ████████████████████████████████████████████   16:48:10

21   ████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ████████████████████████████████████████████   16:48:30

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 253

1    BY MR. THOMASCH:

2         Q.    ███████████████████████████████

3    ████████████████████████████████████████

4         MR. WARREN:   Objection.   Vague.

5    BY MR. THOMASCH:                                 16:48:43

6         Q.    ███████████████████████████

7         MR. WARREN:   Objection.   Vague.

8         THE WITNESS:   ██████████████████

9    ████████████████████████████████████████

10   ████████████████████████████████████████    16:49:07

11   BY MR. THOMASCH:

12        Q.    █████████████████████████████████

13   ████████████████████████████████████████

14   ████████████████████████████████████████

15   ████████████████████████████████████████    16:49:20

16   ████████████████████████████████████████

17        MR. WARREN:   Beyond the scope as to

18   "provided to other manufacturers."   Compound.

19        THE WITNESS:   ████████████████████████

20   ████████████████████████████████████████    16:49:34

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   BY MR. THOMASCH:                                 16:49:48

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 254

1       Q.   ███████████████████████████

2   █████████████████████

3            MR. WARREN:   Objection.   Asked and answered.

4            THE WITNESS:   ████████████████

5   ████████████████████████                    16:50:04

6   BY MR. THOMASCH:

7       Q.   ████████████████████████

8            MR. WARREN:   Objection.   Asked and answered.

9            THE WITNESS:   ███████████████

10  ████████████████████████████              16:50:12

11  ████████████████████████████

12  BY MR. THOMASCH:

13      Q.   ███████████████████████

14  ██████

15           MR. WARREN:   Objection.   Calls for      16:50:18

16  speculation.

17           THE WITNESS:   ███████████████

18  ██████████████████████████████

19  ██████████████████████████████

20  ██████████████████████████████        16:50:30

21  ██████████████████████████████

22  BY MR. THOMASCH:

23      Q.   ██████████████████████████

24  ██████████████████████████████

25  ██████████████████████████████        16:50:58

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 255

1 ████████████████████████████████

2        MR. WARREN:  Objection.  Beyond the scope.

3 Vague.

4        THE WITNESS:  ████████████████████

5 BY MR. THOMASCH:                              16:51:17

6    Q.   ████████████████████████████████

7 ████████████████████████████████████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10        MR. WARREN:  Objection.  Assumes facts not  16:51:36

11 in evidence.  Beyond the scope.

12        THE WITNESS:  There are many phones that you

13 just described.  You know, Samsung phones.  Did

14 Google do that?  I --

15 BY MR. THOMASCH:                              16:51:59

16    Q.   Okay.  I will break it down.

17        There were certainly phones in the

18 marketplace -- before the end of June 2012, there

19 were phones in the marketplace that had Android

20 operating systems and had the pre-altered version of  16:52:10

21 QSB in them; correct?

22        MR. WARREN:  Objection.  Vague.  Beyond the

23 scope.

24        THE WITNESS:  QSB existed before the end of

25 June so there were certainly phones -- and there  16:52:25

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 256

1    were phones in the market before the end of June, so

2    there were certainly phones with the QSB before the

3    end of June.

4    BY MR. THOMASCH:

5        Q.   Right.  That's not a stretch to assume that.  16:52:34

6    We know that that was a fact; correct?

7        A.   Yes.

8        Q.   

9

10                                                           16:52:44

11

12

13            MR. WARREN:  Objection.  Assumes facts not

14    in evidence.

15            MR. THOMASCH:  It doesn't assume anything.   16:53:00

16    It asks a question.

17            MR. WARREN:  Lacks foundation.  Beyond the

18    scope.

19            THE WITNESS:

20                                                           16:53:16

21    BY MR. THOMASCH:

22        Q.

23

24

25                                                           16:53:31

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 257

1        MR. WARREN:  Objection.  Assumes facts not

2   in evidence.  Lacks foundation.  Beyond the scope.

