QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Cal. Bar. No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Cal. Bar No. 228601)
michaelfazio@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**DECLARATION OF KEVIN JEFFAY, PH.D. IN SUPPORT OF SAMSUNG'S OPPOSITION TO APPLE'S BRIEF REGARDING ONGOING ROYALTY RATES FOR U.S. PATENT NO. 5,946,647**<br><br>**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**<br><br>Date:      December 18, 2014<br>Time:     1:30 p.m.<br>Place:    Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh |

02198.51981/5942652.17

I, Dr. Kevin Jeffay, declare:

1.      I am a tenured professor in the Department of Computer Science at the University of North Carolina at Chapel Hill where I currently hold the position of Gillian T. Cell Distinguished Professor of Computer Science.

2.      I have been retained on behalf of defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, (hereafter collectively referred to as "Samsung"), as an expert in the above-captioned case.  As part of that engagement I have been asked to provide expert opinions on modified Samsung products and whether they infringe asserted claim 9 of U.S. Patent No. 5,946,647 (hereafter, "the '647 patent").

3.      I submit this declaration in support of Samsung's Opposition to Apple's Motion for Ongoing Royalties.  If asked, I am prepared to testify regarding the matters I discuss in this declaration.

4.      I reserve the right to supplement or amend this declaration based on any new information that is relevant to my opinions.

## I.      **PERSONAL BACKGROUND**

5.      I have a Ph.D. in computer science from the University of Washington, a M.Sc. degree in computer science from the University of Toronto, and a B.S. degree with Highest Distinction in mathematics from the University of Illinois at Urbana-Champaign.

6.      I have been involved in the research and development of computing systems for over 30 years. I have been a faculty member at the University of North Carolina since 1989 where I perform research and I teach in the areas of operating systems, distributed systems, real-time and embedded systems, computer networking, multimedia computing and networking, and network management, among others. I consider myself an expert in these areas as well as others.

7.      I have authored or co-authored over 100 articles in peer-reviewed journals, conference proceedings, texts, and monographs in the aforementioned areas of computer science and others. I am currently an Associate Editor for the journal Real-Time Systems and have

02198 51981/5942652 17 9

1

previously served as the Editor-in-Chief for the journal Multimedia Systems. In addition, I have edited and co-edited numerous published proceedings of technical conferences and have edited a book of readings in multimedia computing and networking (with Hong-Jiang Zhang) published by Morgan Kaufman. I am a co-author (with Long Le and F. Donelson Smith) of a monograph related to computer network protocols, and a co-author (with Jay Aikat and F. Donelson Smith) of a second monograph related to experimental computer networking.

8.    I have served on numerous proposal review panels for the National Science Foundation and other international funding agencies in the aforementioned areas of computer science. I have served as a program chair or member of the technical program committee for over 100 professional, international, and technical conferences, workshops, and symposia.

9.    I have worked for, and had research collaborations with, companies such as Cisco Systems, CloudShield, VMware, Lucent, AT&T, Cabletron/Aprisma, IBM, Dell, Sun, Intel, DEC, and Hewlett Packard, among others.

10.    I am a named inventor on three U.S. Patents. These patents are generally related to computer networking and the delivery of services over networks.

11.    In my research and teaching I have considered problems of the design and implementation of distributed computer systems and services including computer networks, operating systems, and network communication protocols.  For example, in the early 1990s I led a team to develop a distributed platform for collaborative work.  Part of this work involved the construction of distributed shared workspaces and desktop videoconferencing systems using digital audio and video as well as a storage system for storing and browsing distributed hypertext and hypermedia documents.  A common theme in these systems involved automating processes and user activities spanning local and remote computers including finding structures in artifacts in the storage system and enabling users to perform actions on those structures.  Much of this work was performed jointly with industry.  For example, my research group collaborated with, and at

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**
DECLARATION OF KEVIN JEFFAY, PH.D.

times was funded by, companies such as Intel, IBM, DEC (now HP), Cabletron (now Enterasys), and AT&T Bell Laboratories (now Alcatel-Lucent).

12.    I have served as an expert witness and technical consultant in litigation matters concerning distributed systems, operating systems, multimedia networking, computer networks, cellular and wireline telephony, embedded systems and embedded software, real-time systems, among others.  This work has been performed on behalf of entities such as HTC Corp., Pioneer Electronics, Alpine Electronics, Verizon, Lucent, Motorola, AT&T, Nortel Networks, Cisco Systems, Google, Yahoo!, Microsoft, Green Hills Software, Akamai Technologies, Dell, and Cox Communications, among others.  I have testified in several trials, arbitrations, and claim construction hearings as an expert witness.

