# EXHIBIT E

## Unredacted Version of Document Sought to be Sealed

Attorneys' Eyes Only - Pursuant to Protective Order

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3

   APPLE INC. a California,        )
4  Corporation,                    )
                                   )
5                  Plaintiff,      )
                                   )
6            vs.                   ) Case No.
                                   ) 12-CV-00630-LHK
7  SAMSUNG ELECTRONICS CO., LTD., )
   a Korean business entity;       )
8  SAMSUNG ELECTRONICS AMERICA,    )
   INC., a New York corporation;  )
9  SAMSUNG TELECOMMUNICATIONS      )
   AMERICA, LLC, a Delaware        )
10 limited liability company,     )
                                   )
11                 Defendants.     )
   -----------------------------)

12

13

14          ATTORNEYS' EYES ONLY

15       PURSUANT TO PROTECTIVE ORDER

16              VIDEOTAPED

17     DEPOSITION OF KEVIN JEFFAY

18         New York, New York

19      Tuesday, September 24, 2013

20

21

22

23

24 Reported by:
   FRANCIS X. FREDERICK, CSR, RPR, RMR
25 JOB NO. 65990

Attorneys' Eyes Only - Pursuant to Protective Order

Page 82

1  principles, is there a section of a patent

2  that's most instructive regarding the scope of

3  the invention?

4         MR. ERWINE:  Objection.  Calls for

5     a legal conclusion.                          11:35

6     A.    I don't think -- I don't think I

7  state that a particular section is most

8  important.

9     Q.    If you'll grab the '647 patent, I

10 think -- Exhibit 5 I think.                     11:35

11    A.    No.  Sorry.  I got the wrong one.

12         Yes.

13    Q.    So you see that there's different

14 sections of the patent.  There's the abstract,

15 ten figures, and then there's specification      11:36

16 that's divided into sections, background of

17 the invention, summary of the invention, brief

18 description of the drawings, and then detailed

19 description of the preferred embodiment.  And

20 then following is the claims.                    11:36

21         Do you see that?

22    A.    I do.

23    Q.    And in your opinion are any of

24 those sections more instructive than the

25 others as to what the proper scope of the        11:36

Attorneys' Eyes Only - Pursuant to Protective Order

Page 84

1    terms were construed in the prior case

2    involving Motorola?

3            A.    Yes.

4            Q.    Do you agree with the

5    constructions that were issued by the court in        11:38

6    the Motorola litigation?

7                 MR. ERWINE:   Objection.   Calls for

8            a legal conclusion.

9            A.    I believe in my report I say that

10   I agree with the construction of analyzer           11:38

11   server.

12           Q.    So in your opinion that's the

13   construction given by the court in the

14   Motorola litigation is how one of ordinary

15   skill would understand that term as it's used        11:38

16   in the '647 patent claims?

17           A.    I think it's consistent with how a

18   person of ordinary skill in the art would

19   understand the term within the context of the

20   patent.                                              11:38

21           Q.    If you were to offer a

22   construction, would you amend the construction

23   that was provided in the Motorola litigation?

24                MR. ERWINE:   Objection.   Calls for

25           a legal conclusion.                          11:39

Attorneys' Eyes Only - Pursuant to Protective Order

Page 98

1    one of ordinary skill at the time of the

2    invention would have understood analyzer

3    server as it's used in claim 1?

4         A.    No.

5         Q.    You understand that Dr. Mowry's       12:02

6    offered opinion as to how one of ordinary

7    skill would understand that term.  He's

8    offered that in his opening report.  Do you

9    remember seeing that?

10        A.    I remember his discussion.  I         12:02

11   don't remember with sufficient clarity to say

12   that he was offering it under the framework of

13   the understanding of a person of ordinary

14   skill in the art.  But I do remember him

15   opining on claim construction.                    12:03

16        Q.    But you have no opinion as to how

17   one of ordinary skill would understand the

18   term analyzer server as it appears in claim 1,

19   correct?

20        MR. ERWINE:  Objection.  Calls for           12:03

21   a legal conclusion.

