# EXHIBIT B

# Unredacted Version of Document Sought to be Sealed

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>    Defendants. | CASE NO. 12-cv-00630-LHK<br><br>**REBUTTAL EXPERT REPORT OF DR. ALEX C. SNOEREN CONCERNING U.S. PATENTS NOS. 6,847,959 AND 7,761,414**<br><br><br>**HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE** |

Nonetheless for the purpose of responding to his opinions, I will assume that each of the references Dr. Chase cites as a basis for invalidity in his report actually qualify as prior art, unless otherwise noted. My treatment of them as such should not be interpreted to suggest that I agree they do, in fact, qualify as prior art under the applicable legal standards.

## 2. The "Testing and Demonstration" Systems that Dr. Chase Built for this Case are Not Prior Art

407. In Section VIII(A) of his report, Dr. Chase refers to testing he says he conducted and directed others to conduct of "various prior art systems" discussed in his report. CR, ¶ 228.

408. Based on my understanding of the applicable legal standards, none of the test systems that Dr. Chase refers to in this section of his report are prior art. Specifically, none of them is a printed publication. Moreover, the particular systems he and Samsung built for purposes of testing and demonstration in this litigation, which involve the installation and configuration of software on various computers and devices, were not actually in public use, imported, sold or offered for sale prior to the filing date of the '414 Patent.

409. Moreover, I and others acting at my direction have inspected these systems and determined that some of the data observed in the video exhibits accompanying the Chase Report appear to be missing. Specifically, with respect to the Evolution "test system" depicted in Chase Video Exhibits 1-3, the mail data shown in those videos was not observed when the mail client was opened, thus I presume that data was deleted from the system prior to inspection. With respect to the Thunderbird "test system" depicted in Chase Video Exhibit 8, the mail data shown in that video was not observed when the mail client was opened, thus I presume that data was deleted from the system prior to inspection. With respect to the Windows Mobile "test system" depicted in Chase Video Exhibits 10, 14 and 15, the mail data shown in those videos was not observed when the mail client was opened, thus I presume that data was deleted from the system prior to inspection.

410. In addition, the Windows Mobile "test system" does not appear to provide reliable synchronization functionality through the ActiveSync application. Specifically, I observed that the HP iPAQ RX 1950 device in Dr. Chase's "test system" will not sync data via the ActiveSync

application more than once without removing the battery and rebooting the device. After the first sync, an attempt to synchronize data results in the sync icon spinning without any synchronization actually occurring.

411. The video exhibits attached to the Chase Report are consistent with my observations and provide no evidence that the Windows Mobile "test system" Dr. Chase relied upon is capable of reliable synchronization functionality through the ActiveSync application. Chase Video Exhibits 11-13 begin with the device booting and end after the first synchronization attempt. No further synchronization attempts are shown in these videos and presumably any subsequent attempt to sync data using the ActiveSync application would have failed as I observed through inspection of this "test system." Accordingly, these video exhibits are misleading in that they suggest the synchronization functionality in Dr. Chase's "testing and demonstration" system is reliable, repeatable, and that it demonstrates the functionality he ascribes to the "Windows Mobile with ActiveSync" reference in his report—which was certainly not the case when I observed that system.

### 3.   Case Narrowing

412. I understand that Samsung was required to limit the number of references or combinations on which it could rely. I understand that Samsung identified to the Court the following references or combinations upon which it intends to rely to allege invalidity of the '414 Patent (See July 8, 2013 Samsung's Reduction of Invalidity References (Dkt. No. 671)):

1) Evolution
2) iSync
3) iTunes
4) U.S. Patent Application Publication No. 2004/0139235 to Rashid et al. ("Rashid")
5) Rashid, in combination with U.S. Patent No. 6,000,000 to Hawkins et al.
6) Thunderbird
7) U.S. Patent No. 7,506,006 to Vadlamani et al. in combination with Hill et al., Smart Client Architecture and Design Guide.
8) Windows Mobile ActiveSync

HIGHLY CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY—SOURCE CODE

Dated: September 13, 2013

_____
Alex C. Snoeren

EXPERT REPORT OF DR. ALEX SNOEREN
CONCERNING U.S. PATENT NOS. 6,847,959 AND
7,761,414                                             207