# EXHIBIT 6
## Unredacted Version Of Document Sought To Be Sealed

Conformed Execution Copy

ITC Protective Order Version

# PATENT LICENSE AND SETTLEMENT AGREEMENT

November 11, 2012 (Taiwan time)

Between

## HTC AMERICA, INC., HTC CORPORATION and S3 GRAPHICS CO., LTD

and

## APPLE INC.

*Confidential*

## PATENT LICENSE AND SETTLEMENT AGREEMENT

**THIS PATENT LICENSE AND SETTLEMENT AGREEMENT** ("Agreement") is made on the eleventh day of November, 2012 (Taiwan time) ("Effective Date")

**BETWEEN**

HTC AMERICA, INC., a corporation validly organized and existing under the laws of the State of Washington and having its principal office at 13920 SE Eastgate Way, Suite 400, Bellevue, WA 98005 USA, HTC CORPORATION, a corporation validly organized and existing under the laws of Taiwan and having its principal office at 23 Hsin Hua Rd., Taoyuan 330, TAIWAN, and S3 GRAPHICS CO., LTD., a corporation validly organized and existing under the laws of the Cayman Islands and having its principal office at 2nd Fl., Zephyr House, Mary St., P.O. Box 709, Grand Cayman, Grand Cayman Islands, British West Indies (HTC CORPORATION, collectively with its Affiliates (including HTC AMERICA, INC. and S3 GRAPHICS CO., LTD.) so long as they remain Affiliates of HTC CORPORATION, "HTC"), on the one hand, and

APPLE INC., a corporation validly organized and existing under the laws of the State of California and having its principal office at One Infinite Loop, Cupertino, CA 95014 USA (collectively with its Affiliates so long as they remain Affiliates of APPLE INC., "APPLE"), on the other hand.  As used herein, "Party" means APPLE or HTC, and "Parties" means APPLE and HTC collectively.

**WHEREAS**

(A) Each Party is willing to grant to the other Party, and the other Party is interested in obtaining, non-exclusive licenses, covenants not to sue, waivers, and releases under certain patents and patent applications of such first Party, all on the terms set forth herein; and

(B) The Parties are parties to certain worldwide litigation and investigations (the "Litigation"), including those set forth on Exhibit F-1, and other certain worldwide actions, claims, and other proceedings (including certain reexaminations, oppositions, revocation actions, nullity actions, and other similar actions) challenging or objecting to the validity, scope, enforceability or otherwise of or with respect to the other Party's Patents (the "Opposition Proceedings"), including those set forth on Exhibit F-2, and the Parties now desire to settle and dismiss without prejudice the Litigation, terminate the Opposition Proceedings, and enter into this Agreement providing for a full, final, complete and global settlement of the subject matter of the Litigation and Opposition Proceedings, all on the terms and conditions set forth herein.

**NOW, THEREFORE** and in consideration of the foregoing and the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

**1.      DEFINITIONS**

For the purpose of this Agreement the terms set forth below are defined as follows:

1.1     "Acquirer" means, with respect to a Person after a Change of Control of such Person, any Third Party or group of Third Parties that (a) becomes the beneficial owner of such first Person, (b) merges or consolidates with such first Person, or (c) has a plan or agreement approved to sell or dispose to such other Person all or substantially all of the consolidated assets of such first Person, but in each case under the foregoing (a)-(c) solely as set forth in the definition of Change of Control such that the Third Party or group of Third Parties becomes the beneficial owner of securities representing more than fifty percent (50%) of the voting power with respect to the election of directors or similar managing authority of the first Person.

1.2     "Affiliate" means, with respect to any Person, any other Person that now or hereafter directly or indirectly is controlled by such first Person.  For purposes of this definition, "control" means beneficial ownership of

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408243

*Confidential*

more than fifty percent (50%) of the voting securities of a Person or, in the case of a Person that does not have such voting securities, ownership interests representing more than fifty percent (50%) of the voting power with respect to the election of directors or similar managing authority of such Person.  For the avoidance of doubt, S3 Graphics Co., Ltd. and HTC America, Inc. are Affiliates of HTC Corporation as of the Effective Date for purposes of this Agreement.

1.3    "APPLE Mobile Communication Devices" means Mobile Communications Devices of APPLE.

1.4    "APPLE Products" means any and all past, present and future products, product lines, services, devices, systems, hardware, software, methods, or any combination of the foregoing (collectively, "Products or Services"), in each case that are offered and Sold as Products or Services of APPLE and not as Products or Services of a Third Party.

1.5    "Assert" or "Assertion" means to initiate, pursue, maintain or materially assist in an action of any nature before any legal, judicial, arbitration, administrative, executive or other type of body or tribunal that has or claims to have authority to adjudicate such action in whole or in part.  Examples of such body or tribunal include, without limitation, United States State and Federal Courts, the United States International Trade Commission and any foreign counterparts of any of the foregoing.  For avoidance of doubt, mere submission to escalation under Article 10, mere submission to arbitration under Article 11 for determination of an Additional Royalty (if any) or mere submission of an allegation of Cloning to arbitration under Article 12 of this Agreement does not constitute an Assertion for purposes of this definition.

1.6    "Carrier" means any Person who provides or operates, or has an Affiliate who provides or operates, wide area wireless telecommunication networks or wide area wireless telecommunication services on such networks and all Affiliates of such Person, including AT&T, T-Mobile, Sprint, Verizon Wireless, Rogers, France Telecom, Virgin Mobile, Vodafone and other network operators and mobile virtual network operators (MVNOs) and their Affiliates.

1.7    "Change of Control" of a Person means any of the following occurring after the Effective Date in which the beneficial owners of securities representing the right to exercise voting power with respect to the election of directors or similar managing authority of such Person immediately prior to the respective transaction or series of related transactions do not, immediately after the consummation of the respective transaction or series of related transactions, beneficially own more than fifty percent (50%) of the voting power of the surviving or resulting entity (or direct or indirect parent of the surviving or resulting entity) with respect to the election of directors or similar managing authority: (a) any Third Party or group (within the meaning of Sections 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934) of Third Parties (other than such Person, any trustee or other fiduciary holding securities under any employee benefit plan of such Person, or any company owned, directly or indirectly, by the stockholders of such Person in substantially the same proportions as their ownership of the common stock of such Person) becomes the beneficial owner, directly or indirectly, of securities of such Person representing more than fifty percent (50%) of the voting power of such Person's then outstanding securities entitled to vote generally in the election of directors; or (b) the consummation by such Person of a merger or consolidation with any other Third Party or group of Third Parties.  As used in this Agreement, a "Change of Control of a Party" means a Change of Control of HTC CORPORATION or APPLE INC. (or any Parent Holding Company under Section 9.6).

1.8    "Cloned Feature" shall have the meaning set forth in Exhibit A.

1.9    "Cloned Product" means any Covered Product of HTC that is an HTC Android Mobile Communication Device  first commercially released after the Effective Date that is determined by the arbitrators to be a "Cloned Product" in accordance with the requirements set forth in Article 12 and Exhibit A.

1.10    "Cloning" means that HTC is directly or indirectly manufacturing, offering for sale or selling one or more Cloned Features as part of a Cloned Product as set forth in Exhibit A, and "Cloned" has a corresponding meaning.

3

*Confidential*

1.11    "<u>Covered Patents</u>" means, with respect to either Party, all Patents in all jurisdictions worldwide as of the Effective Date or at any other time during the Term (but excluding Design Patents of APPLE) (a) that are owned by such Party, (b) that are controlled by such Party or which such Party has the right to license within the scope set forth in this Agreement without payment of consideration to a Third Party (other than any payments with respect to any inventions made by such Third Party while employed by such Party), or (c) as to which a Party exercises the option set forth in <u>Section 4.4(a)(ii)</u>, as applicable, including any of the foregoing Patents acquired by such Party through a merger, consolidation, equity exchange, reorganization, stock or asset acquisition or other similar transaction (subject in each case to <u>Article 9</u>).  Notwithstanding the foregoing or anything to the contrary, the Parties agree that U.S. Patent Nos. 6,708,214, 6,473,006, 7,289,772, 6,868,283, 7,020,849, 5,418,524, 5,630,152, 5,630,159, and 5,302,947 shall not be considered "Covered Patents" under this Agreement and shall not be subject to any of the licenses, covenants, releases, waivers, or other rights granted by HTC in this Agreement, including <u>Articles 2</u> and <u>4</u>, provided that this shall not affect <u>Exhibit F</u>, and further provided that if, after the Effective Date HTC reacquires the rights set forth in (a), (b), or (c) above to any of the nine patents identified above, such reacquired patent(s) will then be considered "Covered Patents" for purposes of this Agreement, including Articles 2 and 4, on and after such date, to the extent meeting the above definitions.

1.12    "<u>Covered Products</u>" means with respect to a Party:



HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY    APLNDC-Y0000408245

*Confidential*



HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408246

*Confidential*



1.13    "<u>Design Patent</u>" means a patent claiming a new, original, and ornamental design for an article of manufacture, as set forth in 35 U.S.C. 171 et seq, or as defined in equivalent foreign design patent law. The term Design Patent specifically excludes any and all utility Patents and utility models.

1.14    "<u>Distinctive APPLE User Experience</u>" shall have the meaning set forth in Exhibit A.

1.15    "<u>Essential</u>" means that, with respect to any Patent and any Wireless Standard: (a) it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and state of the art generally available at the time of promulgation (i.e., adoption and publication) of such Wireless Standard to make, sell, offer to sell, lease, use, import, export or otherwise dispose of Covered Products which comply with such Wireless Standard without infringing one or more of the claims of such Patent; (b) such Patent would be deemed essential under the applicable policy of the applicable standards setting body or other government, industry-wide or regulatory authority for such Wireless Standard; or (c) such Patent has been declared by a Party or patentee as essential for such Wireless Standard.

1.16    "<u>Have Made</u>" means the right to have a Third Party make Covered Products (including components thereof) for the use and benefit of the Party exercising such right, provided that all of the following conditions are fulfilled in respect of Covered Products (other than components meeting the limitations of subpart (b) of the definition of Covered Products):

(a)    the Party exercising such right owns, licenses or supplies the designs, specifications and/or working drawings supplied to such Third Party, or has the designs, specifications and/or working drawings developed on its behalf, in material respects, it being understood that portions may be supplied or licensed from the Third Party (provided that, in the case of a licensed design, the Party makes material contributions to the design of the final product);

(b)    such designs, specifications and/or working drawings are complete and sufficient such that no substantial additional design is needed by such Third Party (for the avoidance of doubt, in the case of the manufacture of such complete Covered Products, this does not mean that a Party must provide and own the design of all necessary component parts of such Covered Product (such as, for example and without limitation, display or memory of a Covered Product)); and

(c)    such Third Party is not allowed to sell such Covered Products to other Third Parties on its own behalf.  For avoidance of doubt, such Third Party may drop ship such products to customers on behalf of the Party exercising the have made right or act as a distributor for such Party.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408247

*Confidential*

     1.17    "<u>HTC Android Mobile Communication Devices</u>" means ██████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████

     1.18    "<u>HTC Android Mobile OS</u>" means ████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

     1.19    "<u>Mobile Communication Devices</u>" means any and all feature phones, smartphones, tablets and other computing or communications products that have:

          (a)   ███████████████████████████████████
████████████████████

          (b)   ███████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████

████████████████████████████████████████

         (i)  ████████████████████████████████████
█████████████████████████

        (ii)  █████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY       APLNDC-Y0000408248

*Confidential*

(iii) █████████████████████████████████████████████████████

(iv) █████████████████████████████████████

████████████████████████████████████████████████████████████
██████████████████████████████████

1.20    "HTC Product Line" means, with respect to HTC Android Mobile Communication Devices, such HTC Android Mobile Communication Devices that are marketed as being in the same series and/or are identified as part of the same product line in HTC's audited financial statements prepared in accordance with International Financial Reporting Standards consistently applied.  For illustrative purposes only and not in limitation, HTC One is an HTC Product Line but any HTC Android Communication Device alone (including HTC One X) is not an HTC Product Line.

1.21    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████

1.22    "NSP" means, with respect to any HTC Royalty-Bearing Units during any Payment Period, the net selling price, defined as (a) directly attributable gross revenue received by HTC from the respective Third Party for the Sale of such HTC Royalty-Bearing Units to such Third Party minus (b) documented and supportable directly attributable contra-revenue items (including, without limitation, sales returns, rebates, price protection credits, sales discounts and sales allowances but, for the avoidance of doubt, excluding any expense items incurred or accrued in the manufacture, display, sale, marketing, advertising, promotion or distribution of such HTC Royalty-Bearing Units that do not qualify as contra-revenue items), as well as charges for freight, insurance, and special packing to the extent separately included in the invoiced amount, with respect to such Sales, in each case of the foregoing (a) and (b), as reflected in HTC's audited financial statements prepared in accordance with Taiwan Generally Accepted Accounting Principles (GAAP) or International Financial Reporting Standards, as applicable, consistently applied; *provided*, *however*, that if HTC Sells the HTC Royalty-Bearing Units at no charge, the royalties payable hereunder shall be computed on the basis of the average price therefor charged to similarly situated Third Parties therefor (unless such Sale at no charge is for quality control, certification, or product evaluation of HTC Royalty-Bearing Units or similar purposes not for commercial use, or for warranty or other replacement).

1.23    "Patents" means any and all patents, patent applications and utility models (including all divisionals, continuations, continuations-in-part, reissues, renewals, and re-examinations thereof) that are filed, issued or granted in any and all countries of the world.

1.24    "Person" means any individual, corporation, partnership, limited liability company, firm, joint venture, association, joint-stock company, trust, unincorporated organization, governmental authority or other entity.

1.25    "Product" means any and all past, present and future products, product lines, services, devices, systems, components, hardware, software, methods, instructions, any combination of the foregoing, or other offerings of any kind or nature.

1.26    "Senior Representatives" means, with respect to either Party, (i) as a first level of escalation, the General Counsel of such Party ("First Level Executives"), and (ii) as a second level of escalation, the chief executive officer of such Party ("Second Level Executives").

1.27    "Sold" means sold, transferred, leased, or otherwise provided, and "Sells" and "Sales" shall have correlative meanings.

1.28    "Third Party" means a Person that is neither a Party nor an Affiliate of a Party.

1.29    "Wireless Standards" means those wireless telecommunications technologies or wireless

8

telecommunications technical specifications that either were or are (i) previously, currently or in the future promulgated by International Telecommunication Union ("ITU"), European Telecommunications Standards Institute ("ETSI"), Telecommunications Industry Association ("TIA"), Telecommunications Technology Association ("TTA"), Association of Radio Industries and Businesses ("ARIB"), Telecommunication Technology Committee ("TTC"), Institute of Electrical and Electronics Engineers ("IEEE"), 3rd Generation Partnership Project ("3GPP"), 3rd Generation Partnership Project 2 ("3GPP2"), Electronic Industries Alliance ("EIA") or other similar recognized government, industry-wide or other regulatory authorities, and which, inter alia, specify the technical and other requirements for conformity and compliance with wireless telecommunications systems, including modifications, updates and derivatives accepted by such authorities or (ii) not standardized by any such authority but have been deployed by one or more mobile network operators whose total deployed subscribers using any such technology or specification in a particular country encompasses at least twenty percent (20%) of the total subscribers in such country.  Wireless Standards include CDMA, GSM, GPRS, WCDMA, LTE, LTE Advanced, UMTS, UMB, IEEE 802.11, IEEE 802.16, IEEE 802.20, WiFi, WiMAX and successors and follow on versions of such wireless standards.

## 2.       GRANT OF LICENSES AND COVENANTS FROM HTC TO APPLE

2.1     <u>License and Covenant to HTC Covered Patents</u>.  Subject to <u>Section 5.1</u>, HTC hereby grants and conveys (and agrees to cause its Affiliates to grant and convey) to APPLE during the Term a fully-paid up, royalty-free, worldwide, nonexclusive, irrevocable (during the Term, subject to <u>Article 8</u>) non-sublicensable and nontransferable license, under HTC's Covered Patents to (a) make, Have Made, use, offer for sale, sell, import and otherwise distribute APPLE Covered Products as well as to implement methods in connection with such APPLE Covered Products for practice by or for APPLE and direct and indirect customers and users of APPLE Covered Products, (b) make and Have Made components solely for inclusion in APPLE Covered Products and (c) practice for its internal use and operations.  HTC hereby covenants not to sue APPLE for infringement of the HTC Covered Patents with respect to APPLE Covered Products to the extent licensed pursuant to this <u>Section 2.1</u> or for inducement of infringement of the HTC Covered Patents with respect to any instructions, documentation, consulting, support, integration, linking, marketing or promotion by APPLE.  HTC agrees that the license granted in this <u>Section 2.1</u> exhausts all of HTC's worldwide rights in the HTC Covered Patents with respect to APPLE Covered Products to the extent licensed pursuant to this <u>Section 2.1</u> regardless of whether the first sale or other exploitation of the APPLE Covered Products is in whole or in part within or outside of the United States or any other country.  The Parties' other obligations under this Agreement (other than as set forth in <u>Section 5.1</u>) are not conditions on the license and covenant provided in this <u>Section 2.1</u>, but instead are independent contractual commitments.  HTC agrees that this grant of the license and covenant provided in this <u>Section 2.1</u> is not executory.

2.2     <u>License and Covenant to HTC Divested Patents</u>.  Subject to <u>Section 5.1</u>, HTC hereby grants and conveys (and agrees to cause its Affiliates to grant and convey) to APPLE a fully-paid up, royalty-free, worldwide, nonexclusive, irrevocable, non-sublicensable and nontransferable license, under any of HTC's Covered Patents ownership of which is sold, assigned, or transferred by HTC to any Third Party (including if any Affiliate of HTC Corporation ceases to be an Affiliate of HTC Corporation or its successor during the Term ("<u>Former HTC Affiliate</u>"), but solely with respect to HTC Covered Patents that were owned by such Former HTC Affiliate while it was an Affiliate and continue to be owned by such Former HTC Affiliate after it ceases to be an Affiliate) during the Term other than in connection with a Change of Control of HTC CORPORATION or its successor (each, an "<u>HTC Divested Patent</u>"), until the date of last expiration of any such HTC Divested Patent, to (a) make, Have Made, use, offer for sale, sell, import and otherwise distribute products and services of APPLE as well as to implement methods in connection with such products and services of APPLE for practice by or for APPLE and customers and users of products and services of APPLE and (b) make and Have Made components solely for inclusion in such products and services of APPLE.  Such license will be effective with respect to any HTC Divested Patent immediately prior to the sale, assignment, or transfer of such HTC Divested Patent by HTC.  HTC agrees that the license granted in this <u>Section 2.2</u> exhausts all of HTC's worldwide rights in the HTC Divested Patents with respect to products and services of APPLE to the extent licensed pursuant to this <u>Section 2.2</u> regardless of whether the first sale or other exploitation of the products and services of APPLE is in whole or in part within or outside of the United States or any other country.  Within twenty (20) business days following request by APPLE to confirm whether any HTC Covered Patent has become an HTC Divested Patent, HTC shall provide to APPLE written confirmation thereof

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
APLNDC-Y0000408250

Confidential

identifying whether such HTC Covered Patent has become an HTC Divested Patent. The Parties' other obligations under this Agreement (other than as set forth in <u>Section 5.1</u>) are not conditions on the license and covenant provided in this <u>Section 2.2</u>, but instead are independent contractual commitments. HTC agrees that this grant of the license provided in this <u>Section 2.2</u> is not executory. Notwithstanding the foregoing, if HTC re-acquires ownership of any HTC Divested Patent, then such Patent will no longer be considered an HTC Divested Patent under this Section 2.2 and the license in this Section 2.2 will not apply to such Patent so long as it remains owned by HTC; however, the license in Section 2.1 will continue to apply to any such HTC Covered Patent during the Term.

**3.      GRANT OF LICENSES AND COVENANTS FROM APPLE TO HTC**

3.1      <u>License and Covenant to APPLE Covered Patents</u>. Subject to <u>Section 5.1</u>, APPLE hereby grants and conveys (and agrees to cause its Affiliates to grant and convey) to HTC during the Term a fully-paid up, royalty-free (except as set forth in <u>Section 6.2</u>), worldwide, nonexclusive, irrevocable (during the Term, subject to <u>Article 8</u>) non-sublicensable and nontransferable license, under APPLE's Covered Patents, to (i) make, Have Made, use, offer for sale, sell, import and otherwise distribute HTC Covered Products as well as to implement methods in connection with such HTC Covered Products for practice by or for HTC and direct and indirect customers and users of HTC Covered Products, (ii) make and Have Made components solely for inclusion in HTC Covered Products, and (iii) practice for its internal use and operations. APPLE hereby covenants not to sue HTC for infringement of the Apple Covered Patents with respect to HTC Covered Products to the extent licensed pursuant to this <u>Section 3.1</u> or for inducement of infringement of the APPLE Covered Patents with respect to any instructions, documentation, consulting, support, integration, linking, marketing or promotion by HTC. APPLE agrees that the license granted in this <u>Section 3.1</u> exhausts all of APPLE's worldwide rights in the APPLE Covered Patents with respect to HTC Covered Products to the extent licensed pursuant to this <u>Section 3.1</u> regardless of whether the first sale or other exploitation of the HTC Covered Products is in whole or in part within or outside of the United States or any other country. The Parties' other obligations under this Agreement (other than as set forth in <u>Section 5.1</u>) are not conditions on the license and covenant provided in this <u>Section 3.1</u>, but instead are independent contractual commitments. APPLE agrees that this grant of the license and covenant provided in this <u>Section 3.1</u> is not executory.

3.2      <u>License and Covenant to APPLE Divested Patents</u>. Subject to <u>Sections 5.1</u>, APPLE hereby grants and conveys (and agrees to cause its Affiliates to grant and convey) to HTC a fully-paid up, royalty-free, worldwide, nonexclusive, irrevocable, non-sublicensable and nontransferable license, under any of APPLE's Covered Patents ownership of which is sold, assigned, transferred, or conveyed by APPLE to any Third Party (including if any Affiliate of APPLE ceases to be an Affiliate of APPLE, Inc. or its successor during the Term ("<u>Former APPLE Affiliate</u>"), but solely with respect to APPLE Covered Patents that were owned by such Former APPLE Affiliate while it was an Affiliate and that continue to be owned by such Former Affiliate after it ceases to be an Affiliate) during the Term (each, an "<u>APPLE Divested Patent</u>"), until the date of last expiration of any such APPLE Divested Patent, to (a) make, Have Made, use, offer for sale, sell, import and otherwise distribute products and services of HTC as well as to implement methods in connection with such products and services of HTC for practice by or for HTC and customers and users of products and services of HTC and (b) make and Have Made components solely for inclusion in products and services of HTC. Such license will be effective with respect to any APPLE Divested Patent immediately prior to the sale, assignment, or transfer of such APPLE Divested Patent by APPLE. APPLE agrees that the license granted in this <u>Section 3.2</u> exhausts all of APPLE's worldwide rights in the APPLE Divested Patents with respect to products and services of HTC to the extent licensed pursuant to this <u>Section 3.2</u> regardless of whether the first sale or other exploitation of the products or services of HTC is in whole or in part within or outside of the United States or any other country. The Parties' other obligations under this Agreement (other than as set forth in <u>Section 5.1</u>) are not conditions on the license and covenant provided in this <u>Section 3.2</u>, but instead are independent contractual commitments. Within twenty (20) business days following request by HTC to confirm whether any APPLE Covered Patent has become an APPLE Divested Patent, APPLE shall provide to HTC written confirmation thereof identifying whether such APPLE Covered Patent has become an APPLE Divested Patent. APPLE agrees that this grant of the license and covenant provided in this <u>Section 3.2</u> is not executory. Notwithstanding the foregoing, if APPLE re-acquires ownership of any APPLE Divested Patent, then such Patent will no longer be considered an APPLE Divested Patent under this Section 3.2 and the license in this Section 3.2 will not apply to such Patent so long as it remains owned by APPLE; however, the license in Section 3.1 will

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408251

*Confidential*

continue to apply to any such APPLE Covered Patent during the Term.

