# Exhibit 9
# (Submitted Under Seal)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a<br>Korean corporation; SAMSUNG<br>ELECTRONICS AMERICA, INC., a New<br>York corporation; SAMSUNG<br>TELECOMMUNICATIONS AMERICA,<br>LLC, a Delaware limited liability company,<br><br>        Defendants. | CASE NO. 12-cv-00630-LHK |

**EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

236.    I understand that on April 10, 2013, the Court issued an order ("Claim Construction Order") construing various claim terms in the asserted patents in this litigation, but the Court did not construe any terms or phrases from the '172 patent.

237.    I have applied to my analysis my understanding of the claim terms' ordinary and accustomed meaning in the art, except where otherwise indicated. In addition, I have considered and applied to my analysis the apparent application of claim terms by Apple in this litigation.

238.    I reserve the right to amend my opinions if and when Apple provides further clarification on what it understands to be the plain and ordinary meaning of the claim terms.

**A.    Plain and Ordinary Meaning of Terms Not Construed**

**1.    "Portable Electronic Device With A Touch Screen And A Keyboard"**

239.    The term "portable electronic device with a keyboard and a touch screen display" appears in the preamble of asserted claim 18. To the extent that "portable electronic device with a keyboard and a touch screen display" requires interpretation, I have applied the plain and ordinary meaning of the term. The plain and ordinary meaning of this term requires that the keyboard and touch screen display both be separate components of the portable electronic device. I understand that the terms "keyboard" and "touch screen display" in this term form the antecedent basis for the use of those terms in later claim limitations, which recite "the keyboard" and "the touch screen display". *See, e.g.,* '172 patent at 12:49 – 13:4. It is my understanding that the use of these terms as antecedent basis renders the preamble limiting.

240.    Apple appears to be taking the position that "portable electronic device with a keyboard and a touch screen display" means a virtual keyboard that is displayed on a touch screen display. *See, e.g.,* Apple's May 20, 2013 claim chart entitled Infringement by Samsung Galaxy S II of U.S. Patent No. 8,074,172 at 2 ("The Samsung Galaxy S II provides a graphical user interface and a virtual keyboard on a touch screen"). Apple's apparent interpretation of "portable electronic device with a keyboard and a touch screen display" is inconsistent with the plain and ordinary meaning in the art.

241.    Claim 18 describes a "graphical user interface" distinct from a "portable electronic device with a keyboard". A virtual keyboard is part of any device's "graphical user interface", and

-80-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

therefore the plain and ordinary meaning of the preamble excludes devices where the keyboard is virtual. A person of ordinary skill in the art would recognize that a portable electronic device "with a keyboard" possesses that keyboard independently of software running on the device, and would continue to include a keyboard even if all software were removed from the device. That is not the case with a virtual keyboard, which requires instructions for its display and operation (i.e., software code).

242.    Nothing in the '172 patent suggests that it applies anything other than the plain and ordinary meaning of "portable electronic device with a keyboard and a touch screen display." Every independent claim that explicitly recites the use of a virtual keyboard does so not as a component of the portable electronic device itself, but as a component of computer readable memory or a computer readable storage medium. *See, e.g.,* '172 patent at 15:39-50; 16:3-15. In each of these cases, the claims recite the use of instructions which perform the claimed limitations involving the keyboard. *See, e.g., id.* at 15:39-50; 16:3-15. The '172 patent describes certain keyboards that are comprised of instructions:

> Also included in the memory 102 are **a keyboard module (or a set of instructions) 131**, a word recommendations module (or a set of instructions) 133, and a dictionary 136. The keyboard module 131 operates one or more soft keyboards.
>
> * * *
>
> Memory 102 may include additional modules and/or sub-modules, or fewer modules and/or sub-modules. Memory 102, therefore, may include a subset or a superset of the above identified modules and/or sub-modules. Various functions of the device 100 may be implemented in hardware and/or software, including in one or more signal processing and/or application specific integrated circuits.

*Id.* at 6:50 – 7:5 (emphasis added).

