# Exhibit 10
# (Submitted Under Seal)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　　Defendants. | CASE NO. 12-cv-00630-LHK |

**REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT NO. 5,946,647**

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**
EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

     (iv)  The "Analyzer Server" Routines Dr. Mowry Identifies Do Not Infringe Under The Doctrine of Equivalents

285. In paragraphs 148-150 Dr. Mowry purports to analyze this limitation of claim 1 under the doctrine of equivalents. In my opinion, Dr. Mowry's analysis is flawed.[23]

286. Dr. Mowry argues in paragraphs 148-152 and 207 that the Accused Devices meet the "analyzer server" limitation under Judge Posner's constructions under the Doctrine of Equivalents. I disagree.

287. Dr. Mowry appears to reply on opinions of Dr. Geoff Cohen rendered in a previous proceedings to support his Doctrine of Equivalents argument that shared library code that is integrated into, and part of, Browser is somehow equivalent to the analyzer server of claim 1 that contains server routines separate from a client. Dr. Mowry alleges that Dr. Cohen opined that the difference between an "analyzer server" in a prior art system that was separate from an application versus part of an application was a "design choice." First, in the passages of Dr. Cohen's declaration relied on by Dr. Mowry, Dr. Cohen was opining about specific structures in a specific prior art system. Dr. Cohen was not making general statements of the equivalence of anything. Second, even if Dr. Cohen was making a statement of general applicability, that fact that two options are design choices shows that they are in fact not equivalent. While designing analysis functions as a server or as a shared library to be integrated into an application are in fact two obvious design choices, a person of ordinary skill in the art would understand that these options are fundamentally different ways of performing analysis. For example, a person of ordinary skill in the art would understand that using a shared library versus a server are different ways of providing function and that the choice of one versus the other will have significant performance implications, as Apple itself learned when they chose the server option. Moreover, a person of ordinary skill in the art would understand that the use of a server versus a shared library, while

---

[23] I understand that Apple did not include doctrine of equivalents positions in its previous contentions regarding the '647 patent, and they are not so included in Dr. Mowry's charts (Ex. 3).

**HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE**

EXPERT REPORT OF DR. KEVIN JEFFAY CONCERNING NONINFRINGEMENT OF U.S. PATENT 5,946,647

1 obvious design choices, are not interchangeable design choices. In a system designed to use a true analyzer sever (*i.e.*, a server), a person of ordinary skill in the art would understand that the server is not interchangeable with a shared library (as Apple discovered when they contemplated the months of work it would take to design the Live Doc system to use a shared library instead of a server). Thus, Dr. Cohen's declaration in no way supports Dr. Mowry's Doctrine of Equivalents argument and in fact contradicts Dr. Mowry's argument.

288. Similarly, the portions of Dr. Cohen's deposition testimony relied on by Dr. Mowry do not support any notion of equivalence between the claimed server structure and the shared library employed by Browser. First, Dr. Cohen's cited deposition testimony was discussing specific aspects of a prior art system and specific design choices available to the developers of that system. Moreover, given the totality of Dr. Cohen's testimony on this topic, Dr. Cohen made clear that "there's clearly difference" in the design options available to the prior art system designers (see, Cohen Tr., p. 225:7-14).

289. Dr. Mowry further relies of Dr. Cohen for the premise that "'creating a specified connection" would have been obvious given one of ordinary skill in the art's familiarity with the use of 'pointers,' a 'standard technique' at the time" for an unstated purpose (*see*, Mowry ¶ 151 quoting Cohen ¶ 128). Nonetheless, Dr. Cohen's opinion here is not relevant to any Doctrine of Equivalents analysis of Browser. The cited passage in Dr. Cohen's declaration is a discussion of a specific prior art system and does not address or consider the alleged "linking" mechanism used by Browser and thus does not inform any Doctrine of Equivalents analysis of the Browser. Second, Dr. Cohen's opinion that the use of any particular technique is obvious or standard practice in no way can be considered a statement about the equivalence of these techniques. To the contrary, the fact that multiple "linking" techniques were known in the prior art shows that the use of any one would have been an obvious choice, not that they are equivalent. In any event, Browser does not use any of the techniques discussed by Dr. Cohen in his paragraph 128.