# Exhibit 10
# (Submitted Under Seal)

Page 1

1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                    SAN JOSE DIVISION
4
5  APPLE, INC., a California        )
6  corporation,                     )
7         Plaintiff,                )     Case No.
8                                   )12-cv-00630-LHK (PSG)
9           vs.                     )
10 SAMSUNG ELECTRONICS CO., LTD., a )
11 Korean corporation; SAMSUNG      )
12 ELECTRONICS AMERICA, INC., a New )
13 York corporation; and SAMSUNG    )
14 TELECOMMUNICATIONS AMERICA, LLC, )
15 a Delaware limited liability     )
16 company,                         )
17         Defendants.              )
18 _____)
19
20    VIDEOTAPED DEPOSITION OF JAMES A. STORER, Ph.D.
21            Thursday, September 26, 2013
22                Boston, Massachusetts
23
24  Reported by:  Dana Welch, CSR, RPR, CRR, CBC, CCP
25  Job No. 66049

Page 2

Thursday, September 26, 2013

9:39 a.m.

Videotaped deposition of JAMES A. STORER, Ph.D., held at the offices of WilmerHale, 60 State Street, Boston, Massachusetts, before Dana Welch, Certified Shorthand Reporter, Registered Professional Reporter, Certified Realtime Reporter, and Notary Public of the Commonwealth of Massachusetts.

1   it's very inconsistent with what the specifications  01:43
2   are saying the whole purpose of the patent is.       01:43
3       Q.  So let's focus on the list first.            01:43
4       A.  Okay.                                        01:43
5       Q.  Why is it your opinion that the camera       01:43
6   roll does not display a list of images?              01:43
7       A.  Well, when you look at the camera roll,      01:43
8   it's just a grid of icons.  In fact, I think I -- I  01:43
9   even -- in fact, if you go to the next page, the     01:43
10  very next page, page 163, you can see side by side   01:43
11  camera roll, and for example, Figure 7 of the        01:43
12  patent, you know, very different kinds of things,    01:44
13  and so giving actually sort of a graphical           01:44
14  comparison there, if you will, on the right-hand     01:44
15  side of the sort of screenshot from the camera.      01:44
16      Q.  So let's look at the screenshot of the       01:44
17  camera roll on page 163.                             01:44
18      A.  Yes.                                         01:44
19      Q.  That has, it looks like, pictures and        01:44
20  videos in it.  Do you agree?                         01:44
21      A.  I don't -- it's hard for me actually to      01:44
22  read the page as to which is -- looks like -- yes,   01:44
23  I think I can see the icons.  My eyes aren't quite   01:44
24  so good but I can see them here.  Yes, I agree that  01:44
25  there's both.  In general, there can be.  I just     01:44

1    claim that a list must have items in a top-down         01:48
2    arrangement.                                            01:48
3         A.   Okay.  Well, hold on one sec, let me see      01:48
4    if I can find that "top-down" language.                 01:48
5              (Perusing document.)                          01:48
6              Okay.  So --                                  01:48
7         Q.   If you're having trouble finding it, you      01:48
8    might want to look at paragraph 300.                    01:48
9         A.   Yeah.  I'm looking there and I'm also         01:48
10   checking just some of the other places.  I have         01:48
11   already seen that.                                      01:48
12             (Perusing document.)                          01:50
13             So as you pointed out, not only is            01:50
14   paragraph 300 -- it's more than just merely             01:50
15   paragraph 300 use it, the words "top-down."  As I       01:50
16   was saying earlier, when one of ordinary skill in       01:50
17   the art reads the claim language in addition to         01:50
18   reading terms of their plain meaning and employing      01:50
19   any constructions the court -- well, that's how we      01:50
20   read it -- but in addition to reading the terms of      01:50
21   its plain meaning, they certainly would take a look     01:50
22   at the specifications.                                  01:50
23             And so I'm actually quoting from the          01:50
24   specifications on this one quote here where the         01:50
25   word "top-down" is taken from.  I'm quoting from        01:50

