1   JAMES P. BENNETT (CA SBN 65179)
    jbennett@mofo.com
2   JACK W. LONDEN (CA SBN 85776)
    jlonden@mofo.com
3   RACHEL KREVANS (CA SBN 116421)
    rkrevans@mofo.com
4   ERIK J. OLSON (CA SBN 175815)
    ejolson@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, California  94105-2482
    Telephone:  (415) 268-7000
7   Facsimile:  (415) 268-7522
8   Attorneys for Plaintiff and
    Counterclaim-Defendant APPLE INC.

    WILLIAM F. LEE
    william.lee@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    60 State Street
    Boston, MA 02109
    Telephone: (617) 526-6000
    Facsimile: (617) 526-5000

    MARK D. SELWYN (SBN 244180)
    mark.selwyn@wilmerhale.com
    WILMER CUTLER PICKERING
    HALE AND DORR LLP
    950 Page Mill Road
    Palo Alto, California 94304
    Telephone: (650) 858-6000
    Facsimile: (650) 858-6100

9

10

11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

16   APPLE INC., a California corporation,

17                 Plaintiff,

18         v.

19   SAMSUNG ELECTRONICS CO., LTD., a
     Korean corporation; SAMSUNG
20   ELECTRONICS AMERICA, INC., a New
     York corporation; and SAMSUNG
21   TELECOMMUNICATIONS AMERICA,
     LLC, a Delaware limited liability company,
22
                   Defendants.
23

Case No.    12-cv-00630-LHK

**APPLE INC.'S RESPONSE
REGARDING WILLFULNESS
AND OPENING BRIEF
REGARDING ENHANCED
DAMAGES**

Date:  June 1, 2017
Time:  1:30 p.m.
Place:  Courtroom 8, 4th Floor
Judge:  Hon. Lucy H. Koh

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 2

III.  PROCEDURAL HISTORY ...................................................................................... 4

IV.   ARGUMENT ............................................................................................................ 5

A.   The Court Should Enter Judgment That Samsung's Infringement of the
     '721 Patent Was Willful. ................................................................................. 5

     1.    Samsung copied the slide-to-unlock invention from Apple ...................... 5

     2.    Samsung continued to use the slide-to-unlock invention copied
           from Apple for nearly a year after this lawsuit began, despite
           representing that it could have implemented alternatives in "no time
           at all." ...................................................................................................... 6

     3.    There is no evidence that Samsung had any subjectively held belief
           that its conduct was permissible at the time that it learned of the
           '721 patent ................................................................................................ 7

     4.    Samsung's challenges to willfulness fail. ................................................ 8

           a.    Samsung's conduct before the issuance of the '721 patent is
                 relevant to willfulness. .................................................................... 8

           b.    Samsung's lack of pre-suit knowledge of the '721 patent
                 does not excuse its post-suit willful infringement, which
                 was a continuation of its pre-suit deliberate copying. ..................... 9

           c.    Samsung's argument that it did not copy is foreclosed by the
                 law of the case doctrine and is contrary to the trial record. ........... 10

           d.    Samsung's post-suit conduct confirms its willful
                 infringement. .................................................................................. 12

B.   Samsung's Egregious Misconduct Warrants Treble Damages. ........................... 13

     1.    The *Read* factors overwhelming support enhancement. ........................... 14

           a.    Factor 1:  Deliberate copying ......................................................... 15

           b.    Factor 2:  The infringer's investigation and good-faith belief
                 in non-infringement or invalidity .................................................... 15

           c.    Factor 3:  The infringer's behavior as a party to the litigation ....... 16

           d.    Factor 4:  Defendant's size and financial condition ....................... 16

e. Factor 5:  Closeness of the case ...................................................... 16

f. Factor 6:  Duration of misconduct .................................................... 17

g. Factor 7:  Remedial action by the defendant................................. 17

h. Factor 8:  Defendant's motivation for harm.................................. 18

i. Factor 9:  Concealment ................................................................... 19

2. The unique circumstances of this case warrant treble damages................. 19

V. CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adrea, LLC v. Barnes & Noble, Inc.,*
No. 13-cv-4137 (JSR), 2017 WL 44954 (S.D.N.Y. Jan. 3, 2017) ............................................9

*Apple Inc. v. Samsung Electronics Co.,*
809 F.3d 633 (Fed. Cir. 2015).........................................................................4, 10, 14, 18, 19

*Apple Inc. v. Samsung Electronics Co.,*
816 F.3d 788 (Fed. Cir. 2016).............................................................................................4

*Apple Inc. v. Samsung Electronics Co.,*
839 F.3d 1034 (Fed. Cir. 2016) (en banc)...........................................4, 5, 10, 15, 17

*Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.,*
246 F.3d 1336 (Fed. Cir. 2001).........................................................................................5

*DermaFocus LLC v. Ulthera, Inc.,*
201 F. Supp. 3d 465 (D. Del. 2016) ...................................................................................10

*Dominion Resources Inc. v. Alstom Grid, Inc.,*
No. 15-224, 2016 WL 5674713 (E.D. Pa. Oct. 3, 2016) ............................................18

*Finjan, Inc. v. Blue Coat Systems, Inc.,*
No. 13-cv-3999-BLF, 2016 WL 3880774 (N.D. Cal. July 18, 2016)......................................14

*Funai Electric Co. v. Daewoo Electronics Corp.,*
593 F. Supp. 2d 1088 (N.D. Cal. 2009) ..............................................................................18

*Gustafson, Inc. v. Instersystems Industrial Products, Inc.,*
897 F.2d 508 (Fed. Cir. 1990)...........................................................................................9

*Halo Electronics, Inc. v. Pulse Electronics, Inc.,*
136 S. Ct. 1923 (2016) ........................................................................................... *passim*

*Huawei Technologies Co. v. T-Mobile US, Inc.,*
Nos. No. 2:16-cv-52-JRG-RSP *et al.*, 2017 WL 1129951 (E.D. Tex. Feb. 21,
2017) .........................................................................................................................9

*IMX, Inc. v. Lendingtree, LLC,*
469 F. Supp. 2d 203 (D. Del. 2007) .....................................................................................16

