QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK<br><br>**SAMSUNG'S REPLY REGARDING WILLFULNESS AND OPPOSITION REGARDING ENHANCED DAMAGES** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.     APPLE FAILS TO ESTABLISH THAT SAMSUNG HAD THE REQUISITE
       KNOWLEDGE OF THE '721 PATENT BEFORE BEING SUED .....................................2

      A.     Samsung's Lack of Knowledge of the '721 Patent Precludes Willfulness As
          A Matter of Law Based On Presuit Conduct.........................................................2

      B.     Apple's Purported Evidence of Pre-Suit Copying Fails To Establish
          Willfulness ...........................................................................................................4

II.    SAMSUNG'S POST-SUIT CONDUCT CANNOT PROVE WILLFUL
       INFRINGEMENT .........................................................................................................9

      A.     Samsung's Post-Suit Conduct Is Insufficient to Show Willfulness As A
          Matter of Law .....................................................................................................10

      B.     Samsung's Post-Suit Conduct Is Not "Characteristic of a Pirate" ...........................12

III.    ENHANCED DAMAGES ARE NOT WARRANTED .....................................................13

      A.     Apple's Purported Copying Evidence Can Not Support Enhanced Damages .........14

      B.     Samsung Had a Reasonable Defense That The '721 Patent Was Invalid ...............14

      C.     The Third *Read* Factor Weighs Against Enhancement ...........................................15

      D.     Samsung's Size and Financial Condition Do Not Favor Enhanced Damages .........16

      E.     The Closeness of This Case Weighs Against Enhanced Damages ..........................16

      F.     The Short Duration Of Any Misconduct Weighs Against Enhanced
          Damages .............................................................................................................17

      G.     Samsung's Remedial Actions Weigh Against Enhancement...................................17

      H.     The Absence Of A Motivation to Harm Weighs Against Enhanced
          Damages .............................................................................................................18

      I.     The Ninth *Read* Factor Weighs Against Enhancement...........................................18

CONCLUSION ..................................................................................................................19

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

5
*Adrea, LLC v. Barnes & Noble*,
--- F. Supp. 3d. ---, 2017 WL 44954 (S.D.N.Y. Jan. 3, 2017) ........................4, 5, 6, 7, 8, 11, 13

6

7
*Apple Inc. v. Samsung Elecs. Co.*,
816 F.3d 788 (Fed. Cir. 2016)..................................................................................6, 14

8
*Apple Inc. v. Samsung Elecs. Co.*,
839 F.3d 1034 (2016) ..................................................................................................8

9

10
*CG tech. Dev., LLC v. FanDuel, Inc.*,
2017 WL 58572 (D. Nev. Jan. 4, 2017) ........................................................................10

11
*Continental Circuits LLC v. Intel Corp.*,
2017 WL 679116 (D. Ariz. Feb. 21, 2017) ....................................................................4

12

13
*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ....................................................................................7

14
*DermaFocus LLC v. Ulthera, Inc.*,
201 F. Supp. 3d 465 (D. Del. 2016) ..............................................................................3

15

16
*Dorman Prods., Inc. v. Paccar, Inc.*,
201 F. Supp. 3d 663 (E.D. Pa. 2016) ..........................................................................10

17
*Finjan, Inc. v. Blue Coat Systems, Inc.*,
2016 WL 3880774 (N.D. Cal. July 18, 2016) ............................................13, 14, 15, 17, 18

18

19
*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
2009 WL 3064800 (M.D. Fla. Sept. 22, 2009) ............................................................17

20
*Huawei Techs. Co. v. T-Mobile US, Inc.*,
2017 WL 1129951 (E.D. Tex. Feb. 21, 2017) & ............................................................3

21

22
*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012) ..................................................................................12

23
*Kaufman Co. v. Lantech, Inc.*,
807 F.2d 970 (Fed. Cir. 1986) ......................................................................................6

24

25
*Knorr-Bremse Systeme v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004) ....................................................................................6

26
*L.A. Gear, Inc. v. Thom McAn Shoe Company*,
988 F.2d 1117 (Fed. Cir. 1993) ................................................................................6, 7

27

28
*Lift-U v. Ricon Corp.*,
2012 WL 5303301 (N.D. Cal. Oct. 25, 2012) ............................................1, 2, 4, 5, 7, 8, 9, 16

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006) ................................................................................7

*Nanosys, Inc. v. QD Vision, Inc.*,
   2016 WL 4943006 (N.D. Cal. Sept. 21, 2016) ..........................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   2017 WL 130236 (N.D Cal. Jan. 13, 2017) ..........................................4, 15, 16, 17, 18

*Radware, Ltd. v. F5 Networks, Inc.*,
   2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ....................... 4, 5, 7, 8, 10, 11, 13-16

*Read Corp. v. Portec, Inc.*,
   970 F.2d 816 (Fed. Cir. 1992) ..................................1, 3, 13, 14, 15, 16, 17, 18

*Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*,
   2012 WL 603268 (D. Conn. Feb. 24, 2012) ............................................................12

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ......................................................................5, 9, 10

*State Indus., Inc. v. AO Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ..............................................................................5, 7

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ............................................................................ 2, 3

*WesternGeco LLC v. ION Geophysical Corp.*
   837 F.3d 1358 (Fed. Cir. 2016) ......................................................................13, 15

**Statute**

35 U.S.C. § 284 ...........................................................................................................11

1      Pursuant to the Court's Case Management Order of March 14, 2017 (Dkt. 2183), following

2  remand from the United States Court of Appeals for the Federal Circuit, Samsung hereby submits

3  its combined reply brief on willfulness and opposition to Apple's request for enhanced damages

4  concerning Apple's U.S. Patent No. 8,046,721 (the "'721 patent").

5                                    **INTRODUCTION**

6      Apple's claim of willfulness fails as a matter of law, and nothing in Apple's responsive

7  brief demonstrates otherwise.  Despite conceding that "[t]he relevant period for assessing

8  Samsung's subjective state of mind is when Apple filed this lawsuit, which put Samsung on notice

9  of the '721 patent," (Dkt. 2191 at 7), Apple relies primarily on purported evidence of *pre-suit*

10  copying.  Indeed, the purported evidence of copying — the centerpiece of Apple's brief —

11  preceded the October 2011 issuance of the '721 patent, rendering it irrelevant; one cannot willfully

12  infringe a patent that does not exist.  This very Court has recognized that copying evidence that

13  predates a patent's issuance is not probative.  *Lift-U v. Ricon Corp.*, 2012 WL 5303301, at *12

14  (N.D. Cal. Oct. 25, 2012) (granting partial summary judgment that defendant's pre-suit conduct

15  could not have been willful because it did not know of the patents).

