1  JAMES P. BENNETT (CA SBN 65179)
   jbennett@mofo.com
2  JACK W. LONDEN (CA SBN 85776)
   jlonden@mofo.com
3  RACHEL KREVANS (CA SBN 116421)
   rkrevans@mofo.com
4  ERIK J. OLSON (CA SBN 175815)
   ejolson@mofo.com
5  MORRISON & FOERSTER LLP
   425 Market Street
6  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
7  Facsimile: (415) 268-7522

8  Attorneys for Plaintiff and
   Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000


MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.   12-cv-00630-LHK<br><br>**APPLE INC.'S REPLY BRIEF REGARDING ENHANCED DAMAGES**<br><br>Date:  June 1, 2017<br>Time:  1:30 p.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge:  Hon. Lucy H. Koh |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

    A.   Samsung's Assessment Of The *Read* Factors Is Flawed. ......................................... 2

        1.   Factor 1:  Deliberate copying ................................................................ 2

        2.   Factor 2:  The infringer's investigation and good-faith belief in non-infringement or invalidity ................................................................ 4

        3.   Factor 3:  The infringer's behavior as a party to the litigation ................... 5

        4.   Factor 4:  Defendant's size and financial condition ................................. 6

        5.   Factor 5:  Closeness of the case ............................................................ 6

        6.   Factor 6:  Duration of misconduct ....................................................... 7

        7.   Factor 7:  Remedial action by the defendant ......................................... 8

        8.   Factor 8:  Defendant's motivation for harm ........................................... 9

        9.   Factor 9:  Concealment ..................................................................... 10

    B.   The Totality Of The Circumstances Warrants Treble Damages. ........................... 10

III.  CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Electronics Co.*,
    809 F.3d 633 (Fed. Cir. 2015)......................................................................................7, 9

*Apple Inc. v. Samsung Electronics Co.*,
    839 F.3d 1034 (Fed. Cir. 2016) (en banc).................................................................2, 4, 5, 6

*ArcelorMittal France v. AK Steel Corp.*,
    786 F.3d 885 (Fed. Cir. 2015)...............................................................................................4

*Collegenet, Inc. v. Applyyourself, Inc.*,
    No. 02-1359, 2004 WL 2050489 (D. Or. Jan. 20, 2004) .......................................................6

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
    No. 06-1790, 2009 WL 3064800 (M.D. Fla. Sept. 22, 2009)..................................................7

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    136 S. Ct. 1923 (2016) ............................................................................................... *passim*

*Illinois Tool Works, Inc. v. MOC Products Co.*,
    No. 09-1887, 2013 WL 12064544 (S.D. Cal. Oct. 25, 2013) .................................................6

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006)..............................................................................................2

*nCube Corp. v. Seachange International, Inc.*,
    436 F.3d 1317 (Fed. Cir. 2006)..............................................................................................2

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
    No. 09-5235, 2017 WL 130236 (N.D. Cal. Jan. 13, 2017) ....................................................9

*Radware, Ltd. v. F5 Networks, Inc.*,
    No. 13-2024, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ..............................................3, 7

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)................................................................................................2

*Smith International, Inc. v. Hughes Tool Co.*,
    759 F.2d 1572 (Fed. Cir. 1985)..............................................................................................4

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016)..........................................................................................3, 4

*WBIP, LLC v. Kohler Co.*,
    No. 11-10374, 2014 WL 585854 (D. Mass. Feb. 12, 2014), *aff'd in relevant part*, 829 F.3d 1317 (Fed. Cir. 2016) ...................................................................................3, 4

1

## I.  INTRODUCTION

2    Samsung deliberately copied the slide-to-unlock invention of the '721 patent as part of

3    its strategy to "Beat Apple" in the smartphone market.  Apple promptly sued just three months

4    after the '721 patent issued and immediately sought a preliminary injunction to halt Samsung's

5    infringement.  Yet Samsung continued to compete with Apple using the copied slide-to-unlock

6    invention for nearly a year—despite touting alternatives that Samsung represented could have

7    been implemented in "no time at all."  Although Samsung now argues that its supposedly good-

8    faith defenses justified its actions, that explanation cannot be reconciled with the record

9    evidence that Samsung's continued infringement was due to the inferiority of Samsung's

10   alternatives, not any belief that its continued use of a feature copied from Apple was

11   permissible.  If treble damages are not available in this case of direct competition by a

12   remorseless copyist, there could be no case in which enhanced damages could be awarded.

