UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>et al.,<br><br>                    Defendants. | Case No. 12-CV-00630-LHK<br><br>**ORDER RE: WILLFULNESS AND<br>ENHANCED DAMAGES**<br><br>Re: Dkt. Nos. 2186, 2191 |

On May 5, 2014, after a thirteen-day trial and approximately four days of deliberation, a jury in this patent case reached a verdict, which included a finding of willful infringement of one of Apple's patents, U.S. Patent No. 8,046,721 (the "'721 patent"). ECF No. 1884. On May 23, 2014, Samsung filed a motion for judgment as a matter of law and motion to amend the judgment. ECF No. 1896-3. On September 9, 2014, the Court granted in part and denied in part Samsung's motion for judgment as a matter of law. ECF No. 1965. As relevant here, the Court held that despite the jury verdict finding willful infringement, Samsung did not willfully infringe the '721 patent as a matter of law under the standard set in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007). On October 7, 2016, the Federal Circuit en banc upheld the judgment in the instant case, and remanded the issue of willful infringement in light of the United States Supreme Court's

1

intervening decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016).

ECF No. 2168; *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034 (Fed. Cir. 2016).

Before the Court is Samsung's and Apple's briefing on the issues of willfulness and

enhanced damages. Having considered the parties' briefing, the relevant law, and the record in

this case, the Court finds that the jury's finding of willfulness is supported by substantial evidence

and that a moderate award of enhanced damages is warranted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The '721 Patent

On October 25, 2011, the United States Patent & Trademark Office issued the '721 patent.

ECF No. 1-3. The '721 patent is titled "Unlocking a Device By Performing Gestures on an

Unlock Image." ECF No. 1-3. This patent claims a "slide-to-unlock" function for portable

electronic device touchscreens. *Id.* This slide-to-unlock function allows a user to unlock a device

by sliding an image on the device's touchscreen from one predefined location to another

predefined location. *Id.* Although Apple originally asserted multiple claims from the '721 patent,

only claim 8 of the '721 patent was tried to a jury. Claim 8 of the '721 patent is dependent on

claim 7. The claims recite as follows:

> 7. A portable electronic device, comprising:
> a touch-sensitive display;
> memory;
> one or more processors; and
> one or more modules stored in the memory and configured for execution by the
> one or more processors, the one or more modules including instructions:
>> to detect a contact with the touch-sensitive display at a first predefined
>> location corresponding to an unlock image;
>> to continuously move the unlock image on the touch-sensitive display in
>> accordance with movement of the detected contact while
>> continuous contact with the touch-sensitive display is maintained,
>> wherein the unlock image is a graphical, interactive user-interface
>> object with which a user interacts in order to unlock the device;
>> and
>> to unlock the hand-held electronic device if the unlock image is moved
>> from the first predefined location on the touch screen to a
>> predefined unlock region on the touch-sensitive display.
>
> 8. The device of claim 7, further comprising instructions to display visual cues to

communicate a direction of movement of the unlock image required to unlock the device.

ECF No. 1-3, '721 patent cls. 7, 8.

**B.     Pre-Trial Proceedings in the Instant Suit**

On February 8, 2012, Apple brought suit against Samsung for infringement of eight patents: U.S. Patent Nos. 5,946,647 (the "'647 patent"), 6,847,959 (the "'959 patent"), 8,074,172 (the "'172 patent"), 8,014,760 (the "'760 patent"), 5,666,502 (the "'502 patent"), 7,761,414 (the "'414 patent"), 8,805,604 (the "'604 patent"), and the '721 patent.  ECF No. 1 ("Compl.") ¶ 12. Apple asserted that the following products or classes of products infringed these patents: the Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, Galaxy S II-T-Mobile, Galaxy S II-AT&T, Galaxy Nexus, Illusion, Captivate Glide, Exhibit II 4G, Stratosphere, Transform Ultra, Admire, Conquer 4G, and Dart smartphones, the Galaxy Player 4.0 and Galaxy Player 5.0 media players, and the Galaxy Tab 7.0 Plus and Galaxy Tab 8.9 tablets.  Compl. ¶ 16.

Also on February 8, 2012, Apple sought a preliminary injunction against Samsung as to Samsung's Galaxy Nexus smartphone.  ECF No. 10.  On April 23, 2012, Samsung filed an opposition.  ECF No. 115.  On May 14, 2012, Apple filed a reply.  ECF No. 175.  A hearing was held on Apple's preliminary injunction motion on June 7, 2012.  ECF No. 210.

On June 9, 2012, the Court granted Apple's motion for preliminary injunction as to the Galaxy Nexus.  ECF No. 221 ("Prelim. Injunction Order").  The Court evaluated Apple's motion under the four factors described in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), that is, the Court examined whether (1) Apple was likely to succeed on the merits of the underlying litigation; (2) Apple was likely to suffer immediate, irreparable harm in the absence of preliminary relief; (3) the balance of equities weighed in Apple's favor; and (4) an injunction was in the public interest.  *See* Prelim Injunction Order at 4.  The Court granted Apple's motion for preliminary injunction because (1) "Apple has shown that it is likely to prove at trial that the Galaxy Nexus phones infringe claims 6 and 19 of the '604 Patent; claims 1 and 8 of the '647 Patent; claims 7, 8, 12 and 15 of the '721 Patent; and claims 18, 19, and 27 of the '172 Patent, and that these patent claims are valid"; and (2) "Apple has further shown that it is likely to suffer

3

irreparable harm in the absence of immediate relief, and that this irreparable harm will be attributable to Samsung's infringement of the '604 Patent, though Apple has not made the same showing with respect to Samsung's infringement of the '647, '721, or '172 Patents." *Id.* at 100. Moreover, the Court found that the other two factors, the balance of the equities and the public interest weighed in favor of an injunction. *Id.* On October 11, 2012, on interlocutory appeal, the Federal Circuit reversed the Court's order granting a preliminary injunction against Samsung as to the Galaxy Nexus phones. *See Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370 (Fed. Cir. 2012) (finding that Apple had not demonstrated a likelihood of success on the merits or irreparable harm as to the '604 patent).

As noted above, the Court's preliminary injunction order held that Apple had shown a likelihood of success on the merits as to the '721 patent, but denied the preliminary injunction as to the '721 patent because Apple had failed to show that Apple's "irreparable harm will be attributable to the . . . '721 . . . Patent[]." Prelim. Injunction Order at 100. The Court also found that Apple had shown a likelihood of success on the merits despite Samsung's invalidity arguments. *Id.* Samsung attempted to rely on two pieces of prior art—the Plaisant reference and the NeoNode devices—to argue that the '721 patent was obvious, and thus invalid. The Plaisant reference was "a paper and video demonstration showing the work done by Catherine Plaisant of Human-Computer Interaction Lab at the University of Maryland. Dr. Plaisant's research focused on touch screen toggle switches as user interface control mechanisms." Prelim. Injunction Order at 47. The Plaisant reference disclosed some, but not all of the claim limitations of the '721 patent slide-to-unlock technology.

The NeoNode devices "were mobile phones with touchscreens that were released at some point in the 2004-2005 time period." *Id.* at 49. The Neonode devices disclosed claim limitations beyond those in the Plaisant reference. *Id.* at 50. However, the Court concluded that Samsung had failed to establish that the NeoNode devices were properly admissible as prior art. *Id.* at 50–51. As a result, because the Plaisant reference was insufficient on its own to render the '721 patent obvious, the Court found that Apple had shown a likelihood of success on the merits.

