1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3              SAN JOSE DIVISION

4

5

6   APPLE INC., A CALIFORNIA          )   C-12-00630 LHK
    CORPORATION,                      )
                                      )   SAN JOSE, CALIFORNIA
7                  PLAINTIFF,         )
                                      )   JANUARY 11, 2018
8             VS.                     )
                                      )   PAGES 1-76
9   SAMSUNG ELECTRONICS CO., LTD.,    )
    A KOREAN BUSINESS ENTITY;         )
10  SAMSUNG ELECTRONICS AMERICA,      )
    INC., A NEW YORK CORPORATION;     )
11  SAMSUNG TELECOMMUNICATIONS        )
    AMERICA, LLC, A DELAWARE          )
12  LIMITED LIABILITY COMPANY,        )
                                      )
13              DEFENDANTS.           )
    _____    )
14                                    )
                                      )
15

16           TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE LUCY H. KOH
17          UNITED STATES DISTRICT JUDGE

18

19

20           APPEARANCES ON NEXT PAGE

21

22

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                 CERTIFICATE NUMBER 9595
25

```
1

2     A P P E A R A N C E S:

3     FOR PLAINTIFF:          WILMER, CUTLER, PICKERING,
      APPLE:                  HALE AND DORR
4                             BY:  MARK D. SELWYN
                              950 PAGE MILL ROAD
5                             PALO ALTO, CALIFORNIA  94304

6                             BY:  CALVIN WALDEN
                              7 WORLD TRADE CENTER
7                             NEW YORK, NEW YORK  10007

8                             BY:  WILLIAM F. LEE
                                   SARAH R. FRAZIER
9                             60 STATE STREET
                              BOSTON, MASSACHUSETTS  02109
10
                              MORRISON & FOERSTER
11                            BY:  ERIK J. OLSON
                              755 PAGE MILL ROAD
12                            PALO ALTO, CALIFORNIA  94304

13    FOR THE DEFENDANT:      QUINN, EMANUEL, URQUHART & SULLIVAN
                              BY:  KATHLEEN M. SULLIVAN
14                                 RICHARD W. ERWINE
                                   JOHN T. MCKEE
15                                 ANASTASIA M. FERNANDS
                              51 MADISON AVENUE, 22ND FLOOR
16                            NEW YORK, NEW YORK  10010

17                            BY:  VICTORIA F. MAROULIS
                              555 TWIN DOLPHIN DRIVE
18                            SUITE 560
                              REDWOOD SHORES, CALIFORNIA  94065
19

20

21

22

23

24

25
```

```
1      SAN JOSE, CALIFORNIA                    JANUARY 11, 2018

2                      P R O C E E D I N G S

3         (COURT CONVENED AT 1:36 P.M.)

4              THE CLERK:  YOUR HONOR, CALLING APPLE, INC., VERSUS

5      SAMSUNG ELECTRONICS, ET AL., CASE 12-CV-00630 LHK.

6         PLEASE STATE YOUR APPEARANCES.

7              MR. SELWYN:  MARK SELWYN ON BEHALF OF APPLE.  WITH ME

8      TODAY AT COUNSEL TABLE IS SARAH FRAZIER, CALVIN WALDIN,

9      ERIK OLSON, AND ON THE PHONE IS WILLIAM LEE.

10             THE COURT:  OKAY.  WELCOME.

11             MS. SULLIVAN:  GOOD AFTERNOON, YOUR HONOR.

12        FOR SAMSUNG, I'M KATHLEEN SULLIVAN, AND TODAY WITH ME

13     APPEARING FOR SAMSUNG ARE VICTORIA MAROULIS, RICHARD ERWINE,

14     ANASTACIA FERNANDS, AND JOHN MCKEE.

15             THE COURT:  OKAY.  GOOD AFTERNOON AND WELCOME.

16        OKAY.  I DO HAVE SOME QUESTIONS, BUT I AM GOING TO JUST

17     GIVE YOU, EACH SIDE, 15 MINUTES TO PRESENT WHATEVER YOU WANT.

18     WILL THAT BE SUFFICIENT?

19        AND THEN WE'LL GO INTO QUESTIONS.  I HAVE A LIST OF

20     QUESTIONS AS WELL.

21             MR. SELWYN:  WE'D BE HAPPY TO DO IT IN 15 MINUTES,

22     YOUR HONOR.

23             THE COURT:  OKAY.

24             MS. SULLIVAN:  YES, YOUR HONOR, THAT WOULD BE FINE

25     WITH SAMSUNG.
```

