# EXHIBIT A
## (FILED UNDER SEAL)

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5022**

WRITER'S EMAIL ADDRESS
**victoriamaroulis@quinnemanuel.com**

September 29, 2017

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
**VIA E-MAIL**

William F. Lee
WilmerHale
60 State Street
Boston, Massachusetts 02109

Re:     *Apple v. Samsung Elecs. Co., Ltd.,* Case No. 12-cv-00630-LHK (N.D.Cal.)

Dear Bill:

We write concerning the Initial Expert Report of Dr. Todd C. Mowry In Connection with Ongoing Royalties, which Apple served on September 1, 2017.  Dr. Mowry's Ongoing Royalties report sets forth entirely new theories of infringement that are not proper in this post-trial, ongoing royalties analysis.  For example, in seeking to satisfy the claim elements that Samsung has designed around, Dr. Mowry relies on certain features of the design-around products that were also present in the adjudicated products, but that were not part of Apple's previous infringement theories.  In addition, Dr. Mowry also opines on infringement under the doctrine of equivalents, despite the fact that Apple never articulated an infringement theory under the doctrine of equivalents in its contentions and, in fact, expressly withdrew all doctrine of equivalents arguments prior to trial.

As Apple is well aware, the first step in the ongoing royalties analysis is to determine whether the design-around products are more than colorably different from the product that was adjudicated to infringe.  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011).  Critically, this analysis must focus on the differences between "those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product."  *Tivo*, 646 F.3d at 882; *see also nCube Corp. v. Seachange Int'l, Inc.*, 732 F.3d 1346, 1351 (Fed. Cir. 2013) ("determination of whether more than colorable differences are present requires the court to focus 'on those elements of the adjudged

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

William F. Lee
September 29, 2017
Page 2

infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims.'") (*citing Tivo*, 646 F.3d at 882).  That is, "the colorable-differences standard focuses on how the patentee in fact proved infringement, not what the claims require." *nCube*, 732 F.3d at 1351.  In this way, the standard "preserves values of notice and preservation of trial rights."  *Id.* ("the *TiVo* standard preserves values of notice and preservation of trial rights by keeping contempt suitably limited.").

Despite the plain requirements, Dr. Mowry in certain instances does not compare aspects of the accused Samsung products that were previously alleged to be, and were a basis for, the prior finding of infringement, with the modified features of the design around products.  Instead, Dr. Mowry relies not on the modified features of the design around products, but on different features that were not part of the infringement theories that Apple presented at trial.  In particular, Dr. Mowry relies on the "ResolverActivity" menu in his opinions concerning DA-2, even though the "ResolverActivity" menu was used in the adjudicated products and was not part of the infringement theories presented to the jury.  Similarly, Dr. Mowry relies on ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ in his opinions concerning the DA1-A design around for the Messenger application, despite the fact that ▓▓▓▓▓▓▓▓▓▓ were also a feature of the adjudicated products and were also not part of the infringement theories presented at trial.  Dr. Mowry's failure to focus on modifications to those aspects of the accused products that were presented at trial, and his focus on features that were not previously accused and were not modified as part of the design arounds, is improper.  *See Tivo*, 646 F.3d at 882; *nCube*, 732 F.3d at 1351.

Moreover, Dr. Mowry's Ongoing Royalties Report improperly presents new theories of infringement for claim 9 of the '647 patent that were not timely disclosed as required by the Local Patent Rules.  As courts in this district have pointed out, the Local Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F.Supp.2d 1121, 1123 (N.D. Cal. 2006).  Accordingly where, as here, a party's contentions fail to mention a feature of the accused product as satisfying a particular limitation, an expert may not then rely on that previously unidentified feature to try to satisfy that limitation.  *See, e.g., Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *2 (N.D. Cal. Aug. 22, 2013) (granting motion to strike "parallel compile" and "hidden autopartioning" infringement theories when they were not in the patentee's contentions and were not disclosed until expert reports); *see also ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *4 (N.D. Cal. Apr. 11, 2014) (granting motion to strike references in the expert report to "Bus_Width bit" and "TRAN_SPEED slice" when these two data elements were not identified in patentee's infringement contentions).  Neither the "ResolverActivity" menu nor ▓▓▓▓▓▓▓▓▓ are new in the design-around products, and there is no basis for Apple to raise entirely new infringement theories at this late date.  *See Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1369 (Fed. Cir. 2014) (noting that a patentee's infringement contentions should not be a "moving target.") (*citing Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

William F. Lee
September 29, 2017
Page 3

Finally, the only infringement opinion that Dr. Mowry offers for DA1-A for Browser (as well as for DA1-A for Messenger other than for ▮▮▮▮▮▮▮▮▮▮▮ is under the doctrine of equivalents. This is another new infringement theory that was never disclosed in any of Apple's infringement contentions or interrogatories. Indeed, when Apple previously attempted to belatedly insert doctrine of equivalents theories into the case, Samsung moved to strike. *See* Dkt. 880-05. Apple then expressly agreed to withdraw all doctrine of equivalents arguments that were subject to Samsung's then-pending motion to strike. *See* Dkt. 1056 at n. 4. Yet Dr. Mowry's Ongoing Royalties report now references the same doctrine of equivalents argument that Apple withdrew. *Compare* Ongoing Royalties report a ¶ 136 *with* Dkt. 880-5 at 9, 21-22. This withdrawn theory was obviously not presented to the jury as a basis for infringement, and Apple cannot revive post-trial a theory that it withdrew pre-trial.

Please confirm by October 6, 2017, that Apple will abandon its theories concerning at least DA1-A and DA-2. To the extent that Apple pursues any of these theories in violation of the governing legal standard, the Local Patent Rules, or Apple's previous representations to the Court, Samsung intends to move to strike and further reserves its rights to seek any other appropriate relief from the Court.

Very truly yours,

/s/ Victoria F. Maroulis

Victoria F. Maroulis