# EXHIBIT C
# (FILED UNDER SEAL)

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>　　　　Defendants. | Case No. 12-cv-00630-LHK<br><br>**INITIAL EXPERT REPORT OF DR. TODD C. MOWRY IN CONNECTION WITH ONGOING ROYALTIES**<br><br>**HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL'S EYES ONLY—SOURCE CODE** |

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | BASES OF OPINIONS | 4 |
|  | A. Qualifications | 4 |
|  | B. Materials Considered | 4 |
| III. | RELEVANT LEGAL PRINCIPLES AND GUIDELINES | 5 |
|  | B. "Not More Than Colorably Different" Standard | 5 |
|  | C. Infringement | 6 |
| IV. | SUMMARY OF OPINIONS EXPRESSED AT THE APRIL 2014 TRIAL | 7 |
|  | A. Claim Constructions Applied at the 2014 Trial | 7 |
|  | B. Overview of the Infringing Products and Android Code Releases | 8 |
|  | C. All Products – Infringement of Claim Elements 1(a), 1(b), and 1(d) | 11 |
|  | D. Messaging Application – Infringement of Claim Limitations 1(c) and 9 | 13 |
|  | E. Browser Application – Infringement of Claim Elements 1(c) and 9 | 19 |
| V. | DESIGN-AROUND PRODUCTS | 25 |
|  | A. General description | 25 |
|  | B. Messenger DA2 – Short Tap | 28 |
|  | C. Messenger DA1-A – Short Tap | 32 |
|  | D. Browser DA1-A – Short Tap | 34 |
|  | E. Browser DA1-B – Short Tap | 38 |
| VI. | THE DESIGN-AROUND DEVICES ARE NOT MORE THAN COLORABLY DIFFERENT | 41 |
|  | A. Messenger – DA2 | 41 |
|  | B. Messenger - DA1-A | 45 |
|  | C. Browser – DA1-A | 47 |
|  | D. Browser - DA1-B | 49 |
|  | E. Samsung's Design-Arounds Do Not Employ Non-Obvious Modifications | 50 |
| VII. | THE DESIGN-AROUND DEVICES CONTINUE TO INFRINGE | 51 |
|  | A. All Design-Around Products – Claim 1 preamble, 1(a), 1(b), 1(c)(1), 1(c)(3), 1(d) | 51 |
|  | B. DA2 – Messenger – Infringement of Claims 1(c)(2) and 9 | 56 |
|  | C. DA1-A – Messenger – Infringement of Claims 1(c)(2) and 9 | 61 |
|  | D. DA1-A – Browser – Infringement of Claims 1(c)(2) and 9 | 63 |
|  | E. DA1-B – Browser – Infringement of Claim 1(c)(2) and 9 | 68 |

16. I understand that a redesigned product will be considered not more than colorably different from the infringing product unless (1) all the infringing features have been modified or removed, and (2) the modification is significant.

17. I understand that a trivial or immaterial change to an infringing feature is not considered a significant modification. I further understand that a modification is not considered significant if the redesigned product is functionally identical or substantially equivalent to the infringing product.

18. I understand that the significance of a modification to an infringing feature may also depend on the relevant prior art. A modification is unlikely to be considered significant if it merely uses prior art elements in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made.

### C. Infringement

19. I have been informed by counsel that, if a redesigned product is not more than colorably different from the infringing product, the second step of the analysis requires a determination of whether the redesigned product actually infringes the asserted claims. I understand that, to make that determination, the modified features of the redesigned product must be compared to the asserted claims on a limitation-by-limitation basis. I understand that the Court's prior claim constructions govern the infringement analysis, and I apply those constructions in my analysis below.

20. I understand that the redesigned product may infringe a claim either literally or under the doctrine of equivalents. I understand that literal infringement exists when the redesigned product embodies each and every limitation of the asserted claim.

21. I understand that the redesigned product can still infringe under the doctrine of equivalents if it does not literally perform every limitation of the asserted claim. I understand that one test for determining equivalence is whether the differences between the claimed limitation and the product are insubstantial. I understand that another test for determining

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

equivalence is whether the product performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed limitation.

## IV. SUMMARY OF OPINIONS EXPRESSED AT THE APRIL 2014 TRIAL

### A. Claim Constructions Applied at the 2014 Trial

22. At the April 2014 trial, I provided my opinions based on the following claim constructions that had been supplied by the District Court (for "action processor"), and by the Federal Circuit decision that issued during the April 2014 trial in *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) (for "analyzer server" and "linking actions to the detected structures").

