# EXHIBIT A
## (Filed Under Seal)



**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY PURSUANT TO THE PROTECTIVE ORDER**

# Transcript of Dr. Kevin Jeffay

**Date:** October 27, 2017
**Case:** Apple -v- Samsung; Samsung -v- Apple (DUAL CAPTION 12-CV-0630-LHK-PSG)

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

1 (1 to 4)

**1**

```
1   UNITED STATES DISTRICT COURT
2   NORTHERN DISTRICT OF CALIFORNIA
3   SAN JOSE DIVISION
4   - - - - - - - - - - - - - -x
5   APPLE, INC., a          :
6   California
7   corporation,            :   Civil Action No.
8           Plaintiff,  :   12-cv-00630-LHK(PSG)
9               v.          :
10  SAMSUNG ELECTRONICS     :
11  CO., LTD., a Korean     :
12  corporation; SAMSUNG    :
13  ELECTRONICS AMERICA,    :
14  INC., a New York        :
15  corporation; and        :
16  SAMSUNG                 :
17  TELECOMMUNICATIONS      :
18  AMERICA, LLC, a         :
19  Delaware limited        :
20  liability company,      :
21          Defendants. :
22  - - - - - - - - - - - - - -x
23    (Caption continued on next page
24
25
```

**2**

```
1   - - - - - - - - - - - - - -x
2   SAMSUNG ELECTRONICS     :
3   CO., LTD., a Korean     :
4   corporation; SAMSUNG    :
5   ELECTRONICS AMERICA,    :
6   INC., a New York        :
7   Corporation and SAMSUNG :
8   TELECOMMUNICATIONS      :
9   AMERICA, LLC, a         :
10  Delaware Limited        :
11  Liability Company,      :
12          Plaintiffs,  :   Civil Action No.
13                          :   12-cv-00630-LHK(PSG)
14              v.          :
15  APPLE, INC., a          :
16  California corporation, :
17          Defendant.  :
18  - - - - - - - - - - - - - -x
19  HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
20      PURSUANT TO THE PROTECTIVE ORDER
21
22
23
24
25
```

**3**

```
1                Deposition of DR. KEVIN JEFFAY
2                      New York, New York
3                    Friday October 27, 2017
4                        9:12 a.m.
5
6
7
8
9
10
11  Job No.: 164616
12  Pages: 1 - 207
13  Reported By:   Nancy Mahoney, CCR/RPR
14
15
16
17
18
19
20
21
22
23
24
25
```

**4**

```
1       Deposition of DR. KEVIN JEFFAY held at the
2   offices of:
3
4
5            Quinn Emanuel Urquhart & Sullivan LLP
6            51 Madison Avenue
7            New York, New York 10010
8            212.849.7000
9
10
11
12
13
14      Pursuant to agreement, before Nancy Mahoney,
15  Notary Public in and for the state of New York.
16
17
18
19
20
21
22
23
24
25
```

---

**5**

```
1         A P P E A R A N C E S
2    ON BEHALF OF PLAINTIFF AND COUNTERCLAIM
3    DEFENDANT APPLE, INC.:
4        CALVIN S. WALDEN, ESQUIRE
5        calvin.walden@wilmerhale.com
6        WILMER CUTLER PICKERING HALE & DORR, PLLC
7        7 World Trade Center
8        250 Greenwich Street
9        New York, NY 10007
10       Phone: 212.230.8800
11        - and -
12       DAVID SMITH, ESQUIRE
13       david.smith@wilmerhale.com
14       WILMER CUTLER PICKERING HALE & DORR, PLLC
15       950 Page Mill Road
16       Palo Alto, California 94304
17       650.858.6000
18
19
20
21
22
23
24
25
```

---

**7**

```
1              C O N T E N T S
2    EXAMINATION OF DR. KEVIN JEFFAY          PAGE
3      By Mr. Walden                            9
4              E X H I B I T S
5          (Attached to transcript)
6
7    JEFFAY                                    PAGE
8      Exhibit 1 Rebuttal Expert Report of      9
9      Dr. Kevin Jeffay in Connection with
10     Ongoing Royalties of U.S. Patent No.
11     5,946,647
12     Exhibit 2 U.S. Patent No. 5,946,647      9
13     Exhibit 3 Case related to TiVo v.       27
14     EchoStar Corporation
15     Exhibit 4 Expert Report of Dr. Kevin    59
16     Jeffay Concerning Invalidity of U.S.
17     Patent No. 5,946,647
18     Exhibit 5 U.S. Patent 5,859,636        136
19     Exhibit 6 Transcript of Daewoong Kim,  165
20     as Designated Representative
21     Exhibit 7 Chain of emails, Bates stamp 167
22     SAMDCA630_DA_00064616 through 631
23     Exhibit 8 Transcript of Proceedings    191
24     April 15, 2014
25
```

---

**6**

```
1    A P P E A R A N C E S   C O N T I N U E D:
2
3    ON BEHALF OF DEFENDANTS AND
4    COUNTERCLAIM-PLAINTIFFS SAMSUNG:
5        RICHARD ERWINE, ESQUIRE
6        richarderwine@quinnemanuel.com
7        JOHN T. McKEE, ESQUIRE
8        johnmckee@quinnemanuel.com
9        QUINN EMANUEL URQUHART & SULLIVAN LLP
10       51 Madison Avenue
11       New York, New York 10010
12       212.849.7219
13
14
15
16
17
18
19
20   ALSO PRESENT:
21
22       Chris Johnson, Videographer
23
24
25
```

---

**8**

```
1          P R O C E E D I N G S
2        THE VIDEOGRAPHER:  We are now on the
3    record.  Here begins tape number one in the
4    videotaped deposition of Dr. Kevin Jeffay in the
5    matter of Apple versus Samsung and Samsung versus
6    Apple in the United States District Court,
7    Northern District of California, San Jose
8    Division, Case No. 12-CV-00630-LHK(PSG).
9        Today's date is October 27, 2017; the time
10   on the video monitor is 9:12 a.m.  The
11   videographer today is Chris Johnson representing
12   Planet Depos.
13        This video deposition is taking place at
14   51 Madison Avenue, New York, New York.  Would
15   counsel please voice identify themselves and state
16   whom they represent.
17        MR. WALDEN:  Yes.  Calvin Walden from
18   WilmerHale for Apple, and with me today is Dave
19   Smith also from WilmerHale.
20        MR. ERWINE:  Richard Erwine of Quinn
21   Emanuel.  Also with me is John McKee representing
22   Samsung and Dr. Jeffay.
23        THE VIDEOGRAPHER:  The court reporter
24   today is Nancy Mahoney representing Planet Depos.
25   Would the reporter please swear in the witness.
```

Case 5:12-cv-00630-LHK Document 2259-4 Filed 04/16/18 Page 5 of 107
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

3 (9 to 12)

**9**

1        DR. KEVIN JEFFAY,
2 after having been first duly sworn or affirmed to
3 testify to the truth, was examined and
4 testified as follows:
5     EXAMINATION BY COUNSEL FOR THE PLAINTIFF AND
6 COUNTERCLAIM DEFENDANT APPLE, INC. BY CALVIN
7 WALDEN:
8    Q Good morning.
9    **A Good morning.**
10    Q So, I'd like to just get started by
11 marking as Jeffay Exhibit 1 and 2 a copy of your
12 most recent expert report and the '647 patent.
13      (Exhibit 1 Rebuttal Expert Report of Dr.
14 Kevin Jeffay in Connection with Ongoing Royalties
15 of U.S. Patent No. 5,946,647 marked for
16 identification and attached to the transcript.)
17      (Exhibit 2 U.S. Patent No. 5,946,647
18 marked for identification and attached to the
19 transcript.)
20    Q Dr. Jeffay, do you recognize Exhibit 1 as
21 your most recent expert report on the issue of the
22 design-around phase?
23    **A I do.**
24    Q Does the -- does your report contain the
25 entirety of your opinions regarding whether or not

**10**

1 the design-around phones are more than colorably
2 different than the infringing devices and whether
3 they infringe?
4    **A Yes.**
5    Q Do you dispute with Professor Mowry that
6 the products identified by Samsung as DA1-A,
7 DA1-B, and DA2 products have, in fact, been sold
8 in the United States with those design-arounds?
9    **A I don't opine on that issue.**
10    Q Do you dispute it?
11    **A Sitting here today, no, I don't dispute**
12 **it.**
13    Q You have no dispute with Dr. Mowry that
14 the products he has identified as DA1-A products
15 are, in fact, DA1-A products, do you?
16    **A I don't think I've stated any dispute with**
17 **regard to that.**
18    Q Similarly, the products that Dr. Mowry has
19 identified as DA1-B products, you do not dispute
20 that those are, in fact, DA1-B products, correct?
21    **A I haven't stated any dispute.**
22    Q And then finally for the DA2 products, the
23 products he has identified as DA2 products, you do
24 not dispute that identification, do you?
25    **A I don't think I've disputed that.**

**11**

1    Q For the purposes of your analysis
2 respecting the design-around products, are you
3 aware of any differences among the DA1-A Browser
4 devices that you think is relevant?
5    **A Sorry, could you ask that again?**
6    Q For the purposes of your analysis
7 respecting the design-around products, are you
8 aware of any differences among the individual
9 DA1-A Browser devices that you think is relevant?
10      MR. ERWINE: Objection, vague.
11    **A So you're speaking of the devices**
12 **themselves, the hardware devices?**
13    Q Yes.
14    **A I don't believe I opine on any differences**
15 **with regard to the hardware devices.**
16    Q And so if one, for example, DA1-A Browser
17 device is found to be not more than colorably
18 different, then they all would be not more than
19 colorably different, would you agree?
20      MR. ERWINE: Objection, calls for a legal
21 conclusion.
22    **A I haven't addressed that issue.**
23    Q So you -- you haven't individually looked
24 at the phones within DA1-A and identified any
25 particular differences among those phones that you

**12**

1 find to be relevant, have you?
2    **A I have not.**
3    Q Similarly for the DA1-B, are there any
4 differences among the DA1-B devices that you find
5 to be relevant?
6    **A I haven't done that analysis.**
7    Q And, therefore, you haven't found any
8 differences that you found to be relevant, fair?
9    **A I just haven't done the analysis.**
10    Q Can you answer my question?
11    **A I answered your question.**
12    Q You haven't found any differences that you
13 found to be relevant for the DA1-B individual
14 devices, correct?
15    **A I'm simply saying -- you're asking me**
16 **about an analysis I have not done.**
17    Q Okay. And you haven't done the -- have
18 you done the analysis with respect to the DA2
19 devices?
20    **A No.**
21    Q Are there any relevant differences in the
22 DA1-A, DA1-B or DA2 devices across carriers?
23      MR. ERWINE: Objection, vague.
24    **A I haven't done that analysis.**
25    Q Now, Dr. Mowry identified representative

13

1  phones for the DA1-A, DA1-B and DA2
2  design-arounds.  Do you recall that?
3      **A. Yes.**
4      Q  Do you -- do you dispute that those phones
5  are, in fact, representative?
6      **A. No.**
7      Q  Do you agree that the 79 -- strike that.
8      Do you agree that the non-representative
9  phones, the ones that are DA1-A, DA1-B or DA2
10  identified by Samsung but not representative, that
11  they operate in Messenger and Browser in the same
12  manner as in the representative design-around
13  products?
14      MR. ERWINE:  Objection, vague compound.
15      **A. I haven't done that analysis.**
16      Q  Do you agree that the DA1-A, DA1-B
17  products satisfy the elements of Claim 1, the
18  preamble and limitations 1A, 1B, 1C-1, 1C-3 and
19  1D?
20      MR. ERWINE:  Objection, compound, calls
21  for a legal conclusion.
22      **A. So just so we're clear.  Perhaps we could**
23  **label on the patent which exactly -- which**
24  **elements you're numbering, how you're doing your**
25  **numbering.**

14

1      Q  Fair enough.  So look at Claim 1 if you
2  would, please.  And let's just start with the
3  DA1-A product.
4      **A. Okay.**
5      Q  In your analysis, you have not given
6  opinions regarding DA1-A products with respect to
7  the preamble, correct?
8      **A. That's correct.**
9      Q  And you have not provided any opinions
10  with respect to the first limitation there, "An
11  input device for receiving data for the DA1-A
12  products," correct?
13      **A. That's correct.**
14      Q  And you haven't provided any updated
15  opinions for the second limitation, "An output
16  device for presenting the data for DA1-A
17  products," correct?
18      **A. That's correct.**
19      Q  And then the first sublimitation of this
20  third limitation, "A memory storing information
21  including program routines including an analyzer
22  server for detecting structures in the data and
23  for linking actions to the detected structures."
24      **A. I have provided opinions on that.**
25      Q  You have?

15

1      **A. Correct.**
2      Q  With respect to the DA1-A products?
3      **A. Generally with respect to Dr. Mowry's**
4  **analysis.**
5      Q  Do the DA1-A products satisfy this
6  limitation?
7      MR. ERWINE:  Objection, calls for a legal
8  conclusion.
9      **A. I think the opinion that I raised with**
10  **regard to this is that Dr. Mowry has a new theory**
11  **of what precisely comprises the analyzer server,**
12  **and that theory is not completely articulated in**
13  **his analysis such that I can rebut it.  So I'm**
14  **simply pointing out that he has a new theory and**
15  **it's different from that that was presented to the**
16  **jury in the 2014 trial.**
17      Q  Dr. Mowry identified -- stated that he
18  relied on the same source code files for this
19  limitation as in the accused devices.  Why do you
20  believe that he has a new theory?
21      **A. The source code files contain numerous**
22  **functions.  So relying -- you're saying that you**
23  **rely on the same source code files does not say**
24  **much.**
25      Q  Let's just continue with the DA1-A

16

1  devices.  The DA1-A devices, is it your opinion
2  that there has been a design-around with respect
3  to those devices that makes it more than colorably
4  different than the analyzer server limitation
5  versus the infringing devices?
6      MR. ERWINE:  Objection, vague.
7      **A. What I'm saying is that Dr. Mowry seems to**
8  **have changed his position as to what comprises the**
9  **analyzer server and has not completely articulated**
10  **what exactly he believes the analyzer server is.**
11      Q  Right.  I'm not asking for what you think
12  Dr. Mowry has said, but I'm asking for your
13  opinion on this question.
14      **A. What I'm saying is it's not a hundred**
15  **percent clear to me exactly where the four corners**
16  **of what Dr. Mowry considers the analyzer server**
17  **are.**
18      Q  Did you perform the more than colorably
19  different analysis on the analyzer server
20  limitation for the DA1-A products?
21      **A. I certainly attempted to.**
22      Q  Did you find that the DA1-A design-around
23  was more than colorably different than the
24  analyzer server limitation or not?
25      **A. To the extent I understand exactly what**

17

1  Dr. Mowry is calling the analyzer server, I
2  believe it's different.
3     Q  Can you identify where in your report
4  you -- where you make this -- where you write this
5  opinion regarding the DA1-A products and the
6  analyzer server limitation?
7     A  If you're referring to my report -- it's
8  primarily in the back of the report in the
9  discussion relating to -- well, let me get you the
10 top level section.  It's in Section XIV starting
11 on Page 174.  And what's expressed in here are
12 opinions about linking the creating the specified
13 connection which implicates the analyzer server.
14    Q  In this Section XIV you're talking about
15 the DA2 design-around -- strike that.
16       In this Section XIV starting at Paragraph
17 301 you're talking about the DA2 design-around.
18 Isn't that right?
19    A  This is referring to the ResolverActivity
20 menu which is present in all of the
21 design-arounds.
22    Q  It was present in the infringing devices
23 as well, right?
24    A  Correct.
25    Q  The infringing devices were found to

18

1  infringe Claims 1 and 9 of the patent, correct?
2       MR. ERWINE:  Objection, mischaracterizes
3  the jury's finding.
4     Q  Infringing devices infringed, right?
5       MR. ERWINE:  Claim 9 only.  Sorry to
6  interrupt.
7  BY MR. WALDEN:
8     Q  Claim 9 depends from Claim 1, right?
9       MR. ERWINE:  It wasn't found to infringe
10 Claim 1.
11    A  Can we just do the question again.
12    Q  The infringing devices weren't found to
13 infringe Claim 9 of the patent which depends from
14 Claim 1, right?
15    A  That's what the jury found.
16    Q  The ResolverActivity pop-up menu, did it
17 exist in those devices?
18    A  It did.
19    Q  And the jury also found that an analyzer
20 server existed in those devices, right?
21    A  One could infer that.  I don't know what
22 the jury was actually asked to -- how the jury's
23 finding was described.
24    Q  Have you accepted the jury's verdict for
25 the purposes of your opinions in Exhibit 1?

19

1     A  Yes.
2     Q  The -- with respect to the DA1-A
3  design-around, Samsung did not make any changes to
4  its source code for the analyzer server
5  limitations that was found to be infringing in the
6  infringing devices, correct?
7       MR. ERWINE:  Objection, vague.
8     A  I don't know how to answer that because
9  some of the functions that were tied to the
10 analyzer server have been removed.
11    Q  In the DA1-A products?  I'm only talking
12 about DA1-A for now.
13    A  I just don't recall the extent to which
14 the changes for DA1-A -- I mean, the problem here
15 is that all these design-arounds result in
16 different systems, and the changes implicate most
17 of the code that was presented to the jury.
18 Whether it was changed or used differently, that's
19 what I don't recall.
20    Q  For the DA1-A devices, do you have an
21 opinion as to whether those devices still infringe
22 the action processor limitation?
23       MR. ERWINE:  Objection, calls for a legal
24 conclusion.
25    A  Well, as I say, the opinions on action

20

1  processor -- or I didn't say, the opinions on
2  action processor are also covered in Section XIV,
3  and they are describing here function that is
4  present in the DA1-A devices.
5     Q  Okay.  So in Section XIV you're talking
6  about whether the ResolverActivity menu has an
7  action processor, right?
8     A  That's part of what's discussed here, yes.
9     Q  Now the DA1-A devices continue to show a
10 contextual pop-up menu, right?
11    A  I don't -- you're going to have to ask --
12 that's pretty vague.  I don't know what you mean
13 "continue to show a contextual pop-up menu."
14    Q  The DA1-A devices on short tap will
15 display a contextual pop-up menu, correct?
16    A  That's correct.
17    Q  And it's not -- you have not provided any
18 opinions in this report as to whether the
19 contextual pop-up menu lacks an action processor,
20 have you?
21    A  I believe that's correct.
22    Q  For the DA1-B devices -- let's talk about
23 the DA1-B devices in Claim 1 if you would, please.
24       You agree that the DA1-B devices contain
25 an input device for receiving data, fair?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

6 (21 to 24)

**21**

1    A Yes.
2    Q The DA1-B devices contain an output device
3 for presenting the data, correct?
4    A Yes.
5    Q The DA1-B devices contain a memory storing
6 information including program routines, correct?
7    A Yes.
8    Q Do the DA1-B devices contain an analyzer
9 server?
10    **A I have the same -- I have the same issue**
11 **with analyzer server as I do for DA1-A.**
12    Q Do the DA1-A devices contain an action
13 processor for performing the selected action --
14 strike that.
15    Do the DA1-B devices contain an action
16 processor for performing the selected action
17 linked to the selected structure?
18    **A I have the same issue with an action**
19 **processor for DA1-B as I have for DA1-A.**
20    Q And DA1-B devices on short tap, the
21 devices will display a contextual pop-up menu,
22 correct?
23    **A Correct.**
24    Q Turn in your report to Paragraph 16,
25 please.

**22**

1    **A Okay.**
2    Q Here you provide your understanding of the
3 colorable difference analysis in Paragraph 16
4 through 19, correct?
5    **A Correct.**
6    Q How did you come to your understanding of
7 what the colorable difference analysis is?
8    **A Well, as I say in Paragraph 15, this is**
9 **based on discussions and instructions I've**
10 **received from Samsung's attorneys.**
11    Q Did you review any cases?
12    **A No.**
13    Q Have you previously opined in any case on
14 the issue of whether a design-around or any other
15 type of device is more than colorably different
16 than an earlier device?
17    **A I have.**
18    Q How many times?
19    **A I think twice.**
20    Q Twice previous to this?
21    **A Yeah, sorry, twice previous to this.**
22    Q And what cases?
23    **A One was in a case involving company called**
24 **SeaChange, SeaChange versus Arris, and the other**
25 **one was in an ITC proceedings, and I can't**

**23**

1 **remember -- it was a consumer electronics**
2 **manufacturer. I can't remember if it was Pioneer**
3 **or Alpine or there was a third company. I don't**
4 **remember their name. It was one of those three.**
5    Q What was the opinion you provided with
6 respect to more than colorably different -- strike
7 that.
8    What was the opinion you provided with
9 respect to the more than colorably different
10 analysis in SeaChange versus Arris?
11    **A Well, there had been a design-around of**
12 **the products in that case, and my recollection is**
13 **I opined that, as a result of the redesigns, the**
14 **products were more than colorably different.**
15    Q Did you also opine on whether the
16 design-around products in that case continued to
17 infringe or not?
18    **A I believe I did. I don't recall exactly.**
19    Q When did you provide this opinion --
20 strike that.
21    When did you testify -- strike that.
22    Did you testify in the SeaChange versus
23 Arris case?
24    **A Yes, there was a hearing.**
25    Q When was this?

**24**

1    **A I don't recall exactly. Probably 2008**
2 **maybe --**
3    Q Was that --
4    **A Plus or minus a year.**
5    Q I'm sorry to interrupt. Was that the
6 first time you learned about the more than
7 colorably different analysis?
8    **A I don't know.**
9    Q When did -- did you testify in the ITC
10 case that you mentioned earlier?
11    **A No.**
12    Q Did you provide a report or an opinion in
13 that case?
14    **A I did.**
15    Q When was that?
16    **A I really don't remember. Maybe 2010.**
17    Q Again, without providing any confidential
18 details, please, what was the basic outline of
19 your opinion with respect to more colorably
20 different in that case?
21    **A That as a result of redesigns, the**
22 **products were more than colorably different.**
23    Q Did you also provide an opinion as to
24 whether the redesigned products continue to
25 infringe?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

25

1    A That one I really don't recall.
2    Q Do you know if the case law on the more
3 than colorably different standard has changed
4 since you last provided opinions in 2008 and 2010?
5    A I don't know.
6    Q In the 2008 case, did the court ultimately
7 rule on whether the products were more than
8 colorably different or not?
9    A I don't recall what the court's -- the
10 question the court was ultimately ruling on, but I
11 know that the analysis that I did was accepted and
12 the ultimate ruling was favorable to the party
13 that I was representing -- or was retained on
14 behalf of.
15    Q How about 2010, was there any result of
16 the submissions on whether the design-around
17 products were more than colorably different?
18    A I don't recall if there was a ruling there
19 or not. I think that case just went away.
20    Q So every time that you've provided
21 opinions regarding whether a design around product
22 is more than colorably different or not, you have
23 found that it is more than colorably different.
24 Is that right?
25    A Well, the two times that I've done it, the

26

1 answer is yes.
2    Q What makes a difference between the old
3 and new elements significant or not, do you know?
4    MR. ERWINE: Objection, calls for a legal
5 conclusion.
6    MR. WALDEN: I'll withdraw the question.
7    Q Look at Paragraph 16 of your report,
8 please.
9    A Okay.
10    Q You write in the third paragraph, "This is
11 because if the differences between the old and new
12 elements are significant, the newly accused
13 product as a whole is considered more than
14 colorably different from the adjudged infringing
15 product and therefore the inquiry into whether the
16 newly accused product actually infringes becomes
17 irrelevant."
18    Do you see that?
19    A I do.
20    Q Did you provide an analysis -- strike
21 that.
22    Did you conduct an analysis of whether the
23 differences between the old and new elements in
24 the Samsung devices were significant or not?
25    A I did.

27

1    Q Then what did you understand that term
2 "significant" to mean in that context? What about
3 a difference would make it significant or not?
4    A Well, for example, if a difference was
5 such that a claim limitation was no longer met, I
6 would consider that to be a significant
7 difference.
8    Q Anything else?
9    A If the difference was that the accused
10 component or function had been removed from -- I
11 don't know what the best word to use is -- say a
12 product, I would consider that to be significant.
13    Q Anything else?
14    A Those are just two measures that I would
15 use.
16    MR. WALDEN: Let's mark as Exhibit 3 a
17 copy of TiVo, Inc. v. EchoStar Corporation, et al.
18    (Exhibit 3 Case related to TiVo v.
19 EchoStar Corporation marked for identification and
20 attached to the transcript.)
21    Q Sir, have you seen a copy of this case
22 before?
23    A I know I have seen proceedings related to
24 this case in the sense that I recognize the name
25 of it. I don't recall if I've specifically seen

28

1 this ruling or not.
2    Q Turn if you would in the main body of the
3 opinion to Section III, what's titled, The More
4 than Colorable Differences Test?
5    A Do you have a page number?
6    Q If I could -- yeah, I'll give you in one
7 second.
8    A Section III, Page 18 maybe?
9    Q That is correct.
10    A Okay, I've got that.
11    Q In the second paragraph under Section A
12 there, A Discussion of the Law, do you see where
13 they say, "We have stated the test for colorable
14 differences as one that requires determining
15 whether 'substantial open issues with respect to
16 infringement to be tried' exist"?
17    Do you see that?
18    A I do.
19    Q It says, "In some cases, that has misled
20 district courts to focus solely on infringement by
21 the newly accused devices in deciding contempt.
22 That is the case here."
23    Do you see that?
24    A I do.
25    Q "Today we reject that infringement-based

Case 5:12-cv-00630-LHK  Document 2259-4  Filed 04/16/18  Page 10 of 107
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

8 (29 to 32)

**29**

1  understanding of the colorably different test."
2  Do you understand what an infringement-based
3  understanding of the colorably different test is?
4      A  Well, I mean, I'd have to read this in a
5  little more detail.  I mean, I understand what
6  you're reading, but I don't know that I can digest
7  this in real time.
8      Q  In performing your colorably different
9  analysis, did you, instead of focusing solely on
10  infringement, focus initially on the differences
11  between the features relied upon to establish
12  infringement and the modified features of the
13  newly accused products?
14      A  Can you just say that a little more
15  slowly?
16      Q  Sure.
17      Did you, in performing your more than
18  colorably different analysis, instead of focusing
19  solely on infringement, focus on the differences
20  between the features relied upon to establish
21  infringement and the modified features of the
22  newly accused products?
23      A  So your question seems to have a
24  precondition in it that's throwing me off.  So I
25  don't really accept your question.  When you say

**30**

1  instead of, you're implying that I did something.
2      Q  When I asked you what it means to be
3  significant, the first answer you stated to me,
4  well, it's significant if the difference was such
5  that the claim limitation was no longer met.  Do
6  you recall saying that?
7      A  I do.
8      Q  Now, this case at least indicates that
9  that should not be the focus, right?  Instead, the
10  initial focus should be on whether the features
11  relied upon to establish infringement and the
12  modified features are significantly different or
13  not.
14      MR. ERWINE:  Objection, mischaracterizes
15  the case law.
16      A  Is that a question?
17      Q  Yes.
18      A  I didn't hear that as a question, sorry.
19      Q  In your more than colorably different
20  analysis, did you focus on those aspects of the
21  accused products that were previously alleged to
22  be and were the basis for the prior finding of
23  infringement?
24      A  That certainly was one of the my focuses,
25  yes.

**31**

1      Q  And did you compare those previously
2  alleged features to the modified features of the
3  newly accused product?
4      A  Yeah, I'm just hesitating on this notion
5  of the modified features.  I mean, I certainly
6  compared the systems as a whole.  I guess that's
7  fine, yes.
8      Q  Next paragraph it states, "The
9  significance of the differences" --
10      A  I'm sorry, I'm not with you.
11      Q  In the opinion --
12      A  Starting in the middle of it somewhere?
13      Q  The paragraph after the one we were just
14  looking at.  Do you see the paragraph that starts,
15  "The significance of the differences"?  It should
16  be on --
17      A  I don't think it's this next paragraph.
18      MR. ERWINE:  It's on Page 20.
19      Q  20.
20      A  So you're skipping a paragraph?
21      Q  No.  I was talking about the previous
22  paragraph.  But anyway, it's on Page 20.  Do you
23  see the paragraph that starts, "The significance
24  of the differences"?
25      MR. ERWINE:  You didn't talk about that

**32**

1  paragraph.
2      A  I was just going to say, just so we're on
3  the same page because you're confusing me here.  I
4  don't believe --
5      Q  I did.  Maybe if I didn't ask you
6  specifically about the paragraph.
7      A  Okay.  I'm just trying to follow you here.
8      Q  My fault.  So on Page 19 do you follow me?
9      A  I see the paragraph that starts, "The
10  significance of the differences."
11      Q  All right.  So we're in sync.
12      MR. ERWINE:  Page 20, right?
13      MR. WALDEN:  Is it 19 -- 20, I'm sorry.
14  BY MR. WALDEN:
15      Q  "The significance of the differences
16  between the two products is much dependent on the
17  nature of the products at issue."
18      Do you see that?
19      A  Yes.
20      Q  Now, in this case what do you understand
21  to be the nature of the products at issue?
22      A  So, we're skipping around here.  So what
23  I'd like to suggest is maybe let me read this
24  section as a complete section, and then perhaps we
25  can come back to your question.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

9 (33 to 36)

---

33

1    Q  Whatever you'd like.
2    A  Okay, thank you for that.  So you wanted
3  to ask a question about the paragraph -- the
4  significance of the differences?
5    Q  Yes.  In this case what do you understand
6  to be the nature of the products at issue?
7    A  I don't think I've opined on that issue.
8    Q  In the paragraph on that Page 20 that we
9  were looking at, the next sentence states, "The
10  court must also look to the relevant prior art, if
11  any is available, to determine if the modification
12  merely employs or combines elements already known
13  in the prior art in a manner that would have been
14  obvious to a person of ordinary skill in the art
15  at the time the modification was made."
16      Do you see that?
17    A  I do.
18    Q  Do you understand that sentence?
19    A  I think so.
20    Q  In your report, did you provide any
21  opinions regarding whether Samsung's
22  design-arounds employ or combine elements already
23  known in the prior art in a manner that would have
24  been obvious or not?
25    A  I think I opine on the relationship

---

34

1  between some of the modifications that have been
2  made and elements that existed in the prior art,
3  yeah.
4    Q  Do you have an opinion as to whether any
5  of Samsung's design-arounds are obvious or
6  non-obvious modifications?
7      MR. ERWINE:  Objection, calls for a legal
8  conclusion, vague.
9    A  I mean, it's a difficult question to
10  answer.  I mean, I think the approach that Samsung
11  took of trying to eliminate functions that were
12  accused to infringe, to eliminate those, I mean, I
13  think that's certainly an obvious approach.  So, I
14  mean, I guess that's the extent of my opinion.
15    Q  Turn in your report, Exhibit 1, if you
16  would, to Paragraph 226.
17    A  Okay.
18    Q  And specifically looking at the footnote
19  at the bottom on Page 142 from Paragraphs 226,
20  footnote 6.  Do you see that?
21    A  I do.
22    Q  Does this footnote here provide the
23  entirety of your opinions regarding whether
24  Samsung's design-arounds would have obvious or
25  not?

---

35

1    A  I mean, all this footnote is just simply
2  saying is that I really can't respond at this
3  point to Dr. Mowry's suggestions that the
4  design-arounds were obvious because he simply
5  provided a summary statement of it.
6    Q  Do you recall that Dr. Mowry opined that
7  Samsung design-arounds were relatively simple?
8      MR. ERWINE:  Objection, vague.
9    A  I mean, I think generally -- I'm sure he
10  generally expressed that opinion.
11    Q  Do you agree?
12    A  I think simple is a purposely denigrating
13  description.  I think design-arounds -- you can
14  design around infringement in what some people
15  might view as a simple manner by removing,
16  completely removing the function that was alleged
17  to infringe.
18      In the SeaChange case, for example, that's
19  what was done.  If one were to have studied the
20  code before and after, I think someone could argue
21  that that was a very simple modification, but,
22  nonetheless, it made it more than colorably
23  different and made the product no longer infringe.
24    Q  So turn in your report back to
25  Paragraph 19, please.

---

36

1    A  19?
2    Q  Yes.  So here you wrote --
3    A  I'm good.
4    Q  Here you wrote, "Lastly, I understand that
5  even simple changes can be considered
6  significant."
7    A  Yes.
8    Q  Now, that's really the basis for my
9  question about simple, and I don't mean to
10  denigrate.  My question is is when you wrote that
11  portion of your report, were you acknowledging
12  that Samsung's design-arounds were simple?
13    A  No.
14    Q  And so now you've provided -- strike that.
15      Did you provide any opinions in this
16  report regarding whether Samsung's design-arounds
17  are simple or not?
18      MR. ERWINE:  Objection, vague.
19    A  I mean, I don't think I expressed -- I
20  wasn't subjectively assessing anything related to
21  complexity.  I think I was more focused on
22  significance of modifications.
23    Q  In performing your analysis, did you learn
24  how Samsung went about modifying its code for the
25  design-arounds?

37

1    A  Are you asking about the process?
2    Q  Yeah, did you -- no, I'm asking about did
3 you perform any factual investigation to learn how
4 did Samsung do what it did?
5    A  I guess I want to ask the same question
6 again.  When you say how it did what it did,
7 you're talking about the process that they
8 followed to --
9    Q  Yes.  Actually, yes.  I'm sorry, I didn't
10 understand your question.
11   A  That's fine.
12   Q  So, yes, the process that they followed.
13   A  Did I do an investigation to understand
14 the process that Samsung followed?
15   Q  Correct.
16   A  No.
17   Q  Do you know how long -- how much code was
18 changed to implement these design-arounds?
19   A  I have a sense.  I mean, I didn't do any
20 empirical measurements.
21   Q  What is your sense?
22   A  A significant amount of code changed.
23   Q  For each of the design-arounds?
24   A  I would say yes.
25   Q  How long did it take Samsung to implement

38

1 its design-arounds, if you know?
2    A  I don't recall.
3    Q  How long did it take to write the code, do
4 you know?
5    A  To write the code?
6    Q  To write the code for the design-arounds.
7    A  I seem to recall there was some testimony
8 about that in the Samsung depositions, but I don't
9 recall the duration.
10   Q  How much code change do you believe needs
11 to take place for it to be significant?
12     MR. ERWINE:  Objection, vague.
13   A  It's not necessarily a numerical amount.
14 I think it's the substance.  So, again, for
15 example, if you remove a feature that was accused
16 to infringe, to my way of thinking, that's a
17 substantial change.
18   Q  The question if the feature is removed
19 becomes whether that removal makes the
20 modification significant or not, right?
21     MR. ERWINE:  Objection, vague, calls for a
22 legal conclusion.
23   A  Yeah, I'm not sure I understand the
24 question.
25   Q  Let's go back to the TiVo case, which is

39

1 Exhibit 3, and it should be on Page 19, the
2 paragraph that starts, "The primary question."
3    A  Yes.
4    Q  Again, you can read the whole paragraph,
5 but I want to focus on sentence about
6 three-quarters of the way down of that paragraph
7 that starts, "Where one of those" -- "one or more
8 of those elements."
9      Do you see that?
10   A  Yes.
11   Q  So I'll read it out.  "Where one or more
12 of those elements previously found to infringe has
13 been modified or removed, the court must make an
14 inquiry into whether the modification is
15 significant."
16     Do you see that?
17   A  I do.
18   Q  And did you perform that type of analysis
19 when you found that Samsung had modified or
20 removed a feature, did you then inquire into
21 whether that modification was significant?
22   A  Yes.
23   Q  It isn't simple -- it isn't enough just to
24 say that it was removed and it was significant,
25 right?  You have to determine whether that removal

40

1 made the modification significant, correct?
2      MR. ERWINE:  Objection, calls for a legal
3 conclusion.
4    A  Yeah, if you're asking about a legal
5 standard, I don't know, but as I think I explained
6 to you, part of my basis for saying that it's
7 significant is because I believe the removal in
8 cases of functions means that a claim limitation
9 is no longer met.  And, in my view, that makes it
10 a significant modification.
11   Q  If you would in your report turn to
12 Paragraph 21.
13   A  Okay.
14   Q  And here you're providing your
15 understanding of the legal standards for the
16 doctrine of equivalents.  Is that right?
17   A  Yes.
18   Q  And in Paragraph 21 you write, "It is my
19 understanding that if there are claim limitations
20 that are not literally present in the accused
21 products, the claim might still be infringed if
22 the differences between the accused products and
23 the claims are insubstantial for each claim
24 litigation."
25     Do you see that?

41

1    A I do.
2    Q Now, in your view, is the question of the
3  substantial or insubstantial differences in the
4  doctrine of equivalents the same as or different
5  than significant -- the significance question in
6  the colorable difference analysis?
7        MR. ERWINE:  Objection, calls for a legal
8  conclusion.
9    Q I'll ask a better question.
10       When you applied the doctrine of
11 equivalents analysis in this case and you looked
12 at whether the accused products in the claims were
13 met -- strike that.
14       When you applied your doctrine of
15 equivalents analysis in this case, did you look to
16 determine whether the accused products infringed
17 under the doctrine of equivalents in terms of
18 whether they were insubstantially different from
19 the claim limitations or not?
20       MR. ERWINE:  Objection, vague, calls for a
21 legal conclusion.
22   **A Yeah, you're implying I -- when you say**
23 **when I performed by doctrine of equivalents**
24 **analysis, I simply was responding to a doctrine of**
25 **equivalents analysis that Dr. Mowry had done.  So**

42

1  **perhaps I'm misunderstanding what you're asking.**
2    Q Well, do you have an opinion as to whether
3  the DA1-A or the DA1-B devices infringe Claim 9 of
4  the '647 patent under the doctrine of equivalents?
5    **A Yes, I have an opinion.**
6    Q What's your opinion?
7    **A They do not infringe under the doctrine of**
8  **equivalents.**
9    Q And that analysis is set forth in your
10 report?
11   **A Correct.**
12   Q When you applied that analysis, did you
13 look to determine whether the differences between
14 the accused product in the claims were
15 insubstantial or not?
16   **A Yes.**
17   Q When you applied that analysis with
18 respect to this substantiality of the difference
19 between the accused products and the claims, was
20 that a different type of analysis that you applied
21 from the colorable difference analysis or the
22 same?
23       MR. ERWINE:  Objection, vague, calls for a
24 legal conclusion.
25   **A I think the point is the conclusion is the**

43

1  **same.  I don't know that I can characterize the**
2  **process.  And the conclusion was whether you're**
3  **looking at it from a colorable differences**
4  **standpoint or a doctrine of equivalents**
5  **standpoint, the differences are substantial**
6  **because, based on my analysis, I conclude that**
7  **it's the case that a claim limitation is no longer**
8  **met and that's a substantial difference, both --**
9  **that would satisfy -- that would negate the**
10 **insubstantial differences requirement of doctrine**
11 **of equivalents and would satisfy the substantial**
12 **differences requirement for colorable differences.**
13   Q Okay.  Hypothetically, assume that the
14 court disagrees with you in the colorable
15 difference analysis and finds that the DA1-A and
16 DA1-B design-arounds are not more colorably
17 different.  Would it also then apply that the
18 differences between the DA1-A and DA1-B devices
19 are not substantially different from the claims?
20       MR. ERWINE:  Objection, vague, calls for a
21 legal conclusion.
22   **A Independent of your hypothetical, my**
23 **analysis is my analysis.  And my analysis says**
24 **that there is no infringement under DOE.**
25   Q Do you know that as an expert you have to

44

1  apply hypotheticals, right?  You've done this
2  before, right?
3    **A I don't know that, no.**
4    Q Can you apply my hypothetical?  Not
5  independent of my hypothetical, can you apply it?
6        MR. ERWINE:  Objection, vague.
7    **A You'd have to give me the reasoning for**
8  **why a court found there was no -- that the**
9  **products were not more than colorably different.**
10   Q Just assume that the court has found that
11 the products are not more than colorably
12 different.
13   **A The basis for their finding -- I cannot**
14 **answer your question without an understanding of**
15 **what the basis is.**
16   Q Assume that the court has adopted
17 Dr. Mowry's opinions in this case and found that
18 the DA1-A and DA1-B devices are not more than
19 colorably different.  Okay?  Can you do that?
20 Standard hypothetical.
21       MR. ERWINE:  Objection, argumentative.
22   **A Please, let's just stick to the questions.**
23   Q Then let's please try to answer my
24 questions.
25       MR. ERWINE:  Same objection.

45

1   A I'm trying to understand your question,
2   which is why I was pausing.
3   Q I'll re-ask. Assume for the purposes of
4   my question that the court has adopted Dr. Mowry's
5   opinions regarding whether or not the DA1-A or
6   DA1-B devices are more than colorably different.
7   Okay?
8       MR. ERWINE: Objection, incomplete
9   hypothetical. Doesn't provide the basis for why.
10   A So for DA1-A and DA1-B --
11   Q Yes.
12   A Okay.
13   Q -- are not more than colorably
14   different --
15   A Okay.
16   Q -- than the previously accused products.
17   A Okay.
18   Q Would your opinion change with respect to
19   whether those devices infringe under the doctrine
20   of equivalents?
21       MR. ERWINE: Objection, incomplete
22   hypothetical, vague and calls for a legal
23   conclusion.
24   Q You can answer.
25   A No, it wouldn't change my opinion.

46

1   Q Why not?
2   A Unless you give me more details, I don't
3   see where there's going to be a flaw in my
4   doctrine of equivalents analysis.
5   Q If the court has found that there's no
6   significant difference between the DA1-A and DA1-B
7   design-around in the accused products, would it be
8   your opinion still that there's a substantial
9   difference between those products in the asserted
10   claim?
11       MR. ERWINE: Objection, incomplete
12   hypothetical, vague, calls for a legal conclusion.
13   A So I thought you were asking if that would
14   implicate my doctrine of equivalents analysis. My
15   doctrine of equivalents analysis is a freestanding
16   analysis that I stand behind independent of the
17   colorable difference analysis.
18   Q In terms of analyzing whether the products
19   are substantially or different than the claims or
20   not, did you look at the difference -- strike
21   that.
22       Do you understand there to be any
23   difference between the substantial difference
24   question for doctrine of equivalents and the
25   significant difference in the more than colorable

47

1   difference analysis?
2       MR. ERWINE: Objection, vague, calls for a
3   legal conclusion.
4   A I mean, it seems to me you're asking me
5   about a legal question about the difference
6   between two standards, and I haven't opined on any
7   such difference.
8   Q Right, but you've opined on both issues.
9   My question is have you applied the same standard
10   or a different standard or what?
11       MR. ERWINE: Objection, calls for a legal
12   conclusion, vague.
13   A I think I've explained to you the basis
14   for my claiming in each case there's a substantial
15   difference.
16   Q Have you applied the same standard or a
17   different standard --
18       MR. ERWINE: Same objection.
19   Q -- or not?
20   A I've explained in each --
21       MR. ERWINE: Vague, calls for a legal
22   conclusion.
23   Q Can you answer my question?
24       MR. ERWINE: Objection, argumentative.
25   A I've explained to you what I've done, and

48

1   I've explained to you the basis for my opinions.
2   You're now asking me to equate those two --
3   Q No. I'm asking you did you equate those
4   two. I'm asking you, did you apply the same
5   standard or a different standard or what?
6       MR. ERWINE: Objection, vague, calls for a
7   legal conclusion.
8   A I explained to you what I have done. I
9   have not characterized -- to the extent there's
10   differences, I have not characterized the
11   differences between those two. They were
12   independent questions. They were analyzed
13   independently.
14   Q So you applied different standards then?
15       MR. ERWINE: Objection, mischaracterizes
16   the witness's testimony.
17   A That's not what I said. You're asking me
18   to compare --
19   Q I'm asking you -- I'm asking you --
20       MR. ERWINE: Counsel, please let him
21   finish his question.
22       MR. WALDEN: Listen -- okay, okay. All
23   right. You're making speaking objections here;
24   it's enough, okay.
25       MR. ERWINE: You're interrupting his

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

13 (49 to 52)

---

49

1 answer.
2      MR. WALDEN:  So stop coaching the witness.
3      MR. ERWINE:  I'm not coaching the witness.
4      MR. WALDEN:  Yes, you are.
5      MR. ERWINE:  I'm asking you not to
6 interrupt his answer.
7 BY MR. WALDEN:
8   Q I will let you finish.
9   **A I've explained to you why I am of the**
10 **opinion that the differences between the accused**
11 **function and any new function or new modifications**
12 **is substantial.  I've explained to you why it is I**
13 **believe there is no infringement under the**
14 **doctrine of equivalents.**
15      **They were independent analyses.  I haven't**
16 **thought here about to what extent those analyses**
17 **are identical or to the extent that there's**
18 **differences between them.  They were independent**
19 **analyses.**
20   Q Thank you for the answer.
21      Turn to Paragraph 23 of your report,
22 please.
23   **A I have that.**
24   Q Here you say, "I've been informed that the
25 doctrine of equivalents does not always apply such

---

50

1 as when doing so would contradict statements
2 during the patent application process."
3      Do you see that?
4   **A I do.**
5   Q Were there any statements made during the
6 patent application process for the '647 patent
7 that you found to be relevant?
8   **A I don't believe so.**
9   Q Paragraph 24 you say, "It is my
10 understanding that the range of equivalents is
11 also limited by the prior art to prohibit the
12 patent owner for extending the scope of the claim
13 to cover the prior art."
14      Do you see that?
15   **A I do.**
16   Q Did you -- are you of the opinion that
17 there is a limit to the range of equivalents to
18 the Claim 9 of the '647 patent based on the prior
19 art?
20      MR. ERWINE:  Objection, calls for a legal
21 conclusion.
22   **A Can you just read that again.**
23   Q In applying your analysis for the DOE, did
24 you inquire into whether the prior art prohibited
25 the '647 patent owner from extending the scope of

---

51

1 Claim 9 to cover the prior art?
2   **A Did I make an inquiry as to whether -- I**
3 **mean, you're asking in sort of a funny way.  I'll**
4 **certainly say that I have opinions in here that**
5 **Dr. Mowry's analysis of the design-arounds are**
6 **such that, in my opinion, he is now sweeping in**
7 **the prior art, that is to say that under his**
8 **theories then the prior art would infringe.**
9   Q Which prior art?
10   **A I talk in here primarily about Pandit, and**
11 **there's one mention I think of Sidekick.**
12   Q Was there any other prior art that you
13 found to be relevant to your analysis for this
14 report?
15   **A I believe that's it.**
16   Q 25, Paragraph 25.  You say, "I understand
17 the doctrine of equivalents is subject to the all
18 elements rule which precludes a theory of
19 infringement based on the doctrine of equivalents
20 when the theory would read a limitation completely
21 out of the claim."
22      Do you believe that the doctrine of
23 equivalents for Claim 9 is subject to the all
24 elements rule in this case?
25   **A You're asking me does the all elements**

---

52

1   **rule -- my understanding is the all elements rule**
2   **always applies.**
3   Q Fair point.  My question is:  Did you --
4 do you provide opinions in this report that the
5 all elements rule limits Apple's ability to claim
6 doctrine of equivalents for the '647 patent?
7   **A I think the way I would say it is I**
8 **believe I provide opinions that Dr. Mowry's**
9 **analysis violates the all elements rule, that is,**
10 **that he effectively reads out a limitation in his**
11 **doctrine of equivalents analysis.**
12   Q For which design-arounds?
13   **A Certainly DAI-A.**
14   Q Any others?
15   **A DAI-B I believe.  I think I -- I'd have to**
16 **check.  I think I make the argument there for**
17 **DAI-B as well.  Actually, I can't remember if he**
18 **did DOE for DAI-B.  We'd have to go and check.**
19   Q For DAI-A what is the element -- strike
20 that -- what is the claim limitation that you
21 believe would be read out under Dr. Mowry's
22 analysis?
23   **A It's the limitation a user interface**
24 **enabling the selection of a detected structure --**
25      (Clarification for reporter.)

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

14 (53 to 56)

---

53

1    A Sorry, let me just read it again.
2       A user interface enabling the selection of
3  a detected structure and a linked action.
4    Q Do the DA1-A devices identify structures
5  in computer data?
6       MR. ERWINE: Objection, vague.
7    A They do.
8    Q Do the DA1-A devices associate candidate
9  actions with the detected structures?
10      MR. ERWINE: Objection, vague.
11   A Yes.
12   Q Do the DA1-A devices enable the selection
13 of an action?
14   A Yes.
15   Q Do the DA1-A devices automatically perform
16 the selected action on the identified structure?
17      MR. ERWINE: Objection, vague, calls for a
18 legal conclusion.
19   A Yes.
20   Q Do the DA1-B devices identify structures
21 in computer data?
22      MR. ERWINE: Objection, vague.
23   A Yes.
24   Q Do the DA1-B devices associate candidate
25 actions with each detected structure?

---

54

1       MR. ERWINE: Same objection.
2    A Yes.
3    Q Do the DA1-B devices enable the selection
4  of an action?
5       MR. ERWINE: Same objection.
6    A Yes.
7    Q Do the DA1-B devices automatically perform
8  the selected action on the identified structure?
9       MR. ERWINE: Objection, vague, calls for a
10 legal conclusion.
11   A Yes.
12   Q Do the DA2 devices identify structures in
13 computer data?
14      MR. ERWINE: Objection, vague, calls for a
15 legal conclusion.
16   A Yes.
17   Q Do the DA2 devices associate candidate
18 actions with each detected structure?
19      MR. ERWINE: Same objection.
20   A No.
21   Q Why not?
22   A They don't do it.
23   Q Why not?
24   A I don't know why they don't. They just
25 don't.

---

55

1    Q Why do you say they don't?
2    A They do not do what you say they do. I
3  cannot tell you why they don't. They just do not.
4    Q But what is the basis for your statement
5  that they don't?
6    A They do not associate actions with --
7  could you read your question again so I can use
8  the words you used in the question.
9    Q Do the DA2 devices associate candidate
10 actions with each detected structure?
11   A They do not associate candidate actions
12 with each detected structure.
13   Q The DA2 devices associate a candidate
14 action with each detected structure, correct?
15      MR. ERWINE: Objection, vague, calls for a
16 legal conclusion.
17   A I don't recall. Certainly for some of the
18 detected structures, yes, they associate one
19 action.
20   Q The DA2 devices enable the selection of an
21 action, correct?
22      MR. ERWINE: Objection, vague, calls for a
23 legal conclusion.
24   A No.
25   Q Why not?

---

56

1    A Because they do not. I can't tell you why
2  they don't.
3    Q What is the factual basis -- it's not a --
4  what's the factual basis for your statement "no"?
5    A You cannot select an action. There is
6  just -- there's no selecting; there's just
7  performing an action.
8    Q When the user on a DA2 device short taps
9  on a structure, what happens -- strike that.
10      When a user of a DA2 device short taps on
11 a structure such as an email in Messenger, what
12 happens?
13   A It will send -- it will send an email.
14   Q Is that not the selection of an action?
15   A I would say it's the performance of an
16 action. You're not selecting. You're not
17 selecting an action. You're simply performing an
18 action.
19   Q The user is selecting an action, correct?
20      MR. ERWINE: Objection, vague,
21 mischaracterizes the witness's testimony.
22   A No, that's not what I would say. I
23 wouldn't characterize it that way.
24   Q When a user in a DA1-A device -- strike
25 that.

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

15 (57 to 60)

57

1    You agreed that in the DA1-A devices
2 enable the selection of an action, right?
3    **A Yes.**
4    Q And how does that occur in the DA1-A
5 devices?
6    MR. ERWINE: Objection, vague.
7    **A There is a user interface that will allow**
8 **you to select an action from a menu.**
9    Q Is it -- is there not a user interface in
10 the DA2 devices?
11    **A Of course there's a user interface.**
12    Q And the user interface allows you to, for
13 example, short tap on a highlighted email link,
14 right?
15    **A Correct.**
16    Q Is that not the selection of an action by
17 the user?
18    MR. ERWINE: Objection, vague.
19    **A I would say no.**
20    Q Why not?
21    **A There's no -- a selection requires you**
22 **have choices.**
23    Q Claim 1 describes the selection of an
24 action, right?
25    **A Yes.**

58

1    Q And we know that the claim construction
2 for Claim 1 is that there does not have to be more
3 than one action for any particular structure,
4 right?
5    MR. ERWINE: Objection, vague.
6    **A I'm sorry, ask the question again.**
7    Q Under the claim construction that are
8 applicable in this case now, Claim 1 does not
9 require more than one action per structure, right?
10    **A Correct.**
11    Q Yet Claim 1 does allow for the selection
12 of an action even if there's only one action per
13 structure, right?
14    **A The claim limitation reads, "Enabling the**
15 **selection of a detected structure and a linked**
16 **action." So in that case, you can select a**
17 **detected structure, and in selecting the detected**
18 **structure, you're selecting a linked action.**
19    Q And the DA2 devices, when the user selects
20 a detected structure, they are selecting a linked
21 action as well, correct?
22    MR. ERWINE: Objection, vague, calls for a
23 legal conclusion.
24    **A I don't know that that has been**
25 **established in the case of DA2.**

59

1    Q In the DA2 devices the user can select a
2 detected structure, fair?
3    **A Correct.**
4    Q And in selecting the detected structure,
5 the user is selecting a linked action, correct?
6    MR. ERWINE: Objection, vague, calls for a
7 legal conclusion.
8    **A I believe within the context of DA2 the**
9 **selecting of a linked action I don't believe**
10 **that's been established.**
11    Q In your report turn to Paragraph 73,
12 please.
13    **A 70- --**
14    Q 73 on Page 21.
15    **A Okay.**
16    Q Before I get to this Paragraph 73, I'll
17 ask about something different.
18    MR. WALDEN: Mark as Exhibit 4 a copy of
19 the expert report of Dr. Kevin Jeffay concerning
20 invalidity of U.S. Patent No. 5,946,647.
21    (Exhibit 4 Expert Report of Dr. Kevin
22 Jeffay Concerning Invalidity of U.S. Patent No.
23 5,946,647 marked for identification and attached
24 to the transcript.)
25    Q Do you recognize this document?

60

1    **A Yes.**
2    Q Turn to Page 197 of your invalidity
3 report.
4    **A Okay.**
5    Q You see at the top there, it says Claim 9
6 under Section V there at the top.
7    **A I see it.**
8    Q And then I'm asking you about Paragraph
9 374. And here you're talking about the Sidekick
10 handbook. Do you recall that -- strike that.
11    Do you recall reviewing -- opining on the
12 Sidekick handbook previously?
13    **A Yes.**
14    Q And when you testified about Sidekick at
15 trial, you were talking about the device, is that
16 right, rather than the handbook?
17    **A I actually don't recall my testimony on**
18 **Sidekick.**
19    Q Nonetheless, you opined on this handbook
20 in this report, right?
21    **A That appears to be correct.**
22    Q And in Paragraph 374 the second sentence,
23 it states, "The Sidekick handbook already
24 discloses the use of a menu of actions that
25 enables the selection of an action."

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

16 (61 to 64)

---

61

1    Do you see that?
2    **A  I see that.**
3    Q  And then you have a picture here from the
4  handbook of the Figure 2-7, the Dialer Window,
5  right?
6    **A  That's what it appears to be.**
7    Q  What are the actions that are disclosed in
8  this menu?
9    **A  I don't recall this analysis with**
10 **sufficient detail to answer your question at this**
11 **time.**
12   Q  Take a look at the figure -- it's not that
13 big -- and tell me if you see more than one
14 action.
15   **A  Again, I'm sorry, but I just haven't**
16 **reviewed this material in several years, and I**
17 **just can't answer your question.**
18   Q  The actions that are disclosed in the
19 Dialer Window, that Figure 2-7, are phone --
20 strike that.
21      The -- can you tell me what's in that
22 figure, 2-7?
23   **A  Again, I haven't reviewed this in several**
24 **years.  I don't recall exactly what all the**
25 **components of this window are.**

---

62

1    Q  When you provided your opinions on
2  Sidekick in your most recent report, what did you
3  do to review your understanding of what Sidekick
4  disclosed?
5    **A  I was primarily relying on my memory of**
6  **what Sidekick disclosed.**
7    Q  Did you look at the handbook at all?
8    **A  No.**
9    Q  Did you look at any of the evidence that
10 you presented at trial for the Sidekick device,
11 for example, the video or anything else?
12   **A  Well, I was going to say, I don't recall**
13 **what evidence I provided at trial.**
14   Q  Did you look at anything in connection
15 with preparing your most recent report with
16 respect to Sidekick or was it all memory?
17   **A  It was my memory.**
18   Q  Can you tell me just looking now what's
19 shown in this Figure 2-7?
20      MR. ERWINE:  Objection, asked and
21 answered.
22   **A  I just -- at this point, I mean, I can**
23 **just tell you that this appears to be an excerpt**
24 **from the handbook and it's labeled Dialer Window,**
25 **and my best recollection is this is the Dialer**

---

63

1  **Window.**
2    Q  Now, in Sidekick the only action that was
3  allowed was dialing, correct?
4    **A  As I say, I don't recall.**
5    Q  Do you recall -- did you review your
6  testimony from trial in connection with preparing
7  your expert report regarding the design-arounds?
8    **A  I reviewed portions of it.**
9    Q  Did you review the portions that -- in
10 which you discuss Sidekick?
11   **A  No.**
12   Q  Do you know -- well, looking at this
13 Figure 2-7, you only see telephone numbers and
14 names associated with those telephone numbers
15 there, right?
16   **A  I'm not sure what you mean when you say**
17 **you only see.**
18   Q  Is it correct that this figure discloses a
19 menu of actions that enable the selection of an
20 action?
21      MR. ERWINE:  Objection, vague, calls for a
22 legal conclusion, asked and answered.
23   **A  As I say, I don't recall my testimony, to**
24 **the extent I gave any, on Figure 2.7.**
25   Q  What we know is that when you provided

---

64

1  this invalidity report, you stated as a fact that,
2  "The Sidekick handbook already discloses the use
3  of a menu of actions that enables the selection of
4  an action," right?
5    **A  That's certainly what's written in the**
6  **report.**
7    Q  As far as you know, that's accurate?
8    **A  Yes.**
9    Q  You're not withdrawing that testimony or
10 modifying it, are you?
11   **A  No.**
12   Q  Now, if a pop-up menu only contains
13 choices for telephone numbers to dial, would that
14 be multiple actions or a single action?
15      MR. ERWINE:  Objection, vague, incomplete
16 hypothetical.
17   **A  Yeah, I -- I can't answer that as asked.**
18 **That's too vague.**
19   Q  In the DA2 devices in which there's more
20 than one potential application to use for dialing
21 and the user hasn't selected a preference for one,
22 then there may be a ResolverActivity pop-up menu
23 that allows the user to select from among those
24 two choices, right?
25      MR. ERWINE:  Objection, vague.

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

17 (65 to 68)

65

1    A  Let me make sure I understand this.  So
2  you're saying in DA2 --
3    Q  Yes.
4    A  -- in certain instances it's possible to
5  get a resolver menu that would show, say, two
6  applications that you could use to complete an
7  action?  That I agree with.
8    Q  In your report, Exhibit 1 -- hold on to
9  the Sidekick because we're going to compare -- on
10  Page 48 --
11    A  Okay.
12    Q  -- again, I'm going to ask you about the
13  figure on the top of that page.  So the figure is
14  actually discussed on the previous page starting
15  at Paragraph 107.
16    A  Sure.
17    Q  So this figure on the top of Page 48 shows
18  a ResolverActivity pop-up window for phones in the
19  DA2 devices, correct?
20    A  Yes.
21    Q  This pop-up menu discloses a menu of
22  actions that enable the selection of an action,
23  fair?
24      MR. ERWINE:  Objection, vague, calls for a
25  legal conclusion.

66

1    A  No.
2    Q  So how is the ResolverActivity pop-up
3  window shown on Page 48 of your report different
4  from the Dialer Window shown in Paragraph 37 --
5  374 -- I'm sorry -- of your invalidity report?
6      MR. ERWINE:  Objection, vague.
7    A  Well, they're fundamentally different, and
8  they're fundamentally different because in this
9  case the ResolverActivity dialogue that's
10  appearing is asking you to choose an application
11  to complete an action.  It's not listing phone
12  numbers to dial, like 2.7, and it's not listing
13  actions.
14    Q  So does Figure 2.7, the fact that it has
15  multiple phone numbers, indicate to you that it
16  has multiple actions?
17      MR. ERWINE:  Objection, vague, calls for a
18  legal conclusion.
19    A  I didn't state that.  I just simply said
20  it has -- we can just focus on the one that's
21  highlighted.  There's at least one phone number
22  there.  There are no phone numbers listed on the
23  figure on Page 48 of Exhibit 1.
24    Q  Is the fact that the Dialer Window for the
25  Sidekick that it has multiple phone numbers, does

67

1  that make it capable of -- strike that.
2      Does the fact that the Sidekick handbook
3  Dialer Window discloses multiple phone numbers
4  indicate that it is a menu of actions that enable
5  the selection of an action?
6      MR. ERWINE:  Objection, vague, calls for a
7  legal conclusion.
8    A  So, as I say, I don't recall my testimony
9  on Sidekick.  So I'm sorry, but I can't
10  characterize Sidekick for you any better than I
11  have.
12      I can tell you -- I've told you what I
13  think the differences between the figure on
14  Page 48 are, and without knowing precisely what
15  the opinions were on Sidekick, I can tell you that
16  there is a fundamental difference between what's
17  shown on Page 107 of Exhibit 4 versus Page 48 of
18  Exhibit 1.
19    Q  I'm asking you, I guess, what is the
20  fundamental difference that you see in Figure 2.7
21  that shows that it discloses a menu of actions
22  versus the ResolverActivity pop-up window shown on
23  Page 48 of your most recent report?
24      MR. ERWINE:  Objection, vague, asked and
25  answered, calls for a legal conclusion.

68

1    A  I'm not opining here on Figure 2.7.  I
2  haven't given you testimony on exactly what Figure
3  2.7 does.  I'm just simply telling you a
4  difference between the figure on Page 48 of
5  Exhibit 1 and what's on Figure 2.7 of Exhibit 4.
6      MR. WALDEN:  All right, let's take a
7  break.
8      THE VIDEOGRAPHER:  It is 10:36 a.m.  We
9  are going off the record.
10      (A recess was taken.)
11      THE VIDEOGRAPHER:  It is 10:54 a.m.  We're
12  back on the record.
13  BY MR. WALDEN:
14    Q  Dr. Jeffay, if you could pull out your
15  invalidity report again.
16    A  Sure.
17    Q  Turn to Page 149.
18    A  Got it.
19    Q  I direct your attention to Paragraph 320.
20    A  Okay.
21    Q  You can look around for context as you
22  need, but here it states, again for Sidekick
23  handbook, it says, "Once picked off the screen,
24  the dialer uses 'conventions' patterns to parse
25  the content of the document and identify telephone

Case 5:12-cv-00630-LHK   Document 2259-4   Filed 04/16/18   Page 20 of 107
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

18 (69 to 72)

---

**69**

1  numbers and link them to actions."
2      Do you see that?
3  **A  I do.**
4      Q  Do you have an opinion now as to whether
5  Sidekick allows for linking to multiple actions or
6  to a single action?
7  **A  I don't recall how I opined on that**
8  **question.**
9      Q  Do you have an opinion now regarding
10  whether the Sidekick allows for linking to
11  multiple actions or only to a single action?
12  **A  I think the opinions that I had are**
13  **documented in this report, and I don't believe**
14  **that they've changed.**
15      Q  Back to your most recent report, please,
16  Exhibit 1.
17  **A  Okay.**
18      Q  Turn to Paragraph 73.
19  **A  73?**
20      Q  73.
21  **A  Okay.**
22      Q  Now, as counsel for Samsung corrected me
23  this morning, the asserted claim in the trial in
24  this case was Claim 9, right?
25  **A  That's correct.**

---

**70**

1      Q  And do you recall that near the end of the
2  trial in this case there was a construction --
3  claim construction that came down from the Federal
4  Circuit on an appeal that had been initially
5  decided by Judge Posner?
6  **A  I recall, yes.**
7      Q  And then you and Dr. Mowry came back for
8  close to the last day of trial and testified
9  regarding those constructions and whether they
10  changed your opinions.  Do you recall that?
11  **A  I do.**
12      Q  And you have applied those constructions
13  in your analysis in your most recent report for
14  the design-arounds, correct?
15  **A  Correct.**
16      Q  Here on Paragraph 73 you are opining that
17  there's a difference in how Claim 9 should be
18  construed with respect to the term "actions" in
19  Claim 1, correct?
20      MR. ERWINE:  Objection, mischaracterizes
21  the witness's testimony.
22  **A  Yeah, I think that mischaracterizes what**
23  **I've done here.**
24      Q  How so?
25  **A  I'm not construing the term.  I'm just**

---

**71**

1  **saying that the plain words here -- I'm just**
2  **describing what the actual literal words in the**
3  **claim are, that Claim 9 has -- requires a pop-up**
4  **menu of linked actions and that the word "actions"**
5  **is plural.**
6      Q  Are you providing a claim construction for
7  Claim 9 in Paragraph 73 or not?
8      MR. ERWINE:  Objection, vague, calls for a
9  legal conclusion.
10  **A  I don't view that I'm construing the**
11  **claims here.  I'm applying the construction from**
12  **the Fed circuit and then -- I've applied that**
13  **throughout.  And what's happening in Paragraph 73**
14  **here is that I'm just explaining the Federal**
15  **Circuit construction.**
16      Q  When the Federal Circuit's construction
17  came down and it was applied in the original
18  trial, it was applied to Claim 9, right?  That was
19  the asserted claim, correct?
20      MR. ERWINE:  Objection, vague.
21  **A  My understanding is it applied to Claim 1**
22  **which of course informed -- you know, becomes part**
23  **of Claim 9.  Is that what you're -- are we on the**
24  **same page or are you asking something different?**
25      Q  I guess my question is if your -- is it

---

**72**

1  your opinion that the claim construction that came
2  down for the term "linking actions" in that
3  phrase, did it apply only to Claim 1 or did it
4  apply to Claim 9 as well?
5      MR. ERWINE:  Objection, vague, calls for a
6  legal conclusion.
7  **A  Yeah, I'm not sure what you're asking.  I**
8  **mean, the understanding of Claim 1 carries into**
9  **Claim 9 because Claim 9 is a dependent claim.**
10      Q  Right.  And Claim 1 only requires,
11  according to the construction, one or more
12  actions, right?
13      MR. ERWINE:  Objection, vague.
14  **A  You're reading a little out of -- I**
15  **mean -- out of context, but I mean, the statement**
16  **is what the statement is, that the claims -- the**
17  **claims that I believe -- and these were referring**
18  **to Claims 1 and 8 at the time -- do not require**
19  **multiple actions for each structure.  Therefore,**
20  **actions can be read as -- within the context of**
21  **1 and 8 to be one action per structure -- at least**
22  **one -- sorry, at least one action per structure.**
23      Q  And do you believe that Claim 9 should be
24  construed differently to require more than one
25  action?

---

**73**

1    MR. ERWINE: Objection, vague.
2    A So, again, I'm not construing Claim 9.
3 I'm just simply saying that the literal language
4 says, of actions, is a plural. So a person of
5 ordinary skill in the art I think would understand
6 that the pop-up menu has to have more than one
7 linked action.
8    Q Claim 9 depends from Claim 1, correct?
9    A Yes.
10    Q Claim 9 states, "the linked actions."
11    Do you see that?
12    A Let's use the patent rather than -- yes,
13 "the linked actions."
14    Q And do you understand that a term with the
15 term "the" in front of it should have an
16 antecedent basis, correct?
17    MR. ERWINE: Objection, calls for a legal
18 conclusion.
19    A I have some understanding of that.
20    Q What is the antecedent basis for the
21 linked actions -- strike that.
22    What would a person of ordinary skill in
23 the art understand to be the antecedent basis for
24 the linked actions in Claim 9?
25    MR. ERWINE: Objection, calls for a legal

---

**74**

1 conclusion, vague.
2    A So in my opinion, a person of ordinary
3 skill in the art would understand that the
4 antecedent basis is the linked action that is
5 recited in the limitation, "a user interface
6 enabling the selection of a detected structure and
7 a linked action."
8    Q So the antecedent basis for the plural
9 linked actions in Claim 9 is the singular linked
10 action in Claim 1 in the user interface
11 limitation. Is that your understanding?
12    A Well, my understanding is that in
13 interpreting patents when a patentee says a
14 something, that that is to be interpreted as one
15 or more. So when it says a linked action, my
16 understanding is that that can be satisfied by one
17 or more linked actions.
18    So the fact that 9 is plural and the
19 language we're talking about in Claim 1 is a
20 linked action, that there's no -- there's no
21 inconsistency there.
22    Q The antecedent basis for delinked actions
23 in Claim 9 is linking actions in Claim 1, correct?
24    MR. ERWINE: Objection, calls for a legal
25 conclusion.

---

**75**

1    A So I don't believe a person of ordinary
2 skill in the art would agree with you.
3    Q Why not?
4    A Because linked -- linked actions in
5 Claim 9 is a noun, it's a thing. What you're
6 referring to there is a verb, is the act of
7 linking; whereas the noun is in the next
8 limitation.
9    Q The actions is in both, right, and that's
10 a noun?
11    A Sure, but the phrase we're talking about
12 is not actions; it's linked actions.
13    Q Right. And the earlier phrase that we're
14 talking about is linking actions, right?
15    A Right, and that's a verb phrase; that's an
16 action.
17    Q So once those actions have been linked --
18    A May I complete my answer?
19    Q I'm sorry, I thought you were finished.
20    A Yes, linking appears in the passage you're
21 referring to, but that is an action, and Claim 9
22 is a noun, and the noun is found in the user
23 interface limitation.
24    Q A person of ordinary skill in the art
25 would understand that after the analyzer server

---

**76**

1 detects structures in the data and links actions
2 to the detected structures, then those would be
3 linked actions, correct?
4    MR. ERWINE: Objection, calls for a legal
5 conclusion, vague.
6    A The actions that are linked there become
7 linked actions, factual, yes.
8    Q Now, linking actions in Claim 1 has been
9 construed to require only one or more action,
10 correct?
11    MR. ERWINE: Objection, mischaracterizes
12 the court's decision.
13    THE WITNESS: Thank you.
14    A Yes.
15    Q You tell me, how does it mischaracterize?
16    A I'll tell you exactly. Because what it
17 says is that you --
18    MR. ERWINE: Calls for a legal conclusion.
19    Sorry.
20    A What my read of this -- I think the plain
21 language says -- is that there has to be multiple
22 actions. It just doesn't require that the actions
23 be linked to a single structure.
24    Q So it requires -- Claim 1, linking
25 actions, requires only one action per structure,

**77**

1 correct?
2      MR. ERWINE:  Objection, mischaracterizes
3 the witness's testimony.
4      Q  One or more.
5      A  It doesn't require that.  It encompasses
6 that.
7      Q  Claim 1 also describes only a singular
8 action that needs to be -- strike that.
9      Claim 1 also requires that the user
10 interface enable the selection of a linked action,
11 singular, correct?
12      MR. ERWINE:  Objection, calls for a legal
13 conclusion.
14      A  So the word there is a linked action, as
15 I've said.  My understanding is that in the scope
16 of patent claims, when you recite a noun, that can
17 be satisfied -- that encompasses one or more.  So
18 that -- that it encompasses plural actions in this
19 particular case.
20      Q  And so you are saying that a person of
21 ordinary skill in the art -- strike that.
22      Are you saying that a person of ordinary
23 skill in the art reading Claim 9 knowing the
24 antecedent basis from Claim 1 would understand
25 that Claim 9 requires more than one action to be

**78**

1 included in that pop-up menu?
2      MR. ERWINE:  Objection, calls for a legal
3 conclusion.
4      A  A person of ordinary skill in the art
5 reading Claim 9, understanding the antecedent
6 basis, would say that the pop-up menu has to have
7 more than one linked action.
8      Q  Is that a claim construction?
9      MR. ERWINE:  Objection, calls for a legal
10 conclusion, vague.
11      A  In my mind it's not, simply because it's
12 just acknowledging -- I don't think it's a
13 construction to say that a plural noun requires
14 more than one.
15      Q  Right.  Even though, again, there was a
16 dispute earlier in whether the plural noun of
17 linking actions required more than one action per
18 structure or not?
19      A  I don't think there is -- I'm not aware
20 that there's a dispute there.  I think the court
21 gave us a construction for linking actions.
22      Q  In the DA2 devices, the ResolverActivity
23 pop-up menu provides one or more choices to the
24 user, correct?
25      A  It provides one or more choices for

**79**

1      applications that can be used to complete the
2 action.
3      Q  Have you previously provided the opinion
4 that the pop-up menu in Claim 9 requires plural
5 actions before your report on the design-around
6 products?
7      A  I don't recall that that was ever an issue
8 previously.  So I guess I don't recall.
9      Q  Turn to Paragraph 103 of your most recent
10 report, please, Exhibit 1.
11      A  Okay.
12      Q  Just to put it in context, Paragraph 103
13 is in a section that is entitled, The Unaccused
14 ResolverActivity Functionality.  Do you see that
15 from Page 35?
16      A  I do.
17      Q  If you need to look to get any context,
18 please do.
19      Here you're talking about the
20 ResolverActivity code in Paragraph 103.  Is that
21 right?
22      A  Correct.
23      Q  Where you state this code?
24      A  Yes.
25      Q  You state that, "The ResolverActivity code

**80**

1 is part of the Android framework and is shipped
2 with the Android Open Source."
3      Do you see that?
4      A  Yes.
5      Q  So what do you mean there by the Android
6 Open Source?
7      A  My understanding is this is part of the
8 public -- publicly available Android code base?
9      Q  Did you analyze whether Samsung modified
10 that Android code base in any relevant way for the
11 purposes of your most recent report?
12      MR. ERWINE:  Objection, vague.
13      A  I did look at the -- this code and the
14 code that exists in the design-around products to
15 see how similar or different they were, and my
16 conclusion was that they're essentially the same.
17      Q  And so that -- so is it fair then to
18 deduce that your conclusion was that Samsung did
19 not modify the code in any significant way?
20      MR. ERWINE:  Objection, mischaracterizes
21 the witness's testimony.
22      A  I would say that for the purposes of the
23 analysis here, I didn't find any relevant
24 differences.
25      Q  Did you -- strike that.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

21 (81 to 84)

---

81

1    You analyzed ResolverActivity code from
2  the -- from certain infringing devices, correct?
3    **A  From the versions of Android that was on**
4  **the accused infringing devices, yes, and that's,**
5  **for example, what's shown here.**
6
7
8
9
10    MR. ERWINE:  Objection, vague.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

82

1
2
3
4
5
6
7
8    Q  Samsung could have removed the
9  ResolverActivity pop-up window from the
10 design-around products, correct?
11    MR. ERWINE:  Objection, calls for a legal
12 conclusion.
13    **A  I don't know that that's the case.**
14    Q  Did you analyze that -- did you look into
15 that question at all?
16    **A  No.**
17
18
19
20
21
22
23
24    MR. ERWINE:  Objection, calls for
25 speculation.

---

83

1
2
3
4
5
6
7
8
9    Q  Turn to Paragraph 104 of your report,
10 please, Exhibit 1.
11    **A  Okay.**
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

84

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



**Page 85**

**Page 86**

2  MR. ERWINE:  Objection.

4  MR. ERWINE:  Objection, mischaracterizes
5  the evidence.
6  MR. WALDEN:  Strike that.

**Page 87**

**Page 88**

4  Q  So you say here on Paragraph 46, 106, you
5  say, "The ResolverActivity menu is not a menu of
6  actions.  Instead, it is a menu of activities."
7  Do you see that?
8  A  I do.
9  Q  What is the difference between an action
10  and an activity?
11  A  Well, action is a term in the patent, and
12  as Dr. Mowry has applied the claims, an action has
13  been a primitive -- a primitive action that a user
14  wants to perform, such as dial a phone number.
15  An activity is an Android phrase that is
16  essentially their reference to an application.  So
17  it's not -- it's different from an action.
18  Q  The ResolverActivity pop-up menu does
19  present at least one action to the user, correct?
20  MR. WALDEN:  Objection, mischaracterizes
21  the evidence.
22  A  No, I would not say that.
23  Q  The ResolverActivity pop-up menu allows
24  the user to, for example, open an email
25  application if they have selected an email in



89

1  Messenger, correct?
2      MR. WALDEN:  Same objection.
3      A  What the ResolverActivity menu is allowing
4  you to do is to complete an action that was
5  previously -- the user has previously requested.
6      Q  So your testimony is that the
7  ResolverActivity pop-up menu presents zero actions
8  to the user?
9      MR. WALDEN:  Objection, mischaracterizes
10 the witness's testimony.
11     Q  Tell me if I have.
12     A  What I'm saying is that the
13 ResolverActivity menu does not present a list of
14 actions.  It presents a list of options for
15 completing an action that the user has already
16 requested.
17     Q  Turn to the next page of your report,
18 still looking at Paragraph 106.
19     A  Okay.
20     Q  In here you have a description of -- a
21 discussion of the difference between explicit
22 intents and implicit intents.  Do you see that?
23     A  I do.
24
25

90

1
2
3      MR. WALDEN:  Objection, vague.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21     Q  So is it your opinion that the use of an
22 explicit intent makes the design-around DA2 more
23 than colorably different than the use of an
24 implicit intent?
25     MR. WALDEN:  Objection, mischaracterizes

91

1  the witness's testimony.
2      A  I'm not -- the issue here is that this is
3  completely different processing than the jury saw.
4  This is a completely different theory of
5  infringement that the jury saw.
6      It's also my testimony that the use of the
7  resolver menu -- it's hard to work this into a
8  colorably different analysis because my
9  understanding of the colorably different analysis
10 is you compare what was old to what was new to
11 what was modified.  This is not a modification.
12 This is function that existed prior to the
13 design-arounds.
14     Q  In the accused infringing devices, when a
15 user selected from the contextual pop-up menu,
16 startActivity was called and an intent was passed,
17 correct?
18     A  Yes.
19
20
21
22
23     MR. WALDEN:  Objection, mischaracterizes
24 witness's testimony.
25

92

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19     MR. WALDEN:  Objection, mischaracterizes
20 witness's testimony.
21     Q  Have I?
22     A  Absolutely.
23     Q  Tell me why.
24     A  I suggest you go back and read my previous
25 answer about colorable differences with respect to

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

24 (93 to 96)

---

**93**

1 something that is not new. This is function that
2 existed prior to the design-arounds. My
3 understanding of colorable differences, it applies
4 to things that have been changed or modified, and
5 this is function that existed prior to the
6 design-arounds.
7    Q  Assume, if you would hypothetically, that
8 this is function that didn't exist prior to the
9 design-arounds, okay, and that the change had been
10 simply from moving from a contextual pop-up menu
11 to a ResolverActivity pop-up menu, okay, that it
12 didn't preexist but that's been -- that was the
13 change.
14    Do you follow me so far?
15    A  Sure.
16    Q  Would that ResolverActivity pop-up menu in
17 that instance be more than colorably different or
18 not?
19    MR. WALDEN:  Objection, incomplete
20 hypothetical.
21    A  It would be more than colorably different
22 for many reasons, not the least of which is the
23 fact that the ResolverActivity menu is not a list
24 of linked actions. It's not a list of linked
25 actions, and it's not a list of actions plural.

---

**94**

1    And the manifestation of that is the fact
2 that it is a different code trace resulting in
3 different processing, and the processing is
4 different than what was shown to the jury, and
5 it's different I think in a significant way.
6 ████████████████████████████████
7 ████████████████████████████████
8 ████████████████████████████████
9 ████████████████████████████████
10    Q  What about explicit intents would a person
11 of ordinary skill in the art understand makes them
12 different in a relevant way from implicit intents?
13    MR. WALDEN:  Objection, vague.
14    A  The processing of them is different, and
15 the whole purpose of them is different.
16    Q  How so?
17    A  Explicit intents provide information --
18 with implicit intents there's an entire secondary
19 resolution process that you have to go through to
20 determine essentially what's the activity that's
21 going to perform the action. That's processing
22 that does not occur with explicit intents. It's
23 different processing, and I think it's a
24 significant difference.
25    Q  Previously before the -- strike that.

---

**95**

1    At the trial you provided the opinion that
2 the implicit intents did not significantly connect
3 the linked action to the actually launching of the
4 action. Is that right?
5    A  Correct.
6 ████████████████████████████████
7 ████████████████████████████████
8    MR. WALDEN:  Objection, vague.
9 ████████████████████████████████
10 ████████████████████████████████
11 ████████████████████████████████
12 ████████████████████████████████
13 ████████████████████████████████
14 ████████████████████████████████
15 ████████████████████████████████
16    Q  If you change the code to make it more
17 infringing, that would not be a change that would
18 make it more than colorably different, would it?
19    MR. WALDEN:  Objection, vague, calls for a
20 legal conclusion.
21    A  More infringing, as far as I know, is not
22 a concept, so I don't understand your question.
23    Q  Your opinion previously was that an
24 implicit intent rather than an explicit intent did
25 not create a direct enough connection, correct?

---

**96**

1    A  That's part of my --
2    MR. WALDEN:  Objection, mischaracterizes
3 the witness's testimony.
4    A  That was part of my testimony.
5    Q  So modifying a product to enable an
6 explicit intent would not remove it from
7 infringement, would it?
8    MR. WALDEN:  Objection, mischaracterizes
9 the evidence.
10    A  I don't understand your question.
11    Q  Turn to Paragraph 110 of your report,
12 please. Here you see a -- you have a section
13 where you're discussing Dr. Mowry's earlier report
14 on some Gingerbread phones. Is that right?
15    A  Yes.
16    Q  Now, let's look at the figure on Page 49
17 or the selection there with the three photos.
18 What is the menu in the middle photo called?
19    A  I don't recall what the name of -- what
20 Android would call that menu.
21    Q  In the Gingerbread phones, that menu,
22 whatever it's called, would be displayed prior to
23 the display of the ResolverActivity pop-up menu,
24 correct?
25    A  In this example, yes.

---

97

1    Q  Does the center menu -- strike that.
2        On Page 49, the pop-up menu in the middle
3    there, does it display a menu of linked actions?
4        MR. WALDEN:  Objection, calls for a legal
5    conclusion.
6    A  No.
7    Q  Assuming that the accused phones infringe,
8    what is your opinion as to whether the phone
9    that's shown here in Page 49 would infringe
10   Claim 9 of the '647 patent?
11       MR. WALDEN:  Objection, calls for a legal
12   conclusion.
13   A  Sorry, you have infringe in there twice in
14   your question.  I'm not --
15   Q  Assuming the accused infringing phones
16   infringe, right, so take that as your assumption.
17   A  Right.
18   Q  What is your opinion as to whether the
19   Gingerbread phones that are disclosed here -- or
20   discussed here in your report infringe?
21       MR. WALDEN:  Objection, vague, calls for a
22   legal conclusion, incomplete hypothetical.
23   A  I mean, I understand that the infringing
24   phones infringe, but this was an analysis -- this
25   is a scenario that the jury never considered.

98

1    Q  Right.  I'm asking you as the expert --
2    sorry -- to consider it and tell me what your
3    opinion is.
4        MR. WALDEN:  Same objections.
5    Q  If you have one.
6    A  I mean, I have never seen -- you'd have to
7    show me what the infringement analysis for this
8    example was.  I did not make an infringement
9    analysis for this phone, for this use case.
10   Q  In the photo in the middle on Page 49 in
11   that menu, does it display a linked action?
12       MR. WALDEN:  Objection, calls for a legal
13   conclusion, incomplete hypothetical.
14   A  I don't recall the analysis of this
15   example with sufficient detail to answer your
16   question.
17   Q  Turn to Paragraph 141, please, in
18   Exhibit 1.
19   A  Okay.
20   Q  In here you quote from Dr. Mowry's
21   rebuttal report in several instances.  Do you see
22   that, carrying over to Page 78?
23   A  Yes.
24   Q  Let's look at one of the quotes that you
25   included on Page 78, starting at line 4.  Starts,

99

1    "In addition"?
2    A  Got it.
3    Q  "In addition, since Sidekick discloses at
4    most a single allegedly linked action, (i.e.,
5    dialing a phone number), there is no need for a
6    pop-up menu of linked actions since there are no
7    other allegedly linked actions to choose."
8        Do you agree with Dr. Mowry's statement
9    here?
10   A  I mean, this is in here for the notion
11   that if you have a single linked action, there's
12   not going to be a need for a pop-up menu.  So I
13   agree with the general design sentiment here.
14   Q  In the DA2 devices, the ResolverActivity
15   pop-up menu appears because there's a need for it,
16   correct?
17       MR. WALDEN:  Objection, vague.
18   A  Because there's a need for it?
19   Q  Yes.
20       MR. WALDEN:  Same objection.
21   A  Sure.
22   Q  Turn back to Paragraph 136 of your report.
23   A  Okay.
24   Q  No, I meant Page 136, Paragraph 309.
25   A  309?

100

1    Q  We're looking at the wrong report.  It's
2    in your prior invalidity report.
3    A  Okay.
4    Q  Sorry about that.
5    A  Page 136 you say?
6    Q  Yes, Page 136.  Paragraph 309, down at
7    line 22, do you see that?
8    A  I do.
9    Q  So you said, "After reviewing these
10   materials, it is my opinion that the Sidekick
11   system, in particular the dialer feature,
12   anticipates or renders obvious Claims 1, 4, 6, 8
13   and 9 of the '647 patent.  As far as a user is
14   concerned, there is no difference between the
15   functionality provided by the Sidekick system and
16   the functionality Apple says is covered by the
17   '647 patent."
18       My question is about that second sentence.
19   Why is it your opinion that, as far as a user is
20   concerned, there's no difference between the
21   functionality provided by the Sidekick system and
22   the functionality Apple says is covered by the
23   '647 patent?
24   A  Again, I haven't reviewed this analysis in
25   several years, so I don't recall exactly what the

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

101

1  argument being made here is.

2     Q  Do you believe that the user experience is
3  relevant to whether Sidekick anticipates or
4  renders obvious the claims of the '647 patent?

5        MR. WALDEN:  Objection, vague, calls for
6  legal conclusion.

7     A  I mean, again, I don't recall the analysis
8  here with sufficient detail to answer your
9  question.

10    Q  Okay.  Back to Exhibit 1, please.
11 Actually, setting aside the report, although
12 you're welcome to look at it at any time.

13       What type of gestures are possible using a
14 finger on a screen in the Samsung design-around
15 devices?

16    A  There's several.  There's short press,
17 long press.  There's something called swipe.  I
18 mean, those -- there's several.  I mean, those are
19 the ones that I recall off the top of my head.

20    Q  How about two fingers tap or two finger
21 use of the screen, do you know if that has any
22 effect on the design-around phones?

23    A  If it has any effect on the
24 design-arounds?

25    Q  Does it have a different effect than a

102

1  single finger?

2        MR. WALDEN:  Objection, vague.

3     A  Yeah, I'm not sure what you're -- what
4  you're asking.

5     Q  Can you pinch a screen, do you know?

6     A  I assume you mean the pinch gesture?

7     Q  Yes.

8     A  Yes, you can do that.

9     Q  Any other gestures that you're aware of
10 that can be used with the finger on the screen in
11 the design-around devices?

12    A  I don't think the design-arounds changed
13 the set of finger gestures that you could do.  So
14 I believe anything you could have done before the
15 design-arounds you can do after.

16    Q  Now, do you believe that a long press is a
17 more deliberate gesture than a short tap?

18       MR. WALDEN:  Objection, vague.

19    A  I don't believe I've expressed that
20 opinion.  I know that opinion was presented by
21 Dr. Mowry, and that was a very important opinion
22 to his -- to some of his infringement theories.

23    Q  Do you agree with it?

24    A  My belief is it's a different -- it's a
25 different user gesture.

103

1     Q  A short tap is a user gesture, correct?

2     A  Correct.

3     Q  And as interpreted by the Samsung devices
4  themselves, it's interpreted as a deliberate
5  gesture, correct?

6     A  I'm not following when you say as
7  interpreted by the Samsung devices.

8     Q  Well, is the short tap a deliberate
9  gesture as far as you know?

10       MR. WALDEN:  Objection, calls for
11 speculation.

12    A  I'm not following your question.  With
13 respect to what?

14    Q  With respect to the selection, for
15 example, of a structure.

16       MR. WALDEN:  Same objection, calls for
17 speculation, vague.

18    A  Deliberate from the perspective -- I mean,
19 are we talking about how the device operates?

20    Q  Yes.

21    A  There is a difference between a short tap
22 gesture and the other gestures.

23    Q  Is there a difference in terms of whether
24 it's interpreted by the device as deliberate?

25       MR. WALDEN:  Objection, vague, calls for

104

1  speculation.

2

3

4

5     Q  In the DA1-A devices there is a display of
6  a contextual pop-up menu after a short tap in
7  Browser, correct?

8     A  Correct.

9     Q  And that is because the user has selected
10 a structure, correct?

11       MR. WALDEN:  Objection, vague.

12    A  I believe that's correct.

13    Q  And that structure is detected, correct?

14    A  If the user selects the structure, the
15 important point is any detection occurs -- any
16 detection that occurs happens after the user
17 selection has been complete.

18    Q  How long in the accused devices -- strike
19 that.

20       How long in the accused infringing devices
21 did a user have to leave his or her finger on a
22 structure before it was considered a long tap?

23

24

25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

27 (105 to 108)



**105**

14     MR. WALDEN:  Objection, mischaracterizes
15 the evidence.

19     Q  So assume -- let's assume for now that
20 we're talking about the common example which is
21 the difference between short press and long press
22 is one second, okay, is the difference between
23 whether it's before or after one second, okay?
24     **A  Okay.**
25     Q  In the accused devices, if the user

**106**

1 pressed on -- their finger on a structure for 1.01
2 seconds, a contextual pop-up menu would occur,
3 correct?
4     **A  I don't think there is any empirical data**
5 **to show that.  You're providing essentially a**
6 **hypothetical, but it is certainly the case that it**
7 **occurs after one second.  There's been no evidence**
8 **in this case as to the precision or the resolution**
9 **of that timing process.**
10     Q  In the accused devices if the user
11 pressed -- put their finger down on the structure,
12 a timer would be set off, correct?
13     **A  If the user put their -- pressed their**
14 **finger to the screen, a timer is started, correct.**
15     Q  And presumably that timer was accurate,
16 correct?
17     MR. WALDEN:  Objection, calls for
18 speculation.
19     Q  Or not, you tell me.
20     **A  The timer is what the timer is.  I don't**
21 **think anyone in this case has done any analysis as**
22 **to the accuracy of the timer.**
23     Q  If the device, the accused device,
24 calculated that the user had placed their finger
25 on a structure for 1.01 seconds, then a contextual

**107**

1 pop-up menu would be displayed, correct?
2     MR. WALDEN:  Objection, incomplete
3 hypothetical.
4     **A  As I say, you're asking a quantitative**
5 **question.  There is no evidence as to what the**
6 **precision of the timer process is and to what**
7 **delay there's going to be between the press and**
8 **the presentation of the menu.**
9     Q  You need to listen to my question.  Okay?
10 I wasn't asking about the precision of the
11 process.
12     I was saying if the timer -- if the device
13 concluded based on the timer that the user had
14 left his or her finger on the structure for 1.01
15 seconds, then it would be determined to be a long
16 press, correct?
17     **A  Oh, I see.  So you're not saying that it**
18 **was 1.01 seconds.  You're saying the device**
19 **thought it was 1.01 seconds?**
20     Q  Yes.
21     **A  So all the examples in Dr. Mowry's report**
22 **where he talks about 1.01 seconds, we're not**
23 **talking about any of those examples; we're talking**
24 **about a different example.  I just want to be**
25 **clear of the question.**

**108**

1     Q  You've strown way far from my question.
2     **A  I'm just trying to make sure I understand**
3 **your question.**
4     Q  Well, that wasn't my question.
5     **A  Thank you.  So please re-ask your**
6 **question.**
7     Q  If an accused device in the infringing
8 devices concluded based on the timer that the user
9 had left his or her finger on the structure for
10 1.01 seconds, then the determination would be made
11 that it was a long press, correct?
12     **A  Again, just to make sure I understand your**
13 **question.  You're talking about a case when a**
14 **device makes a determination that a user is going**
15 **to have no knowledge of; so if the device**
16 **determines that it's more than a second, it's**
17 **going to consider it a long press, independent of**
18 **what the user has done.**
19     Q  Right.  And that would be the case for the
20 device determining that the press was for 1.0
21 seconds -- 1.01 seconds, right?
22     **A  Again, I don't recall the precision at**
23 **which -- by which this process makes**
24 **determinations.**
25     Q  So you don't know?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

109

1    A  No, I'm just saying there's been no
2  evidence here about the granularity of the
3  device's use of time.
4    Q  But the -- the evidence was, and is still,
5  right, that a long press occurs if the user -- if
6  the determination has been made that the user left
7  their finger on the structure for more than one
8  second, right?
9      MR. WALDEN:  Objection, mischaracterizes
10 the evidence.
11   A  For more than one second.  We don't know
12 the lower bound there.  So ten seconds, great; one
13 second -- I mean, two seconds, three seconds,
14 great.  The important thing is that the user gets
15 feedback so the user knows when a long press has
16 been completed.
17   Q  Are you sure about that?
18   A  Yes.
19   Q  The user has left their finger down for
20 1.01 seconds.  Is it a long press or not?
21     MR. WALDEN:  Objection, incomplete
22 hypothetical.
23   A  Again, I don't think we know.
24   Q  So you don't know?
25   A  No, what I'm saying is --

110

1    Q  Well, I'm asking:  Do you know or not?
2    A  What I'm saying is there has been no
3  analysis of that specific scenario.  That's a
4  conjecture.
5    Q  So you don't know?
6    A  Nobody in this case knows.
7    Q  Including you?
8    A  Including me.
9    Q  If the determination is made by the device
10 that the user has placed their finger down on a
11 structure for more than one second, then a
12 contextual pop-up menu will be displayed, correct?
13     MR. WALDEN:  Objection, incomplete
14 hypothetical.
15   A  Correct.  Just want to be clear, that's a
16 different scenario than the user pressing their
17 finger down for 1.01 seconds.
18   Q  In the accused devices if the user placed
19 their finger down for 1.4 seconds, would a
20 contextual pop-up menu occur?
21   A  Again, no one has done any analysis as to
22 the precision of this process.  There clearly is a
23 threshold, and nobody has done any analysis of
24 what that threshold is.
25   Q  In the accused devices, the structure had

111

1  been detected before the user lifted his or her
2  finger in long press, correct?
3      MR. WALDEN:  Objection, vague, overly
4  broad.
5    A  That is -- that was Dr. Mowry's
6  contention.
7    Q  Did you contest it?
8    A  I don't believe at trial I provided any
9  testimony on that topic.
10   Q  How long does it take in the Samsung
11 devices to detect structures in Messenger or in
12 Browser?
13     MR. WALDEN:  Objection, vague.
14   A  I don't believe anyone has done any
15 analysis of that question.
16   Q  Have you?
17   A  I am operating here in rebuttal capacity.
18 So when there's -- someone provides some data on
19 that question, I would be happy to address it.
20
21
22
23
24
25

112

1
2
3
4    Q  Do you know whether structures are
5  detected before a user lifts his or her finger in
6  the DA1-B devices --
7      MR. WALDEN:  Objection, vague.
8    Q  -- in short press?
9    A  I've seen no evidence that that's the
10 case.
11   Q  You don't know whether or not it's the
12 case?
13   A  I said I've seen no evidence that that's
14 the case.
15   Q  Are you an expert in source code?
16   A  Yes.
17   Q  Are you an expert in how source code gets
18 compiled into binary code?
19   A  Sure, generally.
20   Q  Are you an expert in how source -- binary
21 code gets processed on processors?
22   A  For certain systems, yes.
23   Q  Do you have any opinion as to how long it
24 would take the software that's used to detect
25 structures in Messenger, how long that takes?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

29 (113 to 116)

---

113

1    A  I think it would be determinable.  One
2  could determine that.  And no one has done had
3  that.
4    Q  Is it instantaneous?
5    MR. WALDEN:  Objection, vague.
6    A  In computing, you know -- what is your
7  notion of an instant?
8    Q  Dr. Mowry opined that it's instantaneous.
9  Do you agree?
10   A  No, it takes time.  I don't think it's --
11 if he -- it's not instantaneous.
12   Q  How much time?
13   A  We don't know.  Dr. Mowry doesn't know.
14 He's never provided any evidence as to how much
15 time it takes.
16   Q  Dr. Mowry --
17   A  He's just made qualitative statements like
18 instantaneous.
19   MR. ERWINE:  I'm sorry, I know you don't
20 do it on purpose, but please try not to interrupt
21 his testimony.
22   MR. WALDEN:  I would really love to get a
23 yes or no answer to a yes or no question.  That's
24 why I do it sometimes because it is actually --
25 I'm asking a lot of times yes or no questions, and

---

114

1  it really could just be a yes or no answer.
2    MR. ERWINE:  Again, I just --
3    MR. WALDEN:  Understood.
4    MR. ERWINE:  -- ask you not to
5  interrupt --
6  BY MR. WALDEN:
7    Q  Turn to Page --
8    MR. ERWINE:  -- him or me.
9    Q  -- 183.
10   MR. WALDEN:  But no speechifying, please,
11 thanks.
12   Q  183 of your Exhibit 1.
13   A  Did you say page or paragraph?
14   Q  Paragraph.
15   A  Okay.
16   Q  So you say in the second paragraph -- the
17 second sentence of Paragraph 183, "Samsung
18 modified the user interface for the DA1-B
19 design-around so that the process of detecting a
20 selected structure does not occur until after the
21 user has selected a structure via the initiation
22 of a short tap gesture."
23   How long does it take to detect structures
24 in the DA1-B devices?
25   A  I don't think anyone has done any analysis

---

115

1  of that question.
2    Q  So why do you say then that the process of
3  detecting a structure doesn't occur until after
4  the user has selected a structure?
5    A  Because what I'm saying here is that the
6  detection doesn't begin until -- let's read the
7  whole sentence.  "Samsung modified the user
8  interface for the DA1-B design-around so that the
9  process of detecting a selected structure does not
10 occur until after a user has selected a structure
11 via the initiation of a short tap gesture."
12   So the selection occurs via the initiation
13 of a short tap gesture, and detection will occur
14 after that point.
15   Q  Now, detection occurs -- strike that.
16   The detection process occurs in the DA1-B
17 devices on finger down, correct?
18   A  Detection does not start until finger
19 down.
20   Q  Detection starts in finger down in the
21 DA1-B devices similar -- no, strike that.
22   Detection starts upon finger down in the
23 accused Jelly Bean devices, correct?
24   A  Correct.
25   Q  So is it your opinion that the user --

---

116

1  strike that.
2    Detection starts upon finger down in both
3  the accused Jelly Bean devices and the DA1-B
4  devices, correct?
5    A  Correct, but there's a fundamental
6  difference between the two.
7    Q  The process of detecting a selected
8  structure starts upon finger down in the Jelly
9  Bean devices, correct?
10   A  I assume you're talking about the Browser
11 in Jelly Bean devices?
12   Q  Yes.
13   A  Yes.
14   Q  The process of detecting a selected
15 structure starts upon finger down in the DA1-B
16 devices, correct?
17   A  Correct.
18   Q  Paragraph 185, please, of your Exhibit 1.
19 You say here, "When the user's action is resolved
20 via action up, the ███████ precedes to
21 create a menu."
22   Do you see that?
23   A  I do.
24   Q  And ███████ is referring to the
25 DA1-B design-around Browser, right?

---

---

**117**

1    A  Correct.
2    Q  At that point in time that the -- that
3  there's a creation of a menu, there has been a
4  detection of a structure, correct?
5        MR. ERWINE:  Objection, vague, calls for a
6  legal conclusion.
7    A  We don't know.
8    Q  You can't create a menu until you've
9  detected the structure, can you?
10       MR. ERWINE:  Objection, foundation.
11   A  So --
12   Q  How about this question.  I'll withdraw
13  the question.  Can -- strike that.
14       In the Samsung devices do they -- do the
15  devices create a menu after detecting a structure
16  in the DA1-B devices?
17       MR. ERWINE:  Objection, vague.
18   A  Yes -- well, no.  Let me take that back.
19       There are a number of preconditions for
20  creation of a menu.  And what this passage that
21  we're reading here in Paragraph 185 is not saying
22  that the menu is created on action up.  It's
23  simply saying that the process begins on action
24  up.
25   Q  The Samsung devices can't create a menu

---

**118**

1  for a structure until they've detected that
2  structure, right?
3        MR. ERWINE:  Objection, foundation.
4    A  Yeah, so if we're talking about the
5  context of Paragraph 185 here with the ▮▮▮▮▮
6  ▮▮▮▮▮▮    yes.
7    Q  Turn to Paragraph 190 of your report,
8  Exhibit 1.
9    A  190?
10   Q  Yes.  Now, here you're talking about the
11  Messenger DA1-A devices, right?
12   A  Yes.
13   Q  And the DA1-A Messenger devices, there was
14  a modification made such that structures are not
15  predetected before a user makes a gesture,
16  correct?
17   A  That's part of the modifications.
18   Q  Assume that was the only modification, if
19  you would, please.  Would that modification make a
20  design-around phone more than colorably different
21  than the accused devices or not?
22       MR. ERWINE:  Objection, incomplete
23  hypothetical, calls for speculation.
24   A  Well, I mean, I don't know how that
25  phone -- that's a different design-around, and

---

**119**

1  there's other details you're going to have to
2  specify about how that design-around actually
3  works.
4    Q  Okay.  In the DA1-A Messenger devices,
5  it's not your opinion that simply removing the
6  predetection of those structures makes these
7  phones more than colorably different.  Is that
8  right?
9        MR. ERWINE:  Objection, mischaracterizes
10  the witness's testimony.
11   A  Yeah, I mean, I think I've given a precise
12  basis for why they're more than colorably
13  different, and it includes many, many elements.
14   Q  So are you just not going to be able to
15  answer my question if I say, well, let's take any
16  one element and see whether it's more than
17  colorably different or not?  That's what I'm
18  trying to do and it's --
19   A  That's not an -- my understanding of the
20  analysis is that the issue is is the design-around
21  more than colorably different; not was step 1 more
22  than colorably different; was step 2 more than
23  colorably different.  So what I've done is answer
24  what I thought was the question at issue.
25   Q  Okay, understand, but I'm allowed to kind

---

**120**

1  of explore different issues, including whether you
2  think one or the other factors is more important
3  or by itself stands alone, makes it more colorably
4  different, things like that.  So that's really my
5  question.
6        I mean, you're saying that removing the
7  predetection of structures in the DA1-A Messenger
8  devices is relevant to your analysis.  Is that
9  fair?
10   A  Absolutely relevant.
11   Q  My question is:  Is that modification by
12  itself enough to make the phones more than
13  colorably different?
14       MR. ERWINE:  Objection, calls for
15  speculation.
16   A  I mean, you're talking about a different
17  design-around.  So tell me how your design-around
18  works.
19   Q  Predetecting structures is not required by
20  the claims, fair?
21       MR. ERWINE:  Objection, calls for a legal
22  conclusion.
23   A  What's required by the claims is a user
24  interface that enables the selection of a detected
25  structure.  So structures have to be detected



**121**

1  before they're selected.
2    Q  But predetection of structures does not
3  occur, for example, in the Jelly Bean devices that
4  were found to infringe?
5      MR. ERWINE:  Objection, mischaracterizes
6  the evidence.
7    Q  Correct?  Tell me if it does.
8    **A  The jury in their verdict essentially**
9  **agreed with that proposition.**
10   Q  And therefore you've accepted that
11  proposition for the purposes of your analysis
12  respecting the design-around phones, right?
13     MR. ERWINE:  Same objection.
14   **A  Yes.**
15   Q  And so the fact, for example, that the
16  DA1-B -- strike that.
17     The fact that the DA1-A Messenger devices
18  don't predetect structures does not in and of
19  itself make them more than colorably different,
20  correct?
21     MR. ERWINE:  Objection, calls for a legal
22  conclusion, calls for speculation.
23   **A  I mean, I have not considered that**
24  **modification in isolation.**
25   Q  Paragraph 208 of your report, please,

**122**

1  Exhibit 1.  So in this paragraph you're describing
2  the ResolverActivity functionality from the
3  accused devices, right -- strike that.
4    **A  Yeah.**
5    Q  You're talking about ResolverActivity in
6  this paragraph, right?
7    **A  Yes.**
8    Q  Last sentence of this Paragraph 208, you
9  state, "I also understand that this functionality
10  was not modified for purposes of Samsung's
11  design-arounds because it was not a part of the
12  functionality accused at trial."
13     Do you see that?
14   **A  I do.**
15   Q  How did you come to this understanding?
16   **A  Well, I know that it wasn't part of the**
17  **design-arounds, and the latter part is -- I mean,**
18  **my understanding was that Samsung had available to**
19  **it things that were in the prior art and things**
20  **that were not accused.  And this is an example of**
21  **something that they had available to them that was**
22  **not accused.**
23
24
25

**123**

1
2
3
4
5
6
7      MR. ERWINE:  I just caution the witness
8  not to disclose the substance of communications
9  with counsel that are privileged.
10     MR. WALDEN:  I don't think he can say, I
11  understand a fact, and then hide behind privilege
12  for that fact.
13     MR. ERWINE:  I don't think he's hiding
14  behind privilege.  I don't think he's --
15     MR. WALDEN:  Well, is he going to --
16
17
18
19
20
21
22
23
24
25

**124**

1
2    Q  You're saying in Paragraph 208 of your
3  report that Samsung did not modify the
4  ResolverActivity functionality because it was not
5  part of the functionality accused at trial.  Is
6  that a fair interpretation of that sentence?
7    **A  Yes.**
8    Q  So how do you get to this understanding?
9  How did you understand that that was the reason
10  that Samsung did not modify its functionality?
11     MR. ERWINE:  Objection, mischaracterizes
12  witness's testimony.
13   **A  You were previously asking about removing.**
14   Q  Right.  And I thought you said earlier you
15  didn't know why -- or you didn't ask anybody about
16  whether Samsung considered removing the
17  ResolverActivity pop-up menu.  Was I mistaken?
18   **A  No, with respect to removing, that's**
19  **correct.**
20   Q  So then how is it that you're able to say
21  here that the reason that they didn't remove it
22  was because it was part of the functionality
23  accused at trial?
24     MR. ERWINE:  Objection, mischaracterizes
25  witness's testimony.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

32 (125 to 128)



125

1      A  It was not part of the functionality
2  accused at trial.  And as I say, I had an
3  understanding of the avenues that Samsung had
4  available to it; and because this was not accused
5  at trial, I had an understanding that this was an
6  option that was available to Samsung.
7
8
9
10
11
12
13  they didn't remove the ResolverActivity
14  functionality?
15      A  So this is not talking about removing.
16  This is talking about modifying.  And there was no
17  need or purpose to remove the function.
18
19
20
21
22
23
24
25

126

1
2
3
4
5
6
7
8
9       MR. ERWINE:  Objection, asked and
10  answered.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

127

128

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

33 (129 to 132)

129



13     MR. WALDEN:  I think we're about to run
14 out of tape so we need to take a break.
15     MR. ERWINE:  Do you want to take a lunch
16 break?
17     MR. WALDEN:  Fine with me.  It's up to you
18 guys.
19     THE VIDEOGRAPHER:  It is 12:14 p.m.  We
20 are going off the record.
21     (A lunch recess was taken.)
22     THE VIDEOGRAPHER:  It is 1:18 p.m.  We are
23 back on the record.
24 BY MR. WALDEN:
25

130

20     Q  Pull out Exhibit 1, if you would, to
21 Paragraph 126.
22     A  Okay.
23     Q  And here again you quote from an earlier
24 submission from Dr. Mowry and this time about the
25 Pandit prior art reference.  Is that right?

131

1     A  Yes.
2     Q  The first question is:  Do you know if the
3 Pandit reference is prior art?
4     MR. ERWINE objection, calls for a legal
5 conclusion.
6     A  That is a legal question.  I don't know --
7 in Dr. Mowry's reply he made some statements about
8 how there was a finding at the PTO that Pandit was
9 not prior art.  I'm not aware of the extent to
10 which those findings carry over into a district
11 court litigation, let alone these particular
12 proceedings.
13     So I'm operating under the assumption that
14 it's prior art until, I guess, the court tells me
15 otherwise.
16     Q  Pull out your earlier invalidity report,
17 please.
18     A  Okay.
19     Q  And turn to Page 79, Paragraph 220.  And
20 looking at Paragraph 220 here, you're discussing
21 the Pandit reference, correct?
22     A  Yes.
23     Q  And here you say, "As another example of
24 simultaneous work, Milind Pandit, et cetera" -- et
25 cetera from that sentence.  What did you mean

132

1 there when you said "another example of
2 simultaneous work"?
3     A  Well, I believe, as I recall, Apple and
4 the inventors of the '647 at Apple and Pandit at
5 Intel were working on their respective inventions
6 at about the same time.
7     Q  So am I correct then to understand that
8 you're assuming Pandit is prior art but you don't
9 know whether it's prior art?
10     A  As a legal matter today, I don't know if
11 Pandit is prior art to the '647.
12     Q  Have you assumed that Pandit is prior art
13 to the '647 for the purposes of your analysis as
14 reflected in Exhibit 1?
15     MR. ERWINE:  Objection, overly broad.
16     A  So, for example, for the portion of the
17 report that we were just referring to, Paragraph
18 126, I don't think my opinions here rely on Pandit
19 being prior art or not.
20     Q  Earlier I asked you whether there were --
21 whether there was any prior art that you thought
22 was significant with respect to your analysis of
23 the design-arounds, and you identified Pandit and
24 Sidekick, correct?
25     A  Correct.

133

1    Q  Now, again, is the assumption that Pandit
2  is prior art relevant to your analysis with
3  respect to the design-arounds or not?
4      MR. ERWINE:  Objection, vague, calls for a
5  legal conclusion.
6    **A  There are some aspects in my analysis for**
7  **which Pandit bringing prior art is relevant.**
8    Q  What aspects are those?
9    **A  For my rebuttal, for example, of**
10 **Dr. Mowry's doctrine of equivalents analysis.**
11   Q  Okay.  And if Pandit is not prior art or
12 is found not to be prior art --
13   **A  Excuse me.  Yes?  Sorry.**
14   Q  Are you okay?
15   **A  I'm good.**
16   Q  If Pandit is not found to be prior art --
17   **A  Sorry, if Pandit is found to be or is not?**
18   Q  Is not found to be prior art, then that
19 portion of your analysis will no longer be valid,
20 fair?
21     MR. ERWINE:  Objection, calls for a legal
22 conclusion.
23   **A  No.  I mean, the particular proposition**
24 **I'm relying on for Pandit is it would not be**
25 **valid, but the overall point that I'm making in**

134

1  **the DOE analysis is supported by several**
2  **arguments, Pandit just being one of them.**
3    Q  Right.  But you're saying that Pandit may
4  limit the ability of Apple to claim the doctrine
5  of equivalents for Claim 9 in the '647 based on
6  Pandit but that wouldn't be the case if Pandit is
7  not prior art, correct?
8      MR. ERWINE:  Objection, calls for a legal
9  conclusion.
10   **A  So as I understand it, that one argument**
11 **would not be available.  There are other arguments**
12 **that would still be in play.  So the doctrine of**
13 **equivalents analysis I think that I have in my**
14 **report is still valid independent of whether or**
15 **not Pandit is prior art.**
16   Q  Have you ever offered an opinion as to
17 whether Pandit is prior art to the '647 patent?
18   **A  Prior to this report?**
19   Q  At any time.
20   **A  At any time.  I know that in the**
21 **invalidity analysis I don't think it was charted**
22 **specifically as a reference, so I don't recall**
23 **whether or not I affirmatively stated Pandit was**
24 **prior art in the prior invalidity analysis or not.**
25 **And the operating assumption in the present**

135

1  **report, Exhibit 1, is that it was prior art.**
2    Q  But you don't have an opinion that you
3  state in Exhibit 1 as to why you believe it's --
4  or why you're applying Pandit as prior art,
5  correct?
6    **A  I mean, the report speaks for itself.  I**
7  **don't believe I do an analysis of Pandit's**
8  **qualifications as prior art.**
9    Q  Do you sitting here today have an opinion
10 as to whether Pandit is prior art to the '647
11 patent?
12     MR. ERWINE:  Objection, asked and
13 answered, calls for a legal conclusion.
14   **A  I mean, at the time I wrote this report,**
15 **my assumption was that it was prior art.**
16   Q  Why?
17   **A  I think based on the dates of the patent**
18 **and what I recalled as the priority date for the**
19 **'647 patent.**
20   Q  So your opinion is that the priority date
21 for the Pandit reference is earlier than the
22 priority date for the '647 patent?
23     MR. ERWINE:  Objection, calls for a legal
24 conclusion.
25   **A  I mean, I think that is -- I don't know**

136

1  **that I stated it as such, but I believe that that**
2  **was my assumption.**
3    Q  You did not provide opinions on Pandit in
4  the trial in this case, correct?
5    **A  I think that's correct.**
6    Q  You supplied opinions in your earlier
7  expert report before trial but not at trial,
8  correct?
9    **A  I think that's correct.**
10   Q  In Pandit how did a user select a
11 structure?
12     MR. ERWINE:  Objection, document speaks
13 for itself.
14   **A  Can we look at a copy of Pandit?**
15   Q  Sure.  It's marked as Exhibit -- the next
16 exhibit in order, copy of U.S. Patent 5,859,636.
17     (Exhibit 5 U.S. Patent 5,859,636 marked
18 for identification and attached to the
19 transcript.)
20   **A  So I believe at the top of column 2 of**
21 **Exhibit 5, the first -- the first few lines**
22 **basically describe the options.  It says -- it's**
23 **using the example of a date that's in Figure 1A,**
24 **that a date and text appearing on a monitor is**
25 **accented by shading by, for example, shading,**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

35 (137 to 140)

---

137

1 underlining or pointing to and clicking on the
2 text.
3      So those are examples of how something
4 would be selected.
5   Q  And in doing so, the user had to select
6 the entirety of the structure for the device to be
7 able to recognize the text, correct?
8      MR. ERWINE:  Objection, mischaracterizes
9 the evidence, document speaks for itself.
10  A  I don't know that that's true.  I mean, it
11 simply says here, for example, that you can point
12 and click on the text.
13  Q  And if you point and click only on a
14 single portion of the text, you're likely to get
15 an error message, right?
16  A  I don't recall that disclosure here.  I
17 mean -- let me look at -- yeah, I don't recall
18 that particular disclosure.
19  Q  Accenting text means manually selecting
20 the text.  Is that right?
21  A  I don't know that I would -- I sort of
22 view it a little differently.  The issue is your
23 use of the word selecting, manually selecting.  I
24 think what's disclosed here is again just these
25 three paradigms of shading, underlining or

---

138

1 pointing to and clicking.
2   Q  Why didn't you provide opinions to the
3 jury about Pandit at trial?
4   A  I wasn't asked any questions about Pandit,
5 as best I recall.
6   Q  You were asked whether you found the
7 claims to be invalid and yet you did not provide
8 opinions about Pandit, correct?
9   A  I believe that's correct.
10  Q  Do you believe that Pandit invalidates
11 Claim 9 of the '647 patent under the current claim
12 constructions being applied to that patent?
13     MR. ERWINE:  Objection, vague.
14  A  I haven't done that analysis.
15  Q  Turn to Page 236 of Exhibit 1, please --
16 sorry, Paragraph 236.
17  A  Okay.
18  Q  Here you're talking about the DA1-A
19 design-around and whether it is more than
20 colorably different than the accused devices,
21 correct?
22  A  Correct.
23  Q  And the heading here is, "User Experience
24 Alone Is Irrelevant." On what do you base that
25 statement?

---

139

1   A  Well, I think I provide a basis in this
2 paragraph.  For example, the second sentence that,
3 "When comparing a product of Claim 9 of the
4 patent, source code must also be considered to
5 ensure that the components required by the claim
6 that are not visible to the user are present."
7      So I'm just simply saying that ultimately
8 Claim 9 is a system claim, and it has -- it has
9 requirements that are not going to be discernible
10 to the user.
11  Q  Did you rely on any case law, as far as
12 you know, in making this statement and assumption
13 that user experience alone is irrelevant?
14  A  No.
15  Q  Is user experience relevant at all?
16  A  I think it would depend on the context.
17  Q  Well, in the context of the DA1-A
18 design-around.
19  A  I'm not saying that user experience is
20 irrelevant.  I mean, this is a user interface
21 claim, but what I'm saying here is that, yeah,
22 just the user experience alone should not be the
23 focus.
24  Q  Would you agree that the user experience
25 in the DA1-A design-around phones with respect to

---

140

1 the Browser is similar to the user experience in
2 the accused devices for Jelly Bean with respect to
3 the Browser?
4      MR. ERWINE:  Objection, vague.
5   A  I mean, I think one could argue that there
6 are similarities, but at the same time they would
7 also have to recognize there are significant
8 differences.
9   Q  In user experience?
10  A  Yes.
11  Q  So what do you see as the differences in
12 the user experience between the accused Jelly Bean
13 phones in Browser and the DA1-A design-around
14 phones in Browser?
15  A  They use a different input method.
16  Q  So long press versus short tap?
17  A  Yes.
18  Q  Any other differences from the user
19 experience?
20  A  I mean, that's the primary one.
21
22
23
24
25

141



12  Q  And indeed, they included code in the
13  DA1-A design-around phones to quickly highlight
14  the structure before the contextual pop-up menu
15  appears, correct?

19  Q  They included code in the DA1-A
20  design-around phones to highlight the structure
21  before the contextual pop-up menu appears,
22  correct?
23  A  I think that's correct.
24  Q  How was the code modified in the DA1-A
25  phones in Browser in terms of how detection of

142

1
2      MR. ERWINE:  Objection, vague.
3      A  The key difference is that they design a
4  new user interface based on a new -- on a
5  different user interface interaction and designed
6  it such that detection does not begin until after
7  the user's interaction with the device has
8  completed.
9      Q  The detection functions are called in
10  finger down in the accused Jelly Bean devices in
11  Browser, correct?
12      A  They are called after the finger down
13  event is recognized.
14      Q  And the --
15      A  Excuse me.  I answered that wrong.
16      After the -- so we're talking about DA1-A?
17      Q  No.  In the accused Jelly Bean device.
18      A  I'm sorry, I'm -- post-lunch fog.
19      Q  Understood.
20      The detection functions are called on
21  finger down in the accused Jelly Bean devices in
22  Browser?
23      A  Thank you -- thank you for reading that.
24  Yes, they follow after the finger down event.
25      Q  And the modification for the DA1-A devices

143

1  is that call to the detection function was
2  modified from finger down to finger up, fair?
3      MR. ERWINE:  Objection, mischaracterizes
4  the evidence.
5      A  I mean, that's part of it, but it's a
6  deeper modification than that.
7      Q  The modification that is specific about
8  when the detection functions are called is
9  precisely that, though, right?  The modification
10  from finger down to finger up?
11      MR. ERWINE:  Same objection.
12      A  Well, it certainly happens after finger
13  up.  I don't know that I would agree with your
14  characterization of "precisely."

20      Q  Right.  And so the modification in terms
21  of when the detection functions are called is the
22  modification from the trigger being finger down to
23  the trigger being finger up, correct?
24      A  Yes.
25      MR. ERWINE:  Objection, vague.

144

1      A  If you're talking about the modification
2  being when, that aspect of the modification is
3  correct.
4      Q  And so we have -- I'm trying to understand
5  from your report -- and you tell me how many more
6  there are -- but I've heard two modifications with
7  respect to DA1-A that you find relevant:  One,
8  that the modification from the long press to the
9  short tap being the trigger for the contextual
10  pop-up menu; and two being the modification of the
11  detector functions from finger down to finger up.
12      Are there more modifications that you find
13  relevant with respect to the DA1-A Browser phones
14  and the issue of whether they're more than
15  colorably different?
16      MR. ERWINE:  Objection, mischaracterizes
17  the witness's testimony.
18      A  Yeah, so I don't view it as modifications.
19  I view it as the first one fundamentally is they
20  removed what was accused; they removed the context
21  menu from the long press gesture.  They designed a
22  new user interface based around the short tap
23  gesture where now the context menu will appear
24  after a short tap.
25      Q  Any other modifications or removals or

145

1  alterations to the source code that you find
2  relevant?
3  **A  I think for DA1-A that's it.**
4  Q  Turn to Paragraph 242 of your report,
5  please.
6  **A  If I could just amend my answer.  I think**
7  **in the report we were just focusing on this, you**
8  **know -- part of it also was a redesign of the long**
9  **press user interface.  I mean, it's not implicated**
10 **in -- Dr. Mowry doesn't analyze it, but that's**
11 **also part of the modification.  So the change of**
12 **the long press interface to be the generic menu**
13 **and then the change of the new user interaction**
14 **with the short press.  So there's also the new**
15 **interaction with the long press menu providing the**
16 **generic menu.**
17 Q  Thank you.
18 **A  Sorry.**
19 Q  Paragraph 242 on Page 152.
20 **A  242?**
21 Q  Yes, in your report, Exhibit 1.
22 **A  Okay.**
23 Q  I'm asking you about a paragraph at the
24 end of a section, so feel free to look for context
25 again.

146

1  **A  Okay.**
2  Q  But here you say, "But unlike the long
3  press gesture, the short tap does not have the
4  same intentional selection."
5      What did you mean by that?
6  **A  This is a reference to -- this is a**
7  **reference to the infringement theory that was**
8  **presented to the jury, which was used, for**
9  **example, for Jelly Bean Browser to indicate that**
10 **there was a selection of a detected structure, and**
11 **that is that, you know, the long press -- the fact**
12 **that a long press was required.  Dr. Mowry**
13 **testified that there was this conscious action on**
14 **the part of the user to then select a detected**
15 **structure.**
16     **So this intentional selection was a**
17 **reference to the argument that the jury heard**
18 **about the long press.**
19 Q  Now, we talked a little bit about this
20 before lunch, but a short press is an intentional
21 gesture, correct?
22 MR. ERWINE:  Objection, mischaracterizes
23 the witness's testimony.
24 **A  I would say it's a different intentional**
25 **gesture than what's being referred to here, but a**

147

1  **press is -- indicates some intent on the part of**
2  **the user.**
3  Q  So you would agree that short tap is a
4  form of an intentional selection but you're saying
5  it's a different form of an intentional selection?
6  **A  Yes, it's a very different form of**
7  **selection because, in particular, it's not a**
8  **selection of a detected structure.**
9  Q  It is a means in which a user may select a
10 structure, correct?
11 **A  It is a means by which a user may select a**
12 **structure that the user has detected and not the**
13 **system.**
14 Q  In the DA1-A devices in Browser, the
15 contextual pop-up menu is displayed because the
16 user has intentionally selected a structure,
17 correct?
18    MR. ERWINE:  Objection, mischaracterizes
19 the witness's testimony.
20 **A  I mean, I would just simply say it's**
21 **because the user has selected a structure that in**
22 **this case was not detected.**
23 Q  In the DA1-A devices in Browser, the
24 contextual pop-up menu is displayed when the user
25 intentionally selects a structure in short tap,

148

1  fair?
2     MR. ERWINE:  Same objection.
3  **A  I think that's the same question you just**
4  **asked me previously.**
5  Q  It's a yes or no answer.  So I'm just
6  hoping to get a yes or no answer.
7  **A  I don't believe the question can be fairly**
8  **answered yes or no.  I think it invites**
9  **misinterpretation to answer that question yes or**
10 **no.**
11 Q  Putting -- putting detection aside for
12 just this question, in the DA1-A devices in
13 Browser, the contextual pop-up menu is displayed
14 when the user intentionally selects a structure in
15 short tap, correct?
16    MR. ERWINE:  Objection, mischaracterizes
17 the witness's testimony.
18 **A  I mean, to be precise, we would say it's**
19 **after; it's after the user has selected.  It's not**
20 **when.**
21 Q  Okay.  DA2 Messenger products pre-detect
22 structures and highlight them, correct?
23 **A  Yes.**
24 Q  DA2 Messenger products allow users to
25 select those structures using a short tap,

149

1  correct?
2  **A Yes.**
3  Q DA2 Messenger products display a pop-up
4  menu in the form of a ResolverActivity menu in
5  certain instances where the user has selected a
6  structure and a message such as an email or a web
7  page, correct?
8  **A In certain instances, yes.**
9  Q DA2 Messenger products will launch
10  applications such as browsers and email
11  applications upon user selection from the
12  ResolverActivity pop-up, correct?
13  **A Yes.**
14  Q Turn to Paragraph 251 of your report,
15  please. Now, I'm going to ask about Paragraph 251
16  and again where you quote from Dr. Mowry, and I'm
17  going to ask about the first part of your text on
18  156 that's not part of the quote. But again, look
19  as much as you need to the rest of the paragraph
20  or around or whatever you need for context.
21  **A Okay.**
22  Q As you say here in your report, "Dr. Mowry
23  was clear in his August 12th, 2013 expert report,
24  "The invocation of startActivity prior to the
25  creation of the ResolverActivity is the action,"

150

1  right?
2  **A That's what I wrote.**
3  Q Now, at trial Dr. Mowry opined that more
4  than just the invocation of startActivity prior to
5  the creation of the ResolverActivity menu was the
6  action, right?
7  **A That's right.**
8  Q So -- and again, you're taking that
9  evidence as understood as part of the accused
10  products, correct?
11  **A I'm sorry, ask that again. I'm taking**
12  **that --**
13  Q So why is it that if -- since Dr. Mowry
14  opined that more than just the invocation of
15  startActivity was the action, why is it that
16  you're describing it here as that being the
17  action?
18  **A Well, I'm not describing the processing**
19  **that's recurring as a result of startActivity. I**
20  **mean, startActivity is not an atom. What I'm just**
21  **simply saying here is that, you know,**
22  **startActivity, a specific instance of**
23  **startActivity, in particular, the invocation prior**
24  **to the creation of the Resolver menu, that was**
25  **sort of -- that's the centerpiece, if you will, of**

151

1  his analysis.
2  Q Right. But Dr. Mowry actually identified
3  the entire startActivity method of the context
4  IMPL class, the resolveActivity method of the
5  Intent class and the resolveActivity method of the
6  PackageManager class as the subroutines that
7  constitute the action processor for performing the
8  selected action, right?
9  **A Correct, and all this with respect to a**
10  **particular -- particular path through these**
11  **entities based on the use of an implicit Intent**
12  **object.**
13  Q Turn to Paragraph 253 of your report,
14  please.
15  **A Okay.**
16
17
18
19
20
21
22
23
24
25

152





153

154

155

1  Q  Now, in the Paragraph 257, the last
2  sentence you state, "I understand that this
3  inquiry should focus on the design-arounds to the
4  accused functionality and not on other
5  functionality included in the adjudicated devices
6  but not previously accused."
7      On what do you base that understanding?
8      MR. ERWINE:  Objection, calls for a legal
9  conclusion.
10     **A  That's my understanding of the process as**
11 **informed by Samsung's counsel.**
12     Q  In performing your infringement analysis,
13 did you compare the design-arounds to the claims
14 or the design-around products to the claims?
15     MR. ERWINE:  Objection, vague.
16     **A  And the analysis speaks for itself.  I was**
17 **addressing -- I was addressing what Dr. Mowry had**
18 **accused of infringing.**
19     Q  Did you focus only on the changes and not
20 to the entire devices?
21     MR. ERWINE:  Objection, asked and
22 answered.
23     **A  I mean, again, the document speaks for**
24 **itself.  I think I went through and I rebutted**
25 **Dr. Mowry's analysis.  So any -- so to the extent**

156

1  he was considering the entire system, I was
2  considering the entire system.
3      Q  To the extent that you're wrong, that the
4  inquiry should focus on the design-arounds to the
5  accused functionality and not on other
6  functionality included in the adjudicated devices
7  but not previously accused, do you still stand by
8  your testimony that's included in this report?
9      **A  Did you ask that question right?  I think**
10 **I heard the opposite of what I think you --**
11     Q  To the extent you're wrong about your
12 understanding of what the law requires, does that
13 affect your opinions?
14     **A  No, I mean, this is simply a statement**
15 **here.  This statement has no bearing on the**
16 **analysis that follows.**
17     Q  We'll see.
18     Paragraph 261, please, if you turn to,
19 Exhibit 1.  Again here you're talking about
20 Pandit, right?
21     **A  Yes.**
22     Q  And you quote Dr. Mowry.  At the top it
23 says, "Pandit does not disclose a 'user interface
24 enabling the selection of a detected structure'
25 because Pandit requires that a user manually

16     Q  Well, I guess we'll say that the document
17 speaks for itself.
18     **A  Great.**
19     Q  Turn back to Paragraph 257 of Exhibit 1,
20 please.
21     **A  257, okay.**
22     Q  So here is the beginning where you're
23 talking about -- you're opining on whether the
24 design-around phones infringe or not, correct?
25     **A  Correct.**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

40 (157 to 160)

157

1 select text before Pandit attempts to recognize
2 that text as performing to a particular class."
3     Now, Pandit required that the user
4 highlight the entirety of the text, correct?
5     A  No.
6     Q  Are you sure?  Where does Pandit describe
7 it any other way?
8     A  Column 2 of Pandit, Exhibit 5, line 7
9 through 8, the passage we talked about previously
10 that accenting is performed, "for example, by
11 shading, underlining or pointing to and clicking
12 on the text."
13    Q  Right.  If you're going to click on the
14 text, don't you have to click on the entirety of
15 that text for Pandit to be able to identify it and
16 detect it?
17    A  I don't believe there's a requirement
18 stated in Pandit for that.
19    Q  Where does Pandit disclose recognizing
20 less than the entirety of the text of a structure?
21    A  As I say, I don't think Pandit does
22 disclose that.  Pandit just simply discloses
23 recognizing text in -- you know, their phraseology
24 is what was accented.
25    Q  And so Pandit will try and interpret

158

1 what's been accented, but if it doesn't have the
2 entirety of what's been accented, then it can't do
3 it, right?
4     A  It doesn't have the entirety --
5     Q  If the entirety of the structure has not
6 been accented, then Pandit would not know how to
7 interpret that text?
8     A  There's no disclosure in here or concept
9 of entirety of accenting.  What's disclosed here
10 is you accent, among other ways, by pointing to
11 and clicking.  That's what's disclosed in Pandit.
12 And based on pointing and clicking, Pandit will
13 attempt to detect structures in that text.
14    Q  Now, where does it disclose detecting a
15 structure when only a portion of that text has
16 been highlighted?  I'm not asking -- I'm not
17 saying where -- I'm not asking to show me the
18 click part or that portion of column 2.
19    What I'm asking you is:  Does Pandit
20 disclose how to detect a structure even if only
21 portion of that structure has been highlighted?
22    A  Okay.  So Pandit does not require
23 highlighting.  There's no statement in here, as
24 best I recall, that says you have to highlight
25 something.  It's not in Pandit.

159

1     Q  So then where does Pandit disclose
2 detecting a structure when only a portion of that
3 structure has been accented?
4     A  There's no concept in here.  Portion of
5 something being accented is your characterization
6 of this.  Pandit simply describes accenting and
7 says you can accent by pointing to and clicking.
8 That's what a person of ordinary skill in the art
9 understands.
10    Q  Tell me where Pandit discloses how to
11 detect a structure.
12    A  Well, part of it is in column 3 around
13 line 17 where it says that you can include
14 libraries enabling the recognition of, in this
15 particular case, this is an example of a URL.  So
16 I think what they're just simply relying on is
17 straightforward parsers.
18    Q  Again, though, this doesn't describe how
19 to detect when only a portion of the structure has
20 been accented, does it?
21    A  Portion of an accent is not a concept that
22 exists --
23    Q  That's not what I said.
24    A  What I'm saying is you're asking -- you're
25 asking about a concept that does not exist.

160

1 There's just accenting.  You can accent something
2 by pointing to and clicking.  If you accent
3 something, it discloses it will find text.
4     So accent in this particular realm I don't
5 believe is necessarily a term of art.  So when you
6 speak of partial accenting, that's a concept
7 you're injecting into Pandit.
8     Q  Okay.  Besides the portion of column 3
9 that you've identified, are there any other
10 portions of Pandit that describe how to detect a
11 structure?
12    MR. ERWINE:  Objection, the document
13 speaks for itself.
14    A  Throughout this thing -- throughout the
15 specification here, it's talking about the use of
16 libraries that are used for this purpose.  So, for
17 example, in line 50 in column 3 it's talking about
18 a particular library.  So above that in lines 45
19 or so, it's saying you can have a set of these
20 libraries to detect different things.  And it says
21 that, you know, the number of possible operations
22 aren't necessarily limited.  So it gives an
23 example of library A around line 50 for
24 recognizing and performing operations on dates in
25 text.

161

1      So it's relying, I think, on prior art
2  recognition techniques such as simple parsers.
3  And, in fact, it says that a little further down,
4  around lines 54, that "generally subroutine A is a
5  parser capable of recognizing a class or type of
6  text data in a number of formats."
7      Q  Anywhere else?
8      A  Well, I'm sure there's others.  We can
9  just keep going through.  So it gives other
10  examples, starting around line 60, of similar
11  operations of library functions for recognizing
12  dates.
13      Q  What column?
14      A  Column 3, sorry, column 3 starting around
15  line 60.  Column 4 similarly talks about
16  library -- the same libraries that were referred
17  to in column 3, lines 53 with subroutines and
18  parsers.  Now it's talking about being able to do
19  this on to-do lists, anniversaries, et cetera.
20  That's column 3, around line 10.
21      And column 4, line 20 saying persons of
22  skill in the art would understand that additional
23  libraries could be brought to bear which will have
24  subroutines generally related in function to the
25  subroutines of library A for implementing the

162

1  invention with respect to other classes of text.
2  So it's saying it's very general in how it's going
3  to be able to represent structures.
4      All you essentially have to do is provide
5  a parser, and in particular the parser of type
6  that's disclosed in column 3, line 54.  It just
7  continues to give examples of things that it can
8  parse.
9      Q  Column 3, lines 24 through -- I'm sorry,
10  column 3, lines 17 you identified this
11  library-enabling recognition of URLs, correct?
12      A  That was -- yes, 17 through -- yes, 23,
13  correct.
14      Q  Assume that a user has accented a portion
15  of a URL in an instance which these libraries
16  would be used, would that URL be detected?
17      A  You keep coming back to this notion of
18  accenting a portion.  That's not a concept that's
19  exists here.  You accent by pointing -- for
20  example, by pointing and clicking.  There's no
21  notion of partial accent.  Pointing and clicking I
22  think a person of skill in the art would
23  understand it is a discrete operation.  A person
24  of ordinary skill in the art with that
25  understanding would further understand based on

163

1  the disclosures in column 3 that when you accent
2  by pointing and clicking, the system would have a
3  library that would allow it to recognize URLs in
4  what was pointed to and clicked on.
5      Q  Look at Figure -- sorry.  Look at Figure
6  1C, 1B --
7      A  I'm sorry, 1 --
8      Q  Start with 1C.
9      A  Okay.
10      Q  Now, does that show a structure that's
11  been accented?
12      A  Yes.
13      Q  And in that case the entire structure has
14  been accented, correct?
15      A  I think that's unclear whether the box is
16  there to call our attention to what is accented or
17  whether the box is supposed to represent the
18  accent.
19      Q  If you would, Figure 1E.
20      A  E?
21      Q  E, yes.
22      A  Thank you, yes.
23      Q  Does this show a structure that's been
24  accented?
25      A  Yes.  I will note that 1E is showing

164

1  something other than a phone number as being
2  accented, so clearly the system has sufficient
3  resiliency to deal with information that doesn't
4  necessarily comprise the default notion of a
5  structure.
6      Q  Explain to me how this is other than a
7  phone number.
8      A  It has a semicolon at the end -- or the
9  semicolon is included within the box that is meant
10  to indicate the telephone number.
11      Q  But the entire number is accented in that
12  instance, right?
13      A  I think a person of skill reading this
14  would say the telephone number plus the semicolon
15  is accented.
16      Q  If only a portion of the telephone number
17  is accented, how would the system as described in
18  this patent detect the entire structure?
19      A  There are no examples of that given.  As I
20  say, the notion of selecting a portion -- I mean,
21  there's no example given of accenting a portion.
22      MR. WALDEN:  Let's take a quick break.
23      THE VIDEOGRAPHER:  It is 2:10 p.m.  We are
24  going off the record.
25      (A recess was taken.)

Case 5:12-cv-00630-LHK   Document 2259-4   Filed 04/16/18   Page 44 of 107
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

42 (165 to 168)



165

1    THE VIDEOGRAPHER:  It is 2:26 p.m.  We are
2  back on the record.
3    MR. WALDEN:  I'd like to mark as the next
4  exhibit in order a transcript of the deposition of
5  Daewoong Kim.
6    (Exhibit 6 Transcript of Daewoong Kim, as
7  Designated Representative marked for
8  identification and attached to the transcript.)
9  BY MR. WALDEN:
10    Q  Dr. Jeffay, did you review this deposition
11  in order to help yourself prepare for your expert
12  report, Exhibit 1?
13    A  Yes.
14    Q  Turn to Page 58 of the deposition, please.
15    A  58, okay.
16
17
18
19
20
21
22
23
24
25

166

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

167

1
2
3
4
5
6
7
8
9
10
11
12
13
14    MR. WALDEN:  I'll mark as the next exhibit
15  in order a document that was previously marked
16  Plaintiff's Exhibit 5 at the deposition of
17  Daewoong Kim.
18    (Exhibit 7 Chain of emails, Bates stamp
19  SAMDCA630_DA_00064616 through 631 marked for
20  identification and attached to the transcript.)
21    Q  Dr. Jeffay, have you reviewed this
22  document before?
23    A  Yes.
24
25

168

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



169

25    MR. ERWINE:  Objection, mischaracterizes

170

171

172

25    MR. ERWINE:  Objection, vague.



173

9  MR. ERWINE: Objection, code speaks for
10 itself.

17  Q Turn to Paragraph 268 --
18  A 68?
19  Q 268.
20  A Okay.
21  Q Now, here you start to describe or you
22 start to opine on whether the DA1-A devices
23 infringe under the doctrine of equivalents, right?
24  A Correct.
25  Q Prior to this opinion in this report, had

174

1 you rendered any opinions on whether any of the
2 Samsung devices infringed under the doctrine of
3 equivalents?
4  A I don't -- I don't recall doing so.
5  Q Paragraph 270 you state, that, "The DA1-A
6 design-around performs a different function than
7 the one recited by the claim: It prevents a user
8 from selecting a detected structure rather than
9 enabling the user to do so."
10  Now, in this instance here, you compared
11 the design-around to the claims, not the
12 design-around product to the claims. Is that
13 right?
14  MR. ERWINE: Objection, vague.
15  A Yeah, I don't understand the question.
16  Q Well, you say, "The design-around prevents
17 a user from selecting a detected structure rather
18 than enabling the user to do so."
19  My question to you, though, is: The
20 product itself functions -- has a function, it's
21 not functioning to prevent the user from doing
22 something but it functions to allow the user to do
23 things, correct?
24  MR. ERWINE: Objection, vague.
25  A They're two sides of the same coin. What

175

1 I'm saying here is that the user ensures that a
2 user can't -- the device ensure -- the device
3 running the design-around code ensures that the
4 user cannot select a detected structure.
5  Q What was the function of the accused
6 devices, in your view?
7  A They were cellphones.
8  Q In the context of this DOE analysis,
9 right, you're looking at the function of the
10 design-around phones versus the claims, is that
11 right, the function of the claims?
12  MR. ERWINE: Objection, calls for a legal
13 conclusion.
14  Q How about this: What is the function of
15 the claims as you understand them? So with
16 respect to this first limitation about -- strike
17 that.
18  What is the function of the claims in
19 terms of selecting a detected structure?
20  A So the function in part includes enabling
21 a user to select a detected structure. What I'm
22 saying here is that that function is not present,
23 and there is a diametrically opposite function
24 that is present.
25  Q The function in the claims is to allow a

176

1 user to detect a structure, is it not?
2  A No.
3  Q The function in the claims is to allow the
4 user to select a structure, is it not?
5  A To select a detected structure.
6  Q If that's the function, then there could
7 never be an equivalence to that limitation if
8 there's been no detection. Is that your opinion?
9  MR. ERWINE: Objection, calls for a legal
10 conclusion.
11  A I don't understand the question.
12  Q Well, you're basically repeating the claim
13 limitation as what the function is. Is that
14 right?
15  MR. ERWINE: Objection, mischaracterizes
16 the witness's testimony.
17  A No, I'm not repeating -- I'm not repeating
18 the claim language here.
19  Q I'm asking what the function of the claim
20 limitation is, selecting a detected structure, and
21 you're saying the function is to select a detected
22 structure. Is that right?
23  A If you're talking about that limitation,
24 yes, that's the -- let me grab the -- I seem to
25 have lost the patents -- so we get the exact

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

45 (177 to 180)

---

177

1 language.
2     So of this limitation, the function would
3 be enabling the selection of a detected structure
4 and the linked action.
5     Q So again, you're basically saying that the
6 function of the limitation is just simply the
7 limitation itself?
8     A No.
9     Q What is the function of the user
10 interface, is to enable the selection of a
11 detected structure in a linked action.  Is that
12 right?
13    A Correct.
14    Q What is the way in which it's performed in
15 the claims?
16        MR. ERWINE:  Objection, vague.
17    A The way is that as a precondition you have
18 linked actions to detected structures, and then in
19 the case of Claim 9 you provide a pop-up menu to
20 select -- that enables the selection of an
21 action -- display a pop-up menu of the linked
22 actions to enable the selection of an action.
23    Q Now, in performing your analysis for the
24 DOE for this limitation for the DA1-A devices,
25 have you assumed that the means of selecting a

---

178

1 structure in the Jelly Bean devices is literal
2 infringement?
3     A I don't understand what you're asking.
4     Q Dr. Mowry opined that the method of
5 selecting a structure in Browser in the Jelly Bean
6 devices was literal -- constituted literal
7 infringement of this limitation, right?
8     A You're just saying that the accused
9 devices were accused of literal infringement?
10    Q Correct.
11    A I understand that.
12    Q Yes.
13    A I understand that.
14    Q And you're now assuming, are you not, that
15 the accused devices literally infringed this
16 limitation in Jelly Bean in the manner in which
17 the Jelly Bean device is operated in Browser,
18 right?
19        MR. ERWINE:  Objection, vague.
20    A Yeah, if you're talking about the 2014
21 devices running the accused -- yes, in 2014, I
22 understand that the Jelly Bean -- the Jelly Bean
23 Browser as it existed then was accused of literal
24 infringement and found to infringe.
25    Q So have you applied that understanding now

---

179

1 when you're determining whether the DA1-A
2 design-around devices infringe under the doctrine
3 of equivalents?
4        MR. ERWINE:  Objection, vague.
5     A I don't know what you mean by apply it.  I
6 mean, it certainly has informed my analysis.
7     Q In the accused DA1-A devices, there is a
8 user interface enabling the selection of a
9 structure, correct?
10        MR. ERWINE:  Objection, vague.
11    A There is a user interface that allows you
12 to select a structure, importantly not a detected
13 structure.
14    Q In the accused DA1-A devices, there's a
15 user interface enabling the selection of a
16 structure that is then detected, correct?
17        MR. ERWINE:  Objection, vague.
18    A Well, not in all cases.  I mean --
19    Q I'm saying in the accused DA1-A devices in
20 Browser, there's a user interface enabling the
21 selection of a structure that is detected,
22 correct?
23        MR. ERWINE:  Same objection.
24    A You're saying that anything that the user
25 selects is detected, that's not what the user

---

180

1 interface enables.
2     Q The user interface enables the selection
3 of structures such as email addresses or telephone
4 numbers that are detected, correct?
5     A Contains a user interface that enables the
6 selection of things like email addresses and
7 telephone numbers that will be detected after the
8 selection has fully completed.
9     Q Turn to Page 167 of your report, please,
10 Paragraph 281.
11    A Got it.
12    Q Now, here you have a discussion of the
13 Messenger DA1-A products on -- in the question of
14 infringement.  Do you provide any non-infringement
15 arguments for Messenger DA1-A that are different
16 than for Browser DA1-A?
17        MR. ERWINE:  Objection, overly broad,
18 document speaks for itself.
19    A The argument is substantially the same.
20 The details are different.
21    Q Turn to Paragraph 292 of your report,
22 please.
23    A 292.
24    Q On Page 172.
25    A I've got it.

---

181

1    Q  Second sentence you state, "Claims 1 and 9
2  of the '647 require that a structure be detected
3  prior to selection so that a user might know which
4  structures in, for example, a web page might be
5  interacting with."
6       It's not the case in the Jelly Bean
7  devices that there was detection prior to
8  selection so that a user might know which
9  structures in a web page might be interacted with,
10 correct?
11      MR. ERWINE:  Objection, mischaracterizes
12 the witness's testimony.
13   **A  I mean, that's not what this -- what this
14 is saying in Paragraph 292, but I think what
15 you're saying about Jelly Bean is correct.**
16   Q  What are you saying -- you're saying
17 Claims 1 and 9 require a structure to be detected
18 prior to selection so that a user might know what
19 structures in a web page might be interacted with,
20 correct?
21   **A  Correct.**
22   Q  Now, it's not the case, though, that in
23 Jelly Bean, structures are detected prior to
24 selection so that a user might know which
25 structures in a web page might be interacted with,

---

182

1  correct?
2       MR. ERWINE:  Objection, vague.
3    **A  Really?  Isn't that precisely what Apple
4  and Dr. Mowry's position was, the opposite of
5  that?**
6    Q  No.  I think -- I think in Apple's
7  position and Dr. Mowry's position was that
8  Claims 1 and 9 don't require pre-detection so that
9  a user might somehow understand how to interact
10 with the page.
11   **A  Pre-detection appeared nowhere in your
12 question.**
13   Q  Well, okay.  So how did a user know how
14 to -- how -- strike that.
15      When the Jelly Bean device is in Browser,
16 how did the detection prior to selection occur so
17 that the user might know which structures in a web
18 page could be interacted with?
19      MR. ERWINE:  Objection, vague.
20   **A  You're asking me to represent Dr. Mowry's
21 infringement theory.  So I may not get it precisely,
22 but I believe what his theory was that a user put
23 his finger down, the system detected structures
24 and then because of the conscious, deliberate act
25 of holding your finger down for a long press, the**

---

183

1  **user was then deliberately selecting a detected
2  structure.**
3    Q  So you're saying that the detection
4  occurred during the long press so that the user
5  might know which structure might be interacted
6  with?
7    **A  I'm saying that was my recollection of
8  Dr. Mowry's infringement theory.**
9    Q  Turn to Paragraph 297 of your report,
10 please.  Now here you state in the second
11 sentence -- or the third sentence, I'm sorry, of
12 this paragraph, "As a consequence, the single
13 action per structure functionality" --
14   **A  I'm sorry, I'm just not with you.**
15   Q  Paragraph 297.
16   **A  Got it.  Yes, I see it now.**
17   Q  Third sentence.  You see, "As a
18 consequence"?
19   **A  Got it, yes.  Thank you.**
20   Q  You read as much as you need.
21      You state here, "As a consequence, the
22 single action per structure functionality
23 implemented in DA2 (which Apple also agrees to not
24 infringe Claim 9, see Section VIII.C supra) in
25 which there is only a single default action for

---

184

1  each structure and no pop-up menu at all does not
2  infringe Claim 9 of the '647 patent."
3       Now it is the case that there is a pop-up
4  menu in the form of a ResolverActivity pop-up menu
5  that's been identified by Dr. Mowry, correct?
6    **A  Dr. Mowry has so identified that.**
7    Q  And so there is not -- strike that.
8       And so there is, in fact, a pop-up menu
9  that can occur in the DA2 phones in Messenger,
10 correct?
11   **A  In some circumstances, yes.**
12      MR. WALDEN:  Let's take a break and then a
13 regroup, and we'll probably have one more session
14 and then we'll be done.
15      MR. ERWINE:  Okay.
16      THE VIDEOGRAPHER:  It is 2:56 p.m.  We are
17 going off the record.
18      (A recess was taken.)
19      THE VIDEOGRAPHER:  It is 3:26 p.m.  We are
20 back on the record.
21 BY MR. WALDEN:
22   Q  Dr. Jeffay, if you would, please, pull
23 back out Exhibit 1 and turn to Page 49, looking at
24 it earlier.
25   **A  Got it.**

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

185

1  Q  Earlier we were talking about the
2  Captivate Glide pictures there on Page 49.  I'd
3  like to ask you about the next one, the Dart on
4  Page 50.
5  **A  Sure.**
6  Q  You see the three pictures for that?
7  **A  I do.**
8  Q  Again, focusing on the central figure
9  there, you see a pop-up menu, is that right?
10  **A  Correct.**
11  Q  Do you know the name of that pop-up menu?
12  **A  I think you asked me that and in terms --**
13  **with regard to the Captivate Glide, and I think**
14  **what I said is I don't recall the name that**
15  **Android associates with that menu.**
16  Q  Does that central menu there for the Dart
17  show selection of a detected structure?
18  **A  Does it show detection of a selected**
19  **structure?**
20  Q  Does it show that a user interface
21  enabling a selection of a detected structure?
22     MR. ERWINE:  Objection, vague.
23  **A  I don't recall the actions that --**
24  **sorry -- the user interaction that results in the**
25  **menu in the middle figure.**

186

1  Q  Does the menu in the middle show linked
2  actions that might be chosen?
3     MR. ERWINE:  Same objection, vague, calls
4  for a legal conclusion.
5  **A  I just don't recall this analysis at that**
6  **the level of detail.**
7  Q  In the Gingerbread version of the six
8  Samsung phones that you're discussing on this
9  paragraph, in this Paragraph 110, in each
10  instance, this middle pop-up menu would appear
11  before the ResolverActivity pop-up menu in cases
12  in which the user has placed finger down on a
13  message, correct?
14  **A  I think that's correct.**
15
16
17
18
19     MR. ERWINE:  Objection, vague.
20
21
22
23
24
25

187

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16  Q  Do you understand that the claims --
17  Claim 9 of the '647 patent requires that the
18  pop-up menu contain an action processor?
19  **A  I mean, this may be inartfully worded.  So**
20  **it's not that the pop-up menu requires an action**
21  **processor, but the action processor required is**
22  **one of the limitations of Claim 1 that has to be**
23  **satisfied in order for Claim 9 to be satisfied.**
24  Q  Previously, Dr. Mowry identified the
25  action processor as a set of program routines that

188

1  perform the selected action linked to the selected
2  structure for the accused devices, correct?
3  **A  If previously you mean in the 2014 trial,**
4  **that's correct.**
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





189

7     Q  Would a person of ordinary skill in the
8  art reading Claims 1 and 9 of the '647 patent
9  understand that there has to be an ordering of the
10  operation of those limitations in the claim?
11     MR. ERWINE:  Objection, calls for a legal
12  conclusion.
13     A  I don't know that anyone has opined on
14  that issue, so I don't know that that's an issue
15  I've considered.  I mean, generally it's a system
16  claim, so it's not a -- it's not a method claim.
17     Q  Right, so, therefore, you would not expect
18  there to be a required ordering of operations,
19  fair?
20     A  I'm not going to say what I expect.  I'm
21  just simply saying, you're asking a question that
22  I don't think anyone has addressed.
23     Q  And specifically you haven't addressed it
24  either, correct?
25     A  I don't recall ever having addressed that

190

1  issue.
2     Q  In the infringing products, the products
3  found to infringe in Messenger, the first menu to
4  appear upon user detection of a selection of a
5  detected structure was the contextual pop-up menu,
6  correct?
7     A  So, for example, you're speaking of the
8  long press gesture in Gingerbread?
9     Q  No.  I'm talking about Messenger, short
10  press in the accused devices.
11     A  So I think that was the Ice Cream Sandwich
12  and Jelly Bean versions?
13     Q  Including those?
14     A  Yes.
15     Q  And in that case the first menu that would
16  appear on user selection of that structure in
17  short tap would be the contextual pop-up menu.  Is
18  that right?
19     A  Yes, I believe that's correct.

91

12     Q  Would you agree that if you had a device
13  that infringed Claim 9 and the only thing you
14  changed was to take out the pop-up menu, that
15  device would still infringe Claim 1?
16     A  That's too abstract a hypothetical.  It
17  certainly has a possibility.  The issue is going
18  to be to what extent does removal of the pop-up
19  menu change elements that were alleged to infringe
20  Claim 1.
21     Q  Do you recall being asked at trial about
22  this question?
23     A  No.
24     (Exhibit 8 Transcript of Proceedings April
25  15, 2014 marked for identification and attached to

192

1  the transcript.)
2     Q  Dr. Jeffay, I marked as Exhibit 8 a copy
3  of the transcript of proceedings from the trial in
4  this case on April 15th, 2014.
5     A  Okay.
6     Q  Turn, if you would, please, to Page 1821
7  of that transcript.  You'll see it on the upper
8  right-hand corner.
9     A  Okay, I've got it.
10     Q  Here you see down in this document
11  starting at Page 4, "All right.  Let me ask my
12  question again because I think maybe you didn't
13  hear it right.  If you had a device that infringed
14  Claim 1 and the only thing that you changed was to
15  take out the pop-up menu, that device would still
16  infringe Claim" -- I'm sorry, let me try again.
17     Starts on line 16.  "If you had a device
18  that infringed Claim 9 and the only thing you had
19  changed was to take out the pop-up menu, that
20  device would still infringe Claim 1, right?
21     "Answer:  If it was found that it
22  infringed Claim 9 and you just replaced the pop-up
23  menu, then it would still" -- you asked:  "Are you
24  okay? -- "then it would still have the other
25  elements of Claim 1."

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

49 (193 to 196)



193
1    Do you see that?
2    **A I do.**
3    Q  Do you want to change this testimony in
4 any way or is it accurate as far as you know?
5    **A I mean --**
6    MR. ERWINE:  Objection, calls for
7 speculation.
8    **A I mean, the answer I just gave you is**
9 **essentially the answer that I gave starting on**
10 **line 10.  So I don't know what was going on in**
11 **this Q&A to simplify it, but I don't think there's**
12 **an inconsistency with the answer that's at line 10**
13 **and the answer that's on line 19; though the**
14 **answer on line 10 is certainly more precise.**
15    Q  If you have a device that infringes
16 Claim 9 and the only thing you do is take out the
17 contextual pop-up menu, that device would still
18 infringe Claim 1, correct?
19    **A As I've said, if you want to ask something**
20 **specific like that, the issue is going to be, you**
21 **know, to what extent does removal of that function**
22 **implicate other functions, other elements of**
23 **Claim 1.**
24    Q  So your testimony that if you just -- if
25 you took out the pop-up menu, then the device

194
1 would still have the other elements of Claim 1,
2 was accurate at the time you gave it, right?
3    **A The testimony you're pointing to at line**
4 **19 is a simplification of the testimony starting**
5 **at line 10, and I'm just simply saying in the**
6 **context of a deposition here, I'm giving you the**
7 **more fulsome answer that was given to the jury**
8 **starting at line 10.**
9    MR. WALDEN:  Let's take one more break if
10 we can.  I got to get some code ready.  Then we'll
11 do that, and then we'll be done.  We don't need to
12 take a long break.
13    THE VIDEOGRAPHER:  It is 3:42 p.m.  We are
14 going off the record.
15    (A recess was taken.)
16    THE VIDEOGRAPHER:  It is 3:53 p.m.  We are
17 back on the record.
18    MR. ERWINE:  I'd just like to designate
19 the transcript highly confidential, attorneys'
20 eyes only pursuant to the Protective Order in the
21 case.
22 BY MR. WALDEN:



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

51 (201 to 204)



MR. ERWINE:  Objection, vague.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

52 (205 to 208)



205

207

7    MR. WALDEN:  I have no further questions.
8    MR. ERWINE:  Thank you.
9    THE VIDEOGRAPHER:  It is 4:27 p.m.  We are
10  going off the record.
11       (Off the record at 4:27 p.m.)

206

208

1    C E R T I F I C A T E
2
3    I, Nancy Mahoney, Certified Court Reporter and
4    Registered Professional Reporter and Notary Public
5    within and for the State of New York, the officer
6    before whom the foregoing deposition was taken, do
7    hereby certify that the foregoing transcript is a
8    true and correct record of the testimony given;
9    that said testimony was taken by me
10  stenographically and thereafter reduced to
11  typewriting under my direction; that reading and
12  signing was not requested; and that I am neither
      counsel for, related to, nor employed by any of
13  the parties to this case and have no interest,
      financial or otherwise, in its outcome.
14    IN WITNESS WHEREOF, I have hereunto set my hand
      and affixed my notarial seal this 30th day of
15  October, 2017.
16
17  My commission expires:  June 10, 2018
18
19  NOTARY PUBLIC IN AND FOR
      THE STATE OF NEW YORK
20
21
22
23
24
25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

53 (209 to 212)

209

1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

54

| A |
|---|

**ability**
52:5, 134:4
**able**
119:14, 124:20,
137:7, 157:15,
161:18, 162:3
**above**
160:18, 171:18
**absolutely**
92:22, 120:10
**abstract**
191:16
**accent**
158:10, 159:7,
159:21, 160:1,
160:2, 160:4,
162:19, 162:21,
163:1, 163:18
**accented**
136:25, 157:24,
158:1, 158:2,
158:6, 159:3,
159:5, 159:20,
162:14, 163:11,
163:14, 163:16,
163:24, 164:2,
164:11, 164:15,
164:17
**accenting**
137:19, 157:10,
158:9, 159:6,
160:1, 160:6,
162:18, 164:21
**accept**
29:25
**accepted**
18:24, 25:11,
121:10, 154:6,
154:10
**accepting**
154:14
**according**
72:11
**accuracy**
106:22
**accurate**
64:7, 106:15,

193:4, 194:2
**accused**
15:19, 26:12,
26:16, 27:9,
28:21, 29:13,
29:22, 30:21,
31:3, 34:12,
38:15, 40:20,
40:22, 41:12,
41:16, 42:14,
42:19, 45:16,
46:7, 49:10,
81:4, 81:13,
81:21, 91:14,
92:18, 97:7,
97:15, 104:18,
104:20, 105:9,
105:25, 106:10,
106:23, 108:7,
110:18, 110:25,
115:23, 116:3,
118:21, 122:3,
122:12, 122:20,
122:22, 124:5,
124:23, 125:2,
125:4, 128:7,
128:17, 128:25,
129:3, 138:20,
140:2, 140:12,
142:10, 142:17,
142:21, 144:20,
150:9, 155:4,
155:6, 155:18,
156:5, 156:7,
175:5, 178:8,
178:9, 178:15,
178:21, 178:23,
179:7, 179:14,
179:19, 188:2,
188:13, 188:19,
190:10, 196:6,
196:24, 204:7
**acknowledging**
36:11, 78:12
**across**
12:22
**act**
75:6, 182:24

**actions**
14:23, 53:9,
53:25, 54:18,
55:6, 55:10,
55:11, 60:24,
61:7, 61:18,
63:19, 64:3,
64:14, 65:22,
66:13, 66:16,
67:4, 67:21,
69:1, 69:5,
69:11, 70:18,
71:4, 72:2,
72:12, 72:19,
72:20, 73:4,
73:10, 73:13,
73:21, 73:24,
74:9, 74:17,
74:22, 74:23,
75:4, 75:9,
75:12, 75:14,
75:17, 76:1,
76:3, 76:6,
76:7, 76:8,
76:22, 76:25,
77:18, 78:17,
78:21, 79:5,
88:6, 89:7,
89:14, 90:8,
93:24, 93:25,
97:3, 99:6,
99:7, 173:1,
177:18, 177:22,
185:23, 186:2
**activities**
88:6, 201:14,
201:24, 203:6,
203:13
**activity**
85:20, 88:10,
88:15, 90:7,
90:19, 94:20,
153:5, 153:7
**actual**
71:2, 191:6,
195:23
**actually**
18:22, 26:16,

37:9, 52:17,
60:17, 65:14,
81:25, 85:6,
95:3, 101:11,
113:24, 119:2,
141:6, 143:15,
151:2, 152:23,
171:17
**adapter**
203:2, 203:4,
203:11
**adding**
85:22, 85:25
**addition**
99:1, 99:3,
169:7, 169:13,
169:23
**additional**
161:22
**address**
111:19
**addressed**
11:22, 189:22,
189:23, 189:25
**addresses**
167:8, 180:3,
180:6, 191:4,
191:10
**addressing**
155:17
**adjudged**
26:14
**adjudicated**
155:5, 156:6
**adopted**
44:16, 45:4
**affect**
156:13, 167:3
**affects**
167:13
**affirmatively**
134:23
**affirmed**
9:2
**affixed**
208:17
**after**
9:2, 31:13,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

35:20, 75:25,
90:18, 100:9,
102:15, 104:6,
104:16, 105:23,
106:7, 114:20,
115:3, 115:10,
115:14, 117:15,
126:16, 126:19,
126:23, 127:13,
129:7, 129:10,
130:15, 142:6,
142:12, 142:16,
142:24, 143:12,
144:24, 148:19,
165:23, 165:24,
166:7, 180:7
**again**
11:5, 18:11,
24:17, 37:6,
38:14, 39:4,
50:22, 53:1,
55:7, 58:6,
61:15, 61:23,
65:12, 68:15,
68:22, 73:2,
78:15, 83:12,
100:24, 101:7,
108:12, 108:22,
109:23, 110:21,
114:2, 130:23,
133:1, 137:24,
145:25, 149:16,
149:18, 150:8,
150:11, 155:23,
156:19, 159:18,
177:5, 185:8,
188:5, 192:12,
192:16, 198:4,
198:14, 199:18,
201:8, 201:21,
203:9, 204:18
**ago**
126:3
**agree**
11:19, 13:7,
13:8, 13:16,
20:24, 35:11,
65:7, 75:2,

99:8, 99:13,
102:23, 113:9,
139:24, 143:13,
147:3, 186:15,
190:20, 191:1,
191:8, 191:12
**agreed**
57:1, 121:9
**agreement**
4:14, 128:24
**agrees**
183:23
**al**
27:17
**all**
11:18, 17:20,
19:15, 32:11,
35:1, 48:22,
51:17, 51:23,
51:25, 52:1,
52:5, 52:9,
61:24, 62:7,
62:16, 68:6,
82:15, 85:10,
92:3, 107:21,
123:4, 127:24,
139:15, 151:9,
152:11, 162:4,
173:8, 173:11,
173:12, 179:18,
184:1, 192:11
**alleged**
30:21, 31:2,
35:16, 191:19
**allegedly**
99:4, 99:7
**allow**
57:7, 58:11,
148:24, 163:3,
174:22, 175:25,
176:3
**allowed**
63:3, 119:25
**allowing**
89:3
**allows**
57:12, 64:23,
69:5, 69:10,

82:19, 88:23,
179:11
**alone**
120:3, 131:11,
138:24, 139:13,
139:22
**alpine**
23:3
**already**
33:12, 33:22,
60:23, 64:2,
89:15
**also**
6:20, 8:19,
8:21, 18:19,
20:2, 23:15,
24:23, 33:10,
43:17, 50:11,
77:7, 77:9,
85:8, 91:6,
122:9, 139:4,
140:7, 145:8,
145:11, 145:14,
172:1, 183:23,
199:1, 204:20,
207:2
**alterations**
145:1
**although**
101:11
**alto**
5:16
**always**
49:25, 52:2,
170:21
**alwaysuseoption**
199:6
**amend**
145:6
**america**
1:13, 1:18,
2:5, 2:9
**among**
11:3, 11:8,
11:25, 12:4,
64:23, 158:10,
167:25
**amount**
37:22, 38:13

**analyses**
49:15, 49:16,
49:19
**analysis**
11:1, 11:6,
12:6, 12:9,
12:16, 12:18,
12:24, 13:15,
14:5, 15:4,
15:13, 16:19,
22:3, 22:7,
23:10, 24:7,
25:11, 26:20,
26:22, 29:9,
29:18, 30:20,
36:23, 39:18,
41:6, 41:11,
41:15, 41:24,
41:25, 42:9,
42:12, 42:17,
42:20, 42:21,
43:6, 43:15,
43:23, 46:4,
46:14, 46:15,
46:16, 46:17,
47:1, 50:23,
51:5, 51:13,
52:9, 52:11,
52:22, 61:9,
70:13, 80:23,
81:8, 81:18,
82:4, 89:25,
90:14, 91:8,
91:9, 92:13,
97:24, 98:7,
98:9, 98:14,
100:24, 101:7,
106:21, 110:3,
110:21, 110:23,
111:15, 114:25,
119:20, 120:8,
121:11, 132:13,
132:22, 133:2,
133:6, 133:10,
133:19, 134:1,
134:13, 134:21,
134:24, 135:7,
138:14, 151:1,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

56

154:7, 155:12,
155:16, 155:25,
156:16, 173:5,
173:15, 175:8,
177:23, 179:6,
186:5, 189:5
**analyze**
80:9, 82:14,
145:10
**analyzed**
48:12, 81:1,
92:14, 202:7
**analyzer**
14:21, 15:11,
16:4, 16:9,
16:10, 16:16,
16:19, 16:24,
17:1, 17:6,
17:13, 18:19,
19:4, 19:10,
21:8, 21:11,
75:25
**analyzing**
46:18
**android**
80:1, 80:2,
80:5, 80:8,
80:10, 81:3,
82:1, 82:17,
88:15, 96:20,
185:15
**anniversaries**
161:19
**another**
131:23, 132:1
**answer**
12:10, 19:8,
26:1, 30:3,
34:10, 44:14,
44:23, 45:24,
47:23, 49:1,
49:6, 49:20,
61:10, 61:17,
64:17, 75:18,
84:3, 84:5,
92:25, 98:15,
101:8, 113:23,
114:1, 119:15,

119:23, 123:17,
128:2, 145:6,
148:5, 148:6,
148:9, 166:3,
166:6, 192:21,
193:8, 193:9,
193:12, 193:13,
193:14, 194:7,
201:16
**answered**
12:11, 62:21,
63:22, 67:25,
126:10, 135:13,
142:15, 148:8,
155:22
**antecedent**
73:16, 73:20,
73:23, 74:4,
74:8, 74:22,
77:24, 78:5
**anticipates**
100:12, 101:3
**any**
10:16, 10:21,
11:3, 11:8,
11:14, 11:24,
12:3, 12:7,
12:12, 12:21,
14:9, 14:14,
19:3, 20:17,
22:11, 22:13,
22:14, 24:17,
25:15, 33:11,
33:20, 34:4,
36:15, 37:3,
37:19, 46:22,
47:6, 49:11,
50:5, 51:12,
52:14, 58:3,
62:9, 63:24,
67:10, 79:17,
80:10, 80:19,
80:23, 81:6,
81:11, 81:16,
81:20, 82:3,
82:6, 84:9,
85:11, 87:17,
87:18, 101:12,

101:21, 101:23,
102:9, 104:15,
104:24, 104:25,
105:7, 106:4,
106:21, 107:23,
110:21, 110:23,
111:8, 111:14,
112:23, 113:14,
114:25, 119:15,
126:12, 126:15,
126:18, 129:4,
129:5, 130:9,
132:21, 134:19,
134:20, 138:4,
139:11, 140:18,
144:25, 154:2,
155:25, 157:7,
160:9, 171:1,
173:1, 173:8,
174:1, 180:14,
193:4, 196:13,
200:4, 200:15,
202:18, 203:14,
203:15, 203:16,
208:13
**anybody**
85:1, 85:9,
124:15, 125:18,
130:9
**anyone**
106:21, 111:14,
114:25, 122:23,
123:1, 123:4,
123:19, 123:23,
189:13, 189:22
**anything**
27:8, 27:13,
36:20, 62:11,
62:14, 84:21,
86:3, 102:14,
104:2, 111:25,
125:10, 169:19,
172:13, 172:24,
173:4, 173:6,
179:24
**anyway**
31:22
**anywhere**
161:7

**apologize**
202:10
**appeal**
70:4
**appear**
144:23, 186:10,
190:4, 190:16
**appeared**
182:11
**appearing**
66:10, 136:24
**appears**
60:21, 61:6,
62:23, 75:20,
99:15, 141:15,
141:21
**apple**
1:5, 2:15, 5:3,
8:5, 8:6, 8:18,
9:6, 100:16,
100:22, 132:3,
132:4, 134:4,
182:3, 183:23
**apple's**
52:5, 182:6
**applicable**
58:8
**application**
50:2, 50:6,
64:20, 66:10,
88:16, 88:25,
92:2, 127:20,
187:1, 190:20,
191:2, 191:8
**applications**
65:6, 79:1,
149:10, 149:11,
169:6, 169:12,
169:22
**applied**
41:10, 41:14,
42:12, 42:17,
42:20, 47:9,
47:16, 48:14,
70:12, 71:12,
71:17, 71:18,
71:21, 88:12,
138:12, 178:25

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

57

applies
52:2, 93:3
apply
43:17, 44:1,
44:4, 44:5,
48:4, 49:25,
72:3, 72:4,
179:5
applying
50:23, 71:11,
128:20, 135:4
approach
34:10, 34:13
approximate
197:20
april
7:24, 191:24,
192:4
area
197:20, 198:7
aren't
160:22
argue
35:20, 140:5
argument
52:16, 101:1,
134:10, 146:17,
167:10, 167:11,
180:19
argumentative
44:21, 47:24
arguments
134:2, 134:11,
180:15
around
25:21, 32:22,
35:14, 68:21,
144:22, 149:20,
159:12, 160:23,
161:4, 161:10,
161:14, 161:20,
165:16, 198:7,
198:8, 198:23,
202:25, 206:19
arris
22:24, 23:10,
23:23
art
33:10, 33:13,

33:14, 33:23,
34:2, 50:11,
50:13, 50:19,
50:24, 51:1,
51:7, 51:8,
51:9, 51:12,
73:5, 73:23,
74:3, 75:2,
75:24, 77:21,
77:23, 78:4,
94:11, 122:19,
130:25, 131:3,
131:9, 131:14,
132:8, 132:9,
132:11, 132:12,
132:19, 132:21,
133:2, 133:7,
133:11, 133:12,
133:16, 133:18,
134:7, 134:15,
134:17, 134:24,
135:1, 135:4,
135:8, 135:10,
135:15, 159:8,
160:5, 161:1,
161:22, 162:22,
162:24, 189:8
articulated
15:12, 16:9
aside
101:11, 148:11
ask
11:5, 20:11,
32:5, 33:3,
37:5, 41:9,
58:6, 59:17,
65:12, 83:13,
83:24, 87:10,
87:12, 87:24,
111:21, 111:24,
114:4, 124:15,
149:15, 149:17,
150:11, 156:9,
168:10, 185:3,
192:11, 193:19,
201:8
asked
18:22, 30:2,

62:20, 63:22,
64:17, 67:24,
86:8, 87:11,
126:9, 132:20,
135:12, 138:4,
138:6, 148:4,
155:21, 168:13,
173:13, 185:12,
191:21, 192:23,
196:20
asking
12:15, 16:11,
16:12, 37:1,
37:2, 40:4,
42:1, 46:13,
47:4, 48:2,
48:3, 48:4,
48:17, 48:19,
49:5, 51:3,
51:25, 60:8,
66:10, 67:19,
71:24, 72:7,
84:6, 85:17,
98:1, 102:4,
107:4, 107:10,
110:1, 113:25,
124:13, 145:23,
158:16, 158:17,
158:19, 159:24,
159:25, 166:11,
172:15, 176:19,
178:3, 182:20,
186:20, 189:21,
198:9, 198:11,
199:4, 203:19
aspect
144:2
aspects
30:20, 133:6,
133:8
asserted
46:9, 69:23,
71:19, 167:6
assessed
83:1
assessing
36:20
associate
53:8, 53:24,

54:17, 55:6,
55:9, 55:11,
55:13, 55:18
associated
63:14
associates
185:15
assume
43:13, 44:10,
44:16, 45:3,
93:7, 102:6,
105:19, 116:10,
118:18, 162:14,
187:2
assumed
132:12, 177:25
assuming
97:7, 97:15,
132:8, 151:23,
178:14
assumption
97:16, 131:13,
133:1, 134:25,
135:15, 136:2,
139:12
assumptions
201:18
atom
150:20
attached
7:5, 9:16,
9:18, 27:20,
59:23, 136:18,
165:8, 167:20,
191:25
attachments
84:20, 165:18
attempt
158:13
attempted
16:21
attempting
169:1
attempts
157:1
attention
68:19, 163:16,
195:7

**attorneys**
2:19, 22:10,
85:4, 85:5,
194:19, 206:8
**audible**
140:25, 141:10,
166:16
**august**
149:23
**author**
168:10
**automatically**
53:15, 54:7
**available**
33:11, 80:8,
122:18, 122:21,
125:4, 125:6,
128:15, 134:11,
206:11, 207:2
**avenue**
4:6, 6:10, 8:14
**avenues**
125:3
**aware**
11:3, 11:8,
78:19, 102:9,
127:3, 127:10,
131:9, 173:7
**away**
25:19

**B**

**back**
17:8, 32:25,
35:24, 38:25,
68:12, 69:15,
70:7, 92:24,
99:22, 101:10,
117:18, 125:22,
125:25, 128:8,
129:23, 152:21,
154:19, 162:17,
165:2, 166:18,
184:20, 184:23,
194:17, 200:23
**backstory**
170:12
**base**
80:8, 80:10,

83:3, 138:24,
155:7
**based**
22:9, 43:6,
50:18, 51:19,
83:15, 107:13,
108:8, 128:3,
134:5, 135:17,
142:4, 144:22,
151:11, 158:12,
162:25, 167:11,
202:8
**bases**
81:17
**basic**
24:18
**basically**
136:22, 176:12,
177:5
**basis**
30:22, 36:8,
40:6, 44:13,
44:15, 45:9,
47:13, 48:1,
55:4, 56:3,
56:4, 73:16,
73:20, 73:23,
74:4, 74:8,
74:22, 77:24,
78:6, 92:13,
119:12, 128:12,
139:1
**bates**
7:21, 167:18,
194:25, 199:9
**bean**
115:23, 116:3,
116:9, 116:11,
121:3, 140:2,
140:12, 142:10,
142:17, 142:21,
146:9, 178:1,
178:5, 178:16,
178:17, 178:22,
181:6, 181:15,
181:23, 182:15,
190:12
**bear**
161:23

**bearing**
156:15
**because**
19:8, 26:11,
32:3, 35:4,
40:7, 43:6,
56:1, 65:9,
66:8, 72:9,
75:4, 76:16,
78:11, 90:9,
91:8, 99:15,
99:18, 104:9,
113:24, 115:5,
122:11, 124:4,
124:22, 125:4,
126:13, 128:6,
147:7, 147:15,
147:21, 156:25,
182:24, 192:12
**become**
76:6
**becomes**
26:16, 38:19,
71:22
**been**
9:2, 10:7,
16:2, 19:10,
23:11, 27:10,
33:13, 33:24,
34:1, 39:13,
49:24, 58:24,
59:10, 70:4,
75:17, 76:8,
87:1, 88:13,
93:4, 93:9,
93:12, 104:17,
106:7, 109:1,
109:6, 109:16,
110:2, 111:1,
117:3, 126:23,
151:23, 153:23,
158:1, 158:2,
158:6, 158:16,
158:21, 159:3,
159:20, 163:11,
163:14, 163:23,
166:2, 166:5,
169:3, 176:8,

184:5
**before**
4:14, 27:22,
35:20, 44:2,
59:16, 79:5,
94:25, 102:14,
104:22, 105:23,
111:1, 112:5,
118:15, 121:1,
129:25, 136:7,
140:23, 141:14,
141:21, 146:20,
157:1, 167:22,
168:4, 171:14,
186:11, 208:6
**begin**
115:6, 142:6
**beginning**
154:22
**begins**
8:3, 117:23
**behalf**
5:2, 6:3, 25:14
**behind**
46:16, 123:11,
123:14
**being**
90:8, 90:20,
92:5, 101:1,
132:19, 134:2,
138:12, 143:22,
143:23, 144:2,
144:9, 144:10,
146:25, 150:16,
159:5, 161:13,
164:1, 166:1,
166:15, 168:19,
168:23, 169:11,
169:19, 169:22,
170:13, 170:15,
170:16, 191:21,
200:10
**belief**
102:24
**believe**
11:14, 15:20,
17:2, 20:21,
23:18, 32:4,

38:10, 40:7,
49:13, 50:8,
51:15, 51:22,
52:8, 52:15,
52:21, 59:8,
59:9, 69:13,
72:17, 72:23,
75:1, 84:24,
86:16, 86:19,
87:9, 87:11,
87:15, 92:16,
101:2, 102:14,
102:16, 102:19,
104:12, 111:8,
111:14, 128:4,
130:11, 130:13,
132:3, 135:3,
135:7, 136:1,
136:20, 138:9,
138:10, 148:7,
152:14, 157:17,
160:5, 165:18,
167:7, 169:19,
182:22, 190:19,
197:9, 199:14,
200:17, 203:14,
205:16, 207:4

**believes**
16:10

**besides**
84:25, 160:8

**best**
27:11, 62:25,
82:20, 123:25,
138:5, 158:24,
207:5

**better**
41:9, 67:10,
167:10, 201:7

**between**
26:2, 26:11,
26:23, 29:11,
29:20, 32:16,
34:1, 40:22,
42:13, 42:19,
43:18, 46:6,
46:9, 46:23,
47:6, 48:11,

49:10, 49:18,
67:13, 67:16,
68:4, 88:9,
89:21, 89:24,
94:6, 100:14,
100:20, 103:21,
105:11, 105:21,
105:22, 107:7,
116:6, 140:12,
169:14, 172:2,
202:19

**big**
61:13

**binary**
112:18, 112:20

**bit**
146:19, 171:14,
201:3, 201:7

**bits**
83:3

**body**
28:2

**boolean**
199:6

**both**
43:8, 47:8,
75:9, 92:7,
116:2

**bottom**
34:19, 167:12,
168:11, 199:19

**bound**
109:12

**box**
163:15, 163:17,
164:9

**break**
68:7, 129:14,
129:16, 164:22,
184:12, 194:9,
194:12

**brief**
165:23

**bringing**
133:7

**broad**
111:4, 132:15,
172:9, 180:17,

196:19

**broke**
129:25

**brought**
161:23

**browser**
11:3, 11:9,
11:16, 13:11,
104:7, 111:12,
116:10, 116:20,
116:24, 116:25,
118:6, 140:1,
140:3, 140:13,
140:14, 141:25,
142:11, 142:22,
143:17, 144:13,
146:9, 147:14,
147:23, 148:13,
166:24, 178:5,
178:17, 178:23,
179:20, 180:16,
182:15, 190:20

**browsers**
149:10

**building**
201:13, 201:24

**but**
13:10, 16:12,
25:10, 29:6,
31:22, 35:21,
38:8, 39:5,
40:5, 47:8,
55:4, 61:15,
67:9, 68:22,
72:15, 75:11,
75:21, 82:23,
83:12, 93:12,
97:24, 106:6,
109:4, 113:20,
114:10, 116:5,
119:25, 121:2,
125:8, 127:21,
128:23, 129:11,
132:8, 133:25,
134:3, 134:6,
135:2, 136:1,
136:7, 139:21,
140:6, 141:4,

143:5, 144:6,
145:10, 146:2,
146:20, 146:25,
147:4, 149:18,
151:2, 155:6,
156:7, 158:1,
164:11, 166:7,
167:11, 170:24,
172:3, 174:22,
181:14, 182:22,
187:21, 193:11,
195:18, 195:24,
205:23

_____

              **C**

**calculated**
106:24

**california**
1:2, 1:6, 2:16,
5:16, 8:7

**call**
84:14, 84:15,
85:1, 96:20,
143:1, 151:18,
163:16, 170:23,
186:24, 195:15,
203:4, 205:2,
205:4, 205:9,
205:13

**call-up**
140:23

**called**
22:23, 91:16,
91:21, 92:5,
96:18, 96:22,
101:17, 142:9,
142:12, 142:20,
143:8, 143:21,
166:15, 187:6,
195:19, 195:23,
196:6, 197:5

**calling**
17:1, 186:17,
195:18, 197:8,
205:15

**calls**
11:20, 13:20,
15:7, 19:23,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                              60

26:4, 34:7,
38:21, 40:2,
41:7, 41:20,
42:23, 43:20,
45:22, 46:12,
47:2, 47:11,
47:21, 48:6,
50:20, 53:17,
54:9, 54:14,
55:15, 55:22,
58:22, 59:6,
63:21, 65:24,
66:17, 67:6,
67:25, 71:8,
72:5, 73:17,
73:25, 74:24,
76:4, 76:18,
77:12, 78:2,
78:9, 82:11,
82:24, 95:19,
97:4, 97:11,
97:21, 98:12,
101:5, 103:10,
103:16, 103:25,
106:17, 117:5,
118:23, 120:14,
120:21, 121:21,
121:22, 131:4,
133:4, 133:21,
134:8, 135:13,
135:23, 155:8,
172:10, 175:12,
176:9, 186:3,
189:11, 193:6,
195:11, 203:12,
204:9
**calvin**
5:4, 5:5, 8:17,
9:6
**came**
70:3, 70:7,
71:17, 72:1
**can**
12:10, 15:13,
17:3, 18:11,
29:6, 29:14,
32:25, 35:13,
36:5, 39:4,

43:1, 44:4,
44:5, 44:19,
45:24, 47:23,
50:22, 55:7,
58:16, 59:1,
61:21, 62:18,
62:22, 66:20,
67:12, 67:15,
68:21, 72:20,
74:16, 77:16,
79:1, 82:20,
83:8, 85:15,
102:5, 102:8,
102:10, 102:15,
117:9, 117:13,
123:10, 123:18,
129:6, 136:14,
137:11, 141:16,
148:7, 159:7,
159:13, 160:1,
160:19, 161:8,
162:7, 170:18,
171:2, 171:5,
184:9, 194:10,
201:16, 203:7,
203:17, 204:4,
204:20, 205:3
**can't**
22:25, 23:2,
35:2, 52:17,
56:1, 61:17,
64:17, 67:9,
117:8, 117:25,
158:2, 175:2,
195:24, 199:17
**candidate**
53:8, 53:24,
54:17, 55:9,
55:11, 55:13
**cannot**
44:13, 55:3,
56:5, 175:4
**capable**
67:1, 161:5
**capacity**
111:17
**caption**
1:23

**captivate**
185:2, 185:13
**carriers**
12:22
**carries**
72:8
**carry**
131:10
**carrying**
98:22
**case**
7:13, 8:8,
22:13, 22:23,
23:12, 23:16,
23:23, 24:10,
24:13, 24:20,
25:2, 25:6,
25:19, 27:18,
27:21, 27:24,
28:22, 30:8,
30:15, 32:20,
33:5, 35:18,
38:25, 41:11,
41:15, 43:7,
44:17, 47:14,
51:24, 58:8,
58:16, 58:25,
66:9, 69:24,
70:2, 77:19,
82:13, 83:7,
86:23, 98:9,
106:6, 106:8,
106:21, 108:13,
108:19, 110:6,
112:10, 112:12,
112:14, 126:14,
126:20, 134:6,
136:4, 139:11,
147:22, 159:15,
163:13, 169:21,
177:19, 181:6,
181:22, 184:3,
188:17, 190:15,
192:4, 194:21,
202:8, 208:14
**cases**
22:11, 22:22,
28:19, 40:8,

179:18, 186:11
**cast**
90:7
**causes**
153:13
**caution**
123:7
**cc'g**
169:5
**ccr**
3:13
**cellphones**
175:7
**cellular**
170:10
**center**
5:7, 97:1
**centerpiece**
150:25
**central**
185:8, 185:16
**certain**
65:4, 81:2,
112:22, 149:5,
149:8
**certainly**
16:21, 30:24,
31:5, 34:13,
51:4, 52:13,
55:17, 64:5,
83:6, 106:6,
143:12, 179:6,
191:17, 193:14,
195:18, 195:23,
205:23
**certainty**
127:22, 129:4
**certified**
208:3
**certify**
208:7
**cetera**
131:24, 131:25,
161:19
**chain**
7:21, 84:22,
167:18
**change**
38:10, 38:17,

45:18, 45:25,
93:9, 93:13,
95:16, 95:17,
145:11, 145:13,
191:19, 193:3
**changed**
16:8, 19:18,
25:3, 37:18,
37:22, 69:14,
70:10, 93:4,
102:12, 105:5,
105:7, 191:14,
192:14, 192:19
**changes**
19:3, 19:14,
19:16, 36:5,
81:24, 82:3,
82:6, 82:7,
155:19, 168:19,
168:23
**characteristics**
201:13, 201:23
**characterization**
143:14, 159:5
**characterize**
43:1, 56:23,
67:10
**characterized**
48:9, 48:10
**charted**
134:21
**check**
52:16, 52:18
**choice**
186:16
**choices**
57:22, 64:13,
64:24, 78:23,
78:25
**choose**
66:10, 99:7
**chose**
125:8
**chosen**
186:2
**chris**
6:22, 8:11,
83:16, 83:19,

167:25
**circuit**
70:4, 71:12,
71:15
**circuit's**
71:16
**circumstances**
184:11
**cite**
198:20, 199:25,
204:13, 204:19,
206:16
**civil**
1:7, 2:12
**claiming**
47:14, 189:2
**claims**
18:1, 40:23,
41:12, 42:14,
42:19, 43:19,
46:19, 71:11,
72:16, 72:17,
72:18, 77:16,
88:12, 100:12,
101:4, 120:20,
120:23, 138:7,
155:13, 155:14,
167:6, 174:11,
174:12, 175:10,
175:11, 175:15,
175:18, 175:25,
176:3, 177:25,
181:1, 181:17,
182:8, 187:16,
189:8
**clarification**
52:25
**clarity**
128:2, 171:6
**class**
151:4, 151:5,
151:6, 151:18,
151:21, 151:23,
152:1, 152:7,
152:15, 153:4,
153:5, 153:6,
153:7, 153:8,
153:16, 157:2,

161:5, 188:9,
188:10, 188:11,
190:22, 191:3,
191:9, 195:10,
195:15, 204:10
**classes**
162:1
**clear**
13:22, 16:15,
82:20, 107:25,
110:15, 149:23,
195:16
**clearly**
110:22, 164:2
**click**
137:12, 137:13,
140:22, 140:25,
141:10, 157:13,
157:14, 158:18,
165:18, 165:19,
166:2, 166:5,
166:6, 166:12,
166:15, 166:16,
166:24, 167:8,
201:14, 201:25
**clicked**
163:4, 204:3,
204:8
**clicking**
137:1, 138:1,
157:11, 158:11,
158:12, 159:7,
160:2, 162:20,
162:21, 163:2
**close**
70:8
**coaching**
49:2, 49:3
**code**
15:18, 15:21,
15:23, 19:4,
19:17, 35:20,
36:24, 37:17,
37:22, 38:3,
38:5, 38:6,
38:10, 79:20,
79:23, 79:25,
80:8, 80:10,

80:13, 80:14,
80:19, 81:1,
81:7, 81:12,
81:16, 81:21,
82:18, 82:22,
83:3, 87:8,
92:1, 94:2,
95:16, 104:2,
104:4, 112:15,
112:17, 112:18,
112:21, 125:19,
139:4, 141:12,
141:17, 141:19,
141:24, 143:15,
145:1, 151:25,
152:6, 152:8,
152:10, 171:18,
173:9, 175:3,
186:20, 188:18,
188:20, 188:23,
194:10, 194:24,
196:2, 197:1,
198:20, 198:22,
198:24, 198:25,
199:25, 200:3,
200:4, 200:23,
201:8, 201:17,
202:9, 202:20,
202:21, 202:23,
202:25, 203:7,
203:21, 204:13,
204:14, 204:15,
204:20, 204:21,
205:6, 205:17,
205:21, 205:25,
206:4, 206:6,
206:12, 206:13,
206:15, 206:17,
206:20, 206:22
**codes**
141:8, 196:17
**coin**
174:25
**colleagues**
169:14
**colorable**
22:3, 22:7,
28:4, 28:13,

41:6, 42:21,
43:3, 43:12,
43:14, 46:17,
46:25, 92:25,
93:3
**colorably**
10:1, 11:17,
11:19, 16:3,
16:18, 16:23,
22:15, 23:6,
23:9, 23:14,
24:7, 24:19,
24:22, 25:3,
25:8, 25:17,
25:22, 25:23,
26:14, 29:1,
29:3, 29:8,
29:18, 30:19,
35:22, 43:16,
44:9, 44:11,
44:19, 45:6,
45:13, 90:1,
90:23, 91:8,
91:9, 92:17,
93:17, 93:21,
95:18, 118:20,
119:7, 119:12,
119:17, 119:21,
119:22, 119:23,
120:3, 120:13,
121:19, 138:20,
144:15, 167:5
**column**
136:20, 157:8,
158:18, 159:12,
160:8, 160:17,
161:13, 161:14,
161:15, 161:17,
161:20, 161:21,
162:6, 162:9,
162:10, 163:1
**com**
5:5, 5:13, 6:6,
6:8
**combine**
33:22
**combines**
33:12

**come**
22:6, 32:25,
122:15, 127:16,
129:2
**coming**
162:17
**commission**
208:20
**common**
105:3, 105:20
**communicate**
170:5
**communications**
123:8
**community**
82:2
**company**
1:20, 2:11,
22:23, 23:3
**compare**
31:1, 48:18,
65:9, 81:12,
91:10, 95:12,
155:13
**compared**
31:6, 174:10
**comparing**
95:11, 139:3
**compiled**
112:18, 152:11
**complete**
32:24, 65:6,
66:11, 75:18,
79:1, 89:4,
90:7, 90:10,
90:19, 104:17,
201:6, 201:12,
201:22
**completed**
109:16, 142:8,
180:8
**completely**
15:12, 16:9,
35:16, 51:20,
91:3, 91:4, 92:4
**completing**
89:15
**complexity**
36:21

**component**
27:10, 83:7,
199:16, 199:22,
200:1, 200:20
**components**
61:25, 139:5
**compound**
13:14, 13:20
**comprise**
164:4
**comprises**
15:11, 16:8
**computer**
53:5, 53:21,
54:13
**computing**
113:6
**concept**
95:22, 158:8,
159:4, 159:21,
159:25, 160:6,
162:18
**concerned**
100:14, 100:20
**concerning**
7:16, 59:19,
59:22
**conclude**
43:6
**concluded**
107:13, 108:8
**conclusion**
11:21, 13:21,
15:8, 19:24,
26:5, 34:8,
38:22, 40:3,
41:8, 41:21,
42:24, 42:25,
43:2, 43:21,
45:23, 46:12,
47:3, 47:12,
47:22, 48:7,
50:21, 53:18,
54:10, 54:15,
55:16, 55:23,
58:23, 59:7,
63:22, 65:25,
66:18, 67:7,

**conclusions**
67:25, 71:9,
72:6, 73:18,
74:1, 74:25,
76:5, 76:18,
77:13, 78:3,
78:10, 80:16,
80:18, 82:12,
95:20, 97:5,
97:12, 97:22,
98:13, 101:6,
117:6, 120:22,
121:22, 131:5,
133:5, 133:22,
134:9, 135:13,
135:24, 155:9,
175:13, 176:10,
186:4, 189:12
**conclusions**
167:12
**conduct**
26:22
**confidential**
2:19, 24:17,
194:19
**confirm**
199:15, 200:19
**confirmation**
200:12
**confirming**
169:2, 199:21
**confirms**
200:1
**confused**
197:16, 198:4
**confusing**
32:3, 207:4
**conjecture**
110:4
**connect**
95:2
**connection**
7:9, 9:14,
17:13, 62:14,
63:6, 95:7,
95:25, 126:20,
205:18
**conscious**
146:13, 182:24

consequence
183:12, 183:18,
183:21
consider
27:6, 27:12,
98:2, 108:17,
125:7
considered
26:13, 36:5,
97:25, 104:22,
121:23, 124:16,
125:11, 125:19,
139:4, 189:15
considering
156:1, 156:2
considers
16:16
constant
154:1
constitute
151:7
constituted
178:6
construction
58:1, 58:7,
70:2, 70:3,
71:6, 71:11,
71:15, 71:16,
72:1, 72:11,
78:8, 78:13,
78:21
constructions
70:9, 70:12,
138:12
construed
70:18, 72:24,
76:9
construing
70:25, 71:10,
73:2
consult
126:25, 127:5
consumer
23:1
contain
9:24, 15:21,
20:24, 21:2,
21:5, 21:8,

21:12, 21:15,
187:18, 188:5,
188:8
contains
64:12, 180:5
contempt
28:21
content
68:25, 190:22
contention
111:6
contest
111:7
context
27:2, 59:8,
68:21, 72:15,
72:20, 79:12,
79:17, 95:14,
118:5, 139:16,
139:17, 144:20,
144:23, 145:24,
149:20, 151:3,
153:8, 153:14,
169:15, 175:8,
188:9, 194:6,
195:24, 202:7
contextual
20:10, 20:13,
20:15, 20:19,
21:21, 91:15,
93:10, 104:6,
106:2, 106:25,
110:12, 110:20,
127:19, 140:24,
141:14, 141:21,
144:9, 147:15,
147:24, 148:13,
153:23, 190:5,
190:17, 193:17
continue
15:25, 20:9,
20:13, 24:24,
90:2
continued
1:23, 23:16
continues
162:7
contradict
50:1

conventions
68:24
conversation
170:19
conversations
85:11, 128:3
converse
84:13
copy
9:11, 27:17,
27:21, 59:18,
136:14, 136:16,
192:2
core
94:6
corner
192:8
corners
16:15
corporation
1:7, 1:12,
1:15, 2:4, 2:7,
2:16, 7:14,
27:17, 27:19
corrected
69:22
correctly
130:3
could
11:5, 13:22,
18:21, 28:6,
35:20, 55:7,
65:6, 68:14,
82:8, 82:23,
87:12, 102:13,
102:14, 113:2,
114:1, 128:8,
128:25, 140:5,
145:6, 161:23,
166:18, 167:10,
176:6, 182:18,
186:21, 195:12
couldn't
126:2, 129:4,
206:2, 206:23
counsel
8:15, 9:5,
48:20, 69:22,

123:9, 123:16,
126:5, 155:11,
208:13
counterclaim
5:2, 9:6
counterclaim-pla-
intiffs
6:4
course
57:11, 71:22,
169:18
court
1:1, 8:6, 8:23,
25:6, 25:10,
33:10, 39:13,
43:14, 44:8,
44:10, 44:16,
45:4, 46:5,
78:20, 131:11,
131:14, 208:3
court's
25:9, 76:12
courts
28:20
cover
50:13, 51:1
covered
20:2, 100:16,
100:22
cream
190:11
create
95:25, 116:21,
117:8, 117:15,
117:25, 203:5,
203:12
created
117:22, 153:20
creates
203:1, 203:11
creating
17:12
creation
117:3, 117:20,
149:25, 150:5,
150:24, 200:8
current
138:11

**cutler**
5:6, 5:14
**cv--lhk(psg**
1:8, 2:13, 8:8

**D**

**d**
6:1
**da1-a**
10:6, 10:14,
10:15, 11:3,
11:9, 11:16,
11:24, 12:22,
13:1, 13:9,
13:16, 14:3,
14:6, 14:11,
14:16, 15:2,
15:5, 15:25,
16:1, 16:20,
16:22, 17:5,
19:2, 19:11,
19:12, 19:14,
19:20, 20:4,
20:9, 20:14,
21:11, 21:12,
21:19, 42:3,
43:15, 43:18,
44:18, 45:5,
45:10, 46:6,
52:13, 52:19,
53:4, 53:8,
53:12, 53:15,
56:24, 57:1,
57:4, 104:5,
118:11, 118:13,
119:4, 120:7,
121:17, 130:16,
138:18, 139:17,
139:25, 140:13,
141:9, 141:13,
141:19, 141:24,
142:16, 142:25,
143:17, 144:7,
144:13, 145:3,
147:14, 147:23,
148:12, 166:14,
166:23, 167:4,
172:5, 173:22,

174:5, 177:24,
179:1, 179:7,
179:14, 179:19,
180:13, 180:15,
180:16, 190:21,
191:2, 191:6,
202:4, 202:7,
202:11
**da1-b**
10:7, 10:19,
10:20, 12:3,
12:4, 12:13,
12:22, 13:1,
13:9, 13:16,
20:22, 20:23,
20:24, 21:2,
21:5, 21:8,
21:15, 21:19,
21:20, 42:3,
43:16, 43:18,
44:18, 45:6,
45:10, 46:6,
52:15, 52:17,
52:18, 53:20,
53:24, 54:3,
54:7, 112:6,
114:18, 114:24,
115:8, 115:16,
115:21, 116:3,
116:15, 116:25,
117:16, 121:16,
130:16, 190:21
**da2**
10:7, 10:22,
10:23, 12:18,
12:22, 13:1,
13:9, 17:15,
17:17, 54:12,
54:17, 55:9,
55:13, 55:20,
56:8, 56:10,
57:10, 58:19,
58:25, 59:1,
59:8, 64:19,
65:2, 65:19,
78:22, 90:1,
90:22, 99:14,
130:16, 148:21,

148:24, 149:3,
149:9, 183:23,
184:9, 186:17,
187:2, 188:5,
188:8, 188:19,
191:2, 191:5,
191:7, 202:13,
203:15
**daewoong**
7:19, 86:15,
165:5, 165:6,
167:17
**darko**
169:5
**dart**
185:3, 185:16
**data**
14:11, 14:16,
14:22, 20:25,
21:3, 53:5,
53:21, 54:13,
76:1, 106:4,
111:18, 161:6
**date**
8:9, 135:18,
135:20, 135:22,
136:23, 136:24
**dates**
135:17, 160:24,
161:12
**dave**
8:18
**david**
5:12, 5:13
**day**
70:8, 208:17
**deal**
164:3
**decided**
70:5
**deciding**
28:21
**decision**
76:12
**declaration**
130:17
**deduce**
80:18

**deeper**
143:6
**default**
164:4, 183:25
**defaults**
153:7, 154:8
**defendant**
2:17, 5:3, 9:6
**defendants**
1:21, 6:3
**define**
190:23
**defined**
204:22
**delaware**
1:19, 2:10
**delay**
107:7
**deliberate**
102:17, 103:4,
103:8, 103:18,
103:24, 182:24
**deliberately**
183:1
**deliberateness**
104:3
**delinked**
74:22
**delivered**
206:10
**denigrate**
36:10
**denigrating**
35:12
**depend**
139:16
**dependent**
32:16, 72:9
**depends**
18:8, 18:13,
73:8, 104:23
**deponent**
86:23
**depos**
8:12, 8:24
**deposition**
3:1, 4:1, 8:4,
8:13, 165:4,

165:10, 165:14,
167:16, 169:16,
171:7, 194:6,
208:6
**depositions**
38:8
**describe**
136:22, 157:6,
159:18, 160:10,
173:21, 196:14
**described**
18:23, 164:17,
171:18, 202:14
**describes**
57:23, 77:7,
159:6
**describing**
20:3, 71:2,
122:1, 150:16,
150:18, 196:5,
196:9
**description**
35:13, 89:20
**design**
25:21, 35:14,
87:3, 99:13,
141:3, 141:4,
141:7, 142:3
**design-around**
9:22, 10:1,
11:2, 11:7,
13:12, 16:2,
16:22, 17:15,
17:17, 19:3,
22:14, 23:11,
23:16, 25:16,
46:7, 79:5,
80:14, 81:14,
81:23, 82:10,
87:17, 90:22,
91:19, 101:14,
101:22, 102:11,
105:6, 105:10,
114:19, 115:8,
116:25, 118:20,
118:25, 119:2,
119:20, 120:17,
121:12, 123:21,

138:19, 139:18,
139:25, 140:13,
140:21, 141:9,
141:13, 141:20,
152:12, 154:24,
155:14, 166:14,
166:24, 167:4,
174:6, 174:11,
174:12, 174:16,
175:3, 175:10,
179:2, 190:21,
191:1, 196:16,
196:24, 197:2,
200:16, 200:20,
202:4, 202:13,
202:20, 203:15
**design-arounds**
10:8, 13:2,
17:21, 19:15,
33:22, 34:5,
34:24, 35:4,
35:7, 35:13,
36:12, 36:16,
36:25, 37:18,
37:23, 38:1,
38:6, 43:16,
51:5, 52:12,
63:7, 70:14,
91:13, 93:2,
93:6, 93:9,
101:24, 102:12,
102:15, 122:11,
122:17, 125:22,
126:16, 126:19,
127:1, 127:3,
127:6, 127:11,
128:5, 129:10,
130:2, 130:5,
130:10, 130:16,
132:23, 133:3,
155:3, 155:13,
156:4
**designate**
194:18
**designated**
7:20, 165:7
**designed**
142:5, 144:21

**detail**
29:5, 61:10,
98:15, 101:8,
141:5, 168:25,
172:14, 173:14,
186:6, 200:4
**details**
24:18, 46:2,
86:9, 119:1,
168:25, 180:20
**detect**
104:4, 111:11,
112:24, 114:23,
157:16, 158:13,
158:20, 159:11,
159:19, 160:10,
160:20, 164:18,
176:1, 191:3,
191:9
**detected**
14:23, 52:24,
53:3, 53:9,
53:25, 54:18,
55:10, 55:12,
55:14, 55:18,
58:15, 58:17,
58:20, 59:2,
59:4, 74:6,
76:2, 104:13,
111:1, 112:5,
117:9, 118:1,
120:24, 120:25,
146:10, 146:14,
147:8, 147:12,
147:22, 156:24,
162:16, 174:8,
174:17, 175:4,
175:19, 175:21,
176:5, 176:20,
176:21, 177:3,
177:11, 177:18,
179:12, 179:16,
179:21, 179:25,
180:4, 180:7,
181:2, 181:17,
181:23, 182:23,
183:1, 185:17,
185:21, 190:5

**detecting**
14:22, 114:19,
115:3, 115:9,
116:7, 116:14,
117:15, 158:14,
159:2
**detection**
104:15, 104:16,
115:6, 115:13,
115:15, 115:16,
115:18, 115:20,
115:22, 116:2,
117:4, 141:25,
142:6, 142:9,
142:20, 143:1,
143:8, 143:16,
143:21, 148:11,
176:8, 181:7,
182:16, 183:3,
185:18, 190:4
**detector**
144:11, 190:22
**detects**
76:1
**determinable**
113:1
**determination**
108:10, 108:14,
109:6, 110:9,
127:25, 172:16,
172:20
**determinations**
108:24
**determine**
33:11, 39:25,
41:16, 42:13,
94:20, 113:2
**determined**
107:15
**determines**
108:16
**determining**
28:14, 108:20,
179:1, 201:12,
201:23
**developing**
170:6
**device**
11:17, 14:11,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                                     66

14:16, 20:25,
21:2, 22:15,
22:16, 56:8,
56:10, 56:24,
60:15, 62:10,
103:19, 103:24,
106:23, 107:12,
107:18, 108:7,
108:14, 108:15,
108:20, 110:9,
137:6, 142:7,
142:17, 173:2,
175:2, 178:17,
182:15, 191:12,
191:15, 192:13,
192:15, 192:17,
192:20, 193:15,
193:17, 193:25,
196:6, 201:20,
204:8

**device's**
109:3

**dial**
64:13, 66:12,
88:14, 188:17,
188:24

**dialer**
61:4, 61:19,
62:24, 62:25,
66:4, 66:24,
67:3, 68:24,
100:11

**dialing**
63:3, 64:20,
99:5

**dialogue**
66:9, 153:6

**diametrically**
175:23

**dichotomy**
94:6

**didn't**
20:1, 30:18,
31:25, 32:5,
37:9, 37:19,
66:19, 80:23,
93:8, 93:12,
124:15, 124:21,

125:13, 138:2,
141:10, 171:3,
192:12

**difference**
22:3, 22:7,
26:2, 27:3,
27:4, 27:7,
27:9, 30:4,
41:6, 42:18,
42:21, 43:8,
43:15, 46:6,
46:9, 46:17,
46:20, 46:23,
46:25, 47:1,
47:5, 47:7,
47:15, 67:16,
67:20, 68:4,
70:17, 88:9,
89:21, 89:24,
94:24, 100:14,
100:20, 103:21,
103:23, 105:11,
105:21, 105:22,
116:6, 142:3,
196:13

**differences**
11:3, 11:8,
11:14, 11:25,
12:4, 12:8,
12:12, 12:21,
26:11, 26:23,
28:4, 28:14,
29:10, 29:19,
31:9, 31:15,
31:24, 32:10,
32:15, 33:4,
40:22, 41:3,
42:13, 43:3,
43:5, 43:10,
43:12, 43:18,
48:10, 48:11,
49:10, 49:18,
67:13, 80:24,
81:11, 81:16,
92:25, 93:3,
140:8, 140:11,
140:18, 196:22,
202:19, 203:17

**differently**
19:18, 72:24,
137:22, 203:15

**difficult**
34:9

**digest**
29:6

**direct**
68:19, 95:25

**directing**
198:6

**direction**
208:11

**directly**
95:6

**disable**
82:19

**disagree**
141:17

**disagrees**
43:14

**disambiguate**
172:2

**discern**
141:17

**discernible**
139:9

**disclose**
123:8, 156:23,
157:19, 157:22,
158:14, 158:20,
159:1

**disclosed**
61:7, 61:18,
62:4, 62:6,
97:19, 137:24,
158:9, 158:11,
162:6

**discloses**
60:24, 63:18,
64:2, 65:21,
67:3, 67:21,
99:3, 157:22,
159:10, 160:3

**disclosure**
137:16, 137:18,
158:8

**disclosures**
163:1

**discrete**
83:7, 162:23

**discuss**
63:10, 87:7,
123:23, 125:18,
168:21, 206:16

**discussed**
20:8, 65:14,
87:9, 87:15,
97:20, 127:23,
166:1, 168:19,
170:16

**discussing**
96:13, 131:20,
186:8

**discussion**
17:9, 28:12,
83:15, 89:21,
126:12, 127:18,
171:3, 180:12

**discussions**
22:9, 112:2,
125:21, 125:24,
125:25, 126:8,
126:15, 126:18,
130:1, 130:4,
130:9, 130:14

**display**
20:15, 21:21,
96:23, 97:3,
98:11, 104:5,
149:3, 177:21

**displayed**
96:22, 107:1,
110:12, 147:15,
147:24, 148:13,
203:6, 203:13

**dispute**
10:5, 10:10,
10:11, 10:13,
10:16, 10:19,
10:21, 10:24,
13:4, 78:16,
78:20, 154:4,
188:25

**disputed**
10:25

**district**
1:1, 1:2, 8:6,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

67

8:7, 28:20,
131:10
**division**
1:3, 8:8
**doctrine**
40:16, 41:4,
41:10, 41:14,
41:17, 41:23,
41:24, 42:4,
42:7, 43:4,
43:10, 45:19,
46:4, 46:14,
46:15, 46:24,
49:14, 49:25,
51:17, 51:19,
51:22, 52:6,
52:11, 133:10,
134:4, 134:12,
173:23, 174:2,
179:2
**document**
59:25, 68:25,
136:12, 137:9,
154:16, 155:23,
160:12, 167:15,
167:22, 167:24,
180:18, 192:10,
195:6
**documented**
69:13
**documents**
170:24
**doe**
43:24, 50:23,
52:18, 134:1,
175:8, 177:24
**does**
9:24, 15:23,
34:22, 49:25,
51:25, 57:4,
58:2, 58:8,
58:11, 66:14,
66:25, 67:2,
68:3, 76:15,
88:18, 89:13,
94:22, 97:1,
97:3, 98:11,
101:25, 111:10,

114:20, 114:23,
115:9, 115:18,
121:2, 121:7,
121:18, 142:6,
146:3, 156:12,
156:23, 157:6,
157:19, 157:21,
158:14, 158:19,
158:22, 159:1,
159:20, 159:25,
163:10, 163:23,
166:12, 184:1,
185:16, 185:18,
185:20, 186:1,
186:23, 191:18,
193:21, 195:9,
195:14, 195:18,
198:20, 198:21,
199:1, 199:12,
199:14, 199:15,
201:5, 201:11,
202:25, 203:4,
205:2, 205:9,
205:12
**doesn't**
45:9, 76:22,
77:5, 113:13,
115:3, 115:6,
145:10, 158:1,
158:4, 159:18,
164:3
**doing**
13:24, 50:1,
137:5, 172:3,
174:4, 174:21
**dominant**
171:25, 173:15
**done**
12:6, 12:9,
12:16, 12:17,
12:18, 12:24,
13:15, 25:25,
35:19, 41:25,
44:1, 47:25,
48:8, 70:23,
102:14, 106:21,
108:18, 110:21,
110:23, 111:14,

113:2, 114:25,
119:23, 138:14,
184:14, 194:11
**dorr**
5:6, 5:14
**down**
39:6, 70:3,
71:17, 72:2,
95:10, 100:6,
106:11, 109:19,
110:10, 110:17,
110:19, 115:17,
115:19, 115:20,
115:22, 116:2,
116:8, 116:15,
142:10, 142:12,
142:21, 142:24,
143:2, 143:10,
143:22, 144:11,
153:15, 153:18,
161:3, 171:19,
172:6, 172:16,
172:17, 173:2,
182:23, 182:25,
186:12, 192:10
**downstream**
90:18
**dr**
3:1, 4:1, 7:2,
7:9, 7:15, 8:4,
8:22, 9:1, 9:13,
9:20, 10:13,
10:18, 12:25,
15:3, 15:10,
15:17, 16:7,
16:12, 16:16,
17:1, 35:3,
35:6, 41:25,
44:17, 45:4,
51:5, 52:8,
52:21, 59:19,
59:21, 68:14,
70:7, 84:19,
88:12, 90:6,
90:14, 96:13,
98:20, 99:8,
102:21, 107:21,
111:5, 113:8,

113:13, 113:16,
129:25, 130:24,
131:7, 133:10,
145:10, 146:12,
149:16, 149:22,
150:3, 150:13,
151:2, 151:25,
154:6, 155:17,
155:25, 156:22,
165:10, 167:8,
167:21, 178:4,
182:4, 182:7,
182:20, 183:8,
184:5, 184:6,
184:22, 187:24,
188:12, 188:18,
188:20, 188:23,
192:2, 195:2
**duly**
9:2
**duration**
38:9, 104:24,
171:22, 172:4
**during**
50:2, 50:5,
183:4

---

**E**

**each**
37:23, 40:23,
47:14, 47:20,
53:25, 54:18,
55:10, 55:12,
55:14, 72:19,
184:1, 186:9
**earlier**
22:16, 24:10,
75:13, 78:16,
96:13, 124:14,
128:3, 130:23,
131:16, 132:20,
135:21, 136:6,
166:11, 184:24,
185:1, 196:21,
202:18
**echostar**
7:14, 27:17,
27:19

effect
101:22, 101:23, 101:25, 165:19, 165:22, 166:2, 166:5, 166:7, 166:12, 166:15, 166:25, 167:8
effectively
52:10
either
129:8, 167:3, 167:5, 189:24
electronics
1:10, 1:13, 2:2, 2:5, 23:1
element
52:19, 119:16
elements
13:17, 13:24, 26:3, 26:12, 26:23, 33:12, 33:22, 34:2, 39:8, 39:12, 51:18, 51:24, 51:25, 52:1, 52:5, 52:9, 119:13, 191:19, 192:25, 193:22, 194:1
eliminate
34:11, 34:12
else
27:8, 27:13, 62:11, 84:21, 85:1, 85:9, 161:7, 172:13, 172:24
elsewhere
82:22
email
56:11, 56:13, 57:13, 84:20, 84:22, 85:21, 85:24, 88:24, 88:25, 149:6, 149:10, 167:25, 168:6, 168:11, 168:20, 169:4,

180:3, 180:6, 191:4, 191:10
emailing
170:9
emails
7:21, 84:19, 86:7, 167:18, 168:9, 169:14, 170:13, 170:16, 170:23
emanuel
4:5, 6:9, 8:21
empirical
37:20, 106:4
employ
33:22
employed
208:13
employee
83:21, 170:7
employees
85:12
employs
33:12
enable
53:12, 54:3, 55:20, 57:2, 63:19, 65:22, 67:4, 77:10, 96:5, 177:10, 177:22
enables
60:25, 64:3, 120:24, 177:20, 180:1, 180:2, 180:5
enabling
52:24, 53:2, 58:14, 74:6, 156:24, 159:14, 174:9, 174:18, 175:20, 177:3, 179:8, 179:15, 179:20, 185:21
encompasses
77:5, 77:17, 77:18
end
70:1, 145:24,

164:8
ending
199:8
engineer
84:1, 111:20
engineers
129:9
enough
14:1, 39:23, 48:24, 95:25, 120:12, 191:7, 202:22
ensure
139:5, 175:2
ensures
175:1, 175:3
entire
94:18, 151:3, 155:20, 156:1, 156:2, 163:13, 164:11, 164:18
entirety
9:25, 34:23, 137:6, 157:4, 157:14, 157:20, 158:2, 158:4, 158:5, 158:9
entities
151:11
entitled
79:13
equate
48:2, 48:3
equivalence
176:7
equivalents
40:16, 41:4, 41:11, 41:15, 41:17, 41:23, 41:25, 42:4, 42:8, 43:4, 43:11, 45:20, 46:4, 46:14, 46:15, 46:24, 49:14, 49:25, 50:10, 50:17, 51:17, 51:19, 51:23, 52:6,

52:11, 133:10, 134:5, 134:13, 173:23, 174:3, 179:3
error
137:15
esquire
5:4, 5:12, 6:5, 6:7
essentially
80:16, 88:16, 94:20, 106:5, 121:8, 154:1, 162:4, 193:9, 200:17
establish
29:11, 29:20, 30:11
established
58:25, 59:10
et
27:17, 131:24, 161:19
even
36:5, 58:12, 78:15, 158:20
event
142:13, 142:24, 165:24
events
172:7, 173:1, 173:6, 173:8
eventually
187:6
ever
79:7, 86:13, 86:15, 86:16, 86:19, 125:9, 134:16, 189:25
every
25:20
evidence
62:9, 62:13, 86:5, 88:21, 96:9, 105:15, 106:7, 107:5, 109:2, 109:4, 109:10, 112:9,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                                    69

112:13, 113:14,
121:6, 137:9,
143:4, 150:9
**exact**
176:25
**exactly**
13:23, 16:10,
16:15, 16:25,
23:18, 24:1,
61:24, 68:2,
76:16, 100:25,
127:7, 143:19,
201:16
**examination**
7:2, 9:5
**examined**
9:3
**example**
11:16, 27:4,
35:18, 38:15,
57:13, 62:11,
81:5, 88:24,
96:25, 98:8,
98:15, 103:15,
105:20, 107:24,
121:3, 121:15,
122:20, 128:18,
131:23, 132:1,
132:16, 133:9,
136:23, 136:25,
137:11, 139:2,
146:9, 157:10,
159:15, 160:17,
160:23, 162:20,
164:21, 181:4,
188:24, 190:7
**examples**
107:21, 107:23,
137:3, 161:10,
162:7, 164:19
**except**
170:19
**excerpt**
62:23
**excuse**
133:13, 142:15
**exhibit**
7:8, 7:12,

7:13, 7:15,
7:18, 7:19,
7:21, 7:23,
9:11, 9:13,
9:17, 9:20,
18:25, 27:16,
27:18, 34:15,
39:1, 59:18,
59:21, 65:8,
66:23, 67:17,
67:18, 68:5,
69:16, 79:10,
82:5, 83:10,
85:13, 88:1,
98:18, 101:10,
114:12, 116:18,
118:8, 122:1,
130:20, 132:14,
135:1, 135:3,
136:15, 136:16,
136:17, 136:21,
138:15, 145:21,
154:19, 156:19,
157:8, 165:4,
165:6, 165:12,
166:2, 167:14,
167:16, 167:18,
168:5, 168:7,
168:12, 171:8,
184:23, 187:7,
191:24, 192:2,
196:3, 204:19,
205:19, 206:16
**exist**
18:17, 28:16,
93:8, 159:25
**existed**
18:20, 34:2,
91:12, 93:2,
93:5, 128:17,
178:23
**exists**
80:14, 159:22,
162:19
**expect**
189:17, 189:20
**experience**
101:2, 138:23,

139:13, 139:15,
139:19, 139:22,
139:24, 140:1,
140:9, 140:12,
140:19
**expert**
7:8, 7:15,
9:12, 9:13,
9:21, 43:25,
59:19, 59:21,
63:7, 98:1,
112:15, 112:17,
112:20, 136:7,
149:23, 165:11,
168:5, 204:19
**expires**
208:20
**explain**
164:6, 168:18
**explained**
40:5, 47:13,
47:20, 47:25,
48:1, 48:8,
49:9, 49:12
**explaining**
71:14
**explicit**
89:21, 89:25,
90:9, 90:16,
90:20, 90:22,
94:7, 94:9,
94:10, 94:17,
94:22, 95:6,
95:24, 96:6
**explore**
120:1
**expressed**
17:11, 35:10,
36:19, 102:19
**extending**
50:12, 50:25
**extent**
16:25, 19:13,
34:14, 48:9,
49:16, 49:17,
63:24, 83:1,
90:6, 131:9,
155:25, 156:3,

156:11, 189:2,
191:18, 193:21
**extrapolating**
128:19
**eyes**
2:19, 194:20

**F**

**fact**
10:7, 10:15,
10:20, 13:5,
64:1, 66:14,
66:24, 67:2,
74:18, 86:13,
93:23, 94:1,
121:15, 121:17,
123:11, 123:12,
141:8, 146:11,
153:23, 161:3,
169:21, 184:8
**factors**
120:2
**facts**
171:1, 171:4
**factual**
37:3, 56:3,
56:4
**fair**
12:8, 14:1,
20:25, 52:3,
59:2, 65:23,
80:17, 92:11,
105:13, 120:9,
120:20, 124:6,
133:20, 143:2,
148:1, 169:24,
189:19, 191:7,
202:22
**fairly**
148:7
**false**
153:12
**far**
64:7, 93:14,
95:21, 100:13,
100:19, 103:9,
105:9, 108:1,
139:11, 193:4

**fault**
32:8
**favorable**
25:12
**feature**
38:15, 38:18,
39:20, 100:11
**features**
29:11, 29:12,
29:20, 29:21,
30:10, 30:12,
31:2, 31:5
**fed**
71:12
**federal**
70:3, 71:14,
71:16
**feedback**
109:15
**feel**
145:24
**fernands**
85:8
**few**
136:21
**figure**
61:4, 61:12,
61:19, 61:22,
62:19, 63:13,
63:18, 63:24,
65:13, 65:17,
66:14, 66:23,
67:13, 67:20,
68:1, 68:2,
68:4, 68:5,
96:16, 136:23,
163:5, 163:19,
185:8, 185:25
**file**
195:3, 196:10,
196:14
**files**
15:18, 15:21,
15:23
**finally**
10:22
**financial**
208:15

**find**
12:1, 12:4,
16:22, 80:23,
81:6, 144:7,
144:12, 145:1,
160:3
**finding**
18:3, 18:23,
30:22, 44:13,
131:8, 202:18
**findings**
131:10
**finds**
43:15
**fine**
31:7, 37:11,
129:17, 152:25
**finger**
101:14, 101:20,
102:1, 102:10,
102:13, 104:21,
105:12, 106:1,
106:11, 106:14,
106:24, 107:14,
108:9, 109:7,
109:19, 110:10,
110:17, 110:19,
111:2, 112:5,
115:17, 115:18,
115:20, 115:22,
116:2, 116:8,
116:15, 140:23,
142:10, 142:12,
142:21, 142:24,
143:2, 143:10,
143:12, 143:22,
143:23, 144:11,
153:15, 171:20,
172:6, 172:16,
172:17, 172:20,
173:2, 182:23,
182:25, 186:12
**fingers**
101:20
**finish**
48:21, 49:8
**finished**
75:19

**first**
9:2, 14:10,
14:19, 24:6,
30:3, 127:12,
131:2, 136:21,
144:19, 149:17,
168:11, 175:16,
190:3, 190:15,
195:6, 205:22
**flaw**
46:3
**focus**
28:20, 29:10,
29:19, 30:9,
30:10, 30:20,
39:5, 66:20,
86:12, 139:23,
155:3, 155:19,
156:4, 169:1
**focused**
36:21
**focuses**
30:24
**focusing**
29:9, 29:18,
145:7, 185:8
**fog**
142:18
**follow**
32:7, 32:8,
93:14, 123:16,
142:24
**followed**
37:8, 37:12,
37:14
**following**
103:6, 103:12
**follows**
9:4, 156:16
**footnote**
34:18, 34:20,
34:22, 35:1
**foregoing**
208:6, 208:7
**form**
147:4, 147:5,
147:6, 149:4,
184:4

**formats**
161:6
**forth**
42:9
**found**
11:17, 12:7,
12:8, 12:12,
12:13, 17:25,
18:9, 18:12,
18:15, 18:19,
19:5, 25:23,
39:12, 39:19,
44:8, 44:10,
44:17, 46:5,
50:7, 51:13,
75:22, 81:7,
81:17, 82:3,
121:4, 133:12,
133:16, 133:17,
133:18, 138:6,
178:24, 190:3,
192:21, 204:14,
204:20
**foundation**
117:10, 118:3
**four**
16:15, 126:3
**frame**
125:22, 126:1,
127:14, 127:15
**framework**
80:1
**free**
145:24
**freestanding**
46:15
**friday**
3:3
**from**
8:17, 8:19,
15:15, 18:8,
18:13, 22:10,
26:14, 27:10,
34:19, 41:18,
42:21, 43:3,
43:19, 50:25,
57:8, 61:3,
62:24, 63:6,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                    71

64:23, 66:4,
70:3, 71:11,
73:8, 77:24,
79:15, 81:1,
81:2, 81:3,
81:13, 81:21,
82:9, 88:17,
91:15, 91:20,
93:10, 94:12,
96:6, 98:20,
103:18, 108:1,
122:2, 123:21,
128:20, 130:14,
130:23, 130:24,
131:25, 140:18,
141:17, 143:2,
143:10, 143:22,
144:5, 144:8,
144:11, 144:21,
149:11, 149:16,
154:9, 167:25,
169:4, 174:8,
174:17, 174:21,
188:18, 192:3,
195:16, 199:17,
200:2, 201:17,
203:7, 204:4,
206:8
**front**
73:15, 196:17,
197:2, 198:25,
203:21
**ftp**
206:11, 207:2,
207:6
**fully**
180:8
**fulsome**
194:7
**function**
20:3, 27:10,
35:16, 49:11,
91:12, 92:5,
92:6, 92:8,
92:17, 92:18,
93:1, 93:5,
93:8, 125:11,
125:17, 128:21,

143:1, 161:24,
174:6, 174:20,
175:5, 175:9,
175:11, 175:14,
175:18, 175:20,
175:22, 175:23,
175:25, 176:3,
176:6, 176:13,
176:19, 176:21,
177:2, 177:6,
177:9, 187:5,
193:21, 195:19,
200:10, 204:22,
204:23
**functionality**
79:14, 100:15,
100:16, 100:21,
100:22, 122:2,
122:9, 122:12,
122:24, 123:6,
123:20, 124:4,
124:5, 124:10,
124:22, 125:1,
125:8, 125:14,
125:20, 128:4,
128:7, 155:4,
155:5, 156:5,
156:6, 183:13,
183:22
**functioning**
92:3, 174:21
**functions**
15:22, 19:9,
34:11, 40:8,
87:4, 92:10,
128:17, 142:9,
142:20, 143:8,
143:21, 144:11,
161:11, 169:3,
174:20, 174:22,
193:22, 197:19
**fundamental**
67:16, 67:20,
116:5
**fundamentally**
66:7, 66:8,
90:11, 144:19
**funny**
51:3

**further**
83:14, 161:3,
162:25, 207:7

---
G
---

**gave**
63:24, 78:21,
193:8, 193:9,
194:2
**general**
99:13, 128:20,
162:2
**generally**
15:3, 35:9,
35:10, 112:19,
161:4, 161:24,
189:15, 206:21
**generated**
152:9
**generic**
145:12, 145:16
**gentleman**
170:10
**gesture**
102:6, 102:17,
102:25, 103:1,
103:5, 103:9,
103:22, 104:4,
114:22, 115:11,
115:13, 118:15,
144:21, 144:23,
146:3, 146:21,
146:25, 190:8
**gestures**
101:13, 102:9,
102:13, 103:22,
111:23, 111:25,
172:2
**get**
9:10, 17:9,
59:16, 65:5,
79:17, 113:22,
124:8, 137:14,
148:6, 153:18,
176:25, 182:21,
194:10, 200:9
**gets**
109:14, 112:17,

112:21, 152:10
**gingerbread**
96:14, 96:21,
97:19, 186:7,
190:8
**give**
28:6, 44:7,
46:2, 129:6,
162:7, 187:9
**given**
14:5, 68:2,
119:11, 164:19,
164:21, 173:15,
194:7, 208:8
**gives**
160:22, 161:9
**giving**
194:6
**glide**
185:2, 185:13
**go**
38:25, 52:18,
92:24, 94:19,
152:21, 173:14,
186:21, 200:8
**goes**
95:13, 201:3
**going**
20:11, 32:2,
46:3, 62:12,
65:9, 65:12,
68:9, 90:19,
94:21, 99:12,
107:7, 108:14,
108:17, 119:1,
119:14, 123:15,
123:16, 127:9,
129:20, 139:9,
149:15, 149:17,
154:10, 157:13,
161:9, 162:2,
164:24, 168:8,
170:3, 173:12,
184:17, 189:20,
191:17, 193:10,
193:20, 194:14,
201:7, 207:10
**good**
9:8, 9:9, 36:3,

Case 5:12-cv-00630-LHK Document 2259-4 Filed 04/16/18 Page 74 of 107
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

72

133:15
**got**
28:10, 68:18,
99:2, 127:12,
152:21, 152:22,
153:2, 180:11,
180:25, 183:16,
183:19, 184:25,
192:9, 194:10,
202:24, 207:6
**grab**
176:24
**granularity**
109:2
**great**
109:12, 109:14,
154:11, 154:18
**greenwich**
5:8
**guess**
31:6, 34:14,
37:5, 67:19,
71:25, 79:8,
131:14, 154:16
**guys**
129:18

**H**

**had**
23:11, 27:10,
39:19, 41:25,
69:12, 70:4,
84:4, 84:19,
85:19, 87:1,
93:9, 106:24,
107:13, 108:9,
110:25, 113:2,
122:18, 122:21,
125:2, 125:3,
125:5, 125:21,
127:4, 128:14,
130:1, 130:3,
130:18, 137:5,
155:17, 166:2,
166:5, 169:3,
173:25, 188:20,
191:12, 192:13,
192:17, 192:18

**hale**
5:6, 5:14
**hand**
208:16
**handbook**
60:10, 60:12,
60:16, 60:19,
60:23, 61:4,
62:7, 62:24,
64:2, 67:2,
68:23
**handed**
206:9
**happening**
71:13
**happens**
56:9, 56:12,
104:16, 143:12,
188:15
**happy**
111:19
**hard**
91:7
**hardware**
11:12, 11:15
**has**
10:14, 10:18,
10:23, 15:10,
15:14, 15:20,
16:2, 16:9,
16:12, 20:6,
25:3, 28:19,
39:12, 44:10,
44:16, 45:4,
46:5, 58:24,
66:14, 66:16,
66:20, 66:25,
71:3, 73:6,
76:8, 76:21,
78:6, 83:2,
88:12, 89:5,
89:15, 92:1,
92:10, 101:21,
101:23, 104:9,
104:17, 105:5,
105:12, 106:21,
108:18, 109:6,
109:15, 109:19,

110:2, 110:10,
110:21, 110:23,
111:14, 113:2,
114:21, 114:25,
115:4, 115:10,
117:3, 139:8,
142:7, 147:12,
147:16, 147:21,
148:19, 149:5,
154:6, 156:15,
158:5, 158:15,
158:21, 159:3,
159:19, 162:14,
163:13, 164:2,
164:8, 174:20,
179:6, 180:8,
184:6, 186:12,
187:22, 189:9,
189:13, 189:22,
191:17
**hasn't**
64:21
**haven't**
10:21, 11:22,
11:23, 12:6,
12:7, 12:9,
12:12, 12:17,
12:24, 13:15,
14:14, 47:6,
49:15, 61:15,
61:23, 68:2,
83:1, 100:24,
138:14, 189:23
**having**
9:2, 189:25
**he's**
83:20, 113:14,
113:17, 123:13,
123:14, 154:10,
170:4, 189:2
**head**
101:19, 191:6
**heading**
138:23
**hear**
30:18, 192:13
**heard**
125:10, 144:6,

146:17, 156:10
**hearing**
23:24
**held**
4:1
**help**
85:12, 165:11,
166:13
**her**
104:21, 105:12,
107:14, 108:9,
111:1, 112:5,
172:6
**hereby**
208:7
**hereunto**
208:16
**hesitating**
31:4
**hide**
123:11
**hiding**
123:13
**high**
105:16
**highlight**
141:13, 141:20,
148:22, 157:4,
158:24
**highlighted**
57:13, 66:21,
158:16, 158:21
**highlighting**
158:23
**highly**
2:19, 194:19
**him**
48:20, 84:6,
84:9, 84:12,
84:13, 85:17,
86:8, 114:8,
189:1
**his**
15:13, 16:8,
48:21, 48:25,
49:6, 51:7,
52:10, 83:22,
83:23, 84:2,

102:22, 104:21,
105:12, 107:14,
108:9, 111:1,
112:5, 113:21,
149:23, 151:1,
154:12, 154:13,
172:5, 182:22,
182:23, 189:5
**hold**
65:8, 196:2
**holding**
182:25
**home**
206:5, 206:25
**hope**
151:23
**hoping**
148:6
**how**
13:24, 18:22,
19:8, 22:6,
22:18, 25:15,
36:24, 37:3,
37:6, 37:17,
37:25, 38:3,
38:10, 57:4,
66:2, 69:7,
70:17, 70:24,
76:15, 80:15,
84:13, 84:15,
86:18, 86:25,
94:16, 101:20,
103:19, 104:18,
104:20, 111:10,
112:17, 112:20,
112:23, 112:25,
113:12, 113:14,
114:23, 117:12,
118:24, 119:2,
120:17, 122:15,
124:8, 124:9,
124:20, 130:12,
131:8, 136:10,
137:3, 141:24,
141:25, 144:5,
158:6, 158:20,
159:10, 159:18,
160:10, 162:2,

164:6, 164:17,
175:14, 182:9,
182:13, 182:14,
182:16, 196:14,
205:25, 206:6,
206:9
**hundred**
16:14, 200:6
**hyperlink**
153:16, 165:23
**hyperlinking**
152:16
**hypothetical**
43:22, 44:4,
44:5, 44:20,
45:9, 45:22,
46:12, 64:16,
93:20, 97:22,
98:13, 106:6,
107:3, 109:22,
110:14, 118:23,
191:16
**hypothetically**
43:13, 93:7
**hypotheticals**
44:1

**I**

**i'll**
26:6, 28:6,
39:11, 41:9,
45:3, 51:3,
59:16, 76:16,
117:12, 153:25,
167:14, 201:8,
204:18
**i've**
10:16, 10:25,
22:9, 25:25,
27:25, 28:10,
33:7, 47:13,
47:20, 47:25,
48:1, 49:9,
49:12, 49:24,
67:12, 70:23,
71:12, 77:15,
86:19, 102:19,
112:9, 112:13,

119:11, 119:23,
144:6, 173:15,
180:25, 189:15,
192:9, 193:19
**ice**
190:11
**identical**
49:17
**identification**
9:16, 9:18,
10:24, 27:19,
59:23, 136:18,
165:8, 167:20,
191:25
**identified**
10:6, 10:14,
10:19, 10:23,
11:24, 12:25,
13:10, 15:17,
53:16, 54:8,
132:23, 151:2,
152:6, 152:8,
152:10, 160:9,
162:10, 184:5,
184:6, 187:24,
188:12, 188:18,
188:20, 188:23
**identify**
8:15, 17:3,
53:4, 53:20,
54:12, 68:25,
151:25, 157:15,
190:23
**iii**
28:3, 28:8
**impl**
151:4, 188:9
**implement**
37:18, 37:25,
127:2, 127:6,
169:1
**implementation**
127:8
**implemented**
127:4, 127:11,
168:23, 170:15,
183:23
**implementing**
161:25

**implicate**
19:16, 46:14,
193:22
**implicated**
145:9
**implicates**
17:13
**implicit**
89:22, 89:24,
90:9, 90:17,
90:24, 94:7,
94:8, 94:12,
94:18, 95:2,
95:7, 95:24,
151:11
**implying**
30:1, 41:22
**important**
102:21, 104:15,
109:14, 120:2
**importantly**
179:12
**inaccurate**
169:11, 169:19
**inartfully**
187:19
**inc**
1:5, 1:14, 2:6,
2:15, 5:3, 9:6,
27:17
**include**
159:13, 166:14,
166:24
**included**
78:1, 87:4,
87:6, 98:25,
128:16, 141:8,
141:12, 141:19,
152:11, 155:5,
156:6, 156:8,
164:9
**includes**
119:13, 175:20
**including**
14:21, 21:6,
85:25, 110:7,
110:8, 120:1,
190:13

incomplete
45:8, 45:21,
46:11, 64:15,
93:19, 97:22,
98:13, 107:2,
109:21, 110:13,
118:22
inconsistency
74:21, 193:12
indeed
141:12
independent
43:22, 44:5,
46:16, 48:12,
49:15, 49:18,
108:17, 134:14
independently
48:13
indicate
66:15, 67:4,
146:9, 164:10,
195:9, 203:1
indicates
30:8, 147:1,
170:11
indication
127:12
individual
11:8, 12:13
individually
11:23
individuals
126:2, 126:4
infer
18:21
info
197:25, 198:17,
199:2
information
14:20, 21:6,
94:17, 164:3
informed
49:24, 71:22,
155:11, 179:6
infringe
10:3, 18:1,
18:9, 18:13,
19:21, 23:17,

24:25, 34:12,
35:17, 35:23,
38:16, 39:12,
42:3, 42:7,
45:19, 51:8,
90:2, 97:7,
97:9, 97:13,
97:16, 97:20,
97:24, 121:4,
154:24, 167:6,
173:23, 178:24,
179:2, 183:24,
184:2, 190:3,
191:15, 191:19,
192:16, 192:20,
193:18
infringed
18:4, 40:21,
41:16, 174:2,
178:15, 191:13,
192:13, 192:18,
192:22
infringement
28:16, 28:20,
29:10, 29:12,
29:19, 29:21,
30:11, 30:23,
35:14, 43:24,
49:13, 51:19,
91:5, 96:7,
98:7, 98:8,
102:22, 127:25,
146:7, 155:12,
178:2, 178:7,
178:9, 178:24,
180:14, 182:21,
183:8
infringement-bas-
ed
28:25, 29:2
infringes
26:16, 193:15
infringing
10:2, 16:5,
17:22, 17:25,
18:4, 18:12,
19:5, 19:6,
26:14, 81:2,

81:4, 81:13,
81:22, 91:14,
95:17, 95:21,
97:15, 97:23,
104:20, 108:7,
155:18, 190:2
inherent
141:3, 141:7
initial
30:10
initialintents
197:25, 198:16,
199:2
initially
29:10, 70:4
initiation
114:21, 115:11,
115:12
injecting
160:7
input
14:11, 20:25,
140:15, 153:4,
153:7, 153:13,
153:21, 154:8,
195:20, 197:4,
199:6
inputs
197:25, 198:17,
199:3
inquire
39:20, 50:24
inquiry
26:15, 39:14,
51:2, 155:3,
156:4
inside
173:2
instance
93:17, 150:22,
162:15, 164:12,
174:10, 186:10,
187:4, 195:17
instances
65:4, 92:7,
98:21, 149:5,
149:8
instant
113:7

instantaneous
113:4, 113:8,
113:11, 113:18
instantiating
200:11
instead
29:9, 29:18,
30:1, 30:9, 88:6
instructions
22:9
instructive
154:1
instrument
171:20
insubstantial
40:23, 41:3,
42:15, 43:10
insubstantially
41:18
intel
132:5
intent
90:17, 90:20,
90:22, 90:24,
91:16, 91:21,
95:6, 95:7,
95:24, 96:6,
147:1, 151:5,
151:11, 188:10,
197:7, 197:24,
198:16, 199:2,
199:13, 199:21,
200:9, 200:10,
200:11, 201:13,
201:24
intentional
146:4, 146:16,
146:20, 146:24,
147:4, 147:5
intentionally
147:16, 147:25,
148:14
intents
89:22, 89:25,
92:3, 94:7,
94:8, 94:9,
94:10, 94:12,
94:17, 94:18,

94:22, 95:2
**interact**
182:9
**interacted**
181:9, 181:19,
181:25, 182:18,
183:5
**interacting**
181:5
**interaction**
142:5, 142:7,
145:13, 145:15,
169:18, 172:2,
185:24, 189:3
**interactions**
128:1, 201:15,
202:1
**interest**
208:14
**interested**
86:10
**interface**
52:23, 53:2,
57:7, 57:9,
57:11, 57:12,
74:5, 74:10,
75:23, 77:10,
87:5, 114:18,
115:8, 120:24,
139:20, 142:4,
142:5, 144:22,
145:9, 145:12,
156:23, 177:10,
179:8, 179:11,
179:15, 179:20,
180:1, 180:2,
180:5, 185:20
**internalized**
170:25
**interpret**
157:25, 158:7,
170:2
**interpretation**
124:6, 196:1
**interpreted**
74:14, 103:3,
103:4, 103:7,
103:24

**interpreting**
74:13
**interrupt**
18:6, 24:5,
49:6, 113:20,
114:5
**interrupting**
48:25
**into**
26:15, 39:14,
39:20, 50:24,
72:8, 82:14,
91:7, 112:18,
131:10, 160:7,
173:14
**invalid**
138:7
**invalidates**
138:10
**invalidity**
7:16, 59:20,
59:22, 60:2,
64:1, 66:5,
68:15, 100:2,
131:16, 134:21,
134:24
**invention**
162:1
**inventions**
132:5
**inventors**
132:4
**investigation**
37:3, 37:13
**invites**
148:8
**invocation**
149:24, 150:4,
150:14, 150:23
**invoked**
204:2, 204:9
**involved**
83:6
**involving**
22:23
**irrelevant**
26:17, 138:24,
139:13, 139:20

**isn't**
17:18, 39:23,
182:3
**isolation**
121:24
**issue**
9:21, 10:9,
11:22, 21:10,
21:18, 22:14,
32:17, 32:21,
33:6, 33:7,
79:7, 87:5,
91:2, 119:20,
119:24, 123:24,
127:15, 137:22,
144:14, 189:14,
190:1, 191:17,
193:20
**issues**
28:15, 47:8,
111:23, 120:1
**itc**
22:25, 24:9
**item**
204:3, 204:8
**items**
190:23, 191:3,
191:9
**its**
19:4, 36:24,
38:1, 124:10,
208:15
**itself**
120:3, 120:12,
121:19, 135:6,
136:13, 137:9,
154:17, 155:16,
155:24, 160:13,
173:10, 174:20,
177:7, 180:18
**ix**
171:19

| **J** |

**java**
194:24, 196:10,
206:14
**jeffay**
3:1, 4:1, 7:2,

7:7, 7:9, 7:16,
8:4, 8:22, 9:1,
9:11, 9:14,
9:20, 59:19,
59:22, 68:14,
129:25, 165:10,
167:21, 184:22,
192:2, 195:2
**jelly**
115:23, 116:3,
116:8, 116:11,
121:3, 140:2,
140:12, 142:10,
142:17, 142:21,
146:9, 178:1,
178:5, 178:16,
178:17, 178:22,
181:6, 181:15,
181:23, 182:15,
190:12
**job**
3:11
**joe**
167:25
**john**
6:7, 8:21
**johnmckee@quinne-
manuel**
6:8
**johnson**
6:22, 8:11
**jose**
1:3, 8:7
**judge**
70:5
**june**
166:4, 208:20
**jury**
15:16, 18:15,
18:19, 18:22,
19:17, 90:13,
91:3, 91:5,
92:15, 94:4,
97:25, 121:8,
138:3, 146:8,
146:17, 189:6,
194:7
**jury's**
18:3, 18:22,

18:24
**just**
9:10, 12:9,
13:22, 14:2,
15:25, 18:11,
19:13, 25:19,
27:14, 29:14,
31:4, 31:13,
32:2, 32:7,
35:1, 39:23,
44:10, 44:22,
50:22, 53:1,
54:24, 55:3,
56:6, 61:15,
61:17, 62:18,
62:22, 62:23,
66:19, 66:20,
68:3, 70:25,
71:1, 71:14,
73:3, 76:22,
78:12, 79:12,
83:8, 104:3,
107:24, 108:2,
108:12, 109:1,
110:15, 113:17,
114:1, 114:2,
119:14, 123:7,
125:23, 126:13,
128:8, 130:8,
132:17, 134:2,
137:24, 139:7,
139:22, 145:6,
145:7, 147:20,
148:3, 148:5,
148:12, 150:4,
150:14, 150:20,
157:22, 159:16,
160:1, 161:9,
162:6, 166:17,
166:18, 167:1,
169:2, 170:4,
170:20, 177:6,
178:8, 183:14,
186:5, 187:9,
189:1, 189:21,
192:22, 193:8,
193:24, 194:5,
194:18, 195:12,

195:16, 197:16,
199:17, 200:18,
201:17, 204:4,
205:24

### K
**keep**
161:9, 162:17,
171:21
**kevin**
3:1, 4:1, 7:2,
7:9, 7:15, 8:4,
9:1, 9:14,
59:19, 59:21
**key**
142:3
**kill**
86:18
**kim**
7:19, 86:15,
165:5, 165:6,
165:22, 167:17
**kind**
119:25
**kinds**
173:11
**knew**
168:16, 200:4
**know**
18:21, 19:8,
20:12, 24:8,
25:2, 25:5,
25:11, 26:3,
27:11, 27:23,
29:6, 37:17,
38:1, 38:4,
40:5, 43:1,
43:25, 44:3,
54:24, 58:1,
58:24, 63:12,
63:25, 64:7,
71:22, 81:25,
82:13, 82:17,
83:4, 83:5,
83:22, 86:21,
86:25, 95:21,
101:21, 102:5,
102:20, 103:9,

105:9, 108:25,
109:11, 109:23,
109:24, 110:1,
110:5, 112:4,
112:11, 113:6,
113:13, 113:19,
117:7, 118:24,
122:16, 124:15,
125:12, 127:7,
131:2, 131:6,
132:9, 132:10,
134:20, 135:25,
137:10, 137:21,
139:12, 143:13,
145:8, 146:11,
150:21, 157:23,
158:6, 160:21,
166:23, 168:15,
168:25, 170:9,
170:12, 172:8,
172:16, 173:13,
179:5, 181:3,
181:8, 181:18,
181:24, 182:13,
182:17, 183:5,
185:11, 189:13,
189:14, 193:4,
193:10, 193:21,
195:25, 201:6,
201:16, 203:17
**knowable**
205:24
**knowing**
67:14, 77:23
**knowledge**
84:4, 84:5,
108:15
**knowledgeable**
84:3
**known**
33:12, 33:23
**knows**
109:15, 110:6
**korean**
1:11, 2:3

### L
**label**
13:23

**labeled**
62:24
**lacks**
20:19, 187:13
**language**
73:3, 74:19,
76:21, 169:17,
176:18, 177:1
**larger**
201:8
**last**
25:4, 70:8,
83:13, 84:15,
122:8, 155:1
**lastly**
36:4
**late**
126:23
**latter**
122:17
**launch**
149:9
**launching**
95:3, 186:25
**law**
25:2, 28:12,
30:15, 139:11,
156:12
**lawyers**
169:15
**learn**
36:23, 37:3
**learned**
24:6
**least**
30:8, 66:21,
72:21, 72:22,
88:19, 93:22,
204:15
**leave**
104:21
**left**
105:12, 107:14,
108:9, 109:6,
109:19
**legal**
11:20, 13:21,
15:7, 19:23,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

77

26:4, 34:7,
38:22, 40:2,
40:4, 40:15,
41:7, 41:21,
42:24, 43:21,
45:22, 46:12,
47:3, 47:5,
47:11, 47:21,
48:7, 50:20,
53:18, 54:10,
54:15, 55:16,
55:23, 58:23,
59:7, 63:22,
65:25, 66:18,
67:7, 67:25,
71:9, 72:6,
73:17, 73:25,
74:24, 76:4,
76:18, 77:12,
78:2, 78:9,
82:11, 95:20,
97:4, 97:11,
97:22, 98:12,
101:6, 117:6,
120:21, 121:21,
131:4, 131:6,
132:10, 133:5,
133:21, 134:8,
135:13, 135:23,
155:8, 175:12,
176:9, 186:4,
189:11
**less**
105:13, 157:20,
172:23
**let**
17:9, 32:23,
48:20, 49:8,
53:1, 65:1,
117:18, 131:11,
137:17, 166:17,
176:24, 192:11,
192:16
**let's**
14:2, 15:25,
20:22, 27:16,
38:25, 44:22,
44:23, 68:6,

73:12, 96:16,
98:24, 105:19,
115:6, 119:15,
164:22, 184:12,
194:9
**level**
17:10, 105:16,
153:19, 172:14,
173:13, 186:6,
200:4
**liability**
1:20, 2:11
**libraries**
159:14, 160:16,
160:20, 161:16,
161:23, 162:15
**library**
160:18, 160:23,
161:11, 161:16,
161:25, 163:3,
190:22, 191:3,
191:9
**library-enabling**
162:11
**lifted**
111:1
**lifts**
112:5
**like**
9:10, 32:23,
33:1, 66:12,
83:12, 83:13,
113:17, 120:4,
165:3, 180:6,
185:3, 193:20,
194:18, 194:23,
200:5
**likely**
137:14
**limit**
50:17, 134:4
**limitation**
14:10, 14:15,
14:20, 15:6,
15:19, 16:4,
16:20, 16:24,
17:6, 19:22,
27:5, 30:5,

40:8, 43:7,
51:20, 52:10,
52:20, 52:23,
58:14, 74:5,
74:11, 75:8,
75:23, 175:16,
176:7, 176:13,
176:20, 176:23,
177:2, 177:6,
177:7, 177:24,
178:7, 178:16
**limitations**
13:18, 19:5,
40:19, 41:19,
187:22, 189:10
**limited**
1:19, 2:10,
50:11, 160:22
**limits**
52:5
**line**
85:18, 98:25,
100:7, 157:8,
159:13, 160:17,
160:23, 161:10,
161:15, 161:20,
161:21, 162:6,
165:16, 167:12,
170:11, 192:17,
193:10, 193:12,
193:13, 193:14,
194:3, 194:5,
194:8, 197:17,
198:9, 198:23,
198:25, 200:5,
202:22, 202:25,
203:20, 203:22,
204:21, 205:3,
205:6, 205:12
**lines**
136:21, 160:18,
161:4, 161:17,
162:9, 162:10,
195:7, 195:9,
197:3, 197:10,
197:12, 197:20,
199:12, 200:24,
204:15

**link**
57:13, 69:1
**linked**
21:17, 53:3,
58:15, 58:18,
58:20, 59:5,
59:9, 71:4,
73:7, 73:10,
73:13, 73:21,
73:24, 74:4,
74:7, 74:9,
74:15, 74:17,
74:20, 75:4,
75:12, 75:17,
76:3, 76:6,
76:7, 76:23,
77:10, 77:14,
78:7, 93:24,
95:3, 97:3,
98:11, 99:4,
99:6, 99:7,
99:11, 177:4,
177:11, 177:18,
177:21, 186:1,
188:1, 188:22
███████
191:3, 191:9
**linking**
14:23, 17:12,
69:5, 69:10,
72:2, 74:23,
75:7, 75:14,
75:20, 76:8,
76:24, 78:17,
78:21
**links**
76:1
**list**
89:13, 89:14,
90:8, 93:23,
93:24, 93:25,
197:25, 198:16,
199:2, 201:6,
201:12, 201:14,
201:23, 201:24,
203:2, 203:4,
203:5, 203:11,
203:13, 204:3

listed
66:22
listen
48:22, 107:9
listeners
201:14, 201:25
listing
66:11, 66:12
lists
161:19
literal
71:2, 73:3,
178:1, 178:6,
178:9, 178:23
literally
40:20, 178:15
litigation
40:24, 131:11,
169:15
little
29:5, 29:14,
72:14, 137:22,
146:19, 154:13,
161:3, 171:14
llc
1:18, 2:9
llp
4:5, 6:9
location
172:21
long
37:17, 37:25,
38:3, 84:15,
101:17, 102:16,
104:18, 104:20,
104:22, 105:11,
105:21, 107:15,
108:11, 108:17,
109:5, 109:15,
109:20, 111:2,
111:10, 112:23,
112:25, 114:23,
140:16, 144:8,
144:21, 145:8,
145:12, 145:15,
146:2, 146:11,
146:12, 146:18,
182:25, 183:4,

190:8, 194:12,
200:6
longer
27:5, 30:5,
35:23, 40:9,
43:7, 133:19
look
14:1, 26:7,
33:10, 41:15,
42:13, 46:20,
61:12, 62:7,
62:9, 62:14,
68:21, 79:17,
80:13, 82:14,
96:16, 98:24,
101:12, 130:17,
136:14, 137:17,
145:24, 149:18,
163:5, 186:21,
198:12, 200:8,
200:9
looked
11:23, 41:11,
195:4, 205:23
looking
31:14, 33:9,
34:18, 43:3,
62:18, 63:12,
89:18, 100:1,
131:20, 166:12,
175:9, 184:23,
197:1, 197:10,
197:12, 197:20,
199:12, 200:23,
200:24, 204:6,
205:6
lost
176:25
lot
113:25
love
113:22
lower
109:12
ltd
1:11, 2:3
lunch
129:15, 129:21,

146:20, 171:14

**M**

made
33:15, 34:2,
35:22, 35:23,
40:1, 50:5,
81:7, 81:25,
82:1, 101:1,
108:10, 109:6,
110:9, 113:17,
118:14, 127:3,
127:10, 128:13,
131:7, 169:6,
206:11, 207:2
madison
4:6, 6:10, 8:14
mahoney
3:13, 4:14,
8:24, 208:3
main
28:2
make
17:4, 19:3,
27:3, 39:13,
51:2, 52:16,
65:1, 67:1,
81:20, 95:7,
95:16, 95:18,
98:8, 108:2,
108:12, 118:19,
120:12, 121:19,
167:10, 201:19
makemyintent
197:8, 199:13,
199:15, 199:20
makes
16:3, 26:2,
38:19, 40:9,
90:22, 94:11,
108:14, 108:23,
118:15, 119:6,
120:3
making
48:23, 133:25,
139:12, 201:18
manifestation
94:1

manner
13:12, 33:13,
33:23, 35:15,
178:16
manually
137:19, 137:23,
156:25
manufacturer
23:2
many
22:18, 93:22,
119:13, 144:5,
196:21, 205:25
mark
27:16, 59:18,
165:3, 167:14,
168:1
marked
9:15, 9:18,
27:19, 59:23,
136:15, 136:17,
165:7, 167:15,
167:19, 191:25,
192:2
marking
9:11
material
61:16, 167:11
materials
100:10
matter
8:5, 132:10
may
64:22, 75:18,
134:3, 147:9,
147:11, 153:22,
153:25, 165:25,
182:21, 187:19,
207:4
maybe
24:2, 24:16,
28:8, 32:5,
32:23, 84:16,
85:8, 167:10,
192:12
mckee
6:7, 8:21,
85:6, 85:7

**mean**
19:14, 20:12, 27:2, 29:4, 29:5, 31:5, 34:9, 34:10, 34:12, 34:14, 35:1, 35:9, 36:9, 36:19, 37:19, 47:4, 51:3, 62:22, 63:16, 72:8, 72:15, 80:5, 82:21, 83:1, 85:18, 87:24, 87:25, 97:23, 98:6, 99:10, 101:7, 101:18, 102:6, 103:18, 105:16, 109:13, 118:24, 119:11, 120:6, 120:16, 121:23, 122:17, 125:21, 130:18, 131:25, 133:23, 135:6, 135:14, 135:25, 137:10, 137:17, 139:20, 140:5, 140:20, 141:6, 143:5, 145:9, 146:5, 147:20, 148:18, 150:20, 152:3, 152:4, 153:18, 153:19, 155:23, 156:14, 164:20, 167:9, 169:1, 170:2, 170:12, 170:22, 172:1, 172:11, 172:14, 173:4, 173:11, 179:5, 179:6, 179:18, 181:13, 187:19, 188:3, 189:15, 193:5, 193:8, 195:22, 197:14, 197:17, 205:23, 206:21

**means**
30:2, 40:8,

137:19, 147:9, 147:11, 177:25

**meant**
99:24, 164:9

**measurements**
37:20

**measures**
27:14

**mechanically**
172:3

**mechanism**
153:19

**memory**
14:20, 21:5, 62:5, 62:16, 62:17

**mention**
51:11

**mentioned**
24:10

**menus**
127:24

**merely**
33:12, 171:21

**message**
137:15, 149:6, 153:6, 153:16, 186:13

**messages**
151:18, 152:1, 152:7, 152:15

**messaging**
191:2, 191:8

**messenger**
13:11, 56:11, 89:1, 111:11, 112:25, 118:11, 118:13, 119:4, 120:7, 121:17, 127:20, 148:21, 148:24, 149:3, 149:9, 180:13, 180:15, 184:9, 190:3, 190:9, 202:9

**met**
27:5, 30:5, 40:9, 41:13,

43:8

**method**
140:15, 151:3, 151:4, 151:5, 178:4, 186:18, 188:6, 188:7, 188:9, 188:10, 188:11, 189:16, 195:10, 195:14, 199:13, 199:15, 199:21, 201:5, 201:11, 201:22, 203:1, 203:5, 203:11, 203:12, 204:2, 204:9, 204:10, 204:23, 204:25, 205:2, 205:3, 205:5, 205:9, 205:10, 205:13

**mid**
127:14

**middle**
31:12, 96:18, 97:2, 98:10, 185:25, 186:1, 186:10

**might**
35:15, 40:21, 181:3, 181:4, 181:8, 181:9, 181:18, 181:19, 181:24, 181:25, 182:9, 182:17, 183:5, 186:2

**milind**
131:24

**mill**
5:15

**milliseconds**
105:4

**mind**
78:11

**minus**
24:4

**minutes**
84:16

**mischaracterize**
76:15

**mischaracterizes**
18:2, 30:14, 48:15, 56:21, 70:20, 70:22, 76:11, 77:2, 80:20, 86:4, 88:20, 89:9, 90:25, 91:23, 92:19, 96:2, 96:8, 105:14, 109:9, 119:9, 121:5, 124:11, 124:24, 137:8, 143:3, 144:16, 146:22, 147:18, 148:16, 169:25, 176:15, 181:11

**misinterpretation**
148:9

**misleading**
91:25

**misled**
28:19

**mistaken**
124:17

**misunderstanding**
42:1

**modification**
33:11, 33:15, 35:21, 38:20, 39:14, 39:21, 40:1, 40:10, 91:11, 118:14, 118:18, 118:19, 120:11, 121:24, 142:25, 143:6, 143:7, 143:9, 143:20, 143:22, 144:1, 144:2, 144:8, 144:10, 145:11

**modifications**
34:1, 34:6, 36:22, 49:11, 81:6, 81:20, 82:19, 82:22, 118:17, 144:6, 144:12, 144:18,

144:25
**modified**
29:12, 29:21,
30:12, 31:2,
31:5, 39:13,
39:19, 80:9,
87:8, 91:11,
93:4, 114:18,
115:7, 122:10,
128:5, 141:24,
143:2, 143:16
**modify**
80:19, 122:24,
124:3, 124:10
**modifying**
36:24, 64:10,
96:5, 125:16,
125:19
**moment**
165:23
**monitor**
8:10, 136:24
**more**
10:1, 11:17,
11:18, 16:3,
16:18, 16:23,
22:15, 23:6,
23:9, 23:14,
24:6, 24:19,
24:22, 25:2,
25:7, 25:17,
25:22, 25:23,
26:13, 28:3,
29:5, 29:14,
29:17, 30:19,
35:22, 36:21,
39:7, 39:11,
43:16, 44:9,
44:11, 44:18,
45:6, 45:13,
46:2, 46:25,
58:2, 58:9,
61:13, 64:19,
72:11, 72:24,
73:6, 74:15,
74:17, 76:9,
77:4, 77:17,
77:25, 78:7,

78:14, 78:17,
78:23, 78:25,
90:1, 90:22,
92:17, 93:17,
93:21, 95:6,
95:16, 95:18,
95:21, 102:17,
105:13, 108:16,
109:7, 109:11,
110:11, 118:20,
119:7, 119:12,
119:16, 119:21,
119:22, 120:2,
120:3, 120:12,
121:19, 138:19,
144:5, 144:12,
144:14, 150:3,
150:14, 167:5,
172:23, 184:13,
193:14, 194:7,
194:9
**morning**
9:8, 9:9, 69:23
**most**
9:12, 9:21,
19:16, 62:2,
62:15, 67:23,
69:15, 70:13,
79:9, 80:11,
81:8, 82:5,
99:4, 173:16
**mostly**
206:5, 207:1
**motivations**
86:11
**moving**
93:10
**mowry**
10:5, 10:13,
10:18, 12:25,
15:10, 15:17,
16:7, 16:12,
16:16, 17:1,
35:6, 41:25,
70:7, 84:19,
88:12, 90:6,
102:21, 113:8,
113:13, 113:16,

130:24, 145:10,
146:12, 149:16,
149:22, 150:3,
150:13, 151:2,
151:25, 154:6,
155:17, 156:22,
167:8, 178:4,
184:5, 184:6,
187:24, 188:12,
188:18, 188:20,
188:23
**mowry's**
15:3, 35:3,
44:17, 45:4,
51:5, 52:8,
52:21, 90:14,
96:13, 98:20,
99:8, 107:21,
111:5, 131:7,
133:10, 155:25,
182:4, 182:7,
182:20, 183:8
**much**
15:24, 32:16,
37:17, 38:10,
83:12, 113:12,
113:14, 127:22,
149:19, 183:20,
206:23
**multiple**
64:14, 66:15,
66:16, 66:25,
67:3, 69:5,
69:11, 72:19,
76:21, 92:10
**must**
33:10, 39:13,
139:4

| N |
|---|

**name**
23:4, 27:24,
92:1, 92:8,
96:19, 185:11,
185:14, 204:23,
204:24
**names**
63:14, 86:22

**nancy**
3:13, 4:14,
8:24, 208:3
**nature**
32:17, 32:21,
33:6
**nd**
165:25
**near**
70:1, 198:14
**necessarily**
38:13, 160:5,
160:22, 164:4
**need**
68:22, 79:17,
99:5, 99:12,
99:15, 99:18,
107:9, 125:17,
129:14, 149:19,
149:20, 183:20,
194:11
**needed**
84:4
**needs**
38:10, 77:8
**negate**
43:9
**neither**
208:12
**never**
85:19, 97:25,
98:6, 113:14,
123:24, 169:3,
176:7
**new**
1:14, 2:6, 3:2,
4:7, 4:15, 5:9,
6:11, 8:14,
15:10, 15:14,
15:20, 26:3,
26:11, 26:23,
49:11, 91:10,
92:13, 93:1,
142:4, 144:22,
145:13, 145:14,
166:7, 167:10,
200:10, 200:11,
203:1, 203:4,

203:11, 208:5,
208:23
**newly**
26:12, 26:16,
28:21, 29:13,
29:22, 31:3
**next**
1:23, 31:8,
31:17, 33:9,
75:7, 89:17,
136:15, 165:3,
167:14, 185:3
**nobody**
110:6, 110:23
**non-infringement**
180:14
**non-obvious**
34:6
**non-representati-
ve**
13:8
**none**
171:6
**nonetheless**
35:22, 60:19,
152:18
**nor**
208:13
**normally**
169:17
**northern**
1:2, 8:7
**notarial**
208:17
**notary**
4:15, 208:4,
208:22
**note**
153:25, 163:25,
199:19, 203:10
**notes**
171:3
**nothing**
170:18
**notion**
31:4, 90:8,
99:10, 113:7,
126:11, 128:23,

162:17, 162:21,
164:4, 164:20
**noun**
75:5, 75:7,
75:10, 75:22,
77:16, 78:13,
78:16
**now**
8:2, 12:25,
19:12, 20:9,
30:8, 32:20,
36:8, 36:14,
41:2, 48:2,
51:6, 58:8,
62:18, 63:2,
64:12, 69:4,
69:9, 69:22,
76:8, 89:24,
92:13, 94:8,
96:16, 102:16,
105:19, 115:15,
118:10, 133:1,
144:23, 146:19,
149:15, 150:3,
151:25, 155:1,
157:3, 158:14,
161:18, 163:10,
166:11, 168:4,
173:21, 174:10,
177:23, 178:14,
178:25, 180:12,
181:22, 183:10,
183:16, 184:3,
196:13, 199:25,
201:20, 202:3
**nowhere**
182:11
**null**
197:24, 198:2,
198:15, 199:1,
199:16, 199:22,
200:1, 200:12,
200:21
**number**
8:3, 28:5,
66:21, 88:14,
99:5, 117:19,
160:21, 161:6,

164:1, 164:7,
164:10, 164:11,
164:14, 164:16,
199:8
**numbering**
13:24, 13:25
**numbers**
63:13, 63:14,
64:13, 66:12,
66:15, 66:22,
66:25, 67:3,
69:1, 180:4,
180:7, 191:4,
191:10, 199:9
**numerical**
38:13
**numerous**
15:21
**ny**
5:9

**O**

**object**
151:12, 197:7,
199:13, 199:21
**objections**
48:23, 98:4
**obvious**
33:14, 33:24,
34:5, 34:13,
34:24, 35:4,
100:12, 101:4
**occur**
57:4, 94:22,
106:2, 110:20,
114:20, 115:3,
115:10, 115:13,
121:3, 172:7,
173:1, 173:8,
182:16, 184:9
**occurred**
142:1, 183:4
**occurring**
153:14
**occurs**
104:15, 104:16,
106:7, 109:5,
115:12, 115:15,

115:16, 171:17,
187:12, 189:5,
200:12
**october**
3:3, 8:9,
208:18
**off**
29:24, 68:9,
68:23, 101:19,
106:12, 129:20,
164:24, 184:17,
191:6, 194:14,
207:10, 207:11
**offered**
134:16
**officer**
208:5
**offices**
4:2
**often**
83:2
**oh**
107:17
**okay**
12:17, 14:4,
20:5, 22:1,
26:9, 28:10,
32:7, 33:2,
34:17, 40:13,
43:13, 44:19,
45:7, 45:12,
45:15, 45:17,
48:22, 48:24,
59:15, 60:4,
65:11, 68:20,
69:17, 69:21,
79:11, 81:6,
83:11, 88:3,
89:19, 93:9,
93:11, 98:19,
99:23, 100:3,
101:10, 105:22,
105:23, 105:24,
107:9, 114:15,
119:4, 119:25,
130:22, 131:18,
133:11, 133:14,
138:17, 145:22,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                              82

146:1, 148:21,
149:21, 151:15,
154:21, 158:22,
160:8, 163:9,
165:15, 171:12,
173:20, 182:13,
184:15, 187:11,
192:5, 192:9,
192:24, 195:8,
196:4, 197:14,
198:24, 199:11,
200:25, 201:2,
204:1, 205:8
**old**
26:2, 26:11,
26:23, 91:10
**once**
68:23, 75:17
**oncreate**
195:10, 195:11,
195:14, 195:15,
195:17, 195:19,
195:21, 197:4,
197:6, 197:7,
197:11, 197:15,
197:22, 198:1,
199:5, 201:5,
201:11, 201:22,
203:1, 203:11
**one**
8:3, 11:16,
18:21, 22:23,
22:25, 23:4,
25:1, 28:6,
28:14, 30:24,
31:13, 35:19,
39:7, 39:11,
51:11, 55:18,
58:3, 58:9,
58:12, 61:13,
64:20, 64:21,
66:20, 66:21,
72:11, 72:21,
72:22, 72:24,
73:6, 74:14,
74:16, 76:9,
76:25, 77:4,
77:17, 77:25,

78:7, 78:14,
78:17, 78:23,
78:25, 86:22,
86:24, 88:19,
92:12, 98:5,
98:24, 105:3,
105:13, 105:22,
105:23, 106:7,
109:7, 109:11,
109:12, 110:11,
110:21, 113:1,
113:2, 119:16,
120:2, 128:18,
134:2, 134:10,
140:5, 140:20,
144:7, 144:19,
166:7, 174:7,
184:13, 185:3,
187:9, 187:22,
194:9, 196:15
**ones**
13:9, 101:19
**ongoing**
7:10, 9:14
**onintent**
205:12
**onintentselected**
205:10
**onitemclick**
204:2, 204:8,
204:25
**only**
2:19, 18:5,
19:11, 58:12,
63:2, 63:13,
63:17, 64:12,
69:11, 72:3,
72:10, 76:9,
76:25, 77:7,
92:12, 94:8,
118:18, 137:13,
155:19, 158:15,
158:20, 159:2,
159:19, 164:16,
171:23, 183:25,
191:13, 192:14,
192:18, 193:16,
194:20

**open**
28:15, 80:2,
80:6, 88:24
**operate**
13:11, 203:15
**operated**
178:17
**operates**
103:19, 196:23
**operating**
111:17, 131:13,
134:25
**operation**
162:23, 189:10,
196:6
**operations**
160:21, 160:24,
161:11, 189:18
**opine**
10:9, 11:14,
23:15, 33:25,
173:22, 201:20
**opined**
22:13, 23:13,
33:7, 35:6,
47:6, 47:8,
60:19, 69:7,
113:8, 150:3,
150:14, 178:4,
189:13
**opining**
60:11, 68:1,
70:16, 154:23
**opinion**
15:9, 16:1,
16:13, 17:5,
19:21, 23:5,
23:8, 23:19,
24:12, 24:19,
24:23, 28:3,
31:11, 34:4,
34:14, 35:10,
42:2, 42:5,
42:6, 45:18,
45:25, 46:8,
49:10, 50:16,
51:6, 69:4,
69:9, 72:1,

74:2, 79:3,
90:21, 95:1,
95:23, 97:8,
97:18, 98:3,
100:10, 100:19,
102:20, 102:21,
112:23, 115:25,
119:5, 134:16,
135:2, 135:9,
135:20, 167:3,
167:13, 173:25,
176:8
**opinions**
9:25, 14:6,
14:9, 14:15,
14:24, 17:12,
18:25, 19:25,
20:1, 20:18,
25:4, 25:21,
33:21, 34:23,
36:15, 44:17,
45:5, 48:1,
51:4, 52:4,
52:8, 62:1,
67:15, 69:12,
70:10, 132:18,
136:3, 136:6,
138:2, 138:8,
156:13, 174:1
**opposite**
156:10, 175:23,
182:4
**option**
90:15, 125:6,
129:1, 154:2
**options**
89:14, 95:12,
128:15, 128:16,
136:22
**order**
2:20, 85:12,
127:5, 136:16,
165:4, 165:11,
167:15, 187:23,
194:20
**ordering**
189:9, 189:18
**ordinary**
33:14, 73:5,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

73:22, 74:2,
75:1, 75:24,
77:21, 77:22,
78:4, 94:11,
159:8, 162:24,
189:7
**original**
71:17
**other**
22:14, 22:24,
51:12, 83:3,
84:9, 84:10,
85:11, 86:24,
99:7, 102:9,
103:22, 119:1,
120:2, 134:11,
140:18, 144:25,
154:2, 155:4,
156:5, 157:7,
158:10, 160:9,
161:9, 162:1,
164:1, 164:6,
171:1, 171:4,
171:20, 172:6,
172:7, 173:1,
173:6, 173:8,
192:24, 193:22,
194:1, 206:10
**others**
52:14, 161:8,
167:25
**otherwise**
131:15, 208:15
**our**
163:16
**out**
15:14, 39:11,
51:21, 52:10,
52:21, 68:14,
72:14, 72:15,
83:8, 129:14,
130:20, 131:16,
184:23, 191:14,
192:15, 192:19,
193:16, 193:25
**outcome**
208:15
**outline**
24:18

**output**
14:15, 21:2
**outside**
126:5
**over**
98:22, 126:3,
131:10
**overall**
133:25
**overly**
111:3, 132:15,
172:9, 180:17,
196:18
**owner**
50:12, 50:25
█████████████
151:6, 188:11
**page**
1:23, 5:15,
7:2, 7:7, 17:11,
28:5, 28:8,
31:18, 31:22,
32:3, 32:8,
32:12, 33:8,
34:19, 39:1,
59:14, 60:2,
65:10, 65:13,
65:14, 65:17,
66:3, 66:23,
67:14, 67:17,
67:23, 68:4,
68:17, 71:24,
79:15, 89:17,
96:16, 97:2,
97:9, 98:10,
98:22, 98:25,
99:24, 100:5,
100:6, 114:7,
114:13, 131:19,
138:15, 145:19,
149:7, 152:23,
152:25, 153:1,
165:14, 168:11,
180:9, 180:24,
181:4, 181:9,
181:19, 181:25,

182:10, 182:18,
184:23, 185:2,
185:4, 192:6,
192:11, 195:6,
198:23, 199:8,
199:9, 199:20,
201:21, 202:14,
203:9, 204:6
**pages**
3:12, 200:6
**palo**
5:16
**pandit**
51:10, 130:25,
131:3, 131:8,
131:21, 131:24,
132:4, 132:8,
132:11, 132:12,
132:18, 132:23,
133:1, 133:7,
133:11, 133:16,
133:17, 133:24,
134:2, 134:3,
134:6, 134:15,
134:17, 134:23,
135:4, 135:10,
135:21, 136:3,
136:10, 136:14,
138:3, 138:4,
138:8, 138:10,
156:20, 156:23,
156:25, 157:1,
157:3, 157:6,
157:8, 157:15,
157:18, 157:19,
157:21, 157:22,
157:25, 158:6,
158:11, 158:12,
158:19, 158:22,
158:25, 159:1,
159:6, 159:10,
160:7, 160:10
**pandit's**
135:7
**paradigms**
137:25
**paragraphs**
34:19

**parameter**
195:23
**parse**
68:24, 162:8
**parser**
161:5, 162:5
**parsers**
159:17, 161:2,
161:18
**part**
20:8, 40:6,
71:22, 80:1,
80:7, 82:1,
87:3, 90:13,
96:1, 96:4,
118:17, 122:11,
122:16, 122:17,
124:5, 124:22,
125:1, 126:13,
128:6, 128:16,
141:4, 143:5,
145:8, 145:11,
146:14, 147:1,
149:17, 149:18,
150:9, 152:24,
153:3, 158:18,
159:12, 175:20
**partial**
160:6, 162:21
**particular**
11:25, 58:3,
77:19, 100:11,
128:21, 131:11,
133:23, 137:18,
147:7, 150:23,
151:10, 157:2,
159:15, 160:4,
160:18, 162:5,
170:3, 202:8
**particularly**
86:10, 173:5
**parties**
208:14
**parts**
197:18
**party**
25:12
**passage**
75:20, 117:20,

157:9
**passed**
90:17, 91:16,
91:21, 195:20,
197:4, 197:6,
197:7, 197:11,
197:15, 197:21,
198:1, 199:5,
200:10, 201:13,
201:24
**passing**
198:15, 199:1
**patent**
7:10, 7:12,
7:17, 7:18,
9:12, 9:15,
9:17, 13:23,
18:1, 18:13,
42:4, 50:2,
50:6, 50:12,
50:18, 50:25,
52:6, 59:20,
59:22, 73:12,
77:16, 88:11,
97:10, 100:13,
100:17, 100:23,
101:4, 134:17,
135:11, 135:17,
135:19, 135:22,
136:16, 136:17,
138:11, 138:12,
139:4, 164:18,
184:2, 187:17,
189:8
**patentee**
74:13
**patents**
74:13, 176:25
**path**
151:10, 205:4,
205:14
**patterns**
68:24
**pausing**
45:2
**pending**
128:10, 166:19
**people**
35:14

**per**
58:9, 58:12,
72:21, 72:22,
76:25, 78:17,
183:13, 183:22
**percent**
16:15
**perfect**
182:21
**perform**
16:18, 37:3,
39:18, 53:15,
54:7, 88:14,
90:12, 94:21,
143:16, 188:1,
188:21
**performance**
56:15
**performed**
41:23, 157:10,
177:14, 200:17
**performing**
21:13, 21:16,
29:8, 29:17,
36:23, 56:7,
56:17, 151:7,
155:12, 157:2,
160:24, 177:23,
187:5
**performs**
174:6
**perhaps**
13:22, 32:24,
42:1
**person**
33:14, 73:4,
73:22, 74:2,
75:1, 75:24,
77:20, 77:22,
78:4, 84:12,
86:17, 94:10,
159:8, 162:22,
162:23, 164:13,
189:7
**persons**
161:21
**perspective**
103:18

**phase**
9:22
**phone**
5:10, 61:19,
66:11, 66:15,
66:21, 66:22,
66:25, 67:3,
88:14, 97:8,
98:9, 99:5,
118:20, 118:25,
164:1, 164:7,
191:4, 191:10,
195:3, 196:10,
196:15, 199:19,
200:13, 203:9,
205:18, 206:1,
206:4, 206:7,
206:15, 206:20
**phones**
10:1, 11:24,
11:25, 13:1,
13:4, 13:9,
65:18, 91:19,
96:14, 96:21,
97:7, 97:15,
97:19, 97:24,
101:22, 119:7,
120:12, 121:12,
139:25, 140:13,
140:14, 140:21,
141:9, 141:13,
141:20, 141:25,
144:13, 152:11,
152:12, 154:24,
166:1, 166:14,
166:24, 167:4,
175:10, 184:9,
186:8, 190:21,
191:2, 196:16,
200:16, 200:20,
202:4, 202:13,
203:15
**phonetic**
86:18
**photo**
96:16, 98:10
**photos**
96:17

**phrase**
72:3, 75:11,
75:13, 75:15,
88:15
**phraseology**
157:23
**picked**
68:23
**pickering**
5:6, 5:14,
83:16, 83:19,
84:7, 84:25,
85:15, 86:25,
87:7, 87:14,
111:21, 111:22,
111:24, 112:3,
167:25, 168:4,
168:10, 168:18,
169:5, 170:19
**picture**
61:3
**pictures**
185:2, 185:6
**piece**
201:8
**pinch**
102:5, 102:6
**pioneer**
23:2
**place**
8:13, 38:11
**placed**
106:24, 110:10,
110:18, 171:20,
186:12
**plain**
71:1, 76:20
**plaintiff**
1:8, 5:2, 9:5
**plaintiff's**
167:16
**plaintiffs**
2:12
**planet**
8:12, 8:24
**play**
94:8, 134:12
**played**
126:14

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017                                    85

**please**
8:15, 8:25,
14:2, 20:23,
21:25, 24:18,
26:8, 35:25,
44:22, 44:23,
48:20, 49:22,
59:12, 69:15,
79:10, 79:18,
83:10, 88:2,
96:12, 98:17,
101:10, 108:5,
113:20, 114:10,
116:18, 118:19,
121:25, 131:17,
138:15, 145:5,
149:15, 151:14,
154:20, 156:18,
165:14, 180:9,
180:22, 183:10,
184:22, 192:6,
195:6, 199:8,
202:23
**pllc**
5:6, 5:14
**plural**
71:5, 73:4,
74:8, 74:18,
76:7, 77:18,
78:13, 78:16,
79:4, 93:25
**plus**
24:4, 164:14
**point**
35:3, 42:25,
52:3, 62:22,
86:13, 95:9,
104:15, 112:2,
115:14, 117:2,
128:14, 133:25,
137:11, 137:13,
169:22, 170:22,
170:23, 195:5,
203:18
**pointed**
163:4
**pointing**
15:14, 137:1,

138:1, 157:11,
158:10, 158:12,
159:7, 160:2,
162:19, 162:20,
162:21, 163:2,
194:3
**pop-up**
18:16, 20:10,
20:13, 20:15,
20:19, 21:21,
64:12, 64:22,
65:18, 65:21,
66:2, 67:22,
71:3, 73:6,
78:1, 78:6,
78:23, 79:4,
82:9, 85:25,
87:1, 87:8,
87:13, 87:16,
88:18, 88:23,
89:7, 90:16,
91:15, 93:10,
93:11, 93:16,
96:23, 97:2,
99:6, 99:12,
99:15, 104:6,
106:2, 107:1,
110:12, 110:20,
124:17, 127:16,
127:19, 127:24,
140:24, 141:14,
141:21, 144:10,
147:15, 147:24,
148:13, 149:3,
149:12, 152:1,
152:4, 152:5,
152:6, 152:9,
153:23, 169:7,
169:13, 169:24,
170:20, 177:19,
177:21, 184:1,
184:3, 184:4,
184:8, 185:9,
185:11, 186:10,
186:11, 186:17,
186:24, 187:18,
187:20, 190:5,
190:17, 191:14,

191:18, 192:15,
192:19, 192:22,
193:17, 193:25,
202:12
**populate**
201:5, 201:11
**populates**
201:22
**portion**
36:11, 132:16,
133:19, 137:14,
158:15, 158:18,
158:21, 159:2,
159:4, 159:19,
159:21, 160:8,
162:14, 162:18,
164:16, 164:20,
164:21, 195:2,
204:13, 204:14,
204:20
**portions**
63:8, 63:9,
160:10
**position**
16:8, 182:4,
182:7
**positions**
172:12
**posner**
70:5
**possibility**
191:17
**possible**
65:4, 101:13,
160:21, 203:5,
203:13
**post-lunch**
142:18
**potential**
64:20
**pre-detect**
148:21
**pre-detection**
182:8, 182:11
**preamble**
13:18, 14:7
**precedes**
116:20

**precise**
119:11, 148:18,
193:14
**precisely**
15:11, 67:14,
83:5, 143:9,
143:14, 182:3
**precision**
106:8, 107:6,
107:10, 108:22,
110:22, 129:5,
206:23
**precludes**
51:18
**precondition**
29:24, 177:17
**preconditions**
117:19
**predetect**
121:18
**predetected**
118:15
**predetecting**
120:19
**predetection**
119:6, 120:7,
121:2
**preexist**
93:12
**preference**
64:21
**preparation**
85:13, 205:18
**prepare**
165:11
**preparing**
62:15, 63:6,
168:5, 169:16
**present**
6:20, 17:20,
17:22, 20:4,
40:20, 88:19,
89:13, 134:25,
139:6, 175:22,
175:24
**presentation**
107:8
**presented**
15:15, 19:17,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017                          86

62:10, 90:13,
102:20, 146:8
**presenting**
14:16, 21:3
**presents**
89:7, 89:14
**press**
101:16, 101:17,
102:16, 105:11,
105:21, 107:7,
107:16, 108:11,
108:17, 108:20,
109:5, 109:15,
109:20, 111:2,
112:8, 140:16,
144:8, 144:21,
145:9, 145:12,
145:14, 145:15,
146:3, 146:11,
146:12, 146:18,
146:20, 147:1,
182:25, 183:4,
190:8, 190:10
**pressed**
106:1, 106:11,
106:13
**presses**
140:22
**pressing**
110:16
**presumably**
106:15
**pretty**
20:12
**prevent**
174:21
**prevents**
174:7, 174:16
**previous**
22:20, 22:21,
31:21, 65:14,
92:24, 166:6,
170:13
**previously**
22:13, 30:21,
31:1, 39:12,
45:16, 60:12,
79:3, 79:8,

81:13, 89:5,
90:13, 92:12,
92:14, 94:7,
94:25, 95:23,
124:13, 130:1,
148:4, 155:6,
156:7, 157:9,
167:15, 187:24,
188:3, 188:12
**primarily**
17:8, 51:10,
62:5, 170:24
**primary**
39:2, 86:12,
140:20
**primitive**
88:13
**principle**
128:20
**prior**
30:22, 33:10,
33:13, 33:23,
34:2, 50:11,
50:13, 50:18,
50:24, 51:1,
51:7, 51:8,
51:9, 51:12,
91:12, 93:2,
93:5, 93:8,
96:22, 100:2,
122:19, 126:16,
126:19, 130:25,
131:3, 131:9,
131:14, 132:8,
132:9, 132:11,
132:12, 132:19,
132:21, 133:2,
133:7, 133:11,
133:12, 133:16,
133:18, 134:7,
134:15, 134:17,
134:18, 134:24,
135:1, 135:4,
135:8, 135:10,
135:15, 149:24,
150:4, 150:23,
161:1, 173:25,
181:3, 181:7,

181:18, 181:23,
182:16
**priority**
135:18, 135:20,
135:22
**privilege**
123:11, 123:14
**privileged**
123:9
**probably**
24:1, 184:13,
195:4, 201:18
**problem**
19:14
**proceedings**
7:23, 22:25,
27:23, 131:12,
191:24, 192:3
**process**
37:1, 37:7,
37:12, 37:14,
43:2, 50:2,
50:6, 94:19,
106:9, 107:6,
107:11, 108:23,
110:22, 114:19,
115:2, 115:9,
115:16, 116:7,
116:14, 117:23,
155:10
**processed**
112:21
**processing**
90:10, 90:11,
90:18, 91:3,
94:3, 94:14,
94:21, 94:23,
95:9, 95:13,
95:15, 150:18,
153:20, 173:11,
173:16, 188:14,
188:15, 189:4
**processor**
19:22, 20:1,
20:2, 20:7,
20:19, 21:13,
21:16, 21:19,
151:7, 187:13,

187:18, 187:21,
187:25
**processors**
112:21
**product**
14:3, 25:21,
26:13, 26:15,
26:16, 27:12,
31:3, 35:23,
42:14, 96:5,
139:3, 174:12,
174:20, 197:2
**products**
10:6, 10:7,
10:14, 10:15,
10:18, 10:19,
10:20, 10:22,
10:23, 11:2,
11:7, 13:13,
13:17, 14:6,
14:12, 14:17,
15:2, 15:5,
16:20, 17:5,
19:11, 23:12,
23:14, 23:16,
24:22, 24:24,
25:7, 25:17,
29:13, 29:22,
30:21, 32:16,
32:17, 32:21,
33:6, 40:21,
40:22, 41:12,
41:16, 42:19,
44:9, 44:11,
45:16, 46:7,
46:9, 46:18,
79:6, 80:14,
82:10, 123:21,
148:21, 148:24,
149:3, 149:9,
150:10, 155:14,
180:13, 190:2,
190:24, 196:24,
196:25
**professional**
208:4
**professor**
10:5

**program**
14:21, 21:6,
187:25, 188:21
**prohibit**
50:11
**prohibited**
50:24
**proper**
196:1
**proposition**
121:9, 121:11,
133:23
**protective**
2:20, 194:20
**provide**
22:2, 23:19,
24:12, 24:23,
26:20, 33:20,
34:22, 36:15,
45:9, 52:4,
52:8, 94:17,
136:3, 138:2,
138:7, 139:1,
162:4, 177:19,
180:14
**provided**
14:9, 14:14,
14:24, 20:17,
23:5, 23:8,
25:4, 25:20,
35:5, 36:14,
62:1, 62:13,
63:25, 79:3,
95:1, 100:15,
100:21, 111:8,
113:14
**provides**
78:23, 78:25,
92:2, 111:18
**providing**
24:17, 40:14,
71:6, 106:5,
145:15
**pto**
131:8
**public**
4:15, 80:8,
208:4, 208:22

**publicly**
80:8
**pull**
68:14, 130:20,
131:16, 184:22
**purpose**
94:15, 111:22,
113:20, 125:17,
160:16, 171:23,
171:25
**purposely**
35:12
**purposes**
11:1, 11:6,
18:25, 45:3,
80:11, 80:22,
92:4, 121:11,
122:10, 128:5,
132:13, 173:14
**pursuant**
2:20, 4:14,
194:20
**put**
79:12, 106:11,
106:13, 153:15,
182:22
**puts**
172:5
**putting**
148:11

---
Q
---

**q&a**
193:11
**qualifications**
135:8
**qualitative**
113:17
**quantitative**
107:4
**question**
12:10, 12:11,
16:13, 18:11,
25:10, 26:6,
29:23, 29:25,
30:16, 30:18,
32:25, 33:3,
34:9, 36:9,

36:10, 37:5,
37:10, 38:18,
38:24, 39:2,
41:2, 41:5,
41:9, 44:14,
45:1, 45:4,
46:24, 47:5,
47:9, 47:23,
48:21, 52:3,
55:7, 55:8,
58:6, 61:10,
61:17, 69:8,
71:25, 82:15,
84:3, 87:11,
91:25, 95:22,
96:10, 97:14,
98:16, 100:18,
101:9, 103:12,
107:5, 107:9,
107:25, 108:1,
108:3, 108:4,
108:6, 108:13,
111:15, 111:19,
113:23, 115:1,
117:12, 117:13,
119:15, 119:24,
120:5, 120:11,
123:17, 123:18,
128:10, 131:2,
131:6, 148:3,
148:7, 148:9,
148:12, 156:9,
165:17, 165:25,
166:4, 166:18,
166:19, 168:13,
173:7, 174:15,
174:19, 176:11,
180:13, 182:12,
189:21, 191:22,
192:12, 195:13,
197:14, 198:4,
201:7, 203:18,
204:18
**questions**
44:22, 44:24,
48:12, 84:5,
85:17, 113:25,
138:4, 201:17,

207:7
**quick**
164:22
**quickly**
141:13, 141:16
**quinn**
4:5, 6:9, 8:20
**quote**
98:20, 130:23,
149:16, 149:18,
156:22
**quotes**
98:24

---
R
---

**raised**
15:9
**ramifications**
154:8
**range**
50:10, 50:17
**rather**
60:16, 73:12,
95:24, 174:8,
174:17
**re-ask**
45:3, 108:5,
123:18, 128:8
**read**
29:4, 32:23,
39:4, 39:11,
50:22, 51:20,
52:21, 53:1,
55:7, 72:20,
76:20, 83:12,
92:24, 115:6,
128:8, 128:10,
154:12, 166:18,
166:19, 183:20
**reading**
29:6, 72:14,
77:23, 78:5,
117:21, 142:23,
164:13, 166:20,
189:8, 208:11
**reads**
52:10, 58:14
**ready**
194:10, 201:9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

88

**real**
29:7
**really**
24:16, 25:1,
29:25, 35:2,
36:8, 113:22,
114:1, 120:4,
129:11, 151:21,
182:3, 196:21,
198:10
**realm**
160:4
**reason**
87:25, 123:24,
124:9, 124:21,
169:18, 203:14
**reasoning**
44:7
**reasons**
93:22
**rebuildlist**
203:5, 203:12
**rebut**
15:13
**rebuttal**
7:8, 9:13,
98:21, 111:17,
133:9
**rebutted**
155:24
**recall**
13:2, 19:13,
19:19, 23:18,
24:1, 25:1,
25:9, 25:18,
27:25, 30:6,
35:6, 38:2,
38:7, 38:9,
55:17, 60:10,
60:11, 60:17,
61:9, 61:24,
62:12, 63:4,
63:5, 63:23,
67:8, 69:7,
70:1, 70:6,
70:10, 79:7,
79:8, 81:11,
81:24, 82:6,

83:23, 84:2,
84:3, 85:7,
85:10, 86:9,
86:24, 96:19,
98:14, 100:25,
101:7, 101:19,
104:2, 104:24,
105:2, 108:22,
125:23, 126:5,
126:6, 126:7,
126:11, 127:17,
127:18, 127:21,
127:23, 128:1,
128:23, 129:12,
130:3, 130:14,
130:19, 132:3,
134:22, 137:16,
137:17, 138:5,
141:2, 141:5,
141:11, 143:19,
158:24, 166:20,
167:2, 167:7,
168:13, 168:16,
168:24, 170:8,
170:17, 171:2,
171:5, 172:1,
174:4, 185:14,
185:23, 186:5,
186:21, 189:25,
191:6, 191:21,
200:22, 202:18,
203:16, 205:22,
205:24, 207:5
**recalled**
135:18
**receive**
206:6
**received**
22:10, 206:8
**receiving**
14:11, 20:25
**recent**
9:12, 9:21,
62:2, 62:15,
67:23, 69:15,
70:13, 79:9,
80:11, 81:8,
82:5

**recess**
68:10, 129:21,
164:25, 184:18,
194:15
**recite**
77:16
**recited**
74:5, 174:7
**recognition**
159:14, 161:2,
162:11
**recognize**
9:20, 27:24,
59:25, 86:22,
137:7, 140:7,
157:1, 163:3
**recognized**
142:13
**recognizing**
157:19, 157:23,
160:24, 161:5,
161:11
**recollection**
23:12, 62:25,
141:7, 166:13,
183:7
**record**
8:3, 68:9,
68:12, 129:20,
129:23, 164:24,
165:2, 184:17,
184:20, 194:14,
194:17, 207:10,
207:11, 208:8
**recording**
172:12
**recreate**
199:13
**recreates**
199:21
**recurring**
150:19
**redesign**
128:25, 129:1,
145:8
**redesigned**
24:24
**redesigns**
23:13, 24:21

**reduced**
208:10
**reference**
88:16, 130:25,
131:3, 131:21,
134:22, 135:21,
146:6, 146:7,
146:17, 165:17,
195:18, 197:16
**referenced**
84:19
**referred**
146:25, 161:16
**referring**
17:7, 17:19,
72:17, 75:6,
75:21, 116:24,
132:17, 140:25,
166:21, 187:2
**reflected**
132:14
**refresh**
166:13
**regard**
10:17, 11:15,
15:10, 185:13
**regarding**
9:25, 14:6,
17:5, 25:21,
33:21, 34:23,
36:16, 45:5,
63:7, 69:9,
70:9, 167:4,
169:12
**registered**
208:4
**regroup**
184:13
**reinserted**
166:5
**reject**
28:25
**related**
7:13, 27:18,
27:23, 36:20,
104:3, 111:23,
111:25, 161:24,
208:13

**relating**
17:9
**relationship**
33:25
**relative**
89:25
**relatively**
35:7
**relevant**
11:4, 11:9,
12:1, 12:5,
12:8, 12:13,
12:21, 33:10,
50:7, 51:13,
80:10, 80:23,
81:8, 81:11,
81:17, 82:4,
82:6, 90:9,
94:12, 101:3,
105:7, 120:8,
120:10, 133:2,
133:7, 139:15,
144:7, 144:13,
145:2, 173:5,
173:16
**relied**
15:18, 29:11,
29:20, 30:11
**rely**
15:23, 132:18,
139:11
**relying**
15:22, 62:5,
133:24, 159:16,
161:1
**remember**
23:1, 23:2,
23:4, 24:16,
52:17
**removal**
38:19, 39:25,
40:7, 191:18,
193:21
**removals**
144:25
**remove**
38:15, 87:12,
87:25, 96:6,

123:5, 123:20,
123:23, 123:25,
124:21, 125:13,
125:17, 127:24
**removed**
19:10, 27:10,
38:18, 39:13,
39:20, 39:24,
82:8, 82:21,
85:19, 86:13,
87:1, 87:17,
144:20, 166:2,
169:3
**removing**
35:15, 35:16,
83:6, 119:5,
120:6, 123:22,
123:24, 124:13,
124:16, 124:18,
125:7, 125:11,
125:15, 126:12,
127:19
**rendered**
174:1
**renders**
100:12, 101:4
**repeat**
195:12
**repeating**
176:12, 176:17
**replaced**
192:22
**replied**
165:22
**reply**
131:7, 154:12,
154:13
**report**
7:8, 7:15,
9:12, 9:13,
9:21, 9:24,
17:3, 17:7,
17:8, 20:18,
21:24, 24:12,
26:7, 33:20,
34:15, 35:24,
36:11, 36:16,
40:11, 42:10,

49:21, 51:14,
52:4, 59:11,
59:19, 59:21,
60:3, 60:20,
62:2, 62:15,
63:7, 64:1,
64:6, 65:8,
66:3, 66:5,
67:23, 68:15,
69:13, 69:15,
70:13, 79:5,
79:10, 80:11,
81:9, 82:5,
83:9, 85:13,
89:17, 96:11,
96:13, 97:20,
98:21, 99:22,
100:1, 100:2,
101:11, 107:21,
118:7, 121:25,
124:3, 131:16,
132:17, 134:14,
134:18, 135:1,
135:6, 135:14,
136:7, 144:5,
145:4, 145:7,
145:21, 149:14,
149:22, 149:23,
151:13, 152:19,
154:12, 154:13,
156:8, 165:12,
168:5, 173:25,
180:9, 180:21,
183:9, 187:7,
196:3, 198:12,
199:18, 200:6,
201:21, 202:15,
203:10, 204:6,
204:19, 205:19,
206:16
**reported**
3:13
**reporter**
8:23, 8:25,
52:25, 208:3,
208:4
**represent**
8:16, 154:10,

162:3, 163:17,
182:20
**representative**
7:20, 12:25,
13:5, 13:10,
13:12, 165:7
**representing**
8:11, 8:21,
8:24, 25:13
**requested**
89:5, 89:16,
208:12
**require**
58:9, 72:18,
72:24, 76:9,
76:22, 77:5,
82:22, 158:22,
169:6, 169:12,
169:23, 181:2,
181:17, 182:8
**required**
78:17, 90:10,
90:12, 120:19,
120:23, 139:5,
146:12, 157:3,
187:21, 189:18
**requirement**
43:10, 43:12,
157:17, 170:6
**requirements**
139:9
**requires**
28:14, 57:21,
71:3, 72:10,
76:24, 76:25,
77:9, 77:25,
78:13, 79:4,
82:18, 156:12,
156:25, 187:17,
187:20
**requisite**
84:5
**resiliency**
164:3
**resolution**
94:19, 106:8
**resolve**
197:25, 198:16,

199:2, 203:2,
203:4, 203:11
**resolveactivity**
151:4, 151:5,
188:6, 188:7,
188:10, 188:11,
202:19
**resolved**
116:19
**resolver**
65:5, 91:7,
150:24
**resolveractivity**
17:19, 18:16,
20:6, 64:22,
65:18, 66:2,
66:9, 67:22,
78:22, 79:14,
79:20, 79:25,
81:1, 81:12,
81:21, 82:9,
82:18, 83:2,
84:18, 85:16,
85:25, 86:14,
87:1, 87:6,
87:8, 87:13,
87:16, 88:5,
88:18, 88:23,
89:3, 89:7,
89:13, 90:16,
91:20, 93:11,
93:16, 93:23,
95:14, 96:23,
99:14, 122:2,
122:5, 122:25,
123:5, 123:20,
123:25, 124:4,
124:17, 125:8,
125:11, 125:13,
125:20, 126:12,
127:16, 128:6,
128:21, 128:22,
149:4, 149:12,
149:25, 150:5,
169:2, 169:7,
169:13, 169:23,
170:20, 184:4,
186:11, 186:16,

186:23, 187:13,
189:4, 194:24,
195:10, 195:15,
196:10, 196:14,
196:23, 202:6,
202:12, 206:14
**respect**
12:18, 14:6,
14:10, 15:2,
15:3, 16:2,
19:2, 23:6,
23:9, 24:19,
28:15, 42:18,
45:18, 62:16,
70:18, 82:4,
92:25, 103:13,
103:14, 124:18,
132:22, 133:3,
139:25, 140:2,
144:7, 144:13,
151:9, 154:7,
162:1, 170:10,
175:16
**respecting**
11:2, 11:7,
121:12
**respective**
132:5
**respond**
35:2, 203:17
**responding**
41:24
**response**
85:16, 127:25,
173:2
**rest**
149:19
**result**
19:15, 23:13,
24:21, 25:15,
90:20, 150:19,
186:15, 186:23,
205:14
**resulting**
94:2, 186:25
**results**
185:24
**retained**
25:13

**review**
22:11, 62:3,
63:5, 63:9,
165:10, 166:17,
205:17, 205:21,
206:19, 206:22,
206:24
**reviewed**
61:16, 61:23,
63:8, 100:24,
167:21, 195:2,
205:25, 206:3,
206:7, 206:17,
206:20
**reviewing**
60:11, 100:9
**richard**
6:5, 8:20
**richarderwine@qu-**
**innemanuel**
6:6
**right-hand**
192:8
**rlist**
197:25, 198:17,
199:3
**road**
5:15
**role**
126:14
**routines**
14:21, 21:6,
187:25, 188:21
**royalties**
7:10, 9:14
**rpr**
3:13
**rule**
25:7, 51:18,
51:24, 52:1,
52:5, 52:9
**ruling**
25:10, 25:12,
25:18, 28:1
**run**
129:13
**running**
175:3, 178:21

| S |
| --- |

**s-e-t-t-i-m-i**
168:1
**said**
16:12, 48:17,
66:19, 77:15,
86:10, 100:9,
112:13, 124:14,
132:1, 159:23,
169:20, 170:20,
185:14, 193:19,
202:11, 202:17,
208:9
**samdca_da**
7:22, 167:19
**samdca_sc**
194:25
**same**
13:11, 15:18,
15:23, 21:10,
21:18, 32:3,
37:5, 41:4,
42:22, 43:1,
44:25, 47:9,
47:16, 47:18,
48:4, 54:1,
54:5, 54:19,
71:24, 80:16,
89:2, 92:1,
92:8, 98:4,
99:20, 103:16,
121:13, 132:6,
140:6, 143:11,
143:18, 143:19,
146:4, 148:2,
148:3, 161:16,
174:25, 179:23,
180:19, 186:3,
188:6, 188:8,
199:9, 200:17,
202:3, 202:14,
204:10, 204:14,
204:23, 204:24,
206:19
**samsung**
1:10, 1:12,
1:16, 2:2, 2:4,

Case 5:12-cv-00630-LHK Document 2259-4 Filed 04/16/18 Page 93 of 107
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

91

2:7, 6:4, 8:5,
8:22, 10:6,
13:10, 19:3,
26:24, 34:10,
35:7, 36:24,
37:4, 37:14,
37:25, 38:8,
39:19, 69:22,
80:9, 80:18,
81:7, 81:20,
82:1, 82:8,
83:20, 85:4,
85:12, 87:7,
87:12, 87:24,
101:14, 103:3,
103:7, 111:10,
111:20, 114:17,
115:7, 117:14,
117:25, 122:18,
122:23, 123:1,
123:5, 123:19,
124:3, 124:10,
124:16, 125:3,
125:6, 125:7,
125:10, 125:19,
126:4, 126:5,
126:25, 127:5,
127:24, 128:15,
129:9, 130:2,
152:12, 170:7,
172:8, 174:2,
186:8, 206:8
**samsung's**
22:10, 33:21,
34:5, 34:24,
36:12, 36:16,
122:10, 128:5,
130:4, 130:9,
155:11
**san**
1:3, 8:7
**sandwich**
190:11
**satisfied**
74:16, 77:17,
187:23
**satisfy**
13:17, 15:5,

195:20, 195:24,
197:4, 197:6
**saw**
91:3, 91:5
**say**
15:23, 19:25,
20:1, 22:8,
27:11, 28:13,
29:14, 29:25,
32:2, 37:6,
37:24, 39:24,
41:22, 49:24,
50:9, 51:4,
51:7, 51:16,
52:7, 55:1,
55:2, 56:15,
56:22, 57:19,
62:12, 63:4,
63:16, 63:23,
65:5, 67:8,
78:6, 78:13,
80:22, 83:14,
84:2, 85:21,
85:24, 86:3,
86:7, 88:4,
88:5, 88:22,
100:5, 103:6,
107:4, 114:13,
114:16, 115:2,
116:19, 119:15,
123:10, 124:20,
125:2, 126:13,
127:13, 128:14,
131:23, 141:5,
146:2, 146:24,
147:20, 148:18,
149:22, 152:3,
152:18, 154:16,
157:21, 164:14,
164:20, 167:1,
168:8, 168:24,
174:16, 189:20,
195:22, 196:20,
198:14, 199:20,
203:16

**saying**
12:15, 15:22,
16:7, 16:14,
30:6, 35:2,
40:6, 65:2,
71:1, 73:3,
77:20, 77:22,
89:12, 95:12,
107:12, 107:17,
107:18, 109:1,
109:25, 110:2,
115:5, 117:21,
117:23, 120:6,
124:2, 134:3,
139:7, 139:19,
139:21, 147:4,
150:21, 158:17,
159:24, 160:19,
161:21, 162:2,
175:1, 175:22,
176:21, 177:5,
178:8, 179:19,
179:24, 181:14,
181:15, 181:16,
183:3, 183:7,
189:21, 194:5,
200:2
**says**
28:19, 43:23,
60:5, 68:23,
73:4, 74:13,
74:15, 76:17,
76:21, 100:16,
100:22, 136:22,
137:11, 156:23,
158:24, 159:7,
159:13, 160:20,
161:3, 187:12
**scenario**
97:25, 110:3,
110:16
**sch-i**
196:7, 196:15,
199:19, 200:13,
201:20, 202:14,
203:9, 204:7,
206:13, 206:15
**scope**
50:12, 50:25,

**saying**
77:15
**screen**
68:23, 101:14,
101:21, 102:5,
102:10, 106:14,
171:21, 172:6,
172:21, 173:3
**seachange**
22:24, 23:10,
23:22, 35:18
**seal**
208:17
**sean**
169:10
**second**
14:15, 28:7,
28:11, 60:22,
100:18, 105:13,
105:22, 105:23,
106:7, 108:16,
109:8, 109:11,
109:13, 110:11,
114:16, 114:17,
139:2, 153:7,
153:13, 153:21,
154:8, 181:1,
183:10, 187:9
**secondary**
94:18
**seconds**
106:2, 106:25,
107:15, 107:18,
107:19, 107:22,
108:10, 108:21,
109:12, 109:13,
109:20, 110:17,
110:19
**section**
17:10, 17:14,
17:16, 20:2,
20:5, 28:3,
28:8, 28:11,
32:24, 60:6,
79:13, 96:12,
145:24, 171:19,
183:24, 187:12,
200:18
**see**
26:18, 28:12,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

92

28:17, 28:23,
31:14, 31:23,
32:9, 32:18,
33:16, 34:20,
39:9, 39:16,
40:25, 46:3,
50:3, 50:14,
60:5, 60:7,
61:1, 61:2,
61:13, 63:13,
63:17, 67:20,
69:2, 73:11,
79:14, 80:3,
80:15, 81:16,
83:17, 84:12,
88:7, 89:22,
96:12, 98:21,
100:7, 107:17,
116:22, 119:16,
122:13, 140:11,
151:18, 156:17,
165:16, 165:20,
166:9, 167:24,
168:2, 169:4,
169:8, 171:15,
183:16, 183:17,
183:24, 185:6,
185:9, 186:21,
187:14, 192:7,
192:10, 193:1,
195:24, 197:21,
198:18, 199:4,
199:23, 204:11,
205:3
**seem**
38:7, 176:24
**seems**
16:7, 29:23,
47:4
**seen**
27:21, 27:23,
27:25, 98:6,
112:9, 112:13,
125:9
**select**
56:5, 57:8,
58:16, 59:1,
64:23, 90:12,

136:10, 137:5,
146:14, 147:9,
147:11, 148:25,
157:1, 175:4,
175:21, 176:4,
176:5, 176:21,
177:20, 179:12
**selected**
21:13, 21:16,
21:17, 53:16,
54:8, 64:21,
88:25, 91:15,
104:9, 114:20,
114:21, 115:4,
115:9, 115:10,
116:7, 116:14,
121:1, 137:4,
147:16, 147:21,
148:19, 149:5,
151:8, 185:18,
187:1, 188:1,
188:16, 188:21,
188:22
**selecting**
56:6, 56:16,
56:17, 56:19,
58:17, 58:18,
58:20, 59:4,
59:5, 59:9,
90:18, 137:19,
137:23, 164:20,
174:8, 174:17,
175:19, 176:20,
177:25, 178:5,
183:1
**selection**
52:24, 53:2,
53:12, 54:3,
55:20, 56:14,
57:2, 57:16,
57:21, 57:23,
58:11, 58:15,
60:25, 63:19,
64:3, 65:22,
67:5, 74:6,
77:10, 90:7,
96:17, 103:14,
104:17, 115:12,

120:24, 146:4,
146:10, 146:16,
147:4, 147:5,
147:7, 147:8,
149:11, 156:24,
177:3, 177:10,
177:20, 177:22,
179:8, 179:15,
179:21, 180:2,
180:6, 180:8,
181:3, 181:8,
181:18, 181:24,
182:16, 185:17,
185:21, 186:16,
186:24, 189:3,
190:4, 190:16,
194:23
**selects**
58:19, 90:15,
91:20, 104:14,
147:25, 148:14,
179:25
**self-evident**
200:2
**semicolon**
164:8, 164:9,
164:14
**send**
56:13
**sense**
27:24, 37:19,
37:21
**sent**
170:14
**sentence**
33:9, 33:18,
39:5, 60:22,
83:14, 100:18,
114:17, 115:7,
122:8, 124:6,
131:25, 139:2,
155:2, 170:3,
181:1, 183:11,
183:17
**sentiment**
99:13
**september**
83:15, 84:8

**sequence**
168:9
**server**
14:22, 15:11,
16:4, 16:9,
16:10, 16:16,
16:19, 16:24,
17:1, 17:6,
17:13, 18:20,
19:4, 19:10,
21:9, 21:11,
75:25, 207:3
**serves**
171:21
**session**
184:13
**set**
42:9, 102:13,
106:12, 152:5,
153:21, 160:19,
187:25, 199:16,
199:22, 200:1,
200:12, 200:20,
208:16
**settimi**
168:1
**setting**
101:11, 141:2,
152:1, 152:4,
153:4, 153:6,
153:12, 154:7,
172:7, 172:17,
201:14, 201:25
**several**
61:16, 61:23,
98:21, 100:25,
101:16, 101:18,
134:1, 200:6
**sh**
206:12
**shading**
136:25, 137:25,
157:11
**share**
171:7
**shipped**
80:1
**ships**
152:12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

93

**short**
20:14, 21:20,
56:8, 56:10,
57:13, 101:16,
102:17, 103:1,
103:8, 103:21,
104:6, 105:11,
105:21, 112:8,
114:22, 115:11,
115:13, 140:16,
140:23, 144:9,
144:22, 144:24,
145:14, 146:3,
146:20, 147:3,
147:25, 148:15,
148:25, 190:9,
190:17
**shortly**
127:13
**should**
30:9, 30:10,
31:15, 39:1,
70:17, 72:23,
73:15, 127:24,
139:22, 155:3,
156:4, 202:10
**shouldn't**
201:19
**show**
20:9, 20:13,
65:5, 98:7,
106:5, 158:17,
163:10, 163:23,
185:17, 185:18,
185:20, 186:1,
194:23, 198:21,
199:1
**showed**
189:6
**showing**
163:25
**shown**
62:19, 66:3,
66:4, 67:17,
67:22, 81:5,
92:15, 94:4,
97:9, 171:18
**shows**
65:17, 67:21,

165:23, 166:7,
198:22
**sidekick**
51:11, 60:9,
60:12, 60:14,
60:18, 60:23,
62:2, 62:3,
62:6, 62:10,
62:16, 63:2,
63:10, 64:2,
65:9, 66:25,
67:2, 67:9,
67:10, 67:15,
68:22, 69:5,
69:10, 99:3,
100:10, 100:15,
100:21, 101:3,
132:24
**sides**
174:25
**signature-eut2p**
208:21
**significance**
31:9, 31:15,
31:23, 32:10,
32:15, 33:4,
36:22, 41:5
**significant**
26:3, 26:12,
26:24, 27:2,
27:3, 27:6,
27:12, 30:3,
30:4, 36:6,
37:22, 38:11,
38:20, 39:15,
39:21, 39:24,
40:1, 40:7,
40:10, 41:5,
46:6, 46:25,
80:19, 94:5,
94:24, 132:22,
140:7
**significantly**
30:12, 95:2
**signing**
208:12
**similar**
80:15, 115:21,

140:1, 161:10,
204:22
**similarities**
140:6
**similarly**
10:18, 12:3,
161:15, 206:24
**simple**
35:7, 35:12,
35:15, 35:21,
36:5, 36:9,
36:12, 36:17,
39:23, 161:2
**simplification**
194:4
**simplify**
193:11
**simply**
12:15, 15:14,
35:1, 35:4,
41:24, 56:17,
66:19, 68:3,
73:3, 78:11,
93:10, 104:3,
117:23, 119:5,
137:11, 139:7,
147:20, 150:21,
156:14, 157:22,
159:6, 159:16,
170:4, 177:6,
189:21, 194:5
**simultaneous**
131:24, 132:2
**since**
25:4, 99:3,
99:6, 150:13,
201:7
**single**
64:14, 69:6,
69:11, 76:23,
99:4, 99:11,
102:1, 137:14,
183:12, 183:22,
183:25
**singular**
74:9, 77:7,
77:11
**sir**
27:21

**sitting**
10:11, 135:9,
167:1, 167:8
**six**
186:7
**skill**
33:14, 73:5,
73:22, 74:3,
75:2, 75:24,
77:21, 77:23,
78:4, 94:11,
159:8, 161:22,
162:22, 162:24,
164:13, 189:7
**skipping**
31:20, 32:22
**slightly**
105:17
**slowly**
29:15
**sm-ga**
194:25, 195:3,
196:16, 198:25,
200:23, 202:23,
203:21, 204:15,
204:21, 205:18,
206:1, 206:4,
206:7, 206:20
**smith**
5:12, 8:19
**smith@wilmerhale**
5:13
**snippet**
195:17, 195:25,
198:22, 198:24,
199:17, 201:17,
204:5
**software**
82:17, 112:24
**sold**
10:7
**solely**
28:20, 29:9,
29:19
**some**
19:9, 28:19,
34:1, 35:14,
38:7, 55:17,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

94

73:19, 84:20,
96:14, 102:22,
111:18, 128:14,
131:7, 133:6,
147:1, 167:10,
170:5, 184:11,
194:10, 195:4,
206:10
**somehow**
182:9
**someone**
35:20, 111:18
**something**
30:1, 59:17,
71:24, 74:14,
93:1, 95:11,
101:17, 122:21,
137:3, 158:25,
159:5, 160:1,
160:3, 164:1,
174:22, 193:19
**sometime**
127:13
**sometimes**
113:24
**somewhere**
31:12
**song**
86:18
**sorry**
11:5, 18:5,
22:21, 24:5,
30:18, 31:10,
32:13, 37:9,
53:1, 58:6,
61:15, 66:5,
67:9, 72:22,
75:19, 76:19,
84:22, 84:23,
85:7, 85:23,
87:21, 97:13,
98:2, 100:4,
113:19, 133:13,
133:17, 138:16,
142:18, 145:18,
150:11, 152:21,
161:14, 162:9,
163:5, 163:7,

166:17, 183:11,
183:14, 185:24,
192:16, 195:12,
197:12, 198:15,
199:9, 203:22,
204:16
**sort**
51:3, 137:21,
150:25
**sorts**
173:12
**source**
15:18, 15:21,
15:23, 19:4,
80:2, 80:6,
112:15, 112:17,
112:20, 139:4,
145:1, 171:18,
194:24, 205:17,
206:4
**speak**
160:6
**speaking**
11:11, 48:23,
190:7
**speaks**
135:6, 136:12,
137:9, 154:17,
155:16, 155:23,
160:13, 173:9,
180:18
**specific**
110:3, 143:7,
150:22, 193:20,
198:9, 203:18
**specifically**
27:25, 32:6,
34:18, 128:22,
134:22, 141:8,
189:23, 197:3,
206:9
**specification**
160:15
**specified**
17:12
**specify**
119:2
**speculation**
82:25, 103:11,

103:17, 104:1,
106:18, 118:23,
120:15, 121:22,
172:10, 193:7
**speechifying**
114:10
**spoke**
87:13
**spoken**
86:19
**st**
83:15, 84:8
**stamp**
7:21, 167:18
**stamped**
194:25
**stand**
46:16, 156:7
**standard**
25:3, 40:5,
44:20, 47:9,
47:10, 47:16,
47:17, 48:5
**standards**
40:15, 47:6,
48:14
**standpoint**
43:4, 43:5
**stands**
120:3
**start**
14:2, 115:18,
163:8, 165:16,

███████████████
91:16, 91:21,
92:2, 92:6,
92:10, 92:14,
149:24, 150:4,
150:15, 150:19,
150:20, 150:22,
150:23, 151:3,
186:25, 187:4,
187:5, 188:6,
188:9, 205:13,
205:15
**started**
9:10, 106:14

**starting**
17:10, 17:16,
31:12, 65:14,
98:25, 161:10,
161:14, 192:11,
193:9, 194:4,
194:8, 204:21,
205:6, 205:12
**starts**
31:14, 31:23,
32:9, 39:2,
39:7, 98:25,
115:20, 115:22,
116:2, 116:8,
116:15, 171:21,
192:17, 198:23,

███████████████
186:18, 204:10,
205:2, 205:9
**state**
4:15, 8:15,
66:19, 79:23,
79:25, 122:9,
127:7, 135:3,
153:3, 155:2,
174:5, 181:1,
183:10, 183:21,
204:7, 208:5,
208:23
**stated**
10:16, 10:21,
15:17, 28:13,
30:3, 64:1,
134:23, 136:1,
157:18
**statement**
35:5, 55:4,
56:4, 72:15,
72:16, 99:8,
128:12, 138:25,
139:12, 141:18,
156:14, 156:15,
158:23, 169:6,
169:11
**statements**
50:1, 50:5,
113:17, 131:7

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017                    95

**states**
1:1, 8:6, 10:8,
31:8, 33:9,
60:23, 68:22,
73:10
**stenographically**
208:10
**step**
95:10, 119:21,
119:22
**stick**
44:22
**still**
19:21, 40:21,
46:8, 89:18,
109:4, 134:12,
134:14, 140:21,
152:23, 156:7,
188:19, 188:24,
191:15, 192:15,
192:20, 192:23,
192:24, 193:17,
194:1
**stock**
116:20, 116:24,
118:5
**stop**
49:2
**stops**
153:20
**storing**
14:20, 21:5
**straightforward**
159:17
**stream**
188:15
**street**
5:8
**strike**
13:7, 17:15,
21:14, 23:6,
23:20, 23:21,
26:20, 36:14,
41:13, 46:20,
52:19, 56:9,
56:24, 60:10,
61:20, 67:1,
73:21, 77:8,

77:21, 80:25,
86:6, 94:25,
97:1, 104:18,
115:15, 115:21,
116:1, 117:13,
121:16, 122:3,
126:16, 154:5,
175:16, 182:14,
184:7, 188:7,
205:16, 206:12,
206:14
**string**
168:6, 168:20
**strown**
108:1
**structures**
14:22, 14:23,
53:4, 53:9,
53:20, 54:12,
55:18, 76:1,
76:2, 111:11,
112:4, 112:25,
114:23, 118:14,
119:6, 120:7,
120:19, 120:25,
121:2, 121:18,
142:1, 148:22,
148:25, 152:16,
158:13, 162:3,
177:18, 180:3,
181:4, 181:9,
181:19, 181:23,
181:25, 182:17,
182:23
**studied**
35:19
**subject**
51:17, 51:23,
170:11
**subjectively**
36:20
**sublimation**
14:19
**submission**
130:24
**submissions**
25:16
**submitted**
130:18

**subroutine**
161:4
**subroutines**
151:6, 161:17,
161:24, 161:25
**substance**
38:14, 84:24,
123:8, 125:24,
167:12
**substantial**
28:15, 38:17,
41:3, 43:5,
43:8, 43:11,
46:8, 46:23,
47:14, 49:12
**substantiality**
42:18
**substantially**
43:19, 46:19,
143:18, 180:19
**substantive**
196:22, 202:18,
203:16
**such**
15:13, 27:5,
30:4, 47:7,
49:25, 51:6,
56:11, 82:6,
83:7, 88:14,
118:14, 136:1,
142:6, 149:4,
149:10, 161:2,
180:3, 188:16,
191:4, 191:9
**sufficient**
61:10, 98:15,
101:8, 128:2,
164:2, 168:24,
171:6
**suggest**
32:23, 92:24
**suggestions**
35:3
**suggests**
125:10
**sullivan**
4:5, 6:9
**summary**
35:5, 200:3,

200:7
**sun**
86:18
**supplied**
136:6
**supported**
134:1
**supposed**
163:17
**supra**
183:24
**sure**
29:16, 35:9,
38:23, 63:16,
65:1, 65:16,
68:16, 72:7,
75:11, 93:15,
99:21, 102:3,
105:1, 108:2,
108:12, 109:17,
112:19, 136:15,
151:22, 152:3,
157:6, 161:8,
169:16, 185:5,
187:10, 195:4,
198:8, 198:10,
201:10, 205:4
**swear**
8:25
**sweeping**
51:6
**swipe**
101:17
**sworn**
9:2
**sync**
32:11
**synopsis**
200:7
**system**
100:11, 100:15,
100:21, 104:23,
139:8, 147:13,
156:1, 156:2,
163:2, 164:2,
164:17, 166:21,
182:23, 189:15
**systems**
19:16, 31:6,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

112:22

## T

**take**
37:25, 38:3,
38:11, 61:12,
68:6, 97:16,
111:10, 112:24,
114:23, 117:18,
119:15, 129:14,
129:15, 164:22,
171:3, 184:12,
191:14, 192:15,
192:19, 193:16,
194:9, 194:12
**takeaway**
85:18
**taken**
68:10, 129:21,
164:25, 184:18,
194:15, 208:6,
208:9
**takes**
112:25, 113:10,
113:15
**taking**
8:13, 150:8,
150:11, 189:1
**talk**
20:22, 31:25,
51:10, 84:7,
84:9, 84:12,
84:17, 86:15,
122:23, 123:1,
123:4, 123:19,
129:9, 151:16,
168:4, 168:6,
170:3
**talked**
84:18, 86:16,
128:22, 146:19,
157:9, 168:8,
170:23, 171:14,
202:17
**talking**
17:14, 17:17,
19:11, 20:5,
31:21, 37:7,

60:9, 60:15,
74:19, 75:11,
75:14, 79:19,
94:9, 95:10,
103:19, 105:20,
107:23, 108:13,
111:20, 111:22,
116:10, 118:4,
118:10, 120:16,
122:5, 125:15,
125:16, 130:1,
138:18, 142:16,
144:1, 154:23,
156:19, 160:15,
160:17, 161:18,
171:13, 176:23,
178:20, 185:1,
188:14, 190:9
**talks**
107:22, 161:15
**tap**
20:14, 21:20,
57:13, 101:20,
102:17, 103:1,
103:8, 103:21,
104:6, 104:22,
114:22, 115:11,
115:13, 140:16,
140:23, 144:9,
144:22, 144:24,
146:3, 147:3,
147:25, 148:15,
148:25, 188:17,
190:17
**tape**
8:3, 129:14
**taps**
56:8, 56:10
**task**
189:1
**team**
87:3
**techniques**
161:2
**telecommunicatio-
ns**
1:17, 2:8
**telephone**
63:13, 63:14,

64:13, 68:25,
84:13, 84:14,
164:10, 164:14,
164:16, 180:3,
180:7
**tell**
55:3, 56:1,
61:13, 61:21,
62:18, 62:23,
67:12, 67:15,
76:15, 76:16,
82:20, 85:15,
89:11, 92:23,
98:2, 106:19,
120:17, 121:7,
126:2, 129:4,
144:5, 159:10,
170:18, 171:1,
199:17, 203:7,
204:4, 206:2,
206:23
**telling**
68:3
**tells**
131:14, 153:5,
153:8
**ten**
109:12
**tentacles**
83:2
**term**
27:1, 70:18,
70:25, 72:2,
73:14, 73:15,
88:11, 141:16,
160:5
**terminology**
130:19
**terms**
41:17, 46:18,
103:23, 123:22,
141:25, 143:20,
167:12, 172:21,
175:19, 185:12
**test**
28:4, 28:13,
29:1, 29:3
**testified**
9:4, 60:14,

70:8, 146:13
**testify**
9:3, 23:21,
23:22, 24:9
**testimony**
38:7, 48:16,
56:21, 60:17,
63:6, 63:23,
64:9, 67:8,
68:2, 70:21,
77:3, 80:21,
89:6, 89:10,
91:1, 91:6,
91:24, 92:20,
96:3, 96:4,
111:9, 113:21,
119:10, 124:12,
124:25, 144:17,
146:23, 147:19,
148:17, 156:8,
166:13, 170:1,
176:16, 181:12,
193:3, 193:24,
194:3, 194:4,
208:8, 208:9
**text**
136:24, 137:2,
137:7, 137:12,
137:14, 137:19,
137:20, 149:17,
157:1, 157:2,
157:4, 157:12,
157:14, 157:15,
157:20, 157:23,
158:7, 158:13,
158:15, 160:3,
160:25, 161:6,
162:1, 190:23,
191:4, 191:9
**th**
149:23, 166:4,
192:4, 208:17
**than**
10:1, 10:2,
11:17, 11:18,
16:3, 16:4,
16:18, 16:23,
22:15, 22:16,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

97

23:6, 23:9,
23:14, 24:6,
24:19, 24:22,
25:3, 25:7,
25:17, 25:22,
25:23, 26:13,
28:4, 29:17,
30:19, 35:22,
41:5, 44:9,
44:11, 44:18,
45:6, 45:13,
45:16, 46:19,
46:25, 58:3,
58:9, 60:16,
61:13, 64:20,
67:10, 72:24,
73:6, 73:12,
77:25, 78:7,
78:14, 78:17,
84:10, 90:1,
90:11, 90:23,
91:3, 92:17,
93:17, 93:21,
94:4, 95:7,
95:18, 95:24,
101:25, 102:17,
105:13, 108:16,
109:7, 109:11,
110:11, 110:16,
118:20, 118:21,
119:7, 119:12,
119:16, 119:21,
119:22, 120:12,
121:19, 135:21,
138:19, 138:20,
143:6, 144:14,
146:25, 150:4,
150:14, 157:20,
164:1, 164:6,
167:5, 172:6,
173:6, 174:6,
174:8, 174:18,
180:16

**thank**
33:2, 49:20,
76:13, 108:5,
142:23, 145:17,
163:22, 183:19,

207:8
**thanks**
114:11
**their**
23:4, 44:13,
86:22, 88:16,
106:1, 106:11,
106:13, 106:24,
109:7, 109:19,
110:10, 110:16,
110:19, 121:8,
132:5, 140:22,
153:15, 157:23,
169:17
**them**
49:18, 69:1,
81:25, 85:22,
86:20, 86:23,
94:11, 94:14,
94:15, 104:24,
104:25, 121:19,
122:21, 134:2,
148:22, 171:7,
175:15, 197:17
**themselves**
8:15, 11:12,
103:4
**then**
10:22, 11:18,
14:19, 27:1,
32:24, 39:20,
43:17, 44:23,
48:14, 51:8,
60:8, 61:3,
64:22, 70:7,
71:12, 76:2,
80:17, 106:25,
107:15, 108:10,
110:11, 115:2,
123:11, 124:20,
125:12, 130:19,
132:7, 133:18,
145:13, 146:14,
153:22, 158:2,
158:6, 159:1,
166:4, 169:21,
176:6, 177:18,
178:23, 179:16,

182:24, 183:1,
184:12, 184:14,
192:23, 192:24,
193:25, 194:10,
194:11, 198:10,
200:5, 200:19,
201:22, 204:13
**theories**
51:8, 102:22
**theory**
15:10, 15:12,
15:14, 15:20,
51:18, 51:20,
91:4, 146:7,
182:21, 182:22,
183:8
**there's**
46:3, 46:5,
46:8, 47:14,
48:9, 49:17,
51:11, 56:6,
57:11, 57:21,
58:12, 64:19,
66:21, 70:17,
74:20, 78:20,
87:25, 94:6,
94:18, 99:11,
99:15, 99:18,
100:20, 101:16,
101:17, 101:18,
104:3, 105:17,
106:7, 107:7,
109:1, 111:18,
116:5, 117:3,
119:1, 140:21,
140:23, 145:14,
154:2, 154:4,
157:17, 158:8,
158:23, 159:4,
160:1, 161:8,
162:20, 164:21,
165:17, 170:5,
172:11, 172:16,
172:20, 173:4,
173:11, 176:8,
179:14, 179:20,
188:25, 193:11,
195:22, 204:22,

205:4
**thereafter**
208:10
**therefore**
12:7, 26:15,
72:19, 121:10,
172:17, 189:17
**therein**
200:12
**these**
19:15, 37:18,
72:17, 100:9,
119:6, 128:1,
128:3, 131:11,
137:24, 151:10,
160:19, 162:15,
169:6, 169:14,
170:13, 170:16,
170:23, 170:24,
190:23, 195:9,
199:12
**they**
8:16, 10:3,
11:18, 13:11,
20:3, 28:13,
37:7, 37:12,
41:18, 42:7,
48:11, 48:12,
49:15, 49:18,
53:7, 54:22,
54:24, 55:1,
55:2, 55:3,
55:5, 55:6,
55:11, 55:18,
56:1, 56:2,
58:20, 70:9,
80:15, 85:19,
85:21, 85:24,
86:11, 86:21,
88:25, 117:14,
122:21, 123:23,
124:21, 125:13,
127:1, 127:4,
127:11, 130:15,
140:6, 140:15,
141:8, 141:10,
141:12, 141:19,
142:3, 142:12,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                                    98

142:24, 144:19,
144:20, 144:21,
167:6, 168:25,
169:17, 172:1,
175:7
**they'd**
86:13
**they're**
66:7, 66:8,
80:16, 81:25,
119:12, 121:1,
144:14, 159:16,
166:21, 169:16,
170:6, 174:25,
197:18
**they've**
69:14, 118:1
**thing**
75:5, 94:8,
109:14, 160:14,
191:13, 192:14,
192:18, 193:16
**things**
93:4, 120:4,
122:19, 128:24,
129:3, 160:20,
162:7, 174:23,
180:6
**thinking**
38:16
**third**
14:20, 23:3,
26:10, 153:4,
183:11, 183:17
**those**
10:8, 10:20,
11:25, 13:4,
16:3, 18:17,
18:20, 19:21,
23:4, 27:14,
30:20, 31:1,
34:12, 39:7,
39:8, 39:12,
45:19, 46:9,
48:2, 48:3,
48:11, 49:16,
63:14, 64:23,
70:9, 70:12,

75:17, 76:2,
81:16, 101:18,
107:23, 119:6,
125:24, 126:7,
131:10, 133:8,
137:3, 148:25,
173:6, 189:10,
190:13
**though**
78:15, 92:7,
143:9, 159:18,
174:19, 181:22,
193:13
**thought**
46:13, 49:16,
75:19, 107:19,
119:24, 124:14,
132:21, 152:8
**thousand**
105:4
**three**
23:4, 96:17,
109:13, 137:25,
185:6
**three-quarters**
39:6
**threshold**
110:23, 110:24
**through**
7:22, 22:4,
94:19, 151:10,
155:24, 157:9,
161:9, 162:9,
162:12, 167:19,
195:1, 200:24,
203:25, 205:7
**throughout**
71:13, 160:14
**throwing**
29:24
**thus**
153:3
**tied**
19:9
**time**
8:9, 24:6,
25:20, 29:7,
33:15, 61:11,

72:18, 81:21,
81:22, 87:18,
101:12, 109:3,
113:10, 113:12,
113:15, 117:2,
125:22, 126:1,
127:4, 127:8,
127:14, 127:15,
130:24, 132:6,
134:19, 134:20,
135:14, 140:6,
168:23, 169:22,
194:2, 205:22,
206:19
**timer**
105:3, 106:12,
106:14, 106:15,
106:20, 106:22,
107:6, 107:12,
107:13, 108:8,
171:13, 171:21,
171:23, 172:7,
172:17
**times**
22:18, 25:25,
84:9, 84:10,
113:25, 205:25
**timing**
105:17, 105:18,
106:9, 111:23,
111:25, 172:4
**title**
83:22, 83:23,
84:2, 197:10,
197:15, 197:21,
198:15
**titled**
28:3
**tivo**
7:13, 27:17,
27:18, 38:25
**to-do**
161:19
**today**
8:11, 8:18,
8:24, 10:11,
28:25, 132:10,
135:9, 167:1,

167:9, 168:17
**today's**
8:9
**together**
197:17
**told**
67:12, 85:15,
171:4
**too**
64:18, 191:16
**took**
34:11, 193:25
**top**
17:10, 60:5,
60:6, 65:13,
65:17, 85:18,
101:19, 136:20,
152:23, 153:1,
156:22, 167:24,
191:6, 198:14,
203:10
**topic**
111:9
**touch**
165:24, 166:8,
171:22, 172:12
**trace**
94:2, 172:11,
186:21, 200:3,
200:4, 200:18
**track**
171:22
**trade**
5:7
**transcript**
7:5, 7:19,
7:23, 9:16,
9:19, 27:20,
59:24, 136:19,
165:4, 165:6,
165:8, 167:20,
191:24, 192:1,
192:3, 192:7,
194:19, 208:7
**transpired**
170:13
**treat**
153:5

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017

**trial**
15:16, 60:15,
62:10, 62:13,
63:6, 69:23,
70:2, 70:8,
71:18, 95:1,
111:8, 122:12,
124:5, 124:23,
125:2, 125:5,
126:14, 126:24,
127:13, 128:7,
129:7, 129:10,
130:15, 136:4,
136:7, 138:3,
150:3, 188:3,
191:21, 192:3
**tried**
28:16
**trigger**
143:22, 143:23,
144:9
**true**
137:10, 153:4,
153:22, 188:17,
199:5, 208:8
**truesdale**
168:12, 168:17,
169:4, 169:11,
170:4, 170:7,
170:9
**truth**
9:3
**try**
44:23, 113:20,
157:25, 172:1,
192:16, 201:7,
204:18
**trying**
32:7, 34:11,
45:1, 86:12,
90:6, 108:2,
119:18, 144:4,
170:5
**turn**
21:24, 28:2,
34:15, 35:24,
40:11, 49:21,
59:11, 60:2,

68:17, 69:18,
79:9, 83:9,
88:1, 89:17,
96:11, 98:17,
99:22, 114:7,
118:7, 131:19,
138:15, 145:4,
149:14, 151:13,
154:19, 156:18,
165:14, 171:8,
173:17, 180:9,
180:21, 183:9,
184:23, 186:24,
187:7, 192:6,
195:7, 196:2,
199:8, 202:22,
203:20
**twice**
22:19, 22:20,
22:21, 97:13
**two**
25:25, 27:14,
32:16, 47:6,
48:2, 48:4,
48:11, 64:24,
65:5, 101:20,
109:13, 116:6,
144:6, 144:10,
174:25, 197:17
**type**
22:15, 39:18,
42:20, 101:13,
161:5, 162:5
**typewriting**
208:11

**U**

**ui**
170:6
███████
153:5, 153:8
**ultimate**
25:12
**ultimately**
25:6, 25:10,
125:12, 139:7,
153:18, 154:4,
186:24, 202:9

**um-hum**
172:19
**unaccused**
79:13, 151:18
**unclear**
154:14, 163:15
**under**
28:11, 41:17,
42:4, 42:7,
43:24, 45:19,
49:13, 51:7,
52:21, 58:7,
60:6, 131:13,
138:11, 173:23,
174:2, 179:2,
208:11
**underlining**
137:1, 137:25,
157:11
**understand**
16:25, 27:1,
29:2, 29:5,
32:20, 33:5,
33:18, 36:4,
37:10, 37:13,
38:23, 45:1,
46:22, 51:16,
65:1, 73:5,
73:14, 73:23,
74:3, 75:25,
77:24, 86:12,
94:11, 95:22,
96:10, 97:23,
108:2, 108:12,
119:25, 122:9,
123:11, 123:25,
124:9, 130:3,
132:7, 134:10,
144:4, 154:6,
155:2, 161:22,
162:23, 162:25,
171:24, 174:15,
175:15, 176:11,
178:3, 178:11,
178:13, 178:22,
182:9, 187:16,
189:9
**understanding**
22:2, 22:6,

29:1, 29:3,
40:15, 40:19,
44:14, 50:10,
52:1, 62:3,
71:21, 72:8,
73:19, 74:11,
74:12, 74:16,
77:15, 78:5,
80:7, 83:20,
87:19, 91:9,
93:3, 119:19,
122:15, 122:18,
124:8, 125:3,
125:5, 128:15,
128:16, 129:3,
130:8, 155:7,
155:10, 156:12,
162:25, 169:10,
178:25
**understands**
159:9
**understood**
114:3, 142:19,
150:9
**united**
1:1, 8:6, 10:8
**unless**
46:2
**unlike**
146:2
**until**
114:20, 115:3,
115:6, 115:10,
115:18, 117:8,
118:1, 131:14,
142:6
**updated**
14:14
**upon**
29:11, 29:20,
30:11, 115:22,
116:2, 116:8,
116:15, 149:11,
190:4
**upper**
192:7
**urgent**
170:11

url
159:15, 162:15, 162:16
urls
162:11, 163:3
urquhart
4:5, 6:9
use
27:11, 27:15, 55:7, 60:24, 64:2, 64:20, 65:6, 73:12, 82:18, 90:21, 90:23, 91:6, 92:13, 92:16, 92:18, 98:9, 101:21, 109:3, 137:23, 140:15, 151:11, 153:8, 154:2, 160:15, 169:17, 190:22, 202:8
used
19:18, 55:8, 79:1, 90:20, 102:10, 112:24, 128:25, 129:1, 143:15, 146:8, 160:16, 162:16
user's
116:19, 142:7, 171:22
users
148:24
uses
68:24, 173:12, 191:3, 191:8
using
101:13, 136:23, 148:25, 169:17, 201:6, 201:12, 201:23
ux
168:19, 168:22

**V**

vague
11:10, 12:23,

13:14, 16:6, 19:7, 20:12, 34:8, 35:8, 36:18, 38:12, 38:21, 41:20, 42:23, 43:20, 44:6, 45:22, 46:12, 47:2, 47:12, 47:21, 48:6, 53:6, 53:10, 53:17, 53:22, 54:9, 54:14, 55:15, 55:22, 56:20, 57:6, 57:18, 58:5, 58:22, 59:6, 63:21, 64:15, 64:18, 64:25, 65:24, 66:6, 66:17, 67:6, 67:24, 71:8, 71:20, 72:5, 72:13, 73:1, 74:1, 76:5, 78:10, 80:12, 81:10, 87:23, 90:3, 94:13, 95:8, 95:19, 97:21, 99:17, 101:5, 102:2, 102:18, 103:17, 103:25, 104:11, 111:3, 111:13, 112:7, 113:5, 117:5, 117:17, 133:4, 138:13, 140:4, 142:2, 143:25, 155:15, 172:25, 174:14, 174:24, 177:16, 178:19, 179:4, 179:10, 179:17, 182:2, 182:19, 185:22, 186:3, 186:19, 196:18, 202:5, 202:16
valid
133:19, 133:25,

134:14
value
105:3, 105:5, 154:3, 199:5
values
197:24, 198:2, 198:16, 199:1
variable
197:5
verb
75:6, 75:15
verdict
18:24, 121:8
version
104:23, 166:21, 186:7
versions
81:3, 105:18, 190:12, 207:5
versus
8:5, 16:5, 22:24, 23:10, 23:22, 67:17, 67:22, 90:9, 95:14, 140:16, 175:10, 196:24
very
35:21, 91:25, 102:21, 147:6, 162:2
via
114:21, 115:11, 115:12, 116:20, 206:11, 207:6
video
8:10, 8:13, 62:11
videographer
6:22, 8:2, 8:11, 8:23, 68:8, 68:11, 129:19, 129:22, 164:23, 165:1, 184:16, 184:19, 194:13, 194:16, 207:9
videotaped
8:4

view
35:15, 40:9, 41:2, 71:10, 137:22, 144:18, 144:19, 175:6
viii
183:24
violates
52:9
visible
139:6
vitale
168:1
voice
8:15

**W**

walden
5:4, 7:3, 8:17, 9:7, 18:7, 26:6, 27:16, 32:13, 32:14, 48:22, 49:2, 49:4, 49:7, 59:18, 68:6, 68:13, 86:6, 87:23, 88:20, 89:2, 89:9, 90:3, 90:25, 91:23, 92:19, 93:19, 94:13, 95:8, 95:19, 96:2, 96:8, 97:4, 97:11, 97:21, 98:4, 98:12, 99:17, 99:20, 101:5, 102:2, 102:18, 103:10, 103:16, 103:25, 104:11, 105:14, 106:17, 107:2, 109:9, 109:21, 110:13, 111:3, 111:13, 112:7, 113:5, 113:22, 114:3, 114:6, 114:10, 123:10, 123:15, 129:13,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017                                   101

129:17, 129:24,
164:22, 165:3,
165:9, 167:14,
184:12, 184:21,
194:9, 194:22,
207:7
**walden@wilmerhale**
5:5
**want**
37:5, 39:5,
107:24, 110:15,
129:15, 170:2,
172:14, 173:14,
193:3, 193:19
**wanted**
33:2, 198:5
**wants**
88:14
**wasn't**
18:9, 36:20,
86:10, 107:10,
108:4, 122:16,
126:13, 138:4
**way**
38:16, 39:6,
51:3, 52:7,
56:23, 80:10,
80:19, 90:5,
94:5, 94:12,
95:10, 105:8,
108:1, 157:7,
167:3, 177:14,
177:17, 193:4,
196:13, 196:22,
202:3, 202:12,
202:19, 206:10
**ways**
158:10
**we'd**
52:18, 130:17
**we'll**
154:16, 156:17,
184:13, 184:14,
194:10, 194:11
**we're**
13:22, 32:2,
32:11, 32:22,
65:9, 68:11,

74:19, 75:11,
75:13, 94:9,
100:1, 105:20,
107:22, 107:23,
117:21, 118:4,
129:13, 142:16
**web**
149:6, 181:4,
181:9, 181:19,
181:25, 182:17
**weeds**
95:11
**welcome**
101:12
**well**
17:9, 17:23,
19:25, 22:8,
23:11, 25:25,
27:4, 29:4,
30:4, 42:2,
52:17, 58:21,
62:12, 63:12,
66:7, 72:4,
74:12, 88:11,
90:6, 103:8,
108:4, 110:1,
117:18, 118:24,
119:15, 122:16,
123:15, 123:18,
129:7, 132:3,
139:1, 139:17,
143:12, 150:18,
154:16, 159:12,
161:8, 165:18,
167:7, 171:6,
172:15, 174:16,
176:12, 179:18,
182:13, 198:10,
206:17
**went**
25:19, 36:24,
155:24
**were**
17:25, 19:9,
23:14, 24:22,
25:7, 25:17,
26:24, 30:21,
30:22, 31:13,

33:9, 34:11,
35:4, 35:7,
35:19, 36:11,
36:12, 41:12,
41:18, 42:14,
44:9, 46:13,
48:11, 48:12,
49:15, 49:18,
50:5, 60:15,
67:15, 72:17,
75:19, 80:15,
82:3, 82:21,
84:20, 85:17,
85:21, 85:24,
111:20, 121:4,
122:19, 122:20,
124:13, 127:10,
128:17, 128:25,
129:3, 129:25,
130:15, 132:5,
132:17, 132:20,
138:6, 145:7,
153:15, 153:21,
161:16, 168:19,
168:22, 168:23,
168:25, 175:7,
178:9, 185:1,
188:12, 191:19,
206:3
**weren't**
18:12, 128:24
**what's**
17:11, 20:8,
28:3, 42:6,
56:4, 61:21,
62:18, 64:5,
67:16, 68:5,
71:13, 81:5,
94:20, 120:23,
137:24, 146:25,
158:1, 158:2,
158:9, 158:11,
166:15
**whatever**
33:1, 96:22,
149:20
**when**
23:19, 23:21,

23:25, 24:9,
24:15, 29:25,
30:2, 36:10,
37:6, 39:19,
41:10, 41:14,
41:22, 41:23,
42:12, 42:17,
50:1, 51:20,
56:8, 56:10,
56:24, 58:19,
60:14, 62:1,
63:16, 63:25,
71:16, 74:13,
74:15, 77:16,
84:7, 87:13,
91:14, 91:19,
103:6, 108:13,
109:15, 111:18,
111:20, 116:19,
126:22, 127:10,
129:2, 132:1,
139:3, 140:22,
143:8, 143:21,
144:2, 147:24,
148:14, 148:20,
152:3, 153:15,
153:18, 158:15,
159:2, 159:19,
160:5, 163:1,
168:4, 171:19,
172:1, 172:5,
179:1, 182:15,
188:15, 195:22,
196:20, 202:17,
204:2, 204:8,
205:21, 205:22,
206:3, 206:22
**where**
16:15, 17:3,
17:4, 28:12,
39:7, 39:11,
46:3, 79:23,
96:13, 107:22,
144:23, 149:5,
149:16, 154:22,
157:6, 157:19,
158:14, 158:17,
159:1, 159:10,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

102

159:13, 172:20,
198:5, 198:20,
206:3
**whereas**
75:7
**whereof**
208:16
**whether**
9:25, 10:2,
19:18, 19:21,
20:6, 20:18,
22:14, 23:15,
24:24, 25:7,
25:16, 25:21,
26:15, 26:22,
28:15, 30:10,
33:21, 34:4,
34:23, 36:16,
38:19, 39:14,
39:21, 39:25,
41:12, 41:16,
41:18, 42:2,
42:13, 43:2,
45:5, 45:19,
46:18, 50:24,
51:2, 69:4,
69:10, 70:9,
78:16, 80:9,
81:25, 82:17,
86:12, 86:25,
87:7, 87:12,
90:1, 97:8,
97:18, 101:3,
103:23, 105:12,
105:23, 112:4,
112:11, 119:16,
120:1, 124:16,
125:18, 127:18,
127:23, 127:24,
128:19, 128:21,
132:9, 132:20,
132:21, 134:14,
134:17, 134:23,
135:10, 138:6,
138:19, 144:14,
154:14, 154:23,
163:15, 163:17,
166:14, 166:23,

167:4, 167:6,
169:12, 173:22,
174:1, 179:1
**which**
13:23, 17:13,
17:20, 18:13,
19:13, 38:25,
45:2, 51:9,
51:18, 52:12,
63:10, 64:19,
71:22, 83:2,
85:5, 93:22,
105:20, 108:23,
131:10, 133:7,
146:8, 147:9,
147:11, 153:19,
161:23, 162:15,
166:21, 168:5,
171:21, 177:14,
178:16, 181:3,
181:8, 181:24,
182:17, 183:5,
183:23, 183:25,
186:12, 195:17,
196:16, 196:17,
203:12, 203:22,
205:19, 207:4
**who**
81:25, 83:19,
85:3, 86:21,
125:25, 168:10,
168:12, 168:17
**whole**
26:13, 31:6,
39:4, 94:15,
95:12, 115:7
**whom**
8:16, 208:6
**why**
15:19, 44:8,
45:2, 45:9,
46:1, 49:9,
49:12, 54:21,
54:23, 54:24,
55:1, 55:3,
55:25, 56:1,
57:20, 75:3,
85:21, 85:24,

86:11, 87:20,
87:22, 92:16,
92:23, 100:19,
113:24, 115:2,
119:12, 122:23,
123:4, 123:19,
123:23, 124:15,
125:12, 135:3,
135:4, 135:16,
138:2, 150:13,
150:15, 170:9,
173:13
**will**
20:14, 21:21,
49:8, 56:13,
57:7, 110:12,
115:13, 133:19,
144:23, 149:9,
150:25, 157:25,
158:12, 160:3,
161:23, 163:25,
180:7, 186:17,
187:5, 205:4,
205:14
**willing**
171:7
**wilmer**
5:6, 5:14
**wilmerhale**
8:18, 8:19
**window**
61:4, 61:19,
61:25, 62:24,
63:1, 65:18,
66:3, 66:4,
66:24, 67:3,
67:22, 82:9,
87:1, 87:13,
87:16, 91:20,
127:16
**withdraw**
26:6, 117:12
**withdrawing**
64:9
**within**
11:24, 59:8,
72:9, 126:4,
164:9, 172:7,

186:16, 208:5
**without**
24:17, 44:14,
67:14, 201:18
**witness**
8:25, 49:2,
49:3, 76:13,
123:7, 194:23,
208:16
**witness's**
48:16, 56:21,
70:21, 77:3,
80:21, 89:10,
91:1, 91:24,
92:20, 96:3,
119:10, 124:12,
124:25, 144:17,
146:23, 147:19,
148:17, 170:1,
176:16, 181:12
**word**
27:11, 71:4,
77:14, 137:23
**worded**
187:19
**words**
55:8, 71:1,
71:2
**work**
91:7, 127:8,
131:24, 132:2
**worked**
169:22, 202:20
**working**
132:5
**works**
119:3, 120:18,
196:14, 202:3,
202:13
**world**
5:7
**wouldn't**
45:25, 56:23,
95:6, 134:6
**write**
17:4, 26:10,
38:3, 38:5,
38:6, 40:18,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Transcript of Dr. Kevin Jeffay

Conducted on October 27, 2017                                        103

171:17
**written**
64:5
**wrong**
100:1, 142:15,
156:3, 156:11
**wrote**
36:2, 36:4,
36:10, 86:11,
135:14, 150:2

**X**

**x**
1:4, 1:22, 2:1,
2:18
**xiv**
17:10, 17:14,
17:16, 20:2,
20:5
**xy**
172:21

**Y**

**yank**
83:8
**yeah**
22:21, 28:6,
31:4, 34:3,
37:2, 38:23,
40:4, 41:22,
64:17, 70:22,
72:7, 92:6,
102:3, 118:4,
119:11, 122:4,
126:11, 137:17,
139:21, 144:18,
152:21, 174:15,
178:20, 207:5
**year**
24:4, 126:16,
126:19, 129:6
**years**
61:16, 61:24,
100:25, 126:3
**yep**
201:4
**yet**
58:11, 138:7

**york**
1:14, 2:6, 3:2,
4:7, 4:15, 5:9,
6:11, 8:14,
208:5, 208:23
**you'd**
33:1, 44:7,
83:12, 87:24,
98:6
**you'll**
192:7
**you've**
25:20, 36:14,
44:1, 47:8,
108:1, 117:8,
121:10, 160:9
**yourself**
84:25, 165:11

**Z**

**zero**
89:7

**.**

**.6000**
5:17
**.7000**
4:8
**.7219**
6:12
**.8800**
5:10

**0**

**00064616**
7:22, 167:19
**00077804**
194:25
**00630**
1:8, 2:13, 8:8

**1**

**1**
129:22
**1.0**
108:20
**1.01**
106:1, 106:25,

107:14, 107:18,
107:19, 107:22,
108:10, 108:21,
109:20, 110:17
**1.4**
110:19
**10**
68:8, 68:11,
161:20, 164:23,
193:10, 193:12,
193:14, 194:5,
194:8, 208:20
**10007**
5:9
**10010**
4:7, 6:11
**103**
79:9, 79:12,
79:20
**104**
83:9, 83:14
**106**
88:1, 88:4,
89:18
**107**
65:15, 67:17
**110**
96:11, 186:9
**119**
196:3, 198:12,
199:18
**12**
1:8, 2:13, 3:4,
8:8, 8:10,
129:19, 149:23
**120**
204:7, 204:19
**126**
130:21, 132:18
**13**
130:7
**136**
7:18, 99:22,
99:24, 100:5,
100:6
**14**
129:19, 130:7
**141**
98:17, 152:23,

152:25, 153:1
**142**
34:19
**149**
68:17
**15**
7:24, 22:8,
84:16, 165:16,
191:25, 192:4
**152**
145:19
**156**
149:18
**16**
21:24, 22:3,
26:7, 166:4,
192:17
**164616**
3:11
**165**
7:19
**167**
7:21, 180:9
**17**
130:7, 159:13,
162:10, 162:12
**172**
180:24
**174**
17:11
**18**
28:8, 129:22
**1821**
192:6
**183**
114:9, 114:12,
114:17
**185**
116:18, 117:21,
118:5
**19**
22:4, 32:8,
32:13, 35:25,
36:1, 39:1,
193:13, 194:4,
198:23
**190**
118:7, 118:9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

104

**191**
7:23
**197**
60:2
**1a**
13:18, 136:23
**1b**
13:18, 163:6
**1c**
163:6, 163:8
**1c-1**
13:18
**1c-3**
13:18
**1d**
13:19
**1e**
163:19, 163:25

**2**

**2**
164:23, 165:1,
184:16
**2-7**
61:4, 61:19,
61:22, 62:19,
63:13
**2.7**
63:24, 66:12,
66:14, 67:20,
68:1, 68:3, 68:5
**20**
31:18, 31:19,
31:22, 32:12,
32:13, 33:8,
84:16, 161:21
**2008**
24:1, 25:4,
25:6
**2010**
24:16, 25:4,
25:15
**2013**
125:22, 126:1,
126:19, 130:4,
149:23
**2014**
7:24, 15:16,

126:14, 126:24,
127:14, 129:8,
129:9, 130:4,
130:14, 165:25,
166:4, 178:20,
178:21, 188:3,
191:25, 192:4
**2015**
130:10
**2016**
130:12
**2017**
3:3, 8:9,
83:15, 129:8,
130:4, 205:23,
208:18
**2018**
208:20
**207**
3:12
**208**
121:25, 122:8,
124:2, 128:13
**21**
40:12, 40:18,
59:14, 83:15,
84:8
**212.230**
5:10
**212.849**
4:8, 6:12
**22**
100:7, 165:25
**220**
131:19, 131:20
**224**
152:18, 152:20
**226**
34:16, 34:19
**23**
49:21, 162:12
**236**
138:15, 138:16
**24**
50:9, 162:9
**241**
152:24
**242**
145:4, 145:19,

145:20, 152:24,
153:3
**25**
51:16
**250**
5:8
**251**
149:14, 149:15
**253**
151:13
**256**
151:17
**257**
154:19, 154:21,
155:1
**26**
165:1, 184:19
**261**
156:18
**265**
171:9, 171:10
**268**
173:17, 173:19
**27**
3:3, 7:13, 8:9,
207:9, 207:11
**270**
174:5
**281**
180:10
**292**
180:21, 180:23,
181:14
**297**
183:9, 183:15

**3**

**3**
184:19, 194:13,
194:16
**30**
208:17
**301**
17:17
**309**
99:24, 99:25,
100:6
**313**
187:8, 187:12,

189:1
**320**
68:19
**342**
199:9, 199:11
**35**
79:15
**352**
199:10, 199:11
**354**
195:7, 198:25
**356**
197:3
**357**
197:10, 197:12,
197:17, 197:21
**359**
195:7
**36**
68:8
**361**
197:3, 200:24
**362**
197:10, 197:12,
197:21, 198:5
**37**
66:4
**374**
60:9, 60:22,
66:5

**4**

**4**
207:9, 207:11
**42**
194:13
**45**
160:18
**454**
202:22
**46**
88:4
**48**
65:10, 65:17,
66:3, 66:23,
67:14, 67:17,
67:23, 68:4
**49**
96:16, 97:2,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
Transcript of Dr. Kevin Jeffay
Conducted on October 27, 2017

105

| | | | |
|---|---|---|---|
| 97:9, 98:10, 184:23, 185:2 | **647** 9:12, 42:4, 50:6, 50:18, | **797** 205:6 | |
| **5** | 50:25, 52:6, 97:10, 100:13, | **8** | |
| **5,859,636** 7:18, 136:16, 136:17 | 100:17, 100:23, 101:4, 132:4, 132:11, 132:13, | **805** 205:7 | |
| **5,946,647** 7:11, 7:12, 7:17, 9:15, | 134:5, 134:17, 135:10, 135:19, 135:22, 138:11, | **807** 205:12 **813** | |
| 9:17, 59:20, 59:23 | 181:2, 184:2, 187:17, 189:8 | 195:1 | |
| **50** 160:17, 160:23, | **650.858** 5:17 | **9** | |
| 185:4 | **673** 203:9 | **9** 3:4, 8:10 | |
| **51** 4:6, 6:10, 8:14 | **68** 173:18 | **900** 194:25, 195:3, 196:16, 198:25, | |
| **53** 161:17, 194:16 | **7** | 200:23, 202:23, 203:21, 204:15, | |
| **535** 196:7, 196:15, 199:19, 200:13, | **70** 59:13 | 204:21, 205:18, 206:1, 206:4, 206:7, 206:20 | |
| 201:20, 202:14, 202:20, 203:9, 204:7, 206:13, | **721** 200:24, 200:25, 201:1 | **94304** 5:16 | |
| 206:15 | **73** 59:11, 59:14, | **950** 5:15 | |
| **54** 68:11, 161:4, 162:6 | 59:16, 69:18, 69:19, 69:20, 70:16, 71:7, | | |
| **56** 184:16 | 71:13 | | |
| **58** 165:14, 165:15 | **739** 203:20, 203:23, 203:24, 203:25, | | |
| **59** 7:15 | 204:15, 204:21 | | |
| **6** | **754** 204:15, 204:17 | | |
| **60** 161:10, 161:15, | **767** 205:3 | | |
| 198:23, 199:20 | **769** 203:25, 204:16 | | |
| **61** 201:21, 202:14 | **77804** 199:9 | | |
| **63** 204:6 | **78** 98:22, 98:25 | | |
| **630** 7:22, 167:19, 194:25 | **79** 13:7, 131:19 | | |
| **631** 7:22, 167:19 | | | |