# EXHIBIT B
## (Filed Under Seal)

Highly Confidential - ATTORNEYS' EYES ONLY

Page 1

1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                 SAN JOSE DIVISION
4

    APPLE, INC., a California      )
5   corporation,                   )
                                    )
6          Plaintiff and           )
           Counterdefendant,       )
7                                   ) Case No. 12-CV-00630-LHK
    v.                              )
8                                   )
    SAMSUNG ELECTRONICS CO., LTD., )
9   a Korean corporation;          )
    SAMSUNG ELECTRONICS            )
10  AMERICA, INC., a New York      )
    corporation; and SAMSUNG       )
11  TELECOMMUNICATIONS             )
    AMERICA, LLC, a Delaware       )
12  limited liability company,     )
                                    )
13         Defendants and          )
           Counterclaimants.       )
14  _____)
15
16  *** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY ***
17
18    VIDEOTAPED DEPOSITION OF TODD C. MOWRY, PH.D.,
19  a witness herein, called by the Defendants and
    Counterclaimants for examination, taken by and
20  before Ann Medis, Registered Professional Reporter
    and Notary Public in and for the Commonwealth of
21  Pennsylvania, at the offices of Saul Ewing, LLP,
    One PPG Place, Pittsburgh, Pennsylvania
22  15222, on Tuesday, October 31, 2017, commencing at
23  9:18 a.m.
24
25  JOB NO. 132570

Highly Confidential - ATTORNEYS' EYES ONLY

Page 2

```
 1            A P P E A R A N C E S
 2  On behalf of Plaintiff and Counterdefendant
 3       WILMERHALE
         BY:  S. CALVIN WALDEN, ESQUIRE
 4       7 World Trade Center
         250 Greenwich Street
 5       New York, New York 10007
 6
 7       WILMERHALE
         BY:  SARAH FRAZIER, ESQUIRE
 8       60 State Street
         Boston, Massachusetts 02109
 9
10
11       WILMERHALE
         BY:  DAVID SMITH, ESQUIRE
12       950 Page Mill Road
         Palo Alto, California 94304
13
14
    On behalf of Defendants and Counterclaimants
15
16       QUINN EMANUEL URQUHART & SULLIVAN
         BY:  RICHARD ERWINE, ESQUIRE
         AND  JOHN MCKEE, ESQUIRE
17       51 Madison Avenue
         New York, New York 10010
18
19
20       SAMSUNG ELECTRONICS AMERICA, INC.
         BY:  CHRISTOPHER BURRELL, ESQUIRE
21       1200 New Hampshire Avenue
         Washington, DC, 20036
22
23  Also present
24       Kevin Jeffay, Ph.D.
         Elizabeth Green, videographer
25
```

Page 3

```
 1            * I N D E X *
 2  TODD C. MOWRY, PH.D.                    PAGE
 3    EXAMINATION BY MR. ERWINE              5
 4
 5      * INDEX OF MOWRY EXHIBITS *
 6  NO.        DESCRIPTION          PAGE
 7  Exhibit 1  U.S. Patent No. 5,946,647      5
 8  Exhibit 2  Initial Expert Report of Dr. Todd C.   6
              Mowry in Connection with Ongoing
 9            Royalties
10  Exhibit 3  Reply Expert Report of Dr. Todd C.     6
              Mowry in Connection with Ongoing
11            Royalties
12  Exhibit 4  Order Granting-in-Part and Denying-In-  74
              Part Apple's Motion for Partial Summary
13            Judgment and Denying Samsung's Motion
              For Partial Summary Judgment
14
    Exhibit 5  Rebuttal Expert Report of Dr. Todd C.  81
15            Mowry Regarding Validity of
              U.S. Patent No. 5,946,647
16
    Exhibit 6  Plaintiff and Counterclaim Defendant    92
17            Apple Inc.'s Corrected Opposition to
              Samsung's Motion for Summary Judgment
18
    Exhibit 7  U.S. Patent No. 5,859,636          132
19
    Exhibit 8  Reply Expert Declaration of Dr. Todd C.  164
20            Mowry concerning U.S. Patent
              No. 5,946,647
21
22              - - - -
23
24
25
```

Page 4

```
 1            P R O C E E D I N G S
 2              - - - -
 3       THE VIDEOGRAPHER:  This is the start of
 4  disc No. 1 of the video-recorded deposition of
 5  Todd Mowry in the matter of Apple Inc., versus
 6  Samsung Electronics, et al. in the United States
 7  District Court in the Northern District of
 8  California, San Jose Division,
 9  No. 12-cv-00630-LHK.
10       This deposition is being held at 1 PPG Place,
11  Suite 3010, Pittsburgh, Pennsylvania 15222 on
12  October 31, 2017 at approximately 9:18 a.m.
13       My name is Elizabeth Green.  I'm the legal
14  professional specialist representing TSG
15  Reporting, Inc., headquartered at 747 Third
16  Avenue, New York, New York.  The court reporter is
17  Ann Medis in association with TSG Reporting.
18       Would counsel please introduce yourselves.
19       MR. ERWINE:  Rich Erwine and John McKee
20  of Quinn Emanuel on behalf of Samsung.  Along with
21  us is Dr. Kevin Jeffay and Mr. Chris Worral of
22  Samsung.
23       MR. WALDEN:  Yes, Calvin Walden from
24  WilmerHale on behalf of Apple, along with Sarah
25  Frazier and David Smith.
```

Page 5

```
 1       THE VIDEOGRAPHER:  Will the court
 2  reporter please swear in the witness.
 3       TODD C. MOWRY, PH.D.,
 4  having been first duly sworn, was examined
 5          and testified as follows:
 6          EXAMINATION
 7  BY MR. ERWINE:
 8    Q.  Good morning, Dr. Mowry.
 9    A.  Good morning.
10    Q.  Is there anything restricting you from
11  providing complete and truthful testimony today?
12    A.  No.
13    Q.  Are you taking any medications that
14  would impede your ability to provide complete and
15  truthful testimony?
16    A.  No.
17       MR. ERWINE:  Let's mark two exhibits
18  before we get started.  The first exhibit is
19  United States Patent No. 5,946,647.  This is
20  Exhibit 1.
21       (Mowry Exhibit 1 was marked.)
22  BY MR. ERWINE:
23    Q.  I assume you've seen this before?
24    A.  I believe so.
25       MR. ERWINE:  And we'll mark as Exhibit 2
```

Highly Confidential - ATTORNEYS' EYES ONLY

Page 6

1   initial expert report of Dr. Todd C. Mowry in
2   connection with ongoing royalties.
3          (Mowry Exhibit 2 was marked.)
4          MR. ERWINE:  And we will mark as
5   Exhibit 3 reply expert report of Dr. Todd C. Mowry
6   in connection with ongoing royalties.
7          (Mowry Exhibit 3 was marked.)
8   BY MR. ERWINE:
9       Q.  Dr. Mowry, why don't we start with your
10   opening report, Exhibit 2.
11      A.  Okay.
12      Q.  And is this a complete report of your
13   opinions?
14      A.  Well, the collection of the two reports
15   are, along with the other things that I reference
16   in the reports, like my previous reports in the
17   trial

Page 7

Page 8

Page 9

Highly Confidential - ATTORNEYS' EYES ONLY

Page 10



11    Q.  So just to take a step back, when I'm
12  talking about adjudicated products, those would be
13  the products that were part of the trial in 2014.
14    A.  Okay.
15    Q.  The products that were found to infringe
16  claims in the '647 patent.

Page 11

Page 12

Page 13

Highly Confidential - ATTORNEYS' EYES ONLY

Page 14

Page 15

Page 16

Page 17



Highly Confidential - ATTORNEYS' EYES ONLY

Page 18

Page 19

Page 20

Page 21



Highly Confidential - ATTORNEYS' EYES ONLY

Page 22

Page 23

Page 24

Page 25



Highly Confidential - ATTORNEYS' EYES ONLY

Page 26

Page 27

Page 28

Page 29

Highly Confidential - ATTORNEYS' EYES ONLY

Page 30

2    Q.  Dr. Mowry, did you author these reports?
3    A.  Yes.
4       MR. WALDEN:  Objection.
5       THE WITNESS:  I'm sorry.
6       MR. WALDEN:  Objection.  The rules now
7  clarify about how much you can ask about this.
8  So that's a yes-or-no answer.
9       MR. ERWINE:  He answered the question.
10      THE WITNESS:  Yes.
11  BY MR. ERWINE:
12   Q.  And did you confer with anyone other
13  than counsel in the preparation for the reports?
14   A.  No.
15   Q.  Did you confer with anyone at Apple?
16   A.  No.
17      Sorry.  Just to be clear, what report are you
18  talking about?
19   Q.  Both.
20   A.  Both of these, yes?
21   Q.  Correct.
22   A.  Yes.  I did not -- let's see.  The
23  answer to my question was no.  That's a correct
24  answer.
25   Q.  And about how much time did you spend

Page 31

1  preparing the opening report?
2   A.  I mean, roughly, 60 hours I think,
3  something in that -- something like 60.
4   Q.  And how about the reply report?
5   A.  I think that that was perhaps 40 or 50.
6   Q.  Now, with respect to the reply report,
7  you -- strike that.
8      Do you recall when you received Dr. Jeffay's
9  rebuttal report?
10   A.  I don't recall the date.  I remember
11  receiving it after I submitted my opening report.
12   Q.  And you understand that Dr. Jeffay's
13  report is dated September 29.
14      Are you okay with that assumption?
15   A.  Yeah.  I don't remember the date off the
16  top of my head.  That may be true.  I don't have
17  any reason to dispute that.
18   Q.  And just looking at Exhibit 3, your
19  reply report, the back page, it's dated October 9,
20  2017; is that correct?
21   A.  My reply report, yes, that's the date on
22  it.
23   Q.  After you received Dr. Jeffay's rebuttal
24  report, did you review any additional source code
25  in preparation of your reply report?

Page 32

1   A.  I don't recall doing so.
2   Q.  You're not aware of looking at any new
3  source code?
4   A.  No.  I don't recall doing that.
5   Q.  If you turn to paragraph 6 of your reply
6  report, this is Exhibit 3, you see the sentence
7  that states, starting at line 4, "I also reviewed
8  certain source code produced by Samsung in
9  connection with Dr. Jeffay's rebuttal report."
10  And there's citations to the code.
11   A.  Okay.
12   Q.  Does that refresh your recollection
13  about reviewing source code?
14   A.  Yes.  I -- well, I'd have to look at the
15  citation under what specific source code that was.
16  But I remember now that the -- having -- I
17  reviewed the materials that were produced as part
18  of Dr. Jeffay's rebuttal report.
19   Q.  And do you have a specific recollection
20  of reviewing source code printouts?
21   A.  I mean, I have reviewed source code
22  printouts at various times.  I don't remember -- I
23  don't have a specific recollection of what it is
24  that I reviewed in connection with that sentence.
25   Q.  And if I indicated that that source code

Page 33

1  was referring to the resolver activity menu, would
2  that assist in your recollection of reviewing that
3  source code?
4       MR. WALDEN:  Objection.
5       Counsel, do you have the code?
6       MR. ERWINE:  Yeah.
7  BY MR. ERWINE:
8   Q.  I'll show it to you.
9   A.  I've reviewed the resolver activity
10  code.  So I reviewed it, I mean, a number of
11  different times.
12      So I don't have a specific recollection of
13  reviewing it, like I said, in connection with that
14  sentence, but I'm happy to take another look at
15  it.
16   Q.  You recall -- so you do recall reviewing
17  some code in preparation for your rebuttal
18  report -- I'm sorry -- your reply report.
19   A.  Yes.  I definitely -- yes.  I reviewed
20  code, yes.
21   Q.  And was the review of that code, was
22  that based on traveling to D.C. to look at a
23  source code computer or did you look at specific
24  printouts?
25   A.  I went to D.C. to look at source code.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 34

1    And that's what it was based on.
2        Q.  So this sentence that you have in
3    paragraph 6 is based on review of source code in
4    D.C.?
5        MR. WALDEN:  Objection.
6    Mischaracterizes the witness' testimony.
7        THE WITNESS:  No.  I mean, I'd have to
8    look at the citation.  I don't remember off the
9    top of my head what that citation is referring to
10   exactly.
11   BY MR. ERWINE:
12       Q.  We have that code, so we'll get it.
13       A.  Okay.
14       Q.  Now, Dr. Mowry, as an expert, is this
15   the first time that you've considered whether a
16   design-around was more than colorably different
17   from an adjudicated product?
18       A.  No, it is not.
19       Q.  What is the first time?
20       A.  For the Apple/HTC case for the ITC, I
21   was asked to consider whether Motorola -- sorry --
22   HTC design-arounds were more than colorably
23   different.
24       Q.  And was that part of an ongoing
25   royalties analysis?

Page 35

1        A.  That's my recollection, yes.
2        Q.  And so you mentioned that it was at the
3    ITC; is that correct?
4        A.  It was related to an import ban, or
5    whatever it's called, that was imposed on HTC.
6        My recollection is that at some point the
7    matter was resolved, and that happened before it
8    went back for -- I did not need to go back to
9    court or anything related to those royalty things.
10       But I was asked at least to start thinking
11   about that.  I don't remember -- that was probably
12   five years ago, I think, something like that.
13       Q.  And you mentioned an import ban.  So is
14   it your understanding that at the ITC it didn't
15   involve royalties in the form of money payment,
16   but it was actually about whether or not a product
17   could enter the United States?
18       A.  I wasn't -- I believe that's the case.
19   So I don't know -- to be honest, I wasn't focused
20   on that part of the -- I believe that the main
21   point of it was an import ban.  I don't recall
22   there being any royalties related to that.
23       But that wasn't my focus in terms of my
24   involvement.
25       Q.  And did you supply opinions in

Page 36

1    connection with whether or not the HTC product was
2    more than colorably different?
3        MR. WALDEN:  Objection.  I'm just going
4    to caution the witness.  I think it's a yes-or-no
5    question, but there's probably a protective order
6    in that case.
7        So I would say be cognizant of the protective
8    order in terms of discussing HTC products.
9        THE WITNESS:  So can you repeat the
10   question.  It was whether I provided opinions?
11   BY MR. ERWINE:
12       Q.  Yeah.  The question was:  Did you supply
13   opinions in connection with whether the HTC
14   product at issue was more than colorably different
15   than the adjudicated product?
16       A.  I don't remember whether it got to the
17   point of me actually supplying an opinion or not.
18   I was asked to start looking at that.  At some
19   point the matter was resolved.
20       I think that the matter may have been
21   resolved before I actually wrote up an opinion,
22   but I don't recall exactly.
23       Q.  Do you recall the test, the legal test
24   that you applied in that circumstance?
25       A.  Well, I --

Page 37

1        MR. WALDEN:  Objection.
2        Go ahead.
3        THE WITNESS:  I don't recall it being
4    any different from the one I used for this one.  I
5    think it was the same, but I don't remember off
6    the top of my head what I -- I don't remember it
7    being any different from what it is now.
8    BY MR. ERWINE:
9        Q.  And was the test that you applied a
10   two-part test?
11       MR. WALDEN:  Objection.
12       THE WITNESS:  I don't recall the details
13   of that from back then.  I know that it's a
14   two-part test for what I discussed for this
15   matter, yes.
16   BY MR. ERWINE:
17       Q.  And other than the HTC matter, are you
18   aware of any other instances where you provided
19   opinions concerning whether or not a design-around
20   is more than colorably different from the
21   adjudicated product?
22       A.  No.
23       Q.  Dr. Mowry, what is your understanding of
24   the burden of proof required for proving that a
25   design-around is not more than colorably

Highly Confidential - ATTORNEYS' EYES ONLY

Page 38

1  different?
2       MR. WALDEN:  Objection.  Calls for a
3  legal conclusion.
4       THE WITNESS:  Well, my understanding of
5  those issues is discussed in my report, if I can
6  look at that to refresh my memory.
7       Well, I don't recall discussing burden of
8  proof, that phrase exactly.  I do talk about the
9  standard for not more than colorably different,
10 and I do discuss that.
11      So I don't know how the phrase "burden of
12 proof" differs from what I discuss here, if it's
13 different than -- I'm not aware of any
14 differences.
15 BY MR. ERWINE:
16      Q.  For purposes of infringement, do you
17 understand that the burden of proof for a patentee
18 is preponderance of the evidence?
19      MR. WALDEN:  Objection.  Calls for a
20 legal conclusion.
21      THE WITNESS:  I might have to go back
22 and refresh my memory from other reports.  But I
23 don't have a reason to argue with that, but I'm
24 not -- I don't have legal training.
25      So that may be true.  I don't have a reason

Page 39

1  to dispute that.
2  BY MR. ERWINE:
3       Q.  And is it your understanding with
4  respect to proving that a patent is invalid, that
5  the burden of proof is clear and convincing
6  evidence?
7       MR. WALDEN:  Same objection.
8       THE WITNESS:  Similarly, I don't
9  remember that exactly that.  That sounds
10 reasonable.  That may be the correct answer, and I
11 don't have any reason to disagree with that.
12 BY MR. ERWINE:
13      Q.  So back to the colorable differences
14 standard.  Do you have an understanding of what
15 the burden of proof is required to show that a
16 design-around is not more than colorably
17 different?
18      MR. WALDEN:  Same objection.
19      THE WITNESS:  Well, I've been asked to
20 provide my expert opinions.  And what I described
21 here is the standard for not more than colorably
22 different.
23      I don't know exactly how a judge takes my
24 opinions and weighs that evidence.  But I was just
25 asked to provide opinions given the context that I

Page 40

1  describe here.
2       So I guess the phrase "burden of proof"
3  didn't factor into my thinking about my opinions.
4  BY MR. ERWINE:
5       Q.  So you don't know whether Apple's burden
6  of proof is a preponderance of the evidence or
7  clear and convincing; correct?
8       MR. WALDEN:  Objection.
9       THE WITNESS:  Well, I don't recall a
10 discussion of that phrase in this context but,
11 like I said, I don't have legal training.  I'm a
12 technical expert, not -- so that's not my area of
13 expertise.
14 BY MR. ERWINE:
15      Q.  You do understand that it's Apple's
16 burden to show that the design-around is more than
17 colorably different from the adjudicated product;
18 correct?
19      MR. WALDEN:  Objection.
20      THE WITNESS:  Well, my understanding is
21 that we -- as I discuss here in this section,
22 there's both -- the two-part test involves both
23 the more -- not more than colorably different part
24 and the infringement part, as discussed here in my
25 report.

Page 41

1  BY MR. ERWINE:
2       Q.  And is it your understanding that it's
3  Apple's burden to show that the design-around is
4  not more than colorably different from the
5  adjudicated product?
6       MR. WALDEN:  Objection.  Calls for a
7  legal conclusion.
8       THE WITNESS:  Well, I think the word
9  "burden" has meaning in a legal context, and I'm
10 not exactly sure how to -- I don't feel
11 comfortable weighing in on the exact meaning of
12 that term.
13      But I do -- as I said, my understanding of
14 what not more than colorably different is, is
15 discussed here in this section.  And that's the
16 standard that I used when I was doing my analysis.
17 BY MR. ERWINE:
18      Q.  And is your understanding based on a
19 legal case called the TiVo case?
20      A.  I -- well, yes.  That was one thing that
21 I've -- that my understanding is that this
22 two-part standard was -- that came from the TiVo
23 case, yes.
24      Q.  Did you review the TiVo case?
25      A.  Yes.  I mean, to some extent, yes.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 42

1    Again, I'm not an attorney, but I did look at the
2    TiVo -- I looked at some materials related to the
3    TiVo case, yes.
4        Q.  And you understand that the TiVo case
5    requires clear and convincing evidence for the
6    colorable -- beyond more than colorably
7    differences standard; correct?
8            MR. WALDEN:  Objection.  Calls for a
9    legal conclusion.
10           THE WITNESS:  I don't recall looking
11   specifically for that discussion of that issue.
12   BY MR. ERWINE:
13       Q.  But in terms of performing your more
14   than colorable differences analysis, you didn't
15   factor in whether the burden of proof was clear
16   and convincing evidence or the preponderance of
17   the evidence.
18           MR. WALDEN:  Objection.
19           THE WITNESS:  Well, I was asked to
20   evaluate whether I thought the modifications,
21   whether or not they were more than colorably
22   different.
23       So I was -- that's what I was focusing on.  I
24   wasn't -- I wasn't paying attention to the
25   specific issue that you asked about.

Page 43

1    BY MR. ERWINE:
2        Q.  And in terms of the second part of the
3    test, whether or not the design-around infringes,
4    do you have an understanding of the burden of
5    proof required for proving that a design-around
6    infringes?
7        A.  Similarly, I -- that's not -- the burden
8    of proof phrase is not something that I have been
9    focusing on.  I was focusing on providing my
10   opinions given my technical expertise.
11       So I don't -- I don't have -- I mean, I'm not
12   a legal expert.  I don't know the answer to that
13   off the top of my head.
14       Q.  Would your analysis for the colorable
15   differences, the not more than colorable
16   difference aspect of the test, have differed in
17   any way if the standard was clear and convincing
18   versus a preponderance of the evidence?
19           MR. WALDEN:  Objection.  Vague.  Calls
20   for a legal conclusion.
21           THE WITNESS:  My understanding is that
22   I've been asked to provide my technical -- my
23   opinions.  And I believe that my opinions are a
24   form of evidence that gets weighed or analyzed by
25   the court.

Page 44

1        So my understanding is that when I express my
2    technical opinions, that's kind of independent of
3    the burden of proof.
4        But, again, I don't have legal training.  My
5    impression as a complete outsider and nonexpert in
6    legal matters is that that phrase "burden of
7    proof" is relevant to the court and not
8    necessarily relevant to me providing my opinions.
9    BY MR. ERWINE:
10       Q.  Back in 2013 when you submitted your
11   infringement expert report, is it your
12   understanding that you alleged infringement based
13   on a preponderance of the evidence standard?
14           MR. WALDEN:  Objection.
15   Mischaracterizes the witness' prior testimony and
16   calls for a legal conclusion.  Vague.
17           THE WITNESS:  I think that's the same
18   type of issue that I've just been discussing,
19   which is I don't recall the issue of burden of
20   proof.
21       I don't have a recollection of that from that
22   previous expert report, because what I was focused
23   on was providing my technical opinions.
24   BY MR. ERWINE:
25       Q.  Did you do anything differently in your

Page 45

1    2017 reports in terms of establishing infringement
2    versus when you established infringement in the
3    2013 expert reports?
4            MR. WALDEN:  Objection.  Vague.
5            THE WITNESS:  Well, I did a
6    limitation-by-limitation comparison of the
7    products relative to the patent.  So that was the
8    same.
9        I don't recall any differences in the
10   process.
11   BY MR. ERWINE:
12       Q.  Did you apply any kind of heightened
13   standard in performing your ongoing royalties
14   analysis in 2017 versus your infringement analysis
15   in 2013?
16           MR. WALDEN:  Objection.  Vague.  Calls
17   for a legal conclusion.
18           THE WITNESS:  In both cases, I was
19   evaluating whether the accused product infringed
20   the patent given my understanding of the patent
21   requirements from my own technical perspective.
22       So I think that that's the same process from
23   my perspective.  I don't recall any -- I can't
24   think of anything that I did differently with
25   respect to how I tried to evaluate infringement.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 46

BY MR. ERWINE:
Q.   And do you recall when you evaluated whether or not Claim 9 of the '647 patent was invalid, whether you considered the standard of proof on Samsung's behalf?
This is from the 2014 trial?
Q.   Yes.
A.   It's been a while.  I don't remember whether -- I mean, I'm not -- again, I'm providing my technical opinions.
I think that my opinions are independent of the burden of proof.  I think the burden of proof issue is something -- again, I'm not an expert in legal matters, but my impression is that the burden of proof is something for other people to take into consideration because I'm just focusing -- the court to take into consideration because I'm focusing on a technical analysis.
Q.   Now, for the DA2 messenger design-around -- you're familiar with that design-around?
A.   Yes.
Q.   In determining whether more than colorable differences are present for DA2, you focused on the resolver activity menu; correct?

Page 47

A.   That was one of the things that I focused on, yes.
Q.   Were there other things you focused on?
A.   Well, I focused on how the software functions.  So there are many things I looked at.  I guess that was -- I looked at the changes as discussed by Samsung.
And so I guess I'm not exactly sure when you say what I focused on, I looked at a number of things, but the resolver activity menu was one of the things that I -- that I talked about, yes.
Q.   Was there -- you mentioned other things you looked at or focused on.
What other things did you look at?
A.   The things that I discussed in my report.
Q.   Do you recall anything that you read, other than the resolver activity menu?
A.   Well, I went through and analyzed the code.  They described the changes they made for DA2, and I went through the code to make sure that what I saw in the code matched up with what was described.
So they described disabling the specific context menu, and I looked at that to confirm that

Page 48

they had done that.  That was something else that I looked at, for example.
Q.   And for DA2, is it your understanding that Samsung disabled a specific context menu?
A.   Yes.
Q.   And what is your understanding for how that context menu was disabled?
A.   Well, I don't -- I mean, I looked at the code, and I describe that to some extent in my report.  I can look at the code again, but the code was modified so that it no longer was presenting a context menu.
I don't remember all the details off the top of my head, but I could take a look at the code again and analyze that.
Q.   And you mentioned there were other things that you focused on as well.
Is there anything else you can recall?
A.   Well, I guess when you say "focused on," there are many things that I probably looked at, but I don't recall anything else major off the top of my head.
Q.   Now, if you look at paragraph 12 of your reply report.
A.   Yes.

Page 49

Q.   I'm sorry.  Wrong paragraph.  Give me just one second.
If you look at paragraph 5 of your opening report, this is Exhibit 2.
A.   Yes.
Q.   And you see it says, "For the reasons set out in detail below, it is my opinion that the design-around products are not more than colorably different than the infringing products in either the messenger or browser applications.  The design-around products continue to infringe Claims 1 and 9 of the '647 patent."
Do you see that?
A.   Yes.
Q.   What did you mean by "The design-around products continue to infringe the Claims 1 and 9 of the '647 patent"?
A.   Well, the products that are discussed in the report, even with the modifications that are described, even given how they've been modified, they still infringe the limitations of Claims 1 and 9 in the '647 patent.
Q.   And is it your understanding that the products found to infringe by the jury in 2014 were found to infringe both Claims 1 and 9 of the

Highly Confidential - ATTORNEYS' EYES ONLY

Page 50

1  '647 patent?
2      A.  I would have to -- I don't -- I remember
3  Claim 9 definitely.  It may be both of those.  I'd
4  have to refresh my memory by looking at something.
5  I don't remember that off the top of my head.
6      Q.  Is it your position that the
7  design-around products infringe Claim 1 of the
8  '647 patent?
9      A.  Much of my focus has been on Claim 9 in
10  the report.
11      Yes.  I wrote here that it infringes Claims 1
12  and 9 of the '647 patent.
13      Q.  Is it your understanding that Claim 1 is
14  at issue for purposes of the ongoing royalties
15  analysis?
16      MR. WALDEN:  Objection.  Vague.  Calls
17  for a legal conclusion.
18      THE WITNESS:  I mean, I know Claim 9 is
19  dependent on Claim 1.  And I don't recall -- I
20  don't -- I don't know the answer to that without
21  looking at something.
22  BY MR. ERWINE:
23      Q.  Turning to page 7 of your opening
24  report, there are -- strike that.
25      At line 4 on page 7, this refers to claims

Page 51

1  constructions applied in the 2014 trial.
2      Do you see that?
3      A.  Yes.
4      Q.  And in paragraph 22 you indicate a
5  number of claim constructions that you applied as
6  part of the 2014 trial; is that correct?
7      A.  Well, yes, by the end of the trial
8  that's correct.  There were some constructions
9  that were provided by the Federal District Court
10  or the Circuit Court, yes.
11      Those appeared very, very late in the trial.
12  But by the end of the trial that's correct.
13      Q.  And for these three constructions that
14  are set forth in your report in paragraph 22, you
15  applied those constructions as part of your
16  ongoing royalties analysis in these two reports,
17  Exhibits 2 and 3?
18      A.  Yes.
19      Q.  And in paragraph 23, you state that,
20  "For the other terms in Claims 1 and 9 of the '647
21  patent, I applied the plain and ordinary meaning
22  for a person of ordinary skill in the art."
23      Is that right?
24      A.  Yes.
25      Q.  With respect to the phrase "linking

Page 52

1  actions to the detected structures" -- do you see
2  that here in paragraph 22?
3      A.  Yes.
4      Q.  And you set forth the construction that
5  the Federal Circuit supplied in this paragraph;
6  correct?
7      A.  Yes.
8      Q.  In your reply report, you indicate that
9  the Federal Circuit construction also applies to
10  Claim 9; is that correct?
11      A.  Yes.
12      Q.  And your understanding is that this
13  construction, linking actions to the detected
14  structures, that's a phrase from Claim 1 of the
15  '647 patent; correct?
16      A.  Yes.  Claim 9 is a dependent claim on
17  Claim 1.  And my recollection is that during the
18  Apple/Samsung trial, the jury was instructed to
19  use this construction when evaluating Claim 9.
20      Q.  If you turn to Exhibit 1 of the '647
21  patent -- turn to Exhibit 1, which is the '647
22  patent.
23      A.  Okay.
24      Q.  And if you turn to what I think is the
25  next-to-last page, this is the section, "What is

Page 53

1  claimed."
2      A.  Yes.
3      Q.  Do you see that?
4      A.  Yes.
5      Q.  And do you see Claim 1, which is in
6  column 7, and I'm starting at about line 8?
7      A.  Yes.
8      Q.  Do you see the analyzer server
9  limitation?
10      A.  Yes.
11      Q.  Do you see that it recites, "An analyzer
12  server for detecting structures in the data, and
13  for linking actions to the detected structures"?
14      A.  Yes.
15      Q.  And you understand that the phrase
16  "linking actions to the detected structures" is in
17  that analyzer server limitation?
18      A.  That's where it appears, yes.
19      Q.  And if you look at Claim 9 of the '647
20  patent, do you see that?  That's the same column,
21  column 7, about line 53.
22      A.  Yes.
23      Q.  Do you see that it says, "The system
24  recited in Claim 1, wherein the user interface
25  enables selection of an action by causing the

Highly Confidential - ATTORNEYS' EYES ONLY

Page 54

1  output device to display a pop-up menu of the
2  linked actions"?
3      Do you see that?
4      A.  Yes.
5      Q.  And you see that the Claim 9 references
6  a user interface?
7      A.  Yes.
8      Q.  And you understand that Claim 1 has a
9  user interface limitation; is that right?
10     A.  Yes.
11     Q.  And, in particular, Claim 1 recites, "A
12  user interface enabling the selection of a
13  detected structure and a linked action."
14     Do you see that?
15     A.  Yes.
16     Q.  So Claim 9 is referencing back to that
17  user interface limitation from Claim 1; correct?
18         MR. WALDEN:  Objection.  Calls for a
19  legal conclusion.
20         THE WITNESS:  Well, Claim 9 is
21  referencing Claim 1.  It's not -- I don't have
22  legal training, but I think it's referencing all
23  of Claim 1.
24  BY MR. ERWINE:
25     Q.  So your understanding is that Claim 9 is

Page 55

1  not limiting the user interface limitation?
2         MR. WALDEN:  Objection.
3  Mischaracterizes the witness' prior testimony.
4  Calls for a legal conclusion.
5         THE WITNESS:  Well, it is -- Claim 9
6  is -- well, it says the system recited in Claim 1.
7  So it's everything from Claim 1.
8      It goes on to describe some more details.
9  Those details are related to the user interface.
10  So it is talking about the user interface of a
11  system that includes everything from Claim 9, but
12  it has some more details here, in particular
13  there's a pop-up menu.
14  BY MR. ERWINE:
15     Q.  And is it your understanding that
16  Claim 9 is referring back to the analyzer server
17  limitation?
18         MR. WALDEN:  Objection.
19  Mischaracterizes the witness' testimony.  Calls
20  for a legal conclusion.
21         THE WITNESS:  I think that's a similar
22  issue in that I think that dependent claims, when
23  they refer to the claim they depend on, they're
24  referring to the entire claim, not just a specific
25  part of it.

Page 56

1      They go on to describe additional details,
2  but they're not referring only to a subset of the
3  original claim.  They're referring to the whole
4  thing, but then you add on that additional detail.
5  BY MR. ERWINE:
6      Q.  To your understanding, is there anything
7  in Claim 9 that limits the analyzer server
8  limitation of Claim 1?
9         MR. WALDEN:  Objection.  Calls for a
10  legal conclusion.
11         THE WITNESS:  I'm not entirely sure if I
12  understand.
13      When you say it limits the analyzer server
14  limitation, Claim 9 is referring to Claim 1.
15  Claim 1 is discussing an analyzer server.
16      So, therefore, Claim 9 is, by virtue of
17  citing -- being dependent on Claim 1, there's an
18  analyzer server for Claim 9 as well.
19      I may be missing something in the question
20  though.
21  BY MR. ERWINE:
22      Q.  Is it your understanding that a
23  dependent claim necessarily narrows the scope of
24  the independent claim it depends from?
25         MR. WALDEN:  Objection.  Calls for a

Page 57

1  legal conclusion.
2         THE WITNESS:  I don't know that I can
3  make a blanket statement about that.  Usually, in
4  the examples that I see, a dependent claim is more
5  specific than the claim it depends on.
6      But in terms of what that means from a legal
7  perspective, I don't know that I can comment on
8  that.
9      But it's typically a more specific version of
10  the thing that it depended on.
11  BY MR. ERWINE:
12     Q.  And is it your understanding that
13  Claim 9 is more specific with respect to the user
14  interface limitation of Claim 1?
15         MR. WALDEN:  Objection.  Calls for a
16  legal conclusion.
17         THE WITNESS:  Well, Claim 9 is talking
18  about a pop-up menu being part of the user
19  interface.
20      Claim 1 talked about a user interface.  It
21  didn't discuss a pop-up menu.
22      So Claim 9 is adding on the fact that there's
23  a pop-up menu.
24  BY MR. ERWINE:
25     Q.  And is Claim 9 more specific at all

Highly Confidential - ATTORNEYS' EYES ONLY

Page 58

1  about the analyzer server limitation?
2        MR. WALDEN: Objection. Calls for a
3  legal conclusion. Vague.
4        THE WITNESS: Well, the thing that's
5  really being discussed here is a pop-up menu that
6  has linked actions in it. The linked actions are
7  being generated by the analyzer server.
8        So the thing described in Claim 9 includes an
9  analyzer server. The most noticeable difference
10 in Claim 9 is that there's a pop-up menu that's
11 part of the user interface for selecting linked
12 actions.
13 BY MR. ERWINE:
14       Q. You said, "The linked actions are being
15 generated by the analyzer server."
16       What did you mean by that?
17       A. Well, the analyzer links actions to the
18 detected structures. That's what I meant.
19       Q. Let's turn to paragraph 15 of your reply
20 report, Exhibit 3.
21       MR. WALDEN: Counsel, I'll just note
22 it's about 10:30. Whenever you get time for a
23 break.
24       MR. ERWINE: Yeah, about five minutes.
25 No problem.

Page 59

1        MR. WALDEN: Can you remind what
2  paragraph you said.
3        MR. ERWINE: Yeah, paragraph 15.
4  BY MR. ERWINE:
5        Q. And if you look at paragraph 15, you
6  say, "Dr. Jeffay argues that Claim 9 should be
7  construed to require multiple linked actions per
8  structure despite the Federal Circuit's claim
9  construction for linking actions to protect the
10 structures."
11       Do you see that?
12       A. Yes.
13       Q. And do you see where you indicated you
14 disagree?
15       A. Yes.
16       Q. And you state, "While I was of the
17 initial opinion that Claims 1 and 9 both required
18 multiple actions per structure, I understand that
19 the Federal Circuit's decision must be followed."
20       Do you see that?
21       A. Yes.
22       Q. And you followed with, "A person of
23 ordinary skill in the art will understand that the
24 linked actions of Claim 9 takes as its predicate
25 linking actions from Claim 1.

Page 60

1        What did you mean by that statement?
2        A. Well, Claim 9 talks about displaying a
3  pop-up menu of the linked actions and that
4  phrase -- a similar phrase where it talks --
5  Claim 1 also talks about linking actions to the
6  detected structures.
7        So the -- in Claim 1, the analyzer server
8  links actions to detected structures, and those
9  linked actions are -- the one or more linked
10 actions are then displayed in the pop-up menu in
11 what is described in Claim 9.
12       Q. So, in your opinion, the linked actions
13 of Claim 9, its predicate, is from the analyzer
14 server limitation of Claim 1?
15       A. Yes. That term appears in the analyzer
16 server limitation of Claim 1.
17       Q. And the analyzer server limitation of
18 Claim 1 recites, "An analyzer server for detecting
19 structures in the data and for linking actions to
20 the detected structures."
21       Right?
22       A. Yes.
23       Q. The word "linking" in the analyzer
24 server limitation is a verb; right?
25       A. Yes.

Page 61

1        Q. And in Claim 9, the phrase is, "Wherein
2  the user interface enables selection of an action
3  by causing the output device to display a pop-up
4  menu of the linked actions."
5        Do you see that?
6        A. Yes.
7        Q. Linked is an adjective and not a verb;
8  right?
9        A. Yes, that's right.
10       Q. So if you go back to Claim 1 and you
11 look at the user interface limitation that
12 recites, "A user interface enabling the selection
13 of a detected structure and a linked action," do
14 you see that?
15       A. Yes.
16       Q. In particular, do you see the phrase "a
17 linked action"?
18       A. Yes.
19       Q. Is it your view that that phrase "a
20 linked action" is not the predicate for the pop-up
21 menu of the linked actions in Claim 9?
22       MR. WALDEN: Can I have the question
23 read back? I didn't hear it.
24       (The following record was read back:
25       "Q Is it your view that that phrase "a

Highly Confidential - ATTORNEYS' EYES ONLY

Page 62

1  linked action" is not the predicate for the
2  pop-up menu of the linked actions in
3  Claim 9?")
4      MR. WALDEN:  Objection.
5      THE WITNESS:  Well, the Claim 9 is
6  talking about some more -- a more specific -- more
7  specific details of the user interface, so --
8  whereas Claim 1 has a less -- let's see.
9      Claim 1's user interface does not discuss a
10 pop-up menu, and Claim 9 is discussing having a
11 pop-up menu and a user interface.
12     And the things that appear in the pop-up menu
13 would be the linked actions that the analyzer
14 server has linked to detected structures.
15     So the thing that -- when Claim 9 is talking
16 about what is in its pop-up menu, it is the result
17 of what -- of the analyzer server has done in
18 Claim 1.
19     So the linking actions to the detected
20 structures is what Claim 1 was referring to when
21 it talked about the pop-up menu of the linked
22 actions.
23 BY MR. ERWINE:
24     Q.  Okay.  But back to the user interface
25 limitation of Claim 1.  Do you see that?

Page 63

1      A.  Yes.
2      Q.  Do you see it specifically references a
3  linked action?
4      MR. WALDEN:  Objection.  Asked and
5  answered.
6      THE WITNESS:  I see a phrase "a linked
7  action" in the user interface limitation, yes.
8  BY MR. ERWINE:
9      Q.  And is it your view that that phrase "a
10 linked action" is not the predicate for the pop-up
11 menu of linked actions in Claim 9?
12     MR. WALDEN:  Objection.  Asked and
13 answered.
14     THE WITNESS:  Can you clarify to me what
15 you mean when you say "predicate."
16 BY MR. ERWINE:
17     Q.  I'm just basing it on the language that
18 you use in your report that we referred to
19 earlier.
20     I believe it was paragraph 15 of your report
21 where you said, paragraph 15 of your reply report,
22 "A person of ordinary skill in the art would
23 understand that the linked actions of Claim 9
24 takes its predicate linking actions from Claim 1."
25     A.  Um-hum.

Page 64

1      Q.  And my question is:  Is it your
2  understanding that a person of ordinary skill in
3  the art would understand that the linked actions
4  of Claim 9 also takes its predicate from the
5  linked action in the user interface limitation of
6  Claim 1?
7      MR. WALDEN:  Objection.  Vague.  Calls
8  for a legal conclusion.  Asked and answered.
9      THE WITNESS:  Well, there may be some
10 subtleties to the question from a legal
11 perspective that I'm not following.
12     But from a technical perspective, a person of
13 ordinary skill, when they look at Claim 9 and they
14 see it discussing a pop-up menu of the linked
15 actions, those linked actions are referring to the
16 actions that the analyzer server has linked to
17 detected structures.
18     So Claim 9 is describing some details of a
19 user interface.  That user interface is different
20 from the user interface in Claim 1.  It's a more
21 specific discussion of a user interface.
22     They're analogous.  But Claim 9's user
23 interface has a pop-up menu.
24 BY MR. ERWINE:
25     Q.  And is it your opinion that Claim 1

Page 65

1  requires a user interface of multiple linked
2  actions?
3      MR. WALDEN:  Objection.
4  Mischaracterizes the witness' prior testimony.
5  Calls for a legal conclusion.
6      THE WITNESS:  The analyzer server -- as
7  construed by the Federal Circuit Court, the
8  analyzer server has linked one or more actions to
9  detected structures.  And Claim 1 requires that
10 there's a user interface for selecting a detected
11 structure and a linked action.
12     So if the -- according to the Federal Circuit
13 Court's construction, which is what we're applying
14 in this case, if the analyzer server happened to
15 detect, say, one structure in a text message or a
16 document and it linked one action to it, then the
17 user interface could be presenting one linked
18 action, or if it detects -- if it linked multiple
19 actions, then it could be presenting more than one
20 action.
21     So it would be -- the construction is one or
22 more linked actions for the analyzer server.  So
23 the user interface for Claim 1 would be one or
24 more linked actions in its user interface.
25

Highly Confidential - ATTORNEYS' EYES ONLY

Page 66

1   BY MR. ERWINE:
2       Q.  For Claim 9, is it your opinion that the
3   user interface requires a pop-up menu of one or
4   more linked actions?
5       A.  Yes.
6           MR. ERWINE:  All right.  We can take a
7   break.
8           THE VIDEOGRAPHER:  The time is
9   10:39 a.m.  We're off the record.
10          (Recess from 10:39 a.m. to 10:56 a.m.)
11          THE VIDEOGRAPHER:  The time is
12  10:56 a.m.  We're back on the record.  Please
13  proceed.
14  BY MR. ERWINE:
15      Q.  Dr. Mowry, if you could turn to
16  paragraph 17 of your reply report.  And in
17  particular, if you look at the statement that
18  starts on line 8, "But as I explained on the last
19  day of trial, April 28, 2014, after the Federal
20  Circuit's decision in Apple v. Motorola had been
21  issued and the jury had been updated on the claim
22  construction for, quote, linking actions to the
23  detected structures, Claim 1 of the '647 patent
24  requires more than one type of structure and more
25  than one type of action, and Sidekick only

Page 67

1   discloses one type of structure, telephone number,
2   and one type of action, making a phone call."
3       Do you see that sentence?
4       A.  Yes.
5       Q.  What is your basis for the statement
6   that Claim 1 of the '647 patent requires more than
7   one type of structure and more than one type of
8   action?
9       A.  Wow, I have to remember the details from
10  many years ago now.
11      But the '647 patent, let's see.  We go back
12  to the claim language.
13      Well, the analyzer server detects structures
14  in the data, and it links actions to the detected
15  structures.
16      And if you -- I think that this was not so
17  much something we were focusing on here, that I've
18  been focusing on recently for this ongoing
19  royalties issue, but I remember this from the
20  trial.
21      But between the claim language and the patent
22  specification, the detecting structures is
23  referring to multiple types of structures, so not
24  just a single structure and not just a single
25  action for that structure.

Page 68

1       Q.  Okay.  So is your statement that Claim 1
2   of the '647 patent requires more than one type of
3   structure and more than one type of -- I'm
4   sorry -- more than one total type of action, is
5   that based on the Federal Circuit's claim
6   construction?
7       A.  It's consistent with it.  It's not
8   dependent upon that.  I also -- that was also my
9   opinion prior to that Federal Circuit claim
10  construction.  And that construction doesn't
11  change that opinion.
12      Q.  So your opinion that Claim 1 of the '647
13  patent requires more than one type of structure
14  and more than one total type of action, you
15  reached that opinion before the Federal Circuit
16  rendered its claim construction during the 2014
17  trial?
18      A.  Yes.
19      Q.  And that opinion is based on your
20  understanding of how a person of ordinary skill in
21  the art would understand the plain meaning of
22  Claim 1?
23      A.  Among other things, yes.
24      Q.  If a system detects only a single type
25  of structure, but links multiple actions, would

Page 69

1   that infringe Claim 1 under this interpretation?
2       A.  To be honest, these are issues that I
3   think were sorted out years ago.  So this is not
4   really fresh in my memory.
5       My recollection is that it would need to be
6   multiple types of structures.  But, like I said,
7   I'm really -- that hasn't -- the -- more than
8   just -- it's already in the trial, the
9   Apple/Samsung trial, the '647 patent was found to
10  be valid.
11      And so, I mean, I think these issues have
12  been discussed many times in the past in this
13  trial and the HTC trial.  So this is a little
14  rusty for me.
15      I believe that it's more than one -- as I
16  recall, it's more than one type of structure and
17  more than one type of total linked action.
18      Q.  Okay.  And so if you had a system that
19  detected only a single type of structure but
20  linked multiple actions, then in your view that
21  would not infringe Claim 1?
22          MR. WALDEN:  Objection.  Asked and
23  answered.
24          THE WITNESS:  Yes.  I believe that's
25  what I just said, yes.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 70

1  BY MR. ERWINE:
2     Q.  Let's go back to your opening report,
3  and I think in -- I was looking at paragraph 22.
4  Those are the claim constructions applied to the
5  2014 trial.
6     Do you see that?
7     A.  Twenty-two?  Is that what you said?
8     Q.  Yeah.
9     A.  I'm almost there.  Okay.  Yes.
10    Q.  Do you see the reference to the action
11 processor?
12    A.  Yes.
13    Q.  Now, if you turn to your reply report,
14 and in particular paragraph 45 --
15    A.  Yes.
16    Q.  -- do you see in paragraph 45 it says,
17 "Dr. Jeffay further argues that the resolver
18 activity pop-up menu lacks an action processor.
19 However, the claims do not require that the pop-up
20 menu contain an action processor.  Instead, the
21 action processor is a set of program routines that
22 perform the selected action linked to the selected
23 structure"?
24    Do you see that?
25    A.  Yes.

Page 71

1     Q.  Is the language in Claim 45 the claim
2  construction that you relied on for alleging that
3  the DA2 messenger application satisfies the action
4  processor limitation?
5     MR. WALDEN:  Objection.  Vague.
6     THE WITNESS:  I think you said Claim 45.
7  I think maybe you meant paragraph 45.
8     Will you repeat the question?
9  BY MR. ERWINE:
10    Q.  Is the language in paragraph 45 the
11 claim construction you relied on for alleging that
12 the DA2 messenger application satisfies the action
13 processor limitation?
14    MR. WALDEN:  Objection.  Vague.
15    THE WITNESS:  Well, the language that I
16 used for the construction of action processor is
17 shown in paragraph 22.
18    In paragraph 45, I was paraphrasing that
19 language.  But the language that I used is the
20 language from paragraph 22, which came from the
21 court.
22 BY MR. ERWINE:
23    Q.  So the following language in paragraph 45 is a
24 paraphrase of the language that is set forth in
25 paragraph 22 of your opening report.

Page 72

1     A.  Yes.
2     Q.  And you, in fact, relied on the language
3  of paragraph 22 in your opening report and not the
4  paraphrased language in paragraph 45 of your reply
5  report?
6     A.  Yes.
7     Q.  Back to your opening report, in
8  paragraph 22, you do not provide an opinion
9  concerning a claim construction for the phrase
10 "user interface enabling the selection of a
11 detected structure"; correct?
12    A.  That's correct.  That's not one of the
13 constructed terms.
14    Q.  So for that phrase, as you specified in
15 paragraph 23, you applied the plain and ordinary
16 meaning to a person of ordinary skill in the art;
17 correct?
18    A.  Yes.
19    Q.  Is it your understanding that the plain
20 and ordinary meaning of that phrase is that it
21 requires the user interface to enable selection of
22 a structure by the user after the structure has
23 already been detected?
24    MR. WALDEN:  Objection.  Calls for a
25 legal conclusion.

Page 73

1     THE WITNESS:  Can you read back the
2  question, make sure I got it exactly right.
3     (The following record was read back:
4     "Q  Is it your understanding that the
5  plain and ordinary meaning of that phrase is
6  that it requires the user interface to enable
7  selection of a structure by the user after
8  the structure has already been detected?")
9     MR. WALDEN:  Same objection.
10    THE WITNESS:  Well, no.  The -- let's
11 see.  The user is selecting a detected structure.
12 So the structure has been detected.
13    For example, in the Jelly Bean version of the
14 browser that was discussed at the trial, the
15 selection -- let's see.
16    So you don't necessarily need to have -- at
17 the time that the selection is occurring, the
18 thing that you're selecting is a detected
19 structure.
20    So to literally infringe the thing that is
21 selected must be detected.
22    But I think in your question you're asking
23 whether the detection had to have been completed
24 before the user starts to use the user interface.
25 And that's not the case.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 74

1    It's just that -- I may have remembered your
2 question incorrectly.
3 BY MR. ERWINE:
4    Q.  Why don't we repeat the question,
5 because I think maybe you injected some things in
6 there.  It's actually a simple question, and I can
7 repeat it.
8    Is it your understanding that the plain and
9 ordinary meaning of the user interface limitation
10 is that -- is that it requires the user interface
11 to enable selection of a structure by the user
12 after the structure has already been detected?
13    MR. WALDEN:  Objection.  Asked and
14 answered.  Calls for a legal conclusion.
15    THE WITNESS:  So yes, the structure has
16 been detected when the user is selecting it.  So
17 yes.
18    MR. ERWINE:  Let me mark as an exhibit
19 the summary judgment order.
20    I'd like to mark as Exhibit 4, this is an
21 order dated January 21, 2014, order granting in
22 part and denying in part Apple's Motion in Partial
23 Summary Judgment and denying Samsung's Motion for
24 Partial Summary Judgment.
25    (Mowry Exhibit 4 was marked.)

Page 75

1 BY MR. ERWINE:
2    Q.  Take a look at that and let me know when
3 you've had a chance to peruse that document,
4 Dr. Mowry.
5    (Witness reviewed the exhibit.)
6    THE WITNESS:  Where is the date on it?
7 BY MR. ERWINE:
8    Q.  It's on the top.
9    A.  Okay.
10    Q.  Did you review this document in
11 preparation of either of your 2017 reports?
12    A.  I believe I reviewed this at some point.
13 It may have been before the trial, given the date.
14 It looks like this was produced before the trial.
15 So I may have reviewed it back then.
16    I don't remember -- I don't specifically
17 remember reviewing it again recently, but I
18 believe I've reviewed it at some point.
19    Q.  If you can turn to page 20 of the
20 document.
21    A.  Okay.
22    Q.  In particular, if you look at page 7 --
23 I'm sorry -- page 20, line 7, you see that it
24 states, "The parties agree that the plain and
25 ordinary meaning of claim limitation 'a user

Page 76

1 interface enabling the selection of a detected
2 structure' requires 'the user interface to enable
3 selection of a structure, by the user, after the
4 structure has already been detected'"?
5    Do you see that?
6    A.  Yes.
7    Q.  And you understand that this is a court
8 order?
9    A.  Yes.
10    Q.  And you understand that that particular
11 language the court is citing, and you see it
12 starting on line 9, "The reply declaration of
13 Dr. Todd V. Mowry concerning U.S. Patent
14 No. 5,946,647," in paragraph 217?
15    A.  Yes.  I see that.
16    Q.  And that reference to that declaration,
17 that's your declaration; correct?
18    A.  I believe so.
19    Q.  So is it your understanding that that
20 plain and ordinary meaning is controlling in this
21 ongoing royalties analysis that we're performing
22 now?
23    A.  Yes.
24    Q.  You don't mention that in your 2017
25 reports; correct?

Page 77

1    MR. WALDEN:  Objection.
2    THE WITNESS:  I don't recall mentioning
3 it, but -- yeah.  But we're still playing by the
4 rules from the trial.
5 BY MR. ERWINE:
6    Q.  And did you consider this construction
7 as part of your analysis?
8    MR. WALDEN:  Objection.  Vague.
9 Mischaracterizes the document.
10    THE WITNESS:  Well, you said
11 "construction."  I think this is not technically a
12 construction.  It says here the parties agree on
13 this or -- but it's not a construction from the
14 court.
15 BY MR. ERWINE:
16    Q.  Did you consider this order as part of
17 your analysis?
18    A.  Well, yes.  The order was part of the
19 context that I considered for my analysis.
20    Q.  And did you rely on this plain and
21 ordinary meaning as part of your analysis in your
22 2017 reports?
23    A.  Yes.
24    Q.  Now, turning back to Claim 9 of the '647
25 patent, do you see the phrase in Claim 9 -- this

Highly Confidential - ATTORNEYS' EYES ONLY

Page 78

1  is about line 55 -- "a pop-up menu of the linked
2  actions"?
3      A.  Yes.
4      Q.  We talked about that a little earlier;
5  right?
6      A.  Yes.
7      Q.  Is it your understanding that Apple ever
8  sought a claim construction of that phrase?
9          MR. WALDEN:  Objection.  Vague.
10         THE WITNESS:  Which phrase?  Do you mean
11 everything you just said, "pop-up menu of the
12 linked actions"?
13 BY MR. ERWINE:
14     Q.  Yes.  Are you aware of whether Apple
15 ever sought a claim construction of the phrase "a
16 pop-up menu of the linked actions"?
17     A.  I don't know one way or another.
18     Q.  Are you aware of whether Samsung ever
19 sought a construction of that phrase?
20     A.  I don't know.
21     Q.  Are you aware of whether the District
22 Court ever construed the phrase "a pop-up menu of
23 the linked actions"?
24     A.  I'm not aware that it construed that.
25     Q.  And are you aware of whether the Federal

Page 79

1  Circuit construed that phrase?
2      A.  I'm not aware of them doing that.
3      Q.  Now, up until the time of your 2017
4  reply report, it was your position that Claim 9
5  required multiple linked actions for a detected
6  structure; correct?
7          MR. WALDEN:  Objection.
8  Mischaracterizes the witness' prior testimony.
9  Vague.
10         THE WITNESS:  Well, prior to the Federal
11 Circuit ruling on claim construction, which
12 happened during the 2014 trial, I had expressed
13 the opinion that I thought that a structure needed
14 to have multiple linked actions.
15     But that ruling clarified that the phrase
16 "linking actions to the detected structures" refer
17 to one or more actions for a -- linked actions for
18 a detected structure.
19     So in light of that, Claim 9 would then
20 logically mean that there's one more linked
21 actions in the pop-up menu since it's okay for the
22 analyzer server to link one or more actions for a
23 detected structure.
24 BY MR. ERWINE:
25     Q.  So in your view, based on the Federal

Page 80

1  Circuit decision for the analyzer server
2  limitation, Claim 9 can include a pop-up menu of
3  one or more linked actions; correct?
4          MR. WALDEN:  Objection.
5  Mischaracterizes the Federal Circuit's decision.
6  Vague.
7          THE WITNESS:  Well, I think you said
8  "analyzer server," and I think that that was a
9  separate -- there was a construction of analyzer
10 server, but this was about the construction of
11 linking actions to the detected structures, not
12 the phrase "analyzer server."
13 BY MR. ERWINE:
14     Q.  Okay.  And listen very carefully to my
15 question.
16         MR. ERWINE:  If you can repeat my
17 question.
18     (The following record was read back:
19     "Q   So in your view, based on the
20 Federal Circuit decision for the analyzer
21 server limitation, Claim 9 can include a
22 pop-up menu of one or more linked actions;
23 correct?")
24         MR. WALDEN:  Same objection.
25         THE WITNESS:  Well, okay.  So within the

Page 81

1  analyzer server limitation of Claim 1, there's the
2  phrase "linking actions to the detected
3  structures."  And that's the phrase that was
4  constructed by the Federal Circuit Court as
5  meaning one or more actions.
6      So specific to that, also at the trial the
7  Claim 9 was asserted and the judge instructed the
8  jury to use the Federal Circuit Court construction
9  for linking actions to the detected structures
10 when evaluating Claim 9.
11     So that would mean that that clarifies that
12 indeed the pop-up menu can have one or more linked
13 actions.
14 BY MR. ERWINE:
15     Q.  Now, in fact, back in 2013, you relied
16 on a different construction to distinguish the
17 Sidekick prior art; is that correct?
18         MR. WALDEN:  Objection.
19         MR. ERWINE:  And I'm happy to mark it
20 for you.
21     Rebuttal report, 2013 rebuttal report.
22     I'll mark as Exhibit 5, this is the Rebuttal
23 Expert Report of Dr. Todd C. Mowry regarding
24 validity of U.S. Patent No. 5,946,647.
25     (Mowry Exhibit 5 was marked.)

Highly Confidential - ATTORNEYS' EYES ONLY

Page 82

1  BY MR. ERWINE:
2      Q.  Dr. Mowry, if you turn to paragraph 161
3  on page 60, it says, "It is my opinion that
4  Sidekick does not disclose Claim 9 for at least
5  the reason it does not disclose each element of
6  Claim 1 as discussed in detail above.
7      "In addition, since Sidekick discloses, at
8  most, a single alleged linked action (i.e.,
9  dialing a phone number), there is no need for a
10  pop-up menu of linked actions since there are no
11  other allegedly linked actions to choose."
12      Do you see that?
13      A.  Yes.
14      Q.  So it was your opinion that Sidekick did
15  not satisfy Claim 9 because it did not include a
16  pop-up menu of linked actions, plural; correct?
17      A.  Well, Sidekick does not infringe Claim 9
18  for a number of reasons, including the fact that
19  it only detects one -- it only detects phone
20  numbers and it only has a single linked action.
21      So regardless of any user interface issues,
22  it does not detect structures, plural.  It only
23  detects one kind of structure and only links one
24  action to it.
25      What I'm discussing here at this time, as I

Page 83

1  said before, the Federal Circuit Court ruling on
2  claim construction, I'd expressed the opinion that
3  a detected structure needs to have multiple linked
4  actions for it to infringe the '647 patent.
5      So the opinion I'm stating here is consistent
6  with my opinion at that time.  But as I also said,
7  the ground rules starting during the trial once
8  the Federal Circuit claim construction ruling came
9  out are that one or more linked actions are
10  sufficient.
11      We also discussed Sidekick at that trial.
12  But, again, the heart of the issue with Sidekick
13  is it only detects one type of structure and it
14  only has one linked action.
15      Q.  And in this paragraph 161, you said,
16  "There is no need for a pop-up menu of linked
17  actions since there are no other allegedly linked
18  actions to choose."
19      Correct?
20      A.  Well, in the case of Sidekick, there is
21  not a pop-up menu.  It doesn't have a pop-up menu.
22  It does not have multiple linked actions.
23      So I was simply describing -- I was
24  describing what Sidekick did, and it made sense
25  that if you only had one kind of linked action

Page 84

1  there, I was just saying that it doesn't have a
2  pop-up menu, in part, because it doesn't have more
3  than one linked action to choose -- to show.
4      Q.  And so that was based on a claim
5  construction that is different than the one that
6  the Federal Circuit rendered in 2014 in your view;
7  correct?
8      A.  I don't remember whether there was a
9  claim -- official claim construction at that
10  point.  I think that that may have been based
11  on -- at that stage I forget -- I know that there
12  were claim constructions for this case from the
13  Northern District of California Court -- from the
14  District Court.
15      And so -- regarding your question, I'm not
16  sure about the word "claim construction."
17      I was -- I was indeed writing this paragraph
18  using the standard that there -- using my opinion
19  that there should be multiple linked actions for a
20  detected structure.
21      What I don't remember right now is whether
22  there was an active claim construction related to
23  that or if I was using plain and ordinary meaning
24  at that time.
25      Q.  When you drafted this paragraph, was it

Page 85

1  your understanding that Claim 9 required a pop-up
2  menu of multiple linked actions?
3      A.  It was, because it was my opinion at
4  that time that multiple linked actions were --
5  that the appropriate way to interpret the '647
6  patent is that a system would need to have
7  multiple linked actions for a detected structure
8  in order for it to infringe.
9      But as I said with the Federal District Court
10  claim construction ruling, that -- that changes.
11  That sets the rules for -- set the rules for the
12  trial.  And my opinions for my 2017 reports are
13  based on the Federal Circuit Court ruling.
14      Q.  And it's now your opinion, based on the
15  Federal Circuit decision, that Claim 9 does not
16  require a pop-up menu of multiple linked actions;
17  correct?
18      A.  Correct.
19      Q.  So in this sentence where you say, "In
20  addition, since Sidekick discloses, at most, a
21  single alleged linked action, there is no need for
22  a pop-up menu of linked actions," that was based
23  on a different understanding of Claim 9 than you
24  have now; correct?
25      MR. WALDEN:  Objection.  Vague.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 86

1 THE WITNESS: Well, the thing that's
2 different is we have the ruling from the Federal
3 Circuit Court about one or more actions. So that
4 is -- that's something that's different.
5 The point I was making here is simply that if
6 you only have one choice, you don't necessarily
7 need to use a pop-up menu.
8 So the main point of the sentence was just to
9 describe why you don't need to have a pop-up menu
10 in this case. You could have a pop-up menu, but
11 that's why it's not necessarily the immediate
12 design choice.
13 BY MR. ERWINE:
14 Q. In fact, you're now saying that Claim 9
15 covers the situation where you have a pop-up menu
16 of one action or multiple actions; correct?
17 A. Yes.
18 Q. And so previously you had argued in
19 paragraph 161 that one of the reasons that
20 Sidekick didn't disclose Claim 9 was because it
21 didn't have multiple linked actions and,
22 therefore, could not have a pop-up menu of linked
23 actions; correct?
24 MR. WALDEN: Objection.
25 Mischaracterizes the testimony.

Page 87

1 THE WITNESS: That's incorrect. I
2 didn't say that it couldn't have a pop-up menu. I
3 was just describing -- and as I said before, there
4 were more fundamental reasons why Sidekick does
5 not disclose the '647 patent. It only detects one
6 type of structure. It only links one action,
7 which is dialing.
8 And so I was -- the purpose -- the sentences
9 in this 2013 report is not saying it's not
10 possible to have a pop-up menu. I was just
11 describing why the fact that a pop-up menu was
12 missing was not a reasonable design choice.
13 BY MR. ERWINE:
14 Q. Does your opinion in paragraph 161
15 change, based on the Federal Circuit's claim
16 construction of the linking actions to the
17 detected structures limitation?
18 A. With the Federal Circuit Court
19 construction, it's still my opinion that Sidekick
20 does not disclose Claim 9.
21 Q. And is it your view that this sentence,
22 "In addition, since Sidekick discloses at most a
23 single alleged linked action (i.e., dialing a
24 phone number), there is no need for a pop-up menu
25 of linked actions," does that sentence still apply

Page 88

1 in light of that claim construction?
2 A. Yes. Well, the sentence said, "In
3 addition." So the previous sentence I had already
4 said that it didn't disclose Claim 9.
5 And all that this second sentence is saying
6 is that if you only have one thing to choose from,
7 it's not necessary to have a pop-up menu. There
8 are other types of user interfaces other than a
9 pop-up menu that might make sense.
10 But this is -- this is not saying that a
11 pop-up menu is not possible, it's not something
12 that can be done. It's just explaining why it was
13 that, in fact, it's reasonable from a technical
14 design point of view to not have a pop-up menu in
15 this circumstance.
16 Q. But it's your understanding that a
17 pop-up menu of a single linked action would
18 satisfy Claim 9 of the '647 patent?
19 MR. WALDEN: Objection. Asked and
20 answered. Calls for a legal conclusion.
21 THE WITNESS: Assuming that it satisfied
22 the other elements of Claim 1, yes.
23 BY MR. ERWINE:
24 Q. Turning to -- back to the '647 patent,
25 are there any examples that you're aware of in the

Page 89

1 '647 patent of a pop-up menu that includes only a
2 single linked action?
3 A. Well, in Figure 4, there's a set of
4 linked actions. And for under "Date," it lists
5 just "Put in electronic calendar" there.
6 So if you pulled up a pop-up menu for a
7 detected date, the only linked action that's
8 illustrated in this figure would be "Put in
9 electronic calendar."
10 Q. Is it your understanding that Figure 4
11 is an illustration of a pop-up menu?
12 A. No. It's not a pop-up menu, but it's an
13 example of -- from the patent where they showed a
14 single -- a detected structure that has one linked
15 action.
16 So there is an illustration of a pop-up menu
17 later in Figure 7. And presumably, if you clicked
18 on a detected date, I think it's likely you would
19 see something that looks like Figure 7, but
20 instead of seeing "Call number" and "Put in
21 electronic phone book," it would probably say,
22 "Put in electronic calendar," but that's not
23 explicitly shown in the patent.
24 Q. So are you aware of any examples in the
25 '647 patent of a pop-up menu that includes a

Highly Confidential - ATTORNEYS' EYES ONLY

Page 90

1  single linked action?
2       MR. WALDEN:  Objection.  Asked and
3  answered.
4       THE WITNESS:  As I just said, the only
5  pop-up menu that I see illustrated in the figures
6  is the one in Figure 7.  And in that case, there
7  are two linked actions.
8       MR. ERWINE:  I think we have to change
9  the tape.  So I know we just took a break, but do
10  you want to -- we can just change the tape and
11  keep going or take a very quick break?
12       THE WITNESS:  I'm okay to keep going.
13       MR. ERWINE:  Why don't we go off the
14  record and change the tape, and we'll keep going.
15       THE VIDEOGRAPHER:  The time is 11:30.
16  We are off the record.
17       (Recess from 11:30 a.m. to 11:33 a.m.)
18       THE VIDEOGRAPHER:  Here begins disc
19  No. 2 in today's deposition of Todd Mowry.  The
20  time is 11:33 a.m., and we're back on the record.
21       Please proceed.
22  BY MR. ERWINE:
23       Q.  Dr. Mowry, if you can turn back to your
24  reply report and, in particular, paragraph 47,
25  starting at about line 24 of that paragraph.

Page 91

1       Do you see where it says, "In addition, with
2  respect to these phones and with respect to the
3  use of the resolver activity menu in short tap in
4  the browser application, it was unclear before
5  trial whether the claims were going to be
6  construed to require more than one action per
7  structure or not, and thus I did not provide
8  infringement opinions in instances where only one
9  action per structure was included"?
10       Do you see that?
11       A.  Yes.
12       Q.  Now, you referenced the short tap
13  functionality for the browser application,
14  correct, in that paragraph?
15       A.  Yes.  That's right.
16       Q.  And, in particular, I was pointing to
17  where you say "with respect to the use of the
18  resolver activity menu and short tap in the
19  browser application."
20       A.  Yes.
21       Q.  And you understand that Apple did not
22  accuse the short tap functionality in the browser
23  application of infringing Claim 9 of the '647
24  patent.
25       A.  That's correct.

Page 92

1       Q.  And are you aware that Apple, in its
2  opposition to Samsung's summary judgment motion,
3  in fact, said that functionality did not
4  infringe Claim 1 of the '647 patent?
5       MR. WALDEN:  Objection.  Vague.
6  Mischaracterizes the document.
7       THE WITNESS:  I don't recall the details
8  of that off the top of my head.  I have to look at
9  the document.
10       MR. ERWINE:  Let's do that.  Mark as
11  Exhibit 6, this is a document entitled "Plaintiff
12  and Counterclaim Defendant Apple Incorporated's
13  Corrected Opposition to Samsung's Motion for
14  Summary Judgment.
15       (Mowry Exhibit 6 was marked.)
16  BY MR. ERWINE:
17       Q.  Dr. Mowry, have you seen this document
18  before?
19       A.  I think so a long time ago.
20       Q.  So this is not something you reviewed in
21  preparation for your 2017 reports?
22       MR. WALDEN:  Objection.
23       THE WITNESS:  Well, it's part of the
24  greater context that I was aware of when I wrote
25  this report.  I just don't have a specific memory

Page 93

1  of going back and looking at this recently, but I
2  have reviewed this in the past.
3  BY MR. ERWINE:
4       Q.  And do you recall whether you reviewed
5  this particular document in preparation for
6  today's deposition?
7       A.  I have not looked at this recently.
8       Q.  If you turn to page 3 of the document,
9  in particular line 18, do you see where it says,
10  "In fact, when the user selects the detected
11  structure through the long press, the user
12  interface presents a menu of linked actions for
13  the user to subsequently select"?
14       Do you see that?
15       A.  Yes.
16       Q.  And is it your understanding that that's
17  referring to the long press as part of the browser
18  application?
19       A.  Yes.
20       Q.  Then the language continues, starting at
21  line 19, "This menu satisfies another claim
22  element, namely, enabling selection of a linked
23  action.  A simple touch or tap in the accused
24  Jelly Bean browser application will not bring up
25  the accused menu of candidate actions contrary to

Highly Confidential - ATTORNEYS' EYES ONLY

Page 94

1   Samsung's inaccurate description figures.
2       "Instead, a mere tap on a structure will
3   simply launch a default action such as a dial
4   action on a phone number, but it will not provide
5   a menu enabling the selection of a linked action
6   as required by Claim 1.
7       "For this reason, too, Apple did not accuse
8   the simple touch action in the Jelly Bean browser
9   application of infringement."
10      Do you see that?
11      A.  I see that.
12      Q.  Do you agree with those statements?
13      A.  Well, this was written prior to the
14  decision from the Federal Circuit Court on claim
15  construction.
16      So at that time, as I've said, my opinion was
17  that the detected structure needed to have
18  multiple linked actions in order for it to
19  infringe the Claim 1 or the dependent claims of
20  the '647 patent.
21      So at that timeframe we -- yes, I -- my
22  opinion was that you need to have multiple linked
23  actions.  And so something with only a single
24  linked action would not infringe based on the
25  reasoning of my opinion at that time.

Page 95

1       But as I said, with the claim construction
2   from the Federal Circuit Court, that we have new
3   clarification on the claim construction.
4       Q.  And you understand that this paragraph
5   is, in particular, referring to the user interface
6   limitation; correct?
7       MR. WALDEN:  Objection.  Vague.
8       THE WITNESS:  Well, it is discussing the
9   user interface.  It's also discussing, among other
10  things, yes, it's talking about the operation of
11  the phone including the user interface.
12  BY MR. ERWINE:
13      Q.  And at that time Apple had not sought a
14  claim construction for the user interface
15  limitation; correct?
16      A.  I don't recall off the top of my head.
17  I don't have a memory of them doing that.
18      Q.  The claim construction you're referring
19  to is the Federal Circuit claim construction of
20  the phrase "from the analyzer server limitation";
21  correct?
22      MR. WALDEN:  Objection.  Vague.
23      THE WITNESS:  So the phrase "linking
24  action to detected structures," which appears
25  within the limitation that begins with "analyzer

Page 96

1   server."
2   BY MR. ERWINE:
3       Q.  And there isn't any indication in this
4   paragraph about any pending claim construction as
5   far as you can tell; correct?
6       MR. WALDEN:  Objection.  The document
7   speaks for itself.
8       THE WITNESS:  Well, the pending claim
9   construction was not for this case.  It was for a
10  different case.  The Federal Circuit ruling was
11  related to a Motorola and Apple case, not this
12  case.  It was the same patent, but there was -- I
13  mean, it does not refer to pending claim
14  construction.  Yes, that's correct.
15  BY MR. ERWINE:
16      Q.  Okay.  And back to paragraph 47, you
17  said that you did not provide infringement
18  opinions at that time based on your understanding
19  of the claim construction; correct?
20      MR. WALDEN:  Objection.  The document
21  speaks for itself.
22      THE WITNESS:  Which sentence are you
23  referring to?
24  BY MR. ERWINE:
25      Q.  This is paragraph 47.  And the paragraph

Page 97

1   or the sentence that I'm referring to is starting
2   at line 24 --
3       A.  Okay.
4       Q.  -- where it says, "In addition, with
5   respect to these phones and with respect to the
6   use of the resolver activity menu and short tap in
7   the browser application, it was unclear before
8   trial whether the claims were going to be
9   construed to require more than one action per
10  structure or not, and thus I did not provide
11  infringement in instances where only one action
12  per structure was included."
13      A.  Yes.  I see that.
14      Q.  Just confirming that you did not provide
15  infringement opinions in instances where only one
16  action per structure were included; correct?
17      A.  Well, this is referring to my 2013
18  infringement report, which was written before the
19  Federal Circuit ruling which happened during the
20  trial.  At the trial I provided -- after the
21  ruling came out, Dr. Jeffay and I returned to the
22  trial and I did give opinions based on the Federal
23  Circuit's claim construction at that point.  And,
24  I mean, I discussed that at the trial.
25      But this statement is correct in paragraph 47

Highly Confidential - ATTORNEYS' EYES ONLY

Page 98

1    that -- referring specifically to my 2013
2    infringement report at that time, yes, my opinions
3    were not based on the claim construction because
4    it hadn't come out yet.
5        Q.  And at the trial did you provide
6    infringement opinions in instances where there was
7    only one action per structure?
8        A.  Well, yes.  When I came back, I -- at
9    the very end of the trial I gave opinions.  I
10   discussed -- these were in my report from the
11   beginning anyway, but I discussed the situation
12   where there was one or more linked actions and not
13   just more than one linked action, yes.
14       Q.  So did you -- at that part of the trial,
15   did you accuse products that included only one
16   action per structure?
17           MR. WALDEN:  Objection.  Vague.
18           THE WITNESS:  Well, I'm just an expert
19   witness.  I think that accusing products is
20   something that the counsel does much earlier in
21   the process.  So I don't -- that's above my pay
22   grade, as they say.  That wasn't -- that wasn't
23   for me to do.
24   BY MR. ERWINE:
25       Q.  Well, to be clear, this paragraph says

Page 99

1    that you didn't provide infringement opinions for
2    instances where only one action per structure were
3    included prior to the trial; is that right?
4        A.  I did not -- we did not accuse products,
5    yes.  We did not accuse products or features where
6    there was only one action per structure, yes,
7    prior to the trial.  But I might not be following
8    all of your question, I guess.
9        Q.  And prior to the trial is what set the
10   foundation for the products that the jury
11   considered; correct?
12           MR. WALDEN:  Objection.  Calls for a
13   legal conclusion.  Vague.
14           THE WITNESS:  I wasn't part of the
15   process of deciding what products to accuse.
16   BY MR. ERWINE:
17       Q.  So you're not aware of what products
18   Apple accused at the trial?
19       A.  I'm aware of what products they accused.
20   I'm just not aware of the -- I wasn't part of the
21   decision-making process.  That was done by
22   attorneys, not done by me.
23       Q.  Are you aware of any products that were
24   accused that included this only one action per
25   structure functionality?

Page 100

1        A.  Well, just to be clear, it's not a
2    problem if a -- okay.  Prior to the Federal
3    Circuit ruling, when I had expressed the opinion
4    that I thought that the -- my opinion before that
5    ruling was that you needed to have more than one
6    linked action.
7        A phone could still have some detected
8    structures where the detected structure only has
9    one linked action as long as there were other
10   detected structures that had multiple linked
11   actions.
12       So simply the presence of a detected
13   structure with just one linked action is not --
14   doesn't mean that the phone does not infringe.
15       Q.  But according to paragraph 47, you
16   didn't accuse those of infringement prior to the
17   trial; correct?
18           MR. WALDEN:  Objection.  Vague.  Asked
19   and answered.  The document speaks for itself.
20           THE WITNESS:  When you said "those," in
21   the answer that I just gave I talked about how a
22   phone could have a combination of some detected
23   structures with multiple linked actions as well as
24   other detected structures with just single linked
25   actions.

Page 101

1        And I was saying that the fact that there are
2    some detected structures with only one linked
3    action did not mean that the phone, overall, did
4    not infringe.  Because if it does have detected
5    structures with multiple linked actions it can
6    still infringe based on that.
7        So just I wanted to make that clear because
8    you said "those," and that would seem to refer to
9    what I was just discussing in the previous
10   sentence.
11       But what I was saying here is I was not
12   accusing things like -- I mean, let's say, for
13   example, Sidekick, there's only one detected
14   structure, a phone number, and only one linked
15   action, which is dialing.  So that was -- I was
16   not accusing things like that, for example.  That
17   is not sufficient for infringing the patent.
18   BY MR. ERWINE:
19       Q.  At that time, was there anything
20   restricting you from accusing instances where
21   there was only one action per structure?
22           MR. WALDEN:  Objection.  Vague.
23           THE WITNESS:  You said was there
24   anything restricting me?
25       Well, nothing was restricting my opinions.  I

Highly Confidential - ATTORNEYS' EYES ONLY

Page 102

1  may have missed something there.  I wasn't given
2  any direction, if that's what you're asking.
3  BY MR. ERWINE:
4      Q.  You could have accused instances where
5  there was only one action per structure at that
6  time; correct?
7          MR. WALDEN:  Objection.  Vague.
8          THE WITNESS:  Well, when you're
9  saying -- just to clarify some language -- you're
10  asking about me accusing things.
11      My understanding is that it's the attorneys
12  who decide whether to accuse products or not, and
13  then I'm asked to give opinions on whether they
14  infringe or not.
15      So I believe the decision about accusing
16  something is not something that I was ever asked
17  to do.
18  BY MR. ERWINE:
19      Q.  Well, you could have provided
20  infringement opinions at that time for
21  functionality with only one action per structure;
22  correct?
23          MR. WALDEN:  Objection.  Vague.
24          THE WITNESS:  Well, I could have been
25  asked to provide such opinions, but if that's all

Page 103

1  that the phone had, if it only had one type of
2  detected structure with a single linked action,
3  then my opinion would have been that it did not
4  infringe.
5  BY MR. ERWINE:
6      Q.  Why not?
7      A.  Well, that was discussed at length in
8  the trial.  The '647 patent requires -- it talks
9  about detecting structures, plural.  So there need
10  to be multiple detected -- there need to be
11  multiple types of detected structures, for
12  example, phone numbers and email addresses.
13      With the Federal Circuit claim construction
14  ruling, each of them -- each of those has one or
15  more linked actions.
16      Q.  Let's turn to the DA1-A design-around.
17      And you understand that the DA1-A
18  design-around was applied to both the browser and
19  messenger applications; correct?
20      A.  That sounds correct.  If you can -- I
21  believe so.  I just want to look over my notes
22  here.
23      Yes.  That's right, yes.
24      Q.  And you understand that one of the
25  changes for the browser application for DA1-A is

Page 104

1  instead of -- let me rephrase that.
2      For the browser application that was part of
3  the adjudicated products, is it your understanding
4  that the context menu that was accused appeared
5  after a long press?
6      A.  Yes.
7      Q.  And is it your understanding that in the
8  DA1-A design-around for the browser application, a
9  context menu now appears after a short tap?
10      A.  Yes.
11      Q.  And if you look at paragraph 29 of your
12  reply report.
13      A.  Yes.
14      Q.  In paragraph 29 of your reply report,
15  you compared this change from a long press to a
16  short tap to reversing the right click and left
17  click functionality of a PC mouse; is that right?
18      A.  Yes.  On a touch screen, since there
19  aren't mouse buttons, the way that a user provides
20  two different gestures on top of a particular
21  pixel is that they either do a short tap or a long
22  press, which is used very similarly to the right
23  click versus left click on a mouse.
24      Q.  And, in fact, you state in paragraph 29
25  at line 17, "Just as it would be an insignificant

Page 105

1  change to reverse the right click and left click
2  functionalities on a PC mouse, it is insignificant
3  that the DA1-A browser products call the
4  contextual menu on a short tap instead of a long
5  press."
6      Is that right?
7      A.  Yes.  From a technical perspective,
8  that's correct.
9      Q.  So, in your opinion, it would be an
10  insignificant change to reverse the right click
11  and left click functionalities on a PC mouse?
12      A.  Well, from a programmer's point of view
13  it's a very simple change in the software to just
14  switch those things, yes.
15      Q.  So that's -- in your statement in your
16  report, you should didn't say from a programmer's
17  perspective.  You just said that it would be an
18  insignificant change to reverse the right click
19  and left click functionalities of a PC mouse;
20  right?
21          MR. WALDEN:  Objection.  The document
22  speaks for itself.
23          THE WITNESS:  Right.  It would be not --
24  it would be very easy to switch the right and left
25  click -- the code in the software, there's a place

27

Highly Confidential - ATTORNEYS' EYES ONLY

Page 106

1    where you can hook in what the software does in
2    response to mouse clicks.  And it's just as easy
3    to attach something to the right click as it is to
4    the left click.  They are very similar to each
5    other.
6    BY MR. ERWINE:
7        Q.  Okay.  So, in your opinion, then it
8    would be an insignificant change to reverse the
9    right click and left click functionalities of a PC
10   mouse.
11       A.  Well, yes.  Generally, yes.
12       Q.  If you used a long press on the DA1-A
13   design-around for the browser application, the use
14   of that long press would generate a generic
15   context menu; is that right?
16       A.  Yes.
17       Q.  And if you actually turn to paragraph 64
18   of your opening report, you talk about that there;
19   right?
20       A.  Yes.
21       Q.  And you say, "One of the changes made
22   with respect to the DA1-A browser products was
23   that a generic pop-up menu, rather than a
24   contextual or resolver activity pop-up menu,
25   appears when a user makes a long press on a

Page 107

1    structure in browser."
2        Do you see that?
3        A.  Yes.
4        Q.  And you agree that this functionality
5    does not infringe Claim 9 of the '647 patent;
6    correct?
7            MR. WALDEN:  Objection.
8            THE WITNESS:  That's correct.  So the
9    generic pop-up menu does not infringe.
10   BY MR. ERWINE:
11       Q.  Now, back to the Jelly Bean browser
12   application which was one of the adjudicated
13   products.  You understand that -- we discussed
14   this a little bit earlier -- that the short tap
15   for the Jelly Bean browser application caused a
16   single action to be performed; correct?
17       A.  Yes.
18       Q.  And as we discussed, that was not
19   accused as part of the 2014 trial.
20       A.  That's correct.
21       Q.  You understand that that browser
22   application with that short tap functionality also
23   included the resolver activity menu.
24           MR. WALDEN:  Objection.
25           THE WITNESS:  Yes.  Right.  Yes.  The

Page 108

1    resolver activity code was in there.  Right.
2    BY MR. ERWINE:
3        Q.  So, for example, after a user short
4    tapped on the Jelly Bean browser application, the
5    first menu that may appear is the resolver
6    activity menu; correct?
7        A.  Yes.  That could potentially be the
8    first menu to appear, yes.
9        Q.  And what's your understanding of the
10   instances when that would appear?
11           MR. WALDEN:  Objection.
12           THE WITNESS:  Well, for example, if the
13   user had not selected a default activity for that
14   action, if they had not indicated that they always
15   wanted to use a particular activity to handle
16   something where there's a set of multiple
17   activities that could handle it.
18   BY MR. ERWINE:
19       Q.  So in the Jelly Bean browser -- in the
20   Jelly Bean browser application, there are
21   instances where after selection of the detected
22   structure the resolver activity menu does not
23   appear.
24       A.  Yes.  If a user says that they always
25   want to use a particular activity to perform

Page 109

1    whatever action that is, then the resolver -- the
2    pop-up menu will not appear.
3        Q.  And is it your understanding that the
4    same functionality is now used in the DA2
5    messenger application for a short tap?
6            MR. WALDEN:  Objection.  Vague.
7            THE WITNESS:  Well, the messenger DA2 --
8    the phone -- the Android system still has a
9    resolver activity in it.  There's a more
10   up-to-date version of Android, but there still is
11   a resolver activity functionality in it, yes.
12   BY MR. ERWINE:
13       Q.  And like the Jelly Bean browser
14   application, in the DA2 messenger application, if
15   you perform a short tap on a detected structure,
16   there are instances where the resolver activity
17   menu will appear.
18       A.  Yes.
19       Q.  And is it your understanding that
20   functionally the resolver activity menu that
21   appears in DA2, is it your understanding that
22   that's any different from the resolver activity
23   menu that appears with the Jelly Bean browser
24   application?
25       A.  Well, as I said, the versions of Android

Highly Confidential - ATTORNEYS' EYES ONLY

Page 110

1  have been updated, but it's effectively the same
2  functionality.
3      Q.  Now, back to the DA1-A design-around for
4  the browser, do you agree that the new short tap
5  functionality for browser is different from the
6  adjudicated functionality?
7          MR. WALDEN:  Objection.  Vague.
8          THE WITNESS:  There have been changes to
9  the code, yes.
10  BY MR. ERWINE:
11     Q.  And do you agree that the detection
12  routines for DA1-A for both browser and messenger
13  begin on touch up rather than touch down?
14     A.  Yes.
15     Q.  And do you agree that detection for
16  DA1-A, both browser and messenger, is not complete
17  until after the user removes his or her finger
18  from the screen?
19     A.  Yes.  That's correct.
20     Q.  If you could turn to paragraph 97 of
21  your opening report?
22     A.  Okay.
23     Q.  And in particular, in paragraph 97,
24  starting at line 21, you say, "In both instances
25  the process that includes detection display of a

Page 111

1  contextual pop-up menu starts with finger down."
2  Is that right?
3      A.  That's what it says here, yes.
4      Q.  And you cite a deposition transcript; is
5  that right?
6      A.  Yes.
7      Q.  What is your basis for making the
8  statement that the process that includes detection
9  and display of the contextual pop-up menu starts
10  with finger down?
11     A.  Well, the finger down is necessary in
12  order for there to be a finger up.  You can't just
13  begin with finger up.
14     And, also, the length of time that the timer
15  has been running since you did a finger down is
16  also important because it determines whether this
17  is a short tap or a long press.
18     Q.  But you agree that the detection
19  routines themselves have not started with the
20  finger down.
21     A.  Yes.
22     Q.  The detection routines themselves start
23  with finger up.
24         MR. WALDEN:  Objection.  Asked and
25  answered.

Page 112

1          THE WITNESS:  Yes.  I think I said that
2  before, yes.
3  BY MR. ERWINE:
4      Q.  But your view is that the detection
5  process begins with finger down.
6          MR. WALDEN:  Objection.  Asked and
7  answered.
8          THE WITNESS:  Well, yes.  I said that
9  the process that includes the detection and
10  display of the menu starts with finger down
11  because that starts the timer that determines
12  whether it's going to be a short tap or a long
13  press.
14  BY MR. ERWINE:
15     Q.  And you said that you can't have finger
16  up without finger down first; right?
17     A.  Yes.
18     Q.  So because you can't have finger down
19  and finger up, it's consequently part of the
20  detection process.
21         MR. WALDEN:  Objection.
22  Mischaracterizes the witness' testimony.  Vague.
23         THE WITNESS:  Well, what I said here in
24  this line is that the process -- I'm not saying
25  the execution of the detection software, but just

Page 113

1  the process overall that includes detection, that
2  overall process begins with the finger down for
3  the reason I described.
4  BY MR. ERWINE:
5      Q.  And what is your basis for saying that
6  the overall process begins with finger down?
7      What is it about finger down that, in your
8  view, is the initiation of the detection process?
9          MR. WALDEN:  Objection.  Asked and
10  answered.
11         THE WITNESS:  I believe that's exactly
12  what I said before.
13     So the -- whether or not it's a short tap or
14  a long press is important, and the way that that's
15  determined is based on the length of the timer.
16  And you can't get to finger up without finger
17  down.
18     So the user begins interacting with it by
19  putting the finger down, and that's part of the
20  overall process that leads to detection if they
21  lift up their finger before the timer expires.
22  BY MR. ERWINE:
23     Q.  Okay.  So let's turn -- with that in
24  mind, let's turn to paragraph 57 of your reply
25  report.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 114

1    Let me know when you're there.
2    A.  I'm there.
3    Q.  In paragraph 57, you also argue, every
4  time there's a detection, it starts with action
5  down.
6    Correct?
7    A.  Well -- and, yes, I'm saying when
8  there's detection, there was an action down before
9  you got to the action up.  It's the action up that
10  actually invokes a call to the detection software.
11  But you -- but prior to that it begins with action
12  down.
13    Q.  In fact, there's no actual detection
14  unless there's action up; right?
15    A.  Yes.
16    Q.  Now, you accuse both the DA1-A browser
17  messenger design-around of infringing just under
18  the doctrine of equivalents; correct?
19    MR. WALDEN:  Objection.  Vague.
20    THE WITNESS:  I know for the browser
21  that DA1-A is accused just under doctrine of
22  equivalents.  I can look up whether that's true
23  for messenger.  I don't think so, but I can check
24  on that.
25

Page 115

1  BY MR. ERWINE:
2    Q.  Okay.  If you want to turn to your
3  report just to confirm, I just want to make sure
4  we're clear.
5    And my question is just for the DA1-A
6  design-around, it's your understanding that you're
7  accusing that functionality, for both browser and
8  messenger, infringing under only the doctrine of
9  equivalents.
10    MR. ERWINE:  Objection.  Vague.
11  Mischaracterizes the testimony.
12    THE WITNESS:  Is there a part of the
13  report you want to point me to?
14  BY MR. ERWINE:
15    Q.  I can.
16    A.  I mean, I know that that's true for
17  browser.  I just have to remember whether that's
18  true for messenger.
19    Q.  If you turn to Exhibit 2, and you go to
20  page 61 of your report, in particular paragraph
21  132, you'll see that it says, "It is my opinion
22  that the DA1-A messenger products are covered by
23  this limitation under the doctrine of equivalents
24  for the same reasons I set out for the DA1-A
25  browser products below."

Page 116

1    A.  Yes.  I see.
2    Q.  And you understand that in terms of the
3  limitation you're referring to there, that's the
4  user interface limitation?
5    A.  Yes.  That's right.
6    Q.  Do you agree that the DA1-A
7  design-around does not literally infringe Claim 9
8  of the '647 patent?
9    MR. WALDEN:  Objection.  Vague.
10    THE WITNESS:  I know that that's true
11  for browser.  I'm just trying to double check for
12  messenger.
16    So, yes, I think that that's correct, that
17  it's doctrine of equivalents for -- it's
18  definitely that for browser, and it appears that
19  that's also what I'm saying for messenger
20  although -- yeah.  I think that that's also true
21  for messenger.
22  BY MR. ERWINE:
23    Q.  For the 2014 adjudicated products -- and
24  I'm talking specifically about browser -- you
25  accuse and the jury found the browser application

Page 117

1  to literally infringe Claim 9 of the '647 patent;
2  correct?
3    A.  Yes.
4    Q.  But for the DA1-A browser design-around,
5  you're no longer accusing it of infringing
6  literally; correct?
7    A.  That's correct.
8    Q.  Now, you are accusing it of infringing
9  only under the doctrine of equivalents; correct?
10    A.  That's correct.
11    Q.  If there is not -- strike that.
12    If the change between the adjudicated browser
13  products and the DA1-A design-around products for
14  browser are insignificant, then why did you change
15  your infringement allegation from literal
16  infringement to the doctrine of equivalents?
17    MR. WALDEN:  Objection.  Vague.
18    THE WITNESS:  Well, the changes are not
19  more than colorably different.  But the thing that
20  is different is that now, because the detection
21  software is called on finger up, then the
22  detection has not completed at the point where the
23  user has made their selection.
24    So it's no longer literally the selection of
25  a previously detected structure.  The structure is

Highly Confidential - ATTORNEYS' EYES ONLY

## Page 118

1  about to be detected very soon, in fact, soon
2  enough that the user can't really tell the
3  difference, but it's no longer literally
4  satisfying that claim element.
5  BY MR. ERWINE:
6      Q.  And because the claim element requires
7  the user interface enabling the selection of a
8  detected structure, the DA1-A browser
9  design-around no longer literally infringes that
10  limitation; correct?
11     A.  It no longer literally infringes.  It
12  just infringes under doctrine of equivalents.
13     Q.  If you turn to paragraph 136 of your
14  2017 opening report, that's Exhibit 2.
15     A.  Yes.
16     Q.  Paragraph 136, starting at line 9, you
17  say, "However, as I wrote in my August 12, 2013
18  expert report regarding infringement, detection
19  coinciding with or immediately after selection
20  satisfies this limitation under the doctrine of
21  equivalents, because the limitation in the
22  corresponding component in Samsung's products are
23  unsubstantially different."
24     Correct?
25     A.  Yes.

## Page 119

1      Q.  And it's your opinion that in the DA1-A
2  browser design-around, detection occurs
3  immediately after selection; correct?
4      A.  Yes.
5      Q.  If you turn to paragraph 53 of your
6  reply report, paragraph 53 you say something
7  similar.  You say, starting at line 10, "In the
8  DA1-A browser products, just as in the infringing
9  Galaxy S III, there is no pre-detection of
10  structures.  And in both cases, detection either
11  coincides with or occurs immediately after
12  selection."
13     Do you see that?
14     A.  Yes.
15     Q.  And when you were referring to it
16  coinciding with, that was a reference to the
17  Galaxy S III; correct?
18     A.  Yes.
19     Q.  And when you say that detection occurs
20  immediately after selection, that's a reference to
21  the DA1-A browser; correct?
22     A.  Yes.
23     Q.  So you understand, of course, that the
24  claim limitation requires a user interface that
25  enables the selection of a detected structure, as

## Page 120

1  we talked about before?
2      A.  Yes.
3      MR. WALDEN:  Objection.  Asked and
4  answered.
5  BY MR. ERWINE:
6      Q.  And you, of course, agree that the DA1-A
7  browser design-around, in that design-around
8  detection occurs immediately after selection, we
9  talked about before.
10     MR. WALDEN:  Objection.  Asked and
11  answered.
12     THE WITNESS:  Yes.  That's right.
13  BY MR. ERWINE:
14     Q.  And that means that in the DA1-A browser
15  design-around, a user cannot select detected
16  structure.
17     MR. WALDEN:  Objection.
18  Mischaracterizes the witness' testimony.  Calls
19  for a legal conclusion.
20     THE WITNESS:  Well, the user detects --
21  sorry.  The user selects a structure that is about
22  to be detected, and it's detected so quickly that
23  the user can't tell the difference whether it
24  had -- it happens so quickly inside of a computer
25  that from the user's perspective, it looks like it

## Page 121

1  behaves the same way.
2      It is -- it is -- technically, it is
3  occurring after the user has lifted their finger
4  up so it is no longer literal infringement, but
5  it's just -- it's infringement under doctrine of
6  equivalents.
7  BY MR. ERWINE:
8      Q.  If you turn to paragraph 137 of your
9  opening report, and this is -- you're continuing
10  to talk about the DA1-A browser application?
11     A.  Right.
12     Q.  Paragraph 137 is a part of your analysis
13  of something called the function-way-result test;
14  is that right?
15     A.  Yeah.  I believe so, yes.
16     Q.  And is it your understanding that the
17  function-way-result test is one test that you can
18  use for establishing whether or not something
19  infringes under the doctrine of equivalents?
20     A.  Yes.
21     Q.  And by the way, before we get into this,
22  just taking a step back, you understand that one
23  of the tests for the not more than colorable
24  differences is whether or not the change is
25  significant; correct?

Highly Confidential - ATTORNEYS' EYES ONLY

Page 122

1    A.  Yeah.  Roughly speaking, yes, that's
2  right.
3    Q.  And you understand that one of the tests
4  for doctrine of equivalents is whether or not the
5  change is insubstantial -- an insubstantial
6  difference; correct?
7    A.  Yes.
8    Q.  Is it your understanding that those
9  tests are the same?
10    MR. WALDEN:  Objection.  Vague.  Calls
11  for a legal conclusion.
12    THE WITNESS:  While not colorably
13  different is -- my understanding is that that's
14  separate from infringement, that they're two
15  different ideas.
16  BY MR. ERWINE:
17    Q.  So is it your understanding that if
18  something is found to be not more than colorably
19  different, then the change must have been
20  insignificant?
21    MR. WALDEN:  Objection.  Calls for a
22  legal conclusion.
23    THE WITNESS:  I probably have to look at
24  a specific example.  But at that -- at that level
25  of detail, I'm not immediately thinking of a

Page 123

1  counterexample to that.
2  BY MR. ERWINE:
3    Q.  Let me ask it a little differently.
4    Is it your understanding that if
5  functionality is found to be not more than
6  colorably different, then it, therefore, must
7  infringe under the doctrine of equivalents?
8    MR. WALDEN:  Objection.  Vague.  Calls
9  for a legal conclusion.
10    THE WITNESS:  I haven't thought through
11  all the possible scenarios, but I think that
12  infringement is a separate concept from not more
13  than colorably different.
14    So it seems like that's a possibility, but I
15  haven't given that thought.
16  BY MR. ERWINE:
17    Q.  And you understand that the not more
18  than colorable difference test is a different test
19  than whether or not a product infringes; correct?
20    A.  Yes.
21    Q.  So, for example, with the not more than
22  colorable difference test, you compare the
23  adjudicated products to the designed-around
24  products; correct?
25    A.  Yes.

Page 124

1    Q.  Whereas with the infringement
2  allegation, you compare the designed-around
3  product to the claim.
4    A.  Yes.
5    Q.  And turning back to paragraph 137 and
6  starting at line 22, you see that you opine that,
7  "This function is performed substantially the same
8  way as that of the claim limitation.
9  Specifically, the claim limitation performs its
10  function by providing the user with a viewable
11  representation of detected structures and linked
12  actions."
13    Do you see that?
14    A.  Yes.
15    Q.  Is it your opinion that the DA1-A
16  browser design-around provides the user with a
17  viewable representation of detected structures?
18    A.  Well, it does because after it -- the
19  pop-up menu that does appear, the context menu
20  after you short tap, does include the detected
21  structure in part of the menu along with its
22  linked actions.
23    Q.  So you're saying that it provides --
24    A.  That's -- sorry.
25    Q.  Sorry.  Go ahead.

Page 125

1    A.  Well, that's with respect to -- so
2  that's with respect to selecting a linked action.
3  So...
4    Can you repeat the question again, make sure
5  I...
6    (The following record was read back:
7    "Q  Is it your opinion that the DA1-A
8    browser design-around provides the user with
9    a viewable representation of detected
10    structures?")
11    THE WITNESS:  So the paragraph -- at the
12  end of paragraph 136, what I'm discussing is how,
13  when you do a short tap, you get a menu with the
14  linked actions.  That menu also happens to include
15  the detected structure as part of that.
16    And then in the second sentence in
17  paragraph 137, I talk about "a viewable
18  representation of detected structures and linked
19  actions."
20    So it's -- actually, that's the context menu.
21    Your question was just a viewable
22  representation of detected structures, but you
23  didn't mention linked actions.
24    So in the context menu, there is -- like I
25  said, the detected structure does appear for the

Highly Confidential - ATTORNEYS' EYES ONLY

Page 126

1 one that has been short tapped, but if you're
2 asking about detected structures, plural, without
3 the linked actions, there is not a visual
4 representation of just all of the detected
5 structures independently as showing you linked
6 actions.
7 BY MR. ERWINE:
8    Q.  So according to your opinion, you state
9 that, "The claim limitation performs its function
10 by providing user with a viewable representation
11 of detected structures and linked actions."
12    Correct?
13    A.  Yes.
14    Q.  And you agree with that statement.
15    A.  Yes.
16    Q.  But with respect to the DA1-A browser
17 products, it does not provide a viewable
18 representation of detected structures; correct?
19       MR. WALDEN:  Objection.  Vague.
20 Mischaracterizes his testimony.
21       THE WITNESS:  I think this is very
22 similar to what I was saying -- my answer, that
23 is.
24    So if you back up ahead of that, what I'm
25 talking about is the context menu that appears

Page 127

1 after a short tap, and that menu contains a set of
2 linked actions for the detected structures.
3    So it does show you the detected structure
4 with its linked actions, and that is the same in
5 both cases.
6    But you may be asking -- there may be some
7 more specific point to your question that I'm
8 missing.
9    But the sentence is correct.  It's referring
10 to the context menu contains the detected
11 structure and its linked actions.
12 BY MR. ERWINE:
13    Q.  But I think you qualified correctly that
14 the context menu shows a detected structure,
15 singular, and the linked actions; is that correct?
16    A.  That's correct.  Yes.
17    Q.  This says, "Specifically, the claim
18 limitation performs its function by providing the
19 user with a viewable representation of detected
20 structures," plural, "and linked actions."
21    Correct?
22    A.  Right.  So that sentence makes sense if
23 you realize the context from the previous
24 paragraph.
25    It is not the case that the DA1-A browser

Page 128

1 lets the user select detected structures.  The
2 structures have not yet been detected when the
3 user lifts their finger up, as I said earlier, but
4 the detection happens immediately afterward.
5    And, like I said, it still infringes under
6 doctrine of equivalents.  But because it's not
7 literally allowing the user to select a structure
8 that has already been detected, it is no longer
9 literal infringement.
10    Q.  So for DA1-A browser, at the time that
11 the user removes his or her finger from the
12 screen, it does not provide a viewable
13 representation of detected structures; correct?
14       MR. WALDEN:  Objection.
15 Mischaracterizes the testimony.
16       THE WITNESS:  Well, it's about to.  It
17 has -- you said -- did you see detected
18 structures, plural?  I think you did.
19    So it's about to -- yes.  It's not -- at the
20 instant when the finger is coming up, it has not
21 provided any representation of detected
22 structures.
23    The user just sees a web page with no
24 highlighting of detected structures.  They have
25 not yet been detected.

Page 129

1    The only one that is going to be detected is
2 whatever they're picking their finger up off of.
3 It's about to show you a menu of the linked
4 actions for the particular detected structure.
5 BY MR. ERWINE:
6    Q.  Now, if you turn to paragraph 62 of your
7 reply report.  And, again, this is in the DA1-A
8 browser section, so same product.
9    Let me know when you're there.
10    A.  Yes.
11    Q.  On page 20, you state that, "This
12 suggestion that the structure must be detected and
13 highlighted or otherwise shown to the user is
14 inconsistent with the jury's conclusion that
15 pre-detection is not necessary for infringement."
16    Correct?
17    A.  Yes.  That's what it says.
18    Q.  What is your basis for that statement?
19    A.  Well, that was true of the Jelly Bean
20 browser, for example, and that was found by the
21 jury to infringe.  It does not pre- -- it does not
22 highlight the detected structures.  It does not
23 show them highlighted ahead of time.
24    Q.  But you're aware that the Jelly Bean
25 browser does indicate to a user when a structure

Highly Confidential - ATTORNEYS' EYES ONLY

Page 130

1 has been detected via highlighting; correct?
2 MR. WALDEN: Objection. Vague.
3 THE WITNESS: Can you read that question
4 again. I was just trying to read my paragraph to
5 remember.
6 (The following record was read back:
7 "Q But you're aware that the Jelly
8 Bean browser does indicate to a user when a
9 structure has been detected via highlighting;
10 correct?")
11 THE WITNESS: My recollection is that if
12 you -- that it does flash a highlighting after it
13 has been detected. It's not highlighting it ahead
14 of time, unlike, say, the -- most of the messenger
15 applications will pre-detect and highlight all the
16 detected structures before the user selects any of
17 them.
18 BY MR. ERWINE:
19 Q. But in the Jelly Bean browser, once the
20 structure has been detected, the system provides
21 an indication via highlight of the detection;
22 correct?
23 A. Yes.
24 Q. And that happens while the user's finger
25 is on the screen; correct?

Page 131

1 A. I believe so, yes.
2 Q. And there's no such indication in any
3 way, shape, or form in the DA1-A browser
4 design-around while the user's finger is on the
5 screen.
6 MR. WALDEN: Objection. Vague.
7 THE WITNESS: Well, the thing that the
8 user will notice is that the pop-up menu, the
9 context menu will appear almost immediately.
10 So in about the same amount of time it would
11 take to highlight the structure, you will see this
12 context menu with a set of linked actions.
13 So I think from the user experience point of
14 view it will be similar because you've clearly
15 successfully gestured on a detected structure,
16 because you're now seeing the set of linked
17 actions for the detected structure.
18 It is true that -- well, my recollection is
19 that it does not underline or highlight the
20 structure on the screen. But you will see the
21 screen -- you will see the detected structure in
22 the pop-up menu that appears.
23 BY MR. ERWINE:
24 Q. In the DA1-A browser design-around, the
25 context menu does not appear until after the user

Page 132

1 has removed his or her finger from the screen;
2 correct?
3 A. That's correct.
4 Q. Whereas, in the Jelly Bean browser, the
5 highlighting appears while the user's finger
6 remains on the screen; correct?
7 A. That's what I recall, yes.
8 THE VIDEOGRAPHER: Why don't we take a
9 lunch break.
10 MR. WALDEN: Sure.
11 THE VIDEOGRAPHER: The time is
12 12:29 p.m. We're off the record.
13 (Recess from 12:29 p.m. to 1:37 p.m.)
14 THE VIDEOGRAPHER: The time is 1:37 p.m.
15 We're back on the record. Please proceed.
16 MR. ERWINE: Good afternoon, Dr. Mowry.
17 I'd like to mark as another exhibit. This is
18 a document, U.S. Patent No. 5,859,636. I think
19 it's Exhibit 6 -- 7.
20 (Mowry Exhibit 7 was marked.)
21 BY MR. ERWINE:
22 Q. Have you ever seen this document before,
23 Dr. Mowry?
24 A. Yes.
25 Q. When is the last time you reviewed it?

Page 133

1 A. In the last couple of days.
2 Q. Dr. Mowry, is it your view that -- well,
3 let me take a step back.
4 Is it okay if I refer to this document as
5 Pandit?
6 A. Yes.
7 Q. Is it your view that Pandit is not prior
8 art to the '647 patent?
9 A. That's correct.
10 Q. Why is that?
11 A. Because the priority date for the '647
12 patent is before the filing date of this, I
13 believe. If I remember, this was at issue in the
14 Apple HTC case, and the court ruled that this was
15 not prior art.
16 Q. In the ITC case?
17 A. Yes.
18 Q. So your understanding is that the
19 court's ruling in the ITC case as to whether or
20 not Pandit is a relevant piece of prior art is
21 binding on this court?
22 MR. WALDEN: Objection.
23 Mischaracterizes the witness' prior testimony.
24 THE WITNESS: No. I didn't say that.
25 I'm -- that's -- I'm not a lawyer so I don't

Highly Confidential - ATTORNEYS' EYES ONLY

Page 134

1  know that.  But what I said is that the ITC court
2  did -- well, the ITC court did decide that this
3  was not prior art for the '647 patent.
4  BY MR. ERWINE:
5      Q.  And you're not sure if whether or not --
6  you're not sure if the ITC's finding is binding on
7  this court?
8          MR. WALDEN:  Objection.
9  Mischaracterizes the witness' testimony.
10         THE WITNESS:  I don't know about the
11 word "binding."  I mean, I know that that's a
12 precedent or whatever.  I know that that's another
13 ruling that a court has made related to this
14 patent, but I'm not a legal expert.
15 BY MR. ERWINE:
16     Q.  Okay.  And you said that your
17 understanding of the reason for the ITC's ruling
18 is because the priority date of the '647 patent is
19 earlier than the priority date of the Pandit
20 patent?
21     A.  I think it's been about five years since
22 I looked at that specific issue.  I was very -- I
23 remember that from the ITC trial, but that's been
24 like a long time.
25         So when I said I looked at this recently, I

Page 135

1  wasn't looking at the priority date -- the issue
2  of whether there was prior art because my
3  understanding of that issue was settled long ago.
4      Q.  When you say "settled long ago," that
5  was by the ITC court?
6      A.  Yes.
7      Q.  If you look at -- just a little
8  comparison of Exhibit 1, which is the '647 patent,
9  to the Pandit reference, first starting with
10 Exhibit 1 -- do you have that in front of you?
11     A.  Right.
12     Q.  You see the filing date of the '647
13 patent?
14     A.  Yes.
15     Q.  You understand that's February 1, 1996?
16     A.  Yes.  That's right.
17     Q.  And if you look at Exhibit 7, which is
18 the Pandit reference, do you see the filing date
19 for Pandit?
20     A.  Yes.
21     Q.  Do you see that the filing date for
22 Pandit is December 27, 1995?
23     A.  Yes.
24     Q.  And it's your understanding that Pandit
25 was filed before the '647 patent application was

Page 136

1  filed?
2          MR. WALDEN:  Objection.  Vague.
3          THE WITNESS:  I see that, yes, but
4  that's why there was a lengthy decision of
5  conception and reduction to practice at the ITC
6  trial.
7  BY MR. ERWINE:
8      Q.  Okay.  And as we mentioned earlier,
9  you're not aware of whether that issue was part of
10 this litigation?
11         MR. WALDEN:  Objection.  Vague.
12         THE WITNESS:  I haven't been focused on
13 this issue.  Like I said, I thought -- I think
14 that this is -- I mean, in my opinion, it's not
15 prior art, and my impression is that issue
16 had been settled long ago.  I've not been focusing
17 on that issue.
18 BY MR. ERWINE:
19     Q.  If you turn to your rebuttal report,
20 which is Exhibit 3.
21         MR. WALDEN:  Reply report or rebuttal
22 report?
23         MR. ERWINE:  I'm sorry.  Reply report.
24 My apologies for mixing those up.
25

Page 137

1  BY MR. ERWINE:
2      Q.  Just give me one second.  Turn to
3  paragraph 58 of that report.
4      A.  Yes.
5      Q.  And you see the sentence that says,
6  starting at line 22, "As I have previously stated,
7  the inventors of the '647 patent conceived and
8  reduced to practice their claimed invention well
9  before the filing of the Pandit application."
10         Do you see that?
11     A.  Yes.
12     Q.  You say, "This was confirmed in
13 reexamination proceedings regarding the '647
14 patent when the examiner found that the patent
15 owner established an invention date for at least
16 Claims 1 through 12 and 14 of the '647 patent that
17 predated Pandit."
18     A.  Yes.
19     Q.  Is it your basis that the re-exam
20 proceedings are binding on this court for purposes
21 of whether or not Pandit is prior art?
22         MR. WALDEN:  Objection.  Calls for a
23 legal conclusion.
24         THE WITNESS:  That's kind of outside my
25 scope of expertise.  I'm a technical expert and

Highly Confidential - ATTORNEYS' EYES ONLY

Page 138

1  I'm not sure how to answer a legal question like
2  that.
3  BY MR. ERWINE:
4      Q.  So you don't know?
5          MR. WALDEN:  Objection.  Same objection.
6          THE WITNESS:  Well, I think that the
7  fact that the re-exam confirmed that this was not
8  prior art is -- is a relevant fact here.  Whether
9  it's technically binding or not from a legal point
10 of view, I don't know the answer to that.
11 BY MR. ERWINE:
12     Q.  If you turn a little earlier in that
13 paragraph, you say -- starting at line 22 -- "As a
14 preliminary matter, Pandit is not prior art to the
15 '647 patent, nor did Samsung assert it as prior
16 art in the 2014 trial."
17     Do you see that?
18     A.  Yes.
19     Q.  Is the fact that Samsung did not assert
20 Pandit as prior art in the 2014 trial, does that
21 mean that Samsung should not be able to rely on it
22 now, in your view?
23         MR. WALDEN:  Objection.  Calls for a
24 legal conclusion.
25         THE WITNESS:  Again, that's outside my

Page 139

1  scope of expertise.  That's more of a question for
2  an attorney.
3  BY MR. ERWINE:
4      Q.  If you look at paragraph 59 of your
5  report, the next paragraph, which is on page 19,
6  and starting at -- pardon me for one second --
7  starting at line 5, do you see that it states
8  that -- I'm just looking for the right place.
9      Sorry.  Line 7.  Do you see that it says,
10 "Rather, in Pandit it is the user that detects a
11 relevant structure by selecting and accenting the
12 structure in full"?
13     Do you see that?
14     A.  Yes.
15     Q.  Do you also see that it states that,
16 "The fact that Pandit requires that the user
17 manually select the entire structure before Pandit
18 attempts to recognize it as a material distinction
19 because it reverses the steps of the claim
20 limitation in a way that eliminates detection of
21 the data structures as required by the claims"?
22     Do you see that?
23     A.  Yes.
24     Q.  What is your basis for the argument that
25 Pandit detects a relevant structure by selecting

Page 140

1  and accenting the structure in full?
2          MR. WALDEN:  Objection.  Vague.
3  Mischaracterizes the testimony.
4          THE WITNESS:  Well, in Pandit, the --
5  you said that Pandit detects the structure, but
6  the Pandit invention does not detect structures at
7  all.  It relies on the user to detect structures.
8      The user has to explicitly -- has to find
9  them and then use their mouse or some pointing
10 device to indicate where the structure is.  So
11 pandit does not detect structures.
12 BY MR. ERWINE:
13     Q.  And just to kind of repeat the sentence
14 from your report, it says, "Rather, in Pandit it
15 is the user that detects a relevant structure by
16 selecting and accenting the structure in full."
17     And my question is:  What is your basis for
18 saying that, "It is the user that detects a
19 relevant structure by selecting and accenting the
20 structure in full"?
21     A.  Well, the Pandit patent describes that.
22 That's one of the steps.  They call it accenting
23 the text, and that's done manually by the user.
24     Q.  And where does it specify in Pandit that
25 the user selects and accents the structure in

Page 141

1  full?
2      A.  Well, the only thing that's presented to
3  the pattern matcher is whatever the user has
4  selected.  So -- and all the examples in Pandit,
5  all the figures show the user highlighting the
6  entire structure -- accenting the entire
7  structure, which makes sense because that's how it
8  works.
9      You pass -- the user passes the structure
10 that they've already identified to it and it
11 attempts to recognize what kind of structure it is
12 that the user has demarcated already.
13     Q.  Okay.  Other than in figures, is there
14 anywhere in the specification, that you're aware
15 of, that indicates that the user accents the
16 structure in full?
17         MR. WALDEN:  Objection.
18 Mischaracterizes the witness' prior testimony.
19         THE WITNESS:  Well, I can look through
20 it again.  But I think that's very clear from
21 reading the patent, that the user is -- let's see.
22 I'll take a little time here.
23     Do you want me to --
24 BY MR. ERWINE:
25     Q.  Sure.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 142

1    A.  -- look through this again?
2    Okay.
3    Well, just as one example, the -- like the
4    claim language itself, it talks about a
5    computer-implemented method for processing the
6    selected text.  And that -- the fact that the text
7    is selected, that's -- that's a precondition to
8    the method even doing anything.
9    So then the method takes already selected
10   text, and then it's going to try to determine what
11   type of -- recognize what kind of text it is.  So
12   that's even in the claim language.
13   And throughout the specification, as I
14   recall, it's talking about recognizing text.  Not
15   detecting it or finding it, but recognizing it.
16   Q.  Okay.  And that, in your view, is an
17   indication that the user is selecting and
18   accenting the structure in full?
19   A.  Yes.  That and the discussion of the
20   figures.  And I think that that's very clear from
21   reading the Pandit patent.
22   Q.  You mentioned figures.  If you look at
23   Figure 1E as just one example in Pandit -- let me
24   know when you're there.
25   A.  Yes.

Page 143

1    Q.  Is it your -- is it your assessment that
2    what's been surrounded by the box in Figure 1E is
3    the structure in full?
4    A.  Well, the phone number, the -- well, the
5    1 is not there.  But it is -- the -- what's
6    illustrated here is that the user has highlighted
7    the digits of the phone number.
8    Q.  But you don't consider the 1 to be part
9    of the phone number?
10   A.  That's -- the user -- well, that's up to
11   the user.  The user -- sorry.  The pattern
12   recognizer would presumably recognize a pattern
13   without a 1 at the beginning of it.  It would know
14   that that was a phone number.
15   The user has chosen to highlight the digits
16   that we see inside of the box here, and that
17   pattern should match -- is likely to match a phone
18   number pattern because people often write phone
19   numbers like that.
20   Q.  But you understand that the 1 is part of
21   the phone number here; correct?
22   MR. WALDEN:  Objection.
23   THE WITNESS:  The 1 does not need to be
24   part of the phone number.  That's optional.
25

Page 144

1    BY MR. ERWINE:
2    Q.  So if the box that's shown here in
3    Figure 1E did include the 1, would that be a
4    situation where the user has accented the
5    structure in full?
6    A.  Well, it's up to the user to accent
7    whatever they want to accent.  And then if they --
8    whatever they pass to the pattern recognizer, it's
9    going to attempt to match that with a pattern to
10   see if it appears to be a phone number.
11   So it's entirely the user's decision what
12   they're -- what they're highlighting.  They could
13   highlight -- they could highlight in-random text
14   if they want to, but that probably wouldn't match
15   any pattern.
16   Q.  All right.  Well, so then let's turn to
17   paragraph 70 of your reply report.  And starting
18   at line 15, do you see that it says, "Pandit does
19   not enable detection after selection because
20   Pandit does not enable detection at all.  Pandit
21   requires that the user select and highlight the
22   complete data structure, which removes any need
23   for detection of the structure as required by the
24   claim limitation"?
25   Do you see that?

Page 145

1    A.  Yes.
2    Q.  So, previously, you said the user could
3    do whatever it wants, but now you're saying that
4    Pandit requires that the user select and highlight
5    the complete data structure; is that right?
6    MR. WALDEN:  Objection.  Argumentative.
7    Mischaracterizes the witness' prior testimony.
8    THE WITNESS:  Well, when I said the user
9    can do what they want, I mean, they can do what
10   they want to, but not -- that won't necessarily
11   make the mechanism work properly.  I mean, they
12   can highlight random characters, and they won't be
13   recognized properly as a pattern.
14   If the user wants the Pandit invention to
15   successfully recognize a structure, they need to
16   highlight the entire structure, because only --
17   sorry -- accent the entire structure, because only
18   the text that is accented gets passed to the
19   recognition software.
20   So if they fail to accent the structure -- if
21   they accent just a small piece of it that does not
22   match the pattern, then it won't be recognized.
23   But in any event, it's not -- Pandit is not
24   detecting the location of the structure.  The
25   structure is simply being passed to it.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 146

1  BY MR. ERWINE:
2      Q.  I think you mentioned earlier, I don't
3  want to put words in your mouth, that in your view
4  Pandit doesn't do detection at all; correct?
5      A.  It doesn't detect structures.  That's
6  correct.
7      Q.  So if you look at Figure 2 of the
8  patent --
9          MR. WALDEN:  Which patent?
10         MR. ERWINE:  The Pandit patent.
11 BY MR. ERWINE:
12     Q.  Do you see that flow diagram in
13 Figure 2?
14     A.  Yes.
15     Q.  You see step 21, "Accent Text"?
16     A.  Yes.
17     Q.  That's the step we've been talking
18 about?
19     A.  Yes.
20     Q.  You see step 22, it says, "Text
21 Recognized" with a question mark?
22     A.  Yes.
23     Q.  And I think you said earlier that that's
24 how Pandit works.  It doesn't detect anything, it
25 just recognizes what the user selected depending,

Page 147

1  of course, on what they selected.
2          MR. WALDEN:  Objection.
3  Mischaracterizes the witness' prior testimony.
4  Incomplete.
5          THE WITNESS:  Well, yes, the -- the user
6  accents the text and then Pandit -- the text
7  recognition step takes that input and attempts to
8  match that against the pattern.
9  BY MR. ERWINE:
10     Q.  And you understand that there are
11 instances where Pandit will not be able to
12 recognize the text; correct?
13     A.  Well, hypothetically, if a person
14 highlight -- accents, rather, as I said, random
15 text, that's not the type of structure, not --
16 say, for example, a phone number, an email
17 address, and then passes it to the text
18 recognition step, that text won't match a pattern,
19 and it won't be recognized as anything
20 interesting.
21     Q.  And you understand that this flow
22 diagram addresses that specific instance; correct?
23     A.  That's the path where it goes to --
24 that's the no results where it goes to box 27?
25     Q.  Correct.

Page 148

1      A.  Yes.
2      Q.  So you understand that it either
3  recognizes the text based on the selection of the
4  user or it doesn't, and if it doesn't, then it
5  follows steps 27 and 28.
6      A.  That's right.
7      Q.  And if it does recognize the text, then
8  it follows steps 23, 24, 25, and 26; correct?
9      A.  Yes.
10     Q.  And, in fact, one of the things that it
11 does is assuming it recognizes the text, as
12 step 23 indicates, it provides menu bar having
13 menu name of operations relating to accented text
14 highlighted.
15     A.  Yes.
16     Q.  So, for example, if you go back to
17 Figure 1A, and in particular what's identified as
18 11, that shows a box around some commas
19 surrounding a date of June 8, 1995; correct?
20     A.  Yeah.  The box is surrounding, yeah, the
21 date of June 8, 1995.
22     Q.  And then you understand that the way the
23 system works, at least according to the flowchart
24 in Figure 2, is the system recognizes that as a
25 date and then proceeds to highlight the word

Page 149

1  "Date" which is identified as 12 in the top of
2  Figure 1A.
3      A.  Yes.
4      Q.  And if you go to Figure 1C, do you see
5  that the system has identified a selection of an
6  email address that's labeled as 14?
7  Do you see that?
8      A.  Yes.
9      Q.  And based on the system's detection of
10 that as an email address, it highlights in bold
11 the header email labeled as 15; correct?
12         MR. WALDEN:  Objection.
13 Mischaracterizes the witness' prior testimony.
14 Vague.
15         THE WITNESS:  Can you repeat the
16 question?
17         (The following record was read back:
18     "Q   And based on the system's detection
19     of that as an email address, it highlights in
20     bold the header email labeled as 15;
21     correct?")
22         THE WITNESS:  Sorry.  And I didn't
23 catch -- you may have used the word "detection" in
24 previous questions, but you asked whether it
25 detected the email address.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 150

1    And it's attempting to recognize the text as
2  an email address.  It's not detecting, because
3  detecting means locating and recognizing.  And
4  it's not locating the text.  The text was passed
5  to it, but the user has done the work of locating
6  the email address.
7    So -- in this patent it calls that accenting.
8  And Pandit is just trying to recognize the
9  accented text.
10  BY MR. ERWINE:
11    Q.  So in your view, if the user does the
12  job of locating a structure, then it's not
13  detection.
14    MR. WALDEN:  Objection.
15  Mischaracterizes the witness' prior testimony.
16  Calls for a legal conclusion.
17    THE WITNESS:  Well, automatic detection
18  of a structure involves both finding where it is
19  located and recognizing what kind of structure it
20  is.
21  BY MR. ERWINE:
22    Q.  But Claim 1 of the '647 patent doesn't
23  require automatic detection, does it?
24    MR. WALDEN:  Objection.  Calls for a
25  legal conclusion.

Page 151

1    THE WITNESS:  The analyzer server
2  described in Claim 1 detects structures in the
3  data, and that's what detection means here.
4  BY MR. ERWINE:
5    Q.  And in your view, detection means both
6  locating the structure and recognizing the
7  structure; correct?
8    A.  Yes.
9    Q.  So if a system doesn't actually locate
10  the structure, but only recognizes the structure,
11  then that would not satisfy Claim 1 of the '647
12  patent.
13    A.  Well, a system would need to both locate
14  and detect structures.  So I think the answer to
15  your question is yes.
16    Q.  So if a system only recognizes the
17  structure and doesn't do the actual location of
18  the structure, then it would not satisfy Claim 1
19  of the '647 patent.
20    A.  I think that's the same question I just
21  answered.  If it's different, I missed how it's
22  different.  So yes, the answer is yes.
23    Q.  So in your view, Pandit does not read on
24  Claim 1 of the '647 patent because it's the user
25  that locates the structure, whereas the system

Page 152

1  that recognizes the structure.
2    A.  Well, that's not necessarily the only
3  reason, but that's one reason.  It's also not
4  prior art, but yes, that's one of the reasons.
5    Q.  So if a system existed where the user
6  with his or her finger selected a structure and
7  the system recognized that structure, that would
8  not infringe Claim 1 of the '647 patent and
9  consequently Claim 9 of the '647 patent?
10    MR. WALDEN:  Objection.  Incomplete
11  hypothetical.  Calls for legal conclusion.  Vague.
12    THE WITNESS:  Well, detecting includes
13  both recognizing and locating.
14    So in your question you said the user has
15  selected something, and then you talked about it
16  being recognized.  But if something is being
17  detected, part of detection is recognition.
18    So in the scenario you described, I think
19  with -- to the extent that you described that
20  hypothetical situation, there could be an
21  invention that would match your description
22  because the -- you didn't -- I don't think your
23  hypothetical said that the system was not locating
24  it.
25    I think you said that it was being selected

Page 153

1  by the user, but that it was being recognized by
2  the system.  And detection is consistent with
3  that, potentially.
4  BY MR. ERWINE:
5    Q.  But if a system only recognizes a
6  structure and does not locate it, then it would
7  not satisfy the detection aspect of Claim 1 of the
8  '647 patent; correct?
9    MR. WALDEN:  Objection.  Asked and
10  answered.  Calls for a legal conclusion.
11  Incomplete hypothetical.
12    THE WITNESS:  So what I've been trying
13  to -- thinking back, replaying the words from that
14  question compared to the one before, can you tell
15  me what was different?  I don't know how the
16  question changed.
17  BY MR. ERWINE:
18    Q.  I can repeat the question, but I can't
19  tell you how it's different.
20    A.  Okay.
21    (The following record was read back:
22    "Q  But if a system only recognizes a
23  structure and does not locate it then it
24  would not satisfy the detection aspect of
25  Claim 1 of the '647 patent; correct?")

Highly Confidential - ATTORNEYS' EYES ONLY

Page 154

1    MR. WALDEN:  Same objection.
2    THE WITNESS:  Well, I think I would need
3  a more specific hypothetical situation to answer
4  that accurately.
5    I'm not thinking -- I can't think of a
6  scenario where something is not locating the
7  structure.  It needs to know where the structure
8  begins and ends, for example, to do detection.
9  BY MR. ERWINE:
10    Q.  Back to Pandit.  In your view because
11  the user accents the text and then the system
12  recognizes the text, that does not read on Claim 1
13  of the '647 patent; is that right?
14    A.  Well, Pandit does not detect structures
15  as the term detection means in the '647 patent.
16  So that's a major reason why Pandit does not read
17  on the '647 patent.
18    Q.  And when you say, "Pandit does not
19  detect structures," what is your reason for saying
20  that?
21    MR. WALDEN:  Objection.  Asked and
22  answered.
23    THE WITNESS:  It merely recognizes --
24  Pandit merely recognizes text that has already
25  been located and accented manually by the user.

Page 155

1  BY MR. ERWINE:
2    Q.  So if the user locates the text and the
3  system then recognizes the text, that doesn't
4  satisfy the detection function of Claim 1 of the
5  '647 patent?
6    MR. WALDEN:  Objection.
7  Mischaracterizes the witness' prior testimony.
8  Calls for a legal conclusion.
9    THE WITNESS:  I believe I answered that
10  question already, which is it's possible detection
11  includes both locating and recognizing text.
12    And I think in the scenario that you
13  described, detection might be -- would be
14  consistent with that.
15    And the user, when they're selecting
16  something -- for example, if they selected a
17  detected structure, they're going to put their
18  finger or their mouse on a detected structure.  So
19  in that sense they are locating the structure.
20  But the structure needs to be detected by the
21  system, by the analyzer server.
22  BY MR. ERWINE:
23    Q.  Now, if you go back to paragraph 59 of
24  your report.
25    A.  Which report?

Page 156

1    Q.  The reply report.
2    And in particular, if you look at line 8 of
3  paragraph 59, it says, "The fact that Pandit
4  requires that the user manually select the entire
5  structure before Pandit attempts to recognize it
6  is a material distinction because it reverses the
7  steps of the claim limitation in a way that it
8  eliminates detection of the data structures as
9  required by the claims."
10    Do you see that?
11    A.  Yes.
12    Q.  What do you mean by the statement "it
13  reverses the steps of the claim limitation"?
14    What steps are you referring to?
15    A.  Well, really what this is all referring
16  to is I'm attempting to explain how early in the
17  paragraph I said that Pandit does not disclose
18  detecting structures at all, and the other
19  sentences between that and the sentence you just
20  mentioned help explain this.
21    But what I'm trying to say is that the user
22  is locating the text.  They are indicating where
23  the text begins and ends for the structure, and
24  then simply asking Pandit to recognize what it is
25  that they've accented.

Page 157

1    And that -- that's fundamentally different
2  from the '647, where it is finding and recognizing
3  the structures that automatically -- it's not
4  happening manually.
5    Q.  So for this phrase, when you say "it
6  reverses the steps of the claim limitation," are
7  you talking about the user interface claim
8  limitation?
9    A.  No.  I'm talking about the fact that
10  because the user has already manually indicated
11  through accenting what the structure -- where the
12  structure is exactly, that that's something --
13  that's the thing that makes it fundamentally
14  different from the '647 patent, because that's no
15  longer happening automatically.  It's happening
16  manually.
17    Q.  So, Dr. Mowry, in this sentence, which
18  claim limitation are you referring to?
19    A.  Which sentence?
20    Q.  The sentence that says, "The fact that
21  Pandit requires that the user manually select the
22  entire structure before Pandit attempts to
23  recognize it as a material distinction" --
24  sorry -- "recognize it is a material distinction
25  because it reverses the steps of the claim

Highly Confidential - ATTORNEYS' EYES ONLY

Page 158

1    limitation in a way that eliminates detection of
2    the data structures as required by the claims."
3        And I'll repeat my question. Based on that
4    sentence, which claim limitation are you referring
5    to?
6        A.  The analyzer server.
7        Q.  You're referring to the analyzer server
8    limitation.
9        Okay.  And how does it reverse the steps of
10   the analyzer server claim limitation?
11       A.  The steps are embedded in the part about
12   detecting structures, so it is not spelled out in
13   the '647 claim language.
14       But because the user is manually locating the
15   text before it is recognized, that is not
16   detecting structures as that happens in the '647
17   patent. Because knowing the boundary of the
18   structure is -- to know it accurately, you need to
19   have recognized what kind of structure it is.
20       For example, for a postal address, in order
21   to know the boundary of the postal address, I need
22   to know that it is a postal address and that it
23   begins with, say, a street number and ends way a
24   ZIP code and has a number of other things in
25   between.

Page 159

1        So the point I was trying to make is -- it
2    may not have been stated very clearly here in my
3    report, but because the user has manually already
4    accented the boundaries of the structure, that is
5    what makes it not detecting structures in the
6    context of the '647 patent.
7        Q.  So can you turn back to the '647 patent,
8    which is Exhibit 1.
9        A.  Yes.
10       Q.  And if you can turn to Claim 1.
11       A.  Yes.
12       Q.  And do you see on column 7, the analyzer
13   server limitation states, "An analyzer server for
14   detecting structures in the data, and for linking
15   actions in the detected structures"?
16       Do you see that?
17       A.  Yes.
18       Q.  And as you testified earlier, that's the
19   claim limitation that you're referring to in this
20   paragraph?
21       A.  Yes.
22       Q.  And my question is:  How does it reverse
23   the steps of the analyzer server claim limitation?
24       MR. WALDEN:  Objection. Asked and
25   answered.

Page 160

1        THE WITNESS:  I just -- I just answered
2    that question, which is the detecting structures
3    part.
4        In the Pandit patent, the user is first
5    manually locating the text, and then only after
6    that part is it giving it to the Pandit invention
7    to recognize what it is.
8        But in an analyzer server, the detecting
9    structure is both the recognizing and locating.
10   Those things are effectively happening at the same
11   time.
12       So it may not have been entirely clear when I
13   talked about reversing steps, but -- so it's
14   primarily just that it's not really detecting
15   structures in the sense of the analyzer server in
16   the '647 patent.
17   BY MR. ERWINE:
18       Q.  What is your understanding of the steps
19   that are set forth in the analyzer server
20   limitation?
21       A.  Well, just what's described in the claim
22   limitation.
23       Q.  So the claim limitation recites, "An
24   analyzer server for detecting structures in the
25   data, and for linking actions to the detected

Page 161

1    structures."
2        Is that right?
3        A.  That's what that limitation says, yes.
4        Q.  So is it your understanding that the two
5    steps in the analyzer server limitation are
6    detecting structures in the data and linking
7    actions to the detected structures?
8        A.  Well, if you're asking about what I was
9    referring to in paragraph 59 in my reply report, I
10   was not referring to those two things.
11       Q.  Which two things were you referring to?
12       MR. WALDEN:  Objection. Asked and
13   answered.  Mischaracterizes the witness' prior
14   testimony.
15       THE WITNESS:  So I was not -- as I said
16   before, what I was referring to in paragraph 59 is
17   the fact that detecting is -- in the '647 patent,
18   detecting structures happens automatically by the
19   software.  The software detects the structures.
20   It finds them and recognizes what they are.
21       But in Pandit, it doesn't happen that way.
22   The user first locates it and accents the
23   structure and then passes it to the recognition
24   software.
25       So I may have accidentally created a little

Highly Confidential - ATTORNEYS' EYES ONLY

Page 162

1  confusion when I said reversing steps, but what --
2  perhaps it's more clear to say the order in which
3  things occur in Pandit makes it very clear that
4  this is not the same thing as detecting structures
5  in the '647 patent.
6      That's what I'm attempting to say in that
7  sentence in my report.
8  BY MR. ERWINE:
9      Q.  So this is not talking about the two
10 steps that are set forth in the analyzer server
11 limitation?
12     A.  I'm talking about things that happen in
13 detection, because detection involves both
14 locating and recognizing text.
15     So those are the -- those are the steps, if
16 you will, that I'm talking about.
17     I'm not talking about detecting structures
18 and data versus linking actions to the detected
19 structures.  I'm just talking about detecting
20 structures.
21     Q.  So you're just talking about the first
22 part of the claim.
23     A.  The part about detecting structures.
24     Q.  And how does -- if you're only talking
25 about the first part of the analyzer server

Page 163

1  limitation, how is it that Pandit reverses the
2  steps of the analyzer server limitation, the first
3  part?
4      MR. WALDEN:  Objection.  Asked and
5  answered.
6      THE WITNESS:  Well, I think we've
7  covered this a couple of times now.
8      But as I said, I may not have chosen the best
9  word there when I talked about reversing the
10 steps.  Perhaps -- what I'm discussing is
11 detection includes two things, and it involves
12 locating and recognizing structures.
13     In the '647 patent, the analyzer server does
14 both of those things automatically in software.
15 But in Pandit, those two things are separated
16 where, first, the user manually accents the text,
17 and only after that's completed is it handed to
18 the software to recognize the accented text as a
19 potential structure.
20     I think that's the clearest way I can
21 describe it.
22     MR. ERWINE:  Let's mark as I think it's
23 Exhibit 8, this is the reply expert declaration of
24 Dr. Todd C. Mowry concerning U.S. Patent
25 5,946,647.

Page 164

1      (Mowry Exhibit 8 was marked.)
2  BY MR. ERWINE:
3      Q.  Dr. Mowry, do you recognize this
4  document?
5      A.  Yes.
6      Q.  Do you recognize that this is a
7  declaration that you submitted during the
8  preliminary injunction briefing for the '647
9  patent?
10     A.  Yes, that's correct.
11     Q.  And do you recall that Pandit was one of
12 the prior references that you considered as part
13 of this declaration?
14     MR. WALDEN:  Objection.
15 Mischaracterizes the witness' prior testimony.
16 Vague.
17     THE WITNESS:  Can you please repeat the
18 question.
19     (The following record was read back:
20     "Q   Do you recall that Pandit was one
21 of the prior references that you considered
22 as part of as this declaration?")
23     THE WITNESS:  Well, in this declaration
24 I'm discussing Pandit.  That's Section D --
25 sorry -- Section 6D.

Page 165

1  BY MR. ERWINE:
2      Q.  So Pandit was one of the references that
3  you addressed in this reply declaration?
4      A.  I talked about Pandit in this -- I
5  talked about Pandit in this reply declaration,
6  yes.
7      Q.  If you can turn to page 11 of the
8  declaration.
9      A.  Yes.
10     Q.  Do you see that?
11     And you see what's identified as No. 3 is
12 Pandit?
13     A.  Yes.
14     Q.  And you understand that that is the
15 Pandit patent we've been talking about that was
16 marked as Exhibit 7?
17     A.  Yes.
18     Q.  If you turn to page 12, do you see the
19 last bullet before No. 4, the Nokia reference?
20     Do you see that?
21     A.  Yes.
22     Q.  Do you see that it states, "Pandit does
23 not disclose a user interface enabling the
24 selection of a detected structure, because Pandit
25 requires that a user manually select text before

Highly Confidential - ATTORNEYS' EYES ONLY

Page 166

1  Pandit attempts to recognize that text as
2  performing to a particular class.  This reverses
3  the steps disclosed in the '647 patent in a
4  material and critical way"?
5       Do you see that?
6       A.  Yes.
7       Q.  And you understand that that bullet,
8  point is directed to the user interface
9  limitation; correct?
10      A.  No.  That's not correct.
11      Q.  So your position is that this bullet is
12  not directed to the user interface limitation.
13      A.  Yes.  That's what I just said.  This was
14 related to detecting structures, exactly what we
15 were just discussing a minute ago.
16      Q.  So is it the same pointing you're making
17 here as the point you were making in paragraph 59
18 of your reply report?
19      A.  Basically, yes.
20      Q.  And it's not your view that reversing
21 the steps in a material way was directed to doing
22 selection before detection?
23          MR. WALDEN:  Objection.
24 Mischaracterizes the witness' prior testimony.
25 Vague.

Page 167

1          THE WITNESS:  I'm having trouble
2  following the question.
3  BY MR. ERWINE:
4       Q.  I can ask it a little bit better.
5       So go back to your reply declaration.  And
6  you see that bullet point that references the user
7  interface limitation?
8       A.  Yes.
9       Q.  This is page 12 of your reply.
10      A.  Yes.
11      Q.  You see that?
12      And you see it says, "The user interface
13 enabling the selection of detected structure"?
14      A.  Yes.
15      Q.  And you understand that's a limitation
16 from the claim?
17      A.  Yes.
18      Q.  And you understand that based on the
19 plain meaning of that language, it entails
20 selection of a -- I'm sorry -- detection of a
21 structure prior to selection by the user?
22          MR. WALDEN:  Objection.  Vague.  Calls
23 for a legal conclusion.
24          THE WITNESS:  Can you repeat the
25 question again.  I'm sorry.

Page 168

1          (The following record was read back:
2          "Q   And you understand based on the
3  plain meaning of that language, it entails
4  selection of a -- I'm sorry -- detection of a
5  structure prior to selection by the user?")
6          THE WITNESS:  No.  What I was talking
7  about here is the word "detected."
8  BY MR. ERWINE:
9       Q.  I understand.
10         MR. WALDEN:  Excuse me.  Counsel, let
11 him finish his answer.
12         MR. ERWINE:  Sure.
13         THE WITNESS:  So I was not -- so the
14 answer to your question is no.  And I was just
15 trying to clarify, what I'm talking about here is
16 the detected -- the word "detected."
17 BY MR. ERWINE:
18      Q.  And what you're not talking about here
19 is that, in Pandit, selection occurs before
20 detection.
21         MR. WALDEN:  Objection.
22 Mischaracterizes the witness' prior testimony.
23         THE WITNESS:  There is no detection in
24 Pandit.
25

Page 169

1  BY MR. ERWINE:
2       Q.  And when you were saying that it
3  reverses the steps disclosed in the '647 patent,
4  you were not talking about the steps of selection
5  and detection.
6       A.  Pandit does not detect structures.
7       Q.  And just to understand what you're
8  saying here, when you say "reversing steps," you
9  were not talking about the steps of selection and
10 detection.
11      A.  I was not talking about that.  Partly,
12 first of all, Pandit does not detect structures.
13      And what I'm talking about is what we were
14 talking about just a few minutes ago regarding
15 the -- the issue is detecting structures.
16      And the fact that the user has to manually
17 locate the text and accent it before it gives it
18 to the Pandit software to try to recognize it,
19 that's the -- that's the important issue.  That's
20 the point I'm trying to make here.
21      Q.  Let's turn back to the messenger DA2
22 design-around.
23      A.  Okay.
24      Q.  Dr. Mowry, you understand that the DA2
25 messenger design-around is different from the

Highly Confidential - ATTORNEYS' EYES ONLY

Page 170

1  adjudicated functionality; correct?
2       MR. WALDEN: Objection. Vague.
3       THE WITNESS: The design-around is a set
4  of modifications that were made, yes. So the
5  products that have the design-around have -- there
6  are differences there compared to the products at
7  trial.
8  BY MR. ERWINE:
9       Q. And as one example, in the adjudicated
10 messenger products, Apple accused a context menu;
11 correct?
12      A. Yes.
13      Q. And you understand that that context
14 menu was removed by Samsung.
15      A. Yes. That specific context menu was
16 removed, yes.
17      Q. Now, if you turn to paragraph 80 of your
18 opening report.
19      A. Okay.
20      Q. In paragraph 80, you state that, "By its
21 DA2 modification, Samsung has simply substituted
22 the user experience of viewing a contextual pop-up
23 menu immediately after a short tap of a structure
24 messenger with viewing a resolver activity pop-up
25 menu immediately after a short tap of all relevant

Page 171

1  structures other than a phone number."
2       Do you see that?
3       A. Yes.
4       Q. Is it your understanding that Samsung
5  removed the context menu that was found in the
6  adjudicated products?
7       A. Yes.
8       Q. So what is your basis for stating that
9  Samsung has substituted the resolver activity menu
10 for the contextual menu?
11      A. What I said was they substituted the
12 user experience of viewing the contextual pop-up
13 menu immediately after a short tap. So they've
14 substituted the experience. By virtue of removing
15 that context menu, the experience has changed for
16 the user.
17      Q. And you understand that the resolver
18 activity menu that you referred to in that
19 paragraph was always there and it was part of the
20 adjudicated products?
21      MR. WALDEN: Objection. Vague.
22      THE WITNESS: Yes, but it previously was
23 not the first pop-up menu that one saw in
24 messenger. It used to be that previously they saw
25 the context menu before they would see --

Page 172

1  potentially see the resolver activity menu pop-up
2  window.
3  BY MR. ERWINE:
4       Q. And if you turn to paragraph 37 of your
5  opening report, what's shown in paragraph 37, in
6  particular I think it's labeled as JX35 and
7  50 on the right-hand side, that's the context menu
8  that was accused in the adjudicated products;
9  correct?
10      A. That's an illustration of it, yes.
11      Q. And it's your understanding that in the
12 adjudicated products, after a user selected one of
13 the items from that context menu, assuming that
14 the user had not previously set an activity as a
15 default, then the resolver activity menu would
16 appear.
17      A. Yes. That's correct.
18      Q. You did not accuse the tap-to-dial
19 functionality in DA2 of infringement for the
20 purposes of ongoing royalties; correct?
21      A. Yes. That's correct.
22      Q. And you understand that the resolver
23 activity menu appears as part of that tap-to-dial
24 in certain circumstances; correct?
25      A. Well, tap-to-dial, I mean, I believe --

Page 173

1  my understanding is that as the phones are
2  shipped, there is only one dialer pre-installed on
3  the phone. So there's not -- I believe there's
4  not a resolver activity menu because there is not
5  more than one option for dialing.
6       Q. So your basis is because there's not
7  more than one option for dialing on the factory
8  installed phones, then the resolver activity menu
9  will not appear.
10      MR. WALDEN: Objection.
11      THE WITNESS: Well, I'm not stating an
12 opinion about the patent, but rather just my
13 recollection is that the way the phone works is
14 that you only see the resolver activity menu if
15 there's more than one activity that can handle --
16 that can handle -- when you call start activity
17 with an implicit intent, if there's more than one
18 option for activity, then you may see a resolver
19 activity menu.
20      But if there's only one option, my
21 understanding is it does not show you the menu.
22 So I believe that as the phone is shipped with a
23 single dialer on it, you would not see the
24 resolver activity menu.
25

Highly Confidential - ATTORNEYS' EYES ONLY

Page 174

1  BY MR. ERWINE:
2      Q.  And that was the basis for why you did
3  not accuse the dial function?
4      A.  When -- the dial function in which
5  application?
6      Q.  In the messenger application.  It's part
7  of DA2.
8      A.  Yeah.  That's right.  Yes.
9      Q.  And back to the other functionalities
10  that you did accuse, you accused, for example,
11  email; is that right?
12     A.  Yes.
13     Q.  You accused URLs?
14     A.  I think so.  I can look up the list, but
15  I believe I did.
16     Q.  In performing the first part of the test
17  in determining whether more than colorable
18  differences were present or are present in DA2,
19  you focused on the resolver activity menu?
20         MR. WALDEN:  Objection.  Asked and
21  answered.
22         THE WITNESS:  Well, I focused on the
23  functionality that was described in the trial that
24  was implementing the infringing features on the
25  phone in their entirety.

Page 175

1      I wasn't only -- I may not be following your
2  question exactly, but I wasn't only looking at
3  resolver activity.  I was looking at the entire
4  process for how detected structures and linked
5  actions were handled.
6  BY MR. ERWINE:
7      Q.  And did you focus on the resolver
8  activity menu as part of that analysis?
9      A.  That was part of it, yes.
10         MR. ERWINE:  Take a quick break?
11         MR. WALDEN:  Sure.
12         THE VIDEOGRAPHER:  The time is 2:31 p.m.
13  We're off the record.
14         (Recess from 2:31 p.m. to 2:42 p.m.)
15         THE VIDEOGRAPHER:  Here begins disc
16  No. 3 in today's deposition of Todd Mowry.  The
17  time is 2:42 p.m.  We're back on the record.
18  Please proceed.
19  BY MR. ERWINE:
20     Q.  Dr. Mowry, I would like to turn now to
21  the browser DA1-B design-around?
22     A.  Okay.
23     Q.  And you understand the DA1-B
24  design-around for browser is different from the
25  adjudicated functionality; correct?

Page 176

1      A.  Yes.
2      Q.  As one example of the change, you
3  understand that in the adjudicated functionality
4  for browser, the context menu will appear as a
5  result of a long press; correct?
6      A.  Yes.
7      Q.  And now in the DA1-AB design-around, if
8  a user uses a long press, you now get that generic
9  context menu?
10     A.  Right.
11     Q.  And as you testified earlier, it's your
12  opinion that the generic context menu does not
13  infringe Claims 1 and 9 of the '647 patent?
14     A.  Correct.
15     Q.  In the adjudicated browser application,
16  the short tap function caused a single default
17  action to be performed; correct?
18     A.  Yes.
19     Q.  And as we talked about earlier, that
20  functionality was not accused by Apple?
21     A.  That's my recollection, yes.
22     Q.  And as we talked about earlier, it's
23  your understanding that in some instances that
24  functionality included the resolver activity menu
25  after user selected a detected structure?

Page 177

1      A.  Yes.
2      Q.  Now, if we turn to paragraph 150 of your
3  opening report, in paragraph 150 you're talking
4  about the DA1-AB browser design-around; correct?
5      A.  Yes.  I think you just said DA1-AB.  I
6  think it's DA1-B.
7      Q.  Correct.  Sorry.  Thank you for the
8  clarification.
9      And in paragraph 150 starting at line 4, you
10  state that, "The detection function in DA1-AB
11  [sic] products starts immediately upon finger down
12  and is called even before finger up occurs."
13     Do you see that?
14     A.  Yes.
15     Q.  And then you state that, "The user is
16  therefore selecting a detected structure."
17     A.  Yes.
18     Q.  What is your basis for the position that
19  the user is selecting a detected structure in that
20  instance?
21     A.  Well, the user at this point has not
22  lifted their finger up.  They put their finger
23  down, and the detection is beginning once the
24  finger is down.  So it is in the process -- it is
25  in the process of detecting the structure even

Highly Confidential - ATTORNEYS' EYES ONLY

Page 178

1 before the user's finger comes up.
2      Q.   Is it your opinion that the detection
3 routines are complete when the user removes his or
4 her finger from the screen?
5      A.   They may or may not be for the short
6 tap.
7      Q.   You don't know?
8      A.   It would depend on the timing of how
9 fast the short tap was.
10      Q.   So depending on the duration of the
11 short tap is what would guide your view in terms
12 of whether detection is complete when the user
13 removes his or her finger from the screen?
14      A.   Yes.  That's correct.
15      Q.   And what evidence are you relying on for
16 that position?
17      A.   Well, I'm relying on my expertise in the
18 field of how computers -- computer systems work
19 and software, and so on, and also having looked at
20 the code, from my analysis of the code.
21      Q.   And is there anything in the code that
22 provides evidence that the detection routines are
23 complete at the time a user removes his or her
24 finger from the screen?
25      A.   As I said, they may or may not be

Page 179

1 complete for a short tap.  If you have a very
2 short, short tap, then it's very unlikely that
3 they would have completed.  If it's a longer short
4 tap that's close to the duration of a long tap,
5 then it's very likely that the detection had
6 completed.
7      So it either -- it may complete in some cases
8 and not in others.  It just depends on the timing
9 relative to how long detection takes.
10      Q.   And those are your guesses or
11 estimations.  You don't have empirical proof of
12 that happening; correct?
13           MR. WALDEN:  Objection.
14 Mischaracterizes the witness' prior testimony.
15           THE WITNESS:  No.  I've examined the
16 phones in operation, and I know that the detection
17 definitely -- the detection finishes before the
18 long press timer goes off and a short press -- a
19 short tap can be within a tiny, tiny fraction of a
20 second, just under the duration of a long press.
21      There's some cutoff threshold, and so a short
22 tap that's just under that threshold would also be
23 extremely likely to have -- it would be extremely
24 likely the detection had completed by that point
25 as well.

Page 180

1 BY MR. ERWINE:
2      Q.   So when you say "extremely likely," you
3 don't know for sure.
4           MR. WALDEN:  Objection.
5           THE WITNESS:  I think it's -- I have not
6 conducted empirical measurement, if that's what
7 you're asking, but given my expertise in how
8 hardware and software works, I think it's very --
9 as I said, it's extremely likely that detection
10 has completed.
11 BY MR. ERWINE:
12      Q.   You indicated that you hadn't performed
13 the empirical testing.
14      Could you have done that testing?
15      A.   Potentially, with the right resources,
16 yes.
17      Q.   What resources --
18      A.   I didn't think that that was necessary
19 though because I could observe the phones in
20 operation.
21      Q.   And what resources would you need?
22      A.   Well, the other thing that I'd like to
23 point out is that during the trial, I also
24 described that the detection completed before the
25 long press timer timed out, and that position was

Page 181

1 not challenged by Samsung.
2      In terms of how you time software, that
3 usually involves some kind of instrumentation
4 software that allows you to go in and time things.
5 So I was not attempting to do something like that.
6      But I don't think that's necessary because it
7 was clear that the phones operated that way.
8      Q.   Let's go back to our discussion of the
9 resolver activity menu.  And this is for the
10 messenger application.
11      And I'd like to talk a little bit about the
12 messenger -- the context menu in the adjudicated
13 messenger application.
14      In the adjudicated messenger application, the
15 context menu appears after a short tap; is that
16 right?
17      A.   Yes.
18      Q.   And that context menu appears every time
19 a short tap is performed on a detected structure;
20 correct?
21      A.   Yes.  That's correct.
22      Q.   And the context menu in the adjudicated
23 products presents multiple actions; correct?
24      A.   Multiple linked actions, yes.
25      Q.   And if we use the email address as an

Highly Confidential - ATTORNEYS' EYES ONLY

Page 182

1  example, one of those actions that's presented is
2  to send email; correct?
3      A.  Yes.  That's what I recall, yes.
4      Q.  And another action that's presented is
5  to add to context.
6      A.  Yes.  I believe so.
7      Q.  And each of those actions -- each of
8  those functions was called an action, as that term
9  is recited in Claim 1 of the '647 patent, for
10  purposes of your infringement analysis at trial;
11  correct?
12      MR. WALDEN:  Objection.  Vague.
13      THE WITNESS:  Well, send email, send
14  message and add to contacts are all descriptions
15  in the user interface for -- these are
16  descriptions of linked actions.  And the linked
17  action is the launching of an action with the
18  detected structure passed to it as a parameter.
19      So these are descriptions presented to the
20  user that describe for a human -- well, it's a
21  description of the actions, the linked actions.
22  BY MR. ERWINE:
23      Q.  And you relied on these linked actions
24  for purposes of Claim 9 of the '647 patent for the
25  adjudicated products; correct?

Page 183

1      A.  Yes.  Yeah.  For this example of a
2  detected structure, yes.
3      Q.  So Claim 9, as we talked about earlier,
4  requires a pop-up menu of the linked actions;
5  correct?
6      MR. WALDEN:  Objection.  The claim
7  speaks for itself.
8      THE WITNESS:  I just want to just
9  double-check the wording.  I think they're worded
10  exactly the same, "requires a pop-up menu of the
11  linked actions."
12      I think that's what you just said, yes.
13  BY MR. ERWINE:
14      Q.  And for the email address, for an email
15  address that is a detected structure, send email
16  and add to contacts, those are two of the linked
17  actions that you relied on for purposes of Claim 9
18  of the '647 patent.
19      A.  Yes.  That's correct.
20      Q.  Now, with respect to the newly accused
21  resolver activity menu, your understanding is that
22  that menu only appears in certain instances after
23  a user short taps on a detected structure;
24  correct?
25      MR. WALDEN:  Objection.  Asked and

Page 184

1  answered.
2      THE WITNESS:  Yes.  As we discussed
3  earlier, it appears if the user has not already
4  set a default activity for handling whatever
5  action it is.
6  BY MR. ERWINE:
7      Q.  And if you turn to paragraph 82 of your
8  opening report, do you see that?
9      A.  Yes.
10      Q.  And in that paragraph you state,
11  "Further, like the infringing Galaxy S III, the
12  DA2 products further display a pop-up menu to the
13  user when he or she makes a short tap on the
14  highlighted structure in the message other than
15  for telephone numbers."
16      Did I say that correctly?
17      A.  Yes.
18      Q.  And then you state, "In the infringing
19  Galaxy S III, the pop-up menu displayed
20  immediately after a short tap was the contextual
21  pop-up menu, while in the DA2 devices, the pop-up
22  menu displayed immediately after a short tap is
23  the resolver activity pop-up menu."
24      Is that right?
25      A.  Yes.

Page 185

1      Q.  And then you show a visual comparison of
2  the context menu from the adjudicated products and
3  the resolver activity menu; is that right?
4      A.  Yes.
5      Q.  Now, as an initial matter you agree that
6  these two menus are visually different.
7      MR. WALDEN:  Objection.  Vague.
8      THE WITNESS:  They're both pop up menus,
9  but they -- yeah, they do not look exactly the
10  same.  That's correct.
11  BY MR. ERWINE:
12      Q.  And as we talked about in the
13  adjudicated products, the left menu appears every
14  time a user selects a detected structure; correct?
15      MR. WALDEN:  Objection.  Asked and
16  answered.
17      THE WITNESS:  In the messaging
18  application, yes.
19  BY MR. ERWINE:
20      Q.  And in the adjudicated products, again,
21  that resolver activity menu on the right appears
22  after a user selects a detected structure;
23  correct?
24      MR. WALDEN:  Objection.  Vague.
25      I think you said the "adjudicated product."

Highly Confidential - ATTORNEYS' EYES ONLY

Page 186

1    MR. ERWINE:  I did.
2  BY MR. ERWINE:
3    Q.  I'll restate it.
4    In the adjudicated products, the menu on the
5  right appears -- and thank you for the
6  clarification.  Let me start over again.
7    In the adjudicated products, the menu on the
8  right appears after a user selects an action from
9  the context menu.
10    A.  It may appear after the user makes a
11  selection from the context menu on the left from
12  that context menu, yes.
13    Q.  So that will appear unless the user has
14  previously chosen his preferred application;
15  correct?
16    A.  That's correct.
17    Q.  Now, in the DA2 messenger design-around,
18  this right menu only appears sometimes.
19    MR. WALDEN:  Objection.  Asked and
20  answered.
21    THE WITNESS:  Yes.  We discussed that
22  before.
23    As the phone shifts, for example, the first
24  time that a user would short tap on a detected
25  structure, they would see it because they've not

Page 187

1  yet set a default.  And they may never set a
2  default, so they may always see it, or if they do
3  set a default then they won't see it again.
4  BY MR. ERWINE:
5    Q.  So if the user sets a default the first
6  time or if the user sets a preference the first
7  time, it will never see the resolver activity menu
8  again.
9    A.  In that case, it would just be the first
10  time.  They would see it the first time.
11    Q.  Whereas, the context menu from the
12  adjudicated products appears every single time
13  there's a short tap.
14    A.  That's correct.
15    Q.  So if the context menu appears every
16  time, but the resolver activity menu appears only
17  once, that's not a significant difference between
18  the adjudicated products and the designed-around
19  products in your view; correct?
20    MR. WALDEN:  Objection.  Incomplete
21  hypothetical.  Vague.
22    THE WITNESS:  Well, in my report I talk
23  about why this is not colorably different.  So
24  there's -- there's a non-trivial amount of
25  discussion around that matter.

Page 188

1    But one issue is that the -- there's both the
2  issue of like from a technical standpoint of
3  making that change that's very simple, and also
4  the user is still being presented with a pop-up
5  menu with a set of multiple choices and each
6  choice is a linked action.  So...
7  BY MR. ERWINE:
8    Q.  But maybe -- I just had a very specific
9  question.
10    A.  Okay.
11    Q.  And that was: If the context menu in
12  the adjudicated products appears every time, but
13  in the instance where the resolver activity menu
14  appears only once, in your view, that's not a
15  significant difference between the adjudicated
16  products and the designed-around products;
17  correct?
18    MR. WALDEN:  Same objection.
19    THE WITNESS:  Well, you're presupposing
20  a particular scenario in terms of how the user
21  behaves.  The user could also see the resolver
22  activity menu every time.  It depends on whether
23  they choose to hit the "Always" button or not.
24  BY MR. ERWINE:
25    Q.  And if you look at that menu again, the

Page 189

1  right menu in your paragraph 82, you see that it
2  states -- in what you're referring to as the
3  pop-up menu, it states, "Complete action using."
4    Do you see that?
5    A.  Yes.
6    Q.  And it's your understanding when it
7  says, "Complete action using," that's a reference
8  to the default single action that's associated
9  with the selected structures selected by the user
10  in the DA2 messenger product; correct?
11    MR. WALDEN:  Objection.  Vague.
12    THE WITNESS:  In the DA2 design-around,
13  yes, there is a default action such as send email
14  for an email address, and these activities that
15  are being presented in the resolver activity
16  pop-up are choices for an activity for -- for
17  choices of email clients that might be launched
18  with that detected email address.
19  BY MR. ERWINE:
20    Q.  So when it says, "Complete action
21  using," that's referring to the single default
22  action that's associated with the type of
23  structure that's detected in the messenger
24  application for DA2.
25    MR. WALDEN:  Objection.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 190

1      THE WITNESS:  Well, it's associated,
2  yes, with the fact that if you -- if you short tap
3  on an email address, it's -- then it's not asking
4  you if you want to send email or add to contacts.
5  It's already decided that you're going to send
6  email.
7      So now the question is more specifically do
8  you want to send email with Gmail or send email
9  with AT&T email, I think it says.  It's a choice
10  of which particular email client you want to use
11  to send the email.
12  BY MR. ERWINE:
13      Q.  So in the DA2 messenger design-around,
14  instead of giving the user the choice of which
15  action to select, the system has already
16  predetermined which action will be performed.
17      MR. WALDEN:  Objection.
18  Mischaracterizes the witness' prior testimony.
19      THE WITNESS:  No.  That's not correct.
20  The things that are presented in the resolver
21  activity pop-up menu are linked actions.  Each of
22  those choices is a linked action.  They're simply
23  more specific linked actions than what was shown
24  in the original context menu that was removed.
25

Page 191

1  BY MR. ERWINE:
2      Q.  I think you're jumping ahead, so let me
3  go back.
4      What I'm saying is that in the adjudicated
5  products, after a user selected a detected
6  structure via short tap, the user was provided a
7  context menu of possible actions to be performed;
8  correct?
9      A.  Yes.
10      Q.  Whereas, in the DA2 messenger
11  application, when the user selected a detected
12  structure, the user was not provided that same
13  context menu with a list of potential actions to
14  be performed; correct?
15      A.  The user is not being provided with that
16  same context menu, but they are being provided
17  with a pop-up menu with linked actions in it.
18      Q.  But in the DA2 messenger design-around,
19  for example, for email, the user is not given the
20  option to add contacts; correct?
21      A.  That's correct.
22      Q.  The system has predetermined which
23  action is performed that was previously made
24  available in that context menu.
25      MR. WALDEN:  Objection.

Page 192

1      THE WITNESS:  The software has already
2  been set up to send email with some email client
3  when you short tap on a detected email address.
4  So now the pop-up menu that's presented with the
5  resolver activity is related to which particular
6  email client do you want to use to perform the
7  linked action.
8  BY MR. ERWINE:
9      Q.  So instead of the user being able to
10  choose which action he or she wants performed on
11  the detected structure, the system has
12  predetermined which action that is that was
13  previously presented in the context menu.
14      A.  No.  That -- I disagree with that.  The
15  user is still being presented with choices of
16  linked actions in the resolver pop-up menu.
17      Q.  I'm not even getting to the resolver
18  activity menu.  So my point is before you even get
19  there, you agree that in the adjudicated products,
20  if a user short taps on a detected structure, then
21  it gets a list of contacts -- I'm sorry.  It gets
22  a contacts menu with a list of possible actions
23  that can be performed on the detected structure;
24  correct?
25      A.  Yes.  That's correct.

Page 193

1      Q.  And the user can select things like send
2  email or add to contacts?
3      A.  Yes.  That's correct.
4      Q.  Whereas, in the DA2 messenger
5  design-around, when the user short taps on a
6  detected structure, whatever that function is that
7  was predetermined by the user is implemented by
8  the system before you get to resolver activity.
9      MR. WALDEN:  Objection.  Vague.
10      THE WITNESS:  Well, the phone is no
11  longer giving the user the option to, for example,
12  add to contacts.  It's already been -- the
13  designer of the phone software has already decided
14  that send email is -- generically is what's going
15  to happen.
16      So then the pop-up menu for resolver activity
17  is about which specific activity to send email
18  with.
19      It's true that add to contacts is no longer
20  being presented to the user as a choice on the
21  short tap.
22  BY MR. ERWINE:
23      Q.  And, in fact, on the short tap the user
24  isn't presented any choices that were previously
25  made available in the context menu in the

Highly Confidential - ATTORNEYS' EYES ONLY

Page 194

1  adjudicated products.
2      MR. WALDEN:  Objection.
3      THE WITNESS:  Well, the previous -- send
4  email was a -- send email with your preferred mail
5  client was an action in the adjudicated phone.
6  And the -- now what they're being presented with
7  in the resolver activity pop-up menu is a more
8  specific version of the same basic choice, which
9  is it's going to be -- the choice is going to be
10 sending email to that email address, but you have
11 the choice of which specific email client you want
12 to use for that.
13 BY MR. ERWINE:
14     Q.  But you had that same choice in the
15 adjudicated products; right?
16     MR. WALDEN:  Objection.  Vague.
17     THE WITNESS:  The resolver activity
18 could appear in the adjudicated products, yes, but
19 you were first seeing the context menu, so that's
20 what I focused on.
21 BY MR. ERWINE:
22     Q.  So in the adjudicated products you're
23 given a choice via the contacts menu of which
24 action you would like to be performed on the
25 detected structure; correct?

Page 195

1      A.  Yes.
2      Q.  Whereas, in the DA2 messenger
3  design-around, you're no longer given that choice
4  because when you select detected structure, the
5  user has already predetermined which action will
6  be performed on the detected structure; correct?
7      MR. WALDEN:  Objection.
8      THE WITNESS:  The user hasn't
9  predetermined that.  The designer of the system
10 has decided that to the extent that you offer
11 choices now, the choices are related to which
12 email client to use.
13     But you said the user has predetermined that.
14 It's not something that the user gets to choose.
15 The user can't choose on a short tap that they'd
16 really like to add to contacts.  That's -- the
17 designer of the phone software has removed that
18 choice.
19 BY MR. ERWINE:
20     Q.  Got it.
21     And so this later choice of which activity to
22 perform the action is unchanged from the
23 adjudicated products and the DA2 messenger
24 products.
25     MR. WALDEN:  Objection.

Page 196

1  Mischaracterizes the witness' prior testimony.
2      THE WITNESS:  Well, as I said earlier,
3  the resolver activity pop-up menu could appear in
4  the adjudicated products, but it appeared -- but
5  you would always, for messenger, first see the
6  context menu.  So that's why I focused on that.
7      You can -- you could have -- you could see
8  this resolver activity menu after it in some cases
9  as well.
10 BY MR. ERWINE:
11     Q.  And one of the differences is that you
12 would always get the context menu first in the
13 adjudicated products where the user could choose
14 an action to be performed on the detected
15 structure; whereas now, as you said, the system
16 has predetermined that action and so you
17 consequently, in some instances, go right to the
18 resolver activity menu.
19     MR. WALDEN:  Objection.  Vague,
20 Mischaracterizes the witness' prior testimony.
21     THE WITNESS:  You said the system has
22 chosen the activity.  So the -- did you say the
23 activity or action?
24 BY MR. ERWINE:
25     Q.  Action.

Page 197

1      A.  Well, the action is going to be sending
2  email to the email address, and the user
3  interface, if it appears for resolve activity,
4  will be presenting a choice of linked actions
5  where you get to choose the specific client that
6  you want to use for performing the action.
7      Q.  But before you get to the resolver
8  activity menu, depending on the type of structure
9  that is selected by the user, the system has
10 predetermined which action will be performed on
11 the detected structure.
12     And as an example for email, the system has
13 predetermined that the action will be send email;
14 correct?
15     MR. WALDEN:  Objection.  Asked and
16 answered.
17     THE WITNESS:  So the '647 patent does
18 not describe -- there's not a required degree of
19 specificity for a linked action.
20     So the original context menu had a certain
21 set of linked actions, like send email or add to
22 contacts.  The resolver activity has a more
23 specific set of options for sending email, for
24 example, but all of these are linked actions.
25     So in your question, you're seeming to say

Highly Confidential - ATTORNEYS' EYES ONLY

Page 198

1 that -- suggest that actions are only the things
2 that appear in the context menu.  But while those
3 are linked actions, it's also the case that the
4 things that appear in resolver activity are linked
5 actions, they're just more specific linked
6 actions.
7        So the -- in the design-around 2, the
8 programmer -- the designers of the phone software
9 have eliminated some choices.
10       You no longer have the choice of add to
11 contacts.  Your set of choices is now narrowed to
12 sending email, but potentially choosing which
13 client to use.
14 BY MR. ERWINE:
15       Q.  And, in fact, the choices that were
16 presented in the context menu, those choices are
17 no longer available to the user as part of the DA2
18 messenger design-around; correct?
19           MR. WALDEN:  Objection.  Asked and
20 answered.
21           THE WITNESS:  Well, those specific
22 linked actions are no longer presented to the
23 user.  They're now presented with -- if they see
24 the resolver activity pop-up window, they'll be
25 seeing a different set of linked actions, which is

Page 199

1 sending email, but which of these activities would
2 you like to send the email.
3 BY MR. ERWINE:
4       Q.  So is it your position with respect to
5 the DA2 messenger design-around that the pop-up
6 menu of the linked actions in Claim 9 is the
7 choices that are included in the resolver activity
8 menu?
9           MR. WALDEN:  Objection.
10          THE WITNESS:  The pop-up menu -- I think
11 I described this in my report.
12       The -- in design-around 2 for messenger, the
13 pop-up menu that's referred to in Claim 9 is the
14 pop-up menu that we see for resolver activity.
15       The things that are presented in resolver
16 activity are descriptions of linked actions.  And
17 then the linked actions are not -- these are
18 just -- this is a user interface.  It's a
19 description of a linked action.  The actual linked
20 action is to launch an activity and to pass the
21 detected structure to it as an argument.
22 BY MR. ERWINE:
23       Q.  So if you turn to paragraph 128 of your
24 report, your opening report, and if you're there,
25 you see the sentence that begins on page 60, "In

Page 200

1 each instance, the resolver activity pop-up menu
2 enables the selection of the linked action by
3 allowing the user to select precisely which
4 application to use to perform the action."
5       When you say "the action," what action are
6 you referring to?
7       A.  Well, I perhaps could have worded that
8 more precisely.
9       What I'm referring to is sending email
10 with -- the actions that are presented in the
11 pop-up menu are send email, which email, send
12 email with various mail clients to where the
13 detected email address is passed to that client as
14 an argument.
15       So that's what's the user is selecting here
16 with the pop-up menu.
17       Q.  Okay.
18       A.  These are more specific than just send
19 email, but these are still linked actions.
20       Q.  Okay.  So for purposes of your claim
21 read, Claim 9, that requires a pop-up menu of the
22 linked actions, what are you identifying as "the
23 linked actions" in DA2 messenger?
24       A.  Well, it depends on the structure.  For
25 an email address, it's sending email with the

Page 201

1 various email clients.  Each of those is presented
2 as a separate choice that the user gets to select.
3       So the user is selecting among multiple
4 choices, and each of the choices that they're
5 selecting is a linked action.
6       Q.  For the pop-up menu of linked actions
7 for DA2 messenger, are you pointing to the pop-up
8 menu that appears in the resolver activity menu?
9           MR. WALDEN:  Objection.  Vague.  Asked
10 and answered.
11          THE WITNESS:  Yes.  Maybe I'm missing
12 something, but I thought we talked about that
13 before.  Yes.
14 BY MR. ERWINE:
15       Q.  Let's see if we can clarify it.  If you
16 turn to page 130 of your report, your opening
17 report.
18          MR. WALDEN:  Paragraph?
19          THE WITNESS:  Paragraph?
20 BY MR. ERWINE:
21       Q.  Paragraph 130.  Sorry.  Page 61.  And
22 you see starting at line 6, it says, "The resolver
23 pop-up menu satisfies Claim 9 for the same
24 reasons, i.e., it is a pop-up menu that enables
25 the linking of actions by displaying linked

Highly Confidential - ATTORNEYS' EYES ONLY

Page 202

1    actions (e.g., send email using Gmail, send email
2    using email)."
3        Do you see that?
4        A.  Yes.  I see that.
5        I think there's a typo there where it says
6    "enables the linking of actions."  But anyway,
7    maybe I meant to say selecting of linked actions.
8        But keep going, yes.
9        Q.  Okay.  So is it your view that the
10   choices that are included in the resolver activity
11   menu that you've identified here, "send email
12   using Gmail, send email using email," those are
13   the linked actions in Claim 9 of the '647 patent?
14       A.  Yes.
15       Q.  When you state that each of those
16   choices is a different -- I'm sorry.  I jumped
17   ahead.
18       Let's go to paragraph 18 of your reply
19   report.  Tell me when you're there.
20       A.  I'm there.
21       Q.  And you see in paragraph 18, starting at
22   line 17, it says, "Instead, it presents multiple
23   choices in the form of applications that can be
24   used to perform an action such as launching a web
25   browser."

Page 203

1        Do you see that?
2        A.  Yes.
3        Q.  And you say, "Each of those choices is a
4    different linked action that opens separate
5    applications."
6        Do you see that?
7        A.  Yes.
8        Q.  When you say that, "Each of those
9    choices is a different linked action that opens
10   separate applications," are you referring to each
11   choice as the linked action recited in Claims 1
12   and 9?
13       A.  Yes.
14       Q.  Turn to a little bit later in that same
15   paragraph, and starting at line 19, you say, "A
16   person of ordinary skill in the art would
17   understand that the resolver activity pop-up menu
18   thus presents a menu of the linked actions even if
19   Claim 9 is construed contrary to Claim 1 to
20   require more than one action per structure."
21       Do you see that?
22       A.  Yes.
23       Q.  What do you mean by that?
24       A.  Can you clarify?  I mean, I mean what
25   I -- what it says there.

Page 204

1        Q.  So you previously testified that the
2    pop-up menu in the resolver activity menu includes
3    the linked actions of Claim 9; correct?
4        A.  Yes.
5        Q.  And here you say, "A person of ordinary
6    skill in the art would understand that the
7    resolver activity pop-up menu thus presents a menu
8    of the linked actions even if Claim 9 is construed
9    contrary to Claim 1 to require more than one
10   action per structure."
11       A.  Yes.
12       Q.  I'm trying to understand what you mean
13   by that sentence.
14       A.  Well, what I mean is that the Federal
15   Circuit Court constructed the term "linking
16   actions to structures" to mean one or more actions
17   per structure.
18       And my understanding is that Dr. Jeffay or
19   Samsung put forward the opinion that Claim 9 would
20   require more than one action and not just one or
21   more actions in the pop-up menu.
22       And so that's what I'm referring to here.
23       Q.  But you've already testified that the
24   pop-up menu -- the resolver activity menu includes
25   multiple linked actions; correct?

Page 205

1        A.  Yes.  That's what I -- that's what -- I
2    think I'm missing something.  But yes, I think
3    that's right.
4        Q.  So then why are you saying that even if
5    Claim 9 is construed contrary to Claim 1 to
6    require more than one action per structure?
7        In other words, you've already identified in
8    your analysis multiple linked actions within the
9    resolver activity pop-up menu.  So why would it
10   matter if Claim 9 was construed differently from
11   Claim 1?
12       MR. WALDEN:  Objection.  Vague.
13       THE WITNESS:  From your question, I
14   don't see what the misunderstanding is.  I mean, I
15   don't see the problem that you want me to address
16   and answer.
17       It sounds like we're in agreement, but I
18   don't know what you want me to say exactly.
19   BY MR. ERWINE:
20       Q.  When you say that -- when you say, "A
21   person of ordinary skill in the art would
22   understand the resolver pop-up menu, thus presents
23   a menu of the linked actions," we understand what
24   you've referred to.
25       That is the resolver activity menu and you're

Highly Confidential - ATTORNEYS' EYES ONLY

Page 206

1    referring to those choices to complete the action
2    as the linked actions; correct?
3         A.  Right.
4         Q.  You then say, "even if Claim 9 is
5    construed contrary to Claim 1 to require more than
6    one action per structure."  Okay?
7         A.  Yes.
8         Q.  So let's break this down.
9         You're saying in this sentence that Claim 1
10   could be construed to require a single action in a
11   single structure, right?
12        A.  No.  Claim 1 requires multiple detected
13   structures.  It requires one or more linked
14   actions for the detected structures.
15        Q.  And you're saying here, though, that --
16   you're referring to the situation where Claim 1
17   could be construed to require more than one action
18   per structure; correct?
19        MR. WALDEN:  Objection.  Vague.
20        THE WITNESS:  Well, the court already
21   construed that it's one or more actions per
22   detected structure.  And, as I said, that would
23   be -- the construction from the Federal Circuit
24   Court was given to the jury in the trial, and they
25   were instructed to use that as the claim

Page 207

1    construction.
2         So the correct construction is one or more
3    actions per detected structure.
4         And what I'm saying here is that,
5    hypothetically, if one rejected that construction,
6    which is not the appropriate thing to do because
7    that is the rule that we live by that
8    construction, then if one wanted to get into an
9    argument about whether the pop-up menu contained
10   multiple linked actions or not, I was just
11   addressing that issue here, saying that the pop-up
12   menu does contain multiple linked actions if one
13   were to argue that that was an issue, which it is
14   not because the court has already construed the
15   term.
16   BY MR. ERWINE:
17        Q.  Is there any time in your infringement
18   analysis where you're pointing to only a single
19   linked action for purposes of the DA2 messenger
20   design-around?
21        A.  Not that I can think of.
22        Q.  Now, going back to paragraph 82 of your
23   report, your opening report -- do you see that?
24        A.  Yes.

Page 208

15        Q.  So what happens when you select "send
16   email" from the context menu in the adjudicated
17   products is different than when you select a
18   choice from the resolver activity menu in the DA2
19   messenger products.
20        MR. WALDEN:  Objection.
21   Mischaracterizes the witness' prior testimony.
22        THE WITNESS:  That's incorrect.  The
23   start activity -- the start activity that is
24   called -- that I talked about during the trial,
25   where -- which is called after the user has made a

Page 209

1    choice from that original context menu, which has
2    now been removed.

Page 210

9   Q.  Let's go to paragraph 38 of your opening
10  report.  And you see in paragraph 38 what's
11  referred to as JX50?
12  A.  Yes.
13  Q.  And this is a demonstrative that you
14  used at the 2014 trial; correct?
15  A.  Yes.
16  Q.  So this is a description of the
17  adjudicated messenger products; correct?
18  A.  Well, that's right.  The picture here,
19  JX50, actually happens to be illustrating the web
20  browser, I believe, but it's the same path.

Page 211

1   A.  Yes.  This was a demonstrative prepared
2   for the jury, and there's only so much space on a
3   screen.
4     So in my expert report from the trial, I go
5   into more detail about this whole pathway.  And in
6   Dr. Jeffay's expert report, he also -- I believe
7   also described this pathway.
8     So there's more detail than what is shown
9   here, but this is a high-level summary of some of
10  these steps.
11  Q.  And as a high-level summary for the
12  adjudicated products, it goes through the steps of
13  what's shown here, the context IMPL, the intent,
14  and the package manager.  Those three boxes are
15  shown that are performed to ultimately get to the
16  performance of the selected action; is that right?
17  A.  That's the point of the -- yeah, the
18  picture.  That's correct.
19

Page 212

Page 213

Highly Confidential - ATTORNEYS' EYES ONLY

Page 214

Page 215

Page 216

2       Q.  Turn to paragraph 43 of your reply
3   report.
4       A.  Yes.
5       Q.  And you see the sentence starting at
6   line 3, "Dr. Jeffay appears to argue that the
7   resolver activity pop-up menu apparently cannot be
8   covered by claim limitations 1(c)(2) or 9 because
9   it is invoked after start activity which I have
10   identified as the action."
11       Do you see that?
12       A.  Yes.

Page 217

Highly Confidential - ATTORNEYS' EYES ONLY

Page 218

Page 219

Page 220

Page 221



Highly Confidential - ATTORNEYS' EYES ONLY

Page 222

Page 223

Page 224

Page 225

15      Q.   Now, with respect to the action
16   processor limitation of Claim 1 of the '647
17   patent, you are relying on the same action
18   processor infringement analysis as you supplied
19   for the adjudicated products in this 2017
20   analysis; correct?
21      A.   Yes, before I had also mentioned resolve
22   activity.  Yes, that's correct.
23      Q.   Are you relying on the same action to be
24   performed by the action processor from a context
25   menu, or are you relying on a different action

Highly Confidential - ATTORNEYS' EYES ONLY

## Page 226

1  from the resolver activity menu in terms of what
2  is performed by the action processor?
3      MR. WALDEN: Objection. Vague.
4      THE WITNESS: Well, in the design-around
5  product there's not a context menu. The action
6  begins after -- the action that's described to the
7  user in the user interface is, for example, send
8  an email with specific mail clients.
9      So in the design-around products, in DA2
10  messenger, the action is to send email with a
11  specific email client that the user chooses.
12  BY MR. ERWINE:
13      Q. So the performance of that action by the
14  action processor is after the user makes the
15  choice from the resolver activity menu; correct?
16      MR. WALDEN: Objection.
17      THE WITNESS: Yes.
18  BY MR. ERWINE:
19      Q. And that's different from a user making
20  a choice from the context menu; correct?
21      A. Those are both linked actions. It's
22  just that the one -- the resolver -- the one after
23  the resolver activity menu selection has been made
24  is a more specific linked action.

## Page 227

## Page 228

1  BY MR. ERWINE:
2      Q. So in the design-around, in your view,
3  the action processor is performing the action
4  based on the selection from the resolver activity
5  pop-up menu.
6      A. Yes.
7      Q. Turn to paragraph 45 of your reply
8  report. And, in particular, if you look at line 4
9  on page 15, it states, "In other words, the action
10  processor software has not been changed and still
11  continues to be covered by the claims."
12      Do you see that?
13      A. Yes.
14      Q. You say, "That has not changed based on
15  the change in the design of the phones to display
16  a resolver activity pop-up menu first rather than
17  a context menu."
18      Do you see that?
19      A. Yes.
20      Q. But in terms of your infringement read,
21  you're no longer relying on the contextual pop-up
22  menu to satisfy the user interface and pop-up menu
23  and linked actions limitation of the claims;
24  right?
25      MR. WALDEN: Objection. Asked and

## Page 229

1  answered.
2      THE WITNESS: That's correct. A context
3  menu has been removed.
4  BY MR. ERWINE:
5      Q. So you're now relying on the resolver
6  activity menu and the choices within that menu as
7  the linked actions.
8      MR. WALDEN: Objection.
9      THE WITNESS: That is the pop-up menu
10  that contains linked actions, yes.
11  BY MR. ERWINE:
12      Q. So to meet the claim language under your
13  contention, the action processor must be programs
14  that perform the selected action, which is
15  choosing the application on the detected
16  structure; correct?
17      MR. WALDEN: Objection.
18      THE WITNESS: You said "choosing the
19  application on the detected structure"? That's
20  not correct.
21      An action is launching an application with a
22  detected structure as an argument, so the choosing
23  part is not -- that's not the action in this case.
24  BY MR. ERWINE:
25      Q. And what you're saying is that when the

Highly Confidential - ATTORNEYS' EYES ONLY

Page 230

1  user chooses the application from the resolver
2  activity menu, that's a launching of the
3  application.
4      A.  No.  That's a choice in the user
5  interface.  There's more work to be done to
6  actually do the launching after that point.
7      Q.  Okay.  But you're relying on the
8  resolver activity pop-up menu as the menu of
9  linked actions; right?
10      MR. WALDEN:  Objection.  Asked and
11  answered.
12      THE WITNESS:  Yes.  I think I said that
13  before, yes.
14  BY MR. ERWINE:
15      Q.  When the user makes that choice of that
16  application, then that is the action that is
17  performed on the detected structure; correct?
18      A.  The user has now chosen a linked action
19  to be performed on the detected structure, and
20  then software gets executed to do the launching of
21  that application with that detected structure as
22  an argument.
23      Q.  Now, that's different from performing
24  the selected action in the adjudicated products;
25  correct?

Page 231

1      MR. WALDEN:  Objection.
2      THE WITNESS:  When you say "the selected
3  action," I'm not exactly sure what that means.
4  BY MR. ERWINE:



Page 232

4      Q.  In fact, it's a different action.  The
5  action that you pointed to in the adjudicated
6  products is one of the actions that was included
7  in the context menu, whereas the actions you're
8  pointing to in the DA2 messenger application is
9  one of the choices in the resolver activity menu?
10      MR. WALDEN:  Objection.  Vague.
11  Mischaracterizes the witness' prior testimony.
12      THE WITNESS:  The level of specificity
13  is different between the adjudicated products and
14  the design-around products, but they are linked
15  actions.  It's still the case that they are linked
16  actions in the design-around products.
17  BY MR. ERWINE:
18      Q.  Dr. Mowry, you agree that the claim
19  construction for action processor requires that
20  the action must be performed on the detected
21  structure; correct?
22      A.  Yes.  That's correct.
23      Q.  And, in fact, you've testified that the
24  action processor must operate on the detected
25  structure; correct?

Page 233

1      MR. WALDEN:  Objection.
2      THE WITNESS:  I don't recall whether
3  I've used that exact word.  I may have.
4  BY MR. ERWINE:
5      Q.  Is it your view that choosing an
6  application to perform an action is selecting an
7  action to be performed on the detected structure?
8      A.  I didn't completely follow that
9  question.
10      Q.  Yeah, that's okay.  I can restate it.  I
11  didn't say it very clearly.
12      When a particular action was chosen from the
13  context menu in the adjudicated products, that was
14  an action that was performed on the detected
15  structure; correct?
16      A.  Yes.
17      Q.  For example, an email, a detected email,
18  one of the actions in the context menu was to send
19  email; correct?
20      A.  I wouldn't describe it that way.  The --
21  well, okay, let me be more specific.
22      The thing that was shown in the menu I think
23  said "send email," but to be more technical or
24  more precise about it, the action from the
25  perspective of the '647 patent is to launch an

Highly Confidential - ATTORNEYS' EYES ONLY

Page 234

1  email client and pass to it the detected email
2  address as an argument so that it pops up that it
3  will cause the client to appear and to have that
4  filled in already.
5      So it's true that the user interface
6  describes it as send email.  But to be clear, it
7  is launching the activity with -- and passing to
8  it the detected structure that is the linked
9  action.  It's not actually completing the task of
10 composing and sending off the email message, for
11 example.
12     Q.  So in your view, the identification of
13 the action as send email is not to send email?
14        MR. WALDEN:  Objection.  Vague.
15 Mischaracterizes the testimony.
16        THE WITNESS:  When you click "Send
17 email," what happens is your email client is
18 launched.  It is opened up, and the detected email
19 address is filled in as the person you're sending
20 the email to.  That's what "send email" means.
21     What I meant is it does not mean to literally
22 press "send" at that point and send off a message.
23 The user has not composed the message yet.  They
24 have not filled in the subject line and so on.
25     So if in the sense that -- "send email" does

Page 235

1  not mean actually send it off to somebody's in-box
2  because it hasn't been written yet.  So what the
3  linked action -- linked actions are to launch
4  another activity and pass to it the detected
5  structure so that it pops up with that detected
6  structure already populated into the application.
7  BY MR. ERWINE:
8      Q.  In the adjudicated products, if the user
9  selects "send email" from the context menu, does
10 the system then send an email?
11        MR. WALDEN:  Objection.  Vague.
12        THE WITNESS:  I think I just described
13 this.
14     But "send email" -- a better way to think
15 about it is that the user wants to send email.
16 What they want to do -- they have to do more work
17 on their own to complete the overall task of
18 sending email.  They have to write an email
19 message, for example.
20     So they're not meaning complete -- don't send
21 this is out of my outbox yet, I have to still
22 write the message.
23     Similarly, "add to contacts," if I have
24 somebody's phone number or email address and I
25 want to add it to my contacts, I have to add some

Page 236

1  more information, for example, who is this
2  exactly.  I don't have their name or maybe I'm
3  adding it to an existing contact.
4      So there's always -- in all of these cases,
5  there's -- well, in most of these cases there's
6  more work for the person to do once the
7  application or activity is launched, but the point
8  is to take the detected structure and to pass it
9  as an argument to that activity when it launches
10 so that it will show up pre-populated into the
11 application.
12     So "send email" means I want to send email.
13 Please open an email client for me and put this
14 email address into it as the "to" address.  That's
15 what it means.
16 BY MR. ERWINE:
17     Q.  In the adjudicated products, if the user
18 has previously selected the preferred Gmail -- I'm
19 sorry -- the preferred email application as
20 always, when the user after that point selects
21 "send email" from the context menu, is that
22 different from the situation where a user selects
23 a choice from the resolver activity menu?
24        MR. WALDEN:  Objection.  Vague.
25 Incomplete hypothetical.

Page 237

1          THE WITNESS:  Well, it's different in
2  the sense that the resolver activity menu won't be
3  displayed in that case, so that part makes it
4  different.
5      It's still the case, though, that once you
6  get past that point, the code path moving forward
7  is actually the same.  But it is different -- to
8  answer your question, it is different because that
9  resolver activity pop-up menu would not be
10 displayed to the user in the first scenario you
11 mentioned.
12 BY MR. ERWINE:

[BLACK REDACTED BLOCK]

20         MR. ERWINE:  Why don't we take a break.
21         THE VIDEOGRAPHER:  The time is 4:05 p.m.
22 We are off the record.
23         (Recess from 4:05 p.m. to 4:23 p.m.)
24         THE VIDEOGRAPHER:  The time is 4:23 p.m.
25 We're back on the record.  Please proceed.

Highly Confidential - ATTORNEYS' EYES ONLY

Page 238

1    BY MR. ERWINE:
2        Q.  Dr. Mowry, if you could turn back to
3    paragraph 38 of your opening 2017 report.  And I'm
4    referring, in particular, to the demonstrative we
5    were looking at, JX50.
6        A.  Yes.
7        Q.  You had included earlier a statement
8    that the -- for the DA2 messenger design-around
9    that Samsung had substituted the resolver activity
10   menu for the context menu.
11       Do you recall that portion of your report?
12       A.  I said the user experience had changed.
13   They now see -- they don't see the context menu
14   first.  They don't see it at all anymore.  So they
15   will see the resolver activity first -- resolver
16   activity menu first.

Page 239

Page 240

Page 241

21   BY MR. ERWINE:
22       Q.  And the menu you're relying on to
23   satisfy the pop-up menu of Claim 9 is different
24   for the DA2 messenger application than it is for
25   the menu you relied on for the adjudicated

Highly Confidential - ATTORNEYS' EYES ONLY

Page 242

1  products; correct?
2        MR. WALDEN:  Objection.  Asked and
3  answered.
4        THE WITNESS:  Yes.
5  BY MR. ERWINE:
6        Q.  And that menu that you rely on for the
7  DA2 messenger application only appears in certain
8  instances, whereas the menu you relied on in the
9  adjudicated products appears all the time;
10  correct?
11        MR. WALDEN:  Objection.  Asked and
12  answered.
13        THE WITNESS:  Yeah.  We've discussed
14  that before, yes.
15  BY MR. ERWINE:
16        Q.  I think earlier in the day I had asked
17  you about whether you recall reviewing some code.
18        A.  Can you be more specific?
19        Q.  Yeah.  In the beginning of the day I
20  pointed you to -- I believe it's paragraph 6 of
21  your reply report.
22        In particular, it's the sentence that begins
23  on line 4 that says, "I also reviewed certain
24  source code produced by Samsung in connection with
25  Dr. Jeffay's rebuttal report."  And then it gives

Page 243

1  identification of code.
2        Do you see that?
3        A.  Yes.
4        Q.  And I think you said you weren't sure.
5  You think you looked at it in D.C., but it would
6  help if you could see the code.
7        MR. WALDEN:  Objection.
8        THE WITNESS:  So I think that what this
9  is probably about is the resolver, resolve
10  activity code.  And I was sent a listing of that
11  code.  I think that's what that's referring to.
12        I mean, I did review code, the resolver
13  activity code that was sent to me.
14  BY MR. ERWINE:
15        Q.  Okay.  And was that code the -- you say
16  it was sent to you?
17        A.  Yes.
18        Q.  It was not code that was made available
19  in D.C.?
20        A.  I don't know if it was made available in
21  D.C., but that's code that was sent to me.
22        Q.  And do you recall how much code was sent
23  to you?
24        When I say "how much," I mean was it a box?
25  Was it an envelope?

Page 244

1        A.  It was a box.
2        Q.  And do you recall when you received that
3  code?
4        A.  I -- the date I don't recall.  I'm
5  pretty -- actually, I think it was a Saturday.  I
6  believe it was a Saturday.  I don't remember which
7  Saturday.  It was the Saturday before I -- it's in
8  my reply report.  It was before I sent this
9  report.
10        Q.  Okay.  And how much time did you spend
11  reviewing that code?
12        A.  I don't recall off the top of my head.
13  I -- I don't recall off the top of my head.
14        I reviewed it to the point where I was
15  satisfied with my understanding of the code, but I
16  don't remember how many hours that was.
17        MR. ERWINE:  I don't have any further
18  questions.
19        MR. WALDEN:  No questions.
20        MR. ERWINE:  Thank you very much.
21        THE VIDEOGRAPHER:  If there are no
22  further questions, this concludes the deposition.
23  The time is 4:32 p.m.  We're off the record.
24        MR. MCKEE:  The transcript needs to be
25  designated Highly Confidential - Attorneys' Eyes

Page 245

1  Only.
2        (Whereupon, at 4:32 p.m., the taking of
3  the instant deposition ceased.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Highly Confidential - ATTORNEYS' EYES ONLY

Page 246

```
1    COMMONWEALTH OF PENNSYLVANIA )
2    COUNTY OF ALLEGHENY        )  SS:
3            C E R T I F I C A T E
4         I, Ann Medis, Registered Professional
5    Reporter, Certified Livenote Reporter and Notary
6    Public within and for the Commonwealth of
7    Pennsylvania, do hereby certify:
8         That TODD C. MOWRY, PH.D., the witness
9    whose deposition is hereinbefore set forth, was
10   duly sworn by me and that such deposition is a
11   true record of the testimony given by such
12   witness.
13        I further certify the inspection,
14   reading and signing of said deposition were not
15   waived by counsel for the respective parties and
16   by the witness.
17        I further certify that I am not related
18   to any of the parties to this action by blood or
19   marriage and that I am in no way interested in the
20   outcome of this matter.
21        IN WITNESS WHEREOF, I have hereunto set
22   my hand this 7th day of November, 2017.
23
24   _____
25              Notary Public
```

Page 247

```
1    NAME OF CASE:
2    DATE OF DEPOSITION:
3    NAME OF WITNESS:
4    Reason Codes:
5        1. To clarify the record.
6        2. To conform to the facts.
7        3. To correct transcription errors.
8    Page _____ Line _____ Reason _____
9    From _____ to _____
10   Page _____ Line _____ Reason _____
11   From _____ to _____
12   Page _____ Line _____ Reason _____
13   From _____ to _____
14   Page _____ Line _____ Reason _____
15   From _____ to _____
16   Page _____ Line _____ Reason _____
17   From _____ to _____
18   Page _____ Line _____ Reason _____
19   From _____ to _____
20   Page _____ Line _____ Reason _____
21   From _____ to _____
22   Page _____ Line _____ Reason _____
23   From _____ to _____
24
25         _____
```

Page 248

```
1         J U R A T
2
3    I,         , do hereby certify under
4    penalty of perjury that I have read the foregoing
5    transcript of my deposition taken on         ;
6    that I have made such corrections as appear noted
7    herein in ink, initialed by me; that my testimony as
8    contained herein, as corrected, is true and correct.
9
10   DATED this ____ day of _____, 20  ,
11   at _____,      .
12
13
14
15
16
17   _____
18   SIGNATURE OF WITNESS
19
20
21
22
23
24
25
```

Highly Confidential - ATTORNEYS' EYES ONLY

**A**

**a.m (9)**
1:23 4:12 66:9,10,10
66:12 90:17,17,20
**ability (3)**
5:14 25:8,12
**able (5)**
18:15 21:17 138:21
147:11 192:9
**abstraction (1)**
219:4
**accent (7)**
144:6,7 145:17,20,21
146:15 169:17
**accented (8)**
144:4 145:18 148:13
150:9 154:25
156:25 159:4
163:18
**accenting (9)**
139:11 140:1,16,19
140:22 141:6
142:18 150:7
157:11
**accents (7)**
140:25 141:15 147:6
147:14 154:11
161:22 163:16
**access (2)**
18:14 21:12
**accidentally (1)**
161:25
**accurately (2)**
154:4 158:18
**accuse (13)**
91:22 94:7 98:15 99:4
99:5,15 100:16
102:12 114:16
116:25 172:18
174:3,10
**accused (16)**
45:19 93:23,25 99:18
99:19,24 102:4
104:4 107:19
114:21 170:10
172:8 174:10,13
176:20 183:20
**accusing (9)**
98:19 101:12,16,20
102:10,15 115:7
117:5,8
**action (201)**
19:8 53:25 54:13 61:2
61:13,17,20 62:1

63:3,7,10 64:5
65:11,16,18,20
66:25 67:2,8,25
68:4,14 69:17 70:10
70:18,20,21,22 71:3
71:12,16 82:8,20,24
83:14,25 84:3 85:21
86:16 87:6,23 88:17
89:2,7,15 90:1 91:6
91:9 93:23 94:3,4,5
94:8,24 95:24 97:9
97:11,16 98:7,13,16
99:2,6,24 100:6,9
100:13 101:3,15,21
102:5,21 103:2
107:16 108:14
109:1 114:4,8,9,9
114:11,14 125:12
176:17 182:4,8,17
184:5 186:8 188:6
189:3,7,8,13,20,22
190:15,16,22
191:23 192:7,10,12
194:5,24 195:5,22
196:14,16,23,25
197:1,6,10,13,19
199:19,20 200:2,4,5
200:5 201:5 202:24
203:4,9,11,20
204:10,20 205:6
206:1,6,10,17
207:19 208:6,8
209:8 210:24
211:16 212:9,19
213:5,7,23 214:1,2
214:3,10 215:5,21
216:10 223:12,15
223:23 225:15,17
225:23,24,25 226:2
226:5,6,10,13,14,24
228:3,3,9 229:13,14
229:21,23 230:16
230:18,24 231:3,6
231:18 232:4,5,19
232:20,24 233:6,7
233:12,14,24 234:9
234:13 235:3
239:17,25 240:9
241:1,3,9 246:18

61:4,21 62:2,13,19
62:22 63:11,23,24
64:3,15,15,16 65:2
65:8,19,22,24 66:4
66:22 67:14 68:25
69:20 78:2,12,16,23
79:5,14,16,17,17,21
79:22 80:3,11,22
81:2,5,9,13 82:10
82:11,16 83:4,9,17
83:18,22 84:19 85:2
85:4,7,16,22 86:3
86:16,21,23 87:16
87:25 89:4 90:7
93:12,25 94:18,23
98:12 100:11,23,25
101:5 103:15
124:12,22 125:14
125:19,23 126:3,6
126:11 127:2,4,11
127:15,20 129:4
131:12,17 159:15
160:25 161:7
162:18 175:5
181:23,24 182:1,7
182:16,21,21,23
183:4,11,17 190:21
190:23 191:7,13,17
192:16,22 197:4,21
197:24 198:1,3,5,6
198:22,25 199:6,16
199:17 200:10,19
200:22,23 201:6,25
202:1,6,7,13 203:18
204:3,8,16,16,21,25
205:8,23 206:2,14
206:21 207:3,10,12
212:15 214:5,7
226:21 228:23
229:7,10 230:9
232:6,7,15,16
233:18 235:3 241:8
241:12,14,19
**active (1)**
84:22
**activities (3)**
108:17 189:14 199:1
**activity (213)**
33:1,9 46:25 47:10,18
70:18 91:3,18 97:6
106:24 107:23
108:1,6,13,15,22,25
109:9,11,16,20,22
170:24 171:9,18

172:1,14,15,23
173:4,8,14,15,16,18
173:19,24 174:19
175:3,8 176:24
181:9 182:17
183:21 184:4,23
185:3,21 187:7,16
188:13,22 189:15
189:16 190:21
192:5,18 193:8,16
193:17 194:7,17
195:21 196:3,8,18
196:22,23 197:3,8
197:22 198:4,24
199:7,14,16,20
200:1 201:8 202:10
203:17 204:2,7,24
205:9,25 208:3,4,7
208:13,13,18,23,23
209:2,4,5,8,9,11,12
209:18,25 210:2,4,7
211:21,23 212:6,18
212:21,25 213:3,6
213:12,19,23 214:3
214:3,6,9,15,22
215:2,4,19,20 216:7
216:9,15,19 217:2,3
217:6,12,17,24,25
218:5,7,9,12,17,19
220:17,18,19,21,22
221:1,5,6,10,14,20
221:22 222:1,4,5,7
223:2,3,13,14 224:6
224:13 225:22
226:1,15,23 227:3,4
227:6,13,17,18,21
228:4,16 229:6
230:2,8 231:14,19
231:22 232:9 234:7
235:4 236:7,9,23
237:2,9,14,15,16
238:9,15,16,19
239:4,6,13,19 240:3
240:10,13,16,18,23
241:7 243:10,13
**actual (3)**
114:13 151:17 199:19
**add (17)**
25:16 56:4 182:5,14
183:16 190:4
191:20 193:2,12,19
195:16 197:21
198:10 231:7
235:23,25,25

**adding (2)**
57:22 236:3
**addition (6)**
82:7 85:20 87:22 88:3
91:1 97:4
**additional (3)**
31:24 56:1,4
**address (29)**
147:17 149:6,10,19
149:25 150:2,6
158:20,21,22
181:25 183:14,15
189:14,18 190:3
192:3 194:10 197:2
200:13,25 205:15
225:2,4 234:2,19
235:24 236:14,14
**addressed (1)**
165:3
**addresses (2)**
103:12 147:22
**addressing (1)**
207:11
**adjective (1)**
61:7
**adjudicated (96)**
8:18 9:3,14 10:5,7,12
10:21 11:3,6,19
34:17 36:15 37:21
40:17 41:5 104:3
107:12 110:6
116:23 117:12
123:23 170:1,9
171:6,20 172:8,12
175:25 176:3,15
181:12,14,22
182:25 185:2,13,20
185:25 186:4,7
187:12,18 188:12
188:15 191:4
192:19 194:1,5,15
194:18,22 195:23
196:4,13 208:10,16
210:17 211:12,20
212:17,22 215:25
219:2,24 220:6
221:4,23 222:17
223:20 224:7,14
225:3,19 227:1,15
230:24 231:5,11
232:2,5,13 233:13
235:8 236:17
238:21 239:2,24

Highly Confidential - ATTORNEYS' EYES ONLY

240:15 241:3,10,16
241:25 242:9
**afternoon (1)**
132:16
**afterward (2)**
128:4 227:24
**ago (11)**
14:7 35:12 67:10 69:3
92:19 135:3,4
136:16 166:15
169:14 239:16
**agree (16)**
75:24 77:12 94:12
107:4 110:4,11,15
111:18 116:6 120:6
126:14 185:5
192:19 207:25
216:23 232:18
**agreed (1)**
7:19
**agreement (1)**
205:17
**ahead (7)**
37:2 124:25 126:24
129:23 130:13
191:2 202:17
**al (1)**
4:6
**allegation (2)**
117:15 124:2
**alleged (5)**
7:9 44:12 82:8 85:21
87:23
**allegedly (2)**
82:11 83:17
**alleges (1)**
18:7
**ALLEGHENY (1)**
246:2
**alleging (2)**
71:2,11
**allow (1)**
24:15
**allowing (2)**
128:7 200:3
**allows (1)**
181:4
**alternate (2)**
20:6 21:11
**Alto (1)**
2:12
**AMERICA (3)**
1:10,11 2:20
**amount (3)**

27:14 131:10 187:24
**analogous (1)**
64:22
**analysis (26)**
16:24 17:3 23:22
34:25 41:16 42:14
43:14 45:14,14
46:18 50:15 51:16
76:21 77:7,17,19,21
121:12 175:8
178:20 182:10
205:8 207:18
225:18,20 239:11
**analyze (2)**
18:15 48:15
**analyzed (2)**
43:24 47:19
**analyzer (53)**
53:8,11,17 55:16 56:7
56:13,15,18 58:1,7
58:9,15,17 60:7,13
60:15,17,18,23
62:13,17 64:16 65:6
65:8,14,22 67:13
79:22 80:1,8,9,12
80:20 81:1 95:20,25
151:1 155:21 158:6
158:7,10 159:12,13
159:23 160:8,15,19
160:24 161:5
162:10,25 163:2,13
**Android (4)**
109:8,10,25 209:24
**Ann (3)**
1:20 4:17 246:4
**answer (20)**
15:19 18:16 23:25
30:8,23,24 39:10
43:12 50:20 100:21
126:22 138:1,10
151:14,22 154:3
168:11,14 205:16
237:8
**answered (40)**
11:22 15:23 16:19
30:9 63:5,13 64:8
69:23 74:14 88:20
90:3 100:19 111:25
112:7 113:10 120:4
120:11 151:21
153:10 154:22
155:9 159:25 160:1
161:13 163:5
174:21 184:1

185:16 186:20
197:16 198:20
201:10 219:16
220:1 222:20 224:1
229:1 230:11 242:3
242:12
**anymore (1)**
238:14
**anyway (2)**
98:11 202:6
**apologies (1)**
136:24
**apparently (1)**
216:7
**appear (29)**
20:5,9 22:8 24:22
27:13,18 62:12
108:5,8,10,23 109:2
109:17 124:19
125:25 131:9,25
172:16 173:9 176:4
186:10,13 194:18
196:3 198:2,4
221:15 234:3 248:6
**appearance (1)**
212:25
**appeared (5)**
7:15 27:8 51:11 104:4
196:4
**appearing (3)**
20:7 27:9,16
**appears (35)**
21:16 24:19 53:18
60:15 95:24 104:9
106:25 109:21,23
116:18 126:25
131:22 132:5
144:10 172:23
181:15,18 183:22
184:3 185:13,21
186:5,8,18 187:12
187:15,16 188:12
188:14 197:3 201:8
216:6 217:1 242:7,9
**Apple (18)**
1:4 3:17 4:5,24 30:15
66:20 78:7,14 91:21
92:1,12 94:7 95:13
96:11 99:18 133:14
170:10 176:20
**Apple's (5)**
3:12 40:5,15 41:3
74:22
**Apple/HTC (1)**

34:20
**Apple/Samsung (2)**
52:18 69:9
**application (64)**
9:3,4 10:22 11:10
71:3,12 91:4,13,19
91:23 93:18,24 94:9
97:7 103:25 104:2,8
106:13 107:12,15
107:22 108:4,20
109:5,14,14,24
116:25 121:10
135:25 137:9 174:5
174:6 176:15
181:10,13,14
185:18 186:14
189:24 191:11
200:4 208:5 215:4
215:21 216:20
217:16 229:15,19
229:21 230:1,3,16
230:21 232:8 233:6
235:6 236:7,11,19
240:2 241:14,24
242:7
**applications (6)**
49:10 103:19 130:15
202:23 203:5,10
**applied (9)**
36:24 37:9 51:1,5,15
51:21 70:4 72:15
103:18
**applies (1)**
52:9
**apply (2)**
45:12 87:25
**applying (1)**
65:13
**appropriate (2)**
85:5 207:6
**approximately (1)**
4:12
**April (1)**
66:19
**area (1)**
40:12
**argue (4)**
38:23 114:3 207:13
216:6
**argued (1)**
86:18
**argues (2)**
59:6 70:17
**arguing (2)**

18:19,22
**argument (12)**
116:15 139:24 199:21
200:14 207:9 212:5
212:6 227:19
229:22 230:22
234:2 236:9
**Argumentative (1)**
145:6
**art (22)**
51:22 59:23 63:22
64:3 68:21 72:16
81:17 133:8,15,20
134:3 135:2 136:15
137:21 138:8,14,16
138:20 152:4
203:16 204:6
205:21
**articulate (1)**
6:25
**asked (49)**
11:21 15:22 16:18
34:21 35:10 36:18
39:19,25 42:19,25
43:22 63:4,12 64:8
69:22 74:13 88:19
90:2 100:18 102:13
102:16,25 111:24
112:6 113:9 120:3
120:10 149:24
153:9 154:21
159:24 161:12
163:4 174:20
183:25 185:15
186:19 197:15
198:19 201:9
208:11 219:15,25
223:25 228:25
230:10 242:2,11,16
**asking (10)**
73:22 102:2,10 126:2
127:6 156:24 161:8
180:7 190:3 231:9
**aspect (3)**
43:16 153:7,24
**assert (2)**
138:15,19
**asserted (1)**
81:7
**asserting (1)**
17:17
**assessment (1)**
143:1
**assist (1)**

Highly Confidential - ATTORNEYS' EYES ONLY

33:2
**associated (4)**
8:5 189:8,22 190:1
**association (1)**
4:17
**assume (1)**
5:23
**assumed (1)**
22:1
**assuming (3)**
88:21 148:11 172:13
**assumption (2)**
28:12 31:14
**AT&T (1)**
190:9
**attach (1)**
106:3
**attempt (1)**
144:9
**attempting (4)**
150:1 156:16 162:6
    181:5
**attempts (6)**
139:18 141:11 147:7
    156:5 157:22 166:1
**attention (3)**
9:16 15:12 42:24
**attorney (2)**
42:1 139:2
**attorneys (2)**
99:22 102:11
**Attorneys' (2)**
1:16 244:25
**August (1)**
118:17
**author (4)**
15:4 25:23 28:10 30:2
**authors (1)**
21:6
**automatic (2)**
150:17,23
**automatically (4)**
157:3,15 161:18
    163:14
**available (9)**
8:7,9 16:22 27:15
    191:24 193:25
    198:17 243:18,20
**Avenue (3)**
2:17,21 4:16
**aware (24)**
6:18,22 29:6 32:2
    37:18 38:13 78:14
    78:18,21,24,25 79:2

88:25 89:24 92:1,24
99:17,19,20,23
129:24 130:7 136:9
141:14

_____
**B**
**back (67)**
8:15 10:11,19 11:18
    13:16 15:25 27:10
    31:19 35:8,8 37:13
    38:21 39:13 44:10
    54:16 55:16 61:10
    61:23,24 62:24
    66:12 67:11 70:2
    72:7 73:1,3 75:15
    77:24 80:18 81:15
    88:24 90:20,23 93:1
    96:16 98:8 107:11
    110:3 121:22 124:5
    125:6 126:24 130:6
    132:15 133:3
    148:16 149:17
    153:13,21 154:10
    155:23 159:7
    164:19 167:5 168:1
    169:21 174:9
    175:17 181:8 191:3
    207:22 214:24,24
    218:21 223:7
    237:25 238:2
**ban (3)**
35:4,13,21
**bar (1)**
148:12
**based (36)**
16:23 17:3 26:15,24
    28:24 33:22 34:1,3
    41:18 44:12 68:5,19
    79:25 80:19 84:4,10
    85:13,14,22 87:15
    94:24 96:18 97:22
    98:3 101:6 113:15
    148:3 149:9,18
    158:3 167:18 168:2
    213:22 228:4,14
    237:18
**basic (1)**
194:8
**Basically (1)**
166:19
**basing (1)**
63:17
**basis (14)**
8:1 14:19 16:15 67:5

111:7 113:5 129:18
137:19 139:24
140:17 171:8 173:6
174:2 177:18
**Bean (15)**
73:13 93:24 94:8
    107:11,15 108:4,19
    108:20 109:13,23
    129:19,24 130:8,19
    132:4
**began (1)**
221:4
**beginning (4)**
98:11 143:13 177:23
    242:19
**begins (14)**
90:18 95:25 112:5
    113:2,6,18 114:11
    154:8 156:23
    158:23 175:15
    199:25 226:6
    242:22
**behalf (5)**
2:2,14 4:20,24 46:5
**behaves (3)**
22:24 121:1 188:21
**believe (31)**
5:24 7:11,24 22:2
    23:20 35:18,20
    43:23 63:20 69:15
    69:24 75:12,18
    76:18 102:15
    103:21 113:11
    121:15 131:1
    133:13 155:9
    172:25 173:3,22
    174:15 182:6
    210:20 211:6 213:2
    242:20 244:6
**best (1)**
163:8
**better (3)**
14:2 167:4 235:14
**beyond (1)**
42:6
**binding (5)**
133:21 134:6,11
    137:20 138:9
**bit (7)**
107:14 167:4 181:11
    203:14 221:16
    222:3 227:11
**blanket (1)**
57:3

**blood (1)**
246:18
**bold (2)**
149:10,20
**book (1)**
89:21
**Boston (1)**
2:8
**boundaries (1)**
159:4
**boundary (2)**
158:17,21
**box (9)**
12:10 143:2,16 144:2
    147:24 148:18,20
    243:24 244:1
**boxes (3)**
211:14 219:21,21
**break (8)**
58:23 66:7 90:9,11
    132:9 175:10 206:8
    237:20
**briefing (1)**
164:8
**bring (1)**
93:24
**browser (69)**
49:10 73:14 91:4,13
    91:19,22 93:17,24
    94:8 97:7 103:18,25
    104:2,8 105:3
    106:13,22 107:1,11
    107:15,21 108:4,19
    108:20 109:13,23
    110:4,5,12,16
    114:16,20 115:7,17
    115:25 116:11,18
    116:24,25 117:4,12
    117:14 118:8 119:2
    119:8,21 120:7,14
    121:10 124:16
    125:8 126:16
    127:25 128:10
    129:8,20,25 130:8
    130:19 131:3,24
    132:4 175:21,24
    176:4,15 177:4
    202:25 210:20
**bubbles (2)**
219:11 223:1
**bullet (4)**
165:19 166:7,11
    167:6
**burden (20)**

37:24 38:7,11,17 39:5
    39:15 40:2,5,16
    41:3,9 42:15 43:4,7
    44:3,6,19 46:12,12
    46:15
**BURRELL (1)**
2:20
**button (1)**
188:23
**buttons (1)**
104:19

_____
**C**
**C (16)**
1:18 2:1 3:2,8,10,14
    3:19 4:1 5:3 6:1,5
    81:23 163:24 246:3
    246:3,8
**calendar (3)**
89:5,9,22
**California (5)**
1:2,4 2:12 4:8 84:13
**call (9)**
28:13 67:2 89:20
    105:3 114:10
    140:22 173:16
    209:18,20
**called (24)**
1:19 28:4,6,9,16,20
    28:21,23 35:5 41:19
    117:21 121:13
    177:12 182:8
    208:24,25 209:2
    217:5 218:14 221:6
    222:1 223:4 227:14
    239:4
**calling (4)**
210:2 216:16 219:18
    227:13
**calls (40)**
19:10 38:2,19 41:6
    42:8 43:19 44:16
    45:16 50:16 54:18
    55:4,19 56:9,25
    57:15 58:2 64:7
    65:5 72:24 74:14
    88:20 99:12 120:18
    122:10,21 123:8
    137:22 138:23
    150:7,16,24 152:11
    153:10 155:8
    167:22 216:18
    218:9,12 220:17,25
**Calvin (2)**

_____

Highly Confidential - ATTORNEYS' EYES ONLY

2:3 4:23
**candidate (1)**
93:25
**carefully (1)**
80:14
**case (38)**
1:7 24:20 25:19 27:12
34:20 35:18 36:6
41:19,19,23,24 42:3
42:4 65:14 73:25
83:20 84:12 86:10
90:6 96:9,10,11,12
127:25 133:14,16
133:19 187:9 198:3
212:14 215:1,15
221:3 229:23
232:15 237:3,5
247:1
**cases (12)**
27:16 45:18 119:10
127:5 179:7 196:8
221:18 231:21,21
236:4,5 240:21
**catch (1)**
149:23
**cause (4)**
210:8 213:7 223:14
234:3
**caused (3)**
107:15 176:16 217:19
**causes (1)**
24:14
**causing (2)**
53:25 61:3
**caution (1)**
36:4
**ceased (1)**
245:3
**Center (1)**
2:4
**certain (8)**
28:7,8 32:8 172:24
183:22 197:20
242:7,23
**Certified (1)**
246:5
**certify (4)**
246:7,13,17 248:3
**challenged (1)**
181:1
**chance (1)**
75:3
**change (20)**
7:18 68:11 87:15 90:8

90:10,14 104:15
105:1,10,13,18
106:8 117:12,14
121:24 122:5,19
176:2 188:3 228:15
**changed (5)**
153:16 171:15 228:10
228:14 238:12
**changes (9)**
15:5 29:14 47:6,20
85:10 103:25
106:21 110:8
117:18
**characterization (8)**
15:16 16:9 17:19
18:18 20:15 21:13
21:19 22:7
**characterize (2)**
29:11 214:13
**characters (1)**
145:12
**check (4)**
10:3,20 114:23
116:11
**checked (1)**
11:18
**choice (46)**
86:6,12 87:12 188:6
190:9,14 193:20
194:8,9,11,14,23
195:3,18,21 197:4
198:10 201:2
203:11 208:2,18
209:1 213:5,6,23
216:15 218:8
223:11,23 226:15
226:20,25 227:5,7
227:22 230:4,15
231:5,19 236:23
237:19 238:19
239:12 240:3,14,19
**choices (28)**
188:5 189:16,17
190:22 192:15
193:24 195:11,11
198:9,11,15,16
199:7 201:4,4
202:10,16,23 203:3
203:9 206:1 214:2
229:6 231:8,13,14
232:9 241:6
**choose (13)**
82:11 83:18 84:3 88:6
188:23 192:10

195:14,15 196:13
197:5 222:5 231:18
238:18
**chooses (2)**
226:11 230:1
**choosing (7)**
198:12 213:25 214:4
229:15,18,22 233:5
**chose (1)**
227:15
**chosen (6)**
143:15 163:8 186:14
196:22 230:18
233:12
**Chris (1)**
4:21
**CHRISTOPHER (1)**
2:20
**Circuit (29)**
51:10 52:5,9 65:7,12
68:9,15 79:1,11
80:1,20 81:4,8 83:1
83:8 84:6 85:13,15
86:3 87:18 94:14
95:2,19 96:10 97:19
100:3 103:13
204:15 206:23
**Circuit's (7)**
59:8,19 66:20 68:5
80:5 87:15 97:23
**circumstance (2)**
36:24 88:15
**circumstances (1)**
172:24
**citation (3)**
32:15 34:8,9
**citations (1)**
32:10
**cite (3)**
29:21 30:1 111:4
**cited (2)**
20:17 23:3
**citing (2)**
56:17 76:11
**claim (241)**
17:22,25 46:3 50:3,7
50:9,13,18,19 51:5
52:10,14,16,16,17
52:19 53:5,19,24
54:5,8,11,16,17,20
54:21,23,25 55:5,6
55:7,11,16,23,24
56:3,7,8,14,14,15
56:16,17,18,23,24

57:4,5,13,14,17,20
57:22,25 58:8,10
59:6,8,24,25 60:2,5
60:7,11,13,14,16,18
61:1,10,21 62:3,5,8
62:9,10,15,18,20,25
63:11,23,24 64:4,6
64:13,18,20,22,25
65:9,23 66:2,21,23
67:6,12,21 68:1,5,9
68:12,16,22 69:1,21
70:4 71:1,1,6,11
72:9 75:25 77:24,25
78:8,15 79:4,11,19
80:2,21 81:1,7,10
82:4,6,15,17 83:2,8
84:4,9,9,12,16,22
85:1,10,15,23 86:14
86:20 87:15,20 88:1
88:4,18,22 91:23
92:4 93:21 94:6,14
94:19 95:1,3,14,18
95:19 96:4,8,13,19
97:23 98:3 103:13
107:5 116:7 117:1
118:4,6 119:24
124:3,8,9 126:9
127:17 139:19
142:4,12 144:24
150:22 151:2,11,18
151:24 152:8,9
153:7,25 154:12
155:4 156:7,13
157:6,7,18,25 158:4
158:10,13 159:10
159:19,23 160:21
160:23 162:22
167:16 182:9,24
183:3,6,17 199:6,13
200:20,21 201:23
202:13 203:19,19
204:3,8,9,19 205:5
205:5,10,11 206:4,5
206:9,12,16,25
216:8 225:16
229:12 232:18
241:23
**claimed (2)**
53:1 137:8
**claiming (2)**
20:11 21:13
**claims (2)**
10:16 49:12,16,21,25
50:11,25 51:20

55:22 59:17 70:19
91:5 94:19 97:8
137:16 139:21
156:9 158:2 176:13
203:11 228:11,23
**clarification (4)**
9:7 95:3 177:8 186:6
**clarified (4)**
6:20 22:6 29:11 79:15
**clarifies (1)**
81:11
**clarify (8)**
30:7 63:14 102:9
168:15 201:15
203:24 216:24
247:5
**class (69)**
6:21 7:2,5,9,16 8:5,16
8:17,22,22 9:4,6,13
9:17,20,24 10:3,19
10:20 11:1,11,13,18
12:7,18,23,25 13:2
13:6,8,14,17,23
14:3,10,15,18 15:7
15:10,15 16:2,6,8
16:16,22 17:8,10,11
17:16,17,22,25 18:8
18:11,25 29:12
116:14 166:2 212:4
217:4,13,24 218:5
220:22 221:2,20
231:22 239:5
240:13
**classes (1)**
217:1
**clear (18)**
30:17 39:5 40:7 42:5
42:15 43:17 98:25
100:1 101:7 115:4
141:20 142:20
160:12 162:2,3
181:7 234:6 238:22
**clearest (1)**
163:20
**clearly (3)**
131:14 159:2 233:11
**click (16)**
104:16,17,23,23
105:1,1,10,11,18,19
105:25 106:3,4,9,9
234:16
**clicked (1)**
89:17
**clicks (1)**

Highly Confidential - ATTORNEYS' EYES ONLY

106:2
**client (15)**
190:10 192:2,6 194:5
194:11 195:12
197:5 198:13
200:13 224:25
226:11 234:1,3,17
236:13
**clients (4)**
189:17 200:12 201:1
226:8
**close (1)**
179:4
**closer (1)**
214:17
**code (148)**
7:5 8:4,7,9,13 9:18
14:25 16:21,23 17:3
18:15,16 19:16,21
19:23 20:3,6,7,10
20:17,21,21 21:3,6
21:8,11,12,15,18
22:3,10,15,18,23
23:2,7,22 24:3,4,9
24:13,21 25:3,12,14
25:23,23 26:9 27:8
27:15,21,25 28:2,4
28:10,12,23,24
31:24 32:3,8,10,13
32:15,20,21,25 33:3
33:5,10,17,20,21,23
33:25 34:3,12 47:20
47:21,22 48:9,10,11
48:14 105:25 108:1
110:9 158:24
178:20,20,21 209:6
209:13,16,17
214:14 218:4,6,11
219:1,5,10,19 220:3
220:11,14 221:8,11
221:13 222:8,9,11
222:17 223:1,19
227:2,12,20 231:10
231:17,20 237:6
238:20,24,25 239:6
239:11,15,20,22,24
240:1,20 242:17,24
243:1,6,10,11,12,13
243:15,18,21,22
244:3,11,15
**codes (2)**
213:3 247:4
**cognizant (1)**
36:7

**coincides (1)**
119:11
**coinciding (2)**
118:19 119:16
**collection (1)**
6:14
**colorable (11)**
11:9 39:13 42:6,14
43:14,15 46:24
121:23 123:18,22
174:17
**colorably (24)**
11:2,5 34:16,22 36:2
36:14 37:20,25 38:9
39:16,21 40:17,23
41:4,14 42:6,21
49:8 117:19 122:12
122:18 123:6,13
187:23
**column (4)**
53:6,20,21 159:12
**combination (1)**
100:22
**come (1)**
98:4
**comes (1)**
178:1
**comfortable (1)**
41:11
**coming (1)**
128:20
**commas (1)**
148:18
**commencing (1)**
1:22
**comment (1)**
57:7
**Commonwealth (3)**
1:20 246:1,6
**company (1)**
1:12
**compare (3)**
17:8 123:22 124:2
**compared (3)**
104:15 153:14 170:6
**comparison (5)**
13:7 45:6 135:8 185:1
215:23
**complete (20)**
5:11,14 6:12 29:18
44:5 110:16 144:22
145:5 178:3,12,23
179:1,7 189:3,7,20
206:1 214:10

235:17,20
**completed (8)**
73:23 117:22 163:17
179:3,6,24 180:10
180:24
**completely (3)**
6:25 16:25 233:8
**completing (1)**
234:9
**component (2)**
118:22 214:9
**composed (1)**
234:23
**composing (1)**
234:10
**computer (3)**
33:23 120:24 178:18
**computer-impleme...**
142:5
**computers (1)**
178:18
**conceived (1)**
137:7
**concept (1)**
123:12
**conception (1)**
136:5
**concerning (8)**
3:20 7:2,8 29:18
37:19 72:9 76:13
163:24
**concluded (1)**
21:21
**concludes (1)**
244:22
**conclusion (37)**
17:13 26:16,25 38:3
38:20 41:7 42:9
43:20 44:16 45:17
50:17 54:19 55:4,20
56:10 57:1,16 58:3
64:8 65:5 72:25
74:14 88:20 99:13
120:19 122:11,22
123:9 129:14
137:23 138:24
150:16,25 152:11
153:10 155:8
167:23
**condition (2)**
23:10 25:17
**conditional (18)**
19:22 20:8,24 21:7
22:19 23:23 24:3,5

24:9 25:15,25 26:10
26:16,20,24 27:24
28:11,14
**conducted (1)**
180:6
**confer (2)**
30:12,15
**Confidential (2)**
1:16 244:25
**confirm (2)**
47:25 115:3
**confirmed (2)**
137:12 138:7
**confirming (1)**
97:14
**conform (1)**
247:6
**confusing (1)**
216:25
**confusion (1)**
162:1
**connection (10)**
3:8,10 6:2,6 32:9,24
33:13 36:1,13
242:24
**consequently (4)**
7:19 112:19 152:9
196:17
**consider (4)**
34:21 77:6,16 143:8
**consideration (2)**
46:16,17
**considered (6)**
34:15 46:4 77:19
99:11 164:12,21
**consistent (4)**
68:7 83:5 153:2
155:14
**constructed (3)**
72:13 81:4 204:15
**constructing (1)**
238:23
**construction (57)**
52:4,9,13,19 59:9
65:13,21 66:22 68:6
68:10,10,16 71:2,11
71:16 72:9 77:6,11
77:12,13 78:8,15,19
79:11 80:9,10 81:8
81:16 83:2,8 84:5,9
84:16,22 85:10
87:16,19 88:1 94:15
95:1,3,14,18,19
96:4,9,14,19 97:23

98:3 103:13 206:23
207:1,2,5,8 232:19
**constructions (7)**
51:1,5,8,13,15 70:4
84:12
**construed (16)**
59:7 65:7 78:22,24
79:1 91:6 97:9
203:19 204:8 205:5
205:10 206:5,10,17
206:21 207:14
**contact (1)**
236:3
**contacts (16)**
182:14 183:16 190:4
191:20 192:21,22
193:2,12,19 194:23
195:16 197:22
198:11 231:7
235:23,25
**contain (2)**
70:20 207:12
**contained (2)**
207:9 248:8
**contains (4)**
127:1,10 224:21
229:10
**contention (1)**
229:13
**context (129)**
14:12 19:12,24 20:4
20:10,22 21:4,7,16
22:4,15,20 23:10,11
24:19 25:21 39:25
40:10 41:9 47:25
48:4,7,12 77:19
92:24 104:4,9
106:15 124:19
125:20,24 126:25
127:10,14,23 131:9
131:12,25 159:6
170:10,13,15 171:5
171:15,25 172:7,13
176:4,9,12 181:12
181:15,18,22 182:5
185:2 186:9,11,12
187:11,15 188:11
190:24 191:7,13,16
191:24 192:13
193:25 194:19
196:6,12 197:20
198:2,16 208:16
209:1 210:22
211:13,23 212:9,17

Highly Confidential - ATTORNEYS' EYES ONLY

215:24 217:9,10,12
217:18,23 218:5
219:13,19 220:6,13
220:17 221:4,20,25
222:24 223:2 224:3
224:12,20 225:24
226:5,20 227:1,14
227:16 228:17
229:2 231:6,13,22
232:7 233:13,18
235:9 236:21
238:10,13,20,22,24
239:3,5 240:1,13,15
241:10
**contextual (20)**
18:9,12,23 19:1,12
21:21 24:15 25:8
29:1 105:4 106:24
111:1,9 170:22
171:10,12 184:20
223:12,24 228:21
**continue (3)**
49:11,16 222:5
**continues (3)**
93:20 221:17 228:11
**continuing (1)**
121:9
**contrary (5)**
93:25 203:19 204:9
205:5 206:5
**control (1)**
20:24
**controlling (1)**
76:20
**controls (1)**
24:19
**convincing (5)**
39:5 40:7 42:5,16
43:17
**corporation (3)**
1:5,9,10
**correct (214)**
11:11,13 13:1 14:16
19:2,4,17 20:18
21:5 23:4 24:20
26:12 29:3 30:21,23
31:20 35:3 39:10
40:7,18 42:7 46:25
51:6,8,12 52:6,10
52:15 54:17 72:11
72:12,17 76:17,25
79:6 80:3,23 81:17
82:16 83:19 84:7
85:17,18,24 86:16

86:23 91:14,25 95:6
95:15,21 96:5,14,19
97:16,25 99:11
100:17 102:6,22
103:19,20 105:8
107:6,8,16,20 108:6
110:19 114:6,18
116:16 117:2,6,7,9
117:10 118:10,24
119:3,17,21 121:25
122:6 123:19,24
126:12,18 127:9,15
127:16,21 128:13
129:16 130:1,10,22
130:25 132:2,3,6
133:9 143:21 146:4
146:6 147:12,22,25
148:8,19 149:11,21
151:7 153:8,25
164:10 166:9,10
170:1,11 172:9,17
172:20,21,24
175:25 176:5,14,17
177:4,7 178:14
179:12 181:20,21
181:23 182:2,11,25
183:5,19,24 185:10
185:14,23 186:15
186:16 187:14,19
188:17 189:10
190:19 191:8,14,20
191:21 192:24,25
193:3 194:25 195:6
197:14 198:18
204:3,25 206:2,18
207:2 208:6 210:14
210:17,25 211:18
213:24 214:10
215:25 216:1
217:15,21 219:7,9
220:7,13,22 222:10
223:24 225:20,22
226:15,20 227:3,7
229:2,16,20 230:17
230:25 231:19
232:21,22,25
233:15,19 237:16
237:19 238:21
239:13 240:4 241:4
241:16 242:1,10
247:7 248:8
**corrected (3)**
3:17 92:13 248:8
**corrections (2)**

29:13 248:6
**correctly (2)**
127:13 184:16
**corresponding (1)**
118:22
**counsel (7)**
4:18 30:13 33:5 58:21
98:20 168:10
246:15
**Counterclaim (2)**
3:16 92:12
**Counterclaimants (3)**
1:13,19 2:14
**Counterdefendant (...**
1:6 2:2
**counterexample (2)**
28:19 123:1
**COUNTY (1)**
246:2
**couple (3)**
133:1 163:7 240:7
**course (3)**
119:23 120:6 147:1
**court (41)**
1:1 4:7,16 5:1 15:20
35:9 43:25 44:7
46:17 51:9,10 65:7
71:21 76:7,11 77:14
78:22 79:11 81:4,8
83:1 84:13,14 85:9
85:13 86:3 87:18
94:14 95:2 133:14
133:21 134:1,2,7,13
135:5 137:20
204:15 206:20,24
207:14
**court's (2)**
65:13 133:19
**covered (5)**
6:23 115:22 163:7
216:8 228:11
**covers (1)**
86:15
**create (1)**
220:16
**created (8)**
12:6,12 13:5 14:20
15:2 161:25 224:21
225:10
**creates (1)**
19:12
**critical (1)**
166:4
**cutoff (1)**

179:21

---
**D**

**D (3)**
3:1 4:1 164:24
**D.C (7)**
8:12 33:22,25 34:4
243:5,19,21
**D1A (1)**
12:5
**DA1-A (37)**
13:21 14:8 16:6,13
103:16,17,25 104:8
105:3 106:12,22
110:3,12,16 114:16
114:21 115:5,22,24
116:6 117:4,13
118:8 119:1,8,21
120:6,14 121:10
124:15 125:7
126:16 127:25
128:10 129:7 131:3
131:24
**DA1-AB (4)**
176:7 177:4,5,10
**DA1-B (3)**
175:21,23 177:6
**DA2 (60)**
46:19,24 47:21 48:3
71:3,12 109:4,7,14
109:21 169:21,24
170:21 172:19
174:7,18 184:12,21
186:17 189:10,12
189:24 190:13
191:10,18 193:4
195:2,23 198:17
199:5 200:23 201:7
207:19 208:1,18
209:14 217:16
219:6,11,13 220:16
221:7,14 222:14,22
222:25 223:5,22
225:1 226:9 231:24
232:8 238:8 239:7
239:10 240:2,25
241:13,24 242:7
**Daewoong (1)**
15:12
**data (18)**
19:23 20:23 53:12
60:19 67:14 139:21
144:22 145:5 151:3
156:8 158:2 159:14

160:25 161:6
162:18 212:4,4
213:11
**date (24)**
8:11 31:10,15,21 75:6
75:13 89:4,7,18
133:11,12 134:18
134:19 135:1,12,18
135:21 137:15
148:19,21,25 149:1
244:4 247:2
**dated (4)**
31:13,19 74:21
248:10
**David (2)**
2:11 4:25
**day (5)**
66:19 242:16,19
246:22 248:10
**days (1)**
133:1
**DC (1)**
2:21
**December (1)**
135:22
**decide (2)**
102:12 134:2
**decided (3)**
190:5 193:13 195:10
**deciding (1)**
99:15
**decision (10)**
59:19 66:20 80:1,5,20
85:15 94:14 102:15
136:4 144:11
**decision-making (1)**
99:21
**declaration (13)**
3:19 76:12,16,17
163:23 164:7,13,22
164:23 165:3,5,8
167:5
**default (12)**
94:3 108:13 172:15
176:16 184:4 187:1
187:2,3,5 189:8,13
189:21
**Defendant (2)**
3:16 92:12
**Defendants (3)**
1:13,19 2:14
**define (1)**
241:1
**definitely (4)**

Highly Confidential - ATTORNEYS' EYES ONLY

33:19 50:3 116:18
179:17
**definitively (2)**
18:16,21
**degree (1)**
197:18
**Delaware (1)**
1:11
**demarcated (1)**
141:12
**demonstrate (1)**
20:7
**demonstrated (1)**
20:13
**demonstrative (5)**
210:13 211:1 218:22
221:12 238:4
**deny (1)**
216:14
**denying (3)**
3:13 74:22,23
**Denying-In- (1)**
3:12
**depend (2)**
55:23 178:8
**depended (1)**
57:10
**dependent (8)**
50:19 52:16 55:22
56:17,23 57:4 68:8
94:19
**depending (4)**
19:23 146:25 178:10
197:8
**depends (7)**
20:1 28:4 56:24 57:5
179:8 188:22
200:24
**deposition (19)**
1:18 4:4,10 7:13 9:22
15:13 21:24 26:7
90:19 93:6 111:4
175:16 244:22
245:3 246:9,10,14
247:2 248:5
**describe (9)**
40:1 48:9 55:8 56:1
86:9 163:21 182:20
197:18 233:20
**described (20)**
39:20 47:20,23,24
49:20 58:8 60:11
113:3 151:2 152:18
152:19 155:13

160:21 174:23
180:24 199:11
209:7 211:7 226:6
235:12
**describes (2)**
140:21 234:6
**describing (7)**
12:22 15:10 64:18
83:23,24 87:3,11
**description (7)**
3:6 23:19 94:1 152:21
182:21 199:19
210:16
**descriptions (4)**
182:14,16,19 199:16
**design (4)**
86:12 87:12 88:14
228:15
**design-around (72)**
15:4,8 16:3,12 34:16
37:19,25 39:16
40:16 41:3 43:3,5
46:20,21 49:8,11,15
50:7 103:16,18
104:8 106:13 110:3
114:17 115:6 116:7
117:4,13 118:9
119:2 120:7,7,15
124:16 125:8 131:4
131:24 169:22,25
170:3,5 175:21,24
176:7 177:4 186:17
189:12 190:13
191:18 193:5 195:3
198:7,18 199:5,12
207:20 208:2
218:15 219:6
220:15 221:24
222:8,15 223:23
226:4,9 228:2
231:11 232:14,16
238:8 240:25
**design-arounds (2)**
15:1 34:22
**designated (1)**
244:25
**designed-around (4)**
123:23 124:2 187:18
188:16
**designer (3)**
193:13 195:9,17
**designers (1)**
198:8
**despite (1)**

59:8
**detail (11)**
49:7 56:4 82:6 122:25
208:4 211:5,8 215:3
215:20 219:4
220:23
**detailed (1)**
213:7
**details (12)**
17:15 37:12 48:13
55:8,9,12 56:1 62:7
64:18 67:9 92:7
213:13
**detect (12)**
65:15 82:22 140:6,7
140:11 146:5,24
151:14 154:14,19
169:6,12
**detected (172)**
52:1,13 53:13,16
54:13 58:18 60:6,8
60:20 61:13 62:14
62:19 64:17 65:9,10
66:23 67:14 69:19
72:11,23 73:8,11,12
73:18,21 74:12,16
76:1 79:5,16,18,23
80:11 81:2,9 83:3
84:20 85:7 87:17
89:7,14,18 93:10
94:17 95:24 100:7,8
100:10,12,22,24
101:2,4,13 103:2,10
103:11 108:21
109:15 117:25
118:1,8 119:25
120:15,22,22
124:11,17,20 125:9
125:15,18,22,25
126:2,4,11,18 127:2
127:3,10,14,19
128:1,2,8,13,17,21
128:24,25 129:1,4
129:12,22 130:1,9
130:13,16,20
131:15,17,21
149:25 152:17
155:17,18,20
159:15 160:25
161:7 162:18
165:24 167:13
168:7,16,16 175:4
176:25 177:16,19
181:19 182:18

183:2,15,23 185:14
185:22 186:24
189:18,23 191:5,11
192:3,11,20,23
193:6 194:25 195:4
195:6 196:14
197:11 199:21
200:13 206:12,14
206:22 207:3 209:5
210:1 211:21
224:22 225:4
227:19 229:15,19
229:22 230:17,19
230:21 232:20,24
233:7,14,17 234:1,8
234:18 235:4,5
236:8
**detected' (1)**
76:4
**detecting (28)**
53:12 60:18 67:22
103:9 142:15
145:24 150:2,3
152:12 156:18
158:12,16 159:5,14
160:2,8,14,24 161:6
161:17,18 162:4,17
162:19,23 166:14
169:15 177:25
**detection (73)**
73:23 110:11,15,25
111:8,18,22 112:4,9
112:20,25 113:1,8
113:20 114:4,8,10
114:13 117:20,22
118:18 119:2,10,19
120:8 128:4 130:21
139:20 144:19,20
144:23 146:4 149:9
149:18,23 150:13
150:17,23 151:3,5
152:17 153:2,7,24
154:8,15 155:4,10
155:13 156:8 158:1
162:13,13 163:11
166:22 167:20
168:4,20,23 169:5
169:10 177:10,23
178:2,12,22 179:5,9
179:16,17,24 180:9
180:24
**detects (16)**
65:18 67:13 68:24
82:19,19,23 83:13

87:5 120:20 139:10
139:25 140:5,15,18
151:2 161:19
**determine (2)**
18:25 142:10
**determined (1)**
113:15
**determines (2)**
111:16 112:11
**determining (3)**
11:8 46:23 174:17
**device (3)**
54:1 61:3 140:10
**devices (3)**
184:21 208:10 221:7
**diagram (2)**
146:12 147:22
**dial (3)**
94:3 174:3,4
**dialer (2)**
173:2,23
**dialing (6)**
82:9 87:7,23 101:15
173:5,7
**dialog (3)**
12:9 19:9 24:2
**differed (1)**
43:16
**difference (10)**
12:21 43:16 58:9
118:3 120:23 122:6
123:18,22 187:17
188:15
**differences (13)**
11:9 12:14 38:14
39:13 42:7,14 43:15
45:9 46:24 121:24
170:6 174:18
196:11
**different (97)**
11:2,5 12:7,12,20,20
13:6,12,14 14:20
23:3 26:5 28:9,13
33:11 34:16,23 36:2
36:14 37:4,7,20
38:1,9,13 39:17,22
40:17,23 41:4,14
42:22 49:9 64:19
81:16 84:5 85:23
86:2,4 96:10 104:20
109:22 110:5
117:19,20 118:23
122:13,15,19 123:6
123:13,18 151:21

Highly Confidential - ATTORNEYS' EYES ONLY

151:22 153:15,19
157:1,14 169:25
175:24 185:6
187:23 198:25
202:16 203:4,9
208:17 209:21,22
214:3,5 217:1,3,4
217:24 219:10
220:22 221:2
224:17,18 225:6,9
225:12,25 226:19
230:23 232:4,13
236:22 237:1,4,7,8
240:1 241:14,20,23
**differently (5)**
28:20 44:25 45:24
123:3 205:10
**differs (1)**
38:12
**digits (2)**
143:7,15
**directed (4)**
14:3 166:8,12,21
**direction (3)**
22:2 102:2
**disabled (1)**
48:4,7
**disables (2)**
25:8,12
**disabling (1)**
47:24
**disagree (6)**
21:18 22:22 39:11
59:14 192:14 224:9
**disagreeing (1)**
20:15
**disc (3)**
4:4 90:18 175:15
**disclose (8)**
82:4,5 86:20 87:5,20
88:4 156:17 165:23
**disclosed (2)**
166:3 169:3
**discloses (4)**
67:1 82:7 85:20 87:22
**discuss (8)**
11:12,14,15 38:10,12
40:21 57:21 62:9
**discussed (29)**
7:4,13 8:23 15:14
16:8 37:14 38:5
40:24 41:15 47:7,15
49:18 58:5 69:12
73:14 82:6 83:11

97:24 98:10,11
103:7 107:13,18
184:2 186:21
209:10 217:13
240:7 242:13
**discussing (19)**
12:14,16 13:22 16:12
24:2 36:8 38:7
44:18 56:15 62:10
64:14 82:25 95:8,9
101:9 125:12
163:10 164:24
166:15
**discussion (9)**
6:21 18:20 29:12
40:10 42:11 64:21
142:19 181:8
187:25
**display (12)**
19:2,13,24 25:21,24
54:1 61:3 110:25
111:9 112:10
184:12 228:15
**displayed (22)**
12:9 20:1,12,14 21:1
21:4,10,22,25 23:11
23:12 24:15 26:13
26:17 27:1 29:2
60:10 184:19,22
237:3,10,14
**displaying (4)**
60:2 201:25 238:23
238:23
**dispute (4)**
18:17 22:6 31:17 39:1
**disputing (8)**
7:6,25 8:2 11:15
15:16 16:9 17:19
28:22
**distinction (4)**
139:18 156:6 157:23
157:24
**distinguish (1)**
81:16
**District (9)**
1:1,2 4:7,7 51:9 78:21
84:13,14 85:9
**Division (2)**
1:3 4:8
**doctrine (14)**
114:18,21 115:8,23
116:17 117:9,16
118:12,20 121:5,19
122:4 123:7 128:6

**document (20)**
23:16 65:16 75:3,10
75:20 77:9 92:6,9
92:11,17 93:5,8
96:6,20 100:19
105:21 132:18,22
133:4 164:4
**doing (9)**
17:11 32:1,4 41:16
79:2 95:17 142:8
166:21 227:7
**double (1)**
116:11
**double-check (1)**
183:9
**Dr (71)**
3:8,10,14,19 4:21 5:8
6:1,5,9 7:4,7,14,19
7:25 11:16 15:14
16:7 17:19 18:7,18
20:3,13,16 21:8,13
21:19,20 22:7,9,17
22:21 24:20 25:18
27:11,21 28:5,20
30:2 31:8,12,23
32:9,18 34:14 37:23
59:6 66:15 70:17
75:4 76:13 81:23
82:2 90:23 92:17
97:21 132:16,23
133:2 157:17
163:24 164:3
169:24 175:20
204:18 207:25
211:6 216:6,13
232:18 238:2
242:25
**drafted (1)**
84:25
**duly (2)**
5:4 246:10
**duration (3)**
178:10 179:4,20

———————————
E
———————————
**E (7)**
2:1,1 3:1 4:1,1 246:3
246:3
**e.g (2)**
12:8 202:1
**earlier (22)**
63:19 78:4 98:20
107:14 128:3
134:19 136:8

138:12 146:2,23
159:18 176:11,19
176:22 183:3 184:3
196:2 222:15
223:19 238:7,18
242:16
**early (1)**
156:16
**easy (2)**
105:24 106:2
**effectively (4)**
110:1 160:10 213:18
224:15
**either (9)**
6:19 25:24 29:6 49:9
75:11 104:21
119:10 148:2 179:7
**electronic (4)**
89:5,9,21,22
**Electronics (4)**
1:8,9 2:20 4:6
**element (4)**
82:5 93:22 118:4,6
**elements (1)**
88:22
**eliminated (1)**
198:9
**eliminates (3)**
139:20 156:8 158:1
**Elizabeth (2)**
2:24 4:13
**email (107)**
103:12 147:16 149:6
149:10,11,19,20,25
150:2,6 174:11
181:25 182:2,13
183:14,14,15
189:13,14,17,18
190:3,4,6,8,8,9,10
190:11 191:19
192:2,2,3,6 193:2
193:14,17 194:4,4
194:10,10,11
195:12 197:2,2,12
197:13,21,23
198:12 199:1,2
200:9,11,11,12,13
200:19,25,25 201:1
202:1,1,2,11,12,12
208:11,14,16
224:24 225:2,4,4
226:8,10,11 231:7
233:17,17,19,23
234:1,1,6,10,13,13

234:17,17,18,20,20
234:25 235:9,10,14
235:15,18,18,24
236:12,12,13,14,19
236:21
**Emanuel (2)**
2:15 4:20
**embedded (1)**
158:11
**emergency (1)**
12:8
**empirical (3)**
179:11 180:6,13
**enable (6)**
72:21 73:6 74:11 76:2
144:19,20
**enables (6)**
53:25 61:2 119:25
200:2 201:24 202:6
**enabling (9)**
54:12 61:12 72:10
76:1 93:22 94:5
118:7 165:23
167:13
**ends (4)**
154:8 156:23 158:23
231:24
**engineer (7)**
7:12 9:23 21:24 22:1
26:6,11 27:7
**entails (2)**
167:19 168:3
**enter (2)**
35:17 221:15
**entire (9)**
55:24 139:17 141:6,6
145:16,17 156:4
157:22 175:3
**entirely (3)**
56:11 144:11 160:12
**entirety (1)**
174:25
**entitled (1)**
92:11
**envelope (1)**
243:25
**equivalents (14)**
114:18,22 115:9,23
116:17 117:9,16
118:12,21 121:6,19
122:4 123:7 128:6
**error (4)**
6:22 7:1,4 29:11
**errors (3)**

Highly Confidential - ATTORNEYS' EYES ONLY

6:18 29:5 247:7
**Erwine (239)**
2:16 3:3 4:19,19 5:7
5:17,22,25 6:4,8
7:21 8:3 9:1,9 12:1
13:15 14:1,13 15:20
16:14 17:7 21:2
23:1,8 24:11,23
25:5 26:1,23 27:19
29:16 30:9,11 33:6
33:7 34:11 36:11
37:8,16 38:15 39:2
39:12 40:4,14 41:1
41:17 42:12 43:1
44:9,24 45:11 46:1
50:22 54:24 55:14
56:5,21 57:11,24
58:13,24 59:3,4
62:23 63:8,16 64:24
66:1,6,14 70:1 71:9
71:22 74:3,18 75:1
75:7 77:5,15 78:13
79:24 80:13,16
81:14,19 82:1 86:13
87:13 88:23 90:8,13
90:22 92:10,16 93:3
95:12 96:2,15,24
98:24 99:16 101:18
102:3,18 103:5
106:6 107:10 108:2
108:18 109:12
110:10 112:3,14
113:4,22 115:1,10
115:14 116:22
118:5 120:5,13
121:7 122:16 123:2
123:16 126:7
127:12 129:5
130:18 131:23
132:16,21 134:4,15
136:7,18,23 137:1
138:3,11 139:3
140:12 141:24
144:1 146:1,10,11
147:9 150:10,21
151:4 153:4,17
154:9 155:1,22
160:17 162:8
163:22 164:2 165:1
167:3 168:8,12,17
169:1 170:8 172:3
174:1 175:6,10,19
180:1,11 182:22
183:13 184:6

185:11,19 186:1,2
187:4 188:7,24
189:19 190:12
191:1 192:8 193:22
194:13,21 195:19
196:10,24 198:14
199:3,22 201:14,20
205:19 207:16
209:15 212:7
213:21 214:23
215:12 218:20
219:12,22 220:4,10
223:6 224:4,10
226:12,18 228:1
229:4,11,24 230:14
231:4 232:17 233:4
235:7 236:16
237:12,20 238:1
239:23 240:22
241:11,21 242:5,15
243:14 244:17,20
**ESQUIRE (6)**
2:3,7,11,16,16,20
**established (2)**
45:2 137:15
**establishing (2)**
45:1 121:18
**estimations (1)**
179:11
**et (1)**
4:6
**evaluate (2)**
42:20 45:25
**evaluated (2)**
11:1 46:2
**evaluating (4)**
11:4 45:19 52:19
81:10
**event (2)**
19:8 145:23
**eventually (2)**
209:4 221:5
**evidence (16)**
18:17 22:6,24 27:17
38:18 39:6,24 40:6
42:5,16,17 43:18,24
44:13 178:15,22
**Ewing (1)**
1:21
**exact (4)**
8:11 20:16 41:11
233:3
**exactly (22)**
8:25 17:6,15 23:20

34:10 36:22 38:8
39:9,23 41:10 47:8
73:2 113:11 157:12
166:14 175:2
183:10 185:9
205:18 208:13
231:3 236:2
**examination (3)**
1:19 3:3 5:6
**examined (2)**
5:4 179:15
**examiner (1)**
137:14
**example (35)**
48:2 73:13 89:13
101:13,16 103:12
108:3,12 122:24
123:21 129:20
142:3,23 147:16
148:16 154:8
155:16 158:20
170:9 174:10 176:2
182:1 183:1 186:23
191:19 193:11
197:12,24 224:24
226:7 231:7 233:17
234:11 235:19
236:1
**examples (4)**
57:4 88:25 89:24
141:4
**Excuse (1)**
168:10
**executed (5)**
210:4 219:19 220:3
220:15 230:20
**executes (1)**
218:5
**execution (1)**
112:25
**exhibit (49)**
3:7,8,10,12,14,16,18
3:19 5:18,20,21,25
6:3,5,7,10,19,19
12:3 18:3,24 31:18
32:6 49:4 52:20,21
58:20 74:18,20,25
75:5 81:22,25 92:11
92:15 115:19
118:14 132:17,19
132:20 135:8,10,17
136:20 159:8
163:23 164:1
165:16 215:9

**exhibits (3)**
3:5 5:17 51:17
**exist (1)**
28:12
**existed (1)**
152:5
**existing (1)**
236:3
**exists (1)**
219:14
**experience (6)**
131:13 170:22 171:12
171:14,15 238:12
**expert (22)**
3:8,10,14,19 6:1,5
34:14 39:20 40:12
43:12 44:11,22 45:3
46:13 81:23 98:18
118:18 134:14
137:25 163:23
211:4,6
**expertise (7)**
29:24 40:13 43:10
137:25 139:1
178:17 180:7
**expires (1)**
113:21
**explain (2)**
156:16,20
**explained (2)**
66:18 223:11
**explaining (1)**
88:12
**explicit (1)**
213:17
**explicitly (2)**
89:23 140:8
**express (1)**
44:1
**expressed (4)**
29:25 79:12 83:2
100:3
**extent (6)**
18:15 21:17 41:25
48:9 152:19 195:10
**extremely (4)**
179:23,23 180:2,9
**Eyes (2)**
1:16 244:25

___

**F**

**F (1)**
246:3
**fact (34)**

19:5 22:8 27:18 57:22
72:2 81:15 82:18
86:14 87:11 88:13
92:3 93:10 101:1
104:24 114:13
118:1 138:7,8,19
139:16 142:6
148:10 156:3 157:9
157:20 161:17
169:16 190:2
193:23 198:15
222:14 232:4,23
239:18
**factor (2)**
40:3 42:15
**factory (1)**
173:7
**facts (1)**
247:6
**fail (2)**
22:19 145:20
**false (3)**
25:17,20 28:2
**familiar (1)**
46:20
**far (1)**
96:5
**fast (1)**
178:9
**feature (4)**
9:8,13 10:4 11:19
**features (4)**
11:5 25:16 99:5
174:24
**February (1)**
135:15
**Federal (37)**
51:9 52:5,9 59:8,19
65:7,12 66:19 68:5
68:9,15 78:25 79:10
79:25 80:5,20 81:4
81:8 83:1,8 84:6
85:9,13,15 86:2
87:15,18 94:14 95:2
95:19 96:10 97:19
97:22 100:2 103:13
204:14 206:23
**feel (1)**
41:10
**field (2)**
29:24 178:18
**fields (1)**
224:22
**figure (15)**

Highly Confidential - ATTORNEYS' EYES ONLY

89:3,8,10,17,19
90:6 142:23 143:2
144:3 146:7,13
148:17,24 149:2,4
**figures (6)**
90:5 94:1 141:5,13
142:20,22
**filed (2)**
135:25 136:1
**filing (5)**
133:12 135:12,18,21
137:9
**filled (4)**
213:24 234:4,19,24
**fills (1)**
213:19
**find (2)**
28:15 140:8
**finding (4)**
134:6 142:15 150:18
157:2
**finds (1)**
161:20
**finger (43)**
110:17 111:1,10,11
111:12,13,15,20,23
112:5,10,15,16,18
112:19 113:2,6,7,16
113:16,19,21
117:21 121:3 128:3
128:11,20 129:2
130:24 131:4 132:1
132:5 152:6 155:18
177:11,12,22,22,24
178:1,4,13,24
**finish (1)**
168:11
**finishes (1)**
179:17
**first (35)**
5:4,18 12:4 18:7 19:9
34:15,19 108:5,8
112:16 135:9 160:4
161:22 162:21,25
163:2,16 169:12
171:23 174:16
186:23 187:5,6,9,10
194:19 196:5,12
222:1 228:16
237:10,13 238:14
238:15,16
**five (3)**
35:12 58:24 134:21
**flash (1)**

130:12
**flow (2)**
146:12 147:21
**flowchart (1)**
148:23
**flows (1)**
209:6
**FNL (1)**
25:12
**focus (3)**
35:23 50:9 175:7
**focused (16)**
11:11 35:19 44:22
46:25 47:2,3,4,9,13
48:17,19 136:12
174:19,22 194:20
196:6
**focusing (10)**
9:19,20 42:23 43:9,9
46:17,18 67:17,18
136:16
**follow (5)**
8:24 17:5 221:11
231:9 233:8
**followed (13)**
16:25 59:19,22
221:13,23 227:13
227:16,20,23 239:1
239:5,7,9
**following (14)**
15:25 61:24 64:11
73:3 80:18 99:7
125:6 130:6 149:17
153:21 164:19
167:2 168:1 175:1
**follows (8)**
5:5 148:5,8 209:3
227:2 238:20,25
239:20
**foregoing (1)**
248:4
**forget (3)**
23:23 25:19 84:11
**form (4)**
35:15 43:24 131:3
202:23
**forth (7)**
29:18 51:14 52:4
71:24 160:19
162:10 246:9
**forward (4)**
204:19 231:23 237:6
239:17
**found (10)**

10:15 49:24,25 69:9
116:25 122:18
123:5 129:20
137:14 171:5
**foundation (1)**
99:10
**fourth (1)**
18:6
**fraction (1)**
179:19
**Frazier (2)**
2:7 4:25
**fresh (1)**
69:4
**front (2)**
28:25 135:10
**full (9)**
139:12 140:1,16,20
141:1,16 142:18
143:3 144:5
**function (10)**
124:7,10 126:9
127:18 155:4 174:3
174:4 176:16
177:10 193:6
**function-way-result...**
121:13,17
**functionalities (5)**
105:2,11,19 106:9
174:9
**functionality (23)**
13:8 91:13,22 92:3
99:25 102:21
104:17 107:4,22
109:4,11 110:2,5,6
115:7 123:5 170:1
172:19 174:23
175:25 176:3,20,24
**functionally (1)**
109:20
**functions (2)**
47:5 182:8
**fundamental (1)**
87:4
**fundamentally (2)**
157:1,13
**further (12)**
11:14 70:17 184:11
184:12 222:9,12
227:22 231:25
244:17,22 246:13
246:17

_____
**G**

**G (1)**
4:1
**Galaxy (4)**
119:9,17 184:11,19
**general (1)**
17:2
**Generally (1)**
106:11
**generate (2)**
25:8 106:14
**generated (2)**
58:7,15
**generic (5)**
106:14,23 107:9
176:8,12
**generically (2)**
193:14 208:12
**gestured (1)**
131:15
**gestures (1)**
104:20
**getSelectedLinkTe...**
19:10
**getting (4)**
192:17 214:6,17
225:8
**give (4)**
49:1 97:22 102:13
137:2
**given (20)**
16:12 21:12 26:11
27:7,8,14 28:10
39:25 43:10 45:20
49:20 75:13 102:1
123:15 180:7
191:19 194:23
195:3 206:24
246:11
**gives (2)**
169:17 242:25
**giving (3)**
160:6 190:14 193:11
**Gmail (4)**
190:8 202:1,12
236:18
**go (31)**
10:19 23:19,20,25
25:2 27:10 35:8
37:2 38:21 56:1
61:10 67:11 70:2
90:13 115:19
124:25 148:16
149:4 155:23 167:5
181:4,8 191:3

196:17 202:18
210:9 211:4 218:21
219:21 221:7 223:7
**goes (7)**
14:9 55:8 147:23,24
179:18 209:22
211:12
**going (22)**
36:3 90:11,12,14 91:5
93:1 97:8 112:12
129:1 142:10 144:9
155:17 190:5
193:14 194:9,9
197:1 202:8 207:22
214:14 218:8
240:19
**Good (3)**
5:8,9 132:16
**gotten (2)**
224:7 240:10
**grade (1)**
98:22
**granting (1)**
74:21
**Granting-in-Part (1)**
3:12
**greater (1)**
92:24
**Green (2)**
2:24 4:13
**Greenwich (1)**
2:4
**ground (2)**
83:7
**guess (7)**
8:24 17:5 40:2 47:6,8
48:19 99:8
**guesses (1)**
179:10
**guide (1)**
178:11

_____
**H**

**Hampshire (1)**
2:21
**hand (2)**
17:18 246:22
**handed (1)**
163:17
**handle (4)**
108:15,17 173:15,16
**handled (1)**
175:5
**handling (1)**

Highly Confidential - ATTORNEYS' EYES ONLY

Page 11

184:4
**happen (4)**
161:21 162:12 193:15
210:23
**happened (5)**
7:7 35:7 65:14 79:12
97:19
**happening (6)**
26:14 157:4,15,15
160:10 179:12
**happens (13)**
8:1 15:10 120:24
125:14 128:4
130:24 158:16
161:18 208:15
210:19 211:19
221:16 234:17
**happy (2)**
33:14 81:19
**hardware (1)**
180:8
**head (16)**
8:11 25:4,6 31:16
34:9 37:6 43:13
48:14,22 50:5 92:8
95:16 213:15
214:19 244:12,13
**header (2)**
149:11,20
**headquartered (1)**
4:15
**hear (1)**
61:23
**heart (1)**
83:12
**heightened (1)**
45:12
**held (1)**
4:10
**help (2)**
156:20 243:6
**hereinbefore (1)**
246:9
**hereunto (1)**
246:21
**high (2)**
219:3,4
**high-level (3)**
211:9,11 218:25
**highlight (14)**
129:22 130:15,21
131:11,19 143:15
144:13,13,21 145:4
145:12,16 147:14

148:25
**highlighted (7)**
129:13,23 143:6
148:14 184:14
217:2 218:17
**highlighting (8)**
128:24 130:1,9,12,13
132:5 141:5 144:12
**highlights (2)**
149:10,19
**Highly (2)**
1:16 244:25
**hit (2)**
188:23 222:3
**honest (2)**
35:19 69:2
**hook (1)**
106:1
**hours (2)**
31:2 244:16
**HTC (8)**
34:22 35:5 36:1,8,13
37:17 69:13 133:14
**human (1)**
182:20
**hypothetical (7)**
152:11,20,23 153:11
154:3 187:21
236:25
**hypothetically (2)**
147:13 207:5

—————— I ——————
**i.e (3)**
82:8 87:23 201:24
**idea (1)**
224:19
**ideas (1)**
122:15
**identification (2)**
234:12 243:1
**identified (8)**
141:10 148:17 149:1
149:5 165:11
202:11 205:7
216:10
**identify (3)**
28:25 212:18,20
**identifying (1)**
200:22
**III (4)**
119:9,17 184:11,19
**illustrated (6)**
89:8 90:5 143:6

210:23 220:5
221:11
**illustrating (1)**
210:19
**illustration (3)**
89:11,16 172:10
**immediate (1)**
86:11
**immediately (15)**
12:9 118:19 119:3,11
119:20 120:8
122:25 128:4 131:9
170:23,25 171:13
177:11 184:20,22
**impede (1)**
5:14
**IMPL (11)**
211:13,23 217:12
218:5 221:4,20
223:2 227:14
231:22 239:5
240:13
**implemented (1)**
193:7
**implementing (1)**
174:24
**implicit (6)**
173:17 212:1,3,13,20
213:16
**import (3)**
35:4,13,21
**important (3)**
111:16 113:14 169:19
**imposed (1)**
35:5
**impression (3)**
44:5 46:14 136:15
**in-box (1)**
235:1
**in-random (1)**
144:13
**inaccurate (1)**
94:1
**Inc.'s (1)**
3:17
**include (12)**
14:15 80:2,21 82:15
124:20 125:14
144:3 211:25
212:24 222:15,23
227:6
**included (24)**
8:18,21 9:3,13 10:4
10:21 11:19 27:21

91:9 97:12,16 98:15
99:3,24 107:23
176:24 199:7
202:10 209:9 217:7
227:17 232:6 238:7
239:6
**includes (17)**
24:14 55:11 58:8 89:1
89:25 110:25 111:8
112:9 113:1 152:12
155:11 163:11
204:2,24 214:9
227:2,4
**including (2)**
82:18 95:11
**Incomplete (5)**
147:4 152:10 153:11
187:20 236:25
**inconsistent (1)**
129:14
**Incorporated's (1)**
92:12
**incorrect (2)**
87:1 208:22
**incorrectly (1)**
74:2
**independent (3)**
44:2 46:11 56:24
**independently (1)**
126:5
**INDEX (1)**
3:5
**indicate (6)**
21:4 51:4 52:8 129:25
130:8 140:10
**indicated (6)**
26:7 32:25 59:13
108:14 157:10
180:12
**indicates (2)**
141:15 148:12
**indicating (1)**
156:22
**indication (4)**
96:3 130:21 131:2
142:17
**information (3)**
216:17 225:5 236:1
**infringe (31)**
10:15 17:22,25 49:11
49:16,21,24,25 50:7
69:1,21 73:20 82:17
83:4 85:8 92:4
94:19,24 100:14

101:4,6 102:14
103:4 107:5,9 116:7
117:1 123:7 129:21
152:8 176:13
**infringed (1)**
45:19
**infringement (36)**
38:16 40:24 44:11,12
45:1,2,14,25 91:8
94:9 96:17 97:11,15
97:18 98:2,6 99:1
100:16 102:20
116:14 117:15,16
118:18 121:4,5
122:14 123:12
124:1 128:9 129:15
172:19 182:10
207:17 225:18
228:20 239:11
**infringes (9)**
43:3,6 50:11 118:9,11
118:12 121:19
123:19 128:5
**infringing (11)**
49:9 91:23 101:17
114:17 115:8 117:5
117:8 119:8 174:24
184:11,18
**initial (4)**
3:8 6:1 59:17 185:5
**initialed (1)**
248:7
**initially (1)**
18:25
**initiates (2)**
217:23 220:21
**initiation (1)**
113:8
**injected (1)**
74:5
**injunction (1)**
164:8
**ink (1)**
248:7
**input (2)**
28:5 147:7
**inside (4)**
120:24 143:16 218:13
218:18
**insignificant (7)**
104:25 105:2,10,18
106:8 117:14
122:20
**inspection (1)**

Highly Confidential - ATTORNEYS' EYES ONLY

Page 12

installed (1)
173:8
instance (7)
29:1 147:22 177:20
188:13 200:1
224:17 237:15
instances (19)
28:15 37:18 91:8
97:11,15 98:6 99:2
101:20 102:4
108:10,21 109:16
110:24 147:11
176:23 183:22
196:17 212:24
242:8
instant (2)
128:20 245:3
instantiation (2)
224:18 225:7
instructed (3)
52:18 81:7 206:25
instructions (1)
209:21
instrumentation (1)
181:3
insubstantial (2)
122:5,5
intent (22)
173:17 211:13 212:1
212:3,10,13,18
213:7,10,16,17,24
214:9 216:18
220:18 223:3,13
224:5,12,21,23
225:5
intents (1)
212:20
interacting (1)
113:18
interested (1)
246:19
interesting (1)
147:20
interface (62)
53:24 54:6,9,12,17
55:1,9,10 57:14,19
57:20 58:11 61:2,11
61:12 62:7,9,11,24
63:7 64:5,19,19,20
64:21,23 65:1,10,17
65:23,24 66:3 72:10
72:21 73:6,24 74:9
74:10 76:1,2 82:21

93:12 95:5,9,11,14
116:4 118:7 119:24
157:7 165:23 166:8
166:12 167:7,12
182:15 197:3
199:18 226:7
228:22 230:5 234:5
interfaces (1)
88:8
interpret (1)
85:5
interpretation (1)
69:1
introduce (1)
4:18
invalid (2)
39:4 46:4
invention (6)
137:8,15 140:6
145:14 152:21
160:6
inventors (1)
137:7
invoked (4)
211:24 216:9 219:11
237:18
invokes (3)
19:9,11 114:10
involve (1)
35:15
involvement (1)
35:24
involves (5)
40:22 150:18 162:13
163:11 181:3
issue (25)
20:25 36:14 42:11,25
44:18,19 46:13
50:14 55:22 67:19
83:12 133:13
134:22 135:1,3
136:9,13,15,17
169:15,19 188:1,2
207:11,13
issued (1)
66:21
issues (5)
29:19 38:5 69:2,11
82:21
ITC (10)
34:20 35:3,14 133:16
133:19 134:1,2,23
135:5 136:5
ITC's (2)

134:6,17
items (1)
172:13

_____
**J**
_____

J (1)
248:1
January (1)
74:21
Jeffay (25)
2:24 4:21 7:14,19
15:14 16:7 18:7
20:3,13,16 21:8
22:17,21 24:20
25:18 27:11,21 28:5
28:20 59:6 70:17
97:21 204:18 216:6
216:13
Jeffay's (18)
7:4,7,25 11:16 17:19
18:18 21:13,19,20
22:7,9 31:8,12,23
32:9,18 211:6
242:25
Jelly (15)
73:13 93:24 94:8
107:11,15 108:4,19
108:20 109:13,23
129:19,24 130:7,19
132:4
job (2)
1:25 150:12
John (2)
2:16 4:19
Jose (2)
1:3 4:8
judge (2)
39:23 81:7
judgment (8)
3:13,13,17 74:19,23
74:24 92:2,14
July (1)
8:14
jumped (1)
202:16
jumping (1)
191:2
June (2)
148:19,21
jury (9)
49:24 52:18 66:21
81:8 99:10 116:25
129:21 206:24
211:2

jury's (1)
129:14
JX35 (1)
172:6
JX50 (3)
210:11,19 238:5

_____
**K**
_____

keep (4)
90:11,12,14 202:8
keeps (2)
218:8 240:19
Kevin (2)
2:24 4:21
Kim's (1)
15:12
kind (11)
44:2 45:12 82:23
83:25 137:24
140:13 141:11
142:11 150:19
158:19 181:3
know (42)
23:14 25:11 35:19
37:13 38:11 39:23
40:5 43:12 50:18,20
57:2,7 75:2 78:17
78:20 84:11 90:9
114:1,20 115:16
116:10 129:9 134:1
134:10,11,12 138:4
138:10 142:24
143:13 153:15
154:7 158:18,21,22
178:7 179:16 180:3
205:18 208:12
214:12 243:20
knowing (2)
27:6 158:17
Korean (1)
1:9

_____
**L**
_____

labeled (4)
149:6,11,20 172:6
lacks (1)
70:18
language (22)
63:17 67:12,21 71:1
71:10,15,19,19,20
71:23,24 72:2,4
76:11 93:20 102:9
142:4,12 158:13
167:19 168:3

229:12
late (1)
51:11
launch (6)
94:3 199:20 209:25
214:18 233:25
235:3
launched (7)
189:17 211:22 213:20
221:22 227:18
234:18 236:7
launches (1)
236:9
launching (17)
182:17 202:24 209:4
209:12 210:8
213:11 214:15,22
216:19 220:19
223:15 229:21
230:2,6,20 231:10
234:7
lawyer (1)
133:25
lead (1)
210:24
leads (3)
113:20 209:4,12
learned (1)
10:19
left (12)
104:16,23 105:1,11
105:19,24 106:4,9
185:13 186:11
220:6 222:24
legal (49)
4:13 36:23 38:3,20,24
40:11 41:7,9,19
42:9 43:12,20 44:4
44:6,16 45:17 46:14
50:17 54:19,22 55:4
55:20 56:10 57:1,6
57:16 58:3 64:8,10
65:5 72:25 74:14
88:20 99:13 120:19
122:11,22 123:9
134:14 137:23
138:1,9,24 150:16
150:25 152:11
153:10 155:8
167:23
length (3)
103:7 111:14 113:15
lengthy (1)
136:4

Highly Confidential - ATTORNEYS' EYES ONLY

**let's (25)**
5:17 16:24 26:21
30:22 58:19 62:8
67:11 70:2 73:10,15
92:10 101:12
103:16 113:23,24
141:21 144:16
163:22 169:21
181:8 201:15
202:18 206:8 210:9
213:14
**level (5)**
122:24 219:3,4
220:23 232:12
**liability (1)**
1:12
**lift (1)**
113:21
**lifted (2)**
121:3 177:22
**lifts (1)**
128:3
**light (2)**
79:19 88:1
**limitation (69)**
53:9,17 54:9,17 55:1
55:17 56:8,14 57:14
58:1 60:14,16,17,24
61:11 62:25 63:7
64:5 71:4,13 74:9
75:25 80:2,21 81:1
87:17 95:6,15,20,25
115:23 116:3,4
118:10,20,21
119:24 124:8,9
126:9 127:18
139:20 144:24
156:7,13 157:6,8,18
158:1,4,8,10 159:13
159:19,23 160:20
160:22,23 161:3,5
162:11 163:1,2
166:9,12 167:7,15
225:16 228:23
**limitation-by-limita...**
45:6
**limitations (2)**
49:21 216:8
**limited (2)**
1:12 18:14
**limiting (1)**
55:1
**limits (2)**
56:7,13

**line (46)**
18:6 19:8 32:7 50:25
53:6,21 66:18 75:23
76:12 78:1 90:25
93:9,21 97:2 104:25
110:24 112:24
118:16 119:7 124:6
137:6 138:13 139:7
139:9 144:18 156:2
177:9 201:22
202:22 203:15
214:25 215:10,13
216:6 223:11 228:8
234:24 242:23
247:8,10,12,14,16
247:18,20,22
**link (1)**
79:22
**linked (199)**
54:2,13 58:6,6,11,14
59:7,24 60:3,9,9,12
61:4,7,13,17,20,21
62:1,2,13,14,21
63:3,6,10,11,23
64:3,5,14,15,16
65:1,8,11,16,17,18
65:22,24 66:4 69:17
69:20 70:22 78:1,12
78:16,23 79:5,14,17
79:20 80:3,22 81:12
82:8,10,11,16,20
83:3,9,14,16,17,22
83:25 84:3,19 85:2
85:4,7,16,21,22
86:21,22 87:23,25
88:17 89:2,4,7,14
90:1,7 93:12,22
94:5,18,22,24 98:12
98:13 100:6,9,10,13
100:23,24 101:2,5
101:14 103:2,15
124:11,22 125:2,14
125:18,23 126:3,5
126:11 127:2,4,11
127:15,20 129:3
131:12,16 175:4
181:24 182:16,16
182:21,23 183:4,11
183:16 188:6
190:21,22,23
191:17 192:7,16
197:4,19,21,24
198:3,4,5,22,25
199:6,16,17,19,19

200:2,19,22,23
201:5,6,25 202:7,13
203:4,9,11,18 204:3
204:8,25 205:8,23
206:2,13 207:10,12
207:19 208:8
212:14 214:1,5,6
226:21,24 228:23
229:7,10 230:9,18
232:14,15 234:8
235:3,3 239:17
240:9 241:1,3,8,9
▇▇▇▇▇▇▇
19:11
**linking (25)**
51:25 52:13 53:13,16
59:9,25 60:5,19,23
62:19 63:24 66:22
79:16 80:11 81:2,9
87:16 95:23 159:14
160:25 161:6
162:18 201:25
202:6 204:15
**links (6)**
58:17 60:8 67:14
68:25 82:23 87:6
**list (4)**
174:14 191:13 192:21
192:22
**listen (1)**
80:14
**listing (1)**
243:10
**lists (1)**
89:4
**literal (5)**
116:13 117:15 121:4
128:9 225:9
**literally (10)**
73:20 116:7 117:1,6
117:24 118:3,9,11
128:7 234:21
**litigation (1)**
136:10
**little (15)**
69:13 78:4 107:14
123:3 135:7 138:12
141:22 161:25
167:4 181:11
203:14 221:16
222:3 227:11
238:17
**live (1)**
207:7

**Livenote (1)**
246:5
**LLC (1)**
1:11
**LLP (1)**
1:21
**locate (5)**
151:9,13 153:6,23
169:17
**located (2)**
150:19 154:25
**locates (3)**
151:25 155:2 161:22
**locating (16)**
150:3,4,5,12 151:6
152:13,23 154:6
155:11,19 156:22
158:14 160:5,9
162:14 163:12
**location (4)**
145:24 151:17 211:25
225:11
**logically (1)**
79:20
**long (26)**
28:17 92:19 93:11,17
100:9 104:5,15,21
105:4 106:12,14,25
111:17 112:12
113:14 134:24
135:3,4 136:16
176:5,8 179:4,9,18
179:20 180:25
**longer (20)**
17:21 48:11 117:5,24
118:3,9,11 121:4
128:8 157:15 179:3
193:11,19 195:3
198:10,17,22 219:5
219:13 228:21
**look (48)**
12:4 15:13 21:17 22:2
23:19,20,25 24:4
25:2 26:2 27:15
32:14 33:14,22,23
33:25 34:8 38:6
42:1 47:14 48:10,14
48:23 49:3 53:19
59:5 61:11 64:13
66:17 75:2,22 92:8
103:21 104:11
114:22 122:23
135:7,17 139:4
141:19 142:1,22

146:7 156:2 174:14
185:9 188:25 228:8
**looked (21)**
8:13 16:21 22:5 26:10
26:13 27:22 42:2
47:5,6,9,13,25 48:2
48:8,20 93:7 134:22
134:25 178:19
218:23 243:5
**looking (17)**
26:5,9 27:3 31:18
32:2 36:18 42:10
50:4,21 70:3 93:1
135:1 139:8 175:2,3
215:7 238:5
**looks (3)**
75:14 89:19 120:25
**lost (1)**
24:6
**lot (1)**
210:3
**lunch (1)**
132:9

**—————————————**
**M**

**M (1)**
24:2
**Madison (1)**
2:17
**mail (3)**
194:4 200:12 226:8
**main (2)**
35:20 86:8
**major (2)**
48:21 154:16
**making (10)**
67:2 86:5 111:7
116:15 166:16,17
188:3 214:2 215:24
226:19
**manager (3)**
211:14 212:23 223:4
**manually (14)**
139:17 140:23 154:25
156:4 157:4,10,16
157:21 158:14
159:3 160:5 163:16
165:25 169:16
**mark (12)**
5:17,25 6:4 74:18,20
81:19,22 92:10
132:17 146:21
163:22 213:19
**marked (9)**

TSG Reporting - Worldwide   (877) 702-9580

Highly Confidential - ATTORNEYS' EYES ONLY

Page 14

| | | | | |
|---|---|---|---|---|
| 5:21 6:3,7 74:25 | 72:16,20 73:5 74:9 | 83:21 84:2 85:2,16 | 224:20 225:25 | 189:10,23 190:13 |
| 81:25 92:15 132:20 | 75:25 76:20 77:21 | 85:22 86:7,9,10,15 | 226:1,5,15,20,23 | 191:10,18 193:4 |
| 164:1 165:16 | 81:5 84:23 167:19 | 86:22 87:2,10,11,24 | 227:1,6,16,22 228:5 | 195:2,23 196:5 |
| **marriage (1)** | 168:3 235:20 | 88:7,9,11,14,17 | 228:16,17,22,22 | 198:18 199:5,12 |
| 246:19 | **means (10)** | 89:1,6,11,12,16,25 | 229:3,6,6,9 230:2,8 | 200:23 201:7 |
| **Massachusetts (1)** | 57:6 120:14 150:3 | 90:5 91:3,18 93:12 | 230:8 231:6,13,15 | 207:19 208:1,19 |
| 2:8 | 151:3,5 154:15 | 93:21,25 94:5 97:6 | 231:19,25 232:7,9 | 210:17 217:16 |
| **match (8)** | 231:3 234:20 | 104:4,9 105:4 | 233:13,18,22 235:9 | 219:6 220:16 |
| 143:17,17 144:9,14 | 236:12,15 | 106:15,23,24 107:9 | 236:21,23 237:2,9 | 222:14,22,25 223:5 |
| 145:22 147:8,18 | **meant (7)** | 107:23 108:5,6,8,22 | 237:14,16,17,17,18 | 223:22 225:1 |
| 152:21 | 15:1 58:18 71:7 202:7 | 109:2,17,20,23 | 237:19 238:10,10 | 226:10 231:24 |
| **matched (1)** | 225:8 234:21 | 111:1,9 112:10 | 238:13,16,19,21,22 | 232:8 238:8 239:8 |
| 47:22 | 239:22 | 124:19,19,21 | 238:24 239:3,13 | 239:10 240:2 |
| **matcher (1)** | **measurement (1)** | 125:13,14,20,24 | 240:1,3,10,15,18 | 241:13,24 242:7 |
| 141:3 | 180:6 | 126:25 127:1,10,14 | 241:10,22,23,25 | **method (17)** |
| **material (6)** | **mechanism (1)** | 129:3 131:8,9,12,22 | 242:6,8 | 19:9,10 28:5,16 142:5 |
| 139:18 156:6 157:23 | 145:11 | 131:25 148:12,13 | **menus (2)** | 142:8,9 216:17,25 |
| 157:24 166:4,21 | **medications (1)** | 170:10,14,15,23,25 | 185:6,8 | 218:5,10 221:1,6,20 |
| **materials (2)** | 5:13 | 171:5,9,10,13,15,18 | **mere (1)** | 223:2 227:14 |
| 32:17 42:2 | **Medis (3)** | 171:23,25 172:1,7 | 94:2 | 231:22 |
| **matter (12)** | 1:20 4:17 246:4 | 172:13,15,23 173:4 | **merely (2)** | **methods (5)** |
| 4:5 17:18 35:7 36:19 | **meet (1)** | 173:8,14,19,21,24 | 154:23,24 | 209:19,20,22 223:4 |
| 36:20 37:15,17 | 229:12 | 174:19 175:8 176:4 | **message (14)** | 223:14 |
| 138:14 185:5 | **memory (7)** | 176:9,12,24 181:9 | 7:16 9:4,13 10:4 | **middle (1)** |
| 187:25 205:10 | 38:6,22 50:4 69:4 | 181:12,15,18,22 | 11:18 29:12 65:15 | 223:1 |
| 246:20 | 92:25 95:17 225:10 | 183:4,10,21,22 | 182:14 184:14 | **Mill (1)** |
| **matters (2)** | **mention (2)** | 184:12,19,21,22,23 | 234:10,22,23 | 2:11 |
| 44:6 46:14 | 76:24 125:23 | 185:2,3,13,21 186:4 | 235:19,22 | **mind (1)** |
| **McKee (3)** | **mentioned (14)** | 186:7,9,11,12,18 | **messages (57)** | 113:24 |
| 2:16 4:19 244:24 | 9:23 15:14 16:7 29:4 | 187:7,11,15,16 | 6:21 7:2,5,9,9 8:5,16 | **minus (1)** |
| **mean (60)** | 35:2,13 47:12 48:16 | 188:5,11,13,22,25 | 8:17,22,22 9:7,17 | 8:14 |
| 8:20,21 10:8,9 11:15 | 136:8 142:22 146:2 | 189:1,3 190:21,24 | 9:21,24 10:19,20 | **minute (3)** |
| 12:11 17:2 23:22 | 156:20 225:21 | 191:7,13,16,17,24 | 11:1,11,13 12:8,8 | 14:7 166:15 239:16 |
| 24:4 29:23 31:2 | 237:11 | 192:4,13,16,18,22 | 12:16,17,18,23,25 | **minutes (2)** |
| 32:21 33:10 34:7 | **mentioning (1)** | 193:16,25 194:7,19 | 13:2,3,7,9,14,14,17 | 58:24 169:14 |
| 41:25 43:11 46:9 | 77:2 | 194:23 196:3,6,8,12 | 13:24 14:4,10,11,15 | **Mischaracterizes (4...** |
| 48:8 49:15 50:18 | **menu (369)** | 196:18 197:8,20 | 14:18 15:7,10,15 | 7:23 14:6 15:23 16:19 |
| 58:16 60:1 63:15 | 7:10,15,22 18:9,13,23 | 198:2,16 199:6,8,10 | 16:3,6,8,17,23 17:9 | 22:12 26:19 29:9 |
| 69:11 78:10 79:20 | 19:1,12,13,24 20:4 | 199:13,14 200:1,11 | 17:10,12,16,17,22 | 34:6 44:15 55:3,19 |
| 81:11 96:13 97:24 | 20:11,22 21:4,8,16 | 200:16,21 201:6,8,8 | 17:25 18:8,12 19:1 | 65:4 77:9 79:8 80:5 |
| 100:14 101:3,12 | 21:22,25 22:4,16,20 | 201:23,24 202:11 | **messaging (2)** | 86:25 92:6 112:22 |
| 115:16 134:11 | 23:11,11 24:15,19 | 203:17,18 204:2,2,7 | 9:8 185:17 | 115:11 120:18 |
| 136:14 138:21 | 25:9,22 26:8,13,17 | 204:7,21,24,24 | **messenger (74)** | 126:20 128:15 |
| 145:9,11 156:12 | 27:1,8 29:2 33:1 | 205:9,22,23,25 | 9:3,14 10:4,22 11:10 | 133:23 134:9 140:3 |
| 172:25 203:23,24 | 46:25 47:10,18,25 | 207:9,12 208:1,3,16 | 12:6 14:9 46:19 | 141:18 145:7 147:3 |
| 203:24 204:12,14 | 48:4,7,12 54:1 | 208:18 209:1 210:6 | 49:10 71:3,12 | 149:13 150:15 |
| 204:16 205:14 | 55:13 57:18,21,23 | 210:22 212:10,17 | 103:19 109:5,7,14 | 155:7 161:13 |
| 209:17 214:13 | 58:5,10 60:3,10 | 212:25 215:3,19,24 | 110:12,16 114:17 | 164:15 166:24 |
| 217:8 224:15,16,16 | 61:4,21 62:2,10,11 | 216:7,16 217:9,18 | 114:23 115:8,18,22 | 168:22 179:14 |
| 225:7,9 234:21 | 62:12,16,21 63:11 | 217:23 218:1,7 | 116:12,19,21 | 190:18 196:1,20 |
| 235:1 239:21 | 64:14,23 66:3 70:18 | 219:13,19 220:6,13 | 130:14 169:21,25 | 208:21 222:19 |
| 243:12,24 | 70:20 78:1,11,16,22 | 220:17,21 221:10 | 170:10,24 171:24 | 227:9 232:11 |
| **meaning (16)** | 79:21 80:2,22 81:12 | 222:1,2,4,7,24 | 174:6 181:10,12,13 | 234:15 |
| 41:9,11 51:21 68:21 | 82:10,16 83:16,21 | 223:12,24 224:3,12 | 181:14 186:17 | **mischaracterizing (1)** |

Highly Confidential - ATTORNEYS' EYES ONLY

24:10
**misread (2)**
22:10,16
**missed (2)**
102:1 151:21
**missing (5)**
56:19 87:12 127:8
201:11 205:2
**misunderstanding (1)**
205:14
**mixing (1)**
136:24
**modification (10)**
12:7,13,20 13:6 14:21
15:4 16:6,16 17:14
170:21
**modifications (5)**
13:22,23 42:20 49:19
170:4
**modified (5)**
14:25 15:7 16:2 48:11
49:20
**moment (1)**
8:15
**money (1)**
35:15
**month (1)**
8:14
**morning (2)**
5:8,9
**motion (7)**
3:12,13,17 74:22,23
92:2,13
**Motorola (3)**
34:21 66:20 96:11
**mouse (10)**
104:17,19,23 105:2
105:11,19 106:2,10
140:9 155:18
**mouth (1)**
146:3
**move (1)**
231:23
**moving (2)**
237:6 239:17
**Mowry (45)**
1:18 3:2,5,8,10,15,20
4:5 5:3,8,21 6:1,3,5
6:7,9 30:2 34:14
37:23 66:15 74:25
75:4 76:13 81:23,25
82:2 90:19,23 92:15
92:17 132:16,20,23
133:2 157:17

163:24 164:1,3
169:24 175:16,20
207:25 232:18
238:2 246:8
**multiple (37)**
59:7,18 65:1,18 67:23
68:25 69:6,20 79:5
79:14 83:3,22 84:19
85:2,4,7,16 86:16
86:21 94:18,22
100:10,23 101:5
103:10,11 108:16
181:23,24 188:5
201:3 202:22
204:25 205:8
206:12 207:10,12

_____

**N**

**N (3)**
2:1 3:1 4:1
**name (7)**
4:13 27:24 148:13
216:25 236:2 247:1
247:3
**narrowed (1)**
198:11
**narrows (1)**
56:23
**necessarily (7)**
44:8 56:23 73:16 86:6
86:11 145:10 152:2
**necessary (5)**
88:7 111:11 129:15
180:18 181:6
**need (21)**
35:8 69:5 73:16 82:9
83:16 85:6,21 86:7
86:9 87:24 94:22
103:9,10 143:23
144:22 145:15
151:13 154:2
158:18,21 180:21
**needed (3)**
79:13 94:17 100:5
**needs (4)**
83:3 154:7 155:20
244:24
**negative (1)**
28:19
**nested (2)**
218:12,18
**never (4)**
28:8 187:1,7 237:15
**new (12)**

1:10 2:5,5,17,17,21
4:16,16 23:2 32:2
95:2 110:4
**newly (1)**
183:20
**next-to-last (1)**
52:25
**nitpicky (1)**
224:16
**Nokia (1)**
165:19
**non-trivial (1)**
187:24
**nonexpert (1)**
44:5
**Northern (3)**
1:2 4:7 84:13
**Notary (3)**
1:20 246:5,24
**note (1)**
58:21
**noted (1)**
248:6
**notes (1)**
103:21
**notice (2)**
27:10 131:8
**noticeable (1)**
58:9
**November (1)**
246:22
**number (24)**
33:10 47:9 51:5 67:1
82:9,18 87:24 89:20
94:4 101:14 143:4,7
143:9,14,18,21,24
144:10 147:16
158:23,24 171:1
215:10 235:24
**numbers (4)**
82:20 103:12 143:19
184:15

_____

**O**

**O (1)**
4:1
**object (6)**
223:13 224:5,13,21
224:23 225:5
**objection (196)**
7:20 8:19 9:5 11:21
13:10,19 14:5 15:22
16:18 20:19 22:11
23:5,13 24:17 25:1

25:10 26:18 27:2
29:8 30:4,6 33:4
34:5 36:3 37:1,11
38:2,19 39:7,18
40:8,19 41:6 42:8
42:18 43:19 44:14
45:4,16 50:16 54:18
55:2,18 56:9,25
57:15 58:2 62:4
63:4,12 64:7 65:3
69:22 71:5,14 72:24
73:9 74:13 77:1,8
78:9 79:7 80:4,24
81:18 85:25 86:24
88:19 90:2 92:5,22
95:7,22 96:6,20
98:17 99:12 100:18
101:22 102:7,23
105:21 107:7,24
108:11 109:6 110:7
111:24 112:6,21
113:9 114:19
115:10 116:9
117:17 120:3,10,17
122:10,21 123:8
126:19 128:14
130:2 131:6 133:22
134:8 136:2,11
137:22 138:5,5,23
140:2 141:17
143:22 145:6 147:2
149:12 150:14,24
152:10 153:9 154:1
154:21 155:6
159:24 161:12
163:4 164:14
166:23 167:22
168:21 170:2
171:21 173:10
174:20 179:13
180:4 182:12 183:6
183:25 185:7,15,24
186:19 187:20
188:18 189:11,25
190:17 191:25
193:9 194:2,16
195:7,25 196:19
197:15 198:19
199:9 201:9 205:12
206:19 208:20
212:2 213:9 214:11
218:2 219:8,15,25
220:8 222:18
223:25 224:8 226:3

226:16 227:8
228:25 229:8,17
230:10 231:1
232:10 233:1
234:14 235:11
236:24 239:14
240:5 241:5,17
242:2,11 243:7
**observe (1)**
180:19
**obtains (1)**
216:17
**occur (2)**
162:3 210:8
**occurring (3)**
73:17 121:3 213:18
**occurs (8)**
119:2,11,19 120:8
168:19 177:12
213:2 220:12
**October (3)**
1:22 4:12 31:19
**offer (1)**
195:10
**office (1)**
8:12
**offices (1)**
1:21
**official (1)**
84:9
**Oh (1)**
7:3
**okay (50)**
6:11 9:11 10:14,17
12:24 31:14 32:11
34:13 52:23 62:24
68:1 69:18 70:9
75:9,21 79:21 80:14
80:25 90:12 96:16
97:3 100:2 106:7
110:22 113:23
115:2 133:4 134:16
136:8 141:13 142:2
142:16 153:20
158:9 169:23
170:19 175:22
188:10 200:17,20
202:9 206:6 215:14
219:23 223:9 230:7
233:10,21 243:15
244:10
**on-touch (1)**
19:9
**once (11)**

Highly Confidential - ATTORNEYS' EYES ONLY

9:22 10:18 83:7
130:19 177:23
187:17 188:14
208:7 210:21 236:6
237:5
**ones (2)**
12:23 217:3
**ongoing (12)**
3:8,10 6:2,6 29:19
34:24 45:13 50:14
51:16 67:18 76:21
172:20
**open (5)**
208:5 215:4,21
224:24 236:13
**opened (1)**
234:18
**opening (34)**
6:10 7:8 10:25 11:4
11:12 12:3 18:24
19:6 23:3,9 24:13
29:7 31:1,11 49:3
50:23 70:2 71:25
72:3,7 106:18
110:21 118:14
121:9 170:18 172:5
177:3 184:8 199:24
201:16 207:23
210:9 218:22 238:3
**opens (3)**
203:4,9 235:5
**operate (2)**
18:18 232:24
**operated (1)**
181:7
**operating (1)**
209:24
**operation (3)**
95:10 179:16 180:20
**operations (1)**
148:13
**opine (2)**
17:9 124:6
**opined (1)**
7:14
**opining (2)**
16:15 17:24
**opinion (45)**
7:19 17:21 18:11
36:17,21 49:7 59:17
60:12 64:25 66:2
68:9,11,12,15,19
72:8 79:13 82:3,14
83:2,5,6 84:18 85:3

85:14 87:14,19
94:16,22,25 100:3,4
103:3 105:9 106:7
115:21 119:1
124:15 125:7 126:8
136:14 173:12
176:12 178:2
204:19
**opinions (33)**
6:13 17:2 29:18,24
35:25 36:10,13
37:19 39:20,24,25
40:3 43:10,23,23
44:2,8,23 46:10,11
85:12 91:8 96:18
97:15,22 98:2,6,9
99:1 101:25 102:13
102:20,25
**opposed (1)**
241:2
**opposition (3)**
3:17 92:2,13
**option (6)**
173:5,7,18,20 191:20
193:11
**optional (1)**
143:24
**options (2)**
197:23 214:5
**order (14)**
3:12 36:5,8 74:19,21
74:21 76:8 77:16,18
85:8 94:18 111:12
158:20 162:2
**ordinary (19)**
51:21,22 59:23 63:22
64:2,13 68:20 72:15
72:16,20 73:5 74:9
75:25 76:20 77:21
84:23 203:16 204:5
205:21
**original (10)**
26:3,16,25 56:3
190:24 197:20
209:1 218:11 221:3
223:8
**originally (2)**
21:3,21
**outbox (1)**
235:21
**outcome (1)**
246:20
**outer (2)**
218:13,18

**output (2)**
54:1 61:3
**outside (3)**
6:23 137:24 138:25
**outsider (1)**
44:5
**overall (7)**
101:3 113:1,2,6,20
235:17 240:20
**overly (1)**
225:8
**owner (1)**
137:15

_____

**P**

**P (3)**
2:1,1 4:1
**p.m (14)**
132:12,13,13,14
175:12,14,14,17
237:21,23,23,24
244:23 245:2
**package (3)**
211:14 212:23 223:3
**page (36)**
2:11 3:2,6 18:2,4 19:7
31:19 50:23,25
52:25 75:19,22,23
82:3 93:8 115:20
128:23 129:11
139:5 165:7,18
167:9 199:25
201:16,21 215:1,13
228:9 247:8,10,12
247:14,16,18,20,22
**Palo (1)**
2:12
**pandit (74)**
133:5,7,20 134:19
135:9,18,19,22,24
137:9,17,21 138:14
138:20 139:10,16
139:17,25 140:4,5,6
140:11,14,21,24
141:4 142:21,23
144:18,20,20 145:4
145:14,23 146:4,10
146:24 147:6,11
150:8 151:23
154:10,14,16,18,24
156:3,5,17,24
157:21,22 160:4,6
161:21 162:3 163:1
163:15 164:11,20

164:24 165:2,4,5,12
165:15,22,24 166:1
168:19,24 169:6,12
169:18
**paragraph (135)**
12:2,5,15,16,19,22,24
13:1,4,13,13,20
14:3,8,12,17 15:9
16:5 17:9 18:4 19:6
19:20 20:17 32:5
34:3 48:23 49:1,3
51:4,14,19 52:2,5
58:19 59:2,3,5
63:20,21 66:16 70:3
70:14,16 71:7,10,17
71:18,20,23,25 72:3
72:4,8,15 76:14
82:2 83:15 84:17,25
86:19 87:14 90:24
90:25 91:14 95:4
96:4,16,25,25 97:25
98:25 100:15
104:11,14,24
106:17 110:20,23
113:24 114:3
115:20 118:13,16
119:5,6 121:8,12
124:5 125:11,12,17
127:24 129:6 130:4
137:3 138:13 139:4
139:5 144:17
155:23 156:3,17
159:20 161:9,16
166:17 170:17,20
171:19 172:4,5
177:2,3,9 184:7,10
189:1 199:23
201:18,19,21
202:18,21 203:15
207:22 210:9,10
214:24 216:2
218:21 223:7,10
228:7 238:3 242:20
**parameter (15)**
20:4 24:14,18,21,25
25:14,19 26:2,4
27:11,20,23,25 28:5
182:18
**parameters (6)**
20:2,23 21:9 22:18
26:5 27:6
**paraphrase (1)**
71:24
**paraphrased (1)**

72:4
**paraphrasing (1)**
71:18
**pardon (1)**
139:6
**part (72)**
3:12 10:13 15:8 16:3
24:13 27:5 28:3
32:17 34:24 35:20
40:23,24 43:2 51:6
51:15 55:25 57:18
58:11 74:22,22 77:7
77:16,18,21 84:2
92:23 93:17 98:14
99:14,20 104:2
107:19 112:19
113:19 115:12
121:12 124:21
125:15 136:9 143:8
143:20,24 152:17
158:11 160:3,6
162:22,23,25 163:3
164:12,22 171:19
172:23 174:6,16
175:8,9 198:17
209:11 210:6 212:8
212:10 213:24
214:21 220:3
222:16,24 227:21
229:23 237:3 239:1
**Partial (4)**
3:12,13 74:22,24
**particular (37)**
12:4 18:5 19:7 20:1
25:17 54:11 55:12
61:16 66:17 70:14
75:22 76:10 90:24
91:16 93:5,9 95:5
104:20 108:15,25
110:23 115:20
129:4 148:17 156:2
166:2 172:6 188:20
190:10 192:5 224:3
225:10,11 228:8
233:12 238:4
242:22
**parties (4)**
75:24 77:12 246:15
246:18
**Partly (1)**
169:11
**pass (7)**
141:9 144:8 199:20
209:25 234:1 235:4

Highly Confidential - ATTORNEYS' EYES ONLY

236:8
**passed (12)**
145:18,25 150:4
182:18 200:13
209:5 212:5,5
223:13 224:6,7,13
**passes (7)**
141:9 147:17 161:23
208:3 215:3,19
216:18
**passing (2)**
212:10 234:7
**patent (109)**
3:7,15,18,20 5:19
10:16 17:23 18:1
39:4 45:7,20,20
46:3 49:12,17,22
50:1,8,12 51:21
52:15,21,22 53:20
66:23 67:6,11,21
68:2,13 69:9 76:13
77:25 81:24 83:4
85:6 87:5 88:18,24
89:1,13,23,25 91:24
92:4 94:20 96:12
101:17 103:8 107:5
116:8 117:1 132:18
133:8,12 134:3,14
134:18,20 135:8,13
135:25 137:7,14,14
137:16 138:15
140:21 141:21
142:21 146:8,9,10
150:7,22 151:12,19
151:24 152:8,9
153:8,25 154:13,15
154:17 155:5
157:14 158:17
159:6,7 160:4,16
161:17 162:5
163:13,24 164:9
165:15 166:3 169:3
173:12 176:13
182:9,24 183:18
197:17 202:13
225:17 233:25
**patentee (1)**
38:17
**path (57)**
19:21 20:3,6,14 21:8
21:11 22:18,23
27:10 28:6 147:23
209:3,6,11,13,16,17
210:20,21 214:14

218:4 219:1,5
220:11,14 221:8,11
221:13 222:8,9,11
222:17 223:19
227:2,12,17,20,23
227:23 231:10,18
232:1,2 237:6
238:20 239:5,7,9,11
239:16,20,22,24
240:2,8,11,20
**paths (2)**
28:9,12
**pathway (9)**
210:6 211:5,7 220:25
221:17,19,21,22
222:6
**pattern (12)**
141:3 143:11,12,17
143:18 144:8,9,15
145:13,22 147:8,18
**pay (2)**
9:16 98:21
**paying (2)**
15:11 42:24
**payment (1)**
35:15
**PC (5)**
104:17 105:2,11,19
106:9
**penalty (1)**
248:4
**pending (3)**
96:4,8,13
**Pennsylvania (5)**
1:21,21 4:11 246:1,7
**people (3)**
25:15 46:15 143:18
**perform (16)**
70:22 108:25 109:15
192:6 195:22 200:4
202:24 208:5
212:19 213:6,23
215:5,21 229:14
231:17 233:6
**performance (2)**
211:16 226:13
**performed (25)**
107:16 124:7 176:17
180:12 181:19
190:16 191:7,14,23
192:10,23 194:24
195:6 196:14
197:10 210:25
211:15 225:24

226:2 230:17,19
231:17 232:20
233:7,14
**performing (8)**
42:13 45:13 76:21
166:2 174:16 197:6
228:3 230:23
**performs (3)**
124:9 126:9 127:18
**perjury (1)**
248:4
**person (13)**
51:22 59:22 63:22
64:2,12 68:20 72:16
147:13 203:16
204:5 205:21
234:19 236:6
**perspective (9)**
45:21,23 57:7 64:11
64:12 105:7,17
120:25 233:25
**peruse (1)**
75:3
**Ph.D (5)**
1:18 2:24 3:2 5:3
246:8
**phone (41)**
8:21 67:2 82:9,19
87:24 89:21 94:4
95:11 100:7,14,22
101:3,14 103:1,12
109:8 143:4,7,9,14
143:17,18,21,24
144:10 147:16
171:1 173:3,13,22
174:25 186:23
193:10,13 194:5
195:17 198:8
222:23 225:10,11
235:24
**phones (10)**
91:2 97:5 173:1,8
179:16 180:19
181:7 228:15
231:11,12
**phrase (35)**
38:8,11 40:2,10 43:8
44:6 51:25 52:14
53:15 60:4,4 61:1
61:16,19,25 63:6,9
72:9,14,20 73:5
77:25 78:8,10,15,19
78:22 79:1,15 80:12
81:2,3 95:20,23

157:5
**picking (1)**
129:2
**picture (4)**
210:18 211:18 220:24
222:23
**piece (3)**
133:20 145:21 238:24
**Pittsburgh (2)**
1:21 4:11
**pixel (1)**
104:21
**place (6)**
1:21 4:10 26:14
105:25 139:8
223:15
**plain (12)**
51:21 68:21 72:15,19
73:5 74:8 75:24
76:20 77:20 84:23
167:19 168:3
**Plaintiff (4)**
1:6 2:2 3:16 92:11
**playing (1)**
77:3
**please (10)**
4:18 5:2 26:22 66:12
90:21 132:15
164:17 175:18
236:13 237:25
**plural (6)**
82:16,22 103:9 126:2
127:20 128:18
**plus (1)**
8:14
**point (53)**
23:2 24:7 35:6,21
36:17,19 75:12,18
84:10 86:5,8 88:14
97:23 105:12
115:13 116:15
117:22 127:7
131:13 138:9 159:1
166:8,17 167:6
169:20 177:21
179:24 180:23
192:18 208:9
209:23 210:3
211:17 213:2,17
214:1,15 218:6,10
219:20 221:21,21
227:24 230:6
234:22 236:7,20
237:6 239:4 240:11

240:17,19 244:14
**pointed (14)**
20:3,16 21:8 22:17,21
22:23 24:20 25:18
27:11,21 28:6,21
232:5 242:20
**pointing (10)**
19:7 23:7 24:8 91:16
140:9 166:16 201:7
207:18 232:8
240:25
**pop (1)**
185:8
**pop-up (153)**
7:10,15,22 18:9,12,23
19:1,12 21:22,25
24:15 25:9 26:8,12
26:17,25 29:2 54:1
55:13 57:18,21,23
58:5,10 60:3,10
61:3,20 62:2,10,11
62:12,16,21 63:10
64:14,23 66:3 70:18
70:19 78:1,11,16,22
82:10,16 83:16,21
83:21 84:2 85:1,16
85:22 86:7,9,10,15
86:22 87:2,10,11,24
88:7,9,11,14,17
89:1,6,11,12,16,25
90:5 106:23,24
107:9 109:2 111:1,9
124:19 131:8,22
170:22,24 171:12
171:23 172:1 183:4
183:10 184:12,19
184:21,21,23 188:4
189:3,16 190:21
191:17 192:4,16
193:16 194:7 196:3
198:24 199:5,10,13
199:14 200:1,11,16
200:21 201:6,7,23
201:24 203:17
204:2,7,21,24 205:9
205:22 207:9,11
215:2,19 216:7,15
218:1,7 222:2,4
223:12,24 227:21
228:5,16,21,22
229:9 230:8 231:15
231:25 237:9
240:18 241:23

TSG Reporting - Worldwide   (877) 702-9580

Highly Confidential - ATTORNEYS' EYES ONLY

**pops (1)**
234:2
**populated (1)**
235:6
**portion (3)**
212:23 238:11 240:8
**portions (2)**
8:6,8
**position (7)**
50:6 79:4 166:11
177:18 178:16
180:25 199:4
**possibility (3)**
25:16 27:9 123:14
**possible (6)**
87:10 88:11 123:11
155:10 191:7
192:22
**postal (3)**
158:20,21,22
**potential (2)**
163:19 191:13
**potentially (10)**
20:22 21:7,16 22:4,15
108:7 153:3 172:1
180:15 198:12
**PPG (2)**
1:21 4:10
**practice (2)**
136:5 137:8
**pre- (1)**
129:21
**pre-detect (1)**
130:15
**pre-detection (2)**
119:9 129:15
**pre-installed (1)**
173:2
**pre-populated (1)**
236:10
**precedent (1)**
134:12
**precise (2)**
217:6 233:24
**precisely (2)**
200:3,8
**precondition (1)**
142:7
**predated (1)**
137:17
**predetermined (10)**
190:16 191:22 192:12
193:7 195:5,9,13
196:16 197:10,13

**predicate (8)**
59:24 60:13 61:20
62:1 63:10,15,24
64:4
**preference (1)**
187:6
**preferred (4)**
186:14 194:4 236:18
236:19
**preliminary (2)**
138:14 164:8
**preparation (6)**
30:13 31:25 33:17
75:11 92:21 93:5
**prepared (2)**
26:3 211:1
**preparing (1)**
31:1
**preponderance (5)**
38:18 40:6 42:16
43:18 44:13
**presence (1)**
100:12
**present (7)**
2:23 11:9 46:24
174:18,18 219:6
222:25
**presented (23)**
141:2 182:1,4,19
188:4 189:15
190:20 192:4,13,15
193:20,24 194:6
198:16,22,23
199:15 200:10
201:1 217:18
237:18 241:7,9
**presenting (1)**
48:12 65:17,19 197:4
**presents (6)**
93:12 181:23 202:22
203:18 204:7
205:22
**press (19)**
93:11,17 104:5,15,22
105:5 106:12,14,25
111:17 112:13
113:14 176:5,8
179:18,18,20
180:25 234:22
**presumably (2)**
89:17 143:12
**presupposing (1)**
188:19
**pretty (1)**

244:5
**previous (13)**
6:16 12:15,22 13:12
13:18 15:21 17:10
44:22 88:3 101:9
127:23 149:24
194:3
**previously (13)**
86:18 117:25 137:6
145:2 171:22,24
172:14 186:14
191:23 192:13
193:24 204:1
236:18
**primarily (1)**
160:14
**printouts (3)**
32:20,22 33:24
**prior (50)**
15:23 21:20 22:12
44:15 55:3 65:4
68:9 79:8,10 81:17
94:13 99:3,7,9
100:2,16 114:11
133:7,15,20,23
134:3 135:2 136:15
137:21 138:8,14,15
138:20 141:18
145:7 147:3 149:13
150:15 152:4 155:7
161:13 164:12,15
164:21 166:24
167:21 168:5,22
179:14 190:18
196:1,20 208:21
232:11
**priority (4)**
133:11 134:18,19
135:1
**probably (9)**
26:11 35:11 36:5
48:20 89:21 122:23
144:14 217:7 243:9
**problem (3)**
58:25 100:2 205:15
**proceed (5)**
66:13 90:21 132:15
175:18 237:25
**proceedings (2)**
137:13,20
**proceeds (1)**
148:25
**process (23)**
45:10,22 98:21 99:15

99:21 110:25 111:8
112:5,9,20,24 113:1
113:2,6,8,20 175:4
177:24,25 212:11
214:21 221:16
222:3
**processing (1)**
142:5
**processor (18)**
70:11,18,20,21 71:4
71:13,16 209:8
225:16,18,24 226:2
226:14 228:3,10
229:13 232:19,24
**produced (4)**
32:8,17 75:14 242:24
**product (18)**
34:17 35:16 36:1,14
36:15 37:21 40:17
41:5 45:19 123:19
124:3 129:8 185:25
189:10 225:3 226:5
231:24 239:8
**products (129)**
8:18 9:14 10:5,7,9,12
10:13,15,21 11:3,6
11:20 12:6 13:18
14:9 17:4 36:8 45:7
49:8,9,11,16,18,24
50:7 98:15,19 99:4
99:5,10,15,17,19,23
102:12 104:3 105:3
106:22 107:13
115:22,25 116:23
117:13,13 118:22
119:8 123:23,24
126:17 170:5,6,10
171:6,20 172:8,12
177:11 181:23
182:25 184:12
185:2,13,20 186:4,7
187:12,18,19
188:12,16,16 191:5
192:19 194:1,15,18
194:22 195:23,24
196:4,13 208:17,19
210:17 211:12,20
212:17,22 215:25
217:11,22 218:15
218:16 219:2,24
220:7,15 221:4,14
221:23,24 222:9,17
223:20 224:7,14
225:19 226:9 227:1

227:15 230:24
231:5 232:3,6,13,14
232:16 233:13
235:8 236:17
238:21 239:2,10,25
240:15 241:3,16
242:1,9
**professional (3)**
1:20 4:14 246:4
**program (1)**
70:21
**programmer (1)**
198:8
**programmer's (2)**
105:12,16
**programs (1)**
229:13
**proof (19)**
37:24 38:8,12,17 39:5
39:15 40:2,6 42:15
43:5,8 44:3,7,20
46:5,12,12,15
179:11
**properly (2)**
145:11,13
**protect (1)**
59:9
**protective (2)**
36:5,7
**prove (1)**
28:18
**provide (16)**
5:14 27:17 39:20,25
43:22 72:8 91:7
94:4 96:17 97:10,14
98:5 99:1 102:25
126:17 128:12
**provided (10)**
36:10 37:18 51:9
97:20 102:19
128:21 191:6,12,15
191:16
**provides (7)**
104:19 124:16,23
125:8 130:20
148:12 178:22
**providing (8)**
5:11 43:9 44:8,23
46:9 124:10 126:10
127:18
**proving (3)**
37:24 39:4 43:5
**Public (3)**
1:20 246:6,24

Highly Confidential - ATTORNEYS' EYES ONLY

**pulled (1)**
89:6
**purpose (2)**
28:14 87:8
**purposes (12)**
11:1 38:16 50:14
137:20 172:20
182:10,24 183:17
200:20 207:19
223:19 225:14
**put (11)**
21:6 25:15 89:5,8,20
89:22 146:3 155:17
177:22 204:19
236:13
**putting (1)**
113:19

---

**Q**

**qualified (1)**
127:13
**question (64)**
8:24 9:10 10:18 14:23
15:19,21 17:1,5
20:20,22 24:1,6
26:22 30:9,23 36:9
36:10,12 56:19
61:22 64:1,10 71:8
73:2,22 74:2,4,6
80:15,17 84:15 99:8
115:5 125:4,21
127:7 130:3 138:1
139:1 140:17
146:21 149:16
151:15,20 152:14
153:14,16,18
155:10 158:3
159:22 160:2
164:18 167:2,25
168:14 175:2 188:9
190:7 197:25
205:13 213:19
233:9 237:8
**questions (4)**
149:24 244:18,19,22
**quick (2)**
90:11 175:10
**quickly (2)**
120:22,24
**Quinn (2)**
2:15 4:20
**quite (1)**
209:21
**quote (1)**

66:22

---

**R**

**R (4)**
2:1 4:1 246:3 248:1
**random (2)**
145:12 147:14
**re-exam (2)**
137:19 138:7
**reach (4)**
17:13 221:1 239:3
240:17
**reached (2)**
68:15 221:5
**reaches (1)**
218:6
**reaching (1)**
210:3
**read (22)**
15:25 21:3 47:17
61:23,24 73:1,3
80:18 125:6 130:3,4
130:6 149:17
151:23 153:21
154:12,16 164:19
168:1 200:21
228:20 248:4
**reading (3)**
141:21 142:21 246:14
**ready (1)**
214:18
**realize (1)**
127:23
**realized (1)**
22:10
**really (9)**
9:16 27:4 58:5 69:4,7
118:2 156:15
160:14 195:16
**reason (24)**
15:11 21:18 22:22
31:17 38:23,25
39:11 82:5 94:7
113:3 134:17 152:3
152:3 154:16,19
247:4,8,10,12,14,16
247:18,20,22
**reasonable (4)**
28:11 39:10 87:12
88:13
**reasoning (1)**
94:25
**reasons (7)**
49:6 82:18 86:19 87:4

115:24 152:4
201:24
**rebuttal (12)**
3:14 31:9,23 32:9,18
33:17 81:21,21,22
136:19,21 242:25
**recall (48)**
7:12,17 10:23 11:17
11:24 17:11 19:4
23:6 31:8,10 32:1,4
33:16,16 35:21
36:22,23 37:3,12
38:7 40:9 42:10
44:19 45:9,23 46:2
47:17 48:18,21
50:19 69:16 77:2
92:7 93:4 95:16
132:7 142:14
164:11,20 182:3
233:2 238:11
242:17 243:22
244:2,4,12,13
**received (4)**
22:9 31:8,23 244:2
**receiving (2)**
21:20 31:11
**Recess (5)**
66:10 90:17 132:13
175:14 237:23
**recited (4)**
53:24 55:6 182:9
203:11
**recites (5)**
53:11 54:11 60:18
61:12 160:23
**recognition (5)**
145:19 147:7,18
152:17 161:23
**recognize (19)**
139:18 141:11 142:11
143:12 145:15
147:12 148:7 150:1
150:8 156:5,24
157:23,24 160:7
163:18 164:3,6
166:1 169:18
**recognized (9)**
145:13,22 146:21
147:19 152:7,16
153:1 158:15,19
**recognizer (2)**
143:12 144:8
**recognizes (14)**
146:25 148:3,11,24

151:10,16 152:1
153:5,22 154:12,23
154:24 155:3
161:20
**recognizing (11)**
142:14,15 150:3,19
151:6 152:13
155:11 157:2 160:9
162:14 163:12
**recollection (14)**
32:12,19,23 33:2,12
35:1,6 44:21 52:17
69:5 130:11 131:18
173:13 176:21
**record (24)**
15:25 61:24 66:9,12
73:3 80:18 90:14,16
90:20 125:6 130:6
132:12,15 149:17
153:21 164:19
168:1 175:13,17
237:22,25 244:23
246:11 247:5
**reduced (1)**
137:8
**reduction (1)**
136:5
**reexamination (1)**
137:13
**refer (5)**
55:23 79:16 96:13
101:8 133:4
**reference (11)**
6:15 13:16 19:16
70:10 76:16 119:16
119:20 135:9,18
165:19 189:7
**referenced (3)**
7:1 91:12 210:21
**references (6)**
54:5 63:2 164:12,21
165:2 167:6
**referencing (4)**
13:12 54:16,21,22
**referred (6)**
63:18 171:18 199:13
205:24 210:11
223:18
**referring (43)**
12:19 24:3 33:1 34:9
55:16,24 56:2,3,14
62:20 64:15 67:23
93:17 95:5,18 96:23
97:1,17 98:1 116:3

119:15 127:9
156:14,15 157:18
158:4,7 159:19
161:9,10,11,16
189:2,21 200:6,9
203:10 204:22
206:1,16 238:4
241:2 243:11
**refers (1)**
50:25
**refresh (4)**
32:12 38:6,22 50:4
**regarding (9)**
3:15 81:23 84:15
118:18 137:13
169:14 208:5 215:4
215:20
**regardless (1)**
82:21
**Registered (2)**
1:20 246:4
**rejected (1)**
207:5
**related (14)**
13:23 16:22 35:4,9,22
42:2 55:9 84:22
96:11 134:13
166:14 192:5
195:11 246:17
**relating (1)**
148:13
**relative (2)**
45:7 179:9
**relevant (11)**
17:17 27:20 44:7,8
133:20 138:8
139:11,25 140:15
140:19 170:25
**relied (8)**
71:2,11 72:2 81:15
182:23 183:17
241:25 242:8
**relies (1)**
140:7
**rely (4)**
77:20 138:21 241:15
242:6
**relying (11)**
178:15,17 225:17,23
225:25 228:21
229:5 230:7 241:13
241:15,22
**remains (1)**
132:6

Highly Confidential - ATTORNEYS' EYES ONLY

Page  20

**remember (32)**
8:11,12 17:15 25:3
31:10,15 32:16,22
34:8 35:11 36:16
37:5,6 39:9 46:8
48:13 50:2,5 67:9
67:19 75:16,17 84:8
84:21 115:17 130:5
133:13 134:23
213:15 214:19
244:6,16
**remembered (1)**
74:1
**remind (1)**
59:1
**removed (12)**
132:1 170:14,16
171:5 190:24
195:17 209:2
217:16,18,20 224:3
229:3
**removes (6)**
110:17 128:11 144:22
178:3,13,23
**removing (1)**
171:14
**rendered (2)**
68:16 84:6
**repeat (16)**
9:10 10:18 15:21
26:22 36:9 71:8
74:4,7 80:16 125:4
140:13 149:15
153:18 158:3
164:17 167:24
**rephrase (1)**
104:1
**replaying (1)**
153:13
**reply (50)**
3:10,19 6:5,20 7:6,18
11:14 15:15 18:3
29:7,12 31:4,6,19
31:21,25 32:5 33:18
48:24 52:8 58:19
63:21 66:16 70:13
72:4 76:12 79:4
90:24 104:12,14
113:24 119:6 129:7
136:21,23 144:17
156:1 161:9 163:23
165:3,5 166:18
167:5,9 202:18
214:25 216:2 228:7

242:21 244:8
**report (140)**
3:8,10,14 6:1,5,10,12
6:20 7:4,6,8,14,18
10:25 11:4,12,14
12:3 15:16 18:3,7
18:24 19:6 21:20
22:9 23:4,9 24:14
25:3 26:3 29:7,12
30:17 31:1,4,6,9,11
31:13,19,21,24,25
32:6,9,18 33:18,18
38:5 40:25 44:11,22
47:16 48:10,24 49:4
49:19 50:10,24
51:14 52:8 58:20
63:18,20,21 66:16
70:2,13 71:25 72:3
72:5,7 79:4 81:21
81:21,23 87:9 90:24
92:25 97:18 98:2,10
104:12,14 105:16
106:18 110:21
113:25 115:3,13,20
116:13 118:14,18
119:6 121:9 129:7
136:19,21,22,23
137:3 139:5 140:14
144:17 155:24,25
156:1 159:3 161:9
162:7 166:18
170:18 172:5 177:3
184:8 187:22
199:11,24,24
201:16,17 202:19
207:23,23 210:10
211:4,6 214:25
215:8 216:3 218:22
223:8 228:8 238:3
238:11 242:21,25
244:8,9
**reporter (6)**
1:20 4:16 5:2 15:20
246:5,5
**Reporting (2)**
4:15,17
**reports (22)**
6:14,16,16,19,24 29:5
29:15,17,20,21,25
30:2,13 38:22 45:1
45:3 51:16 75:11
76:25 77:22 85:12
92:21
**representation (18)**

7:7,25 11:16 28:23
124:11,17 125:9,18
125:22 126:4,10,18
127:19 128:13,21
219:1,23 220:2
**represented (2)**
219:10 221:15
**representing (1)**
4:14
**require (13)**
59:7 70:19 85:16 91:6
97:9 150:23 203:20
204:9,20 205:6
206:5,10,17
**required (13)**
37:24 39:15 43:5
59:17 79:5 85:1
94:6 139:21 144:23
156:9 158:2 197:18
231:17
**requirements (1)**
45:21
**requires (27)**
42:5 65:1,9 66:3,24
67:6 68:2,13 72:21
73:6 74:10 76:2
103:8 118:6 119:24
139:16 144:21
145:4 156:4 157:21
165:25 183:4,10
200:21 206:12,13
232:19
**resolve (13)**
197:3 209:9,10 210:4
213:3 222:4 223:3
223:14 225:21
227:4,17 239:6
243:9
**resolved (3)**
35:7 36:19,21
**resolver (120)**
33:1,9 46:25 47:10,18
70:17 91:3,18 97:6
106:24 107:23
108:1,5,22 109:1,9
109:11,16,20,22
170:24 171:9,17
172:1,15,22 173:4,8
173:14,18,24
174:19 175:3,7
176:24 181:9
183:21 184:23
185:3,21 187:7,16
188:13,21 189:15

190:20 192:5,16,17
193:8,16 194:7,17
196:3,8,18 197:7,22
198:4,24 199:7,14
199:15 200:1 201:8
201:22 202:10
203:17 204:2,7,24
205:9,22,25 208:3
208:12,18 212:25
215:2,19 216:7,15
217:25 218:7
220:21 221:10,14
222:7 226:1,15,22
226:23 227:2,6,21
228:4,16 229:5
230:1,8 231:14,19
232:9 236:23 237:2
237:9,13,16 238:9
238:15,15,19
239:12 240:3,10,18
240:23 241:7 243:9
243:12
**resources (3)**
180:15,17,21
**respect (21)**
8:16 12:15,21 31:6
39:4 45:25 51:25
57:13 91:2,2,17
97:5,5 106:22 125:1
125:2 126:16
183:20 199:4
223:22 225:15
**respective (1)**
246:15
**response (1)**
106:2
**restate (3)**
186:3 227:10 233:10
**restricting (4)**
5:10 101:20,24,25
**result (5)**
7:15 62:16 176:5
214:8 216:14
**resulting (1)**
216:19
**results (1)**
147:24
**returned (1)**
97:21
**reverse (6)**
105:1,10,18 106:8
158:9 159:22
**reverses (8)**
139:19 156:6,13

157:6,25 163:1
166:2 169:3
**reversing (6)**
104:16 160:13 162:1
163:9 166:20 169:8
**review (10)**
8:4 26:15,24 29:4
31:24 33:21 34:3
41:24 75:10 243:12
**reviewed (19)**
8:6 24:13 32:7,17,21
32:24 33:9,10,19
75:5,12,15,18 92:20
93:2,4 132:25
242:23 244:14
**reviewing (8)**
32:13,20 33:2,13,16
75:17 242:17
244:11
**Rich (1)**
4:19
**RICHARD (1)**
2:16
**right (83)**
7:16 11:3 12:25 14:17
17:24 18:2 24:16
27:23 51:23 54:9
60:21,24 61:8,9
66:6 73:2 78:5
84:21 91:15 99:3
103:23 104:16,17
104:22 105:1,6,10
105:18,20,23,24
106:3,9,15,19
107:25 108:1 111:2
111:5 112:16
114:14 116:5
120:12 121:11,14
122:2 127:22
135:11,16 139:8
144:16 145:5 148:6
154:13 161:2 174:8
174:11 176:10
180:15 181:16
184:24 185:3,21
186:5,8,18 189:1
194:15 196:17
205:3 206:3,11
208:1 210:18
211:16 219:2,24
222:12,13 223:20
224:2 228:24 230:9
**right-hand (1)**
172:7

Highly Confidential - ATTORNEYS' EYES ONLY

**Road (1)**
2:11
**roughly (2)**
31:2 122:1
**routines (7)**
70:21 110:12 111:19
111:22 178:3,22
209:9
**royalties (14)**
3:9,11 6:2,6 29:19
34:25 35:15,22
45:13 50:14 51:16
67:19 76:21 172:20
**royalty (1)**
35:9
**rule (1)**
207:7
**ruled (1)**
133:14
**rules (5)**
30:6 77:4 83:7 85:11
85:11
**ruling (16)**
79:11,15 83:1,8 85:10
85:13 86:2 96:10
97:19,21 100:3,5
103:14 133:19
134:13,17
**running (1)**
111:15
**rusty (1)**
69:14

———————
**S**
**S (7)**
2:1,3 4:1 119:9,17
184:11,19
**Samsung (37)**
1:8,9,10 2:20 4:6,20
4:22 7:12 9:23 12:6
12:12 13:5 14:20,24
14:25 15:2,3,7 16:2
21:24 26:6 27:7
32:8 47:7 48:4
78:18 138:15,19,21
170:14,21 171:4,9
181:1 204:19 238:9
242:24
**Samsung's (8)**
3:13,17 46:5 74:23
92:2,13 94:1 118:22
**San (2)**
1:3 4:8
**Sarah (2)**

2:7 4:24
**satisfied (2)**
88:21 244:15
**satisfies (5)**
71:3,12 93:21 118:20
201:23
**satisfy (9)**
82:15 88:18 151:11
151:18 153:7,24
155:4 228:22
241:23
**satisfying (1)**
118:4
**Saturday (4)**
244:5,6,7,7
**Saul (1)**
1:21
**saw (6)**
9:22 22:3 26:4 47:22
171:23,24
**saying (33)**
14:3,10,19 16:11
28:17 84:1 86:14
87:9 88:5,10 101:1
101:11 102:9
112:24 113:5 114:7
116:19 124:23
126:22 140:18
145:3 154:19 169:2
169:8 191:4 205:4
206:9,15 207:4,11
217:21 229:25
238:25
**says (36)**
12:19 13:2 14:8,8
49:6 53:23 55:6
70:16 77:12 82:3
91:1 93:9 97:4
98:25 108:24 111:3
115:21 127:17
129:17 137:5 139:9
140:14 144:18
146:20 156:3
157:20 161:3
167:12 189:7,20
190:9 201:22 202:5
202:22 203:25
242:23
**scenario (6)**
152:18 154:6 155:12
188:20 237:10,13
**scenarios (1)**
123:11
**scope (3)**

56:23 137:25 139:1
**screen (13)**
104:18 110:18 128:12
130:25 131:5,20,21
132:1,6 178:4,13,24
211:3
**second (7)**
43:2 49:2 88:5 125:16
137:2 139:6 179:20
**section (6)**
40:21 41:15 52:25
129:8 164:24,25
**see (159)**
10:3 16:24 18:10
19:14 23:24 26:21
27:16,24 28:1 30:22
32:6 49:6,13 51:2
52:1 53:3,5,8,11,20
53:23 54:3,5,14
57:4 59:11,13,20
61:5,14,16 62:8,25
63:2,6 64:14 67:3
67:11 70:6,10,16,24
73:11,15 75:23 76:5
76:11,15 77:25
82:12 89:19 90:5
91:1,10 93:9,14
94:10,11 97:13
107:2 115:21 116:1
119:13 124:6,13
128:17 131:11,20
131:21 135:12,18
135:21 136:3 137:5
137:10 138:17
139:7,9,13,15,22
141:21 143:16
144:10,18,25
146:12,15,20 149:4
149:7 156:10
159:12,16 165:10
165:11,18,20,22
166:5 167:6,11,12
171:2,25 172:1
173:14,18,23
177:13 184:8
186:25 187:2,3,7,10
188:21 189:1,4
196:5,7 198:23
199:14,25 201:15
201:22 202:3,4,21
203:1,6,21 205:14
205:15 207:23
210:10 213:14
215:6,15,17,22

216:5,11,21 218:6
222:4,8,24 223:10
223:16 228:12,18
231:25 238:13,13
238:14,15 243:2,6
**seeing (7)**
26:9 89:20 131:16
194:19 198:25
221:25 222:2
**seen (5)**
5:23 92:17 132:22
**sees (1)**
128:23
**select (23)**
93:13 120:15 128:1,7
139:17 144:21
145:4 156:4 157:21
165:25 190:15
193:1 195:4 200:3
201:2 208:7,15,17
213:5 216:18
217:19 239:25
240:3
**selected (31)**
70:22,22 73:21
108:13 141:4 142:6
142:7,9 146:25
147:1 152:6,15,25
155:16 172:12
176:25 189:9,9
191:5,11 197:9
211:16 212:19
213:6 216:16,17,20
229:14 230:24
231:2 236:18
**selecting (20)**
58:11 65:10 73:11,18
74:16 125:2 139:11
139:25 140:16,19
142:17 155:15
177:16,19 200:15
201:3,5 202:7 233:6
240:9
**selection (60)**
53:25 54:12 61:2,12
72:10,21 73:7,15,17
74:11 76:1,3 93:22
94:5 108:21 117:23
117:24 118:7,19
119:3,12,20,25
120:8 144:19 148:3
149:5 165:24
166:22 167:13,20
167:21 168:4,5,19

169:4,9 186:11
200:2 208:2,3
210:22 212:9,16
213:22 215:2,18,24
216:14 217:23,25
220:12,20 221:10
224:12 226:23
228:4 239:3,12,18
**selects (13)**
93:10 120:21 130:16
140:25 185:14,22
186:8 211:20
220:21 225:3 235:9
236:20,22
**send (52)**
182:2,13,13 183:15
189:13 190:4,5,8,8
190:11 192:2 193:1
193:14,17 194:3,4
197:13,21 199:2
200:11,11,18 202:1
202:1,11,12 208:11
208:14,15 225:3
226:7,10 231:7
233:18,23 234:6,13
234:13,16,20,22,22
234:25 235:1,9,10
235:14,15,20
236:12,12,21
**sending (10)**
194:10 197:1,23
198:12 199:1 200:9
200:25 234:10,19
235:18
**sense (9)**
83:24 88:9 127:22
141:7 155:19
160:15 225:11
234:25 237:2
**sent (7)**
213:8 243:10,13,16
243:21,22 244:8
**sentence (33)**
12:5 18:6 32:6,24
33:14 34:2 67:3
85:19 86:8 87:21,25
88:2,3,5 96:22 97:1
101:10 125:16
127:9,22 137:5
140:13 156:19
157:17,19,20 158:4
162:7 199:25
204:13 206:9 216:5
242:22

TSG Reporting - Worldwide   (877) 702-9580

Highly Confidential - ATTORNEYS' EYES ONLY

**sentences (2)**
87:8 156:19
**separate (8)**
9:7 80:9 122:14
123:12 201:2 203:4
203:10 238:24
**separated (1)**
163:15
**September (1)**
31:13
**series (1)**
210:23
**server (52)**
53:8,12,17 55:16 56:7
56:13,15,18 58:1,7
58:9,15 60:7,14,16
60:17,18,24 62:14
62:17 64:16 65:6,8
65:14,22 67:13
79:22 80:1,8,10,12
80:21 81:1 95:20
96:1 151:1 155:21
158:6,7,10 159:13
159:13,23 160:8,15
160:19,24 161:5
162:10,25 163:2,13
**set (44)**
20:2,4,23 21:9,9
22:18 24:21,25 25:7
25:19 27:6,12,12
28:1 29:17 49:7
51:14 52:4 70:21
71:24 85:11 89:3
99:9 108:16 115:24
127:1 131:12,16
160:19 162:10
170:3 172:14 184:4
187:1,1,3 188:5
192:2 197:21,23
198:11,25 246:9,21
**sets (4)**
25:13 85:11 187:5,6
**settled (3)**
135:3,4 136:16
**shape (1)**
131:3
**shifts (1)**
186:23
**shipped (2)**
173:2,22
**short (52)**
91:3,12,18,22 97:6
104:9,16,21 105:4
107:14,22 108:3

109:5,15 110:4
111:17 112:12
113:13 124:20
125:13 126:1 127:1
170:23,25 171:13
176:16 178:5,9,11
179:1,2,2,3,18,19
179:21 181:15,19
183:23 184:13,20
184:22 186:24
187:13 190:2 191:6
192:3,20 193:5,21
193:23 195:15
**show (22)**
20:6,10,22 21:7,16
22:4,15,20 28:19
33:8 39:15 40:16
41:3 84:3 127:3
129:3,23 141:5
173:21 185:1
236:10 240:17
**showed (2)**
29:1 89:13
**showing (2)**
126:5 220:11
**showlinks (1)**
19:11
**shown (13)**
71:17 89:23 129:13
144:2 172:5 190:23
211:8,13,15 219:20
220:23 222:16
233:22
**shows (2)**
127:14 148:18
**sic (1)**
177:11
**side (1)**
172:7
**Sidekick (16)**
66:25 81:17 82:4,7,14
82:17 83:11,12,20
83:24 85:20 86:20
87:4,19,22 101:13
**SIGNATURE (1)**
248:18
**significant (3)**
121:25 187:17 188:15
**signing (1)**
246:14
**similar (7)**
55:21 60:4 106:4
119:7 126:22
131:14 241:19

**similarly (4)**
39:8 43:7 104:22
235:23
**simple (5)**
74:6 93:23 94:8
105:13 188:3
**simply (8)**
83:23 86:5 94:3
100:12 145:25
156:24 170:21
190:22
**single (24)**
67:24,24 68:24 69:19
82:8,20 85:21 87:23
88:17 89:2,14 90:1
94:23 100:24 103:2
107:16 173:23
176:16 187:12
189:8,21 206:10,11
207:18
**singular (1)**
127:15
**situation (7)**
86:15 98:11 144:4
152:20 154:3
206:16 236:22
**skill (10)**
51:22 59:23 63:22
64:2,13 68:20 72:16
203:16 204:6
205:21
**slightly (4)**
12:6,12 13:6 14:20
**small (1)**
145:21
**Smith (2)**
2:11 4:25
**SMS (17)**
12:7,17,18,25 13:2,7
13:8 14:4,11 15:7
16:2,16 17:8,10,22
18:8,12
**software (30)**
19:22 47:4 105:13,25
106:1 112:25
114:10 117:21
145:19 161:19,19
161:24 163:14,18
169:18 178:19
180:8 181:2,4 192:1
193:13 195:17
198:8 209:3,19
210:3 223:5 228:10
230:20 240:12

**somebody (1)**
25:14
**somebody's (2)**
235:1,24
**soon (2)**
118:1,1
**sorry (32)**
11:7 12:17 18:4 30:5
30:17 33:18 34:21
49:1 68:4 75:23
120:21 124:24,25
136:23 139:9
143:11 145:17
149:22 157:24
164:25 167:20,25
168:4 177:7 192:21
201:21 202:16
213:5 214:24
224:20 236:19
240:24
**sorted (1)**
69:3
**sought (4)**
78:8,15,19 95:13
**sounds (3)**
39:9 103:20 205:17
**source (29)**
8:4,6,8,13 9:17 14:25
16:21,23 17:3 18:14
19:16 20:17 21:12
27:14,25 28:2 31:24
32:3,8,13,15,20,21
32:25 33:3,23,25
34:3 242:24
**space (1)**
211:2
**speaking (1)**
122:1
**speaks (6)**
23:16 96:7,21 100:19
105:22 183:7
**specialist (1)**
4:14
**specific (55)**
20:21 28:25 32:15,19
32:23 33:12,23
42:25 47:24 48:4
55:24 57:5,9,13,25
62:6,7 64:21 81:6
92:25 122:24 127:7
134:22 147:22
154:3 170:15 188:8
190:23 193:17
194:8,11 197:5,23

198:5,21 200:18
208:4,8 212:21
213:13 214:1 215:3
215:20 226:8,11,24
231:8,14,16 233:21
241:1,8,18,20
242:18
**specifically (9)**
42:11 63:2 75:16 98:1
116:24 124:9
127:17 190:7
239:16
**specification (3)**
67:22 141:14 142:13
**specificity (2)**
197:19 232:12
**specified (1)**
72:14
**specify (2)**
140:24 214:6
**specifying (1)**
214:8
**spelled (1)**
158:12
**spend (2)**
30:25 244:10
**SS (1)**
246:2
**stage (1)**
84:11
**standard (11)**
38:9 39:14,21 41:16
41:22 42:7 43:17
44:13 45:13 46:4
84:18
**standpoint (1)**
188:2
**start (60)**
4:3 6:9 14:14 35:10
36:18 111:22
173:16 186:6 208:4
208:23,23 209:2,8
209:18 210:2,7,7
211:21,23 212:6
215:3,20 216:9,16
216:19 217:1,3,6,12
217:17,24 218:4,9
218:12,17,18
220:17,18,18,22
221:1,5,6,19 222:1
223:2,13 224:6,13
227:13 231:21,22
237:15 239:4,19,19
240:13,16,16,24

Highly Confidential - ATTORNEYS' EYES ONLY

**started (5)**
5:18 15:11,13 111:19
240:12
**starting (27)**
18:6 19:7 32:7 53:6
76:12 83:7 90:25
93:20 97:1 110:24
118:16 119:7 124:6
135:9 137:6 138:13
139:6,7 144:17
177:9 201:22
202:21 203:15
214:25 216:5
221:19 223:10
**starts (9)**
66:18 73:24 111:1,9
112:10,11 114:4
177:11 239:11
**state (16)**
2:8 18:6 19:8 23:10
51:19 59:16 104:24
126:8 129:11
170:20 177:10,15
184:10,18 202:15
215:15
**stated (2)**
137:6 159:2
**statement (18)**
19:17,20 20:24 24:9
25:13 57:3 60:1
66:17 67:5 68:1
97:25 105:15 111:8
126:14 129:18
156:12 216:23
238:7
**statements (1)**
94:12
**states (13)**
1:1 4:6 5:19 32:7
35:17 75:24 139:7
139:15 159:13
165:22 189:2,3
228:9
**stating (3)**
83:5 171:8 173:11
**step (10)**
10:11 121:22 133:3
146:15,17,20 147:7
147:18 148:12
213:4
**Stepping (1)**
8:15
**steps (33)**
139:19 140:22 148:5

148:8 156:7,13,14
157:6,25 158:9,11
159:23 160:13,18
161:5 162:1,10,15
163:2,10 166:3,21
169:3,4,8,9 210:23
211:10,12 212:23
214:16,20 222:16
**street (3)**
2:4,8 158:23
**strike (6)**
10:2 11:7 31:7 50:24
117:11 240:24
**structure (212)**
54:13 59:8,18 61:13
65:11,15 66:24 67:1
67:7,24,25 68:3,13
68:25 69:16,19
70:23 72:11,22,22
73:7,8,11,12,19
74:11,12,15 76:3,4
79:6,13,18,23 82:23
83:3,13 84:20 85:7
87:6 89:14 91:7,9
93:11 94:2,17 97:10
97:12,16 98:7,16
99:2,6,25 100:8,13
101:14,21 102:5,21
103:2 107:1 108:22
109:15 117:25,25
118:8 119:25
120:16,21 124:21
125:15,25 127:3,11
127:14 128:7 129:4
129:12,25 130:9,20
131:11,15,17,20,21
139:11,12,17,25
140:1,5,10,15,16,19
140:20,25 141:6,7,9
141:11,16 142:18
143:3 144:5,22,23
145:5,15,16,17,20
145:24,25 147:15
150:12,18,19 151:6
151:7,10,10,17,18
151:25 152:1,6,7
153:6,23 154:7,7
155:17,18,19,20
156:5,23 157:11,12
157:22 158:18,19
159:4 160:9 161:23
163:19 165:24
167:13,21 168:5
170:23 176:25

177:16,19,25
181:19 182:18
183:2,15,23 184:14
185:14,22 186:25
189:23 191:6,12
192:11,20,23 193:6
194:25 195:4,6
196:15 197:8,11
199:21 200:24
203:20 204:10,17
205:6 206:6,11,18
206:22 207:3 209:5
210:1 211:21 212:4
213:11 224:22
227:19 229:16,19
229:22 230:17,19
230:21 232:21,25
233:7,15 234:8
235:5,6 236:8
**structure' (1)**
76:2
**structured (1)**
209:19
**structures (98)**
52:1,14 53:12,13,16
58:18 59:10 60:6,8
60:19,20 62:14,20
64:17 65:9 66:23
67:13,15,22,23 69:6
79:16 80:11 81:3,9
82:22 87:17 95:24
100:8,10,23,24
101:2,5 103:9,11
119:10 124:11,17
125:10,18,22 126:2
126:5,11,18 127:2
127:20 128:1,2,13
128:18,22,24
129:22 130:16
139:21 140:6,7,11
146:5 151:2,14
154:14,19 156:8,18
157:3 158:2,12,16
159:5,14,15 160:2
160:15,24 161:1,6,7
161:18,19 162:4,17
162:19,20,23
163:12 166:14
169:6,12,15 171:1
175:4 189:9 204:16
206:13,14
**subject (1)**
234:24
**submitted (3)**

31:11 44:10 164:7
**subsequently (1)**
93:13
**subset (1)**
56:2
**substantially (1)**
124:7
**substituted (5)**
170:21 171:9,11,14
238:9
**subtleties (1)**
64:10
**successfully (2)**
131:15 145:15
**sufficient (2)**
83:10 101:17
**suggest (1)**
198:1
**suggestion (1)**
129:12
**Suite (1)**
4:11
**SULLIVAN (1)**
2:15
**summarize (1)**
241:12
**summary (10)**
3:12,13,17 74:19,23
74:24 92:2,14 211:9
211:11
**summer (1)**
8:10
**supplied (2)**
52:5 225:18
**supply (2)**
35:25 36:12
**supplying (1)**
36:17
**support (1)**
8:21
**sure (27)**
6:24 7:3 8:24 9:10
10:6 14:22 16:25
17:5 41:10 47:8,21
56:11 73:2 84:16
115:3 125:4 132:10
134:5,6 138:1
141:25 168:12
175:11 180:3
227:11 231:3 243:4
**surrounded (1)**
143:2
**surrounding (2)**
148:19,20

**swear (1)**
5:2
**switch (2)**
105:14,24
**sworn (2)**
5:4 246:10
**system (35)**
53:23 55:6,11 68:24
69:18 85:6 109:8
130:20 148:23,24
149:5 151:9,13,16
151:25 152:5,7,23
153:2,5,22 154:11
155:3,21 190:15
191:22 192:11
193:8 195:9 196:15
196:21 197:9,12
209:24 235:10
**system's (2)**
149:9,18
**systems (1)**
178:18

---

**T**

**T (3)**
246:3,3 248:1
**take (16)**
10:11 33:14 46:16,17
48:14 66:6 75:2
90:11 131:11 132:8
133:3 141:22
175:10 223:15
236:8 237:20
**taken (3)**
1:19 27:6 248:5
**takes (7)**
39:23 59:24 63:24
64:4 142:9 147:7
179:9
**talk (7)**
38:8 106:18 116:13
121:10 125:17
181:11 187:22
**talked (19)**
21:24 47:11 57:20
62:21 78:4 100:21
120:1,9 152:15
160:13 163:9 165:4
165:5 176:19,22
183:3 185:12
201:12 208:24
**talking (40)**
10:12 12:25 13:3,13
13:21 14:14 16:5

Highly Confidential - ATTORNEYS' EYES ONLY

23:22 30:18 55:10
57:17 62:6,15 95:10
116:24 126:25
142:14 146:17
157:7,9 162:9,12,16
162:17,19,21,24
165:15 168:6,15,18
169:4,9,11,13,14
177:3 209:13
239:16,18
**talks (6)**
14:18 60:2,4,5 103:8
142:4
**tap (48)**
91:3,12,18,22 93:23
94:2 97:6 104:9,16
104:21 105:4
107:14,22 109:5,15
110:4 111:17
112:12 113:13
124:20 125:13
127:1 170:23,25
171:13 176:16
178:6,9,11 179:1,2
179:4,4,19,22
181:15,19 184:13
184:20,22 186:24
187:13 190:2 191:6
192:3 193:21,23
195:15
**tap-to-dial (3)**
172:18,23,25
**tape (3)**
90:9,10,14
**tapped (2)**
108:4 126:1
**taps (3)**
183:23 192:20 193:5
**task (2)**
234:9 235:17
**technical (14)**
40:12 43:10,22 44:2
44:23 45:21 46:10
46:18 64:12 88:13
105:7 137:25 188:2
233:23
**technically (3)**
77:11 121:2 138:9
**TELECOMMUNI...**
1:11
**telephone (2)**
67:1 184:15
**tell (10)**
27:4 28:8 96:5 118:2

120:23 153:14,19
202:19 209:24
224:23
**term (7)**
10:7 41:12 60:15
154:15 182:8
204:15 207:15
**terms (15)**
20:25 35:23 36:8
42:13 43:2 45:1
51:20 57:6 72:13
116:2 178:11 181:2
188:20 226:1
228:20
**test (29)**
19:22 20:8 21:7 22:19
25:15,25 26:10,16
26:21,25 27:4,24
28:11,14 36:23,23
37:9,10,14 40:22
43:3,16 121:13,17
121:17 123:18,18
123:22 174:16
**testified (7)**
5:5 159:18 176:11
204:1,23 232:23
238:17
**testimony (45)**
5:11,15 7:23 14:6
15:24 16:20 22:12
26:19 29:9 34:6
44:15 55:3,19 65:4
79:8 86:25 112:22
115:11 120:18
126:20 128:15
133:23 134:9 140:3
141:18 145:7 147:3
149:13 150:15
155:7 161:14
164:15 166:24
168:22 179:14
190:18 196:1,20
208:21 222:19
227:9 232:11
234:15 246:11
248:7
**testing (2)**
180:13,14
**tests (5)**
23:23 24:5 121:23
122:3,9
**text (41)**
65:15 140:23 142:6,6
142:10,11,14

144:13 145:18
146:15,20 147:6,6
147:12,15,17,18
148:3,7,11,13 150:1
150:4,4,9 154:11,12
154:24 155:2,3,11
156:22,23 158:15
160:5 162:14
163:16,18 165:25
166:1 169:17
**thank (3)**
177:7 186:5 244:20
**they'd (1)**
195:15
**thing (29)**
41:20 56:4 57:10 58:4
58:8 62:15 73:18,20
86:1 88:6 117:19
131:7 141:2 157:13
162:4 180:22 207:6
216:24 233:22
**things (43)**
6:15 11:10 16:8 29:21
29:22,25 35:9 47:1
47:3,5,10,11,12,14
47:15 48:17,20
62:12 68:23 74:5
95:10 101:12,16
102:10 105:14
148:10 158:24
160:10 161:10,11
162:3,12 163:11,14
163:15 181:4
190:20 193:1 198:1
198:4 199:15
211:19,24
**think (99)**
9:6,7,18 15:18 18:5
23:18 31:2,5 35:12
36:4,20 37:5 41:8
44:17 45:22,24
46:11,12 52:24
54:22 55:21,22
67:16 69:3,11 70:3
71:6,7 73:22 74:5
77:11 80:7,8 84:10
89:18 90:8 92:19
98:19 112:1 114:23
116:16,20 123:11
126:21 127:13
128:18 131:13
132:18 134:21
136:13 138:6
141:20 142:20

146:2,23 151:14,20
152:18,22,25 154:2
154:5 155:12 163:6
163:20,22 172:6
174:14 177:5,6
180:5,8,18 181:6
183:9,12 185:25
190:9 191:2 199:10
202:5 205:2,2
207:21 213:18
215:7 222:20
230:12 233:22
235:12,14 238:17
240:6 242:16 243:4
243:5,8,11 244:5
**thinking (5)**
35:10 40:3 122:25
153:13 154:5
**third (2)**
4:15 18:5
**thought (7)**
42:20 79:13 100:4
123:10,15 136:13
201:12
**three (2)**
51:13 211:14
**threshold (2)**
179:21,22
**time (61)**
18:8 29:6,15 30:25
34:15,19 58:22 66:8
66:11 73:17 79:3
82:25 83:6 84:24
85:4 90:15,20 92:19
94:16,25 95:13
96:18 98:2 101:19
102:6,20 111:14
114:4 128:10
129:23 130:14
131:10 132:11,14
132:25 134:24
141:22 160:11
175:12,17 178:23
181:2,4,18 185:14
186:24 187:6,7,10
187:10,12,16
188:12,22 207:17
237:21,24 239:25
242:9 244:10,23
**timed (1)**
180:25
**timeframe (1)**
94:21
**timer (6)**

111:14 112:11 113:15
113:21 179:18
180:25
**times (5)**
32:22 33:11 69:12
163:7 240:7
**timing (2)**
178:8 179:8
**tiny (2)**
179:19,19
**TiVo (6)**
41:19,22,24 42:2,3,4
42:23
**today (1)**
5:11
**today's (3)**
90:19 93:6 175:16
**Todd (16)**
1:18 3:2,8,10,14,19
4:5 5:3 6:1,5 76:13
81:23 90:19 163:24
175:16 246:8
**top (19)**
8:11 25:4,6 31:16
34:9 37:6 43:13
48:13,21 50:5 75:8
92:8 95:16 104:20
149:1 213:15
214:19 244:12,13
**total (3)**
68:4,14 69:17
**touch (5)**
93:23 94:8 104:18
110:13,13
**track (1)**
24:6
**Trade (1)**
2:4
**training (4)**
38:24 40:11 44:4
54:22
**transcript (4)**
9:22 111:4 244:24
248:5
**transcription (1)**
247:7
**traveling (1)**
33:22
**trial (60)**
6:17 8:23 9:15,17
10:10,13 46:6 51:1
51:6,7,11,12 52:18
66:19 67:20 68:17
69:8,9,13,13 70:5
73:14 75:13,14 77:4

Highly Confidential - ATTORNEYS' EYES ONLY

79:12 81:6 83:7,11
85:12 91:5 97:8,20
97:20,22,24 98:5,9
98:14 99:3,7,9,18
100:17 103:8
107:19 134:23
136:6 138:16,20
170:7 174:23
180:23 182:10
206:24 208:24
209:7 210:14 211:4
217:14
**tricky (1)**
28:3
**tried (1)**
45:25
**triggered (1)**
237:16
**trouble (1)**
167:1
**true (20)**
23:15 25:17,20 28:2
31:16 38:25 114:22
115:16,18 116:10
116:20 129:19
131:18 193:19
214:17 219:18
221:6 234:5 246:11
248:8
**truthful (2)**
5:11,15
**try (3)**
6:25 142:10 169:18
**trying (10)**
28:18 116:11 130:4
150:8 153:12
156:21 159:1
168:15 169:20
204:12
**TSG (2)**
4:14,17
**Tuesday (1)**
1:22
**turn (47)**
12:2 18:2 19:5,10
32:5 52:20,21,24
58:19 66:15 70:13
75:19 82:2 90:23
93:8 103:16 106:17
110:20 113:23,24
115:2,19 118:13
119:5 121:8 129:6
136:19 137:2
138:12 144:16

159:7,10 165:7,18
169:21 170:17
172:4 175:20 177:2
184:7 199:23
201:16 203:14
216:2,18 228:7
238:2
**turned (1)**
213:16
**turning (4)**
50:23 77:24 88:24
124:5
**Twenty-two (1)**
70:7
**two (17)**
5:17 6:14,19,23 29:17
51:16 90:7 104:20
122:14 161:4,10,11
162:9 163:11,15
183:16 185:6
**two-part (4)**
37:10,14 40:22 41:22
**type (45)**
12:7,18,18,25 13:2,6
13:8,17,23 14:4,10
14:15,18 15:7 16:2
16:6,16 17:8,10,22
18:8,12 44:18 66:24
66:25 67:1,2,7,7
68:2,3,4,13,14,24
69:16,17,19 83:13
87:6 103:1 142:11
147:15 189:22
197:8
**types (4)**
67:23 69:6 88:8
103:11
**typically (1)**
57:9
**typo (1)**
202:5
**typos (1)**
6:24

_____
**U**

**U (1)**
248:1
**U.S (8)**
3:7,15,18,20 76:13
81:24 132:18
163:24
**ultimately (7)**
209:12,23 210:24
211:15 214:22

220:19 227:18
**Um-hum (1)**
63:25
**unchanged (1)**
195:22
**unclear (2)**
91:4 97:7
**underline (1)**
131:19
**understand (53)**
10:6 14:2,22 31:12
38:17 40:15 42:4
53:15 54:8 56:12
59:18,23 63:23 64:3
68:21 76:7,10 91:21
95:4 103:17,24
107:13,21 116:2
119:23 121:22
122:3 123:17
135:15 143:20
147:10,21 148:2,22
165:14 166:7
167:15,18 168:2,9
169:7,24 170:13
171:17 172:22
175:23 176:3
203:17 204:6,12
205:22,23 227:11
**understanding (77)**
8:17 9:2,12 14:24
15:3,6 16:1 17:4
24:12,24 25:7 35:14
37:23 38:4 39:3,14
40:20 41:2,13,18,21
43:4,21 44:1,12
45:20 48:3,6 49:23
50:13 52:12 54:25
55:15 56:6,22 57:12
64:2 68:20 72:19
73:4 74:8 76:19
78:7 85:1,23 88:16
89:10 93:16 96:18
102:11 104:3,7
108:9 109:3,19,21
115:6 121:16 122:8
122:13,17 123:4
133:18 134:17
135:3,24 160:18
161:4 171:4 172:11
173:1,21 176:23
183:21 189:6
204:18 244:15
**Understood (1)**
15:18

**United (4)**
1:1 4:6 5:19 35:17
**unsubstantially (1)**
118:23
**up-to-date (1)**
109:10
**updated (2)**
66:21 110:1
**URLs (1)**
174:13
**URQUHART (1)**
2:15
**use (23)**
52:19 63:18 73:24
81:8 86:7 91:3,17
97:6 106:13 108:15
108:25 121:18
140:9 181:25
190:10 192:6
194:12 195:12
197:6 198:13 200:4
206:25 208:13
**user (250)**
12:9 53:24 54:6,9,12
54:17 55:1,9,10
57:13,18,20 58:11
61:2,11,12 62:7,9
62:11,24 63:7 64:5
64:19,19,20,21,22
65:1,10,17,23,24
66:3 72:10,21,22
73:6,7,11,24,24
74:9,10,11,16 75:25
76:2,3 82:21 88:8
93:10,11,13 95:5,9
95:11,14 104:19
106:25 108:3,13,24
110:17 113:18
116:4 117:23 118:2
118:7 119:24
120:15,20,21,23
121:3 124:10,16
125:8 126:10
127:19 128:1,3,7,11
128:23 129:13,25
130:8,16 131:8,13
131:25 139:10,16
140:7,8,15,18,23,25
141:3,5,9,12,15,21
142:17 143:6,10,11
143:11,15 144:4,6
144:21 145:2,4,8,14
146:25 147:5 148:4
150:5,11 151:24

152:5,14 153:1
154:11,25 155:2,15
156:4,21 157:7,10
157:21 158:14
159:3 160:4 161:22
163:16 165:23,25
166:8,12 167:6,12
167:21 168:5
169:16 170:22
171:12,16 172:12
172:14 176:8,25
177:15,19,21 178:3
178:12,23 182:15
182:20 183:23
184:3,13 185:14,22
186:8,10,13,24
187:5,6 188:4,20,21
189:9 190:14 191:5
191:6,11,12,15,19
192:9,15,20 193:1,5
193:7,11,20,23
195:5,8,13,14,15
196:13 197:2,9
198:17,23 199:18
200:3,15 201:2,3
208:3,25 210:22
211:20 212:16
213:1 215:23
217:19,22,25 218:3
218:4,7 220:12
225:3 226:7,7,11,14
226:19,25 227:5
228:22 230:1,4,15
230:18 234:5,23
235:8,15 236:17,20
236:22 237:10,14
238:12 240:17
241:7
**user's (11)**
120:25 130:24 131:4
132:5 144:11 178:1
212:9 213:22 215:2
215:18 223:11
**users (1)**
213:4
**uses (1)**
176:8
**usually (3)**
25:15 57:3 181:3

_____
**V**

**v (3)**
1:7 66:20 76:13
**Vague (74)**

Highly Confidential - ATTORNEYS' EYES ONLY

8:19 9:5 13:10,19
16:20 22:13 24:17
43:19 44:16 45:4,16
50:16 58:3 64:7
71:5,14 77:8 78:9
79:9 80:6 85:25
92:5 95:7,22 98:17
99:13 100:18
101:22 102:7,23
109:6 110:7 112:22
114:19 115:10
116:9 117:17
122:10 123:8
126:19 130:2 131:6
136:2,11 140:2
149:14 152:11
164:16 166:25
167:22 170:2
171:21 182:12
185:7,24 187:21
189:11 193:9
194:16 196:19
201:9 205:12
206:19 212:2 213:9
214:11 218:2
222:18 226:3 227:8
232:10 234:14
235:11 236:24
**valid (2)**
22:23 69:10
**validity (2)**
3:15 81:24
**value (3)**
28:7,9,13
**values (2)**
19:23 20:23
**variable (1)**
24:3
**various (4)**
23:23 32:22 200:12
201:1
**verb (2)**
60:24 61:7
**version (4)**
57:9 73:13 109:10
194:8
**versions (3)**
17:10 109:25 241:19
**versus (7)**
4:5 43:18 45:2,14
104:23 162:18
215:23
**video-recorded (1)**
4:4

**videographer (15)**
2:24 4:3 5:1 66:8,11
90:15,18 132:8,11
132:14 175:12,15
237:21,24 244:21
**VIDEOTAPED (1)**
1:18
**view (34)**
19:19 61:19,25 63:9
69:20 79:25 80:19
84:6 87:21 88:14
105:12 112:4 113:8
131:14 133:2,7
138:10,22 142:16
146:3 150:11 151:5
151:23 154:10
166:20 178:11
187:19 188:14
202:9 221:9 224:11
228:2 233:5 234:12
**viewable (9)**
124:10,17 125:9,17
125:21 126:10,17
127:19 128:12
**viewing (3)**
170:22,24 171:12
**virtue (2)**
56:16 171:14
**visual (2)**
126:3 185:1
**visually (1)**
185:6

_____

**W**

**waived (1)**
246:15
**Walden (210)**
2:3 4:23,23 7:20,23
8:19 9:5 11:21
13:10,19 14:5 15:22
16:18 20:19 22:11
23:5,13,16 24:17
25:1,10 26:18 27:2
29:8 30:4,6 33:4
34:5 36:3 37:1,11
38:2,19 39:7,18
40:8,19 41:6 42:8
42:18 43:19 44:14
45:4,16 50:16 54:18
55:2,18 56:9,25
57:15 58:2,21 59:1
61:22 62:4 63:4,12
64:7 65:3 69:22
71:5,14 72:24 73:9

74:13 77:1,8 78:9
79:7 80:4,24 81:18
85:25 86:24 88:19
90:2 92:5,22 95:7
95:22 96:6,20 98:17
99:12 100:18
101:22 102:7,23
105:21 107:7,24
108:11 109:6 110:7
111:24 112:6,21
113:9 114:19 116:9
117:17 120:3,10,17
122:10,21 123:8
126:19 128:14
130:2 131:6 132:10
133:22 134:8 136:2
136:11,21 137:22
138:5,23 140:2
141:17 143:22
145:6 146:9 147:2
149:12 150:14,24
152:10 153:9 154:1
154:21 155:6
159:24 161:12
163:4 164:14
166:23 167:22
168:10,21 170:2
171:21 173:10
174:20 175:11
179:13 180:4
182:12 183:6,25
185:7,15,24 186:19
187:20 188:18
189:11,25 190:17
191:25 193:9 194:2
194:16 195:7,25
196:19 197:15
198:19 199:9 201:9
201:18 205:12
206:19 208:20
212:2 213:9 214:11
215:9 218:2 219:8
219:15,25 220:8
222:18 223:25
224:8 226:3,16
227:8 228:25 229:8
229:17 230:10
231:1 232:10 233:1
234:14 235:11
236:24 239:14
240:5 241:5,17
242:2,11 243:7
244:19
**want (26)**

90:10 103:21 108:25
115:2,3,13 141:23
144:7,14 145:9,10
146:3 183:8 190:4,8
190:10 192:6
194:11 197:6
205:15,18 208:13
216:24 235:16,25
236:12
**wanted (4)**
101:7 108:15 207:8
208:11
**wants (4)**
145:3,14 192:10
235:15
**Washington (1)**
2:21
**wasn't (15)**
24:10 35:18,19,23
42:24,24 98:22,22
99:14,20 102:1
135:1 175:1,2
239:16
**way (36)**
18:16,21 28:16,17
43:17 78:17 85:5
104:19 113:14
121:1,21 124:8
131:3 139:20
148:22 156:7 158:1
158:23 161:21
163:20 166:4,21
173:13 181:7 209:7
209:19,20 210:5
213:18 214:13,16
221:21 233:20
235:14 240:11
246:19
**we'll (3)**
5:25 34:12 90:14
**we're (15)**
65:13 66:9,12 76:21
77:3 90:20 115:4
132:12,15 175:13
175:17 205:17
209:13 237:25
244:23
**we've (5)**
146:17 163:6 165:15
240:6 242:13
**web (3)**
128:23 202:24 210:19
**weighed (1)**
43:24

**weighing (1)**
41:11
**weighs (1)**
39:24
**went (6)**
8:12 11:17 33:25 35:8
47:19,21
**weren't (1)**
243:4
**WHEREOF (1)**
246:21
**WilmerHale (4)**
2:3,7,10 4:24
**window (2)**
172:2 198:24
**witness (213)**
1:19 5:2 7:24 8:20 9:6
11:23 13:11,20 14:7
16:4,21 20:20 22:14
23:6,14,18 24:18
25:2,11 26:20 27:3
29:10 30:5,10 34:7
36:4,9 37:3,12 38:4
38:21 39:8,19 40:9
40:20 41:8 42:10,19
43:21 44:17 45:5,18
50:18 54:20 55:5,21
56:11 57:2,17 58:4
62:5 63:6,14 64:9
65:6 69:24 71:6,15
73:1,10 74:15 75:5
75:6 77:2,10 78:10
79:10 80:7,25 86:1
87:1 88:21 90:4,12
92:7,23 95:8,23
96:8,22 98:18,19
99:14 100:20
101:23 102:8,24
105:23 107:8,25
108:12 109:7 110:8
112:1,8,23 113:11
114:20 115:12
116:10 117:18
120:12,20 122:12
122:23 123:10
125:11 126:21
128:16 130:3,11
131:7 133:24
134:10 136:3,12
137:24 138:6,25
140:4 141:19
143:23 145:8 147:5
149:15,22 150:17
151:1 152:12

Highly Confidential - ATTORNEYS' EYES ONLY

153:12 154:2,23
155:9 160:1 161:15
163:6 164:17,23
167:1,24 168:6,13
168:23 170:3
171:22 173:11
174:22 179:15
180:5 182:13 183:8
184:2 185:8,17
186:21 187:22
188:19 189:12
190:1,19 192:1
193:10 194:3,17
195:8 196:2,21
197:17 198:21
199:10 201:11,19
205:13 206:20
208:22 212:3
213:10 214:12
215:10 218:3 219:9
219:17 220:2,9
222:20 224:2,9
226:4,17 227:10
229:2,9,18 230:12
231:2 232:12 233:2
234:16 235:12
237:1 239:15 240:6
241:6,18 242:4,13
243:8 246:8,12,16
246:21 247:3
248:18
**witness'** (33)
14:6 15:23 16:19
22:12 26:19 29:9
34:6 44:15 55:3,19
65:4 79:8 112:22
120:18 133:23
134:9 141:18 145:7
147:3 149:13
150:15 155:7
161:13 164:15
166:24 168:22
179:14 190:18
196:1,20 208:21
222:19 232:11
**word** (11)
13:11 41:8 60:23
84:16 134:11
148:25 149:23
163:9 168:7,16
233:3
**worded** (2)
183:9 200:7
**wording** (1)

183:9
**words** (4)
146:3 153:13 205:7
228:9
**work** (15)
15:15,17 16:9,10,12
17:4,20 18:20
145:11 150:5
178:18 230:5 232:1
235:16 236:6
**worked** (2)
11:16 26:11
**working** (1)
209:20
**works** (5)
141:8 146:24 148:23
173:13 180:8
**World** (1)
2:4
**Worral** (1)
4:21
**wouldn't** (3)
29:11 144:14 233:20
**Wow** (1)
67:9
**write** (3)
143:18 235:18,22
**writing** (1)
84:17
**written** (9)
20:8,21 21:15 22:3,15
27:9 94:13 97:18
235:2
**wrong** (4)
19:20 21:14 49:1
215:7
**wrote** (7)
25:14,23 28:10 36:21
50:11 92:24 118:17

_____
**X**
_____

**X** (1)
3:1

_____
**Y**
_____

**yeah** (21)
19:3 31:15 33:6 36:12
58:24 59:3 70:8
77:3 116:20 121:15
122:1 148:20,20
174:8 183:1 185:9
211:17 214:5
233:10 242:13,19
**years** (4)

35:12 67:10 69:3
134:21
**yes-or-no** (2)
30:8 36:4
**York** (7)
1:10 2:5,5,17,17 4:16
4:16

_____
**Z**
_____

**ZIP** (1)
158:24

_____
**0**
_____

**0** (56)
6:21 7:2,5,9,16 8:5,16
8:17,22,22 9:4,6,13
9:17,20,24 10:3,19
10:20 11:1,11,13,18
12:7,18,23,25 13:2
13:6,8,14,17,23
14:3,10,15,18 15:7
15:10,15 16:2,6,8
16:16,22 17:8,10,11
17:16,22,25 18:8,11
18:25 29:12 116:14
**02109** (1)
2:8

_____
**1**
_____

**1** (99)
3:7 4:4,10 5:20,21
49:12,16,21,25 50:7
50:11,13,19 51:20
52:14,17,20,21 53:5
53:24 54:8,11,17,21
54:23 55:6,7 56:8
56:14,15,17 57:14
57:20 59:17,25 60:5
60:7,14,16,18 61:10
62:8,18,20,25 63:24
64:6,20,25 65:9,23
66:23 67:6 68:1,12
68:22 69:1,21 81:1
82:6 88:22 92:4
94:6,19 135:8,10,15
137:16 143:5,8,13
143:20,23 144:3
150:22 151:2,11,18
151:24 152:8 153:7
153:25 154:12
155:4 159:8,10
176:13 182:9
203:11,19 204:9
205:5,11 206:5,9,12

206:16 225:16
247:5
**1's** (1)
62:9
**1(c)(2)** (1)
216:8
**1:37** (2)
132:13,14
**10** (1)
119:7
**10:30** (1)
58:22
**10:39** (2)
66:9,10
**10:56** (2)
66:10,12
**10007** (1)
2:5
**10010** (1)
2:17
**11** (2)
148:18 165:7
**11:30** (2)
90:15,17
**11:33** (2)
90:17,20
**119** (2)
223:7,10
**12** (6)
48:23 118:17 137:16
149:1 165:18 167:9
**12-cv-00630-LHK** (2)
1:7 4:9
**12:29** (2)
132:12,13
**1200** (1)
2:21
**128** (1)
199:23
**130** (2)
201:16,21
**132** (2)
3:18 115:21
**132570** (1)
1:25
**136** (3)
118:13,16 125:12
**137** (4)
121:8,12 124:5
125:17
**14** (3)
137:16 149:6 223:11
**15** (10)
18:6 58:19 59:3,5

63:20,21 144:18
149:11,20 228:9
**150** (3)
177:2,3,9
**15222** (2)
1:22 4:11
**161** (4)
82:2 83:15 86:19
87:14
**164** (1)
3:19
**17** (3)
66:16 104:25 202:22
**18** (3)
93:9 202:18,21
**19** (3)
93:21 139:5 203:15
**1995** (3)
135:22 148:19,21
**1996** (1)
135:15
**1A** (2)
148:17 149:2
**1C** (1)
149:4
**1E** (3)
142:23 143:2 144:3

_____
**2**
_____

**2** (18)
3:8 5:25 6:3,10,19
12:3 18:25 49:4
51:17 90:19 115:19
118:14 146:7,13
148:24 198:7
199:12 247:6
**2:31** (2)
175:12,14
**2:42** (2)
175:14,17
**20** (5)
75:19,23 129:11
214:24 248:10
**20036** (1)
2:21
**2013** (9)
44:10 45:3,15 81:15
81:21 87:9 97:17
98:1 118:17
**2014** (20)
9:15 10:9,13,21 11:19
46:6 49:24 51:1,6
66:19 68:16 70:5
74:21 79:12 84:6

Highly Confidential - ATTORNEYS' EYES ONLY

107:19 116:23
138:16,20 210:14
**2017 (16)**
1:22 4:12 9:25 31:20
45:1,14 75:11 76:24
77:22 79:3 85:12
92:21 118:14
225:19 238:3
246:22
**21 (3)**
74:21 110:24 146:15
**217 (1)**
76:14
**22 (15)**
18:2,4 51:4,14 52:2
70:3 71:17,20,25
72:3,8 124:6 137:6
138:13 146:20
**23 (4)**
51:19 72:15 148:8,12
**24 (3)**
90:25 97:2 148:8
**25 (1)**
148:8
**250 (1)**
2:4
**26 (3)**
148:8 214:25 215:13
**27 (3)**
135:22 147:24 148:5
**28 (2)**
66:19 148:5
**29 (4)**
31:13 104:11,14,24

---
**3**
---
**3 (16)**
3:10 6:5,7,19 18:3
31:18 32:6 51:17
58:20 93:8 136:20
165:11 175:16
215:9 216:6 247:7
**3010 (1)**
4:11
**31 (2)**
1:22 4:12
**34 (1)**
19:7
**37 (2)**
172:4,5
**38 (4)**
210:9,10 218:21
238:3

---
**4**
---
**4 (11)**
3:12 32:7 50:25 74:20
74:25 89:3,10
165:19 177:9 228:8
242:23
**4:05 (2)**
237:21,23
**4:23 (2)**
237:23,24
**4:32 (2)**
244:23 245:2
**40 (1)**
31:5
**43 (1)**
216:2
**45 (10)**
70:14,16 71:1,6,7,10
71:18,23 72:4 228:7
**47 (5)**
90:24 96:16,25 97:25
100:15

---
**5**
---
**5 (7)**
3:3,7,14 49:3 81:22
81:25 139:7
**5,859,636 (2)**
3:18 132:18
**5,946,647 (7)**
3:7,15,20 5:19 76:14
81:24 163:25
**50 (2)**
31:5 172:7
**51 (1)**
2:17
**53 (3)**
53:21 119:5,6
**55 (1)**
78:1
**57 (2)**
113:24 114:3
**58 (8)**
12:16,24 13:1,4,13
14:3,8 137:3
**59 (13)**
12:2,5,19 14:14,17
15:9 17:9 139:4
155:23 156:3 161:9
161:16 166:17

---
**6**
---
**6 (13)**
3:8,10,16 19:8 32:5

34:3 92:11,15
132:19 201:22
215:1,13 242:20
**60 (5)**
2:8 31:2,3 82:3
199:25
**61 (5)**
19:6,20 20:17 115:20
201:21
**62 (1)**
129:6
**64 (1)**
106:17
**647 (80)**
10:16 17:23,25 46:3
49:12,17,22 50:1,8
50:12 51:20 52:15
52:20,21 53:19
66:23 67:6,11 68:2
68:12 69:9 77:24
83:4 85:5 87:5
88:18,24 89:1,25
91:23 92:4 94:20
103:8 107:5 116:8
117:1 133:8,11
134:3,18 135:8,12
135:25 137:7,13,16
138:15 150:22
151:11,19,24 152:8
152:9 153:8,25
154:13,15,17 155:5
157:2,14 158:13,16
159:6,7 160:16
161:17 162:5
163:13 164:8 166:3
169:3 176:13 182:9
182:24 183:18
197:17 202:13
225:16 233:25
**6D (1)**
164:25

---
**7**
---
**7 (17)**
2:4 3:18 50:23,25
53:6,21 75:22,23
89:17,19 90:6
132:19,20 135:17
139:9 159:12
165:16
**70 (1)**
144:17
**74 (1)**
3:12

**747 (1)**
4:15
**7th (1)**
246:22

---
**8**
---
**8 (8)**
3:19 53:6 66:18
148:19,21 156:2
163:23 164:1
**80 (2)**
170:17,20
**81 (1)**
3:14
**82 (3)**
184:7 189:1 207:22

---
**9**
---
**9 (97)**
17:22,25 31:19 46:3
49:12,16,22,25 50:3
50:9,12,18 51:20
52:10,16,19 53:19
54:5,16,20,25 55:5
55:11,16 56:7,14,16
56:18 57:13,17,22
57:25 58:8,10 59:6
59:17,24 60:2,11,13
61:1,21 62:3,5,10
62:15 63:11,23 64:4
64:13,18 66:2 76:12
77:24,25 79:4,19
80:2,21 81:7,10
82:4,15,17 85:1,15
85:23 86:14,20
87:20 88:4,18 91:23
107:5 116:7 117:1
118:16 152:9
176:13 182:24
183:3,17 199:6,13
200:21 201:23
202:13 203:12,19
204:3,8,19 205:5,10
206:4 216:8 241:23
**9's (1)**
64:22
**9:18 (2)**
1:23 4:12
**92 (1)**
3:16
**94304 (1)**
2:12
**950 (1)**
2:11

**97 (2)**
110:20,23