# EXHIBIT D
## (Filed Under Seal)

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

APPLE INC., a California corporation,

      Plaintiff,

  vs.

SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

      Defendants.

Case No. 12-cv-00630-LHK

**INITIAL EXPERT REPORT OF DR. TODD C. MOWRY IN CONNECTION WITH ONGOING ROYALTIES**

**HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL'S EYES ONLY—SOURCE CODE**

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................2

II.    BASES OF OPINIONS ........................................................................................4

    A.     Qualifications .................................................................................................4

    B.     Materials Considered .....................................................................................4

III.   RELEVANT LEGAL PRINCIPLES AND GUIDELINES ................................5

    B.     "Not More Than Colorably Different" Standard ..........................................5

    C.     Infringement ...................................................................................................6

IV.    SUMMARY OF OPINIONS EXPRESSED AT THE APRIL 2014 TRIAL .................7

    A.     Claim Constructions Applied at the 2014 Trial ............................................7

    B.     Overview of the Infringing Products and Android Code Releases ................8

    C.     All Products – Infringement of Claim Elements 1(a), 1(b), and 1(d) ........11

    D.     Messaging Application – Infringement of Claim Limitations 1(c) and 9 .............13

    E.     Browser Application – Infringement of Claim Elements 1(c) and 9 ...................19

V.     DESIGN-AROUND PRODUCTS ....................................................................25

    A.     General description .......................................................................................25

    B.     Messenger DA2 – Short Tap .......................................................................28

    C.     Messenger DA1-A – Short Tap ...................................................................32

    D.     Browser DA1-A – Short Tap .......................................................................34

    E.     Browser DA1-B – Short Tap .......................................................................38

VI.    THE DESIGN-AROUND DEVICES ARE NOT MORE THAN COLORABLY DIFFERENT ..................................................................................................41

    A.     Messenger – DA2 .........................................................................................41

    B.     Messenger - DA1-A .....................................................................................45

    C.     Browser – DA1-A .........................................................................................47

    D.     Browser - DA1-B .........................................................................................49

    E.     Samsung's Design-Arounds Do Not Employ Non-Obvious Modifications ..........50

VII.   THE DESIGN-AROUND DEVICES CONTINUE TO INFRINGE ..........................51

    A.     All Design-Around Products – Claim 1 preamble, 1(a), 1(b), 1(c)(1), 1(c)(3), 1(d)51

    B.     DA2 – Messenger – Infringement of Claims 1(c)(2) and 9 ...................................56

    C.     DA1-A – Messenger – Infringement of Claims 1(c)(2) and 9 ...............................61

    D.     DA1-A – Browser – Infringement of Claims 1(c)(2) and 9 ..................................63

    E.     DA1-B – Browser – Infringement of Claim 1(c)(2) and 9 ...................................68

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

# I. INTRODUCTION

1. This report contains my opinions related to whether certain products (the "Design-Around Products") sold by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung") are more than colorably different than the Samsung products previously found to infringe U.S. Patent No. 5,946,647 ("the '647 patent") at trial in April 2014 (the "Infringing Products"), and whether the Design-Around Products continue to infringe the '647 patent. It is my opinion that the Design-Around Products are not more than colorably different than the Infringing Products, and that the Design-Around products continue to infringe claims 1 and 9 of the '647 patent.

2. At the April 2014 trial, I supplied opinions that Samsung's Infringing Products infringe claim 9 (which depends from claim 1) of the '647 patent. Specifically, the Infringing Products detect structures in webpages (as displayed in the pre-installed Browser application) and text messages (as displayed in the pre-installed Messaging application) and allow a user to select actions linked to the detected structures. Further, the Infringing Products contain a user interface that enables a user to select structures in data, view a pop-up menu, and select actions from the pop-up menu.

3. I understand that, since the April 2014 trial, Samsung has continued to sell devices with pre-installed Browser and Messaging (also called "Messenger" by Samsung) applications. I further understand that Samsung has performed three different types of modifications to the source code in the Design-Around products, as compared to the Infringing Products, that Samsung claims constitute "design-arounds" to the '647 patent. Samsung has labeled the three design-arounds "DA1-A," "DA1-B," and "DA2." The design-arounds are addressed to two claim limitations from claims 1 and 9 of the '647 patent as shown below (Samsung does not claim to have designed-around the other limitations):

| *Claim Limitation* | *Samsung Claimed Design-Arounds* |
| --- | --- |
| 1. A computer-based system for detecting structures in data | None |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

| | |
|---|---|
| and performing actions on detected structures, comprising: | |
| [a] an input device for receiving data; | None |
| [b] an output device for presenting the data; | None |
| [c] a memory storing information including program routines including | None |
| [1] an analyzer server for detecting structures in the data, and for linking actions to the detected structures; | None |
| [2] a user interface enabling the selection of a detected structure and a linked action; and | DA1-A DA1-B DA2 |
| [3] an action processor for performing the selected action linked to the selected structure; and | None |
| [d] a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines. | None |
| [e] 9. The system recited in claim 1, wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions. | DA2 |

4.      I have been asked to review (i) whether the Design-Around Products implementing DA1-A, DA1-B, and/or DA2 are more than colorably different than the Infringing Products, and (ii) whether the Design-Around Products continue to infringe claims 1 and 9 of the '647 patent.

5.      For the reasons set out in detail below, it is my opinion that the Design-Around Products are not more than colorably different than the Infringing Products, in either the

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

Messenger or Browser applications, and that the Design-Around Products continue to infringe claims 1 and 9 of the '647 patent.

## II.   BASES OF OPINIONS

### A.   Qualifications

6.     I set forth my qualifications in my prior expert reports submitted in this case, including my initial Infringement Expert Report dated August 12, 2013.  I continue to be a Professor in the Department of Computer Sciences at Carnegie Mellon University, and I continue to have a courtesy appointment in the Department of Electrical and Computer Engineering.  My current CV, including a summary of my recent expert testimony is found in Exhibit 1.

7.     I am being compensated for the time I have spent analyzing the Design-Around Products at my customary rate of $500 per hour, plus reimbursement for expenses.  My compensation does not depend in any way upon the opinions and testimony that I provide or the outcome of this action.

### B.   Materials Considered

8.     In forming the opinions set forth in this report, I considered and relied upon my experience, knowledge of the field, and education.

9.     I also re-reviewed and considered the '647 patent and its prosecution and reexamination history, various prior art, the Court's order as to construction of certain terms in the asserted claims of the '647 patent, the Federal Circuit's opinion in this case dated October 7, 2016, and my prior Infringement and Validity expert reports in this case.

10.     I also reviewed technical documents including UI specifications produced by Samsung, Samsung's Objections and Responses to Apple Inc.'s Interrogatories in Connection with Ongoing Royalties, dated July 7, 2017, the October 2014 Declarations of Kevin Jeffay, Juhui Lee, and Sungwoo Cho, and the August 10, 2017 depositions of Daewoong Kim and Kyo Sun Song.  I reviewed and considered sections of public source code from Android code base version 4.4.4 available at http://android.git.kernel.org or http://source.android.com, which is a

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

website that is maintained by the Android Open Source Project.  See http://source.android.com/index.html. I have also reviewed and considered as well source code for the Messenger and Browser applications supplied by Samsung.  I addition, I have evaluated sample Samsung products including an SM-G900A Galaxy S5, as well as photographs and video from inspections of representative Design-Around Products.

11.     I have also reviewed other documents and reference materials cited or listed in this report.  A non-exhaustive list of materials and documents that I considered is found in Exhibit 2.  I reserve the right to rely upon any additional information or materials that may be provided to me or that are relied upon by any of Samsung's experts or witnesses in reports, testimony or otherwise.

12.     I reserve the right to supplement this report should additional information become available to me.

## III.   RELEVANT LEGAL PRINCIPLES AND GUIDELINES

13.     I am not a legal expert and offer no legal opinions.  However, I have been informed by counsel of various legal standards that apply to the pertinent technical issues, and I have applied those standards in arriving at my conclusions expressed in this report.

### B.   "Not More Than Colorably Different" Standard

14.     I have been informed by counsel that a redesigned product may be subject to an ongoing royalty if two requirements are met: (1) the redesigned product is not more than colorably different from the product that was previously found to infringe, and (2) the redesigned product actually infringes the asserted claims.

