# EXHIBIT E
## (Filed Under Seal)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

APPLE INC., a California corporation,

    Plaintiff,

    vs.

SAMSUNG ELECTRONICS CO., LTD., a
Korean corporation; SAMSUNG
ELECTRONICS AMERICA, INC., a New
York corporation; SAMSUNG
TELECOMMUNICATIONS AMERICA,
LLC, a Delaware limited liability company,

    Defendants.

CASE NO. 12-cv-00630-LHK

**REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH
ONGOING ROYALTIES OF U.S. PATENT NO. 5,946,647**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    SUMMARY OF OPINIONS ................................................................................2

III.   LEGAL STANDARDS .......................................................................................5

       A.    Colorable Difference Analysis..................................................................5

       B.    Infringement..............................................................................................6

       C.    Doctrine of Equivalents ............................................................................6

IV.    THE '647 PATENT .............................................................................................7

       A.    Disclosure of the Claimed Invention ........................................................7

             1.    Abstract ..........................................................................................7

             2.    Background of the Invention ..........................................................8

             3.    Summary of the Invention .............................................................9

             4.    Detailed Description of the Preferred Embodiment.....................10

       B.    The Asserted Claim.................................................................................19

V.     CLAIM CONSTRUCTION................................................................................20

VI.    LEVEL OF SKILL IN THE ART ......................................................................21

VII.   THE ADJUDICATED DEVICES ......................................................................22

       A.    The Adjudicated Functionality Of The Browser Application................23

             1.    Short Tap "Single-Action-per-Structure" Unaccused Functionality .........24

             2.    Long Press Context Menu Functionality ....................................25

       B.    The Adjudicated Functionality Of The Messenger Application............30

             1.    Structures are Pre-Detected.........................................................30

             2.    Context Menu Functionality ........................................................31

             3.    Message Options ..........................................................................34

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

C. The Unaccused ResolverActivity Functionality ...................................................35

D. The Unaccused ███████████ Functionality ...................................................66

VIII. APPLE'S AND DR. MOWRY'S POSITIONS LEADING UP TO AND DURING TRIAL ...........................................................................................69

A. Plain and Ordinary Meaning of "User Interface Enabling the Selection of a Detected Structure" .......................................................................70

B. Necessity for Long Press ....................................................................................71

C. Single-Action-per-Structure Functionality .......................................................73

D. Dr. Mowry Testified That startActivity is the "Action" ...................................75

E. Sidekick Prior Art .............................................................................................75

F. Pandit Prior Art – U.S. Patent No. 5,859,636 .................................................76

G. Claim 9 of the '647 Patent ................................................................................77

H. The ResolverActivity Menu ..............................................................................78

I. Options Such as "Copy" and "Select text" .......................................................82

IX. SAMSUNG'S DESIGN AROUNDS ..............................................................................84

A. Browser DA1-A ..................................................................................................85

  1. Long Press ..............................................................................................86

  2. Short Tap ................................................................................................94

B. Browser DA1-B ................................................................................................103

  1. Long Press ............................................................................................104

  2. Short Tap ..............................................................................................107

C. Messenger DA1-A .............................................................................................109

  1. Short Tap ..............................................................................................112

  2. Long Press ............................................................................................114

D. Messenger DA2 .................................................................................................116

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1.     Short Tap...............................................................................116

2.     Long Press...........................................................................120

X.    PREVIOUSLY UNACCUSED FUNCTIONALITY IN SAMSUNG'S
MESSENGER APPLICATION.......................................................................123

    A.    The Unaccused ResolverActivity Functionality .................................123

    B.    The Unaccused ███████████ Functionality ..................................137

XI.   SAMSUNG'S DESIGN AROUNDS ARE MORE THAN COLORABLY
DIFFERENT .............................................................................................142

    A.    Browser DA1-A ........................................................................143

        1.     Samsung's Removal of the Accused Long Press Functionality ..............143

        2.     Samsung's Implementation of Modified Short Tap Functionality .........146

        3.     User Experience Alone is Irrelevant .......................................148

    B.    Browser DA1-B ........................................................................149

        1.     Samsung's Removal of the Accused Long Press Functionality ..............149

        2.     User Experience Alone is Irrelevant .......................................152

    C.    Messenger DA1-A ....................................................................152

        1.     Samsung's Removal of Structure Pre-Detection ....................................153

        2.     Samsung's Implementation of Modified Short Tap Functionality .........153

    D.    Messenger DA2 ........................................................................154

XII.  THE PREVIOUSLY UNACCUSED MESSENGER FUNCTIONALITY
INDICATES THAT SAMSUNG'S MESSENGER DESIGN AROUNDS ARE
MORE THAN COLORABLY DIFFERENT ....................................................154

    A.    The Unaccused ResolverActivity Functionality .................................155

    B.    The Unaccused ███████████ ..................................................157

XIII. SAMSUNG'S DESIGN AROUNDS DO NOT INFRINGE..........................158

    A.    Browser DA1-A ........................................................................158

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

B.   Browser DA1-B .......................................................................164

C.   Messenger DA1-A ...................................................................167

D.   Messenger DA2 .......................................................................173

XIV.   THE PREVIOUSLY UNACCUSED MESSENGER FUNCTIONALITY DOES
       NOT INFRINGE CLAIM 9 OF THE '647 PATENT ....................................174

A.   ████████████████ – Now Asserted With Respect to DA1-A Messenger ............174

B.   ResolverActivity Menu – Now Asserted With Respect to DA2.........................174

   1.   The ResolverActivity Menu Presents Options for a Single Action .........176

   2.   The ResolverActivity Menu Does Not Create a Specified
        Connection ..........................................................................180

   3.   The ResolverActivity Menu Lacks an Action Processor........................181

XV.   MISCELLANEOUS COMMENTS.................................................................182

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

# I.    INTRODUCTION

1.    My name is Kevin Jeffay. I am a tenured professor and Department Chair in the Department of Computer Science at the University of North Carolina at Chapel Hill where I currently hold the position of Gillian T. Cell Distinguished Professor of Computer Science.

2.    I have been retained on behalf of Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC, (hereafter collectively referred to as "Samsung"), to offer an expert opinion regarding design arounds implemented by Samsung to the Messenger and Browser applications on certain Samsung devices with respect to claim 9 (hereafter, "the asserted claim") of U.S. Patent No. 5,946,647 (hereafter, "the '647 Patent"). I submitted an expert report on August 12, 2013 regarding the invalidity of the '647 patent, and a rebuttal expert report on September 13, 2013 regarding Samsung's noninfringement of the '647 patent. I testified at the April 2014 trial regarding noninfringement, invalidity, and noninfringing alternatives. I also submitted a declaration on October 5, 2014 regarding Samsung's design arounds to claim 9 of the '647 patent. I submit this report to describe my opinions on these matters.

3.    In reaching the conclusions described herein, I have considered the documents and materials identified in Appendix 1, attached to this report. My opinions are further based upon my over 30 years of education, training, research and related publications, knowledge, and personal and professional experience in the relevant art, and my previous work regarding the '647 patent. A copy of my curriculum vitae is attached as Appendix 2 to this report.

4.    I reserve the right to supplement the opinions in this report based on any subsequent testimony or facts revealed through discovery, as well as any subsequent reports produced by Apple's expert(s).

5.    I am being compensated for my work on this case at my standard consulting rate of $550 per hour. I am also being reimbursed for expenses that I incur. My compensation is not contingent upon the results of my study or the substance of my testimony.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

## II.    SUMMARY OF OPINIONS

6.      This section contains a summary of the primary opinions that I provide in this report.

7.      It is my opinion that Samsung's DA1-A and DA1-B design arounds for the Browser application and Samsung's DA1-A and DA2 design arounds for the Messenger application are more than colorably different from the adjudicated devices and do not infringe claim 9 of the '647 patent, either literally or under the doctrine of equivalents.

8.      Samsung designed around the asserted claim of the 647 Patent by removing and/or changing the accused functionality.  In Browser, the relevant accused functionality was the creation of a context menu on the long press gesture, and in Messenger the accused functionality was the creation of a context menu.

9.      It is my opinion that Samsung's DA1-A design around for the Browser application is more than colorably different because it removes the accused functionality (a context menu created following a long press gesture), and instead implements a context menu on a short tap gesture.  The DA1-A design around for the Browser application is also more than colorably different because the process of detecting any potential structures selected by the user via a short tap gesture does not begin detection until after the user's selection is completed and the user has removed his or her finger (or pointing device) from the screen.  As I understand the law, that should end the inquiry with respect to the DA1-A Browser application.  However, I have also analyzed whether the DA1-A Browser infringes claim 9.  In my opinion, the DA1-A design around for the Browser application also does not infringe, either literally or under the doctrine of equivalents, for reasons similar to why the DA1-A Browser is more than colorably different from its predecessor.

10.     It is my opinion that Samsung's DA1-B design around for the Browser application is more than colorably different because it removes the accused functionality (a context menu created following a long press gesture), and instead implements a context menu on a short tap gesture.  In this regard, it is distinct from the accused Jelly Bean Browser application.  As I

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1  understand the law, that should end the inquiry with respect to the DA1-B Browser application.

2  However, I have also analyzed whether the DA1-B Browser infringes claim 9.  In my opinion, the

3  DA1-B design around for the Browser application also does not infringe, either literally or under

4  the doctrine of equivalents, for reasons similar to why the DA1-B Browser is more than colorably

5  different from its predecessor.

6       11.    It is my opinion that Samsung's DA1-A design around for the Messenger

7  application is more than colorably different because it removes the pre-detection of structures from

8  the adjudicated Messenger application.  The DA1-A design around for the Messenger application

9  is also more than colorably different because the process of detecting any potential structures

10  selected by the user via a short tap gesture does not begin detection until after the user's selection

11  is completed and the user has removed his or her finger (or pointing device) from the screen.  As

12  I understand the law, that should end the inquiry with respect to the DA1-A Messenger application.

13  However, I have also analyzed whether the DA1-A Messenger infringes claim 9.  In my opinion,

14  the DA1-A design around for the Messenger application also does not infringe, either literally or

15  under the doctrine of equivalents, for reasons similar to why the DA1-A Messenger application is

16  more than colorably different from its predecessor.

17       12.    It is my opinion that Samsung's DA2 design around for the Messenger application

18  is more than colorably different because it entirely removes the accused functionality, which in the

19  Ice Cream Sandwich and Jelly Bean versions of Messenger was a context menu that is created on

20  a short tap gesture, using instead a single-action-per-structure functionality that Apple and Dr.

21  Mowry have acknowledged does not infringe.  As I understand the law, that should end the inquiry

22  with respect to the DA2 Messenger application.  However, I have also analyzed whether the DA2

23  Messenger infringes claim 9.  In my opinion, the DA2 design around for the Messenger application

24  also does not infringe, either literally or under the doctrine of equivalents, for reasons similar to

25  why the DA2 Messenger is more than colorably different from its predecessor.

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

13.     Dr. Mowry has now, for the first time, accused the ResolverActivity menu of infringing claim 9 of the '647 patent.  Dr. Mowry accuses the ResolverActivity menu with respect to the DA2 design around for the Messenger application.  In my opinion, the ResolverActivity menu is not properly considered a component of Samsung's design arounds (whether to the Messenger application or otherwise) because it is not the functionality that was accused of infringing claim 9.  Indeed, not only was the ResolverActivity menu present in the adjudicated products, Dr. Mowry previously identified it as part of his infringement allegations, but only for Gingerbread devices, only for claim 1 (and not claim 9), and only if claim 1 was interpreted to require a single action.  Indeed, Dr. Mowry has conceded that the ResolverActivity menu presents only a single action, and that it consequently cannot infringe claim 9.  However, even if the ResolverActivity menu is considered, substantively, for purposes of this analysis, it does not infringe claim 9 of the '647 patent for several reasons, in part because it lacks a "pop-up menu of [] linked actions," plural.  Instead, each of the entries in the menu are applications presented to the user for completing the selected action.  None of the entries are actions.

Therefore, the DA2 Messenger application containing the ResolverActivity functionality does not infringe.

14.     Dr. Mowry has also accused, for the first time, the ████████ functionality of infringing claim 9 of the '647 patent.  Dr. Mowry includes the ████████ functionality in his discussion of the DA1-A design around for the Messenger application. ████████ were included in the adjudicated products, but were not previously accused. ████████ do not infringe claim 9 of the '647 patent at least because ████████

Moreover, Apple and Dr. Mowry have offered no evidence that ████████ are ever used, let alone used with

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

structures like phone numbers or email addresses.  Therefore, the DA1-A Messenger application

containing ███████████ functionality does not infringe.

## III.   LEGAL STANDARDS

15.   In this section, I describe my understanding of the relevant legal standards.  I am not an attorney, and the discussions are based on instructions I have received from Samsung's attorneys.

### A.   Colorable Difference Analysis

16.   I understand that, to show infringement of Samsung's devices with design arounds, Apple must first show that design arounds are not more than colorably different from the adjudged infringing devices.  If Apple cannot meet this burden, then the inquiry ends there.  This is because, if the differences between the old and new elements are significant, the newly accused product as a whole is considered to be more than colorably different from the adjudged infringing product, and therefore the inquiry into whether the newly accused product actually infringes becomes irrelevant.

17.   On the other hand, if Apple establishes that the differences are not more than colorably different, I understand that Apple must still show infringement by the products with the design arounds.  In this second step, Apple will be required to show, based on the same prior claim construction by the district court, that the modified elements of the newly accused product infringe every limitation of the claim.

18.   I was informed that the colorable difference analysis should focus on previously accused features.  The analysis must be based on the elements of the adjudged infringing products that were previously contended to meet the limitations of the asserted claim.  Thus, I understand that it would not be appropriate to assert new infringement theories that were not disclosed in the infringement contentions and not raised at trial.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

19.     Lastly, I understand that even simple changes can be considered significant.  For example, removing a feature that formed the basis for the prior finding of infringement can result in more than colorable difference.

### B.     Infringement

20.     I have been informed by counsel that a proper patent infringement analysis requires two steps.  The first step is to properly construe the patent claims, which is a step taken by the Court. The second step is to apply the construed claims to the accused product.  A patent claim is "literally" infringed only if each and every claim limitation is found in the accused product. I reserve the right to update and/or supplement my opinions in the event that any new or revised claim constructions are proposed by any party, or in the event that the Court issues any order resolving or impacting claim construction.

### C.     Doctrine of Equivalents

21.     If not literally infringed, a patent claim might still be infringed under the "doctrine of equivalents." It is my understanding that if there are claim limitations that are not literally present in the accused product, the claim might still be infringed if the differences between the accused product and the claims are insubstantial for each claim limitation. It is also my understanding that one test used to determine whether differences are insubstantial is to determine whether an accused element performs substantially the same function, in substantially the same way, to obtain substantially the same results of the claimed limitation.

22.     I am also informed that an element in an accused product may be equivalent to a claim limitation if the two are known to be interchangeable at the time of alleged infringement.

23.     I have been informed that the doctrine of equivalents does not always apply, such as when doing so would contradict statements made during the patent application process.

24.     It is my understanding that the range of equivalents is also limited by the prior art to prohibit the patent owner from extending the scope of the claim to cover the prior art.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

Specifically, it is my understanding that the range of equivalents cannot include what the prior art anticipates or what the prior art renders obvious.

25.     I understand that the doctrine of equivalents is subject to the "all elements" rule, which precludes a theory of infringement based on the doctrine of equivalents when the theory would read a limitation completely out of the claim.

## IV.     THE '647 PATENT

### A.     Disclosure of the Claimed Invention

26.     The '647 patent was filed on February 1, 1996 and issued on August 31, 1999. The '647 patent indicates on its face that it is assigned to Apple Computer, Inc.  The named inventors are James R. Miller, Thomas Bonura, Bonnie Nardi, and David Wright.  The title of the '647 patent is "System and Method for Performing an Action on a Structure in Computer-Generated Data."

#### 1.     Abstract

27.     The Abstract of the '647 patent describes "[a] system and method [that] causes a computer to detect and perform actions on structures identified in computer data." ('647 Abstract.) The Abstract further states that the "system provides an analyzer server, an application program interface, a user interface and an action processor." ('647 Abstract.)  "The analyzer server receives from an application running concurrently data having recognizable structures, uses a pattern analysis unit, such as a parser or fast string search function, to detect structures in the data, and links relevant actions to the detected structures." ('647 Abstract.)  The Abstract states that "the user interface can present and enable selection of the detected structures, and upon selection of a detected structure, present the linked candidate actions." ('647 Abstract.)  "Upon selection of an action, the action processor performs the action on the detected structure." ('647 Abstract.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

### 2. Background of the Invention

28. In the "Field of the Invention" subsection of the "Background of the Invention," the '647 patent specification states that "the invention relates to a system and method for performing computer-based actions on structures identified in computer data." (1:9-11.)

29. In the "Description of the Background Art" subsection of the "Background of the Invention," the '647 patent specification states that "much data that appears in a computer user's day-to-day activities contains recognizable structures that have semantic significance such as phone numbers, e-mail addresses, post-office addresses, zip codes and dates." (1:13-16.) "However, visually searching data files or documents to find these structures is laborious and cognitively disruptive, especially if the document is lengthy and hard to follow." (1:19-22.)

30. The '647 patent specification recognized the existence of parsers in the prior art: "To help facilitate searching a document for these structures, programmers can create or employ pattern analysis units, such as parsers, to automatically identify the structures." (1:24-27.)

31. The '647 patent specification defined the term "pattern" to mean "data, such as a grammar, regular expression, string, etc., used by a pattern analysis unit to recognize information in a document, such as dates, addresses, phone numbers, names, etc." (1:28-32.)

32. The '647 patent specification defined the term "structure" to mean "an instantiation of a pattern in the document." (1:32-33.)

33. The '647 patent specification identified the following purported problem in the art at the time of the alleged invention: "Conventional systems that identify structures in computer data do not enable automatic performance of an action on an identified structure." (1:36-38.) The '647 patent specification provided a specific example of this purported problem:

> For example, if a long e-mail message is sent to a user, the user may implement a pattern analysis unit to search for particular structures, such as telephone numbers. Upon identification of a structure, the user may want to perform an action on the structure, such as moving the number to an electronic telephone book. This usually involves cutting the structure from the e-mail message, locating and opening

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3

> the electronic telephone book application program, pasting the structure into the appropriate field, and closing the application program. However, despite the fact that computer systems are getting faster and more efficient, this procedure is still tedious and cognitively disruptive.

4   (1:38-50.)

5      34.   The '647 patent specification addressed the detection of phone numbers as "[o]ne

6 type of system that has addressed this problem." (1:52-53.) For instance, such a system "enable[s]

7 a user to select a telephone number and request that the application automatically dial the number."

8 (1:53-55.) But the '647 patent specification identified certain shortcomings with this type of

9 system: "these systems do not recognize the selected data as a telephone number, and they

10 generally produce an error message if the user selects invalid characters as a phone number. Also,

11 they do not enable the performance of other candidate actions, such as moving the number to an

12 electronic telephone book." (1:55-60.)

13        **3.**    **Summary of the Invention**

14      35.   In the "Summary of the Invention" section, the '647 patent specification describes

15 the purported solution to the above problem as "a system that identifies structures in computer

16 data, associates candidate actions with each detected structure, enables the selection of an action,

17 and automatically performs the selected action on the identified structure." (2:6-10.)

18      36.   "The present invention has significant advantages over previous systems, in that

19 the present system may incorporate an open-ended number and type of recognizable patterns, an

20 open-ended number and type of pattern analysis units, and further that the system may enable an

21 open-ended number and type (i.e. scripts, macros, code fragments, etc.) of candidate actions to

22 associate with, and thus perform, on each identified structure." (2:13-20.)

