QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Kevin A. Smith (Bar No. 250814)
kevinsmith@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kathleen M. Sullivan (Bar No. 242261)
kathleensullivan@quinnemanuel.com
Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

William C. Price (Bar No. 108542)
williamprice@quinnemanuel.com
Michael T. Zeller (Cal. Bar No. 196417)
michaelzeller@quinnemanuel.com
Michael L. Fazio (Bar No. 228601)
michaelfazio@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for SAMSUNG ELECTRONICS
CO., LTD., SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
TELECOMMUNICATIONS AMERICA, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO. 12-CV-00630-LHK (NMC)<br><br>**SAMSUNG'S OPPOSITION TO APPLE'S MOTION REGARDING ONGOING ROYALTIES**<br><br>Date:  January 11, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Honorable Lucy H. Koh<br><br>**FILED UNDER SEAL** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................... 1

II.    LEGAL STANDARD ................................................................................................ 2

III.   COUNTER-STATEMENT OF FACTS ................................................................... 5

    A.    Samsung's Adjudicated Browser And Messenger Applications ............................. 5

         1.    The Adjudicated Browser Functionality ..................................................... 6

         2.    The Adjudicated Messenger Functionality ................................................. 8

    B.    Samsung's Design-Arounds ....................................................................... 9

    C.    Dr. Mowry's Analysis of Samsung's Design-Arounds ......................................... 10

IV.   ARGUMENT ........................................................................................................... 10

    A.    Samsung's DA1-A Products Are More Than Merely Colorably Different
         From The Adjudicated Products, And, If Infringement Is Considered, Do
         Not Infringe Claim 9 Of The '647 Patent .............................................................. 10

         1.    The DA1-A Browser Design-Around Reflects Significant Changes
               That Are More Than Colorably Different From The Adjudicated
               Products ..................................................................................................... 11

         2.    The DA1-A Messenger Design-Around Is Also More Than
               Colorably Different From The Adjudicated Products ................................. 14

         3.    The DA1-A Design-Arounds Fail To Satisfy At Least The "User
               Interface" Limitation And Therefore Do Not Infringe Claim 9 Of
               The '647 Patent ......................................................................................... 15

    B.    Samsung's DA1-B Products Are More Than Merely Colorably Different
          From The Adjudicated Products, And, If Infringement Is Considered, Do
          Not Infringe Claim 9 Of The '647 Patent .............................................................. 19

         1.    The DA1-B Browser Design-Around Is More Than Colorably
               Different From The Adjudicated Products .................................................. 19

         2.    The DA1-B Design-Around Also Does Not Satisfy The "User
               Interface" Limitation And Thus Does Not Infringe Claim 9 Of The
               '647 Patent ................................................................................................. 20

    C.    Samsung's DA2 Products Are More than Colorably Different From The
         Adjudicated Products, And, If Infringement Is Considered, Do Not Infringe
         Claim 9 Of The '647 Patent ................................................................................... 21

         1.    The DA2 Messenger Design-Around Is More Than Colorably
               Different From The Adjudicated Products Because The Accused

SAMSUNG'S OPPOSITION TO APPLE'S MOTION REGARDING ONGOING ROYALTIES

Context Menu Was Removed ..................................................................... 21

2.      The DA2 Messenger Design-Around Fails To Satisfy Several Claim
        Limitations And Therefore Does Not Infringe Claim 9 of the '647
        Patent ........................................................................................................ 24

V.      CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aevoe Corp. v. AE Tech Co.*,
  2012 WL 1559768 (D. Nev. May 2, 2012) ................................................................ 15, 16

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) .................................................................... 26, 27, 28

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ............................................................................ 13

*Bicon, Inc. v. The Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ............................................................................ 27

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  2017 WL 368027 (N.D. Ill. Jan. 23, 2017) ............................................................ 15

*Creative Internet Advertising Corp. v. Yahoo! Inc.*,
  674 F. Supp. 2d 847 (E.D. Tex. 2009) .................................................................. 4

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009) ............................................................................ 19

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
  No. C 11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) .......................... 24

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  149 F.3d 1309 (Fed. Cir. 1998) ............................................................................ 18

*Freedman Seating Co. v. Am. Seating Co.*,
  420 F.3d 1350 (Fed. Cir. 2005) ............................................................................ 18

*Golden Bridge Tech., Inc. v. Apple Inc.*,
  758 F.3d 1362 (Fed. Cir. 2014) ............................................................................ 16

*Golden State Transit Corp. v. City of Los Angeles*,
  754 F.2d 830 (9th Cir. 1985), *rev'd on other grounds*, 475 U.S. 608, 616 (1986) ........... 19

*I/P Engine Inc. v. AOL Inc.*,
  2014 WL 243157 (E.D. Va. Jan. 21, 2014) .......................................................... 4

*KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.*,
  776 F.2d 1522, 1530 (Fed. Cir. 1985) .............................................................. 3, 4

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) ........................................................................................ 3, 14

*Masimo Corp. v. Mallinckrodt Inc.*,
  18 F. App'x 852 (Fed. Cir. 2001) ...................................................................... 27

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ........................................................................................ 25

*Nova Measuring Instruments Ltd. v. Nanometrics, Inc.,*
    417 F. Supp. 2d 1121 (N.D. Cal. 2006) .................................................... 16, 24

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2003) ...................................................................... 27

*Paice, LLC, v. Toyota Motor Corp.,*
    504 F.3d 1293 (Fed. Cir. 2007) ........................................................................ 3

*Profectus Tech. LLC v. Huawei Techs. Co., Ltd.,*
    823 F.3d 1375 (Fed. Cir. 2016) ...................................................................... 27

*Proveris Sci. Corp. v. Innovasystems, Inc.,*
    739 F.3d 1367 (Fed. Cir. 2014) ...................................................................... 21

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.*
    *U.S. Dep't of Agric.,*
    499 F.3d 1108 (9th Cir. 2007) ........................................................................ 19

*S. Or. Barter Fair v. Jackson Cnty.,*
    372 F.3d 1128 (9th Cir. 2004) ........................................................................ 19

*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.,*
    242 F.3d 1337 (Fed. Cir. 2001) ................................................................ 18, 20

*TiVo Inc. v. EchoStar Corp.,*
    646 F.3d 869 (Fed. Cir. 2011) ................................................................. passim

*Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,*
    520 U.S. 17 (1997) ................................................................................... 18, 21

*Wleklinski v. Targus, Inc.,*
    258 F. App'x 325 (Fed. Cir. 2007) ................................................................. 18

## I.       INTRODUCTION

Apple's motion for ongoing royalties improperly seeks an additional $117 million by trying to expand the jury's verdict to cover non-infringing, design-around products.  Far from the "nothing but minor changes" tone Apple takes in its motion, the design-arounds incorporate substantial changes to the exact functionality Apple previously recognized as crucial when arguing for infringement.  This should end the matter.  The accused products are far more than colorably different and do not infringe and, in view of the substantial changes reflected in the design-arounds, ongoing royalty proceedings are not appropriate for adjudicating the infringement issues here.

Samsung has conceded that Apple is entitled to $6.5 million for products for which no design-around was implemented, but for all other products, Apple's ongoing royalty request amounts to an impermissible end-run around the normal and required procedures for proving patent infringement by substantially different products.  Indeed, Apple does not seriously attempt to meet its clear-and-convincing burden of proof.  As one example, Apple's expert Dr. Mowry offered unsupported opinions untethered to *any* burden of proof, and Dr. Mowry was oblivious as to the applicable burden.  Apple also disregards the actual legal test for determining what is colorably different.  Under the Federal Circuit's test for judging colorable differences, courts are required to look at the differences based on what aspects of the accused product were the basis for the finding of infringement.  Applying this test here, the colorable differences are plain, as is the lack of infringement, because Apple's evidence and legal theory for infringement of the accused products rested crucially on aspects that do not exist in the design-around products.

For certain of the design-arounds (referred to individually as "DA1-A" and "DA1-B" or collectively as "DA1"), Apple ignores the agreed-upon and Court-endorsed claim construction for the "user interface" limitation requiring detection of a "structure," such as an email address or phone number, *before* selection by the user.  Apple relied on testimony before the jury that the Browser application satisfied this requirement because detection purportedly occurred during selection (*i.e.*, a user's "long press" gesture on the device's touch-screen), and for the Messenger application because there was pre-detection (with hyperlinking) before the user interacted with the touch-screen at all.  Neither of these arguments is true for any of the design-arounds.

1    For the Browser application, the DA1 design-arounds eliminate the long press selection,

2   instead replacing it with a different user gesture (*i.e.*, a "short tap").  Apple presents *no evidence*

3   that the detection has occurred for either of the DA1 design-arounds before the selection is

4   complete.  Thus, there is an enormously important difference in the functionality, and that

5   difference belies infringement.  Indeed, Apple's argument against the DA1-A design-around for

6   Browser rests solely on a legal theory of doctrine of equivalents ("DOE"), even though Apple's

7   theory before the jury rested on literal infringement and, in fact, Apple waived its DOE arguments

8   prior to trial.  Apple cites no basis to allow ongoing royalties for a completely different legal theory

9   of infringement never presented to the jury.

