JAMES P. BENNETT (CA SBN 65179)
jbennett@mofo.com
ERIK J. OLSON (CA SBN 175815)
ejolson@mofo.com
NATHAN B. SABRI (CA SBN 252216)
nsabri@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Plaintiff and
Counterclaim-Defendant APPLE INC.

WILLIAM F. LEE
william.lee@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

MARK D. SELWYN (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., a Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; and SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 12-cv-630-LHK<br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION REGARDING ONGOING ROYALTIES**<br><br>Date:     January 11, 2018<br>Time:     1:30pm<br>Place:    Courtroom 8, 4th Floor<br>Judge:   Hon. Lucy H. Koh<br><br>**FILED UNDER SEAL** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     LEGAL STANDARDS ......................................................................................... 2

III.    ARGUMENT......................................................................................................... 4

        A.      Apple Is Entitled to Ongoing Royalties for Samsung's DA1-A Products.............. 4

                1.      Samsung's DA1-A Browser Products are not more than colorably
                        different from the Adjudicated Products. ................................................... 4

                2.      Samsung's DA1-A Messenger Products are not more than
                        colorably different from the Adjudicated Products................................... 7

                3.      Samsung's DA1-A Products infringe claim 9 of the '647 patent. .............. 8

        B.      Apple Is Entitled to Ongoing Royalties for Samsung's DA1-B Products............ 12

                1.      Samsung's DA1-B Products are not more than colorably different
                        from the Adjudicated Products. ............................................................... 12

                2.      Samsung's DA1-B Products infringe claim 9 of the '647 patent. ............ 12

        C.      Apple Is Entitled to Ongoing Royalties for Samsung's DA2 Products................ 12

                1.      Samsung's DA2 Products are not more than colorably different
                        from the Adjudicated Products. ............................................................... 12

                2.      Samsung's DA2 Products infringe claim 9 of the '647 patent. ................ 17

IV.     CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aevoe Corp. v. AE Tech. Co.*,
  C.A. No. 12-cv-00053, 2012 WL 1559768 (D. Nev. May 2, 2012) .............................. 8, 9

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ................................................................ 18

*Broadcom Corp. v. Emulex Corp.*,
  732 F.3d 1325 (Fed. Cir. 2013) ................................................................ 15

*Chamberlain Group, Inc. v. Techtronic Industries Co.*,
  C.A. No. 16-cv-06097, 2017 WL 368027 (N.D. Ill. Jan. 23, 2017) .............................. 8, 9

*Cross Medical Products v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005) ................................................................. 3

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  469 F.3d 1005 (Fed. Cir. 2006) ................................................................ 11

*Ericsson, Inc. v. Harris Corp.*,
  352 F.3d 1369 (Fed. Cir. 2003) ................................................................ 11

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ................................................................ 15

*Intendis GMBH v. Glenmark Pharmaceutical Inc., USA*,
  822 F.3d 1355 (Fed. Cir. 2016) ................................................................ 12

*nCube Corp. v. Seachange International Inc.*,
  732 F.3d 1346 (Fed. Cir. 2013) ................................................................ 16

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007) ................................................................. 3

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
  739 F.3d 1367 (Fed. Cir. 2014) ................................................................ 13

*R-BOC Representatives, Inc. v. Minemyer*,
  233 F. Supp. 3d 647 (N.D. Ill. 2017) ........................................................... 6

*TiVo Inc. v. EchoStar Corp.*,
  646 F.3d 869 (Fed. Cir. 2011) (*en banc*) ................................................ *passim*

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008) ................................................................ 11

# STATUTES, RULES, AND REGULATIONS

35 U.S.C. § 283 .................................................................................................................... 3

# I.   INTRODUCTION

Samsung does not dispute that, although it could have removed the infringing "quick links" functionality from its products altogether, it instead chose to make only a handful of simple and obvious software modifications that do not affect the user experience in any significant way and, in some cases, are entirely unnoticeable to the user.  Samsung also does not dispute that it owes royalties on any Design-Around Product for which the Court determines that *either* the Browser application or the Messenger application is not more than colorably different from the Adjudicated Products and still infringes claim 9 of the '647 patent.  Nor does Samsung dispute the extent of its post-judgment sales of the Design-Around Products or Apple's royalty calculations.  Samsung thus agrees that it owes more than $117 million if the Court concludes that Samsung has failed to "design around" Apple's '647 patent.

Samsung's strategy is clear:  rather than taking reasonable steps to end its widespread infringement, Samsung sought to make the smallest changes it could to its products in order to present legal arguments seeking to escape liability for its continued infringement.  But Samsung's legal arguments depend on nonsensical assertions of waiver, alleging that Apple was required to disclose infringement contentions for products that Samsung had not even developed yet, and a misreading of the case law in an attempt to justify Samsung's replacement of one infringing feature with another, similarly infringing feature.  Moreover, Samsung's actual modifications are so insubstantial that they cannot be considered more than colorable or avoid infringement.

For its DA1 Products, Samsung made only minor modifications to the Browser and Messenger applications and, in fact, resorted to implementing features—such as "short tap" gestures and not "pre-detecting" structures in text—that were included in the applications found to infringe at trial.  As Samsung concedes, the DA1 Products still have software that "detects" structures and still enable the user to "select" the same structures.  Nevertheless, Samsung claims that its modifications, taken together, mean that the DA1 Products will not detect structures until just after they have been selected by the user.  While that slight difference in timing—which represents only a fraction of a second and is unnoticeable to the user—may avoid literal

1  infringement, it is not substantially different from what was found to infringe at trial.  Samsung

2  therefore cannot escape liability for infringement under the doctrine of equivalents.  And contrary

3  to Samsung's assertion, Apple did not waive—nor could it have waived—its reliance on the

4  doctrine of equivalents for products that Samsung modified after trial.