3        THE WITNESS:  ███████████████

4   █████████████████████████████████████

5   █████████████████████████████████████   16:53:48

6   █████████████████████████████████████

7   █████████████████████████████████████

8   BY MR. THOMASCH:

9        Q.  ███████████████████████████

10  █████████████████████████████          16:54:00

11       MR. WARREN:  Objection.  Beyond the scope.

12       THE WITNESS:  ████████████████████

13  █████████████████████████████████████

14  █████████████████████████████████████

15  █████████████████████████████████████   16:54:14

16  BY MR. THOMASCH:

17       Q.  ██████████████████████████████

18  █████████████████                       16:54:22

19       MR. WARREN:  Objection.  Beyond the scope.

20       THE WITNESS:  █████████████         16:54:22

21  BY MR. THOMASCH:

22       Q.  Did you learn of any consumer reaction to

23  the Quick Search Box alteration at any time after

24  the end of June 2012?

25       A.  Consumer?  I don't think so.     16:54:52

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 258

1      Q.   Did you learn of any trade press reaction to

2   the alteration to Quick Search Box after late

3   June 2012?

4           MR. WARREN:  Objection.  Vague.

5           THE WITNESS:  When you say "trade press,"    16:55:21

6   what are you referring to?

7   BY MR. THOMASCH:

8      Q.   Do you understand there to be a trade press

9   that follows this industry and Google?

10     A.   I'm sorry.  I couldn't hear.              16:55:28

11     Q.   Did you understand there to be a trade press

12  that follows this industry and Google?

13     A.   I don't know if by "trade press" you're

14  referring to a specific set of people.  There are

15  certainly press out there, bloggers out there,     16:55:40

16  things like that.  I don't know what you consider

17  "trade press."

18     Q.   Are you aware of any media reaction

19  whatsoever to the design alteration of the Quick

20  Search Box?                                        16:55:51

21          MR. WARREN:  Objection.  Vague.

22          THE WITNESS:  I remember glancing at one

23  article.

24  BY MR. THOMASCH:

25     Q.   Was it a positive or negative reaction?    16:56:04

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 259

1      A.   It's hard to say, actually.  I don't

2   think -- to my recollection, they didn't really make

3   a comment on whether it was a good thing or a bad

4   thing.  They were just more noting it.

5      Q.   So as you sit here today, with regard to --   16:56:15

6   withdrawn.

7           If you look at topic No. 19 --

8      A.   Which exhibit?

9      Q.   On the Exhibit 3, the notice.

10     A.   Is this it?  Yes.  Which topic did you say?   16:56:41

11     Q.   19.

12     A.   19.  Okay.

13     Q.   For the record, 19 reads, "Public opinion,

14  mobile device manufacturer opinion, or customer

15  feedback regarding the Unified Search Alteration."   16:56:53

16          And I will represent to you that the

17  Unified Search Alteration would embody the change to

18  the QSB that we are now talking about.

19          MR. WARREN:  I will just object and note

20  that this topic was narrowed by subsequent            16:57:04

21  agreements and correspondence between counsel.

22          You may answer.

23          THE WITNESS:  So I missed the question.

24  What was --

25  BY MR. THOMASCH:                                      16:57:11

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 260

1    Q.   The question is:  Did you do anything to

2    determine whether Google has knowledge of any public

3    opinion, mobile device manufacturer opinion, or

4    customer feedback regarding the Unified Search

5    Alteration?                                    16:57:25

6         MR. WARREN:  Objection.  Beyond the scope.

7         THE WITNESS:  Did I do anything to determine

8    when?

9    BY MR. THOMASCH:

10   Q.   In preparing for your deposition, did you do 16:57:33

11   anything to inform yourself about knowledge that is

12   reasonably available to Google as to whether there

13   was any public opinion, mobile device manufacturer

14   opinion, or customer feedback regarding the change

15   to QSB?                                        16:57:50

16        MR. WARREN:  Objection.  Beyond the scope.

17        THE WITNESS:  Well, I remember what I

18   remember.  I don't know where else I would look for

19   this stuff.  It's not like there is a central

20   repository of specific incidents like this.    16:58:06

21   BY MR. THOMASCH:

22   Q.   And what you remember is glancing at one

23   article, and other than that, you have no knowledge

24   that -- pro or con as to reaction to the alteration;

25   is that correct?                               16:58:21

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 261

1          MR. WARREN:  Objection.  Asked and answered.

2          THE WITNESS:  Can you repeat that question.

3    There is a word that I missed.

4          (Record read as follows:

5            "Q.  And what you remember is glancing      16:58:11

6            at one article, and other than that, you

7            have no knowledge that -- pro or con as

8            to reaction to the alteration; is that

9            correct?")