13.    I attach as Exhibit 1 my curriculum vitae, which includes a more detailed list of my qualifications.

## II.    LEGAL STANDARDS

14.    In this section I describe my understanding of certain legal standards. I have been informed of these legal standards by Samsung's attorneys.  I am not an attorney and I am relying only on instructions from Samsung's attorneys for these legal standards.  In conducting my analysis, I have applied the legal understandings set out in this declaration.

15.    I understand that assessment of infringement is a two step process. First, the language of the patent claims must be construed by the Court. Second, the claims as construed are applied to the accused product or process to determine whether the accused product or process meets each and every limitation of the claim as construed by the Court. To establish infringement of a patent, I understand that it is the patentee's burden to show that each accused product practices every limitation of at least one asserted claim in that patent.

16.    I understand that the patentee has the burden of proving infringement by a preponderance of the evidence. I understand that this standard requires that the patentee present evidence that as a whole shows that the fact sought to be proved is more probable than not.

3

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF KEVIN JEFFAY, PH.D.

17.    I understand that to literally infringe a claim, an accused product must literally meet every limitation of the claim.  I understand that every claim limitation is essential in proving infringement, and that the absence of even one limitation in an accused product avoids infringement.

### III.    THE ASSERTED CLAIM OF THE '647 PATENT

18.    The '647 patent was filed on February 1, 1996 and issued on August 31, 1999.  The '647 patent indicates on its face that it is assigned to Apple Computer, Inc.  The named inventors are James R. Miller, Thomas Bonura, Bonnie Nardi, and David Wright.  The title of the '647 patent is "System and Method for Performing an Action on a Structure in Computer-Generated Data."

19.    The Abstract of the '647 patent describes "[a] system and method [that] causes a computer to detect and perform actions on structures identified in computer data."  ('647 Abstract.) The Abstract further states that the "system provides an analyzer server, an application program interface, a user interface and an action processor."  ('647 Abstract.)  "The analyzer server receives from an application running concurrently data having recognizable structures, uses a pattern analysis unit, such as a parser or fast string search function, to detect structures in the data, and links relevant actions to the detected structures."  ('647 Abstract.)  The Abstract states that "the user interface can present and enable selection of the detected structures, and upon selection of a detected structure, present the linked candidate actions."  ('647 Abstract.)  "Upon selection of an action, the action processor performs the action on the detected structure."  ('647 Abstract.)

20.    The '647 patent specification sets forth the components of the system:  "a central processing unit (CPU), input/output (I/O) means, and a memory that includes a program to identify structures in a document and perform selected computer-based actions on the identified structures."  (2:21-25.)  The software program includes "program subroutines that include an analyzer server, an application program interface, a user interface and an action processor."  (2:25-27.)

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.

21.     The '647 patent specification describes the "analyzer server" as "receiv[ing] data from a document having recognizable structures, and us[ing] patterns to detect the structures. Upon detection of a structure, the analyzer server links actions to the detected structure." (2:28-31.)

22.     The '647 patent specification defines each "action" as "a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked. An action may specify opening another application, loading the identified structure into an appropriate field, and closing the application. An action may further include internal actions, such as storing phone numbers in an electronic phone book, addresses in an electronic address book, appointments on an electronic calendar, and external actions such as returning phone calls, drafting letters, sending facsimile copies and e-mail, and the like." (2:31-41.)

23.     "Upon selection of a detected structure, the user interface presents and enables selection of candidate actions. When a candidate action is selected, the action processor performs the selected action on the selected structure. " (2:48-53.)

24.     I understand that Apple asserted claim 9 of the '647 patent against Samsung's products in this action.  That claim along with independent claim 1 from which it depends is set forth below:

02198 51981/5942652 17 9

5

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.

**1.** A computer-based system for detecting structures in data and performing actions on detected structures, comprising:

an input device for receiving data;

an output device for presenting the data;

a memory storing information including program routines including

an analyzer server for detecting structures in the data, and for linking actions to the detected structures;

a user interface enabling the selection of a detected structure and a linked action; and

an action processor for performing the selected action linked to the selected structure; and

a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines.