22        A.    As I say, outside of the

23   constructions, no.  I'm just using the

24   constructions, both parties' constructions, as

25   they exist today.                                  12:03

Attorneys' Eyes Only - Pursuant to Protective Order

Page 112

1    first look at paragraph 267.

2        A.    Okay.  Let me -- I'm kind of

3    running out of space here so let me...

4              Okay.  I have it.

5        Q.    Okay.  So in paragraph 267 of your      12:28

6    rebuttal report you are opining as to at least

7    one reason why you believe the browser on

8    Froyo, Gingerbread and Ice Cream Sandwich

9    devices do not satisfy the analyzer server

10   limitation.  Is that accurate?                    12:28

11       A.    Okay.  I've reviewed that

12   paragraph.  Maybe you could just reask the

13   question.

14       Q.    Sure.  In this paragraph you are

15   providing at least one reason in your opinion     12:29

16   why the accused products, the accused browser

17   products running Froyo, Gingerbread and Ice

18   Cream Sandwich do not satisfy the analyzer

19   server limitation of claim 1; is that

20   accurate?                                          12:29

21       A.    Yes.

22       Q.    And in paragraph 267 you begin by

23   saying:  "Moreover, Dr. Mowry's opinion in

24   paragraph 229 that 'one of ordinary skill in

25   the art' would understand the shared libraries   12:29

Attorneys' Eyes Only - Pursuant to Protective Order

Page 113

1  he identified above to set aside the server

2  reserve limitation of claim 1 is wrong."

3         Do you see that?

4    A.   I do.

5    Q.   You say, "Tellingly, Dr. Mowry          12:29

6  cites no evidence that this is the case and

7  provides no explanation why this is the case."

8         Do you see that?

9    A.   I do.

10   Q.   And then you have this sentence --      12:29

11  these two sentences.  "A person of ordinary

12  skill in the art would not find that a shared

13  library is a server.  Shared libraries and

14  servers are different well-known concepts in

15  computer science and even a computer science   12:30

16  major, for instance a student of Dr. Mowry's

17  at Carnegie Melon University, would not

18  confuse the two."

19        Do you see that?

20   A.   I do.                                    12:30

21   Q.   Do you agree with those two

22  sentences?

23   A.   I do.

24   Q.   What evidence can you cite to me

25  that you identify in your opinion opening       12:30

Attorneys' Eyes Only - Pursuant to Protective Order

Page 114

1   report or rebuttal report that one of ordinary

2   skill would not find that a shared library is

3   a server as that term is used in the asserted

4   claims?

5        A.    So let's preface this.  I will        12:30

6   point you out the evidence but let's preface

7   this discussion with the understanding that in

8   my opinion Dr. Mowry cited no evidence or no

9   analysis for his proposition.  So what I am

10  left to rebut is just a sentence that says      12:30

11  shared library -- or what he's identified as

12  shared libraries of the server and that's I

13  it.  That's all I have to rebut.

14            And what I'm rebutting it is if

15  we're just talking about the words, then a      12:31

16  person of ordinary skill would understand

17  they're different.  So the evidence that's

18  cited is -- that's specifically cited is in

19  paragraph 268, I cite to the IEEE dictionary,

20  and in particular their definition of the word  12:31

21  server, and say that the IEEE dictionary says

22  that, you know, that servers are separate

23  programs -- or sorry.  That a server is a

24  component of a system that is separate from

25  and communicates with other programs.           12:31

Attorneys' Eyes Only - Pursuant to Protective Order

Page 115

1          And I also cite some standard

2     undergraduate operating system texts at the

3     bottom of this paragraph.  The Silvershaft,

4     the Tannenbaum and the Comer text.

5          Q.   So referring to that last group,      12:32

6     these texts, did you cite any page numbers,

7     any passages, any specific portions of these

8     textbooks that supposedly supports your

9     opinions?

10         A.   I don't.  And it's important to       12:32

11    understand that because Dr. Mowry has provided

12    no analysis, again, all I'm left with is

13    words.  He's just said word, shared library,

14    word, server.  So that's all I've got to work

15    with and I'm put in the position of trying to    12:32

16    prove a negative.