**4.      RELEASES; DISMISSALS; COVENANTS**

4.1      <u>Releases and Covenants</u>.  Subject to <u>Section 5.1</u>, each Party, on behalf of itself, its Affiliates and their respective successors and assigns, hereby fully and irrevocably releases, acquits and forever discharges the other Party (together with its predecessors, successors, agents, attorneys, insurers, employees, officers, directors, servants, distributors, service providers, retailers, direct and indirect suppliers, and direct and indirect users and customers) and each of their respective successors and assigns, from any and all actions, causes of action, claims, demands, liabilities, losses, damages,  injunctions, ITC exclusion orders, ITC cease and desist orders, attorney fees, court costs or any other form of claim or compensation, of any kind or nature, fixed or contingent, direct or indirect, in law or equity, several or otherwise, known or unknown, suspected or unsuspected (the foregoing collectively, "<u>Liabilities</u>") that (i) arise from or relate in any way to the Litigation or the Opposition Proceedings or the negotiation of this Agreement; or (ii) arise from or relate in any way to any and all claims of any actual or alleged direct or indirect infringement of any of the Covered Patents of such Party arising in whole or in part on or prior to the Effective Date solely with respect to any and all Covered Products of the other Party to the fullest extent such activity would have been licensed, subject to covenants not to sue, or subject to exhaustion under or pursuant to <u>Articles 2</u> and <u>3</u> of this Agreement if the licenses, covenants not to sue, and other rights granted under this Agreement had been in existence at the time of such activity, whether or not any such claims are asserted in the Litigation.  Without limiting the foregoing, each Party on behalf of itself, its Affiliates and their respective successors and assigns, hereby fully and irrevocably further waives the right to recover from the other Party (together with its predecessors, successors, agents, attorneys, insurers, employees, officers, directors and servants) and each of their respective successors and assigns, any and all liabilities, damages, attorney fees, court costs or any other form of monetary claim or compensation, of any kind or nature, fixed or contingent, direct or indirect, in law or equity, several or otherwise, known or unknown, suspected or unsuspected that arise from or relate in any way to any and all claims of any actual or alleged direct or indirect infringement of any of the Covered Patents of such first Party arising in whole or in part on or prior to the Effective Date with respect to any and all products and services of such other Party; provided, however, that this does not grant any license to such other Party or any Third Party or provide any waiver or release to any Third Party.  Each Party, having specific intent to release all potential claims described in this <u>Section 4.1</u>, whether known or unknown, does hereby acknowledge and expressly waive the provisions of Section 1542 of the California Civil Code (and similar provisions in other jurisdictions, whether by statute or common law), which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH DEBTOR."

Each Party further agrees not to assert any claim of willful infringement or indirect infringement arising prior to the Effective Date under its Covered Patents against the other Party for any activities not released in accordance with this <u>Section 4.1</u>.  Each Party agrees that the other Party will be deemed not to have been put on notice of any infringement or alleged infringement of any Covered Patents of the other Party with respect to any products, services or activities of such Party.

4.2      <u>Dismissals</u>.

(a)      Within five (5) business days after the Effective Date, each Party shall (a) dismiss without prejudice (or with prejudice to the extent set forth in the applicable Exhibit F) and/or terminate upon motion all claims and counter-claims in the Litigation against the other Party by filing a stipulation and/or motion substantially in the forms attached hereto as <u>Exhibit F</u>, or in such other form as required for approval by the court or governmental authority in the Litigation to effectuate such dismissal or termination, and (b) take all necessary actions to immediately terminate or otherwise withdraw and refrain from all Opposition Proceedings to the extent permitted.  If the Administrative Law Judge prior to December 1, 2012, or the USITC prior to January 1, 2013, do not issue rulings for termination of the investigation(s) between the Parties and rescission of all injunctions, ITC

11

*Confidential*

exclusion orders, and ITC cease and desist orders, the Parties agree to use good faith reasonable efforts to submit other reasonable materials to obtain termination of those investigations and rescissions of such orders consistent with the intent of this Agreement. Neither Party makes any admission of infringement or liability by the negotiation, execution, or performance of this Agreement.

(b)        APPLE hereby grants and conveys (and agrees to cause its Affiliates to grant and convey) to HTC a fully-paid up, royalty-free, worldwide, nonexclusive, perpetual, irrevocable, non-sublicensable and nontransferable license, under European Patent No. 2 098 948 and European Patent No. 2 964 022, and all associated European national phase patents, (collectively, the "Licensed EP Patents") to (i) make, Have Made, use, offer for sale, sell, import and otherwise distribute products and services of HTC as well as to implement methods in connection with such products and services of HTC for practice by or for HTC and customers and users of products and services of HTC, (ii) make and Have Made components solely for inclusion in products and services of HTC, and (iii) practice for its internal use and operations.  APPLE hereby covenants not to sue HTC for infringement of any Licensed EP Patent with respect to HTC products and services to the extent licensed pursuant to this Section 4.2(b) or for inducement of infringement of any Licensed EP Patent with respect to any instructions, documentation, consulting, support, integration, linking, marketing or promotion by HTC.  APPLE agrees that the license granted in this Section 4.2(b) exhausts all of APPLE's worldwide rights in the Licensed EP Patents with respect to products and services of HTC to the extent licensed pursuant to this Section 4.2(b) regardless of whether the first sale or other exploitation of the products or services of HTC is in whole or in part within or outside of the United States or any other country.  The Parties' other obligations under this Agreement are not conditions on the license and covenant provided in this Section 4.2(b), but instead are independent contractual commitments.  APPLE agrees that this grant of the license and covenant provided in this Section 4.2(b) is not executory.  Without limiting the foregoing, APPLE agrees not to assert, include, or reference any Licensed EP Patent in any submission to escalation under Article 10, submission to arbitration under Article 11 for determination of an Additional Royalty (if any), or submission of an allegation of Cloning to arbitration under Article 12.

4.3        <u>Full and Complete Settlement</u>.  Each Party agrees that it shall not initiate litigation or other formal legal proceeding during the Term (as a first assertion, rather than as a defense or counterclaim to any proceeding initiated by the other Party) to challenge or cause to be challenged, directly or indirectly (including by taking affirmative action to materially assist in any such challenge), any Covered Patent of the other Party with respect to its validity or enforceability in any court, governmental authority or other tribunal anywhere in the world, unless and only to the extent that the other Party asserts, threatens to assert or provides notice of a patent infringement claim under such Covered Patent against such Party or with respect to any products, services or activities of such Party. If a Party initiates such litigation or other formal legal proceeding during the Term of this Agreement that is not permitted under the preceding sentence, then the other Party may provide written notice of such challenge to such Party referencing this Section 4.3.  If such Party does not withdraw such challenge or terminate such proceeding with respect to the Covered Patent within forty-five (45) days after such written notice from the other Party, then the other Party may terminate the license and covenant not to sue granted to such Party under Section 2.1 or 3.1 of this Agreement, as applicable, solely with respect to the Covered Patent that was challenged ("<u>Challenged Patent</u>") and Covered Patents claiming priority to or from the Challenged Patent, upon written notice to such Party so long as such challenge has not been withdrawn or terminated.  The foregoing sentence shall be the other Party's sole and exclusively remedy under this Section 4.3.  Notwithstanding the foregoing or anything to the contrary, this Section 4.3 shall not apply to (and the other Party shall not have any right to terminate any license by reason of) a Party complying with any subpoena from a Third Party or any other request or order from any court or governmental entity or any other applicable law, rule, regulation or legal process.

4.4        <u>Non-Circumvention</u>.

(a)        During the Term, to the extent that a Party has any right, title or interest in a Patent that would be a Covered Patent (including as a joint ownership interest or enforcement rights in a Patent, but excluding any minority ownership interest in a patent holding company, other patent enforcement entity, or other Third Party), but does not have sufficient rights to grant the license and/or other rights contemplated under this Agreement, (i) the Party agrees to grant licenses, covenants not to sue, waivers, and releases under such Patent as close as possible to the scope of the licenses, covenants, waivers, releases and other rights set forth in this Agreement to the extent it is

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                                   APLNDC-Y0000408253

*Confidential*

permitted to do so without payment of consideration to a Third Party; and (ii) to the extent that such Patent is not a Covered Patent solely because consideration is required to be paid to any Third Party (but consent is not required from, or if required will be requested and is not withheld by, a Third Party), then such Party will extend to the other Party an option to include such Patent in the definition of Covered Patents to the extent it is permitted to do so upon payment by the other Party of the required consideration.

    (b)    During the Term, each Party shall not take any affirmative action to materially assist in the assertion of Patents in a specific suit, action or proceeding against the other Party's Covered Products within the scope of the licenses, covenants not to sue, waivers, and releases set forth in this Agreement by a patent holding company, other patent enforcement entity, or Third Party in which such first Party has an ownership interest (other than a passive minority ownership interest) and whose structure avoids the inclusion of such Patents as such first Party's Covered Patents.  For the avoidance of doubt, mere membership in Allied Security Trust, RPX, or similar entities and mere participation in patent aggregator and patent investment funds such as Intellectual Ventures shall not by itself constitute such assistance in assertion, and further the foregoing shall not preclude such first Party from responding to a subpoena or complying with other requirements of law.  In the event a Party breaches this Section 4.4(b), the other Party shall be entitled to specific performance of such covenant and to further cause the breaching Party to comply with such covenant to promptly end any such breach and the foregoing shall be the non-breaching Party's sole remedy for any such breach.

    4.5    Reservation of Rights.  Except for the licenses, covenants not to sue, and releases expressly granted in Articles 2-4, neither Party shall acquire any rights, title or interest in or to the Covered Patents of the other Party.  All rights not expressly granted by a Party hereunder are reserved by such Party.  Without limiting the generality of the foregoing, each Party hereby expressly acknowledges, and shall cause its Affiliates to expressly acknowledge, that nothing contained herein shall be construed or interpreted as a grant, by implication, estoppel or otherwise, of any licenses, covenants not to sue, releases or other rights other than as expressly set forth herein.

## 5.    EXCLUSIONS TO GRANT OF RIGHTS

    5.1    Exclusions to Licenses and Releases.  For the avoidance of doubt and notwithstanding anything herein to the contrary, the licenses, covenants not to sue, and releases under this Agreement exclude any and all of the following:

        (a)    rights to any Design Patents of APPLE;

        (b)    any non-patent intellectual property of either Party (including copyright, trade secret, know how, trademark, trade dress, service mark, trade name, mask work or any registrations or applications for the foregoing); and

        (c)    HTC's Cloned Products to the extent set forth in Article 12 and Exhibit A.

For the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, except as set forth in Section 10.2, nothing in this Agreement shall prevent either Party from bringing or pursuing any claims, actions or proceedings in or before any court, any other governmental authority or other tribunal under or in connection with any intellectual property to the extent not subject to the licenses, covenants not to sue, waivers, or releases hereunder, including any non-patent intellectual property (including copyright, trade secret, know how, trademark, trade dress, service mark, trade name, mask work or any registrations or applications for the foregoing) or any Covered Patents to the extent not subject to the licenses, covenants not to sue, waivers, or releases hereunder.

For the avoidance of doubt and notwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall prevent APPLE from bringing or pursuing claims, actions or proceedings in connection with APPLE's Design Patents or HTC's Cloned Products (other than as set forth in Section 10.2 and Article 12, respectively) in or before any court, other governmental authority or other tribunal.

    5.2    Miscellaneous.  Nothing contained in this Agreement shall be construed as: (a) a warranty or

13

*Confidential*

representation that any manufacture, sale, use or other disposition of Covered Products will be free from infringement of Third Party Patents or Patent rights, including utility models and design Patents owned by Third Parties; (b) a warranty or representation by either Party as to the validity or scope of any Covered Patent of such Party; (c) an agreement by or obligation of either Party to (i) make claims against or to bring or prosecute actions or suits against Third Parties for the infringement of any Covered Patents of such Party or conferring any right to the other Party to make claims against or to bring or prosecute actions or suits against Third Parties for infringement of any Covered Patents of such Party, (ii) to defend any action or suit brought by a Third Party which challenges or concerns the validity, infringement or enforceability of any Covered Patents of such Party, or (iii) prosecute or maintain any Covered Patent; or (d) an obligation to furnish any technical information, technical support or know how.  The Parties understand and acknowledge that the licenses to Covered Products granted hereunder are intended to cover only the Covered Products of the Parties and are not intended to cover activities that either Party may undertake to otherwise extend such licenses to a Third Party's products (i.e. patent laundering activities).

## 6.   PAYMENTS



6.3     Fee Statements.  HTC shall submit (by initiating ACH or wire transfer) to APPLE the royalties payable under Section 6.2 and a fee statement (the "Fee Statement") each calendar quarter during the Term (each, a "Payment Period") forty-five (45)  days after the end of such Payment Period (or within the two business days before or after such date).  Each such Fee Statement shall be based on Royalty-Bearing Unit volumes in the immediately preceding Payment Period.  The requirement to provide Fee Statements for Payment Periods during any period during which this Agreement is in effect shall survive the expiration or termination of this Agreement. Each Fee Statement shall include whether Section 6.2(a)(i) or (ii) was elected as the payment basis for each HTC Royalty-Bearing Unit and the other information listed in Exhibit D (Fee Statement) and be certified by an authorized representative of HTC as complete and accurate.   Within thirty (30) days of HTC becoming aware of any underreporting or overreporting in any Fee Statement, HTC shall promptly notify APPLE thereof and submit to APPLE the corrected Fee Statement together with additional payment, or credit, due on account of such underreporting or overreporting.  Fee Statements will be maintained by APPLE as confidential information of HTC under Section 13.9 and used by APPLE solely for purposes of confirming (or disputing through the audit process) payments hereunder.

6.4     Payment Terms.  All amounts due under this Agreement are specified and shall be calculated and paid in U.S. dollars by ACH or wire transfer to the bank account specified in Exhibit C.  HTC shall convert Sales in currencies other than in U.S. dollars into U.S. dollars in accordance with HTC's customary internal accounting

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408255

*Confidential*

procedures.   Payments shall be made in full, without deduction or withholding for wire transfer fees, currency exchange fees, taxes, or any other amount, such that the amount actually received by APPLE shall be the amount specified in this Agreement, subject to Sections 6.3 and 6.7.  All payments under this Agreement are irrevocable and non-refundable (subject to any credit for overpayment), and there shall be no refund on account of any expiration or termination of this Agreement.  Any amount (and corresponding Fee Statement) not actually received by APPLE within twenty (20) days after being due shall bear interest from the due date thereof until paid in full at a rate per annum equal to the prime rate (as set forth in the Wall Street Journal on the last publication date of the applicable Payment Period) plus one percent (1.0%).   APPLE's right to receive such interest shall be in addition to any other recourse APPLE may have under this Agreement or applicable law.  Anything herein to the contrary notwithstanding, the obligations of HTC to pay interest on amounts due hereunder shall be subject to the limitation that payments of interest shall not be required, for any period for which interest is computed hereunder, to the extent (but only to the extent) that contracting for or receiving such payment by APPLE would be contrary to the provisions of any applicable law and in such event HTC shall pay APPLE interest at a rate per annum equal to the highest rate permitted by such applicable law ("Maximum Lawful Rate"); *provided*, *however*, that to the extent (but only to the extent) permitted by applicable law, payment in respect of interest received from HTC in excess of such Maximum Lawful Rate, whenever received, shall be applied to reduce the other amounts then due and payable under this Agreement to the extent of such excess and any remainder shall be immediately returned to HTC.

6.5     Audits.

(a)     HTC shall maintain full and accurate records of all HTC Royalty-Bearing Units sold, leased, transferred or otherwise provided to any Third Party during the Term hereof sufficient to confirm compliance with the royalty obligations under this Agreement and for an independent accounting firm to verify the accuracy of royalties paid and reported hereunder.  Any such records shall be stored for at least three (3) calendar years after the expiration or termination of the applicable Payment Period.

(b)     Upon the written request of APPLE, HTC shall within fifteen (15) business days of receiving such request, permit access to its records by an internationally-recognized independent accounting firm selected by APPLE and approved by HTC, which approval shall not be unreasonably withheld, for the sole purpose of performing an audit so as to assess whether HTC has complied with its royalty and reporting obligations under this Agreement.  APPLE shall have the right to perform such audits no more than once (unless the immediately preceding audit revealed an underpayment of at least ten percent (10%) of the amount that should have been paid) each calendar year and no later than within three (3) calendar years from the expiration or termination of the applicable Payment Period. In any case, no Payment Period may be audited more than once, unless and to the extent there were HTC Royalty-Bearing Units outside the scope of the first audit or if additional information is uncovered that was not available for the first audit indicating that HTC did not comply with is payment obligations for such Payment Period.

(c)     When an audit is commenced, HTC shall make available to such independent accounting firm all relevant accounts, information and documentation (including HTC's consolidated audited accounts, financial books and records, manufacturing records, shipment records, sales records, order records as well as all other existing information necessary to determine the amount of HTC Royalty-Bearing Units sold, leased, transferred or otherwise provided to any Third Party anywhere in the world during the Term).  Such independent accounting firm shall, to the extent reasonably required for the purposes of the audit, be provided with reasonable access to the staff, facilities and premises of HTC.

(d)     Such independent accounting firm and HTC will enter into a customary and reasonable non-disclosure agreement protecting the confidential information of HTC.  Such independent accounting firm will prepare a report of the results of the audit and the basis of its findings and provide the same to APPLE and simultaneously a full and exact copy to HTC; provided the report to APPLE will redact confidential information beyond the information specified in Exhibit D.

(e)     The actual fees and expenses of such independent accounting firm will be borne by APPLE, unless the audit reveals underpayment to APPLE of more than the greater of twenty-five thousand dollars

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408256

*Confidential*

(US$ 25,000) or ten percent (10%) of the amount due for the audited period, in which case HTC will promptly on demand reimburse APPLE all the actual fees and costs charged by such independent accounting firm arising out of the audit.

6.6     <u>Payment Instructions</u>.  All payments to APPLE under this Agreement shall be made by ACH or wire transfer of immediately available funds to the account set forth in Exhibit C (or such other account as APPLE may designate in writing from time to time).

6.7     <u>Taxes</u>.

(a)     Subject to the provisions of Section 6.7(b), each Party shall be solely liable for and shall pay any and all applicable income taxes, levies, duties, costs, charges, withholdings, deductions or any charges of equivalent effect imposed on such Party in respect of the transactions contemplated by this Agreement.

(b)     Where any relevant taxation authority imposes any tax on the payment by HTC to APPLE hereunder and requires HTC to withhold such tax ("<u>Withholding Tax</u>"), HTC may deduct such Withholding Tax from the payment to APPLE and remit such Withholding Tax to the relevant taxing authority on behalf of APPLE.  HTC will comply with all reasonable requests of APPLE to cooperate with APPLE in minimize such Withholding Tax and, for clarity, to the extent the United States of America or any treaty between the United States of America and Taiwan, provides a process for seeking a waiver, exemption or reduction of such Withholding Tax, shall take all necessary and/or appropriate actions reasonably requested by APPLE to assist APPLE to promptly seek such waiver, exemption or reduction and promptly complete and/or file any and all pertinent documentation. The parties acknowledge that under current law, the amounts payable by HTC to APPLE under this Agreement are subject to 20% Taiwanese withholding tax. In the event a reduced Withholding Tax rate or an exemption of Withholding Tax may apply on payments to APPLE, APPLE shall furnish to HTC as soon as practicable all documentation necessary to evidence the qualifications for the reduced rate or exemption of Withholding Tax and any such reduced Withholding Tax rate approved by the applicable governmental authorities will thereafter so apply to any future payment provided, however, APPLE shall update such documentation at HTC's reasonable request. Upon reasonable request by APPLE, HTC shall furnish APPLE with tax receipts or other documentation evidencing the payment of such Withholding Tax when available.

**7.     RELATED ENTITIES**

7.1     HTC Corporation represents and warrants to APPLE that, as of the Effective Date, each of HTC America, Inc. and S3 Graphics Co., Ltd. is its Affiliate controlled by (as such term is defined in <u>Section 1.2</u>) HTC Corporation.

**8.     TERM AND TERMINATION**

8.1     <u>Term</u>.  This Agreement shall not be binding on the Parties until it has been signed below by all Parties, at which time it shall be deemed effective as of the Effective Date.  Upon becoming effective, this Agreement shall remain in full force and effect for ten (10) years after the Effective Date or such earlier termination as set forth below (the "<u>Term</u>").

8.2     <u>Termination by APPLE</u>.  APPLE may terminate this Agreement upon written notice to HTC in the event of any material underpayment by HTC of any payment obligations hereunder (which is not cured within thirty (30) days after written notice to HTC of such underpayment as confirmed by audit under Section 6.5), provided that if HTC's failure to pay any amount is as a result of a good faith dispute  regarding whether royalties are due or the amount thereof (including as to whether a HTC Product is a HTC Royalty-Bearing Unit), then the matter will be submitted to arbitration under Article 10 to resolve such dispute, and APPLE shall be entitled to terminate this Agreement only if the arbitrators determine that a royalty is due and unpaid and HTC does not pay the royalty within twenty (20) days after the arbitrators' decision.

8.3     <u>Termination by Either Party</u>.  This Agreement in its entirety shall terminate automatically in the

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408257

*Confidential*

event of (a), (b) or (c) below unless otherwise agreed in writing by the Parties, and such termination shall be effective immediately prior to such occurrence of (a), (b) or (c) below: (a) Change of Control of a Party as set forth in Section 9.2; (b) given that the principal purpose of this contract is for each Party to benefit from the licenses, covenants not to sue and releases granted by the other Party hereunder in a cross-licensing arrangement subject to certain royalties to be paid by HTC, in the event that the granting of the licenses, covenants and releases by a Party to the other Party are not in effect or are materially impaired as a result of bankruptcy or insolvency of a Party under applicable laws, or (c)  (i) in the event that a Party makes a general assignment for the benefit of creditors, petitions for or acquiesces in the appointment of any receiver, trustee, or similar officer to liquidate or conserve its business or substantially all of its assets, makes any voluntary arrangement with its creditors regarding all or substantially all of its assets, or commences or has commenced against it (and does not cause to be dismissed within sixty (60) days) under the laws of any jurisdiction any proceeding involving its insolvency, bankruptcy, reorganization, adjustment of debt, dissolution, or any other similar proceeding for the release of financially distressed debtors (any of the foregoing, an "Insolvency"); (ii) in the event of a material impairment of a Party's licenses, covenants not to sue, and other rights granted by the other Party to such Party under this Agreement in connection with an anticipated Insolvency; (iii) in the event that a Party generally suspends payment of indebtedness; or (iv) in the event that a Party ceases operations, or suspends all or a substantially all of its business without a successor.

8.4    Termination Upon Mutual Agreement.  Other than expiration or termination pursuant to Sections 8.1, 8.2 and 8.3 above or 8.5 below, this Agreement may only be terminated by mutual written agreement of the Parties.

8.5    Termination by HTC.

(a)    If, at any time during the Term, APPLE Asserts any claim of infringement (direct or indirect) of any Patents against HTC, or against any direct or indirect customer of HTC with respect to any Products or Services of HTC (and does not withdraw such claim within 30 days of written notice from HTC), then HTC will have the right to terminate this Agreement upon written notice to APPLE at any time on or after the fifth anniversary of the Effective Date.  In such event, each Party will have the right to Assert Covered Patents against the other Party and its Products and Services for activities after the date of such termination without limitation by this Agreement. Notwithstanding the above, APPLE's mere election not to dismiss a pending Patent Litigation involving an acquired Affiliate under Section 9.4(c)(iii)(B) will not be considered an Assertion by APPLE that triggers a termination right for HTC under this Section 8.5(a).



HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408258

*Confidential*



8.6     Survival.  Upon the expiration or any termination of this Agreement, Section 2.2 (with respect to Covered Patents divested during the Term as set forth therein), Section 3.2 (with respect to Covered Patents divested during the Term as set forth therein), Article 4, Article 6 (but Section 6.2 solely with respect to accrued but unpaid amounts), Section 8.5(b)(iv), this Section 8.6, and Articles 9 – 10 and Article 13.  Except with respect to (i) a defense to Liabilities released or damages waived under this Agreement, or (ii) a defense to a claim of Patent infringement subject to the releases, licenses or covenants set forth herein, or (iii) enforcement of the express obligations of each Party under this Agreement with respect to the period that such obligations are in effect during the Term, neither Party or any of its Affiliates will use the existence or terms of this Agreement, or any arbitration proceedings or decisions under Sections 10, 11 or 12, in any action or proceeding adverse to the other Party during or after the Term.  Any decisions of any arbitration under Sections 10, 11 or 12 will only be binding upon the Parties with respect to the conduct of the Parties under this Agreement during the Term and will terminate and be of no force or effect after the Term and will not be used as a basis to assert or argue a claim for infringement (direct or indirect and whether or not willful) or Liabilities in connection with any conduct after the Term or otherwise outside the scope of the licenses set forth herein.

**9.     ASSIGNMENT; CHANGE OF CONTROL; AFFILIATES**

9.1     Assignment.  This Agreement shall be binding upon and shall inure to the benefit of each Party, their respective successors and permitted assigns.  Notwithstanding the foregoing, neither Party may assign any of its rights or obligations hereunder to a Third Party (including by contract, operation of law or otherwise) without the prior written consent of the other Party, except that (i) any Party may assign or transfer in whole or in part its rights hereunder (but not assign or transfer this Agreement in whole) without such prior written consent to any of its Affiliates, and (ii) a Party may assign this Agreement to a successor in connection with a reincorporation or reorganization that does not result in a Change of Control of such Party.  For avoidance of doubt, a Party may not assign this Agreement to a Third Party that purchases assets from such Party without the prior written consent of the other Party.  For the avoidance of doubt, a Change of Control of a Party shall be deemed an assignment solely for the purposes of Section 8.3(a) and Section 9.2 of this Agreement. The other Party shall have the rights set forth in Section 8.3(a) and Section 9.2 upon any such Change of Control; however, a Change of Control will not be considered to result in a breach of this Section 9.1.  Any attempted assignment without such consent shall be null and void, except to the extent made to any Affiliate of the Party.