243.    Further, the ordering of "portable electronic device with a keyboard and a touch screen display", in which keyboard precedes touch screen display, supports the plain and ordinary meaning of this claim term. Claim 21, the only other independent claim of the '172 patent that recites both a keyboard and a display in its preamble, flips these elements.   *See, e.g. id.* at 13:58-62 ("portable electronic device with a display and a keyboard"). While claim 21 suggests that a

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

1  keyboard might be part of a display, the plain and ordinary meaning of "portable electronic device

2  with a keyboard and a touch screen display" in claim 18 suggests the opposite: that the keyboard is

3  separate from the touch screen display and is part of the portable electronic device whether the

4  device includes a touch screen display or not.

5  **VIII.   ANTICIPATION OF CLAIM 18 OF THE '172 PATENT**

6      244.   In the following sections, I provide a narrative of my anticipation opinions for

7  Robinson. My opinions are set forth as a narrative below and are further supported by the claim

8  chart attached to this report as Exhibit 1.[1]

9      **A.   U.S. Patent No. 7,880,730 ("Robinson")**

10     245.   U.S. Patent No. 7,880,730 ("Robinson") is entitled "Keyboard System With

11 Automatic Correction." SAMNDCA630-00942638. The named inventors are B. Alex Robinson,

12 Michael R. Longe, David Jon Kay and Gordon Robert Waddell. The patent is assigned to Tegic

13 Communications, Inc. Robinson was filed September 11, 2007, and issued February 1, 2011.

14 Robinson is a continuation of application No. 11/090,464, filed on March 25, 2005, which issued

15 as U.S. Patent No. 7,277,088, which is a division of application No. 10/775,483, filed on February

16 9, 2004, which issued as U.S. Patent No. 7,088,345, which is itself a continuation of application

17 No. 09/580,319, filed on May 26, 2000, which issued as U.S. Patent No. 6,801,190. Based on the

18 filing dates of the '088, '345 and '190 patents to which the Robinson claims priority, all of which

19 pre-date the filing date and alleged conception date of the '172 patent, I understand that the

20 Robinson is prior art to the '172 patent's asserted claim.

21     246.   The Robinson specification describes "a reduced auto-correcting keyboard system

22 100 formed in accordance with the present invention is depicted incorporated in a palmtop

23 portable computer 102. Portable computer 102 contains a reduced keyboard 105 implemented on a

24 touch screen display 103, which is used to generate text to be output to text display region 104."

25 _____

26     [1]   The invalidity claim charts attached hereto as Exhibit 1-6 set forth excerpts from the prior

27 art that renders obvious the asserted claim[s]. The claim charts generally provide detailed excerpts
   from the art itself, and the claim charts are not intended to limit or supplant in any way the
   analysis contained in this report.  Rather, the charts and report together comprise my opinion.

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

sequence; and the selection component then presents those candidate objects to the user and enables selection. *Id.* Robinson also discloses that the object evaluation component also constructs a representation of what the user actually typed called an exact typing object which is composed of the closest character location on the input device for each input in an input sequence. *Id.* at 36:1-7. This exact typing object is displayed in the text display area by the selection component. *Id.* at 36:8-10.

261.    It is my understanding that a patent must contain a written description of the claimed invention. The written description conveys to those skilled in the art that, as of the filing date sought, that the applicant was in possession of the invention claimed. It is my understanding that this written description requirement prevents a patent applicant from claiming subject matter that was not adequately described in the specification. It is further my understanding that the claims are part of a patent's disclosure. As described above, the Robinson reference is prior art to the '172 patent because it claims priority to the filing dates of the '088 patent, the '345 patent and the '190 patent. Accordingly, the claims of the Robinson reference support the understanding of a person of ordinary skill in the art as to the scope and content of the Robinson reference's specification.

### 1.    Claim 18

> *A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising:*[2]

262.    I understand that Apple does not dispute that Robinson discloses this limitation of claim 18. *See* Apple's Supplemental Objections and Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41) at 179.