Page 120

| | | |
|---|---|---|
| 1 | the bottom of column 7 where it says, "The data | 01:50 |
| 2 | items displayed on the screen are arranged from" -- | 01:50 |
| 3 | "arranged from the top to the down in the sequence | 01:50 |
| 4 | of the recording year, month, day and the recording | 01:50 |
| 5 | start time.  Hence, the last recorded data is | 01:50 |
| 6 | listed in the top most row so that," et cetera, et | 01:51 |
| 7 | cetera, et cetera. | 01:51 |
| 8 | And so I'm actually quoting and, in fact, | 01:51 |
| 9 | we -- in a number of places here, I'm simply | 01:51 |
| 10 | quoting from the specifications when they | 01:51 |
| 11 | characterize a list and they talk about text being | 01:51 |
| 12 | part of the list.  So what they're doing is they're | 01:51 |
| 13 | really -- that they're -- what the patentee is | 01:51 |
| 14 | doing is really saying, hey, look at things like | 01:51 |
| 15 | Figure 7, the thing that we were just talking about | 01:51 |
| 16 | that's compared side by side, this figure from this | 01:51 |
| 17 | old patent and the figure to the side of it where | 01:51 |
| 18 | it's colored icons of the camera roll. | 01:51 |
| 19 | I mean, not only don't they look the same, | 01:51 |
| 20 | certainly the description in the patent describes | 01:51 |
| 21 | it differently and certainly the words of the claim | 01:51 |
| 22 | do.  So it seems pretty -- the picture says a | 01:51 |
| 23 | thousand words but a lot of those words are quotes | 01:51 |
| 24 | that I'm using are quotes from the patent. | 01:51 |
| 25 | Q.  And would you agree with me that in the | 01:51 |

| | | |
|---|---|---|
| 1 | my last answer because it's similar to your | 02:06 |
| 2 | question, that how can you be talking outside of | 02:06 |
| 3 | the context of the patent?  I mean, the whole | 02:06 |
| 4 | premise is that you have the specifications for a | 02:06 |
| 5 | reason.  The reader is supposed to read the | 02:06 |
| 6 | specifications and then read the claims.  That the | 02:06 |
| 7 | claims are meant to be read in light of the | 02:06 |
| 8 | specifications.  And there's the claim language | 02:06 |
| 9 | itself.  So you're asking some hypothetical which | 02:06 |
| 10 | wasn't addressed by Mr. Parulski, which doesn't -- | 02:06 |
| 11 | which actually kind of goes against the teaching of | 02:07 |
| 12 | the specifications which has the controls to move | 02:07 |
| 13 | it up and down in a vertical way.  It doesn't -- | 02:07 |
| 14 | it's a question that goes completely outside of | 02:07 |
| 15 | either opinions that have been given -- well, I | 02:07 |
| 16 | won't go that far.  I won't say go outside of it. | 02:07 |
| 17 | He gave a lot of opinions.  But it certainly goes | 02:07 |
| 18 | outside of what is taught by the specification, | 02:07 |
| 19 | which is described in the specifications.  And the | 02:07 |
| 20 | idea that somehow you would ignore the | 02:07 |
| 21 | specifications and talk about this in the abstract | 02:07 |
| 22 | as a way of reasoning about this case doesn't seem | 02:07 |
| 23 | to me to make a proper approach to analyzing the | 02:07 |
| 24 | issue of infringement or non-infringement. | 02:07 |
| 25 |     Q.  Right.  That's fine.  You may disagree | 02:07 |

Page 133

1  with that approach.  But my question is, is you             02:07
2  know, outside the scope of the patent, if someone           02:08
3  were to ask you if a list can span multiple                 02:08
4  columns, what would you response to that be?                02:08
5          MR. MAIER:  Objection to form.                      02:08
6      A.  Well, it sounds like you're saying if I             02:08
7  wasn't even concerned with the patent, maybe I had          02:08
8  a top-down list, a list that's nothing like this            02:08
9  iPhone camera roll, and maybe you would choose to           02:08
10 somehow cut it up and print it in some way.  But            02:08
11 that's not what the patent is talking about.  The           02:08
12 patent is talking about using camera controls to            02:08
13 move up and down in this top-down list.  It's               02:08
14 talking about text.  It's talking about a lot of            02:08
15 properties of the list, some of it we haven't --            02:08
16 some of which we haven't gotten to yet.  And there          02:08
17 just is no -- I don't see how any reasonable                02:08
18 reading of this patent could possibly include the           02:08
19 camera -- the colored array of icons as coming              02:09
20 under what is being claimed, the coverage of this           02:09
21 claim for a list.  And of course there are other            02:09
22 issues that are discussed here besides just the             02:09
23 top-down issue and the nature of the way it looks           02:09
24 in Figure 7 and so on.                                      02:09
25     Q.  I think another aspect of your                      02:09