*Intergraph Corp. v. Intel Corp.,*
253 F.3d 695 (Fed. Cir. 2001)...........................................................................................10

*Inventio AG v. Thyssenkrupp Elevator Corp.,*
No. 08-874-RGA, D.I. 552 (D. Del. Feb. 7, 2014) ................................................................11

*Joyal Products, Inc. v. Johnson Electric North America, Inc.,*
No. 04-5172 (JAP), 2009 WL 512156 (D.N.J. Feb. 27, 2009)................................................15

*K-Tec, Inc. v. Vita-Mix Corp.*,
    696 F.3d 1364 (Fed. Cir. 2012)............................................................................................7

*Kaufman Co. v. Lantech, Inc.*,
    807 F.2d 970 (Fed. Cir. 1986)...............................................................................................8

*Kowalski v. Mommy Gina Tuna Resources*,
    Nos. 05-679-BMK *et al.*, 2009 WL 855976 (D. Haw. Mar. 30, 2009)....................................16

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993).........................................................................................5, 8

*Lift-U v. Ricon Corp.*,
    No. 10-cv-1850-LHK, 2012 WL 5303301 (N.D. Cal. Oct. 25, 2012)........................................9

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006).......................................................................................5, 15

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017).......................................................................................9, 12

*PPC Broadband, Inc. v. Corning Optical Communications RF, LLC*,
    No. 5:11-cv-761, 2016 WL 6537977 (N.D.N.Y. Nov. 3, 2016)...............................................18

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992).................................................................................11, 14, 15

*Sargent Manufacturing Co. v. Cal-Royal Products, Inc.*,
    No. 3:08-cv-408 (VLB), 2012 WL 603268 (D. Conn. Feb. 24, 2012).......................................7

*In re Seagate Technology, LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (en banc)...............................................................................4

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010)...........................................................................................11

**Statutes**

35 U.S.C. § 284...........................................................................................................................13

1    **I.     INTRODUCTION**

2           The Supreme Court has limited enhanced damages pursuant to 35 U.S.C. § 284 to cases

3    involving conduct that could be described "as willful, wanton, malicious, bad-faith, deliberate,

4    consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Halo Electronics, Inc.*

5    *v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016).  This is one of the rare cases involving

6    such egregious misconduct.

7           The jury in this case found that Samsung had willfully infringed U.S. Patent No.

8    8,046,721 ("the '721 patent") through the sale of millions of smartphones incorporating Apple's

9    iconic "slide-to-unlock" invention, and the record amply demonstrates that Samsung's conduct

10   was egregious under the *Halo* standard.  As the Federal Circuit has recognized, Samsung copied

11   the slide-to-unlock feature from Apple's enormously popular iPhone in a successful effort to

12   take away market share from its most "fierce" competitor.   Samsung's own documents

13   contained side-by-side comparisons of Samsung's unlocking mechanism with Apple's slide-to-

14   unlock feature with explicit directions to copy the claimed invention from the iPhone.  Despite

15   touting available non-infringing alternatives—which Samsung represented could have been

16   implemented in "no time at all"—Samsung continued to directly compete with Apple using the

17   '721 invention deliberately copied from the iPhone for nearly a year after Apple commenced

18   this lawsuit.

19          Samsung has presented no legitimate basis against holding its infringement willful on

20   this record.   Samsung's remarkable assertion that the evidence "fails to even show that

21   Samsung copied the iPhone" (Dkt. 2186 at 9) is contrary to the Federal Circuit's en banc ruling,

22   which expressly found substantial evidence of Samsung's copying of the '721 invention, and

23   also cannot be reconciled with what Samsung's own documents say.  Samsung's argument that

24   its lack of pre-suit knowledge of the '721 patent precludes a determination of willfulness is

25   contrary to law.  Samsung's explanation that the documents reflecting its copying pre-date the

26   issuance of the '721 patent and relate to other phone models is also unavailing.   That

27   Samsung's copying began long ago does not excuse Samsung's continued use of the slide-to-

28   unlock feature after the '721 patent issued; indeed, it makes Samsung's post-suit conduct all the

1   more willful.  And the fact that Samsung's copying was more widespread than the specific

2   models adjudicated at trial only reinforces the egregiousness of Samsung's misconduct.

3       Given the unique facts of this case, the Court should award treble damages for

4   Samsung's infringement of the '721 patent—the full extent permitted under 35 U.S.C. § 284.

5   This case represents the "egregious" infringement conduct addressed by the Supreme Court in

6   *Halo*, and presents nearly all of the factors that courts have considered relevant to the issue of

7   enhancement.  Samsung's own internal documents confirm that it deliberately copied the slide-

8   to-unlock invention from Apple—its largest and most "fierce" competitor in the smartphone

9   market.  That copying occurred immediately after the head of Samsung's mobile division called

10  upon Samsung's designers and engineers to stop "dozing off" and to redouble their efforts to

11  take on the "unexpected competitor Apple's iPhone."   (PX149.006.)   And Samsung's

12  infringement for nearly a year after Apple commenced this lawsuit—despite Samsung's

13  representations that it could easily remove the slide-to-unlock feature in "no time at all"—was a

14  continuation of Samsung's deliberate strategy to compete with Apple by copying the iPhone.  If

15  enhanced damages are not appropriate in this case of deliberate copying by Apple's most

16  "fierce" competitor, then there could be no case in which enhancement would be appropriate.

17      Accordingly, Apple respectfully requests that the Court determine that Samsung's

18  infringement of the '721 patent was willful and treble the jury's damages award for the '721

19  patent to $8,971,875.

20  **II.    FACTUAL BACKGROUND**

21      The '721 patent claims Apple's iconic "slide-to-unlock" feature.  That invention solves

22  the problem of "pocket dialing" for a touchscreen phone by allowing the phone to be unlocked

23  only when the user moves an "unlock image" from one predefined location to another.  (Dkt.

24  1623, Trial Tr. 598:12-601:12 (Christie); *id.* at 627:1-632:12 (Cockburn).)

25      The '721 invention was a key feature of the original iPhone.  In fact, it featured

26  prominently in the 2007 keynote address unveiling the original iPhone.  (Dkt. 1623, Trial Tr.