16      Furthermore, the law is well-established that where, as here, a patentee relies on pre-suit

17  conduct to establish willfulness, pre-suit knowledge of the patent is required.  Conspicuously

18  absent from Apple's brief is any mention of *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL

19  4427490 (N.D. Cal. Aug. 22, 2016) (granting JMOL that insufficient evidence supported jury's

20  willful infringement verdict because of lack of pre-suit knowledge of the patent) — a post-*Halo*

21  case from this District, cited by Samsung in its opening brief (Dkt. 2186 at 7, 8, 9) that confirms

22  this principle.  Because Apple has conceded that it cannot establish that Samsung had knowledge

23  of the '721 patent prior to this lawsuit, its claim for willfulness based on pre-suit conduct fails as a

24  matter of law.

25      The other method to establish willfulness is based on *post-suit* conduct, although Apple

26  does not and cannot dispute that post-suit willfulness is reserved for exceptional circumstances —

27  none of which are present here.  To the contrary, once sued, Samsung took steps to mitigate

28  infringement and defended itself — which it has the right to do.  Indeed, this Court found on

1   JMOL that Samsung's invalidity defense was objectively reasonable.  Dkt. 1965 at 25.

2   Furthermore, on appeal to the Federal Circuit, the initial panel of three judges held unanimously

3   that the '721 patent was obvious, thus demonstrating that to those judges, Samsung's defense was

4   not just reasonable but fully successful.  Samsung's litigation defense and conduct after being sued

5   are not the actions of a pirate.  They are the opposite.  Furthermore, Apple is demonstrably wrong

6   when it alleges that Samsung released any new products after the filing the lawsuit that were found

7   to infringe the '721 patent.

8   　　　　Because subjective willfulness is a prerequisite to enhanced damages, the Court need not

9   consider the *Read* factors if it determines that insufficient evidence supported the jury's

10  determination of subjective willfulness.  Nonetheless, if the Court reaches them, none of the *Read*

11  factors favor enhanced damages here.  This is not an egregious case of a defendant thumbing its

12  nose at patent rights. Instead it was ultimately a hard fought but run-of-the-mill infringement

13  action.  Samsung had objectively reasonable defenses, and the copying evidence upon which

14  Apple pins its brief occurred prior to the issuance of the patent, making it — even if proven —

15  characteristic of legitimate competition, not piracy of a (then non-existent) intellectual property

16  right.

17  　　　　　　　　　　　　　　　　　**ARGUMENT**

18  　　　　Critical to the analysis of willfulness, the law establishes a clear dividing line between a

19  defendant's actions *before* being sued, and a defendant's actions *after* it has been sued when it has

20  the right to conduct discovery and mount and rely on its litigation defenses.  Apple's failure to

21  differentiate between these two time periods, and its insistence on focusing on Samsung's conduct

22  in 2010 — ***before the patent issued*** — dooms its request for willfulness and enhanced damages.

23  **I.    APPLE FAILS TO ESTABLISH THAT SAMSUNG HAD THE REQUISITE**
24  　　　**KNOWLEDGE OF THE '721 PATENT BEFORE BEING SUED**

25  　　　　**A.    Samsung's Lack of Knowledge of the '721 Patent Precludes Willfulness As A**
    　　　　　　　　**Matter of Law Based On Presuit Conduct**

26  　　　　Apple fails to refute Samsung's showing in its opening brief (Dkt. 2186 at 6-7), that

27  Samsung could not have willfully infringed the '721 patent because Apple has no evidence that

28  Samsung knew of the '721 patent at the time of infringement.  As this Court has recognized "[t]o

1    willfully infringe *a patent*, the patent must exist and one must have knowledge of it." *Lift-U v.*

2    *Ricon Corp.*, 2012 WL 5303301, at *12 (N.D. Cal. Oct. 25, 2012) (Koh, J.).  The Supreme Court's

3    decision in *Halo* did not disturb this important and longstanding rule.  To the contrary, as the

4    Federal Circuit stated in *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), post-

5    *Halo* "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to

6    enhanced damages."  Apple's responsive brief fails to even acknowledge *WBIP*, or its

7    confirmation that willfulness requires knowledge.

8           Unable to dispute that knowledge of the patent remains a prerequisite to a finding of

9    willful infringement, Apple makes a strained attempt to argue (Dkt. 2191 at 9-10) that "[p]re-suit

10   knowledge … is not a prerequisite for willfulness."  But pre-suit knowledge *is* a prerequisite to

11   willfulness where, as here, a patentee relies on pre-suit conduct to establish willfulness, as the

12   Federal Circuit has confirmed.  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

13   In *WBIP*, the Federal Circuit expressly considered the defendant's pre-suit knowledge, noting that

14   the defendant did "not contest that it, in fact had *pre-suit* knowledge of the patents in suit."  *Id.* at

15   1341 (emphasis added).  This is also evident from Apple's failure to address *Radware, Ltd. v. F5*

16   *Networks, Inc.*, which Samsung repeatedly cited in its opening brief (Dkt. 2186 at 7, 8, 9), and

17   which also confirms that *pre-suit* knowledge is required here.  2016 WL 4427490 at *3.  Indeed,

18   applying *Halo*, the court in *Radware* held that there was "insufficient evidence to support [a]

19   jury's willfulness finding" *precisely because* the plaintiff failed to establish that the defendant had

20   pre-suit knowledge of the patent.  *Id.* at *3-5 ("It is undisputed that [the plaintiff] never actively

21   informed [the defendant] of any of its patents or patent applications before [the plaintiff] filed this

22   lawsuit in May 2013.").  *WBIP* and *Radware* require the same conclusion in this case — that there

23   is no willfulness because Samsung had no knowledge of the '721 patent at the time of

24   infringement — and Apple, tellingly, fails to address these cases altogether.