13   Samsung argues that its deliberate copying should be ignored because it occurred before

14   the '721 patent issued and before Samsung knew of the patent.  But Samsung's pre-suit copying

15   is relevant because it frames the context for Samsung's post-suit conduct.  A party cannot copy

16   a patented feature from a competing product and then refuse to take corrective action when it

17   learns of the patent.  Indeed, Samsung's argument that its lack of pre-suit knowledge forecloses

18   enhancement is precisely the type of rigid rule that *Halo* rejected, which has "the effect of

19   insulating some of the worst patent infringers from any liability for enhanced damages."  *Halo*

20   *Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  Such a rigid rule would have

21   particularly severe consequences where, as here, the patentee sues for infringement promptly

22   after the patent issues.  And Samsung takes a similarly flawed approach with respect to the

23   other *Read* factors—repeatedly resorting to rigid rules that are inconsistent with *Halo* and that

24   fail to take into account the totality of the circumstances of this case.

25   When the entire record is considered against the correct legal standard, it

26   overwhelmingly confirms that Samsung's egregious infringement in this case warrants

27   enhancement.  Accordingly, Apple respectfully requests that the Court award treble damages

28   for Samsung's infringement of the '721 patent.

## II.   ARGUMENT

### A.   Samsung's Assessment Of The *Read* Factors Is Flawed.

This case of deliberate copying by a direct competitor corresponds exactly with *Halo*'s description of "the most culpable offenders, such as the 'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Halo*, 136 S. Ct. at 1932. Samsung's remarkable assertion that "none" of the factors described in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-827 (Fed. Cir. 1992), favors enhancement (Dkt. 2192 at 2) cannot be reconciled with the case law or with the facts of this case.

### 1.   Factor 1:  Deliberate copying

As Apple described previously (Dkt. 2191 at 5-6), there was overwhelming evidence that Samsung deliberately copied the slide-to-unlock invention through side-by-side comparisons with the iPhone and an explicit "[d]irection of [i]mprovement" to make Samsung's unlocking mechanism the "[s]ame as iPhone."  (PX121.100; *see also* PX119.011; PX121.027; PX157.020; PX219.014; Dkt. 1623, Trial Tr. 649:21-650:3 (Cockburn) ("I saw these documents and a great many in addition to this and my conclusion is that they copied.").)  Indeed, the en banc Federal Circuit has already decided the issue of Samsung's copying and expressly held that there was "substantial evidence of copying by Samsung" for the '721 patent.  *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1054 (Fed. Cir. 2016) (en banc).  That evidence of deliberate copying by a direct competitor strongly favors enhancement.  *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225-1226 (Fed. Cir. 2006) (affirming enhanced damages award based on evidence of copying); *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1325 (Fed. Cir. 2006) (affirming enhanced damages award where the defendant "deliberately copied the invention in its products").  None of Samsung's arguments to the contrary has any merit.

*First*, Samsung contends (Dkt. 2192 at 14) that its copying cannot support enhancement because the documents demonstrating its copying predate the issuance of the '721 patent, citing *Radware, Ltd. v. F5 Networks, Inc.*, No. 13-02024, 2016 WL 4427490, at *6 (N.D. Cal. Aug. 22,

2016).  But *Radware* did not hold that pre-issuance copying cannot support enhancement.[1]  On the contrary, *Radware* held that there was ***no*** record evidence of copying in that case—regardless of whether it occurred before or after the patent issued.  *See id.* at \*6 ("F5 witnesses testified that they did not rely on Radware patents, manuals, or code when designing the Link Controller. Rather, F5 maintained that it developed the code for Link Controller from code for existing F5 products." (citations omitted)).  In fact, there was no evidence that the defendant in *Radware* had even acquired a copy of the patentee's competing product "until months after" the release of the infringing product.  *Id.*  Here, by contrast, there was direct evidence that Samsung had copied the slide-to-unlock feature through side-by-side comparisons with the iPhone before the release of the infringing phones.  (*See* Dkt. 2191 at 5-6.)  The vastly different record in this case warrants a different outcome from *Radware*.