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

However, as noted above, the Court denied Apple's motion for a preliminary injunction based on the '721 patent because Apple had failed to show irreparable harm with a causal nexus to the '721 patent. *Id.*

## C.    Trial, Verdict, and Post-Trial Proceedings

At trial, Apple presented evidence that Samsung had infringed claim 8 of the '721 patent. Samsung argued and presented evidence that the asserted '721 patent was invalid based on the Plaisant reference and the NeoNode devices. Samsung also argued and presented evidence that the Galaxy Nexus did not infringe the '721 patent. Samsung did not present evidence that Samsung's Admire and Stratosphere phones did not infringe the '721 patent.

At trial the jury was instructed on invalidity, patent infringement, and willful patent infringement. ECF No. 1848 ("Final Jury Instructions"). With respect to invalidity, the jury was instructed on anticipation, statutory bars, and obviousness. *Id.* at 41–45. With respect to willful patent infringement, the jury was provided the following instruction:

> In this case, Apple and Samsung both argue that the other side willfully infringed its patents.
>
> To prove willful infringement, the patent owner must first persuade you that the alleged infringer infringed a valid and enforceable claim of one or more of the patent owner's patents. The requirements for proving such infringement were discussed in my prior instructions.
>
> In addition, to prove willful infringement, the patent owner must persuade you by clear and convincing evidence that the alleged infringer acted with reckless disregard of the patent it infringed.
>
> To demonstrate such "reckless disregard," the patent owner must persuade you that the alleged infringer actually knew, or it was so obvious that the alleged infringer should have known, that its actions constituted infringement of a valid and enforceable patent.
>
> In deciding whether Samsung or Apple acted with reckless disregard for any patent that you find is infringed, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors.
>
>> A factor that may be considered as evidence that Samsung or Apple was not willful is whether it acted in a manner consistent with the standards of commerce for its industry.
>>
>> A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of

ECF No. 1848 ("Final Jury Instructions") at 39

On May 5, 2014, the jury reached a verdict. ECF No. 1884 ("Verdict"). With respect to the '721 patent, the jury found that (1) Samsung had failed to show by clear and convincing evidence that the '721 patent was invalid; (2) Samsung infringed claim 8 of Apple's '721 patent with respect to three of Samsung's products, the Admire, the Stratosphere, and the Galaxy Nexus; and (3) Samsung willfully infringed the '721 patent. *Id.*

On May 23, 2014, Samsung filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. ECF No. 1896. With respect to the '721 patent, among other arguments, Samsung argued that (1) the jury's determination that the '721 patent was valid was not supported by substantial evidence, (2) Apple did not provide sufficient evidence that Samsung's products infringed the '721 patent, and (3) the jury's finding that Samsung willfully infringed the '721 patent was not supported by substantial evidence and could not be upheld as a matter of law. *Id.* On June 6, 2014, Apple filed an opposition, ECF No. 1908, and on June 14, 2014, Samsung filed a reply, ECF No. 1917.

On September 9, 2014, the Court granted in part and denied in part Samsung's motion for judgment as a matter of law. ECF No. 1965 ("JMOL Order"). Specifically, the Court held that (1) substantial evidence supported the jury's finding that the '721 patent was valid, and (2) because Samsung's invalidity defense was reasonable, a finding of willful infringement could not be upheld as a matter of law. *Id.* at 29.

On November 25, 2014, judgment was entered against Samsung and in favor of Apple in the amount of $119,625,000, ECF No. 2076, the same amount awarded by the jury, *see* Verdict at 8. The jury attributed $2,990,625 of the damages to claim 8 of the '721 patent ($1,372,696 attributable to the Admire; $867,281 attributable to the Galaxy Nexus; and $750,648 attributable to the Stratosphere). Verdict at 9. With respect to Samsung's cross-claims, judgment was entered against Apple and in favor of Samsung in the amount of $158,400. ECF No. 2076.

### D. Appeal and Remand

On November 25, 2014, Samsung filed a notice of appeal. ECF No. 2077. On December 5, 2014, Apple filed a notice of cross appeal. ECF No. 2079.

On February 26, 2016, a three-judge panel of the Federal Circuit affirmed in part and reversed in part the November 25, 2014 judgment. ECF No. 2159. Among other holdings, the Federal Circuit held that the jury's finding that the '721 was not invalid was not supported by substantial evidence and reversed the judgment in favor of Apple with respect to the '721 patent. *Id.*

On October 7, 2016, the Federal Circuit en banc vacated in part the February 26, 2016 three-judge panel order. *Apple Inc.*, 839 F.3d at 1063. The Federal Circuit en banc affirmed this Court's November 25, 2014 judgment. *Id.* Among other holdings, the Federal Circuit en banc held that the jury's finding that the '721 patent was not invalid was supported by substantial evidence. *Id.* at 1058. With respect to willful infringement of the '721 patent, the Federal Circuit en banc ruled as follows:

> The district court's decision was solely based on its determination that Samsung's defenses were objectively reasonable under the standard from *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). J.A. 63–66. Given the Supreme Court's recent willfulness decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), we remand the willfulness issue for the district court to consider under the new standard in the first instance.

*Id.* at 1058–59. On December 5, 2016, the mandate issued as to the Federal Circuit's October 7, 2016 en banc decision. ECF No. 2169.

On April 14, 2017, Samsung filed its Opening Brief on Willfulness. ECF No. 2186 ("Samsung Op."). On April 28, 2017, Apple filed its Response Regarding Willfulness and Opening Brief Regarding Enhanced Damages. ECF No. 2191 ("Apple Resp."). On May 5, 2017, Samsung filed its Reply Regarding Willfulness and Opposition Regarding Enhanced Damages. ECF No. 2192 ("Samsung Resp."). On May 12, 2017, Apple filed its Reply Brief Regarding Enhanced Damages. ECF No. 2195 ("Apple Reply").

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 50 permits a district court to grant judgment as a matter of

7

law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law after a jury verdict must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). The Court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (internal quotations and citations omitted).

## III. DISCUSSION

As a threshold issue, the Court first discusses the legal framework for determining willful patent infringement and enhanced damages following the United States Supreme Court's *Halo* decision. The Court then addresses whether a finding of willfulness is warranted and whether enhanced damages are appropriate.

### A. Legal Framework Following *Halo*

Prior to *Halo*, the Federal Circuit's *Seagate* decision required a patentee seeking enhanced damages to show willful infringement under a two-prong test. *Seagate*, 497 F.3d at 1371. The *Seagate* test had an objective prong and a subjective prong. *Id.* Under the objective prong, a patentee was required to "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," or in other words, the patentee was required to show "objective recklessness" on the part of the accused infringer. *Id.* "The state of mind of the accused infringer [was] not relevant to this objective inquiry." *Id.* Generally, a patentee would be unable to satisfy its burden under the objective prong if the accused infringer had an objectively reasonable defense to infringement. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) ("The 'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement."). In fact, the Federal Circuit had held that the

8

patentee's burden was to show by clear and convincing evidence that the accused infringer's defenses were "objectively baseless." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

If the objective prong was satisfied, the patentee then was required to satisfy the subjective prong, which required "the patentee [to] demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.* The objective inquiry was a "question for the Court," and the subjective inquiry was a "question for the jury." *Bard*, 682 F.3d at 1007.