1           THE COURT:  ALL RIGHT.  SO IT LOOKS LIKE IT'S 1:38.

2     GO AHEAD.  YOU HAVE THE BURDEN.

3           GO AHEAD, PLEASE.

4           MR. SELWYN:  THANK YOU, YOUR HONOR.

5           YOUR HONOR, AS THE COURT WILL RECALL, IN 2014 APPLE

6     ASSERTED THE '647 PATENT, WHICH RELATES TO APPLE'S QUICK LINKS

7     OR DATA DETECTORS PATENT, AND THE JURY FOUND THAT CLAIM 9 WAS

8     INFRINGED.

9           WHAT I'D LIKE TO DO IN THIS 15 MINUTES IS PROVIDE YOU WITH

10    AN OVERVIEW OF THE REDESIGN PRODUCTS, WHAT HAS CHANGED AND,

11    EQUALLY IMPORTANT, WHAT HAS NOT CHANGED IN EACH OF THOSE

12    DESIGNS.

13          SO IF WE COULD BEGIN WITH SLIDE 19.  AND, YOUR HONOR, I

14    BELIEVE WE'VE HANDED UP A HARD COPY OF THE SLIDE DECK FROM

15    WHICH WE WILL BE WORKING.

16          THE COURT:  I HAVE IT.  THANK YOU.

17          MR. SELWYN:  SAMSUNG HAS THREE REDESIGNS WHICH IT HAS

18    LABELED DA1-A, DA1-B, AND DA2.  DA1-A HAS BEEN IMPLEMENTED IN

19    BROWSER AND MESSENGER, WHILE DA1-B WAS IMPLEMENTED IN BROWSER

20    ONLY, AND DA2 IMPLEMENTED IN MESSENGER ONLY.

21          FOR EACH REDESIGN, SAMSUNG ONLY IMPLEMENTED ONE OR TWO

22    RELATIVELY MINOR CHANGES AS THIS SLIDE SUMMARIZES.  THERE ARE A

23    TOTAL OF 83 POST-TRIAL REDESIGN PHONES AT ISSUE, AND THE

24    MAJORITY OF THOSE IMPLEMENT DA1-A IN BROWSER AND DA2 IN

25    MESSENGER.

1          IN ADDITION, THERE ARE FIVE ADDITIONAL PHONES FOR WHICH

2     SAMSUNG DID NOT IMPLEMENT ANY REDESIGN AND FOR WHICH IT HAS

3     AGREED TO PAY ONGOING ROYALTIES.

4          IF WE GO TO SLIDE 22, IT'S IMPORTANT TO NOTE THAT EVEN

5     ACCORDING TO SAMSUNG, THE REDESIGNS ARE DIRECTED TO AVOID ONLY

6     TWO OF THE LIMITATIONS OF CLAIMS 1 AND 9.  REDESIGNS DA1-A AND

7     DA1-B ARE DIRECTED TOWARDS ONLY LIMITATION 1(C)(2) RELATING TO

8     THE USER INTERFACE ENABLING THE SELECTION OF A DETECTED

9     STRUCTURE, AND INDEED, ONLY DIRECTED TOWARDS A SINGLE WORD IN

10    THAT LIMITATION, "DETECTED."

11         DA2 IS DIRECTED TOWARDS THE SAME LIMITATION, 1(C)(2), AS

12    WELL AS CLAIM 9, WHICH REQUIRES A POP-UP WINDOW.

13         SO STARTING WITH DA1-A, THIS REDESIGN IS DIRECTED TOWARDS

14    THE BROWSER APPLICATION FOR 73 PHONES, AND ALSO THE MESSENGER

15    APPLICATION FOR FIVE PHONES.

16         NOW, ONE OF THE THINGS THAT WE'RE GOING TO SEE IN THIS

17    PRESENTATION IS THAT INSTEAD OF REMOVING THE QUICK LINKS

18    FUNCTIONALITY FOR THESE PHONES, WHAT SAMSUNG DID WAS SIMPLY

19    MAKE SOME MINOR AND OBVIOUS SOFTWARE MODIFICATIONS THAT LEAVES

20    THE USER EXPERIENCE ESSENTIALLY THE SAME, IF NOT IDENTICAL, AS

21    BEFORE.

22         THE DA1-A PHONES LOOK AND ACT LIKE THE ADJUDICATED

23    INFRINGING PHONES IN THAT THEY PRESENT STRUCTURES TO THE USER,

24    THEY ALLOW THE USER TO SELECT STRUCTURES USING THEIR FINGER,

25    THEY DISPLAY THE SAME CONTEXTUAL POP-UP MENU AS BEFORE, AND

1    THEY ALLOW USERS TO LAUNCH ACTIONS FROM THAT POP-UP MENU, JUST

2    AS BEFORE.

3          THIS PICTURE SHOWS ON THE RIGHT THE REPRESENTATIVE GALAXY.

4    THE PICTURES ON THE RIGHT HERE SHOW HOW ON THE REPRESENTATIVE

5    GALAXY S5 PRESENTS STRUCTURES TO THE USER, SUCH AS IN THE

6    LEFT-HAND PICTURE, TELEPHONE NUMBERS AND URL'S; DISPLAYS A

7    CONTEXTUAL POP-UP MENU FROM WHICH USERS CAN SELECT LINKED

8    ACTIONS, AS IN THE MIDDLE PICTURE; AND THEN LAUNCH THE LINKED

9    ACTIONS, SUCH AS A CALL IN THE RIGHT-HAND PICTURE.

10          SO THE DA1, ANY REDESIGN ENTAILS JUST TWO MINOR CHANGES IN

11    BROWSER AND MESSENGER.

12          AND SAMSUNG AND ITS EXPERTS DON'T DISPUTE THAT THE CHANGES

13    WERE OBVIOUS, THEY DON'T DISPUTE THAT IT WAS A MERE TRIVIAL

14    CODE CHANGE AND THAT IT'S BASICALLY IMPOSSIBLE TO DISCERN FROM

15    THE USER PERSPECTIVE.

16          THE TWO MODIFICATIONS ARE FIRST IN THE BROWSER, DA1-A, A

17    CHANGE FROM LONG PRESS TO SHORT TAP IN THE BROWSER.

18          NOW, AS YOU'LL RECALL, YOUR HONOR, CLAIM 9 ONLY REQUIRES

19    THAT THE USER SELECT THE STRUCTURE.  IT CONTAINS NO REQUIREMENT

20    REGARDING THE TYPE OF GESTURE TO MAKE THAT SELECTION.

21          IN THE ADJUDICATED INFRINGING PRODUCTS, THE JURY FOUND

22    THAT USE -- THAT PRODUCTS THAT USE EITHER A SHORT TAP OR A LONG

23    TAP INFRINGED, AND THAT VERDICT BINDS THE JURY -- THE COURT NOW

24    TO FIND THAT A SHORT TAP INFRINGES JUST AS A LONG TAP WOULD.

25          AND EVEN IF WE DIDN'T HAVE THE JURY FINDING ALREADY, THE

1      SWITCH FROM A LONG TAP -- A LONG PRESS TO A SHORT TAP IS AN

2      OBVIOUS MODIFICATION THAT RENDERS THE CHANGE WHOLLY

3      INSIGNIFICANT.

4           AS SAMSUNG'S EXPERT ADMITS, AND SAMSUNG DOESN'T DISPUTE, A

5      SHORT TAP IS AN INTENTIONAL GESTURE THAT, LIKE THE LONG PRESS,

6      INDICATES INTENT ON THE PART OF THE USER.

7           SECOND, WITH RESPECT TO THE CHANGE OF MOVING THE CALL OF

8      THE DETECTION FUNCTION IN THE BROWSER FROM FINGER DOWN TO

9      FINGER UP, THIS, TOO, IS A COMPLETELY INSIGNIFICANT CHANGE.

10     AND THE REASON FOR THAT IS A FINGER UP ACTION WILL ALWAYS

11     FOLLOW A FINGER DOWN ACTION.  THESE TWO ACTIONS ARE

12     INEXTRICABLY LINKED.  FROM A FUNCTIONAL OR A USER PERSPECTIVE,

13     THERE'S NO DIFFERENCE TO THE CHANGE MADE IN HOW THE SOFTWARE IS

14     PROGRAMMED TO CALL THE FUNCTION UPON A FINGER DOWN OR A FINGER

15     UP.  A USER WOULD NEVER KNOW.

16          IN BOTH THE DA1 PRODUCTS, BROWSER PRODUCTS AND THE

17     ADJUDICATED INFRINGING PRODUCTS, THE DETECTION BEGINS WITH THE

18     FINGER DOWN EVENT, WHICH STARTS A TIMER.  IF THE USER LIFTS HIS

19     OR HER FINGER OFF THE SELECTED STRUCTURE WITHIN A SECOND IN THE

20     DA1-A BROWSER PRODUCTS, THE SOFTWARE RECOGNIZES THAT THE USER

21     HAS PERFORMED A SHORT TAP AND CALLS THE FUNCTION A DETECT

22     STRUCTURE IN THE SOFTWARE.

23          THE USER EXPERIENCE IS IDENTICAL, WHETHER A SHORT TAP OR A

24     LONG TAP.  AND THE DIFFERENCE BETWEEN THE LONG AND THE SHORT

25     CAN BE AS LITTLE AS 1/100THS OF A SECOND.

1    AS SAMSUNG'S EXPERT HAS ACKNOWLEDGED, THE CODE FOR

2    PERFORMING THE DETECTION IN THE REDESIGN PRODUCTS IS

3    SUBSTANTIALLY THE SAME AS IN THE ADJUDICATED PRODUCTS,

4    NOTWITHSTANDING THAT SWITCH IN THE TIMING.

5    WITH RESPECT TO THE DA1-A MESSENGER, THE TWO MODIFICATIONS

6    MADE BY SAMSUNG ARE LIKEWISE MINOR AND INSIGNIFICANT TO THE

7    USER EXPERIENCE.

8    THE DA1-A MESSENGER PRODUCTS DISPLAY A CONTEXTUAL POP-UP

9    MENU UPON A SHORT TAP, JUST AS THE ADJUDICATED PRODUCTS DID.

10   THE ONLY CHANGE IS NO PRE-DETECTION AND NO UNDERLINING.

11   BUT CLAIM 9 DIDN'T REQUIRE PRE-DETECTION OR UNDERLINING OF

12   STRUCTURES.  AS IN THE ADJUDICATED INFRINGING PRODUCTS, SOME OF

13   THE FEATURES THE JURY FOUND TO INFRINGE, NAMELY WITH RESPECT TO

14   THE BROWSER APPLICATION, DID NOT PRE-DETECT OR UNDERLINE

15   STRUCTURES.

16   SO LET'S PUT IT TOGETHER.  WE'VE PREPARED SIDE-BY-SIDE

17   VIDEOS TO SHOW YOUR HONOR WHAT THE JURY SAW AND NOW WHAT THE

18   REDESIGN DA1-A PRODUCTS SHOW.

19   SO IN THIS VIDEO, ON THE LEFT-HAND SIDE WE HAVE THE

20   GALAXY S III.  IT'S THE SAME VIDEO THAT WE'VE SHOWN TO THE JURY

21   AT TRIAL.  ON THE RIGHT IS THE VIDEO WE'VE CREATED FOR THE

22   DA1-A S5 PRODUCT, AND WE'LL PLAY A PORTION OF THE VIDEO IN

23   SEQUENCE.

24   FIRST, ON THE LEFT, WE CAN SEE THE USER OPENING A BROWSER

25   FROM THE GALAXY S III MAIN SCREEN AND ENLARGING THE SCREEN SO

1    HE CAN BETTER SEE THE STRUCTURES, INCLUDING THE TELEPHONE

2    NUMBERS.

3         NOW LET'S DO IT ON THE REDESIGN PRODUCT ON THE RIGHT.

4         WE SEE THE IDENTICAL PROCESS TAKING PLACE.

5         SECOND, ON THE LEFT, WE SEE THE USER SELECTING A STRUCTURE

6    IN THE GALAXY S III BY EMPLOYING A LONG PRESS, WHICH RESULTS IN

7    THE DISPLAY OF THIS CONTEXTUAL POP-UP WINDOW.

8         NOW LET'S DO IT ON THE RIGHT.

9         HERE WE SEE THE USER SELECTING A STRUCTURE BY EMPLOYING A

10   SHORT TAP.  THAT'S THE ONLY DIFFERENCE.  IT HAPPENS QUICKLY.

11   BUT YOU ALSO SEE HOW, IN BOTH, THE STRUCTURE THAT IS SELECTED

12   IS HIGHLIGHTED, JUST AS BEFORE IN THE CONTEXTUAL POP-UP WINDOW.

13        AND, OF COURSE, THE CONTEXTUAL POP-UP MENU APPEARS IN BOTH

14   DEVICES AND IT'S EXACTLY THE SAME.

15        NEXT, ON THE LEFT, THE USER CAN LAUNCH AN ACTION BY

16   PRESSING ONE OF THE OPTIONS IN THE MENU, HERE THE ACTION IS

17   DIALING A NUMBER, WHICH CAUSES THE PHONE TO LAUNCH THE DIALLING

18   APP AND SET IT UP WITH THE PHONE NUMBER FOR DIALLING.

19        LET'S TRY IT ON THE RIGHT.

20        THE EXACT SAME PROCESS OCCURS.

21        SO AS THESE VIDEOS ALONE DEMONSTRATE, SAMSUNG'S DA1-A

22   REDESIGN TO THE PORTION OF THE PRODUCT THAT WAS FOUND TO

23   INFRINGE THE USER INTERFACE LIMITATION DOESN'T RESULT IN A

24   COLORABLY DIFFERENT USER INTERFACE AND IT STILL INFRINGES.

25        TURNING TO THE DA1-B REDESIGN, SLIDE 29.  LIKE THE DA1-A

1    PHONES, THE DA1-B PHONES STILL PRESENT STRUCTURES TO THE USER,

2    THEY ALLOW A USER TO SELECT THOSE STRUCTURES, THEY DISPLAY

3    CONTEXTUAL POP-UP MENUS AS BEFORE, AND THEY LAUNCH ACTIONS FROM

4    THOSE MENUS BASED ON USER SELECTION.

5         THERE WAS JUST ONE CHANGE TO THE DA1-B PHONES, AND THAT IS

6    THE CALLING OF THE CONTEXTUAL POP-UP MENU COMES AFTER A SHORT

7    TAP RATHER THAN A LONG PRESS.  THAT'S IT.  THAT'S THE ONLY

8    CHANGE.

9         THAT'S A MEANINGLESS CHANGE BECAUSE CLAIM 9 ONLY REQUIRES

10   THAT THE USER SELECT A STRUCTURE.  IT DOESN'T IMPOSE ANY

11   REQUIREMENTS REGARDING THE TYPE OF GESTURE TO MAKE THAT

12   SELECTION.

13        AND INDEED, AS WE KNOW, THE JURY HAS ALREADY FOUND THAT A

14   SHORT TAP CAN BE AN INFRINGING GESTURE.

15        AND FURTHERMORE, THE TIMING OF THE DETECTION FUNCTIONS TO

16   THIS REDESIGN HAS NOT CHANGED AT ALL.  THE DETECTION FUNCTIONS

17   ARE STILL CALLED ON FINGER DOWN AS IN THE ADJUDICATED

18   INFRINGING PRODUCTS.

19        IN THE INTEREST OF TIME AND BECAUSE OF THE SIGNIFICANT

20   OVERLAP OF THE USER EXPERIENCE BETWEEN THE DA1-B PHONES AND THE

21   DA1-A, WE HAVEN'T CREATED A VIDEO DEMONSTRATIVE FOR THIS, BUT

22   LET ME BRIEFLY SHOW WHAT THE -- LET ME BRIEFLY SHOW SCREEN

23   SHOTS OF THE OLD AND THE NEW.

24        IF YOU GO TO SLIDE 32.

25        IN BOTH THE ADJUDICATED INFRINGING PHONES AND THE DA1-B

1    PHONES, THE SELECTION OF A STRUCTURE BY THE USER WILL RESULT IN

2    THE DISPLAY OF THE CONTEXTUAL POP-UP MENU.  AGAIN, AS IN THE

3    DA1-A, THE PHONES ARE IDENTICAL IN THIS MANNER, AND IN BOTH

4    INSTANCES SATISFY THE USER INTERFACE AND POP-UP MENU

5    LIMITATIONS.

6         IF WE GO TO SLIDE 33, IN BOTH INSTANCES, THE USER CAN

7    SELECT AN ACTION IN THE CONTEXTUAL POP-UP MENU, SUCH AS

8    LAUNCHING A PHONE APP WITH THE PHONE NUMBER READY TO DIAL.

9         LAST REDESIGN, DA2.

10        AS IN REDESIGNS DA1-A AND DA1-B, THE REDESIGN DA2 PHONES

11   STILL OPERATE IN SIGNIFICANTLY THE SAME WAY AS THE ADJUDICATED

12   INFRINGING PHONES OPERATING IN MESSENGER.  THEY CREATE TEXT

13   STRUCTURES AND HIGHLIGHT THEM, THEY ALLOW USERS TO SELECT

14   STRUCTURES USING A SHORT TAP FINGER GESTURE AS BEFORE, THEY

15   DISPLAY A POP-UP MENU, AND THEY ALLOW USERS TO LAUNCH ACTIONS

16   FROM THAT POP-UP MENU.

17        THERE WAS BUT A SINGLE CHANGE IN THE DA2 PHONES, AND THAT

18   IS THE CONTEXTUAL POP-UP MENU WAS REMOVED IN FAVOR OF HAVING

19   THE RESOLVER ACTIVITY POP-UP MENU APPEAR AS THE FIRST MENU

20   AFTER USER SELECTION OF THE STRUCTURE.

21        THE MODIFICATION THAT SAMSUNG MADE TO DISPLAY THE RESOLVER

22   ACTIVITY POP-UP MENU FIRST RATHER THAN THE CONTEXTUAL POP-UP

23   MENU DOESN'T RENDER THE REDESIGN PHONES COLORABLY DIFFERENT OR

24   NON-INFRINGING.  THEY OPERATE THE SAME AS BEFORE IN ALL

25   MATERIAL RESPECTS.

1      IN FACT, LIKE THE CONTEXTUAL POP-UP MENU, THE RESOLVER

2  POP-UP MENU IS THE FIRST ONE TO APPEAR AFTER THE USER SELECTS

3  THE DETECTED STRUCTURE, IT PRESENTS THE USER WITH OPTIONS TO

4  PERFORM ON THE DETECTION STRUCTURE, AND IT ENABLES THE USER, AS

5  BEFORE, TO CHOOSE FROM THE PRESENTED OPTIONS ON A USER

6  INTERFACE BY SHORT TAPPING IN THE SAME MANNER AS BEFORE TO

7  CAUSE AN APPLICATION TO OPEN AND THEN POPULATE THE FIELDS.

8      SO LET'S LOOK AT A SIDE-BY-SIDE COMPARISON OF THE OLD AND

9  THE NEW FOR THIS ONE AS WELL.

10      AGAIN, HERE WE'VE CREATED A VIDEO THAT SHOWS ON THE LEFT

11  THE GALAXY S III THAT WAS SHOWN TO THE JURY DURING TRIAL, AND

12  ON THE RIGHT THE GALAXY S5.  SO LET'S PLAY THE THREE SEQUENCES.

13      FIRST ON THE LEFT, WE CAN SEE THE USER OPENING A MESSAGE

14  IN THE MESSENGER APP FROM THE GALAXY S III MAIN SCREEN, AND YOU

15  CAN SEE HERE THAT THE STRUCTURES HAVE ALREADY BEEN PRE-DETECTED

16  BECAUSE THEY'RE HIGHLIGHTED FOR THE USER.

17      LET'S DO IT ON THE RIGHT.

18      WE SEE THE SAME PROCESS TAKING PLACE IN THE REDESIGN

19  GALAXY S5.  AGAIN YOU SEE THE STRUCTURES ARE PRE-DETECTED AND

20  THEY'RE HIGHLIGHTED.

21      SECOND, ON THE LEFT WE SEE THE USER SELECTING, BY A SHORT

22  TAP, A STRUCTURE IN THE MESSAGE, HERE AN E-MAIL ADDRESS HAS

23  BEEN SELECTED, WHICH RESULTS IN THE DISPLAY OF THE CONTEXTUAL

24  POP-UP MENU.

25      NOW LET'S DO IT ON THE RIGHT.

```
1          WE SEE THE USER SELECTING BY SHORT TAPPING, WHICH RESULTS

2     IN THE DISPLAY OF THE RESOLVER ACTIVITY POP-UP MENU.

3          NOW, YOU'LL NOTE THAT THE TWO POP-UP MENUS ARE NOT

4     IDENTICAL, BUT FROM THE PURPOSE OF -- FROM THE PERSPECTIVE OF

5     THE CLAIM, THEY ARE.  THEY'RE INDISPUTABLY BOTH POP-UP MENUS

6     AND THEY BOTH PROVIDE THE USER WITH CHOICES FROM LAUNCHING

7     ACTIONS RELATING TO THE STRUCTURE THAT HAS BEEN SELECTED.  HERE

8     YOU SEE THREE LINKED ACTIONS ON THE REDESIGN PHONE ON THE

9     BOTTOM RIGHT.

10         LET'S KEEP ROLLING.

11         ON THE LEFT, THIS IS THE ADJUDICATED INFRINGING PHONE.

12    THE USER CAN LAUNCH AN ACTION BY PRESSING ON ONE OF THE OPTIONS

13    IN THE MENU.  HERE THE ACTION IS LAUNCHING AN E-MAIL

14    APPLICATION WITH THE "TO" LINE BUILT IN FOR THE USER.

15         NOW LET'S TRY IT ON THE RIGHT.

16         THE IDENTICAL PROCESS.  INDEED, THE IDENTICAL SCREEN HAS

17    APPEARED.

18         SO LET'S LOOK AT THE ADJUDICATED INFRINGING PHONES AND THE

19    REDESIGN PHONES SIDE-BY-SIDE AS SCREEN SHOTS WITH THE CLAIM

20    LANGUAGE PUT UP.

21         IN BOTH, A MESSAGE CONTAINING STRUCTURES WILL BE

22    PRE-DETECTED AND HIGHLIGHTED FOR THE USER, THEREBY SATISFYING

23    LIMITATION 1(C)(1).

24         IF WE GO TO THE NEXT SLIDE, SLIDE 38, IN BOTH THE

25    ADJUDICATED INFRINGING PHONES AND THE REDESIGN DA2 PHONES, THE
```

 1    USER SELECTION OF A DETECTED STRUCTURE WILL CALL A POP-UP MENU

 2    THAT ALLOWS FOR FURTHER USER INTERACTION IN THE FORM OF

 3    LAUNCHING ACTIONS, THEREBY SATISFYING LIMITATION 1(C)(2) AND

 4    CLAIM 9.

 5         AND IN THE ADJUDICATED INFRINGING PHONES, THE FIRST POP-UP

 6    MENU TO APPEAR WAS THE CONTEXTUAL POP-UP MENU.  IN THE REDESIGN

 7    DA2 PHONES, THE FIRST POP-UP MENU TO APPEAR IS THE RESOLVER

 8    ACTIVITY POP-UP MENU.

 9         BUT, AGAIN, THERE IS NO RELEVANT DIFFERENCE BETWEEN THESE

10    POP-UP MENUS FROM THE PERSPECTIVE OF THE CLAIM LANGUAGE.

11    THEY'RE BOTH POP-UP MENUS, AND THE CLAIMS DON'T REQUIRE ANY

12    PARTICULAR FORM OF POP-UP MENUS, AND BOTH MENUS PRESENT

13    MULTIPLE OPTIONS TO THE USER FOR PERFORMING AN ACTION RELATED

14    TO THE LINKED STRUCTURE.

15         IF WE GO TO SLIDE 39, THIS SLIDE SHOWS THE DIFFERENT TYPES

16    OF RESOLVER ACTIVITY POP-UP MENUS AVAILABLE IN THE DA2 PHONES,

17    ONE FOR E-MAIL, ONE FOR URL ADDRESSES, AND ONE FOR POSTAL

18    ADDRESSES.  AS CAN BE SEEN IN EACH INSTANCE, THE USER IS

19    PRESENTED WITH MULTIPLE ACTIONS, MULTIPLE OPTIONS FOR

20    PERFORMING ACTIONS, AND AS SAMSUNG'S OWN EXPERT CONCEDES, IF

21    THERE WAS ONLY ONE ACTION ASSOCIATED WITH A PARTICULAR

22    STRUCTURE, THERE WOULD BE NO NEED FOR A POP-UP MENU.

23         AND THEN FINALLY, SLIDE 40, IN BOTH THE ADJUDICATED

24    INFRINGING PHONES AND THE REDESIGN DA2 PHONES, THE SELECTION OF

25    THE OPTIONS FROM THE POP-UP MENU WILL CAUSE THE LAUNCHING OF AN

1   ACTION, IN THIS EXAMPLE, THE OPENING OF AN E-MAIL APPLICATION

2   AND THE POPULATION OF THE "TO" LINE WITH THE E-MAIL ADDRESS

3   THAT WAS INITIALLY LINKED TO THE UNDERLYING MESSAGE.

4        SO IN SUMMARY, IF WE GO TO SLIDE 41 WITH RESPECT TO DA2,

5   THIS SLIDE SHOWS HOW CLOSE THE ADJUDICATED INFRINGING PHONES

6   ARE TO THE REDESIGN DA2 PHONES.  BOTH THE ADJUDICATED PRODUCTS

7   AND THE REDESIGN DA2 PHONES PRE-DETECT STRUCTURES AND HIGHLIGHT

8   THEM AS SHOWN ON THE LEFT-HAND SIDE; THEY BOTH ALLOW USERS TO

9   SELECT STRUCTURES USING A SHORT TAP FINGER GESTURE AS SHOWN IN

10  THE MIDDLE SLIDE; AND THEY BOTH DISPLAY A POP-UP MENU, AS SHOWN

11  ON THE RIGHT-HAND SIDE, THAT ALLOWS USERS TO LAUNCH ACTIONS

12  FROM THE POP-UP MENU.

13       SAMSUNG DOES NOT DENY THAT IT COULD HAVE REMOVED THE

14  RESOLVER ACTIVITY POP-UP MENU FROM THE DA2 PRODUCTS, BUT

15  SAMSUNG CHOSE NOT TO.  BY FAILING TO REMOVE A POP-UP MENU FROM

16  ITS PRODUCTS, SAMSUNG'S DA2 PHONES ARE NOT SIGNIFICANTLY

17  DIFFERENT FROM THE INFRINGING PHONES AND STILL INFRINGE THE

18  POP-UP MENU CLAIM OF THE '647 PATENT.

19       WITH THAT, YOUR HONOR, I THINK MY 15 MINUTES ARE UP AND

20  I'D BE HAPPY TO ANSWER ANY QUESTIONS.

21           THE COURT:  ALL RIGHT.  THANK YOU.

22       OKAY.  GO AHEAD, PLEASE.

23           MS. SULLIVAN:  THANK YOU, YOUR HONOR.  WE ALSO GAVE

24   YOU A HANDOUT.  I HOPE IT'S CONVENIENT.

25           THE COURT:  I HAVE IT.  THANK YOU.

1        MS. SULLIVAN:  OKAY.

2        YOUR HONOR, I'D LIKE TO BEGIN, IF I COULD, WITH THE LAW,

3    THE LAW GOVERNING OUR INQUIRY TODAY, BECAUSE MY FRIEND FROM

4    APPLE DIDN'T COVER THAT.

5        SO IF WE COULD JUST START WITH SLIDE 3, PLEASE.

6        I JUST WANT TO REMIND US THAT UNDER 35 U.S.C. 283, THE

7    INJUNCTION STATUTE, YOU DO HAVE AUTHORITY TO GIVE ONGOING

8    ROYALTIES AS AN EQUITABLE ALTERNATIVE TO AN INJUNCTION.

9        BUT YOU'RE BOUND BY THE SAME LEGAL STANDARDS THAT APPLY TO

10   A CONTEMPT, A POST-TRIAL CONTEMPT HEARING FOR VIOLATION OF AN

11   INJUNCTION.

12       SO TIVO, THE EN BANC FEDERAL CIRCUIT DECISION, REMINDS US

13   THAT TO WIN ON THIS, APPLE HAS A VERY, VERY TALL TASK AHEAD OF

14   IT.  IT HAS TO BOTH PROVE THAT THE DESIGN AROUNDS ARE NOT MORE

15   THAN COLORABLY DIFFERENT FROM THE ADJUDICATED PRODUCTS, AND IF

16   YOU FIND THAT THERE ARE COLORABLE DIFFERENCES, MORE THAN

17   COLORABLE DIFFERENCES, THE INQUIRY IS AT AN END; AND, SECOND,

18   APPLE MUST PROVE THAT THE NEWLY ACCUSED PRODUCTS INFRINGE THE

19   CLAIMS, AND THEY MUST PREVAIL ON BOTH.

20       AND SECOND, YOUR HONOR, I WANT TO JUST ARGUE FOR WHAT

21   STANDARD OF REVIEW GOVERNS US.  IF WE COULD JUST JUMP TO

22   SLIDE 6.  SAMSUNG WOULD LIKE TO STRESS TO YOUR HONOR THAT

23   YOU'RE REQUIRED TO FIND BOTH PRONGS OF THE TIVO TEST BY CLEAR

24   AND CONVINCING EVIDENCE.

25       NOW, WHY IS THAT?  WE KNOW THAT THAT'S THE STANDARD FOR

```
 1    35 U.S.C. 283 ARGUMENTS FOR CONTEMPT OF A PERMANENT INJUNCTION,

 2    AND WE KNOW THE REASONS WHY CLEAR AND CONVINCING EVIDENCE IS

 3    REQUIRED FOR CONTEMPT.  IT'S REQUIRED BECAUSE THERE'S AN

 4    ABBREVIATED PROCEDURE WITHOUT THE BENEFIT OF A JURY TRIAL

 5    BECAUSE THERE ARE DRACONIAN REMEDIES INVOLVED IN CONTEMPT, THE

 6    CONTEMPT SANCTION.

 7         BUT HERE THEY'VE ASKED FOR ROYALTIES THAT EQUAL THE AMOUNT

 8    OF DAMAGES AT TRIAL, A VAST MONETARY REMEDY.

 9         AND MOST IMPORTANT, BECAUSE THERE'S A -- A RIGHT TO JURY

10    TRIAL HAS TO BE KEPT AT THE CENTER OF THE INQUIRY HERE.  WE

11    HAVE A RIGHT TO A JURY TRIAL.  APPLE CAN SUCCEED IN THIS

12    ABBREVIATED PROCEDURE ONLY IF IT SHOWS YOU BY CLEAR AND

13    CONVINCING EVIDENCE THAT THE NEW PRODUCTS THAT HAVE BEEN

14    DESIGNED AROUND, THAT HAVE DESIGNED AROUND THE INFRINGEMENT,

15    ARE NOT MORE THAN COLORABLY DIFFERENT FROM THE ADJUDICATED

16    PRODUCTS, WITH AN EYE ON THE ADJUDICATED FEATURES OF THE

17    ADJUDICATED PRODUCTS, AND THEY MUST INDEPENDENTLY PROVE THAT

18    THEY INFRINGE.

19         NOW, THE WAY TIVO PUTS IT IS THAT OUR JURY RIGHT MEANS

20    THAT THERE ARE VERY IMPORTANT NOTICE OBLIGATIONS HERE.  APPLE

21    CAN'T COME IN AND SKIP A NEW TRIAL BEFORE A JURY ON A NEW

22    ACCUSATION OF NEW PRODUCTS UNLESS IT IS RELYING ON THE VERY

23    SAME CASE IT TRIED.

24         WE RELIED, IN OUR DESIGN AROUNDS, ON THE COURT'S RULINGS

25    AND THE JURY'S FINDINGS ABOUT THE CASE THAT APPLE PUT ON AND
```