- "action processor" – "program routine(s) that perform the selected action on the detected structures"
- "analyzer server" – "a server routine separate from a client that receives data having structures from the client"
- "linking actions to the detected structures" – "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"

23. For the other terms in claims 1 and 9 of the '647 patent, I applied the plain and ordinary meaning to a person of ordinary skill in the art. I explained that a person of ordinary skill in the art as of 1996 (the time of the invention of the '647 patent) would have had either a bachelor's degree in computer science or equivalent training, and they would have had at least two years of experience in the field.

24. In this expert report, I apply the same level of ordinary skill in the art, and the same claim constructions supplied to the jury in the April 2014 trial, and for the remaining terms I apply plain and ordinary meaning to a person of ordinary skill in the art.

■■■ This results in creation of a context menu.

## VI. THE DESIGN-AROUND DEVICES ARE NOT MORE THAN COLORABLY DIFFERENT

### A. Messenger – DA2

80. By its DA2 modification, Samsung has simply substituted the user experience of viewing a contextual pop-up menu immediately after a short tap of a structure in Messenger with viewing a resolver activity pop-up menu immediately after a short tap of all relevant structures other than a phone number. In my opinion, the DA2 products are not more than colorably different than the Infringing Products because the "resolver activity" pop-up window is not significantly different than the "contextual" pop-up menu of the Infringing Products. See above, paragraph 52.

81. The DA2 modification does not alter that in the DA2 products, structures are pre-detected and highlighted as in the Infringing Galaxy S III running Jelly Bean. Samsung has not identified any relevant changes to ■■■ ■■■ from the Infringing Galaxy S III. DA2 devices likewise present a user-interface in the form of a touch-screen that allows the user to short tap on those detected structures as in the Infringing Galaxy S III:

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



82. Further, like the Infringing Galaxy S III, the DA2 products further display a pop-up menu to the user when he or she makes a short tap on the highlighted structure in the message (other than for telephone numbers). In the Infringing Galaxy S III, the pop-up menu displayed immediately after a short tap was the contextual pop-up menu, while in the DA2 devices, the pop-up menu displayed immediately after a short tap is the resolver activity pop-up menu:



INITIAL EXPERT REPORT OF TODD MOWRY IN CONNECTION WITH ONGOING ROYALTIES
CASE NO. 12-CV-00630-LHK (NMC)      42

83. A person of ordinary skill in the art would not find the resolver activity pop-up menu to be significantly different than the contextual pop-up menu in view of claims 1 and 9 of the '647 patent. Both menus are of course pop-up menus. Both menus present actions that may be selected, and both will launch a program, such as an email program, with a detected structure upon user selection within the pop-up menu.

84. Samsung and Dr. Jeffay may try to argue that the contextual pop-up menu is significantly different than the resolver activity pop-up menu because it generally presented more actions for the user to choose than the resolver activity pop-up menu. However, the term "linking actions to the detected structures" was construed as requiring simply *one or more* actions to be linked to a particular structure (the term was construed as "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"). Thus, the fact that the resolver activity pop-up menus link to multiple applications for one *type* of action, e.g., opening an email app, does not matter. A person of ordinary skill in the art would understand that the DA2 products still have the following relevant attributes: (i) they link multiple different types of actions to the different types of structures in a message – e.g., they will link actions to open the email application for email structures, they will link actions to open a Web Browser for URL structures, they will link actions to open a Maps or Navigation application for postal address structures, and (ii) they provide a resolver activity pop-up menu that provides the user with a set of choices regarding which application to launch for emailing, locating a geographic address, or searching a URL.

85. Samsung and Dr. Jeffay may further argue that the resolver activity pop-up menu will not appear in cases after a user selects "Always" within the resolver activity pop-up menu (i.e., if the user selects "Always", then the particular application selected from the resolver activity pop-up menu will become the default application and the resolver activity pop-up menu will subsequently be bypassed). However, this feature simply only means that the resolver

activity pop-up menu *may* not appear in certain instances and based on user selection. The fact remains that the program routines for the pop-up menu are included in the DA2 products, and the resolver activity pop-up menu *will* appear: (i) the first time the user short taps on an email address, postal address, and/or URL address in the DA2 devices, (ii) every subsequent time after the user presses "Just Once" in the resolver activity menu, and (iii) every subsequent time after the user re-sets the phone to factory defaults.