15.     I understand that the first step of this analysis requires a comparison between the redesigned product and the product that was previously found to infringe.  I understand that the analysis must focus not on randomly chosen features of the infringing product, but rather on the features that were accused at trial and ultimately formed the basis for the infringement determination.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

16.     I understand that a redesigned product will be considered not more than colorably different from the infringing product unless (1) all the infringing features have been modified or removed, and (2) the modification is significant.

17.     I understand that a trivial or immaterial change to an infringing feature is not considered a significant modification.  I further understand that a modification is not considered significant if the redesigned product is functionally identical or substantially equivalent to the infringing product.

18.     I understand that the significance of a modification to an infringing feature may also depend on the relevant prior art.  A modification is unlikely to be considered significant if it merely uses prior art elements in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made.

**C.     Infringement**

19.     I have been informed by counsel that, if a redesigned product is not more than colorably different from the infringing product, the second step of the analysis requires a determination of whether the redesigned product actually infringes the asserted claims.  I understand that, to make that determination, the modified features of the redesigned product must be compared to the asserted claims on a limitation-by-limitation basis.  I understand that the Court's prior claim constructions govern the infringement analysis, and I apply those constructions in my analysis below.

20.     I understand that the redesigned product may infringe a claim either literally or under the doctrine of equivalents.  I understand that literal infringement exists when the redesigned product embodies each and every limitation of the asserted claim.

21.     I understand that the redesigned product can still infringe under the doctrine of equivalents if it does not literally perform every limitation of the asserted claim.  I understand that one test for determining equivalence is whether the differences between the claimed limitation and the product are insubstantial.  I understand that another test for determining

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

equivalence is whether the product performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed limitation.

## IV.   SUMMARY OF OPINIONS EXPRESSED AT THE APRIL 2014 TRIAL

### A.   Claim Constructions Applied at the 2014 Trial

22.    At the April 2014 trial, I provided my opinions based on the following claim constructions that had been supplied by the District Court (for "action processor"), and by the Federal Circuit decision that issued during the April 2014 trial in *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) (for "analyzer server" and "linking actions to the detected structures").

- "action processor" – "program routine(s) that perform the selected action on the detected structures"
- "analyzer server" – "a server routine separate from a client that receives data having structures from the client"
- "linking actions to the detected structures" – "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"

23.    For the other terms in claims 1 and 9 of the '647 patent, I applied the plain and ordinary meaning to a person of ordinary skill in the art.  I explained that a person of ordinary skill in the art as of 1996 (the time of the invention of the '647 patent) would have had either a bachelor's degree in computer science or equivalent training, and they would have had at least two years of experience in the field.

24.    In this expert report, I apply the same level of ordinary skill in the art, and the same claim constructions supplied to the jury in the April 2014 trial, and for the remaining terms I apply plain and ordinary meaning to a person of ordinary skill in the art.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1

### B.    Overview of the Infringing Products and Android Code Releases

2      25.    At the April 2014 trial, I provided opinions regarding infringement by the

3  Infringing Products.  Specifically, as shown in Demonstrative PDX 88.6 below, the products I

4  addressed at the trial were the Admire, Galaxy Nexus, Galaxy Note, Galaxy Note II, Galaxy S II,

5  S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, and Stratosphere.

6

## Accused Samsung Smartphones

   

Admire          Galaxy Nexus          Galaxy Note          Galaxy Note II          Galaxy S II

  

S II Epic 4G Touch    Galaxy S II Skyrocket    Galaxy S III    Stratosphere

JX. 28, 29, 30, 31, 32, 33, 34, 35, 37                                                    PDX88.6

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

26.     The Infringing Devices operated on different releases of the Android operating system, including specifically the Gingerbread, Ice Cream Sandwich, and Jelly Bean releases. PDX 88.11.

## Accused Android Major Releases

| Name of Release | Version Numbers |
|---|---|
| Gingerbread | Android version 2.3, including all sub-versions (*e.g.*, 2.3.1, 2.3.2, . . . 2.3.6, etc.) |
| Ice Cream Sandwich | Android version 4.0, including all sub-versions (*e.g.*, 4.0.1, 4.0.2, . . . 4.0.4, etc.) |
| Jelly Bean | Android versions 4.1, 4.2, and 4.3 including all sub-versions (*e.g.*, 4.1.1, 4.1.2, 4.2.1, 4.2.2, 4.3.1, etc.) |

PDX88.11

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27.     At the 2014 trial, I identified representative products from these different Android releases (PDX 88.13), and explained how the representative Samsung products were covered by claims 1 and 9 of the '647 patent for both the Messaging and Browser applications.



HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

28.     I relied upon the Galaxy S III (the "Infringing Galaxy S III") for the most recent (as of April 2014) releases of the Android software for Jelly Bean, including Android versions 4.1, 4.2, and 4.3.  PDX 88.11.  I explained at trial how devices operating Jelly Bean (like devices operating earlier releases) were covered by claims 1 and 9 of the '647 patent in both the Messaging and Browser applications.



C.     **All Products – Infringement of Claim Elements 1(a), 1(b), and 1(d)**

29.     I explained at trial that coverage of claim elements 1(a), (b) and (d) shown above was readily ascertainable for the Infringing Galaxy S III and the other Infringing Products from a review of the devices themselves, as well as from user manuals and specifications.  Trial Tr. 843:14-844:5.  I explained that there was no apparent dispute that the Infringing Products met

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

these limitations, and I have not been made aware of any changes to the Design-Around Products that Samsung claims causes the Design-Around Products to no longer be covered by these limitations.

30.    For element 1(a), I explained that all of the Infringing Products had "an input device for receiving data" – namely, each device was a cell phone that was able to receive messages and allow users to browse web-pages.  Trial Tr. 848:13-849:6.

31.    For element 1(b), I explained that all of the Infringing Products had "an output device for presenting the data" – i.e., the screen.  Trial Tr. 848:13-849:6.

32.    For element 1(d), I explained that because all of the Infringing Products were capable of operating and executing software, they each necessarily had "a processing unit coupled to the input device, the output device, and memory for controlling the execution of the program routines."  Trial Tr. 848:13-849:6.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

### D.      Messaging Application – Infringement of Claim Limitations 1(c) and 9

33.      I further explained at the 2014 trial that coverage of claim elements 1(c)(1), 1(c)(2), 1(c)(3) and claim 9 was ascertainable from a visual analysis of the products in operation, as well as from a review of the source code and other supporting technical documentation.  Trial Tr. 843:14-844:5.

34.      With respect to the Messaging application and the first part of element 1(c)(1) - an "analyzer server for detecting structures in the data" - I explained that in all Android OS versions, the analyzer server routines for detecting structures in data comprise the addLinks() method of the Linkify class, the Pattern class, and the Matcher class.  I explained that the Linkify class looks for matches to prerecorded patterns, i.e., phone numbers, email addresses, URLs, and postal addresses, using the find() method of the Matcher class.  Trial Tr. 850:11-853.10; PDX 88.18A; PDX 88.19A.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

35.     With respect to the Messaging application and the second part of element 1(c)(1) - an "analyzer server for…linking actions to the detected structures" - I provided an overview of the program routines for Gingerbread, Ice Cream Sandwich, and Jelly Bean.  For the Infringing Galaxy S III running Jelly Bean, I explained that the analyzer server routines for linking actions to the detected structures consisted of the showLinksContextMenu() method of the MessageListItem class, the handleMessage() method of the mMessageListItemHandler instance of the Handler class, the Intent class, and the startActivity() method of the ContextImpl class. I explained that the showLinksContextMenu() creates a set of choices for a contextual pop-up menu for the particular structure chosen by the user.  Once the user made a choice from the contextual pop-up menu, the startActivity() method would begin to launch the activity chosen. Trial Tr. 853:13-858:19; PDX 88.20.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

36.     With respect to the Messaging application and the first part of element 1(c)(2) - a "user interface enabling the selection of a detected structure" - I provided an overview of the program routines for Gingerbread, Ice Cream Sandwich, and Jelly Bean.  For the Infringing Galaxy S III running Jelly Bean, I explained that after Linkify has found the structures in the message, it creates a URL span object, associates it with each of the structures, and the structures then show up in blue and underlined.  Trial Tr. 862:13-19; PDX 88.28.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