23      37.   In the "Summary of the Invention" section, the '647 patent specification sets forth

24 the components of the system: "a central processing unit (CPU), input/output (I/O) means, and a

25 memory that includes a program to identify structures in a document and perform selected

26 computer-based actions on the identified structures." (2:21-25.) The software program includes

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

"program subroutines that include an analyzer server, an application program interface, a user interface and an action processor." (2:25-27.)

38.     In the "Summary of the Invention" section, the '647 patent specification describes the "analyzer server" as "receiv[ing] data from a document having recognizable structures, and us[ing] patterns to detect the structures. Upon detection of a structure, the analyzer server links actions to the detected structure." (2:28-31.)

39.     The '647 patent specification defines each "action" as "a computer subroutine that causes the CPU to perform a sequence of operations on the particular structure to which it is linked. An action may specify opening another application, loading the identified structure into an appropriate field, and closing the application. An action may further include internal actions, such as storing phone numbers in an electronic phone book, addresses in an electronic address book, appointments on an electronic calendar, and external actions such as returning phone calls, drafting letters, sending facsimile copies and e-mail, and the like." (2:31-41.)

40.     "Upon selection of a detected structure, the user interface presents and enables selection of candidate actions. When a candidate action is selected, the action processor performs the selected action on the selected structure." (2:48-53.)

### 4.     Detailed Description of the Preferred Embodiment

41.     Figure 1 of the '647 patent specification "is a block diagram of a computer system having a program stored in RAM, in accordance with the present invention." (2:65-67.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



FIG. 1

42.   The '647 patent specification indicates that the "input device 110, such as a keyboard and mouse, and an output device 105, such as a CRT or voice module, are coupled to CPU 120." (3:26-30.)

43.   The '647 patent specification describes in detail the "Program 165" and the "Application 167," highlighting the client-server relationship between those components:

> Application 167 is a program, such as a word-processor or e-mail program, that presents data on output device 105 to a user. The program 165 of the present invention is stored in RAM 170 and causes CPU 120 to identify structures in the data presented by application 167, to associate actions with the structures identified in the data, to enable the user to select a structure and an action, and to automatically perform the selected action on the identified structure.

(3:36-44.)

44.   Figure 2 of the '647 patent specification "is a block diagram of the program [165] of FIG. 1." (3:1.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



FIG. 2

45.   "Program 165 contains program subroutines including an analyzer server 220, an application program interface 230, a user interface 240 and an action processor 250." (3:54-57.) The '647 patent specification describes the "analyzer server" in detail:

> Analyzer server 220 receives data having recognizable patterns from a document 210, which may be retrieved from a storage medium such as RAM 170, ROM 155, disk storage 175, or the like, and presented on output device 105 by application 167. Analyzer server 220 comprises one or more pattern analysis units, such as a parser and grammars or a fast string search function and dictionaries, which uses patterns to parse document 210 for recognizable structures. Upon detection of a structure, analyzer server 220 links actions associated with the responsible pattern to the detected structure, using conventional pointers.

(3:57-67.)

46.   The '647 patent specification goes on to describe the interaction between the Application Program Interface 230 and the User Interface 240 after the Analyzer Server 220 identifies structures and links actions:

> …application program interface 230 communicates with application 167 to obtain information on the identified structures so that user interface 240 can successfully present and enable selection of the

12

actions. In a display-type environment, application program interface 230 retrieves the locations in document 210 of the presentation regions for the detected structures from application 167. Application program interface 230 then transmits this location information to user interface 240, which highlights the detected structures, although other presentation mechanisms can be used.

(4:1-11.)

47. Once the User Interface 240 enables selection of the identified structure, it "communicates with application 167 through application program interface 230 to determine if a user has performed a mouse-down operation in a particular mouse-sensitive presentation region, thereby selecting the structure presented at those coordinates. Upon selection of this structure, user interface 240 presents and enables selection of the linked candidate actions using any selection mechanism, such as a conventional pull-down or pop-up menu." (4:23-31.)

48. "Upon selection of a candidate action, user interface 240 transmits the selected structure and the selected action to action processor 250. Action processor 250 retrieves the sequence of operations that constitute the selected action, and performs the sequence using the selected structure as the object of the selected action." (4:52-57.)

49. Figure 3 of the '647 patent specification "is a block diagram illustrating the analyzer server of FIG. 2." (3:2-3.)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



FIG. 3

50.     The Analyzer Server 220 includes "a parser 310 and a grammar file 320, although alternatively or additionally a fast string search function or other function can be used." (4:60-62.)

51.     "Parser 310 retrieves a grammar from grammar file 320 and parses text using the retrieved grammar. Upon identification of a structure in the text, parser 310 links the actions associated with the grammar to the identified structure." (4:62-66.)

52.     The '647 patent specification then provides more detail as to how the Parser 310 links action(s) to the identified structure:

> …parser 310 retrieves from grammar file 320 pointers attached to
> the grammar and attaches the same pointers to the identified
> structure. These pointers direct the system to the associated actions
> contained in associated actions file 330. Thus, upon selection of the
> identified structure, user interface 240 can locate the linked actions.

(4:66-5:5.)

53.     Figure 4 of the '647 patent specification "is a block diagram illustrating a particular example of the analyzer server of FIG. 2." (3:4-5.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY





FIG. 4

54.     This Figure "includes grammars 410 and a string library 420 such as a dictionary, each with associated actions. One of the grammars 410 is a telephone number grammar with associated actions for dialing a number identified by the telephone number grammar or placing the number in an electronic telephone book. Analyzer server 220 also includes grammars for post-office addresses, e-mail addresses and dates, and a string library 420 containing important names." (5:7-14.)  Notably, the "date grammar" includes a single action: "Put in electronic calendar."

55.     Figures 5-7 of the '647 patent specification illustrate "a window presenting an example of a document having recognizable structures (Fig. 5)," "a window with the identified structures in the example document of FIG. 5 highlighted based on the analyzer server of FIG. 4 (Fig. 6)," and "a window showing the display of a pop-up menu for selecting an action (Fig. 7)." (3:6-12.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



FIG. 5                    FIG. 6                    FIG. 7

56.     "FIG. 5 shows a window 510 presenting an exemplary document 210 having data containing recognizable structures, including a phone number, post-office address, e-mail address, and name. Windows 510 includes a button 520 for initiating program 165, although alternative mechanisms such as depressing the "option" key may be used."  (5:19-24.)

57.     Although not displayed by Figs 5-7, the '647 patent specification next describes the internal operation of the system:

> Upon initiation of program 165, system 100 transmits the contents of document 210 to analyzer server 220, which parses the contents based on grammars 410 and strings 420 (FIG. 4). This parsing process produces the window shown in FIG. 6.

(5:25-29.)

58.     "As illustrated in FIG. 6, analyzer server 220 identifies the phone number, post-office address, e-mail address and name. Although not shown in FIG. 6, analyzer server 220 links the actions associated with grammars 410 and strings 420 to these identified structures, and application program interface 230 retrieves information on the location of these structures from application 167. User interface 240 then highlights the identified structures in document 210, and makes the identified structures mouse-sensitive."  (5:29-37.)

59.     Figure 7 shows that, "upon recognition of a mouse-down operation over a structure, user interface 240 presents a pop-up menu 710."  (5:38-40.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

60. Again, the '647 patent specification details the internal operation of the system once an action is selected:

> Upon selection of the action for putting the number in an electronic telephone book, user interface 240 transmits the corresponding telephone number and selected action to action processor 250. Action processor 250 locates and opens the electronic telephone book, places the telephone number in the appropriate field and allows the user to input any additional information into the file.

(5:44-50.)

61. Figures 8-9 of the '647 patent specification together illustrate "a flowchart depicting the preferred method for selecting and performing an action on an identified structure. (3:14-16.)



FIG. 8     FIG. 9

62. "[M]ethod 800 starts by receiving 810 the content, or a portion of the content, from document 210. … the received content or portion is scanned 820 for identifiable structures using

17

the patterns in analyzer server 220. Upon detection of a structure based on a particular pattern, actions associated with the particular pattern are linked 825 to the detected structure. Assuming a display-type environment, the presentation region location for a detected structure is retrieved 830 from application 167." (5:55-64.)

63. As shown in Fig, 9, "when a request for the display of detected structures is received 860, the regions are displayed 910 using presentation mechanisms such as highlighting the presentation region around each detected structure, although alternative presentation mechanisms can be used. … if a request is received 920, the actions linked in block 825 are displayed 930. This request for display of candidate actions can be performed using a selection mechanism, such as a mouse-down operation over a detected structure, which causes the candidate actions linked to the structure to be displayed 930. Display 930 of candidate actions may be implemented using a pop-up menu, although alternative presentation mechanisms can be used such as pull-down menus, dialog boxes and voice synthesizers." (6:9-25.)

64. "[I]f an action is selected 940, the action is executed 950 on the structure selected in block 920." (6:28-29.)

65. Figure 10 of the '647 patent specification "is a flowchart depicting the preferred method for identifying a structure in a data sample." (3:17-18.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

FIG. 10

66.     "Method 820 starts by retrieving 1010 data to be analyzed. After the data is retrieved, several pattern analysis processes may be performed on the data. As illustrated in block 1020, a parsing process retrieves 1030 grammars, detects 1040 structures in the data based on the retrieved grammars, and links 1050 actions associated with each grammar to each structure detected by that grammar."  (6:36-42.)

**B.     The Asserted Claim**

67.     I understand that the jury found infringement of claim 9 of the '647 patent.  Claim 9 depends from claim 1, both of which are set forth below:

**1.** A computer-based system for detecting structures in data and performing actions on detected structures, comprising:
an input device for receiving data;

1
          an output device for presenting the data;
          a memory storing information including program routines
2
                 including
          an analyzer server for detecting structures in the data,
3
                 and for linking actions to the detected structures;
          a user interface enabling the selection of a detected
4
                 structure and a linked action; and
          an action processor for performing the selected action
5
                 linked to the selected structure; and
          a processing unit coupled to the input device, the output
6
                 device, and the memory for controlling the execution of
                 the program routines.

7
       **9.** The system recited in claim 1, wherein the user
8
interface enables selection of an action by causing the output
device to display a pop-up menu of the linked actions.

9
## V.   CLAIM CONSTRUCTION

10
      68.    I understand that the Court in this matter issued one claim construction, for the term

11
"action processor."  I understand the Court found that the correct construction of that term is

12
"program routine(s) that perform the selected action on the detected structure."  I have applied that

13
construction throughout my analysis.

14
      69.    I understand that the Court in this matter accepted (and expressly set forth) that

15
"[t]he parties agree that the plain and ordinary meaning of the claim limitation 'a user interface

16
enabling the selection of a *detected* structure' requires 'the user interface to enable selection of a

17
structure, by the user, *after* the structure has already been detected.'  Reply Declaration of Dr.

18
Todd C. Mowry Concerning U.S. Patent No. 5,946,647 at ¶ 217 (ECF No. 805-14) (emphasis in

19
original)."  Dkt. 1151 at 20 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion

20
for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).

21
I have applied that construction throughout my analysis.

22
      70.    I understand that the Federal Circuit, hearing an appeal of *Apple v. Motorola*, Case

23
No. ND-IL-08540, affirmed the Motorola court's constructions for "analyzer server" and "linking

24
actions to the detected structures."

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

71.     I understand that the Federal Circuit found that the correct construction of "analyzer server" is "a server routine separate from a client that receives data having structures from the client."  I have applied that construction throughout my analysis.

72.     I understand that the Federal Circuit found that the correct construction of "linking actions to the detected structures" is "creating a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure."  I have applied that construction throughout my analysis.

73.     Claim 9 requires a pop-up menu of linked "actions," plural.  While claim 1 requires "linking actions," plural, "[t]he plain language of the claims does not require multiple actions for each structure because the claim recites linking multiple actions to multiple structures. As such, the plural 'actions' may be reasonably read as at least one action per structure." *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1307 (Fed. Cir. 2014).  Thus, under claim 1, there must be multiple actions, but those actions need not all be linked to the same structure.  Unlike claim 1, there is no such ambiguity in claim 9.  The plain language of the claim requires that, for a single detected structure, there be a pop-up menu with multiple "linked actions."  As described below in Section VIII.F, Dr. Mowry agrees that claim 9 requires that multiple linked actions be displayed in a pop-up menu in order for infringement to occur.

## VI.    LEVEL OF SKILL IN THE ART

74.     I understand that, at trial, Dr. Mowry asserted that a person of ordinary skill in the art would be a "person with at least a Bachelor of Science degree in computer science or equivalent training and/or coursework and some academic or work experience in computer science.  That person might have either more formal education with less practical experience or more practical experience with less formal education."  I apply that same definition herein.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

## VII.    THE ADJUDICATED DEVICES

75.    At trial, Dr. Mowry and Apple accused Samsung of infringing claim 9 of the '647 patent based on nine devices – the Admire, Galaxy Nexus, Galaxy Note, Galaxy Note II, Galaxy S II, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III and Stratosphere:



76.    Apple accused these devices based on their inclusion of two applications: the web browser, aka "Browser" application, and the text messaging, aka "Messenger" or "Messaging" application.    Apple accused these applications for three different versions of Android: Gingerbread, Ice Cream Sandwich, and Jelly Bean.  Gingerbread corresponds to version 2.3 of Android; Ice Cream Sandwich corresponds to version 4.0 of Android; and Jelly Bean corresponds to version 4.1 of Android.  In other words, Jelly Bean is the most recent version.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

77.     Dr. Mowry grouped the applications and Android versions into two "representative product groupings" per application: for Messenger, (1) Gingerbread and (2) Ice Cream Sandwich and Jelly Bean; and for Browser, (1) Gingerbread and Ice Cream Sandwich and (2) Jelly Bean:



A.     **The Adjudicated Functionality Of The Browser Application**

78.     As described above, Dr. Mowry accused the Browser application of infringing claim 9 of the '647 patent.  Dr. Mowry's allegations were based on the Browser application's creation of a context menu of possible actions when a structure such as a phone number or email is selected by a user via a long press gesture:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Adjudicated Browser User Interface, Long Press (Mowry 2013 Rep.[1] ¶ 8)**

79.     For each structure – phone numbers, emails, postal addresses, etc. – there are two possible gestures that a user can perform: short tap and long press.  Apple accused only the long press gesture.

### 1.     Short Tap "Single-Action-per-Structure" Unaccused Functionality

80.     When a short tap gesture is performed in the adjudicated Browser application, the Browser performed a default action.  If a short tap gesture is performed on a phone number, the Browser application initiates the dialer application to perform the dial action.  If a short tap gesture is performed on an email address, the Browser application initiates an email application to perform

---

[1]   I refer to the August 12, 2013 Initial Expert Report of Dr. Todd C. Mowry Regarding Infringement Of U.S. Patent No. 5,946,647 as the "Mowry 2013 Report" and by the shorthand "Mowry 2013 Rep."

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

the send mail action.  This behavior is referred to, generically, as "tap-to-dial."  An example is instructive.

 

**Unaccused Browser User Interface, Short Tap (Mowry 2013 Rep. Ex. 3M at 17, 20)**

81.     The single-action-per-structure behavior is the same for other structures, such as email addresses, as it is for phone numbers.  Selection of those structures via a short tap initiates performance of a default action.

### 2.     Long Press Context Menu Functionality

82.     The long press behavior of the accused products was the only functionality in the Browser application accused of infringing claim 9 of the '647 patent, and was the only functionality presented to the jury.  The long press behavior functionality, however, was slightly different for the two groupings of Browser applications.  The Jelly Bean version of Android represented a major change of much of the functionality in the Browser application.  Among these

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

was the transition away from the CacheBuilder class utilized in earlier versions of Android.  This change meant that while in the Gingerbread and Ice Cream Sandwich Browsers structures such as phone numbers were detected when a web page was loaded by the device, in the Jelly Bean Browser these structures were not pre-detected.

(a) <u>Gingerbread and Ice Cream Sandwich</u>

83. In the Gingerbread and Ice Cream Sandwich Browser applications, when the application displays a web page, the user can often tap or press on a phone number, e-mail address, or U.S. Postal address within the text of the page. These items are not displayed to the user any differently than any other text on the page unless they have HTML anchors. They therefore may appear the same as other text.

84. In a displayed web page, the user can select an item using a "long-press," causing the selected item to be outlined in a different color and causing a context or options menu to appear that lists descriptions of certain operations.  The options displayed depend on the type of item that was selected.  The user can choose one of the menu items.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



85.     The following screenshots, recreated from Exhibit 3G to Dr. Mowry's 2013 Report, show the Browser application on a Samsung Galaxy Nexus running the Ice Cream Sandwich version of Android, selecting a phone number with a long press, and causing a context menu to appear.



**Adjudicated Ice Cream Sandwich Browser User Interface, Long Press
(Mowry 2013 Rep. Ex. 3G at 19)**

27

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1     (b)     <u>Jelly Bean</u>

2     86.     In the Jelly Bean Browser application, when the application displays a web page,

3 the user can often tap or press on a phone number, e-mail address, or U.S. Postal address within

4 the text of the page. These items are not displayed to the user any differently than any other text

5 on the page unless they have HTML anchors. They therefore may appear the same as other text.

6 Unlike in the Gingerbread and Ice Cream Sandwich versions of the Browser application, in the

7 Jelly Bean Browser application no structures are detected when a web page is loaded.  The process

8 of content detection does not begin until after a user interacts with a displayed web page by putting

9 a finger down on the screen –

10     87.



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

88.     In a displayed web page, the user can select an item using a long-press, causing the selected item to be outlined in a different color and causing a context or options menu to appear that lists descriptions of certain operations.  The options displayed depend on the type of item that was selected.  The user can choose one of the menu items

89.     The following screenshots, recreated from Exhibit 3M to Dr. Mowry's 2013 Report, show the Browser application on a Samsung Galaxy S III, selecting a phone number with a long press, and causing a context menu to appear.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13

 

14

**Adjudicated Jelly Bean Browser User Interface, Long Press**
**(Mowry 2013 Rep. Ex. 3M at 17, 19)**

15
16

**B.**     **The Adjudicated Functionality Of The Messenger Application**

17     90.     At trial, Apple accused the context menu functionality of the Messenger application
18
of infringing claim 9 of the '647 patent.  (Trial Tr. at 844:13-846:18.)

19

**1.     Structures are Pre-Detected**

20     91.     In all adjudicated versions of the Messenger application, when a user sends or
21
receives a text message including a phone number, URL address, email address, or a U.S. Postal

22
address, that portion of the data is colored blue and underlined when displayed on the screen, just

23
like an HTML link.  Thus, detection occurs when the text message is received, prior to any user

24
interaction.  The Messenger application identifies items such as phone numbers and e-mail

25
addresses using the ███████████ library provided in the Android software platform. ████

26
███████████████████████████████████████████████████████████████

27
28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



### 2. Context Menu Functionality

(a)   <u>Ice Cream Sandwich and Jelly Bean</u>

92.    For the Ice Cream Sandwich and Jelly Bean Messenger applications Dr. Mowry accused a context menu created via a short tap gesture on pre-detected structures:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Adjudicated Jelly Bean Messenger User Interface, Short Tap
(Mowry 2013 Rep. Ex. 3M at 27)**

(Trial Tr. at 844:13-845:23.)

93.