10    For the Messenger application, the DA1-A design-around removes the pre-detection

11   entirely, and ensures that detection does not even begin to occur until after selection.  This is far

12   more than a colorable difference and belies infringement.  Moreover, just like the DA1-A design-

13   around for Browser, Apple improperly (and in conflict with the legal theory it presented to the jury)

14   rests on DOE rather than literal infringement.

15    As to an additional design-around (referred to as "DA2" and applicable only to the

16   Messenger application), the accused functionality, in the form of the menu presented to the user,

17   has been removed entirely.  And the functionality now accused by Apple was already present—*but*

18   *not accused*—in the devices adjudicated at trial.  Under *nCube Corp. v. SeaChange Int'l, Inc.*, 732

19   F.3d 1346 (Fed. Cir. 2013), functionality present in the adjudicated devices but not accused is, by

20   definition, more than colorably different from the accused functionality.  On this basis alone, none

21   of the DA2 design-around products can be adjudicated through an ongoing royalty procedure.  In

22   any event, the pre-existing functionality now accused by Apple is significantly different from the

23   adjudicated functionality and does not infringe on numerous grounds.

24    Apple's disregard for the relevant legal standards, misleading representations of Samsung's

25   significant changes, and feigned ignorance of its own prior admissions establish Apple's failure to

26   justify the extraordinary remedy it seeks.  Apple's motion should be denied.

27   **II.     LEGAL STANDARD**

28    Consideration of whether a patentee is entitled to an ongoing royalty, like consideration of

whether an adjudicated infringer has violated an injunction order, is an extraordinary remedy that depends upon what was presented and proven at trial. The summary nature warrants particular safeguards. For instance, fairness and the right to trial dictate that any such post-trial relief must be based either on what was adjudged to infringe or on something so close to the adjudicated product that there is no "fair ground of doubt as to the wrongfulness" of sales of the modified product. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011); *see also KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc.* 776 F.2d 1522, 1526, 1530 (Fed. Cir. 1985), *overruled on other grounds by TiVo*, 646 F.3d 869.

Thus, the first step in the ongoing royalties analysis is to determine whether the design-around products are more than colorably different from the product(s) that was adjudicated to infringe. *TiVo*, 646 F.3d at 882. The colorably different analysis must focus on the differences between "those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." *Id.* That is, "the colorable-differences standard focuses on how the patentee in fact proved infringement, not what the claims require." *nCube*, 732 F.3d at 1351.

If "the district court determines that there are more than colorable differences . . . [the accused infringer] *is entitled to* a new infringement proceeding." *TiVo*, 646 F.3d at 884 (emphasis added). Anything other than a new proceeding would violate the accused infringer's right to a jury trial. Indeed, although the Federal Circuit has held that there is no right to a jury trial on the issue of the appropriate ongoing royalty *rate* (*Paice, LLC, v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-16 (Fed. Cir. 2007)), questions of infringement must be tried to a jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996). As a result, the imposition of an ongoing royalty based on new theories of infringement or infringement by colorably different products the jury did not consider would violate the Seventh Amendment right to a jury trial.

Apple misreads *TiVo* and asserts that "a modification is less likely to be significant if it 'merely employs or combines elements already known in the prior art in a manner that would have been obvious to a person of ordinary skill in the art at the time the modification was made.' *TiVo*, 646 F.3d at 882." Br. at 5. The beginning of the sentence Apple quotes states only that "[t]he court

must also look to the relevant prior art," not that the prior art defines whether a modification is significant. And in the next sentence, *TiVo* states only that "[a] nonobvious modification may well result in a finding of more than a colorable difference." 646 F.3d at 882-83. Thus, *TiVo* does not stand for the proposition that an obvious modification is unlikely to be significant.

If the differences between the adjudicated and design-around products are not more than colorably different, then the patentee must still show infringement by the products with the design-arounds. *Id.* at 883. In evaluating infringement, "the district *court is bound by any prior claim construction that it had performed in the case.*" *Id.* (emphasis added).

Finally, it is well established that a patentee must prove violation of an injunction "by clear and convincing evidence, a burden that applies to both infringement and colorable differences." 646 F.3d at 883. *TiVo* cites several cases that illustrate a long history of this high burden of proof, including *KSM*. *Id.* n. 2. As *KSM* explains, because contempt proceedings are summary in nature and are decided without the benefit of a full trial, "the movant bears the heavy burden of proving violation by clear and convincing evidence." *KSM*, 776 F.2d at 1524. The same reasoning applies here. This proceeding, like a contempt proceeding, is summary in nature and without the benefit of a full trial. And this proceeding, like a contempt proceeding, has potentially severe consequences—Apple seeks $117 million in ongoing royalties damages based on functionality that was never presented to the jury. There is no reasoned basis to apply a lesser burden of proof in ongoing royalties proceedings than in contempt proceedings.

Apple incorrectly argues that the limited existing authority "supports requiring the patentee to prove entitlement to relief by a preponderance of the evidence." Br. at 6. Neither case on which Apple relies supports this assertion. Apple's first case, *Creative Internet Advertising Corp. v. Yahoo! Inc.*, 674 F. Supp. 2d 847, 855 (E.D. Tex. 2009), addressed who has the burden of proof in an ongoing royalties analysis. The other case on which Apple relies, *I/P Engine Inc. v. AOL Inc.*, 2014 WL 243157, at *2 (E.D. Va. Jan. 21, 2014), noted that *Creative Internet* merely "implied that a preponderance standard should apply in the ongoing royalties context," but went on to "assume without deciding that the clear and convincing standard applies." *Id.* Thus, the only case Apple cites that directly addressed this issue supports applying the clear and convincing standard.

The clear and convincing evidence standard is a high bar, higher than the preponderance of the evidence standard applied to infringement at trial. In any event, Apple has failed to satisfy its burden under either the clear and convincing or preponderance standard.

## III. COUNTER-STATEMENT OF FACTS

Apple in its motion offers an incomplete factual background that fails to include a full description of Samsung's adjudicated products and design-arounds. Samsung provides a more complete description below to allow the Court to properly compare Samsung's design-arounds to the adjudicated products, as required for determining whether ongoing royalties are appropriate.

### A. Samsung's Adjudicated Browser And Messenger Applications

At trial, Apple asserted dependent claim 9 of the '647 patent against Samsung's Browser and Messenger applications in nine Samsung devices. Claim 1 (from which claim 9 depends) has three principal elements: an "analyzer server;" a "user interface;" and an "action processor." (Dkt. 2217-10 at ¶ 67.) The "user interface" limitation is of particular importance for Samsung's design-arounds. The specific claim language is "a user interface enabling the selection of a detected structure…."[1] JX-1 at 7:18-19. The word "detected" is in the past tense, indicating that a "structure" such as an email address or phone number must be detected by the system before being selected by a user. Apple read this limitation on Samsung's touch-screen (*i.e.*, the user interface) and the finger selections by a user of "structures" (*e.g.*, email addresses and phone numbers) previously detected by the system. Those finger selections included both a "short tap" and a "long press." A "short tap" is when a user places his or her finger on the touch-screen for less than a second. A "long press" is when the finger remains on the screen for longer than a second. The act of initially placing one's finger on the screen is referred to as "finger down," and removal of the finger from the screen is referred to as "finger up."

On summary judgment, the Court adopted the parties' plain meaning construction of the "user interface" limitation, stating that "[t]he parties agree that the plain and ordinary meaning of [this] claim limitation…requires 'the user interface to enable selection of a structure, by the user,

---

[1] Claim 9 further limits this user interface, by requiring that it "enable[] selection of an action by … display[ing] a pop-up menu of the linked actions." JX-1 at 7:53-55.

1    *after* the structure has already been detected.'"  (Dkt. 1151 at 20 (quoting Dkt. 177 at ¶ 217).)

2            The adjudicated user interface for both Browser and Messenger appeared as a context

3    menu.  (Dkt. 2217-10 at ¶¶ 78, 92.)  For example and as illustrated below, in each and every case,

4    upon selection of a structure such as an email address or phone number, the system displayed this

5    context menu with a choice of different tasks associated with the selected structure.  (*Id.*)  Upon

6    selection of a task from the context menu, the system may also (in certain circumstance) display a

7    separate follow-on menu for choosing which among the same type of applications (*e.g.*, email

8    applications) should be used to perform the chosen task.  (*Id.* at ¶ 118.)  The parties have referred to

9    this second menu as a "Resolver Activity" menu.  (*Id.* at ¶ 301.)  This menu will not appear if only

10   one application is available to perform the chosen task.   (*Id.*)   Moreover, it may only appear a

11   single time if the user selects "Always" rather than "Just once" when choosing the application to

12   complete the action.  (*Id.*)  The Resolver Activity menu was not previously accused by Apple.







**Adjudicated Browser
User Interface
(Dkt. 2217-10 at ¶ 78)**

**Adjudicated Messenger
User Interface
(Dkt. 2217-10 at ¶ 92)**

**Previously Unaccused
Resolver Activity Menu
(Dkt. 2217-10 at ¶ 118)**

20                    **1.    The Adjudicated Browser Functionality**

21          In the adjudicated Browser application, two gestures were possible on a "structure," such as

22   a phone number or email address, displayed in a web page.  (Dkt. 2217-10 at ¶ 79.)  The first, the

23   "short tap," was not accused and Apple admitted during summary judgement briefing that its

24   functionality does *not* infringe claim 1 (and 9) of the '647 patent.  (Dkt. 919-3 at 3-4 ("[A] mere tap

25   on a structure will simply launch a default action . . . but it will not provide a menu 'enabling the

26   selection of . . . a linked action' as required by Claim 1.").)   The second, the "long press," is

27   distinguished from the short tap by the length of time a user's finger remains on the screen.  (Dkt.