5          For its DA2 Products, Samsung claims that it cannot be held liable for its continued

6  infringement because it removed from its Messenger application the "contextual" pop-up menu

7  that was found to infringe at trial.  But Samsung removed that pop-up menu only to have the

8  "resolver activity" pop-up menu, which still provides the user with options of actions to perform

9  on the detected structure, take its place.  Replacing one pop-up menu with another does not render

10  Samsung's DA2 Products more than colorably different from the Adjudicated Products, and still

11  infringes for the same reasons those products infringed.  Had Samsung truly wanted to avoid

12  infringement, it could have—and should have—also removed the resolver activity pop-up menu.

13  **II.      LEGAL STANDARDS**

14          Samsung asserts that "*TiVo* does not stand for the proposition that an obvious

15  modification is unlikely to be significant."  Opp. 3-4.  But *TiVo* makes clear that, in determining

16  whether a modified product is not more than colorably different from a product that was

17  adjudicated to infringe, a court should consider whether the modification "merely employs or

18  combines elements already known in the prior art in a manner that would have been obvious to a

19  person of ordinary skill in the art at the time the modification was made."  *TiVo Inc. v. EchoStar*

20  *Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (*en banc*).  *TiVo* further observes that, though not

21  dispositive, "[a] nonobvious modification may well result in a finding of more than a colorable

22  difference."  *Id.* at 882-883.  As Apple pointed out (Opening Br. 5), this also implies that an

23  obvious modification may well indicate that there is ***not*** more than a colorable difference.  At a

24  minimum, the fact that Samsung's modifications to its Design-Around Products were obvious—a

25  fact that Samsung nowhere denies—is relevant and should be considered by the Court.

26          Samsung also repeatedly suggests that it has a Seventh Amendment right to a jury trial.

27  *E.g.*, Opp. 3, 14.  However, if the Court determines that Samsung's Design-Around Products are

28

not more than colorably different from the Adjudicated Products, then Samsung is not entitled to a jury trial on whether those Design-Around Products infringe.  *See TiVo*, 646 F.3d at 880-888. Indeed, as this Court has recognized in this case, there is no right to a jury trial under 35 U.S.C. § 283, which permits ongoing royalties to be awarded as an ***equitable*** remedy in lieu of an injunction.  Dkt. 2075 at 3 ("The Federal Circuit has identified 35 U.S.C. § 283, which authorizes 'injunctions in accordance with the principles of equity,' as statutory authority for awarding ongoing royalties…. Accordingly, while this remedy involves monetary relief, there is no Seventh Amendment right to jury trial for ongoing royalties."  (citations omitted)); *see also Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-1316 (Fed. Cir. 2007).  On the other hand, if the Court determines that Samsung's Design-Around Products are more than colorably different from the Adjudicated Products, then Apple would be forced to file another lawsuit to obtain compensation for Samsung's continued, post-trial infringement of the '647 patent.

Samsung further contends that Apple must prove entitlement to the requested ongoing royalties by clear and convincing evidence.  Opp. 1, 4.  However, Samsung relies only on cases involving "violation of an injunction" and "contempt proceedings."  *Id.* at 4.  Samsung acknowledges, moreover, that there is "limited existing authority" on this issue in the ongoing royalties context, and cites no case holding that clear and convincing evidence is required in ongoing royalty proceedings.  *See id.*  By contrast, Apple cited cases suggesting that a preponderance standard is appropriate here, where the question is not contempt but whether Samsung should pay ongoing royalties for its continued infringement after trial.  *See* Apple Opening Br. 6; *see also Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (preponderance standard applies to infringement generally).  Under either standard, the Court should conclude that Apple has met its burden.[1]

---

[1]     Samsung's attacks on Dr. Mowry for supposedly being "oblivious as to the applicable burden" are unfair and unfounded (especially where Samsung itself hedges on what the applicable standard is).  Opp. 1.  Dr. Mowry is a technical expert who analyzed Samsung's Design-Around Products.  He expressed his firm views that Samsung's Design-Around Products are not more than colorably different from the Adjudicated Products and that they infringe claim 9.  That is sufficient for Apple to satisfy either burden of proof.  Far from being "careless and cursory" (Opp. 10), Dr. Mowry's reports reflect careful and detailed analysis.  Dkts. 2217-9, 2217-11.

1  **III.    ARGUMENT**

2          **A.      Apple Is Entitled to Ongoing Royalties for Samsung's DA1-A Products.**

3          Samsung does not dispute that it made only two modifications in each of the DA1-A

4  Browser and Messenger applications or that its modifications were obvious, trivial to implement

5  in code, and virtually unnoticeable to the user.  Instead, Samsung seeks to make its purported

6  design-arounds appear more significant and to confuse the issues by pointing to extraneous

7  features in the DA1-A Products and by taking the position that the Browser application found to

8  infringe should not be considered in assessing the DA1-A Messenger application and vice-versa,

9  even though the jury found both the Browser and Messaging applications to infringe.  In the end,

10  Samsung has made only minor modifications to its DA1-A Products such that the accused

11  features are not more than colorably different from the infringing features of the Adjudicated

12  Products and they still infringe claim 9 of the '647 patent.

13              **1.      Samsung's DA1-A Browser Products are not more than colorably
                          different from the Adjudicated Products.**

14
15          As explained in Apple's opening brief (p. 7), Samsung's DA1-A Browser continues to

16  display a contextual pop-up menu of options (e.g., "Send email," "Add to contacts") after the user

17  selects a structure (e.g., email address).  Samsung complains that Apple does not focus on the

18  long press functionality that remains in the DA1-A Browser.  Opp. 11.  But the relevant

19  modification is that Samsung moved the functionality of displaying the contextual pop-up menu

20  from a long press to a short tap in the DA1-A Browser Products.  Apple's analysis thus properly

21  focuses on the continued infringement arising from Samsung's implementation of this contextual

22  pop-up menu of actions linked to the selected structures.