10          THE WITNESS:  My recollection is that I saw  16:58:39

11    a blog post from someone.  I don't even remember who

12    it was or what -- what media it was.  And my

13    interpretation or impression of it -- I just glanced

14    at it -- was that they had noticed that it happened,

15    but it wasn't a huge outcry or anything like that.   16:58:57

16    BY MR. THOMASCH:

17      Q.   Looking at topic 22, which reads, "Any

18    business or commercial need, incentive, reason, or

19    motive to develop the Unified Search Alteration."

20          With respect to the change to Quick Search   16:59:20

21    Box, and apart from any need that results from

22    litigation, are you aware of any business or

23    commercial need, incentive, reason, or motive to

24    develop that change?

25          MR. WARREN:  Objection.  Asked and answered. 16:59:37

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 262

1          THE WITNESS:   Aside from litigation?   Is

2     that what you said?

3     ████████████████████████████████████

4     ████████████████████████████████████████

5     ████████████████████████████████████████   16:59:55

6     ████████████████████████████████████████

7     BY MR. THOMASCH:

8          Q.   ████████████████████████

9          A.   ████████████████████████

10         ████████████████████████████████████   17:00:07

11    ████████████████████████████████████████

12    ████████████████████████████████████████

13    ████████████████████████████████████████

14         Q.   ████████████████████████████████

15         MR. WARREN:   Objection.   Beyond the scope.   17:00:22

16         THE WITNESS:   ██████████████████

17    BY MR. THOMASCH:

18         Q.   ██████████████████████████████

19    █████████████████

20         A.   ██████████████████████████   17:00:31

21    ████████████████████████████████████████

22    ████████████████████████████████████████

23    ████████████████████████████████████████

24    ████████████████████████████████████████

25         Q.   After implementing the redesign, did Google   17:00:43

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 263

1   or Samsung ever revert back to the original design

2   of Quick Search Box?

3           MR. WARREN:  Objection.  Assumes facts not

4   in evidence.  Lacks foundation.  Beyond the scope.

5           THE WITNESS:  When you say "original        17:01:10

6   design," what do you mean?

7   BY MR. THOMASCH:

8       Q.   The design that existed prior to the

9   redesign in or about June of 2012.

10          MR. WARREN:  Objection.  Vague.  Assumes      17:01:24

11  facts not in evidence.  Beyond the scope.

12  BY MR. THOMASCH:

13      Q.   After preparing the redesign, after

14  providing that to Samsung, are you aware whether at

15  any time thereafter Samsung or Google reverted back  17:01:35

16  to the pre-alteration design of Quick Search Box?

17          MR. WARREN:  Objection.  Vague.  Assumes

18  facts not in evidence.  Beyond the scope.

19          MR. THOMASCH:  It is not beyond the scope.

20  It is not even remotely beyond the scope.           17:01:50

21          THE WITNESS:  I don't know if we reverted.

22  BY MR. THOMASCH:

23      Q.   Do you know whether or not at any time after

24  late June of 2012 Samsung or Google reinstated the

25  capability of local searching on Quick Search Box?   17:02:10

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 264

1          MR. WARREN:  Objection.  Assumes facts not

2  in evidence.  Lacks foundation.  Beyond the scope.

3          THE WITNESS:  I don't know what Samsung did.

4  BY MR. THOMASCH:

5     Q.  Do you know whether Google did anything?    17:02:25

6          MR. WARREN:  Same objection.  Assumes facts

7  not in evidence.  Lacks foundation.  Beyond the

8  scope.

9          THE WITNESS:  The behavior of the latest QSB

10 on my Jelly Bean phone, for instance, or my wife's    17:02:42

11 Jelly Bean phone is different from what was

12 described in Exhibit 4, but I don't know if that

13 represents a revert or not.

14 BY MR. THOMASCH:

15    Q.  What is the model of your wife's Jelly Bean    17:02:56

16 phone?

17    A.  Right now she's using an unreleased product.

18    Q.  It's good to know the VP of Engineering.

19         MR. WARREN:  I will just remind my client

20 that I know you're proud of the phone you gave your    17:03:18

21 wife, but we're not supposed to talk about

22 unreleased products, and they are not supposed to

23 ask about those.  Try not to volunteer that in the

24 future, if you can.

25         MR. THOMASCH:  I am not going to ask you    17:03:29

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 265

1   about that product.