**9.** The system recited in claim 1, wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions.

25.     Asserted claim 9 of the '647 patent is directed to a computer system with several components, including specific software routines that provide certain functionality.  As recited above, claim 9 requires three program routines: an "analyzer server," a "user interface" and an "action processor."  Claim 9 of the '647 patent (through independent claim 1 from which it depends) requires "a user interface enabling the selection of a detected structure and a linked action."  Thus, the user interface of claim 9 must enable the selection of a ***detected*** structure.  In other words, if the user interface does not enable the selection of a detected structure—i.e., detection does not begin until selection is complete—that user interface would not infringe claim 9 (or claim 1) of the '647 patent, either literally or under the doctrine of equivalents.

## IV.     CLAIM CONSTRUCTION

26.     The Court in this matter construed one term from the '647 patent:   "action processor."  I understand the Court construed that term to mean ""program routine(s) that perform the selected action on the detected structure."

02198 51981/5942652 17 9

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.

27.     I understand the District Court for the Northern District of Illinois (Judge Posner) previously issued claim construction rulings in *Apple v. Motorola*, Case No. ND-IL-08540, that construe the terms "an analyzer server" and "linking actions to the detected structures."  Order of March 19, 2012, *Apple Inc. v. Motorola*, Case No. 1:11-cv-08540, Dkt. 669 (N.D. Ill.).   The Federal Circuit affirmed Judge Posner's constructions.  *Apple Inc. v. Motorola, Inc*., No. 12-1548, Slip Op. at 22-27 (Fed. Cir. Apr. 25, 2014).

28.     Judge Posner held, and the Federal Circuit affirmed, that the proper construction of the phrase "analyzer server" is "a server routine separate from a client that receives data having structures from the client."  *Apple Inc. v. Motorola, Inc*., No. 12-1548, Slip Op. at 22-23 (Fed. Cir. Apr. 25, 2014).

29.     Judge Posner held, and the Federal Circuit affirmed, that the proper construction of the phrase "linking actions to the detected structures" is "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure."  *Apple Inc. v. Motorola, Inc*., No. 12-1548, Slip Op. at 24-25 (Fed. Cir. Apr. 25, 2014).

30.     I understand that the Court in this action has further instructed that Judge Posner's constructions, as affirmed by the Federal Circuit, are to be applied here.

## V.     SAMSUNG'S MODIFIED PRODUCTS

31.     As an initial matter, in paragraph 11 of his declaration, Dr. Vellturo—whom I understand is not a technical expert—states that since the verdict, "versions 4.4.3 and 4.4.4" of Android have been released by Google and "Samsung has updated neither the S3 nor the Note II to these newest versions of Android."  But whether Samsung has updated the Galaxy S3 or Note II is not relevant to Apple's infringement allegations for claim 9 of the '647 patent.  Instead, I understand the correct inquiry is whether Samsung has modified the accused Browser and Messenger applications in those devices.  As I detail below, Samsung has modified both of those applications for the accused products since the time of the verdict.

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF KEVIN JEFFAY, PH.D.

32.     Dr. Vellturo also erroneously claims that "Dr. Mowry's testimony shows that Samsung made a conscious decision to reintroduce the '647 patent technology when Google modified the base version of the relevant Android code in connection with the introduction of Ice Cream Sandwich and Jelly Bean before trial."  Vellturo Decl. ¶ 41.  But this (and the remaining allegations in Dr. Vellturo's declaration) misses a number of critical points:  (1) as just discussed, Dr. Vellturo is focusing on the Android version rather than the accused application, and the two are not equivalent; and (2) the testimony Dr. Vellturo references relates only to the <u>Messenger</u> application, which Samsung has unequivocally changed as detailed below.

33.     As detailed in the declarations of Ms. Juhui Lee and Mr. Sungwoo Cho, Samsung has modified or replaced all of the source code accused by Apple of infringing claim 9 of the '647 patent during trial.  Specifically, Samsung modified or replaced the Browser application in all Galaxy S III products still on sale:  SCH-I535 PP, SPH-L710T, SGH-T999L, SCH-R530, SCH-R530X, SCH-S968 ("the Galaxy S III products").  For devices where Samsung replaced the Browser application, Samsung replaced the accused code with either a new web browser application based on the open-source version of Chrome, i.e., Chromium ("SBrowser") or with the closed-source Chrome application developed by Google ("Chrome Browser").  On the other devices, Samsung modified the Browser application to function differently ("Stock Browser"). Accordingly, all Galaxy S III products still on sale do not have the same Browser code that was accused at trial.  Samsung has also modified the Messenger application in the devices still on sale as explained in detail below.