17              And what I'm saying is it's not in

18    these texts.  So it's not like there's a

19    passage that I can point to that says that

20    something is not something because typically     12:32

21    that's not the way books work.

22              So what I'm saying here is that if

23    you consider these texts and the treatment

24    that they have of servers and shared

25    libraries, you'll understand that, you know,     12:32

Attorneys' Eyes Only - Pursuant to Protective Order

Page 116

1    absent some special type of server or special

2    type of shared library when those two words

3    are just used together -- or when those two

4    words appear, they're separate concepts.

5        Q.    So you can't point to anything at          12:33

6    this point in those textbooks specifically

7    that distinguishes servers from shared

8    libraries; is that correct?

9        A.    What I'm saying is that they

10   all -- that if you go to these texts and you       12:33

11   look at how servers are taught in these texts,

12   that they're all going to describe it exactly

13   as the IEE -- not exactly but, you know,

14   consistent with what the IEE has and that

15   that's different than a shared library.            12:33

16       Q.    Okay.  So my question was a really

17   simple yes-or-no question.  Can you identify

18   sitting here today any portion or passage of

19   any of those textbooks that contrast a server

20   with a shared library?                             12:33

21       A.    I mean, the answer is no.  And the

22   issue is not because they don't explicitly do

23   it.  It's because such a thing -- they are so

24   different that texts treat them as completely

25   separate entities.                                 12:34

Attorneys' Eyes Only - Pursuant to Protective Order

Page 117

1          So it's not that they don't say

2    it.  It's just -- like I say, I'm being forced

3    to prove a negative and you -- generally you

4    can't point to evidence that directly proves a

5    negative.                                          12:34

6          Q.    So the answer to my question was

7    no.

8              MR. ERWINE:  Objection.  Asked and

9          answered.

10         A.    Yeah.  I think I answered the        12:34

11   question.

12         Q.    Well, let's talk about -- you

13   mentioned the IEEE dictionary that you cite.

14   So I'm going to mark Exhibit 8.  It's a

15   portion of what I believe is the IEEE          12:34

16   dictionary that you cite.

17              (Deposition Exhibit 8, document

18         headed IEEE 100 - The Authoritative

19         Dictionary of IEEE Standards Terms

20         Seventh Edition, marked for             09:36

21         identification as of this date.)

22   BY MR. VINCENT:

23         Q.    So let's look at the definition of

24   the fifth definition of server -- first of

25   all, strike that.                               12:35

Attorneys' Eyes Only - Pursuant to Protective Order

Page 118

1          Exhibit 8, is this excerpts of the

2    IEEE dictionary that you're citing in

3    paragraph 268?

4          A.    This -- the cover page here

5    certainly makes it look like it is.            12:35

6          Q.    Okay.  And I believe you're citing

7    the fifth definition of server in paragraph

8    268; is that correct?

9          A.    Yes.

10         Q.    So the fifth out of six that are     12:35

11   listed there?

12         A.    Yes.

13         Q.    And just to read what that

14   definition states:  "The software component on

15   one device that provides services for use by    12:35

16   clients on the same or another device."

17              Did I read that correctly?

18         A.    You did.

19         Q.    Where in this definition does it

20   distinguish servers from shared libraries?       12:35

21         A.    It doesn't.  But it also -- not to

22   be flippant about it, but it also doesn't

23   distinguish it from elephants.  I mean,

24   they're separate -- they are separate concepts

25   and because they are completely separate         12:36

Attorneys' Eyes Only - Pursuant to Protective Order

Page 119

1    concepts you would not expect a server here to

2    differentiate itself from a shared library.

3    So the answer to your question is this says

4    nothing about shared libraries.  And in a

5    sense that proves my point.  If there was some          12:36

6    relationship, direct relationship between a

7    server and a shared library it would be in

8    this definition.

9         Q.    Okay.  Where in this definition

10   does it discuss that a server must run in a             12:36

11   separate process from a client application?