9.2     Effect of Change of Control.  In the event of a Change of Control of a Party, this Agreement shall automatically terminate unless otherwise agreed in writing by the Parties, effective immediately prior to such Change of Control.  Subject to the foregoing and Section 9.1 and the consent rights contained herein and if a Party consents to an assignment by way of a Change of Control of the other Party as set forth in Section 9.1, then following such Change of Control of (a) the other Party, the licenses, covenants and other rights granted to such other Party hereunder shall (i) be limited to Covered Products of the type sold or under development by such other Party prior to such Change of Control and any new versions thereof and follow-on Covered Products substantially similar thereto, in each case in the same or similar markets as those pursued by such Party prior to such Change of Control, (ii) be limited to an annual volume equal to up to one hundred and ten percent (110%) of such other Party's volumes for Covered Products in the year preceding such Change of Control plus an additional ten percent (10%) (of the prior year's volume) annual growth rate per year, (iii) exclude any Products sold, offered for sale or under development by the Acquirer of such Party or any Affiliate of such Acquirer as of or prior to such Change of Control, even if such Products are of the same type as those sold, offered for sale or under development by such

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                          APLNDC-Y0000408259

*Confidential*

other Party prior to such Change of Control, (iv) exclude any Products sold, offered for sale or developed by such Acquirer or its Affiliates (other than as set forth in the foregoing (i)) after the Change of Control, and (v) for the purposes of the definition of "Covered Products" hereunder, all references to "trademark" or "brand" of a Party therein shall be deemed to include any trademarks and brands of such Acquirer or its Affiliates (including whether in existence as of such Change of Control or developed thereafter) and (b) HTC, Article 12 shall terminate and be of no further force or effect.  In no event shall the Patents of any Acquirer or any of its Affiliates become subject to any of the releases, licenses, covenants, waivers, or other rights granted to the other Party under this Agreement.

9.3     Divested Affiliates.  In the event any Affiliate of APPLE Inc. or HTC Corporation ceases to be any Affiliate of the same ("Former Affiliate"), (i) all rights granted to the Former Affiliate hereunder shall immediately terminate and cease on a prospective basis and no longer be of any force or effect after the Former Affiliate ceases to be an Affiliate, (ii) all releases, licenses and covenants not to sue granted to the Former Affiliate will survive and remain in effect with respect to Covered Products Sold, and other activities conducted, prior to the time the Former Affiliate ceased to be an Affiliate of a Party, and (iii) all licenses, covenants not to sue, waivers, and releases granted hereunder as to any Covered Patents of such Affiliate prior to the time the Former Affiliate ceases to be an Affiliate of a Party (including all divisionals, continuations, continuations-in-part, reissues, renewals, and re-examinations thereof) shall continue in full force and effect and shall be binding on any successor-in-interest or assign thereof with respect to such Covered Patents (including in accordance with Sections 2.2 and 3.2, as applicable), but will not apply to any Patents of the Former Affiliate obtained after the time it ceased to be an Affiliate of a Party or to any Patents of the Acquirer or any of its Affiliates.

9.4     Acquired Affiliates.

(a)     In the event either Party ("Acquiring Party") directly or indirectly acquires a Person that becomes an Affiliate of such Party after the Effective Date which Person is not involved in litigation, arbitration or other adversary proceeding with the other Party regarding Patent infringement ("Patent Litigation") immediately prior to such acquisition, such Affiliate shall automatically receive the benefit of the releases, waivers, licenses and covenants not to sue granted by the other Party under this Agreement, effective as of the effective date of such acquisition and covering all applicable activities prior thereto, and be bound by the terms and conditions hereof.

(b)     In the event the Acquiring Party directly or indirectly acquires a Person that becomes an Affiliate of such Party after the Effective Date which Person is involved in Patent Litigation with the other Party ("Non-Acquiring Party") immediately prior to such acquisition that involves only Products or Services that would qualify as Covered Products upon such acquisition, then the provisions of subsection (a) above will apply and each Party shall, or shall cause such Affiliate, as applicable, to immediately dismiss without prejudice such Patent Litigation against the other Party or such Affiliate (as applicable) as reasonably acceptable to the other Party or such Affiliate (as applicable) and such Affiliate shall automatically receive the benefit of the releases, waivers, licenses and covenants not to sue granted by the other Party under this Agreement, effective as of the effective date of such acquisition and covering all applicable activities prior thereto, and be bound by the terms and conditions hereof.

(c)     In the event the Acquiring Party directly or indirectly acquires a Person that becomes an Affiliate of such Party after the Effective Date which Person is involved in Patent Litigation with the Non-Acquiring Party immediately prior to such acquisition that involves any Products or Services that would not qualify as Covered Products upon such acquisition, then:

(i)     If HTC is the Acquiring Party, then with respect to all Products or Services of the Affiliate that would qualify as Covered Products upon such acquisition, APPLE shall immediately dismiss without prejudice such Patent Litigation against such Affiliate as reasonably acceptable to HTC, and with respect to such Products or Services such Affiliate shall automatically receive the benefit of the releases, waivers, licenses and covenants not to sue granted by APPLE under this Agreement, effective as of the effective date of such acquisition and covering all applicable activities prior thereto.

(ii)     If APPLE is the Acquiring Party, then with respect to all Products or Services of

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408260

*Confidential*

HTC that would qualify as Covered Products upon such acquisition, APPLE shall cause such Affiliate to immediately dismiss without prejudice such Patent Litigation against HTC as reasonably acceptable to HTC, and with respect to such Products or Services HTC shall automatically receive the benefit of the releases, waivers, licenses and covenants not to sue granted by APPLE under this Agreement, effective as of the effective date of such acquisition and covering all applicable activities prior thereto.

(iii)    With respect to the remainder of such Patent Litigation:

(A)    if APPLE elects to dismiss such Patent Litigation (or if there are no remaining claims by APPLE or its Affiliate as a result of paragraphs (i) and (ii) above), then HTC (or, as applicable, its Affiliate) will reciprocally dismiss any such Patent Litigation against APPLE (or, as applicable, its Affiliate), and the acquired Affiliate shall automatically receive the benefit of the releases, waivers, licenses and covenants not to sue granted by the other Party under this Agreement, effective as of the effective date of such acquisition and covering all applicable activities prior thereto, and be bound by the terms and conditions hereof; and

(B)    if APPLE does not elect to dismiss such Patent Litigation, then, without limiting HTC's rights under subsection (d) below or otherwise, HTC may elect to exercise its rights in subsection (d) below).

(d)    Notwithstanding the foregoing or anything to the contrary:

(i)    if HTC acquires a Person or assets directed at a Product or Service that is not licensed by APPLE to HTC under this Agreement, HTC will have a defensive suspension right with respect to Patents acquired as part of such Person or assets that become Covered Patents under this Agreement ("HTC Acquired Patents") as follows.  If APPLE continues to Assert or Asserts a claim of infringement of a Covered Patent against HTC or the acquired Affiliate for HTC Products or Services that are not licensed under this Agreement in a product category to which such Patents relate, then HTC may (A) terminate the licenses, covenants and other prospective rights granted under this Agreement to APPLE with respect to such HTC Acquired Patents, and (B) continue to Assert or Assert such HTC Acquired Patents defensively against APPLE with respect to Products or Services relating to the same product category as the HTC Products or Services that are the subject of APPLE's Assertion; however, HTC will not be entitled to recover damages with respect to APPLE Products or Services in excess of any amounts awarded to APPLE with respect to HTC Products or Services.

(ii)    If APPLE acquires a Person or assets directed at a Product or Service that is not licensed by APPLE to HTC under this Agreement ("Acquired Assets"), HTC will have a defensive suspension right with respect to APPLE as follows.  If APPLE continues to Assert or Asserts a claim of infringement of any Patents acquired as part of such Acquired Assets that become APPLE Covered Patents under this Agreement ("APPLE Acquired Patents") against HTC for HTC Products or Services that are not licensed under this Agreement in a product category to which such APPLE Acquired Patents relate, then HTC may (A) terminate the licenses, covenants and other prospective rights granted under this Agreement to APPLE with respect to such Acquired Assets in such product category, and (B) continue to Assert or Assert HTC Covered Patents defensively against APPLE with respect to such Acquired Assets (including Products and Services based thereon) relating to the same product category as the HTC Products or Services that are the subject of APPLE's Assertion; however, HTC will not be entitled to recover damages with respect to APPLE Products or Services in excess of any amounts awarded to APPLE

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408261

*Confidential*

with respect to HTC Products or Services.

(iii)     As used above, a "product category" refers to a general type of Products or Services such as printers, televisions, computers or media download services.  As used above, an "Assertion" against a Party includes any Assertion of Patent infringement against a Party, or against any direct or indirect customer of a Party with respect to its applicable Products or Services, including in the ITC or other administrative agency.

9.5     Assignment of Covered Patents.  In addition to the provisions of Sections 2.2 and 3.2, all licenses, covenants not to sue, waivers, and releases contained herein shall run with each Covered Patent and shall be binding on any successor-in-interest or assign thereof with respect to such Covered Patent.  Neither Party shall assign, or grant any exclusive license under, any Covered Patent of such Party to any Third Party unless such assignment or grant of exclusive license is subject to all of the licenses, covenants not to sue, waivers and releases granted under this Agreement with respect to the Covered Patent that was assigned.

9.6     Parent Holding Company.  If a Party creates a Parent Holding Company of such Party, such Party shall promptly either (x) assign this Agreement in whole to such Parent Holding Company, which assignment will not require the consent of the other Party, or (y) prior to the consummation of the transaction or series of related transactions creating such Parent Holding Company, cause the entity that will become such Parent Holding Company to agree in writing to the other Party (which agreement will not require the consent of the other Party but with reasonable notice to the other Party) that if such entity owns or at any time thereafter acquires the right to license the other Party as set forth herein to any Patents, or such entity creates or acquires new Affiliates (which are not Affiliates of such Party) that own or at any time thereafter have or acquire the right to license the other Party as set forth herein, any Patents, this Agreement will apply to such Parent Holding Company and such Affiliates along with any and all such Patents in the same manner as if such entity was controlled by the respective Party.  For purposes of this Section 9.6, a "Parent Holding Company" of a Party means a legal entity that: (i) is created by, or is an Affiliate of, such Party; (ii) subsequently controls such Party; and (iii) at the time of the transaction as a result of which it controls such Party, is not controlled by any other Person or group of Persons (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act) in their capacity as voting securityholders, and does not result in a Change of Control, where "control" has the meaning set forth in Section 1.2.

## 10.     APPLICABLE LAW; DISPUTE RESOLUTION

10.1     Governing Law.  This Agreement and all disputes arising under or in connection with this Agreement (except as otherwise set forth in Article 11) shall be construed or resolved (as applicable), and the relationship between the Parties determined, in accordance with the laws of California, without regard to any choice of law or conflict of laws principles.

10.2     General IP Disputes.  Any disputes, controversies, conflicts or claims between the Parties under or in connection with any Patent or non-Patent intellectual property that are not settled or resolved and are not Disputes subject to Section 10.3 shall be first referred, by written notice setting out details of such dispute, controversy, conflict or claim given by a Party to the other Party, to the Senior Representatives of the Parties.  The Party receiving such initial notice shall provide a response in writing to the Party that sent such initial notice within fifteen (15) days after the date such initial notice is sent, after which the Parties shall make a good faith effort to resolve the same.  The First Level Executives will meet and try to resolve such dispute, controversy, conflict or claim reasonably and in good faith.  If the First Level Executives are unable to resolve the dispute, controversy, conflict or claim within thirty (30) days, then it will be escalated to the Second Level Executives who will meet and try to resolve such dispute, controversy, conflict or claim reasonably and in good faith.  Any resolution of the Dispute agreed to in writing and embodied in an amendment to this Agreement by such Senior Representatives shall be deemed final, subject to any required Board of Directors approval.  Any such dispute, controversy, conflict or claim which is not resolved in accordance with the foregoing within thirty-one (31) days after escalation to the Second Level Executives may thereafter be pursued by either Party in or before any court or other governmental authority of competent jurisdiction.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408262

*Confidential*

10.3     Dispute Resolution; Arbitration.

(a)     The Parties shall make every effort to settle amicably any and all disputes, controversies, conflicts and claims under this Agreement, the performance or non-performance or timely performance of the obligations set forth herein or asserted breach hereof (including any questions regarding its existence, validity, interpretation, enforceability or termination and any and all disputes, controversies, conflicts and claims of infringement of the Parties' Covered Patents by any activities covered by the licenses, covenants not to sue, waivers, and releases set forth herein, but excluding any disputes, controversies, conflicts or claims under or in connection with APPLE Design Patents or any non-Patent intellectual property of either Party) (a "Dispute").

(b)     Any Dispute among the Parties not settled or resolved shall be first referred, by written notice setting out brief details of the Dispute (a "Dispute Notice") given by a Party to the other Party, to the Senior Representatives.  The Party receiving the Dispute Notice shall provide a response in writing to the Party that sent the Dispute Notice within fifteen (15) days after the date the Dispute Notice is sent, after which the Parties shall make a good faith effort to resolve such Dispute.  The First Level Executives will meet and try to resolve such dispute, controversy, conflict or claim reasonably and in good faith.  If the First Level Executives are unable to resolve the dispute, controversy, conflict or claim within thirty (30) days, then it will be escalated to the Second Level Executives who will meet and try to resolve such dispute, controversy, conflict or claim reasonably and in good faith.  Any resolution of the Dispute agreed to in writing and embodied in an amendment to this Agreement by such Senior Representatives shall be deemed final, subject to any required Board of Directors approval.  Any Dispute which is not resolved in accordance with the foregoing within thirty-one (31) days after the date of escalation to the Second Level Executives may be submitted by either Party to be finally and exclusively resolved by arbitration as set forth in Section 10.3(c).

(c)     All arbitrations hereunder shall be submitted to the International Centre for Dispute Resolution ("ICDR") and shall be finally settled under the ICDR Rules in force as of the date thereof, as may be amended by the rest of this Section 10.3.  The seat, or legal place, of arbitration shall be in Paris, France unless otherwise mutually agreed.  The language to be used in the arbitral proceedings shall be English.  The arbitral award shall be final and binding, without any right of review or appeal, upon the Parties and shall be enforceable in accordance with its terms.  Arbitration expenses with respect to the arbitration panel shall be shared equally by the Parties and each Party will bear its own costs for its attorneys' fees and other expenses in connection with such arbitration.

(d)     The arbitration tribunal shall consist of three (3) arbitrators each of whom shall have (i) served as an arbitrator or judge in at least five (5) arbitral or judicial proceedings through issuance of a written decision which were primarily related to Patent law and licensing matters, or (ii) practiced in the field of Patent law and licensing for at least ten (10) years.  Each Party shall appoint one (1) neutral, independent arbitrator, and the two (2) Party-appointed arbitrators shall together select the third neutral, independent arbitrator, or if the Party-appointed arbitrators cannot agree on such appointment, the ICDR shall appoint such third arbitrator.  If either Party fails to appoint an arbitrator within thirty (30) days after receiving notification of the other Party's appointment of an arbitrator, the ICDR shall appoint the arbitrator for and on behalf of such Party.

(e)     During the course of the foregoing dispute resolution process and any arbitration proceedings, all provisions of this Agreement shall, to the most feasible and practical extent, be implemented continuously by the Parties.

(f)     In the event of non-compliance with an arbitration award, the arbitration award shall be enforceable by any court or courts having jurisdiction over the Party against which the award has been rendered, or over the assets of the Party against which such award has been rendered, wherever such assets may be located, provided that any complaint filed to initiate such enforcement action and supporting papers (if any) shall be filed under seal, the Parties will jointly move the court to enter a judicial protective order to ensure the confidentiality of further proceedings to the maximum extent permitted, and neither Party will disclose information regarding the enforcement action to any non-Party unless required by the court or applicable law.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                              APLNDC-Y0000408263

*Confidential*

(g)    The Parties agree to abide by any decision issued by the arbitral tribunal constituted pursuant to this <u>Section 10.3</u>.

(h)    Further, the matters described in <u>Articles 11</u> and <u>12</u> shall be subject to the additional dispute resolution requirements of such Articles.

(i)    The Parties shall maintain strict confidentiality with respect to all aspects of each arbitration under this Agreement and shall not disclose the fact, conduct or outcome of any such arbitration to any non-Parties or non-participants, except to the extent required by applicable law or to the extent necessary to recognize, confirm or enforce the arbitral award, or to the extent reasonable in connection with any indemnity or similar obligations, without the prior written consent of the Parties to the arbitration.  Except to the extent necessary under (f) above, and notwithstanding anything in this Agreement to the contrary, neither Party may disclose the fact, conduct or outcome of any arbitration conducted pursuant to this Agreement in any subsequent district court proceeding or administrative investigation absent an express judicial order or applicable law requiring the same, unless mutually agreed in writing in advance.

(j)    This Section 10.3 shall not be construed as restricting or limiting a Party's ability to immediately assert a release, license, covenant or other defense in any litigation or other proceeding against such Party, or with respect to its Covered Products, regardless of jurisdiction or venue.

**11.**    ███████████████████████████████████

   11.1    ████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
███████████████████████████████
██████████████████████████████████████
█████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████

   11.2    █████████████████████████████
███████████████████████████████████████
██████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████

23

*Confidential*

████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████.
██████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████
███████████████████████████

## 12.  CLONED PRODUCTS SPECIAL DISPUTE RESOLUTION PROCESS

12.1     HTC has the right to the licenses, covenants not to sue and releases under Articles 3 and 4.  This Section 12 sets forth a special dispute resolution process in the event that HTC manufactures, sells or offers to sell any Cloned Products outside of the scope of such licenses, covenants not to sue and releases.

12.2     In consideration for HTC agreeing to the dispute resolution process set forth in this Article 12 for allegations by APPLE of Cloning and excluding any matters covered by Section 5.1(a) or (b) and without waiver of any of APPLE's rights or claims, APPLE agrees not to directly institute any action or proceeding against HTC on Claims of Cloning or with respect to any allegedly Cloned Products under this Article 12 for one (1) year from the Effective Date.  Thereafter and during the Term, any allegation by APPLE of Cloning by HTC will be arbitrated through the dispute resolution process set forth in this Section 12.  The provisions of this Section 12 in no manner extend the scope of the licenses and covenants granted under Article 3 or releases under Section 4.1.  APPLE expressly further reserves the right to collect damages, royalties or other compensation from HTC or any other Person in connection with any unlicensed Cloned Products during such one (1) year period.  The Parties agree that the foregoing in this Section 12.2 is purely forbearance from collection of damages, royalties and other compensation during such one (1) year period and is not an authorization during such one (1) year period and neither Party shall make such argument.  Notwithstanding anything herein to the contrary, nothing in this Section 12 shall prevent or limit APPLE's rights under Section 10.3 with regard to any other Disputes relating to this Agreement, including Articles 2–4 hereof.

12.3     For the period beginning one (1) year after the Effective Date through the end of the Term, any allegation by APPLE of Cloning by HTC will be arbitrated through the dispute resolution procedures in Sections 10.3(c)–(g) and as further set forth in (and subject to) this Section 12 and Exhibit A as follows:

(a)     In the event APPLE believes that HTC was or is manufacturing, offering for sale or selling a Cloned Product, APPLE shall provide HTC notice thereof (an "Initial Notice") and identify the features believed to be Cloned Features and one or more Apple Covered Patents that it believes HTC is literally infringing by the Cloned Features.  For any HTC Covered Products commercially released after the Effective Date in the United States, Canada, Japan, Taiwan, China, Great Britain, or Germany, APPLE must provide such notice of Cloning for such Covered Product no later than the earlier of (i) thirty (30) days after such release on one of the top three Carriers in the respective country, or (ii) thirty (30) days after actual notice provided by HTC to APPLE in writing of an HTC Android Mobile Communication Device.

(b)     Following delivery of an Initial Notice, HTC may, within forty-five (45) days, at its discretion: (A) notify APPLE that it intends to cure such Cloning by removing or designing around the Cloned

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408265

*Confidential*

Features; (B) notify APPLE in writing that it believes there is no Cloning; or (C) decline to cure such Cloning by delivery of written notice to APPLE or request to proceed to escalation to discuss such allegation in good faith (a "Decline Notice").  If HTC does not take any of the actions described in the foregoing paragraphs (A)–(C) within forty-five (45) days of receipt of an Initial Notice or fails to remove or design around such Cloning as forth in the foregoing (A) within one hundred eighty (180) days, HTC shall be deemed to have delivered a Decline Notice to APPLE upon the expiration of such period.

(c)     In the event that HTC delivers a Decline Notice to APPLE or APPLE disputes the notice provided by HTC pursuant to Section 12.3(b)(B) above, such matter shall be first referred to the Senior Representatives of each Party through the escalation process set forth in Section 10.3(b), and the Parties shall make a good faith effort to resolve such Cloning allegation.  Any resolution of such Cloning allegation agreed to in writing and embodied in an amendment to this Agreement by such Senior Representatives shall be deemed as final, subject to any required Board of Directors approval.  Any such Cloning allegation which is not resolved in accordance with the foregoing within forty-five (45) days after the date the Decline Notice is sent shall be finally and exclusively resolved by arbitration as set forth in Sections 10.3(c)-(g). Any such arbitration will be limited to a resolution of the issues set forth in Exhibit A and in this Article 12.

12.4     HTC shall be entitled to make any and all other defenses available under the laws applicable to such claim by APPLE, including the allegedly Cloned Product of HTC is not a Cloned Product because of failure to meet any of the requirements set forth in Exhibit A (each of which is a complete defense that will preclude any determination that there has been Cloning or that the Covered Product is a Cloned Product) or HTC showing that the challenged elements of HTC's allegedly Cloned Feature were substantially complete as a result of HTC's independent development without knowledge of the Distinctive Apple User Experience of the APPLE Product alleged to have been Cloned.

12.5     If the arbitrators determine that the applicable HTC product is a Cloned Product, (A) the arbitrators may, and shall if requested by a Party, further determine upon the request of either Party suitable design alternatives to such Cloned Product that cure such Cloning, it being understood that HTC must always be permitted to implement the patented feature (as further described in Exhibit A), and (B) HTC will have ninety (90) days from the date of the arbitrators' determination of Cloning and confirmation of suitable design alternatives (if requested by either Party) in which to cure such Cloning by removing or designing around the Cloning.  If HTC is unable or unwilling to cure such Cloning within the ninety (90) day period in this Section 12.5, APPLE will be entitled to seek an injunction from any applicable court of competent jurisdiction with respect to such Cloning during the Term, subject to applicable governing law.

12.6     The provisions of this Section 12 shall in no event survive in the event APPLE consents in its sole discretion to any assignment of this Agreement by HTC, including upon any Change of Control of HTC or in the event of any termination of this Agreement.

## 13.     MISCELLANEOUS

13.1     Entire Agreement.  This Agreement sets forth the entire understanding of the Parties with respect to the subject matter hereof, and replaces any prior oral or written communications, discussions or agreements between them.

13.2     Representations and Warranties.  Each Party represents and warrants to the other Party as of the Effective Date that: (a) it has all requisite corporate power and authority to execute, deliver and perform this Agreement; (b) it owns the Covered Patents of such Party or otherwise has the right to grant the rights and licenses required to be granted to such Covered Patents in this Agreement, and that no other Third Party owns any right to enforce or recover for infringement of such Covered Patents against the other Party; (c) it has not granted any exclusive licenses or other rights under such Covered Patents that would conflict with or prevent such Party from granting the licenses, covenants, waivers, releases and rights granted to the other Party under this Agreement with respect to such Covered Patents; (d) except as set forth in Exhibit G, it does not have rights to any Patents that are excluded from being a Covered Patent solely because consideration is required to be paid to any Third Party  as set

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY            APLNDC-Y0000408266

*Confidential*

forth in Section 4.4(a)(ii); and (e) except as set forth in Exhibit G, it has not sold, assigned, exclusively licensed or otherwise transferred (including as part of divestiture of a legal entity that otherwise would have qualified as an Affiliate) any Patents in the twelve (12) months prior to the Effective Date that are not Covered Patents, but would have been Covered Patents of such Party under this Agreement in the absence of such transfer.  Each Party represents and warrants to the other Party as of the Effective Date there are no liens, conveyances, mortgages, assignments, encumbrances or other agreements by which such Party is bound that would prevent such Party's performance of the terms of this Agreement.  In addition, HTC represents and warrants that it has no current, future or contingent right, title or interest in or to U.S. Patent Nos. 6,708,214, 6,473,006, 7,289,772, 6,868,283, 7,020,849, 5,418,524, 5,630,152, 5,630,159, and 5,302,947 that would enable HTC to license such patents to APPLE as "Covered Patents" as of the Effective Date.  To the extent such patent(s) are not "Covered Patents" solely because consideration is required to be paid to any Third Party, then Section 4.4(a)(ii) will apply to such patent(s).