---

[2]    There is nothing new or non-obvious in this limitation and a person of ordinary skill in the art would have been aware of the use of keyboards and touch screens in a portable electronic device. More particularly, a person having ordinary skill in the art at the time of the alleged invention would have been aware of portable electronic devices, keyboards (both virtual and physical) and touch screen displays. Thus, in addition to being anticipated, this limitation would also have been obvious to a person of ordinary skill in the art.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

263.    I understand that this element of claim 18 is called the "preamble." I also understand that the preamble of a patent claim may or may not be limiting depending on certain legal principles as well as the court's construction of the claim. I understand that the court determines whether or not the preamble is limiting. In any event, as set forth below, it is my opinion that Robinson discloses the language set forth in the preamble.

264.    Under Apple's apparent interpretation of "a portable electronic device with a keyboard and a touch screen display", the reduced auto-correcting keyboard system depicted in Figure 1A of Robinson meets this limitation of claim 18. In particular, Robinson discloses a portable electronic device with a touch screen display, in the form of a portable computer. *See, e.g.,* Robinson at 14:53-58; Figure 1A. Robinson also discloses a keyboard implemented on a touch screen. *See, e.g., id.* Robinson also discloses a graphical user interface. The interface depicted in Figure 1A of Robinson is a graphical user interface:



**FIG. 1A**

In addition, Robinson also discloses regions on a display. *See, e.g.,* Robinson at 15:59-62. These regions are a graphical aspect of the user interface.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

265.    Further, Robinson also discloses a keyboard with mechanical keys. *See, e.g., id.* at 13:23-29. In my opinion, therefore, Robinson anticipates this limitation under its plain and ordinary meaning as well.

> *a first area of the touch screen display that displays a*
> *current character string being input by a user with*
> *the keyboard; and[3]*

266.    I understand that Apple disputes that Robinson discloses this limitation of claim 18. Apple's Supplemental Objections and Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41) at 179 ("Robinson fails to anticipate claim 18 because it fails to disclose … a first area of the touch screen display that displays a current character string being input by a user with the keyboard"). For the reasons enumerated below, it is my opinion that Apple is incorrect.

267.    Robinson discloses a first area of the touch screen display that displays a current character string being input by a user with the keyboard. In particular, Robinson discloses that an upper output text region displays the text entered by the user. *See, e.g.,* Robinson at 15:61-62. The upper output text region is a region of the display and displays information to the user. *See, e.g.,* Robinson at 15:59-60. This region serves as a buffer for text input and editing. *See, e.g.,* Robinson at 15:61-62. The upper output text region is a first area of the touch screen display. Buffers are well-known to a person of ordinary skill in the art. A buffer is a term of art used to describe an area used to store information during input. As a buffer for text input that displays the text entered by the user, the upper output text region displays a current character string being input by a user with a keyboard. Further, the text of Figure 1A describes the upper output text region as "an

---

[3]    In my opinion, there is nothing new or non-obvious in this limitation and a person of ordinary skill in the art would have been aware of the use of an area of a touch screen display for displaying a current character string being input by a user with a keyboard. More particularly, a person having ordinary skill in the art at the time of the alleged invention would have been aware of touch screen displays and regions or areas thereof, character strings composed of characters selected by a user from a keyboard (both virtual and physical), and displaying character strings in a defined area on a screen. Thus, in addition to being anticipated, this limitation would also have been obvious to a person of ordinary skill in the art.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

asserted claim of the '172 patent. *See generally* King. Instead, King discloses a text entry system which differs in only trivial ways from the alleged invention set forth in claim 18 of the '172 patent, as will be described in additional detail below. Accordingly, in my opinion King does not teach away from the asserted claim of the '172 patent.

434.    It is my opinion that to the extent any limitations of claim 18 are found not to be explicitly or inherently disclosed in King, then such limitation(s) would have been obvious to a person of ordinary skill in the art at the time of the alleged invention of the '172 patent based on King and the disclosures of the '172 patent.

(a)    **King Discloses a Direct-Pointing Interpretation as the Current Character String**

*A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising:*

435.    In my opinion, there is nothing new or non-obvious in this limitation and a person of ordinary skill in the art would have been aware of the use of keyboards and touch screens in a portable electronic device. More particularly, a person having ordinary skill in the art at the time of the alleged invention would have been aware of portable electronic devices, keyboards (both virtual and physical), and touch screen displays. Thus, at a minimum this claim limitation would have been obvious to a person of ordinary skill in the art at the time of the alleged invention.