1  up and down the lists.                                02:11
2      Q.  But is it your position that the term        02:11
3  lists as it's used in the '449 patent requires       02:11
4  textual information?                                  02:11
5      A.  So the -- so -- so there are two parts to   02:12
6  the answer to that question.  Okay.  First of all,   02:12
7  the camera does describe it as this top-down with    02:12
8  textual information, the figures show it that way.   02:12
9  Okay.  And so that's another characteristic of the   02:12
10 overall understanding of the list.  When you see     02:12
11 Figure 7 and you see this list, you know what they   02:12
12 mean.  And you certainly know what it doesn't mean,  02:12
13 and that's this two-dimensional, something like a    02:12
14 two-dimensional array of icons.                       02:13
15         So I guess what I'm saying is the textual    02:13
16 information is another way that it talks about       02:13
17 lists, that describes lists.  To me, though,         02:13
18 already, based on the discussion we've already had,  02:13
19 for example, the fact that it's a two-dimensional    02:13
20 array of icons, it's not a list.  I mean, it's as    02:13
21 simple as that.  It just doesn't in any way map up   02:13
22 to how it describe lists.  I'm just saying that the  02:13
23 nice thing about the textual part, too, is that the  02:13
24 reader understanding that the patent is not trying   02:13
25 to go outside of these figures.  It's not trying to  02:13

Page 136

1   move outside of what you're understanding this           02:13
2   invention to be about.  It's just solidifying.          02:13
3   It's further and further describing through the         02:13
4   controls of the camera, the text and everything,        02:13
5   this whole top-down thing we've been talking about.     02:13
6   And it's further and further taking you away from       02:13
7   just the whole thing as a whole.  The more it, you      02:13
8   know, it sort of solidifies what you see in             02:14
9   Figure 7, the more it solidifies that's not what        02:14
10  you see here.                                           02:14
11       Q.  If Judge Koh were to ask you what              02:14
12  construction you used for term "lists" in your          02:14
13  expert report, what would you -- what would you         02:14
14  tell her?                                               02:14
15       A.  So first of all, what the judge may do is     02:14
16  actually address the very precise problem, because      02:14
17  the judge would be doing claim construction, of         02:14
18  exactly when something is a list and when it isn't      02:14
19  a list, for the purpose of the scope of the claims.     02:14
20  And that, you know, points to somewhere here            02:14
21  (indicating).                                           02:14
22           But when you look at something like this       02:14
23  (indicating), it's not bumping up against that          02:14
24  dividing line.  It's way out there in right field.      02:14
25  It's definitely not a list.  And the precise exact      02:15

Page 147

1  talked about this.  I quoted from the patent.  It          02:28
2  gives examples, and, of course, consistent as I            02:28
3  said before with the figures, it says, "The imaging        02:28
4  status of the user such as recording date and time         02:28
5  are automatically recorded."  Okay?  And you see           02:29
6  the figures showing text, you know, showing this           02:29
7  list that goes up and down, the user can use the           02:29
8  controls to move up and down the list and showing          02:29
9  text.                                                      02:29
10         So it's the consistency of -- there's a            02:29
11 very consistent understanding, a description of the        02:29
12 invention that's given the specifications, and one         02:29
13 of ordinary skill at the time reading the claims           02:29
14 and trying to understand their scope, not trying to        02:29
15 understand some hypothetical definition of lists           02:29
16 for all time going back outside this patent,               02:29
17 understanding the scope of these claims, has a lot         02:29
18 of guidance from the specifications.                       02:29
19     Q.  So let's look at Figure 7, which is on             02:29
20 page 162.  Would you agree with me that this is a          02:29
21 list, what's shown in Figure 7?                            02:29
22     A.  So -- I'm sorry.  Excuse me.  Repeat the           02:29
23 question.                                                  02:30
24     Q.  Is what's shown in Figure 7 a list?                02:30
25     A.  So just to be clear, there's some                  02:30

1   discussion of Figure 7 here and I have highlighted     02:30
2   something.                                              02:30
3         I assume you're just asking about Figure 7       02:30
4   without the highlighting at the moment; is that        02:30
5   correct?                                                02:30
6       Q.   Yes.                                           02:30
7       A.   You're ignoring the highlighting.  And the    02:30
8   patent is describing.  Yeah, it's describing lists.    02:30
9   Figure 7 is an example of the kinds of lists that      02:30
10  the patent has in mind that's within the scope of      02:30
11  the claim.                                              02:30
12      Q.   And are these examples, let's take the        02:30
13  second row down with the little music symbol?          02:30
14      A.   Okay.                                          02:30
15      Q.   Do you see that?                               02:30
16           If you see just to the right of that, it      02:30
17  says "97/7/5."  Is that text?                          02:30
18      A.   Yes.  It's showing text which is the date.    02:31
19      Q.   Okay.  And then it has the PM 320.  Is        02:31
20  that text?                                              02:31
21      A.   Yes.                                           02:31
22      Q.   And there's a number 1 inside of the          02:31
23  folder.  Is that text?                                 02:31
24      A.   Um, um, the -- I have to go look.  Let me     02:31
25  just read the specifications, how they describe the    02:31