27  603:6-8 (Christie); PX118.)  When Steve Jobs demonstrated the slide-to-unlock invention, "the

28  audience burst into cheers."  (Dkt. 1926, Trial Tr. 2868:23-2869:2 (Cockburn).)  Given its

1   importance to defining the unique iPhone user experience, Apple chose to highlight the slide-to-

2   unlock invention in its first television advertisement for the iPhone. (Dkt. 1622, Trial Tr.

3   432:16-433:18 (Schiller); PX180.)

4        Following the success of "the unexpected competitor Apple's iPhone," which launched

5   in 2007, Samsung struggled to maintain market share. (PX149.006; PDX92.8.) By February

6   2010, the head of Samsung's mobile division lamented that the user experience of Samsung's

7   smartphones had fallen far behind that of the iPhone, and he called upon his designers and

8   engineers to take action. (PX149.006 ("the difference is truly that of Heaven and Earth").) In

9   response, Samsung embarked on an intensive effort to copy the iPhone. As reflected in

10  Samsung's own documents, Samsung's designers and engineers compared Samsung's products

11  side-by-side with the iPhone and provided specific "directions for improvement" that involved

12  copying dozens of features from the iPhone into Samsung's products. (*See, e.g.*, PX120;

13  PX121; PX157; PX219.)

14       The slide-to-unlock invention was among the many iPhone features that Samsung

15  copied. In fact, Samsung's documents specifically instructed that the unlocking mechanism in

16  Samsung's products should be made the "[s]ame as iPhone":



28  (PX121.100; *see also* PX119.011; PX121.027; PX157.020; PX219.014.)

Samsung's strategy of competition by copying was successful.  Samsung sold millions of smartphones incorporating the '721 invention.  (PX142.)  Based on the record in this case, the Federal Circuit has held that Samsung's infringement of the '721 patent caused Apple to lose market share to Samsung.  *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 644 (Fed. Cir. 2015) ("Apple loses sales because Samsung products contain Apple's patented features.").

## III.   PROCEDURAL HISTORY

Apple filed this lawsuit on February 8, 2012 to halt Samsung's infringement.  Following trial, the jury found that Samsung's Admire, Galaxy Nexus, and Stratosphere phones infringed claim 8 of the '721 patent, rejected Samsung's invalidity defense, and determined that Samsung's infringement of the '721 patent was willful.  (Dkt. 1884 at 5, 7.)  The jury awarded $2,990,625 in damages for Samsung's infringement of the '721 patent.  (*Id.* at 9.)

The court denied Samsung's post-trial motion for JMOL of invalidity and non-infringement for the '721 patent.  (Dkt. 1965 at 14-24.)  However, the court granted Samsung's motion for JMOL of no willful infringement, holding that Samsung's invalidity defense was objectively reasonable under the then-controlling standard from *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).  (Dkt. 1965 at 24-28.)  Based upon its ruling on objective willfulness, the Court did "not consider whether the jury's finding of subjective willfulness was supported by substantial evidence." (*Id.* at 25.)

On appeal, a panel of the Federal Circuit initially reversed the liability judgment for the '721 patent, holding that claim 8 was invalid as obvious.  *Apple Inc. v. Samsung Elecs. Co.*, 816 F.3d 788, 798-806 (Fed. Cir. 2016).  However, the Federal Circuit subsequently granted rehearing en banc and, by an 8-3 majority, vacated the panel's decision, upheld the validity of claim 8, and reinstated the jury's verdict.  *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1047-1058 (Fed. Cir. 2016).

While the case was on appeal, the Supreme Court decided *Halo*.  The en banc Federal Circuit vacated the judgment of no willful infringement because it was based upon the now-overruled *Seagate* standard, and remanded to this Court for further consideration of willfulness and enhanced damages in light of *Halo*.  *Id.* at 1059.

IV.    ARGUMENT

A.    **The Court Should Enter Judgment That Samsung's Infringement of the '721 Patent Was Willful.**

Under *Halo*, a determination that the defendant engaged in "egregious infringement behavior" is a prerequisite to enhanced damages under 35 U.S.C. § 284.  136 S. Ct. at 1932 ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate.").  As detailed below, the record overwhelmingly supports holding that Samsung's infringement of the '721 patent was willful.

1.    **Samsung copied the slide-to-unlock invention from Apple.**

A defendant's copying of the patented invention is strong evidence of willfulness.  *See, e.g.*, *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225-1226 (Fed. Cir. 2006) (willfulness supported by the inference of copying from engineering drawings that were "virtually duplicates" of the patentee's system); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001) (willfulness supported by record evidence showing that the defendant "copied [the patentee's] patented parts to develop the infringing devices"); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993) ("deliberate copying was strong evidence of willful infringement").

The record here established that Samsung copied the slide-to-unlock invention from the iPhone.  And this was no ordinary case of copying.  Samsung's own documents contained direct evidence of copying the '721 invention through side-by-side comparisons with the iPhone and an explicit "direction for improvement" to make Samsung's unlocking mechanism the "same as iPhone."  (PX121.100; *see also* PX119.011; PX121.027; PX157.020; PX219.014; Dkt. 1623, Trial Tr. 649:21-650:3 (Cockburn) ("I saw these documents and a great many in addition to this and my conclusion is that they copied.").)   Based on this evidence, the en banc Federal Circuit ruled that there was substantial evidence of Samsung's copying of the '721 invention.  839 F.3d at 1054 ("The record contains multiple internal Samsung presentations by different Samsung groups at different times stating that the iPhone's slide to unlock feature is better than the

various Samsung alternatives.  And many of these same presentations conclude that the direction for improvement is for Samsung to modify its unlocking mechanism to be like the iPhone.  This is substantial evidence of copying by Samsung ….” (citations omitted)).