25          Unable to contest that *WBIP* and *Radware* are fatal to its claim of willfulness, Apple cites

26   two decisions from district courts in other circuits suggesting that pre-suit knowledge is not a

27   formal prerequisite to willfulness.  *See* Dkt. 2191 at 9-10 (citing *Huawei Techs. Co. v. T-Mobile*

28   *US, Inc.*, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017) & *DermaFocus LLC v. Ulthera, Inc.*,

201 F. Supp. 3d 465, 473 (D. Del. 2016)).  But these decisions do not apply here, since Apple is relying on allegations of pre-suit copying to establish willfulness.  To the extent these decision suggest otherwise, they would conflict not only with the Federal Circuit's binding decision in *WBIP*, 829 F.3d at 1341, but also with post-*Halo* decisions from this district (and another district court in the Ninth Circuit) which confirm that pre-suit knowledge is required to show willfulness based on pre-suit acts.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2017 WL 130236, at *3 (N.D Cal. Jan. 13, 2017) (citing *WBIP* and holding evidence of pre-suit knowledge was adequate to support jury's willfulness determination); *Radware*, 2016 WL 4427490, at *3-5; *Nanosys, Inc. v. QD Vision, Inc.*, 2016 WL 4943006, at *7-8 (N.D. Cal. Sep. 21, 2016) (finding "plaintiffs' allegations of pre-suit knowledge … sufficient" to survive motion to dismiss); *see also Continental Circuits LLC v. Intel Corp.*, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) ("Under *Halo*, knowledge [of the patent] is a necessary condition of willfulness, but not a sufficient one.").

Apple's concession (Dkt. 2191 at 7) that Apple's filing of this lawsuit "put Samsung on notice of the '721 patent," is a concession that Apple cannot demonstrate that Samsung had pre-suit knowledge of the '721 patent.  Consequently, Apple is unable to demonstrate willfulness as a matter of law.  *See, e.g.*, *Radware*, 2016 WL 4427490, at *3-5;  *Lift-U*, 2012 WL 5303301, at *12.

**B.     Apple's Purported Evidence of Pre-Suit Copying Fails To Establish Willfulness**

Apple also fails to rebut Samsung's showing (Dkt. 2186 at 7-9) that because Samsung had no knowledge of the '721 patent before this lawsuit was filed, Apple's evidence of purported pre-suit copying is not probative of subjective willfulness.  Indeed, courts — including this Court — have routinely held that evidence that a product was copied before a patent issued is plainly insufficient to establish willfulness. *See, e.g.*, *Radware*, 2016 WL 4427490, at *3 (insufficient evidence to establish willfulness where "[a]t the time that [the defendant] allegedly analyzed the [plaintiff's product] … [the plaintiff] had not received any patents"); *Lift-U*, 2012 WL 5303301, at *12 (evidence that defendant copied a "patent pending" product insufficient to create triable issue of willfulness); *Adrea, LLC v. Barnes & Noble*, --- F. Supp. 3d. ---, 2017 WL 44954, at *7

1   (S.D.N.Y. Jan. 3, 2017) (no evidence of copying where infringing device was launched prior to

2   issuance of the relevant patent).  Apple's responses to these cases — to the extent it responds to

3   them at all — are unavailing.

4          As *Radware* makes clear, without presuit knowledge there can be no sufficient evidence to

5   support a jury's finding of willfulness.  2016 WL 4427490, at *3-5.  Apple makes no attempt to

6   distinguish *Radware*, nor could it. There, the court held that a plaintiff's evidence that a defendant

7   analyzed its products prior to issuance of the relevant patent was insufficient to establish

8   willfulness since it was "undisputed that [the plaintiff] never actively informed [the defendant] of

9   any of its patents or patent applications before [the plaintiff] filed th[e] lawsuit."  *Radware*, 2016

10  WL 4427490, at *3.

11         And with respect to this Court's decision in *Lift-U*, Apple wrongly claims (Dkt. 2191 at 9)

12  that this Court "relied on *Seagate*'s language suggesting that a party must move for a preliminary

13  injunction in order to present a claim for willfulness based solely on post-filing conduct," and that

14  "[a]ny such rule was abrogated by *Halo*."  But Apple is incorrect that *Seagate*'s preliminary

15  injunction rule has been abrogated by *Halo*. *See Radware*, 2016 WL 4427490, at *6 ("*Halo* did

16  not disturb" *Seagate*'s ruling that "a patentee who does not seek a preliminary injunction 'should

17  not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct'")

18  (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)).  In any event, even if

19  Apple were correct, this Court in *Lift-U* did not rely on that aspect of *Seagate*.  To the contrary, in

20  holding that the plaintiff's evidence of copying in *Lift-U* was insufficient to establish willfulness,

21  this Court correctly relied on the longstanding principles from *State Indus., Inc. v. AO Smith*

22  *Corp.*, 751 F.2d 1226 (Fed. Cir. 1985) — yet another case that Apple fails to address — that "[t]o

23  willfully infringe a patent, the patent must exist and one must have knowledge of it," and that "[a]

24  'patent pending' notice gives one no knowledge whatsoever."  *Lift-U*, 2012 WL 5303301, at *12

25  (quoting *State Indus.*, 751 F.2d at 1236).

26         Apple's attempts (Dkt. 2191 at 9) to distinguish *Adrea* also fail.  Apple wrongly claims

27  that *Adrea* does not apply because "the jury [in *Adrea*] found no willful infringement and the

28  district court recognized that there was no evidence of copying."  But the fact that the jury in

1    *Adrea* found that the infringement in that case was not willful does not change the fact that, before

2    deciding whether to exercise its discretion to enhance damages, the district court in *Adrea* had to

3    make the same inquiry that this Court must make here — it had to decide whether the evidence

4    established that the defendant's conduct was willful under *Halo*.  2017 WL 44954, at *6-7.  Apple

5    completely ignores, moreover, that the reason there was no evidence of copying in *Adrea* was

6    because there could be no such evidence, since the infringing device was launched — and thus any

7    copying would have occurred — "*before* [the relevant] patent issued."  *Id.* at *7.  Consequently,

8    *Adrea* is on point and Apple's attempts to distinguish it should be rejected.

9            In arguing (Dkt. 2191 at 8), that evidence of copying before a patent is issued is relevant,

10   Apple relies on *L.A. Gear, Inc. v. Thom McAn Shoe Company*, 988 F.2d 1117, 1127 (Fed. Cir.

11   1993) and *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978-79 (Fed. Cir. 1986).  Apple's reliance

12   is misplaced, as both of those cases involved copying by a defendant who, unlike Samsung here,

13   had no invalidity defense.