> **Second**, Samsung similarly argues that *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), holds that there should be no enhancement in the absence of pre-suit knowledge of the patent.  (Dkt. 2192 at 3.)  But *WBIP* imposes no such rigid rule, which would conflict with *Halo*.  *See Halo*, 136 S. Ct. at 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284 ….").  In fact, in *WBIP*, the district court's decision to enhance damages (which the Federal Circuit affirmed) rested on ***pre-issuance*** copying; the defendant's copying occurred following a trade show in 2004, but the patent-in-suit did not issue until 2008.  *WBIP, LLC v. Kohler Co.*, No. 11-10374, 2014 WL 585854, at \*7 (D. Mass. Feb. 12, 2014), *aff'd in relevant part*, 829 F.3d 1317 (Fed. Cir. 2016); *see also WBIP*, 829 F.3d at 1325, 1330.  *WBIP* also rejected precisely the same argument about the relevance of pre-issuance conduct to enhancement that Samsung makes here.  2014 WL 585854, at \*7 ("Kohler adduces no authority in support of its argument at the hearing that its conduct before the subject patents issued cannot

---

[1]    The passage that Samsung quotes from *Radware* paraphrases the patentee's position, not the court's holding.  2016 WL 4427490, at \*6 ("*Radware* argues that *Read*'s reference to copying the 'ideas or designs' of another suggests that copying a plaintiff's product—regardless of whether a patent has yet issued—justifies an award of enhanced damages.").  The court addressed that argument by explaining that there was no evidence of copying in the record whatsoever, not by adopting a rigid rule that pre-issuance copying is irrelevant to enhancement.  *Id.*

be considered under *Read*.").  *WBIP* thus confirms that Samsung's pre-issuance copying supports enhancement here.

   ***Third***, Samsung argues that the en banc Federal Circuit's holding that the record contains "substantial evidence of copying by Samsung" for the '721 patent, 839 F.3d at 1054, does not foreclose its arguments about copying under the law of the case doctrine because the Federal Circuit was addressing copying as a secondary consideration of non-obviousness, not in the context of enhancement.  (Dkt. 2192 at 8.)   But the factual predicate of copying is the same between non-obviousness and enhancement; only the legal consequences of that copying are different.   The same copying evidence that is relevant as a secondary consideration of non-obviousness may therefore also warrant enhancement; in fact, that is what occurred in *WBIP*.  *See* 829 F.3d at 1336-1337 (holding that the defendant's copying following "the 2004 boat show" was a secondary consideration of non-obviousness); 2014 WL 585854, at *7 (enhancing damages based upon the defendant's copying following the same 2004 trade show).  The law of the case doctrine applies in precisely these circumstances to prevent re-litigation of the same issues at different stages of the case.  *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 888 (Fed. Cir. 2015) ("The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted)); *see also Smith Int'l, Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1577-1578 (Fed. Cir. 1985) (law of the case doctrine barred inequitable conduct claim where the underlying facts were "the same as" the facts underlying a previously litigated fraud claim).

   Accordingly, the evidence of Samsung's copying in this case weighs heavily in favor of enhancement, and Samsung has provided no valid basis for disregarding that copying evidence.

## 2.   Factor 2:  The infringer's investigation and good-faith belief in non-infringement or invalidity

   The second *Read* factor also favors enhancement in this case.  Samsung argues that it presented "a *reasonable* invalidity defense" at trial.  (Dkt. 2192 at 14-15.)  But there is no evidence in the record that Samsung relied upon that defense to justify its continued use of the slide-to-unlock invention copied from Apple, which is the relevant question under *Halo*.  136 S.

1   Ct. at 1933.  Rather, the trial record showed that Samsung continued its post-suit infringement to

2   avoid using inferior alternatives to '721 patent, which were criticized by Samsung's own carriers,

3   not based on any belief that Samsung's conduct did not violate any valid patent rights.

4   (PX181.005 (noting Verizon's "negative response towards our company's circle lock playing the

5   role of the visual cue"); Dkt. 1623, Trial Tr. 684:22-686:20 (Cockburn).)

6       Samsung contends that Apple has somehow attempted "to shift the evidentiary burden to

7   Samsung" by pointing out the lack of record evidence that Samsung acted in reliance on its

8   defenses.  (Dkt. 2192 at 9, 11-12.)  But Apple has done nothing of the sort.  Apple demonstrated

9   Samsung's subjective state of mind with evidence of Samsung's copying motivated by a desire to

10  compete with Apple and to avoid inferior alternatives.  Samsung's mere assertion that it had a

11  reasonable invalidity defense is insufficient to rebut the inference of bad faith from Samsung's

12  copying and continued use of Apple's slide-to-unlock invention absent evidence that Samsung

13  "act[ed] on the basis of the defense." *Halo*, 136 S. Ct. at 1933.