In *Halo*, the United States Supreme Court held that the two-step *Seagate* inquiry was "unduly rigid" and "encumber[ed] the statutory grant of discretion to the district courts." *Halo*, 136 S. Ct. at 1932. Specifically, the *Halo* court held that "[t]he principal problem with *Seagate*'s two-part test is that it requires a finding of objective recklessness in every case before district courts may award enhanced damages." *Id.* As the Federal Circuit has subsequently confirmed, the *Halo* court "rejected *Seagate*'s strict requirement that a patentee prove the objective unreasonableness of an infringer's defenses." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (2016); *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Proof of an objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement.").

However, "*Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness." *WesternGeco*, 837 F.3d at 1362. As a result, "subjective willfulness alone . . . can support an award of enhanced damages . . . 'without regard to whether [the] infringement was objectively reckless.'" *Id.* (quoting *Halo*, 136 S. Ct. at 1933); *see also WBIP*, 829 F.3d at 1339–42 ("[T]he [*Halo*] Court explained that an infringer's subjective bad faith alone may support an award of enhanced damages.").

Although the substantive *Seagate* standard for subjective willfulness remains unaltered, the *Halo* court decreased the burden of proof. A patentee seeking enhanced damages must now show subjective willfulness by a preponderance of the evidence rather than with clear and convincing

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

evidence. *See Halo*, 136 S. Ct. at 1934 ("'[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard. . . . Enhanced damages are no exception.").

Once a patentee seeking enhanced damages demonstrates by a preponderance of the evidence the infringer's subjective willfulness, "the question of enhanced damages must be left to the district court's discretion." *Id.* "None of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Halo*, 136 S. Ct. at 1933–34. To determine whether a court should exercise its discretion to award enhanced damages, courts consider nine factors described in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. *Read*, 970 F.2d at 827.

In line with *Halo* and subsequent Federal Circuit cases interpreting *Halo*, the Court first addresses whether Apple has adequately shown the threshold requirement of subjective willfulness. The Court then turns to the subsequent inquiry as to whether the Court should exercise its discretion to award enhanced damages.

### B. Willfulness

The jury found by clear and convincing evidence that Samsung willfully infringed the '721 patent. *See* Verdict at 5, 7. The jury was instructed to find subjective willfulness where Apple showed "by clear and convincing evidence that the alleged infringer acted with reckless disregard of the patent it infringed" because Samsung "actually knew, or it was so obvious that the alleged

10

infringer should have known, that its actions constituted infringement of a valid and enforceable patent." Final Jury Instructions at 39. The jury was instructed to consider "whether [Samsung] acted in a manner consistent with the standards of commerce for its industry" and "whether [Samsung] intentionally copied a product of the other side that is covered by a patent." *Id.*

In Samsung's post-trial motion for judgment as a matter of law, Samsung argued that Apple failed to show by clear and convincing evidence that Samsung's infringement was objectively reckless, and also argued that the jury's finding of subjective willfulness was not supported by substantial evidence. JMOL Order at 24. This Court held that because Samsung had presented an invalidity defense on which a "reasonable litigant" could rely, Apple had failed to satisfy *Seagate*'s objective prong. JMOL Order at 26. Moreover, "[b]ecause the Court f[ound] no objective willfulness . . . , the Court [did] not consider whether the jury's finding of subjective willfulness was supported by substantial evidence." *Id.* at 25. Given *Halo*'s elimination of the objective prong of the *Seagate* test, the Federal Circuit en banc remanded this case for a consideration of willfulness under the *Halo* standard in the first instance. ECF No. 2168.

The Federal Circuit has provided guidance on what type of review must occur after a finding of "no objective willfulness" is vacated because of *Halo*: "On remand, the district court must review the sufficiency of this [subjective willfulness] evidence as a predicate to any award of enhanced damages, mindful of *Halo*'s replacement of *Seagate*'s clear-and-convincing evidence standard with the 'preponderance of the evidence standard.'" *WesternGeco*, 837 F.3d at 1362 (citation omitted). Thus, on remand, the Court now addresses the jury finding of subjective willfulness. The Court looks to whether substantial evidence—"relevant evidence that a reasonable mind would accept as adequate to support a conclusion"—supports the jury's finding of subjective willfulness. *Callicrate*, 427 F.3d at 1366 (describing substantial evidence standard). Samsung concedes that the substantial evidence standard applies to an evaluation of the jury's finding of subjective willfulness. *See* Samsung Op. at 5.

Apple asserts that the jury's finding of subjective willfulness is justified by Samsung's conduct after the filing of the instant suit, considered in light of Samsung's conduct before the

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

filing of the instant suit.  The Court first discusses whether Samsung's actions before the instant

suit was filed alone constitute willful patent infringement, and then discusses whether Samsung's

actions during the course of the instant litigation in light of Samsung's conduct before the instant

suit was filed constitutes willful patent infringement.

**1.     Whether Samsung Willfully Infringed the '721 Patent Before the Filing of the Instant Suit**

Samsung argues that it could not have willfully infringed the '721 patent based on any

actions Samsung took before the instant lawsuit was filed.  Specifically, Samsung argues that its

pre-filing conduct cannot support a jury verdict of willful infringement because (1) Samsung had

no knowledge of the '721 patent before the instant suit was filed and (2) the pre-filing conduct is

insufficient to show that Samsung actually copied Apple's products and the slide-to-unlock

feature.

In response, Apple concedes that Samsung had no knowledge of the '721 patent before the

filing of the instant suit, and that Samsung's actions before the filing of the instant suit alone do

not constitute willful infringement.  Apple Resp. at 7 ("The relevant period for assessing

Samsung's subjective state of mind is when Apple filed this lawsuit.").  The Court agrees with

Samsung's and Apple's conclusion that Samsung did not have any knowledge of the '721 patent

before the instant suit was filed.  "[A] party cannot be found to have 'willfully' infringed a patent

of which the party had no knowledge." *Word to Info., Inc. v. Google Inc.*, 140 F. Supp. 3d 986,

989 (N.D. Cal. 2015) (citation omitted); *see also State Indus., Inc. v. AO Smith Corp.*, 751 F.2d

1226, 1236 (Fed. Cir. 1985) ("[T]he patent must exist and one must have knowledge of it.");

*Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510–11 (Fed. Cir. 1990)

("Whether an act is 'willful' is by definition a question of the actor's intent, the answer to which

must be inferred from all the circumstances.  Hence a party cannot be found to have "willfully"

infringed a patent of which the party had no knowledge.").  Even after the United States Supreme

Court's decision in *Halo*, "[k]nowledge of the patent alleged to be willfully infringed continues to

be a prerequisite to enhanced damages." *WBIP*, 829 F.3d at 1341 (citing *Halo*, 136 S. Ct. at

12

1932–33).  Accordingly, because Samsung had no knowledge of the '721 patent before the instant

suit was filed, Samsung's conduct before the instant suit was filed alone does not constitute willful

patent infringement.

Despite Apple's concession, Apple points to four documents created before the filing of

the instant suit that it asserts are "direct evidence of copying" of Apple's slide-to-unlock feature.