1     THAT APPLE TRIED.

2          AND IF WE COULD JUST GO BACK FOR A MINUTE TO THE KEY

3     LANGUAGE FROM TIVO, AND AS I GO TO NCUBE, ANOTHER VERY

4     IMPORTANT FEDERAL CIRCUIT CASE ON THE CONTEMPT STANDARD, IT'S

5     BACK ON SLIDE 4.  THE COMPARISON IS BETWEEN THE ADJUDICATED

6     FEATURES AND THE DESIGN AROUND.  THE WAY TIVO PUTS IT IS "THE

7     ANALYSIS MUST FOCUS ON THE DIFFERENCE BETWEEN 'THOSE ASPECTS OF

8     THE ACCUSED PRODUCT THAT WERE PREVIOUSLY ALLEGED TO BE, AND

9     WERE A BASIS FOR, THE PRIOR FINDING OF INFRINGEMENT, AND THE

10    MODIFIED FEATURES OF THE NEWLY ACCUSED PRODUCT.'"

11         OR THE WAY NCUBE PARAPHRASES THAT, THE

12    "COLORABLE-DIFFERENCES STANDARD FOCUSSES ON HOW THE PATENTEE IN

13    FACT PROVED INFRINGEMENT, NOT WHAT CLAIMS REQUIRE."

14         SO EVERY TIME MY FRIEND FROM APPLE SAID, "WELL, COMPARE

15    THE ACCUSED PRODUCTS TO A CLAIM ON THE NEW THEORY," YOU SHOULD

16    IGNORE THAT.

17         WHAT YOU ARE ENTITLED TO DO, WITHOUT A JURY TRIAL, IS TO

18    FIND INFRINGEMENT BY THE NEW PRODUCTS IF IT'S BASED ON THE

19    EXACT SAME ADJUDICATED FEATURES THAT APPLE SOUGHT TO PROVE

20    INFRINGEMENT AT TRIAL, OR PUT ANOTHER WAY, ON SLIDE 5,

21    NON-ACCUSED FEATURES OF THE ADJUDICATED PRODUCTS ARE

22    IRRELEVANT.

23         SO NOW, YOUR HONOR, TO -- THE REASON I GAVE YOU THAT

24    BACKGROUND, I THINK IT'S VERY IMPORTANT FOR US TO GO BACK TO

25    THE TRIAL AND TO START ON PAGE 8 WITH WHAT WAS THE CRUCIAL

1    INTERPRETATION OF THE CLAIMS.

2         ON PAGE 8, I WANT TO TAKE THE COURT BACK TO -- IF I LEAVE

3    THE COURT WITH NOTHING ELSE TODAY ABOUT THE DA1 DESIGN AROUNDS,

4    DA1-A AND DA1-B, WHAT I MOST WANT TO REMIND THE COURT IS THAT

5    THERE'S A SEQUENCE THAT IS CRUCIAL TO THE CLAIMS, AND THAT

6    SEQUENCE CAN BE ABBREVIATED AS DETECT FIRST, SELECT SECOND WHEN

7    IT COMES TO THE STRUCTURE.

8         THE PARTIES AGREE -- THIS WAS THE COURT'S RULING ON

9    SUMMARY JUDGMENT, SLIDE 8 -- "THE PARTIES AGREE THAT THE PLAIN

10   AND ORDINARY MEANING OF THE CLAIM LIMITATION 'A USER INTERFACE

11   ENABLING THE SELECTION OF A DETECTED STRUCTURE' REQUIRES 'THE

12   USER INTERFACE TO ENABLE SELECTION OF A STRUCTURE, BY THE USER,

13   AFTER THE STRUCTURE HAS ALREADY BEEN DETECTED.'"

14        SO MY FRIEND FROM APPLE WANTED TO SAY, "WELL, FINGER

15   GESTURES ARE ALL THE SAME."

16        BUT THEY'RE NOT, YOUR HONOR.  WHAT MATTERS IS WHETHER THE

17   FINGER GESTURE IS SELECTING A DETECTED STRUCTURE WHERE

18   DETECTION PRECEDES THE SELECTION, OR WHETHER THE FINGER GESTURE

19   IS SELECTING FIRST AND TRIGGERING DETECTION SECOND.  SEQUENCE

20   IS EVERYTHING TO WHAT APPLE HAS LABELED 1(C)(2), A USER

21   INTERFACE ENABLING THE SELECTION OF A DETECTED STRUCTURE IN A

22   LINKED ACTION.

23        AND, YOUR HONOR, WE RELIED ON THE COURT'S RULING THAT THAT

24   SEQUENCE IS ESSENTIAL, DETECTION FIRST, SELECTION SECOND.  ONLY

25   AFTER THE STRUCTURE HAS BEEN DETECTED CAN THERE BE SELECTION OF

1    A DETECTED STRUCTURE THAT INFRINGES CLAIM 1(C)(2).

2         SO, YOUR HONOR, I'D LIKE TO TURN NOW TO HOW WE APPLY THAT

3    IMPORTANT PREMISE TO THE ACTUAL DESIGN AROUNDS, AND I KNOW IT'S

4    COMPLICATED HERE BECAUSE WE HAVE TWO APPLICATIONS, BROWSER AND

5    MESSENGER.  WE HAVE THREE DESIGN AROUNDS, DA1-A, DA1-B, AND

6    DA2.  BUT WE'VE TRIED TO SIMPLIFY IT FOR THE COURT ON SLIDES 9

7    AND 10, SO I'LL JUST GO OVER THOSE AND THEN WE'LL BACK UP AND

8    WORK THROUGH THEM.

9         WE START WITH DESIGN AROUNDS FOR BROWSER, YOUR HONOR, ON

10   SLIDE 9.  WE'LL SEE THAT THE ADJUDICATED FEATURE INVOLVED A

11   LONG PRESS THAT LED TO THE POP-UP OF THE CONTEXT MENU.

12        WHY IS IT IMPORTANT THAT THE ADJUDICATED PRODUCT HAD A

13   LONG PRESS?  BECAUSE THAT'S WHAT ENABLED SELECTION OF A

14   DETECTED STRUCTURE.  LONG PRESS ENABLED DETECTION FIRST,

15   SELECTION SECOND.

16        SO THE CHANGE THAT APPLE HAS TRIED TO MINIMIZE ABOUT

17   CHANGING FROM LONG PRESS TO SHORT PRESS, SHORT TAP, IS ACTUALLY

18   CRITICAL.  IF YOU LOOK ON THE RIGHT, DA1-A FOR BROWSER CHANGES

19   THE TRIGGER FOR THE CONTEXT MENU FROM LONG PRESS TO SHORT TAP.

20   LONG PRESS NOW JUST PRODUCES A GENERIC MENU THAT SAYS COPY AND

21   SO FORTH.  APPLE DOESN'T ACCUSE THAT.

22        IT'S A SHORT TAP THAT NOW PRODUCES THE POP-UP MENU WITH

23   THE LINKED ACTIONS, THE CONTEXT MENU.  AND THE CRITICAL THING,

24   YOUR HONOR, IS IT'S NOT ONLY A SIGNIFICANT CHANGE, IT'S THE

25   CENTRAL CHANGE IN CLAIM 1(C)(2).  IT'S THE CHANGE TO THE

1    CENTRAL ELEMENT IN 1(C)(2) THAT WAS ASSERTED AT TRIAL, AND THAT

2    IS DETECTION FIRST, SELECTION SECOND FOR THE STRUCTURE.

3    SELECT, THEN DETECT.

4         WHAT COULD BE MORE DIFFERENT THAN CHANGING FROM DETECTION

5    FIRST, SELECTION SECOND WITH RESPECT TO YOUR STRUCTURE, THAN TO

6    REVERSING THE SEQUENCE, HAVING THE OPPOSITE SEQUENCE, SELECTING

7    THEN DETECTING?

8         FOR 1-B, THE SAME ARGUMENT APPLIES.  WE'LL GO THROUGH IT

9    WHEN WE GET THERE.

10        IF WE TURN TO MESSENGER ON SLIDE 10, YOUR HONOR -- AND

11   AGAIN THIS IS JUST AN INTRODUCTION, WE'LL GO BACK THROUGH IT --

12   THE ARGUMENT FOR MESSENGER IS ABSOLUTELY THE SAME FOR DA1-A,

13   EXCEPT FOR THE DETECTION/SELECTION SEQUENCE CAME ABOUT IN A

14   SLIGHTLY DIFFERENT WAY.

15        BACK IN THE ADJUDICATED PRODUCTS, DETECTION CAME FIRST AND

16   SELECTION SECOND, EVEN THOUGH THERE WAS A SHORT TAP INVOLVED,

17   BECAUSE THEY WERE PRE-DETECTED STRUCTURES, THOSE UNDERLINED,

18   HYPERLINKED STRUCTURES.

19        THEN A SHORT TAP WAS THE FINGER GESTURE THAT LED TO THE

20   CONTEXT MENU, BUT IT STILL FOLLOWED THE FUNDAMENTAL SEQUENCE IN

21   THE CLAIM, WHICH IS DETECT FIRST, SELECT SECOND.  THE

22   PRE-DETECTED STRUCTURES FOLLOWED BY A SHORT TAP IN THE

23   ADJUDICATED PRODUCT MEANT THAT THERE WAS DETECTION AND THEN

24   SELECTION, WHICH THE JURY FOUND SATISFIED 1(C)(2), SELECTION OF

25   A DETECTED STRUCTURE.

1    BUT IN THE NEW -- IN THE DESIGN AROUND, DA1-A FOR

2    MESSENGER, IT'S UNDISPUTED THAT THERE ARE NO PRE-DETECTED

3    STRUCTURES.  THE CODE THAT PREVIOUSLY PRE-DETECTED THE

4    STRUCTURES, AS INDICATED BY THE HYPERLINKING AND UNDERLINING,

5    IS GONE, AND NOW WHEN THE SHORT TAP POPS UP THE CONTEXT MENU,

6    THERE'S NO DETECTION FIRST, SELECTION SECOND.  THERE'S

7    SELECTION AND ONLY THEN IS THERE DETECTION.

8    FOR DA2, WHICH APPLIES TO MESSENGER ONLY, YOUR HONOR, IT'S

9    A SLIGHTLY DIFFERENT KIND OF DESIGN AROUND.  HERE THE DESIGN

10   AROUND IS THAT WE'VE ELIMINATED THE POP-UP MENU.  SO WE'VE

11   CHANGED THE CORE OF CLAIM 9, THE DEPENDENT CLAIM, WHICH

12   REQUIRES THE OUTPUT DEVICES TO DISPLAY A POP-UP MENU OF THE

13   LINKED ACTIONS.  THAT CONTEXT MENU IS GONE AND THE RESOLVER

14   ACTIVITY IS NOT A POP-UP MENU OF LINKED ACTIONS.

15   SO, YOUR HONOR, THIS IS OUR KIND OF SHORT GUIDE TO THE

16   CASE.  SLIDES 9 AND 10 SHOW HOW THESE CHANGES ARE HIGHLY

17   SIGNIFICANT, EASILY MORE THAN COLORABLY DIFFERENT, AND APPLE

18   CERTAINLY CAN'T SHOW THEY'RE NOT MORE THAN COLORABLY DIFFERENT

19   ON A CLEAR AND CONVINCING EVIDENCE STANDARD.

20   YOUR HONOR, NOW WITH YOUR INDULGENCE, I THINK I'VE GOT

21   ABOUT FIVE MINUTES LEFT.

22       THE COURT:  PLEASE.

23       MS. SULLIVAN:  I'LL WALK THROUGH THEM IN ORDER.  SO

24   LET'S START WITH BROWSER.  WE'LL GO TO SLIDE 11.  AS A

25   REFRESHER, ONLY LONG PRESS WAS ADJUDICATED.  A LONG PRESS MEANT

1    PRESS AND HOLD.  PRESS AND HOLD PRODUCED THE CONTEXT MENU.

2         NOW, IT WAS CRITICAL TO APPLE'S ARGUMENTS AT SUMMARY

3    JUDGMENT AND ITS EVIDENCE AT TRIAL THAT THE LONG PRESS IS WHAT

4    GAVE YOU DETECTION OF A STRUCTURE FOLLOWED BY SELECTION OF THAT

5    STRUCTURE.  AND THAT'S WHY BROWSER, IF WE GO TO SLIDE 12,

6    BROWSER, UNDER DA1-A, IS MORE THAN COLORABLY DIFFERENT.  WE

7    REMOVED THE LONG PRESS TRIGGER TO THE CONTEXT MENU.  RIGHT?  IT

8    USED TO BE THE LONG PRESS GOT YOU A CHOICE BETWEEN DIAL, ADD

9    CONTACT, COPY, SELECT TEXT.

10        LONG PRESS DOESN'T DO THAT ANYMORE.  IT JUST GETS YOU A

11   GENERIC MENU WHICH IS NOT ACCUSED.

12        THE CONTEXT MENU IS NOW ONLY CREATED BY THE SHORT TAP, AND

13   CRUCIALLY, THAT MEANS WE CHANGE FROM DETECT, THEN SELECT, TO

14   SELECT, THEN DETECT AFTER FINGER UP.

15        NOW, DON'T TAKE IT FROM ME THAT LONG PRESS WAS IMPORTANT.

16   LET'S TAKE IT FROM APPLE.  LET'S TURN TO SLIDE 13.

17        I READ YOU EARLIER THE COURT'S RULING AT SUMMARY JUDGMENT

18   WHERE YOU SAID IT'S CRUCIAL THAT DETECTION OF THE STRUCTURE

19   COMES FIRST AND SELECTION IS AFTER DETECTION OF THE STRUCTURE,

20   AND THAT WAS BASED ON THE PARTIES' AGREEMENT, AND THESE ARE

21   APPLE'S WORDS.  APPLE'S WORDS ON 13 FROM THE SUMMARY JUDGMENT

22   BRIEFING ARE THAT AFTER THE STRUCTURE HAS BEEN DETECTED,

23   SELECTION OCCURS THROUGH LONG PRESS.  AFTER THE STRUCTURE HAS

24   BEEN DETECTED, SELECTION IS DONE BY HOLDING A PRESS.  AND THEN

25   APPLE DISTINGUISHED THAT FROM A SHORT TAP.

1          SO WHEN APPLE NOW SAYS, "OH, LONG PRESS, SHORT PRESS,

2     SHORT TAP, THEY'RE ALL FINGER GESTURES, IT DOESN'T MATTER,"

3     THAT'S WRONG.  IT WOULD BE A FUNDAMENTAL VIOLATION OF OUR JURY

4     RIGHT TO NOW SAY THAT WHAT WAS CRUCIAL TO THE INFRINGEMENT

5     THEORY AT TRIAL, THAT THE LONG PRESS MEANT DETECT, THEN SELECT,

6     NOW THAT THAT'S GONE, THAT'S A MAJOR CHANGE, AND IT IS

7     MATERIAL.

8          NOW, I HEARD MY FRIEND SAY, "WELL, IT COULD ONLY TAKE A

9     FRACTION OF THE SECOND," AND HE TRIED TO GET YOU TO LOOK AT

10    THIS FROM THE USER PERSPECTIVE TO SAY IT ONLY TAKES A FRACTION

11    OF A SECOND.

12         WELL, YOUR HONOR, IT'S OLYMPIC SEASON.  I MEAN, IF

13    MICHAEL PHELPS TOUCHES THE WALL A FRACTION OF A SECOND BEFORE

14    RYAN LOCHTE, WE DON'T SAY, "OH, WELL, IT'S ONLY A FRACTION OF A

15    SECOND."  WE GIVE PHELPS THE GOLD.

16         WHERE SEQUENCE MATTERS, THE INTERVAL DOES NOT MATTER.  IF

17    DETECTION DOES NOT OCCUR BEFORE SELECTION, THE CLAIM IS NOT

18    INFRINGED ON THE THEORY THAT WAS ADJUDICATED AT TRIAL.

19         SO ONCE WE GO FROM LONG PRESS TO SHORT TAP, IT IS A

20    SIGNIFICANT DIFFERENCE UNDER THE TIVO STANDARD.  IT'S A

21    SIGNIFICANT DIFFERENCE.  IN FACT, IT'S A FUNDAMENTAL DIFFERENCE

22    BECAUSE CLAIM 1(C)(2) IS ALL ABOUT SEQUENCE.  IT'S ALL ABOUT

23    SEQUENCE ACCORDING TO THE COURT'S RULING AND ACCORDING TO

24    APPLE'S THEORY AT TRIAL.

25         ADJUDICATED MESSENGER FEATURES, IF WE TURN TO PAGE 14,

1    AGAIN, THE THEORY IS THE SAME.  THE DETAILS ARE A LITTLE BIT

2    DIFFERENT.

3         IN MESSENGER, BEFORE WE HAD DETECTION FIRST, SELECTION

4    SECOND BECAUSE THERE WAS PRE-DETECTION OF THE STRUCTURES.

5    SHORT TAP CREATED THE CONTEXT MENU, YOU HAD DETECTION, THEN

6    SELECTION.

7         WE NOW -- IF WE GO TO SLIDE 15, DA1-A IS MORE THAN

8    COLORABLY DIFFERENT AS TO MESSENGER BECAUSE WE REMOVED

9    PRE-DETECTION.  IT'S UNDISPUTED THAT WE REMOVED PRE-DETECTION.

10   CONTEXT MENUS ARE ONLY CREATED ON A SHORT TAP, BUT THERE'S NO

11   PRE-DETECTION.  THE DETENTION ROUTINES BEGIN AFTER THE SHORT

12   TAP.  IT'S UNDISPUTED THAT THE DETECTION ROUTINES IN ANY OF

13   THESE DA1-A DESIGN AROUNDS BEGIN AFTER THE SHORT TAP.

14        IN FACT, MOWRY -- APPLE'S EXPERT, MR. MOWRY, SAID AS MUCH

15   IN HIS DEPOSITION AT 111 -- SORRY -- DOCKET 2217-7 AT 111.  THE

16   DETECTION ROUTINES START WITH FINGER UP.

17        SO UNDER DA1-A FOR BOTH BROWSER AND MESSENGER, WE NO

18   LONGER HAVE DETECTION BEFORE SELECTION, SO THE CLAIMS CANNOT BE

19   INFRINGED ON THE THEORY THAT WAS ADJUDICATED AT TRIAL.

20        NOW, YOUR HONOR, WE DON'T THINK YOU NEED TO REACH IT

21   BECAUSE WE'VE SHOWN MORE THAN COLORABLE DIFFERENCES, BUT IF YOU

22   DO REACH INFRINGEMENT ON DA1-A, THERE IS NO INFRINGEMENT.

23        HERE APPLE HAS CHANGED ITS THEORY FROM LITERAL

24   INFRINGEMENT TO DOCTRINE OF EQUIVALENTS.  AS YOU WELL KNOW,

25   DOCTRINE OF EQUIVALENTS WAS NOT TRIED.  IT WAS WITHDRAWN

1    AFTER -- APPLE AGREED TO WITHDRAW IT AFTER SAMSUNG'S MOTION TO

2    STRIKE.  I WON'T REHASH THAT HISTORY, YOUR HONOR.

3         BUT THE POINT IS WE CAN'T HAVE ONGOING ROYALTIES BY

4    AMBUSH.  THERE SHOULDN'T BE A THEORY THAT WAS WITHDRAWN AT

5    TRIAL THAT GAVE US NO NOTICE -- THE KEY CONCEPT IN TIVO -- AND

6    THEN WE BE AMBUSHED BY A NEW D.O.E. THEORY THAT WAS PRECLUDED

7    AT TRIAL.

8         SO, YOUR HONOR, EVEN IF YOU DON'T AGREE WITH WAIVER,

9    THERE'S JUST NO INFRINGEMENT BY D.O.E. FOR ALL THE REASONS I

10   JUST GAVE.  YOU CAN'T HAVE THE SAME FUNCTION BY THE SAME WAY

11   PRODUCING THE SAME RESULT IF YOU REVERSED THE SEQUENCE FROM

12   DETECT THE STRUCTURE, THEN SELECT THE STRUCTURE, TO SELECT THE

13   STRUCTURE, THEN DETECT THE STRUCTURE.

14        YOUR HONOR, IF YOU'RE WILLING TO GIVE ME TWO MORE MINUTES?

15            THE COURT:  GO AHEAD, PLEASE.

16            MS. SULLIVAN:  THANK YOU.  I'LL JUST TRY TO BE BRIEF.

17        THE DA1-B IS REALLY THE SAME ARGUMENT AS THE DA1-A SO I'M

18   GOING TO SKIP OVER THOSE SLIDES AND GO TO SLIDE 20 SO WE CAN

19   COVER DA2 VERY BRIEFLY.

20        I THINK THE COLORABLE DIFFERENCES ARGUMENT HERE IS REALLY

21   EVEN EASIER, YOUR HONOR.  ON DA2, I DON'T KNOW WHAT MORE THAN

22   COLORABLE DIFFERENCE WE COULD HAVE MADE, OTHER THAN REMOVING

23   THE CONTEXT MENU.

24        CLAIM 9 REQUIRES CAUSING THE OUTPUT DEVICES TO DISPLAY A

25   POP-UP MENU OF THE LINKED ACTIONS.

1   YOUR HONOR, APPLE DIDN'T CORNER THE MARKET ON POP-UP

2 MENUS.  IT'S A VERY NARROW CLAIM.  IT'S A CLAIM ON POP-UP MENU

3 OF THE LINKED ACTIONS.  LINKED ACTIONS ARE THOSE ACTIONS THAT

4 ARE LINKED TO THE DETECTED STRUCTURE.

5   AND, YOUR HONOR, IF YOU LOOK AT SLIDE 20, YOU'LL SEE A FAR

6 MORE THAN COLORABLE CHANGE UNDER DA2.  UNDER MESSENGER, WE

7 REMOVED THE CONTEXT MENU ENTIRELY.  IT'S GONE.  IF YOU LOOK AT

8 THE TOP ROW, THAT'S THE ADJUDICATED PRODUCT, I GOT A CHOICE IF

9 I TOUCHED ON A HOT HYPERLINKED E-MAIL ADDRESS TO SEND E-MAIL,

10 ADD TO CONTACTS, SEND MESSAGE, COPY MESSAGE TEXT, AND THAT MENU

11 IS GONE.

12   SO WHEN APPLE TRIES TO SAY, "OH, RESOLVER ACTIVITY IS THE

13 SAME THING," IT'S REALLY NOT.  WE DON'T THINK YOU NEED TO GET