86. Samsung and Dr. Jeffay may further argue that the resolver activity pop-up menu existed in the Infringing Products with respect to the Messaging application, but was not accused at the 2014 trial. However, in the infringing Galaxy S III and other products at trial, the *first* pop-up menu that a user viewed upon a short tap in Messaging was the *contextual* pop-up menu. This contextual pop-up menu provided a "user interface enabling the selection of…a linked action" in the form of a pop-up menu displaying the linked actions. It was not necessary to further address the resolver activity pop-up menu, except to explain that the resolver activity functions did not detract from the fact that the contextual pop-up menu was covered by the claims. Now, however, the first pop-up menu to appear after a short tap of email address, URL addresses, and postal addresses in Messenger for the DA2 products is the resolver activity pop-up menu. Now, the resolver activity pop-up menu likewise presents a user interface enabling the selection of a linked action, and is in the form of pop-up menu presenting the linked actions.

87. When implementing DA2, Samsung could have, but did not, remove the resolver activity pop-up menu. One way to remove the resolver activity pop-up menu would have been to simply bypass it in favor of a default application (the user could, for example, be given the option to set defaults upon phone set-up). I note that I find no analog resolver activity pop-up menu in iPhone devices. Documents produced by Samsung in response to Apple's Requests for Production of Document in Connection with Ongoing Royalties indicate that ▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇ SAMNDCA630_DA-0064616-64701.

88. In the DA2 products, like the Infringing Galaxy S III, actions such as an email program will be launched based on the user's selection within the pop-up menu:

*[Figure: Screenshots comparing 2014 Trial Phone - Galaxy SIII and Design Around Phone - Galaxy S5, both showing "Email App launched" with the annotation "Selected activity launched based on user's selection on pop-up menu"]*

89. Accordingly, because the DA2 design-around entails detecting structures in messages, presenting a resolver activity pop-up menu of choices of actions to launch the structure, and launching the action based on user selection within the pop-up menu, it is my opinion that the products implementing the DA2 design-around in Messenger are not more than colorably different than the Infringing Galaxy S III.

### B. Messenger - DA1-A

90. I explain below with respect to the Browser Application why DA1-A is not more than colorably different from the design of the Infringing Galaxy S III. I incorporate that analysis and conclusions for the DA1-A Messenger products as well. To the extent that the DA1-A Messenger products perform structure detection in the same general manner as the DA1-A Browser products, my opinion is that the DA1-A Messenger products are not more than colorably different for the same reasons.

91. I explained at the 2014 Trial that pre-detection of structures was not necessary to infringe the asserted claims and that the Infringing Samsung Galaxy S III did not pre-detect structures in the Browser application. Thus, the fact that DA1-A Messenger products no longer

1  pre-detect and highlight structures in Messenger does not make those products more than
2  colorably different than the Infringing Products.  I explain below why the process of detection in
3  DA1-A Browser products is not more than colorably different than the process in the Infringing
4  Galaxy S III product.  The same holds true for the DA1-A Messenger products.

5       92.     Further, I note that the DA1-A Messenger products perform more like the DA1-B
6  Browser products in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  To the
13 extent that the DA1-A Messenger products perform structure detection in the same general
14 manner as the DA1-B Browser products for ▮▮▮▮▮▮▮▮▮▮ my opinion is that the DA1-A
15 Messenger products are not more than colorably different for the same reasons that the DA1-B
16 Browser products are not more than colorably different.

17      93.     The DA1-A Messenger products display a contextual pop-up menu upon a short
18 tap of the relevant structures.  This is the same type of contextual pop-up menu as in the
19 Infringing Products:



**DA1-A Contextual Pop-Up Menu**
**Galaxy S3 – SGH-T999L**

94.  Because devices implementing DA1-A in Messenger function the same as the Infringing Galaxy S III with respect to presenting structures, pop-up menus, and linked actions, my opinion is that the DA1-A Messenger devices are not more than colorably different than the Infringing Galaxy S III and other Infringing Products.

C. **Browser – DA1-A**

95.  Samsung made two minor modifications to the DA1-A Browser products: (1) the completion of the detection of the relevant structure now occurs after the user lifts his or her finger up, instead of before the user lifted his or her finger up; and (2) the contextual pop-up menu now appears on a short tap, rather than a long press. In my opinion, these changes do not render the DA1-A Browser products more than colorably different from the Infringing Galaxy S III.