37.     With respect to the Messaging application and the second part of element 1(c)(2) - a "user interface enabling the selection of…a linked action" - I provided an overview of the program routines for Gingerbread, Ice Cream Sandwich, and Jelly Bean.  For the Infringing Galaxy S III running Jelly Bean, I explained that the user interface for selecting linked actions was the contextual pop-up menu created by the showLinksContextMenu() method of the MessageListItem class.  Trial Tr. 863:2-864:23; PDX 88.29.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38.     With respect to the Messaging application and element 1(c)(3) - an "action processor for performing the selected action linked to the selected structure" - I explained that in all Android OS versions, the action processor routines were the startActivity() method of the ContextImpl class, the resolveActivity() method of the Intent class, and the resolveActivity() method of the PackageManager class.  I explained that, upon a user's choice of an action from the contextual pop-up menu, an intent object gets passed to startActivity(), which along with the resolveActivity() methods will cause the launching of the action to take place.  Trial Tr. 873:8-874:6; PDX 88.35.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

39.     With respect to the Messaging application and Claim 9 - "The system recited in claim 1, wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions" - I explained that the contextual pop-up menu created by showLinksContextMenu() satisfied this limitation.  I explained that the contextual pop-up menu for the Infringing Galaxy S III and the other Infringing Products displayed a menu of actions that were linked by the analyzer server as required by the claims.  Trial Tr. 874:7-875:4; PDX88.29.



**Menu of linked actions**

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

### E. Browser Application – Infringement of Claim Elements 1(c) and 9

40.    With respect to the Browser application and the first part of element 1(c)(1) - an "analyzer server for detecting structures in the data" - I provided an overview of the program routines for Gingerbread, Ice Cream Sandwich, and Jelly Bean.  For the Infringing Galaxy S III running Jelly Bean, I explained that the analyzer server routines for detecting structures in data comprise the ContentDetector class and its child classes (AddressDetector and PhoneEmailDetector).  I explained that the methods in the AddressDetector and PhoneEmailDetector classes that detected structures were the FindContent(), FindPartialNumber() and FindPartialEmail() methods.  Trial Tr. 859:16-860:3; PDX88.23.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

41.     With respect to the Browser application and second part of element 1(c)(1) - an "analyzer server for…linking actions to the detected structures" - I explained that in all Android OS versions, the analyzer server's program routines consisted of the onCreateContextMenu() method of the BrowserActivity class, the setIntent() method of the MenuItemImpl class, and the startActivity() method of the ContextImpl class.  I explained that the onCreateContextMenu() method builds an intent object, such as for dialing a phone number and including the digits of the phone number.  Once the user has made a choice from the contextual pop-up menu, the StartActivity() method would begin to launch the activity chosen.  Trial Tr. 860:4-861:7; PDX 88.24.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

42.     With respect to the Browser application and the first part of element 1(c)(2) - a "user interface enabling the selection of a detected structure" - I provided an overview of the program routines for Gingerbread, Ice Cream Sandwich, and Jelly Bean.  For the Infringing Galaxy S III running Jelly Bean, I explained that, unlike in Messaging and in earlier versions of Browser, in Jelly Bean before the user had touched the screen, the structures had not been detected.  Instead, when the user's finger touched the screen, the phone began detecting the structures underneath the user's finger.  Then, when it is finished detecting structures, the HitTest() method within WebViewCore.cpp took the result and called the createJavaObject() method of the AndroidHitTestResult class to construct a Java object and store information in a variable location called mInitialHitTestResult in the web view classic class.  Trial Tr. 867:9-869:12; PDX 88.32.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

43.     With respect to the Browser application and the second part of element 1(c)(2) - a "user interface enabling the selection of…a linked action" - I provided an overview of the program routines for Gingerbread, Ice Cream Sandwich, and Jelly Bean.  For the Infringing Galaxy S III running Jelly Bean, I explained that, if the user left his or her finger on the screen over a structure for more than one second - i.e., a long-press or "press and hold" - then the screen would display a contextual pop-up menu.  I explained that the Infringing Galaxy S III and other Jelly Bean phones have a software timer that is set when the user presses his or her finger down, and that when the user lifts his or her finger up, the timer is checked to determine whether there has been a short tap or a long press.  I explained that if the phone determined that a long-press had been made over a detected structure, then a contextual pop-up menu would be displayed.  Trial Tr. 869:13-871:7, 872:8-873:7; PDX 88.33.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

44.     With respect to the Browser application and element 1(c)(3) - an "action processor for performing the selected action linked to the selected structure" - I explained that in all Android OS versions, the action processor routines were the startActivity() method of the ContextImpl class, the resolveActivity() method of the Intent class, and the resolveActivity() method of the PackageManager class.  I explained that, upon a user's choice of an action from the contextual pop-up menu, an intent object gets passed to startActivity(), which along with the resolveActivity() methods will cause the launching of the action to take place.  Trial Tr. 873:8-874:6; PDX 88.35.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

45.     With respect to the Browser application and claim 9 - "The system recited in claim 1, wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions" - I explained that the contextual pop-up menu created by showLinksContextMenu() satisfied this limitation.  I explained that the contextual pop-up menu for the Infringing Galaxy S III and the other Infringing Products displayed a menu of actions that were linked by the analyzer server as required by the claims.  Trial Tr. 874:9-875:4.



HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

## V.    DESIGN-AROUND PRODUCTS

### A.    General description

46.    According to Samsung's Objections and Responses to Apple Inc.'s Interrogatories in Connection with Ongoing Royalties ("Samsung Interrogatory Responses"), the Design-Around Devices implement one or more of three design-arounds for Browser and Messaging (now called "Messenger").  Samsung has labeled these design-arounds "DA1-A", "DA1-B", and "DA2".  Samsung has identified the source files that were modified from the Jelly Bean (and earlier releases of the Android OS) in order to implement some combination of DA1-A, DA1-B, and DA2 for each of the Design-Around Products.  Samsung Interrogatory Responses, pp. 6-26. I am not aware of any other files that Samsung has identified that were modified in any relevant manner from the Jelly Bean version of the software in the Infringing Galaxy S III that I discussed at the April 2014 trial. The chart below summarizes the infringement evidence for the Infringing Galaxy S III, as well as the particular limitations that Samsung claims to have designed around in DA1-A, DA1-2, and DA2:

| *Claim Limitation* | *Infringing Galaxy S III: Evidence of Infringement* | *Samsung Claimed Design-Arounds* |
| --- | --- | --- |
| 1. A computer-based system for detecting structures in data and performing actions on detected structures, comprising: | | None |
| [a] an input device for receiving data; | Touchscreen, radio components | None |
| [b] an output device for presenting the data; | Touchscreen | None |
| [c] a memory storing information including program routines including | RAM and ROM | None |
| [1] an analyzer server for detecting structures in the data, and for linking actions to the detected structures; | **Messaging:**<br>**Detecting structures:**<br>addLinks()<br>Matcher()<br>find()<br>**Linking actions:**<br>showLinksContextMenu()<br>handleMessage() | None |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

|  |  |  |
|---|---|---|
|  | mMessageListItemHandler<br>startActivity()<br><br>**Browser:**<br>**Detecting structures:**<br>FindContent()<br>FindPartialNumber()<br>FindPartialEmail()<br>**Linking actions:**<br>onCreateContextMenu()<br>setIntent()<br>startActivity() |  |
| [2] a user interface enabling the selection of a detected structure and a linked action; and | **Messaging:**<br>**Selecting Structures:**<br>ApplyLink()<br>URLSpan<br>**Linking actions:**<br>onTouch()<br>showLinksContextMenu()<br>show()<br><br>**Browser:**<br>**Selecting Structures:**<br>HitTest()<br>CreateJavaObject()<br>mInitialHitTestResult()<br>getHitTestResult()<br>onCreateContextMenu()<br>**Linking Actions:**<br>onCreateContextMenu()<br>getHitTestResult()<br>show() | DA1-A – Messenger and Browser<br>DA1-B – Browser<br>DA2 – Messenger |
| [3] an action processor for performing the selected action linked to the selected structure; and | **Messaging and Browser:**<br>startActivity()<br>resolveActivity()<br>[Intent class]<br>resolveActivity()<br>[PackageManager class] | None |
| [d] a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines. | Galaxy S III processor | None |