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

(b)      Gingerbread

94.      For the Gingerbread Messenger application Dr. Mowry accused a context menu
created via a long press gesture on pre-detected structures:



**Adjudicated Gingerbread Messenger User Interface, Long Press
(Mowry 2013 Rep. Ex. 3A at 11)**

(Trial Tr. at 845:24-846:18.)

95.



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1

2

### 3.    Message Options

96.    Other menus with multiple options were present in the adjudicated devices as well. For the Ice Cream Sandwich and Jelly Bean versions of Messenger, a long press creates a generic "Message options" menu, providing generic options such as "Delete," "Copy," and "Forward":



**Unaccused Messenger Message Options Menu, Long Press**

97.    The above image is taken from the adjudicated Messenger application in a Samsung Galaxy Note II running Android version 4.1.1; however, the same menu was present in the Ice Cream Sandwich and Jelly Bean Messenger applications in the devices accused of infringing the '647 patent.  None of the presented options are related in any way to any item of the underlying text message.  In other words, the same generic menu appears regardless of the text selected by a user via a long press.  This functionality was never accused by Apple.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1

**C.      The Unaccused ResolverActivity Functionality**

2

98.      The ResolverActivity functionality now identified by Dr. Mowry as relating to his

3 theories regarding the '647 patent is not a menu that is new to the products containing Samsung's

4 design arounds.  ResolverActivity, which is part of the Android framework, is part of all versions

5 of Android, and was present in all of the adjudicated products.  For example, Dr. Mowry identified

6 the Samsung Galaxy S III, model SCH-i535 as representative of the Ice Cream Sandwich and Jelly

7 Bean Messenger applications, and also as representative of the Jelly Bean Browser application.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



36   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



38
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Each of these methods is functionally the same as the versions found in the devices containing the DA2 Messenger application that Dr. Mowry now accuses. The source code ████████████████████ in the DA2 Messenger is addressed in detail below, in Section X.A.

103.   I understand that this code is part of the Android framework, and is shipped with the Android open source. As a consequence, it is part of all applications in all Android versions. For example, ResolverActivity.java was included in the Ice Cream Sandwich open source (*see* Ex. A, which is the ResolverActivity.java class from Android 4.0.1, Ice Cream Sandwich):

```
protected void onCreate(Bundle savedInstanceState, Intent intent,
    CharSequence title, Intent[] initialIntents, List<ResolveInfo> rList,
    boolean alwaysUseOption) {
    super.onCreate(savedInstanceState);
    mPm = getPackageManager();
    intent.setComponent(null);

    AlertController.AlertParams ap = mAlertParams;

    ap.mTitle = title;
    ap.mOnClickListener = this;

    if (alwaysUseOption) {
        LayoutInflater inflater = (LayoutInflater) getSystemService(
            Context.LAYOUT_INFLATER_SERVICE);
```

15
16
17
18
19
20
21
22
23
24
25
26
27
28

40

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

```
                ap.mView = inflater.inflate(R.layout.always_use_checkbox, null);
                mAlwaysCheck =
          (CheckBox)ap.mView.findViewById(com.android.internal.R.id.alwaysUse);
                mAlwaysCheck.setText(R.string.alwaysUse);
                mAlwaysCheck.setOnCheckedChangeListener(this);
                mClearDefaultHint = (TextView)ap.mView.findViewById(
                                        com.android.internal.R.id.clearDefaultHint);
                mClearDefaultHint.setVisibility(View.GONE);
            }
            mAdapter = new ResolveListAdapter(this, intent, initialIntents, rList);
            int count = mAdapter.getCount();
            if (count > 1) {
                ap.mAdapter = mAdapter;
            } else if (count == 1) {
                startActivity(mAdapter.intentForPosition(0));
                finish();
                return;
            } else {
                ap.mMessage = getResources().getText(com.android.internal.R.string.noApplications);
            }

            setupAlert();
        }
```

(Ex. A, ResolverActivity.java at 79-115.)  And it was also present in the Jelly Bean open source

(*see* Ex. B, which is the ResolverActivity.java class from Android 4.1.1, Jelly Bean):

```
        protected void onCreate(Bundle savedInstanceState, Intent intent,
                CharSequence title, Intent[] initialIntents, List<ResolveInfo> rList,
                boolean alwaysUseOption) {
            setTheme(R.style.Theme_DeviceDefault_Light_Dialog_Alert);
            super.onCreate(savedInstanceState);
            try {
                mLaunchedFromUid = ActivityManagerNative.getDefault().getLaunchedFromUid(
                    getActivityToken());
            } catch (RemoteException e) {
                mLaunchedFromUid = -1;
            }
            mPm = getPackageManager();
            mAlwaysUseOption = alwaysUseOption;
            mMaxColumns = getResources().getInteger(R.integer.config_maxResolverActivityColumns);
            intent.setComponent(null);

            AlertController.AlertParams ap = mAlertParams;

            ap.mTitle = title;

            mPackageMonitor.register(this, getMainLooper(), false);
            mRegistered = true;

            final ActivityManager am = (ActivityManager) getSystemService(ACTIVITY_SERVICE);
            mIconDpi = am.getLauncherLargeIconDensity();
            mIconSize = am.getLauncherLargeIconSize();
```

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

```
                mAdapter = new ResolveListAdapter(this, intent, initialIntents, rList,
                        mLaunchedFromUid);
                int count = mAdapter.getCount();
                if (mLaunchedFromUid < 0 || UserId.isIsolated(mLaunchedFromUid)) {
                    // Gulp!
                    finish();
                    return;
                } else if (count > 1) {
                    ap.mView = getLayoutInflater().inflate(R.layout.resolver_grid, null);
                    mGrid = (GridView) ap.mView.findViewById(R.id.resolver_grid);
                    mGrid.setAdapter(mAdapter);
                    mGrid.setOnItemClickListener(this);
                    mGrid.setOnItemLongClickListener(new ItemLongClickListener());

                    if (alwaysUseOption) {
                        mGrid.setChoiceMode(ListView.CHOICE_MODE_SINGLE);
                    }

                    resizeGrid();
                } else if (count == 1) {
                    startActivity(mAdapter.intentForPosition(0));
                    mPackageMonitor.unregister();
                    mRegistered = false;
                    finish();
                    return;
                } else {
                    ap.mMessage = getResources().getText(R.string.noApplications);
                }

                setupAlert();

                if (alwaysUseOption) {
                    final ViewGroup buttonLayout = (ViewGroup) findViewById(R.id.button_bar);
                    if (buttonLayout != null) {
                        buttonLayout.setVisibility(View.VISIBLE);
                        mAlwaysButton = (Button) buttonLayout.findViewById(R.id.button_always);
                        mOnceButton = (Button) buttonLayout.findViewById(R.id.button_once);
                    } else {
                        mAlwaysUseOption = false;
                    }
                }
            }
```

(Ex. B, ResolverActivity.java at 105-173.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



45

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23   106.   The ResolverActivity menu is not a menu of "actions."  Instead, it is a menu of

24   activities (i.e., applications) for completing an action as the very title of the menu states:  "complete

25   action using."  Dr. Mowry states that

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

The Android Developers Reference describes the difference between explicit and implicit Intents:

- **Explicit Intents** have specified a component (via setComponent(ComponentName) or setClass(Context, Class)), which provides the exact class to be run. Often these will not include any other information, simply being a way for an application to launch various internal activities it has as the user interacts with the application.

- **Implicit Intents** have not specified a component; instead, they must include enough information for the system to determine which of the available components is best to run for that intent.

When using implicit intents, given such an arbitrary intent we need to know what to do with it. This is handled by the process of *Intent resolution*, which maps an Intent to an Activity, BroadcastReceiver, or Service (or sometimes two or more activities/receivers) that can handle it.

*See* Android Developers Reference – Intent, *available at* https://developer.android.com/reference/android/content/Intent.html.

107.    None of the Intents in the functionality presented to the jury were explicit Intents; rather, all were implicit Intents based on the user's selection of an action from the context menu. Moreover, even the single-action-per-structure functionality, which Dr. Mowry has acknowledged does not infringe, uses implicit Intents.  Indeed, if a phone has more than one application capable of handling telephone numbers, single-action-per-structure functionality will also generate a ▮▮▮▮▮▮▮ menu:

---

2   I refer to the September 1, 2017 Initial Expert Report of Dr. Todd C. Mowry In Connection With Ongoing Royalties as the "Mowry ongoing royalties report" and by the shorthand "Mowry 2017 OR Rep."

47



**SM-G900A Messenger, Unaccused Short Tap on
Phone Number With Additional Dialer Installed**

108.    Moreover, Dr. Mowry repeatedly distinguishes between an "action" and the "Activity" to perform the "action."  (See Mowry 2017 OR Rep. ¶ 126; see also ¶ 54.)  As Dr. Mowry states, "upon selection of a linked action, the Messenger application invokes the startActivity() method of the PackageInfo class and passes it an Intent object that contains a description of the action to perform."  (*Id.* (emphasis added).)  "Some Intent objects specify the Activity to launch while others specify an action to perform and the data on which to perform that action."  (*Id.* (emphasis added).)  In the case of the latter, "[i]f there is more than one activity that can perform the desired action, then the system will start a 'system class that will allow the user to pick [the] activity.'"  (*Id.* (quoting Android Developers Reference – Intent).)

109.    The Android developer reference for "Intent," and more specifically for resolveActivity, provides additional context.  It states:

> If multiple activities are found to satisfy the intent, the one with the highest priority will
> be used. If there are multiple activities with the same priority, the system will either pick

1   the best activity based on user preference, or resolve to a system class that will allow the
    user to pick an activity and forward from there.

2   (Android Developers Reference – Intent.).   Accordingly, Dr. Mowry repeatedly distinguishes

3   between an "action" and the "activity" for completing the action.

4   110.   Furthermore, Dr. Mowry has previously cited the ResolverActivity class as part of

5   his allegations.  In his 2013 opening expert report, Dr. Mowry included the ResolverActivity menu

6   in his allegations regarding claim 1 of the '647 patent, for the Messenger application in the

7   Gingerbread version of six Samsung phones:  the Samsung Captivate Glide, Dart, Epic 4G Touch,

8   Exhibit II 4G, Galaxy S II, and Galaxy S II Skyrocket product.  The images of the ResolverActivity

9   menu included in Dr. Mowry's expert report for claim 1 for these phones are excerpted below.

  

**(Mowry 2013 Rep. Ex. 3B (Captivate Glide) at 25.)**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

  

**(Mowry 2013 Rep. Ex. 3D (Dart) at 15.)**

  

**(Mowry 2013 Rep. Ex. 3E (Epic 4G Touch) at 28.)**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**(Mowry 2013 Rep. Ex. 3F (Exhibit II 4G) at 11.)**



**(Mowry 2013 Rep. Ex. 3K (Galaxy SII) at 25.)**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**(Mowry 2013 Rep. Ex. 3L (Galaxy SII Skyrocket) at 20.)**

111.   Dr. Mowry mentioned this menu in the context of the Gingerbread version of the Messenger application for six phones, but only for claim 1.  Dr. Mowry did not identify this functionality for claim 9, and stated that the allegations for claim 1 were only relevant if claim 1 did not require multiple actions per detected structure (claim 9 unequivocally requires multiple actions).  (Mowry 2013 Rep. at 37 n.11.)  ("As described in the claim charts at Exhibit 3, the Samsung Captivate Glide (Gingerbread), Dart, Exhibit II 4G (Gingerbread), Galaxy Nexus, Galaxy SII (Gingerbread), Galaxy S II Epic 4G Touch (Gingerbread), and Galaxy S II Skyrocket (Gingerbread) also infringe the '647 patent through the Messaging application under claim constructions adopted in the *Motorola* litigation requiring only a single action for each detected structure).  I understand Apple later withdrew its infringement allegations for all claims other than claim 9 of the '647 patent, meaning that Dr. Mowry's infringement allegations regarding the ResolverActivity menu were withdrawn in their entirety.

112.   Dr. Mowry's infringement allegations are particularly significant because the above menus demonstrate single-action-per-structure functionality just like the DA2 design around, yet Dr. Mowry and Apple did not accuse such functionality of infringing claim 9 of the '647 patent.

1   In other words, the above functionality entails a single action linked to each structure and then

2   includes the ResolverActivity menu for choosing the relevant activity to complete the action, just

3   like DA2.  Moreover, the above menus for the Captivate Glide and Galaxy SII Skyrocket are

4   further illustrative because of the presence of only a single structure in the text message.

5        113.   A closer review of the source code for the SCH-i535 device (Galaxy S III) is also

6   instructive, because it confirms that the exact same functionality Dr. Mowry now accuses was

7   present in the adjudicated products.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



54

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



56
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



57



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



59

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**





**(Galaxy S III, SCH-i535)**
**(Messenger)**

**(Galaxy S III, SCH-i535)**
**(Browser)**



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



62   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



63

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



 **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

Accordingly, the ResolverActivity functionality in the adjudicated products, which was never previously accused of infringing claim 9 of the '647 patent, is the same as the functionality in DA2 Messenger that Apple and Dr. Mowry now accuse of infringing claim 9.

**D.    The Unaccused ███████████ Functionality**

122.    The ██████████ functionality now identified by Dr. Mowry as relating to his theories regarding the '647 patent is not new to the products containing Samsung's design arounds. ████████████████████████████████████████████████████ Yet despite its presence in earlier products, it has never been a part of Apple's or Dr. Mowry's infringement theories.  It was not in Apple's infringement contentions, was not in any of Dr. Mowry's expert reports, and was not presented to the jury at trial.  Presumably, at least in part, this is because the ███████████ functionality does not include a pop-up menu.



67



68

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



Accordingly,                    functionality was

17
included in the adjudicated products but was never previously accused of infringing claim 9 of

18
the '647 patent.

19
**VIII.    APPLE'S AND DR. MOWRY'S POSITIONS LEADING UP TO AND DURING**
20
**            TRIAL**

21
            125.    I understand from counsel that Apple's and Dr. Mowry's positions leading up to

22
and during trial are relevant to Apple's and Dr. Mowry's current positions.  Those prior positions

23
include  Apple's  infringement  contentions,  interrogatory  responses,  submissions  during  the

24
Summary  Judgment  briefing  process,  Dr.  Mowry's  declarations  and  expert  reports,  and  the

25
testimony given at trial, among other sources.  As I understand it, Samsung's design arounds were

26
27
28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

based in part on reliance on Apple's admissions.  Below, I provide a summary of these admissions based on my understanding of the record in this case.

### A.  Plain and Ordinary Meaning of "User Interface Enabling the Selection of a Detected Structure"

126.    During the preliminary injunction briefing, I understand that Dr. Mowry submitted expert declarations and, among other things, opined on the plain and ordinary meaning of the claim phrase "user interface enabling the selection of a detected structure."  Dr. Mowry then relied on this construction to distinguish the user interface limitation of claims 1 and 9 from the Pandit prior art reference (U.S. Patent No. 5,859,636), which discloses structure detection after selection by a user (see, e.g., '636 patent col. 2, lines 5-12 ("…a date 11 in text appearing on a video monitor is accented (step 21 of FIG. 2) for example by shading, underlining or pointing to and clicking on the text.  The invention recognizes the accented text (step 22), and provides a menu bar 13 in which the name of menu 12 corresponding to the class of text accented is highlighted or shown in bold type, thereby showing that the menu is enabled (step 23)."); see also, Figs. 1 and 2.  The relevant paragraph from Dr. Mowry's reply declaration is set for below:

> Pandit also does not disclose "user interface" program routines "enabling the selection of a detected structure." The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires the user interface to enable selection of a structure, by the user, *after* the structure has already been detected. Pandit, by contrast, reverses these steps. For example, Dr. Cohen cites to one portion of Pandit that discusses the invention "recogniz[ing]" text that the user has previously "accented", or selected. Cohen Decl., ¶ 217 (quoting '636 Patent 2:3-23). Dr. Cohen thus argues that the above element of claim 1 is satisfied when (1) the user first selects undetected text and, (2) *after* such selection, structures are detected in that text. This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure *after* the system identifies such structures for the user. Pandit, therefore, does not disclose picking or choosing a detected structure but rather accenting (i.e., manually selecting) undetected text.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

(Dkt. 177 (Mowry May 14, 2012 Reply Declaration in Support of Apple's Motion for a Preliminary Injunction, hereafter "Mowry May 2012 Reply Decl.") at ¶ 217 (emphasis in original).)

127.    Apple in its response to Samsung's Interrogatory No. 26 concerning the validity of the '647 patent similarly states the following:

> By way of further example, Samsung fails to establish that Pandit discloses a user interface enabling the selection of a detected structure and a linked action, for at least the reason that Pandit does not disclose detecting structures as explained above. Moreover, even if Pandit discloses detecting structures, it does not disclose user interface program routines establishing the selection of a detected structure. The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires that the user interface to enable selection of a structure that has already been detected. Furthermore, the plain and ordinary meaning of "selection" requires the user to pick or choose a detected structure; Pandit does not disclose picking or choosing a detected structure but accenting undetected text.

(Apple's July 15, 2013 Supp. Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39 and 41) at 126).

### B.    Necessity for Long Press

128.    At trial, Apple accused only the long press gesture in the Browser application of infringing claim 9 of the '647 patent.  I understand that Apple accused the long press gesture because, according to Apple, "*after* the structure has been detected, the system enables the user to make a conscious decision to select that structure by holding his or her press.. . . "  (Apple MSJ Opp. at 4) (emphasis in original).)

129.    In Apple's Opposition to Samsung's Motion for Summary Judgment, Apple asserted that the "user touches the screen which allows the structure to be detected, and then continues to press … in order to select the detected structure and launch the menu of linked actions."  (*Id.* at 4-5.)  Apple also argued:

> As noted above, there is no dispute that structures are detected after the user initially taps on the screen. Then, *after* the structure has been detected, the user interface enables

71    **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

selection of such a detected structure when the device reacts to the user long-pressing the detected structure—that is, touching *and then holding down* on the detected structure long enough to constitute a long-press, as opposed to a short tap. The device is programmed (*i.e.,* enabled) to perform actions when the detected structure is selected through the long-press.

(Apple MSJ Opp. at 3)

Rather, the long-press is the act of "selection" Apple accuses, and it indisputably occurs on a detected structure. In the accused Jelly Bean products, the following sequence of events occurs: (1) the user touches the screen, (2) the system detects a structure in the area of the user's touch, (3) after the detection, the system determines if the user is selecting that structure by holding her touch on that detected structure; and (4) if so, the system presents the menu of actions. In other words, *after* the structure has been detected, the system enables the user to make a conscious decision to select that structure by holding his or her press in order to bring up the menu of candidate actions. Expert Report of Todd Mowry ("Mowry Rep."), ¶ 157-58, 250-51 (Ex. A-2).  As Samsung's expert explained, "[i]n a displayed web page, the user can select an item using a 'long-press,' causing the selected item to be outlined in a different color and causing a context or options menu to appear that lists descriptions of certain operations."

(Apple MSJ Opp. at 4)

Thus, contrary to Samsung's motion, Apple's argument does not simply turn on the fact that "the user's finger will remain on the screen." Samsung MSJ at 5. Long-pressing on a detected structure, as Apple accuses, is a distinct act of selection *after* a structure is detected that invokes entirely different functionality than a mere touch or tap. A simple hypothetical is instructive. There would be no dispute as to infringement if the action of selecting a detected structure involved the following two steps: (1) detecting a structure when a user touched a structure on the screen, and (2) enabling the user to press a second time again to select the detected structure and launch the menu of linked actions. This second touch—a deliberate operation by the user after the structure is detected— would indisputably be a "selection of a detected structure." The same is true for the long-press in the Jelly Bean products. The user touches the screen which allows the structure to be detected, and then continues to press (like a second press in the hypothetical) in order to select the detected structure and launch the menu of linked actions.