28   2217-10 at ¶ 129 (citing Dkt. 919-3 at 3).).  If the user's finger is kept on the screen long enough,

1   the system recognized that a long press gesture has been performed and, at that point, presented a

2   context menu of available options related to the selected text.  (*Id.*)

3                  **(a)**       **The Browser's Short Tap Functionality Was Not Accused**

4         The short tap gesture in the adjudicated Browser application resulted in the performance of

5   a single, pre-determined action.  (Dkt. 2217-10 at ¶ 80.)  As an example, a short tap gesture on a

6   phone number would cause the "dial" action to be performed.  (*Id.*)  And a short tap gesture on an

7   email address would cause the "send email" action to be performed.  (*Id.*)  These actions were pre-

8   determined for each structure type; Apple referred to them as "default" actions.  (Dkt. 919-3 at 3.)

9         If a device had more than one application available that was capable of completing the

10  action (*e.g.*, if the device had more than one email application, such as Google mail or Yahoo

11  mail), the system had to determine which application to use.  (Dkt. 2217-10 at ¶ 107.)  This was

12  done via the Resolver Activity menu that would appear and ask the user which application he or

13  she wanted to use to "complete" this action.  (*Id.* at ¶ 106.)  Accordingly, if only one application

14  was installed, or if the user had previously selected an application as the default, the Resolver

15  Activity menu would be bypassed and the application would be launched directly.  (*Id.* at ¶ 107.)

16        Apple did not accuse the Browser short tap functionality—including the creation of the

17  Resolver Activity menu—of infringing claim 9 of the '647 patent.  To the contrary, Apple admitted

18  that the short tap functionality *does not infringe*.  (Dkt. 919-3 at 3-4.)

19                  **(b)**       **Apple Accused A Context Menu Triggered By A Long Press Of**

20                               **Infringing Claim 9**

21         The only Browser functionality that Apple accused of infringing claim 9, and the only

22  functionality presented to the jury, was the context menu created after a long press.  Trial Tr. at

23  865:10-866:14, 868:12-869:17.[2]  At trial, Apple specifically relied upon the long press gesture to

24  prove infringement.  It is undisputed that for Browser, no structures are detected prior to a user's

25  interaction with text on a web page.  *Id.* at 2793:10-12 ("[W]hen the user first touches the screen, at

---

26      [2]   Just as with short tap, selection of an entry in the accused context menu would cause a
Resolver Activity menu to be displayed if more than one application was available to perform the

27  selected action.  (Dkt. 2217-10 at ¶ 107.)  As noted above, Apple did not accuse the Resolver
Activity menu of infringement.

28

that point the system has not begun detecting the structure.").[3]   Rather, the Browser application waited for user interaction and only then, on "finger down," did the detection routines begin.  *Id.* ("But once the system notices that the user has touched the screen, it begins looking under the user's finger to see if there's a structure there.").  Apple argued that because detection purportedly occurred *while* the user's finger was down, the user was selecting a "detected" structure.  *Id.*  Apple likened the long press gesture to two distinct gestures, such as a "double tap."  (*See* Dkt. 919-3 at 4-5.)  And at trial, Dr. Mowry testified that a long press, or "press *and hold*" was required to satisfy the "detected structure" limitation by Browser.  (Trial Tr. at 869:18-870:2.)

### 2.    The Adjudicated Messenger Functionality

Apple accused a similar context menu for the Messenger application, but with a different form of detection.  In the adjudicated Messenger application, structures were detected upon receipt of a text message and "hyperlinked" (*i.e.*, the structures were underlined and displayed in blue font), indicating to the user that they were selectable.  (Dkt. 2217-10 at ¶ 91.)  Trial Tr. at 844:13-846:18.  Because the Messenger application already performed detection upon receipt of a text message and prior to any user tap, it was able to generate a context menu following a short tap (and not a long press) on structured text in a text message.  (Dkt. 2217-10 at ¶¶ 92-93.)  Trial Tr. at 844:13-846:18.[4]  Thus, for Messenger, Apple argued that any selection of a structure was "selection of a detected structure" because the structures were *already* detected.  (Dkt. 2217-10 at ¶¶ 92-93.)

As with the accused Browser application, selection of an entry from the accused context menu would cause a Resolver Activity menu to be displayed if more than one application was available to perform the selected action, and the user had not already selected a default application .  (Dkt. 2217-10 at ¶ 107.)  Apple did not address this functionality in its expert reports or at trial.

---

[3]   While this discussion focuses on the Jelly Bean version of the Browser application, the Gingerbread and Ice Cream Sandwich versions were also accused.  In those versions, structures were pre-detected.  (Dkt. 2217-10 at ¶ 82.)

[4]   Apple accused the short tap gesture for the Ice Cream Sandwich and Jelly Bean versions of Messenger, and the long press gesture for the Gingerbread version of the Messenger.  In the Gingerbread version, the context menu was created on a per-message basis.  (Dkt. 2217-10 at ¶¶ 94-95; Trial Tr. at 845:24-846:18.)  If a text message contained both an email address and a phone number, the resulting menu would include options relating to both.  (*Id.*)

The Messenger application also included long press functionality that was not accused.[5] (*Id.* at ¶ 96.)  In Messenger, a long press on a structure generated a menu of generic options, such as "Delete message," which were not particular to the type of structure selected (*i.e.*, the same options are provided regardless of the selected structure).  (*Id.*)

**B.    Samsung's Design-Arounds**

Samsung has implemented three distinct design-arounds, designated DA1-A, DA1-B, and DA2, across Browser and Messenger:[6]

| Application | Design-Arounds |
|---|---|
| Browser | DA1-A ███████ ; DA1-B ███████ |
| Messenger | DA1-A ███████ ; DA2 ███████ |

In the adjudicated Browser application, the accused "user interface" was a context menu generated after a user performed a long press gesture on a structure, where the detection routines were invoked after finger down but before finger up.  (Dkt. 2217-10 at ¶ 86.)  The DA1-A and DA1-B design-arounds for Browser *removed* this long press context menu, replacing it with a menu of generic options, such as "Select all" and "Copy."  (*Id.* at ¶¶ 151-163, 174-181.)  Apple does not dispute that this new functionality for long press does not infringe the '647 patent.



**DA1-A Browser Long Press (Dkt. 2217-10 at ¶ 152)**

The Browser application with DA1-A and DA1-B also includes newly-developed functionality for the short tap gesture.  (*Id.* at ¶¶ 164-172, 182-186.)  In DA1-A, a short tap will create a context menu with options related to the selected text.  (*Id.* at ¶ 164.)  The detection

---

[5]   Namely, the Ice Cream Sandwich and Jelly Bean versions of the Messenger application.
[6]   Certain Samsung devices did not receive any design around.  For those devices, Samsung acknowledges that it owes ongoing royalties in the amount of $6,494,252.  Br. at 25.

1    routines in DA1-A do not begin until finger up (*i.e.*, removal of the finger from the screen).  (*Id.* at

2    ¶ 165.)  In DA1-B, a short tap will also create the same context menu.  (*Id.* at ¶ 182.)  The detection

3    routines in DA1-B do not begin until finger down.  (*Id.* at ¶¶ 183-84.)

4         In the adjudicated Messenger application, the accused functionality was a context menu of

5    options that was generated after a user performed a short tap gesture on a structure.  Structured text

6    in a web page was detected and hyperlinked prior to any user interaction.  (Dkt. 2217-10 at ¶ 92.)

7    In the DA1-A design-around for the Messenger application, Samsung eliminated the structure

8    detection and hyperlinking prior to user interaction.  (*Id.* at ¶ 189.)  Samsung further modified the

9    accused functionality so that detection routines do not begin until after finger up.  (*Id.* at ¶ 194.)

10        In the DA2 design-around, Samsung removed the accused context menu in its entirety.  (*Id.*

11   at ¶ 201.)  Upon selection of a structure, no context menu is created.  (*Id.*)  Instead, Samsung

12   adopted the same short tap functionality in the adjudicated Jelly Bean Browser that Apple never

13   accused and admitted did not infringe.  (*Id.* at ¶¶ 12, 80-81, 107, 112, 132-34.)  Specifically, for

14   each type of structure, a single action has been pre-determined by the system, meaning no choice

15   from a context menu is necessary.  (*Id.* at ¶ 201.)  Thus, both the context menu and the user's

16   choice of the action to be performed have been removed.  Following selection of a structure via a

17   short tap gesture, the system will trigger the pre-determined action and then generate a Resolver

18   Activity menu if necessary (*i.e.*, when more than one application is installed that is capable of

19   performing the pre-determined action and no default application has been selected).  (*Id.* at ¶ 202.)

20   **C.    Dr. Mowry's Analysis of Samsung's Design-Arounds**

21        Apple's expert Dr. Mowry was unaware of the relevant burden of proof and could not speak

22   to whether his analysis satisfied either burden.  (Dkt. 2217-7 at 40:5-13, 42:13-25, 43:14-44:8.)