23          Samsung's first modification in DA1-A Browser—changing the user gesture that selects

24  the structure from a long press to a short tap—is not a significant change.  Samsung concedes, as

25  it must, that the short tap gesture was found to infringe at trial.  Opp. 12.  Samsung also does not

26  deny that the long press and short tap are both user gestures interpreted by Samsung's devices as

27  indicating that the user has intentionally selected a structure.  Instead, Samsung argues that

28  "Apple emphasized the key role that the long press gesture played in Apple's infringement

allegations." *Id.* at 11.  But Apple focused on the long press in the Browser application only because that was the gesture that invoked the contextual pop-up menu.  Dkt. 1624 at 869:13-870:8, 872:8-873:7; Dkt. 2217-9, Mowry Opening Rpt. ¶ 43.  Had the short tap gesture invoked the contextual pop-up menu in the Browser application, Apple would have focused on that—exactly as it did for the infringing Messaging application in the Adjudicated Products.  *See* Dkt. 1624 at 863:2-17, 864:20-23, 874:12-875:2; Dkt. 2217-9, Mowry Opening Rpt. ¶¶ 37-39.  Thus, Apple's statement on summary judgment that the long press "invokes entirely different functionality than a mere touch or tap" (Dkt. 919-3 at 4) indicated only that the long press was the gesture that invoked the contextual pop-up menu in the Browser application of the Adjudicated Products, not that there was any "critical difference" between a long press and a short tap.

Nor does the use of a short tap on a structure that is in the process of being detected (rather than on a structure that has been pre-detected) render the DA1-A Browser Products more than colorably different from the Adjudicated Products.  In both cases, the short tap is the deliberate gesture that the user employs to select a structure from the displayed text and to bring up the contextual pop-up menu with options for actions to perform on the selected structure.  Indeed, Samsung has no response to Apple's observation in its opening brief (pp. 8-9) that there is no material difference between a short tap and a long press from the user's perspective, especially considering that the difference between the two types of gestures could merely be the difference between a touch of 0.99 seconds and a touch of 1.01 seconds.  *See* Opp. 12.  Samsung instead asks the Court to ignore the minimalist nature of these differences and to conclude, contrary to the record, that the difference between a long press and a short tap was the basis for the jury's infringement verdict.  *Id.* at 12-13.  But that cannot be, as the jury found that invoking the contextual pop-up menu via a short tap infringed in the Messaging application.

Samsung's only other modification in DA1-A Browser—calling the detection function upon the "finger up" event instead of the "finger down" event in the code—is similarly not a material difference.  Samsung does not deny that, as Apple asserted in its opening brief (pp. 9-10), this modification is unnoticeable to the user and was trivial to implement in the code.  *See*

Opp. 13.  Indeed, Samsung does not even address the testimony of its corporate witness, who explained the close relationship between the "finger down" and "finger up" events. ████████ ████████████████████████████████████████████████████████████ And contrary to its own expert's view that user experience is relevant to the colorable differences analysis where, as here, the claim at issue "is a user interface claim" (Dkt. 2217-6, Jeffay Dep. 139:15-23), Samsung asks the Court to simply ignore that its "finger up" modification has no impact whatsoever on the user's experience.[2]

Samsung's entire argument for why the DA1-A Browser Products should be considered more than colorably different from the Adjudicated Products thus boils down to the fact that the DA1-A Browser Products infringe under the doctrine of equivalents.  *See* Opp. 13-14.  But the "colorable differences" analysis properly focuses on comparing the feature previously found to infringe and the modified feature in the redesigned products.  *See TiVo*, 646 F.3d at 882.  From that perspective, the slight timing difference between a user selecting a structure after it has been detected or while it is in the process of being detected (as in the Adjudicated Products) and detecting a structure immediately after the user selects it (as in the DA1-A Browser Products) is minimal.  In fact, as noted above, the difference may be only the tiniest fraction of a second and imperceptible to the user—that is not a significant difference between the products.  Further, that the DA1-A Browser Products satisfy the limitation requiring "selection of a detected structure" under the doctrine of equivalents does not require or suggest more than a colorable difference, as Samsung contends.  On the contrary, and as discussed below (pp. 10-11), the test for equivalence requires only "***insubstantial***" differences between the accused product and the asserted claim.  Thus, infringement by equivalence indicates that the differences between the DA1-A Products and the Adjudicated Products (which were found to satisfy the claim language literally) are not, in fact, more than colorable.  *See R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647,

---

[2]     While Samsung contends that its expert disagreed with Apple's expert regarding the significance of the difference between "finger up" and "finger down" (Opp. 13 n.7), Dr. Jeffay quoted but did not dispute Dr. Mowry's opinion that calling the detecting function on either event was "functionally equivalent."  *See* Dkt. 2217-10, Jeffay Rpt. ¶ 236.

661 (N.D. Ill. 2017) (noting that the concept of "colorable" differences likely owes its origin to the doctrine of equivalents).  That is especially true where, as here, Samsung has made only the smallest possible modification to cross the threshold from literal to equivalent infringement.