2   BY MR. THOMASCH:

3       Q.    What phone did your wife previously use?

4   What was the last released phone your wife used?

5       A.    It's been a very long time.  I can't          17:03:38

6   remember.

7       Q.    █████████████████████████████████████

8   ██████████████████████████████████████████████████

9   ██████████████████████████████████████████████████

10  ██████████████████████████████████████████████████    17:04:07

11  ██████████████████████████████████████████████████

12  ██████████████████████████████████████████████████

13          MR. WARREN:  Objection.  Beyond the scope.

14  Calls for a legal conclusion.

15          THE WITNESS:  ████████████████              17:04:27

16          MR. THOMASCH:  Okay.  Before we break --

17  because you requested a break.

18          MR. WARREN:  I did request a break.

19          MS. LOZANO:  And so I just want to see --

20  and then we'll move on -- to make sure I understand    17:04:49

21  this.

22  BY MR. THOMASCH:

23      Q.    ████████████████████████████████████

24  ██████████████████████████████████████████████████

25  ██████████████████████████████████████████████████    17:05:13

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 266



1

2

3

4

5                                                                      17:05:40

6        MR. WARREN:  Objection.  Compound.  Beyond

7   the scope.

8        THE WITNESS:

9

10                                                                     17:05:52

11

12

13

14

15                                                                     17:06:10

16   BY MR. THOMASCH:

17      Q.   Right.

18           But as far as consumers in the marketplace,

19   you don't know whether anyone has ever had an

20   Android product or an Android operating system       17:06:19

21   product that had the altered Quick Search Box on it;

22   correct?

23           MR. WARREN:  Objection.  Misstates the

24   witness's prior testimony.

25           THE WITNESS:  Yeah.  That's not what I said. 17:06:30

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 267

1   I think the fact that I saw a blogger, whoever it

2   was, mention it, I assumed that meant it was out

3   there for consumers to see so that would imply to me

4   that it did reach consumers.

5   BY MR. THOMASCH:                              17:06:44

6       Q.   ████████████████████████████

7   ████████████████████████████████████████████

8   ████████████████████████████████████████████

9   ████████████████████████████████████████████

10  ████████████████████████████████████████████  17:06:59

11  ████████████████████████████████████████████

12       MR. WARREN:  Objection.  Misstates the

13  witness's prior testimony.  Compound.  Partially

14  beyond the scope.