34.     Aside from Samsung's modified products which I discuss extensively in this declaration, I note that Apple and Dr. Vellturo have misrepresented my testimony at trial concerning the ease of designing around claim 9 of the '647 patent.  I testified at trial that a design around to the pop-up menu of *claim 9*, such as a pull-down menu, "would be fairly simple," that "it's not a big change," and would take "on the order of a day."  Trial Tr. at 1797:21-1798:8.  Ms. Hackborn agreed that "[c]hanges like these shouldn't take more than a day for an engineer."  Trial

8

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.

Tr. at 1587:11-1588:11.  Contrary to Apple and Dr. Velturo's misrepresentations, neither Ms. Hackborn nor I ever testified that implementing a complete design around would take a single day. Rather, both Ms. Hackborn and I testified to the time for an engineer to change the code for implementing something different from a pop-up menu.  Trial Tr. at 1587:11-1588:11 (Hackborn); 1797:21-1798:8 (Jeffay).  In fact, I understand Samsung sought a broader design around that addressed unasserted claim 1 in addition to claim 9 because of Apple's and Dr. Mowry's suggestions at trial that it would potentially pursue infringement of claim 1 in a later proceeding. *See, e.g.,* Trial Tr. at 1821:7-21 (Jeffay Cross); 2797:11-21 (Mowry) ("[I]f a system infringed claim 9, that would mean that it would satisfy every element of claim 1, and if the only change that you made was the replace the pop-up menu, then by definition, the device would still infringe claim 1.").

## A. SBrowser

35.    I understand Samsung engineer Ms. Juhui Lee concurrently submits a declaration concerning Samsung's modifications to the Browser application.  I have reviewed Ms. Lee's declaration and the code trace therein, and have independently completed my own review of the code as well.  In the SBrowser application, Samsung has removed the accused long press behavior (the generation of a specific context menu), replacing it with a generic menu that does not account for any "structure" as that term is understood in the context of the '647 patent.  This can be seen in the screenshots below:

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.



**SBrowser**

In the screenshots above, the left side depicts the ordinary display of a web page in the SBrowser application prior to any user interaction. The screenshot on the right, in contrast, shows SBrowser's depiction of the same web page after a user has performed a long press gesture on a displayed phone number. Instead of highlighting the entire phone number, the SBrowser highlights only the delimited text immediately underneath the user's touch, here the characters "412-." The SBrowser application gives four options: "Share via," "Find," "Translate" and "Web search."

36.     Samsung also modified the source code so that the context menu is displayed only after a short press gesture is completed (i.e., the menu is displayed only after any selection made by the user has completed). As explained below, the SBrowser source code confirms that SBrowser does not include a "a user interface enabling the selection of a detected structure" as

02198 51981/5942652 17 9

**HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE**
DECLARATION OF KEVIN JEFFAY, PH.D.

required by independent claim 1 (and dependent claim 9) of the '647 patent. ███████

02198 51981/5942652 17 9

11

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE

DECLARATION OF KEVIN JEFFAY, PH.D.



37.

02198 51981/5942652 17 9

12

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.



HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.

38. ██████████████████████████████████
████████████████████████████████████████
████████████   ███████████████████   ████████████
████████████

39.    The SBrowser application lacks the functionality accused by Apple of infringing in the previous Browser application; it lacks any long press context menu functionality.  Moreover, because detection in the SBrowser application does not occur until after a short press gesture is completed (i.e., until after selection), the SBrowser application does not infringe claim 9 of the '647 because it lacks "a user interface enabling the selection of a *detected* structure."

**B.    Stock Browser**

40.    I have reviewed Ms. Lee's declaration and the code trace therein as it pertains to Stock Browser, and have independently completed my own review of the code as well.  In my opinion, by creating the modified Stock Browser application, Samsung has removed all the accused long-press functionality from the original Browser application.  In the Stock Browser application, Samsung has removed the accused long press behaviour, replacing it with a generic menu that does not account for any "structure" as that term is understood in the context of the '647 patent.

41.    The Stock Browser application utilizes Android's "view" system to display user interface elements. █████████████████████████████
█████████████████████████   █████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

02198 51981/5942652 17 9

14

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.

42.

43.