12        A.    I mean, even this definition here,

13   definition 5, you know, implies it.  This is

14   sort of saying what it is.  Not necessarily

15   how it's implemented.  But I'll simply point           12:37

16   out that because definition 5 says that it

17   provides -- the server is the software

18   component on one device that provides services

19   for use by clients on the same or another

20   device, it can't be part of the client because         12:37

21   it's saying the client and the server can be

22   separated across devices.

23        Q.    It can be but it's not required?

24        A.    No, I said it can't be.

25        Q.    Sorry.  It can't be separated              12:37

Attorneys' Eyes Only - Pursuant to Protective Order

Page 120

1    across devices?

2         A.    No, no, no.

3         Q.    I'm not understanding what you

4    said.

5         A.    I think what I said was that          12:37

6    the -- that this says to a person of ordinary

7    skill in the art, that the -- sorry.  The

8    overarching question here is is there some

9    requirement that it be a separate process.

10        Q.    My specific question was where in     12:38

11   this definition does it state that a server

12   must be executed in a separate process from

13   the client.

14        A.    Okay.  So process is an operating

15   system concept that may not exist in every     12:38

16   operating system.  Therefore, it would be

17   inappropriate really to put that level of

18   implementation detail into a definition.

19             So this is saying what it is

20   rather than necessarily how it's realized.     12:38

21   But what I would say is that realized on a

22   system, on any operating system that supported

23   processes, the person of ordinary skill of the

24   art would know that definition 5 requires them

25   to be in separate processes because it says    12:38

Page 121

1    that they can be on -- that the client and the

2    server can be on separate devices and there's

3    no way they can be part of the same process if

4    they're on different process.

5         Q.    But it also says they can be on         12:39

6    the same device, correct?

7         A.    That's right.  But it's one

8    definition that has to apply to these two

9    scenarios.

10        Q.    So you're saying that because they      12:39

11   can be on separate devices that must

12   necessarily mean that it has to be in a

13   separate process even if it's on the same

14   device.  That's what you're saying those words

15   mean?                                             12:39

16        A.    No.  I'm not -- this isn't saying

17   anything about processes.

18        Q.    Thank you.

19              Let's -- if you'll turn back to

20   your opening report, paragraphs 287 to 290 --    12:39

21        A.    Sorry.  Opening report.

22        Q.    Opening, report, yeah.  Page 126.

23        A.    Hang on.  Hang on.

24              (Pause on the record.)

25        A.    Just give me that number once          12:40

Page 122

1    more, please.

2         Q.    Sure.  Page 126.

3         A.    Got it.

4         Q.    Paragraphs 287 to 290.

5         A.    Got it.                               12:40

6         Q.    So in these paragraphs you're

7    discussing your alleged distinction between

8    shared libraries and servers and you cite a

9    few in e-mails among the inventors; is that

10   right?                                          12:40

11        A.    I do.

12        Q.    In your opinion do these e-mails

13   support the idea that shared libraries are

14   distinct from servers as the term is used in

15   the '647 patent?                               12:40

16        MR. ERWINE:  Objection.  Calls for

17        a legal conclusion.

18        A.    I think these e-mails support the

19   notion that the inventors were differentiating

20   between an analyzer server as a server and an   12:41

21   analyzer server as a -- well, what they're

22   basically saying is -- one inventor is saying

23   that they've built an analyzer server using a

24   client server model.  And that everything --

25   so this is in '96.  So -- sorry.  The context   12:42

Attorneys' Eyes Only - Pursuant to Protective Order

Page 123

1    here is this is the first e-mail on page 127

2    from Bonura to Miller and c.c.'d to others.

3    So this is after the patent has been filed so

4    this is one of the inventors saying that

5    everything that they've been thinking about,        12:42

6    Live Doc, employing the client server model

7    and Live Doc my understanding is is their

8    original conception of the invention, employs

9    a client server model.

10            And someone says there's something         12:42

11   different that's a shared library version.

12   And so I think that supports the notion that

13   the inventors were referring to these things

14   differently.

15       Q.    Let me back up and kind of parse          12:42

16   that answer a little bit.  So you said they

17   thought that -- were thinking of the analyzer

18   server solely in terms of the client server

19   model.  Who's they?