      13.3    Disclaimer.  Other than as expressly set forth in this Agreement, neither Party makes any representations, extends no warranties of any kind, either express or implied, and assumes no responsibilities whatsoever hereunder with respect to the manufacture, sale, lease, use, importation or disposition of any Product or part thereof by or on behalf of the other Party.

      13.4    No Partnership.  Nothing in this Agreement is intended or shall be deemed to constitute a partnership, agency, employer-employee or joint venture relationship between the Parties.  Neither Party shall incur any debts or make any commitments for the other.  There is no fiduciary duty or special relationship of any kind between the Parties to this Agreement.  Each Party expressly disclaims any reliance on any act, word or deed of the other Party in entering into this Agreement.

      13.5    Severability.  If any portion of this Agreement is found to be invalid, illegal or unenforceable for any reason, the remainder of the Agreement shall continue in force and, if needed, the Parties or an appropriate arbitral body shall substitute suitable provisions having like economic effect and intent.

      13.6    Headings.  The headings inserted in this Agreement are for reference only and are not intended to form any part of the operative portion of this Agreement, and they shall not be employed in the interpretation or application of this Agreement.

      13.7    Amendment and Waiver.  This Agreement cannot be modified, terminated or amended in any respect orally or by conduct of the Parties.  Any termination, modification, or amendment may be made only by a writing signed by all Parties.  No waiver of any provision shall be binding in any event unless executed in writing by the Party making the waiver.

      13.8    Notices.  All notices required or permitted to be given hereunder shall be in writing and shall be deemed delivered (a) upon receipt if delivered by hand, (b) three (3) business days after being sent by prepaid, internationally-recognized, overnight air courier for international deliveries and one (1) business day after being sent by prepaid, nationally-recognized, overnight air courier for national deliveries, (c) five (5) business days after being sent by registered or certified airmail, return receipt required, postage prepaid, or (d) upon transmittal when transmitted by confirmed telecopy (provided that such notice is followed by notice pursuant to any of (a)–(d) above).  All notices shall be addressed as follows:

      If to HTC AMERICA, INC.:

          HTC America, Inc.
          13920 SE Eastgate Way, Suite 200
          Bellevue, WA  98005
          USA
          Attn:  General Counsel, Legal Department

          with a copy to:

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408267

*Confidential*

John Alison
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
U.S.A.
Fax: +1 (202) 408-4400

If to HTC CORPORATION:

HTC Corporation
No. 88, Section 3., Zhongxing Road
Xindian District, New Taipei City
TAIWAN, 231
Attn:  General Counsel, Legal Department

With a copy to:

John Alison
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
U.S.A.
Fax: +1 (202) 408-4400

If to S3 GRAPHICS CO., LTD.:

S3 Graphics Co., Ltd.
2nd Fl., Zephyr House
Mary St., P.O. Box 709
Grand Cayman
Grand Cayman Islands
British West Indies
Attn:  Director

With a copy to:

John Alison
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
U.S.A.
Fax: +1 (202) 408-4400

If to APPLE:

General Counsel
Apple Inc.
1 Infinite Loop, 301-4GC
Cupertino, California 95014
U.S.A.
Fax: +1 (408) 974-8530

---

27

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408268

*Confidential*

with a copy to:

Chief IP Counsel
Apple Inc.
1 Infinite Loop, 40-PAT
Cupertino, California 95014
U.S.A.
Fax: +1 (408) 974-4992

13.9    Confidentiality.  The terms of this Agreement and all correspondence and information relating to this Agreement are strictly confidential.  The Parties shall keep the terms and particulars of this Agreement strictly confidential and no Party shall now or hereafter disclose such terms and particulars to any Third Party except: (a) with the prior written consent of the other Party or as may be required by a Party to enforce the terms hereof, (b) as may be required by applicable law, regulation or order of a governmental authority of competent jurisdiction pursuant to advice of counsel where such advice relates to compliance with applicable laws or regulations, including compliance by HTC with respect to applicable securities and financial disclosure laws in Taiwan or other applicable jurisdiction, (c) during the course of litigation so long as the disclosure of such terms and particulars is subject to the most highly confidential restrictions available to the litigating parties, such restrictions are embodied in a court-entered protective order limiting such disclosure to outside counsel for the disclosing Party and such disclosing Party provides the other Party written notice at least ten (10) business days prior to such disclosure and the non-disclosing Party does not formally object to such disclosure in a pleading filed with a court or administrative agency during that ten (10) business day period, (d) in confidence to the professional legal and financial counsel representing such Party; (e) in confidence on terms materially as protective as the confidentiality obligations herein, to bona fide investors and other financing sources and their advisors; (f) in confidence on terms materially as protective as the confidentiality obligations herein, in connection with an actual or prospective bona fide merger, acquisition, asset sale, transfer of applicable intellectual property, or similar transaction; or (g) in confidence on reasonable terms, to a Party's customers and potential customers solely as to the scope of the license granted to such Party.

13.10    Publicity.  Within five (5) days after the effective Date, HTC may issue a press release or make a public announcement substantially as set forth in, and limited to the substance of, Exhibit E, and thereafter the information to the extent disclosed in such press release or public announcement shall not be confidential.  Subject to the foregoing, neither Party shall issue a press release or make any other public statement regarding this Agreement or the settlement of the Litigation without the prior written approval of the other Party, except as permitted under Section 13.9.  For the avoidance of doubt, there shall be no obligation on either Party to issue any such press release or make any such public statement.

13.11    Neutral Construction.  Any presumption or rule of construction permitting ambiguities to be resolved against the drafting party shall not be employed in the interpretation or application of this Agreement.

13.12    Counterparts.  This Agreement may be executed in several counterparts, each of which is deemed to be an original but all of which constitute one and the same instrument.

13.13    Expenses.  Except as otherwise expressly set forth herein, all expenses (including fees and charges of any attorneys, accountants or others) incurred by a Party in connection with this Agreement or the transactions contemplated hereby shall be paid by the Party incurring such expenses.

13.14    Bankruptcy.  Without prejudice to either Party's rights specified in Sections 8.3 and other rights or remedies which such Party may have under this Agreement, it is the intent of the Parties and the Parties hereby agree that in the event of any proceeding by or against a Party under any law relating to bankruptcy, insolvency, or reorganization or relief of the debtors, all rights, licenses, privileges, releases, non-assertions and immunities granted under or pursuant to this Agreement shall continue without termination, rejection or avoidance by virtue of or in the context of such proceeding through the end of the Term.  In support of the foregoing:

28

*Confidential*

       (a)     All rights, licenses, privileges, releases, non-assertions and immunities granted under or pursuant to this Agreement by each Party are, and shall otherwise be deemed to be, for the purposes of Section 365(n) of 11 U.S.C. § 101 (et seq.) (the "US Bankruptcy Code"), licenses of rights to "intellectual property" as defined under Section 101(35A) of the US Bankruptcy Code.  The Parties further agree that in the event that any proceeding is instituted by or against a Party under any law relating to bankruptcy, insolvency, or reorganization or relief of the debtors, the provisions of Section 365(n) of the US Bankruptcy Code will apply, and that the other Party shall retain and may fully exercise all of its respective rights and elections under the US Bankruptcy Code.  Upon written request from a Party to the other Party or the bankruptcy trustee of the Party's election to proceed under Section 365(n), the other Party or the bankruptcy trustee shall comply in all respects with Section 365(n), including by not interfering with the rights of such Party under this Agreement as provided by Section 365(n).

       (b)     Each Party hereby grants and conveys to the other Party the licenses, covenants, waivers, and releases, being irrevocable during the Term (subject to Article 8), that are provided in Articles 2, 3, and 4 of the Agreement.

     13.15    No Third Party Beneficiaries.  This Agreement is solely for the benefit of the Parties hereto.  No other Person shall be entitled to rely on this Agreement or to anticipate the benefits of this Agreement or otherwise assert or be entitled to any rights or licenses as a third party beneficiary hereof.

     13.16    Freedom to Do Business.  The license grants, releases, and other terms in this Agreement shall not be construed as limiting the rights which the Parties might otherwise have outside the scope of this Agreement, or as contractually restricting the right of either Party to make, have made, use, lease, license, sell, or otherwise dispose of any product or service, including products or services not subject to the licenses or releases herein, and such activities by either Party shall not constitute a breach of this Agreement.

     13.17    Construction.  The headings of the Articles and Sections in this Agreement are for convenience only and shall not be taken into account when interpreting this Agreement.  No rule of strict construction shall be applied against either Party when interpreting this Agreement.  As used in this Agreement, unless expressly stated otherwise, the term "including" (or variations thereof) means "including but not limited to".  Whenever the consent or approval of a Party is needed under this Agreement, unless expressly stated otherwise, such Party may grant or withhold its consent or approval in its discretion, and whenever a Party may act in its discretion under this Agreement, such Party may act in its sole and absolute discretion.  This Agreement, including the Exhibits hereto (which are part of this Agreement), is prepared and executed in the English language only, which language will be controlling in all respects; any translations of this Agreement into any other language is for reference only and will have no legal force or effect.

*[Signature Page Follows.]*

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY        APLNDC-Y0000408270

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be signed by their duly authorized representatives as of the date first written above.

**HTC AMERICA, INC.**

Signed by:

Name: _____

_____

Title: _____

**HTC CORPORATION**

Signed by: _____

Name: _____

_____

Title: _____

**S3 GRAPHICS CO., LTD.**

Signed by: _____

Name: _____

_____

Title: _____

**APPLE INC.**

Signed by: _____

Name: _____

_____

Title: _____

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408271

Exhibit Index

A.      Cloned Product Arbitration

B.       Android OS Arbitration

C.       Payment Method

D.      Fee Statement

E.       Publicity Statement(s)

F.       List of Litigation & Oppositions, and Corresponding Dismissals/Terminations

G.      Excluded Patents

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408272

Exhibit A
Requirements for Cloned Product

Each of the following requirements must be satisfied in order for a particular HTC Android Mobile
Communication Device to be considered a "Cloned Product" for purposes of Article 12:

1.      Subject to any HTC defenses, APPLE demonstrates that one or more valid claims of its Covered Patents
(a) is literally infringed by a significant feature of the human interface that has a distinctive visual appearance of
an HTC Android Mobile Communications Device; (b) the same patent is also literally practiced by a significant
feature of the human interface of an APPLE Mobile Communication Device that has a distinctive visual
appearance; and (c) that the non-functional distinctive visual appearance of such feature in the HTC Mobile
Communications Device is substantially similar to that in the APPLE Mobile Communications Device, it being
understood however that such features will also include functional aspects (collectively, "Distinctive Apple User
Experience"), where such substantial similarity demonstrates copying (but without requiring proof of intent).
Such substantially similar distinctive visual appearance of the feature in the HTC Mobile Communications
Device is referred to herein as the "Cloned Feature". For example, a specific graphical slider animation used in a
APPLE Mobile Communication Devices at the bottom of a display screen to implement a "slide to unlock"
feature could qualify as a Distinctive Apple User Experience; however, a different animation (for example a
bubble slider) or an animation at another location (for example along the side of a screen) would not be
considered substantially similar and would not constitute a Cloned Feature.  Functionality and related methods
(for example, "pinch to zoom" functionality) will not be considered a Distinctive Apple User Experience.

2.      The Distinctive Apple User Experience (a) was first developed and introduced by APPLE as part of an
APPLE Mobile Communication Device prior to introduction of such feature or substantially similar feature by
HTC or any Third Party; (b) APPLE has not granted a license to any Third Parties that permits use of such
feature in a Mobile Communications Device with the Android Mobile OS without additional payment required
for the use of such visual appearance or with additional payment if HTC agrees to such additional payment in
order to take advantage of the exclusion from Cloning set forth in this Section 2(b) of this Exhibit A.

3.      The Cloned Feature in the HTC Android Mobile Communications Device must have been created by
HTC and not result from (i) any features or design elements provided to HTC as part of the Android Mobile OS
or other third party component or software (unless specifically selected, customized or modified by, or
specifically at the request of or exclusively for, HTC to result in the Cloned Feature), (ii) requirements specified
for the use of the Android Mobile OS or associated services or APIs by Google Inc., any of its Affiliates, or the
Open Handset Alliance or any successor to any of the foregoing, (iii) requirements specified by a Carrier (in its
role as such), (iv) requirements of Wireless Standards, or other standards where APPLE is a member and
participates and has not withdrawn and objected to the specification, or any legal or regulatory requirements, (v)
any features or design elements included in any HTC Android Mobile Communication Devices or Android
Mobile OS that have been released prior to the Effective Date, (vi) any features or design elements included in
any HTC Android Mobile Communication Devices for which APPLE does not provide an Initial Notice
challenging the Cloned Feature within the time period specified in Section 12.3(a) or, if APPLE has provided
such Initial Notice, have nonetheless not been found to be Cloned Features pursuant to Section 12.3; and (vii)
any features or design elements substantially the same or minor variants of those under (v) or (vi) above which
are included in any subsequent HTC Android Mobile Communication Device.

4.      There is alternative appearance to the Distinctive Apple User Experience reasonably available to HTC for
the HTC Android Mobile Communication Device that implements and realizes the functional, cost and
performance advantages of the feature(s) covered by the Covered Patent that would not be considered Cloned
Features (such as the examples above regarding "slide to unlock").

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Exhibit B



Exhibit C
Payment Method



HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Exhibit D
Fee Statement

**HTC CONFIDENTIAL**

T<u>O</u>:          Senior Director
              WW Financial Planning & Analysis - Legal
              Apple Inc.
              1 Infinite Loop, MS 301-4PFA
              Cupertino, California 95014

F<u>ROM</u>:      [Contact Name],
              [Department]
              [HTC Corporation, on behalf of its Affiliates]
              23 Hsin Hua Rd
              Taoyuan 330, Taiwan

R<u>E</u>:         Patent License and Settlement Agreement, dated as of November 11, 2012, by and between Apple
              Inc., HTC America, Inc., HTC Corporation, and S3 Graphics Co., Ltd. (the "<u>PLSA</u>").[1]

**Payment Period (Quarter/Year):** _____

| ████████████ | | ██████████ | | |
|---|---|---|---|---|
| ██████<br>██████████<br>█████ | ███████████<br>████████ | ████████████<br>████████████<br>█████████████<br>██████ | ████ | █████████████<br>██████████████<br>██████████<br>█████████ |
| | | █ | | █ |
| | | █ | | █ |
| | | █ | | █ |
| | | █ | | █ |
| | | █ | | █ |
| | | | ████████ | ███████<br>█████ |

* Insert additional details here. If the space provided is not sufficient, please attach a signed and certified rider, as necessary.

*I, the undersigned, _____[Name]_____, hereby certify, on behalf of HTC, that I am a duly authorized representative of HTC Corporation and do hereby certify that I have read and examined the statements in this report and agree they are complete and accurate as of the date hereof.*

<u>**Name**</u>                    <u>**Title**</u>                    <u>**Signature**</u>

_____        _____        _____

_____

1 All capitalized terms used herein shall have the meanings assigned to such terms in the PLSA.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408276

<u>Exhibit E</u>
Publicity Statement(s)

# HTC AND APPLE SETTLE PATENT DISPUTE

*All Patent Litigations Between The Companies Dismissed*

**TAIPEI and CUPERTINO, California** - **November 11, 2012** – HTC and Apple have reached a global settlement that includes the dismissal of all current lawsuits and a ten-year license agreement.  The license extends to current and future patents held by both parties.  The terms of the settlement are confidential.

"HTC is pleased to have resolved its dispute with Apple, so HTC can focus on innovation instead of litigation," said Peter Chou, CEO of HTC.

 "We are glad to have reached a settlement with HTC," said Tim Cook, CEO of Apple.  "We will continue to stay laser focused on product innovation."

-end-

| SEQ_NO | **xx** | Date of announcement | **2012/11/11** | Time of announcement | **xx:xx:xx** |
|---|---|---|---|---|---|
| Subject | **HTC AND APPLE SETTLE PATENT DISPUTE** **All Patent Litigations Between The Companies Dismissed** | | | | |
| Date of events | **2012/11/11** | To which item it meets | article 2 paragraph 49 | | |
| Statement | 1. Date of occurrence of the event: **2012/11/11** 2. Company name: **HTC Corporation** 3. Relationship to the Company (please enter "head office" or  "affiliate company"): **Head Office** 4. Reciprocal shareholding ratios: **N/A** 5. Cause of occurrence: **HTC and Apple have reached a global settlement that includes the dismissal of all current lawsuits and a ten-year license agreement.  The license extends to current and future patents held by both parties.  The terms of the settlement are confidential.** 6. Countermeasures: **None** 7. Any other matters that need to be specified:  **There is no material adverse impact on the financials of the Company.** | | | | |

APLNDC-Y0000408277

<u>Exhibit F</u>
List of Litigation & Oppositions, and Corresponding Dismissals/Terminations

[Attached]

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Exhibit F-1
Litigation

HTC Cases

U.S.
•       In the Matter of Certain Personal Data and Mobile Communications Devices and Related Software, ITC
Inv. No. 337-TA-710
•       Apple Inc. v. High Tech Computer Corp. et al., Case Nos. 10-166, 10-167, 10-544 (D. Del.)
•       In the Matter of Certain Portable Electronic Devices and Related Software, ITC Inv. No. 337-TA-721
•       In the Matter of Certain Portable Electronic Devices and Related Software, ITC Inv. No. 337-TA-797
•       Apple Inc. v. HTC Corp. et al., Case No. 11-611 (D. Del.)
•       In the Matter of Certain Electronic Devices with Communication Capabilities, Components Thereof, and
Related Software, ITC Inv. No. 337-TA-808
•       HTC Corporation v. Apple Inc., Case No. 11-715 (D. Del.)
•       HTC Corporation v. Apple Inc., Case No. 11-785 (D. Del.)
•       Apple Inc. v. HTC Corporation, Case No. 12-1004 (D. Del.)
•       Apple Inc. v. HTC Corporation, Case No. 12-1055 (D. Del.)
•       Apple Inc. v. United States International Trade Commission, Case No. 2012-1125 (Fed. Cir.)
•       HTC Corp., et al., v. United States International Trade Commission, Case No. 2012-1226 (Fed. Cir.)


Germany
•       Apple Inc. v. HTC Europe Co. Ltd., The Phone House Telecom GmbH, HTC Corporation, No. 21 O
14039/11
•       Apple Inc. v. HTC Corporation, HTC Europe Co. Ltd., The Phone House Telecom GmbH, No. 21 O
2017/12
•       Apple Inc. v. HTC Europe Co. Ltd., The Phone House Telecom GmbH, HTC Corporation, No. 21 O
6997/12
•       Apple Inc. v. HTC Corporation, HTC Europe Co. Ltd., The Phone House Telecom GmbH, No. 21 O
19210/12
•       Apple Inc. v. HTC Europe Co. Ltd., The Phone House Telecom GmbH, No. 2 O 235/11
•       Apple Inc. v. HTC Corporation, No. 2 O 386/11
•       HTC Europe Co. Ltd. v. Apple Inc., No. 2 Ni 55/11
•       HTC Europe Co. Ltd. v. Apple Inc., No. 2 Ni 58/11
•       HTC Europe Co. Ltd. v. Apple Inc., No. 5 Ni 54/11
•       Apple Inc. v. HTC Corporation, No. 2 O 445/11
•       Apple Inc. v. HTC Germany GmbH, No. 2 O 446/11
•       Apple Inc. v. HTC Corporation, 6 U 98/12
•       Apple Inc. v. HTC Germany GmbH, 6 U 99/12
•       Apple Inc. v. HTC Corporation, No. 2 O 64/12
•       Apple Inc. v. HTC Germany GmbH, No. 2 O 66/12
•       Apple Inc. v. HTC Corporation, No. 7 O 76/12
•       Apple Inc. v. HTC Germany GmbH, No. 7 O 77/12
•       Apple Inc. v. HTC Corporation, No. 7 O 134/12
•       Apple Inc. v. HTC Germany GmbH, No. 7 O 135/12
•       Apple Inc. v. HTC Corporation, No. 2 O 163/12
•       Apple Inc. v. HTC Germany GmbH, No. 2 O 164/12
•       HTC Germany GmbH v. Apple Inc., No. 2 Ni 23/12 (EP)
•       HTC Germany GmbH v. Apple Inc., No. 5 Ni 76/12 (EP)

UK
•       Apple Inc. v. HTC Europe Co. Ltd., Appeal No. 2012/2043
•       Apple Inc. v. HTC Corporation, Appeal No. 2012/2044
•       HTC Europe Co. Ltd. v. Apple Inc., No. HC12 C01465
•       HTC Europe Co. Ltd. v. Apple Inc., Nos. HC12 E02072 and HC12 B02149

S3 Graphics Cases

U.S.
•     In the Matter of Certain Electronic Devices with Image Processing Systems, Components Thereof, and
Associated Software, ITC Inv. No. 337-TA-724
•     Apple Inc. v. S3 Graphics Co., Ltd. et al., Case No. 5:11-cv-210 (N.D. Cal.)
•     In the Matter of Certain Electronic Devices with Graphics Data Processing Systems, Components
Thereof, and Associated Software, ITC Inv. No. 337-TA-813
•     S3 Graphics Co., Ltd. v. Apple Inc., Case No. 11-862 (D. Del.)
•     S3 Graphics Co., Ltd. v. United States International Trade Commission, Case No. 2012-1127 (Fed. Cir.)

Germany
•     S3 Graphics v. Apple Inc. et. al., No. 2 O 42/12
•     S3 Graphics v. Apple Inc. et. al., No. 2 O 140/12
•     S3 Graphics v. ComLine, No. 4b O 35/12
•     S3 Graphics v. ComLine, No. 4b O 65/12
•     S3 Graphics v. Gravis, No. 7 O 5342/12
•     S3 Graphics v. Gravis, No. 7 O 7602/12

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
APLNDC-Y0000408280

Exhibit F-2
List of Opposition Proceedings

U.S Proceedings
- 7,043,087
- 6,775,417

European Proceedings
- EP 2 126 678
- EP 2 098 948

**EXHIBIT F-1**

**Litigation**

<u>HTC Cases</u>

U.S.
- *In the Matter of Certain Personal Data and Mobile Communications Devices and Related Software*, ITC Inv. No. 337-TA-710
- *Apple Inc. v. High Tech Computer Corp. et al.*, Case Nos. 10-166, 10-167, 10-544 (D. Del.)
- *In the Matter of Certain Portable Electronic Devices and Related Software*, ITC Inv. No. 337-TA-797
- *Apple Inc. v. HTC Corp. et al.*, Case No. 11-611 (D. Del.)
- *In the Matter of Certain Electronic Devices with Communication Capabilities, Components Thereof, and Related Software*, ITC Inv. No. 337-TA-808
- *HTC Corporation v. Apple Inc.*, Case No. 11-715 (D. Del.)
- *HTC Corporation v. Apple Inc.*, Case No. 11-785 (D. Del.)
- *Apple Inc. v. HTC Corporation*, Case No. 12-1004 (D. Del.)
- *Apple Inc. v. HTC Corporation,* Case No. 12-1055 (D. Del.)
- *Apple Inc. v. United States International Trade Commission*, Case No. 2012-1125 (Fed. Cir.)
- *HTC Corp., et al., v. United States International Trade Commission*, Case No. 2012-1226 (Fed. Cir.)