436.    I understand that Apple disputes that King discloses this limitation of claim 18. Apple's Supplemental Objections and Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41) at 177-178 ("King fails to disclose all of the limitations of claim 18."). For the reasons enumerated below, it is my opinion that Apple is incorrect.

437.    I understand that this element of claim 18 is called the "preamble." I also understand that the preamble of a patent claim may or may not be limiting depending on certain legal principles as well as the court's construction of the claim. I understand that the court determines whether or not the preamble is limiting. In any event, as set forth below, it is my opinion that King discloses the language set forth in the preamble.

438.    Under Apple's apparent interpretation of "a portable electronic device with a

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

keyboard and a touch screen display", the reduced keyboard disambiguating system depicted in Figure 1A of King meets this limitation. In particular, King discloses a portable electronic device with a touch screen display, described as a portable computer. *See, e.g.,* King at 8:48-49. King also discloses a keyboard implemented on that touch screen. *See, e.g., id.* King therefore discloses a graphical user interface on a portable electronic device with a keyboard and a touch screen display. This is depicted in Figure 1A of King:



439.    Under Apple's apparent interpretation of "portable electronic device with a keyboard and a touch screen display" it is my opinion that King discloses this limitation of claim 18 of the '172 patent. *See, e.g., id.* at 8:48-49. Further, King discloses a separate keyboard with mechanical keys. *See, e.g., id.* at 8:49-53. Accordingly, it is my opinion that King discloses this limitation under its plain and ordinary meaning as well.

> *a first area of the touch screen display that displays a*
> *current character string being input by a user with*
> *the keyboard; and*

440.    In my opinion, there is nothing new or non-obvious in this limitation and a person of ordinary skill in the art would have been aware of the use of an area of a touch screen display for displaying a current character string being input by a user with a keyboard. More particularly, a

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

person having ordinary skill in the art at the time of the alleged invention would have been aware of touch screen displays and regions or areas thereof, character strings composed of characters selected by a user from a keyboard (both virtual and physical), and displaying character strings in a defined area on a screen. Thus, at a minimum this claim limitation would have been obvious to a person of ordinary skill in the art at the time of the alleged invention.

441.   I understand that Apple disputes that King discloses this limitation of claim 18. Apple's Supplemental Objections and Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41) at 177-178 ("King fails to disclose all of the limitations of claim 18."). For the reasons enumerated below, it is my opinion that Apple is incorrect.

442.   Under the direct-pointing interpretation, King discloses a first area of the touch screen display that displays not a current character string but a suggested replacement character string being input by a user with the keyboard. In particular, King discloses that an upper text region displays the text entered by the user. *See, e.g.,* King at 9:12-23. This region serves as a buffer for text input and editing. *See, e.g., id.* The upper text region is a first area of the touch screen display. As the user enters text, the keystroke interpretations are displayed in multiple areas of the display – including the upper text region – to help resolve ambiguity. *See, e.g., id.* at 9:56-63. The first entry in the selection list is selected as a default interpretation and is displayed in the text region. *See, e.g., id.* at 9:63-65. In Figure 1A, above, the default interpretation "age" is displayed in the text region. *See, e.g., id.* at Fig. 1A. The word "age" is merely one of the interpretations of the string entered by the user with the virtual keyboard, which is also interpreted as the actual key sequence "bhe". *See, e.g., id.* at 12:20-26. Accordingly, King discloses that a text entry area displays a replacement string that is being entered by a user with a keyboard. The first area (under the pointing interpretation) is depicted in Figure 1A (I have indicated the default interpretation in the text entry area in red on the figure):

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

would have been obvious to one of ordinary skill in the art to apply the other teachings of King to use any of the keys from the Symbols mode keyboard to cause an actual key sequence interpretation of the keystroke sequence displayed in a text region to be replaced by a default interpretation displayed in a selection list.