The record also establishes that Samsung's copying was a deliberate choice intended to make Samsung's products competitive with Apple's iPhone.  After the success of the iPhone, Samsung's head of its mobile division in February 2010 demanded that Samsung's designers and engineers take immediate steps to bring Samsung's phones in line with the "standard" set by the iPhone.  (PX149.003 ("I hear things like this:  Let's make something like the iPhone.").)  Samsung's side-by-side comparisons with the iPhone, and explicit instructions to copy the iPhone's features (including the "slide-to-unlock" invention), followed shortly thereafter.  (*E.g.*, PX157.020 (March 24, 2010) (criticizing the "jolting movement" of Samsung's unlocking feature, which should be improved to be "smooth and continuous" like the iPhone); PX219.014 (May 3, 2010) (instructing engineers to "provide a hint on the lock screen about the direction and length of touch with an arrow, and also display an explanation about the screen unlocking method in text" like the iPhone); PX121.100 (May 31, 2010) (providing "direction of improvement" to make Samsung's unlocking mechanism the "same as iPhone").)  That deliberate strategy to compete by copying is precisely what *Halo* described as behavior "characteristic of a pirate."  136 S. Ct. at 1932.

**2.  Samsung continued to use the slide-to-unlock invention copied from Apple for nearly a year after this lawsuit began, despite representing that it could have implemented alternatives in "no time at all."**

In light of Samsung's deliberate strategy to copy the iPhone, Samsung's continued use of the '721 invention despite available non-infringing designs confirms its egregious misconduct.  At trial, Samsung touted its ability to design around the '721 patent in "no time at all" with alternatives that Samsung already had available when Apple filed this lawsuit.  (Dkt. 1717, Trial Tr. 1984:18-1985:1 (Greenberg).)  Indeed, Samsung represented that it did not believe it was even necessary to use the '721 invention in order to have a successful product.  (Dkt. 1622, Trial Tr. 400:17-18 (Samsung Opening Statement) ("We're selling lots of these phones without using any Apple slide to unlock feature.").)  Yet Samsung continued to infringe

1    the '721 patent for nearly a year after Apple sued.  (Dkt. 1623, Trial Tr. 654:10-11 (infringing

2    Galaxy Nexus sold "through to the 28th of January 2013").)  Given Samsung's representations

3    about the ease with which it could have designed around the '721 patent, Samsung's continued

4    use of the '721 invention that Samsung copied from the iPhone demonstrates its willfulness.

5    *See, e.g.*, *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012) (defendant

6    willfully infringed where it chose to copy the patentee "rather than adopting one of numerous

7    noninfringing designs"); *Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*, No. 3:08-cv-408 (VLB),

8    2012 WL 603268, at *11 (D. Conn. Feb. 24, 2012) (willfulness supported by evidence that the

9    infringer "created a new design … to avoid infringement, and yet continued to sell the allegedly

10   infringing design" for a year after the lawsuit commenced).[1]

11       Samsung's motivations for its continued infringement reinforce its culpability.  The trial

12   record established that Samsung's alternative designs were vastly inferior to the '721 invention

13   and were criticized by its own carriers.  (PX181.005 (noting Verizon's "negative response

14   towards our company's circle lock playing the role of the unlock visual cue"); Dkt. 1623, Trial

15   Tr. 684:22-686:20 (Cockburn).)  Without any valid justification for continuing its conduct,

16   Samsung's post-suit infringement confirms that its use of the '721 invention was part of a

17   deliberate strategy to compete unfairly with Apple.

### 3.   There is no evidence that Samsung had any subjectively held belief that its conduct was permissible at the time that it learned of the '721 patent.

20       The relevant period for assessing Samsung's subjective state of mind is when Apple

21   filed this lawsuit, which put Samsung on notice of the '721 patent and Apple's claim of

22   infringement.  *See Halo*, 136 S. Ct. at 1933 ("[C]ulpability is generally measured against the

23   knowledge of the actor at the time of the challenged conduct.").  The record contains no

24   evidence that Samsung had any subjectively held belief that the '721 patent was invalid or not

---

26   [1]    To be clear, Apple does not contend that a defendant's continued infringement during the course of a litigation is sufficient to show willfulness by itself.  But here, in the context of Samsung's deliberate copying and intentional strategy to compete with Apple using Apple's own patented inventions, Samsung's continued infringement of the '721 patent—despite readily available alternatives—is evidence of willfulness.

infringed at that time.  Indeed, the evidence that Samsung deliberately copied the '721 invention in order to directly compete with the iPhone suggests that Samsung had no legitimate justification for its actions.

Even at trial, Samsung presented no non-infringement defense for two of the three products found to infringe the '721 patent.  (Dkt. 1926, Trial Tr. 2859:22-2860:4 (Cockburn).)  And although Samsung argues that it presented "a legitimate invalidity defense" to the '721 patent (Dkt. 2186 at 12), Samsung presented no evidence of its subjective belief in that defense as of the date that it learned of the '721 patent.  The fact that Samsung may have later-developed defenses does not negate its willful conduct, as the Supreme Court explained in *Halo*.  *See* 136 S. Ct. at 1933.

### 4.      Samsung's challenges to willfulness fail.

Samsung has failed to provide a legitimate reason for the Court not to hold its infringement willful here.  On the contrary, as explained below, Samsung's arguments repeatedly misrepresent the applicable law and the facts of this case.

#### a.      Samsung's conduct before the issuance of the '721 patent is relevant to willfulness.

Samsung argues that the evidence of its copying is irrelevant because it pre-dates the issuance of the '721 patent.  (Dkt. 2186 at 7-8.)  But that is not the law.  *See, e.g.*, *L.A. Gear*, 988 F.2d at 1127 (upholding willfulness based on pre-issuance copying); *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978-979 (Fed. Cir. 1986) (rejecting argument that "the allegedly improper copying took place *before* the patent was issued and therefore cannot be considered" and noting that the patentee sued shortly after the patent issued and the defendants' infringement continued for at least four months after the litigation began).

Samsung's pre-issuance copying demonstrates Samsung's state of mind with respect to the slide-to-unlock invention, and Samsung's decision to continue infringing for nearly a year after Apple sued for infringement of the '721 patent confirms Samsung's culpability.  (*See supra* pp. 5-7.)  A party that copies a competitor's product does so at its own peril, and that is especially true here where Apple's keynote address unveiling the iPhone (during which Apple demonstrated

1   its slide-to-unlock invention) was coupled with an announcement that Apple had applied for over

2   200 patents covering the device.  (PX118.)  The fact that Samsung copied the slide-to-unlock

3   invention despite that known risk makes its year-long refusal to cease its post-suit infringement

4   all the more culpable.