14           Indeed, in *L.A. Gear* — a design patent and unfair competition case — the "only ground

15   asserted for patent invalidity [by the defendant] did not present a close question of fact or law,"

16   988 F.2d at 1126, and *Kaufman* likewise involved a defendant taking "an untenable position

17   regarding the validity of the patent," 807 F.2d at 978.  Here, by contrast, Samsung had a strong

18   invalidity defense with respect to the '721 patent — an obviousness defense with which a three-

19   judge panel of the Federal Circuit agreed.  *Apple Inc. v. Samsung Elecs. Co.*, 816 F.3d 788, 806

20   (Fed. Cir. 2016) (holding the '721 patent invalid "because the asserted claim of the '721 patent

21   would have been obvious in light of Neonode and Plaisant").  Consequently, neither *L.A. Gear* nor

22   *Kaufman* applies here.[1]

23

24   _____

25   [1]  Furthermore, *L.A. Gear* relied upon the now-overruled law that where a defendant asserts

26   privilege with respect to infringement or validity advice, the court can make an adverse inference
     that the advice was adverse.  988 F.2d at 1126.  That "adverse inference" law has been definitively

27   overruled, *see Knorr-Bremse Systeme v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (en
     banc), rendering *L.A. Gear* inadequate precedent.

28

1.   **Apple's Purported Copying Evidence Predates Issuance of the '721 Patent**

Apple points (Dkt. 2191 at 5) to four exhibits as "direct evidence of copying," but because all of this evidence predates issuance of the '721 patent, it is not probative of willfulness. Indeed, every exhibit relied on by Apple as purported copying evidence (Dkt. 2191 at 5, 6), predates October 25, 2011, the date the '721 patent issued. *See* PX121 (May 31, 2010); PX157 (March 24, 2010); PX219 (May 3, 2010); PX149 (February 10, 2010). Because this evidence predates issuance of the '721 patent, it is insufficient to show willfulness. *Radware*, 2016 WL 4427490, at *3; *Lift-U*, 2012 WL 5303301, at *12; *Adrea,* 2017 WL 44954, at *7.[2]

2.   **Apple's Purported Copying Evidence Does Not Show Egregiousness**

Even if Apple's purported copying evidence were somehow relevant, it does not establish egregious misconduct that would support a finding of willfulness under *Halo*. All of the exhibits cited by Apple as supposed "direct evidence" of copying predate the issuance of the patent, and are they are comparison analyses and competitive benchmarks between Samsung phones and the iPhone. *See* Dkt. 2191 at 5 (citing PX121, PX119, PX157 & PX219). Contrary to Apple's suggestion (at 6) that such comparison analyses are "characteristic of a pirate," a comparison analysis performed before a patent issues is not evidence of willfulness at all. For instance, PX121 reflects comparative analysis of the smoothness and precision of the unlocking software, e.g., a "slight Flick," and certainly does not reflect subjective intent to infringe not-yet-issued

---

[2]   In support of its contention (Dkt. 2191 at 5) that "[a] defendant's copying of the patented invention is strong evidence of willfulness," Apple relies on two cases in which the alleged copying took place *after* the relevant patents had issued. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1216 (Fed. Cir. 2006) (patent issued in 1992; alleged copying took place in 1999); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1343-44 (Fed. Cir. 2001) (patents issued in 1988, 1989, and 1993; alleged copying took place no earlier than 1994). Because these cases involve alleged copying that postdate issuance of the relevant patents, they do not support a finding of willfulness here, where Apple's purported copying evidence predates issuance of the '721 patent.  The third case Apple cites, *L.A. Gear*, found willfulness where the defendant — unlike Samsung here — asserted an invalidity defense that "did not present a close question of fact or law," 988 F.2d at 1126, *admitted* to copying, and was warned "of the impending issuance of the patent" it infringed, *id.* at 1127. In other words, in contrast to Samsung, the infringer in *L.A. Gear* acted like a "pirate."

1  intellectual property.  In *Radware*, for example, the court held that the defendant's "competitive

2  analysis of [the plaintiff's] products" did not support willfulness because the analysis was

3  undertaken prior to issuance of the patent, and thus could not show that the defendant had

4  knowledge of the patent.  2016 WL 4427490, at *4-5.  Apple's evidence is no different than the

5  competitive analysis at issue in *Radware*, and Apple is unable to demonstrate otherwise.

6        Apple also claims (Dkt. 2191 at 6) that certain evidence shows that Samsung's purported

7  copying "was a deliberate choice intended to make Samsung's products competitive with the

8  iPhone."  But as Samsung demonstrated in its opening brief (Dkt. 2186 at 9), "[k]eeping track of a

9  competitor's products and designing new and possibly better or cheaper functional equivalents is

10 the stuff of which competition is made."  *State Indus.*, 751 F.2d at 1235-36.  Consequently,

11 Apple's evidence does not support egregiousness, and Apple does not even attempt to reconcile

12 *State Industries* with its position.

13       Apple has no response to Samsung's showing that — with respect to the Admire and

14 Galaxy Nexus — Apple has no evidence that Samsung (who designed the phone) or Google (who

15 designed the screen) actually copied the iPhone.  Instead, Apple incorrectly maintains (Dkt. 2191

16 at 10) that "Samsung's copying of the '721 patent" is "the law of the case."  But the Federal

17 Circuit's determination that there was "substantial evidence of copying by Samsung" as a

18 secondary consideration supporting non-obviousness, *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d

19 1034, 1054 (2016) — without the benefit of briefing since Samsung elected to appeal other issues

20 — does not establish that copying is the "law of the case" for purposes of a willfulness analysis.

21 Indeed, competitive analysis or even copying of a feature cannot bear on subjective intent — the

22 touchstone of willfulness — because the patent did not exist.  Copying a feature could very well

23 indicate non-obviousness of the feature, as the Federal Circuit concluded, but such copying would

24 be insufficient to show willfulness.  *See supra* 4-6; *Radware*, 2016 WL 4427490, at *3; *Lift-U*,

25 2012 WL 5303301, at *12; *Adrea,* 2017 WL 44954, at *7.  Because copying as a secondary

26 consideration supporting non-obviousness, and copying as evidence of willfulness are different

27 issues, the Federal Circuit's determination that there was substantial evidence of copying is not

28 determinative here.