14      Even if Samsung's invalidity defenses were relevant under these circumstances,

15  Samsung's invalidity defense was not reasonable.  Samsung cites the Federal Circuit's initial

16  panel decision and this Court's prior JMOL ruling as evidence that its invalidity defense was

17  reasonable.  (Dkt. 2192 at 15.)  But the Federal Circuit panel decision was vacated by the en banc

18  court, and this Court's JMOL ruling relied upon the now-overruled *Seagate* standard.  *See* 839

19  F.3d at 1040; Dkt. 1965 at 24-28.  The fact that Samsung resorts to decisions that are no longer

20  good law to justify its actions confirms the absence of any reasonable defense.

21      Accordingly, because the record evidence demonstrates that Samsung continued using a

22  feature copied from the iPhone for competitive reasons—not based upon any legitimate

23  defense—this factor favors enhancement.

### 3.   Factor 3:  The infringer's behavior as a party to the litigation

25      As previously explained, Apple is not relying upon Samsung's conduct as a party to the

26  litigation to support enhancement.  (Dkt. 2191 at 16.)  But contrary to Samsung's suggestion

27  (Dkt. 2192 at 15), that does not make this factor weigh ***against*** enhancement.  Indeed, Samsung

28  has identified no litigation conduct that would mitigate its egregious infringement behavior.  Even

under Samsung's characterization of this as a "'hard fought case'" (*id.*), this factor is neutral in the enhancement analysis. *See Illinois Tool Works, Inc. v. MOC Prods. Co.*, No. 09-1887, 2013 WL 12064544, at *4 (S.D. Cal. Oct. 25, 2013) (third *Read* factor was "neutral" where litigation was "contentious" but neither party engaged in misconduct); *Collegenet, Inc. v. Applyyourself, Inc.*, No. 02-1359, 2004 WL 2050489, at *14 (D. Or. Jan. 20, 2004) (third *Read* factor was "neutral" where litigation conduct did not fall "outside the range of conduct seen in the context of hard fought litigation with each party's survival at stake").

### 4.      Factor 4:  Defendant's size and financial condition

At trial, Samsung used its size to demonstrate its ability to design around the '721 patent. (Dkt. 1929, Trial Tr. 3336:2-8 (Samsung Closing Statement) ("You know, we're talking about Samsung, one of the, you know, greatest, largest, most important technology companies in the world.  They could do these changes, if they had to do it, in one month.  Here's the evidence on that – slide 10 – the testimony of Dr. Greenberg.  He said that, you know, the circle unlock, we already had it, we could simply swap that out.").)  Yet Samsung failed to remove the '721 invention copied from the iPhone for nearly a year after Apple filed this lawsuit.  (*See* Dkt. 2191 at 6-7.)  Samsung argues that there is no authority for considering a defendant's failure to design around under the fourth *Read* factor.  (Dkt. 2192 at 16.)  But that argument cannot be reconciled with Samsung's own statements to the jury, which expressly linked Samsung's size to its ability to design around the '721 patent.  Because Samsung itself argued that its size was relevant to its ability to remove the feature copied from Apple, this factor favors enhancement in this case.

### 5.      Factor 5:  Closeness of the case

Samsung argues that the jury's non-infringement verdict for three of the accused phones demonstrates the closeness of this case.  (Dkt. 2192 at 16.)  But the jury's verdict that certain other phones did not infringe the '721 patent does not make Samsung's infringement with respect to the Galaxy Nexus, Admire, and Stratosphere phones a close case.  Indeed, the fact that Samsung chose not to appeal the jury's infringement verdict for those phones confirms that this was not a close case with respect to the products for which Apple seeks enhancement.

Samsung also argues that this was a close case on invalidity, given that the Federal Circuit panel initially invalidated claim 8 of the '721 patent and the Court in its JMOL order held that Samsung's invalidity defense was not objectively baseless.  (Dkt. 2192 at 16.)  But as discussed above (p. 5), the Federal Circuit panel decision has been vacated, and this Court's JMOL order relied upon the now-overruled *Seagate* standard.  Samsung cannot demonstrate that this was a close case based upon decisions that have been vacated or overruled.

Accordingly, this factor favors enhancement in this case.