Apple Resp. at 5.  However, each of the four exhibits cited by Apple shows actions taken by

Samsung in 2010, before the issuance of the '721 patent on October 25, 2011.  *See* PX121 (May

31, 2010 report comparing Samsung's "Victory" unlock feature with the iPhone's); PX157 (March

24, 2010 report comparing Samsung's "Amethyst" unlock feature with the iPhone's); PX219

(May 3, 2010 report comparing Samsung's "Kepler" unlock feature with the iPhone's); PX149

(February 10, 2010 email summarizing a meeting where an executive told those attending "Let's

make something like the iPhone").  This evidence is insufficient to show willful infringement

before the instant suit was filed because Samsung had no knowledge of Apple's patent at the time

of the actions with which those exhibits correspond.  *See AO Smith*, 751 F.2d at 1236 ("[T]he

patent must exist and one must have knowledge of it."); *see Radware, Ltd. v. F5 Networks, Inc.*,

2016 WL 4427490, at *3 (N.D. Cal. Aug. 22, 2016) ("At the time that [the defendant] allegedly

analyzed the [product embodying the patent] to introduce [a competing product] around 2002, [the

plaintiff] had not received any patents on [infringed technology]. . . . Thus, [the defendant's] sales

of the [competing product] for a decade without any notice that the [competing product] infringed

any [plaintiff] patent cannot support a finding of willfulness.").

Accordingly, the jury was not presented substantial evidence that Samsung's actions prior

to the filing of the instant lawsuit alone constitute willful patent infringement.

### 2.      Willful Patent Infringement During the Instant Suit

Samsung argues that its post-filing conduct does not provide substantial evidence of willful

infringement because (1) post-filing conduct alone cannot support a finding of willful

infringement, and (2) Samsung's post-filing conduct does not show willfulness.

Apple explicitly states that it is not arguing that post-filing conduct alone is sufficient to

13

support a finding of willful infringement. Instead, Apple argues that because Samsung copied the slide-to-unlock feature from the iPhone before the instant suit was filed (and before the '721 patent was issued), Samsung's post-filing conduct is "more culpable" such that it can form the basis for a finding of willful infringement. *See* Apple Resp. at 7 n.1 ("Apple does not contend that a defendant's continued infringement during the course of litigation is sufficient to show willfulness by itself. But here, in the context of Samsung's deliberate copying and intentional strategy to compete with Apple using Apple's own patented inventions, Samsung's continued infringement of the '721 patent—despite readily available alternatives—is evidence of willfulness.").

The Court first addresses whether, as a matter of law, post-filing conduct can support a finding of willful infringement, and then discusses whether Samsung's post-filing conduct supports a finding of willfulness here.

### a. Whether Post-Filing Conduct Can Support a Finding of Willful Infringement

In *Seagate*, in the context of determining whether an "advice of counsel" defense waives the attorney client privilege at trial, the Federal Circuit discussed how courts should address evidence of willful infringement after a plaintiff has filed suit. *Seagate*, 497 F.3d at 1373. The *Seagate* court recognized that in "ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct" because "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.* at 1374.

For post-filing conduct, the *Seagate* court held that "a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement." *Id.* Thus, "a patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness." *Id.*

However, the *Seagate* court noted that failure to secure injunctive relief may not preclude

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

enhanced damages where a patentee is "denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced. In that event, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case." *Id.*

Before the United States Supreme Court's decision in *Halo*, a number of district courts, including this Court, found *Seagate* to provide bright line rules regarding the award of enhanced damages. *See, e.g.*, *Lift-U v. Ricon Corp.*, 2012 WL 5303301, at *11 (N.D. Cal. Oct. 25, 2012) (holding that failure to move for preliminary injunction precludes a finding of willfulness where solely post-filing conduct is at issue). However, this viewpoint was not uniform, as other district courts held that *Seagate*'s post-filing conduct rule was dicta, and was better considered as part of a court's exercise of discretion. *See, e.g.*, *Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1075–76 (N.D. Cal. 2015) (holding pre-*Halo* that "it's not clear why there should be *any* relationship between the decision by a patentee to refrain from seeking a preliminary injunction and the question of whether a defendant is willfully infringing after a lawsuit is filed").

After *Halo*, however, the Federal Circuit has clarified that *Seagate* creates "'no rigid rule' that a patentee must seek a preliminary injunction in order to seek enhanced damages." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295–96 (Fed. Cir. 2017) (quoting *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 773–74 (Fed. Cir. 2014)). The *Mentor Graphics* court noted that after the United States Supreme Court's decision in *Halo*, rigid rules surrounding the award of enhanced damages are inappropriate. *See id.* (quoting *Halo*, 136 S. Ct. at 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284 . . . .")).

Instead, *Halo* provides that district courts have discretion to award enhanced damages in "egregious cases typified by willful misconduct" where a plaintiff demonstrates "subjective willfulness . . . at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1934; *see also PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, 2017 WL 2180980, at *20 (N.D. Cal. May 18, 2017) ("[Willful infringement] turns on the subjective belief of the accused infringer, measured at the time of the challenged conduct."). In fact, "[d]istrict courts have, under § 284, the

15

discretion 'to punish the full range of culpable behavior' and 'courts should continue to take into account the particular circumstances of each case.'" *PersonalWeb*, 2017 WL 2180980 at *20 (citing *Halo*, 136 S. Ct. at 1933). Thus, following *Halo*, the question is whether the infringing conduct, whether it occurs pre- or post-filing, constitutes "egregious . . . misconduct." *Halo*, 136 S. Ct. at 1934.

Samsung cites to *Radware*, 2016 WL 4427490, which held that the *Seagate* standard for post-filing willful infringement still applies after *Halo*. *Id.* at *3. However, the Court does not find *Radware* to be persuasive. First, the *Seagate* ruling on willful infringement in the context of post-filing conduct is dicta. The *Seagate* court made the rule as part of a discussion about whether certain information should be protected under the attorney-client privilege, and not as part of a dispositive determination of what kind of evidence can be used to show willful infringement. *See Seagate*, 497 F.3d at 1374 (holding that an "advice of counsel" defense to willful infringement does not waive the attorney-client privilege as to trial counsel partly because post-filing conduct is usually not relevant to a finding of willful infringement).

Second, *Radware* was issued before the Federal Circuit's *Mentor Graphics* decision, where the Federal Circuit clarified that *Halo* eliminates *any* bright line rule involving the award of enhanced damages under 35 U.S.C. § 284. *See Mentor Graphics*, 851 F.3d at 1295–96 (quoting *Halo*, 136 S. Ct. at 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284 . . . .")).

Finally, as noted above, even before *Halo*, district courts were split on whether *Seagate*'s post-filing conduct rules were actually relevant to a finding of willful infringement. *See Monolithic Power*, 127 F. Supp. 3d at 1075–76 (holding pre-*Halo* that "it's not clear why there should be *any* relationship between the decision by a patentee to refrain from seeking a preliminary injunction and the question of whether a defendant is willfully infringing after a lawsuit is filed"). Accordingly, the Court follows the principles in *Halo* and not any bright line rules created by *Seagate* and its progeny.

Thus, Samsung's post-filing conduct alone can serve as the basis of a jury's willfulness

16

finding and an award of enhanced damages.