14 TO THE RESOLVER MENU AT ALL, YOUR HONOR, BECAUSE THE REMOVAL OF

15 THE CONTEXT MENU IS ALONE A MORE THAN COLORABLE DIFFERENCE.

16   BUT IF YOU GO TO SLIDE 21, WE'VE TRIED TO SHOW YOU

17 GRAPHICALLY WHY RESOLVER ACTIVITY IS JUST NOT A MENU OF LINKED

18 ACTIONS.  HOW DO WE KNOW THAT?  LOOK AT WHAT RESOLVER ACTIVITY

19 SAYS.  ITS OWN TITLE IS "COMPLETE ACTION USING."  IT'S NOT A

20 MENU OF ACTIONS.  IT'S A MENU OF HOW YOU WOULD PERFORM THE

21 ACTION THAT YOU'VE ALREADY -- THAT YOU WOULD HAVE ALREADY

22 CHOSEN IN THE OLD PRODUCT, THE ADJUDICATED PRODUCT, BUT NOW

23 IT'S PRE-DETERMINED FOR YOU.

24   SO WE'VE ILLUSTRATED THIS -- THIS IS A MATERIAL CHANGE,

25 YOUR HONOR.  IT'S NOT SUBSTITUTING ONE MENU FOR ANOTHER.  WE'VE

1    WIPED OUT -- WE'VE WIPED OFF THE POP-UP MENU ENTIRELY THE MENU

2    OF LINKED ACTIONS.  THERE IS NO MORE OPTION TO SEND MESSAGE,

3    ADD TO CONTACTS OR COPY MESSAGE.  ALL I CAN DO IS THE

4    PRE-DETERMINED ACTION OF SENDING AN E-MAIL, AND ALL THAT

5    RESOLVER DOES IS GIVE ME A WAY TO SEND IT BY E-MAIL OR GMAIL.

6        SO, YOUR HONOR, DA2 IS COLORABLY DIFFERENT.  THAT'S AN

7    EASIER CASE.  THE REMOVAL OF THE CONTEXT MENU MAKES CLAIM 9 NOT

8    INFRINGED ON THE THEORY THAT WAS PURSUED AT TRIAL.

9        I'D REFER YOUR HONOR RESPECTFULLY TO THE NCUBE CASE, WHICH

10   IS REALLY ON ALL FOURS.  THAT WAS A CASE WHERE THERE WERE TWO

11   APPLICATIONS, ONE WAS ACCUSED AT TRIAL, THE OTHER WAS NOT

12   ACCUSED.  THE DESIGN AROUND USED THE NON-ACCUSED FEATURE, AND

13   THE COURT IN NCUBE SPECIFICALLY SAID THAT THE -- HERE, THE

14   INFRINGEMENT PROOF FOCUSSED ON CLIENT ID, NOT SESSION ID, AND

15   STRESSED HOW THE ACCUSED SYSTEM ACTUALLY USED THE CLIENT ID AS

16   TO WHICH SESSION ID IS MORE THAN COLORABLY DIFFERENT.

17       HERE RESOLVER ACTIVITY IS LIKE SESSION ID.  IT'S THE

18   UNACCUSED FEATURE THAT APPLE COULD HAVE ACCUSED AT TRIAL, IT

19   DIDN'T, AND IT SHOULDN'T BE USED TO AMBUSH US NOW.  IT'S NOT A

20   POP-UP MENU OF LINKED ACTION.

21       SO, YOUR HONOR, CLEAR AND CONVINCING EVIDENCE, APPLE CAN'T

22   MEET ITS BURDEN ON MORE THAN COLORABLE DIFFERENCES.  SEQUENCE

23   HAS BEEN REVERSED UNDER THE DA1 PRODUCT, DESIGN AROUND.  THE

24   SEQUENCE HAS TO BE DETECTION OF THE STRUCTURE, THEN SELECTION

25   OF THE STRUCTURE.  THAT'S WHAT THE CLAIM HOLDS, THAT'S HOW THE

1    COURT INTERPRETED IT.  WE WERE ENTITLED TO RELY ON THAT WHEN WE

2    DESIGNED AROUND IT AND APPLE CAN'T NOW SAY, "OH, NEVER MIND."

3         AND YOUR HONOR, LAST THING, APPLE ASKED YOU TO LOOK AT

4    THIS FROM THE PERSPECTIVE OF THE CONSUMER, HOW IT LOOKS ON THE

5    SUPERFICIAL LOOK.

6         I DON'T THINK THAT'S THE PERSPECTIVE WE WANT.  TIVO

7    FOOTNOTE 1 REFERS TO THE PERSON OF SKILL IN THE ART WHEN WE'RE

8    LOOKING AT SIGNIFICANT MODIFICATIONS.  IT DOESN'T MATTER IF A

9    USER DOESN'T SEE WHAT THE CODE HAS DONE.  WHAT MATTERS IS

10   WHETHER YOU SEE A SIGNIFICANT DIFFERENCE VIEWING IT FROM THE

11   PERSPECTIVE OF A PERSON OF SKILL IN THE ART AND LOOKING AT THE

12   THEORY THAT WAS TRIED AT TRIAL.

13        SO THESE ARE SIGNIFICANT DIFFERENCES.  THESE DESIGN

14   AROUNDS SHOULD DEFEAT ANY ONGOING ROYALTIES MOTION AND WE

15   RESPECTFULLY ASK THAT THE COURT DENY THE MOTION.

16        THANK YOU.

17        THE COURT:  OKAY.  THANK YOU.  THANK YOU BOTH.

18        ALL RIGHT.  WELL, I HAVE A LOT OF QUESTIONS, BUT I DID

19   WANT TO GIVE YOU AN OPPORTUNITY IF YOU WANTED TO HAVE A QUICK

20   RESPONSE.  DO YOU WANT THAT?

21        MR. SELWYN:  I WOULD, YOUR HONOR.

22        YOUR HONOR, LET ME TRY TO MAKE A FEW QUICK POINTS.  FIRST

23   WITH RESPECT TO THE BURDEN OF PROOF, YOU HEARD SAMSUNG'S

24   COUNSEL KEEP REPEATING CLEAR AND CONVINCING EVIDENCE.

25        THAT IS NOT WHAT THE FEDERAL CIRCUIT HAS SAID.  IN FACT,

1    THE FEDERAL CIRCUIT HAS NOT CONSIDERED THE ISSUE OF BURDEN OF

2    PROOF FOR ONGOING ROYALTIES.

3         THE MOST ON POINT DISTRICT COURT CASES, HOWEVER, WHICH

4    ARISE IN THE CONTEXT, IN THE PRESENT CONTEXT OF ONGOING

5    ROYALTIES, SUGGEST THAT PREPONDERANCE OF THE EVIDENCE IS THE

6    APPLICABLE STANDARD.

7         THE CASE --

8              THE COURT:  LET ME ASK YOU A QUESTION.  I'M SORRY TO

9     INTERRUPT YOU ABOUT THAT.

10        I AGREE WITH YOU THAT THE FEDERAL CIRCUIT CASES ARE IN THE

11   CONTEXT OF CONTEMPT PROCEEDINGS OF ALLEGED VIOLATIONS OF

12   INJUNCTIONS.  BUT THEY ALL SEEM TO RELY UPON TIVO AND THE LAW

13   IN TIVO, WHICH DOES HAVE CLEAR AND CONVINCING EVIDENCE AS THE

14   BURDEN FOR THE PLAINTIFF.

15        HOW SHOULD -- YOU KNOW, HOW CAN I SAY, WELL, THE FEDERAL

16   CIRCUIT IS RELYING ON CONTEMPT PROCEEDING LAW ON EVERYTHING

17   ELSE REGARDING ONGOING ROYALTIES, BUT -- I DON'T KNOW.  CAN YOU

18   RESPOND TO THAT?

19             MR. SELWYN:  SURE.

20        SO TIVO SAYS THAT CONTEMPT IS A SEVERE REMEDY.

21             THE COURT:  UM-HUM.

22             MR. SELWYN:  AND THE CASES THAT HAVE APPLIED THAT IN

23    THE CONTEMPT CONTEXT AFTER TRIAL HAVE USED CLEAR AND

24    CONVINCING.

25             HOWEVER, IN THE CONTEXT OF ONGOING ROYALTIES, WHAT THE

1    DISTRICT COURTS HAVE DONE IS USE THE SAME STANDARD THAT APPLIED

2    AT TRIAL.

3         SO IF YOUR HONOR LOOKS AT THE I/P ENGINE OR CREATIVE

4    INTERNET CASES, WHICH WERE BOTH IN THE CONTEXT OF AN ONGOING

5    ROYALTY, BOTH OF THOSE CASES USE A PREPONDERANCE OF THE

6    EVIDENCE STANDARD, WHICH IS THE ONE THAT WE WOULD SUGGEST APPLY

7    HERE.

8         BUT IN EITHER EVENT, WHETHER THE COURT WERE TO APPLY A

9    PREPONDERANCE OF THE EVIDENCE OR CLEAR AND CONVINCING

10   STANDARDS, THE EVIDENCE HERE WOULD SATISFY BOTH OF THOSE.

11        THE COURT:  OKAY.  GO AHEAD, PLEASE.

12        MR. SELWYN:  YOU HEARD MUCH ABOUT WAIVER AND DOCTRINE

13   OF EQUIVALENCE AND HOW WE SHOULDN'T BE ABLE TO BRING AN

14   ARGUMENT BASED UPON DOCTRINE OF EQUIVALENTS BECAUSE AT TRIAL WE

15   PRESENTED ONLY A LITERAL INFRINGEMENT ARGUMENT.

16        THAT IS NOT A CORRECT STATEMENT OF LAW.  IN BOTH, FOR

17   EXAMPLE, THE AEVOE CASE AND THE CHAMBERLAIN CASE THAT WE'VE

18   CITED IN OUR BRIEFS, THE COURTED CONSIDERED A REDESIGNED

19   PRODUCT, CONSIDERED WHETHER IT STILL INFRINGED UNDER THE

20   DOCTRINE OF EQUIVALENTS, NOTWITHSTANDING THAT IT HAD BEEN A

21   LITERAL INFRINGEMENT BASIS ON WHICH IT HAD BEEN ORIGINALLY

22   ADJUDICATED TO INFRINGE.

23        SAMSUNG HASN'T CITED ANY CASE, ANY CASE THAT SUGGESTS A

24   PATENTEE CAN'T PROCEED ON AN EQUIVALENCE THEORY POST-TRIAL AS

25   TO A REDESIGNED PRODUCT IF IT USED ONLY A LITERAL INFRINGEMENT

1    THEORY AT TRIAL, AND WE WOULD SUGGEST THAT SUCH A RULE WOULD

2    NOT MAKE ANY SENSE BECAUSE WHAT IT WOULD DO IS TO CREATE AN

3    INVITATION FOR AN ADJUDICATED INFRINGER TO SELL REDESIGNED

4    PRODUCTS WITH INSIGNIFICANT CHANGES.

5         AND FURTHERMORE, APPLE OBVIOUSLY COULD NOT HAVE PRESENTED

6    ANY INFRINGEMENT THEORY AT TRIAL FOR REDESIGNED PRODUCTS THAT

7    DID NOT YET EXIST.

8         ON THE NOTION THAT APPLE PREVIOUSLY WITHDREW ANY CLAIM OF

9    INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS, THAT IS NOT

10   RIGHT, EITHER.  APPLE'S PREVIOUS WITHDRAWAL OF D.O.E. ONLY

11   APPLIED TO THE ADJUDICATED PRODUCTS.  AT TRIAL, APPLE OBVIOUSLY

12   COULDN'T HAVE ANTICIPATED WHAT MIGHT HAVE BEEN DONE BY SAMSUNG

13   POST-TRIAL IN THE WAY OF REDESIGNED PRODUCTS.

14        THIRD, AS TO THE SEVENTH AMENDMENT AND COLORABLE

15   DIFFERENCES, WE HAVE A LITTLE BIT OF A DIFFERENCE OF OPINION ON

16   WHAT STANDARD THE COURT SHOULD APPLY IN EVALUATING THE

17   COLORABLE DIFFERENCE TEST.

18        THE FEDERAL CIRCUIT AND THE DISTRICT COURTS SAID THAT --

19   HAVE SAID THAT A CHANGE IS NOT SIGNIFICANT IF THE REDESIGNED

20   PRODUCT IS THE SUBSTANTIAL EQUIVALENT OF THE INFRINGING

21   PRODUCT, OR FUNCTIONALLY IDENTICAL TO IT.

22        IN THE PROVERIS CASE, WHICH USES THOSE WORDS "FUNCTIONALLY

23   IDENTICAL," IT LOOKED AT IT FROM THE PERSPECTIVE OF THE USER.

24   IT LOOKED AT HOW THE USER WOULD APPROACH THESE PRODUCTS IN

25   ASSESSING WHETHER TWO THINGS WERE COLORABLY DIFFERENT, AND IT

1    DECIDED THAT FROM THE USER PERSPECTIVE, THESE TWO THINGS WERE

2    FUNCTIONALLY IDENTICAL.

3        NOW, WE ARE NOT RELYING ONLY ON THE PERSPECTIVE OF THE

4    USER HERE, BUT WE THINK THAT IS VERY IMPORTANT BECAUSE, OF

5    COURSE, THIS IS A CLAIM THAT'S WRITTEN IN TERMS OF A USER

6    INTERFACE, SO OF COURSE HOW A USER INTERACTS WITH THE PRODUCT

7    WILL BE IMPORTANT IN ASSESSING COLORABLE DIFFERENCES.

8        BUT WE'VE ALSO LOOKED AT IT FROM THE PERSPECTIVE OF THE

9    CODE, AND FROM THE PERSPECTIVE OF THE CODE, THERE IS CERTAINLY

10   NO COLORABLE CHANGE.  IN FACT, THE CHANGE THAT WAS MADE IS AN

11   OBVIOUS ONE AND YOU DON'T SEE ANY DISPUTE FROM SAMSUNG IN THEIR

12   PAPERS OR HERE TODAY ON THAT POINT.

13       ON THE ISSUE OF THE AMOUNT OF CODE THAT HAS CHANGED, THE

14   CHANGES IN BOTH THE LONG PRESS/SHORT TAP AND FINGER DOWN/FINGER

15   UP IN TERMS OF THE CODE REALLY COME DOWN TO ALTERING A SINGLE

16   FUNCTION IN A FEW LINES OF CODE IN A SINGLE FILE, AND THAT'S

17   IT.

18       SO WHETHER YOU LOOK AT IT FROM THE USER PERSPECTIVE OR

19   FROM THE PERSPECTIVE OF THE OPERATION OF THE DEVICES AT THE

20   CODE LEVEL, THERE IS NO COLORABLE CHANGE AT ALL.

21       NOW, YOU HEARD THIS ARGUMENT THAT DA2 MESSENGER MUST BE

22   MORE THAN COLORABLY DIFFERENT BECAUSE THE ACCUSED FUNCTIONALITY

23   WAS REMOVED ENTIRELY.

24       THAT'S NOT RIGHT.  THE FEDERAL CIRCUIT MADE CLEAR BOTH IN

25   TIVO AND IN THE PROVERIS CASE THAT REMOVAL OF THE ACCUSED

1    FEATURE ALONE IS NOT SUFFICIENT TO SUPPORT THE CONCLUSION THAT

2    THE REDESIGNED DEVICE IS MORE THAN COLORABLY DIFFERENT.

3            RATHER, WHAT THE COURT ARTICULATED IS THAT THE TEST IS

4    WHETHER THE MODIFICATION BY REMOVAL IS SIGNIFICANT, AND THE WAY

5    THAT MUST BE JUDGED IS BY A COMPARISON OF THE INFRINGING

6    FEATURE, SO HERE THE INFRINGING FEATURE BEING ENABLING THE

7    SELECTION OF AN ACTION BY CAUSING THE OUTPUT DEVICE TO DISPLAY

8    A POP-UP MENU OF THE LINKED ACTIONS, TO ITS REPLACEMENT.

9            AND THE CONTEXT MENU'S REPLACEMENT HERE IS THE RESOLVER

10   POP-UP MENU.  LIKE THE CONTEXT -- LIKE THE CONTEXTUAL POP-UP,

11   THE RESOLVER ACTIVITY POP-UP MENU IS THE FIRST POP-UP MENU TO

12   APPEAR AFTER THE USER SELECTS A DETECTED STRUCTURE.

13           SO THE REPLACEMENT OF THE CONTEXTUAL POP-UP MENU WITH THE

14   RESOLVER ACTIVITY POP-UP MENU IS INSIGNIFICANT.  BOTH APPEAR

15   AFTER THE USER HAS SELECTED A DETECTED STRUCTURE AND BOTH ALLOW

16   A USER TO SELECT FROM ONE OR MORE OF THE LINKED ACTIONS TO THAT

17   STRUCTURE.

18           LET ME MAKE TWO OTHER POINTS.  YOU HEARD A LOT ABOUT THE

19   NCUBE FEDERAL CIRCUIT DECISION.  RESPECTFULLY, THAT WAS NOT

20   CORRECTLY DESCRIBED BY COUNSEL.

21           NCUBE DOESN'T STAND FOR A BROAD RULE THAT ALL PREVIOUSLY

22   UNACCUSED FEATURES CAN'T PLAY ANY PART IN A COLORABLY DIFFERENT

23   ANALYSIS UNDER TIVO.

24           IN NCUBE, THE FACTS WERE THAT THE ACCUSED FUNCTIONALITY,

25   WHICH WAS CALLED CLIENT ID, WAS NOT REMOVED FROM THE PRODUCT.

1    IT WAS MODIFIED.  SPECIFICALLY, IT WAS MOVED OUT OF SOMETHING

2    THAT WAS REFERRED TO AS THE CONNECTION TABLE AND PLACED

3    ELSEWHERE IN THE MODIFIED SYSTEM.

4         HERE SAMSUNG DID NOT REDESIGN THE CONTEXTUAL POP-UP MENU

5    AT ALL TO MAKE IT NON-INFRINGING LIKE THE DEFENDANT DID WITH

6    THE CLIENT ID IN NCUBE.  SAMSUNG INSTEAD REPLACED THE

7    CONTEXTUAL POP-UP MENU WITH THE RESOLVER ACTIVITY POP-UP MENU

8    AS THE FIRST MENU TO APPEAR WHEN THE USER SELECTS A DETECTED

9    STRUCTURE.

10        THE FACT THAT IN NCUBE IT INVOLVED A MODIFICATION RATHER

11   THAN A REPLACEMENT OF THE ADJUDICATED INFRINGING FUNCTIONALITY

12   WAS SOMETHING THAT THE FEDERAL CIRCUIT FOUND TO BE SIGNIFICANT.

13   IN NCUBE, THE COURT COMPARED THE INFRINGING CLIENT ID TO THE

14   MODIFIED ONE IN THE COLORABLY DIFFERENT ANALYSIS.

15        AND THAT'S WHAT WE NEED TO DO HERE.  TIVO INSTRUCTS THAT

16   THE RELEVANT COMPARISON IS BETWEEN THE ACCUSED CONTEXT MENU AND

17   WHAT REMAINS, OR WHAT IT WAS REPLACED BY, AND IT WAS REPLACED

18   BY THE CONTEXTUAL ACTIVITY POP-UP MENU.

19        LAST POINT, YOUR HONOR.

20        THE COURT:  DO YOU AGREE, THOUGH, THAT THE RESOLVER

21   ACTIVITY MENU IS NOT PART OF THE REDESIGN?  IT EXISTED BEFORE,

22   YOU DIDN'T ACCUSE IT, THERE'S NO EVIDENCE THAT IT'S PERFORMING

23   A DIFFERENT FUNCTION THAN IT PREVIOUSLY DID.

24        MR. SELWYN:  IT EXISTED BEFORE.

25        THE COURT:  UM-HUM.

1          MR. SELWYN:  WE DIDN'T SAY IT DIDN'T INFRINGE BEFORE.

2     IT WAS THE SECOND MENU TO COME UP.  IT PERFORMED THE SAME WAY

3     FROM THE PERSPECTIVE OF THE CLAIM AS THE CONTEXTUAL POP-UP

4     MENU.  SO THERE WOULD HAVE BEEN NO REASON TO SEPARATELY SAY,

5     "AND THAT INFRINGES, TOO," BECAUSE ALL OF THE PROOF WAS

6     PRESENTED BY THE INITIAL POP-UP MENU, THE CONTEXTUAL POP-UP

7     MENU.

8          THE COURT:  ALL RIGHT.  GO AHEAD, PLEASE.

9          MR. SELWYN:  YOUR HONOR, JUST ONE LAST POINT, AND

10    THAT RELATES TO COUNSEL'S POINT ABOUT THE LONG PRESS

11    FUNCTIONALITY REMAINING IN THE DA1 BROWSER PRODUCTS.

12         THAT, TOO, SETS UP AN IRRELEVANT COMPARISON WHICH IS NOT

13    IMPORTANT TO THE COLORABLY DIFFERENT ANALYSIS.  IN THE

14    COLORABLY DIFFERENT ANALYSIS, WHAT NEEDS TO BE COMPARED IS THE

15    FEATURES FOUND TO INFRINGE TO THE MODIFIED FEATURE.

16         THE MODIFIED FEATURE FOR DA1 BROWSER PRODUCTS IS THE USE

17    OF A SHORT TAP TO CALL THE CONTEXTUAL POP-UP MENU ACTIONS

18    LINKED TO THE SELECTED STRUCTURE.  SO THE FACT THAT THE LONG

19    PRESS REMAINS IS NOT RELEVANT BECAUSE WHAT HAS CHANGED IS THE

20    USE OF THE SHORT TAP TO GET TO THE SAME MENU, THE CONTEXTUAL

21    POP-UP MENU, AS BEFORE.  SO THE RELEVANT COMPARISON IS BETWEEN

22    WHAT EXISTED BEFORE AND ITS REPLACEMENT, THE REPLACEMENT BEING

23    THE SHORT TAP.

24         THE COURT:  I KNOW YOU SORT OF RESPONDED TO IT, BUT I

25    THINK I NEED A LITTLE FURTHER ELABORATION ON YOUR RESPONSE TO

1    THE TIMING OF THE SELECTION AND THE DETECTION FOR THE DA1-A AND

2    1-B DESIGN AROUNDS.  CAN YOU RESPOND TO THAT A LITTLE MORE?