96.	From the user experience perspective, DA1-A is functionally equivalent to the Infringing Galaxy S III phone.  With the Infringing Galaxy S III, when a user long presses on a relevant data structure, the contextual pop-up menu appears.  The content of that pop-up menu differs depending on what type of data structure is detected.  In the DA1-A Browser products, when a user short taps on a relevant data structure, the same type of contextual pop-up menu appears.



97.	Neither the Infringing Galaxy S III nor the DA1-A Browser products pre-detect and highlight relevant structures.  As discussed above, pre-detection is not necessary to infringe the asserted claims.  Because there is no pre-detection in either the Infringing Galaxy S III or the DA1-A Browser products, the detection process does not begin until after the user touches the relevant structure with his or her finger (or similar instrument).  In both instances, upon a "finger down" event, a timer is set that, after "finger up," will help determine if a contextual pop-up menu will be displayed.  In both instances, the process that includes detection and display of a contextual pop-up menu starts with "finger down."

98.	The fact that this process of detection is completed in the DA1-A Browser products after the user lifts his or her "finger up," rather than before, does not render DA1-A colorably different.  As noted, "finger up" is nothing more than part of a process that necessarily begins with "finger down."  The code modification necessary to implement a change from

detection upon "finger down" to detection upon "finger up" is minor.

99. From the user's vantage point, whether ▮ get invoked on "finger down" or "finger up" is irrelevant. Because the short tap is by definition shorter than a long press, and because of the speed by which structures are detected in the devices, the display of a contextual pop-up menu in the DA1-A products is as instantaneous, from a users' perspective, as in the infringing Galaxy S III.

100. Because devices implementing DA1-A in Browser function the same as the Infringing Galaxy S III with respect to presenting structures, pop-up menus, and linked actions, my opinion is that the DA1-A Browser devices are not more than colorably different than the Infringing Galaxy S III and other Infringing Products.

**D. Browser - DA1-B**

101. The only relevant modification between Samsung's Infringing Galaxy S III phone and the DA1-B Browser modification (i.e. ▮ ) is the type of user selection that calls the contextual pop-up menu. In both the Infringing S III and DA1-B products, there is no pre-detection of the relevant structures. Rather, detection of the data structure begins upon a user placing his or her "finger down" on a structure, and a contextual pop-up menu appears depending upon what type of structure is detected. In the DA1-B products, as in the Infringing Galaxy S III, ▮ is invoked *prior* to the user lifting his or her "finger up." The only difference is that in the DA1-B products, the contextual pop-up menu appears when the user short taps the data structure (i.e., touches it for less than one second), whereas in the

Infringing Galaxy S III products, the contextual pop-up menu appears when the user long presses the data structure (i.e., touches it for longer than one second). In my opinion, this single modification of moving the relevant functionality from a long press to a short tap is not sufficient to render the DA1-B products more than colorably different than the Infringing Galaxy S III and other Infrining Products.

102. In terms of a user's experience, DA1-B is functionally equivalent to the Infringing Galaxy S III phones. In both cases, the user selects a data structure by placing his or her finger on a structure and then lifting it off, and the result is a contextual pop-up menu.

103. When considered in light of the asserted claims, the switch from long press to short tap implemented by DA1-B is irrelevant. The asserted claims require only that the user "select" a data structure. They do not differentiate between different types of user selection (i.e., long press versus short tap).

104. Because devices implementing DA1-B in Browser function the same as the Infringing Galaxy S III with respect to presenting structures, pop-up menus, and linked actions, my opinion is that the DA1-B Browser devices are not more than colorably different than the Infringing Galaxy S III and other Infringing Products.

### E. Samsung's Design-Arounds Do Not Employ Non-Obvious Modifications

105. I have been informed by counsel that one factor that may considered in determining whether a design around is not more than colorably different is whether the design around would have been obvious to a person of ordinary skill in the art. As stated in my prior reports regarding the '647 patent, a person of ordinary skill in the art relevant to the '647 patent is a person with at least a Bachelor's of Science degree in computer science or equivalent coursework and at least two years of experience in the field.

106. I have reviewed Samsung's interrogatory responses and understand that Samsung has not alleged that any of its three design-arounds are non-obvious. It is my opinion that the minor technical modifications Samsung implemented in its design-arounds would have been

Date:  September 1, 2017       _____

                               Todd C. Mowry

INITIAL EXPERT REPORT OF TODD MOWRY IN CONNECTION WITH ONGOING ROYALTIES
CASE NO. 12-CV-00630-LHK (NMC)