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

| [e] 9. The system recited in claim 1, wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions. | Contextual Pop-up Menu | DA2 – Messenger<br>DA1-A – None<br>DA1-B – None |
| --- | --- | --- |

47.     Samsung's Interrogatory Responses identify a total of 83 Design-Around Products.  Samsung Interrogatory Responses, pp. 6-26.  The 83 Design-Around Products implement a combination of DA1-A, DA1-B, and DA2 for Browser and Messenger.  The combinations break down as follows:

- 70 products implement DA2 in Messenger and DA1-A in Browser;[1]
- 3 products implement DA1-A in Messenger and in Browser;[2]
- 1 product implements DA1-A in Messenger and DA1-B in Browser;[3]
- 4 products implement DA2 in Messenger and DA1-B in Browser;[4]
- 1 product implements DA1-A in Messenger and contains no Samsung Browser;[5]
- 4 products implement DA2 in Messenger and contain no Samsung Browser.[6]

48.     Samsung has further identified line numbers within the source files that were modified to implement DA1-A, DA1-B, and DA2 for four representative phones (the "Representative Design-Around Products"):

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

49.     I have reviewed the source code for the Representative Design-Around Products identified by Samsung.  I understand that the 79 "non-representative" Design-Around Products implement DA1-A, DA1-B, and DA2 in Messenger and Browser in the same manner as in the Representative Design-Around Products in those respective applications.  My analysis of DA1-A, DA1-B, and DA2 thus applies to all the Design-Around Products.

**B.      Messenger DA2 – Short Tap**

50.     78 of the 83 Design-Around Products implement DA2 in Messenger.  Samsung Interrogatory Responses, pp. 6-26.  The DA2 design-around is implemented in source code that was modified for the Messenger application

52.     However, there *is* still a pop-up window — a "resolver activity" pop-up menu - that appears in the DA2 products when a user short taps on an email, URL, or postal address:

---

7       See http://www.samsung.com/us/mobile/cell-phones/SGH-T999ZWATMB-specs.
8       See http://www.samsung.com/us/mobile/cell-phones/SCH-S968MBBTFN-specs.
9       See http://www.samsung.com/us/mobile/cell-phones/SM-G900AZKAATT-specs.
10      See http://www.samsung.com/us/mobile/cell-phones/SM-G920AZKEATT-specs.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



**Resolver Activity Pop-up
Window For Email**



**Resolver Activity Pop-Up
Window For URL Address**

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



**Resolver Activity Pop-Up
Window for Postal Address**

53.      As can be seen from the photos above from a representative Galaxy S5 SM-G900A phone, when the user selects an email that has been detected in the Messaging application, a resolver activity pop-up menu will appear that asks which email application the user would like to use to send the email.  When the user selects a URL address, the resolver activity pop-up menu will appear that asks which web-browser the user would like to use to open the address.  When the user selects a postal address, the resolver activity pop-up menu will appear that asks which map or navigation application the user would like to use to find the address.

██████████████████████████████████████████████████████
████████████████████████████████████████████████  For example, upon selection of a linked action, the Messenger application invokes the startActivity() method of the PackageInfo class and passes it an Intent object that contains a description of the action to perform.  See Android Application Fundamentals, *available* at http://developer.android.com/guide/topics/fundamentals.html.  The startActivity() method then

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

launches the appropriate activity, which "is a single, focused thing that the user can do."  See

Android Developers Reference – Activity, APLNDC630-0001906585 – 644, *available at*

http://developer.android.com/reference/android/app/Activity.html.  Activities are one of the

"three … core components of an application" and are "activated through messages[] called

*intents*."  See Intents and Intent Filters, *available at*

http://developer.android.com/guide/topics/intents/intents-filters.html.  Some Intent objects

specify the Activity to launch while others specify an action to perform and the data on which to

perform that action.  See Android Developers Reference – Intent, *available at*

https://developer.android.com/reference/android/content/Intent.html.  In the case of the latter, the

resolveActivity() method of the Intent class determines what activity should be launched via a

call to the resolveActivity() method of the PackageManager class.  See Android Developers

Reference – Intent; ███████████████████████████  If there is more than one activity

that can perform the desired action, then the system will start a "system class that will allow the

user to pick [the] activity."  See Android Developers Reference – Intent.

55. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[11]     Available at https://android.googlesource.com/platform/frameworks/base.git/+/android-4.4.4_r1/core/java/com/android/internal/app/ResolverActivity.java

[12]     Available at https://android.googlesource.com/platform/frameworks/base.git/+/android-4.4.4_r1/core/res/res/layout/resolver_list.xml

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

**C.      Messenger DA1-A – Short Tap**

56.      5 of the 83 Design-Around Products implement DA1-A in Messenger.  Samsung Interrogatory Responses, pp. 6-26.  For these products, the DA1-A design-around is implemented in source code that was modified for the Messenger application.  Specifically, Samsung modified code in the following four source files for the DA1-A Messenger products:

57.      As a result of the DA1-A code modifications, the DA1-A Messenger products do not pre-detect structures in messages before the user places his or her finger down on the structure.  However, as discussed below (and as the jury agreed), pre-detection is not necessary to infringe.

58.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

59.

60.

61.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



### D.  Browser DA1-A – Short Tap

62.     73 of the 83 Design-Around Products implement DA1-A in Browser.  Samsung Interrogatory Responses, pp. 6-26.  DA1-A has been referred to by Samsung, and Dr. Jeffay, as SBrowser.  Samsung Interrogatory Responses, p. 30; Jeffay Declaration.  There are slight variations in how DA1-A was implemented in code, as explained in Samsung Interrogatory Responses, pp. 33-40.  My description below applies to all versions of DA1-A for Browser, unless specifically noted otherwise.

63.     The DA1-A Browser products, like the Infringing Galaxy S III implementing Jelly Bean, do not pre-detect structures before the user places his or her finger down on the structure.

64.     One of the changes made with respect to the DA1-A Browser products was that a "generic" pop-up menu, rather than a contextual or resolver-activity pop-up menu, appears when a user makes a long press on a structure in Browser.  I have not analyzed the "generic" pop-up menu for the purposes of this report.

65.     Another change that Samsung made with respect to the DA1-A Browser products was that the same type of "contextual" pop-up menu that appeared in the Infringing Galaxy S III

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1   Product after long press now appears in the DA1-A Browser products after a short tap.  There are

2   three different iterations of the DA1-A Browser design-around that are described below.

3        66.

19        67.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



68.

69.

70.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

71.

72.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

73.

### E.    Browser DA1-B – Short Tap

74.    5 of the 83 Design-Around Products implement DA1-B in Browser.  Samsung Interrogatory Responses, pp. 6-26.  DA1-B has been referred to by Samsung, and Dr. Jeffay, as "Stock Browser."  Samsung Interrogatory Responses, p. 40; Jeffay Declaration.

75.    The DA1-B Browser products, like the Infringing Galaxy S III implementing Jelly Bean, do not pre-detect structures before a user places his or her finger down on the structure.  One of the changes made with respect to the DA1-B Browser products was that a "generic" pop-up menu, rather than a contextual or resolver-activity pop-up menu, appears when a user makes a long press on a structure in Browser.  I have not analyzed the "generic" pop-up menu for the purposes of this report.

76.    Another change that Samsung made with respect to the DA1-B Browser products was that the same type of "contextual" pop-up menu that appeared in the Infringing Galaxy S III

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1

Product after long press now appears in the DA1-B Browser products after a short tap.

77.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

78.

79.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

## VI.   THE DESIGN-AROUND DEVICES ARE NOT MORE THAN COLORABLY DIFFERENT

### A.   Messenger – DA2

80.    By its DA2 modification, Samsung has simply substituted the user experience of viewing a contextual pop-up menu immediately after a short tap of a structure in Messenger with viewing a resolver activity pop-up menu immediately after a short tap of all relevant structures other than a phone number.  In my opinion, the DA2 products are not more than colorably different than the Infringing Products because the "resolver activity" pop-up window is not significantly different than the "contextual" pop-up menu of the Infringing Products.  See above, paragraph 52.