(Apple MSJ Opp. at 4-5)

130.    Dr. Mowry offered similar opinions in his 2013 infringement expert report. According to Dr. Mowry, the Jelly Bean Browser application – the only adjudicated application with no pre-detection – only infringes during the long press gesture because only with that gesture is the user "selecting the structure after it has been detected."  (Mowry 2013 Rep. ¶ 251.)

Based on my review of the source code and the Browser on Accused Devices running Jelly Bean (the Android OS version that uses ContentDetector), in order to detect a structure and invoke the routines that display a pop-up menu of linked actions, the user must "long press" (*i.e.*, touch and hold without releasing) an area of the screen, at which point structures are detected as the user makes the selection. Thus, because the user is

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

selecting the structure after it has been detected, the user is able to select a "detected structure" as required by claim 1.

(Mowry 2013 Rep. ¶ 251.)

131.    At trial, Dr. Mowry confirmed the same, arguing that a tap is not enough – that a press and hold is required.  Specifically, Dr. Mowry testified that "when the timer goes off, it says, okay, you've held it long enough that you've actually made a selection through press and hold." (Trial Tr. at 869:18-870:2.)

> Q. Okay. When you say press and hold, you're talking about a user puts their finger down on the spot on the phone and leaves it down?
> A. That's correct.
> Q. Not just a tap?
> A. Yeah, not just a tap. Press and hold.

(Trial Tr. at 866:3-8.)

> So now it has stored the result of what it's detected, but in the meantime the user has not yet held down the finger long enough to make a selection with press and hold.

(Trial Tr. at 868:1-3)

> Q. So just, again for those of us who aren't computer programmers, when the user first puts their finger down, is there some sort of timer going on inside the device to see how long they leave it down?
> A. That's exactly right. As soon as they touch the screen, the software sets a timer, and when this timer goes off, if they've continued to hold their finger down in place, more or less, when the timer goes off, it says, okay, you've held it long enough that you've actually made a selection through press and hold.

(Trial Tr. at 869:18-870:2.)

## C.    Single-Action-per-Structure Functionality

132.    During Summary Judgment briefing, Apple also stated that single-action-per-structure – the behavior where a single action is performed when a user selects a structure – does not infringe claim 1 (and by extension claim 9, which depends on claim 1), regardless of the type of structure.  (Apple MSJ Opp. at 3-4.)  According to Apple, this was because this functionality does not provide the user interface "enabling the selection of … a linked action" as required by claim 1.  (*Id.*)

> A simple touch or tap in the accused Jelly Bean Browser application will not bring up the accused menu of candidate actions, contrary to Samsung's inaccurate description and

figures. *See* Samsung MSJ at 2. Instead, a mere tap on a structure will simply launch a default action (such as a "dial" action on a phone number), but it will not provide a menu "enabling the selection of . . . a linked action" as required by claim 1. For this reason, too, Apple does not accuse a simple touch action in the Jelly Bean Browser application of infringing.

(Apple MSJ Opp. at 3-4)

Notably, at that time Apple ignored the ResolverActivity Menu that Dr. Mowry now accuses of satisfying claim 9.

133.    At trial, Dr. Mowry confirmed that single-action-per-structure does not infringe claim 9 of the '647 patent.  In the context of responding to my opinion concerning non-infringing alternatives offered (see paragraphs 817-818 of my August 12, 2013 Expert Report), Dr. Mowry testified as follows:

> Q. Now, do you recall dr. Jeffay also gave some testimony about something he called tap to dial?
> A. Yes.
> Q. Is tap to dial a feature of the phones that you have opined infringes the '647 patent?
> A. No, tap to dial does not infringe the '647 patent.
> Q. Okay. Can you remind the jury what tap to dial is?
> A. Instead of using a press and hold to select a detected phone number, for example, in the browser, if you instead quickly tap your finger on a phone number, what it'll do instead is to launch the dialer, which is the default action.
>    So there are two different gestures, and one of them just does a default action.
> Q. And does tap to dial provide a user with the benefits of claim 9 of the '647 patent?
> A. No, because it only provides one action. So for a phone number, the only thing you can do is dial.
>    But sometimes you want to add a phone number to your contact list, or you might want to send a text message to the phone number.
>    So the important point of the '647 patent was that you'd have multiple actions for the detected structures.

(Trial Tr. at 2798:9-2799:5)

134.    In both the adjudicated and currently accused devices, this same behavior is present for all types of structures.  So, for example, these devices include tap-to-dial, tap-to-email, tap-to-maps, and tap-to-webpage, among others.  Each of these are the same single-action-per-structure functionality Apple and Dr. Mowry previously stated did not infringe.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

### D.     Dr. Mowry Testified That startActivity is the "Action"

135.    During trial, once the operative claim construction for "linking actions to the detected structures" was in place, Dr. Mowry specified that the action, in his opinion, is the "startActivity" routine, which is given a particular Intent as an input.  (Trial Tr. at 3027:24-3028:4, 3028:17-22.)

> Q. Okay. So that's the specified connection.
>    Could you point the jury to the code on this slide which is the "at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure"?
> A. Yes. In both cases, that's start activity from the context impl class.

(Trial Tr. at 3027:24-3028:4.)

> Q. Okay. And just to tie up this last piece, what, for the browser application, is the "at least one computer subroutine that causes the CPU to perform a sequence of operations on the detected sequence"?
> A. It is start activity, which is given a particular intent as input.

(Trial Tr. at 3028:17-22.)

136.    This was consistent with statements in his expert report where Dr. Mowry was unequivocal that the "action" is startActivity.

> The use of implicit Intents satisfies the "linking" element of the asserted claims. First, the "action", or "computer subroutine that causes the CPU to perform a sequence of operations on that detected structure" in the Accused Products is startActivity(), which uses the data in its input parameter (an implicit Intent object) along with a call to resolveActivity() to perform the following sequence of operations on that detected structure: First, it causes the Android system to *launch* the user's preferred application (aka "activity") for performing the operation that was described in the context menu, and, second, it passes the value of the detected structure as input to that application. Hence, there is a "link" (or "specified connection") between the detected structures and startActivity().

(Mowry 2013 Rep. ¶ 240)

### E.     Sidekick Prior Art

137.    The Sidekick prior art, asserted as an invalidating reference at trial, disclosed a system in which a single structure could be selected at a time, and only a single action – Dial – could be performed on each structure.  Dr. Mowry testified that for each structure Sidekick detected, the only action that it could link is dialing.  (Trial Tr. at 2802:22-2803:7, 2809:3-10.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

Q. And was the -- the analyzer server element goes on and talks about linking actions, plural, to the detected structures.
   Was Sidekick capable of linking multiple actions to a structure that could detect?
A. No. The only action that it could link is dialing.

(Trial Tr. at 2802:22-2803:7 (emphasis added).)

Q. Now, just -- this should be quick -- was Sidekick capable of linking multiple actions to the phone number that it could detect?
A. No. Sidekick can only dial.

(Trial Tr. at 2809:3-10)

### F.    Pandit Prior Art – U.S. Patent No. 5,859,636

138.    I understand that the Pandit reference was asserted as an invalidating reference during the preliminary injunction proceedings.  In his reply declaration, Dr. Mowry described Pandit as disclosing a "method and apparatus for recognizing text that has already been marked by a user, associating that text with a predetermined 'class,' and performing an 'operation' based on that class identification."  Mowry May 2012 Reply Decl. ¶ 26.

139.    Dr. Mowry asserted several reasons that, in his opinion, Pandit does not anticipate or render obvious claims 1 and 8 of the '647 patent, including that:

> Pandit does not disclose "a user interface enabling the selection of a detected structure" because Pandit requires that a user manually select text **before** Pandit attempts to recognize that text as performing to a particular class. This reverses the steps disclosed in the '647 patent in a material, and critical, way.

Mowry May 2012 Reply Decl. ¶ 26 (emphasis in original).

140.    Specifically, with respect to the limitation "a user interface enabling the selection of a detected structure and a linked action," Dr. Mowry asserted that Pandit does not disclose this element of claim 1 of the '647 patent because:

> Pandit also does not disclose "user interface" program routines "enabling the selection of a detected structure." The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires the user interface to enable selection of a structure, by the user, **after** the structure has already been detected. Pandit, by contrast, reverses these steps. For example, Dr. Cohen cites to one portion of Pandit that discusses

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the invention "recogniz[ing]" text that the user has previously "accented", or selected. Cohen Decl., ¶ 217 (quoting '636 Patent 2:3-23). Dr. Cohen thus argues that the above element of claim 1 is satisfied when (1) the user first selects undetected text and, (2) *after* such selection, structures are detected in that text. This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure *after* the system identifies such structures for the user. Pandit, therefore, does not disclose picking or choosing a detected structure but rather accenting (i.e., manually selecting) undetected text.

(Mowry May 2012 Reply Decl. ¶ 217 (emphasis in original).)

### G.    Claim 9 of the '647 Patent

141.    The plain language of claim 9 requires a "pop-up menu of linked actions," plural. Indeed, Dr. Mowry has repeatedly stated that claim 9 requires multiple actions, plural, that are linked to a detected structure.  (*See* Mowry 2013 Reb. Rep. pp. 31-32, 51, 57, 60, 118-19; example language set forth below.)

It also contradicts claim 9, which states that the user interface must enable selection of an action using a pop-up menu of the linked **actions**."  The only antecedent basis for "the linked actions" (plural) is the multiple linked actions required by parent claim 1.  Since claim 9 is not indefinite for lack of antecedent basis, claim 1 must therefore require multiple actions.

(Mowry 2013 Reb. Rep. p. 32 (emphasis in original).)

In addition, the court in the *Motorola* litigation found that "the ability to link a structure to a single action still comports with the patent's plural reference, *so long as other structures are linked to other actions*.  An analyzer that links dates to the calendar and phone numbers to the phone book still "links structures to actions."

(Mowry 2013 Reb. Rep. p. 32 (emphasis in original).)

Further, Sidekick does not "perform[] actions on detected structures" because only one action – dialing – is available to a Sidekick user for a single phone number at any given time.  As the Sidekick Handbook explains, once a single telephone number is highlighted by the Dialer feature, the user may press "enter" to dial that number, or an arrow key to move to another phone number on the screen, if one was available.  The Sidekick Handbook mentions no other actions that can be performed on a highlighted phone number, nor does Dr. Jeffay point to any.

(Mowry 2013 Reb. Rep. p. 51.)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

As with the selection of a detected structure, the selection of an action requires that there be a set of multiple actions from which to select.  When the Sidekick Dialer recognizes a telephone number, however, only a single operation – using the computer's modem to make a telephone call to the number – is available.

(Mowry 2013 Reb. Rep. p. 57.)

In addition, since Sidekick discloses at most a single alleged linked action (i.e. dialing a phone number), there is no need for a pop-up menu of linked actions, since there are no other allegedly linked actions to choose.

(Mowry 2013 Reb. Rep. p. 60.)

It is my opinion that at least as of the time of the invention, it was novel to provide a system to detect multiple structures and associate with those structures different actions that are also tailored to those structures.  Further, one of skill in the art reading the patent would understand this novel limitation to require linking *multiple* candidate actions to each structure detected.

(Mowry 2013 Reb. Rep. p. 118-19 (emphasis in original).)

## H.     The ResolverActivity Menu

142.     In his 2013 infringement expert report, Dr. Mowry included the ResolverActivity menu in his allegations regarding claim 1 of the '647 patent, for Messenger application in the Gingerbread version of six Samsung phones:  the Samsung Captivate Glide, Dart, Epic 4G Touch, Exhibit II 4G, Galaxy S II, and Galaxy S II Skyrocket product.  The images of the ResolverActivity menu included in Dr. Mowry's expert report for claim 1 for these phones are excerpted below.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES




**(Mowry 2013 Rep. Ex. 3B (Captivate Glide) at 25.)**




**(Mowry 2013 Rep. Ex. 3D (Dart) at 15.)**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

  

**(Mowry 2013 Rep. Ex. 3E (Epic 4G Touch) at 28.)**

 

**(Mowry 2013 Rep. Ex. 3F (Exhibit II 4G) at 11.)**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES




**(Mowry 2013 Rep. Ex. 3K (Galaxy SII) at 25.)**





**(Mowry 2013 Rep. Ex. 3L (Galaxy SII Skyrocket) at 20.)**

143.    For the Gingerbread version of each of these products, Dr. Mowry included the

ResolverActivity menu depicted above for the "analyzer server" limitation of claim 1.  And for the

Gingerbread version of each of these products except the Exhibit II 4G, Dr. Mowry included the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

ResolverActivity menu in the "user interface" limitation of claim 1 as well. Dr. Mowry then stated, in footnote 11 to his expert report, that "the Samsung Captivate Glide (Gingerbread), Dart, Exhibit II 4G (Gingerbread), Galaxy Nexus, Galaxy S II (Gingerbread), Galaxy S II Epic 4G Touch (Gingerbread), and Galaxy S II Skyrocket (Gingerbread), also infringe the '647 patent through the Messaging application under claim constructions adopted in the Motorola litigation requiring only a single action for each detected structure." (Mowry 2013 Rep. at 37 n.11 (emphasis added).) This confirms for me that Dr. Mowry considered single-action-per-structure functionality with a ResolverActivity menu as a single action.

144.   At the time, Samsung was accused of infringing both claims 1 and 9, among other claims. Ultimately, Apple dropped its allegations with respect to claim 1, resorting to claim 9 only. For claim 9, however, Dr. Mowry did not depict or discuss this functionality in his expert report.

**I.   Options Such as "Copy" and "Select text"**

145.   Dr. Mowry previously testified that Samsung's tablets do not infringe claim 9 of the '647 patent. Apple and Dr. Mowry initially accused the generic context menu used in the tablet products (shown below), but dropped these allegations days before the beginning of trial. During trial, Dr. Mowry testified that tablets, which include this context menu, do not infringe:

> Q. Okay. Could we see slide 6, please, Mr. Lee.
>    And what is set out on slide 6?
> A. These are the nine accused devices that i believe infringe the '647 patent.
> Q. And can you just tell the jury which ones they are?
> A. They are the Admire, the Galaxy Nexus, the Galaxy Note, Galaxy Note 2, Galaxy S II, S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S III, and Stratosphere.
> Q. Was there a tenth device that you analyzed that you concluded did not infringe?
> A. Yes. I also looked at tablets, but the devices that I examined I concluded did not infringe the '647 patent.

(Trial Tr. at 833:1-12.)

146.   Those previously accused tablets that were dropped before trial included the following context menus:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12



13
14

**Previously Accused by Not Adjudicated Samsung Galaxy Note 10.1 Browser, Long Press**
**(Mowry 2013 Rep. Ex. 3J at 44, 46)**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Previously Accused by Not Adjudicated Samsung Galaxy Note 10.1 Browser, Long Press
(Mowry 2013 Rep. Ex. 3J at 45, 47)**

## IX.    SAMSUNG'S DESIGN AROUNDS

147.    In response to the jury's finding of infringement of claim 9 of the '647 patent,

Samsung implemented three distinct design arounds, referred to as DA1-A, DA1-B, and DA2.  In

each device, Samsung implemented one design around for the Browser application, and one design

around for the Messenger application.  Depending on the device, the Browser application received

either the DA1-A or DA1-B design arounds, and the Messenger application received either the

DA1-A or DA2 design arounds.  These design arounds are described in more detail below.

148.



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1

2

[REDACTED]

3      149.    In all cases, Samsung's design arounds either removed or modified the adjudicated

4   functionality.  Below, I provide a detailed description of each design around implemented for each

5   application.

6      **A.      Browser DA1-A**

7      150.    The Samsung design around for the Browser application referred to as DA1-A

8   includes a user interface that does not enable the selection of a detected structure, because detection

9   does not occur until after a user has selected a structure and removed his or her finger from the

10  screen.  The DA1-A design around for the Browser application can alternatively be referred to as

11  the [REDACTED] design around.

12     151.    There are multiple aspects to Samsung's DA1-A design around.  First, Samsung

13  removed the accused functionality – namely, the context menu containing entries related to a

14  selected structure, generated as a result of a user performing a long press gesture.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Adjudicated Browser User Interface, Long Press (Mowry 2013 Rep. ¶ 8)**

### 1.    Long Press

152.    After removal of the accused functionality, the Browser application now operates such that performing a long press on an item, such as a phone number, results in a generic text selection menu with options such as "Select all" and "Copy":

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Browser DA1-A, Long Press**

153.    None of the presented options are related in any way to any item in the underlying web page.  They, therefore, are not "linked" to a "structure."  As a result, for the long press gesture, there is no "user interface enabling the selection of a detected structure and a linked action," as required by claim 1, because no "structure" is detected before selection (as detailed below) and no "linked actions" are provided.  In fact, for the DA1-A design around for the Browser application, no content detection routines are used in the creation of a generic text selection menu as a result of a long press gesture.

154.    Dr. Mowry admits that this menu is not part of his allegations.  (Mowry 2017 OR Rep., ¶ 64 ("I have not analyzed the 'generic' pop-up menu for the purposes of this report."))

155.    Samsung has created three distinct iterations of the DA1-A design around for the Browser application. ██████████████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



89

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



90

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



91

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



93   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



## 2.    Short Tap

164.    Samsung also modified the short tap gesture in the Browser application for the DA1-A design around.  In the DA1-A design around for the Browser application, performing a short tap gesture on an item generates a menu with entries such as "Call" and "Add to Contacts":

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Browser DA1-A, Short Tap**

165.    As can be seen in the screenshots above, when a web page is loaded by the Browser application implementing DA1-A, no structures are detected.  Samsung modified the user interface for the DA1-A design around so that the process of detecting a selected structure does not begin until after a user has selected a structure via the short tap gesture and removed his or her finger from the screen.

166.    Samsung has created three distinct iterations of the DA1-A design around for the Browser application.  While each of these iterations has different source code, they each have similar functionality, described above.  Below I describe the specific source code underlying this functionality.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



96   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



This is the start of the content detection process and, as the above trace indicates, this process does not start until after the user has lifted his or her finger off the screen.  Thus, no detection is performed until after a short tap gesture is completed and the user lifts his or her finger from the screen.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



98

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



99   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

his is the start of the content detection process and, as the above trace indicates, this process does not start until after the user has lifted his or her finger off the screen.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



This is the start of the content detection process and, as the above trace indicates, this process does not start until after the user has lifted his or her finger off the screen.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

[REDACTED]

Thus, no detection is performed until after a short tap gesture is completed and the user lifts his or her finger from the screen.

**B.      Browser DA1-B**

173.    The Samsung design around for the Browser application referred to as DA1-B includes a user interface that does not enable the selection of a detected structure, because detection does not occur until after a user has selected a structure.  The DA1-B design around for the Browser application can alternatively be referred to as the [REDACTED] design around.

174.    There are multiple aspects to Samsung's DA1-B design around.  First, Samsung removed the accused functionality – namely, the context menu containing entries related to a selected structure, generated as a result of a user performing a long press gesture.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Adjudicated Browser User Interface, Long Press (Mowry 2013 Rep. ¶ 8)**

       **1.**    **Long Press**

176.    After removal of the accused functionality, the Browser application now operates such that performing a long press on an item, such as a phone number, results in a generic text selection menu with options such as "Select all" and "Copy":

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Browser DA1-B, Long Press**

177.    None of the presented options are related in any way to any item in the underlying web page. They, therefore, are not "linked" to a "structure. As a result, for the long press gesture, there is no "user interface enabling the selection of a detected structure and a linked action," as required by claim 1, because no "structure" is detected (as detailed below) and no "linked actions" are provided.