23   Moreover, Dr. Mowry's analysis was careless and cursory.  For instance, he initially accused

24   Messenger functionality ███████████████████████████████████ an accusation he

25   later withdrew.  (*Id.* at 7:1-8:7, 21:20-22:8, 23:2-7.)

26   **IV.    ARGUMENT**

27       **A.    Samsung's DA1-A Products Are More Than Merely Colorably Different From
      The Adjudicated Products, And, If Infringement Is Considered, Do Not**

28            **Infringe Claim 9 Of The '647 Patent**

**1.      The DA1-A Browser Design-Around Reflects Significant Changes That Are More Than Colorably Different From The Adjudicated Products**

The DA1-A Browser design-around is significantly different from the adjudicated products, and certainly more than "colorably different."  The colorable differences inquiry must focus "not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product."  *TiVo*, 646 F.3d at 882.  In this case, the relevant accused feature was a context menu of options that is generated following a long press gesture on structured text.  Trial Tr. at 868:12-870:23 (describing selection of a structure via long press); 872:15-873:2 (describing the context menu).  Samsung removed that functionality, replacing it with a generic menu that Apple never accused of infringement and that Apple still does not accuse as part of its ongoing royalties allegation.  (Dkt. 2217-10 at ¶¶ 151-154, 228-233.)

In plain disregard for the *TiVo* colorable differences test (here requiring comparison of the modified long tap functionality with the adjudicated functionality), Apple ignores that the long press functionality was changed entirely.  Instead, Apple asks this Court to compare the adjudicated context menu created following a long press to the context menu in the DA1-A Browser application created following a short tap.  *See* Br. at 7-8.  But Samsung's implementation of a context menu on a short tap is far more than colorably different from the accused context menu after the long press.

During summary judgment briefing, Apple emphasized the key role that the long press gesture played in Apple's infringement allegations.  For Browser, Apple asserted that "the *long-press is the act of 'selection'* Apple accuses, and it indisputably occurs on a detected structure." (Dkt. 919-3 at 4 (emphasis added).)  Apple continued: "[l]ong-pressing on a detected structure, as Apple accuses, is a distinct act of selection after a structure is detected that invokes *entirely different functionality than a mere touch or tap*."  (*Id.* (emphasis added).)   Apple further emphasized and relied upon the long press at trial.  *See* Trial Tr. at 866:3-12 ("Q. Not just a tap?  A. Yeah, not just a tap.  Press and hold."); 869:10-17 ("The user eventually is holding down long enough that it becomes a selection through a press and hold…."); 869:18-870:2 ("[Y]ou've held it

1   long enough that you've actually made a selection through press and hold."); 2793:8-23 ("[I]n

2   order to select the structure, the user needs … to do a press and hold gesture, so they need to keep

3   their finger down on the screen long enough for a timer to go off … so at the time that they're

4   making the selection through press and hold, the structure has been detected."); 2798:9-21.  Thus,

5   because there was no detection prior to any user selection, the long press was critical to Apple's

6   argument concerning selection of a "detected" structure.

7          Apple tries to downplay the significance of using a short tap instead of a long press by

8   arguing that the jury found that short tap is sufficient to infringe.  Br. at 8.  But Apple's argument

9   wrongly and misleadingly conflates the very different functionality in the Browser and Messenger

10   applications.  For the Jelly Bean Browser application, as discussed above, Apple expressly and

11   repeatedly relied upon the long press to prove infringement and *never* accused the short tap

12   functionality.  For the Messenger application, Apple did accuse the short tap functionality because

13   in Messenger the accused products detected the structures (and hyperlinked them) **before** the short

14   tap.  (Dkt. 2217-10 at ¶ 91.)  Thus, it is absurd for Apple to argue that the purported jury finding

15   concerning "short tap" alone "binds this Court to conclude that a short tap is sufficient to infringe."

16   Br. at 8.  The jury found that a short tap on a *previously detected* structure infringes (in Messenger),

17   and that long press on a structure purportedly detected *while the press is occurring* (in Browser)

18   infringes.  The jury was never asked to find, and therefore never did find, that a short tap on an

19   *undetected* structure infringes, and the Court is not bound by a finding that was never made.

20          Apple argues that the difference between long press and short tap is "akin to the choice

21   between a right click or left click on a computer mouse" and could merely be the difference

22   between a touch of .99 and 1.01 seconds and, thus, Samsung's implementation of a context menu

23   on short tap is not more than colorably different.  Br. at 9.  But Apple ignores that the "colorably

24   different" test depends not on whether the difference matters in the abstract, but whether the

25   difference matters to the basis for the jury verdict.  *TiVo*, 646 F.3d at 882.  And Apple does not

26   dispute that its evidence and argument at trial was based on the theory that, when there was no pre-

27   detection, the difference between a short tap and long press was critical.  *See supra* at 11-12.

28   Indeed, Apple relied on long press because it directly impacts whether there is a "selection of a

1  detected structure," as required by claims 1 and 9.  In short, what Apple now treats as insignificant

2  was the basis for the jury's decision.

3       The DA1-A Browser application is also more than colorably different based on an

4  additional Samsung modification.  Namely, Samsung modified the short tap functionality in DA1-

5  A Browser so that the detection routines do not begin until after "finger up."  (Dkt. 2217-10 at ¶¶

6  165-172.)  As a result, during the entirety of the user's interaction with the screen (and only during

7  this interaction can the user possibly be performing the act of "selection," required by the claims),

8  no detection is occurring.  (*Id.* at ¶¶ 234-35.)  In contrast, Apple's expert told the jury that the

9  accused functionality not only began, but completed, detection while a gesture was being

10  performed.  Trial Tr. at 868:22-870:8.  Thus, Samsung's change to DA1-A, in which structures are

11  not detected until after they are selected, is a significant and more than colorable difference.

12       Apple argues that this change is not a "significant" one because "there is no noticeable

13  difference from a user perspective."  Br. at 10.  But once again, Apple ignores the legal test for

14  colorable differences, which depends not on the user, but the basis for the jury verdict.  *TiVo*, 646

15  F.3d at 882.[7]  Indeed, a design-around can still be more than colorably different where the claim

16  limitation recites functionality that is not visible to a user.  *See nCube*, 732 F.3d at 1350-51.  And

17  just as for the long press, Apple ignores that it treated the detection before finger up as critical to

18  proving infringement.  Apple cannot have this Court presume a basis for infringement that is

19  directly contrary to the basis it presented to the jury.

20       Indeed, these differences are not just colorable, but so significant that Apple is forced to

21  assert infringement under a different legal theory entirely.  For DA1-A, Apple now asserts

22  infringement only under the doctrine of equivalents, even though Apple presented only literal

23  infringement at trial.  Br. at 12-14.  This adoption of a new legal theory confirms that the DA1-A

24  design-around far more than colorably different.  The colorable differences inquiry is based on the

25

26      [7]  Apple's argument is also unsupported on the facts.  Apple's expert's unsubstantiated and self-serving expert testimony proves nothing, and should be disregarded.  *See Arthur A. Collins,*

27  *Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000).  And contrary to Apple's suggestion (Br. at 10), Dr. Jeffay did not agree that DA1-A and the Galaxy S III are "functionally equivalent,"

28  but rather he quoted Apple's expert and ***disagreed*** with him.  (*See* Dkt. 2217-10 at ¶ 236.)

understanding that the parties made their arguments to the jury, the jury decided which party was correct, and that it is appropriate to impose an ongoing royalty without a new trial where the products are essentially the same. *See TiVo*, 646 F.3d at 881-82, 884. But that cannot be true if the alleged ongoing infringement is based on a legal theory that was not presented to the jury and, therefore, the jury did not decide. *See id.* It is well established that questions of infringement must be tried to a jury. *TiVo*, 646 F.3d at 884; *Markman*, 517 U.S. at 377. As a result, anything other than a new proceeding to evaluate Apple's new DOE theories would violate Samsung's right to a jury trial.

### 2. The DA1-A Messenger Design-Around Is Also More Than Colorably Different From The Adjudicated Products

The DA1-A Messenger design-around is also more than colorably different from the adjudicated products. DA1-A Messenger removes hyperlinking and detection prior to user interaction. (Dkt. 2217-10 at ¶ 245.) This more than colorable difference is plainly evident:

 

**Adjudicated Messenger**
**(Dkt. 2217-10 at ¶ 188)**

**DA1-A Messenger**
**(Dkt. 2217-10 at ¶ 189)**

And Apple's expert expressly opined on the importance of the pre-detection (evident from the underlining and blue text). *See, e.g.*, Trial Tr. at 831:14-23 ("It was very important and innovative because it made it much easier to go through your e-mail, find these types of things….").

In arguing that the DA1-A Messenger is not more than colorably different, Apple claims that it proved at trial that "pre-detection or underlining a structure is not required by the asserted claim." Br. at 11. But again, Apple is wrongly and misleadingly conflating Browser and Messenger. Pre-detection was not necessary for Jelly Bean Browser (according to Apple) because detection commenced during a long press. Trial Tr. at 868:22-870:8. But for Messenger, the accused functionality concerned only the short tap, and that is why Apple relied on pre-detection for Messenger. *See id.* at 844:13-845:10, 846:4-18. Apple cannot abandon that reliance now.