### 2.   Samsung's DA1-A Messenger Products are not more than colorably different from the Adjudicated Products.

Samsung does not dispute that it made only two modifications in its DA1-A Messenger Products:  (1) it removed the pre-detection or underlining of structures, and (2) it changed the code to call the detection function upon the "finger up" event instead of the "finger down" event.  As explained in Apple's opening brief (pp. 10-11), neither of these changes is material.  Pre-detecting or underlining a detected structure is not required by claim 9 of the '647 patent, as was made clear by the jury's finding that the Browser application, which did not use pre-detection or underlining of structures, infringed.  Samsung seeks to dismiss that fact by contending that "[p]re-detection was not necessary" in the Adjudicated Products only "because detection commenced during a long press."  Opp. 14.  As discussed above (p. 5), however, the use of a short tap to select a structure that has not been pre-detected is not materially different from the functionality that was found to infringe at trial.  Similarly, the minor code modification to call the detection function upon "finger up" is not more than colorably different for the same reasons discussed above with respect to the DA1-A Brower Products.  *See supra* pp. 5-6.

Samsung accuses Apple of "misleadingly conflating Browser and Messenger."  Opp. 14.  But both applications were found to infringe and therefore both are relevant to the colorability analysis.  Moreover, the result of Samsung's DA1-A modifications is essentially the same in the Browser and Messenger applications.  In each, there is no pre-detection or underlining of a structure, a short tap selects a structure, the detection process is called upon the "finger up" event, and the user's selection results in a contextual pop-up menu displaying options such as "Send email" and "Add to contacts."  Thus, whether compared to the Browser application found to infringe at trial or the Messaging application found to infringe at trial (or both), the DA1-A Messenger Products are not more than colorably different from the Adjudicated Products.

### 3.   Samsung's DA1-A Products infringe claim 9 of the '647 patent.

As explained in Apple's opening brief (pp. 12-14), Samsung's DA1-A Products infringe claim 9 under the doctrine of equivalents.  Samsung's primary argument—waiver—is inapplicable to the Design-Around Products.  And on the merits, Samsung's modifications to the DA1-A Products present only insubstantial differences that still infringe under the doctrine of equivalents.  Accordingly, Samsung cannot avoid liability for its continued infringement.

#### a.   Apple did not waive any doctrine of equivalents arguments for Samsung's Design-Around Products.

Samsung first contends that Apple waived any reliance on the doctrine of equivalents because it did not assert equivalence to prove infringement of the Adjudicated Products at trial. Opp. 15.  But Apple's pre-trial and trial contentions related only to the Samsung accused products that were in the case at those times.  Apple could not have presented infringement theories for the Design-Around Products, which Samsung modified after trial and only became part of this case later.  Similarly, Apple's withdrawal of arguments based on the doctrine of equivalents expressly applied only to the opinions in Dr. Mowry's pre-trial expert report, which obviously was limited to addressing the Samsung products that would be adjudicated at trial.  Dkt. 1056 at 3 n.4 (making clear that the parties withdrew doctrine of equivalents arguments "in their respective expert reports that are subject of the parties' pending motions to strike").  Apple never withdrew its reliance on the doctrine of equivalents for products that Samsung might modify in the future, nor would it have made any sense to do so.

Apple is aware of no case—and Samsung cites none—requiring a patentee that proved literal infringement at trial to assert only literal infringement in ongoing royalty proceedings involving products modified post-trial.  On the contrary, Apple's opening brief (p. 14) cited cases in which courts approved of equivalence theories for redesigned products, even after issuing preliminary injunctions based on literal infringement.  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 2017 WL 368027, at *4 (N.D. Ill. Jan. 23, 2017); *Aevoe Corp. v. AE Tech. Co.*, 2012 WL 1559768, at *6 (D. Nev. May 2, 2012).  Samsung's only response is that those cases involved

1    determinations whether modified products violated preliminary injunctions (Opp. 15), but that is

2    a distinction without a difference—indeed, those were contempt proceedings similar to *TiVo*.

3    *Chamberlain*, 2017 WL 368027, at *1-2 (addressing violation of preliminary injunction as

4    contempt proceeding); *Aevoe*, 2012 WL 1559768, at *5-6 (finding contempt for violation of

5    preliminary injunction); *see* Opp. 2-3 (Samsung comparing "whether a patentee is entitled to an

6    ongoing royalty" to "whether an adjudicated infringer has violated an injunction order"); *id.* at 4

7    (Samsung stating that "[t]his [ongoing royalty] proceeding" is "like a contempt proceeding").

8         Samsung further argues that "[a]llowing Apple to raise doctrine of equivalents now would

9    also undercut the Local Patent Rules and unfairly prejudice Samsung."  Opp. 16; *see id.* at 16 n.9

10   (suggesting that the Court should strike Apple's equivalence arguments on this basis).  However,

11   the Local Patent Rules required disclosure only of Apple's pre-trial and trial contentions; they did

12   not require Apple to anticipate or set forth infringement contentions for modifications that

13   Samsung might make to its products after trial.  Recognizing that new fact and expert discovery

14   would be required for Samsung's modified products, the Court set a separate schedule for these

15   ongoing royalty proceedings.  Dkt. 2201.  Apple fully complied with that scheduling order, and

16   Samsung has had a full and fair opportunity to respond to Apple's infringement contentions for

17   the Design-Around Products.  Samsung's suggestion that it should have had an opportunity to

18   present its non-infringement defenses for its Design-Around Products to the jury—before it

19   modified the Design-Around Products—makes no sense.  In any event, as this Court has

20   recognized in this case, there is no right to a jury trial for ongoing royalties, which are an

21   *equitable* remedy in lieu of an injunction.  Dkt. 2075 at 3; *see supra* pp. 2-3.

          **b.    Samsung's DA1-A Products infringe under the doctrine of**
                 **equivalents.**

24        Beyond its waiver arguments, Samsung contends that its DA1-A Products fail to satisfy

25   only a single claim limitation (and only a single word within that limitation):  "a user interface

26   enabling the selection of a *detected* structure and a linked action."  JTX-1, '647 patent at 7:18-19

27   (emphasis added).  As the parties and the Court agreed, the ordinary meaning of this claim

28

1   language requires "the user interface to enable selection of a structure, by the user, after the

2   structure has already been detected."  Dkt. 1150 at 20.