15       THE WITNESS:  ████████████████████  17:07:08

16  ████████████████████████████████████████████

17  ████████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████  17:07:22

21  BY MR. THOMASCH:

22       Q.   ██████████████████████████████

23  ████████████████

24       MR. WARREN:  Objection.  Asked and answered.

25  Beyond the scope.                              17:07:27

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 268

1          THE WITNESS: 

2     BY MR. THOMASCH:

3          Q.

4

5                                                    17:07:41

6

7

8

9

10                                                   17:08:03

11

12

13          MR. WARREN:  Objection -- sorry.  Objection.

14     Compound.  Partially beyond the scope.  Misstates

15     the witness's prior testimony.              17:08:14

16          THE WITNESS:

17

18

19

20                                                   17:08:27

21

22

23

24

25                                                   17:08:42

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 269

1   █████████████████████████

2   BY MR. THOMASCH:

3       Q.   ███████████████████████████████████

4   ████████████████████████████████████████

5   ████████████████████████████████████████        17:08:50

6   ████████████████████████████████████████

7       A.   ████████████████████████████████████████

8   ████████████████████████████████████████

9   ████████████████████████████████████████

10  ████████████████████████████████████████        17:09:03

11      Q.   ████████████████████████████

12  ████████████████████████████████████████

13  ████████████████████████

14          MR. WARREN:   Objection.   Asked and answered.

15  Beyond the scope.                                17:09:12

16          THE WITNESS:   ███████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████████████████

20  BY MR. THOMASCH:                                 17:09:21

21      Q.   ████████████████████████████████████

22  ████████████████████████████████████████

23  ████████████████████████████████████████

24  ████████████████████████████████████████

25  ████████████████████████████████████████        17:09:40

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 270

1    █████████

2         MR. WARREN:  Objection.  Asked and answered.

3    Beyond the scope.

4         THE WITNESS:  Would you mind repeating that

5    question.                                      17:09:47

6         MR. THOMASCH:  Let me withdraw it.

7    BY MR. THOMASCH:

8       Q.   ████████████████████████████████

9    ████████████████████████████████████████████

10   ████████████████████████████████████████████  17:10:04

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ███████████

14        MR. WARREN:  Objection.  Asked and answered.

15   Beyond the scope.                              17:10:17

16        THE WITNESS:  ███████████████████████████

17   ███████████

18   BY MR. THOMASCH:

19      Q.   ████████████████████████

20        MR. WARREN:  Objection.  Asked and answered. 17:10:25

21   Beyond the scope.

22        THE WITNESS:  ███████████████████████

23        MR. THOMASCH:  We'll take a break.

24        THE VIDEOGRAPHER:  We are off the record at

25   5:10 p.m.                                      17:10:34

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 271

1          (Off the record.)

2          THE VIDEOGRAPHER:  We are back on the record

3   at 5:29 p.m.

4          You may proceed.

5          MR. WARREN: ███████████████████    17:29:46

6   ████████████████████████████████████

7   ████████████████████████████████████

8   ████████████████████████████████████

9   ████████████████████████████████████

10  ████████████████████████████████████    17:29:59

11  ████████████████████████████████████

12  ████████████████████████████████████

13         MR. THOMASCH:  Okay.  I appreciate that.

14  BY MR. THOMASCH:

15     Q.  ████████████████████████████    17:30:10

16  ████████████████████████████████

17     A.  ████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████    17:30:22

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████

25  ████████████████████████████████████    17:30:38

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 272

```
 1   ████████████████████████████████████████████
 2   ████████████████████████████████████
 3      Q.  ███████████████████████████████████████████
 4      A.  ████████████████████
 5      Q.  Okay.                                    17:31:01
 6          MR. WARREN:  It is sunny in Mountain View.
 7          THE WITNESS:  Yes, he did say that.
 8   BY MR. THOMASCH:
 9      Q.  █████████████████████████████████████
10   ███████████████████████████████████████████    17:31:10
11   ███████████████████████████████████████████
12   ███████████████████████████████████████████
13   ███████████████████████████████████████████
14          MR. WARREN:  Objection.  Misstates the
15   witness's prior testimony.                     17:31:25
16          THE WITNESS:  ██████████████████████
17   ███████████████████████████████████████████
18   ███████████████████████████████████████████
19   ███████████████████████████████████████████
20   ███████████████████████████████████████████    17:31:44
21   ██████████████
22          ████████████████████████████████████
23   ███████████████████████████████████████████
24   ███████████████████████████████████████████
25   ███████████████████████████████████████████    17:32:03
```

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 273

1 ███████████████████████████████

2 BY MR. THOMASCH:

3    Q.   ████████████████████████

4 ██████████████████████████████████

5 ██████████████████████████████████   17:32:12

6 ██████████████████████████████████

7 ██████████████████████████████████

8 ██████████████████████████████████

9 ██████████████████████████████████

10       MR. WARREN:   Objection.   Lacks foundation.   17:32:37

11 Assumes facts not in evidence.

12       THE WITNESS:   ████████████

13 BY MR. THOMASCH:

14    Q.   ████████████████████████

15 ████████████████████   17:32:44

16       MR. WARREN:   Objection.   Asked and answered.

17       THE WITNESS:   ████████████████

18 ██████████████████████████████████

19 ████

20 BY MR. THOMASCH:   17:32:56

21    Q.   ████████████████████████

22 ████████████████

23    A.   ████████████████████████

24 ██████████████████████████████████

25 ██████████████████████████████████   17:33:20

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 274



1

2

3    Q.

4

5         MR. WARREN:  Objection.  Vague.        17:33:36

6         THE WITNESS:

7

8

9

10                                               17:33:52

11

12  BY MR. THOMASCH:

13     Q.   Okay.  With regard to the Galaxy Nexus, that

14  had been on sale prior to late June 2012; correct?

15     A.   The Galaxy Nexus was on sale before       17:34:03

16  June 2012, yes.

17     Q.   And it was on sale with the Ice Cream

18  Sandwich operating system; correct?

19     A.   Correct.

20     Q.   And at some point there was a launch of the  17:34:18

21  Jelly Bean operating system after late June 2012;

22  correct?