A generic text selection menu is then created.  Thus, a long press gesture in Stock Browser creates only a generic menu; the code for the accused long press context menu behavior has been removed.  Because only the

**HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE**
DECLARATION OF KEVIN JEFFAY, PH.D.

1    long press gesture was accused at trial, Samsung has removed all accused code from the Stock

2    Browser application.

3        44.    In addition to modifying the Browser application so that the ██████████

4    class's detection routines are not invoked on determination of a long press gesture, Samsung also

5    modified the Browser so that detection only occurs as a result of a short tap gesture.   ████

6    ██████████████  ██████  ██  ████  ████████████████  ████

7    █████████████████████████████████████████████████████████

8    █████████████████████████████████████████████████████████

9    █████████████████████████████████████████████████████████

10    ███████  ████████████████████████████████████████████████

11    █████████████████████████████████████████████████████████

12    █████████████████████████████████████████████████████████

13    █████████████████████████████████████████████████████████

14    █████████████████████████████████████████████████████████

15    █████████████████████████████████████████████████████████

16    ████████████████████████████████████

17        45.    In summary, in my review of the code, I determined that no detection routines are

18    ever initiated in response to a long-press gesture in Stock Browser. Rather, as discussed above,

19    the long press gesture triggers the display of a generic menu that is not based on the selection or

20    detection of a particular structure. Moreover, I determined that detection routines and the display

21    of a context menu are only initiated by the short press gesture ██████████████

22    ███████████████████████████████████████████ By removing the

23    accused long press functionality and relocating the context menu to the short tap gesture, Samsung

24    has modified the accused functionality to further avoid infringement of claim 9 of the '647 patent.

25

26

27

28                     16

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**
DECLARATION OF KEVIN JEFFAY, PH.D.

C. <u>**Chrome**</u>

46.     I have also used the closed-source Chrome application, and can confirm that it, too, does not infringe claim 9 of the '647 patent.  I understand Apple did not accuse the Chrome Browser application even though it was (and is) used on devices accused by Apple of infringing several claims of the '647 patent.

47.     In the Chrome application, the long press menu merely presents a generic menu that does not include any "linked actions."  This can be seen in the screenshots below:



**Chrome**

In the screenshots above, the left side depicts the ordinary display of a web page in the Chrome application prior to any user interaction.  The screenshot on the right, in contrast, shows Chrome's depiction of the same web page after a user has performed a long press gesture on a displayed

02198 51981/5942652 17 9

17

phone number.  Instead of highlighting the entire phone number, the SBrowser highlights only the delimited text immediately underneath the user's touch, here the characters "412".  The Chrome application gives a number of options via a drop-down menu at the top of the screen, represented by various icons.  These include options for selecting the entire page, copying the selected text, or performing a web search on the selected text.

48.     On a short tap gesture, the Chrome web browser does not do anything.  This can be seen in the screenshots below:



**Chrome**

In the screenshots above, the left side depicts the ordinary display of a web page in the Chrome application prior to any user interaction.  The screenshot on the right shows Chrome's depiction of the same web page after a user has performed a short tap gesture on a displayed phone number.

02198 51981/5942652 17 9

18

1  Notably, there is no difference at all between the two screenshots.  The Chrome web browser does
2  not do anything when a short tap gesture is performed.

3       49.     In Chrome, no "structures" are "detected" when text is loaded.  This is apparent
4  simply from using the application, as no context menus are presented at all.  There are thus no
5  "detected structures" as required by claim 9 of the '647 patent.  Neither the long press gesture nor
6  the short press gesture in Chrome provide "a user interface enabling the selection of a detected
7  structure" as required by independent claim 1 of the '647 patent.  Accordingly, Chrome does not
8  infringe claim 1 and, therefore, claim 9 of the '647 patent.

9       **D.    Messenger**

10      50.     I understand Samsung engineer Mr. Sungwoo Cho concurrently submits a
11  declaration concerning Samsung's modifications to the Messenger application.  I have reviewed
12  Mr. Cho's declaration and the code trace therein, and have independently completed my own
13  review of the code as well.

14      51.     As can be seen in the source code, Samsung has changed Messenger's source code



02198 51981/5942652 17 9

19

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.



Therefore, due to Samsung's changes,

**HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE**
DECLARATION OF KEVIN JEFFAY, PH.D.

█████████████████████████████████████████████████████████

██████

52.    As can be seen in the code above, in Samsung's modified Messenger application,

█████████████████████████████████████████████████████████

████████████████████████████   Thus, the Messenger application does not infringe claim 1

(or claim 9) of the '647 because it lacks "a user interface enabling the selection of a ***detected***

structure."

I declare under penalty of perjury that the foregoing is true and correct.   Executed in

Chapel Hill, North Carolina on October 5, 2014.

By: _____

Kevin Jeffay, Ph.D.

HIGHLY CONFIDENTIAL – OUTSIDE
ATTORNEYS' EYES ONLY – SOURCE CODE
DECLARATION OF KEVIN JEFFAY, PH.D.