20       A.    That would Tom Bonura.                     12:43

21       Q.    So "they" is plural, right?

22       A.    I'm not great with grammar.  He.

23   The author of the e-mail on the top of page

24   126 -- 7.

25       Q.    So, to your knowledge, do you know         12:43

Attorneys' Eyes Only - Pursuant to Protective Order

Page 124

1  whether any of the other inventors viewed

2  their invention as limited to a client server

3  architecture?

4      A.    No.

5      Q.    And speaking of Mr. Bonura -- and        12:43

6  let's turn to paragraph 290 again.  The e-mail

7  you cite from Mr. Bonura dated November 28th,

8  1996.

9         Do you see that?

10     A.    Yes.                                     12:43

11     Q.    If you look at the middle of that

12 paragraph, he states, "I am looking into

13 implementing the server as a shared library

14 rather than a first class application."

15        Do you see that?                            12:43

16     A.    Oh, sorry.  At the top.  Yes.  I

17 see that.

18     Q.    So Mr. Bonura says he is going to

19 implement the server as a shared library,

20 correct?                                           12:44

21     A.    Well, what I wrote here was that

22 he's referring to the -- implementing not the

23 server but the detection routines as a shared

24 library rather than a server.

25     Q.    But what Mr. Bonura wrote was "I'm      12:44

Attorneys' Eyes Only - Pursuant to Protective Order

                                                        Page 125

1    looking into implementing the server as a

2    shared library."

3              That's what he wrote, correct?

4         A.   I'm sorry.  Are you referring to

5    me to --                                          12:44

6         Q.   No.  I'm sorry.  I'm referring you

7    to the e-mail that you've copied into --

8         A.   Oh, oh, oh, oh, oh, oh.  I thought

9    we were -- okay.

10        Q.   If you look on page -- it's on       12:44

11   page 129, there's an e-mail dated Wednesday,

12   December 18th, 1996.

13        A.   Yep.

14        Q.   And in the middle of the first

15   paragraph of that e-mail Mr. Bonura states:    12:44

16   "I'm looking into the implementing the server

17   as a shared library rather than a first class

18   application."

19              Do you see that?

20        A.   Sure.  I see that.                     12:45

21        Q.   So Mr. Bonura says he was going

22   to -- he was looking into implementing the

23   shared library, correct?

24        A.   Yep.  That's what he says.

25        Q.   He does not say he's going to        12:45

Attorneys' Eyes Only - Pursuant to Protective Order

Page 126

1    implement a shared library instead of a

2    server.  He doesn't say that, correct?

3         A.    No.  Which makes sense, because,

4    as I say, a shared library by itself does

5    nothing.                                        12:45

6         Q.    So on what basis are you opining

7    that Mr. Bonura is distinguishing between a

8    server and a shared library?

9         A.    The basis is his e-mail in

10   November of '96, you know, possibly by         12:45

11   December of '96.  You know, it's hard to know

12   if he's referring to -- in this e-mail as the

13   server if he means that as the function of the

14   server or the server itself.  It just says

15   he's looking into it.  It hasn't said he's     12:46

16   done it.  And, in any event, you know, so

17   maybe his understanding of -- he's changed his

18   understanding between November and December.

19        Q.    So at least in the e-mail of

20   December 18th, 1996 Mr. Bonura was -- he        12:46

21   believed that the server, however he used that

22   term, could be implemented as a shared

23   library; is that fair?

24        A.    It doesn't say thinking about the

25   belief.  It just says he's looking into it.     12:46

Attorneys' Eyes Only - Pursuant to Protective Order

Page 127

1      Q.     Do you think Mr. Bonura was

2   e-mailing things he didn't believe to be true?

3   Do you have any reason to believe that?

4          MR. ERWINE:  Objection.  Calls for

5      speculation.                                   12:46

6      A.     I believe he was honestly saying

7   he was looking into it.

8      Q.     Okay.  Flip the page to page 130.

9      A.     Okay.

10     Q.     And you mention in paragraph 293 a      12:46

11   passage from the file history.  Do you see

12   that?