Germany
- *Apple Inc. v. HTC Europe Co. Ltd., The Phone House Telecom GmbH, HTC Corporation*, No. 21 O 14039/11
- *Apple Inc. v. HTC Corporation, HTC Europe Co. Ltd., The Phone House Telecom GmbH,* No. 21 O 2017/12
- *Apple Inc. v. HTC Europe Co. Ltd., The Phone House Telecom GmbH, HTC Corporation*, No. 21 O 6997/12
- *Apple Inc. v. HTC Corporation, HTC Europe Co. Ltd., The Phone House Telecom GmbH,* No. 21 O 19210/12
- *Apple Inc. v. HTC Europe Co. Ltd., The Phone House Telecom GmbH*, No. 2 O 235/11
- *Apple Inc. v. HTC Corporation*, No. 2 O 386/11
- *HTC Europe Co. Ltd. v. Apple Inc.*, No. 2 Ni 55/11
- *HTC Europe Co. Ltd. v. Apple Inc.*, No. 2 Ni 58/11
- *HTC Europe Co. Ltd. v. Apple Inc.*, No. 5 Ni 54/11
- *Apple Inc. v. HTC Corporation*, No. 2 O 445/11
- *Apple Inc. v. HTC Germany GmbH*, No. 2 O 446/11
- *Apple Inc. v. HTC Corporation*, 6 U 98/12
- *Apple Inc. v. HTC Germany GmbH*, 6 U 99/12
- *Apple Inc. v. HTC Corporation*, No. 2 O 64/12
- *Apple Inc. v. HTC Germany GmbH*, No. 2 O 66/12
- *Apple Inc. v. HTC Corporation*, No. 7 O 76/12
- *Apple Inc. v. HTC Germany GmbH*, No. 7 O 77/12
- *Apple Inc. v. HTC Corporation*, No. 7 O 134/12
- *Apple Inc. v. HTC Germany GmbH*, No. 7 O 135/12
- *Apple Inc. v. HTC Corporation*, No. 2 O 163/12
- *Apple Inc. v. HTC Germany GmbH*, No. 2 O 164/12
- *HTC Germany GmbH v. Apple Inc.*, No. 2 Ni 23/12 (EP)
- *HTC Germany GmbH v. Apple Inc.*, No. 5 Ni 76/12 (EP)

UK
- *Apple Inc. v. HTC Europe Co. Ltd. and HTC Corporation,* Appeal Nos. 2012/2043 and 2012/2044
- *HTC Europe Co. Ltd. v. Apple Inc.*, No. HC12 C01465

- *HTC Europe Co. Ltd. v. Apple Inc.*, Nos. HC12 E02072 and HC12 B02149

S3 Graphics Cases

U.S.
- *In the Matter of Certain Electronic Devices with Image Processing Systems, Components Thereof, and Associated Software*, ITC Inv. No. 337-TA-724, terminated and appealed as *S3 Graphics Co., Ltd. v. United States International Trade Commission*, Case No. 2012-1127 (Fed. Cir.)
- *Apple Inc. v. S3 Graphics Co., Ltd. et al.*, Case No. 5:11-cv-210 (N.D. Cal.)
- *In the Matter of Certain Electronic Devices with Graphics Data Processing Systems, Components Thereof, and Associated Software*, ITC Inv. No. 337-TA-813
- *S3 Graphics Co., Ltd. v. Apple Inc.*, Case No. 11-862 (D. Del.)

Germany
- *S3 Graphics v. Apple Inc. et. al.*, No. 2 O 42/12
- *S3 Graphics v. Apple Inc. et. al.*, No. 2 O 140/12
- *S3 Graphics v. ComLine*, No. 4b O 35/12
- *S3 Graphics v. ComLine*, No. 4b O 65/12
- *S3 Graphics v. Gravis*, No. 7 O 5342/12
- *S3 Graphics v. Gravis*, No. 7 O 7602/12

**EXHIBIT F-2**

**List of Opposition Proceedings**

U.S Proceedings
- 7,043,087
- 6,775,417

European Proceedings
- EP 2 126 678
- EP 2 098 948

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408284

**EXHIBIT F-3**

**Forms of Dismissal**

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408285

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable David P. Shaw**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-710 |
| | (Enforcement Proceeding) |
| CERTAIN PORTABLE DATA AND | |
| MOBILE COMMUNICATIONS | |
| DEVICES AND RELATED SOFTWARE | |

**JOINT MOTION TO TERMINATE INVESTIGATION WITHOUT PREJUDICE**
**AND TO RESCIND THE LIMITED EXCLUSION ORDER BASED ON**
**A PATENT LICENSE AND SETTLEMENT AGREEMENT**

Complainants Apple Inc., and its subsidiary NeXT Software, Inc. (collectively "Apple")

and Respondents High Tech Computer Corp., HTC America, Inc., and Exedea, Inc. (collectively,

"HTC") have entered into a Patent License And Settlement Agreement ("Agreement") that

resolves all past and current matters at issue in the Investigation, is fully effective, and has been

executed by authorized representatives of Apple and HTC.  On the basis of the Agreement,

Apple and HTC jointly move for (a) termination of the Investigation in its entirety without

prejudice pursuant to 19 U.S.C. § 1337(c) and Rule 210.21(b)(1); (b) rescission of the Limited

Exclusion Order currently in place in this matter pursuant to 19 U.S.C. § 1337(k) and Rule

210.76(a)(a) based on changed conditions of fact created by the Agreement; (c) expedited

issuance of decisions on these requests in view of disruptions of now licensed international trade

by Customs; and (d) according confidential treatment to the designated portions of the

Agreement pursuant to Rules 201.6, 210.5, and 210.72.

    As set forth in the accompanying memorandum in support, Apple and HTC have entered

into an Agreement that is designed to terminate this Investigation in its entirety without prejudice

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408286

and to rescind the current Limited Exclusion Order.  The Agreement contains Confidential

Business Information within the meaning of Rules 201.6, 210.5, and 210.72.  Accordingly,

pursuant to Rule 210.21(b)(1), a public version of the Agreement is attached as Exhibit A.  There

are no other agreements, written or oral, express or implied between Apple and HTC concerning

the subject matter of this Investigation.

Because the public interest and Commission precedent support the termination of a

pending investigation and rescission of exclusion orders based on settlements and license

agreements, Apple and HTC respectfully request that the Administrative Law Judge issue an

initial determination to (a) terminate the Investigation in its entirety without prejudice, (b)

rescind the Limited Exclusion Order currently in place in this matter in its entirety based on

changed conditions of fact created by the Agreement, and (c) accord confidential treatment to the

designated portions of the Agreement.

Apple and HTC certify that they conferred with counsel for the Office of Unfair Import

Investigations, and they have indicated that [TBD after consultation with the Staff].

Dated:  November ___, 2012

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| _____ | _____ |
| **Gregory S. Arovas, P.C.** | **Paul F. Brinkman** |
| **Todd M. Friedman** | **S. Alex Lasher** |
| **KIRKLAND & ELLIS LLP** | **Patrick A. Fitch** |
| **601 Lexington Avenue** | **Jared W. Newton** |
| **New York, New York 10022** | **QUINN EMANUEL URQUHART &** |
| **Telephone: (212) 446-4800** | **SULLIVAN, LLP** |
| **Facsimile: (212) 446-4900** | **1299 Pennsylvania Ave. NW, Suite 825** |
|  | **Washington, DC 20004** |
| **Edward C. Donovan** | **Tel.: (202) 538-8000** |
| **F. Christopher Mizzo** | **Fax: (202) 538-8100** |

2

| | |
|---|---|
| **D. Sean Trainor**<br>**KIRKLAND & ELLIS LLP**<br>**655 Fifteenth Street, N.W.**<br>**Washington, D.C. 20005**<br>**Telephone: (202) 879-5000**<br>**Facsimile: (202) 879-5100** | **E-mail: HTC-710-E@quinnemanuel.com**<br><br>**Amy H. Candido**<br>**Sean S. Pak**<br>**Jordan R. Jaffe**<br>**QUINN EMANUEL URQUHART &**<br>**SULLIVAN, LLP** |
| **Marcus E. Sernel, P.C.**<br>**KIRKLAND & ELLIS LLP**<br>**300 North LaSalle Street**<br>**Chicago, Illinois 60654**<br>**Telephone: (312) 862-2000**<br>**Facsimile: (312) 862-2200** | **50 California Street, 22nd Floor**<br>**San Francisco, CA 94111**<br>**Tel.: (415) 875-6600**<br>**Fax: (415) 875-6700**<br>**E-mail: HTC-710-E@quinnemanuel.com** |
| **V. James Adduci II**<br>**Munford Page Hall, II**<br>**Jonathan J. Engler**<br>**Evan H. Langdon**<br>**ADDUCI, MASTRIANI &**<br>**SCHAUMBERG, LLP**<br>**1133 Connecticut Ave, NW, Twelfth Floor**<br>**Washington, D.C. 20036**<br>**Telephone: (202) 467-6300**<br><br>**Attorneys for Complainants Apple** | **Counsel for Respondents HTC** |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408288

**CONFIDENTIAL BUSINESS INFORMATION**
**Subject to Protective Order**

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable David P. Shaw**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-710 |
| | (Enforcement Proceeding) |
| CERTAIN PORTABLE DATA AND | |
| MOBILE COMMUNICATIONS | |
| DEVICES AND RELATED SOFTWARE | |

**JOINT MEMORANDUM IN SUPPORT OF THE JOINT MOTION TO**
**TERMINATE THE INVESTIGATION WITHOUT PREJUDICE**
**AND TO RESCIND THE LIMITED EXCLUSION ORDER BASED ON**
**A PATENT LICENSE AND SETTLEMENT AGREEMENT**

Complainants Apple Inc., and its subsidiary NeXT Software, Inc. (collectively "Apple")

and Respondents High Tech Computer Corp., HTC America, Inc., and Exedea, Inc. (collectively,

"HTC") have entered into a Patent License And Settlement Agreement ("Agreement") that

resolves all past and current matters at issue in the Investigation, is fully effective, and has been

executed by authorized representatives of Apple and HTC.  A confidential copy of the

Agreement is attached as Exhibit A.

On the basis of the Agreement, Apple and HTC jointly move for (a) termination of the

Investigation in its entirety without prejudice pursuant to 19 U.S.C. § 1337(c) and Rule

210.21(b)(1); (b) rescission of the Limited Exclusion Order currently in place in this matter in its

entirety pursuant to 19 U.S.C. § 1337(k) and Rule 210.76(a)(1) based on changed conditions of

fact created by the Agreement; (c) expedited issuance of decisions on these requests in view of

4

disruptions of international trade by Customs; and (d) according confidential treatment to the designated portions of the Agreement pursuant to Rules 201.6, 210.5, and 210.72.

## I.      Procedural History

Upon Apple's request, the Commission instituted the above-captioned investigation. After the conclusion of a hearing, the issuance of an initial determination, and petitions for review, the Commission made a final determination of a violation of 19 U.S.C. § 1337.  On December 19, 2011, the Commission issued the public version of its Opinion in which it found a violation of section 337 by reason of infringement of claims 1 and 8 of U.S. Patent No. 5,946,647 ("the '647 patent") by Respondent HTC.  *Certain Personal Data and Mobile Communications Devices and Related Software,* Inv. No. 337-TA-710, Comm'n Opinion, Public Version (Dec. 19, 2011).  The Commission also issued a Limited Exclusion Order excluding from further importation certain HTC personal data and mobile communication devices and related software products covered by claims 1 or 8 of the '647 patent.  On July 6, 2012, an enforcement proceeding was instituted at Apple's request.  Notice of Institution of a Formal Enforcement Proceeding; Denial of Request for Temporary Emergency Action, 77 FR 40083.

## II.     Termination of the Investigation Without Prejudice In Its Entirety

Commission Rule 210.21(b)(l) provides that "[a]n investigation before the Commission may be terminated as to one or more respondents pursuant to section 337(c) of the Tariff Act of 1930 on the basis of a licensing or other settlement agreement."  A confidential copy of the Agreement between Apple and HTC is attached as Exhibit A.

The public interest and Commission policy generally favor settlement agreements as they preserve the Commission's and the private parties' time and resources.  *See, e.g., Certain*

5

*Microcomputer Memory Controllers, Components Thereof and Products Containing the Same*, Inv. No. 337-TA-331, Order No. 28: Initial Determination, 1992 WL 811833, at 2 (Nov. 16, 1992) ("Settlement of litigation usually is considered to be in the public interest."); *Certain Safety Eyewear and Components Thereof*, Inv. No. 337-TA-433, Order No. 37, at 2 (Nov. 3, 2000); *Certain Integrated Circuit Chipsets and Products Containing Same*, Inv. No. 337-TA-428, Order No. 16 (Pub. Version), at 5 (Aug. 22, 2000); *Certain Synchronous Dynamic Random Access Memory Devices, Microprocessors, and Products Containing Same*, Inv. No. 337-TA-431, Order No. 11 (Pub. Version), at 2 (July 13,2000).  Termination based upon a licensing or other settlement agreement is routinely granted.  *Id.*  The Commission has previously terminated enforcement proceedings based on settlements, even after determining that existing remedial orders were violated.[1]

Termination of this Investigation on the basis of the attached Agreement poses no threat to the public health and welfare, competitive conditions in the United States economy, the production of competitive articles in the United States, or United States consumers.

## III.    Rescission of the Limited Exclusion Order

The Commission has statutory authority under 19 U.S.C. § 1337(k)(2) and Rule 210.76(a)(1) to rescind exclusion orders based on changed issues of law or fact.  The Commission has found that settlement agreements can constitute changed issues of fact sufficient for rescission of exclusion orders.  *Certain Digital Television Products*, Inv. No. 337-TA-617, Notice of Commission Determination to Rescind a Limited Exclusion Order and Cease and

---

[1] *Certain Erasable Programmable Read Only Memories*, Inv. No. 337-TA-276, Comm'n Notice (May 11, 1992) (vacating Order imposing penalties and terminating enforcement proceeding in light of settlement); *Certain Plastic Encapsulated Integrated Circuits*, Inv. No. 337-TA-315, Unreviewed Recommended Determination (May 8, 1995), 61 Fed Reg 49154 (Sept. 18, 1996) (terminating enforcement proceeding based on settlement and retroactive license).

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408291

Desist Order Against Certain Respondents (August 9, 2010); *Certain Sortation Systems, Parts Thereof and Products Containing Same*, Inv. No. 337-TA-460, Comm'n Notice (Mar. 3, 2005) ("the Commission has determined that the settlement agreement satisfies the requirement of Commission Rule 210.76(a)(l) that there be changed conditions of fact or law" and thereby rescinded an exclusion order.)

Rescission is warranted on the basis of changed conditions of fact stemming from the Agreement between Apple and HTC that licenses HTC's past and current products that are covered by the Limited Exclusion order.  Agreement at 3.1.  The Agreement also provides releases for those products under all ITC exclusion orders and ITC cease and desist orders and additionally provides for joint motions to seek termination of ITC investigations and rescission of ITC remedial orders.  Agreement at 4.1 and 4.2.  In situations where a respondent's conduct becomes authorized by way of settlement, the Commission has routinely found changed circumstances to exist, and has rescinded remedial orders on that basis.[2]  Thus, Apple and HTC seek rescission of the Commission's Limited Exclusion Order in its entirety.

Rescission of the Limited Exclusion Order on the basis of the attached Agreement poses no threat to the public health and welfare, competitive conditions in the United States economy, the production of competitive articles in the United States, or United States consumers.

---

[2] *See*, e.g., *Certain Integrated Circuits, Processes for Making Same, and Products Containing Same*, Inv. No. 337-TA-450, Comm'n Order (Apr. 23, 2003) (joint petition asserting that a settlement agreement met the Rule 210.76(a)(1) requirement of "changed conditions of fact or law" sufficient to justify rescission of an exclusion order; the Commission agreed and rescinded the limited exclusion order.); *Certain Condensers, Parts Thereof and Products Containing Same*, Inv. No. 337-TA-334, Comm'n Notice (Oct. 10, 2000) (rescinding limited exclusion order); *Certain Dense Wavelength Division Multiplexing Systems and Components Thereof*, Inv. No. 337-TA-397, Comm'n Notice (July 30, 1998) (rescinding a consent order); *Certain Flash Memory Circuits and Products Containing Same*, Inv. No. 337-TA-382, Comm'n Notice (Sept. 18, 1997) (rescinding limited exclusion order and cease and desist order).

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408292

Rescission of the Commission's Limited Exclusion Order will relieve the burdens imposed by the continuing pendency of the order on the parties, the Commission, Customs and Border Protection, as well as the public, the Commission should rescind its remedial orders pursuant to 19 U.S.C. § 1337(k)(2) and 19 C.F.R. 9 210.76(a)(1).

## IV.    Confidential Treatment of Designated Portions of the Agreement

Pursuant to Rules 201.6, 210.5, and 210.72, Apple and HTC designate certain section f of the Agreement as Confidential Business Information, Subject to Protective Order. The specific bracketed terms of the agreements between Apple and HTC constitute highly sensitive information, disclosure of which could provide an unfair advantage to competitors and/or customers of one or both companies.  Settlement of litigation is "considered to be in the public interest,"[3] and maintaining the confidentiality of settlement terms is a powerful tool in achieving settlements of 337 investigations.[4]

## V.    Expedited Decisions

Apple and HTC request expedited consideration of this Motion for termination of the Investigation and rescission of the Limited Exclusion Order.  Importantly, HTC's legitimate trade in now licensed smartphones is currently subject to disruption and delay due to Customs actions based on the existing Limited Exclusion Order.

---

[3] *Certain Microcomputer Memory Controllers, Components Thereof and Products Containing the Same*, Inv. No. 337-TA-331, Initial Determination and Order No. 28 Concerning Violation Of Section 337 (Nov. 16,2002) at *2.

[4] *See Certain Semiconductor Timing Signal Generator Devices, Components Thereof: and Products Containing the Same*, Inv. No. 337-TA-465, Order No. 7 Concerning Violation Of Section 337 (Oct. 16, 2002) at *2 (denying respondent's motion to compel production of an unredacted version of settlement agreement between complainant and another respondent from which monetary and licensing terms had been deleted on the ground that "confidential settlement agreements, with redacted public versions, have formed the sole basis of termination of many prior investigations" and that "without such agreements, it is doubtful that the investigations would have been terminated").

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408293

## VI.    Conclusion

For the reasons set forth above, Complainants Apple and Respondent HTC respectfully request that the Administrative Law Judge issue an initial determination to (a) terminate the Investigation in its entirety without prejudice, (b) rescind the Limited Exclusion Order in place in this matter in its entirety based on changed conditions of fact arising from the Agreement, and (c) accord confidential treatment to the designated portions of the Agreement.

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408294

Dated:  November __, 2012

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| _____ | _____ |
| **Gregory S. Arovas, P.C.** | **Paul F. Brinkman** |
| **Todd M. Friedman** | **S. Alex Lasher** |
| **KIRKLAND & ELLIS LLP** | **Patrick A. Fitch** |
| **601 Lexington Avenue** | **Jared W. Newton** |
| **New York, New York 10022** | **QUINN EMANUEL URQUHART &** |
| **Telephone: (212) 446-4800** | **SULLIVAN, LLP** |
| **Facsimile: (212) 446-4900** | **1299 Pennsylvania Ave. NW, Suite 825** |
| | **Washington, DC 20004** |
| **Edward C. Donovan** | **Tel.: (202) 538-8000** |
| **F. Christopher Mizzo** | **Fax: (202) 538-8100** |
| **D. Sean Trainor** | **E-mail: HTC-710-E@quinnemanuel.com** |
| **KIRKLAND & ELLIS LLP** | |
| **655 Fifteenth Street, N.W.** | **Amy H. Candido** |
| **Washington, D.C. 20005** | **Sean S. Pak** |
| **Telephone: (202) 879-5000** | **Jordan R. Jaffe** |
| **Facsimile: (202) 879-5100** | **QUINN EMANUEL URQUHART &** |
| | **SULLIVAN, LLP** |
| **Marcus E. Sernel, P.C.** | **50 California Street, 22nd Floor** |
| **KIRKLAND & ELLIS LLP** | **San Francisco, CA 94111** |
| **300 North LaSalle Street** | **Tel.: (415) 875-6600** |
| **Chicago, Illinois 60654** | **Fax: (415) 875-6700** |
| **Telephone: (312) 862-2000** | **E-mail: HTC-710-E@quinnemanuel.com** |
| **Facsimile: (312) 862-2200** | |
| | **Counsel for Respondents HTC** |
| **V. James Adduci II** | |
| **Munford Page Hall, II** | |
| **Jonathan J. Engler** | |
| **Evan H. Langdon** | |
| **ADDUCI, MASTRIANI &** | |
| **SCHAUMBERG, LLP** | |
| **1133 Connecticut Ave, NW, Twelfth Floor** | |
| **Washington, D.C. 20036** | |
| **Telephone: (202) 467-6300** | |
| | |
| **Attorneys for Complainants Apple** | |

10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., and NeXT SOFTWARE, INC., f/k/a NeXT COMPUTER, INC.<br><br>Plaintiffs,<br><br>v.<br><br>HIGH TECH COMPUTER CORP., aka HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., and EXEDEA, INC.,<br><br>Defendants | Civil Action No.: 1:10-cv-166-GMS |

**STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION
WITHOUT PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiffs Apple Inc.

and NeXT SOFTWARE, INC., f/k/a NeXT COMPUTER, INC. (collectively, "Apple") and

Defendants High Tech Computer Corp. aka HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc.

and Exedea, Inc. (collectively, "HTC"), pursuant to Federal Rule of Civil Procedure

41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and HTC in the

above captioned matter are hereby dismissed WITHOUT PREJUDICE, and that each party shall

bear its own costs, expenses and attorneys' fees.

Dated: November___, 2012.

| | |
|---|---|
| _____<br>Richard K. Herrmann (I.D. #405)<br>Mary B. Matterer (I.D. #2696)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>(302) 888-6800<br>*Attorneys for Plaintiffs Apple Inc. and NeXT SOFTWARE, INC., f/k/a NeXT COMPUTER, INC.* | _____<br>John W. Shaw (#3362)<br>Karen E. Keller (#4489)<br>SHAW KELLER LLP<br>800 Delaware Avenue, 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 476-2050<br>*Attorneys for Defendants High Tech Computer Corp. aka HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc. and Exedea, Inc.* |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408296

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 1:10-cv-167-GMS |
| HIGH TECH COMPUTER CORP., aka HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., and EXEDEA, INC., | |
| Defendants | |

**STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION
WITHOUT PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Apple Inc.

("Apple") and Defendants High Tech Computer Corp. aka HTC Corp., HTC (B.V.I.) Corp.,

HTC America, Inc. and Exedea, Inc. (collectively, "HTC"), pursuant to Federal Rule of Civil

Procedure 41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and HTC

in the above captioned matter are hereby dismissed WITHOUT PREJUDICE, and that each party

shall bear its own costs, expenses and attorneys' fees.

Dated: November___, 2012.

| | |
|---|---|
| _____ | _____ |
| Richard K. Herrmann (I.D. #405) | John W. Shaw (#3362) |
| Mary B. Matterer (I.D. #2696) | Karen E. Keller (#4489) |
| MORRIS JAMES LLP | SHAW KELLER LLP |
| 500 Delaware Avenue, Suite 1500 | 800 Delaware Avenue, 3rd Floor |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 888-6800 | Telephone: (302) 476-2050 |
| | |
| *Attorneys for Plaintiff Apple Inc.* | *Attorneys for Defendants High Tech Computer Corp. aka HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc. and Exedea, Inc.* |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                     APLNDC-Y0000408297

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>HIGH TECH COMPUTER CORP., aka<br>HTC CORP., HTC (B.V.I.) CORP., HTC<br>AMERICA, INC., and EXEDEA, INC.,<br><br>       Defendants | Civil Action No.: 1:10-cv-544-GMS |

**STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION
WITHOUT PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Apple Inc.

("Apple") and Defendants High Tech Computer Corp. aka HTC Corp., HTC (B.V.I.) Corp.,

HTC America, Inc. and Exedea, Inc. (collectively, "HTC"), pursuant to Federal Rule of Civil

Procedure 41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and HTC

in the above captioned matter are hereby dismissed WITHOUT PREJUDICE, and that each party

shall bear its own costs, expenses and attorneys' fees.

Dated: November___, 2012.

| | |
|---|---|
| _____<br>Richard K. Herrmann (I.D. #405)<br>Mary B. Matterer (I.D. #2696)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>(302) 888-6800<br><br>*Attorneys for Plaintiff Apple Inc.* | _____<br>John W. Shaw (#3362)<br>Karen E. Keller (#4489)<br>SHAW KELLER LLP<br>800 Delaware Avenue, 3rd Floor<br>Wilmington, DE 19801<br>Telephone: (302) 476-2050<br><br>*Attorneys for Defendants High Tech Computer<br>Corp. aka HTC Corp., HTC (B.V.I.) Corp.,<br>HTC America, Inc. and Exedea, Inc.* |

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408298

PUBLIC VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

Before the Honorable E. James Gildea
Administrative Law Judge

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-797 |
| CERTAIN PORTABLE ELECTRONIC DEVICES AND RELATED SOFTWARE | |

### JOINT MOTION TO TERMINATE INVESTIGATION WITHOUT PREJUDICE

Pursuant to 19 C.F.R. § 210.21(b), Complainant Apple Inc. ("Apple") and Respondents HTC Corp., HTC America, Inc. and Exedea, Inc. (collectively "HTC") jointly move to terminate Investigation No. 337-TA-797 in its entirety without prejudice on the basis of a settlement agreement between Apple and HTC (collectively "the Private Parties").

As set forth in the accompanying memorandum in support, Apple and HTC have entered into a certain settlement agreement that includes an agreement to terminate this Investigation in its entirety without prejudice (the "Agreement"). The Agreement contains Confidential Business Information within the meaning of 19 C.F.R. § 201.6. Accordingly, pursuant to § 210.21(b)(1), a non-confidential version of the Agreement is attached as Exhibit A. There are no other agreements, written or oral, express or implied between the parties concerning the subject matter of this Investigation.