> *the current character string in the first area is*
> *replaced with the suggested replacement character*
> *string if the user performs a gesture on the suggested*
> *replacement character string in the second area; and*

454.    In my opinion, there is nothing new or non-obvious in this limitation and a person of ordinary skill in the art would have been aware of replacing a string when a choice is selected from among a list of choices using a gesture. More particularly, a person having ordinary skill in the art at the time of the alleged invention would have been aware of touch screen displays and regions or areas thereof, character strings composed of characters selected by a user from a keyboard (both virtual and physical), using algorithms to develop lists of alternates to the entered character string, presenting lists of alternates on a screen in the form of a pop-up display, displaying character strings in a defined area on a screen, selecting an alternate from among a list using a gesture, and replacing a previously displayed character string with a selected character string. Thus, at a minimum this claim limitation would have been obvious to a person of ordinary skill in the art at the time of the alleged invention.

455.    I understand that Apple disputes that King discloses this limitation of claim 18. Apple's Supplemental Objections and Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39, and 41) at 177-178 ("King fails to disclose all of the limitations of claim 18."). For the reasons enumerated below, it is my opinion that Apple is incorrect.

456.    King discloses the suggested replacement character string in the first area is kept if the user performs a gesture on the suggested replacement character string in the second area. In particular, as shown in Figure 1A, the selection list displays multiple alternatives, and a user can select a desired word from the selection list by touching it. *See, e.g.,* King at 11:20-23. When a word is being edited, whether during text entry or by a user selecting a specific word for editing, that word is displayed in the text region and the selection list surrounded by a box. *See, e.g., id.* at

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

determines one or more alternate textual interpretations of each sequence of inputs detected within a designated auto-correcting keyboard region."). A person of ordinary skill in the art would thus have considered both references when attempting to solve the same problem.

473.    The combination of Robinson and Xrgomics renders invalid as obvious claim 18 of the '172 patent.

474.    The explicit details as to why Robinson alone anticipates each limitation of asserted claim 18 of the '172 patent is set forth in paragraphs 248-286 above as well as in the claim chart in Exhibit 1, all of which I incorporate by reference here. In addition, I provide below a narrative of my opinions for the Xrgomics reference as it relates to claim 18. In view of this analysis, it is my opinion that the combination of Robinson with Xrgomics renders invalid as obvious claim 18 of the '172 patent.

**(a)    Claim 18**

*A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising:*

475.    The Xrgomics reference discloses "portable electronic device with a keyboard and a touch screen display" under Apple's apparent interpretation of that term. *See, e.g.,* Xrgomics at 15-16 ("FIG. 1 shows how an on-screen implementation of a choice window 14 with word choices 16 could look like on a handheld device 10 with a virtual keyboard 12."); *see also* Xrgomics, Fig, 1. Further, the Xrgomics reference discloses use with "any text input or virtual text input system", which includes a keyboard separate from a touchscreen. *See, e.g.,* Xrgomics at 7. It is therefore my opinion that the Xrgomics reference discloses a "portable electronic device with a keyboard and a touch screen display" under its plain and ordinary meaning of that term as well. *See, e.g., id.* ("The keyboard in the embodiments can be any text input system or virtual text input system."). Accordingly, the combination of Robinson and Xrgomics renders this limitation of claim 18 of the '172 patent invalid as obvious.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

inputted [to be] replaced by the choice." *See, e.g., id.* Even though selecting a current character string would replace the string with itself, the string would be "kept" from the user's perspective. Accordingly, the combination of Robinson and Xrgomics renders claim 18 of the '172 patent obvious.

### 4.   The Combination of Robinson with POBox Renders Claim 18 of the '172 Patent Invalid as Obvious

484.   To the extent that any of the limitations of the asserted claim of the '172 patent are not disclosed by the Robinson reference, a person of ordinary skill in the art would have been motivated to combine Robinson with the POBox reference to attain the benefits and expected outcome of a current character string displayed in a first area of a touch screen display that can be replaced or kept if a user performs certain actions. More specifically, a person of ordinary skill in the art combining those references would have relied on the ability to select one of a current character string or selected replacement character string from a word choice list disclosed by one or more of Robinson and POBox, the ability to select a replacement character string from a word choice list for output when a user selects a key on a keyboard associated with a delimiter disclosed by Robinson, and the current character string displayed in both a text entry area and word choice list disclosed by one or more of Robinson and POBox. Consequently, the combination of those references would have provided the benefits of a current character string displayed in a first area of a touch screen display which can be replaced or kept if a user performs certain actions.