5       None of Samsung's cited cases hold otherwise.  (*See* Dkt. 2186 at 8.)  *Gustafson, Inc. v.*

6   *Instersystems Industrial Products, Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990), expressly states that

7   there is no "*per se* rule" against willful infringement "when manufacture began before issuance of

8   a patent" and discusses several cases where the Federal Circuit upheld willfulness based upon

9   pre-issuance conduct.  *Lift-U v. Ricon Corp.*, No. 10-cv-1850-LHK, 2012 WL 5303301, at *11-12

10  (N.D. Cal. Oct. 25, 2012), relied on *Seagate*'s language suggesting that a party must move for a

11  preliminary injunction in order to present a claim of willfulness based solely on post-filing

12  infringement.  Any such rule was abrogated by *Halo*.  136 U.S. at 1934 ("[W]e eschew any rigid

13  formula for awarding enhanced damages under § 284); *see Mentor Graphics Corp. v. EVE-USA,*

14  *Inc.*, 851 F.3d 1275, 1295-1296 (Fed. Cir. 2017).  It is also inapplicable here because the

15  evidence of willfulness is not purely post-suit, and because Apple did seek a preliminary

16  injunction (Dkt. 10).  Finally, Samsung's reliance on *Adrea, LLC v. Barnes & Noble, Inc.*, No.

17  13-cv-4137 (JSR), 2017 WL 44954, at *6-7 (S.D.N.Y. Jan. 3, 2017), is misplaced.  In *Adrea*,

18  the jury found no willful infringement and the district court recognized that there was no

19  evidence of copying.  *Id.*  Here, the procedural posture (where the jury found willfulness) and

20  the trial record (which contains plentiful evidence of copying (*see supra* pp. 5-6)) are different,

21  and warrant a different result.

   **b.      Samsung's lack of pre-suit knowledge of the '721 patent does
            not excuse its post-suit willful infringement, which was a
            continuation of its pre-suit deliberate copying.**

24      Samsung also argues that it did not know of the '721 patent prior to being sued.  (Dkt.

25  2186 at 6-7.)  Pre-suit knowledge, however, is not a prerequisite for willfulness.  *See Mentor*

26  *Graphics*, 851 F.3d at 1295-1296 (rejecting argument that willfulness could not be based on

27  post-suit infringement because *Halo* dispensed with rigid rules limiting enhanced damages);

28  *Huawei Techs. Co. v. T-Mobile US, Inc.*, Nos. No. 2:16-cv-52-JRG-RSP *et al.*, 2017 WL

1129951, at *4 (E.D. Tex. Feb. 21, 2017) ("[T]here is nothing in *Halo* suggesting that pre-suit knowledge is required for willfulness."); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016) (allowing claim for willfulness based solely on post-filing conduct "[u]nder the less rigid standard announced in *Halo*").

Here, Samsung's lack of pre-suit knowledge of the patent does not excuse its continued use of the slide-to-unlock invention copied directly from the iPhone after it learned of the '721 patent.  Indeed, it is precisely because Samsung copied the iPhone in the first place that its post-suit refusal to remove the infringing feature fits *Halo*'s description of "the 'wanton and malicious pirate'" whose continued infringement was intended "to steal the patentee's business."  136 S. Ct. at 1932.

### c. Samsung's argument that it did not copy is foreclosed by the law of the case doctrine and is contrary to the trial record.

Samsung's argument that the trial record does not "show that Samsung copied the iPhone and does not show that Samsung copied the slide-to-unlock feature that is claimed in the patent" (Dkt. 2186 at 8) is completely untenable.

Samsung's copying of the '721 patent has been conclusively established in this case. The Federal Circuit's en banc decision expressly held that there was "substantial evidence of copying by Samsung" for the '721 patent.  839 F.3d at 1054.  Indeed, the Federal Circuit recognized that was not even disputed by Samsung on appeal.  *Id.* ("Samsung does not dispute in its briefing that the jury heard substantial evidence that it copied the iPhone's claimed features.  In other words, Samsung does not challenge on appeal that substantial evidence exists in the record that Samsung copied Apple's slide to unlock feature, nor does it challenge on appeal that this evidence of copying supports a conclusion that claim 8 would not have been obvious.").[2]  That is the law of the case, and Samsung cannot now contest its copying after that issue has already been decided.  *See Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697 (Fed.

---

[2]      The Federal Circuit also acknowledged "the strength of the evidence of copying" for the '721 patent in its permanent injunction decision.  809 F.3d at 643.

Cir. 2001) ("The doctrine of law of the case generally bars retrial of issues that were previously resolved.").

Samsung's argument that it did not copy the iPhone or the slide-to-unlock invention also cannot be reconciled with the record evidence.[3]  Samsung's own documents contain side-by-side comparisons with the iPhone, specifically refer to the slide-to-unlock invention, and instruct Samsung's engineers to make the unlocking mechanism in Samsung's phones the "same as iPhone."  (PX119.011; PX121.027, .100; PX157.020; PX219.014.)   Samsung's argument (Dkt. 2186 at 9) that those documents do not relate to the specific models found to infringe or that they post-date the design of the infringing phones does not diminish Samsung's culpability.  Those documents show Samsung's mindset with respect to the slide-to-unlock invention, and Samsung's continued sale of infringing phones after it undisputedly knew about the '721 patent demonstrates Samsung's callous disregard for Apple's patent rights.  It is perverse for Samsung to argue that the fact that its copying was more longstanding and widespread than the infringement adjudicated at trial somehow defeats willfulness.

There is also no basis for Samsung's argument that the trial record failed to "demonstrate that Samsung made an 'effort[] to replicate a specific product,' as required to show copying."  (Dkt. 2186 at 9.)  If the hundreds of pages of Samsung internal documents meticulously comparing Samsung's phones to the iPhone is not "an effort to replicate a specific product," nothing is.  Indeed, Samsung's cited authority—*Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010)—only highlights that the evidence of copying here was sufficient.  *Wyers*'s exemplary list of evidence sufficient to establish copying corresponds exactly with the trial record in this case.  *Id.* (copying "may be demonstrated through internal company

---

[3]     Samsung argues that "Apple concedes that it has no evidence Samsung copied the '721 patent."  (Dkt. 2186 at 7.)  To the extent that Samsung is suggesting that Apple was required to offer proof that Samsung consulted the '721 patent itself in designing its products, that is not the law.  Copying an embodying product (as Samsung did here) is sufficient proof of copying.  *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 n.7 (Fed. Cir. 1992) (enhancement may be based upon "copying the commercial embodiment, not merely the elements of a patent claim"); *Inventio AG v. Thyssenkrupp Elevator Corp.*, No. 08-874-RGA, D.I. 552 at 2 (D. Del. Feb. 7, 2014) (recognizing that "[c]opying" may be demonstrated by "the replication of a specific product" that "embodi[es] … the relevant patent").