1

2

         **3.**      **Samsung Was Not Required To Present Evidence Of Its Subjective State of Mind**

3

        Apple argues (Dkt. 2191 at 7-8), that "[t]he relevant period for assessing Samsung's

4

subjective state of mind is when Apple filed this lawsuit," and that "[t]he record contains no

5

evidence that Samsung had any subjectively held belief that the '721 patent was invalid … at that

6

time."  This argument fails for several reasons.  *First*, it is Apple's burden to prove willfulness,

7

and its attempt to shift the evidentiary burden to Samsung should be rejected.  *Radware*, 2016 WL

8

4427490, at *3 (citing *Halo*, 136 S. Ct. at 1933).  *Second*, Apple has conceded (Dkt. 2191 at 7)

9

that its filing of this lawsuit "put Samsung on notice of the '721 patent."  Consequently, Apple's

10

argument amounts to a suggestion that Samsung was required to have a "subjective belief" that a

11

patent *of which it had no knowledge* was invalid.  This defies common sense, and should also be

12

rejected.  Finally, Apple promptly contradicts itself (Dkt. 2191 at 8) by arguing that its purported

13

copying evidence shows "that Samsung had no legitimate justification for its actions."  All of this

14

supposed copying evidence predates issuance of the patent, however, and thus also predates what

15

Apple claims is "[t]he relevant period for assessing Samsung's subjective state of mind."  Apple's

16

attempt to have it both ways — by claiming that the relevant time for assessing Samsung's

17

subjective state of mind is after filing of this lawsuit, but supporting its assertions with evidence

18

that predates both the lawsuit and issuance of the patent, should also be rejected.

19

20

**II.**      **SAMSUNG'S POST-SUIT CONDUCT CANNOT PROVE WILLFUL INFRINGEMENT**

21

        Apple concedes (Dkt. 2191 at 7 n.1), as it must, that "continued infringement during the

22

course of a litigation is [not] sufficient to show willfulness by itself."  Because Apple is unable to

23

show that Samsung knew of the '721 patent at the time of the purported copying, and its pre-

24

knowledge evidence of purported copying is thus irrelevant, Apple's concession is fatal to its

25

claim of willfulness.  In any event, even if this Court were to consider Samsung's post-suit

26

conduct, Apple is unable to show that Samsung's post-suit conduct establishes willfulness.

27

28

1
2

### A.    Samsung's Post-Suit Conduct Is Insufficient to Show Willfulness As A Matter of Law

3    Despite conceding (Dkt. 2191 at 7 n.1) that "continued infringement during the course of a
4    litigation is [not] sufficient to show willfulness by itself," Apple nonetheless maintains (*id.* at 12)
5    that *Halo* has "abandoned" the usual rule that "post-filing conduct alone is legally insufficient to
6    prove willfulness," *Lift-U*, 2012 WL 5303301, at *12.  But Apple fails to support its assertion,
7    relying only (Dkt. 2191 at 12) on an incorrect reading of *Mentor Graphics* to suggest "that such a
8    rigid approach is impermissible" under *Halo*.  Contrary to Apple's suggestion, *Mentor Graphics*
9    confirms that the usual rule — that post-filing conduct alone is insufficient to show willfulness —
10   is still in place.  Indeed, the Federal Circuit in *Mentor Graphics* not only cited the relevant
11   language from *Seagate* favorably, 851 F.3d at 1295 (quoting *Seagate*'s statement that "in ordinary
12   circumstances, willfulness will depend on an infringer's *prelitigation conduct*") (emphasis added),
13   but held that the defendant's "alleged acts of infringement [were] *pre-suit acts*, and there [was]
14   *accordingly no basis for excluding* [the plaintiff's] evidence of willfulness."  *Id.* (emphasis added).
15   There would have been no need for the *Mentor Graphics* court to decide "[t]he relevant date for
16   determining which conduct is pre-suit," if the usual rule had been abrogated by *Halo*.

17   Were there any doubt, the fact that this rule survived *Halo* is further confirmed by
18   *Radware*.  In *Radware*, the court expressly stated that "post-complaint conduct is of limited
19   relevance" to willfulness.  2016 WL 4427490, at *6.  The *Radware* court not only cited *Seagate*,
20   but explained that "*Halo* did not disturb [*Seagate*'s] ruling" that "a patentee who does not seek a
21   preliminary injunction 'should not be allowed to accrue enhanced damages based solely on the
22   infringer's post-filing conduct.'"  *Id.* (quoting *Seagate*, 497 F.3d at 1374 ).  Apple fails to address
23   *Radware* at all, and it also fails to address the other post-*Halo* decisions cited by Samsung (Dkt.
24   2186 at 10) holding that "[w]illful infringement in the main must find its basis in prelitigation
25   conduct."  *Dorman Prods., Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663, 681 (E.D. Pa. 2016); *see also*
26   *CG Tech. Dev., LLC v. FanDuel, Inc.*, 2017 WL 58572, at *6 (D. Nev. Jan. 4, 2017) ("Although a
27   willful infringement plaintiff need no longer allege objective recklessness, he must allege some

28

1  'egregious … misconduct,' … *occurring before the initial claim of infringement was filed* ….")
2  (emphasis added).

3       Apple then attempts (Dkt. 2191 at 12) to salvage its willfulness claim by mischaracterizing
4  that "[t]he pre-suit and post-suit evidence in this case establishes a single course of conduct that
5  confirms Samsung's culpability."  This is wrong because there was no "single course of conduct."
6  To the contrary, there was Samsung's pre-suit conduct — all of which was undertaken without
7  knowledge of the '721 patent, as Apple concedes (*id.* at 7) — and there was Samsung's post-suit
8  conduct, which Apple concedes (*id.* at 7 n.1) is not "sufficient to show willfulness by itself."