### 6.      Factor 6:  Duration of misconduct

The duration of Samsung's infringement in this case supports enhancement because Samsung initially copied the slide-to-unlock invention from the iPhone and then continued to infringe for nearly a year after this litigation began (*i.e.*, from February 8, 2012 through January 28, 2013)—despite touting its ability to remove the copied feature in "no time at all."  (Dkt. 1717, Trial Tr. 1984:18-1985:1 (Greenberg); Dkt. 1623, Trial Tr. 654:10-11 (Cockburn).)

Samsung argues this factor does not favor enhancement because *Radware* determined—based on the facts of that case—that the defendant's infringement throughout the course of the litigation did not support enhancement under the sixth *Read* factor.  (Dkt. 2192 at 17.)  But as discussed above (p. 3), *Radware* did not involve a feature copied from a competing product.  And in *Radware*, the defendant implemented a design around and stopped shipping the infringing product within a month of the jury's verdict, which the court recognized "indicate[d] an intention *not* to infringe."  2016 WL 4427490, at *6.  Here, by contrast, Samsung copied the infringing feature from the iPhone and then continued its infringement for nearly seven months after the Court's preliminary injunction decision, despite touting its ability to implement readily available alternatives.  (*See* Dkt. 2191 at 13.)

Samsung also contends that the duration of its infringement was relatively "short."  (Dkt. 2192 at 17.)  But no period of infringement by a copycat competitor that caused Apple irreparable harm, *see Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 644 (Fed. Cir. 2015), can be dismissed as "short"—particularly for a feature that Samsung represented could have been removed in "no time at all." (Dkt. 1717, Trial Tr. 1984:18-1985:1 (Greenberg).)  Samsung cites *Hako-Med USA,*

*Inc. v. Axiom Worldwide, Inc.*, No. 06-1790, 2009 WL 3064800, at *10 (M.D. Fla. Sept. 22, 2009), noting that the 16-month period of infringement did not support enhancement in that case. But that case did not involve evidence of copying or the defendant's representation that it could design around the patent in "no time at all."  Given those differences, it is hardly remarkable that a longer duration of infringement did not support enhancement in that case.

Accordingly, given Samsung's copying and refusal to remove the infringing feature despite touting its ability to readily do so, this factor supports enhancement in this case.

### 7.  Factor 7:  Remedial action by the defendant

Given Samsung's copying and the ease with which Samsung represented that it could remove the infringing slide-to-unlock feature, Samsung's lack of remedial action supports enhancement in this case.  (*See* Dkt. 2191 at 17.)

Samsung argues that it did not release any infringing products after the filing of this lawsuit because the Galaxy Nexus was originally released in November 2011.  (Dkt. 2192 at 12-13, 17.)  But the original Galaxy Nexus was not accused of infringing the '721 patent;[2] when Apple's expert Dr. Cockburn testified as to "which phones [he had] determined infringed claim 8" of the '721 patent, he identified the version of the Galaxy Nexus available "from the 5th of April 2012, through to the 28th of January 2013."  (Dkt. 1623, Trial Tr. 653:17-654:12 (Cockburn).)  That testimony was based on Samsung's own interrogatory responses, which identified the "launch" date for the version of the Galaxy Nexus that infringed the '721 patent as April 5, 2012.  (Dkt. 1623, Trial Tr. 654:13-16; PX300.15.)  Samsung's release of the infringing version of the Galaxy Nexus two months after Apple filed this case demonstrates a lack of remedial action by Samsung.

Samsung points to its updates to its infringing Admire and Stratosphere phones in July and August 2012 as evidence of remedial action.  (Dkt. 2192 at 18.)  The updates for those phones, however, are insufficient to mitigate against enhancement because Samsung continued to

---

[2]    The original Galaxy Nexus infringed other Apple patents, including the '647 and '172 patents (Dkt. 1884 at 9), which is why Apple's interrogatory responses and the sales data presented at trial identify the November 2011 launch date for that product.

1    sell the infringing Galaxy Nexus for several months thereafter.  Samsung also relies upon its

2    update to the Galaxy Nexus in July 2012 as evidence of remedial action.  (*Id.*)  But the updated

3    Galaxy Nexus was still infringing and thus does not demonstrate any remedial action.  Samsung

4    cites *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, No. 09-5235, 2017

5    WL 130236, at *4 (N.D. Cal. Jan. 13, 2017), to argue that its supposed remedial action weighs

6    against enhancement.  But the defendant in *Power Integrations* took effective remedial action by

7    ending all sales of its infringing products in the United States.  *Id.*  Samsung can hardly contend

8    that its continued infringement with the updated Galaxy Nexus was at all comparable to the

9    defendant's complete voluntary cessation in *Power Integrations*.