### b. Whether Samsung's Post-Filing Conduct Constitutes Willful Infringement

The Court next addresses whether Samsung's post-filing conduct supports a jury finding of willful infringement.  To reverse the jury's finding, Samsung must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion."  *Callicrate*, 427 F.3d at 1366 (citation omitted).

The question of willful infringement turns on whether, at the time of Samsung's infringement, Samsung "knew or, it was so obvious that [Samsung] should have known, that its actions constituted infringement of a valid and enforceable patent."  Final Jury Instructions at 39 (citing *Seagate*'s subjective prong); *see Halo*, 136 S. Ct. at 1933 (holding that "subjective willfulness" requires "intentional or knowing" conduct).

The Court finds that there is substantial evidence to support the jury's finding of willfulness.  This conclusion is supported by (1) evidence that Samsung engaged in copying, (2) evidence that Samsung had a less desirable non-infringing alternative it could have quickly adopted, but chose not to, and (3) evidence relating to Samsung's invalidity and non-infringement defenses.  The Court addresses each category of evidence in turn.

First, the record contains evidence that Samsung copied Apple's slide-to-unlock feature. Although Samsung argues that there is insufficient evidence to show that Samsung copied Apple's slide-to-unlock feature, Samsung is incorrect.  Indeed, on appeal, Samsung did not even dispute that it copied Apple's slide-to-unlock feature.  *Apple*, 839 F.3d at 1054 ("Samsung does not dispute in its briefing that the jury heard substantial evidence that it copied the iPhone's claimed features.  In other words, Samsung does not challenge on appeal that substantial evidence exists in the record that Samsung copied Apple's slide to unlock feature, nor does it challenge on appeal that this evidence of copying supports a conclusion that claim 8 would not have been obvious.").  Moreover, the Federal Circuit en banc concluded that "[t]he record contains multiple internal Samsung presentations given by different Samsung groups at different times stating that the

iPhone's slide to unlock feature is better than the various Samsung alternatives." *Id.* (citing PX119; PX120; PX121; and PX219). Additionally, each of those presentations contain recommendations for improvement of the Samsung alternatives by making them more like, or the same as, the iPhone's slide-to-unlock feature. *See, e.g.*, PX121 at 100 ("Direction of Improvement: Same as iPhone, clarify the unlocking standard by sliding."). Apple also cites to a February 10, 2010 email that provided a summary of an "Executive Level Meeting Supervised by Head of Division." PX149 at 2–3. The person summarizing the meeting states: "I hear things like this: Let's make something like the iPhone," and that "[t]he iPhone has become the standard. That's how things are already." *Id.* at 3. Thus, the law of the case as established by the Federal Circuit en banc and substantial evidence in the record shows that Samsung copied the slide-to-unlock feature and other aspects of the iPhone.

The fact that Samsung copied is evidence of willfulness. The initial copying of the slide-to-unlock feature before the instant suit was filed, as discussed above, cannot alone support a willfulness finding. However, after Samsung was notified of the '721 patent by the filing of the instant suit, Samsung continued to sell the same copied designs. The continued sale of a copied product supports an inference that Samsung's infringement was willful. *See* Final Jury Instructions at 39 ("A factor that may be considered as evidence that Samsung or Apple was willful is whether it intentionally copied a product of the other side that is covered by a patent."); *see also Polara Eng'g, Inc. v. Campbell Co.*, 2017 WL 754609, at *15 (C.D. Cal. Feb. 27, 2017) (upholding willfulness jury finding where there was evidence that "Campbell intentionally copied Polara's two-wire device"). Accordingly, Samsung's copying supports the jury's finding of willfulness.

Second, there is evidence in the record that Samsung had a non-infringing alternative that it could have implemented quickly. ECF No. 1717 at 222–23 (Samsung Expert Saul Greenberg) ("Well, at the time of the filing of this case, which was February 8, 2012, there were [non-infringing alternatives, such as "circle unlock"]. . . . So it would have taken them no time at all. They could have just swapped out the interface and used that instead."). There is also evidence

that the non-infringing alternatives were not well-received by Verizon, or were less effective. PX181 at 5 (discussing Verizon's "negative response towards our company's circle lock playing the role of the unlock visual cue"); ECF No. 1623 at 187–90 (Apple Expert Andrew Cockburn) (explaining that Samsung's alternatives had various flaws that made them less desirable). From this evidence, a reasonable juror could infer that Samsung chose to continue infringing because it did not want to give up market share by switching to a less desirable alternative.

Finally, Samsung's defenses at trial do not preclude a finding of willfulness. The Court first addresses Samsung's invalidity defense and then addresses Samsung's non-infringement defenses. With respect to Samsung's invalidity defense, Apple does not argue that Samsung's invalidity defense was unreasonable. As discussed above, Samsung argued and presented evidence that the '721 patent was obvious and thus invalid because the Plaisant reference and the NeoNode devices disclosed all of the '721 patent's claim limitations. A three-judge panel of the Federal Circuit, although later vacated by the Federal Circuit en banc, determined that there was insufficient evidence to support the jury's finding that the '721 patent was not invalid. The vacated ruling of the three-judge panel supports the conclusion that Samsung's invalidity defense was reasonable. However, the Federal Circuit en banc found that substantial evidence supported the jury's finding that the '721 patent was not invalid.

Moreover, there is sufficient evidence related to Samsung's invalidity defense that supports the jury's finding of willfulness. First, the jury was presented evidence that the Patent and Trademark Office ("PTO") issued the '721 patent after considering the Plaisant reference and the NeoNode devices, the basis of Samsung's invalidity defense.[1] ECF No. 1717 at 234–35; *Cf. PersonalWeb*, 2017 WL 2180980, at *20 (holding on summary judgment that a jury could potentially find willfulness because before the infringing conduct, the PTO decided not to invalidate the patent after a reexamination proceeding). Second, the jury was presented evidence

---

[1] The Plaisant reference is composed of a paper and a video. The PTO considered the paper, but not the video. *See* ECF No. 1717 at 234–35. That does not change the fact that the jury was presented evidence that the PTO issued the '721 patent despite considering a major part of Plaintiff's invalidity defense.

19

of Samsung's copying.   Third, the jury was presented evidence that Samsung could have switched to a less desirable non-infringing alternative in no time, but that Samsung chose not to. Fourth, at trial, Samsung did not present evidence that it relied on its invalidity defense in its business decisions.

Additionally, as Samsung conceded on appeal, evidence of Samsung's copying supports a conclusion that the '721 patent was not obvious.  Similarly, the Court notes that Samsung's ability to switch to a less desirable non-infringing alternative in no time and its decision not to do so also support a conclusion that the '721 patent was not obvious.  The jury could have reached these conclusions in its willfulness determination.

Accordingly, a reasonable juror could have considered Samsung's actions, Samsung's invalidity defense, the evidence of copying, and the PTO's analysis of the same prior art, and concluded that Samsung infringed with a subjective belief that it was infringing a valid patent. Accordingly, a reasonable juror could have found that Samsung had no subjective belief in its invalidity defense.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (in analyzing subjective willfulness, the court held that "[b]ased on its own assessment of the evidence and Microsoft's defenses, the jury was free to decide for itself whether Microsoft reasonably believed there were any substantial defenses to a claim of infringement").