3            MR. SELWYN:  OF COURSE, YOUR HONOR.

4            THE COURT:  AND I'M SPECIFICALLY LOOKING AT SAMSUNG

5    SLIDES, YOU KNOW, 7 THROUGH 10.

6        GO AHEAD, PLEASE.

7            MR. SELWYN:  SO THERE ARE TWO ASPECTS TO IT UNDER THE

8    TIVO ANALYSIS.  FIRST IS THE COLORABLY DIFFERENT TEST, AND THEN

9    THE QUESTION ABOUT WHETHER IT ACTUALLY INFRINGES.

10       AND IN TERMS OF COLORABLY DIFFERENT, THERE IS NONE.  A

11   FINGER UP ACTION WILL ALWAYS FOLLOW A FINGER DOWN ACTION.  THE

12   TWO ACTIONS ARE ALWAYS RELATED IN THAT WAY.  FROM THE

13   FUNCTIONAL PERSPECTIVE OR FROM THE USER PERSPECTIVE, THERE IS

14   NO DIFFERENCE IF THE SOFTWARE IS PROGRAMMED TO CALL THE

15   DETECTION FUNCTION UPON FINGER UP OR FINGER DOWN.  A USER WOULD

16   NEVER KNOW AT ALL.

17       AND IN BOTH THE DA1-A BROWSER PRODUCTS AND THE INFRINGING

18   PRODUCTS, THE DETECTION FUNCTION BEGINS WITH THE SAME EVENT,

19   WITH THE FINGER DOWN EVENT.  THAT EVENT STARTS A TIMER BOTH IN

20   THE ADJUDICATED INFRINGING PRODUCTS AND IN THE REDESIGNED

21   PRODUCTS.

22       THE ONLY DIFFERENCE IS THAT IN THE REDESIGNED PRODUCTS, IF

23   THE USER LIFTS HIS OR HER FINGER OFF THE SELECTED STRUCTURE

24   WITHIN A SECOND, IT'S THEN THAT THE SOFTWARE RECOGNIZES THE

25   USER HAS PERFORMED A SHORT TAP AND CALLS THE FUNCTIONS THAT

1    DETECT STRUCTURE IN THE SOFTWARE.

2         SO FROM THE CODE PERSPECTIVE, AN OBVIOUS TRIVIAL CHANGE,

3    NO DISPUTE ABOUT THAT.  FROM THE USER PERSPECTIVE,

4    UNNOTICEABLE.

5         SO IN TERMS OF THE FUNCTIONAL COMPARISON BETWEEN THE TWO,

6    THEY ARE IDENTICAL AND NO MORE THAN COLORABLY DIFFERENT.

7         IN TERMS OF WHETHER IT STILL INFRINGES, THERE, YOUR HONOR,

8    THE ANALYSIS IS THE DOCTRINE OF EQUIVALENTS ANALYSIS, SO LET ME

9    BRIEFLY RUN THROUGH FUNCTION, WAY, RESULT.

10        RECALL HERE THAT THE ONLY LIMITATIONS OF CLAIM 1 AND 9

11   THAT SAMSUNG IS DISPUTING TO BE MET ARE 1(C)(2), AND THE ONLY

12   WORD IN THAT IS "DETECTED," AND SAMSUNG'S REDESIGN IN DA1-A

13   MEETS THIS LIMITATION UNDER D.O.E. BECAUSE IT PERFORMS THE

14   IDENTICAL FUNCTION IN SUBSTANTIALLY THE SAME WAY WITH THE SAME

15   RESULT AS THE CLAIM REQUIRES.

16        SO FIRST FUNCTION.  THE DA1-A PRODUCTS PERFORM THE SAME

17   FUNCTION AS THE ADJUDICATED PRODUCTS.  THEY BOTH ALLOW THE USER

18   TO SELECT STRUCTURED DATA DETECTED FROM A LARGER BODY OF TEXT

19   AND THEN TO CHOOSE AN ACTION TO PERFORM ON THE SELECTED DATA.

20        SAMSUNG'S ARTICULATION OF THE FUNCTION, WAY, RESULT TEST

21   GOES IMMEDIATELY AWRY AT THE FUNCTION STAGE.  SAMSUNG CLAIMS

22   THAT THE DA1-A PERFORMS A DIFFERENT FUNCTION BECAUSE IT

23   PREVENTS A USER FROM SELECTING A STRUCTURE THAT IS DETECTED.

24        THAT'S NOT RIGHT AT ALL.  SAMSUNG'S WRONG TO ASSERT THAT

25   IT PREVENTS A STRUCTURE FROM BEING DETECTED.  IN THE DA1-A

1    PRODUCTS, THE USERS ARE ALLOWED TO SELECT -- AS WE JUST SAW ON

2    THE VIDEO -- ARE ALLOWED TO DETECT STRUCTURES AND THOSE

3    STRUCTURES ARE THEN INDISPUTABLY DETECTED.

4         IN TERMS OF WAY, IN BOTH THE OLD AND THE NEW, USERS ARE

5    PRESENTED WITH STRUCTURES, BE IT TELEPHONE NUMBERS, ADDRESSES

6    AND SO FORTH, AND THEY ARE ALLOWED TO BE SELECTED BY THE USER

7    USING AN INTENTIONAL GESTURE, AND THOSE ARE DETECTED USING THE

8    IDENTICAL DETECTION FUNCTIONS.  THERE'S NO DISPUTE THAT SAMSUNG

9    DID NOT MODIFY THE SOURCE CODE USED TO PERFORM THE ACTUAL

10   DETECTION IN ANY MATERIAL WAY.

11        IN BOTH THE DA1-A PRODUCTS AND THE ADJUDICATED PRODUCTS,

12   THE PROCESS OF IDENTIFYING WHEN THE FINGER UP ACTION HAS

13   OCCURRED BEGINS IN THE CODE WITH THE FINGER DOWN ACTION.  BY

14   PLACING THAT FINGER DOWN, THE USER TRIGGERS THE START OF A

15   TIMER, JUST AS IN THE INFRINGING PRODUCTS.

16        IN THE DA1-A PRODUCT, IF THE USER LIFTS HIS OR HER FINGER

17   BEFORE THAT SECOND HAS ELAPSED, THE STRUCTURE WILL BE DETECTED.

18   THEREFORE, IN EVERY SINGLE INSTANCE, DETECTION BEGINS BY

19   PLACING A FINGER DOWN.

20        AND LAST, YOUR HONOR, RESULT.  THE FINGER UP METHOD OF THE

21   DA1 PRODUCT ACHIEVES THE IDENTICAL RESULT AS THE FINGER DOWN

22   METHOD IN THE ADJUDICATED PRODUCTS.  IN BOTH, THE DEVICES

23   INSTANTANEOUSLY PRESENT THE USER WITH A POP-UP MENU IN WHICH TO

24   SELECT AN ACTION LINKED TO THE DETECTED STRUCTURE.

25        SO TO THE USER, WHETHER THE DETECTION FUNCTIONS ARE CALLED

```
1        ON FINGER UP OR FINGER DOWN IS ENTIRELY UNNOTICEABLE.

2            THE COURT:  I HAVE SOME MORE QUESTIONS, BUT I DON'T

3        KNOW IF I WANT TO GIVE MS. SULLIVAN AN OPPORTUNITY TO RESPOND

4        TO THAT, AND THEN I HAVE MORE QUESTIONS THAT ARE ADDRESSED

5        ACTUALLY TO BOTH PARTIES AND THEN TO INDIVIDUAL PARTIES AS

6        WELL.

7            MS. SULLIVAN:  THANK YOU, YOUR HONOR, FOR GIVING US

8        SO MUCH CHANCE TO RESPOND TO ONE ANOTHER, AND I'D LIKE TO JUST

9        RESPOND TO MR. SELWYN'S BOTH BRIEF AND POINTS IF I MAY.

10           I'D LIKE TO START WITH THE STANDARD OF REVIEW AND POINT

11       OUT THAT UNFORTUNATELY HE IS INCORRECT TO SUGGEST THAT ANY

12       DISTRICT COURT HAS EVER HELD THAT THE STANDARD IS PREPONDERANCE

13       OF EVIDENCE IN THE ONGOING ROYALTY CONTEXT.

14           IF YOUR HONOR WANTS TO REVIEW THOSE DECISIONS -- IN FACT,

15       IN I/P ENGINE, THE COURT SAID, "I WILL ASSUME, WITHOUT

16       DECIDING, THAT THE CLEAR AND CONVINCING STANDARD APPLIES."  SO

17       HE DIDN'T CHOOSE A STANDARD AND HE RULED ASSUMING THAT CCE

18       APPLIED.

19           CREATIVE INTERNET DIDN'T MAKE ANY DECISION AS TO WHETHER

20       THE BURDEN OF PROOF WAS PREPONDERANCE OR CCE.

21           AND THE CROSS MEDICAL CASE THAT'S CITED IN APPLE'S REPLY

22       BRIEF SAYS NOTHING AT ALL ABOUT THE BURDEN.

23           I THINK THE POINT, YOUR HONOR, IS WE'RE IN TIVO'S WORLD.

24       IT'S TRUE THE FEDERAL CIRCUIT HASN'T RULED ON ONGOING

25       ROYALTIES.  BUT THERE'S ABSOLUTELY NO REASON TO THINK IT WOULD
```