81.    The DA2 modification does not alter that in the DA2 products, structures are pre-detected and highlighted as in the Infringing Galaxy S III running Jelly Bean.  Samsung has not identified any relevant changes ███████████████████████████████████ ███████████████████████████████ from the Infringing Galaxy S III.  DA2 devices likewise present a user-interface in the form of a touch-screen that allows the user to short tap on those detected structures as in the Infringing Galaxy S III:

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



82.     Further, like the Infringing Galaxy S III, the DA2 products further display a pop-up menu to the user when he or she makes a short tap on the highlighted structure in the message (other than for telephone numbers).  In the Infringing Galaxy S III, the pop-up menu displayed immediately after a short tap was the contextual pop-up menu, while in the DA2 devices, the pop-up menu displayed immediately after a short tap is the resolver activity pop-up menu:

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

83.     A person of ordinary skill in the art would not find the resolver activity pop-up menu to be significantly different than the contextual pop-up menu in view of claims 1 and 9 of the '647 patent.  Both menus are of course pop-up menus.  Both menus present actions that may be selected, and both will launch a program, such as an email program, with a detected structure upon user selection within the pop-up menu.

84.     Samsung and Dr. Jeffay may try to argue that the contextual pop-up menu is significantly different than the resolver activity pop-up menu because it generally presented more actions for the user to choose than the resolver activity pop-up menu.  However, the term "linking actions to the detected structures" was construed as requiring simply *one or more* actions to be linked to a particular structure (the term was construed as "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure").  Thus, the fact that the resolver activity pop-up menus link to multiple applications for one *type* of action, e.g., opening an email app, does not matter.  A person of ordinary skill in the art would understand that the DA2 products still have the following relevant attributes: (i) they link multiple different types of actions to the different types of structures in a message – e.g., they will link actions to open the email application for email structures, they will link actions to open a Web Browser for URL structures, they will link actions to open a Maps or Navigation application for postal address structures, and (ii) they provide a resolver activity pop-up menu that provides the user with a set of choices regarding which application to launch for emailing, locating a geographic address, or searching a URL.

85.     Samsung and Dr. Jeffay may further argue that the resolver activity pop-up menu will not appear in cases after a user selects "Always" within the resolver activity pop-up menu (i.e., if the user selects "Always", then the particular application selected from the resolver activity pop-up menu will become the default application and the resolver activity pop-up menu will subsequently be bypassed).  However, this feature simply only means that the resolver

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

activity pop-up menu *may* not appear in certain instances and based on user selection.  The fact remains that the program routines for the pop-up menu are included in the DA2 products, and the resolver activity pop-up menu *will* appear: (i) the first time the user short taps on an email address, postal address, and/or URL address in the DA2 devices, (ii) every subsequent time after the user presses "Just Once" in the resolver activity menu, and (iii) every subsequent time after the user re-sets the phone to factory defaults.

86.     Samsung and Dr. Jeffay may further argue that the resolver activity pop-up menu existed in the Infringing Products with respect to the Messaging application, but was not accused at the 2014 trial.  However, in the infringing Galaxy S III and other products at trial, the *first* pop-up menu that a user viewed upon a short tap in Messaging was the *contextual* pop-up menu.  This contextual pop-up menu provided a "user interface enabling the selection of…a linked action" in the form of a pop-up menu displaying the linked actions.  It was not necessary to further address the resolver activity pop-up menu, except to explain that the resolver activity functions did not detract from the fact that the contextual pop-up menu was covered by the claims.  Now, however, the first pop-up menu to appear after a short tap of email address, URL addresses, and postal addresses in Messenger for the DA2 products is the resolver activity pop-up menu.  Now, the resolver activity pop-up menu likewise presents a user interface enabling the selection of a linked action, and is in the form of pop-up menu presenting the linked actions.

87.     When implementing DA2, Samsung could have, but did not, remove the resolver activity pop-up menu.  One way to remove the resolver activity pop-up menu would have been to simply bypass it in favor of a default application (the user could, for example, be given the option to set defaults upon phone set-up).  I note that I find no analog resolver activity pop-up menu in iPhone devices.  Documents produced by Samsung in response to Apple's Requests for Production of Document in Connection with Ongoing Royalties ██████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

88.     In the DA2 products, like the Infringing Galaxy S III, actions such as an email program will be launched based on the user's selection within the pop-up menu:



89.     Accordingly, because the DA2 design-around entails detecting structures in messages, presenting a resolver activity pop-up menu of choices of actions to launch the structure, and launching the action based on user selection within the pop-up menu, it is my opinion that the products implementing the DA2 design-around in Messenger are not more than colorably different than the Infringing Galaxy S III.

**B.     Messenger - DA1-A**

90.     I explain below with respect to the Browser Application why DA1-A is not more than colorably different from the design of the Infringing Galaxy S III.  I incorporate that analysis and conclusions for the DA1-A Messenger products as well.  To the extent that the DA1-A Messenger products perform structure detection in the same general manner as the DA1-A Browser products, my opinion is that the DA1-A Messenger products are not more than colorably different for the same reasons.

91.     I explained at the 2014 Trial that pre-detection of structures was not necessary to infringe the asserted claims and that the Infringing Samsung Galaxy S III did not pre-detect structures in the Browser application.  Thus, the fact that DA1-A Messenger products no longer

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

pre-detect and highlight structures in Messenger does not make those products more than colorably different than the Infringing Products.  I explain below why the process of detection in DA1-A Browser products is not more than colorably different than the process in the Infringing Galaxy S III product.  The same holds true for the DA1-A Messenger products.

92. To the extent that the DA1-A Messenger products perform structure detection in the same general manner as the DA1-B Browser products for                     my opinion is that the DA1-A Messenger products are not more than colorably different for the same reasons that the DA1-B Browser products are not more than colorably different.

93.     The DA1-A Messenger products display a contextual pop-up menu upon a short tap of the relevant structures.  This is the same type of contextual pop-up menu as in the Infringing Products:

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



**DA1-A Contextual Pop-Up Menu**
**Galaxy S3 – SGH-T999L**

94.     Because devices implementing DA1-A in Messenger function the same as the Infringing Galaxy S III with respect to presenting structures, pop-up menus, and linked actions, my opinion is that the DA1-A Messenger devices are not more than colorably different than the Infringing Galaxy S III and other Infringing Products.

**C.      Browser – DA1-A**

95.     Samsung made two minor modifications to the DA1-A Browser products:  (1) the completion of the detection of the relevant structure now occurs after the user lifts his or her finger up, instead of before the user lifted his or her finger up; and (2) the contextual pop-up menu now appears on a short tap, rather than a long press.  In my opinion, these changes do not render the DA1-A Browser products more than colorably different from the Infringing Galaxy S III.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

96.     From the user experience perspective, DA1-A is functionally equivalent to the Infringing Galaxy S III phone.  With the Infringing Galaxy S III, when a user long presses on a relevant data structure, the contextual pop-up menu appears.  The content of that pop-up menu differs depending on what type of data structure is detected.  In the DA1-A Browser products, when a user short taps on a relevant data structure, the same type of contextual pop-up menu appears.



2014 Trial Phone - Galaxy SIII

Design Around Phone - Galaxy S5

97.     Neither the Infringing Galaxy S III nor the DA1-A Browser products pre-detect and highlight relevant structures.  As discussed above, pre-detection is not necessary to infringe the asserted claims.  Because there is no pre-detection in either the Infringing Galaxy S III or the DA1-A Browser products, the detection process does not begin until after the user touches the relevant structure with his or her finger (or similar instrument).  In both instances, upon a "finger down" event, a timer is set that, after "finger up," will help determine if a contextual pop-up menu will be displayed.  In both instances, the process that includes detection and display of a contextual pop-up menu starts with "finger down." ████████████████████

98.     The fact that this process of detection is completed in the DA1-A Browser products after the user lifts his or her "finger up," rather than before, does not render DA1-A colorably different.  As noted, "finger up" is nothing more than part of a process that necessarily begins with "finger down."  The code modification necessary to implement a change from

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1    detection upon "finger down" to detection upon "finger up" is minor.

8        99.    From the user's vantage point, whether ███████████████ get

9    invoked on "finger down" or "finger up" is irrelevant.  Because the short tap is by definition

10   shorter than a long press, and because of the speed by which structures are detected in the

11   devices, the display of a contextual pop-up menu in the DA1-A products is as instantaneous,

12   from a users' perspective, as in the infringing Galaxy S III.