178.    Dr. Mowry admits that this menu is not part of his allegations. (Mowry 2017 OR Rep., ¶ 75 ("I have not analyzed the 'generic' pop-up menu for the purposes of this report."))

179.    In fact, for the DA1-B design around for the Browser application no content detection routines are used in the creation of a generic text selection menu as a result of a long press gesture.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



A generic text selection menu is then created.

### 2. Short Tap

182.   Samsung modified the short tap gesture in the Browser application for the DA1-B design around.  In the DA1-B design around for the Browser application, performing a short tap gesture on an item generates a menu with entries such as "Call" and "Add to Contacts":



**Browser DA1-B, Short Tap**

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

183.    As can be seen in the screenshots above, when a web page is loaded by the Browser application implementing DA1-B, no structures are detected.  Samsung modified the user interface for the DA1-B design around so that the process of detecting a selected structure does not occur until after a user has selected a structure via the initiation of a short tap gesture.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

his results in creation of a menu.

### C.  Messenger DA1-A

187.    The Samsung design around for the Messenger application referred to as DA1-A includes a user interface that does not enable the selection of a detected structure, because detection does not occur until after a user has selected a structure and removed his or her finger from the screen.

188.    There are multiple aspects to Samsung's DA1-A design around.  First, Samsung removed the accused functionality – namely, removal of hyperlinking indicative of a detected structure and removal of the context menu containing entries related to a selected structure, generated as a result of a user performing a gesture on a hyperlinked structure.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13



**Adjudicated Messenger User Interface (Mowry 2013 Rep. ¶ 11)**

189.    As illustrated above, in certain of the adjudicated devices, structures such as email addresses and phone numbers are detected and hyperlinked prior to presentation to the user via the user interface.  Samsung removed this functionality for the Messenger application so that items are no longer detected and hyperlinked prior to selection.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Messenger DA1-A**

190.     As a result, there is no "user interface enabling the selection of a detected structure," as required by claim 1, because no "structure" is detected.



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

### 1.     Short Tap

193.    Samsung modified the short tap gesture in the Messenger application for the DA1-A design around.   In the adjudicated Messenger application, the accused context menu was generated on a short press gesture:



**Adjudicated Messenger User Interface (Mowry 2013 Rep. ¶ 11)**

194.    Samsung modified the user interface for the DA1-A design around so that the process of detecting a selected structure does not begin until after a user has selected a structure via the short tap gesture and removed his or her finger from the screen.   Specifically, Samsung changed the Messenger's functionality so that detection routines do not begin until a short tap gesture is completed and the user's finger is completely removed from the screen.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



113

Thus, no detection is performed until after a short tap gesture is completed.

## 2.    Long Press

195.    Apple did not accuse the long press gesture in the Messenger application, which generated a menu of "Message Options" (e.g., "Delete," "Copy," and "Forward"). That same menu is still present in the non-adjudicated products containing a Messenger application with DA1-A.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES




**Unaccused Messenger DA1-A, Long Press**

196.     This menu is unrelated to the accused functionality and does not infringe claims 1 or 9 of the 647 patent.  None of the presented options are related in any way to any item in the underlying text message.



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

198.     Thus, no structure detection occurs during creation of the long press menu. Accordingly, none of the presented options are related in any way to any item in the underlying text message.  They, therefore, are not "linked" to a "structure."

**D.     Messenger DA2**

199.     The Samsung design around for the Messenger application referred to as DA2 does not include the accused user interface, which as been removed.

**1.     Short Tap**

200.     The Samsung design around for the Messenger application referred to as DA2 does not include the accused user interface, in which a context menu was generated following a user performing a short tap on a structure.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13



14  **Adjudicated Messenger User Interface, Short Tap (Mowry 2013 Rep. ¶ 11)**

15
16      201.    That user interface has been removed.  Instead, a short tap results in a task being

17  performed based on the selection of an item such as a phone number:

18
19
20
21
22
23
24
25
26
27
28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Messenger DA2, Short Tap**

202.   For the DA2 design around, a default task is now performed when a user performs a short tap gesture.   In the DA2 Messenger application,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



119

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



Thus, a default task is performed on a short tap gesture.

### 2.    Long Press

203.    For the long press gesture in the DA2 design around, Samsung kept the same menu of "Message Options" (e.g., "Delete," "Copy," and "Forward") that was presented on a long press gesture in the adjudicated products.  This menu was never accused, and does not "enable the selection of … a linked action."

17
18
19
20
21
22
23
24
25
26
27
28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**Unaccused Messenger DA2, Long Press**

204.    This menu is unrelated to the accused functionality and does not infringe claims 1 or 9 of the '647 patent.  None of the presented options are related in any way to any item in the underlying text message.  They, therefore, are not "linked" to a "structure."



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



206.    Thus, no structure detection occurs during creation of the long press menu. Accordingly, none of the presented options are related in any way to any structure in the underlying text message.  They, therefore, are not "linked" to a "structure."

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

## X.   PREVIOUSLY UNACCUSED FUNCTIONALITY IN SAMSUNG'S MESSENGER APPLICATION

207.     As part of his expert report, Dr. Mowry also identifies two additional functionalities in Samsung's Messenger application that he alleges are not more than colorably different and infringing.  These are the ResolverActivity menu, identified by Dr. Mowry with respect to the Samsung's DA2 design around, and ███████████ identified by Dr. Mowry with respect to Samsung's DA1-A design around.  Neither of these functionalities are part of Samsung's design arounds because, as described above in Section VII, both of these functionalities were included in the adjudicated Samsung products, but they were not accused.  Nevertheless, because these features do not infringe claim 9 of the '647 patent, a description of their source code is instructive.

### A.     The Unaccused ResolverActivity Functionality

208.     I previously described the ResolverActivity menu above in Section VII.C.  I now describe such functionality as implemented in the source code of Samsung's designed-around products.  ResolverActivity.java is a class that is part of the Android framework, on which all applications – including Samsung's Messenger application – are built.  ResolverActivity is part of a set of classes in the Android framework that allow Android to resolve which Activity (i.e., which specific application) should perform an action.



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



124

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



127

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



// data





130   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  ████████████████████████ creates the menu for the user to

2  choose the activity to perform an action.  This menu, which was not previously accused, appeared

3  as follows in the adjudicated products:



**Previously Unaccused ResolverActivity Menu**
**(Galaxy SIII)**

17  216.    The menu identified by Dr. Mowry appears as follows, which is identical to the one

18  that was not accused in the adjudicated products:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11



**Newly Accused ResolverActivity Menu**
**(Mowry 2017 OR Rep., Paragraph 52)**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



135

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**B.** **The Unaccused** ███████████ **Functionality**

220.    I previously described the ████████████████ above in Section VII.D.  I now describe such functionality as implemented in the source code of Samsung's designed-around products.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



138   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



139   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



140   **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



141
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



## XI.   SAMSUNG'S DESIGN AROUNDS ARE MORE THAN COLORABLY DIFFERENT

226.    Samsung's DA1-A, DA1-B, and DA2 design arounds are more than colorably different from the accused functionality in the Browser and Messenger applications that was found to infringe during the 2014 trial.  These design arounds each remove or modify the functionality found to infringe.  In the case of the Browser application, Samsung removed the accused long press context menu and modified the unaccused short tap behavior to present a noninfringing context menu.  In the case of the Messenger application, Samsung modified the accused short tap context menu for the DA1-A design around to present a noninfringing context menu and removed the accused context menu functionality for the DA2 design around.  The significant differences with respect to each of these design arounds are addressed more fully below.[6]

---

[6]   I understand that in paragraph 106 of Dr. Mowry's 2017 report, Dr. Mowry opines that "the minor technical modifications Samsung implemented in its design-arounds would have been obvious to a person of ordinary skill in the art at least as early as May 5, 2014, when the Infringing Products were found to infringe the '647 patent."  (Mowry 2017 OR Rep. ¶ 106.)  Dr. Mowry, however, provides no basis for how or why Samsung's modifications would have been obvious to a person of ordinary skill in the art at that time.  Because Dr. Mowry provides no

1

**A.      Browser DA1-A**

2      227.    Samsung's DA1-A Browser application is more than colorably different from the

3 functionality accused of infringing at trial in several ways.

4              **1.      Samsung's Removal of the Accused Long Press Functionality**

5      228.    First, Samsung removed the accused long press context menu functionality.  In the

6 DA1-A design around for the Browser application, performing a long press now results in a generic

7 text selection context menu with options such as "Select all" and "Copy."  As described above in

8 Section VIII.I, Apple and Dr. Mowry did not accuse this functionality in the adjudicated products

9 and conceded that these are not "linked actions" when Dr. Mowry dropped his allegations relating

10 to Samsung's tablet products, which otherwise provide only a single action for each structure.  (*See*

11 Trial. Tr. at 833:1-12 ("I also looked at tablets, but the devices that I examined I concluded did not

12 infringe the '647 patent.").)

13

14

15

16

17

18

19

20

21

22

23

24

25

26 explanation or support for this blanket position, I am not in a position to rebut his unfounded
opinion.

27

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

28 REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES



**(Mowry 2013 Rep. ¶ 8)          Browser DA1-A Long Press**

229.    In the designed around menu, none of the presented options are related in any way to any item in the underlying web page.  The Browser application merely highlights the nearest ▮▮▮▮ of text underneath the user's finger, allowing the user to select it, copy it, share it, or look it up in a dictionary.  These options, therefore, are not "linked" to a "structure," and are unrelated to claim 9 of the '647 patent.  Moreover, Dr. Mowry states that this functionality plays no part in his current allegations: "One of the changes made with respect to the DA1-A Browser products was that a 'generic' pop-up menu … appears when a user makes a long press on a structure in Browser.  I have not analyzed the 'generic' pop-up menu for the purposes of this report." (Mowry 2017 OR Rep. ¶ 64.)

230.    In my opinion, the removal of the accused functionality from the long press gesture is itself a significant change that alone renders the DA1-A design around more than colorably different.  As discussed above in Section VIII.A, in an application in which structures are not pre-detected – like the DA1-A design around and the Jelly Bean Browser application – the long press gesture was key to Dr. Mowry's theories.  Because no structures are pre-detected, when a user first

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

places a finger on the screen, he is not "select[ing] … a detected structure" as required by claim 9. Without the ability to select a detected structure, there can be no infringement.  To address this inconsistency with respect to the adjudicated functionality, Apple and Dr. Mowry alleged that, by performing a long press gesture, the user was performing a continuous selection, during which time detection occurred and, hence, the user was selecting a detected structure:

> Q. Okay. When you say press and hold, you're talking about a user puts their finger down on the spot on the phone and leaves it down?
> A. That's correct.
> Q. Not just a tap?
> A. Yeah, not just a tap. Press and hold.

(Trial Tr. at 866:3-8)

> So now it has stored the result of what it's detected, but in the meantime the user has not yet held down the finger long enough to make a selection with press and hold.

(Trial Tr. at 868:1-3)

> Q. So just, again for those of us who aren't computer programmers, when the user first puts their finger down, is there some sort of timer going on inside the device to see how long they leave it down?
> A. That's exactly right. As soon as they touch the screen, the software sets a timer, and when this timer goes off, if they've continued to hold their finger down in place, more or less, when the timer goes off, it says, okay, you've held it long enough that you've actually made a selection through press and hold.

(Trial Tr. at 869:18-870:2)

231.    In previous testimony, arguments, and decisions, Dr. Mowry, Apple, and the district court all recognized that long press, "not just a tap," was necessary for enabling selection of a "detected" structure element, when, as in the Samsung Jelly Bean Browser, the structures were not predetected.  For example, during Summary Judgment, Apple argued that selecting via a long press gesture (while detection occurs during the long press gesture) was key to Apple's infringement arguments: "the system enables the user to make a conscious decision to select that structure by holding his or her press in order to bring up the menu of candidate actions."  (Apple MSJ Opp. at 4.)

232.    In its decision on summary judgment, the court described and expressly relied on Apple's arguments concerning the importance of the "long press":

> As Apple's expert explains, "in order to detect a structure and invoke the routines that display a pop-up menu of linked actions [such as "Dial" or "Add contact"], the user must 'long press' (*i.e.,* touch and hold without releasing) an area of the screen, at which point structures are detected . . . ." Mowry Rep. ¶ 251 (alteration added).  According to Apple, even if the user's initial selection of a structure happens before the system detects the structure, the user makes another "selection" through a long press, an action that is completed after the user initially touches the screen and the structure is detected. *See* Mowry Rep. 250-51. Apple analogizes the long-press to a double tap, where the first tap triggers the detection of a structure and the second tap allows the user to select the detected structure and launch the menu of linked actions. Apple Opp. at 5. The second touch, Apple continues, "would indisputably be a 'selection of a detected structure,'" and the long-press is no different.
>
> The Court is satisfied that Apple's "long-press" argument establishes a genuinely disputed issue of material fact for the jury. In light of the evidence Apple has presented namely, its expert's description of the long-press functionality and analysis of the source code for that functionality, *see* Mowry Rep. ¶¶ 157-58, 250-51—a jury could conclude that the Jelly Bean Browser has the claimed "user interface enabling the selection of a detected structure."

Dkt. 1151 at 20-21 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).

233.    Unlike the long press gesture, the short tap does not have this same purported "intentional selection" of a "detected" structure.   Therefore, by removing the long press functionality, Samsung's DA1-A design around is more than colorably different.

## 2.    Samsung's Implementation of Modified Short Tap Functionality

234.    Second, Samsung implemented a modified short tap functionality in its DA1-A design around for the Browser application.   While the adjudicated Browser application implemented tap-to-dial, tap-to-email, and other default action behaviors when a short tap gesture is performed, all unaccused by Apple and Dr. Mowry, the DA1-A design around for the Browser

application instead generates a context menu when a short press is performed on a structure.  This change, too, is significant by itself.  Not only did Samsung implement the context menu on a short tap gesture, Samsung programmed the gesture so that no detection occurs or even begins until after a short tap gesture is completed.  By ensuring that structures are not pre-detected, and by ensuring that no detection of any structure occurs before or during the user's performance of the short tap gesture, the DA1-A design around ensures that there is no "user interface enabling the selection of a *detected* structure and a linked action," as required by claim 9.  As Apple and Dr. Mowry agree, "the plain and ordinary meaning of the claim limitation 'a user interface enabling the selection of a *detected* structure' requires 'the user interface to enable selection of a structure, by the user, ***after*** the structure has already been detected.'"  Dkt. 1151 at 20 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).  But in DA1-A, detection only occurs after selection, as expressly acknowledged by Dr. Mowry (Mowry 2017 OR Rep. ¶ 95 ("…the completion of the detection of the relevant structure now occurs after the user lifts his or her finger up.")).

235.    Dr. Mowry attempts to equate the DA1-A design-around with the adjudicated Galaxy S III by opining that "[b]ecause there is no pre-detection in either the Infringing Galaxy S III or the DA1-A Browser products, the detection process does not begin until after the user touches the relevant structure with his or her finger (or similar instrument).  In both instances, upon a 'finger down' event, a timer is set that, after 'finger up,' will help determine if a contextual pop-up menu will be displayed.  In both instances, the process that includes detection and display of a contextual pop-up menu starts with 'finger down.'  Kyo Sun Song Deposition at 34:18-36:8."[7] (Mowry 2017 OR Rep. ¶ 97).  Dr. Mowry then argues that this modification is not colorably different because "'finger up' is nothing more than part of the process that begins with 'finger down.'"  (Mowry 2017 OR Rep. ¶ 98.)  Dr. Mowry is incorrect.  The purpose of the timer is merely

---

[7]   I reviewed the cited deposition transcript and disagree that it provides any support for Dr. Mowry's opinion.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

to determine whether or not the user's interaction is a short tap or a long press.  As Dr. Mowry agrees, the detection routines do not begin until after the user removes his or her finger from the screen.  (*See* Mowry 2017 OR Rep. ¶ 137.)  Moreover, even if one were to (incorrectly) assume that the detection process begins at "finger down," that process would still not be complete until after the user removes his or her finger from the screen.  Specifically, at the time of the completion of the short tap gesture, no structure has been detected.  Therefore, the DA1-A functionality cannot infringe the user interface limitation of claim 9 which requires selection of a "detected structure."[8]

### 3.   User Experience Alone is Irrelevant

236.   Dr. Mowry minimizes Samsung's DA1-A design around, arguing that "[f]rom the user experience perspective, DA1-A is functionally equivalent to the Infringing Galaxy S III phone." (Mowry 2017 OR Rep. ¶ 96.)  But the user experience alone is irrelevant – there is no dispute that when comparing a product to claim 9 of the '647 patent, source code must also be considered to ensure that the components required by the claim—that are not visible to the user—are present.  Indeed, Dr. Mowry performed source code analysis for the "analyzer server" (*id. a*t ¶ 40), "linking actions to detected structures" (*id.* at ¶ 41), "user interface" (*id.* at ¶¶ 42-43), "action processor" (*id.* at ¶ 44) and "pop-up menu" (*id.* at ¶ 45) limitations of the asserted claim.  A small change in the code could be enough to take the adjudicated products outside the scope of the claims, even if the user experience were exactly the same.  In my opinion, the changes Samsung made to the code for the DA1-A Browser application render that application more than colorably different from the functionality accused of infringing at trial.

---

[8]   Dr. Mowry apparently agrees with this statement considering that he only accuses the DA1-A design-around of infringing under the doctrine of equivalents, which alone is indicative that this design-around is more than colorably different from the adjudicated products that were found to literally infringe claim 9.

**B.     Browser DA1-B**

**1.     Samsung's Removal of the Accused Long Press Functionality**

237.     Samsung's DA1-B Browser application is more than colorably different from the functionality accused of infringing at trial because Samsung removed the accused long press context menu functionality.  In the DA1-B design around for the Browser application, performing a long press – the accused functionality – results in a generic text selection context menu with options such as "Select all" and "Copy."   As described above in Section VIII.I, Dr. Mowry conceded that these are not "linked actions" when he dropped his allegations relating to Samsung's tablet products, which otherwise provide only a single action for each structure.  (*See* Trial. Tr. at 833:1-12 ("I also looked at tablets, but the devices that I examined I concluded did not infringe the '647 patent.").)




**(Mowry 2013 Rep. ¶ 8)          Browser DA1-B Long Press**

238.     In the designed around menu, none of the presented options are related in any way to any item in the underlying web page.  The Browser application merely highlights the nearest

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1 ████████ of text underneath the user's finger, allowing the user to select it, copy it, share it, or look

2 it up in a dictionary.  These options, therefore, are not "linked" to a "structure," and are unrelated

3 to claim 9 of the '647 patent.  Moreover, Dr. Mowry admits that this functionality plays no part in

4 his current allegations: "One of the changes made with respect to the DA1-B Browser products

5 was that a 'generic' pop-up menu … appears when a user makes a long press on a structure in

6 Browser.  I have not analyzed the 'generic' pop-up menu for the purposes of this report."  (Mowry

7 2017 OR Rep. ¶ 64.)

8          239.    In my opinion, the removal of the functionality from the long press gesture is itself

9 a significant change that alone renders the DA1-B design around more than colorably different.