In addition, just as in DA1-A Browser, in DA1-A Messenger, Samsung ensured that the detection routines do not even begin until after selection is complete (*i.e.*, after "finger up"). (Dkt.

2217-10 at ¶ 246.)   For the same reasons explained above for DA1-A Browser, this too is a significant difference from the adjudicated devices.   And Apple again errs in relying solely on DOE, rather than literal infringement, the sole legal theory presented to the jury. Br. at 12-14.

> ### 3.   The DA1-A Design-Arounds Fail To Satisfy At Least The "User Interface" Limitation And Therefore Do Not Infringe Claim 9 Of The '647 Patent

For the DA1-A devices, Apple asserts infringement only under the doctrine of equivalents. Br. at 12.  Apple has failed to satisfy its burden, however, for multiple reasons.

> ### (a)   Apple Waived Any Doctrine Of Equivalents Arguments

Apple has waived any argument of infringement under the doctrine of equivalents.   In its infringement contentions, Apple did not assert infringement under the doctrine of equivalents.  (*See* Dkt. 526-5.)  The phrase "doctrine of equivalents," or any variation thereof, appeared nowhere in Apple's claim charts.  (*See id.*)  As a result, after Dr. Mowry included arguments relating to doctrine of equivalents in his expert report, Samsung moved to strike them as introducing previously undisclosed infringement theories. (Dkt. 880-5 at 9.)  Prior to any order on this motion, Apple agreed to withdraw any doctrine of equivalents allegations for the '647 patent. (Dkt. 1056 at 3 n. 4.)  Following this agreement, Apple presented only literal infringement to the jury.  Apple's choice not to present a doctrine of equivalents argument at trial was a plain waiver.

Apple argues that it may prove infringement "either literally or under the doctrine of equivalents, even when the court's initial determination was one of literal infringement" (Br. at 6), but the cases on which it relies are readily distinguishable.  Both cases concern only whether a *preliminary* injunction had been violated by sale of modified products; neither case says anything about a choice not to pursue doctrine of equivalents after that preliminary stage, let alone excuse the clear waiver at trial here.  *See Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 2017 WL 368027, at *4 (N.D. Ill. Jan. 23, 2017); *Aevoe Corp. v. AE Tech Co.*, 2012 WL 1559768, at *3-*6 (D. Nev. May 2, 2012).[8]  Apple cites no authority to support its position that it may seek post-trial

---

[8]   In addition, Apple concedes that it must rely on doctrine of equivalents to assert that the modified products infringe.  In contrast, *Chamberlain* found literal infringement, and addressed doctrine of equivalents simply to be "prudent" in light of a pending appeal.  2017 WL 368027 * 4.
(footnote continued)

1   relief based on infringement under the doctrine of equivalents when it waived the ability to argue

2   doctrine of equivalents at trial, and the jury verdict was based exclusively on literal infringement.

3        Allowing Apple to raise doctrine of equivalents now would also undercut the Local Patent

4   Rules and unfairly prejudice Samsung.  The Local Patent Rules "are designed to require parties to

5   crystallize their theories of the case early in the litigation and to adhere to those theories once they

6   have been disclosed."  *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d

7   1121, 1123 (N.D. Cal. 2006).  This is because a party's infringement theories should not be a

8   "moving target."  *See   Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1369 (Fed. Cir.

9   2014). Apple clearly would have been precluded from raising at trial an infringement theory that it

10  had failed to properly disclose in its contentions.  Yet Apple seeks to rely on a new infringement

11  theory *post-trial* because it supposedly could not have anticipated Samsung's post-trial changes to

12  its products.   But the question is not whether Apple could have anticipated and developed

13  infringement theories for all possible changes to Samsung's products.   Rather, it is whether

14  Samsung had fair notice and opportunity to present to the jury its defenses to Apple's theories.

15  There was no such opportunity here for a doctrine of equivalents theory that was never stated in

16  Apple's contentions and was not presented to the jury.[9]

17
18       **(b)    The DA1-A Design-Around Does Not Satisfy The Plain Language Of Claim 9**

19       Regardless of Apple's waiver, Samsung's DA1-A design-around does not infringe claim 9.

20  Claim 1 of the '647 patent, from which asserted claim 9 depends, recites in relevant part "a user

21  interfacing enabling the selection of a *detected* structure and a linked action."   JX-1 at 7:8-24

22  (emphasis added).  The adjective "detected" is in the past tense, meaning detection must occur

23  before selection.  *See id.*  Indeed, the parties agreed with this interpretation.  (Dkt. 1151 at 20.)

24  This Court in its Summary Judgment Order adopted the parties' plain meaning construction for the

25  "user interface" limitation:  "the parties agree[d] that the plain and ordinary meaning of the claim

---

26  Similarly, *Aevoe* noted that the patentee may be able to prove literal infringement, but it was

27  unnecessary for the court to address it at that time.  2012 WL 1559768, n. 3.

    [9]   Thus, Apple's theories regarding infringement under the doctrine of equivalents should be stricken and the Court need not address Apple's arguments on the merits.

28

1  limitation 'a user interface enabling the selection of a *detected* structure' requires 'the user interface

2  to enable selection of a structure, by the user, *after* the structure has already been detected.'" (Dkt.

3  1151 at 20 (quoting Dkt. 177 (Mowry PI Reply Decl.) at ¶ 217 (emphasis in original)).)

4      The DA1-A devices do not satisfy this limitation because detection of a structure does not

5  occur before or during selection; rather, in the DA1-A devices, detection only occurs after the user

6  removes his or her finger from the screen (i.e., the act of "selection"). (Dkt. 2217-7 at 110:11-19.)

7  In the DA1-A devices, when the user selects a structure via a finger gesture, no detection has

8  occurred. (Dkt. 2217-10 at ¶ 259.) Indeed, there is no dispute that the detection routines do not

9  begin until *after* the user removes his or her finger from the screen—i.e., after selection. (Dkt.

10  2217-7 at 110:11-14 ("Q. And do you agree that the detection routines for DA1-A for both browser

11  and messenger begin on touch up rather than touch down?" A. Yes.").) This behavior—ensuring

12  that detection does not begin until after selection is complete—distinguishes the DA1-A design-

13  around from the adjudicated Jelly Bean Browser application, for which (according to Apple)

14  detection occurred during a long press gesture. (Dkt. 2217-10 at ¶¶ 259, 262-66; Dkt. 919-3 at 5.)

15      Apple acknowledges that the detection routines do not begin until *after* the user removes his

16  or her finger from the screen (*i.e.*, "finger up"), but alleges that detection in general starts on

17  "finger down". Br. at 12-13. This is because, according to Apple, "the process of identifying that

18  the 'finger up' action has occurred—and therefore invoking the detector functions—necessarily

19  begins with the 'finger down' action." *Id.* This argument is a red herring. The claim does not refer

20  to "the process of identifying," but whether, as this Court held, the selection occurs "*after* the

21  structure has already been detected.'" (Dkt. 1151 at 20.) And there is no dispute that the detection

22  routines are not invoked—and thus the structure has not been detected—until after finger up and

23  thus after the selection has occurred. (Dkt. 2217-7 at 110:11-14 ("Q. And do you agree that the

24  detection routines for DA1-A … begin on touch up rather than touch down? A. Yes.").)

25      Apple's reliance on the doctrine of equivalents cannot salvage their theory. Infringement

26  under DOE requires that an accused product differ from the claim limitation only insubstantially.

27  *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). This

28  equivalence can be evaluated by determining "[w]hether a component in the accused subject matter

1    performs substantially the same function as the claimed limitation in substantially the same way to

2    achieve substantially the same result." *Id.*  The DA1-A design-around meets none of these criteria:

3    it is substantially different from claim 9 because its user interface can never enable the selection of

4    a detected structure.  Moreover, it performs a different function, in a different way, to accomplish a

5    different result.  (Dkt. 2217-10, Jeffay Rep. at ¶¶ 269-270.)  DA1-A performs a different function

6    because it prevents a user from selecting a structure that is detected.  (*Id.* at ¶ 270.)  It performs the

7    function of the claims (selecting a detected structure) in a different way because detection occurs

8    after selection, where the claims expressly require the opposite.  (*Id.*)  And it accomplishes a

9    different result because the interface that DA1-A presents to the user does not include a "detected

10   structure."  (*Id.*)  Thus, the DA1-A functionality is fundamentally opposite to the invention claimed

11   in the '647 patent, and cannot infringe under DOE.  *Wleklinski v. Targus, Inc.*, 258 F. App'x 325,

12   329 (Fed. Cir. 2007) (finding no infringement under DOE where an accused feature was "the

13   fundamental opposite of the claimed invention"); *SciMed Life Sys., Inc. v. Adv. Cardiovascular

14   Sys., Inc.*, 242 F.3d 1337, 1347 (Fed. Cir. 2001).  (*See also* Dkt. 2217-10 at ¶ 269.)

15          Moreover, a finding of infringement under the doctrine of equivalents, as Apple requests,

16   would impermissibly vitiate the "detected" element of the claims.  *See Warner–Jenkinson Co., Inc.