3       Samsung contends that the DA1-A Products do not infringe because they do not enable

4   the user to select a structure "after" it has been detected.  Opp. 17.  As Samsung points out, the

5   DA1-A Products call the detection functions in the code when the user lifts a finger up from the

6   touchscreen.  But that is why the DA1-A Products do not ***literally*** infringe.  It does not remove

7   the DA1-A Products from infringement altogether, as the difference is insubstantial and the

8   products still infringe under the doctrine of equivalents.

9       As explained in Apple's opening brief (pp. 12-13), the DA1-A Products perform

10  substantially the same function in substantially the same way to achieve the same result as the

11  claimed "user interface enabling the selection of a detected structure."  Samsung contends that

12  DA1-A performs a different function "because it prevents a user from selecting a structure that is

13  detected" (Opp. 18), but that is wrong.  The DA1-A Products still function to allow the user to

14  select the same structure that is detected by the "analyzer server" software.  Samsung is also

15  wrong in arguing that the DA1-A Products perform the claimed function in a substantially

16  "different way" "because detection occurs after selection."  Opp. 18.  The user interface of the

17  DA1-A Products still presents the user with a viewable representation of structures within larger

18  text, and the user still selects the structure in the same way—by an intentional gesture that begins

19  with the user placing a finger down on the touchscreen and ends with the user lifting the finger

20  up.  The slight timing difference of when the "analyzer server" detects the same structure relative

21  to the user's selection is insubstantial and may be only a tiny fraction of a second.  Dkt. 2217-9,

22  Mowry Opening Rpt. ¶ 137.  And the result is the same:  the user selects the structure, which is

23  detected by the "analyzer server" code, and a contextual pop-up menu of options for that structure

24  (the ***same*** contextual pop-up menu as in the Adjudicated Products) is displayed as a result.  *Id.*

25  ¶ 138; *see* Dkt. 2217-6, Jeffay Dep. 104:5-12.  This is hardly the "opposite" of the claimed

26  element, as Samsung asserts (Opp. 18); indeed, the slight timing difference in the code is so

27  minor that it has no effect on the ultimate functionality and is unnoticeable to the user.  Dkt.

28

2217-9, Mowry Opening Rpt. ¶ 137.  That is infringement by equivalence.  *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1327 (Fed. Cir. 2008) (affirming infringement judgment under doctrine of equivalents where "difference in shape" in redesigned catheter product "was so insubstantial that cardiologists would have difficulty distinguishing the two during use"); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1375 (Fed. Cir. 2003) (reversing noninfringement judgment under doctrine of equivalents where accused products had mere "trivial difference" from claimed invention).

A finding of infringement under the doctrine of equivalents would not, as Samsung contends, vitiate the "detected" element of the claims.  *See* Opp. 18.  In the DA1-A Products, as recited in the claims, the user still "selects" a structure by touching the corresponding location on the touchscreen and the software still "detects" that same structure.  Thus, the slight shift in the relative timing of the selection and detection—which can be as little as the tiniest fraction of a second—does not eliminate any claim limitation.  *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1018 (Fed. Cir. 2006) (noting that "vitiation" does not mean that the doctrine of equivalents "is always foreclosed whenever a claim limitation does not literally read on an element of an accused device; such an interpretation of the 'all elements' rule would swallow the doctrine of equivalents entirely").

Finally, Samsung's reference to "Pandit" has no bearing on infringement.  As Dr. Mowry has explained, detection does not occur after selection of a structure in Pandit because Pandit does not disclose software that detects structures at all.  Dkt. 2217-11, Mowry Reply Rpt. ¶ 59.  Rather, in Pandit, the ***user***—not the software—detects a structure by manually selecting and accenting it in full.  *Id.*  The same is not true of the DA1-A Products, which automatically detect the relevant structures (using the same detection software as the Adjudicated Products).  Accordingly, Apple's doctrine of equivalents theory is fully consistent with its arguments regarding Pandit and, even if Pandit were prior art,[3] Samsung has not come close to showing that

---

[3]      Pandit is not prior art to the '647 patent, and Samsung did not assert it as prior art at trial. As Dr. Mowry has explained, the inventors of the '647 patent conceived and reduced to practice their claimed invention well before the filing of the Pandit application.  Dkt. 2217-11, Mowry Reply Rpt. ¶ 58.  This was confirmed in re-examination proceedings regarding the '647 patent when the examiner found that Apple established an invention date that pre-dated Pandit.  *Id.*

a finding of infringement under the doctrine of equivalents would impermissibly "ensnare" the prior art. *See Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1364 (Fed. Cir. 2016) (rejecting ensnarement defense after conducting "hypothetical claim" analysis).

**B.      Apple Is Entitled to Ongoing Royalties for Samsung's DA1-B Products.**

>       **1.      Samsung's DA1-B Products are not more than colorably different from the Adjudicated Products.**

The sole modification that Samsung made in DA1-B was to change the user gesture that invokes the contextual pop-up menu from a long press to a short tap. Samsung claims this is a "significant[]" modification, but does not—and cannot—dispute that the short tap was found to infringe in the Messaging application of the Adjudicated Products. *See* Opp. 19. Nor does Samsung provide any explanation for how changing the type of user gesture, without more, is more than colorably different in this context. It is not. *See* Apple Opening Br. 14-15.