23     A.   It was around end of June.  I think it was

24  actually June 27th, around that time, is when

25  Jelly Bean launched.                             17:34:41

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 275

1     Q.   ████████████████████████████

2   ███████████████████████████████

3   ███████████████████

4          MR. WARREN:  Objection.  Assumes facts not

5   in evidence.  Lacks foundation.          17:34:53

6          THE WITNESS:  ██████████████████

7   ██████████████

8   BY MR. THOMASCH:

9     Q.   ████████████████████████████

10  ████████████████████████████████          17:35:10

11  ██████████████████

12    A.   ████████████████████████

13    Q.   ███████████████

14         MR. WARREN:  Objection.  Beyond the scope.

15         THE WITNESS:  ████████████████          17:35:24

16  ████████████████████████████████████

17  ████████████████████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████████████████████          17:35:42

21  BY MR. THOMASCH:

22    Q.   Okay.  In Ice Cream Sandwich QSB had

23  universal search; is that correct?

24         MR. WARREN:  Objection.  Calls for legal

25  conclusion.  Beyond the scope.  Vague.          17:35:58

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

1      THE WITNESS:  When you say "universal

2   search," what do you mean?

3   BY MR. THOMASCH:

4      Q.   Have you used that term in your business,

5   sir?                                              17:36:06

6      MR. WARREN:  Objection.  Vague.  Beyond the

7   scope.

8      THE WITNESS:  I just want to be very

9   specific about what we mean here, because that --

10  "universal search" could mean a lot of things.    17:36:10

11  BY MR. THOMASCH:

12     Q.   Have you ever heard it used to denote the

13  ability to search both locally and the Internet

14  simultaneously --

15     MR. WARREN:  Objection.  Calls --          17:36:21

16  BY MR. THOMASCH:

17     Q.   -- with one -- with entry of one search

18  term?

19     MR. WARREN:  Objection.  Calls for a legal

20  conclusion.  Beyond the scope.                    17:36:26

21     THE WITNESS:  We don't typically -- or at

22  least I don't typically use that term, which is why

23  I'm asking for a definition from you.

24  BY MR. THOMASCH:

25     Q.   What term do you use to denote the ability  17:36:43

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 277

1    to have a single search term lead to a search of the

2    Internet and a search of the local phone top?

3         MR. WARREN:  Objection.  Beyond the scope.

4         THE WITNESS:  Typically I don't talk about

5    those two things as one thing.  I think of web          17:36:59

6    search as one thing, and I think of phone top

7    search -- which is the term I typically use -- as

8    phone top, what's on the phone literally.

9    BY MR. THOMASCH:

10        Q.    ███████████████████████████████           17:37:11

11   ████████████████████████████████████████

12   ████████████████████████████████████████

13        MR. WARREN:  Objection.  Beyond the scope.

14   Vague.

15        THE WITNESS:  The Google document?           17:37:22

16   BY MR. THOMASCH:

17        Q.    ██████████████████████████████

18   ████████████████████████████████████████

19   ██████████████████████████████████████

20   ████████████████████████                           17:37:32

21        MR. WARREN:  Objection.  Beyond the scope.

22        THE WITNESS:  ████████████████████████

23   ████████████████████████████████

24        MR. THOMASCH:  Let me show you a document

25   produced by Google bearing Bates numbers -- first     17:38:25

HIGHLY CONFIDENTIAL NONPARTY BUSINESS INFORMATION

Page 278

1   page bearing Bates number that ends in the number

2   62038, dated Tuesday, August 22, 2006.  This will be

3   Exhibit 11.

4           DEPOSITION REPORTER:  12.

5           MR. THOMASCH:  12, please.                 17:38:43

6           (Exhibit 12 was marked for identification

7           and attached hereto.)

8           THE WITNESS:  Thank you.

9   BY MR. THOMASCH:

10      Q.   Take a moment to look at this document, sir, 17:39:01

11  and see if you recognize it and if it's a document

12  that you would have received in the regular course

13  of your business during 2006.

14          MR. WARREN:  Objection.  Beyond the scope.

15  BY MR. THOMASCH:                                   17:43:07

16      Q.   Have you had a chance to look through this?

17      A.   I did.

18      Q.   This is a document you received in the

19  regular course of your business in or about August

20  of 2006; is that correct?                          17:43:14

21          MR. WARREN:  Objection.  Lacks foundation.

22          THE WITNESS:  Yeah.  I don't really know how

23  to define "regular course of business."  It does

24  look like an email that I received, but I don't know

25  how to say whether that was the regular course of    17:43:25