13     A.     Yes.

14     Q.     And you quote a particular

15   paragraph from the file history.                 12:47

16          Do you see that?

17     A.     I do.

18     Q.     Do you believe that that passage

19   that you cite supports the idea that the

20   server as used in these asserted claims is       12:47

21   distinct from a shared library operating in

22   the applications process?

23     A.     So you keep on using the word

24   "process" in your questions and I'll just

25   point out, you know, that that's not a term      12:47

Attorneys' Eyes Only - Pursuant to Protective Order

Page 128

1    that I'm using here.  So --

2        Q.    If I could, look at paragraph 292,

3    at the sentence, it's one long sentence, you

4    do use the word process.  You say:  "I note

5    further to the extent Apple interprets the        12:48

6    analyzer server claim term and not just Judge

7    Posner's construction of it that covers shared

8    libraries or other code that runs in an

9    applications process, it is similarly

10   inconsistent with the understanding of a          12:48

11   person of ordinary skill in the art would have

12   of use of the term server in the claims and

13   what the inventors' clear understanding of an

14   analyzer server was distinct from a shared

15   libraries operating in the applications          12:48

16   process."

17       A.    There I absolutely use the term.

18       Q.    So you do use the term.

19       A.    Yes.  But you're pointing to the

20   bits of the report that don't reference           12:48

21   process and asking me to -- questions about

22   whether or not it supports some notion of

23   process or not.

24       Q.    So in 293 you begin with, "Indeed,

25   as discussed above in Section 5 the inventors     12:48

Attorneys' Eyes Only - Pursuant to Protective Order

Page 129

1  explain the invention to the PTO by

2  distinguishing it from applications that the

3  detected structures -- from applications that

4  detected structures and linked into actions

5  via code internal to the application."          12:49

6          Do you see that?

7      A.    I do.

8      Q.    So does any of that passage that

9  you cite support the notion that an analyzer

10 server is distinct from a shared library        12:49

11 operating in the applications process?  Yes or

12 no.

13     A.    Can you read the question again.

14         (Record read.)

15     A.    This is not dealing with that        12:49

16 issue.  So that's not what I'm -- that's not

17 the point that's being made here.

18     Q.    What is the point?

19     A.    The point that's being made here

20 is arguing that the -- separateness.  That the   12:49

21 server is separate from the application.

22     Q.    And what do you see in that

23 passage you cite that supports that point?

24     A.    That because it describes the

25 invention as a system-wide service, service     12:50

Attorneys' Eyes Only - Pursuant to Protective Order

Page 130

1    being an active term, service means it has to

2    be an executable entity, it can't be something

3    passive like a shared library, but this isn't

4    making a comment about a shared library.  So

5    this is just simply saying that this was one          12:50

6    of the bases that the inventors used to

7    distinguish their invention from the prior

8    art, the fact that it was a system-wide

9    service.

10        Q.    Okay.  So nothing in this passage,          12:50

11   at least if I understand, and correct me if

12   I'm wrong, nothing in this passage of the file

13   history supports the notion that the analyzer

14   server must run in a separate process from the

15   client; is that correct?                              12:50

16        A.    No.  I think -- it's, again, the

17   separateness is being addressed here and the

18   fact that it is a system-wide service that can

19   be used to enable cooperating systems to

20   detect recognizable structures.  So if it's          12:51

21   one service, one thing, an active component

22   that can be used by cooperating systems, I

23   think that would tell a person of ordinary

24   skill in the art that this system-wide service

25   is separate from the systems that it             12:51

Attorneys' Eyes Only - Pursuant to Protective Order

Page 131

1   cooperates with.

2        Q.    So in your opinion, the use -- the

3   applicant's use of the word service somehow

4   implies that the server, analyzer server, must

5   run in a separate process from a client          12:51

6   application?

7             MR. ERWINE:   Objection.

8        Mischaracterizes the witness's

9        testimony.

10       A.    It's the whole sentence.   It's not   12:51

11  just the word.   It's the whole sentence.

12       Q.    What other words in that

13  sentence --

14       A.    In, addition, applicant,

15  invention, is, a, system-wide, service, that,    12:51

16  can, be, used, to, enable, cooperating,

17  systems, to, detect, recognizable, structures,

18  in, their, data.