Because the public interest and Commission precedent support the termination of a pending investigation based on settlement, the Private Parties respectfully request that the Administrative Law Judge issue an initial determination terminating the above-captioned Investigation without prejudice in accordance with the provisions of 19 U.S.C. § 1337(c) and 19 C.F.R. § 210.21(b).

1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY        APLNDC-Y0000408299

PUBLIC VERSION

The Private Parties certify that they conferred with counsel for the Office of Unfair

Import Investigations, and they have indicated that they do not oppose this motion

Dated:  November __, 2012

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| _____ | _____ |
| Mark D. Fowler | Robert P. Feldman |
| Aaron Wainscoat | QUINN EMANUEL URQUHART & |
| Erik Fuehrer |   SULLIVAN, LLP |
| Carrie Williamson | 555 Twin Dolphin Dr., 5th Floor |
| DLA Piper LLP (US) | Redwood Shores, California 94065 |
| 2000 University Avenue | (650) 801-5000 |
| East Palo Alto, California 94303 | (650) 801-5100 facsimile |
| Tel:  650-833-2000 | |
| Fax: 650-833-2001 | Amy H. Candido |
| | Sean Pak |
| Tiffany Miller | QUINN EMANUEL URQUHART & |
| Rob Williams |   SULLIVAN, LLP |
| DLA Piper LLP (US) | 50 California Street, 22nd Floor |
| 401 B Street, Suite 1700 | San Francisco, California  94111 |
| San Diego, California 92101 | (415) 875-6600 |
| Tel:  619-699-2700 | (415) 875-6700 facsimile |
| Fax: 619-699-2701 | |
| | James M. Glass |
| David Alberti | QUINN EMANUEL URQUHART & |
| Elizabeth Day |   SULLIVAN, LLP |
| Clayton Thompson | 51 Madison Avenue, 22nd Floor |
| Yakov Zolotorev | New York, New York  10010 |
| Feinberg, Day, Alberti & Thompson, LLP | (212) 849-7000 |
| 401 Florence Street, Suite 200 | (212) 849-7100 facsimile |
| Palo Alto, CA 94301 | |
| | Paul F. Brinkman |
| Attorneys for Complainant Apple Inc. | S. Alex Lasher |
| | QUINN EMANUEL URQUHART & |
| |   SULLIVAN, LLP |
| | 1299 Pennsylvania Ave. NW, Suite 825 |
| | Washington, DC 20004 |
| | (202) 756-1950 |

2

WEST\239613051.1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                APLNDC-Y0000408300

PUBLIC VERSION

| | (202) 756-1951 facsimile |
| --- | --- |
| | Attorneys for Respondents HTC Corp., HTC America, Inc., and Exedea, Inc. |

3

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408301

PUBLIC VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

Before the Honorable E. James Gildea
Administrative Law Judge

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-797 |
| CERTAIN PORTABLE ELECTRONIC DEVICES AND RELATED SOFTWARE | |

## MEMORANDUM IN SUPPORT OF JOINT MOTION TO TERMINATE INVESTIGATION

On November __, 2012, Complainant Apple Inc. ("Apple") and Respondents HTC Corp., HTC America, Inc. and Exedea, Inc. (collectively "HTC") entered into a settlement agreement ("Agreement") which is fully effective and has been executed by authorized representatives of Apple and HTC.  The settlement agreement includes an agreement to terminate this Investigation in its entirety without prejudice.  Accordingly, Apple and HTC (collectively "the Private Parties") respectfully request that the Administrative Law Judge issue an initial determination terminating this Investigation.

Commission Rule 210.21(b)(l) provides that "[a]n investigation before the Commission may be terminated as to one or more respondents pursuant to section 337(c) of the Tariff Act of 1930 on the basis of a licensing or other settlement agreement."  Commission Rule 210.21(b)(1). The terms of the settlement agreement between Apple and HTC are set forth in attached Exhibit A, from which Confidential Business Information within the meaning of 19 C.F.R. § 201.6 has been redacted.  An unredacted copy of the Agreement will be filed separately as a confidential document.

The public interest and Commission policy generally favor settlement agreements as they preserve the Commission's and the private parties' time and resources.  *See, e.g., Certain Microcomputer Memory Controllers, Components Thereof and Products Containing the Same,*

1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408302

PUBLIC VERSION

Inv. No. 337-TA-331, Order No. 28: Initial Determination, 1992 WL 811833, at 2 (Nov. 16, 1992) ("Settlement of litigation usually is considered to be in the public interest."); *Certain Safety Eyewear and Components Thereof*, Inv. No. 337-TA-433, Order No. 37, at 2 (Nov. 3, 2000); *Certain Integrated Circuit Chipsets and Products Containing Same*, Inv. No. 337-TA-428, Order No. 16 (Pub. Version), at 5 (Aug. 22, 2000); *Certain Synchronous Dynamic Random Access Memory Devices, Microprocessors, and Products Containing Same*, Inv. No. 337-TA-431, Order No. 11 (Pub. Version), at 2 (July 13,2000). Termination based upon a licensing or other settlement agreement is routinely granted. *Id.* Termination of this Investigation on the basis of the attached settlement agreement poses no threat to the public health and welfare, competitive conditions in the United States economy, the production of competitive articles in the United States, or United States consumers.

Accordingly, the Private Parties respectfully request that the Administrative Law Judge grant their joint motion and issue an initial determination terminating this Investigation in its entirety without prejudice.

Dated: November __, 2012

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| _____ | _____ |
| Mark D. Fowler | Robert P. Feldman |
| Aaron Wainscoat | QUINN EMANUEL URQUHART & |
| Erik Fuehrer |   SULLIVAN, LLP |
| Carrie Williamson | 555 Twin Dolphin Dr., 5th Floor |
| DLA Piper LLP (US) | Redwood Shores, California 94065 |
| 2000 University Avenue | (650) 801-5000 |
| East Palo Alto, California 94303 | (650) 801-5100 facsimile |
| Tel:  650-833-2000 | |
| Fax: 650-833-2001 | Amy H. Candido |
| | Sean Pak |
| Tiffany Miller | QUINN EMANUEL URQUHART & |
| Rob Williams |   SULLIVAN, LLP |

2

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

PUBLIC VERSION

| | |
|---|---|
| DLA Piper LLP (US)<br>401 B Street, Suite 1700<br>San Diego, California 92101<br>Tel:  619-699-2700<br>Fax: 619-699-2701<br><br>David Alberti<br>Elizabeth Day<br>Clayton Thompson<br>Yakov Zolotorev<br>Feinberg, Day, Alberti & Thompson, LLP<br>401 Florence Street, Suite 200<br>Palo Alto, CA 94301<br><br>Attorneys for Complainant Apple Inc. | 50 California Street, 22nd Floor<br>San Francisco, California  94111<br>(415) 875-6600<br>(415) 875-6700 facsimile<br><br>James M. Glass<br>QUINN EMANUEL URQUHART &<br>  SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York  10010<br>(212) 849-7000<br>(212) 849-7100 facsimile<br><br>Paul F. Brinkman<br>S. Alex Lasher<br>QUINN EMANUEL URQUHART &<br>  SULLIVAN, LLP<br>1299 Pennsylvania Ave. NW, Suite 825<br>Washington, DC 20004<br>(202) 756-1950<br>(202) 756-1951 facsimile<br><br>Attorneys for Respondents HTC Corp., HTC<br>America, Inc., and Exedea, Inc. |

3

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408304

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 1:11-cv-611-GMS |
| HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., EXEDEA, INC. and HTC AMERICA HOLDING, INC., | |
| Defendants | |

**STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION
WITHOUT PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Apple Inc.

("Apple") and Defendants HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., Exedea, Inc.

and HTC America Holding, Inc. (collectively, "HTC"), pursuant to Federal Rule of Civil

Procedure 41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and HTC

in the above captioned matter are hereby dismissed WITHOUT PREJUDICE, and that each party

shall bear its own costs, expenses and attorneys' fees.

Dated: November___, 2012.

_____
Denise S. Kraft (#2778)
Aleine M. Porterfield (#5053)
DLA PIPER LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE 19801-3046
(302) 468-5700

*Attorneys for Plaintiff Apple Inc.*

_____
John W. Shaw (#3362)
Karen E. Keller (#4489)
SHAW KELLER LLP
800 Delaware Avenue, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 476-2050

*Attorneys for Defendants HTC Corp., HTC
(B.V.I.) Corp., HTC America, Inc., Exedea,
Inc. and HTC America Holding, Inc.*

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408305

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

Before the Honorable Thomas B. Pender
Administrative Law Judge

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-808 |
| CERTAIN ELECTRONIC DEVICES WITH COMMUNICATION CAPABILITIES, COMPONENTS THEREOF, AND RELATED SOFTWARE | |

**JOINT MOTION TO TERMINATE THE INVESTIGATION WITHOUT PREJUDICE**

Pursuant to 19 C.F.R. § 210.21(b), Complainant HTC Corp. ("HTC") and Respondent

Apple Inc. ("Apple") jointly move to terminate Investigation No. 337-TA-808 in its entirety

without prejudice on the basis of a settlement agreement between HTC and Apple (collectively

"the Private Parties").

As set forth in the accompanying memorandum in support, HTC and Apple have entered

into a PATENT LICENSE AND SETTLEMENT AGREEMENT that includes an agreement to

terminate this Investigation in its entirety without prejudice (the "Agreement").  The Agreement

contains Confidential Business Information within the meaning of 19 C.F.R. § 201.6.

Accordingly, pursuant to § 210.21(b)(1), a non-confidential version of the Agreement is attached

as Exhibit A.  There are no other agreements, written or oral, express or implied between HTC

and Apple concerning the subject matter of this Investigation.

Because the public interest and Commission precedent support the termination of a

pending investigation based on settlement, the Private Parties respectfully request that the

Administrative Law Judge issue an initial determination terminating the above-captioned

1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408306

Investigation without prejudice in accordance with the provisions of 19 U.S.C. § 1337(c) and 19

C.F.R. § 210.21(b).

The Private Parties certify that they conferred with counsel for the Office of Unfair

Import Investigations, and they have indicated that they do not oppose this motion

Dated:  November __, 2012

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| _____ | _____ |
| Thomas L. Jarvis | Michael J. McKeon |
| Thomas W. Winland | Joseph Colaianni |
| Steven M. Anzalone | Ralph A. Phillips |
| John R. Alison | Rudhir B. Patel |
| Houtan K. Esfahani | Steven A. Bowers |
| Paul C. Goulet | **FISH & RICHARDSON P.C.** |
| **FINNEGAN, HENDERSON, FARABOW,** | 1425 K Street, N.W., Suite 1100 |
| **GARRETT & DUNNER, LLP** | Washington, D.C.  20005 |
| 901 New York Avenue, N.W. | Telephone:  (202) 783-5070 |
| Washington, D.C.  20001-4413 | Facsimile:   (202) 783-2331 |
| Telephone: (202) 408-4000 | |
| Facsimile: (202) 408-4400 | |
| | |
| _Counsel for Complainant HTC Corp._ | _Counsel for Respondent Apple Inc._ |

2

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408307

**CONFIDENTIAL BUSINESS INFORMATION**
Subject to Protective Order

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

Before the Honorable Thomas B. Pender
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>CERTAIN ELECTRONIC DEVICES WITH<br>COMMUNICATION CAPABILITIES,<br>COMPONENTS THEREOF, AND<br>RELATED SOFTWARE | Investigation No. 337-TA-808 |

**MEMORANDUM IN SUPPORT OF JOINT MOTION**
**TO TERMINATE THE INVESTIGATION**

On November __, 2012, Complainant HTC Corp. ("HTC") and Respondent Apple Inc. ("Apple") entered into a PATENT LICENSE AND SETTLEMENT AGREEMENT ("Agreement") which is fully effective and has been executed by authorized representatives of HTC and Apple. TheAgreement includes an agreement to terminate this Investigation in its entirety. Accordingly, HTC and Apple (collectively "the Private Parties") respectfully request that the Administrative Law Judge issue an initial determination terminating this Investigation.

Commission Rule 210.21(b)(l) provides that "[a]n investigation before the Commission may be terminated as to one or more respondents pursuant to section 337(c) of the Tariff Act of 1930 on the basis of a licensing or other settlement agreement." Commission Rule 210.21(b)(1). A confidential version of the Agreement between HTC and Apple is attached as Exhibit A.

The public interest and Commission policy generally favor settlement agreements as they preserve the Commission's and the private parties' time and resources. *See, e.g., Certain Microcomputer Memory Controllers, Components Thereof and Products Containing the Same*, Inv. No. 337-TA-331, Order No. 28: Initial Determination, 1992 WL 811833, at 2 (Nov. 16,

1

WEST\239613051.1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408308

1992) ("Settlement of litigation usually is considered to be in the public interest."); *Certain Safety Eyewear and Components Thereof*, Inv. No. 337-TA-433, Order No. 37, at 2 (Nov. 3, 2000); *Certain Integrated Circuit Chipsets and Products Containing Same*, Inv. No. 337-TA-428, Order No. 16 (Pub. Version), at 5 (Aug. 22, 2000); *Certain Synchronous Dynamic Random Access Memory Devices, Microprocessors, and Products Containing Same*, Inv. No. 337-TA-431, Order No. 11 (Pub. Version), at 2 (July 13,2000). Termination based upon a licensing or other settlement agreement is routinely granted. *Id.* Termination of this Investigation on the basis of the attached Agreement poses no threat to the public health and welfare, competitive conditions in the United States economy, the production of competitive articles in the United States, or United States consumers.

Accordingly, the Private Parties respectfully request that the Administrative Law Judge grant their joint motion and issue an initial determination terminating this Investigation in its entirety.

Dated:  November __, 2012

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| _____ | _____ |
| Thomas L. Jarvis | Michael J. McKeon |
| Thomas W. Winland | Joseph Colaianni |
| Steven M. Anzalone | Ralph A. Phillips |
| John R. Alison | Rudhir B. Patel |
| Houtan K. Esfahani | Steven A. Bowers |
| Paul C. Goulet | **FISH & RICHARDSON P.C.** |
| **FINNEGAN, HENDERSON, FARABOW,** | 1425 K Street, N.W., Suite 1100 |
| **GARRETT & DUNNER, LLP** | Washington, D.C.  20005 |
| 901 New York Avenue, N.W. | Telephone:  (202) 783-5070 |
| Washington, D.C.  20001-4413 | Facsimile:   (202) 783-2331 |
| Telephone: (202) 408-4000 | |
| Facsimile: (202) 408-4400 | |
| | |
| *Counsel for Complainant HTC Corp.* | *Counsel for Respondent Apple Inc.* |

2

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408309

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

HTC CORPORATION,

    Plaintiff,

      v.                                                                C.A. No. 11-715-GMS

APPLE INC.,

    Defendant.

**PLAINTIFF HTC CORPORATION'S NOTICE OF DISMISSAL WITHOUT**
**PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1)(A)(i)**

      Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), plaintiff HTC Corporation

("HTC") files this notice of dismissal of the above-captioned action without prejudice.

      Prior to HTC's filing of this notice of dismissal, defendant Apple, Inc. ("Apple") did not

serve either an answer or a motion for summary judgment in the above-captioned action.

Rather, Apple elected to stay this action under 28 U.S.C. § 1659.  Under these circumstances, HTC

is entitled under Rule 41(a)(1)(A)(1) to dismiss the above-captioned action, without prejudice,

upon notice and without a court order.  *RFR Industries Inc. v. Century Steps Inc.*, 477 F.3d 1348

(Fed. Cir. 2007) (dismissing upon notice:  "So long as a plaintiff has not been served with

an answer or a motion for summary judgment, the plaintiff need do no more than file a notice of

dismissal to dismiss the case.").

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408310

Dated:  November __, 2012

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____
John W. Shaw (#3362)
Karen L. Pascale (#2903)
Karen E. Keller (#4489)
Rodney Square
1000 North King Street
Wilmington, DE 19899-0391
Telephone: (302) 571-6600

*Attorneys for Plaintiff HTC Corporation*

- 2 -

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408311

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

HTC CORPORATION,

    Plaintiff /Counterclaim-Defendant,

       v.

APPLE INC.,

    Defendant/Counterclaim-Plaintiff.

C.A. No. 11-785-GMS

## STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff/Counterclaim Defendant HTC Corporation ("HTC") and Defendant/Counterclaim Plaintiff Apple Inc. ("Apple") pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and HTC in the above captioned matter are hereby dismissed WITH PREJUDICE solely with respect to HTC and WITHOUT PREJUDICE with respect to Apple and to any other person or entity, and that each party shall bear its own costs, expenses and attorneys' fees.

    Dated:  November __, 2012

_____
Karen L. Pascale (#2903)
James L. Higgins (#5021)
1000 North King Street
Wilmington, DE 19899-0391
Telephone: (302) 571-6600


*Attorneys for Plaintiff/Counterclaim-
Defendant HTC Corporation*

_____
Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for Defendant/Counterclaim-
Plaintiff Apple Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 1:12-cv-1004-GMS |
| HTC CORPORATION, HTC AMERICA, INC., ONE & COMPANY DESIGN, INC., and HTC AMERICA INNOVATION, INC. | |
| Defendants | |

**STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION
WITHOUT PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Apple Inc.

("Apple") and Defendants HTC Corporation, HTC America, Inc., One & Company Design, Inc.,

and HTC America Innovation, Inc. (collectively, "HTC") (collectively, "HTC"), pursuant to

Federal Rule of Civil Procedure 41(a)(1)(A)(ii), that each and every claim and counterclaim

between Apple and HTC in the above captioned matter are hereby dismissed WITHOUT

PREJUDICE, and that each party shall bear its own costs, expenses and attorneys' fees.

Dated: November___, 2012.

_____

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800

*Attorneys for Plaintiff Apple Inc.*

_____

John W. Shaw (#3362)
Karen E. Keller (#4489)
SHAW KELLER LLP
800 Delaware Avenue, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 476-2050

*Attorneys for Defendants HTC Corporation,
HTC America, Inc., One & Company Design,
Inc. and HTC America Innovation, Inc.*

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408313

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

APPLE INC.,

        Plaintiff,

    v.

HTC CORPORATION,

      Defendant

Civil Action No.: 1:12-cv-1055-GMS

**STIPULATION REGARDING DISMISSAL OF ENTIRE ACTION
WITHOUT PREJUDICE**

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Apple Inc.

("Apple") and Defendant HTC Corporation, pursuant to Federal Rule of Civil Procedure

41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and HTC in the

above captioned matter are hereby dismissed WITHOUT PREJUDICE, and that each party shall

bear its own costs, expenses and attorneys' fees.

Dated: November___, 2012.

_____

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800

*Attorneys for Plaintiff Apple Inc.*

_____

John W. Shaw (#3362)
Karen E. Keller (#4489)
SHAW KELLER LLP
800 Delaware Avenue, 3rd Floor
Wilmington, DE 19801
Telephone: (302) 476-2050

*Attorneys for Defendant HTC Corporation*

1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                       APLNDC-Y0000408314

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2012-1125

APPLE INC.,

Appellant,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee,

and

HTC CORPORATION and HTC AMERICA, INC.,

Intervenors.

On appeal from the United States International Trade Commission in Investigation No. 337-TA-710

## UNOPPOSED MOTION TO DISMISS

Marcus E. Sernel, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Appellant Apple Inc.*

-1-

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408315

Apple Inc., the appellant in this appeal, moves to dismiss this appeal

pursuant to Fed. R. App. P. 42(b), with each party to bear its own costs on appeal.

Both the International Trade Commission and the intervenors, HTC Corporation

and HTC America, Inc., have consented to this motion.


Dated:  November __, 2012                    Respectfully submitted,


_____
Marcus E. Sernel, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Appellant Apple Inc.*

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408316

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2012-1226

HTC CORPORATION and HTC AMERICA, INC.,

Appellants,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee,

and

APPLE INC.,

Intervenor.

On appeal from the United States International Trade Commission in Investigation No. 337-TA-710

## UNOPPOSED MOTION TO DISMISS

HTC Corporation and HTC America, Inc., appellants in this appeal, move to dismiss this appeal pursuant to Fed. R. App. P. 42(b), with each party to bear its own costs on appeal. Both appellee International Trade Commission and intervenor, Apple Inc., have consented to this motion.

-1-

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

Dated:  November ___, 2012        Respectfully submitted,

_____

(To be inserted by Lead Counsel in
Appeal No. 12-1226)

-2-

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY        APLNDC-Y0000408318

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
- 21. Zivilkammer -
Lenbachplatz 7
80333 München I


- vorab per Telefax -


**Aktenzeichen: 21 O 14039/11**

In Sachen

Apple Inc.

                 (Bardehle Pagenberg, München)


gegen


1.    HTC Europe Co. Ltd.
2.    The Phone House Telecom GmbH
3.    HTC Corporation

                 (Preu Bohlig & Partner, Düsseldorf)


wegen Patentverletzung (EP 1 964 022 B1)


stimmen wir der Klagerücknahme zu. Die Parteien werden keine Kostenanträge stellen.


Dr. Peter Kather
Rechtsanwalt


1030886

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408319

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
- 21. Zivilkammer -
Lenbachplatz 7
80333 München I

- vorab per Telefax -

**Aktenzeichen: 21 O 2017/12**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

1.   HTC Europe Co. Ltd.
2.   The Phone House Telecom GmbH
3.   HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 2 126 678 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030900

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408320

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
- 21. Zivilkammer -
Lenbachplatz 7
80333 München I

- vorab per Telefax -

**Aktenzeichen: 21 O 6997/12**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

1.    HTC Europe Co. Ltd.
2.    The Phone House Telecom GmbH
3.    HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 2 059 868 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030910

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY            APLNDC-Y0000408321

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
- 21. Zivilkammer -
Lenbachplatz 7
80333 München I

- vorab per Telefax -

**Aktenzeichen: 21 O 19210/12**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

1.  HTC Europe Co. Ltd.
2.  The Phone House Telecom GmbH
3.  HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 2 059 868 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030913

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408322

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 235/11**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

1.   HTC Europe Co. Ltd.
2.   The Phone House Telecom GmbH

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 1 168 859 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030872
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408323

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 386/11**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 1 168 859 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030879

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408324

[Briefkopf Müller Hoffmann & Partner]

Bundespatentgericht
Cincinnatistraße 64
81549 München

- vorab per Telefax -

**Aktenzeichen: 2 Ni 55/11 (EP)**

In Sachen

HTC Europe Co. Ltd.

(Müller Hoffmann & Partner)

gegen

Apple Inc.

wegen Nichtigkeit EP 1 964 022 B1

nehmen wir in Erfüllung eines zwischen den Parteien geschlossenen Vergleichs die Klage zurück. Die Parteien werden keine Kostenanträge stellen.

Dr. Achim Müller
Patentanwalt

1030925

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408325

[Briefkopf Müller Hoffmann & Partner]

Bundespatentgericht
Cincinnatistraße 64
81549 München

- vorab per Telefax -

**Aktenzeichen: 2 Ni 58/11 (EP)**

In Sachen

HTC Europe Co. Ltd.

(Müller Hoffmann & Partner)

gegen

Apple Inc.

wegen Nichtigkeit EP 2 059 868 B1

nehmen wir in Erfüllung eines zwischen den Parteien
geschlossenen Vergleichs die Klage zurück. Die Partei-
en werden keine Kostenanträge stellen.

Dr. Achim Müller
Patentanwalt

1030916

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408326

[Briefkopf Müller Hoffmann & Partner]

Bundespatentgericht
Cincinnatistraße 64
81549 München

- vorab per Telefax -

**Aktenzeichen: 5 Ni 54/11 (EP)**

In Sachen

HTC Europe Co. Ltd.

                          (Müller Hoffmann & Partner)

gegen

Apple Inc.

wegen Nichtigkeit EP 1 168 859 B1

     nehmen wir in Erfüllung eines zwischen den Parteien geschlossenen Vergleichs die Klage zurück. Die Parteien werden keine Kostenanträge stellen.

Dr. Achim Müller
Patentanwalt

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
- 21. Zivilkammer -
Lenbachplatz 7
80333 München I

- vorab per Telefax -

**Aktenzeichen: 2 O 445/11**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

1.    HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 2 098 948 B1)

      stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030910

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408328

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
- 21. Zivilkammer -
Lenbachplatz 7
80333 München I

- vorab per Telefax -

**Aktenzeichen: 2 O 446/11**

In Sachen

Apple Inc.

(Bardehle Pagenberg, München)

gegen

1.   HTC Germany GmbH

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 2 098 948 B1)

stimmen wir der Klagerücknahme zu. Die Parteien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

[Briefkopf Preu Bohlig & Partner]

Oberlandesgericht Karlsruhe
6. Zivilsenat
Hoffstraße 10
76133 Karlsruhe

- vorab per Telefax -

**Aktenzeichen: 6 U 98/12**

In Sachen

Apple Inc.