485.   A person of ordinary skill in the art developing a text entry system would have looked to the text entry systems available for the portable device operating systems at the time, such as Palm and Windows Mobile. A person of ordinary skill in the art would be familiar with the developers who were creating software for use on these devices for the purposes of text entry. One example of a well-known developer was Tegic Communications, the assignee of the Robinson reference. A person of ordinary skill in the art would have been aware of the text entry systems developed by Tegic Communications, including the Robinson reference. A person of ordinary skill in the art would have been equally aware of or sought out text entry systems developed by others in the field, such as Toshiyuki Masui and his POBox software. Indeed, the

POBox reference compares the POBox software to the T9 software developed by Tegic Communications. *See, e.g.,* POBox at 291. Further, the systems described in the Robinson and POBox both describe efficient, or enhanced, text input techniques for portable electronic devices. *See* POBox at 289 ("We introduce an efficient text input technique that can be used in various environments where conventional full-sized keyboards cannot be used."); Robinson at Abstract ("There is disclosed an enhanced text entry system which determines one or more alternate textual interpretations of each sequence of inputs detected within a designated auto-correcting keyboard region."). Indeed, POBox is cited as prior art to the Robinson reference. *See* Robinson at page 3, SAMNDCA630-00942640. A person of ordinary skill in the art would thus have considered both references when attempting to solve the same problem.

486. The combination of Robinson and POBox renders invalid as obvious claim 18 of the '172 patent.

487. The explicit details as to why Robinson alone anticipates each limitation of asserted claim 18 of the '172 patent is set forth in paragraphs 248-286 above as well as in the claim chart in Exhibit 1, all of which I incorporate by reference here. In addition, I provide below a narrative of my opinions for the POBox reference as it relates to claim 18. In view of this analysis, it is my opinion that the combination of Robinson with POBox renders invalid as obvious claim 18 of the '172 patent.

(a)    <u>Claim 18</u>

*A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising:*

488. Under Apple's apparent interpretation of "portable electronic device with a keyboard and a touch screen display" it is my opinion that the POBox reference discloses this limitation of claim 18 of the '172 patent, as the POBox reference describes and depicts use on a PalmPilot device – a portable electronic device with a touchscreen display and a virtual keyboard implemented in software. *See, e.g., id.* at 294 ("Using POBox on PalmPilot"). Further, the POBox reference also discloses use with "[v]irtually any input device", which includes a keyboard

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

separate from a touchscreen. *See, e.g.,* POBox at 298. It is therefore my opinion that POBox discloses this limitation under its plain and ordinary meaning as well. *See, e.g., id.* ("Virtually any input device can be used for POBox.") Accordingly, the combination of Robinson and the POBox reference renders this limitation of claim 18 invalid.

> *a first area of the touch screen display that displays a current character string being input by a user with the keyboard; and*
>
> *a second area of the touch screen display separate from the first area that displays the current character string or a portion thereof and a suggested replacement character string for the current character string; wherein;*

489.    To the extent one argues that the Robinson reference does not disclose the limitation a first area of the touch screen display that displays a current character string being input by a user with the keyboard, that limitation is disclosed by POBox, and the combination of the Robinson reference and POBox renders claim 18 obvious.

490.    POBox discloses a first area of a touch screen display that displays a current character string being input by a user with the keyboard. POBox describes the use of the POBox software on a PalmPilot, which has a soft keyboard on a touch screen display. POBox at 294. Figure 7 of POBox depicts the POBox software running on a PalmPilot device with a Japanese soft keyboard:



(a) Using Japanese soft keyboard

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

replacement character string in the second area – the candidates list.

494.    POBox further discloses the current character string in the first area is kept if the user performs a gesture on the current character string or portion thereof displayed in the second area. POBox describes that a user can tap on the keys displayed on the touch screen. *Id.* at 294 ("Figure 7(a) shows the display of POBox on PalmPilot after the user taps the 'ま' (*ma*) key on the software keyboard."). To use POBox, a user "selects a word from the candidate list and the word is placed in the composed text." *Id.* at 292. The candidate list is generated in software on a touchscreen display. *See id.* at 293-295. The user can directly select a candidate by touching it. *See id.* at 293 ("Since the word 'first' is a frequently used word and is found in the candidate list, the user can tap on the word 'first' so that it is put into the text area."). POBox thus discloses that if a user gestures on a current character string displayed in the candidate list, such as the character "*ma*" depicted in Figure 7, the current character string in the first area is kept.