1 documents, direct evidence such as disassembling a patented prototype, photographing its

2 features, and using the photograph as a blueprint to build a replica, or access to the patent

3 product combined with substantial similarity to the patented product").

4

> **d.**     **Samsung's post-suit conduct confirms its willful infringement.**

5 Relying on the now-abrogated *Seagate* decision and pre-*Halo* cases applying it,

6 Samsung argues that "post-filing conduct alone is legally insufficient to prove willfulness."

7 (Dkt. 2186 at 10.)  But that is precisely the type of rigid rule that *Halo* abandoned.  136 S. Ct. at

8 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284.").  Even

9 the Federal Circuit's post-*Halo* decision in *Mentor Graphics* that Samsung cites (Dkt. 2186 at

10 10) recognizes that such a rigid approach is impermissible.  851 F.3d at 1295-1296 (reversing

11 district court's ruling that the patentee could not rely on post-suit conduct as contrary to *Halo*).[4]

12 Samsung's argument about post-suit conduct is not the law post-*Halo*.

13 Samsung's assertion that the evidence of willfulness in this case was purely post-suit is

14 also contrary to the record, which contains abundant evidence of Samsung's ***pre-suit*** copying.

15 (*See supra* pp. 5-6.)   That pre-suit evidence is relevant because it frames the context for

16 Samsung's post-suit actions.   Despite copying the slide-to-unlock invention from Apple,

17 Samsung was recalcitrant upon learning of the '721 patent.   Samsung continued its

18 infringement for nearly a year, despite existing alternatives that it represented could have been

19 implemented in "no time at all."  (Dkt. 1717, Trial Tr. 1984:18-1985:1 (Greenberg).)  The pre-

20 suit and post-suit evidence in this case establishes a single course of conduct that confirms

21 Samsung's culpability.

22 In any case, even under Samsung's argument that this case involves only post-suit

23 conduct, there is substantial evidence to hold that Samsung's infringement was willful, given

24 Samsung's deliberate choice to continue using the slide-to-unlock feature copied from the

25

26 ───────────────

27 [4]     *Mentor Graphics* also held that the conduct at issue was not actually post-suit, which was an additional reason that the district court erred in relying on *Seagate*'s statements concerning the need for pre-suit evidence in certain circumstances.  851 F.3d at 1295.

28

1  iPhone to compete with Apple, despite its representations concerning alternatives that could
2  have been implemented in "no time at all." (*See supra* pp. 6-7.)

3       Samsung argues that its post-suit infringement was not willful because the Court's
4  preliminary injunction decision held that Apple had not demonstrated a likelihood of success in
5  light of Samsung's invalidity defense for the '721 patent. (Dkt. 2198 at 10-11.) But Samsung
6  has presented no evidence that it "act[ed] on the basis of the defense or was even aware of it" at
7  the time it learned of the '721 patent. *Halo*, 136 U.S. at 1933. Without such evidence,
8  Samsung's argument concerning its invalidity defense is simply an improper attempt to
9  resurrect *Seagate*'s objective prong and "escape any comeuppance under § 284 solely on the
10  strength of [its] attorney's ingenuity." *Id.*

11      Nor did Samsung take any reasonable measures to mitigate its post-suit infringement.
12  Samsung argues that "no new model released by Samsung after this suit was filed in February
13  of 2012 has been accused of infringing the '721 patent." (Dkt. 2186 at 11.) That is incorrect.
14  Samsung released the infringing Galaxy Nexus on April 5, 2012—two months ***after*** this lawsuit
15  was filed. (Dkt. 1623, Trial Tr. 654:10-11 (Cockburn).) Contrary to Samsung's argument that
16  "there is no evidence that Samsung continued to sell infringing versions of these devices for
17  any significant amount of time after the preliminary injunction decision" (Dkt. 2198 at 11),
18  Samsung continued to sell the infringing Galaxy Nexus ***nearly seven months later***. (Dkt. 1623,
19  Trial Tr. 654:10-11 (Cockburn).) That is a significant amount of time for a feature that
20  Samsung argued could have been removed in "no time at all." (Dkt. 1717, Trial Tr. 1984:18-
21  1985:1 (Greenberg).) In addition, Samsung's assertion that it had a "strong" non-infringement
22  defense for the Galaxy Nexus (Dkt. 2186 at 11) is belied by Samsung's own actions. Samsung
23  can hardly cast that defense as "strong" when it did not even consider the defense worthy of
24  raising on appeal. And in any case, Samsung has presented no evidence that it acted on any
25  belief in the strength of that defense.

26      **B.    Samsung's Egregious Misconduct Warrants Treble Damages.**

27      Under 35 U.S.C. § 284, the Court in its discretion "may increase the damages up to three
28  times the amount found or assessed" for Samsung's willful infringement of the '721 patent.

Although the Supreme Court has cautioned that enhanced damages "are not to be meted out in a typical infringement case," *Halo*, 136 S. Ct. at 1932, this is no ordinary case.  On the contrary, this case presents precisely the type of "deliberate," "flagrant" infringement "characteristic of a pirate"—*i.e.*, "for no purpose other than to steal the patentee's business"—that *Halo* held should be punished.  136 S. Ct. at 1932.