9       Even if Apple had not conceded that Samsung's post-suit conduct is insufficient to
10 establish willfulness, Apple has no response to Samsung's argument that the limited exception to
11 the general rule that post-filing conduct is insufficient to show willfulness — permitting
12 willfulness based on post-suit conduct when the patentee is able to show a likelihood of success on
13 the merits in moving for a preliminary injunction — does not apply.  *See* Dkt. 2186 at 10-11
14 (citing *Seagate*, 497 F.3d at 1374).  Apple incorrectly claims (Dkt. 2191 at 13) that this Court's
15 "preliminary injunction decision held that Apple had not demonstrated a likelihood of success on
16 the merits in light of Samsung's invalidity defense for the '721 patent."  To the contrary, as
17 Samsung explained in its opening brief (Dkt. 2186 at 10), this "Court held in its preliminary
18 injunction order that Samsung had not established that the Neonode … was a 'proper prior art
19 reference,'" and consequently, that Apple *had* shown a likelihood of success on the merits.
20 (quoting Dkt. 221 at 50).  But this Court later determined, on JMOL, that Samsung *had*
21 established that Neonode was a proper prior art reference, Dkt. 1965 at 27, discounting its prior
22 conclusion concerning Samsung's defense that the '721 patent was invalid for obviousness.
23 Accordingly, because the preliminary injunction order provided no basis for Samsung to doubt its
24 obviousness defense, there is no basis to apply the exception to the general rule that post-suit
25 conduct is insufficient to establish willfulness.  *See* Dkt. 2186 at 10-11.

26      In addition to Apple's mischaracterization of the record in this case, Apple is wrong (Dkt.
27 2191 at 13) that Samsung must present evidence that it acted on the basis of its invalidity defense.
28 "Under *Halo*, a party seeking enhanced damages under section 284 *bears the burden of proof* …."

1    *Radware*, 2016 WL 4427490, at *3 (citing *Halo*, 136 S. Ct. at 1934).  Indeed, in *Adrea*, the

2    plaintiff argued that the defendant's conduct was willful because the defendant "did not attempt to

3    design around or avoid infringement of the [relevant] patent."  2017 WL 44954, at *7.  The court

4    rejected this argument because the defendant's actions were consistent with its non-infringement

5    defense, and the plaintiff had "not shown that [the defendant] lacked a reasonable basis for its

6    position."  *Id.*  The court also rejected the plaintiff's argument that the defendant had "no

7    evidence that [it] conducted a meaningful investigation relating to [the relevant] patent," stating

8    expressly that "it is not [the defendant's] burden to show such evidence."  *Id.*  This Court should

9    follow *Adrea* and find that Samsung's actions were not willful.

10        **B.      Samsung's Post-Suit Conduct Is Not "Characteristic of a Pirate"**

11            Even if the Court were to consider Samsung's post-suit conduct, Apple is unable to refute

12   Samsung's showing (Dkt. 2186 at 11) that its post-suit conduct was not reckless or characteristic

13   of a pirate as required by *Halo*.  Apple incorrectly argues (Dkt. 2191 at 6) that "Samsung's

14   continued use of the '721 invention despite available non-infringing designs confirms its

15   egregious misconduct."[3]  But far from "confirm[ing] … egregious misconduct," Apple's argument

16   applies to only *one out of six* products accused of infringing (one out of three products found to

17   infringe).  Apple does not even attempt to respond to Samsung's showing (Dkt. 2186 at 11) that

18   for two of the devices found to infringe, the Admire and the Stratosphere, "updates rendered the

19   devices non-infringing by July and August 2012, respectively."

20            With respect to the third device — the Galaxy Nexus — Apple erroneously asserts (Dkt.

21   2191 at 6-7, 13) that "Samsung released the infringing Galaxy Nexus on April 5, 2012 — two

22   months after this lawsuit was filed." (emphasis omitted).  Apple is wrong — the Galaxy Nexus

---

23

24   [3]   Apple relies (Dkt. 2191 at 7) on *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364 (Fed. Cir. 2012)
     and *Sargent Mfg. Co. v. Cal-Royal Prods., Inc.*, 2012 WL 603268, at *11 (D. Conn. Feb. 24,
25   2012) to support this argument but neither case applies here.  Unlike the situation here, in *K-TEC*,
     most of the defendant's invalidity theories "were properly disposed of on summary judgment."
26   696 F.3d at 1378.  And the language Apple quotes from *Sargent* was from the court's analysis of
     the now-invalidated "objective recklessness" prong.  *see* 2012 WL 603268, at *11 (considering
27   "whether it was objectively reckless for [the defendant] to continue to sell the accused product").
     This Court already determined that Samsung's conduct was not objectively reckless, although that
28   determination has been mooted by *Halo*.

1    was released in November 2011, as Apple's own responses to interrogatories and its own expert's

2    summary of Samsung's sales data confirm.  DX508.003 (Apple Response to Samsung

3    Interrogatory No. 7, stating date of public release in the United States for Galaxy Nexus was

4    November 17, 2011); PX142 at 3 (showing sales of Galaxy Nexus beginning in November 2011).

5    And while Apple attempts (Dkt. 2191 at 13) to discount Samsung's update of the Galaxy Nexus

6    — nearly contemporaneous with the preliminary injunction decision — to a version that Samsung

7    reasonably believed was non-infringing, its only contention is that Samsung's non-infringement

8    defense for the updated version was not "strong" because Samsung did not raise it on appeal.

9    Samsung can hardly be faulted for electing not to raise its non-infringement defense regarding the

10   updated Galaxy Nexus when its obviousness defense was unanimously adopted by the Federal

11   Circuit panel that first heard the appeal.

12   **III.    ENHANCED DAMAGES ARE NOT WARRANTED**

13        If this Court agrees with Samsung that insufficient evidence supported the jury's verdict on

14   willfulness, then it need not consider the further question as to whether enhanced damages are

15   warranted.  *See, e.g.*, *Adrea*, 2017 WL 44954, at *7 n.16 ("The Court does not reach the *Read*

16   factors because [the plaintiff] has not shown subjective willfulness …").  Indeed, as the Federal

17   Circuit held in *WesternGeco LLC v. ION Geophysical Corp.* — another case that Apple fails to

18   cite or acknowledge — subjective willfulness is a "predicate" to enhanced damages.  837 F.3d

19   1358, 1364 (Fed. Cir. 2016) ("On remand, the district court must review the sufficiency of th[e]

20   evidence [of willfulness] as a predicate to any award of enhanced damages …").

21        If the Court reaches the question of enhanced damages, Apple's contention that the factors

22   from *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992)[4] support enhanced

23   _____

24   ⁴  The *Read* factors are: (1) whether the infringer deliberately copied the ideas or design of
     another; (2) whether the infringer, when he knew of the other's patent protection, investigated the
25   scope of the patent and formed a good-faith belief that it was invalid or not infringed; (3) the
     infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5)
26   the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by
     the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to
27   conceal the infringement.  970 F.2d at 827.