10    Accordingly, because Samsung continued to use a feature copied directly from the iPhone

11    for nearly a year despite touting alternatives that it could have implemented in "no time at all,"

12    this factor supports enhancement in this case.

### 8.    Factor 8:  Defendant's motivation for harm

14    Samsung copied the '721 invention from Apple as part of a broader strategy to "Beat

15    Apple" and make its products competitive with the iPhone.  (PX203.001; *see* Dkt. 2191 at 18.)

16    Indeed, Samsung does not dispute that the side-by-side comparisons with the iPhone with

17    instructions to make Samsung's unlocking mechanism the "[s]ame as iPhone" followed shortly

18    after the head of Samsung's mobile division called on his designers and engineers to take on "the

19    unexpected competitor Apple's iPhone."  (PX149.006; PX121.100; *see* Dkt. 2191 at 3, 6.)  The

20    Federal Circuit held that Samsung's strategy of competition by copying irreparably harmed

21    Apple's competitive position in the smartphone market.  809 F.3d at 644.

22    Samsung cites *Power Integrations* to argue that competition between the parties does not

23    necessarily indicate a motivation to harm.  (Dkt. 2192 at 18.)  But this case does not merely

24    involve competition between the parties.  Rather, it involves Samsung's strategy of deliberate

25    copying to remain competitive.  (Dkt. 2191 at 3, 6, 18.)  If Samsung's motivation to harm Apple

26    through its infringement in the highly competitive smartphone market does not support

27    enhancement, it is difficult to imagine a situation in which this factor could support enhancement.

28    Accordingly, the eighth *Read* factor weighs strongly in favor of enhancement.

### 9.    Factor 9:  Concealment

Samsung's lack of concealment is not a mitigating factor in this case because Samsung's competitive strategy depended upon consumers noticing its use of Apple's patented features. (*See* Dkt. 2191 at 19.)  Samsung does not address how its lack of concealment could possibly weigh against enhancement in these circumstances and instead cites *Power Integrations* to argue that the absence of concealment weighs against enhancement.  (Dkt. 2192 at 18-19.)  But *Power Integrations* does not suggest that the absence of concealment always weighs against enhancement, and any such rigid rule would be inconsistent with *Halo*.  *See* 136 S. Ct. at 1934.

In the circumstances of this case—where Samsung's competitive strategy depended upon a lack of concealment—this factor does not weigh against enhancement.

### B.    The Totality Of The Circumstances Warrants Treble Damages.

The decision whether to enhance damages under *Halo* depends upon "the particular circumstances of each case." 136 S. Ct. at 1933.  Here, the evidence of Samsung's deliberate copying of the '721 invention to directly compete with the iPhone and its continued use of that copied feature for nearly a year after Apple filed this lawsuit—despite Samsung's representations that it could stop its infringement in "no time at all"—overwhelmingly support enhancement. Samsung's arguments against enhancement rest primarily on the basis that its copying occurred before the '721 patent and without Samsung's knowledge of the patent.  But that is not a defense against enhancement in this case where Samsung continued using the feature copied from the iPhone long after it knew of the '721 patent.  Indeed, Samsung's proposed rigid rule that would disregard its pre-suit copying would perversely punish a patentee like Apple that sues to enforce a patent promptly after it issues.  If Apple cannot obtain enhanced damages in this case against its fiercest competitor, which deliberately copied the '721 invention as part of a successful strategy to take market share from Apple, then there could be no case warranting enhancement. Treble damages are thus appropriate in this case.

## III.    CONCLUSION

Apple respectfully requests that the Court award treble damages for Samsung's willful infringement of the '721 patent pursuant to 35 U.S.C. § 284.

1   Dated: May 12, 2017                    WILMER CUTLER PICKERING HALE
2                                          AND DORR LLP

3                                          By:   */s/ William F. Lee*
                                                  William F. Lee
4
                                                  Attorneys for Plaintiff
5                                                 APPLE INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that a true and correct copy of the above and foregoing document has been

3  served on May 12, 2017, to all counsel of record who are deemed to have consented to electronic

4  service via the Court's ECF system per Civil Local Rule 5-1.

5

6                                          */s/ William F. Lee*
                                           William F. Lee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28