Moreover, Samsung presented an infringement defense as to the Galaxy Nexus, but did not present any non-infringement defense as to the Admire and Stratosphere.  *See* ECF No. 1926 at 240 ("Q. And when [Samsung's expert] got a chance, how many of those six models did he say did not infringe?  A. One, the Galaxy Nexus . . . He didn't address infringement for the other five."); *see generally* ECF No. 1717 at 197–243 (testimony of Saul Greenberg, Samsung's '721 patent expert).  The lack of a non-infringement defense as to the Admire and Stratosphere supports a jury finding that Samsung infringed the '721 patent with a subjective belief that it was infringing a valid patent, at least as to the Admire and Stratosphere.

Overall, the jury verdict will be upheld if there is "relevant evidence that a reasonable mind

20

would accept as adequate to support" a finding of willfulness by a preponderance of the evidence. *Callicrate*, 427 F.3d at 1366 (citation omitted). The above-discussed evidence, evaluated in the totality of the circumstances, is sufficient to meet this standard. Accordingly, the Court upholds the jury's finding of willfulness.

### B. Enhanced Damages

Although the Court finds that substantial evidence supports the jury's finding of willful infringement, enhanced damages are not mandatory after such a finding. The United States Supreme Court has held: "Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Halo*, 136 S. Ct. at 1933.

Thus, the Court next turns to "[w]hether the conduct is sufficiently egregious as to warrant enhancement and the amount of the enhancement that is appropriate." *WBIP*, 829 F.3d at 1341 n.13. Awards for enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo*, 136 S. Ct. at 1932. The Supreme Court has described the conduct giving rise to enhanced damages as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

In *Read*, 970 F.2d 816, the Federal Circuit provided a list of factors for trial courts to consider when deciding whether to award enhanced damages. *Id.* at 827. After *Halo*'s elimination of "rigid formulas," trial courts now look to the *Read* factors as "useful guideposts" even though they "are no longer the sole set of criteria" that can be considered. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *16 (N.D. Cal. July 18, 2016). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of

21

the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8)

defendant's motivation to harm, and (9) whether defendant attempted to conceal its misconduct.

*Read*, 970 F.2d at 827.

The Court addresses each *Read* factor in turn, and then discusses whether, on balance, an

award of enhanced damages is warranted in the instant case.

### 1. Deliberate Copying of Ideas or Design of Another

Evidence of copying weighs in favor of enhanced damages. *See Polara*, 2017 WL 754609

at *25 (finding that circumstantial evidence of copying "favors an award of enhanced damages").

As discussed above, the record contains evidence that Samsung copied Apple's slide-to-unlock

feature. On appeal, Samsung did not even dispute that it copied Apple's slide-to-unlock feature.

*Apple*, 839 F.3d at 1054 ("Samsung does not dispute in its briefing that the jury heard substantial

evidence that it copied the iPhone's claimed features. In other words, Samsung does not challenge

on appeal that substantial evidence exists in the record that Samsung copied Apple's slide to

unlock feature, nor does it challenge on appeal that this evidence of copying supports a conclusion

that claim 8 would not have been obvious."). Moreover, the Federal Circuit en banc concluded

that "[t]he record contains multiple internal Samsung presentations given by different Samsung

groups at different times stating that the iPhone's slide to unlock feature is better than the various

Samsung alternatives." *Id.* (citing PX119; PX120; PX121; and PX219). Additionally, each of

those presentations contain recommendations for improvement of the Samsung alternatives by

making them more like, or the same as, the iPhone's slide-to-unlock feature. *See, e.g.*, PX121 at

100 ("Direction of Improvement: Same as iPhone, clarify the unlocking standard by sliding.").

Apple also cites to a February 10, 2010 email that provided a summary of an "Executive Level

Meeting Supervised by Head of Division." PX149 at 2–3. The person summarizing the meeting

states: "I hear things like this: Let's make something like the iPhone," and that "[t]he iPhone has

become the standard. That's how things are already." *Id.* at 3. Thus, the law of the case as

established by the Federal Circuit en banc and substantial evidence in the record shows that

Samsung copied the slide-to-unlock feature and other aspects of the iPhone.

Moreover, there is evidence in the record that Samsung had a non-infringing alternative that it could have implemented quickly. ECF No. 1717 at 222–23 (Samsung Expert Saul Greenberg) ("Well, at the time of the filing of this case, which was February 8, 2012, there were [non-infringing alternatives, such as "circle unlock"]. . . . So it would have taken them no time at all. They could have just swapped out the interface and used that instead."). There is also evidence that the non-infringing alternatives were less desirable. PX181 at 5 (discussing Verizon's "negative response towards our company's circle lock playing the role of the unlock visual cue"); ECF No. 1623 at 187–90 (Apple Expert Andrew Cockburn) (explaining that Samsung's alternatives had various flaws that made them less desirable). Thus, Samsung decided to continue selling copied Apple products despite known, albeit less desirable, non-infringing alternatives.

Accordingly, this factor weighs in favor of enhanced damages.

### 2. Adequate Investigation and Good-Faith Belief of Patent Invalidity and Non-Infringement Defenses

The second *Read* factor looks to whether "when an infringer knew of the other's patent protection, [the infringer] investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed." *Read*, 970 F.2d at 827. Apple argues that "[t]here is no evidence in the record that Samsung did any investigation upon learning of the '721 patent or subjectively believed that the patent was not infringed or invalid at the time." Apple Resp. at 15. In response, Samsung argues that its reasonable invalidity defense shows that Samsung engaged in an adequate investigation and had a good-faith belief in the invalidity of Apple's patents. Samsung Resp. at 14–15.

Overall, the Court finds that this factor weighs slightly in favor of enhanced damages. First, although Samsung asserted a non-infringement defense at trial as to the Galaxy Nexus, Samsung did not present any non-infringement defense as to the Admire or Stratosphere. Thus, Samsung could not have had a good faith belief in a non-infringement defense as to the Admire and Stratosphere.

Second, after Samsung was put on notice of the '721 patent, Samsung asserted an invalidity defense in opposition to Apple's preliminary injunction motion. ECF No. 115 (Samsung's April 23, 2012 opposition to Apple's February 8, 2012 preliminary injunction motion). Samsung maintained that defense throughout trial, and a three-judge panel of the Federal Circuit found that there was not sufficient evidence to support the jury's finding that the '721 patent was not invalid. Although the three-judge panel's ruling was vacated by the Federal Circuit en banc, the three-judge panel's ruling supports a finding that Samsung's invalidity defense was reasonable. However, the vacated ruling does not demonstrate that Samsung relied on the defense or that it did so in good faith.

Moreover, the following evidence undermines a finding that any reliance by Samsung on its invalidity defense would have been in good faith. First, the Federal Circuit en banc vacated the three-judge panel's ruling and found that substantial evidence supported the jury's finding that the '721 patent was not invalid. Second, Samsung engaged in copying, and on appeal Samsung conceded that it's copying supports a conclusion that the '721 patent was not obvious. Third, although Samsung could have switched to a less desirable non-infringing alternative in no time, Samsung chose not to, which further supports a conclusion that the '721 patent was not obvious. Finally, the PTO issued the '721 patent after considering the Plaisant reference and NeoNode devices, the basis of Samsung's invalidity defense.[2]

Third, there is no evidence in the record about the nature, scope, and adequacy of any Samsung investigation after Samsung learned about the '721 patent. There is also no evidence in the record that Samsung subjectively believed that the patent was not infringed or invalid, or relied upon such belief in its business decisions. The absence of evidence of an adequate investigation and of Samsung's reliance on its defenses weighs in favor of enhanced damages. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2017 WL 130236, at *4 (N.D. Cal. Jan.