1    DECIDE THAT ONGOING ROYALTIES, WHICH ARE A SUBSTITUTE FOR AN

2    INJUNCTION IN THE POST-TRIAL, POST-VERDICT CONTEXT, WOULD BE

3    SUBJECT TO ANY DIFFERENT STANDARD.

4         SO I WILL PREDICT CONFIDENTLY THAT WHEN THE FEDERAL

5    CIRCUIT REACHES THIS QUESTION, THEY'LL SAY THAT THE SAME

6    STANDARD APPLIES FOR ONGOING ROYALTIES AS IT DOES FOR CONTEMPT.

7         AND WHEN WE THINK ABOUT THAT, IN A WAY, IT'S SORT OF AN

8    A FORTIORI CASE BECAUSE WE GAVE UP OUR JURY RIGHT.  THERE'S NO

9    JURY SITTING HERE TO LISTEN TO MR. SELWYN TESTIFY TO WHAT THE

10   USER IS EXPERIENCING.  IT'S A DRACONIAN REMEDY TO IMPOSE

11   ONGOING ROYALTIES ON US WHEN WE HAVEN'T HAD A JURY RIGHT TO

12   DAMAGES.

13        SO IT MAKES SENSE THAT YOU WOULD BE IN THE SAME NARROW BOX

14   THAT YOU WOULD BE IF WE WERE HERE ON CONTEMPT OF AN INJUNCTION,

15   AND THAT IS TO MAKE SURE THAT YOU ARE HOLDING OUR FEET TO THE

16   VERY FIRE WE'VE ALWAYS -- WE'VE ALREADY BEEN THROUGH WITH THE

17   JURY, NOT TO SOME NEW FIRE.

18        AND SO, YOUR HONOR, NOT JUST MAKE SURE THERE ARE NO MORE

19   THAN COLORABLE DIFFERENCES HERE, AND THAT THERE'S INFRINGEMENT,

20   YOU WANT TO MAKE SURE OF THAT BY CLEAR AND CONVINCING EVIDENCE.

21        SO, YOU KNOW, IN THE CONTEMPT CONTEXT, THERE'S A CONCERN

22   ABOUT AFFRONT TO THE DIGNITY OF THE COURT, WHICH IS A VERY

23   IMPORTANT VALUE.  BUT I'D SUBMIT THAT THE JURY RIGHT IS AN EVEN

24   MORE FUNDAMENTAL VALUE BECAUSE IT'S CONSTITUTIONAL.

25        SO I THINK THAT THE CASE FOR CLEAR AND CONVINCING

1    EVIDENCE, WHEN IT DOES GET REACHED, IS VERY POWERFUL AND YOU

2    WOULD HAVE TO MAKE NEW LAW, YOUR HONOR, TO DECIDE THAT APPLE

3    PREVAILS HERE ON A PREPONDERANCE.

4         AND I THINK IT'S SO CLEAR THEY CAN'T PREVAIL ON CLEAR AND

5    CONVINCING EVIDENCE THAT IF YOU WERE TO RULE FOR THEM, YOU

6    WOULD REALLY HAVE TO TAKE THAT FIRST STEP, AND I DON'T THINK IT

7    WOULD BE A CORRECT ONE, AND I'M SURE YOUR HONOR WILL STUDY THIS

8    WITH GREAT CARE.

9         BUT, OF COURSE, IF YOU RULE FOR SAMSUNG, YOU CAN SIMPLY

10   SAY THAT WE PREVAILED WHETHER THE STANDARD IS CLEAR AND

11   CONVINCING EVIDENCE OR PREPONDERANCE BECAUSE APPLE HAS FAILED

12   TO SHOW BY A PREPONDERANCE THAT THERE IS A MORE THAN COLORABLE

13   DIFFERENCE.

14        AND THAT'S WHAT HAPPENED IN NCUBE AND THE COURT WAS EASILY

15   AFFIRMED ON THAT BY THE FEDERAL CIRCUIT.

16        SO, YOUR HONOR, JUST TURNING TO THE SECOND KEY POINT I

17   WANTED TO RESPOND TO FROM MR. SELWYN'S PRESENTATION, I WANTED

18   TO NOTE THE MOST IMPORTANT THING IN THAT PRESENTATION, AND THAT

19   IS WHAT HE DIDN'T TALK ABOUT.  AND YOUR HONOR, I THINK, HEARD

20   THE SAME THING I DID.  HE JUST DIDN'T RESPOND TO MY TIMING

21   POINT, HE DIDN'T RESPOND TO MY SEQUENCE POINT.  AND I THINK FOR

22   THE DA1-A DESIGN AROUND, FOR BOTH THE DA1 DESIGN AROUNDS,

23   TIMING IS EVERYTHING.  I KNOW HE CAME BACK TO, WELL, THE USER

24   DIDN'T REALLY NOTICE IT.  IT'S A FRACTION OF A SECOND.

25        BUT GO BACK TO THE HUNDRED METER SWIMMING RACE AT THE

1    OLYMPICS.  IT'S ONLY A FRACTION OF A SECOND, BUT ONE GETS GOLD

2    AND ONE GETS SILVER.

3            AND WHETHER IT'S PERCEPTIBLE TO THE USER IS NOT RELEVANT.

4    CAN YOU IMAGINE IF WE DECIDED UTILITY PATENT CODE DESIGN

5    AROUNDS BASED ON THE USER EXPERIENCE?

6            WE DON'T DECIDE WHETHER A DESIGN AROUND IS SIGNIFICANT

7    FROM THE PERSPECTIVE OF A SUPERFICIAL LAY CONSUMER.  WE DECIDE

8    IT FROM THE PERSPECTIVE OF A PERSON OF SKILL IN THE ART, AND TO

9    A PERSON OF SKILL IN THE ART, THERE'S A BIG DIFFERENCE.

10           THIRD, I'D LIKE TO JUST SUMMARIZE WHAT THE DIFFERENCES

11    ARE.  THE DIFFERENCES IN THE TIMING ARE IMPORTANT.  4PYOU HEARD

12    THAT IT'S A SHORT INTERVAL.  THAT'S OBVIOUSLY INCORRECT.

13           YOU HEARD THAT SUPPOSEDLY THERE WAS NO CHANGE IN THE CODE.

14    MR. MOWRY ADMITTED -- APPLE'S EXPERT, MR. MOWRY, ADMITTED IN

15    THE DEPOSITION TESTIMONY I CITED TO YOU EARLIER THAT THE

16    DETECTION ROUTINES HAVE NOT STARTED WITH FINGER DOWN, AND HE

17    THEN ADMITTED THAT THE DETECTION ROUTINES START WITH FINGER UP.

18           SO WHEN MR. SELWYN TRIES TO SAY FINGER DOWN, FINGER UP, IT

19    DOESN'T MATTER, HE'S CHANGING THE BASIS OF THE ACCUSATION AND

20    HE'S DOING IT IN THE FACE OF HIS OWN EXPERT'S TESTIMONY.

21           FINGER UP IS VERY DIFFERENT FROM FINGER DOWN.  FINGER DOWN

22    AT TRIAL MEANT DETECT THE STRUCTURE AND SELECT IT BEFORE THE

23    FINGER COMES UP.  THAT WAS THE TESTIMONY.

24           YOUR HONOR CAN REVIEW THE TRIAL TRANSCRIPT, MR. MOWRY'S

25    TESTIMONY AT TRIAL AT TRANSCRIPT PAGES 866 TO 870 WHERE HE

 1     EXPLAINS AT GREAT LENGTH LONG PRESS INVOLVES THE DETECTION PART

 2     AND THE SELECTION PART.  TRANSCRIPT 869, THAT'S THE DETECTION

 3     PART WHEN THE FINGER GOES DOWN AND THE COMPUTER TRIES TO FIGURE

 4     OUT IF THERE'S AN E-MAIL ADDRESS THERE, AND THEN THE USER IS --

 5     READING FROM 869, LINES 13 THROUGH 17 -- "THE USER EVENTUALLY

 6     IS HOLDING DOWN LONG ENOUGH THAT IT BECOMES A SELECTION THROUGH

 7     A PRESS AND HOLD, AND AT THAT POINT IT LOOKS AT WHAT'S UNDER

 8     YOUR FINGER."

 9          SO, YOUR HONOR, LONG PRESS, MEANING DETECT AND SELECT

10     BEFORE THE FINGER COMES UP, WAS THE ESSENCE OF THE INFRINGEMENT

11     CASE AT TRIAL, AND IT IS A SIGNIFICANT DIFFERENCE TO NOW SAY,

12     FINGER DOWN, FINGER UP, WHAT DOES IT MATTER?  USER CAN'T SEE.

13          IT'S MICHAEL PHELPS AT THE FINISH LINE.  IT DOES MATTER,

14     EVEN IF IT'S A FRACTION OF A SECOND, BECAUSE THE SEQUENCE IS

15     WHAT MATTERS.  AND THE SEQUENCE MATTERS BECAUSE YOUR HONOR

16     INTERPRETED THE PLAIN LANGUAGE OF THE USER INTERFACE CLAIM AS

17     BEING SELECTION OF THE STRUCTURE MUST COME AFTER DETECTION OF

18     THE STRUCTURE, AND THAT SHOULD BE REALLY THE END OF IT ON THE

19     DA1 DESIGN AROUNDS.

20          ON DA2, LAST POINT, YOUR HONOR, AND THEN WE CAN GO TO YOUR

21     QUESTIONS BECAUSE THEY'RE FAR MORE IMPORTANT THAN WHAT WE HAVE

22     TO SAY.

23          ON DA2, I THINK YOUR HONOR HIT THE NAIL RIGHT ON THE HEAD

24     WHEN YOU SAID RESOLVER ACTIVITY WAS IN THE ACCUSED PRODUCTS.

25     APPLE DID NOT PROVE THAT RESOLVER ACTIVITY WAS A POP-UP MENU OF

1    LINKED ACTIONS.  THEY NEVER PROVED THAT.

2         I'M NOT SAYING -- MR. SELWYN MISHEARD ME.  I DIDN'T MEAN

3    TO SAY THAT THERE'S AN IRON LAW THAT YOU CAN NEVER BRING UP AN

4    ACCUSED FEATURE FROM TRIAL AS PART OF YOUR ONGOING ROYALTIES.

5    I'M NOT SAYING THAT AS A MATTER OF LAW.

6         I'M JUST SAYING, THEY DIDN'T PROVE AT TRIAL, THEY DIDN'T

7    PROVE AT TRIAL THAT RESOLVER ACTIVITY CONTAINS LINKED ACTIONS.

8         WE DON'T THINK THEY DO.  WE THINK WHEN WE REMOVED THE

9    CONTEXT MENU, THE COMPARISON -- EXCUSE THE EXPRESSION -- THE

10   APPLES TO APPLES COMPARISON BETWEEN THE ADJUDICATED PRODUCTS

11   AND THE NOW ACCUSED PRODUCTS IS CONTEXT MENU WAS IN THE OLD ONE

12   AND IT'S REMOVED FROM THE NEW ONE.  THAT'S ENOUGH FOR US TO WIN

13   ON COLORABLE DIFFERENCES RIGHT THERE.

14        BUT IF YOU GET TO RESOLVER ACTIVITY, YOU CERTAINLY CAN'T

15   FIND THAT THEY'VE MADE THEIR CASE FOR INFRINGEMENT.  THE

16   JURY -- WE DON'T KNOW WHETHER THE JURY WOULD HAVE FOUND THESE

17   WERE LINKED ACTIONS UNDER THE COURT'S CONSTRUCTION OF ACTION

18   PROCESSOR BECAUSE THEY DIDN'T ACCUSE IT.

19        SO YOU DON'T HAVE A BASIS TO SAY THAT YOU CAN PIGGYBACK ON

20   THE JURY VERDICT FOR RESOLVER ACTIVITY BECAUSE THE JURY NEVER

21   WAS GIVEN THE CASE OF RESOLVER ACTIVITY.  WE THINK YOU CAN LOOK

22   AT IT THROUGH ITS PLAIN -- YOU CAN JUST LOOK AT IT.  IT SAYS --

23   THE RESOLVER ACTIVITY SCREENS SAY "COMPLETE ACTION BY."  THERE

24   ARE NOT A LIST OF ACTIONS.  WE LOST.  WE GAVE UP OUR ACTIONS.

25   YOU CAN'T NOW ADD YOUR E-MAIL TO CONTACTS.  THAT MENU OF

1    ACTIONS IS GONE.

2         ALL YOU CAN DO IS SEND YOUR E-MAIL AND YOU'RE GIVEN A SET

3    OF METHODS BY WHICH THE PRE-DETERMINED ACTION CAN BE

4    ADJUDICATED.  YOU SHOULDN'T GET TO THE RESOLVER ACTIVITY

5    SCREEN.  YOU'RE DONE WHEN THE CONTEXT POP-UP MENU IS GONE.

6         BUT IF YOU GET THERE, IT'S SO CLEARLY NOT A POP-UP MENU OF

7    LINKED ACTIONS AND THERE'S NO PROOF THAT IT INFRINGES.

8         SO, YOUR HONOR, THOSE ARE THE KEY POINTS:  TIMING MATTERS,

9    THE INTERVAL DOESN'T; RESOLVER ACTIVITY IS NOT AN INFRINGING

10   POP-UP MENU ON THE THEORY THAT WAS TRIED, AND IT WOULD BE TRIAL

11   BY AMBUSH IN A SENSE, OR LITIGATION BY AMBUSH TO NOW HIT US

12   WITH RESOLVER ACTIVITY; AND NCUBE IS RIGHT ON POINT, A VERY

13   SIMPLE CASE.

14        SO THANK YOU, AND MAYBE WE SHOULD TURN TO YOUR QUESTIONS.

15   DO YOU WANT US TO BOTH STAY UP HERE FOR QUESTIONS?

16           THE COURT:  SURE.  OR YOU CAN SIT DOWN, TOO, WHATEVER

17    IS MORE CONVENIENT.

18        SO MY FIRST QUESTION IS IF YOU COULD TALK ABOUT WHAT THE

19   RELEVANT PRIOR ART IS FOR THE DESIGN AROUNDS SINCE -- WELL, LET

20   ME BACK UP A SECOND.

21        IT WASN'T ENTIRELY CLEAR TO ME, BUT IN TIVO, IT LOOKS LIKE

22   IN DETERMINING WHETHER A MODIFICATION IS SIGNIFICANT, THE COURT

23   HAS TO CONSIDER WHETHER THAT MODIFICATION IS OBVIOUS OR NOT AND

24   HAS TO COMPARE THE MODIFICATION TO THE PRIOR ART.

25        BUT IT DIDN'T SEEM LIKE OBVIOUSNESS WOULD REQUIRE A

1    FINDING THAT THE MODIFICATION IS NOT MORE THAN COLORABLY

2    DIFFERENT, BUT IT DID SEEM LIKE SOMETHING I HAD TO CONSIDER.

3         FIRST OF ALL, WHY DON'T YOU ANSWER THE QUESTION OF HOW

4    DOES OBVIOUSNESS FACTOR INTO THE ANALYSIS?

5         MR. SELWYN:  SO OBVIOUSNESS IS RELEVANT TO ASSESS

6    WHETHER OR NOT A CHANGE IS NOT MORE THAN COLORABLY DIFFERENT.

7         THE COURT:  UM-HUM.

8         MR. SELWYN:  THE LANGUAGE IN TIVO FOCUSES ON WHETHER

9    THE MODIFICATION, QUOTE, "MERELY EMPLOYS OR COMBINES ELEMENTS

10   ALREADY KNOWN IN THE PRIOR ART IN A MANNER THAT WOULD HAVE BEEN

11   MADE OBVIOUS TO A PERSON OF ORDINARY SKILL IN THE ART AT THE

12   TIME THE MODIFICATION WAS MADE."

13        AND THE FEDERAL CIRCUIT THEN GOES ON TO SAY THAT A CHANGE

14   THAT IS NOT OBVIOUS MAY BE MORE THAN COLORABLY DIFFERENT,

15   IMPLYING, ALONG WITH THE PREVIOUS LANGUAGE I RECITED, THAT THE

16   CONVERSE IS TRUE.

17        THE FEDERAL CIRCUIT DID NOT SAY THAT YOU HAD TO MAKE AN

18   EXPLICIT COMPARISON OF THE CHANGE TO A PARTICULAR PIECE OF

19   PRIOR ART, BUT THE QUESTION IS WHETHER THESE CHANGES ARE ONES

20   THAT WOULD HAVE BEEN KNOWN TO SOMEBODY OF ORDINARY SKILL.

21        HERE --

22        THE COURT:  SO CAN I JUST -- I'M SORRY TO INTERRUPT

23   YOU.  OKAY, I'M LOOKING AT TIVO AS WELL.  SO THERE'S A

24   STATEMENT, A NON-OBVIOUS MODIFICATION MAY WELL RESULT, MAY WELL

25   RESULT IN A FINDING OF MORE THAN COLORABLE DIFFERENCE.  SO IT

1    DOESN'T SOUND LIKE IT'S AUTOMATIC, THAT IF YOU FIND THAT IT'S

2    OBVIOUS, IT'S NOT MORE THAN COLORABLY DIFFERENT.  IF YOU FIND

3    THAT IT IS -- DO YOU SEE WHAT I'M SAYING?

4            MR. SELWYN:  I THINK THAT'S FAIR.

5            THE COURT:  IT DOESN'T SOUND LIKE IT'S THAT -- THAT A

6    NOT MORE THAN COLORABLE MODIFICATION HAS TO BE NON-OBVIOUS, IF

7    THAT MAKES ANY SENSE.

8            MR. SELWYN:  IT'S A FACTOR TO BE CONSIDERED IN THE

9    ANALYSIS OF WHETHER SOMETHING IS COLORABLY DIFFERENT.

10           THE COURT:  OKAY.

11           MR. SELWYN:  HERE DR. MOWRY HAS GIVEN HIS OPINION

12   THAT THESE CHANGES ARE OBVIOUS, JUDGED BY ONE OF ORDINARY SKILL

13   IN THE ART WITH REFERENCE TO THE PRIOR ART AND WHAT CAME

14   BEFORE.

15       SAMSUNG'S EXPERT, GIVEN AN OPPORTUNITY TO DISPUTE THAT,

16   DOES NOT, NOR DOES SAMSUNG DISPUTE THAT.  YOU'LL READ THE

17   ENTIRE BRIEF THAT THEY SUBMITTED AND THERE'S NO SUGGESTION THAT

18   THERE'S ANY NOVELTY TO ANY OF THESE CHANGES, AND THEY CAN'T

19   MAKE THAT ARGUMENT BECAUSE THE CHANGES ARE SO MINOR.  THEY

20   REQUIRE -- THEY INVOLVE SO LITTLE CHANGE TO THE CODE.  AND,

21   AGAIN, FROM THE USER PERSPECTIVE, THEY WOULD NOT BE NOTICEABLE.

22       THIS IS NOT -- THE RIGHT ANALOGY IS NOT TO A HUNDRED METER

23   RACE.  THE RIGHT ANALOGY IS TO WHAT THE USER PERCEIVES WHEN

24   THEY'RE USING THE DEVICE.

25           AND HERE THERE'S ACTUALLY NO DISPUTE -- DR. JEFFAY ADMITS

 1    IT -- THAT FROM THE USER PERSPECTIVE, THEY'RE NOT GOING TO

 2    NOTICE ANY DIFFERENCE.

 3            THE COURT:  WELL, AND YOU'RE BASING THAT ON WHAT,

 4    PROVERIS RELYING ON USER MANUALS?  I MEAN, I ALSO GOT THE

 5    IMPRESSION FROM READING THE FEDERAL CIRCUIT CASES IN THE

 6    CONTEMPT CONTEXT THAT YOU CAN LOOK AT HOW A USER WOULD PERCEIVE

 7    OR NOT PERCEIVE THE DIFFERENCES IN DETERMINING WHETHER A CHANGE

 8    IS NOT MORE THAN COLORABLY DIFFERENT.

 9        BUT WHAT ARE YOU RELYING ON OTHER THAN PROVERIS?

10            MR. SELWYN:  SO PROVERIS DOES FOCUS ON USER MANUALS

11    AND IT FOCUSES ON THE PERSPECTIVE OF A USER WHEN IT REFERS TO

12    THEM BEING FUNCTIONALLY IDENTICAL.  I DON'T THINK THERE'S ANY

13    WAY TO READ THAT OTHER THAN TO SAY THAT THE FEDERAL CIRCUIT IS

14    LOOKING AT IT FROM THE PERSPECTIVE OF THE USER.

15        BUT THE OTHER THING THAT'S IMPORTANT HERE IS THE ACTUAL

16    CLAIM LANGUAGE OF CLAIM 9 DEPENDS ON CLAIM 1, THE FOCUS ON A

17    USER INTERFACE.  SO HOW THE USER INTERACTS WITH THAT USER

18    INTERFACE IS IMPORTANT TO THE COLORABLY DIFFERENT ANALYSIS.

19        AND WHEN YOU DO THAT EVALUATION, YOU SEE THAT THERE IS

20    NO -- THERE'S NOTHING THAT'S PERCEPTIBLE BY THE USER.  THAT'S

21    THE COLORABLE TEST.

22        WE THEN GO ON AFTER THAT TO THE INFRINGEMENT ANALYSIS, BUT

23    YOU CAN'T CONFLATE BOTH OF THOSE TESTS AS SAMSUNG IS TRYING TO

24    DO.

25            THE COURT:  SO WHAT IS THE PRIOR ART THAT SHOULD BE

```
1        CONSIDERED FOR THESE DESIGN AROUNDS?

2              MR. SELWYN:  WELL, THERE'S NOT ANY SPECIFIC PRIOR

3        ART, AND IN FACT, THE PRIOR ART THAT SAMSUNG SAYS WOULD HAVE

4        MADE A DIFFERENCE, BANDIT AND SIDEKICK, ARE NOT RELEVANT TO THE

5        ANALYSIS HERE AT ALL.

6            IN TERMS OF ASSESSING WHAT'S OBVIOUS, WHEN YOU LOOK AT

7        THESE CHANGES, YOU LOOK AT THEM FROM THE PERSPECTIVE OF ONE OF

8        ORDINARY SKILL AND YOU'D ASK, IS THERE SOME NOVELTY TO THIS?

9              AND, AGAIN, SAMSUNG DOESN'T CONTEND THAT THERE'S ANYTHING

10       NOVEL ABOUT IT.  THEY'RE NOT SUGGESTING THAT THEY MADE SOME

11       CHANGE THAT CAN'T BE FOUND IN WHAT CAME BEFORE.  IT'S A CHANGE

12       THAT REDUCES DOWN TO A FEW LINES OF CODE, OF CHANGING THE

13       TIMING OF WHEN A CALL TO DETECTION OCCURS.

14             THE COURT:  SO THE OBVIOUSNESS ANALYSIS REQUIRES THE

15       PERSPECTIVE OF A PERSON OF ORDINARY SKILL IN THE ART AT THE

16       TIME THE MODIFICATION WAS MADE.  SO WHEN WERE THESE

17       MODIFICATIONS MADE?

18             MR. SELWYN:  WELL, WE KNOW THAT THEY WERE MADE AFTER

19       TRIAL.

20             THE COURT:  HOW DO WE KNOW THAT?

21             MR. SELWYN:  THAT THEY WERE --

22             THE COURT:  DO WE KNOW THAT?  WHEN WERE THESE

23       MODIFICATIONS MADE?

24             MR. SELWYN:  I DON'T THINK THERE'S ANY DISPUTE ABOUT

25       THE TIMING OF THE RELEASE OF THE PHONES AS BEING ONES THAT WERE
```

1      RELEASED POST-TRIAL AND THE MODIFICATIONS WERE MADE IN

2      CONNECTION WITH THAT.

3              THE COURT:  DO YOU KNOW, MS. SULLIVAN, OR ANYONE ON

4      YOUR TEAM?

5              MS. SULLIVAN:  WE BELIEVE IT'S LATE 2014, YOUR HONOR,

6      SO POST-TRIAL.

7              THE COURT:  OKAY.

8          SO WHAT ROLE, IF ANY, DOES THE SCOPE OF THE PATENT PLAY IN

9      THE FIRST STEP OF THE TIVO ANALYSIS?

10             MR. SELWYN:  THE SCOPE OF THE PATENT IS IMPORTANT

11     BECAUSE IT HELPS US ASSESS WHETHER THESE CHANGES ARE

12     SIGNIFICANT FROM THE PERSPECTIVE OF THE CLAIM.

13         SO LET ME GIVE YOU AN EXAMPLE.  YOU'VE HEARD MUCH ABOUT

14     PRE-DETECTION AND THE ROLE THAT THAT PLAYS.  THE CLAIM DOESN'T

15     HAVE ANY REQUIREMENT ABOUT THAT, AND WE KNOW FROM THE JURY

16     VERDICT THAT PRODUCTS -- THAT APPLICATIONS THAT WERE FOUND TO

17     INFRINGE, SOME OF THEM DID HAVE PRE-DETECTION, THE UNDERLINING,

18     AND SOME DID NOT.

19         AND SIMILARLY WITH RESPECT TO THE SHORT TAP AND THE LONG

20     TAP.  WE KNOW THAT THE JURY FOUND THAT SOME APPLICATIONS WITH

21     THE SHORT TAP INFRINGE AND SOME WITH THE LONG TAP INFRINGE.

22         SO WHEN SAMSUNG SAYS IT MAKES A DIFFERENCE IN THE REDESIGN

23     WHETHER -- MOVING FROM THE LONG TAP TO THE SHORT TAP, WE KNOW

24     IT DOESN'T BECAUSE THE JURY FOUND THAT IT DOESN'T.  THEY LOOKED

25     AT APPLICATIONS, THEY APPLIED THEM AGAINST THE CLAIM, AND THEY

1     SAID WHETHER THEY'RE SHORT TAP OR LONG TAP, THAT MEETS THE

2     LANGUAGE OF THE CLAIM AND INFRINGES.

3          AND WE ARE BOUND BY THAT NOW.  WE CAN'T CHANGE THAT IN AN

4     EQUITABLE PROCEEDING.  WE HAVE TO LOOK TO THE EXPRESS OR

5     IMPLICIT FINDINGS OF THE JURY ON THAT QUESTION.

6          THE COURT:  SO YOU DON'T THINK TIVO IS SUGGESTING

7     THAT THE SCOPE OF THE PATENT IS ONLY CONSIDERED IN THE

8     INFRINGEMENT STEP?

9          MR. SELWYN:  NO.  THE SCOPE OF THE -- THE CLAIM

10    LANGUAGE IS IMPORTANT.

11         THE COURT:  UM-HUM.  IN BOTH STEPS?

12         MR. SELWYN:  WELL, IT'S IMPORTANT IN BOTH STEPS, YES,

13    BECAUSE IN ASSESSING WHETHER SOMETHING IS COLORABLY DIFFERENT,

14    IT'S IMPORTANT TO ASSESS WHETHER THAT'S SOMETHING THE CLAIM

15    REQUIRES IN THE FIRST PLACE.

16         AND THEY ARE POINTING TO DIFFERENCES AND SUGGESTING THAT

17    IT MATTERS WHEN THE CLAIM DOESN'T PROPOSE SUCH A RESTRICTION IN

18    THE FIRST PLACE.

19         MS. SULLIVAN:  YOUR HONOR, I WANTED TO KNOW WHETHER

20    YOU WANTED RESPONSES TO THE QUESTIONS IN THE ORDER THEY ARISE,

21    BECAUSE WE DISAGREE WITH THAT, OR WOULD YOU LIKE ME TO WAIT

22    UNTIL YOU FINISH WITH MR. SELWYN?  EITHER WAY IT'S FINE.  IT'S

23    UP TO THE COURT.

24         THE COURT:  WELL, DO YOU HAVE ANY MORE RESPONSE TO

25    THE QUESTION OF THE SCOPE OF THE PATENT, MR. SELWYN?

```
 1              MR. SELWYN:  NO.

 2              THE COURT:  OKAY.  SO MR. SELWYN IS SAYING THE SCOPE

 3     OF THE PATENT IS RELEVANT TO BOTH WHETHER IT'S MORE THAN

 4     COLORABLY DIFFERENT AND INFRINGEMENT.

 5          DO YOU AGREE WITH THAT OR DO YOU DISAGREE?

 6              MS. SULLIVAN:  NO, YOUR HONOR.  WE RESPECTFULLY

 7     DISAGREE.

 8              THE COURT:  OKAY.

 9              MS. SULLIVAN:  WE THINK THAT THERE'S TWO STEPS IN

10     TIVO, AND THE FIRST ONE IS COMPARE THE DESIGNED AROUND PRODUCTS

11     TO THE ADJUDICATED FEATURES OF THE ADJUDICATED PRODUCTS.  IT'S

12     NOT A PRODUCT-TO-CLAIM COMPARISON.  IT'S A PRODUCT-TO-PRODUCT,

13     FEATURE-TO-FEATURE COMPARISON.  TIVO COULDN'T BE CLEARER ABOUT

14     THAT.  I READ YOU THE LANGUAGE EARLIER.

15          IT'S ONLY AT STEP TWO, IF YOU CONDUCT AN INFRINGEMENT

16     ANALYSIS, IF YOU GET TO STEP TWO, THAT YOU THEN COMPARE THE

17     DESIGN AROUNDS TO THE CLAIM.  TWO SEPARATE STEPS.

18          AND AT THE FIRST STEP, ALL YOU'RE LOOKING AT IS WHAT DID

19     APPLE TRY, NOT WHAT DOES, WHAT INFINITE NUMBER OF POTENTIAL

20     INFRINGEMENT THEORIES COULD YOU HAVE RELEVANT TO THE CLAIM?

21     IT'S WHAT DID APPLE TRY?

22          AND APPLE TRIED LONG PRESS AS THE BASIS FOR DETECT FIRST,

23     SELECT SECOND, AND IT TRIED -- AND IT TRIED DETECTION FIRST --

24     IN THOSE PRODUCTS THAT HAD PRE-DETECTION, DETECTION PRECEDED

25     SELECTION WHERE THERE WAS PRE-DETECTION.
```

```
 1          YOUR HONOR, I DO HAVE TO JUST --

 2              THE COURT:  CAN I ASK YOU A QUESTION, THOUGH?

 3              MS. SULLIVAN:  YES, YOUR HONOR.

 4              THE COURT:  IN NCUBE, THE FEDERAL CIRCUIT AFFIRMED

 5      THE DISTRICT COURT RULING ON THE FIRST TEST WHERE THERE WAS

 6      MORE THAN COLORABLY DIFFERENT, BECAUSE EVEN THOUGH THIS

 7      PARTICULAR FEATURE PERFORMED THE SAME FUNCTION, IT DID SO IN A

 8      WAY THAT ALL PARTIES ADMIT PUTS THE CLIENT ID -- THAT'S THE

 9      FEATURE -- OUTSIDE THE CLAIM.  THIS IS A SIGNIFICANT CHANGE TO

10      THE SYSTEM.

11          SO THEY CLEARLY, IN STEP ONE IN NCUBE, LOOKED AT COMPARING

12      THE MODIFICATION TO THE CLAIM AND TO THE SCOPE OF THE PATENT.

13              MR. SELWYN:  AND --

14              MS. SULLIVAN:  YES, YOUR HONOR.

15      I'M SORRY.  IF I COULD JUST FINISH?

16      I THINK OBVIOUSLY THE SCOPE OF THE PATENT IS RELEVANT TO

17      WHETHER THERE IS -- IN STEP ONE, THE SCOPE OF THE PATENT IS

18      RELEVANT TO HOW THE CASE WAS TRIED.

19          SO THE CASE WAS TRIED --

20              THE COURT:  NO, NO.  THAT'S NOT WHAT NCUBE IS TALKING

21      ABOUT.  IN NCUBE, THE FEDERAL CIRCUIT IS SAYING THAT IF A

22      MODIFICATION PUTS A FEATURE OUTSIDE THE SCOPE OF THE CLAIM

23      LANGUAGE, THEN IT IS MORE THAN COLORABLY DIFFERENT.

24              MS. SULLIVAN:  YEAH.  SO WE THINK THAT IF YOU APPLY

25      THAT STANDARD, WE OBVIOUSLY WIN BECAUSE WHETHER YOU DISTINGUISH
```

```
 1        THE DESIGNED AROUND PRODUCTS FROM THE ADJUDICATED FEATURES OR

 2   YOU COMPARE THE DESIGNED AROUND PRODUCTS TO THE CLAIM, THE

 3   REASON WE WIN IS THE SAME FOR BOTH.  THE DESIGN AROUND

 4   PRODUCTS, AS TO DA1, HAVE REMOVED THE FEATURE OF DETECT FIRST,

 5   SELECT SECOND.

 6        AND IT'S DONE IT TWO SEPARATE WAYS, YOUR HONOR.  WE

 7   HAVE -- OUR ENGINEERS HAVE CHANGED THE CODE.

 8             THE COURT:  OKAY.  I'M SORRY TO INTERRUPT YOU.  I'M

 9   ASKING A LEGAL QUESTION.

10             MS. SULLIVAN:  YES.  SORRY, YOUR HONOR.

11             THE COURT:  SO YOU AGREE THEN THAT THE SCOPE OF THE

12   PATENT IS RELEVANT TO STEP ONE OF TIVO?

13             MS. SULLIVAN:  WELL, I THINK THAT TIVO TELLS YOU TO

14   COMPARE THE DESIGNED AROUND PRODUCTS TO THE ADJUDICATED

15   PRODUCTS.  HOW THE ADJUDICATION HAPPENED OBVIOUSLY REQUIRES YOU

16   TO THINK ABOUT THE CLAIM.

17        BUT I DON'T THINK STEP ONE ASKS YOU TO DO A

18   PRODUCT-TO-CLAIM COMPARISON IN THE FIRST INSTANCE.  THAT'S THE

19   SECOND STEP.

20             MR. SELWYN:  YOUR HONOR, MAY I RESPOND?

21             THE COURT:  GO AHEAD.

22             MR. SELWYN:  LET ME TRY TO CRYSTALLIZE IT IN THE

23   CONTEXT OF THE FACTS IN THIS CASE.  SO FOR DA1-A, THEY SAY THIS

24   CHANGE FROM LONG TAP -- LONG PRESS TO SHORT TAP MAKES A

25   DIFFERENCE AND IT MAKES IT MORE THAN COLORABLY DIFFERENT.
```

```
 1        AS PART OF THAT ASSESSMENT, YOU HAVE TO LOOK AT WHAT THE
 2    CLAIM SAYS.  CLAIM 9 ONLY REQUIRES THAT THE USER SELECT A
 3    STRUCTURE.  IT CONTAINS NO REQUIREMENT REGARDING THE TYPE OF
 4    GESTURE TO MAKE THAT SELECTION.
 5        AND IT'S ALSO IMPORTANT TO THINK ABOUT, IN ASSESSING THE
 6    CLAIM, WHAT THE JURY FOUND.  SO THE JURY FOUND THAT PRODUCTS
 7    THAT USE EITHER A SHORT TAP IN THE CONTEXT OF THE MESSENGER
 8    APPLICATION, OR A LONG TAP IN THE CONTEXT OF THE BROWSER
 9    APPLICATION, INFRINGE.  THAT IS THE VERDICT AND THAT IS THE
10    VERDICT THAT WE MUST APPLY NOW.
11        THE COURT RULING ON AN EQUITABLE CLAIM AFTER A JURY HAS
12    REACHED A VERDICT ON A LEGAL CLAIM MUST FOLLOW THE JURY'S
13    IMPLICIT OR EXPLICIT FACTUAL DETERMINATIONS.
14        SO THERE IS HERE AN EXPLICIT FACTUAL DETERMINATION THAT
15    BOTH LONG TAP AND SHORT TAP, LONG PRESS AND SHORT TAP --
16    THEY'RE SO CLOSE THAT I USE THEM SIMILARLY -- THAT BOTH OF
17    THOSE MEET THE CLAIM LANGUAGE.
18        MS. SULLIVAN:  YOUR HONOR, ON NCUBE, I -- I'M SO
19    SORRY I DIDN'T HAVE IT EARLIER FOR YOUR QUESTION.  I THINK
20    NCUBE REALLY SUPPORTS MY ORIGINAL ARGUMENT ON YOUR QUESTION,
21    AND THAT IS THAT AT STEP ONE OF TIVO, YOU DON'T LOOK TO THE
22    CLAIM, YOU JUST LOOK TO THE ADJUDICATED PRODUCTS.
23        AND HERE, YOUR HONOR, I'M READING FROM 732 F.3D AT 1351.
24    SO IF YOU'RE IN WEST LAW, IT'S PAGE 5.
25        AND ON THE RIGHT-HAND COLUMN JUST BEFORE ROMAN III, IT
```

```
 1        COULDN'T BE CLEARER.  THE MIDDLE OF THE PARAGRAPH ACTUALLY

 2        RECALLS TO TIVO.  IT SAYS, "AS THE SEPARATION OF THE COLORABLE

 3        DIFFERENCES AND INFRINGEMENT COMPONENTS IN TIVO INDICATES, THE

 4        COLORABLE-DIFFERENCES STANDARD FOCUSES ON HOW THE PATENTEE IN

 5        FACT PROVED INFRINGEMENT, NOT WHAT THE CLAIMS REQUIRE.  IN THIS

 6        WAY, THE TIVO STANDARD PRESERVES VALUES OF NOTICE AND

 7        PRESERVATION OF TRIAL RIGHTS BY KEEPING CONTEMPT SUITABLY

 8        LIMITED."

 9             THE COURT:  I'M SORRY.  I HAVE THE F.3D.  I HAVE THE

10        732 F.3D VERSION.  I DON'T HAVE THE WEST LAW VERSION.

11             MS. SULLIVAN:  I'M VERY SORRY.  SO IT'S 732 -- IF YOU

12        HAVE 732 F.3D, IT'S TOWARD THE END OF THE DECISION, AND YOU'LL

13        SEE THERE'S A ROMAN III, WHICH IS THE CONCLUSION, AND IT'S THE

14        PARAGRAPH JUST BEFORE ROMAN III.  SO THERE'S THE CONCLUSION,

15        AFFIRMED.

16             THE COURT:  OH, OKAY.  PARAGRAPH III, I'VE GOT IT.

17             MS. SULLIVAN:  THE PENULTIMATE PARAGRAPH BEGINNING

18        "FINALLY."

19             THE COURT:  OKAY.  GOT IT.  GIVE ME ONE MOMENT,

20        PLEASE.

21             MS. SULLIVAN:  HALFWAY THROUGH THAT PARAGRAPH, YOUR

22        HONOR, IS THE KEY LANGUAGE.

23        (PAUSE IN PROCEEDINGS.)

24             THE COURT:  ALL RIGHT.  I AM SORRY TO MS. SHORTRIDGE

25        BECAUSE I FORGOT WE WERE SUPPOSED TO TAKE A BREAK.  I HAVE A
```

```
 1        FEW MORE QUESTIONS.  I WOULD LIKE TO TAKE A TEN MINUTE BREAK

 2     NOW, THOUGH.  OKAY?  THANK YOU.

 3             MS. SULLIVAN:  THANK YOU.

 4             MR. SELWYN:  THANK YOU.

 5          (RECESS FROM 2:56 P.M. UNTIL 3:17 P.M.)

 6             THE COURT:  OKAY.  WELCOME BACK.  PLEASE TAKE A SEAT.

 7          ALL RIGHT.  IS THERE ANYTHING ANYONE WANTED TO SAY ON THE

 8     LAST POINT?  I MEAN, I AGREE THAT'S WHAT THE NINTH CIRCUIT --

 9     THE FEDERAL CIRCUIT SAYS IN NCUBE, BUT IT'S NOT WHAT THEY DO,

10     SO IT'S A LITTLE BIT CONFUSING.

11             MR. SELWYN:  SO I WOULD JUST MAKE ONE POINT ON THIS

12     ISSUE.

13             THE COURT:  OKAY.

14             MR. SELWYN:  AND THAT IS WE DON'T DISAGREE THAT THE

15     MORE THAN COLORABLY DIFFERENT TEST REQUIRES A

16     PRODUCT-TO-PRODUCT COMPARISON OF LOOKING AT WHAT THE ACCUSED

17     FUNCTIONALITY IS VERSUS ITS REPLACEMENT.

18          BUT WHAT WE SAY IS WHETHER A CHANGE IS INSIGNIFICANT

19     MATTERS IN THE CONTEXT OF THE CLAIMS THAT ARE AT ISSUE, AND A

20     CHANGE THAT HAS NOTHING TO DO WITH THE CLAIM LANGUAGE IS NOT

21     LIKELY TO BE A SIGNIFICANT CHANGE.

22             MS. SULLIVAN:  YOUR HONOR, WE AGREE WITH THAT.  WE

23     THINK YOU'RE ABSOLUTELY RIGHT THAT NCUBE SAYS THAT THERE'S

24     SEPARATION BETWEEN THE TWO STEPS, BUT OBVIOUSLY THE CLAIM, AS

25     YOU POINTED OUT, IS RELEVANT TO WHAT THE COURT DOES IN NCUBE.
```