13       100.   Because devices implementing DA1-A in Browser function the same as the

14   Infringing Galaxy S III with respect to presenting structures, pop-up menus, and linked actions,

15   my opinion is that the DA1-A Browser devices are not more than colorably different than the

16   Infringing Galaxy S III and other Infringing Products.

17       **D.    Browser - DA1-B**

18       101.   The only relevant modification between Samsung's Infringing Galaxy S III phone

19   and the DA1-B Browser modification (i.e., ███████████) is the type of user selection that calls

20   the contextual pop-up menu.  In both the Infringing S III and DA1-B products, there is no pre-

21   detection of the relevant structures.  Rather, detection of the data structure begins upon a user

22   placing his or her "finger down" on a structure, and a contextual pop-up menu appears depending

23   upon what type of structure is detected.  In the DA1-B products, as in the Infringing Galaxy S

24   III, ███████████████████ is invoked *prior* to the user lifting his or her "finger up."

25   The only difference is that in the DA1-B products, the contextual pop-up menu appears when the

26   user short taps the data structure (i.e., touches it for less than one second), whereas in the

27

28

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

Infringing Galaxy S III products, the contextual pop-up menu appears when the user long presses the data structure (i.e., touches it for longer than one second).  In my opinion, this single modification of moving the relevant functionality from a long press to a short tap is not sufficient to render the DA1-B products more than colorably different than the Infringing Galaxy S III and other Infrining Products.

102.    In terms of a user's experience, DA1-B is functionally equivalent to the Infringing Galaxy S III phones.  In both cases, the user selects a data structure by placing his or her finger on a structure and then lifting it off, and the result is a contextual pop-up menu.

103.    When considered in light of the asserted claims, the switch from long press to short tap implemented by DA1-B is irrelevant.  The asserted claims require only that the user "select" a data structure.  They do not differentiate between different types of user selection (i.e., long press versus short tap).

104.    Because devices implementing DA1-B in Browser function the same as the Infringing Galaxy S III with respect to presenting structures, pop-up menus, and linked actions, my opinion is that the DA1-B Browser devices are not more than colorably different than the Infringing Galaxy S III and other Infringing Products.

**E.    Samsung's Design-Arounds Do Not Employ Non-Obvious Modifications**

105.    I have been informed by counsel that one factor that may considered in determining whether a design around is not more than colorably different is whether the design around would have been obvious to a person of ordinary skill in the art.  As stated in my prior reports regarding the '647 patent, a person of ordinary skill in the art relevant to the '647 patent is a person with at least a Bachelor's of Science degree in computer science or equivalent coursework and at least two years of experience in the field.

106.    I have reviewed Samsung's interrogatory responses and understand that Samsung has not alleged that any of its three design-arounds are non-obvious.  It is my opinion that the minor technical modifications Samsung implemented in its design-arounds would have been

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

obvious to a person of ordinary skill in the art at least as early as May 5, 2014, when the Infringing Products were found to infringe the '647 patent.  To the extent Dr. Jeffay offers an opinion regarding the obviousness of the design-arounds, I reserve the right to respond

## VII.   THE DESIGN-AROUND DEVICES CONTINUE TO INFRINGE

### A.   All Design-Around Products – Claim 1 preamble, 1(a), 1(b), 1(c)(1), 1(c)(3), 1(d)

107.    Samsung has identified claim limitation 1(c)(2) and claim 9 as the limitations purportedly no longer infringed by the Design-Around Products.  Thus, I do not understand Samsung to be claiming that any other limitations are not met by the Design-Around Products. My opinion is that the Design-Around products meet these other limitations for the same reasons the Infringing Products meet them.

#### 1.   Claim 1 – Preamble to claim: "A computer-based system for detecting structures in data and performing actions on detected structures"

108.    I have not previously provided an opinion whether the preamble to claim 1 of the '647 patent is limiting with regards to the scope of the claims.  To the extent the preamble of claim 1 of the '647 is limiting, my opinion is that the preamble is met by Design-Around Products for the same reasons as the Infringing Products.  Namely, the Design-Around Products are computer-based systems for detecting structures in data and performing actions on the detected structures.  By way of representative example, the Galaxy S 5 SM-G900A contains a 2.5 GHz processor, 2 Gigabytes of random-access memory (RAM), 16 or 32 Gibabytes of memory for storage, a 5.1 inch touchscreen display, and Wi-Fi and Bluetooth connectivity.  See http://www.samsung.com/us/mobile/cell-phones/SM-G900AZKAATT-specs.  Further, as discussed above and below, the Design-Around Products detect structures in data and perform actions on detected structures.

#### 2.   Claim 1 – (a) "an input device for receiving data"

109.    The Design-Around Products contain an input device for receiving data.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

110.     By way of representative example, the Galaxy S 5 SM-G900A contains an AMOLED 5.1 inch touchscreen display.  http://www.samsung.com/us/mobile/cell-phones/SM-G900AZKAATT-specs.  As in the Infringing Products, the touchscreen not only allows the user to interact with applications running on the phone but allows the user to enter text via an onscreen keyboard.



**Galaxy S5 (SM-G900A) Onscreen Keyboard**

111.     Another input device in every Design-Around Product is a radio.  Using this radio, the Design-Around Products can receive data from a network provider.  The Design

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

Around Products' radio and accompanying circuitry receive data that is used by, for example, the Browser and Messenger applications.

112.    The Design-Around Products also include wireless Internet (Wi-Fi) adapters that allow the phones to connect to wireless local area networks.  See http://www.samsung.com/us/mobile/cell-phones/SM-G900AZKAATT-specs.  The wireless Internet adapters allow the phones to receive data, such as web pages, that can be loaded by the devices.

### 3.   Claim 1 – (b) "an output device for presenting the data"

113.    The Design-Around Products include an output device for presenting the data.  By way of representative example, the representative Galaxy S5 SM-G900A phone contains a touchscreen that displays the data to the user.  All of the Design-Around Products likewise contain touchscreens that display data to the user.

### 4.   Claim 1 – (c) "a memory storing information including program routines including:"

114.    The Design-Around Products include a memory for storing information including program routines.  By way of representative example, the Galaxy S5 SM-G900A contains 2 Gigabytes of random-access memory (RAM) and 16 or 32 Gibibyte's of memory for storage. http://www.samsung.com/us/mobile/cell-phones/SM-G900AZKAATT-specs.  All of the Design-Around Products likewise have both RAM and permanent memory for storing information including program routines.

### 5.   Claim 1 – (c)(1) "an analyzer server for detecting structures in the data and for linking actions to the detected structures"

115.    Samsung has not identified any changes to the source code from Jelly Bean to the Design-Around Products that bear on this limitation.  As explained above and below, all of the Design-Around Products continue to contain program routines that detect structures and link actions to the structures.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

116.    For Messaging, I had previously identified the addLinks() method of the Linkify class, the Matcher() function of the Pattern class, and the find() function of the Matcher class as the program routines that demonstrated infringement of the first part of Claim 1(c) – "an analyzer server for detecting structures in the data".  Trial Tr. 850:11-853.10; PDX 88.18A; PDX 88.19A.   For Browser, I had previously identified the FindContent(), FindPartialNumber() and FindPartialEmail() methods of the AddressDetector and PhoneEmailDetector classes as the program routines that demonstrated the first part of Claim 1(c).  Trial Tr. 859:16-860:3; PDX88.23.  Samsung does not claim that it no longer users these functions and software, and has not identified any relevant changes to this software in the Design-Around Products.  I further note that the functions and structures continue to be found in, for example, the Android OS version 4.4.4 that runs on the representative Galaxy S5 SM-G900A.

117.    For the Messaging application in the Infringing Galaxy SIII and other Jelly Bean products, I had previously identified the showLinksContextMenu() method of the MessageListItem class, the handleMessage() method of the mMessageListItemHandler instance of the Handler class, the Intent class, and the startActivity() method of ContextImpl class as the program routines that demonstrated infringement of the second part of Claim 1(c)(1) – "an analyzer server for…linking actions to the detected structures."  Trial Tr. 853:13-858:19; PDX 88.20.  Samsung does not claim that it no longer users these functions and software, and has not identified any relevant changes to this software in the Design-Around Products with respect to this claim limitation.  I further note that these functions and classes continue to be found in, for example, the representative Galaxy S5 SM-G900A.