10 As discussed above in Section VIII.A, in an application in which structures are not pre-detected –

11 like the DA1-B design around and the Jelly Bean Browser application – the long press gesture was

12 key to Dr. Mowry's theories.  Because no structures are pre-detected, when a user first places a

13 finger on the screen, he is not "select[ing] … a detected structure" as required by claim 9.  Without

14 the ability to select a detected structure, there can be no infringement.   To address this

15 inconsistency with respect to the adjudicated functionality, Apple and Dr. Mowry alleged that, by

16 performing a long press gesture, the user was performing a continuous selection, during which

17 time detection occurred and, hence, the user was selecting a detected structure:

18          Q. Okay. When you say press and hold, you're talking about a user puts their finger down
19          on the spot on the phone and leaves it down?
             A. That's correct.
20          Q. Not just a tap?
             A. Yeah, not just a tap. Press and hold.

21          (Trial Tr. at 866:3-8.)

22          So now it has stored the result of what it's detected, but in the meantime the user has not
23          yet held down the finger long enough to make a selection with press and hold.

24          (Trial Tr. at 868:1-3.)

25          Q. So just, again for those of us who aren't computer programmers, when the user first
             puts their finger down, is there some sort of timer going on inside the device to see how
26          long they leave it down?
             A. That's exactly right. As soon as they touch the screen, the software sets a timer, and

27

28
          HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

when this timer goes off, if they've continued to hold their finger down in place, more or less, when the timer goes off, it says, okay, you've held it long enough that you've actually made a selection through press and hold.

(Trial Tr. at 869:18-870:2 (emphasis added).)

240.    In previous testimony, arguments, and decisions, Dr. Mowry, Apple, and the district court all recognized that long press, "not just a tap," was necessary for enabling selection of a "detected" structure element, when, as in the Samsung Jelly Bean Browser, the structures were not predetected.  For example, during Summary Judgment, Apple argued that selecting via a long press gesture (while detection occurs during the long press gesture) was key to Apple's infringement arguments: "the system enables the user to make a conscious decision to select that structure by holding his or her press in order to bring up the menu of candidate actions."  (Apple MSJ Opp. at 4.)

241.    In its decision on summary judgment, the court described and expressly relied on Apple's arguments concerning the importance of the "long press":

> As Apple's expert explains, "in order to detect a structure and invoke the routines that display a pop-up menu of linked actions [such as "Dial" or "Add contact"], the user must 'long press' (*i.e.,* touch and hold without releasing) an area of the screen, at which point structures are detected . . . ." Mowry Rep. ¶ 251 (alteration added).  According to Apple, even if the user's initial selection of a structure happens before the system detects the structure, the user makes another "selection" through a long press, an action that is completed after the user initially touches the screen and the structure is detected. *See* Mowry Rep. 250-51. Apple analogizes the long-press to a double tap, where the first tap triggers the detection of a structure and the second tap allows the user to select the detected structure and launch the menu of linked actions. Apple Opp. at 5. The second touch, Apple continues, "would indisputably be a 'selection of a detected structure," and the long-press is no different.
>
> The Court is satisfied that Apple's "long-press" argument establishes a genuinely disputed issue of material fact for the jury. In light of the evidence Apple has presented namely, its expert's description of the long-press functionality and analysis of the source code for that functionality, *see* Mowry Rep. ¶¶ 157-58, 250-51—a jury could conclude that the Jelly Bean Browser has the claimed "user interface enabling the selection of a detected structure."

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dkt. 1151 at 20-21 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).

242.    But unlike the long press gesture, the short tap does not have this same intentional selection.  Therefore, by removing the long press functionality, Samsung's DA1-B design around is more than colorably different.

### 2.    User Experience Alone is Irrelevant

243.    Dr. Mowry minimizes Samsung's DA1-B design around, arguing that "[i]n terms of a user's experience perspective, DA1-B is functionally equivalent to the Infringing Galaxy S III phones." (Mowry 2017 OR Rep. ¶ 103.)  But the user experience alone is irrelevant – there is no dispute that when comparing a product to claim 9 of the '647 patent, source code must be considered to ensure that the components required by the claim—that are not visible to the user—are present.  Indeed, Dr. Mowry performed source code analysis for the "analyzer server" (*id. a*t ¶ 40), "linking actions to detected structures" (*id.* at ¶ 41), "user interface" (*id.* at ¶¶ 42-43), "action processor" (*id.* at ¶ 44) and "pop-up menu" (*id.* at ¶ 45) limitations of the asserted claim.  A small change in the code could be enough to take the adjudicated products outside the scope of the claims, even if the user experience were exactly the same.  In my opinion, the changes Samsung made to the code for the DA1-B Browser application render that application more than colorably different from the functionality accused of infringing at trial.

### C.    Messenger DA1-A

244.    Samsung's DA1-A Messenger application is more than colorably different from the functionality accused of infringing at trial in several ways.[9]

---

[9]   Dr. Mowry is inconsistent in his colorable differences analysis with respect to the DA1-A design around for the Browser and Messenger applications.  To the extent Dr. Mowry raises arguments for the DA1-A Messenger application that he only raised against the DA1-A Browser application in his ongoing royalties report, or vice versa, my opinions presented herein for the Browser application would apply equally to Messenger and vice-versa.

   HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

### 1.    Samsung's Removal of Structure Pre-Detection

245.    First, Samsung removed the functionality in the Messenger application that pre-detected and hyperlinked structures upon receipt of a message.  This modification is critical to Apple's allegations regarding infringement of claim 9, because the claims require a "user interface enabling the selection of a detected structure."  It is also a significant change from the user's perspective.  Although source code – and not user experience – is key to Dr. Mowry's allegations for the '647 patent, the significance of Samsung eliminating the pre-detection and hyperlinking can be evaluated from the user experience even without resorting to a source code analysis.  In the DA1-A design around for the Messenger application, the user, and not the system, must identify a structure that the system is capable of detecting.

### 2.    Samsung's Implementation of Modified Short Tap Functionality

246.    Second, Samsung implemented a modified short tap functionality in its DA1-A design around for the Messenger application.  While the adjudicated Messenger application implemented pre-detection, the DA1-A design around for the Messenger application instead implements a context menu when a short tap is performed on a structure.  This change, too, is significant by itself.  Furthermore, by ensuring that structures are not pre-detected, and by ensuring that no detection of any structure occurs before or during the user's performance of the short tap gesture, the DA1-A design around ensures that there is no "user interface enabling the selection of a detected structure and a linked action," as required by claim 9.  As Apple and Dr. Mowry agree, "the plain and ordinary meaning of the claim limitation 'a user interface enabling the selection of a *detected* structure' requires 'the user interface to enable selection of a structure, by the user, **after** the structure has already been detected.'"  Dkt. 1151 at 20 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).  But in DA1-A, detection only occurs after selection.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**D.      Messenger DA2**

247.      Samsung's DA2 Messenger application is more than colorably different from the functionality accused of infringing because the accused context menu functionality was removed entirely.   The functionality allowing the user to select certain actions to be performed on a structure, such as "Dial" or "Add to Contacts," is no longer present anywhere in the Messenger application implementing the DA2 design around.

248.      The Messenger application now functions such that a short tap results in a default action being performed based on the selection of an item such as a phone number or an email address.   Thus, Samsung's DA2 design around, which completely removes the functionality presented to the jury and that was found to infringe, is a significant departure from the infringing functionality, and is more than colorably different.   Indeed, because the accused functionality is no longer present in the products at all, the DA2 design around is necessarily more than colorably different.

**XII.    THE PREVIOUSLY UNACCUSED MESSENGER FUNCTIONALITY INDICATES THAT SAMSUNG'S MESSENGER DESIGN AROUNDS ARE MORE THAN COLORABLY DIFFERENT**

249.      For the Messenger application, Apple has now accused, for the first time, certain functionality that is present both in the designed around applications and in the adjudicated versions of the same applications.   Specifically, for the DA1-A Messenger application, Apple now points to the ███████████ functionality, and for the DA2 Messenger application, Apple now points to the ResolverActivity menu.   Both of these functionalities, however, were present in the adjudicated products, as described in detail above in Sections VII.C and VII.D, but were not accused.   The fact that Apple and Dr. Mowry now accuse different functionality is itself indicative that this newly accused functionality is more than colorably different from the adjudicated functionality.   I understand that the colorable difference analysis is supposed to focus on changes to the elements of the adjudicated products that were alleged and proven at trial to satisfy specific

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

claim limitations. However, even if the newly accused functionality is compared to the adjudicated functionality, these functionalities are both more than colorably different.

## A.    The Unaccused ResolverActivity Functionality

250.    The previously unaccused ResolverActivity menu is significantly different from the adjudicated functionality. Rather than provide a context menu of actions linked to a detected structure – "Dial," "Add to Contacts," etc. – it instead, following the launch of a default action, in certain situations asks a user to confirm which application should be used to perform that action. This is contrary to Dr. Mowry's opinion that "[b]oth menus present actions that may be selected…." (Mowry 2017 OR Rep. ¶ 83). In fact, the ResolverActivity menu (in some circumstances) provides the user with a choice of applications for completing the single default action, which is significantly different from the context menu in the adjudicated products that presented multiple actions to potentially be performed on the structure. Dr. Mowry even acknowledges that the ResolverActivity menu "may not appear in certain instances based on user selection," as opposed to the context menu in the adjudicated products that always appeared after a short-tap selection of a structure. (Mowry 2017 OR Rep. ¶ 85). Dr. Mowry further incorrectly describes the ResolverActivity menu, claiming it presents a "pop-up menu of choices of actions to launch the structure…." (Mowry 2017 OR Rep. ¶ 85). Again, the ResolverActivity menu sometimes provides a choice of applications to complete an action, not a "choice[] of actions to launch the structure."

251.    As noted above in Section VIII.D, Dr. Mowry testified at trial that the "action" of the claims was startActivity being passed an implicit Intent. As Dr. Mowry stated in his 2013 expert report:

> An "explicit" Intent is an Intent object where the "component" field has been set to indicate a specific class (usually internal to the same application) that is to be launched when startActivity() is called. In contrast, "implicit" Intents are typically used to launch external applications; they do not specify a class to launch, but rather they use the resolveActivity() method (which I identified as being part of the action processor) to determine the preferred activity to be launched.

The use of implicit Intents satisfies the "linking" element of the asserted claims. First, ***the "action", or "computer subroutine that causes the CPU to perform a sequence of operations on that detected structure" in the Accused Products is startActivity()***, which uses the data in its input parameter (an implicit Intent object) along with a call to resolveActivity() to perform the following sequence of operations on that detected structure: First, it causes the Android system to *launch* the user's preferred application (aka "activity") for performing the operation that was described in the context menu, and, second, it passes the value of the detected structure as input to that application. Hence, there is a "link" (or "specified connection") between the detected structures and startActivity().

Second, the implicit Intent objects that are passed to startActivity() correspond exactly to the level of detail that is presented to the user in the context menu of linked candidate actions as required by claim 1. For example, when the user selects a detected email address in the Accused Products, the context menu asks whether the user would like to "Send email." Although the context menu does not ask whether the user would like to "Send email with Gmail" or "Send email with Email" such level of detail is not required by the "linking actions" limitation of claim 1. Indeed, by choosing to "Send email", the user selects the candidate action of launching their preferred email application (whatever that may be) to start composing an email message to the detected email address. ***If the user has multiple email applications installed on their phone and has not chosen a default application for composing email messages, the fact that the user may be prompted to select which email application to launch does not alter the fact that the implicit Intent object that is passed as input to startActivity() is indeed causing startActivity() to accurately perform the candidate action of "Send email" that was advertised to the user***. In other words, startActivity() is "linked" as required by claim 1. The same reasoning is true for other linked candidate actions that are presented to the user in the Accused Products for other types of detected structures: e.g., for a detected phone number, the linked candidate actions are described in the context menu simply as "Dial," "Add Contact," etc. They do not specify a particular Android activity that is to be used to perform those operations. Hence the implicit Intent object faithfully represents the level of detail that the user has requested when it is passed as input to startActivity(), which satisfies claim 1.

(Mowry 2013 Rep. ¶¶ 239-241 (emphasis added).)

Dr. Mowry was clear in his August 12, 2013 expert report: the invocation of startActivity, prior to the creation of the ResolverActivity menu, is the action. (*Id.*) Moreover, selecting "which email application to launch does not alter the fact that the implicit Intent object that is passed as an input to startActivity() is indeed causing startActivity() to accurately perform the candidate action." (*Id.*) Dr. Mowry previously opined that startActivity performs the "candidate action" and satisfies the action limitation; Dr. Mowry also opined that, even if ResolverActivity presented an interim step that allowed the user to select a particular email application to send the email, ResolverActivity

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   alone did not satisfy the claim limitation.  Instead, Dr. Mowry opined that it was "startActivity"

2   that performed the candidate action of "Send email."

3       252.    In addition, the fact that Dr. Mowry is relying on the ResolverActivity functionality

4   for his opinions concerning DA2 shows that the DA2 design around is more than colorably

5   different.  If DA2 were not more than colorably different, Dr. Mowry would not have any reason

6   to make these new allegations regarding the previously unaccused ResolverActivity menu.

7       **B.    The Unaccused** ███████████████

8       253.    The ████████████ functionality is significantly different from the adjudicated

9   functionality that was presented at trial.  The biggest reason for this difference is that, as explained

10  above in Section X.B, the ████████████ functionality does not include a pop-up menu.  It lacks

11  a pop-up menu of any kind and, because the pop-up menu is the limitation of claim 9 that was used

12  to distinguish the prior art, is therefore significantly different from the accused functionality.

13      254.    In addition, the fact that Dr. Mowry is relying on ████████████ for his opinions

14  concerning DA1-A shows that the DA1-A design around is more than colorably different.  If DA1-

15  A were not more than colorably different, Dr. Mowry would not have any reason to make these

16  new unfounded allegations regarding the previously unaccused ████████████

17      255.    Further, it is worth noting that this previously unaccused functionality is part of the

18  3GPP industry standard.  *See* 3GPP TX 23.038 v9.1.1 (2010-02).  According to the standard:

19          When a mobile terminated message is class 0 and the MS has the capability of
20          displaying short messages, the MS shall display the message immediately and send
            an acknowledgement to the SC when the message has successfully reached the MS
21          irrespective of whether there is memory available in the (U)SIMorME. The
            message shall not be automatically stored in the (U)SIM orME.
22
23          The ME may make provision through MMI for the user to selectively prevent the
            message from being displayed
24          immediately.

25  3GPP TX 23.038 v9.1.1 (2010-02) at 9-10.

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5    **XIII.   SAMSUNG'S DESIGN AROUNDS DO NOT INFRINGE**

6           257.    Even if Samsung's design arounds are found to be not more than colorably different

7    from the accused infringing functionality – and as explained above, in my opinion they are more

8    than colorably different – I understand that the inquiry is not at an end.  I understand that the next

9    step in this inquiry is whether the design around infringes claim 9.  I understand that this inquiry

10   should focus on the design arounds to the accused functionality, and not on other functionality

11   included in the adjudicated devices but not previously accused.

12          **A.       Browser DA1-A**

13          258.    As shown above, claim 9 depends from claim 1, which requires "a user interface

14   enabling the selection of a detected structure."  I understand that the Court confirmed the plain and

15   ordinary meaning of this phrase: "[t]he parties agree that the plain and ordinary meaning of the

16   claim limitation 'a user interface enabling the selection of a *detected* structure' requires 'the user

17   interface to enable selection of a structure, by the user, **after** the structure has already been

18   detected.'  Reply Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647 at ¶

19   217 (ECF No. 805-14) (emphasis in original)."  Dkt. 1151 at 20 (1/21/14 Order Granting-In-Part

20   And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's

21   Motion for Partial Summary Judgment).[10]

22

23

24   [10]   Apple in its supplemental response to Samsung's interrogatory concerning validity of the
     '647 patent similarly stated that "[t]he plain and ordinary meaning of 'a user interface enabling
25   the selection of a detected structure' requires that the user interface to enable selection of a
     structure that has already been detected."  (Apple's July 15, 2013 Supp. Responses to Samsung's
26   Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39 and 41) at 126).

27

28
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
     REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

259.   The DA1-A design around does not infringe claim 9 of the '647 patent because the user interface does not enable the selection of a detected structure.  In the DA1-A design around, no detection occurs prior to selection.  Hence, when a user places his or her finger on the screen, there has been no detection.  Specifically, in the DA1-A design around, no detection occurs while the user's finger is on the screen, and the subroutines that ultimately begin detection are only invoked after the user removes his or her finger from the screen.  Indeed, Dr. Mowry acknowledges that products with Browser DA1-A "do not invoke the detector functions until after 'finger up'." (Mowry 2017 OR Rep. ¶ 137).  Thus, while Dr. Mowry disputes when the detection process begins (see below ¶ 260), there is no dispute that the detection process is not complete until after the user removes his or her finger from the screen.  Thus, a user is unable to select a "detected structure."

260.   Dr. Mowry's current opinion that the Browser DA1-A functionality satisfies the "user interface enabling the selection of a detected structure" limitation is contrary to a number of previous arguments that he and Apple have made.

261.   At the preliminary injunction phase in this case, Dr. Mowry emphasized the importance of detection before selection in seeking to distinguish the Pandit prior art.  Among other things, Dr. Mowry asserted that:

> Pandit does not disclose "a user interface enabling the selection of a detected structure" because Pandit requires that a user manually select text **before** Pandit attempts to recognize that text as performing to a particular class. This reverses the steps disclosed in the '647 patent in a material, and critical, way.

Mowry May 2012 Reply Decl. ¶ 26 (emphasis in original).  Dr. Mowry further asserted that:

> Pandit also does not disclose "user interface" program routines "enabling the selection of a detected structure." The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires the user interface to enable selection of a structure, by the user, **after** the structure has already been detected. Pandit, by contrast, reverses these steps. For example, Dr. Cohen cites to one portion of Pandit that discusses the invention "recogniz[ing]" text that the user has previously "accented", or selected. Cohen Decl., ¶ 217 (quoting '636 Patent 2:3-23). Dr. Cohen thus argues that the above element of claim 1 is satisfied when (1) the user

first selects undetected text and, (2) *after* such selection, structures are detected in that text. This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure *after* the system identifies such structures for the user. Pandit, therefore, does not disclose picking or choosing a detected structure but rather accenting (i.e., manually selecting) undetected text.

(Mowry May 2012 Reply Decl. ¶ 217 (emphasis in original).)  The DA1-A functionality, in which detection does not occur until after selection of a structure, is just like the functionality disclosed in Pandit that Dr. Mowry indicated does not satisfy claim 1 (and consequently claim 9).

262.   During summary judgment briefing, I understand Apple argued that selecting via a long press gesture (while detection purportedly occurs during the long press gesture) was key to Apple's infringement arguments:  "the system enables the user to make a conscious decision to select that structure by holding his or her press in order to bring up the menu of candidate actions." (Apple MSJ Opp. at 4.)

263.   In its decision on summary judgment, the Court described and expressly relied on Apple's arguments concerning the importance of the "long press":

As Apple's expert explains, "in order to detect a structure and invoke the routines that display a pop-up menu of linked actions [such as "Dial" or "Add contact"], the user must 'long press' (*i.e.,* touch and hold without releasing) an area of the screen, at which point structures are detected . . . ." Mowry Rep. ¶ 251 (alteration added).  According to Apple, even if the user's initial selection of a structure happens before the system detects the structure, the user makes another "selection" through a long press, an action that is completed after the user initially touches the screen and the structure is detected. *See* Mowry Rep. 250-51. Apple analogizes the long-press to a double tap, where the first tap triggers the detection of a structure and the second tap allows the user to select the detected structure and launch the menu of linked actions. Apple Opp. at 5. The second touch, Apple continues, "would indisputably be a 'selection of a detected structure," and the long-press is no different.