17   v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("It is important to ensure that the application of

18   the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to

19   effectively eliminate that element in its entirety."); *Freedman Seating Co. v. Am. Seating Co.*, 420

20   F.3d 1350, 1358 (Fed. Cir. 2005).  Because a finding of infringement would render irrelevant the

21   claim requirement that detection of a structure occur before selection, there can be no equivalence.

22          Additionally, Apple simply ignores previous admissions it made when attempting to

23   distinguish the "user interface" limitation from U.S. Patent No 5,859,636 ("Pandit").  (Dkt. 118-

24   45.)  In Pandit, after the user selects text "by shading, underlining or pointing to and clicking on the

25   text," the system attempts to detect the type of structure selected and provides options to the user

26   for performing actions on that structure.  (*Id.* at 2:4-27.)  In distinguishing Pandit during the

27   preliminary injunction phase of this case, Dr. Mowry argued that Pandit "does not disclose 'a user

28   interface enabling the selection of a detected structure' because Pandit requires that a user manually

select text *before* Pandit attempts to recognize that text as performing to a particular class." (Dkt. 177 at ¶ 26.) Dr. Mowry further argued that "[t]his reverses the steps disclosed in the '647 patent in a material, and critical, way." (*Id.*) Just like Pandit, DA1-A reverses the steps of detection and selection in a material and critical way. Apple's new DOE arguments directly contradict the opinions of its expert in attempting to distinguish over Pandit. Moreover, to the extent Pandit is considered prior art to the '647 patent, Apple's DOE theory must be rejected because it would encompass the functionality taught by Pandit. It is axiomatic that a doctrine of equivalents theory cannot be valid if it will encompass or "ensnare" the prior art. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009).[10]

**B.  Samsung's DA1-B Products Are More Than Merely Colorably Different From The Adjudicated Products, And, If Infringement Is Considered, Do Not Infringe Claim 9 Of The '647 Patent**

**1.  The DA1-B Browser Design-Around Is More Than Colorably Different From The Adjudicated Products**

The DA1-B Browser design-around is significantly different from the adjudicated Browser application. As with DA1-A, Apple ignores that it previously accused the functionality associated with long press for Browser, and that Samsung removed the accused functionality, replacing it with a generic menu for the long press. (Dkt. 2217-10 at ¶¶ 237-238.) And, importantly, Apple acknowledges that this generic menu does not infringe. (*See* Dkt. 2217-9 at ¶ 75.)

Moreover, Samsung's implementation of a context menu on the short tap gesture is more than colorably different. Apple's infringement theory was specifically based on the long press. *See supra* at 11-12. And for DA1-B, like DA1-A, Apple accuses only the short tap functionality. This significant difference, which focuses on an aspect of the functionality that Apple emphasized in its summary judgment briefing and trial proof, is "more than colorable," and the inquiry with respect

---

[10]  To the extent Apple argues that Pandit is not prior art, Apple has not proven that the '647 patent is entitled to an earlier priority date other than in the preliminary injunction proceedings in this case. "[D]ecisions at the preliminary injunction phase do not constitute the law of the case," and are not binding. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007); *see also S. Or. Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1136 (9th Cir. 2004); *Golden State Transit Corp. v. City of Los Angeles*, 754 F.2d 830, 832 n. 3 (9th Cir. 1985), *rev'd on other grounds*, 475 U.S. 608, 616 (1986). Moreover, a proceeding at the ITC or PTO is also not binding.

to the DA1-B design-around for the Browser application should end here.  *TiVo*, 646 F.3d at 884.

## 2.     The DA1-B Design-Around Also Does Not Satisfy The "User Interface" Limitation And Thus Does Not Infringe Claim 9 Of The '647 Patent

Just as with DA1-A, DA1-B lacks a user interface that "enables the selection of a *detected* structure."  In DA1-B, as in DA1-A, detection does not begin prior to a user interacting with text on a web page.  (Dkt. 2217-10 at ¶¶ 183-186.)  As a result, detection occurs after "selection."  (Dkt. 2217-10 at ¶ 275.)  Thus, there is no infringement based on the parties' agreement and this Court's acceptance of the requirement that selection must occur after detection.  *See supra* at 5-6.

Apple argues that "the timing of the call to the detection functions in the DA1-B products is the same as in the Adjudicated Products—in both cases, '[t]he process of detecting a selected structure starts upon finger down.'"  Br. at 15.  But Apple ignores the distinction between a long press (adjudicated products) and a short tap (DA1-B).  With a long press, Apple previously argued that detection was complete while the user's finger remain on the screen, and therefore the user had selected a "detected structure."  With a short tap, however, Apple cannot show that detection is completed while the user's finger remains on the screen; Apple offered no evidence that this occurs.  (Dkt. 2217-10 at ¶ 275.)  Indeed, Apple's expert admitted that he performed no testing to show that detection is complete during short tap, even though he could have done so.  (Dkt. 2217-7 at 180:2-16.)  This represents a complete failure of proof for establishing that the DA1-B design-around satisfied the user interface limitation under either a clear and convincing or preponderance standard.  In short, a user cannot select a "detected" structure if the application has not finished detecting it when the user finishes his or her short tap.[11]

DA1-B also does not infringe claim 9 of the '647 patent under DOE.  Because structures are not detected prior to any identifiable act of selection, the functionality of DA1-B is fundamentally opposite to "enabling the selection of a detected structure."  *See SciMed*, 242 F.3d at 1347-48; *supra* at 17-18.  Moreover, Apple's DOE infringement theory would read the word "detected" out

---

[11]   The only potentially relevant difference between DA1-A and DA1-B is that detection begins with finger up for DA1-A, and with finger down for DA1-B.  But this difference is irrelevant here given the total absence of proof that detection is complete before finger up for DA1-B.

1    of the claims, impermissibly vitiating a claim limitation.  *See Warner–Jenkinson*, 520 U.S. at 29;

2    *supra* at 18.  DA1-B, therefore, does not infringe under the doctrine of equivalents.

       **C.**      **Samsung's DA2 Products Are More than Colorably Different From The**
3                 **Adjudicated Products, And, If Infringement Is Considered, Do Not Infringe**
4                 **Claim 9 Of The '647 Patent**

           **1.**      **The DA2 Messenger Design-Around Is More Than Colorably Different**
5                     **From The Adjudicated Products Because The Accused Context Menu**
6                     **Was Removed**

7        The DA2 Messenger design-around is significantly different from the adjudicated

8    Messenger application because Samsung removed the accused context menu.  (Dkt. 2217-10 at ¶

9    247.)  To establish infringement at trial, Apple alleged that the generation of a context menu of

10    options via a short tap satisfied the "user interface" limitation.  (*Id.* at ¶ 92.)  Those options were

11    specific to the type of structure selected by the user, such as phone-specific options for a phone

12    number (*e.g.*, Dial, Add to contacts) and email-specific options for an email address (*e.g.*, Send

13    email, Add to contacts).  (*Id.*)  In DA2, Samsung *removed* that context menu in its entirety.  (Dkt.

14    2217-7 at 170:13-16; 171:4-7.)  In other words, the accused functionality is no longer present in

15    DA2 Messenger, in any form, which should end the inquiry.  *See TiVo*, 646 F.3d at 884.

16        It is hard to imagine a more significant change.[12]   As the Federal Circuit held:

17    "Specifically, one should focus on those elements of the adjudged infringing products that the

18    patentee previously contended, and proved, satisfy specific limitations of the asserted claims.

19    Where one or more of those elements previously found to infringe has been modified, or removed,

20    the court must make an inquiry into whether that modification is significant."  *TiVo*, 646 F.3d at

21    882.  Thus, the proper analysis compares the accused context menu, in which the menu presents

22    choices of multiple different types of actions, to the new functionality, in which a single

23    predetermined action is automatically performed after a structure is selected:

---

24       [12]   Apple relies on *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1371 (Fed. Cir.
25    2014) to argue that removing a feature, without more, is not sufficient to show a colorable
     difference.  Br. at 19.  *Proveris*, however, involved the purported removal of a feature *without any*
26    *effect*.  For example, in *Proveris* it was "not at all clear from the record whether [the] purported
     change actually had any effect," and it was "'quite clear' that [the] alleged redesign 'was not truly
27    an alteration at all.'"  739 F.3d at 1371.  Here, in contrast, there is no dispute that the feature on
     which Apple relied to prove infringement, and the functionality associated with that feature, is no
28    longer present in the DA2 devices.

When the proper comparison is made between what Apple relied on at trial and the results of the design-around, it is clear that the relevant functionality is gone and the change is significant.

Even if the Court were to compare the Resolver Activity menu with the adjudicated context menu, the significant differences between the two are plain and numerous.  Apple tries to minimize these differences by asserting that the "sole difference between DA2 and the Adjudicated Products is the specific list of options provided by the pop-menu that is first displayed to the user."  Br. at 16.  That is incorrect.  *First*, as shown below, the two menus look nothing alike, have fundamentally different functions and purposes, and present a fundamentally different type of choice to the user.  This is confirmed by the fact that both menus existed together in the adjudicated products.  If they were the same, there would have been no need for both in those products.