>       **2.      Samsung's DA1-B Products infringe claim 9 of the '647 patent.**

Samsung's only non-infringement contention for the DA1-B Products is that they lack a user interface that "enables the selection of a detected structure." Opp. 20. But like the Adjudicated Products, the DA1-B Products detect a structure when the user places a "finger down" on the touchscreen. *See id.* at 20 n.11. Samsung thus contends that the change from a long press to a short tap means that the detection may not have been ***completed*** by the time the user lifts the "finger up." *Id.* at 20. Either way, there is infringement: If the detection has completed before "finger up," then there is literal infringement—which Samsung does not dispute. If the detection has started but not completed before "finger up," then there is infringement under the doctrine of equivalents for the same reasons discussed above with respect to the DA1-A Products. *See supra* pp. 10-11.

**C.      Apple Is Entitled to Ongoing Royalties for Samsung's DA2 Products.**

>       **1.      Samsung's DA2 Products are not more than colorably different from the Adjudicated Products.**

Samsung concedes that the only change it made in DA2 was to remove the contextual pop-up menu in the Messenger application. Samsung contends not only that this single

modification is significant but that "[i]t is hard to imagine a more significant change."  Opp. 21.
The response, however, is obvious:  if Samsung wanted to avoid infringement, it could have—and
should have—removed the resolver activity pop-up menu as well.  By removing the contextual
pop-up menu only to have the resolver activity pop-up menu take its place, Samsung's
modification falls far short of providing a more-than-colorable difference in the DA2 Products.

As an initial matter, Samsung wrongly contends that the fact that it removed the specific
feature found to infringe "should end the inquiry."  Opp. 21.  Federal Circuit law is clear that
simply removing the feature that was adjudicated to infringe does not by itself result in a more-
than-colorable difference between the adjudicated and modified products.  Instead, a court must
compare the feature previously found to infringe with the corresponding feature in the modified
products to determine whether the modification by removal was "significant." *TiVo*, 646 F.3d at
882; *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370-1371 (Fed. Cir. 2014).
Here, that comparison looks like this:



There is no significant difference between:  (1) the previously adjudicated feature, where
the user's selection of a detected structure such as an email address brought up a "contextual"

pop-up menu; and (2) the corresponding feature in the DA2 Products, where the user's selection of the *same* detected structure brings up a "resolver activity" pop-up menu.  In both cases—as shown above and as Samsung does not dispute—the user's selection of the detected structure causes the user interface to display a pop-up menu that offers choices from which the user can select what to do with the detected structure.

Nor is there any significant difference between the two pop-up menus themselves. Fundamentally, the pop-up menus perform the infringing "quick links" functionality in substantially the same way.  Samsung does not dispute that—just like the contextual pop-up menu in the Adjudicated Products—the resolver activity pop-up menu in the DA2 Products:  (1) is the first pop-up menu to appear after the user selects a detected structure; (2) presents the user with options to perform on the detected structure; (3) allows the user to select from those options by tapping on a displayed option; and (4) results in opening an application and populating certain fields within that application with data from the selected structure to perform the selected option. There is no substantial difference between choosing to "Send an email" from the contextual pop-up menu in the Adjudicated Products and choosing to "Send an email with Gmail" from the resolver activity pop-up menu in the DA2 Products.  Dkt. 2217-9, Mowry Opening Rpt. ¶¶ 82-84. As explained in Apple's opening brief (p. 20), both menus present the user with two or more linked actions for the selected structure (although only a single action is required, *see infra* p. 18).

Samsung nevertheless suggests that the two pop-up menus are more than colorably different because they provide the user with menus of different options to perform on the selected structure.  Opp. 22.  That is not a meaningful distinction.  Claim 9 of the '647 patent requires displaying "a pop-up menu of the linked actions"; beyond that, it does not specify any particular type of option that must be presented to the user.  And even within the Adjudicated Products, the contextual pop-up menus provided *different* options to the user depending on the type of structure that was selected.  For example, if the selected structure was an email address, the user could choose to "Send an e-mail" or "Add to contacts"; if the selected structure was a telephone number, the user could choose to "Dial" or "Add to contacts."  Dkt. 2217-9, Mowry Opening Rpt.

¶¶ 39, 41.  Thus, the resolver activity pop-up menu's presentation of options like "Send an email with Gmail" or "Send an email with AT&T Mail" is not significantly different from the contextual pop-up menu's presentations of options like "Send an email" or "Add to contacts."

Unable to dispute the similarity in how the contextual and resolver activity pop-up menus display options after the user has selected a detected structure, Samsung resorts to pointing to minor and immaterial differences between the two menus.  Samsung contends, for example, that "the two menus look nothing alike."   Opp. 22.  That is not correct, as both present a visual pop-up menu of options to the user.  Even so, whether the pop-up menus display options to the user in different colors or arranged horizontally instead of vertically has no bearing whatsoever on infringement and cannot be considered a significant difference.

Samsung similarly argues that the resolver activity pop-up menu is more than colorably different from the contextual pop-up menu because the resolver activity pop-up menu may not always appear.  According to Samsung, "[t]his difference alone should end the inquiry."  Opp. 23.  But how often the recited pop-up menu appears is not relevant to infringement.  Claim 9 is directed to "[a] computer-based system for detecting structures in data and performing actions on detected structures" (JTX-1, '647 patent at 7:9-10), and the code for displaying the resolver activity pop-up menu is undisputedly present in the DA2 Products.  Dkt. 2217-9, Mowry Opening Rpt. ¶¶ 52-55.  The DA2 Products therefore ***always*** infringe, regardless of how often the pop-up menu appears.  *See, e.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) ("[T]o infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode." (citation omitted)); *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) ("[A]n accused device that 'sometimes, but not always, embodies a claim[] nonetheless infringes[.]'" (citation omitted)).  Indeed, Samsung admits that the resolver activity functionality "was *always* in the adjudicated products," even though the resolver activity pop-up menu would not appear every time, for example, if there was only a single email application installed on the device or if the user selected the "Always" option.  Opp. 23 (emphasis in original).  In any event, in the DA2 Products, the resolver activity

1   pop-up menu appears by default the first time the user selects each type of detected structure and

2   will continue to appear every time if the user selects the "Just Once" option or resets the phone to

3   the factory default.  *See* Dkt. 2217-9, Mowry Opening Rpt. ¶ 85.