19            All those words.

20       Q.    So in your opinion that statement    12:51

21  requires that the analyzer server be run in a

22  separate process from a client application?

23            MR. ERWINE:   Objection.

24       Mischaracterizes the witness's

25       testimony.                                  12:52

Attorneys' Eyes Only - Pursuant to Protective Order

Page 132

1    A.   It's not a requirement.  It's this

2  is how the applicants were describing their

3  invention.

4    Q.   Sorry.  Let me ask the question.

5  Is it a requirement of claim 1 that the              12:52

6  analyzer server run in a separate process from

7  client application?

8         MR. ERWINE:  Objection.  Calls for

9    a legal conclusion.

10   A.   So there are competing claim            12:52

11 constructions here.  We've been speaking all

12 this time about Judge Posner's construction.

13 And the only requirement in Judge Posner's

14 construction is that you have server routines

15 that are separate from a client.  That receive   12:52

16 data having structures from the client.

17 That's what's required.

18   Q.   Does that require that the server

19 run in a separate process from the client

20 application?                                      12:52

21        MR. ERWINE:  Same objection.

22   A.   As I've testified earlier, process

23 is an operating system specific concept so

24 if -- you know, whether or not you're going to

25 require process is going to be a                  12:52

Page 133

1    requirement -- it's going to be specific to

2    the environment where you're allegedly

3    practicing the invention or allegedly

4    practicing the environment.  It would be

5    interpreting this construction in the context          12:53

6    of a particular implementation environment.

7              But the construction itself

8    doesn't -- just requires separateness.

9         Q.   So could there be implementations

10   that are covered by Judge Posner's                      12:53

11   construction of analyzer server where the

12   server does not run in a separate process from

13   the client application?

14        A.   If you had an operating system

15   that, you know -- an old -- a primitive, what           12:53

16   today -- by today's standards we call a

17   primitive operating system, so something very

18   unlike the accused devices that did not

19   support the process abstraction, it's

20   possible.                                               12:53

21             But the accused devices are very

22   sophisticated operating systems that do

23   support the process abstraction.

24        Q.   Look at the '647 patent.

25        A.   Sure.                                         12:54

Attorneys' Eyes Only - Pursuant to Protective Order

Page 134

1      Q.    You would agree that differences

2  in the claims suggest that the analyzer server

3  is not necessarily separate from the

4  application supplying the data.

5              MR. ERWINE:  Objection.  Calls for      12:54

6       a legal conclusion.

7      Q.    Wouldn't you?

8      A.    I don't know what you're talking

9  about.

10     Q.    Are you familiar with the              12:54

11 principle of claim differentiation?

12     A.    Generally.

13     Q.    What's your understanding of that

14 principle?

15             MR. ERWINE:  Objection.  Calls for      12:54

16      a legal conclusion.

17     A.    I mean, my off-the-cuff

18 understanding is -- I don't remember this is

19 claim differentiation or not, but that if you

20 use the same words in different claims they         12:54

21 have the same meaning.

22     Q.    If you look at claim 3 it cites

23 the system recited in claim 1 wherein the

24 input device receives the data from an

25 application running concurrently and wherein      12:55

Attorneys' Eyes Only - Pursuant to Protective Order

Page 135

1   the program routine stored in memory further

2   comprise an application program interface for

3   communicating with the application.

4            Do you see that?

5        A.    I do.                                      12:55

6        Q.    So claim 3 additionally requires,

7   in addition to what's required by claim 1,

8   that the input device receive the data running

9   concurrently among other things, correct?

10       A.    Yes.                                       12:55

11       Q.    So the fact that claim 3

12  additionally requires that the input device

13  receive data from an application, that

14  strongly suggests that the analyzer server of

15  claim 1 is not necessarily separate from an     12:55

16  application containing the data, correct?

17            MR. ERWINE:   Objection.   Calls for

18       a legal conclusion.