                     (Freshfields Bruckhaus Deringer, München)

g e g e n

HTC Corporation

                         (Preu Bohlig & Partner, Düsseldorf)

wegen EP 2 098 948

    stimmt die Beklagte der Klagerücknahme zu. Die Partei-
    en werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030915
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY         APLNDC-Y0000408330

[Briefkopf Preu Bohlig & Partner]

Oberlandesgericht Karlsruhe
6. Zivilsenat
Hoffstraße 10
76133 Karlsruhe

- vorab per Telefax -

**Aktenzeichen: 6 U 99/12**

In Sachen

Apple Inc.

                     (Freshfields Bruckhaus Deringer, München)

g e g e n

HTC Germany GmbH

                       (Preu Bohlig & Partner, Düsseldorf)

wegen EP 2 098 948

     stimmt die Beklagte der Klagerücknahme zu. Die Partei-
     en werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030858

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY            APLNDC-Y0000408331

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 64/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 719 487 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030861

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408332

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 66/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Germany GmbH

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 719 487 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY    APLNDC-Y0000408333

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 7 O 76/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 769 169 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030942

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408334

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 7 O 77/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Germany GmbH

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 769 169 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030859
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408335

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 7 O 134/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 760 131 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030939

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408336

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 7 O 135/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Germany GmbH

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 760 131 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030941
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408337

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 163/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Corporation

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 664 021 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030936

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408338

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 164/12**

In Sachen

Apple Inc.

(Freshfields, München)

gegen

HTC Germany GmbH

(Preu Bohlig & Partner, Düsseldorf)

wegen Patentverletzung (EP 0 664 021 B1)

stimmen wir der Klagerücknahme zu. Die Parteien wer-
den keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408339

[Briefkopf Gulde Hengelhaupt Ziebig & Schneider]

Bundespatentgericht
Cincinnatistraße 64
81549 München

- vorab per Telefax -

**Aktenzeichen: 2 Ni 23/12 (EP)**

In Sachen

HTC Germany GmbH
                                  (Gulde Hengelhaupt Ziebig & Schneider)

gegen

Apple Inc.

wegen Nichtigkeit EP 0 769 169 B1

nehmen wir in Erfüllung eines zwischen den Parteien geschlossenen Vergleichs die Klage zurück. Die Parteien werden keine Kostenanträge stellen.

Dr. Sönke Lorenz
Patentanwalt

1030926
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY              APLNDC-Y0000408340

[Briefkopf Winter Brandl et. al.]

Bundespatentgericht
Cincinnatistraße 64
81549 München

- vorab per Telefax -

**Aktenzeichen: 5 Ni 76/12 (EP)**

In Sachen

HTC Germany GmbH

(Winter Brandl et. al.)

gegen

Apple Inc.

wegen Nichtigkeit EP 0 719 487 B1

nehmen wir in Erfüllung eines zwischen den Parteien geschlossenen Vergleichs die Klage zurück. Die Parteien werden keine Kostenanträge stellen.

Ronald Roth
Patentanwalt

1030923

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408341

Civil Appeals Office
Room E307
Royal Courts of Justice
Strand
London WC2A 2LL

L O N D O N
65 Fleet Street
London EC4Y 1HS
T+ 44 20 7936 4000
Direct T+ 44 20 7832 7100
F+ 44 20 7832 7001
Direct F+ 44 20 7108 7100
LDE No 23
E   christopher forsyth@
    freshfields.com
W   freshfields.com

By Hand and Email:
civilappeals.cmsa@hmcts.gsi.gov.uk

DOC ID   LON23044666/4+
OUR REF   CF/JJSW/MS/KW
YOUR REF   A3/2012/2044
CLIENT MATTER NO   PMF-507481

09 November 2012

Dear Sirs

**Apple Inc. v HTC Europe Co. Ltd. and HTC Corporation**
**Appeal Nos. 2012/2043 and 2012/2044 (the *Appeals*)**

By this letter the parties jointly notify the Court that they have agreed to dispose of part of the Appeal against the Order of The Hon. Mr Justice Floyd dated July 4, 2012 (the ***Order***). The parties have agreed that:

(i)   Apple Inc. will not pursue the elements of the Appeal relating to HTC's infringement of the EP 2 098 948 patent; and

(ii)  HTC Europe Co. Ltd. and HTC Corporation will not pursue the matters raised in its respondent's notice.

The parties have further agreed that, to the extent that costs have already been accrued in relation to these elements of the Appeal, the parties shall bear their own costs. There shall be no further order as to costs with respect to these elements of the Appeal.

Yours faithfully

[            ]                           [            ]
Solicitors for the Appellant             Solicitors for the Respondent

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                APLNDC-Y0000408342

# Application notice

For help in completing this form please read
the notes for guidance form N244 Notes.

| In the HIGH COURT OF JUSTICE CHANCERY DIVISION PATENTS COURT | |
|---|---|
| Claim nos. | HC12 C01465 |
| Warrant no. (if applicable) | |
| Claimant / Part 20 Defendant's name (including ref.) | HTC EUROPE CO. LTD (REF: HTC1.10/SA) |
| Defendant / Part 20 Claimant's name (including ref.) | APPLE INC (REF: CF/JJSW/MS/KW) |
| Date | 2012 |

1. What is your name or, if you are a solicitor, the name of your firm?

   Powell Gilbert LLP

2. Are you a   [✓] Claimant   [ ] Defendant   [✓] Solicitor

   [ ] Other (please specify)

   If you are a solicitor whom do you represent?   HTC Europe Co. Ltd

3. What order are you asking the court to make and why?

   An Order that there shall be no order as to costs

4. Have you attached a draft of the order you are applying for?   [✓] Yes   [ ] No

5. How do you want to have this application dealt with?   [ ] at a hearing   [✓] without a hearing

   [ ] at a telephone hearing

6. How long do you think the hearing will last?   [ ] Hours   [ ] Minutes

   Is this time estimate agreed by all parties?   [ ] Yes   [ ] No

7. Give details of any fixed trial date or period   See overleaf

8. What level of Judge does your hearing need?   High Court Judge

9. Who should be served with this application?   Defendant / Part 20 Claimant

**N244** Applica ion notice (05.08)   This form is reproduced from http://hmctsformfinder justice gov uk/HMCTS/FormFinder do and is subject to Crown copyright protection  Contains public sector information licensed under the Open Government Licence v1 0

11030937

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408343

10. What information will you be relying on, in support of your application?

☐ the attached witness statement

☐ the statement of case

☑ the evidence set out in the box below

If necessary, please continue on a separate sheet.

The parties have agreed terms on which these proceedings be settled and the parties have served and filed Notices of Discontinuance in relation to the claims and Part 20 claims.  The attached draft Order has been agreed and signed by the solicitors for the parties.

The trial of HC12 C01465 is listed to be heard in a trial window commencing on 19 November 2012 with an estimated length of 4 days.

_____

**Statement of Truth**

The applicant believes that the facts stated in this section are true.

Signed _____ Dated _____ 2012_____
      Applicant's Solicitor

Full name Alex Wilson _____

Name of applicant's solicitor's firm  Powell Gilbert LLP _____

Position or office held _Partner_____
(if signing on behalf of firm or company)

---

11. Signature and address details

Signed _____ Dated _____
      Applicant's Solicitor

Position or office held _Partner_____
(if signing on behalf of firm or company)

Applicant's address to which documents about this application should be sent

| Powell Gilbert LLP<br>85 Fleet Street<br>London<br><br>Postcode  E C 4 Y  1 A E | If applicable | |
|---|---|---|
| | Phone no. | 020 3040 8000 |
| | Fax no. | 020 3040 8001 |
| | DX no. | DX 358 London/Chancery Lane |
| | Ref no. | HTC1.10/SA |

| E-mail address | NOT FOR SERVICE OF DOCUMENTS |
|---|---|

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408344

# Application Notice (Form N244) – Notes for Guidance

Court Staff cannot give legal advice. If you need information or advice on a legal problem you can contact Community Legal Service Direct on 0845 345 4 345 or www.clsdirect.org.uk, or a Citizens Advice Bureau. Details of your local offices and contact numbers are available via their website www.citizensadvice.org.uk

## Paying the court fee
A court fee is payable depending on the type of application you are making. For example:

• To apply for judgment to be set aside
• To apply to vary a judgment or suspend enforcement
• To apply for a summons or order for a witness to attend
• To apply by consent, or without service of the application notice, for a judgment or order.

No fee is payable for an application by consent for an adjournment of a hearing if it is received by the court at least 14 days before the date of the hearing.

## What if I cannot afford the fee?
If you show that a payment of a court fee would involve undue hardship to you, you may be eligible for a fee concession.

For further information, or to apply for a fee concession, ask court staff for a copy of the combined booklet and form EX160A - Court fees - Do I have to pay them? This is also available from any county court office, or a copy of the leaflet can be downloaded from our website www.hmcourts-service.gov.uk

## Completing the form

### Question 3
Set out what order you are applying for and why; e.g. to adjourn the hearing because..., to set aside a judgment against me because... etc.

### Question 5
Most applications will require a hearing and you will be expected to attend. The court will allocate a hearing date and time for the application. Please indicate in a covering letter any dates that you are unavailable within the next six weeks.
The court will only deal with the application 'without a hearing' in the following circumstances.

• Where all the parties agree to the terms of the order being asked for;
• Where all the parties agree that the court should deal with the application without a hearing, or
• Where the court does not consider that a hearing would be appropriate.

Telephone hearings are only available in applications where at least one of the parties involved in the case is legally represented. Not all applications will be suitable for a telephone hearing and the court may refuse your request.

### Question 6
If you do not know how long the hearing will take do not guess but leave these boxes blank.

### Question 7
If your case has already been allocated a hearing date or trial period please insert details of those dates in the box.

### Question 8
If your case is being heard in the High Court or a District Registry please indicate whether it is to be dealt with by a Master, District Judge or Judge.

### Question 9
Please indicate in the box provided who you want the court to send a copy of the application to.

### Question 10
In this section please set out the information you want the court to take account of in support of the application you are making.
If you wish to rely on:

• **a witness statement,** tick the first box and attach the statement to the application notice. A witness statement form is available on request from the court office.
• **a statement of case,** tick the second box if you intend to rely on your particulars of claim or defence in support of your application.
• **written evidence** on this form, tick the third box and enter details in the space provided. You must also complete the statement of truth. Proceedings for contempt of court may be brought against a person who signs a statement of truth without an honest belief in its truth.

### Question 11
The application must be signed and include your current address and contact details. If you agree that the court and the other parties may communicate with you by Document Exchange, telephone, facsimile or email, complete the details

## Before returning your form to the court
Have you:
• signed the form on page 2,
• enclosed the correct fee or an application for fee concession,
• made sufficient copies of your application and supporting documentation. You will need to submit one copy for each party to be served and one copy for the court.

**N244 Notes** Application Notice (Form N244) – Notes for Guidance (07.08)  This form is reproduced from http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do and is subject to Crown copyright protection  Contains public sector information licensed under the Open Government Licence v1 0

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408345

HC12 C01465

<u>IN THE HIGH COURT OF JUSTICE</u>
<u>CHANCERY DIVISION</u>
<u>PATENTS COURT</u>

BEFORE MR  JUSTICE

DATED THIS    DAY OF                    2012

BETWEEN:

HTC EUROPE CO. LTD

Claimant / Part 20 Defendant

- and -

APPLE INC.

Defendant / Part 20 Claimant

_____

<em>Draft</em> CONSENT ORDER

_____

**UPON** the Claimant / Part 20 Defendant and Defendant / Part 20 Claimant reaching agreement in relation to the settlement of the Claim and Counterclaim brought by the Claimant and Part 20 Claimant herein.

**AND UPON** the Claimant / Part 20 Defendant and Defendant / Part 20 Claimant agreeing that the Claim and Counterclaim be discontinued and the Claimant and Part 20 Claimant each serving and filing Notices of Discontinuance in relation to the Claim and Counterclaim pursuant to the agreement to settle these proceedings, without prejudice to either party's right to bring further claims, counterclaims and/or defences in relation to the subject matter of these proceedings or otherwise

**AND UPON** the Claimant / Part 20 Defendant and Defendant / Part 20 Claimant by their respective Solicitors having agreed in writing to this Order and to there being no order as to costs

1030929

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408346

**IT IS BY CONSENT ORDERED THAT:**

1.      Permission is granted to discontinue on the terms set out herein; and

2.      There be no order for costs.

Dated                         2012

Signed ……………………….                Signed ………………………...

Powell Gilbert LLP                           Freshfields Bruckhaus Deringer LLP
on behalf of the Claimant / Part 20 Defendant        on behalf of the Defendant / Part 20 Claimant

1030929

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408347

HC12 C01465

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
PATENTS COURT

BEFORE MR  JUSTICE

DATED THIS    DAY OF                    2012

BETWEEN:

HTC EUROPE CO. LTD

Claimant / Part 20 Defendant

- and -

APPLE INC.

Defendant / Part 20 Claimant

_____

*Draft* CONSENT ORDER
_____

The Court has sent sealed copied of this Order to:


**Claimant's Solicitor**

Powell Gilbert LLP
85 Fleet Street
London
EC4Y 1AE

**Defendant's Solicitor**

Freshfields Bruckhaus Deringer LLP
65 Fleet Street
London
EC4Y 1HS


This Order was drafted/sealed by               (Tel:                    ) to whom all enquiries regarding this Order should be made between the hours 9.00 am - 4.30 pm. When corresponding with the Court please address forms or letters to The Court Manager, Chancery Chambers The Rolls Building, Royal Courts of Justice, 7 Rolls Buildings, Fetter Lane, London, EC4A 1 NL (DX. 160040 Strand 4) and quote the case number.

1030929

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408348

# Notice of discontinuance

<table>
<tr><td colspan="2"><b>In the HIGH COURT OF JUSTICE<br>CHANCERY DIVISION<br>PATENTS COURT</b></td></tr>
<tr><td><b>Claim No.</b></td><td>HC 12 C01465</td></tr>
<tr><td><b>Claimant<br>& Part 20<br>Defendant</b><br>(including ref.)</td><td>HTC EUROPE CO. LTD<br>(REF: HTC1.10/SA)</td></tr>
<tr><td><b>Defendant<br>& Part 20<br>Claimant</b><br>(including ref.)</td><td>APPLE INC.<br>(REF: CF/JJSW/MS/KW)</td></tr>
</table>

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

**To the court**

The Claimant & Part 20 Defendant

*(tick only one box)*

[✓]     discontinues all of this claim.

[ ]     discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the Defendant and Part 20 Claimant

(.................................................................... *(enter name of Judge)* granted permission for the Claimant to discontinue all of this claim by order dated .......................................................)

I certify that I have served a copy of this notice on every other party to the proceedings

| **Signed** | | **Position or office held** | Partner, Powell Gilbert LLP |
|---|---|---|---|
| | *(Claimant and Part 20 Defendant's solicitor)* | | *(if signing on behalf of firm or company)* |
| **Date** | | | |

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                   *Printed on behalf of The Court Service*

This form is reproduced from *http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection. Contains public sector information licensed under the Open Government Licence v1.01030854

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                              APLNDC-Y0000408349

# Notice of discontinuance

| | In the HIGH COURT OF JUSTICE CHANCERY DIVISION PATENTS COURT |
|---|---|

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

| **Claim No.** | HC 12 C01465 |
|---|---|
| **Claimant & Part 20 Defendant** (including ref.) | HTC EUROPE CO. LTD (REF: HTC1.10/SA) |
| **Defendant & Part 20 Claimant** (including ref.) | APPLE INC (REF: CF/JJSW/MS/KW) |

**To the court**

The Defendant & Part 20 Claimant

*(tick only one box)*

[✓]   discontinues all of this counterclaim.

[ ]   discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the Claimant and Part 20 Defendant

(.................................................................... *(enter name of Judge)* granted permission for the defendant to discontinue all of this counterclaim by order dated .......................................................)

I certify that I have served a copy of this notice on every other party to the proceedings

| **Signed** | | **Position or office held** | Partner, Freshfields Bruckhaus Deringer LLP |
|---|---|---|---|
| | *(Defendant and Part 20 Claimant's solicitor)* | | *(if signing on behalf of firm or company)* |
| **Date** | | | |

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                                          *Printed on behalf of The Court Service*
This form is reproduced from *http //hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection.  Contains public sector information licensed under the Open Government Licence v1.0

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                              APLNDC-Y0000408350

# Application notice

For help in completing this form please read
the notes for guidance form N244 Notes.

| In the HIGH COURT OF JUSTICE CHANCERY DIVISION PATENTS COURT | |
|---|---|
| Claim nos. | HC12 E02072 HC12 B02149 |
| Warrant no. (if applicable) | |
| Claimant / Part 20 Defendant's name (including ref.) | HTC EUROPE CO. LTD (REF: HTC1.12/AW) |
| Defendant / Part 20 Claimant's name (including ref.) | APPLE INC (REF: CF/JJSW/MS/KW) |
| Date | 2012 |

1. What is your name or, if you are a solicitor, the name of your firm?

   Powell Gilbert LLP

2. Are you a    [✓] Claimant    [ ] Defendant    [✓] Solicitor

   [ ] Other (please specify)

   If you are a solicitor whom do you represent?    HTC Europe Co. Ltd

3. What order are you asking the court to make and why?

   An Order that there shall be no order as to costs

4. Have you attached a draft of the order you are applying for?    [✓] Yes    [ ] No

5. How do you want to have this application dealt with?    [ ] at a hearing    [✓] without a hearing

   [ ] at a telephone hearing

6. How long do you think the hearing will last?    [ ] Hours    [ ] Minutes

   Is this time estimate agreed by all parties?    [ ] Yes    [ ] No

7. Give details of any fixed trial date or period    See overleaf

8. What level of Judge does your hearing need?    High Court Judge

9. Who should be served with this application?    Defendant / Part 20 Claimant

**N244** Applica ion notice (05.08)    This form is reproduced from http://hmctsformfinder justice gov uk/HMCTS/FormFinder do and is subject to Crown copyright protection  Contains public sector information licensed under the Open Government Licence v1 0

11030849

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY    APLNDC-Y0000408351

10. What information will you be relying on, in support of your application?

☐ the attached witness statement

☐ the statement of case

☑ the evidence set out in the box below

If necessary, please continue on a separate sheet.

The parties have agreed terms on which these proceedings be settled and the parties have served and filed Notices of Discontinuance in relation to the claims and Part 20 claims. The attached draft Order has been agreed and signed by the solicitors for the parties.

The trials of HC12 E02072 and HC12 B02149 were ordered to be heard together by the order of Mr Justice Floyd dated 6 July 2012. The trial of these actions was listed to be heard in a trial window commencing on 4 November 2013 with an estimated length of 20 days.

_____

**Statement of Truth**

The applicant believes that the facts stated in this section are true.

Signed _____ Dated _____ 2012 _____
     Applicant's Solicitor

Full name Alex Wilson_____

Name of applicant's solicitor's firm  Powell Gilbert LLP_____

Position or office held  Partner_____
(if signing on behalf of firm or company)

11. Signature and address details

Signed _____ Dated _____
     Applicant's Solicitor

Position or office held  Partner_____
(if signing on behalf of firm or company)

Applicant's address to which documents about this application should be sent

| Powell Gilbert LLP<br>85 Fleet Street<br>London | | If applicable | |
|---|---|---|---|
| | | Phone no. | 020 3040 8000 |
| | | Fax no. | 020 3040 8001 |
| | | DX no. | DX 358 London/Chancery Lane |
| Postcode  E C 4 Y  1 A E | | Ref no. | HTC1.12/AW |

| E-mail address | NOT FOR SERVICE OF DOCUMENTS |
|---|---|

2

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408352

# Application Notice (Form N244) – Notes for Guidance

Court Staff cannot give legal advice. If you need information or advice on a legal problem you can contact Community Legal Service Direct on 0845 345 4 345 or www.clsdirect.org.uk, or a Citizens Advice Bureau. Details of your local offices and contact numbers are available via their website www.citizensadvice.org.uk

### Paying the court fee
A court fee is payable depending on the type of application you are making. For example:

• To apply for judgment to be set aside

• To apply to vary a judgment or suspend enforcement

• To apply for a summons or order for a witness to attend

• To apply by consent, or without service of the application notice, for a judgment or order.

No fee is payable for an application by consent for an adjournment of a hearing if it is received by the court at least 14 days before the date of the hearing.

### What if I cannot afford the fee?
If you show that a payment of a court fee would involve undue hardship to you, you may be eligible for a fee concession.

For further information, or to apply for a fee concession, ask court staff for a copy of the combined booklet and form EX160A - Court fees - Do I have to pay them? This is also available from any county court office, or a copy of the leaflet can be downloaded from our website www.hmcourts-service.gov.uk

## Completing the form

### Question 3
Set out what order you are applying for and why; e.g. to adjourn the hearing because..., to set aside a judgment against me because... etc.

### Question 5
Most applications will require a hearing and you will be expected to attend. The court will allocate a hearing date and time for the application. Please indicate in a covering letter any dates that you are unavailable within the next six weeks.
The court will only deal with the application 'without a hearing' in the following circumstances.

• Where all the parties agree to the terms of the order being asked for;

• Where all the parties agree that the court should deal with the application without a hearing, or

• Where the court does not consider that a hearing would be appropriate.

Telephone hearings are only available in applications where at least one of the parties involved in the case is legally represented. Not all applications will be suitable for a telephone hearing and the court may refuse your request.

### Question 6
If you do not know how long the hearing will take do not guess but leave these boxes blank.

### Question 7
If your case has already been allocated a hearing date or trial period please insert details of those dates in the box.

### Question 8
If your case is being heard in the High Court or a District Registry please indicate whether it is to be dealt with by a Master, District Judge or Judge.

### Question 9
Please indicate in the box provided who you want the court to send a copy of the application to.

### Question 10
In this section please set out the information you want the court to take account of in support of the application you are making.
If you wish to rely on:

• **a witness statement,** tick the first box and attach the statement to the application notice. A witness statement form is available on request from the court office.

• **a statement of case,** tick the second box if you intend to rely on your particulars of claim or defence in support of your application.

• **written evidence** on this form, tick the third box and enter details in the space provided. You must also complete the statement of truth. Proceedings for contempt of court may be brought against a person who signs a statement of truth without an honest belief in its truth.

### Question 11
The application must be signed and include your current address and contact details. If you agree that the court and the other parties may communicate with you by Document Exchange, telephone, facsimile or email, complete the details

## Before returning your form to the court
Have you:
• signed the form on page 2,
• enclosed the correct fee or an application for fee concession,
• made sufficient copies of your application and supporting documentation. You will need to submit one copy for each party to be served and one copy for the court.

**N244 Notes** Application Notice (Form N244) – Notes for Guidance (07.08)  This form is reproduced from http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do and is subject to Crown copyright protection  Contains public sector information licensed under the Open Government Licence v1 0

3

<u>HC12 E02072</u>
<u>HC12 B02149</u>

<u>IN THE HIGH COURT OF JUSTICE</u>
<u>CHANCERY DIVISION</u>
<u>PATENTS COURT</u>

BEFORE MR  JUSTICE

DATED THIS    DAY OF                    2012

BETWEEN:

HTC EUROPE CO. LTD

<u>Claimant / Part 20 Defendant</u>

- and -

APPLE INC.

<u>Defendant / Part 20 Claimant</u>

_____

*Draft* CONSENT ORDER

_____

**UPON** the Claimant / Part 20 Defendant and Defendant / Part 20 Claimant reaching agreement in relation to the settlement of the Claims and Counterclaims brought by the Claimant and Part 20 Claimant herein.

**AND UPON** the Claimant / Part 20 Defendant and Defendant / Part 20 Claimant agreeing that the Claims and Counterclaims be discontinued and the Claimant and Part 20 Claimant each serving and filing Notices of Discontinuance in relation to the Claims and Counterclaims pursuant to the agreement to settle these proceedings, without prejudice to either party's right to bring further claims, counterclaims and/or defences in relation to the subject matter of these proceedings or otherwise

**AND UPON** the Claimant / Part 20 Defendant and Defendant / Part 20 Claimant by their respective Solicitors having agreed in writing to this Order and to there being no order as to costs

1030850

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408354

**IT IS BY CONSENT ORDERED THAT:**

1.      Permission is granted to discontinue on the terms set out herein; and

2.      There be no order for costs.

Dated                            2012

Signed ……………………….                    Signed ………………………...