495.    Accordingly, the combination of Robinson and the POBox reference renders claim 18 invalid.

### 5.    The Combination of Robinson with TextPlus Renders Claim 18 of the '172 Patent Invalid as Obvious

496.    To the extent that any of the limitations of the asserted claim of the '172 patent is not disclosed by the Robinson reference, a person of ordinary skill in the art would have been motivated to combine Robinson with TextPlus to attain the benefits and expected outcome of a current character string displayed in a first area of a touch screen display which can be replaced or kept if a user performs certain actions. More specifically, a person of ordinary skill in the art combining those references would have relied on the ability to select one of a current character string or selected replacement character string from a word choice list disclosed by Robinson, the ability to select a replacement character string from a word choice list for output when a user selects a key on a keyboard associated with a delimiter disclosed by Robinson and TextPlus, and the current character string displayed in a text entry area disclosed by one or more of Robinson and TextPlus. Consequently, the combination of those references would have provided the benefits of a current character string displayed in a first area of a touch screen display, namely,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

providing feedback to the user of the contents of the upper output text region disclosed by Robinson as the user is entering text.

497.    A person of ordinary skill in the art developing a text entry system would have looked to the text entry systems available for the portable device operating systems at the time, such as Palm and Windows Mobile. A person of ordinary skill in the art would be familiar with the developers who were creating software for use on these devices for the purposes of text entry. One example of a well-known developer was Tegic Communications, the assignee of the Robinson reference. A person of ordinary skill in the art would have been aware of the text entry systems developed by Tegic Communications, including the Robinson reference. A person of ordinary skill in the art would have been equally aware of or sought out text entry systems developed by others in the field, such as the TextPlus software from SmartCell Technology. A person of ordinary skill in the art would thus have considered both references when attempting to solve the same problem. The combination of Robinson and TextPlus renders invalid as obvious claim 18 of the '172 patent.

498.    The explicit details as to why Robinson alone anticipates each limitation of asserted claim 18 of the '172 patent is set forth in paragraphs 248-286 above as well as in the claim chart in Exhibit 1, all of which I incorporate by reference here. In addition, I provide below a narrative of my opinions for TextPlus as it relates to claim 18. In view of this analysis, it is my opinion that the combination of Robinson with TextPlus renders invalid as obvious claim 18 of the '172 patent.

**(a)**    **Claim 18**

*A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising:*

499.    TextPlus discloses "portable electronic device with a keyboard and a touch screen display" under Apple's apparent interpretation of that term. The TextPlus documentation depicts the use of a virtual keyboard with the TextPlus software, as described above, which I have verified in my own use of the software. It is there therefore my opinion that TextPlus discloses this limitation under Apple's apparent interpretation of the term. The TextPlus documentation also

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

discloses use with "external hardware keyboards," and I have used TextPlus with the mechanical keyboard of the HandSpring Treo 90 *Id.* at 9. It is therefore my opinion that TextPlus discloses a "portable electronic device with a keyboard and a touch screen display" under the plain and ordinary meaning of that term as well. Accordingly, it is my opinion that the combination of TextPlus and Robinson discloses this limitation of claim 18 of the '172 patent, and renders claim 18 invalid as obvious.

> *a first area of the touch screen display that displays a current character string being input by a user with the keyboard; and*
>
> *a second area of the touch screen display separate from the first area that displays the current character string or a portion thereof and a suggested replacement character string for the current character string; wherein;*

500.   To the extent one argues that the Robinson reference does not disclose the limitation a first area of the touch screen display that displays a current character string being input by a user with the keyboard, that limitation is disclosed by TextPlus, and the combination of the Robinson reference and TextPlus discloses that limitation of claim 18 and renders claim 18 invalid as obvious.