As described above (pp. 5-6), Samsung engaged in a deliberate strategy of copying Apple's enormously successful products in order to compete directly with Apple in the smartphone market, and sold millions of phones that infringe the '721 patent.   The consequences of that infringement were substantial; indeed, the Federal Circuit held that Samsung's infringement of the '721 patent caused irreparable injury to Apple's competitive standing.   809 F.3d at 644 ("Apple loses sales because Samsung products contain Apple's patented features.").  Nor was this an isolated incident.  Consistent with its reputation as a "fast follower," Samsung has been found to infringe 11 different Apple patents in the United States alone.  If enhanced damages are not appropriate in this case of deliberate copying by a direct competitor, it would be difficult to imagine a situation where enhancement would be warranted.  Accordingly, for the reasons explained below, Apple respectfully requests that the Court enhance the jury's damages award for the '721 patent to $8,971,875—*i.e.*, the fullest extent permitted under 35 U.S.C. § 284.

### 1.    The *Read* factors overwhelming support enhancement.

Although there is no "rigid formula for awarding enhanced damages," *Halo*, 136 S. Ct. at 1934, the factors provided in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-827 (Fed. Cir. 1992), remain "useful guideposts," *Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13-cv-3999-BLF, 2016 WL 3880774, at *16 (N.D. Cal. July 18, 2016).  The *Read* factors include:

> (1) "whether the infringer deliberately copied the ideas or design of another";
>
> (2) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed";
>
> (3) "the infringer's behavior as a party to the litigation";
>
> (4) "[d]efendant's size and financial condition";

(5) "[c]loseness of the case";

(6) "[d]uration of defendant's misconduct";

(7) "[r]emedial action by the defendant";

(8) "[d]efendant's motivation for harm"; and

(9) "[w]hether defendant attempted to conceal its misconduct."

970 F.2d at 827.  Those factors overwhelmingly support enhancement in this case.

### a.    Factor 1:  Deliberate copying

As discussed above (pp. 5-6), there was abundant evidence of Samsung's deliberate copying of the '721 invention, including internal Samsung documents with side-by-side comparisons to the iPhone and express instructions to make the unlocking mechanism of Samsung's phones the "same as iPhone."  Indeed, the en banc Federal Circuit held that there was "substantial evidence of copying by Samsung" for the '721 patent.   839 F.3d at 1054.  Samsung's deliberate copying was part of a strategy to compete with Apple, and this factor thus weighs heavily in favor of enhancement.  *Liquid Dynamics*, 449 F.3d at 1225-1226 (affirming enhanced damages where record established copying); *Joyal Prods., Inc. v. Johnson Elec. N. Am., Inc.*, No. 04-5172 (JAP), 2009 WL 512156, at *4 (D.N.J. Feb. 27, 2009) (awarding treble damages where the defendant "made copies of [the patentee's] machines so it could replicate [the] patented method").

### b.    Factor 2:  The infringer's investigation and good-faith belief in non-infringement or invalidity

There is no evidence in the record that Samsung did any investigation upon learning of the '721 patent or subjectively believed that the patent was not infringed or invalid at the time.  In fact, Samsung presented no non-infringement defense at trial for the infringing Admire and Stratosphere phones.  (Dkt. 1926, Trial Tr. 2859:22-2860:4 (Cockburn).)

Samsung argues that it presented "a legitimate invalidity defense" for the '721 patent.  (Dkt. 2186 at 12.)  But Samsung has not presented any evidence that it based its actions on its subjective belief in that defense, which is the relevant question under *Halo*.  136 S. Ct. at 1933.  The lack of such evidence is notable in this case given that Samsung copied the slide-to-unlock feature from the iPhone.  Samsung's direct copying from a competing product without a

justification is precisely the type of conduct that *Halo* recognized enhanced damages are intended to punish.  136 S. Ct. at 1932 (explaining that enhanced damages should be available to punish "the 'wanton and malicious' pirate who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business").

Accordingly, the second *Read* factor supports enhancement in this case.

### c.  Factor 3:  The infringer's behavior as a party to the litigation

Apple's motion for enhanced damages is focused on Samsung's deliberate copying and does not rely on litigation misconduct to support enhancement.  The third *Read* factor is thus neutral in the enhancement analysis.  *See, e.g.*, *Kowalski v. Mommy Gina Tuna Resources*, Nos. 05-679-BMK *et al.*, 2009 WL 855976, at *2 (D. Haw. Mar. 30, 2009) (awarding enhanced damages despite finding *Read* Factor 3 "neutral"); *IMX, Inc. v. Lendingtree, LLC*, 469 F. Supp. 2d 203, 220 (D. Del. 2007) (same).

### d.  Factor 4:  Defendant's size and financial condition

Samsung's size and financial condition, standing alone, do not require enhancement.  At trial, however, Samsung touted its size to demonstrate its ability to design around the '721 patent. (*See, e.g.*, Dkt. 1929, Trial Tr. 3336:2-8 (Samsung Closing Statement) ("You know, we're talking about Samsung, one of the, you know, greatest, largest, most important technology companies in the world.  They could do these changes, if they had to do it, in one month.  Here's the evidence on that – slide 10 – the testimony of Dr. Greenberg.  He said that, you know, the circle unlock, we already had it, we could simply swap that out.").)  Yet, as discussed above (pp. 6-7), Samsung continued to use the slide-to-unlock invention copied from the iPhone for nearly a year after this lawsuit began.  Accordingly, this factor favors enhancement in this case.

### e.  Factor 5:  Closeness of the case

This was not a close case on the '721 patent.  Samsung presented no non-infringement defense for the Admire and Stratosphere phones and did not appeal the infringement verdict for any of its infringing phones.  Samsung points to the Federal Circuit panel's decision as evidence of the strength of its invalidity defense (Dkt. 2186 at 12), but that decision has been vacated by

the en banc Federal Circuit.   839 F.3d at 1040.   Accordingly, this factor also supports enhancement.

### f.      Factor 6:  Duration of misconduct

As discussed above (pp. 6-7), Samsung infringed the '721 patent for nearly a year after Apple commenced this lawsuit, despite representing that it had alternatives available that it could implement in "no time at all."   Although a defendant's continued infringement during the pendency of a litigation does not warrant enhancement on its own, the duration of Samsung's post-suit infringement here demonstrates Samsung's culpability because it was a continuation of Samsung's strategy to compete with Apple using a feature deliberately copied from the iPhone. In these circumstances, where Samsung admittedly could have switched to a non-infringing alternative immediately, its continued infringement using a feature copied directly from the iPhone supports enhancement.