28

1  damages lacks merit, as even authority cited by Apple (Dkt. 2191 at 14) demonstrates.  *See*

2  *Finjan, Inc. v. Blue Coat Systems, Inc.*, 2016 WL 3880774, at *16-17 (N.D. Cal. July 18, 2016)

3  (holding that *Read* factors did not support enhanced damages).  Samsung's conduct was not

4  egregious and not the actions of a pirate.  This was a hard fought and close action in which the

5  jury found Apple infringed one of Samsung's patents, and that Samsung did *not* infringe two of

6  Apple's patents.  Dkt. 1884 at 3, 4, 11.

7      **A.**    **Apple's Purported Copying Evidence Can Not Support Enhanced Damages**

8      The first *Read* factor does not support enhanced damages.  Apple incorrectly argues (Dkt.

9  2191 at 15) that there is "abundant evidence of … deliberate copying," favoring enhanced

10  damages.  But because all of Apple's purported copying evidence predates issuance of the '721

11  patent, it cannot justify an award of enhanced damages.  *Radware*, 2016 WL 4427490, at *6.  In

12  applying the *Read* factors, the court in *Radware* expressly rejected the plaintiff's contention that

13  "copying a plaintiff's product — regardless of whether a patent has yet issued — justifies an

14  award of enhanced damages."  *Id.*  Apple has no response to this point, which Samsung raised in

15  its opening brief (Dkt. 2186 at 8).  Under *Radware*, the first *Read* factor does not favor enhanced

16  damages.

17      **B.**    **Samsung Had a Reasonable Defense That The '721 Patent Was Invalid**

18      The second factor weighs against enhanced damages.  Apple claims (Dkt. 2191 at 15) that

19  there is no evidence Samsung "did any investigation upon learning of the '721 patent or

20  subjectively believed that the patent was not infringed or invalid at the time."[5]  But "*any* good

21  faith belief that patents were invalid … weigh[s] against enhancement," and Samsung was not

22  required to present evidence of its subjective belief.  *See Finjan*, 2016 WL 3880774, at *16

23  (emphasis added).  To the contrary, it is enough that Samsung asserted a *reasonable* invalidity

24  ———————————

25     [5]  Apple also contends (Dkt. 2191 at 15) that "Samsung presented no non-infringement defense at trial" for two of the three products found to infringe the '721 patent.  But an identical

26  argument was rejected in *Radware*. Indeed, the plaintiff there argued that the defendant "did not present a non-infringement defense at trial," but the court nonetheless concluded that the second

27  *Read* factor did not favor enhancement based on the defendant's invalidity defenses.  2016 WL 4427490, at *7-8.  *Radware* should control here.

28

defense.  As the Federal Circuit explained in *WesternGeco*, "[a]fter *Halo*, the *objective reasonableness* of the accused infringer's positions can still be relevant to the district court to consider when exercising its discretion," to award enhanced damages, and there is no doubt that Samsung's invalidity defense was objectively reasonable.  837 F.3d at 1363; *see also id.* ("[O]bjective reasonableness is one of the relevant factors" for district courts to consider in exercising their discretion under § 284).

Apple is unable to dispute that a three-judge panel of the Federal Circuit agreed with Samsung's defense that the '721 patent was invalid for obviousness.  *Apple*, 816 F.3d at 806.  In addition, this Court concluded in its prior JMOL ruling that Samsung's invalidity defense was "not objectively baseless."  Dkt. 1965 at 28.  While the Federal Circuit panel's ruling was overturned by the en banc court, at a minimum the panel decision and this Court's ruling on JMOL establish that Samsung's invalidity defense was reasonable.  *Cf. Finjan*, 2016 WL 3880774, at *16 ("When this lawsuit was filed, [the defendant] ha[d] reasonable good-faith non-infringement and invalidity defenses, they were not rendered unreasonable because [the plaintiff] prevailed at trial.").

In addition, Apple's inability to show that Samsung knew of the '721 patent prior to this lawsuit also weighs against enhanced damages under this factor.  *Finjan*, 2016 WL 3880774, at *16 (finding second *Read* factor weighed against enhanced damages where plaintiff 'has not provided sufficient evidence to show [the defendant] knew of the specific patents-in-suit prior to this lawsuit").  Accordingly, the second *Read* factor weighs against enhanced damages.  *Id.*

## C.    The Third *Read* Factor Weighs Against Enhancement

Contrary to Apple's suggestion (Dkt. 2191 at 16) that the third *Read* factor is neutral, this factor actually weighs against enhanced damages.  As in *Finjan*, "[t]his was a hard fought case," and Apple makes no suggestion that Samsung ever "cross[ed] the line into improper conduct." 2016 WL 3880774.  "[A]ccordingly, the third factor *weighs against* enhancement," as another court in this district recently concluded.  *Power Integrations, Inc. v. Fairchild Semiconductor, Int'l*, 2017 WL 130236, at *4 (N.D. Cal. Jan. 13, 2017) (emphasis added).

**D.      Samsung's Size and Financial Condition Do Not Favor Enhanced Damages**

The fourth *Read* factor does not favor enhancement, as Apple concedes. Dkt. 2191 at 16 ("Samsung's size and financial condition, standing alone, do not require enhancement."); *see also Radware*, 2016 WL 4427490, at *8 ("[T]he fourth *Read* factor … alone is insufficient to support enhanced damages"). Nonetheless, Apple attempts to shift the inquiry under this factor to Samsung's post-suit conduct, arguing (Dkt. 2191 at 16) that Samsung continued to use the slide-to-unlock feature "for nearly a year after this lawsuit began," based solely on sales of the Galaxy Nexus, which Samsung updated after this Court's preliminary injunction decision. Apple cites no authority for this contention, and makes no attempt to explain how this is relevant to analysis of Samsung's "size and financial condition" — nor could it. Even if Samsung's post-suit conduct were relevant to the fourth *Read* factor, Samsung's update of the Galaxy Nexus to a version for which Samsung had a reasonable non-infringement defense, *see* Dkt. 2186 at 11, would render this factor, at worst, neutral.