---

[2] As noted in footnote 1 above, the Plaisant reference is composed of a paper and a video. The PTO considered the paper, but not the video. *See* ECF No. 1717 at 234–35. Regardless, the PTO's consideration of this prior art undermines the contention that Samsung relied on its invalidity defense in good faith.

24

13, 2017) (finding lack of evidence of adequate investigation and good faith belief factor to weigh in favor of enhancement).  The Court cannot determine whether Samsung in fact "formed a good-faith belief that [the '721 patent] was invalid or that it was not infringed," as required by the second *Read* factor, without this evidence.

Overall, the Court finds that the adequate investigation and good faith belief in a defense factor slightly weighs in favor of enhancement.

### 3. Behavior as Party to the Litigation

Apple states that its "motion for enhanced damages is focused on Samsung's deliberate copying and does not rely on litigation misconduct to support enhancement."  Apple Resp. at 16. "Typically, 'litigation misconduct' refers to bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation."  *i4i*, 598 F.3d at 859.  Courts in this district have held that a lack of defendant misconduct weighs against an award of enhanced damages.  *See Finjan*, 2016 WL 3880774 at *16 ("As the Court discussed in relation to Finjan's request for attorneys' fees, this was a hard fought case but did not cross the line into improper conduct."); *Power Integrations*, 2017 WL 130236 at *4 (holding that in the absence of party misconduct, "the third factor weighs against enhancement").  Accordingly, because Apple does not rely on any litigation misconduct here, the Court finds that the third factor weighs against enhanced damages.

### 4. Size and Financial Condition

Apple concedes that "Samsung's size and financial condition, standing alone, do not require enhancement."  Apple Resp. at 16.  However, Apple argues that Samsung's size shows that it could have implemented a non-infringing alternative to the slide-to-unlock feature quickly. Indeed, Apple cites to Samsung's expert testimony where Samsung's expert testified that Samsung could easily design around the '721 patent.  ECF No. 1717 at 222–23 (Samsung Expert Saul Greenberg) ("Well, at the time of the filing of this case, which was February 8, 2012, there were [two non-infringing alternatives, such as circle unlock]. . . . So it would have taken them no time at all.  They could have just swapped out the interface and used that instead.").  Thus, because

25

Plaintiff's size could have been leveraged to implement a non-infringing alternative, the Court finds that Samsung's size weighs in favor of enhanced damages. *See Radware*, 2016 WL 4427490 at *8 (holding that the large size of the infringer weighed in favor of enhanced damages).

### 5. Closeness of the Case

The Court next addresses the fifth *Read* factor, the closeness of the case. This factor weighs against enhancement where "[b]oth parties advanced reasonable positions." *Finjan*, 2016 WL 3880774 at *17; *see also Power Integrations*, 2017 WL 130236 at *4 (holding that the closeness of the case factor weighed against enhanced damages where "both parties took reasonable positions on the various issues raised as to both validity and infringement").

A three-judge panel of the Federal Circuit found that there was not substantial evidence supporting the jury's finding that the '721 patent was not invalid. Although this three-judge panel decision was vacated by the Federal Circuit en banc, the three-judge panel decision supports a finding that Samsung's defense was reasonable. Moreover, although the Court acknowledges that Samsung did not present any non-infringement defense as to the Admire and Stratosphere, the lack of a non-infringement defense as to those two products does not mean that the case was not close because of the invalidity defense.

Accordingly, this factor weighs against enhanced damages.

### 6. Duration of Samsung's Misconduct and Samsung's Remedial Efforts

The Court next addresses the sixth and seventh *Read* factors, the duration of Samsung's misconduct and Samsung's remedial efforts. A longer duration of misconduct favors enhanced damages. *See Power Integrations*, 2017 WL 130236 at *4 (holding that infringement lasting 10 years favored enhanced damages); *Polara*, 2017 WL 754609 at *26 (finding that six years of infringement weighed in favor of enhanced damages). In contrast, prompt, effective remedial efforts weigh against enhanced damages.

Here, three products were held to infringe the '721 patent—the Galaxy Nexus, the Admire, and the Stratosphere. Samsung was put on notice of the '721 patent on February 8, 2012, replied to Apple's motion for preliminary injunction as to the Galaxy Nexus on April 23, 2012, and this

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

Court issued its order granting a preliminary injunction as to the Galaxy Nexus on June 9, 2012.

The parties do not dispute that Samsung implemented a non-infringing design around in the Admire by July 2012, and in the Stratosphere by August 2012. Samsung's implementation of these non-infringing design arounds in the Admire and Stratosphere took place within 2 months of this Court's June 9, 2012 entry of a preliminary injunction order against the Galaxy Nexus. Even Apple concedes that the fact that the Admire and Stratosphere were rendered non-infringing "mitigate[d] against enhancement," at least to some extent. Apple Reply at 8. Thus, the duration of infringement and the remedial actions with respect to the Admire and Stratosphere weigh against enhancement.

The Galaxy Nexus was infringing for a longer time period. As an initial matter, the parties disagree about when the infringing version of the Galaxy Nexus was released, November 17, 2011 or April 5, 2012. However, it is undisputed that in July of 2012, an update to the Galaxy Nexus changed the slide-to-unlock feature on the phone, which altered Samsung's non-infringement defense, but was still found to be infringing. *See* ECF No. 1623 at 153. Additionally, the parties do not dispute that the Galaxy Nexus was rendered non-infringing by January 28, 2013. *See* ECF No. 1623 at 157. If the correct release date was November 17, 2011, the amount of time Samsung infringed while being on notice of the '721 patent was approximately 12 months, from the filing of the complaint on February 8, 2012 to January 28, 2013. If the correct release date was April 5, 2012, the amount of time Samsung infringed while being on notice of the '721 patent was approximately 10 months, from the April 25, 2012 release date to January 28, 2013. Therefore, Samsung was selling infringing products while Samsung was on notice of the '721 patent for approximately 10 or 12 months.[3]

---

[3] Apple argues that the infringing Galaxy Nexus was released on April 5, 2012, after the filing of the instant suit and after Samsung was on notice of the '721 patent, which Apple contends shows egregious misconduct. Samsung's response to an interrogatory indicates that the Galaxy Nexus was released on April 5, 2012, PX 300 at 15, and Apple's expert seemingly relied on that date when creating its expert report, *see* ECF No. 1623 at 156–57, 215–16. On the other hand, Apple's response to an interrogatory states that it became aware that the Galaxy Nexus was infringing on November 17, 2011. PX508 at 7. Apple attempts to harmonize these statements by asserting that "the *original* Galaxy Nexus was not accused of infringing the '721 patent," but was only accused

27

The Court finds that a period of infringement of 10 to 12 months after being put on notice of the '721 patent weighs in favor of enhanced damages. This is especially true in this case where the law of the case as established by the Federal Circuit en banc and substantial evidence in the record shows that Samsung copied the slide-to-unlock feature from Apple. Moreover, Samsung's expert testified that Samsung could have implemented known non-infringing alternatives in "no time at all." ECF No. 1717 at 222–23 (Samsung Expert Saul Greenberg) ("Well, at the time of the filing of this case, which was February 8, 2012, there were [two non-infringing alternatives, such as circle unlock]. . . . So it would have taken them no time at all. They could have just swapped out the interface and used that instead."). However, evidence in the record indicates that Samsung decided not to implement those non-infringing alternatives because they were less desirable. *See* PX181 at 5 (discussing Verizon's "negative response towards our company's circle lock playing the role of the unlock visual cue"); ECF No. 1623 at 187–90 (Apple Expert Andrew Cockburn) (explaining that Samsung's alternatives had various flaws that made them less desirable).