1        SO, SURE, YOU'RE LOOKING AT COMPARING THE DESIGN AROUND

2    PRODUCTS TO THE ADJUDICATED PRODUCTS IN LIGHT OF THE CLAIM, SO

3    THE CLAIM IS RELEVANT IN BOTH STEPS.  I THINK YOU'RE ABSOLUTELY

4    RIGHT ABOUT THAT.

5        IT'S JUST THAT YOU DON'T LOOK AT THE ADJUDICATED PRODUCT

6    RAW TO THE CLAIMS AT STEP ONE -- SORRY -- YOU DON'T LOOK AT THE

7    DESIGN AROUND PRODUCT RAW TO THE CLAIMS AT STEP ONE.  YOU LOOK

8    AT THE DESIGN AROUND PRODUCTS IN COMPARISON TO THE ADJUDICATED

9    PRODUCTS AND WHY THEY WERE FOUND TO INFRINGE THE CLAIM AT

10   TRIAL, IF THAT'S HELPFUL.  THE CLAIM IS RELEVANT, BUT ONLY IN

11   THE CONTEXT OF HOW THE CLAIM WAS FOUND INFRINGED AT TRIAL.

12       DOES THAT HELP?

13           THE COURT:  DO YOU AGREE WITH MS. SULLIVAN'S POINT?

14           MR. SELWYN:  WELL, I THINK SO.

15       BUT THE IMPORTANT POINT HERE IS THAT THE CLAIM WAS FOUND

16   TO BE INFRINGED BOTH ON THE BASIS OF LONG PRESS AND SHORT TAP.

17       SO --

18           MS. SULLIVAN:  AND HERE WE HAVE TO STRENUOUSLY

19   DISAGREE.  I DON'T MEAN TO INTERRUPT MR. SELWYN.

20       BUT WHEN YOU'RE FINISHED, I'D LIKE A CHANCE TO RESPOND.

21           MR. SELWYN:  SO IT'S IMPORTANT HERE BECAUSE WE HAVE

22   TO BASE WHAT WE DO ON THE EQUITABLE PHASE ON THE EXPRESS OR

23   IMPLICIT FINDINGS OF THE JURY.  THE JURY FOUND THAT THE CLAIM

24   LANGUAGE WAS SATISFIED EITHER BY A SHORT TAP OR A LONG PRESS.

25   SO THEREFORE, IN ASSESSING WHETHER IT IS A MORE THAN COLORABLY

```
1        DIFFERENT CHANGE, YOU'RE GOING FROM LONG PRESS TO SHORT TAP,

2        WHAT THE JURY DID IS IMPORTANT.

3                THE COURT:  AND HOW DO WE KNOW THAT THE JURY FOUND

4        THAT?

5                MR. SELWYN:  BECAUSE WE KNOW THAT THE JURY FOUND BOTH

6        THE MESSENGER AND BROWSER APPLICATIONS TO INFRINGE, ONE OF

7        WHICH USED THE SHORT TAP AND ONE OF WHICH USED THE LONG PRESS.

8                MS. SULLIVAN:  YOUR HONOR, THIS IS INCORRECT AND I

9        WOULD RESPECTFULLY ASK YOU TO GO BACK TO SLIDES 14 AND 15 SO I

10       CAN SHOW YOU WHY.

11           MR. SELWYN HAS SAID SEVERAL TIMES THAT THE JURY FOUND THAT

12       SHORT TAP ALONE SATISFIED THE DETECTION FIRST, SELECTION SECOND

13       LIMITATION OF THE CLAIM.

14           THAT IS INCORRECT.  THE REASON WHY THE JURY FOUND SHORT

15       TAP TO INFRINGE ON MESSENGER IS CLEAR FROM SLIDE 14.  THERE WAS

16       PRE-DETECTION UNDER THE ADJUDICATED MESSENGER PRODUCT, AND BY

17       PRE-DETECTION WE MEAN -- IF YOU LOOK AT SLIDE 14 -- THERE'S --

18       THE CODE PRE-DETECTS THE E-MAIL ADDRESS AND THE PHONE NUMBER.

19       IT APPEARS AS A HYPERLINK.

20           BUT IF YOU TURN TO PAGE 15, THE MORE THAN COLORABLE

21       DIFFERENCE IS SAMSUNG REMOVED PRE-DETECTION.  PRE-DETECTION IS

22       GONE.

23           SO IT'S ABSOLUTELY FALSE TO SAY THAT THE JURY ADJUDICATED

24       SHORT TAP ALONE AS SATISFYING THE CLAIM.  IT ADJUDICATED SHORT

25       TAP AS SATISFYING THE CLAIM ONLY WHERE THERE WAS PRE-DETECTION,
```

```
1    WHICH HAS NOW BEEN REMOVED.

2         NOW THAT THE PRODUCTS HAVE ONLY SHORT TAP WITHOUT

3    PRE-DETECTION, YOUR HONOR, THERE IS NO DETECTION FIRST, WHICH

4    CAME FROM PRE-DETECTION, AND SELECTION SECOND.

5         AND, YOUR HONOR, IF I COULD JUST CARRY OUT THAT POINT,

6    MR. SELWYN ALSO KEPT SAYING THAT SOMEHOW SHORT TAP STARTS

7    DETECTION.  THAT'S FALSE.  IT IS UNDISPUTED BY THE EXPERT

8    TESTIMONY THAT SHORT TAP ENDS SELECTION, AND AFTER SHORT TAP,

9    YOU BEGIN DETECTION.  THAT'S APPLE'S OWN EXPERT, MOWRY.  "THE

10   DETECTION ROUTINES START WITH FINGER UP, YES, I SAID THAT

11   BEFORE, YES."

12        SO SHORT TAP IS VERY DIFFERENT FROM LONG PRESS, AND SHORT

13   TAP WAS NEVER ADJUDICATED TO INFRINGE AT TRIAL, ABSENT

14   PRE-DETECTION, WHICH HAS NOW BEEN REMOVED.  SO, YOUR HONOR,

15   IT'S SIMPLY INCORRECT TO SAY THAT SHORT TAP WAS ADJUDICATED AT

16   TRIAL.

17             THE COURT:  WHAT'S YOUR RESPONSE?

18             MR. SELWYN:  THE RESPONSE IS THAT THE ABSENCE OF

19   PRE-DETECTION OF STRUCTURES -- THAT THE SHORT TAP GESTURE

20   PERFORMS THE SAME FUNCTION AS THE LONG TAP.  BOTH ARE

21   REFLECTING AN INTENTIONAL GESTURE ON THE PART OF THE USER.

22        AND THE DIFFERENCE FROM A USER PERSPECTIVE AND A CODE

23   PERSPECTIVE IS TRIVIAL.  THE CLAIMS DON'T REQUIRE THAT

24   SELECTION BE PERFORMED BY ANY PARTICULAR GESTURE, BE IT A SHORT

25   TAP OR A LONG PRESS.
```

```
1          SO WHEN WE LOOK AT THIS FROM THE PERSPECTIVE OF THE CLAIM

2     LANGUAGE, THERE IS NO DIFFERENCE.

3          WHEN WE LOOK AT IT FROM THE PERSPECTIVE OF WHAT THE JURY

4     DID, THE JURY FOUND BOTH OF THESE APPLICATIONS TO INFRINGE, ONE

5     BEING WITH THE LONG PRESS, ONE BEING WITH THE SHORT TAP.

6     THAT'S THE CONCLUSION THAT WE HAVE TO BE BOUND BY IN ASSESSING

7     WHETHER THIS CHANGE IS A COLORABLE ONE FROM THE PERSPECTIVE OF

8     THE CLAIM LANGUAGE.

9               MS. SULLIVAN:  YOUR HONOR, MAY I RESPOND?

10              THE COURT:  VERY BRIEFLY.

11              MS. SULLIVAN:  YOUR HONOR, THE CLAIMS DO REQUIRE

12    DETECTION BEFORE SELECTION.  MR. SELWYN, EVERY -- I'VE HEARD

13    HIM SEVERAL TIMES READ THE CLAIM AS IF IT SAYS SELECTION OF A

14    STRUCTURE.  IT DOESN'T SAY SELECTION OF A STRUCTURE.  IT SAYS,

15    "A USER INTERFACE ENABLING THE SELECTION OF A DETECTED

16    STRUCTURE."  HE LIKES TO OMIT THE WORD "DETECTED."

17          AND THE PRESENCE OF THE WORD "DETECTED" MEANS DETECT

18    FIRST, SELECT SECOND.  YOU HELD THAT.  IT'S ON SLIDE 8.

19          SO, YOUR HONOR, YES, OF COURSE THE CLAIM DOESN'T SAY LONG

20    TAP, SHORT PRESS.  BUT IT SAYS DETECTION MUST PRECEDE

21    SELECTION, AND THE ADJUDICATED FEATURE, THE JURY FOUND

22    DETECTION BEFORE SELECTION.  WHERE THERE'S PRE-DETECTION,

23    THAT'S GONE.  SHORT TAP DOESN'T INFRINGE.

24          AND THE JURY FOUND LONG PRESS CONTAINS DETECTION AND

25    SELECTION.  LONG PRESS GONE, SHORT TAP IN.  SHORT TAP ENDS
```

 1    SELECTION AND DETECTION ROUTINES BEGIN AFTERWARDS.  THEIR

 2    EXPERT AGREED.

 3          SO, YOUR HONOR, THE SEQUENCE THAT IS THE CRITICAL PART OF

 4    THE CLAIM HAS BEEN REVERSED.  IT'S THE OPPOSITE SEQUENCE NOW.

 5            THE COURT:  I WOULD PREFER NOT TO HAVE A REPEAT OF

 6    THE LAST CASE MANAGEMENT CONFERENCE WHERE WE START GOING IN A

 7    CIRCLE OVER THE SAME ARGUMENTS.

 8          I APPRECIATE YOUR ARGUMENT.  I WILL GO BACK AND LOOK AT

 9    ALL OF YOUR SLIDES.

10          I'D LIKE TO MOVE ON NOW IF THAT'S ALL RIGHT.

11            MS. SULLIVAN:  THANK YOU, YOUR HONOR.

12            THE COURT:  ALL RIGHT.  THANK YOU.

13          OKAY.  SO LET ME ASK MR. SELWYN A QUESTION.  SO YOUR --

14    AND I HAVEN'T MADE ANY DECISIONS.  I'LL HAVE TO GO BACK AND

15    LOOK AT EVERYTHING THAT YOU'VE RAISED TODAY AND LOOK MORE

16    CAREFULLY THROUGH YOUR SLIDES AND THROUGH VARIOUS TESTIMONY

17    THAT YOU'VE CITED, SO I HAVEN'T MADE ANY DECISIONS YET, BUT I

18    DO NEED TO ASK VARIOUS QUESTIONS.

19          YOUR CALCULATION OF ONGOING ROYALTIES STARTS FROM

20    NOVEMBER 26TH, 2014, THROUGH JANUARY 31 OF 2016.

21          BUT THERE'S A CONVOLUTED HISTORY OF PERMANENT INJUNCTION

22    IN THIS CASE.  I DENIED ONE AND THE FEDERAL CIRCUIT SAID I HAD

23    TO ENTER ONE, SO I DID.  AND THEN THE PANEL REVERSED THE JURY

24    VERDICTS FOR THE THREE APPLE PATENTS THAT LED TO THE

25    INJUNCTION, SO THEN -- BUT THEN THE EN BANC FEDERAL CIRCUIT

1    REVERSED THAT PANEL.

2         SO THERE'S A CONVOLUTED HISTORY OF PERMANENT INJUNCTIONS

3    IN THIS CASE, BUT ONE WAS ENTERED AFTER THE FIRST REVERSAL OF

4    MY DENIAL OF PERMANENT INJUNCTION ON JANUARY 18, 2016.

5         SO WHY SHOULD APPLE BE ENTITLED TO BOTH AN INJUNCTION AND

6    ONGOING ROYALTIES FOR THAT WINDOW BETWEEN WHEN THE PERMANENT

7    INJUNCTION WAS ENTERED ON JANUARY 18 OF 2016 AND THE 31ST OF

8    THAT MONTH?  SO IT'S JUST LESS THAN TWO WEEKS, BUT --

9         MR. SELWYN:  SO I THINK THE HONEST ANSWER IS THAT

10   NEITHER PARTY HAS FOCUSSED ON THAT PARTICULAR QUESTION, BUT

11   THERE'S BEEN NO DISPUTE RAISED AS TO THE CALCULATION THAT APPLE

12   HAS PROFFERED, ASSUMING THAT YOUR HONOR AGREES WITH US ON THE

13   LIABILITY ISSUE.

14        THE COURT:  OKAY.  AND IT LOOKS LIKE MS. FRAZIER HAS

15   A --

16        (DISCUSSION OFF THE RECORD BETWEEN PLAINTIFF'S COUNSEL.)

17        MR. SELWYN:  MS. FRAZIER CORRECTLY POINTS OUT THAT

18   THE INJUNCTION PERIOD HAD A SUNSET PERIOD, SO THAT TWO WEEKS

19   THAT YOUR HONOR MENTIONS WOULDN'T BE MATERIAL TO THE

20   CALCULATION IN THE SENSE THAT THE PRODUCTS WOULD HAVE CONTINUED

21   TO BE SOLD DURING THAT PERIOD.

22        THE COURT:  OKAY.  I'M SORRY.  I DON'T THINK I

23   UNDERSTAND THAT.  CAN YOU EXPLAIN, PLEASE?

24        MR. SELWYN:  THAT IS, THE CALCULATION THAT IS SET

25   FORTH IN THE ROBINSON DECLARATION REFLECTS PRODUCTS THAT WERE

```
 1        SOLD, A VERY SIGNIFICANT NUMBER OF PRODUCTS THAT WERE SOLD

 2        POST-VERDICT.  SHE HAS MADE THE CALCULATION BASED UPON EACH OF

 3        THE DIFFERENT REDESIGNS AND EACH OF THE PERMUTATIONS FROM THE

 4        SALES DATA THAT SAMSUNG HAS PRODUCED.

 5              THE COURT:  OKAY.  SO ARE YOU SAYING THAT IF SAMSUNG

 6        SOLD PRODUCT DURING THAT WINDOW, YOU'RE STILL ENTITLED TO

 7        ONGOING ROYALTIES, EVEN IF THEY HAD AN INJUNCTION?

 8              MR. SELWYN:  CORRECT.

 9              THE COURT:  BECAUSE THOSE SALES WOULD HAVE BEEN MADE

10        EFFECTIVELY CONTRARY TO THE INJUNCTION?

11              MR. SELWYN:  THAT'S CORRECT.

12              THE COURT:  I SEE.

13        DO YOU HAVE A RESPONSE TO THAT?

14              MS. SULLIVAN:  WELL, YOUR HONOR, THEY CAN'T GET

15        ONGOING ROYALTIES AND AN INJUNCTION AT THE SAME TIME.  BUT, OF

16        COURSE, THE PATENT EXPIRED QUICKLY AFTER THE SUNSET FOR THE

17        INJUNCTION.

18        SO IF THERE'S AN AMOUNT TO BE REDUCED -- PERSONALLY, I

19        DON'T THINK YOU SHOULD AWARD ANY ONGOING ROYALTIES -- BUT IF

20        THERE'S AN AMOUNT TO BE REDUCED, IT WOULD HAVE TO BE REDUCED

21        FOR ANY PERIOD WHERE THERE WAS AN OVERLAPPING REMEDY.

22              THE COURT:  WELL, BUT THOSE SALES WERE PROBABLY IN

23        VIOLATION OF THE INJUNCTION.  WE COULD HAVE A CONTEMPT

24        PROCEEDING ON THOSE TWO WEEKS, WHICH I WOULD REALLY RATHER NOT

25        DO.
```