118.    For the Browser application in the Infringing Galaxy SIII and other Jelly Bean products, I had previously identified the onCreateContextMenu() method of the BrowserActivity class, the setIntent() method of the MenuItemImpl class, and the startActivity() method of the ContextImpl class as the program routines that demonstrated infringement of the second part of Claim 1(c)(1) – "an analyzer server for…linking actions to the detected structures."  Trial Tr.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

860:4-861:7; PDX 88.24.  Samsung does not claim that it no longer users these functions and software, and has not identified any relevant changes to this software in the Design-Around Products with respect to this claim limitation.  I further note that these functions and classes continue to be found in, for example, the representative Galaxy S5 SM-G900A.

> 6. <u>Claim 1 – (c)(3) "an action processor for performing the selected action linked to the selected structure"</u>

119.   The Design-Around Products each include "an action processor for performing the selected action linked to the selected structure."  Samsung has not identified any changes to the source code from Jelly Bean to the Design-Around Products that bear on this limitation.  As explained above and below, all of the Design-Around Products continue to contain program routines for "an action processor for performing the selected action linked to the selected structure."  The action processor routines I identified for the Infringing Galaxy S III were the the startActivity() method of the ContextImpl class, the resolveActivity() method of the Intent class, and the resolveActivity() method of the PackageManager class.  I explained that upon a user's choice of an action from the contextual pop-up menu, an intent object gets passed to startActivity(), which along with the resolveActivity() methods will cause the launching of the action to take place.  Trial Tr. 873:8-874:11; PDX 88.35.  Samsung does not claim that it no longer uses these functions and software, and has not identified any relevant changes to this software in the Design-Around Products with respect to this claim limitation.  I further note that these functions and classes continue to be found in, for example, Android OS 4.4.4, which is included in the representative Galaxy S5 SM-G900A.

> 7. <u>Claim 1 – (d) "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines"</u>

120.   The Design Around Products each include "a processing unit coupled to the input device, the output device, and the memory for controlling the execution of the program routines."  By way of representative example, the Galaxy S 5 SM-G900A contains a 2.5 GHz processor coupled to the input device, the output device, and the memory for controlling the

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

execution of the program routines.  See http://www.samsung.com/us/mobile/cell-phones/SM-G900AZKAATT-specs.  The processor is necessarily coupled to the output device, the touchscreen, as it must process the user's touches and process instructions for displaying data.  The processor is also coupled to the memory of the Samsung Galaxy S5 as the processor receives and acts on instructions from program routines loaded into memory.  The processor of the Samsung Galaxy S5 also controls the execution of the program routines.  Finally, the processor is coupled to the input devices such as the touchscreen, radio, and memory.  Each of the Design-Around Products likewise includes a processing unit couple to the input device, the output device, and the memory for controlling the execution of the program routines.

**B.**    **DA2 – Messenger – Infringement of Claims 1(c)(2) and 9**

121.    In its Interrogatory Responses, Samsung contents that "the DA2 design around does not infringe asserted claim 9, either literally or under the doctrine of equivalents, because at a minimum it does not include a 'user interface [that] enables selection of an action by causing the output device to display a pop-up menu of the linked actions,' or the limitation of claim 1, from which claim 9 depends, requiring 'a user interface enabling the selection of a detection structure and a linked action." Samsung Interrogatory Responses, p. 85.  I disagree.  It is my opinion that the DA2 design around products continue to literally infringe these two limitations (and the rest of the limitations of claims 1 and 9).

122.    With respect to the first part of claim element 1(c)(2) – a "user interface enabling the selection of a detected structure" – the DA2 devices continue to highlight and underline pre-detected structures in the Messenger application, as in the Infringing Galaxy S III.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



2014 Trial Phone -
Galaxy SIII

Design Around
Phone - Galaxy S5

123.    For the Infringing Galaxy S III running Jelly Bean, I explained that after Linkify has found the structures in the message, it creates a URL span object, associates it with each of the structures, and they show up in blue and underlined.  Trial Tr. 862:13-19; PDX 88.28. Samsung has not identified any relevant changes to the program routines I identified, and they are still found in the Android OS Version 4.4.4 that runs on, for example, the representative Galaxy S4 SM-G900A.  My opinion is tht the DA2 products thus include a "user interface enabling the selection of a detected structure."

124.    With respect to the second part of claim element 1(c)(2) – a "user interface enabling the selection of…a linked action" – the DA2 products contain a user interface in the form of a resolver activity pop-up menu, that satisfies this limitation.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE



125.    The resolver activity pop-up menu is a "user interface" that is computer-generated, i.e., it is created by running program routines.

126.

For example, upon selection of a linked action, the Messenger application invokes the startActivity() method of the PackageInfo class and passes it an Intent object that contains a description of the action to perform.  See Android Application Fundamentals, *available* at http://developer.android.com/guide/topics/fundamentals.html.  The startActivity() method then launches the appropriate activity, which "is a single, focused thing that the user can do."  See Android Developers Reference – Activity, APLNDC630-0001906585 – 644, *available at* http://developer.android.com/reference/android/app/Activity.html.  Activities are one of the "three … core components of an application" and are "activated through messages[] called *intents*."  See Intents and Intent Filters, *available at* http://developer.android.com/guide/topics/intents/intents-filters.html.  Some Intent objects specify the Activity to launch while others specify an action to perform and the data on which to perform that action.  See Android Developers Reference – Intent, *available at*

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

https://developer.android.com/reference/android/content/Intent.html.  In the case of the latter, the resolveActivity() method of the Intent class determines what activity should be launched via a call to the resolveActivity() method of the PackageManager class.  See Android Developers Reference – Intent; see also Intent.java; PackageManager.java.  If there is more than one activity that can perform the desired action, then the system will start a "system class that will allow the user to pick [the] activity."  See Android Developers Reference – Intent.

127.

13      Available at https://android.googlesource.com/platform/frameworks/base.git/+/android-4.4.4_r1/core/java/com/android/internal/app/ResolverActivity.java
14      Available at https://android.googlesource.com/platform/frameworks/base.git/+/android-4.4.4_r1/core/res/res/layout/resolver_list.xml

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

128.    The resolver activity pop-up menu thus "enabl[es] the selection of…a linked action."  Specifically, the linked action is the launching of (i) an email application to send an email, (ii) a map or navigation application to search a postal address, or (iii) a browser to view a web-page.  In each instance, the resolver activity pop-up menu enables the selection of the linked action by allowing the user to select precisely which application to use to perform the action. Daewoong Kim Deposition at 55:21-23 (the "resolver activity popup menu provides a list of applications for the user to choose").  For e-mails, the user gets to choose which email application to use to send the email.  For postal addresses, the user gets to choose which maps or navigation application to use to search the address.  For URL address, the user gets to choose which browser to open to open the web-page being linked to.

129.    It is only after the user chooses the application in the resolver activity pop-up menu that the application will be opened.  For example, Samsung witness Daewoong Kim testified that a particular email application will only be opened after the user makes a selection in the Resolver Activity pop-up menu:

> Q.    Assuming that a resolver activity popup menu appears for e-mail, and the user is given a choice of Gmail or another e-mail service and chooses Gmail, it's only after the user selects Gmail on the resolver activity popup menu that the Gmail application will be opened, correct?
>
> A.    Yes.
>
> Q.    And likewise, if the user chooses another e-mail, the one that's not Gmail, then it's only after the user selects that on the resolver activity popup menu that the other application will be opened; correct?
>
> A.    Yes.

Daewoong Kim Deposition at 53:23-54:9.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

130.     With respect to claim 9 – "wherein the user interface enables selection of an action by causing the output device to display a pop-up menu of the linked actions" – the DA2 products contain the resolver activity pop-up menu that literally satisfies this limitation.  As discussed above, the resolver activity pop-up menu satisfies claim 1(c)(2) because it enables the linking of an action by displaying the potential applications that can be opened to perform the action.  The resolver activity pop-up menu satisfies claim 9 for the same reasons – i.e., it is a "pop-up menu" that enables the linking of actions by displaying linked actions (e.g., send email using Gmail, send email using Email).  Thus, the resolver activity pop-up menus also literally satisfy claim 9.

## C.     DA1-A – Messenger – Infringement of Claims 1(c)(2) and 9

131.     In its Interrogatory Responses, Samsung contends that in the DA1-A Messenger products, "there is no 'user interface enabling the selection of a detected structure' as required by claim 1."  Samsung Interrogatory Responses, p. 32.  I disagree.