The Court is satisfied that Apple's "long-press" argument establishes a genuinely disputed issue of material fact for the jury. In light of the evidence Apple has presented namely, its expert's description of the long-press functionality and analysis of the source code for that functionality,

> *see* Mowry Rep. ¶¶ 157-58, 250-51—a jury could conclude that the Jelly Bean Browser has the claimed "user interface enabling the selection of a detected structure."

Dkt. 1151 at 20-21 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).

264.   Dr. Mowry ignores these prior assertions and decisions, arguing now that the distinction between a short tap and a long press is irrelevant, and all that matters is that "the [detection] process…starts with 'finger down'":

> Because there is no pre-detection in either the Infringing Galaxy S III or the DA1-A Browser products, the detection process does not begin until after the user touches the relevant structure with his or her finger (or similar instrument). In both instances, upon a "finger down" event, a timer is set that, after "finger up," will help determine if a contextual pop-up menu will be displayed. In both instances, the process that includes detection and display of a contextual pop-up menu starts with "finger down."

> (Mowry 2017 OR Rep. ¶ 97; *see also* ¶¶ 136-137 ("…the process of determining 'finger up' (and invoking detector functions) begins with 'finger down' (as in the infringing Galaxy S III) and detection is done instantaneously (as in the infringing Galaxy S III).".)

265.   Dr. Mowry's reliance on the timer as initiating the detection process is misplaced. In particular, Dr. Mowry's alleged nexus between the timer and the detection process is not manifest in the source code. If the touch is longer than that timer, the system recognizes that a long press has been performed, and thereafter proceeds with the functionality related to the long press gesture.  In the DA1-A design around, if the user holds his or her finger down long enough so that the timer expires (i.e., long press gesture), no detection occurs.  Only if

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

the user picks a finger up before the timer expires, indicating completion of a short tap, does the detection process start.  Thus, Dr. Mowry's implication that detection "starts with 'finger down'" is simply incorrect.  Detection starts with finger up – not finger down.  Furthermore, even if one were to (incorrectly) assume that the detection process begins as soon as the user places his or her finger on the screen, that process would not be completed until after the user removes his or her finger from the screen, meaning that there is no way for the DA1-A functionality to satisfy the user interface limitation of claims 1 and 9 requiring enabling the selection of a detected structure.

266.    Notably, Dr. Mowry does not assert that Browser DA1-A literally infringes the claims of the '647 patent, relying instead on just the doctrine of equivalents.  (Mowry 2017 OR Rep. ¶ 135.)  This is particularly relevant because not only did Dr. Mowry not present any infringement theories under the doctrine of equivalents at trial but, as I understand it, Samsung moved to strike those theories because they were not properly asserted in Apple's infringement contentions and, in response, Apple agreed to drop them.[11]  In fact, when Dr. Mowry states that in his original infringement expert report he indicated that "detection coinciding with, or immediately after, selection satisfies this limitation under the doctrine of equivalents…" (Mowry 2017 OR Rep. ¶ 136), he is citing to the very paragraphs that were withdrawn.

267.    I understand under the law that that the range of equivalents is also limited by the prior art to prohibit the patent owner from extending the scope of the claim to cover the prior art.  Dr. Mowry previously distinguished the "user interface" limitations of claim 1 (and 9) from the Pandit prior art reference by arguing that "Pandit does not disclose 'a user interface enabling the selection of a detected structure' because Pandit requires that a user manually select text *before* Pandit attempts to recognize that text as performing to a particular class. This reverses the steps disclosed in the '647 patent in a material, and critical, way."  Mowry May 2012 Reply Decl. ¶ 26

---

[11]   (Dkt. 1056 at 3 n. 4 ("Both Apple and Samsung agree to withdraw all doctrine of equivalents and structural equivalents arguments under Section 112(f) in their respective expert reports that are subject of the parties' pending motions to strike.").)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1    (emphasis in original).  Dr. Mowry now argues that "detection coinciding with, or immediately

2    after, selection satisfies this limitation under the doctrine of equivalents because the limitation and

3    the corresponding components in Samsung's products are insubstantially different." (Mowry 2017

4    OR Rep. ¶ 136).  This is improper under the law, as I understand it, because Dr. Mowry is

5    attempting under the doctrine of equivalents to extend the scope of the claim to cover the prior art.

6         268.    Regardless of whether Apple's doctrine of equivalents infringement theories are

7    proper at this stage, in my opinion the DA1-A design around does not infringe claim 9 under the

8    doctrine of equivalents.  I understand that a claim may be infringed under the doctrine of

9    equivalents if the differences between the accused product and the claims are insubstantial for each

10   claim limitation.  One test used to determine whether differences are insubstantial is to determine

11   whether an accused element performs substantially the same function, in substantially the same

12   way, to obtain substantially the same results of the claimed limitation.

13        269.    It is my opinion that the design of the DA1-A design around is antithetical to and

14   the opposite of the claimed limitation.  Claims 1 and 9 of the '647 patent require that a structure

15   be detected prior to selection, so that a user might know which structures in, for example a web

16   page, might be interacted with.  The DA1-A design around does not do this; to the contrary, the

17   DA1-A design around ensures that detection never occurs prior to the completion of a short tap

18   gesture.

19        270.    In my opinion, the DA1-A design around performs a different function than the one

20   recited by the claim:  it prevents a user from selecting a detected structure rather than enabling the

21   user to do so.  The way that the DA1-A design around facilitates this function is entirely different

22   from the claim limitation, because detection occurs after selection.  For instance, as discussed

23   above, when a user places his or her finger on the screen, there has been no detection, no detection

24   occurs while the user's finger is on the screen, and the subroutines that ultimately begin detection

25   are only invoked after the user removes his or her finger from the screen.  *See* paragraphs 167-172,

26

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

above.  The result is also necessarily different because what the interface presents to the user, and what the user selects, is not a "detected structure."  (*Id.*)

271.    I note again that, when Dr. Mowry previously sought to distinguish the Pandit prior art, he agreed that an interface with selection prior to detection was significantly different than the invention claimed in the '647 patent.  In particular, Dr. Mowry argued that Pandit "does not disclose 'a user interface enabling the selection of a detected structure' because Pandit requires that a user manually select text ***before*** Pandit attempts to recognize that text as performing to a particular class."  (Mowry May 2012 Reply Decl. ¶ 26.)  Dr. Mowry further stated that "[t]his reverses the steps disclosed in the '647 patent in a material, and critical, way."  (*Id.*)  These statements directly contradict Dr. Mowry's opinion that "detection coinciding with, or immediately after, selection satisfies this limitation under the doctrine of equivalents because the limitation and the corresponding components in Samsung's products are insubstantially different."  (Mowry 2017 OR Rep. ¶ 136).

272.    Moreover, if Dr. Mowry's infringement theory were adopted, it would be as if the word "detected" was not a part of the claim limitation at all.  Under Dr. Mowry's interpretation, the claim limitation would simply read: "a user interface enabling the selection of a ~~detected~~ structure."

### B.    Browser DA1-B

273.    The Browser DA1-B design around does not infringe claim 9 of the '647 patent because the user interface does not enable the selection of a detected structure.  In the DA1-B design around, no detection occurs prior to selection.  Hence, when a user places a finger on the screen, there has been no detection.  And in the DA1-B design around, because detection is initiated by a short press gesture rather than a long press, there is no "conscious decision to select [a] structure by holding" a long press.

274.    As discussed above, at the preliminary injunction phase in this case, Dr. Mowry emphasized the importance of detection before selection in seeking to distinguish the Pandit prior

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

art.  *See* Mowry May 2012 Reply Decl. ¶¶ 26. 217.  In addition, during summary judgment briefing, Apple argued selecting via a long press gesture (while detection occurs during the long press gesture) was key to Apple's infringement arguments:  "the system enables the user to make a conscious decision to select that structure by holding his or her press in order to bring up the menu of candidate actions."  (Apple MSJ Opp. at 4.)  In its decision on summary judgment, the Court described and expressly relied on Apple's arguments concerning the importance of the "long press."  Dkt. 1151 at 20-21 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).

275.    Dr. Mowry ignores these prior admissions, arguing now that "the detection function in DA1-B Products starts immediately upon 'finger down' and is called even before 'finger up' occurs. The user is therefore selecting a detected structure."  (Mowry 2017 OR Rep. ¶ 150.)  Dr. Mowry offers no evidence that the detection process is complete by the time the user removes his or her finger from the screen.  Dr. Mowry also states that "the timing of the detection functions in the DA1-B Products operates the same way in which the infringing Galaxy S III" (Mowry 2017 OR Rep. ¶ 150), but this is inaccurate—the Browser application in the Galaxy S III used a long press gesture whereas the DA1-B Products use a short tap, and Dr. Mowry offers no evidence that the detection process is complete by the time of completion of the short tap.  Dr. Mowry's infringement allegation also conflicts with Apple's prior admissions that only by holding a finger on a structure via a long press can the user make a "conscious decision" to select a structure. Indeed, according to Apple, it is not enough that detection start after finger down; rather, there must be a "conscious decision" to select, which is not possible without holding a long press.  (*See* Apple MSJ Opp. at 4.)  Therefore, the DA1-B design does not infringe claim 9 of the '647 patent.

276.    With respect to DA1-B, Dr. Mowry also asserts infringement of claim 9 of the '647 patent under the doctrine of equivalents.  This is particularly relevant because not only did Dr. Mowry not present any infringement theories under the doctrine of equivalents at trial but, as I

1  understand it, Samsung moved to strike those theories because they were not properly asserted in

2  Apple's infringement contentions and, in response, Apple agreed to drop them.[12]

3      277.    Regardless of whether Apple's doctrine of equivalents infringement theories are

4  proper at this stage, in my opinion the DA1-B design around does not infringe claim 9 under the

5  doctrine of equivalents.

6      278.    It is my opinion that the design of the DA1-B design around is substantially

7  different from the claimed limitation.  Claims 1 and 9 of the '647 patent require that a structure be

8  detected prior to selection, so that a user might know which structures in, for example a web page,

9  might be interacted with.  The DA1-B design around does not do this; to the contrary, the DA1-B

10  design around ensures that detection never occurs prior to the user placing his or her finger on the

11  screen.

12      279.    In my opinion, the DA1-B design around performs a different function than the one

13  recited by the claim:  it prevents a user from selecting a detected structure rather than enabling the

14  user to do so.  The way that the DA1-B design around facilitates this function is entirely different

15  from the claim limitation, because detection occurs after selection.  For instance, as discussed

16  above, when a user places a finger on the screen, there has been no detection, and Dr. Mowry

17  offers no evidence that the detection process is complete by the time the user removes his or her

18  finger from the screen.  *See* paragraphs 182-186, above.  The result is also necessarily different

19  because what the interface presents to the user, and what the user selects, is not a "detected

20  structure."  (*Id.*)

21      280.    I note that, when Dr. Mowry previously sought to distinguish the Pandit prior art,

22  he agreed that an interface with selection prior to detection was significantly different than the

23  invention claimed in the '647 patent.  In particular, Dr. Mowry argued that Pandit "does not

24

---

25  [12]   (Dkt. 1056 at 3 n. 4 ("Both Apple and Samsung agree to withdraw all doctrine of equivalents
26  and structural equivalents arguments under Section 112(f) in their respective expert reports that
   are subject of the parties' pending motions to strike.").)

27

1  disclose 'a user interface enabling the selection of a detected structure' because Pandit requires

2  that a user manually select text *before* Pandit attempts to recognize that text as performing to a

3  particular class." (Mowry May 2012 Reply Decl. ¶ 26 (emphasis in original).) Dr. Mowry further

4  stated that "[t]his reverses the steps disclosed in the '647 patent in a material, and critical, way."

5  *Id.*

6  ## C.  Messenger DA1-A

7  281.   As shown above, claim 9 depends from claim 1, which requires "a user interface

8  enabling the selection of a detected structure." I understand that the Court confirmed the plain and

9  ordinary meaning of this phrase: "[t]he parties agree that the plain and ordinary meaning of the

10  claim limitation 'a user interface enabling the selection of a *detected* structure' requires 'the user

11  interface to enable selection of a structure, by the user, *after* the structure has already been

12  detected.' Reply Declaration of Dr. Todd C. Mowry Concerning U.S. Patent No. 5,946,647 at ¶

13  217 (ECF No. 805-14) (emphasis in original)." Dkt. 1151 at 20 (1/21/14 Order Granting-In-Part

14  And Denying-In-Part Apple's Motion for Partial Summary Judgment and Denying Samsung's

15  Motion for Partial Summary Judgment).[13]

16  282.   The DA1-A design around does not infringe claim 9 of the '647 patent because the

17  user interface does not enable the selection of a detected structure. In the DA1-A design around,

18  no detection occurs prior to selection. Hence, when a user places his or her finger on the screen,

19  there has been no detection. Specifically, in the DA1-A design around, while the user's finger is

20  on the screen, no detection is occurring, and the subroutines that ultimately begin detection have

21  not yet been invoked. Indeed, Dr. Mowry acknowledges that products with DA1-A "do not invoke

22  the detector functions until after 'finger up'." Mowry 2017 OR Rep. ¶ 137. Thus, while Dr.

23

24  [13]   Apple in its supplemental response to Samsung's interrogatory concerning validity of the

25  '647 patent similarly stated that "[t]he plain and ordinary meaning of 'a user interface enabling the selection of a detected structure' requires that the user interface to enable selection of a

26  structure that has already been detected." (Apple's July 15, 2013 Supp. Responses to Samsung's Interrogatories (Nos. 1, 5, 7, 8, 10, 14, 15, 25, 26, 27, 39 and 41) at 126).

27

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

28  REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

Mowry disputes when the detection process begins, there is no dispute that the detection process is not complete until after the user removes his or her finger from the screen. Thus, a user is unable to select a "detected structure."

283.    Dr. Mowry's current opinion that the Messenger DA1-A functionality satisfies the "user interface enabling the selection of a detected structure" limitation is contrary to a number of previous arguments that he and Apple have made.

284.    At the preliminary injunction phase in this case, Dr. Mowry emphasized the importance of detection before selection in seeking to distinguish the Pandit prior art.  Among other things, Dr. Mowry asserted that:

> Pandit does not disclose "a user interface enabling the selection of a detected structure" because Pandit requires that a user manually select text *before* Pandit attempts to recognize that text as performing to a particular class. This reverses the steps disclosed in the '647 patent in a material, and critical, way.

Mowry May 2012 Reply Decl. ¶ 26.  Dr. Mowry further asserted that:

> Pandit also does not disclose "user interface" program routines "enabling the selection of a detected structure." The plain and ordinary meaning of "a user interface enabling the selection of a detected structure" requires the user interface to enable selection of a structure, by the user, *after* the structure has already been detected. Pandit, by contrast, reverses these steps. For example, Dr. Cohen cites to one portion of Pandit that discusses the invention "recogniz[ing]" text that the user has previously "accented", or selected. Cohen Decl., ¶ 217 (quoting '636 Patent 2:3-23). Dr. Cohen thus argues that the above element of claim 1 is satisfied when (1) the user first selects undetected text and, (2) *after* such selection, structures are detected in that text. This argument makes no sense in view of the plain language of claim 1, which, as explained, requires that the user be able to pick or choose a detected structure *after* the system identifies such structures for the user. Pandit, therefore, does not disclose picking or choosing a detected structure but rather accenting (i.e., manually selecting) undetected text.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1   (Mowry May 2012 Reply Decl. ¶ 217 (emphasis in original).)  The DA1-A functionality, in which

2   detection does not occur until selection of a structure, is just like the functionality disclosed in

3   Pandit that Dr. Mowry indicated does not satisfy claim 1 (and consequently claim 9).

4        285.    During summary judgment briefing, I understand Apple argued that selecting via a

5   long press gesture (while detection purportedly occurs during the long press gesture) was key to

6   Apple's infringement arguments:  "the system enables the user to make a conscious decision to

7   select that structure by holding his or her press in order to bring up the menu of candidate actions."

8   (Apple MSJ Opp. at 4.)

9        286.    In its decision on summary judgment, the Court described and expressly relied on

10  Apple's arguments concerning the importance of the "long press":

11              As Apple's expert explains, "in order to detect a structure and invoke the
                routines that display a pop-up menu of linked actions [such as "Dial" or
12              "Add contact"], the user must 'long press' (*i.e.,* touch and hold without
                releasing) an area of the screen, at which point structures are detected
13              . . . ." Mowry Rep. ¶ 251 (alteration added).  According to Apple, even if
                the user's initial selection of a structure happens before the system detects
14              the structure, the user makes another "selection" through a long press, an
                action that is completed after the user initially touches the screen and the
15              structure is detected. *See* Mowry Rep. 250-51. Apple analogizes the long-
                press to a double tap, where the first tap triggers the detection of a
16              structure and the second tap allows the user to select the detected structure
                and launch the menu of linked actions. Apple Opp. at 5. The second touch,
17              Apple continues, "would indisputably be a 'selection of a detected
                structure,'" and the long-press is no different.
18

19              The Court is satisfied that Apple's "long-press" argument establishes a
20              genuinely disputed issue of material fact for the jury. In light of the
                evidence Apple has presented namely, its expert's description of the long-
21              press functionality and analysis of the source code for that functionality,
                see Mowry Rep. ¶¶ 157-58, 250-51—a jury could conclude that the Jelly
22              Bean Browser has the claimed "user interface enabling the selection of a
                detected structure."
23

24

25  Dkt. 1151 at 20-21 (1/21/14 Order Granting-In-Part And Denying-In-Part Apple's Motion for

26  Partial Summary Judgment and Denying Samsung's Motion for Partial Summary Judgment).

27

28

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

287.   Dr. Mowry ignores these prior assertions and decisions, arguing now that the distinction between a short tap and a long press is irrelevant, and all that matters is that "the [detection] process…starts with 'finger down'":

> First, ███████████████████████████████ it is my opinion that the DA1-A Messenger products are covered by this limitation under the doctrine of equivalents for the same reasons I set out for the DA1-A Browser products below.
>
> (Mowry 2017 OR Rep. ¶ 132.)
>
> Because there is no pre-detection in either the Infringing Galaxy S III or the DA1-A Browser products, the detection process does not begin until after the user touches the relevant structure with his or her finger (or similar instrument). In both instances, upon a "finger down" event, a timer is set that, after "finger up," will help determine if a contextual pop-up menu will be displayed. In both instances, the process that includes detection and display of a contextual pop-up menu starts with "finger down."
>
> (Mowry 2017 OR Rep. ¶ 97; *see also* ¶¶ 136-137.)

288.   Dr. Mowry's reliance on the timer as initiating the detection process is misplaced, with respect to both Browser and Messenger. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ If the touch is longer than that timer, the system recognizes that a long press has been performed, and thereafter proceeds with the functionality related to the long press gesture.  In the DA1-A design around, if the user holds his or her finger down long enough so that the timer expires (i.e., long press gesture), no detection occurs.  Only if the user picks a finger up before the timer expires, indicating completion of a short tap, does the detection process start.  Thus, Dr. Mowry's implication that detection "starts with 'finger down'" is simply incorrect.  Detection starts with finger up – not finger down.  Furthermore, even if one were to (incorrectly) assume that the detection process begins as soon as the user places

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1    his or her finger on the screen, that process would not be completed until after the user removes

2    his or her finger from the screen, meaning that there is no way for the DA1-A functionality to

3    satisfy the user interface limitation of claims 1 and 9 requiring enabling the selection of a detected

4    structure.