 

**Adjudicated Messenger Context Menu**
**(Dkt. 2217-10 at ¶ 193)**

**DA2 Messenger Resolver Activity Menu**
**(Dkt. 2217-9 at ¶ 52)**

The context menu (left) provides the user with different actions specific to the selected structure, such as "Send email" and "Send message," whereas the Resolver Activity menu (right) displays a choice of applications to "complete" a single, system-determined action.  (Dkt. 2217-10 at ¶¶ 106, 301.)  Thus, the sole option after selecting an email structure in DA2 is to send an email, and the Resolver Activity menu only concerns which email application to use to complete that action.

*Second*, the Resolver Activity menu may never appear or may only appear once.  If only a single application is available to complete the action, the menu will not appear at all.  Moreover, the menu may only appear a single time.  In addition to providing a choice of applications to complete an action, the menu allows the user to use that application a single time ("Just once") or every time ("Always").  If "Always" is selected, the Resolver Activity menu will no longer appear after the selection of a structure.  (Dkt. 2217-10 at ¶ 301.)  In other words, a user may select "Always" the first time and never see the Resolver Activity menu again.  (*See id.*)  In contrast, in the adjudicated Messenger functionality, a short tap on a structure resulted in the context menu appearing **every** time.  *See* Trial Tr. at 844:6-846:18.  This difference alone should end the inquiry, and is noteworthy because Apple never mentions it once in its brief.  Moreover, it would be unfair and improper to award ongoing royalties premised on a royalty rate for adjudicated functionality that appeared after every single selection, where the newly accused Resolver Activity menu may never appear or may appear only once after the first selection of a particular type of structure.

*Third*, while the jury determined that the choices in the context menu represent multiple different "actions" (*see* Trial Tr. at 864:14-23), the Resolver Activity menu concerns at most a single action.  The Resolver Activity menu, as explained in more detail below, simply provides choices as to which "activity" (*i.e.*, application) to use to perform the action.  Notably, the menu is titled "Complete action using," the import of which is clear.  (Dkt. 2217-10 at ¶¶ 106, 301.)  It provides options for how the action is to be completed, listing a number of applications, all of which are of the same type.  (*Id.* at ¶ 304.)  Thus, for a "Send email" action, multiple email applications may be presented.  This difference is significant in part because, as explained below, it means the menu does not display a "pop-up menu of the linked actions" as required by claim 9.

Finally, Apple's argument fails because the Resolver Activity menu functionality that Apple now compares to the previously adjudicated context menu functionality was *always* in the adjudicated products, but was not accused.  (*Id.* at ¶¶ 98-121.)[13]  Comparing the Resolver Activity menu to the accused context menu (which has been removed) is nonsensical.  It also conflicts with

---

[13]   Accordingly, Apple waived any reliance on the Resolver Activity menu, and its new infringement theories based on that menu should be stricken.

1   the Federal Circuit's decision in *nCube*.  In *nCube*, ARRIS asserted a video streaming patent

2   against SeaChange's interactive TV system.  *nCube*, 732 F.3d at 1347-48.  In particular, ARRIS

3   asserted one claim limitation against SeaChange's "ClientID" data field identifier.  *Id.* at 1348-49.

4   ARRIS did not accuse another data field identifier called "Session ID."  *Id.* at 1348.  After a jury

5   determined that SeaChange's system infringed, SeaChange modified the ClientID in a way that

6   both sides agreed was not infringing.  *Id.* at 1349-50.  ARRIS, however, brought a contempt claim

7   based on the SessionID which, according to ARRIS, now infringed the claim limitation previously

8   covered by the since-modified ClientID.  *Id.* at 1350.  The district court found that ARRIS did not

9   prove by clear and convincing evidence that the modified ClientID was not more than colorably

10  different, and that ARRIS "could not rely on the SessionID to meet the [colorable differences]

11  prong of *TiVo* because it was not identified at trial as meeting this limitation."  *Id.* at 1350.  The

12  Federal Circuit affirmed, focusing on the modification to the ClientID and not the previously

13  unaccused SessionID.  *Id.* ("ARRIS's infringement proof focused specifically on the ClientID, not

14  the Mac address or the SessionID, and—whether unnecessarily or not—stressed how the accused

15  system actually used the ClientID, as to which the SessionID is more than colorably different.").

16  Likewise, here, Apple cannot rely on the Resolver Activity menu in the accused devices, which it

17  chose not to accuse even though it was in the accused devices.  Instead, the comparison must be

18  between the accused context menu and the what remains, namely, a system lacking an unnecessary

19  context menu because a single action has been pre-determined by the system.[14]

### 2. The DA2 Messenger Design-Around Fails To Satisfy Several Claim Limitations And Therefore Does Not Infringe Claim 9 of the '647 Patent

22          Apple's infringement theories for DA2 are fatally flawed for several, independent reasons.

---

[14]     Apple's theories concerning DA2 should also be rejected for failure to comply with the Local Patent Rules, which "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories." *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006).  Accordingly where a party's contentions fail to mention a feature of the accused product as satisfying a particular limitation, an expert may not then rely on that previously unidentified feature to try to satisfy that limitation. *See, e.g., Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *2 (N.D. Cal. Aug. 22, 2013).  Apple should not be allowed to raise post-trial a new theory of infringement based on the Resolver Activity menu when that menu was always in the adjudicated products, but Apple never before contended that it satisfies claim 9.

(a)     **Apple Previously Admitted That The Same Functionality In The Jelly Bean Browser Application Does Not Infringe Claims 1 Or 9**

Apple has admitted that the DA2 "single-action-per-structure" functionality, which was also included in the adjudicated Jelly Bean Browser application yet never accused, is non-infringing. (*See* Dkt. 919-3 at 3-4.)  During the summary judgment briefing, Apple admitted that this Jelly Bean Browser functionality, which included the Resolver Activity menu Apple now accuses of infringing, is not covered by claims 1 and 9 of the '647 patent.  Specifically, Apple stated:

> A simple touch or tap in the accused Jelly Bean Browser application will not bring up the accused menu of candidate actions, contrary to Samsung's inaccurate description and figures.  *See* Samsung MSJ at 2.  Instead, a mere tap on a structure will simply launch a default action (such as a "dial" action on a phone number), but it will not provide a menu "enabling the selection of . . . a linked action" as required by Claim 1.  For this reason, too, Apple does not accuse a simple touch action in the Jelly Bean Browser application of infringing.

(Dkt. 919-3 at 3-4.)  Just like in Jelly Bean Browser, a "simple touch or tap" in DA2 does not "bring up the accused menu of candidate actions." (*Id.* at 3.)  Instead, "a mere tap on a structure … will not provide a menu 'enabling the selection of … a linked action' as required by Claim 1." (*Id.*) This should end the inquiry as to DA2, as Apple is estopped from contradicting an argument it relied upon earlier in the case.  *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

(b)     **The Newly Accused Resolver Activity Menu Includes Only A "Single Action" In Contrast To The Plain Language Of Claim 9, Which Requires Multiple Linked Actions**

The plain language of claim 9 requires that "the user interface enables selection of an action by causing the output devices to display a pop-up menu of the *linked actions*."  JX-1 at 7:53-55 (emphasis added).  The language of the claim is unambiguous:  the pop-up menu must display linked actions, plural.  The Resolver Activity menu, however, does not meet this claim limitation.  The Resolver Activity menu is presented when Android needs to "resolve" the activity (*i.e.*, the application) used to perform an action.  (Dkt. 2217-9 at ¶ 54 ("If there is more than one activity that can perform the desired action, then the system will start a 'system class that will allow the user to pick [the] activity." (citation omitted)).)  Consequently, the Resolver Activity menu, when generated, is appropriately titled "Complete action using":



(Dkt. 2217-9 at ¶ 52.)   As Apple's own expert described it, the choices displayed in a Resolver

Activity menu are *activities* associated with a desired action.  (Dkt. 2217-9 at ¶ 54.)   Thus, the

choices are not separate "linked actions," as claimed in the '647 patent; rather, as the title of the

menu indicates, each choice is merely an option to complete the *same* linked action.  (*See* Dkt.

2217-10 at ¶¶ 301-310.)  As a result, the Resolver Activity menu is plainly not a pop-up menu of

multiple linked actions as required by claim 9, and Apple has failed to meet its burden of proof

under either the clear and convincing or preponderance of the evidence standards.  (*Id.*)

> **(c)      Apple Asserts A New Claim Construction For Claim 9 Based On An Incorrect Reading Of The Federal Circuit's *Motorola* Decision**

Apple hedges its bet by arguing that, to the extent the Resolver Activity menu corresponds

to a single linked action, the phrase "a pop-up menu of the linked actions" from claim 9 can include

a pop-up menu with a *single* linked action.  Br. at 21-22.  Apple's new claim construction is based

on a plain misreading of *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ("*Motorola*"),

and a misleading application of those constructions to asserted claim 9.

*Motorola* construed two terms in claim 1 of the '647 patent:  "analyzer server" and "linking

actions to the detected structures."   *Id.* at 1304.   Both construed terms are part of the same

limitation: "an *analyzer server* for detecting structures in the data, and for *linking actions to the*

*detected structures*."  *Id.* (emphasis in original).  Apple interprets the Federal Circuit's construction

for "linking actions to the detected structures" in claim 1, which requires only "at least one" action,

as applying to the pop-up menu of "the linked actions" in claim 9.  Br. at 22.  Apple is incorrect.