4          Samsung next contends that Apple cannot rely on the resolver activity pop-up menu in

5   these ongoing royalty proceedings because that feature existed but was not accused in the

6   Adjudicated Products.  Opp. 23-24 & n.13.  However, *nCube Corp. v. Seachange International

7   Inc.*, 732 F.3d 1346 (Fed. Cir. 2013), on which Samsung relies, does not stand for the proposition

8   that all previously unaccused features are off-limits in a subsequent *TiVo* determination.  *nCube* is

9   distinguishable in two important respects.  First, in *nCube*, the accused ClientID that was found to

10  infringe at trial was not removed from the products, but instead was redesigned to perform the

11  same functionality in a non-infringing way.  *Id.* at 1350.  Here, by contrast, Samsung did not

12  redesign the contextual pop-up menu that was found to infringe by the jury; instead, it removed

13  that feature and ***replaced*** it with the resolver activity window as the first pop-up menu to appear

14  after a user selects a detected structure.  It is therefore appropriate for Apple to point to the

15  resolver activity pop-up menu to demonstrate that the DA2 Products are not more than colorably

16  different from the Adjudicated Products.  Second, in *nCube*, the patentee asserted in contempt

17  proceedings that the previously unaccused SessionID infringed because it had a Mac address like

18  the ClientID, even though the Mac address was not accused in either the SessionID or the

19  ClientID at trial.  *Id.* at 1350-1351.  Here, by contrast, Apple is applying the same infringement

20  theory to the resolver activity pop-up menu as was applied to the contextual pop-up menu at trial.

21         At bottom, the colorable differences analysis must compare "the accused context menu

22  and … what remains" (Opp. 24)—and "what remains" in place of the contextual pop-up menu in

23  the DA2 Products is the resolver activity pop-up menu.  Samsung could have also removed the

24  resolver activity pop-up menu, but apparently that was a bridge too far.  Modifying a product that

25  was found to infringe a claim directed to a pop-up menu by removing one pop-up menu only to

26  have another, similar pop-up menu take its place is hardly a "design-around," and does not

27  amount to a more-than-colorable difference.

28

1    Finally, Samsung argues (in a footnote) that "Apple's theories concerning DA2 should

2    also be rejected for failure to comply with the Local Patent Rules."  Opp. 24 n.14.  Samsung

3    appears to believe that Apple was required to disclose its infringement analysis of Samsung's

4    *post-trial* modified products in Apple's *pre-trial* contentions.  That makes no sense.  Apple could

5    not have known how Samsung would modify its products after the infringement verdict.  And it

6    was only after Samsung removed the contextual pop-up menu from certain products that the

7    resolver activity pop-up menu became the first pop-up menu displayed after a user's selection of a

8    detected structure in the Messenger application.  Apple timely disclosed its colorability and

9    infringement analysis for the DA2 Products upon learning of Samsung's modification in these

10   ongoing royalty proceedings according to the schedule set by the Court (*see* Dkt. 2201), and

11   Samsung has had a full and fair opportunity to respond to Apple's contentions.

12         **2.        Samsung's DA2 Products infringe claim 9 of the '647 patent.**

13   Although Samsung admittedly made only a single modification to the DA2 Products,

14   Samsung claims that those products do not infringe for five reasons.  None has merit.

15   *First*, Apple did not concede that the resolver activity pop-up menu is non-infringing, nor

16   does the passage cited by Samsung indicate otherwise (Opp. 25).  In its summary judgment

17   opposition, Apple stated that it was not accusing a tap on a selected structure that "launch[ed] a

18   default action (such as a 'dial' action on a phone number)" but did "not provide a menu 'enabling

19   the selection of … a linked action.'"  Dkt. 919-3 at 3-4.  In other words, Apple stated that it was

20   not accusing functionality that directly launched an application after the user tapped the detected

21   structure, without a menu of options being provided to the user to select which action to perform.

22   Consistent with Apple's infringement theory at summary judgment and trial, Samsung's DA2

23   Products undisputedly *do* provide a menu of options—via the resolver activity pop-up menu—

24   from which the user may select an action to perform on the detected structure.  *See* Dkt. 2217-11,

25   Mowry Reply Rpt. ¶ 18.

26   *Second*, as explained in Apple's opening brief (p. 20), the resolver activity pop-up menu

27   does present the user with two or more "linked actions" for the selected structure (although only a

28

single linked action is required, *see infra* p. 18-19).  When the user has selected an email structure, for example, the pop-up menu may provide the options of launching Gmail and populating the relevant fields (e.g., filling in the "to" field) or launching AT&T Email and populating the relevant fields in that application.  Dkt. 2217-11, Mowry Reply Rpt. ¶ 18 ("Each of those choices is a different linked action that opens separate applications."); *see also* Dkt. 2217-7, Mowry Dep. 229:21-22 ("An action is launching an application with a detected structure as an argument[.]").  There cannot be only a single "linked action" from this menu, since selecting different options will result in different applications being launched.  There are multiple choices and thus multiple actions that may be performed on the same selected structure.  Indeed, Samsung does not address—much less dispute—its own expert's admission that "if you have [only] a single linked action," "there's not going to be a need for a pop-up menu."  Dkt. 2217-6, Jeffay Dep. 99:10-19.