19       A.    I'm not following your argument.

20       Q.    Okay.   So as one of ordinary skill   12:55

21  reading these claims, you'll see that -- you

22  understand that the dependent claims contain

23  all of the limitations of the parent claim and

24  then add additional limitations.   Do you

25  understand that?                                 12:55

Attorneys' Eyes Only - Pursuant to Protective Order

Page 136

1       A.    Yes.

2       Q.    So claim 3 says the system recited

3  in claim 1, meaning that it contains all the

4  limitations of claim 1, correct?

5       A.    Yes.  Yes.            12:56

6       Q.    And then it adds additional

7  limitations, correct?

8       A.    Yes.

9       Q.    That are not present in claim 1.

10      A.    Yes.                   12:56

11      Q.    Okay.  So let's look at that

12  language after the system recited in claim 1.

13  The first thing it says is wherein the input

14  device receives the data from an application

15  running concurrently.               12:56

16        Do you see that?

17      A.    I do.

18      Q.    So as a matter of logic and as one

19  of ordinary skill would read these claims the

20  fact that claim 3 requires that the data be     12:56

21  received from an application running

22  concurrently, that strongly suggests that the

23  analyzer server of claim 1 is not necessarily

24  separate from an application; is that true?

25  Do you agree with that?              12:56

Page 137

1          MR. ERWINE:  Objection.  Calls for

2      a legal conclusion.

3      A.   So I haven't studied this in

4  detail but I'll tell you off -- just off the

5  cuff, that what this is saying is I think all          12:56

6  the parties in this case have interpreted the

7  input device of claim 1 to be a hardware

8  device.  And claim 3 is introducing -- I

9  believe, is introducing the notion of an

10 application and it's executing concurrently.          12:57

11          So I just think this says you have

12 an application going -- executing concurrently

13 with a device and that pretty much happens in

14 every -- devices, in particular input and

15 output devices, typically always execute          12:57

16 concurrently of whatever is happening on the

17 main processor which is the application.

18          So I'm not seeing where the

19 analyzer server comes in in these two lines,

20 the first two lines of claim 3.          12:57

21      Q.   So do you have any opinion --

22      A.   Other than the fact that -- excuse

23 me.  Other than the fact that -- you know, as

24 you say, it's incorporated because claim 1 is

25 incorporated.          12:57

Attorneys' Eyes Only - Pursuant to Protective Order

Page 138

1     Q.   So do you have any opinion as to

2  whether the presence of this additional

3  limitation has any bearing on whether the

4  analyzer server of claim 1 is separate from an

5  application?                                    12:58

6          MR. ERWINE:  Objection.  Calls for

7      a legal conclusion.

8      A.   I haven't offered any opinions on

9  claim 3.

10     Q.   And do you have any opinions        12:58

11 sitting here today?

12          MR. ERWINE:  Same objection.

13     A.   I'll call them more as

14 observations because I haven't studied this.

15 But concurrency generally refers to          12:58

16 scheduling.  Not separateness.  Whether or not

17 two things run concurrently is a function of

18 how they're executed, not how they're

19 organized.  And this seems to me to say that

20 application being software is executing        12:58

21 concurrently with a device.  And, you know,

22 that's a perfectly fine -- fine limitation.

23          But I don't think it -- yeah, I

24 can't -- having -- without having studied this

25 more, I can't see the tie into an analyzer     12:58

Attorneys' Eyes Only - Pursuant to Protective Order

Page 139

1    server.

2              MR. VINCENT:   Okay.   Let's take a

3        break.

4              THE VIDEOGRAPHER:   The time is

5        1 p.m.   We're going off the record.        12:58

6              (Luncheon recess taken at 1:00

7        p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Attorneys' Eyes Only - Pursuant to Protective Order

Page 258

1          MR. VINCENT:  I don't have any

2     further questions at this time.

3          MR. ERWINE:  We're all done.

4          MR. VINCENT:  Thank you, sir.

5          THE VIDEOGRAPHER:  The time is        05:23

6     5:24 p.m.  We're going off the record.

7          (Time Noted:    5:23 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19          _____

20          KEVIN JEFFAY

21

22     Subscribed and sworn to before me

23     this ____ day of _____, 2013.

24

25     _____