Powell Gilbert LLP                             Freshfields Bruckhaus Deringer LLP
on behalf of the Claimant / Part 20 Defendant    on behalf of the Defendant / Part 20 Claimant

1030850

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY          APLNDC-Y0000408355

HC12 E02072
HC12 B02149

IN THE HIGH COURT OF JUSTICE
CHANCERY DIVISION
PATENTS COURT

BEFORE MR  JUSTICE

DATED THIS     DAY OF                    2012

BETWEEN:

HTC EUROPE CO. LTD

Claimant / Part 20 Defendant

- and -

APPLE INC.

Defendant / Part 20 Claimant

_____

*Draft* CONSENT ORDER
_____

The Court has sent sealed copied of this Order to:


**<u>Claimant's Solicitor</u>**

Powell Gilbert LLP
85 Fleet Street
London
EC4Y 1AE

**<u>Defendant's Solicitor</u>**

Freshfields Bruckhaus Deringer LLP
65 Fleet Street
London
EC4Y 1HS


This Order was drafted/sealed by              (Tel:                       ) to whom all enquiries regarding this Order should be made between the hours 9.00 am - 4.30 pm. When corresponding with the Court please address forms or letters to The Court Manager, Chancery Chambers The Rolls Building, Royal Courts of Justice, 7 Rolls Buildings, Fetter Lane, London, EC4A 1 NL (DX. 160040 Strand 4) and quote the case number.

1030850

# Notice of discontinuance

| In the HIGH COURT OF JUSTICE<br>CHANCERY DIVISION<br>PATENTS COURT | |
|---|---|
| **Claim Nos.** | HC12 B02149<br>HC12 E02072 |
| **Claimant<br>& Part 20<br>Defendant**<br><small>(including ref.)</small> | HTC EUROPE CO. LTD<br>(REF: HTC1.12/AW) |
| **Defendant<br>& Part 20<br>Claimant**<br><small>(including ref.)</small> | APPLE INC.<br>(REF: CF/JJSW/MS/KW) |

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

**To the court**

The Claimant & Part 20 Defendant

*(tick only one box)*

[✓]    discontinues all of these claims.

[ ]    discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the Defendant and Part 20 Claimant

(.................................................................... *(enter name of Judge)* granted permission for the Claimant to

discontinue all of these claims by order dated .......................................................)

I certify that I have served a copy of this notice on every other party to the proceedings

| **Signed** | | **Position or office held** | Partner, Powell Gilbert LLP |
|---|---|---|---|
| | (Claimant and Part 20 Defendant's solicitor) | | (if signing on behalf of firm or company) |
| **Date** | | | |

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                                                                                 *Printed on behalf of The Court Service*
This form is reproduced from *http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection.  Contains public sector information licensed under the Open Government Licence v1.01030856

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                                          APLNDC-Y0000408357

# Notice of discontinuance

| In the HIGH COURT OF JUSTICE CHANCERY DIVISION PATENTS COURT | |
|---|---|
| **Claim No.** | HC12 B02149 HC12 E02072 |
| **Claimant & Part 20 Defendant** (including ref.) | HTC EUROPE CO. LTD (REF: HTC1.12/AW) |
| **Defendant & Part 20 Claimant** (including ref.) | APPLE INC (REF: CF/JJSW/MS/KW) |

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

**To the court**

The Defendant & Part 20 Claimant

*(tick only one box)*

[✓]    discontinues all of these counterclaims.

[ ]    discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the Claimant and Part 20 Defendant

(.................................................................. *(enter name of Judge)* granted permission for the defendant to discontinue all of this counterclaim by order dated .......................................................)

I certify that I have served a copy of this notice on every other party to the proceedings

| **Signed** | | **Position or office held** | Partner, Freshfields Bruckhaus Deringer LLP |
|---|---|---|---|
| | *(Defendant and Part 20 Claimant's solicitor)* | | *(if signing on behalf of firm or company)* |
| **Date** | | | |

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                                   *Printed on behalf of The Court Service*
This form is reproduced from *http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection. Contains public sector information licensed under the Open Government Licence v1.0

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                  APLNDC-Y0000408358

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

2012-1127

S3 GRAPHICS CO., LTD. and S3 GRAPHICS, INC.,

Appellants,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee,

and

APPLE INC.,

Intervenor.

On appeal from the United States International Trade Commission in Investigation No. 337-TA-724

**UNOPPOSED MOTION TO DISMISS**

S3 Graphics Co., Ltd., appellant in this appeal, moves to dismiss this appeal pursuant to Fed. R. App. P. 42(b), with each party to bear its own costs on appeal. Both appellee International Trade Commission and intervenor Apple Inc. have consented to this motion.

-1-

Dated:                              Respectfully submitted,

_____

Donald R. Dunner
Allen M. Sokal
Molly R. Silfen
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001
(202) 408-4000

Louis L. Campbell
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA  94304-1203
(650) 849-6600

*Attorneys for S3 Graphic Co. Ltd. and S3
Graphics, Inc.*

-2-

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408360

1    CHRIS R. OTTENWELLER (STATE BAR NO. 73649)
     cottenweller@orrick.com
2    BAS DE BLANK (STATE BAR NO. 191487)
     basdeblank@orrick.com
3    DENISE M. MINGRONE (STATE BAR NO. 135224)
     dmingrone@orrick.com
4    JESSE CHENG (STATE BAR NO. 259909)
     jcheng@orrick.com
5    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
6    Menlo Park, California 94025
     Telephone: +1-650-614-7400
7    Facsimile: +1-650-614-7401

8    Attorneys for Plaintiff
     APPLE INC.
9

10

11                   UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15   APPLE INC., a California corporation,          CASE NO.  CV-11-00210 EJD

16                                                  **STIPULATION AND ORDER FOR
                    Plaintiff,                      DISMISSAL OF ENTIRE ACTION
17                                                  WITHOUT PREJUDICE**
             v.
18
     S3 GRAPHICS CO., LTD., a Cayman Islands
19   corporation, and S3 GRAPHICS, INC., a
     Delaware corporation,
20
                    Defendants.
21

22

23          IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff and

24   Counterclaim Defendant Apple Inc. ("Apple") and Defendants and Counterclaim Plaintiffs S3

25   Graphics Co., Ltd. and S3 Graphics, Inc. (collectively, "S3G"), pursuant to Federal Rule of Civil

26   Procedure 41(a)(1)(A)(ii), that each and every claim and counterclaim between Apple and S3G in

27   the above captioned matter are hereby dismissed WITHOUT PREJUDICE, and that each party

28
                                            -1-
                   STIPULATION AND ORDER FOR DISMISSAL OF ENTIRE ACTION
                              USDC CASE NO. CV-11-00210 EJD

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408361

1    shall bear its own costs, expenses and attorneys' fees.

2        IT IS SO STIPULATED.

3

4    | Dated:  November __, 2012 | Dated:  November __, 2012 |
     |---|---|
5    |  |  |
6    | ORRICK, HERRINGTON & SUTCLIFFE LLP | FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P. |
7    |  |  |
8    | By_____ <br>         Bas de Blank | By_____ <br>         Scott R. Mosko |
9    |  |  |
10   | Attorneys for Plaintiff APPLE INC. | Attorneys for Defendants S3 GRAPHICS CO., LTD., and S3 GRAPHICS, INC. |

11

12

13                                    **ORDER**

14        IT IS HEREBY ORDERED THAT this action is hereby dismissed without prejudice in

15   its entirety.

16        PURSUANT TO STIPULATION, IT IS SO ORDERED.

17

18

19   DATED:    _____          _____
                                              Hon. Edward J. Davila
20                                            United States District Court Judge

21

22

23

24

25

26

27

28
                                        -2-
                   STIPULATION AND ORDER FOR DISMISSAL OF ENTIRE ACTION
                                  USDC CASE NO. CV-11-00210 EJD

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408362

# UNITED STATES INTERNATIONAL TRADE COMMISSION
# WASHINGTON, D.C.

Before the Honorable E. James Gildea
Administrative Law Judge

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-813 |
| CERTAIN ELECTRONIC DEVICES WITH GRAPHICS DATA PROCESSING SYSTEMS, COMPONENTS THEREOF, AND ASSOCIATED SOFTWARE | |

## JOINT MOTION TO TERMINATE THE INVESTIGATION WITHOUT PREJUDICE

Pursuant to 19 C.F.R. § 210.21(b), Complainants S3 Graphics Co., Ltd. and S3 Graphics, Inc. (collectively, "S3G") and Respondent Apple Inc. ("Apple") jointly move to terminate Investigation No. 337-TA-813 in its entirety without prejudice on the basis of a settlement agreement between S3G and Apple (collectively "the Private Parties").

As set forth in the accompanying memorandum in support, S3G and Apple have entered into a PATENT LICENSE AND SETTLEMENT AGREEMENT that includes an agreement to terminate this Investigation in its entirety (the "Agreement"). The Agreement contains Confidential Business Information within the meaning of 19 C.F.R. § 201.6. Accordingly, pursuant to § 210.21(b)(1), a non-confidential version of the Agreement is attached as Exhibit A. There are no other agreements, written or oral, express or implied between S3G and Apple concerning the subject matter of this Investigation.

Because the public interest and Commission precedent support the termination of a pending investigation based on settlement, the Private Parties respectfully request that the Administrative Law Judge issue an initial determination terminating the above-captioned

WEST\239613051.1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY   APLNDC-Y0000408363

Investigation without prejudice in accordance with the provisions of 19 U.S.C. § 1337(c) and 19 C.F.R. § 210.21(b).

The Private Parties certify that they conferred with counsel for the Office of Unfair Import Investigations, and they have indicated that they do not oppose this motion

2

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                APLNDC-Y0000408364

Dated:  November __, 2012

| | |
|---|---|
| Respectfully submitted,<br><br><br>_____<br>Thomas L. Jarvis<br>Steven M. Anzalone<br>John R. Alison<br>Paul C. Goulet<br>**FINNEGAN, HENDERSON, FARABOW,**<br>**GARRETT & DUNNER, LLP**<br>901 New York Avenue, N.W.<br>Washington, D.C.  20001-4413<br>Telephone: (202) 408-4000<br>Facsimile: (202) 408-4400<br><br>*Counsel for Complainants*<br>*S3 Graphics Co., Ltd. and S3 Graphics, Inc.* | Respectfully submitted,<br><br><br>_____<br>Tom M. Schaumberg<br>Jonathan J. Engler<br>Adduci, Mastriani & Schaumberg, L.L.P.<br>1133 Connecticut Avenue, NW, Twelfth Floor<br>Washington, DC 20036<br>Telephone:  (202) 467-6300<br>Facsimile:   (202) 466-2006<br><br>George Riley<br>O'Melveny & Myers LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 984-8700<br>Facsimile:  (415) 984-8701<br><br>John C. Kappos<br>O'Melveny & Myers LLP<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Telephone:  (949) 823-6900<br>Facsimile:  (949) 823-6994<br><br>Ryan K. Yagura<br>Nicholas J. Whilt<br>Neil L. Yang<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Telephone:  (213) 430-6000<br>Facsimile:   (213) 430-6407<br><br>*Counsel for Respondent Apple Inc.* |

3

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408365

CONFIDENTIAL BUSINESS INFORMATION
Subject to Protective Order

**UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.**

Before the Honorable E. James Gildea
Administrative Law Judge

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-813 |
| CERTAIN ELECTRONIC DEVICES WITH GRAPHICS DATA PROCESSING SYSTEMS, COMPONENTS THEREOF, AND ASSOCIATED SOFTWARE | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
TO TERMINATE THE INVESTIGATION**

On November __, 2012, Complainants S3 Graphics Co., Ltd. and S3 Graphics, Inc. (collectively, "S3G") and Respondent Apple Inc. ("Apple") entered into aPATENT LICENSE AND SETTLEMENT AGREEMENT ("Agreement") which is fully effective and has been executed by authorized representatives of S3G and Apple.  The Agreement includes an agreement to terminate this Investigation in its entirety.  Accordingly, S3G and Apple (collectively "the Private Parties") respectfully request that the Administrative Law Judge issue an initial determination terminating this Investigation.

Commission Rule 210.21(b)(l) provides that "[a]n investigation before the Commission may be terminated as to one or more respondents pursuant to section 337(c) of the Tariff Act of 1930 on the basis of a licensing or other settlement agreement."  Commission Rule 210.21(b)(1). A confidential copy of the Agreement between S3G and Apple is attached as Exhibit A.

The public interest and Commission policy generally favor settlement agreements as they preserve the Commission's and the private parties' time and resources.  *See, e.g., Certain Microcomputer Memory Controllers, Components Thereof and Products Containing the Same*,

1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                APLNDC-Y0000408366

Inv. No. 337-TA-331, Order No. 28: Initial Determination, 1992 WL 811833, at 2 (Nov. 16, 1992) ("Settlement of litigation usually is considered to be in the public interest."); *Certain Safety Eyewear and Components Thereof*, Inv. No. 337-TA-433, Order No. 37, at 2 (Nov. 3, 2000); *Certain Integrated Circuit Chipsets and Products Containing Same*, Inv. No. 337-TA-428, Order No. 16 (Pub. Version), at 5 (Aug. 22, 2000); *Certain Synchronous Dynamic Random Access Memory Devices, Microprocessors, and Products Containing Same*, Inv. No. 337-TA-431, Order No. 11 (Pub. Version), at 2 (July 13,2000).  Termination based upon a licensing or other settlement agreement is routinely granted.  *Id.*  Termination of this Investigation on the basis of the attached settlement agreement poses no threat to the public health and welfare, competitive conditions in the United States economy, the production of competitive articles in the United States, or United States consumers.

Accordingly, the Private Parties respectfully request that the Administrative Law Judge grant their joint motion and issue an initial determination terminating this Investigation in its entirety.

WEST\239613051.1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408367

Dated:  November __, 2012

| Respectfully submitted,<br><br><br>_____<br>Thomas L. Jarvis<br>Steven M. Anzalone<br>John R. Alison<br>Paul C. Goulet<br>**FINNEGAN, HENDERSON, FARABOW,**<br>**GARRETT & DUNNER, LLP**<br>901 New York Avenue, N.W.<br>Washington, D.C.  20001-4413<br>Telephone: (202) 408-4000<br>Facsimile: (202) 408-4400<br><br>*Counsel for Complainants*<br>*S3 Graphics Co., Ltd. and S3 Graphics, Inc.* | Respectfully submitted,<br><br><br>_____<br>Tom M. Schaumberg<br>Jonathan J. Engler<br>Adduci, Mastriani & Schaumberg, L.L.P.<br>1133 Connecticut Avenue, NW, Twelfth Floor<br>Washington, DC 20036<br>Telephone:  (202) 467-6300<br>Facsimile:   (202) 466-2006<br><br>George Riley<br>O'Melveny & Myers LLP<br>Two Embarcadero Center, 28th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 984-8700<br>Facsimile:  (415) 984-8701<br><br>John C. Kappos<br>O'Melveny & Myers LLP<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Telephone:  (949) 823-6900<br>Facsimile:  (949) 823-6994<br><br>Ryan K. Yagura<br>Nicholas J. Whilt<br>Neil L. Yang<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Telephone:  (213) 430-6000<br>Facsimile:   (213) 430-6407<br><br>*Counsel for Respondent Apple Inc.* |

WEST\239613051.1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY  APLNDC-Y0000408368

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

|  |  |
|---|---|
| S3 GRAPHICS Co., Ltd., | |
|    Plaintiff, | |
|      v. | C.A. No. 11-862-RGA |
| APPLE INC., | |
|    Defendant. | |

**PLAINTIFF S3 GRAPHICS CO., LTD.'S NOTICE OF DISMISSAL WITHOUT
PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1)(A)(i)**

      Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), plaintiff S3 Graphics Co., Ltd.

("S3G") files this notice of dismissal of the above-captioned action <u>without</u> <u>prejudice</u>.

      Prior to S3G's filing of this notice of dismissal, defendant Apple, Inc. ("Apple") did not

serve either an answer or a motion for summary judgment in the above-captioned action.

Rather, Apple elected to stay this action under 28 U.S.C. § 1659.  Under these circumstances, S3G

is entitled under Rule 41(a)(1)(A)(1) to dismiss the above-captioned action, without prejudice,

upon notice and without a court order.  *RFR Industries Inc. v. Century Steps Inc.*, 477 F.3d 1348

(Fed. Cir. 2007) (dismissing upon notice:  "So long as a plaintiff has not been served with

an answer or a motion for summary judgment, the plaintiff need do no more than file a notice of

dismissal to dismiss the case.").

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408369

Dated:  November __, 2012

**YOUNG CONAWAY STARGATT & TAYLO LLP**

_____
Karen L. Pascale (#2903)
Rodney Square
1000 North King Street
Wilmington, DE 19899-0391
Telephone: (302) 571-6600

_Attorneys for Plaintiff S3 Graphics Co., Ltd._

- 2 -

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408370

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 42/12**

In Sachen

S3 Graphics Co. Ltd.

(Preu Bohlig & Partner)

g e g e n

1. Apple Inc.
2. Apple Sales International
3. Apple Retail Germany GmbH
4. iTunes S.A.R.L.
5. Apple GmbH

(Freshfields Bruckhaus Deringer LLP)

wegen Patentverletzung EP 1 034 505

nimmt die Klägerin die Klage in Erfüllung eines zwischen
den Parteien geschlossenen Vergleichs zurück. Die Par-
teien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030864

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408371

[Briefkopf Preu Bohlig & Partner]

Landgericht Mannheim
2. Zivilkammer
68149 Mannheim

- vorab per Telefax -

**Aktenzeichen: 2 O 140/12**

In Sachen

S3 Graphics Co. Ltd.

(Preu Bohlig & Partner)

g e g e n

1. Apple Inc.
2. Apple Sales International
3. Apple Retail Germany GmbH
4. iTunes S.A.R.L.
5. Apple GmbH

(Freshfields Bruckhaus Deringer LLP)

wegen Patentverletzung EP 1 066 600

nimmt die Klägerin die Klage in Erfüllung eines zwischen den Parteien geschlossenen Vergleichs zurück. Die Parteien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030871

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

[Briefkopf Preu Bohlig & Partner]

Landgericht Düsseldorf
4b. Zivilkammer
Werdener Straße 1
40227 Düsseldorf

- vorab per Telefax -

**Aktenzeichen: 4b O 35/12**

In Sachen

S3 Graphics Co. Ltd.

(Preu Bohlig & Partner)

**g e g e n**

ComLine GmbH

(Freshfields Bruckhaus Deringer LLP)

wegen Patentverletzung EP 1 034 505

nimmt die Klägerin die Klage in Erfüllung eines zwischen
den Parteien geschlossenen Vergleichs zurück. Die Par-
teien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030931

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408373

[Briefkopf Preu Bohlig & Partner]

Landgericht Düsseldorf
4b. Zivilkammer
Werdener Straße 1
40227 Düsseldorf

- vorab per Telefax -

**Aktenzeichen: 4b O 65/12**

In Sachen

S3 Graphics Co. Ltd.

                                     (Preu Bohlig & Partner)

**g e g e n**

ComLine GmbH

                              (Freshfields Bruckhaus Deringer LLP)

wegen Patentverletzung EP 1 066 600

      nimmt die Klägerin die Klage in Erfüllung eines zwischen
den Parteien geschlossenen Vergleichs zurück. Die Par-
teien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030934

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

APLNDC-Y0000408374

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
7. Zivilkammer
Lenbachplatz 7
80316 München

- vorab per Telefax -

**Aktenzeichen: 7 O 5342/12**

In Sachen

S3 Graphics Co. Ltd.

(Preu Bohlig & Partner)

g e g e n

GRAVIS Computervertriebsgesellschaft mbH

(Freshfields Bruckhaus Deringer LLP)

wegen Patentverletzung EP 1 034 505

nimmt die Klägerin die Klage in Erfüllung eines zwischen
den Parteien geschlossenen Vergleichs zurück. Die Par-
teien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030891
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408375

[Briefkopf Preu Bohlig & Partner]

Landgericht München I
7. Zivilkammer
Lenbachplatz 7
80316 München

- vorab per Telefax -

**Aktenzeichen: 7 O 7602/12**

In Sachen

S3 Graphics Co. Ltd.

(Preu Bohlig & Partner)

g e g e n

GRAVIS Computervertriebsgesellschaft mbH

(Freshfields Bruckhaus Deringer LLP)

wegen Patentverletzung EP 1 066 600

nimmt die Klägerin die Klage in Erfüllung eines zwischen
den Parteien geschlossenen Vergleichs zurück. Die Par-
teien werden keine Kostenanträge stellen.

Dr. Peter Kather
Rechtsanwalt

1030893
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408376

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In Re *Inter Partes* Reexamination of: | : | |
| | : | Control No. 95/000,584 |
| U.S. Patent No. 7,043,087 | : | |
| | : | Confirmation No.  2651 |
| Filed:  November 5, 2010 | : | |
| | : | Art Unit: 3992 |
| | : | |
| For:  Image Processing System | : | Examiner: Tran, Henry N. |
| | : | |

**THIRD PARTY REQUESTOR'S STATEMENT OF NON-PARTICIPATION IN**
***INTER PARTES* REEXAMINATION**

Mail Stop *Inter Partes* Reexamination
ATTN:  Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Third Party Requester hereby provides notice that it will no longer participate in the

above-captioned *Inter Partes* Reexamination.

Respectfully submitted,

_____
Novak Druce + Quigg LLP
Donald J. Quigg
Reg. No. 16,030
Tracy W. Druce
Reg. No. 35,493
James P. Murphy
Reg No. 55,474

NOVAK DRUCE + QUIGG LLP
1000 Louisiana Street
53rd Floor
Houston, Texas 77002
Ph:     713-571-3400
Fax:   713-456-2836

1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In Re *Inter Partes* Reexamination of: | : | |
| | : | Control No. 95/000,585 |
| U.S. Patent No. 6,775,417 | : | |
| | : | Confirmation No. 7356 |
| Filed: November 5, 2010 | : | |
| | : | Art Unit: 3992 |
| | : | |
| For: Fixed-rate block-based image compression | : | Examiner: Tran, Henry N. |
| with inferred pixel values | : | |
| | : | |

**THIRD PARTY REQUESTOR'S STATEMENT OF NON-PARTICIPATION IN**
***INTER PARTES* REEXAMINATION**

Mail Stop *Inter Partes* Reexamination
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

      Third Party Requester hereby provides notice that it will no longer participate in the

above-captioned *Inter Partes* Reexamination.

Respectfully submitted,

_____
Novak Druce + Quigg LLP
Donald J. Quigg
Reg. No. 16,030
Tracy W. Druce
Reg. No. 35,493
James P. Murphy
Reg No. 55,474

NOVAK DRUCE + QUIGG LLP
1000 Louisiana Street
53rd Floor
Houston, Texas 77002
Ph: 713-571-3400
Fax: 713-456-2836

1

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY      APLNDC-Y0000408378

MÜLLER HOFFMANN & PARTNER

European Patent Office
Erhardtstr. 27
80298 München

DATE

Application Number:   08 713 567.9
                      EP 2 126 678 B1

Our Ref: 63696

On behalf of the opponent HTC Europe Co. Ltd., No. 23, Wellington Street,
Slough, Berkshire, SL11YP, United Kingdom, we herewith withdraw the
opposition filed against European patent EP 2 126 678 B1.

Representative

1030603

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408379

WAGNER & GEYER

European Patent Office
Erhardtstr. 27
80298 München

DATE

Application Number:   09154313.2 – 2224
                     EP 2 098 948 B1

Our Ref: HTC-30665

On behalf of the opponent HTC Corporation, No. 23, Xinghua Road,
Taoyuan City, Taoyuan County 330, Taiwan (Republic of China) we herewith
withdraw the intervention filed in the opposition against European patent EP
2 098 948 B1.

Representative

1030574

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                    APLNDC-Y0000408380

<u>Exhibit G</u>
Excluded Patents

APPLE: None

HTC: U.S. Patent Nos. 6,708,214, 6,473,006, 7,289,772, 6,868,283, 7,020,849, 5,418,524, 5,630,152, 5,630,159, and 5,302,947.

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be signed by their duly authorized representatives as of the date first written above.

**HTC AMERICA, INC.**

Signed by:

Name: _____

_____

Title: _____

**HTC CORPORATION**

Signed by: _____

Name: _____

_____

Title: _____

**S3 GRAPHICS CO., LTD.**

Signed by: _____

Name: _____

_____

Title: _____

**APPLE INC.**

Signed by: _____

Name: Tim Cook _____

_____

Title: Chief Executive Officer _____

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be signed by their duly authorized representatives as of the date first written above.

**HTC AMERICA, INC.**

Signed by:

Name: _____ Peter Chou _____

_____

Title: _____ Director _____

**HTC CORPORATION**

Signed by:

Name: _____ Peter Chou _____

_____

Title: _____ Chief Executive Officer _____

**S3 GRAPHICS CO., LTD.**

Signed by:

Name: _____ Grace Lei _____

_____

Title: _____ Director _____

**APPLE INC.**

Signed by: _____

Name: _____

_____

Title: _____