501.   TextPlus discloses a first area of the touch screen display that displays a current character string being input by a user with the keyboard. The TextPlus documentation describes a "text field (editor) for displaying the text of your composition." *See id.* The TextPlus text editor thus contains an area containing a current character string being entered by a user. In the TextPlus documentation, the current character string is the letter "M":

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

1

2

3    DATED:   August 12, 2013

4                                              Daniel Wigdor

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
EXPERT REPORT OF DR. DANIEL WIGDOR CONCERNING INVALIDITY OF U.S. PATENT NO. 8,074,172

**EXHIBIT 3**

**THE COMBINATION OF ROBINSON WITH XRGOMICS
RENDERS CLAIM 18 OF THE '172 PATENT INVALID AS OBVIOUS**

| U.S. Patent No. 8,074,172 ("the '172 Patent") | U.S. Patent No. 7,880,730 ("Robinson") | Int'l Patent Pub. No. WO 2005/008899 A1 ("Xrgomics") |
|---|---|---|
| **[18 Preamble]** A graphical user interface on a portable electronic device with a keyboard and a touch screen display, comprising: | Robinson discloses a graphical user interface on a portable electronic device with a keyboard and a touch screen display.<br><br>"With regard to FIG. 1A, a reduced auto-correcting keyboard system 100 formed in accordance with the present invention is depicted incorporated in a palmtop portable computer 102. Portable computer 102 contains a reduced keyboard 105 implemented on a touch screen display 103, which is used to generate text to be output to text display region 104." Robinson at 14:53-58; *see also* Fig. 1A. | Xrgomics discloses a graphical user interface on a portable electronic device with a keyboard and a touch screen display.<br><br>"FIG. 1 shows how an on-screen implementation of a choice window 14 with word choices 16 could look like on a handheld device 10 with a virtual keyboard 12." Xrgomics at 15-16; *see also* Figure 1. |

| U.S. Patent No. 8,074,172 ("the '172 Patent") | U.S. Patent No. 7,880,730 ("Robinson") | Int'l Patent Pub. No. WO 2005/008899 A1 ("Xrgomics") |
|---|---|---|



"'Keyboard' shall mean include any input device having defined areas including, but not limited to, a touch sensitive screen having a defined area containing a plurality of defined locations associated with characters, a touch sensitive screen having defined areas for keys, discrete mechanical keys, or membrane keys." Robinson at 13:23-28.

"Two overlapping regions are defined on the display each of which display information to the user. An upper output text region 104 displays the text entered by the user and serves as a buffer for text input and editing." Robinson at 15:59-62.

Xrgomics, Fig. 1.
"FIG. 5 shows how letter choice 256 and word choice 254 with a predetermined window or display area of two rows could look like on a touch screen or screen input surface of a handheld device 250 that consist of a virtual keyboard 252. Scroll button 260 enables user to see more choices if they are not all able to fit into the one row while the current text inputted 262 is shown in the predetermined window as well so as to minimise the amount of look-up 258 a user needs to do to monitor/track his text entry.

These simple basic elements of the choice

| U.S. Patent No. 8,074,172 ("the '172 Patent") | U.S. Patent No. 7,880,730 ("Robinson") | Int'l Patent Pub. No. WO 2005/008899 A1 ("Xrgomics") |
|---|---|---|
| | | window to efficiently present letter and word choice and the current inputted text, occupies little space and yet can be applied to virtually all text input systems and devices. By offering the current inputted text to be displayed near the input keys and choices allows the user to concentrate on only one part of the screen (one focus of attention) to input text thus making text entry easier and more efficient. Also, the scroll button allows for more choices to be displayed that can normally be fitted into the limited space of the choice window."  Xrgomics at 25. |

| U.S. Patent No. 8,074,172 ("the '172 Patent") | U.S. Patent No. 7,880,730 ("Robinson") | Int'l Patent Pub. No. WO 2005/008899 A1 ("Xrgomics") |
|---|---|---|
| | |   Xrgomics, Fig. 5<br><br>"The keyboard in the embodiments can be any text input system or virtual text input system. The keyboard can also be part of a reduced keyboard system." Xrgomics at 7. |
| [18A] a first area of the touch | Robinson discloses a first area of the touch screen display that displays a current character string being | Xrgomics discloses a first area of the touch screen display that displays a current character string being |