### g.      Factor 7:  Remedial action by the defendant

Samsung took no remedial action upon learning of the '721 patent.  Samsung argues that "no new model released by Samsung after this suit was filed in February of 2012 has been accused of infringing the '721 patent." (Dkt. 2186 at 11.)  But that is incorrect.  The infringing Galaxy Nexus was released on April 5, 2012 (*i.e.*, two months ***after*** Apple sued).  (Ex. 1623, Trial Tr. 654:10-11 (Cockburn).)  And Samsung's assertion that it did not continue to sell the infringing phones "for any significant amount of time after the preliminary injunction decision" (Dkt. 2186 at 11) is also incorrect.  Samsung continued selling the infringing Galaxy Nexus until January 28, 2013—nearly seven months ***after*** the preliminary injunction decision.  (Ex. 1623, Trial Tr. 654:10-11 (Cockburn).)  That is a significant amount of time in light of Samsung's representation that removing the infringing feature would have taken "no time at all."  (Dkt. 1717, Trial Tr. 1984:18-1985:1 (Greenberg).)  And Samsung's lack of remedial action confirms Samsung's culpability in this case because Samsung failed to act after having copied the feature from the iPhone in the first place.  Given Samsung's failure to take the steps that it represented could have been easy implemented to remove a feature copied directly from the iPhone, this factor also supports enhancement in this case.

### h.      Factor 8:  Defendant's motivation for harm

The eighth *Read* factor is particularly relevant in a case like this between direct competitors.  *See Funai Elec. Co. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1116-1117 (N.D. Cal. 2009) (applying this factor where "the infringer engages in infringing conduct to gain an edge over the patentee in a competitive market").  Indeed, there could hardly be a more competitive environment than this.  (Dkt. 1622, Trial Tr. 471:10-472:20 (Schiller) (describing the "extremely competitive environment with Samsung"); Dkt. 1938, Trial Tr. 2433:9-17 (Chevalier) ("Apple and Samsung are fierce competitors in this market ...."); Dkt. 1716, Trial Tr. 1635:19-25 (Sohn) & PX 216.003 ("Beating Apple is no longer merely an objective.  It is our survival strategy."); PX 3002 (DiCarlo Dep.) (identifying Apple as Samsung's "largest smartphone competitor in the – in the US market").)

Samsung's infringement of the '721 patent was an effort to gain an advantage in that competitive environment.  As described above (p. 5-6), the documents with Samsung's side-by-side comparisons with the iPhone and instructions to copy followed immediately after the head of Samsung's mobile division called upon Samsung and its engineers to stop "dozing off" and to take immediate action to make its products competitive with "the unexpected competitor Apple's iPhone."  (PX149.006.)  And that strategy was successful.  As the Federal Circuit recognized, Apple lost sales because of Samsung's infringement of the '721 patent.  809 F.3d at 644 ("Apple loses sales because Samsung products contain Apple's patented features.").

Because Samsung's copying of Apple's slide-to-unlock invention arose in the context of an extremely competitive environment and the evidence demonstrates that Samsung copied its competitor in an effort to increase its market share, this factor weighs heavily in favor of enhancement.  *See, e.g.*, *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, No. 5:11-cv-761 (GLS/DEP), 2016 WL 6537977, at *8 (N.D.N.Y. Nov. 3, 2016) (awarding enhanced damages where infringement by a competitor was "intended to harm [the patentee] by diverting business away from [it]"); *Dominion Res. Inc. v. Alstom Grid, Inc.*, No. 15-224, 2016 WL 5674713, at *23 (E.D. Pa. Oct. 3, 2016) (finding *Read* Factor 8 favored enhancement based upon the defendant's "touted desire for a competitive advantage" over the patentee).

### i.      Factor 9:  Concealment

Samsung did not conceal its infringement, but that does not diminish its culpability.  The whole purpose of Samsung's copying of Apple's patented slide-to-unlock invention was to include a desirable feature in Samsung's phones that consumers would notice.  809 F.3d at 644 ("Apple established that customers wanted, preferred, and would pay extra for these features.  Apple established that Samsung believed these features were important and copied them.  The evidence establishes that Samsung's carriers and users wanted these features on phones.  The evidence establishes that Apple believed these features were important to customer demand.").  And consumers took notice.  Samsung earned a reputation as a "fast follower" because consumers recognized that it had copied features from Apple.  (Dkt. 1716, Trial Tr. 1696:2-1698:11 (Pendleton); DX431.005.)

Because Samsung's competitive strategy depended upon consumers noticing its use of the infringing feature, Samsung's lack of concealment is not a mitigating factor in this case.

### 2.      The unique circumstances of this case warrant treble damages.

There could not be a stronger case for enhancement than this.  Samsung's own internal documents show that it deliberately copied the slide-to-unlock invention from Apple, its fiercest competitor.  That copying was part of a deliberate strategy to "Beat Apple" in the smartphone market.  And when confronted with its infringement, Samsung was completely unapologetic.  Despite touting non-infringing alternatives that it could have implemented in "no time at all," Samsung continued using the slide-to-unlock invention copied from the iPhone for nearly a year after learning of the '721 patent and has presented no evidence of any subjectively held belief in the '721 patent's non-infringement or invalidity at the time that it learned of the patent.  If enhanced damages are not warranted here, it is difficult to imagine a case in which they could be assessed.  Accordingly, the Court should award treble damages for Samsung's infringement of the '721 patent.

1

**V.     CONCLUSION**

2

        For the foregoing reasons, Apple respectfully requests that the Court hold that

3

Samsung's infringement of the '721 patent was willful and award treble damages for that

4

infringement pursuant to 35 U.S.C. § 284.

5

6

Dated: April 28, 2017                    WILMER CUTLER PICKERING HALE
                                         AND DORR LLP

7

8

                                         By:  */s/ William F. Lee*
                                              William F. Lee

9

                                              Attorneys for Plaintiff
                                              APPLE INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that a true and correct copy of the above and foregoing document has been

3   served on April 28, 2017, to all counsel of record who are deemed to have consented to electronic

4   service via the Court's ECF system per Civil Local Rule 5-1.

5

                                        */s/ William F. Lee*
6                                        William F. Lee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28