**E.      The Closeness of This Case Weighs Against Enhanced Damages**

Apple wrongly contends (Dkt. 2191 at 16-17) that the fifth *Read* factor favors enhancement because "[t]his was not a close case on the '721 patent." Contrary to Apple's position, "the fifth factor weighs *against* enhancement," where, as here, "both parties took reasonable positions on the various issues raised as to both validity and infringement." *Power Integrations*, 2017 WL 130236, at *4 (emphasis added). Apple fails to mention that only three out of six accused products were found to infringe, Dkt. 1884 at 5, and as Apple recognizes, a three judge panel of the Federal Circuit agreed with Samsung that the '721 patent was invalid. The en banc Federal Circuit's vacatur of the panel opinion does not change the fact that Samsung was initially successful on appeal, and it does not mean that the case was any less "close." Given Samsung's initial success on appeal and this Court's JMOL acknowledgment that Samsung's defense was reasonable, Apple cannot seriously contest that Samsung's invalidity defense was reasonable, and the fifth *Read* factor thus weighs against enhancement. *Power Integrations*, 2017 WL 130236, at *4.

**F.     The Short Duration Of Any Misconduct Weighs Against Enhanced Damages**

The sixth *Read* factor also weighs against enhanced damages, as Apple concedes (Dkt. 2191 at 17) that "continued infringement during the pendency of a litigation does not warrant enhancement on its own."   Apple argues (*id.*) that "Samsung infringed the '721 patent for nearly a year after Apple commenced this lawsuit," but Apple's argument is foreclosed by *Radware*.  There the district court held that infringement that continued "throughout th[e] litigation" did not support enhanced damages under sixth *Read* factor.  *See Radware*, 2016 WL 4427490, at *6.

As this Court has recognized, moreover, "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it." *Lift-U*, 2012 WL 5303301, at *12.  Because the '721 patent issued on October 25, 2011, there could be no infringement prior to that time, and Apple cites no authority for its contention (Dkt. 2191 at 17) that Samsung's conduct before the patent was even issued should somehow bear on enhanced damages.  And because Samsung did not have notice of the '721 patent until Apple filed suit in February 2012, the duration of the "misconduct" is, at most, approximately 11 months.  Such a short duration does not favor enhanced damages. *See, e.g.*, *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2009 WL 3064800, at *10 (M.D. Fla. Sept. 22, 2009) (16-month period of infringement "does not favor enhancement").[6]

**G.     Samsung's Remedial Actions Weigh Against Enhancement**

The seventh *Read* factor also weighs against enhanced damages.  Apple is incorrect (Dkt. 2191 at 17) that Samsung "took no remedial action," and again resorts to mischaracterization of the record in asserting that "[t]he infringing Galaxy Nexus was released on April 5, 2012."  As Apple's own discovery responses and expert demonstrate, the Galaxy Nexus was released on November 17, 2011 — well before this lawsuit was filed.  DX508.003 (Apple Response to Samsung Interrogatory No. 7, stating Galaxy Nexus publicly released November 17, 2011); PX142 at 3 (showing sales of Galaxy Nexus began in November 2011)

---

[6]  The duration of infringement here does not even begin to approach, for example, the *ten years* of infringing conduct found to favor enhanced damages in *Power Integrations*.  2017 WL 130236, at *4.

1    Apple is unable to dispute Samsung's showing that "there is no evidence … Samsung

2   continued to sell infringing versions of [the Admire or Stratosphere] devices for any significant

3   amount of time after the preliminary injunction decision." (Dkt. 2186 at 11).  Indeed, Apple does

4   not contest that "updates rendered [the Admire and Stratosphere] non-infringing by July and

5   August 2012, respectively." *Id*.  Apple is thus plainly incorrect (Dkt. 2191 at 17) that "Samsung

6   took no remedial action."  And Apple again ignores that Samsung updated the Galaxy Nexus

7   nearly contemporaneous with this Court's preliminary injunction decision, to a version for which

8   it had a reasonable non-infringement defense.  Dkt. 2186 at 11.  Accordingly, Samsung took

9   remedial action and such remedial action "weighs against enhancement." *Power Integrations*,

10   2017 WL 130236, at *4 (voluntary cessation of infringement *after the jury's verdict* weighs

11   against enhanced damages).[7]

12       **H.    The Absence Of A Motivation to Harm Weighs Against Enhanced Damages**

13       Apple points (Dkt. 2191 at 18) to evidence of a "competitive environment," and then

14   asserts that "Samsung's infringement of the '721 patent was an effort to gain an advantage in that

15   competitive environment."  But even if this were true it would not support enhancement.  As the

16   court in *Power Integrations* recognized, "[s]imply because a company seeks to gain a competitive

17   advantage … does not mean that the company has a *motivation to harm*." *Power Integrations*,

18   2017 WL 130236, at *5 (internal quotation omitted & emphasis added).   Here, as in *Finjan*,

19   Apple has presented no evidence that Samsung "had a bad faith motivation to harm [Apple]."

20   2016 WL 3880774, at *17.  Accordingly, the eighth factor "weighs against" enhanced damages.

21   *Id.*

22       **I.    The Ninth *Read* Factor Weighs Against Enhancement**

23       Apple concedes (Dkt. 2191 at 19) that "Samsung did not conceal its infringement," and

24   when a defendant does "not attempt to conceal its infringement … [t]he ninth [*Read*] factor *weighs*

25   _____

26       [7]  Even if Samsung *had not* taken remedial action (it did), this factor is neutral where, as here,
the defendant "develop[s] good faith non-infringement and invalidity defenses." *Finjan*, 2016 WL

27   3880774, at *17.  Because Samsung had a good faith non-infringement defense with respect to the
updated Galaxy Nexus, and a good faith obviousness defense, this factor is — at worst — neutral.

28

1   *against* enhancement." *Power Integrations*, 2017 WL 130236, at *5 (emphasis added).

2          Because none of the *Read* factors favor enhancement, this court should decline to exercise

3   its discretion to enhance damages.

4                                  **CONCLUSION**

5          For the foregoing reasons, Samsung respectfully requests that this Court find that

6   insufficient evidence supported the jury verdict of willfulness, and decline to exercise its

7   discretion to enhance damages.

8

9   DATED:  May 5, 2017                    Respectfully submitted

10                                         QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
11

12

13                                         By */s/ Victoria Maroulis*_____
                                              Charles K. Verhoeven
14                                            Kevin P.B. Johnson
                                              Victoria F. Maroulis
15                                            William C. Price
                                              Michael L. Fazio
16

17                                         Attorneys for Defendants SAMSUNG
                                           ELECTRONICS CO., LTD., SAMSUNG
18                                         ELECTRONICS AMERICA, INC., and
                                           SAMSUNG TELECOMMUNICATIONS
19                                         AMERICA, LLC

20

21

22

23

24

25

26

27

28