Although Samsung cites to *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2009 WL 3064800 (M.D. Fla. Sept. 22, 2009), for the proposition that 16 months of infringement weighs against enhanced damages, the *Hako-Med* case did not involve evidence of direct copying or testimony from the infringer's expert that known, less desirable alternatives could have been implemented in no time at all. Thus, the 10 to 12 month period of infringement weighs in favor of enhanced damages.

However, the extent to which that length of time favors enhanced damages is discounted to some extent because Samsung updated the slide-to-unlock feature in July 2012, at the same time that the Admire and Stratosphere were also rendered non-infringing. The Galaxy Nexus before

---

of infringing "other Apple patents, including the '647 patents and the '172 patents." Apple Reply at 8 & n.2. However, if that is the case, Apple should not have moved for a preliminary injunction against Samsung on February 8, 2012 based on the Galaxy Nexus's infringement of the '721 patent. ECF No. 10. Apple's preliminary injunction motion asserts that the infringing Galaxy Nexus was released on December 15, 2011. *Id.* at 12. On the facts cited by the parties, the Court cannot definitively resolve this factual dispute, and thus does not find that it weighs for or against enhancement.

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

July 2012 used a visible unlock image that was "continuously move[d]" by the user. ECF No. 1-3, '721 patent cls. 7 (including claim limitation that the user "continuously move the unlock image"). The July 2012 update changed the continuously moving visible unlock image on the Galaxy Nexus to a series of three dots that lit up in sequence as the person moved their finger across the screen, which Samsung argued did not infringe the '721 patent because there was no "continuously mov[ing]" unlock image. *See* JMOL Order at 22–24; *see also* ECF No. 1896-3 at 21 ("[T]here is no evidence of any 'unlock image' that continuously moves."). However, the jury found this unlock image to infringe the '721 patent. Verdict at 5. In this Court's JMOL order, the Court found substantial evidence supported the jury's infringement finding because Apple's expert testified and presented evidence that the user was continuously moving "a 'circle that's a spotlight onto [a series of dots]" that "moves in accordance with the user's contact." JMOL Order at 23–24 (quoting ECF No. 1623 at 245). Although the July 2012 update was still found to infringe, it did alter Samsung's non-infringement defense and shows an effort to design around the '721 patent. Samsung's effort to design around the '721 patent, although ineffective, decreases, to some extent, Samsung's culpability for the length of time the Galaxy Nexus continued to infringe.

Overall, after balancing the remedial actions taken with respect to the Admire and Stratosphere against those taken with respect to the Galaxy Nexus, the Court finds that the duration of infringement and Samsung's remedial action weigh slightly against the award of enhanced damages.

### 7.    Samsung's Motivation to Harm

The Court next addresses whether Samsung had a motivation to harm by continuing its infringement after the instant lawsuit was filed. "[W]here, as here, the infringer engages in infringing conduct to gain an edge over the patentee in a competitive market, this factor favors an award of enhanced damages." *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1116–17 (N.D. Cal. 2009); *see also Polara*, 2017 WL 754609 at *26 (same).

Here, at the time of infringement, evidence in the record shows that Apple and Samsung were direct competitors in the "extremely competitive" smartphone market. *See, e.g.*, ECF No.

29

1622 at 205 ("We were clearly in an extremely competitive environment with Samsung"); ECF No. 1716 at 86 ("Beating Apple is no longer merely an objective. It is our survival strategy." (quoting PX 216 at 3)). The law of the case as established by the Federal Circuit en banc and substantial evidence in the record shows that Samsung copied the slide-to-unlock feature from Apple. Moreover, Samsung's expert states that Samsung could have quickly implemented a non-infringing alternative, but did not do so. *See* ECF No. 1717 at 222–23 (Samsung Expert Saul Greenberg). There is evidence in the record that Samsung did not implement the non-infringing alternatives because those alternatives were not well-received by Verizon or had various defects. *See* PX181 at 5 (discussing Verizon's "negative response towards our company's circle lock playing the role of the unlock visual cue"); ECF No. 1623 at 187–90 (Apple Expert Andrew Cockburn) (explaining that Samsung's alternatives had various flaws that made them less desirable). Together, this evidence indicates that Samsung was motivated to leverage a competitive advantage against Apple using Apple's own designs.

Samsung cites *Power Integrations* to argue that "[s]imply because a company seeks to gain a competitive advantage . . . does not mean that the company has a motivation to harm." *Power Integrations*, 2017 WL 130236 at \*5. However, *Power Integrations* did not involve evidence that the infringer used a copied design in order to avoid using a less desirable alternative. Therefore, the Court finds *Power Integrations* to be inapposite on this particular point.

Accordingly, this factor weighs in favor of enhanced damages.

### 8. Attempts to Conceal Misconduct

The Court next considers whether Samsung attempted to conceal its infringing activity. The Court finds this factor to not be relevant to the analysis in the instant case. The slide-to-unlock feature is a consumer-facing invention. Indeed, it is one of the first features that consumers interact with when using a touchscreen mobile device. Thus, Samsung did not, and could not, conceal its infringement. Accordingly, the Court finds this factor to be neutral.

### 9. Balance of Factors

Factors 1, 4, and 8 weigh in favor of enhanced damages; factor 2 slightly weighs in favor

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES

of enhanced damages; factors 3 and 5 weigh against enhanced damages; factors 6 and 7 weigh slightly against enhanced damages; and factor 9 is neutral. Taking into account the jury's finding and the above *Read* factors, the Court finds that enhancement is warranted in this case. The evidence of direct copying, continued sale of copied products after Samsung received notice of the '721 patent, Samsung's motivation to obtain a competitive advantage using Apple's own designs, and the availability of less desirable non-infringing alternatives that could be implemented in no time indicate that Samsung's actions were sufficiently egregious to warrant enhancement.

However, "[t]rebling damages is reserved for the cases at the most egregious end of the spectrum." *Polara*, 2017 WL 754609 at *27. Here, Samsung's remedial actions, the duration of misconduct, the closeness of the case, and Samsung's litigation behavior, although insufficient to preclude the award of enhanced damages, weigh against an award of double or treble damages and weigh in favor of a moderate award. Accordingly, the Court exercises its discretion and finds that increasing the damages award by 30% of the compensatory damages award is a sufficiently punitive sanction for Samsung's conduct in this case. The jury awarded $2,990,625 to Apple on the '721 patent. The Court increases this amount by $897,187.50 to a total award of $3,887,812.50.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the jury was presented substantial evidence of willfulness and that a moderate award of enhanced damages are warranted in this case in the amount of $897,187.50.

**IT IS SO ORDERED.**

Dated: June 22, 2017

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 12-CV-00630-LHK
ORDER RE: WILLFULNESS AND ENHANCED DAMAGES