1          MS. SULLIVAN:  I'M SURE WE'RE ALL IN AGREEMENT ON

2     THAT, YOUR HONOR.

3          THE COURT:  OKAY.  ALL RIGHT.  SO THEN IT SOUNDS LIKE

4     FOR THAT WINDOW, AND I THINK IT'S BARELY TWO WEEKS, SO THEN I

5     THINK EVERYONE IS WILLING TO JUST --

6          MS. SULLIVAN:  ROLL THAT IN.

7          THE COURT:  -- ROLL THAT IN.  OKAY.  THANK YOU.  I

8     APPRECIATE THAT.

9          MS. SULLIVAN:  YES, YOUR HONOR.

10          THE COURT:  OKAY.  SO -- NOW, LET ME ASK, WAS THERE

11     ANYTHING ON THE PRIOR ART QUESTION, MS. SULLIVAN -- I DIDN'T

12     ASK THAT OF YOU -- THAT YOU WANTED TO ADD?  I THINK ONLY

13     MR. SELWYN HAD A CHANCE TO ANSWER THAT ONE, WHETHER THERE WAS

14     ANY PARTICULAR RELEVANT PRIOR ART THAT THE COURT SHOULD

15     CONSIDER FOR THIS OBVIOUSNESS CONSIDERATION THAT I HAVE TO DO

16     ON THE FIRST PRONG?

17          MS. SULLIVAN:  YOUR HONOR, WE AGREE WITH YOUR

18     INTERPRETATION OF TIVO.  YOU'RE NOT REQUIRED TO LOOK AT PRIOR

19     ART.

20          THE COURT:  OKAY.

21          MS. SULLIVAN:  WE CERTAINLY THINK THAT

22     NON-OBVIOUSNESS MAY BE PROBATIVE OF COLORABLE DIFFERENCES.

23          THERE'S NOTHING IN THE FEDERAL CIRCUIT OPINION THAT SAYS

24     THAT THE REVERSE IS TRUE.  AND THE FOOTNOTE 1 THAT YOU QUOTED

25     EXPRESSLY SAYS THAT YOU'RE NOT REQUIRED TO ENGAGE IN THIS

```
1        INQUIRY, AND WE DON'T THINK THERE'S ANY PRIOR ART THAT'S

2     RELEVANT TO THE QUESTION HERE.

3             THE COURT:  OKAY.  ALL RIGHT.

4        LET ME ASK ANOTHER QUESTION, AND THIS IS ON THE DOCTRINE

5     OF EQUIVALENCE VERSUS LITERAL INFRINGEMENT.

6        I GUESS I'M SORT OF THINKING ABOUT IT FROM A TRIAL JUDGE'S

7     PERSPECTIVE.  I WOULD PREFER NOT TO PRESIDE OVER A TRIAL WHERE

8     A PATENTEE IS GOING TO RAISE A BUNCH OF ARGUMENTS THAT ARE NOT

9     RIPE THAT MAY CONCERN PRODUCTS THAT DON'T EXIST YET, OR DESIGN

10    AROUNDS THAT DON'T EXIST YET.  SO I'M JUST NOT REALLY SURE HOW

11    WE WOULD HAVE DONE THIS IN THE TRIAL FOR APPLE TO -- I DON'T

12    THINK I WOULD HAVE EVEN ALLOWED IT BECAUSE I WOULD HAVE, UNDER

13    403, EXCLUDED IT FOR WASTING TIME.

14        IF THEY SAID, "WE THINK THERE MAY BE A PROSPECTIVE DESIGN

15    AROUND THAT MAY BE IMPLEMENTED IN THE FUTURE THAT MAY IMPLICATE

16    A DOCTRINE OF EQUIVALENTS ANALYSIS AND SO WE WANT TO BRING THAT

17    TO THE JURY TO GIVE US A HYPOTHETICAL RULING ON WHETHER A

18    DOCTRINE OF EQUIVALENTS INFRINGEMENT ANALYSIS WOULD BE CORRECT

19    ON THIS PRODUCT THAT DOESN'T YET EXIST," DO YOU SEE WHAT I'M

20    SAYING?  LIKE THAT -- MY CONCERN IS I DON'T WANT TO SET UP LAW

21    THAT WOULD THEN REQUIRE ME TO HAVE A TRIAL ON UNRIPE,

22    IRRELEVANT ISSUES.  I MEAN, AS IT IS, THESE TRIALS TAKE A LOT

23    OF TIME AND ARE VERY DIFFICULT FOR THE JURY TO HAVE TO DEAL

24    WITH SO MANY PRODUCTS AND SO MANY CLAIMS.

25        I PROBABLY WOULD HAVE EXCLUDED THAT IF APPLE HAD TRIED TO
```

```
 1        BRING THE DOCTRINE OF EQUIVALENTS ARGUMENT THAT THEY'RE

 2        BRINGING NOW DURING THE TRIAL.  DO YOU SEE WHAT I'M SAYING?

 3                 MS. SULLIVAN:  YES, YOUR HONOR.

 4            FROM SAMSUNG'S PERSPECTIVE, WE UNDERSTAND YOUR POINT

 5        EXACTLY AND IT MAKES A LOT OF SENSE.

 6            WE THINK YOU DON'T NEED TO REACH THE QUESTION HERE BECAUSE

 7        THE COLORABLE DIFFERENCE ANALYSIS WILL AVOID YOU HAVING TO DO

 8        THE D.O.E. INFRINGEMENT ANALYSIS IF YOU AGREE WITH US THAT THE

 9        CHANGES ARE COLORABLY DIFFERENT.

10                 THE COURT:  OKAY.

11                 MS. SULLIVAN:  BUT, YOUR HONOR, I JUST WANTED TO BE

12        CLEAR THAT IF YOU GET TO INFRINGEMENT AND YOU DO THINK AS A

13        MATTER OF LAW THAT D.O.E. IS NOW FAIR GAME --

14                 THE COURT:  YES.

15                 MS. SULLIVAN:  -- EVEN IF IT WASN'T RAISED IN TRIAL,

16        THEN WE THINK WE WIN ON THE MERITS OF D.O.E. BECAUSE THE

17        REVERSE ORDER, SELECT, THEN DETECT, IS A SUBSTANTIALLY

18        DIFFERENT WAY, SO IT CAN'T SATISFY THAT ELEMENT OF D.O.E.  SO

19        WE THINK THAT'S THE OTHER WAY YOU DON'T HAVE TO DECIDE THIS

20        QUESTION.

21            WE THINK WE'RE A LITTLE DIFFERENT FROM THE OTHER CASES

22        THAT APPLE CITED BECAUSE HERE THERE WAS AN EXPRESS WITHDRAWAL

23        OF D.O.E. FROM THE TRIAL, SO FROM A NOTICE PERSPECTIVE, THIS

24        WAS A CASE IN WHICH D.O.E. WAS NOT THE THEORY AT TRIAL THROUGH

25        AN EXPRESS WITHDRAWAL, AGAIN, IN RESPONSE TO MOTION PRACTICE.
```

1        THAT WASN'T TRUE IN THE CASES THAT MR. SELWYN CITED.

2            BUT I THINK YOU CAN AVOID IT ENTIRELY, YOUR HONOR, BECAUSE

3        YOU CAN EITHER RULE FOR US ON COLORABLE DIFFERENCES, OR IF YOU

4        GET TO INFRINGEMENT AND APPLY D.O.E., WE THINK THAT THERE IS

5        CERTAINLY NOT PROOF BY CLEAR AND CONVINCING EVIDENCE THAT THE

6        REVERSE CHRONOLOGY, DETECT -- SELECT, THEN DETECT, OR A MENU

7        THAT HAS DISAPPEARED, THE CONTEXT MENU HAS DISAPPEARED, WE

8        THINK THERE CAN'T BE ANY INFRINGEMENT.

9            MR. SELWYN:  YOUR HONOR, TWO POINTS IF I MAY VERY

10       BRIEFLY?

11           THE COURT:  GO AHEAD.

12           MR. SELWYN:  ONE IS THAT THE WITHDRAWAL OF D.O.E., OF

13       COURSE, ONLY APPLIED TO THE PRODUCTS THAT WERE AT ISSUE DURING

14       THE TRIAL.  WE DIDN'T DISAVOW D.O.E. FOR ALL TIME FOR PRODUCTS

15       THAT MIGHT COME IN THE FUTURE OR REDESIGNED PRODUCTS.  THAT'S

16       THE FIRST POINT.

17           SECOND POINT:  A LOT OF TALK ABOUT D.O.E., BUT I WANT TO

18       REMIND THE COURT THAT OUR D.O.E. ARGUMENT IS UNDER ONE OF THE

19       REDESIGNS, DA1-A.

20           FOR DA1-B AND DA2, IN TERMS OF THE ACTUAL INFRINGEMENT

21       ANALYSIS, IT'S A LITERAL ONE, ALTHOUGH FOR DA1-B, WE ALSO HAVE

22       D.O.E. IN THE ALTERNATIVE.

23           BUT I THINK IT'S IMPORTANT JUST TO CLARIFY WHICH THEORY

24       APPLIES TO WHICH OF THE REDESIGNS.

25           THE COURT:  OKAY.  SO WHAT -- YOUR VIDEOS WERE, WHAT,

```
1          BROWSER FOR DA1-A AND MESSENGER FOR DA2?

2               MR. SELWYN:  THAT'S RIGHT.

3               THE COURT:  OKAY.  SO I HAVE NOT MADE A DECISION YET,

4     BUT I DID WANT TO ASK, IF IT'S GOING TO BE A SPLIT DECISION,

5     ARE THE NUMBERS CALCULATED SUFFICIENT THAT THE COURT COULD

6     ACTUALLY MAKE A RULING AS TO A SPECIFIC AMOUNT?

7               MR. SELWYN:  I BELIEVE THEY ARE BROKEN DOWN THAT WAY,

8     YES, YOUR HONOR.

9               THE COURT:  LET ME ASK, ON SEALING, THERE ARE, I

10    THINK, AT LEAST THREE SEALING MOTIONS PENDING ON THIS SET OF

11    BRIEFING, AND SOME OF THE ISSUES HAVE BASICALLY BEEN PUBLICLY

12    DISCUSSED TODAY, LIKE FINGER UP, FINGER DOWN, THE SEQUENCING OF

13    DETECTION AND SELECTION.

14         I'M JUST WONDERING IF, RATHER THAN HAVING THE COURT HAVE

15    TO GO THROUGH ALL OF THESE EXPERT REPORTS, IF YOU MIGHT BE

16    WILLING TO RECONSIDER SOME OF YOUR SEALING REQUESTS.  IT WOULD

17    JUST -- WE DON'T HAVE THE RESOURCES THAT YOU ALL DO, AND I

18    THINK QUITE A BIT WAS PUBLICLY DISCLOSED.  I THOUGHT I EVEN

19    SAW, YOU KNOW, SOME OF THE TERMS THAT HAVE BEEN USED IN TODAY'S

20    HEARING REDACTED AND I JUST DON'T THINK THEY SHOULD BE REDACTED

21    ANYMORE.  THEY'RE NOW IN THE PUBLIC DOMAIN.

22              MR. SELWYN:  COUNSEL ACTUALLY SPOKE YESTERDAY BECAUSE

23    WE REALIZED THAT THIS WOULD BE A DIFFICULT HEARING TO HAVE

24    UNLESS WE WERE ABLE TO MENTION SOME OF THESE, SO WE DID DISCUSS

25    THAT ISSUE.
```

```
1         I THINK ALL OF THE CONFIDENTIALITY CLAIMS THAT YOUR HONOR

2    MENTIONED ARE SAMSUNG'S.

3              MS. SULLIVAN:  YES, YOUR HONOR.  WE'RE HAPPY TO

4    REVIEW THEM.

5         WE DID AGREE WITH APPLE YESTERDAY, TO EASE THE PUBLIC

6    HEARING TODAY, THAT WE CAN DISCUSS THE THINGS THAT WE HAVE

7    DISCUSSED, AND SAMSUNG WILL BE HAPPY TO REVIEW THE SEALING

8    REQUESTS AND ATTEMPT TO MODIFY THEM AND REDUCE THE BURDEN ON

9    THE COURT.

10             THE COURT:  OKAY.  THANK YOU.  I'D APPRECIATE THAT.

11   DOES THAT IMPLICATE ALL THREE OF THE PENDING MOTIONS?

12             MR. SELWYN:  IT LIKELY DOES.

13             THE COURT:  OKAY.  THEN I'M DENYING ALL THOSE WITHOUT

14   PREJUDICE RIGHT NOW SO I CAN GET THEM OFF MY CALENDAR.

15        WHEN CAN YOU REFILE THEM?  I MEAN --

16             MS. MAROULIS:  YOUR HONOR, IF WE CAN HAVE ONE WEEK,

17   THAT WOULD BE GREAT.  BUT WE CAN DO IT SOONER IF THE COURT

18   PREFERS.

19             THE COURT:  A LITTLE BIT SOONER MIGHT BE HELPFUL JUST

20   BECAUSE I DON'T WANT TO ISSUE MY RULING UNTIL I KNOW WHAT'S

21   POTENTIALLY SEALABLE.  I MEAN, I DON'T KNOW HOW LONG IT'S GOING

22   TO TAKE.  OBVIOUSLY I NEED TO GO BACK AND THINK ABOUT

23   EVERYTHING THAT YOU'VE ARGUED TODAY.

24        BUT --

25             MS. MAROULIS:  HOW ABOUT TUESDAY MORNING?
```

1                    THE COURT:  THAT WOULD BE GREAT.

2                    MS. MAROULIS:  YES, YOUR HONOR.

3                    THE COURT:  THANK YOU.  SO THAT'S 1-16, PLEASE

4        REFILE.

5                    ALL RIGHT.  NOW, I READ SOMETHING THAT I THOUGHT WAS KIND

6        OF FUNNY IN PREPARING FOR THIS HEARING, AND THIS IS FROM

7        SAMSUNG'S OPPOSITION TO APPLE'S MOTION FOR ONGOING ROYALTIES

8        FILED ON SEPTEMBER 22 OF 2014, AND I HAD TO SMILE BASED ON ALL

9        THE WORK THAT ALL OF US ARE GOING THROUGH RIGHT NOW.  IT SAYS,

10       "INDEED, POST-VERDICT SALES OF THE ACCUSED PRODUCTS IN THIS

11       CASE HAVE ALREADY ENDED.  IN THE ABSENCE OF CONTINUED SALES OF

12       PRODUCTS WITH SOFTWARE HELD TO INFRINGE, THIS COURT SHOULD NOT

13       WASTE TIME AND RESOURCES TO ESTABLISH AN ONGOING ROYALTY BASED

14       ON THE PAST FACTS OF THIS CASE.  IN THESE CIRCUMSTANCES, AN

15       ONGOING ROYALTY RATE WILL NEVER APPLY TO THE PRODUCTS THE COURT

16       WOULD CONSIDER IN DETERMINING THAT RATE.  EQUITY AND

17       INEFFICIENCY ARE NOT SERVED BY SUCH WASTEFUL PROCEEDINGS."

18                   I -- WHY WERE YOU ALL REPRESENTING THAT THERE WERE NO

19       POST-VERDICT SALES OF THE ACCUSED PRODUCTS?  BECAUSE YOU ARE

20       STIPULATING TO A ROYALTY PAYMENT OF A CONSIDERABLE SUM FOR

21       SALES OF THE PRODUCTS THAT WERE FOUND TO INFRINGE BY THE JURY.

22                   SO WHY WAS THAT REPRESENTATION MADE TO ME BACK IN THE FALL

23       OF 2014?

24                   MS. SULLIVAN:  YOUR HONOR, WE'D HAVE TO REVIEW THE

25       DOCUMENT TO BE SURE.

```
1              THE COURT:  YEAH.

2              MS. SULLIVAN:  BUT WE BELIEVE WE MAY HAVE BEEN

3    DISCUSSING OTHER PATENTS IN THE CASE, NOT THE '647.

4              THE COURT:  NO, NO, NO.  THE HEADING IS "BECAUSE

5    THERE ARE NO ONGOING SALES OF THE PRODUCTS WITH SOFTWARE HELD

6    TO INFRINGE THE '647 PATENT, ANY ONGOING ROYALTY RATE WILL

7    NEVER APPLY TO THE PRODUCTS ACCUSED IN THE CASE."  IT'S

8    PAGE 15, LINES 18 THROUGH 27.

9         I'LL READ THE WHOLE THING.  IT SAYS, "INDEED, POST-VERDICT

10   SALES OF THE ACCUSED PRODUCTS IN THIS CASE HAVE ALREADY ENDED.

11   THE GALAXY NOTE II IS NO LONGER ON SALE.  THE GALAXY S III

12   PRODUCTS REMAINING ON SALE ALREADY INCORPORATE DIFFERENT CODE

13   THAN THE CODE RELEVANT TO APPLE'S CLAIM FOR INFRINGEMENT OF THE

14   '647 PATENT."  AND THEN IT GOES ON.  "IN THE ABSENCE OF

15   CONTINUED SALES OF THE PRODUCTS WITH SOFTWARE HELD TO INFRINGE,

16   THIS COURT SHOULD NOT WASTE TIME AND RESOURCES TO ESTABLISH AN

17   ONGOING ROYALTY BASED ON THE PAST FACTS OF THIS CASE.  IN THESE

18   CIRCUMSTANCES, AN ONGOING ROYALTY RATE WILL NEVER APPLY TO

19   PRODUCTS THE COURT WOULD CONSIDER IN DETERMINING THAT RATE.

20   EQUITY AND INEFFICIENCY ARE NOT SERVED BY SUCH WASTEFUL

21   PROCEEDINGS."

22        I JUST RAISE THIS IN THAT I WOULD JUST, YOU KNOW,

23   ENCOURAGE, YOU KNOW -- AND UNFORTUNATELY, I LOOK AT MY

24   ORDERS -- I WENT BACK, BECAUSE I WAS READING MY ONGOING ROYALTY

25   ORDER, WHICH WAS FILED ON NOVEMBER 25TH OF 2014, AND IT SAYS ON
```

1    PAGE 18, AS TO THE '647 PATENT, SAMSUNG REPRESENTS THAT, QUOTE,

2    "POST-VERDICT SALES OF THE ACCUSED PRODUCTS IN THIS CASE HAVE

3    ALREADY ENDED," END QUOTE, AND THAT THE ONLY VERSION OF THE

4    GALAXY S III PRODUCT ON SALE INCORPORATES DIFFERENT CODE THAN

5    THE RELEVANT INFRINGING SOURCE CODE.

6         SO I -- I JUST WOULD ASK THE PARTIES TO PLEASE BE ACCURATE

7    IN YOUR REPRESENTATIONS TO THE COURT.  I GO BACK AND I GO BACK

8    AND READ SOME OF THE THINGS YOU'VE PREVIOUSLY REPRESENTED AND

9    I -- YOU KNOW, I FEEL SOME DISAPPOINTMENT IF I FEEL THAT --

10   YOU'RE CONCEDING TO A SIGNIFICANT AMOUNT OF ONGOING ROYALTY

11   PAYMENTS FOR SALES OF THE PRODUCTS THAT WERE FOUND TO INFRINGE

12   BY THE JURY, SO I FEEL LIKE THESE REPRESENTATIONS MAY NOT HAVE

13   BEEN ACCURATE.

14        IT WAS NEVER CORRECTED.  YOU FILED A SUBSEQUENT BRIEF ON

15   OCTOBER 6 OF 2014.

16        I ISSUED THIS RULING NOVEMBER 25TH, 2014.  NO ONE EVER

17   CORRECTED THIS BEFORE ME AND YOU WERE ASKING ME TO RULE WITH

18   THAT FACT IN MIND.

19             MR. ERWINE:  YOUR HONOR, I THINK I CAN SPEAK TO IT.

20             THE COURT:  YEAH.

21             MR. ERWINE:  WHAT I BELIEVE THE PAPER, HAVING NOT

22    REVIEWED IT, BUT I BELIEVE THAT'S REFERENCING THE NINE

23    ADJUDICATED PRODUCTS THAT WERE TRIED BY THE JURY.

24        THE PRODUCTS THAT ARE AT ISSUE TODAY ARE A SEPARATE SET OF

25    PRODUCTS.  FOR EXAMPLE, I THINK YOU MENTIONED THE GALAXY S II.

```
 1        THE GALAXY S II IS NOT AT ISSUE TODAY.

 2             THE COURT:  NO, I DIDN'T.  GALAXY NOTE II AND

 3    GALAXY S III PRODUCTS.

 4             MR. ERWINE:  SURE, CORRECT.

 5             THE COURT:  YEAH.

 6             MR. ERWINE:  NONE OF THOSE PRODUCTS ARE AT ISSUE

 7    TODAY.

 8             THE COURT:  SO THE ONES WHERE YOU'RE STIPULATING TO

 9    ONGOING ROYALTY PAYMENTS, WHAT ARE THOSE THEN?  BECAUSE YOUR

10    BRIEF SAYS "THE GALAXY S III PRODUCTS REMAINING ON SALE ALREADY

11    INCORPORATE DIFFERENT CODE THAN THE CODE RELEVANT TO APPLE'S

12    CLAIM FOR INFRINGEMENT IN THE '647 PATENT."  THIS IS WHAT YOU

13    REPRESENTED TO ME ON SEPTEMBER 22ND OF 2014.  YOU FILED A

14    SUBSEQUENT BRIEF ON OCTOBER 6TH OF 2014.  I ISSUED AN ORDER ON

15    NOVEMBER 25TH, 2014.  NOBODY REPRESENTED OTHERWISE TO ME.

16        AND SO I'M SEEING THIS NOW, WHAT, ALMOST THREE AND A HALF

17    YEARS LATER AND I'M GETTING SOMETHING DIFFERENT.

18             MR. ERWINE:  AND MY COLLEAGUE HAS INDICATED THAT IT'S

19    DIFFERENT MODEL NUMBERS, SO --

20             THE COURT:  SO THEY'RE NOT S III PRODUCTS?

21             MR. SELWYN:  THEY ARE S III PRODUCTS.

22             THE COURT:  SO WHAT -- THE PORTION WHERE SAMSUNG IS

23    STIPULATING TO AN ONGOING ROYALTY PAYMENT, WHY ARE THEY

24    STIPULATING TO THOSE?

25             MR. SELWYN:  BECAUSE IT'S THE -- THERE WERE NO
```

1    CHANGES MADE AT ALL.

2              THE COURT:  IN THEIR S III PRODUCTS?

3              MR. SELWYN:  THEY'RE INCLUDING AT LEAST S III

4    PRODUCTS.

5              THE COURT:  WELL, I MEAN, WHAT I'M LOOKING AT IS A

6    SAMSUNG BRIEF THAT'S REPRESENTING TO ME "THE GALAXY S III

7    PRODUCTS REMAINING ON SALE ALREADY INCORPORATE DIFFERENT CODE

8    THAN THE CODE RELEVANT TO APPLE'S CLAIM FOR INFRINGEMENT OF THE

9    '647 PATENT.  IN THE ABSENCE OF CONTINUED SALES OF PRODUCT WITH

10   SOFTWARE HELD TO INFRINGE, THIS COURT SHOULD NOT WASTE TIME AND

11   RESOURCES TO ESTABLISH AN ONGOING ROYALTY BASED ON THE PAST

12   FACTS OF THIS CASE."

13         SO I GUESS THIS WAS JUST NOT ACCURATE.

14         ALL RIGHT.  WELL, I DON'T HAVE ANY MORE QUESTIONS.  THANK

15   YOU.  THIS WAS A HELPFUL HEARING.

16              MR. SELWYN:  THANK YOU, YOUR HONOR.

17              MR. ERWINE:  THANK YOU.

18              MS. SULLIVAN:  THANK YOU VERY MUCH, YOUR HONOR.

19              THE COURT:  THANK YOU.

20         (THE PROCEEDINGS WERE CONCLUDED AT 3:41 P.M.)

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18         DATED:  JANUARY 16, 2018

19

20

21

22

23

24

25