132.     First, for messages other than ▮▮▮▮▮▮▮▮▮▮ it is my opinion that the DA1-A Messenger products are covered by this limitation under the doctrine of equivalents for the same reasons I set out for the DA1-A Browser products below.[15]

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

133.   Second, for ███████████████████████ it is my opinion that the DA1-A Messenger products are covered by this limitation literally and under the doctrine of equivalents for the same reasons I set out for the DA1-B Browser products below.  In both DA1-A Messenger products (for ███████████████████) and in DA1-B Browser products, the detection routines are called upon "finger down" (as in the Infringing Galaxy S III).[16]

134.   Regarding claim 9, I understand that Samsung has not alleged that the DA1-A Messenger products do not satisfy the limitation of displaying a "pop-up menu of linked actions."  The DA1-A Messenger products do satisfy this limitation.  With respect to claim 9, the DA1-A Messenger products display a pop-up menu, namely the contextual pop-up menu, that is the same as the pop-up menu found to infringe in the Infringing Galaxy S III.  My opinion is that the DA1-A Messenger devices infringe this limitation for the same reasons, i.e., the contextual pop-up menu of the DA1-A devices is a "pop up menu of the linked actions."

[16]

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

### D.    DA1-A – Browser – Infringement of Claims 1(c)(2) and 9

135.    In its Interrogatory Responses, Samsung contends that in the DA1-A Browser products, "there is no 'user interface enabling the selection of a detected structure' as required by claim 1.  I disagree.  It is my opinion that the DA1-A products meet this limitation at least under the doctrine of equivalents.

136.    I understand Samsung's argument to be that, in the DA1-A Browser products, because detection routines are not invoked, and detection of structures is not completed, until after a user lifts his or her finger off the screen, there has been no "selection" of a "detected" structure.  However, as I wrote in my August 12, 2013 Expert Report Regarding Infringement, detection coinciding with, or immediately after, selection satisfies this limitation under the doctrine of equivalents because the limitation and the corresponding components in Samsung's products are insubstantially different.  Aug. 12, 2013 Expert Report Regarding Infringement, at ¶¶ 252-254.  In particular, as I noted then, and is equally true now with respect to the DA1-A Browser products, the function of this claim limitation is to present to the user a way to select structured data that is detected from a larger body of text, and to select an action to perform on the selected data using the device.  Id.  The corresponding components in the DA1-A perform substantially that same function.  For example, they allow a user to short tap on the screen, the DA1-A Browser products will automatically detect structures ███████████ in which a user has made a short tap gesture.  If the user selects a telephone number, for example, the DA1-A Browser products present the user with a contextual pop-up menu of actions to perform using the telephone number selected.

137.    This function is performed substantially the same way as that of the claim limitation.  Specifically, the claim limitation performs its function by providing the user with a viewable representation of detected structures and linked actions.  The corresponding components in the DA1-A Browser products perform their function in substantially the same way.  Even though the DA1-A Browser products do not invoke the detector functions until after

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

"finger up," the process of determining "finger up" (and invoking detector functions) begins with "finger down" (as in the Infringing Galaxy S III), and detection is done instantaneously (as in the Infringing Galaxy S III).  The user is largely unaware that detection has not occurred prior to the user's short tap.

138.    The claim limitation and the corresponding components in the DA1-A Browser products thereby achieve substantially the same result.  Specifically, the result of this claim limitation is rendering data in which a user may select structures, and menus to allow a user to select linked actions to perform using these selected structures.  This result is substantially the same in the DA1-A Browser products.  For example, if a telephone number appears in data received by the Browser application, the user may select the phone number appearing in the user interface of the Browser application and may choose from linked actions in a contextual pop-up menu such as launching a dialer with the telephone number as an argument.  The user does not have to precisely select a string of text, does not have perform multiple steps to manually invoke the detection mechanism, and does not have to memorize a set of actions that may be performed.

139.    The three different iterations of the DA1-A Browser design-around continue to contain infringing code as described below.

140.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

141.

142.

143.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

144.

145.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

146.

147.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

148.   With respect to claim 9, the DA1-A Browser products display a pop-up menu, namely the contextual pop-up menu, that is the same as the pop-up menu found to infringe in the Infringing Galaxy S III.  My opinion is that the DA1-A Browser products infringe this limitation for the same reasons, i.e., the contextual pop-up menu of the DA1-A Browser Product is a "pop up menu of the linked actions":



2014 Trial Phone - Galaxy SIII

Design Around Phone - Galaxy S3

### E.   DA1-B – Browser – Infringement of Claim 1(c)(2) and 9

149.   In its Interrogatory Responses, Samsung contends that DA1-B (i.e., ▮▮▮▮▮▮▮ ▮▮▮▮▮▮) "does not infringe asserted claim 9, either literally or under the doctrine of equivalents, because at a minimum it does not include the limitation of claim 1" that requires "a user interface enabling the selection of a detected structure and linked action," because "detection does not occur until after a user has completed selecting a structure."  Samsung Interrogatory Responses, pp. 68, 74-75.  I disagree.  The Samsung products implementing DA1-B contain program routines that provide a user interface that enables the selection of a detected structure and a linked action.

150.   I understand Samsung's argument to be that, in the DA1-B products, because detection routines are not invoked until after a user puts his or her finger down on the screen in a

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

short tap, there has been no "selection" of a "detected" structure.  Specifically, Samsung alleges that "the process of detecting a selected structure does not occur until after a user has completed selection via the short tap gesture."  Samsung Interrogatory Responses, p. 73.  That is not true, however.  The detection function in DA1-B Products starts immediately upon "finger down" and is called even before "finger up" occurs.  The user is therefore selecting a detected structure.  As discussed above, the timing of the detection functions in the DA1-B Products operates the same way in which the Infringing Galaxy S III.  For the same reason, this limitation was literally infringed by the Galaxy S III, the DA1-B products also literally infringe.

151.

152.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

153.

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

154.

155.    To the extent that the DA1-B products do not literally satisfy the element of a "user interface for enabling the selection of a detected structure and a linked action," in my opinion it is met under the doctrine of equivalents because the limitation and the components in DA1-B products corresponding to this limitation are insubstantially different.  In particular, the function of this claim limitation is to is to present to the user a way to select structured data that is detected from a larger body of text, and to select an action to perform on the selected data using the device.  The corresponding components in the DA1-B products perform substantially the same function.  For example, the DA1-B products allow a user to short tap on the screen, and the device will automatically detect structures ▮▮▮▮▮▮▮▮ on which the user has made the short tap gesture.  If the user selects, for example, a telephone number appearing on the display, the user is presented with a contextual menu including actions linked to the selected telephone number.

156.    This function is performed in substantially the same way as that of the claim limitation.  Specifically, the claim limitation performs its function by providing the user with a viewable representation of detected structures and linked actions.  The corresponding

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

components in the DA1-B products perform their function in substantially the same way.  Even though the DA1-B products do not invoke the detector functions until "finger down," the detection is done instantaneously (as in the Infringing Galaxy S III).

157.    The claim limitation and the corresponding components in the DA1-B Products achieve substantially the same result.  Specifically, the result of this claim limitation rendering data in which a user may select structures, and menus to allow a user to select linked actions to perform using the selected structures.  This result is substantially the same in the corresponding components in the DA1-B products.  For example, if a telephone number appears in data received by the Browser application, the user may select the phone number appearing in the user interface of the Browser application and may choose from linked actions in a contextual pop-up menu such as launching a dialer with the telephone number as an argument.  The user does not have to precisely select a string of text, does not have perform multiple steps to manually invoke the detection mechanism, and does not have to memorize a set of actions that may be performed.

158.    Regarding claim 9, I understand that Samsung has not alleged that the DA1-B products do not satisfy the limitation of displaying a "pop-up menu of linked actions."  The DA1-B Products do satisfy this limitation.  The DA1-B products display a pop-up menu, namely the contextual pop-up menu, that is the same as the pop-up menu found to infringe in the Infringing Galaxy S III.  My opinion is that the DA1-B products infringe this limitation for the same reasons, i.e., the contextual pop-up menu of the DA1-B product is a "pop up menu of the linked actions".

HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY – SOURCE CODE

Date:  September 1, 2017

Todd C. Mowry