5         289.    Notably, Dr. Mowry does not assert that, ███████████████████████████

6    ██████████  Messenger DA1-A literally infringes the claims of the '647 patent, relying instead on

7    just the doctrine of equivalents.  (Mowry 2017 OR Rep. ¶ 132.)  This is particularly relevant

8    because not only did Dr. Mowry not present any infringement theories under the doctrine of

9    equivalents at trial but, as I understand it, Samsung moved to strike those theories because they

10   were not properly asserted in Apple's infringement contentions and, in response, Apple agreed to

11   drop them.[14]  In fact, when Dr. Mowry states (for the DA1-A Browser application) that in his

12   original infringement expert report he indicated that "detection coinciding with, or immediately

13   after, selection satisfies this limitation under the doctrine of equivalents…" (Mowry 2017 OR Rep.

14   ¶ 136), he is citing to the very paragraphs that were withdrawn.

15        290.    I understand under the law that that the range of equivalents is also limited by the

16   prior art to prohibit the patent owner from extending the scope of the claim to cover the prior art.

17   Dr. Mowry previously distinguished the "user interface" limitations of claim 1 (and 9) from the

18   Pandit prior art reference by arguing that "Pandit does not disclose 'a user interface enabling the

19   selection of a detected structure' because Pandit requires that a user manually select text *before*

20   Pandit attempts to recognize that text as performing to a particular class. This reverses the steps

21   disclosed in the '647 patent in a material, and critical, way."  Mowry May 2012 Reply Decl. ¶ 26

22   (emphasis in original).  Dr. Mowry now argues that "detection coinciding with, or immediately

23   after, selection satisfies this limitation under the doctrine of equivalents because the limitation and

24

---

25   [14]   (Dkt. 1056 at 3 n. 4 ("Both Apple and Samsung agree to withdraw all doctrine of equivalents
26   and structural equivalents arguments under Section 112(f) in their respective expert reports that
     are subject of the parties' pending motions to strike.").)

27

28
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
     REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

the corresponding components in Samsung's products are insubstantially different." (Mowry 2017 OR Rep. ¶ 136).   This is improper under the law, as I understand it, because Dr. Mowry is attempting under the doctrine of equivalents to extend the scope of the claim to cover the prior art.

291.   Regardless of whether Apple's doctrine of equivalents infringement theories are proper at this stage, in my opinion the DA1-A design around does not infringe claim 9 under the doctrine of equivalents.

292.   It is my opinion that the design of the DA1-A design around is antithetical to and the opposite of the claimed limitation.   Claims 1 and 9 of the '647 patent require that a structure be detected prior to selection, so that a user might know which structures in, for example a web page, might be interacted with.   The DA1-A design around does not do this; to the contrary, the DA1-A design around ensures that detection never occurs prior to completion of a short tap gesture.

293.   In my opinion, the DA1-A design around performs a different function than the one recited by the claim:  it prevents a user from selecting a detected structure rather than enabling the user to do so.   The way that the DA1-A design around facilitates this function is entirely different from the claim limitation, because detection occurs after selection.   For instance, as discussed above, when a user places his or her finger on the screen, there has been no detection, no detection occurs while the user's finger is on the screen, and the subroutines that ultimately begin detection are only invoked after the user removes his or her finger from the screen. *See* paragraphs 193-194, above.   The result is also necessarily different because what the interface presents to the user, and what the user selects, is not a "detected structure."   (Id.)

294.   I note again that, when Dr. Mowry previously sought to distinguish the Pandit prior art, he agreed that an interface with selection prior to detection was significantly different than the invention claimed in the '647 patent.   In particular, Dr. Mowry argued that Pandit "does not disclose 'a user interface enabling the selection of a detected structure' because Pandit requires that a user manually select text ***before*** Pandit attempts to recognize that text as performing to a

172

1  particular class." (Mowry May 2012 Reply Decl. ¶ 26 (emphasis in original).)  Dr. Mowry further

2  stated that "[t]his reverses the steps disclosed in the '647 patent in a material, and critical, way."

3  (*Id.*)  These statements directly contradict Dr. Mowry's opinion that "detection coinciding with, or

4  immediately after, selection satisfies this limitation under the doctrine of equivalents because the

5  limitation and the corresponding components in Samsung's products are insubstantially different."

6  (Mowry 2017 OR Rep. ¶ 136).

7       295.    Moreover, if Dr. Mowry's infringement theory were adopted, it would be as if the

8  word "detected" was not a part of the claim limitation at all.  Under Dr. Mowry's interpretation,

9  the claim limitation would simply read: "a user interface enabling the selection of a ~~detected~~

10  structure."

11       296.    Dr. Mowry also asserts that ███████████ infringe claim 9.  (Mowry 2017 OR

12  Rep. ¶ 133.)  Because this functionality is not actually part of DA1-A, I address it separately below.

13      **D.**    **Messenger DA2**

14       297.    As shown above, claim 9 requires "a pop-up menu of the linked actions."  But in

15  the DA2 design around, there is no pop-up menu, let alone a pop-up menu with multiple linked

16  actions.  As described at length above in Section VIII.F, Apple and Dr. Mowry agree that multiple

17  actions – hence, "linked actions," plural – are required by claim 9.  As a consequence, the single-

18  action-per-structure functionality implemented in DA2 (which Apple also agrees does not infringe

19  claim 9, *see* Section VIII.C, *supra*), in which there is only a single default action for each structure,

20  and no pop-up menu at all, does not infringe claim 9 of the '647 patent.

21       298.    Dr. Mowry does not assert that this functionality infringes at all, either literally or

22  under the doctrine of equivalents.  (*See* Mowry 2017 OR Rep. ¶¶ 121-130.)  Instead, Dr. Mowry

23  asserts that the ResolverActivity menu infringes claim 9.  (Mowry 2017 OR Rep. ¶¶ 124-130.)

24  Because this functionality is not actually part of DA2, I address it separately below.  It is my

25  opinion, however, that the actual substance of Samsung's DA2 design around does not infringe

26  claim 9.

27

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
28  REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

## XIV. THE PREVIOUSLY UNACCUSED MESSENGER FUNCTIONALITY DOES NOT INFRINGE CLAIM 9 OF THE '647 PATENT

### A. ██████████████ – Now Asserted With Respect to DA1-A Messenger

299. As demonstrated above in Section X.B, the █████████ functionality does not infringe claim 9 of the '647 patent because it does not generate a pop-up menu of linked actions when a structure is selected.

██████████████████████████████████████ Instead, the handling of █████████████ provides only a single-action-per-structure functionality, which Apple has admitted does not infringe claim 9. Thus, the ██████ functionality does not infringe, either literally or under the doctrine of equivalents, because it does not include a pop-up menu of linked actions, as required by claim 9.

300. Moreover, I understand that ██████████████ are an atypical type of message that are rarely, if ever, used.

### B. ResolverActivity Menu – Now Asserted With Respect to DA2

301. As demonstrated above in Section X.A, the ResolverActivity menu is a menu that sometimes appears after a user has initiated an action, providing a user with a choice for which application to use to complete an action. The ResolverActivity menu is a menu that appears only when a user has multiple applications that are capable of completing a selected action, but has not already set a default. If there is only one option (as is often the case with the Dialer, at the outset) or if the user has set a default (by selecting "Always" instead of "Just once"), the menu is not even

174

shown.  The ResolverActivity menu is titled "Complete action using," and is shown several times in Dr. Mowry's ongoing royalties report:

  

**(Mowry 2017 OR Rep. ¶ 52)     (Mowry 2017 OR Rep. ¶ 52)     (Mowry 2017 OR Rep. ¶ 52)**

302.     As described above in detail in Section VII.C, the ResolverActivity menu was present in the Gingerbread versions of many devices that were initially accused by Apple and Dr. Mowry in this case.  And yet even then, Dr. Mowry addressed this functionality only for claim 1, and even then argued infringement only if just one action was required by the claim for each detected structure.  But it is undisputed that claim 9 requires multiple linked actions in a pop-up menu for a structure.

303.     Moreover, the ResolverActivity menu was present in the Jelly Bean Browser application that worked nearly identically to the DA2 Messenger application in that, following selection of a structure via a short tap gesture and the launch of a default action, in certain situations will ask a user to confirm which application should be used to perform that action.  *See* Section VII.C, *supra*.  Apple in its Opposition to Samsung's Motion for Summary Judgement stated that this functionality does not infringe claims 1 (or 9) of the '647 patent:

> A simple touch or tap in the accused Jelly Bean Browser application will not bring up the accused menu of candidate actions, contrary to Samsung's

inaccurate description and figures. *See* Samsung MSJ at 2. Instead, a mere tap on a structure will simply launch a default action (such as a "dial" action on a phone number), but it will not provide a menu "enabling the selection of . . . a linked action" as required by claim 1. For this reason, too, Apple does not accuse a simple touch action in the Jelly Bean Browser application of infringing.

(Apple MSJ Opp. at 3-4)

304.    The ResolverActivity menu does not infringe claim 9 of the '647 patent because it does not "display a pop-up menu of linked actions." The ResolverActivity menu rather can present multiple applications for completing a single action. Each of the entries in the menu represents the same single action. And that is precisely what both the title of the menu and the source code indicate.

### 1.    The ResolverActivity Menu Presents Options for a Single Action

305.    In reality, the ResolverActivity menu is nothing more than the single-action-per-structure functionality that Dr. Mowry has previously admitted does not infringe (as detailed in Section VIII.C, *supra*). Notably, Dr. Mowry ignores phone numbers when he presents the ResolverActivity menu in the DA2 Messenger application. Presumably, this is because he has repeatedly admitted that single-action-per-structure does not infringe. But it is also the case that the ResolverActivity menu can be invoked for phone numbers, and corresponding dialers, as well:

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

1
2
3
4
5
6
7
8
9
10
11
12
13



**SM-G900A Messenger, Short Tap on Phone Number
With Additional Dialer Installed**

14   306.   Moreover, Apple has never previously accused this functionality for claim 9, even

15   though it was present in the adjudicated devices.  As noted above, in his 2013 expert report Dr.

16   Mowry included the ResolverActivity menu for claim 1 for certain Gingerbread devices (with the

17   caveat that it was only relevant if a single action was required by the claims), but even then did

18   not include it for claim 9.  This comports with statements made by Dr. Mowry regarding the

19   ResolverActivity menu in his 2013 expert report.  As noted above in Section VIII.D, Dr. Mowry

20   testified at trial that the context menu in the adjudicated Messenger application contained a pop-

21   up menu of linked actions, and each of those "actions" in the context menu included startActivity

22   being passed an implicit Intent.  As Dr. Mowry stated in his 2013 expert report:

23   An "explicit" Intent is an Intent object where the "component" field has been set to
24   indicate a specific class (usually internal to the same application) that is to be launched
     when startActivity() is called.  In contrast, "implicit" Intents are typically used to launch
25   external applications; they do not specify a class to launch, but rather they use the
     resolveActivity() method (which I identified as being part of the action processor) to
26   determine the preferred activity to be launched.

27

28   REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

The use of implicit Intents satisfies the "linking" element of the asserted claims. First, ***the "action", or "computer subroutine that causes the CPU to perform a sequence of operations on that detected structure" in the Accused Products is startActivity()***, which uses the data in its input parameter (an implicit Intent object) along with a call to resolveActivity() to perform the following sequence of operations on that detected structure: First, it causes the Android system to *launch* the user's preferred application (aka "activity") for performing the operation that was described in the context menu, and, second, it passes the value of the detected structure as input to that application. Hence, there is a "link" (or "specified connection") between the detected structures and startActivity().

Second, the implicit Intent objects that are passed to startActivity() correspond exactly to the level of detail that is presented to the user in the context menu of linked candidate actions as required by claim 1. For example, when the user selects a detected email address in the Accused Products, the context menu asks whether the user would like to "Send email." Although the context menu does not ask whether the user would like to "Send email with Gmail" or "Send email with Email" such level of detail is not required by the "linking actions" limitation of claim 1. Indeed, by choosing to "Send email", the user selects the candidate action of launching their preferred email application (whatever that may be) to start composing an email message to the detected email address. ***If the user has multiple email applications installed on their phone and has not chosen a default application for composing email messages, the fact that the user may be prompted to select which email application to launch does not alter the fact that the implicit Intent object that is passed as input to startActivity() is indeed causing startActivity() to accurately perform the candidate action of "Send email" that was advertised to the user***. In other words, startActivity() is "linked" as required by claim 1. The same reasoning is true for other linked candidate actions that are presented to the user in the Accused Products for other types of detected structures: e.g., for a detected phone number, the linked candidate actions are described in the context menu simply as "Dial," "Add Contact," etc. They do not specify a particular Android activity that is to be used to perform those operations. Hence the implicit Intent object faithfully represents the level of detail that the user has requested when it is passed as input to startActivity(), which satisfies claim 1.

(Mowry 2013 Rep. ¶¶ 239-241 (emphasis added).)

307.     Dr. Mowry was clear in his 2013 expert report:   startActivity, prior to the ResolverActivity menu, is the action.   (*Id.*)   Moreover, selecting "which email application to launch does not alter the fact that the implicit Intent object that is passed as an input to startActivity() is indeed causing startActivity() to accurately perform the candidate action."   (*Id.*)

308.     Indeed, these statements from Dr. Mowry's expert report are instructive, because they include reference to the ResolverActivity menu (although do not specify it by name).   When Dr. Mowry refers to "the fact that the user may be prompted to select which email application to launch," it is the ResolverActivity menu that he is referring to.   And as Dr. Mowry makes clear,

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

the "fact that the implicit Intent object that is passed as input to startActivity() is indeed causing startActivity() to accurately perform the candidate action of 'Send email'" does not alter his conclusion that startActivity() is the action.

309.    In the case of the DA2 design around, a single-action-per-structure system is implemented and the context menu is removed, and only a single action is available for each structure.  And as noted above, there is no dispute that single-action-per-structure does not infringe claim 9 of the '647 patent.  The ResolverActivity menu presents options for completing a single action.  Each presented option is based on the single action available for the selected structure (i.e., Send Email for email, Open URL for URL, View Maps for maps) and a single Implicit intent tied to that single action.  The ResolverActivity menu does not include the previously accused functionality for the adjudicated Messenger application in which each action in the context menu has a different Implicit Intent that would be passed to startActivity.  The distinction is that the previously accused context menu for the adjudicated Messenger application contained a context menu of multiple actions, each with a different Implicit intent, whereas the ResolverActivity menu only contains a choice of activities to complete the single Implicit intent for a single action.  Dr. Mowry readily acknowledges in his 2017 expert report that the ResolverActivity menu concerns only a single action and the "activities" that can perform the action:

Thus, Dr. Mowry recognizes the distinction between the claimed "linked actions" and the ResolverActivity menu's presentation of multiple activities for performing a single action.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

310.   Dr. Mowry states that "the resolver activity pop-up menu satisfies claim 1(c)(2) because it enables the linking of an action by displaying the potential applications that can be opened to perform the action," then states that the "resolver activity pop-up menu satisfies claim 9 for the same reasons – i.e., it is a 'pop-up menu' that enables the linking of actions by displaying linked actions (e.g., send email, using Gmail, send email using Email)."  (Mowry 20137 OR Rep. ¶ 130).  But Dr. Mowry's comparison of claim 1 and claim 9 is flawed because he identifies a single action for claim 1—"it enables the linking of <u>an action</u> by displaying the potential applications that can be opened to perform the action"—but for claim 9 he refers to the choice of potential applications as "displaying linked <u>actions</u>."  This is presumably because Dr. Mowry recognizes that claim 9 requires multiple linked actions for a detected structure, and the only way he can attempt to satisfy the claim is by inconsistently referring to the "potential applications that can be opened to perform the action" as purported actions.

## 2.     The ResolverActivity Menu Does Not Create a Specified Connection

311.   The ResolverActivity menu also does not infringe claim 9 of the '647 patent because it does not "creat[e] a specified connection between each detected structure and at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure," as the construction of "linking actions to the detected structures" requires.  Included in this construction is a construction for "action": "at least one computer subroutine that causes the CPU to perform a sequence of operations on that detected structure."  Moreover, in order to infringe claim 9 of the '647 patent, there must both be a "user interface enabling the selection of a detected structure and a linked action" and "a pop-up menu of the linked actions."  The actions in the claimed user interface and the claimed pop-up menu are the same linked actions requiring a specified connection to a detected structure.

312.   As described above, however, to the extent there is any linked action in the DA2 Messenger application, that linked action – and its specified connection to a detected structure – is selected by a user when the user selects the structure in the text message itself, causing single-

180

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

action-per-structure functionality to be invoked.  Everything after that point cannot be a user interface "enabling the selection of a linked action" because selection from the ResolverActivity menu does not cause "the CPU to perform a sequence of operations on that detected structure." Instead, the "sequence of operations on [the] detected structure" is caused by the user selecting the structure and the application launching the default action prior to the display of a ResolverActivity menu.  Everything after the launch of the default action, including the ResolverActivity menu, is a later part of the "sequence of operations," but is not a "specified connection" between a detected structure, selected by a user, and a linked action.  For these same reasons, Dr. Mowry's current theories are inconsistent with the "specified connection" theories he presented to the jury at trial. Dr. Mowry, has identified no other code as the "specified connection" in the DA2 Messenger application containing the ResolverActivity menu.  Thus, Dr. Mowry offers no evidence that the ResolverActivity menu satisifies the claim under the "linking actions to the detected structures" construction, and therefore has failed to satisfy the burden of proof for proving infringement.

### 3.    The ResolverActivity Menu Lacks an Action Processor

313.   "Action processor" has been construed as "program routine(s) that perform the selected action on the detected structures."  In paragraph 119 of his ongoing royalties report, Dr. Mowry explains that at trial the "action processor routines [he] identified … were the [] startActivity() method of the ContextImpl class, the resolveActivity() method of the Intent class, and the resolveActivity() method of the PackageManager class."  (Mowry 2017 OR Rep. ¶ 119.) Dr. Mowry further explains, citing his trial testimony, that "upon a user's choice of an action from the contextual pop-up menu, an intent object gets passed to startActivity(), which along with the resolveActivity() methods will cause the launching of the action to take place.  (*Id.* (citing Trial Tr. 873:8-874:11; PDX 88.35).)  However, Dr. Mowry's infringement theories have shifted to assert that functionality other than that adjudicated at trial satisfies the "a user interface enabling the selection of a detected structure and a linked action" limitation.  The theories that Dr. Mowry

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES

presented at trial and on which he relies in his ongoing royalties report do not address the "action processor" limitation in the context of the newly accused functionality.

314.     Accordingly, Dr. Mowry has identified – in paragraph 119 of his ongoing royalties report or otherwise – no action processor in connection with his new infringement theories.  In other words, Dr. Mowry changed his infringement theory for the "user interface" and "pop-up menu" limitations to now accuse the ResolverActivity menu (which, again, was not the adjudicated functionality), but Dr. Mowry relied on his previous "action processor" allegations against the adjudicated Messenger context menu—now removed by Samsung as part of its design-around— and Dr. Mowry has offered no new opinions or proof concerning infringement of the "action processor" limitation by the ResolverActivity menu.  Thus, Dr. Mowry offers no evidence that the ResolverActivity menu satisifies the claim under the "action processor" construction, and therefore has failed to satisfy the burden of proof for proving infringement.

## XV.    MISCELLANEOUS COMMENTS

315.     My opinions are subject to change based on additional information provided or positions taken by *Apple* or Dr. Mowry, or based on additional work I may perform.

By: _____          September 29, 2017
Kevin Jeffay, Ph.D.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**
REBUTTAL EXPERT REPORT OF DR. KEVIN JEFFAY IN CONNECTION WITH ONGOING ROYALTIES