Dependent claim 9 depends from claim 1, but expressly narrows the scope of the "user

interface" limitation.[15]  Claim 9 and the "user interface" limitation are reproduced below:

---

[15]   Claim 9 was not asserted in the *Motorola* litigation.  (*See* Dkt. 803-11, Ex. B-1, April 12, (footnote continued)

1. … *a user interface* enabling the selection of a detected structure and *a linked action*; …

9. The system recited in claim 1, wherein *the user interface* enables selection of an action by causing the output devices to display a pop-up menu of *the linked actions*.

JX-1 at 7:8-24, 7:53-55 (emphasis added).  Thus, Claim 9 is narrower than and further limits the user interface limitation from which it depends.  Where claim 1 provides that the user interface "enabl[es] selection of … a linked action," claim 9 further specifies that the user interface "enables selection of an action by … display[ing] a pop-up menu of the linked actions."  Accordingly, the plain language of claim 9 requires that the user interface "enable the selection" of an action by displaying a pop-up menu of multiple linked actions.  And this plain reading is supported by the specification, which only describes pop-up menus with multiple linked actions.  *See* JX-1 at Fig. 7, 4:27-31; 5:38-43, 6:21-25; *see also Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*, 823 F.3d 1375, 1380-81 (Fed. Cir. 2016) (where a feature was disclosed in "every embodiment disclosed in the specification," a construction that limited the claims to that feature was appropriate).

Apple incorrectly identifies the plain antecedent basis of "the linked actions" in claim 9.  That term derives its antecedent basis not from "linking actions" in the analyzer server limitation, as Apple suggests, but rather, from "a linked action" in the user interface limitation from which claim 9 depends.[16]  *See Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 953 (Fed. Cir. 2006) (finding that a claim term "refers back" to the same term in a previous limitation, "so that the references to the [term] … derive their antecedent basis" from a prior limitation).  Indeed, this is consistent with a plain reading of the claims.  The "analyzer server" links one or more actions.  JX-1 at 7:8-24.  The "user interface" enables the selection of "a linked action" for each detected structure.  *Id.*  Thus, claim 1 does not require an analyzer server that links multiple actions—as the Federal Circuit correctly determined, it need only link one action to a detected structure.  *See*

---

2013 Initial Expert Report of Dr. Todd Mowry at ¶ 5).

[16]   The cases Apple cites hold only that multiple uses of the same claim term in a patent should be construed the same way.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003); *Masimo Corp. v. Mallinckrodt Inc.*, 18 F. App'x 852, 856 (Fed. Cir. 2001).  But "linking actions" and "linked actions" are not the same term, and need not be construed the same way.

1   *Motorola*, 757 F.3d at 1306-07.  But for claim 9, the *way* in which the action is presented to a user

2   for selection is via a pop-up menu containing *multiple* actions.  *See* JX-1 at 7:53-55.

3       Apple also errs in arguing that "linked actions" should be interpreted consistently across the

4   claims and, therefore, claim 9 requires only "at least one action."  Br. at 22.  But the noun "linked

5   actions" is *not a part* of the Federal Circuit's constructions.  Instead, the Federal Circuit construed

6   the verb *linking* [actions] from the analyzer server limitation.  *Motorola*, 757 F.3d at 1304.  The

7   Federal Circuit did not address the "linked action" term in the user interface limitation, as that

8   limitation was not in dispute.  *See id.*  Hence, by arguing that claim 9 may be satisfied by a pop-up

9   menu containing a single "action," Apple is proposing a new construction for that term, which is

10  inconsistent with the plain meaning of "linked actions."  In fact, this is the first time that Apple has

11  argued that the Federal Circuit's constructions of the analyzer server limitation of claim 1 changed

12  the previously undisputed plain meaning of claim 9.[17]

13      Apple should not be permitted to raise this new claim construction argument, which is

14  inconsistent with the claim's plain meaning, at this late stage.  Pursuant to both the Local Patent

15  Rules and the Court's scheduling orders, disputed claim terms had been identified, briefed, and

16  decided by April 2013. (*See, e.g.*, Dkt. 259, Dkt. 363, Dkt. 447).  Allowing an infringement theory

17  based on a new claim construction would violate both the Local Patent Rules and this Court's case

18  management orders.  *TiVo* requires, "out of fairness, the district court is bound by any prior claim

19  construction that it had performed in the case."[18]  *TiVo*, 646 F.3d at 883.  Similarly, out of fairness,

20  the parties should be bound by the claim constructions that they previously applied.

21      Moreover, Apple's new claim construction changes the invalidity analysis for this claim

22  limitation.  Had Apple's current single action construction been raised earlier in this, or any other

23  _____

24  [17]    Apple's assertion that Samsung's expert Dr. Jeffay is asserting a different claim
    construction (Br. at 22) is nothing more than misdirection.  Dr. Jeffay did not raise a new claim
25  construction because the Federal Circuit's construction for "linking actions to the detected
    structures" did not change the proper interpretation of "the linked actions" in Claim 9 from its plain
26  meaning: multiple linked actions.  To the contrary, it was Dr. Mowry, Apple's expert, who raised a
    new claim construction when he argued that the Federal Circuit's construction for a different
27  element of claim 1 should apply to claim 9.
    [18]    Thus, Apple's infringement theories based on this new, incorrect, claim construction, under
28  which a pop-up menu could infringe even if containing only a single action, should be stricken.

litigation involving the '647 patent, Samsung could have elected different prior art to present to the jury at trial.  In fact, Apple previously distinguished the Sidekick prior art reference on the basis of its purported presentation of a single action.  (Dkt. 2217-10, Jeffay Rep. at ¶ 141 (citing Mowry 2013 Rebuttal Report at p. 60 (arguing Sidekick does not practice claim 9 because "Sidekick discloses at most a single alleged linked action (i.e. dialing a phone number), [and] there is no need for a pop-up menu of linked actions, since there are no other allegedly linked actions to choose.").) At a minimum, Apple cannot reasonably dispute that there is a difference from the validity perspective for a pop-up menu with one action, and a pop-up menu with many actions.  This is yet one more reason that Apple's new claim construction is inappropriate.

### (d)   Apple's New Infringement Theory Conflicts With Its Prior "Action Processor" Infringement Arguments

Apple alleges that its infringement theory for the "action processor" limitation of the claims has not changed, despite accusing entirely different functionality from what was accused at trial. Br. at 24.  Apple now accuses the Resolver Activity menu as satisfying the "user interface" limitation, and the purported "actions" within that menu as satisfying the "linked actions."  But Apple previously accused the actions within the since-removed context menu as satisfying the "linked actions," and identified software related to the performance of those "actions" as satisfying the "action processor" limitation.  That accused software directed to performance of the actions within the context menu does not apply to the newly accused Resolver Activity menu.  In fact, Apple and its expert have failed to identify the actual software code associated with the Resolver Activity menu and whether such software satisfies the "action processor" limitation.   This represents a complete lack of proof and shows that Apple has failed to meet its burden of establishing infringement under either a clear and convincing or preponderance standard.  Indeed, during deposition, Dr. Mowry admitted that

Thus, Apple's "action processor" infringement theory—which is identical to the theory

presented by Dr. Mowry at trial—is inconsistent with the Resolver Activity menu Apple now accuses as the user interface.  As Apple has offered no infringement analysis for what any action processor in the DA2 devices actually is, Apple has failed to satisfy its burden of proof.

**(e)**      **Apple's New Infringement Theory Conflicts With Its Prior Arguments For The "Specified Connection" Requirement**

Just as with the action processor, Apple also offers no new infringement analysis for the "specified connection" portion of the Federal Circuit's "linking actions to the detected structures" construction.  Instead, Apple merely asserts that the DA2 Messenger application creates a specified connection "[j]ust as in the Accused Products."  Br. at 23.  More specifically, Apple argues that the specified connection is a "series of operations [that] starts with startActivity(), continues through the display of the resolver activity pop-up menu and the further calls to startActivity(), and results in the launching of the application."  (Dkt. 2217-11 at ¶ 44.)  But this illustrates Samsung's point— if the Resolver Activity menu is the user interface from which linked actions are purportedly selected, as Apple now alleges, then the specified connection cannot be the "series of operations [that] … continues through the display of the resolver activity pop-up menu."  (Dkt. 2217-10 at ¶¶ 311-312.)  In other words, Apple relies on a series of operations starting with the selection from the adjudicated context menu, but that menu has been removed and the operations are consequently different.  As Apple has offered no infringement analysis for what the specified connection is with respect to the alleged actions of the Resolver Activity menu, Apple has again failed to satisfy its burden of proof under either a clear and convincing or preponderance standard.

## V.      CONCLUSION

For the foregoing reasons, Apple's motion regarding ongoing royalties should be denied.

1    DATED:  December 6, 2017      QUINN EMANUEL URQUHART &
2                                   SULLIVAN, LLP

3                        By */s/ Victoria F. Maroulis*
4                                Kathleen M. Sullivan
                                  Charles K. Verhoeven
5                                Kevin P.B. Johnson
                                  Victoria F. Maroulis
6                                William C. Price
7                                Michael L. Fazio

8                                Attorneys for
                                  SAMSUNG ELECTRONICS CO., LTD.,
9                                SAMSUNG ELECTRONICS AMERICA, INC.,
                                  and SAMSUNG TELECOMMUNICATIONS
10                               AMERICA, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28