 *Third*, Samsung contends that Apple is asserting a new claim construction relating to the limitation requiring "a pop-up menu of linked actions."  Opp. 26-29.  However, as explained in Apple's opening brief (pp. 21-22), Apple is applying the claim constructions provided by the Federal Circuit in *Motorola* and given to the jury by this Court.  The Federal Circuit held that "linking **actions** to the detected structures" in claim 1 requires linking "at least one" action to each detected structure.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1304 (Fed. Cir. 2014) (construing "linking actions to the detected structures" to mean "creating a specified connection between each detected structure and **at least one** computer subroutine that causes the CPU to perform a sequence of operations on that detected structure" (emphasis added)); Dkt. 1848 at 30-31 (same).  Thus, even though claim 1 uses the plural word "actions," the Federal Circuit construed that language in the context of the entire claim to allow for one or more linked actions per structure—a conclusion that Samsung does not dispute.  Because claim 9 depends from claim 1, it naturally follows that the term "linked actions" used to describe the pop-up menu in claim 9 likewise encompasses one or more linked actions.  Accordingly, even if Samsung were correct

1    that the resolver activity pop-up menu presents only a single action per detected structure (it is not

2    correct, *see supra* pp. 17-18), that would still infringe—because the claim requires nothing more.

3         Moreover, although Samsung attempts to portray Apple as raising new claim construction

4    arguments, Apple's argument relies solely on the Federal Circuit's prior construction.  By

5    contrast, Samsung improperly relies on new claim construction arguments to support its assertion

6    that the pop-up menu in claim 9 requires displaying multiple linked actions per detected structure.

7    For example, Samsung argues that "linked actions" in claim 9 has a plain meaning that is

8    narrower than the Federal Circuit's construction of "linking actions" (Opp. 28); that claim 9

9    should be limited based on the specification and the disclosed embodiments (*id.* at 27); and that

10   dependent claim 9 must be narrower than claim 1 with respect to the number of actions required,

11   even though claim 9 is already narrower by requiring a pop-up menu (*id.* at 26-27).  The Court

12   should disregard Samsung's new claim construction arguments and continue to apply the Federal

13   Circuit's governing construction, which makes clear that only a single linked action per detected

14   structure is required—whether in claim 1 or in dependent claim 9.[4]

15        *Fourth*, Samsung contends that Apple has failed to present proof of infringement with

16   respect to the "action processor" limitation.  Opp. 29-30.  Not so.  Dr. Mowry explained in his

17   report, which Apple cited in its opening brief (p. 24), that the DA2 Products use the same "action

18   processor" functions and classes as the Adjudicated Products.  Dr. Mowry identified the

19   startActivity() method of the ContextImpl class, the resolveActivity() method of the Intent class,

20   and the resolveActivity() method of the PackageManager class.  Dkt. 2217-9, Mowry Opening

21   Rpt. ¶ 119.  He further pointed out that these functions and classes continue to exist in the

22   _____

23   [4]     Samsung also argues that it might have relied on different prior art, such as the "Sidekick"
     reference, based on Apple's purported "claim construction changes."  Opp. 28-29.  But as
24   explained above, Apple is applying the Federal Circuit's construction, not creating a new
     interpretation.  In any event, Dr. Mowry addressed Sidekick on the last day of trial—*after* the
25   Federal Circuit's decision had issued.  Dr. Mowry explained that claims 1 and 9 of the '647 patent
     require multiple types of structures *overall* and multiple types of actions *overall* (not multiple
26   actions per structure), whereas Sidekick only disclosed one type of structure (telephone number)
     and one type of action (making a phone call) in total.  Dkt. 1928 at 3100-3104.  Accordingly,
27   Sidekick does not invalidate claims 1 and 9 under the construction supplied by the Federal Circuit
     and now applied by Apple.  *Id.*; *see also* Dkt. 2217-11, Mowry Reply Rpt. ¶ 17.

28

Android OS 4.4.4 code, which is representative of the DA2 Products.  *Id.*; Dkt. 2217-7, Mowry Dep. 208-210.

Notably, Samsung cites no contrary opinion from its expert.  Opp. 29-30.

      *Finally*, Samsung asserts that "Apple has offered no infringement analysis for what the specified connection is."  Opp. 30.  Again, that is incorrect.  As cited in Apple's opening brief (p. 23), Dr. Mowry explained how the DA2 Products create the required "specified connection" in the same way as the Adjudicated Products:  "The 'specified connection' continues to be the series of methods that perform a series of operations on the detected structure and enable the viewer to perform the desired action.  This series of operations starts with startActivity(), continues through the display of the resolver activity pop-up menu and the further call to startActivity(), and results in the launching of the desired application."  Dkt. 2217-11, Mowry Reply Rpt. ¶ 44.  Although the contextual pop-up menu has been removed, the DA2 Products ███████████ to pass the detected structure to the application selected via the resolver activity pop-up menu and populate the relevant fields, and thus create a "specified connection" between the detected structures and the computer subroutine that causes the CPU to perform the operations.  *Id.*

## IV.   CONCLUSION

      Apple respectfully requests that the Court:  (1) determine that Samsung's Design-Around Products are not more than colorably different from the Adjudicated Products and continue to infringe claim 9 of the '647 patent, and (2) order Samsung to pay ongoing royalties for all Design-Around Products at the rate previously set by the Court.

Dated: December 13, 2017           WILMER CUTLER PICKERING HALE AND
                                   DORR LLP


                                   By:  */s/ Mark D. Selwyn*
                                        MARK D. SELWYN

                                        Attorneys for Plaintiff
                                        APPLE INC.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document has been served on December 13, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*/s/ Mark D. Selwyn*
Mark D. Selwyn
